# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Judge Rebecca R. Pallmeyer |
| v. | Jury Trial Demanded |
| Amazon Web Services, Inc., | |
| Defendant. | |

**KOVE'S MEMORANDUM IN OPPOSITION TO AMAZON'S MOTION TO DISMISS**

Rooted in computer technology, the Kove Patents are eligible for patenting under § 101 and controlling Federal Circuit precedent. The patented technology is tailored to improving conventional database storage systems. It provides very specific distributed data storage architecture for improving the functionality of a computer network.

The Kove Patents describe a computer system for managing data in a distributed storage network. They describe a specific architecture in which intermediate data location servers are inserted between the user and data repositories, where data files are stored. The location servers store data location information (a term of art rooted in computer technology and described by the patents) associated with an identifier string (again, a computer networking concept), and they use a hash function to organize data location information across a group of data location servers. This is but a sampling of the rich technological detail evident in the patent claims and specification. The patents self-evidently are rooted in technology, and the evidence demonstrates that this system was an improvement over conventional data storage systems.

Amazon attempts to oversimplify the patents through a word substitution gimmick. It strips the technology language from the patents, ignores their technological improvements, and "rewrites" the patents to argue they simply disclose a conventional library card catalogue system running on a generic computer. This is precisely the type of oversimplification forbidden by the Federal Circuit. Its word substitution approach would be a sharp break from controlling law, and would, as the Federal Circuit has cautioned, present the claims at such a high level of abstraction that it all but ensures that the exceptions to § 101 swallow the rule.

Perhaps most importantly, Amazon's analogy misses the fundamental import of the Kove Patents. Prior storage systems did, in fact, use hierarchical indexing of location information analogous to card catalogues—that was the very problem with them and what the technological

innovations of the Kove Patents overcame. The problem with those earlier systems was that they could not adapt efficiently to accommodate extremely large data sets. As shown below, Amazon's servers could hold over 2.5 quadrillion books (over 2,500,000,000,000,000). And the invention is not about storing and locating merely the author and title of those books, as Amazon suggests. It is more akin to storing all of the items in the index of the books and being able to locate them instantaneously, even if hundreds of millions of books are rewritten, added, and subtracted each day. No conventional hierarchical index could efficiently manage such extraordinary volumes of dynamically changing data.

That was the particular genius of Kove's patented innovations. They permit the storage of data across the vast expanses of millions of servers to be constantly changed and updated, using intermediate servers storing location information associated with identifier strings using a hash function. This is why the *MIT Technology Review* found this technology to be among the top ten innovations that would change the world. It hardly would have given such extraordinary praise to a simplistic library card catalogue run on a generic computer.

The Federal Circuit's *Enfish* case is directly applicable here—both stating the relevant test and finding eligible a much simpler database patent. *Enfish* and its progeny recognize that if a claim is rooted in technology and tailored to improving the functioning of conventional computer systems, it is eligible under § 101. Unlike the Kove Patents, ineligible abstract ideas do not show how to improve a computer's functioning—they simply take an abstract human activity (such as escrow) and use a generic computer as a mere tool. Amazon acknowledges that the relevant test is whether the claims, as supported by the specification, are necessarily rooted in technology. Even a cursory review of the Kove Patents shows they are inextricably rooted in technology. The only escape from this conclusion is by "rewriting" the claims, as Amazon does, to strip them of

technological content—an approach at odds with Federal Circuit precedent.

## BACKGROUND

In the 1990's, the internet was nascent yet fast-growing, the debate around "big data" just began percolating, and the "cloud" as known today was years away. Dkt. 1, Compl. ¶¶ 1, 12, 15-16, 19.[1] It was during this time that Drs. Overton and Bailey (the inventors of the Kove Patents[2]) foresaw that data storage requirements would grow beyond the capabilities of conventional systems. *Id.* ¶¶ 2, 12, 13, 16.

Dependency on traditional ways of centrally indexing data in a distributed storage system was identified as a key issue. *Id.* ¶ 13. For example, as information was added to a network, previous technology would require that it be indexed in some hierarchical fashion. *Id.* Those indices would have to be updated and the need for continual updates to central servers was unworkable for computer networks, where data files are spread across millions of servers and changing rapidly. *Id.* ¶¶ 2, 13. While traditional indices worked to a certain point, a distributed network of data servers would become so vast and complex that ordinary hierarchical indices no longer could handle the load without high levels of inefficiency. *Id.* ¶ 13.

The inventors anticipated distributed storage systems would someday contain so many unique data files that it would become impractical—if not impossible—to store the corresponding location information in one place. *Id.* ¶ 16. Today, for example, there are 2.5 quintillion ($2.5 * 10^{18}$) bytes of data created each day. *Id.* ¶ 13. The Kove Patents explain the difficulties associated with prior systems, and the need for a system that can locate data in a hyper-scaled environment where

---

[1] On a Rule 12(b)(6) motion, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all permissible inferences in plaintiffs' favor." *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 365-66 (7th Cir. 2018) (citation omitted).

[2] U.S. Patent Nos. 7,103,640 ("the '640 patent"), 7,814,170 ("the '170 patent"), and 7,233,978 ("the '978 patent") (collectively "the Kove Patents"). Dkt. 38-3, 38-4, 38-5.

3

the data are highly dynamic, i.e., changing continuously. '170 patent, 1:35-67, 2:1-10.

Drs. Overton and Bailey conceived of an elegant technological solution that improved upon conventional systems. Compl. ¶¶ 17-19. They realized, among other things, that storing location information associated with data files across multiple servers would reduce the processing time to find a data file. *Id.* ¶ 17. Likewise, the inventors understood the need to efficiently identify which of the multiple location information servers stored the location information for a particular data file. *Id.* Their solution, as described in detail below, utilized intermediate location servers to store location information associated with identifier strings organized with hash functions. This server and storage architecture allowed for hyper scalability to the types of extraordinary data needs in today's cloud in a way that prior hierarchical systems could not achieve.

Years after the relevant patent application, the *MIT Technology Review* recognized that the type of distributed data storage technology described in the Kove Patents was one of "10 Emerging Technologies That Will Change Your World." *Id.* ¶¶ 1, 19.

> Whether it's organizing documents, spreadsheets, music, photos, and videos or maintaining regular backup files in case of theft or a crash, taking care of data is one of the biggest hassles facing any computer user. Wouldn't it be better to store data in the nooks and crannies of the Internet, a few keystrokes away from any computer, anywhere? A budding technology known as distributed storage could do just that, transforming data storage . . . by making digital files easer to maintain and access while eliminating the threat of catastrophes. . . .
>
> [This] work centers on "distributed hash tables," an update on a venerable computer-science concept. Around since the 1950s, hash tables provide a quick way to organize data: a simple mathematical operation assigns each file its row in a table; the row stores the file's location. . . .
>
> In the distributed-storage scheme . . . , files are scattered around the Internet, as are the hash tables listing their locations. Each table points to other tables, so while the first hash table searched may not list the file you want, it will point to other tables that will eventually—but still within milliseconds—reveal the file's location. . . .
>
> [I]t's the fundamental power of the technology that excites many computer scientists. "What's striking about it is its huge variety of applications," says Sylvia

>Ratnasamy, a researcher at Intel's laboratory at Berkeley who is exploring ways that distribute storage might change the basic operation of the Internet. "Not very many technologies have such broad potential."

*Id.* Ex. 1. Indeed, the importance of distributed hash tables was even acknowledged by an Amazon engineer, who explained that "we have a history of 10 years of using distributed hash tables to run systems and that becomes very powerful and that algorithm makes things work at massive scales and pretty much nothing else does." *Id.* ¶ 2.

## ARGUMENT AND CITATION OF AUTHORITIES

Patents are presumed valid. 35 U.S.C. § 282(a). It is "rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter . . . because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary.'" *Card Verification Sols., LLC v. Citigroup Inc.*, 2014 WL 4922524, *2 (N.D. Ill. Sept. 29, 2014) (citation omitted). "Thus, dismissal is appropriate solely when the only plausible reading of the patent is that there is clear and convincing evidence of ineligibility." *Id*.

The Supreme Court has established a two-step test to determine whether a patent is eligible under 35 U.S.C. § 101. At step one, the court must determine whether the claims as a whole are "directed to" an abstract idea ("*Alice* step one"). *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). If the claims are not directed to an abstract idea, this ends the § 101 inquiry. *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1257, 1262 (Fed. Cir. 2017). If the court finds the claims are directed to an abstract idea, the court must move on to step two to determine whether the claims contain an "inventive concept" that "transform[s] that abstract idea into a patent-eligible invention." ("*Alice* step two"). *Alice*, 134 S. Ct. at 2357.[3]

---

[3] Where a § 101 motion requires factual development, it is not susceptible to dismissal on a Rule 12(b)(6) motion. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882

5

I.  **Rooted in Technology, The Kove Patents Are Exactly The Type of Inventions The Federal Circuit Routinely Considers Patent-Eligible Under *Alice* Step One.**

Amazon asserts that this case is a "variation on a recurrent theme." Dkt. 38 at 3. It is indeed—the theme that the Federal Circuit routinely holds that improvements in database architecture are eligible for patenting under § 101.

A.  ***Enfish* Provides The Framework For Analyzing The Kove Patents.**

*Enfish* is the seminal Federal Circuit case on database patents, and applies a framework directly applicable in this case. In *Enfish*, the key question was "whether the focus of the claims is on the specific asserted improvement in computer capabilities (i.e., the self-referential table for a computer database) or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). The Federal Circuit analyzed the specification and found that it described the benefits of using the claimed self-referential table—faster searching and more effective data storage—as compared with a conventional database structure. *Id*. at 1333, 1337. Because the claims were directed to this improvement in the computer's functionality, the Federal Circuit found that they were patent-eligible under *Alice* step one. *Id*. at 1336. The *Enfish* court rejected the notion that the claims are directed to a simple "concept of organizing information using tabular formats," *id*. at 1337, because it "oversimplified the self-referential component of the claims and downplayed the invention's benefits," *id*. at 1338. According to the court, "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Id*. at 1337; *Visual Memory*, 867 F.3d at 1255, 1259-60

---

F.3d 1121, 1125 (Fed. Cir. 2018); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018); *United States v. Lasalle Bank, N.A.*, 2008 U.S. Dist. LEXIS 60756, *6 (N.D. Ill. July 29, 2008) ("Courts . . . should not attempt to resolve factual disputes on a motion to dismiss.").

(reviewing the specification and determining that the claims encompassed this improvement in computer capabilities, and were therefore patent-eligible); *SRI Int'l, Inc. v. Cisco Sys.*, 918 F.3d 1368, 1375 (Fed. Cir. 2019) ("The 'focus of the claims is on the specific asserted improvement in computer capabilities'—that is, providing a network defense system that monitors network traffic in real-time to automatically detect large-scale attacks.").

### B. Under The *Enfish* Framework, The Kove Patents Are Not Abstract Ideas.

As Amazon acknowledges, the key test is whether the systems and methods disclosed in the Kove Patents are "necessarily rooted in computer technology." Dkt. 38 at 2, 6, 8. Here, they plainly are. The specification of the Kove Patents describes a specific architecture for storing and retrieving location information across a large distributed computer network that improves upon conventional database storage systems. '170 patent, 2:21-25, 3:10-21, 20:28-29.[4] The claims of the Kove Patents are tailored to these improvements in computer technology. *See, e.g.*, '170 patent, claim 1; '640 patent, claim 18; '978 patent, claim 17.[5]

In conventional systems, when a computer (a "client") seeking information sent a request to a server, typically only data associated with that server was returned. '170 patent, 1:37-40. "The search is thus conducted only where the server knows in advance where to look." *Id.* 1:41-42. Prior

---

[4] The '170 and '640 patents share the same specification, and the '978 patent shares substantially the same specification with the '170 and '640 patents.

[5] Amazon suggests that Kove is limited to the three claims discussed in the Complaint. To the contrary, Kove is not required to identify every claim that has been infringed, which takes place during the claim identification process under the Patent Local Rules—the Complaint merely needs to allege at least one claim for each patent. *See Cascades AV LLC v. Evertz Microsystems, LTD*, 2019 U.S. Dist. LEXIS 5386, *14-15 (N.D. Ill. Jan. 11. 2019). The other claims not discussed by Amazon are not at issue in its § 101 motion. *A. Zahner Co. v. Hendrick Metal Prods., LLC*, 328 F. Supp. 3d 870, 884 (N.D. Ill. July 20, 2018) (Pallmeyer, J.) (denying motion as to claims not discussed because "[i]t would be inappropriate to grant judgment on the pleadings in these circumstances, as the court is required to draw all reasonable inferences in the non-movant's favor.").

systems were limited by traditional hierarchical ways of indexing information. Compl. ¶ 13. These hierarchical indices would need to be periodically updated as information was added. *Id.* The problem was that once the size of the distributed network of data servers became sufficiently complex and constantly changing (i.e., dynamic), it was not possible to constantly update indices. *Id.* ¶¶ 14-17.

The Kove Patents solved this problem by tracking the location information of data files independently of the files themselves by using an intermediate layer of computer servers called "location servers." '170 patent, 3:10-21. These location servers negotiate between the client computers and the data repositories, where the data files are stored. Figure 11 from the '170 patent is instructive. It shows a client computer (112) sending a request for the location information associated with an identifier (used to refer to a data file) to the "server constellation" (110), which is where the location servers reside. Thereafter, the location server returns location information corresponding to the identifier in response to the client request. Once the client has the location information for a data file, the client retrieves the data file directly from the relevant data repository (114). '170 patent, 17:3-9. The Kove Patents aim to separate the *where* from the *what*, allowing for the mappings between identifiers and location information to be distributed across location severs independent of the corresponding data files.

**Claim 1 of the '170 patent.** The '170 patent is directed to a novel computer network architecture, and therefore an improvement in computer functionality. '170 patent, 2:21-25, 20:28-29. Only by ignoring or "rewriting" the plain language of the patent can it be interpreted to apply outside of a computer network environment. Claim 1 begins by stating that it is a system for managing data stored in a distributed network. '170 patent, 20:58-59. The specification makes clear that the claimed distributed network is grounded in computer technology. *Id*. 1:29-32. In this

8

computer environment, a data repository is configured to store a data entity. *Id.* 20:60-61. An identifier string—again, something that only exists in a computer networked environment—identifies the data entity. *Id*. This architecture also features a data location server network—and obviously, a server exists in a connected computer environment, and claim 1 is clear that the server contains a processor, which means it is rooted in computer technology. *Id.* 20:62-21:10. This intermediate data location server, which stores data location for data entities, is an innovative feature of the patented invention, and an improvement to conventional systems. Compl. ¶ 18. The claimed architecture provides for at least one of the data location servers to include location information associated with the identifier string. '170 patent, 20:65-67. Then, claim 1 further makes clear that the portion of the data location information contained on a server is based on a hash function used to organize the location information across the location servers. *Id*. 21:2-10. Thus, the claimed invention contemplates hash function computations across the network of servers, i.e., a "distributed hash table." Each of the data location servers is configured to determine the correct data location server for the incoming request for a data entity based on a hash function applied to the identifier string. *Id*. 21:2-6. This way, when the request from a client lands on a location server that lacks the location information of the desired data entity, it can quickly redirect the request to the location server that can determine the location of the requested information. *Id*. 21:51-54 (claim 6 and more on the "redirect mechanism" below). The use of the "distributed hash table" in this manner by the location servers is one of the key improvements of the claimed architecture discussed in the *MIT Technology Review*. Compl. ¶ 19. The claimed invention not only distributes the data itself across many repositories for the sake of scaling but also distributes the location information independent of the data entities across intermediate servers for the sake of scaling—an extraordinary benefit of this system and rooted in technology to improve the

operation of computers.

This invention is inherently and inextricably rooted in computer technology. The claimed invention is expressly directed to a novel computer architecture, and the specification and surrounding facts describe how this invention improves upon conventional technological solutions. '170 patent, 2:21-25, 20:28-29; Compl. ¶ 12-19. The invention in *Enfish* was far more rudimentary—comprising a database table that had at least one row defined by one column—and yet was found to be eligible for patenting.

**Claim 18 of the '640 patent.** Claim 18 recites substantially the same claimed architecture as claim 1 of the '170 patent, and adds a redirection mechanism. '640 patent, 1:37-41, 1:66-2:8, 3:7-25. This redirection mechanism—which the specification makes clear is a concept rooted in computer technology—is an instruction sent to the client (a user's computer) to assist the client in identifying an alternative data location server in the event the client sends a request to the wrong server. '640 patent, 17:9-20. This is even more of an improvement over the conventional hierarchical databases, because it includes redirection—so, as the *MIT Technology Review* put it, "while the first hash table searched may not list the file you want, it will point to other tables that will eventually—but still within milliseconds—reveal the file's location." Compl. Ex. 1.

**Claim 17 of the '978 patent.** Claim 17 recites substantially the same claimed architecture as claim 1 of the '170 patent, and also includes a transfer mechanism between a "first location server" and a "second location server," where a portion of the identifiers and associated locations is transferred to the second data location server when a performance criterion of the first location server reaches a predetermined performance limit. '978 patent, 1:37-43, 2:1-10. In other words, this patent adds to the claimed architecture a type of load balancing, so that identifiers and location information can be moved to a different location server when certain performance criteria have

10

been satisfied. '978 patent, 21:35-41. Accordingly, the Kove Patents plainly are "rooted in computer technology" and tailored to an improvement and therefore directed to patent-eligible subject matter. Only by "rewriting" the patents can Amazon argue otherwise.

### C. Amazon's Cases Are Not Applicable To The Kove Patents.

The Kove Patents are distinct from the types of claims found to be abstract because they are directed to an improvement in the functioning of a computer. By contrast, the types of claims that are found to be abstract ideas are those "simply adding conventional computer components to well-known business practices." *Enfish*, 822 F.3d at 1338 (citing cases). They also are unlike "the patent-ineligible claims at issue in other cases [that] recited use of an abstract mathematical formula on any general purpose computer . . . . or recited generalized steps to be performed on a computer using conventional computer activity." *Id.* "Much of the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by logical structures and processes." *Id.* at 1339.

The cases cited by Amazon reflect claims far different than those at issue here. Its cases deal with the mere gathering and manipulation of data, as opposed to the structuring of architecture with physical and software components that improve how a computer system operates. For example, in *BSG*, the claim was directed to "presenting summary comparison information to users" and "did not recite any improvement to the way in which . . . databases store or organize information analogous to the self-referential table in *Enfish* or the adaptable memory caches in *Visual Memory*." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018). In *Two-Way*, the claim was found to merely "manipulate[] data." *Two-Way Media Ltd. v. Comcast Cable Comm'cs, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017). The plaintiff there failed to show how the claims were "directed to a scalable network architecture that itself leads to an

11

improvement in the functioning of the system." *Id.* at 1338. And in *TLI*, the court determined the claims were directed to "classifying" and "storing" an image and not directed to "a specific improvement to computer functionality." *In re TLI Comm'cns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016). Unlike *BSG*, *Two-Way*, and *TLI*, the Kove Patents are tailored to improvements in computer database architecture that are highlighted in the specification and claims, and therefore fall squarely under the teachings of *Enfish*. They are not simply directed to "*any* form of" distributed storage, "but instead are specifically directed to" an improvement in distributed storage by, *inter alia*, using intermediate location servers that store location strings using a hash function. *Enfish*, 822 F.3d at 1337.

### D. Amazon's Suggested Rewrite Of The Claims Fails At Many Levels.

Amazon's brief focuses on its physical library card catalogue analogy. There are multiple problems with this approach. **First**, it violates Federal Circuit precedent rejecting oversimplification of claims, which recognize that any claim can be oversimplified to the point of becoming an abstract idea. *Id.* Indeed, "all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious." *Id.* This is particularly the case here because Amazon does not even use the actual claim language, instead substituting non-technical words for the words of the patents, thus fundamentally changing their meaning and scope. It cites no authority for "rewriting" the patents, which marks a fundamental break from Federal Circuit precedent.

**Second**, the Kove Patents plainly are not so broad as to cover physical card catalogues. As shown above, by their very terms, they are rooted in computer technology and are directed to the improvement of that technology. What Amazon suggests in essence is an under-cover claim construction in which its preferred meanings of terms are substituted for the plain and ordinary

12

meaning of those terms—an exercise inappropriate at this stage. *Baxter Int'l, Inc. v. Carefusion Corp.*, 2016 U.S. Dist. LEXIS 63581, *14 (N.D. Ill. May 13, 2016) (At the Rule 12(b)(6) stage, "courts use the claims interpretation most favorable to [the patentee]."). Only by "rewriting" key terms can Amazon argue the claims are not rooted in technology.

***Third***, Amazon's word substitution approach ignores the specification, which *Enfish* and others have made clear is important in determining whether the claims are directed to improvement of an existing technology.[6] *Enfish*, 822 F.3d at 1337-38. It also ignores the Complaint's factual allegations, which must be taken as true and explain the benefits of the Kove Patents' intermediate location servers using distributed hash tables over conventional computer storage systems.

***Fourth***, Amazon's clever word substitution framework proves too much—it would invalidate essentially any database patent, including the one found patent eligible in *Enfish* and even some of Amazon's own patents. *See* U.S. Patent No. 8,996,482 (Amazon patent claiming "[d]istributed system and method for replicating storage of structured data records."). In *Enfish*, for example, the patent could simply be rewritten to describe a "book storage and retrieval system" for a library and the use of a logical table for finding those books. 822 F.3d at 1336.

***Most importantly***, Amazon's analogy misses the fundamental import of the Kove Patents. Conventional server storage systems did, in fact, use hierarchical indexing of location information analogous to card catalogues—that was the very problem with them and what the technological innovations of the Kove Patents overcame. '170 patent, 1:36-39; Compl. ¶¶ 12-19. The problem with these systems was that they could not adapt efficiently to accommodate extremely large data sets. Consider a simple example. If a book is 500 pages long, it could use roughly 1.5 megabytes

---

[6] Amazon also erroneously substitutes the word "author" for the computational terms "identifier." An "identifier," however, is a unique digital fingerprint specific to a given data object. "Author" by contrast does not uniquely identify a given book.

13

of storage. Today's servers are over 200 terabytes in size. A 200 terabyte server could, therefore, store over 133 million books. Amazon can be estimated to have 19.2 million servers—meaning over 2.5 quadrillion books (over 2,500,000,000,000,000 books). And the invention is not just about storing and locating the author and title of these books, as Amazon suggests. It is more akin to storing the entire index of these books and being able to locate them instantaneously, even if hundreds of millions of books are rewritten, added, and subtracted each day. Even if computerized, a simplistic card catalogue system would never be able to hierarchically store such large quantities of dynamically changing information—when, for example, 100 million books were added one day, the hierarchy would need to be rewritten instantaneously to fit the indexes of these books into a static, hierarchical framework. This was the very limitation in the prior art the Kove Patents overcame—they allowed for dynamic data movement because data locations are stored in intermediate servers using hash functions, not in the data repositories themselves in hierarchical fashion. This is why *MIT Technology Review* found this technology to be among the top ten technologies that would change the world. Compl. Ex. 1. It hardly would have given such extraordinary praise to a simplistic library card catalogue on a generic computer. *SRI*, 918F.3d at 1376 ("This is not the type of human activity that § 101 is meant to exclude. . . .").

## II.     *Alice* Step 2 is Unnecessary, But In All Events Is Satisfied.

The Kove Patents are not directed to abstract ideas, and so *Alice* Step 2 is unnecessary. But it nonetheless is satisfied here. The Kove Patents "involve more than performance of well-understood, routine, [and] conventional activit[ies] previously known to the industry.'" *Alice*, 134 S. Ct. at 2359. Amazon argues the "hash function is not a piece of technology" and refers to the '170 patent as "a system for organizing human activity implemented on generic computer parts." Dkt. 38 at 9-10. A hash function here is used as part of a system—it is not what alone is patentable.

14

Indeed, the Federal Circuit has cautioned that just because a patent uses known components does not render it abstract. *BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016.) ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."). For example, the "hash function" is an important aspect of the claimed "data location servers" and enables location information to be distributed across the network of the "data location servers." In that sense, the "data location server" is not "generic" and provides for a specific implementation of the claimed architecture—it is specially programmed to store "portions" of the "data location information" and the "hash function" is used to determine which of the location servers the location information is stored. *Thales Visionix, Inc. v. United States*, 850 F.3d 1343, 1348-49 (Fed. Cir. 2017) (finding claims are not directed to "mathematical equations" because "systems and methods . . . use inertial sensors in a non-conventional manner"). In any event, the "data location servers," "data location information" associated with the "identifier string," and the "hash function" work together in an unconventional manner to achieve an improvement in computer database functionality. *Amdocs v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-01 (finding "generic components . . . operate in an unconventional manner to achieve an improvement in computer functionality."). In addition to the applicable discussion concerning the '170 patent, the redirection mechanism in claim 18 of the '640 patent and the transfer mechanism in claim 17 of the '978 patent demonstrate that the claims are further directed to something more than well-understood, routine, and conventional activities.

## CONCLUSION

Accordingly, Kove respectfully requests that the Court deny Amazon's Motion to Dismiss.

Dated: May 13, 2019                                    Respectfully submitted,

                                                       */s/ Courtland L. Reichman*
                                                       Courtland L. Reichman

                                                       Renato Mariotti (State Bar No. 6323198)
                                                       rmariotti@thompsoncoburn.com
                                                       Thompson Coburn LLP
                                                       55 E. Monroe St., 37th Floor
                                                       Chicago, IL 60603
                                                       Telephone: (312) 346-7500
                                                       Telecopier: (312) 580-2201

Sarah O. Jorgensen (*pro hac vice*)                    Courtland L. Reichman (*pro hac vice*)
sjorgensen@reichmanjorgensen.com                       creichman@reichmanjorgensen.com
Reichman Jorgensen LLP                                 Jennifer P. Estremera (*pro hac vice*)
1201 West Peachtree, Suite 2300                        jestremera@reichmanjorgensen.com
Atlanta, GA 30309                                      Phillip J. Lee (*pro hac vice*)
Telephone: (650) 623-1403                              plee@reichmanjorgensen.com
Telecopier: (650) 623-1449                             Joachim B. Steinberg (*pro hac vice*)
                                                       jsteinberg@reichmanjorgensen.com
Jaime F. Cardenas-Navia (*pro hac vice*)               Michael G. Flanigan (State Bar No. 6309008)
jcardenas-navia@reichmanjorgensen.com                  mflanigan@reichmanjorgensen.com
Reichman Jorgensen LLP                                 Kate M. Falkenstien (*pro hac vice*)
100 Park Avenue, Suite 1600                            kfalkenstien@reichmanjorgensen.com
New York, NY 10017                                     Reichman Jorgensen LLP
Telephone: (646) 921-1474                              303 Twin Dolphin Drive, Suite 600
Telecopier: (650) 623-1449                             Redwood Shores, CA 94065
                                                       Telephone: (650) 623-1401
                                                       Telecopier: (650) 623-1449

                                                       **ATTORNEYS FOR PLAINTIFF
                                                       KOVE IO, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of May, 2019, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Courtland L. Reichman*
Courtland L. Reichman