IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOVE IO, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:18-cv-08175 |
| AMAZON WEB SERVICES, INC., ) | |
| ) | Hon. Judge Rebecca R. Pallmeyer |
| Defendant. ) | |
| ) | |
| ) | |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
aunikowsky@jenner.com

Terri L. Mascherin
Michael Babbitt
Michael T. Werner
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
tmascherin@jenner.com
mbabbitt@jenner.com
mwerner@jenner.com

*Attorneys for Amazon Web Services, Inc.*

Amazon showed in its motion to dismiss that Kove's asserted claims are ineligible for patenting under 35 U.S.C. § 101. Kove's patent specifications recite detailed technological implementations of its proposed protocol, but those technological details do not show up in the claims. Indeed, the claims could just as easily be applied to a library's pre-Internet scheme of organizing its library books and card catalogues.

In its response brief, Kove does not identify any material difference between the asserted claims and methods for organizing library books. Instead, Kove argues that the claims are patentable because they recite generic computer components like "server" and "network." Kove also seeks to minimize the broad, results-oriented language of the claims by pointing to statements in the specification characterizing its invention as a technological improvement. The Federal Circuit has repeatedly rejected identical arguments, and the Court should do the same here.

## I. AT *ALICE* STEP ONE, THE CLAIMS ARE DIRECTED TO ABSTRACT IDEAS.

Relying heavily on the specification and an article from MIT Technology Review, Kove contends that its invention is rooted in technology. But *Alice* requires an analysis of the *claims*—and here, the claims are substantively identical to schemes for organizing library books, implemented on generic "servers" and "networks." Thus, they are directed to abstract ideas.

### A. Under the Federal Circuit's cases, including *Enfish*, the *Alice* step one analysis requires an analysis of the *claim*.

*Alice*'s first step requires the court to determine whether a claim is directed to an abstract idea. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). As the Federal Circuit has repeatedly explained, methods of organizing and retrieving information are directed to abstract ideas. Such claims are not patentable because they are not "necessarily rooted in computer technology," but can instead be implemented "in the human mind." *See, e.g.*, *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018); *see* Amazon Br. 3-5 (collecting cases).

Two other principles are crucial. First, a claim is not patentable merely because the *specification* describes a technological improvement. Rather, the *claim itself* must be directed to patent-eligible subject matter. *See, e.g.*, *Two-Way Media Ltd. v. Comcast Cable Comm's, LLC*, 874 F.3d 1329, 1338-39 (Fed. Cir. 2017) (claim was invalid when "the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept"). Second, claims are not "saved from abstraction merely because they recite" generic computer components, like "servers." *BSG*, 899 F.3d at 1286. Rather, the claims must be "directed to a specific improvement to the way computers operate." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016).

Kove relies heavily on *Enfish,* Kove Br. 6, but *Enfish* does not support Kove's position. In *Enfish*, the claims were directed to a "self-referential" database, which was an improvement over traditional "relational" databases. *Id.* at 1330. The claim at issue recited:

> A data storage and retrieval system for a computer memory, comprising:
>
> *means for configuring* said memory according to a logical table, said logical table including:
>
> a plurality of logical rows, each said logical row including an object identification number (OID) to identify each said logical row, each said logical row corresponding to a record of information;
>
> a plurality of logical columns intersecting said plurality of logical rows to define a plurality of logical cells, each said logical column including an OID to identify each said logical column; and
>
> means for indexing data stored in said table.

*Id.* at 1336 (emphasis added). Because the claim included the phrase "means for configuring," this was a "means-plus-function" claim. *Id.* at 1336 n.3.

Under the Patent Act, means-plus-function claims are "construed to cover the corresponding structure … described in the specification and equivalents thereof." 35 U.S.C. §

112(f) (formerly codified at 35 U.S.C. § 112, ¶ 6); *see Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006) ("Literal infringement of a means-plus-function claim limitation requires that the relevant structure in the accused device perform the identical function recited in the claim *and be identical or equivalent to the corresponding structure in the specification*.") (emphasis added). Thus, in *Enfish*, the specification disclosed the *structure* that performed the "configuring" *function*, and the structure was treated as a claim limitation. 822 F.3d at 1336 n.3, 1345-46. The District Court "construed the 'means for configuring' language as requiring a four-step algorithm":

> 1. Create, in a computer memory, a logical table that need not be stored contiguously in the computer memory, the logical table being comprised of rows and columns, the rows corresponding to records, the columns corresponding to fields or attributes, the logical table being capable of storing different kinds of records.
>
> 2. Assign each row and column an object identification number (OID) that, when stored as data, can act as a pointer to the associated row or column and that can be of variable length between databases.
>
> 3. For each column, store information about that column in one or more rows, rendering the table self-referential, the appending, to the logical table, of new columns that are available for immediate use being possible through the creation of new column definition records.
>
> 4. In one or more cells defined by the intersection of the rows and columns, store and access data, which can include structured data, unstructured data, or a pointer to another row.

*Id.* at 1336-37.

The *Enfish* defendant contended that the claim was abstract because it was "directed to 'the concepts of organizing data into a logical table with identified columns and rows where one or more rows are used to store an index or information defining columns.'" *Id.* at 1337. The Federal Circuit held that this description was "untethered from the language of the claims." *Id.* It pointed out that the claims are "not simply directed to *any* form of storing tabular data, but instead are

3

specifically directed to a *self-referential* table." *Id.* This was "reflected in step three of the 'means for configuring' algorithm," *id.*—a *claim limitation* in this means-plus-function claim.

*Enfish* thus illustrates that determining patentability under § 101 requires an analysis of the *claim*. In *Enfish*, the *claim* contained limitations rooted in database technology that could not be analogized to human activities. Accordingly, the defendant was forced to offer a § 101 argument premised on a description of the claim that was at "a high level of abstraction and untethered from the language of the claims." *Id.* The Court rejected that argument, holding that *particular claim language* disclosed technological improvements that went beyond abstract mental steps. *Id.*

In subsequent cases, the Federal Circuit has not hesitated to invalidate claims in which the claim language was directed to abstract mental steps—even when the specification touted that the invention purportedly improved computer technology. In *Two-Way*, for instance, the patentee characterized the invention in a manner closely similar to Kove's characterization here: as an "improved scalable architecture for delivering real-time information," so as to solve "technical problems" such as "excessive loads on a source server" and "scalability of networks." 874 F.3d at 1333, 1339. But the Court held that the *claims* merely "manipulate[] data" on "generic computer components." *Id.* at 1338. *Accord BSG*, 899 F.3d at 1288 (invalidating claim for "organizing information stored in a database" that purportedly "allows users to quickly and efficiently access … millions of records" when claim language did not disclose technological improvement).

> **B. The claims are directed to abstract ideas because they are substantively indistinguishable from schemes for organizing library books.**

This case is more like *Two-Way* and *BSG* than *Enfish*. Each of the asserted claims is substantively identical to a scheme for organizing library books. Claim 17 of the '978 patent is directed to the abstract idea of receiving and storing location information, and transferring some location information to a different location based on predetermined criteria; a librarian could

implement the identical idea, as applied to updating card catalogues when new books arrive. Claim 1 of the '170 patent is directed to the abstract idea of storing data and location information in different places, and using a "hash function" to find the location information; a librarian could implement the identical idea, as applied to determining which catalogue stores a card corresponding to a particular book. Finally, claim 18 of the '640 patent is directed to the abstract idea of storing location information in multiple places, with information at each place directing the user to the right place; again, a librarian could implement the identical idea, as applied to determining which catalogue stores a card corresponding to a particular book. Amazon Br. 5-12.[1]

Kove does not seriously dispute any of this. While it characterizes Amazon's argument as a "gimmick" and declares that its patents "self-evidently are rooted in technology," Kove Br. 1, it does not actually identify any differences in functionality between the asserted claims and the corresponding methods for organizing library books. Instead, Kove attempts to show that its claims recite technological improvements, Kove Br. 7-10, and then offers five purported "problems" with Amazon's analysis. *Id.* at 12-14. Kove's arguments lack merit.

According to Kove, "[p]rior systems were limited by hierarchical ways of indexing information." *Id*. at 7-8. "The Kove Patents aim to separate the *where* from the *what*, allowing for the mappings between identifiers and location information to be distributed across location severs independent of the corresponding data files." *Id*. at 8. Even setting aside that this generalized description is not connected to any claim language, Kove's description simply

---

[1] Contrary to Kove's suggestion (Kove Br. 7 n.5), Kove cannot avoid dismissal merely by suggesting it might assert *other* patent claims, when those claims are not identified in the complaint or in its brief. Amazon Br. 2 n.2 (citing *Oil-Dri Corp. of America v. Nestle Purina Petcare Co.*, No. 15-cv-1067, 2017 WL 1197096, at *11 (N.D. Ill. Mar. 31, 2017)). Kove cites *A. Zahner Co. v. Hendrick Metal Prods., LLC*, 328 F. Supp. 3d 870 (N.D. Ill. 2018), but in that case, the complaint asserted the claims at issue. *Id.* at 878, 884.

5

underscores that its claims are directed to abstract ideas. They recite ways of organizing and retrieving information that could be implemented just as easily in a library as on a computer network. Indeed, other than the "location server"—which merely is a generic computer that stores information about where data is located—nothing in this description requires a *computer*, much less specialized hardware or software that reflects a genuine technological improvement.

Kove then offers descriptions of the asserted claims, *id.* at 8-10, but they do not assist Kove's case. Kove emphasizes that claim 1 of the '170 patent recites generic computer components: it "features a data allocation server network," which "exists in a connected computer environment," and a "processor," which "means it is rooted in computer technology." *Id.* at 9. But each of these generic components functions exactly as a non-technological object would. For instance, the "network" is simply a series of computers storing information, which serve the same purpose as libraries storing books, and the generic "processor" simply performs the hash function algorithm—just like the human mind. Amazon Br. 8-10.

Kove also points to claim limitations that say *nothing* about computers. For instance, it asserts that an "identifier string" is "something that only exists in a computer networked environment." Kove Br. 9. This is just wrong. A Dewey Decimal code is an "identifier string": it is a number that identifies a book. Likewise, Kove touts the claim's "hash function computations" *id.*, but does not dispute that a hash function is a well-known, abstract mathematical function that could be implemented just as easily on a hand-written chart as on a computer. Moreover, the Federal Circuit has specifically held that a reference to a "hash identifier" or the "use of hashing" does not render a claim non-abstract. *Smart Systems Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1374 & n.9 (Fed. Cir. 2017). Kove declares that the claimed invention "distributes the location information independent of the data entities across intermediate

6

servers for the sake of scaling," *id.,* but aside from the generic term "servers," this language reflects pure data manipulation that works just as well in a library.

Kove's descriptions of the other two asserted claims are equally unavailing. Kove states that claim 18 of the '640 patent "adds a redirection mechanism" which is an "instruction" to "assist the client in identifying an alternative data location server." *Id.* at 10. And it states that claim 17 of the '978 patents adds "load balancing," so that "identifiers and location information can be moved to a different location server." *Id.* But the concepts of an instruction redirecting someone to a different place, or moving things from one place to a different place to balance the load in both places, have existed since time immemorial.

Kove also claims to identify five "problems" with Amazon's card catalogue analogy. Kove Br. 12. None has merit. First, Kove contends that Amazon is "oversimplifying" the claims. *Id.* To the contrary, Amazon's analysis accounts for every claim limitation. Notably, Kove does not identify any specific claim limitation that Amazon has oversimplified.[2]

Second, Kove observes that its claims "plainly are not so broad as to cover physical card catalogues." *Id.* That is true—the claims include generic computer terms like "server" and "network." But it is black-letter law that an otherwise abstract claim is not patentable merely if implemented on generic computer parts. *Alice*, 134 S. Ct. at 2360 (claims that "recite a handful of generic computer components configured to implement" abstract idea are unpatentable).

---

[2] Kove states in a footnote that Amazon should not have substituted "author" for an "identifier," because an "identifier" is a "unique digital fingerprint specific to a given data object." Kove Br. 13 n.6. Kove offers no citation to support this statement, and it directly contradicts the claim language, which states that an "identifier" can be associated with "at least one location." Amazon Br. 7. As Amazon explained, that is why "identifier" is analogous to "author": because an author can have books in multiple locations. *Id.* at 8. But if Kove were correct that an "identifier" referred to a unique object, then it could be analogized to a book "title," which identifies a single book.

7

Moreover, notwithstanding the use of these generic computer terms, Kove's claims have another "frequent feature" of ineligible claims: they are "so result-focused, so functional, as to effectively cover any solution to an identified problem." *Electric Power Group, LLC v. Alstom SA*, 830 F.3d 1350, 1356 (Fed. Cir. 2016). As Amazon's brief explained, the claims are written in broad, results-oriented language. Amazon Br. 14-15. Kove ignores this portion of Amazon's brief. The broad claims in this case reflect the paradigmatic example of the sort of claim language the Federal Circuit has invalidated under § 101. Kove offers no reason to deviate from the abundant case law invalidating such claims.

Third, Kove claims that Amazon "ignores the specification" and Kove's factual allegations. Kove Br. 13. To the contrary, Amazon acknowledges that the "specifications are studded with technical details." Amazon Br. 14. But while a specification can provide context for a claim, it is ultimately the claim itself that must be non-abstract. Here, those technological details do not appear in the claims. As the Federal Circuit has held on similar facts: even if the specification "describe[s] a purported innovative 'scalable architecture,'" "the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept." *Two-Way*, 874 F.3d at 1338-39. Similarly, the MIT Technology Review article (Complaint, Ex. 1) is irrelevant. The article generally describes distributed-storage technology. But it does not mention the patents or even the inventors, much less establish that the claims are non-abstract.

Indeed, here, the roles are reversed from *Enfish*. In *Enfish*, the *defendant* resorted to a generalized description of the claim as abstract, while the *patentee* pointed to particular claim language disclosing technological improvements. The court rejected the defendant's arguments, finding them "untethered from the language of the claims." 822 F.3d at 1337. Here, by contrast, Amazon demonstrated that every claim limitation is precisely analogous to a step in a method or

8

system for organizing library books, while Kove resorts to generalized quotations from the specification and MIT Technology Review. As in *Enfish*, the Court should reject Kove's argument because it is "untethered from the language of the claims." *Id.*

Fourth, Kove claims that Amazon's argument would "invalidate essentially any database patent," including the patent in *Enfish*. Kove Br. 13. Not so: as explained above, the *Enfish* claim was patentable because it recited a technological improvement. These claims do not.

Fifth, and "[m]ost importantly," Kove claims that Amazon "misses the fundamental import of the Kove Patents." *Id.* According to Kove, the patents enable the processing of "extremely large data sets." *Id.* at 13-14. But this purported improvement does not appear in the claims. Thus, in its "most important" argument, Kove cites the specification and MIT Technology Review—not the claims themselves. Moreover, even if the claims recited an "extremely large data sets" limitation, they would be unpatentable. Over and over again, the Federal Circuit has held that abstract data-manipulation steps cannot be patented—even if the patentee insists that those steps make computers work better. *See* Amazon Br. 3-5 (collecting cases); *see, e.g.*, *BSG*, 899 F.3d at 1288 (invalidating claim despite specification's assertion that the invention "allows users to quickly and efficiently access hundreds of thousands or even millions of records"); *Two-Way*, 874 F.3d at 1333, 1339 (invalidating claim despite patentee's assertion that the claim solved "various technical problems," such as "excessive loads on a source server," "network congestion," and "scalability of networks"). Here, too, the claims do not require the "processing of large volumes of information" or contain any other "improvement to computer functionality" that would meaningfully distinguish them from the organization of library books. *Enfish,* 822 F. 3d at 1335.

## II.     AT *ALICE* STEP TWO, THE CLAIMS LACK AN INVENTIVE CONCEPT.

*Alice*'s second step turns on whether the claim recites an "inventive concept" that ensures that the patent "amounts to significantly more than a patent upon the ineligible concept itself."

9

*Alice*, 134 S. Ct. at 2355 (quotation marks and brackets omitted). The use of "well-understood, routine, conventional activities"—such as a "generic computer"—is not enough to establish an inventive concept. *Id.* at 2359 (quotation marks omitted). Here, there is no inventive concept because every limitation in the claims is an abstract data-manipulation step. The fact that the claims recite generic "servers" on a generic "network" does not render them non-abstract.

In its brief discussion of *Alice*'s second step, Kove asserts that the "data location server" is not "generic" because it is programmed to store particular "data location information" and a particular "hash function." Kove Br. 15. Similarly, Kove asserts that the "servers," "information," and "hash function" "work together in an unconventional manner." *Id.*

Kove's argument fails because "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG*, 899 F.3d at 1290. Here, the supposedly "inventive concept" is the fact that the generic server stores "data location information" and performs a "hash function." Yet information storage and math functions are part of the abstract idea—as shown by the fact that the library methods recite these steps as well. The relevant question is whether the "the claim limitations other than the invention's use of the ineligible concept to which it was directed" are inventive. *Id.* at 1290. As applied here: Is there any *difference* between the "library" claims (which Kove does not dispute would be abstract), and the claims as written, that reflects an inventive concept? Kove does not and cannot identify such a difference.

## CONCLUSION

For the reasons set forth above, the Court should dismiss this action because the asserted patent claims are ineligible to be patented under 35 U.S.C. § 101.

10

May 28, 2019

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
aunikowsky@jenner.com

Respectfully submitted,

/s/ Terri L. Mascherin

Terri L. Mascherin
Michael Babbitt
Michael T. Werner
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
tmascherin@jenner.com
mbabbitt@jenner.com
mwerner@jenner.com

*Attorneys for Amazon Web Services, Inc.*

**CERTIFICATE OF SERVICE**

I, Michael Werner, an attorney at the law firm of Jenner & Block LLP, certify that on May 28, 2019, the foregoing Reply Brief In Support of Motion to Dismiss was electronically served on counsel of record via the Court's ECF system.

/s/ Michael T. Werner
Michael T. Werner

2910902.2