```
             IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION


KOVE IO, INC.,                    )
                                  )
                 Plaintiff,       )   Docket No. 18 C 8175
                                  )
           vs.                    )
                                  )
AMAZON WEB SERVICES, INC.,        )   Chicago, Illinois
                                  )   October 31, 2019
                 Defendant.       )   8:52 a.m.


            TRANSCRIPT OF PROCEEDINGS - Motion
    BEFORE THE HONORABLE CHIEF JUDGE REBECCA R. PALLMEYER


APPEARANCES:


For the Plaintiff:        THOMPSON COBURN LLC
                          BY:  MR. MICHAEL PARKS
                          55 East Monroe, 37th Floor
                          Chicago, Illinois  60603



For the Defendant:        JENNER & BLOCK LLP
                          BY:  MS. TERRI L. MASCHERIN
                          353 North Clark Street
                          Chicago, Illinois  60654





Court Reporter:           FRANCES WARD, CSR, RPR, RMR, FCRR
                          Official Court Reporter
                          219 S. Dearborn Street, Suite 2524A
                          Chicago, Illinois  60604
                          (312) 435-5561
                          frances_ward@ilnd.uscourts.gov
```

```
1              THE CLERK:  18 C 8175, Kove versus Amazon Web
2    Services.
3              MR. PARKS:  Good morning, your Honor.
4              Michael Parks, P-a-r-k-s, for plaintiff, Kove.
5              THE COURT:  Good morning.
6              MS. MASCHERIN:  Good morning, your Honor.
7              Terri Mascherin for the defendant, Amazon Web
8    Services.
9              THE COURT:  Good morning.
10             I have seen the motion.  I also saw Ms. Mascherin's
11   response in which she said, essentially, she doesn't have a
12   problem with most of the changes of dates; but with respect
13   to this one issue, an extension of the kind that plaintiff is
14   asking for would require Amazon to miss its opportunity to
15   seek inter partes review because of the pretty strict time
16   deadline.
17             So I think what she is suggesting is two weeks on
18   that one issue.
19             MR. PARKS:  The problem with that, your Honor, is,
20   there is a lot of code here.  There was about 1.2 million
21   lines of code previously.  Amazon produced another
22   1.5 million lines of code yesterday.
23             We know that there is still additional code
24   missing.  And we need to review the code, get all the code --
25   obviously, any code that's missing -- and review it and
```

1   digest it before we can finalize the list of asserted claims.
2   There is just no practical way to do that in the
3   time frame that Amazon is proposing.  That's why we are
4   asking for the 60 days.
5   We are trying to push this forward as fast as we
6   possibly can.  I have no desire to do anything else.  But we
7   just need that additional time to analyze all the code so we
8   can finalize the list of claims.
9   THE COURT:  Well, if you were pushing as fast as
10  you are suggesting, why didn't this come up before it did?
11  I understand that you didn't respond in July when
12  the first production was made until quite recently, and
13  that's part of the reason that this disclosure was so late.
14  MR. PARKS:  Your Honor, we were trying to
15  analyze -- the team was, I should say -- all of the
16  underlying information so that we are prepared to review the
17  source code efficiently, go through it and make sure we
18  understand what's in this complicated source code.
19  The team did not know about Amazon's patent office
20  strategic timing design until Monday.  We didn't know about
21  that.
22  And quite candidly, if that were Amazon's goal, to
23  get this -- what they are trying to get is a convenience
24  here.  They are not precluded from filing the IPRs.
25  THE COURT:  Right.

1    MR. PARKS: They want a convenience to make it less
2 work on their part.
3    If that were the goal -- and again, we didn't know
4 about that until Monday -- you know, I would have thought
5 they would have made an effort to make sure this code -- all
6 of it -- was produced early on so that this wouldn't be an
7 issue.
8    It, frankly, is just a very practical problem that
9 we can't get through all of this code in the time frame that
10 they are demanding.
11    THE COURT: It may be less work on their part.
12 It's also less work on the part of the PTO, presumably --
13 whoever is doing the *inter partes* review -- if they are able
14 to say, here are the claims we are actually concerned about,
15 and here are the ones we are really not.
16    I can see what you are up against, but I guess I
17 think -- is there some date longer than two weeks but less
18 than 60 days that would still enable an effective submission
19 for *inter partes* review?
20    MR. PARKS: Well, I mean, what they are attempting
21 with the *inter partes* review, I think that's an issue on
22 their end. They are trying to get it done by December 16th.
23    We have looked at this, and we have tried to think
24 about, what is the quickest way we can get this done?
25 Because, again, we want to push it as fast as we can with the

1  review; and we can't, your Honor, unfortunately, do it in any
2  less time than that.
3      THE COURT: Ms. Mascherin, anything else?
4      MS. MASCHERIN: Just a couple of points.
5      Number one, it isn't really just a matter of
6  convenience. It's a matter of knowing what we are being sued
7  on so that when we go for *inter partes* review, we can address
8  the claims that we are being sued on.
9      Right now there are 40-some claims that are in the
10 contentions, which is double what can be -- you know, what
11 the local patent rules allow to proceed.
12     With respect to the IPR deadline, of course it's
13 jurisdictional. It's not extendible. And it was very much
14 in Amazon's mind when we negotiated all of these deadlines.
15     Kove wanted a more aggressive schedule when we
16 negotiated all of the case -- you know, deadlines. We wanted
17 some things to take -- we wanted more time for some things,
18 like claim construction. So we agreed to push that back a
19 little bit farther.
20     But we held firm that we needed to have a deadline
21 in November for the narrowing of the claims, because we
22 knew -- and we assumed Kove was aware -- there is a one-year
23 statutory deadline. That's well-known. The complaint was
24 served in December, so the deadline is December. There is
25 nothing we can do about that deadline.

1              I'm always loath to bring discovery disputes to the
2    Court.  I try to agree to as much as I can agree to.  But it
3    really does put our client in a position where we are
4    prejudiced with respect to being able to focus what we
5    present in the *inter partes* review.
6              As you mentioned, it also requires -- if we have to
7    move for *inter partes* review on more claims than are
8    ultimately going to be at issue here, it requires the PTO to
9    address a lot, which this -- a lot of claims, which will
10   never get before this Court even if we are successful in the
11   PTO.
12             Perhaps one more week, to the end of -- which would
13   put us at the end of November, would give us at least two
14   weeks to be able to complete an IPR petition.  I just can't
15   agree to 60 days because it puts us significantly past that
16   deadline.
17             With respect to what Kove needs or doesn't need, I
18   think your Honor has gotten the point about the delay in
19   seeking the code.  And we have been -- we have responded as
20   quickly as is humanly possible.
21             This most recent production, they sent us a list of
22   what they wanted, I believe it was last Friday, and we
23   responded already.  We collected it over the weekend from our
24   client and produced it yesterday.
25             So it's not as if we are trying to drag this out.

1  We are not.  We are trying to get done what we need to get
2  done in the case.
3           If a three-week extension would give them more
4  time, I think we could live with that.
5           I will also say that we produced, back in July and
6  August, about 60,000 pages of other technical documents plus
7  multiple training videos.  Those technical documents include
8  all the training manuals, the technical manuals, and the
9  training videos that Amazon itself uses to train its own
10 new-hire engineers about exactly how the functions of these
11 products work.
12          So there is a substantial amount of technical
13 information that Kove has had for several months.
14          The source code is merely the computer language
15 that executes those functions, which are fully described in
16 the technical documents that were produced months ago.
17          So I appreciate that they want the code.  I can
18 understand why they would want the code, ultimately, in the
19 case.  But it's not a situation where they haven't had
20 sufficient technical information, really, to understand the
21 products for quite some time.
22          MR. PARKS:  Your Honor, this is a code-based case.
23 I mean, there is no way for us to finalize infringement
24 contentions without doing a thorough review of the source
25 code.

1     And they produced 1.5 million lines of code last
2 night. If we have to put a list of final claims in without
3 being able to analyze that code, we are going to be really
4 prejudiced in this case, because we are not going to have the
5 information to do it.
6     THE COURT: Wasn't the 1.5 million lines of code
7 requested by your office quite recently? Because it was in
8 addition to the 1.2 that was submitted earlier, correct?
9     MR. PARKS: What happened is, the request was made
10 back in July.
11     THE COURT: Right. Wait. Which request?
12     MR. PARKS: The initial request for the source code
13 was made back in July.
14     THE COURT: And it was complied with in July.
15     MR. PARKS: It was complied with -- well, partially
16 complied with beginning of October.
17     THE COURT: It was partially complied with in July
18 and then more recently amplified.
19     MR. PARKS: No. It was October. I'm sorry. It
20 was all October. There wasn't any code produced by Amazon --
21     THE COURT: Oh, you didn't get the 1.2 million --
22     MR. PARKS: No, no. This is all in October. The
23 1.2 million lines came in October, and an additional
24 1.5 million lines came last night. And there is still more
25 that we know we are going to need.

1        If this had come back in July -- okay, fine -- we
2  could have gone through it by then, but it just came this
3  month.
4        MS. MASCHERIN:  May I clarify what happened in
5  July, your Honor, for you?
6        THE COURT:  Sure.
7        MS. MASCHERIN:  In July, the request was for the
8  complete source code for two products, DynamoDB and
9  Amazon S3.
10       The combined code for those two products is some
11 10,000 packages.  It includes all sorts of things that have
12 no relevance, like, how do you direct something that you
13 found to a printer if you want to print it, or, you know,
14 things that really have no relevance to the functions in the
15 complaint -- you know, identified in the complaint.
16       So we said -- we objected to that as overbroad.  We
17 said, however, we want to work with you.  And this is in our
18 written objections.  We said, we want to meet and confer with
19 you.  We want you to identify for us the particular
20 functionalities that you want the code for, and then we will
21 produce those.
22       So we made that offer.  We still produced all the
23 other technical documents.
24       We -- hearing nothing from Kove for three months,
25 in early October, we sent a letter saying, we are prepared to

1  produce the code that we think you will need.  We renew our
2  request to meet and confer if there are specific functions
3  that you want the code for.
4          And it wasn't until we sent that letter that Kove
5  first said, oh, yes, we would like to have a meet and confer.
6  And that happened on October 15th.
7          So our letter was October 11th.  Theirs was
8  October 15th.  We produced the code within a week, the
9  initial packages of code.
10          They said, we want some more packages.
11          We said, tell us what you need.
12          They sent us a letter last Friday.  We produced it
13  in four days.
14          THE COURT:  Got it.
15          MS. MASCHERIN:  So we are able to respond.  We made
16  our best faith effort in early October to produce what our
17  engineers thought was the universe of packages that they
18  would need.
19          THE COURT:  Because you had not gotten a
20  response --
21          MS. MASCHERIN:  Right.
22          THE COURT:  -- in July.
23          MS. MASCHERIN:  Right.
24          THE COURT:  I am going to extend the date to
25  December 2nd.

MS. MASCHERIN: Okay. Thank you, your Honor.

THE COURT: Thank you.

MR. PARKS: Thank you, your Honor.

THE COURT: Thank you.

    \*   \*   \*   \*   \*

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Frances Ward                       November 15, 2019.
Official Court Reporter
F/j