**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KOVE IO, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:18-cv-08175 |
| AMAZON WEB SERVICES, INC., | ) |
| | ) Hon. Rebecca R. Pallmeyer |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF
<u>DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
aunikowsky@jenner.com

Terri L. Mascherin
Timothy J. Barron
Michael T. Werner
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
tmascherin@jenner.com
tbarron@jenner.com
mwerner@jenner.com

*Attorneys for Amazon Web Services, Inc.*

**INTRODUCTION**

Plaintiff Kove IO, Inc. ("Kove") accuses Defendant Amazon Web Services, Inc. ("AWS") of infringing U.S. Patent Nos. 7,233,978, 7,103,640, and 7,814,170. Pursuant to Federal Rule of Civil Procedure 12(c), the Court should enter judgment on the pleadings in favor of AWS with respect to claims 1, 3, 6, 10, 14, and 31 of the '978 patent because those claims are invalid for obviousness-type double patenting in view of the '640 and '170 patents.

"The ban on double patenting … is designed to prevent an inventor from securing a second, later expiring patent for the same invention." *Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Trust*, 764 F.3d 1366, 1373 (Fed. Cir. 2014). Likewise, if a later-expiring patent is obvious in light of an earlier-expiring patent, the later-expiring patent is invalid for "obviousness-type" double patenting. *Id.* at 1378-79. In this case, the '978 patent is invalid because it is directed to the same invention as the '640 and '170 patents, yet expires later.

The '640 and '170 patents expired on April 8, 2020. At any time before that date, Kove could have fixed its double patenting problem by filing a "terminal disclaimer"—a statement dedicating to the public the portion of the '978 patent term extending beyond the expiration of the '640 and '170 patents. But because that date has passed, the problem can no longer be fixed, and the '978 patent is invalid under the double patenting doctrine. *Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*, 592 F.3d 1340, 1347-48 (Fed. Cir. 2010).

Kove asserts ten claims of the '978 patent in this case. Ex. A. AWS contends that all ten are invalid for obviousness-type double patenting. However, AWS seeks judgment with respect to only six of those claims in this motion. With respect to the other four, extrinsic evidence may be helpful, and AWS thus intends to move for summary judgment at the appropriate time.

## BACKGROUND

### A. The Double Patenting Doctrine

AWS seeks judgment on the pleadings based on the doctrine known as "obviousness-type double patenting." "[O]bviousness-type double patenting is grounded in the text of the Patent Act." *Abbvie*, 764 F.3d at 1372. Specifically, "Section 101 reads: 'Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter ... may obtain *a* patent therefor.'" *Id.* (citing 35 U.S.C. § 101, emphasis in original). "Thus, § 101 forbids an individual from obtaining more than one patent on the same invention, i.e., double patenting." *Id.* "The ban on double patenting ensures that the public gets the benefit of the invention after the original period of monopoly expires." *Id.* at 1373.

An inventor cannot evade the double patenting doctrine by obtaining a later-expiring patent containing only small differences from the earlier-expiring patent. Rather, "it is a bedrock principle of our patent system that when a patent expires, the public is free to use not only the same invention claimed in the expired patent but also obvious or patentably indistinct modifications of that invention." *Gilead Sciences, Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1214 (Fed. Cir. 2014). "[T]hat principle is violated when a patent expires and the public is nevertheless barred from practicing obvious modifications of the invention claimed in that patent because the inventor holds another later-expiring patent with claims for obvious modifications of the invention." *Id.* (citation omitted). "Thus, if the later expiring patent is merely an obvious variation of an invention disclosed and claimed in the reference patent, the later expiring patent is invalid[.]" *Abbvie*, 764 F.3d at 1379 (quotation marks and alterations omitted).

Double patenting issues arise when the same inventor holds two similar patents that expire on different dates. Under 35 U.S.C. § 154(a)(2), a patent term ordinarily ends "20 years from the

date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications under section 120, 121, or 365(c) of this title, from the date on which the earliest such application was filed." Patent terms may be extended, however, when the Patent Office is responsible for delay in issuance of a patent. 35 U.S.C § 154(b).[1] As a result, "[p]atents claiming overlapping subject matter that were filed at the same time still can have different patent terms due to examination delays at the PTO." *Abbvie*, 764 F.3d at 1373 (citing 35 U.S.C. § 154(b)). "When such situations arise, the doctrine of obviousness-type double patenting ensures that a particular invention (and obvious variants thereof) does not receive an undue patent term extension." *Id.*

To avoid invalidation of a patent for double patenting, inventors may file a terminal disclaimer. "[A] terminal disclaimer can preserve the validity of the later-expiring patent by aligning its expiration date with that of the earlier-expiring patent. That disclaimer will most effectively enforce the fundamental right of the public to use the invention claimed in the earlier-expiring patent and all obvious modifications of it after that patent's term expires." *Gilead*, 753 F.3d at 1217. For instance, if one patent has an expiration date of January 1, 2020, and a second patent has an expiration date of January 1, 2021, the patentee can file a terminal disclaimer for the second patent which disclaims the last year, so that both patents expire on January 1, 2020.

But there is a deadline for filing a terminal disclaimer: the expiration of the earlier-expiring patent. As the Federal Circuit has explained:

> [W]hen a patentee does not terminally disclaim the later patent before the expiration of the earlier related patent, the later patent purports to remain in force even after the date on which the patentee no longer has any right to exclude others from practicing the claimed subject matter. By permitting the later patent to remain in force

---

[1] Because patent terms expire 20 years from the *application* date, but patentees do not enjoy a monopoly until the *issuance* date, Patent Office delays may unfairly shorten the period of monopoly. Section 154(b) was enacted to remedy that unfairness. *See Wyeth v. Kappos*, 591 F.3d 1364, 1366-67 (Fed. Cir. 2010).

> beyond the date of the earlier patent's expiration, the patentee wrongly purports to inform the public that it is precluded from making, using, selling, offering for sale, or importing the claimed invention during a period after the expiration of the earlier patent. . . . By failing to terminally disclaim a later patent prior to the expiration of an earlier related patent, a patentee enjoys an unjustified advantage—a purported time extension of the right to exclude from the date of the expiration of the earlier patent. The patentee cannot undo this unjustified timewise extension by retroactively disclaiming the term of the later patent because it has *already* enjoyed rights that it seeks to disclaim.

*Boehringer Ingelheim Int'l GmbH*, 592 F.3d at 1347-48 (emphasis in original). If the earlier-expiring patent expires and the later-expiring patent purports to remain in force, the later-expiring patent is invalid under the double patenting doctrine. *Id.* at 1348-49.

### B. Kove's patents

Kove has sued Amazon for infringing the '640, '170, and '978 patents. The '640 patent application was filed on September 13, 2000, and claims priority to Patent Application No. 09/111,896, filed on July 8, 1998. Ex. B, 1:6-12, certificate of correction. Thus, because "the application contains a specific reference to an earlier filed application," it expires 20 years from the date of that earlier-filed application: July 8, 2018. 35 U.S.C. § 154(a)(2). But because of purported examination delays, the patent received a 640-day term extension under 35 U.S.C. § 154(b). Ex. B. It therefore expired 640 days after July 8, 2018—on April 8, 2020.

The '170 patent application was filed on February 13, 2006, and is a continuation-in-part[2] of the same Patent Application No. 09/111,896. Ex. C. Without a term extension, it would expire on July 8, 2018. *See Clinicomp Int'l, Inc. v. Cerner Corp.*, No. 17cv2479-GPC(BLM), 2018 WL 2229364, at *7 (S.D. Cal. May 16, 2018) (continuation-in-part patent expires 20 years from filing

---

[2] A "continuation-in-part application contain[s] a portion or all of the disclosure of an earlier application together with added matter not present in that earlier application." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 552 F.3d 1299, 1304 n.3 (Fed. Cir. 2008).

of earliest-filed application in family). But because of purported PTO delays, the '170 patent received an extension of 749 days—exceeding the extension for the '640 patent. However, the inventors filed a terminal disclaimer relative to the '640 patent. Ex. D. Thus, the '170 patent expired on the same date as the '640 patent, April 8, 2020.

The '978 patent application was filed on June 1, 2001. It is a continuation-in-part of the same Patent Application No. 09/111,896. Ex. E. Thus, without a patent term extension, it would expire on July 8, 2018. Because of PTO delays, it received a patent term extension of 810 days. *Id*. It therefore expires 810 days after July 8, 2018—on September 25, 2020. Unlike the '170 patent, the '978 patent is not subject to a terminal disclaimer.

AWS's Initial Invalidity Contentions disclosed double patenting as an invalidity ground for the '978 patent. Ex. F, 20. In response, Kove stated: "The '170 patent issued with a terminal disclaimer over both the '640 patent and the '978 patent, thereby obviating any issues of double-patenting." Ex. G, 12. But those terminal disclaimers expressly state that they apply only to the '170 patent, not the '978 patent. Exs. D, H. AWS's Final Invalidity Contentions, served February 13, 2020, again disclosed double patenting as an invalidity ground for the '978 patent. Ex. I, 9-12, 29. Kove could have avoided invalidation of the '978 patent by filing a terminal disclaimer before the expiration of the '640 and '170 patents, but it did not.

## ARGUMENT

Because the '640 and '170 patents have now expired, they are double patenting references against the '978 patent. The Court should hold that claims 1, 3, 6, 10, 14, and 31 of the '978 patent are invalid because they are not patentably distinct from the claims of the '640 and '170 patents.

5

**I.     The Double Patenting Doctrine Applies to This Case.**

As a threshold matter, this is an appropriate case for application of the double patenting doctrine. In *Abbvie*, the Federal Circuit explained: "Patents claiming overlapping subject matter that were filed at the same time still can have different patent terms due to examination delays at the PTO." 764 F.3d at 1372 (citing 35 U.S.C. § 154(b)). This case presents that scenario: because the '640 patent and '978 patent claim priority to the same application filed on July 8, 1998, but were subject to different periods of examination delay, they expire on different dates. Thus, the earlier-expiring '640 patent may be used as a double patenting reference against the later-expiring '978 patent. *See id.* ("When such situations arise, the doctrine of obviousness-type double patenting ensures that a particular invention (and obvious variants thereof) does not receive an undue patent term extension."). Likewise, the '170 patent expired earlier than the '978 patent, both because it received a shorter term extension (until July 2020) and because of the terminal disclaimer ensuring it would expire in April 2020.

This problem could easily have been avoided. During prosecution of the '978 patent, the inventors could have filed a terminal disclaimer with respect to the '640 patent. Had they done so, the Patent Office would have been statutorily barred from granting a patent term extension under 35 U.S.C. § 154(b) extending past the expiration date of the '640 patent. *See* 35 U.S.C. § 154(b)(2)(B) ("No patent the term of which has been disclaimed beyond a specified date may be adjusted under this section beyond the expiration date specified in the disclaimer."). But because the inventors did not file a terminal disclaimer, the Patent Office granted a term extension extending beyond the expiration of the '640 patent. Thereafter, Kove or a prior owner could have prevented a double patenting problem by filing a terminal disclaimer on the '978 patent at any time before the '640 patent expired in April 2020. They never did. Thus, Kove is purporting to

6

claim a monopoly until September 2020 for subject matter that should now be in the public domain. This case thus presents the "unjustified timewise extension of the right to exclude granted by a patent" that the double patenting doctrine was designed to prevent. *Boehringer*, 592 F.3d at 1347.

**II. Claims 1, 3, 6, 10, 14, and 31 of the '978 Patent Are Invalid Under the Doctrine of Obviousness-Type Double Patenting.**

AWS contends that all ten asserted claims of the '978 patent are invalid for double patenting. In this motion, AWS addresses six of those claims—claims 1, 3, 6, 10, 14, and 31— because no extrinsic evidence is necessary to establish the invalidity of those claims.

**A. Claims 1, 3, 6, 10, 14, and 31 are fully supported by the '640 application.**

The '170, '640, and '978 patents are related to each other—the '170 patent is a continuation of the '640 patent, while the '978 patent is a continuation-in-part of the '640 patent. Exs. B-C, E. Continuation applications are patent applications filed by an applicant who seeks to pursue additional claims for an invention previously disclosed in an earlier application, with the same priority date as that earlier application. *See* 35 U.S.C. § 120 ("An application for patent for an invention disclosed … in an application previously filed … shall have the same effect, as to such invention, as though filed on the date of the prior application."). "[B]y definition, … continuations can claim no new inventions not already supported in the earlier issued patents." *Endo Pharms. Inc. v. Actavis, Inc.*, 746 F.3d 1371, 1378 (Fed. Cir. 2014) (quotation marks omitted). Continuation-in-part applications "contain[] a portion or all of the disclosure of an earlier application together with added matter not present in that earlier application." *PowerOasis*, 552 F.3d at 1304 n.3. Thus, continuation-in-part patents "could contain different claims entitled to receive different effective filing dates in the same patent," depending on whether the claims are "fully supported by the parent application" or "rely on the new matter for support." *Id.* at 1305 n.4.

7

Here, the '978 patent's designation as a continuation-in-part means that for some claims—those that are fully supported by the '640 patent application—the '978 patent is a continuation of the '640 patent. For other claims—those that are not fully supported by the '640 patent application—the '978 patent is not a continuation of the '640 patent. Claims 1, 3, 6, 10, 14, and 31—the claims at issue in this motion—fall into the first category. Kove's own infringement contentions make this clear.[3] In those infringement contentions, for claims 3, 6, 10, and 14, Kove asserts a priority date ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. J, 6.[4] For claims 1 and 31, Kove asserts ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id*. This refers to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. B. Thus, claims 1, 3, 6, 10, 14, and 31 of the '978 patent are fully supported by the '640 patent application or an earlier application in the same chain.

Thus, this presents a paradigmatic case for applying the double patenting doctrine. An application can claim priority to an earlier application *only if* the application seeks a patent over the same "invention disclosed" in the prior application. 35 U.S.C. § 120. In other words, because the '170 patent is a continuation of the '640 patent, those patents disclose the same invention; and to the extent the '978 patent is a continuation of the '640 patent, those two patents disclose the same invention. Yet although Kove filed a terminal disclaimer for the '170 patent, it did not file one for the '978 patent. Thus, Kove did what the double patenting doctrine prohibits: obtain "a second, later expiring patent for the same invention." *Abbvie*, 764 F.3d at 1373.

---

[3] Although this is a Rule 12(c) motion, the Court may take judicial notice of Kove's admissions in this case. *See Certusview Techs., LLC v. S&N Locating Servs., LLC*, 198 F. Supp. 3d 568, 581 (E.D. Va. 2016) (taking judicial notice of parties' admissions during patent litigation).
[4] The '640 patent application was filed on September 13, 2000. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8

### B. Claims 1, 3, 6, 10, 14, and 31 of the '978 patent are not patentably distinct from the claims of the '640 and '170 patents.

Given the close relationship between the '978, '640, and '170 patents, it is hardly surprising that claims 1, 3, 6, 10, 14, and 31 of the '978 patent are not patentably distinct from the claims of the '640 and '170 patent. To apply the doctrine of obviousness-type double patenting, the Court first "construes the claims in the earlier patent and the claims in the later patent and determines the differences," and then "determines whether those differences render the claims patentably distinct." *Abbvie*, 764 F.3d at 1374 (quotation marks and alterations omitted). "A later claim that is not patentably distinct from, i.e., is obvious over or anticipated by, an earlier claim is invalid for obviousness-type double patenting." *Id.* (quotation marks and alterations omitted).

In conducting a double patenting analysis, a specification is not treated as prior art, but it "may be used to learn the meaning of terms and in interpreting the coverage of a claim." *In re Basell Poliolefine Italia S.P.A.*, 547 F.3d 1371, 1378 (Fed. Cir. 2008) (quotation marks and alterations omitted). "It may also be used to answer the question whether claims merely define an obvious variation of what is earlier disclosed and claimed." *Id.* The specification "sets forth at least one tangible embodiment within the claim, and it is less difficult and more meaningful to judge whether [something] has been modified in an obvious manner." *Id.* at 1378-79 (quotation marks omitted); *accord Abbvie*, 764 F.3d at 1380 (in double patenting analysis, courts "may look to a reference patent's disclosures of utility to determine the question of obviousness").

Under that standard, Claims 1, 3, 6, 10, 14, and 31 of the '978 patent are invalid for double patenting. For the Court's convenience, AWS submits a claim chart in Appendix A, showing that the claim elements in these claims are found in claims of the '640 and '170 patents.

**Claims 1 and 3.** Claims 1 and 3 of the '978 patent are obvious in view of claim 18 of the '640 patent and claim 6 of the '170 patent. Claim 1 of the '978 patent recites a "system having a

9

plurality of location servers for managing location information and providing location information to location queries." Ex. E. The "first location server" contains "a first set of location information" consisting of an "identifier" and "location string associated with the identifier." *Id.* The "second location server" contains a "second set of location information" differing from the first set. *Id.* "Programming logic stored on each of the location servers responsive to a location query" allows them to "return a location message" containing the "location of data," if the "location server" contains the desired "location information." *Id.* Claim 3 of the '978 patent depends from claim 1, and adds the limitation of programming logic that can return either a "location message," if the location server contains the desired location information, or a "redirect message comprising information for finding a location server known to have location information relevant to the location query," if it does not. *Id.*

Claim 18 of the '640 patent and claim 6 of the '170 patent disclose all of those limitations. Claim 18 of the '640 patent claims a "system for retrieving data location information for data stored in a distributed network." App'x A at 1-2; Ex. B. It discloses "a plurality of data location servers," at least one of which contains "location information associated with" an "identifier string." *Id.* It discloses "computer executable logic configured to execute the following steps": "if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information"; "if the data location server does not contain the location string associated with the identification string," "the location server transmits a redirect message" which "contains redirect information for use by the client to calculate a location of a different data location server" which "contains the location string." *Id.*; *see also* App'x A at 2. Claim 6 of the '170 patent, likewise, discloses a "location server" which returns a "location message if the location server contains location

10

information for the desired entity," and a "redirect message" if it does not, "comprising a list of at least one other location server known to have the location information for the desired entity." Ex. C; *see also* App'x A at 9.

**Claim 6** of the '978 patent is obvious in view of claim 24 of the '640 patent and claim 10 of the '170 patent. Claim 6 of the '978 patent depends from claim 1 and adds the following limitation: "wherein the location information in the location server is maintained in an indexed location store indexed by a hash table." Ex. E. Similarly, claim 24 of the '640 patent depends from claim 18 and recites that the "location information comprises a portion of a hash table distributed over the plurality of data location servers," while claim 10 of the '170 patent depends from claim 9 (which, in turn, depends from claim 6) and recites that the "location information" is "maintained in an indexed location store" comprising a "string store indexed by a hash table." Exs. B, C; *see also* App'x A at 2, 9.

**Claim 10** of the '978 patent is obvious in view of claim 18 of the '640 patent and claim 6 of the '170 patent. Claim 10 of the '978 patent recites a system with a "plurality of location servers for … providing location information to location queries." Ex. E. A "location server" "returns a location message," if it "contains location information for the desired identifier," and, if it does not, it returns a "redirect message" comprising "information for finding a location server having location information related to the desired identifier." *Id*. As explained above, claim 18 of the '640 patent and claim 6 of the '170 patent disclose all of those limitations.

Claim 10 also includes the following claim limitations:

> **[1]** the location information formatted according to a transfer protocol configured for manipulating location information, **[2]** and comprising at least one application server address, **[3]** wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information.

*Id*. These claim limitations do not render claim 10 patentably distinct. *See* App'x A at 3-4 ('640 patent), 10-11 ('170 patent).

[1] "The location information formatted according to a transfer protocol configured for manipulating location information." Claim 6 of the '170 patent likewise discloses a "location addition request formatted in conformance with a transfer protocol," and a "location message in conformance with the transfer protocol." Ex. C; *see also* App'x A at 10.

As for the '640 patent, although the words "transfer protocol" do not appear in the '640 patent claims, it is clear from the '640 specification that the '640 patent *describes* a "transfer protocol." The title of the '640 patent is "NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL." The abstract begins: "A network distributed tracking wire *transfer protocol* for storing and retrieving data across a distributed data collection. The *protocol* includes a location string for specifying the network location of data associated with an entity in the distributed data collection …." Ex. B (emphasis added). Claim 18 then describes a system embodying the "transfer protocol" disclosed in the specification. *Id*. In other words, the '640 patent specification describes a "transfer protocol," and then the claims recite the features of the "transfer protocol" described in the specification. *See* App'x A at 3. In the '978 patent, Kove merely lifted the words "transfer protocol" from the specification and put it in some of the claims. This is not enough to entitle Kove to an additional patent with additional exclusivity time.

[2] "comprising at least one application server address." Although the words "application server" do not appear in the other patents' claims, this is not a patentable distinction.

The '978 specification recites: "Typically, each machine in which some portion of the data in a distributed database may reside is called an application server." Ex. E, 1:61-63. It further recites: "Upon receipt of an identifier and location from a first client, where the location represents

12

a location of an application server in the network containing data stored by the first client related to an entity represented by the identifier, the location is stored in a location store at the first location server." *Id*., 2:62-67. Thus, the "application server" is simply the name of the server in the distributed network that stores data.

Claim 18 of the '640 patent discloses a distributed network that stores data: it is a "system for retrieving data location information for *data stored in a distributed network*." Ex. B (emphasis added). So does claim 6 of the '170 patent: a "location specifies a location of *data in a network*." Ex. C. Thus, in the '978 patent, Kove merely coined a new term for the servers that make up that distributed network—"application servers"—and put that term in some of the claims. That is not a substantive distinction entitling Kove to a second patent with a distinct period of exclusivity.

**[3]** "<u>wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information</u>." Again, although the '640 and '170 patent claims do not use the exact words that appear in claim 10 of the '978 patent, there is no patentable distinction.

The specifications of the '640 and '170 patents state:

> Fig. 12 illustrates a cluster topology for client interaction with NDTP servers 120.… The basic idea is that a client asks a server 120a to process an index operation. If the contacted server 120a does not have all the information, as for example in a redirect, then it passes the request to another server 120b.

Ex. B, 17:61-18:2, Ex. C, 18:9-17; *see also* App'x A at 3-4, 10-11. The claims of both patents disclose the cluster topology's "basic idea," *id.*, described in the specification. Claim 18 of the '640 patent and claim 6 of the '170 patent disclose a system in which an aggregate amount of location information is distributed across multiple location servers, which send a redirect message if they do not have the desired location information. Moreover, claim 8 of the '170 patent depends from claim 6 and recites "each of a plurality of location servers in the network stores only a portion

13

of the data location information," while claim 1 of the '170 patent similarly recites "data location information for a plurality of data entities is stored in the data location server network … each one of the plurality of data location servers comprises … a portion of the data location information." Ex. C. This is a close match to the "each location server contains a unique set of location information of an aggregate set of the location information" limitation in claim 10 of the '978 patent. *See Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 689 F.3d 1368, 1377 (Fed. Cir. 2012) (under double patenting doctrine, claims of reference patent are considered "as a whole").

Thus, Kove has simply lifted the words "cluster topology" from the specification of the '640 and '170 patents and put them into claim 10 of the '978 patent. This is not a new invention entitling Kove to a new patent; it is simply describing the same concept in different words. Therefore, claim 10 of the '978 patent is invalid in view of the '640 and '170 patents.

**Claim 14** of the '978 patent is obvious in view of claim 18 of the '640 patent and claim 15 of the '170 patent. Claim 14 of the '978 patent is a method claim comprising the steps of "receiving a location query from a client at one of the plurality of location servers"; "sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query," and "sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query." Claim 18 of the '640 patent likewise discloses a system comprising: "a client responsive to a data query to query a data location server for location information"; "if the data location server contains the location string associated with the identification string … the data location server transmits location information for use by the client"; "if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message." Ex. B; *see also* App'x A at 5-6. And claim 15 of the '170 patent recites the steps of

14

"receiving a location query from a client at one of the plurality of location servers," "sending a location response message to the client … comprising the location information," and "sending a redirect message to the client … identifying which of the plurality of location servers includes the location information." Ex. C; App'x A at 12-13. Claim 14 of the '978 patent also includes the phrases "unique set of location information of an aggregate set of location information" and "application server," but as explained above, those are not patentable distinctions.

Finally, **Claim 31** of the '978 patent is obvious in view of claim 18 of the '640 patent and claim 6 of the '170 patent. Claim 31 of the '978 patent recites a "system for managing location information and providing location information to location queries." Ex. E. That system includes a "location server operating in accordance with a transfer protocol" which comprises "instructions for manipulating an identifier" and associated "location." *Id*. The "location server," in response to a "location query," "returns the location message if the location server contains location information for the desired entity." *Id*. As explained above with respect to claim 10 of the '978 patent, claim 6 of the '170 patent also discloses the "transfer protocol," "location server," "identifier," and "location message." *Supra*, at 12; *see also* App'x A at 13. Those limitations are also obvious in view of claim 18 of the '640 patent, viewed in light of the specification. *Supra*, at 12; *see also* App'x A at 6-7.

## CONCLUSION

For the reasons set forth above, the Court should dismiss this action because the asserted patent claims are invalid under the doctrine of obviousness-type double patenting.

May 1, 2020

Respectfully submitted,

/s/ *Terri L. Mascherin*

**CERTIFICATE OF SERVICE**

I, Michael Werner, an attorney at the law firm of Jenner & Block LLP, certify that on May 1, 2020, the foregoing Memorandum In Support of Motion to Dismiss was electronically served on counsel of record via the Court's ECF system.

/s/ *Michael T. Werner*
   Michael T. Werner