# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KOVE IO, INC., | ) | |
| Plaintiff, | ) | Civil Action No. 1:18-cv-08175 |
| | ) | |
| v. | ) | Hon. Judge Rebecca R. Pallmeyer |
| | ) | |
| AMAZON WEB SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**AMAZON WEB SERVICES' INITIAL NON-INFRINGEMENT
AND INVALIDITY CONTENTIONS**

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
aunikowsky@jenner.com

Terri L. Mascherin
Michael G. Babbitt
Michael T. Werner
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
tmascherin@jenner.com
mbabbitt@jenner.com
mwerner@jenner.com

*Attorneys for Amazon Web Services, Inc.*

**TABLE OF CONTENTS**

I.  AWS RESERVATIONS OF RIGHTS ...................................................................1

II.  NON-INFRINGEMENT CONTENTIONS FOR PATENTS-IN-SUIT ............................3

III.  IDENTIFICATION OF PRIOR ART FOR PATENTS-IN-SUIT....................................4

    A.  PRIOR ART PATENTS AND PUBLICATIONS....................................................5

    B.  PRIOR ART PRODUCTS.........................................................................9

IV.  EXEMPLARY OBVIOUSNESS ARGUMENTS FOR PATENTS-IN-SUIT...................9

V.  INVALIDITY CLAIM CHARTS FOR PATENTS-IN-SUIT ........................................17

VI.  INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 112 ...........................18

VII.  INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 101 ...........................20

VIII.  UNENFORCEABILITY CONTENTIONS AGAINST PATENTS-IN-SUIT.................21

IX.  DOCUMENT PRODUCTION ...........................................................................21

Pursuant to the Local Patent Rules and the Report of Parties' Planning Meeting and Agreed Case Schedule (Dkt 54), Defendant Amazon Web Services, Inc. ("AWS") provides the following Initial Non-Infringement and Invalidity Contentions to Plaintiff Kove IO, Inc. ("Kove") for the asserted claims of the Patents-in-Suit (as defined herein). This disclosure identifies each item of prior art which AWS has identified thus far that anticipates and/or renders obvious each asserted claim of the Patents-in-Suit and other grounds of invalidity, including under 35 U.S.C. §§ 101 and 112, as required by the rules. In addition, this disclosure includes exemplary claim charts related to non-infringement (Exhibits A-C) and invalidity (Exhibits 1A-E, 2A-E, and 3A-F).

## I.    AWS RESERVATIONS OF RIGHTS

These contentions are limited to responding to the allegations identified in Kove's Initial Infringement Contentions dated July 5, 2019, namely for U.S. Patent Nos. 7,814,170 ("the '170 patent"), 7,103,640 ("the '640 patent"), and 7,233,978 ("the '978 patent") (collectively the "Patents-in-Suit") and the claims identified therein (the "Asserted Claims").

The contentions are necessarily limited because Kove has not properly identified any AWS product or service as infringing any Asserted Claim of any of the Patents-in-Suit with the specificity required by the Local Patent Rules. Kove's Infringement Contentions are deficient in multiple respects and do not provide AWS with sufficient notice of the bases for Kove's infringement allegations or the alleged scope of the claims, as further noted in attached non-infringement claim charts. In general, Kove's contentions merely parrot the claim language and do not provide sufficient proof of where and how each limitation is present in the accused AWS S3 and/or DynamoDB products. Kove's contentions merely provide generic information about the accused products and do not tie the identified evidence to the relevant claim language of each element. *See, e.g., Shared Memory Graphics LLC v. Apple Inc.*, No. C-10-02475 MMC (JSC),

2011 WL 3878388, at *6 (N.D. Cal. Sept. 2, 2011); *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 1:16-cv-5298, 2017 U.S. Dist. LEXIS 16477, at *6-7 (N.D. Ill. Feb. 6, 2017).  The deficiencies have, in certain respects, impeded AWS's ability to understand how Kove is construing or applying the asserted claims to AWS's products.  AWS, therefore, reserves the right to supplement and/or amend these contentions if Kove is permitted to supplement and/or clarify its allegations and/or produce adequate infringement contentions.

Furthermore, these contentions are based on AWS's current knowledge, understanding, and belief as to the facts and information available at this time, and are subject to supplementation and/or amendment as provided in the Local Rules, the Federal Rules of Civil Procedure, and/or any order of this Court.  AWS has not yet completed its investigation, collection of information, discovery (including third-party discovery related to prior art patents, publications, and products that anticipate or render obvious the Asserted Patents as well as expert testimony), or analysis relating to this action, infringement, and/or invalidity and fully reserves the right to supplement and/or amend these contentions.

AWS also reserves the right to supplement and/or amend these contentions based on claim construction rulings or arguments.  AWS's contentions may change based upon the Court's construction of the claims or upon positions that Kove may take leading up to and after such construction.  For at least this reason, nothing contained in these contentions should be understood or deemed to be an express or implied admission or contention with respect to the proper construction or scope of any terms in the asserted claims.

It is Kove's burden to prove infringement of each limitation of each asserted claim by each and every accused product.  AWS denies that Kove has met its burden to show infringement of any asserted claim.  Thus, the reference to certain claim limitations by AWS in

these contentions in no way indicates that any AWS product meets any limitation of any Kove patent or relieves Kove of its burden of proof on any issue.  To the extent any other limitations rely on identified limitations for an antecedent basis, AWS also reserves the right to argue that those other limitations are not present in the accused products.  Moreover, AWS fully reserves the right to contend at any time that any other limitation of Kove's claims is not present in any AWS product.

## II.    NON-INFRINGEMENT CONTENTIONS FOR PATENTS-IN-SUIT

AWS submits attached non-infringement claim charts Exhibits A-C, which are responsive, to the extent possible, to the claim charts in Kove's Infringement Contentions dated June 5, 2019.  As shown in the exhibits, Kove has not met its burden to prove literal infringement because Kove has not shown how AWS or any AWS product meets each and every element of the asserted claims.  For example, Kove cannot show that AWS DynamoDB meets limitations related to the claimed data location servers of the Patents-in-Suit, among other missing limitations.  As another example, Kove cannot show that AWS S3 meets limitations related to the claimed hash function or determination of data locations of the Patents-in-Suit, among other missing limitations.  The attached charts provide further contentions and information regarding these exemplary missing limitations and several others.  Kove has not made any factual allegations regarding the doctrine of equivalents for any claim limitation.

Furthermore, Kove has failed to offer sufficient evidence that AWS indirectly infringes any claim of the Patents-in-Suit.  With respect to the allegations of induced infringement, Kove has not shown that AWS encourages and induces its customers to use the accused products in an infringing manner through simple distribution of technical materials, or otherwise.  With respect to allegations of contributory infringement, Kove has failed to offer any evidence that AWS's products are especially made for infringement of the Patents-in-Suit and are not a staple article or

commodity of commerce suitable for substantial non-infringing use. Moreover, Kove has failed to show that AWS possessed knowledge of the existence of the Patents-in-Suit or of any infringement. Kove has also failed to offer any evidence that the Asserted Claims of the Patents-in-Suit are directly infringed by any one party.

## III.    IDENTIFICATION OF PRIOR ART FOR PATENTS-IN-SUIT

AWS provides below an identification with particularity of each item of prior art that allegedly anticipates or renders obvious each Asserted Claim of the Patents-in-Suit. AWS intends to rely on the prior art identified herein, and other prior art and testimony as the case develops, to evidence the background knowledge and common sense of those of ordinary skill in the art at the alleged time of invention of the Patents-in-Suit and to show invalidity of the Patents-in-Suit.

In addition to the information described below, AWS reserves the right to rely on the disclosures of any prior art references cited by either Kove or the Patent Office or otherwise raised during prosecution of any Kove patent application, including specifically prior art references relied on as the basis for claim rejections by the Patent Office and admitted prior art identified in Kove patent applications as background and otherwise. AWS reserves the right to rely on the prosecution histories, and the prior art cited therein, of the prior art patents cited herein. AWS reserves the right to rely on any prior art, products, publications, documents, or information identified as a result of expert or fact discovery. AWS reserves the right to rely on any prior art or information identified or produced in connection with other patent litigation or proceeding involving related Kove patents.

AWS also notes that Kove has not shown that the proper priority date for each of the Patents-in-Suit is earlier than each patent's respective filing date. Each of the Asserted Patents recites claim limitations that Kove has not shown are supported by either the '896 application

(dated July 8, 1998) or the '709 provisional application (dated September 14, 1999). For example, the '170 Patent recites claim limitations regarding the use of a hash function to calculate the specific location server that contains requested information. The '640 Patent recites claim limitations regarding the use of a redirect message from a location server lacking in the requested information to provide a client with information to calculate the location server containing the requested information. The '978 Patent recites claim limitations that involve using predetermined criteria and a predetermined performance limit to determine when to transfer a portion of identifiers and location information from a first location server to a second location server. Kove has not shown, or alleged, that either the '896 application or the '709 provisional application supports those claim limitations, among others.

## A.     Prior Art Patents and Publications

Subject to AWS's reservations, below is an initial listing of each item of prior art that AWS believes either anticipates or renders obvious the Patents-in-Suit, in combination with one or more other references, and/or the knowledge of one of ordinary skill in the art around the time of invention.

1.      U.S. Patent No. 5,542,087 to Neimat ("Neimat"), assigned to Hewlett-Packard Co., issued July 30, 1996;

2.      Int. Pub. No. WO 98/003923 to Ernestine ("Ernestine"), issued January 29, 1998;

3.      U.S. Patent No. 6,212,521 to Minami ("Minami"), assigned to Fujitsu Lmt., issued April 3, 2001;

4.      U.S. Patent No. 6,807,632 to Carpentier ("Carpentier"), assigned to EMC Corp, issued October 19, 2004;

5.      Distributed Web Caching System with Consistent Hashing by Alexander Sherman (1999) ("Sherman");

6.      U.S. Patent No. 5,230,047 to Frey ("Frey"), assigned to IBM, issued July 20, 1993;

7.      Linear Hashing: A New Tool for File and Table Addressing by Litwin (1980);

8.      Distributed Name Servers: Naming and Caching in Large Distributed Computing Environments by Terry (1985) ("Terry");

9.      DNS RFC 1034 Domain names – Concepts and Facilities by Mockapetris ("DNS RFC 1034") (November 1987);

10.     An Adaptive Data Placement Scheme for Parallel Database Computer Systems by Hua (1990) ("Hua DBMS");

11.     Design and Implementation of DDH: A Distributed Dynamic Hashing Algorithm by Devine (1993) ("Devine DDH");

12.     Scale in Distributed Systems by Neuman (1994) ("Neuman");

13.     A Model for Worldwide Tracking of Distributed Objects by Tanenbaum (1996) ("Tanenbaum");

14.     The Core Legion Object Model by Lewis (1996) ("Lewis");

15.     CA2216504 to Yamoano ("Yamano"), assigned to NEC Corp., filed September 19, 1997;

16.     Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web by Karger et al. (1997) ("Karger '97");

17.     Int. Pub. No. WO 98/039715 to Guha ("Guha"), issued September 11, 1998;

18.     CA2229291 to Chiang ("Chiang"), assigned to AT&T Corp, issued October 10, 1998;

19.     Int. Pub. No. WO 99/011078 to Brohoff ("Brohoff"), issued March 4, 1999;

20.     U.S. Patent No. 5,884,072 to Rasmussen ("Rasmussen"), assigned to Johnson Service Company and issued March 16, 1999;

21.     U.S. Patent No. 5,893,924 to Bahls ("Bahls '924"), assigned to Int'l Business Machines Corp. and issued April 13, 1999;

22.     Int. Pub. No. WO 99/40514 to Farber ("Farber"), issued August 12, 1999;

23.     U.S. Patent No. 5,959,577 to Fan ("Fan"), assigned to Vectorlink, Inc., issued September 28, 1999;

24.     Distributed cooperative Web servers by Baker and Moon (1999) ("Baker and Moon");

25.     U.S. Patent No. 6,014,667 to Jenkins ("Jenkins"), assigned to Novell, Inc., issued January 11, 2000;

26.     Int. Pub. No. WO 00/005663 to Baclawski ("Baclawski"), issued February 3, 2000;

27.     U.S. Patent No. 6,341,311 to Smith ("Smith '311"), assigned to Microsoft Corp., issued January 22, 2002;

28.     U.S. Patent No. 6,377,991 to Smith ("Smith '991"), assigned to Microsoft Corp., issued April 23, 2002;

29.     U.S. Patent No. 6,430,622 to Aiken ("Aiken"), assigned to IBM, issued August 6, 2002;

30.     U.S. Patent No.6,430,618 to Karger ("Karger '618"), assigned to Massachusetts Institute of Technology, issued August 6, 2002;

31.     U.S. Patent No. 6,453,404 to Bereznyl ("Bereznyl"), assigned to Microsoft Corp., issued September 17, 2002;

32.     U.S. Patent No. 6,470,389 to Chung ("Chung"), assigned to Lucent Techs Inc., issued October 22, 2002;

33.     U.S. Patent No. 6,553,420 to Karger ("Karger '420"), assigned to Massachusetts Institute of Technology, issued April 22, 2003;

34.     U.S. Patent No. 6,564,252 to Hickman ("Hickman"), assigned to Microsoft Corp., issued May 13, 2003;

35.     U.S. Patent No. 6,748,437 to Mankude ("Mankude"), assigned to Sun Microsystems, Inc., issued June 8, 2004;

36.     U.S. Patent No. 6,775,687 to Binding ("Binding"), assigned to IBM, issued August 10, 2004;

37.     U.S. Patent No. 7,389,305 to Kindig ("Kindig"), assigned to Fair Isaac Corp., issued June 17, 2008;

38.     U.S. Patent No. 7,415,468 to Benno ("Benno"), issued August 19, 2008;

39.     U.S. Patent No. 5,974,421, to Krishnaswamy ("Krishnaswamy"), assigned to Microsoft, issued January 20, 2010.

**Anticipation Examples:**  More specifically, AWS below identifies examples of prior art that AWS contends at this time anticipate claims of the Asserted Patents, subject to the reservations above and based on the apparent scope of Kove's infringement allegations:

- Neimat anticipates claims 1-10, 12-17 of the '170 patent; claims 10, 17, 18, 19, 21, 22, 24, 25 of the '640 patent; claims 1, 3-7, 10, 14-17, 23-26, 30-31 of the '978 patent.

- Ernestine anticipates claims 1-5, 7-10, 12-14, 16-17 of the '170 patent; claims 1, 3-7, 10, 14-16, 30-31 of the '978 patent.

- Minami anticipates claims 1-10, 12-17 of the '170 patent; claims 10, 17, 18, 19, 21, 22, 24, 25 of the '640 patent; claims 1, 3-7, 10, 14-16, 30-31 of the '978 patent.

- Carpentier anticipates claims 1-10, 12-17 of the '170 patent; claims 10, 17, 18, 19, 21, 22, 24, 25 of the '640 patent; claims 1, 3-7, 10, 14-16, 30-31 of the '978 patent.

- Sherman (1999) anticipates claims 1-5, 7-10, 12-14, 16-17 of the '170 patent; claims 1, 3-7, 10, 14-17, 23-26, 30-31 of the '978 patent.

- Frey anticipates claims 17, 23-26 of the '978 patent.

**B.      Prior Art Products**

To the extent a prior art reference identified herein describes a system that was publicly available prior to the patents-in-suit, AWS contends the underlying system is also prior art. AWS's investigation regarding prior art products related to the Patents-in-Suit is ongoing.

**IV.    EXEMPLARY OBVIOUSNESS ARGUMENTS FOR PATENTS-IN-SUIT**

The Asserted Claims of the Patents-in-Suit relate to combinations of various systems and methods for storing and retrieving data in a computer network that were known in the art prior to the Patents-in-Suit. Where the combination of features recited in any particular Asserted Kove Claim were not included in a single piece of prior art, as a general matter, it would have been obvious to modify the prior art to make such a combination. The individual features recited in the Asserted Claims were known to be available and suitable for use in computer networking systems. Thus, as discussed in specific instances in the attached charts, the inclusion of such known structures and/or features in the Asserted Claims was a matter not of innovation in the art, but simple choices that would have been within the level of ordinary skill to implement and would have led to no more than the predictable results around the time of the Patents-in-Suit.

To show obviousness, AWS states that it intends to rely on the presence of various structures and features, and combinations thereof, of any prior art described herein as a basis for incorporating those structures and features into other prior art described herein. The reasons justifying such modifications and combinations of prior art features is evident from the prior art

itself, the knowledge of skill in the art, and the nature of the problems to be solved related to the Patents-in-Suit.

Furthermore, the combinations in the accompanying claim charts would have been readily made by one of ordinary skill in the art at the time of the alleged invention of the Patents-in-Suit, at least in that one of ordinary skill would have been motivated to combine the references disclosed herein in such a way as to render the alleged inventions obvious. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007); *Randall Mfg. v. Rea*, 733 F.3d 1355 (Fed. Cir. 2013). Each of the references disclosed herein was directed at the same or similar field of technology and to the same or similar problem as the Patents-in-Suit. As discussed in more detail below and in the accompanying invalidity claim charts, the teaching, suggestion, or motivation to combine these references may be found, explicitly or implicitly, in one or more of the following:

(1)     the combination results from a simple substitution of one known element for another to obtain predictable results;

(2)     the combination results from the use of known techniques to improve similar methods in the same way;

(3)     the combination results from applying a known technique to a known method ready for improvement to yield predictable results;

(4)     the combination results from choosing a finite number of identified, predictable solutions, with a reasonable expectation of success, and therefore is obvious to try;

(5)     the combination results from known work in one field of endeavor prompting a variation of it for use in either the same field or a different one based on design incentives or other market forces and the variations would have been predictable to one of ordinary skill in the art; or

(6)     the combination results from using known techniques or solutions to address a problem addressed by the invention or a problem that would be encountered by one of ordinary skill in the art working in that field.

AWS also intends to rely on the background knowledge and common sense of those of ordinary skill in the art at the alleged time of invention of the Patents-in-Suit to show invalidity of the Patents-in-Suit.

The accompanying invalidity claim charts identify specific claim limitations with combinations of references that render the Asserted Claims obvious. For each such references, if any particular claim limitation is alleged to not be disclosed or inherent in those references, then it would have been obvious to one of ordinary skill in the art to combine the charted reference with one or more of the references identified in the charts for the particular claim limitations. The evidence and information referenced therein is exemplary and representative of AWS's invalidity contentions at this time. The charts are not meant to be a complete recitation or explanation of the evidence in support of AWS's contentions and/or limiting in any way.

Furthermore, AWS describes here additional evidence of obviousness related to the subject matter as a whole and certain specific features of the the Asserted Claims of the Patents-in-Suit. To the extent that Kove alleges that any of the prior art references charted in Amazon's Exhibits 1-3 do not disclose one of the limitations described below, it would have been obvious to one of ordinary skill in the art before the time of invention, for example, to include the following features in a distributed software system.

1. **<u>Data Location Server:</u>** To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of data location servers, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, related to '170 patent claims 1.b, 6.a, 15.b; '640 patent claim 10.a, 17.b, 18.c; '978 patent claims 1.a, 10.a, 14.a, 17.b, 31.a.) The concept of storing information about the location of data in a distributed network is well known, even

fundamental, in the field computer science, for example. As the Domain Name Server (DNS) protocol recognized long before the alleged invention, there was a known problem in the art that "[t]he applications on the internet were getting more sophisticated and creating a need for general purpose name service," and "[t]he result was several ideas about name spaces and their management." (*See, e.g.*, DNS RFC 1034 at section 2.1-2.2.)

In addition, the concept of separating information about the location of data from the data itself or data partitioning, for instance, is an obvious method of organizing information that is well known in computer science. Neuman explained that "advantages to distribution are that only part of the naming database is stored on each server, thus reducing the number of queries and updates to be processed." (*See, e.g.*, Neuman at 4.2.) Tanenbaum outlines "a solution for locating objects using location-independent identifiers." (*See, e.g.*, Tanenbaum at 1-2.) One of skill would have been motivated to use such partitioning methods, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system. Furthermore, to the extent any prior art discloses the use of at least one location server, it would have been obvious to use more than one location server to achieve further benefits. *See* MPEP § 2144.VI.B (Obviousness of Duplication of Parts).

Therefore, it would have been obvious to one of skill to employ data location servers in the identified prior art, and further in view of U.S. Patent No. 6,212,521 to Minami (see, e g., cols. 7-8), U.S. Patent No. 6,341,311 to Smith (see, e.g., cols. 9-10, Fig. 5), U.S. Patent No. 6,014,667 to Jenkins (see, e.g., cols. 1-4, Figs. 1-2), U.S. Patent No. 6,807,632 to Carpentier (see, e g., cols. 11-12), DNS RFC 1034 Domain names – Concepts and Facilities by Mockapetris (November 1987) (see, e.g., sections 2.4, 3.1, 3.6, 3.7), Scale in Distributed

Systems by Neuman (1994) (see, e.g., sections 4.1-4.2), A Model for Worldwide Racking of Distributed Objects by Tanenbaum (1996) (see, e.g., section 2), Distributed Web Caching System with Consistent Hashing by Sherman (February 1999) (see, e.g., pgs. 34-39), and/or the common sense and background knowledge in the art.

As a non-limiting exemplary obviousness combination, Neimat in view of Minami, Smith, Jenkins, Carpentier, DNS, Neuman, Tanenbaum, Sherman, and/or the common sense and background knowledge in the art would render obvious the subject matter of the claimed inventions. Similarly, Ernestine in view of Minami, Smith, Jenkins, Carpentier, DNS, Neuman, Tanenbaum, Sherman, and/or the common sense and background knowledge in the art would render obvious the subject matter of the claimed inventions. Further, Minami in view of Smith, Jenkins, Carpentier, DNS, Neuman, Tanenbaum, Sherman, and/or the common sense and background knowledge in the art would render obvious the subject matter of the claimed inventions. Carpentier in view of Minami, Smith, Jenkins, DNS, Neuman, Tanenbaum, Sherman, and/or the common sense and background knowledge in the art would render obvious the subject matter of the claimed inventions.

2. **Hash Function:** To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of a hash function, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, related to '170 patent claim 1.f, 6.c, 15.a; '640 patent 10.a, 10.d, 17.b, 18.c; '978 patent claim 1.a, 6, 10.b, 14.b-c, 17.d, 31.b.) The specifications of the asserted patents themselves concede that the "preferably applied" hash function was "well-known" in computer science. (*See, e.g.*, '170 patent, col. 15:12-18.) Numerous other publications before the filing of the Patents-in-Suit describe the use of hash functions in distributed systems. As one

example, the prior art recognized that it was well understood "for clients to use a standard hash function to determine from which server to request a document." (*See* U.S. Patent No. 6,553,420 to Karger at col. 3:23-50.) Courts have also recognized that hash functions are "generic and basic mathematical or algorithmic functions that do not make a patent inventive." *Symantec Corp. v. Zscaler, Inc*., No. 17-cv-04426-JST, 2018 WL 1456678, at *7 (N.D. Cal. March 23, 2018).

Therefore, it would have been obvious to one of skill to employ a hash function in the identified prior art, and further in view of U.S. Patent No. 5,542,087 to Neimat (see, e.g., col. 8), U.S. Patent No. 6,212,521 to Minami (see, e.g., cols. 10, 14), U.S. Patent No. 6,341,311 to Smith (see, e.g., col. 12), U.S. Patent No. 6,553,420 to Karger (see, e.g., cols. 3-4), Distributed Name Servers: Naming and Caching in Large Distributed Computing Environments by Terry (1985), Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web by Karger et al. (1997), Distributed Web Caching System with Consistent Hashing by Alexander Sherman (1999); and/or the common sense and background knowledge in the art.

As a non-limiting exemplary obviousness combination, Ernestine in view of Neimat, Minami, Smith, Karger '420, Terry (1985), Karger et al. (1997), Sherman, and/or the common sense and background knowledge in the art would render obvious the subject matter of the claimed inventions. Similarly, Frey in view of Neimat, Minami, Smith, Karger '420, Terry (1985), Karger et al. (1997), Sherman, and/or the common sense and background knowledge in the art would render obvious the subject matter of the claimed inventions.

3. **Redirection:** To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of redirection, the subject matter as a whole of

each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, related to '170 patent claims 6.c, 15.e; '640 patent claim 10.c, 17.c, 18.e, 19, 20, 22; '978 patent claims 3, 10.b, 14.c.) The concept of searching a first server for information and then searching a second server for information if the first server does not have that information is obvious and conventional in the field of computer science. One of skill would have been motivated to do so, for example, for the obvious benefit of improving the ability of a system to locate information.

Therefore, it would have been obvious to one of skill to employ redirection in the identified prior art, and further in view of U.S. Patent No. 5,542,087 to Neimat (see, e.g., col. 10), U.S. Patent No. 6,014,667 to Jenkins (see, e.g., col. 7), U.S. Patent No. 6,212,521 to Minami (see, e.g., col. 9), U.S. Patent No. 6,341,311 to Smith (see, e.g., fig. 3), U.S. Patent No. 6,807,632 to Carpentier (see, e.g., col. 15), DNS RFC 1034 Domain names – Concepts and Facilities by Mockapetris (November 1987), and/or the common sense and background knowledge in the art.

As a non-limiting exemplary obviousness combination, Ernestine in view of Neimat, Jenkins, Minami, Carpentier, and/or the common sense and background knowledge in the art would render obvious the subject matter of the claimed inventions. Similarly, Sherman in view of Neimat, Jenkins, Minami, Carpentier, DNS, and/or the common sense and background knowledge in the art would render obvious the subject matter of the claimed inventions.

4. **Load Balancing:** To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of a load balancing, such as based on a performance criterion, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, related to '978

patent claims 17.e, 23, 24, 30.)  The concept of transferring information from one server to another when the server is full, for example, is obvious and conventional in the field of computer science.  Hua DBMS recognizes, for instance, "since effective data placement is an important lever for load balancing, it is normally the determining factor for the performance of a multi-processor system."  (*See, e.g.*, Hua DBMS at 494.)  Devine DDH states "[i]deally, no server is responsive for more than its proportional share of the total data size.  This principle can be enforced by actively checking the local load level against the global load level and the performing adaptive load balancing to ameliorate hot spots."  (*See e.g.*, Devine DDH at 3.)  One of skill would have been motivated to do so, for example, for the obvious benefit of improving system performance, speed, and efficiency.

Therefore, it would have been obvious to one of skill to employ load balancing in the identified prior art, and further in view of U.S. Patent No. 5,230,047 to Frey (see, e.g., cols. 1-2), U.S. Patent No. 5,542,087 to Neimat (see, e.g., col. 13), U.S. Patent No. 6,341,311 to Smith (see, e.g., cols. 12-13, 17), DNS RFC 1034 Domain names – Concepts and Facilities by Mockapetris (November 1987), An Adaptive Data Placement Scheme for Parallel Database Computer Systems by Hua (1990), Design and Implementation of DDH: A Distributed Dynamic Hashing Algorithm by Devine (1993), Distributed cooperative Web servers by Baker and Moon (1999), and/or the common sense and background knowledge in the art.

As a non-limiting exemplary obviousness combination, Minami in view of Frey, Neimat, Smith, DNS, Hua DBMS, Devine DDH, Baker/Moon, and/or the common sense and background knowledge in the art would render obvious the subject matter of the claimed inventions. Similarly, Carpentier in view of Frey, Neimat, Smith, DNS, Hua DBMS, Devine DDH,

Baker/Moon, and/or the common sense and background knowledge in the art would render obvious the subject matter of the claimed inventions.

## V.     INVALIDITY CLAIM CHARTS FOR PATENTS-IN-SUIT

Claim charts 1A-1E identify where specifically in each item of identified prior art each element of each asserted claim of the '170 patent is found.

**Exhibit 1A:** U.S. Patent No. 5,542,087 to Neimat;

**Exhibit 1B:** Int. Pub. No. WO 98/003923 to Ernestine;

**Exhibit 1C:** U.S. Patent No. 6,212,521 to Minami;

**Exhibit 1D:** U.S. Patent No. 6,807,632 to Carpentier;

**Exhibit 1E:** Distributed Web Caching System with Consistent Hashing by Alexander Sherman (1999).

Claim charts 2A-2E identify where specifically in each item of identified prior art each element of each asserted claim of the '640 patent is found.

**Exhibit 2A:** U.S. Patent No. 5,542,087 to Neimat;

**Exhibit 2B:** Int. Pub. No. WO 98/003923 to Ernestine;

**Exhibit 2C:** U.S. Patent No. 6,212,521 to Minami;

**Exhibit 2D:** U.S. Patent No. 6,807,632 to Carpentier;

**Exhibit 1E:** Distributed Web Caching System with Consistent Hashing by Alexander Sherman (1999).

Claim charts 3A-3F identify where specifically in each item of identified prior art each element of each asserted claim of the '978 patent is found.

**Exhibit 3A:** U.S. Patent No. 5,542,087 to Neimat;

**Exhibit 3B:** Int. Pub. No. WO 98/003923 to Ernestine;

**Exhibit 3C:** U.S. Patent No. 6,212,521 to Minami;

**Exhibit 3D:** U.S. Patent No. 6,807,632 to Carpentier;

**Exhibit 3E:** Distributed Web Caching System with Consistent Hashing by Alexander Sherman (1999);

**Exhibit 3F:** U.S. Patent No. 5,230,047 to Frey.

# VI.     INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 112

AWS contends at this time that one or more of the Asserted Claims may be invalid as indefinite under 35 U.S.C. § 112, ¶ 2. The Asserted Claims fail to particularly point out and distinctly claim the subject matter that the patentee regards as its alleged invention such that one of ordinary skill in the relevant art would be reasonably apprised of the bounds of the asserted claims when read in light of the specification. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014). For example, the scope of the following overly vague, generic, and/or subjective claim terms of the Patents-in-Suit does not appear at this time to be reasonably certain such that one of ordinary skill could properly ascertain the scope of the invention:

- *Each one of the data location servers is configured to determine...* as found in claim 1 of the '170 patent;

- *Programming logic…configured to return...* as found in claim 6 of the '170 patent;

- *Executable code configured to execute...* as found in claims 17 and 18 of the '640 patent;

- *Transport protocol configured to transport*… as found in claim 17 of the '978 patent;

- *Associated with...* as found in claims 1, 4, 6, and 13 of the '170 patent; claims 10, 17, and 18 of the '640 patent; claim 1, 7, 17, and 31 of the '978 patent;

- *Calculate…* as found in claims 10, 17, and 18 of the '640 patent;

- *A portion...* as found in claim 17 and 30 of the '978 patent; claim 1, 8, 13, and 17 of the '170 patent; claim 24 of the '640 patent;

- *Performance criterion...* as found in claim 17, 23, and 24 of the '978 patent;

- *Predetermined performance limit…* as found in claims 17 and 30 of the '978 patent;

- *First data location server…* as found in claims 17 and 30 of the '978 patent; claim 10 of the '640 patent;

- *Transaction rate limit…* as found in claim 25-26 of the '978 patent;

- *Monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit…* as found in claim 30 of the '978 patent.

Similarly, one or more Asserted Claims may be invalid for lack of written description under 35 U.S.C. § 112, ¶ 1. The Asserted Claims fail to teach those of ordinary skill in the art how to make and use the full scope of the claimed invention without undue experimentation and to show that the inventors were in possession of the claimed inventions at the time they filed their applications. For example, Kove's apparent understanding of the breadth of the Asserted Claims reflected in Kove's Infringement Contentions, to the extent it is discernable, is not supported by the teachings of the Patents-in-Suit. To the extent Kove contends that the Accused Products meet each and every limitation of the Asserted Claims, AWS contends that the Asserted Claims lack sufficient written description to expand the scope of the claims beyond the plain language. Thus, the Asserted Claims are invalid due to a lack of written description.

As another non-limiting example, AWS contends that claim 17 of the '978 patent is invalid under both 35 U.S.C. § 112, ¶ 1, because the '978 patent specification does not disclose how to determine "a predetermined performance limit," and 35 U.S.C. § 112, ¶ 2, because the claim limitation "the first data location server" lacks antecedent basis. AWS also contends that claims depending on claim 17 are invalid under 35 U.S.C. § 112. For example, AWS contends that claim 30 is invalid under 35 U.S.C. § 112, ¶ 1 because the '978 patent specification does not disclose "monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined

limit." And like claim 17, AWS contends that claims 25 and 26 are invalid under 35 U.S.C. § 112, ¶ 2 because the claim limitation "the transaction rate limit" lacks antecedent basis.

AWS also reserves the right to make additional arguments under 35 U.S.C. § 112 as the positions that Kove takes with regard to priority, infringement, claim interpretation of various terms that have been construed by the Court or terms that have not been construed by the Court, and responses to AWS's invalidity arguments, become more clearly articulated or are modified and as Kove attempts to support its positions with specific reference to disclosures in its patents.

## VII.    INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 101

Each of the Asserted Patents and claims is invalid as unpatentable subject matter under 35 U.S.C. § 101. The claims of the Asserted Patents recite abstract data-manipulation steps, such as "receiving" or "storing" information, on generic computer components, as described in detail in the briefing on the AWS motion to dismiss, which is incorporated herein by reference. (*See* Dkt. 38, 45.) Additionally, AWS contends that claims of the Asserted Patents are invalid under the doctrine of obviousness-type double patenting. For example, the asserted claims of the '978 patent are invalid in view of the '170 patent, because the '978 patent claims are not patentably distinct from the '170 patent. As Kove admits, for example, "[c]laim 17 recites substantially the same claimed architecture as claim 1 of the '170 patent." (Dkt. 44 at 10.) Likewise, the asserted claims of the '978 patent are invalid in view of the '640 patent because the '978 patent claims are not patentably distinct from the '640 patent. (*See id.*) Further, the asserted claims of the '170 patent are invalid in view of the '640 patent because the '170 patent claims are not patentably distinct from the '640 patent. (*See id.*) The asserted claims of the '170 patent are also invalid in view of the '978 patent because the '170 patent claims are not patentably distinct from the '978 patent. (*See id.*)

## VIII. UNENFORCEABILITY CONTENTIONS AGAINST PATENTS-IN-SUIT

AWS reserves the right to disclose contentions of unenforceability for the Patents-in-Suit if AWS discovers facts giving rise to unenforceability defenses. AWS's investigation of Kove's actions concerning the prosecution of the Patents-in-Suit and knowledge of the prior art is ongoing.

## IX. DOCUMENT PRODUCTION

Pursuant to LPR 2.1, Defendants have produced documents sufficient to show the operation and construction of the accused products and copies of the prior art or a description sufficient to identify the prior art. Defendants further produce documents bearing bates numbers AMZ_KOVE_000061911 - AMZ_KOVE_000062662 related to prior art identified in these contentions.

August 6, 2019

Respectfully submitted,

*/s/ Michael G. Babbitt*

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
aunikowsky@jenner.com

Terri L. Mascherin
Michael G. Babbitt
Michael T. Werner
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
tmascherin@jenner.com
mbabbitt@jenner.com
mwerner@jenner.com

*Attorneys for Amazon Web Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2019, I caused a true and correct copy of the foregoing:

**AMAZON WEB SERVICES' INITIAL NON-INFRINGEMENT AND INVALIDITY CONTENTIONS**

to be served on all counsel of record via electronic mail and pursuant to Federal and local rules.

*/s/ Michael Werner*
Michael Werner
Jenner & Block LLP
353 N. Clark Street
Chicago, Illinois  60654
(312) 222-9350