# EXHIBIT I

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KOVE IO, INC., | ) | |
| Plaintiff, | ) | Civil Action No. 1:18-cv-08175 |
| | ) | |
| v. | ) | Hon. Judge Rebecca R. Pallmeyer |
| | ) | |
| AMAZON WEB SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**AMAZON WEB SERVICES, INC.'S FINAL UNENFORCEABILITY AND INVALIDITY
CONTENTIONS**

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
aunikowsky@jenner.com

Terri L. Mascherin
Michael G. Babbitt
Michael T. Werner
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
tmascherin@jenner.com
mbabbitt@jenner.com
mwerner@jenner.com

*Attorneys for Amazon Web Services, Inc.*

# TABLE OF CONTENTS

I. AWS RESERVATIONS OF RIGHTS ...................................................................1

II. CURRENT IDENTIFICATION OF PRIOR ART FOR PATENTS-IN-SUIT ...................2

    A. PRIOR ART PATENTS AND PUBLICATIONS ....................................................3

    B. PRIOR ART SYSTEMS ...................................................................................6

III. SELECTION OF CURRENT GROUNDS OF INVALIDITY ..........................................7

IV. EXEMPLARY OBVIOUSNESS ARGUMENTS AND REASONS TO COMBINE THE IDENTIFIED PRIOR ART ...............................................................................................12

V. INVALIDITY CLAIM CHARTS FOR PATENTS-IN-SUIT ...........................................24

VI. INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 112 ...........................26

VII. INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 101 ...........................29

VIII. UNENFORCEABILITY CONTENTIONS AGAINST PATENTS-IN-SUIT .................29

IX. DOCUMENT PRODUCTION ...........................................................................30

Pursuant to the Local Patent Rules and the Report of Parties' Planning Meeting and Agreed Case Schedule (Dkt. 54), Defendant Amazon Web Services, Inc. ("AWS") provides the following Final Unenforceability and Invalidity Contentions to Plaintiff Kove IO, Inc. ("Kove") for the Asserted Claims of the Patents-in-Suit, as defined herein. This disclosure contains the information required by LPR 3.1(b) (including as related to LPR 2.3(b) and (c)). As required by the Local Patent Rules, AWS herein identifies twenty-five prior art references, four prior art grounds per asserted claim, and four non-prior art grounds per asserted claim.

## I.  AWS RESERVATIONS OF RIGHTS

These contentions are limited to the claims identified in Kove's Identification of Asserted Claims dated December 2, 2019 (the "Asserted Claims") for U.S. Patent Nos. 7,814,170 ("the '170 patent"), 7,103,640 ("the '640 patent"), and 7,233,978 ("the '978 patent") (collectively the "Patents-in-Suit").

These contentions are necessarily limited because Kove has not properly identified any AWS product or service as infringing any Asserted Claim of any of the Patents-in-Suit with the specificity required by the Local Patent Rules. Kove's Infringement Contentions are deficient in multiple respects and do not provide AWS with sufficient notice of the bases for Kove's infringement allegations or the alleged scope of the claims, as further noted in AWS's non-infringement claim charts and the parties' prior correspondence. In general, Kove's contentions merely parrot the claim language and do not provide sufficient identification of where and how each limitation is present in the accused AWS S3 and/or DynamoDB services. Kove's contentions merely provide generic information about the accused products and do not tie the identified evidence to the relevant claim language of each element. *See, e.g.*, *Shared Memory Graphics LLC v. Apple Inc.*, No. C-10-02475 MMC (JSC), 2011 WL 3878388, at *6 (N.D. Cal. Sept. 2, 2011); *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 1:16-cv-5298, 2017 U.S. Dist.

LEXIS 16477, at *6-7 (N.D. Ill. Feb. 6, 2017).  The deficiencies have impeded AWS's ability to understand how Kove is construing the asserted claims.  AWS, therefore, reserves the right to supplement and/or amend these contentions if Kove is permitted to supplement and/or clarify its allegations and/or produce adequate infringement contentions.

Furthermore, these contentions are based on AWS's current knowledge, understanding, and beliefs based on the facts and information available at this time and are subject to supplementation and/or amendment as provided in the Local Rules, the Federal Rules of Civil Procedure, and/or any order of this Court.  AWS has not yet completed its investigation, collection of information, discovery (including third-party discovery related to prior art patents, publications, and products that anticipate or render obvious the Asserted Patents as well as expert testimony), or analysis relating to this action, including regarding the infringement, and/or invalidity of the Patents-in-Suit, and fully reserves the right to supplement and/or amend these contentions.

AWS also reserves the right to supplement and/or amend these contentions based on claim construction rulings or arguments made in support thereof.  AWS's contentions may change based upon the Court's construction of the claims or upon positions that Kove may take leading up to and after such construction(s).  For at least this reason, nothing contained in these contentions should be understood or deemed to be an express or implied admission or contention with respect to the proper construction or scope of any terms in the asserted claims.

## II.     CURRENT IDENTIFICATION OF PRIOR ART FOR PATENTS-IN-SUIT

AWS provides below an identification with particularity of twenty-five items of prior art that anticipate or render obvious each Asserted Claim of the Patents-in-Suit.  Furthermore, AWS reserves the right to rely on the prior art identified herein as well as the other prior art and testimony identified in AWS's Initial Non-Infringement and Invalidity Contentions dated August

6, 2019 and/or other information as the case progresses. AWS may rely on this prior art to evidence the background knowledge and common sense of those of ordinary skill in the art at the alleged time of invention of the Patents-in-Suit and to show invalidity of the Patents-in-Suit.

In addition to the information described below, AWS reserves the right to rely on the disclosures of any prior art references cited by either Kove or the Patent Office or otherwise raised during prosecution of any Kove patent application, including specifically prior art references relied on as the basis for claim rejections by the Patent Office and admitted prior art identified in Kove patent applications, as background and otherwise. AWS reserves the right to rely on the prosecution histories, and the prior art cited therein, of the prior art patents cited herein. AWS reserves the right to rely on any prior art, products, publications, documents, or information identified as a result of expert or fact discovery. AWS reserves the right to rely on any prior art or information identified or produced in connection with any other patent litigation or proceeding involving any related Kove patents. AWS reserves the right to rely on prior art, information, and arguments made in the related *inter partes* review of the '978 patent filed by AWS on December 12, 2019 (Case IPR2020-00276). Such disclosures and prior art are part of the intrinsic record of the Patents-in-Suit.

AWS also reserves the right to argue that the proper priority date for any claim of the Patents-in-Suit is the patent's filing date and that the claims are not supported by earlier-filed applications.

A.     **Prior Art Patents and Publications**

Subject to AWS's reservations set forth above, AWS lists below twenty five (25) items of prior art that AWS currently believes either anticipate or render obvious the Patents-in-Suit in combination with one or more other references and/or the knowledge of one of ordinary skill in the art around the time of invention.

1. U.S. Patent No. 5,230,047 to Frey ("Frey"), assigned to IBM, issued July 20, 1993;

2. "Linear Hashing: A New Tool for File and Table Addressing" by Litwin (1980) ("Litwin");

3. "Distributed Name Servers: Naming and Caching in Large Distributed Computing Environments" by Terry (1985) ("Terry");

4. "DNS RFC1034 Domain names – Concepts and Facilities" by Mockapetris (1987) ("RFC1034");

5. "An Adaptive Data Placement Scheme for Parallel Database Computer Systems" by Hua and Lee (1990) ("Hua DBMS");

6. "Design and Implementation of DDH: A Distributed Dynamic Hashing Algorithm" by Devine (1993) ("Devine DDH");

7. "Scale in Distributed Systems" by Neuman (1994) ("Neuman");

8. "Location-Independent Naming for Virtual Distributed Software Repositories" by Browne et al. (1995) ("Browne");

9. "A Model for Worldwide Tracking of Distributed Objects" by van Steen, Hauck, and Tanenbaum (1996) ("van Steen");

10. "The Core Legion Object Model" by Lewis and Grimshaw (1996) ("Lewis");

11. U.S. Patent No. 5,542,087 to Neimat ("Neimat"), assigned to Hewlett-Packard Co., issued July 30, 1996;

12. "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web" by Karger et al. (1997) ("Karger '97");

13.     "Load Management in Distributed Video Servers" by Venkatasubramanian and Ramanathan (1997) ("Venkatasubramanian").

14.     Int. Pub. No. WO 98/003923 to Ernestine ("Ernestine"), issued January 29, 1998;

15.     "Distributed Web Caching System with Consistent Hashing" by Sherman (1999) ("Sherman");

16.     "Web Caching with Consistent Hashing" by Karger, Sherman, et al. (1999) ("Karger/Sherman");

17.     "Locating Copies of Objects Using the Domain Name System" by Kangasharju et al. (1999) ("Kangasharju");

18.     Dynamic Load Balancing on Web-server Systems by Valeria Cardellini et al., IEEE Internal Computing, vol. 3, no. 3, pp. 28-39, May-June 1999;

19.     Int. Pub. No. WO 99/40514 to Farber ("Farber"), issued August 12, 1999;

20.     "Distributed cooperative Web servers" by Baker and Moon (1999) ("Baker");

21.     U.S. Patent No. 6,014,667 to Jenkins ("Jenkins"), assigned to Novell, Inc., issued January 11, 2000;

22.     U.S. Patent No. 6,212,521 to Minami ("Minami"), assigned to Fujitsu Ltd., issued April 3, 2001;

23.     U.S. Patent No. 6,430,618 to Karger ("Karger '618"), assigned to Massachusetts Institute of Technology, issued August 6, 2002;

24.     U.S. Patent No. 6,553,420 to Karger ("Karger '420"), assigned to Massachusetts Institute of Technology, issued April 22, 2003[1];

---

[1] The Karger '618 and '420 patents are in the same patent family and closely related. Therefore, AWS refers to these patents together herein as "Karger '618/420."

25.     U.S. Patent No. 6,807,632 to Carpentier ("Carpentier"), assigned to EMC Corp, issued October 19, 2004.

## B.     Prior Art Systems

To the extent a prior art reference identified herein describes a system that was publicly available or invented prior to the patents-in-suit, AWS contends the underlying system as a whole constitutes the identified prior art for the purposes of these contentions.  AWS's investigation regarding prior art systems related to the Patents-in-Suit is ongoing.  For example:

**Domain Name System (DNS):**  AWS contends that the Domain Name System (DNS) anticipates and/or renders obvious claims of the Asserted Patents, as described herein.  DNS was publically used and known by those in the art starting around 1987, as reflected by RFC1034 (as well as RFC2026, and RFC2168) and explained in the AWS *inter partes* review petition dated December 12, 2019 and accompanying Exhibit 1002, e.g., Para. 60-63.  As used herein, "DNS" encompasses prior art, publications, and systems related to DNS, including RFC1034 and others.  As one example, the inventors of the Patents-in-Suit used DNS, as apparent from the face of the Asserted Patents.  (*See, e.g.*, '978 patent, col. 24:1.)

**Web Caching System:**  AWS contends that the distributed web caching system of Sherman and Karger using DNS, such as described in Distributed Web Caching System with Consistent Hashing by Alexander Sherman (1999) ("Sherman") and Web Caching with Consistent Hashing by Karger, Sherman, et al. (March 4, 1999) ("Karger/Sherman"), etc. anticipates and/or renders obvious claims of the Asserted Patents, as described herein.  Both Sherman and Karger/Sherman describe aspects of the same Web Caching System.  Therefore, citations herein regarding Sherman apply equally to Karger/Sherman, and vice versa.  AWS also contends that all features and functionality of DNS are inherent to systems using DNS, such as Sherman and Karger/Sherman.  The authors of these papers used these systems.

## III.    SELECTION OF CURRENT GROUNDS OF INVALIDITY

Pursuant to LPR 3.1(b), AWS specifically identifies below the four (4) prior art grounds per asserted claim and four (4) non-prior art grounds asserted against Kove's patents at this time. The prior art grounds are further supported by the attached claim charts Exhibits 1-3.

### '170 Patent Claims 1, 2, 6, 8, 12, 15, and 17

AWS contends that '170 patent claims 1, 2, 6, 8, 12, 15, and 17 are invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for these claims at this time.  These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Obviousness based on the Domain Name System (DNS) in view of Karger '618/420 (*see* Exhibit 1A);

2. Anticipation based on the Web Caching System (*see* Exhibit 1B);

3. Obviousness based on U.S. Patent No. 5,542,087 to Neimat in view of DNS and Karger '618/420 (*see* Exhibit 1C);

4. Obviousness based on U.S. Patent No. 6,212,521 to Minami in view of DNS and Karger '618/420 (*see* Exhibit 1D).

AWS asserts the following four non-prior art grounds for these claims at this time.  These non-prior art grounds are further supported by Sections IV-VI.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);

2. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);

3. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);

4. Indefiniteness under 35 U.S.C. § 112, ¶ 2 (*see* Section VI).

## '640 Patent Claims 17 and 18

AWS contends that '640 patent claims 17 and 18 are invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for these claims at this time. These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Anticipation based on the Domain Name System (DNS) (*see* Exhibit 2A);

2. Anticipation based on the Web Caching System (*see* Exhibit 2B);

3. Obviousness based on U.S. Patent No. 5,542,087 to Neimat in view of DNS (*see* Exhibit 2C);

4. Obviousness based on U.S. Patent No. 6,212,521 to Minami in view of DNS (*see* Exhibit 2D).

AWS asserts the following four non-prior art grounds for these claims at this time. These non-prior art grounds are further supported by Sections IV-VI.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);

2. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);

3. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);

4. Indefiniteness under 35 U.S.C. § 112, ¶ 2 (*see* Section VI).

## '640 Patent Claim 24

AWS contends that '640 patent claim 24 is invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35

U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of

Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for this claim at this time. These prior

art grounds are further supported by the accompanying claim chart exhibits as well as Sections

IV-V herein.

1. Obviousness based on the Domain Name System (DNS) in view of Karger '618/420 (*see* Exhibit 2A);

2. Anticipation based on the Web Caching System (*see* Exhibit 2B);

3. Obviousness based on U.S. Patent No. 5,542,087 to Neimat in view of DNS and Karger '618/420 (*see* Exhibit 2C);

4. Obviousness based on U.S. Patent No. 6,212,521 to Minami in view of DNS and Karger '618/420 (*see* Exhibit 2D).

AWS asserts the following four non-prior art grounds for this claim at this time. These

non-prior art grounds are further supported by Sections IV-VI.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);

2. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);

3. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);

4. Indefiniteness under 35 U.S.C. § 112, ¶ 2 (*see* Section VI).

### **'978 Patent Claims 1, 3, 6, 10, 14, and 31**

AWS contends that '978 patent claims 1, 3, 6, 10, 14, and 31 are invalid for failure to

meet the conditions for patentability set forth in Title 35 of the United States Code, including,

but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the

requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for these claims at this time. These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Anticipation based on the Domain Name System (DNS) (*see* Exhibit 3A);

2. Anticipation based on the Web Caching System (*see* Exhibit 3B);

3. Obviousness based on U.S. Patent No. 5,542,087 to Neimat in view of DNS (*see* Exhibit 3C);

4. Obviousness based on U.S. Patent No. 6,212,521 to Minami in view of DNS (*see* Exhibit 3D).

AWS asserts the following four non-prior art grounds for these claims at this time. These non-prior art grounds are further supported by Sections IV-VI.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);

2. Invalid for Double Patenting (*see* Section VII);

3. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* Section VI); and

4. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI).

### **'978 Patent Claims 17, 23, and 30**

AWS contends that '978 patent claims 17, 23, and 30 are invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for these claims at this time. These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Obviousness based on the Domain Name System (DNS) in view of U.S. Patent No. 5,542,087 to Neimat (*see* Exhibit 3A);

2. Obviousness based on the Web Caching System in view of Neimat (*see* Exhibit 3B);

3. Obviousness based on Neimat in view of DNS (*see* Exhibit 3C);

4. Obviousness based on U.S. Patent No. 6,212,521 to Minami in view of DNS and Neimat (*see* Exhibit 3D);

AWS asserts the four non-prior art grounds below for these claims at this time. These non-prior art grounds are further supported by Sections IV-VI.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);

2. Invalid for Double Patenting (*see* Section VII);

3. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* Section VI); and

4. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI).

## **'978 Patent Claim 24**

AWS contends that '978 patent claim 24 is invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for this claim at this time. These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Obviousness based on the Domain Name System (DNS) in view of U.S. Patent No. 5,542,087 to Neimat and Venkatasubramanian (*see* Exhibit 3A);

2. Obviousness based on the Web Caching System in view of Neimat and Venkatasubramanian (*see* Exhibit 3B);

3. Obviousness based on Neimat in view of DNS and Venkatasubramanian (*see* Exhibit 3C);

4. Obviousness based on U.S. Patent No. 6,212,521 to Minami in view of DNS, Neimat, and Venkatasubramanian (*see* Exhibit 3D).

AWS asserts the four non-prior art grounds below for this claim at this time. These non-prior art grounds are further supported by Sections IV-VI.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);

2. Invalid for Double Patenting (*see* Section VII);

3. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* Section VI); and

4. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI).

## IV. EXEMPLARY OBVIOUSNESS ARGUMENTS AND REASONS TO COMBINE THE IDENTIFIED PRIOR ART

The asserted claims of the Patents-in-Suit relate to combinations of various systems and methods for storing and retrieving data in a computer network that were known in the art prior to the Patents-in-Suit. Where the combination of features recited in any particular asserted claim were not included in a single piece of prior art, as a general matter, it would have been obvious to modify the prior art to make such a combination. The individual features recited in the asserted claims were known to be available and suitable for use in computer networking systems. Thus, as discussed in specific instances in the attached charts, the inclusion of such known structures and/or features in the asserted claims was a matter not of innovation in the art, but of simple choices that would have been within the level of ordinary skill to implement and would have led to no more than the predictable results around the time of the Patents-in-Suit.

To show obviousness, AWS intends to rely on the presence of various structures and features, and combinations thereof, of the prior art described herein as a basis for incorporating those structures and features into other prior art described herein. The reasons justifying such modifications and combinations of prior art features is evident from the prior art itself, the

knowledge of one of ordinary skill in the art, and the nature of the problems to be solved related to the Patents-in-Suit.

Furthermore, the combinations in the accompanying claim charts would have been readily made by one of ordinary skill in the art at the time of the alleged invention of the Patents-in-Suit, at least in that one of ordinary skill would have been motivated to combine the references disclosed herein in such a way as to render the alleged inventions obvious. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007); *Randall Mfg. v. Rea*, 733 F.3d 1355 (Fed. Cir. 2013). Each of the references disclosed herein was directed at the same or similar field of technology and to the same or similar problem as the Patents-in-Suit. As discussed in more detail below and in the accompanying invalidity claim charts, the teaching, suggestion, or motivation to combine these references may be found, explicitly or implicitly, for one or more of the following reasons:

(1)     the combination results from a simple substitution of one known element for another to obtain predictable results;

(2)     the combination results from the use of known techniques to improve similar methods in the same way;

(3)     the combination results from applying a known technique to a known method ready for improvement to yield predictable results;

(4)     the combination results from choosing a finite number of identified, predictable solutions, with a reasonable expectation of success, and therefore is obvious to try;

(5)     the combination results from known work in one field of endeavor prompting a variation of it for use in either the same field or a different one based on design incentives or other market forces and the variations would have been predictable to one of ordinary skill in the art; or

(6)     the combination results from using known techniques or solutions to address a problem addressed by the invention or a problem that would be encountered by one of ordinary skill in the art working in that field.

AWS also intends to rely on the background knowledge and common sense of those of ordinary skill in the art at the alleged time of invention of the Patents-in-Suit to show invalidity of the Patents-in-Suit.

The accompanying invalidity claim charts identify specific claim limitations with combinations of references that render the Asserted Claims obvious. For each such combination of references, if any particular claim limitation is alleged not to be disclosed or inherent in those references, then it would have been obvious to one of ordinary skill in the art to combine the charted reference with one or more of the references identified in the charts for the particular claim limitations. The evidence and information referenced therein is exemplary and representative of AWS's invalidity contentions at this time. The charts are not meant to be a complete recitation or explanation of the evidence in support of AWS's contentions and/or limiting in any way.

Furthermore, AWS describes here additional evidence of obviousness related to the subject matter as a whole and certain specific features of the Asserted Claims of the Patents-in-Suit. To the extent that Kove alleges that any of the prior art references charted in AWS's Exhibits 1-3 do not disclose one of the limitations described below, it would have been obvious to one of ordinary skill in the art before the time of invention, for example, to include the following features in a distributed storage system such as claimed by the Asserted Patents. AWS also refers Kove to AWS' Initial Non-Infringement and Invalidity Contentions dated August 6, 2019 for additional information regarding the identified prior art and invalidity contentions, in particular, the claim charts which further illustrate where specifically in each item of prior art each element of each asserted claim is found. AWS intends to rely on such evidence to support

its contention that one of ordinary skill in the art would have had reason to combine the identified prior art as claimed.

**Data Location Server:** To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of data location servers, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, '170 patent claims 1.b, 6.a, 15.b; '640 patent claim 17.b, 18.c; '978 patent claims 1.a, 10.a, 14.a, 17.b, 31.a.) The concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science, for example. As the Domain Name Server (DNS) protocol recognized long before the alleged invention, there was a known problem in the art that "[t]he applications on the internet were getting more sophisticated and creating a need for general purpose name service," and "[t]he result was several ideas about name spaces and their management." (RFC1034, Section 2.1-2.2.) Browne further appreciated that "[f]or a name to be useful, there must be some means of resolving a name to a location from which the resource can be retrieved or accessed" such as in DNS. (Browne, 182.) Kangasharju similarly recognized "[i]t is highly desirable for host in the Internet to be able to determine the locations (i.e., the IP addresses) of all object servers that contain copies of a specified URL." (Kangasharju, 3.)

In addition, the concept of separating information about the location of data from the data itself or data partitioning, for instance, is an obvious method of organizing information that is well known in computer science. Indeed, DNS uses "name servers" that store information about network address locations (the "where," for example, a mailbox address) that is separate from the underlying data (the "what" in the mailbox). (RFC1034, Sections 2.4, 3.1, 3.6, 3.7; Sherman, pgs. 34-39; Karger/Sherman, Section 3.) Sherman and Karger/Sherman stated: "The primary

function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP addresses of the caches." (Sherman, p. 37; Karger/Sherman, p. 10.)

Neuman also explained that "advantages to distribution are that only part of the naming database is stored on each server, thus reducing the number of queries and updates to be processed." (Neuman, 4.2.) The van Steen article outlines "a solution for locating objects using location-independent identifiers." (van Steen, 1-2.) One of skill would have been motivated to use such partitioning methods, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system. Furthermore, to the extent any prior art discloses the use of at least one location server, it would have been obvious to use more than one location server to achieve further benefits. *See* MPEP § 2144.VI.B (Obviousness of Duplication of Parts).

Therefore, it would have been obvious to one of skill to employ data location servers in a distributed network, particularly in view of the exemplary "Data Location Server References,"[2] such as identified below:

- U.S. Patent No. 6,212,521 to Minami (see, e g., cols. 7-8);

- DNS (see, e.g., RFC1034, Sections 2.4, 3.1, 3.6, 3.7);

- Web Caching System (see, e.g., Sherman, pp. 34-39; Karger/Sherman, Section 3); and/or

- the common sense and background knowledge in the art.

---

[2] These lists herein include exemplary references and not all references that may disclose the stated feature.

These references contain specific teachings that would lead a skilled artisan to combine them with other prior art disclosing distributed networks.  For example, RFC1034 states that DNS uses distributed name servers and local caches to increase the amount of memory and improve performance: "The sheer size of the database and frequency of updates suggest that it must be maintained in a distributed manner, with local caching to improve performance." (RFC1034, 2.)  RFC1034 discloses that this caching occurs to reduce name server load: "A very important goal of the resolver is to eliminate network delay and name server load from most requests by answering them from its cache of prior results."  (*Id*., 29.)  Thus, DNS discloses the use of a distributed network to ensure scalability and performance.  The Web Caching System specifically refers to DNS and a skilled artisan would therefore use DNS's teachings as motivation to combine the Web Caching System with other art.

Neimat similarly discloses scaling a distributed network: "The present invention accommodates any number of clients and servers, and allows the database storage to extend to occupy any number of servers."  (Col. 6:37-39; *see also* 1:36-40, 8:12-15.)  Likewise, Minami states, "[A] first object of the present invention is to provide a data management system which relieves processing loads imposed on individual data management servers by distributing data registration and retrieval tasks and reducing the amount of data maintained in each server."  (Col. 3:38-43.)  Thus, a skilled artisan seeking to ensure scalability and improve performance in a distributed network would be motivated to combine Data Location Server References (such as DNS) with other references disclosing distributed networks (such as Minami or Neimat).

**Hash Function:**  To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of a hash function, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art

before the invention.  (*See, e.g.*, '170 patent claim 1.f, 6.c, 15.a, 17; '640 patent claim 24; '978 patent claim 6.)  The specifications of the asserted patents themselves concede that the "preferably applied" hash function was "well-known" in computer science.  ('170 patent, col. 15:12-18.)  Numerous other publications before the filing of the Patents-in-Suit describe the use of hash functions in distributed systems.  As one example, the prior art recognized that it was well understood "for clients to use a standard hash function to determine from which server to request a document."  (U.S. Patent No. 6,553,420 to Karger, col. 3:23-50; *see also* U.S. Patent No. 6,430,618 to Karger.)  Karger, for example, described a hashing technique known as consistent hashing which stored and retrieved data by a hashed key across a set of distributed and dynamic server machines.  (*See* "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web" by Karger et al. (1997).)  This seminal paper showed how hash keys serve to partition the data across the servers and is cited over 2,500 times as indicated by Google Scholar.  It also declared: "We believe the ideas have broader applicability.  In particular, consistent hashing may be a useful tool for distributing information from name servers such as DNS and label servers such as PICS in a load-balanced and fault tolerant fashion."  Courts have similarly recognized that hash functions are "generic and basic mathematical or algorithmic functions that do not make a patent inventive."  *Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 WL 1456678, at *7 (N.D. Cal. March 23, 2018).

Therefore, it would have been obvious to one of skill to employ a hash function to organize data in a distributed system, and further in view of the exemplary "Hash Function References," such as identified below:

- U.S. Patent No. 5,542,087 to Neimat (see, e.g., col. 8);

- U.S. Patent No. 6,212,521 to Minami (see, e.g., cols. 10, 14);

- U.S. Patent No. 6,553,420 to Karger (see, e.g., cols. 3-4; see also U.S. Patent No. 6,430,618 to Karger);

- DNS (see, e.g., RFC1034, p. 13);

- Web Caching System (see, e.g., Sherman, pp. 34-39; Karger/Sherman, Section 3); and/or

- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to use hash functions to organize data in other distributed networks, such as those disclosed in DNS, Neimat, and Minami. For example, the stated purpose of Karger '618/420 is to distribute requests efficiently "among a plurality of resources." Karger's hashing avoids the known problem in the art of having to spend costly resources to reshuffle data when there is a change in the number of servers. As Karger explains, a reason to use "consistent hashing" is because "for most of the set of requests the allocation is consistent even as resources are added and removed" and "consistent hashing avoids increasing loads and spread when the number of servers change." (Col. 6:28-41.) As explained above, DNS, Neimat, and Minami similarly disclose the enhancement of performance and scalability in a distributed network. Thus, one of skill would have been motivated to use the consistent hashing of Karger to avoid reshuffling and overload problems in other distributed networks, such as DNS, Neimat, or Minami. Consistent hashing would also complement the fundamental performance and scalability goals of other distributed networks, such as DNS, Neimat, and Minami. A skilled artisan seeking to ensure scalability and improve performance in a distributed network would be motivated to combine Hash Function References

(such as Karger '618/420) with other references disclosing distributed networks (such as DNS, Minami or Neimat).

**Redirection:** To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of redirection, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, '170 patent claims 6.c, 15.e; '640 patent claim 17.c, 18.e; '978 patent claims 3, 10.b, 14.c.) The concept of redirection—*i.e.*, searching a first server for information and then searching a second server for information if the first server does not have that information—is obvious and conventional in the field of computer science. DNS, for example, provides responses from DNS name servers, including referring the requester to another set of name servers: "The response by the name server either answers the question posed in the query, refers the requester to another set of name servers, or signals some error condition." (RFC1034, p. 16.) One of skill would have been motivated to employ redirection for example, for the obvious benefit of improving the ability of a system to locate information. It would have also been obvious for a system to employ redirection on the client side or the server side. Cardellini, for example, recognized "[t]he approach of routing the document requests from the client side can be applied to any replicated Web-server architecture even when the nodes are loosely or not coordinated at all." (Cardellini, p. 3.)

Therefore, it would have been obvious to one of skill to employ redirection in a distributed system, and further in view of the exemplary "Redirection References," such as identified below:

- U.S. Patent No. 5,542,087 to Neimat (see, e.g., col. 10);

- U.S. Patent No. 6,014,667 to Jenkins (see, e.g., col. 7);

- U.S. Patent No. 6,212,521 to Minami (see, e.g., col. 9);

- "Dynamic Load Balancing on Web-server Systems" by Cardellini et al. (1999);

- DNS (see, e.g., RFC1034, pp. 15-17);

- Web Caching System (see, e.g., Sherman, pp. 34-39; Karger/Sherman, Section 3); and/or

- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to use redirection in other prior art disclosing distributed networks.  For example, RFC1034 describes: "In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address."  (RFC1034, 17.)  Further, as explained above, RFC1034 discloses the goals of enhancing scalability and performance in a distributed network—a goal also disclosed by other distributed network references, such as Neimat and Minami.  Therefore, a skilled artisan would have understood that redirection can be used to enhance scalability and performance in a distributed network, and would have understood that a server in Neimat or Minami could similarly be used advantageously to point toward a server with the desired information if that information is not on that server.  A skilled artisan would therefore have been motivated to combine Redirection References (such as DNS) with other references disclosing distributed networks (such as Neimat or Minami).

**Load Balancing:** To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of a load balancing, such as based on a

performance criterion, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, '978 patent claims 17.e, 23, 24, 30.) The concept of transferring information from one server to another when the server is full, for example, is obvious and conventional in the field of computer science. Hua DBMS recognizes, for instance, "since effective data placement is an important lever for load balancing, it is normally the determining factor for the performance of a multi-processor system." (Hua DBMS at 494.) Devine DDH states as background "[i]deally, no server is responsive for more than its proportional share of the total data size. This principle can be enforced by actively checking the local load level against the global load level and then performing adaptive load balancing to ameliorate hot spots." (Devine DDH at 3.) One of skill would have been motivated to employ load balancing, for example, for the obvious benefit of improving system performance, speed, and efficiency.

Therefore, it would have been obvious to one of skill to employ load balancing in a distributed system, and further in view of the exemplary "Load Balancing References," such as identified below:

- U.S. Patent No. 5,230,047 to Frey (see, e.g., cols. 1-2);

- U.S. Patent No. 5,542,087 to Neimat (see, e.g., col. 13);

- "An Adaptive Data Placement Scheme for Parallel Database Computer Systems" by Hua and Lee (1990);

- "Load Management in Distributed Video Servers" by Venkatasubramanian and Ramanathan (1997);

- Distributed cooperative Web servers by Baker and Moon (1999); and/or

- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to use load balancing in other prior art disclosing distributed networks, such as DNS and the Web Caching System. DNS discloses the transfer of RRs from one location server to another: "Whole zones can be transferred between name servers by transferring the RRs." (RFC1034, 20.) Further, DNS is "intentionally extensible" (RFC1034, 1), and as explained above, it is expressly concerned about server load and performance. Neimat discloses one way of transferring records from one server to another in order to ensure servers are efficiently loaded: transferring when a predetermined storage criterion is reached. (Col. 13:26-27.) One of ordinary skill would have understood Neimat to be a solution to the problem of server load disclosed in RFC1034 and would combine these two references for at least this reason. As another reason, Neimat proposes a solution to the well-known problem of memory "collisions" (Col. 13:32-37), which is a problem experienced in distributed data storage systems such as the system disclosed in RFC1034.

Venkatasubramanian likewise teaches load management based on the amount of "disk space." (Venkatasubramanian, 529). But Venkatasubramanian also teaches that load management based on storage space (as in Neimat) is only one approach, and that a combination of that approach with others is preferred. Specifically, Venkatasubramanian states that "disk bandwidth, memory buffer space, CPU cycles, and network transfer bandwidth" are different variables that may be "necessary for supporting" a request. (*Id*.) Venkatasubramanian explicitly teaches the combination of these different approaches for system optimization: "Performance evaluations indicate that a load management procedure which uses a judicious combination of the different policies performs best for most server con-figurations." (*Id*., 528.) Thus, Neimat teaches one method of load balancing (based on disk space), and Venkatasubramanian expressly

23

teaches Neimat's method while presenting methods of load balancing based on other performance criteria, including transaction rate, as alternatives to Neimat's method. One of ordinary skill would have therefore modified Neimat in view of Venkatasubramanian's teaching.

A skilled artisan would therefore have been motivated to combine Load Balancing References (such as Neimat and Venkatasubramanian) with other references disclosing distributed networks (such as DNS or Web Caching System).

Additional evidence of obviousness and reason to combine that is consistent with these contentions and is applicable to each of the Asserted Patents is detailed in the related *inter partes* review of the '978 patent filed by AWS on December 12, 2019 (Case IPR2020-00276).

## V.    INVALIDITY CLAIM CHARTS FOR PATENTS-IN-SUIT

Claim charts 1A-1D identify where specifically in each item of identified prior art each element of each asserted claim of the '170 patent is found.

**Exhibit 1A:** Domain Name System (DNS);

**Exhibit 1B:** Web Caching System;

**Exhibit 1C:** U.S. Patent No. 5,542,087 to Neimat; and

**Exhibit 1D:** U.S. Patent No. 6,212,521 to Minami.

Claim charts 2A-2D identify where specifically in each item of identified prior art each element of each asserted claim of the '640 patent is found.

**Exhibit 2A:** Domain Name System (DNS);

**Exhibit 2B:** Web Caching System;

**Exhibit 2C:** U.S. Patent No. 5,542,087 to Neimat; and

**Exhibit 2D:** U.S. Patent No. 6,212,521 to Minami.

Claim charts 3A-3D identify where specifically in each item of identified prior art each element of each asserted claim of the '978 patent is found.

**Exhibit 3A:** Domain Name System (DNS);

**Exhibit 3B:** Web Caching System;

**Exhibit 3C:** U.S. Patent No. 5,542,087 to Neimat; and

**Exhibit 3D:** U.S. Patent No. 6,212,521 to Minami;

Furthermore, AWS contends at this time that the following elements may be governed by pre-AIA 35 U.S.C. § 112(6).  Below AWS presents a general description of the claimed function. The identity of the structures in each item of prior art are reflected in the accompanying claim charts.

| Claim Language | General Description of Claimed Function |
| --- | --- |
| Programming logic… ('978 claims 1, 10, 31; '170 claim 6) | **Claimed Function ('978 claims 1 and 31):** responsive to a location query identifying a desired entity to return a location message… <br><br> **Claimed Function ('978 claim 10):** responsive to a location query for a desired identifier to return one of a location message… <br><br> **Claimed Function ('170 claim 6):** configured to return, in response to a location query related to a desired entity, a location message… |
| Computer executable code configured to execute the following steps… ('640 claims 17, 18) | **Claimed Function ('640 claim 17):** in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client… <br><br> **Claimed Function ('640 claim 18):** if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string… |

| Claim Language | General Description of Claimed Function |
|---|---|
| Hash function used to organize the data location information across the plurality of data location servers... ('170 claim 1) | **Claimed Function ('170 claim 1):** to organize the data location information across the plurality of data location servers… |

## VI.    INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 112

AWS contends at this time that one or more of the Asserted Claims are invalid as indefinite under 35 U.S.C. § 112, ¶ 2.  The Asserted Claims fail to particularly point out and distinctly claim the subject matter that the patentee regards as its alleged invention such that one of ordinary skill in the relevant art would be reasonably apprised of the bounds of the asserted claims when read in light of the specification.  *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014).  For example, the scope of the following overly vague, generic, and/or subjective claim terms of the Patents-in-Suit does not appear at this time to be reasonably certain such that one of ordinary skill could properly ascertain the scope of the invention:

- *Location information...* as found in claim 1 of the '170 patent. claims 17 and 18 of the '640 patent, claims 1, 10, 14, and 17 of the '978 patent;

- *Hash function/table...* as found in claim 1 of the '170 patent, claim 24 of the '640 patent, and claim 6 of the '978 patent;

- *Each one of the data location servers is configured to determine...* as found in claim 1 of the '170 patent;

- *Programming logic...configured to return...* as found in claim 6 of the '170 patent; and *programming logic … to return…* as found in claims 1, 3, and 31 of the '978 patent;

- *Executable code configured to execute...* as found in claims 17 and 18 of the '640 patent;

- *Transport protocol configured to transport…* as found in claim 17 of the '978 patent;

- *Associated with...* as found in claims 1 and 6 of the '170 patent; claims 17 and 18 of the '640 patent; and claims 1, 17, and 31 of the '978 patent;

- *Calculate...* as found in claims 17 and 18 of the '640 patent;

- *A portion...* as found in claims 1, 17, and 30 of the '978 patent; claims 1, 8, and 17 of the '170 patent; and claim 24 of the '640 patent;

- *Location information in the location server is maintained in an indexed location store indexed by a hash table*… as found in claim 6 of the '978 patent.

- *Performance criterion...* as found in claims 17, 23, 24, and 30 of the '978 patent;

- *Predetermined performance limit...* as found in claims 17 and 30 of the '978 patent;

- *First data location server...* as found in claims 17 and 30 of the '978 patent;

- *Transaction rate limit...* as found in claim 24 of the '978 patent; and

- *Monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit*… as found in claim 30 of the '978 patent.

Similarly, the Asserted Claims are invalid for lack of written description and lack of enablement under 35 U.S.C. § 112, ¶ 1. The Asserted Patents fail to teach those of ordinary skill in the art how to make and use the full scope of the claimed invention, in particular the claim terms listed above, without undue experimentation and fail to show that the inventors were in possession of the claimed inventions at the time they filed their applications. For example, Kove's apparent understanding of the breadth of the Asserted Claims reflected in Kove's Infringement Contentions, to the extent it is discernable, is not supported by the teachings of the Patents-in-Suit. To the extent Kove contends that the Accused Products meet each and every limitation of the Asserted Claims, AWS contends that the Asserted Claims lack sufficient written description and enablement to expand the scope of the claims beyond the plain language. The scope of the written description and enablement is not commensurate with the full scope of the claim as alleged by Kove. As one example, the Asserted Claims recite "location information…," but the specifications do not mention or describe this term as Kove in its Infringement Contentions is (apparently) using it. Similarly, the specifications do not describe the hash

function/table of claim 1 of the '170 patent, claim 24 of the '640 patent, and claim 6 of the '978 patent. Thus, the Asserted Claims are invalid due to a lack of written description and lack of enablement.

As another non-limiting example, AWS contends that claim 17 of the '978 patent is invalid under both 35 U.S.C. § 112, ¶ 1, because the '978 patent specification does not disclose how to determine "a predetermined performance limit," and 35 U.S.C. § 112, ¶ 2, because the claim limitation "the first data location server" lacks antecedent basis. AWS also contends that claims depending on claim 17 are invalid under 35 U.S.C. § 112. For example, AWS contends that claim 30 is invalid under 35 U.S.C. § 112, ¶ 1 because the '978 patent specification does not disclose "monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit."

Similarly, AWS contends that all asserted claims with references to "hashing" are invalid for lack of written description and lack of enablement under 35 U.S.C. § 112, because the specification does not adequately disclose or enable the hashing limitations recited in the claims. For instance, claim 6 of the '978 patent recites: "The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table." However, the specification neither describes nor enables location information within a location server being maintained in an indexed location store indexed by a hash table.

AWS reserves the right to make additional arguments under 35 U.S.C. § 112 as the positions that Kove takes with regard to priority, infringement, claim interpretation of various terms that have been construed by the Court or terms that have not been construed by the Court,

and responses to AWS's invalidity arguments, become more clearly articulated or are modified

and as Kove attempts to support its positions with specific reference to disclosures in its patents.

## VII.    INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 101

Each of the Asserted Patents claims is invalid as unpatentable subject matter under 35

U.S.C. § 101.  The claims of the Asserted Patents recite abstract data-manipulation steps, such as

"receiving" or "storing" information, on generic computer components, as described in detail in

the briefing on the AWS motion to dismiss, which is incorporated herein by reference.  (*See* Dkt.

38, 45.)  The logic of this § 101 argument applies to all Asserted Claims.

Additionally, AWS contends that claims of the '978 patent are unpatentable under the

doctrine of obviousness-type double patenting.  For example, the asserted claims of the '978

patent are invalid in view of the '170 patent, because the '978 patent claims are not patentably

distinct from the '170 patent.  As Kove admits, for example, claims of the '978 patent "recites

substantially the same claimed architecture as claim 1 of the '170 patent… ."  (Dkt. 44 at 10.)

Any claim limitations added to the '978 patent claims are simply obvious variants.  Likewise, the

asserted claims of the '978 patent are invalid in view of the '640 patent because the '978 patent

claims are not patentably distinct from the '640 patent.  (*See id.*)  Further, Kove alleges that the

'978 patent claims are entitled to priority to the same application as the '170 and '640 patents,

and, under this view of the claims, everything claimed in the '978 patent is necessarily disclosed

in, and not patentably distinct from, each of the prior applications in the '978 patent priority

chain.

## VIII.   UNENFORCEABILITY CONTENTIONS AGAINST PATENTS-IN-SUIT

AWS reserves the right to disclose contentions of unenforceability for the Patents-in-Suit

if AWS discovers facts giving rise to unenforceability defenses.  AWS's investigation of Kove's

actions concerning the prosecution of the Patents-in-Suit and knowledge of the prior art is

ongoing.  For example, AWS will seek the Rule 30(b)(6) corporate representative deposition of Kove regarding the prosecution of the asserted patents and knowledge of the prior art.

## IX.      DOCUMENT PRODUCTION

Pursuant to LPR 2.1, Defendants have produced documents sufficient to show the operation and construction of the accused products and copies of the prior art or a description sufficient to identify the prior art.  Defendants further produced additional documents bearing Bates numbers AMZ_KOVE_000070463 - AMZ_KOVE_000070530 related to prior art identified in these contentions.


February 13, 2020                                    Respectfully submitted,

                                                     */s/ Michael G. Babbitt*

Adam G. Unikowsky                                    Terri L. Mascherin
JENNER & BLOCK LLP                                   Michael G. Babbitt
1099 New York Ave. NW Suite 900                      Michael T. Werner
Washington, DC 20001                                 JENNER & BLOCK LLP
(202) 639-6000                                       353 N. Clark St.
aunikowsky@jenner.com                                Chicago, IL 60654
                                                     (312) 222-9350
                                                     tmascherin@jenner.com
                                                     mbabbitt@jenner.com
                                                     mwerner@jenner.com

                                                     *Attorneys for Amazon Web Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2020, I caused a true and correct copy of the

foregoing:

**AMAZON WEB SERVICES, INC.'S FINAL UNENFORCEABILITY AND INVALIDITY
CONTENTIONS**

to be served on all counsel of record via electronic mail and pursuant to Federal and local rules.


*/s/ Michael T. Werner*
Michael T. Werner
Jenner & Block LLP
353 N. Clark Street
Chicago, Illinois  60654
(312) 222-9350