**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Kove IO, Inc., Plaintiff, v. Amazon Web Services, Inc., Defendant. | Civil Action No. 1:18-cv-08175<br>Judge Rebecca R. Pallmeyer<br>Jury Trial Demanded |

**KOVE IO INC.'S OPPOSITION TO AMAZON WEB SERVICES' MOTION TO CONDUCT *IN CAMERA* REVIEW AND TO COMPEL PRODUCTION AND SUPPLEMENT TO MOTION**

Plaintiff Kove IO, Inc. ("Kove") files this opposition to Defendant Amazon Web Services, Inc.'s ("AWS") Motion to Conduct *In Camera* Review And To Compel Production ("Motion" or "Mot.") (Dkt. No. 122) and Supplement to Motion ("Supplement") (Dkt. No. 126) (collectively, "Motions").

## I. INTRODUCTION

Privilege is a pillar of the legal profession, enabling clients to freely communicate with their attorneys and, in turn, receive the best possible legal advice. Parties must zealously guard their privileged communications, or risk permanent waiver. Yet in the middle of a global pandemic, AWS did not grant Kove the courtesy of waiting for it to fully investigate the facts surrounding documents from nearly 20 years ago that, on their face, appeared to reflect attorney-client communications. AWS instead, without warning Kove, filed its Motions with the Court. As a result, AWS's Motions are riddled with inaccuracies and unfounded suppositions. After belated meet and confers between counsel (which Kove had to initiate, even though the local rules required AWS to do so *before* filing its Motions[1]), 6 of the 13 documents that AWS moved on have been de-designated and the issues relating to them rendered moot. Of the remaining 7 documents, 6 have been produced with partial redactions that cover only the portions containing privileged information. Should the Court determine that *in camera* inspection is appropriate for any of these documents, Kove will promptly make them available, in full, for the Court's review.

Central to AWS's Motion is a specious allegation of fraud relating to 3 of the disputed documents. AWS accuses John Overton — the CEO of Kove and one of the inventors of the patents-in-suit — of inequitable conduct before the United States Patent and Trademark Office

[1] For the Supplemental Motion, for example, AWS contacted Kove by email, demanding an immediate response, and then filed its Supplemental Motion within a matter of hours, without waiting for Kove's response.

("USPTO") for allegedly withholding disclosure of certain prior art during prosecution of the patents-in-suit. AWS bases its allegation entirely on a note Mr. Overton wrote to himself to help him keep track of his own files. The note reads, "These materials were not given to the patent examiner." Because the note was produced in proximity to a reference authored by David Karger ("the Karger reference"), AWS leapt to the conclusion that the note must have been referring to the Karger reference and accuses Mr. Overton of failing to provide the reference to the USPTO during prosecution.[2] But Mr. Overton's note was *not* connected to the Karger reference – rather it was appended to 3 documents that Mr. Overton had written for his patent prosecution attorney as part of the prosecution process.[3] Marvin Decl. at ¶¶ 2-4.[4] Because these 3 documents were direct communications between Mr. Overton and his counsel for the purpose of receiving assistance with the prosecution of Mr. Overton's patent applications, they are privileged, and AWS has no legitimate basis to challenge them.

For the remaining 4 documents, 3 are privileged because they contain notes reflecting legal advice received from patent prosecution attorneys, and the fourth is a draft communication to a patent prosecution attorney for the purpose of receiving legal advice. AWS has no basis to

[2] AWS's Motion claims that the Karger reference is "important" prior art that would have invalidated the asserted patents had the USPTO known about it during patent prosecution. But AWS's own actions give the lie to this newly minted position. AWS has known about the Karger reference for a long time — it appeared in AWS's initial invalidity contentions, which were served on August 6, 2019. Were AWS sincere about its perceived importance of the Karger reference, it stands to reason that AWS would have relied on the Karger reference in its petition for *inter partes* review ("IPR"), which was not filed until December 12, 2019. But AWS did not present the Karger reference to the USPTO as purportedly anticipating or rendering obvious any claims of Kove's patent. Similarly, AWS's final invalidity contentions, which were served on February 13, 2020, barely mention the Karger reference.

[3] The note in question, which was produced and later clawed back when it was believed to contain privileged information. After clawing it back, Kove investigated the note thoroughly and determined that, while it referred to privileged communications, it did not itself meet the requirements for privilege, and so re-produced the document.

[4] "Marvin Decl." refers to the Declaration of Michael Marvin In Support of Kove IO Inc.'s Opposition to Amazon Web Services' Motion to Conduct *In Camera* Review and to Compel Production and Supplement to Motion, attached as Exhibit 1.

challenge Kove's narrowly tailored designations of privilege, and its Motions should be denied accordingly.

## II. BACKGROUND

Kove filed this patent infringement action against AWS on December 12, 2018. (Dkt. No. 1.) Kove alleged that AWS infringes U.S. Patent Nos. 7,233,978 ("the '978 patent"), 7,103,640 ("the '640 patent"), and 7,814,170 ("the '170 patent"). On April 5, 2019, AWS filed a motion to dismiss claiming these patents are invalid under 35 U.S.C. § 101 for lack of a patentable invention. (Dkt. No. 36.) Fact discovery was temporarily stayed pending the hearing for the motion but resumed following the hearing (Dkt. Nos. 41, 46.) The Court denied AWS's motion to dismiss on March 23, 2020. (Dkt. No. 110.)

John Overton, the CEO of Kove and an inventor of the patents-in-suit, founded the company OverX, Inc. ("OverX") on May 21, 1999. It was at OverX that the technology of the patents-in-suit was developed, and so the patent applications that became the patents-in-suit were assigned to OverX. On October 8, 2002, OverX began liquidation proceedings, and the assets of OverX were transferred to Econnectix LLC on December 31, 2002, and then to Econnectix Corporation on March 15, 2003. Mr. Overton founded and served as CEO of Econnectix LLC and Econnectix Corporation. On January 20, 2011, Econnectix Corporation renamed as Kove Corporation, which became Kove IO, Inc. ("Kove") on December 10, 2014. Kove sold assets to Arctide LLC on June 27, 2015, including certain rights to the patents-in-suit, before re-acquiring them on June 5, 2018. Mr. Overton remains the CEO of Kove and also serves as the CEO of Arctide LLC. He has retained control over the patents-in-suit from their filing through the present.

## III. STATEMENT OF LAW

The attorney-client privilege shields from discovery documents that reflect communications between client and attorney, in order to promote the important policy of fostering

"full and frank communications between attorneys and their clients" with the goal of promoting "broader public interests in the observance of law and administration of justice." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981); *US. v. Frederick*, 182 F. 3d 496 (7th Cir. 1999) (attorney-client privilege is designed to assist the lawyer in giving the client good advice and avoids disruption of the attorney-client relationship). Courts "apply the law of the circuit in which the district court sits" for determining the applicability of the attorney-client to documents and issues not unique to patent law. *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 251 (N.D. Ill. 2000) (quoting *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000). The Seventh Circuit generally uses the Dean Wigmore test to determine attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except as the protection be waived.

*United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (citing 8 Wigmore § 2292). The party seeking to withhold materials from discovery bears the burden of establishing that the materials are privileged. *U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

The privilege extends not only to *communications*, but also to documents or information that either directly or indirectly reveal the substance of a confidential communication or litigation strategy, including regarding the implications of past or proposed conduct. *Wilstein v. San Tropai Condominium Master Ass'n*, 189 F.R.D. 371, 378 (N.D. Ill. 1999). Moreover, the privilege does not apply only to communications from lawyer to client, but also to communications from client to lawyer, and it protects the communication of factual information to the extent legal advice is sought or given on that factual information. *Harmony Gold U.S.A. v. FASA Corp.*, 169 F.R.D. 113, 115 (N.D. Ill. 1996); *McCook Metals*, 192 F.R.D. at 253.

## IV. ARGUMENT

### A. The Withheld Materials Are Privileged.

The privileged materials withheld by Kove fall into three categories, each of which is addressed below.

#### 1. CTRL000020109, CTRL000020110, And CTRL000020111 Are Privileged Communications To A Patent Prosecution Attorney For Purposes Of Receiving Legal Services.

The first category of documents is communications from Mr. Overton to patent prosecution attorneys for the purpose of receiving legal services.[5] The three documents in this category — CTRL000020109, CTRL000020110, and CTRL000020111 — are materials prepared by Mr. Overton in advance of an interview with the USPTO patent examiner[6] examining the particular patent application. They contain information intended to equip the patent attorney with information relating to the filed claims in order to assist that attorney in effectively prosecuting those claims during the interview. As such, these documents are within the scope of privilege. *See McCook Metals*, 192 F.R.D. at 251-53 (N.D. Ill. 2000) (citing *In re Spalding Sports Worldwide*, 203 F.3d at 802-05 (holding that "even though the invention record may contain technical information or references to prior art, the communication between inventor and attorney

[5] Patent prosecution is the process that begins when a patent applicant files a patent application and concludes when a patent is granted or the application is abandoned. It includes the back-and-forth process between the USPTO patent examiner and the applicant, in which the examiner rejects claims and the applicant responds with amendments to address the issues identified or arguments as to why they believe the rejection was incorrect. Patent prosecution attorneys assist applicants with this process, often interfacing with the USPTO on the applicants' behalf. Patent attorneys also advise applicants as to strategies relating to their intellectual property, including, for example, whether to protect their inventions through patents or trade secrets, which technology or aspects of technology to patent, the scope of patent coverage, and the countries in which to obtain patent coverage.

[6] During the course of patent prosecution, the patent applicant may have an "interview" with the patent examiner. An interview is a meeting, generally in-person at the USPTO, where the patent applicant and/or their attorneys discuss the application's claims with the patent examiner. This more direct and informal proceeding can often streamline the patent prosecution process, as compared with the purely written communications between the USPTO and the patent applicant that are the norm.

was primarily for the purpose of obtaining legal advice because counsel referred to the invention record for the purpose of making patentability determinations. Thus, the entire record was privileged.")).

The descriptions of each disputed document, as set forth in Kove's Privilege Log,[7] are:

- CTRL000020109: Draft chart prepared for counsel for purposes of receiving advice from counsel regarding meeting before patent examiner.
- CTRL000020110: Draft description of NTDP prepared for counsel for purposes of receiving legal advice from counsel regarding meeting before patent examiner.
- CTRL000020111: Draft description of NTDP prepared for counsel for purposes of receiving legal advice from counsel regarding meeting before patent examiner.

The withheld information in these documents is privileged and should not be subject to discovery by AWS.

### 2. CTRL0000019952, CTRL000021381, And CTRL000019950 Contain Privileged Legal Advice From Patent Prosecution Attorneys.

The second category contains the notes of Mr. Overton that document legal advice that he received from his patent prosecution attorneys. Mr. Overton is an inventor of the patent applications being discussed, and was communicating with prosecution attorneys on behalf of the then-owner of the patents, OverX and then Econnectix. Documents bearing control numbers CTRL0000019952, CTRL000021381, and CTRL000019950 fall within this category.

As stated in Kove's privilege log, these notes reflect advice from patent prosecution attorneys to Mr. Overton about legal strategy — specifically, advice regarding potential office action responses. That the communications are reflected in personal notes does not in any way

[7] Kove's May 27, 2020 Privilege Log is attached as Exhibit 2.

undermine the privileged status of the communications. *See McCook Metals*, 192 F.R.D. at 252 (holding that documents memorializing conversations that would be privileged are also privileged) (citing *Natta v. Zletz*, 418 F.2d 633, 636 (7th Cir. 1969) (noting that even checklist forms reflecting an attorney-client dialogue regarding what issues an attorney has reviewed and whether certain patent requirements have been met is privileged)); *TNI Packaging, Inc. v. Perdue Farms, Inc.*, 2006 WL 6654885, at *2 (N.D. Ill. Feb. 28, 2006) (various documents exchanged between attorney and client containing, each, the "date of introduction of the concept included in the draft patent application," "the date by which the patent application must be filed," and a "request for comment from the client regarding" the date of introduction of the patent were privileged).

Kove is *not* withholding any portions of these notes that contain facts that are a matter of public record or that solely concern the patent prosecution attorneys' bills or USPTO fees. *See Mass Engineered Design, Inc. v. Ergotron, Inc.*, 2008 WL 11348359, at *5 (E.D. Tex. Oct. 14, 2008) (citing *In re Grand Jury Subpoena*, 926 F.2d 1423, 1431 (5th Cir. 1991), *cert denied*, 499 U.S. 959 (1991) ("[W]hen confidential communications are inextricably intertwined with billing information, then that information remains privileged."); *Matter of Witnesses Before the Special March 1980 Grand Jury*, 729 F.2d 489, 495 (7th Cir. 1984) ("[B]illing sheets or time tickets which indicate the nature of documents prepared, issues researched or matters discussed could reveal the substance of confidential discussions between attorney and client."); *Real v. Continental Group, Inc.*, 116 F.R.D. 211, 213-14 (N.D. Cal. 1986) ("The attorney-client privilege embraces attorney time, records, and statements to the extent that they reveal litigation strategy and the nature of the services provided.").

The descriptions of each disputed document, as set forth in Kove's Privilege Log, are:

- CTRL0000019952: Notes memorializing legal advice from counsel Joe Hetz re:

potential office action responses.

- CTRL000021381: Email to self (John Overton) memorializing legal advice received during meeting with Kent Genin re: patent filing and strategy considerations.
- CTRL000019950: Notes re: legal advice and communications with counsel regarding office actions and applications.[8]

The withheld information in these documents is thus privileged and so shielded from discovery by AWS.

### 3. CTRL000006959 Was Drafted To Seek Legal Advice From A Patent Prosecution Attorney And Is Privileged.

The third category comprises a single document, CTRL000006959, which is a draft of a letter from Mr. Overton to Paul Carmichael, an attorney who provides counseling to companies on intellectual property maters. While the draft contains background facts describing Econnectix's business and the status of certain patents and patent applications that are not subject to privilege protection (these sections have been produced), it also references several questions regarding legal advice that Mr. Overton was hoping to receive. Although it appears that the letter was never sent to Mr. Carmichael, that fact does not destroy privilege.[9] Mr. Overton subsequently sought, and received, legal advice with respect to the same subject matter, but from different counsel. The withheld portions of the draft letter to Mr. Carmichael are properly viewed as a step in the direction of obtaining advice from counsel, and therefore privileged. *See Chen-Oster v. Goldman, Sachs &*

---

[8] Kove has carefully researched the facts related to each contested document, but in certain cases has been unable to identify the specific attorney with whom this communication was made, including here. Kove will supplement its privilege log if it is able to locate any additional information.

[9] Had the letter been sent, there would be no dispute that it is privileged. *See McCook Metals*, 192 F.R.D. at 251-53.

*Co.*, 293 F.R.D. 547, 554 (S.D.N.Y. 2013) (holding that data recorded in a database was privileged as it was an "initial step in communicating that information to counsel for the purpose of obtaining legal advice," reasoning that were this data to be disclosed, "the ability of the client to seek legal advice would be chilled, which is precisely the result that the privilege is intended to avoid."); *see also Shaffer v. Am. Med. Assoc'n*, 662 F.3d 439, 447 (7th Cir. 2011) ("Lynch also understood that he created the document for the sole purpose of meeting with in-house counsel Katsuyama about the possible lawsuit. The memorandum was therefore prepared *in the context of* the attorney-client relationship.") (emphasis added).

For these reasons, all the materials contested by AWS are properly withheld as privileged.

**4. Kove And Mr. Overton Have The Authority To Assert Privilege Over The Contested Materials.**

Kove has the authority to assert privilege over the contested documents. The attorney-client privilege that adheres to these documents transferred with the documents themselves from the companies OverX and Econnectix to Kove. In particular, after the company OverX was liquidated, assets, privileges, and operations of OverX transferred to Econnectix LLC and then to Econnectix Corp, following a corporate restructuring. Econnectix renamed as Kove Corporation, which became Kove IO. Kove sold the relevant assets to Arctide but then purchased them all back in 2018.

"[A]ssignees or transferees of most, if not all, of a corporation's assets will have the authority to assert or waive the attorney-client privilege." *Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 406 (N.D. Ill. 2007). Kove has possession of the documents over which it asserts privilege. And patent counsel for OverX and Econnectix (at the time of the documents in question) continued to serve as counsel for the assets' subsequent owners. Taken together, these facts show a continued joint interest in developing the patents through the various

interconnected corporate forms and that there was "transfer of the attorney-client privileges and relationships that had existed." *Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*, 585 F. Supp. 2d 995, 1003 (N.D. Ill. 2008) (denying motion to dismiss after finding plaintiff had a right to assert predecessor's attorney-client privilege).

## V. CONCLUSION

For the reasons set forth above, Kove respectfully requests that the Court deny Amazon's Motions in their entirety.

Dated: June 1, 2020

Respectfully submitted,

/s/ *Khue Hoang*
Khue Hoang

Renato Mariotti (State Bar No. 6323198)
rmariotti@thompsoncoburn.com
Holly H. Campbell
hcampbell@thompsoncoburn.com
Thompson Coburn LLP
55 E. Monroe St., 37th Floor
Chicago, IL 60603
Telephone: (312) 346-7500
Telecopier: (312) 580-2201

Sarah O. Jorgensen (*pro hac vice*)
sjorgensen@reichmanjorgensen.com
Reichman Jorgensen LLP
1201 West Peachtree, Suite 2300
Atlanta, GA 30309
Telephone: (650) 623-1403
Telecopier: (650) 623-1449

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Reichman Jorgensen LLP
818 Connecticut Avenue NW, Suite 850
Washington, DC 20006
Telephone: (202) 894-7311
Telecopier: (650) 623-1449

Khue Hoang (*pro hac vice*)
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (*pro hac vice*)
jcardenas-navia@reichmanjorgensen.com
Wesley White (*pro hac vice*)
wwhite@reichmanjorgensen.com
Rahul Sarkar (*pro hac vice*)
rsarkar@reichmanjorgensen.com
Reichman Jorgensen LLP
750 Third Avenue, Suite 2400
New York, NY 10017
Telephone: (646) 921-1474
Telecopier: (650) 623-1449

Courtland L. Reichman (*pro hac vice*)
creichman@reichmanjorgensen.com
Jennifer P. Estremera (*pro hac vice*)
jestremera@reichmanjorgensen.com
Joachim B. Steinberg (*pro hac vice*)
jsteinberg@reichmanjorgensen.com
Michael G. Flanigan (State Bar No. 6309008)
mflanigan@reichmanjorgensen.com
Kate M. Falkenstien (*pro hac vice*)
kfalkenstien@reichmanjorgensen.com
Reichman Jorgensen LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Telecopier: (650) 623-1449

*ATTORNEYS FOR PLAINTIFF KOVE IO, INC.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Holly Campbell*
Holly Campbell