IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KOVE IO, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 1:18-cv-08175 |
| AMAZON WEB SERVICES, INC., | ) | |
| | ) | Hon. Rebecca R. Pallmeyer |
| Defendant. | ) | |
| | ) | |
| | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS**

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
aunikowsky@jenner.com

Terri L. Mascherin
Timothy J. Barron
Michael T. Werner
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
tmascherin@jenner.com
tbarron@jenner.com
mwerner@jenner.com

*Attorneys for Amazon Web Services, Inc.*

The Court should enter judgment on the pleadings in favor of AWS with respect to claims 1, 3, 6, 10, 14, and 31 of the '978 patent because those claims are invalid for obviousness-type double patenting in view of the '640 and '170 patents.

Kove advances two arguments against AWS's motion, neither of which has merit. First, Kove claims that the double patenting doctrine does not apply because the '978 patent's expiration date is attributable to its term extension under 35 U.S.C. § 154(b). That is wrong. Federal Circuit case law explicitly states that the double patenting doctrine applies under the precise circumstances presented here. Kove relies on *Novartis AG v. Ezra Ventures LLC*, 909 F.3d 1367 (Fed. Cir. 2018), in which the Federal Circuit held that a term extension under the Hatch-Waxman Act did not trigger the double patenting doctrine. But Kove omits that *Ezra*'s reasoning was expressly premised on the *difference* between Hatch-Waxman and § 154(b)—the statute at issue here.

Second, Kove claims that AWS's motion is premature because the Court has yet to conduct claim construction or fact-finding. But under Federal Circuit precedent, a party cannot defeat a motion for judgment on the pleadings merely by asserting that claim construction and fact-finding have not yet occurred. Rather, the nonmoving party must give a plausible argument that claim construction or fact-finding would affect the outcome. Here, Kove offers none, and none exists. As AWS explained in its motion, the language in the '978 patent claims is not patentably distinct from the nearly identical language in the expired '640 and '170 patents, and claim construction cannot change that fact. Therefore, there is no reason to delay adjudication of AWS's motion.

## I. The '640 and '170 Patents Are Proper Reference Patents.

Kove contends that the '640 and '170 patents cannot serve as reference patents because those patents would have expired on the same day as the '978 patent had the '978 patent not received a term extension under 35 U.S.C. § 154(b). Kove Br. 11-15. Kove is incorrect.

It is undisputed that without any term extensions under 35 U.S.C. § 154(b), all three patents would have expired on July 8, 2018, twenty years after the filing of the earliest application to which the patents claim priority. But because the patents received term extensions of different lengths, they expire at different times. The '640 patent received a 640-day extension, so it expired on April 8, 2020. The '170 patent received a 749-day term extension, but the inventors filed a terminal disclaimer relative to the '640 patent, disclaiming the portion of the term extension that went beyond the term of the '640 patent; therefore, it also expired on April 8, 2020. Finally, the '978 patent received an 810-day term extension, but the inventors did not file a terminal disclaimer. Thus, the '978 patent purports to expire on September 25, 2020. Kove Br. 3.

This is a classic case for applying the double patenting doctrine. "[I]t is a bedrock principle of our patent system that when a patent expires, the public is free to use not only the same invention claimed in the expired patent but also obvious or patentably indistinct modifications of that invention." *Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1214 (Fed. Cir. 2014). "[T]hat principle is violated when a patent expires and the public is nevertheless barred from practicing obvious modifications of the invention claimed in that patent because the inventor holds another later-expiring patent with claims for obvious modifications of the invention." *Id.* That is exactly what happened here: the public should have been free to practice the invention on April 8, 2020, but it cannot, because Kove holds the later-expiring '978 patent.

Kove nonetheless claims that the double patenting doctrine does not apply because the '978 patent's later expiration date arises from a term extension under 35 U.S.C. § 154(b). Kove Br. 11-15. Kove's contention is contrary to Federal Circuit authority. In *Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Trust*, 764 F.3d 1366 (Fed. Cir. 2014), the Federal Circuit stated:

> ***Patents claiming overlapping subject matter that were filed at the same time still can have different patent terms due to examination delays at the PTO. See 35 U.S.C. § 154(b) (patent term adjustments).*** So too where, as here, the applicant chooses to file separate applications for overlapping subject matter and to claim different priority dates for the applications, the separate patents will have different expiration dates since the patent term is measured from the claimed priority date. ***When such situations arise, the doctrine of obviousness-type double patenting ensures that a particular invention (and obvious variants thereof) does not receive an undue patent term extension.***

*Id.* at 1373 (emphasis added; citations and footnote omitted). As this quotation shows, the double patenting doctrine applies when patents that would otherwise expire at the same time have different patent terms due to extensions under 35 U.S.C. § 154(b)—the exact facts of this case. Kove is simply wrong to suggest that *Abbvie* somehow leaves this question "unresolved." Kove Br. 15.

Kove's position is also irreconcilable with 35 U.S.C. § 154(b)(2)(B), which provides: "No patent the term of which has been disclaimed beyond a specified date may be adjusted under this section beyond the expiration date specified in the disclaimer." The purpose of this statute is straightforward. Patentees file terminal disclaimers for new patent applications to ensure that they expire at the same time as reference patents, and therefore are not invalid for double patenting in view of those reference patents. AWS Br. 3. Section 154(b)(2)(B) reflects Congress's concern that if a patent applicant files a terminal disclaimer during prosecution to avoid a double patenting problem, but then the patent term is extended at the end of prosecution under 35 U.S.C. § 154(b), the term extension might cause the new patent to expire later than the reference patent—thus reintroducing the very double patenting problem that the terminal disclaimer was designed to solve. Section 154(b)(2)(B) prevents that outcome by ensuring that if the patentee files a terminal disclaimer, the term will not be extended under § 154(b). This statute makes no sense unless a term extension under § 154(b) could result in a double patenting invalidation. Otherwise, there would be no reason to prevent the term from being extended.

Indeed, Kove filed a terminal disclaimer for the '170 patent specifically to overcome the patent examiner's double patenting rejection. Kove Br. 3. Like the '978 patent, the '170 patent would have expired on July 8, 2018 had it not received a term extension under §154(b). The reason the '170 patent received a double patenting rejection was that a term extension would cause it to expire after the '640 patent. And the reason the terminal disclaimer for the '170 patent overcame the double patenting rejection was that it ensured that the two patents would expire on the same day—precisely what Kove did not do with respect to the '978 patent.

Kove attempts to avoid the clear import of § 154(b) by arguing that under *Novartis AG v. Ezra Ventures LLC*, the double patenting doctrine cannot apply to a patent that is subject to a term extension under 35 U.S.C. § 154(b). Kove seriously mischaracterizes the reasoning in *Ezra*. *Ezra* was explicitly premised on the fact that the statute at issue in *Ezra*—the Hatch-Waxman Act, 35 U.S.C. § 156—*lacks* a provision analogous to 35 U.S.C. § 154(b)(2)(B).[1]

In *Ezra*, the Federal Circuit ruled that a patent could not be invalidated for double patenting when it received a term extension under Hatch-Waxman. The court explained that its decision was a "logical extension of this court's holding in *Merck & Co. v. Hi-Tech Pharmacal Co.*, 482 F.3d 1317 (Fed. Cir. 2007)." *Ezra*, 909 F.3d at 1369. In *Merck*, the Federal Circuit ruled that a patentee could receive a term extension under 35 U.S.C. § 156 even if the patentee also filed a terminal disclaimer. *Ezra* described *Merck*'s reasoning as follows:

> We first recognized that a straightforward reading of § 156 mandates a term extension so long as the other enumerated statutory requirements for a PTE [patent term extension] are met. *Id.* at 1321-22 (citing 35 U.S.C. § 156(a)). **We then noted the contrast between § 156 for PTE with the language of § 154 for patent term adjustments**: § 154 "expressly excludes patents in which a terminal disclaimer was filed from the benefit of a term adjustment for PTO delays," but § 156 contains "no similar provision that excludes

---

[1] Under Hatch-Waxman, term extensions are granted for patents relating to products subject to regulatory delays that cannot be marketed prior to regulatory approval. *Ezra*, 909 F.3d at 1372.

patents in which a terminal disclaimer was filed from the benefits of Hatch-Waxman extensions." *Id.* at 1322. Thus, this court concluded that "***the express prohibition against a term adjustment regarding PTO delays under § 154(b), the absence of any such prohibition regarding Hatch-Waxman extensions***, and the mandate in § 156 that the patent term shall be extended if the requirements enumerated in that section are met, support the conclusion that a patent term extension under § 156 is not foreclosed by a terminal disclaimer." *Id.*

*Ezra*, 909 F.3d at 1373-74 (emphasis added; alterations omitted).

*Ezra* then held that in light of *Merck*, a patent that received a term extension under § 156 should not be invalidated for double patenting by virtue of that term extension. The court reasoned: "[I]f a patent is terminally disclaimed to another patent to overcome an obviousness-type double patenting rejection and then term-extended under § 156 (as in *Merck*), it necessarily will expire after the patent to which it had been subject to an obviousness-type double patenting rejection." *Id.* at 1374. The court made clear that its decision was dictated by *Merck*'s interpretation of § 156: "[T]he bulk of the *Merck* opinion engages in a statutory construction of § 156," and "its holding on the validity of a [Patent Term Extension] for a patent that was terminally disclaimed *in order to overcome an obviousness-type double patenting rejection* is directly relevant to the instant case." *Id.* (emphasis in original).

Thus, *Ezra* supports AWS, not Kove. Under *Ezra*, term extensions under § 156 do not trigger the double patenting doctrine because § 156 lacks language that appears in § 154. This reasoning makes sense only if term extensions under § 154 do trigger the double patenting doctrine—which is exactly what the Federal Circuit stated in *Abbvie*. Kove ignores this point and simply omits from its brief the fact that *Ezra*'s reasoning was premised on the textual distinction between § 154(b) and § 156.

Finally, Kove argues that applying the double patenting doctrine would be unfair because the term extension was "outside the patentees['] control." Kove Br. 14. To the contrary, the

5

patentees could have avoided this problem by filing a terminal disclaimer at any point before the '640 and '170 patents expired, including after AWS explicitly disclosed this defense in both its initial and final invalidity contentions. Because that never occurred, the patent is invalid.[2]

## II. There Is No Reason to Wait for Claim Construction or Factual Development.

Kove insists that the motion should be denied because the Court has not yet engaged in claim construction or fact-finding. But Kove gives no concrete argument that claim construction or fact-finding could possibly affect the outcome. Rather, it simply speculates that claim construction or fact-finding might be useful. That is insufficient to withstand a motion to dismiss.

### A. Claim construction is unnecessary.

There is no rigid requirement that Rule 12 motions must invariably be denied until claim construction has occurred. In the face of AWS's motion, Kove has the burden to show a "plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007); *see Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014) (applying *Twombly*'s plausibility

---

[2] Kove includes two cursory footnotes purporting to give additional legal theories for why the double patenting doctrine does not apply. Neither theory is correct.

First, Kove states that "a two-way analysis should be applied," and that "AWS did not conduct a two-way analysis as required." Kove Br. 14 n.12. This oblique statement is a reference to the Federal Circuit's rule that in "unusual circumstances," a court not only asks whether the later-expiring patent is obvious over the earlier-expiring patent, but also asks whether the earlier-expiring patent is obvious over the later-expiring patent. *See In re Janssen Biotech, Inc.*, 880 F.3d 1315, 1325 (Fed. Cir. 2018). The "two-way test" is "only appropriate" when, among other requirements, "a second-filed application issues prior to a first-filed application." *Id.* That never happened here—the three patents issued in the order that their patent applications were filed. Kove Br. 3.

Second, Kove states that claims 1 and 31 of the '978 patent cannot be invalidated under the double patenting doctrine because Kove asserts a priority date of July 8, 1998, which predates the '640 patent application. Kove Br. 15 n.15. According to Kove, "[i]t makes no sense for claims covering a later-in-time invention to render obvious the claims of an earlier-in-time invention." *Id.* Kove cites no authority for this proposition, and it is directly contrary to Federal Circuit precedent. *See Gilead*, 753 F.3d at 1214 (holding that "a later-issued patent can serve as a double patenting reference for an earlier-issued patent if the later one expires first"). As *Gilead* makes clear, this outcome makes perfect sense: it preserves the "bedrock principle of our patent system that when a patent expires, the public is free to use not only the same invention claimed in the expired patent but also obvious or patentably indistinct modifications of that invention." *Id.*

standard to Rule 12(c) motion in patent case). If Kove cannot show that there is any plausible basis for overcoming double patenting, the complaint should be dismissed. Kove cannot avoid *Twombly*'s plausibility standard merely by asserting that the Court will eventually conduct claim construction. Rather, Kove must show some plausible argument that claim construction would establish a patentable distinction between the '978 patent and the '170 and '640 patents.

Consistent with that analysis, in the analogous context of Rule 12 motions raising the defense of subject-matter ineligibility under 35 U.S.C. § 101, the Federal Circuit has held that a patentee cannot avoid dismissal merely by asserting that claim construction has not yet occurred. Rather, the patentee must give a plausible explanation of how claim construction would make a difference. *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1183-84 (Fed. Cir. 2020) ("ECT asserts in conclusory fashion that the district court should have engaged in claim construction before deciding claim 11's eligibility under § 101. ECT has not identified a single claim term that it believes requires construction before the eligibility of claim 11 can be decided, much less how this construction could affect the analysis. Under such circumstances … we conclude that the district court properly resolved patent eligibility at the pleadings stage of the proceedings."). To meet that burden, the patentee must identify its proposed claim constructions and explain how those constructions would affect the outcome. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) ("[I]t was appropriate for the district court to determine that the [asserted] patents were ineligible under § 101 at the motion to dismiss stage" when the patentee "provided no proposed construction of any terms or proposed expert testimony that would change the § 101 analysis."). If the patentee proposes no constructions, or cannot prevail under its proposed constructions, then immediate dismissal is warranted. *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349

(Fed. Cir. 2014) (rejecting patentee's argument that district court "erred by declaring its claims patent-ineligible under § 101 at the pleading stage without first construing the claims" when claim could not survive "even when construed in a manner most favorable to" the patentee).

Here, Kove proposes no claim constructions and gives no plausible explanation of how claim construction could make a difference. And indeed, claim construction could not make a difference. For the claims of the '978 patent that AWS seeks to invalidate, the '978 patent is a continuation of the '640 patent. AWS Br. 8. In addition, the '170 patent is also a continuation of the '640 patent. *Id.* This means that the identical specification—the specification of the '640 patent—fully supports the claims at issue in all three patents. *Id.* As a result, many of the same limitations appear in the claims of all three patents. Because those claims are supported by a single specification, those limitations carry the same meaning across all three patents. *See, e.g.*, *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning.").

Contrary to Kove's argument, it is unnecessary to construe these claim terms for purposes of resolving AWS's double patenting motion. As Kove acknowledges, under the double patenting doctrine, the Court does not conduct claim construction for the sake of conducting claim construction. Rather, it conducts "construction of the claims in the earlier patent and the claim in the later patent *to identify any differences*" and then determines "whether the *differences in subject matter* between the claims render the claims patentably distinct." Kove Br. 5 (quoting *Amgen Inc. v. F. Hoffman-La Roche Ltd*, 580 F.3d 1340, 1361 (Fed. Cir. 2009) (emphasis added)). If the same claim language appears across the patents, claim construction is unnecessary because it will not assist the Court in identifying any differences between the claims.

For example, Kove suggests that the term "location message," which appears in claim 3 of the '978 patent, might require claim construction. Kove Br. 8. However, this term appears in virtually identical phrases in claim 3 of the '978 patent and claim 6 of the '170 patent. *Compare* Ex. E, claim 3 ("location message if the queried location server contains location information for the desired entity"), *with* Ex. C, claim 6 ("location message if the location server contains location information for the desired entity"). Because these two claims are supported by the same specification, this phrase—no matter how it is construed—will mean the same thing in the two claims. Claim construction thus would not assist the Court in identifying differences between the claims. Likewise, Kove's appendix—which merely lists claim terms appearing in the patents— does not show that claim construction will illuminate whether there are patentable distinctions.

Kove insists that "AWS's reliance on the specification is improper" because double patenting requires a comparison of the claims, not the specifications. Kove Br. 10. But the Federal Circuit has held that in double patenting analysis, the specification "may be used to learn the meaning of terms and in interpreting the coverage of a claim." *In re Basell Poliolefine Italia S.P.A.*, 547 F.3d 1371, 1378 (Fed. Cir. 2008) (quotation marks and alterations omitted). "It may also be used to answer the question whether claims merely define an obvious variation of what is earlier disclosed and claimed." *Id.* The specification "sets forth at least one tangible embodiment within the claim." *Id.* at 1378 (quotation marks omitted). As a result, when the claims are analyzed against the backdrop of the specification, "it is less difficult and more meaningful to judge whether something has been modified in an obvious manner." *Id.* at 1378-79 (quotation marks and alterations omitted). Therefore, contrary to Kove's contention, it is proper for the Court to consider that the claims at issue in the '978 patent are supported by the same specification as the claims of the '640 and '170 patents.

Kove identifies only two claim terms appearing in the claims of the '978 patent that do not appear in the claims of the '640 and '170 patents. Kove does not offer any proposed construction of those claim terms, or even offer any argument that claim construction of those terms could plausibly establish a patentable distinction, as required to defeat AWS's motion.

First, Kove points to the term "application server," which appears in claims 10, 14, and 31 of the '978 patent. Kove Br. 8. But as AWS's motion explained, the '978 specification recites: "Typically, each machine in which some portion of the data in a distributed database may reside is called an application server." AWS Br. 12 (quoting Ex. E, 1:61-63). It further recites: "Upon receipt of an identifier and location from a first client, where the location represents a location of an application server in the network containing data stored by the first client related to an entity represented by the identifier, the location is stored in a location store at the first location server." AWS Br. 12-13 (quoting Ex. E, 2:62-27). Thus, the "application server" is simply the name of the server in the distributed network that stores data. *Id.* at 13. And such servers are recited in the claims of the '640 and '170 patents as well. *Id.* Thus, "application server" does not reflect some non-obvious innovation entitling Kove to a separate, later-expiring patent.

Kove offers no substantive response to AWS's argument. It does not propose an alternative claim construction for "application server," and does not even attempt to show that "application server" could conceivably establish a non-obvious patentable distinction entitling Kove to a new patent.[3] Rather, Kove merely asserts that the Court should wait until claim construction because

---

[3] Indeed, it is impossible that "application server" could establish a patentable distinction under Kove's own theory of the case. According to Kove, claims 10, 14, and 31 of the '978 patent claim priority to either the '640 patent application or an earlier application in the same chain. Those applications do not use the phrase "application server." Thus, if "application server" means something different from the servers in the distributed network that store data, then "application server" would be neither described nor enabled in those applications.

it might hear "tutorials, full briefing on claim meaning, and even expert testimony" during a *Markman* hearing.  Kove Br. 8.  This assertion is not sufficient to withstand a Rule 12(c) motion.

Second, Kove points to the term "cluster topology," which appears in claim 10 of the '978 patent.  Kove Br. 8.  But as AWS's motion explained, the specification of the '640 patent states what a "cluster topology" means:

> Fig. 12 illustrates a cluster topology for client interaction with NDTP servers 120.… The basic idea is that a client asks a server 120a to process an index operation.  If the contacted server 120a does not have all the information, as for example in a redirect, then it passes the request to another server 120b.

AWS Br. 13 (quoting Ex. B, 17:61-18:2).  Identical language appears in the specification of the '170 patent.  *Id.*  And as AWS's motion explained, although the claims of the '640 patent and '170 patent do not use the words "cluster topology," those claims do recite what the specification says a "cluster topology" means.  AWS Br. 13-14.  For example, claim 6 of the '170 patent recites "programming logic" that "is configured to return, in response to a location query related to a desired entity," … "a redirect message if the location server lacks the location information for the desired entity."  Ex. C, claim 6.  This claim limitation plainly encompasses the specification's description of a "cluster topology."  Crucially, Kove cannot argue that "cluster topology" in claim 10 of the '978 patent means something different from "cluster topology" in the '640 patent specification, given Kove's own position that claim 10 of the '978 patent claims priority to the '640 patent.  Thus, "cluster topology," in claim 10 of the '978 patent, is obvious in view of the claims of the '640 and '170 patents, which recite what the specification expressly characterizes as a "cluster topology."  AWS Br. 13-14.

Indeed, this is a classic illustration of *Basell*'s holding that because the specification "sets forth at least one tangible embodiment within the claim, … it is less difficult and more meaningful to judge whether something has been modified in an obvious manner."  547 F.3d at 1378-79

11

(quotation marks and alterations omitted). Here, the '640 and '170 patent specifications—which also support claim 10 of the '978 patent—give a "tangible embodiment," *id.*, of a "cluster topology." And that tangible embodiment appears in the claims of the '640 and '170 patents. Thus, it is plain that claim 10 of the '978 patent "ha[s] been modified in an obvious manner." *Id.*

Again, Kove does not offer any substantive response. It identifies no proposed claim construction for "cluster topology," or any basis for concluding that "cluster topology" might establish a patentable distinction. Instead, it simply states that this issue may "present a potential dispute requiring adjudication by the Court." Kove Br. 8. Such boilerplate statements that claim construction might be helpful are not enough to withstand a Rule 12 motion.

### B. Factual development is unnecessary.

For similar reasons, the Court should reject Kove's plea for additional fact-finding. As with claim construction, a patentee cannot avoid dismissal merely by asserting that fact-finding has not yet occurred. Rather, it must make some plausible argument that fact-finding would make a difference. *See, e.g.*, *Cleveland Clinic*, 859 F.3d at 1360 (court may invalidate patent even before "significant discovery has commenced," when patentee "propose[s] [no] expert testimony that would change the § 101 analysis"); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 834–35 (E.D. Tex. 2014) ("In this case, the parties have not pointed to any factual issues that could affect the Court's analysis of the section 101 issue. The Court therefore regards that issue as appropriate for disposition under Rule 12(c)."). Kove cites case law stating that in obviousness cases, "a fact-finder 'must withhold judgment on an obviousness challenge until it has considered all relevant evidence, including that relating to the objective considerations.'" Kove Br. 10 (quoting *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 689 F.3d 1368, 1381 (Fed. Cir. 2012)). But that case law does not apply to double patenting. *Geneva Pharms., Inc. v.*

*GlaxoSmithKline PLC*, 349 F.3d 1373, 1377 n.1 (Fed. Cir. 2003) ("Obviousness requires inquiry into objective criteria suggesting non-obviousness; nonstatutory double patenting does not.").

Kove makes no plausible argument that fact-finding could affect the double patenting analysis. It merely makes the boilerplate statement that "underlying factual determinations can only be made on a fully developed record based on evidence." Kove Br. 9. But it does not explain how a "fully developed record based on evidence" could possibly affect the double patenting analysis in this case. Indeed, no amount of expert testimony or evidence can possibly establish patentable distinctions where, as here, the claims of the '978 patent are nearly identical on their face to the claims of the '640 and '170 patents. Therefore, there is no reason for delaying the adjudication of AWS's motion to dismiss.

## CONCLUSION

For the reasons set forth above, the Court should enter judgment in AWS's favor on Kove's claims for infringement of claims 1, 3, 6, 10, 14, and 31 of the '978 patent because those claims are invalid under the doctrine of obviousness-type double patenting.

June 12, 2020                                    Respectfully submitted,

                                                 /s/ Terri L. Mascherin

Adam G. Unikowsky                                Terri L. Mascherin
JENNER & BLOCK LLP                               Timothy Barron
1099 New York Ave. NW Suite 900                  Michael T. Werner
Washington, DC 20001                             JENNER & BLOCK LLP
(202) 639-6000                                   353 N. Clark St.
aunikowsky@jenner.com                            Chicago, IL 60654
                                                 (312) 222-9350
                                                 tmascherin@jenner.com
                                                 tbarron@jenner.com
                                                 mwerner@jenner.com

                                                 *Attorneys for Amazon Web Services, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I, Michael Werner, an attorney at the law firm of Jenner & Block LLP, certify that on June 12, 2020, the foregoing Reply Brief In Support of Defendant's Motion for Judgment On The Pleadings was electronically served on counsel of record via the Court's ECF system.

/s/ Michael T. Werner
 Michael T. Werner