**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KOVE IO, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:18-cv-08175 |
| AMAZON WEB SERVICES, INC., ) | |
| ) | Hon. Rebecca R. Pallmeyer |
| Defendant. ) | |
| ) | |
| ) | |

**SECOND MOTION TO COMPEL AMENDMENT OF FINAL INFRINGEMENT**
**CONTENTIONS TO CONFORM WITH LOCAL PATENT RULES**

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
aunikowsky@jenner.com

Terri L. Mascherin
Timothy J. Barron
Michael T. Werner
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
tmascherin@jenner.com
tbarron@jenner.com
mwerner@jenner.com

*Attorneys for Amazon Web Services, Inc.*

Defendant Amazon Web Services, Inc. ("AWS") brings this motion to compel Plaintiff Kove IO, Inc. ("Kove") to amend its Final Infringement Contentions to comply with Rule 2.2(c) of this District's Local Patent Rules. As explained in this motion and in the supporting declaration of Michael Mitzenmacher, Ph.D. (Ex. 1), it is impossible to determine from Kove's Final Infringement Contentions what specific portion of AWS's source code Kove contends satisfies each limitation of the patent claims-in-suit. Without more specific identification of the purportedly infringing computer source code, AWS does not have fair notice of Kove's infringement theories.

This is AWS's second motion to compel Kove to amend its Final Infringement Contentions. In AWS's first motion, AWS argued that Kove should be required to "clearly identify the alleged evidence of infringement." Dkt. 91, at 8. As AWS explained, "Kove's contentions for many claim elements are supposedly 'supported' by thousands of lines of irrelevant source code, often obfuscating whether Kove has cited *any* evidence relevant to the actual limitation being addressed." *Id.* at 9. The Court granted AWS's motion, characterizing the "laundry list" of code citations as "overwhelming." Ex. 2 (3/16/2020 Transcript of Proceedings), at 21–22; Dkt. 116.

Kove's new infringement contentions suffer from the same defect as the original infringement contentions. Rather than providing citations to specific lines of code, Kove has merely rearranged the laundry list of code citations, and Kove continues to cite entire code packages rather than specific lines of code. As a result, it is still impossible for AWS to determine what code allegedly satisfies each claim limitation.

To prevent this dispute from dragging on, while AWS believes none of Kove's contentions meet the requirements of LPR 2.2(c), AWS is seeking narrower relief. AWS has identified three categories of claim limitations for which Kove's code citations are so broad that its infringement theories are incomprehensible: "redirects," "hash functions" or "hash tables," and "predetermined

performance limit." AWS asks the Court to direct Kove to identify the specific lines of code that allegedly meet each of these claim limitations.

## BACKGROUND

AWS's first motion to compel, filed on March 11, 2020, sought to compel Kove "to specifically identify the evidence that, Kove contends, shows that AWS infringes each claim limitation." Dkt. 91, at 1. As that motion explained, LPR 2.2(c) requires Kove to "identif[y] specifically where each element of each asserted claim is found." *Id.* at 8. "Where the accused instrumentality includes computer software based upon source code made available to the patentee, the patentee must provide 'pinpoint citations' to the code identifying the location of each limitation." *Id.* (quoting *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2019 WL 955000, at *5 (N.D. Cal. Feb. 27, 2019)).

AWS's motion explained that "Kove's Final Infringement Contentions do not satisfy this requirement." Dkt. 91, at 9. AWS argued:

> Kove should be required separately to pinpoint the specific source code that Kove contends proves infringement of each claim limitation. Indeed, Kove will plainly have to do that later on in this case. If AWS files a summary judgment motion, or if the case proceeds to trial, Kove will not be able to rely on this enormous and undifferentiated mass of documents and source code; it will have to sharpen its case and pinpoint the allegedly infringing code to the Court or to the jury. The purpose of Final Infringement Contentions is to ensure that Kove pinpoints that code *now*. Kove should not be permitted to bury the allegedly infringing code in hundreds of pages of citations, only to reveal a year from now the lines of source code it will *actually* be accusing of infringement as the case approaches trial. The LPRs are designed specifically to prevent the kind of sandbagging in which Kove is trying to engage.

*Id.* at 10–11.

Following a hearing, this Court granted AWS's motion. Dkt. 97 (granting AWS's motion "as stated in court"). At the hearing, the Court echoed AWS's concern that the volume of code

that Kove cited could not possibly be presented to a jury: "[I]f we are really going to be dealing with 74 dense pages of citations to code, I have to wonder how we are going to present this effectively to a jury. It's overwhelming even to me." Ex. 2 (3/16/2020 Transcript of Proceedings), at 23; *see also id.* at 21–22 (characterizing Kove's code citations as a "laundry list"). The Court directed Kove to identify the "best example" of infringing code for each limitation, rather than citing thousands of lines of code: "You could certainly say, 'This the best example we have right now. As our discovery concludes, we may identify other better examples, but here is right now what you can look at for you to understand why we think you are infringing.'" *Id.* at 23.

AWS has attempted to resolve this matter without seeking the Court's assistance, but its efforts have proven futile. Kove served amended infringement contentions on June 2, 2020. After AWS objected that they did not comply with the Court's order, Kove agreed to amend, and served a second set of amended infringement contentions on July 10, 2020. However, as shown below, these new contentions are not meaningfully different from the initial contentions. Kove continues to cite thousands of lines of source code without any indication of the code that Kove contends satisfies each of the three key limitations discussed below.

## ARGUMENT

AWS seeks revised infringement contentions with respect to three categories of recurring claim limitations as to which Kove's infringement theories are incomprehensible. Kove did not substantively change these contentions in response to the Court's order. Kove should, again, be directed to identify the specific lines of source code that allegedly meet these limitations.

### I. Kove Has Not Meaningfully Clarified Its Infringement Contentions.

The Court directed Kove to serve new infringement contentions that identify the source code that satisfies each claim limitation. Kove has not done so. Kove's changes to its infringement

3

contentions are cosmetic, not substantive.

Kove's original Final Infringement Contentions contained claim charts with brief, narrative explanations of the alleged infringement, followed by citations to an enormous number of source code files, without any explanation of which code purportedly showed infringement of each claim limitation. In its Second Amended Final Infringement Contentions, Kove has not reduced the number of source code citations. Rather, it has offloaded some of those citations into two new documents (one for each accused product), each labelled as "Source Code Appendix." Ex. 9, Ex. 10. Each of these documents contains a series of headers: "Source Code Citation 1," "Source Code Citation 2," and so forth. Underneath each of these headers, Kove lists numerous different source code files, each signaled by "*See also, e.g.*" For example, "Source Code Citation 2" for DynamoDB contains a list of 37 source code files. Ex. 10 at 3–9. There are a total of 32 "Source Code Citations" across the two documents, encompassing 324 citations to source code files (221 unique files). Ex. 1, ¶ 23.

In Kove's original Final Infringement Contentions, the material in the "Source Code Citations" appeared directly in the claim charts. In the newly-served Second Amended Final Infringement Contentions, that material appears in the Source Code Appendices, and the claim charts cite those Appendices. Thus, although Kove's new claim charts contain fewer pages than its previous claim charts, that change is illusory — it is only because Kove has split off some citations into its Appendices. *See* Ex. 1, ¶¶ 20–22.

In addition, Kove has *added* citations. The original Final Infringement Contentions cited 196 unique source code files. Ex. 1, ¶ 23. In the Second Amended Final Infringement Contentions, the Appendices include 324 citations to source code files (221 unique files). *Id.* Of the 196 unique

source code files cited in the original Final Infringement Contentions, *all* appear in the Appendices, and 25 source code files have been added. *Id.*

Kove does not adequately describe these files, much less identify the lines of code within each file that purportedly infringe. Of the 324 files cited in the Appendices, Kove cites all lines of code in 109 (34%) of the file citations, over 80% of the lines in 180 (56%) of the file citations, and over 50% of the lines in 243 (75%) of the file citations. Ex. 1, ¶ 36.

Moreover, of the 324 files cited, there is no source code file-level description provided for 115 (35%) of them, thus imposing the burden on AWS to figure out the relationship between these source code files and Kove's infringement theories. Ex. 1, ¶¶ 35, 37. Even when Kove does provide file descriptions, they are often largely made up of generic descriptions of file contents that Kove has paraphrased, without linking these comments to Kove's allegations that specific patent claim elements are satisfied. Ex. 1, ¶¶ 37–38. These descriptions are virtually identical to the descriptions that appeared in Kove's original contentions. Ex. 1, ¶¶ 30–31.

Making matters worse, within the claim charts, Kove cites each of the 32 Source Code Citations multiple times, often for differing allegations. Ex. 1, ¶ 24. For example, in its allegations regarding DynamoDB, Kove cites "Source Code Citation 2" (a list of 37 files) 25 times, creating a total of 925 (37 * 25) combinations of allegations and cited source code files. Ex. 1, ¶ 25. Source Code Citation 2 is cited for 17 of the 20 claims, for a wide assortment of different claim limitations, such as limitations related to hash functions and redirects. *Id.* ¶ 46.

As well, although each "Source Code Citation" ostensibly discloses different functionality, many of the same files, with the same descriptions, appear in multiple "Source Code Citations," making it impossible to know which functions these files allegedly demonstrate. *Id.* ¶ 31.

5

Kove has not meaningfully narrowed or clarified its infringement contentions. As a result, its infringement theories for several claim limitations continue to be incomprehensible.

## II. Kove Should Be Required To Serve Revised Infringement Contentions On The "Redirect" Limitations for DynamoDB.

The asserted patents[1] are directed to systems and methods involving "location servers" that store "locations" of data in a distributed network. Several asserted claims contain limitations requiring a "redirect" message. Claim 17 of the '640 patent offers a representative example:

> **[1]** In response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, **[2]** transmitting a *redirect message* to the client if the identification string is not associated with a location string at the data location server, **[3]** wherein the *redirect message* contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string.

Ex. 6 at 18–19 (emphasis added). Claims 3, 10, and 14 of the '978 patent, claims 17, 18, and 24 of '640 patent, and claims 6, 8, 12, 15, and 17 of the '170 patent all have "redirect" limitations.

Kove accuses AWS's DynamoDB service of infringing the claims containing the "redirect" limitations. *See, e.g.*, Ex. 6 at 19. However, it is impossible to tell from Kove's infringement contentions what code purportedly satisfies the "redirect" limitations.

Kove's infringement contentions with respect to claim 17 of the '640 patent illustrate the problem. Those contentions divide this limitation into three subparts. The first subpart, **[1]** states: "In response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request." As to **[1]**, Kove provides a one-sentence narrative regarding the alleged infringement: ███████████████████

---

[1] The asserted patents are Nos. 7,233,978 ("'978 patent"), 7,103,640 ("'640 patent"), and 7,814,170 ("'170 patent").

██████████████████████████████████████████████████████

████████████████████████ Ex. 6 at 19.  As support for that assertion, Kove states: "*See, e.g.*," and then lists 10 different source code files, comprising a total of 9,119 lines of code.  Ex. 6 at 19–20; Ex. 1, ¶ 51a.  It does not cite specific lines of code in any of these files, and does not provide descriptions of the relevant functionality in any of these files.  Next, Kove states: "*see also . . .* Source Code Citation 2, 5, 6, 7, 9."  Ex. 6 at 20.  This is a reference to Kove's aforementioned "Source Code Appendix" for DynamoDB.  Ex. 10.  Each "Source Code Citation" identifies numerous source code files.  In total, "Source Code Citation 2, 5, 6, 7, 9" contains citations to 101 source code files, with 51,322 lines of code.  Ex. 1, ¶ 51a.

The second subpart of the redirect limitation in that claim states: **[2]** "Transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server."  Ex. 6 at 19–20.  Kove provides a one-sentence narrative regarding the alleged infringement: ████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████ *Id.*  As support, Kove states: "*See, e.g.*," and then lists 8 different source code files, with 6,848 lines of code, again without any pinpoint citations or explanation of the relevant functionality of each file.  Ex. 6 at 20; Ex. 1, ¶ 51b.  Next, Kove states: "*see also …* Source Code Citation 2, 5, 6, 7, 9."  *Id.*  These five "Source Code Citations" comprise 101 source code files, with 51,322 lines of code.  Ex. 1, ¶ 51b.

The third subpart of the redirect limitation in claim 17 states: **[3]** "Wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains

7

the location string." Ex. 6 at 20. Kove again provides a brief narrative: ███████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* Kove then states: "*see, e.g.*," and lists 10 source code files, with 5,853 lines of code. Ex. 1, ¶ 51c. Once again, these citations are followed by "*see also* … Source Code Citation 2, 5, 9." Ex. 6 at 20. The "Source Code Citation" comprises 67 source code files, with 33,766 lines of code. Ex. 1, ¶ 51c.

Because Kove sometimes cites the same source code file multiple times across the three subparts, AWS has also tallied the number of unique source code files across the three subparts. The total number is 64 source code files, containing 29,900 lines of code. Ex. 1, ¶ 52.

These infringement allegations are actually *less* specific than the infringement allegations in Kove's original Final Infringement Contentions. Figure 3 of Dr. Mitzenmacher's declaration provides a side-by-side comparison of Kove's infringement allegations in the original Final Infringement Contentions, and the Second Amended Final Infringement Contentions. Ex. 1, ¶ 26. As this comparison makes clear, Kove did not made any change to its narrative description, but has instead simply rearranged the narrative paragraphs into a different order. *Id.* In addition, although Kove removed some cited source code files from the claim charts, Kove replaced those citations with "*see, e.g.*" citations to the Source Code Appendix—which caused the number of cited files to increase. Ex. 1, ¶¶ 26–28. In the original Final Infringement Contentions, Kove included 54 citations to 52 unique source code files in connection with this claim limitation. In the Second Amended Final Infringement Contentions, Kove continues to cite all 54 of those source code citations, either in the claim charts or in the Appendix. Ex. 1, ¶¶ 28, 30. Of those 54 source code citations, all 54 were presented with the same explanations in the Second Amended

Infringement Contentions. *Id.* ¶ 30. In addition, Kove now cites an additional 12 source code files, for a total of 64 unique source code files. *Id.*

AWS's concern is not merely that Kove cites large volumes of code. AWS recognizes that DynamoDB is complicated and that large portions of the code may have at least some relevance to Kove's infringement theory. The problem is that Kove's code citations are undifferentiated. Due to Kove's citation to thousands of lines of code, it is impossible to tell which specific lines of code Kove relies upon to show that the "redirect message"—a key element of several asserted claims—ever occurs.

AWS sent a letter to Kove expressing AWS's concerns about the Second Amended Infringement Contentions. Kove responded by letter, attempting to show it had complied with the Court's order. Ex. 11. Kove's letter encapsulates the flaws in Kove's contentions.

Kove begins by highlighting the narrative description of its infringement theory. *Id.* at 1. As is clear from Kove's letter, underneath that narrative description is a list of eight source code files, without pinpoint citations or descriptions. *Id.* at 1–2. This portion of Kove's contentions plainly does not comply with the Court's order.

Kove then highlights the citation "*see also* Ex. G, Source Code Citation 2, 5, 6, 7, 9." *Id.* at 2. It quotes a paragraph from "Source Code Citation 2" which discloses the file ▓▓▓▓▓▓▓▓▓▓ followed by a description with citations to a set of lines of code. *Id.*[2] Kove then states that Citation 2 begins with a narrative description of "redirect messages" that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 2–3.

There are several problems with Kove's explanation:

---

[2] The description and pinpoint citations for ▓▓▓▓▓▓▓▓ are identical to the description and pinpoint citations in the initially-served contentions, illustrating that Kove has made no substantive change in response to the Court's order. Ex. 1, ¶ 30.

9

- There are *37 different source code files* in "Source Code Citation 2" *alone*. Ex. 1 ¶ 25. And Kove also cites "Source Code Citations" 5, 6, 7, and 9 for this limitation—a total of 26 additional unique source code files. *Id.* ¶ 51a.

- Source Code Citation 2 is cited *25 separate times* in Kove's contentions, and for *17 of the 20 claims*. *Id.* ¶¶ 25, 46. It is cited for topics entirely unrelated to "redirect," including hash functions and hash tables. *Id.* ¶ 46.

- The cited code in ▇▇▇▇▇▇▇▇▇—the one file that Kove discusses in its letter — has *nothing to do* with "redirect." Ex. 1 ¶¶ 40–41. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 1, ¶ 44.

- Nor do Kove's descriptions of ▇▇▇▇▇▇▇▇ reference any of Kove's "redirect" theories, as Dr. Mitzenmacher explains. Ex. 1 ¶¶ 40–43. It is thus impossible to discern where Kove thinks this file supports its "redirect" theories.

- The same is true for all 37 source code files in Source Code Citation 2. Thirty-three have generic descriptions having nothing to do with Kove's technical allegations; the other 4 do not have *any* descriptions. Ex. 1, ¶ 25.

If Kove merely relied on the pinpoint citations in ▇▇▇▇▇▇▇▇ as the basis for its infringement claim, then AWS could file a summary judgment motion showing that ▇▇▇▇▇▇▇▇ does not disclose a "redirect." But if AWS does that, AWS faces the risk that Kove will reveal that it believes the "redirect" functionality is actually somewhere else amidst the 67 unique source code files Kove cites for this claim limitation. Ex. 1 ¶ 41.

To the extent Kove's theory is that these source code files somehow work in tandem to yield a "redirect," Kove's contentions do not explain the basis for that theory. Kove merely cites

dozens of source code files, some with random pinpoint citations to irrelevant code and some with no pinpoint citations, none of which shows anything resembling a "redirect." Ex. 1, ¶¶ 33–57.

AWS submits that, by citing thousands of lines of undifferentiated source code, Kove is seeking to obfuscate the fact that no "redirect" message ever occurs. AWS has analyzed Kove's infringement contentions extensively, and has located no code showing a "redirect message" as required by the claims. Dr. Mitzenmacher's declaration catalogues these efforts. Ex. 1, ¶¶ 53–55. As Dr. Mitzenmacher explains, he not only analyzed Kove's own descriptions of the source code in the infringement contentions, but also analyzed all of the underlying source code files on which Kove relies, and was unable to find any "redirect" functionality. Ex. 1, ¶¶ 54–57.

AWS should not be required to ferret through thousands of lines of code to try to figure out Kove's infringement theory regarding the redirect limitations. If Kove thinks that DynamoDB has such functionality, then it should identify the specific lines of code evidencing it.

### III. Kove Should Be Required To Serve Revised Infringement Contentions On The "Hash" Limitations for DynamoDB.

Several asserted claims contain limitations related to "hash functions" or "hash tables." For example, claim 1 of the '170 patent includes the following claim limitation:

> the portion of the data location information included in a corresponding one of the data location servers is based on a *hash function* used to organize the data location information across the plurality of data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the plurality of data location servers based on the *hash function* applied to the identifier string.

Ex. 5 at 23–24 (emphasis added). Claim 2 of the '170 patent depends from claim 1 and additionally requires that "the location information comprises any portion of a *hash table* generated with the *hash function*." Ex. 5 at 26 (emphasis added). Claim 12 of the '170 patent, claim 24 of the '640 patent, and claim 6 of the '978 patent include similar "hash table" limitations. Ex. 1, ¶ 58.

11

Kove accuses AWS's DynamoDB service of infringing these "hash function" or "hash table" claims. But it is impossible to tell from Kove's infringement contentions what code purportedly carries out these infringing elements. As with the "redirect" limitation, Kove gives short narrative descriptions, followed by citations to enormous amounts of undifferentiated code.

Kove divides the above-quoted limitation from claim 1 of the '170 patent into two parts. For the first part ("the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers"), Kove cites seven source code files with 5,346 lines of code in the claim chart, followed by "Source Code Citation 3, 4, 5," which collectively cite 17 files with 10,425 lines of code. Ex. 5 at 23; Ex. 10 at 10, 11–12, 13; Ex. 1, ¶ 63.

For the second part ("each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the plurality of data location servers based on the hash function applied to the identifier string"), Kove cites ten source code files with 8,797 lines of code in the claim chart, followed by "Source Code Citation 2, 3, 4, 5, 9," which collectively cite 78 files with 38,736 lines of code. Ex. 5 at 24–25; Ex. 10 at 3–9, 10, 11–12, 13, 24–27; Ex. 1, ¶ 64.

Finally, with respect to the "hash table" limitation in claim 2, Kove cites seven source code files with 5,349 lines of code, followed by "Source Code Citation 2, 3, 4, 5," which collectively cite 54 source code files with 27,593 lines of code. Ex. 5 at 26–27; Ex. 10 at 3, 10, 11, 13; Ex. 1, ¶ 65. In total, Kove points to 62 unique source code files and 29,201 lines of code across these three claim elements. Ex. 1, ¶ 66.

As with the "redirect" limitation, AWS and its expert have made extensive efforts to attempt to discern Kove's infringement theory regarding these hash functions and hash tables, and

have been unable to identify any code showing the "hash function" or "hash table" functionality that, according to Kove, exists. Ex. 1, ¶ 67. Again, Dr. Mitzenmacher explains that he not only reviewed Kove's descriptions in its infringement contentions, but also reviewed the underlying source code, and was unable to determine where the alleged functionality occurs in the system. Ex. 1, ¶¶ 68–71.

In view of the enormous mass of code that Kove cites, AWS cannot identify which lines of code Kove thinks satisfy the hashing limitations. The Court should direct Kove to identify the specific lines of code that purportedly satisfy the "hash function" and "hash table" limitations.

### IV. Kove Should Be Required To Serve Revised Infringement Contentions On The "Predetermined Performance Limit" Limitations for S3.

Claim 17 of the '978 patent includes the following limitation: "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a *predetermined performance limit*." Ex. 7 at 29–30 (emphasis added). Kove's infringement contentions relating to AWS's S3 service assert that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 7 at 30. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Kove provides a list of nine citations to source code files, containing 1,671 lines of code. *Id.*; Ex. 1, ¶ 77. Kove provides no pinpoint citations or descriptions of these files. In addition, Kove cites three Source Code Citations from the Appendix. Ex. 7 at 30–31; Ex. 9 at 9, 16–17, 18. Together, these Source Code Citations consist of 20 source code files containing 3,919 lines of code. Ex. 1, ¶ 77. Again, Kove offers no pinpoint citations. Indeed, for 11 of those 20 files (1,671 lines of code), Kove does not provide any description for the file at all. *Id.*

As Dr. Mitzenmacher explains, these contentions are deficient in two respects. First, Kove ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ followed by a laundry list of source code files, but does not explain ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ corresponds to which file. Ex. 1, ¶ 76.

13

Second, ▮▮▮▮▮ listed in the claim chart to the source code files is impossible because the cited source code files do not contain the functionality that Kove attributes to them. Ex. 1, ¶ 78. AWS is therefore unable to determine which of the source code files Kove is relying upon to show that ▮▮▮▮▮ Ex. 1, ¶ 78. Again, this conclusion is based on Dr. Mitzenmacher's review of not only the infringement contentions, but also the underlying source code. Ex. 1, ¶¶ 79–82.

Kove's infringement contentions for S3 include a similar ▮▮▮▮▮ with a similar laundry list of source code citations. Ex. 7 at 31–32. ▮▮▮ Kove includes 34 citations to source code and 8,401 lines of code via four Source Code Citations, with no descriptions provided for 29 of the citations. Ex. 1, ¶ 83.[3]

Kove should be required to serve infringement contentions pinpointing the source code that corresponds to ▮▮▮▮▮

## CONCLUSION

For the reasons set forth above, the Court should direct Kove to amend its Final Infringement Contentions to identify the following information:

- The specific lines of code showing that DynamoDB satisfies each of the "redirect" limitations in claims 3, 10, and 14 of the '978 patent, claims 17, 18, and 24 of '640 patent, and claims 6, 8, 12, 15, and 17 of the '170 patent.

---

[3] Kove also accuses DynamoDB of infringing this claim limitation. As support, Kove includes 55 citations to source code and 20,406 lines of code via four Source Code Citations, with no descriptions provided for 18 of the citations. Ex. 1, ¶ 83.

- The specific lines of code showing that DynamoDB satisfies each of the "hash" limitations in the three patents-in-suit in claims 1, 2, and 12 of the '170 patent, claim 24 of the '640 patent, and claim 6 of the '978 patent.

- The specific lines of code showing that S3 engages in the ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ in claim 17 of the '978 patent.

Because of the highly technical nature of the issues raised in this Motion, AWS requests that the Court conduct a hearing on this motion via teleconference or video conference.

July 27, 2020

Respectfully submitted,

*/s/ Terri L. Mascherin*

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
aunikowsky@jenner.com

Terri L. Mascherin
Timothy Barron
Michael T. Werner
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
tmascherin@jenner.com
tbarron@jenner.com
mwerner@jenner.com

*Attorneys for Amazon Web Services, Inc.*

**CERTIFICATE OF SERVICE**

I, Timothy Barron, an attorney at the law firm of Jenner & Block LLP, certify that on July 27, 2020, the foregoing Second Motion To Compel Amendment Of Final Infringement Contentions To Conform With Local Patent Rules was electronically served on counsel of record via the Court's ECF system.

                                                             */s/ Timothy J. Barron*
                                                              Timothy J. Barron