# EXHIBIT 2

```
 1                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3
     KOVE IO, INC.,                )
 4                                 )
                   Plaintiff,      )    Docket No. 18 C 8175
 5                                 )
              vs.                  )
 6                                 )
     AMAZON WEB SERVICES, INC.,    )    Chicago, Illinois
 7                                 )    March 16, 2020
                   Defendant.      )    9:01 a.m.
 8

 9             TRANSCRIPT OF PROCEEDINGS - Motions
         BEFORE THE HONORABLE CHIEF JUDGE REBECCA R. PALLMEYER
10
     APPEARANCES:
11
     For the Plaintiff:       THOMPSON COBURN LLC
12                            BY:  MR. RENATO T. MARIOTTI
                              (Appearing telephonically)
13                            55 East Monroe, 37th Floor
                              Chicago, Illinois  60603
14
                              REICHMAN JORGENSON LLP
15                            BY:  MR. JAIME F. CARDENAS-NAVIA
                                   MS. KHUE HOANG
16                                 MR. RAHUL SARKAR
                              (All counsel appearing telephonically)
17                            750 3rd Avenue, Suite 2400
                              New York, New York  10017
18

19   For the Defendant:       JENNER & BLOCK LLP
                              BY:  MS. TERRI L. MASCHERIN
20                                 MR. MICHAEL G. BABBITT
                              (All counsel appearing telephonically)
21                            353 North Clark Street
                              Chicago, Illinois  60654
22
     Court Reporter:          FRANCES WARD, CSR, RPR, RMR, FCRR
23                            Official Court Reporter
                              219 S. Dearborn Street, Suite 2524A
24                            Chicago, Illinois  60604
                              (312) 435-5561
25                            frances_ward@ilnd.uscourts.gov
```

1          THE CLERK:  18 C 8175, Kove IO, Inc. Amazon Web
2    Services.
3          THE COURT:  Good morning.
4          MR. MARIOTTI:  Good morning, Judge.
5          Renato Mariotti on behalf of the plaintiff, Kove
6    IO.  And I'm joined by Khue Hoang, Jaime Cardenas-Navia, and
7    Rahul Sarkar.
8          And Ms. Hoang will be handling the argument for our
9    side.
10         THE COURT:  Great.  Good morning.
11         MS. HOANG:  Good morning.
12         MS. MASCHERIN:  Good morning, your Honor.
13         This is Terri Mascherin.  We represent Amazon Web
14   Services in the Kove IO case.  And I believe that my
15   colleague Michael Babbitt is also on the conference line.
16         Thank you for hearing us by telephone this morning,
17   your Honor.
18         THE COURT:  The Court is really concerned and
19   sensitive to the issues that we have got.  I think that we
20   are going to be doing a lot more by telephone, if at all, for
21   the next few weeks.
22         I'm also conscious of the fact that people -- in
23   light of the governor's announcement, people are going to
24   have difficulty with childcare arrangements and the like.  So
25   we really want to do everything we can to be reasonable about

1    our deadlines here and recognize that the courts need to

2    continue, but they don't -- not everything has to be done

3    immediately.  So that's what we have got in mind.

4                I have seen the motions, and I know we have got a

5    pending motion on invalidity.  I want to tell you that I have

6    got an opinion draft on that.  I expect to get that out this

7    week.

8                But in the meantime, we have got a couple of other

9    motions that are pending, including a motion to compel

10   amendment to the final infringement contentions and a

11   response to that motion.

12               Are there other issues we need to address?

13               MS. MASCHERIN:  Your Honor, both Amazon, on whose

14   behalf we filed the motion to compel, and Kove have also

15   filed motions for leave to file portions of their -- of our

16   respective motions and exhibits under seal.  I think Kove's

17   motion is noticed up for later this week.  But we have no

18   objection to Kove's motion to seal, and perhaps the Court can

19   just address those motions to seal today to avoid a further

20   hearing.

21               THE COURT:  Of course.  Of course.  We will grant

22   both motions for leave to file under seal.

23               MS. MASCHERIN:  Thank you.

24               MS. HOANG:  Thank you, your Honor.

25               MS. MASCHERIN:  And then the only -- so that would

1    leave only Amazon's motion to compel amendment to the final

2    infringement contentions.

3         With respect to those, your Honor, the parties -- I

4    believe the parties have reached agreement on a pass forward

5    whereby Kove will amend its final contentions as to the first

6    two issues that were raised in our motion, leaving a dispute

7    only with regard to the third issue, which is the issue that

8    is discussed beginning on -- it's heading III in our motion,

9    which begins on Page 8 of the motion.

10        THE COURT:  All right.  Let me scroll to that right

11   now.  Hold on.

12        (Brief pause.)

13        THE COURT:  Okay.  What I understand the issue to

14   be is whether the materials that Kove produced in Exhibit L

15   to the motion, these narrative mappings, satisfy the

16   requirement that Kove identify the allegedly infringing code

17   or features of the Amazon process.

18        Mr. Mariotti, or someone on the Kove side -- it was

19   Ms. Hoang that's going to be responding to this?

20        MR. MARIOTTI:  Yes, Judge.

21        MS. HOANG:  Yes, your Honor.

22        THE COURT:  Do you want to respond to that issue?

23        MS. HOANG:  Absolutely, your Honor.

24        So we believe that really the issue here seems to

25   be Amazon's concern or complaint that the charts are too

1    long, too lengthy.

2    I want to address, first of all, the fact that we

3    looked at this every which way.  I think, as indicated by the

4    first two issues that we were able to resolve over the

5    weekend, despite our disagreement with their assertion that

6    we were somehow noncompliant, we found a solution and a path

7    forward, as counsel noted.

8    We tried the same thing here.  And the fact of the

9    matter is, we are fully in compliance with the rules.  I

10   think we are actually over and above the line in terms of

11   what we needed to do to present our case, to make it

12   intelligible, to make it complete.  And the rules do require

13   that these contentions provide notice to the defendant as to

14   what our infringement theories are, and we have done that.

15   I don't know if the Court has in front of it an

16   exhibit containing -- let's see.  I believe it's Exhibit A.

17   I am having a little bit of a problem here trying to figure

18   out because there are multiple layers of exhibits here.

19   Sorry.  It's sealed Exhibit C --

20            THE COURT:  To --

21            MS. HOANG:  -- to Amazon's motion.

22            THE COURT:  To Amazon's motion?

23            MS. HOANG:  Yes.

24            THE COURT:  I will take a look at that.

25            MS. HOANG:  And sealed Exhibit C to Amazon's motion

1   is actually confusingly Exhibit A that Kove put in in

2   response to LPR 3.1.  I think it would be helpful to have

3   that.

4               THE COURT:  I do.  I have that.

5               MS. HOANG:  Okay.  Terrific.

6               So if your Honor goes, for example -- and we admit

7   that it's a lengthy chart, but this particular chart, for

8   example, is directed toward a product and its multiple claims

9   in it.

10              And if your Honor just simply scrolls through, I

11  think it's worth pointing out, in the first instance, that

12  part of the volume is just simply due do -- screenshots take

13  up a lot of room.  There is obviously a lot of margins and

14  things in here as well.

15              We have done what I believe is a careful job of

16  making sure that everything is intelligible and legible.  We

17  didn't try to shrink the font size down or anything like

18  that.  We spaced it accordingly.  And so that, of course,

19  necessarily contributes to the length.

20              But if you look at it down at a more granular

21  level -- I would direct the Court to Page 19 of that chart --

22              THE COURT:  Okay.  I'm there.

23              MS. HOANG:  -- as an example.

24              Do you see where it says "Claim 1a" and then there

25  is the claim language to the left, and then under the

1    "Accused Instrumentalities" side it starts with a narrative

2    called "All Accused Instrumentalities"?

3              THE COURT:  Yes.  Got that.

4              MS. HOANG:  Right.  So we do this for each claim

5    and each element and in each claim against each product.  So

6    this is just purely representative.

7              And this is what we have put in -- first of all,

8    it's just simply a natural language narrative that guides the

9    reader through a correlation between the claim language on

10   the left and what we set forward as our evidence for

11   infringement.

12             And if the Court would look, it says -- for

13   example, the first -- the second full sentence, "Each Accused

14   Instrumentality is a system for managing data stored in a

15   distributed network."

16             And then you will see a parenthetical right after

17   that.  And that parenthetical -- which the same format is

18   rippled throughout.  That parenthetical leads the reader to

19   exactly what in the accused product, which we would say

20   comprises the distributed network.

21             And then you move down.  Again, naturally, it's

22   complicated.  It's effectively a different language.  But we

23   have gone through and we have made this cross-correlation in

24   narrative form precisely because it's complicated.

25             And then the rest of that particular row, which

1    spans several pages, identifies what's inside the

2    parentheticals in detail, correlating them to specific

3    documents in the record, correlating them to specific

4    testimony in the record.

5         So if your Honor would, for example, scroll down to

6    Page 24 of that same exhibit.

7         THE COURT:  I'm there.

8         MS. HOANG:  You will see that at the top of Page 24

9    there are Bates number citations to specific documents.

10        Right underneath that there is a citation to the

11   Markle transcript, which is an Amazon engineer, who we were

12   able to depose.  And we cite specific page and line numbers

13   to relevant testimony.

14        And then directly below that begins the source code

15   provisions, but it's actually broken down again by section

16   and by narrative.

17        So the first sentence in the source code provision

18   says, "The Keymap Functional Coordinator" -- known as a KFC

19   -- "is a location server that stores Blindex by userKey

20   entries."

21        And then it cites to specific portions in Amazon's

22   code that correlates to that.  And you will see also for each

23   code citation, there is an italicized sentence or groups of

24   sentences.  That's our description of why that's relevant.

25   That's in accordance with LPR 2.2(c).  It gives you the

1    description.  And it's just a handful of code citations
2    related to that.

3            So if your Honor will scroll to the next page, on
4    Page 25.

5            THE COURT:  Right.

6            MS. HOANG:  At the bottom there you will see that
7    there begins a new section on, "The S3 W3SServer implements a
8    website, Java servlet," et cetera.  And then that kicks off
9    the sections of code relevant to that portion and so on.

10           And you will see that again on Page 27 there is a
11   grouping of code for the, "WSS3Server uses Membrane servers."

12           Again, on Page 28 there is another heading that
13   precedes a group of code citations.

14           So this is really exemplary of the level of detail
15   and care that we took to identify with specificity in
16   accordance with the requirement of the local rules to set
17   forth our evidence.

18           And as far as we can tell, I think Amazon is just
19   unhappy perhaps with the length or the volume, but this is
20   all necessary evidence in order for us to, A, meet the
21   requirements of the rules, B, to be able to meet our burden
22   of proof eventually at trial.  But as your Honor well knows,
23   we are not even close to trial yet.

24           And this may, candidly, be cut down, as a matter of
25   necessity, in terms of presenting, once we have had the

1    benefit of expert reports and everything else.  But for the

2    time being, this is as detailed as the rules require, as

3    concise as we can make it without prejudicing ourselves down

4    the road in terms of being able to carry our burden to

5    prove-up infringement.

6             So we remain a little confused as to what it is

7    that Amazon is disgruntled with with respect to these charts.

8    They are -- again, we have put a lot of work into them, your

9    Honor.  We have looked at them very carefully to see if there

10   was something amiss about them; and, candidly, we cannot

11   figure out what that is.

12            THE COURT:  All right.  Anything further from

13   Amazon?

14            MS. MASCHERIN:  Yes, your Honor.

15            And I apologize.  I worked -- when I was preparing

16   my notes for this argument, I worked with a different claim

17   chart and segment, but I think the same issues that I will

18   discuss are present in the example that Ms. Hoang just gave.

19            Let me make clear, first of all, that our complaint

20   is not about simply the length of the claim charts, which are

21   quite voluminous.  Nor is our complaint about the number of

22   citations in the claim chart, which are also voluminous.

23            Our complaint -- our concern is that we do not

24   believe that the charts provide sufficient notice to allow us

25   to be able to map which of the multitude of citations in each

1  cell of each chart Kove contends identifies the location of a

2  particular limitation of the claim.

3  And the local rule -- local Rule 3.1, which then

4  refers us to Rule 2.2(c), requires that the final

5  infringement contentions identify specifically where each

6  element of each asserted claim is found within each Accused

7  Instrumentality.

8  And we have cited in our papers several cases

9  standing for the proposition that when the Accused

10  Instrumentality is computer software, the requirement to

11  identify specifically where each element or limitation is

12  found -- of each asserted claim is found requires the

13  identification of citations to Kove that map to those

14  particular claim limitations.

15  So the claim that I worked with -- and, again, I

16  apologize that I am taking you to a different part of the

17  chart, but I think the issues I will raise are exemplary

18  throughout all of the claim charts -- is found in Exhibit D

19  to Amazon's motion.

20  THE COURT:  Okay.  Let me pull that up.

21  MS. MASCHERIN:  And when you get Exhibit D, I'm on

22  Page 26 of that claim chart.

23  THE COURT:  Wait.  D as in "David" or B as in

24  "boy"?

25  MS. MASCHERIN:  D as in "David."

1    THE COURT:  Oh, okay.

2        (Brief pause.)

3    THE COURT:  Okay.  I'm on Exhibit D.  And which

4  page?

5    MS. MASCHERIN:  Page 26.

6    THE COURT:  Okay.  Got it.

7    MS. MASCHERIN:  Okay.  This is part of Kove's chart

8  with respect to infringement of the '978 patent relating to

9  the Amazon F3 service, which is a -- Amazon F3 is a service

10  that's used to store data in a distributed network.  And I'm

11  focusing on Claim Limitation 1b.

12    THE COURT:  All right.

13    MS. MASCHERIN:  And as you see, the language of

14  Claim 1b has essentially three elements to it on the left.

15    The first element is "a second location server."

16  The second element is "comprising a second set of location

17  information."

18    THE COURT:  Right.

19    MS. MASCHERIN:  And the third element is "at least

20  a portion of the second set of location information differs

21  from the first set of location information."

22    THE COURT:  Yes.

23    MS. MASCHERIN:  So the concern that we have, your

24  Honor, is that when we look, then, at the seven pages of

25  citations that follow in this particular cell of the claim --

1    of this particular claim chart, we cannot map the citations

2    that Kove has given to those three elements of the language

3    of the claim.

4           And the structure of -- you will see the structure

5    of the contention for this -- for Claim 1b starts out

6    identically to the claim that Ms. Hoang just showed you.

7    The, "All Accused Instrumentalities meet this claim

8    limitation.  Each Accused Instrumentality ..." and that

9    language -- I haven't dissected it, but I think it pretty

10   much flows through pretty much every single claim and claim

11   limit and subpart in these claim charts.  So there is sort of

12   this boilerplate that Kove includes at the beginning.

13          About halfway through that cell on Page 26, though,

14   they do get to -- and this is, maybe, seven or eight lines

15   from the bottom -- a reference to "a first location server."

16   "Each Accused Instrumentality comprises a first location

17   server."

18              THE COURT:  Right.

19              MS. MASCHERIN:  And then the second line from the

20   bottom of that page we get to the "second location server."

21              THE COURT:  Right.

22              MS. MASCHERIN:  And at the top of Page 27 we get

23   to, "... wherein at least a portion of the second set of

24   location information differs from the first set of location

25   information."

1       None of that language tracks to any of the
2  narrative statements that follow as you go through the
3  citations.

4       So Kove -- I have no doubt that Kove understands
5  how the citations map to those three simple points in the
6  claim language: "second location server," "second set of
7  location information," and, "the second set of location
8  information must differ from the first set."  Three simple
9  points of language.  The citations -- the seven pages of
10 citations that follow don't map to that claim language.
11 That's the problem that we are having.

12      We are left to go -- really to having to look at
13 each of these citations to try to discern which part of that
14 claim language Kove contends each of these citations applies
15 to.

16      And this is -- one of the cases that Kove cites,
17 actually, in its opposition is really pretty strikingly
18 similar to this situation, your Honor.  It's the *Droplets v.*
19 *Amazon* case from the Northern District of California.  We
20 know, of course, that our local patent rules and the Northern
21 District rules are very similar.  And this court commonly
22 looks to cases from that district, interpreting their rules,
23 when interpreting the Northern District of Illinois' rules.

24      In the *Droplets* case -- a similar situation -- the
25 accused product was software.  As in this case, the

1   contentions each contained a long series of screenshots and

2   citations to code without any clear indication in the charts

3   identifying which screenshots and which code citations

4   plaintiff contended related to which particular language in

5   the claims.

6           And the court noted that, "In instances where

7   Droplets" -- and this is a quote from the decision.  "In

8   instances where Droplets includes source code or tools, the

9   source code or tools lack meaning unless somehow linked with

10  the language of the claim limitations."

11          The court went on to grant Yahoo!'s motion to

12  compel supplementation of the contentions in that case to

13  require Droplets, the plaintiffs, to indicate in the

14  contentions which particular terms -- you know, term or

15  terms -- used in the claim each of the citations mapped to.

16          And the court went on to say that, in its

17  opposition, Droplets had given some narrative instruction

18  about one particular part of the claim chart and which of its

19  citations related to the specific terms used in the claim.

20          The court said, "In the opposition, Droplets

21  explains which language from the claim limitations

22  corresponds to the selected code and screenshots.  This, in

23  turn, allows the reader to understand 'where each limitation

24  of each asserted claim is found within each Accused

25  Instrumentality,'" which, of course, is the language that our

1   local rule uses as well.

2          The court said then, "Without this explanation,

3   however, or labels indicating the same, the infringement

4   contentions are insufficient."

5          The court held that in that case, "some association

6   between the evidence and the language used in the claim

7   limitations is necessary to understand where each claim

8   limitation is found within the accused product."

9          So what we are seeking here, your Honor, is -- we

10  are not asking the Court to order Kove to limit its citations

11  to a certain number or to reduce the size of the contentions.

12  If Kove believes that all of these citations evidence the

13  location of a particular claim limitation within Amazon's

14  code, then that's fine.  We don't have any problem with Kove

15  including all of these citations.

16         But Kove should be required to tell us which

17  language in the claim terms each of these citations relates

18  to so that we can respond to it when we do our final

19  noninfringement contentions.

20         And when I think about this, the struggle that we

21  are having here, your Honor, the analogy that comes to mind

22  for me is, imagine that a party wrote a 50-page brief and it

23  has several argument sections.  And instead of including

24  citations to the relevant authorities or evidence at the end

25  of each sentence of the brief so that the court and the

1    opposing party could tell what the writer was relying upon

2    for each particular statement in the brief, the brief simply

3    had a bibliography at the end that listed in some order all

4    of the authorities or evidence that the party contended

5    supported the entire brief or even, say, just a section of

6    the brief and left it up to the Court and the parties to have

7    to read each of those authorities to try to figure out -- and

8    then try to figure out which part of the brief those

9    authorities mapped to.

10           That's the difficulty that we are having here.  And

11   we are going through something like 6 or 700 pages of these

12   contentions.

13           So it really -- we appreciate that there are a lot

14   of citations.  That's fine.  We just need to know which

15   language in the claims Kove believes these citations map to.

16           And when we met and conferred about this with

17   Ms. Hoang on Friday, I said, look, I could see doing this a

18   number of different ways.

19           One way that would satisfy our concern, for

20   example, would be to number each of the citations in this

21   part of the claim chart for Claim 1b; and then when Kove

22   refers to the "first location server," just include a

23   parenthetical that has the numbers of the citations that

24   relate to that.  There are other ways it could be done as

25   well, but that seems to be one relatively easy way to do

1    this.

2         But that's the concern that we are having, your

3    Honor, and that's why we have moved to compel

4    supplementation.

5         MS. HOANG:  May I respond, your Honor?

6         THE COURT:  Sure.

7         MS. HOANG:  First of all, I guess it would be

8    useful to spell out the fact that Ms. Mascherin's analogy is

9    not applicable here.

10        We don't have just a giant bibliography at the end

11   that she characterized and leaving the reader to his or her

12   own fortune to try to page through them.  I think that's

13   amply clear from the example that I have already walked

14   through and that, actually, Ms. Mascherin also walked

15   through.

16        You can see that there is a correlation all the way

17   through, not simply in the narrative, but also below.  We

18   mention each section.  It's specifically headed to tell you

19   what the citations below refer to.

20        THE COURT:  Well, let me interrupt for just a

21   second and ask a question about that, because the point

22   Ms. Mascherin was making, at least in part, is that the --

23   for example, Claim b -- Claim 1b includes three prongs:

24   "second location server," "comprising a second set of

25   location information," and three, "a portion of the second

1  set differs from the first set of location information."

2         And my understanding, as best I have it, of

3  Ms. Mascherin's argument is that the laundry list, then, of

4  citations that Kove has provided -- the "see also" and all

5  these identified sources -- don't link to each of those three

6  aspects of the claim.

7         Is there a way that that can happen?  Perhaps you

8  could color code which of these citations relate to which of

9  the three prongs.  And if that's not possible, and maybe

10  there is an overlap, you could make that clear as well.

11         MS. HOANG:  There is both.

12         So in the first instance, I guess, I do need to

13  point out that, as a practical matter, 2.2(c) doesn't require

14  subelement mapping.

15         THE COURT:  That's ordinarily correct, but at the

16  same time, we don't normally see this many citations in

17  connection with any particular claim.

18         MS. HOANG:  Okay.  So assuming that -- we didn't

19  actually stop there.  We did make the mappings.

20         And again, so this notion of the simple language in

21  Claim 1b having some kind of simple correlation to the

22  evidence is really -- it's a red herring.

23         The language of the claims are written as claim

24  language in a patent.  It really has nothing to do with how a

25  designer would design an extremely complicated source code

1    system.

2         So there is a fallacy there in thinking that you

3    can simply say, okay, "second location," here is exactly what

4    it is in a neat, tidy form.  If that was possible, that's how

5    we would have laid it out.

6         But the fact of the matter is, you have a system

7    here where, the way S3 -- S3 is the accused product.  It

8    stands for "simple cloud storage service."

9         The way S3 works, there are aspects of that

10   infrastructure that calls upon other locations in that

11   infrastructure, and they all network together.  They all work

12   together, for example, to comprise the way that the second

13   set of location information differs from the first set of

14   location information.

15        And the narrative spells that out.  It does talk

16   about, "A first location server containing a first set of

17   location information corresponding to at least one entity."

18   And then we spell out the "set of userkey-inode information

19   relationships corresponding to objects are stored on a KFC or

20   a BM."  That's Amazon's language.

21        If you scroll down, then, to the portion discussing

22   the KFC, it tells you exactly where you need to go to find

23   that element in the S3's universe, if you will.

24        When you are talking about being able to

25   differentiate using identifier keys, we say Amazon's language

1  for an identifier is a userkey.

2  And then when you scroll down and you look at the

3  section referencing userkeys, you will see exactly what needs

4  to be basically utilized in order for you to invoke that

5  particular claim limitation.

6  So the mapping is here.  Again, we are not

7  contending that this is something that any person off the

8  street could pick up and read.  It is complex, but it's

9  necessarily complex.  And we have done, quite frankly,

10  everything we can to map those together in a reasonable way.

11  I think what Ms. Mascherin is asking for is for us

12  to go back and reorganize this in a way that effectively -- I

13  don't know -- maybe spoon-feeds the information in a manner

14  that -- quite frankly, your Honor, as I mentioned, we thought

15  about this and thought about this.  The correlation that she

16  is asking for, even if it were appropriate, is not going to

17  materially change how this is organized.

18  Even if we were to number out the source code

19  portions 1 through 10, for example, and say where each of

20  these is implicated, it would be 1 through 10.

21  I'm really flummoxed as to how to make this more

22  digestible than what it is.

23  THE COURT:  I am really struggling with this

24  because I'm no software expert myself, but it really does

25  look completely overwhelming to me.

1    I wonder whether there is some way that you could,

2    for example, provide your laundry list but then maybe

3    highlight the best example of a place in the software where

4    all of these things are exhibits.

5    It really does seem overwhelming to me.  I can't

6    imagine how some even 30(b)(6) witness is going to be able to

7    comprehend all of what is in these charts.

8    MS. HOANG:  Well, when you hear it in the

9    aggregate, I totally understand how overwhelming it seems,

10   your Honor.  But, again, each needs to be referenced in

11   bite-sized form.  It's not 700 pages.  It's not even 160

12   pages.  It's basically, for that element -- for that

13   subelement in that element there is a handful of citations

14   that need to be referenced, and that's what we have done

15   here.

16   And in terms of the Court's suggestion, which I

17   appreciate -- you know, highlighting the best one -- we are

18   not in a position to highlight the best one.  We don't want

19   to be held to that as being the best one.

20   It's our evidence.  It is evidence of our theories.

21   All of this evidence is necessary for us to rely on our

22   theories.  Ms. Mascherin didn't ask us to cut anything back

23   or identify the best one.

24   That really would create a situation where we would

25   be further down the road saying, oh, well, you guys

1    identified this as your best one, and there is some

2    preclusionary aspect to having identified it as your best

3    one.  You can't step off of that position without then moving

4    from these and showing good cause.

5            THE COURT:  Well, you certainly could.  You

6    certainly could.  You could certainly say, "This is the best

7    example we have right now.  As our discovery concludes, we

8    may identify other better examples, but here is right now

9    what you can look at for you to understand why we think you

10   are infringing.  I don't think there would be any impropriety

11   or any prejudice in saying -- even if, in the end, you

12   identify a whole completely different bunch.

13           If this really -- if we are really going to be

14   dealing with 74 dense pages of citations to code, I have to

15   wonder how we are going to present this effectively to a

16   jury.  It's overwhelming even to me.

17           MS. MASCHERIN:  Your Honor, this is Ms. Mascherin.

18           May I just make one point which I think illustrates

19   the importance of this issue?

20           Looking at Claim b, the last set of language that I

21   referred to is, "At least a portion of the second set of

22   location information differs from the first set of location

23   information."  Now, that -- to us, that's a key principle.

24   It's key language in this claim because, if every location

25   server has exactly the same information --

1    THE COURT:  Right.  Then you would say --

2    MS. MASCHERIN:  -- then there is no infringement.

3    THE COURT:  Then you would say there is no

4  infringement.  Right.

5    MS. MASCHERIN:  Right.

6    So which citations do we go to in this list?  You

7  know, which are the citations here which Kove believes

8  identify the place within the software that shows, according

9  to Kove, that there is a second location server that has at

10  least some information that's different from the first

11  location server?

12    MS. HOANG:  I can answer that.

13    It's right there.  It's right there.  The language

14  you just read, "Wherein at least a portion of the second set

15  of location information differs from the first set of

16  location information," the immediate follow-on parenthetical

17  points you to the consistent hasher.  It's right in that

18  parenthetical.

19    And when you scroll down -- I believe it's on

20  Page 29 -- it talks about the consistent hasher, and it talks

21  about the KFC consistent hasher.  It points you exactly to

22  where in your code this information is.

23    So, again, this is emblematic of what we are going

24  to be facing -- if there is an attempt to try to reorganize

25  this, I think it might actually make it worse.  It's all

 1    right there.

 2              MS. MASCHERIN:  All we are asking is some sort of

 3    mapping so you tell us -- you know, number them and cite them

 4    by number.  Whatever is easiest.

 5              MS. HOANG:  So in this example -- let me see if I

 6    understand this so we don't pass one another.

 7              In this example, if there was, say -- let's say,

 8    for example, a numbering scheme, and the number said

 9    consistent hasher square parenthetical 1; and you could

10    search for that square parenthetical 1, and it would take you

11    to Page 29 where it talks about the consistent hasher, that

12    would be adequate?

13              Because, again, it's just a matter of either

14    searching for the square parenthetical 1 or searching for the

15    word "hasher" because the citations will be the same.  They

16    have to be the same.

17              MS. MASCHERIN:  That's fine.

18              Your Honor, we just want a clear way to be able to

19    understand -- you know, I don't doubt that Kove understands

20    the way they have organized this.  It's not intuitive to us.

21    Citations by number would make it much clearer and easier for

22    us than to actually examine each of the claim terms and

23    respond to their noninfringement contentions.

24              THE COURT:  It's not intuitive to me either.  And I

25    do think we are going to have to -- that Kove is going to

1    have to give it another shot identifying the individual claim

2    terms or component claim terms and mapping those onto this

3    long list of citations.  It's just really, really complicated

4    at this point.

5               Again, it may be -- I think Ms. Mascherin is

6    correct that Kove undoubtedly understands this, but it has to

7    be understandable not only by highly technically trained

8    people but also by intelligent lawyers, and I don't think we

9    are there yet with this claims chart.  It really is massive.

10              I know that in the next several weeks we are all

11   going to be very stressed, but I would like to set a date by

12   which Kove will provide us with a revised claim chart that

13   does -- that makes a better stab at linking each of the

14   citations to specific claim terms or individual clauses

15   within the claim terms, if that's possible.

16              MS. HOANG:  We will do our best, your Honor.

17              I guess, just so we don't wind up disappointing

18   anyone, we will put in the corresponding numerical citation,

19   I guess.  It's not going to change the length, obviously.  I

20   think we all agree on that, that the citations aren't

21   overvoluminous or anything like that.  It's just a matter of

22   perhaps more easily locating one element within a chart to a

23   different place in the chart, and we will endeavor to do

24   that, your Honor.

25              But in terms of being able to distill it down to

1    something that might be instantaneously understandable to
2    someone not well versed in this, again, I continue to press
3    that that is unlikely.

4            I just finished a jury trial with a very, very
5    sophisticated set of source code claims; and, admittedly, it
6    took our expert five and a half hours on the stand wading
7    through extremely dense source code, presenting it to the
8    jury.  I'm sure that it was mind-numbing for the jury, but
9    they saw their way through it and understand that this is
10   part of the proofs.

11           So we will endeavor to do that.  We will obviously
12   coordinate with Ms. Mascherin.

13           Thank you for acknowledging that there is a lot of
14   difficulty going on right now trying to get people loaded up
15   to be able to work remotely.  So I guess, your Honor, we
16   would ask for a couple of weeks.

17           THE COURT:  Oh, of course.  I don't think anything
18   should be happening in the next 14 days.  I think most people
19   should be home with their families hunkering down, just as
20   the CDC has recommended.  I don't -- as important as our work
21   here at the court and your work as lawyers is, that really
22   needs to bend to public health.

23           So why don't I say that you will -- I am going to
24   give you a date of three weeks, but if you need more time,
25   you should let me know.

1          MS. HOANG:  Okay, your Honor.  Thank you.

2          MS. MASCHERIN:  And then, your Honor, could we have

3     some time -- obviously, we have a date on our final

4     noninfringement contentions.  Could we have a time after

5     that, then, to respond?

6          THE COURT:  Sure.  Why don't I ask you to propose

7     dates with one another and submit an agreed order for us

8     along those lines.

9          MS. MASCHERIN:  Okay.  We will do that.

10         MS. HOANG:  We will work together on that, your

11    Honor.

12         Just one quick housekeeping question on this.

13         So in addition to revising these charts, I believe

14    the practice in the district is to file a motion for leave to

15    amend.  If the parties are able to agree, can we agree to

16    dispense with that and just simply file a notice with the

17    Court that that's been done, and we will serve our

18    supplemental contentions without having to go through the

19    motion practice?

20         THE COURT:  Yes, that would be absolutely fine.

21    That would be fine.

22         All right.  Well, thank you.

23         MS. MASCHERIN:  Thank you, your Honor.

24         THE COURT:  Thanks for your time this morning.

25         You will be hearing from me soon on the validity

29

```
 1    motion.

 2                MS. MASCHERIN:  Thank you, your Honor.

 3                MR. MARIOTTI:  Thank you, your Honor.

 4                THE COURT:  Thank you.

 5                MS. MASCHERIN:  Good-bye.

 6          (An adjournment was taken at 9:46 a.m.)

 7                        *    *    *    *    *

 8    I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.
 9

10    /s/ Frances Ward_____April 11, 2020.
      Official Court Reporter
11    F

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```