**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KOVE IO, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:18-cv-08175 |
| AMAZON WEB SERVICES, INC., ) | |
| ) | Hon. Rebecca R. Pallmeyer |
| Defendant. ) | |
| ) | |
| ) | |

**AMAZON WEB SERVICES, INC.'S OPPOSITION TO KOVE IO, INC.'S MOTION TO COMPEL AWS TO PRODUCE TECHNICAL DOCUMENTS AND TO PROVIDE <u>SUPPLEMENTAL WITNESSES UNDER RULE 30(b)(6)</u>**

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
aunikowsky@jenner.com

Terri L. Mascherin
Timothy J. Barron
Michael T. Werner
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
tmascherin@jenner.com
tbarron@jenner.com
mwerner@jenner.com

*Attorneys for Amazon Web Services, Inc.*

Defendant Amazon Web Services, Inc. ("AWS") files this opposition to Plaintiff Kove IO, Inc.'s ("Kove") Motion To Compel AWS To Produce Technical Documents And To Provide Supplemental Witnesses Under Rule 30(b)(6). Kove's motion makes two points. First, Kove asserts that AWS is withholding some unidentified class of technical documents that are responsive to Kove's Requests for Production. Second, Kove asserts that AWS's technical witnesses were insufficiently prepared for their 30(b)(6) depositions six months ago. These arguments are meritless. Contrary to Kove's arguments, AWS has complied with its obligations to produce technical documents and to present knowledgeable, prepared witnesses for Rule 30(b)(6) depositions.

First, Kove claims that AWS has refused to produce certain technical and design documents. That is inaccurate. AWS has produced thousands of documents and millions of lines of source code that "describe[e] the design and operation of the accused products." Kove's Motion to Compel ("Mot.") at 3. Further, AWS has repeatedly stated it would produce additional documents if Kove would identify any particular categories of documents that are absent from the production. Instead, Kove has merely made vague assertions that it wants more documents without substantiating its position that there are gaps in AWS's production. Kove has also sought production of documents responsive to electronic search terms, but those searches yield thousands of hits and Kove has refused to engage in substantive discussions to narrow its proposed terms.

Second, Kove seeks to compel AWS to designate additional 30(b)(6) witnesses, arguing that the two witnesses who AWS produced to testify regarding technical topics relating to the two accused services lacked knowledge about noticed topics. AWS's technical witnesses are senior engineers with deep knowledge of the complex software products about which they were questioned. They answered hundreds of technical questions. Kove's only examples of alleged

lack of knowledge concern either: topics that were not contained in the notice; questions that required the witness to review source code (which Kove refused to permit the witness to review, though it was available in the deposition room); questions that were answered to the best of the witness's knowledge after reasonable preparation; or accusations of conflicting testimony which are meritless and in any event are best raised in cross-examination at trial. Kove's motion should be denied.

## ARGUMENT

### I. AWS's Production of Design and Technical Documents is Sufficient and AWS Has Not Refused to Produce Additional Documents.

Kove accuses two AWS services, Amazon S3 and Amazon DynamoDB, of infringing certain claims of three patents owned by Kove. *See* Compl., Dkt. 1, ¶ 26; Dkt. 173, Exs. 3–10 (Kove's Amended Final Infringement Contentions). To date, AWS has produced thousands of documents, and millions of lines of computer source code and related deployment histories, which explain the design and operation of the two accused services.[1] Declaration of Terri L. Mascherin ("Decl.") ¶ 2.

In its Motion, Kove complains that AWS's production of two categories of technical documents, "wikis" and so-called "design documents," is insufficient. As to the wikis, AWS has produced over 1000 wikis that relate to the accused functions of S3 and DynamoDB. Kove complains that AWS has refused to run its proffered terms to search for more wikis, but AWS has explained that those terms generate an inordinate number of "hits" and Kove has refused to narrow the terms. As to "design documents," AWS has asked Kove several times to describe what types of documents Kove believes are missing from AWS's extensive production, but Kove has never done so. There is nothing to compel.

---

[1] To date, AWS has responded to 127 different requests for production served by Kove. Decl. ¶ 2.

2

**A. AWS Has Produced Over 1000 Wikis and Has Agreed to Search for More, But Kove Refuses to Narrow Its Search Terms.**

AWS records technical descriptions and instructions relating to its services in internal documents known as "wikis."  As one of AWS's Rule 30(b)(6) witnesses, James Sorenson, explained, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ex. 4, Sorenson Tr. at 183:3–18.  To date, AWS has produced over 1000 wikis relating to S3 or DynamoDB.  Decl. ¶ 13; BATES Nos. AMZ_KOVE_000065079–65594, 000065726–70462, 000070531–75588.  AWS has identified those wikis for production through extensive searching of AWS's internal wiki database.  Decl. ¶ 4.  In addition, AWS has responded to multiple requests from Kove to produce specific wikis.  Decl. ¶ 5.

Kove does not identify any relevant features as to which AWS has failed to produce wikis. Instead,  Kove seeks to have AWS run searches for certain "search terms" in the wiki database and produce *all* documents containing those terms—regardless whether those documents are relevant or responsive to Kove's requests.  Kove has refused to narrow those terms, despite several requests by AWS.

The Federal Rules of Civil Procedure do not give Kove the right to insist upon production of all documents containing its unilateral list of search terms.  *See, e.g.*, *Bancpass, Inc. v. Highway Toll Admin., LLC*, 2016 WL 4031417, *3 (W.D. Tex. 2016) (party not required to produce all documents hitting on search terms where "there is no reason to believe that [the defendant] has withheld documents it was obligated to produce"); *Wilson v. Rockline Indus., Inc.*, 2009 WL 10707835, at *1 (W.D. Ark. Oct. 22, 2009) (rejecting request to compel plaintiff to turn over all documents hitting on search terms, because "[i]n our system of law, we allow the party responding to discovery to filter his own documents and produce only those which are relevant to the litigation.

3

In the absence of some showing that relevant information is being withheld—and here there is none—there is no basis to make the responding party produce all information. Indeed, to do so would make a mockery of F.R.C.P. 26(b)(1).").

Kove first proposed that AWS use specific search terms to search for wikis on January 17, 2020, after AWS had already produced hundreds of wikis. Kove proposed that AWS produce all documents that hit on 25 different search terms. Mot. Ex. 2. Those search terms include generic technical terms such as ▓▓▓ that one would expect to appear in larger numbers of documents. *Id.* AWS ran the search terms and generated hit counts on the wiki database indicating that the terms returned over 12,000 documents. AWS Ex. 10. AWS explained to Kove that given the high number of hits, Kove should limit and narrow its terms. *Id.*; Mot. Ex. 2. AWS did not, as Kove contends, "refuse[] on all counts," to produce additional wikis -- it merely asked Kove to narrow its request. Mot. at 4.[2]

Over a month after AWS asked Kove to narrow its search terms, in a February 19, 2020 letter, Kove accused AWS of not having produced "design documents" concerning features such as ▓▓▓ and ▓▓▓. AWS Ex. 2. In response, AWS agreed to search for documents concerning these features, and produced the relevant wikis that it uncovered. AWS Ex. 3; AWS Ex. 5. In addition, despite the fact that Kove did not raise in that letter the issue of searching for additional wikis, AWS again asked Kove to narrow its request for searches of the wiki database. *Id.* On March 16, 2020, AWS again offered to search the wiki database if Kove would narrow its terms. AWS Ex. 4 ("AWS would be willing to consider producing additional wiki design docs if Kove

---

[2] In addition, AWS asked Kove to agree that the searching would end Kove's seriatim requests for production of further wikis, because of the piecemeal way in which Kove had raised its requests for wikis over the preceding months. AWS Ex. 1; Mot. Ex. 2; Decl. ¶ 7. Initially, AWS also asked Kove to agree to make the wiki database one of the five document custodians for e-discovery searching under the Local Rules, but Kove refused to agree, and AWS has since dropped that request. AWS Ex. 4; Decl. ¶ 7.

significantly reduces the number of search terms requested and agrees that Kove will not request additional wiki design docs.").

Despite participating in numerous meet and confers and exchanging several letters on various discovery issues, Kove did not raise the issue of searching for additional wikis again for months. In a May 21, 2020 meet and confer call, Kove renewed its request to search the wiki database; again, AWS stated it was willing to perform additional searches if Kove narrowed its requests. Decl. ¶ 9. But a week later, in a May 28, 2020 letter, Kove merely repeated its request for searches "as identified in [Kove's] February 19 letter." *Id.* ¶ 11; AWS Ex. 5. Kove then did nothing for two months until it filed this motion.

As AWS has told Kove on numerous occasions, AWS is willing to perform additional searches and to produce additional wikis if Kove narrows its search terms. To make clear this willingness, AWS took certain of Kove's search terms that yielded relatively low hit counts, and produced those documents to Kove on August 17, 2020. This production constituted another 340 documents, bringing the total number of wikis produced to 1,016, containing 15,925 pages. Decl. ¶ 13. In addition, searches of the wikis that AWS had already produced previously reveal that 544 of those wikis hit on Kove's search terms. *Id.*

AWS has complied reasonably with Kove's requests for production of wikis. Kove has not identified any missing wikis, has given no basis for its assertion that the production is incomplete, and has failed to negotiate in good faith over its overbroad search terms. Kove has shown no basis for compelling additional document production.

### B. Despite AWS's Many Requests, Kove Has Not Identified What Types of "Design Documents" It Believes Exist and Have Not Been Produced.

The second type of documents Kove raises in its motion is what it calls "design documents." Kove appears to believe that "design documents" exist which are distinct from the

5

documents in the wiki database and the source code. For several months, AWS has pressed Kove to identify any specific types of documents that Kove contends are missing from AWS's production. Kove has refused to do so. Kove has now appended to its motion a list of features of the two accused services—a list that Kove never raised or discussed with AWS-- and asks the court to compel AWS to produce all "design documents" relating to these features. There is no reason to compel further production.

AWS has produced 2,681 documents comprising 88,164 images/pages. Decl. ¶ 2. This is over and above 114,015 different packages of source code for S3 and for DynamoDB—the true reflection of the design of the systems—which AWS has made available to Kove for its secure review. *Id.* That code, together with the wikis, constitutes the technical documents that AWS uses to record the design of S3 and DynamoDB. *See* Ex. 4, Sorenson Tr. at 183:3–18 ███████████████████████████████████████████████████████████████████████████; Ex. 10, Markle Tr. at 55:24–55:25 ██████████████████. Kove asserts that Mr. Markle's testimony suggests that there may be additional documents, but AWS has investigated the matter and determined that there are no such documents beyond the wikis and source code, which contain the relevant documentation and technical material. Decl. ¶ 3.

On several occasions, Kove has sought additional "design documents." Every time, AWS has either diligently searched for and produced more wikis, or sought additional clarity from Kove on what documents it was seeking. Kove first raised the subject of additional "design documents" in its February 19, 2020 letter, seeking documents relating to certain features of the accused products. AWS Ex. 2. AWS searched for and produced wikis dealing with those features. Kove

6

again asked for additional "design documents" in the May 21, 2020 call. Decl. ¶ 9. AWS's counsel asked Kove to explain what, exactly, Kove meant by "design documents," explaining that AWS has produced hundreds of wikis, as well as source code files, that reflect the design of the accused functions of S3 and DynamoDB. *Id.* Kove's counsel said they would provide examples of what types of documents they believe should exist which AWS has not produced. *Id.* Counsel for AWS later memorialized the conversation, telling Kove's counsel that AWS would "investigate whether additional [design] documentation exists in line with your request," if Kove provides examples of what it is seeking. Decl. ¶ 10. Kove did not respond.

In a May 29, 2020 meet and confer, Kove again raised "design documents," and AWS again said that it was willing to conduct additional searches if Kove provides more specific information about what Kove believes has not been produced. Decl. ¶ 11. Following that call, Kove wrote to AWS, taking the position that the parties are at an impasse regarding the production of "design documents." AWS Ex. 7. Surprised, AWS responded, reiterating: "AWS will agree to conduct an additional search of 'WIKI' documents." AWS Ex. 8. Kove let the issue fall dormant for another month, then wrote to AWS on July 3, 2020, stating that Kove intended to file a motion to compel the production of "design documents" and wikis. Decl. ¶ 12.

Kove now insists that AWS is withholding an unspecified category of "design documents" containing unspecified information. In its motion, Kove asks that AWS be ordered "to produce documents describing the design and operation of the core components in the Accused Products, as identified in Appendix A hereto." Mot. at 5. The list in Appendix A is new, and lists 29 components of S3 and DynamoDB. It overlaps partially, but not completely, with Kove's proposed wiki search terms. A motion to compel is not a proper place to make a new request for search terms. But more importantly, AWS has already produced "design documents" relating to

7

all of these components, including, it bears repeating, the *source code* for S3 and DynamoDB. Decl. ¶ 2.[3] Given that the wikis (and the code) are the core engineering documents, any complaints that Kove has about "design documents" likely could be resolved if Kove were willing to engage to narrow its wiki search terms.

In short, this issue simply does not merit the Court's intervention. AWS has produced innumerable technical and design documents, as well as over 100,000 files of source code for S3 and DynamoDB, and has made clear it is willing to perform additional searches if Kove crafts narrower search terms.

## II. AWS's 30(b)(6) Witnesses Were Knowledgeable and Prepared.

Kove has shown no basis for AWS to be required to produce new Rule 30(b)(6) technical witnesses. A party designating a 30(b)(6) witness has a duty to ensure that witness is knowledgeable about the topics provided in the deposition notice. *See, e.g.*, *Wachovia Sec., LLC v. NOLA, LLC*, 248 F.R.D. 544, 547 (N.D. Ill. 2008). However, a deposition is not a memory test, and deponents need not memorize material, particularly when the material at issue is voluminous and highly technical. Mot. at 2; *see also Textile 26 Corp. v. Baldwin Sun, Inc.*, No. CV 16-5783 AB (FFMX), 2017 WL 8231045, at *2 (C.D. Cal. July 21, 2017). A "corporation need not produce witnesses who know every single fact" in order to comply with its obligations under Rule 30(b)(6). *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012) ("Absolute perfection is not required of a 30(b)(6) witness. The mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation.") Courts will force a witness to appear for a new 30(b)(6) deposition only if the litigant did not act in good faith in designating or preparing the witness. *See, e.g.*, *Barron v.*

---

[3] Searches reveal that the 29 terms in Appendix A appear in 1,131 unique documents already produced by AWS. Decl. ¶ 14.

8

*Caterpillar, Inc.*, 168 F.R.D. 175, 178 (E.D. Pa. 1996) (declining to order a party to produce another 30(b)(6) witness where the party did not act "willfully or in bad faith to obstruct discovery").

AWS produced two of its engineers as witnesses in response to Kove's Rule 30(b)(6) deposition notice seeking testimony regarding the technology and design of S3 and DynamoDB. The witnesses, Seth Markle (who testified regarding S3) and James Sorenson (who testified regarding DynamoDB) are the principal engineers of their respective products. *See* Mot. Ex. 4, Sorenson Tr. at 6:23; Mot. Ex. 10, Markle Tr. at 6:8. They were well prepared and knowledgeable and answered hundreds of questions about the accused services.

Kove complains that Mr. Markle did not answer questions about Amazon's S3 Glacier and S3 Glacier Deep Archive services, but those services are not accused of infringement and were not mentioned in Kove's notice of deposition. With regard to the rest of Kove's complaints, the witnesses' purportedly incomplete answers are largely attributable to Kove's inexplicable refusal to allow these witnesses to look at source code during their depositions. Kove's complaints do not warrant a supplemental deposition.

### A. Kove Is Not Entitled to a New Deposition on S3 Glacier or S3 Glacier Deep Archive Because Those Services Are Not Accused Services And Are Not Relevant.

Kove complains that Mr. Markle "was not prepared to testify about S3 Glacier and S3 Glacier Deep Archive." Mot. at 6. But Kove does not accuse either of those services of infringing Kove's patents, and neither service was mentioned in Kove's Rule 30(b)(6) notice. Mot. at 5; Mot. Ex. 9; Dkt. 173, Exs. 3–10 (Kove's Amended Final Infringement Contentions).

At the deposition, AWS's counsel repeatedly objected to Kove's questions regarding the Glacier services as outside the scope of the Rule 30(b)(6) notice. *See* Mot. Ex. 10, Markle Tr. at 239:20–240:25. AWS cannot be expected to prepare a witness to answer questions about a service

9

that Kove did not identify in its Notice. *See, e.g.*, *Wachovia Sec., LLC v. NOLA, LLC*, 248 F.R.D. 544, 547 (N.D. Ill. 2008) (a Rule 30(b)(6) witness is expected to be prepared to testify only regarding the topics identified in the notice of deposition); *Federal Rules of Civil Procedure, Rules and Commentary Rule 30* ("[T]he corporation's duty to supply an educated witness is limited to the subjects specified in the notice."). Moreover, S3 Glacier and S3 Glacier Deep Archive are completely irrelevant to this case. Kove does not mention those services in its pleadings, in any discovery requests, in its initial infringement contentions or in any of the three versions of Kove's final infringement contentions, which, under the Local Rules, must identify all accused products or services. Local Patent Rule 2.2(b); *see generally* Compl., Dkt. 1; Dkt. 173, Exs. 3–10 (Kove's Amended Final Infringement Contentions). Particularly now that Kove has filed *final* infringement contentions that do not accuse S3 Glacier or S3 Glacier Deep Archive of infringement, there is no basis for seeking a new deposition regarding S3 Glacier and S3 Glacier Deep Archive.

### B. None of Kove's Remaining Complaints Warrants a New Deposition.

Kove next complains that AWS's witnesses were allegedly unable to answer certain questions about the accused products. Mot. at 6–8. As the deposition transcripts make clear, AWS's witnesses answered hundreds of detailed technical questions about the accused products, and *never* said that they were technically unable to determine the answer to a question.

With respect to some of the questions asked, typically dealing with specific technical details of the products, AWS's witnesses stated that they would need to look at the source code to explain how a particular function is performed. Mr. Markle's testimony regarding ▮▮▮▮▮▮ (Mot. 6) is a good example. Kove asserts that with respect to ▮▮▮▮▮▮ Mr. Markle "was not able to describe ▮▮▮▮▮▮

even at a high level." Mot. 6 (citing Markle Dep. 259:2-6). That is not true. As the deposition transcript makes clear, Mr. Markle answered numerous questions about ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ with clarity. Markle Dep. 254:15-258:2. Kove's questions became more and more technical, focusing on smaller and smaller details, culminating in the following question: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 259:2–259:4. At that point, Mr. Markle responded: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 259:5–259:6. Without making any record that this question was somehow mission critical, Kove then asked dozens of additional questions about the ▇▇ ▇▇▇▇▇▇ that Mr. Markle had no difficulty answering. *Id.* at 259:7–268:15.

The same is true of Mr. Sorenson's deposition. Kove complains about Mr. Sorenson's answers regarding ▇▇▇▇▇▇▇, Mot. 7, but the transcript demonstrates that Mr. Sorenson answered numerous technical questions about this topic spanning several pages of transcript. Ex. 4, Sorenson Tr. at 145:13–159:6. Kove then asked a series of questions focusing on minute technical details, such as: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ 159:13–159:15. Mr. Sorenson offered to check the source code to answer that question: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Mot. at 7.

Kove also complains about Mr. Sorenson's testimony about ▇▇▇▇. Mot. at 7–8. Mr. Sorenson answered dozens of technical questions about ▇▇▇▇. *See, e.g.*, Ex. 4, Sorenson Tr. at 169:23–172:9 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ; *id.* at 188:3–188:13 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ; *id.* at 211:5–211:12 ▇▇▇▇▇▇▇▇▇▇▇▇▇

11

███████████████████████████████████████████████████████████████

███████████.[4] With respect to a few questions, such as the specific year that ██████ was implemented or whether certain particular code was leveraged in particular situations, Mr. Sorenson stated he would want to check the source code. Sorenson Tr. at 158:20–158:23 ██████ ███████████████████████████████████; *id.* at 162:17–162:19 ████████ ██████████████████████████████████████.

That type of response is entirely reasonable in a case like this, which involves very complex services. As discussed above, AWS has produced over 100,000 source code files. One would have to be superhuman to be able to recall the detail of how each function reflected in each of those files is performed. Depositions are not a memory test, and it is patently unreasonable to expect a witness to know from memory the entire operation of millions of lines of computer code. *See, e.g.*, *Goldie v. Hartford Ins. Co.*, No. CV053801RSWLSSX, 2006 WL 8451352, at *2 (C.D. Cal. Feb. 16, 2006) (denying a motion to compel additional designations where the witness "answered that she had to 'guess' or 'speculate' as to the answer to a question" because such answers were "understandable, given that [the witness] testified regarding a multitude of subjects over a two-day period. A Rule 30(b)(6) deposition is not a 'memory test.'").

Moreover, the code was readily available to Kove's counsel: the source code was on a laptop, sitting in the deposition room. Decl. ¶ 15. Prior to the depositions, Kove had requested that the source code for S3 and DynamoDB be made available on a laptop at the depositions, and AWS provided such a laptop. *E.g.*, *id.*; AWS Ex. 11. But even though the source code was in the

---

[4] As another example, Kove quotes Mr. Sorenson as saying: ████████████████████████████ ████████████████████████████ Mot. at 8 (citing Ex. 4, Sorenson Tr. at 162:20-163:19). But in the portion of Mr. Sorenson's answer that Kove replaces with an ellipsis, Mr. Sorenson answers the question to the best of his ability: ████████████████████████████████████████████████████████████████████ ██████ Mot. Ex. 4, Sorenson Tr. at 163:3–163:12.

12

room, and even though the witnesses made clear that they needed to check the code to answer certain questions, Kove did not allow the witnesses to look at the code. For instance, about halfway through Mr. Markle's deposition, the witness specifically asked to see the source code to answer a question, but Kove's attorneys demurred and asked the witness to speculate without looking at the code: ▮

▮

▮ Mot. Ex. 10, Markle Tr. at 156:11–156:17.

Similarly, after Mr. Sorensen said several times that he would need to look at the code to answer specific questions, AWS's attorney suggested that Kove's attorneys show the witness the code so he could answer fully: ▮

▮

▮ Mot. Ex. 4, Sorenson Tr. at 168:12–168:17. After one more question, Kove's attorneys took a break; they did not show the witness the code either before or after the break. *Id.* at 168:18–171:20.[5]

Kove's remaining examples of alleged unpreparedness are meritless. Kove's allegation that Mr. Markle was "unable to testify about the operation of the relevant components of Amazon S3 for relevant time periods" is simply wrong. Mot. at 6. For 301 pages of deposition transcript, Mr. Markle testified about the operation of Amazon S3 during the relevant time periods. Mr. Markle did testify that he did not memorize every single change to the system: ▮

---

[5] Kove suggests that AWS's counsel made improper speaking objections that affected the witnesses' testimony. That is inaccurate. The vast majority of AWS's objections either were simple objections to form or provided a short explanation such as 'vague' or 'speculation.' And the specific examples Kove cites do not support Kove's conclusion. For instance, Kove alleges that the witness "refus[ed] to answer whether ▮ ▮ in light of repeated objections by AWS counsel." Mot. at 8 (citing Ex. 10, Markle Tr. at 175:5-177:23, 222:12-223:20). A review of the transcript reflects that the witness answered the same question no less than 6 times; only after several "asked and answered" objections did AWS's attorney try to bring an end to the repetition by interposing a speaking objection. Markle Tr. at 175:5-177:23.

13

██████████████████████████████████████████████████████████████████

████████ Mot. Ex. 10, Markle Tr. at 243:2–243:5.[6] Notably, Kove has never argued that any changes to the source code over time might be relevant to its infringement theories.

Next, Kove complains that Mr. Sorenson gave "contradictory testimony." Mot. 7. As Kove's own motion makes clear, Kove asked two different questions—the first was related to whether ████████████████████████████████████████████ while the second concerned whether ████████████████████████ *Id.* Mr. Sorenson answered both questions. If Kove thinks that Mr. Sorenson's answers are contradictory, it should have asked follow-up questions or it can raise the issue in cross-examination of AWS's witnesses at trial.

On this record, no authority supports Kove's request to compel a new deposition. The sole case Kove cites where a Court ordered a defendant to provide a supplemental witness, *Seaga Mfg. v. Intermatic Mfg.,* No. 13 C 50041, 2013 WL 3672964, at *2–3 (N.D. Ill. July 12, 2013), involved a witness who was far less prepared than Kove even alleges here. There, a party designated a 30(b)(6) witness to testify to the company's financial condition, but the deponent could not answer questions regarding sixty-eight different financial issues, and could not even answer "relevant general questions that related to the solvency" of the company. *Id.* at *2. By contrast, AWS's witnesses were knowledgeable and prepared and, to the extent the witnesses indicated they would have to check the source code to answer specific questions, Kove inexplicably plowed on without permitting the witnesses to consult the code. At most, if Kove contends there are specific questions that are crucial, the proper remedy is for Kove to serve written discovery posing the questions so that AWS may research them and provide informed answers. *See Alexander v. F.B.I.*, 186 F.R.D.

---

[6] As to Kove's complaint that the witness did not review "changes in time from 2012 to now," Mot. at 6, that is for the simple reason that that is not how AWS stores its source code, as the witness explained. *See, e.g.*, Mot. Ex. 10, Markle Tr. at 254:10–254:13 ████████████████████████████████████████ ████████████████████████████████████████

137 (D.D.C. 1998) (allowing additional written discovery to address questions that a Rule 30(b)(6) witness was unable to answer). Moreover, Kove's conduct casts serious doubt as to whether Kove truly needs a new deposition. First, if the allegedly unanswered questions were critical to Kove's case, then it presumably would have sought answers to those questions in discovery in the six months since the depositions occurred. For example, if it were crucial to know the specific year in which ▮ was implemented, Kove could have posed that question in an interrogatory. Given that Kove has had the opportunity to obtain the needed information through less intrusive discovery and has failed to do so, there is no basis for ordering a second deposition. *See United States v. Massachusetts Indus. Fin. Agency*, 162 F.R.D. 410, 412 (D. Mass. 1995) (denying request for additional 30(b)(6) witness even where "[i]t is evident to the Court that [the company] could have done a better job in preparing [the witness] for deposition" but noting that further document discovery and interrogatories would be allowed).

Second, the timing of this motion is unusual. The motion was filed six months after the Rule 30(b)(6) depositions, and after Kove served three different versions of its final infringement contentions. If the information now sought by Kove was sufficiently crucial to require a supplemental Rule 30(b)(6) deposition, Kove would have filed its motion promptly, and before its final infringement contentions were due. Kove shows no basis for reopening these depositions.

## CONCLUSION

Kove's motion is meritless. On the production of technical and design documents, AWS has produced thousands of documents and over 100,000 source code files, and has specifically offered to conduct additional searches if Kove engages to narrow its search terms. On the designation of additional 30(b)(6) witnesses, every one of Kove's list of complaints falls away upon the slightest inspection. The Court should deny Kove's motion.

15

| | |
|---|---|
| August 18, 2020 | Respectfully submitted, |
| | */s/ Terri L. Mascherin* |
| Adam G. Unikowsky<br>JENNER & BLOCK LLP<br>1099 New York Ave. NW Suite 900<br>Washington, DC 20001<br>(202) 639-6000<br>aunikowsky@jenner.com | Terri L. Mascherin<br>Timothy Barron<br>Michael T. Werner<br>JENNER & BLOCK LLP<br>353 N. Clark St.<br>Chicago, IL 60654<br>(312) 222-9350<br>tmascherin@jenner.com<br>tbarron@jenner.com<br>mwerner@jenner.com<br><br>*Attorneys for Amazon Web Services, Inc.* |

**CERTIFICATE OF SERVICE**

I, Timothy Barron, an attorney at the law firm of Jenner & Block LLP, certify that on August 18, 2020, the foregoing Opposition to Kove IO, Inc.'s Motion to Compel AWS to Produce Technical Documents and to Provide Supplemental Witnesses Under Rule 30(b)(6) was electronically served on counsel of record via the Court's ECF system.

*/s/ Timothy J. Barron*
Timothy J. Barron