# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Hon. Rebecca R. Pallmeyer |
| v. | Jury Trial Demanded |
| Amazon Web Services, Inc., | |
| Defendant. | |

**KOVE IO, INC.'S MOTION TO COMPEL AMAZON WEB SERVICES, INC.
TO PRODUCE FINANCIAL INFORMATION**

Plaintiff Kove IO, Inc. ("Kove") respectfully requests the Court's assistance in resolving a discovery dispute with Defendant Amazon Web Services, Inc. ("AWS"). The parties have met and conferred in good faith multiple times (by email and phone), including most recently by phone on August 14, 2020 and by email throughout September, but are unable to resolve their disputes. The following counsel participated in the August 14 telephonic meet and confer:

<u>On behalf of Kove:</u> Shawna Ballard, Jaime Cardenas-Navia, Michael Marvin, Kate Falkenstien.

<u>On behalf of AWS:</u> Terri Mascherin, Tim Barron.

## **INTRODUCTION**

In this patent infringement case, Kove asserts damages based on a reasonable royalty for AWS's infringement of Kove's patents. This reasonable royalty necessarily depends upon financial data in AWS's possession. To date, AWS has produced certain financial data for the accused products (S3 and DynamoDB) but steadfastly refuses to produce financial data at the AWS level, i.e., financial data for the AWS business unit itself, which is the subsidiary unit of Amazon that operates S3 and DynamoDB.

AWS-level financial information is relevant and necessary to Kove's damages claim because it directly bears on the allocation of higher-level operating costs among various products, convoyed sales of other related products, and the profitability of the accused products, especially when compared to related non-infringing products. All of these facts bear on the *Georgia-Pacific* factors that govern the reasonable rate for a patent royalty. AWS claims undue burden as its justification for refusing discovery, but Kove's request is reasonable and proportionate to the needs of the case — indeed, Kove anticipates that its requests will require producing fewer than 100 documents. Kove therefore respectfully requests the Court's assistance

1

through this Motion to Compel.

## FACTS

Kove's Request for Production 84 seeks:

> All documents identifying, describing, or referencing profits and losses (e.g., profit and loss statements) for the business unit(s) responsible for revenue and/or sales relating to each of the Accused Products, beginning no later than three years before the first use of each of the Accused Products.

*See* Ex. A at 22. In response to this request, AWS stated, *inter alia*, that it:

> objects to this Request as over broad and unduly burdensome and disproportionate to the needs of this case because it seeks information regarding profits and losses which is not relevant to this case, and information relating to sales which have no relation to Amazon S3 or Dynamo DB. AWS objects to this Request as overly broad and unduly burdensome and disproportionate to the needs of this case to the extent that it seeks highly confidential documents and information for products and services that Kove has not sufficiently identified as infringing the Asserted Patents.

Ex. B at 41. AWS agreed to produce responsive documents only insofar as they show "sales and revenue information for S3 and DynamoDB" in particular. *Id.* S3 and DynamoDB are the products Kove has alleged infringe its patents. They sit within the AWS business unit.

Through the meet-and-confer process, Kove made clear that its request under RFP 84 was focused on the type of financial statements AWS keeps in the ordinary course of its business, such as cash flow statements, income statements, balance sheet statements, and profit-and-loss statements, as well as any contemporaneously created financial disclosures or explanatory footnotes that would commonly accompany and explain the financial statements. For purposes of this Motion, these documents are referred to as "AWS-level financial information." This Motion seeks production of AWS-level financial information.

The parties first conferred on May 21, 2020. As reflected in a letter summarizing the discussion, AWS claimed that AWS-level financial data was not relevant, and Kove explained that "such documents are relevant to Kove's damages case" because the data in the AWS-level

financial statements would bear on convoyed sales, and may contain "disclosures and notes relevant to both the AWS business unit and products," which could "provid[e] context as to how AWS allocates costs and recognizes product-level revenue." *See* Ex. C at 3.

The parties conferred again on May 29, 2020. Again, AWS "refused [Kove's] request that AWS produce profit and loss statements covering AWS as a reporting segment." *See* Ex. D at 2. A few days later, AWS responded to Kove's letters, claiming that Kove had not "provide[d] any logical basis of how those documents could be relevant to your damages case." *See* Ex. E. Kove responded (Ex. F):

> [S]uch documents are relevant to how AWS allocates cost between different products, which is relevant to analyzing product-level profitability, as well as commercial success. Relatedly, because the AWS segment of the business is so different from Amazon's retail business, when taking into account overall business operations (*e.g.*, operating expenses), an analysis at the AWS reporting level is more relevant than looking at this at the Amazon level. Moreover, we have also explained that notes to the unit level financials are relevant and potentially significant to an analysis of the product level financial data within the AWS unit. Also, we explained that a comparison of the financial data for the AWS unit to that for the accused products is indicative of the importance of the accused products and features. We have also explained that the AWS financial statements should be easy to locate so that the benefits of producing the data far outweigh any burden from collection.

The parties conferred a third time on August 14, 2020. AWS maintained its refusal to provide AWS-level financial information. However, on August 19, counsel for AWS sent a letter stating that it was "reconsidering [its] position on this issue" and would "get back to [Kove] shortly." Ex. G. AWS later promised to provide a "final position" by August 28. Ex. H.

On August 27, AWS sought "further clarification" about what documents Kove wanted beyond Amazon's 10Q and 10K statements. Ex. I at 2. On September 1, Kove again explained that it needs "profit and loss statements covering AWS as a reporting unit (as well as the contemporaneously created financials disclosures that typically accompany and explain the profit-and-loss statement)" and that Amazon's 10Q and 10K statements are insufficient because

3

they cover all of Amazon and do not contain details necessary to understand AWS's financials in particular (including details necessary to ascertain information previously identified as being necessary to a fulsome damages assessment). *Id.* at 1. Indeed, AWS was not even included as a reporting segment on Amazon's 10K and 10Q statements until 2015; there is no data relating to AWS for prior years. *Id.*

On September 17, having received no response from AWS, Kove reached out once more. Ex. J at 3. AWS responded, claiming that it had "provided company-level AWS P&L documents" the week before, but those documents turned out to be a single spreadsheet containing four rows of high-level financial data, including one aggregated line item for all "fixed costs." *See* Exs. M, N. AWS still has not produced the AWS-level financial information required by RFP 84.

## ARGUMENT

"Liberal discovery is permitted in federal courts to encourage full disclosure before trial." *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 366 (N.D. Ill. 2001). "There is a strong policy for a broad type of discovery and duty of full disclosure in patent cases, in order to educe the maximum amount of evidence." *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 2005 WL 1300778, at *1 (N.D. Ill. Apr. 28, 2005) (quotation and internal quotation marks omitted). "At the end of the day, the Federal Rules permit broad, liberal discovery." *Brodsky v. HumanaDental Ins. Co.*, 2015 WL 13439903, at *1 (N.D. Ill. Mar. 12, 2015).

A party moving to compel "bears the initial burden of proving that the information sought is relevant." *West v. Miller*, 2006 WL 2349988, at *2 (N.D. Ill. Aug. 11, 2006), aff'd, 2007 WL 541943 (N.D. Ill. Feb. 13, 2007) (quotation omitted). "If the discovery appears relevant, the party objecting to the discovery request bears the burden of showing why that request is

4

improper." *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 2005 WL 1300778, at *1 (N.D. Ill. Apr. 28, 2005); *see also Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) ("When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.").

AWS's objections (overbreadth, undue burden, and relevance) are overstated and do not relieve it of its discovery obligations. Kove's request is relevant to its damages theory, and AWS has more than enough resources to respond to the limited request without undue burden.

### I.     **The AWS-Level Financial Data Is Relevant.**

"[R]elevancy will be construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 366 (N.D. Ill. 2001) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)).

The AWS-level financial information contains information relevant to Kove's damages. Kove seeks a reasonable royalty for its patents. Kove's damages expert is expected to utilize the so-called "income" or "analytical" approach to calculate a reasonable royalty, which assesses damages by "compar[ing] the infringer's profits *without* infringement to the infringer's profits *with* infringement." *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 2014 WL 5080411, at *4 (W.D. Wis. Oct. 9, 2014) (collecting cases approving of the income approach); *see also TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986) (approving of this approach); *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) (explaining that "the core economic question is what the infringer, in a hypothetical pre-infringement negotiation under hypothetical

5

conditions, would have *anticipated* the profit-making potential of use of the patented technology to be, compared to using non-infringing alternatives"). Comparing anticipated profits with and without infringement necessarily requires information about, for example, revenue and costs, to calculate profit. Data at the AWS level will permit Kove to calculate profits associated with S3 and DynamoDB specifically, and compare those profits to the unit as a whole. In particular, AWS-level financials are necessary to evaluate whether AWS has costs that accrue at the unit (rather than product) level that should be allocated across products. The AWS-level financial information should contain notes and calculations that bear on how to allocate any such costs among the various products in the unit. Allocating those unit-level costs allows isolation of the profits attributable to infringement — the core question under the income approach. *See, e.g.*, *Aqua Shield*, 774 F.3d at 772 (noting that "anticipated incremental profits under the hypothesized conditions are conceptually central to constraining the royalty negotiation").

      AWS's productions to date do not contain the needed level of detail. The only AWS-level financial record AWS has produced is a single spreadsheet with one aggregated line item for "fixed costs." *See* Ex. M (email from AWS to Kove identifying produced documents purportedly qualifying as "company-level AWS P&L documents"); Ex. N (identified spreadsheet). And Kove cannot discern the information it needs from the limited *product*-level information that AWS has produced, because those product-level financial statements aggregate the fixed costs into broad line items. *See, e.g.*, Ex. K (S3 financial statement); Ex. L (Dynamo DB financial statement). There is no way to tell what discrete costs are included in these aggregated line items. Moreover, the financial statements appear to have been created for this litigation. *See* Ex. K at 7 (marked "for legal"). In short, the *product*-level financial statements produced so far are not sufficient, and AWS has not produced the *AWS*-level financial statements that it kept in the

6

ordinary course of business. Kove is entitled to that AWS-level financial information, in order to understand the costs associated with the Accused Products' revenue.

AWS-level financials are also relevant to the *Georgia-Pacific* factors that bear on the royalty rate. These factors "provide a reasoned economic framework for a hypothetical negotiation, which attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 27 (Fed. Cir. 2012) (quotation marks, alterations, and quotation omitted); *see also LoggerHead Tools, LLC v. Sears Holdings Corp.*, 2016 WL 5112025, at *3 (N.D. Ill. Sept. 20, 2016) (approving application of *Georgia-Pacific* factors).

First, data bearing on cost allocation is relevant to several *Georgia-Pacific* factors, including "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity," "[t]he portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions," and "[t]he portion of the realizable profit that should be credited to the invention . . . ." *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971). As discussed *supra*, p. 5-6, these profit figures cannot be calculated without cost data, which should be included on the AWS-level statements.

Second, the AWS-level statements would contain financial data about related non-accused products, which is relevant to the sixth *Georgia-Pacific* factor: the "effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales." *Georgia-Pac.*, 318 F. Supp. at 1120. This factor concerns

7

convoyed sales — that is, the additional profit a licensee could make from *other products* by selling the licensed product. Convoyed sales are likely significant here, because the accused products involve foundational technology that enabled AWS's broader market gains. AWS, however, refuses to produce any financial data about any products other than the Accused Products themselves. That position would necessarily vitiate any convoyed sales analysis, directly contradicting *Georgia-Pacific*.

Third, the AWS-level statements would allow Kove to compare the profits of the accused products with related non-infringing products, which is relevant to the thirteenth *Georgia-Pacific* factor: "[t]he portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer." *Georgia-Pac.*, 318 F. Supp. 1116 at 1120. The profitability of similar but non-infringing products informs how much of S3 and DynamoDB's profits should be credited to their infringing features in particular.

These documents easily meet the low bar for relevance, which requires only that there be "any chance that the information sought may be relevant to the subject matter of the action." *Shapo v. Engle*, 2000 WL 876994, *3 (N.D. Ill. July 3, 2000).

## II. Producing Easily Identifiable Financial Information Under A Protective Order Is Not Unduly Burdensome.

To avoid discovery of these relevant documents, AWS must "demonstrat[e] that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Chavez*, 206 F.R.D. 615, 619 (S.D. Ind. 2002). "General assertions of undue hardship" are not enough. *Schaap v. Exec. Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990). Parties cannot simply "intone the phrase" of "undue burden" to avoid complying "with discovery requests that involve

8

anything other than the slightest effort." *Jenkins v. White Castle Mgmt. Co.*, 2014 WL 3809763, at *2 (N.D. Ill. Aug. 4, 2014). Discovery "is intrusive, expensive, and inherently burdensome," but that does not necessarily bar discovery requests as "undue" burdens. *Id.* at *3.

Rather, "to resist discovery as unduly burdensome, [a party] must adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome." *Eley v. Herman*, 2005 WL 3115304, at *1 (N.D. Ind. Nov. 21, 2005) (quotation and internal quotation marks omitted) (rejecting "a conclusory allegation that disclosure would be burdensome" that did not specify the time required to comply with the request). A sufficient showing of undue burden "typically requires affidavits or other evidence supporting a party's assertions of burden." *U.S. ex rel. Robinson v. Indiana Univ. Health Inc.*, 2015 WL 3961221, at *5 (S.D. Ind. June 30, 2015) (collecting cases); *see also Jenkins*, 2014 WL 3809763, at *2; *Annie Oakley Enters. Inc. v. Amazon.com, Inc.*, 2020 WL 4571742, at *5 (S.D. Ind. Aug. 7, 2020).

Here, there is no unusual or undue hardship associated with producing the AWS-level financial information. AWS presumably keeps these documents in the ordinary course of business. The dispute concerns only a limited number of documents — financial statements starting three years before the date of first use of the accused products, in January 2012 for DynamoDB and in March 2006 for S3. This is not a request involving burdensome searches of electronically stored information, and it should not require production of millions of pages of documents. Indeed, it is expected that this would generate fewer than 100 documents.

Without any plausible argument that the disputed discovery would be especially time-consuming or costly, AWS instead asserts the burden of producing confidential information. *See* Ex. B at 41 (objecting that the request is "unduly burdensome and disproportionate to the needs

9

of this case to the extent that it seeks highly confidential documents"). But the Court has already entered a protective order that shields the parties' confidential information from public disclosure. *See* Protective Order, Dkt. 55 (July 10, 2019). A protective order adequately addresses the supposed burden of producing confidential information. *See, e.g.*, *Simpson v. City of Milwaukee*, 2013 WL 4523184, at *6 (E.D. Wis. Aug. 27, 2013) (granting motion to compel despite "the Defendants' confidentiality concerns" because of the availability of a protective order); *Washington v. Franciscan Health Sys.*, 2018 WL 2159920, at *2 (W.D. Wash. May 10, 2018) (granting motion to compel where "the parties ha[d] entered into an extensive protective order that provides for appropriate handling of highly confidential information" and the producing party "fail[ed] to provide any legitimate argument why its information should not be disclosed despite these protections"); *Apollo MedFlight, LLC v. BlueCross BlueShield of Tex.*, 2020 WL 520608, at *16 (N.D. Tex. Jan. 13, 2020) (overruling objection that a deposition topic was "unduly burdensome because the information is proprietary and confidential" because the protective order "addresse[d] any concerns regarding the proprietary and confidential nature of the information sought"); *Virtual Studios, Inc. v. Royalty Carpet Mills, Inc.*, 2013 WL 12090122, at *4 (N.D. Ga. Dec. 23, 2013) (ordering production of confidential documents because of the safeguard of a protective order). There is no burden from producing confidential information when that information will be adequately shielded through the existing protective order. Kove does not contest that AWS may mark the disputed documents as confidential or highly confidential under the protective order.

## CONCLUSION

For the reasons stated above, Kove respectfully requests that the Court order AWS to produce the AWS-level financial information.

10

DATED: October 2, 2020 

Respectfully submitted,

*/s/ Khue Hoang*

Renato Mariotti (State Bar No. 6323198)
rmariotti@thompsoncoburn.com
Holly H. Campbell (State Bar No. 6320395)
hcampbell@thompsoncoburn.com
THOMPSON COBURN LLP
55 E. Monroe St., 37th Floor
Chicago, IL 60603
Telephone: (312) 346-7500

Sarah O. Jorgensen (*pro hac vice*)
sjorgensen@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
1201 West Peachtree, Suite 2300
Atlanta, GA 30309
Telephone: (404) 609-1040
Telecopier: (650) 623-1449

Courtland L. Reichman (*pro hac vice*)
creichman@reichmanjorgensen.com
Shawna L. Ballard
(Identification No. 155188)
sballard@reichmanjorgensen.com
Jennifer P. Estremera (*pro hac vice*)
jestremera@reichmanjorgensen.com
Michael G. Flanigan (State Bar No. 6309008)
mflanigan@reichmanjorgensen.com
Kate M. Falkenstien (*pro hac vice*)
kfalkenstien@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Telecopier: (650) 623-1449

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
1615 M Street, NW, Suite 300
Washington, DC 20036
Telephone: (202) 894-7310
Telecopier: (650) 623-1449

*Attorneys for Kove IO, Inc.*

Khue Hoang (*pro hac vice*)
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (*pro hac vice*)
jcardenas-navia@reichmanjorgensen.com
Wesley White (*pro hac vice*)
wwhite@reichmanjorgensen.com
Rahul Sarkar (*pro hac vice*)
rsarkar@reichmanjorgensen.com
Michael W. Marvin (*pro hac vice*)
mmarvin@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
750 Third Avenue, Suite 2400
New York, NY 10017
Telephone: (212) 381-1965
Telecopier: (650) 623-1449

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and exact copy of the foregoing, and all exhibits thereto, was filed electronically on October 2, 2020, with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all registered counsel of record or was emailed to all registered counsel of record.

*/s/ Khue V. Hoang*
Khue V. Hoang
