# Exhibit G

August 19, 2020

Timothy J. Barron
Tel +1 312 923 8309
Fax +1 312 923 8409
TBarron@jenner.com

**VIA EMAIL**

Michael W. Marvin, Esq.
Reichman Jorgensen LLP
750 Third Avenue
Suite 2400
New York, NY 10017
mmarvin@reichmanjorgensen.com

Re:   *Kove IO, Inc. v. Amazon Web Services*

Dear Michael:

This follows up on a few items we discussed on our call last Friday and responds to your August 18, 2020 letter.

**Kove's Document Production**

During our call, either you or Mr. Cardenas-Navia stated:

- Kove has produced all non-privileged documents responsive to AWS's document requests.

- To the extent Kove has documents responsive to AWS's subpoenas to OverX and/or Econnectix, those documents have been produced.

- All documents responsive to the subpoenas to Mr. Overton and Mr. Bailey have been produced and no documents have been withheld on privilege grounds.

- Kove has searched for responsive documents that pre-date the filing of the application that led to the '640 patent and that was the parent application for the '170 and '978 patents, but has found no documents.

- Kove is preparing to send an unspecified "small supplemental production."

- A production of documents from Arctide is "in the works."

- Kove has nothing to add to its privilege log.

- Kove will identify its ESI email custodians by August 28, 2020.

Please let me know if I have misunderstood these representations.

**Proposal For Discovery Schedule**

On Friday, we proposed that the parties agree that fact discovery not completed by Sept. 29, 2020 will simply resume during the post-*Markman* fact discovery period already built into the Court's current scheduling order. We informed you that our proposal was a practical solution to the on-going disruption caused by the pandemic and the reality that no in-person depositions or preparation sessions are likely to be able to occur before the end of 2020, at the earliest. We did not propose, as your letter appears to indicate, a unilateral extension of fact discovery that would only allow Kove, and not AWS, to pursue the discovery it believes is necessary. You said you would consider our proposal and get back to us. We would appreciate a prompt response so that we may raise this matter with the Court substantially in advance of the current September 29, 2020 deadline for the initial close of fact discovery.

**AWS's ESI Custodians**

In our call on Friday, you mentioned for the first time that Kove wanted additional ESI custodians beyond the five that we had identified a month earlier, on July 16, 2020. The custodians we identified were persons knowledgeable on the technology and finances for S3 and DynamoDB – the first two topics for which Kove indicated it was seeking custodians. On Friday, you asked AWS to identify additional custodians for three of the other four topics you proposed. Specifically, you indicated that Kove now wanted AWS to identify *for both Amazon S3 and DynamoDB* persons knowledgeable about:

- "marketing, advertising and customer support related to speed, scalability, and availability";
- "telemetry, usage data, and metrics regarding speed, scalability, and availability, including any customer testing (such as A/B testing)"; and
- "surveys, studies, analyses or purchase journey mapping relating to pricing, sales, and customer procurement and retention," including "any studies commissioned by AWS."

By our count, the number of custodians for these additional topics, likely different people for each product, may be six (assuming we can identify custodians on these topics). Together with the five persons we have already identified on Kove's first two topics, these additional ESI custodians would total eleven – six more than allowed under the Local Rules. Accordingly, please tell us which five of the eleven total topics you select. To the extent you wish to select any of these six additional topics to be among the five allowed by the Local Rules, we will need to identify appropriate custodians. Once you have identified the five topics and we have identified the individuals for those topics, we will run your five search terms and provide a hit report.

**Discovery Requests**

We also discussed Kove's discovery requests and documents Kove believes it has not yet received. As we explained at the outset of the call and as you know, Michael Werner has been the attorney from our firm most steeped in AWS's document collection and production efforts in

this case, and he is now on medical leave.  Consequently, we are following up on the collection of documents Mike initiated and will produce those documents expeditiously to the extent they exist.

Without responding point-by-point to your letter, which does not accurately set forth our agreements (and omits a few items), I summarize below the matters we discussed:

- You raised the issue of AWS's production of company-level profit-and-loss and cost information.  We wanted to let you know that we are reconsidering our position on this issue and are consulting with our client on it.  We will get back to you shortly on whether AWS will agree to produce this information.

- You asked for organizational charts for the AWS groups responsible for the three topics I set forth above relating to ESI.  You are undoubtedly aware that AWS is not organized along these specific lines, but we will inquire of our client and get back to you.

- We will produce license and other agreements related to S3 and DynamoDB by August 28, 2020, and will supplement AWS's response to Kove's Interrogatory No. 11, likely with a reference to those documents under Federal Rule of Civil Procedure 33(d).

- We will produce by August 28, 2020 documents showing storage and usage revenue for DynamoDB and discounts on pricing for DynamoDB from 2012 to today to the extent those documents exist.

- We will produce documents setting forth monthly revenue for DynamoDB going back to 2012, and will determine if that revenue can be broken down by data center.  We will also inquire if documents exist describing S3 revenue back to 2006 allocated by data center.

- We will inquire whether documents exist describing storage and usage revenue for Amazon S3 from before 2013.

- We will inquire whether documents exist describing benefits accruing to AWS from S3 or DynamoDB, such as cost reductions, additional sales and enhanced brand image.  I foresee some difficulty in identifying such documents given the vagueness of the request.

- We will supplement our response to Interrogatory No. 3 by September 4, 2020 regarding noninfringing alternatives (recognizing that this is mainly a topic for expert discovery).

- We will inform you of telemetry and usage data that has been produced to date.

- We will supplement AWS's response to Kove's Interrogatory No. 6 relating to allocation of costs.

- We will supplement AWS's response to Kove's Interrogatory No. 9 regarding how S3 and DynamoDB work together

Michael W. Marvin, Esq.
August 19, 2020
Page 4

We are, as always, happy to discuss these matters with you further.

Very truly yours,

*Timothy J. Barron*

Timothy J. Barron

TJB:rlu