IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KOVE IO, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-08175 |
| | ) | |
| | ) | |
| AMAZON WEB SERVICES, INC., | ) | Hon. Rebecca R. Pallmeyer |
| Defendant. | ) | |

## AMAZON WEB SERVICES, INC.'S OPENING CLAIM CONSTRUCTION BRIEF

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
aunikowsky@jenner.com

Terri L. Mascherin
Timothy J. Barron
Michael T. Werner
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
tmascherin@jenner.com
tbarron@jenner.com
mwerner@jenner.com

*Attorneys for Amazon Web Services, Inc.*

## TABLE OF CONTENTS

I.     LEGAL PRINCIPLES OF PATENT CLAIM CONSTRUCTION .....................................1

II.    ARGUMENT ............................................................................................................................2

    A.     "Location" .................................................................................................................2

    B.     "Location Information" ............................................................................................8

    C.     "Location Server" ..................................................................................................10

    D.     "Client" ..................................................................................................................14

    E.     "Based on a Hash Function" ..................................................................................16

    F.     "Hash Table" ..........................................................................................................22

    G.     "Data Pertaining to the Entity" .............................................................................23

    H.     "Redirect Message" ...............................................................................................24

III.   STIPULATION.......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aventis Pharma S.A. v. Hospira, Inc.*,
    743 F. Supp. 2d 305 (D. Del. 2010)................................................................17, 18

*Aylus Networks, Inc. v. Apple Inc.*,
    856 F.3d 1353 (Fed. Cir. 2017)...............................................................................13

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
    750 F.3d 1304 (Fed. Cir. 2014)...............................................................................21

*MasterMine Software, Inc. v. Microsoft Corp.*,
    874 F.3d 1307 (Fed. Cir. 2017)...............................................................................17

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008).................................................................................1

*Omega Eng'g, Inc., v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003)..........................................................................10, 11

*Personalized Media Commc'ns, LLC v. Apple Inc.*,
    952 F.3d 1336 (Fed. Cir. 2020)...............................................................................13

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2016)...........................................................................1, 19

*Rembrandt Data Techns., LP v. AOL, LLC*,
    641 F.3d 1331 (Fed. Cir. 2011)...............................................................................17

*Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*,
    824 F.3d 999 (Fed. Cir. 2016)..................................................................................20

*Samsung Elecs. Co. v. Elm 3DS Innovations, LLC*,
    925 F.3d 1373 (Fed. Cir. 2019)..................................................................................1

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*,
    753 F.3d 1291 (Fed. Cir. 2014)...............................................................................24

*Techtronic Industries Co. Ltd. v. ITC*,
    944 F.3d 901 (Fed. Cir. 2019)..................................................................................12

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
    135 S. Ct. 831 (2015)..................................................................................................1

*Triplay, Inc. v. Whatsapp, Inc.*,
    No. 13-1703-LPS-CJB, 2016 WL 3574012 (D. Del. June 30, 2016) ........................................5

*UltimatePointer, LLC v. Nintendo Co.*,
    816 F.3d 816 (Fed. Cir. 2016) ................................................................................................17

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ..................................................................................................1

*Wasica Fin. GmbH v. Continental Auto. Sys., Inc.*,
    853 F.3d 1272 (Fed. Cir. 2017) ..............................................................................................24

*Wi-Lan Inc. v. LG Elecs., Inc.*,
    No. 18-cv-01577-H-BGS, 2019 WL 2270434 (S.D. Cal. May 28, 2019) ................................6

**Statutes**

35 U.S.C. § 101 ........................................................................................................................16

Defendant Amazon Web Services, Inc. ("AWS") submits this Opening Claim Construction Brief with respect to Plaintiff Kove IO, Inc.'s ("Kove") asserted claims of U.S. Patent Nos. 7,814,170 ("the '170 patent"), 7,103,640 ("the '640 patent"), and 7,233,978 ("the '978 patent").

## I.     LEGAL PRINCIPLES OF PATENT CLAIM CONSTRUCTION

When the parties dispute the scope of a claim term, "the court, not the jury, must resolve that dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). The ultimate conclusion in claim construction is a question of law. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). However, "subsidiary factfinding is sometimes necessary," such as when the court must understand the science behind technical terms. *Id.* at 838.

"Claim terms generally are construed in accordance with" their "ordinary and customary meaning." *Samsung Elecs. Co. v. Elm 3DS Innovations, LLC*, 925 F.3d 1373, 1377 (Fed. Cir. 2019) (quotation marks omitted). Courts will "deviate from a claim term's ordinary meaning," however, "when a patentee sets out a definition and acts as its own lexicographer or when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Id.* at 1377-78 (quotation marks omitted).

In claim construction, the Court must look first to "intrinsic" evidence: the claim language, specification, and prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-15 (Fed. Cir. 2016). The specification "is the single best guide to the meaning of a disputed term." *Id.* at 1315. Courts may also look to extrinsic evidence, such as "expert and inventor testimony, dictionaries, and learned treatises," *id.* at 1317, but may not use it to vary or contradict the intrinsic evidence. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1585 (Fed. Cir. 1996). An expert "may explain terms of art and the state of the art at any given time, but they cannot be used to prove the legal construction of a writing." *Teva Pharms. USA, Inc.*, 789 F.3d at 1339.

## II.    ARGUMENT

### A.    "Location"

| Claim(s) | Term | AWS Proposed Construction | Kove Proposed Construction |
|---|---|---|---|
| • '170 patent, claims 1, 2, 6, 8, 12, 15;<br>• '640 patent, claims 17, 18, 24; and<br>• '978 patent, claims 1, 3, 6, 10, 14, 17, 23, 30, 31 | "location" | "An encoding that is a member of a set of associations with an identifier in a location server, and that is used to directly contact a server storing data and retrieve the data." | "An encoding that is a member of a set of associations with an identifier in a location server, and that specifies a location of data pertaining to the entity identified by the identifier." |

The asserted claims refer to "locations" of data.  The parties dispute what that means.  The Court should hold that a "location" of data is an encoding that is used to *directly* contact the server storing data and retrieve the data.

### 1.    Background of dispute

The patents relate to techniques for retrieving data from a network.  The basic idea is that the location of data is stored separately from the data itself.  Figure 11 of the '640 and '170 patents (below), and the similar Figure 18 of the '978 patent, depict the patented system's architecture:



*Fig. 11*        NDTP Server Constellation Context

Although the claims vary, they generally recite that "location servers" store "locations" associated with identifiers. (In the diagram, the "location servers" are referred to as "NDTP Server Constellation"—the patents use "NDTP server" and "location server" interchangeably.) In addition, data repositories (in the diagram, "Repository1") store data associated with those identifiers. A client (in the diagram, "Client1") wants to retrieve data associated with an identifier. To do so, the client needs to determine the data's "location." Thus, the client sends a "location query" to a "location server," asking for the "location" of the data associated with the identifier. If the "location server" contains a "location" associated with that identifier, it returns a "location message" containing the desired "location." (In the diagram, this exchange is shown by the arrows between "Client1" and "NDTP Server Constellation.") The client then requests data from the data repository at that "location," which returns the data (in the diagram, "data item transfer").

All of the asserted claims require "location servers" to store "locations" or "location information." The parties dispute the scope of the term "location"—specifically, whether a "location" must itself be used to retrieve data directly from where the data is stored, or whether information inputted into a different system to *retrieve* a "location" is *also* a "location."

Consider two concrete examples that illustrate the dispute. In the first example, a client sends a message to a server. The server responds with a message containing a network address. The client then uses the network address to contact a data repository storing sought-after data. In that scenario, the network address is undisputedly the "location" of the sought-after data.

In the second example, a client sends a message to Server A. Server A then transmits information back to the client. The client then uses that information to send another message, this time to Server B. Server B returns a network address to the client. The client uses that network address to contact a data repository storing sought-after data. The question is: in this example,

what is the "location" of the sought-after data?  AWS's answer is the same as before: the network address used to contact the data repository is the "location" of the sought-after data.

Kove, however, contends that the information retrieved from Server A, and sent to Server B, is *also* a "location" of the sought-after data.  Kove is incorrect.  "Location" does not encompass information inputted into a different system in order to retrieve the actual location.

2.  Claim construction analysis

A.  *The parties agree that the construction of "location" should recite "an encoding that is a member of a set of associations with an identifier in a location server."*

Each patent includes a paragraph that begins as follows: "The following terms are used to describe the operation of the presently preferred" network distributed tracking protocol or distributed database system.  ('170 patent, 4:8-10, JA0016; '640 patent, 4:5-7, JA0041; '978 patent, 4:19-20, JA0073.)  The paragraph then describes several claim terms, including "location."  Specifically, it recites that a "location" is "a member of a set of associations with an identifier in an NDTP server."[1]  ('978 patent, 4:28-30, JA0073.).  Both parties agree that this statement is an express narrowing of claim scope, and the Court's construction of "location" should therefore recite "a member of a set of associations with an identifier in a location server."  In other words, to satisfy the claim, a "location" must be (a) associated with an identifier, and (b) stored on a location server, even though the plain meaning of "location" would not encompass those narrowing limitations.

_____

[1] The description of "location" in the '640 and '170 patents is slightly different from the description in the '978 patent.  The '640 and '170 patents refer to a location as a "string," while the '978 patent refers to it as an "encoding, for example a string."  ('170 patent, 4:12-14, JA0016; '640 patent, 4:9-11, JA0041; '978 patent, 4:28-30, JA0073.)  This distinction reflects the fact that the '978 specification describes embodiments of "location" that do not appear in the '640 and '170 specifications.  *See infra* n.2.  As explained below, however, both parties propose using a single construction for all three patents.  *Id.*

4

B.  *The parties agree that the construction of "location" must include additional language clarifying what a "location" actually is.*

Both parties agree that the analysis cannot stop there.  The phrase "a member of a set of associations with an identifier in a location server" recites what a "location" must be *associated with* (an "identifier"), and where a "location" must be *stored* (a "location server").  But it does not resolve what a location *is*.  To give an analogy, this phrase is like a statement that an "automobile must be associated with an owner, and stored in a garage."  Such a statement narrows the scope of "automobile," because the plain and ordinary meaning of "automobile" encompasses automobiles that are abandoned or stored in the street.  But this statement does not resolve, for instance, whether a motorcycle or a tow truck is an "automobile."

Moreover, after reciting that a "location" is stored on an "NDTP server," the above-quoted paragraph states that an "NDTP server" is, in relevant part, "a network-attached component that maintains a set of identifier/location mappings."  ('170 patent, 4:17-20, JA0016; '640 patent, 4:14-18, JA0041; '978 patent, 4:34-38, JA0073.)  Thus, it states that a "location" is stored on a "server," and a "server" stores "locations."  This circular statement does not resolve what a "location" is.

Both parties, therefore, propose additional language for their proposed constructions.  The sole dispute between the parties concerns what additional language to use.

Kove's proposed additional language is still circular: it defines a "location" in part as an encoding that "specifies the location of data."[2]  Such a construction is useless in resolving disputes over the scope of "location."  *See, e.g.*, *Triplay, Inc. v. Whatsapp, Inc.*, No. 13-1703-LPS-CJB,

---

[2] Kove's proposed construction also uses the phrase: "location of data *pertaining to the entity identified by the identifier*."  AWS agrees with Kove that the "data" in question is the "data pertaining to the entity identified by the identifier."  But the claims do not refer to any other type of "data," and AWS is concerned that the phrase "data pertaining to the entity identified by the identifier" may prove unwieldy to the jury.  AWS therefore proposes simply using the word "data."

5

2016 WL 3574012, at *15 (D. Del. June 30, 2016) (noting that proposed construction "includes the very term to be construed, … a circular result that is disfavored," and collecting cases); *Wi-Lan Inc. v. LG Elecs., Inc.*, No. 18-cv-01577-H-BGS, 2019 WL 2270434, at *18-19 (S.D. Cal. May 28, 2019) (rejecting "proposed construction" that "is circular because it uses the words 'traffic shaping' and 'rate' within its proposed construction for the term 'traffic shaping rate'"). A construction is needed that resolves what a location *is*, and that does not repeat the word "location."

C. *AWS's construction conforms to the plain meaning of "location."*

The Court should adopt AWS's proposed construction, which requires that the "location" of data be "used to directly contact a server storing data and retrieve the data." This construction clarifies that information that is merely inputted into a different system component, which returns the *actual* location, is not *also* a location.

AWS's construction is consistent with the plain meaning of "location." A "location" requires knowing where something is. For instance, a courthouse's address is a "location." But a courthouse's telephone number is not a "location," even though one can dial the number and ask for the address. Indeed, if information that can merely be used to *access* a "location" were *itself* a "location," then the scope of "location" would be limitless—anything used to look up anything else that after any number of steps would lead to an actual location would itself be a "location." In the above analogy, not only would the courthouse's address be a location, but also the telephone number; and because *that* is a "location," any information used to access the telephone number, such as telephone directory, would *also* be a "location." That is not what a "location" means.

The same is true in networks. If a client wants to retrieve data, then the location is what is used to directly contact the server storing the data and retrieve the data. An input to a different system used to retrieve the actual location is not also a "location."

6

AWS's construction comes directly from the '170 and '640 specifications: "Once the client 112 has the location string for a particular unit of data, the client 112 **contacts and retrieves information directly** from the data repository 114." ('170 patent, 17:6-9, JA0023; '640 patent, 16:56-59, JA0047 (emphasis added)). The '978 specification includes similar language: "In one embodiment,[3] when a client queries the NDTP server for information pertaining to an entity, the NDTP server preferably returns a list of all locations for the specified entity. **The client then can directly access the various locations**, relieving the NDTP server of any further involvement in the transaction...." ('978 patent, 4:61-67, JA0073 (emphasis added).) Thus, in the specifications, a "location" is *itself* used to *directly* contact the server storing the data and retrieve the data There is no indication in any of the specifications that "location" stretches more broadly to cover information indirectly used to retrieve an actual location.

AWS's proposed construction is also consistent with the specifications' examples of "locations." The specifications state that a "location" or "location specifier" "might be an Internet machine name, and a TCP/IP port number for a relational database server." ('170 patent, 4:53-57, JA0016; '640 patent, 4:53-57, JA0041; '978 patent, 8:10-13, JA0075.) "Port numbers" are used to "open[] a connection with a server." ('170 patent, 11:62-64, JA0020; '640 patent, 11:41-43,

---

[3] The next sentence in the '978 specification describes another embodiment which is not described in the specifications of the other patents: "Alternatively, the location may also be one or more pieces of data identifying the physical location of the entity identified by the identifier." ('978 patent, 5:1-3, JA0074.) However, AWS proposes using a single construction across all three patents for a pragmatic reason: the accused products, as well as the relevant prior art, use "location" in the sense of "location" on a network, not physical location. It would needlessly confuse the jury to propose a broader construction for "location" in the '978 patent than the other patents, when that distinction reflects embodiments not at issue in the case. Kove disagrees with AWS's construction, but similarly proposes a single construction across all three patents. By proposing this construction, AWS does not intend to waive any arguments based on the '978 patent's discussion of physical locations, such as on whether the '978 patent may claim priority to earlier applications.

JA0045; '978 patent, 14:25-26, JA0078.) In other words, the location must consist not only of the machine *name*, but also a *port number*—information that is needed to communicate directly with a server. Likewise, the specifications recite that a "location" can be a Uniform Resource Locator (URL). ('170 patent, 4:53-57, JA0016; '640 patent, 4:53-57, JA0041; '978 patent, 8:10-13, JA0075.) The '978 specification elaborates that "the location may be a URL for the specific application server 156 at which the substantive content may be accessed." ('978 patent, 21:60-64, JA0082.) This again shows that the "location" is directly used to access the server storing the data.

Further, the specifications show that information used to *retrieve* the "location" of data is not *itself* the "location" of that data. Several claims include "redirect" limitations. For instance, claim 18 of the '640 patent recites a "redirect message" that "contains redirect information for use by the client to calculate a location of a different data location server" which "contains the location string." ('640 patent, 22:65-23:2, JA0050-51.) These limitations distinguish between the "location string"—which contains the location of sought-after data—and "redirect information for use by the client to calculate a location of a different data location server"—which is used to obtain the "location string" for the sought-after data. This shows that the "redirect information for use by the client to calculate a location of a different data location server" is not *itself* the "location string" for the sought-after data. The specifications recite a similar distinction between redirection pointers and locations. ('640 patent, 14:36-38, JA0046 (A "message may contain any mixture of real data location strings and NDTP server redirection pointers.").) Thus, a mere redirection pointer that assists in finding the location of data is not itself the location of that data.

### B.    "Location Information"

| Claim(s) | Term | AWS Proposed Construction | Kove Proposed Construction |
|---|---|---|---|
| • '170 patent, claims 1, 2, 6, 8, 15; | "location information" | "One or more identifiers and | 170/640: "Information pertaining to one or more locations of |

| Claim(s) | Term | AWS Proposed Construction | Kove Proposed Construction |
|---|---|---|---|
| • '640 patent, claims 17, 18, 24; and<br>• '978 patent, claims 1, 3, 6, 10, 14, 17, 31 | | their associated locations." | data and/or the identities of one or more location servers."<br><br>978: "One or more identifiers and their associated locations." |

Several claims require that location servers store "location information." The parties agree that in the '978 patent, "location information" refers to "one or more identifiers and their associated locations." This is clear from claim 1, which recites that "the location information compris[es] an identifier and at least one location string associated with the identifier." ('978 patent, 25:28-30, JA0084.) The parties differ, however, on the construction of "location information" in the '640 and '170 patents. AWS contends that "location information" means the same thing across all three patents. Kove, by contrast, proposes a different, much broader construction for "location information" in the '640 and '170 patents. Crucially, Kove's proposed construction does not require that "*location* information" be, or even include, a *location*. According to Kove, any information merely "pertaining to one or more locations of data and/or the identities of one or more location servers" is "location information." Kove's construction is incorrect.

First, Kove's construction conflicts with the plain language of the claim. "Location information" must include a location. If a lawyer calls chambers and requests "location information" for a hearing, the lawyer is asking for the location of the hearing, not merely information "pertaining to" the location "and/or" other information. The same is true in the patents. If a client requests "location information" from a "location server" for purposes of retrieving data at that location, the client is requesting the location so it can retrieve the data, not merely information "pertaining to"

the location.  Moreover, Kove's inclusion of the phrase "and/or the identities of one or more location servers" in its proposed construction is inexplicable.  The "identity of one or more location servers" is not a "location."

Second, Kove's construction conflicts with the principle that courts "presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning."  *Omega Eng'g, Inc., v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003).  Here, the patents are related: the '978 patent is a continuation-in-part of the '640 patent, and the '170 patent is a continuation of the '640 patent.  There is not the slightest indication that "location information" carries a broader meaning in the '640 and '170 patents than in the '978 patent.

Kove's construction comes out of nowhere.  Kove insists that in the '640 and '170 patents, "location information" encompasses some penumbra of additional information related to, but distinct from, the location.  But the specifications do not even hint at a concept of "location information" broader than the location.  Indeed, the phrase "location information" never appears in the '640 and '170 specifications.  Instead, they refer only to locations.  This confirms what is clear from the claim language and the '978 patent: "location information" requires a location.

### C.    "Location Server"

| Claim(s) | Term | AWS Proposed Construction | Kove Proposed Construction |
|---|---|---|---|
| • '170 patent, claims 1, 6, 8, 12, 15; <br> • '640 patent, claims 17, 18, 24; and <br> • '978 patent, claims 1, 3, 6, 10, 14, 17, 23, 30, 31 | "location server" | "A network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to request messages from clients, and that does not store data to which locations pertain." | "A network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients." |

The specifications state that in the operation of the preferred embodiment, an "NDTP server" or "server" is "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to … request messages from … clients." ('170 patent, 4:17-20, JA0016; '640 patent, 4:14-18, JA0041.) The parties agree that this should be part of the construction of "location server."

AWS also proposes including the following clarifying phrase to the construction of "location server": "and that does not store data to which locations pertain." This phrase is intended to clarify that a location server cannot *also* serve as a data repository.

A "negative limitation" may be added to a claim construction based on an "express disclaimer or independent lexicography in the written description" supporting the limitation. *Omega Eng'g, Inc.*, 334 F.3d at 1323. Here, both conditions are satisfied. The specification makes clear that these are separate components. Moreover, during prosecution, the inventors argued that the invention was patentable over the prior art because the locations were isolated from the data. Under settled principles of claim construction, that express disclaimer limits the scope of the claims.

The specifications make clear that the "location servers" are separate components from the "data repositories." The '978 patent's title is "Method and apparatus for managing location information in a network separate from the data to which the location information pertains"—a strong indication that the location information must be separate from the data. Similarly, according to the '170 and '640 specifications, the patented system includes both "a data repository for storing data" and "a first server entity operative to locate data … which may be coupled to a client entity and/or data repository." ('170 patent, 2:33-38, JA0015; '640 patent, 2:31-36, JA0040.) Moreover, "[w]hen data for a particular entity is added to a data repository, the NDTP server is updated to indicate an association between the entity key and the data repository's data location specifier."

('170 patent, 4:61-64, JA0016; '640 patent, 4:62-65, JA0041.) These statements show that the data repositories and the location servers are separate components.

Moreover, the whole point of the invention described in these patents is to seek location information from a server that is *not* a data repository. The first paragraph of the patents' "background" section is as follows:

> Data records can reside in many different places. In existing retrieval systems and methods, a client seeking information sends a request to a server. Typically, only files that are statically associated with that server are returned. Disadvantageously, the search is also usually restricted to a local, identified system. The search is thus conducted only where the server knows in advance to look.

('170 patent, 1:36-43, JA0015 (emphasis added); '640 patent, 1:34-41, JA0040; '978 patent, 1:38-44, JA0072 (similar).) Thus, the premise of the invention is that it is disadvantageous for a client to seek data directly from a server storing data. And, the improvement over the prior art is that the client does not directly contact the server storing data, but contacts a location server first. This necessarily implies that the location server is not storing the data. *Cf. Techtronic Indus. Co. v. ITC*, 944 F.3d 901, 907 (Fed. Cir. 2019) (when a specification "discloses as the invention a garage door opener improved by moving the passive infrared detector from the head unit to the wall console," it "disavows coverage of wall consoles lacking a passive infrared detector").

The patents then state:

> One commonly asked question in a data repository environment is: Where is data associated with a particular entity in a distributed data collection? The data location is a key question when a distributed data collection has highly dynamic data distribution properties.
>
> In networked environments where there are a large number of data repositories and any particular entity does not store data in all the repositories, a mechanism is needed that would permit queries to be directed only at data repositories with relevant information. … Such a system would support **on-the-fly addition and removal of data repositories from a distributed data collection seamlessly and without the need to reprogram the client and server participants**.

12

('170 patent, 1:62-2:10, JA0015 (emphasis added); '640 patent, 1:61-2:8, JA0040; *see also* '978 patent, 1:63-2:10, JA0072 (similar).)  Thus, the client can keep contacting the same location server, even if repositories are continually added and removed.  This distinction between dynamic repositories, and stable location servers, would make no sense if the location server *was* a repository.

Any doubt on this score is resolved by the prosecution history.  "[W]hen the patentee unequivocally and unambiguously disavows a certain meaning to obtain a patent, the doctrine of prosecution history disclaimer narrows the meaning of the claim consistent with the scope of the claim surrendered."  *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) (quotation marks omitted).  Even when statements in a prosecution history are "inadequate to give rise to a disclaimer," they can still "inform[] the meaning of the disputed claim phrase."  *Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1345 (Fed. Cir. 2020).  Here, in the prosecution history, the inventors disclaimed any argument that "location servers" can store data.

During prosecution, the Examiner rejected numerous claims of the '978 patent in view of a reference called Lumelsky.  (JA1364.)  To overcome that rejection, the patentee argued that "the cited Lumelsky reference relates to manipulation of the actual data … rather than just the location information for that data."  (*Id.*)  The patentee then specifically addressed claims 17 and 31 of the '978 patent,[4] both of which Kove asserts in this case.  The patentee insisted that claim 17 "involves isolating specifically the location information from the end-point data itself and making changes to how the location information is managed, not the end-point data…."  (*Id.* at JA1365.)  "In contrast, … Lumelsky only focuses on replication of data objects rather than on management of specifically location information separated from the data objects themselves."  (*Id.*)  Likewise, the

---

[4] The prosecution history refers to these claims as claims 24 and 45, respectively, but they were renumbered as claims 17 and 31 in the issued patent.  (JA1385.)

13

patentee argued that claim 31 "distinguishes over Lumelsky because Lumelsky fails to teach or suggest a system for manipulating location information separately from the data to which the location data pertains." (JA1367-68.) The Examiner's Statement of Reasons for Allowance expressly relied on these representations. (JA1383.)

Kove overcame the prior art by arguing that its invention "involves isolating specifically the location information from the end-point data itself." (JA1365.) Thus, the Court should adopt AWS's construction, under which location servers do not store data to which locations pertain.

**D.    "Client"**

| Claim(s) | Term | AWS Proposed Construction | Kove Proposed Construction |
|---|---|---|---|
| • '170 patent, claim 15;<br>• '640 patent, claims 17, 18; and<br>• '978 patent, claim 14<br><br>In addition, "client" appears in both parties' proposed construction of "location server." | "client" | This claim term need not be construed; plain and ordinary meaning may be used. | "A network-attached component that initiates update or lookup of identifier/location mappings from a location server with location request messages." |

In AWS's view, "client" should not be construed. The Court should apply the plain and ordinary meaning of a "client." Although the parties dispute whether certain computers on AWS's system qualify as "clients," that dispute is best resolved at summary judgment or at trial, with a full factual picture of how AWS's system works. At the recent deposition of a co-inventor, when asked what "client" means, the co-inventor responded: "Well, client, as a term, has really only meaning in context … of something. It doesn't really mean anything in isolation." Ex. 1 (Bailey Dep. 93:8-11.) AWS agrees that the Court should apply the plain meaning of "client" to the facts, rather than construing it in isolation.

14

Kove proposes to construe "client" as a "network-attached component that initiates update or lookup of identifier/location mappings from a location server with location request messages." (*See* '170 patent, 4:14-17, JA0016; '640 patent, 4:11-14, JA0041;'978 patent, 4:30-34, JA0073.) The effect of this construction is to narrow the term "client" from its ordinary meaning.

In AWS's view, this construction would not be helpful to the jury because all of the claims that recite the word "client" expressly require that the "client" transmit location request messages to location servers seeking identifier/location mappings. For example, claim 14 of the '978 patent recites: "receiving a location query from a client at one of the plurality of location servers" and "sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query." Moreover, the parties agree that the construction of "location information" in the '978 patent is: "One or more identifiers and their associated locations." Thus, all of the narrowing limitations in Kove's proposed construction of "client" already appear in the claim language. Defining "client" to include limitations that already appear separately in the claims is redundant and will confuse the jury.

Further, both parties' proposed construction of "location server"—a term that appears in all asserted claims—states: "A network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from **clients**." Thus, the requirement that clients send location request messages to servers with identifier/location mappings is already embedded in the construction of "location server." In light of this, it is unnecessary to adopt a construction of "client" that includes this narrowing limitation.

15

### E.     "Based on a Hash Function"

| Claim(s) | Term | AWS Proposed Construction | Kove Proposed Construction |
|---|---|---|---|
| • '170 patent, claim 1 | "the portion of the data location information included in a corresponding one of the data location servers is **based on a hash function used to organize the data location information across the plurality of data location servers**, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers **based on the hash function applied to the identifier string**" | Indefinite.  Alternatively, if the Court determines that the term can be construed:<br><br>"The portion of the data location information included in a corresponding one of the data location servers is **based on a hash function applied to an identifier string in which the function result organizes the data location information by giving an index into a data structure that provides the location of an indicated location server**, and each one of the data location servers is configured to determine at least one of the plurality of data location servers **by applying the hash function to the identifier string in which the function result is an index into a data structure on the location server containing the location of an indicated location server for the identifier string**." | Not indefinite<br><br>"The portion of the data location information included in a corresponding one of the data location servers is **based on a hash function that maps identifier strings to one or more of the data location servers**, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers **based on the hash function applied to the identifier string**." |

1.   Claim 1 of the '170 patent is indefinite.

The Patent Act states that a patent may be obtained on a "process, machine, manufacture, or composition of matter."  35 U.S.C. § 101.  The Federal Circuit has held that claims must fall into only one of those categories.  If a claim mixes method steps (which are part of a "process") and apparatus components (which are part of a "machine" or "manufacture"), it is indefinite.

16

For example, in *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331 (Fed. Cir. 2011), a claim was directed to a "data transmitting device." *Id.* at 1339. But one of its limitations was a method step: "transmitting the trellis encoded frames." *Id.* The Federal Circuit applied the principle that "reciting both an apparatus and a method of using that apparatus renders a claim indefinite." *Id.* The court declined to "redraft Rembrandt's claim," holding that "courts may not redraft claims… to sustain their validity." *Id.* at 1339-40 (quotation marks omitted).

By contrast, an apparatus claim is not indefinite if it includes limitations that merely recite *capabilities*, as opposed to *actions*, of the claimed apparatus. For instance, in *UltimatePointer, LLC v. Nintendo Co.*, 816 F.3d 816 (Fed. Cir. 2016), the claim recited "an image sensor, said image sensor generating data" and a "processor … to receive said generated data." *Id.* at 819. The defendant argued that the claim was indefinite under *Rembrandt* because it combined an apparatus limitation ("image sensor") with a method step ("generating data"). The Federal Circuit disagreed, reasoning that "the 'data generating' limitations only indicate that the associated structures have this capability (for example, the image sensor and processor in claim 1) and do not require that any data be actually generated by the user." *Id.* at 827; *see also MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307 (Fed. Cir. 2017) (although claim "includes active verbs—presents, receives, and generates—these verbs represent permissible functional language used to describe capabilities of the 'reporting module'"). *Id.* at 1307, 1315.

*Aventis Pharma S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305 (D. Del. 2010), applies those principles. In that case, the claim was directed to a composition, but also included the following limitation: "whereby said composition is **used to** form" a solution. *Id.* at 320 (emphasis added). The court found the claim indefinite. It explained that "the disputed claim language … does not merely provide the context in which the claimed composition is intended to be used." *Id.* at 329.

"On the contrary, … the claimed stock solution … actually *is used* to form an injectable solution." *Id.* The court observed that the same claim later included a limitation stating that "the injectable solution must be '*capable of* being injected without anaphylactic or alcohol intoxication manifestations.'" *Id.* The court concluded that "the inventors did not intend for 'forms or is used to form' to have the same meaning as 'capable of' appearing in the same claim." *Id.*

The Court should hold that claim 1 is indefinite. *Aventis*'s reasoning resolves this case. Claim 1 is an apparatus claim—it is directed to a "system." But, it includes a limitation with virtually identical language to the limitation in *Aventis*: "a hash function **used to** organize the data location information across the plurality of data location servers." As in *Aventis*, that "used to" limitation recites an action, not a system component. Moreover, as in *Aventis*, the "used to" limitation is immediately adjacent to a different limitation that plainly refers to a capability rather than an action: "each one of the data location servers is **configured to** determine the at least one of the plurality of data location servers." Because the inventors combined an action ("used to") with a capability ("configured to") in the same claim, the claim is indefinite.

>    2. <u>If the Court determines claim 1 of the '170 patent can be construed, it should be construed in accordance with the specification.</u>

Claim 1 of the '170 patent requires that "location information" be "organize[d]," and a "location server" be "determine[d]," "*based on a hash function*." Under AWS's construction, the "identifier string" is inputted into a hash function. The function result is an index into a data structure that allows the "data location server," containing the desired information, to be found. For example, suppose the "identifier string" was "Amazon" and the hash function's output was "5." This would mean that the desired information would be at location "5" in the data structure— for instance, the fifth row of a table. Thus, the hash function result identifies where in a data structure to find the information. Ex. 2, ¶ 12.

The basis for this construction is straightforward. The claim language itself is ambiguous. AWS's construction conforms to the algorithm in the specification, which was the standard way of using hash functions to organize information at the time of the patents, and which technical dictionaries from the time of the patents cite as the definition of "hashing" or a "hash function." A broader construction, which would encompass other ways of using hash functions, would result in the claim being invalid for lack of written description and enablement. Thus, the Court should apply the canon that ambiguous claims may be construed narrowly to preserve validity.

First, the claim language is ambiguous. As Dr. Mitzenmacher explains, there are multiple ways of organizing information that use hash functions, often in conjunction with other computations. *Id.* ¶ 24. Yet, the claim language does not encompass *all* such ways of organizing information. Instead, the phrase "*based on* a hash function" shows that the hash function must be the *basis* for the organization of the location information and the determination of the location server. Therefore, the Court should construe the claim to clarify which such ways of organizing information satisfy the "*based on* a hash function" requirement.

Second, AWS's construction reflects how a skilled artisan would have understood the claim language at the time of the invention. In the algorithm captured by AWS's proposed construction, the hash function clearly is the basis for organizing the location information and determining the location server—the output of the hash function tells you exactly where to look to determine the location server which contains the location information.

Further, at the time of the patents, this was the standard way of organizing information "based on a hash function." *Id.* ¶ 20. Indeed, Dr. Mitzenmacher cites four different technical dictionaries that define "hash function" or "hashing" as requiring the output of the hash function to be the index into a data structure. *Id.* ¶¶ 16, 18; *Phillips*, 415 F.3d at 1322-23 ("[J]udges are

free to consult dictionaries and technical treatises ... when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents."). AWS's proposed construction of the "hash function" limitation simply reiterates the definitions in those technical dictionaries.

AWS's construction also conforms to the specification, which identifies only one way of organizing location information "based on the hash function"—the way captured in AWS's construction. ('170 patent, 15:12-35, JA0022; '640 patent, 14:64-15:21, JA0046-47; '978 patent, 17:15-40, JA0080.) ("The appropriate NDTP server is selected from the table in the NDTP_RDR_RSP message by applying a well-known function to the identifier string and using the function result as an index into the NDTP server table. The well-known function preferably applied is the hashpjw function ...."); Ex. 2, ¶¶ 11-15.

Third, a broader construction, which would capture other ways of using hash functions to organize information, would invalidate the claim. The specification does not describe any other way of using hash functions to organize information. Further, many of the techniques described in Dr. Mitzenmacher's declaration are cutting-edge techniques that would not have been known to a skilled artisan at the time of the patents. *Id.* ¶ 26. If the claim is construed to encompass those additional techniques, it would be invalid for lack of written description and enablement.

Although courts may not rewrite claims to avoid invalidation, they may construe ambiguous claims narrowly when a broader construction would invalidate them. *See, e.g.*, *Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*, 824 F.3d 999, 1004 (Fed. Cir. 2016) ("Because the specification makes no mention of wireless communications, construing the instant claims to encompass that subject matter would likely render the claims invalid for lack of written description.

…. The canon favoring constructions that preserve claim validity therefore counsels against construing 'communications path' to include wireless communications."). Here, AWS's construction of "based on a hash function" would not require rewriting the claim. Rather, AWS simply proposes using the definition of "hashing" or "hash function" that appears in multiple technical dictionaries and that is a perfect fit to the specification. The Court should apply the canon favoring constructions that preserve claim validity and adopt AWS's proposed construction.

The Court should reject Kove's proposed construction. Kove proposes construing the phrase "based on a hash function used to organize the data location information across the plurality of data location servers" as "based on a hash function that maps identifier strings to one or more of the data location servers." Although the scope of this construction is unclear to AWS, this appears to recite a scheme in which the output of the hash function identifies the server, as opposed to being an index to a table—*e.g.*, in the above example, the information would appear on server "5," rather than on whatever server is identified at location "5" in a data structure. Ex. 2, ¶ 22. This construction is incorrect because it does not capture the sole embodiment recited in the specification, in which the hash function's output is an index to a table. *Id.* ¶ 23; *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1311 (Fed. Cir. 2014) ("We normally do not construe claims in a manner that would exclude the preferred embodiment, especially where it is the only disclosed embodiment.") To the extent Kove intends for its proposed construction to stretch more broadly, it is ambiguous. Indeed, it simply replaces the ambiguous claim language ("based on a hash function used to organize") with different ambiguous language ("based on a hash function that maps"), while providing no guidance as to which ways of using hashing fall within the claim. Ex. 2, ¶ 25.

### F. "Hash Table"

| Claim(s) | Term | AWS Proposed Construction | Kove Proposed Construction |
|---|---|---|---|
| • '170 patent, claims 2, 12;<br>• '640 patent, claim 24; and<br>• '978 patent, claim 6 | "hash table" | "A data structure in which a hash function is applied to an input and the function result is used as an index to a table in which the desired output can be found." | "A data structure that stores values in a table, where values are stored and retrieved based on the output of a hash function." |

AWS contends that in a "hash table," the output of a hash function is an index into the table, such as a particular row and column of the table. Based on that index, information can be retrieved from the table. The Court should adopt this construction because it is the standard technical definition of a hash table. Ex. 2, ¶ 29.

As Dr. Mitzenmacher's declaration explains, technical dictionaries from the time of the patent define "hash" or "hash functions" as requiring the output of a hash function to be used as an index. *Id.* ¶¶ 16, 18; *see supra,* at II.E. Dr. Mitzenmacher also catalogues eight technical treatises that use "hash table" in the same way as AWS's proposed construction. *Id.* ¶ 29. These sources demonstrate that AWS's construction is the standard technical meaning of a "hash table."

Further, the specification recites that "[t]he appropriate NDTP server is selected from the table in the NDTP_RDR_RSP message by applying a well-known function to the identifier string and using the function result as an index into the NDTP server table. The well-known function preferably applied is the hashpjw function." ('170 patent, 15:12-35, JA0022; '640 patent, 14:64-15:21, JA0046-47; '978 patent, 17:15-40, JA0080 (similar).) AWS's construction conforms to the algorithm described in the specification. Ex. 2, ¶ 28.

Finally, several claims, such as claim 6 of the '978 patent and claim 12 of the '170 patent, refer to a string store being "indexed by a hash table." ('170 patent, 22:12-14, JA0025; '978 patent, 26:1-3, JA0084.) This language shows that the output of the hash function is an index into a table.

Although the scope of Kove's construction is unclear, it appears intended to encompass some broader set of tables in which hashing is used in other ways. Ex. 2, ¶¶ 30-31. This construction diverges from the standard technical meaning of "hash table." In addition, it would encompass ways of using hashing that are not described in the specification. The Court should reject Kove's position and construe "hash table" in line with its standard technical definition.

## G. "Data Pertaining to the Entity"

| Claim(s) | Term | AWS Proposed Construction | Kove Proposed Construction |
|---|---|---|---|
| • '170 patent, claim 6; '978 patent, claim 31 ("data … pertaining to the entity"); and <br> • '978 patent, claim 1 ("data pertaining to the entity") | "data … pertaining to the entity" / "data pertaining to the entity" | "Data pertaining to a person or thing distinct from that data." | "Data pertaining to a person or thing (real, digital, or abstract)." |

Several asserted claims require a location of "data" "pertaining to the entity." They further require that the "identifier" identify the "entity," as opposed to the data. The parties disagree on whether, in these claims, the "data" must be distinct from the "entity." Kove's position is that the "data" and the "entity" can be the same thing. AWS contends that the "data" and "entity" must be distinct, and the identifier must identify the entity, not the data.

AWS's position follows from the plain language of the claim. The phrase "data pertaining to the entity" implies an entity distinct from the data. In ordinary English, one would not say that data (or anything else) "pertains" to itself.

Further, Kove's position improperly rewrites the claim in two ways. First, Kove would

improperly render the "pertaining to the entity" limitation superfluous. The claims require a location of "data" "pertaining to the entity." Yet under Kove's position, any time there is "data," the "data pertaining to the entity" limitation is automatically satisfied, because the "data" pertains to itself. This would nullify the inventors' inclusion of a distinct "pertaining to the entity" limitation. *See Wasica Fin. GmbH v. Continental Auto. Sys., Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017) ("It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous."). Second, the claim includes two different terms—"data" and "entity"—and requires that the "identifier" identify the entity rather than the data. Kove would rewrite the claim and require that the "identifier" identify the data. Rewriting the claim in this manner is impermissible. *See, e.g.*, *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1301 (Fed. Cir. 2014).

AWS's position is also consistent with the specifications. The patents purport to solve the following problem: "In networked environments where there are a large number of data repositories and any particular entity does not store data in all the repositories, a mechanism is needed that would permit queries to be directed only at data repositories with relevant information." ('170 patent, 2:1-5, JA0015; '640 patent, 1:66-2:3, JA0040; '978 patent, 2:1-5, JA0072 (similar).) In this discussion, the "entity" is what *stores* the "data," rather than being *itself* the data. This is consistent with "data" and "entity" carrying different meanings when those terms appear together.

### H. "Redirect Message"

| Claim(s) | Term | AWS Proposed Construction | Kove Proposed Construction |
|---|---|---|---|
| • '978 patent, claims 3, 10, 14; <br> • '170 patent, claims 6, 15; and <br> • '640 patent, claims 17, 18 | "redirect message" | No construction is necessary. | "A message that is sent back to the client in response to a location query that contains the identity of at least one location server that is known to have the location information responsive to the location query." |

24

Several asserted claims contain the phrase "redirect message."  The Court need not construe these claims because each of them includes explicit language reciting what the "redirect message" comprises.  Moreover, in many cases, that language contradicts Kove's construction.

For instance, claims 17 and 18 of the '640 patent recite a "redirect message," "wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string."  The "wherein" clause makes it unnecessary to construe "redirect message"—the claim already says what a "redirect message" means.  Moreover, the claim's "wherein clause" is inconsistent with Kove's proposed construction.  Kove's proposed construction requires that the redirect message contain "the identity of at least one location server," while those claims merely require "information … to calculate a location of a different location server."

Likewise, all the other asserted claims with "redirect message" recite what is in the "redirect message."  There is no need to construe these claims; the claims speak for themselves.

*    *    *

AWS certifies that the construction of these terms is outcome determinative.

## III.  STIPULATION

The Parties have stipulated to the following constructions.

| Claim(s) | Term | Agreed Construction |
|---|---|---|
| '640 patent, claim 17 | "data location sewer network" | "data location server network" |
| '978 patent, claim 14 | Preamble | Preamble after "comprising" limits the claim |
| '978 patent, claim 17 | Preamble | Preamble after "having" limits the claim |
| '978 patent, claims 1, 10, 14, 17, 30, 31; '170 patent, claims 1, 6, 15; and '640 patent, claims 17, 18 | "identifier" / "identifier string" / "identification string" | "A unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server." |

25

Dated: October 13, 2020

Respectfully Submitted,

AMAZON WEB SERVICES, INC.

By:  */s/ Terri L. Mascherin*

Adam G. Unikowsky

Terri L. Mascherin

JENNER & BLOCK LLP

Timothy J. Barron

1099 New York Ave. NW Suite 900

Michael T. Werner

Washington, DC 20001

JENNER & BLOCK LLP

(202) 639-6000

353 N. Clark St.

aunikowsky@jenner.com

Chicago, IL 60654

(312) 222-9350

tmascherin@jenner.com

tbarron@jenner.com

mwerner@jenner.com

*Attorneys for Amazon Web Services, Inc.*

## CERTIFICATE OF SERVICE

I, Timothy J. Barron, an attorney at the law firm of Jenner & Block LLP, certify that on

October 13, 2020, the foregoing **AMAZON WEB SERVICES, INC.'S OPENING CLAIM**

**CONSTRUCTION BRIEF** was electronically served on counsel of record via the Court's ECF

system.


/s/ Timothy J. Barron
  Timothy J. Barron
  JENNER & BLOCK LLP
  353 N. Clark St.
  Chicago, IL 60654
  (312) 222-9350