**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KOVE IO, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-08175 |
| | ) | |
| AMAZON WEB SERVICES, INC., | ) | Hon. Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |
| | ) | |

**JOINT APPENDIX**



US007814170B2

(12) **United States Patent**
Overton et al.

(10) Patent No.: **US 7,814,170 B2**
(45) Date of Patent: ***Oct. 12, 2010**

(54) **NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL**

(75) Inventors: **John K. Overton**, Chicago, IL (US); **Stephen W. Bailey**, Chicago, IL (US)

(73) Assignee: **Econnectix Corporation**, Chicago, IL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 749 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **11/354,224**

(22) Filed: **Feb. 13, 2006**

(65) **Prior Publication Data**

US 2007/0011267 A1      Jan. 11, 2007

**Related U.S. Application Data**

(63) Continuation of application No. 09/661,222, filed on Sep. 13, 2000, now Pat. No. 7,103,640, and a continuation-in-part of application No. 09/111,896, filed on Jul. 8, 1998, now abandoned.

(60) Provisional application No. 60/153,709, filed on Sep. 14, 1999.

(51) **Int. Cl.**
  *G06F 15/16*      (2006.01)
  *G06F 17/30*      (2006.01)
(52) **U.S. Cl.** .......................... **709/217**; 709/219; 707/10
(58) **Field of Classification Search** ................. 709/217, 709/223, 238, 219; 707/10
  See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,553,261 A | 11/1985 | Froessl | |
| 4,636,858 A | 1/1987 | Hague | |

(Continued)

FOREIGN PATENT DOCUMENTS

| EP | 0 568 161 A1 | 1/1992 |
|---|---|---|

(Continued)

OTHER PUBLICATIONS

D.G. Bourke et al., Programmable Module and Circuit for Machine-Readable Unique Serial Number, IBM Technical Disclosure Bulletin, vol. 27, No. 4A, Sep. 1, 1984, pp. 1942-1944.

(Continued)

*Primary Examiner*—Larry Donaghue
*Assistant Examiner*—Brian J Gillis
(74) *Attorney, Agent, or Firm*—Brinks Hofer Gilson & Lione

(57) **ABSTRACT**

A network distributed tracking wire transfer protocol for storing and retrieving data across a distributed data collection. The protocol includes a location string for specifying the network location of data associated with an entity in the distributed data collection, and an identification string for specifying the identity of an entity in the distributed data collection. According to the protocol, the length of the location string and the length of the identification string are variable, and an association between an identification string and a location string can be spontaneously and dynamically changed. The network distributed tracking wire transfer protocol is application independent, organizationally independent, and geographically independent. A method for using the protocol in a distributed data collection environment and a system for implementing the protocol are also provided.

**17 Claims, 12 Drawing Sheets**



**US 7,814,170 B2**

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,728,978 A | 3/1988 | Inoue et al. | |
| 4,800,488 A | 1/1989 | Agrawal et al. | |
| 4,825,406 A | 4/1989 | Bean et al. | |
| 4,835,372 A | 5/1989 | Gombrich et al. | |
| 4,914,571 A | 4/1990 | Baratz et al. | |
| 5,008,700 A | 4/1991 | Okamoto | |
| 5,124,814 A | 6/1992 | Takahashi et al. | |
| 5,193,185 A | 3/1993 | Lanter | |
| 5,208,623 A | 5/1993 | Takahashi | |
| 5,276,735 A | 1/1994 | Boebert et al. | 380/21 |
| 5,291,399 A | 3/1994 | Chaco | |
| 5,319,401 A | 6/1994 | Hicks | |
| 5,345,586 A | 9/1994 | Hamala et al. | 395/650 |
| 5,347,600 A | 9/1994 | Barnsley | |
| 5,384,643 A | 1/1995 | Inga et al. | |
| 5,414,841 A | 5/1995 | Bingham et al. | |
| 5,454,101 A | 9/1995 | Mackay et al. | |
| 5,455,648 A | 10/1995 | Kazami | |
| 5,475,817 A | 12/1995 | Waldo et al. | |
| 5,479,654 A | 12/1995 | Squibb | |
| 5,491,511 A | 2/1996 | Olde | |
| 5,499,113 A | 3/1996 | Tsuboi | |
| 5,522,077 A | 5/1996 | Cuthbert et al. | |
| 5,537,547 A | 7/1996 | Chan et al. | |
| 5,550,981 A | 8/1996 | Bauer et al. | |
| 5,551,027 A | 8/1996 | Choy et al. | |
| 5,557,790 A | 9/1996 | Bingham et al. | |
| 5,560,005 A | 9/1996 | Hoover et al. | |
| 5,576,952 A | 11/1996 | Stutman et al. | |
| 5,579,067 A | 11/1996 | Wakabayashi | |
| 5,610,653 A | 3/1997 | Abecassis | |
| 5,617,570 A | 4/1997 | Russell et al. | |
| 5,625,841 A | 4/1997 | Dawkins et al. | |
| 5,649,247 A | 7/1997 | Itoh et al. | |
| 5,664,170 A | 9/1997 | Taylor | |
| 5,669,029 A | 9/1997 | Fyson et al. | |
| 5,724,575 A | 3/1998 | Hoover et al. | |
| 5,740,428 A | 4/1998 | Mortimore et al. | |
| 5,764,889 A | 6/1998 | Ault et al. | |
| 5,764,906 A | 6/1998 | Edelstein et al. | |
| 5,774,670 A | 6/1998 | Montulli | |
| 5,781,725 A | 7/1998 | Saito | |
| 5,784,565 A | 7/1998 | Lewine | |
| 5,802,518 A | 9/1998 | Karaev et al. | |
| 5,809,161 A | 9/1998 | Auty | |
| 5,809,331 A | 9/1998 | Staats et al. | |
| 5,809,495 A | 9/1998 | Loaiza | |
| 5,813,006 A | 9/1998 | Polnerow et al. | |
| 5,832,487 A | 11/1998 | Olds et al. | |
| 5,848,246 A | 12/1998 | Gish | |
| 5,864,482 A | 1/1999 | Hazama | |
| 5,872,973 A | 2/1999 | Mitchell et al. | |
| 5,875,302 A | 2/1999 | Obhan | |
| 5,903,889 A | 5/1999 | De la Huerga et al. | |
| 5,907,837 A | 5/1999 | Ferrel et al. | |
| 5,913,210 A | 6/1999 | Call | |
| 5,915,240 A | 6/1999 | Karpf | |
| 5,918,214 A | 6/1999 | Perkowski | |
| 5,920,702 A | 7/1999 | Bleidt et al. | |
| 5,940,844 A | 8/1999 | Cahill et al. | |
| 5,950,173 A | 9/1999 | Perkowski | |
| 5,961,610 A | 10/1999 | Kelly et al. | |
| 5,966,705 A | 10/1999 | Koneru et al. | |
| 5,974,124 A | 10/1999 | Schlueter, Jr. et al. | |
| 5,974,409 A | 10/1999 | Sanu et al. | |
| 5,978,773 A | 11/1999 | Hudetz et al. | |
| 5,987,519 A | 11/1999 | Peifer et al. | |
| 5,995,965 A | 11/1999 | Experton | |
| 6,032,175 A | 2/2000 | Fletcher et al. | |
| 6,047,332 A | 4/2000 | Viswanathan et al. | |
| 6,055,544 A | 4/2000 | DeRose et al. | |
| 6,058,193 A | 5/2000 | Cordery et al. | |
| 6,070,191 A | 5/2000 | Narendran et al. | 709/226 |
| 6,092,189 A | 7/2000 | Fisher et al. | |
| 6,108,787 A | 8/2000 | Anderson et al. | |
| 6,131,095 A | * 10/2000 | Low et al. | 707/10 |
| 6,154,738 A | 11/2000 | Call | |
| 6,167,438 A | 12/2000 | Yates et al. | 709/216 |
| 6,188,766 B1 | 2/2001 | Kocher | |
| 6,201,931 B1 | 3/2001 | Cipolla et al. | |
| 6,202,070 B1 | 3/2001 | Nguyen et al. | |
| 6,209,095 B1 | 3/2001 | Anderson et al. | |
| 6,212,280 B1 | 4/2001 | Howard, Jr. et al. | |
| 6,370,584 B1 * | 4/2002 | Bestavros et al. | 709/238 |
| 6,374,253 B1 | 4/2002 | Weider et al. | 707/102 |
| 6,377,986 B1 | 4/2002 | Philyaw et al. | |
| 6,418,441 B1 | 7/2002 | Call | |
| 6,438,652 B1 | 8/2002 | Jordan et al. | |
| 6,453,404 B1 | 9/2002 | Bereznyi et al. | 711/171 |
| 6,463,454 B1 | 10/2002 | Lumelsky et al. | |
| 6,466,980 B1 | 10/2002 | Lumelsky et al. | |
| 6,470,389 B1 * | 10/2002 | Chung et al. | 709/227 |
| 6,578,068 B1 | 6/2003 | Bowman-Amuah | |
| 6,594,253 B1 | 7/2003 | Sallberg et al. | 370/349 |
| 6,711,408 B1 | 3/2004 | Raith | |
| 7,103,640 B1 | 9/2006 | Overton et al. | |
| 7,233,978 B2 | 6/2007 | Overton et al. | |
| 7,272,625 B1 | 9/2007 | Hannel et al. | 709/200 |
| 7,349,902 B1 | 3/2008 | Arlitt et al. | 707/8 |
| 7,634,453 B1 | 12/2009 | Bakke et al. | 707/1 |
| 2001/0013059 A1 | 8/2001 | Dawson et al. | 709/217 |
| 2002/0112048 A1 | 8/2002 | Gruyer et al. | |
| 2003/0065653 A1 | 4/2003 | Overton et al. | |
| 2004/0205055 A1 | 10/2004 | Overton et al. | |
| 2008/0005275 A1 | 1/2008 | Overton et al. | |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 889 422 A2 | 1/1999 |
| WO | WO 86/05610 | 9/1986 |
| WO | WO 98/15910 | 4/1998 |
| WO | WO 98/31138 | 7/1998 |
| WO | WO 00/32526 | 1/2000 |

## OTHER PUBLICATIONS

Kleinholz, L. et al., Supporting Cooperative Medicine: The Bermed Project, IEEE Multimedia, vol. 1, No. 4, Dec. 21, 1994, pp. 44-53.

Method for Network Naming and Routing, IBM Technical Disclosure Bulletin, vol. 37, No. 9, Sep. 1, 1994, pp. 255-256.

Minimizing Locking to Access Global Shared Data, IBM Technical Disclosure Bulletin, Feb. 1995, pp. 619-622.

R. Muniz et al., A Robust Software Barcode Reader Using the Hough Transform, Abstract, 1999, International Conference on Information Intelligence and Systems (Oct. 31 to Nov. 3, 1999).

D. Fresonke, In-fab Identification of Silicon Wafers With Clean, Laser Marked Barcodes, Abstract, 1994, IEEE/Semi Advanced Semiconductor Manufacturing Conference and Workshop (Nov. 14 to Nov. 16, 1994).

T. Sriram et al., Applications of Barcode Technology in Automated Storage and Retrieval Systems, Abstract, Proceedings of the 1996 IEEE IECON 22nd International Conference on Industrial Electrodes (Aug. 5 to Aug. 10, 1996).

V.L. Callaghan et al., Structures and Metrics for Image Storage and Interchange, Journal of Electronic Imaging, vol. 2, No. 2, Apr. 1, 1993, pp. 126-137.

Beitz et al., Service Location in an Open Distributed Environment, Second International Workshop on Services in Distributed and Networked Environments, IEEE Computer Society Press, Jun. 1995, pp. 28-34.

Office Action, dated Mar. 30, 2010, pp. 1-12, U.S. Appl. No. 11/803,332, U.S. Patent and Trademark Office, Virginia.

Notice of Allowance, dated May 19, 2010, pp. 1-8, U.S. Appl. No. 10/646,350, U.S. Patent and Trademark Office, Virginia.

* cited by examiner

Case: 1:18-cv-08175 Document #: 221 Filed: 10/13/20 Page 4 of 391 PageID #:6256



**Use Of Request Identifiers**

*Fig. 1*

JA0003

U.S. Patent

Oct. 12, 2010

Sheet 2 of 12

US 7,814,170 B2



*Fig. 2*

NDTP String Format

*Fig. 3*

NDTP_GET Format

JA0004

U.S. Patent

Oct. 12, 2010

Sheet 3 of 12

US 7,814,170 B2



NDTP_GET_RSP Format

*Fig. 4*

JA0005

U.S. Patent

Oct. 12, 2010

Sheet 4 of 12

US 7,814,170 B2



NDTP_PUT Format

*Fig. 5*

JA0006

U.S. Patent

Oct. 12, 2010

Sheet 5 of 12

US 7,814,170 B2



NDTP_PUT_RSP Format

*Fig. 6*

JA0007

U.S. Patent

Oct. 12, 2010

Sheet 6 of 12

US 7,814,170 B2

| 0 | | | | | | | | 1 | | | | | | | | | 2 | | | | | | | | | 3 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 |

*70*

| NDTP_DEL (4) | Reserved |
|---|---|
| NDTP request identifier | |
| String area length (ROUND4(n) + 4 + ROUND4(m) + 4) | |
| Identifier length (n) | |
| Identifier data *72* | |
| Identifier byte n-1 | Identifier padding |
| Location length (m) | |
| Location data *74* | |
| Location byte m-1 | Location padding |

NDTP_DEL Format

Fig. 7

JA0008

U.S. Patent

Oct. 12, 2010

Sheet 7 of 12

US 7,814,170 B2

```
        0                               1                                    2                                     3
        0  1  2  3  4  5  6  7 / 8  9  0  1  2  3  4  5  6  7  8  9  0  1  2  3  4  5  6  7  8  9  0  1
                            80
```

| NDTP_DEL_RSP (5) | Reserved |
|---|---|
| NDTP request identifier | |
| String area length (0) | |

NDTP_DEL_RSP Format

*Fig.* 8

U.S. Patent    Oct. 12, 2010    Sheet 8 of 12    US 7,814,170 B2



NDTP_RDR_RSP With Server Table

*Fig. 9(a)*

U.S. Patent

Oct. 12, 2010

Sheet 9 of 12

US 7,814,170 B2



NDTP_RDR_RSP With Redirection Function

*Fig.* 9(b)

JA0011

U.S. Patent

Oct. 12, 2010

Sheet 10 of 12

US 7,814,170 B2



NETWORK DISTRIBUTED TRACKING
DISTRIBUTED RECORD RETRIEVAL

Fig. 10

JA0012



*Fig. 11*     NDTP Server Constellation Context

NDTP Client-Centric Constellation

*Fig. 12*

JA0013



**NDTP Server-Centric Constellation**



*Fig. 13*

US 7,814,170 B2

1

# NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

## RELATED APPLICATIONS

This application is a continuation of U.S. application Ser. No. 09/661,222 filed Sep. 13, 2000, now U.S. Pat. No. 7,103, 640, the entirety of which is hereby incorporated by reference, which claims the benefit of U.S. patent application Ser. No. 60/153,709, entitled SIMPLE DATA TRANSPORT PROTOCOL METHOD AND APPARATUS, filed on Sep. 14, 1999, and is a continuation-in-part of U.S. application Ser. No. 09/111,896, entitled SYSTEM AND METHOD FOR ESTABLISHING AND RETRIEVING DATA BASED ON GLOBAL INDICES, filed on Jul. 8, 1998, abandoned.

## MICROFICHE/COPYRIGHT REFERENCE

A Microfiche Appendix (143 frames, 2 sheets) is included in this application that contains material which is subject to copyright protection. The copyright owner has no objection to the facsimile reproduction by anyone of the Microfiche Appendix, as it appears in the Patent and Trademark Office patent files or records, but otherwise reserves all copyright rights whatsoever.

## FIELD OF THE INVENTION

This invention relates generally to the storage and retrieval of information, and in particular, to a protocol for dynamic and spontaneous global search and retrieval of information across a distributed network regardless of the data format.

## BACKGROUND OF THE INVENTION

Data can reside in many different places. In existing retrieval systems and methods, a client seeking information sends a request to a server. Typically, only data that are statically associated with that server are returned. Disadvantageously, the search is also usually restricted to previously known systems. The search is thus conducted only where the server knows in advance to look.

Another disadvantage of known retrieval systems is the difficulty in accessing data in different forms. Known retrieval systems are typically designed to search for data in limited forms. One example is where a client requests files based on a subject, like a person's name. In the search results, therefore, only text files of peoples' names may be retrieved. Another problem in current retrieval systems is that the client may receive text and image files in the search results, but could not seamlessly access the image files. Yet another problem in current retrieval systems is that video and sound files related to the request may not even be found in the search results. For example, a doctor might be able to retrieve medical records on a specific patient, but cannot view an MRI or X-Ray results associated with that record.

A distributed data collection is a system where data is stored and retrieved among multiple machines connected by a network. Typically, each machine in which some portion of the data in a distributed data collection may reside is called a "data repository machine", or simply a "data repository". One commonly asked question in a data repository environment is: Where is data associated with a particular entity in a distributed data collection? The data location is a key question when a distributed data collection has highly dynamic data distribution properties.

2

In networked environments where there are a large number of data repositories and any particular entity does not store data in all the repositories, a mechanism is needed that would permit queries to be directed only at data repositories with relevant information. It would also be beneficial to permit membership in the set of data repositories itself to be highly dynamic. Such a system would support on-the-fly addition and removal of data repositories from a distributed data collection seamlessly and without the need to reprogram the client and server participants.

## BRIEF SUMMARY OF THE INVENTION

In view of the above, the invention provides a network distributed tracking wire transfer protocol, and a system and method for using the protocol in a networked environment. The network distributed tracking wire transfer protocol includes two basic components: identification strings for specifying the identity of an entity in the distributed data collection, and location strings for specifying network locations of data associated with an entity. The protocol accommodates variable length identifier and location strings. Relationships between identification strings and location strings can be dynamically and spontaneously manipulated thus allowing the corresponding data relationships also to change dynamically, spontaneously, and efficiently. In addition, the network distributed tracking wire transfer protocol is application independent, organizationally independent, and geographically independent.

In another aspect of the invention, a system of components using the network distributed tracking protocol are provided for storing and identifying data with a distributed data collection. The components include (1) a data repository for storing data in the distributed data collection, (2) a client entity for manipulating data in the distributed data collection, and (3) a first server entity operative to locate data in the distributed data collection, which may be coupled to a client entity and/or data repository. In a network with these components, a client entity transmits an identifier string to the first server entity along with the client request, and the first server entity provides a set of location strings to the client entity in response thereto. The first server entity maps the identifier string received from the client entity to a set of location strings. The network may also include any number of additional server entities coupled to the first server entity.

According to yet another aspect of the invention, a method is provided for storing and retrieving tracking information over a network using a wire transfer protocol. A location string specifies the location of data associated with an entity in the distributed data collection and the identification string specifies the identification of an entity in a distributed data collection. A first data repository entity stores data by associating an identification string with each particular stored unit of data, and by mapping the identification string to a location string associated with the first data repository. The identification string and location string for the particular unit of data are at a first server entity coupled to the first data repository entity. A request is transmitted from a client entity to the first server entity to retrieve at least one location string associated with the stored unit of data in the distributed data collection. The request includes the identification string associated with the particular stored unit of data. The request is received at the first server entity, which responds to the client entity by providing at least one location string associated with the particular stored unit of data to the client entity.

The request may also be transmitted to a second server entity prior to responding to the client entity, where the sec-

US 7,814,170 B2

3

ond server entity is coupled to the first server entity and includes the mapping of the identification string and location strings for the particular units of data. In such case, the second server entity responds to the client entity by providing the at least one location string associated with the particular stored unit of data to the client entity.

The network distributed tracking protocol of the invention is a networking protocol that efficiently manages mappings from one or more identifier strings to zero or more location strings. The protocol permits client entities to add and remove identifier/location associations, and request the current set of locations for an identifier or identifiers from server entities that comply with the protocol.

The protocol is designed for use in the larger context of a distributed data collection. As such, it supports an architecture in which information about where data associated with particular application entities can be managed and obtained independently of the data itself. The protocol and its associated servers thus maintain a mapping between entity identifiers and data locations. The identifier/location mapping maintained by the servers is very dynamic. Regardless of the expected system context in a distributed data collection, the protocol can be used for any application in which one-to-one or one-to-many associations among strings are to be maintained and accessed on a network.

In any context, the protocol supports identifier and location strings of up to $2^{32}$-4 bytes in length, but in most applications it is expected that the strings are typically short. String length is not fixed by the protocol, except by the upperbound. Accordingly, string formats are controlled at a local level and not dictated by the protocol.

These and other features and advantages of the invention will become apparent upon a review of the following detailed description of the presently preferred embodiments of the invention, when viewed in conjunction with the appended drawings.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is an example of multiple outstanding protocol requests.

FIG. 2 is a layout of one presently preferred string format.

FIG. 3 is a layout of one presently preferred NDTP_GET message.

FIG. 4 is a layout of one presently preferred NDTP_GE-T_RSP message.

FIG. 5 is a layout of one presently preferred NDTP_PUT message.

FIG. 6 is a layout of one presently preferred NDTP_PU-T_RSP message.

FIG. 7 is a layout of one presently preferred NDTP_DEL message.

FIG. 8 is a layout of one presently preferred NDTP_DEL_RSP message.

FIG. 9 is a layout of one presently preferred NDT-P_RDR_RSP message, where FIG. 9(a) shows a server table layout, and FIG. 9(b) shows a redirection function layout.

FIG. 10 is a system block diagram showing a multi-server implementation environment of the network distributed tracking wire transfer protocol of the invention.

FIG. 11 is a system diagram showing an NDTP server constellation configuration.

FIG. 12 is a system diagram showing a client-centric constellation approach.

4

FIG. 13 is a system diagram showing a server-centric constellation approach.

DETAILED DESCRIPTION OF THE PRESENTLY PREFERRED EMBODIMENTS OF THE INVENTION

The following terms are used to describe the operation of the presently preferred network distributed tracking protocol (NDTP). An "identifier string" or an "identifier" is a unique string with which zero or more location strings are associated in an NDTP server. A "data location" or a "location" is a string that is a member of a set of strings associated with an identifier string in an NDTP server. An "NDTP client" or a "client" is a network-attached component that initiates update or lookup of identifier/location mappings from an NDTP server with NDTP request messages. An "NDTP server" or a "server" is a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to NDTP request messages from NDTP clients. The term "Network Byte Order" is the ordering of bytes that compose an integer of larger than a single byte as defined in the Internet Protocol (IP) suite. Preferably, Network Byte Order specifies a big-endian, or most significant byte first, representation of multibyte integers. In this specification a byte is preferably composed of eight bits.

Network Distributed Tracking Protocol (NDTP)

The Network Distributed Tracking Protocol (NDTP) efficiently tracks the location of data associated with an individual entity in a distributed data collection. NDTP is a transactional protocol, which means that each operation within NDTP consists of a request message from an NDTP client to an NDTP server, followed by an appropriate response message from the NDTP server to the NDTP client. NDTP defines an entity key (or "identifier") as a unique string used to refer to an entity about which a distributed query is performed.

The NDTP server treats the entity key as an unstructured stream of octets, which is assumed to be unique to a particular entity. The precise structure of the NDTP entity key and the mechanism for ensuring its uniqueness are a function of the application in which the NDTP server is used. In a customer oriented application, the NDTP entity key might be a unique customer identifier, for example, a Social Security Number, in either printable or binary integer form, as is appropriate to the application. NDTP also defines a data location specifier as a string used to specify a data repository in which data associated with a particular entity may be found.

As with NDTP entity keys, the NDTP server treats NDTP data location specifiers as unstructured streams of octets. The structure of an NDTP data location specifier is a function of the application in which the NDTP server is used. For example, an NDTP data location specifier might be an Internet machine name, and a TCP/IP port number for a relational database server, or an HTTP Universal Resource Locator (URL), or some concatenation of multiple components.

The NDTP server efficiently maintains and dispenses one to zero or one to many relationships between entity keys and data location specifiers. In other words, an entity key may be associated with any number of data location specifiers. When data for a particular entity is added to a data repository, the NDTP server is updated to indicate an association between the entity key and the data repository's data location specifier. When a query is performed for an entity key, the NDTP server supplies the set of data repositories in which data may be found for that entity key.

US 7,814,170 B2

5                                                                      6

General NDTP Mechanics

The protocol of the invention is designed to provide maximum transaction throughput from the NDTP server, associated clients, and associated data repositories when appropriate. The design goal is realized through two design principles:

1. NDTP messages should preferably be as short as possible to maximize the rate of NDTP transactions for a given network communication bandwidth.

2. NDTP messages should preferably be structured for efficient processing on existing machine architectures.

Design Optimizations.

Numerical fields of an NDTP message are preferably represented in binary integer format rather than ASCII or other printable format to minimize host processing overhead and network utilization. Numerical fields of NDTP messages are also aligned on 32-bit boundaries to minimize the cost of manipulation on current machine architectures. Manipulating unaligned multibyte integer quantities on modern machine architectures usually incurs an extra cost ranging from mild to severe compared to manipulating the same quantities in aligned form.

In keeping with other network protocol standards including TCP/IP, multioctet integer quantities in NDTP are preferably encoded using the big endian integer interpretation convention, as set forth above.

To overcome network latency, NDTP is designed to support asynchronous operation, where many requests may be sent to an NDTP server before a response from any of them is received.

Each NDTP message is preceded by a fixed size, 12-octet header, using the preferred data structure:

```
typedef struct ndtp-hdr {
    uint8_T op;              /* opcode */
    uint8_t pad[3];
    uint32_t id;            /* transaction identifier */
    uint32_t size;         /* total request size
                              following the header */
}ndtp__hdr_t;
```

where:

op:

NDTP message numerical operation code.
NDTP_GET: get request
NDTP_GET_RSP: get response
NDTP_PUT: put request
NDTP_PUT_RSP: put response
NDTP_DEL: delete request
NDTP_DEL_RSP: delete response
NDTP_RDR_RSP: provide redirection

id:

Client supplied operation request used to distinguish responses from multiple outstanding NDTP asynchronous requests. Each "_RSP" message echoes the id field of the associated request.

size:

Size, in octets of the remainder of the NDTP message. The size field should always be a multiple of 4 octets.

Variably sized portions of NDTP messages are preferably defined with a size field rather than some other delimiter mechanism to facilitate efficient reading of NDTP messages. Requests may be made to the network layer to read the entire variably sized portion of an NDTP message, rather than reading small chunks while scanning for a delimiter. Furthermore,

client and server resource management can be more efficient since the size of NDTP messages is known before reading.

The variably sized portions of NDTP messages are composed of zero or more NDTP stings:

```
typedef struct ndtp__str {
    uint32_t len;
    uint8_t data [ ];
{ ndtp__str__t;
```

Note that the C struct definitions in this document are schematic, and not necessarily fully compliant structures in the C programming language. Specifically, arrays denoted in this document with "[ ]" imply a dimension which is only known dynamically and this indefinite array size specifier is not allowed in C struct definitions. Note also the following:

len:

the number of significant octets of data following the len field in the data area.

data:

len octets of data, followed by up to 3 octets of padding, to ensure that the total length of the NDTP string structure is a multiple of 4 octets.

The padding octets are not included in the len field.

Because variable sized portion NDTP messages are composed of zero or more NDTP stings and NDTP strings preferably occupy an even multiple of 4 octets, this ensures that the "size" field of NDTP message headers will preferably be a multiple of 4 octets.

Protocol Structure

An example of multiple outstanding NDTP requests and the use of request identifiers is shown in FIG. **1**. NDTP preferably has a simple, stateless request/response structure. Each request message **10** sent by a client **12** has a corresponding response message **14** returned by the server **16**. To maximize server **16** throughput and use of available network bandwidth, NDTP is asynchronous in nature. Many requests **10** from a single client **12** may be outstanding simultaneously, and responses **14** may or may not be returned from the server **16** in the order in which the requests **10** were issued. Each NDTP request **10** contains an NDTP request identifier **18** that is returned in the NDTP response **14** for the associated request **10**. An NDTP client **12** uses a unique NDTP request identifier **18** for each NDTP request **10** that is outstanding at the same time to an NDTP server **16** if it wishes to correlate responses with requests.

There are four operations preferably supported by the protocol:

Add a location association to an identifier.

Delete a location association from an identifier.

Get all locations associated with an identifier.

Provide a redirect instruction to identify an alternative server.

The response to adding a location association to an identifier **18** is a simple acknowledgement. If the location is already associated with the identifier **18**, adding the association has no effect, but the request **10** is still acknowledged appropriately. In other words, the NDTP add operation is idempotent. The response to deleting a location association from an identifier **18** is a simple acknowledgement. If the location is not currently associated with the identifier **18**, deleting the association has no effect, but the request **10** is still acknowledged appropriately. In other words, the NDTP delete operation is idempotent. The response **14** to getting all locations associ-

US 7,814,170 B2

7

ated with an identifier **18** is a list of the locations presently associated with an identifier **18**. If no locations are currently associated with an identifier **18**, a list of length zero is returned.

Message Formats

NDTP messages **10**, **14** preferably have a regular structure that consists of a message operation code, followed by a request identifier **18**, followed by a string area length (in bytes) **20**, followed by zero or more strings **22**, as shown in FIG. **2**. As those skilled in the art will appreciate, NDTP message formats are preferably independent of the network transport layer used to carry them. NDTP preferably defines mappings of these messages **10**, **14** onto TCP and UDP transport layers (described in detail below), but other mappings could also be defined and it is likely that these NDTP message formats would not require change. For example, the notation ROUND4(x) means x, rounded up to the next multiple of 4.

Integer Format

Multibyte integers in NDTP messages are represented in network byte order; using the big-endian convention. In other words, the most significant byte of a multibyte integer is sent first, followed by the remainder of the bytes, in decreasing significance order.

String Format

Strings in NDTP are represented as counted strings, with a 32-bit length field **20**, followed by the string data **22**, followed by up to 3 bytes of padding **24** to make the total length of the string representation equal to ROUND4(length). This layout is shown diagrammatically in FIG. **2**.

NDTP_GET Format

The NDTP_GET message has a message operation code **30** of 0, and a single NDTP string **32** which is the identifier string for which to get associated location strings. This layout is shown diagrammatically in FIG. **3**.

NDTP_GET_RSP Format

The NDTP_GET_RSP message has a message operation code **40** of 1, and zero or more strings **42** that are the locations currently associated with the requested identifier. This layout is shown diagrammatically in FIG. **4**.

NDTP_PUT Format

The NDTP_PUT message has a message operation code **50** of 2, and two NDTP strings **52**, **54**. The first string **52** is the identifier for which to add a location association, and the second string **54** is the location to add. This layout is shown diagrammatically in FIG. **5**.

NDTP_PUT_RSP Format

The NDTP_PUT_RSP message has a message operation code **60** of 3, and zero NDTP strings. This layout is shown diagrammatically in FIG. **6**.

NDTP_DEL Format

The NDTP_DEL message has a message operation code **70** of 4, and two NDTP strings **72**, **74**. The first string **72** is the identifier from which to delete a location association, and the second string **74** is the location to delete. This layout is shown diagrammatically in FIG. **7**.

NDTP_DEL_RSP Format

The NDTP_DEL_RSP message has a message operation code **80** of 5, and zero NDTP strings. This layout is shown diagrammatically in FIG. **8**.

8

NDTP_RDR_RSP Format

The NDTP_RDR_RSP message has a message operation code **90** of 6, and one or more NDTP strings **92**, **94**. Two layouts apply, which are shown diagrammatically in FIGS. **9**(a) and 9(b).

A general description of the usage and operation of these protocol messages is provided below.

NDTP_GET Transaction

The NDTP_GET message contains a single NDTP string which is the entity key for which associated data locations are requested.

```
typedef struct ndtp_get {
    ndtp__hdr__t hdr;
    ndtp__str__t key;
} ndtp__get__t;
```

The NDTP_GET_RSP message contains zero or more NDTP strings which are the data location specifiers associated with the NDTP entity key:

```
typedef struct ndtp__get__rsp {
    ndtp__hdr__t hdr;
    uint32__t rsps;
    ndtp__str__t values[ ];
} ndtp__get__rsp__t;
```

NDTP_PUT Transaction

The NDTP_PUT messages contains two NDTP strings which are (1) the NDTP entity key and (2) the NDTP data location specifier which is to be associated with the NDTP entity key.

```
typedef struct ndtp__put {
    ndtp__hdr__t hdr;
    ndtp__str__t key;
    ndtp__str__t data;
} ndtp__put__t;
```

The NDTP_PUT_RSP message has no NDTP strings, and simply indicates that the requested entity key/data location specifier association was added:

```
typedef struct ndtp__put__rsp {
    ndtp__hdr__t hdr;
} ndtp__put__rsp__t;
```

The requested entity key/data location specifier association is added in addition to any other associations already maintained by the NDTP server. If the requested entity key/data location specifier association is already in effect, the NDTP_PUT still succeeds and results in an NDTP_PUT_RSP message.

NDTP_DELETE Transaction

The NDTP_DEL message contains two NDTP strings which are (1) the NDTP entity key and (2) the NDTP data location specifier which is to be unassociated with the NDTP entity key:

US 7,814,170 B2

9

```
typedef struct ndtp_del {
    ndtp_hdr_t hdr;
    ndtp_str_t key;
    ndtp_str_t data;
} ndtp_del_t;
```

The NDTP_DEL_RSP message has no NDTP strings, and simply indicates that the requested entity key/data location specifier association was deleted.

```
typedef struct ndtp_del_rsp {
    ndtp_hdr_t hdr;
} ndtp_del_rsp_t;
```

If the requested entity key/data location specifier association is not in effect, the NDTP_DEL still succeeds and results in an NDTP_DEL_RSP message.

NDTP_RDR_RSP Message

NDTP supports a distributed server implementation for which two principle redirection methods apply: (1) embedded redirection links, and (2) passed functions. The passed functions method in turn has two variants: (a) a well-known function, and (b) a communicated function. (These methods and variants are described in further detail below.)

Network Front End

The NDTP server network front end preferably maximizes NDTP transaction throughput including concurrent NDTP requests from a single client as well NDTP requests from multiple concurrent clients.

Network Communication Mechanism

NDTP defines a transaction oriented protocol, which can be carried over any of a variety of lower level network transport protocols. For example:

TCP/IP: TCP/IP provides a ubiquitously implemented transport which works effectively on both local area and wide area networks. An NDTP client using TCP/IP preferably connects with the NDTP server at an established TCP port number, and then simply writes NDTP request messages through the TCP/IP connection to the server, which then writes NDTP response messages back to the client through the same TCP/IP connection in the reverse direction. TCP/IP implementations perform buffering and aggregation of many small messages into larger datagrams, which are carried more efficiently through the network infrastructure. Running NDTP on top of TCP/IP will take advantage of this behavior when the NDTP client is performing many NDTP requests. For example, a data repository which is undergoing rapid addition of data records associated with various entities will perform many rapid NDTP_PUT operations to the NDTP server that can all be carried on the same NDTP TCP/IP connection.

UDP/IP: If an NDTP client only performs occasional, isolated NDTP operations, or there are a vast number of clients communicating with an NDTP server, TCP/IP will not offer the best possible performance because many traversals of the network are required to establish a TCP/IP connection, and yet more network traversals are required to transfer actual NDTP messages themselves. For such isolated NDTP transactions, depending upon the application and network infrastructure in use, it is beneficial to have the NDTP server employ UDP/IP, which is a widely available connectionless datagram protocol.

10

However, UDP/IP does not support reliable data transfer, or any congestion control mechanism. This means that NDTP clients using UDP/IP must implement reliability and congestion control maintaining transaction timeouts and performing exponential retry backoff timers, precisely analogous to the congestion control mechanism implemented by Ethernet, and other well known UDP protocols. Those skilled in the art will note that the NDTP protocol is stateless from the standpoint of the NDTP server, which means that there is no congestion control or reliability burden on the server; it is all implemented in a distributed manner by the NDTP UDP/IP clients.

Still Higher Performance (ST): Both TCP/IP and to a lesser degree UDP/IP suffer from high host CPU overhead. Like the relatively long latency of TCP/IP, this host CPU consumption is considered just the "cost of doing business" where TCP/IP provides ubiquitous connectivity. If an NDTP server were running in a more constrained environment, where ubiquitous connectivity was not required, its absolute performance could be improved substantially by using a different protocol that is optimized to reduce CPU overhead and latency, such as the Scheduled Transfer (St) protocol.

None of these network implementation issues are particularly unique to NDTP, however. All similar protocols face similar tradeoffs, and what art exists to improve the performance of such protocols applies fully to NDTP as well.

NDTP Query Processing

Servicing NDTP query requests does not require high latency operations, such as disk I/O. Therefore, the NDTP server network front end preferably services NDTP query requests in a FIFO style by reading the NDTP_GET message, performing the lookup for the entity key in the NDTP server string store, and writing the NDTP_GET_RSP message. Each NDTP query is independent of any other NDTP transactions (other queries or updates), so it is possible to process multiple NDTP queries simultaneously on multiprocessor machines. The NDTP server permits this by not performing multiprocessor locking in the NDTP query processing path.

The current prototype NDTP server preferably does not create multiple read service threads per NDTP connection, so multiprocessing will only occur while processing queries from different NDTP connections. Nonetheless, the NDTP server could be extended to support multiprocessing of NDTP queries from a single NDTP connection if this turned out to be advantageous.

NDTP Update Processing

Unlike NDTP queries, processing NDTP updates requires the high latency operation of committing the change to non-volatile storage. To maintain high performance on NDTP updates, the NDTP server network front end preferably supports multiple concurrent asynchronous update transactions. Also, each update is preferably performed atomically to avoid creating an inconsistent state in the string store. Currently, the string store supports only a single mutator thread, which means that all NDTP updates are serialized through the string store mutator critical code sections. As is traditional in transactional systems, the string store mutation mechanism is implemented as a split transaction.

When an NDTP update is processed, a call is made to the string store mutation function, which returns immediately indicating either that the mutation is complete, or that the completion will be signaled asynchronously through a callback mechanism. The mutator function might indicate an immediate completion on an NDTP_PUT operation if the entity key/data location specifier mapping was already

US 7,814,170 B2

11                                                                    12

present in the database. In this case, the network front end will immediately write the update response message back to the client.

For updates which are not immediately completed, the network front end maintains a queue of NDTP updates for which it is awaiting completion. When the completion callback is called by the string store log file update mechanism, the network front end writes the NDTP update response messages for all completed updates back to the clients. If no new NDTP update requests are arriving from NDTP clients, and there are some incomplete updates in the update queue, the network front end preferably calls the string store log buffer flush function to precipitate the completion of the incomplete updates in update queue.

Multiple Connection Handling

Handling multiple clients in a single server process requires that the server process not block waiting for events from a single client, such as newly received data forming an NDTP request message, or clearing a network output buffer so an NDTP response message can be written. The NDTP server network front end may be conditionally compiled to use either of two standard synchronous I/O multiplexing mechanisms, select or poll, or to use threads to prevent blocking the server waiting for events on individual connections. The select and poll interfaces are basically similar in their nature, but different in the details. When compiled for synchronous I/O multiplexing, the NDTP server network front end maintains an input buffer for each connection. The multiplexing function is called to determine if any of the connections have input available, and if so, it is read into the connection's input buffer. Once a complete NDTP request is in the buffer, it is acted upon. Similarly, the network front end maintains an output buffer for each connection, and if there is still a portion of an NDTP response message to send, and the connection has some output buffer available, more of the NDTP response message is sent.

The threaded version of the NDTP server network front end preferably creates two threads for each NDTP connection, one for reading and one for writing. While individual threads may block as input data or output buffer is no longer available on a connection, the thread scheduling mechanism ensures that if any of the threads can run, they will. The threaded version of the NDTP server is most likely to offer best performance on modern operating systems, since it will permit multiple processors of a system to be used, and the thread scheduling algorithms tend to be more efficient than the synchronous I/O multiplexing interfaces. Nonetheless, the synchronous I/O multiplexing versions of NDTP server will permit it to run on operating systems with poor or non-existent thread support.

A more detailed description of the mapping operation in both a TCP and UDP environment appears below.

TCP Mapping

As those skilled in the art will appreciate, the Transmission Control Protocol (TCP) is a connection-oriented protocol that is part of a universally implemented subset of the Internet Protocol (IP) suite. TCP provides reliable, bi-directional stream data transfer. TCP also implements adaptive congestion avoidance to ensure data transfer across a heterogeneous network with various link speeds and traffic levels.

NDTP is preferably carried on TCP in the natural way. An NDTP/TCP client opens a connection with a server on a well-known port. (The well-known TCP (and UDP) port numbers can be selected arbitrarily by the initial NDTP implementer. Port numbers that do not conflict with existing protocols should preferably be chosen.) The client sends NDTP requests 10 to the server 16 on the TCP connection, and receives responses 14 back on the same connection. While it is permissible for a single client 12 to open multiple NDTP/TCP connections to the same server 16, this practice is discouraged to preserve relatively limited connection resources on the NDTP server 16. The asynchronous nature of NDTP should make it unnecessary for a client 12 to open multiple NDTP/TCP connections to a single server 16.

If protocol errors are detected on an NDTP/TCP connection, the NDTP/TCP connection should be closed immediately. If further NDTP/TCP communication is required after an error has occurred, a new NDTP/TCP connection should be opened. Some examples of detectable protocol errors include:

Illegal NDTP message operation code;
Nonzero String Area Length in NDTP_PUT_RSP or NDTP_GET_RSP;
Inconsistent String Area Length and String Length(s) in NDTP_GET, NDTP_GET_RSP, NDTP_PUT or NDTP_DEL;
Unexpected NDTP request identifier by client.

Due to the reliable nature of TCP, NDTP/TCP servers 16 and clients 12 need not maintain any additional form of operation timeout. The only transport errors that can occur will result in gross connection level errors. A client 12 should assume that any NDTP requests 10 for which it has not received responses 14 have not been completed. Incomplete operations may be retried. However, whether unacknowledged NDTP requests 10 have actually been completed is implementation dependent. Any partially received NDTP messages should also be ignored.

UDP Mapping

As those skilled in the art will appreciate, the Unreliable Datagram Protocol (UDP) is a best-effort datagram protocol that, like TCP, is also part of the universally implemented subset of the IP suite. UDP provides connectionless, unacknowledged datagram transmission. The minimal protocol overhead associated with UDP can deliver extremely high performance if used properly.

NDTP/UDP clients 12 send UDP datagrams with NDTP request messages 10 to a well-known UDP port (see above). NDTP/UDP servers 16 return NDTP response messages 14 to the client 12 selected local UDP port indicated in the NDTP/UDP datagram containing the requests 10. NDTP/UDP does not require any form of connection or other association to be established in advance. An NDTP interchange begins simply with the client request message 10.

For efficiency, the mapping of NDTP on to UDP permits multiple NDTP messages to be sent in a single UDP datagram. UDP datagrams encode the length of their payload, so when a UDP datagram is received, the exact payload length is available. The recipient of an NDTP/UDP datagram will read NDTP messages from the beginning of the UDP datagram payload until the payload is exhausted. Thus, a sender of an NDTP/UDP datagram is free to pack as many NDTP messages as will fit in a UDP datagram.

The largest possible UDP datagram payload is presently slightly smaller than 64K bytes. In addition, there may be a performance penalty sending UDP datagrams that are larger than the maximum datagram size allowed by the physical network links between the sender and intended recipient. IP provides mechanisms for discovering this maximum transfer size, called the Path Maximum Transfer Unit (Path MTU), but a discussion of these mechanisms is beyond the scope of this specification. An implementation of NDTP/UDP should preferably respect these datagram size limitations.

JA0020

US 7,814,170 B2

13

Unlike TCP, UDP does not provide reliable data delivery. Therefore, an NDTP/UDP client 12 implementation should implement a timeout mechanism to await the response for each outstanding NDTP request 10. The exact duration of this response timer is implementation dependent, and may be set adaptively as a client 12 receives responses from a server 16, but a reasonable default maximum value is preferably 60 seconds. If a response 14 is not received within the response timeout, the client 12 may retransmit the request 10. NDTP/ UDP servers 16 need not maintain any timeout mechanisms.

Depending upon the exact timeout values selected, the client 12 retry mechanism may place some requirements on a client's 12 use of the NDTP request identifier 18 field. If the response timer is shorter than the maximum lifetime of a datagram in the network, it is possible that a delayed response will arrive after the response timer for the associated request has expired. An NDTP/UDP client 12 implementation should ensure that this delayed response is not mistaken for a response to a different active NDTP request 10. Distinguishing current responses from delayed ones is called antialiasing. One presently preferred way to perform antialiasing in NDTP/UDP is to ensure that NDTP request identifier 18 values are not reused more frequently than the maximum datagram lifetime.

NDTP/UDP client 12 implementations that use the NDTP request identifier 18 for antialiasing should ignore (i.e., skip) NDTP messages within a NDTP/UDP datagram with invalid NDTP request identifier 18 values. Client 12 or server 16 NDTP/UDP implementations detecting any other protocol error should also preferably discard the remainder of the current NDTP/UDP datagram without processing any further NDTP requests from that datagram. Some examples of such detectable errors include:

Illegal NDTP message operation code;

Nonzero String Area Length in NDTP_PUT_RSP or NDT-P_GET_RSP;

Inconsistent String Area Length and String Length(s) in NDTP_GET, NDTP_GET_RSP, NDTP_PUT or NDT-P_DEL;

Inconsistent NDTP message length and UDP datagram length.

Because NDTP/UDP messages are limited to the length of a single UDP datagram payload, NDTP/UDP cannot be used to transfer long NDTP messages. For example, it would be very difficult to send an NDTP_GET message with NDTP/ UDP for a 64K byte identifier string. This case is avoidable by a client 12 realizing that an NDTP message is too long to send as a UDP datagram and using NDTP/TCP instead. However, a greater limitation is that NDTP currently provides no mechanism for an NDTP server 16 to indicate that a response is too large to fit in a UDP datagram. In this case, the NDTP server 16 should not send a response 14, and it may or may not chose to complete the request 10. The recovery mechanism in this case preferably is, after several unsuccessful attempts to use NDTP/UDP, a client 12 may try again with NDTP/TCP.

Because UDP does not provide any form of congestion avoidance it is possible that the simple retry strategy specified for NDTP/UDP can create network congestion. Network congestion can cause a severe degradation in the successful delivery of all network traffic (not just NDTP traffic, nor just the traffic from the particular client/server 12, 16 pair) through a congested network link. Congestion will occur when an NDTP/UDP implementation is sending datagrams faster than can be accommodated through a network link. Sending a large number of NDTP/UDP datagrams all at once is the most likely way to trigger such congestion. Sending a single NDTP/UDP datagram, assuming it is smaller than the Path

14

MTU, and then waiting for a response 14 is unlikely to create congestion. Therefore, the use of NDTP/UDP should be confined to contexts where clients 12 send few outstanding requests at a time, or where network congestion is avoided through network engineering techniques.

Those skilled in the art will appreciate that network congestion is a highly dynamic property that is a function of network traffic from all sources through a network link and will vary over time over any given network path. An NDTP/ UDP client 12 implementation can recover from network congestion by switching to NDTP/TCP after several failed retries using NDTP/UPD. Failure due to network congestion may be indistinguishable from failure due to UDP packet size limitations, but since the recovery strategy is the same in both cases, there is no need to distinguish these cases.

NDTP/UDP Congestion Avoidance

Given the stateless, transactional nature of NDTP, NDTP/ UDP generally performs much better than NDTP/TCP. This performance improvement is measurable both in terms of the maximum sustainable transaction rate of an NDTP server 16, and the latency of a single response to an NDTP client 12. In the same way as the Domain Name Service (DNS), NDTP fits naturally in the UDP model. It is a working assumption of NDTP (and DNS) that for every NDTP transfer, there will be an associated transfer of real data that is an order of magnitude or more greater in size than the NDTP protocol traffic. This property will naturally limit the amount of NDTP traffic on a network. However, in applications where NDTP traffic reaches high levels, particularly at network 'choke points' which are not within the control of network engineers, it may be desirable to support a congestion avoidance mechanism for NDTP/UDP.

However, those skilled in the art will appreciate that the other main future requirement of NDTP, security (described below), implies an existing, durable association between NDTP clients 12 and NDTP servers 16. This association is much like (and in the case of SSL, it is) a network connection. Therefore, depending upon what security technology is applied, developing a congestion avoidance mechanism for NDTP/UDP may be an irrelevant exercise.

Server Redirection Mechanism

NDTP provides two mechanisms for server redirection. The redirection mechanisms allow cluster and hierarchical topologies, and mixtures of such topologies (described in detail below). The first redirection mechanism supported by NDTP, embedded redirection links, uses an application specific convention to return redirection pointers as NDTP data location strings. For example, if location strings are W3C URLs, a URL with the schema ndtp: could be a server indirection pointer. An NDTP_GET_RSP message may contain any mixture of real data location strings and NDTP server redirection pointers. In this case, the client must issue the same NDPT_GET query message to other NDTP servers indicated by the redirection pointers. The total set of data location strings associated with the supplied identifier string is the collection of all the data location strings returned from all the NDTP servers queried. The embedded redirection link technique does not require any specific NDTP protocol support. Therefore, it could be used within the NDTP protocol as is, and does not require further description in this specification.

The second redirection mechanism, which is specified as a future extension of NDTP, is having the server return an NDTP_RDR_RSP message in response to an NDTP request for which the NDTP server has no ownership of the supplied identifier string. Those skilled in the art will note that unlike

JA0021

US 7,814,170 B2

15

the embedded redirection links mechanism, the NDTP_RDR_RSP mechanism applies to all NDTP requests, not just NDTP_GET.

As mentioned above, the second redirection mechanism has two variants. The first variant of the NDTP_RDR_RSP function mechanism specifies a well-known function that all NDTP server and client implementations know when they are programmed, and the NDTP_RDR_RSP message carries a table of NDTP server URLs. The format of the NDTP_RDR_RSP message with an NDTP server URL table is shown in FIG. 9(a).

The appropriate NDTP server is selected from the table in the NDTP_RDR_RSP message by applying a well-known function to the identifier string and using the function result as an index into the NDTP server table. The well-known function preferably applied is the hashpjw function presented by Aho, Sethi and Ullman in their text *Compilers, Principles, Techniques and Tools*:

```
uint32_t
hash (uint8_t *s, uint32_t slen, uint32_t size)
{
    uint32_t g;
    uint32_t i;
        uint32_t h = 0;
    uint8_t c;
    for (i = 0; i < slen; i++) {
        c = s[i];
        h = (h << 4) + c;
        g = (h & 0xf0000000);
        if (g) {
            h = g >> 24;
            h = g;
        }
    }
    return h % size;
}
```

In this case, the size parameter is the number of elements in the NDTP server URL table returned in the NDTP_RDR_RSP message. For the hashpjw function to behave correctly, the size parameter must be a prime number, therefore the NDTP server URL table must also have a prime number of elements. Those skilled in the art will appreciate that the same NDTP server may appear multiple times in the NDTP server URL table. For example, if the server URL table has 2039 elements, by putting one NDTP server URL in the first 1019 table elements, and a second NDTP server URL in the second 1020 table elements, the responsibility for the index string space will be split roughly in half.

The second variant of the NDTP_RDR_RSP function mechanism specifies that a general function description will be sent to the NDTP client in the NDTP_RDR_RSP message. The NDTP client will apply this function to the identifier string and the output of the function will be the NDTP server URL to which to send NDTP requests for the particular identifier string. The advantage of this technique over the well-know function approach is that it allows application-specific partitions of the identifier string space. This can permit useful administrative control. For example, if General Electric manages all identifiers beginning with the prefix "GE", a general function can be used to make this selection appropriately. The disadvantage of using a general function is it may be less efficient to compute than a well-known function.

There are a variety of possible mechanisms for sending function descriptions. NDTP is expected to be applied in environments that make extensive use of the Java programming platform. Therefore the NDTP_RDR_RSP mechanism

16

preferably uses a feature of the Java programming language called "serialized representation" to communicate generalized functions in the NDTP_RDR_RSP message. A serialized form of a Java object is a stream of bytes that represents the precise state of the object, including its executable methods. For example, the Java Remote Method Invocation (RMI) mechanism uses serialized objects to send executable code to a remote platform for execution. The NDTP_RDR_RSP message contains the serialized form of an object implementing this Java interface:

```
interface NDTPRedirectFunction {
    String selectServer(byte[ ] identifier);
}
```

The format of the NDTP_RDR_RSP message with a Java Serialized form of the NDTP redirection function is specifically identified in FIG. 9(b).

The NDTP server redirection mechanism also permits construction of NDTP server clusters (described below). It is expected that the identifier string hash function will be defined at the time NDTP is implemented, but the actual list of NDTP servers 90 will change from application to application and within a single application throughout the lifetime of the system. Therefore, it is necessary for clients to be able to discover updated NDTP server lists, and any other relevant dynamic parameters of the server selection function as these inputs change.

Hierarchical Server Topology

While the NDTP server topology supported by the server redirection mechanism described above and shown in FIGS. 9(a) and 9(b) is an extremely powerful and general scaling technique, suitable for diverse topology deployments, some applications might still benefit from a specifically hierarchical server topology. An NDTP server hierarchy 100, such as that shown in FIG. 10, permits identifier/location association data to be owned and physically controlled by many different entities. An NDTP server cluster should be managed by a single administrative entity 102, and the distribution of data can be for performance and scaling purposes. Furthermore, a server hierarchy would provide some fault isolation so portions of the identifier/location association data can be accessed and updated in the presence of failures of some NDTP servers 104. Finally, an NDTP server hierarchy can localize NDTP update operations (NDTP_PUT and NDTP_DEL), which can improve performance and reduce network load.

A hierarchical NDTP server topology also allows organizations to maintain their own local NDTP server 104 or NDTP server cluster 102 that manages associations to data locations that are within the organizations' control. Upper tier NDTP servers 108 would be used to link the various leaf NDTP servers 104.

Server Constellations

The NDTP server organization also allows NDTP servers to be combined in various ways to build server constellations that offer arbitrary server performance scalability and administrative control of the location of portions of the identifier/data location relationship mappings. FIG. 11 illustrates an NDTP server constellation 110 as it relates to a client 112 and a data repository 114. In FIG. 10, the client 112 and data repository 114 of FIG. 11 were merged into the single client entity 106 for ease of discussion. Their distinction can now be

US 7,814,170 B2

17                                              18

separated and identified in order to illustrate the storage and retrieval of data in a distributed data collection.

As shown in FIG. 11, a client 112 consults the server constellation 110, which may be construed in either of two forms (see FIGS. 12 and 13), and which returns location strings in response to a client 112 request. Once the client 112 has the location string for a particular unit of data, the client 112 contacts and retrieves information directly from the data repository 114. In one embodiment, if the client 112 contains a data repository 114, internal application logic would facilitate this interaction. Those skilled in the art will appreciate that the term "data collection" is being employed rather than the term "database" because database frequently invokes images of Relational Database Systems (which is only one application of the protocol); an NDTP data collection could just as easily be routing tables as it could be files or records in a RDBS database.

NDTP server constellations 110 preferably have two basic organizational paradigms: Client-Centric and Server-Centric. NDTP supports both by design, and both approaches apply to all aspects of managing the relationships between identifiers and locations, such as data retrieval, index manipulation, and server redirection. Each will be discussed separately below.

Client-Centric Approach

The first basic pattern that NDTP supports is driven by the client 112, and can be called "client-centric". Referring to FIG. 12, a single client (not shown) asks a server 120a in the server constellation 110 for operations that the client desires executed (represented by arrow 1 in FIG. 12). If the client doesn't receive the data requested, it will receive a redirection response message (NDTP_RDR_RSP) from the contacted server 120a (arrow 2). The client then uses the information it receives to ask another server 120b for the operations the client wants to initiate (arrow 3). A successful response from the second server 120b is then sent to the client (arrow 4).

This design constructs operating patterns for (1) redirection, (2) index operations, and (3) hierarchical or cluster topologies. The important point is that the Network Distributed Tracking Protocol is designed to support highly configurable methods for processing index-related operations.

NDTP supports two specific redirection mechanisms, which are not mutually exclusive and may be combined in any way within a single NDTP server constellation 110. This formation may increase performance when many clients (not shown) participate, since client processing is emphasized rather than server processing. The first NDTP redirection mechanism uses a distinctively encoded location string for each NDTP server 120a,b that contains additional location strings associated with the identifier string supplied in the NDTP request 122a,b. This is an embedded redirection link. For example, if location strings are some form of HTTP URL, a URL with the schema specifier ndtp: would indicate a redirection. Using this scheme, the location strings associated with an identifier string may be spread among multiple NDTP servers 120a,b. In addition to redirection, in FIG. 12, all index manipulation operations continue to apply, but they are directed at the correct NDTP server 110b for which they apply: NDTP_GET, NDTP_PUT, NDTP_DEL.

The second NDTP redirection mechanism uses a NDTP_RDR_RSP message to indicate that the server 120a to which the NDTP request 122a was directed does not contain any of the location strings associated with the identifier string supplied in the NDTP request 122a. The NDTP_RDR_RSP message contains all the information required for the originator of the NDTP request 122a to reissue the original NDTP request 122b to a different NDTP server 120b that does have location strings associated with the identifier string supplied in the NDTP request 122b. This information may be an array of NDTP server hosts from which one is selected by applying a well-known function to the identifier string supplied in the NDTP request 122b, or the communicated function to apply as well as a list or other description of the NDTP server hosts from which to choose, as described above.

FIG. 12 illustrates a cluster topology for client interaction with NDTP servers 120. A single client queries a first server 120a (Server0), learns of a new index location (Server1), and then contacts that server 120b (Server1) for the operations it wishes to execute on the index that the client identifies. The basic idea is that a client asks a server 120a to process an index operation. If the contacted server 120a does not have all the information, as for example in a redirect, then it passes the request to another server 120b. If the second server 120b is appropriate it responds appropriately, or it passes the request on to another server (not shown), and so on. FIG. 12 could also illustrate a hierarchical topology if a client (not shown) contacted another client in a handoff as shown in FIG. 10, where a client 106 "asks up" to another client 106, and so on.

Behind the scenes, the server constellation 110 could also be using a hierarchical organization or a cluster organization for managing indices. The important point of this topology is pushing processing emphasis toward clients (not shown) rather than toward servers 120a,b. Such protocol design has scale implications as the number of participating machines/mechanisms increases, since it distributes aggregate processing.

Server-Centric Approach

The second basic pattern that the Network Distributed Tracking Protocol provides is a "Server-Centric Approach". FIG. 13 shows the server constellation 110 characterizing "server-centric" functionality. In this figure, an NDTP server 130a (Server0) receives a request 132a from a client (not shown). The server 130a (Server0) passes the request to a second server 130b (Server1), which is an appropriate server for the process, and the second server 130b returns a response 134a to the first server 130a (Server0). If the second server 130a (Server1) was not appropriate, it could pass the request to another server (not shown), and so on. Each NDTP server 130a,b will combine the results of NDTP requests 132a,b it has performed of other NDTP servers 130a,b with whatever responses 134a,b it generates locally for the original NDTP request 132a, and the combined response 134b will be the appropriate response for the original NDTP request 132a.

This design constructs operating patterns for (1) index operations and (2) hierarchical or cluster topologies. The important point is that the Network Distributed Tracking Protocol is designed to support highly configurable methods for processing index-related operations, but this method emphasizes server-processing rather than client-processing. In FIG. 13, all index manipulation operations continue to apply, but they are directed at the correct NDTP server 130a,b for which they apply: NDTP_GET, NDTP_PUT, NDTP_DEL.

FIG. 13 illustrates an hierarchical topology for client interaction with NDTP servers 130. A single client queries a first server 130a (Server0), which is not appropriate, and so the first server 130a (not the client) itself contacts an appropriate server 130b (Server1) for operations it "passes through" to execute on the index that the client has identified. Alternatively, FIG. 13 could illustrate a cluster topology if a server 130a contacted another server 130b in a what is known as a "peer" handoff. The important point of this topology is that it

US 7,814,170 B2

19                                                          20

pushes processing emphasis toward servers 130a,b rather than toward clients. Since index processing services can be centralized, administration of the indices can be administered more conveniently in certain cases.

The simplest NDTP server constellation 110 is a single server 130, and the protocol is designed to permit massive scale with a single or simple server constellation. Highly configurable installations are possible using "client-centric" or "server-centric" techniques. NDTP server constellations 110 composed of more than one NDTP server may use any combination of the two approaches for performance optimization and data ownership properties. Client-centric and server-centric approaches can be used to build NDTP server clusters, NDTP server trees, NDTP server trees of NDTP server clusters, or any other useful configuration.

NDTP design thus explicitly addresses the emerging "peer-to-peer" topologies called "pure" and "hybrid". The "pure" peer-to-peer approach emphasizes symmetric communication among peers, and is achievable through the "server-centric" approach. The "hybrid" peer-to-peer approach emphasizes asymmetric communication among non-peer participants, and is achievable through the "client-centric" approach. Beyond the pure and hybrid approaches that NDTP allows, as described above, NDTP permits any additional mixtures between client-centric and server-centric approaches to provide superior configurability and performance tuning.

Security

NDTP preferably has no provisions for security. Three key features of security should therefore be provided:

Data privacy (encryption)

Client 12 authentication

Client 12 authorization

NDTP/TCP will be extended using SSL/X.509 to support these security features in a straightforward, 'industry standard' way.

Adding security to NDTP/UDP also requires technology other than SSL. For example, IPSec supports securing all IP traffic, not just TCP between two endpoints. IPSec is a somewhat more heavyweight technology than SSL, and the rate of adoption in industry is somewhat slow. Nonetheless, it can provide the relevant capabilities to NDTP/UDP.

Additional Transport Layers

The early-adopter portion of the industry is in a state of turmoil regarding network transport protocols. On one hand, TCP has provided decades of solid service, and is so widely implemented that the mainstream computer industry could not imagine using another protocol to replace it. On the other hand, TCP lacks several features that may be necessary to enable the next step in network applications. In particular, the TCP design assumed pure software implementations by relatively powerful host computer computers. However, developments in network technology have increased the packet rate that a TCP implementation must handle to deliver full network speed beyond the capabilities of even increasingly powerful host computers. To take the next step, much of the packet processing work must be off-loaded to hardware, and TCP's design makes this very difficult.

It is unclear whether it will become possible to implement the relevant portions of TCP in hardware in a timely fashion. If this does not happen, one of the many new transport layers currently under development (ST, SCTP, VI, etc.) may emerge as a market leader in high performance networking. In this case, a layering of NDTP on top of a new hardware accelerated transport would permit NDTP servers to deliver

greatly increased transaction rates. Even with the use of a hardware accelerated transport layer, however, the only benefit to a typical NDTP client would be lower cost of service due to cheaper NDTP server platform requirements. On the flip side, NDTP clients could likely still use a cheaper software implementation of the new transport because of individual clients' modest performance demands.

As can be seen, the Network Distributed Tracking Protocol is a networking protocol that runs on top of any stream (e.g. TCP) or datagram (e.g. UDP) network transport layer. The goal of NDTP is to support a network service that efficiently manages mappings from each individual key string, an identifier, to an arbitrary set of strings, locations. NDTP permits protocol participating clients to add and remove identifier/location associations, and request the current set of locations for an identifier from protocol servers.

NDTP is designed for use in the larger context of a distributed data collection. As such, it supports an architecture, in which information about where data associated with particular application entities, can be managed and obtained independently of the data itself. One way to understand this is as a highly dynamic DNS for data. DNS maintains a mapping between names and machines. NDTP and its associated servers maintain a mapping between entity identifiers and data locations. The identifier/location mapping maintained by NDTP servers is much more dynamic (more frequent updates), than the domain name/IP address mapping maintained by DNS. NDTP is designed to support very fast, very diverse, and very large scale mapping manipulations.

Regardless of the expected system context of NDTP in a distributed data collection, those skilled in the art will appreciate that NDTP can be used for any application in which one-to-zero or one-to-many associations among strings are to be maintained and accessed on a network. In applications of NDTP other than distributed databases, the term identifier is likely to make sense in most cases, but the term location may not. In any context, however, although NDTP supports identifier and location strings of up to $2^{32}$-4 bytes in length, it is a general assumption that the strings are typically short.

Those skilled in the art will note that the invention provides for the management and manipulation of indices and their associated relationships. Even more importantly, it is the manipulation of dynamic and spontaneous relationships between indices and locations, not the indices and locations, that is the core significance. The Network Distributed Tracking Protocol was written to manipulate these relationships, of which indices (identifiers) and locations are components of the aggregate solution.

It is to be understood that a wide range of changes and modifications to the embodiments described above will be apparent to those skilled in the art, and are contemplated. It is therefore intended that the foregoing detailed description be regarded as illustrative, rather than limiting, and that it be understood that it is the following claims, including all equivalents, that are intended to define the spirit and scope of the invention.

We claim:

1. A system for managing data stored in a distributed network, the system comprising:

a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and

a data location server network comprising a plurality of data location servers, wherein data location information for a plurality of data entities is stored in the data location server network, at least one of the plurality of data location servers includes location information associated with the identifier string, each one of the plurality of

JA0024

US 7,814,170 B2

21

data location servers comprises a processor and a portion of the data location information, the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.

**2.** The system of claim **1**, wherein the location information comprises any portion of a hash generated with the hash function.

**3.** The system of claim **1**, wherein the data repository comprises a plurality of data repository servers and wherein each of the plurality of data location servers is configured, in response to a request to store data in the data repository, to execute the hash function and store the data on one of the plurality of data repository servers based on a result of the hash function.

**4.** The system of claim **1**, wherein each one of the data location servers is configured to return all location information associated with a respective one of the data entities in response to a request for any location information associated with the respective one of the data entities.

**5.** The system of claim **1**, wherein the location information includes a hash table and the hash table includes an association between a hash of the string identifier and at least one identifier of the at least one of the plurality of data location servers.

**6.** A system for managing data location information and providing the data location information in response to location queries, the system comprising:

a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity;

wherein the location server includes a processor; and

programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity.

**7.** The system of claim **6**, wherein the list of at least one other location server comprises a list of a plurality of location servers in the network and a corresponding list of a plurality of entities having location information on the respective one of the plurality of location servers.

22

**8.** The system of claim **6**, wherein each of a plurality of location servers in the network stores only a portion of the data location information.

**9.** The system of claim **6**, wherein the location information in the location server is maintained in an indexed location store.

**10.** The system of claim **9**, wherein the indexed location store comprises a string store indexed by a hash table.

**11.** The system of claim **9**, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of clients.

**12.** The system of claim **9**, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers.

**13.** The system of claim **9**, wherein the location query identifying the desired entity comprises a unique identifier for the desired entity, and wherein the programming logic stored on the location server further comprises programming logic configured to apply an index function to the unique identifier to retrieve at least a portion of the locations associated with the unique identifier in the indexed location store.

**14.** The system of claim **13**, wherein the indexed location store comprises a string store and the index function comprises a hash function.

**15.** A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising:

correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network;

receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities;

determining which of the plurality of location servers includes the location information;

sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and

sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information.

**16.** The method of claim **15**, further comprising applying an identifier of the data entity to an indexing function to determine which of the location servers includes the location information.

**17.** The method of claim **16**, wherein each one of the plurality of location servers comprises a portion of an indexed table of the identifiers and corresponding associated locations, and wherein determining which of the plurality of location servers includes the location information comprises applying one of the identifiers to a hash function to look up corresponding associated locations in the indexed table, the one of the identifiers identifying the data entity.

* * * * *

JA0025



US007103640B1

(12) **United States Patent**　　(10) **Patent No.:**　**US 7,103,640 B1**
Overton et al.　　(45) **Date of Patent:**　**Sep. 5, 2006**

(54) **NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL**

(75) Inventors: **John K. Overton**, Chicago, IL (US); **Stephen W. Bailey**, Chicago, IL (US)

(73) Assignee: **Econnectix, LLC**, Chicago, IL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 640 days.

(21) Appl. No.: **09/661,222**

(22) Filed: **Sep. 13, 2000**

**Related U.S. Application Data**

(60) Provisional application No. 60/153,709, filed on Sep. 14, 1999.

(51) Int. Cl.
　　*G06F 15/16*　　(2006.01)
(52) U.S. Cl. ........................ **709/217**; 709/219; 707/10
(58) Field of Classification Search ............ 709/201–3, 709/217–19, 230, 227, 228; 707/3, 4, 5, 707/6, 10
　　See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,553,261 A | 11/1985 | Froessl | |
| 4,636,858 A | 1/1987 | Hague et al. | |
| 4,728,978 A | 3/1988 | Inoue et al. | |
| 4,800,488 A | 1/1989 | Agrawal et al. | |
| 4,825,406 A | 4/1989 | Bean et al. | |
| 4,835,372 A | 5/1989 | Gombrich et al. | |
| 4,914,571 A | 4/1990 | Baratz et al. | |
| 5,008,700 A | 4/1991 | Okamoto | |
| 5,124,814 A | 6/1992 | Takahashi et al. | |
| 5,193,185 A | 3/1993 | Lanter | |
| 5,208,623 A | 5/1993 | Takahashi | |
| 5,291,399 A | 3/1994 | Chaco | |
| 5,319,401 A | 6/1994 | Hicks | |
| 5,347,600 A | 9/1994 | Barnsley et al. | |
| 5,384,643 A | 1/1995 | Inga et al. | |
| 5,414,841 A | 5/1995 | Bingham et al. | |
| 5,455,648 A | 10/1995 | Kazami | |
| 5,475,817 A | * 12/1995 | Waldo et al. | ............... 719/316 |
| 5,479,654 A | 12/1995 | Squibb | |
| 5,499,113 A | 3/1996 | Tsuboi et al. | |
| 5,522,077 A | 5/1996 | Cuthbert et al. | |

(Continued)

FOREIGN PATENT DOCUMENTS

EP　　　568 161 A1　　3/1993

(Continued)

OTHER PUBLICATIONS

"Service Location in an Open Distributed Environment," Beitz et al, Second International Workshop on Services in Distributed and Networked Environments, IEEE Comput. Soc., pp. 28-34 (Jun. 1995).

(Continued)

*Primary Examiner*—Marc D. Thompson
(74) *Attorney, Agent, or Firm*—Brinks Hofer Gilson & Lione

(57)　　　**ABSTRACT**

A network distributed tracking wire transfer protocol for storing and retrieving data across a distributed data collection. The protocol includes a location string for specifying the network location of data associated with an entity in the distributed data collection, and an identification string for specifying the identity of an entity in the distributed data collection. According to the protocol, the length of the location string and the length of the identification string are variable, and an association between an identification string and a location string can be spontaneously and dynamically changed. The network distributed tracking wire transfer protocol is application independent, organizationally independent, and geographically independent. A method for using the protocol in a distributed data collection environment and a system for implementing the protocol are also provided.

**25 Claims, 12 Drawing Sheets**



JA0026

**US 7,103,640 B1**

Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,537,547 | A | 7/1996 | Chan et al. |
| 5,550,981 | A | 8/1996 | Bauer et al. |
| 5,551,027 | A | 8/1996 | Choy et al. |
| 5,557,790 | A | 9/1996 | Bingham et al. |
| 5,560,005 | A | 9/1996 | Hoover et al. |
| 5,576,952 | A | 11/1996 | Stutman et al. |
| 5,579,067 | A | 11/1996 | Wakabayashi |
| 5,610,653 | A | 3/1997 | Abecassis |
| 5,617,570 | A | 4/1997 | Russell et al. |
| 5,625,841 | A | 4/1997 | Dawkins et al. |
| 5,649,247 | A | 7/1997 | Itoh et al. |
| 5,664,170 | A | 9/1997 | Taylor |
| 5,669,029 | A | 9/1997 | Fyson et al. |
| 5,740,428 | A | 4/1998 | Mortimore et al. |
| 5,764,889 | A | 6/1998 | Ault et al. |
| 5,764,906 | A * | 6/1998 | Edelstein et al. ........... 709/219 |
| 5,774,676 | A | 6/1998 | Montulli |
| 5,781,725 | A | 7/1998 | Saito |
| 5,784,565 | A | 7/1998 | Lewine |
| 5,802,518 | A | 9/1998 | Karaev et al. |
| 5,809,161 | A | 9/1998 | Auty et al. |
| 5,809,331 | A | 9/1998 | Staats et al. |
| 5,809,495 | A | 9/1998 | Loaiza |
| 5,813,006 | A | 9/1998 | Polnerow et al. |
| 5,848,246 | A | 12/1998 | Gish |
| 5,864,482 | A | 1/1999 | Hazama et al. |
| 5,872,973 | A | 2/1999 | Mitchell et al. |
| 5,875,302 | A | 2/1999 | Obhan |
| 5,903,889 | A | 5/1999 | de la Huerga et al. |
| 5,907,837 | A | 5/1999 | Ferrel et al. |
| 5,913,210 | A | 6/1999 | Call |
| 5,915,240 | A | 6/1999 | Karpf |
| 5,918,214 | A | 6/1999 | Perkowski |
| 5,920,702 | A | 7/1999 | Bleidt et al. |
| 5,940,844 | A | 8/1999 | Cahill et al. |
| 5,950,173 | A | 9/1999 | Perkowski |
| 5,961,610 | A | 10/1999 | Kelly et al. |
| 5,966,705 | A | 10/1999 | Koneru et al. |
| 5,974,124 | A | 10/1999 | Schlueter, Jr. et al. |
| 5,978,773 | A | 11/1999 | Hudetz et al. |
| 5,987,519 | A | 11/1999 | Peifer et al. |
| 5,995,965 | A | 11/1999 | Experton |
| 6,032,175 | A | 2/2000 | Fletcher et al. |
| 6,047,332 | A | 4/2000 | Viswanathan et al. |
| 6,055,544 | A | 4/2000 | DeRose et al. |
| 6,058,193 | A | 5/2000 | Cordery et al. |
| 6,092,189 | A | 7/2000 | Fisher et al. |
| 6,108,787 | A | 8/2000 | Anderson et al. |
| 6,131,095 | A * | 10/2000 | Low et al. .................. 707/10 |
| 6,154,738 | A | 11/2000 | Call |
| 6,188,766 | B1 | 2/2001 | Kocher |
| 6,201,931 | B1 | 3/2001 | Cipolla et al. |
| 6,202,070 | B1 | 3/2001 | Nguyen et al. |
| 6,209,095 | B1 | 3/2001 | Anderson et al. |
| 6,212,280 | B1 | 4/2001 | Howard, Jr. et al. |
| 6,377,986 | B1 * | 4/2002 | Philyaw et al. ............. 709/219 |
| 6,418,441 | B1 * | 7/2002 | Call ............................ 707/10 |
| 6,438,652 | B1 | 8/2002 | Jordan et al. |
| 6,463,454 | B1 | 10/2002 | Lumelsky et al. |
| 6,466,980 | B1 | 10/2002 | Lumelsky et al. |
| 6,578,068 | B1 | 6/2003 | Bowman-Amuah |
| 6,711,408 | B1 | 3/2004 | Raith |
| 2002/0112048 | A1 | 8/2002 | Gruyer et al. |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 889 422 A2 | 1/1999 |
| WO | WO 86/05610 | 9/1986 |
| WO | WO 98/15910 | 4/1998 |
| WO | WO 98/31138 | 7/1998 |
| WO | WO 00/03526 | 1/2000 |

### OTHER PUBLICATIONS

Callaghan V L et al: "Structures and Metrics for Image Storage and Interchange" Journal of Electronic Imaging, vol. 2 No. 2, Apr. 1, 1993, pp. 126-137.

Bourke D G et al: "Programmable Module and Circuit for Machine-Readable Unique Serial Number" IBM Technical Dislosure Bulletin, vol. 27, No. 4A, Sep. 1, 1984 pp. 1942-1944.

Kleinholz L et al: "Supporting Cooperative Medicine: The Bermed Project" IEEE Multimedia, vol. 1, No. 4, Dec. 21, 1994, pp. 44-53.

"Method for Network Naming and Routing" IBM Technical Disclosure Bulletin, vol. 37, No. 9, Sep. 1, 1994, p. 255.

"Minimizing Locking To Access Global Shared Data", IBM Technical Disclosure Bulletin, pp 619-622, Feb. 1995.

"Service Location in an Open Distributed Environment," Beitz et al, Second International Workshop on Services in Distributed and Networked Environments, IEEE Comput. Soc., pp. 28-34 (Jun. 1995).

Muniz, R., et al., "A robust software barcode reader using the Hough transform", Abstract from IEEE/IEE Electronic Library online, printed Apr. 30, 2001, 2 pages.

Fresonke, D., "In-fab identification of silicon wafers with clean, laser marked barcodes", Abstract from IEEE/IEE Electronic Library online, printed Apr. 30, 2001, 2 pages.

Sriram, T., et al., "Applications of barcode technology in automated storage and retrieval systems", Abstract from IEEE/IEE Electronic Library online, printed Apr. 30, 2001, 2 pages.

* cited by examiner



**Use Of Request Identifiers**

*Fig. 1*

U.S. Patent

Sep. 5, 2006

Sheet 2 of 12

US 7,103,640 B1



Fig. 2

NDTP String Format



Fig. 3

NDTP_GET Format

U.S. Patent

Sep. 5, 2006

Sheet 3 of 12

US 7,103,640 B1



**NDTP_GET_RSP Format**

*Fig. 4*

U.S. Patent

Sep. 5, 2006

Sheet 4 of 12

US 7,103,640 B1



NDTP_PUT Format

*Fig. 5*

U.S. Patent

Sep. 5, 2006

Sheet 5 of 12

US 7,103,640 B1



NDTP_PUT_RSP Format

*Fig. 6*

U.S. Patent

Sep. 5, 2006

Sheet 6 of 12

US 7,103,640 B1



| 0 | | | | | | | | 70 | | 1 | | | | | | | | | | 2 | | | | | | | | | | 3 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 |

| NDTP_DEL (4) | Reserved |
|---|---|
| NDTP request identifier | |
| String area length (ROUND4(n) + 4 + ROUND4(m) + 4) | |
| Identifier length (n) | |
| Identifier data          72 | |
| Identifier byte n-1 | Identifier padding |
| Location length (m) | |
| Location data          74 | |
| Location byte m-1 | Location padding |

NDTP_DEL Format

*Fig. 7*

JA0033

U.S. Patent

Sep. 5, 2006

Sheet 7 of 12

US 7,103,640 B1

| 0 | | | | | | | | 1 | | | | | | | | | | | 2 | | | | | | | | | | | 3 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

80

```
 0  1  2  3  4  5  6  7 | 8  9  0  1  2  3  4  5  6  7  8  9  0  1  2  3  4  5  6  7  8  9  0  1
```

| NDTP_DEL_RSP (5) | Reserved |
|---|---|
| NDTP request identifier | |
| String area length (0) | |

NDTP_DEL_RSP Format

Fig. 8

U.S. Patent

Sep. 5, 2006

Sheet 8 of 12

US 7,103,640 B1



NDTP_RDR_RSP With Server Table

*Fig. 9(a)*

U.S. Patent

Sep. 5, 2006

Sheet 9 of 12

US 7,103,640 B1



NDTP_RDR_RSP With Redirection Function

*Fig.* 9(b)

JA0036

U.S. Patent

Sep. 5, 2006

Sheet 10 of 12

US 7,103,640 B1



NETWORK DISTRIBUTED TRACKING
DISTRIBUTED RECORD RETRIEVAL

Fig. 10

**U.S. Patent**   Sep. 5, 2006   Sheet 11 of 12   **US 7,103,640 B1**



Fig. 11   NDTP Server Constellation Context



Fig. 12   NDTP Client-Centric Constellation

JA0038



**NDTP Server-Centric Constellation**

_Fig. 13_

US 7,103,640 B1

**1**

# NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

## RELATED APPLICATIONS

This application claims priority to provisional patent application Ser. No. 60/153,709, entitled SIMPLE DATA TRANSPORT PROTOCOL METHOD AND APPARATUS, filed on Sep. 14, 1999, and to regular patent application Ser. No. 09/111,896, entitled SYSTEM AND METHOD FOR ESTABLISHING AND RETREIVING DATA BASED ON GLOBAL INDICES, filed on Jul. 8, 1998.

## MICROFICHE/COPYRIGHT REFERENCE

A Microfiche Appendix (143 frames, 2 sheets) is included in this application that contains material which is subject to copyright protection. The copyright owner has no objection to the facsimile reproduction by anyone of the Microfiche Appendix, as it appears in the Patent and Trademark Office patent files or records, but otherwise reserves all copyright rights whatsoever.

## FIELD OF THE INVENTION

This invention relates generally to the storage and retrieval of information, and in particular, to a protocol for dynamic and spontaneous global search and retrieval of information across a distributed network regardless of the data format.

## BACKGROUND OF THE INVENTION

Data can reside in many different places. In existing retrieval systems and methods, a client seeking information sends a request to a server.

Typically, only data that are statically associated with that server are returned. Disadvantageously, the search is also usually restricted to previously known systems. The search is thus conducted only where the server knows in advance to look.

Another disadvantage of known retrieval systems is the difficulty in accessing data in different forms. Known retrieval systems are typically designed to search for data in limited forms. One example is where a client requests files based on a subject, like a person's name. In the search results, therefore, only text files of peoples' names may be retrieved. Another problem in current retrieval systems is that the client may receive text and image files in the search results, but could not seamlessly access the image files. Yet another problem in current retrieval systems is that video and sound files related to the request may not even be found in the search results. For example, a doctor might be able to retrieve medical records on a specific patient, but cannot view an MRI or X-Ray results associated with that record.

A distributed data collection is a system where data is stored and retrieved among multiple machines connected by a network. Typically, each machine in which some portion of the data in a distributed data collection may reside is called a "data repository machine", or simply a "data repository". One commonly asked question in a data repository environment is: Where is data associated with a particular entity in a distributed data collection? The data location is a key question when a distributed data collection has highly dynamic data distribution properties.

In networked environments where there are a large number of data repositories and any particular entity does not

**2**

store data in all the repositories, a mechanism is needed that would permit queries to be directed only at data repositories with relevant information. It would also be beneficial to permit membership in the set of data repositories itself to be highly dynamic. Such a system would support on-the-fly addition and removal of data repositories from a distributed data collection seamlessly and without the need to reprogram the client and server participants.

## BRIEF SUMMARY OF THE INVENTION

In view of the above, the invention provides a network distributed tracking wire transfer protocol, and a system and method for using the protocol in a networked environment. The network distributed tracking wire transfer protocol includes two basic components: identification strings for specifying the identity of an entity in the distributed data collection, and location strings for specifying network locations of data associated with an entity. The protocol accommodates variable length identifier and location strings. Relationships between identification strings and location strings can be dynamically and spontaneously manipulated thus allowing the corresponding data relationships also to change dynamically, spontaneously, and efficiently. In addition, the network distributed tracking wire transfer protocol is application independent, organizationally independent, and geographically independent.

In another aspect of the invention, a system of components using the network distributed tracking protocol are provided for storing and identifying data with a distributed data collection. The components include (1) a data repository for storing data in the distributed data collection, (2) a client entity for manipulating data in the distributed data collection, and (3) a first server entity operative to locate data in the distributed data collection, which may be coupled to a client entity and/or data repository. In a network with these components, a client entity transmits an identifier string to the first server entity along with the client request, and the first server entity provides a set of location strings to the client entity in response thereto. The first server entity maps the identifier string received from the client entity to a set of location strings. The network may also include any number of additional server entities coupled to the first server entity.

According to yet another aspect of the invention, a method is provided for storing and retrieving tracking information over a network using a wire transfer protocol. A location string specifies the location of data associated with an entity in the distributed data collection and the identification string specifies the identification of an entity in a distributed data collection. A first data repository entity stores data by associating an identification string with each particular stored unit of data, and by mapping the identification string to a location string associated with the first data repository. The identification string and location string for the particular unit of data are at a first server entity coupled to the first data repository entity. A request is transmitted from a client entity to the first server entity to retrieve at least one location string associated with the stored unit of data in the distributed data collection. The request includes the identification string associated with the particular stored unit of data. The request is received at the first server entity, which responds to the client entity by providing at least one location string associated with the particular stored unit of data to the client entity.

The request may also be transmitted to a second server entity prior to responding to the client entity, where the

US 7,103,640 B1

**3**

second server entity is coupled to the first server entity and includes the mapping of the identification string and location strings for the particular units of data. In such case, the second server entity responds to the client entity by providing the at least one location string associated with the particular stored unit of data to the client entity.

The network distributed tracking protocol of the invention is a networking protocol that efficiently manages mappings from one or more identifier strings to zero or more location strings. The protocol permits client entities to add and remove identifier/location associations, and request the current set of locations for an identifier or identifiers from server entities that comply with the protocol.

The protocol is designed for use in the larger context of a distributed data collection. As such, it supports an architecture in which information about where data associated with particular application entities can be managed and obtained independently of the data itself. The protocol and its associated servers thus maintain a mapping between entity identifiers and data locations. The identifier/location mapping maintained by the servers is very dynamic. Regardless of the expected system context in a distributed data collection, the protocol can be used for any application in which one-to-one or one-to-many associations among strings are to be maintained and accessed on a network.

In any context, the protocol supports identifier and location strings of up to $2^{32}-4$ bytes in length, but in most applications it is expected that the strings are typically short. String length is not fixed by the protocol, except by the upperbound. Accordingly, string formats are controlled at a local level and not dictated by the protocol.

These and other features and advantages of the invention will become apparent upon a review of the following detailed description of the presently preferred embodiments of the invention, when viewed in conjunction with the appended drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is an example of multiple outstanding protocol requests.

FIG. **2** is a layout of one presently preferred string format.

FIG. **3** is a layout of one presently preferred NDTP_GET message.

FIG. **4** is a layout of one presently preferred NDTP_GET_ RSP message.

FIG. **5** is a layout of one presently preferred NDTP_PUT message.

FIG. **6** is a layout of one presently preferred NDTP_PUT_ RSP message.

FIG. **7** is a layout of one presently preferred NDTP_DEL message.

FIG. **8** is a layout of one presently preferred NDTP_DEL_ RSP message.

FIG. **9** is a layout of one presently preferred NDTP_ RDR_RSP message, where FIG. **9**(*a*) shows a server table layout, and FIG. **9**(*b*) shows a redirection function layout.

FIG. **10** is a system block diagram showing a multi-server implementation environment of the network distributed tracking wire transfer protocol of the invention.

FIG. **11** is a system diagram showing an NDTP server constellation configuration.

FIG. **12** is a system diagram showing a client-centric constellation approach.

FIG. **13** is a system diagram showing a server-centric constellation approach.

**4**

## DETAILED DESCRIPTION OF THE PRESENTLY PREFERRED EMBODIMENTS OF THE INVENTION

The following terms are used to describe the operation of the presently preferred network distributed tracking protocol (NDTP). An "identifier string" or an "identifier" is a unique string with which zero or more location strings are associated in an NDTP server. A "data location" or a "location" is a string that is a member of a set of strings associated with an identifier string in an NDTP server. An "NDTP client" or a "client" is a network-attached component that initiates update or lookup of identifier/location mappings from an NDTP server with NDTP request messages. An "NDTP server" or a "server" is a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to NDTP request messages from NDTP clients. The term "Network Byte Order" is the ordering of bytes that compose an integer of larger than a single byte as defined in the Internet Protocol (I P) suite. Preferably, Network Byte Order specifies a big-endian, or most significant byte first, representation of multibyte integers. In this specification a byte is preferably composed of eight bits.

Network Distributed Tracking Protocol (NDTP)

The Network Distributed Tracking Protocol (NDTP) efficiently tracks the location of data associated with an individual entity in a distributed data collection. NDTP is a transactional protocol, which means that each operation within NDTP consists of a request message from an NDTP client to an NDTP server, followed by an appropriate response message from the NDTP server to the NDTP client. NDTP defines an entity key (or "identifier") as a unique string used to refer to an entity about which a distributed query is performed.

The NDTP server treats the entity key as an unstructured stream of octets, which is assumed to be unique to a particular entity. The precise structure of the NDTP entity key and the mechanism for ensuring its uniqueness are a function of the application in which the NDTP server is used. In a customer oriented application, the NDTP entity key might be a unique customer identifier, for example, a Social Security Number, in either printable or binary integer form, as is appropriate to the application. NDTP also defines a data location specifier as a string used to specify a data repository in which data associated with a particular entity may be found.

As with NDTP entity keys, the NDTP server treats NDTP data location specifiers as unstructured streams of octets. The structure of an NDTP data location specifier is a function of the application in which the NDTP server is used. For example, an NDTP data location specifier might be an Internet machine name, and a TCP/IP port number for a relational database server, or an HTTP Universal Resource Locator(URL), or some concatenation of multiple components.

The NDTP server efficiently maintains and dispenses one to zero or one to many relationships between entity keys and data location specifiers. In other words, an entity key may be associated with any number of data location specifiers. When data for a particular entity is added to a data repository, the NDTP server is updated to indicate an association between the entity key and the data repository's data location specifier. When a query is performed for an entity key, the NDTP server supplies the set of data repositories in which data may be found for that entity key.

JA0041

US 7,103,640 B1

<table>
<tr><td>5</td><td>6</td></tr>
</table>

General NDTP Mechanics

The protocol of the invention is designed to provide maximum transaction throughput from the NDTP server, associated clients, and associated data repositories when appropriate. The design goal is realized through two design principles:

1. NDTP messages should preferably be as short as possible to maximize the rate of NDTP transactions for a given network communication bandwidth.

2. NDTP messages should preferably be structured for efficient processing on existing machine architectures.

Design Optimizations.

Numerical fields of an NDTP message are preferably represented in binary integer format rather than ASCII or other printable format to minimize host processing overhead and network utilization. Numerical fields of NDTP messages are also aligned on 32-bit boundaries to minimize the cost of manipulation on current machine architectures. Manipulating unaligned multibyte integer quantities on modern machine architectures usually incurs an extra cost ranging from mild to severe compared to manipulating the same quantities in aligned form.

In keeping with other network protocol standards including TCP/IP, multioctet integer quantities in NDTP are preferably encoded using the big end ian integer interpretation convention, as set forth above.

To overcome network latency, NDTP is designed to support asynchronous operation, where many requests may be sent to an NDTP server before a response from any of them is received.

Each NDTP message is preceded by a fixed size, 12-octet header, using the preferred data structure:

```
typedef struct ndtp-hdr {
    uint8__T op;           /* opcode */
    uint8__t pad[3];
    uint32__t id;          /* transaction identifier */
    uint32__t size;        /* total request size
                              following the header */
}ndtp__hdr__t;
where:
op:
    NDTP message numerical operation code.
    NDTP__GET:        get request
    NDTP__GET__RSP:   get response
    NDTP__PUT:        put request
    NDTP__PUT__RSP:   put response
    NDTP__DEL:        delete request
    NDTP__DEL__RSP:   delete response
    NDTP__RDR__RSP:   provide redirection
id:
```

Client supplied operation request used to distinguish responses from multiple outstanding NDTP asynchronous requests. Each "_RSP" message echoes the id field of the associated request.

Size:

Size, in octets of the remainder of the NDTP message. The size field should always be a multiple of 4 octets.

Variably sized portions of NDTP messages are preferably defined with a size field rather than some other delimiter mechanism to facilitate efficient reading of NDTP messages. Requests may be made to the network layer to read the entire variably sized portion of an NDTP message, rather than reading small chunks while scanning for a delimiter. Furthermore, client and server resource management can be more efficient since the size of NDTP messages is known before reading.

The variably sized portions of NDTP messages are composed of zero or more NDTP stings:

```
typedef struct ndtp_str {
    uint32_t len;
    uint8_t data [ ];
{ndtp_str_t;
```

Note that the C struct definitions in this document are schematic, and not necessarily fully compliant structures in the C programming language. Specifically, arrays denoted in this document with "[ ]" imply a dimension which is only known dynamically and this indefinite array size specifier is not allowed in C struct definitions. Note also the following:

Len:

the number of significant octets of data following the len field in the data area.

Data:

len octets of data, followed by up to 3 octets of padding, to ensure that the total length of the NDTP string structure is a multiple of 4 octets. The padding octets are not included in the len field.

Because variable sized portion NDTP messages are composed of zero or more NDTP stings and NDTP strings preferably occupy an even multiple of 4 octets, this ensures that the "size" field of NDTP message headers will preferably be a multiple of 4 octets.

Protocol Structure

An example of multiple outstanding NDTP requests and the use of request identifiers is shown in FIG. 1. NDTP preferably has a simple, stateless request/response structure. Each request message 10 sent by a client 12 has a corresponding response message 14 returned by the server 16. To maximize server 16 throughput and use of available network bandwidth, NDTP is asynchronous in nature. Many requests 10 from a single client 12 may be outstanding simultaneously, and responses 14 may or may not be returned from the server 16 in the order in which the requests 10 were issued. Each NDTP request 10 contains an NDTP request identifier 18 that is returned in the NDTP response 14 for the associated request 10. An NDTP client 12 uses a unique NDTP request identifier 18 for each NDTP request 10 that is outstanding at the same time to an NDTP server 16 if it wishes to correlate responses with requests.

There are four operations preferably supported by the protocol:

Add a location association to an identifier.

Delete a location association from an identifier.

Get all locations associated with an identifier.

Provide a redirect instruction to identify an alternative server.

The response to adding a location association to an identifier 18 is a simple acknowledgement. If the location is already associated with the identifier 18, adding the association has no effect, but the request 10 is still acknowledged appropriately. In other words, the NDTP add operation is idempotent. The response to deleting a location association from an identifier 18 is a simple acknowledgement. If the location is not currently associated with the identifier 18, deleting the association has no effect, but the request 10 is still acknowledged appropriately. In other words, the NDTP delete operation is idempotent. The response 14 to getting all locations associated with an identifier 18 is a list of the locations presently associated with an identifier 18. If no locations are currently associated with an identifier 18, a list of length zero is returned.

US 7,103,640 B1

**7**

Message Formats

NDTP messages **10**, **14** preferably have a regular structure that consists of a message operation code, followed by a request identifier **18**, followed by a string area length (in bytes) **20**, followed by zero or more strings **22**, as shown in FIG. **2**. As those skilled in the art will appreciate, NDTP message formats are preferably independent of the network transport layer used to carry them. NDTP preferably defines mappings of these messages **10**, **14** onto TCP and UDP transport layers (described in detail below), but other mappings could also be defined and it is likely that these NDTP message formats would not require change. For example, the notation ROUND4(x) means x, rounded up to the next multiple of 4.

Integer Format

Multibyte integers in NDTP messages are represented in network byte order; using the big-endian convention. In other words, the most significant byte of a multibyte integer is sent first, followed by the remainder of the bytes, in decreasing significance order.

String Format

Strings in NDTP are represented as counted strings, with a 32-bit length field **20**, followed by the string data **22**, followed by up to 3 bytes of padding **24** to make the total length of the string representation equal to ROUND4 (length). This layout is shown diagrammatically in FIG. **2**.

NDTP GET Format

The NDTP_GET message has a message operation code **30** of 0, and a single NDTP string **32** which is the identifier string for which to get associated location strings. This layout is shown diagrammatically in FIG. **3**.

NDTP GET RSP Format

The NDTP_GET_RSP message has a message operation code **40** of 1, and zero or more strings **42** that are the locations currently associated with the requested identifier. This layout is shown diagrammatically in FIG. **4**.

NDTP PUT Format

The NDTP_PUT message has a message operation code **50** of 2, and two NDTP strings **52**, **54**. The first string **52** is the identifier for which to add a location association, and the second string **54** is the location to add. This layout is shown diagrammatically in FIG. **5**.

NDTP PUT RSP Format

The NDTP_PUT_RSP message has a message operation code **60** of 3, and zero NDTP strings. This layout is shown diagrammatically in FIG. **6**.

NDTP DEL Format

The NDTP_DEL message has a message operation code **70** of 4, and two NDTP strings **72**, **74**. The first string **72** is the identifier from which to delete a location association, and the second string **74** is the location to delete. This layout is shown diagrammatically in FIG. **7**.

NDTP DEL RSP Format

The NDTP_DEL_RSP message has a message operation code **80** of 5, and zero NDTP strings. This layout is shown diagrammatically in FIG. **8**.

NDTP RDR RSP Format

The NDTP_RDR_RSP message has a message operation code **90** of 6, and one or more NDTP strings **92**, **94**. Two layouts apply, which are shown diagrammatically in FIGS. **9**(*a*) and **9**(*b*).

**8**

A general description of the usage and operation of these protocol messages is provided below.

NDTP GET Transaction

The NDTP_GET message contains a single NDTP string which is the entity key for which associated data locations are requested.

```
typedef struct ndtp_get {
    ndtp_hdr_t hdr;
    ndtp_str_t key;
} ndtp_get_t;
```

The NDTP_GET_RSP message contains zero or more NDTP strings which are the data location specifiers associated with the NDTP entity key:

```
typedef struct ndtp_get_rsp {
    ndtp_hdr_t hdr;
    uint32_t rsps;
    ndtp_str_t values[ ];
} ndtp_get_rsp_t;
```

NDTP PUT Transaction

The NDTP_PUT messages contains two NDTP strings which are (1) the NDTP entity key and (2) the NDTP data location specifier which is to be associated with the NDTP entity key.

```
typedef struct ndtp_put {
    ndtp_hdr_t hdr;
    ndtp_str_t key;
    ndtp_str_t data;
} ndtp_put_t;
```

The NDTP_PUT_RSP message has no NDTP strings, and simply indicates that the requested entity key/data location specifier association was added:

```
typedef struct ndtp_put_rsp {
    ndtp_hdr_t hdr;
} ndtp_put_rsp_t;
```

The requested entity key/data location specifier association is added in addition to any other associations already maintained by the NDTP server. If the requested entity key/data location specifier association is already in effect, the NDTP_PUT still succeeds and results in an NDTP_PUT_RSP message.

NDTP DELETE Transaction

The NDTP_DEL message contains two NDTP strings which are (1) the NDTP entity key and (2) the NDTP data location specifier which is to be unassociated with the NDTP entity key:

```
typedef struct ndtp_del {
    ndtp_hdr_t hdr;
    ndtp_str_t key;
    ndtp_str_t data;
} ndtp_del_t;
```

The NDTP_DEL_RSP message has no NDTP strings, and simply indicates that the requested entity key/data location specifier association was deleted:

```
typedef struct ndtp_del_rsp {
    ndtp_hdr_t hdr;
} ndtp_del_rsp_t;
```

If the requested entity key/data location specifier association is not in effect, the NDTP_DEL still succeeds and results in an NDTP_DEL_RSP message.

NDTP RDR RSP Message

NDTP supports a distributed server implementation for which two principle redirection methods apply: (1) embedded redirection links, and (2) passed functions. The passed functions method in turn has two variants: (a) a well-known

US 7,103,640 B1

**9**

function, and (b) a communicated function. (These methods and variants are described in further detail below.)

Network Front End

The NDTP server network front end preferably maximizes NDTP transaction throughput including concurrent NDTP requests from a single client as well NDTP requests from multiple concurrent clients.

Network Communication Mechanism

NDTP defines a transaction oriented protocol, which can be carried over any of a variety of lower level network transport protocols. For example:

TCP/IP: TCP/IP provides a ubiquitously implemented transport which works effectively on both local area and wide area networks. An NDTP client using TCP/IP preferably connects with the NDTP server at an established TCP port number, and then simply writes NDTP request messages through the TCP/IP connection to the server, which then writes NDTP response messages back to the client through the same TCP/IP connection in the reverse direction. TCP/IP implementations perform buffering and aggregation of many small messages into larger datagrams, which are carried more efficiently through the network infrastructure. Running NDTP on top of TCP/IP will take advantage of this behavior when the NDTP client is performing many NDTP requests. For example, a data repository which is undergoing rapid addition of data records associated with various entities will perform many rapid NDTP_ PUT operations to the NDTP server that can all be carried on the same NDTP TCP/IP connection.

UDP/IP: If an NDTP client only performs occasional, isolated NDTP operations, or there are a vast number of clients communicating with an NDTP server, TCP/IP will not offer the best possible performance because many traversals of the network are required to establish a TCP/IP connection, and yet more network traversals are required to transfer actual NDTP messages themselves. For such isolated NDTP transactions, depending upon the application and network infrastructure in use, it is beneficial to have the NDTP server employ UDP/ IP, which is a widely available connectionless datagram protocol.

However, UDP/IP does not support reliable data transfer, or any congestion control mechanism. This means that NDTP clients using UDP/IP must implement reliability and congestion control maintaining transaction timeouts and performing exponential retry backoff timers, precisely analogous to the congestion control mechanism implemented by Ethernet, and other well known UDP protocols. Those skilled in the art will note that the NDTP protocol is stateless from the standpoint of the NDTP server, which means that there is no congestion control or reliability burden on the server; it is all implemented in a distributed manner by the NDTP UDP/IP clients.

Still Higher Performance (ST): Both TCP/IP and to a lesser degree UDP/IP suffer from high host CPU overhead. Like the relatively long latency of TCP/IP, this host CPU consumption is considered just the "cost of doing business" where TCP/IP provides ubiquitous connectivity. If an NDTP server were running in a more constrained environment, where ubiquitous connectivity was not required, its absolute performance could be improved substantially by using a different protocol that is optimized to reduce CPU overhead and latency, such as the Scheduled Transfer (St) protocol.

**10**

None of these network implementation issues are particularly unique to NDTP, however. All similar protocols face similar tradeoffs, and what art exists to improve the performance of such protocols applies fully to NDTP as well.

NDTP Query Processing

Servicing NDTP query requests does not require high latency operations, such as disk I/O. Therefore, the NDTP server network front end preferably services NDTP query requests in a FIFO style by reading the NDTP_GET message, performing the lookup for the entity key in the NDTP server string store, and writing the NDTP_GET_RSP message. Each NDTP query is independent of any other NDTP transactions (other queries or updates), so it is possible to process multiple NDTP queries simultaneously on multiprocessor machines. The NDTP server permits this by not performing multiprocessor locking in the NDTP query processing path.

The current prototype NDTP server preferably does not create multiple read service threads per NDTP connection, so multiprocessing will only occur while processing queries from different NDTP connections. Nonetheless, the NDTP server could be extended to support multiprocessing of NDTP queries from a single NDTP connection if this turned out to be advantageous.

NDTP Update Processing

Unlike NDTP queries, processing NDTP updates requires the high latency operation of committing the change to nonvolatile storage. To maintain high performance on NDTP updates, the NDTP server network front end preferably supports multiple concurrent asynchronous update transactions. Also, each update is preferably performed atomically to avoid creating an inconsistent state in the string store. Currently, the string store supports only a single mutator thread, which means that all NDTP updates are serialized through the string store mutator critical code sections. As is traditional in transactional systems, the string store mutation mechanism is implemented as a split transaction.

When an NDTP update is processed, a call is made to the string store mutation function, which returns immediately indicating either that the mutation is complete, or that the completion will be signaled asynchronously through a callback mechanism. The mutator function might indicate an immediate completion on an NDTP_PUT operation if the entity key/data location specifier mapping was already present in the database. In this case, the network front end will immediately write the update response message back to the client.

For updates which are not immediately completed, the network front end maintains a queue of NDTP updates for which it is awaiting completion. When the completion callback is called by the string store log file update mechanism, the network front end writes the NDTP update response messages for all completed updates back to the clients. If no new NDTP update requests are arriving from NDTP clients, and there are some incomplete updates in the update queue, the network front end preferably calls the string store log buffer flush function to precipitate the completion of the incomplete updates in update queue.

Multiple Connection Handling

Handling multiple clients in a single server process requires that the server process not block waiting for events from a single client, such as newly received data forming an NDTP request message, or clearing a network output buffer so an NDTP response message can be written. The NDTP server network front end may be conditionally compiled to

US 7,103,640 B1

11

use either of two standard synchronous I/O multiplexing mechanisms, select or poll, or to use threads to prevent blocking the server waiting for events on individual connections. The select and poll interfaces are basically similar in their nature, but different in the details. When compiled for synchronous I/O multiplexing, the NDTP server network front end maintains an input buffer for each connection. The multiplexing function is called to determine if any of the connections have input available, and if so, it is read into the connection's input buffer. Once a complete NDTP request is in the buffer, it is acted upon. Similarly, the network front end maintains an output buffer for each connection, and if there is still a portion of an NDTP response message to send, and the connection has some output buffer available, more of the NDTP response message is sent.

The threaded version of the NDTP server network front end preferably creates two threads for each NDTP connection, one for reading and one for writing. While individual threads may block as input data or output buffer is no longer available on a connection, the thread scheduling mechanism ensures that if any of the threads can run, they will. The threaded version of the NDTP server is most likely to offer best performance on modern operating systems, since it will permit multiple processors of a system to be used, and the thread scheduling algorithms tend to be more efficient than the synchronous I/O multiplexing interfaces. Nonetheless, the synchronous I/O multiplexing versions of NDTP server will permit it to run on operating systems with poor or nonexistent thread support.

A more detailed description of the mapping operation in both a TCP and UDP environment appears below.

TCP Mapping

As those skilled in the art will appreciate, the Transmission Control Protocol (TCP) is a connection-oriented protocol that is part of a universally implemented subset of the Internet Protocol (IP) suite. TCP provides reliable, bi-directional stream data transfer. TCP also implements adaptive congestion avoidance to ensure data transfer across a heterogeneous network with various link speeds and traffic levels.

NDTP is preferably carried on TCP in the natural way. An NDTP/TCP client opens a connection with a server on a well-known port. (The well-known TCP (and UDP) port numbers can be selected arbitrarily by the initial NDTP implementer. Port numbers that do not conflict with existing protocols should preferably be chosen.) The client sends NDTP requests **10** to the server **16** on the TCP connection, and receives responses **14** back on the same connection. While it is permissible for a single client **12** to open multiple NDTP/TCP connections to the same server **16**, this practice is discouraged to preserve relatively limited connection resources on the NDTP server **16**. The asynchronous nature of NDTP should make it unnecessary for a client **12** to open multiple NDTP/TCP connections to a single server **16**.

If protocol errors are detected on an NDTP/TCP connection, the NDTP/TCP connection should be closed immediately. If further NDTP/TCP communication is required after an error has occurred, a new NDTP/TCP connection should be opened. Some examples of detectable protocol errors include:

Illegal NDTP message operation code;

Nonzero String Area Length in NDTP_PUT_RSP or NDTP_GET_RSP;

Inconsistent String Area Length and String Length(s) in NDTP_GET, NDTP_GET_RSP, NDTP_PUT or NDTP_DEL;

Unexpected NDTP request identifier by client.

12

Due to the reliable nature of TCP, NDTP/TCP servers **16** and clients **12** need not maintain any additional form of operation timeout. The only transport errors that can occur will result in gross connection level errors. A client **12** should assume that any NDTP requests **10** for which it has not received responses **14** have not been completed. Incomplete operations may be retried. However, whether unacknowledged NDTP requests **10** have actually been completed is implementation dependent. Any partially received NDTP messages should also be ignored.

UDP Mapping

As those skilled in the art will appreciate, the Unreliable Datagram Protocol (UDP) is a best-effort datagram protocol that, like TCP, is also part of the universally implemented subset of the IP suite. UDP provides connectionless, unacknowledged datagram transmission. The minimal protocol overhead associated with UDP can deliver extremely high performance if used properly.

NDTP/UDP clients **12** send UDP datagrams with NDTP request messages **10** to a well-known UDP port (see above). NDTP/UDP servers **16** return NDTP response messages **14** to the client **12** selected local UDP port indicated in the NDTP/UDP datagram containing the requests **10**. NDTP/UDP does not require any form of connection or other association to be established in advance. An NDTP interchange begins simply with the client request message **10**.

For efficiency, the mapping of NDTP on to UDP permits multiple NDTP messages to be sent in a single UDP datagram. UDP datagrams encode the length of their payload, so when a UDP datagram is received, the exact payload length is available. The recipient of an NDTP/UDP datagram will read NDTP messages from the beginning of the UDP datagram payload until the payload is exhausted. Thus, a sender of an NDTP/UDP datagram is free to pack as many NDTP messages as will fit in a UDP datagram.

The largest possible UDP datagram payload is presently slightly smaller than 64 K bytes. In addition, there may be a performance penalty sending UDP datagrams that are larger than the maximum datagram size allowed by the physical network links between the sender and intended recipient. IP provides mechanisms for discovering this maximum transfer size, called the Path Maximum Transfer Unit (Path MTU), but a discussion of these mechanisms is beyond the scope of this specification. An implementation of NDTP/UDP should preferably respect these datagram size limitations.

Unlike TCP, UDP does not provide reliable data delivery. Therefore, an NDTP/UDP client **12** implementation should implement a timeout mechanism to await the response for each outstanding NDTP request **10**. The exact duration of this response timer is implementation dependent, and may be set adaptively as a client **12** receives responses from a server **16**, but a reasonable default maximum value is preferably 60 seconds. If a response **14** is not received within the response timeout, the client **12** may retransmit the request **10**. NDTP/UDP servers **16** need not maintain any timeout mechanisms.

Depending upon the exact timeout values selected, the client **12** retry mechanism may place some requirements on a client's **12** use of the NDTP request identifier **18** field. If the response timer is shorter than the maximum lifetime of a datagram in the network, it is possible that a delayed response will arrive after the response timer for the associated request has expired. An NDTP/UDP client **12** implementation should ensure that this delayed response is not mistaken for a response to a different active NDTP request **10**. Distinguishing current responses from delayed ones is

US 7,103,640 B1

13

called antialiasing. One presently preferred way to perform antialiasing in NDTP/UDP is to ensure that NDTP request identifier **18** values are not reused more frequently than the maximum datagram lifetime.

NDTP/UDP client **12** implementations that use the NDTP request identifier **18** for antialiasing should ignore (i.e., skip) NDTP messages within a NDTP/UDP datagram with invalid NDTP request identifier **18** values. Client **12** or server **16** NDTP/UDP implementations detecting any other protocol error should also preferably discard the remainder of the current NDTP/UDP datagram without processing any further NDTP requests from that datagram. Some examples of such detectable errors include:

Illegal NDTP message operation code;

Nonzero String Area Length in NDTP_PUT_RSP or NDTP_GET_RSP;

Inconsistent String Area Length and String Length(s) in NDTP_GET, NDTP_GET_RSP, NDTP_PUT or NDTP_DEL;

Inconsistent NDTP message length and UDP datagram length.

Because NDTP/UDP messages are limited to the length of a single UDP datagram payload, NDTP/UDP cannot be used to transfer long NDTP messages. For example, it would be very difficult to send an NDTP_GET message with NDTP/UDP for a 64 K byte identifier string. This case is avoidable by a client **12** realizing that an NDTP message is too long to send as a UDP datagram and using NDTP/TCP instead. However, a greater limitation is that NDTP currently provides no mechanism for an NDTP server **16** to indicate that a response is too large to fit in a UDP datagram. In this case, the NDTP server **16** should not send a response **14**, and it may or may not chose to complete the request **10**. The recovery mechanism in this case preferably is, after several unsuccessful attempts to use NDTP/UDP, a client **12** may try again with NDTP/TCP.

Because UDP does not provide any form of congestion avoidance it is possible that the simple retry strategy specified for NDTP/UDP can create network congestion. Network congestion can cause a severe degradation in the successful delivery of all network traffic (not just NDTP traffic, nor just the traffic from the particular client/server **12**, **16** pair) through a congested network link. Congestion will occur when an NDTP/UDP implementation is sending datagrams faster than can be accommodated through a network link. Sending a large number of NDTP/UDP datagrams all at once is the most likely way to trigger such congestion. Sending a single NDTP/UDP datagram, assuming it is smaller than the Path MTU, and then waiting for a response **14** is unlikely to create congestion. Therefore, the use of NDTP/UDP should be confined to contexts where clients **12** send few outstanding requests at a time, or where network congestion is avoided through network engineering techniques.

Those skilled in the art will appreciate that network congestion is a highly dynamic property that is a function of network traffic from all sources through a network link and will vary over time over any given network path. An NDTP/UDP client **12** implementation can recover from network congestion by switching to NDTP/TCP after several failed retries using NDTP/UPD. Failure due to network congestion may be indistinguishable from failure due to UDP packet size limitations, but since the recovery strategy is the same in both cases, there is no need to distinguish these cases.

14

NDTP/UDP Congestion Avoidance

Given the stateless, transactional nature of NDTP, NDTP/UDP generally performs much better than NDTP/TCP. This performance improvement is measurable both in terms of the maximum sustainable transaction rate of an NDTP server **16**, and the latency of a single response to an NDTP client **12**. In the same way as the Domain Name Service (DNS), NDTP fits naturally in the UDP model. It is a working assumption of NDTP (and DNS) that for every NDTP transfer, there will be an associated transfer of real data that is an order of magnitude or more greater in size than the NDTP protocol traffic. This property will naturally limit the amount of NDTP traffic on a network. However, in applications where NDTP traffic reaches high levels, particularly at network 'choke points' which are not within the control of network engineers, it may be desirable to support a congestion avoidance mechanism for NDTP/UDP.

However, those skilled in the art will appreciate that the other main future requirement of NDTP, security (described below), implies an existing, durable association between NDTP clients **12** and NDTP servers **16**. This association is much like (and in the case of SSL, it is) a network connection. Therefore, depending upon what security technology is applied, developing a congestion avoidance mechanism for NDTP/UDP may be an irrelevant exercise.

Server Redirection Mechanism

NDTP provides two mechanisms for server redirection. The redirection mechanisms allow cluster and hierarchical topologies, and mixtures of such topologies (described in detail below). The first redirection mechanism supported by NDTP, embedded redirection links, uses an application specific convention to return redirection pointers as NDTP data location strings. For example, if location strings are W3C URLs, a URL with the schema ndtp: could be a server indirection pointer. An NDTP_GET_RSP message may contain any mixture of real data location strings and NDTP server redirection pointers. In this case, the client must issue the same NDPT_GET query message to other NDTP servers indicated by the redirection pointers. The total set of data location strings associated with the supplied identifier string is the collection of all the data location strings returned from all the NDTP servers queried. The embedded redirection link technique does not require any specific NDTP protocol support. Therefore, it could be used within the NDTP protocol as is, and does not require further description in this specification.

The second redirection mechanism, which is specified as a future extension of NDTP, is having the server return an NDTP_RDR_RSP message in response to an NDTP request for which the NDTP server has no ownership of the supplied identifier string. Those skilled in the art will note that unlike the embedded redirection links mechanism, the NDTP_RDR_RSP mechanism applies to all NDTP requests, not just NDTP_GET.

As mentioned above, the second redirection mechanism has two variants. The first variant of the NDTP_RDR_RSP function mechanism specifies a well-known function that all NDTP server and client implementations know when they are programmed, and the NDTP_RDR_RSP message carries a table of NDTP server URLs. The format of the NDTP_RDR_RSP message with an NDTP server URL table is shown in FIG. **9**(*a*).

The appropriate NDTP server is selected from the table in the NDTP_RDR_RSP message by applying a well-known function to the identifier string and using the function result as an index into the NDTP server table.

US 7,103,640 B1

15

The well-known function preferably applied is the hash-pjw function presented by Aho, Sethi and Ullman in their text *Compilers, Principles, Techniques and Tools*:

```
uint32_t
hash (uint8_t *s, uint32_t slen, uint32_t size)
{
    uint32_t g;
    uint32_t                uint32_t h = 0;
    uint8_t c;
    for (i = 0; i < slen; i++) {
        c = s[i];
        h = (h << 4) + c;
        g = (h & 0xf0000000);
        if (g) {
            h ^= g >> 24;
            h ^= g;
        }
    }
    return h % size;
}
```

In this case, the size parameter is the number of elements in the NDTP server URL table returned in the NDTP_RDR_RSP message. For the hashpjw function to behave correctly, the size parameter must be a prime number, therefore the NDTP server URL table must also have a prime number of elements. Those skilled in the art will appreciate that the same NDTP server may appear multiple times in the NDTP server URL table. For example, if the server URL table has 2039 elements, by putting one NDTP server URL in the first 1019 table elements, and a second NDTP server URL in the second 1020 table elements, the responsibility for the index string space will be split roughly in half.

The second variant of the NDTP_RDR_RSP function mechanism specifies that a general function description will be sent to the NDTP client in the NDTP_RDR_RSP message. The NDTP client will apply this function to the identifier string and the output of the function will be the NDTP server URL to which to send NDTP requests for the particular identifier string. The advantage of this technique over the well-know function approach is that it allows application-specific partitions of the identifier string space. This can permit useful administrative control. For example, if General Electric manages all identifiers beginning with the prefix "GE", a general function can be used to make this selection appropriately. The disadvantage of using a general function is it may be less efficient to compute than a well-known function.

There are a variety of possible mechanisms for sending function descriptions. NDTP is expected to be applied in environments that make extensive use of the Java programming platform. Therefore the NDTP_RDR_RSP Mechanism preferably uses a feature of the Java programming language called "serialized representation" to communicate generalized functions in the NDTP_RDR_RSP message. A serialized form of a Java object is a stream of bytes that represents the precise state of the object, including its executable methods. For example, the Java Remote Method Invocation (RMI) mechanism uses serialized objects to send executable code to a remote platform for execution. The NDTP_RDR_RSP message contains the serialized form of an object implementing this Java interface:

interface NDTPRedirectFunction {
    String selectServer(byte[ ] identifier);
}

16

The format of the NDTP_RDR_RSP message with a Java Serialized form of the NDTP redirection function is specifically identified in FIG. 9(*b*).

The NDTP server redirection mechanism also permits construction of NDTP server clusters (described below). It is expected that the identifier string hash function will be defined at the time NDTP is implemented, but the actual list of NDTP servers 90 will change from application to application and within a single application throughout the lifetime of the system. Therefore, it is necessary for clients to be able to discover updated NDTP server lists, and any other relevant dynamic parameters of the server selection function as these inputs change.

Hierarchical Server Topology

While the NDTP server topology supported by the server redirection mechanism described above and shown in FIGS. 9(*a*) and 9(*b*) is an extremely powerful and general scaling technique, suitable for diverse topology deployments, some applications might still benefit from a specifically hierarchical server topology. An NDTP server hierarchy 100, such as that shown in FIG. 10, permits identifier/location association data to be owned and physically controlled by many different entities. An NDTP server cluster should be managed by a single administrative entity 102, and the distribution of data can be for performance and scaling purposes. Furthermore, a server hierarchy would provide some fault isolation so portions of the identifier/location association data can be accessed and updated in the presence of failures of some NDTP servers 104. Finally, an NDTP server hierarchy can localize NDTP update operations (NDTP_PUT and NDTP_DEL), which can improve performance and reduce network load.

A hierarchical NDTP server topology also allows organizations to maintain their own local NDTP server 104 or NDTP server cluster 102 that manages associations to data locations that are within the organizations' control. Upper tier NDTP servers 108 would be used to link the various leaf NDTP servers 104.

Server Constellations

The NDTP server organization also allows NDTP servers to be combined in various ways to build server constellations that offer arbitrary server performance scalability and administrative control of the location of portions of the identifier/data location relationship mappings. FIG. 11 illustrates an NDTP server constellation 110 as it relates to a client 112 and a data repository 114. In FIG. 10, the client 112 and data repository 114 of FIG. 11 were merged into the single client entity 106 for ease of discussion. Their distinction can now be separated and identified in order to illustrate the storage and retrieval of data in a distributed data collection.

As shown in FIG. 11, a client 112 consults the server constellation 110, which may be construed in either of two forms (see FIGS. 12 and 13), and which returns location strings in response to a client 112 request. Once the client 112 has the location string for a particular unit of data, the client 112 contacts and retrieves information directly from the data repository 114. In one embodiment, if the client 112 contains a data repository 114, internal application logic would facilitate this interaction. Those skilled in the art will appreciate that the term "data collection" is being employed rather than the term "database" because database frequently invokes images of Relational Database Systems (which is only one application of the protocol); an NDTP data collection could just as easily be routing tables as it could be files or records in a RDBS database.

US 7,103,640 B1

17

NDTP server constellations 110 preferably have two basic organizational paradigms: Client-Centric and Server-Centric. NDTP supports both by design, and both approaches apply to all aspects of managing the relationships between identifiers and locations, such as data retrieval, index manipulation, and server redirection. Each will be discussed separately below.

Client-Centric Approach

The first basic pattern that NDTP supports is driven by the client 112, and can be called "client-centric". Referring to FIG. 12, a single client (not shown) asks a server 120a in the server constellation 110 for operations that the client desires executed (represented by arrow 1 in FIG. 12). If the client doesn't receive the data requested, it will receive a redirection response message (NDTP_RDR_RSP) from the contacted server 120a (arrow 2). The client then uses the information it receives to ask another server 120b for the operations the client wants to initiate (arrow 3). A successful response from the second server 120b is then sent to the client (arrow 4).

This design constructs operating patterns for (1) redirection, (2) index operations, and (3) hierarchical or cluster topologies. The important point is that the Network Distributed Tracking Protocol is designed to support highly configurable methods for processing index-related operations.

NDTP supports two specific redirection mechanisms, which are not mutually exclusive and may be combined in any way within a single NDTP server constellation 110. This formation may increase performance when many clients (not shown) participate, since client processing is emphasized rather than server processing. The first NDTP redirection mechanism uses a distinctively encoded location string for each NDTP server 120a,b that contains additional location strings associated with the identifier string supplied in the NDTP request 122a,b. This is an embedded redirection link. For example, if location strings are some form of HTTP URL, a URL with the schema specifier ndtp: would indicate a redirection. Using this scheme, the location strings associated with an identifier string may be spread among multiple NDTP servers 120a,b. In addition to redirection, in FIG. 12, all index manipulation operations continue to apply, but they are directed at the correct NDTP server 110b for which they apply: NDTP_GET, NDTP_PUT, NDTP_DEL.

The second NDTP redirection mechanism uses a NDTP_RDR_RSP message to indicate that the server 120a to which the NDTP request 122a was directed does not contain any of the location strings associated with the identifier string supplied in the NDTP request 122a. The NDTP_RDR_RSP message contains all the information required for the originator of the NDTP request 122a to reissue the original NDTP request 122b to a different NDTP server 120b that does have location strings associated with the identifier string supplied in the NDTP request 122b. This information may be an array of NDTP server hosts from which one is selected by applying a well-known function to the identifier string supplied in the NDTP request 122b, or the communicated function to apply as well as a list or other description of the NDTP server hosts from which to choose, as described above.

FIG. 12 illustrates a cluster topology for client interaction with NDTP servers 120. A single client queries a first server 120a (Server0), learns of a new index location (Server1), and then contacts that server 120b (Server1) for the operations it wishes to execute on the index that the client identifies. The basic idea is that a client asks a server 120a to process an index operation. If the contacted server 120a

18

does not have all the information, as for example in a redirect, then it passes the request to another server 120b. If the second server 120b is appropriate it responds appropriately, or it passes the request on to another server (not shown), and so on. FIG. 12 could also illustrate a hierarchical topology if a client (not shown) contacted another client in a handoff as shown in FIG. 10, where a client 106 "asks up" to another client 106, and so on.

Behind the scenes, the server constellation 110 could also be using a hierarchical organization or a cluster organization for managing indices. The important point of this topology is pushing processing emphasis toward clients (not shown) rather than toward servers 120a,b. Such protocol design has scale implications as the number of participating machines/mechanisms increases, since it distributes aggregate processing.

Server-Centric Approach

The second basic pattern that the Network Distributed Tracking Protocol provides is a "Server-Centric Approach". FIG. 13 shows the server constellation 110 characterizing "server-centric" functionality. In this figure, an NDTP server 130a (Server0) receives a request 132a from a client (not shown). The server 130a (Server0) passes the request to a second server 130b (Server1), which is an appropriate server for the process, and the second server 130b returns a response 134a to the first server 130a (Server0). If the second server 130a (Server1) was not appropriate, it could pass the request to another server (not shown), and so on. Each NDTP server 130a,b will combine the results of NDTP requests 132a,b it has performed of other NDTP servers 130a,b with whatever responses 134a,b it gene rates locally for the original NDTP request 132a, and the combined response 134b will be the appropriate response for the original NDTP request 132a.

This design constructs operating patterns for (1) index operations and (2) hierarchical or cluster topologies. The important point is that the Network Distributed Tracking Protocol is designed to support highly configurable methods for processing index-related operations, but this method emphasizes server-processing rather than client-processing. In FIG. 13, all index manipulation operations continue to apply, but they are directed at the correct NDTP server 130a,b for which they apply: NDTP_GET, NDTP_PUT, NDTP_DEL.

FIG. 13 illustrates an hierarchical topology for client interaction with NDTP servers 130. A single client queries a first server 130a (Server0), which is not appropriate, and so the first server 130a (not the client) itself contacts an appropriate server 130b (Server1) for operations it "passes through" to execute on the index that the client has identified. Alternatively, FIG. 13 could illustrate a cluster topology if a server 130a contacted another server 130b in a what is known as a "peer" handoff. The important point of this topology is that it pushes processing emphasis toward servers 130a,b rather than toward clients. Since index processing services can be centralized, administration of the indices can be administered more conveniently in certain cases.

The simplest NDTP server constellation 110 is a single server 130, and the protocol is designed to permit massive scale with a single or simple server constellation. Highly configurable installations are possible using "client-centric" or "server-centric" techniques. NDTP server constellations 110 composed of more than one NDTP server may use any combination of the two approaches for performance optimization and data ownership properties. Client-centric and server-centric approaches can be used to build NDTP server

US 7,103,640 B1

19

20

clusters, NDTP server trees, NDTP server trees of NDTP server clusters, or any other useful configuration.

NDTP design thus explicitly addresses the emerging "peer-to-peer" topologies called "pure" and "hybrid". The "pure" peer-to-peer approach emphasizes symmetric communication among peers, and is achievable through the "server-centric" approach. The "hybrid" peer-to-peer approach emphasizes asymmetric communication among non-peer participants, and is achievable through the "client-centric" approach. Beyond the pure and hybrid approaches that NDTP allows, as described above, NDTP permits any additional mixtures between client-centric and server-centric approaches to provide superior configurability and performance tuning.

Security

NDTP preferably has no provisions for security. Three key features of security should therefore be provided:

Data privacy (encryption)

Client **12** authentication

Client **12** authorization

NDTP/TCP will be extended using SSL/X.509 to support these security features in a straightforward, 'industry standard' way.

Adding security to NDTP/UDP also requires technology other than SSL. For example, IPSec supports securing all IP traffic, not just TCP between two endpoints. IPSec is a somewhat more heavyweight technology than SSL, and the rate of adoption in industry is somewhat slow. Nonetheless, it can provide the relevant capabilities to NDTP/UDP.

Additional Transport Layers

The early-adopter portion of the industry is in a state of turmoil regarding network transport protocols. On one hand, TCP has provided decades of solid service, and is so widely implemented that the mainstream computer industry could not imagine using another protocol to replace it. On the other hand, TCP lacks several features that may be necessary to enable the next step in network applications. In particular, the TCP design assumed pure software implementations by relatively powerful host computer computers. However, developments in network technology have increased the packet rate that a TCP implementation must handle to deliver full network speed beyond the capabilities of even increasingly powerful host computers. To take the next step, much of the packet processing work must be off-loaded to hardware, and TCP's design makes this very difficult.

It is unclear whether it will become possible to implement the relevant portions of TCP in hardware in a timely fashion. If this does not happen, one of the many new transport layers currently under development (ST, SCTP, VI, etc.) may emerge as a market leader in high performance networking. In this case, a layering of NDTP on top of a new hardware accelerated transport would permit NDTP servers to deliver greatly increased transaction rates. Even with the use of a hardware accelerated transport layer, however, the only benefit to a typical NDTP client would be lower cost of service due to cheaper NDTP server platform requirements. On the flip side, NDTP clients could likely still use a cheaper software implementation of the new transport because of individual clients' modest performance demands.

As can be seen, the Network Distributed Tracking Protocol is a networking protocol that runs on top of any stream (e.g. TCP) or datagram (e.g. UDP) network transport layer. The goal of NDTP is to support a network service that efficiently manages mappings from each individual key string, an identifier, to an arbitrary set of strings, locations.

NDTP permits protocol participating clients to add and remove identifier/location associations, and request the current set of locations for an identifier from protocol servers.

NDTP is designed for use in the larger context of a distributed data collection. As such, it supports an architecture, in which information about where data associated with particular application entities, can be managed and obtained independently of the data itself. One way to understand this is as a highly dynamic DNS for data. DNS maintains a mapping between names and machines. NDTP and its associated servers maintain a mapping between entity identifiers and data locations. The identifier/location mapping maintained by NDTP servers is much more dynamic (more frequent updates), than the domain name/IP address mapping maintained by DNS. NDTP is designed to support very fast, very diverse, and very large scale mapping manipulations.

Regardless of the expected system context of NDTP in a distributed data collection, those skilled in the art will appreciate that NDTP can be used for any application in which one-to-zero or one-to-many associations among strings are to be maintained and accessed on a network. In applications of NDTP other than distributed databases, the term identifier is likely to make sense in most cases, but the term location may not. In any context, however, although NDTP supports identifier and location strings of up to $2^{32}-4$ bytes in length, it is a general assumption that the strings are typically short.

Those skilled in the art will note that the invention provides for the management and manipulation of indices and their associated relationships.

Even more importantly, it is the manipulation of dynamic and spontaneous relationships between indices and locations, that is the core significance. The Network Distributed Tracking Protocol was written to manipulate these relationships, of which indices (identifiers) and locations are components of the aggregate solution.

It is to be understood that a wide range of changes and modifications to the embodiments described above will be apparent to those skilled in the art, and are contemplated. It is therefore intended that the foregoing detailed description be regarded as illustrative, rather than limiting, and that it be understood that it is the following claims, including all equivalents, that are intended to define the spirit and scope of the invention.

We claim:

**1**. A method for retrieving data location information for data stored in a distributed network, comprising the steps of:

a) receiving at a first client a data query for retrieving data associated with an identification string, wherein the data is stored at a data repository and wherein a location string associated with the identification string of the data is stored in at least one of a plurality of data location servers;

b) transmitting a data location request from the first client to a server to retrieve the location string associated with the identification string in the data query, the data location request including the identification string;

c) if the server is not a data location server, then operating the server as a next client and transmitting the data location request from the next client to a server logically associated with the next client;

d) repeating c) until the data location request is transmitted to a data location server, wherein a communication path is defined between the first client and the data location server; and

US 7,103,640 B1

**21**

e) if the data location server does not possess the location string, transmitting a redirect message to the first client over the communication path, the redirect message containing information with which the first client is configured to determine a location of a second data location server, wherein the second data location server contains the location string.

**2.** The method of claim **1**, wherein transmitting the redirect message comprises transmitting a data location server table to the first client.

**3.** The method of claim **2**, further comprising:

f) calculating at the first client the location of the second data location server with a function commonly known to the data location server and the first client and based on the identification string and the data location server table.

**4.** The method of claim **3**, wherein the function comprises a hash function and wherein the first client applies the hash function to the identification string and the data location server table to obtain the location of the second data location server.

**5.** The method of claim **1**, wherein transmitting the redirect message comprises transmitting a function to the first client.

**6.** The method of claim **5**, further comprising:

f) calculating at the first client the location of the second data location server with the transmitted function.

**7.** The method of claim **6**, wherein calculating at the first client the location of the second data location server comprises applying the transmitted function to the identifier string.

**8.** The method of claim **7**, wherein applying the transmitted function generates a URL of a second data location server.

**9.** The method of claim **1**, wherein a length of the identification string and the location string each is variable.

**10.** A method for retrieving data location information for data stored in a distributed network, comprising the steps of:

a) receiving at a first client a data query for retrieving data associated with an identification string, wherein the data is stored at a data repository in the distributed network and wherein a location string associated with the identification string of the data is stored in at least one of a plurality of data location servers;

b) transmitting a data location request from the first client to a first data location server to retrieve the location string associated with the identification string in the data query, the data location request including the identification string;

c) if the first data location server does not possess the location string, transmitting a redirect message to the first client, the redirect message containing information for use by the first client to calculate a location of a second data location server, wherein the second data location server contains the location string;

d) calculating the location of the second data location server at the first client; and

e) transmitting the data query from the first client to the second data location server.

**11.** The method of claim **10**, wherein transmitting the redirect message comprises transmitting a data location server table to the first client.

**12.** The method of claim **11**, wherein calculating the location of the second data location server comprises calculating the location of the second data location server with

**22**

a function commonly known to the first data location server and the first client and based on the data location server table and the identification string.

**13.** The method of claim **12**, wherein the function comprises a hash function and wherein the first client applies the hash function to the identification string and the data location server table to obtain the location of the second data location server.

**14.** The method of claim **10**, wherein transmitting the redirect message comprises transmitting a function to the first client.

**15.** The method of claim **14**, wherein calculating at the first client the location of the second data location server comprises applying the transmitted function to the identifier string.

**16.** The method of claim **15**, wherein applying the transmitted function generates a URL of the second data location server.

**17.** A system for retrieving data location information for data stored in a distributed network, the system comprising:

a plurality of data repositories configured to store data, wherein the data is associated with a respective identifier string in each data repository;

a data location sewer network having a plurality of data location servers, each of the plurality of data location servers containing location strings associated with respective identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps:

in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string.

**18.** A system for retrieving data location information for data stored in a distributed network, the system comprising:

a data repository configured to store data, wherein the data is associated with an identifier string;

a client responsive to a data query to query a data location server for location information associated with the identifier string;

a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client:

if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string;

if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data

US 7,103,640 B1

23

location servers, wherein the different data location server contains the location string.

19. The system of claim **18**, wherein the client and the plurality of data location servers each comprise a function commonly known to the client and the plurality of data location servers and wherein the client is configured to apply the commonly known function to the location information or redirect information.

20. The system of claim **19**, wherein the redirect message comprises a data location server table.

21. The system of claim **20**, wherein the commonly known function comprises a hash function and wherein the client is configured to apply the hash function to the identification string and the data location server table to obtain the location of the different data location server.

22. The system of claim **19**, wherein the redirect message comprises a transmitted function for use by the client.

24

23. The system of claim **22**, wherein the client is configured to calculate the location of the different data location server by applying the transmitted function to the identifier string.

24. The system of claim **18**, wherein the location information comprises a portion of a hash table distributed over the plurality of data location servers.

25. The system of claim **18**, further comprising a plurality of servers related in a logical hierarchy between the client and the data location servers, wherein each of the plurality of servers is configured to function as a next client and retransmit the data location request to a next logically associated server until a data location server receives the data location request.

\* \* \* \* \*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.          : 7,103,640 B1                                    Page 1 of 1
APPLICATION NO.  : 09/661222
DATED                    : September 5, 2006
INVENTOR(S)        : John K. Overton and Stephen W. Bailey

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On Title Page, Item (60) Pat No. 7,103,640 B1, Related to U.S. Application Data should be changed from:

"Provisional application No. 60/153,709, filed on Sep. 14, 1999."; to

--U.S. Provisional App. No. 60/153,709, filed Sep. 14, 1999, and U.S. Pat. App. No. 09/111,896, filed Jul 8, 1998.--

Signed and Sealed this

Third Day of April, 2007



JON W. DUDAS
*Director of the United States Patent and Trademark Office*



US007233978B2

(12) **United States Patent**
Overton et al.

(10) Patent No.: **US 7,233,978 B2**
(45) Date of Patent: **Jun. 19, 2007**

(54) **METHOD AND APPARATUS FOR MANAGING LOCATION INFORMATION IN A NETWORK SEPARATE FROM THE DATA TO WHICH THE LOCATION INFORMATION PERTAINS**

(75) Inventors: **John K. Overton**, Chicago, IL (US); **Stephen W. Bailey**, Andover, MA (US)

(73) Assignee: **Econnectix, LLC**, Chicago, IL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 810 days.

(21) Appl. No.: **09/872,736**

(22) Filed: **Jun. 1, 2001**

(65) **Prior Publication Data**

US 2002/0032787 A1     Mar. 14, 2002

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 09/661,222, filed on Sep. 13, 2000, now Pat. No. 7,103,640, and a continuation-in-part of application No. 09/503,441, filed on Feb. 14, 2000, now abandoned, and a continuation-in-part of application No. 09/367,461, filed on Aug. 13, 1999, now abandoned, and a continuation-in-part of application No. 09/111,896, filed on Jul. 8, 1998, now abandoned.

(60) Provisional application No. 60/277,408, filed on Mar. 19, 2001, provisional application No. 60/209,070, filed on Jun. 2, 2000.

(51) **Int. Cl.**
*G06F 15/16*     (2006.01)

(52) **U.S. Cl.** ....................... **709/217**; 709/226; 709/232

(58) **Field of Classification Search** ................ 718/105; 709/203, 206, 217, 207, 223, 226, 230, 232, 709/235, 241, 242
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,553,261 A | 11/1985 | Froessl | |
| 4,636,858 A | 1/1987 | Hague | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 0 568 161 A1 | 1/1992 | |

(Continued)

OTHER PUBLICATIONS

Communication relating to the results of the Partial International Search Report for PCT Application No. PCT/US01/18013 dated Apr. 15, 2002.

(Continued)

*Primary Examiner*—Paul H. Kang
(74) *Attorney, Agent, or Firm*—Brinks Hofer Gilson & Lione

(57) **ABSTRACT**

A system and method for storing and retrieving location information across a network is disclosed. The system and method utilize a transfer protocol configured to transport an identifier/location relationship to allow one or more locations to be associated with an identifier in the location store of a location server, where the identifier represents a unique entity and the location represents a location of data pertaining to the identifier. The location server contains programming logic operative to provide responses to location queries and capable of scaling a plurality of location servers according to system performance and logistical requirements.

**31 Claims, 17 Drawing Sheets**



**US 7,233,978 B2**

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,728,978 | A | 3/1988 | Inoue et al. |
| 4,800,488 | A | 1/1989 | Agrawal et al. |
| 4,825,406 | A | 4/1989 | Bean et al. |
| 4,835,372 | A | 5/1989 | Gombrich et al. |
| 4,914,571 | A | 4/1990 | Baratz et al. |
| 5,008,700 | A | 4/1991 | Okamoto |
| 5,124,814 | A | 6/1992 | Takahashi et al. |
| 5,193,185 | A | 3/1993 | Lanter |
| 5,208,623 | A | 5/1993 | Takahashi |
| 5,291,399 | A | 3/1994 | Chaco |
| 5,319,401 | A | 6/1994 | Hicks |
| 5,347,600 | A | 9/1994 | Barnsley |
| 5,384,643 | A | 1/1995 | Inga et al. |
| 5,414,841 | A | 5/1995 | Bingham et al. |
| 5,455,648 | A | 10/1995 | Kazami |
| 5,475,817 | A | 12/1995 | Waldo et al. |
| 5,479,654 | A | 12/1995 | Squibb |
| 5,499,113 | A | 3/1996 | Tsuboi |
| 5,522,077 | A | 5/1996 | Cuthbert et al. |
| 5,537,547 | A | 7/1996 | Chan et al. |
| 5,550,981 | A | 8/1996 | Bauer et al. |
| 5,551,027 | A | 8/1996 | Choy et al. |
| 5,557,790 | A | 9/1996 | Bingham et al. |
| 5,560,005 | A | 9/1996 | Hoover et al. |
| 5,576,952 | A | 11/1996 | Stutman et al. |
| 5,579,067 | A | 11/1996 | Wakabayashi |
| 5,610,653 | A | 3/1997 | Abecassis |
| 5,617,570 | A | 4/1997 | Russell et al. |
| 5,625,841 | A | 4/1997 | Dawkins et al. |
| 5,649,247 | A | 7/1997 | Itoh et al. |
| 5,664,170 | A | 9/1997 | Taylor |
| 5,669,029 | A | 9/1997 | Fyson et al. |
| 5,724,575 | A | 3/1998 | Hoover et al. |
| 5,740,428 | A | 4/1998 | Mortimore et al. |
| 5,764,889 | A | 6/1998 | Ault et al. |
| 5,764,906 | A | 6/1998 | Edelstein et al. |
| 5,774,670 | A | 6/1998 | Montulli |
| 5,781,725 | A | 7/1998 | Saito |
| 5,784,565 | A | 7/1998 | Lewine |
| 5,802,518 | A | 9/1998 | Karaev et al. |
| 5,809,161 | A | 9/1998 | Auty |
| 5,809,331 | A | 9/1998 | Staats et al. |
| 5,809,495 | A | 9/1998 | Loaiza |
| 5,813,006 | A | 9/1998 | Polnerow et al. |
| 5,848,246 | A | 12/1998 | Gish |
| 5,864,482 | A | 1/1999 | Hazama |
| 5,872,973 | A | 2/1999 | Mitchell et al. |
| 5,875,302 | A | 2/1999 | Obhan |
| 5,903,889 | A | 5/1999 | de la Huerga et al. |
| 5,907,837 | A | 5/1999 | Ferrel et al. |
| 5,913,210 | A | 6/1999 | Call |
| 5,915,240 | A | 6/1999 | Karpf |
| 5,918,214 | A | 6/1999 | Perkowski |
| 5,920,702 | A | 7/1999 | Bleidt et al. |
| 5,940,844 | A | 8/1999 | Cahill et al. |
| 5,950,173 | A | 9/1999 | Perkowski |
| 5,961,610 | A | 10/1999 | Kelly et al. |
| 5,966,705 | A | 10/1999 | Koneru et al. |
| 5,974,124 | A | 10/1999 | Schlueter, Jr. et al. |
| 5,974,409 | A | 10/1999 | Sanu et al. |
| 5,978,773 | A | 11/1999 | Hudetz et al. |
| 5,987,519 | A | 11/1999 | Peifer et al. |
| 5,995,965 | A | 11/1999 | Experton |
| 6,032,175 | A | 2/2000 | Fletcher et al. |
| 6,047,332 | A | 4/2000 | Viswanathan et al. |
| 6,055,544 | A | 4/2000 | DeRose et al. |
| 6,058,193 | A | 5/2000 | Cordery et al. |

| | | | | |
|---|---|---|---|---|
| 6,092,189 | A | 7/2000 | Fisher et al. | |
| 6,108,787 | A | 8/2000 | Anderson et al. | |
| 6,131,095 | A | 10/2000 | Low et al. | |
| 6,154,738 | A | 11/2000 | Call | |
| 6,188,766 | B1 | 2/2001 | Kocher | |
| 6,201,931 | B1 | 3/2001 | Cipolla et al. | |
| 6,202,070 | B1 | 3/2001 | Nguyen et al. | |
| 6,209,095 | B1 | 3/2001 | Anderson et al. | |
| 6,212,280 | B1 | 4/2001 | Howard, Jr. et al. | |
| 6,377,986 | B1 | 4/2002 | Philyaw et al. | |
| 6,418,441 | B1 | 7/2002 | Call | |
| 6,438,652 | B1 * | 8/2002 | Jordan et al. | 711/120 |
| 6,463,454 | B1 * | 10/2002 | Lumelsky et al. | 718/105 |
| 6,466,980 | B1 * | 10/2002 | Lumelsky et al. | 709/226 |
| 6,578,068 | B1 * | 6/2003 | Bowman-Amuah | 709/203 |
| 6,711,408 | B1 * | 3/2004 | Raith | 455/440 |
| 2002/0112048 | A1 | 8/2002 | Gruyer et al. | |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 889 422 A2 | 1/1999 |
| EP | 0 919 912 A2 | 6/1999 |
| WO | WO 86/05610 | 9/1986 |
| WO | WO 98/15910 | 4/1998 |
| WO | WO 98/00624 | 7/1998 |
| WO | WO 98/31138 | 7/1998 |
| WO | WO 00/03526 | 1/2000 |

## OTHER PUBLICATIONS

Bourke D G et al: "Programmable Module and Circuit for Machine-Readable Unique Serial Number" IBM Technical Disclosure Bulletin, vol. 27, No. 4A, Sep. 1, 1984 pp. 1942-1944.

Kleinholz L et al: "Supporting Cooperative Medicine: The Bermed Project" IEEE Multimedia, vol. 1, No. 4, Dec. 21, 1994 pp. 44-53.

"Method for Network Naming and Routing" IBM Technical Disclosure Bulletin, vol. 37, No. 9, Sep. 1, 1994 p. 255.

"Minimizing Locking To Access Global Shared Data", IBM Technical Disclosure Bulletin, pp. 619-622, Feb. 1995.

"A robust software barcode reader using the Hough transform", Muniz, R., Junco, L.; Otero, A., Abstract, 1999 Int'l Conf. On Information Intelligence and Systems (Oct. 31 to Nov. 3, 1999).

"In-Fab identification of silicon wafers with clean, laser marked barcodes", Fresonke, D., Abstract, 1994 IEEE/Semi Advanced Semiconductor Manufacturing Conference and Workshop (Nov. 14 to Nov. 16, 1994).

"Applications of barcode technology in automated storage and retrieval systems", Sriram, T.; Vishwanatha Rao, K.; Biswas, S.; Ahmed, Abstract, Proceedings of the 1996 IEEE IECON 22nd Int'l Conf. On Industrial Electrodes (Aug. 5 to Aug. 10, 1996).

Claims for U.S. Appl. No. 09/111,896, filed Jul. 8, 1998 entitled System And Method For Establishing And Retrieving Data Based On Global Indices.

Claims for U.S. Appl. No. 09/503,441, filed Feb. 14, 2000 entitled Automated Image Archiving System.

Claims for U.S. Appl. No. 09/367,461, filed Aug. 13, 1999 entitled Automated Image Archiving System.

Callaghan V L et al., "Structures and Metrics for Image Storage and Interchange" Journal of Electronic Imaging, vol. 2, No. 2, Apr. 1, 1993, pp. 126-137.

"Method for Network Naming and Routing" IBM Technical Disclosure Bulletin, vol. 37, No. 9, Sep. 1, 1994, p. 255.

"Service Location in an Open Distributed Environment," Beitz et al., Second International Workshop on Services in Distributed and Networked Environments, IEEE Comput. Soc., Jun. 1995, pp. 28-34.

Baer, Tony, "Tales from the Network", Computerworld Healthcare Journal, www.computerworld.com/news/1996/story/0,11280,14557,00.html, pp. 1-9, Oct. 1, 1996.

* cited by examiner

**JA0054**

U.S. Patent

Jun. 19, 2007

Sheet 1 of 17

US 7,233,978 B2

FIG. 1



# FIG. 2



# FIG. 3



Case: 1:18-cv-08175 Document #: 221 Filed: 10/13/20 Page 58 of 391 PageID #:6310

# FIG. 4



# FIG. 5



JA0057

U.S. Patent

Jun. 19, 2007

Sheet 4 of 17

US 7,233,978 B2



FIG. 6

JA0058

U.S. Patent

Jun. 19, 2007

Sheet 5 of 17

US 7,233,978 B2

FIG. 7



FIG. 8



JA0059

U.S. Patent

Jun. 19, 2007

Sheet 6 of 17

US 7,233,978 B2

# FIG. 9



NDTP_GET FORMAT

# FIG. 10

NDTP_GET_RSP FORMAT

JA0060

U.S. Patent

Jun. 19, 2007

Sheet 7 of 17

US 7,233,978 B2

# FIG. 11



NDTP_PUT FORMAT

# FIG. 12

NDTP_PUT_RSP FORMAT





U.S. Patent

Jun. 19, 2007

Sheet 8 of 17

US 7,233,978 B2

## FIG. 13



NDTP_DEL FORMAT

## FIG. 14



NDTP_DEL_RSP FORMAT

JA0062

U.S. Patent

Jun. 19, 2007

Sheet 9 of 17

US 7,233,978 B2

# FIG. 15



NDTP_UPD FORMAT

U.S. Patent

Jun. 19, 2007

Sheet 10 of 17

US 7,233,978 B2

# FIG. 16



NDTP_UPD_RSP FORMAT

U.S. Patent

Jun. 19, 2007

Sheet 11 of 17

US 7,233,978 B2

# FIG. 17A



U.S. Patent

Jun. 19, 2007

Sheet 12 of 17

US 7,233,978 B2

# FIG. 17B





FIG. 18

FIG. 19

FIG. 20

JA0067

U.S. Patent

Jun. 19, 2007

Sheet 14 of 17

US 7,233,978 B2

FIG. 21

NETWORK DISTRIBUTED TRACKING
DISTRIBUTED RECORD RETRIEVAL





FIG. 22

FIG. 23

JA0069

U.S. Patent

Jun. 19, 2007

Sheet 16 of 17

US 7,233,978 B2



FIG. 24

NDTP_PUT

SHIPPING COMPANY

DISPATCHER

NDTP QUERIES

NDTP RESPONCES

| ID | LOCATION |
|----|----------|
| 1 | LAT / LON1, LAT / LON2, LAT / LON . . . . |
| 2 | LAT / LON3, LAT / LON4 |
| 3 | LAT / LON5, LAT / LON6 |
| 4 | LAT / LON7, LAT / LON8 |
| 5 | LAT / LON9, LAT / LON10 |
| 6 | LAT / LON11, LAT / LON12 |
| . | . |

# FIG. 25



# FIG. 26



US 7,233,978 B2

**1**

# METHOD AND APPARATUS FOR MANAGING LOCATION INFORMATION IN A NETWORK SEPARATE FROM THE DATA TO WHICH THE LOCATION INFORMATION PERTAINS

## RELATED APPLICATIONS

This application claims the benefit of provisional patent application Ser. No. 60/209,070 filed Jun. 2, 2000 and provisional application Ser. No. 60/277,408 filed Mar. 19, 2001; and this application is a continuation-in-part of each of the following non-provisional U.S. patent applications: application Ser. No. 09/661,222 entitled NETWORK DIS-TRIBUTED TRACKING WIRE TRANSFER PROTO-COL, filed on Sep. 13, 2000 now U.S. Pat. No. 7,103,640; application Ser. No. 09/503,441 entitled AUTOMATED SYSTEM FOR IMAGE ARCHIVING, filed Feb. 14, 2000 now abandoned; application Ser. No. 09/367,461 entitled AUTOMATED SYSTEM FOR IMAGING ARCHIVING, filed Aug. 13, 1999 now abandoned; and application Ser. No. 09/111,896 entitled SYSTEM AND METHOD FOR ESTABLISHING AND RETRIEVING DATA BASED ON GLOBAL INDICES, filed on Jul. 8,1998 now abandoned, wherein the entirety of each of these provisional and non-provisional applications is incorporated herein by reference.

## FIELD OF THE INVENTION

This invention relates generally to the storage and retrieval of information, and in particular, to a system and method for managing global search and retrieval of information across a network.

## BACKGROUND

Data records can reside in many different places. In existing retrieval systems and methods, a client seeking information sends a request to a server. Typically, only files that are registered with that server are returned. Disadvantageously, the search is also usually restricted to a local, identified system. The search is thus conducted only where the server knows in advance to look.

Another disadvantage of known retrieval systems is the difficulty in accessing data in different forms. Current retrieval systems are typically designed to search for data in limited forms. One example is where a client requests files based on a subject, like a person's name. Search results for this type of search may only retrieve text files of peoples' names. Another problem in current retrieval systems is that the client may receive text and image files in the search results, but cannot seamlessly access the image files. Yet another problem in current retrieval systems is that video and sound files related to the request may not even be found in the search results. For example, a doctor might be able to retrieve medical records on a specific patient, but cannot view MRI or X-Ray results associated with that record.

A distributed database is one where data is stored and retrieved among multiple machines connected by a network. Typically, each machine in which some portion of the data in a distributed database may reside is called an application server. One commonly asked question in an application server environment is: Where is data associated with a particular entity in a distributed database? The data location is a key question when a distributed database has highly dynamic, and even spontaneous, data distribution properties.

**2**

In networked environments where there are a large number of data repositories and any particular entity does not have data in all of the data repositories, a mechanism is needed that would permit queries to be directed only at data repositories with relevant information. It would also be beneficial to permit membership in the set of data repositories itself to be highly dynamic. Such a system would support on-the-fly addition and removal of data repositories from the topology of a distributed database seamlessly and without the need to reprogram the database.

Another challenge faced in networked environments is scaling system capabilities in a manner sufficient to handle variable demand for resources. A system and method for scaling resources to accommodate demands for those resources is also desirable.

## BRIEF SUMMARY

In view of the above, the invention provides a system and method for managing data, using a transfer protocol, in a network environment. According to one aspect of the invention, a system for managing location information and providing location information to data location queries comprises a transfer protocol configured to manipulate an identifier, and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each data location specifies a location of data in a network pertaining to the entity. The system also includes a location server containing location information corresponding to at least one entity that is formatted according to the transfer protocol, where the location of data relates to an application server in the network. The system further includes programming logic stored on the location server that is responsive to a location query identifying a desired entity to return a location message. The location message includes one or more locations associated with the desired entity.

According to another aspect of the invention, a method of handling location queries in a network having a plurality of location servers containing location information correlating each of a plurality of unique identifiers with at least one location is disclosed. The method includes receiving a location query from a client requesting the location of data relevant to an entity identified in the query. The queried location server sends a location response message to the client if the queried location server contains information relevant to the entity identified in the query. The location server sends a redirect message to the client if it does not contain location information relevant to the entity identified in the query, where the redirect message comprising a list of location servers containing information relevant to the entity identified in the query.

In another aspect of the invention, a method of scaling at least one of location server capacity and transaction rate capability in a system for storing and retrieving location information over a network using a transfer protocol is disclosed. The method includes providing a transfer protocol configured to transport and manipulate an identifier and a location, the location specifying the location of data in the network corresponding to the identifier, and providing a first location server storing location information formatted according to the transfer protocol. Upon receipt of an identifier and location from a first client, where the location represents a location of an application server in the network containing data stored by the first client related to an entity represented by the identifier, the location is stored in a location store at the first location server. A portion of the

US 7,233,978 B2

3

4

identifiers and respective location associations in the first location server are transferred to a second location server when a performance criterion of the first location server reaches a predetermined performance limit.

According to another aspect of the invention a database is disclosed. The database includes a computer readable medium containing a plurality of index designations, where each index designation represents of one of a plurality of identifiers, and where each identifier uniquely identifies an entity. The database also contains a plurality of locations, where each of the locations is associated with at least one of the plurality of index designations and represents a location of information relevant to an identifier represented by an index designation. A location store having a table containing the plurality of index designations and associated locations is stored in the computer readable medium, as well as an indexing function operative to map each of the plurality of identifiers to a respective one of the plurality of index designations.

These and other features and advantages of the invention will become apparent upon a review of the following detailed description of the presently preferred embodiments of the invention, when viewed in conjunction with the appended drawings.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a system block diagram according to a preferred embodiment.

FIG. **2** is a block diagram of a location suitable for use in the system of FIG. **1**.

FIG. **3** is a block diagram of an alternative embodiment of the location of FIG. **2**.

FIG. **4** is a block diagram of an NDTP server suitable for use in the system of FIG. **1**.

FIG. **5** is a block diagram of an NDTP server topology according to a preferred embodiment.

FIG. **6** is a block diagram of an alternative NDTP server topology.

FIG. **7** is an example of multiple outstanding protocol requests.

FIG. **8** is a layout of one presently preferred string format.

FIG. **9** is a layout of one presently preferred NDTP_GET message.

FIG. **10** is a layout of one presently preferred NDTP_GET RSP message.

FIG. **11** is a layout of one presently preferred NDTP_PUT message.

FIG. **12** is a layout of one presently preferred NDTP_ PUT_RSP message.

FIG. **13** is a layout of one presently preferred NDTP_DEL message.

FIG. **14** is a layout of one presently preferred NDTP_ DEL_RSP message.

FIG. **15** is a layout of one presently preferred NDTP_UPD message.

FIG. **16** is a layout of one presently preferred NDTP_ UPD_RSP message.

FIG. **17** is a layout of one presently preferred NDTP_ RDR_RSP message, where FIG. **17**(a) shows a server table layout, and FIG. **17**(b) shows a redirect function layout.

FIG. **18** is a system diagram showing an NDTP server constellation configuration and exemplary data flow paths.

FIG. **19** is a system diagram showing a client-centric NDTP server constellation approach for redirection.

FIG. **20** is a system diagram showing a server-centric NDTP server constellation approach for redirection.

FIG. **21** is a system block diagram showing a multi-server implementation environment of the transfer protocol of the invention.

FIG. **22** is a block diagram of a splitting process in an NDTP server cluster.

FIG. **23** illustrates an embodiment of a content management/object management system configuration incorporating an NDTP server network.

FIG. **24** illustrates an embodiment of a vehicle tracking system incorporating an NDTP server.

FIG. **25** illustrates an embodiment of a mobility management application incorporating an NDTP server.

FIG. **26** illustrates an embodiment of a location store format for the NDTP server of FIG. **25**.

DETAILED DESCRIPTION OF THE
PRESENTLY PREFERRED EMBODIMENTS

The following terms are used to describe the operation of the presently preferred distributed database system. A network distributed tracking protocol (NDTP) is a transfer protocol having the capability to manipulate location information used to efficiently track the location of information associated with an individual entity in the distributed database system. An "entity identifier" or an "identifier" is a unique encoding, which may be a string in one embodiment, with which zero or more data location specifiers are associated in an NDTP server. A "data location" or "location" is an encoding, for example a string, that is a member of a set of associations with an identifier in an NDTP server. An "NDTP client" or a "client" is a network-attached component that initiates add, delete, lookup and update of identifier/location mappings, or associations, from an NDTP server with NDTP request messages. An "NDTP server" or a "server" is a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to NDTP request messages from clients. The term "Network Byte Order" is the ordering of bytes that compose an integer of larger than a single byte as defined in the Internet Protocol (IP) suite. Preferably, Network Byte Order specifies a big-endian, or most significant byte first, representation of multibyte integers. In this specification a byte is preferably composed of eight bits.

FIG. **1** shows one basic topology of a preferred network **10** implementing a preferred embodiment of the distributed database system. The distributed database system **10** includes at least one NDTP server **12**, at least one client **14**, and, in one embodiment, an application server **16**. An application server **16** is deployed for given purposes, such as a distributed database, instant messaging, phone routing, distributed content management, geo-location services and etc. As will be explained in greater detail below, the distributed database system preferably allows clients **14** to efficiently locate information through queries to the NDTP servers **12**. Using the NDTP protocol, the NDTP servers maintain location information in the form of a list of location associations with an entity. The location may be address information for the application server(s) containing information relevant to the identifier or address information for the application server(s) through which data relevant to the identifier may be accessed. In one embodiment, when a client queries the NDTP server for information pertaining to an entity, the NDTP server preferably returns a list of all locations for the specified entity. The client then can directly access the various locations, relieving the NDTP server of any further involvement in the transaction and allowing the NDTP server to handle more queries.

JA0073

US 7,233,978 B2

5 6

Alternatively, the location may also be one or more pieces of data identifying the physical location of the entity identified by the identifier. In embodiments where the location on the NDTP server is a physical location of the entity identified by the identifier (e.g. a geo-location service), no application servers 16 may be necessary because the location information on the NDTP server(s) may be the endpoint of the client query.

When the locations returned by an NDTP server to a client are of address information of one or more application servers, these application servers 16 may be any type of mechanism accessible by a client system. As shown in FIG. 2, a location, such as an application server 16 containing a location-enabled service or router table, may include an NDTP application 18 for receiving and reporting NDTP references. The application server 16 running the location-enabled service or router table preferably supports the client-server interactions. Any of a number of existing location-enabled services, such as Universal Resource Identifier (URI)—Universal Resource Locator (URL) mappings in distributed content management, or router table formats may be operated on the application server 16.

FIG. 3 illustrates an embodiment where the location is a data repository 24 composed of an application server 22 and an NDTP application 20 associated with a persistent storage mechanism 26 such as a disk drive, for managing client-server interaction. In an alternative embodiment, the location in FIG. 2 may consist of a routing table on the application server 16. In this alternative embodiment, the NDTP application 18 performs location interactions and the routing table routes services to appropriate destinations. Similarly, the client 14 may be any mechanism capable of communicating with the NDTP server. For example, a client 14 may consist of a PC-based computer, computer network, personal digital assistant (PDA), telephone, car messaging center, and so on.

The NDTP server 12 illustrated in FIG. 1 is preferably a network server configured to answer the question: Where is data associated with a particular entity in a distributed database system? This is in contrast to the question of what is the data associated with a particular entity in the distributed database system that must be answered by a typical distributed database mechanism. The NDTP server is built upon a location store data structure. Large databases store large amounts of data, but the NDTP server is only concerned with the location of that data, rather than the end-point referent data itself.

Referring to FIG. 4, the NDTP server 12 includes a network front end 34, RAM storage 36, and non-volatile storage 38. The non-volatile storage 38 may be a disk drive that is in communication with, or integral with, the NDTP server hardware. The network front end 34 includes a memory manager that is preferably logic operative to divide a large contiguous memory area into small, fixed sized chunks, for example 128 octets. These fixed sized chunks are used to build both strings, with linked lists of chunks used to represent strings that do not fit within a single chunk, and mapping lists, with linked lists of chunks to represent mapping lists that have more elements than fit in a single chunk. The network front end also includes a transaction protocol, such as transaction control protocol/Internet protocol (TCP/IP). The NDTP server 12 preferably maintains the state of its mappings in the non-volatile storage 38. An indexed location store is maintained in RAM 36 that contains a table of index designations, where the identifiers are mapped to one or more locations in the location store. The indexed location store may be indexed by a table imple-

mented through an efficient function, such as hash function, b-tree function or t-tree function. Additionally, an NDTP server map identifying any other NDTP server locations for the specific network and the set of associations contained in each respective NDTP server is maintained in RAM, persistent storage, or preferably both RAM and persistent storage.

In one embodiment, a NDTP server 12 will read the state of its mapping sets from disk storage to service requests from clients, and once it starts servicing requests, the only action it will perform to disk storage is to record each NDTP update transaction as it is processed. In other embodiments, the state of the NDTP server mapping sets may be maintained in RAM. In yet other embodiments, the server mapping sets are maintained in RAM and persistent storage. The records written to the NDTP server log file refer to associations in the NDTP server location store using a pointer that defines a reference to an existing location. In one embodiment, the record looks like:

```
typedef struct ss_log_map {
        ss_i_t op;              /* opcode, LOG_MAP */
        ss_i_t rec;             /* rec pointer (previously allocated chunk */
        ss_i_t to;              /* to pointer (string) */
}   ss_log_map_t;
```

The ss_i_t type is the natural unsigned integer for the platform on which the NDTP server is being run. For example, it is a 32-bit integer on Intel (IA32) platforms, and a 64-bit integer on UltraSPARC platforms.

If the NDTP_PUT results in extending the linked list of mapping pointers with a new memory chunk, the record is somewhat different:

```
typedef struct ss_log_new_map {
        ss_i_t op;              /* opcode, LOG_NEW_MAP */
        ss_i_t from;            /* from pointer (in string or rec) */
        ss_i_t rec;             /* rec pointer (new rec) */
        ss_i_t to;              /* to pointer (string) */
}   ss_log_new_map_t;
```

The log record for an NDTP_DEL update is similar to the one for an NDTP_PUT;

```
typedef struct ss_log_unmap {
        ss_i_t op;
        ss_i_t from;            /* from pointer (key cstr) */
        ss_i_t to;              /* to pointer (data cstr) */
}   ss_log_unmap_t;
```

Each time a new location is created in the NDTP server location store, a new string log file entry is written into the log file:

```
typedef struct ss_log_string {
        ss_i_t op;              /* opcode, LOG_STRING */
        ss_i_t len;
        ss_i_t chunks[ ];
        ss_log_str_t s;
}   ss_log_string_t;
```

US 7,233,978 B2

7

where the ss_log_str type is similar to the ndtp_str_t, except that the len field is an ss_i_t instead of a uint32_t:

```
typedef struct ss__log__str_t {
    ss_i_t len;
    uint8_t data[ ];
} ndtp__str_t;
```

The transactional nature of NDTP protocol means that the response to an update request is not returned until request has completed, including being committed to nonvolatile storage. The NDTP server 12 combines the log file writes of multiple NDTP update transactions by adding each log file record to a log file write buffer 46 until either the buffer becomes full, or the network front end requests that one or all log file write buffers 46 be flushed to disk. The NDTP server 12 preferably maintains more than one log file buffer so that its performance at high transaction rates becomes insensitive to the high latency of individual file write operations. To prevent unbounded log file growth, the NDTP server will periodically write its entire current state to a new log file, close the old log file, and then begin the update logging process in the new log file.

Implementing the NDTP protocol specified below, if there are a large number of data repositories and other types of application servers in a network and any particular entity does not have data in all of them, the NDTP server permits queries to be directed only at pertinent data repositories and application servers. The NDTP server also preferably permits membership in the set of repositories and application servers itself to be highly dynamic and even spontaneous. The NDTP server supports the on-the-fly addition and removal of data repositories and application servers from its deployed topology.

The NDTP server 12 may be implemented on any of a number of standard computer platforms including, for example, PC-based platforms having 64 Megabytes of RAM, and a PENTIUM-type processor operating at 450 MHz on a 100 Mbit Ethernet connection. Additionally, as illustrated in FIGS. 5 and 6, the NDTP server may be a network of NDTP servers configured in any number of ways. For example, FIG. 5 illustrates a flat NDTP server topology using clustering, or a distributed topology using replication, where each of the NDTP servers 12 in the cluster may contain a different portion of a pool of associated identifier and location information. In another alternative embodiment, a hierarchical NDTP server topology, such as the NDTP server tree 52 shown in FIG. 6, may be utilized. In the NDTP server tree 52 topology, each node 54 may be an individual NDTP server 12, a cluster 50 of NDTP servers, an NDTP server tree or any combination of these arrangements.

Network Distributed Tracking Protocol (NDTP)

The Network Distributed Tracking Protocol (NDTP) efficiently tracks the location of data associated with an individual entity in a distributed database. NDTP is a transactional protocol, which means that each operation within NDTP consists of a request message from an NDTP client to an NDTP server, followed by an appropriate response message from the NDTP server to the NDTP client.

The NDTP server treats the identifier as an unstructured stream of octets, which is assumed to be unique to a particular entity. The precise structure of the NDTP identifier and the mechanism for ensuring its uniqueness are a function of the application in which the NDTP server is used. In a customer oriented application, the NDTP identifier might

8

be a unique customer identifier, for example, a Social Security Number, in either printable or binary integer form, as is appropriate to the application. NDTP also defines a location to specify an association with a particular identifier. Multiple connections of locations with identifiers may be used concurrently.

As with identifiers, the NDTP server treats locations as unstructured streams of octets. The structure of a location is a function of the application in which the NDTP server is used. For example, a location might be an Internet machine name, and a TCP/IP port number for a relational database server, or an HTTP Universal Resource Locator (URL), or some concatenation of multiple components.

The NDTP server efficiently maintains and dispenses one to many relationships between identifiers and locations. In other words, an identifier may be associated with any number of locations. In embodiments where the location information relates to locations of application servers containing data or routing information for finding data, the NDTP server is updated to indicate an association between the identifier and the application server's location when data for a particular identifier is added to an application server. When a query is performed for an identifier, the NDTP server supplies the set of application servers in which data may be found for that identifier.

General NDTP Mechanics

The protocol of the invention is designed to provide maximum transaction throughput from both the NDTP server and associated clients. The design goal is realized through two design principles:

1. NDTP messages should preferably be as short as possible to maximize the rate of NDTP transactions for a given network communication bandwidth.
2. NDTP messages should preferably be structured for efficient processing on existing machine architectures.

Design Optimizations.

In keeping with other network protocol standards including TCP/IP, multioctet integer quantities in NDTP are preferably encoded using the big endian integer interpretation convention, as set forth above. In one embodiment, NDTP fields are preferably represented in binary format and aligned on 32-bit boundaries.

To overcome network latency, NDTP is designed to support asynchronous operation, where many requests may be sent to an NDTP server before a response from any of them is received.

Each NDTP message is preceded by a fixed size, 12-octet header, using the preferred data structure:

```
typedef struct ndtp_hdr {
    uint8_t op;                /* opcode */
    uint8_t pad[3];
    uint32_t id;               /* transaction identifier */
    uint32_t size;             /* total request size
                                  following the header */
} ndtp_hdr_t;
```

where:

op:

NDTP message numerical operation code.

```
NDTP_GET:          get request
NDTP_GET_RSP:      get response
```

US 7,233,978 B2

9

10

-continued

| NDTP_PUT: | put request |
| NDTP_PUT_RSP: | put response |
| NDTP_DEL: | delete request |
| NDTP_DEL_RSP: | delete response |
| NDTP_RDR_RSP: | request redirection |
| NDTP_UPD: | update |
| NDTP_UPD_RSP: | update response |

id:

Client supplied operation request used to distinguish responses from multiple outstanding NDTP asynchronous requests. Each "_RSP" message echoes the id field of the associated request.

size:

Size, in octets of the remainder of the NDTP message. The size field should preferably be a multiple of 4 octets.

Variably sized portions of NDTP messages are preferably defined with a size field rather than some other delimiter mechanism to facilitate efficient reading of NDTP messages.

The variably sized portions of NDTP messages are composed of zero or more NDTP strings:

```
typedef struct ndtp_str {
    uint32_t len;
    uint8_t data[ ];
} ndtp_str_t;
```

Note that the C struct definitions in this document are schematic, and not necessarily fully compliant structures in the C programming language. Specifically, arrays denoted in this document with "[]" imply a dimension which is only known dynamically and this indefinite array size specifier is not allowed in C struct definitions. Note also the following:

len:

the number of significant octets of data following the len field in the data area.

data:

len octets of data, followed by up to 3 octets of padding, to ensure that the total length of the NDTP string structure is a multiple of 4 octets.

The padding octets are not included in the len field.

Because variable sized portion NDTP messages are composed of zero or more NDTP strings and NDTP records preferably occupy an even multiple of 4 octets, this ensures that the "size" field of NDTP message headers will preferably be a multiple of 4 octets.

Protocol Structure

An example of multiple outstanding NDTP requests and the use of request identifiers is shown in FIG. 7. NDTP preferably has a simple, stateless request response structure. Each request message 60 sent by a client 14 has a corresponding response message 62 returned by the server 12. To maximize server throughput and use of available network bandwidth, NDTP is asynchronous in nature. Many requests 60 from a single client 14 may be outstanding simultaneously, and responses 62 may or may not be returned from the server 12 in the order in which the requests 60 were issued. Each NDTP request 60 contains an NDTP request identifier 64 that is returned in the NDTP response 62 for the associated request 60. An NDTP client 14 uses a unique NDTP request identifier 64 for each NDTP request 60 that is outstanding at the same time to an NDTP server 12 if it wishes to correlate responses with requests.

There are four basic operations preferably supported by the NDTP: add a location association, delete a location association, get location associations, and update a location association or associations. The response to adding a location association is a simple acknowledgement. If the location is already associated with the identifier, adding the association has no effect, but the request 10 is still acknowledged appropriately. In other words, the NDTP add operation is idempotent. The response to deleting a location association is a simple acknowledgement. If the location is not currently associated with the identifier, deleting the association has no effect, but the request 60 is still acknowledged appropriately. In other words, the NDTP delete operation is idempotent. The response to getting one or more locations is a list of one or more locations presently associated with an identifier. If no location associations currently exist, a list of length zero is returned. The response to updating a location association for an identifier is a simple acknowledgement. As the NDTP update operation is functionally a combination of the NDTP add and delete operations, the NDTP update operation is also idempotent.

Message Formats

NDTP messages 60, 62 preferably have a regular structure that consists of a message operation code, followed by a request identifier 64, followed by a length (in bytes) 66 followed by zero or more strings 68 as shown in FIG. 8. As those skilled in the art will appreciate, NDTP message formats are preferably independent of the network transport layer used to carry them. NDTP preferably defines mappings of these messages 60, 62 onto TCP and UDP transport layers (described in detail below), but other mappings could also be defined and it is likely that these NDTP message formats would not require change. For example, the notation ROUND4(X) means X, rounded up to the next multiple of 4.

Integer Format

Multibyte integers in NDTP messages are represented in network byte order; using the big-endian convention. In other words, the most significant byte of a multibyte integer is sent first, followed by the remainder of the bytes, in decreasing significance order.

String Format

Strings in NDTP are represented as counted strings, with a 32-bit length field 66, followed by the string data 68, followed by up to 3 bytes of padding 70 to make the total length of the string representation equal to ROUND4 (length). This layout is shown diagrammatically in FIG. 8.

NDTP_GET Format

The NDTP_GET message has a message operation code 72 of 2, and a single NDTP string 74 which is the identifier string for which to get associated locations. This layout is shown diagrammatically in FIG. 9.

NDTP_GET_RSP Format

The NDTP_GET_RSP message has a message operation code 76 of 3, and zero or more strings 78 that are the locations currently associated with the requested identifier. This layout is shown diagrammatically in FIG. 10.

NDTP_PUT Format

The NDTP_PUT message has a message operation code 80 of 4, and two NDTP strings 82, 84. The first string 82 is the identifier for which to add a location association, and the second string 84 is the location to add. This layout is shown diagrammatically in FIG. 11.

US 7,233,978 B2

**11**

NDTP_PUT_RSP Format

The NDTP_PUT_RSP message has a message operation code **86** of 5, and zero NDTP strings. This layout is shown diagrammatically in FIG. **12**.

NDTP_DEL Format

The NDTP_DEL message has a message operation code **88** of 6, and two NDTP strings **90**, **92**. The first string **90** is the identifier from which to delete a location association, and the second string **92** is the location to delete. This layout is shown diagrammatically in FIG. **13**.

NDTP_DEL_RSP Format

The NDTP_DEL_RSP has a message operation code **94** of 7, and zero NDTP strings. This layout is shown diagrammatically in FIG. **14**.

NDTP_UPD Format

The NDTP_UPD message **93** has an operation code **95** of 9, and three NDTP strings. The first string **96** is the identifier from which to update the location association. The second string **97** is the location to delete. The third string **98** is the location to add. This layout is shown diagrammatically in FIG. **15**.

NDTP_UPD_RSP Format

The NDTP_UPD_RSP message **99** has an operation code **100** of 10, and zero NDTP strings. This layout is shown diagrammatically in FIG. **16**.

A general description of the usage and operation of these protocol messages is provided below.

NDTP_GET Transaction

The NDTP_GET message contains a single NDTP string which is the identifier for which associated data locations are requested.

```
typedef struct ndtp__get {
        ndtp__hdr_t hdr;
        ndtp__str_t key;
}       ndtp__get_t;
```

The NDTP_GET_RSP message contains zero or more NDTP strings which are the locations associated with the NDTP identifier:

```
typedef struct ndtp__get_rsp {
        ndtp__hdr_t hdr;
        uint32_t rsps;
        ndtp__str_t values[ ];
}       ndtp__get_rsp_t;
```

NDTP_PUT Transaction

The NDTP_PUT messages contains two NDTP strings which are (1) the NDTP identifier and (2) the NDTP location which is to be associated with the NDTP identifier.

```
typedef struct ndtp__put {
        ndtp__hdr_t hdr;
        ndtp__str_t key;
        ndtp__str_t data;
}       ndtp__put_t;
```

**12**

The NDTP_PUT_RSP message has no NDTP strings, and simply indicates that the requested identifier/location association was added:

```
typedef struct ndtp__put_rsp {
        ndtp__hdr_t hdr;
}       ndtp__put_rsp_t;
```

The requested identifier/location association is added in addition to any other associations already maintained by the NDTP server. If the requested identifier/location association is already in effect, the NDTP_PUT still succeeds and results in an NDTP_PUT_RSP message.

NDTP_DELETE Transaction

The NDTP_DEL message contains two NDTP strings which are (1) the NDTP identifier and (2) the NDTP location which is to be unassociated with the NDTP identifier:

```
typedef struct ndtp__del {
        ndtp__hdr_t hdr;
        ndtp__str_t key;
        ndtp__str_t data;
}       ndtp__del_t;
```

The NDTP_DEL_RSP message has no NDTP strings, and simply indicates that the requested identifier/location association was deleted.

```
typedef struct ndtp__del_rsp {
        ndtp__hdr_t hdr;
}       ndtp__del_rsp_t;
```

If the requested identifier/location association is not in effect, the NDTP_DEL still succeeds and results in an NDTP_DEL_RSP message.

NDTP_RDR_RSP Message

NDTP supports a distributed server implementation where the NDTP client selects the appropriate server from a table of servers based upon a distribution function computed from the identifier. This distribution function is preferably a standard hash function, for example the hashpjw function presented by Aho, Sethi and Ullman in their text Compilers, Principles, Techniques and Tools. Alternatively, when interest so dictates, NDTP allows applications to provide a customized function as an alternative to a standard hash function.

The NDTP client can determine the size of the NDTP server table, which may have changed, and then update its local copy of the NDTP server table and attempt the NDTP transaction again, this time directed at the correct NDTP server. An NDTP redirection mechanism (described in detail below) preferably permits a client to store permanently only a single NDTP server address, and learn the complete NDTP server table size and contents from the NDTP_RDR_RSP message from the first NDTP request the client performs for which the identifier does not reside on a well-known server.

NDTP_UPD Transaction

The NDTP_UPD message is functionally a combination of the NDTP_PUT and NDTP_DEL messages described above. The NDTP_UPD_RSP message is also functionally

13

the same as the NDTP_UPD_RSP and NDTP_DEL_RSP messages, where there is simply an indication that an identifier/location association update was made.

Network Front End

The NDTP server network front end preferably maximizes NDTP transaction throughput including concurrent NDTP requests from a single client as well NDTP requests from multiple concurrent clients.

Network Communication Mechanism

NDTP defines a transaction oriented protocol, which can be carried over any of a variety of lower level network transport protocols. TCP and UDP are currently supported, however any of a number of other protocols are also supportable.

TCP/IP: TCP/IP provides a ubiquitously implemented transport which works effectively on both local area and wide area networks. An NDTP client using TCP/IP preferably connects with the NDTP server at an established TCP port number, and then simply writes NDTP request messages through the TCP/IP connection to the server, which then writes NDTP response messages back to the client through the same TCP/IP connection in the reverse direction.

UDP/IP: For isolated NDTP transactions, depending upon the application and network infrastructure in use, it is beneficial to have the NDTP server employ UDP/IP, which is a widely available connectionless datagram protocol.

However, UDP/IP does not support reliable data transfer, or any congestion control mechanism. This means that NDTP clients using UDP/IP must implement reliability and congestion control maintaining transaction timeouts and performing exponential retry backoff timers, precisely analogous to the congestion control mechanism implemented by Ethernet, and other well known UDP protocols. Those skilled in the art will note that the NDTP protocol is stateless from the standpoint of the NDTP server, which means that there is no congestion control or reliability burden on the server; it is all implemented in a distributed manner by the NDTP UDP/IP clients. Still Higher Performance (ST): Both TCP/IP and to a lesser degree UDP/IP suffer from high host CPU overhead. Like the relatively long latency of TCP/IP, this host CPU consumption is considered just the "cost of doing business" where TCP/IP provides ubiquitous connectivity. If an NDTP server were running in a more constrained environment, where ubiquitous connectivity was not required, its absolute performance could be improved substantially by using a different protocol that is optimized to reduce CPU overhead and latency, such as the Scheduled Transfer (St) protocol.

NDTP Query Processing

In one embodiment, the NDTP server network front end preferably services NDTP query requests in a FIFO style by reading the NDTP_GET message, performing the lookup for the identifier in the NDTP server location store, and writing the NDTP_GET_RSP message. Each NDTP query is independent of any other NDTP transactions (other queries or updates), so multiple NDTP queries may be processed simultaneously on multiprocessor machines. The NDTP server permits this by not performing multiprocessor locking in the NDTP query processing path.

NDTP Update Processing

To maintain high performance on NDTP updates, the NDTP server network front end preferably supports multiple concurrent asynchronous update transactions. Each update is preferably performed automatically to avoid creating an

14

inconsistent state in the location store. All NDTP updates are serialized through the location store mutator critical code sections.

When an NDTP update is processed, a call is made to the location store mutation function, which returns immediately indicating either that the mutation is complete, or that the completion will be signaled asynchronously through a callback mechanism. For updates which are not immediately completed, the network front end maintains a queue of NDTP updates for which it is awaiting completion. When completed, the network front end writes the NDTP update response messages for all completed updates back to the clients.

Multiple Connection Handling

The NDTP server network front end may be conditionally compiled to use either of two standard synchronous I/O multiplexing mechanisms, select or poll, or to use threads to prevent blocking the server waiting for events on individual connections. The threaded version of the NDTP server network front end preferably creates two threads for each NDTP connection, one for reading and one for writing.

TCP Mapping

NDTP is preferably carried on TCP in a standard manner. An NDTP/TCP client opens a connection with a server on a well-known port. The well-known TCP and UDP port numbers can be selected arbitrarily by the initial NDTP implementer. Port numbers that do not conflict with existing protocols should preferably be chosen. The client sends NDTP requests **60** to the server **12** on the TCP connection, and receives responses **62** back on the same connection. While it is permissible for a single client **14** to open multiple NDTP/TCP connections to the same server **12**, this practice is discouraged to preserve relatively limited connection resources on the NDTP server **12**. The asynchronous nature of NDTP should make it unnecessary for a client **14** to open multiple NDTP/TCP connections to a single server **12**.

If protocol errors are detected on an NDTP/TCP connection, the NDTP/TCP connection should be closed immediately. If further NDTP/TCP communication is required after an error has occurred, a new NDTP/TCP connection should be opened. Some examples of detectable protocol errors include: Illegal NDTP message operation code; Nonzero String Area Length in NDTP_PUT_RSP or NDTP_GET_RSP; Inconsistent String Area Length and String Length(s) in NDTP_GET, NDTP_GET_RSP, NDTP_PUT, NDTP_DEL or NDTP_UPD; and Unexpected NDTP request identifier by client.

Due to the reliable nature of TCP, NDTP/TCP servers **16** and clients **12** need not maintain any additional form of operation timeout. The only transport errors that can occur will result in gross connection level errors. A client **12** should assume that any NDTP requests **10** for which it has not received responses **14** have not been completed. Incomplete operations may be retried. However, whether unacknowledged NDTP requests **10** have actually been completed is implementation dependent.

UDP Mapping

Unreliable Datagram Protocol (UDP) provides connectionless, unacknowledged datagram transmission. The minimal protocol overhead associated with UDP can deliver extremely high performance if used properly.

NDTP/UDP clients **14** send UDP datagrams with NDTP request messages **60** to a well-known UDP port (see above). NDTP/UDP servers **12** return NDTP response messages **62** to the client **14** selected local UDP port indicated in the

JA0078

US 7,233,978 B2

15                                                                      16

NDTP/UDP datagram containing the requests **60**. NDTP/ UDP does not require any form of connection or other association to be established in advance. An NDTP interchange begins simply with the client request message **60**.

For efficiency, the mapping of NDTP onto UDP permits multiple NDTP messages to be sent in a single UDP datagram. UDP datagrams encode the length of their payload, so when a UDP datagram is received, the exact payload length is available. The recipient of an NDTP/UDP datagram will read NDTP messages from the beginning of the UDP datagram payload until the payload is exhausted. Thus, a sender of an NDTP/UDP datagram is free to pack as many NDTP messages as will fit in a UDP datagram.

NDTP/UDP client **14** implementations that use the NDTP request identifier **64** for antialiasing should ignore (i.e., skip) NDTP messages within a NDTP/UDP datagram with invalid NDTP request identifier **64** values. Client **14** or server **12** NDTP/UDP implementations detecting any other protocol error should also preferably discard the remainder of the current NDTP/UDP datagram without processing any further NDTP requests from that datagram. Some examples of such detectable errors include: Illegal NDTP message operation code, Nonzero String Area Length in NDTP_PUT_RSP or NDTP_GET_RSP, Inconsistent String Area Length and String Length(s) in NDTP_GET, NDTP_GET_RSP, NDTP_ PUT Or NDTP_DEL, and Inconsistent NDTP message length and UDP datagram length.

Because NDTP/UDP messages are limited to the length of a single UDP datagram payload, NDTP/UDP cannot be used to transfer long NDTP messages. For example, it would be difficult to send an NDTP_GET message with NDTP/UDP for a 64 K byte identifier.

Those skilled in the art will appreciate that network congestion is a highly dynamic property that is a function of network traffic from all sources through a network link and will vary over time over any given network path. An NDTP/UDP client **14** implementation can recover from network congestion by switching to NDTP/TCP after several failed retries using NDTP/UDP. Failure due to network congestion may be indistinguishable from failure due to UDP packet size limitations, but since the recovery strategy is the same in both cases, there is no need to distinguish these cases.

NDTP Redirection

NDTP handles NDTP server scaling with the NDTP's redirection mechanism, which is managed through an NDTP server **12**, or set of such servers. This redirection mechanism allows arbitrary distribution of the data set across completely independent machines. The set of machines managing the NDTP server data set may be referred to as an NDTP server cluster **50**, as shown in FIG. **5**. The NDTP redirection mechanism exploits this by permitting the distribution of identifiers to location mappings across members of an NDTP server cluster. An advantage of distributing an NDTP server data set across independent machines is that both capacity and transaction rate scale can be increased. In one embodiment, each additional machine in an NDTP server cluster **50** linearly increases capacity, by adding main and secondary storage, and transaction rate, by adding processing power and network bandwidth (assuming a properly scalable network infrastructure is employed).

Each NDTP server **12** maintains a copy of the NDTP server map. An NDTP server will check each request it receives and verify that it is intended for itself. If it is not, it will respond to the client **14** with an NDTP Redirection

Response message (NDTP_RDR_RSP), instead of responding with the normal operation completion message.

A client may misdirect a NDTP request because the NDTP server cluster may have been reconfigured since the client last obtained a copy of the NDTP server map. Thus, the NDTP_RDR_RSP message includes a complete copy of the current NDTP server map with which the client may determine the correct NDTP server for the given NDTP request.

In essence, the NDTP server maintains authoritative copies of the NDTP server map, whereas NDTP clients may have out-of-date copies of the NDTP server map. This property permits efficient reconfiguration of the NDTP server cluster. With the redirect message, an NDTP client can determine the size of the NDTP server table, which may have changed, and then update its local copy of the NDTP server table, and attempt the NDTP transaction again, this time directed at the correct NDTP server.

The NDTP redirection mechanism permits a client permanently to store only a single NDTP server address, and learn the complete NDTP server table size and contents from the NDTP_RDR_RSP from the first NDTP request the client performs which the identifier does not reside on the well known server. The NDTP backbone topology can change dynamically in a similar way to application server topology. Preferably, any time the cluster is reconfigured, only the NDTP servers are updated, rather than the (potentially) unbounded number of clients in the network.

The NDTP client can start out with an NDTP server map containing a single, well known, NDTP server entry: If the well-known NDTP server is not the NDTP server which is managing the portion of the NDTP server data set containing the identifier in the client request, an NDTP_RDR_RSP will be returned, and the client can update its local copy of the NDTP server map. Once a client has received a new NDTP server map, it will use it for the lifetime of the client application, or until it receives a new NDTP server map. The client may also put the most current NDTP server map into a persistent store, so that new invocations of the client application, or other clients of the same network, can begin operation without even a single NDTP_RDR_RSP.

If the client's saved NDTP server map becomes out-of-date, the server will return an updated NDTP server map the first time a client sends a NDTP request to an incorrect NDTP server. If a client request times out for some reason, this might mean that a machine in the current NDTP server map has been removed from the NDTP server cluster. In this case, to get the current NDTP server map the client may either (1) return to its base-line NDTP server map, containing the single well known NDTP server, or (2) direct the request to any other NDTP server in its current NDTP server map. Whether received directly, or by a map update via NDTP_RDR_RSP, the client will obtain the desired location specifiers with at most two NDTP transactions.

The ability to scale NDTP service beyond a single server requires a mechanism to distribute portions of the identifier/ location association set across multiple NDTP servers. The presently preferred embodiment for accomplishing this is to define a well-known function of the identifier and use this function to select from a set of NDTP servers. NDTP clients will preferably apply this well-known function to the identifier for each NDTP request, and send the NDTP request to the indicated NDTP server. This technique will effectively partition the set of all identifier/location associations across the NDTP servers. Each NDTP server will only maintain the portion of the total association set which corresponds to its particular identifiers. This NDTP server redirection mechanism permits construction of NDTP server clusters. It is

US 7,233,978 B2

17

reasonable to expect that the identifier index function will be defined when an NDTP server instantiation is implemented, but the actual list of NDTP servers will change from application to application and within a single application throughout the lifetime of the system.

In one embodiment, each of the clients and NDTP servers are programmed with a well-known function and the redirection message, as shown in FIG. 17(a) carries of table of NDTP server URLs. The NDTP_RDR_RSP message 101 has a message operation code of 8, and a description of the system that the client should send its message to. In one embodiment, the system is described by a list of strings, where each string is an NDTP URL (e.g. ndtp://server.name.com:24500).

If there is more than one list in the outer list, then the client is to select the appropriate inner list to send a message to by applying the following well-known function to the identifier and using the function result as an index into the NDTP server table. In one preferred embodiment, the well-known function applied is the hashpjw function presented by Aho, Sethi and Ullman in their text Compilers, Principles, Techniques and Tools:

```
uint32_t
hash (uint8_t *s, uint32_t slen, uint32_t size)
{
    uint32_t g;
    uint32_t i;
    uint32_t h = 0;
    uint8_t c;
    for (i = 0; i < slen; i++) {
        c = s [i];
        h = (h << 4) + c;
        g = (h & 0xf0000000);
        if (g) {
            h ^= g >> 24;
            h ^= g;
        }
    }
    return h % size;
}
```

In the above code sequence, the parameter size is the size of the hash table (the number of elements in the NDTP server URL table in the NDTP_RDR_RSP message), and is preferably a prime number. Those skilled in the art will appreciate that the same NDTP server may appear multiple times in the NDTP server URL table. For example, if the server URL table has 2039 elements, by putting one NDTP server URL in the first 1019 table elements, and a second NDTP server URL in the second 1020 table elements, the responsibility for the index will be split roughly in half.

A second variant of the NDTP_RDR_RSP function mechanism specifies that a general function description will be sent to the NDTP client in the NDTP_RDR_RSP message. The NDTP client will apply this function to the identifier and the output of the function will be the NDTP server URL to which to send NDTP requests for the particular identifier. The advantage of this technique over the well-known function approach is that it allows application-specific partitions of the identifier space. This can permit useful administrative control. For example, if General Electric manages all identifiers beginning with the prefix "GE", a general function can be used to make this selection appropriately. The disadvantage of using a general function is it may be less efficient to compute than a well-known function.

18

There are a variety of possible mechanisms for sending function descriptions. NDTP is expected to be applied in environments that make extensive use of the Java programming platform. Therefore the NDTP_RDR_RSP mechanism preferably uses a feature of the Java programming language called "serialized representation" to communicate generalized function in the NDTP_RDR_RSP message. A serialized form of a Java object is a stream of bytes that represents the precise state of the object, including its executable methods. For example, the Java Remote Method Invocation (RMI) mechanism uses serialized objects to send executable code to a remote platform for execution. The NDTP_RDR_RSP message contains the serialized form of an object implementing this Java interface:

```
interface NDTPRedirect Function {
    String selectServer(byte[ ] identifier);
}
```

The format of the NDTP_RDR_RSP message 103 with a Java Serialized form of the NDTP redirection function is specifically identified in FIG. 17(b).

After the NDTP client has received a new server list, the client will direct further NDTP requests based on this updated NDTP server list until the NDTP server configuration changes again. An NDTP client may even save the current NDTP server list in non-volatile storage so that it can immediately select the correct NDTP server even after application or system restarts. Another possible alternative is for a client to remember only a single, well-known NDTP server, and update its NDTP server list every time the client restarts. These alternatives may be implemented as desired to accommodate design goals for a particular system.

Server Constellations

The NDTP server organization also allows NDTP servers to be combined in various ways to build server constellations that offer arbitrary server performance scalability and administrative control of the location of positions of the identifier/data location relation mappings. FIG. 18 illustrates a basic transaction flow according to a preferred embodiment where a client 112 communicates NDTP protocol messages with an NDTP server constellation 110 (which may be one or more NDTP servers) and separately transacts with an application server 114. The basic communication flow in FIG. 18 may represent a client 112 adding, deleting, or updating an identifier/location association(s), and in turn adding, deleting, or updating corresponding data. The communication flow may represent a client 112 requesting an identifier/location association(s) from the NDTP server, which may be a server constellation construed in either of two forms (see FIGS. 19 and 20 ), and then querying directly based on the identifier/location association(s) received from the NDTP server. NDTP server constellations preferably have two basic organizational paradigms: Client-Centric and Server-Centric.

Client-Centric Approach

Referring to FIG. 19, a single client (not shown) asks a server 120a in the server constellation 110 for operations that the client desires executed (represented by arrow 1 in FIG. 19). As discussed above, if the client does not receive the data requested, it will receive a redirection response message (NDTP_RDR_RSP) from the contacted server 120a (arrow 2 ). The client then uses the information it

US 7,233,978 B2

19

receives to ask another server 120b for the operations the client wants to initiate (arrow 3). A successful response from the second server 120b is then sent to the client (arrow 4).

Server-Centric Approach

FIG. 20 shows the server constellation 110 characterizing "server-centric" functionality. In this figure, an NDTP server 130a (server0) receives a request 132a from a client (not shown). The server 130a (server0) passes the request to a second server 130b (server1), which is an appropriate server for the process, and the second server 130b returns a response 134a to the first server 130a (server0). If the second server 130a (server1) was not appropriate, it could pass the request to another server (not shown), and so on. Each NDTP server 130a,b will combine the results of NDTP requests 132a,b it has performed of other NDTP servers 130a,b with whatever responses 134a,b it generates locally for the original NDTP request 132a, and the combined response 134 b will be with the appropriate response for the original NDTP request 132 a.

An important aspect of this topology is that it pushes processing emphasis toward servers 130a,b rather than toward clients. Since location/identifier processing can be centralized, administration of the indices can be administered more conveniently in certain cases.

Hybrid Constellations

The simplest NDTP server constellation is a single server, and the protocol is designed to permit massive scale with a single or simple server constellation. Highly configurable installations are possible using "client-centric" or "server-centric" techniques. NDTP server constellations 110 composed of more than one NDTP server may use any combination of the two approaches for performance optimization and administrative properties. Client-centric and server centric approaches can be used to build NDTP server clusters, NDTP server trees, NDTP server trees of NDTP server clusters, or any other useful configuration.

Topology: Hierarchical and Clustered

Hierarchical and clustered topologies may be created using a server-centric or client-centric approach. One illustration of a cluster topology 50 is shown in FIG. 5. A mixed topology containing hierarchical and clustered elements is shown in FIGS. 6 and 21. The primarily hierarchical topology of the embodiment of FIG. 21 can allow for a single administrative entity 102 to manage the NDTP sever cluster. An NDTP server hierarchy 100, such as illustrated in FIG. 21, permits identifier/location association data to be owned and physically controlled by many different entities.

Splitting & Coalescing Data Sets

The NDTP redirection mechanism discussed above offers flexibility in NDTP server cluster configuration with preferably little impact on clients. However, the NDTP server cluster itself must execute several steps to reconfigure the NDTP server data load. Methods for adding or removing an NDTP server from a running NDTP server cluster include splitting some portion of the data set from a running NDTP server cluster into one or more NDTP servers to be added to the cluster; coalescing some portion of the data set to a remaining NDTP server cluster; and propagating updated NDTP server maps efficiently to all NDTP servers in an NDTP server cluster. Preferably, these methods minimize interruption of service. Large batch-style updates are preferably avoided using the splitting and coalescing algorithm discussed below to handle large scale reconfiguration.

When reconfiguring NDTP server clusters, splitting and coalescing problems for an NDTP server are handled by

20

checkpointing the current data set state and loading it into another instance of an NDTP server. In the case where a data set will be split, a set of identifiers is transferred to another NDTP server. In the case where a data set is coalesced, several NDTP server states are loaded on a single NDTP server cumulatively.

Consider an example of splitting, as shown in FIG. 22, in which a given NDTP server cluster 140 having at least two NDTP servers 12 needs to reconfigure the distribution of identifier/location data among NDTP servers. If the identifier space needs to be split, whether for local policy reasons initiated by an administrator, or based on automatically monitored performance criteria such as transaction rate, storage capacity and etc., the splitting process begins by identifying the set of the data on Server 1, that will be transferred to Server 2. Referring to FIG. 22, Server 1 initially contains a total set of data consisting of Set A 142 and Set B 144. Assuming Server 1 has identified Set B as the data that needs to be split out to Server 2, Server 1 first checkpoints the data in Set B. Server 1 continues to operate normally with respect to Set A and will update (perform any of the NDTP add, delete, or update functions) without interruption. Server 1 also creates new set of data, Set C 146, which accumulates all operations directed to Set B 144 since the checkpoint of Set B 146 took place. Server 1 then copies Set B 144 to Set B' 148 on Server 2. After the copying of Set B 144 to Set B' 148 is complete, Server 1 freezes operations on Set C 146 and copies it to Set C' 150 on Server 2. Operation on Set B' 148 and Set C' 150 is then resumed on Server 2 and Sets B and C 144,146 are deleted from Server 1.

Preferably, the only interruption to the NDTP server activity in Server 1 or Server 2 is limited to the Set C and the time it takes to complete the copy step of Set C 146 to Set C' 150 while Server 1 freezes operations to Set C. Operations on the remaining data are preferably unaffected throughout the splitting process. NDTP lookup operations do not affect the checkpoints that are saved or loaded. Furthermore, if more than one NDTP server is already operating in the cluster, only the affected subset of the NDTP servers in an NDTP server cluster are interrupted during this process; the remainder of the NDTP server continues to operate undisturbed. An advantage that splitting and coalescing provides is the redistribution of identifier space without requiring reindexing, which is more expensive computationally.

When reconfiguring an NDTP server cluster, the new NDTP server map must be propagated to all NDTP servers in the cluster so that accurate NDTP redirection messages can be sent. An asynchronous mechanism is preferably used to supply the new NDTP server map. Preferably, the NDTP server transferring the data set will broadcast the new NDTP server map to all other NDTP servers in the cluster over its network connection, such as a TCP connection. In one embodiment, each server may maintain an internal table holding all server locations in memory. Preferably, server map size is selected for a likely maximum number of machines in the NDTP server and is a prime number suitable for use with a well-known function. In one embodiment, a server may appear more than one time on the server map. For example, if the initial NDTP server map size is established at 1023, and only a single NDTP server will be used to form the NDTP server cluster so that the single NDTP server machine appears 1023 times in the NDTP server map.

After splitting and coalescing one method of transferring the updated server map to other servers is to use a data structure containing a list or URL's with ranges of identifiers

US 7,233,978 B2

21

associated with each URL. In another embodiment, the new server map may be carried in a message having the same properties and format as the NDTP_RSP_RSP message (see FIG. 17(a)) but having a message code identifying the contents as a server-to-server transmission.

If an NDTP server is added by splitting an existing portion of the data set without changing the NDTP server map size, only the new and old NDTP servers need immediately know about the modification of the NDTP server map. The NDTP servers uninvolved in the split will forward all requests for the data set now existing on either the new or the old NDTP server. The old NDTP server will then return an NDTP_RSP_RDR with the new NDTP server map, when responding to requests for the data set that now exists on the new NDTP server. A new NDTP server map will eventually be propagated to all NDTP servers using the NDTP server map propagation mechanism. The NDTP redirection mechanism allows this propagation to be asynchronous to the actual NDTP server cluster reconfiguration. In one preferred embodiment, the server map is transmitted from a server involved in a splitting or coalescing operation to all other servers in a cluster.

Removing NDTP Servers from Server Clusters

The most efficient way to remove NDTP server machines from an NDTP server cluster includes ensuring either sending clients redirects or aliasing the NDTP server. Using redirects, the removed NDTP server machine remains a citizen of the NDTP server cluster, does not manage any particular data set, and simply responds with NDTP_RDR_RSP requests with the new NDTP server map. In effect, this simply returns a forwarding address. Using aliasing, the network address of the removed NDTP server is assigned as an alias to a remaining, active member of the NDTP server cluster.

The methods for splitting data on NDTP servers and removing NDTP servers entirely permit flexibility for coalescing data in NDTP servers. If, for example, an NDTP server needs to transfer some of its data due to performance limitations (physical storage capacity limits, transaction rate limitations, etc.), the target NDTP server for receiving the transferred data set may already contain an active data set. Preferably, copying a subset of data from a first server to a second server already actively processing its own data proceeds according to the splitting process as described above. Utilizing the NDTP server operations and system configuration flexibility described above, numerous applications of the preferred data location system are contemplated.

Content Management

Referring to FIG. 23, a geographically dispersed network of clients 152, NDTP servers 154 and application servers 156 is shown. Each of the clients, NDTP servers and application servers may each represent one or multiple systems. The application servers 156 contain substantive content in one or more forms (text, graphics, etc.) to which the clients 152 require access. The NDTP servers may maintain tables of identifiers, where each identifier represents one or more instances of a specific file, and the associated location or locations of that file. The identifier may be a Universal Resource Identifier (URI) and the location may be a URL for the specific application server 156 at which the substantive content may be accessed, or any other addressing convention. A client at a Paris location 158 may request the location of information relating to an identifier from the local NDTP cluster 154 and receive a URL for an application server 156 residing in a Chicago

22

location 160. The information for the URI maintained at the Chicago URL is preferably cached at the client 152 in the Paris location on a per instance basis such that the file is available for the client in Paris for the duration of that client's needs. In one embodiment, the NDTP server cluster in the Paris location preferably maintains a record of the number of requests for that particular URI and, if the URI is the subject of a predetermined number of queries, the frequently requested content at the URL in Chicago is automatically transferred to an application server in the Paris location 158 or copied to an application server in the Paris location. Using the NDTP delete, add, or update operations, the NDTP server clusters in Paris and Chicago preferably update the location information for the URI and asynchronously propagate the new server maps to the remaining NDTP servers.

Object Management

In another embodiment, the same geographical arrangement of data and clients applies to object management, where the object is a programming element or file. Examples of some objects include C++ objects or portions of programming toolkits that various geographically dispersed clients may wish to access in executing a program. By assigning each object a unique identifier and maintaining the location information in NDTP servers, efficient transfer of the object may be achieved and accurate accounting of where the object has been, or currently resides, is obtainable. In particular, embodiments of the present invention are well suited to handle high transaction volume for tracking the objects.

Tracking and Sensing

The NDTP protocol and network configurations discussed above may be applied to any one of a number of physical object (animal, telecommunications devices, troop location, package, family member, part, product and etc.) tracking applications. Referring to FIG. 24, one embodiment of a vehicle tracking application is shown. A shipping company 170, which may be any number of moving company, airborne delivery or ground delivery services, may track company vehicles 172 in a delivery territory 174 in order to maintain delivery fleet status or optimize fleet deployment to, for example, select the best vehicle to pick-up materials at designated pick-up location 175. A dispatcher 176 may access an NDTP server 178 having a location store 180 of information containing identifiers 182 corresponding to individual vehicles 172 and a list of locations 184 associated with the identifier for each vehicle. In one embodiment, the vehicles may be automobiles and the identifier assigned to the vehicles may be the unique vehicle identification number (VIN) assigned by automobile manufacturers to the automobiles they produce.

The location store 180 may be maintained such that only the most recent geographic location (e.g. latitude and longitude) is associated with a vehicle, or the table may be maintained to continuously receive current location information for each vehicle at predetermined intervals so that vehicle travel history, speed, heading and other types of information may be obtained with the location information for a vehicle. In one embodiment, the vehicles 172 may each be equipped with a Global Positioning System (GPS) receiver and a transceiver that is programmed to automatically broadcast position information, or any other location identifying technology. The broadcasts may be picked up through a network, such as a cellular network 186 and transmitted to the NDTP server 178. The broadcasts contain the vehicle identifier and geographic information, such as

US 7,233,978 B2

23

latitude/longitude or any other geographic measure, that is then appended to the appropriate portion of the indexed table **180**. An advantage of the NDTP server application in the vehicle tracking example illustrated in FIG. **24** is that the NDTP server performance may be used to track large numbers of vehicles at high update rates.

Mobility Management, With and Without Presence

In another embodiment, the NDTP protocol and network configurations discussed above may be applied to mobility management applications. Additionally, the mobility management applications may include the ability to indicate whether a device is available for interaction ("presence"), where device availability is tracked in addition to the physical location of a device. For example, as illustrated in FIG. **25**, an NDTP server **190** may maintain a set of identifier/location associations on the physical location and availability of portable devices belonging to a particular user. The portable devices **192** may be, in one embodiment, any type of cellular enabled device, or other wireless mobile device, such as personal digital assistants (PDA), notebook computers with cellular modems, mobility-enabled wrist watches, mobile telephones, and etc. The portable devices **192** preferably include location service enabled software **193**, such as standard plug-in software modified to translate NDTP and the service protocol of the third party tracking mechanism. In the embodiment of FIG. **25**, a third party tracking mechanism, such as a mobile network tower **194**, communicates with an NDTP server **190** to update the whereabouts and accessibility of a person through one or more portable devices. In FIG. **25**, the mobile network tower **194** communicates with the NDTP server via the portable device. In other embodiments, either the third party tracking mechanism or the portable device **192** may be modified, through a standard API, to directly communicate with the NDTP server. In yet another embodiment, a proxy server (not shown) may provide protocol translation functionality to allow the third party tracking mechanism and/or the portable device to communicate directly with the NDTP server **190** without the need to modify the third party tracking system or the portable device.

As illustrated in FIG. **26**, the location store **196** maintained on the NDTP server **190** may be configured to have identifiers **198** such as a person's name, associated with locations **200** which may be a device address **202** paired with a presence (availability) **204** indicator. Whenever a portable device **192** is activated, the mobile network tower **194** will inform the NDTP server **190** of the existence of the portable device and its availability. In the given example, a "1" represents an active device and a "0" represents an inactive device. Each time a portable device associated with a person's identifier is activated (and/or deactivated depending upon implementation), the NDTP server location store **196** will be updated by the mobile network tower **194** with the device address. The device address may be in the form of electronic address or other type of location. Using this system, a party attempting to contact the person or entity represented by the identifier "Alice" in the location store **196** may access the NDTP server to receive the address for the most recently activated device, the address for all active devices, and/or addresses for all devices associated with "Alice".

Generic Naming and Addressing

The NDTP system and protocol described above may provide a specialized database designed to solve general naming and addressing needs. NDTP is designed for use in the larger context of a distributed database system including, but not limited to, addressing and namespace services. As such, it supports an architecture in which information about where data associated with particular application entities can

24

be managed and obtained independently of the data itself. One way to understand this is as a highly dynamic domain name service (DNS) for data. DNS maintains a mapping between names and machines. NDTP and its associated servers maintain a mapping between identifiers and locations. The identifier/location mapping maintained by NDTP servers is much more dynamic (suitable for frequent updates), than the domain name/IP address mapping maintained by DNS. NDTP may be viewed in this respect as fully generalized name service suitable for any kind of service and not restricted to a specialized service.

Mobile Telephone Tracking and Dynamic Telephone Numbers

In other applications of the NDTP protocol and system discussed above, mobile telephone tracking and dynamic telephone number applications may be implemented. With respect to mobile telephone tracking, an NDTP server location store may use the electronic serial number (ESN) of, for example, cellular phones as identifiers, and the cellular tower translation encoding or latitude longitude of the phone as the location. Advantages of tracking mobile phone location through an NDTP server may include speed of information access and the ability to construct an audit trail showing where a cell phone has traveled. In another embodiment, a cellular telephone customer may be mapped to a new service provider by mapping the cell phone ESN to an appropriate location of an instruction set that will convert the cellular telephone customer's telephone number to a new service provider. In this manner, the cellular telephone customer may switch providers without having to obtain a new telephone number.

With respect to dynamic telephone number functionality, a telephone system organized by NDTP would permit telephone service customers to create and delete unique communication roles freely, for any purpose. For example, a customer may create a new communication role identifier to give to a service provider, such as an auto mechanic, to permit contact during the service. After service completion, the customer may delete the communication role identifier, thereby preventing unwanted subsequent contact, such as telemarketing solicitation. In another embodiment, this communication role identifier property can be employed to dynamically control customer-initiated contact. Telephone-based service providers, such as customer relationship management, computer support, medical services, etc., can dynamically control customer initiated contact. For example, a customer with an active case could dial a unique communication role identifier which would be routed directly to the appropriate support specialist until the incident is resolved. The person reached by the customer's unique communication role identifier can be changed by the service provider as the service cycle progresses. After incident resolution, the service provider may delete the communication role identifier, thereby preventing the customer from gaining additional, inappropriate access to support specialists. The dynamic telephone number application of NDTP may be used on various systems, including voice over Internet protocol (VOIP) systems, to allow users to readily map and unmap single use, or limited use, addresses to a desired communication path.

As described above, a method and system for managing data location information in a network has been disclosed having an easily scaleable architecture that permits rapid operation and flexibility for expansion and reconfiguration of service. The system is based on a Network Distributed Tracking Protocol that runs on top of any stream (e.g. TCP) or datagram (e.g. UDP) network transport layer. With NDTP, the system supports a network service that efficiently manages mappings from each individual identifier (definable

US 7,233,978 B2

25

26

using any format, size, encoding, etc.), to one or more locations (which are also definable using any format, size, encoding, etc.). In one embodiment, the identifiers and locations may be formatted as strings. NDTP permits clients to manipulate identifier/location associations, and request the current set of locations for an identifier from protocol servers. The servers in the network may be reconfigured to change the data set currently stored in one or more servers in response to performance goals or limitations.

Regardless of the expected system context of NDTP in a distributed database, those skilled in the art will appreciate that NDTP can be used for any application in which one-to-one or one-to-many associations among identifier and location associations are to be maintained and accessed on a network.

It is to be understood that a wide range of changes and modifications to the embodiments described above will be apparent to those skilled in the art, and are contemplated. It is therefore intended that the foregoing detailed description be regarded as illustrative, rather than limiting, and that it be understood that it is the following claims, including all equivalents, that are intended to define the spirit and scope of the invention.

We claim:

1. A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising:

a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity

a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and

programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity.

2. The system of claim 1, wherein the at least one location comprises a plurality of geographic locations, each of the geographic locations representing a position of the entity at a different time.

3. The system of claim 1, wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query.

4. The system of claim 3, wherein the information for finding the location server known to have location information relevant to the location query comprises a list of location servers and a corresponding list of each of the entities having location information on the location servers.

5. The system of claim 1, wherein each of the location servers stores at least a portion of the location information on a persistent storage device.

6. The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table.

7. The system of claim 6, wherein the location query identifying the desired entity comprises a unique identifier for the desired entity, and wherein the programming logic stored on the location server further comprises programming logic for applying an index function to the unique identifier to retrieve at least a portion of the location information associated with the unique identifier in the indexed location store.

8. The system of claim 7, wherein the location query is received at a location server in a first node and wherein the redirect message comprises a list of at least one other location server in a node other than the first node that may have location information relevant to the location query.

9. The system of claim 1, wherein the plurality of location servers are arranged in a network topology having a plurality of nodes organized in a logical hierarchy, wherein each node comprises at least one location server and wherein each node is connected to at least one other node in the logical hierarchy.

10. A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising:

a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and

programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier.

11. The system of claim 10, wherein the location information comprises geographic location information.

12. The system of claim 10, wherein the location information comprises network address information.

13. The system of claim 12, wherein the network address information comprises a network address of a data repository containing data pertaining to the desired identifier.

14. A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising:

receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location;

sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information

JA0084

US 7,233,978 B2

27

identifying at least one application server containing information relevant to the entity identified in the query; and

sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query.

**15.** The method of claim **14**, further comprising applying information in the location query from the client to an indexing function to determine if the queried location server contains location information relevant to the entity identified in the query.

**16.** The method of claim **15**, wherein each of the plurality of location servers comprises an indexed table of identifiers and associated locations, and wherein applying information in the location query comprises applying an identifier in the location query to a hash function.

**17.** A method of scaling at least one of capacity and transaction rate capability in a location server in a system having a plurality of location servers for storing and retrieving location information, wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information, the method comprising:

providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information related to the identifier;

storing location information formatted according to the transfer protocol at a first location server;

receiving an identifier and a location relevant to the identifier at the first location server;

storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and

transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first data location server reaches a predetermined performance limit.

**18.** The method of claim **17**, wherein receiving an identifier and a location comprises receiving the identifier and the location at the first location server from an application server, wherein the location comprises an address for the application server.

**19.** The method of claim **17**, wherein receiving an identifier and a location comprises receiving the identifier and the location at the first location server from a physical object, wherein the identifier identifies the physical object and wherein the location comprises a geographic location for the physical object.

**20.** The method of claim **19**, wherein the physical object comprises a vehicle.

**21.** The method of claim **19**, wherein the physical object comprises a portable telecommunications device.

**22.** The method of claim **17**, wherein transferring a portion of the identifier and location associations comprises:

identifying a portion of identifier and location associations on the first location server to be transferred to the second location server and identifying a data set state of the identified portion at an initial time;

copying a data set for the identified portion corresponding to the identified data set state from the first location server to the second location server and maintaining a

28

second data set containing changes to the identified portion since the initial time;

identifying a data set state for the second data set;

ceasing operation of the first location server with respect to the identified portion and copying the second data set to the second location server, wherein the second data set corresponds to the identified data set state for the second data set; and

initiating operation of the second location server for the identified portion of identifiers and location associations.

**23.** The method of claim **17**, wherein the performance criterion comprises an amount of available persistent storage space in the first location server.

**24.** The method of claim **17**, wherein the performance criterion comprises a transaction rate limit.

**25.** The method of claim **17**, wherein the transaction rate limit comprises a processor speed limit.

**26.** The method of claim **17**, wherein the transaction rate limit comprises a network connection bandwidth limit.

**27.** The method of claim **17**, further comprising transmitting a location server map from the first location server, the location server map comprising information identifying the second location server and a list of identifiers associated with the second location server.

**28.** The method of claim **27**, wherein the first and second location servers are part of a location server cluster comprising a plurality of location servers, and wherein transmitting the location server map comprises transmitting the location server map to each of the plurality of data location servers asynchronously.

**29.** The method of claim **27**, wherein transmitting a location server map comprises transmitting the location server map to a client in response to query received at the first location server from the client regarding an identifier that is not resident on the first location server.

**30.** The method of claim **17**, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit.

**31.** A system for managing location information and providing location information to location queries, the system comprising:

a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity, the location server containing location information corresponding to at least one entity and formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and

programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity.

\* \* \* \* \*

15666

In re Application of: J. Overton et al.
For: Network Distributed Tracking Wire Transfer Protocol
Attorney Docket No: 11958/62

Express Mail* mailing label number: <u>EV 655 031 105 US</u>
Date of Deposit: <u>February 13, 2006</u>



**UTILITY PATENT APPLICATION TRANSMITTAL**

Commissioner for Patents
P. O. Box 1450
Alexandria, VA 22313-1450

Transmitted herewith is:

☐ A new application under 37 C.F.R. §1.53(b).

☒ A ☒ Continuation, ☐ Divisional, or ☐ Continuation-in-part (CIP) under 37 C.F.R. §1.53(b) of prior application no. <u>09 /661,222</u>.

    Prior application information: Examiner: _____ Art Unit: _____

    ☐ Maintenance of copendency of prior application: A request for extension of time and the appropriate fee have been filed in the pending <u>prior</u> application (or are being filed in the prior application concurrently herewith) to extend the period for response until _____.

For Continuation or Divisional Applications only: The entire disclosure of the prior application, from which an oath or declaration is supplied as indicated below, is considered a part of the disclosure of the accompanying continuation or divisional application and is hereby incorporated by reference.

The following application elements and other papers are attached:

1. Application including: ☐ Application Data Sheet. See 37 CFR § 1.76.
                ☒ Title page
                ☒ Specification, including claims and Abstract (<u>38</u> pages)
                ☒ Drawings (<u>12</u> sheet(s))
                ☒ Appendices: two (2) sheets (143 frames) of microfiche
                ☒ Declaration or ☐ Combined Declaration and Power of Attorney (<u>two</u> pages):
                    ☐ newly-executed (original or copy)
                    ☒ copy from a prior application (37 CFR §1.63(d))
                    ☐ This application is filed by fewer than all the inventors named in the prior application, 37 CFR §1.53(d)(4). Please DELETE the following inventors(s) named in prior nonprovisional application no: _____:

2. ☐ Small Entity Status:
    ☐ Applicant hereby asserts entitlement to claim small entity status under 37 CFR §§ 1.9 and 1.27.
    ☐ A small entity statement or assertion of entitlement to claim small entity status was filed in prior application no. _____ / _____ and such status is still proper and desired.
    ☐ Is no longer desired.

3. Fee calculation (after entry of any preliminary amendment(s) in Item #7 below):

| Claims as Filed | Col. 1 | Col. 2 | Small Entity | | Not a Small Entity | |
|---|---|---|---|---|---|---|
| For | No. Filed | No. Extra | Rate | Fee | or | Rate | Fee |
| Basic Fee | | | | $ 150 | or | | $ 300 |
| Total Claims | -20 | | x$25= | $ | or | x$50= | $ |
| Independent Claims | -3 | | x$100= | $ | or | x$200= | $ |
| Multiple Dependent Claims Present | | | +$180= | $ | or | +$360= | $ |
| Utility Application Size Fee (for each additional 50 sheets that exceeds 100 sheets, including specification and drawings) | | | x$125= | $ | or | x$250= | $ |
| Search Fee | | | +$250= | $ | or | +$500= | $ |
| Examination Fee | | | +$100= | $ | or | +$200= | $ |
| *If the difference in col. 1 is less than zero, enter "0" in col. 2. | | | Total | $ | or | Total | $ |

*Page 1 of 2*

UTILITY PATENT APPLICATION TRANSMITTAL, cont          Attorney Docket No. <u>11958/62</u>

4. Fee payment :

    ☐ A check in the amount of $_____ to cover the filing fee is enclosed.

    ☐ Please charge my Deposit Account No. 23-1925 in the amount of $_____. A duplicate copy of this sheet is enclosed.

    ☐ Payment by credit card in the amount of $_____ (Form PTO-2038 is attached).

    ☐ The Director is hereby authorized to charge payment of the following fees associated with this communication or credit any overpayment to Deposit Account No. 23-1925. A copy of this Transmittal is enclosed.

       ☐ Any additional filing fees required under 37 CFR § 1.16.

       ☐ Any patent application processing fees under 37 CFR §1.17.

    ☐ The Director is hereby authorized to charge payment of the following fees during the pendency of this application or credit any overpayment to Deposit Account No. 23-1925.

       ☐ Any filing fees under 37 CFR § 1.16 for presentation of extra claims.

       ☐ Any patent application processing fees under 37 CFR § 1.17.

       ☐ The issue fee set in 37 CFR § 1.18 at or before mailing of the Notice of Allowance, pursuant to 37 CFR § 1.311(b).

5. ☐ Certified copy of priority document(s)

    ☐ is attached or ☐ has been filed in prior application no. _____ /_____.

6. ☐ English Translation Document

    ☐ is attached or ☐ has been filed in prior application no. _____ /_____.

7. ☒ Preliminary Amendment:

    ☒ A Preliminary Amendment is attached (*note:* related application data required under 37 CFR §1.78, if any, appears in the Amendments to the Specification section of the Preliminary Amendment, including incorporations by reference).

    ☐ A "Petition to Suspend Prosecution For the Time Necessary to File an Amendment (New Application Filed Concurrently)" is attached.

8. ☐ Information Disclosure Statement, including Form PTO-1449 (_____ sheets) and copies of references cited, if required.

9. ☒ An Assignment to <u>Econnectix, LLC</u>_____:

    ☐ with accompanying Assignment Recordation Cover Sheet, is attached.

    ☒ was previously recorded on <u>July 11, 2003</u> at Reel <u>014254</u>, Frame <u>0043</u>.

10. ☐ Power of Attorney (_____ pages; ☐ by inventor ☐ by Assignee identified in item #9 above)

11. ☐ Nonpublication Request under 35 USC §122(b)(2)(B)(i)

12. ☒ Other: <u>Petition to Suspend the Rules Under 37 C.F.R. §1.183.</u>

13. ☒ Return Postcard

14. The power of attorney in the prior application is to: <u>Joseph F. Hetz</u> (Reg. No. <u>41.070</u>).

    ☒ The power appears in the original papers in the prior application.

    ☐ The power does not appear in the original papers in the prior application, but was filed on: _____

    ☐ A new power has been executed and is attached.

15. CORRESPONDENCE ADDRESS: please recognize the correspondence address for this application as the address associated with the following Customer Number:

## Customer No. 00757 - Brinks Hofer Gilson Lione

16. PLEASE DIRECT all telephonic communications to:

Kent E. Genin (tel: (312) 321-4200).

Respectfully submitted,

_February 13, 2006_
Date

Kent E. Genin (Reg No. 37,834)

*Page 2 of 2*

"Express Mail" mailing label number <u>EV 655 031 105 US</u>

Date of Deposit: <u>February 13, 2006</u>

<u>Our Case No. 11958/62</u>

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
J. Overton et al.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
Serial No. To be Assigned　　　　　　)
　　　　　　　　　　　　　　　　　　)
Filing Date: Herewith　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
For　NETWORK DISTRIBUTED　　　　　　)
　　　TRACKING WIRE TRANSFER　　　　)
　　　PROTOCOL　　　　　　　　　　　)

### PETITION FOR SUSPENSION OF RULES UNDER 37 C.F.R. § 1.183

Mail Stop Patent Application
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

　　　　For the above-mentioned continuation application, we request a suspension of
the requirement under 37 C.F.R. §§ 1.52 and 1.96 that a Computer Program Listing
Appendix must be submitted in the form of text files on compact discs.

　　　　Although the parent application and its Microfiche Appendix are incorporated by
reference in the above-mentioned application, it is unclear whether incorporation is
insufficient to include the contents of the Microfiche Appendix. Accordingly, Applicants
wish to submit a full copy of the contents of the Microfiche Appendix in the present
application.

　　　　An executable, electronic version of the original program listing is no longer
available. Because of this situation, we ask leave to submit in the above-referenced
application a computer listing in the form of a copy of the original microfiche.

Page 1 of 3

Atty. Ref. 11958/62

1. **Our source code was previously submitted on microfiche, and the original electronic executable version of the code does not exist.**

The above-referenced application is a continuation application. Its parent application (U.S. Application No. 09/661,222) was filed on September 13, 2000 with a Microfiche Appendix. That appendix included 2 sheets microfiche, with a total of 143 frames. At that time, the Microfiche Appendix was an appropriate method of submitting such a large listing of computer code, under the former Rule 1.96. 37 C.F.R. § 1.96 (1988) (*reproduced in* MPEP § 608.05(a)). The undersigned has inquired of the Applicant regarding the availability of an electronic executable version of the 2000 code, and has learned that it is no longer available other than as an image file (ADOBE .pdf format).

2. **The change in Rule 1.96 from microfiche submission to compact disc introduces an unintended obstacle for continuation applications.**

Rule 1.96's ASCII-text requirement did not exist when we filed the parent application five years ago. The former Rule 1.96 specified that large computer-code listings should be submitted as a Microfiche Appendix. 37 C.F.R. §1.96 (1998). Rule 1.96 was later revised so that such listings must now be submitted on compact disc. 65 Fed. Reg. 54,604, 54,629-30 (Sept. 8, 2000) (effective date corrected, 65 Fed. Reg. 54,629 (Dec. 18, 2000)). However, the change was not intended to hinder applications that were already under examination. The changes were directed to future applications, and did not affect pending applications. Indeed, the U.S. Patent and Trademark Office continued to allow microfiche submissions under the former Rule 1.96 until February 28, 2001. MPEP § 608.05(a).

As a continuation application, the above-referenced application has been unintentionally caught by the change in the Rules. We can find no specific mention of how the change in Rule 1.96 was intended to affect continuation practice. But overall, the change appears to have been made with the goal of streamlining the handling of future patent applications. It does not appear the change in Rule 1.96 was meant to hamper the examination of applications that were already before the Office.

Page 2 of 3

The change to Rule 1.96 poses a difficulty now, at the time when Applicants wish to file a continuation application, because in some sense Applicants are retroactively required to have preserved an ASCII version of the source code from five years prior. The microfiche versions that were made and placed in storage in 2000—these now fall short of the revised requirements. It does not seem that the revisions to Rule 1.96 were intended to thus hamper the filing of continuation applications.

3. **A microfiche submission in this case would be an adequate and full presentation of the source code to the Office and to the public.**

The existing microfiche versions were previously considered an adequate representation of the source code being submitted. They were submitted under the former Rule 1.96 in the parent application that was filed in 2000. The microfiche of the computer code remains a good resource for Examiners and members of the public who wish to view the source code listing.

For the above reasons, Applicants petition for a suspension of Rule 1.96 to allow Applicants to submit the computer listing, which was previously provided in parent application no. 09/661,222, as an appendix to the present continuation application.

The Director is hereby authorized to charge the petition fee due under 37 C.F.R. §1.17(f) to Deposit Account No. 23-1925. A copy of this paper is enclosed.

Respectfully submitted,

Kent E. Genin
Registration No. 37,834
Attorney for Applicants

BRINKS HOFER GILSON & LIONE
P.O. Box 10395
Chicago, Illinois 60610
(312) 321-4200

Page 3 of 3

"Express Mail" mailing label number EV 655 031 105 US

Date of Deposit: February 13, 2006

Our Case No. 11958/62

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of: )
)
J. Overton et al. )
)
Serial No. To be Assigned )
)
Filing Date: Herewith )
)
For    NETWORK DISTRIBUTED )
        TRACKING WIRE TRANSFER )
        PROTOCOL )

## PRELIMINARY AMENDMENT

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

        Please enter the following amendment and consider the following
remarks:

- 38 -

## ABSTRACT OF THE DISCLOSURE

A network distributed tracking wire transfer protocol for storing and retrieving data across a distributed data collection. The protocol includes a location string for specifying the network location of data associated with an
5    entity in the distributed data collection, and an identification string for specifying the identity of an entity in the distributed data collection. According to the protocol, the length of the location string and the length of the identification string are variable, and an association between an identification string and a location string can be spontaneously and dynamically changed.
10    The network distributed tracking wire transfer protocol is application independent, organizationally independent, and geographically independent. A method for using the protocol in a distributed data collection environment and a system for implementing the protocol are also provided.

JA0092

## ARTIFACT SHEET

Enter artifact number below. Artifact number is application number +
artifact type code (see list below) + sequential letter (A, B, C …). The first
artifact folder for an artifact type receives the letter A, the second B, etc..
Examples: 59123456PA, 59123456PB, 59123456ZA, 59123456ZB

*11 354224 - FA*

Indicate quantity of a single type of artifact received but not scanned. Create
individual artifact folder/box and artifact number for each Artifact Type.

☐ CD(s) containing:
　　computer program listing
　　Doc Code: Computer　　　　　　☐ Artifact Type Code: P
　　pages of specification
　　and/or sequence listing
　　and/or table
　　Doc Code: Artifact　　　　　　☐ Artifact Type Code: S
　　content unspecified or combined
　　Doc Code: Artifact　　　　　　☐ Artifact Type Code: U

☐ Stapled Set(s) Color Documents or B/W Photographs
　　Doc Code: Artifact　　Artifact Type Code: C

☒ Microfilm(s)
　　Doc Code: Artifact　　Artifact Type Code: F

☐ Video tape(s)
　　Doc Code: Artifact　　Artifact Type Code: V

☐ Model(s)
　　Doc Code: Artifact　　Artifact Type Code: M

☐ Bound Document(s)
　　Doc Code: Artifact　　Artifact Type Code: B

☐ Confidential Information Disclosure Statement or Other Documents
　　marked Proprietary, Trade Secrets, Subject to Protective Order,
　　Material Submitted under MPEP 724.02, etc.
　　Doc Code: Artifact　　Artifact Type Code X

☐ Other, description: _____
　　Doc Code: Artifact　　Artifact Type Code: Z

March 8, 2004

JA0093

- 35 -

WE CLAIM:

1.    A network distributed tracking wire transfer protocol comprising:

a variable length identification string, the identification string for specifying the identity of an entity in a distributed data collection; and

a variable length location string, the location string for specifying the network location of data associated with an entity in a distributed data collection;

wherein a relationship between the identification string and the location string can be spontaneously and dynamically created and modified.

2.    The network distributed tracking wire transfer protocol defined in claim 1, wherein the protocol is application independent.

3.    The network distributed tracking wire transfer protocol defined in claim 1, wherein the protocol is organizationally independent.

4.    The network distributed tracking wire transfer protocol defined in claim 1, wherein the protocol is geographically independent.

5.    A system having a network distributed tracking wire transfer protocol for storing and identifying data with a distributed data collection, comprising:

a data repository, the data repository for storing data in a distributed data collection;

a client entity, the client entity for manipulating data in the distributed data collection; and

a first server entity, the first server entity operative to locate data in the distributed data collection;

wherein the client entity transmits an identifier string to the first server entity along with a client request and the first server entity provides at least one location string to the client entity in response thereto.

JA0094

- 36 -

6.     The system defined in claim 5, further comprising a second
       server entity coupled to the first server entity.

7.     The system defined in claim 5, wherein the first server entity
       maps the identifier string received from the client entity to the at
       least one location string.

8.     The system defined in claim 7, wherein the mapping is
       performed using a hash operation.

9.     The system defined in claim 6, wherein the first server entity
       transmits the client request to the second server entity if the first
       server entity cannot provide the at least one location string to
       the client entity.

10.    The system defined in claim 9, wherein the second server entity
       maps the identifier string received from the first server entity to
       the at least one location string.

11.    The system defined in claim 10, wherein the second server
       entity transmits the at least one location string to the first server
       entity for transmission to the client entity.

12.    A method for storing and retrieving tracking information over a
       network using a wire transfer protocol, comprising the steps of:
              providing a location string and an identification string, the
       location string for specifying the location of data associated with an entity in a
       distributed data collection and the identification string for specifying the
       identification of an entity in the distributed data collection;
              storing information at a data repository entity by associating an
       identification string with each particular stored unit of information and by
       mapping the identification string to at least one location string associated with
       the data repository entity, the identification string and the at least one location

- 37 -

string for a particular unit of information being stored at a first server entity coupled to the data repository entity;

transmitting a request from a client entity to the first server entity to retrieve at least one location string associated with a particular stored unit of information, the request including the identification string associated with the particular stored unit of information; and

receiving the request at the first server entity and responding to the client entity by providing at least one location string associated with the particular stored unit of information to the client entity.

13. The method for storing and retrieving tracking information defined in claim 12, further comprising the step of transmitting the request to a second server entity prior to responding to the client entity, the second server entity coupled to the first server entity and having stored therewith the mapping of the identification string and the at least one location string for the particular unit of information.

14. The method for storing and retrieving tracking information defined in claim 13, wherein the second server entity responds to the client entity by providing the location string associated with the particular stored unit of information to the second client entity.

15. The method for storing and retrieving tracking information defined in claim 12, wherein the lengths of the identification string and the at least one location string are variable.

16. The method for storing and retrieving tracking information defined in claim 12, further comprising the step of spontaneously and dynamically manipulating the mapping of an identification string to a location string.

JA0096

NETWORK DISTRIBUTED TRACKING
WIRE TRANSFER PROTOCOL
J. OVERTON et al.
11958/62

1 /12



**Use Of Request Identifiers**

*Fig. 1*

JA0097



Fig. 2

NDTP String Format

Fig. 3

NDTP_GET Format

NETWORK DISTRIBUTED TRACKING
WIRE TRANSFER PROTOCOL
J. OVERTON et al.
11958/62

2/12

JA0098



NDTP_GET_RSP Format

_Fig. 4_

NETWORK DISTRIBUTED TRACKING
WIRE TRANSFER PROTOCOL
J. OVERTON et al.
11958/62

3/12

JA0099



NDTP_PUT Format

*Fig. 5*

NETWORK DISTRIBUTED TRACKING
WIRE TRANSFER PROTOCOL
J. OVERTON et al.
11958/62

4/12



NDTP_PUT_RSP Format

*Fig. 6*

NETWORK DISTRIBUTED TRACKING
WIRE TRANSFER PROTOCOL
J. OVERTON et al.
11958/62

5/12

JA0101



NDTP_DEL Format

*Fig. 7*

NETWORK DISTRIBUTED TRACKING
WIRE TRANSFER PROTOCOL
J. OVERTON et al.
11958/62

6 / 12

JA0102



NDTP_DEL_RSP Format

*Fig. 8*

NETWORK DISTRIBUTED TRACKING
WIRE TRANSFER PROTOCOL
J. OVERTON et al.
11958/62

7/12



NDTP_RDR_RSP With Server Table

*Fig. 9(a)*

NETWORK DISTRIBUTED TRACKING
WIRE TRANSFER PROTOCOL
J. OVERTON et al
11958/62

8 / 12



NDTP_RDR_RSP With Redirection Function

*Fig. 9(b)*

NETWORK DISTRIBUTED TRACKING
WIRE TRANSFER PROTOCOL
J. OVERTON et al.
11958/62

9/12



NETWORK DISTRIBUTED TRACKING
DISTRIBUTED RECORD RETRIEVAL

Fig. 10

NETWORK DISTRIBUTED TRACKING
WIRE TRANSFER PROTOCOL
J. OVERTON et al.
11958/62

10/12

JA0106

NETWORK DISTRIBUTED TRACKING
WIRE TRANSFER PROTOCOL
J. OVERTON et al.
11958/62



*NDTP Server Constellation Context*

*Fig. 11*



*NDTP Client-Centric Constellation*

*Fig. 12*

NETWORK DISTRIBUTED TRACKING
WIRE TRANSFER PROTOCOL
J. OVERTON et al.
11958/62

12/12



**NDTP Server-Centric Constellation**

*Fig.* 13

JA0108

Case No. <u>10406/43</u>

## DECLARATION FOR PATENT APPLICATION

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled <u>NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL</u>, the specification of which:

☐      is attached hereto.

☒      was filed on <u>September 13, 2000</u> as Application Serial No. <u>09/661,222</u>.

☐      and was amended on _____ (if applicable).

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the patentability as defined in·Title 37, Code of Federal Regulations, § 1.56(a).

I hereby claim foreign priority benefits under 35 U.S.C. § 119(a)-(d) or § 365(b) of any foreign application(s) for patent or inventor's certificate or § 365(a) of any PCT International application which designated at least one country other than the United States, listed below and have also identified below, by checking the box, any foreign application for patent or inventor's certificate, or PCT International application having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s)

Priority Claimed

| | | | Yes | No |
|---|---|---|---|---|
| | | | ☐ | ☐ |
| (Number) | (Country) | (Day/Month/Year Filed) | | |

I hereby claim the benefit under 35 U.S.C. § 119(e) of any United States provisional application(s) listed below:

| 60/153,709 | September 13, 1999 |
|---|---|
| (Application Serial No.) | (Filing Date) |

I hereby claim the benefit under 35 U.S.C. § 120 of any United States application(s), or § 365(c) of any PCT International application designating the United States, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT International application in the manner provided by the first paragraph of 35 U.S.C. § 112, I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR § 1.56 which became available between the filing date of the prior application and the national or PCT International filing date of this application:

| 09/111,896 | July 8, 1998 | Pending |
|---|---|---|
| (Application Serial No.) | (Filing Date) | (Status-patented, pending, abandoned) |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| Inventor's Signature | _[signature]_ | Date: | 22 Jan 2001 |
|---|---|---|---|
| Full name of sole or first inventor | JOHN K. OVERTON | | |
| Residence | CHICAGO, ILLINOIS | | |
| Citizenship | UNITED STATES OF AMERICA | | |
| Post Office Address | 5825 South Blackstone, Chicago, Illinois 60637 | | |

BEST AVAILABLE COPY

Case No. <u>10406/43</u>

Inventor's Signature                                        Date: 25-JAN-2001
Full name of second joint inventor, if any    STEPHEN W. BAILEY
Residence                                      CHICAGO, ILLINOIS
Citizenship                                    UNITED STATES OF AMEICA
Post Office Address                            5617 South Dorchester Avenue, 2N, Chicago, Illinois 60637

BRINKS HOFER GILSON & LIONE
P.O. Box 10395
Chicago, IL 60610
(312) 321-4200

rev. Dec.-99
C:\Joe\OverX, Inc\10406-43 Declaration(2).doc

BEST AVAILABLE COPY

Attorney Docket No. <u>11958/62</u>

## REMARKS

Applicants have amended the application to add a reference to the parent applications in the fist line as required by 37 C.F.R. §1.78.

Respectfully submitted,

Kent E. Genin
Registration No. 37,834
Attorney for Applicant

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, ILLINOIS 60610
(312) 321-4200

Page 3 of 3

"Express Mail" mailing label number <u>EV 655 031 105 US</u>

Date of Deposit:  <u>February 13, 2006</u>

<u>Our Case No.11958/62</u>

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
APPLICATION FOR UNITED STATES LETTERS PATENT

INVENTOR:    JOHN K. OVERTON
        STEPHEN W. BAILEY

TITLE:     NETWORK DISTRIBUTED
        TRACKING WIRE TRANSFER
        PROTOCOL

ATTORNEY:    KENT E. GENIN
        BRINKS HOFER GILSON & LIONE
        P.O. BOX 10395
        CHICAGO, ILLINOIS 60610
        (312) 321-4200

- 1 -

# NETWORK DISTRIBUTED TRACKING
# WIRE TRANSFER PROTOCOL

## RELATED APPLICATIONS

This application claims priority to provisional patent application serial
no. 60/153,709, entitled SIMPLE DATA TRANSPORT PROTOCOL METHOD
AND APPARATUS, filed on September 13, 1999, and to regular patent
application no. 09/111,896, entitled SYSTEM AND METHOD FOR
ESTABLISHING AND RETREIVING DATA BASED ON GLOBAL INDICES,
filed on July 8, 1998.

## MICROFICHE/COPYRIGHT REFERENCE

A Microfiche Appendix (143 frames, 2 sheets) is included in this
application that contains material which is subject to copyright protection.  The
copyright owner has no objection to the facsimile reproduction by anyone of
the Microfiche Appendix, as it appears in the Patent and Trademark Office
patent files or records, but otherwise reserves all copyright rights whatsoever.

## FIELD OF THE INVENTION

This invention relates generally to the storage and retrieval of
information, and in particular, to a protocol for dynamic and spontaneous
global search and retrieval of information across a distributed network
regardless of the data format.

## BACKGROUND OF THE INVENTION

Data can reside in many different places.  In existing retrieval systems
and methods, a client seeking information sends a request to a server.
Typically, only data that are statically associated with that server are returned.
Disadvantageously, the search is also usually restricted to previously known
systems.  The search is thus conducted only where the server knows in
advance to look.

Another disadvantage of known retrieval systems is the difficulty in
accessing data in different forms.  Known retrieval systems are typically

-1-

JA0113

- 2 -

designed to search for data in limited forms.  One example is where a client requests files based on a subject, like a person's name.  In the search results, therefore, only text files of peoples' names may be retrieved.  Another problem in current retrieval systems is that the client may receive text and image files in the search results, but could not seamlessly access the image files.  Yet another problem in current retrieval systems is that video and sound files related to the request may not even be found in the search results.  For example, a doctor might be able to retrieve medical records on a specific patient, but cannot view an MRI or X-Ray results associated with that record.

A distributed data collection is a system where data is stored and retrieved among multiple machines connected by a network.  Typically, each machine in which some portion of the data in a distributed data collection may reside is called a "data repository machine", or simply a "data repository".  One commonly asked question in a data repository environment is:  Where is data associated with a particular entity in a distributed data collection?  The data location is a key question when a distributed data collection has highly dynamic data distribution properties.

In networked environments where there are a large number of data repositories and any particular entity does not store data in all the repositories, a mechanism is needed that would permit queries to be directed only at data repositories with relevant information.  It would also be beneficial to permit membership in the set of data repositories itself to be highly dynamic.  Such a system would support on-the-fly addition and removal of data repositories from a distributed data collection seamlessly and without the need to reprogram the client and server participants.

BRIEF SUMMARY OF THE INVENTION

In view of the above, the invention provides a network distributed tracking wire transfer protocol, and a system and method for using the protocol in a networked environment.  The network distributed tracking wire transfer protocol includes two basic components:  identification strings for specifying the identity of an entity in the distributed data collection, and

-2-

- 3 -

location strings for specifying network locations of data associated with an entity. The protocol accommodates variable length identifier and location strings. Relationships between identification strings and location strings can be dynamically and spontaneously manipulated thus allowing the corresponding data relationships also to change dynamically, spontaneously, and efficiently. In addition, the network distributed tracking wire transfer protocol is application independent, organizationally independent, and geographically independent.

In another aspect of the invention, a system of components using the network distributed tracking protocol are provided for storing and identifying data with a distributed data collection. The components include (1) a data repository for storing data in the distributed data collection, (2) a client entity for manipulating data in the distributed data collection, and (3) a first server entity operative to locate data in the distributed data collection, which may be coupled to a client entity and/or data repository. In a network with these components, a client entity transmits an identifier string to the first server entity along with the client request, and the first server entity provides a set of location strings to the client entity in response thereto. The first server entity maps the identifier string received from the client entity to a set of location strings. The network may also include any number of additional server entities coupled to the first server entity.

According to yet another aspect of the invention, a method is provided for storing and retrieving tracking information over a network using a wire transfer protocol. A location string specifies the location of data associated with an entity in the distributed data collection and the identification string specifies the identification of an entity in a distributed data collection. A first data repository entity stores data by associating an identification string with each particular stored unit of data, and by mapping the identification string to a location string associated with the first data repository. The identification string and location string for the particular unit of data are at a first server entity coupled to the first data repository entity. A request is transmitted from a client entity to the first server entity to retrieve at least one location string

-3-

JA0115

- 4 -

associated with the stored unit of data in the distributed data collection. The request includes the identification string associated with the particular stored unit of data. The request is received at the first server entity, which responds to the client entity by providing at least one location string associated with the

5      particular stored unit of data to the client entity.

The request may also be transmitted to a second server entity prior to responding to the client entity, where the second server entity is coupled to the first server entity and includes the mapping of the identification string and location strings for the particular units of data. In such case, the second

10     server entity responds to the client entity by providing the at least one location string associated with the particular stored unit of data to the client entity.

The network distributed tracking protocol of the invention is a networking protocol that efficiently manages mappings from one or more identifier strings to zero or more location strings. The protocol permits client

15     entities to add and remove identifier/location associations, and request the current set of locations for an identifier or identifiers from server entities that comply with the protocol.

The protocol is designed for use in the larger context of a distributed data collection. As such, it supports an architecture in which information about where data associated with particular application entities can be

20     managed and obtained independently of the data itself. The protocol and its associated servers thus maintain a mapping between entity identifiers and data locations. The identifier/location mapping maintained by the servers is very dynamic. Regardless of the expected system context in a distributed

25     data collection, the protocol can be used for any application in which one-to-one or one-to-many associations among strings are to be maintained and accessed on a network.

In any context, the protocol supports identifier and location strings of up to $2^{32}-4$ bytes in length, but in most applications it is expected that the strings

30     are typically short. String length is not fixed by the protocol, except by the upperbound. Accordingly, string formats are controlled at a local level and not dictated by the protocol.

-4-

- 5 -

These and other features and advantages of the invention will become apparent upon a review of the following detailed description of the presently preferred embodiments of the invention, when viewed in conjunction with the appended drawings.

5      BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is an example of multiple outstanding protocol requests.

FIG. 2 is a layout of one presently preferred string format.

FIG. 3 is a layout of one presently preferred NDTP_GET message.

FIG. 4 is a layout of one presently preferred NDTP_GET_RSP

10      message.

FIG. 5 is a layout of one presently preferred NDTP_PUT message.

FIG. 6 is a layout of one presently preferred NDTP_PUT_RSP

message.

FIG. 7 is a layout of one presently preferred NDTP_DEL message.

15      FIG. 8 is a layout of one presently preferred NDTP_DEL_RSP

message.

FIG. 9 is a layout of one presently preferred NDTP_RDR_RSP

message, where FIG. 9(a) shows a server table layout, and FIG. 9(b) shows a

redirection function layout.

20      FIG. 10 is a system block diagram showing a multi-server

implementation environment of the network distributed tracking wire transfer

protocol of the invention.

FIG. 11 is a system diagram showing an NDTP server constellation

configuration.

25      FIG. 12 is a system diagram showing a client-centric constellation

approach.

FIG. 13 is a system diagram showing a server-centric constellation

approach.

JA0117

- 6 -

## DETAILED DESCRIPTION OF THE PRESENTLY PREFERRED EMBODIMENTS OF THE INVENTION

The following terms are used to describe the operation of the presently
preferred network distributed tracking protocol (NDTP). An "identifier string"
5      or an "identifier" is a unique string with which zero or more location strings are
associated in an NDTP server. A "data location" or a "location" is a string that
is a member of a set of strings associated with an identifier string in an NDTP
server. An "NDTP client" or a "client" is a network-attached component that
initiates update or lookup of identifier/location mappings from an NDTP server
10     with NDTP request messages. An "NDTP server" or a "server" is a network-
attached component that maintains a set of identifier/location mappings that
are modified or returned in response to NDTP request messages from NDTP
clients. The term "Network Byte Order" is the ordering of bytes that compose
an integer of larger than a single byte as defined in the Internet Protocol (IP)
15     suite. Preferably, Network Byte Order specifies a big-endian, or most
significant byte first, representation of multibyte integers. In this specification
a byte is preferably composed of eight bits.

**Network Distributed Tracking Protocol (NDTP)**

The Network Distributed Tracking Protocol (NDTP) efficiently tracks the
20     location of data associated with an individual entity in a distributed data
collection. NDTP is a transactional protocol, which means that each operation
within NDTP consists of a request message from an NDTP client to an NDTP
server, followed by an appropriate response message from the NDTP server
to the NDTP client. NDTP defines an entity key (or "identifier") as a unique
25     string used to refer to an entity about which a distributed query is performed.

The NDTP server treats the entity key as an unstructured stream of
octets, which is assumed to be unique to a particular entity. The precise
structure of the NDTP entity key and the mechanism for ensuring its
uniqueness are a function of the application in which the NDTP server is
30     used. In a customer oriented application, the NDTP entity key might be a
unique customer identifier, for example, a Social Security Number, in either

-6-

- 7 -

printable or binary integer form, as is appropriate to the application. NDTP also defines a data location specifier as a string used to specify a data respository in which data associated with a particular entity may be found.

5          As with NDTP entity keys, the NDTP server treats NDTP data location specifiers as unstructured streams of octets. The structure of an NDTP data location specifier is a function of the application in which the NDTP server is used. For example, an NDTP data location specifier might be an Internet machine name, and a TCP/IP port number for a relational database server, or an HTTP Universal Resource Locator(URL), or some concatenation of
10        multiple components.

          The NDTP server efficiently maintains and dispenses one to zero or one to many relationships between entity keys and data location specifiers. In other words, an entity key may be associated with any number of data location specifiers. When data for a particular entity is added to a data
15        repository, the NDTP server is updated to indicate an association between the entity key and the data repository's data location specifier. When a query is performed for an entity key, the NDTP server supplies the set of data repositories in which data may be found for that entity key.

**General NDTP Mechanics**

20        The protocol of the invention is designed to provide maximum transaction throughput from the NDTP server, associated clients, and associated data repositories when appropriate. The design goal is realized through two design principles:

          1.    NDTP messages should preferably be as short as
25               possible to maximize the rate of NDTP transactions for a
                 given network communication bandwidth.
          2.    NDTP messages should preferably be structured for
                 efficient processing on existing machine architectures.

          Design Optimizations.

30        Numerical fields of an NDTP message are preferably represented in binary integer format rather than ASCII or other printable format to minimize

- 8 -

host processing overhead and network utilization. Numerical fields of NDTP messages are also aligned on 32-bit boundaries to minimize the cost of manipulation on current machine architectures. Manipulating unaligned multibyte integer quantities on modern machine architectures usually incurs 5 an extra cost ranging from mild to severe compared to manipulating the same quantities in aligned form.

In keeping with other network protocol standards including TCP/IP, multioctet integer quantities in NDTP are preferably encoded using the big endian integer interpretation convention, as set forth above.

10 To overcome network latency, NDTP is designed to support asynchronous operation, where many requests may be sent to an NDTP server before a response from any of them is received.

Each NDTP message is preceded by a fixed size, 12-octet header, using the preferred data structure:

15
```
typedef struct ndtp-hdr {
        uint8_T op;                 /* opcode */
        uint8_t pad[3];
        uint32_t id;                /* transaction identifier */
        uint32_t size;              /* total request size
20                                      following the header */
    }ndtp_hdr_t;
    where:
```

op:

NDTP message numerical operation code.

25
| | | |
|---|---|---|
| NDTP_GET: | get request |
| NDTP_GET_RSP: | get response |
| NDTP_PUT: | put request |
| NDTP_PUT_RSP: | put response |
| NDTP_DEL: | delete request |
30 | NDTP_DEL_RSP: | delete response |
| NDTP_RDR_RSP: | provide redirection |

id:

- 9 -

Client supplied operation request used to distinguish responses from multiple outstanding NDTP asynchronous requests. Each "_RSP" message echoes the id field of the associated request.

size:

5      Size, in octets of the remainder of the NDTP message. The size field should always be a multiple of 4 octets.

Variably sized portions of NDTP messages are preferably defined with a size field rather than some other delimiter mechanism to facilitate efficient reading of NDTP messages. Requests may be made to the network layer to 10    read the entire variably sized portion of an NDTP message, rather than reading small chunks while scanning for a delimiter. Furthermore, client and server resource management can be more efficient since the size of NDTP messages is known before reading.

The variably sized portions of NDTP messages are composed of zero 15    or more NDTP stings:

```
typedef struct ndtp_str {
  uint32_t len;
  uint8_t data [];
{  ndtp_str_t;
```

20    Note that the C struct definitions in this document are schematic, and not necessarily fully compliant structures in the C programming language. Specifically, arrays denoted in this document with "[ ]" imply a dimension which is only known dynamically and this indefinite array size specifier is not allowed in C struct definitions. Note also the following:

25

len:

the number of significant octets of data following the len field in the data area.

data:

30    len octets of data, followed by up to 3 octets of padding, to ensure that the total length of the NDTP string structure is a multiple of 4 octets. The padding octets are not included in the len field.

JA0121

- 10 -

Because variable sized portion NDTP messages are composed of zero or more NDTP stings and NDTP strings preferably occupy an even multiple of 4 octets, this ensures that the "size" field of NDTP message headers will preferably be a multiple of 4 octets.

**Protocol Structure**

5

An example of multiple outstanding NDTP requests and the use of request identifiers is shown in FIG. 1. NDTP preferably has a simple, stateless request/response structure. Each request message 10 sent by a client 12 has a corresponding response message 14 returned by the server

10    16. To maximize server 16 throughput and use of available network bandwidth, NDTP is asynchronous in nature. Many requests 10 from a single client 12 may be outstanding simultaneously, and responses 14 may or may not be returned from the server 16 in the order in which the requests 10 were issued. Each NDTP request 10 contains an NDTP request identifier 18 that is

15    returned in the NDTP response 14 for the associated request 10. An NDTP client 12 uses a unique NDTP request identifier 18 for each NDTP request 10 that is outstanding at the same time to an NDTP server 16 if it wishes to correlate responses with requests.

There are four operations preferably supported by the protocol:

20
- Add a location association to an identifier.
- Delete a location association from an identifier.
- Get all locations associated with an identifier.
- Provide a redirect instruction to identify an alternative server.

The response to adding a location association to an identifier 18 is a

25    simple acknowledgement. If the location is already associated with the identifier 18, adding the association has no effect, but the request 10 is still acknowledged appropriately. In other words, the NDTP add operation is idempotent. The response to deleting a location association from an identifier 18 is a simple acknowledgement. If the location is not currently associated

30    with the identifier 18, deleting the association has no effect, but the request 10 is still acknowledged appropriately. In other words, the NDTP delete operation is idempotent. The response 14 to getting all locations associated

- 11 -

with an identifier 18 is a list of the locations presently associated with an
identifier 18. If no locations are currently associated with an identifier 18, a list
of length zero is returned.

Message Formats

5      NDTP messages 10, 14 preferably have a regular structure that
consists of a message operation code, followed by a request identifier 18,
followed by a string area length (in bytes) 20, followed by zero or more strings
22, as shown in FIG. 2. As those skilled in the art will appreciate, NDTP
message formats are preferably independent of the network transport layer
10     used to carry them. NDTP preferably defines mappings of these messages
10, 14 onto TCP and UDP transport layers (described in detail below), but
other mappings could also be defined and it is likely that these NDTP
message formats would not require change. For example, the notation
ROUND4(x) means x, rounded up to the next multiple of 4.

15     Integer Format
Multibyte integers in NDTP messages are represented in network byte
order; using the big-endian convention. In other words, the most significant
byte of a multibyte integer is sent first, followed by the remainder of the bytes,
in decreasing significance order.

20     String Format
Strings in NDTP are represented as counted strings, with a 32-bit
length field 20, followed by the string data 22, followed by up to 3 bytes of
padding 24 to make the total length of the string representation equal to
ROUND4(length). This layout is shown diagrammatically in FIG. 2.

25     NDTP_GET Format
The NDTP_GET message has a message operation code 30 of 0, and
a single NDTP string 32 which is the identifier string for which to get
associated location strings. This layout is shown diagrammatically in FIG. 3.

-11-

JA0123

- 12 -

NDTP_GET_RSP Format

The NDTP_GET_RSP message has a message operation code 40 of 1, and zero or more strings 42 that are the locations currently associated with the requested identifier. This layout is shown diagrammatically in FIG. 4.

5 NDTP_PUT Format

The NDTP_PUT message has a message operation code 50 of 2, and two NDTP strings 52, 54. The first string 52 is the identifier for which to add a location association, and the second string 54 is the location to add. This layout is shown diagrammatically in FIG. 5.

10 NDTP_PUT_RSP Format

The NDTP_PUT_RSP message has a message operation code 60 of 3, and zero NDTP strings. This layout is shown diagrammatically in FIG. 6.

NDTP_DEL Format

The NDTP_DEL message has a message operation code 70 of 4, and
15 two NDTP strings 72, 74. The first string 72 is the identifier from which to delete a location association, and the second string 74 is the location to delete. This layout is shown diagrammatically in FIG. 7.

NDTP_DEL_RSP Format

The NDTP_DEL_RSP message has a message operation code 80 of 5,
20 and zero NDTP strings. This layout is shown diagrammatically in FIG. 8.

NDTP_RDR_RSP Format

The NDTP_RDR_RSP message has a message operation code 90 of 6, and one or more NDTP strings 92, 94. Two layouts apply, which are shown
25 diagrammatically in FIGS. 9(a) and 9(b).

A general description of the usage and operation of these protocol messages is provided below.

-12-

JA0124

- 13 -

<u>NDTP_GET Transaction</u>

The NDTP_GET message contains a single NDTP string which is the entity key for which associated data locations are requested.

```
typedef struct ndtp_get {
    ndtp_hdr_t hdr;
    ndtp_str_t key;
} ndtp_get_t;
```

The NDTP_GET_RSP message contains zero or more NDTP strings which are the data location specifiers associated with the NDTP entity key:

```
typedef struct ndtp_get_rsp {
    ndtp_hdr_t hdr;
    uint32_t rsps;
    ndtp_str_t values[];
} ndtp_get_rsp_t;
```

<u>NDTP_PUT Transaction</u>

The NDTP_PUT messages contains two NDTP strings which are (1) the NDTP entity key and (2) the NDTP data location specifier which is to be associated with the NDTP entity key.

```
typedef struct ndtp_put {
    ndtp_hdr_t hdr;
    ndtp_str_t key;
    ndtp_str_t data;
} ndtp_put_t;
```

The NDTP_PUT_RSP message has no NDTP strings, and simply indicates that the requested entity key/data location specifier association was added:

```
typedef struct ndtp_put_rsp {
    ndtp_hdr_t hdr;
} ndtp_put_rsp_t;
```

The requested entity key/data location specifier association is added in addition to any other associations already maintained by the NDTP server.  If

-13-

JA0125

- 14 -

the requested entity key/data location specifier association is already in effect, the NDTP_PUT still succeeds and results in an NDTP_PUT_RSP message.

NDTP_DELETE Transaction

The NDTP_DEL message contains two NDTP strings which are (1) the NDTP entity key and (2) the NDTP data location specifier which is to be unassociated with the NDTP entity key:

```
typedef struct ndtp_del {
    ndtp_hdr_t hdr;
    ndtp_str_t key;
    ndtp_str_t data;
} ndtp_del_t;
```

The NDTP_DEL_RSP message has no NDTP strings, and simply indicates that the requested entity key/data location specifier association was deleted.

```
typedef struct ndtp_del_rsp {
    ndtp_hdr_t hdr;
} ndtp_del_rsp_t;
```

If the requested entity key/data location specifier association is not in effect, the NDTP_DEL still succeeds and results in an NDTP_DEL_RSP message.

NDTP_RDR_RSP Message

NDTP supports a distributed server implementation for which two principle redirection methods apply: (1) embedded redirection links, and (2) passed functions. The passed functions method in turn has two variants: (a) a well-known function, and (b) a communicated function. (These methods and variants are described in further detail below.)

**Network Front End**

The NDTP server network front end preferably maximizes NDTP transaction throughput including concurrent NDTP requests from a single client as well NDTP requests from multiple concurrent clients.

-14-

- 15 -

Network Communication Mechanism

NDTP defines a transaction oriented protocol, which can be carried over any of a variety of lower level network transport protocols. For example:

TCP/IP: TCP/IP provides a ubiquitously implemented transport which
5    works effectively on both local area and wide area networks. An NDTP client using TCP/IP preferably connects with the NDTP server at an established TCP port number, and then simply writes NDTP request messages through the TCP/IP connection to the server, which then writes NDTP response messages back to the client through the same TCP/IP connection in the
10   reverse direction. TCP/IP implementations perform buffering and aggregation of many small messages into larger datagrams, which are carried more efficiently through the network infrastructure. Running NDTP on top of TCP/IP will take advantage of this behavior when the NDTP client is performing many NDTP requests. For example, a data repository which is
15   undergoing rapid addition of data records associated with various entities will perform many rapid NDTP_PUT operations to the NDTP server that can all be carried on the same NDTP TCP/IP connection.

UDP/IP: If an NDTP client only performs occasional, isolated NDTP operations, or there are a vast number of clients communicating with an
20   NDTP server, TCP/IP will not offer the best possible performance because many traversals of the network are required to establish a TCP/IP connection, and yet more network traversals are required to transfer actual NDTP messages themselves. For such isolated NDTP transactions, depending upon the application and network infrastructure in use, it is beneficial to have
25   the NDTP server employ UDP/IP, which is a widely available connectionless datagram protocol.

However, UDP/IP does not support reliable data transfer, or any congestion control mechanism. This means that NDTP clients using UDP/IP must implement reliability and congestion control maintaining transaction
30   timeouts and performing exponential retry backoff timers, precisely analogous to the congestion control mechanism implemented by Ethernet, and other well known UDP protocols. Those skilled in the art will note that the NDTP

-15-

JA0127

- 16 -

protocol is stateless from the standpoint of the NDTP server, which means that there is no congestion control or reliability burden on the server; it is all implemented in a distributed manner by the NDTP UDP/IP clients.

5         Still Higher Performance (ST):  Both TCP/IP and to a lesser degree UDP/IP suffer from high host CPU overhead.  Like the relatively long latency of TCP/IP, this host CPU consumption is considered just the "cost of doing business" where TCP/IP provides ubiquitous connectivity.  If an NDTP server were running in a more constrained environment, where ubiquitous connectivity was not required, its absolute performance could be improved

10   substantially by using a different protocol that is optimized to reduce CPU overhead and latency, such as the Scheduled Transfer (St) protocol.

        None of these network implementation issues are particularly unique to NDTP, however.  All similar protocols face similar tradeoffs, and what art exists to improve the performance of such protocols applies fully to NDTP as

15   well.

**NDTP Query Processing**

        Servicing NDTP query requests does not require high latency operations, such as disk I/O.  Therefore, the NDTP server network front end preferably services NDTP query requests in a FIFO style by reading the

20   NDTP_GET message, performing the lookup for the entity key in the NDTP server string store, and writing the NDTP_GET_RSP message.  Each NDTP query is independent of any other NDTP transactions (other queries or updates), so it is possible to process multiple NDTP queries simultaneously on multiprocessor machines.  The NDTP server permits this by not performing

25   multiprocessor locking in the NDTP query processing path.

        The current prototype NDTP server preferably does not create multiple read service threads per NDTP connection, so multiprocessing will only occur while processing queries from different NDTP connections.  Nonetheless, the NDTP server could be extended to support multiprocessing of NDTP queries

30   from a single NDTP connection if this turned out to be advantageous.

- 17 -

**NDTP Update Processing**

Unlike NDTP queries, processing NDTP updates requires the high latency operation of committing the change to nonvolatile storage. To maintain high performance on NDTP updates, the NDTP server network front end preferably supports multiple concurrent asynchronous update transactions. Also, each update is preferably performed atomically to avoid creating an inconsistent state in the string store. Currently, the string store supports only a single mutator thread, which means that all NDTP updates are serialized through the string store mutator critical code sections. As is traditional in transactional systems, the string store mutation mechanism is implemented as a split transaction.

When an NDTP update is processed, a call is made to the string store mutation function, which returns immediately indicating either that the mutation is complete, or that the completion will be signaled asynchronously through a callback mechanism. The mutator function might indicate an immediate completion on an NDTP_PUT operation if the entity key/data location specifier mapping was already present in the database. In this case, the network front end will immediately write the update response message back to the client.

For updates which are not immediately completed, the network front end maintains a queue of NDTP updates for which it is awaiting completion. When the completion callback is called by the string store log file update mechanism, the network front end writes the NDTP update response messages for all completed updates back to the clients. If no new NDTP update requests are arriving from NDTP clients, and there are some incomplete updates in the update queue, the network front end preferably calls the string store log buffer flush function to precipitate the completion of the incomplete updates in update queue.

**Multiple Connection Handling**

Handling multiple clients in a single server process requires that the server process not block waiting for events from a single client, such as newly

-17-

- 18 -

received data forming an NDTP request message, or clearing a network output buffer so an NDTP response message can be written. The NDTP server network front end may be conditionally compiled to use either of two standard synchronous I/O multiplexing mechanisms, select or poll, or to use
5    threads to prevent blocking the server waiting for events on individual connections. The select and poll interfaces are basically similar in their nature, but different in the details. When compiled for synchronous I/O multiplexing, the NDTP server network front end maintains an input buffer for each connection. The multiplexing function is called to determine if any of the
10   connections have input available, and if so, it is read into the connection's input buffer. Once a complete NDTP request is in the buffer, it is acted upon. Similarly, the network front end maintains an output buffer for each connection, and if there is still a portion of an NDTP response message to send, and the connection has some output buffer available, more of the NDTP
15   response message is sent.

The threaded version of the NDTP server network front end preferably creates two threads for each NDTP connection, one for reading and one for writing. While individual threads may block as input data or output buffer is no longer available on a connection, the thread scheduling mechanism ensures
20   that if any of the threads can run, they will. The threaded version of the NDTP server is most likely to offer best performance on modern operating systems, since it will permit multiple processors of a system to be used, and the thread scheduling algorithms tend to be more efficient than the synchronous I/O multiplexing interfaces. Nonetheless, the synchronous I/O multiplexing
25   versions of NDTP server will permit it to run on operating systems with poor or nonexistent thread support.

A more detailed description of the mapping operation in both a TCP and UDP environment appears below.

### TCP Mapping
30   As those skilled in the art will appreciate, the Transmission Control Protocol (TCP) is a connection-oriented protocol that is part of a universally

-18-

- 19 -

implemented subset of the Internet Protocol (IP) suite.  TCP provides reliable, bi-directional stream data transfer.  TCP also implements adaptive congestion avoidance to ensure data transfer across a heterogeneous network with various link speeds and traffic levels.

5    NDTP is preferably carried on TCP in the natural way.  An NDTP/TCP client opens a connection with a server on a well-known port.  (The well-known TCP (and UDP) port numbers can be selected arbitrarily by the initial NDTP implementer.  Port numbers that do not conflict with existing protocols should preferably be chosen.)  The client sends NDTP requests 10 to the
10    server 16 on the TCP connection, and receives responses 14 back on the same connection.  While it is permissible for a single client 12 to open multiple NDTP/TCP connections to the same server 16, this practice is discouraged to preserve relatively limited connection resources on the NDTP server 16.  The asynchronous nature of NDTP should make it unnecessary for a client 12 to
15    open multiple NDTP/TCP connections to a single server 16.

If protocol errors are detected on an NDTP/TCP connection, the NDTP/TCP connection should be closed immediately.  If further NDTP/TCP communication is required after an error has occurred, a new NDTP/TCP connection should be opened.  Some examples of detectable protocol errors
20    include:

- Illegal NDTP message operation code;
- Nonzero String Area Length in `NDTP_PUT_RSP` or `NDTP_GET_RSP;`
- Inconsistent String Area Length and String Length(s) in
25     `NDTP_GET, NDTP_GET_RSP, NDTP_PUT` or `NDTP_DEL;`
- Unexpected NDTP request identifier by client.

Due to the reliable nature of TCP, NDTP/TCP servers 16 and clients 12 need not maintain any additional form of operation timeout.  The only transport errors that can occur will result in gross connection level errors.  A
30    client 12 should assume that any NDTP requests 10 for which it has not received responses 14 have not been completed.  Incomplete operations may be retried. However, whether unacknowledged NDTP requests 10 have

- 20 -

actually been completed is implementation dependent. Any partially received NDTP messages should also be ignored.

### UDP Mapping

As those skilled in the art will appreciate, the Unreliable Datagram Protocol (UDP) is a best-effort datagram protocol that, like TCP, is also part of the universally implemented subset of the IP suite. UDP provides connectionless, unacknowledged datagram transmission. The minimal protocol overhead associated with UDP can deliver extremely high performance if used properly.

NDTP/UDP clients 12 send UDP datagrams with NDTP request messages 10 to a well-known UDP port (see above). NDTP/UDP servers 16 return NDTP response messages 14 to the client 12 selected local UDP port indicated in the NDTP/UDP datagram containing the requests 10. NDTP/UDP does not require any form of connection or other association to be established in advance. An NDTP interchange begins simply with the client request message 10.

For efficiency, the mapping of NDTP on to UDP permits multiple NDTP messages to be sent in a single UDP datagram. UDP datagrams encode the length of their payload, so when a UDP datagram is received, the exact payload length is available. The recipient of an NDTP/UDP datagram will read NDTP messages from the beginning of the UDP datagram payload until the payload is exhausted. Thus, a sender of an NDTP/UDP datagram is free to pack as many NDTP messages as will fit in a UDP datagram.

The largest possible UDP datagram payload is presently slightly smaller than 64K bytes. In addition, there may be a performance penalty sending UDP datagrams that are larger than the maximum datagram size allowed by the physical network links between the sender and intended recipient. IP provides mechanisms for discovering this maximum transfer size, called the Path Maximum Transfer Unit (Path MTU), but a discussion of these mechanisms is beyond the scope of this specification. An

-20-

- 21 -

implementation of NDTP/UDP should preferably respect these datagram size limitations.

Unlike TCP, UDP does not provide reliable data delivery. Therefore, an NDTP/UDP client 12 implementation should implement a timeout mechanism to await the response for each outstanding NDTP request 10. The exact duration of this response timer is implementation dependent, and may be set adaptively as a client 12 receives responses from a server 16, but a reasonable default maximum value is preferably 60 seconds. If a response 14 is not received within the response timeout, the client 12 may retransmit the request 10. NDTP/UDP servers 16 need not maintain any timeout mechanisms.

Depending upon the exact timeout values selected, the client 12 retry mechanism may place some requirements on a client's 12 use of the NDTP request identifier 18 field. If the response timer is shorter than the maximum lifetime of a datagram in the network, it is possible that a delayed response will arrive after the response timer for the associated request has expired. An NDTP/UDP client 12 implementation should ensure that this delayed response is not mistaken for a response to a different active NDTP request 10. Distinguishing current responses from delayed ones is called *antialiasing*. One presently preferred way to perform antialiasing in NDTP/UDP is to ensure that NDTP request identifier 18 values are not reused more frequently than the maximum datagram lifetime.

NDTP/UDP client 12 implementations that use the NDTP request identifier 18 for antialiasing should ignore (i.e., skip) NDTP messages within a NDTP/UDP datagram with invalid NDTP request identifier 18 values. Client 12 or server 16 NDTP/UDP implementations detecting any other protocol error should also preferably discard the remainder of the current NDTP/UDP datagram without processing any further NDTP requests from that datagram. Some examples of such detectable errors include:

- Illegal NDTP message operation code;
- Nonzero String Area Length in `NDTP_PUT_RSP` or `NDTP_GET_RSP`;

- 22 -

- Inconsistent String Area Length and String Length(s) in
  NDTP_GET, NDTP_GET_RSP, NDTP_PUT or NDTP_DEL;
- Inconsistent NDTP message length and UDP datagram length.

5      Because NDTP/UDP messages are limited to the length of a single
UDP datagram payload, NDTP/UDP cannot be used to transfer long NDTP
messages. For example, it would be very difficult to send an NDTP_GET
message with NDTP/UDP for a 64K byte identifier string. This case is
avoidable by a client 12 realizing that an NDTP message is too long to send
as a UDP datagram and using NDTP/TCP instead. However, a greater
10     limitation is that NDTP currently provides no mechanism for an NDTP server
16 to indicate that a response is too large to fit in a UDP datagram. In this
case, the NDTP server 16 should not send a response 14, and it may or may
not chose to complete the request 10. The recovery mechanism in this case
preferably is, after several unsuccessful attempts to use NDTP/UDP, a client
15     12 may try again with NDTP/TCP.

Because UDP does not provide any form of congestion avoidance it is
possible that the simple retry strategy specified for NDTP/UDP can create
network congestion. Network congestion can cause a severe degradation in
the successful delivery of *all* network traffic (not just NDTP traffic, nor just the
20     traffic from the particular client/server 12, 16 pair) through a congested
network link. Congestion will occur when an NDTP/UDP implementation is
sending datagrams faster than can be accommodated through a network link.
Sending a large number of NDTP/UDP datagrams all at once is the most
likely way to trigger such congestion. Sending a single NDTP/UDP datagram,
25     assuming it is smaller than the Path MTU, and then waiting for a response 14
is unlikely to create congestion. Therefore, the use of NDTP/UDP should be
confined to contexts where clients 12 send few outstanding requests at a
time, or where network congestion is avoided through network engineering
techniques.

30     Those skilled in the art will appreciate that network congestion is a
highly dynamic property that is a function of network traffic from all sources
through a network link and will vary over time over any given network path.

-22-

- 23 -

An NDTP/UDP client 12 implementation can recover from network congestion by switching to NDTP/TCP after several failed retries using NDTP/UPD. Failure due to network congestion may be indistinguishable from failure due to UDP packet size limitations, but since the recovery strategy is the same in both cases, there is no need to distinguish these cases.

**NDTP/UDP Congestion Avoidance**

Given the stateless, transactional nature of NDTP, NDTP/UDP generally performs much better than NDTP/TCP. This performance improvement is measurable both in terms of the maximum sustainable transaction rate of an NDTP server 16, and the latency of a single response to an NDTP client 12. In the same way as the Domain Name Service (DNS), NDTP fits naturally in the UDP model. It is a working assumption of NDTP (and DNS) that for every NDTP transfer, there will be an associated transfer of real data that is an order of magnitude or more greater in size than the NDTP protocol traffic. This property will naturally limit the amount of NDTP traffic on a network. However, in applications where NDTP traffic reaches high levels, particularly at network 'choke points' which are not within the control of network engineers, it may be desirable to support a congestion avoidance mechanism for NDTP/UDP.

However, those skilled in the art will appreciate that the other main future requirement of NDTP, security (described below), implies an existing, durable association between NDTP clients 12 and NDTP servers 16. This association is much like (and in the case of SSL, it is) a network connection. Therefore, depending upon what security technology is applied, developing a congestion avoidance mechanism for NDTP/UDP may be an irrelevant exercise.

**Server Redirection Mechanism**

NDTP provides two mechanisms for server redirection. The redirection mechanisms allow cluster and hierarchical topologies, and mixtures of such topologies (described in detail below). The first redirection mechanism supported by NDTP, embedded redirection links, uses an application specific

-23-

- 24 -

convention to return redirection pointers as NDTP data location strings.  For
example, if location strings are W3C URLs, a URL with the schema $ndtp:$
could be a server indirection pointer.  An NDTP_GET_RSP message may
contain any mixture of real data location strings and NDTP server redirection

5          pointers.  In this case, the client must issue the same NDPT_GET query
message to other NDTP servers indicated by the redirection pointers.  The
total set of data location strings associated with the supplied identifier string is
the collection of all the data location strings returned from all the NDTP
servers queried.  The embedded redirection link technique does not require

10        any specific NDTP protocol support.  Therefore, it could be used within the
NDTP protocol as is, and does not require further description in this
specification.

The second redirection mechanism, which is specified as a future
extension of NDTP, is having the server return an NDTP_RDR_RSP message

15        in response to an NDTP request for which the NDTP server has no ownership
of the supplied identifier string.  Those skilled in the art will note that unlike the
embedded redirection links mechanism, the NDTP_RDR_RSP mechanism
applies to all NDTP requests, not just NDTP_GET.

As mentioned above, the second redirection mechanism has two

20        variants.  The first variant of the NDTP_RDR_RSP function mechanism
specifies a well-known function that all NDTP server and client
implementations know when they are programmed, and the NDTP_RDR_RSP
message carries a table of NDTP server URLs.  The format of the
NDTP_RDR_RSP message with an NDTP server URL table is shown in FIG.

25        9(a).

The appropriate NDTP server is selected from the table in the
NDTP_RDR_RSP message by applying a well-known function to the identifier
string and using the function result as an index into the NDTP server table.
The well-known function preferably applied is the *hashpjw* function presented

30        by Aho, Sethi and Ullman in their text *Compilers, Principles, Techniques and
Tools*:

-24-

- 25 -

```
uint32_t
hash (uint8_t *s, uint32_t slen, uint32_t size)
{
  uint32_t g;
  uint32_t i;
    unit32_t h = 0;
  uint8_t c;

  for (i = 0; i < slen; i++) {
    c = s[i];
    h = (h << 4) + c;
    g = (h & 0xf0000000);
    if (g) {
      h ^= g >> 24;
      h ^= g;
    }
  }
  return h % size;
}
```

In this case, the *size* parameter is the number of elements in the NDTP server URL table returned in the `NDTP_RDR_RSP` message. For the hashpjw function to behave correctly, the *size* parameter must be a prime number, therefore the NDTP server URL table must also have a prime number of elements. Those skilled in the art will appreciate that the same NDTP server may appear multiple times in the NDTP server URL table. For example, if the server URL table has 2039 elements, by putting one NDTP server URL in the first 1019 table elements, and a second NDTP server URL in the second 1020 table elements, the responsibility for the index string space will be split roughly in half.

The second variant of the `NDTP_RDR_RSP` function mechanism specifies that a general function description will be sent to the NDTP client in the NDTP_RDR_RSP message. The NDTP client will apply this function to

JA0137

- 26 -

the identifier string and the output of the function will be the NDTP server URL to which to send NDTP requests for the particular identifier string. The advantage of this technique over the well-know function approach is that it allows application-specific partitions of the identifier string space. This can

5    permit useful administrative control. For example, if General Electric manages all identifiers beginning with the prefix "GE", a general function can be used to make this selection appropriately. The disadvantage of using a general function is it may be less efficient to compute than a well-known function.

10    There are a variety of possible mechanisms for sending function descriptions. NDTP is expected to be applied in environments that make extensive use of the Java programming platform. Therefore the NDTP_RDR_RSP mechanism preferably uses a feature of the Java programming language called "serialized representation" to communicate

15    generalized functions in the NDTP_RDR_RSP message. A serialized form of a Java object is a stream of bytes that represents the precise state of the object, including its executable methods. For example, the Java Remote Method Invocation (RMI) mechanism uses serialized objects to send executable code to a remote platform for execution. The NDTP_RDR_RSP message contains

20    the serialized form of an object implementing this Java interface:

```
interface NDTPRedirectFunction {
    String selectServer(byte[] identifier);
}
```

25

The format of the NDTP_RDR_RSP message with a Java Serialized form of the NDTP redirection function is specifically identified in FIG. 9(b).

The NDTP server redirection mechanism also permits construction of NDTP server clusters (described below). It is expected that the identifier

30    string hash function will be defined at the time NDTP is implemented, but the actual list of NDTP servers 90 will change from application to application and within a single application throughout the lifetime of the system. Therefore, it

- 27 -

is necessary for clients to be able to discover updated NDTP server lists, and any other relevant dynamic parameters of the server selection function as these inputs change.

### Hierarchical Server Topology

5      While the NDTP server topology supported by the server redirection mechanism described above and shown in FIGS. 9(a) and 9(b) is an extremely powerful and general scaling technique, suitable for diverse topology deployments, some applications might still benefit from a specifically hierarchical server topology. An NDTP server hierarchy 100, such as that

10      shown in FIG. 10, permits identifier/location association data to be owned and physically controlled by many different entities. An NDTP server cluster should be managed by a single administrative entity 102, and the distribution of data can be for performance and scaling purposes. Furthermore, a server hierarchy would provide some fault isolation so portions of the

15      identifier/location association data can be accessed and updated in the presence of failures of some NDTP servers 104. Finally, an NDTP server hierarchy can localize NDTP update operations (NDTP_PUT and NDTP_DEL), which can improve performance and reduce network load.

A hierarchical NDTP server topology also allows organizations to

20      maintain their own local NDTP server 104 or NDTP server cluster 102 that manages associations to data locations that are within the organizations' control. Upper tier NDTP servers 108 would be used to link the various leaf NDTP servers 104.

### Server Constellations

25      The NDTP server organization also allows NDTP servers to be combined in various ways to build server constellations that offer arbitrary server performance scalability and administrative control of the location of portions of the identifier/data location relationship mappings. Figure 11 illustrates an NDTP server constellation 110 as it relates to a client 112 and a

30      data repository 114. In FIG. 10, the client 112 and data repository 114 of FIG. 11 were merged into the single client entity 106 for ease of discussion.

- 28 -

Their distinction can now be separated and identified in order to illustrate the storage and retrieval of data in a distributed data collection.

As shown in FIG. 11, a client 112 consults the server constellation 110, which may be construed in either of two forms (see FIGS. 12 and 13), and
5    which returns location strings in response to a client 112 request. Once the client 112 has the location string for a particular unit of data, the client 112 contacts and retrieves information directly from the data repository 114. In one embodiment, if the client 112 contains a data repository 114, internal application logic would facilitate this interaction. Those skilled in the art will
10   appreciate that the term "data collection" is being employed rather than the term "database" because database frequently invokes images of Relational Database Systems (which is only one application of the protocol); an NDTP data collection could just as easily be routing tables as it could be files or records in a RDBS database.
15       NDTP server constellations 110 preferably have two basic organizational paradigms: Client-Centric and Server-Centric. NDTP supports both by design, and both approaches apply to all aspects of managing the relationships between identifiers and locations, such as data retrieval, index manipulation, and server redirection. Each will be discussed separately
20   below.

Client-Centric Approach

The first basic pattern that NDTP supports is driven by the client 112, and can be called "client-centric". Referring to FIG. 12, a single client (not shown) asks a server 120a in the server constellation 110 for operations that
25   the client desires executed (represented by arrow 1 in FIG. 12). If the client doesn't receive the data requested, it will receive a redirection response message (NDTP_RDR_RSP) from the contacted server 120a (arrow 2). The client then uses the information it receives to ask another server 120b for the operations the client wants to initiate (arrow 3). A successful response from
30   the second server 120b is then sent to the client (arrow 4).

-28-

- 29 -

This design constructs operating patterns for (1) redirection, (2) index operations, and (3) hierarchical or cluster topologies. The important point is that the Network Distributed Tracking Protocol is designed to support highly configurable methods for processing index-related operations.

5    NDTP supports two specific redirection mechanisms, which are not mutually exclusive and may be combined in any way within a single NDTP server constellation 110. This formation may increase performance when many clients (not shown) participate, since client processing is emphasized rather than server processing. The first NDTP redirection mechanism uses a

10    distinctively encoded location string for each NDTP server 120a,b that contains additional location strings associated with the identifier string supplied in the NDTP request 122a,b. This is an embedded redirection link. For example, if location strings are some form of HTTP URL, a URL with the schema specifier *ndtp:* would indicate a redirection. Using this scheme, the

15    location strings associated with an identifier string may be spread among multiple NDTP servers 120a,b. In addition to redirection, in FIG. 12, all index manipulation operations continue to apply, but they are directed at the correct NDTP server 110b for which they apply:  NDTP_GET, NDTP_PUT, NDTP_DEL.

20    The second NDTP redirection mechanism uses a NDTP_RDR_RSP message to indicate that the server 120a to which the NDTP request 122a was directed does not contain any of the location strings associated with the identifier string supplied in the NDTP request 122a. The NDTP_RDR_RSP message contains all the information required for the originator of the NDTP

25    request 122a to reissue the original NDTP request 122b to a different NDTP server 120b that does have location strings associated with the identifier string supplied in the NDTP request 122b. This information may be an array of NDTP server hosts from which one is selected by applying a well-known function to the identifier string supplied in the NDTP request 122b, or the

30    communicated function to apply as well as a list or other description of the NDTP server hosts from which to choose, as described above.

-29-

- 30 -

Figure 12 illustrates a cluster topology for client interaction with NDTP servers 120. A single client queries a first server 120a (Server0), learns of a new index location (Server1), and then contacts that server 120b (Server1) for the operations it wishes to execute on the index that the client identifies. The

5     basic idea is that a client asks a server 120a to process an index operation. If the contacted server 120a does not have all the information, as for example in a redirect, then it passes the request to another server 120b. If the second server 120b is appropriate it responds appropriately, or it passes the request on to another server (not shown), and so on. Figure 12 could also illustrate a

10    hierarchical topology if a client (not shown) contacted another client in a handoff as shown in FIG. 10, where a client 106 "asks up" to another client 106, and so on.

Behind the scenes, the server constellation 110 could also be using a hierarchical organization or a cluster organization for managing indices. The

15    important point of this topology is pushing processing emphasis toward clients (not shown) rather than toward servers 120a,b. Such protocol design has scale implications as the number of participating machines/mechanisms increases, since it distributes aggregate processing.

Server-Centric Approach

20    The second basic pattern that the Network Distributed Tracking Protocol provides is a "Server-Centric Approach". Figure 13 shows the server constellation 110 characterizing "server-centric" functionality. In this figure, an NDTP server 130a (Server0) receives a request 132a from a client (not shown). The server 130a (Server0) passes the request to a second server

25    130b (Server1), which is an appropriate server for the process, and the second server 130b returns a response 134a to the first server 130a (Server0). If the second server 130a (Server1) was not appropriate, it could pass the request to another server (not shown), and so on. Each NDTP server 130a,b will combine the results of NDTP requests 132a,b it has

30    performed of other NDTP servers 130a,b with whatever responses 134a,b it generates locally for the original NDTP request 132a, and the combined

-30-

- 31 -

response 134b will be the appropriate response for the original NDTP request 132a.

This design constructs operating patterns for (1) index operations and (2) hierarchical or cluster topologies. The important point is that the Network
5    Distributed Tracking Protocol is designed to support highly configurable methods for processing index-related operations, but this method emphasizes server-processing rather than client-processing. In FIG. 13, all index manipulation operations continue to apply, but they are directed at the correct NDTP server 130a,b for which they apply: NDTP_GET, NDTP_PUT,
10   NDTP_DEL.

Figure 13 illustrates an hierarchical topology for client interaction with NDTP servers 130. A single client queries a first server 130a (Server0), which is not appropriate, and so the first server 130a (not the client) itself contacts an appropriate server 130b (Server1) for operations it "passes
15   through" to execute on the index that the client has identified. Alternatively, FIG. 13 could illustrate a cluster topology if a server 130a contacted another server 130b in a what is known as a "peer" handoff. The important point of this topology is that it pushes processing emphasis toward servers 130a,b rather than toward clients. Since index processing services can be
20   centralized, administration of the indices can be administered more conveniently in certain cases.

The simplest NDTP server constellation 110 is a single server 130, and the protocol is designed to permit massive scale with a single or simple server constellation. Highly configurable installations are possible using "client-
25   centric" or "server-centric" techniques. NDTP server constellations 110 composed of more than one NDTP server may use any combination of the two approaches for performance optimization and data ownership properties. Client-centric and server-centric approaches can be used to build NDTP server clusters, NDTP server trees, NDTP server trees of NDTP server
30   clusters, or any other useful configuration.

NDTP design thus explicitly addresses the emerging "peer-to-peer" topologies called "pure" and "hybrid". The "pure" peer-to-peer approach

JA0143

- 32 -

emphasizes symmetric communication among peers, and is achievable
through the "server-centric" approach. The "hybrid" peer-to-peer approach
emphasizes asymmetric communication among non-peer participants, and is
achievable through the "client-centric" approach. Beyond the pure and hybrid
5       approaches that NDTP allows, as described above, NDTP permits any
additional mixtures between client-centric and server-centric approaches to
provide superior configurability and performance tuning.

**Security**

NDTP preferably has no provisions for security. Three key features of
10      security should therefore be provided:

- Data privacy (encryption)
- Client 12 authentication
- Client 12 authorization

NDTP/TCP will be extended using SSL/X.509 to support these security
15      features in a straightforward, 'industry standard' way.

Adding security to NDTP/UDP also requires technology other than
SSL. For example, IPSec supports securing all IP traffic, not just TCP
between two endpoints. IPSec is a somewhat more heavyweight technology
than SSL, and the rate of adoption in industry is somewhat slow.
20      Nonetheless, it can provide the relevant capabilities to NDTP/UDP.

**Additional Transport Layers**

The early-adopter portion of the industry is in a state of turmoil
regarding network transport protocols. On one hand, TCP has provided
decades of solid service, and is so widely implemented that the mainstream
25      computer industry could not imagine using another protocol to replace it. On
the other hand, TCP lacks several features that may be necessary to enable
the next step in network applications. In particular, the TCP design assumed
pure software implementations by relatively powerful host computer
computers. However, developments in network technology have increased
30      the packet rate that a TCP implementation must handle to deliver full network
speed beyond the capabilities of even increasingly powerful host computers.

-32-

- 33 -

To take the next step, much of the packet processing work must be off-loaded to hardware, and TCP's design makes this very difficult.

It is unclear whether it will become possible to implement the relevant portions of TCP in hardware in a timely fashion. If this does not happen, one
5    of the many new transport layers currently under development (ST, SCTP, VI, etc.) may emerge as a market leader in high performance networking. In this case, a layering of NDTP on top of a new hardware accelerated transport would permit NDTP servers to deliver greatly increased transaction rates. Even with the use of a hardware accelerated transport layer, however, the
10    only benefit to a typical NDTP client would be lower cost of service due to cheaper NDTP server platform requirements. On the flip side, NDTP clients could likely still use a cheaper software implementation of the new transport because of individual clients' modest performance demands.

As can be seen, the Network Distributed Tracking Protocol is a
15    networking protocol that runs on top of any stream (e.g. TCP) or datagram (e.g. UDP) network transport layer. The goal of NDTP is to support a network service that efficiently manages mappings from each individual key string, an identifier, to an arbitrary set of strings, locations. NDTP permits protocol participating clients to add and remove identifier/location associations, and
20    request the current set of locations for an identifier from protocol servers.

NDTP is designed for use in the larger context of a distributed data collection. As such, it supports an architecture, in which information about where data associated with particular application entities, can be managed and obtained independently of the data itself. One way to understand this is
25    as a highly dynamic DNS for data. DNS maintains a mapping between names and machines. NDTP and its associated servers maintain a mapping between entity identifiers and data locations. The identifier/location mapping maintained by NDTP servers is much more dynamic (more frequent updates), than the domain name/IP address mapping maintained by DNS. NDTP is
30    designed to support very fast, very diverse, and very large scale mapping manipulations.

JA0145

- 34 -

Regardless of the expected system context of NDTP in a distributed data collection, those skilled in the art will appreciate that NDTP can be used for any application in which one-to-zero or one-to-many associations among strings are to be maintained and accessed on a network. In applications of

5    NDTP other than distributed databases, the term identifier is likely to make sense in most cases, but the term location may not. In any context, however, although NDTP supports identifier and location strings of up to $2^{32}$-4 bytes in length, it is a general assumption that the strings are typically short.

Those skilled in the art will note that the invention provides for the

10    management and manipulation of indices and their associated relationships. Even more importantly, it is the manipulation of dynamic and spontaneous relationships between indices and locations, not the indices and locations, that is the core significance. The Network Distributed Tracking Protocol was written to manipulate these relationships, of which indices (identifiers) and

15    locations are components of the aggregate solution.

It is to be understood that a wide range of changes and modifications to the embodiments described above will be apparent to those skilled in the art, and are contemplated. It is therefore intended that the foregoing detailed description be regarded as illustrative, rather than limiting, and that it be

20    understood that it is the following claims, including all equivalents, that are intended to define the spirit and scope of the invention.

JA0146

Attorney Docket No. <u>11958/62</u>

**AMENDMENTS TO THE SPECIFICATION**

On page 1, please amend the paragraph beginning on line 4 to read as follows:

This application <u>is a continuation of U.S. application serial no.</u> <u>09/661,222 filed September 13, 2000, pending, the entirety of which is hereby</u> <u>incorporated by reference, which claims the benefit of U.S.</u> ~~claims priority to~~ ~~provisional~~ patent application serial no. 60/153,709, entitled SIMPLE DATA TRANSPORT PROTOCOL METHOD AND APPARATUS, filed on September 13, 1999, and <u>which is a continuation-in-part of U.S.</u> ~~to regular patent~~ application no. 09/111,896, entitled SYSTEM AND METHOD FOR ESTABLISHING AND RETRIEVING DATA BASED ON GLOBAL INDICES, filed on July 8, 1998<u>,</u> <u>abandoned.</u>

JA0147

PTO/SB/06 (12-04)
Approved for use through 7/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>**11,354,224** |
| --- | --- |

### APPLICATION AS FILED – PART I

|  | (Column 1) | (Column 2) | SMALL ENTITY | | OR | OTHER THAN<br>SMALL ENTITY | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **FOR** | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | | RATE ($) | FEE ($) |
| BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | | | | 150 | | | 300 |
| SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | | | | 250 | | | 500 |
| EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | | | | 100 | | | 200 |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | 16 minus 20 = | | X$ 25 | | OR | X$50 | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | 3 minus 3 = | * | X$100 | | | X$200 | |
| APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR | | | | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | 180 | | | 360 | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | 1000 |

### APPLICATION AS AMENDED – PART II

|  |  | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN<br>SMALL ENTITY | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | CLAIMS<br>REMAINING<br>AFTER<br>AMENDMENT | HIGHEST<br>NUMBER<br>PREVIOUSLY<br>PAID FOR | PRESENT<br>EXTRA | RATE ($) | ADDI-<br>TIONAL<br>FEE ($) | | RATE ($) | ADDI-<br>TIONAL<br>FEE ($) |
| **AMENDMENT A** | Total *<br>(37 CFR 1.16(i)) | | Minus ** | = | x = | | OR | x = | |
| | Independent *<br>(37 CFR 1.16(h)) | | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | 180 | | OR | 360 | |
| | | | | | TOTAL<br>ADD'T FEE | | OR | TOTAL<br>ADD'T FEE | |

|  |  | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | CLAIMS<br>REMAINING<br>AFTER<br>AMENDMENT | HIGHEST<br>NUMBER<br>PREVIOUSLY<br>PAID FOR | PRESENT<br>EXTRA | RATE ($) | ADDI-<br>TIONAL<br>FEE ($) | | RATE ($) | ADDI-<br>TIONAL<br>FEE ($) |
| **AMENDMENT B** | Total *<br>(37 CFR 1.16(i)) | | Minus ** | = | x = | | OR | x = | |
| | Independent *<br>(37 CFR 1.16(h)) | | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | N/A | | OR | N/A | |
| | | | | | TOTAL<br>ADD'T FEE | | OR | TOTAL<br>ADD'T FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will depend upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

JA0148

Page 1 of 2

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371 (c) DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NUMBER |
|---|---|---|---|
| 11/354,224 | 02/14/2006 | John K. Overton | 11958/62 |

00757
BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

**CONFIRMATION NO. 7078**
**FORMALITIES**
**LETTER**

Date Mailed: 04/06/2006

## NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(b)

#### *Filing Date Granted*

**Items Required To Avoid Abandonment:**

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is missing.
  *Applicant must submit $ 300 to complete the basic filing fee for a non-small entity. If appropriate, applicant may make a written assertion of entitlement to small entity status and pay the small entity filing fee (37 CFR 1.27).*

The applicant needs to satisfy supplemental fees problems indicated below.

The required item(s) identified below must be timely submitted to avoid abandonment:

- To avoid abandonment, a surcharge (for late submission of filing fee, search fee, examination fee or oath or declaration) as set forth in 37 CFR 1.16(f) of $130 for a non-small entity, must be submitted with the missing items identified in this letter.

**SUMMARY OF FEES DUE:**

Total additional fee(s) required for this application is **$1130** for a Large Entity

- **$300** Statutory basic filing fee.
- **$130** Surcharge.

- The application search fee has not been paid. Applicant must submit **$500** to complete the search fee.
- The application examination fee has not been paid. Applicant must submit **$200** to complete the examination fee for a large entity

**JA0149**

Page 2 of 2

Replies should be mailed to:    Mail Stop Missing Parts
                                     Commissioner for Patents
                                     P.O. Box 1450
                                     Alexandria VA 22313-1450

*A copy of this notice **MUST** be returned with the reply.*

Office of Initial Patent Examination (571) 272-4000, or 1-800-PTO-9199, or 1-800-972-6382
PART 3 - OFFICE COPY

"Express Mail" mailing label number EV 316 037 505 US

Date of Deposit:  September 6, 2006

SEP 0 6 2006

Case No. 11958/62

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

        J. Overton et al.

Serial No.:   11/354,224

Filed:       February 13, 2006

For:        NETWORK
            DISTRIBUTED
            TRACKING WIRE
            TRANSFER
            PROTOCOL

Attention: Manager,
Application Branch

## RESPONSE TO NOTICE TO FILE MISSING PARTS OF APPLICATION
## FILING DATE GRANTED

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Attn.: Mail Stop Missing Parts

Dear Sir:

      In accordance with the Notice to File Missing Parts of Application Filing Date Granted dated April 6, 2006, a copy of which is attached, enclosed herewith for filing are the following documents:

☐   Fully executed Declaration for Patent Application and Power of Attorney for the above-referenced patent application.

☒   Applicant:

      ☒   claims small entity status.  See 37 CFR1.27.

      ☐   is other than small entity

JA0151

☒ Checks totaling $565 for:

    ☒ Filing Fee of $150.

    ☒ Surcharge of $65.

    ☐ Additional Claim Fees of $_____.

    ☒ Search Fee of $250.

    ☒ Examination Fee of $100.

    ☐ Application Size Fee (for each additional 50 sheets that exceeds 100 sheets, including specification and drawings) of $    .

☒ Petition for Extension of Time (37 C.F.R. § 1.136(a)) to file missing parts (in duplicate).

☒ Other: Second Preliminary Amendment.

☒ The Commissioner is hereby authorized to charge any deficiencies in fees or credit overpayment to Deposit Account No. 23-1925. A duplicate copy of this paper is enclosed.

Respectfully submitted,

Dated: _September 6, 2006_

_____

Kent E. Genin
Registration No. 37,834
Attorney for Applicant(s)

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610
(312)321-4200

- 2 -

JA0152



9-7-06

**UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371 (c) DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NUMBER |
|---|---|---|---|
| 11/354,224 | 02/14/2006 | John K. Overton | 11958/62 |

**CONFIRMATION NO. 7078**
**FORMALITIES**
**LETTER**

00757
BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

Date Mailed: 04/06/2006

## NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

09/08/2006 WABDELR1 00000013 231925   11354224

01 FC:2011      150.00 DA
02 FC:2111      250.00 DA
03 FC:2311      100.00 DA
04 FC:2051       65.00 DA

**FILED UNDER 37 CFR 1.53(b)**

*Filing Date Granted*

### Items Required To Avoid Abandonment:

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is missing.
  *Applicant must submit $ 300 to complete the basic filing fee for a non-small entity. If appropriate, applicant may make a written assertion of entitlement to small entity status and pay the small entity filing fee (37 CFR 1.27).*

The applicant needs to satisfy supplemental fees problems indicated below.

The required item(s) identified below must be timely submitted to avoid abandonment:

- To avoid abandonment, a surcharge (for late submission of filing fee, search fee, examination fee or oath or declaration) as set forth in 37 CFR 1.16(f) of $130 for a non-small entity, must be submitted with the missing items identified in this letter.

### SUMMARY OF FEES DUE:

Total additional fee(s) required for this application is **$1130** for a Large Entity

- **$300** Statutory basic filing fee.
- **$130** Surcharge.

- The application search fee has not been paid. Applicant must submit **$500** to complete the search fee.
- The application examination fee has not been paid. Applicant must submit **$200** to complete the examination fee for a large entity

JA0153

Page 2 of 2

Replies should be mailed to:     Mail Stop Missing Parts
                                 Commissioner for Patents
                                 P.O. Box 1450
                                 Alexandria VA 22313-1450

*A copy of this notice __MUST__ be returned with the reply.*

Office of Initial Patent Examination (571) 272-4000, or 1-800-PTO-9199, or 1-800-972-6382
PART 2 - COPY TO BE RETURNED WITH RESPONSE

**JA0154**



"Express Mail" mailing label number <u>EV 316 037 505 US</u>

Date of Deposit:  <u>September 6, 2006</u>

<u>Our Case No. 11958/62</u>

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Application of: | ) | |
| | ) | |
| J. Overton et al. | ) | |
| | ) | |
| Serial No. 11/354,224 | ) | Examiner:  To be Assigned |
| | ) | |
| Filing Date:  February 13, 2006 | ) | Group Art Unit: 2144 |
| | ) | |
| For     NETWORK DISTRIBUTED | ) | |
|          TRACKING WIRE TRANSFER | ) | |
|          PROTOCOL | ) | |

## SECOND PRELIMINARY AMENDMENT

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

Prior to Examination on the merits, please enter the following amendment and consider the following remarks:

BRINKS
HOFER
GILSON
&LIONE

**AMENDMENTS TO THE CLAIMS**

This listing of claims will replace all prior versions, and listings, of claims in the application.

1-16. (Canceled).

17. (New) A system for managing data stored in a distributed network, the system comprising:

a data repository configured to store data, wherein the data is associated with an identifier string;

a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the plurality of data location servers comprises a portion of the location information in the distributed data collection based on a hash function used to organize the location information across the plurality of data location servers.

18. (New) The system of claim 17, wherein the location information comprises any portion of a hash table generated with the hash function.

19. (New) The system of claim 17, wherein the data repository comprises a plurality of data repositories and wherein each of the plurality of data location servers are configured to be responsive to a request to store data in a data repository to execute the hash function and store the data on one of the plurality of data repositories in the distributed network based on a result of the hash function.

20. (New) A system for managing location information and providing location information to location queries, the system comprising:

a location server configured to recognize a transfer protocol comprising an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity;

Attorney Docket No. 11958/62

wherein the location server contains location information corresponding to at least one entity, the location information formatted according to the transfer protocol; and

programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity.

21.    (New) The system of claim 20, wherein the location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising a list of at least one other location server known to have location information relevant to the location query.

22.    (New) The system of claim 21, wherein the list of at least one other location server comprises a list of location servers in the plurality of location servers and a corresponding list of each of the entities having location information on the respective location servers.

23.    (New) The system of claim 20, wherein each of the location servers stores at least a portion of a total amount of location information on a persistent storage device.

24.    (New) The system of claim 20, wherein the location information in the location server is maintained in an indexed location store.

25.    (New) The system of claim 24, wherein the location store comprises a string store indexed by a hash table.

26.    (New) The system of claim 24, wherein the location store comprises a string store indexed by a hash table distributed across a plurality of clients.

JA0157

Attorney Docket No. 11958/62

27.　(New) The system of claim 24, wherein the location store comprises a string store indexed by a hash table distributed across a plurality of servers.

28.　(New) The system of claim 24, wherein the location query identifying the desired entity comprises a unique identifier for the desired entity, and wherein the programming logic stored on the location server further comprises programming logic for applying an index function to the identifier to retrieve at least a portion of the locations associated with the unique identifier in the location store.

29.　(New) The system of claim 28, wherein the location store comprises a string store and the index function comprises a hash function.

30.　(New) A method of handling location queries in a network, the network comprising a plurality of location servers containing location information correlating each of a plurality of identifiers with at least one location, the method comprising:

　　receiving a location query from a client at one of the plurality of location servers, the location query requesting an identifier's location;

　　sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and

　　sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising containing location information relevant to the entity identified in the query.

31.　(New) The method of claim 30, further comprising applying information in the location query from the client to an indexing function to

Page 4 of 6

Attorney Docket No. <u>11958/62</u>

determine if the queried location server contains location information relevant to the entity identified in the query.

32.     (New) The method of claim 31, wherein each of the plurality of location servers comprises an indexed table of identifiers and associated locations, and wherein applying information in the location query comprises applying an identifier in the location query to a hash function.

JA0159

Attorney Docket No. <u>11958/62</u>

## REMARKS

Applicants have cancelled claims 1-16 and added new claims 17-32. Applicants submit that claims 17-32 are fully supported by the originally filed specification. Entry and consideration of claims 17-32 is respectfully requested.

Respectfully submitted,

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, ILLINOIS 60610
 (312) 321-4200

Kent E. Genin
Registration No. 37,834
Attorney for Applicants

JA0160

"Express Mail" mailing label number <u>EV 316 037 505 US</u>

Date of Deposit: <u>September 6, 2006</u>

**Case No. <u>11958/62</u>**

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Application of:

    J. Overton et al.

Serial No:   11/354,224

Filed:      February 13, 2006

For:  NETWORK DISTRIBUTED
      TRACKING WIRE TRANSFER
      PROTOCOL

Examiner:  Unknown

Group Art Unit:  2144

**PETITION AND FEE FOR EXTENSION OF TIME (37 CFR § 1.136(a))**

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

    This is a petition for an extension of the time to respond to <u>the Notice to File Missing Parts</u> dated <u>April 6, 2006</u> for a period of <u>three</u> month(s).

☒    Applicant:

    ☒    claims small entity status.  See 37 C.F.R. §1.27.

    ☐    is other than small entity.

| | **Extension Months** | **Other Than Small Entity** | **Small Entity** |
|---|---|---|---|
| ☐ | One Month | $120.00 | $60.00 |
| ☐ | Two Months | $450.00 | $225.00 |
| ☒ | Three Months | $1,020.00 | $510.00 |
| ☐ | Four Months | $1,590.00 | $795.00 |
| ☐ | Five Months | $2,160.00 | $1,080.00 |

09/08/2006 WABDELR1 00000013 231925   11354224
05 FC:2253      510.00 DA

**JA0161**

Case No. <u>11958/62</u>

**Fee Payment**

☐    Attached is a check for $_____ for the Petition fee.

☐    Attached is a credit card authorization form for $_____ for the Petition fee.

☒    Charge Petition fee to Deposit Account No. 23-1925. A duplicate copy of this Petition is attached.

☒    Charge any additional fee required or credit for any excess fee paid to Deposit Account No. 23-1925. A duplicate copy of this Petition is attached.

Respectfully submitted,

Dated: _September 6, 2006_

_____
Kent E. Genin
Registration No. 37,834
Attorney for Applicants

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610
(312)321-4200

- 2 -

| U.S.P.S. EXPRESS MAIL "POST OFFICE TO ADDRESSEE" SERVICE DEPOSIT INFORMATION | **BRINKS** |
|---|---|
| Express Mail Label No.: _____ EV 316 037 505 US | **HOFER** |
| Date of Deposit: _____ September 6, 2006 | **GILSON** |
| | **&LIONE** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:  J. Overton et al.

Appln. No.: 11/354,224                                  Examiner: Unknown

Filed: February 13, 2006                                Art Unit: 2144

For: Network Distributed Tracking Wire Transfer Protocol

Attorney Docket No:    11958/62

Mail Stop Missing Parts
Commissioner for Patents
P. O. Box 1450
Alexandria, VA  22313-1450

**TRANSMITTAL**

Sir:

**Attached is/are:**

☒  Transmittal (in duplicate); Petition and Fee for Extension of Time (in duplicate); Response to Notice to File Missing Parts (in duplicate); Copy of Notice to File Missing Parts; Second Preliminary Amendment; Request for Correction of Filing Receipt (in duplicate); Copy of Filing Receipt; Copy of Express Mail Receipt and Title Page of Application

☒  Return Receipt Postcard.

**Fee calculation:**

☐  No additional fee is required.

☐  Small Entity.

☒  An extension fee in an amount of $510 for a three-month extension of time under 37 C.F.R. § 1.136(a).

☐  A petition or processing fee in an amount of $_____ under 37 C.F.R. § 1.17(_____).

☐  An additional filing fee has been calculated as shown below:

| | Claims Remaining After Amendment | | Highest No. Previously Paid For | Present Extra | Small Entity | | or | Not a Small Entity | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Rate | Add'l Fee | | Rate | Add'l Fee |
| Total | | Minus | | | x $25= | | | x $50= | |
| Indep. | | Minus | | | X100= | | | x $200= | |
| First Presentation of Multiple Dep. Claim | | | | | +$180= | | | + $360= | |
| | | | | | Total | $ | | Total | $ |

**Fee payment:**

☐  A check in the amount of $_____ is enclosed.

☒  Please charge Deposit Account No. 23-1925 in the amount of $1075.00.  A copy of this Transmittal is enclosed for this purpose.

☐  Payment by credit card in the amount of $_____ (Form PTO-2038 is attached).

☒  The Director is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925.

Respectfully submitted,

_September 6, 2006_                                    _signature_
Date                                                  Kent E. Genin (Reg. No. 37,834)

**BRINKS HOFER GILSON & LIONE**
NBC Tower – Suite 3600, 455 N. Cityfront Plaza Drive, Chicago, IL  60611-5599

**BRINKS**
**HOFER**
**GILSON**
**&LIONE**

**JA0163**

"Express Mail" mailing label number <u>EV 316 037 505 US</u>

Date of Deposit: <u>September 6, 2006</u>

Our Case No. 11958/62

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

V. Overton et al.

Serial No.    11/354,224

Filing Date:    February 13, 2006

For    NETWORK DISTRIBUTED
TRACKING WIRE TRANSFER
PROTOCOL

Group Art Unit No.  2144

## REQUEST FOR CORRECTION OF FILING RECEIPT

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Attention:    Application Processing Division
Customer Correction Branch

Sir:

Applicants request the issuance of a corrected filing receipt (copy enclosed) for the above-referenced patent application, and in support of this request respectfully states:

The filing date is incorrectly listed as being "February 14, 2006" and should be listed as being --February 13, 2006--. Support for this correction is shown on the attached copies of the Express Mail receipt and Title Page of the application which was filed on February 13, 2006.

The Commissioner is hereby authorized to charge any fees required to Deposit Account No. 23-1925. A duplicate copy of this sheet is enclosed.

Respectfully submitted,

Kent E. Genin
Registration No. 37,834
Attorney for Applicants

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, ILLINOIS 60610
(312) 321-4200

JA0164





UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPL. NO. | FILING OR 371 (c) DATE | ART UNIT | FIL FEE REC'D | ATTY.DOCKET NO | DRAWINGS | TOT CLMS | IND CLMS |
|-----------|------------------------|----------|---------------|----------------|----------|----------|----------|
| 11/354,224 | 02/14/2006 | 2144 | 0.00 | 11958/62 | 12 | 16 | 3 |

00757
BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

**CONFIRMATION NO. 7078**

**FILING RECEIPT**

*OC000000018479720*

Date Mailed: 04/06/2006

Receipt is acknowledged of this regular Patent Application. It will be considered in its order and you will be notified as to the results of the examination. Be sure to provide the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION when inquiring about this application. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please mail to the Commissioner for Patents P.O. Box 1450 Alexandria Va 22313-1450. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections (if appropriate).**

**Applicant(s)**

       John K. Overton, Chicago, IL;
       Stephen W. Bailey, Chicago, IL;

**Assignment For Published Patent Application**

       Econnectix, LLC

**Power of Attorney:** None

**Domestic Priority data as claimed by applicant**

       This application is a CON of 09/661,222 09/13/2000
       which claims benefit of 60/153,709 09/14/1999 *
       and is a CIP of 09/111,896 07/08/1998 ABN
       (*)Data provided by applicant is not consistent with PTO records.

**Foreign Applications**

**If Required, Foreign Filing License Granted:** 03/16/2006

**The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is US11/354,224**

**Projected Publication Date:** To Be Determined - pending completion of Missing Parts

**Non-Publication Request:** No

JA0165

**Early Publication Request:** No

**Title**

Network distributed tracking wire transfer protocol

**Preliminary Class**

709

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

---

## LICENSE FOR FOREIGN FILING UNDER
### Title 35, United States Code, Section 184
### Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The

date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign Assets Control, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

### NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

BEST AVAILABLE COPY

JA0168



"Express Mail" mailing label number <u>EV 655 031 105 US</u>

Date of Deposit: <u>February 13, 2006</u>

<u>Our Case No.11958/62</u>

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## APPLICATION FOR UNITED STATES LETTERS PATENT

INVENTOR:        JOHN K. OVERTON
                        STEPHEN W. BAILEY

TITLE:            NETWORK DISTRIBUTED
                        TRACKING WIRE TRANSFER
                        PROTOCOL

ATTORNEY:      KENT E. GENIN
                        BRINKS HOFER GILSON & LIONE
                        P.O. BOX 10395
                        CHICAGO, ILLINOIS 60610
                        (312) 321-4200

JA0169

PTO/SB/06 (12-04)
Approved for use through 7/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**PATENT APPLICATION FEE DETERMINATION RECORD**
Substitute for Form PTO-875

Application or Docket Number
**11,354,224**

### APPLICATION AS FILED – PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE ($) | SMALL ENTITY FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY FEE ($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | | | | 150 | | | 300 |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | | | | 250 | | | 500 |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | | | | 100 | | | 200 |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 16 | minus 20 = | X$ 25 | | OR | X$50 | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 | minus 3 = | X$100 | | | X$200 | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR | | | | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | 180 | | | 360 | |
| | | | TOTAL | | | TOTAL | 1000 |

* If the difference in column 1 is less than zero, enter "0" in column 2.

### APPLICATION AS AMENDED – PART II

2-13-06

**AMENDMENT A**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE ($) | ADDI-TIONAL FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | ADDI-TIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | 16 | Minus ** 20 | = | X = | | OR | X = | |
| Independent (37 CFR 1.16(h)) | 3 | Minus *** 3 | = | X = | | OR | X = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | 180 | | OR | 360 | |
| | | | | TOTAL ADD'T FEE | | OR | TOTAL ADD'T FEE | |

**AMENDMENT B**

9-6-06

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDI-TIONAL FEE ($) | OR | RATE ($) | ADDI-TIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | 16 | Minus ** | = | X = | | OR | X = | |
| Independent (37 CFR 1.16(h)) | 3 | Minus *** | = | X = | | OR | X = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | N/A | | OR | N/A | |
| | | | | TOTAL ADD'T FEE | | OR | TOTAL ADD'T FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Page 1 of 3

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPL NO. | FILING OR 371 (c) DATE | ART UNIT | FIL FEE REC'D | ATTY.DOCKET NO | DRAWINGS | TOT CLMS | IND CLMS |
|---|---|---|---|---|---|---|---|
| 11/354,224 | 02/13/2006 | 2144 | 565 | 11958/62 | 12 | 16 | 3 |

00757
BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

**CONFIRMATION NO. 7078**
**UPDATED FILING RECEIPT**

*OC000000020453460*

Date Mailed: 09/15/2006

Receipt is acknowledged of this regular Patent Application. It will be considered in its order and you will be notified as to the results of the examination. Be sure to provide the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION when inquiring about this application. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please mail to the Commissioner for Patents P.O. Box 1450 Alexandria Va 22313-1450. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections (if appropriate).**

**Applicant(s)**

John K. Overton, Chicago, IL;
Stephen W. Bailey, Chicago, IL;

**Assignment For Published Patent Application**

Econnectix, LLC

**Power of Attorney:** None

**Domestic Priority data as claimed by applicant**

This application is a CON of 09/661,222 09/13/2000 PAT 7,103,640
which claims benefit of 60/153,709 09/14/1999 *
and is a CIP of 09/111,896 07/08/1998 ABN
(*)Data provided by applicant is not consistent with PTO records.

**Foreign Applications**

**If Required, Foreign Filing License Granted:** 03/16/2006

**The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is US11/354,224**

**Projected Publication Date:** 12/28/2006

**Non-Publication Request:** No

**Early Publication Request:** No

**JA0171**

** SMALL ENTITY **

**Title**

Network distributed tracking wire transfer protocol

**Preliminary Class**

709

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

---

## LICENSE FOR FOREIGN FILING UNDER
### Title 35, United States Code, Section 184
### Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted

under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign Assets Control, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).



**United States Patent and Trademark Office**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(c) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 11/354,224 | 02/13/2006 | John K. Overton | 11958/62 |

**CONFIRMATION NO. 7078**

757
BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

**Title:** Network distributed tracking wire transfer protocol

**Publication No.** US-2007-0011267-A1
**Publication Date:** 01/11/2007

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Office of Public Records. The Office of Public Records can be reached by telephone at (703) 308-9726 or (800) 972-6382, by facsimile at (703) 305-8759, by mail addressed to the United States Patent and Trademark Office, Office of Public Records, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently http://pair.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 703-305-3028.

_____

Pre-Grant Publication Division, 703-605-4283

JA0174

11354224

PLUS Search Results for S/N 11354224, Searched Wed Oct 15 16:20:05 EDT 2008
The Patent Linguistics Utility System (PLUS) is a USPTO automated search system
for U.S. Patents from 1971 to the present PLUS is a query-by-example search system which
produces a list of patents that are most closely related linguistically to the application
searched. This search was prepared by the staff of the Scientific and Technical Information
Center, SIRA.

| | |
|---|---|
| 5303367 99 | 5295222 94 |
| 5890166 99 | |
| 5191522 98 | |
| 5459860 98 | |
| 5504890 98 | |
| 5539870 98 | |
| 5581758 98 | |
| 5748929 98 | |
| 5875297 98 | |
| 5898678 98 | |
| 6055515 98 | |
| 6088687 98 | |
| 4479196 96 | |
| 4888714 96 | |
| 5010478 96 | |
| 5197005 96 | |
| 5249300 96 | |
| 5276770 96 | |
| 5283894 96 | |
| 5293565 96 | |
| 5315709 96 | |
| 5347524 96 | |
| 5386571 96 | |
| 5611076 96 | |
| 5625642 96 | |
| 5626145 96 | |
| 5713014 96 | |
| 5729738 96 | |
| 5873089 96 | |
| 6185190 96 | |
| 4340857 94 | |
| 4408271 94 | |
| 4409593 94 | |
| 4774661 94 | |
| 4782325 94 | |
| 4811317 94 | |
| 4814971 94 | |
| 4853842 94 | |
| 4894771 94 | |
| 4970678 94 | |
| 4991018 94 | |
| 5008786 94 | |
| 5014208 94 | |
| 5193182 94 | |
| 5193183 94 | |
| 5201047 94 | |
| 5237662 94 | |
| 5262761 94 | |
| 5276816 94 | |

11354224

PLUS Search Results for S/N 11354224, Searched Wed Oct 15 16:20:08 EDT 2008
The Patent Linguistics Utility System (PLUS) is a USPTO automated search system
for U.S. Patents from 1971 to the present PLUS is a query-by-example search system which
produces a list of patents that are most closely related linguistically to the application
searched. This search was prepared by the staff of the Scientific and Technical Information
Center, SIRA.

| | |
|---|---|
| 6502134 85 | 20080120125 74 |
| 7177642 85 | |
| 7233978 85 | |
| 20020032787 85 | |
| 20050009520 85 | |
| 20070011267 85 | |
| 6983139 75 | |
| 20020055924 75 | |
| 20020082954 75 | |
| 20030041135 75 | |
| 20030051042 75 | |
| 20030088693 75 | |
| 20040023666 75 | |
| 20060015637 75 | |
| 20060200541 75 | |
| 20060277282 75 | |
| 20070124721 75 | |
| 20080028082 75 | |
| 20080052276 75 | |
| 5873077 74 | |
| 5940289 74 | |
| 6154745 74 | |
| 6625158 74 | |
| 6636596 74 | |
| 6665730 74 | |
| 6718173 74 | |
| 6885860 74 | |
| 6959302 74 | |
| 7010112 74 | |
| 7103640 74 | |
| 7120675 74 | |
| 7426421 74 | |
| 20020038300 74 | |
| 20030050832 74 | |
| 20030061058 74 | |
| 20030097274 74 | |
| 20030115202 74 | |
| 20040185871 74 | |
| 20040203846 74 | |
| 20050010663 74 | |
| 20050138173 74 | |
| 20050243989 74 | |
| 20060003766 74 | |
| 20060093113 74 | |
| 20060135177 74 | |
| 20060195565 74 | |
| 20070130153 74 | |
| 20070149213 74 | |
| 20070150901 74 | |

JA0176



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 | John K. Overton | 11958/62 | 7078 |

757          7590          10/28/2008
BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

| EXAMINER |
|---|
| GILLIS, BRIAN J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2441 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/28/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**JA0177**

| | Application No. | Applicant(s) | |
|---|---|---|---|
| ***Office Action Summary*** | 11/354,224 | OVERTON ET AL. | |
| | Examiner | Art Unit | |
| | Brian J. Gillis | 2441 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>13 February 2006 and 06 September 2006</u>.

2a)☐ This action is **FINAL.**    2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>17-32</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>17-32</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>13 February 2006</u> is/are:  a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

**JA0178**

Application/Control Number: 11/354,224                                      Page 2
Art Unit: 2441

## DETAILED ACTION

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly
claiming the subject matter which the applicant regards as his invention.

Claims 17-19, 21, 22, and 30-32 are rejected under 35 U.S.C. 112, second

paragraph, as being indefinite for failing to particularly point out and distinctly claim the

subject matter which applicant regards as the invention.

Claim 17 recites the limitation "the distributed data collection" in line 9.  There is

insufficient antecedent basis for this limitation in the claim.

Claim 21 recites the limitation "the queried location server" in line 2.  There is

insufficient antecedent basis for this limitation in the claim.

Claim 22 recites the limitation "the entities" in line 3.  There is insufficient

antecedent basis for this limitation in the claim.

Claim 30 recites the limitation "the queried location server" in lines 7-8 and 12-

13.  There is insufficient antecedent basis for this limitation in the claim.

Claim 30 recites the limitation "the query" in lines 8-9, 11, 14, and 15.  There is

insufficient antecedent basis for this limitation in the claim.

Claim 31 recites the limitation "the queried location server" in line 3.  There is

insufficient antecedent basis for this limitation in the claim.

Claim 31 recites the limitation "the query" in line 4.  There is insufficient

antecedent basis for this limitation in the claim.

As for claims 18, 19, 22, 31, and 32 which claim dependency from claims 17, 21,

Application/Control Number: 11/354,224                                   Page 3
Art Unit: 2441

and 30 these claims are also rejected under 35 U.S.C. 112 second paragraph per the

rationale of claims 17, 21, and 30.

### Claim Rejections - 35 USC § 101

35 U.S.C. 101 reads as follows:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of
matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the
conditions and requirements of this title.

Claims 17-29 are rejected under 35 U.S.C. 101 because the claimed invention is

directed to non-statutory subject matter. The claimed systems of 17-19 and 20-29 are

software per se. Please refer to MPEP 2106.

### Claim Rejections - 35 USC § 102

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(e) the invention was described in (1) an application for patent, published under section 122(b), by
another filed in the United States before the invention by the applicant for patent or (2) a patent
granted on an application for patent by another filed in the United States before the invention by the
applicant for patent, except that an international application filed under the treaty defined in section
351(a) shall have the effects for purposes of this subsection of an application filed in the United States
only if the international application designated the United States and was published under Article 21(2)
of such treaty in the English language.

Claims 17-32 are rejected under 35 U.S.C. 102(e) as being anticipated by

Bestavros et al (US Patent #6,370,584).

(Claim 17 discloses) a system for managing data stored in a distributed network,

the system comprising: a data repository configured to store data, wherein the data is

associated with an identifier string (Bestavros et al shows a group of hosts forms a

repository which contains data associated to clients requests (column 2, line 64 -

column 3, line 13).); a data location server network comprising a plurality of data

Application/Control Number: 11/354,224                                    Page 4
Art Unit: 2441

location servers, at least one of the plurality of data location servers containing location

information associated with the identifier string, wherein each of the plurality of data

location servers comprises a portion of the location information in the distributed data

collection based on a hash function used to organize the location information across the

plurality of data location servers (Bestavros et al shows each host contains information

on rerouting information and the information is based on a hash function (column 2, line

64 - column 3, line 54)).

(Claim 18 discloses) the system of claim 17, wherein the location information

comprises any portion of a hash table generated with the hash function (Bestavros et al

shows the location information is a value based on the hash function (column 3, lines

22-35)).

(Claim 19 discloses) the system of claim 17, wherein the data repository

comprises a plurality of data repositories and wherein each of the plurality of data

location servers are configured to be responsive to a request to store data in a data

repository to execute the hash function and store the data on one of the plurality of data

repositories in the distributed network based on a result of the hash function (Bestavros

et al shows each host receives requests and can route the requests to another host

according to hash values obtained from a hash function (column 3, lines 22-54)).

(Claim 20 discloses) a system for managing location information and providing

location information to location queries, the system comprising: a location server

configured to recognize a transfer protocol comprising an identifier and at least one

location associated with the identifier, wherein the identifier uniquely specifies an entity

Application/Control Number: 11/354,224                                    Page 5
Art Unit: 2441

and wherein each location specifies a location of data in a network pertaining to the
entity (Bestavros et al shows a host receives a request for data with the requestors
address which is used to specify where to route the request to (column 2, line 64 –
column 3, line 54).); wherein the location server contains location information
corresponding to at least one entity, the location information formatted according to the
transfer protocol (Bestavros et al shows each host has a table containing where
requests are routed to (column 3, lines 36-54).); and programming logic stored on the
location server responsive to a location query identifying a desired entity to return a
location message, the location message comprising locations associated with the
desired entity, wherein the location server returns the location message if the location
server contains location information for the desired entity (Bestavros et al shows a host
is able to service or redirect a request (column 3, lines 14-21)).

        (Claim 21 discloses) the system of claim 20, wherein the location server returns a
redirect message if the queried location server lacks location information for the desired
entity, the redirect message comprising a list of at least one other location server known
to have location information relevant to the location query (Bestavros et al shows the
host reroutes the request if the hose does not have the data (column 3, lines 14-54)).

        (Claim 22 discloses) the system of claim 21, wherein the list of at least one other
location server comprises a list of location servers in the plurality of location servers and
a corresponding list of each of the entities having location information on the respective
location servers (Bestavros et al shows each host has a table of where to route the
requests to (column 3, lines 14-54)).

Application/Control Number: 11/354,224                                Page 6
Art Unit: 2441

(Claim 23 discloses) the system of claim 20, wherein each of the location servers stores at least a portion of a total amount of location information on a persistent storage device (Bestavros et al shows each device stores a table (column 3, lines 36-54)).

(Claim 24 discloses) the system of claim 20, wherein the location information in the location server is maintained in an indexed location store (Bestavros et al shows location information is stored in a table (column 3, lines 36-54)).

(Claim 25 discloses) the system of claim 24, wherein the location store comprises a string store indexed by a hash table (Bestavros et al shows the data may include where previous requests are rerouted and includes hash values (column 3, lines 21-54)).

(Claim 26 discloses) the system of claim 24, wherein the location store comprises a string store indexed by a hash table distributed across a plurality of clients (Bestavros et al shows the hosts are computers which are clients (column 3, lines 36-54)).

(Claim 27 discloses) the system of claim 24, wherein the location store comprises a string store indexed by a hash table distributed across a plurality of servers (Bestavros et al shows the table is stored by hosts (column 3, lines 36-54)).

(Claim 28 discloses) the system of claim 24, wherein the location query identifying the desired entity comprises a unique identifier for the desired entity, and wherein the programming logic stored on the location server further comprises programming logic for applying an index function to the identifier to retrieve at least a portion of the locations associated with the unique identifier in the location store

Application/Control Number: 11/354,224                                    Page 7
Art Unit: 2441

(Bestavros et al shows the request is a hash value which may be used to reroute the request if needed (column 3, lines 21-54)).

(Claim 29 discloses) the system of claim 28, wherein the location store comprises a string store and the index function comprises a hash function (Bestavros et al shows the data may include where previous requests are rerouted and includes hash values (column 3, lines 21-54)).

(Claim 30 discloses) a method of handling location queries in a network, the network comprising a plurality of location servers containing location information correlating each of a plurality of identifiers with at least one location, the method comprising: receiving a location query from a client at one of the plurality of location servers, the location query requesting an identifier's location (Bestavros et al shows a host receives a request (column 3, lines 3-13).); sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query (Bestavros et al shows a request is services by a host if the host has the information (column 3, lines 14-54).); and sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising containing location information relevant to the entity identified in the query (Bestavros et al shows the request is redirected if the host is not able to service the request (column 3, lines 14-54)).

Application/Control Number: 11/354,224                                    Page 8
Art Unit: 2441

(Claim 31 discloses) the method of claim 30, further comprising applying information in the location query from the client to an indexing function to determine if the queried location server contains location information relevant to the entity identified in the query (Bestavros et al shows the request has the address of the client which is used to process the hash function (column 3, lines 14-54)).

(Claim 32 discloses) the method of claim 31, wherein each of the plurality of location servers comprises an indexed table of identifiers and associated locations, and wherein applying information in the location query comprises applying an identifier in the location query to a hash function (Bestavros et al shows each host stores a table and also processes the request in a hash function (column 3, lines 14-54)).

### Double Patenting

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees.   A nonstatutory obviousness-type double patenting rejection is appropriate where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422

Application/Control Number: 11/354,224                                                Page 9
Art Unit: 2441

F.2d 438, 164 USPQ 619 (CCPA 1970); and  *In re Thorington*, 418 F.2d 528, 163

USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d)

may be used to overcome an actual or provisional rejection based on a nonstatutory

double patenting ground provided the conflicting application or patent either is shown to

be commonly owned with this application, or claims an invention made as a result of

activities undertaken within the scope of a joint research agreement.

Effective January 1, 1994, a registered attorney or agent of record may sign a

terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with

37 CFR 3.73(b).

Claims 17, 20, and 30 are rejected on the ground of nonstatutory obviousness-

type double patenting as being unpatentable over claim 18 of U.S. Patent No.

7,103,640.  Although the conflicting claims are not identical, they are not patentably

distinct from each other because claims 17, 20, and 30 cover the scope of the claims in

U.S. Patent 7,103,640.

### Conclusion

The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure. Chung et al (US Patent #6,470,389) teaches hosting a network

service on a cluster of servers.  Low et al (US Patent #6,131,095) teaches accessing a

target entity over a communications network.

JA0186

Application/Control Number: 11/354,224                                    Page 10
Art Unit: 2441

    Any inquiry concerning this communication or earlier communications from the examiner should be directed to Brian J. Gillis whose telephone number is (571)272-7952. The examiner can normally be reached on M-F 7:30-5:00.

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Rupal Dharia can be reached on 571-272-3880. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

    Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Brian J Gillis
Examiner
Art Unit 2441

/B. J. G./
Examiner, Art Unit 2441
10/16/2008

/Jason D Cardone/
Supervisory Patent Examiner, Art Unit 2445

| *Notice of References Cited* | Application/Control No.<br>11/354,224 | Applicant(s)/Patent Under<br>Reexamination<br>OVERTON ET AL. | |
|---|---|---|---|
| | Examiner<br>Brian J. Gillis | Art Unit<br>2441 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-6,370,584 | 04-2002 | Bestavros et al. | 709/238 |
| * | B | US-6,470,389 | 10-2002 | Chung et al. | 709/227 |
| * | C | US-6,131,095 | 10-2000 | Low et al. | 707/10 |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 10162008

**JA0188**

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11354224 | OVERTON ET AL. |
| | Examiner | Art Unit |
| | Brian J Gillis | 2441 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/16/2008 | | | | | | | |
| | 1 | - | | | | | | | |
| | 2 | - | | | | | | | |
| | 3 | - | | | | | | | |
| | 4 | - | | | | | | | |
| | 5 | - | | | | | | | |
| | 6 | - | | | | | | | |
| | 7 | - | | | | | | | |
| | 8 | - | | | | | | | |
| | 9 | - | | | | | | | |
| | 10 | - | | | | | | | |
| | 11 | - | | | | | | | |
| | 12 | - | | | | | | | |
| | 13 | - | | | | | | | |
| | 14 | - | | | | | | | |
| | 15 | - | | | | | | | |
| | 16 | - | | | | | | | |
| | 17 | ✓ | | | | | | | |
| | 18 | ✓ | | | | | | | |
| | 19 | ✓ | | | | | | | |
| | 20 | ✓ | | | | | | | |
| | 21 | ✓ | | | | | | | |
| | 22 | ✓ | | | | | | | |
| | 23 | ✓ | | | | | | | |
| | 24 | ✓ | | | | | | | |
| | 25 | ✓ | | | | | | | |
| | 26 | ✓ | | | | | | | |
| | 27 | ✓ | | | | | | | |
| | 28 | ✓ | | | | | | | |
| | 29 | ✓ | | | | | | | |
| | 30 | ✓ | | | | | | | |
| | 31 | ✓ | | | | | | | |
| | 32 | ✓ | | | | | | | |

Part of Paper No. : 10162008

**JA0189**

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11354224 | OVERTON ET AL. |
| | Examiner | Art Unit |
| | Brian J Gillis | 2441 |

| SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| 709 | 217 | 10/16/2008 | BJG |
| 709 | 223 | 10/16/2008 | BJG |
| 709 | 238 | 10/16/2008 | BJG |

| SEARCH NOTES | | |
|---|---|---|
| Search Notes | Date | Examiner |
| Ordered PLUS search | 10/16/2008 | BJG |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |

| | |
|---|---|
| | |



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 7078**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 **RULE** | 709 | 2441 | 11958/62 |

**APPLICANTS**
  John K. Overton, Chicago, IL;
  Stephen W. Bailey, Chicago, IL;

**\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
    This application is a CON of 09/661,222 09/13/2000 PAT 7,103,640
      which claims benefit of 60/153,709 09/14/1999       *
      and is a CIP of 09/111,896 07/08/1998 ABN
        (*)Data provided by applicant is not consistent with PTO records.

**\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**\*\* IF REQUIRED, FOREIGN FILING LICENSE GRANTED \*\* \*\* SMALL ENTITY \*\***
    03/16/2006

| Foreign Priority claimed | ☐ Yes ☑ No | | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met | ☐ Yes ☑ No | ☐ Met after Allowance | | | | | |
| Verified and Acknowledged | /BRIAN J GILLIS/ Examiner's Signature | BJG Initials | | IL | 12 | 16 | 3 |

**ADDRESS**

  BRINKS HOFER GILSON & LIONE
  P.O. BOX 10395
  CHICAGO, IL 60610
  UNITED STATES

**TITLE**

  Network distributed tracking wire transfer protocol

| FILING FEE RECEIVED 565 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

JA0191

EAST Search History

EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 1 | hash near10 location near10 (identifier adj3 string) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 08:23 |
| L2 | 1 | hash near20 location near20 (identifier adj3 string) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 08:23 |
| L3 | 1 | hash near20 location near20 (identifier near5 string) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 08:23 |
| L4 | 229 | hash near20 location near20 identifier | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 08:24 |
| L5 | 90 | hash near5 location near5 identifier | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 08:24 |
| L6 | 17 | 5 and (@ad<="20000913" @rlad<="20000913") | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 08:24 |
| L7 | 15 | 5 and (@ad<="19990914" @rlad<="19990914") | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 08:25 |
| L8 | 5 | ("5764906" "6418441" "6377986" "5475817" "6131095").pn. | USPAT | OR | OFF | 2008/10/16 09:52 |

**JA0192**

EAST Search History

| L9 | 6 | ((location identifi$6) near5 string) near10 (query request) near10 (location address) same hash | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 10:23 |
|----|---|---|---|---|---|---|
| L10 | 95 | (hash adj3 function) near20 (balanc$3 distribut$3 spread $3) near20 (address$3 location) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 10:32 |
| L11 | 16 | 10 and (@ad<="19980708" @rlad<="19980708") | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 10:33 |
| L12 | 0 | (hash adj3 function) near20 (balanc$3 distribut$3 spread $3) near20 (address$3 location) same (redirect$3 rerout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 10:39 |
| L13 | 2 | (hash adj3 function) near20 (address$3 location) near20 (redirect$3 rerout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 10:40 |
| L14 | 11 | (hash adj3 function) near20 (redirect$3 rerout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 10:41 |
| L15 | 3 | (US-6470389-$ or US-6370584-$ or US-6167427-$).did. | USPAT | OR | OFF | 2008/10/16 12:39 |
| L16 | 1 | 15 and repository | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 12:39 |
| L17 | 2 | 15 and table | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 13:04 |

**JA0193**

EAST Search History

| L20 | 6326 | 709/217.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 15:10 |
|-----|------|---------------|---------------------------------------------------|----|-----|-------------------|
| L21 | 7885 | 709/223.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 15:10 |
| L22 | 3775 | 709/238.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/16 15:10 |
| S1 | 2 | "20070011267" | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/15 13:06 |
| S2 | 6 | "7103640" | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2008/10/15 15:04 |

10/16/2008 3:11:46 PM
C:\Documents and Settings\bgillis1\My Documents\EAST\Workspaces\11354224.wsp

JA0194

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that this correspondence is being filed electronically with the U.S. Patent and Trademark Office on

Date: _March 2, 2009_    Name: _Sara E. Vessely_    Signature: _Sara E. Vessely_

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:  John K. Overton et al.

Appln. No.:  11/354,224

Filed:  February 13, 2006

For:  NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

Attorney Docket No:  11958/62

Examiner:  Brian J. Gillis

Art Unit:  2441

Confirmation No.: 7078

## INFORMATION DISCLOSURE STATEMENT

MAIL STOP AMENDMENT
Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

In accordance with the duty of disclosure under 37 CFR §1.56 and §§1.97-1.98, and more particularly in accordance with 37 CFR §1.97(c), Applicant hereby cites the following reference(s):

| U.S. PATENT DOCUMENTS | | |
|---|---|---|
| DOCUMENT NO. | DATE | NAME |
| 4,553,261 | 11/1985 | Froessl |
| 4,636,858 | 01/1987 | Hague |
| 4,728,978 | 03/1988 | Inoue et al. |
| 4,800,488 | 01/1989 | Agrawal et al. |
| 4,825,406 | 04/1989 | Bean et al. |
| 4,835,372 | 05/1989 | Gombrich et al. |
| 4,914,571 | 04/1990 | Baratz et al. |
| 5,008,700 | 04/1991 | Okamoto |
| 5,124,814 | 06/1992 | Takahashi et al. |
| 5,193,185 | 03/1993 | Lanter |
| 5,208,623 | 05/1993 | Takahashi |
| 5,291,399 | 03/1994 | Chaco |
| 5,319,401 | 06/1994 | Hicks |
| 5,347,600 | 09/1994 | Barnsley |
| 5,384,643 | 01/1995 | Inga et al. |
| 5,414,841 | 05/1995 | Bingham et al. |
| 5,454,101 | 09/1995 | Mackay et al. |

BRINKS
HOFER
GILSON
&LIONE

JA0195

Appln. No. 11/354,224

Attorney Docket No. 11958/62

| | | |
|---|---|---|
| 5,455,648 | 10/1995 | Kazami |
| 5,475,817 | 12/1995 | Waldo et al. |
| 5,479,654 | 12/1995 | Squibb |
| 5,491,511 | 02/1996 | Olde |
| 5,499,113 | 03/1996 | Tsuboi |
| 5,522,077 | 05/1996 | Cuthbert et al. |
| 5,537,547 | 07/1996 | Chan et al. |
| 5,550,981 | 08/1996 | Bauer et al. |
| 5,551,027 | 08/1996 | Choy et al. |
| 5,557,790 | 09/1996 | Bingham et al. |
| 5,560,005 | 09/1996 | Hoover et al. |
| 5,576,952 | 11/1996 | Stutman et al. |
| 5,579,067 | 11/1996 | Wakabayashi |
| 5,610,653 | 03/1997 | Abecassis |
| 5,617,570 | 04/1997 | Russell et al. |
| 5,625,841 | 04/1997 | Dawkins et al. |
| 5,649,247 | 07/1997 | Itoh et al. |
| 5,664,170 | 09/1997 | Taylor |
| 5,669,029 | 09/1997 | Fyson et al. |
| 5,724,575 | 03/1998 | Hoover et al. |
| 5,740,428 | 04/1998 | Mortimore et al. |
| 5,764,889 | 06/1998 | Ault et al. |
| 5,764,906 | 06/1998 | Edelstein et al. |
| 5,774,670 | 06/1998 | Montulli |
| 5,781,725 | 07/1998 | Saito |
| 5,784,565 | 07/1998 | Lewine |
| 5,802,518 | 09/1998 | Karaev et al. |
| 5,809,161 | 09/1998 | Auty |
| 5,809,331 | 09/1998 | Staats et al. |
| 5,809,495 | 09/1998 | Loaiza |
| 5,813,006 | 09/1998 | Polnerow et al. |
| 5,832,487 | 11/1998 | Olds et al. |
| 5,848,246 | 12/1998 | Gish |
| 5,864,482 | 01/1999 | Hazama |
| 5,872,973 | 02/1999 | Mitchell et al. |
| 5,875,302 | 02/1999 | Obhan |
| 5,903,889 | 05/1999 | De la Huerga et al. |
| 5,907,837 | 05/1999 | Ferrel et al. |
| 5,913,210 | 06/1999 | Call |
| 5,915,240 | 06/1999 | Karpf |
| 5,918,214 | 06/1999 | Perkowski |
| 5,920,702 | 07/1999 | Bleidt et al. |
| 5,940,844 | 08/1999 | Cahill et al. |
| 5,950,173 | 09/1999 | Perkowski |
| 5,961,610 | 10/1999 | Kelly et al. |
| 5,966,705 | 10/1999 | Koneru et al. |
| 5,974,124 | 10/1999 | Schlueter, Jr. et al. |
| 5,974,409 | 10/1999 | Sanu et al. |
| 5,978,773 | 11/1999 | Hudetz et al. |
| 5,987,519 | 11/1999 | Peifer et al. |
| 5,995,965 | 11/1999 | Experton |

BRINKS
HOFER
GILSON
&LIONE

JA0196

Appln. No. 11/354,224                                      Attorney Docket No. 11958/62

| 6,032,175 | 02/2000 | Fletcher et al. |
| 6,047,332 | 04/2000 | Viswanathan et al. |
| 6,055,544 | 04/2000 | DeRose et al. |
| 6,058,193 | 05/2000 | Cordery et al. |
| 6,092,189 | 07/2000 | Fisher et al. |
| 6,108,787 | 08/2000 | Anderson et al. |
| 6,131,095 | 10/2000 | Low et al. |
| 6,154,738 | 11/2000 | Call |
| 6,188,766 | 02/2001 | Kocher |
| 6,201,931 | 03/2001 | Cipolla et al. |
| 6,202,070 | 03/2001 | Nguyen et al. |
| 6,209,095 | 03/2001 | Anderson et al. |
| 6,212,280 | 04/2001 | Howard, Jr. et al. |
| 6,377,986 | 04/2002 | Philyaw et al. |
| 6,418,441 | 07/2002 | Call |
| 6,438,652 | 08/2002 | Jordan et al. |
| 6,463,454 | 10/2002 | Lumelsky et al. |
| 6,466,980 | 10/2002 | Lumelsky et al. |
| 6,578,068 | 06/2003 | Bowman-Amuah |
| 6,711,408 | 03/2004 | Raith |
| 7,103,640 | 09/2006 | Overton et al. |
| 7,233,978 | 06/2007 | Overton et al. |
| 2002/0112048 | 08/2002 | Gruyer et al. |
| 2003/0065653 A1 | 04/2003 | Overton et al. |
| 2004/0205055 A1 | 10/2004 | Overton et al. |
| 2008/0005275 A1 | 01/2008 | Overton et al. |
| 09/111,896 | 07/1998 | Overton et al. |

| FOREIGN PATENT DOCUMENTS | | |
|---|---|---|
| DOCUMENT NO. | DATE | COUNTRY |
| EP 0 568 161 A1 | 01/1992 | Europe |
| EP 0 889 422 A2 | 01/1999 | Europe |
| EP 0 919 912 A2 | 06/1999 | Europe |
| WO 86/05610 | 09/1986 | WIPO |
| WO 98/15910 | 04/19998 | WIPO |
| WO 98/00624 | 07/1998 | WIPO |
| WO 98/31138 | 07/1998 | WIPO |
| WO 00/032526 | 01/2000 | WIPO |

| OTHER ART – NON PATENT LITERATURE DOCUMENTS |
|---|
| Communication relating to the results of the Partial International Search Report for PCT Application No. PCT/US01/18013 dated April 15, 2002. |
| D.G. Bourke et al., Programmable Module and Circuit for Machine-Readable Unique Serial Number, IBM Technical Disclosure Bulletin, Vol. 27, No. 4A, Sep. 1, 1984, pp. 1942-1944. |
| Kleinholz, L. et al., Supporting Cooperative Medicine: The Bermed Project, IEEE Multimedia, Vol. 1, No. 4, Dec. 21, 1994, pp. 44-53. |
| Method for Network Naming and Routing, IBM Technical Disclosure Bulletin, Vol. 37, No. 9, Sep. 1, 1994, pp. 255-256. |
| Minimizing Locking to Access Global Shared Data, IBM Technical Disclosure Bulletin, Feb. 1995, pp. 619-622. |

BRINKS
HOFER
GILSON
&LIONE

- 3 -

JA0197

Appln. No. 11/354,224                                          Attorney Docket No. 11958/62

| |
|---|
| R. Muniz et al., A Robust Software Barcode Reader Using The Hough Transform, Abstract, 1999, International Conference on Information Intelligence and Systems (Oct. 31 to Nov. 3, 1999). |
| D. Fresonke, In-fab Identification of Silicon Wafers With Clean, Laser Marked Barcodes, Abstract, 1994, IEEE/Semi Advanced Semiconductor Manufacturing Conference and Workshop (Nov. 14 to Nov. 16, 1994). |
| T. Sriram et al., Applications of Barcode Technology In Automated Storage and Retrieval Systems, Abstract, Proceedings of the 1996 IEEE IECON 22nd International Conference on Industrial Electrodes (Aug. 5 to Aug. 10, 1996). |
| V.L. Callaghan et al., Structures and Metrics for Image Storage and Interchange, Journal of Electronic Imaging, Vol. 2, No. 2, Apr. 1, 1993, pp. 126-137. |
| Beitz et al., Service Location in an Open Distributed Environment, Second International Workshop on Services in Distributed and Networked Environments, IEEE Computer Society Press, June 1995, pp. 28-34. |
| T. Baer, Tales from the Network, Computerworld Healthcare Journal, www.computerworld.com/news/1996/story/0,11280,14557,00.html, Oct. 1, 1996, pp. 1-9. |

Applicant is enclosing Form PTO-1449 (three sheets), along with a copy of each listed reference for which a copy is required under 37 CFR §1.98(a)(2). Pursuant to the undersigned attorney's obligation and duties under 37 C.F.R. §§ 1.56 and 1.98(a)(3) and (c), either English language abstracts, partial translations, or full translations are included for patent documents which are not in English for the express purpose of providing a concise explanation of the references to the Patent and Trademark Office with the opportunity to evaluate the same. Applicant respectfully requests the Examiner's consideration of the above reference(s) and entry thereof into the record of this application.

Pursuant to 35 U.S.C. 120, the above-identified application is a continuation application that relies on the priority of U.S. Patent No. 7,103,640 (U.S. Patent Application Serial No. 09/661,222) filed on September 13, 2000. A copy of at least some of the non-patent literature, foreign patents and foreign patent publications cited in the enclosed PTO-1449 have been previously cited and filed with the US Patent and Trademark Office in U.S. patent application no. 09/661,222 filed on September 13, 2000. Thus, pursuant to 37 CFR 1.98(d), copies of the previously cited and filed non-patent literature, foreign patents and foreign patent publications that are cited in the enclosed PTO-1449 are not included herewith. Instead, applicant respectfully requests the Examiner to review the copies of the non-patent literature, foreign patents and

BRINKS
HOFER
GILSON
&LIONE

- 4 -

foreign patent publications included in the file history of the U.S. patent application no. 09/661,222 filed on September 13, 2000. Copies of any non-patent literature, foreign patents and foreign patent publications cited in the enclosed PTO-1449 that were not previously cited and filed in U.S. patent application no. 09/661,222 filed on September 13, 2000, are enclosed herewith. Also, pursuant to MPEP 609(a)(II), copies of any non-patent literature, foreign patents and foreign patent publications that were cited in an international application under the Patent Cooperation Treaty and are also cited in the enclosed PTO-1449.

### Commonly Owned Applications

Pursuant to 37 CFR §1.56, Applicant and Applicant's attorney hereby make of record in the above-identified patent application the existence of the below described activities in the below-identified commonly owned co-pending published patent applications, which are related to the above-identified patent application. **Applicant respectfully requests the Examiner to review the claims and the prosecution history, including any Office Actions issued by the U.S. Patent and Trademark Office, for the following patents and patent applications:**

U.S. Patent Application Serial No. 09/111,896 – Non-Final Office Action mailed March 30, 2000; Final Office Action mailed September 12, 2001; Now Abandoned;

U.S. Patent No. 7,103,640 – U.S. Patent Application Serial No. 09/661,222 – Non-Final Office Action mailed February 25, 2004; Response filed February 25, 2004; Non-Final Office Action mailed February 9, 2005; Response filed August 9, 2005; Notice of Allowance mailed November 14, 2005;

U.S. Patent No. 7,233,978 – U.S. Patent Publication No. US 2002/0032787 A1 - U.S. Patent Application Serial No. 09/872,736 – Non-Final Office Action mailed August 22, 2005; Response filed February 22, 2006; Final Office Action mailed June 1, 2006; Request for Continued Examination filed November 1, 2006; Notice of Allowance mailed February 13, 2007;

U.S. Patent Publication No. US 2003/0065653 A1 – U.S. Patent

BRINKS
HOFER
GILSON
&LIONE

Appln. No. 11/354,224                                    Attorney Docket No. 11958/62

Application Serial No. 10/102,179 filed March 19, 2002 – Non-Final Office Action mailed February 27, 2003; Now Abandoned;

U.S. Patent Publication No. US 2008/0005275 A1 – U.S. Patent Application Serial No. 11/803,332 filed May 14, 2007; and

U.S. Patent Publication No. US 2004/0205055 A1 – U.S. Patent Application Serial No. 10/646,350 – Non-Final Office Action mailed June 21, 2007; Response filed November 21, 2007; Response filed February 28, 2008; Final Office Action mailed May 28, 2008; Response filed September 19, 2008; Non-Final Office Action mailed February 3, 2009.

By submitting this Statement, Applicant is attempting to fully comply with the duty of candor and good faith mandated by 37 CFR §1.56. As such, this Statement is not intended to constitute an admission that any of the enclosed references, or other information referred to therein, constitutes "prior art" or is otherwise "material to patentability," as that phrase is defined in 37 CFR §1.56(a).

Applicant has calculated a processing fee in the amount of $180.00 to be due under 37 CFR §1.17(p) in connection with the filing of this Information Disclosure Statement. Applicant has enclosed a check covering this fee, or authorized charging the fee to a deposit account or credit card, as indicated in the Transmittal accompanying this Information Disclosure Statement.

Respectfully submitted,

March 2, 2009
Date

Michael E. Hussey
(Reg. No. 63,265)

JA0200

| FORM PTO-1449 | | | SERIAL NO. 11/354,224 | CASE NO. 11958/62 |
|---|---|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | | | FILING DATE February 13, 2006 | GROUP ART UNIT 2441 |
| (use several sheets if necessary) | APPLICANT(S): John K. Overton et al. | | | CONFIRMATION NO. 7078 |

**REFERENCE DESIGNATION**      **U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | A1 | 4,553,261 | 11/1985 | Froessl | | |
| | A2 | 4,636,858 | 01/1987 | Hague | | |
| | A3 | 4,728,978 | 03/1988 | Inoue et al. | | |
| | A4 | 4,800,488 | 01/1989 | Agrawal et al. | | |
| | A5 | 4,825,406 | 04/1989 | Bean et al. | | |
| | A6 | 4,835,372 | 05/1989 | Gombrich et al. | | |
| | A7 | 4,914,571 | 04/1990 | Baratz et al. | | |
| | A8 | 5,008,700 | 04/1991 | Okamoto | | |
| | A9 | 5,124,814 | 06/1992 | Takahashi et al. | | |
| | A10 | 5,193,185 | 03/1993 | Lanter | | |
| | A11 | 5,208,623 | 05/1993 | Takahashi | | |
| | A12 | 5,291,399 | 03/1994 | Chaco | | |
| | A13 | 5,319,401 | 06/1994 | Hicks | | |
| | A14 | 5,347,600 | 09/1994 | Barnsley | | |
| | A15 | 5,384,643 | 01/1995 | Inga et al. | | |
| | A16 | 5,414,841 | 05/1995 | Bingham et al. | | |
| | A17 | 5,454,101 | 09/1995 | Mackay et al. | | |
| | A18 | 5,455,648 | 10/1995 | Kazami | | |
| | A19 | 5,475,817 | 12/1995 | Waldo et al. | | |
| | A20 | 5,479,654 | 12/1995 | Squibb | | |
| | A21 | 5,491,511 | 02/1996 | Olde | | |
| | A22 | 5,499,113 | 03/1996 | Tsuboi | | |
| | A23 | 5,522,077 | 05/1996 | Cuthbert et al. | | |
| | A24 | 5,537,547 | 07/1996 | Chan et al. | | |
| | A25 | 5,550,981 | 08/1996 | Bauer et al. | | |
| | A26 | 5,551,027 | 08/1996 | Choy et al. | | |
| | A27 | 5,557,790 | 09/1996 | Bingham et al. | | |
| | A28 | 5,560,005 | 09/1996 | Hoover et al. | | |
| | A29 | 5,576,952 | 11/1996 | Stutman et al. | | |
| | A30 | 5,579,067 | 11/1996 | Wakabayashi | | |
| | A31 | 5,610,653 | 03/1997 | Abecassis | | |
| | A32 | 5,617,570 | 04/1997 | Russell et al. | | |
| | A33 | 5,625,841 | 04/1997 | Dawkins et al. | | |
| | A34 | 5,649,247 | 07/1997 | Itoh et al. | | |
| | A35 | 5,664,170 | 09/1997 | Taylor | | |
| | A36 | 5,669,029 | 09/1997 | Fyson et al. | | |
| | A37 | 5,724,575 | 03/1998 | Hoover et al. | | |
| | A38 | 5,740,428 | 04/1998 | Mortimore et al. | | |
| | A39 | 5,764,889 | 06/1998 | Ault et al. | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

| FORM PTO-1449 | SERIAL NO. 11/354,224 | CASE NO. 11958/62 |
|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | FILING DATE February 13, 2006 | GROUP ART UNIT 2441 |
| (use several sheets if necessary) | APPLICANT(S): John K. Overton et al. | |

REFERENCE DESIGNATION U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | A40 | 5,764,906 | 06/1998 | Edelstein et al. | | |
| | A41 | 5,774,670 | 06/1998 | Montulli | | |
| | A42 | 5,781,725 | 07/1998 | Saito | | |
| | A43 | 5,784,565 | 07/1998 | Lewine | | |
| | A44 | 5,802,518 | 09/1998 | Karaev et al. | | |
| | A45 | 5,809,161 | 09/1998 | Auty | | |
| | A46 | 5,809,331 | 09/1998 | Staats et al. | | |
| | A47 | 5,809,495 | 09/1998 | Loaiza | | |
| | A48 | 5,813,006 | 09/1998 | Polnerow et al. | | |
| | A49 | 5,832,487 | 11/1998 | Olds et al. | | |
| | A50 | 5,848,246 | 12/1998 | Gish | | |
| | A51 | 5,864,482 | 01/1999 | Hazama | | |
| | A52 | 5,872,973 | 02/1999 | Mitchell et al. | | |
| | A53 | 5,875,302 | 02/1999 | Obhan | | |
| | A54 | 5,903,889 | 05/1999 | De la Huerga et al. | | |
| | A55 | 5,907,837 | 05/1999 | Ferrel et al. | | |
| | A56 | 5,913,210 | 06/1999 | Call | | |
| | A57 | 5,915,240 | 06/1999 | Karpf | | |
| | A58 | 5,918,214 | 06/1999 | Perkowski | | |
| | A59 | 5,920,702 | 07/1999 | Bleidt et al. | | |
| | A60 | 5,940,844 | 08/1999 | Cahill et al. | | |
| | A61 | 5,950,173 | 09/1999 | Perkowski | | |
| | A62 | 5,961,610 | 10/1999 | Kelly et al. | | |
| | A63 | 5,966,705 | 10/1999 | Koneru et al. | | |
| | A64 | 5,974,124 | 10/1999 | Schlueter, Jr. et al. | | |
| | A65 | 5,974,409 | 10/1999 | Sanu et al. | | |
| | A66 | 5,978,773 | 11/1999 | Hudetz et al. | | |
| | A67 | 5,987,519 | 11/1999 | Peifer et al. | | |
| | A68 | 5,995,965 | 11/1999 | Experton | | |
| | A69 | 6,032,175 | 02/2000 | Fletcher et al. | | |
| | A70 | 6,047,332 | 04/2000 | Viswanathan et al. | | |
| | A71 | 6,055,544 | 04/2000 | DeRose et al. | | |
| | A72 | 6,058,193 | 05/2000 | Cordery et al. | | |
| | A73 | 6,092,189 | 07/2000 | Fisher et al. | | |
| | A74 | 6,108,787 | 08/2000 | Anderson et al. | | |
| | A75 | 6,131,095 | 10/2000 | Low et al. | | |
| | A76 | 6,154,738 | 11/2000 | Call | | |
| | A77 | 6,188,766 | 02/2001 | Kocher | | |
| | A78 | 6,201,931 | 03/2001 | Cipolla et al. | | |
| | A79 | 6,202,070 | 03/2001 | Nguyen et al. | | |
| | A80 | 6,209,095 | 03/2001 | Anderson et al. | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Page 3 of 4

| FORM PTO-1449 | SERIAL NO. 11/354,224 | CASE NO. 11958/62 |
|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | FILING DATE February 13, 2006 | GROUP ART UNIT 2441 |
| (use several sheets if necessary) | APPLICANT(S): John K. Overton et al. | |

REFERENCE DESIGNATION          U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | A81 | 6,212,280 | 04/2001 | Howard, Jr. et al. | | |
| | A82 | 6,377,986 | 04/2002 | Philyaw et al. | | |
| | A83 | 6,418,441 | 07/2002 | Call | | |
| | A84 | 6,438,652 | 08/2002 | Jordan et al. | | |
| | A85 | 6,463,454 | 10/2002 | Lumelsky et al. | | |
| | A86 | 6,466,980 | 10/2002 | Lumelsky et al. | | |
| | A87 | 6,578,068 | 06/2003 | Bowman-Amuah | | |
| | A88 | 6,711,408 | 03/2004 | Raith | | |
| | A89 | 7,103,640 | 09/2006 | Overton et al. | | |
| | A90 | 7,233,978 | 06/2007 | Overton et al. | | |
| | A91 | 2002/0112048 | 08/2002 | Gruyer et al. | | |
| | A92 | 2003/0065653 A1 | 04/2003 | Overton et al. | | |
| | A93 | 2004/0205055 A1 | 10/2004 | Overton et al. | | |
| | A94 | 2008/0005275 A1 | 01/2008 | Overton et al. | | |
| | A95 | 09/111,896 | 07/1998 | Overton et al. | | |

FOREIGN PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | COUNTRY | CLASS/ SUBCLASS | TRANSLATION YES OR NO |
|---|---|---|---|---|---|---|
| | A96 | EP 0 568 161 A1 | 01/1992 | Europe | | |
| | A97 | EP 0 889 422 A2 | 01/1999 | Europe | | |
| | A98 | EP 0 919 912 A2 | 06/1999 | Europe | | |
| | A99 | WO 86/05610 | 09/1986 | WIPO | | |
| | A100 | WO 98/15910 | 04/19998 | WIPO | | |
| | A101 | WO 98/00624 | 07/1998 | WIPO | | |
| | A102 | WO 98/31138 | 07/1998 | WIPO | | |
| | A103 | WO 00/032526 | 01/2000 | WIPO | | |

| EXAMINER INITIAL | | OTHER ART – NON PATENT LITERATURE DOCUMENTS (Include name of author, title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date page(s), volume-issue number(s), publisher, city and/or country where published. |
|---|---|---|
| | A104 | Communication relating to the results of the Partial International Search Report for PCT Application No. PCT/US01/18013 dated April 15, 2002. |
| | A105 | D.G. Bourke et al., Programmable Module and Circuit for Machine-Readable Unique Serial Number, IBM Technical Disclosure Bulletin, Vol. 27, No. 4A, Sep. 1, 1984, pp. 1942-1944. |
| | A106 | Kleinholz, L. et al., Supporting Cooperative Medicine: The Bermed Project, IEEE Multimedia, Vol. 1, No. 4, Dec. 21, 1994, pp. 44-53. |
| | A107 | Method for Network Naming and Routing, IBM Technical Disclosure Bulletin, Vol. 37, No. 9, Sep. 1, 1994, pp. 255-256. |
| | A108 | Minimizing Locking to Access Global Shared Data, IBM Technical Disclosure Bulletin, Feb. 1995, pp. 619-622. |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**JA0203**

Page 4 of 4

| FORM PTO-1449 | SERIAL NO. 11/354,224 | CASE NO. 11958/62 |
|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | FILING DATE February 13, 2006 | GROUP ART UNIT 2441 |
| (use several sheets if necessary) | APPLICANT(S): John K. Overton et al. | |

| EXAMINER INITIAL | | OTHER ART – NON PATENT LITERATURE DOCUMENTS (Include name of author, title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date page(s), volume-issue number(s), publisher, city and/or country where published. |
|---|---|---|
| | A109 | R. Muniz et al., A Robust Software Barcode Reader Using The Hough Transform, Abstract, 1999, International Conference on Information Intelligence and Systems (Oct. 31 to Nov. 3, 1999). |
| | A110 | D. Fresonke, In-fab Identification of Silicon Wafers With Clean, Laser Marked Barcodes, Abstract, 1994, IEEE/Semi Advanced Semiconductor Manufacturing Conference and Workshop (Nov. 14 to Nov. 16, 1994). |
| | A111 | T. Sriram et al., Applications of Barcode Technology In Automated Storage and Retrieval Systems, Abstract, Proceedings of the 1996 IEEE IECON 22nd International Conference on Industrial Electrodes (Aug. 5 to Aug. 10, 1996). |
| | A112 | V.L. Callaghan et al., Structures and Metrics for Image Storage and Interchange, Journal of Electronic Imaging, Vol. 2, No. 2, Apr. 1, 1993, pp. 126-137. |
| | A113 | Beitz et al., Service Location in an Open Distributed Environment, Second International Workshop on Services in Distributed and Networked Environments, IEEE Computer Society Press, June 1995, pp. 28-34. |
| | A114 | T. Baer, Tales from the Network, Computerworld Healthcare Journal, www.computerworld.com/news/1996/story/0,11280,14557,00.html, Oct. 1, 1996, pp. 1-9. |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11354224 |
| **Filing Date:** | 13-Feb-2006 |
| **Title of Invention:** | Network distributed tracking wire transfer protocol |
| **First Named Inventor/Applicant Name:** | John K. Overton |
| **Filer:** | Michael E. Hussey/Sara Vessely |
| **Attorney Docket Number:** | 11958/62 |

Filed as Small Entity

### Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| Extension - 1 month with $0 paid | 2251 | 1 | 65 | 65 |

JA0205

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Submission- Information Disclosure Stmt | 1806 | 1 | 180 | 180 |
| **Total in USD ($)** | | | | **245** |

**JA0206**

## Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 4887432 |
| **Application Number:** | 11354224 |
| **International Application Number:** | |
| **Confirmation Number:** | 7078 |
| **Title of Invention:** | Network distributed tracking wire transfer protocol |
| **First Named Inventor/Applicant Name:** | John K. Overton |
| **Customer Number:** | 00757 |
| **Filer:** | Michael E. Hussey |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 11958/62 |
| **Receipt Date:** | 02-MAR-2009 |
| **Filing Date:** | 13-FEB-2006 |
| **Time Stamp:** | 17:52:24 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $ 245 |
| RAM confirmation Number | 3686 |
| Deposit Account | 231925 |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
|     Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees) | |
|     Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) | |

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 11958_62_Amdmt_EOT_IDS_030209_24.pdf | 4299381<br><br>cdaac9a3d61835ed0b2c8268e49e6e1ea6194627 | yes | 24 |

| | Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|---|
| | **Document Description** | **Start** | **End** | |
| | Miscellaneous Incoming Letter | 1 | 1 | |
| | Amendment/Req. Reconsideration-After Non-Final Reject | 2 | 2 | |
| | Claims | 3 | 7 | |
| | Applicant Arguments/Remarks Made in an Amendment | 8 | 12 | |
| | Extension of Time | 13 | 14 | |
| | Information Disclosure Statement Letter | 15 | 20 | |
| | Information Disclosure Statement (IDS) Filed (SB/08) | 21 | 24 | |

| Warnings: |
|---|
| Information: |

| 2 | Fee Worksheet (PTO-06) | fee-info.pdf | 31887<br><br>9157993e934599036a63c68c18424551cc051787 | no | 2 |
|---|---|---|---|---|---|

| Warnings: |
|---|
| Information: |

| | | | **Total Files Size (in bytes):** | 4331268 |
|---|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

<table>
<tr><td colspan="2">

CERTIFICATE OF EFS FILING UNDER 37 CFR §1.8

I hereby certify that this correspondence is being electronically transmitted to the United States Patent and Trademark Office, Commissioner for Patents, via the EFS pursuant to 37 CFR §1.8 on the below date:

Date: March 2, 2009          Name: Sara E. Vessely          Signature: [signature]

</td>
<td>

**BRINKS**
**HOFER**
**GILSON**
**&LIONE**

</td></tr>
</table>

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Appln. of: John K. Overton et al. | |
| Appln. No.: 11/354,224 | Examiner: Brian J. Gillis |
| Filed: February 13, 2006 | Art Unit: 2441 |
| For: NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL | Conf. No.: 7078 |
| Attorney Docket No.: 11958/62 | |

## TRANSMITTAL

MAIL STOP AMENDMENT
Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Sir:

**Attached is/are:**

☒ Response to Office Action dated October 28, 2008 (11 pgs.); Petition And Fee For Extension Of Time (37 CFR § 1.136(a)) (2 pgs.); Information Disclosure Statement (6 pgs.); PTO-1449 (4 pgs.); Transmittal (1 pg.)

**Fee calculation:**

☐ No additional fee is required.

☒ Small Entity.

☒ An extension fee in an amount of $65.00 for a one-month extension of time under 37 CFR § 1.136(a).

☒ A petition or processing fee in an amount of $180.00 under 37 CFR § 1.17(p).

☒ An additional filing fee has been calculated as shown below:

| | Claims Remaining After Amendment | | Highest No. Previously Paid For | Present Extra | Small Entity | | OR | Not a Small Entity | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Rate | Add'l Fee | | Rate | Add'l Fee |
| Total | 17 | Minus | 20 | 0 | x $26= | $ | | x $52= | |
| Indep. | 3 | Minus | 3 | 0 | x 110= | | | x $220= | |
| First Presentation of Multiple Dep. Claim | | | | | +$195= | | | + $390= | |
| | | | | | Total | $ | | Total | $ |

**Fee payment:**

☒ Please charge Deposit Account No. 23-1925 in the amount of $245.00 for One-month Extension of Time and Processing Fee for Information Disclosure Statement.

☐ Payment by credit card in the amount of $_____ (Form PTO-2038 is attached).

☒ The Director is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925.

Respectfully submitted,

[signature]

03/02/2009
Date                                        Michael E. Hussey (Reg. No. 63,265)

**JA0210**

CERTIFICATE OF ELECTRONIC FILING
I hereby certify that this correspondence is being filed electronically with the U.S. Patent and Trademark Office on

Date: March 2, 2009      Name: Sara E. Vessely      Signature:

PATENT
Our Case No. 11958/62

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Appln. of: | John K. Overton et al. | | |
| Appln. No.: | 11/354,224 | Examiner: | Brian J. Gillis |
| Filed: | February 13, 2006 | Art Unit: | 2441 |
| For: | NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL | Confirmation No.: | 7078 |

Attorney Docket No:
11958/62

## RESPONSE TO OFFICE ACTION DATED OCTOBER 28, 2008

MAIL STOP
Commissioner for Patents
P. O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

In response to the Non-final Office Action dated October 28, 2008, the Applicant respectfully requests entry of the following amendments in the above-identified application and consideration of the following remarks.  Also enclosed for consideration is an Information Disclosure Statement.  This amendment and response is being timely filed with a one (1) month extension of time, which is also enclosed.

**Amendments to the claims begin on page 2 of this paper.**
**Remarks begin on page 7 of this paper.**

Page 1 of 11

JA0211

Serial No.: 11/354,224                     Filed: February 13, 2006
Response to Office Action dated October 28, 2008

**Amendment to the Claims**

       Claims 1-16  (Cancelled).

     17.     (Currently Amended) A system for managing data stored in a distributed network, the system comprising:

       a data repository configured to store a data entity, wherein an identifier string identifies the data entity is associated with an identifier string; and

       a data location server network comprising a plurality of data location servers, wherein data location information for a plurality of data entities is stored in the data location server network, at least one of the plurality of data location servers containing includes location information associated with the identifier string, wherein each one of the plurality of data location servers comprises a processor and a portion of the data location information, in the distributed data collection the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.

     18.     (Previously Presented) The system of claim 17, wherein the location information comprises any portion of a hash table generated with the hash function.

     19.     (Currently Amended) The system of claim 17, wherein the data repository comprises a plurality of data repositories repository servers and wherein each of the plurality of data location servers [[are]] is configured, to be responsive in response to a request to store data in [[a]] the data repository, to execute the hash function and store the data on one of the plurality of data repositories repository servers in the distributed network based on a result of the hash function.

     20.     (Currently Amended) A system for managing data location information and providing the data location information in response to location queries, the system comprising:

JA0212

Serial No.: 11/354,224                              Filed: February 13, 2006
Response to Office Action dated October 28, 2008

a location server configured to <u>receive a location addition request, the</u> <u>location addition request formatted in conformance with</u> ~~recognize~~ a transfer protocol<u>, the</u> <u>location addition request</u> comprising an identifier and at least one location <u>to associate</u> ~~associated~~ with the identifier, wherein the identifier ~~uniquely specifies~~ <u>identifies</u> an entity and wherein each <u>of the at least one</u> location specifies a location of data in a network pertaining to the entity;

wherein the location server <u>includes a processor</u> ~~contains location~~ ~~information corresponding to at least one entity, the location information formatted~~ ~~according to the transfer protocol~~; and

programming logic stored on the location server<u>, wherein the programming</u> <u>logic is configured to return, in response</u> ~~responsive~~ to a location query ~~identifying~~ <u>related</u> <u>to</u> a desired entity<u>,</u> ~~to return~~ a location message, the location message <u>in conformance</u> <u>with the transfer protocol and</u> comprising <u>at least one location</u> ~~locations~~ associated with the desired entity, wherein the ~~location server returns~~ <u>programming logic is further</u> <u>configured to return</u> the location message if the location server contains location information for the desired entity<u>, and wherein the programming logic is further configured</u> <u>to return a redirect message if the location server lacks the location information for the</u> <u>desired entity, the redirect message comprising a list of at least one other location server</u> <u>known to have the location information for the desired entity</u>.

21.    (Cancelled)

22.    (Currently Amended) The system of claim [[21]] <u>20</u>, wherein the list of at least one other location server comprises a list of <u>a plurality of</u> location servers in the ~~plurality of location servers~~ <u>network</u> and a corresponding list of <u>a plurality of</u> ~~each of the~~ entities having location information on the respective <u>one of the plurality of</u> location servers.

23.    (Currently Amended) The system of claim 20, wherein each of [[the]] <u>a</u> <u>plurality of</u> location servers <u>in the network</u> stores ~~at least~~ <u>only</u> a portion of ~~a total amount~~ ~~of the data~~ <u>location information</u> ~~on a persistent storage device~~.

JA0213

Serial No.: 11/354,224                     Filed:  February 13, 2006
Response to Office Action dated October 28, 2008

24.     (Previously Presented) The system of claim 20, wherein the location
information in the location server is maintained in an indexed location store.

25.     (Currently Amended) The system of claim 24, wherein the indexed location
store comprises a string store indexed by a hash table.

26.     (Currently Amended) The system of claim 24, wherein the indexed location
store comprises a string store indexed by a hash table distributed across a plurality of
clients.

27.     (Currently Amended) The system of claim 24, wherein the indexed location
store comprises a string store indexed by a hash table distributed across a plurality of
servers.

28.     (Currently Amended) The system of claim 24, wherein the location query
identifying the desired entity comprises a unique identifier for the desired entity, and
wherein the programming logic stored on the location server further comprises
programming logic for applying configured to apply an index function to the unique
identifier to retrieve at least a portion of the locations associated with the unique identifier
in the indexed location store.

29.     (Currently Amended) The system of claim 28, wherein the indexed location
store comprises a string store and the index function comprises a hash function.


Claims 30-32 (Cancelled).


33.     (New)  The system of claim 17, wherein each one of the data location
servers is configured to return all location information associated with a respective one of
the data entities in response to a request for any location information associated with the
respective one of the data entities.

JA0214

Serial No.: 11/354,224                                    Filed: February 13, 2006
Response to Office Action dated October 28, 2008

34.     (New) The system of claim 17, wherein the location information includes a hash table and the hash table includes an association between a hash of the string identifier and at least one identifier of the at least one of the plurality of data location servers.

35.     (New) A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising:

       correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network,  each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network;

       receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities;

       determining which of the plurality of location servers includes the location information;

       sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and

       sending a redirect message to the client in response to determining the one of the plurality of  location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information.

36.     (New) The method of claim 35, further comprising applying an identifier of the data entity to an indexing function to determine which of the location servers includes the location information.

37.     (New) The method of claim 36, wherein each one of the plurality of location servers comprises a portion of an indexed table of the identifiers and corresponding associated locations, and wherein determining which of the plurality of location servers

Serial No.: 11/354,224                        Filed: February 13, 2006
Response to Office Action dated October 28, 2008

includes the location information comprises applying one of the identifiers to a hash function to look up corresponding associated locations in the indexed table, the one of the identifiers identifying the data entity.

JA0216

Serial No.: 11/354,224          °        Filed: February 13, 2006
Response to Office Action dated October 28, 2008

**REMARKS**

I.     **Overview**

Claims 17- 20, 22-29, and 33-37 are pending. Claims 21 and 30-32 are cancelled without prejudice. Claims 17, 19, 20, 22, 23, 25-29 are amended. Claims 33-37 are newly added. No new matter was added. Support for the amendments may be found in at least paragraphs 64 and 126-132 of the specification. Applicant respectfully requests reconsideration in view of the amendments and the following remarks.

II.     **Claim Rejections – 35 USC §112**

Claims 17-19, 21, 22, and 30-32 were rejected under 35 USC §112, second paragraph, as being indefinite for failing to provide sufficient antecedent basis. Claims 21 and 30-32 are cancelled rendering their rejections moot. Claims 17-19 and 22 now provide sufficient antecedent basis for all of the features of the respective claims. Accordingly, Applicant respectfully requests withdrawal of the 35 USC §112, second paragraph, rejections of claims 17-19, 21, 22, and 30-32.

III.     **Claim Rejections – 35 USC §101**

Claims 17-29 were rejected under 35 USC §101 as being directed to non-statutory subject matter, software per se. Claim 17 includes the features of "a system … comprising … a data location server network comprising a plurality of data location servers, wherein … each one of the plurality of data location servers comprises a processor." Therefore, claim 17 is directed to statutory subject matter. Claims 18 and 19 depend from claim 17 and include the features of claim 17. Claim 20 includes the features of "A system … comprising …a location server … wherein the location server includes a processor." Therefore, claim 20 is also directed to statutory subject matter. Claim 21 was cancelled rendering its rejection moot. Claims 22-29 depend from claim 20 and include the features of claim 20. Accordingly, Application respectfully requests withdrawal of the 35 USC §101 rejections of claims 17-29.

JA0217

Serial No.: 11/354,224                          Filed:  February 13, 2006
Response to Office Action dated October 28, 2008

**IV.     Claim Rejections – 35 USC §102**

     Claims 17-32 were rejected under 35 USC §102(e) as being anticipated by US Patent No. 6,370,584 to Bestavros et al. ("Bestavros").  Claims 21 and 30-32 were cancelled rendering their respective rejections moot.  As explained below, Bestavros does not describe all of the features of claims 17-20 and 22-29.

**A.     Claim 17**

     Bestavros fails to describe all of the features of Claim 17.  For example, Bestavros fails to describe the features of Claim 17 of "each one of the plurality of data location servers comprises … a portion of the data location information, the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers."  (Emphasis Applicant's)  In contrast, Bestavros describes a host device that uses "a predetermined criteria for determining whether to service or reroute a request" (Bestavros, Col. 3, lines 36-38) (Emphasis Applicant's).  Bestavros does describe a "hash function," but the hash function is used "to determine which host will service a request" for load balancing purposes.   (Bestavros, Col. 3, lines 30-35.)  Therefore, Bestavros fails to describe "each one of the plurality of data location servers comprises … a portion of the data location information, the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers." (Emphasis Applicant's)

     There is another reason Bestavros fails to describe all of the features of claim 17.  Bestavros fails to describe the features of claim 17 of "a data repository configured to store a data entity, wherein an identifier string identifies the data entity" and "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string" (Emphasis Applicant's).  In contrast, the IP address and port number associated with the client device are used as inputs into the hash function in Bestavros.  (Bestavros, Col. 3, lines 28-31.)

Serial No.: 11/354,224                                    Filed: February 13, 2006
Response to Office Action dated October 28, 2008

**B.    Claims 18-19**

Claims 18 and 19 depend from, and include the features of, claim 17. Thus, for at least the foregoing reasons, claims 18 and 19 are also allowable.

Bestavros also fails to describe the features of claim 19 of "a data repository configured to store a data entity," "a data location server network comprising a plurality of data location servers," and "wherein the data repository comprises a plurality of data repository servers and wherein each of the plurality of data location servers is configured, in response to a request to store data in the data repository, to execute the hash function and store the data on one of the plurality of data repository servers based on a result of the hash function" (Emphasis Applicant's). Instead, Bestavros describes client devices 54, 56, and 58 sending requests to hosts 38, 40, 42, 44, 46, 48, 50 and 52 to promote load sharing among the host devices. (Bestavros, Col. 4, lines 15-18; Fig. 2.) Furthermore, Bestavros is silent on a data repository configured to store a data entity.

**C.    Claim 20**

Bestavros fails to describe all of the features of claim 20. For example, Bestavros fails to describe the features of Claim 20 of "a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity." Bestavros is silent on "a location server configured to receive a location addition request."

Bestavros fails to describe the features of claim 20 of "the redirect message comprising a list of at least one other location server known to have the location information for the desired entity" (Emphasis Applicant's). Instead, Bestavros describes a rerouting request function that reroutes a request depending on whether the host that received the request has data available for a response. (Bestavros, Col. 4, lines 27-30).

Furthermore, Bestavros fails to describe the features of claim 20 of "programming logic is configured to return, in response to a location query related to a desired entity, a

Serial No.: 11/354,224                          Filed: February 13, 2006
Response to Office Action dated October 28, 2008

location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity." Bestavros is silent on "a location query related to a desired entity" as recited in Claim 20. In contrast, Bestavros describes a host device that uses "a predetermined criteria for determining whether to service or reroute a request" (Bestavros, Col. 3, lines 36-38) (Emphasis Applicant's).

**B.      Claims 22-29**

Claims 22-29 depend from, and include the features of, claim 20. Thus, for at least the foregoing reasons, claims 22-29 are also allowable.

Claim 22 is also allowable because Bestavros fails to describe the features of claim 22 of "wherein the list of at least one other location server comprises a list of a plurality of location servers in the network and a corresponding list of a plurality of entities having location information on the respective one of the plurality of location servers." (Emphasis Applicant's) Instead, Bestavros describes a rerouting request function that reroutes a request depending on whether the host that received the request has data available for a response. (Bestavros, Col. 4, lines 27-30).

For at least the foregoing reasons, Bestavros does not describe all of the features of claims 17-20 and 22-29. Therefore, Applicant respectfully requests withdrawal of the 35 USC §102 rejections of claims 17-32.

Bestavros also fails to describe all of the features of newly added claims 33-37. For example, Bestavros fails to describe the features of independent claim 35 of "determining which of the plurality of location servers includes the location information" and "sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information."

**V.      Claim Rejections – Double Patenting**

Claims 17, 20, and 30 were rejected on the grounds of non-statutory obviousness type double patenting. Applicant respectfully disagrees with the double patenting

JA0220

Serial No.: 11/354,224                        Filed:  February 13, 2006
Response to Office Action dated October 28, 2008

rejections but will submit, in order to expedite prosecution, an appropriate Terminal

Disclaimer upon indication that the claims are allowable over any remaining rejections.

### VI.   Conclusion

For the foregoing reasons, all pending claims distinguish over the prior art, and

with this amendment and response, the present pending claims of this application are

allowable.   Should a telephone conference be deemed beneficial in expediting

allowance/examination of this application, the Examiner is invited to call the undersigned

attorney at the telephone number listed below.


Respectfully submitted,

Michael E. Hussey
Attorney Reg. No. 63,265
Attorney for Applicant


MEH/sev
Attachments:


BRINKS HOFER GILSON & LIONE
**CUSTOMER NO. 27879**
Telephone:  317-636-0886
Facsimile:  317-634-6701


Page 11 of 11

JA0221

CERTIFICATE OF ELECTRONIC FILING
I hereby certify that this correspondence is being filed electronically with the U.S. Patent and Trademark Office on
Date: __March 2, 2009__ Name: _Sara E. Vessely_ Signature: _____

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of: John K. Overton et al.

| | | |
|---|---|---|
| Appln. No.: | 11/354,224 | Examiner: Brian J. Gillis |
| Filed: | February 13, 2006 | Art Unit: 2441 |
| For: | NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL | Conf. No.: 7078 |

Attorney Docket No.: 11958/62

### PETITION AND FEE FOR EXTENSION OF TIME (37 CFR § 1.136(a))

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Dear Sir:

This is a petition for an extension of the time to respond to <u>Office Action</u> dated <u>October 28, 2008,</u> for a period of <u>one-</u>month(s).

Applicant is: ☒ small entity (per 37 CFR 1.27)   ☐ other than small entity

| | Extension Months | Other Than Small Entity | Small Entity |
|---|---|---|---|
| ☒ | One Month | $130.00 | $65.00 |
| ☐ | Two Months | $490.00 | $245.00 |
| ☐ | Three Months | $1,110.00 | $555.00 |
| ☐ | Four Months | $1,730.00 | $865.00 |
| ☐ | Five Months | $2,350.00 | $1,175.00 |

JA0222

App. No.11/354,224                                    Case No. 11958/62

**Payment Method:**

☐    Check in the amount of $_____ is enclosed to cover the fees listed above.

☐    Payment by credit card in the amount of $_____ to cover the fees listed above. Form PTO-2038 is enclosed for this purpose.

**Warning:** Information on this form may become public. Credit information should not be included on this form. Provide credit card information and authorization on PTO-2038.

☒    The Commissioner is hereby authorized to charge $65.00 to cover the fees listed above to Deposit Account No. 23-1925.

☒    The Commissioner is hereby authorized to charge any deficiencies in fees or credit overpayment to Deposit Account No. 23-1925.

Respectfully submitted,

Dated:   03/02/2009         _____

Michael E. Hussey, Reg. No. 63,265
Attorney for Applicant(s)

BRINKS HOFER GILSON & LIONE
CUSTOMER NO. 27879
Telephone: (317) 636-0886
Facsimile: (317) 634-6701

- 2 -

JA0223

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>11/354,224 | Filing Date<br>02/13/2006 | ☐ To be Mailed |
|---|---|---|---|

### APPLICATION AS FILED – PART I

SMALL ENTITY ☒ OR OTHER THAN SMALL ENTITY

| | (Column 1) | (Column 2) | | | | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

### APPLICATION AS AMENDED – PART II

OTHER THAN SMALL ENTITY OR SMALL ENTITY

**AMENDMENT**

| 03/02/2009 | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * 17 | Minus | ** 20 | = 0 | X $26 = | 0 | OR X $ = | |
| Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | X $110 = | 0 | OR X $ = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | OR | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | |
| | | | | | TOTAL ADD'L FEE | 0 | OR TOTAL ADD'L FEE | |

**AMENDMENT**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | | OR X $ = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | | OR X $ = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | OR | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | |
| | | | | | TOTAL ADD'L FEE | | OR TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
//REGINA D. BALTIMORE//

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

JA0224



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 | John K. Overton | 11958/62 | 7078 |

757        7590        04/17/2009

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

| EXAMINER |
|---|
| GILLIS, BRIAN J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2441 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/17/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**JA0225**



**UNITED STATES DEPARTMENT OF COMMERCE**
**U.S. Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450

| APPLICATION NO./ CONTROL NO. | FILING DATE | FIRST NAMED INVENTOR / PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 11354224 | 2/13/2006 | OVERTON ET AL. | 11958/62 |

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

| **EXAMINER** |
|---|
| Brian J. Gillis |

| ART UNIT | PAPER |
|---|---|
| 2441 | 04152009 |

DATE MAILED:

**Please find below and/or attached an Office communication concerning this application or proceeding.**

**Commissioner for Patents**

Response to Amendment
The reply filed on March 2, 2009 is not fully responsive to the prior Office Action because of the following omission(s) or matter(s): The Double Patenting rejection in the Non Final rejection mailed October 28, 2008 has not been properly addressed. See 37 CFR 1.111. Since the above-mentioned reply appears to be bona fide, applicant is given ONE (1) MONTH or THIRTY (30) DAYS from the mailing date of this notice, whichever is longer, within which to supply the omission or correction in order to avoid abandonment. EXTENSIONS OF THIS TIME PERIOD MAY BE GRANTED UNDER 37 CFR 1.136(a).

Conclusion
Any inquiry concerning this communication or earlier communications from the examiner should be directed to Brian J. Gillis whose telephone number is (571)272-7952. The examiner can normally be reached on M-F 7:30-5:00.
If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Rupal Dharia can be reached on 571-272-3880. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.
Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Larry D Donaghue/
Primary Examiner, Art Unit 2454

PTO-90C (Rev.04-03)

Application/Control Number: 11/354,224            Page 2

Art Unit: 2441

**BRINKS HOFER GILSON & LIONE**

CERTIFICATE OF EFS FILING UNDER 37 CFR §1.8

I hereby certify that this correspondence is being electronically transmitted to the United States Patent and Trademark Office, Commissioner for Patents, via the EFS pursuant to 37 CFR §1.8 on the below date:

Date: May 5, 2009        Name: Sara E. Vessely        Signature: _Sara E. Vessely_

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Appln. of: | John K. Overton et al. | | |
| Appln. No.: | 11/354,224 | Examiner: | Brian J. Gillis |
| Filed: | February 13, 2006 | Art Unit: | 2441 |
| For: | NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL | Conf. No.: | 7078 |
| Attorney Docket No.: | 11958/62 | | |

## TRANSMITTAL

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Sir:

**Attached is/are:**

☒ Power of Attorney by Assignee and Correspondence Address Indication (1 pg.); Assignment (4 pgs.); Transmittal (1 pg.)

**Fee calculation:**

☒ No additional fee is required.

☒ Small Entity.

☐ An extension fee in an amount of $_____ for a _____-month extension of time under 37 CFR § 1.136(a).

☐ A petition or processing fee in an amount of $_____ under 37 CFR § 1.17(_____).

☐ An additional filing fee has been calculated as shown below:

| | Claims Remaining After Amendment | | Highest No. Previously Paid For | Present Extra | Small Entity | | OR | Not a Small Entity | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Rate | Add'l Fee | | Rate | Add'l Fee |
| Total | | Minus | | | x $26= | | | x $52= | |
| Indep. | | Minus | | | x 110= | | | x $220= | |
| First Presentation of Multiple Dep. Claim | | | | | +$195= | | | + $390= | |
| | | | | | Total | $ | | Total | $ |

**Fee payment:**

☐ Please charge Deposit Account No. 23-1925 in the amount of $_____ for _____.

☐ Payment by credit card in the amount of $_____ (Form PTO-2038 is attached).

☒ The Director is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925.

Respectfully submitted,

05/05/2009
Date

Michael E. Hussey (Reg. No. 63,265)

**JA0228**

Attorney Docket No. <u>11958/62</u>

Inventors:     John K. Overton and Stephen W. Bailey

Title of Appln.:   NETWORK DISTRIBUTED TRACKING WIRE TRANSFER
                PROTOCOL

## POWER OF ATTORNEY BY ASSIGNEE
## AND CORRESPONDENCE ADDRESS INDICATION

The specification of the above-identified patent application:

☐   is attached hereto.

☒   was filed on <u>February 13, 2006</u> as U.S. application No. <u>11/354,224.</u>

As required by 37 CFR 3.73(b)(1), the documentary evidence of the chain of title from the original owner to
the assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

<u>Econnectix Corporation</u>, a <u>corporation under the laws of the State of Delaware</u>, ("ASSIGNEE") certifies that it is the assignee of
the entire right, title and interest in the patent application identified above by virtue of either:

☒   An assignment from the inventor(s) of the patent application identified above,

    ☐   a copy of which was recorded in the Patent and Trademark Office at Reel     , frame     , or

    ☒   a copy thereof which is attached hereto and another copy thereof which is being recorded
    concurrently herewith pursuant to 37 CFR 3.11; OR

☐   A chain of title from the inventor(s) of the patent application identified above, to the current assignee as
shown below:

    1.   From      to     .
    The document was recorded in the Patent and Trademark Office at Reel     , Frame     , or a
    copy thereof is attached.

    2.   From      to     .
    The document was recorded in the Patent and Trademark Office at Reel     , Frame     , or a
    copy of which is attached.

    ☐   Additional documents in the chain of title are listed on a supplemental sheet.

ASSIGNEE hereby revokes all previously granted powers of attorney in the above identified patent application and appoints the
Practitioners associated with the following Customer Number as its attorneys, with full power of substitution and revocation, to
prosecute this application and any continuations, divisions, reissues, and reexaminations thereof, to receive the patent(s), to
transact all business in the United States Patent and Trademark Office connected therewith, and to act on ASSIGNEE'S behalf
before the competent International Authorities in connection with any and all international applications filed by ASSIGNEE:

## Customer No.: 27879

Please recognize or change the correspondence address for this application to the address associated with the above-mentioned
Customer Number.  Please direct all telephonic and facsimile communications to:

Michael E. Hussey
Tel.: 317-636-0886;  Fax:  317-634-6701

The undersigned hereby authorizes the Practitioners associated with the above Customer Number to accept and follow
instructions from <u>John K. Overton</u> as to any action to be taken in the Patent and Trademark Office regarding this application
without direct communication between the Practitioners and the undersigned.  In the event of a change in the persons from whom
instructions may be taken, the Practitioners will be so notified by the undersigned.

The undersigned (whose title is supplied below) is empowered to act on behalf of ASSIGNEE.

I hereby declare that all statements made herein of my own knowledge are true, and that all statements made on information and
belief are believed to be true; and further, that these statements are made with the knowledge that willful false statements, and
the like so made, are punishable by fine or imprisonment, or both, under 18 U.S.C. §1001, and that such willful false statements
may jeopardize the validity of the application or any patent issuing thereon.

Signature                     Date:    2009 - 04 - 28

Name:     John K. Overton

Title:      Chief Executive Officer

**JA0229**

Case No. 11958/62

## **ASSIGNMENT**

WHEREAS, John K. Overton and Stephen W. Bailey, hereinafter called the "Assignors", have made the invention described in the United States patent application entitled NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL, for a full description of which reference is here made to an application for Letters Patent of the United States filed on February 13, 2006, and assigned Application Serial No. 11/354,224;

WHEREAS, Econnectix Corporation, a corporation organized and existing under the laws of the State of Delaware, having a place of business at 14 Peoria Street, Suite 2H, Chicago, IL 60607, hereinafter called the "Assignee", desires to acquire the entire right, title and interest in and to the invention and the patent application identified above, and all patents which may be obtained for said invention, as set forth below;

NOW, THEREFORE, in consideration of the sum of One Dollar ($1.00), and other valuable and legally sufficient consideration, the receipt of which by the Assignors from the Assignee is hereby acknowledged, the Assignors have sold, assigned and transferred, and by these presents do sell, assign and transfer to the Assignee, the entire right, title and interest for the United States in and to the invention and the patent application identified above, and any patents that may issue for said invention in the United States; together with the entire right, title and interest in and to said invention and all patent applications and patents therefor in all countries foreign to the United States, including the full right to claim for any such application all benefits and priority rights under any applicable convention; together with the entire right, title and interest in and to all continuations, divisions, renewals and extensions of any of the patent applications and patents defined above; together with the right to recover all damages, including, but not limited to, a reasonable royalty, by reason of past, present, or future infringement or any other violation of patent or patent application rights; to have and to hold for the sole and exclusive use and benefit of the Assignee, its successors and assigns, to the full end of the term or terms for all such patents.

The Assignors hereby covenant and agree, for both the Assignors and the Assignors' legal representatives, that the Assignors will assist the Assignee in the prosecution of the patent application identified above; in the making and prosecution of any other patent applications that the Assignee may elect to make covering the invention identified above; in vesting in the Assignee like exclusive title in and to all such other patent applications and patents; and in the prosecution of any interference which may arise involving said invention, or any such patent application or patent; and that the Assignors will execute and deliver to the Assignee any and all additional papers which may be requested by the Assignee to carry out the terms of this Assignment.

The Commissioner of Patents and Trademarks is hereby authorized and requested to issue patents to the Assignee in accordance with the terms of this Assignment.

IN TESTIMONY WHEREOF, the Assignors have executed this agreement.

DATED: _2009 - 04 - 29_ _____
John K. Overton

DATED: _____ _____
Stephen W. Bailey

Case No. 11958/62

## **ASSIGNMENT**

WHEREAS, John K. Overton and Stephen W. Bailey, hereinafter called the "Assignors", have made the invention described in the United States patent application entitled NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL, for a full description of which reference is here made to an application for Letters Patent of the United States filed on February 13, 2006, and assigned Application Serial No. 11/354,224;

WHEREAS, Econnectix Corporation, a corporation organized and existing under the laws of the State of Delaware, having a place of business at 14 Peoria Street, Suite 2H, Chicago, IL 60607, hereinafter called the "Assignee", desires to acquire the entire right, title and interest in and to the invention and the patent application identified above, and all patents which may be obtained for said invention, as set forth below;

NOW, THEREFORE, in consideration of the sum of One Dollar ($1.00), and other valuable and legally sufficient consideration, the receipt of which by the Assignors from the Assignee is hereby acknowledged, the Assignors have sold, assigned and transferred, and by these presents do sell, assign and transfer to the Assignee, the entire right, title and interest for the United States in and to the invention and the patent application identified above, and any patents that may issue for said invention in the United States; together with the entire right, title and interest in and to said invention and all patent applications and patents therefor in all countries foreign to the United States, including the full right to claim for any such application all benefits and priority rights under any applicable convention; together with the entire right, title and interest in and to all continuations, divisions, renewals and extensions of any of the patent applications and patents defined above; together with the right to recover all damages, including, but not limited to, a reasonable royalty, by reason of past, present, or future infringement or any other violation of patent or patent application rights; to have and to hold for the sole and exclusive use and benefit of the Assignee, its successors and assigns, to the full end of the term or terms for all such patents.

- 1 -

JA0232

The Assignors hereby covenant and agree, for both the Assignors and the Assignors' legal representatives, that the Assignors will assist the Assignee in the prosecution of the patent application identified above; in the making and prosecution of any other patent applications that the Assignee may elect to make covering the invention identified above; in vesting in the Assignee like exclusive title in and to all such other patent applications and patents; and in the prosecution of any interference which may arise involving said invention, or any such patent application or patent; and that the Assignors will execute and deliver to the Assignee any and all additional papers which may be requested by the Assignee to carry out the terms of this Assignment.

The Commissioner of Patents and Trademarks is hereby authorized and requested to issue patents to the Assignee in accordance with the terms of this Assignment.

IN TESTIMONY WHEREOF, the Assignors have executed this agreement.

DATED: _____           _____
                                     John K. Overton

DATED:  $2009-05-03$                 _____
                                     Stephen W. Bailey

-2-

JA0233

## Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5278982 |
| **Application Number:** | 11354224 |
| **International Application Number:** | |
| **Confirmation Number:** | 7078 |
| **Title of Invention:** | Network distributed tracking wire transfer protocol |
| **First Named Inventor/Applicant Name:** | John K. Overton |
| **Customer Number:** | 00757 |
| **Filer:** | Michael E. Hussey |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 11958/62 |
| **Receipt Date:** | 05-MAY-2009 |
| **Filing Date:** | 13-FEB-2006 |
| **Time Stamp:** | 15:33:04 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 11958_62_POA_Assignment_050509_6.pdf | 1152171 <br> 5bcee88107042dceafe52b333dbfda7378fba7fb | yes | 6 |

JA0234

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| Document Description | Start | End |
| Miscellaneous Incoming Letter | 1 | 1 |
| Power of Attorney | 2 | 6 |

**Warnings:**

**Information:**

| Total Files Size (in bytes): | 1152171 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

JA0235

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that this correspondence is being filed electronically with the U.S. Patent and Trademark Office on

Date: May 8, 2009      Name: Sara E. Vessely      Signature:

PATENT
Our Case No. 11958/62

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:  John K. Overton et al.

Appln. No.:  11/354,224

Filed:  February 13, 2006

For:  NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

Attorney Docket No.  11958/62

Examiner: Brian J. Gillis

Art Unit: 2441

Confirmation No.: 7078

### RESPONSE TO OFFICE ACTION OF APRIL 17, 2009

MAIL STOP AMENDMENT
Commissioner for Patents
P. O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

In response to the Office Action of April 17, 2009, the Applicants respectfully request consideration of the following remarks in the above-referenced patent application. Also enclosed for submission are a terminal disclaimer and a supplemental declaration.

**Listing of the claims begin on page 2 of this paper.**

**Remarks begin on page 6 of this paper.**

Page 1 of 6

JA0236

Serial No. 11/354,224                     Filed: February 13, 2006
Response to Office Action dated April 17, 2009
Response filed May 8, 2009

**Listing of the Claims**

This listing of claims contains no amendments and is being provided for the convenience of the Examiner:

Claims 1-16  (Cancelled).

17.    (Previously Presented) A system for managing data stored in a distributed network, the system comprising:

a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and

a data location server network comprising a plurality of data location servers, wherein data location information for a plurality of data entities is stored in the data location server network, at least one of the plurality of data location servers includes location information associated with the identifier string, each one of the plurality of data location servers comprises a processor and a portion of the data location information, the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.

18.    (Previously Presented) The system of claim 17, wherein the location information comprises any portion of a hash table generated with the hash function.

19.    (Previously Presented) The system of claim 17, wherein the data repository comprises a plurality of data repository servers and wherein each of the plurality of data location servers is configured, in response to a request to store data in the data repository, to execute the hash function and store the data on one of the plurality of data repository servers based on a result of the hash function.

JA0237

Serial No. 11/354,224                                    Filed:  February 13, 2006
Response to Office Action dated April 17, 2009
Response filed May 8, 2009

20.    (Previously Presented) A system for managing data location information
and providing the data location information in response to location queries, the system
comprising:

a location server configured to receive a location addition request, the
location addition request formatted in conformance with a transfer protocol, the location
addition request comprising an identifier and at least one location to associate with the
identifier, wherein the identifier identifies an entity and wherein each of the at least one
location specifies a location of data in a network pertaining to the entity;

wherein the location server includes a processor; and

programming logic stored on the location server, wherein the programming
logic is configured to return, in response to a location query related to a desired entity, a
location message, the location message in conformance with the transfer protocol and
comprising at least one location associated with the desired entity, wherein the
programming logic is further configured to return the location message if the location
server contains location information for the desired entity, and wherein the programming
logic is further configured to return a redirect message if the location server lacks the
location information for the desired entity, the redirect message comprising a list of at
least one other location server known to have the location information for the desired
entity.

21.    (Cancelled)

22.    (Previously Presented) The system of claim 20, wherein the list of at least
one other location server comprises a list of a plurality of location servers in the network
and a corresponding list of a plurality of entities having location information on the
respective one of the plurality of location servers.

23.    (Previously Presented) The system of claim 20, wherein each of a plurality
of location servers in the network stores only a portion of the data location information.

24.    (Previously Presented) The system of claim 20, wherein the location
information in the location server is maintained in an indexed location store.

JA0238

Serial No. 11/354,224            Filed: February 13, 2006
Response to Office Action dated April 17, 2009
Response filed May 8, 2009

    25.     (Previously Presented) The system of claim 24, wherein the indexed location store comprises a string store indexed by a hash table.

    26.     (Previously Presented) The system of claim 24, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of clients.

    27.     (Previously Presented) The system of claim 24, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers.

    28.     (Previously Presented) The system of claim 24, wherein the location query identifying the desired entity comprises a unique identifier for the desired entity, and wherein the programming logic stored on the location server further comprises programming logic configured to apply an index function to the unique identifier to retrieve at least a portion of the locations associated with the unique identifier in the indexed location store.

    29.     (Previously Presented) The system of claim 28, wherein the indexed location store comprises a string store and the index function comprises a hash function.

Claims 30-32 (Cancelled).

    33.     (Previously Presented) The system of claim 17, wherein each one of the data location servers is configured to return all location information associated with a respective one of the data entities in response to a request for any location information associated with the respective one of the data entities.

    34.     (Previously Presented) The system of claim 17, wherein the location information includes a hash table and the hash table includes an association between a hash of the string identifier and at least one identifier of the at least one of the plurality of data location servers.

JA0239

Serial No. 11/354,224            Filed: February 13, 2006
Response to Office Action dated April 17, 2009
Response filed May 8, 2009

35. (Previously Presented) A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising:

correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network;

receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities;

determining which of the plurality of location servers includes the location information;

sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and

sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information.

36. (Previously Presented) The method of claim 35, further comprising applying an identifier of the data entity to an indexing function to determine which of the location servers includes the location information.

37. (Previously Presented) The method of claim 36, wherein each one of the plurality of location servers comprises a portion of an indexed table of the identifiers and corresponding associated locations, and wherein determining which of the plurality of location servers includes the location information comprises applying one of the identifiers to a hash function to look up corresponding associated locations in the indexed table, the one of the identifiers identifying the data entity.

JA0240

Serial No. 11/354,224                                           Filed:  February 13, 2006
Response to Office Action dated April 17, 2009
Response filed May 8, 2009

## **REMARKS**

### **Double Patenting Rejections**

The reply filed on March 2, 2009 was deemed not fully responsive to the Non-Final Office Action dated October 28, 2008 on the grounds that the double patenting rejection was not properly addressed.  The Non-Final Office Action dated October 28, 2008 rejected claims 17, 20, and 30 on the ground of non statutory obviousness-type double patenting as being unpatentable over claim 18 of U.S. Patent No. 7,103,640.  To expedite prosecution of this application, a terminal disclaimer is being submitted with this response.   The submission of the terminal disclaimer overcomes the non-statutory double patent rejections of claims 17, 20, and 30.  Applicants respectfully request withdrawal of the double patenting rejections of claims 17, 20, and 30.

Respectfully submitted,

Michael E. Hussey
Attorney Reg. No. 63,265
Attorney for Applicants

MEH/sev

BRINKS HOFER GILSON & LIONE
**CUSTOMER NO. 27879**
Telephone:  317-636-0886
Facsimile:  317-634-6701

Page 6 of 6

JA0241

PTO/SB/26(1-08)

| TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A PRIOR PATENT | Docket Number (Optional) 11958/62 |
|---|---|

**In re Application of:**   John K. Overton and Stephen W. Bailey

**Application No.**   11/354,224

**Filed:**   February 13, 2006

**For:**   NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

The owner*, <u>Econnectix Corporation</u>, of <u>100</u> percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application, which would extend beyond the expiration date of the full statutory term defined in 35 U.S.C. 154 to 156 and 173, as presently shortened by any terminal disclaimer, of prior Patent No. <u>7,103,640</u>.   The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned.   This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of any patent granted on the instant application that would extend to the expiration date of the full statutory term as defined in 35 U.S.C. 154 to 156 and 173 of the prior patent, as presently shortened by any terminal disclaimer, in the event that it later: expires for failure to pay a maintenance fee, is held unenforceable, is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims canceled by a reexamination certificate, is reissued, or is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

Check either box 1 or 2 below, if appropriate.

1.   ☐ For submissions on behalf of a business/organization (e.g., corporation, partnership, university, government agency, etc.), the undersigned is empowered to act on behalf of the business/ organization.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

2.   ☒ The undersigned is an attorney of record.   Registration No. 63,265

| *(signature)* | 05/08/2009 |
|---|---|
| Signature | Date |
| Michael E. Hussey | 317-636-0886 |
| Typed or Printed Name | Telephone No. |

☒  Terminal disclaimer fee under 37 CFR 1.20(d) is included.
☐  A check in the amount of the fee is enclosed.
☐  Payment by credit card.   Form PTO-2038 is attached.
☒  The Commissioner is hereby authorized to charge any fees which may be required or credit any overpayment to Deposit Account No. 23-1925.

<u>WARNING</u>:   Information on this form may become public.   Credit card information should not be included on this form.
        Provide credit card information and authorization on PTO-2038.

*  Statement under 37 CFR 3.73(b) is required if terminal disclaimer is signed by the assignee (owner).
  Form PTO/SB/96 may be used for making this certification.   See MPEP § 324.

JA0242

Attorney Docket No. 11958/62

## DECLARATION FOR UTILITY OR DESIGN PATENT APPLICATION
### (37 CFR §1.63)

As a below named inventor, I hereby declare:

My residence, mailing address, and citizenship are as stated below next to my name;

I believe I am the original, first and sole inventor or an original, first and joint inventor of the subject matter that is claimed and for which a patent is sought on the invention entitled:

### NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

the specification of which (check one)

☐ is attached hereto.

☒ was filed on <u>February 13, 2006</u> as United States Application No. <u>11/354,224</u>
and was amended on <u>February 13, 2006 and September 6, 2006</u>.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge my duty to disclose to the United States Patent and Trademark Office all information that I know to be material to patentability as defined in 37 C.F.R. §1.56, including for continuation-in-part applications, material information which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application.

I hereby claim foreign priority benefits under 35 U.S.C. §119(a)-(d) or (f), or §365(b) of any foreign application(s) for patent or inventor's or plant breeder's rights certificate(s), or §365(a) of any PCT International application which designated at least one country other than the United States, listed below and have also identified below, by checking the box, any foreign application for patent or inventor's or plant breeder's rights certificate(s) or PCT International application having a filing date before that of the application on which priority is claimed.

| Prior Foreign Application(s): | | | Priority NOT Claimed |
|---|---|---|---|
| (Number) | (Country) | (Filing Date, MM/DD/YYYY) | ☐ |
| (Number) | (Country) | (Filing Date, MM/DD/YYYY) | ☐ |

I hereby claim the benefit under 35 U.S.C. §119(e) of any United States provisional application(s) listed below:

| 60/153,709 | 09/14/1999 | Expired |
|---|---|---|
| (Application Serial No.) | (Filing Date, MM/DD/YYYY) | (Status: pending, or abandoned) |
| (Application Serial No.) | (Filing Date, MM/DD/YYYY) | (Status: pending, or abandoned) |

*Page 1 of 2 Pages*

**JA0243**

Attorney Docket No. <u>11958/62</u>

I hereby claim the benefit under 35 U.S.C. §120 of any United States applications(s), or §365(c) of any PCT International Application designating the United States, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT International application in the manner provided by the first paragraph of 35 U.S.C. §112, I acknowledge the duty to disclose to the United States Patent and Trademark Office all information known to me to be material to patentability as defined in 37 C.F.R. §1.56 which became available between the filing date of the prior application and the national or PCT International filing date of this application.

| 09/661,222 | 09/13/2000 | Patented |
|---|---|---|
| (Application Serial No.) | (Filing Date, MM/DD/YYYY) | (Status: patented, pending, abandoned) |
| 09/111,896 | 07/08/1998 | Abandoned |
| (Application Serial No.) | (Filing Date, MM/DD/YYYY) | (Status: patented, pending, abandoned) |
| | | |
| (Application Serial No.) | (Filing Date, MM/DD/YYYY) | (Status: patented, pending, abandoned) |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. §1001 and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Full name of sole or first inventor
John K. Overton

Sole or first inventor's signature                                    Date
2009 - 04 - 28

Residence (City, State/Foreign Country)
Chicago, IL

Citizenship
US

Mailing Address
5825 South Blackstone, Chicago, IL 60637

Full name of second joint inventor, if any
Stephen W. Bailey

Second inventor's signature                                    Date

Residence (City, State/Foreign Country)
Chicago, IL

Citizenship
US

Mailing Address
5617 South Dorchester Avenue, Chicago, IL 60637

*Page 2 of 2 Pages*

**JA0244**

May 01 09 05:28p   Liz Kinoshita                    408-501-8419      p.3

Attorney Docket No. 11958/62

---

## DECLARATION FOR UTILITY OR DESIGN PATENT APPLICATION
### (37 CFR §1.63)

As a below named inventor, I hereby declare:

My residence, mailing address, and citizenship are as stated below next to my name;

I believe I am the original, first and sole inventor or an original, first and joint inventor of the subject matter that is claimed and for which a patent is sought on the invention entitled:

**NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL**

the specification of which (check one)

☐ is attached hereto.

☒ was filed on February 13, 2006 as United States Application No. 11/354,224
and was amended on February 13, 2006 and September 6, 2006.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge my duty to disclose to the United States Patent and Trademark Office all information that I know to be material to patentability as defined in 37 C.F.R. §1.56, including for continuation-in-part applications, material information which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application.

I hereby claim foreign priority benefits under 35 U.S.C. §119(a)-(d) or (f), or §365(b) of any foreign application(s) for patent or inventor's or plant breeder's rights certificate(s), or §365(a) of any PCT International application which designated at least one country other than the United States, listed below and have also identified below, by checking the box, any foreign application for patent or inventor's or plant breeder's rights certificate(s) or PCT International application having a filing date before that of the application on which priority is claimed.

| Prior Foreign Application(s): | | | Priority NOT Claimed |
|---|---|---|---|
| | | | ☐ |
| (Number) | (Country) | (Filing Date, MM/DD/YYYY) | |
| | | | ☐ |
| (Number) | (Country) | (Filing Date, MM/DD/YYYY) | |

I hereby claim the benefit under 35 U.S.C. §119(e) of any United States provisional application(s) listed below:

| 60/153,709 | 09/14/1999 | Expired |
|---|---|---|
| (Application Serial No.) | (Filing Date, MM/DD/YYYY) | (Status: pending, or abandoned) |
| | | |
| (Application Serial No.) | (Filing Date, MM/DD/YYYY) | (Status: pending, or abandoned) |

*Page 1 of 2 Pages*

**JA0245**

Attorney Docket No. 11958/62

I hereby claim the benefit under 35 U.S.C. §120 of any United States applications(s), or §365(c) of any PCT International Application designating the United States, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT International application in the manner provided by the first paragraph of 35 U.S.C. §112, I acknowledge the duty to disclose to the United States Patent and Trademark Office all information known to me to be material to patentability as defined in 37 C.F.R. §1.56 which became available between the filing date of the prior application and the national or PCT International filing date of this application.

| 09/661,222 | 09/13/2000 | Patented |
| (Application Serial No.) | (Filing Date, MM/DD/YYYY) | (Status: patented, pending, abandoned) |
| 09/111,896 | 07/08/1998 | Abandoned |
| (Application Serial No.) | (Filing Date, MM/DD/YYYY) | (Status: patented, pending, abandoned) |
| | | |
| (Application Serial No.) | (Filing Date, MM/DD/YYYY) | (Status: patented, pending, abandoned) |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. §1001 and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Full name of sole or first inventor
John K. Overton

Sole or first inventor's signature                                Date

Residence (City, State/Foreign Country)
Chicago, IL

Citizenship
US

Mailing Address
5825 South Blackstone, Chicago, IL 60637

Full name of second joint inventor, if any
Stephen W. Bailey

Second inventor's signature                              Date
2009-05-01

Residence (City, State/Foreign Country)
Chicago, IL

Citizenship
US

Mailing Address
5617 South Dorchester Avenue, Chicago, IL 60637

*Page 2 of 2 Pages*

JA0246

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11354224 |
| **Filing Date:** | 13-Feb-2006 |
| **Title of Invention:** | Network distributed tracking wire transfer protocol |
| **First Named Inventor/Applicant Name:** | John K. Overton |
| **Filer:** | Michael E. Hussey/Sara Vessely |
| **Attorney Docket Number:** | 11958/62 |

Filed as Small Entity

### Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Statutory disclaimer | 2814 | 1 | 70 | 70 |
| **Total in USD ($)** | | | | **70** |

## Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5302110 |
| **Application Number:** | 11354224 |
| **International Application Number:** | |
| **Confirmation Number:** | 7078 |
| **Title of Invention:** | Network distributed tracking wire transfer protocol |
| **First Named Inventor/Applicant Name:** | John K. Overton |
| **Customer Number:** | 00757 |
| **Filer:** | Michael E. Hussey |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 11958/62 |
| **Receipt Date:** | 08-MAY-2009 |
| **Filing Date:** | 13-FEB-2006 |
| **Time Stamp:** | 15:46:50 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $70 |
| RAM confirmation Number | 1935 |
| Deposit Account | 231925 |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
|    Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees) | |
|    Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) | |

JA0249

| Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges) | | | | | |
|---|---|---|---|---|---|

**File Listing:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 11958-62_Resp_TermDisc_Decl_050809_12.pdf | 2383787<br><br>e37cda95a4dcdd787e817ac210c35bf75d729aa7 | yes | 12 |

| | Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|---|
| | **Document Description** | | **Start** | **End** |
| | Miscellaneous Incoming Letter | | 1 | 1 |
| | Amendment/Req. Reconsideration-After Non-Final Reject | | 2 | 2 |
| | Claims | | 3 | 6 |
| | Applicant Arguments/Remarks Made in an Amendment | | 7 | 7 |
| | Terminal Disclaimer Filed | | 8 | 8 |
| | Oath or Declaration filed | | 9 | 12 |

| Warnings: | | | | | |
|---|---|---|---|---|---|
| Information: | | | | | |
| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 29979<br><br>c8e3a89a1013ba97b29b223b424d59bb89feab0d | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |
| | | **Total Files Size (in bytes):** | 2413766 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

JA0251

CERTIFICATE OF EFS FILING UNDER 37 CFR §1.8

I hereby certify that this correspondence is being electronically transmitted to the United States Patent and Trademark Office, Commissioner for Patents, via the EFS pursuant to 37 CFR §1.8 on the below date:

Date: May 8, 2009     Name: Sara E. Vessely     Signature: _Sara E. Vessely_

**BRINKS**
**HOFER**
**GILSON**
**&LIONE**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Appln. of: | John K. Overton et al. | | |
| Appln. No.: | 11/354,224 | Examiner: | Brian J. Gillis |
| Filed: | February 13, 2006 | Art Unit: | 2441 |
| For: | NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL | Conf. No.: | 7078 |
| Attorney Docket No.: | 11958/62 | | |

## TRANSMITTAL

MAIL STOP AMENDMENT
Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Sir:

**Attached is/are:**

☒ Response to Office Action dated April 17, 2009 (6 pgs.); Terminal Disclaimer to Obviate a Double Patenting Rejection Over a Prior Patent (1 pg.); Supplemental Declaration (4 pgs.); Transmittal (1 pg.)

**Fee calculation:**

☐ No additional fee is required.

☒ Small Entity.

☐ An extension fee in an amount of $_____ for a _____-month extension of time under 37 CFR § 1.136(a).

☒ A petition or processing fee in an amount of $70.00 under 37 CFR § 1.20(d).

☐ An additional filing fee has been calculated as shown below:

| | Claims Remaining After Amendment | | Highest No. Previously Paid For | Present Extra | Small Entity | | OR | Not a Small Entity | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Rate | Add'l Fee | | Rate | Add'l Fee |
| Total | | Minus | | | x $26= | | | x $52= | |
| Indep. | | Minus | | | x 110= | | | x $220= | |
| First Presentation of Multiple Dep. Claim | | | | | +$195= | | | + $390= | |
| | | | | | Total | $ | | Total | $ |

**Fee payment:**

☒ Please charge Deposit Account No. 23-1925 in the amount of $70.00 for Terminal Disclaimer.

☐ Payment by credit card in the amount of $_____ (Form PTO-2038 is attached).

☒ The Director is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925.

Respectfully submitted,

05/08/2009
Date

_Michael E. Hussey_
Michael E. Hussey (Reg. No. 63,265)

**JA0252**

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| Application or Docket Number | Filing Date | |
|---|---|---|
| 11/354,224 | 02/13/2006 | ☐ To be Mailed |

### APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | SMALL ENTITY ☒ | | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

### APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT | 05/08/2009 | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 16 | Minus ** 20 | = 0 | X $26 = | 0 | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus *** 3 | = 0 | X $110 = | 0 | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | 0 | OR | TOTAL ADD'L FEE | |

| | | (Column 1) | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/BRENDA HINES/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

**JA0253**

| *Application Number* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| [barcode] | 11/354,224 | OVERTON ET AL. |
| | | |

| **Document Code - DISQ** | **Internal Document – DO NOT MAIL** |
|---|---|

| **TERMINAL DISCLAIMER** | ☒ APPROVED | ☐ DISAPPROVED |
|---|---|---|
| **Date Filed : 5/8/09** | **This patent is subject to a Terminal Disclaimer** | |

| **Approved/Disapproved by:** |
|---|
| Janice Ford |
| 7103640 |

U.S. Patent and Trademark Office

**JA0254**



# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 | John K. Overton | 11958/62 | 7078 |

757    7590    09/02/2009
BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

| EXAMINER |
|---|
| GILLIS, BRIAN J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2441 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/02/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**JA0255**

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 11/354,224 | OVERTON ET AL. |
| | Examiner | Art Unit | |
| | Brian J. Gillis | 2441 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on *08 May 2009*.
2a) ☒ This action is **FINAL**.　　2b) ☐ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) *17-20,22-29 and 33-37* is/are pending in the application.
　　4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) *17-20,22-29 and 33-37* is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.
10) ☒ The drawing(s) filed on *13 February 2006* is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.
　　Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
　　Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
　　a) ☐ All　b) ☐ Some * c) ☐ None of:
　　　1. ☐ Certified copies of the priority documents have been received.
　　　2. ☐ Certified copies of the priority documents have been received in Application No. _____.
　　　3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
　　* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**
1) ☐ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☒ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date *03022009*.
4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

U.S. Patent and Trademark Office
PTOL-326 (Rev. 08-06)　　　　Office Action Summary　　　　Part of Paper No./Mail Date 08272009

**JA0256**

Application/Control Number: 11/354,224             Page 2
Art Unit: 2441

## DETAILED ACTION

### *Double Patenting*

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees.  A nonstatutory obviousness-type double patenting rejection is appropriate where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and  *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent either is shown to be commonly owned with this application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement.

Application/Control Number: 11/354,224                                    Page 3
Art Unit: 2441

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

Claims 17, 20, and 35 are rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims 1, 10, and 14 of U.S. Patent No. 7,233,978. Although the conflicting claims are not identical, they are not patentably distinct from each other because claims 17, 20, and 35 cover the scope of the claims in U.S. Patent 7,233,978.

### *Conclusion*

Applicant's submission of an information disclosure statement under 37 CFR 1.97(c) with the fee set forth in 37 CFR 1.17(p) on March 2, 2009 prompted the new ground(s) of rejection presented in this Office action. Accordingly, **THIS ACTION IS MADE FINAL**. See MPEP § 609.04(b). Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of this final action.

JA0258

Application/Control Number: 11/354,224                                    Page 4
Art Unit: 2441

    Any inquiry concerning this communication or earlier communications from the examiner should be directed to Brian J. Gillis whose telephone number is (571)272-7952. The examiner can normally be reached on M-F 7:30-5:00.

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Wing F. Chan can be reached on 571-272-7493. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

    Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

                                     Brian J Gillis
                                     Examiner
                                     Art Unit 2441

/B. J. G./
Examiner, Art Unit 2441
8/27/2009
/Larry D Donaghue/
Primary Examiner, Art Unit 2454

JA0259

# EAST Search History

## EAST Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L2 | 2 | "09872736" | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 12:09 |
| L14 | 2 | "20070011267" | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
| L10 | 2 | "6466980".pn. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:30 |
| L15 | 7 | "7103640" | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
| L11 | 0 | "7272625 6453404 7349902 20010013059 6594253".pn. | US-PGPUB; USPAT | OR | OFF | 2009/08/27 15:32 |
| L4 | 4 | ("20020112048" "20030065653" "20040205055" "20080005275").pn. | US-PGPUB | OR | OFF | 2009/08/27 13:48 |
| L3 | 90 | ("4553261" "4636858" "4728978" "4800488" "4825406" "4835372" "4914571" "5008700" "5124814" "5193185" "5208623" "5291399" "5319401" "5347600" "5384643" "5414841" "5454101" "5455648" "5475871" "5479654" "5491511" "5499113" "5522077" "5537547" "5550981" "5551027" "5557790" "5560005" "5576952" "5579067" "5610653" "5617570" "5625841" "5649247" "5664170" "5669029" | USPAT | OR | OFF | 2009/08/27 13:47 |

**JA0260**

EAST Search History

| | | "5724575" "5740428"<br>"5764889" "5764906"<br>"5774670" "5781725"<br>"5784565" "5802518"<br>"5809161" "5809331"<br>"5809495" "5813006"<br>"5832487" "5848246"<br>"5864482" "5872973"<br>"5875302" "5903889"<br>"5907837" "5913210"<br>"5915240" "5918214"<br>"5920702" "5940844"<br>"5950173" "5961610"<br>"5966705" "5974124"<br>"5974409" "5978773"<br>"5987519" "5995965"<br>"6032175" "6047332"<br>"6055544" "6058193"<br>"6092189" "6108787"<br>"6131095" "6154738"<br>"6188766" "6201931"<br>"6202070" "6209095"<br>"6212280" "6377896"<br>"6418441" "6438652"<br>"6463454" "6466980"<br>"6578068" "6711408"<br>"7103640" "7233978").pn. | | | | |
|---|---|---|---|---|---|---|
| L23 | 5 | ("5764906" "6418441"<br>"6377986" "5475817"<br>"6131095").pn. | USPAT | OR | OFF | 2009/08/27<br>15:37 |
| L9 | 3 | ("5950173" "5978773"<br>"5913210").pn. | USPAT | OR | OFF | 2009/08/27<br>15:29 |
| L13 | 4 | ("5995965" "6374253"<br>"5724575" "5345586").pn. | USPAT | OR | OFF | 2009/08/27<br>15:35 |
| L7 | 5 | ("7103640" "7233978"<br>"2002032787" "20030065653"<br>"20080005275"<br>"20040205055").pn. | US-PGPUB;<br>USPAT | OR | OFF | 2009/08/27<br>13:58 |
| L6 | 4 | ("7103640" "7233978"<br>"2002032787" "20030065653"<br>"2008005275" "20040205055").<br>pn. | US-PGPUB;<br>USPAT | OR | OFF | 2009/08/27<br>13:58 |
| L12 | 5 | ("7272625" "64453404"<br>"7349902" "20010013059"<br>"6594252").pn. | US-PGPUB;<br>USPAT | OR | OFF | 2009/08/27<br>15:32 |
| L24 | 6 | ((location identifi$6) near5<br>string) near10 (query request)<br>near10 (location address) same<br>hash | US-PGPUB;<br>USPAT;<br>USOCR; EPO;<br>JPO;<br>DERWENT;<br>IBM_TDB | OR | OFF | 2009/08/27<br>15:37 |

JA0261

EAST Search History

| L28 | 2 | (hash adj3 function) near20 (address$3 location) near20 (redirect$3 rerout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
|-----|-----|-----|-----|-----|-----|-----|
| L25 | 123 | (hash adj3 function) near20 (balanc$3 distribut$3 spread $3) near20 (address$3 location) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
| L27 | 0 | (hash adj3 function) near20 (balanc$3 distribut$3 spread $3) near20 (address$3 location) same (redirect$3 rerout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
| L29 | 13 | (hash adj3 function) near20 (redirect$3 rerout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
| L30 | 3 | (US-6470389-$ or US-6370584-$ or US-6167427-$).did. | USPAT | OR | OFF | 2009/08/27 15:37 |
| L5 | 94 | 3 4 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 13:48 |
| L33 | 7135 | 709/217.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
| L34 | 9104 | 709/223.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
| L35 | 4262 | 709/238.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |

JA0262

EAST Search History

| L16 | 1 | hash near10 location near10 (identifier adj3 string) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
|-----|-----|-----|-----|-----|-----|-----|
| L17 | 1 | hash near20 location near20 (identifier adj3 string) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
| L18 | 1 | hash near20 location near20 (identifier near5 string) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
| L19 | 279 | hash near20 location near20 identifier | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
| L20 | 115 | hash near5 location near5 identifier | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
| L22 | 15 | L20 and (@ad<="19990914" @rlad<="19990914") | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
| L21 | 17 | L20 and (@ad<="20000913" @rlad<="20000913") | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
| L26 | 16 | L25 and (@ad<="19980708" @rlad<="19980708") | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
| L31 | 1 | L30 and repository | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |

JA0263

EAST Search History

| L32 | 2 | L30 and table | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/08/27 15:37 |
|-----|---|---------------|------|----|-----|------------------|

**8/27/2009 3:52:54 PM**
**C:\ Documents and Settings\ bgillis1\ My Documents\ EAST\ Workspaces\ 11354224.wsp**

**JA0264**

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11354224 | OVERTON ET AL. |
| | **Examiner** | **Art Unit** |
| | Brian J Gillis | 2441 |

| SEARCHED | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| 709 | 217 | 8/27/2009 | BJG |
| 709 | 223 | 8/27/2009 | BJG |
| 709 | 238 | 8/27/2009 | BJG |

| SEARCH NOTES | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Ordered PLUS search | 10/16/2008 | BJG |
| Updated EAST search | 8/27/2009 | BJG |
| Spoke to Larry Donaghue regarding Double Patenting | 8/27/2009 | BJG |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

| | |
|---|---|
| | |

U.S. Patent and Trademark Office

Part of Paper No. : 08272009

**JA0265**

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11354224 | OVERTON ET AL. |
| | Examiner | Art Unit |
| | Brian J Gillis | 2441 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/16/2008 | 08/27/2009 | | | | | | |
| | 1 | - | - | | | | | | |
| | 2 | - | - | | | | | | |
| | 3 | - | - | | | | | | |
| | 4 | - | - | | | | | | |
| | 5 | - | - | | | | | | |
| | 6 | - | - | | | | | | |
| | 7 | - | - | | | | | | |
| | 8 | - | - | | | | | | |
| | 9 | - | - | | | | | | |
| | 10 | - | - | | | | | | |
| | 11 | - | - | | | | | | |
| | 12 | - | - | | | | | | |
| | 13 | - | - | | | | | | |
| | 14 | - | - | | | | | | |
| | 15 | - | - | | | | | | |
| | 16 | - | - | | | | | | |
| | 17 | ✓ | ✓ | | | | | | |
| | 18 | ✓ | ✓ | | | | | | |
| | 19 | ✓ | ✓ | | | | | | |
| | 20 | ✓ | ✓ | | | | | | |
| | 21 | ✓ | - | | | | | | |
| | 22 | ✓ | ✓ | | | | | | |
| | 23 | ✓ | ✓ | | | | | | |
| | 24 | ✓ | ✓ | | | | | | |
| | 25 | ✓ | ✓ | | | | | | |
| | 26 | ✓ | ✓ | | | | | | |
| | 27 | ✓ | ✓ | | | | | | |
| | 28 | ✓ | ✓ | | | | | | |
| | 29 | ✓ | ✓ | | | | | | |
| | 30 | ✓ | | | | | | | |
| | 31 | ✓ | | | | | | | |
| | 32 | ✓ | | | | | | | |
| | 33 | | ✓ | | | | | | |
| | 34 | | ✓ | | | | | | |
| | 35 | | ✓ | | | | | | |
| | 36 | | ✓ | | | | | | |

U.S. Patent and Trademark Office

Part of Paper No. : 08272009

**JA0266**

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11354224 | OVERTON ET AL. |
| | Examiner | Art Unit |
| | Brian J Gillis | 2441 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| ☐ **Claims renumbered in the same order as presented by applicant** | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/16/2008 | 08/27/2009 | | | | | | | |
| | 37 | | ✓ | | | | | | | |

**JA0267**

| FORM PTO-1449 | | | SERIAL NO. 11/354,224 | CASE NO. 11958/62 |
|---|---|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | | | FILING DATE February 13, 2006 | GROUP ART UNIT 2441 |
| (use several sheets if necessary) | APPLICANT(S): John K. Overton et al. | | | CONFIRMATION NO. 7078 |

**REFERENCE DESIGNATION****U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | A1 | 4,553,261 | 11/1985 | Froessl | | |
| | A2 | 4,636,858 | 01/1987 | Hague | | |
| | A3 | 4,728,978 | 03/1988 | Inoue et al. | | |
| | A4 | 4,800,488 | 01/1989 | Agrawal et al. | | |
| | A5 | 4,825,406 | 04/1989 | Bean et al. | | |
| | A6 | 4,835,372 | 05/1989 | Gombrich et al. | | |
| | A7 | 4,914,571 | 04/1990 | Baratz et al. | | |
| | A8 | 5,008,700 | 04/1991 | Okamoto | | |
| | A9 | 5,124,814 | 06/1992 | Takahashi et al. | | |
| | A10 | 5,193,185 | 03/1993 | Lanter | | |
| | A11 | 5,208,623 | 05/1993 | Takahashi | | |
| | A12 | 5,291,399 | 03/1994 | Chaco | | |
| | A13 | 5,319,401 | 06/1994 | Hicks | | |
| | A14 | 5,347,600 | 09/1994 | Barnsley | | |
| | A15 | 5,384,643 | 01/1995 | Inga et al. | | |
| | A16 | 5,414,841 | 05/1995 | Bingham et al. | | |
| | A17 | 5,454,101 | 09/1995 | Mackay et al. | | |
| | A18 | 5,455,648 | 10/1995 | Kazami | | |
| | A19 | 5,475,817 | 12/1995 | Waldo et al. | | |
| | A20 | 5,479,654 | 12/1995 | Squibb | | |
| | A21 | 5,491,511 | 02/1996 | Olde | | |
| | A22 | 5,499,113 | 03/1996 | Tsuboi | | |
| | A23 | 5,522,077 | 05/1996 | Cuthbert et al. | | |
| | A24 | 5,537,547 | 07/1996 | Chan et al. | | |
| | A25 | 5,550,981 | 08/1996 | Bauer et al. | | |
| | A26 | 5,551,027 | 08/1996 | Choy et al. | | |
| | A27 | 5,557,790 | 09/1996 | Bingham et al. | | |
| | A28 | 5,560,005 | 09/1996 | Hoover et al. | | |
| | A29 | 5,576,952 | 11/1996 | Stutman et al. | | |
| | A30 | 5,579,067 | 11/1996 | Wakabayashi | | |
| | A31 | 5,610,653 | 03/1997 | Abecassis | | |
| | A32 | 5,617,570 | 04/1997 | Russell et al. | | |
| | A33 | 5,625,841 | 04/1997 | Dawkins et al. | | |
| | A34 | 5,649,247 | 07/1997 | Itoh et al. | | |
| | A35 | 5,664,170 | 09/1997 | Taylor | | |
| | A36 | 5,669,029 | 09/1997 | Fyson et al. | | |
| | A37 | 5,724,575 | 03/1998 | Hoover et al. | | |
| | A38 | 5,740,428 | 04/1998 | Mortimore et al. | | |
| | A39 | 5,764,889 | 06/1998 | Ault et al. | | |

| EXAMINER /Brian Gillis/ | DATE CONSIDERED 08/27/2009 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /BJG/

Page 2 of 4

| FORM PTO-1449 | | SERIAL NO. 11/354,224 | | CASE NO. 11958/62 |
|---|---|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | | FILING DATE February 13, 2006 | | GROUP ART UNIT 2441 |
| (use several sheets if necessary) | | APPLICANT(S): John K. Overton et al. | | |

REFERENCE DESIGNATION       U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | A40 | 5,764,906 | 06/1998 | Edelstein et al. | | |
| | A41 | 5,774,670 | 06/1998 | Montulli | | |
| | A42 | 5,781,725 | 07/1998 | Saito | | |
| | A43 | 5,784,565 | 07/1998 | Lewine | | |
| | A44 | 5,802,518 | 09/1998 | Karaev et al. | | |
| | A45 | 5,809,161 | 09/1998 | Auty | | |
| | A46 | 5,809,331 | 09/1998 | Staats et al. | | |
| | A47 | 5,809,495 | 09/1998 | Loaiza | | |
| | A48 | 5,813,006 | 09/1998 | Polnerow et al. | | |
| | A49 | 5,832,487 | 11/1998 | Olds et al. | | |
| | A50 | 5,848,246 | 12/1998 | Gish | | |
| | A51 | 5,864,482 | 01/1999 | Hazama | | |
| | A52 | 5,872,973 | 02/1999 | Mitchell et al. | | |
| | A53 | 5,875,302 | 02/1999 | Obhan | | |
| | A54 | 5,903,889 | 05/1999 | De la Huerga et al. | | |
| | A55 | 5,907,837 | 05/1999 | Ferrel et al. | | |
| | A56 | 5,913,210 | 06/1999 | Call | | |
| | A57 | 5,915,240 | 06/1999 | Karpf | | |
| | A58 | 5,918,214 | 06/1999 | Perkowski | | |
| | A59 | 5,920,702 | 07/1999 | Bleidt et al. | | |
| | A60 | 5,940,844 | 08/1999 | Cahill et al. | | |
| | A61 | 5,950,173 | 09/1999 | Perkowski | | |
| | A62 | 5,961,610 | 10/1999 | Kelly et al. | | |
| | A63 | 5,966,705 | 10/1999 | Koneru et al. | | |
| | A64 | 5,974,124 | 10/1999 | Schlueter, Jr. et al. | | |
| | A65 | 5,974,409 | 10/1999 | Sanu et al. | | |
| | A66 | 5,978,773 | 11/1999 | Hudetz et al. | | |
| | A67 | 5,987,519 | 11/1999 | Peifer et al. | | |
| | A68 | 5,995,965 | 11/1999 | Experton | | |
| | A69 | 6,032,175 | 02/2000 | Fletcher et al. | | |
| | A70 | 6,047,332 | 04/2000 | Viswanathan et al. | | |
| | A71 | 6,055,544 | 04/2000 | DeRose et al. | | |
| | A72 | 6,058,193 | 05/2000 | Cordery et al. | | |
| | A73 | 6,092,189 | 07/2000 | Fisher et al. | | |
| | A74 | 6,108,787 | 08/2000 | Anderson et al. | | |
| | A75 | 6,131,095 | 10/2000 | Low et al. | | |
| | A76 | 6,154,738 | 11/2000 | Call | | |
| | A77 | 6,188,766 | 02/2001 | Kocher | | |
| | A78 | 6,201,931 | 03/2001 | Cipolla et al. | | |
| | A79 | 6,202,070 | 03/2001 | Nguyen et al. | | |
| | A80 | 6,209,095 | 03/2001 | Anderson et al. | | |

| EXAMINER /Brian Gillis/ | DATE CONSIDERED 08/27/2009 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609;
Draw line through citation if not in conformance and not considered. Include copy of this form with next
communication to applicant.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /BJG/

JA0269

Page 3 of 4

| FORM PTO-1449 | SERIAL NO. 11/354,224 | CASE NO. 11958/62 |
|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | FILING DATE February 13, 2006 | GROUP ART UNIT 2441 |
| (use several sheets if necessary) | APPLICANT(S): John K. Overton et al. | |

REFERENCE DESIGNATION          U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (If known) | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | A81 | 6,212,280 | 04/2001 | Howard, Jr. et al. | | |
| | A82 | 6,377,986 | 04/2002 | Philyaw et al. | | |
| | A83 | 6,418,441 | 07/2002 | Call | | |
| | A84 | 6,438,652 | 08/2002 | Jordan et al. | | |
| | A85 | 6,463,454 | 10/2002 | Lumelsky et al. | | |
| | A86 | 6,466,980 | 10/2002 | Lumelsky et al. | | |
| | A87 | 6,578,068 | 06/2003 | Bowman-Amuah | | |
| | A88 | 6,711,408 | 03/2004 | Raith | | |
| | A89 | 7,103,640 | 09/2006 | Overton et al. | | |
| | A90 | 7,233,978 | 06/2007 | Overton et al. | | |
| | A91 | 2002/0112048 | 08/2002 | Gruyer et al. | | |
| | A92 | 2003/0065653 A1 | 04/2003 | Overton et al. | | |
| | A93 | 2004/0205055 A1 | 10/2004 | Overton et al. | | |
| | A94 | 2008/0005275 A1 | 01/2008 | Overton et al. | | |
| | ~~A95~~ | ~~09/111,896~~ | ~~07/1998~~ | ~~Overton et al.~~ | | |

FOREIGN PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (If known) | DATE | COUNTRY | CLASS/ SUBCLASS | TRANSLATION YES OR NO |
|---|---|---|---|---|---|---|
| | A96 | EP 0 568 161 A1 | 01/1992 | Europe | | |
| | A97 | EP 0 889 422 A2 | 01/1999 | Europe | | |
| | ~~A98~~ | ~~EP 0 919 912 A2~~ | ~~06/1999~~ | ~~Europe~~ | | |
| | A99 | WO 86/05610 | 09/1986 | WIPO | | |
| | A100 | WO 98/15910 | 04/19998 | WIPO | | |
| | ~~A101~~ | ~~WO 98/06024~~ | ~~07/1998~~ | ~~WIPO~~ | | |
| | A102 | WO 98/31138 | 07/1998 | WIPO | | |
| | A103 | WO 00/032526 | 01/2000 | WIPO | | |

| EXAMINER INITIAL | | OTHER ART – NON PATENT LITERATURE DOCUMENTS (Include name of author, title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date page(s), volume-issue number(s), publisher, city and/or country where published. |
|---|---|---|
| | ~~A104~~ | ~~Communication relating to the results of the Partial International Search Report for PCT~~ Application No. PCT/US01/18013 dated April 15, 2002. |
| | A105 | D.G. Bourke et al., Programmable Module and Circuit for Machine-Readable Unique Serial Number, IBM Technical Disclosure Bulletin, Vol. 27, No. 4A, Sep. 1, 1984, pp. 1942-1944. |
| | A106 | Kleinholz, L. et al., Supporting Cooperative Medicine: The Bermed Project, IEEE Multimedia, Vol. 1, No. 4, Dec. 21, 1994, pp. 44-53. |
| | A107 | Method for Network Naming and Routing, IBM Technical Disclosure Bulletin, Vol. 37, No. 9, Sep. 1, 1994, pp. 255-256. |
| | A108 | Minimizing Locking to Access Global Shared Data, IBM Technical Disclosure Bulletin, Feb. 1995, pp. 619-622. |

| EXAMINER /Brian Gillis/ | DATE CONSIDERED 08/27/2009 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /BJG/

JA0270

Page 4 of 4

| FORM PTO-1449 | SERIAL NO. 11/354,224 | CASE NO. 11958/62 |
|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | FILING DATE February 13, 2006 | GROUP ART UNIT 2441 |
| (use several sheets if necessary) | APPLICANT(S): John K. Overton et al. | |

| EXAMINER INITIAL | | OTHER ART – NON PATENT LITERATURE DOCUMENTS (Include name of author, title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date page(s), volume-issue number(s), publisher, city and/or country where published. |
|---|---|---|
| | A109 | R. Muniz et al., A Robust Software Barcode Reader Using The Hough Transform, Abstract, 1999, International Conference on Information Intelligence and Systems (Oct. 31 to Nov. 3, 1999). |
| | A110 | D. Fresonke, In-fab Identification of Silicon Wafers With Clean, Laser Marked Barcodes, Abstract, 1994, IEEE/Semi Advanced Semiconductor Manufacturing Conference and Workshop (Nov. 14 to Nov. 16, 1994). |
| | A111 | T. Sriram et al., Applications of Barcode Technology In Automated Storage and Retrieval Systems, Abstract, Proceedings of the 1996 IEEE IECON 22nd International Conference on Industrial Electrodes (Aug. 5 to Aug. 10, 1996). |
| | A112 | V.L. Callaghan et al., Structures and Metrics for Image Storage and Interchange, Journal of Electronic Imaging, Vol. 2, No. 2, Apr. 1, 1993, pp. 126-137. |
| | A113 | Beitz et al., Service Location in an Open Distributed Environment, Second International Workshop on Services in Distributed and Networked Environments, IEEE Computer Society Press, June 1995, pp. 28-34. |
| | ~~A114~~ | ~~T. Baer, Tales from the Network, Computerworld Healthcare Journal,~~ www.computerworld.com/news/1996/story/0,11280,14557,00.html, Oct. 1, 1996, pp. 1-9. |

| EXAMINER /Brian Gillis/ | DATE CONSIDERED 08/27/2009 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609;
Draw line through citation if not in conformance and not considered. Include copy of this form with next
communication to applicant.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /BJG/

JA0271

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that this correspondence is being filed electronically with the U.S. Patent and Trademark Office on

Date: _October 27, 2009_____ Name: _Sara E. Vessely_____ Signature: _____

PATENT
Our Case No. 11958/62

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Appln. of: | John K. Overton et al. | | |
| Appln. No.: | 11/354,224 | Examiner: | Brian J. Gillis |
| Filed: | February 13, 2006 | Art Unit: | 2441 |
| For: | NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL | Confirmation No.: | 7078 |
| Attorney Docket No: | 11958/62 | | |

## RESPONSE TO FINAL OFFICE ACTION OF SEPTEMBER 2, 2009

MAIL STOP AF
Commissioner for Patents
P. O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

In response to the Final Office Action of September 2, 2009, the Applicants respectfully request consideration of the following remarks in the above-referenced patent application. Also enclosed for submission is a terminal disclaimer.

**Listing of the claims begin on page 2 of this paper.**
**Remarks begin on page 6 of this paper.**

Page 1 of 6

JA0272

Serial No. 11/354,224                    Filed:  February 13, 2006
Response to Office Action dated September 2, 2009
Response filed October 27, 2009

**Listing of the Claims**

This listing of claims contains no amendments and is being provided for the convenience of the Examiner:

Claims 1-16  (Cancelled).

17.    (Previously Presented) A system for managing data stored in a distributed network, the system comprising:

a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and

a data location server network comprising a plurality of data location servers, wherein data location information for a plurality of data entities is stored in the data location server network, at least one of the plurality of data location servers includes location information associated with the identifier string, each one of the plurality of data location servers comprises a processor and a portion of the data location information, the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.

18.    (Previously Presented) The system of claim 17, wherein the location information comprises any portion of a hash table generated with the hash function.

19.    (Previously Presented) The system of claim 17, wherein the data repository comprises a plurality of data repository servers and wherein each of the plurality of data location servers is configured, in response to a request to store data in the data repository, to execute the hash function and store the data on one of the plurality of data repository servers based on a result of the hash function.

JA0273

Serial No. 11/354,224                              Filed: February 13, 2006
Response to Office Action dated September 2, 2009
Response filed October 27, 2009

20.   (Previously Presented) A system for managing data location information and providing the data location information in response to location queries, the system comprising:

a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity;

wherein the location server includes a processor; and

programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity.

21.   (Cancelled)

22.   (Previously Presented) The system of claim 20, wherein the list of at least one other location server comprises a list of a plurality of location servers in the network and a corresponding list of a plurality of entities having location information on the respective one of the plurality of location servers.

23.   (Previously Presented) The system of claim 20, wherein each of a plurality of location servers in the network stores only a portion of the data location information.

24.   (Previously Presented) The system of claim 20, wherein the location information in the location server is maintained in an indexed location store.

JA0274

Serial No. 11/354,224                                  Filed: February 13, 2006
Response to Office Action dated September 2, 2009
Response filed October 27, 2009

    25.    (Previously Presented) The system of claim 24, wherein the indexed location store comprises a string store indexed by a hash table.

    26.    (Previously Presented) The system of claim 24, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of clients.

    27.    (Previously Presented) The system of claim 24, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers.

    28.    (Previously Presented) The system of claim 24, wherein the location query identifying the desired entity comprises a unique identifier for the desired entity, and wherein the programming logic stored on the location server further comprises programming logic configured to apply an index function to the unique identifier to retrieve at least a portion of the locations associated with the unique identifier in the indexed location store.

    29.    (Previously Presented) The system of claim 28, wherein the indexed location store comprises a string store and the index function comprises a hash function.

Claims 30-32 (Cancelled).

    33.    (Previously Presented)  The system of claim 17, wherein each one of the data location servers is configured to return all location information associated with a respective one of the data entities in response to a request for any location information associated with the respective one of the data entities.

    34.    (Previously Presented)  The system of claim 17, wherein the location information includes a hash table and the hash table includes an association between a hash of the string identifier and at least one identifier of the at least one of the plurality of data location servers.

JA0275

Serial No. 11/354,224                                          Filed: February 13, 2006
Response to Office Action dated September 2, 2009
Response filed October 27, 2009

35.     (Previously Presented) A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising:

correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network,  each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network;

receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities;

determining which of the plurality of location servers includes the location information;

sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and

sending a redirect message to the client in response to determining the one of the plurality of  location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information.

36.     (Previously Presented) The method of claim 35, further comprising applying an identifier of the data entity to an indexing function to determine which of the location servers includes the location information.

37.     (Previously Presented) The method of claim 36, wherein each one of the plurality of location servers comprises a portion of an indexed table of the identifiers and corresponding associated locations, and wherein determining which of the plurality of location servers includes the location information comprises applying one of the identifiers to a hash function to look up corresponding associated locations in the indexed table, the one of the identifiers identifying the data entity.

JA0276

Serial No. 11/354,224      Filed: February 13, 2006
Response to Office Action dated September 2, 2009
Response filed October 27, 2009

## REMARKS

### Double Patenting Rejections

The Final Office Action dated September 2, 2009, rejected claims 17, 20, and 35 on the ground of non-statutory obviousness-type double patenting as being unpatentable over claims 1, 10, and 14 of U.S. Patent No. 7,233,978. To expedite prosecution of this application, a terminal disclaimer is being submitted with this response. The submission of the terminal disclaimer overcomes the non-statutory double patent rejections of claims 17, 20, and 35. Applicants respectfully request withdrawal of the double patenting rejections of claims 17, 20, and 35.

Because no grounds were provided for rejecting dependent claims 18-19, 22-29, 33-34, and 36-37, the submission of the terminal disclaimer also overcomes the rejection of dependent claims 18-19, 22-29, 33-34, and 36-37. Applicants respectfully request withdrawal of the rejections of claims 18-19, 22-29, 33-34, and 36-37. The present pending claims of this application are allowable and Applicants respectfully request the Examiner to issue a Notice of Allowance for this application.

        Respectfully submitted,

        Michael E. Hussey
        Attorney Reg. No. 63,265
        Attorney for Applicants

MEH/sev

BRINKS HOFER GILSON & LIONE
**CUSTOMER NO. 27879**
Telephone: 317-636-0886
Facsimile: 317-634-6701

JA0277

PTO/SB/26(1-08)

| TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A PRIOR PATENT | Docket Number (Optional) 11958/62 |
|---|---|

| **In re Application of:** | John K. Overton and Stephen W. Bailey |
|---|---|
| **Application No.** | 11/354,224 |
| **Filed:** | February 13, 2006 |
| **For:** | NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL |

The owner*, Econnectix Corporation, of 100 percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application, which would extend beyond the expiration date of the full statutory term defined in 35 U.S.C. 154 to 156 and 173, as presently shortened by any terminal disclaimer, of prior Patent No. 7,233,978. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of any patent granted on the instant application that would extend to the expiration date of the full statutory term as defined in 35 U.S.C. 154 to 156 and 173 of the prior patent, as presently shortened by any terminal disclaimer, in the event that it later: expires for failure to pay a maintenance fee, is held unenforceable, is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims canceled by a reexamination certificate, is reissued, or is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

Check either box 1 or 2 below, if appropriate.

1. ☐ For submissions on behalf of a business/organization (e.g., corporation, partnership, university, government agency, etc.), the undersigned is empowered to act on behalf of the business/ organization.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

2. ☒ The undersigned is an attorney of record. Registration No. 63,265

| _(signature)_ | 10/27/2009 |
|---|---|
| Signature | Date |
| Michael E. Hussey | 317-636-0886 |
| Typed or Printed Name | Telephone No. |

☒ Terminal disclaimer fee under 37 CFR 1.20(d) is included.
☐ A check in the amount of the fee is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☒ The Commissioner is hereby authorized to charge any fees which may be required or credit any overpayment to Deposit Account No. 23-1925.

**WARNING:** Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

* Statement under 37 CFR 3.73(b) is required if terminal disclaimer is signed by the assignee (owner). Form PTO/SB/96 may be used for making this certification. See MPEP § 324.

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11354224 |
| **Filing Date:** | 13-Feb-2006 |
| **Title of Invention:** | Network distributed tracking wire transfer protocol |
| **First Named Inventor/Applicant Name:** | John K. Overton |
| **Filer:** | Michael E. Hussey/Sara Vessely |
| **Attorney Docket Number:** | 11958/62 |

Filed as Small Entity

### Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Statutory disclaimer | 2814 | 1 | 70 | 70 |
| **Total in USD ($)** | | | | **70** |

## Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 6339003 |
| **Application Number:** | 11354224 |
| **International Application Number:** | |
| **Confirmation Number:** | 7078 |
| **Title of Invention:** | Network distributed tracking wire transfer protocol |
| **First Named Inventor/Applicant Name:** | John K. Overton |
| **Customer Number:** | 00757 |
| **Filer:** | Michael E. Hussey |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 11958/62 |
| **Receipt Date:** | 27-OCT-2009 |
| **Filing Date:** | 13-FEB-2006 |
| **Time Stamp:** | 15:59:26 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $70 |
| RAM confirmation Number | 2278 |
| Deposit Account | 231925 |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
|     Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees) | |
|     Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) | |

JA0281

Charge any Additional Fees required under 37 C.F.R. Section 1.19 (Document supply fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.20 (Post Issuance fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 11958_62_Resp_TermDisc_102709_8.pdf | 1786421<br>e76bee44698c01fdb7db5d0d196f9ea3331eddc9 | yes | 8 |

| | Multipart Description/PDF files in .zip description | | | | |
|---|---|---|---|---|---|
| | Document Description | | Start | End | |
| | Miscellaneous Incoming Letter | | 1 | 1 | |
| | Amendment After Final | | 2 | 2 | |
| | Claims | | 3 | 6 | |
| | Applicant Arguments/Remarks Made in an Amendment | | 7 | 7 | |
| | Terminal Disclaimer Filed | | 8 | 8 | |

| Warnings: | | | | | |
|---|---|---|---|---|---|
| Information: | | | | | |
| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 29979<br>315e33da6c43759174e09e59d2faf7f0d35e46e4 | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |
| | | | Total Files Size (in bytes): | 1816400 | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

JA0283

<table>
<tr><td colspan="2">

**CERTIFICATE OF EFS FILING UNDER 37 CFR §1.8**

I hereby certify that this correspondence is being electronically transmitted to the United States Patent and Trademark Office, Commissioner for Patents, via the EFS pursuant to 37 CFR §1.8 on the below date:

Date: October 27, 2009     Name: Sara E. Vessely     Signature: _Sara E. Vessely_

</td><td>

**B R I N K S**
**H O F E R**
**G I L S O N**
**& L I O N E**

</td></tr>
</table>

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:   John K. Overton et al.

Appln. No.:    11/354,224

Filed:        February 13, 2006

For:         NETWORK DISTRIBUTED TRACKING
              WIRE TRANSFER PROTOCOL

Attorney Docket No.:    11958/62

Examiner:   Brian J. Gillis

Art Unit:     2441

Conf. No.:   7078

## TRANSMITTAL

MAIL STOP AF
Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Sir:

**Attached is/are:**

☒   Response to Final Office Action dated September 2, 2009 (6 pgs.); Terminal Disclaimer to Obviate a Double Patenting Rejection Over a Prior Patent (1 pg.); Transmittal (1 pg.)

**Fee calculation:**

☐   No additional fee is required.

☒   Small Entity.

☐   An extension fee in an amount of $_____ for a _____-month extension of time under 37 CFR § 1.136(a).

☒   A petition or processing fee in an amount of $70.00 under 37 CFR § 1.20(d).

☐   An additional filing fee has been calculated as shown below:

| | Claims Remaining After Amendment | | Highest No. Previously Paid For | Present Extra | Small Entity | | OR | Not a Small Entity | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Rate | Add'l Fee | | Rate | Add'l Fee |
| Total | 17 | Minus | 17 | 0 | x $26= | | | x $52= | |
| Indep. | 3 | Minus | 3 | 0 | x 110= | | | x $220= | |
| First Presentation of Multiple Dep. Claim | | | | | +$195= | | | + $390= | |
| | | | | | Total | $ | | Total | $ |

**Fee payment:**

☒   Please charge Deposit Account No. 23-1925 in the amount of $70.00 for Terminal Disclaimer.

☐   Payment by credit card in the amount of $_____ (Form PTO-2038 is attached).

☒   The Director is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925.

Respectfully submitted,

10/27/2009
Date

Michael E. Hussey (Reg. No. 63,265)

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| Application or Docket Number | Filing Date | |
|---|---|---|
| 11/354,224 | 02/13/2006 | ☐ To be Mailed |

### APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | SMALL ENTITY ☒ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | OR | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | |

### APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| | 10/27/2009 | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
| AMENDMENT | Total (37 CFR 1.16(i)) | * 17 | Minus ** 20 | = 0 | X $26 = | 0 | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus *** 3 | = 0 | X $110 = | 0 | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | 0 | OR | TOTAL ADD'L FEE | |

| | | (Column 1) | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | | |
| AMENDMENT | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/PARTHENIA MERRILL/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

**JA0285**

| **Application Number** | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 11/354,224 | OVERTON ET AL. |
| | | |

| **Document Code - DISQ** | **Internal Document – DO NOT MAIL** |
|---|---|

| **TERMINAL DISCLAIMER** | ☒ APPROVED | ☐ DISAPPROVED |
|---|---|---|
| **Date Filed : 10/27/09** | **This patent is subject to a Terminal Disclaimer** | |

| **Approved/Disapproved by:** |
|---|
| Felicia D. Roberts |
| 7,233,978 |
| |

U.S. Patent and Trademark Office



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

757     7590     11/18/2009

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

| EXAMINER |
|---|
| GILLIS, BRIAN J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2441 | |

DATE MAILED: 11/18/2009

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 | John K. Overton | 11958/62 | 7078 |

TITLE OF INVENTION: NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 02/18/2010 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

**JA0287**

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: <u>Mail</u>   **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or <u>Fax</u>  **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

|  |  |  |
|---|---|---|
| 757 | 7590 | 11/18/2009 |

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 | John K. Overton | 11958/62 | 7078 |

TITLE OF INVENTION: NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 02/18/2010 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| GILLIS, BRIAN J | 2441 | 709-245000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.

☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____  Date _____

Typed or printed name _____  Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

**JA0288**



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 | John K. Overton | 11958/62 | 7078 |

757        7590        11/18/2009

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

| EXAMINER |
|---|
| GILLIS, BRIAN J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2441 | |

DATE MAILED: 11/18/2009

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 402 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 402 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85  (Rev. 08/07) Approved for use through 08/31/2010.

JA0289

| *Notice of Allowability* | Application No. | Applicant(s) |
|---|---|---|
| | 11/354,224 | OVERTON ET AL. |
| | Examiner | Art Unit | |
| | Brian J. Gillis | 2441 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the Amendment after Final filed October 27, 2009*.

2. ☒ The allowed claim(s) is/are *17-20,22-29 and 33-37*.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
     a) ☐ All     b) ☐ Some*     c) ☐ None     of the:
         1. ☐ Certified copies of the priority documents have been received.
         2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
         3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the
            International Bureau (PCT Rule 17.2(a)).
     * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF
     INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
     (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached
         1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .
     (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
         Paper No./Mail Date _____ .
     **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the
     attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3. ☐ Information Disclosure Statements (PTO/SB/08),
     Paper No./Mail Date _____
4. ☐ Examiner's Comment Regarding Requirement for Deposit
     of Biological Material

5. ☐ Notice of Informal Patent Application
6. ☐ Interview Summary (PTO-413),
     Paper No./Mail Date _____ .
7. ☐ Examiner's Amendment/Comment
8. ☒ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____ .

/Larry Donaghue/
Primary Examiner, Art Unit 2454

**JA0290**

Application/Control Number: 11/354,224                                            Page 2

Art Unit: 2441

## DETAILED ACTION

This action is responsive to the Amendment after Final filed October 27, 2009.

Claims 17-20, 22-29, and 33-37 were pending.  *Claims 17-20, 22-29, 33-37 are allowed.*

## REASONS FOR ALLOWANCE

The following is an examiner's statement of reasons for allowance:

The prior art of record fails to teach neither singly nor in combination, the claimed

limitations of "a data location server network comprising a plurality of data location

servers, wherein data location information for a plurality of data entities is stored in the

data location server network, at least one of the plurality of data location servers

includes location information associated with the identifier string, each one of the

plurality of data location servers comprises a processor and a portion of the data

location information, *the portion of the data location information included in a*

*corresponding one of the data location servers is based on a hash function used to*

*organize the data location information across the plurality of data location servers, and*

*each one of the data location servers is configured to determine the at least one of the*

*plurality of data location servers based on the hash function applied to the identifier*

*string.*" (emphasis added) as stated in claims 17, and " programming logic stored on the

location server, wherein the programming logic is configured to return, in response to a

location query related to a desired entity, a location message, the location message in

conformance with the transfer protocol and comprising at least one location associated

with the desired entity, wherein the programming logic is further configured to return the

location message if the location server contains location information for the desired

entity, and *wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity*." (emphasis added) as stated in claim 20 and similarly in claim 35. These limitations, in conjunction with other limitations in the independent claim, are not specifically disclosed or remotely suggested in the prior art of record. A review of claims 1-18 indicated claims 1-18 are allowable over the prior art of record.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Brian J. Gillis whose telephone number is (571)272-7952. The examiner can normally be reached on M-F 7:30-5:00.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Wing F. Chan can be reached on 571-272-7493. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 11/354,224                                    Page 4
Art Unit: 2441

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


                                                    Brian J Gillis
                                                    Examiner
                                                    Art Unit 2441

/B. J. G./
Examiner, Art Unit 2441
11/9/2009
/Larry  Donaghue/
Primary Examiner, Art Unit 2454

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11354224 | OVERTON ET AL. |
| | **Examiner** | **Art Unit** |
| | Brian J Gillis | 2441 |

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | |
|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | **NON-CLAIMED** |
| 709 | 217 | G 0 6 F | 15 / 16 (2006.01.01) | G 0 6 F | 17 / 30 (2006.01.01) |

### CROSS REFERENCE(S)

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) |
|---|---|
| 709 | 219 |
| 707 | 10 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

☐ Claims renumbered in the same order as presented by applicant ☐ CPA ☒ T.D. ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 1 | 17 | 4 | 33 | | | | | | | | | | |
| | 2 | 2 | 18 | 5 | 34 | | | | | | | | | | |
| | 3 | 3 | 19 | 15 | 35 | | | | | | | | | | |
| | 4 | 6 | 20 | 16 | 36 | | | | | | | | | | |
| | 5 | | 21 | 17 | 37 | | | | | | | | | | |
| | 6 | 7 | 22 | | | | | | | | | | | | |
| | 7 | 8 | 23 | | | | | | | | | | | | |
| | 8 | 9 | 24 | | | | | | | | | | | | |
| | 9 | 10 | 25 | | | | | | | | | | | | |
| | 10 | 11 | 26 | | | | | | | | | | | | |
| | 11 | 12 | 27 | | | | | | | | | | | | |
| | 12 | 13 | 28 | | | | | | | | | | | | |
| | 13 | 14 | 29 | | | | | | | | | | | | |
| | 14 | | 30 | | | | | | | | | | | | |
| | 15 | | 31 | | | | | | | | | | | | |
| | 16 | | 32 | | | | | | | | | | | | |

| /Brian J Gillis/ Examiner.Art Unit 2441 | 11/9/2009 | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 17 | |
| /Larry Donaghue/ Primary Examiner.Art Unit 2454 | 11/16/2009 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 10 |

JA0294

| *Index of Claims* | Application/Control No.  11354224 | Applicant(s)/Patent Under Reexamination  OVERTON ET AL. |
|---|---|---|
| | Examiner  Brian J Gillis | Art Unit  2441 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☒ T.D. | ☐ R.1.47 |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/16/2008 | 08/27/2009 | 11/09/2009 | | | | | |
| | 1 | - | - | - | | | | | |
| | 2 | - | - | - | | | | | |
| | 3 | - | - | - | | | | | |
| | 4 | - | - | - | | | | | |
| | 5 | - | - | - | | | | | |
| | 6 | - | - | - | | | | | |
| | 7 | - | - | - | | | | | |
| | 8 | - | - | - | | | | | |
| | 9 | - | - | - | | | | | |
| | 10 | - | - | - | | | | | |
| | 11 | - | - | - | | | | | |
| | 12 | - | - | - | | | | | |
| | 13 | - | - | - | | | | | |
| | 14 | - | - | - | | | | | |
| | 15 | - | - | - | | | | | |
| | 16 | - | - | - | | | | | |
| 1 | 17 | ✓ | ✓ | = | | | | | |
| 2 | 18 | ✓ | ✓ | = | | | | | |
| 3 | 19 | ✓ | ✓ | = | | | | | |
| 6 | 20 | ✓ | ✓ | = | | | | | |
| | 21 | ✓ | - | - | | | | | |
| 7 | 22 | ✓ | ✓ | = | | | | | |
| 8 | 23 | ✓ | ✓ | = | | | | | |
| 9 | 24 | ✓ | ✓ | = | | | | | |
| 10 | 25 | ✓ | ✓ | = | | | | | |
| 11 | 26 | ✓ | ✓ | = | | | | | |
| 12 | 27 | ✓ | ✓ | = | | | | | |
| 13 | 28 | ✓ | ✓ | = | | | | | |
| 14 | 29 | ✓ | ✓ | = | | | | | |
| | 30 | ✓ | - | - | | | | | |
| | 31 | ✓ | - | - | | | | | |
| | 32 | ✓ | - | - | | | | | |
| 4 | 33 | | ✓ | = | | | | | |
| 5 | 34 | | ✓ | = | | | | | |
| 15 | 35 | | ✓ | = | | | | | |
| 16 | 36 | | ✓ | = | | | | | |

U.S. Patent and Trademark Office

Part of Paper No. : 11092009

JA0295

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11354224 | OVERTON ET AL. |
| | Examiner | Art Unit |
| | Brian J Gillis | 2441 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ **Claims renumbered in the same order as presented by applicant**    ☐ CPA    ☒ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/16/2008 | 08/27/2009 | 11/09/2009 | | | | | | |
| 17 | 37 | | ✓ | = | | | | | | |

U.S. Patent and Trademark Office        Part of Paper No. : 11092009

**JA0296**

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11354224 | OVERTON ET AL. |
| | **Examiner** | **Art Unit** |
| | Brian J Gillis | 2441 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 709 | 217 | 11/9/2009 | BJG |
| 709 | 219 | 11/9/2009 | BJG |
| 709 | 223 | 11/9/2009 | BJG |
| 709 | 238 | 11/9/2009 | BJG |
| 707 | 10 | 11/9/2009 | BJG |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Ordered PLUS search | 10/16/2008 | BJG |
| Updated EAST search | 8/27/2009 | BJG |
| Spoke to Larry Donaghue regarding Double Patenting | 8/27/2009 | BJG |
| Updated EAST search | 11/9/2009 | BJG |
| Inventor name search using PALM | 11/9/2009 | BJG |
| NPL search see attached search history | 11/9/2009 | BJG |
| Interference search see attached search history | 11/9/2009 | BJG |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 709 | 217 | 11/9/2009 | BJG |
| 709 | 219 | 11/9/2009 | BJG |
| 707 | 10 | 11/9/2009 | BJG |

| | |
|---|---|
| | |

Part of Paper No. : 11092009

**JA0297**

OK TO ENTER: /BJG/
11/09/2009

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that this correspondence is being filed electronically with the U.S. Patent and Trademark Office on

Date: _October 27, 2009_____ Name: _Sara E. Vessely_____ Signature: _____

PATENT
Our Case No. 11958/62

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:   John K. Overton et al.

Appln. No.:       11/354,224

Filed:            February 13, 2006

For:              NETWORK DISTRIBUTED TRACKING
                  WIRE TRANSFER PROTOCOL

Attorney Docket No:      11958/62

Examiner:  Brian J. Gillis

Art Unit:   2441

Confirmation No.: 7078

## RESPONSE TO FINAL OFFICE ACTION OF SEPTEMBER 2, 2009

MAIL STOP AF
Commissioner for Patents
P. O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

In response to the Final Office Action of September 2, 2009, the Applicants respectfully request consideration of the following remarks in the above-referenced patent application.  Also enclosed for submission is a terminal disclaimer.

**Listing of the claims begin on page 2 of this paper.**
**Remarks begin on page 6 of this paper.**

Page 1 of 6



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 7078**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 **RULE** | 709 | 2441 | 11958/62 |

**APPLICANTS**
    John K. Overton, Chicago, IL;
    Stephen W. Bailey, Chicago, IL;

**\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
    This application is a CON of 09/661,222 09/13/2000 PAT 7,103,640
       which claims benefit of 60/153,709 09/14/1999       \*
       and is a CIP of 09/111,896 07/08/1998 ABN
         (\*)Data provided by applicant is not consistent with PTO records.

**\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**\*\* IF REQUIRED, FOREIGN FILING LICENSE GRANTED \*\* \*\* SMALL ENTITY \*\***
    03/16/2006

| Foreign Priority claimed | ☐ Yes ☑ No | | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met | ☐ Yes ☑ No | ☐ Met after Allowance | | | | | |
| Verified and Acknowledged | /BRIAN J GILLIS/ Examiner's Signature | BJG Initials | | IL | 12 | 16 | 3 |

**ADDRESS**
    BRINKS HOFER GILSON & LIONE
    P.O. BOX 10395
    CHICAGO, IL 60610
    UNITED STATES

**TITLE**
    Network distributed tracking wire transfer protocol

| FILING FEE RECEIVED 565 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

JA0299

US Patent and Trademark Office for EIC - Advanced Search (INZZ)     Page 1 of 2



## Advanced Search:

### Inspec - 1898 to date (INZZ)

limit

Search history:

| No. | Database | Search term | Info added since | Results | |
|-----|----------|-------------|------------------|---------|---|
| CP | | [Clipboard] | | 0 | - |
| 1 | Inspec - 1898 to date | hash NEAR location NEAR identifier NEAR string | unrestricted | 0 | - |
| 2 | Inspec - 1898 to date | hash NEAR location NEAR identifier | unrestricted | 0 | - |
| 3 | Inspec - 1898 to date | location NEAR identifier NEAR (query OR request) | unrestricted | 0 | - |
| 4 | Inspec - 1898 to date | hash NEAR function NEAR (address OR location) NEAR redirect ADJ route | unrestricted | 0 | - |
| 5 | Inspec - 1898 to date | hash ADJ function NEAR (address OR location) NEAR (redirect OR route) | unrestricted | 0 | - |
| 6 | Inspec - 1898 to date | hash ADJ function | unrestricted | 1680 | show titles |
| 7 | Inspec - 1898 to date | 6 SAME identfier ADJ string | unrestricted | 0 | - |
| 8 | Inspec - 1898 to date | 6 SAME (redirect OR reroute) | unrestricted | 1 | show titles |
| 9 | Inspec - 1898 to date | 6 SAME location NEAR message | unrestricted | 0 | - |
| 10 | Inspec - 1898 to date | redirect NEAR message | unrestricted | 7 | show titles |

hide | delete all search steps... | delete individual search steps...

Enter your search term(s): Search tips ☐ Thesaurus mapping

[                                        ]  [whole document ▾]  🔍  search

☐ Images

Click 🔍 to select terms from the following list(s):

🔍 Publication year 1950-

🔍 Publication year 1898-1949

🔍 Inspec thesaurus - enter a term 🔍

JA0300

- Classification codes A: Physics, 0-1
- Classification codes A: Physics, 2-3
- Classification codes A: Physics, 4-5
- Classification codes A: Physics, 6
- Classification codes A: Physics, 7
- Classification codes A: Physics, 8
- Classification codes A: Physics, 9
- Classification codes B: Electrical & Electronics, 0-5
- Classification codes B: Electrical & Electronics, 6-9
- Classification codes C: Computer & Control
- Classification codes D: Information Technology
- Classification codes E: Mech., Manufac. & Production Engineering
- Treatment codes
- Inspec sub-file
- Language of publication
- Publication types

Top - News & FAQS - Dialog

© 2009 Dialog LLC All Rights Reserved

EAST Search History

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| L1 | 2 | "09872736" | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L2 | 90 | ("4553261" "4636858" "4728978" "4800488" "4825406" "4835372" "4914571" "5008700" "5124814" "5193185" "5208623" "5291399" "5319401" "5347600" "5384643" "5414841" "5454101" "5455648" "5475871" "5479654" "5491511" "5499113" "5522077" "5537547" "5550981" "5551027" "5557790" "5560005" "5576952" "5579067" "5610653" "5617570" "5625841" "5649247" "5664170" "5669029" "5724575" "5740428" "5764889" "5764906" "5774670" "5781725" "5784565" "5802518" "5809161" "5809331" "5809495" "5813006" "5832487" "5848246" "5864482" "5872973" "5875302" "5903889" "5907837" "5913210" "5915240" "5918214" "5920702" "5940844" "5950173" "5961610" "5966705" "5974124" "5974409" "5978773" "5987519" "5995965" "6032175" "6047332" "6055544" "6058193" "6092189" "6108787" "6131095" "6154738" "6188766" "6201931" "6202070" "6209095" "6212280" "6377896" "6418441" "6438652" "6463454" "6466980" "6578068" "6711408" | USPAT | OR | OFF | 2009/11/09 11:15 |

EAST Search History

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | "7103640" "7233978").pn. | | | | | |
| L3 | 4 | ("20020112048" "20030065653" "20040205055" "20080005275").pn. | US-PGPUB | OR | OFF | 2009/11/09 11:15 |
| L4 | 94 | L2 L3 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L5 | 4 | ("7103640" "7233978" "2002032787" "20030065653" "2008005275" "20040205055").pn. | US-PGPUB; USPAT | OR | OFF | 2009/11/09 11:15 |
| L6 | 5 | ("7103640" "7233978" "2002032787" "20030065653" "20080005275" "20040205055").pn. | US-PGPUB; USPAT | OR | OFF | 2009/11/09 11:15 |
| L7 | 3 | ("5950173" "5978773" "5913210").pn. | USPAT | OR | OFF | 2009/11/09 11:15 |
| L8 | 2 | "6466980".pn. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L9 | 0 | "7272625 6453404 7349902 20010013059 6594253".pn. | US-PGPUB; USPAT | OR | OFF | 2009/11/09 11:15 |
| L10 | 5 | ("7272625" "6453404" "7349902" "20010013059" "6594253").pn. | US-PGPUB; USPAT | OR | OFF | 2009/11/09 11:15 |
| L11 | 4 | ("5995965" "6374253" "5724575' "5345586").pn. | USPAT | OR | OFF | 2009/11/09 11:15 |
| L12 | 2 | "20070011267" | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L13 | 7 | "7103640" | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L14 | 1 | hash near10 location near10 (identifier adj3 string) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |

**JA0303**

EAST Search History

| L15 | 1 | hash near20 location near20 (identifier adj3 string) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| --- | --- | --- | --- | --- | --- | --- |
| L16 | 1 | hash near20 location near20 (identifier near5 string) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L17 | 291 | hash near20 location near20 identifier | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L18 | 117 | hash near5 location near5 identifier | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L19 | 17 | L18 and (@ad<="20000913" @rlad<="20000913") | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L20 | 15 | L18 and (@ad<="19990914" @rlad<="19990914") | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L21 | 5 | ("5764906" "6418441" "6377986" "5475817" "6131095").pn. | USPAT | OR | OFF | 2009/11/09 11:15 |
| L22 | 6 | ((location identifi$6) near5 string) near10 (query request) near10 (location address) same hash | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L23 | 126 | (hash adj3 function) near20 (balanc$3 distribut$3 spread $3) near20 (address$3 location) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |

**JA0304**

EAST Search History

| L24 | 16 | L23 and (@ad<="19980708" @rlad<="19980708") | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
|-----|-----|-----|-----|-----|-----|-----|
| L25 | 0 | (hash adj3 function) near20 (balanc$3 distribut$3 spread $3) near20 (address$3 location) same (redirect$3 rerout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L26 | 2 | (hash adj3 function) near20 (address$3 location) near20 (redirect$3 rerout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L27 | 13 | (hash adj3 function) near20 (redirect$3 rerout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L28 | 3 | (US-6470389-$ or US-6370584-$ or US-6167427-$).did. | USPAT | OR | OFF | 2009/11/09 11:15 |
| L29 | 1 | L28 and repository | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L30 | 2 | L28 and table | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L31 | 7342 | 709/217.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
| L32 | 9410 | 709/223.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |

JA0305

EAST Search History

| L33 | 4385 | 709/238.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 11:15 |
|-----|------|---------------|------------------------------------------------------|----|-----|------------------|
| L46 | 6421 | 709/219.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 13:34 |
| L47 | 10683 | 707/10.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/11/09 13:34 |

**EAST Search History (Interference)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| L35 | 0 | (data adj5 repository adj5 store adj5 data adj5 entity).clm. | USPAT; UPAD | OR | OFF | 2009/11/09 13:15 |
| L36 | 1 | (location adj5 information adj5 associated adj5 identifier adj5 string).clm. | USPAT; UPAD | OR | OFF | 2009/11/09 13:16 |
| L38 | 1 | (location adj5 servers adj5 portion adj5 location adj5 information).clm. | USPAT; UPAD | OR | OFF | 2009/11/09 13:17 |
| L39 | 0 | (location adj5 servers adj5 based adj5 hash adj5 function).clm. | USPAT; UPAD | OR | OFF | 2009/11/09 13:18 |
| L40 | 0 | (hash adj5 function adj5 organize adj5 data adj5 location adj5 information).clm. | USPAT; UPAD | OR | OFF | 2009/11/09 13:19 |
| L41 | 0 | (hash adj5 function adj5 identifier adj5 string).clm. | USPAT; UPAD | OR | OFF | 2009/11/09 13:19 |
| L42 | 0 | (location adj5 server adj5 receive adj5 addition adj5 request).clm. | USPAT; UPAD | OR | OFF | 2009/11/09 13:20 |
| L43 | 2 | (addition adj5 request adj5 identifier).clm. | USPAT; UPAD | OR | OFF | 2009/11/09 13:21 |
| L44 | 0 | (location adj5 message adj5 conformance adj5 transfer adj5 protocol).clm. | USPAT; UPAD | OR | OFF | 2009/11/09 13:22 |
| L45 | 0 | (return adj5 redirect adj5 message adj5 location adj5 server).clm. | USPAT; UPAD | OR | OFF | 2009/11/09 13:22 |

**JA0306**

**11/9/2009 1:49:31 PM**
**C:\ Documents and Settings\ bgillis1\ My Documents\ EAST\ Workspaces\ 11354224.wsp**

JA0307

BRINKS
HOFER
GILSON
&LIONE

CERTIFICATE OF EFS FILING UNDER 37 CFR §1.8
I hereby certify that this correspondence is being electronically transmitted to the United States Patent and Trademark Office, Commissioner for
Patents, via the EFS pursuant to 37 CFR §1.8 on the below date:

Date: _January 27, 2010_ Name: _/Michael E. Hussey/_
                                    Michael E. Hussey (Reg. No. 63,265)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:  John K. Overton et al.

Appln. No.:  11/354,224                    Examiner:  Brian J. Gillis

Filed:  February 13, 2006                  Art Unit:  2441

For:  NETWORK DISTRIBUTED TRACKING         Conf. No.: 7078
      WIRE TRANSFER PROTOCOL

Attorney Docket No.:  11958/062

MAIL STOP RCE
Commissioner for Patents
PO Box 1450
Alexandria, VA  22313-1450

### REQUEST FOR CONTINUED EXAMINATION (37 CFR § 1.114)

Sir:Applicant(s) requests continued examination of the above-identified application under 37 CFR §1.114. ☒ Submission under 37 CFR 1.114 (*check at least one of the following*):

☐  Previously submitted:

  ☐  Applicant(s) requests nonentry of any previously-filed unentered amendments.

  ☐  Please enter and consider the Amendment After Final Under 37 CFR §1.116 previously filed on_____.

  ☐  Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____.

  ☐  Other: _____.

☒  Attached is/are:

  ☒  An Information Disclosure Statement

  ☐  An Amendment to the written description, claims, or drawings

  ☐  New Arguments and/or New Evidence in support of Patentability

  ☐  Other: _____

*Page 1 of 3*

Appln. No. 11/354,224          Docket No. 11958/062

☐ Request for suspension of action:

    Applicant(s) hereby requests suspension of action on the above-identified application under 37 CFR §1.103(c) for a period of \_\_\_\_\_ months. (Period of suspension shall not exceed 3 months; requires Processing Fee under 37 CFR §1.17(i)).

☒ Small Entity Status:

    ☒ Applicant(s) hereby asserts entitlement to claim small entity status under 37 CFR §§ 1.9 and 1.27.

    ☐ A small entity statement or assertion of entitlement to claim small entity status was filed in prior application no. \_\_\_\_\_/\_\_\_\_\_ and such status is still proper and desired.

    ☐ Is no longer desired.

☒ Applicant(s) calculate the following fees to be due in connection with this Request:

    ☒ A request fee of $405 under 37 CFR §1.17(e).

    ☐ A suspension processing fee of $\_\_\_\_\_ under 37 CFR §1.17(i).

    ☐ An additional filing fee of $\_\_\_\_\_ under 37 CFR §1.16 (\_\_\_\_\_ additional independent claims and/or \_\_\_\_\_ additional total claims).

    ☐ An extension fee of $\_\_\_\_\_ under 37 CFR §1.17(a) for a _____-month extension of time.

☒ Fee payment to cover the above-enumerated fee(s):

    ☒ Please charge Deposit Account No. 23-1925 (BRINKS HOFER GILSON & LIONE) in the amount of $405.

    ☐ A payment by credit card in the amount of $\_\_\_\_\_ (Form PTO-2038 is attached).

    ☒ The Commissioner is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925 (BRINKS HOFER GILSON & LIONE).

                    Respectfully submitted,

01/27/2010                 /Michael E. Hussey/
Date                        Michael E. Hussey (Reg. No. 63,265)

JA0309

Appln. No. 11/354,224          Docket No. 11958/062

JA0310

<table>
<tr><td>

CERTIFICATE OF EFS FILING UNDER 37 CFR §1.8

I hereby certify that this correspondence is being electronically transmitted to the United States Patent and Trademark Office, Commissioner for Patents, via the EFS pursuant to 37 CFR §1.8 on the below date:

Date:   January 27, 2010   Name:   /Michael E. Hussey/
                                     Michael E. Hussey (Reg. No. 63,265)

</td></tr>
</table>

**PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:   John K. Overton et al.

Appln. No.:     11/354,224                           Examiner:  Brian J. Gillis

Filed:         February 13, 2006                     Art Unit:   2441

For:           NETWORK DISTRIBUTED TRACKING     Confirmation No.: 7078
                 WIRE TRANSFER PROTOCOL

Attorney Docket No:  11958/062

## REQUEST FOR CONTINUED EXAMINATION

MAIL STOP RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

      In response to the Notice of Allowance dated November 18, 2009, please consider the following remarks and the enclosed Information Disclosure Statement. This response is being filed concurrently with a Request for Continued Examination under 37 CFR §1.114.

**Listing of Claims begin on page 2 of this paper.**

**Remarks begin on page 6 of this paper.**

Serial No. 11/354,224

Filed: February 13, 2006
Attorney Ref. 11958/062

**Listing of the Claims**

This listing of claims contains no amendments and is being provided for the convenience of the Examiner:

Listing of claims:

Claims 1-16  (Cancelled).

17.     (Previously Presented) A system for managing data stored in a distributed network, the system comprising:

a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and

a data location server network comprising a plurality of data location servers, wherein data location information for a plurality of data entities is stored in the data location server network, at least one of the plurality of data location servers includes location information associated with the identifier string, each one of the plurality of data location servers comprises a processor and a portion of the data location information, the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.

18.     (Previously Presented) The system of claim 17, wherein the location information comprises any portion of a hash table generated with the hash function.

19.     (Previously Presented) The system of claim 17, wherein the data repository comprises a plurality of data repository servers and wherein each of the plurality of data location servers is configured, in response to a request to store data in the data repository, to execute the hash function and store the data on one of the plurality of data repository servers based on a result of the hash function.

Page 2 of 6

Serial No. 11/354,224                                       Filed:  February 13, 2006
                                                            Attorney Ref. 11958/062

20.     (Previously Presented) A system for managing data location information and providing the data location information in response to location queries, the system comprising:

a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity;

wherein the location server includes a processor; and

programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity.

21.     (Cancelled)

22.     (Previously Presented) The system of claim 20, wherein the list of at least one other location server comprises a list of a plurality of location servers in the network and a corresponding list of a plurality of entities having location information on the respective one of the plurality of location servers.

23.     (Previously Presented) The system of claim 20, wherein each of a plurality of location servers in the network stores only a portion of the data location information.

24.     (Previously Presented) The system of claim 20, wherein the location information in the location server is maintained in an indexed location store.

Serial No. 11/354,224

Filed: February 13, 2006
Attorney Ref. 11958/062

25.     (Previously Presented) The system of claim 24, wherein the indexed location store comprises a string store indexed by a hash table.

26.     (Previously Presented) The system of claim 24, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of clients.

27.     (Previously Presented) The system of claim 24, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers.

28.     (Previously Presented) The system of claim 24, wherein the location query identifying the desired entity comprises a unique identifier for the desired entity, and wherein the programming logic stored on the location server further comprises programming logic configured to apply an index function to the unique identifier to retrieve at least a portion of the locations associated with the unique identifier in the indexed location store.

29.     (Previously Presented) The system of claim 28, wherein the indexed location store comprises a string store and the index function comprises a hash function.

Claims 30-32 (Cancelled).

33.     (Previously Presented)  The system of claim 17, wherein each one of the data location servers is configured to return all location information associated with a respective one of the data entities in response to a request for any location information associated with the respective one of the data entities.

34.     (Previously Presented)  The system of claim 17, wherein the location information includes a hash table and the hash table includes an association between a hash of the string identifier and at least one identifier of the at least one of the plurality of data location servers.

JA0314

Serial No. 11/354,224

Filed:  February 13, 2006
Attorney Ref. 11958/062

35.    (Previously Presented) A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising:

correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network,  each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network;

receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities;

determining which of the plurality of location servers includes the location information;

sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and

sending a redirect message to the client in response to determining the one of the plurality of  location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information.

36.    (Previously Presented) The method of claim 35, further comprising applying an identifier of the data entity to an indexing function to determine which of the location servers includes the location information.

37.    (Previously Presented) The method of claim 36, wherein each one of the plurality of location servers comprises a portion of an indexed table of the identifiers and corresponding associated locations, and wherein determining which of the plurality of location servers includes the location information comprises applying one of the identifiers to a hash function to look up corresponding associated locations in the indexed table, the one of the identifiers identifying the data entity.

JA0315

Serial No. 11/354,224

Filed:  February 13, 2006
Attorney Ref. 11958/062

## <u>REMARKS</u>

Claims 17-20, 22-29, and 33-37 are pending.  Applicant respectfully requests reconsideration in view of the enclosed Information Disclosure Statement.

The present pending claims of this application are allowable and Applicant respectfully requests the Examiner to issue a Notice of Allowance for this application. Should the Examiner deem a telephone conference to be beneficial in expediting allowance/examination of this application, the Examiner is invited to call the undersigned attorney at the telephone number listed below.

Respectfully submitted,

/Michael E. Hussey/

Michael E. Hussey
Attorney Reg. No. 63,265
Attorney for Applicant

MEH/sev

BRINKS HOFER GILSON & LIONE
**CUSTOMER NO. 27879**
Telephone:  317-636-0886
Facsimile:  317-634-6701

JA0316

CERTIFICATE OF EFS FILING UNDER 37 CFR §1.8

I hereby certify that this correspondence is being electronically transmitted to the United States Patent and Trademark Office, Commissioner for Patents, via the EFS pursuant to 37 CFR §1.8 on the below date:

Date: January 27, 2010    Name: /Michael E. Hussey/
                                Michael E. Hussey (Reg. No. 63,265)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:    John K. Overton et al.

Appln. No.:      11/354,224               Examiner:   Brian J. Gillis

Filed:          February 13, 2006         Art Unit:    2441

For:            NETWORK DISTRIBUTED      Confirmation No.:   7078
                  TRACKING WIRE
                  TRANSFER PROTOCOL

Attorney Docket No:   11958/62

## SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

MAIL STOP RCE
Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

      In accordance with the duty of disclosure under 37 CFR §1.56 and §§1.97-1.98, and more particularly in accordance with 37 CFR §1.97(d), Applicant hereby cites the following reference(s):

| U.S. PATENT DOCUMENTS | | |
|---|---|---|
| DOCUMENT NO. | DATE | NAME |
| 5,276,735 | 01/04/1994 | Boebert et al. |
| 5,345,586 | 09/06/1994 | Hamala et al. |
| 6,167,438 | 12/26/2000 | Yates et al. |
| 6,374,253 | 04/16/2002 | Weider et al. |
| 6,453,404 B1 | 09/17/2002 | Bereznyi et al. |
| 6,594,253 B1 | 07/15/2003 | Sallberg et al. |
| 7,272,625 B1 | 09/18/2007 | Hannel et al. |
| 7,349,902 B1 | 03/25/2008 | Arlitt et al. |
| 2001/0013059 A1 | 08/09/2001 | Dawson et al. |

BRINKS
HOFER
GILSON
&LIONE

Appln. No. 11/354,224                                          Attorney Docket No. 11958/62

Applicant is enclosing Form PTO-1449 (one sheet), along with a copy of each listed reference for which a copy is required under 37 CFR §1.98(a)(2). As each of the listed references is in English, no further commentary is believed to be necessary, 37 C.F.R §1.98(a)(3). Applicant respectfully requests the Examiner's consideration of the above reference(s) and entry thereof into the record of this application.

## Commonly Owned Applications

Pursuant to 37 CFR §1.56, Applicant and Applicant's attorney hereby make of record in the above-identified patent application the existence of the below described activities in the below-identified commonly owned co-pending published patent applications, which are related to the above-identified patent application. **Applicant respectfully requests the Examiner to review the claims and the prosecution history, including any Office Actions issued by the U.S. Patent and Trademark Office, for the following patents and patent applications:**

U.S. Patent Publication No. US 2004/0205055 A1 – U.S. Patent Application Serial No. 10/646,350 (11958-60) – Response filed June 3, 2009, to Non-Final Office Action mailed February 3, 2009; Non-Final Office Action mailed September 29, 2009; and

U.S. Patent Publication No. US 2008/0005275 A1 – U.S. Patent Application Serial No. 11/803,332 (11958-63) – Non-Final Office Action mailed July 9, 2009; Response filed December 9, 2009.

By submitting this Statement, Applicant is attempting to fully comply with the duty of candor and good faith mandated by 37 CFR §1.56. As such, this Statement is not intended to constitute an admission that any of the enclosed references, or other information referred to therein, constitutes "prior art" or is otherwise "material to patentability," as that phrase is defined in 37 CFR §1.56(a).

Accordingly, Applicant has calculated no fee to be due in connection with the filing of this Information Disclosure Statement. However, the Director is authorized to charge any fee deficiency associated with the filing of this Information Disclosure

BRINKS
HOFER
GILSON
&LIONE

- 2 -

JA0318

Appln. No. 11/354,224                                    Attorney Docket No. 11958/62

Statement to a deposit account, as authorized in the Transmittal accompanying this Information Disclosure Statement.

Respectfully submitted,


01/27/2010                              /Michael E. Hussey/
                                         Michael E. Hussey
                                        (Reg. No. 63,265)

BRINKS
HOFER
GILSON
&LIONE

JA0319

| FORM PTO-1449 | | SERIAL NO. 11/354,224 | CASE NO. 11958/62 |
|---|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | | FILING DATE February 13, 2006 | GROUP ART UNIT 2441 |
| (use several sheets if necessary) | APPLICANT(S): John K. Overton et al. | | CONFIRMATION NO. 7078 |

**REFERENCE DESIGNATION**      **U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | B1 | 5,276,735 | 01/04/1994 | Boebert et al. | 380/21 | 04/17/1992 |
| | B2 | 5,345,586 | 09/06/1994 | Hamala et al. | 395/650 | 08/25/1992 |
| | B3 | 6,167,438 | 12/26/2000 | Yates et al. | 709/216 | 05/22/1997 |
| | B4 | 6,374,253 B1 | 04/16/2002 | Weider et al. | 707/102 | 12/30/1998 |
| | B5 | 6,453,404 B1 | 09/17/2002 | Bereznyi et al. | 711/171 | 05/27/1999 |
| | B6 | 6,594,253 B1 | 07/15/2003 | Sallberg et al. | 370/349 | 09/29/1998 |
| | B7 | 7,272,625 B1 | 09/18/2007 | Hannel et al. | 709/200 | 03/12/2001 |
| | B8 | 7,349,902 B1 | 03/25/2008 | Arlitt et al. | 707/8 | 08/04/1999 |
| | B9 | 2001/0013059 A1 | 08/09/2001 | Dawson et al. | 709/217 | 02/02/1999 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | COUNTRY | CLASS/ SUBCLASS | TRANSLATION YES OR NO |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| EXAMINER INITIAL | **OTHER ART – NON PATENT LITERATURE DOCUMENTS** (Include name of author, title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date page(s), volume-issue number(s), publisher, city and/or country where published. |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**JA0320**

## Electronic Patent Application Fee Transmittal

| Application Number: | 11354224 |
| --- | --- |
| Filing Date: | 13-Feb-2006 |
| Title of Invention: | NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL |
| First Named Inventor/Applicant Name: | John K. Overton |
| Filer: | Michael E. Hussey/Sara Vessely |
| Attorney Docket Number: | 11958/62 |

Filed as Small Entity

### Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
| --- | --- | --- | --- | --- |
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Request for continued examination | 2801 | 1 | 405 | 405 |
| **Total in USD ($)** | | | | **405** |

## Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 6892085 |
| **Application Number:** | 11354224 |
| **International Application Number:** | |
| **Confirmation Number:** | 7078 |
| **Title of Invention:** | NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL |
| **First Named Inventor/Applicant Name:** | John K. Overton |
| **Customer Number:** | 00757 |
| **Filer:** | Michael E. Hussey |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 11958/62 |
| **Receipt Date:** | 27-JAN-2010 |
| **Filing Date:** | 13-FEB-2006 |
| **Time Stamp:** | 15:48:05 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $ 405 |
| RAM confirmation Number | 2226 |
| Deposit Account | 231925 |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees) | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) | |

JA0323

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | Trans_RCE_Supp_IDS_01_27_1 0.pdf | 58254<br><br>43d4926e8eb049b134a7bbd002be7caa79c6534b | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Request for Continued Examination (RCE) | RCE_01_27_10.pdf | 77759<br><br>dff25a973ed960e33ceb45a5e30ebfa50e59b815 | no | 3 |
| **Warnings:** | | | | | |
| This is not a USPTO supplied RCE SB30 form. | | | | | |
| **Information:** | | | | | |
| 3 | | 11958_62_Response_with_RCE .pdf | 83044<br><br>8a599aefd32071e459e87bd811971bb7f4767e3 | yes | 6 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Amendment Submitted/Entered with Filing of CPA/RCE | 1 | 1 |
| Claims | 2 | 5 |
| Applicant Arguments/Remarks Made in an Amendment | 6 | 6 |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Transmittal Letter | Supp_IDS_01_27_10.pdf | 78311<br><br>a7c135f25953938e35cc70f4e27e63254551 2fc2 | no | 3 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 5 | Information Disclosure Statement (IDS) Filed (SB/08) | PTO_1449_Supp_IDS_01_27_1 0.pdf | 66835<br><br>f8008b1e22c3573c7aeeeed045c9eaa60230 6176 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| This is not an USPTO supplied IDS fillable form | | | | | |
| 6 | NPL Documents | NonFinal_OA_07_09_09.pdf | 374675<br><br>74d1626238515caf0009ac5cb26c46ce15a246bb | no | 11 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |

JA0324

| 7 | NPL Documents | NonFinal_OA_09_29_09.pdf | 583462 | no | 17 |
| | | | bcff1ba0a0b9b42e143edb9d0778503b69a34a89 | | |

**Warnings:**

**Information:**

| 8 | Fee Worksheet (PTO-875) | fee-info.pdf | 30645 | no | 2 |
| | | | 012207273a3223d09d770d366f3df3dd63c4c36e | | |

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 1352985 |
|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

**B R I N K S**
**H O F E R**
**G I L S O N**
**& L I O N E**

CERTIFICATE OF EFS FILING UNDER 37 CFR §1.8

I hereby certify that this correspondence is being electronically transmitted to the United States Patent and Trademark Office, Commissioner for Patents, via the EFS pursuant to 37 CFR §1.8 on the below date:

Date: _January 27, 2010_    Name: _/Michael E. Hussey/_
                                        Michael E. Hussey (Reg. No. 63,265)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:   John K. Overton et al.

Appln. No.:   11/354,224                          Examiner:   Brian J. Gillis

Filed:   February 13, 2006                         Art Unit:   2441

For:   NETWORK DISTRIBUTED TRACKING              Conf. No.:   7078
       WIRE TRANSFER PROTOCOL

Attorney Docket No.:   11958/062

## TRANSMITTAL

MAIL STOP RCE
Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Sir:**Attached is/are**:

☒   Request for Continued Examination (6 pgs.); Request for Continued Examination (37 CFR § 1.114) (2 pgs.); Supplemental Information Disclosure Statement (3 pgs.); PTO-1449 (1 pg.); Transmittal (1 pg.)

**Fee calculation**:

☐   No additional fee is required.

☒   Small Entity.

☐   An extension fee in an amount of $_____ for a _____-month extension of time under 37 CFR § 1.136(a).

☒   A petition or processing fee in an amount of $405 under 37 CFR § 1.17(e).

☐   An additional filing fee has been calculated as shown below:

|  | Claims Remaining After Amendment |  | Highest No. Previously Paid For | Present Extra | Small Entity | | OR | Not a Small Entity | |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  | Rate | Add'l Fee |  | Rate | Add'l Fee |
| Total |  | Minus |  |  | x $26= |  |  | x $52= |  |
| Indep. |  | Minus |  |  | x 110= |  |  | x $220= |  |
| First Presentation of Multiple Dep. Claim |  |  |  |  | +$195= |  |  | + $390= |  |
|  |  |  |  |  | Total | $ |  | Total | $ |

**Fee payment**:

☒   Please charge Deposit Account No. 23-1925 in the amount of $405 for Request for Continued Examination.

☐   Payment by credit card in the amount of $_____ (Form PTO-2038 is attached).

☒   The Director is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925.

Respectfully submitted,

01/27/2010                                    /Michael E. Hussey/
Date                                          Michael E. Hussey (Reg. No. 63,265)

**JA0326**

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**PATENT APPLICATION FEE DETERMINATION RECORD**
Substitute for Form PTO-875

| Application or Docket Number | Filing Date | |
|---|---|---|
| 11/354,224 | 02/13/2006 | ☐ To be Mailed |

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | SMALL ENTITY ☒ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | OR | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| | 01/27/2010 | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
| **AMENDMENT** | Total (37 CFR 1.16(i)) | * 17 | Minus ** 20 | = 0 | X $26 = | 0 | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus *** 3 | = 0 | X $110 = | 0 | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | | |
| | | | | | TOTAL ADD'L FEE | **0** | OR | TOTAL ADD'L FEE | |

| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/PATSY ZIMMERMAN/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

**JA0327**



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

757        7590        03/08/2010

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

| EXAMINER |
|---|
| GILLIS, BRIAN J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2441 | |

DATE MAILED: 03/08/2010

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 | John K. Overton | 11958/62 | 7078 |

TITLE OF INVENTION: NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 06/08/2010 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

**JA0328**

## PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>   **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
<u>or Fax</u>  **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

757     7590     03/08/2010

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 | John K. Overton | 11958/62 | 7078 |

TITLE OF INVENTION: NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 06/08/2010 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| GILLIS, BRIAN J | 2441 | 709-245000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❑ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

❑ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and State or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❑ Individual  ❑ Corporation or other private group entity  ❑ Government

4a. The following fee(s) are submitted:

❑ Issue Fee

❑ Publication Fee (No small entity discount permitted)

❑ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)

❑ A check is enclosed.

❑ Payment by credit card. Form PTO-2038 is attached.

❑ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

❑ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.

❑ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85  (Rev. 08/07) Approved for use through 08/31/2010.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

**JA0329**



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 | John K. Overton | 11958/62 | 7078 |

| | | |
|---|---|---|
| 757 | 7590 | 03/08/2010 |

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

| EXAMINER |
|---|
| GILLIS, BRIAN J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2441 | |

DATE MAILED: 03/08/2010

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 402 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 402 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85  (Rev. 08/07) Approved for use through 08/31/2010.

**JA0330**

| *Notice of Allowability* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 11/354,224 | OVERTON ET AL. | |
| | Examiner | Art Unit | |
| | Brian J. Gillis | 2441 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to _the Request for Continued Examination filed January 27, 2010_.

2. ☒ The allowed claim(s) is/are _17-20,22-29 and 33-37_.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All    b) ☐ Some*    c) ☐ None    of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☒ Information Disclosure Statements (PTO/SB/08),
Paper No./Mail Date 01272010

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413),
Paper No./Mail Date _____ .

7. ☐ Examiner's Amendment/Comment

8. ☒ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____ .

/Larry Donaghue/
Primary Examiner, Art Unit 2454

JA0331

Application/Control Number: 11/354,224                                     Page 2
Art Unit: 2441

## DETAILED ACTION

This action is responsive to the Request for Continued Examination filed January 27, 2010. Claims 17-20, 22-29, and 33-37 were pending. *Claims 17-20, 22-29, and 33-37 are allowed.*

### *Continued Examination Under 37 CFR 1.114*

A request for continued examination under 37 CFR 1.114, including the fee set forth in 37 CFR 1.17(e), was filed in this application after allowance or after an Office action under *Ex Parte Quayle*, 25 USPQ 74, 453 O.G. 213 (Comm'r Pat. 1935). Since this application is eligible for continued examination under 37 CFR 1.114, and the fee set forth in 37 CFR 1.17(e) has been timely paid, prosecution in this application has been reopened pursuant to 37 CFR 1.114. Applicant's submission filed on January 27, 2010 has been entered.

### REASONS FOR ALLOWANCE

The following is an examiner's statement of reasons for allowance:

The prior art of record fails to teach neither singly nor in combination, the claimed limitations of "a data location server network comprising a plurality of data location servers, wherein data location information for a plurality of data entities is stored in the data location server network, at least one of the plurality of data location servers includes location information associated with the identifier string, each one of the plurality of data location servers comprises a processor and a portion of the data location information, *the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to*

JA0332

Application/Control Number: 11/354,224                                      Page 3
Art Unit: 2441

*organize the data location information across the plurality of data location servers, and*

*each one of the data location servers is configured to determine the at least one of the*

*plurality of data location servers based on the hash function applied to the identifier*

*string.*" (emphasis added) as stated in claims 17, and " programming logic stored on the

location server, wherein the programming logic is configured to return, in response to a

location query related to a desired entity, a location message, the location message in

conformance with the transfer protocol and comprising at least one location associated

with the desired entity, wherein the programming logic is further configured to return the

location message if the location server contains location information for the desired

entity, and *wherein the programming logic is further configured to return a redirect*

*message if the location server lacks the location information for the desired entity, the*

*redirect message comprising a list of at least one other location server known to have*

*the location information for the desired entity.*" (emphasis added) as stated in claim 20

and similarly in claim 35.  These limitations, in conjunction with other limitations in the

independent claim, are not specifically disclosed or remotely suggested in the prior art

of record.  A review of claims 17-20, 22-29, and 33-37 indicated claims 17-20, 22-29,

and 33-37 are allowable over the prior art of record.

Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."

Application/Control Number: 11/354,224                                          Page 4
Art Unit: 2441

   Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Brian J. Gillis whose telephone number is (571)272-

7952.  The examiner can normally be reached on M-F 7:30-5:00.

   If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Wing F. Chan can be reached on 571-272-7493.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

   Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


                                             Brian J Gillis
                                             Examiner
                                             Art Unit 2441

/B. J. G./
Examiner, Art Unit 2441
2/22/2010

/Larry  Donaghue/
Primary Examiner, Art Unit 2454

JA0334



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 7078**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 | 709 | 2441 | 11958/62 |
| | **RULE** | | | |

**APPLICANTS**
    John K. Overton, Chicago, IL;
    Stephen W. Bailey, Chicago, IL;

**\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
    This application is a CON of 09/661,222 09/13/2000 PAT 7,103,640
        which claims benefit of 60/153,709 09/14/1999       \*
        and is a CIP of 09/111,896 07/08/1998 ABN
         (\*)Data provided by applicant is not consistent with PTO records.

**\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**\*\* IF REQUIRED, FOREIGN FILING LICENSE GRANTED \*\* \*\* SMALL ENTITY \*\***
    03/16/2006

| Foreign Priority claimed | ☐ Yes ☑ No | | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met | ☐ Yes ☑ No | ☐ Met after Allowance | | | | | |
| Verified and Acknowledged | /BRIAN J GILLIS/ Examiner's Signature | BJG Initials | | IL | 12 | 16 | 3 |

**ADDRESS**
    BRINKS HOFER GILSON & LIONE
    P.O. BOX 10395
    CHICAGO, IL 60610
    UNITED STATES

**TITLE**
    NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

| FILING FEE RECEIVED 565 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

**JA0335**

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L2 | 9 | ("20010013059" \| "5276735" \| "5345586" \| "6167438" \| "6374253" \| "6453404" \| "6594253" \| "7272625" \| "7349902").PN. | US-PGPUB; USPAT | OR | OFF | 2010/02/22 09:36 |
| L3 | 1 | 2 and hash | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 09:38 |
| L4 | 3 | 2 and (redirect$3 re-direct$3 rerout$3 re-rout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 09:47 |
| L7 | 2 | 2 and ((identif$3 id) same (hash function)) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:33 |
| L8 | 2 | "09872736" | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L9 | 90 | ("4553261" "4636858" "4728978" "4800488" "4825406" "4835372" "4914571" "5008700" "5124814" "5193185" "5208623" "5291399" "5319401" "5347600" "5384643" "5414841" "5454101" "5455648" "5475871" "5479654" "5491511" "5499113" "5522077" "5537547" "5550981" "5551027" "5557790" "5560005" "5576952" "5579067" "5610653" "5617570" "5625841" "5649247" "5664170" "5669029" "5724575" "5740428" | USPAT | OR | OFF | 2010/02/22 10:48 |

JA0336

| | | "5764889" "5764906"<br>"5774670" "5781725"<br>"5784565" "5802518"<br>"5809161" "5809331"<br>"5809495" "5813006"<br>"5832487" "5848246"<br>"5864482" "5872973"<br>"5875302" "5903889"<br>"5907837" "5913210"<br>"5915240" "5918214"<br>"5920702" "5940844"<br>"5950173" "5961610"<br>"5966705" "5974124"<br>"5974409" "5978773"<br>"5987519" "5995965"<br>"6032175" "6047332"<br>"6055544" "6058193"<br>"6092189" "6108787"<br>"6131095" "6154738"<br>"6188766" "6201931"<br>"6202070" "6209095"<br>"6212280" "6377896"<br>"6418441" "6438652"<br>"6463454" "6466980"<br>"6578068" "6711408"<br>"7103640" "7233978").pn. | | | | |
|---|---|---|---|---|---|---|
| L10 | 4 | ("20020112048"<br>"20030065653" "20040205055"<br>"20080005275").pn. | US-PGPUB | OR | OFF | 2010/02/22<br>10:48 |
| L11 | 94 | L9 L10 | US-PGPUB;<br>USPAT;<br>USOCR; EPO;<br>JPO;<br>DERWENT;<br>IBM_TDB | OR | OFF | 2010/02/22<br>10:48 |
| L12 | 4 | ("7103640" "7233978"<br>"2002032787" "20030065653"<br>"2008005275" "20040205055").<br>pn. | US-PGPUB;<br>USPAT | OR | OFF | 2010/02/22<br>10:48 |
| L13 | 5 | ("7103640" "7233978"<br>"2002032787" "20030065653"<br>"20080005275"<br>"20040205055").pn. | US-PGPUB;<br>USPAT | OR | OFF | 2010/02/22<br>10:48 |
| L14 | 3 | ("5950173" "5978773"<br>"5913210").pn. | USPAT | OR | OFF | 2010/02/22<br>10:48 |
| L15 | 2 | "6466980".pn. | US-PGPUB;<br>USPAT;<br>USOCR; EPO;<br>JPO;<br>DERWENT;<br>IBM_TDB | OR | OFF | 2010/02/22<br>10:48 |
| L16 | 0 | "7272625 6453404 7349902<br>20010013059 6594253".pn. | US-PGPUB;<br>USPAT | OR | OFF | 2010/02/22<br>10:48 |

JA0337

EAST Search History

| L17 | 5 | ("7272625" "6453404" "7349902" "20010013059" "6594253").pn. | US-PGPUB; USPAT | OR | OFF | 2010/02/22 10:48 |
| L18 | 4 | ("5995965" "6374253" "5724575" "5345586").pn. | USPAT | OR | OFF | 2010/02/22 10:48 |
| L19 | 2 | "20070011267" | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L20 | 7 | "7103640" | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L21 | 1 | hash near10 location near10 (identifier adj3 string) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L22 | 1 | hash near20 location near20 (identifier adj3 string) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L23 | 1 | hash near20 location near20 (identifier near5 string) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L24 | 299 | hash near20 location near20 identifier | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L25 | 121 | hash near5 location near5 identifier | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L26 | 17 | L25 and (@ad<="20000913" @rlad<="20000913") | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |

**JA0338**

| L27 | 15 | L25 and (@ad<="19990914" @rlad<="19990914") | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
|-----|-----|----|----|----|----|----|
| L28 | 5 | ("5764906" "6418441" "6377986" "5475817" "6131095").pn. | USPAT | OR | OFF | 2010/02/22 10:48 |
| L29 | 8 | ((location identifi$6) near5 string) near10 (query request) near10 (location address) same hash | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L30 | 133 | (hash adj3 function) near20 (balanc$3 distribut$3 spread $3) near20 (address$3 location) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L31 | 16 | L30 and (@ad<="19980708" @rlad<="19980708") | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L32 | 0 | (hash adj3 function) near20 (balanc$3 distribut$3 spread $3) near20 (address$3 location) same (redirect$3 rerout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L33 | 2 | (hash adj3 function) near20 (address$3 location) near20 (redirect$3 rerout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L34 | 13 | (hash adj3 function) near20 (redirect$3 rerout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L35 | 3 | (US-6470389-$ or US-6370584-$ or US-6167427-$).did. | USPAT | OR | OFF | 2010/02/22 10:48 |
| L36 | 1 | L35 and repository | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |

**JA0339**

EAST Search History

| L37 | 2 | L35 and table | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L38 | 7650 | 709/217.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L39 | 9884 | 709/223.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L40 | 4565 | 709/238.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L41 | 6722 | 709/219.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |
| L42 | 10980 | 707/10.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/02/22 10:48 |

## EAST Search History (Interference)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L43 | 0 | (data adj5 repository adj5 store adj5 data adj5 entity).clm. | USPAT; UPAD | OR | OFF | 2010/02/22 10:48 |
| L44 | 1 | (location adj5 information adj5 associated adj5 identifier adj5 string).clm. | USPAT; UPAD | OR | OFF | 2010/02/22 10:48 |
| L45 | 1 | (location adj5 servers adj5 portion adj5 location adj5 information).clm. | USPAT; UPAD | OR | OFF | 2010/02/22 10:48 |
| L46 | 0 | (location adj5 servers adj5 based adj5 hash adj5 function).clm. | USPAT; UPAD | OR | OFF | 2010/02/22 10:48 |

**JA0340**

EAST Search History

| L47 | 0 | (hash adj5 function adj5 organize adj5 data adj5 location adj5 information). clm. | USPAT; UPAD | OR | OFF | 2010/02/22 10:48 |
| L48 | 0 | (hash adj5 function adj5 identifier adj5 string).clm. | USPAT; UPAD | OR | OFF | 2010/02/22 10:48 |
| L49 | 0 | (location adj5 server adj5 receive adj5 addition adj5 request).clm. | USPAT; UPAD | OR | OFF | 2010/02/22 10:48 |
| L50 | 2 | (addition adj5 request adj5 identifier).clm. | USPAT; UPAD | OR | OFF | 2010/02/22 10:48 |
| L51 | 0 | (location adj5 message adj5 conformance adj5 transfer adj5 protocol).clm. | USPAT; UPAD | OR | OFF | 2010/02/22 10:48 |
| L52 | 0 | (return adj5 redirect adj5 message adj5 location adj5 server).clm. | USPAT; UPAD | OR | OFF | 2010/02/22 10:48 |

**2/22/2010 10:57:56 AM**
**C:\ Documents and Settings\ bgillis1\ My Documents\ EAST\ Workspaces\ 11354224.wsp**

JA0341

| FORM PTO-1449 | | | SERIAL NO.<br>11/354,224 | CASE NO.<br>11958/62 |
|---|---|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR<br>APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | | | FILING DATE<br>February 13, 2006 | GROUP ART UNIT<br>2441 |
| (use several sheets if necessary) | | APPLICANT(S): John K. Overton et al. | | CONFIRMATION NO.<br>7078 |

**REFERENCE DESIGNATION**      **U.S. PATENT DOCUMENTS**

| EXAMINER<br>INITIAL | | DOCUMENT<br>NUMBER<br>Number-Kind Code (if known) | DATE | NAME | CLASS/<br>SUBCLASS | FILING<br>DATE |
|---|---|---|---|---|---|---|
| /BJG/ | B1 | 5,276,735 | 01/04/1994 | Boebert et al. | 380/21 | 04/17/1992 |
| /BJG/ | B2 | 5,345,586 | 09/06/1994 | Hamala et al. | 395/650 | 08/25/1992 |
| /BJG/ | B3 | 6,167,438 | 12/26/2000 | Yates et al. | 709/216 | 05/22/1997 |
| /BJG/ | B4 | 6,374,253 B1 | 04/16/2002 | Weider et al. | 707/102 | 12/30/1998 |
| /BJG/ | B5 | 6,453,404 B1 | 09/17/2002 | Bereznyi et al. | 711/171 | 05/27/1999 |
| /BJG/ | B6 | 6,594,253 B1 | 07/15/2003 | Sallberg et al. | 370/349 | 09/29/1998 |
| /BJG/ | B7 | 7,272,625 B1 | 09/18/2007 | Hannel et al. | 709/200 | 03/12/2001 |
| /BJG/ | B8 | 7,349,902 B1 | 03/25/2008 | Arlitt et al. | 707/8 | 08/04/1999 |
| /BJG/ | B9 | 2001/0013059 A1 | 08/09/2001 | Dawson et al. | 709/217 | 02/02/1999 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| EXAMINER<br>INITIAL | | DOCUMENT<br>NUMBER<br>Number-Kind Code (if known) | DATE | COUNTRY | CLASS/<br>SUBCLASS | TRANSLATION<br>YES OR NO |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| EXAMINER<br>INITIAL | **OTHER ART – NON PATENT LITERATURE DOCUMENTS**<br>(Include name of author, title of the article (when appropriate), title of the item (book, magazine, journal, serial,<br>symposium, catalog, etc.), date page(s), volume-issue number(s), publisher, city and/or country where published. |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

| EXAMINER | /Brian Gillis/ | DATE CONSIDERED | 02/22/2010 |
|---|---|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP
609; Draw line through citation if not in conformance and not considered.  Include copy of this
form with next communication to applicant.

**JA0342**

US Patent and Trademark Office for EIC - Advanced Search (INZZ)                    Page 1 of 2



## Advanced Search:

**Inspec - 1898 to date (INZZ)**

Search history:

| No. | Database | Search term | Info added since | Results | |
|-----|----------|-------------|------------------|---------|---|
| CP | | [Clipboard] | | 0 | - |
| 1 | Inspec - 1898 to date | hash NEAR location NEAR identifier NEAR string | unrestricted | 0 | - |
| 2 | Inspec - 1898 to date | hash NEAR location NEAR identifier | unrestricted | 0 | - |
| 3 | Inspec - 1898 to date | location NEAR identifier NEAR (query OR request) | unrestricted | 1 | show titles |
| 4 | Inspec - 1898 to date | hash NEAR function NEAR (address OR location) NEAR redirect ADJ route | unrestricted | 0 | - |
| 5 | Inspec - 1898 to date | hash NEAR function NEAR (address OR location) NEAR (redirect OR route) | unrestricted | 0 | - |
| 6 | Inspec - 1898 to date | hash ADJ function | unrestricted | 1792 | show titles |
| 7 | Inspec - 1898 to date | 6 SAME identfier ADJ string | unrestricted | 0 | - |
| 8 | Inspec - 1898 to date | 6 SAME (redirect OR reroute) | unrestricted | 1 | show titles |
| 9 | Inspec - 1898 to date | 6 SAME location NEAR message | unrestricted | 0 | - |
| 10 | Inspec - 1898 to date | redirect NEAR message | unrestricted | 7 | show titles |

hide | delete all search steps... | delete individual search steps...

Enter your search term(s): Search tips     ☐ Thesaurus mapping

[                                        ]  [whole document ▾]  ⬤   **search**

☐ Images

Click ⬤ to select terms from the following list(s):

⬤ Publication year 1950-

⬤ Publication year 1898-1949

⬤ Inspec thesaurus - enter a term  ⬤

- Classification codes A: Physics, 0-1
- Classification codes A: Physics, 2-3
- Classification codes A: Physics, 4-5
- Classification codes A: Physics, 6
- Classification codes A: Physics, 7
- Classification codes A: Physics, 8
- Classification codes A: Physics, 9
- Classification codes B: Electrical & Electronics, 0-5
- Classification codes B: Electrical & Electronics, 6-9
- Classification codes C: Computer & Control
- Classification codes D: Information Technology
- Classification codes E: Mech., Manufac. & Production Engineering
- Treatment codes
- Inspec sub-file
- Language of publication
- Publication types

Top - News & FAOS - Dialog

© 2010 Dialog LLC All Rights Reserved

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11354224 | OVERTON ET AL. |
| | Examiner | Art Unit |
| | Brian J Gillis | 2441 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| ☐ Claims renumbered in the same order as presented by applicant | | | | ☐ CPA | ☒ T.D. | ☐ R.1.47 |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/16/2008 | 08/27/2009 | 11/09/2009 | 02/22/2010 | | | | |
| | 1 | - | - | - | - | | | | |
| | 2 | - | - | - | - | | | | |
| | 3 | - | - | - | - | | | | |
| | 4 | - | - | - | - | | | | |
| | 5 | - | - | - | - | | | | |
| | 6 | - | - | - | - | | | | |
| | 7 | - | - | - | - | | | | |
| | 8 | - | - | - | - | | | | |
| | 9 | - | - | - | - | | | | |
| | 10 | - | - | - | - | | | | |
| | 11 | - | - | - | - | | | | |
| | 12 | - | - | - | - | | | | |
| | 13 | - | - | - | - | | | | |
| | 14 | - | - | - | - | | | | |
| | 15 | - | - | - | - | | | | |
| | 16 | - | - | - | - | | | | |
| 1 | 17 | ✓ | ✓ | = | = | | | | |
| 2 | 18 | ✓ | ✓ | = | = | | | | |
| 3 | 19 | ✓ | ✓ | = | = | | | | |
| 6 | 20 | ✓ | ✓ | = | = | | | | |
| | 21 | ✓ | - | - | - | | | | |
| 7 | 22 | ✓ | ✓ | = | = | | | | |
| 8 | 23 | ✓ | ✓ | = | = | | | | |
| 9 | 24 | ✓ | ✓ | = | = | | | | |
| 10 | 25 | ✓ | ✓ | = | = | | | | |
| 11 | 26 | ✓ | ✓ | = | = | | | | |
| 12 | 27 | ✓ | ✓ | = | = | | | | |
| 13 | 28 | ✓ | ✓ | = | = | | | | |
| 14 | 29 | ✓ | ✓ | = | = | | | | |
| | 30 | ✓ | - | - | - | | | | |
| | 31 | ✓ | - | - | - | | | | |
| | 32 | ✓ | - | - | - | | | | |
| 4 | 33 | | ✓ | = | = | | | | |
| 5 | 34 | | ✓ | = | = | | | | |
| 15 | 35 | | ✓ | = | = | | | | |
| 16 | 36 | | ✓ | = | = | | | | |

JA0345

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11354224 | OVERTON ET AL. |
| | **Examiner** | **Art Unit** |
| | Brian J Gillis | 2441 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| ☐ **Claims renumbered in the same order as presented by applicant** | | | | ☐ CPA | ☒ T.D. | ☐ R.1.47 |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/16/2008 | 08/27/2009 | 11/09/2009 | 02/22/2010 | | | | |
| 17 | 37 | | ✓ | = | = | | | | |

U.S. Patent and Trademark Office

Part of Paper No. : 02222010

**JA0346**

| **Issue Classification** | **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|
| | 11354224 | OVERTON ET AL. |
| | **Examiner** | **Art Unit** |
| | Brian J Gillis | 2441 |

| | ORIGINAL | | INTERNATIONAL CLASSIFICATION | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CLASS** | | **SUBCLASS** | **CLAIMED** | | | | | | **NON-CLAIMED** | | | | |
| 709 | | 217 | G | 0 | 6 | F | 15 / 16 (2006.01.01) | | G | 0 | 6 | F | 17 / 30 (2006.01.01) |

| **CROSS REFERENCE(S)** | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS (ONE SUBCLASS PER BLOCK)** | | | | | | | | | | | | |
| 709 | 219 | | | | | | | | | | | | |
| 707 | 10 | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

| ☐ Claims renumbered in the same order as presented by applicant | | | | ☐ CPA | | ☒ T.D. | | ☐ R.1.47 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Final** | **Original** | **Final** | **Original** | **Final** | **Original** | **Final** | **Original** | **Final** | **Original** | **Final** | **Original** | **Final** | **Original** | **Final** | **Original** |
| | 1 | 1 | 17 | 4 | 33 | | | | | | | | | | |
| | 2 | 2 | 18 | 5 | 34 | | | | | | | | | | |
| | 3 | 3 | 19 | 15 | 35 | | | | | | | | | | |
| | 4 | 6 | 20 | 16 | 36 | | | | | | | | | | |
| | 5 | | 21 | 17 | 37 | | | | | | | | | | |
| | 6 | 7 | 22 | | | | | | | | | | | | |
| | 7 | 8 | 23 | | | | | | | | | | | | |
| | 8 | 9 | 24 | | | | | | | | | | | | |
| | 9 | 10 | 25 | | | | | | | | | | | | |
| | 10 | 11 | 26 | | | | | | | | | | | | |
| | 11 | 12 | 27 | | | | | | | | | | | | |
| | 12 | 13 | 28 | | | | | | | | | | | | |
| | 13 | 14 | 29 | | | | | | | | | | | | |
| | 14 | | 30 | | | | | | | | | | | | |
| | 15 | | 31 | | | | | | | | | | | | |
| | 16 | | 32 | | | | | | | | | | | | |

| /Brian J Gillis/ Examiner.Art Unit 2441 | 2/22/2010 | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 17 | |
| /Larry Donaghue/ Primary Examiner.Art Unit 2454 | 02/23/2010 | **O.G. Print Claim(s)** | **O.G. Print Figure** |
| (Primary Examiner) | (Date) | 1 | 10 |

JA0347

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11354224 | OVERTON ET AL. |
| | **Examiner** | **Art Unit** |
| | Brian J Gillis | 2441 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 709 | 217 | 2/22/2010 | BJG |
| 709 | 219 | 2/22/2010 | BJG |
| 709 | 223 | 2/22/2010 | BJG |
| 709 | 238 | 2/22/2010 | BJG |
| 707 | 10 | 2/22/2010 | BJG |

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Ordered PLUS search | 10/16/2008 | BJG |
| Updated EAST search | 8/27/2009 | BJG |
| Spoke to Larry Donaghue regarding Double Patenting | 8/27/2009 | BJG |
| Updated EAST search | 11/9/2009 | BJG |
| Inventor name search using PALM | 11/9/2009 | BJG |
| NPL search see attached search history | 11/9/2009 | BJG |
| Interference search see attached search history | 11/9/2009 | BJG |
| Updated EAST seach | 2/22/2010 | BJG |
| Inventor name search using PALM | 2/22/2010 | BJG |
| NPL search see attached search history | 2/22/2010 | BJG |
| Interference search see attached search history | 2/22/2010 | BJG |

### INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 709 | 217 | 2/22/2010 | BJG |
| 709 | 219 | 2/22/2010 | BJG |
| 707 | 10 | 2/22/2010 | BJG |

| | |
|---|---|
| | |

JA0348

CERTIFICATE OF EFS FILING UNDER 37 CFR §1.8

I hereby certify that this correspondence is being electronically transmitted to the United States Patent and Trademark Office, Commissioner for Patents, via the EFS pursuant to 37 CFR §1.8 on the below date:

Date: ___June 7, 2010___    Name: ___/Michael E. Hussey/___
                                         Michael E. Hussey (Reg. No. 63,265)

**BRINKS**
**HOFER**
**GILSON**
**&LIONE**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:  John K. Overton et al.

Appln. No.:      11/354,224                    Examiner:  Brian J. Gillis

Filed:           February 13, 2006            Art Unit:    2441

For:             NETWORK DISTRIBUTED TRACKING   Conf. No.:  7078
                 WIRE TRANSFER PROTOCOL

Attorney Docket No.:     11958/062

MAIL STOP RCE
Commissioner for Patents
PO Box 1450
Alexandria, VA  22313-1450

### REQUEST FOR CONTINUED EXAMINATION (37 CFR § 1.114)

Sir:

Applicant(s) requests continued examination of the above-identified application under 37 CFR §1.114.

☒ Submission under 37 CFR 1.114 (*check at least one of the following*):

    ☐ Previously submitted:

        ☐ Applicant(s) requests nonentry of any previously-filed unentered amendments.

        ☐ Please enter and consider the Amendment After Final Under 37 CFR §1.116 previously filed on _____.

        ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____.

        ☐ Other: _____.

    ☒ Attached is/are:

        ☒ An Information Disclosure Statement

        ☐ An Amendment to the written description, claims, or drawings

        ☐ New Arguments and/or New Evidence in support of Patentability

        ☐ Other: _____

*Page 1 of 2*

**JA0349**

Appln. No. 11/354,224                                    Docket No. 11958/062

☐ Request for suspension of action:

Applicant(s) hereby requests suspension of action on the above-identified application under 37 CFR §1.103(c) for a period of _____ months. (Period of suspension shall not exceed 3 months; requires Processing Fee under 37 CFR §1.17(i)).

☐ Small Entity Status:

    ☐ Applicant(s) hereby asserts entitlement to claim small entity status under 37 CFR §§ 1.9 and 1.27.

    ☐ A small entity statement or assertion of entitlement to claim small entity status was filed in prior application no. _____/_____ and such status is still proper and desired.

    ☐ Is no longer desired.

☒ Applicant(s) calculate the following fees to be due in connection with this Request:

    ☒ A request fee of $405 under 37 CFR §1.17(e).

    ☐ A suspension processing fee of $_____ under 37 CFR §1.17(i).

    ☐ An additional filing fee of $_____ under 37 CFR §1.16 (_____ additional independent claims and/or _____ additional total claims).

    ☐ An extension fee of $_____ under 37 CFR §1.17(a) for a _____-month extension of time.

☒ Fee payment to cover the above-enumerated fee(s):

    ☒ Please charge Deposit Account No. 23-1925 (BRINKS HOFER GILSON & LIONE) in the amount of $405.

    ☐ A payment by credit card in the amount of $_____ (Form PTO-2038 is attached).

    ☒ The Commissioner is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925 (BRINKS HOFER GILSON & LIONE).

Respectfully submitted,

| | |
|---|---|
| 06/07/2010 | /Michael E. Hussey/ |
| Date | Michael E. Hussey (Reg. No. 63,265) |

CERTIFICATE OF EFS FILING UNDER 37 CFR §1.8

I hereby certify that this correspondence is being electronically transmitted to the United States Patent and Trademark Office, Commissioner for Patents, via the EFS pursuant to 37 CFR §1.8 on  the below date:

Date:  June 7, 2010          Name:    /Michael E. Hussey/
                                        Michael  E. Hussey (Reg. No. 63,265)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:   John K. Overton et al.

Appln. No.:   11/354,224

Filed:   February 13, 2006

For:   NETWORK DISTRIBUTED
TRACKING WIRE
TRANSFER PROTOCOL

Attorney Docket No:   11958/062

Examiner:  Brian J. Gillis

Art Unit:   2441

Confirmation No.:  7078

## SECOND SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

MAIL STOP RCE
Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

In accordance with the duty of disclosure under 37 CFR §1.56 and §§1.97-1.98, and more particularly in accordance with 37 CFR §1.97(d), Applicant hereby cites the following reference(s):

| U.S. PATENT DOCUMENTS | | |
|---|---|---|
| DOCUMENT NO. | DATE | NAME |
| 6,070,191 | 05/30/2000 | Narendran et al. |
| 7,634,453 B1 | 12/15/2009 | Bakke et al. |

| OTHER ART – NON PATENT LITERATURE DOCUMENTS |
|---|
| Office Action, dated March 30, 2010, pp. 1-12, U.S. Patent Application Serial No. 11/803,332, U.S. Patent and Trademark Office, Virginia. |
| Notice of Allowance, dated May 19, 2010, pp. 1-8, U.S. Patent Application Serial No. 10/646,350, U.S. Patent and Trademark Office, Virginia. |

BRINKS
HOFER
GILSON
&LIONE

JA0351

Applicant is enclosing Form PTO-1449 (one sheet), along with a copy of each listed reference for which a copy is required under 37 CFR §1.98(a)(2). As each of the listed references is in English, no further commentary is believed to be necessary, 37 C.F.R §1.98(a)(3). Applicant respectfully requests the Examiner's consideration of the above reference(s) and entry thereof into the record of this application.

**Commonly Owned Applications**

Pursuant to 37 CFR §1.56, Applicant and Applicant's attorney hereby make of record in the above-identified patent application the existence of the below described activities in the below-identified commonly owned co-pending published patent applications, which are related to the above-identified patent application. **Applicant respectfully requests the Examiner to review the claims and the prosecution history, including any Office Actions issued by the U.S. Patent and Trademark Office, for the following patents and patent applications:**

U.S. Patent Publication No. US 2004/0205055 A1 – U.S. Patent Application Serial No. 10/646,350 (11958-60) – Response filed March 25, 2010; Notice of Allowance mailed May 19, 2010; and

U.S. Patent Publication No. 2008/0005275 A1 – U.S. Patent Application Serial No. 11/803,332 (11958/063) - Non-Final Office Action mailed March 30, 2010. The patent literature listed above was cited in this Non-Final Office Action.

By submitting this Statement, Applicant is attempting to fully comply with the duty of candor and good faith mandated by 37 CFR §1.56. As such, this Statement is not intended to constitute an admission that any of the enclosed references, or other information referred to therein, constitutes "prior art" or is otherwise "material to patentability," as that phrase is defined in 37 CFR §1.56(a).

The Applicant or Applicants have calculated no fee to be due in connection with the filing of this Information Disclosure Statement. However, the Director is authorized to charge any fee deficiency associated with the filing of this Information Disclosure Statement to a deposit account, as authorized in the Transmittal accompanying this Information Disclosure Statement.

Respectfully submitted,


06/07/2010                                    /Michael E. Hussey/
Date                                          Michael E. Hussey
                                              (Reg. No. 63,265)


BRINKS
HOFER
GILSON
&LIONE

- 3 -

**JA0353**

| FORM PTO-1449 | | | SERIAL NO. 11/354,224 | CASE NO. 11958/062 | |
|---|---|---|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | | | FILING DATE February 13, 2006 | GROUP ART UNIT 2441 | |
| (use several sheets if necessary) | | APPLICANT(S): John K. Overton et al. | | CONFIRMATION NO. 7078 | |

**REFERENCE DESIGNATION      U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | C1 | 6,070,191 | 05/30/2000 | Narendran et al. | 709/226 | 10/17/1997 |
| | C2 | 7,634,453 B1 | 12/15/2009 | Bakke et al. | 707/1 | 08/13/1999 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | COUNTRY | CLASS/ SUBCLASS | TRANSLATION YES OR NO |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| EXAMINER INITIAL | | OTHER ART – NON PATENT LITERATURE DOCUMENTS (Include name of author, title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date page(s), volume-issue number(s), publisher, city and/or country where published. |
|---|---|---|
| | C3 | Office Action, dated March 30, 2010, pp. 1-12, U.S. Patent Application Serial No. 11/803,332, U.S. Patent and Trademark Office, Virginia. |
| | C4 | Notice of Allowance, dated May 19, 2010, pp. 1-8, U.S. Patent Application Serial No. 10/646,350, U.S. Patent and Trademark Office, Virginia. |
| | | |
| | | |
| | | |
| | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**JA0354**

## Electronic Patent Application Fee Transmittal

| Application Number: | 11354224 |
|---|---|
| Filing Date: | 13-Feb-2006 |
| Title of Invention: | NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL |
| First Named Inventor/Applicant Name: | John K. Overton |
| Filer: | Michael E. Hussey/Sara Vessely |
| Attorney Docket Number: | 11958/62 |

Filed as Small Entity

### Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

JA0355

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Request for continued examination | 2801 | 1 | 405 | 405 |
| **Total in USD ($)** | | | | **405** |

## Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 7761208 |
| **Application Number:** | 11354224 |
| **International Application Number:** | |
| **Confirmation Number:** | 7078 |
| **Title of Invention:** | NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL |
| **First Named Inventor/Applicant Name:** | John K. Overton |
| **Customer Number:** | 00757 |
| **Filer:** | Michael E. Hussey |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 11958/62 |
| **Receipt Date:** | 07-JUN-2010 |
| **Filing Date:** | 13-FEB-2006 |
| **Time Stamp:** | 16:46:19 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $405 |
| RAM confirmation Number | 3472 |
| Deposit Account | 231925 |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees) | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) | |

JA0357

Charge any Additional Fees required under 37 C.F.R. Section 1.19 (Document supply fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.20 (Post Issuance fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | Trans_RCE_2nd_Supp_IDS_06_07_10.pdf | 58351<br>fadad734bd6dea311585412075e00c2b9e3c9c67 | no | 1 |

| Warnings: |
|---|

| Information: |
|---|

| 2 | | 11958_62_Reply_with_RCE_06_07_10.pdf | 63138<br>130d640372109ecbac8745f10ff0da953ac3c728 | yes | 2 |
|---|---|---|---|---|---|

| Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|
| **Document Description** | | **Start** | **End** |
| Amendment Submitted/Entered with Filing of CPA/RCE | | 1 | 1 |
| Applicant Arguments/Remarks Made in an Amendment | | 2 | 2 |

| Warnings: |
|---|

| Information: |
|---|

| 3 | Request for Continued Examination (RCE) | RCE_06_07_10.pdf | 76897<br>8a03f457c21626cab0bd4bdda77ee70362630a83 | no | 2 |
|---|---|---|---|---|---|

| Warnings: |
|---|

This is not a USPTO supplied RCE SB30 form.

| Information: |
|---|

| 4 | Transmittal Letter | 2nd_Supp_IDS_06_07_10.pdf | 77934<br>8325457294c25c1f191c688dcf49315277fb8ff8 | no | 3 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| 5 | Information Disclosure Statement (IDS) Filed (SB/08) | PTO_1449_2nd_Supp_IDS_06_07_10.pdf | 65886<br>94427f1d2d657efce585317e7b01e45f279135b4 | no | 1 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

This is not an USPTO supplied IDS fillable form

| 6 | NPL Documents | 11958_62_OAof033010_12.pdf | 400484<br>3e39bca60f11623 1bd8dd5d50f65695fa5d098aa | no | 12 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| | | | Information: | | |
|---|---|---|---|---|---|
| 7 | NPL Documents | Notice_Allowance_051910_8.pdf | 328957<br>50144ffdfe6fd25ff1ebc864e696718ba2ae10bd | no | 8 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 8 | Fee Worksheet (PTO-875) | fee-info.pdf | 30646<br>2cfb2ae95d5fad575e69a036a5d6640884e42a9f | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | | **Total Files Size (in bytes):** | | 1102293 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

CERTIFICATE OF EFS FILING UNDER 37 CFR §1.8

I hereby certify that this correspondence is being electronically transmitted to the United States Patent and Trademark Office, Commissioner for Patents, via the EFS pursuant to 37 CFR §1.8 on the below date:

Date: June 7, 2010    Name: /Michael E. Hussey/
                            Michael E. Hussey (Reg. No. 63,265)

**B R I N K S**
**H O F E R**
**G I L S O N**
**& L I O N E**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of: John K. Overton et al.

Appln. No.: 11/354,224

Filed: February 13, 2006

For: NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

Attorney Docket No.: 11958/062

Examiner: Brian J. Gillis

Art Unit: 2441

Conf. No.: 7078

## TRANSMITTAL

MAIL STOP RCE
Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Sir:

**Attached is/are:**

☒ Reply and Request for Continued Examination (2 pgs.); Request for Continued Examination (37 CFR § 1.114) (2 pgs.); Second Supplemental Information Disclosure Statement (3 pgs.); PTO-1449 (1 pg.); Copy of Non-Final Office Action dated March 30, 2010 (12 pgs.); Copy of Notice of Allowance dated May 19, 2010 (8 pgs.); Transmittal (1 pg.)

**Fee calculation:**

☐ No additional fee is required.

☒ Small Entity.

☐ An extension fee in an amount of $_____ for a _____-month extension of time under 37 CFR § 1.136(a).

☒ A petition or processing fee in an amount of $405 under 37 CFR § 1.17(e).

☐ An additional filing fee has been calculated as shown below:

| | Claims Remaining After Amendment | | Highest No. Previously Paid For | Present Extra | Small Entity | | OR | Not a Small Entity | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Rate | Add'l Fee | | Rate | Add'l Fee |
| Total | | Minus | | | x $26= | | | x $52= | |
| Indep. | | Minus | | | x 110= | | | x $220= | |
| First Presentation of Multiple Dep. Claim | | | | | +$195= | | | + $390= | |
| | | | | | Total | $ | | Total | $ |

**Fee payment:**

☒ Please charge Deposit Account No. 23-1925 in the amount of $405 for Request for Continued Examination.

☐ Payment by credit card in the amount of $_____ (Form PTO-2038 is attached).

☒ The Director is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925.

Respectfully submitted,

06/07/2010
Date

/Michael E. Hussey/
Michael E. Hussey (Reg. No. 63,265)

JA0360

CERTIFICATE OF EFS FILING UNDER 37 CFR §1.8

I hereby certify that this correspondence is being electronically transmitted to the United States Patent and Trademark Office, Commissioner for Patents, via the EFS pursuant to 37 CFR §1.8 on the below date:

Date: _____June 7, 2010_____  Name: __/Michael E. Hussey/__
                                     Michael E. Hussey (Reg. No. 63,265)

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:    John K. Overton et al.

Appln. No.:         11/354,224                    Examiner: Brian J. Gillis

Filed:              February 13, 2006             Art Unit:  2441

For:                NETWORK DISTRIBUTED TRACKING   Confirmation No.: 7078
                    WIRE TRANSFER PROTOCOL

Attorney Docket No:  11958/062

### REPLY AND REQUEST FOR CONTINUED EXAMINATION

MAIL STOP RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

In response to the Notice of Allowance dated March 8, 2010, please consider the following remarks and the enclosed Information Disclosure Statement. This response is being filed concurrently with a Request for Continued Examination under 37 CFR §1.114.

**Remarks begin on page 2 of this paper.**

JA0361

Serial No. 11/354,224

Filed: February 13, 2006
Attorney Ref. 11958/062

## <u>REMARKS</u>

Claims 17-20, 22-29, and 33-37 are pending. Applicant respectfully requests reconsideration in view of the enclosed Information Disclosure Statement. The present pending claims of this application are allowable and Applicant respectfully requests the Examiner to issue a Notice of Allowance for this application. Should the Examiner deem a telephone conference to be beneficial in expediting allowance/examination of this application, the Examiner is invited to call the undersigned attorney at the telephone number listed below.

Respectfully submitted,

/Michael E. Hussey/

Michael E. Hussey
Attorney Reg. No. 63,265
Attorney for Applicant

MEH/sev

BRINKS HOFER GILSON & LIONE
**CUSTOMER NO. 27879**
Telephone: 317-636-0886
Facsimile: 317-634-6701

JA0362



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 757 | 7590 | 06/25/2010 |

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

| EXAMINER |
| --- |
| GILLIS, BRIAN J |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 2441 | |

DATE MAILED: 06/25/2010

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 11/354,224 | 02/13/2006 | John K. Overton | 11958/62 | 7078 |

TITLE OF INVENTION: NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 09/27/2010 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS.
THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON
PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN **THREE MONTHS** FROM THE
MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. **THIS
STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES
NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS
PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM
WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW
DUE.

HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current
SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown
above.

B. If the status above is to be removed, check box 5b on Part B -
Fee(s) Transmittal and pay the PUBLICATION FEE (if required)
and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now
claiming SMALL ENTITY status, check box 5a on Part B - Fee(s)
Transmittal and pay the PUBLICATION FEE (if required) and 1/2
the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office
(USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b"
of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a
request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing
the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to
Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

JA0363

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail**     **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or **Fax**   **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

757          7590          06/25/2010

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 | John K. Overton | 11958/62 | 7078 |

TITLE OF INVENTION: NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 09/27/2010 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| GILLIS, BRIAN J | 2441 | 709-217000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE               (B) RESIDENCE: (CITY and STATE or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.     ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____          Date _____

Typed or printed name _____          Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85  (Rev. 08/07) Approved for use through 08/31/2010.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

**JA0364**



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 | John K. Overton | 11958/62 | 7078 |

757        7590        06/25/2010

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

| EXAMINER |
|---|
| GILLIS, BRIAN J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2441 | |

DATE MAILED: 06/25/2010

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 402 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 402 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

Page 3 of 3

JA0365

|  | Application No. | Applicant(s) |  |
|---|---|---|---|
| ***Notice of Allowability*** | 11/354,224 | OVERTON ET AL. |  |
|  | **Examiner** | **Art Unit** |  |
|  | BRIAN J. GILLIS | 2441 |  |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the Request for Continued Examination filed June 7, 2010*.

2. ☒ The allowed claim(s) is/are *17-20,22-29 and 33-37*.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

   (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

      1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .

   (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☒ Information Disclosure Statements (PTO/SB/08),
    Paper No./Mail Date 06072010

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413),
    Paper No./Mail Date _____ .

7. ☐ Examiner's Amendment/Comment

8. ☒ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____ .

/Larry Donaghue/
Primary Examiner, Art Unit 2454

JA0366

Application/Control Number: 11/354,224                                      Page 2
Art Unit: 2441

## DETAILED ACTION

This action is responsive to the Request for Continued Examination filed June 7,

2010. Claims 17-20, 22-29, and 33-37 were pending. *Claims 17-20, 22-29, and 33-37*

*are allowed.*

### *Continued Examination Under 37 CFR 1.114*

A request for continued examination under 37 CFR 1.114, including the fee set

forth in 37 CFR 1.17(e), was filed in this application after allowance or after an Office

action under *Ex Parte Quayle*, 25 USPQ 74, 453 O.G. 213 (Comm'r Pat. 1935). Since

this application is eligible for continued examination under 37 CFR 1.114, and the fee

set forth in 37 CFR 1.17(e) has been timely paid, prosecution in this application has

been reopened pursuant to 37 CFR 1.114. Applicant's submission filed on June 7, 2010

has been entered.

### REASONS FOR ALLOWANCE

The following is an examiner's statement of reasons for allowance:

The prior art of record fails to teach neither singly nor in combination, the claimed

limitations of "a data location server network comprising a plurality of data location

servers, wherein data location information for a plurality of data entities is stored in the

data location server network, at least one of the plurality of data location servers

includes location information associated with the identifier string, each one of the

plurality of data location servers comprises a processor and a portion of the data

location information, *the portion of the data location information included in a*

*corresponding one of the data location servers is based on a hash function used to*

Application/Control Number: 11/354,224                                          Page 3
Art Unit: 2441

*organize the data location information across the plurality of data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.*" (emphasis added) as stated in claims 17, and " programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and *wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity*." (emphasis added) as stated in claim 20 and similarly in claim 35. These limitations, in conjunction with other limitations in the independent claim, are not specifically disclosed or remotely suggested in the prior art of record. A review of claims 17-20, 22-29, and 33-37 indicated claims 17-20, 22-29, and 33-37 are allowable over the prior art of record.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Application/Control Number: 11/354,224                                Page 4
Art Unit: 2441

    Any inquiry concerning this communication or earlier communications from the

examiner should be directed to BRIAN J. GILLIS whose telephone number is (571)272-

7952.  The examiner can normally be reached on M-F 7:30-5:00.

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Wing F. Chan can be reached on 571-272-7493.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

    Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


                                          Brian J Gillis
                                          Examiner
                                          Art Unit 2441

/B. J. G./
Examiner, Art Unit 2441
6/16/2010

/Larry  Donaghue/
Primary Examiner, Art Unit 2454

JA0369

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11354224 | OVERTON ET AL. |
| | **Examiner** | **Art Unit** |
| | Brian J Gillis | 2441 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 709 | 217 | 6/16/2010 | BJG |
| 709 | 219 | 6/16/2010 | BJG |
| 709 | 223 | 6/16/2010 | BJG |
| 709 | 238 | 6/16/2010 | BJG |
| 707 | 10 | 6/16/2010 | BJG |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Ordered PLUS search | 10/16/2008 | BJG |
| Updated EAST search | 8/27/2009 | BJG |
| Spoke to Larry Donaghue regarding Double Patenting | 8/27/2009 | BJG |
| Updated EAST search | 11/9/2009 | BJG |
| Inventor name search using PALM | 11/9/2009 | BJG |
| NPL search see attached search history | 11/9/2009 | BJG |
| Interference search see attached search history | 11/9/2009 | BJG |
| Updated EAST seach | 2/22/2010 | BJG |
| Inventor name search using PALM | 2/22/2010 | BJG |
| NPL search see attached search history | 2/22/2010 | BJG |
| Interference search see attached search history | 2/22/2010 | BJG |
| Updated EAST search | 6/16/2010 | BJG |
| Inventor name search | 6/16/2010 | BJG |
| NPL search see attached search history | 6/16/2010 | BJG |
| Inventor name search | 6/16/2010 | BJG |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 709 | 217 | 6/16/2010 | BJG |
| 709 | 219 | 6/16/2010 | BJG |
| 707 | 10 | 6/16/2010 | BJG |

| | |
|---|---|
| | |

**JA0370**

US Patent and Trademark Office for EIC - Advanced Search (INZZ)          Page 1 of 2



## Advanced Search:

### Inspec - 1898 to date (INZZ)

**Search history:**

| No. | Database | Search term | Info added since | Results | |
|-----|----------|-------------|------------------|---------|---|
| CP | | [Clipboard] | | 0 | - |
| 1 | Inspec - 1898 to date | hash NEAR location NEAR identifier NEAR string | unrestricted | 0 | - |
| 2 | Inspec - 1898 to date | hash NEAR location NEAR identifier | unrestricted | 0 | - |
| 3 | Inspec - 1898 to date | location NEAR identifier NEAR (query OR request) | unrestricted | 1 | show titles |
| 4 | Inspec - 1898 to date | hash NEAR function NEAR (address OR location) NEAR redirect ADJ route | unrestricted | 0 | - |
| 5 | Inspec - 1898 to date | hash NEAR function NEAR (address OR location) NEAR (redirect OR route) | unrestricted | 0 | - |
| 6 | Inspec - 1898 to date | hash ADJ function | unrestricted | 1917 | show titles |
| 7 | Inspec - 1898 to date | 6 SAME identfier ADJ string | unrestricted | 0 | - |
| 8 | Inspec - 1898 to date | 6 SAME (redirect OR route) | unrestricted | 8 | show titles |
| 9 | Inspec - 1898 to date | 6 SAME location NEAR message | unrestricted | 0 | - |
| 10 | Inspec - 1898 to date | redirect NEAR message | unrestricted | 6 | show titles |

hide | delete all search steps... | delete individual search steps...

Enter your search term(s): Search tips    ☐ Thesaurus mapping

[                              ]  [whole document ▾]  🔘   **search**

☐ Images

Click 🔘 to select terms from the following list(s):

🔘 Publication year 1950-

🔘 Publication year 1898-1949

🔘 Inspec thesaurus - enter a term 🔘

JA0371

Classification codes A: Physics, 0-1

Classification codes A: Physics, 2-3

Classification codes A: Physics, 4-5

Classification codes A: Physics, 6

Classification codes A: Physics, 7

Classification codes A: Physics, 8

Classification codes A: Physics, 9

Classification codes B: Electrical & Electronics, 0-5

Classification codes B: Electrical & Electronics, 6-9

Classification codes C: Computer & Control

Classification codes D: Information Technology

Classification codes E: Mech., Manufac. & Production Engineering

Treatment codes

Inspec sub-file

Language of publication

Publication types

Top - News & FAQS - Dialog

© 2010 Dialog LLC All Rights Reserved

EAST Search History

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 2 | ("6070191" "7634453").pn. | US-PGPUB; USPAT | OR | OFF | 2010/06/16 09:55 |
| L2 | 9 | ("20010013059" \| "5276735" \| "5345586" \| "6167438" \| "6374253" \| "6453404" \| "6594253" \| "7272625" \| "7349902").PN. | US-PGPUB; USPAT | OR | OFF | 2010/06/16 10:42 |
| L3 | 1 | L2 and hash | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L4 | 3 | L2 and (redirect$3 re-direct$3 rerout$3 re-rout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L5 | 2 | L2 and ((identif$3 id) same (hash function)) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L6 | 2 | "09872736" | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L7 | 90 | ("4553261" "4636858" "4728978" "4800488" "4825406" "4835372" "4914571" "5008700" "5124814" "5193185" "5208623" "5291399" "5319401" "5347600" "5384643" "5414841" "5454101" "5455648" "5475871" "5479654" "5491511" "5499113" "5522077" "5537547" "5550981" "5551027" "5557790" "5560005" "5576952" "5579067" "5610653" "5617570" "5625841" "5649247" | USPAT | OR | OFF | 2010/06/16 10:42 |

**JA0373**

EAST Search History

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "5664170" "5669029" "5724575" "5740428" "5764889" "5764906" "5774670" "5781725" "5784565" "5802518" "5809161" "5809331" "5809495" "5813006" "5832487" "5848246" "5864482" "5872973" "5875302" "5903889" "5907837" "5913210" "5915240" "5918214" "5920702" "5940844" "5950173" "5961610" "5966705" "5974124" "5974409" "5978773" "5987519" "5995965" "6032175" "6047332" "6055544" "6058193" "6092189" "6108787" "6131095" "6154738" "6188766" "6201931" "6202070" "6209095" "6212280" "6377896" "6418441" "6438652" "6463454" "6466980" "6578068" "6711408" "7103640" "7233978").pn. | | | | |
| L8 | 4 | ("20020112048" "20030065653" "20040205055" "20080005275").pn. | US-PGPUB | OR | OFF | 2010/06/16 10:42 |
| L9 | 94 | L7 L8 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L10 | 4 | ("7103640" "7233978" "2002032787" "20030065653" "2008005275" "20040205055").pn. | US-PGPUB; USPAT | OR | OFF | 2010/06/16 10:42 |
| L11 | 5 | ("7103640" "7233978" "2002032787" "20030065653" "20080005275" "20040205055").pn. | US-PGPUB; USPAT | OR | OFF | 2010/06/16 10:42 |
| L12 | 3 | ("5950173" "5978773" "5913210").pn. | USPAT | OR | OFF | 2010/06/16 10:42 |
| L13 | 2 | "6466980".pn. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L14 | 0 | "7272625 6453404 7349902 20010013059 6594253".pn. | US-PGPUB; USPAT | OR | OFF | 2010/06/16 10:42 |

JA0374

EAST Search History

| L15 | 5 | ("7272625" "6453404" "7349902" "20010013059" "6594253").pn. | US-PGPUB; USPAT | OR | OFF | 2010/06/16 10:42 |
| L16 | 4 | ("5995965" "6374253" "5724575" "5345586").pn. | USPAT | OR | OFF | 2010/06/16 10:42 |
| L17 | 2 | "20070011267" | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L18 | 7 | "7103640" | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L19 | 1 | hash near10 location near10 (identifier adj3 string) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L20 | 1 | hash near20 location near20 (identifier adj3 string) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L21 | 1 | hash near20 location near20 (identifier near5 string) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L22 | 313 | hash near20 location near20 identifier | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L23 | 126 | hash near5 location near5 identifier | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L24 | 17 | L23 and (@ad<="20000913" @rlad<="20000913") | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |

**JA0375**

EAST Search History

| L25 | 15 | L23 and (@ad<="19990914" @rlad<="19990914") | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L26 | 5 | ("5764906" "6418441" "6377986" "5475817" "6131095").pn. | USPAT | OR | OFF | 2010/06/16 10:42 |
| L27 | 9 | ((location identifi$6) near5 string) near10 (query request) near10 (location address) same hash | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L28 | 138 | (hash adj3 function) near20 (balanc$3 distribut$3 spread $3) near20 (address$3 location) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L29 | 16 | L28 and (@ad<="19980708" @rlad<="19980708") | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L30 | 0 | (hash adj3 function) near20 (balanc$3 distribut$3 spread $3) near20 (address$3 location) same (redirect$3 rerout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L31 | 2 | (hash adj3 function) near20 (address$3 location) near20 (redirect$3 rerout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L32 | 13 | (hash adj3 function) near20 (redirect$3 rerout$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L33 | 3 | (US-6470389-$ or US-6370584-$ or US-6167427-$).did. | USPAT | OR | OFF | 2010/06/16 10:42 |
| L34 | 1 | L33 and repository | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |

**JA0376**

EAST Search History

| L35 | 2 | L33 and table | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L36 | 8114 | 709/217.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L37 | 10526 | 709/223.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L38 | 4816 | 709/238.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L39 | 7202 | 709/219.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L40 | 0 | 707/10.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2010/06/16 10:42 |
| L51 | 29 | ((JOHN) near2 (OVERTON)). INV. | US-PGPUB; USPAT | OR | OFF | 2010/06/16 10:54 |
| L52 | 61 | ((STEPHEN) near2 (BAILEY)). INV. | US-PGPUB; USPAT | OR | OFF | 2010/06/16 10:54 |
| L54 | 5 | 51 and 52 | US-PGPUB; USPAT | OR | OFF | 2010/06/16 11:01 |

**EAST Search History (Interference)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L41 | 0 | (data adj5 repository adj5 store adj5 data adj5 entity). clm. | USPAT; UPAD | OR | OFF | 2010/06/16 10:42 |
| L42 | 1 | (location adj5 information adj5 associated adj5 identifier adj5 string).clm. | USPAT; UPAD | OR | OFF | 2010/06/16 10:42 |

JA0377

EAST Search History

| L43 | 1 | (location adj5 servers adj5 portion adj5 location adj5 information).clm. | USPAT; UPAD | OR | OFF | 2010/06/16 10:42 |
| L44 | 0 | (location adj5 servers adj5 based adj5 hash adj5 function).clm. | USPAT; UPAD | OR | OFF | 2010/06/16 10:42 |
| L45 | 0 | (hash adj5 function adj5 organize adj5 data adj5 location adj5 information).clm. | USPAT; UPAD | OR | OFF | 2010/06/16 10:42 |
| L46 | 0 | (hash adj5 function adj5 identifier adj5 string).clm. | USPAT; UPAD | OR | OFF | 2010/06/16 10:42 |
| L47 | 0 | (location adj5 server adj5 receive adj5 addition adj5 request).clm. | USPAT; UPAD | OR | OFF | 2010/06/16 10:42 |
| L48 | 3 | (addition adj5 request adj5 identifier).clm. | USPAT; UPAD | OR | OFF | 2010/06/16 10:42 |
| L49 | 0 | (location adj5 message adj5 conformance adj5 transfer adj5 protocol).clm. | USPAT; UPAD | OR | OFF | 2010/06/16 10:42 |
| L50 | 0 | (return adj5 redirect adj5 message adj5 location adj5 server).clm. | USPAT; UPAD | OR | OFF | 2010/06/16 10:42 |

**6/16/2010 1:12:00 PM**
**C:\ Documents and Settings\ bgillis1\ My Documents\ EAST\ Workspaces\ 11354224.wsp**

**JA0378**

| FORM PTO-1449 | | | SERIAL NO. 11/354,224 | | CASE NO. 11958/062 |
|---|---|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | | FILING DATE February 13, 2006 | | GROUP ART UNIT 2441 |
| (use several sheets if necessary) | | APPLICANT(S): John K. Overton et al. | | | CONFIRMATION NO. 7078 |

**REFERENCE DESIGNATION**   **U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| /BJG/ | C1 | 6,070,191 | 05/30/2000 | Narendran et al. | 709/226 | 10/17/1997 |
| /BJG/ | C2 | 7,634,453 B1 | 12/15/2009 | Bakke et al. | 707/1 | 08/13/1999 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | COUNTRY | CLASS/ SUBCLASS | TRANSLATION YES OR NO |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| EXAMINER INITIAL | | OTHER ART – NON PATENT LITERATURE DOCUMENTS (Include name of author, title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date page(s), volume-issue number(s), publisher, city and/or country where published. |
|---|---|---|
| /BJG/ | C3 | Office Action, dated March 30, 2010, pp. 1-12, U.S. Patent Application Serial No. 11/803,332, U.S. Patent and Trademark Office, Virginia. |
| /BJG/ | C4 | Notice of Allowance, dated May 19, 2010, pp. 1-8, U.S. Patent Application Serial No. 10/646,350, U.S. Patent and Trademark Office, Virginia. |
| | | |
| | | |
| | | |
| | | |

| EXAMINER /Brian Gillis/ | DATE CONSIDERED 06/16/2010 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

JA0379



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 7078**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 | 709 | 2441 | 11958/62 |
| | **RULE** | | | |

**APPLICANTS**
   John K. Overton, Chicago, IL;
   Stephen W. Bailey, Chicago, IL;

**\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
   This application is a CON of 09/661,222 09/13/2000 PAT 7,103,640
      which claims benefit of 60/153,709 09/14/1999    \*
      and is a CIP of 09/111,896 07/08/1998 ABN
        (\*)Data provided by applicant is not consistent with PTO records.

**\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**\*\* IF REQUIRED, FOREIGN FILING LICENSE GRANTED \*\* \*\* SMALL ENTITY \*\***
   03/16/2006

| Foreign Priority claimed | ☐ Yes ☑ No | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met | ☐ Yes ☑ No | ☐ Met after Allowance | | | | |
| Verified and Acknowledged | /BRIAN J GILLIS/ <br> Examiner's Signature | BJG <br> Initials | IL | 12 | 16 | 3 |

**ADDRESS**
   BRINKS HOFER GILSON & LIONE
   P.O. BOX 10395
   CHICAGO, IL 60610
   UNITED STATES

**TITLE**
   NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

| | | |
|---|---|---|
| **FILING FEE RECEIVED** <br> 565 | FEES: Authority has been given in Paper <br> No._____ to charge/credit DEPOSIT ACCOUNT <br> No._____ for following: | ☐ All Fees <br> ☐ 1.16 Fees (Filing) <br> ☐ 1.17 Fees (Processing Ext. of time) <br> ☐ 1.18 Fees (Issue) <br> ☐ Other _____ <br> ☐ Credit |

BIB (Rev. 05/07).

**JA0380**

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11354224 | OVERTON ET AL. |
| | Examiner | Art Unit |
| | Brian J Gillis | 2441 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant      ☐ CPA      ☒ T.D.      ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/16/2008 | 08/27/2009 | 11/09/2009 | 02/22/2010 | 06/16/2010 | | | |
| | 1 | - | - | - | - | - | | | |
| | 2 | - | - | - | - | - | | | |
| | 3 | - | - | - | - | - | | | |
| | 4 | - | - | - | - | - | | | |
| | 5 | - | - | - | - | - | | | |
| | 6 | - | - | - | - | - | | | |
| | 7 | - | - | - | - | - | | | |
| | 8 | - | - | - | - | - | | | |
| | 9 | - | - | - | - | - | | | |
| | 10 | - | - | - | - | - | | | |
| | 11 | - | - | - | - | - | | | |
| | 12 | - | - | - | - | - | | | |
| | 13 | - | - | - | - | - | | | |
| | 14 | - | - | - | - | - | | | |
| | 15 | - | - | - | - | - | | | |
| | 16 | - | - | - | - | - | | | |
| 1 | 17 | ✓ | ✓ | = | = | = | | | |
| 2 | 18 | ✓ | ✓ | = | = | = | | | |
| 3 | 19 | ✓ | ✓ | = | = | = | | | |
| 6 | 20 | ✓ | ✓ | = | = | = | | | |
| | 21 | ✓ | - | - | - | - | | | |
| 7 | 22 | ✓ | ✓ | = | = | = | | | |
| 8 | 23 | ✓ | ✓ | = | = | = | | | |
| 9 | 24 | ✓ | ✓ | = | = | = | | | |
| 10 | 25 | ✓ | ✓ | = | = | = | | | |
| 11 | 26 | ✓ | ✓ | = | = | = | | | |
| 12 | 27 | ✓ | ✓ | = | = | = | | | |
| 13 | 28 | ✓ | ✓ | = | = | = | | | |
| 14 | 29 | ✓ | ✓ | = | = | = | | | |
| | 30 | ✓ | - | - | - | - | | | |
| | 31 | ✓ | - | - | - | - | | | |
| | 32 | ✓ | - | - | - | - | | | |
| 4 | 33 | | ✓ | = | = | = | | | |
| 5 | 34 | | ✓ | = | = | = | | | |
| 15 | 35 | | ✓ | = | = | = | | | |
| 16 | 36 | | ✓ | = | = | = | | | |

JA0381

| *Index of Claims* | Application/Control No.  11354224 | Applicant(s)/Patent Under Reexamination  OVERTON ET AL. |
|---|---|---|
| | Examiner  Brian J Gillis | Art Unit  2441 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☒ T.D. | ☐ R.1.47 |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/16/2008 | 08/27/2009 | 11/09/2009 | 02/22/2010 | 06/16/2010 | | | | |
| 17 | 37 | | ✓ | = | = | = | | | | |

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11354224 | OVERTON ET AL. |
| | **Examiner** | **Art Unit** |
| | Brian J Gillis | 2441 |

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | | | | **NON-CLAIMED** | | | | | |
| 709 | 217 | G | 0 | 6 | F | 15 / 16 (2006.01.01) | G | 0 | 6 | F | 17 / 30 (2006.01.01) | |

**CROSS REFERENCE(S)**

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) |
|---|---|
| 709 | 219 |
| 707 | 10 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

☐ Claims renumbered in the same order as presented by applicant ☐ CPA ☒ T.D. ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 1 | 17 | 4 | 33 | | | | | | | | | | |
| | 2 | 2 | 18 | 5 | 34 | | | | | | | | | | |
| | 3 | 3 | 19 | 15 | 35 | | | | | | | | | | |
| | 4 | 6 | 20 | 16 | 36 | | | | | | | | | | |
| | 5 | | 21 | 17 | 37 | | | | | | | | | | |
| | 6 | 7 | 22 | | | | | | | | | | | | |
| | 7 | 8 | 23 | | | | | | | | | | | | |
| | 8 | 9 | 24 | | | | | | | | | | | | |
| | 9 | 10 | 25 | | | | | | | | | | | | |
| | 10 | 11 | 26 | | | | | | | | | | | | |
| | 11 | 12 | 27 | | | | | | | | | | | | |
| | 12 | 13 | 28 | | | | | | | | | | | | |
| | 13 | 14 | 29 | | | | | | | | | | | | |
| | 14 | | 30 | | | | | | | | | | | | |
| | 15 | | 31 | | | | | | | | | | | | |
| | 16 | | 32 | | | | | | | | | | | | |

| /Brian J Gillis/<br>Examiner.Art Unit 2441 | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | 6/16/2010<br>(Date) | 17 | |
| /Larry Donaghue/<br>Primary Examiner.Art Unit 2454 | | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | 06/17/2010<br>(Date) | 1 | 10 |

U.S. Patent and Trademark Office

Part of Paper No. 06162010

JA0383

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>  **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or <u>Fax</u>  **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

757    7590    06/25/2010

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that this correspondence is being filed electronically with the U.S. Patent and Trademark Office

Michael E. Hussey _____ (Depositor's name)

_____ (Signature)

August 20, 2010 _____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/354,224 | 02/13/2006 | John K. Overton | 11958/62 | 7078 |

TITLE OF INVENTION: NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 09/27/2010 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| GILLIS, BRIAN J | 2441 | 709-217000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

**2.** For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1   Brinks Hofer Gilson

2     & Lione

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)**

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

Econnectix Corporation

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Chicago, IL

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:

☒ Issue Fee

☒ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number 23-1925 (enclose an extra copy of this form).

**5. Change in Entity Status (from status indicated above)**

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.   ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____    Date August 20, 2010

Typed or printed name Michael E. Hussey    Registration No. 63,265

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

**JA0384**

## Electronic Patent Application Fee Transmittal

| Application Number: | 11354224 |
|---|---|
| Filing Date: | 13-Feb-2006 |
| Title of Invention: | NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL |
| First Named Inventor/Applicant Name: | John K. Overton |
| Filer: | Michael E. Hussey/Sara Vessely |
| Attorney Docket Number: | 11958/62 |

Filed as Small Entity

### Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Utility Appl issue fee | 2501 | 1 | 755 | 755 |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |

JA0385

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| **Total in USD ($)** | | | | 1055 |

## Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 8258052 |
| **Application Number:** | 11354224 |
| **International Application Number:** | |
| **Confirmation Number:** | 7078 |
| **Title of Invention:** | NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL |
| **First Named Inventor/Applicant Name:** | John K. Overton |
| **Customer Number:** | 00757 |
| **Filer:** | Michael E. Hussey |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 11958/62 |
| **Receipt Date:** | 20-AUG-2010 |
| **Filing Date:** | 13-FEB-2006 |
| **Time Stamp:** | 15:08:02 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $1055 |
| RAM confirmation Number | 1265 |
| Deposit Account | 231925 |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
|     Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees) | |
|     Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) | |

JA0387

Charge any Additional Fees required under 37 C.F.R. Section 1.20 (Post Issuance fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 11958_62_IssueFee_082010_2. pdf | 123678 <br> 1f1501801fbddf6c41e5298cb8e8941fbd7b b06e | yes | 2 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| Document Description | Start | End |
| Miscellaneous Incoming Letter | 1 | 1 |
| Issue Fee Payment (PTO-85B) | 2 | 2 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 32019 <br> 56566867155f8b6b8ed132dc14e58847f62 0e6c0 | no | 2 |

**Warnings:**

**Information:**

| Total Files Size (in bytes): | 155697 |
|---|---|

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

<table>
<tr><td>

CERTIFICATE OF EFS FILING UNDER 37 CFR §1.8

I hereby certify that this correspondence is being electronically transmitted to the United States Patent and Trademark Office, Commissioner for Patents, via the EFS pursuant to 37 CFR §1.8 on  the below date:

Date:   August 20, 2010     Name:   _Michael E. Hussey (Reg. No. 63,265)_

</td><td>

**BRINKS**
**HOFER**
**GILSON**
**&LIONE**

</td></tr>
</table>

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Appln. of: | John K. Overton et al. | | |
| Appln. No.: | 11/354,224 | Examiner: | Brian J. Gillis |
| Filed: | February 13, 2006 | Art Unit: | 2441 |
| For: | NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL | Conf. No.: | 7078 |
| Attorney Docket No.: | 11958/062 | | |

## TRANSMITTAL

MAIL STOP ISSUE FEE
Commissioner for Patents
PO Box 1450
Alexandria, VA  22313-1450

Sir:

Attached is/are:

☒   Part B – Fee(S) Transmittal (1 pg.); Transmittal (1 pg.)

Fee calculation:

☐   No additional fee is required.

☒   Small Entity.

☐   An extension fee in an amount of $_____ for a _____-month extension of time under 37 CFR § 1.136(a).

☒   A petition or processing fee in an amount of $755 under 37 CFR § 1.18(a) and $300 under 37 CFR § 1.18(d).

☐   An additional filing fee has been calculated as shown below:

| | Claims Remaining After Amendment | | Highest No. Previously Paid For | Present Extra | | Small Entity | | OR | Not a Small Entity | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Rate | Add'l Fee | | Rate | Add'l Fee |
| Total | | Minus | | | | x $26= | | | x $52= | |
| Indep. | | Minus | | | | x 110= | | | x $220= | |
| First Presentation of Multiple Dep. Claim | | | | | | +$195= | | | + $390= | |
| | | | | | | Total | $ | | Total | $ |

Fee payment:

☒   Please charge Deposit Account No. 23-1925 in the amount of $1055 for Issue and Publication Fees.

☐   Payment by credit card in the amount of $_____ (Form PTO-2038 is attached).

☒   The Director is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925.

Respectfully submitted,

_____

08/20/2010
Date

Michael E. Hussey (Reg. No. 63,265)

**JA0389**

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/354,224 | 10/12/2010 | 7814170 | 11958/62 | 7078 |

757        7590        09/22/2010

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 749 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

John K. Overton, Chicago, IL;
Stephen W. Bailey, Chicago, IL;

IR103 (Rev. 10/09)

**JA0390**