

06-04-01                                                          A

"Express Mail" mailing label number EL 756225454 US
Date of Deposit June 1, 2001

Case No. 10406/49

# PATENT APPLICATION TRANSMITTAL LETTER

To the Commissioner for Patents:

Transmitted herewith for filing is the patent application of: John K. Overton and Stephen W. Bailey for : METHOD AND APPARATUS

FOR MANAGING LOCATION INFORMATION IN A NETWORK.  Enclosed are:

☒  15 sheet(s) of drawings, and 52 pages of application (including title page).

☐  Declaration.

☐  Power of Attorney.

☐  Verified statement to establish small entity status under 37 CFR §§ 1.9 and 1.27.

☐  Assignment transmittal letter and Assignment of the invention to : _____.

☐  _____.

| Claims as Filed | Col. 1 | Col. 2 | Small Entity | | or | Other Than Small Entity | |
|---|---|---|---|---|---|---|---|
| For | No. Filed | No. Extra | Rate | Fee | or | Rate | Fee |
| Basic Fee | | | | $ 355 | or | | $ 710 |
| Total Claims | -20 | | x$9= | $ | or | x$18= | $ |
| Indep. Claims | -3 | | x$40= | $ | or | x$80= | $ |
| Multiple Dependent Claims Present | | | +$135= | $ | or | +$270= | $ |
| *If the difference in col. 1 is less than zero, enter "0" in col. 2. | | | Total | $ | or | Total | $ |

☐  Please charge my Deposit Account No. 23-1925 in the amount of $: _____.  A duplicate copy of this sheet is enclosed.

☐  A check in the amount of $: _____ to cover the filing fee is enclosed.

☐  The Commissioner is hereby authorized to charge payment of the following fees associated with this communication or credit any overpayment to Deposit Account No. 23-1925.  A duplicate copy of this sheet is enclosed.

    ☐  Any additional filing fees required under 37 CFR § 1.16.

    ☐  Any patent application processing fees under 37 CFR §1.17.

☐  The Commissioner is hereby authorized to charge payment of the following fees during the pendency of this application or credit any overpayment to Deposit Account No. 23-1925.  A duplicate copy of this sheet is enclosed.

    ☐  Any filing fees under 37 CFR § 1.16 for presentation of extra claims.

    ☐  Any patent application processing fees under 37 CFR § 1.17.

    ☐  The issue fee set in 37 CFR § 1.18 at or before mailing of the Notice of Allowance, pursuant to 37 CFR § 1.311(b).

June 1, 2001
_____
Date

Kent E. Genin
BRINKS HOFER GILSON & LIONE
Registration No. 37,834

Rev. Nov-98
F:\COMMON\KEG\OverX 10406\10406-49\10406-49 Patent Transmittal Cover.doc

JA0980

"Express Mail" mailing label number ___ EL 756225454 US

Date of Deposit: ___June 1, 2001

<u>Our Case No. 10406/49</u>

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
APPLICATION FOR UNITED STATES LETTERS PATENT


INVENTORS:              JOHN K. OVERTON
                        STEPHEN W. BAILEY


TITLE:                  METHOD AND APPARATUS FOR
                        MANAGING LOCATION
                        INFORMATION IN A NETWORK

ATTORNEY:               KENT E. GENIN
                        BRINKS HOFER GILSON & LIONE
                        P.O. BOX 10395
                        CHICAGO, ILLINOIS 60610
                        (312) 321-4200

JA0981

# METHOD AND APPARATUS FOR MANAGING LOCATION INFORMATION IN A NETWORK

## RELATED APPLICATIONS

This application claims the benefit of provisional patent application serial no. 60/209,070 filed June 2, 2000 and provisional application serial no. 60/277,408 filed March 19, 2001, the entirety of each of these applications is incorporated herein by reference. This application also claims priority to the following U.S. patent applications: application serial no. 09/661,222 entitled NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL, filed on September 13, 2000; application serial no. 09/503, 441 entitled AUTOMATED SYSTEM FOR IMAGE ARCHIVING, filed February 14, 2000; application serial no. 09/367,461 entitled AUTOMATED SYSTEM FOR IMAGE ARCHIVING, filed August 13, 1999; and application serial no. 09/111,896 entitled SYSTEM AND METHOD FOR ESTABLISHING AND RETRIEVING DATA BASED ON GLOBAL INDICES, filed on July 8, 1998. The entirety of each of these applications is also incorporated herein by reference.

## FIELD OF THE INVENTION

This invention relates generally to the storage and retrieval of information, and in particular, to a system and method for managing global search and retrieval of information across a network.

## BACKGROUND

Data records can reside in many different places. In existing retrieval systems and methods, a client seeking information sends a request to a server. Typically, only files that are registered with that server are returned. Disadvantageously, the search is also usually restricted to a local, identified system. The search is thus conducted only where the server knows in advance to look.

Another disadvantage of known retrieval systems is the difficulty in accessing data in different forms. Current retrieval systems are typically

JA0982

designed to search for data in limited forms. One example is where a client requests files based on a subject, like a person's name. Search results for this type of search may only retrieve text files of peoples' names. Another problem in current retrieval systems is that the client may receive text and image files in the search results, but cannot seamlessly access the image files. Yet another problem in current retrieval systems is that video and sound files related to the request may not even be found in the search results. For example, a doctor might be able to retrieve medical records on a specific patient, but cannot view MRI or X-Ray results associated with that record.

A distributed database is one where data is stored and retrieved among multiple machines connected by a network. Typically, each machine in which some portion of the data in a distributed database may reside is called an application server. One commonly asked question in an application server environment is: Where is data associated with a particular entity in a distributed database? The data location is a key question when a distributed database has highly dynamic, and even spontaneous, data distribution properties.

In networked environments where there are a large number of data repositories and any particular entity does not have data in all of the data repositories, a mechanism is needed that would permit queries to be directed only at data repositories with relevant information. It would also be beneficial to permit membership in the set of data repositories itself to be highly dynamic. Such a system would support on-the-fly addition and removal of data repositories from the topology of a distributed database seamlessly and without the need to reprogram the database.

Another challenge faced in networked environments is scaling system capabilities in a manner sufficient to handle variable demand for resources. A system and method for scaling resources to accommodate demands for those resources is also desirable.

## BRIEF SUMMARY

In view of the above, the invention provides a system and method for managing data, using a transfer protocol, in a network environment. According to one aspect of the invention, a system for managing location information and providing location information to data location queries comprises a transfer protocol configured to manipulate an identifier, and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each data location specifies a location of data in a network pertaining to the entity. The system also includes a location server containing location information corresponding to at least one entity that is formatted according to the transfer protocol, where the location of data relates to an application server in the network. The system further includes programming logic stored on the location server that is responsive to a location query identifying a desired entity to return a location message. The location message includes one or more locations associated with the desired entity.

According to another aspect of the invention, a method of handling location queries in a network having a plurality of location servers containing location information correlating each of a plurality of unique identifiers with at least one location is disclosed. The method includes receiving a location query from a client requesting the location of data relevant to an entity identified in the query. The queried location server sends a location response message to the client if the queried location server contains information relevant to the entity identified in the query. The location server sends a redirect message to the client if it does not contain location information relevant to the entity identified in the query, where the redirect message comprising a list of location servers containing information relevant to the entity identified in the query.

In another aspect of the invention, a method of scaling at least one of location server capacity and transaction rate capability in a system for storing and retrieving location information over a network using a transfer protocol is disclosed. The method includes providing a transfer protocol configured to

transport and manipulate an identifier and a location, the location specifying the location of data in the network corresponding to the identifier, and providing a first location server storing location information formatted according to the transfer protocol. Upon receipt of an identifier and location from a first client, where the location represents a location of an application server in the network containing data stored by the first client related to an entity represented by the identifier, the location is stored in a location store at the first location server. A portion of the identifiers and respective location associations in the first location server are transferred to a second location server when a performance criterion of the first location server reaches a predetermined performance limit.

According to another aspect of the invention a database is disclosed. The database includes a computer readable medium containing a plurality of index designations, where each index designation represents of one of a plurality of identifiers, and where each identifier uniquely identifies an entity. The database also contains a plurality of locations, where each of the locations is associated with at least one of the plurality of index designations and represents a location of information relevant to an identifier represented by an index designation. A location store having a table containing the plurality of index designations and associated locations is stored in the computer readable medium, as well as an indexing function operative to map each of the plurality of identifiers to a respective one of the plurality of index designations.

These and other features and advantages of the invention will become apparent upon a review of the following detailed description of the presently preferred embodiments of the invention, when viewed in conjunction with the appended drawings.   ·

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a system block diagram according to a preferred embodiment.
FIG. 2 is a block diagram of a location suitable for use in the system of FIG. 1.

FIG. 3 is a block diagram of an alternative embodiment of the location of FIG. 2.

FIG. 4 is a block diagram of an NDTP server suitable for use in the system of FIG. 1.

FIG. 5 is a block diagram of an NDTP server topology according to a preferred embodiment.

FIG. 6 is a block diagram of an alternative NDTP server topology.

FIG. 7 is an example of multiple outstanding protocol requests.

FIG. 8 is a layout of one presently preferred string format.

FIG. 9 is a layout of one presently preferred NDTP_GET message.

FIG. 10 is a layout of one presently preferred NDTP_GET RSP message.

FIG. 11 is a layout of one presently preferred NDTP_PUT message.

FIG. 12 is a layout of one presently preferred NDTP_PUT_RSP message.

FIG. 13 is a layout of one presently preferred NDTP_DEL message.

FIG. 14 is a layout of one presently preferred NDTP_DEL_RSP message.

FIG. 15 is a layout of one presently preferred NDTP_UPD message.

FIG. 16 is a layout of one presently preferred NDTP_UPD_RSP message.

FIG. 17 is a layout of one presently preferred NDTP_RDR_RSP message, where FIG. 17(a) shows a server table layout, and FIG. 17(b) shows a redirect function layout.

FIG. 18 is a system diagram showing an NDTP server constellation configuration and exemplary data flow paths.

FIG. 19 is a system diagram showing a client-centric NDTP server constellation approach for redirection.

FIG. 20 is a system diagram showing a server-centric NDTP server constellation approach for redirection.

FIG. 21 is a system block diagram showing a multi-server implementation environment of the transfer protocol of the invention.

FIG. 22 is a block diagram of a splitting process in an NDTP server cluster.

FIG. 23 illustrates an embodiment of a content management/object management system configuration incorporating an NDTP server network.

5          FIG. 24 illustrates an embodiment of a vehicle tracking system incorporating an NDTP server.

FIG. 25 illustrates an embodiment of a mobility management application incorporating an NDTP server.

FIG. 26 illustrates an embodiment of a location store format for the
10       NDTP server of FIG. 25.

## DETAILED DESCRIPTION OF THE PRESENTLY PREFERRED EMBODIMENTS

The following terms are used to describe the operation of the presently preferred distributed database system.  A network distributed tracking protocol
15       (NDTP) is a transfer protocol having the capability to manipulate location information used to efficiently track the location of information associated with an individual entity in the distributed database system.  An "entity identifier" or an "identifier" is a unique encoding, which may be a string in one embodiment, with which zero or more data location specifiers are associated in an NDTP
20       server.  A "data location" or "location" is an encoding, for example a string, that is a member of a set of associations with an identifier in an NDTP server. An "NDTP client" or a "client" is a network-attached component that initiates add, delete, lookup and update of identifier/location mappings, or associations, from an NDTP server with NDTP request messages.  An "NDTP
25       server" or a "server" is a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to NDTP request messages from clients.  The term "Network Byte Order" is the ordering of bytes that compose an integer of larger than a single byte as defined in the Internet Protocol (IP) suite.  Preferably, Network Byte Order
30       specifies a big-endian, or most significant byte first, representation of

multibyte integers. In this specification a byte is preferably composed of eight bits.

FIG. 1 shows one basic topology of a preferred network 10 implementing a preferred embodiment of the distributed database system. The distributed database system 10 includes at least one NDTP server 12, at least one client 14, and, in one embodiment, an application server 16. An application server 16 is deployed for given purposes, such as a distributed database, instant messaging, phone routing, distributed content management, geo-location services and etc. As will be explained in greater detail below, the distributed database system preferably allows clients 14 to efficiently locate information through queries to the NDTP servers 12. Using the NDTP protocol, the NDTP servers maintain location information in the form of a list of location associations with an entity. The location may be address information for the application server(s) containing information relevant to the identifier or address information for the application server(s) through which data relevant to the identifier may be accessed. In one embodiment, when a client queries the NDTP server for information pertaining to an entity, the NDTP server preferably returns a list of all locations for the specified entity. The client then can directly access the various locations, relieving the NDTP server of any further involvement in the transaction and allowing the NDTP server to handle more queries.

Alternatively, the location may also be one or more pieces of data identifying the physical location of the entity identified by the identifier. In embodiments where the location on the NDTP server is a physical location of the entity identified by the identifier (e.g. a geo-location service), no application servers 16 may be necessary because the location information on the NDTP server(s) may be the endpoint of the client query.

When the locations returned by an NDTP server to a client are of address information of one or more application servers, these application servers 16 may be any type of mechanism accessible by a client system. As shown in FIG. 2, a location, such as an application server 16 containing a location-enabled service or router table, may include an NDTP application 18

for receiving and reporting NDTP references. The application server 16 running the location-enabled service or router table preferably supports the client-server interactions. Any of a number of existing location-enabled services, such as Universal Resource Identifier (URI) - Universal Resource Locator (URL) mappings in distributed content management, or router table formats may be operated on the application server 16.

FIG. 3 illustrates an embodiment where the location is a data repository 24 composed of an application server 22 and an NDTP application 20 associated with a persistent storage mechanism 26 such as a disk drive, for managing client-server interaction. In an alternative embodiment, the location in FIG. 2 may consist of a routing table on the application server 16. In this alternative embodiment, the NDTP application 18 performs location interactions and the routing table routes services to appropriate destinations. Similarly, the client 14 may be any mechanism capable of communicating with the NDTP server. For example, a client 14 may consist of a PC-based computer, computer network, personal digital assistant (PDA), telephone, car messaging center, and so on.

The NDTP server 12 illustrated in FIG. 1 is preferably a network server configured to answer the question: Where is data associated with a particular entity in a distributed database system? This is in contrast to the question of what is the data associated with a particular entity in the distributed database system that must be answered by a typical distributed database mechanism. The NDTP server is built upon a location store data structure. Large databases store large amounts of data, but the NDTP server is only concerned with the location of that data, rather than the end-point referent data itself.

Referring to FIG. 4, the NDTP server 12 includes a network front end 34, RAM storage 36, and non-volatile storage 38. The non-volatile storage 38 may be a disk drive that is in communication with, or integral with, the NDTP server hardware. The network front end 34 includes a memory manager that is preferably logic operative to divide a large contiguous memory area into small, fixed sized chunks, for example 128 octets. These fixed sized chunks

are used to build both strings, with linked lists of chunks used to represent strings that do not fit within a single chunk, and mapping lists, with linked lists of chunks to represent mapping lists that have more elements than fit in a single chunk. The network front end also includes a transaction protocol, such as transaction control protocol/Internet protocol (TCP/IP). The NDTP server 12 preferably maintains the state of its mappings in the non-volatile storage 38. An indexed location store is maintained in RAM 36 that contains a table of index designations, where the identifiers are mapped to one or more locations in the location store. The indexed location store may be indexed by a table implemented through an efficient function, such as hash function, b-tree function or t-tree function. Additionally, an NDTP server map identifying any other NDTP server locations for the specific network and the set of associations contained in each respective NDTP server is maintained in RAM, persistent storage, or preferably both RAM and persistent storage.

In one embodiment, a NDTP server 12 will read the state of its mapping sets from disk storage to service requests from clients, and once it starts servicing requests, the only action it will perform to disk storage is to record each NDTP update transaction as it is processed. In other embodiments, the state of the NDTP server mapping sets may be maintained in RAM. In yet other embodiments, the server mapping sets are maintained in RAM and persistent storage. The records written to the NDTP server log file refer to associations in the NDTP server location store using a pointer that defines a reference to an existing location. In one embodiment, the record looks like:

```
typedef struct ss_log_map  {
    ss_i_t op;        /*  opcode, LOG_MAP  */
    ss_i_t rec;       /*  rec pointer (previously
                          allocated chunk  */
    ss_i_t to;        /*  to pointer (string)  */
}  ss_log_map_t;
```

The ss_i_t type is the natural unsigned integer for the platform on which the NDTP server is being run. For example, it is a 32-bit integer on Intel (IA32) platforms, and a 64-bit integer on UltraSPARC platforms.

If the NDTP_PUT results in extending the linked list of mapping pointers with a new memory chunk, the record is somewhat different:

```
typedef struct ss_log_new_map  {
    ss_i_t op;         /*  opcode, LOG_NEW_MAP  */
    ss_i_t from;       /*  from pointer (in string or
                              rec)  */
    ss_i_t rec;        /*  rec pointer (new rec)  */
    ss_i_t to;         /*  to pointer (string)  */
}  ss_log_new_map_t;
```

The log record for an NDTP_DEL update is similar to the one for an NDTP_PUT;

```
typedef struct ss_log_unmap  {
    ss_i_t op;
    ss_i_t from;       /*  from pointer (key cstr)  */
    ss_i_t to;         /*  to pointer (data cstr)  */
}  ss_log_unmap_t;
```

Each time a new location is created in the NDTP server location store, a new string log file entry is written into the log file:

```
typedef struct ss_log_string {
    ss_i_t op;          /* opcode, LOG_STRING */
    ss_i_t len;
    ss_i_t chunks[];
    ss_log_str_t s;
} ss_log_string_t;
```

where the ss_log_str type is similar to the ndtp_str_t, except that the len field is an ss_i_t instead of a uint32_t:

```
typedef struct ss_log_str_t {
    ss_i_t len;
```

```
    uint8_t data[];
} ndtp_str_t;
```

The transactional nature of NDTP protocol means that the response to
an update request is not returned until request has completed, including being
committed to nonvolatile storage. The NDTP server 12 combines the log file
writes of multiple NDTP update transactions by adding each log file record to
a log file write buffer 46 until either the buffer becomes full, or the network
front end requests that one or all log file write buffers 46 be flushed to disk.
The NDTP server 12 preferably maintains more than one log file buffer so that
its performance at high transaction rates becomes insensitive to the high
latency of individual file write operations. To prevent unbounded log file
growth, the NDTP server will periodically write its entire current state to a new
log file, close the old log file, and then begin the update logging process in the
new log file.

Implementing the NDTP protocol specified below, if there are a large
number of data repositories and other types of application servers in a
network and any particular entity does not have data in all of them, the NDTP
server permits queries to be directed only at pertinent data repositories and
application servers. The NDTP server also preferably permits membership in
the set of repositories and application servers itself to be highly dynamic and
even spontaneous. The NDTP server supports on-the-fly addition and
removal of data repositories and application servers from its deployed
topology.

The NDTP server 12 may be implemented on any of a number of
standard computer platforms including, for example, PC-based platforms
having 64 Megabytes of RAM, and a PENTIUM-type processor operating at
450 MHz on a 100 Mbit Ethernet connection. Additionally, as illustrated in
FIGS. 5 and 6, the NDTP server may be a network of NDTP servers
configured in any number of ways. For example, FIG. 5 illustrates a flat
NDTP server topology using clustering, or a distributed topology using
replication, where each of the NDTP servers 12 in the cluster may contain a

different portion of a pool of associated identifier and location information. In another alternative embodiment, a hierarchical NDTP server topology, such as the NDTP server tree 52 shown in FIG. 6, may be utilized. In the NDTP server tree 52 topology, each node 54 may be an individual NDTP server 12, a cluster 50 of NDTP servers, an NDTP server tree or any combination of these arrangements.

Network Distributed Tracking Protocol (NDTP)

The Network Distributed Tracking Protocol (NDTP) efficiently tracks the location of data associated with an individual entity in a distributed database. NDTP is a transactional protocol, which means that each operation within NDTP consists of a request message from an NDTP client to an NDTP server, followed by an appropriate response message from the NDTP server to the NDTP client.

The NDTP server treats the identifier as an unstructured stream of octets, which is assumed to be unique to a particular entity. The precise structure of the NDTP identifier and the mechanism for ensuring its uniqueness are a function of the application in which the NDTP server is used. In a customer oriented application, the NDTP identifier might be a unique customer identifier, for example, a Social Security Number, in either printable or binary integer form, as is appropriate to the application. NDTP also defines a location to specify an association with a particular identifier. Multiple connections of locations with identifiers may be used concurrently.

As with identifiers, the NDTP server treats locations as unstructured streams of octets. The structure of a location is a function of the application in which the NDTP server is used. For example, a location might be an Internet machine name, and a TCP/IP port number for a relational database server, or an HTTP Universal Resource Locator (URL), or some concatenation of multiple components.

The NDTP server efficiently maintains and dispenses one to many relationships between identifiers and locations. In other words, an identifier may be associated with any number of locations. In embodiments where the

location information relates to locations of application servers containing data or routing information for finding data, the NDTP server is updated to indicate an association between the identifier and the application server's location when data for a particular identifier is added to an application server. When a query is performed for an identifier, the NDTP server supplies the set of application servers in which data may be found for that identifier.

General NDTP Mechanics

The protocol of the invention is designed to provide maximum transaction throughput from both the NDTP server and associated clients. The design goal is realized through two design principles:

1.  NDTP messages should preferably be as short as possible to maximize the rate of NDTP transactions for a given network communication bandwidth.

2.  NDTP messages should preferably be structured for efficient processing on existing machine architectures.

Design Optimizations.

In keeping with other network protocol standards including TCP/IP, multioctet integer quantities in NDTP are preferably encoded using the big endian integer interpretation convention, as set forth above. In one embodiment, NDTP fields are preferably represented in binary format and aligned on 32-bit boundaries.

To overcome network latency, NDTP is designed to support asynchronous operation, where many requests may be sent to an NDTP server before a response from any of them is received.

Each NDTP message is preceded by a fixed size, 12-octet header, using the preferred data structure:

```
typedef struct ndtp_hdr {
    uint8_t op;            /* opcode */
    uint8_t pad[3];
    uint32_t id;           /* transaction identifier */
    uint32_t size;         /* total request size
```

```
                                        following the header */
        } ndtp_hdr_t;
        where:
    op:
5           NDTP message numerical operation code.
            NDTP_GET:          get request
            NDTP_GET_RSP:      get response
            NDTP_PUT:          put request
            NDTP_PUT_RSP:      put response
10          NDTP_DEL:          delete request
            NDTP_DEL_RSP:      delete response
            NDTP_RDR_RSP:      request redirection
            NDTP_UPD:          update
            NDTP_UPD_RSP:      update response
15  id:
            Client supplied operation request used to distinguish responses from
            multiple outstanding NDTP asynchronous requests.  Each "_RSP"
            message echoes the id field of the associated request.
    size:
20          Size, in octets of the remainder of the NDTP message.  The size field
            should preferably be a multiple of 4 octets.
            Variably sized portions of NDTP messages are preferably defined with
        a size field rather than some other delimiter mechanism to facilitate efficient
        reading of NDTP messages.
25          The variably sized portions of NDTP messages are composed of zero
        or more NDTP strings:
            typedef struct ndtp_str {
                uint32_t len;
                uint8_t data[];
30          } ndtp_str_t;
```

Note that the C struct definitions in this document are schematic, and not necessarily fully compliant structures in the C programming language. Specifically, arrays denoted in this document with "[ ]" imply a dimension which is only known dynamically and this indefinite array size specifier is not allowed in C struct definitions. Note also the following:

len:

the number of significant octets of data following the len field in the data area.

data:

len octets of data, followed by up to 3 octets of padding, to ensure that the total length of the NDTP string structure is a multiple of 4 octets. The padding octets are not included in the len field.

Because variable sized portion NDTP messages are composed of zero or more NDTP strings and NDTP records preferably occupy an even multiple of 4 octets, this ensures that the "size" field of NDTP message headers will preferably be a multiple of 4 octets.

Protocol Structure

An example of multiple outstanding NDTP requests and the use of request identifiers is shown in FIG. 7. NDTP preferably has a simple, stateless request/response structure. Each request message 60 sent by a client 14 has a corresponding response message 62 returned by the server 12. To maximize server throughput and use of available network bandwidth, NDTP is asynchronous in nature. Many requests 60 from a single client 14 may be outstanding simultaneously, and responses 62 may or may not be returned from the server 12 in the order in which the requests 60 were issued. Each NDTP request 60 contains an NDTP request identifier 64 that is returned in the NDTP response 62 for the associated request 60. An NDTP client 14 uses a unique NDTP request identifier 64 for each NDTP request 60 that is outstanding at the same time to an NDTP server 12 if it wishes to correlate responses with requests.

There are four basic operations preferably supported by the NDTP: add a location association, delete a location association, get location associations, and update a location association or associations. The response to adding a location association is a simple acknowledgement. If the location is already

5      associated with the identifier, adding the association has no effect, but the request 10 is still acknowledged appropriately. In other words, the NDTP add operation is idempotent. The response to deleting a location association is a simple acknowledgement. If the location is not currently associated with the identifier, deleting the association has no effect, but the request 60 is still

10     acknowledged appropriately. In other words, the NDTP delete operation is idempotent. The response to getting one or more locations is a list of one or more locations presently associated with an identifier. If no location associations currently exist, a list of length zero is returned. The response to updating a location association for an identifier is a simple acknowledgement.

15     As the NDTP update operation is functionally a combination of the NDTP add and delete operations, the NDTP update operation is also idempotent.

Message Formats

       NDTP messages 60, 62 preferably have a regular structure that consists of a message operation code, followed by a request identifier 64,

20     followed by a length (in bytes) 66 followed by zero or more strings 68 as shown in FIG. 8. As those skilled in the art will appreciate, NDTP message formats are preferably independent of the network transport layer used to carry them. NDTP preferably defines mappings of these messages 60, 62 onto TCP and UDP transport layers (described in detail below), but other

25     mappings could also be defined and it is likely that these NDTP message formats would not require change. For example, the notation ROUND4(x) means x, rounded up to the next multiple of 4.

Integer Format

       Multibyte integers in NDTP messages are represented in network byte

30     order; using the big-endian convention. In other words, the most significant

byte of a multibyte integer is sent first, followed by the remainder of the bytes, in decreasing significance order.

## String Format

Strings in NDTP are represented as counted strings, with a 32-bit length field 66, followed by the string data 68, followed by up to 3 bytes of padding 70 to make the total length of the string representation equal to ROUND4(length). This layout is shown diagrammatically in FIG. 8.

## NDTP_GET Format

The NDTP_GET message has a message operation code 72 of 2, and a single NDTP string 74 which is the identifier string for which to get associated locations. This layout is shown diagrammatically in FIG. 9.

## NDTP_GET_RSP Format

The NDTP_GET_RSP message has a message operation code 76 of 3, and zero or more strings 78 that are the locations currently associated with the requested identifier. This layout is shown diagrammatically in FIG. 10.

## NDTP_PUT Format

The NDTP_PUT message has a message operation code 80 of 4, and two NDTP strings 82, 84. The first string 82 is the identifier for which to add a location association, and the second string 84 is the location to add. This layout is shown diagrammatically in FIG. 11.

## NDTP_PUT_RSP Format

The NDTP_PUT_RSP message has a message operation code 86 of 5, and zero NDTP strings. This layout is shown diagrammatically in FIG. 12.

## NDTP_DEL Format

The NDTP_DEL message has a message operation code 88 of 6, and two NDTP strings 90, 92. The first string 90 is the identifier from which to delete a location association, and the second string 92 is the location to delete. This layout is shown diagrammatically in FIG. 13.

NDTP_DEL_RSP Format

The NDTP_DEL_RSP message has a message operation code 94 of 7, and zero NDTP strings. This layout is shown diagrammatically in FIG. 14.

NDTP_UPD Format

5       The NDTP_UPD message 93 has an operation code 95 of 9 and three NDTP strings. The first string 96 is the identifier from which to update the location association. The second string 97 is the location to delete. The third string 98 is the location to add. This layout is shown diagrammatically in FIG. 15.

10      NDTP_UPD_RSP Format

The NDTP_UPD_RSP message 99 has an operation code 100 of 10 and zero NDTP strings. This layout is shown diagrammatically in FIG. 16.

A general description of the usage and operation of these protocol messages is provided below.

15      NDTP_GET Transaction

The NDTP_GET message contains a single NDTP string which is the identifier for which associated data locations are requested.

```
typedef struct ndtp_get {
  ndtp_hdr_t hdr;
  ndtp_str_t key;
} ndtp_get_t;
```

20

The NDTP_GET_RSP message contains zero or more NDTP strings which are the locations associated with the NDTP identifier:

25
```
typedef struct ndtp_get_rsp {
  ndtp_hdr_t hdr;
  uint32_t rsps;
  ndtp_str_t values[];
} ndtp_get_rsp_t;
```

NDTP_PUT Transaction

The NDTP_PUT messages contains two NDTP strings which are (1) the NDTP identifier and (2) the NDTP location which is to be associated with the NDTP identifier.

```
typedef struct ndtp_put {
    ndtp_hdr_t hdr;
    ndtp_str_t key;
    ndtp_str_t data;
} ndtp_put_t;
```

The NDTP_PUT_RSP message has no NDTP strings, and simply indicates that the requested identifier/location association was added:

```
typedef struct ndtp_put_rsp {
    ndtp_hdr_t hdr;
} ndtp_put_rsp_t;
```

The requested identifier/location association is added in addition to any other associations already maintained by the NDTP server. If the requested identifier/location association is already in effect, the NDTP_PUT still succeeds and results in an NDTP_PUT_RSP message.

NDTP_DELETE Transaction

The NDTP_DEL message contains two NDTP strings which are (1) the NDTP identifier and (2) the NDTP location which is to be unassociated with the NDTP identifier:

```
typedef struct ndtp_del {
    ndtp_hdr_t hdr;
    ndtp_str_t key;
    ndtp_str_t data;
} ndtp_del_t;
```

The NDTP_DEL_RSP message has no NDTP strings, and simply indicates that the requested identifier/location association was deleted.

JA1000

```
typedef struct ndtp_del_rsp {
  ndtp_hdr_t hdr;
} ndtp_del_rsp_t;
```

If the requested identifier/location association is not in effect, the NDTP_DEL still succeeds and results in an NDTP_DEL_RSP message.

### NDTP_RDR_RSP Message

NDTP supports a distributed server implementation where the NDTP client selects the appropriate server from a table of servers based upon a distribution function computed from the identifier. This distribution function is preferably a standard hash function, for example the *hashpjw* function presented by Aho, Sethi and Ullman in their text *Compilers, Principles, Techniques and Tools*. Alternatively, when interest so dictates, NDTP allows applications to provide a customized function as an alternative to a standard hash function.

The NDTP client can determine the size of the NDTP server table, which may have changed, and then update its local copy of the NDTP server table and attempt the NDTP transaction again, this time directed at the correct NDTP server. An NDTP redirection mechanism (described in detail below) preferably permits a client to store permanently only a single NDTP server address, and learn the complete NDTP server table size and contents from the NDTP_RDR_RSP message from the first NDTP request the client performs for which the identifier does not reside on a well-known server.

### NDTP_UDP Transaction

The NDTP_UPD message is functionally a combination of the NDTP_PUT and NDTP_DEL messages described above. The NDTP_UPD_RSP message is also functionally the same as the NDTP_UPD_RSP and NDTP_DEL_RSP messages, where there is simply an indication that an identifier/location association update was made.

Network Front End

The NDTP server network front end preferably maximizes NDTP transaction throughput including concurrent NDTP requests from a single client as well NDTP requests from multiple concurrent clients.

Network Communication Mechanism

NDTP defines a transaction oriented protocol, which can be carried over any of a variety of lower level network transport protocols. TCP and UDP are currently supported, however any of a number of other protocols are also supportable.

TCP/IP: TCP/IP provides a ubiquitously implemented transport which works effectively on both local area and wide area networks. An NDTP client using TCP/IP preferably connects with the NDTP server at an established TCP port number, and then simply writes NDTP request messages through the TCP/IP connection to the server, which then writes NDTP response messages back to the client through the same TCP/IP connection in the reverse direction.

UDP/IP: For isolated NDTP transactions, depending upon the application and network infrastructure in use, it is beneficial to have the NDTP server employ UDP/IP, which is a widely available connectionless datagram protocol.

However, UDP/IP does not support reliable data transfer, or any congestion control mechanism. This means that NDTP clients using UDP/IP must implement reliability and congestion control maintaining transaction timeouts and performing exponential retry backoff timers, precisely analogous to the congestion control mechanism implemented by Ethernet, and other well known UDP protocols. Those skilled in the art will note that the NDTP protocol is stateless from the standpoint of the NDTP server, which means that there is no congestion control or reliability burden on the server; it is all implemented in a distributed manner by the NDTP UDP/IP clients.

Still Higher Performance (ST): Both TCP/IP and to a lesser degree UDP/IP suffer from high host CPU overhead. Like the relatively long latency of

TCP/IP, this host CPU consumption is considered just the "cost of doing business" where TCP/IP provides ubiquitous connectivity. If an NDTP server were running in a more constrained environment, where ubiquitous connectivity was not required, its absolute performance could be improved substantially by using a different protocol that is optimized to reduce CPU overhead and latency, such as the Scheduled Transfer (St) protocol.

NDTP Query Processing

In one embodiment, the NDTP server network front end preferably services NDTP query requests in a FIFO style by reading the NDTP_GET message, performing the lookup for the identifier in the NDTP server location store, and writing the NDTP_GET_RSP message. Each NDTP query is independent of any other NDTP transactions (other queries or updates), so multiple NDTP queries may be processed simultaneously on multiprocessor machines. The NDTP server permits this by not performing multiprocessor locking in the NDTP query processing path.

NDTP Update Processing

To maintain high performance on NDTP updates, the NDTP server network front end preferably supports multiple concurrent asynchronous update transactions. Each update is preferably performed automatically to avoid creating an inconsistent state in the location store. All NDTP updates are serialized through the location store mutator critical code sections.

When an NDTP update is processed, a call is made to the location store mutation function, which returns immediately indicating either that the mutation is complete, or that the completion will be signaled asynchronously through a callback mechanism. For updates which are not immediately completed, the network front end maintains a queue of NDTP updates for which it is awaiting completion. When completed, the network front end writes the NDTP update response messages for all completed updates back to the clients.

Multiple Connection Handling

The NDTP server network front end may be conditionally compiled to use either of two standard synchronous I/O multiplexing mechanisms, select or poll, or to use threads to prevent blocking the server waiting for events on individual connections. The threaded version of the NDTP server network front end preferably creates two threads for each NDTP connection, one for reading and one for writing.

TCP Mapping

NDTP is preferably carried on TCP in a standard manner. An NDTP/TCP client opens a connection with a server on a well-known port. The well-known TCP and UDP port numbers can be selected arbitrarily by the initial NDTP implementer. Port numbers that do not conflict with existing protocols should preferably be chosen. The client sends NDTP requests 60 to the server 12 on the TCP connection, and receives responses 62 back on the same connection. While it is permissible for a single client 14 to open multiple NDTP/TCP connections to the same server 12, this practice is discouraged to preserve relatively limited connection resources on the NDTP server 12. The asynchronous nature of NDTP should make it unnecessary for a client 14 to open multiple NDTP/TCP connections to a single server 12.

If protocol errors are detected on an NDTP/TCP connection, the NDTP/TCP connection should be closed immediately. If further NDTP/TCP communication is required after an error has occurred, a new NDTP/TCP connection should be opened. Some examples of detectable protocol errors include: Illegal NDTP message operation code; Nonzero String Area Length in NDTP_PUT_RSP or NDTP_GET_RSP; Inconsistent String Area Length and String Length(s) in NDTP_GET, NDTP_GET_RSP, NDTP_PUT, NDTP_DEL or NDTP_UPD; and Unexpected NDTP request identifier by client.

Due to the reliable nature of TCP, NDTP/TCP servers 16 and clients 12 need not maintain any additional form of operation timeout. The only transport errors that can occur will result in gross connection level errors. A client 12 should assume that any NDTP requests 10 for which it has not

received responses 14 have not been completed. Incomplete operations may be retried. However, whether unacknowledged NDTP requests 10 have actually been completed is implementation dependent.

UDP Mapping

5       Unreliable Datagram Protocol (UDP) provides connectionless, unacknowledged datagram transmission. The minimal protocol overhead associated with UDP can deliver extremely high performance if used properly.

      NDTP/UDP clients 14 send UDP datagrams with NDTP request messages 60 to a well-known UDP port (see above). NDTP/UDP servers 12

10 return NDTP response messages 62 to the client 14 selected local UDP port indicated in the NDTP/UDP datagram containing the requests 60. NDTP/UDP does not require any form of connection or other association to be established in advance. An NDTP interchange begins simply with the client request message 60.

15       For efficiency, the mapping of NDTP onto UDP permits multiple NDTP messages to be sent in a single UDP datagram. UDP datagrams encode the length of their payload, so when a UDP datagram is received, the exact payload length is available. The recipient of an NDTP/UDP datagram will read NDTP messages from the beginning of the UDP datagram payload until

20 the payload is exhausted. Thus, a sender of an NDTP/UDP datagram is free to pack as many NDTP messages as will fit in a UDP datagram.

      NDTP/UDP client 14 implementations that use the NDTP request identifier 64 for antialiasing should ignore (i.e., skip) NDTP messages within a NDTP/UDP datagram with invalid NDTP request identifier 64 values. Client

25 14 or server 12 NDTP/UDP implementations detecting any other protocol error should also preferably discard the remainder of the current NDTP/UDP datagram without processing any further NDTP requests from that datagram. Some examples of such detectable errors include: Illegal NDTP message operation code, Nonzero String Area Length in NDTP_PUT_RSP or

30 NDTP_GET_RSP, Inconsistent String Area Length and String Length(s) in

NDTP_GET, NDTP_GET_RSP, NDTP_PUT or NDTP_DEL, and Inconsistent NDTP message length and UDP datagram length.

Because NDTP/UDP messages are limited to the length of a single UDP datagram payload, NDTP/UDP cannot be used to transfer long NDTP messages. For example, it would be difficult to send an NDTP_GET message with NDTP/UDP for a 64K byte identifier.

Those skilled in the art will appreciate that network congestion is a highly dynamic property that is a function of network traffic from all sources through a network link and will vary over time over any given network path. An NDTP/UDP client 14 implementation can recover from network congestion by switching to NDTP/TCP after several failed retries using NDTP/UDP. Failure due to network congestion may be indistinguishable from failure due to UDP packet size limitations, but since the recovery strategy is the same in both cases, there is no need to distinguish these cases.

NDTP Redirection

NDTP handles NDTP server scaling with the NDTP's redirection mechanism, which is managed through an NDTP server 12, or set of such servers. This redirection mechanism allows arbitrary distribution of the data set across completely independent machines. The set of machines managing the NDTP server data set may be referred to as an NDTP server cluster 50, as shown in FIG. 5. The NDTP redirection mechanism exploits this by permitting the distribution of identifiers to location mappings across members of an NDTP server cluster. An advantage of distributing an NDTP server data set across independent machines is that both capacity and transaction rate scale can be increased. In one embodiment, each additional machine in an NDTP server cluster 50 linearly increases capacity, by adding main and secondary storage, and transaction rate, by adding processing power and network bandwidth (assuming a properly scalable network infrastructure is employed).

Each NDTP server 12 maintains a copy of the NDTP server map. An NDTP server will check each request it receives and verify that it is intended

for itself. If it is not, it will respond to the client 14 with an NDTP Redirection Response message (NDTP_RDR_RSP), instead of responding with the normal operation completion message.

A client may misdirect a NDTP request because the NDTP server cluster may have been reconfigured since the client last obtained a copy of the NDTP server map. Thus, the NDTP_RDR_RSP message includes a complete copy of the current NDTP server map with which the client may determine the correct NDTP server for the given NDTP request.

In essence, the NDTP server maintains authoritative copies of the NDTP server map, whereas NDTP clients may have out-of-date copies of the NDTP server map. This property permits efficient reconfiguration of the NDTP server cluster. With the redirect message, an NDTP client can determine the size of the NDTP server table, which may have changed, and then update its local copy of the NDTP server table, and attempt the NDTP transaction again, this time directed at the correct NDTP server.

The NDTP redirection mechanism permits a client permanently to store only a single NDTP server address, and learn the complete NDTP server table size and contents from the NDTP_RDR_RSP from the first NDTP request the client performs which the identifier does not reside on the well known server. The NDTP backbone topology can change dynamically in a similar way to application server topology. Preferably, any time the cluster is reconfigured, only the NDTP servers are updated, rather than the (potentially) unbounded number of clients in the network.

The NDTP client can start out with an NDTP server map containing a single, well known, NDTP server entry. If the well-known NDTP server is not the NDTP server which is managing the portion of the NDTP server data set containing the identifier in the client request, an NDTP_RDR_RSP will be returned, and the client can update its local copy of the NDTP server map. Once a client has received a new NDTP server map, it will use it for the lifetime of the client application, or until it receives a new NDTP server map. The client may also put the most current NDTP server map into a persistent

store, so that new invocations of the client application, or other clients of the same network, can begin operation without even a single NDTP_RDR_RSP.

If the client's saved NDTP server map becomes out-of-date, the server will return an updated NDTP server map the first time a client sends a NDTP request to an incorrect NDTP server. If a client NDTP request times out for some reason, this might mean that a machine in the current NDTP server map has been removed from the NDTP server cluster. In this case, to get the current NDTP server map the client may either (1) return to its base-line NDTP server map, containing the single well known NDTP server, or (2) direct the request to any other NDTP server in its current NDTP server map. Whether received directly, or by a map update via NDTP_RDR_RSP, the client will obtain the desired location specifiers with at most two NDTP transactions.

The ability to scale NDTP service beyond a single server requires a mechanism to distribute portions of the identifier/location association set across multiple NDTP servers. The presently preferred embodiment for accomplishing this is to define a well-known function of the identifier and use this function to select from a set of NDTP servers. NDTP clients will preferably apply this well-known function to the identifier for each NDTP request, and send the NDTP request to the indicated NDTP server. This technique will effectively partition the set of all identifier/location associations across the NDTP servers. Each NDTP server will only maintain the portion of the total association set which corresponds to its particular identifiers. This NDTP server redirection mechanism permits construction of NDTP server clusters. It is reasonable to expect that the identifier index function will be defined when an NDTP server instantiation is implemented, but the actual list of NDTP servers will change from application to application and within a single application throughout the lifetime of the system.

In one embodiment, each of the clients and NDTP servers are programmed with a well-known function and the redirection message, as shown in FIG. 17(a) carries of table of NDTP server URLs. The NDTP_RDR_RSP message 101 has a message operation code of 8, and a description of the system that the client should send its message to. In one

embodiment, the system is described by a list of strings, where each string is an NDTP URL (e.g. ndtp://server.name.com:24500).

If there is more than one list in the outer list, then the client is to select the appropriate inner list to send a message to by applying the following well-known function to the identifier and using the function result as an index into the NDTP server table. In one preferred embodiment, the well-known function applied is the *hashpjw* function presented by Aho, Sethi and Ullman in their text *Compilers, Principles, Techniques and Tools*:

```
uint32_t
hash (uint8_t *s, uint32_t slen, uint32_t size)
{
  uint32_t g;
  uint32_t i;
  unit32_t h = 0;
  uint8_t c;

  for (i = 0; i < slen; i++) {
    c = s[i];
    h = (h << 4) + c;
    g = (h & 0xf0000000);
    if (g) {
      h ^= g >> 24;
      h ^= g;
    }
  }
  return h % size;
}
```

In the above code sequence, the parameter *size* is the size of the hash table (the number of elements in the NDTP server URL table in the NDTP_RDR_RSP message), and is preferably a prime number. Those skilled in the art will appreciate that the same NDTP server may appear multiple times in the NDTP server URL table. For example, if the server URL table has 2039 elements, by putting one NDTP server URL in the first 1019 table elements, and a second NDTP server URL in the second 1020 table elements, the responsibility for the index will be split roughly in half.

A second variant of the NDTP_RDR_RSP function mechanism specifies that a general function description will be sent to the NDTP client in the NDTP_RDR_RSP message. The NDTP client will apply this function to the identifier and the output of the function will be the NDTP server URL to which

to send NDTP requests for the particular identifier. The advantage of this technique over the well-known function approach is that it allows application-specific partitions of the identifier space. This can permit useful administrative control. For example, if General Electric manages all identifiers beginning with the prefix "GE", a general function can be used to make this selection appropriately. The disadvantage of using a general function is it may be less efficient to compute than a well-known function.

There are a variety of possible mechanisms for sending function descriptions. NDTP is expected to be applied in environments that make extensive use of the Java programming platform. Therefore the `NDTP_RDR_RSP` mechanism preferably uses a feature of the Java programming language called "serialized representation" to communicate generalized function in the `NDTP_RDR_RSP` message. A serialized form of a Java object is a stream of bytes that represents the precise state of the object, including its executable methods. For example, the Java Remote Method Invocation (RMI) mechanism uses serialized objects to send executable code to a remote platform for execution. The `NDTP_RDR_RSP` message contains the serialized form of an object implementing this Java interface:

```
interface NDTPRedirect Function {
      String selectServer(byte[] identifier);
}
```

The format of the `NDTP_RDR_RSP` message 103 with a Java Serialized form of the NDTP redirection function is specifically identified in FIG. 17(b).

After the NDTP client has received a new server list, the client will direct further NDTP requests based on this updated NDTP server list until the NDTP server configuration changes again. An NDTP client may even save the current NDTP server list in non-volatile storage so that it can immediately select the correct NDTP server even after application or system restarts. Another possible alternative is for a client to remember only a single, well-known NDTP server, and update its NDTP server list every time the client restarts. These alternatives may be implemented as desired to accommodate design goals for a particular system.

Server Constellations

The NDTP server organization also allows NDTP servers to be combined in various ways to build server constellations that offer arbitrary server performance scalability and administrative control of the location of positions of the identifier/data location relation mappings. FIG. 18 illustrates a basic transaction flow according to a preferred embodiment where a client 112 communicates NDTP protocol messages with an NDTP server constellation 110 (which may be one or more NDTP servers) and separately transacts with an application server 114. The basic communication flow in FIG. 18 may represent a client 112 adding, deleting, or updating an identifier/location association(s), and in turn adding, deleting, or updating corresponding data. The communication flow may represent a client 112 requesting an identifier/location association(s) from the NDTP server, which may be a server constellation construed in either of two forms (see FIGS. 19 and 20), and then querying directly based on the identifier/location association(s) received from the NDTP server. NDTP server constellations preferably have two basic organizational paradigms: Client-Centric and Server-Centric.

Client-Centric Approach

Referring to FIG. 19, a single client (not shown) asks a server 120a in the server constellation 110 for operations that the client desires executed (represented by arrow 1 in FIG. 19). As discussed above, if the client does not receive the data requested, it will receive a redirection response message (NDTP_RDR_RSP) from the contacted server 120a (arrow 2). The client then uses the information it receives to ask another server 120b for the operations the client wants to initiate (arrow 3). A successful response from the second server 120b is then sent to the client (arrow 4).

Server-Centric Approach

Figure 20 shows the server constellation 110 characterizing "server-centric" functionality. In this figure, an NDTP server 130a (server0) receives a

request 132a from a client (not shown). The server 130a (server0) passes the request to a second server 130b (server1), which is an appropriate server for the process, and the second server 130b returns a response 134a to the first server 130a (server0). If the second server 130a (server1) was not

5      appropriate, it could pass the request to another server (not shown), and so on. Each NDTP server 130a,b will combine the results of NDTP requests 132a,b it has performed of other NDTP servers 130a,b with whatever responses 134a,b it generates locally for the original NDTP request 132a, and the combined response 134b will be with the appropriate response for the

10     original NDTP request 132a.

An important aspect of this topology is that it pushes processing emphasis toward servers 130a,b rather than toward clients. Since location/identifier processing can be centralized, administration of the indices can be administered more conveniently in certain cases.

15

Hybrid Constellations

The simplest NDTP server constellation is a single server, and the protocol is designed to permit massive scale with a single or simple server constellation. Highly configurable installations are possible using "client-centric" or "server-centric" techniques. NDTP server constellations 110

20     composed of more than one NDTP server may use any combination of the two approaches for performance optimization and administrative properties. Client-centric and server centric approaches can be used to build NDTP server clusters, NDTP server trees, NDTP server trees of NDTP server

25     clusters, or any other useful configuration.

Topology: Hierarchical and Clustered

Hierarchical and clustered topologies may be created using a server-centric or client-centric approach. One illustration of a cluster topology 50 is shown in FIG. 5. A mixed topology containing hierarchical and clustered

30     elements is shown in FIGS. 6 and 21. The primarily hierarchical topology of the embodiment of FIG. 21 can allow for a single administrative entity 102 to

manage the NDTP sever cluster. An NDTP server hierarchy 100, such as illustrated in FIG. 21, permits identifier/location association data to be owned and physically controlled by many different entities.

Splitting & Coalescing Data Sets

5    The NDTP redirection mechanism discussed above offers flexibility in NDTP server cluster configuration with preferably little impact on clients. However, the NDTP server cluster itself must execute several steps to reconfigure the NDTP server data load. Methods for adding or removing an NDTP server from a running NDTP server cluster include splitting some

10    portion of the data set from a running NDTP server cluster into one or more NDTP servers to be added to the cluster; coalescing some portion of the data set to a remaining NDTP server cluster; and propagating updated NDTP server maps efficiently to all NDTP servers in an NDTP server cluster. Preferably, these methods minimize interruption of service. Large batch-style

15    updates are preferably avoided using the splitting and coalescing algorithm discussed below to handle large scale reconfiguration.

When reconfiguring NDTP server clusters, splitting and coalescing problems for an NDTP server are handled by checkpointing the current data set state and loading it into another instance of an NDTP server. In the case

20    where a data set will be split, a set of identifiers is transferred to another NDTP server. In the case where a data set is coalesced, several NDTP server states are loaded on a single NDTP server cumulatively.

Consider an example of splitting, as shown in FIG. 22, in which a given NDTP server cluster 140 having at least two NDTP servers 12 needs to

25    reconfigure the distribution of identifier/location data among NDTP servers. If the identifier space needs to be split, whether for local policy reasons initiated by an administrator, or based on automatically monitored performance criteria such as transaction rate, storage capacity and etc., the splitting process begins by identifying the set of the data on Server 1, that will be transferred to

30    Server 2. Referring to FIG. 22, Server 1 initially contains a total set of data consisting of Set A 142 and Set B 144. Assuming Server 1 has identified Set

B as the data that needs to be split out to Server2, Server 1 first checkpoints the data in Set B. Server 1 continues to operate normally with respect to Set A and will update (perform any of the NDTP add, delete, or update functions) without interruption. Server 1 also creates new set of data, Set C 146, which accumulates all operations directed to Set B 144 since the checkpoint of Set B 146 took place. Server 1 then copies Set B 144 to Set B' 148 on Server 2. After the copying of Set B 144 to Set B' 148 is complete, Server 1 freezes operations on Set C 146 and copies it to Set C' 150 on Server 2. Operation on Set B' 148 and Set C' 150 is then resumed on Server 2 and Sets B and C 144, 146 are deleted from Server 1.

Preferably, the only interruption to the NDTP server activity in Server 1 or Server 2 is limited to the Set C and the time it takes to complete the copy step of Set C 146 to Set C' 150 while Server 1 freezes operations to Set C. Operations on the remaining data are preferably unaffected throughout the splitting process. NDTP lookup operations do not affect the checkpoints that are saved or loaded. Furthermore, if more than one NDTP server is already operating in the cluster, only the affected subset of the NDTP servers in an NDTP server cluster are interrupted during this process; the remainder of the NDTP server continues to operate undisturbed. An advantage that splitting and coalescing provides is the redistribution of identifier space without requiring reindexing, which is more expensive computationally.

When reconfiguring an NDTP server cluster, the new NDTP server map must be propagated to all NDTP servers in the cluster so that accurate NDTP redirection messages can be sent. An asynchronous mechanism is preferably used to supply the new NDTP server map. Preferably, the NDTP server transferring the data set will broadcast the new NDTP server map to all other NDTP servers in the cluster over its network connection, such as a TCP connection. In one embodiment, each server may maintain an internal table holding all server locations in memory. Preferably, server map size is selected for a likely maximum number of machines in the NDTP server and is a prime number suitable for use with a well-known function. In one embodiment, a server may appear more than one time on the server map. For example, if

the initial NDTP server map size is established at 1023, and only a single NDTP server will be used to form the NDTP server cluster so that the single NDTP server machine appears 1023 times in the NDTP server map.

After splitting and coalescing one method of transferring the updated server map to other servers is to use a data structure containing a list or URL's with ranges of identifiers associated with each URL. In another embodiment, the new server map may be carried in a message having the same properties and format as the NDTP_RDR_RSP message (see FIG. 17(a)) but having a message code identifying the contents as a server-to-server transmission.

If an NDTP server is added by splitting an existing portion of the data set without changing the NDTP server map size, only the new and old NDTP servers need immediately know about the modification of the NDTP server map. The NDTP servers uninvolved in the split will forward all requests for the data set now existing on either the new or the old NDTP server. The old NDTP server will then return an NDTP_RSP_RDR with the new NDTP server map, when responding to requests for the data set that now exists on the new NDTP server. A new NDTP server map will eventually be propagated to all NDTP servers using the NDTP server map propagation mechanism. The NDTP redirection mechanism allows this propagation to be asynchronous to the actual NDTP server cluster reconfiguration. In one preferred embodiment, the server map is transmitted from a server involved in a splitting or coalescing operation to all other servers in a cluster.

Removing NDTP Servers from Server Clusters

The most efficient way to remove NDTP server machines from an NDTP server cluster includes ensuring either sending clients redirects or aliasing the NDTP server. Using redirects, the removed NDTP server machine remains a citizen of the NDTP server cluster, does not manage any particular data set, and simply responds with NDTP_RDR_RSP requests with the new NDTP server map. In effect, this simply returns a forwarding address. Using aliasing, the network address of the removed NDTP server is

assigned as an alias to a remaining, active member of the NDTP server cluster.

The methods for splitting data on NDTP servers and removing NDTP servers entirely permit flexibility for coalescing data in NDTP servers. If, for example, an NDTP server needs to transfer some of its data due to performance limitations (physical storage capacity limits, transaction rate limitations, etc.), the target NDTP server for receiving the transferred data set may already contain an active data set. Preferably, copying a subset of data from a first server to a second server already actively processing its own data proceeds according to the splitting process as described above. Utilizing the NDTP server operations and system configuration flexibility described above, numerous applications of the preferred data location system are contemplated.

Content Management

Referring to FIG. 23, a geographically dispersed network of clients 152, NDTP servers 154 and application servers 156 is shown. Each of the clients, NDTP servers and application servers may each represent one or multiple systems. The application servers 156 contain substantive content in one or more forms (text, graphics, etc.) to which the clients 152 require access. The NDTP servers may maintain tables of identifiers, where each identifier represents one or more instances of a specific file, and the associated location or locations of that file. The identifier may be a Universal Resource Identifier (URI) and the location may be a URL for the specific application server 156 at which the substantive content may be accessed, or any other addressing convention. A client at a Paris location 158 may request the location of information relating to an identifier from the local NDTP cluster 154 and receive a URL for an application server 156 residing in a Chicago location 160. The information for the URI maintained at the Chicago URL is preferably cached at the client 152 in the Paris location on a per instance basis such that the file is available for the client in Paris for the duration of that client's needs. In one embodiment, the NDTP server cluster in the Paris location preferably

maintains a record of the number of requests for that particular URI and, if the URI is the subject of a predetermined number of queries, the frequently requested content at the URL in Chicago is automatically transferred to an application server in the Paris location 158 or copied to an application server in the Paris location. Using the NDTP delete, add, or update operations, the NDTP server clusters in Paris and Chicago preferably update the location information for the URI and asynchronously propagate the new server maps to the remaining NDTP servers.

Object Management

In another embodiment, the same geographical arrangement of data and clients applies to object management, where the object is a programming element or file. Examples of some objects include C++ objects or portions of programming toolkits that various geographically dispersed clients may wish to access in executing a program. By assigning each object a unique identifier and maintaining the location information in NDTP servers, efficient transfer of the object may be achieved and accurate accounting of where the object has been, or currently resides, is obtainable. In particular, embodiments of the present invention are well suited to handle high transaction volume for tracking the objects.

Tracking and Sensing

The NDTP protocol and network configurations discussed above may be applied to any one of a number of physical object (animal, telecommunications devices, troop location, package, family member, part, product and etc.) tracking applications. Referring to FIG. 24, one embodiment of a vehicle tracking application is shown. A shipping company 170, which may be any number of moving company, airborne delivery or ground delivery services, may track company vehicles 172 in a delivery territory 174 in order to maintain delivery fleet status or optimize fleet deployment to, for example, select the best vehicle to pick-up materials at designated pick-up location 175. A dispatcher 176 may access an NDTP server 178 having a location store

180 of information containing identifiers 182 corresponding to individual vehicles 172 and a list of locations 184 associated with the identifier for each vehicle. In one embodiment, the vehicles may be automobiles and the identifier assigned to the vehicles may be the unique vehicle identification number (VIN) assigned by automobile manufacturers to the automobiles they produce.

The location store 180 may be maintained such that only the most recent geographic location (e.g. latitude and longitude) is associated with a vehicle, or the table may be maintained to continuously receive current location information for each vehicle at predetermined intervals so that vehicle travel history, speed, heading and other types of information may be obtained with the location information for a vehicle. In one embodiment, the vehicles 172 may each be equipped with a Global Positioning System (GPS) receiver and a transceiver that is programmed to automatically broadcast position information, or any other location identifying technology. The broadcasts may be picked up through a network, such as a cellular network 186 and transmitted to the NDTP server 178. The broadcasts contain the vehicle identifier and geographic information, such as latitude/longitude or any other geographic measure, that is then appended to the appropriate portion of the indexed table 180. An advantage of the NDTP server application in the vehicle tracking example illustrated in FIG. 24 is that the NDTP server performance may be used to track large numbers of vehicles at high update rates.

Mobility Management, With and Without Presence

In another embodiment, the NDTP protocol and network configurations discussed above may be applied to mobility management applications. Additionally, the mobility management applications may include the ability to indicate whether a device is available for interaction ("presence"), where device availability is tracked in addition to the physical location of a device. For example, as illustrated in FIG. 25, an NDTP server 190 may maintain a set of identifier/location associations on the physical location and availability

of portable devices belonging to a particular user. The portable devices 192 may be, in one embodiment, any type of cellular enabled device, or other wireless mobile device, such as personal digital assistants (PDA), notebook computers with cellular modems, mobility-enabled wrist watches, mobile

5 telephones, and etc. The portable devices 192 preferably include location service enabled software 193, such as standard plug-in software modified to translate NDTP and the service protocol of the third party tracking mechanism. In the embodiment of FIG. 25, a third party tracking mechanism, such as a mobile network tower 194, communicates with an NDTP server 190

10 to update the whereabouts and accessibility of a person through one or more portable devices. In FIG. 25, the mobile network tower 194 communicates with the NDTP server via the portable device. In other embodiments, either the third party tracking mechanism or the portable device 192 may be modified, through a standard API, to directly communicate with the NDTP

15 server. In yet another embodiment, a proxy server (not shown) may provide protocol translation functionality to allow the third party tracking mechanism and/or the portable device to communicate directly with the NDTP server 190 without the need to modify the third party tracking system or the portable device.

20 As illustrated in FIG. 26, the location store 196 maintained on the NDTP server 190 may be configured to have identifiers 198 such as a person's name, associated with locations 200 which may be a device address 202 paired with a presence (availability) 204 indicator. Whenever a portable device 192 is activated, the mobile network tower 194 will inform the NDTP

25 server 190 of the existence of the portable device and its availability. In the given example, a "1" represents an active device and a "0" represents an inactive device. Each time a portable device associated with a person's identifier is activated (and/or deactivated depending upon implementation), the NDTP server location store 196 will be updated by the mobile network

30 tower 194 with the device address. The device address may be in the form of electronic address or other type of location. Using this system, a party attempting to contact the person or entity represented by the identifier "Alice"

in the location store 196 may access the NDTP server to receive the address for the most recently activated device, the address for all active devices, and/or addresses for all devices associated with "Alice".

Generic Naming and Addressing

The NDTP system and protocol described above may provide a specialized database designed to solve general naming and addressing needs. NDTP is designed for use in the larger context of a distributed database system including, but not limited to, addressing and namespace services. As such, it supports an architecture in which information about where data associated with particular application entities can be managed and obtained independently of the data itself. One way to understand this is as a highly dynamic domain name service (DNS) for data. DNS maintains a mapping between names and machines. NDTP and its associated servers maintain a mapping between identifiers and locations. The identifier/location mapping maintained by NDTP servers is much more dynamic (suitable for frequent updates), than the domain name/IP address mapping maintained by DNS. NDTP may be viewed in this respect as fully generalized name service suitable for any kind of service and not restricted to a specialized service.

Mobile Telephone Tracking and Dynamic Telephone Numbers

In other applications of the NDTP protocol and system discussed above, mobile telephone tracking and dynamic telephone number applications may be implemented. With respect to mobile telephone tracking, an NDTP server location store may use the electronic serial number (ESN) of, for example, cellular phones as identifiers, and the cellular tower translation encoding or latitude longitude of the phone as the location. Advantages of tracking mobile phone location through an NDTP server may include speed of information access and the ability to construct an audit trail showing where a cell phone has traveled. In another embodiment, a cellular telephone customer may be mapped to a new service provider by mapping the cell phone ESN to an appropriate location of an instruction set that will convert the

cellular telephone customer's telephone number to a new service provider. In this manner, the cellular telephone customer may switch providers without having to obtain a new telephone number.

With respect to dynamic telephone number functionality, a telephone system organized by NDTP would permit telephone service customers to create and delete unique communication roles freely, for any purpose. For example, a customer may create a new communication role identifier to give to a service provider, such as an auto mechanic, to permit contact during the service. After service completion, the customer may delete the communication role identifier, thereby preventing unwanted subsequent contact, such as telemarketing solicitation. In another embodiment, this communication role identifier property can be employed to dynamically control customer-initiated contact. Telephone-based service providers, such as customer relationship management, computer support, medical services, etc., can dynamically control customer initiated contact. For example, a customer with an active case could dial a unique communication role identifier which would be routed directly to the appropriate support specialist until the incident is resolved. The person reached by the customer's unique communication role identifier can be changed by the service provider as the service cycle progresses. After incident resolution, the service provider may delete the communication role identifier, thereby preventing the customer from gaining additional, inappropriate access to support specialists. The dynamic telephone number application of NDTP may be used on various systems, including voice over Internet protocol (VoIP) systems, to allow users to readily map and unmap single use, or limited use, addresses to a desired communication path.

As described above, a method and system for managing data location information in a network has been disclosed having an easily scaleable architecture that permits rapid operation and flexibility for expansion and reconfiguration of service. The system is based on a Network Distributed Tracking Protocol that runs on top of any stream (e.g. TCP) or datagram (e.g. UDP) network transport layer. With NDTP, the system supports a network

service that efficiently manages mappings from each individual identifier (definable using any format, size, encoding, etc.), to one or more locations (which are also definable using any format, size, encoding, etc.). In one embodiment, the identifiers and locations may be formatted as strings. NDTP permits clients to manipulate identifier/location associations, and request the current set of locations for an identifier from protocol servers. The servers in the network may be reconfigured to change the data set currently stored in one or more servers in response to performance goals or limitations.

Regardless of the expected system context of NDTP in a distributed database, those skilled in the art will appreciate that NDTP can be used for any application in which one-to-one or one-to-many associations among identifier and location associations are to be maintained and accessed on a network.

It is to be understood that a wide range of changes and modifications to the embodiments described above will be apparent to those skilled in the art, and are contemplated. It is therefore intended that the foregoing detailed description be regarded as illustrative, rather than limiting, and that it be understood that it is the following claims, including all equivalents, that are intended to define the spirit and scope of the invention.

WE CLAIM:

1.    A system for managing location information and providing location information to location queries, the system comprising:

a transfer protocol comprising an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity;

a location server containing location information corresponding to at least one entity, the location information formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and

programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising all locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity.

2.    The system of claim 1, wherein the entity comprises a physical object and wherein the at least one location comprises a geographic location.

3.    The system of claim 2, wherein the geographic location comprises at least one of a latitude, a longitude and an altitude.

4.    The system of claim 1, wherein the at least one location comprises a plurality of geographic locations, each of the geographic locations representing a position of an object at a different time.

5.    The system of claim 1, wherein the location server comprises a plurality of location servers, each of the plurality of location servers comprising at least a portion of a total amount of location information residing on the plurality of location servers, and wherein the location information is formatted according to the transfer protocol; and

wherein the programming logic is stored on each of the plurality of location servers.

6.     The system of claim 5, wherein the programming logic stored at each of the location servers further comprises logic responsive to the location query to return one of a location message and a redirect message, wherein the location server returns the location message if the queried location server contains location information for the desired entity, and wherein the location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising a list of at least one other location server known to have location information relevant to the location query.

7.     The system of claim 6, wherein the list of at least one other location server comprises a list of all location servers in the plurality of location servers and a corresponding list of each of the entities having location information on the respective location servers.

8.     The system of claim 5, wherein each of the location servers stores at least a portion of the total amount of location information on a persistent storage device.

9.     The system of claim 8, wherein the persistent storage device comprises one of a hard disk drive, tape drive, optical storage device and removable storage media.

10.    The system of claim 1, wherein the location information in the location server is maintained in an indexed location store.

11.    The system of claim 10, wherein the location store comprises a string store indexed by a hash table.

12.    The system of claim 10, wherein the location query identifying the desired entity comprises a unique identifier for the desired entity, and wherein the programming logic stored on the location server further comprises

programming logic for applying an index function to the unique identifier to retrieve at least a portion of the locations associated with the unique identifier in the location store.

13.     The method of claim 12, wherein the programming logic further comprises logic for applying the index function to retrieve all of the locations associated with the unique identifier in the location store.

14.     The system of claim 12, wherein the location store comprises a string store and the index function comprises a hash function.

15.     The system of claim 6, wherein the plurality of location servers are arranged in a network topology having a plurality of nodes organized in a tree-structure, wherein each node comprises at least one location server and wherein each node is connected to at least one other node in the tree structure.

16.     The system of claim 12, wherein the data location query is received at a data location server in a first node and wherein the redirect message comprises a list of at least one other location server in a node other than the first node that is known to have data location information relevant to the location query.

17.     A system for managing location information and providing data location information to location queries, the system comprising:

a transfer protocol comprising an identifier and at least one location association, wherein the identifier uniquely specifies an entity and wherein each location specifies a location pertaining to the entity;

a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to the transfer protocol, and comprising at least one application server address, wherein the plurality of location servers are arranged in a server cluster topology such that each location server contains a unique portion of the location information; and

programming logic stored on each of the location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises a list of all of the plurality of location servers containing location information related to the desired identifier.

18.     The system of claim 17, wherein the location information comprises geographic location information.

19.     The system of claim 17, wherein the location information comprises network address information.

20.     The system of claim 19, wherein the network address information comprises a network address of a data repository containing data pertaining to the desired identifier.

21.     A method of handling location queries in a network, the network comprising a plurality of location servers containing location information correlating each of a plurality of identifiers with at least one location, the method comprising:
        receiving a location query from a client at one of the plurality of location servers, the location query requesting an identifier's location;
        sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and
        sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in

the query, the redirect message comprising a list of location servers
containing location information relevant to the entity identified in the query.

22.     The method of claim 21, further comprising applying information
in the location query from the client to an indexing function to determine if the
queried location server contains location information relevant to the entity
identified in the query.

23.     The method of claim 22, wherein each of the plurality of location
servers comprises an indexed table of identifiers and associated locations,
and wherein applying information in the location query comprises applying an
identifier in the location query to a hash function.

24.     A method of scaling at least one of location server capacity and
transaction rate capability in a system for storing and retrieving location
information, the method comprising:
    providing a transfer protocol configured to transport identifier and
location information, the location information specifying the location of
information relevant to the identifier;
    providing a first location server storing location information formatted
according to the transfer protocol;
    receiving an identifier and a location relevant to the identifier at the first
location server;
    storing the received location in a location store at the first data location
server, the location store comprising a plurality of identifiers, each identifier
associated with at least one location, wherein the received location is
associated with the received identifier in the location store; and
        transferring a portion of the identifiers and associated locations to a
second data location server when a performance criterion of the first location
server reaches a predetermined performance limit.

25.     The method of claim 24, wherein receiving an identifier and a
location comprises receiving the identifier and the location at the first location

server from an application server, wherein the location comprises an address for the application server.

26. The method of claim 24, wherein receiving an identifier and a location comprises receiving the identifier and the location at the first location server from a physical object, wherein the identifier identifies the physical object and wherein the location comprises a geographic location for the physical object.

27. The method of claim 26, wherein the physical object comprises a vehicle.

28. The method of claim 26, wherein the physical object comprises a portable telecommunications device.

29. The method of claim 24, wherein transferring a portion of the identifier and location associations comprises:

identifying a portion of identifier and location associations on the first location server to be transferred to the second location server and identifying a data set state of the identified portion at an initial time;

copying a data set for the identified portion corresponding to the identified data set state from the first location server to the second location server and maintaining a second data set containing changes to the identified portion since the initial time;

identifying a data set state for the second data set;

ceasing operation of the first location server with respect to the identified portion and copying the second data set to the second location server, wherein the second data set corresponds to the identified data set state for the second data set; and

initiating operation of the second location server for the identified portion of identifiers and location associations.

30.     The method of claim 24, wherein the performance criterion comprises an amount of available persistent storage space in the first location server.

31.     The method of claim 24, wherein the performance criterion comprises a transaction rate limit.

32.     The method of claim 24, wherein the transaction rate limit comprises a processor speed limit.

33.     The method of claim 24, wherein the transaction rate limit comprises a network connection bandwidth limit.

34.     The method of claim 24, further comprising transmitting a location server map from the first location server, the location server map comprising information identifying the second location server and a list of identifiers associated with the second location server.

35.     The method of claim 34, wherein the first and second location servers are part of a location server cluster comprising a plurality of location servers, and wherein transmitting the location server map comprises transmitting the location server map to each of the plurality of data location servers asynchronously.

36.     The method of claim 34, wherein transmitting a location server map comprises transmitting the location server map to a client in response to query received at the first location server from the client regarding an identifier that is not resident on the first location server.

37.     The method of claim 24, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and

automatically transferring the portion of identifiers and associated locations
when the first location server reaches the predetermined limit.

38.    A database comprising:

a computer readable medium;

a plurality of index designations, each index designation representative
of one of a plurality of identifiers, wherein each identifier uniquely identifies an
entity;

a plurality of locations, wherein each of the locations is associated with
at least one of the plurality of index designations and represents a location of
information relevant to an identifier represented by an index designation;

a location store stored in the computer readable medium, the location
store comprising a table containing the plurality of index designations and
associated locations; and

an indexing function stored in the computer readable medium, the
indexing function operative to map each of the plurality of identifiers to a
respective one of the plurality of index designations.

39.    The database of claim 38, wherein the indexing function
comprises one of a hash function, a b-tree function, and a t-tree function.

40.    The database of claim 39, further comprising a front end in
communication with the location store and indexing function, the front end
operative to transport identifiers and associated locations via a transport
protocol.

41.    The database of claim 40, further comprising a buffer in
communication with the front end, the buffer configured to maintain a log of
each of a plurality of location store update transactions.

42.    The database of claim 38, wherein the computer readable
medium comprises at least one of RAM and a persistent storage device.

43.    The database of claim 38, wherein the location store comprises a string store and wherein the plurality of locations comprise network address strings.

44.    The database of claim 43, wherein at least one of the network address strings comprises an address of a database in a network.

45.    A system for managing location information and providing location information to location queries, the system comprising:

a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity, the location server containing location information corresponding to at least one entity and formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and

programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising all locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity.

## ABSTRACT OF THE DISCLOSURE

A system and method for storing and retrieving location information across a network is disclosed. The system and method utilize a transfer protocol configured to transport an identifier/location relationship to allow one or more locations to be associated with an identifier in the location store of a location server, where the identifier represents a unique entity and the location represents a location of data pertaining to the identifier. The location server contains programming logic operative to provide responses to location queries and capable of scaling a plurality of location servers according to system performance and logistical requirements.



FIG. 1

FIG. 2

FIG. 3

FOTO90E "9E7Z/860

FIG. 4



Application
Server Messages

Communication
Network

Client
Messages

34

Protocol

Logging    46

Location
Store
(RAM)    36

Disk    38

12

1098272/860010101

FIG. 5



FIG. 6



FOTO960"9EZZ760T



FIG. 7 - Use Of Request Identifiers



FIG. 8 - NDTP String Format

FIG. 9 - NDTP_GET Format

JA1036

76

| 0 | | | | | | | | | 1 | | | | | | | | | 2 | | | | | | | | | 3 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 |

| NDTP_GET_RSP (3) | Reserved |
|---|---|
| NDTP request identifier | |
| String area length (ROUND4(n0) + 4 + … + ROUND4(nm) + 4) | |
| Location0 length (n0) | |

Location0 data          78

| Location0 byte n-1 | Padding0 |
|---|---|

Location1

. . .

| Locationm byte n-1 | Paddingm |
|---|---|

FIG. 10 - **NDTP_GET_RSP Format**

80

| 0 | | | | | | | | 1 | | | | | | | | | 2 | | | | | | | | | 3 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 |

| NDTP_PUT (4) | Reserved |
|---|---|
| NDTP request identifier | |
| String area length (ROUND4(n) + 4 + ROUND4(m) + 4) | |
| Identifier length (n) | |

Identifier data          82

| Identifier byte n-1 | Identifier padding |
|---|---|
| Location length (m) | |

Location data          84

| Location byte m-1 | Location padding |
|---|---|

FIG 11 - **NDTP_PUT Format**

JA1037



*FIG. 12* **NDTP_PUT_RSP Format**

*FIG. 12* **NDTP_PUT_RSP Format**



*FIG. 13* **NDTP_DEL Format**



*FIG. 14* **NDTP_DEL_RSP Format**

JA1038

0 1 2 3 4 5 6 7 8 9 0 1 2 3 4 5 6 7 8 9 0 1 2 3 4 5 6 7 8 9 0 1

| NDTP_UPD (9) | Reserved |
|---|---|

NDTP request identifier

String area length (ROUND4(o) + 4 ROUND4(n) + 4 + ROUND4(m) + 4)

Identifier length (m)

Identifier data  96

| Identifier byte m-1 | Identifier padding |
|---|---|

Location length (n)

Location data  97

| Location byte n-1 | Location padding |
|---|---|

Identifer length(o)

Location data  98

| Location byte o-1 | Location padding |
|---|---|

FIG. 15 - NDTP_UPD Format


0          1          2          3

0 1 2 3 4 5 6 7 8 9 0 1 2 3 4 5 6 7 8 9 0 1 2 3 4 5 6 7 8 9 0 1

| NDTP_UPD_RSP (10) | Reserved |
|---|---|

NDTP request identifier

String area length (0)

FIG. 16 - NDTP_UPD_RSP Format

EP 0982 732 A2

FIG. 17(a)

| 0 | | 1 | | 2 | | 3 | |
|---|---|---|---|---|---|---|---|
| 0 1 2 3 4 5 6 7 | 8 9 0 1 2 3 4 5 | 6 7 8 9 0 1 2 3 | 4 5 6 7 8 9 0 1 | | | | |

| NDTP_RDR_RSP (8) | Reserved |
|---|---|
| NDTP request identifier | |
| Hash list length (ROUND4(n0) + 4 + ... + ROUND4(nm) + 4) | |
| Replication set list 0 length (ROUND4(n0) + 4 + ... + ROUND4(nm) + 4) | |
| NDTP Server URL0 length (n0) | |

NDTP Server URL0 data

| URL0 byte n0-1 | Padding0 |
|---|---|

NDTP Server URL1

. . .

| URLm byte nm-1 | Padding |
|---|---|
| Replication set list 1 length (ROUND4(n0) + 4 + ... + ROUND4(nm) + 4) | |

Replication set list 1 data

. . .

| Replication set list m byte nm-1 | Padding |
|---|---|

101

FIG. 17(b)

103

| 0 | | 1 | | 2 | | 3 | |
|---|---|---|---|---|---|---|---|
| 0 1 2 3 4 5 6 | 8 9 0 1 2 3 4 5 6 | 7 8 9 0 1 2 3 4 | 5 6 7 8 9 0 1 | | | | |

| NDTP_RDR_RSP (8) | Reserved |
|---|---|
| NDTP request identifier | |
| String area length (ROUND4(n) + 4) | |
| Serialized NDTPRedirectFunction length (n) | |

Serialized NDTPRedirectFunction data

| Function byte n-1 | Padding |
|---|---|

JA1040



FIG. 18



FIG. 19

JA1041



FIG. 20

F01090"96L2L80D

TOT090" 9E222860

FIG·21

Network Distributed Tracking
**Distributed Record Retrieval**





101601090 . 0982278660

FIG. 22

JA1044



FIG. 23

JA1045

FIG. 24



TOTOGO:9E7d869O

JA1046

FIG. 25



*194* *190* *192* *193*

FIG. 26



*198* *196* *202* *204* *200*

| Identifier | Location |
|------------|----------|
| Alice | PDA: 1, Cell: 1, Computer: 0 |
| Bill | Cell: 0, PDA: 1 |
| . | . |
| . | . |
| . | . |

JA1047

Best Available Copy

## PATENT APPLICATION FEE DETERMINATION RECORD
### Effective October 1, 2000

Application or Docket Number

10406149

### CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 45 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 45 minus 20= | * 25 |
| INDEPENDENT CLAIMS | 6 minus 3 = | * 3 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

* If the difference in column 1 is less than zero, enter "0" in column 2

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | | RATE | FEE |
| BASIC FEE | 355.00 | OR | BASIC FEE | 710.00 |
| X$9= | | OR | X$18= | 450 |
| X40= | | OR | X80= | 240 |
| +135= | | OR | +270= | |
| TOTAL | | OR | TOTAL | 1400 |

### CLAIMS AS AMENDED - PART II

#### AMENDMENT A

| (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| X$9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

#### AMENDMENT B

| (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

#### AMENDMENT C

| (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
*U.S. GPO: 2000-460-706/30103

JA1048



# CLAIMS ONLY

| | | |
|---|---|---|
| SERIAL NO. 09872736 | FILING DATE 06-01-01 | |
| APPLICANT(S) | | |

## CLAIMS

| | AS FILED | | AFTER 1st AMENDMENT | | AFTER 2nd AMENDMENT | | | * | | * | | * | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | IND. | DEP. | IND. | DEP. | IND. | DEP. | | IND. | DEP. | IND. | DEP. | IND. | DEP. |
| 1 | / | | | | | | 51 | | | | | | |
| 2 | | / | | | | | 52 | | | | | | |
| 3 | | / | | | | | 53 | | | | | | |
| 4 | | / | | | | | 54 | | | | | | |
| 5 | | / | | | | | 55 | | | | | | |
| 6 | | / | | | | | 56 | | | | | | |
| 7 | | / | | | | | 57 | | | | | | |
| 8 | | / | | | | | 58 | | | | | | |
| 9 | | / | | | | | 59 | | | | | | |
| 10 | | / | | | | | 60 | | | | | | |
| 11 | | / | | | | | 61 | | | | | | |
| 12 | | / | | | | | 62 | | | | | | |
| 13 | | / | | | | | 63 | | | | | | |
| 14 | | / | | | | | 64 | | | | | | |
| 15 | | / | | | | | 65 | | | | | | |
| 16 | | / | | | | | 66 | | | | | | |
| 17 | / | | | | | | 67 | | | | | | |
| 18 | | / | | | | | 68 | | | | | | |
| 19 | | / | | | | | 69 | | | | | | |
| 20 | | / | | | | | 70 | | | | | | |
| 21 | / | | | | | | 71 | | | | | | |
| 22 | | / | | | | | 72 | | | | | | |
| 23 | | / | | | | | 73 | | | | | | |
| 24 | / | | | | | | 74 | | | | | | |
| 25 | | / | | | | | 75 | | | | | | |
| 26 | | / | | | | | 76 | | | | | | |
| 27 | | / | | | | | 77 | | | | | | |
| 28 | | / | | | | | 78 | | | | | | |
| 29 | | / | | | | | 79 | | | | | | |
| 30 | | / | | | | | 80 | | | | | | |
| 31 | | / | | | | | 81 | | | | | | |
| 32 | | / | | | | | 82 | | | | | | |
| 33 | | / | | | | | 83 | | | | | | |
| 34 | | / | | | | | 84 | | | | | | |
| 35 | | / | | | | | 85 | | | | | | |
| 36 | | / | | | | | 86 | | | | | | |
| 37 | | / | | | | | 87 | | | | | | |
| 38 | / | | | | | | 88 | | | | | | |
| 39 | | / | | | | | 89 | | | | | | |
| 40 | | / | | | | | 90 | | | | | | |
| 41 | | / | | | | | 91 | | | | | | |
| 42 | | / | | | | | 92 | | | | | | |
| 43 | | / | | | | | 93 | | | | | | |
| 44 | | / | | | | | 94 | | | | | | |
| 45 | / | | | | | | 95 | | | | | | |
| 46 | | | | | | | 96 | | | | | | |
| 47 | | | | | | | 97 | | | | | | |
| 48 | | | | | | | 98 | | | | | | |
| 49 | | | | | | | 99 | | | | | | |
| 50 | | | | | | | 100 | | | | | | |
| TOTAL IND. | 6 | | | | | | TOTAL IND. | | | | | | |
| TOTAL DEP. | 39 | | | | | | TOTAL DEP. | | | | | | |
| TOTAL CLAIMS | 45 | | | | | | TOTAL CLAIMS | | | | | | |

*MAY BE USED FOR ADDITIONAL CLAIMS OR ADMENDMENTS

U.S.DEPARTMENT OF COMMERCE
Patent and Trademark Office

Best Available Copy
Best Available Copy

JA1049

 

 UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, D.C. 20231
www.uspto.gov

| APPLICATION NUMBER | FILING/RECEIPT DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NUMBER |
|---|---|---|---|
| 09/872,736 | 06/01/2001 | John K. Overton | 10406/49 |

**CONFIRMATION NO. 3927**

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

**FORMALITIES LETTER**

*OC000000006386806*

Date Mailed: 08/06/2001

## NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(b)

#### *Filing Date Granted*

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is missing.
  *Applicant must submit $ 710 to complete the basic filing fee and/or file a small entity statement claiming such status (37 CFR 1.27).*
- Total additional claim fee(s) for this application is $690.
    - $450 for **25** total claims over 20.
    - $240 for **3** independent claims over 3 .
- The oath or declaration is missing.
  *A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date, is required.*
- To avoid abandonment, a late filing fee or oath or declaration surcharge as set forth in 37 CFR 1.16(e) of $130 for a non-small entity, must be submitted with the missing items identified in this letter.
- **The balance due by applicant is $ 1530.**

---

*A copy of this notice __MUST__ be returned with the reply.*

H·T

Customer Service Center
Initial Patent Examination Division (703) 308-1202

PART 3 - OFFICE COPY

 

_


#41A
10-26-01
M.L.

_

I hereby certify that this correspondence is being deposited with the United States Postal Service, with sufficient postage, as first class mail in an envelope addressed to:

Commissioner for Patents
Washington, D.C. 20231
on September 10, 2001

Date of Deposit

Kent E. Genin

Name of applicant, assignee or
Registered Representative

Signature

9/10/2001

Date of Signature

<u>Our Case No.10406/49</u>

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:               )
                                    )
J. Overton et al.                   )
                                    )
Serial No. 09/872,736               )     Group Art Unit No. 2152
                                    )
Filing Date: June 1, 2001           )
                                    )
For    METHOD AND APPARATUS FOR      )
       MANAGING LOCATION             )
       INFORMATION IN A NETWORK      )

## PRELIMINARY AMENDMENT

Commissioner for Patents
Washington, D.C. 20231

Dear Sir:

        Please enter the following amendment prior to examination of the above-identified U.S. patent application.

## IN THE SPECIFICATION

        On page 1, please amend the paragraph beginning on line 4 to read as follows:

JA1051



This application claims the benefit of provisional patent application serial no. 60/209,070 filed June 2, 2000 and provisional application serial no. 60/277,408 filed March 19, 2001; and this application is a continuation-in-part of each of the following non-provisional U.S. patent applications: application serial no. 09/661,222 entitled NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL, filed on September 13, 2000; application serial no. 09/503,441 entitled AUTOMATED SYSTEM FOR IMAGE ARCHIVING, filed February 14, 2000; application serial no. 09/367,461 entitled AUTOMATED SYSTEM FOR IMAGING ARCHIVING, filed August 13, 1999; and application serial no. 09/111,896 entitled SYSTEM AND METHOD FOR ESTABLISHING AND RETRIEVING DATA BASED ON GLOBAL INDICES, filed on July 8, 1998, wherein the entirety of each of these provisional and non-provisional applications is incorporated herein by reference.

## REMARKS

Applicants have amended the Specification to restate its original claim of priority in a single, continuous sentence. Applicants respectfully request that the Examiner verify that the priority claim properly includes the cited two provisional applications and four non-provisional applications originally identified. No new matter has been added with this amendment. Applicants note that both the original six priority claims, and the enclosed amendments to those priority claims are timely submitted pursuant to 37 C.F.R. §1.78. Pursuant to 37 C.F.R. §1.121, a marked-up copy of the amended portion of the specification is attached at Appendix A. Entry of the above amendment is respectfully requested.

Respectfully submitted,

Kent E. Genin
Registration No. 37,834
Attorney for Applicant

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, ILLINOIS 60610
(312) 321-4200

2

JA1052



## APPENDIX A

This application claims the benefit of provisional patent application serial no. 60/209,070 filed June 2, 2000 and provisional application serial no. 60/277,408 filed March 19, 2001 [, the entirety of each of these applications is incorporated herein by reference. This]; and this application is a continuation-in-part of each of [also claims priority to] the following non-provisional U.S. patent applications: application serial no. 09/661,222 entitled NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL, filed on September 13, 2000; application serial no. 09/503,441 entitled AUTOMATED SYSTEM FOR IMAGE ARCHIVING, filed February 14, 2000; application serial no. 09/367,461 entitled AUTOMATED SYSTEM FOR IMAGING ARCHIVING, filed August 13, 1999; and application serial no. 09/111,896 entitled SYSTEM AND METHOD FOR ESTABLISHING AND RETRIEVING DATA BASED ON GLOBAL INDICES, filed on July 8, 1998, wherein the[. The] entirety of each of these provisional and non-provisional applications is [also] incorporated herein by reference.

3



UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, D.C. 20231
www.uspto.gov

| APPLICATION NUMBER | FILING/RECEIPT DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NUMBER |
|---|---|---|---|
| 09/872,736 | 06/01/2001 | John K. Overton | 10406/49 |



BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

RECEIVED
AUG 09 2001
RECEIVED
U. S. DOCKET

**CONFIRMATION NO. 3927**
**FORMALITIES LETTER**

*OC000000006386806*

Date Mailed: 08/06/2001

## NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(b)

#### *Filing Date Granted*

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is missing.
  *Applicant must submit $ 710 to complete the basic filing fee and/or file a small entity statement claiming such status (37 CFR 1.27).*
- Total additional claim fee(s) for this application is $690.
  - $450 for 25 total claims over 20.
  - $240 for 3 independent claims over 3 .
- The oath or declaration is missing.
  *A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date, is required.*
- To avoid abandonment, a late filing fee or oath or declaration surcharge as set forth in 37 CFR 1.16(e) of $130 for a non-small entity, must be submitted with the missing items identified in this letter.
- **The balance due by applicant is $ 1530.**

---

*A copy of this notice __MUST__ be returned with the reply.*

H. T
Customer Service Center
Initial Patent Examination Division (703) 308-1202
                    PART 2 - COPY TO BE RETURNED WITH RESPONSE

09/17/2001 EEKUBAY1 00000115 09872736

```
01 FC:201        355.00 OP
02 FC:203        225.00 OP
03 FC:202        120.00 OP
04 FC:205         65.00 OP
```

JA1054



I hereby certify that this correspondence is being deposited with the United States Postal Service, with sufficient postage, as first class mail in an envelope addressed to:
Commissioner for Patents
Washington, D.C. 20231
on September 10, 2001

_____
Date of Deposit

Kent E. Genin
_____
Name of applicant, assignee or
Registered Representative

_____
Signature

9/10/2001
_____
Date of Signature

Case No. <u>10406/49</u>

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

J. Overton et al.

Serial No.:   09/872,736

Filed:        June 1, 2001

For:          METHOD AND
             APPARATUS FOR
             MANAGING LOCATION
             INFORMATION IN A
             NETWORK

Attention: Manager,
Application Branch

## RESPONSE TO NOTICE TO FILE MISSING PARTS OF APPLICATION
## FILING DATE GRANTED

Commissioner for Patents
Washington, D.C. 20231

Attn.: Box Missing Parts

Dear Sir:

In accordance with the Notice to File Missing Parts of Application Filing Date Granted dated <u>August 6, 2001</u>, a copy of which is attached, enclosed herewith for filing are the following documents:

**JA1055**

☒ Fully executed Declaration for Patent Application and Power of Attorney for the above-referenced patent application.

☒ Applicant is:

    ☒ a small entity

    ☐ other than small entity

☒ Checks totaling $765 for:

    ☒ Filing Fee of $355.

    ☒ Surcharge of $65.

    ☒ Additional Claim Fees of $345.

☐ Petition for Extension of Time (37 C.F.R. § 1.136(a)) to file missing parts (in duplicate).

☒ Other: Preliminary Amendment; Assignment Recordation Cover Sheet; Assignment; Information Disclosure Statement; PTO Form 1449; One Copy of References A68, and A79-A82; Submission of Formal Drawings; 17 Sheets of Formal Drawings.

☒ The Commissioner is hereby authorized to charge any deficiencies in fees or credit overpayment to Deposit Account No. 23-1925. A duplicate copy of this paper is enclosed.

Respectfully submitted,

Dated: _September 10, 2001_ _[signature]_

Kent E. Genin
Registration No. 37,834
Attorney for Applicant(s)

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610
(312)321-4200

rev. Dec.-99
F:\cOMMON\kEG\overX 10406\10406-49\10406-49 Missing Parts.doc

- 2 -

JA1056

| TRANSMITTAL LETTER | | | Case No. 10406/49 |
|---|---|---|---|
| Serial No. 09/872,736 | Filing Date June 1, 2001 | Examiner | Group Art Unit 2152 |
| Inventor(s) J. Overton et al. | | | |
| Title of Invention Method And Apparatus For Managing Location Information In A Network | | | |

## TO THE COMMISSIONER FOR PATENTS

Transmitted herewith is Checks for $765.00 (Missing Parts Filing Fee, Surcharge, Extra Claims), and $40.00; Assignment Recordation Fee); Transmittal Letter (in duplicate); Response to Notice to File Missing Parts (in duplicate); Copy of Notice to File Missing Parts; Declaration; Preliminary Amendment; Assignment Recordation Cover Sheet; Assignment; Information Disclosure Statement; PTO Form 1449; One Copy of References A68 and A79-A82; Submission of Formal Drawings; 17 Sheets of Formal Drawings.

☐ Small entity status of this application under 37 CFR § 1.27 has been established by verified statement previously submitted.

☐ A verified statement to establish small entity status under 37 CFR §§ 1.9 and 1.27 is enclosed.

☐ Petition for a _____ month extension of time.

☒ Small Entity status is claimed.

☐ The fee has been calculated as shown below:

|  | Claims Remaining After Amendment | Highest No. Previously Paid For | Present Extra | Small Entity Rate | Add'l Fee | or | Other Than Small Entity Rate | Add'l Fee |
|---|---|---|---|---|---|---|---|---|
| Total |  | Minus |  | x $9= |  |  | x $18= |  |
| Indep. |  | Minus |  | x 40= |  |  | x $80= |  |
| First Presentation of Multiple Dep. Claim | | | | +$135= | | | + $270= | |
|  | | | | Total add'l fee | $ | | Total add'l fee | $ |

☐ Please charge Deposit Account No. 23-1925 (BRINKS HOFER GILSON & LIONE) in the amount of $_____. A duplicate copy of this sheet is enclosed.

☐ A check in the amount of $_____ to cover the filing fee is enclosed.

☒ The Commissioner is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this communication or credit any overpayment to Deposit Account No. 23-1925. A duplicate copy of this sheet is enclosed.

☒ I hereby petition under 37 CFR § 1.136(a) for any extension of time required to ensure that this paper is timely filed. Please charge any associated fees which have not otherwise been paid to Deposit Account No. 23-1925. A duplicate copy of this sheet is enclosed.

Respectfully submitted,

Kent E. Genin
Registration No. 37,834
Attorney for Applicant

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, ILLINOIS 60610
(312) 321-4200

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail, with sufficient postage, in an envelope addressed to: Commissioner for Patents, Washington, D.C. 20231 on September 10, 2001.

Date: 9/10/2001     Signature: _____

rev. Dec.-00
F:\COMMON\KEG\OverX 10406\10406-49\10406-49 Transmittal - Missing Parts.doc

JA1057

 

Case No. 10406/49

## DECLARATION FOR PATENT APPLICATION

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled Method And Apparatus For Managing Location Information In A Network, the specification of which:

☐      is attached hereto.

☒      was filed on June 1, 2001 as Application Serial No. 09/872,736.

☐      and was amended on _____ (if applicable).

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the patentability as defined in Title 37, Code of Federal Regulations, § 1.56(a).

I hereby claim foreign priority benefits under 35 U.S.C. § 119(a)-(d) or § 365(b) of any foreign application(s) for patent or inventor's certificate or § 365(a) of any PCT International application which designated at least one country other than the United States, listed below and have also identified below, by checking the box, any foreign application for patent or inventor's certificate, or PCT International application having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s)                                               Priority Claimed

|  |  |  | ☐ | ☐ |
|---|---|---|---|---|
| (Number) | (Country) | (Day/Month/Year Filed) | Yes | No |

I hereby claim the benefit under 35 U.S.C. § 119(e) of any United States provisional application(s) listed below:

| 60/209,070 | June 2, 2000 |
|---|---|
| (Application Serial No.) | (Filing Date) |
| 60/277,408 | March 19, 2001 |
| (Application Serial No.) | (Filing Date) |

I hereby claim the benefit under 35 U.S.C. § 120 of any United States application(s), or § 365(c) of any PCT International application designating the United States, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT International application in the manner provided by the first paragraph of 35 U.S.C. § 112, I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR § 1.56 which became available between the filing date of the prior application and the national or PCT International filing date of this application:

| 09/661,222 | September 13, 2000 | Pending |
|---|---|---|
| (Application Serial No.) | (Filing Date) | (Status-patented, pending, abandoned) |
| 09/503,441 | February 14, 2000 | Pending |
| (Application Serial No.) | (Filing Date) | (Status-patented, pending, abandoned) |
| 09/367,461 | August 13, 1999 | Pending |
| (Application Serial No.) | (Filing Date) | (Status-patented, pending, abandoned) |
| 09/111,896 | July 8, 1998 | Pending |
| (Application Serial No.) | (Filing Date) | (Status-patented, pending, abandoned) |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

- 1 -

JA1058

| | | |
|---|---|---|
| Inventor's Signature | _John D. A._ | Date: __7·19·01__ |
| Full name of sole or first inventor | John K. Overton | |
| Residence | 5825 S. Blackstone, Chicago, Illinois 60637 | |
| Citizenship | US | |
| Post Office Address | 5825 S. Blackstone, Chicago, Illinois 60637 | |

| | | |
|---|---|---|
| Inventor's Signature | | Date: |
| Full name of second joint inventor, if any | Stephen W. Bailey | |
| Residence | 18 Alderbrook Road, Andover, MA 01810 | |
| Citizenship | US | |
| Post Office Address | 18 Alderbrook Road, Andover, MA 01810 | |

BRINKS HOFER GILSON & LIONE
P.O. Box 10395
Chicago, IL 60610
(312) 321-4200

JA1059

| | | |
|---|---|---|
| Inventor's Signature | | Date: _____ |
| Full name of sole or first inventor | John K. Overton | |
| Residence | 5825 S. Blackstone, Chicago, Illinois 60637 | |
| Citizenship | US | |
| Post Office Address | 5825 S. Blackstone, Chicago, Illinois 60637 | |

| | | |
|---|---|---|
| Inventor's Signature | *[signature]* | Date: 19 - JUL - 2001 |
| Full name of second joint inventor, if any | Stephen W. Bailey | |
| Residence | 18 Alderbrook Road, Andover, MA 01810 | |
| Citizenship | US | |
| Post Office Address | 18 Alderbrook Road, Andover, MA 01810 | |

BRINKS HOFER GILSON & LIONE
P.O. Box 10395
Chicago, IL 60610
(312) 321-4200

JA1060

*Mu*

*04CO;*
*9-19-01*

Inventor(s): John K. Overton, Stephen W. Bailey

Title: Method And Apparatus For Managing Location Information In A Network

*(OIPE JC... SEP 14 2001 ... PATENT & TRADEMARK OFFICE)*

# POWER OF ATTORNEY

The specification of the above-identified patent application:

☐ is attached hereto.

☒ was filed on June 1, 2001 as application Serial No. 09/872,736

I hereby revoke all previously granted powers of attorney in the above-identified patent application and appoint the following attorneys to prosecute said patent application and to transact all business in the Patent and Trademark Office connected therewith:

William A. Webb - 28,277
Joseph F. Hetz - 41,070
Kent E. Genin - 37,834

Please address all correspondence and telephone calls to Kent E. Genin in care of:

Brinks Hofer Gilson & Lione
P.O. Box 10395
Chicago, IL 60610
(312)321-4200

The undersigned hereby authorizes the U.S. attorneys named herein to accept and follow instructions from John K. Overton as to any action to be taken in the Patent and Trademark Office regarding this application without direct communication between the U.S. attorney and the undersigned. In the event of a change in the persons from whom instructions may be taken, the U.S. attorneys named herein will be so notified by the undersigned.

OverX, Inc., a corporation, certifies that it is the assignee of the entire right, title and interest in the patent application identified above by virtue of either:

☒ An assignment from the inventor(s) of the patent application identified above, a copy of which is attached hereto.
OR

☐ An assignment from the inventor(s) of the patent application identified above. The assignment was recorded in the Patent and Trademark Office at Reel _____, frame _____.
OR

☐ A chain of title from the inventor(s), of the patent application identified above, to the current assignee as shown below:

    1.    From _____ To: _____
        The document was recorded in the Patent and Trademark Office at
        Reel _____, frame _____, or a copy thereof is attached.

    2.    From _____ To: _____
        The document was recorded in the Patent and Trademark Office at
        Reel _____, frame _____, or a copy thereof is attached.

        ☐    Additional documents in the chain of title are listed on a supplemental sheet.

The undersigned has reviewed the assignment or all the documents in the chain of title of the patent application identified above and, to the best of undersigned's knowledge and belief, title is in the assignee identified above.

The undersigned (whose title is supplied below) is empowered to act on behalf of the assignee.

I hereby declare that all statements made herein of my own knowledge are true, and that all statements made on information and belief are believed to be true; and further, that these statements are made with the knowledge that willful false statements, and the like so made, are punishable by fine or imprisonment, or both, under Section 1001, Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

Signature _____ Date: 2001 - 09 - 05

Name: John K. Overton

Title: Chief Technology Officer

Rev. Dec.-99
F:\COMMON\KEG\OverX 10406\10406-49\10406-49 Power of Attorney.doc

**JA1061**

I hereby certify that this correspondence is being deposited with the United States Postal Service, with sufficient postage, as first class mail in an envelope addressed to:

Commissioner for Patents
Washington, D.C. 20231
on September 10, 2001
_____
Date of Deposit

Kent E. Genin
_____
Name of applicant, assignee or
Registered Representative

_____
Signature

9/10/2001
_____
Date of Signature

Our Case No. 10406/49

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: | ) |
| | ) |
| J. Overton et al. | ) |
| | ) |
| Serial No. 09/872,736 | ) Group Art Unit No. 2152 |
| | ) |
| Filing Date: June 1, 2001 | ) |
| | ) |
| For    METHOD AND APPARATUS FOR | ) |
|           MANAGING LOCATION | ) |
|           INFORMATION IN A NETWORK | ) |

## SUBMISSION OF FORMAL DRAWINGS

Commissioner for Patents
Washington, D.C. 20231

Dear Sir:

    Please substitute the enclosed 17 sheets of formal drawings for the previously submitted drawings.

Respectfully submitted,


_____
Kent E. Genin, Reg. No. 37,834
Attorney for Applicants

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, ILLINOIS 60610
(312) 321-4200



# FIG. 1



JA1063



# FIG. 2



CLIENT-SERVER
INTERACTION

LOCATION
INTERACTION

NDTP — 18

APPLICATION
SERVER

16

# FIG. 3



CLIENT-SERVER
INTERACTION

LOCATION
INTERACTION

NDTP — 20

22

24

APPLICATION
SERVER

26

PERSISTENT
STORAGE



# FIG. 4



APPLICATION
SERVER
MESSAGES

COMMUNICATION
NETWORK

CLIENT
MESSAGES

PROTOCOL — 34

LOGGING — 46

DISK — 38

LOCATION
STORE
(RAM) — 36

12

# FIG. 5



SERVER 1 — 12

50

SERVER 0 — 12

SERVER 2
12

SERVER 4 — 12

SERVER 3
12

JA1065



FIG. 6

# FIG. 7

USE OF REQUEST IDENTIFIERS



CLIENT 14

SERVER 12

60 REQ, ID = 1000 64

60 REQ, ID = 2000 64

RSP, ID = 2000 62

RSP, ID = 1000 62

# FIG. 8

NDTP STRING FORMAT



| 0 | | | | | | | | | | 1 | | | | | | | | | | 2 | | | | | | | | | | 3 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 |

LENGTH (n)

DATA 66

BYTE n-1 | PADDING

68

70

Method And Apparatus For Managing Location Information in A Network
J. Overton et al.
Serial No.: 09/872,736

JA1067

## FIG. 9

NDTP_GET FORMAT



## FIG. 10

NDTP_GET_RSP FORMAT



Method And Apparatus For Managing Location Information In A Network
J. Overton et al.
Serial No.: 09/872,736

# FIG. 11

NDTP_PUT FORMAT



| | | |
|---|---|---|
| NDTP_PUT (4) | RESERVED | |
| NDTP REQUEST IDENTIFIER | | |
| STRING AREA LENGTH (ROUND4(n) + 4 + ROUND4(m) + 4) | | |
| IDENTIFIER LENGTH (n) | | |
| IDENTIFIER DATA    82 | | |
| LOCATION BYTE n-1 | IDENTIFIER PADDING | |
| LOCATION LENGTH (m) | | |
| LOCATION DATA    84 | | |
| LOCATION BYTE m-1 | LOCATION PADDING | |

# FIG. 12

NDTP_PUT_RSP FORMAT

| | |
|---|---|
| NDTP_PUT_RSP (5) | RESERVED |
| NDTP REQUEST IDENTIFIER | |
| STRING AREA LENGTH (0) | |

Method And Apparatus For Managing Location Information In A New
J. Overton et al.
Serial No. 09/872,736

# FIG. 13



NDTP_DEL FORMAT

| 0 | | | | | | | | 1 | | | | | | | | | 2 | | | | | | | | | 3 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| 0 1 2 3 4 5 6 7 | 8 9 0 1 2 3 4 5 6 7 8 9 0 1 |
|---|---|
| NDTP_DEL (6) | RESERVED |
| NDTP REQUEST IDENTIFIER | |
| STRING AREA LENGTH (ROUND4(n) + 4 + ROUND4(m) + 4) | |
| IDENTIFIER LENGTH (n) | |
| IDENTIFIER DATA $\underline{90}$ | |
| LOCATION BYTE n-1 | IDENTIFIER PADDING |
| LOCATION LENGTH (m) | |
| LOCATION DATA $\underline{92}$ | |
| LOCATION BYTE m-1 | LOCATION PADDING |

88

# FIG. 14

NDTP_DEL_RSP FORMAT

| 0 1 2 3 4 5 6 7 | 8 9 0 1 2 3 4 5 6 7 8 9 0 1 |
|---|---|
| NDTP_DEL_RSP (7) | RESERVED |
| NDTP REQUEST IDENTIFIER | |
| STRING AREA LENGTH (0) | |

94

Method And Apparatus For Managing Location Information In A New
J. Overton et al.
Serial No.: 09/872,736



# FIG. 15

NDTP_UPD FORMAT

| 0 | | | | | | | | 1 | | | | | | | | | | 2 | | | | | | | | | | 3 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 |

| NDTP_UPD (9) | RESERVED |
|---|---|
| NDTP REQUEST IDENTIFIER | |
| STRING AREA LENGTH (ROUND4(o) + 4 ROUND4(n) + 4 + ROUND4(m) + 4) | |
| IDENTIFIER LENGTH (m) | |
| IDENTIFIER DATA    96 | |
| LOCATION BYTE m-1 | IDENTIFIER PADDING |
| LOCATION LENGTH (n) | |
| LOCATION DATA    97 | |
| LOCATION BYTE n-1 | LOCATION PADDING |
| IDENTIFIER LENGTH (o) | |
| LOCATION DATA    98 | |
| LOCATION BYTE o-1 | LOCATION PADDING |

95

93

Method And Apparatus For Managing Location Information In A Network
J. Overton et al.
Serial No. 09/872,736

# FIG. 16

NDTP_UPD_RSP FORMAT



Method A

paratus For Managing Location Information in A New
J. Overton et al.
Serial No. 09/872,736

# FIG. 17A

Method And Apparatus For Managing Location Information In A New
J. Overton et al.
Serial No.: 09/872,736

| 0 | | | | | | | | 1 | | | | | | | | 2 | | | | | | | | 3 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 | 1 |

| NDTP_RDR_RSP (8) | RESERVED |
|---|---|
| NDTP REQUEST IDENTIFIER | |
| HASH LIST LENGTH (ROUND4(n0) + 4 + ... + ROUND4(nm) + 4) | |
| REPLICATION SET LIST 0 LENGTH (ROUND4(n0) + 4 + ... + ROUND4(nm) + 4) | |
| NDTP SERVER URL0 LENGTH (n0) | |
| NDTP SERVER URL0 DATA | |
| URL0 BYTE nm-1 | PADDING 0 |
| NDTP SERVER URL1 ... | |
| URLm BYTE nm-1 | PADDING |
| REPLICATION SET LIST 1 LENGTH (ROUND4(n0) + 4 + ... + ROUND4(nm) + 4) | |
| | |
| REPLICATION SET LIST 1 DATA ... | |
| REPLICATION SET LIST m BYTE nm-1 | PADDING |

101

# FIG. 17B

Method and Apparatus For Managing Location Information In A Network
J. Overton et al.
Serial No.: 09/872,736

103

| | | |
|---|---|---|
| 0 | 1 | 2 | 3 |

```
0  0 1 2 3 4 5 6 7  8 9 0 1 2 3 4 5  6 7 8 9 0 1 2 3  4 5 6 7 8 9 0 1
```

| NDTP_RDR_RSP (8) | RESERVED |
|---|---|
| NDTP REQUEST IDENTIFIER | |
| STRING AREA LENGTH (ROUND4(n) + 4) | |
| SERIALIZED NDTPRedirectFunction LENGTH (n) | |
| SERIALIZED NDTPRedirectFunction DATA | |
| FUNCTION BYTE n-1 | PADDING |

JA1074



FIG. 18

110

NDTP SERVER
CONSTELLATION

112

NDTP

CLIENT 1

NDTP

DATA ITEM
TRANSFER

114

NETWORK

FIG. 19

NDTP SERVER
CONSTELLATION

110

120a

NDTP
SERVER 0

120b

NDTP
SERVER 1

1
NDTP
REQUEST

3
NDTP
REQUEST

FIG. 20

122a

2
NDTP
REDIRECTION

122b

4
NDTP
RESPONSE

NDTP SERVER
CONSTELLATION

110

2
132b

NDTP
REQUEST

130a

NDTP
SERVER 0

130b

NDTP
SERVER 1

1
NDTP
REQUEST

3
NDTP
RESPONSE

134a

132a

4
NDTP
RESPONSE

134b

JA1075

# FIG. 21

NETWORK DISTRIBUTED TRACKING
## DISTRIBUTED RECORD RETRIEVAL



Method
Apparatus For Managing Location Information In A Netw
J. Overton et al.
Serial No. 09/872,736



FIG. 22

SERVER 1
SET A — 142
SET B — 144
SET C — 146
SERVER DATA

SERVER 2
SET B' — 148
SET C' — 150
SERVER DATA

140

12

12

FIG. 23

PARIS
APP. SERVER — 156
CLIENT — 152
NDTP CLUSTER — 154
158

SYDNEY
NDTP CLUSTER — 154
APP. SERVER — 156
CLIENT — 152

CHICAGO
CLIENT — 152
NDTP CLUSTER — 154
APP. SERVER — 156
160

# FIG. 24



Method and Apparatus For Managing Location Information In A Network
J. Overton et al.
Serial No. 09/872,736

NDTP_PUT

SHIPPING COMPANY

DISPATCHER

NDTP QUERIES

NDTP RESPONCES

| ID | LOCATION |
|----|----------|
| 1 | LAT / LON1, LAT / LON2, LAT / LON . . . . |
| 2 | LAT / LON3, LAT / LON4 |
| 3 | LAT / LON5, LAT / LON6 |
| 4 | LAT / LON7, LAT / LON8 |
| 5 | LAT / LON9, LAT / LON10 |
| 6 | LAT / LON11, LAT / LON12 |

JA1078

# FIG. 25



# FIG. 26



2       A system for universal image tracking comprising:

       An image forming apparatus;

4       A CPU integral to the image forming apparatus;

5       User input means connected to the CPU for receiving user

6       input;

7       Logic stored in the CPU for receiving user input and

8       creating archive data based upon the user input; and

9       A Graphic code producer responsive to the CPU for

10      producing graphic codes representative of the archive

11      data.

12  2.  The system for universal image tracking of claim 1 wherein

13      the image forming apparatus is a film based camera.

14  3.  The system for universal image tracking of claim 1 wherein

15      the image forming apparatus is a digital based camera.

16  4.  The system for universal image tracking of claim 1 wherein

17      the image forming apparatus is a video camera.

18  5.  The system for universal image tracking of claim 1 wherein

19      the image forming apparatus is a digital image processor.

20  6.  The system for universal image tracking of claim 1 wherein

21      the image forming apparatus is a medical image sensor.

22  7.  The system for universal image tracking of claim 6 wherein

23      the medical image sensor is a magnetic resonance imager.

84

2          the medical image sensor is an X-ray imager.

3    9.    The system for universal image tracking of claim 6 wherein

4          the medical image sensor is a CAT scan imager.

5    10.    The system for universal image tracking of claim 1 wherein

6          the user input means is a push button input.

7    11.    The system for universal image tracking of claim 1 wherein

8          the user input means is a keyboard.

9    12.    The system for universal image tracking of claim 1 wherein

10          the user input means is voice recognition equipment.

11    13.    The system for universal image tracking of claim 1 wherein

12          the graphic codes are one-dimensional.

13    14.    The system for universal image tracking of claim 1 wherein

14          the graphic codes are two-dimensional.

15    15.    The system for universal image tracking of claim 1 wherein

16          the graphic codes are three-dimensional.

17    16.    The system for universal image tracking of claim 1 wherein

18          the logic comprises configuration input processing for

19          determining bounds for the archive data generation based

20          on configuration input;

21          a resolver for determining the correct value of archive

22          data representing the image forming apparatus and the

23          configuration input; and

85

17. The system for universal image tracking of claim 16
    wherein the timer further comprises a filter for
    processing the time stamp according to configuration input
    rules.

18. The system for universal image tracking of claim 16
    wherein the configuration input comprises at least
    generation, sequence, data, unit, and constants
    information.

19. The system for universal image tracking of claim 1 further
    comprising a graphic code reader connected to the CPU for
    reading a graphic code on an image representing archive
    information; and
    A decoder for decoding the archive information represented
    by the graphic code.

20. The system for universal image tracking of claim 19
    wherein the logic further comprises:
    logic for receiving a second user input and creating
    lineage archive information relating to the image based
    upon the archive information and the second user input;
    and
    logic for producing graphic code representative of the
    lineage archive data.

86

2        the archive data comprises location attributes of an

3        image.

4   22.  The system for universal image tracking of claim 1 wherein

5        the archive data comprises physical attribute of an image.

6   23.  The system for universal image tracking of claim 1 wherein

7        each image in an image archive has unique archive data

8        associated with each image.

9   24.  The system for universal image tracking of claim 21

10       wherein the location data comprises at least:

11       image generation depth;

12       serial sequence of lot within an archive;

13       serial sequence of unit within a lot;

14       date location of a lot within an archive;

15       date location of an image within an archive;

16       author of the image; and

17       device producing the image.

18   25.  The system for universal image tracking of claim 16

19       wherein the timer tracks year in the range of from 0000 to

20       9999.

21   26.  The system for universal image tracking of claim 16

22       wherein the timer tracks all 12 months of the year.

23   27.  The system for universal image tracking of claim 16

87

2    minutes.

3    28.  The system for universal image tracking of claim 16

4         wherein the timer tracks time in fractions of a second.

5    29.  The system for universal image tracking of claim 16

6         wherein the system is ISO 8601:1988 compliant.

7    30.  The system for universal image tracking of claim 22

8         wherein the physical attributes comprise at least:

9         image category;

10        image size;

11        push status;

12        digital dynamic range;

13        image medium;

14        image resolution;

15        image stain; and

16        image format.

17   31.  The system for universal image tracking of claim 20

18        wherein the lineage archive information comprises a parent

19        number.

20   32.  The system for universal image tracking of claim 31

21        wherein the parent number comprises at least:

22        a parent conception date; and

23        a parent conception time.

JA1084

2          inputting raw image data to an image forming apparatus;

3          inputting image-related data; creating first archive data

4          based upon the image-related data; and translating the

5          first archive data into a form that can be attached to the

6          raw image data.

7    34.  The method for universally tracking images of claim 33

8          wherein the raw image data is from a film based camera.

9    35.  The method for universally tracking images of claim 33

10         wherein the raw image data is from a digital camera.

11    36.  The method for universally tracking images of claim 33

12         wherein the raw image data is from a video camera.

13    37.  The method for universally tracking images of claim 33

14         wherein the raw image data is from a digital image

15         processor.

16    38.  The method for universally tracking images of claim 33

17         wherein the raw image data is from a medical image sensor.

18    39.  The method for universally tracking images of claim 38

19         wherein the medical image sensor is a magnetic resonance

20         imager.

21    40.  The method for universally tracking images of claim 38

22         wherein the raw image data is from an X-ray imager.

23    41.  The method for universally tracking images of claim 38

89

JA1085

2    42.   The method for universally tracking images of claim 33

3          wherein the inputting image related data occurs without

4          user intervention.

5    43.   The method for universally tracking images of claim 33

6          wherein the inputting of image related data occurs via

7          push button input.

8    44.   The method for universally tracking images of claim 33

9          wherein the inputting of image related data occurs via

10        voice recognition equipment.

11    45.   The method for universally tracking images of claim 33

12        wherein the inputting of image related data occurs via a

13        keyboard.

14    46.   The method for universally tracking images of claim 33

15        wherein the form of the translated archive data is an

16        electronic file.

17    47.   The method for universally tracking images of claim 33

18        wherein the form of the translated data is a graphic code.

19    48.   The method for universally tracking images of claim 47

20        wherein the graphic code is one dimensional.

21    49.   The method for universally tracking images of claim 47

22        wherein the graphic code is two dimensional.

23    50.   The method for universally tracking images of claim 47

90

JA1086

2   51.   The method for universally tracking images of claim 33
3         wherein the image data comprises image data and second
4         archive data.

5   52.   The method for universally tracking images of claim 33
6         further comprising reading the second archive data; and
7         creating lineage archive information relating to the image
8         based upon the first archive information and second
9         archive information.

10  53.   The method for universally tracking images of claim 33
11        wherein the inputting of image related data comprises
12        configuration input processing for determining bounds for
13        the archive data generation based upon configured input;
14        determining the correct value of archive data representing
15        the image forming apparatus and configuration input; and
16        date/time stamping the image related data.

17  54.   The method for universally tracking images of claim 53
18        wherein date/time stamping is filtered according to
19        configuration input rules.

20  55.   The method for universally tracking images of claim 33
21        wherein the configuration input comprises at least
22        generation, sequence, data, unit, and constants
23        information.

91

JA1087

2           wherein the first archive data comprises location

3           attributes of an image.

4    57.    The method for universally tracking images of claim 33

5           wherein the first archive data comprises physical

6           attributes of an image.

7    58.    The method for universally tracking images of claim 56

8           wherein the location attributes comprise at least:

9           image generation depth;

10          serial sequence of lot within an archive;

11          serial sequence of unit within a lot;

12          date location of a lot within an archive;

13          date location of an image within an archive;

14          author of the image; and

15          device producing the image.

16   59.    The method for universally tracking images of claim 57

17          wherein the physical attributes of an image comprise at

18          least:

19          image category;

20          image size;

21          push status;

22          digital dynamic range;

23          image medium;

92

2          image resolution;

3          image stain; and

4          image format.

5     60.   The method for universally tracking images of claim 52

6           wherein the lineage archive information comprises a parent

7           number.

8     61.   The method for universally tracking images of claim 52

9           wherein the parent number comprises at least:

10          a parent conception date; and

11          a parent conception time.

12    62.   The system for universal image tracking of claim 1 wherein

13          the input means comprises a magnetic card reader.

14    63.   The system for universal image tracking of claim 1 wherein

15          the input means comprises a laser scanner.

16    64.   The system for universal image tracking of claim 31

17          wherein the physical attributes further comprise;

18          imageRes; and

19          imageCus.

20    65.   The method for universally tracking images of claim 33

21          wherein the inputting image related data is via a magnetic

22          card reader.

23    66.   The method for universally tracking images of claim 33

JA1089

scanner.

3    67.   The method of universally tracking images of claim 33
4          wherein the inputting of image related data is via an
5          optical reader.

94

JA1090





Serial No. 09/661,222
Filed: 09/13/00

WE CLAIM:

1.     A network distributed tracking wire transfer protocol comprising:
       a variable length identification string, the identification string for specifying the identity of an entity in a distributed data collection; and

5              a variable length location string, the location string for specifying the network location of data associated with an entity in a distributed data collection;

       wherein a relationship between the identification string and the location string can be spontaneously and dynamically created and modified.

10     2.     The network distributed tracking wire transfer protocol defined in claim 1, wherein the protocol is application independent.

       3.     The network distributed tracking wire transfer protocol defined in claim 1, wherein the protocol is organizationally independent.

       4.     The network distributed tracking wire transfer protocol defined in
15              claim 1, wherein the protocol is geographically independent.

       5.     A system having a network distributed tracking wire transfer protocol for storing and identifying data with a distributed data collection, comprising:
       a data repository, the data repository for storing data in a
20     distributed data collection;
       a client entity, the client entity for manipulating data in the distributed data collection; and
       a first server entity, the first server entity operative to locate data in the distributed data collection;
25              wherein the client entity transmits an identifier string to the first server entity along with a client request and the first server entity provides at least one location string to the client entity in response thereto.

JA1091

6. The system defined in claim 5, further comprising a second server entity coupled to the first server entity.

7. The system defined in claim 5, wherein the first server entity maps the identifier string received from the client entity to the at least one location string.

8. The system defined in claim 7, wherein the mapping is performed using a hash operation.

9. The system defined in claim 6, wherein the first server entity transmits the client request to the second server entity if the first server entity cannot provide the at least one location string to the client entity.

10. The system defined in claim 9, wherein the second server entity maps the identifier string received from the first server entity to the at least one location string.

11. The system defined in claim 10, wherein the second server entity transmits the at least one location string to the first server entity for transmission to the client entity.

12. A method for storing and retrieving tracking information over a network using a wire transfer protocol, comprising the steps of:
    providing a location string and an identification string, the location string for specifying the location of data associated with an entity in a distributed data collection and the identification string for specifying the identification of an entity in the distributed data collection;
    storing information at a data repository entity by associating an identification string with each particular stored unit of information and by mapping the identification string to at least one location string associated with the data repository entity, the identification string and the at least one location

JA1092

string for a particular unit of information being stored at a first server entity coupled to the data repository entity;

transmitting a request from a client entity to the first server entity to retrieve at least one location string associated with a particular stored unit of information, the request including the identification string associated with the particular stored unit of information; and

receiving the request at the first server entity and responding to the client entity by providing at least one location string associated with the particular stored unit of information to the client entity.

13. The method for storing and retrieving tracking information defined in claim 12, further comprising the step of transmitting the request to a second server entity prior to responding to the client entity, the second server entity coupled to the first server entity and having stored therewith the mapping of the identification string and the at least one location string for the particular unit of information.

14. The method for storing and retrieving tracking information defined in claim 13, wherein the second server entity responds to the client entity by providing the location string associated with the particular stored unit of information to the second client entity.

15. The method for storing and retrieving tracking information defined in claim 12, wherein the lengths of the identification string and the at least one location string are variable.

16. The method for storing and retrieving tracking information defined in claim 12, further comprising the step of spontaneously and dynamically manipulating the mapping of an identification string to a location string.

JA1093



1    We claim:

2    1.    A method for establishing and retrieving data based on global indices comprising:

3        establishing a unique device ID for each of a plurality of data generating devices on a

4    network;

5        registering the unique device ID of each of the plurality of data generating devices on the

6    network on at least one server connected to the network when the data generating equipment is

7    first used on the network;

8        establishing a unique user ID for each user of the data generating devices when the user

9    uses one of the plurality of data generating devices for the first time; and

10        retrieving data generated by the plurality of data generating devices by searching for

11    instances of the unique user ID.

12    2.    The method for establishing and retrieving data based on global indices of claim 1

13        wherein establishing the unique user ID further comprises combining the device ID of the

14        data generating device being used by the user with a date/time stamp of the first use by

15        the user.

16    3.    The method for establishing and retrieving data based on global indices of claim 2 further

17        comprising storing the unique user ID on a token given to the user.

18    4.    The method for establishing and retrieving data based on gloval indices of claim 3 further

19        comprising the  user using the token with the unique user ID for all subsequent uses of

20        any of the plurality of data generating devices.

21    5.    The method for establishing and retrieving data based on global indices of claim 1

22        wherein the data generated is medical data concerning the user.

JA1094

1    6.    The method for establishing and retrieving data based on global indices of claim 1

2          wherein the data generated is commercial data.

3    7.    A system for establishing and retrieving data based on global indices comprising:

4          a network;

5          a plurality of servers connected to the network for storing data and responding to search

6    requests;

7          a plurality of data generating devices connected to the servers, wherein each data

8    generating device has a unique ID that is registered with at least one server when the data

9    generating device is first used of the network;

10         unique user ID generator associated with each data generating device whereby a unique

11   user ID is established by combining the unique device ID with a date time stamp of when the

12   user first used any of the plurality of data generating devices on the network; and

13         search logic for searching for instances of the unique user ID on any of the plurality of

14   servers.

15   8.    The system for establishing and retrieving data based on global indices of claim 7

16         wherein the data generating devices are medical data generating devices.

17   9.    The system for establishing and retrieving data based on global indices of claim 7 further

18         comprising tokens generated by each of the plurality of data generating devices on which

19         is stored each unique user ID.

20   10.   The system for establishing and retrieving data based on global indices of claim 7

21         wherein the data generated is commercial data.

22   11.   The system for establishing and retrieving data based on global indices of claim 9

-46-

1    wherein each of the plurality of data generating devices further comprises a token reader

2    for reading the unique user ID stored on the token of a user.

3    12.    The system for establishing and retrieving data based on global indices of claim 7 further

4    comprising data transport logic for transporting data generated from one data generating

5    device to another once the location of the data has been determined by the search logic

6    identifying instances of the unique user ID on any of the plurality of servers.

7    13.    A method for establishing and retrieving data based on global indices comprising:

8    establishing a unique device ID for each of a plurality of data generating devices on a

9    network;

10    registering the unique device ID of each of the plurality of data generating devices on the

11    network on at least one server connected to the network when the data generating equipment is

12    first used on the network;

13    establishing a unique record ID for each record of the data generating devices when the

14    record is created using one of the plurality of data generating devices for the first time; and

15    retrieving data generated by the plurality of data generating devices by searching for

16    instances of the unique record ID.

17    14.    The method for establishing and retrieving data based on global indices of claim 13

18    wherein the records creating is creating records of parts of an assembly.

-47-



I Claim:

1.     A system for universal object tracking comprising:

        an object forming apparatus;

        a CPU integral to the image forming apparatus;

        user input means connected to the CPU for receiving user input;

        logic stored in the CPU for receiving user input and creating archive data

        based upon the user input; and

        a graphic code producer responsive to the CPU for producing graphic codes

        representative of the archive data.

2.     The system for universal object tracking of claim 1 wherein the object forming

apparatus is taken from the group consisting of imaging forming apparatus, digital

data forming apparatus, electronic data forming apparatus.

3.     The system for universal object tracking of claim 1 wherein the object forming

apparatus is a digital camera.

4.     The system for universal object tracking of claim 1 wherein the object forming

apparatus is a video camera.

5.     The system for universal object tracking of claim 1 wherein the object forming

apparatus is a digital image processor.

6.     The system for universal object tracking of claim 1 wherein the object forming

apparatus is a medical image sensor.

JA1097

7. The system for universal object tracking of claim 6 wherein the medical image sensor is a magnetic resonance imager.

8. The system for universal object tracking of claim 6 wherein the medical image sensor is an X-ray imager.

9. The system for universal object tracking of claim 6 wherein the medical image sensor is a CAT scan imager.

10. The system for universal object tracking of claim 1 wherein the user input means is a push button input.

11. The system for universal object tracking of claim 1 wherein the user input means is a keyboard.

12. The system for universal object tracking of claim 1 wherein the user input means is voice recognition equipment.

13. The system for universal object tracking of claim 1 wherein the graphic codes are one-dimensional.

14. The system for universal object tracking of claim 1 wherein the graphic codes are two-dimensional.

15. The system for universal object tracking of claim 1 wherein the graphic codes are three-dimensional.

16. The system for universal object tracking of claim 1 wherein the logic comprises configuration input processing for determining bounds for the archive data generation based on configuration input;

JA1098

a resolver for determining the correct value of archive data representing the image forming apparatus and the configuration input; and a timer for creating date/time stamps.

17. The system for universal object tracking of claim 16 wherein the timer further comprises a filter for processing the time stamp according to configuration input rules.

18. The system for universal object tracking of claim 16 wherein the configuration input comprises at least generation, sequence, data, unit, and constants information.

19. The system for universal object tracking of claim 1 further comprising a graphic code reader connected to the CPU for reading a graphic code on an image representing archive information; and

A decoder for decoding the archive information represented by the graphic code.

20. The system for universal object tracking of claim 19 wherein the logic further comprises:

logic for receiving a second user input and creating lineage archive information relating to the image based upon the archive information and the second user input; and

logic for producing graphic code representative of the lineage archive data.

21. The system for universal object tracking of claim 1 wherein the archive data comprises location attributes of an image.

22. The system for universal object tracking of claim 1 wherein the archive data comprises physical attribute of an image.

JA1099

23. The system for universal object tracking of claim 1 wherein each image in an image archive has unique archive data associated with each image.

24. The system for universal object tracking of claim 21 wherein the location data comprises at least:

    image generation depth;

    serial sequence of lot within an archive;

    serial sequence of unit within a lot;

    date location of a lot within an archive;

    date location of an image within an archive;

    author of the image; and

    device producing the image.

25. The system for universal object tracking of claim 16 wherein the timer tracks year in the range of from 0000 to 9999.

26. The system for universal object tracking of claim 16 wherein the timer tracks all 12 months of the year.

27. The system for universal object tracking of claim 16 wherein the timer tracks time in at least hours and minutes.

28. The system for universal object tracking of claim 16 wherein the timer tracks time in fractions of a second.

29. The system for universal object tracking of claim 16 wherein the system is ISO 8601:1988 compliant.

JA1100

30. The system for universal object tracking of claim 22 wherein the physical attributes comprise at least:

image category;

image size;

push status;

digital dynamic range;

image medium;

image resolution;

image stain; and

image format.

31. The system for universal object tracking of claim 20 wherein the lineage archive information comprises a parent number.

32. The system for universal object tracking of claim 31 wherein the parent number comprises at least:

a parent conception date; and

a parent conception time.

33. A method for universally tracking objects comprising:

inputting raw object data to an object forming apparatus; inputting object-related data;

creating first archive data based upon the object-related data; and translating the first archive data into a form that can be attached to the raw object data.

JA1101

34. The method for universally tracking objects of claim 33 wherein the raw object data is from a film based camera.

35. The method for universally tracking objects of claim 33 wherein the raw object data is from a digital camera.

36. The method for universally tracking objects of claim 33 wherein the raw object data is from a video camera.

37. The method for universally tracking objects of claim 33 wherein the raw object data is from a digital image processor.

38. The method for universally tracking objects of claim 33 wherein the raw object data is from a medical image sensor.

39. The method for universally tracking objects of claim 38 wherein the medical object sensor is a magnetic resonance imager.

40. The method for universally tracking objects of claim 38 wherein the raw object data is from an X-ray imager.

41. The method for universally tracking objects of claim 38 wherein the raw object data is from a CAT scan imager.

42. The method for universally tracking objects of claim 33 wherein the inputting object related data occurs without user intervention.

43. The method for universally tracking objects of claim 33 wherein the inputting of object related data occurs via push button input.

44. The method for universally tracking objects of claim 33 wherein the inputting of object related data occurs via voice recognition equipment.

JA1102

45. The method for universally tracking objects of claim 33 wherein the inputting of object related data occurs via a keyboard.

46. The method for universally tracking objects of claim 33 wherein the form of the translated archive data is an electronic file.

47. The method for universally tracking objects of claim 33 wherein the form of the translated data is a graphic code.

48. The method for universally tracking objects of claim 47 wherein the graphic code is one dimensional.

49. The method for universally tracking objects of claim 47 wherein the graphic code is two dimensional.

50. The method for universally tracking objects of claim 47 wherein the graphic code is three dimensional.

51. The method for universally tracking objects of claim 33 wherein the object data comprises image data and second archive data.

52. The method for universally tracking objects of claim 33 further comprising reading the second archive data; and creating lineage archive information relating to the object based upon the first archive information and second archive information.

53. The method for universally tracking objects of claim 33 wherein the inputting of object related data comprises configuration input processing for determining bounds for the archive data generation based upon configured input;

determining the correct value of archive data representing the object forming apparatus and configuration input; and date/time stamping the object related data.

JA1103

54. The method for universally tracking objects of claim 53 wherein date/time stamping is filtered according to configuration input rules.

55. The method for universally tracking objects of claim 33 wherein the configuration input comprises at least generation, sequence, data, unit, and constants information.

56. The method for universally tracking objects of claim 33 wherein the first archive data comprises location attributes of an object.

57. The method for universally tracking objects of claim 33 wherein the first archive data comprises physical attributes of an object.

58. The method for universally tracking objects of claim 56 wherein the location attributes comprise at least:

object generation depth;

serial sequence of lot within an archive;

serial sequence of unit within a lot;

date location of a lot within an archive;

date location of an object within an archive;

author of the object; and

device producing the object.

59. The method for universally tracking objects of claim 57 wherein the physical attributes of an object comprise at least:

object category;

image size;

JA1104

push status;

digital dynamic range;

image medium;

software set;

image resolution;

image stain; and

image format.

60. The method for universally tracking objects of claim 52 wherein the lineage archive information comprises a parent number.

61. The method for universally tracking objects of claim 52 wherein the parent number comprises at least:

a parent conception date; and

a parent conception time.

62. The system for universal object tracking of claim 1 wherein the input means comprises a magnetic card reader.

63. The system for universal object tracking of claim 1 wherein the input means comprises a laser scanner.

64. The system for universal object tracking of claim 31 wherein the physical attributes further comprise;

imageRes; and

imageCus.

JA1105

65. The method for universally tracking objects of claim 33 wherein the inputting object related data is via a magnetic card reader.

66. The method for universally tracking objects of claim 33 wherein the inputting of object related data is via a laser scanner.

67. The method of universally tracking objects of claim 33 wherein the inputting of object related data is via an optical reader.

JA1106



CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail, with sufficient postage, in an envelope addressed to: Commissioner for Patents, Washington, D.C. 20231, on September 10, 2001.

_____Kent E. Genin_____
Name of Applicant, Assignee or
Registered Representative

_____
Signature

___9/10/2001___
Date of Signature

PATENT
CASE NO. 10406/49

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

|  |  |  |
|---|---|---|
| In re Application of: | ) | |
| | ) | Group Art Unit: 2152 |
| J. Overton et al. | ) | |
| | ) | |
| Serial No. 09/872,736 | ) | |
| | ) | |
| Filed: June 1, 2001 | ) | |
| | ) | |
| For: METHOD AND APPARATUS | ) | |
| FOR MANAGING LOCATION | ) | |
| INFORMATION IN A NETWORK | ) | |

### INFORMATION DISCLOSURE STATEMENT

Commissioner for Patents
Washington, D.C. 20231

Dear Sir:

Pursuant to the obligation under 37 C.F.R. § 1.56 and in conformance with 37 C.F.R. § 1.97-1.99, Applicant hereby submits the following references for consideration by the Examiner. Copies of each have been enclosed along with the form PTO-1449.

Except for the references marked with a bullet ("•"), all the references listed below and on the enclosed form PTO-1449 were previously cited or submitted in the

JA1107

prior application 09/367,461 to which Applicant claims priority under 35 U.S.C. § 120, and therefore copies of these previously cited or submitted references are not provided in this application as permitted by 37 C.F.R. § 1.98 (d).

## U.S. PATENTS

| Patent No. | Date | Inventor |
|---|---|---|
| 4,553,261 | 11/12/85 | Froessl |
| 4,636,858 | 01/1987 | Hague |
| 4,728,978 | 03/01/88 | Inoue et al. |
| 4,800,488 | 01/24/89 | Agrawal et al. |
| 4,825,406 | 04/25/89 | Bean et al. |
| 4,914,571 | 04/03/90 | Baratz et al. |
| 5,008,700 | 04/1991 | Okamoto |
| 5,124,814 | 06/23/92 | Takahashi et al. |
| 5,193,185 | 03/1883 | Lanter |
| 5,208,623 | 05/04/93 | Takahashi |
| 5,319,401 | 06/07/94 | Hicks |
| 5,347,600 | 09/1994 | Barnsley |
| 5,384,643 | 01/24/95 | Inga et al. |
| 5,414,841 | 05/09/95 | Bingham et al. |
| 5,455,648 | 10/03/95 | Kazami |
| 5,499,113 | 03/1996 | Tsuboi |
| 5,522,077 | 05/28/96 | Cuthbert et al. |
| 5,537,547 | 07/16/96 | Chan et al. |
| 5,550,981 | 08/27/96 | Bauer et al. |
| 5,551,027 | 08/27/96 | Choy et al. |
| 5,557,790 | 09/17/96 | Bingham et al. |
| 5,560,005 | 09/24/96 | Hoover et al. |
| 5,576,952 | 11/19/96 | Stutman et al. |
| 5,579,067 | 11/26/96 | Wakabayashi |
| 5,610,653 | 03/1997 | Abecassis |
| 5,617,570 | 04/01/97 | Russell et al. |
| 5,625,841 | 04/29/97 | Dawkins et al. |
| 5,649,247 | 07/15/97 | Itoh et al. |
| 5,664,170 | 09/02/97 | Taylor |
| 5,669,029 | 09/16/97 | Fyson et al. |
| 5,764,889 | 06/09/98 | Ault et al. |
| 5,764,906 | 06/09/98 | Edelstein et al. |
| 5,774,670 | 06/30/98 | Montulli |
| 5,781,725 | 07/14/98 | Saito |
| 5,784,565 | 07/21/98 | Lewine |
| 5,802,518 | 09/01/98 | Karaev et al. |
| 5,809,161 | 09/1998 | Auty |
| 5,809,331 | 09/15/98 | Staats et al. |

2

| Patent No. | Date | Inventor |
|---|---|---|
| 5,809,495 | 09/15/98 | Loaiza |
| 5,813,006 | 09/22/98 | Polnerow et al. |
| 5,848,246 | 12/08/98 | Gish |
| 5,864,482 | 01/1999 | Hazama |
| 5,872,973 | 02/16/99 | Mitchell et al. |
| 5,875,302 | 02/23/99 | Obhan |
| 5,907,837 | 05/25/99 | Ferrel et al. |
| 5,915,240 | 06/22/99 | Karpf |
| 5,920,702 | 07/06/99 | Bleidt et al. |
| 5,940,844 | 08/17/99 | Cahill et al. |
| 5,961,610 | 10/05/99 | Kelly et al. |
| 5,966,705 | 10/12/99 | Koneru et al. |
| 5,974,124 | 10/26/99 | Schlueter, Jr. et al. |
| 5,978,773 | 11/02/99 | Hudetz et al. |
| 5,987,519 | 11/16/99 | Peifer et al. |
| 5,995,965 | 11/30/99 | Experton |
| 6,032,175 | 02/29/00 | Fletcher et al. |
| 6,047,332 | 04/04/00 | Viswanathan et al. |
| 6,055,544 | 04/25/00 | DeRose et al. |
| 6,058,193 | 05/02/00 | Cordery et al. |
| 6,092,189 | 07/18/00 | Fisher et al. |
| 6,188,766 B1 | 02/13/01 | Kocher |
| 6,201,931 B1 | 03/13/01 | Cipolla et al. |
| 6,202,070 B1 | 03/13/01 | Nguyen et al. |
| 6,209,095 B1 | 03/27/01 | Anderson et al. |
| 6,212,280 B1 | 04/03/01 | Howard, Jr. et al. |

## FOREIGN PATENT DOCUMENTS

| Document No. | Date | Country |
|---|---|---|
| 0 568 161 A1 | 01/1992 | EPO |
| 0 889 422 A2 | 01/07/99 | EPO |
| WO 86/05610 | 09/1986 | PCT |
| WO 98/00624 | 07/16/98 | PCT |
| WO 98/15910 | 04/16/98 | PCT |
| WO 98/31138 | 07/16/98 | PCT |
| WO 00/03526 | 01/20/00 | PCT |

## OTHER ART

3

JA1109

Bourke D G et al: "Programmable Module and Circuit for Machine-Readable Unique Serial Number" IBM Technical Disclosure Bulletin, vol. 27, no. 4A, 1 September 1984 pages 1942-1944.

Kleinholz L et al: "Supporting Cooperative Medicine: The Bermed Project" IEEE Multimedia, vol. 1, no. 4, 21 December 1994 pages 44-53.

"Method for Network Naming and Routing" IBM Technical Disclosure Bulletin, vol. 37, no. 9, 1 September 1994 page 255.

"Minimizing Locking To Access Global Shared Data", IBM Technical Disclosure Bulletin, pp 619-622, February 1995.

"A robust software barcode reader using the Hough transform", Muniz, R., Junco, L.; Otero, A., Abstract, 1999 Int'l Conf. On Information Intelligence and Systems (10-31 to 11-3/1999).

"In-Fab identification of silicon wafers with clean, laser marked barcodes", Fresonke, D., Abstract, 1994 IEEE/Semi Advanced Semiconductor Manufacturing Conference and Workshop (11-14 to 11-16/1994).

"Applications of barcode technology in automated storage and retrieval systems", Sriram, T.; Vishwanatha Rao, K.; Biswas, S.; Ahmed, Abstract, Proceedings of the 1996 IEEE IECON 22nd Int'l Conf. On Industrial Electrodes (8-5 to 8-10/1996).

• Copy of claims for U.S. Application Serial No. 09/111,896 filed July 8, 1998 entitled System And Method For Establishing And Retrieving Data Based On Global Indices.

• Copy of claims for U.S. Application Serial No. 09/503,441 filed February 14, 2000 entitled Automated Image Archiving System.

• Copy of claims for U.S. Application Serial No. 09/367,461 filed August 13, 1999 entitled Automated Image Archiving System.

• Copy of claims for U.S. Application Serial No. 09/661,222 filed September 13, 2000 entitled Network Distributed Tracking Wire Transfer Protocol.


EXPLANATION OF THE REFERENCES

As of the day of filing of this information disclosure statement, a first office action on the merits has not been received by the undersigned. Accordingly, no fee for consideration of the information provided with this disclosure statement is included herewith, as permitted by 37 C.F.R. § 1.97(b)(3). However, if an office action on the

JA1110

merits is mailed on a date prior hereto, Applicant hereby requests and authorizes the Commissioner to charge Deposit Account 23-1925 for the appropriate fee of $180 as set forth in 37 C.F.R. § 1.97(c) for consideration of the information set forth in this disclosure statement.

Applicant requests to have these references included in the record of this application. Applicant further requests that the Examiner review the entire disclosure of each reference.

Applicant does not represent any of these references to be prior art and Applicant reserves the right to disqualify any references by the showing of an earlier date of invention, if appropriate.

Respectfully Submitted,

Kent E. Genin
Reg. No. 37,834
Attorney for Applicant

BRINKS HOFER GILSON & LIONE
P.O. Box 10395
Chicago, IL 60610
(312) 321-7732

5

JA1112

| FORM PTO-1449 | SERIAL NO. 09/872,736 | CASE NO. 10406/49 |
|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | FILING DATE June 1, 2001 | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | APPLICANT(S): J. Overton et al. | |

**REFERENCE DESIGNATION**     **U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | A1 | 4,553,261 | 11/12/85 | FROESSL | | |
| | A2 | 4,636,858 | 01/1987 | HAGUE | | |
| | A3 | 4,728,978 | 03/01/88 | INOUE ET AL. | | |
| | A4 | 4,800,488 | 01/24/89 | AGRAWAL ET AL. | | |
| | A5 | 4,825,406 | 04/25/89 | BEAN ET AL. | | |
| | A6 | 4,914,571 | 04/03/90 | BARATZ ET AL. | | |
| | A7 | 5,008,700 | 04/1991 | OKAMOTO | | |
| | A8 | 5,124,814 | 06/23/92 | TAKAHASHI ET AL. | | |
| | A9 | 5,193,185 | 03/1883 | LANTER | | |
| | A10 | 5,208,623 | 05/04/93 | TAKAHASHI | | |
| | A11 | 5,319,401 | 06/07/94 | HICKS | | |
| | A12 | 5,347,600 | 09/1994 | BARNSLEY | | |
| | A13 | 5,384,643 | 01/24/95 | INGA ET AL. | | |
| | A14 | 5,414,841 | 05/09/95 | BINGHAM ET AL. | | |
| | A15 | 5,455,648 | 10/03/95 | KAZAMI | | |
| | A16 | 5,499,113 | 03/1996 | TSUBOI | | |
| | A17 | 5,522,077 | 05/28/96 | CUTHBERT ET AL. | | |
| | A18 | 5,537,547 | 07/16/96 | CHAN ET AL. | | |
| | A19 | 5,550,981 | 08/27/96 | BAUER ET AL. | | |
| | A20 | 5,551,027 | 08/27/96 | CHOY ET AL. | | |
| | A21 | 5,557,790 | 09/17/96 | BINGHAM ET AL. | | |
| | A22 | 5,560,005 | 09/24/96 | HOOVER ET AL. | | |
| | A23 | 5,576,952 | 11/19/96 | STUTMAN ET AL. | | |
| | A24 | 5,579,067 | 11/26/96 | WAKABAYASHI | | |
| | A25 | 5,610,653 | 03/1997 | ABECASSIS | | |
| | A26 | 5,617,570 | 04/01/97 | RUSSELL ET AL. | | |
| | A27 | 5,625,841 | 04/29/97 | DAWKINS ET AL. | | |
| | A28 | 5,649,247 | 07/15/97 | ITOH ET AL. | | |
| | A29 | 5,664,170 | 09/02/97 | TAYLOR | | |
| | A30 | 5,669,029 | 09/16/97 | FYSON ET AL. | | |
| | A31 | 5,764,889 | 06/09/98 | AULT ET AL. | | |
| | A32 | 5,764,906 | 06/09/98 | EDELSTEIN ET AL. | | |
| | A33 | 5,774,670 | 06/30/98 | MONTULLI | | |
| | A34 | 5,781,725 | 07/14/98 | SAITO | | |
| | A35 | 5,784,565 | 07/21/98 | LEWINE | | |
| | A36 | 5,802,518 | 09/01/98 | KARAEV ET AL. | | |
| | A37 | 5,809,161 | 09/1998 | AUTY | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Rev. Dec.-99
F:\COMMON\KEG\OverX 10406\10406-49\10406-49 PTO 1449.1.doc

| FORM PTO-1449 | | | SERIAL NO. 09/872,736 | CASE NO. 10406/49 |
|---|---|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | | | FILING DATE June 1, 2001 | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | | | APPLICANT(S): J. Overton et al. | |

## REFERENCE DESIGNATION        U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | A38 | 5,809,331 | 09/15/98 | STAATS ET AL. | | |
| | A39 | 5,809,495 | 09/15/98 | LOAIZA | | |
| | A40 | 5,813,006 | 09/22/98 | POLNEROW ET AL. | | |
| | A41 | 5,848,246 | 12/08/98 | GISH | | |
| | A42 | 5,864,482 | 01/1999 | HAZAMA | | |
| | A43 | 5,872,973 | 02/16/99 | MITCHELL ET AL. | | |
| | A44 | 5,875,302 | 02/23/99 | OBHAN | | |
| | A45 | 5,907,837 | 05/25/99 | FERREL ET AL. | | |
| | A46 | 5,915,240 | 06/22/99 | KARPF | | |
| | A47 | 5,920,702 | 07/06/99 | BLEIDT ET AL. | | |
| | A48 | 5,940,844 | 08/17/99 | CAHILL ET AL. | | |
| | A49 | 5,961,610 | 10/05/99 | KELLY ET AL. | | |
| | A50 | 5,966,705 | 10/12/99 | KONERU ET AL. | | |
| | A51 | 5,974,124 | 10/26/99 | SCHLUETER, JR. ET AL. | | |
| | A52 | 5,978,773 | 11/02/99 | HUDETZ ET AL. | | |
| | A53 | 5,987,519 | 11/16/99 | PEIFER ET AL. | | |
| | A54 | 5,995,965 | 11/30/99 | EXPERTON | | |
| | A55 | 6,032,175 | 02/29/00 | FLETCHER ET AL. | | |
| | A56 | 6,047,332 | 04/04/00 | VISWANATHAN ET AL. | | |
| | A57 | 6,055,544 | 04/25/00 | DEROSE ET AL. | | |
| | A58 | 6,058,193 | 05/02/00 | CORDERY ET AL. | | |
| | A59 | 6,092,189 | 07/18/00 | FISHER ET AL. | | |
| | A60 | 6,188,766 B1 | 02/13/01 | KOCHER | | |
| | A61 | 6,201,931 B1 | 03/13/01 | CIPOLLA ET AL. | | |
| | A62 | 6,202,070 B1 | 03/13/01 | NGUYEN ET AL. | | |
| | A63 | 6,209,095 B1 | 03/27/01 | ANDERSON ET AL. | | |
| | A64 | 6,212,280 B1 | 04/03/01 | HOWARD, JR. ET AL. | | |

## FOREIGN PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS/ SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| | A65 | 0 568 161 A1 | 01/1992 | EPO | | | |
| | A66 | 0 889 422 A2 | 01/07/99 | EPO | | | |
| | A67 | WO 86/05610 | 09/1986 | PCT | | | |
| • | A68 | WO 98/00624 | 07/1998 | PCT | | | |
| | A69 | WO 98/15910 | 04/16/98 | PCT | | | |
| | A70 | WO 98/31138 | 07/16/98 | PCT | | | |
| | A71 | WO 00/03526 | 01/20/00 | PCT | | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Rev. Feb.-97
F:\COMMON\KEG\OverX 10406\10406-49\10406-49 PTO 1449.1.doc

JA1113

| FORM PTO-1449 | SERIAL NO. 09/872,736 | CASE NO. 10406/49 |
|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | FILING DATE June 1, 2001 | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | APPLICANT(S): J. Overton et al. | |

| EXAMINER INITIAL | | OTHER ART (Including Author, Title, Date, Pertinent Pages, etc.) |
|---|---|---|
| | A72 | Bourke D G et al: "Programmable Module and Circuit for Machine-Readable Unique Serial Number" IBM Technical Disclosure Bulletin, vol. 27, no. 4A, 1 September 1984 pages 1942-1944. |
| | A73 | Kleinholz L et al: "Supporting Cooperative Medicine: The Bermed Project" IEEE Multimedia, vol. 1, no. 4, 21 December 1994 pages 44-53. |
| | A74 | "Method for Network Naming and Routing" IBM Technical Disclosure Bulletin, vol. 37, no. 9, 1 September 1994 page 255. |
| | A75 | "Minimizing Locking To Access Global Shared Data", IBM Technical Disclosure Bulletin, pp 619-622, February 1995. |
| | A76 | "A robust software barcode reader using the Hough transform", Muniz, R., Junco, L.; Otero, A., Abstract, 1999 Int'l Conf. On Information Intelligence and Systems (10-31 to 11-3/1999). |
| | A77 | "In-Fab identification of silicon wafers with clean, laser marked barcodes", Fresonke, D., Abstract, 1994 IEEE/Semi Advanced Semiconductor Manufacturing Conference and Workshop (11-14 to 11-16/1994). |
| | A78 | "Applications of barcode technology in automated storage and retrieval systems", Sriram, T.; Vishwanatha Rao, K.; Biswas, S.; Ahmed, Abstract, Proceedings of the 1996 IEEE IECON 22nd Int'l Conf. On Industrial Electrodes (8-5 to 8-10/1996). |
| • | A79 | Copy of claims for U.S. Application Serial No. 09/111,896 filed July 8, 1998 entitled System And Method For Establishing And Retrieving Data Based On Global Indices. |
| • | A80 | Copy of claims for U.S. Application Serial No. 09/503,441 filed February 14, 2000 entitled Automated Image Archiving System. |
| • | A81 | Copy of claims for U.S. Application Serial No. 09/367,461 filed August 13, 1999 entitled Automated Image Archiving System. |
| • | A82 | Copy of claims for U.S. Application Serial No. 09/661,222 filed September 13, 2000 entitled Network Distributed Tracking Wire Transfer Protocol. |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

# PCT

WORLD INTELLECTUAL PROPERTY ORGANIZATION
International Bureau



## INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

| (51) International Patent Classification 6 :<br><br>H04N 1/21 | A1 | (11) International Publication Number: WO 98/31138 |
|---|---|---|
| | | (43) International Publication Date: 16 July 1998 (16.07.98) |

| (21) International Application Number: PCT/US98/00624 | (81) Designated States: AL, AM, AT, AU, AZ, BA, BB, BG, BR, BY, CA, CH, CN, CU, CZ, DE, DK, EE, ES, FI, GB, GE, GH, HU, IL, IS, JP, KE, KG, KP, KR, KZ, LC, LK, LR, LS, LT, LU, LV, MD, MG, MK, MN, MW, MX, NO, NZ, PL, PT, RO, RU, SD, SE, SG, SI, SK, SL, TJ, TM, TR, TT, UA, UG, US, UZ, VN, YU, ZW, ARIPO patent (GH, GM, KE, LS, MW, SD, SZ, UG, ZW), Eurasian patent (AM, AZ, BY, KG, KZ, MD, RU, TJ, TM), European patent (AT, BE, CH, DE, DK, ES, FI, FR, GB, GR, IE, IT, LU, MC, NL, PT, SE), OAPI patent (BF, BJ, CF, CG, CI, CM, GA, GN, ML, MR, NE, SN, TD, TG). |
|---|---|
| (22) International Filing Date: 13 January 1998 (13.01.98) | |
| (30) Priority Data:<br>60/035,485    13 January 1997 (13.01.97)    US | |
| (71)(72) Applicant and Inventor: OVERTON, John [US/US]; 5825 S. Blackstone, Chicago, IL 60637 (US). | |
| (74) Agent: ROBERTS, Jon, L.; Roberts & Brownell, L.L.C., Suite 212, 8381 Old Courthouse Road, Vienna, VA 22182 (US). | **Published**<br>*With international search report.*<br>*Before the expiration of the time limit for amending the claims and to be republished in the event of the receipt of amendments.* |

(54) Title: AUTOMATED SYSTEM FOR IMAGE ARCHIVING

(57) Abstract

A method for producing universal image tracking implementations. This invention provides a functional implementation, from which any image–producing device can construct automatically generated archival enumerations. This implementation uses an encoding schemata based on location numbers, image numbers, and parent numbers, anticipated by the formal specifications. Location numbers encode information about logical sequence in the archive, image numbers encode information about the physical attributes of an image, and parent numbers record the conception date and time of a given image's parent. Parent–child relations are algorithmically derivable from location and parent number relationships, thus providing fully recoverable, cumulative image lineage information. Encoding schemata are optimized for use with all current and arriving barcode symbologies to facilitate data transportation across disparate technologies (e.g., negatives to prints to computers). The implemented system is seamlessly compatible with traditional database "key–driven" recovery systems, as well as with portable decoding systems capable of reading self–contained databases directly from images.



JA1115

### FOR THE PURPOSES OF INFORMATION ONLY

Codes used to identify States party to the PCT on the front pages of pamphlets publishing international applications under the PCT.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| AL | Albania | ES | Spain | LS | Lesotho | SI | Slovenia |
| AM | Armenia | FI | Finland | LT | Lithuania | SK | Slovakia |
| AT | Austria | FR | France | LU | Luxembourg | SN | Senegal |
| AU | Australia | GA | Gabon | LV | Latvia | SZ | Swaziland |
| AZ | Azerbaijan | GB | United Kingdom | MC | Monaco | TD | Chad |
| BA | Bosnia and Herzegovina | GE | Georgia | MD | Republic of Moldova | TG | Togo |
| BB | Barbados | GH | Ghana | MG | Madagascar | TJ | Tajikistan |
| BE | Belgium | GN | Guinea | MK | The former Yugoslav | TM | Turkmenistan |
| BF | Burkina Faso | GR | Greece | | Republic of Macedonia | TR | Turkey |
| BG | Bulgaria | HU | Hungary | ML | Mali | TT | Trinidad and Tobago |
| BJ | Benin | IE | Ireland | MN | Mongolia | UA | Ukraine |
| BR | Brazil | IL | Israel | MR | Mauritania | UG | Uganda |
| BY | Belarus | IS | Iceland | MW | Malawi | US | United States of America |
| CA | Canada | IT | Italy | MX | Mexico | UZ | Uzbekistan |
| CF | Central African Republic | JP | Japan | NE | Niger | VN | Viet Nam |
| CG | Congo | KE | Kenya | NL | Netherlands | YU | Yugoslavia |
| CH | Switzerland | KG | Kyrgyzstan | NO | Norway | ZW | Zimbabwe |
| CI | Côte d'Ivoire | KP | Democratic People's | NZ | New Zealand | | |
| CM | Cameroon | | Republic of Korea | PL | Poland | | |
| CN | China | KR | Republic of Korea | PT | Portugal | | |
| CU | Cuba | KZ | Kazakstan | RO | Romania | | |
| CZ | Czech Republic | LC | Saint Lucia | RU | Russian Federation | | |
| DE | Germany | LI | Liechtenstein | SD | Sudan | | |
| DK | Denmark | LK | Sri Lanka | SE | Sweden | | |
| EE | Estonia | LR | Liberia | SG | Singapore | | |

**Title:    Automated System for Image Archiving**

1    **Reference to Related Application**

2         This application claims the benefit of U.S. Provisional

3    Application No. 60/035,485 filed January 13, 1997 entitled

4    "Automated Image Archiving System."

5    **Field of Invention**

6         This invention relates generally to archive and

7    documentation of data.  More particularly this invention is a

8    universal image tracking system wherein generations of images

9    can be related one to another and to original images that

10   contributed to a final image without significant user

11   intervention.

12   **Background of the Invention**

13        Increasingly, images of various types are being used in a

14   wide variety of industrial, digital, medical, and consumer

15   uses.  In the medical field, telemedicine has made tremendous

16   advances that now allow a digital image from some medical

17   sensor to be transmitted to specialists who have the requisite

18   expertise to diagnose injury and disease at locations remote

19   from where the patient lies.  However, it can be extremely

20   important for a physician, or indeed any other person to

21   understand how the image came to appear as it does.  This

22   involves a knowledge of how the image was processed in order

23   to reach the rendition being examined.  In certain scientific

24   applications, it may be important to "back out" the effect of

1

**JA1117**

1  a particular type of processing in order to more precisely

2  understand the appearance of the image when first made.

3      Varieties of mechanisms facilitate storage and retrieval

4  of archival information relating to images.  However, these

5  archival numbering and documentation schemes suffer from

6  certain limitations.  For example, classificatory schemata are

7  used to facilitate machine sorting of information about a

8  subject ("subject information") according to categories into

9  which certain subjects fit.  Additionally tracking in-

10  formation, that is, information concerning where the image has

11  been or how the image was processed, is also used together

12  with classificatory schemata.

13      However, relying on categorizing schemata is inefficient

14  and ineffective.  On the one hand, category schemata that are

15  limited in size (i.e. number of categories) are convenient to

16  use but insufficiently comprehensive for large-scale

17  applications, such as libraries and national archives.

18  Alternatively if the classificatory schemata is sufficiently

19  comprehensive for large-scale applications, it may well be far

20  too complicated, and therefore inappropriate for small scale

21  applications, such as individual or corporate collections of

22  image data.

23      It is also an approach to provide customizable

24  enumeration strategies to narrow the complexity of large-scale

25  systems and make them discipline specific.  Various archiving

26  schemes are developed to suit a particular niche or may be

2

JA1118

1    customizable for a niche.  This is necessitated by the fact

2    that no single solution universally applies to all disci-

3    plines, as noted above.  However, the resulting customized

4    archival implementation will differ from, for example, a

5    medical image to a laboratory or botanical image archive.  The

6    resulting customized image archive strategy may be very easy

7    to use for that application but will not easily translate to

8    other application areas.

9         Thus, the utility provided by market niche image

10   archiving software simultaneously makes the resulting

11   applications not useful to a wide spectrum of applications.

12   For example, tracking schemata that describes art history

13   categories might not apply to high-tech advertising.

14        Another type of archival mechanism is equipment-specific

15   archiving.  In this implementation a particular type of image

16   device, such as a still camera, a video camera, a digital

17   scanner, or other form of imaging means has its own scheme for

18   imprinting or recording archival information relating to the

19   image that is recorded.

20        Thus, using different image-producing devices in the

21   image production chain can cause major problems.  For example,

22   mixing traditional photography (with its archive notation)

23   with digital touch-up processing(with its own different

24   archive notation).  Further, equipment-specific archive

25   schemes do not automate well, since multiple devices within

26   the same archive may use incompatible enumeration schemata.

3

1    Certain classification approaches assume single device

2    input.  Thus, multiple devices must be tracked in separate

3    archives, or are tracked as archive exceptions.  This makes

4    archiving maintenance more time consuming and inefficient.

5    For example, disciplines that use multiple cameras

6    concurrently, such as sports photography and photo-journalism,

7    confront this limitation.

8    Yet other archive approaches support particular media

9    formats, but not multiple media formats simultaneously

10   occurring in the archive.  For example, an archive scheme may

11   support conventional silver halide negatives but not video or

12   digital media within the same archive.

13   Thus, this approach fails when tracking the same image

14   across different media formats, such as tracking negative,

15   transparency, digital, and print representation of the same

16   image.

17   Yet another archive approach may apply to a particular

18   state of the image, as the initial or final format, but does

19   not apply to the full life-cycle of all image.  For example,

20   some cameras time- and date-stamp negatives, while database

21   software creates tracking information after processing.  While

22   possibly overlapping, the enumeration on the negatives differs

23   from the enumeration created for archiving.  In another

24   example, one encoding may track images on negatives and

25   another encoding may track images on prints. However, such a

26   state-specific approach makes it difficult automatically to

4

1   track image histories and lineages across all phases of an

2   image's life-cycle, such as creation, processing, editing,

3   production, and presentation.

4       Thus, tracking information that uses different encoding

5   for different image states is not particularly effective since

6   maintaining multiple enumeration strategies creates potential

7   archival error, or at a minimum, will not translate well from

8   one image form to another.

9       Some inventions that deal with recording information

10  about images have been the subject of U.S. patents in the

11  past.  U.S. Patent No. 5579067 to *Wakabayashi* describes a

12  "Camera Capable of Recording Information." This system

13  provides a camera which records information into an

14  information recording area provided on the film that is loaded

15  in the camera.  If information does not change from frame to

16  frame, no information is recorded.  However, this invention

17  does not deal with recording information on subsequent

18  processing.

19      U.S. Patent No. 5455648 to *Kazami* was granted for a "Film

20  Holder or for Storing Processed Photographic Film." This

21  invention relates to a film holder which also includes an

22  information holding section on the film holder itself. This

23  information recording section holds electrical, magnetic, or

24  optical representations of film information. However, once the

25  information is recorded, it is to used for purposes other than

26  to identify the original image.

5

1        U.S. Patent No. 5649247 to *Itoh* was issued for an

2        "Apparatus for Recording Information of Camera Capable of

3        Optical Data Recording and Magnetic Data Recording." This

4        patent provides for both optical recording and magnetic

5        recording onto film.  This invention is an electrical circuit

6        that is resident in a camera system which records such

7        information as aperture value, shutter time, photo metric

8        value, exposure information, and other related information

9        when an image is first photographed.  This patent does not

10       relate to recording of subsequent operations relating to the

11       image.

12       U.S. Patent 5319401 to *Hicks* was granted for a "Control

13       System for Photographic Equipment." This invention deals with

14       a method for controlling automated photographic equipment such

15       as printers, color analyzers, film cutters.  This patent

16       allows for a variety of information to be recorded after the

17       images are first made.  It mainly teaches methods for

18       production of pictures and for recording of information

19       relating to that production.  For example, if a photographer

20       consistently creates a series of photographs which are off

21       center, information can be recorded to offset the negative by

22       a pre-determined amount during printing.   Thus the

23       information does not accompany the film being processed but it

24       does relate to the film and is stored in a separate database.

25       The information stored is therefore not helpful for another

26       laboratory that must deal with the image that is created.

JA1122

1    U.S. Patent 5193185 to *Lanter* was issued for a "Method
2    and Means for Lineage Tracing of a Spatial Information
3    Processing and Database System." This Patent relates to
4    geographic information systems.  It provides for "parent" and
5    "child" links that relate to the production of layers of
6    information in a database system.  Thus while the this patent
7    relates to computer-generated data about maps, it does not
8    deal with how best too transmit that information along a chain
9    of image production.

10   U.S. Patent No. 5008700 to *Okamoto* was granted for a
11   "Color Image Recording Apparatus using Intermediate Image
12   Sheet." This patent describes a system, where a bar code is
13   printed on the image production media which can then be read
14   by an optical reader.  This patent does not deal with
15   subsequent processing of images which can take place or
16   recording of information that relates to that subsequent
17   processing.

18   U.S. Patent No. 4728978 was granted to *Inoue* for a
19   "Photographic Camera." This patent describes a photographic
20   camera which records information about exposure or development
21   on an integrated circuit card which has a semiconductor
22   memory.  This card records a great deal of different types of
23   information and records that information onto film.  The
24   information which is recorded includes color temperature
25   information, exposure reference information, the date and
26   time, shutter speed, aperture value, information concerning

7

**JA1123**

1   use of a flash, exposure information, type of camera, film

2   type, filter type, and other similar information.  The patent

3   claims a camera that records such information with information

4   being recorded on the integrated circuit court.  There is no

5   provision for changing the information or recording subsequent

6   information about the processing of the image nor is there

7   described a way to convey that information through many

8   generations of images.

9       Thus a need exists to provide a uniform tracking

10  mechanism for any type of image, using any type of image-

11  producing device, which can describe the full life-cycle of an

12  image and which can translate between one image state and

13  another and between one image forming mechanism and another.

14  **Summary of the Invention**

15      It is therefore an object of the present invention to

16  create an archival tracking method that includes relations,

17  descriptions, procedures, and implementations for universally

18  tracking images.

19      It is a further object of the present invention to create

20  an encoding schemata that can describe and catalogue any image

21  produced on any media, by any image producing device, that can

22  apply to all image producing disciplines.

23      It is a further object of the present invention to

24  implement to archival scheme on automated data processing

25  means that exist within image producing equipment.

26      It is a further object of the present invention to apply

8

1     to all image-producing devices.

2          It is a further object of the present invention to

3     support simultaneous use of multiple types of image-producing

4     devices.

5          It is a further object of the present invention to

6     support simultaneous use of multiple image-producing devices

7     of the same type.

8          It is a further object of the present invention to

9     provide automatic parent-child encoding.

10         It is a further object of the present invention to track

11    image lineages and family trees.

12         It is a further object of the present invention to

13    provide a serial and chronological sequencing scheme that

14    uniquely identifies all images in an archive.

15         It is a further object of present invention to provide an

16    identification schemata that describes physical attributes of

17    all images in an archive.

18         It is a further object of the present invention to

19    separate classificatory information from tracking information.

20         It is a further object of the present invention to

21    provide an enumeration schemata applicable to an unlimited set

22    of media formats used in producing images.

23         It is a further object of the present invention to apply

24    the archival scheme to all stages of an image's life-cycle,

25    from initial formation to final form.

26         It is a further object of the present invention to create

9

1    self-generating archives, through easy assimilation into any

2    image-producing device.

3        It is a further object of the present invention to create

4    variable levels of tracking that are easily represented by

5    current and arriving barcode symbologies, to automate data

6    transmission across different technologies (e.g., negative to

7    digital to print).

8        These and other objects of the present invention will

9    become clear to those skilled in the art from the description

10    that follows.

11    **Brief Description of the Invention**

12        The present invention is a universal image tracking

13    method and apparatus for tracking and documenting images

14    through their complete life-cycle, regardless of the device,

15    media, size, resolution, etc., used in producing them.

16        Specifically, the automated system for image archiving

17    ("ASIA") encodes, processes, and decodes numbers that

18    characterize images and image related data.  Encoding and

19    decoding takes the form of a 3-number association: 1) location

20    number (serial and chronological location), 2) image number

21    (physical attributes), and 3) parent number (parent-child

22    relations).

23    **Brief Description of the Drawings**

24    Figure 1.  Invention

25    Figure 1A. Overview of original image input

26    Figure 1B. Overview of lineage information generation

1    Figure 2.  Formal specification

2    Figure 3    Encoding

3    Figure 4    Decoding

4    Figure 5    Implementation

5    Figure 6    Parent-child tree

6    Figure 7    ASIA

7    **Detailed Description of the Invention**

8         The present invention is a method and apparatus for

9    formally specifying relations for constructing image tracking

10   mechanisms, and providing an implementation that includes an

11   encoding schemata for images regardless of form or the

12   equipment on which the image is produced.

13        Referring to Figure 1 an overview of the present

14   invention is shown.  This figure provides the highest-level

15   characterization of the invention.  Figure 1 itself represents

16   all components and relations of the ASIA.

17   **Reference conventions**.  Since Figure 1 organizes all high-

18   level discussion of the invention, this document introduces

19   the following conventions of reference.

20        •    Whenever the text refers to "the invention" or to

21             the, *"Automated System for Image Archiving"*, it

22             refers to the aggregate components and relations

23             identified in Figure 1.

24        •    Parenthesized numbers to the left of the image in

25             Figure 1 **Invention** represent **layers** of the

26             invention.  For example, 'Formal specification'

11

**JA1127**

1        represents the "first layer" of the invention.

2        In Figure 1 **Invention**, each box is a hierarchically

3    derived sub-component of the box above it.  'ASIA' is a sub-

4    component of 'Formal objects', which is a sub-component of

5    'Formal specification'.  By implication, thus, ASIA is also

6    hierarchically dependent upon 'Formal specification.'  The

7    following descriptions apply.

8        **Formal specification 1**. This represents (a) the formal

9            specification governing the creation of systems of

10           automatic image enumeration, and (b) all derived

11           components and relations of the invention's

12           implementation.

13       **Formal objects 2**. This represents implied or stated

14           implementations of the invention.

15       **ASIA 3**. This is the invention's implementation software

16           offering.

17       It is useful to discuss an overview of the present

18   invention as a framework for the more detailed aspects of the

19   invention that follow.  Referring first to figure 1A an

20   overview of the original image input process according to the

21   present invention is shown.  The user first inputs information

22   to the system to provide information on location, author, and

23   other record information. Alternatively, it is considered to

24   be within the scope of the present invention for the equipment

25   that the user is using to input the required information.  In

26   this manner, data is entered with minimum user interaction.

12

1   This information will typically be in the format of the

2   equipment doing the imaging.  The system of the present

3   invention simply converts the data via a configuration

4   algorithm, to the form needed by the system for further

5   processing.  The encoding/decoding engine 12 receives the user

6   input information, processes into, and determines the

7   appropriate classification and archive information to be in

8   coded 14.  The system next creates the appropriate

9   representation 16 of the input information and attaches the

10  information to the image in question 18.  Thereafter the final

11  image is output 20, and comprises both the image data as well

12  as the appropriate representation of the classification or

13  archive information.  Such archive information could be in

14  electronic form seamlessly embedded in a digital image or such

15  information could be in the form of a barcode or other

16  graphical code that is printed together with the image on some

17  form of hard copy medium.

18      Referring to figure 1B the operation of the system on an

19  already existing image is described.  The system first

20  receives the image and reads the existing archival barcode

21  information 30.  This information is input to the

22  encoding/decoding engine 32.  New input information is

23  provided 36 in order to update the classification and archival

24  information concerning the image in question.  This

25  information will be provided in most cases without additional

26  user intervention.  Thereafter the encoding/decoding engine

13

JA1129

1    determines the contents of the original barcoded information

2    and arrives at the appropriate encoded data and lineage

3    information 34. This data and lineage information is then

4    used by the encoding/decoding engine to determine the new

5    information that is to accompany the image 38 that is to be

6    presented together with the image in question. Thereafter the

7    system attaches the new information to the image 40 and

8    outputs the new image together with the new image related

9    information 42. In this fashion, the new image contains new

10   image related information concerning new input data as well as

11   lineage information of the image in question. Again, such

12   archive information could be in electronic form as would be

13   the case for a digital image or such information could be in

14   the form of a barcode or other graphical code that is printed

15   together with the image on some form of hard copy medium.

16         Referring to Figure 2 the formal relations governing

17   encoding **4**, decoding **5**, and implementation of the relations **6**

18   are shown. Encoding and decoding are the operations needed to

19   create and interpret the information on which the present

20   invention relies. These operations in conjunction with the

21   implementation of the generation of the lineage information

22   give rise to the present invention. These elements are more

23   fully explained below.

24   **Encoding**

25   **Introduction**. This section specifies the formal relations

26   characterizing all encoding of the invention, as identified in

14

1   Figure 2 **Formal specification**.

2       Rather than using a "decision tree" model (e.g., a flow

3   chart), Figure 3 uses an analog circuit diagram.  Such a

4   diagram implies the traversal of all paths, rather than

5   discrete paths, which best describes the invention's, encoding

6   relations.

7   **Component descriptions**.  Descriptions of each component in

8   Figure 3 **Encoding** follow.

9       Apparatus input **301** generates raw, unprocessed image

10  data, such as from devices or software.  Apparatus input could

11  be derived from image data, for example, the digital image

12  from a scanner or the negative from a camera system.

13      Configuration input **303** specifies finite bounds that

14  determine encoding processes, such as length definitions or

15  syntax specifications.

16      The resolver **305** produces characterizations of images.

17  It processes apparatus and configuration input, and produces

18  values for variables required by the invention.

19      Using configuration input, the timer 307 produces time

20  stamps.  Time-stamping occurs in 2 parts:

21      The clock **309** generates time units from a mechanism.  The

22  filter **311** processes clock output according to specifications

23  from the configuration input.  Thus the filter creates the

24  output of the clock in a particular format that can be used

25  later in an automated fashion.  Thus the output from the clock

26  is passed through the filter to produce a time-stamp.

15

1    User data processing **313** processes user specified

2    information such as author or device definitions, any other

3    information that the user deems essential for identifying the

4    image produced, or a set of features generally governing the

5    production of images.

6    Output processing **315** is the aggregate processing that

7    takes all of the information from the resolver, timer and user

8    data and produces the final encoding that represents the image

9    of interest.

10   **Decoding**

11   Referring to Figure 4 the relationships that characterize all

12   decoding of encoded information of the present invention are

13   shown.  The decoding scheme shown in Figure 4 specifies the

14   highest level abstraction of the formal grammar characterizing

15   encoding.  The set of possible numbers (the "language") is

16   specified to provide the greatest freedom for expressing

17   characteristics of the image in question, ease of decoding,

18   and compactness of representation.  This set of numbers is a

19   regular language (i.e., recognizable by a finite state

20   machine) for maximal ease of implementations and computational

21   speed. This language maximizes the invention's applicability

22   for a variety of image forming, manipulation and production

23   environments and hence its robustness.

24   Decoding has three parts: location, image, and parent.

25   The "location" number  expresses an identity for an image

26   through use of the following variables.

16

**JA1132**

| | | |
|---|---|---|
| 1 | generation | Generation depth in tree structures. |
| 2 | sequence | Serial sequencing of collections or lots |
| 3 | | of images. |
| 4 | time-stamp | Date and time recording for chronological |
| 5 | | sequencing. |
| 6 | author | Creating agent. |
| 7 | device | Device differentiation, to name, identify, |
| 8 | | and distinguish currently used devices |
| 9 | | within logical space. |
| 10 | locationRes | Reserved storage for indeterminate future |
| 11 | | encoding. |
| 12 | locationCus | Reserved storage for indeterminate user |
| 13 | | customization. |

14     The "image" number expresses certain physical attributes of an
15     image through the following variables.

| | | |
|---|---|---|
| 16 | category | The manner of embodying or "fixing" a |
| 17 | | representation, e.g., "still" or "motion". |
| 18 | size | Representation dimensionality. |
| 19 | bit-or-push | Bit depth (digital dynamic range) or push |
| 20 | | status of representation. |
| 21 | set | Organization corresponding to a collection |
| 22 | | of tabular specifiers, e.g. a "Hewlett |
| 23 | | Packard package of media tables. |
| 24 | media | Physical media on which representation |
| 25 | | occurs. |
| 26 | resolution | Resolution of embodiment on media. |

| | | |
|---|---|---|
| 1 | stain | Category of fixation-type onto media, e.g. |
| 2 | | "color". |
| 3 | format | Physical form of image, e.g. facsimile, |
| 4 | | video, digital, etc. |
| 5 | imageRes | Reserved storage for indeterminate future |
| 6 | | encoding. |
| 7 | imageCus | Reserved storage for user customization. |

8   The "parent" number expresses predecessor image identity

9   through the following variables.

| | | |
|---|---|---|
| 10 | time-stamp | Date, and time recording for chronological |
| 11 | | sequencing. |
| 12 | parentRes | Reserved storage, for indeterminate future |
| 13 | | encoding. |
| 14 | parentCus | Reserved storage, for indeterminate user |
| 15 | | customization. |

16   Any person creating an image using "location," "image,"

17   and "parent" numbers automatically constructs a

18   representational space in which any image-object is uniquely

19   identified, related to, and distinguished from, any other

20   image-object in the constructed representational space.

21   **Implementation**

22   Referring to figure 5, the formal relations characterizing all

23   implementations of the invention are shown. Three components

24   and two primary relations characterize any implementation of

25   the encoding and decoding components of the present invention.

26   Several definitions of terms are apply.

JA1134

1        "**schemata**" **51** are encoding rules and notations.

2        "**engine** " **53** refers to the procedure or procedures for

3        processing data specified in a schemata.

4        "**interface**" **55** refers to the structured mechanism for

5        interacting with an engine.

6        The engine and interface have interdependent relations,

7    and combined are hierarchically subordinate to schemata.  The

8    engine and interface are hierarchically dependent upon

9    schemata.

10   **Formal objects**

11   The present invention supports the representation of (1)

12   parent-child relations, (2) barcoding, and (3) encoding

13   schemata.  While these specific representations are supported,

14   the description is not limited to these representations but

15   may also be used broadly in other schemes of classification

16   and means of graphically representing the classification data.

17   **Parent-child implementation**

18   Parent-child relations implement the 'schemata' and 'engine'

19   components noted above.  The following terms are used in

20   conjunction with the parent child implementation of the

21   present invention:

22       "**conception date**" means the creation date/time of image.

23       "**originating image**" means an image having no preceding

24       conception date.

25       "**tree**"  refers to all of the parent-child relations

26       descending from an originating image.

19

1    **"node"** refers to any item in a tree.

2    **"parent"** means any predecessor node, for a given node.

3    **"parent identifier"** means an abbreviation identifying the

4    conception date of an image's parent.

5    **"child"** means a descendent node, from a given node.

6    **"lineage"** means all of the relationships ascending from a

7    given node, through parents, back to the originating

8    image.

9    **"family relations"** means any set of lineage relations, or

10   any set of nodal relations.

11   A conventional tree structure describes image relations.

12   **Encoding**

13   Database software can trace parent-child information, but

14   does not provide convenient, universal transmission of these

15   relationships across all devices, media, and technologies that

16   might be used to produce images that rely on such information.

17   ASIA provides for transmission of parent-child information

18   both (1) inside of electronic media, directly; and (2) across

19   discrete media and devices, through barcoding.

20   This flexibility implies important implementational

21   decisions involving time granularity and device production

22   speed.

23   **Time granularity & number collision.**  This invention

24   identifies serial order of children (and thus parents) through

25   date- and time-stamping.  Since device production speeds for

26   various image forming devices vary across applications, e.g.

20

1   from seconds to microseconds, time granularity that is to be

2   recorded must at least match device production speed. For

3   example, a process that takes merely tenths of a second must

4   be time stamped in at least tenths of a second.

5       In the present invention any component of an image

6   forming system may read and use the time stamp of any other

7   component. However, applications implementing time-stamping

8   granularities that are slower than device production speeds

9   may create output collisions, that is, two devices may produce

10  identical numbers for different images. Consider an example

11  in which multiple devices would process and reprocess a given

12  image during a given month. If all devices used year-month

13  stamping, they could reproduce the same numbers over and over

14  again.

15      The present invention solves this problem by deferring

16  decisions of time granularity to the implementation.

17  Implementation must use time granularity capable of capturing

18  device output speed. Doing this eliminates all possible

19  instances of the same number being generated to identify the

20  image in question. In the present invention, it is

21  recommended to use time intervals beginning at second

22  granularity, however this is not meant to be a limitation but

23  merely a starting point to assure definiteness to the encoding

24  scheme. In certain operations, tenths of a second (or yet

25  smaller units) may be more appropriate in order to match

26  device production speed.

21

1   **Specification**

2       All images have parents, except for the originating image

3   which has a null ('0') parent.  Parent information is recorded

4   through (1) a generation depth identifier derivable from the

5   *generation* field of the location number, and (2) a parent

6   conception date, stored in the parent number. Two equations

7   describe parent processing.  The first equation generates a

8   parent identifier for a given image and is shown below.

9   **Equation 1: Parent identifiers.**  A given image's parent

10  identifier is calculated by decrementing the location number's

11  *generation* value (i.e. the generation value of the given

12  image), and concatenating that value with the parent number's

13  parent value.  Equation 1 summarizes this:

14

15          *parent identifier = prev(generation) • parent*          (1)

16

17      To illustrate parent-child encoding, consider an image

18  identified in a given archive by the following key:

19      B0106-19960713T195913JSA:1-19 S135F-OFCP00100S:2T-0123 19960613T121133

20      In this example the letter "B" refers to a second

21  generation.  The letter "C" would mean a third generation and

22  so forth. The numbers "19960713" refers to the day and year of

23  creation, in this case July 13, 1996.  The numbers following

24  the "T" refers to the time of creation to a granularity of

25  seconds, in this case 19:59:13 (using a 24 hour clock).  The

26  date and time for the production of the parent image on which

27  the example image relies is 19960613T121133, or June 13, 1996

22

1   at 12:11:33.

2         Equation 1 constructs the parent identifier:

3

**JA1139**

1      *parent identifier = prev(generation) • parent*

2    or,

3      parent identifier = prev(B) • (19960613T121133)

4                = A • 19960613T121133

5                  = A19960613T121133

6

7    The location number identifies a B (or "2nd") generation

8    image. Decrementing this value identifies the parent to

9    be from the **A** (or "1st") generation.  The parent number

10    identifies the *parent* conception date and time,

11    (19960613T121133).  Combining these, yields the parent

12    identifier A19960613T121133, which uniquely identifies

13    the parent to be generation A, created on 13 June 1996 at

14    12:11:13PM (T121133).

15    Equation 2 evaluates the number of characters needed to

16    describe a given image lineage.

17  **Equation 2: Lineage lengths.** Equation 2 calculates the number

18  of characters required to represent any given generation depth

19  and is shown below:

20

21    *lineage = len(key) + (generation -1) * len(   parent )   (2)*
22    *length          ( depth   )    (identifier)*
23

24  **Example: 26 generations, $10^{79}$ family relations.**  Providing a 26

25  generation depth requires a **1** character long definition for

26  *generation* (i.e. A-Z).  Providing 1000 possible

27  transformations for each image requires millisecond time

24

1  encoding, which in turn requires a 16 character long *parent*

2  definition (i.e. gen. 1-digit, year-4 digit, month 2-digit,

3  day 2-digit, hour 2-digit, min. 2-digit, milliseconds 3-

4  digit). A 1 character long *generation* and 16 character long

5  *parent* yield a 17 character long parent identifier.

6      Referring to Figure 6, the parent child encoding of the

7  present invention is shown in an example form. The figure

8  describes each node in the tree, illustrating the present

9  invention's parent-child support.

10      601 is a 1st generation original color transparency.

11      603 is a 2nd generation 3x5 inch color print, made from

12          parent 601.

13      605 is a 2nd generation 4x6 inch color print, made from

14          parent 601.

15      607 is a 2nd generation 8x10 inch color internegative,

16          made from parent 601.

17      609 is a 3rd generation 16x20 inch color print, made from

18          parent 607.

19      611 is a 3rd generation 16x20 inch color print, 1 second

20          after 609, made from parent 607.

21      613 is a 3rd generation 8x10 inch color negative, made

22          from parent 607.

23      615 is a 4th generation computer 32x32 pixel RGB

24          "thumbnail" (digital), made from parent 611.

25      617 is a 4th generation computer 1280x1280 pixel RGB

26          screen dump (digital), 1 millisecond after 615, made

1       from parent 611.

2       619 is a 4th generation 8.5x11 inch CYMK print, from

3           parent 611.

4       This tree (Figure 6) shows how date- and time-stamping of

5    different granularities (e.g., nodes 601,615, and 617)

6    distinguish images and mark parents.  Thus, computer screen-

7    dumps could use millisecond accuracy (e.g., 615,617), while a

8    hand-held automatic camera might use second granularity (e.g.,

9    601).  Such variable date,- and time-stamping guarantees (a)

10   unique enumeration and (b) seamless operation of multiple

11   devices within the same archive.

12   **Applications**

13   The design of parent-child encoding encompasses several

14   specific applications.  For example, such encoding can provide

15   full lineage disclosure, and partial data disclosure.

16   **Application 1: Full lineage disclosure, partial data**

17   **disclosure**

18   Parent-child encoding compacts lineage information into parent

19   identifiers.  Parent identifiers disclose parent-child

20   tracking data, but do not disclose other location or image

21   data.  In the following example a given lineage is described

22   by (1) a fully specified key (location, image, and parent

23   association), and (2) parent identifiers for all previous

24   parents of the given key.  Examples illustrates this design

25   feature.

26       **Example 1: 26 generations, $10^{79}$ family relations.**

26

1    Providing a 26 generation depth requires a **1** character

2    long definition for *generation*.  Providing 1000 possible

3    transformations for each image requires millisecond time

4    encoding, which in turn requires a **16** character long

5    *parent* definition.  A 1 character long *generation* and 16

6    character long *parent* yield a 17 character long parent

7    identifier (equation 1).

8    Documenting all possible family relations requires

9    calculating the sum of all possible nodes. This is a

10   geometric sum increasing by a factor of 1000 over 26

11   *generations*.  The geometric sum is calculated by the

12   following equation:

$$sum = \frac{factor^{(generations\ +1)} - 1}{factor - 1} \qquad (3)$$

or,

$$sum = \frac{1000^{(26+1)} - 1}{1000 - 1}$$

$$= \frac{10^{81} - 1}{999}$$

$$= 1.00 \cdot 10^{79}$$

27   For 26 generations, having 1000 transformations per

28   image, the geometric sum yields $10^{79}$ possible family

29   relations.   To evaluate the number of characters needed

30   to represent a maximum lineage encoded at millisecond

31   accuracy across 26 generations, the following equation is

32   used (noted earlier):

33

27

```
1        lineage = len(key) + (generation) -1 * len(   parent )
2        length                  (  depth   )          (identifier)
3
4         or,
```

28

```
1                        lineage    = (100) + (26 - 1) * (17)
2                        length
3                                   =    525
4

5

6       Thus, the present invention uses 525 characters to encode

7       the maximum lineage in an archive having 26 generations

8       and 1000 possible transformations for each image, in a

9       possible total of $10^{79}$ family relations.

10      Example 2: 216 generations, $10^{649}$ family relations.   The

11      upper bound for current 2D symbologies (e.g., PDF417,

12      Data Matrix, etc.) is approximately 4000 alphanumeric

13      characters per symbol.  The numbers used in this example

14      illustrate, the density of information that can be

15      encoded onto an internally sized 2D symbol.

16      Providing a 216 generation depth requires a 2 character

17      long definition for generation.  Providing 1000 possible

18      transformations for each image requires millisecond time

19      encoding, which in turn requires a 16 character long

20      parent definition. A 2 character long generation and 16

21      character long parent yield an 18 character long parent

22      identifier.    To evaluate the number of characters

23      needed to represent a maximal lineage encoded at

24      millisecond accuracy across 216 generations, we recall

25      equation 2:

26
27      lineage = len(key) + (generation) -1 * len(  parent )
28      length                ( depth    )        (identifier)
29  or,
30
```

29

```
1              lineage = (100) + (216-1) * (18)
2              length
3                     = 3970
4
5
```

6       In an archive having 216 generations and 1000 possible

7       modifications for each image, a maximal lineage encoding

8       requires **3970 characters**.

9       Documenting all possible family relations requires

10      calculating the sum of all possible nodes.  This is a

11      geometric sum increasing by a *factor* of 1000 over 216

12      *generations*.  To calculate the geometric sum, we recall

13      equation 3:

14
15
16      $$sum = \frac{factor^{(generations+1)} - 1}{factor - 1}$$
17
18      or,
19
20
21      $$sum = \frac{1000^{(216+1)} - 1}{1000 - 1}$$
22
23
24
25      $$= \frac{10^{651} - 1}{999}$$
26
27      $$= 1.00 \cdot 10^{649}$$
28
29

30      For 216 generations, having 1000 transformations per

31      image, the geometric sum yields $10^{641}$ **possible family**

32      **relations**. Thus, this invention uses **3970 characters** to

33      encode a maximal lineage, in an archive having 216

34      generations and 1000 possible transformations for each

35      image, in a possible total of $10^{649}$ family relations.

30

1    **Conclusion.** The encoding design illustrated in **Application 1:**
2    **Full lineage disclosure, partial data disclosure** permits exact
3    lineage tracking.  Such tracking discloses full data for a
4    given image, and parent identifier data for a given image's
5    ascendent family.  Such design protects proprietary
6    information while providing full data recovery for any lineage
7    by the proprietor.

8         A 216 generation depth is a practical maximum for 4000
9    character barcode symbols, and supports numbers large enough
10   for most conceivable applications.  Generation depth beyond
11   216 requires compression and/or additional barcodes or the use
12   of multidimensional barcodes.  Furthermore, site restrictions
13   may be extended independently of the invention's apparati.
14   Simple compression techniques, such as representing numbers
15   with 128 characters rather than with 41 characters as
16   currently done, will  support 282 generation depth and $10^{850}$
17   possible relations.
18   **Application 2: Full lineage disclosure, full data disclosure**
19   In direct electronic data transmission, the encoding permits
20   full transmission of all image information without
21   restriction, of any archive size and generation depth.  Using
22   2D+ barcode symbologies, the encoding design permits full
23   lineage tracking to a 40 generation depth in a single symbol,
24   based on a 100 character key and a theoretical upper bound of
25   4000 alphanumeric characters per 2D symbol.  Additional
26   barcode symbols can be used when additional generation depth

31

1    is needed.

2    **Application 3: Non-tree-structured disclosure**

3    The encoding scheme of the present invention has extensibility

4    to support non-tree-structured, arbitrary descent relations.

5    Such relations include images using multiple sources already

6    present in the database, such as occurring in image overlays.

7    **Conclusion**

8    **Degrees of data disclosure.**  The invention's design supports

9    degrees of data disclosure determined by the application

10   requirements.  In practicable measures the encoding supports:

11          1.    Full and partial disclosure of image data;

12          2.    Lineage tracking to any generation depth, using

13                direct electronic data transmission;

14          3.    Lineage tracking to restricted generation depth,

15                using barcode symbologies, limited only by symbology

16                size restrictions.

17          Further, ASIA supports parent-child tracking through

18   time-stamped parent-child encoding. No encoding restrictions

19   exist for electronic space.  Physical boundaries within 2D

20   symbology space promote theoretical encoding guidelines,

21   although the numbers are sufficiently large so as to have

22   little bearing on application of the invention.   In all

23   cases, the invention provides customizable degrees of data

24   disclosure appropriate for application in commercial,

25   industrial, scientific, medical, etc., domains.

26   **Barcoding implementation**

32

1    **Introduction.** The invention's encoding system supports

2    archival and classifications schemes for all image-producing

3    devices, some of which do not include direct electronic data

4    transmission. Thus, this invention's design is optimized to

5    support 1D-3D+ barcode symbologies for data transmission

6    across disparate media and technologies.

7    **1D symbology**

8         Consumer applications may desire tracking and retrieval

9    based on 1 dimensional (1D) linear symbologies, such as Code

10   39. Table 5 shows a configuration example which illustrates a

11   plausible encoding configuration suitable for consumer

12   applications.

13        The configuration characterized in Table 5 yields a

14   maximal archive size of 989,901 images (or 19,798 images a

15   year for 50 years), using a 4 digit *sequence* and 2 digit *unit*.

16   This encoding creates 13 character keys and 15 character long,

17   Code 39 compliant labels. A database holds full location,

18   image, and parent number associations, and prints convenient

19   location number labels, for which database queries can be

20   made.

21

| | | |
|---|---|---|
| 22  *<generation>* | = | 1 character |
| 23  ** | = | 4 digits |
| 24  *<date>* | = | 6 digits |
| 25  *<unit>* | = | 2 digits |
| 26  constants | = | 2 characters |
| 28  **Total** | = | 15 characters |

29

30        Table 5: Configuration example

31

33

1   With such a configuration, a conventional 10 mil, Code 39

2   font, yields a 1.5 inch label.  Such a label conveniently fits

3   onto a 2x2 inch slide, 3x5 inch prints, etc.  Note, that this

4   encoding configuration supports records and parent-child

5   relations through a conventional "database key" mechanism, not

6   through barcode processing.

7   **Conclusion.**  The ASIA implementation provides native 1D

8   symbology support sufficient for many consumer applications.

9   However, 2D symbology support is preferred since it guarantees

10  data integrity. 2D symbology also provides greater capacity

11  and so can support a richer set of functionality provided by

12  the ASIA.

13  **2D symbology**

14      Comprehensive tracking suitable for commercial,

15  industrial, and scientific applications is achievable

16  electronically, and/or through 2 dimensional (2D), stacked

17  matrix or full matrix symbologies, such as PDF417, Data

18  Matrix, etc.  These symbologies have adequate capacity to

19  support complex implementations of the various archival and

20  classification schemes presented.

21  **Example application**. 2D symbology can support a rich set of

22  the present invention's encoding.  The following examples

23  present some of the possibilities.

24  1.   **Parent-child tracking**. 2D symbology can support

25       significant parent-child encoding including parent-child

26       relations, lineage, tracking mechanisms, and derivative

JA1150

1      applications.

2   2.    **Copyright protection**.  Combined with certification

3         programs, 2D image encodings of this invention can

4         enhance copyright protection.  Referential tracking to

5         production source can be provided on any image, which can

6         include partial or full disclosure of image data.

7         Encryption technologies can further enhance

8         authentication control.

9   3.    **Migration paths**. 2D symbology also includes important

10        potential migration paths for encoding schemata in

11        commercial and industrial image management. 2D

12        applications may include  arbitrary encryption; variable

13        sizing; Reed-Solomon error correction (e.g., providing

14        full data recovery with 50% symbol loss); printability

15        through ink, invisible ink, etching, embossing, exposing

16        (e.g., onto negatives or transparencies); and efficient

17        scan rates suitable for automated film processing

18        equipment.

19        In summary, 2D symbology can facilitate universal data

20        transmission, regardless of the producing technology; or data

21        transmission *from* any form of image-producing device *to* any

22        other form of image-producing device.

23        Further, the present invention provides viable 1D

24        symbology support at the implementation layer, and a specific

25        implementation with the ASIA software.  However, with 1D

26        symbology the same number or classification being assigned to

JA1151

1    different images is, in a 1D implementation, theoretically

2    possible.

3        Use of 2D symbology barcoding eliminates the possibility

4    of ambiguity resulting from the same classification or archive

5    identifiers being assigned to the same image and is therefore

6    preferred. The use of 2D symbology together with the

7    classification and archiving scheme of the present invention

8    can protect any granularity of proprietary image data; provide

9    unobtrusive labeling on prints or print description plates;

10    expose archival encoding directly onto media at exposure,

11    processing, and/or development time; and yield rapid data

12    collection through sorting machines for media, such as

13    transparencies, prints, etc. ASIA provides native support of

14    2D Data Matrix to facilitate such application development.

15        3D+ (holographic) symbologies will permit tracking

16    greater lineage depths in single symbols. Supporting this 3D

17    implementation requires no additional complexity to the

18    system.

19    **Schemata**

20    This section describes the invention's schemata, characterized

21    through the tables that follow. Tables 6 and 7, provide a

22    guide to the organization of schemata of the present

23    invention. Tables 9-17 describe the conventions, syntax, and

24    semantics of *location numbers, image numbers,* and *parent*

25    *numbers.* Tables 19-26 fully expand the semantics listed in

26    Table 13 entitled "Image semantics."

1       Table 6 (following) lists all tables that specify the
2   classification scheme of the present invention.  In this
3   table, exact table names are identified together with a brief
4   description of each table which describes the contents of that
5   table.
6

**JA1153**

| Tables | Description |
|--------|-------------|
| Table 9 Conventions | Conventions for all tables |
| Table 10 Syntax | Syntactic summaries |
| Table 11 Size/res. syntax | " |
| Table 12 Locations semantics | Semantic summaries |
| Table 13 Image semantics | " |
| Table 14 Parent semantics | " |
| Table 15 Measure semantics | " |
| Table 15 Software Packages | " |
| Table 16 Format semantics | " |
| Table 17 Size examples | Illustrations of *size* |
| Table 18 Resolution examples | " |
| Table 19 Reserved media slots | Specifics for Table 13 |
| Table 20 Color transparency film | " |
| Table 21 Color negative film | " |
| Table 22 Black & White film | " |
| Table 23 Duplicating & internegative film | " |
| Table 24 Facsimile | " |
| Table 25 Prints | " |
| Table 26 Digital | " |

Table 6: Schemata tables

Similarly, Table 7 (following) entitled **Table groupings**

further groups the specification table by the categories in

which they are discussed in the following pages.

| Title | Table No. |
|-------|-----------|
| Conventions: | Table 9 |
| Syntax: | Tables 10-11 |
| Semantics: | Tables 12-16 |
| Examples: | Tables 17-18 |
| Media: | Tables 19-26 |

Table 7: Table groupings

**Conventions: Table 9**

Table 9 entitled **Conventions** fully specifies the

conventions governing all tabular information in the archival

and classification scheme of the present invention. In Table

38

JA1154

1    9, the column **Form** lists the conventions governing syntactic

2    items for all tables in of the present invention.  Specific

3    conventions are the following.

4         ●    *Emphasized* words indicate variables.

5         ●    ROMAN words indicate constant or literal values.

6         ●    Angle-brackets <> indicate required material.

7         ●    Brackets [] indicate optional material.

8         ●    Parentheses () indicate logical groupings.

9         ●    Braces {} indicate regular expression modifiers.

10        ●    The bar '|' character indicates an alternative.

11        ●    The star '*' character indicates "0 or more".

12        ●    The plus '+' character indicates "1 or more".

13        The columns **Variables** comprehensively lists all variables

14   used in Appendix **Schemata**.  Each variable represents a single

15   length character, so *n* represents any single digit (not any

16   number of any digit).  Specific variables are:

17             ●    '*l*' indicates any alphabetical character a-z

18             ●    '*n*' indicates any number 0-9

19             ●    '*c*' indicates any alphabetical character a-z,

20                  or a number 0-9

21             ●    '*y*' indicates a digit used to construct the

22                  year

23             ●    '*m*' indicates a digit used to construct the

24                  month

25             ●    '*d*' indicates a digit used to construct the day

26                  '*h*' indicates a digit used to construct the

39

**JA1155**

1          hour

2          't' indicates a digit used to construct the

3          minute

4      ●   's' indicates a digit used to construct the

5          second

6      ●   'i' indicates a digit used to construct a

7          fractional second.

8                          Table 9: Conventions

| Form | Description | Variables | Description |
|------|-------------|-----------|-------------|
| *emphasis* | variable | *l* | letter |
| ROMAN | constant | *n* | number |
| < > | required | *c* | class *ln* |
| [ ] | optional | | |
| ( ) | grouping | *y* | year |
| { } | modifier | *m* | month |
| \| | alteration | *d* | day |
| * | 0 or more | *h* | hour |
| + | 1 or more | *t* | minute |
| | | *s* | second |
| | | *i* | fractional second |

**Syntax: Tables 10-11**

Tables 10-11 strictly conform to the syntactic rules of
Table 9 **Conventions** (above).  Specifics are described
according to two logical divisions:

1.  ¶**Location, image, & parent syntax**.  This is
described in Table 10 entitled "Syntax."  Table 10 Syntax

JA1156

1    provides a compact summary of the present invention's

2    functionality.

3              2.   ¶**Size & resolution syntax**.  This is described in

4    Table 11 entitled "Size/res. syntax."  Table 11 **Size/res.**

5    **syntax** expands the syntax rules for the variable *size* and

6    *resolution,* introduced in Table 10.

7    **Location, image & parent syntax.**  In Table 10 **Syntax**, the *rows*

8    assigned to **Location, Image** and **Parent** respectively provide:

9         1.   An example of a number ('Example'), showing small

10             and large illustrations of the schemata.

11        2.   The names of each field used by a number ('Names').

12        3.   The specific syntactic rules governing a

13             number('Syntax').

14   The *columns* identify the type of number ('#'), category, and

15   row illustration.

16        The association of a *location number* and *image number*

17   guarantees a unique identification of every image in an

18   archive.  The association of a *location number, image number,*

19   and *parent number* guarantees unique identification and fully

20   recoverable patent-child relations.

21        **Location numbers** track serial and chronological location.

22   Specific fields are (a) required entries *generation, sequence,*

23   and *date*; and (b) optional entries *time, author, device, unit,*

24   *locationRes,* and *locationCus.*  The required entries guarantee

25   minimal tracking information and data consistency for basic

26   electronic sorting, while the optional entries provide

41

1   additional granularity for high volume tracking (there are no
2   theoretical size limitations).

3       **Image numbers** track primarily physical attributes of
4   images across devices, media types, and storage conditions.
5   Specific fields are (a) required entries *category size, media,*
6   *push* **or** *bit, resolution, stain,* and *format*; and (b) optional
7   entries, *imageRes* and *imageCus*. Either *push* or *bit* is always
8   required, but both are never permissible. The *format* field
9   determines whether *push* or *bit* is used: *bit* is used when
10  *format* is digitally related, otherwise *push* is used.

11      **Parent numbers** track the date and time of parent
12  conception, and optional data. Specific fields are (a) the
13  required entry *parent*, and (b) optional entries *parentRes* and
14  *parentCus*. The required entry encodes parent information for
15  a given child image, while the optional entries provide
16  specification extension and user customization.

42

43

Table 10: Syntax

| # | Category | Illustration |
|---|---|---|
| | **Location** | Example: small: A1040-199609; large: A1011-19920417T05365699CPG@2-12345:A1.Z2 |
| | | Names:   *\<generation\>*   *\<sequence\>*   *\<date\>*   *[time]*   *[author]*   *[device]*   *[unit]*   *[locationRes]*   *[locationCus]* |
| | | Syntax:   *\<l{+}\>*   *\<n{+}\>*   *\<yyyymm[dd]\>*   *[T hhtt[ss[i{+}]]]*   *[l{+}]*   *[@c{+}]*   *[-n{+}]*   *[.c{+}]*   *[:c{+}]* |
| | | : |
| | **Image** | Example: small: S135+1KCAM@0200S:2T; large: S135F-024GIF8@HP@0300DI:6D:1A2B.5E |
| | | Names:   *\<category\>*   *\<size\>*   *\<[push]\>|[bit]\>*   *\<media\>*   *[set]*   *\<resolution\>*   *\<stain\>*   *\<format\>*   *[imageRes]*   *[imageCus]* |
| | | Syntax:   *\<l{+}\>*   *\<nc{*}\>*   *\<[(-|+)n{+}]|[-n{+}]\>*   *\<lc{*}\>*   *[@ c{+}]*   *@\<c{+}\>*   *:\<n{+}\>*   *\<a{+}\>*   *[: c{+}]*   *[. c{+}]* |
| | | : |
| | **Parent** | Example: 19961231T235959; large: 19961231T235959999 |
| | | Names:   *\<parent\>*   *\<parentRes\>*   *\<parentCus\>* |
| | | Syntax:   *\<yyyymm[dd]\>[T hhtt[ss[i{+}]]]*   *[: c{+}]*   *[. c{+}]* |
| | | : |
| | | NB: Second accuracy is minimally recommended for parent-child encoding. Both (a) *parent* and (b) **Location's** *date* and *time* should use the same specification when possible. |

JA1159

Size & resolution syntax. Table 11 **Size/res. syntax** specifies syntactic rules governing the variables *size* and *resolution*, previously introduced in Table 10. Table 11 describes how the variables *size* and *resolution* express (a) dimension and (b) units of measure.

The row 'Names' indicates variable names, such as '*<measure>*' for the unit of measure. 'Syntax 1' and 'Syntax 2' are the canonical syntaxes.

Table 11: Size/res. syntax

| Category | Illustration | | | |
|----------|------|---|---|---|
| Names | *<dimension>* | | | *<measure>* |
| Syntax 1 | *<c{+}>* | | | *<lc{*}>* |
| Names | *<X-dimension>* | X | *<Y-dimension>* | *<measure>* |
| Syntax 2 | *<n{+}>* | X | *<n{+}>* | *<lc{*}>* |

NB: Variables *size* and *resolution* use either syntax form. Table 15 **Measure Semantics** lists *measure* values. Table 17 **Size examples** and 18 **Resolution examples** provide illustrations.

**Semantics: Tables 12-16**

**Introduction**. Tables 12-16 describe semantic conventions, and fully specify the syntactic rules of Tables 10-11. Values for all variables are *case insensitive*. Tables 12-16 describe the meanings of syntactic names, literal values, descriptions of syntactic elements, and lengths of all fields. Specifics are described according to the following conceptual divisions.

Location semantics      Table 12

Image semantics      Table 13

Parent semantics      Table 14

1    Measure semantics        Table 15

2    Format semantics         Table 16

3    **Location semantics**.  In Table 12 **Location semantics**, **Location**

4    indicates the location number classification.  The column **Name**

5    indicates the name of a given location number *field*, while the

6    column **Description,** describes what a *field* means.  For

7    example, the field *<date>* within the classification **Location,**

8    describes the date when the lot was made.

9        In the next column of Table 12, **Syntax,** Table 10's row

10   **Syntax** is relisted in vertical form.  The column **Literal** lists

11   the corresponding values or ranges of permissible values.  For

12   example, the **Syntax** '*-yyyy*' for the field *<date>* literally

13   expands into a permissible range of 0000-9,999 years.  The

14   next column **Description**, describes what the legal value means.

15   For example, '*yyyy*' is the year.

16       Finally, the column **Length** indicates the permissible

17   length of a given argument.  For example, in the *<date>* field,

18   a minimum of 7 characters is required, and a maximum of 9

19   characters is

20   permissible.

Table 12: Location semantics

**Legal Values**

| # | Name | Description | Syntax | Literal | Description | Length |
|---|---|---|---|---|---|---|
| Location | *<generation>* | Lot generation | *l{+}* | A-Z | A  =1st | 1+ |
| | | | | AA-ZZ | AA = 27th | |
| | | | | . . | etc. | |
| | ** | Sequence in | *n{+}* | 0-9 | Lot number | 1+ |
| | | archive | | 0000-9999 | | |
| | | | | . . | etc. | |
| | *<date>* | Date made | *-yyyy* | 0000-9999 | Year | 7 [9] |
| | | *(ISO 8601:1988* | *mm* | 01-12 | Month | |
| | | *compliant)* | *[dd]* | 01-31 | Day | |
| | *[time]* | Time made | *[T hh* | 00-23 | Hour | [5+] |
| | | *(ISO 8601:1988* | *tt* | 00-59 | Minute | |
| | | *compliant, plus* | *[ ss* | 00-59 | Second | |
| | | *any fractional* | *[ l{+}]]]* | 0-9 | Fractional | |
| | | *second)* | | | second | |
| | *[author]* | Author | *[lc{*}]* | a-zA-Z | Author's name | [1+] |
| | | | | . . | etc. | |
| | *[device]* | Device used | *[@c{+}]* | 0-9 | Device number | [2+] |
| | | | | . . | etc. | |
| | *[unit]* | Image in Lot | *[-n{+}]* | 0-9 | Image number | |
| | | | | 0000-9999 | | |
| | | | | . . | etc. | [2+] |
| | *[locationRes]* | Unspecified | *[:c{+}]* | a-zA-Z0-9 | Future use | [2+] |
| | *[locationCus]* | Unspecified | *[.c{+}]* | a-zA-Z0-9 | User Customization | [2+] |
| | | | | | **Total** | **9 [-25+]** |

46

JA1162

1   **Imag semantics**.  In Table 13 **Image semantics**, **Image** indicates

2   the image number classification.  The column **Name** indicates

3   the name of a given image number *field*, while the column

4   **Description** describes what a *field* means.  For example, the

5   field *<category>* describes the category of the image number.

6        In the next column of Table 13, **Syntax,** Table 10's row

7   **Syntax** is relisted in vertical form.  The next column **Literal**,

8   lists the corresponding values or ranges of permissible

9   values.  The next column **Description**, describes what the

10  **Literal** value means.  Finally, the column **Length** indicates the

11  permissible length of a given argument.  For example, the

12  *<size>* field uses 1 or more characters.

13

14                          Table 13: Image semantics

15                               **Legal Values**

| # | Name | Description | Syntax | Literal | Description | Length |
|---|------|-------------|--------|---------|-------------|--------|
| Image | *<category>* | Category | *I{+}* | S | Single Frame | 1+ |
| | | | | M | Motion Picture | |
| | *<size>* | Image or film size | *nc{\*}* | (See Table 11 | Size/res. syntax) | 1+ |
| | | | | (See Table 15 | Measure semantics) | |
| | | | | (See Table 18 | Size examples) | |
| | *<push |* | Exposure | *<(-|+)n{+} |* | 0 | No push ('+' = up) | <2+| |
| | | | | 3 | 3 stops ('-' = down) | |
| | | | | .. | etc. | |
| | *bit>* | Dynamic range | *-n{+}>* | 0-9 | E.g. 8=8 bit | 2+> |
| | | ("bit depth") | | .. | etc. | |

| # | Name | Description | Syntax | Literal | Description | Length |
|---|------|-------------|--------|---------|-------------|--------|
| 1 | *<media>* | Image media | *lc*{*} | (See Table 20 | Reserved) | |
| 2 | | | | (See Table 21 | Slides) | 2+ |
| 3 | | | | (See Table 22 | Negatives) | |
| 4 | | | | (See Table 23 | B&W) | |
| 5 | | | | (See Table 24 | Dups & Internegs | |
| 6 | | | | (See Table 25 | Facsimiles) | |
| 7 | | | | (See Table 26 | Prints) | |
| | | | | (See Table 27 | Digital) | |
| 8 | *[set]* | Package | [@c{+}] | (See Table 17 | Packages) | |
| 9 | *<resolution>* | Resolution | @c{+} | (See Table 11 | Size/res. syntax | 2+ |
| 10 | | | | (See Table 15 | Measure semantics | |
| | | | | (See Table 19 | Resolution examples | |
| 11 | *<stain>* | Presentation | *n*{+} | 0 | Black & White | 1+ |
| 12 | | form | | 1 | Gray scale | |
| 13 | | | | 2 | Color | |
| 14 | | | | 3 | RGB (Red,Grn,Blu) | |
| 15 | | | | 4 | YIQ (RGB TV | |
| 16 | | | | | variant) | |
| 17 | | | | 5 | CYMK | |
| 18 | | | | | (Cyn,Yel,Mag,Blk) | |
| 19 | | | | 6 | HSB (Hue, Sat, | |
| 20 | | | | | Bright) | |
| 21 | | ("bit depth") | | 7 | CIE (Commission | |
| 22 | | | | | de l'Eclairage) | |
| 23 | | | | 8 | LAB | |
| 24 | | | | | etc. | |
| 25 | | | | | | |
| 26 | ** | Image form | *lc*{*} | (See Table 16 | Format sematics) | 1+ |

48

| # | Name | Description | Syntax | Literal | Description | Length |
|---|------|-------------|--------|---------|-------------|--------|
| 1 | [*imageRes*] | Unspecified | [:c{+}] | a-zA-Z0-9 | Future use | [2+] |
|   | [*imageCus*] | Unspecified | [.c{+}] | a-zA-Z0-9 | User customization | [2+] |

2                                                  Total 10[-16+]

3

4   **Parent semantics.** In Table 14 Parent semantics, **Parent**

5   indicates the parent number classification. The column **Name**

6   indicates the name of a given parent number field, while the

7   column **Description** describes what a given *field* means. For

8   example, the field <*parentRes*> is a reserved field for future

9   use.

10      In the next column of Table 14, **Syntax,** Table 10's row

11  **Syntax** is relisted in vertical form. The next column **Literal**,

12  lists the corresponding values or ranges of permissible

13  values. The next column **Description**, describes what the

14  **Literal** value means. Finally, the column **Length** indicates the

15  permissible length of a given argument. For example, the

16  <*parent*> field uses 6 or more characters.

17  **Measure semantics.** Table 15 **Measure semantics** specifies legal

18  values for the variables *size* and *resolution*, previously

19  described by the rules in Table 11 **Size/res. syntax.**

49

Table 14: Parent semantics

| # | Name | Description | Syntax | Legal Values Literal | Desription | Length |
|---|------|-------------|--------|---------|------------|--------|
| Parent | *<parent>* | Parent | *yyyymm[dd] [Thhtt[ss[i{+}]]]* | 0-9 0-9T0-9 | Date/time | 6+ |
| | *[parentRes]* | Unspecified | *[:c{+}]* | a-zA-Z0-9 | Future use | [1+] |
| | *[parentCus]* | Unspecified | *[.c{+}]* | a-zA-Z0-9 | User customization | [1+] |
| | | | | | Total | |

6 [-8+]

The column **Category** identifies which values are shared by *size* and *resolution* and which are unique. The column **Literal** lists the abbreviations used in *size* and *resolution* values. The column **Description** expands the abbreviations into their corresponding names.

JA1166

Table 15: Measure semantics

| Category | Literal | Description | |
|----------|---------|-------------|---|
| **Shared** | DI | Dots per inch | (dpi) |
| | DE | Dots per foot | (dpe) |
| | DY | Dots per yard | (dpy) |
| | DC | Dots per centimeter | (dpc) |
| | DM | Dots per millimeter | (dpm) |
| | DP | Dots per pixel | (dpp) |
| | DT | Dots per meter | (dpt) |
| | M | Millimeters | |
| | C | Centimeters | |
| | T | Meters | |
| | I | Inches | |
| | E | Feet | |
| | Y | Yard | |
| | P | Pixel | |
| | L | Lines | |
| | R | Rows | |
| | O | Columns | |
| | B | Columns & Rows | |
| | . . | etc. | |
| | | | |
| | | | |
| **Size** | F | Format | |
| **Unique** | . . | etc. | |
| | | | |
| **Res. Unique** | S | ISO | |
| | . . | etc. | |

**Format semantics.** Table 16 Format semantics specifies legal values for the variable *format*, previously described in Table 13 Image semantics. The **Literal** column lists legal values and

51

JA1167

1    the **Description** column expands the abbreviations into their

2    corresponding names.

3

4                              Table 16: Format semantics

5                          <u>Literal</u>        <u>Description</u>

6                            A            Audio-visual
7                            C            Photocopy
8                            D            Digital
9                            F            Facsimile
10                           L            Plotter
11                           M            MRI
12                           N            Negative
13                           P            Print
14                           R            Vector graphics
15                           T            Transparency
16                           V            Video
17                           X            X-radiographic
18                           ..           etc.
19

20

21                              Table 17: Packages

22

23                       Literal  Description
24                       --------------------
25                       3C       3Com
26                       3M       3M
27                       AD       Adobe
28                       AG       AGFA
29                       AIM      AIMS Labs
30                       ALS      Alesis
31                       APP      Apollo
32                       APL      Apple
33                       ARM      Art Media
34                       ARL      Artel
35                       AVM      Aver Media Technologies
36                       ATT      AT&T
37                       BR       Bronica
38                       BOR      Borland
39                       CN       Canon
40                       CAS      Casio
41                       CO       Contax
42                       CR       Corel
43                       DN       Deneba
44                       DL       DeLorme
45                       DI       Diamond
46                       DG       Digital
47                       DIG      Digitech

52

JA1168

| | | |
|---|---|---|
| 1 | EP | Epson |
| 2 | FOS | Fostex |
| 3 | FU | Fuji |
| 4 | HAS | Hasselblad |
| 5 | HP | Hewlett Packard |
| 6 | HTI | Hitachi |
| 7 | IL | Iilford |
| 8 | IDX | IDX |
| 9 | IY | Iiyama |
| 10 | JVC | JVC |
| 11 | KDS | KDS |
| 12 | KK | Kodak |
| 13 | KN | Konica |
| 14 | IBM | IBM |
| 15 | ING | Intergraph |
| 16 | LEI | Leica |
| 17 | LEX | Lexmark |
| 18 | LUC | Lucent |
| 19 | LOT | Lotus |
| 20 | MAM | Mamiya |
| 21 | MAC | Mackie |
| 22 | MAG | MAG Innovision |
| 23 | MAT | Matrox Graphics |
| 24 | MET | MetaCreations |
| 25 | MS | Microsoft |
| 26 | MT | Microtech |
| 27 | MK | Microtek |
| 28 | MIN | Minolta |
| 29 | MTS | Mitsubishi |
| 30 | MCX | Micrografx |
| 31 | NEC | NEC |
| 32 | NTS | Netscape |
| 33 | NTK | NewTek |
| 34 | NK | Nikon |
| 35 | NS | Nixdorf-Siemens |
| 36 | OLY | Olympus |
| 37 | OPC | Opcode |
| 38 | OR | O'Reilly |
| 39 | PAN | Panasonic |
| 40 | PNC | Pinnacle |
| 41 | PNX | Pentax |
| 42 | PO | Polaroid |
| 43 | PRC | Princeton Graphics |
| 44 | QT | Quicktime |
| 45 | ROL | Roland |
| 46 | RO. | Rollei |
| 47 | RIC | Ricoh |
| 48 | SAM | Samsung |
| 49 | SAN | SANYO |
| 50 | SHA | Sharp |
| 51 | SHI | Shin Ho |
| 52 | SK | Softkey |
| 53 | SN | Sony |
| 54 | SUN | SUN |
| 55 | TAS | Tascam |
| 56 | TEAC | TEAC |

53

```
 1                          TKX   Tektronix
 2                          TOS   Toshiba
 3                          ULS   Ulead systems
 4                          UMX   UMAX
 5                          VWS   ViewSonic
 6                          VID   Videonics
 7                          WG    Wang
 8                          XX    Unknown
 9                          XE    Xerox
10                          YAS   Yashica
11                          YAM   Yamaha
12
13
14
15              Table 18: Size examples
16
17              Literal     |   Dimension      Measure
18              -------------------------------------------
19              Syntax 1    |   135F       35mm       format
20                          |   120F       Medium     format
21                          |   220F       Full       format
22                          |   4X5F       4x5        format
23                          |   ..         ..         etc.
24                          |
25              Syntax 2    |   9X14C      9x14       centimete
26                          |                         r
27                          |   3X5I       3x5        inch
28                          |   4X6I       4x6        inch
29                          |   5X7I       5x7        inch
30                          |   8X10I      8x10       inch
31                          |   11X14I     11x14      inch
32                          |   16X20I     16x20      inch
33                          |   20X24I     20x24      inch
34                          |   24X32I     24x32      inch
35                          |   24X36I     24x36      inch
36                          |   32X40I     32x40      inch
37                          |   40X50I     40x50      inch
38                          |   50X50I     50x50      inch
39                          |   40X50P     40x50      pixels
40                          |   100X238P   100X238    pixels
41                          |   1024X1280P 1024X1280  pixels
42                          |   A4S        210x297mm  sheet
43                          |   A5S        148x210mm  sheet
44                          |   JIS B5S    182x257mm  sheet
45                          |   LETTERS    8.5x11in   sheet
46                          |   LEGALS     8.5x14in   sheet
47                          |   EXECUTIVES 7.25x10.5in sheet
48                          |   ..         ..         etc.
49
```

50   **Examples: Tables 18-19**

51   **Size & resolution examples.**  Table 18 **Size examples**

52   illustrates typical *size* values, and Table 19 **Resolution**

53   **examples** illustrates typical *resolution* values.

54        Values in these tables represent limited defaults since

1  *size* and *resolution* are algorithmically generated from the

2  rules contained in Table 11 **Size/r s. syntax**, and from the

3  values contained in Table 15 **Measure semantics**.  See ¶**Size &**

4  **resolution syntax** for details.

5

6                    Table 19: Resolution examples
7          Literal  |   Dimension    Measure
8        ----------------------------------------------------
9          Syntax 1 |   50S           50           ISO
10                   |   200S          200          ISO
11                   |   300DC         600          dpc
12                   |   1200DI        1200         dpi
13                   |   ..            ..           etc.
14                   |
15         Syntax 2  |   640X768P      640X768      pixels
16                   |   1024X1280P    1024X1280    pixels
17                   |   1280X1600P    1024X1280    pixels
18                   |   ..            ..           etc.
19
20
21 **Media: Tables 20-27**

22      Table 20-27 specify the supported *media* listed in Table

23 13 **Image semantics**.  Values of *media* are tied to values of

24 *format*, so any *format* value may have its own *media* table.

25 Since *format* is unlimited in size, *media* support is also

26 unlimited.

27      **Tables 20-24: Film Media**.  In Tables 20-24, the first

28 character represents film manufacturers in the following ways:

29           •    'A' represents Agfa

30           •    'F' represents Fuji

31           •    'I' represents Ilford

32           •    'C' represents Konica

33           •    'K' represents Kodak

34           •    'P' represents Polaroid

1              'S' represents Seattle Film Works

2        •     'T' represents 3M

3        •     'X' represents an unknown film manufacturer

4    This leaves 17 slots for additional major film manufacturers,

5    before a single first letter prefix must represent multiple

6    manufacturers, or before additional letters must be added.

7    Any

8    number of film media may be supported, but 223 defaults are

9    provided in the preferred embodiment of the present invention.

56

Table 20: Reserved media slots

| Reserved For | Literal | Description |
|---|---|---|
| Unknown | XXXX | Unknown film |
| User | UX0 | Customization |
| | UX1 | " |
| | UX2 | " |
| | UX3 | " |
| | UX4 | " |
| | UX5 | " |
| | UX6 | " |
| | UX7 | " |
| | UX8 | " |
| | UX9 | " |
| Specification | UR0 | For future use |
| | UR1 | " |
| | UR2 | " |
| | UR3 | " |
| | UR4 | " |
| | UR5 | " |
| | UR6 | " |
| | UR7 | " |
| | UR8 | " |
| | UR9 | " |

Table 21: Color Transparency film

| Company | Literal | Description |
|---|---|---|
| Agfa | AASC | Agfa Agfapan Scala Reversal (B&W) |
| | ACRS | Agfa Agfachrome RS |
| | ACTX | Agfa Agfachrome CTX |
| | ARSX | Agfa Agfacolor Professional RSX Reversal |
| Fuji | FCRTP | Fuji Fujichrome RTP |
| | FCSE | Fuji Fujichrome Sensia |
| | FRAP | Fuji Fujichrome Astia |
| | FRDP | Fuji Fujichrome Provia Professional 100 |
| | FRPH | Fuji Fujichrome Provia Professional 400 |
| | FRSP | Fuji Fujichrome Provia Professional 1600 |
| | FRTP | Fuji Fujichrome Professional Tungsten |
| | FRVP | Fuji Fujichrome Velvia Professional |
| Ilford | IICC | Ilford Ilfochrome |
| | IICD | Ilford Ilfochrome Display |
| | IICM | Ilford Ilfochrome Micrographic |
| Konica | CAPS | Konica APS JX |
| | CCSP | Konica Color Super SR Professional |
| Kodak | K5302 | Kodak Eastman Fine Grain Release Positive Film 5302 |
| | K7302 | Kodak Fine Grain Positive Film 7302 |
| | KA2443 | Kodak Aerochrome Infrared Film 2443 |
| | KA2448 | Kodak Aerochrome II MS Film 2448 |
| | KE100SW | Kodak Ektachrome Professional E100SW Film |

JA1173

| | | | |
|---|---|---|---|
| 1 | | KE100S | Kodak Ektachrome Professional E100S Film |
| 2 | | KE200 | Kodak Ektachrome Professional E200 Film |
| 3 | | KEEE | Kodak Ektachrome Elite |
| 4 | | KEEO100 | Kodak Ektachrome Electronic Output Film 100 |
| 5 | | KEEO200 | Kodak Ektachrome Electronic Output Film |
| 6 | | KEEO64T | Kodak Ektachrome Electronic Output Film 64T |
| 7 | | KEEP | Kodak Ektachrome E Professional |
| 8 | | KEES | Kodak Ektachrome ES |
| 9 | | KEEW | Kodak Ektachrome EW |
| 10 | | KEIR | Kodak Ektachrome Professional Infrared EIR |
| 11 | | | Film |
| 12 | | KEK | Kodak Ektachrome |
| 13 | | KELL | Kodak Ektachrome Lumiere Professional |
| 14 | | KELX | Kodak Ektachrome Lumiere X Professional |
| 15 | | KEPD | Kodak Ektachrome 200 Professional Film |
| 16 | | KEPF | Kodak Ektachrome Professional |
| 17 | | KEPH | Kodak Ektachrome Professional P1600 Film |
| 18 | | KEPJ | Kodak Ektachrome 320T Professional Film, |
| 19 | | | Tungsten |
| 20 | | KEPL400 | Kodak Ektachrome Professional 400X Film |
| 21 | | KEPL | Kodak Ektachrome 200 Professional Film |
| 22 | | KEPL | Kodak Ektachrome Plus Professional |
| 23 | | KEPN | Kodak Ektachrome 100 Professional Film |
| 24 | | KEPO | Kodak Ektachrome P Professional |
| 25 | | KEPR | Kodak Ektachrome 64 Professional |
| 26 | | KEPT | Kodak Ektachrome 160T Professional Film, |
| 27 | | | Tungsten |
| 28 | | KEPY | Kodak Ektachrome 64T Professional Film, Tungsten |
| 29 | | KETP | Kodak Ektachrome T Professional |
| 30 | | KETT | Kodak Ektachrome T |
| 31 | | KEXP | Kodak Ektachrome X Professional |
| 32 | | KCCR | Kodak Kodachrome |
| 33 | | KPKA | Kodak Kodachrome Professional 64 Film |
| 34 | | KPKL | Kodak Kodachrome Professional 200 Film |
| 35 | | KPKM | Kodak Kodachrome Professional 25 |
| 36 | | KVSSO279 | Kodak Film Vericolor Slide Film SO-279 |
| 37 | | KVS | Kodak Vericolor Slide Film |
| 38 | Polaroid | PPCP | Polaroid Professional High Contrast |
| 39 | | | Polychrome |
| 40 | Reserved | -- | See Table 20 |
| 41 | Seattle Film | | |
| 42 | Works | SFWS | Seattle Film Works |
| 43 | 3M | TSCS | 3M ScotchColor Slide |
| 44 | | TSCT | 3M ScotchColor T slide |
| 45 | | | |
| 46 | | | |

47          Table 22: Color negative film

| | Company | Literal | Description |
|---|---|---|---|
| 49 | Company | Literal | Description |
| 50 | | | |
| 51 | Agfa | ACOP | Agfa Agfacolor Optima |
| 52 | | AHDC | Agfa Agfacolor HDC |
| 53 | | APOT | Agfa Agfacolor Triade Optima Professional |
| 54 | | APO | Agfa Agfacolor Professional Optima |
| 55 | | APP | Agfa Agfacolor Professional Portraita |
| 56 | | APU | Agfa Agfacolor Professional Ultra |
| 57 | | APXPS | Agfa Agfacolor Professional Portrait XPS |
| 58 | | ATPT | Agfa Agfacolor Triade Portraita Professional |
| 59 | | ATUT | Agfa Agfacolor Triade Ultra Professional |
| 60 | Fuji | FHGP | Fuji Fujicolor HG Professional |

| | | | |
|---|---|---|---|
| 1 | | FHG | Fuji Fujicolor HG |
| 2 | | FNHG | Fuji Fujicolor NHG Professional |
| 3 | | FNPH | Fuji Fujicolor NPH Professional |
| 4 | | FNPL | Fuji Fujicolor NPL Professional |
| 5 | | FNPS | Fuji Fujicolor NPS Professional |
| 6 | | FPI | Fuji Fujicolor Print |
| 7 | | FPL | Fuji Fujicolor Professional, Type L |
| 8 | | FPO | Fuji Fujicolor Positive |
| 9 | | FRG | Fuji Fujicolor Reala G |
| 10 | | FR | Fujicolor Reala |
| 11 | | FSGP | Fuji Fujicolor Super G Plus |
| 12 | | FSG | Fuji Fujicolor Super G |
| 13 | | FSHG | Fuji Fujicolor Super HG 1600 |
| 14 | | FS | Fuji Fujicolor Super |
| 15 | Kodak | K5079 | Kodak Motion Picture 5079 |
| 16 | | K5090 | Kodak CF1000 5090 |
| 17 | | K5093 | Kodak Motion Picture 5093 |
| 18 | | K5094 | Kodak Motion Picture 5094 |
| 19 | | KA2445 | Kodak Aerocolor II Negative Film 2445 |
| 20 | | KAPB | Advantix Professional Film |
| 21 | | KCPT | Kodak Kodacolor Print |
| 22 | | KEKA | Kodak Ektar Amateur |
| 23 | | KEPG | Ektapress Gold |
| 24 | | KEPPR | Kodak Ektapress Plus Professional |
| 25 | | KGOP | Kodak Gold Plus |
| 26 | | KGO | Kodak Gold |
| 27 | | KGPX | Kodak Ektacolor Professional GPX |
| 28 | | KGTX | Kodak Ektacolor Professional GTX |
| 29 | | KPCN | Kodak Professional 400 PCN Film |
| 30 | | KPHR | Kodak Ektar Professional Film |
| 31 | | KPJAM | Kodak Ektapress Multispeed |
| 32 | | KPJA | Kodak Ektapress 100 |
| 33 | | KPJC | Kodak Ektapress Plus 1600 Profession |
| 34 | | KPMC | Kodak Pro 400 MC Film |
| 35 | | KPMZ | Kodak Pro 1000 Film |
| 36 | | KPPF | Kodak Pro 400 Film |
| 37 | | KPRMC | Kodak Pro MC |
| 38 | | KPRN | Kodak Pro |
| 39 | | KPRT | Kodak Pro T |
| 40 | | KRGD | Kodak Royal Gold |
| 41 | | KVPS2L | Kodak Vericolor II Professional Type L |
| 42 | | KVPS3S | Kodak Vericolor III Professional Type S |
| 43 | | KVP | Kodak Vericolor Print Film |
| 44 | Konica | CCIP | Konica Color Impresa Professional |
| 45 | | CIFR | Konica Infrared 750 |
| 46 | | CCSR | Konica SRG |
| 47 | Polaroid | POCP | Polaroid OneFilm Color Print |
| 48 | Reserved | -- | See Table 20 |
| 49 | | | |
| 50 | | | |

59

JA1175

Table 23: Black & white film

| Company | Literal | Description |
|---------|---------|-------------|
| Agfa | AAOR | Agfa Agfapan Ortho |
| | AAPX | Agfa Agfapan APX |
| | APAN | Agfa Agfapan |
| Ilford | IDEL | Ilford Delta Professional |
| | IFP4 | Ilford FP4 Pl |
| | IHP5 | Ilford HP5 Plus |
| | IPFP | Ilford PanF Plus |
| | IPSF | Ilford SFX750 Infrared |
| | IUNI | Ilford Universal |
| | IXPP | Ilford XP2 Plus |
| Fuji | FNPN | Fuji Neopan |
| Kodak | K2147T | Kodak PLUS-X Pan Professional 2147, ESTAR Thick Base |
| | K2147 | Kodak PLUS-X Pan Professional 2147, ESTAR Base |
| | K4154 | Kodak Contrast Process Ortho Film 4154, ESTAR Thick Base |
| | K4570 | Kodak Pan Masking Film 4570, ESTAR Thick Base |
| | K5063 | Kodak TRI-X 5063 |
| | KA2405 | Kodak Double-X Aerographic Film 2405 |
| | KAI2424 | Kodak Infrared Aerographic Film 2424 |
| | KAP2402 | Kodak PLUS-X Aerographic II Film 2402, ESTAR Base |
| | KAP2412 | Kodak Panatomic-X Aerographic II Film 2412, ESTAR Base |
| | KEHC | Kodak Ektagraphic HC |
| | KEKP | Kodak Ektapan |
| | KH13101 | Kodak High Speed Holographic Plate, Type 131-01 |
| | KH13102 | Kodak High Speed Holographic Plate, Type 131-02 |
| | KHSIET | Kodak High Speed Infrared, ESTAR Thick Base |
| | KHSIE | Kodak High Speedo nfrared, ESTAR Base |
| | KHSI | Kodak High Speed Infrared |
| | KHSO253 | Kodak High Speed Holographic Film, ESTAR Base SO-253 |
| | KLPD4 | Kodak Professional Precision Line Film LPD4 |
| | KO2556 | Kodak Professional Kodalith Ortho Film 2556 |
| | KO6556 | Kodak Professional Kodalith Ortho Film 6556, Type 3 |
| | KPMF3 | Kodak Professional Personal Monitoring Film, Type 3 |
| | KPNMFA | Kodak Professional Personal Neutron Monitor Film, Type A |
| | KPXE | Kodak PLUS-X Pan Professional, Retouching Surface, Emulsion & Base |
| | KPXP | Kodak PLUS-X Pan Professional, Retouching Surface, Emulsion |
| | KPXT | Kodak PLUS-X Pan Professional, Retouching Surface, Emulsion & Base |
| | KPXX | Kodak Plus-X |
| | KPX | Kodak PLUS-X Pan Film |
| | KREC | Kodak Recording 2475 |
| | KSAF1 | Kodak Spectrum Analysis Film, No. 1 |
| | KSAP1 | Kodak Spectrum Analysis Plate, No. 1 |
| | KSAP3 | Kodak Spectrum Analysis Plate, No. 3 |
| | KSWRP | Kodak Short Wave Radiation Plate |
| | KTMXCN | Kodak Professional T-MAX Black and White Film CN |
| | KTMY | Kodak Professional T-MAX |
| | KTMZ | Kodak Professional T-MAX P3200 Film |
| | KTP2415 | Kodak Technical Pan Film 2415, ESTAR-AH Base |
| | KTPKTRP | KodakKTechnicaloPandFilmak TRI-Pan Professional |
| | KTRXPT | Kodak TRI-X Pan Professional 4164, ESTAR Thick Base |
| | KTRXP | Kodak TRI-Pan Professional |

| | | KTXP | Kodak TRI-X Professional, Interior Tungsten |
| | | KTXT | Kodak TRI-X Professional, Interior Tungsten |
| | | KTX | Kodak TRI-X Professional |
| | | KVCP | Kodak Verichrome Pan |
| | Konica | CIFR | Kodak Infrared 750 |
| | Polaroid | PPGH | Konica Polagraph HC |
| | | PPLB | Polaroid Polablue BN |
| | | PPPN | Polaroid Polapan CT |
| | Reserved | -- | See Table 20 |

Table 24: Duplicating & Internegative Film

| Company | Literal | Description |
|---------|---------|-------------|
| Agfa | ACRD | Agfa Agfachrome Duplication Film CRD |
| Fuji | FCDU | Fuji Fujichrome CDU Duplicating |
| | FCDU1 | Fujichrome CDU Duplicating, Type I |
| | FCDU2 | Fuji Fujichrome CDU Duplicating, Type II |
| | FITN | Fuji Fujicolor Internegative IT-N |
| Kodak | K1571 | Kodak 1571 Internegative |
| | K2475RE | Kodak Recording Film 2475 |
| | K4111 | Kodak 4111 |
| | KC4125 | Kodak Professional Professional Copy Film 4125 |
| | K6121 | Kodak 6121 |
| | KA2405 | Kodak Double-X Aerographic Film 2405 |
| | KA2422 | Kodak Aerographic Direct Duplicating Film 2422 |
| | KA2447 | Kodak Aerochrome II Duplicating Film 2447 |
| | KAR | Kodak Aerographic RA Duplicating Film 2425, ESTAR Base |
| | KARA4425 | Kodak Aerographic RA Duplicating Film 4425, ESTAR Thick Base |
| | KARA | Kodak Aerographic RA Duplicating Film |
| | KCIN | Kodak Commercial Internegative Film |
| | KE5071 | Kodak Ektachrome Slide Duplicating Film 5071 |
| | KE5072 | Kodak Ektachrome Slide Duplicating Film 5072 |
| | KE6121 | Kodak Ektachrome Slide Duplicating Film 6121 |
| | KE7121K | Kodak Ektachrome Duplicating Film 7121, Type K |
| | KESO366 | Kodak Ektachrome SE Duplicating Film SO -366 |
| | KS0279 | Kodak S0279 |
| | KS0366 | Kodak S0366 |
| | KSO132 | Kodak Professional B/W Duplicating Film SO-132 |
| | KV4325 | Kodak Vericolor Internegative 4325 |
| | KVIN | Kodak Vericolor Internegative Film |
| Reserved | -- | See Table 20 |

**Table 24: Facsimile.**  Table 24 **Facsimile** lists supported file formats used in facsimile imaging.  All digital formats are supported, plus G1-G5, for a total of 159 supported formats.  Any number of facsimile media are permissible.

61

JA1177

Table 25: Facsimile

| Category | Literal | Description |
|----------|---------|-------------|
| Digital | -- | See Table 27 |
| Facsimile | DFAXH | DigiBoard, DigiFAX Format, Hi-Res |
| | DFAXL | DigiBoard, DigiFAX Format, Normal-Res |
| | G1 | Group 1 Facsimile |
| | G2 | Group 2 Facsimile |
| | G3 | Group 3 Facsimile |
| | G32D | Group 3 Facsimile, 2D |
| | G4 | Group 4 Facsimile |
| | G42D | Group 4 Facsimile, 2D |
| | G5 | Group 4 Facsimile |
| | G52D | Group 4 Facsimile, 2D |
| | TIFFG3 | TIFF Group 3 Facsimile |
| | TIFFG3C | TIFF Group 3 Facsimile, CCITT RLE 1D |
| | TIFFG32D | TIFF Group 3 Facsimile, 2D |
| | TIFFG4 | TIFF Group 4 Facsimile |
| | TIFFG42D | TIFF Group 4 Facsimile, 2D |
| | TIFFG5 | TIFF Group 5 Facsimile |
| | TIFFG52D | TIFF Group 5 Facsimile, 2D |
| Reserved | -- | See Table 20 |

**Table 26: Prints.** Table 26 **Prints** lists supported file formats used in print imaging, such as paper prints for display. 230 defaults are provided; any number of print media are permissible.

Table 26: Prints

| Company | Literal | Description |
|---------|---------|-------------|
| Agfa | ACR | Agfacolor RC |
| | ABF | Agfa Brovira, fiber, B&W |
| | ABSRC | Agfa Brovira-speed RC, B&W |
| | APF | Agfa Portriga, fiber, B&W |
| | APSRC | Agfa Portriga-speed RC, B&W |
| | ARRF | Agfa Record-rapid, fiber, B&W |
| | ACHD | Agfacolor HDC |
| | AMCC111FB | Agfacolor Multicontrast Classic MC C 111 FB, double weight, glossy surface |
| | AMCC118FB | Agfacolor Multicontrast Classic MC C 118 FB, double weight, fine grained matt surface |
| | AMCC1FB | Agfacolor Multicontrast Classic MC C 1FB, single weight, glossy surface |

| | | | |
|---|---|---|---|
| 1 | | AMCP310RC | Agfacolor Multicontrast Premium RC 310, glossy surface |
| 2 | | AMCP312RC | Agfacolor Multicontrast Premium RC 312, semi-matt surface |
| 3 | | APORG | Agfacolor Professional Portrait Paper, glossy surface CN310 |
| 4 | | APORL | Agfacolor Professional Portrait Paper, semi-matt surface |
| 5 | | | CN312 |
| 6 | | APORM | Agfacolor Professional Portrait Paper, lustre surface CN319 |
| 7 | | ASIGG | Agfacolor Professional Signum Paper, glossy surface CN310 |
| 8 | | ASIGM | Agfacolor Professional Signum Paper, matt surface CN312 |
| 9 | Konica | CCOL | Konica Color |
| 10 | Fuji | FCHPFCPI | FujicolorFHGuProfessionaljicolor Print |
| 11 | | FCSP | Fujicolor Super G Plus Print |
| 12 | | FCT35 | Fujichrome paper, Type 35, glossy surface |
| 13 | | FCT35HG | Fujichrome reversal copy paper, Type 35, glossy surface |
| 14 | | FCT35HL | Fujichrome reversal copy paper, Type 35, lustre surface |
| 15 | | FCT35HM | Fujichrome reversal copy paper, Type 35, matt surface |
| 16 | | FCT35L | Fujichrome paper, Type 35, lustre surface |
| 17 | | FCT35M | Fujichrome paper, Type 35, matt surface |
| 18 | | FCT35PG | Fujichrome Type535, polyester, super glossly surface |
| 19 | | FSFA5G | Fujicolor paper super FA, Type 5, glossy SFA5 surface |
| 20 | | FSFA5L | Fujicolor paper super FA, Type 5, lustre SFA5 surface |
| 21 | | FSFA5M | Fujicolor paper super FA, Type 5, matt SFA5 surface |
| 22 | | FSFA5CG | Fujicolor.paper super FA5, Type C, glossy surface |
| 23 | | FSFA5SL | Fujicolor paper super FA5, Type C, lustre surface |
| 24 | | FSFA5SM | Fujicolor paper super FA5, Type C, matt surface |
| 25 | | FSFA5SPG | Fujicolor paper super FA, Type 5P, glossy SFA P surface |
| 26 | | FSFA5SPL | Fujicolor paper super FA, Type 5P, lustre SFA P surface |
| 27 | | FSFA5SPM | Fujicolor paper super FA, Type 5P, matt SFA P surface |
| 28 | | FSFAG | Fujicolor paper super FA, Type 5, glossy surface |
| 29 | | FSFAL | Fujicolor paper super FA, Type 5, lustre surface |
| 30 | | FSFAM | Fujicolor paper super FA, Type 5, matt surface |
| 31 | | FSFAS5PG | Fujicolor paper super FA, Type P, glossy SFA 5P surface |
| 32 | | FSFAS5PL | Fujicolor paper super FA, Type P, lustre SFA 5P surface |
| 33 | | FSFAS5PM | Fujicolor paper super FA, Type P, matt SFA 5P surface |
| 34 | | FSFASCG | Fujicolor paper super FA, Type C, glossy surface |
| 35 | | FSFASCL | Fujicolor paper super FA, Type C, lustre surface |
| 36 | | FSFASCM | Fujicolor paper super FA, Type C, matt surface |
| 37 | | FTRSFA | Fujitrans super FA |
| 38 | | FXSFA | Fujiflex super FA polyester (super gloss), Fujiflex SFA |
| 39 | | | surface |
| 40 | Ilford | ICF1K | Ilfochrome Classic Deluxe Glossy Low Contrast |
| 41 | | ICLM1K | Ilfochrome Classic Deluxe Glossy Medium Contrast |
| 42 | | ICPM1M | Ilfochrome Classic RC Glossy |
| 43 | | ICPM44M | Ilfochrome Classic RC Pearl |
| 44 | | ICPS1K | Ilfochrome Classic Deluxe Glossy |
| 45 | | IGFB | Ilfochrome Galerie FB |
| 46 | | IILRA1K | Ilfocolor Deluxe |
| 47 | | IIPRAM | Ilfocolor RC |
| 48 | | IMG1FDW | Ilford Multigrade Fiber, Double Weight |
| 49 | | IMG1FW | Ilford Multigrade Fiber Warmtone |
| 50 | | IMG1RCDLX | Ilford Multigrade RC DLX |

| 1 | | IMG1RCPDW | Ilford Multigrade RC Portfolio, Double Weight |
|---|---|---|---|
| 2 | | IMG1RCR | Ilford Multigrade RC Rapid |
| 3 | | IMG2FDW | Ilford Multigrade II Fiber, Double Weight |
| 4 | | IMG2FW | Ilford Multigrade II Fiber Warmtone |
| 5 | | IMG2RCDLX | Ilford Multigrade II RC |
| 6 | | IMG1RCPDW | Ilford Multigrade II RC Portfolio, Double Weight |
| 7 | | IMG2RCR | Ilford Multigrade II RC Rapid |
| 8 | | IMG3FDW | Ilford Multigrade III Fiber, Double Weight |
| 9 | | IMG3FW | Ilford Multigrade III Fiber Warmtone |
| 10 | | IMG3RCDLX | Ilford Multigrade III RC DLX |
| 11 | | IMG3RCPDW | Ilford Multigrade III RC Portfolio, Double Weight |
| 12 | | IMG3RCR | Ilford Multigrade III RC Rapid |
| 13 | | IMG4FDW | Ilford Multigrade IV Fiber, Double Weight |
| 14 | | IMG4FW | Ilford Multigrade IV Fiber Warmtone |
| 15 | | IMG4RCDLX | Ilford Multigrade IV RC DLX |
| 16 | | IMG4RCPDW | Ilford Multigrade IV RC Portfolio, Double Weight |
| 17 | | IMGFSWG | Ilford Multigrade Fiber, Single Weight, glossy |
| 18 | | IPFP | Ilford PanF Plus |
| 19 | | ISRCD | Ilfospeed RC, Deluxe |
| 20 | Kodak | | B&W Selective Contrast Papers |
| 21 | | KPC1RCE | Kodak Polycontrast RC, medium weight, fine-grained, lustre |
| 22 | | KPC1RCF | Kodak Polycontrast RC, medium weight, smooth, glossy |
| 23 | | KPC1RCN | Kodak Polycontrast RC, medium weight, smooth, semi-matt |
| 24 | | KPC2RCE | Kodak Polycontrast II RC, medium weight, fine-grained, lustre |
| 25 | | KPC2RCF | Kodak Polycontrast II RC, medium weight, smooth, glossy |
| 26 | | KPC2RCN | Kodak Polycontrast II RC, medium weight, smooth, semi-matt |
| 27 | | KPCRCE | Kodak Polycontrast III RC, medium weight, fine-grained, |
| 28 | | | lustre |
| 29 | | KPC3RCF | Kodak Polycontrast III RC, medium weight, smooth, glossy |
| 30 | | KPC3RCN | Kodak Polycontrast III RC, medium weight, smooth, |
| 31 | | | semi-matt |
| 32 | | KPMFF | Kodak Polymax Fiber, single weight, smooth, glossy |
| 33 | | KPMFN | Kodak Polymax Fiber, single weight, smooth, semi-matt |
| 34 | | KPMFE | Kodak Polymax Fiber, single weight, fine-grained, lustre |
| 35 | | KPM1RCF | Kodak Polymax RC, single weight, smooth, glossy |
| 36 | | KPM1RCE | Kodak Polymax RC, single weight, fine-grained, lustre |
| 37 | | KPM1RCN | Kodak Polymax RC, single weight, smooth, semi-matt |
| 38 | | KPM2RCF | Kodak Polymax II RC, single weight, smooth, glossy |
| 39 | | KPM2RCE | Kodak Polymax II RC, single weight, fine-grained, lustre |
| 40 | | KPM2RCN | Kodak Polymax II RC, single weight, smooth, semi-matt |
| 41 | | KPMFAF | Kodak Polymax Fine-Art, double weight, smooth, glossy |
| 42 | | KPMFAN | Kodak Polymax Fine-Art, double weight, smooth, semi-matt |
| 43 | | KPPFM | Kodak Polyprint RC, medium weight, smooth, glossy |
| 44 | | KPPNM | Kodak Polyprint RC, medium weight, smooth, semi-matt |
| 45 | | KPPEM | Kodak Polyprint RC, medium weight, fine-grained, lustre |
| 46 | | KPFFS | Kodak Polyfiber, single weight, smooth, glossy |
| 47 | | KPFND | Kodak Polyfiber, double weight, smooth, semi-matt |
| 48 | | KPFGL | Kodak Polyfiber, light weight, smooth,lustre |
| 49 | | KPFNS | Kodak Polyfiber, smooth, single weight, semi-matt |
| 50 | | KPFND | Kodak Polyfiber, double weight, smooth, semi-matt |

JA1180

| | | |
|---|---|---|
| 1 | KPFGD | Kodak Polyfiber, double weight, fine-grained, lustre |
| 2 | | |
| 3 | | B&W Continuous Tone Papers |
| 4 | KAZOF | Kodak AZO, fine-grained, lustre |
| 5 | KB1RCF | Kodak Kodabrome RC Paper, smooth, glossy |
| 6 | KB1RCG1 | Kodak Kodabrome RC, premium weight (extra heavy) |
| 7 | | 1, fine-grained, lustre |
| 8 | KB1RCN | Kodak_Kodabrome_RC_Paper,_smooth,_semi-matt |
| 9 | KB2RCF | Kodak Kodabrome II RC Paper, smooth, glossy |
| 10 | KB2RCG1 | Kodak Kodabrome II RC, premium weight (extra |
| 11 | | heavy) 1, fine-grained, lustre |
| 12 | KB2RCN | Kodak Kodabrome II RC Paper, smooth, semi-matt |
| 13 | KBR | Kodak Kodabromide, single weight, smooth, glossy |
| 14 | KEKLG | Kodak Ektalure, double weight, fine-grained, lustre |
| 15 | KEKMSCF | Kodak Ektamatic SC single weight, smooth, glossy |
| 16 | KEKMSCN | Kodak Ektamatic SC, single weight, smooth, |
| 17 | | semi-matt |
| 18 | KEKMXRALF | Kodak Ektamax RA Professional L, smooth, glossy |
| 19 | KEKMXRALN | Kodak Ektamax RA Professional L, smooth, |
| 20 | | semi-matt |
| 21 | KEKMXRAMF | Kodak Ektamax RA Professional M, smooth, glossy |
| 22 | KEKMXRAMN | Kodak Ektamax RA Professional M, smooth, smooth, |
| 23 | | semi-matt |
| 24 | KELFA1 | Kodak Elite Fine-Art, premium weight (extra heavy) |
| 25 | | 1, ultra-smooth, high-lustre |
| 26 | KELFA2 | Kodak Elite Fine-Art, premium weight (xtra heavy) 2, |
| 27 | | ultra-smooth, high-lustre |
| 28 | KELFA3 | Kodak Elite Fine-Art, premium weight (xtra heavy) 3, |
| 29 | | ultra-smooth, high-lustre |
| 30 | KELFA4 | Kodak Elite Fine-Art, premium weight (xtra heavy) 4, |
| 31 | | ultra-smooth, high-lustre |
| 32 | KK1RCG1 | Kodak Kodabrome RC, premium weight (extra heavy) |
| 33 | | 1, fine-grained, lustre |
| 34 | KK1RCG2 | Kodak Kodabrome RC, premium weight (extra heavy) |
| 35 | | 2, fine-grained, lustre |
| 36 | KK1RCG3 | Kodak Kodabrome RC, premium weight (extra heavy) |
| 37 | | 3, fine-grained, lustre |
| 38 | KK1RCG4 | Kodak Kodabrome RC, premium weight (extra heavy) |
| 39 | | 4, fine-grained, lustre |
| 40 | KK1RCG5 | Kodak Kodabrome RC, premium weight (extra heavy) |
| 41 | | 5, fine-grained, lustre |
| 42 | KK2RCG1 | Kodak Kodabrome II RC, premium weight (extra |
| 43 | | heavy) 1, fine-grained, lustre |
| 44 | KK2RCG2 | Kodak Kodabrome II RC, premium weight (extra |
| 45 | | heavy) 2, fine-grained, lustre |
| 46 | KK2RCG3 | Kodak Kodabrome II RC, premium weight (extra |
| 47 | | heavy) 3, fine-grained, lustre |
| 48 | KK2RCG4 | Kodak Kodabrome II RC, premium weight (extra |
| 49 | | heavy) 4, fine-grained, lustre |
| 50 | KK2RCG5 | Kodak Kodabrome II RC, premium weight (extra |

65

**JA1181**

| | | |
|---|---|---|
| 1 | | heavy) 5, fine-grained, lustre |
| 2 | KPMARCW1 | Kodak P-Max Art RC, double weight 1, suede |
| 3 | | double-matt |
| 4 | KPMARCW2 | Kodak P-Max Art RC, double weight 2, suede |
| 5 | | double-matt |
| 6 | KPMARCW3 | Kodak P-Max Art RC, double weight 3, suede |
| 7 | | double-matt |
| 8 | | |
| 9 | | B&W Panchromatic Papers |
| 10 | KPSRCH | Kodak Panalure Select RC, H grade, medium weight, |
| 11 | | smooth, glossy |
| 12 | KPSRCL | Kodak Panalure Select RC, L grade, medium weight, |
| 13 | | smooth, glossy |
| 14 | KPSRCM | Kodak Panalure Select RC, M grade, medium weight, |
| 15 | | smooth, glossy |
| 16 | | |
| 17 | | Color Reversal Papers |
| 18 | KER1F | Kodak Ektachrome Radiance Paper, smooth, glossy |
| 19 | KER1N | Kodak Ektachrome Radiance Paper, smooth, |
| 20 | | semi-matt |
| 21 | KER1SF | Kodak Ektachrome Radiance Select Material, smooth, |
| 22 | | glossy |
| 23 | KER2F | Kodak Ektachrome Radiance II Paper, smooth, glossy |
| 24 | KER2N | Kodak Ektachrome Radiance II Paper, smooth, |
| 25 | | semi-matt |
| 26 | KER2SF | Kodak Ektachrome Radiance II Select Material, |
| 27 | | smooth, glossy |
| 28 | KER3F | Kodak Ektachrome Radiance III Paper, smooth, glossy |
| 29 | KER3N | Kodak Ektachrome Radiance III Paper, smooth, |
| 30 | | semi-matt |
| 31 | KER3SF | Kodak Ektachrome Radiance III Select Material, |
| 32 | | smooth, glossy |
| 33 | KERCHCF | Kodak Ektachrome Radiance HC Copy Paper, |
| 34 | | smooth, glossy |
| 35 | KERCHCN | Kodak Ektachrome Radiance HC Copy Paper, |
| 36 | | smooth, semi-matt |
| 37 | KERCN | Kodak Ektachrome Radiance Copy Paper, smooth, |
| 38 | | semi-matt |
| 39 | KERCTF | Kodak Ektachrome Radiance Thin Copy Paper, |
| 40 | | smooth, glossy |
| 41 | KERCTN | Kodak Ektachrome Radiance Thin Copy Paper, |
| 42 | | smooth, semi-matt |
| 43 | KEROM | Kodak Ektachrome Radiance Overhead Material, |
| 44 | | transparent ESTAR Thick Base |
| 45 | | |
| 46 | | Color Negative Papers & Transparency Materials |
| 47 | KD2976E | Kodak Digital Paper, Type 2976, fine-grained, lustre |
| 48 | KD2976F | Kodak Digital Paper, Type 2976, smooth, glossy |
| 49 | KD2976N | Kodak Digital Paper, Type 2976, smooth, semi-matt |
| 50 | KDCRA | Kodak Duraclear RA Display Material, clear |

| 1  | KDFRAF | Kodak Duraflex RA Print Material, smooth, glossy |
| 2  | KDT2 | Kodak Duratrans Display Material, translucent |
| 3  | KDTRA | Kodak Duratrans RA Display Material, translucent |
| 4  | KECC | Kodak Ektacolor, Type C |
| 5  | KECE | Kodak Ektacolor Professional Paper, fine-graned, |
| 6  |  | lustre |
| 7  | KECF | Kodak Ektacolor Professional Paper, smooth, glossy |
| 8  | KECN | Kodak Ektacolor Professional Paper, smooth, |
| 9  |  | semi-matt |
| 10 | KEC | Kodak Ektacolor |
| 11 | KEP2E | Kodak Ektacolor Portra II Paper, Type 2839, |
| 12 |  | fine-grained, lustre |
| 13 | KEP2F | Kodak Ektacolor Portra II Paper, Type 2839, smooth, |
| 14 |  | glossy |
| 15 | KEP2N | Kodak Ektacolor Portra II Paper, Type 2839, smooth, |
| 16 |  | semi-matt |
| 17 | KEP3E | Kodak Ektacolor Portra III Paper, fine-grained, lustre |
| 18 | KEP3F | Kodak Ektacolor Portra III Paper, smooth, glossy |
| 19 | KEP3N | Kodak Ektacolor Portra III Paper, smooth, semi-matt |
| 20 | KES2E | Kodak Ektacolor Supra II Paper, fine-grained, lustre |
| 21 | KES2F | Kodak Ektacolor Supra II Paper, smooth, glossy |
| 22 | KES2N | Kodak Ektacolor Supra II Paper, smooth, semi-matt |
| 23 | KES3E | Kodak Ektacolor Supra III Paper, fine-grained, lustre |
| 24 | KES3F | Kodak Ektacolor Supra III Paper, smooth, glossy |
| 25 | KES3N | Kodak Ektacolor Supra III Paper, smooth, semi-matt |
| 26 | KESE | Kodak Ektacolor Supra Paper, fine-grained, lustre |
| 27 | KESF | Kodak Ektacolor Supra Paper, smooth, glossy |
| 28 | KESN | Kodak Ektacolor Supra Paper, smooth, semi-matt |
| 29 | KET1 | Kodak Ektatrans RA Display Material, smooth, |
| 30 |  | semi-matt |
| 31 | KEU2E | Kodak Ektacolor Ultra II Paper, fine-grained, lustre |
| 32 | KEU2F | Kodak Ektacolor Ultra II Paper, smooth, glossy |
| 33 | KEU2N | Kodak Ektacolor Ultra II Paper, smooth, semi-matt |
| 34 | KEU3E | Kodak Ektacolor Ultra III Paper, fine-grained, lustre |
| 35 | KEU3F | Kodak Ektacolor Ultra III Paper, smooth, glossy |
| 36 | KEU3N | Kodak Ektacolor Ultra III Paper, smooth, semi-matt |
| 37 | KEUE | Kodak Ektacolor Ultra Paper, fine-grained, lustre |
| 38 | KEUF | Kodak Ektacolor Ultra Paper, smooth, glossy |
| 39 | KEUN | Kodak Ektacolor Ultra Paper, smooth, semi-matt |
| 40 |  |  |
| 41 |  | Inkjet Papers & Films |
| 42 | KEJFC50HG | Kodak Ektajet 50 Clear Film LW4, Polyester Base, |
| 43 |  | clear |
| 44 | KEJFLFSG | Kodak Ektajet Film, Type LF, semi-gloss |
| 45 | KEJFW50HG | Kodak Ektajet 50 White Film, Polyester Base, high |
| 46 |  | gloss |
| 47 | KEJP50SG | Kodak Ektajet 50 Paper, RC Base, semi-gloss |
| 48 | KEJPC | Kodak Ektajet Coated Paper |
| 49 | KEJPCHW | Kodak Ektajet Heavy Weight Coated Paper |
| 50 | KEJPEFSG | Kodak Ektajet Paper, Type EF, semi-gloss |

JA1183

| | | KEJPLFSG | Kodak Ektajet Paper, Type LF, semi-gloss |
|---|---|---|---|
| | Polaroid | POCP | Polaroid OneFilm Color Print |
| | | PPCP | Polaroid Professional High Contrast Polychrome |
| | | PPGH | Polaroid Polygraph HC |
| | | PPLB | Polaroid Polablue BN |
| | | PPPN | Polapan CT |
| | Reserved | -- | See Table 20 |

Table 26: Digital Formats.  Table 26 Digital lists supported file

formats used in digital imaging. 159 default values are provided

in the preferred embodiment although any number of digital media

are permissible.


Table 27: Digital

| Category | Literal | Description |
|---|---|---|
| Digital | ACAD | AutoCAD database or slide |
| | ASCI | ASCII graphics |
| | ATK | Andrew Toolkit raster object |
| | AVI | Microsoft video |
| | AVS | AVS X image |
| | BIO | Biorad confocal file |
| | BMP | Microsoft Windows bitmap image |
| | BMPM | Microsoft Windows bitmap image, monochrome |
| | BPGM | Bentleyized Portable Graymap Format |
| | BRUS | Doodle brush file |
| | CGM | CGM |
| | CDR | Corel Draw |
| | CIF | CIF file format for VLSI |
| | CGOG | Compressed GraphOn graphics |
| | CMUW | CMU window manager bitmap |
| | CMX | Corel Vector |
| | CMYK | Raw cyan, magenta, yellow, and black bytes |
| | CQT | Cinepak Quicktime |
| | DVI | Typesetter DeVice Independent format |
| | EPS | Adobe Encapsulated PostScript |
| | EPSF | Adobe Encapsulated PostScript file format |
| | EPSI | Adobe Encapsulated PostScript Interchange format |

68

| 1 | FIG | Xfig image format |
|---|---|---|
| 2 | FIT | Flexible Image Transport System |
| 3 | FLC | FLC movie file |
| 4 | FLI | FLI movie file |
| 5 | FST | Usenix FaceSaver(tm) file |
| 6 | G10X | Gemini 10X printer graphics |
| 7 | GEM | GEM image file |
| 8 | GIF | CompuServe Graphics image |
| 9 | GIF8 | CompuServe Graphics image (version 87a) |
| 10 | GOUL | Gould scanner file |
| 11 | GRA | Raw gray bytes |
| 12 | HDF | Hierarchical Data Format |
| 13 | HIPS | HIPSIfile |
| 14 | HIS | Image Histogram |
| 15 | HPLJ | Hewlett Packard LaserJet format |
| 16 | HPPJ | Hewlett Packard PaintJet |
| 17 | HTM | Hypertext Markup Language |
| 18 | HTM2 | Hypertext Markup Language, level 2 |
| 19 | HTM3 | Hypertext Markup Language, level 3 |
| 20 | HTM4 | Hypertext Markup Language, level 4 |
| 21 | ICON | Sun icon |
| 22 | ICR | NCSA Telnet Interactive Color Raster graphic format |
| 23 | IFF | Electronic Arts |
| 24 | ILBM | Amiga ILBM file |
| 25 | IMG | Img-whatnot file |
| 26 | JBG | Joint Bi-level image experts Group file interchange format |
| 27 | JPG | Joint Photographic experts Group file interchange format |
| 28 | LISP | Lisp machine bitmap file |
| 29 | MACP | Apple MacPaint file |
| 30 | MAP | Colormap intensities and indices |
| 31 | MAT | Raw matt bytes |
| 32 | MCI | MCI format |
| 33 | MGR | MGR bitmap |
| 34 | MID | MID format |
| 35 | MIF | ImageMagick format |
| 36 | MITS | Mitsubishi S340-10 Color sublimation |
| 37 | MMM | MMM movie file |
| 38 | MOV | Movie format |
| 39 | MP2 | Motion Picture Experts Group (MPEG) interchange format, level |
| 40 | | 2 |
| 41 | MP3 | Motion Picture Experts Group (MPEG) interchange format, level |
| 42 | | 3 |
| 43 | MPG | Motion Picture Experts Group (MPEG) interchange format, level |
| 44 | | 1 |
| 45 | MSP | Microsoft Paint |
| 46 | MTV | MTV ray tracer image |
| 47 | NKN | Nikon format |
| 48 | NUL | NULL image |
| 49 | PBM | Portable BitMap |
| 50 | PCD | Kodak Photo-CD |

69

| 1 | PCX | Zsoft IBM PC Paintbrush |
| 2 | PDF | Portable Document Format table |
| 3 | PGM | Portable GrayMap format |
| 4 | PGN | Portable GrayMap format |
| 5 | PI1 | Atari Degas .pi1 Format |
| 6 | PI3 | Atari Degas .pi3 Format |
| 7 | PIC | Apple Macintosh QuickDraw/PICT |
| 8 | PLOT | Unix Plot(5) format |
| 9 | PNG | Portable Network Graphics |
| 10 | PNM | Portable anymap |
| 11 | PPM | Portable pixmap |
| 12 | PPT | Powerpoint |
| 13 | PRT | PRT ray tracer image |
| 14 | PS1 | Adobe PostScript, level 1 |
| 15 | PS2 | Adobe PostScript, level 2 |
| 16 | PSD | Adobe Photoshop |
| 17 | QRT | QRT ray tracer |
| 18 | RAD | Radiance image |
| 19 | RAS | CMU raster image format |
| 20 | RGB | Raw red, green, and blue bytes |
| 21 | RGBA | Raw red, green, blue, and matt bytes |
| 22 | RLE | Utah Run length encoded image |
| 23 | SGI | Silicon Graphics |
| 24 | SIR | Solitaire file format |
| 25 | SIXL | DEC sixel color format |
| 26 | SLD | AutoCADA slide filea |
| 27 | SPC | Atari compressed Spectrum file |
| 28 | SPOT | SPOT satelite images |
| 29 | SUN | SUN Rasterfile |
| 30 | TGA | Targa True Vision |
| 31 | TIF | Tagged Image Format |
| 32 | TIL | Tile image with a texture |
| 33 | TXT | Raw text |
| 34 | UIL | Motif UIL icon file |
| 35 | UPC | Universal Product Code bitmap |
| 36 | UYVY | YUV bit/pixel interleaved (AccomWSD) |
| 37 | VIC | Video Image Communication and Retrieval (VICAR) |
| 38 | VID | Visual Image Directory |
| 39 | VIF | Khoros Visualization image |
| 40 | WRL | Virtual reality modeling language |
| 41 | X1BM | X10 bitmap |
| 42 | XBM | X11 bitmap |
| 43 | XCC | Constant image of X server color |
| 44 | XIM | XIM file |
| 45 | XPM | X11 pixmap |
| 46 | XWD | X Window system window Dump |
| 47 | XXX | Image from X server screen |
| 48 | YBM | Bennet Yee "face" file |
| 49 | YUV | Abekas Y- and U- and Y-file |
| 50 | YUV3 | Abekas Y- and U- and Y-file, 3 |

JA1186

| | | ZEIS | Zeiss confocal file |
|---|---|---|---|
| 1 | | ZEIS | Zeiss confocal file |
| 2 | | ZINC | Zinc bitmap |
| 3 | Facsimile | -- | See Table 25 |
| 4 | Reserved | -- | See Table 20 |
| 5 | | | |

6   **Conclusion**

7       This invention supports an indefinite number of formal

8   objects.  At the current time, supported objects are parent-

9   child encoding, 1D and 2D barcoding, and a reasonably sized

10  schemata.  The invention's means of classification and archive

11  notation is sufficiently flexible to be used in a variety of

12  imaging situations shown.  The examples given are meant to

13  provide illustrations only and not to be limiting with respect

14  to the types of imaging situations to which the present

15  invention might apply.

16      The rules and notations specified in the preceding tables

17  provide a basis for universal image enumeration encoding,

18  decoding, and processing suitable for development of diverse

19  implementations of the invention.

20  **ASIA**

21  The present invention is implemented in a variety of hardware

22  embodiments.  Common to these embodiments is the ability of the

23  equipment to process information(i.e. a CPU of some type is

24  required, a means for entering data satisfying the require

25  syntax is necessary (i.e. some form of user data entry in the

26  form of a keyboard, optical reader, voice entry, point-and-

27  click, or other data entry means), a built-in encoding

28  mechanism or some form of data storage means to hold, at least

71

1    temporarily the data input by the user, a data recording means

2    in order to process the information and output a barcode or

3    other graphical representation of data.

4    **Processing flow**

5    Referring to Figure 7 the processing flow of ASIA is shown.

6         Command 701 is a function call that accesses the

7    processing to be performed by ASIA

8         Input format 703 is the data format arriving to ASIA.  For

9    example, data formats from Nikon, Hewlett Packard, Xerox,

10   Kodak, etc., are input formats.

11        ILF (705,707, and 709) are the Input Language Filter

12   libraries that process input formats into ASIA-specific format,

13   for further processing.  For example, an ILF might convert a

14   Nikon file format into an ASIA processing format.  ASIA

15   supports an unlimited number of ILFs.

16        Configuration 711 applies configuration to ILF results.

17   Configuration represents specifications for an application,

18   such as length parameters, syntax specifications, names of

19   component tables, etc.

20        CPF (713,715, and 717) are Configuration Processing

21   Filters which are libraries that specify finite bounds for

22   processing, such pre-processing instructions applicable to

23   implementations of specific devices.   ASIA supports an

24   unlimited number of CPFs.    Processing 719 computes output,

25   such as data converted into numbers.

26        Output format 721 is a structured output used to return

72

1   processing results.

2       OLF (723, 725, 727) are Output Language Filters which are
3   libraries that produce formatted output, such as barcode
4   symbols, DBF, Excel, HTML, L^TEX, tab delimited text,
5   WordPerfect, etc.  ASIA supports an unlimited number of OLFs.
6       Output format driver 729 produces and/or delivers data to
7   an Output Format Filter. OFF (731, 733, 735) are Output Format
8   Filters which are libraries that organize content and
9   presentation of output, such as outputting camera shooting
10  data, database key numbers, data and database key numbers, data
11  dumps, device supported options, decoded number values, etc.
12  ASIA supports an unlimited number of OLFs.

13  **Numeric ranges**

14  ASIA uses indefinite numeric ranges for all of its variables
15  except date, which supports years 0000-9999.  ASIA provides
16  default values for the numeric ranges, which represent a
17  preferred embodiment, and are not meant to be limiting. Indeed
18  the present invention can accommodate additional values
19  depending upon the implementation selected. And the current
20  ranges and values can be easily extended, depending upong the
21  needs of specific implementation.

22  **Location numbers.**  Location numbers track any number of
23  generation, any number of lots, and date to the day.
24  Optionally, location numbers track time to any granularity of
25  accuracy, any number of concurrent authors, any number of
26  devices, any number of images in an archive, any number of

73

1    additional data for future extensibility, and any number of

2    additional data for user customization.

3    **Image numbers.**  Image numbers track any number of imaging

4    categories (2 defaults), any number of media sizes (47

5    defaults); any number of push settings or any number of dynamic

6    range ("bit depth") settings, keyed by format; any number of

7    transparency media types (60 defaults), any number of negative

8    media types (115 defaults), any number of print media types

9    (209 defaults), any number of packages (90 defaults), and any

10   number of digital formats (159 defaults); any unit of

11   resolution; any number of stain (presentation) forms (9

12   defaults); and any number of image formats (12 defaults).

13   Finally, image numbers optionally support any number of

14   additional data for future extensibility, and any number of

15   additional data for user customization.

16   **Parent numbers.**  Parent numbers track parent conception date.

17   Since an archive can have any number of images, an archive also

18   contains any number of parents.  Parent numbers optionally

19   support any unit of additional data for future extensibility,

20   and any unit of additional data for user customization.

21        All variables use unbounded value ranges except for the

22   variable *date*, which supports years 0000-9999.  Table 8

23   **Variables with unbounded ranges** specifically identifies

24   unbounded variables, organized by type of number **(Number)**,

25   category of functionality **(Category)**, and corresponding

26   variable **(Variable)**.

74

**JA1190**

1       Syntactic rules guarantee consistency across all

2    implementations; see **Syntax: Tables 10-11** above.  No matter how

3    differently implementations are customized, all implementations

4    that are compliant with the encoding scheme described herein

5    will exchange data.

6       **Number**            **Category**                           **Variable**

| 7  | location | number of generations | *generation* |
|----|----------|-----------------------|--------------|
| 8  | location | number of lots in an archive | *sequence* |
| 9  | location | number of units in a lot | *unit* |
| 10 | location | number of authors | *author* |
| 11 | location | number of devices | *device* |
| 12 | location | granularity of time accuracy | *time* |
| 13 | location | specification extensibility | *locationRes* |
| 14 | location | user customization | *locationCus* |
| 15 | image | number of categories | *category* |
| 16 | image | number of media | *media* |
| 17 | image | number of software packages | *set* |
| 18 | image | number of stains | *stain* |
| 19 | image | number of formats | *format* |
| 20 | image | range of push settings | *push* |
| 21 | image | range of bit depth | *bit* |
| 22 | image | range of size | *size* |
| 23 | image | range of resolution | *resolution* |
| 24 | image | specification extensibility | *imageRes* |
| 25 | image | user customization | *imageCus* |
| 26 | parent | granularity of time accuracy | *parent* |
| 27 | parent | specification extensibility | *parentRes* |
| 28 | parent | user customization | *parentCus* |

29      Table 8: Variables with unbounded ranges

30      **Examples.**  More specifically, 4 examples will illustrate

31   ASIA's interoperability.  All of these examples use a 4

32   digit *sequence* definition (i.e., supporting 9,999 lots),

33   but each example adjusts the *unit* definition and employs

34   the optional variables *device* and/or *author*.  Values of

35   *device* and *author* are adjusted irregularly across the

36   examples.

37      **Example.**  Using 36 unit lots, useful for traditional 35mm

75

**JA1191**

1    photography, this creates an upper bound of 359,964 images
2    per archive (or 7,199 images a year for 50 years).  1
3    digit device encoding is used supporting up to 10
4    concurrently used devices.
5    **Example**.  Using 99 unit lots, useful for digital imaging,
6    this creates an upper bound of 989,901 images per archive
7    (or 19,798 images a year for 50 years).  2 digit device
8    encoding is used supporting up to 100 concurrently used
9    devices.
10   **Example**.  Using 9,999 unit lots, useful for photocopy
11   imaging, this creates an upper bound of 100 million
12   (99,980,001) images per archive (or 2 million [1,999,600]
13   images a year for 50 years).  3 character author encoding
14   is used supporting up to 676 concurrent authors in the
15   archive, device is unspecified.
16   **Example**.  Using 999,999 unit lots, suitable for motion
17   imaging, this creates an upper bound of 9,998,990,001 (10
18   trillion) images per archive (or 200 million [199,979,800]
19        images a year for 50 years).  4 character author
20   encoding is used supporting up to 456,976 concurrent
21   authors; and 3 digit device encoding is used supporting up
22   to 1000 concurrently used devices per author.
23       Data from all of the above example can be seamlessly
24   shared using the encoding scheme of the present invention.
25   **Parent-child Processing**
26       **Implementation**.  ASIA provides native support of parent

76

1  decoding and is written to support parent encoding.  However,

2  since parent-child encoding functionality must operate directly

3  with resolvers (see Figure 3) multi-generation encoding is left

4  to device specific implementations.

5      ASIA implements parent-child support through the

6  'schemata' and 'engine' components of the Figure 5

7  **Implementation** through extensive use of OLF's (See Figure 7

8  ASIA).

9  **Barcode Processing**

10  **Implementation**. ASIA natively supports 1D Code 39 and 2D Data

11  Matrix barcodes.  ASIA implements barcoding through the

12  'engine' component of the implementation.

13  **Code Instantiation**

14      The ASIA engine library specifically implements the

15  invention's formal requirements for classification and archival

16  notation and in this sense provides a reference implementation

17  of the invention's relations.

18      ASIA is written in ANSI C++, with flexibility and

19  performance improving extensions for Win32 and SVID compliant

20  UNIXes.  It has been developed to work as a library for

21  inclusion into other software, or as a core engine to which

22  interfaces are written.  ASIA is modularized into small,

23  convenient encoding and decoding filters (libraries): ILFs,

24  CPFs, OLFs, and OFFs.  To create a full implementation, a

25  developer often needs only to write 1 filter of each variety.

26  These filters are simple, sometimes a few lines of code each.

77

1

2       Such extensibility is designed to permit rapid porting of

3   ASIA to diverse applications.  For example, with minimal

4   effort, a programmer may port ASIA to a new device or software

5   package.  With little or no customization, the ASIA engine

6   library may plug into pre-existing applications, serve as a

7   back-end for newly written interfaces, or be included directly

8   into chips with tabular information maintained through Flash

9   ROM upgrades, etc.  ASIA illustrates all 3 layers of the

10  invention, as characterized in Figure 1.  Specifically, ASIA

11  provides a robust set of native functionality in a core code

12  offering. The core code has been developed for extreme, rapid,

13  and convenient extensibility.  ASIA's extensibility provides

14  theoretically unlimited interoperability with devices,

15  mechanisms, and software, while requiring absolutely minimal

16  development effort and time.

17      It is expected that ASIA subsumes the functionality needed

18  by most applications for which the Automated System for Image

19  Archiving applies, but ASIA itself merely is one implementation

20  of the invention's formal specifications presented in §4.2.

21  **Utility**

22      For the author, devices that implement this invention can

23  provide a convenient, accurate, and flexible tracking system

24  that builds cumulatively and automatically into a

25  comprehensive, rationally organized archival system that

26  required no archival knowledge whatsoever to use.  This can

78

1    reduce many administrative needs facing those who use image-

2    producing devices. Similarly, after a user initializes the

3    systems, the system will work without user intervention.

4        For example, the need for photographic assistants could be

5    curtailed in professional photography.  Using a device

6    constructs an archive without human intervention, and clicking

7    a barcode reader on an image displays image data.

8        For the archivist, mechanisms implementing this invention

9    can automate exact and rapid tacking of every image in a given

10   archive, for inventory/sales, author identification, historical

11   record, etc.   For example, an advertising agency could recall

12   client information and image production facts from a click of a

13   barcode reader.  A newspaper could process, identify, and track

14   images from its photographic staff through automated slide

15   sorting machines.  Museums could automate collection and

16   inventory services as a matter of course in receiving new

17   materials.

18       For the manufacturer, implementations of this invention

19   can provide devices with automated encoding, decoding, and

20   processing systems, included in chips or accompanying software.

21   A device can produce self-identifying enumeration which

22   interoperates with  other devices by the same manufacturer, or

23   with other devices from other manufacturers.

24       For example, a manufacturer could provide consumers with a

25   seamless mechanism to track image evolutions, from film

26   developing to digital editing to paper production.  Or

79

**JA1195**

1   hospitals could automatically track patient x-rays and MRI

2   scans as a matter of course in using the equipment.  The

3   equipment could be manufactured by one or different

4   manufacturers, and the system would work seamlessly for the

5   end-user.

6

**JA1196**

1    I Claim:

2    1.   A system for universal image tracking comprising:

3         An image forming apparatus;

4         A CPU integral to the image forming apparatus;

5         User input means connected to the CPU for receiving user

6         input;

7         Logic stored in the CPU for receiving user input and

8         creating archive data based upon the user input; and

9         A Graphic code producer responsive to the CPU for

10        producing graphic codes representative of the archive

11        data.

12   2.   The system for universal image tracking of claim 1 wherein

13        the image forming apparatus is a film based camera.

14   3.   The system for universal image tracking of claim 1 wherein

15        the image forming apparatus is a digital based camera.

16   4.   The system for universal image tracking of claim 1 wherein

17        the image forming apparatus is a video camera.

18   5.   The system for universal image tracking of claim 1 wherein

19        the image forming apparatus is a digital image processor.

20   6.   The system for universal image tracking of claim 1 wherein

21        the image forming apparatus is a medical image sensor.

22   7.   The system for universal image tracking of claim 6 wherein

23        the medical image sensor is a magnetic resonance imager.

24   8.   The system for universal image tracking of claim 6 wherein

25        the medical image sensor is an X-ray imager.

26   9.   The system for universal image tracking of claim 6 wherein

81

1       the medical image sensor is a CAT scan imager.

2   10.  The system for universal image tracking of claim 1 wherein

3       the user input means is a push button input.

4   11.  The system for universal image tracking of claim 1 wherein

5       the user input means is a keyboard.

6   12.  The system for universal image tracking of claim 1 wherein

7       the user input means is voice recognition equipment.

8   13.  The system for universal image tracking of claim 1 wherein

9       the graphic codes are one-dimensional.

10  14.  The system for universal image tracking of claim 1 wherein

11      the graphic codes are two-dimensional.

12  15.  The system for universal image tracking of claim 1 wherein

13      the graphic codes are three-dimensional.

14  16.  The system for universal image tracking of claim 1 wherein

15      the logic comprises configuration input processing for

16      determining bounds for the archive data generation based

17      on configuration input;

18      a resolver for determining the correct value of archive

19      data representing the image forming apparatus and the

20      configuration input; and

21      a timer for creating date/time stamps.

22  17.  The system for universal image tracking of claim 16

23      wherein the timer further comprises a filter for

24      processing the time stamp according to configuration input

25      rules.

26  18.  The system for universal image tracking of claim 16

82

1   wherein the configuration input comprises at least

2   generation, sequence, data, unit, and constants

3   information.

4   19.   The system for universal image tracking of claim 1 further

5         comprising a graphic code reader connected to the CPU for

6         reading a graphic code on an image representing archive

7         information; and

8         A decoder for decoding the archive information represented

9         by the graphic code.

10  20.   The system for universal image tracking of claim 19

11        wherein the logic further comprises:

12        logic for receiving a second user input and creating

13        lineage archive information relating to the image based

14        upon the archive information and the second user input;

15        and

16        logic for producing graphic code representative of the

17        lineage archive data.

18  21.   The system for universal image tracking of claim 1 wherein

19        the archive data comprises location attributes of an

20        image.

21  22.   The system for universal image tracking of claim 1 wherein

22        the archive data comprises physical attribute of an image.

23  23.   The system for universal image tracking of claim 1 wherein

24        each image in an image archive has unique archive data

25        associated with each image.

26  24.   The system for universal image tracking of claim 21

83

1       wherein the location data comprises at least:

2       image generation depth;

3       serial sequence of lot within an archive;

4       serial sequence of unit within a lot;

5       date location of a lot within an archive;

6       date location of an image within an archive;

7       author of the image; and

8       device producing the image.

9    25.   The system for universal image tracking of claim 16

10         wherein the timer tracks year in the range of from 0000 to

11         9999.

12   26.   The system for universal image tracking of claim 16

13         wherein the timer tracks all 12 months of the year.

14   27.   The system for universal image tracking of claim 16

15         wherein the timer tracks time in at least hours and

16         minutes.

17   28.   The system for universal image tracking of claim 16

18         wherein the timer tracks time in fractions of a second.

19   29.   The system for universal image tracking of claim 16

20         wherein the system is ISO 8601:1988 compliant.

21   30.   The system for universal image tracking of claim 22

22         wherein the physical attributes comprise at least:

23         image category;

24         image size;

25         push status;

26         digital dynamic range;

84

1       image medium;

2       image resolution;

3       image stain; and

4       image format.

5   31. The system for universal image tracking of claim 20

6       wherein the lineage archive information comprises a parent

7       number.

8   32. The system for universal image tracking of claim 31

9       wherein the parent number comprises at least:

10      a parent conception date; and

11      a parent conception time.

12  33. A method for universally tracking images comprising:

13      inputting raw image data to an image forming apparatus;

14      inputting image-related data; creating first archive data

15      based upon the image-related data; and translating the

16      first archive data into a form that can be attached to the

17      raw image data.

18  34. The method for universally tracking images of claim 33

19      wherein the raw image data is from a film based camera.

20  35. The method for universally tracking images of claim 33

21      wherein the raw image data is from a digital camera.

22  36. The method for universally tracking images of claim 33

23      wherein the raw image data is from a video camera.

24  37. The method for universally tracking images of claim 33

25      wherein the raw image data is from a digital image

26      processor.

85

1   38.  The method for universally tracking images of claim 33
2        wherein the raw image data is from a medical image sensor.
3   39.  The method for universally tracking images of claim 38
4        wherein the medical image sensor is a magnetic resonance
5        imager.
6   40.  The method for universally tracking images of claim 38
7        wherein the raw image data is from an X-ray imager.
8   41.  The method for universally tracking images of claim 38
9        wherein the raw image data is from a CAT scan imager.
10  42.  The method for universally tracking images of claim 33
11       wherein the inputting image related data occurs without
12       user intervention.
13  43.  The method for universally tracking images of claim 33
14       wherein the inputting of image related data occurs via
15       push button input.
16  44.  The method for universally tracking images of claim 33
17       wherein the inputting of image related data occurs via
18       voice recognition equipment.
19  45.  The method for universally tracking images of claim 33
20       wherein the inputting of image related data occurs via a
21       keyboard.
22  46.  The method for universally tracking images of claim 33
23       wherein the form of the translated archive data is an
24       electronic file.
25  47.  The method for universally tracking images of claim 33
26       wherein the form of the translated data is a graphic code.

86

JA1202

1   48.  The method for universally tracking images of claim 47
2        wherein the graphic code is one dimensional.
3   49.  The method for universally tracking images of claim 47
4        wherein the graphic code is two dimensional.
5   50.  The method for universally tracking images of claim 47
6        wherein the graphic code is three dimensional.
7   51.  The method for universally tracking images of claim 33
8        wherein the image data comprises image data and second
9        archive data.
10  52.  The method for universally tracking images of claim 33
11       further comprising reading the second archive data; and
12       creating lineage archive information relating to the image
13       based upon the first archive information and second
14       archive information.
15  53.  The method for universally tracking images of claim 33
16       wherein the inputting of image related data comprises
17       configuration input processing for determining bounds for
18       the archive data generation based upon configured input;
19       determining the correct value of archive data representing
20       the image forming apparatus and configuration input; and
21       date/time stamping the image related data.
22  54.  The method for universally tracking images of claim 53
23       wherein date/time stamping is filtered according to
24       configuration input rules.
25  55.  The method for universally tracking images of claim 33
26       wherein the configuration input comprises at least

87

1       generation, sequence, data, unit, and constants

2       information.

3   56. The method for universally tracking images of claim 33

4       wherein the first archive data comprises location

5       attributes of an image.

6   57. The method for universally tracking images of claim 33

7       wherein the first archive data comprises physical

8       attributes of an image.

9   58. The method for universally tracking images of claim 56

10      wherein the location attributes comprise at least:

11      image generation depth;

12      serial sequence of lot within an archive;

13      serial sequence of unit within a lot;

14      date location of a lot within an archive;

15      date location of an image within an archive;

16      author of the image; and

17      device producing the image.

18  59. The method for universally tracking images of claim 57

19      wherein the physical attributes of an image comprise at

20      least:

21      image category;

22      image size;

23      push status;

24      digital dynamic range;

25      image medium;

26      software set;

88

1        image resolution;

2        image stain; and

3        image format.

4   60.  The method for universally tracking images of claim 52

5        wherein the lineage archive information comprises a parent

6        number.

7   61.  The method for universally tracking images of claim 52

8        wherein the parent number comprises at least:

9        a parent conception date; and

10       a parent conception time.

11  62.  The system for universal image tracking of claim 1 wherein

12       the input means comprises a magnetic card reader.

13  63.  The system for universal image tracking of claim 1 wherein

14       the input means comprises a laser scanner.

15  64.  The system for universal image tracking of claim 31

16       wherein the physical attributes further comprise;

17       imageRes; and

18       imageCus.

19  65.  The method for universally tracking images of claim 33

20       wherein the inputting image related data is via a magnetic

21       card reader.

22  66.  The method for universally tracking images of claim 33

23       wherein the inputting of image related data is via a laser

24       scanner.

25  67.  The method of universally tracking images of claim 33

26       wherein the inputting of image related data is via an

1        optical reader.

**JA1206**



**Figure 1**



**Figure 2**



Figure 1A

Figure 1B



**Figure 3**

JA1209

```
// Location identifying information
location      →      generation sequence time-stamp author device locationRes locationCus

// Physical attribute information
image         →      category size bit-or-push media set resolution stain format imageRes imageCus

// Parent identifying information
parent        →      time-stamp parentRes parentCus
```

Figure 4



**Figure 5**

JA1211



A0131-19960825T125321-01
S135F-0KPKL@0200S:2T
0
601
B0131-19960827T115511-01
S3X5I-0ACR@0200S:2P
19960825T125321
603
B0131-19960827T115512-01
S4X6I-0KEP3F@0200S:2P
19960825T125321
605
B0131-19960901T095233-01
S8X10I-0KV4325@0200S:2N
19960825T125321
607
C0131-19960901T101202-01
S16X20I-0KER2F@0200S:2P
19960901T095233
609
C0131-19960901T101203-01
S16X20I-0KER2F@0200S:2P
19960901T095233
611
C0131-19960913T145923-01
S8X10I-0KV4325@0200S:2N
19960901T095233
613
D0131-19961121T2346162-01
S32X32P-024JPG@640X480P:3D
19960901T101203
615
D0131-19961121T2346163-01
S1280X1280P-0GIF@1280X1280P:3D
19960901T101203
617
D0131-19970102T13210001-01
S85X11I-0KEJPC@600D1:5P
19960901T101203
619

**Figure 6**



**Figure 7**

# INTERNATIONAL SEARCH REPORT

**A. CLASSIFICATION OF SUBJECT MATTER**
IPC 6    H04N1/21

According to International Patent Classification (IPC) or to both national classification and IPC

**B. FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)
IPC 6    H04N

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practical, search terms used)

**C. DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category ° | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| Y | EP 0 568 161 A (XEROX CORP) 3 November 1993 | 1,33 |
| A | see the whole document | 1,16,23, 53 |
|   | --- | |
| Y | US 5 008 700 A (OKAMOTO TSUGIO) 16 April 1991 cited in the application | 1,33 |
| A | see abstract | 47 |
|   | --- | |
| A | US 5 193 185 A (LANTER DAVID) 9 March 1993 cited in the application see abstract | 1,33 |
|   | --- | |
|   | -/-- | |

☒ Further documents are listed in the continuation of box C.      ☒ Patent family members are listed in annex.

* Special categories of cited documents :

"A" document defining the general state of the art which is not considered to be of particular relevance

"E" earlier document but published on or after the international filing date

"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

"O" document referring to an oral disclosure, use, exhibition or other means

"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art.

"&" document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 12 May 1998 | 25/05/1998 |

| Name and mailing address of the ISA | Authorized officer |
|---|---|
| European Patent Office, P.B. 5818 Patentlaan 2 NL - 2280 HV Rijswijk Tel. (+31-70) 340-2040, Tx. 31 651 epo nl, Fax: (+31-70) 340-3016 | Hazel, J |

Form PCT/ISA/210 (second sheet) (July 1992)

JA1214

C.(Continuation) DOCUMENTS CONSIDERED TO BE RELEVANT

| Category | Citation of document, with indication,where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| A | CALLAGHAN V L ET AL: "STRUCTURES AND METRICS FOR IMAGE STORAGE AND INTERCHANGE" JOURNAL OF ELECTRONIC IMAGING, vol. 2, no. 2, 1 April 1993, pages 126-137, XP000369378 see Section 2.2 --- | 1,22,23, 30,33, 46,53, 57,59 |
| A | WO 86 05610 A (ALPHAREL INC) 25 September 1986 see abstract ----- | 1,23,33 |

1

Form PCT/ISA/210 (continuation of second sheet) (July 1992)

JA1215

| Patent document cited in search report | | Publication date | Patent family member(s) | | Publication date |
|---|---|---|---|---|---|
| EP 0568161 | A | 03-11-1993 | EP | 0495622 A | 22-07-1992 |
| | | | JP | 6110755 A | 22-04-1994 |
| US 5008700 | A | 16-04-1991 | NONE | | |
| US 5193185 | A | 09-03-1993 | NONE | | |
| WO 8605610 | A | 25-09-1986 | US | 4665555 A | 12-05-1987 |
| | | | AU | 577451 B | 22-09-1988 |
| | | | AU | 5458486 A | 13-10-1986 |
| | | | EP | 0217825 A | 15-04-1987 |
| | | | JP | 62502638 T | 08-10-1987 |

JA1216



**FILE COPY** BRINKS
HOFER
GILSON
&LIONE

## FACSIMILE COVER SHEET

Date:      October 31, 2001

To:       Miss Stokes, USPTO
           Filing Receipt Corrections Branch

Fax No:    703-308-7751

From:     Kent E. Genin, Esq.

Tel. No:    312-321-7732
Fax No.    312-321-4299

Client No:   10406/49
Applicants:   J. Overton et al.
U.S. Serial No. 09/872,736

**RECEIVED**

NOV 0 9 2001

Technology Center 2100

A Professional Corporation
Intellectual Property Attorneys

NBC Tower - Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611-5599
Facsimile 312-321-4299
Telephone 312-321-4200

San Jose, CA
Indianapolis, IN
Ann Arbor, MI
Arlington, VA

No. of Pages       8
(inc. this page):

Confirmation Copy To Follow:    Yes ☐    No ☒

IF YOU HAVE ANY PROBLEMS RECEIVING THIS MESSAGE,
PLEASE CALL 312-321-4200 AND ASK FOR: Michele Dolinski, Paralegal, Ext. 625

THIS MESSAGE IS INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED. IT MAY
CONTAIN PRIVILEGED, CONFIDENTIAL, ATTORNEY WORK PRODUCT, OR TRADE SECRET INFORMATION
WHICH IS EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAWS. IF YOU ARE NOT THE INTENDED
RECIPIENT, OR AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED
RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS
MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS MESSAGE IN ERROR, PLEASE NOTIFY US
IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE (AND ALL COPIES) TO US BY MAIL AT
THE ABOVE ADDRESS. WE WILL REIMBURSE YOU FOR POSTAGE.

## COVER MESSAGE:

Attached please find pursuant to a telephone converstaion between Misss
Stockes of the USTPO Filing Corrections Branch today and a paragelagl in our
office Michele Dolinski a Request for Corrected Filing Receipt for US Serial No.
09/872,736.

JA1217

I hereby certify that this correspondence is being sent
via Facsimile to the United States Postal Service,
Filking Receipt Corrections Branch, Attn: Miss Stokes
atUSPTO Fax. 703-308-7751 on:

_____October 31, 2001_____
Date of Deposit

_____*Kent Grenn*_____
Name of applicant, assignee or
Registered Representative

_____(signature)_____
Signature

_____*10/31/2001*_____
Date of Signature

Our Case No. 10406/49

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

John K. Overton et al.

Serial No. 09/872,736

Filing Date: June 1, 2001

For    METHOD AND APPARATUS FOR
      MANAGING LOCATION
      INFORMATION IN A NETWORK

Examiner: Unknown

Group Art Unit No. 2152

### REQUEST FOR CORRECTION OF FILING RECEIPT

Commissioner for Patents
Washington, D.C. 20231

Attention:    Patent Application Filing Receipt Corrections
           Customer Correction Branch
           Miss Stokes - Fax 703-308-7751

Madam:

      Applicant requests the issuance of a corrected filing receipt (copy

enclosed) for the above-referenced patent application, and in support of this request

respectfully states:



**Domestic Pri rity Data As Claimed By Applicant:**

Please delete the following:

"THIS APPLICATION IS A CIP OF 09/661,222 09/13/2000 WHICH
CLAIMS BENEFIT OF 60/153,709 09/14/1999
THIS APPLICATION 09/872,736 CLAIMS BENEFIT OF 60/209,070
06/02/2000"

Please insert the following:

--THIS APPLICATION IS A CIP OF 09/661,222 FILED 09/13/00, A CIP
OF 09/503,441 FILED 02/14/00, A CIP OF 09/367,461 FILED 08/13/99,
AND A CIP OF 09/111,896 FILED 07/08/98.

THIS APPLICATION CLAIMS THE BENEFIT OF 60/209,070 FILED
06/02/00 AND 60/277,408 FILED 03/19/01.--

Applicants' attorney states that on September 10, 2001 a Preliminary
Amendment was filed requesting the first paragraph of the specification be amended
for the captioned application to correct the priority claim language. A copy of the
Preliminary Amendment as filed is enclosed for the convenience of the Filing
Receipt Corrections branch.

Applicants respectfully request a Corrected Filing Receipt be issued for
U.S. Serial No. 09/872,736 reflecting the above-referenced priority data. If any fees
are required with regard to these corrections The Commissioner is hereby
authorized to charge applicants' attorneys Deposit Account No. 23-1925. A
duplicate copy of this sheet is enclosed.

Respectfully submitted,

Kent E. Genin, Reg. No. 37,384
Attorney for Applicants

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, ILLINOIS 60610
(312) 321-4200

JA1219

*Copy*

I hereby certify that this correspondence is being sent
via Facsimile to the United States Postal Service.
Filking Receipt Corrections Branch, Attn: Miss Stokes
atUSPTO Fax. 703-308-7751 on:

| October 31, 2001 |
| Date of Deposit |

*Ken F Gevvn*

Name of applicant, assignee or
Registered Representative

*[signature]*

Signature

*10/31/2001*

Date of Signature

Our Case No. 10406/49

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

John K. Overton et al.

Serial No. 09/872,736

Filing Date: June 1, 2001

For    METHOD AND APPARATUS FOR
MANAGING LOCATION
INFORMATION IN A NETWORK

Examiner: Unknown

Group Art Unit No. 2152

## REQUEST FOR CORRECTION OF FILING RECEIPT

Commissioner for Patents
Washington, D.C. 20231

Attention:    Patent Application Filing Receipt Corrections
Customer Correction Branch
Miss Stokes - Fax 703-308-7751

Madam:

Applicant requests the issuance of a corrected filing receipt (copy

enclosed) for the above-referenced patent application, and in support of this request

respectfully states:

JA1220



**Domestic Priority Data As Claimed By Applicant:**

Please delete the following:

"THIS APPLICATION IS A CIP OF 09/661,222 09/13/2000 WHICH
CLAIMS BENEFIT OF 60/153,709 09/14/1999
THIS APPLICATION 09/872,736 CLAIMS BENEFIT OF 60/209,070
06/02/2000"

Please insert the following:

--THIS APPLICATION IS A CIP OF 09/661,222 FILED 09/13/00, A CIP
OF 09/503,441 FILED 02/14/00, A CIP OF 09/367,461 FILED 08/13/99,
AND A CIP OF 09/111,896 FILED 07/08/98.

THIS APPLICATION CLAIMS THE BENEFIT OF 60/209,070 FILED
06/02/00 AND 60/277,408 FILED 03/19/01.--

Applicants' attorney states that on September 10, 2001 a Preliminary

Amendment was filed requesting the first paragraph of the specification be amended

for the captioned application to correct the priority claim language. A copy of the

Preliminary Amendment as filed is enclosed for the convenience of the Filing

Receipt Corrections branch.

Applicants respectfully request a Corrected Filing Receipt be issued for

U.S. Serial No. 09/872,736 reflecting the above-referenced priority data. If any fees

are required with regard to these corrections The Commissioner is hereby

authorized to charge applicants' attorneys Deposit Account No. 23-1925. A

duplicate copy of this sheet is enclosed.

Respectfully submitted,

Kent E. Genin, Reg. No. 37,384
Attorney for Applicants

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, ILLINOIS 60610
(312) 321-4200

JA1221



## UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, D.C. 20231
www.uspto.gov

| APPLICATION NUMBER | FILING DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | DRAWINGS | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|---|
| 09/872,736 | 06/01/2001 | 2152 | 765 | 10406/49 | 15 | 45 | 6 |

**CONFIRMATION NO. 3927**

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610



UPDATED FILING RECEIPT

*OC000000006925385*

Date Mailed: 10/19/2001

RECEIVED
OCT 2 3 2001
U.S. DOCKET

Receipt is acknowledged of this nonprovisional Patent Application. It will be considered in its order and you will be notified as to the results of the examination. Be sure to provide the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION when inquiring about this application. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. If an error is noted on this Filing Receipt, **please write to the Office of Initial Patent Examination's Customer Service Center. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections (if appropriate).**

Applicant(s)
> John K. Overton, Chicago, IL;
> Stephen W. Bailey, Andover, MA;

**RECEIVED
NOV 0 9 2001
Technology Center 2100**

Domestic Priority data as claimed by applicant
> THIS APPLICATION IS A CIP OF 09/661,222 09/13/2000
> WHICH CLAIMS BENEFIT OF 60/153,709 09/14/1999
> THIS APPLICATION 09/872,736
> CLAIMS BENEFIT OF 60/209,070 06/02/2000

Foreign Applications

If Required, Foreign Filing License Granted 08/02/2001

Projected Publication Date: 01/24/2002

Non-Publication Request: No

Early Publication Request: No

** SMALL ENTITY **

Title
> Method and apparatus for managing location information in a network

Preliminary Class



UNITED STATES PATENT AND TRADEMARK OFFICE

**FILE COPY**

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, D.C. 20231
www.uspto.gov

Bib Data Sheet

**CONFIRMATION NO. 3927**

| SERIAL NUMBER 09/872,736 | FILING DATE 06/01/2001 RULE | CLASS 709 | GROUP ART UNIT 2153 | ATTORNEY DOCKET NO. 10406/49 |
|---|---|---|---|---|

**APPLICANTS**

John K. Overton, Chicago, IL;
Stephen W. Bailey, Andover, MA;

**\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
THIS APPLICATION IS A CIP OF 09/661,222 09/13/2000
AND A CIP OF 09/503,441 02/14/2000
AND A CIP OF 09/367,461 08/13/1999
AND A CIP OF 09/111,896 07/08/1998
AND CLAIMS BENEFIT OF 60/209,070 06/02/2000
AND CLAIMS BENEFIT OF 60/277,408 03/19/2001

**\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**IF REQUIRED, FOREIGN FILING LICENSE GRANTED** \*\* SMALL ENTITY \*\*
**\*\* 08/02/2001**

| Foreign Priority claimed ☐ yes ☐ no | STATE OR COUNTRY IL | SHEETS DRAWING 15 | TOTAL CLAIMS 45 | INDEPENDENT CLAIMS 6 |
|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance | | | | |
| Verified and Acknowledged Examiner's Signature Initials | | | | |

**ADDRESS**

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO ,IL 60610

**TITLE**

Method and apparatus for managing location information in a network

| FILING FEE RECEIVED 765 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |

**JA1223**

I hereby certify that this correspondence is being deposited with the United States Postal Service, with sufficient postage, as first class mail in an envelope addressed to:

Commissioner for Patents
Washington, D.C. 20231
on September 10, 2001
_____
Date of Deposit

Kent E. Genin
_____
Name of applicant, assignee or
Registered Representative

_____
Signature
9/10/2001
Date of Signature

Our Case No.10406/49

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:             )
                                )
J. Overton et al.               )
                                )
Serial No. 09/872,736       )    Group Art Unit No. 2152
                                )
Filing Date: June 1, 2001    )
                                )
For    METHOD AND APPARATUS FOR    )
        MANAGING LOCATION              )
        INFORMATION IN A NETWORK    )

## PRELIMINARY AMENDMENT

Commissioner for Patents
Washington, D.C. 20231

Dear Sir:

Please enter the following amendment prior to examination of the above-identified U.S. patent application.

## IN THE SPECIFICATION

On page 1, please amend the paragraph beginning on line 4 to read as follows:



This application claims the benefit of provisional patent application serial no. 60/209,070 filed June 2, 2000 and provisional application serial no. 60/277,408 filed March 19, 2001; and this application is a continuation-in-part of each of the following non-provisional U.S. patent applications: application serial no. 09/661,222 entitled NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL, filed on September 13, 2000; application serial no. 09/503,441 entitled AUTOMATED SYSTEM FOR IMAGE ARCHIVING, filed February 14, 2000; application serial no. 09/367,461 entitled AUTOMATED SYSTEM FOR IMAGING ARCHIVING, filed August 13, 1999; and application serial no. 09/111,896 entitled SYSTEM AND METHOD FOR ESTABLISHING AND RETRIEVING DATA BASED ON GLOBAL INDICES, filed on July 8, 1998, wherein the entirety of each of these provisional and non-provisional applications is incorporated herein by reference.

## REMARKS

Applicants have amended the Specification to restate its original claim of priority in a single, continuous sentence. Applicants respectfully request that the Examiner verify that the priority claim properly includes the cited two provisional applications and four non-provisional applications originally identified. No new matter has been added with this amendment. Applicants note that both the original six priority claims, and the enclosed amendments to those priority claims are timely submitted pursuant to 37 C.F.R. §1.78. Pursuant to 37 C.F.R. §1.121, a marked-up copy of the amended portion of the specification is attached at Appendix A. Entry of the above amendment is respectfully requested.

Respectfully submitted,

Kent E. Genin
Registration No. 37,834
Attorney for Applicant

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, ILLINOIS 60610
(312) 321-4200

2

JA1225

| TRANSMITTAL LETTER | | | Case No. 10406/49 |
|---|---|---|---|
| Serial No. 09/872,736 | Filing Date June 1, 2001 | Examiner | Group Art Unit 2152 |
| Inventor(s) J. Overton et al. | | | |
| Title of Invention Method And Apparatus For Managing Location Information In A Network | | | |

## TO THE COMMISSIONER FOR PATENTS

Transmitted herewith is Transmittal Letter (in duplicate); Supplemental Information Disclosure Statement; PTO Form 1449; One Copy of References B1-B6.

☐ Small entity status of this application under 37 CFR § 1.27 has been established by verified statement previously submitted.

☐ A verified statement to establish small entity status under 37 CFR §§ 1.9 and 1.27 is enclosed.

☐ Petition for a _____ month extension of time.

☐ Small Entity status is claimed.

☐ The fee has been calculated as shown below:

**RECEIVED**

**MAY 1 0 2002**

**Technology Center 2100**

|  | Claims Remaining After Amendment |  | Highest No. Previously Paid For | Present Extra | Small Entity Rate | Add'l Fee | or | Other Than Small Entity Rate | Add'l Fee |
|---|---|---|---|---|---|---|---|---|---|
| Total |  | Minus |  |  | x $9= |  |  | x $18= |  |
| Indep. |  | Minus |  |  | x 40= |  |  | x $80= |  |
| First Presentation of Multiple Dep. Claim | | | | | +$135= | | | + $270= | |
| | | | | | Total add'l fee | $ | | Total add'l fee | $ |

☐ Please charge Deposit Account No. 23-1925 (BRINKS HOFER GILSON & LIONE) in the amount of $_____. A duplicate copy of this sheet is enclosed.

☐ A check in the amount of $_____ to cover the filing fee is enclosed.

☒ The Commissioner is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this communication or credit any overpayment to Deposit Account No. 23-1925. A duplicate copy of this sheet is enclosed.

☐ I hereby petition under 37 CFR § 1.136(a) for any extension of time required to ensure that this paper is timely filed. Please charge any associated fees which have not otherwise been paid to Deposit Account No. 23-1925. A duplicate copy of this sheet is enclosed.

Respectfully submitted,

Kent E. Genin
Registration No. 37,834
Attorney for Applicant

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, ILLINOIS 60610
(312) 321-4200

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail, with sufficient postage, in an envelope addressed to: Commissioner for Patents, Washington, D.C. 20231, on May 3, 2002.

Date: May 3, 2002    Signature: _____

rev. Dec.-00
F:\COMMON\KEG\OverX 10406\10406-49\10406-49 Transmittal - Missing Parts.doc

**JA1226**

CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail, with sufficient postage, in an envelope addressed to: Commissioner for Patents, Washington, D.C. 20231, on May 3, 2002.

_____
Kent E. Genin
Name of Applicant, Assignee or
Registered Representative

_____
Signature

5/3/2002
_____
Date of Signature

**RECEIVED**

MAY 1 0 2002

Technology Center 2100

PATENT
CASE NO. 10406/49

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                )
                                     )       Group Art Unit: 2152
John K. Overton et al.               )
                                     )
Serial No. 09/872,736                )
                                     )
Filed:  June 1, 2001                 )
                                     )
For:    METHOD AND APPARATUS         )
        FOR MANAGING LOCATION        )
        INFORMATION IN A NETWORK     )

### SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

Commissioner for Patents
Washington, D.C.  20231

Dear Sir:

Pursuant to the obligation under 37 C.F.R. § 1.56 and in conformance with 37 C.F.R. § 1.97-1.99, Applicant hereby submits the following references for consideration by the Examiner.  Copies of each have been enclosed along with the form PTO-1449.

JA1227

## U.S PATENTS

| Patent No. | Date | Inventor |
|---|---|---|
| 5,724,575 | 03/03/98 | Hoover et al. |
| 5,913,210 | 06/15/99 | Call |
| 5,950,173 | 09/07/99 | Perkowski |
| 5,974,409 | 10/26/99 | Sanu et al. |

## FOREIGN PATENT DOCUMENTS

| Document No. | Date | Country |
|---|---|---|
| EP 0 919 912 A2 | 06/02/99 | EPO |

## OTHER ART

Copy of Communication relating to the results of the Partial International Search Report for PCT Application No. PCT/US01/18013 dated April 15, 2002.

## EXPLANATION OF THE REFERENCES

Each item of information contained herein was first cited in a communication from a foreign patent office in a counterpart application not more than three months prior hereto. Accordingly, no fee is required.

Applicant requests to have these references included in the record of this application. Applicant further requests that the Examiner review the entire disclosure of each reference. Applicant does not represent any of these references to be prior art and Applicant reserves the right to disqualify any references by the showing of an earlier date of invention, if appropriate.

Respectfully Submitted,

Kent E. Genin
Reg. No. 37,834
Attorney for Applicant

BRINKS HOFER GILSON & LIONE
P.O. Box 10395
Chicago, IL 60610
(312) 321-7732

2

JA1228

OIPE MAY 0 7 2002 PATENT & TRADEMARK OFFICE JC26

| FORM PTO-1449 | | | SERIAL NO. 09/872,736 | | CASE NO. 10406/49 |
|---|---|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | | FILING DATE June 1, 2001 | | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | | | APPLICANT(S): John K. Overton et al. | | |

REFERENCE DESIGNATION          U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | B1 | 5,724,575 | 03/03/98 | Hoover et al. | | |
| | B2 | 5,913,210 | 06/15/99 | Call | | |
| | B3 | 5,950,173 | 09/07/99 | Perkowski | | |
| | B4 | 5,974,409 | 10/26/99 | Sanu et al. | | |

FOREIGN PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS/ SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| | B5 | EP 0 919 912 A2 | 06/02/99 | EPO | | | |

| EXAMINER INITIAL | | OTHER ART (Including Author, Title, Date, Pertinent Pages, etc.) |
|---|---|---|
| | B6 | Copy of Communication relating to the results of the Partial International Search Report for PCT Application No. PCT/US01/18013 dated April 15, 2002 |

RECEIVED
MAY 1 0 2002
Technology Center 2100

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Rev. Dec.-99
F:\COMMON\KEG\overX 10406\10406-49\10406-49 PTO 1449.2.doc

JA1229

This Page Is Inserted by IFW Operations
and is not a part of the Official Record

# BEST AVAILABLE IMAGES

Defective images within this document are accurate representations of
the original documents submitted by the applicant.

Defects in the images may include (but are not limited to):

- BLACK BORDERS

- TEXT CUT OFF AT TOP, BOTTOM OR SIDES

- FADED TEXT

- ILLEGIBLE TEXT

- SKEWED/SLANTED IMAGES

- COLORED PHOTOS

- BLACK OR VERY BLACK AND WHITE DARK PHOTOS

- GRAY SCALE DOCUMENTS

# IMAGES ARE BEST AVAILABLE COPY.

## As rescanning documents *will not* correct images,
please do not report the images to the
Image Problem Mailbox.

JA1230

This Page Blank (uspto)



(19)

Europäisches Patentamt

European Patent Office

Office européen des brevets



(11)     EP 0 919 912 A2

(12)                    **EUROPEAN PATENT APPLICATION**

(43) Date of publication:
02.06.1999 Bulletin 1999/22

(21) Application number: 98122235.9

(22) Date of filing: 23.11.1998

(51) Int. Cl.6: **G06F 9/46**, G06F 11/00,
H04L 12/24

(84) Designated Contracting States:
AT BE CH CY DE DK ES FI FR GB GR IE IT LI LU
MC NL PT SE
Designated Extension States:
AL LT LV MK RO SI

(30) Priority: 28.11.1997 JP 343929/97

(71) Applicant: Hitachi, Ltd.
Chiyoda-ku, Tokyo 101-8010 (JP)

(72) Inventors:
• Kondo, Takaaki
  Yokohama-shi (JP)
• Watanabe, Tetsuya
  Yokohama-shi (JP)
• Oono, Hisashi
  Yokohama-shi (JP)

(74) Representative:
Strehl Schübel-Hopf & Partner
Maximilianstrasse 54
80538 München (DE)

(54)    **Multiserver workflow system**

(57)    A multiserver workflow system in which each
server and the users who use clients construct one sub-
system includes: a plurality of servers (120-1, 120-2,
120-N); a plurality of clients (130-1, 130-2, 130-N); and
a network (110) to which the servers and the clients are
connected. All of the servers have address information
(310) of the servers constructing all of the subsystems
and correspondence information (340) on all of the
users and the subsystem which can be used by respec-
tive users. When each client connects to any one of the
servers, the client downloads a list of the subsystems
which can be used by the user who uses the client and
addresses of the servers constructing the usable sub-
systems from the connection server and stores the list
as a connectable server list (420).

FIG. 1



JA1232

## Description

BACKGROUND OF THE INVENTION

Field of the Invention

[0001]   The invention relates to a server/client system and, more particularly, to a multiserver workflow system comprising a plurality of subsystems.

Description of the Related Art

[0002]   There is a process for circulating a document to concerned departments or concerned persons and obtaining approvals of those circulation destinations. A workflow system realizes such a process on a computer network. Specifically speaking, there is an example as disclosed in U.S. Patent No. 5,634,127.

[0003]   Generally, a server has business process definition information as definition information of a document flow (business process). The document (case) inputted by the user on a client is controlled in accordance with the definition information.

[0004]   Hitherto, as a workflow system, there is a workflow system with a single server construction in which one server and a plurality of clients are connected via a network.

[0005]   There is also a workflow system having a multiserver construction such that a plurality of servers and a plurality of clients are connected via a network and a control is made so that the plurality of servers have the same business process definition information and all of the plurality of servers have the newest status information of a case which is being processed.

[0006]   There is also a workflow system having a multiserver construction such that a plurality of workflow systems each having the single server construction as mentioned above are connected to the same network.

[0007]   In case of the conventional workflow system of the single server construction, since all of the businesses depend on one server, if the server causes a malfunction, all of the businesses are stopped. The number of businesses of which the server is in charge increases, a use frequency of the businesses rises, and a load which is applied to the server increases, so that a business executing speed decreases.

[0008]   In case of the workflow system of the multiserver construction which holds the same information, an amount of information which is stored into each server increases and traffics among the servers for keeping the information identical among the servers occur. There is a case where unless the backup and restoring operations are executed in a lump in all of the servers, a mismatch among the servers occurs in the information recovered from the backup.

[0009]   In case of the workflow system of the multiserver construction in which a plurality of workflow systems of the single server construction are connected to the same network, since the users cannot be collectively managed, the user management is troublesome. Further, when a change in construction (the number) of servers occurs, it is necessary to change information in all clients using the target system.

SUMMARY OF THE INVENTION

[0010]   It is an object of the invention to provide a multiserver workflow system in which even when a server to be connected does not work, the client can try to connect with another server.

[0011]   Another object of the invention is to provide a multiserver workflow system which can execute businesses on servers other than a fault occurring server.

[0012]   Still another object of the invention is to make it easy to manage and change information on servers and users in a multiserver workflow system.

[0013]   To accomplish those objects, a workflow system according to the invention has the following construction.

[0014]   A multiserver workflow system in which each server and the users who use clients construct one subsystem comprises: a plurality of servers; a plurality of clients; and a network to which the servers and clients are connected. All of the servers have: address information of the servers belonging to all subsystems; and correspondence information of all users and the subsystems which can be used by the users. When each client is connected to any one of the servers, the client downloads a list of the subsystems which can be used by the user who use the client and addresses of the servers constructing the usable subsystem from the connecting server and stores them as a connectable server list for each login user.

[0015]   Further, each client tries to connect to the server by using the stored connectable server list and, when the connection to the server fails, the client tries to connect to another server in the connectable server list.

BRIEF DESCRIPTION OF THE DRAWINGS

[0016]

Fig. 1 is a block diagram showing an outline of a structure of a multiserver workflow system according to the invention;

Fig. 2 is a block diagram showing a more specific structual example of the multiserver workflow system and a user interface on a client;

Fig. 3 is a diagram for explaining structures of information which is formed by a management server and information which is distributed to each subsystem and for explaining the information forming method;

Fig. 4 is a diagram for explaining a method of distributing a connectable server list from a server to clients; and

JA1233

Fig. 5 is a diagram for explaining processes when a client connects to a server.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

### (1) System construction

[0017]  Fig. 1 is a block diagram showing an outline of a construction of a multiserver workflow system.

[0018]  A plurality of servers 120-1 to 120-N and a plurality of clients 130-1 to 130-N are connected to a communications network 110 and databases 121-1 to 121-N are connected to the respective servers.

[0019]  The communications network 110 is an LAN (Local Area Network), a WAN (Wide Area Network), a public telephone line, an Internet, or the like. The server 120 and client 130 are computers such as personal computers, workstations, or the like each having a CPU, a memory, input/output devices, and an interface to the communications network. The database 121 can be also included in the server 120. Communications between the server 120 and client 130 and between the servers are executed using a protocol depending on the communications network 110, for example, TCP/IP. One server and a plurality of users who use the clients construct one subsystem.

### (2) Operation of the user

[0020]  Fig. 2 is a block diagram showing a more specific structural example of the multiserver workflow system and a user interface on the client.

[0021]  In this example, server 1 (120-1), server 2 (120-2), and server 3 (120-3) are connected as servers to the network (110). The server 1 belongs to an accounting business subsystem. The server 2 belongs to a personnel business subsystem. The server 3 belongs to a materials business subsystem.

[0022]  It is now assumed that a user who uses a client X (130-1) is permitted to use all of the subsystems. A basic screen 200 is displayed on a display device of the client X.

[0023]  Buttons of case input 201, INBOXes 211 to 214, and OUTBOXes 221 to 224 are displayed on the basic screen 200.

[0024]  In case of inputting a new case, the user selects the case input button 201 by a mouse click or the like. After that, a list of subsystems which can be used by the user is shown. By further selecting a desired subsystem, a business process in the selected subsystem is displayed. The subsequent operation is the same as that of the conventional workflow system of the single server construction.

[0025]  The user selects the INBOX button in order to access a case which is not processed yet and has to be processed from now on. The user selects the OUTBOX button in order to see a status of a case which has already been inputted or processed. When the user selects the INBOX and OUTBOX buttons (211, 221) of all of the systems, titles of the cases relating to the user in all of the subsystems are displayed together with the additional information. When the user selects the INBOX and OUTBOX buttons (212 - 214, 222 - 224) of each system, a title of the cases relating to the user in the selected subsystem are displayed together with the additional information.

[0026]  When the INBOX button is selected, a person who made the case, making time, a name of the using business process, time when the case arrived at his INBOX, and the like are displayed together with the case title. By selecting the case title, the user performs the referring or approving operation of the contents of the case. When the user selects the OUTBOX button, a person who made the case, making time, a name of the using business process, a processing status, and the like are displayed together with the case title. The operation after the user accessed each subsystem is the same as that of the conventional workflow system of the single server construction.

### (3) Information making and setting method

[0027]  Fig. 3 is a diagram for explaining information which is distributed to the servers of each subsystem.

[0028]  The information is made by one server and the information is distributed to each server. To make the information, a dedicated server may be provided or any one of the servers 1, 2, and 3 constructing the business subsystems as shown in Fig. 2 may be used. The server which makes the information to be distributed to each server is called a management server.

[0029]  The information is made in the management server by the following procedure.

#### ① Making of the subsystem list

[0030]  A managing program on the management server makes a subsystem list table 310 in accordance with the input of a manager and stores the table into a memory in the management server. The subsystem list table 310 includes a name of the server constructing each subsystem and an address (for example, IP address) on the communications network of the server.

#### ② Making of the user information

[0031]  The managing program on the management server makes a user information table 320 in accordance with the input of the manager and stores the table into the memory in the management server. The user informationtable 320 includes user IDs of all of the users who use the system, sections to which they belong, names, and posts. The table 320 can also further include items such as passwords, nicknames, and the like. The user information table may be made by the

server of each subsystem and collected to the management server.

③ Making of the subsystem user information

[0032] The managing program on the management server makes a subsystem user information table 330 in accordance with the input of the manager and on the basis of the subsystem list table 310 and stores the table into the memory in the management server. The manager designates the users who use each subsystem by indicating a condition. For example, as shown in the table 330 in Fig. 3, the users in an operation section are designated for the subsystem of the server 1. All of the users are designated for the subsystem of the server 2. The users in the operation section and group leaders of all sections are designated for the subsystem of the server 3. The table 330 includes the server names and inputted conditions.

④ Making of the user connection information

[0033] The managing program on the management server compares the items in the user information table 320 which has already been made with the conditions in the subsystem user information table 330, determines the connectable servers for respective users, and makes a user connection information table 340. The user connection information has a list of the connectable servers in addition to the same items as those in the user information table 330.

⑤ Distribution of the subsystem list and the user connection information

[0034] The managing program on the management server distributes the subsystem list table 310 and the user connection information table 340 to all of the servers via the communications network. Therefore, all of the servers 1 to 3 have the same information.

[0035] The managing program is software which is executed by the CPU of the management server.

⑥ Distribution of the connectable server list to each client

[0036] A method of distributing the connectable server list from the server to each client will now be described by using Fig. 4.

[0037] For each client, the server to be connected in default is determined and the client has its address as default connection server information 410. The client connects to the default connection server and transmits a login request (430) to the connection server together with the user ID of the user who uses the client. The client can transmit a server information updating request or a login request to the server being connected together with the user ID at another arbitrary timings.

[0038] When the login request or server information updating request is received, the server extracts the user ID included in those requests. The server extracts the connectable server names of the user ID from the user connection information table 340 and, further, extracts the addresses of the connectable servers from the subsystem list table 310. After that, the server transmits the connectable server names and the addresses as a connectable server list to a sending source of the login request or the server information updating request (440). The client stores the received connectable server list as a table 420. In some systems, a plurality of users share one client. In such system, the client may store the connectable server lists for the respective users.

[0039] The foregoing procedure of ① to ⑥ is also applied to the cases of an addition of the server, an address change of the server, an addition or deletion of the user, and a change in user information.

(4) Process of the client

[0040] Process of the client when the user starts a workflow business in the client device will now be described with reference to Fig. 5.

[0041] When the client receives the login request from the user, the client obtains information on the server which has previously been designated as a default server on own client machine (step 500) and tries to connect to the default server.

[0042] When the connection tried server is working (YES in step 501) and the user is authenticated by the server (OK in step 508), the connectable server list table 420 is downloaded onto the own client machine (step 509). Even when the server list has already existed on the client, by again downloading, the client can obtain the new connectable server list corresponding to the login user. After that, the client starts the workflow business (step 510).

[0043] When the connection tried server is not working (NO in step 501) or the user fails to be authenticated by the server (NG in step 508), the client checks whether the connectable server list table 420 for the user exists on the own client machine or not (step 502).

[0044] When the table 420 exists (YES in step 502), the client tries to connect to one of the servers in the list (step 505).

[0045] When the connection cannot be performed (NG in step 506) due to a reason such that the connection tried server is in a down state or the like, the client checks if another server exists in the list (step 507). When there is another server (YES in step 507), the client tries to connect to the server (step 505).

[0046] When the client cannot connect to all servers in the list (NO in step 507), the client finishes the processes.

[0047] When the connection tried server is working (OK in step 506) and the user is authenticated by the server (OK in step 508), the connectable server list

table 420 is downloaded onto the own client machine (step 509).

[0048] When the table 420 for the user doesn't exist, the client finishes the processes (NO in step 502).

[0049] The above process is realized by software which is executed by the CPU of the client.

[0050] The order of selecting the connection trying server in the server list table can be determined by the client or can be merely the topdown order of in the table.

[0051] The basic screen 200 which is displayed on the display device of the client is shown in the paragraph (2) mentioned above and Fig. 2. The INBOX and OUTBOX buttons of all of the subsystems and each subsystem which can be used by the user are displayed in the above screen. This display is performed on the basis of the connectable server list table 420 on the client. When the INBOX or OUTBOX button of a certain subsystem (server) is designated, the client obtains the address of the designated server from the server list table 420. When the client is at present connected to the server, the process corresponding to the designated button is started. When the client is not connected to the server, the connecting process is executed by using the obtained address and, after completion of the user authentication, the process corresponding to the designated button is started. In the basic screen 200, when the case input button 201 and the INBOX and OUTBOX buttons 211 and 221 of all of the subsystems are designated, the client sequentially connects to all of the servers in the connectable server list table 420, receives the user authentication, and executes the transmission and reception of the information and the processes. During the process, if there is a server which is not working, the process for this server is skipped.

(5) Effects

[0052] By constructing the system and the table arrangement as mentioned above, the client can obtain the list of the servers which can be used by the user from any server.

[0053] A service for accessing a plurality of servers can be provided to the user with a simple user interface.

[0054] It is sufficient to perform the change of the server, server address, and user in only the management server and the maintenance becomes simple.

(6) Modifications

[0055] Although the embodiment has been described with respect to the workflow system as an example, the defining method and distributing method of the information on the servers and users can be also applied to another multiserver systems.

[0056] The numbers of items in the tables of the subsystem list, user information, subsystem user information, user connection information, and connectable

server list can be increased or decreased as necessary.

**Claims**

1. A multiserver workflow system comprising:

   a plurality of servers (120-1, 120-2, 120-N);
   a plurality of clients (130-1, 130-2, 130-N); and
   a network (110) to which said servers and said clients are connected,
   wherein each of said servers and users who use the clients construct a subsystem,
   all of the servers have address information (310) of the servers constructing all subsystems and correspondence information (340) of all users and the subsystems which can be used by respective users, and
   when each client connects to any one of said servers, said client downloads a list of the subsystems which can be used by the user who uses said client and addresses of the servers constructing said usable subsystems from the connected server and stores the list as a connectable server list (420).

2. A system according to claim 1, wherein each client provides a user interface (200) to access all of the usable subsystems with reference to said connection server list (420) and connects to the server constructing the subsystem selected by the user by using the addresses in the connectable server list.

3. A system according to claim 1, wherein each client connects to the server by using the stored connectable server list (420) and, when the connection to said server fails, said client tries to connect to another server in the connectable server list.

4. A method of managing information on servers and users in a multiserver workflow system including a plurality of subsystems, comprising the steps of:

   deciding an information management server;
   on said information management server, defining subsystem/server address information (310) including addresses of servers constructing all of the subsystems and user/subsystem correspondence information (340) indicating a correspondence between all of the users and the subsystems which can be used by respective users and storing the information;
   distributing said subsystem/server address information (310) and said user/subsystem correspondence information (340) from said information management server to all of th servers; and
   in each of the servers constructing the subsystems, storing said subsystem/server addr ss

information and said user/subsystem correspondence information being distributed, extracting a list of the subsystems which can be used by the user who uses said client and the addresses of the servers constructing said usable subsystems from said stored information in response to a request from the client, and transmitting the list (420) to said client.

5. A method according to claim 4, wherein in said management server,

information (320) on all of the users is collected,

a condition (330) of the user constructing the subsystem is inputted, and

said information on every user is compared with the condition of the user constructing said subsystem, the usable subsystem is determined for every user, and said user/subsystem correspondence information (340) is made.

6. A method of connecting to a server by a client, comprising the steps of:

having an address (410) of a default connection server;

connecting to said default connection server at first, downloading a list of subsystems which can be used by a user who uses said client and addresses of the servers constructing said usable subsystems from the connection server, and storing the list as a connectable server list (420); and

performing the connection to the server by using the stored connectable server list at second and subsequent times, and when the connection to said server fails, the client tries to connect to another server in said connectable server list.

7. A method according to claim 6, further comprising the step of:

when the connection to the server succeeds, downloading the connectable server list (420) from the connection server in order to obtain latest information.

8. A program storage device readable by a client machine, tangibly embodying a program of instructions executable by the client machine to perform method steps for connecting with a server machine, said method comprising the steps of:

connecting to a predetermined default connection server at first, downloading a list of subsystems which can be used by a user who uses

said client and addresses of servers constructing said usable subsystems from the connection server, and storing the list as a connectable server list; and

connecting to the server by using the stored connectable server list at second and subsequent times, and when the connection to said server fails, trying to connect to another server in said connectable server list.

9. A server/client system comprising:

a plurality of servers (120);
a plurality of clients (130); and
a network (110) to which said servers and said clients are connected,

wherein all of the servers have address information (310) on all servers and correspondence information (340) of all users and the servers which can be used by respective users, and

when each client is connected to any one of said servers, said client downloads a list of the servers which can be used by the user who uses said client and addresses of the servers from the connection server and stores the list as a connectable server list (420).

# FIG. 1



COMMUNICATIONS
NETWORK

120-1

SERVER

DATABASE — 121-1

110

120-2

SERVER

DATABASE — 121-2

SERVER

DATABASE — 121-N

120-N

COMMUNICATIONS
NETWORK

CLIENT   CLIENT  · ·  CLIENT

130-1   130-2   130-N

BDOCID: <EP___0919912A2_I_>

JA1238

# FIG. 2



JA1239

## FIG. 3



**SUBSYSTEM LIST** ~ 310

| SERVER | IP ADDRESS |
|--------|------------|
| SERVER 1 | 196. 14. 43. 1 |
| SERVER 2 | 196. 14. 43. 5 |
| SERVER 3 | 196. 14. 43. 6 |

⟹ DISTRIBUTE TO ALL SERVERS

**USER INFORMATION** ~ 320

| SECTION | ID | NAME | POST |
|---------|-----|------|------|
| OPERATION | USER-A | John Smith | GROUP LEADER |
| OPERATION | USER-B | Mary Green | MANAGER |
| GENERAL AFFAIRS | USER-C | Bob White | GROUP LEADER |
| : | : | : | : |

**SUBSYSTEM USER INFORMATION** ~ 330

| SERVER | CONDITION |
|--------|-----------|
| SERVER 1 | SECTION="OPERATION " |
| SERVER 2 | ALL |
| SERVER 3 | SECTION="OPERATION" OR POST="GROUP LEADER" |

**USER CONNECTION INFORMATION** 340

| ID | SECTION | NAME | POST | CONNECTABLE SERVERS |
|-----|---------|------|------|---------------------|
| USER-A | OPERATION | John Smith | GROUP LEADER | SERVER 1,SERVER 2,SERVER 3 |
| USER-B | OPERATION | Mary Green | MANAGER | SERVER 1,SERVER 2,SERVER 3 |
| USER-C | GENERAL AFFAIRS | Bob White | NULL | SERVER 2,SERVER 3 |
| : | : | : | : | : |

⟱

DISTRIBUTE TO ALL SERVERS

EP 0 919 912 A2

JA1240

# FIG. 4



CLIENT

SERVER

LOGIN REQUEST,
SERVER INFORMATION
UPDATING REQUEST
(WITH USER-ID)

430

CONNECTABLE
SERVER LIST
TRANSMISSION

440

DEFAULT CONNECTION SERVER

| SERVER 2 | 196. 14. 43. 5 |
|----------|----------------|

410

CONNECTABLE SERVER LIST

| SERVER 1 | 196. 14. 43. 1 |
|----------|----------------|
| SERVER 2 | 196. 14. 43. 5 |
| SERVER 3 | 196. 14. 43. 6 |

420

SUBSYSTEM LIST          310

| SERVER 1 | 196. 14. 43. 1 |
|----------|----------------|
| SERVER 2 | 196. 14. 43. 5 |
| SERVER 3 | 196. 14. 43. 6 |

USER CONNECTION INFORMATION          340

| USER-A | - - | SERVER 1,SERVER 2,SERVER 3 |
|--------|-----|----------------------------|
| USER-B | - - | SERVER 1,SERVER 2,SERVER 3 |
| : | : | : |

FIG. 5



START

LOGIN OF USER

REQUEST CONNECTION
TO DEFAULT SERVER — 500

SERVER IS
WORKING ?
501

YES

NO

508

USER IS
AUTHENTICATED
?

NG

OK

DOWNLOAD
SERVER LIST — 509

CONNECTABLE
SERVER LIST
EXISTS ?
502

YES

NO

WORKFLOW
BUSINESS — 510

END

CONNECT TO
SERVER IN LIST — 505

SERVER IS
WORKING ?
506

OK

NG

NEXT
CANDIDATE
EXISTS ?
507

NO

YES

ERROR END

ERROR END

11

Best Available Copy

JA1242

This Page Blank (uspto)

JA1243

OIPE
AUG 13 2002
PATENT & TRADEMARK

COPY    GP2152

| TRANSMITTAL LETTER | | | Case No. 10406/49 |
|---|---|---|---|
| Serial No.<br>2,736 | Filing Date<br>June 1, 2001 | Examiner | Group Art Unit<br>2152 |
| Inventor(s)<br>J. Overton et al. | | | |
| Title of Invention<br>Method And Apparatus For Managing Location Information In A Network | | | |

### TO THE COMMISSIONER FOR PATENTS

Transmitted herewith is Transmittal Letter (in duplicate); Supplemental Information Disclosure Statement; PTO Form 1449; One Copy of References C1-C5.

☐ Small entity status of this application under 37 CFR § 1.27 has been established by verified statement previously submitted.

☐ A verified statement to establish small entity status under 37 CFR §§ 1.9 and 1.27 is enclosed.

☐ Petition for a ___ month extension of time.

☐ Small Entity status is claimed.

☐ The fee has been calculated as shown below:

RECEIVED
AUG 16 2002
Technology Center 2100

DKT
AUG 20 2002

| | Claims Remaining After Amendment | | Highest No. Previously Paid For | Present Extra | Rate | Add'l Fee | or | Rate | Add'l Fee |
|---|---|---|---|---|---|---|---|---|---|
| Total | | Minus | | | x $9= | | | x $18= | |
| Indep. | | Minus | | | x 40= | | | x $80= | |
| First Presentation of Multiple Dep. Claim | | | | | +$135= | | | + $270= | |
| | | | | | Total add'l fee | $ | | Total add'l fee | $ |

(Small Entity / Other Than Small Entity)

☐ Please charge Deposit Account No. 23-1925 (BRINKS HOFER GILSON & LIONE) in the amount of $_____. A duplicate copy of this sheet is enclosed.

☐ A check in the amount of $_____ to cover the filing fee is enclosed.

☒ The Commissioner is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this communication or credit any overpayment to Deposit Account No. 23-1925. A duplicate copy of this sheet is enclosed.

☐ I hereby petition under 37 CFR § 1.136(a) for any extension of time required to ensure that this paper is timely filed. Please charge any associated fees which have not otherwise been paid to Deposit Account No. 23-1925. A duplicate copy of this sheet is enclosed.

Respectfully submitted,

Kent E. Genin
Registration No. 37,834
Attorney for Applicant

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, ILLINOIS 60610
(312) 321-4200

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail, with sufficient postage, in an envelope addressed to: Commissioner for Patents, Washington, D.C. 20231, on August 9, 2002.

Date: 8/9/2002    Signature: _____

rev. Dec.-00
F:\COMMON\KEG\OverX 10406\10406-49\10406-49 Transmittal - Missing Parts.doc

**JA1244**



CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail, with sufficient postage, in an envelope addressed to: Commissioner for Patents, Washington, D.C. 20231, on August 9, 2002.

_____
Kent E. Genin
Name of Applicant, Assignee or
Registered Representative

_____
Signature

8 / 9 / 2002
Date of Signature

RECEIVED

AUG 1 6 2002

Technology Center 2100

PATENT
CASE NO. 10406/49

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: | ) |
| | )    Group Art Unit: 2152 |
| J. Overton et al. | ) |
| | ) |
| Serial No. 09/872,736 | ) |
| | ) |
| Filed:  June 1, 2001 | ) |
| | ) |
| For:  METHOD AND APPARATUS | ) |
|      FOR MANAGING LOCATION | ) |
|      INFORMATION IN A NETWORK | ) |

### SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

Commissioner for Patents
Washington, D.C.  20231

Dear Sir:

Pursuant to the obligation under 37 C.F.R. § 1.56 and in conformance with 37 C.F.R. § 1.97-1.99, Applicant hereby submits the following references for consideration by the Examiner.  Copies of each have been enclosed along with the form PTO-1449.

**JA1245**

## U.S. PATENTS

| Patent No. | Date | Inventor |
|---|---|---|
| 5,724,575 | 03/03/98 | Hoover et al. |
| 5,913,210 | 06/15/99 | Call |
| 5,950,173 | 09/07/99 | Perkowski |
| 5,974,409 | 10/26/99 | Sanu et al. |

## FOREIGN PATENT DOCUMENTS

| Document No. | Date | County |
|---|---|---|
| EP 0 919 912 A2 | 06/02/99 | EPO |

## EXPLANATION OF THE REFERENCES

Each item of information contained herein was first cited in a communication from a foreign patent office in a counterpart application not more than three months prior hereto.

Accordingly, no fee for consideration of the information provided with this disclosure statement is included herewith. However, if an office action on the merits is mailed on a date prior hereto, Applicant hereby requests and authorizes the Commissioner to charge Deposit Account 23-1925 for the appropriate fee of $180 as set forth in 37 C.F.R. § 1.97(c) for consideration of the information set forth in this disclosure statement.

Applicant requests to have these references included in the record of this application. Applicant further requests that the Examiner review the entire disclosure of each reference. Applicant does not represent any of these references to be prior art and Applicant reserves the right to disqualify any references by the showing of an earlier date of invention, if appropriate.

Respectfully Submitted,

BRINKS HOFER GILSON & LIONE
P.O. Box 10395
Chicago, IL 60610
(312) 321-7732

Kent E. Genin
Reg. No. 37,834
Attorney for Applicant

JA1246

OIPE
AUG 1 3 2002
PATENT & TRADEMARK OFFICE

| FORM PTO-1449 | | | SERIAL NO. 09/872,736 | | CASE NO. 10406/49 | |
|---|---|---|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | | FILING DATE June 1, 2001 | | GROUP ART UNIT 2152 | |
| (use several sheets if necessary) | | | APPLICANT(S): J. Overton et al. | | | |

### REFERENCE DESIGNATION          U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | C1 | 5,724,575 | 03/03/98 | Hoover et al. | | |
| | C2 | 5,913,210 | 06/15/99 | Call | | |
| | C3 | 5,950,173 | 09/07/99 | Perkowski | | |
| | C4 | 5,974,409 | 10/26/99 | Sanu et al. | | |

### FOREIGN PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS/ SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| | C5 | EP 0 919 912 A2 | 06/02/99 | EPO | | | |

**RECEIVED**

AUG 1 6 2002

Technology Center 2100

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Rev. Dec.-99
\\Bhglmain3\common\keg\OverX 10406\10406-49\10406-49 PTO 1449.3.doc

JA1247

This Page Is Inserted by IFW Operations
and is not a part of the Official Record

# BEST AVAILABLE IMAGES

Defective images within this document are accurate representations of
the original documents submitted by the applicant.

Defects in the images may include (but are not limited to):

- BLACK BORDERS

- TEXT CUT OFF AT TOP, BOTTOM OR SIDES

- FADED TEXT

- ILLEGIBLE TEXT

- SKEWED/SLANTED IMAGES

- COLORED PHOTOS

- BLACK OR VERY BLACK AND WHITE DARK PHOTOS

- GRAY SCALE DOCUMENTS

# IMAGES ARE BEST AVAILABLE COPY.

# As rescanning documents *will not* correct images, please do not report the images to the Image Problem Mailbox.

JA1248

This Page Blank (uspto)

(19) 

Europäisches Patentamt

European Patent Office

Office uropéen des brevets

(11) **EP 0 919 912 A2**



(12) **EUROPEAN PATENT APPLICATION**

(43) Date of publication:
02.06.1999 Bulletin 1999/22

(51) Int. Cl.⁶: **G06F 9/46**, G06F 11/00,
H04L 12/24

(21) Application number: 98122235.9

(22) Date of filing: 23.11.1998

(84) Designated Contracting States:
AT BE CH CY DE DK ES FI FR GB GR IE IT LI LU
MC NL PT SE
Designated Extension States:
AL LT LV MK RO SI

(30) Priority: 28.11.1997 JP 343929/97

(71) Applicant: Hitachi, Ltd.
Chiyoda-ku, Tokyo 101-8010 (JP)

(72) Inventors:
• Kondo, Takaaki
  Yokohama-shi (JP)
• Watanabe, Tetsuya
  Yokohama-shi (JP)
• Oono, Hisashi
  Yokohama-shi (JP)

(74) Representative:
Strehl Schübel-Hopf & Partner
Maximilianstrasse 54
80538 München (DE)

(54) **Multiserver workflow system**

(57) A multiserver workflow system in which each
server and the users who use clients construct one sub-
system includes: a plurality of servers (120-1, 120-2,
120-N); a plurality of clients (130-1, 130-2, 130-N); and
a network (110) to which the servers and the clients are
connected. All of the servers have address information
(310) of the servers constructing all of the subsystems
and correspondence information (340) on all of the
users and the subsystem which can be used by respec-
tive users. When each client connects to any one of the
servers, the client downloads a list of the subsystems
which can be used by the user who uses the client and
addresses of the servers constructing the usable sub-
systems from the connection server and stores the list
as a connectable server list (420).

**FIG. 1**



EP 0 919 912 A2

JA1250

**Descripti n**

BACKGROUND OF THE INVENTION

Field of the Invention

[0001]   The invention relates to a server/client system and, more particularly, to a multiserver workflow system comprising a plurality of subsystems.

Description of the Related Art

[0002]   There is a process for circulating a document to concerned departments or concerned persons and obtaining approvals of those circulation destinations. A workflow system realizes such a process on a computer network. Specifically speaking, there is an example as disclosed in U.S. Patent No. 5,634,127.

[0003]   Generally, a server has business process definition information as definition information of a document flow (business process). The document (case) inputted by the user on a client is controlled in accordance with the definition information.

[0004]   Hitherto, as a workflow system, there is a workflow system with a single server construction in which one server and a plurality of clients are connected via a network.

[0005]   There is also a workflow system having a multiserver construction such that a plurality of servers and a plurality of clients are connected via a network and a control is made so that the plurality of servers have the same business process definition information and all of the plurality of servers have the newest status information of a case which is being processed.

[0006]   There is also a workflow system having a multiserver construction such that a plurality of workflow systems each having the single server construction as mentioned above are connected to the same network.

[0007]   In case of the conventional workflow system of the single server construction, since all of the businesses depend on one server, if the server causes a malfunction, all of the businesses are stopped. The number of businesses of which the server is in charge increases, a use frequency of the businesses rises, and a load which is applied to the server increases, so that a business executing speed decreases.

[0008]   In case of the workflow system of the multiserver construction which holds the same information, an amount of information which is stored into each server increases and traffics among the servers for keeping the information identical among the servers occur. There is a case where unless the backup and restoring operations are executed in a lump in all of the servers, a mismatch among the servers occurs in the information recovered from the backup.

[0009]   In case of the workflow system of the multiserver construction in which a plurality of workflow systems of the single server construction are connected to

the same network, since the users cannot be collectively managed, the user management is troublesome. Further, when a change in construction (the number) of servers occurs, it is necessary to change information in all clients using the target system.

SUMMARY OF THE INVENTION

[0010]   It is an object of the invention to provide a multiserver workflow system in which even when a server to be connected does not work, the client can try to connect with another server.

[0011]   Another object of the invention is to provide a multiserver workflow system which can execute businesses on servers other than a fault occurring server.

[0012]   Still another object of the invention is to make it easy to manage and change information on servers and users in a multiserver workflow system.

[0013]   To accomplish those objects, a workflow system according to the invention has the following construction.

[0014]   A multiserver workflow system in which each server and the users who use clients construct one subsystem comprises: a plurality of servers; a plurality of clients; and a network to which the servers and clients are connected. All of the servers have: address information of the servers belonging to all subsystems; and correspondence information of all users and the subsystems which can be used by the users. When each client is connected to any one of the servers, the client downloads a list of the subsystems which can be used by the user who use the client and addresses of the servers constructing the usable subsystem from the connecting server and stores them as a connectable server list for each login user.

[0015]   Further, each client tries to connect to the server by using the stored connectable server list and, when the connection to the server fails, the client tries to connect to another server in the connectable server list.

BRIEF DESCRIPTION OF THE DRAWINGS

[0016]

Fig. 1 is a block diagram showing an outline of a structure of a multiserver workflow system according to the invention;

Fig. 2 is a block diagram showing a more specific structual example of the multiserver workflow system and a user interface on a client;

Fig. 3 is a diagram for explaining structures of information which is formed by a management server and information which is distributed to each subsystem and for explaining the information forming method;

Fig. 4 is a diagram for explaining a method of distributing a connectable server list from a server to clients; and

INSDOCID: <EP    0919912A2 I >

Fig. 5 is a diagram for explaining processes when a client connects to a server.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

### (1) System construction

[0017]    Fig. 1 is a block diagram showing an outline of a construction of a multiserver workflow system.

[0018]    A plurality of servers 120-1 to 120-N and a plurality of clients 130-1 to 130-N are connected to a communications network 110 and databases 121-1 to 121-N are connected to the respective servers.

[0019]    The communications network 110 is an LAN (Local Area Network), a WAN (Wide Area Network), a public telephone line, an Internet, or the like. The server 120 and client 130 are computers such as personal computers, workstations, or the like each having a CPU, a memory, input/output devices, and an interface to the communications network. The database 121 can be also included in the server 120. Communications between the server 120 and client 130 and between the servers are executed using a protocol depending on the communications network 110, for example, TCP/IP. One server and a plurality of users who use the clients construct one subsystem.

### (2) Operation of the user

[0020]    Fig. 2 is a block diagram showing a more specific structural example of the multiserver workflow system and a user interface on the client.

[0021]    In this example, server 1 (120-1), server 2 (120-2), and server 3 (120-3) are connected as servers to the network (110). The server 1 belongs to an accounting business subsystem. The server 2 belongs to a personnel business subsystem. The server 3 belongs to a materials business subsystem.

[0022]    It is now assumed that a user who uses a client X (130-1) is permitted to use all of the subsystems. A basic screen 200 is displayed on a display device of the client X.

[0023]    Buttons of case input 201, INBOXes 211 to 214, and OUTBOXes 221 to 224 are displayed on the basic screen 200.

[0024]    In case of inputting a new case, the user selects the case input button 201 by a mouse click or the like. After that, a list of subsystems which can be used by the user is shown. By further selecting a desired subsystem, a business process in the selected subsystem is displayed. The subsequent operation is the same as that of the conventional workflow system of the single server construction.

[0025]    The user selects the INBOX button in order to access a case which is not processed yet and has to be processed from now on. The user selects the OUTBOX button in order to see a status of a case which has already been inputted or processed. When the user selects the INBOX and OUTBOX buttons (211, 221) of all of the systems, titles of the cases relating to the user in all of the subsystems are displayed together with th additional information. When the user selects the INBOX and OUTBOX buttons (212 - 214, 222 - 224) of each system, a title of the cases relating to the user in the selected subsystem are displayed together with the additional information.

[0026]    When the INBOX button is selected, a person who made the case, making time, a name of the using business process, time when the case arrived at his INBOX, and the like are displayed together with the case title. By selecting the case title, the user performs the referring or approving operation of the contents of the case. When the user selects the OUTBOX button, a person who made the case, making time, a name of the using business process, a processing status, and the like are displayed together with the case title. The operation after the user accessed each subsystem is th same as that of the conventional workflow system of the single server construction.

### (3) Information making and setting method

[0027]    Fig. 3 is a diagram for explaining information which is distributed to the servers of each subsystem.

[0028]    The information is made by one server and the information is distributed to each server. To make the information, a dedicated server may be provided or any one of the servers 1, 2, and 3 constructing the business subsystems as shown in Fig. 2 may be used. The server which makes the information to be distributed to each server is called a management server.

[0029]    The information is made in the management server by the following procedure.

① Making of the subsystem list

[0030]    A managing program on the management server makes a subsystem list table 310 in accordance with the input of a manager and stores the table into a memory in the management server. The subsystem list table 310 includes a name of the server constructing each subsystem and an address (for example, IP address) on the communications network of the server.

② Making of the user information

[0031]    The managing program on the management server makes a user information table 320 in accordance with the input of the manager and stores the table into the memory in the management server. The user informationtable 320 includes user IDs of all of the users who use the system, sections to which they belong, names, and posts. The table 320 can also further include items such as passwords, nicknames, and the like. The user information table may be made by the

server of each subsystem and collected to the management serv r.

③ Making of the subsystem user information

[0032] The managing program on the management server makes a subsystem user information table 330 in accordance with the input of the manager and on the basis of the subsystem list table 310 and stores the tabl into the memory in the management server. The manager designates the users who use each subsystem by indicating a condition. For example, as shown in the table 330 in Fig. 3, the users in an operation section are designated for the subsystem of the server 1. All of the users are designated for the subsystem of the server 2. The users in the operation section and group leaders of all sections are designated for the subsystem of the server 3. The table 330 includes the server names and inputted conditions.

④ Making of the user connection information

[0033] The managing program on the management server compares the items in the user information table 320 which has already been made with the conditions in the subsystem user information table 330, determines the connectable servers for respective users, and makes a user connection information table 340. The user connection information has a list of the connectable servers in addition to the same items as those in the user information table 330.

⑤ Distribution of the subsystem list and the user connection information

[0034] The managing program on the management server distributes the subsystem list table 310 and the user connection information table 340 to all of the servers via the communications network. Therefore, all of the servers 1 to 3 have the same information.
[0035] The managing program is software which is executed by the CPU of the management server.

⑥ Distribution of the connectable server list to each client

[0036] A method of distributing the connectable server list from the server to each client will now be described by using Fig. 4.
[0037] For each client, the server to be connected in default is determined and the client has its address as default connection server information 410. The client connects to the default connection server and transmits a login request (430) to the connection server together with the user ID of the user who uses the client. The client can transmit a server information updating request or a login request to the server being connected together with the user ID at anoth r arbitrary timings.

[0038] When the login request or server information updating request is received, the server extracts the user ID included in those requests. The server extracts the connectable server names of the user ID from the user connection information table 340 and, further, extracts the addresses of the connectable servers from the subsystem list table 310. After that, the server transmits the connectable server names and the addresses as a connectable server list to a sending source of the login request or the server information updating request (440). The client stores the received connectable server list as a table 420. In some systems, a plurality of users share one client. In such system, the client may store the connectable server lists for the respective users.
[0039] The foregoing procedure of ① to ⑥ is also applied to the cases of an addition of the server, an address change of the server, an addition or deletion of the user, and a change in user information.

(4) Process of the client

[0040] Process of the client when the user starts a workflow business in the client device will now be described with reference to Fig. 5.
[0041] When the client receives the login request from the user, the client obtains information on the server which has previously been designated as a default server on own client machine (step 500) and tries to connect to the default server.
[0042] When the connection tried server is working (YES in step 501) and the user is authenticated by the server (OK in step 508), the connectable server list table 420 is downloaded onto the own client machine (step 509). Even when the server list has already existed on the client, by again downloading, the client can obtain the new connectable server list corresponding to the login user. After that, the client starts the workflow business (step 510).
[0043] When the connection tried server is not working (NO in step 501) or the user fails to be authenticated by the server (NG in step 508), the client checks whether the connectable server list table 420 for the user exists on the own client machine or not (step 502).
[0044] When the table 420 exists (YES in step 502), the client tries to connect to one of the servers in the list (step 505).
[0045] When the connection cannot be performed (NG in step 506) due to a reason such that the connection tried server is in a down state or the like, the client checks if another server exists in the list (step 507). When there is another server (YES in step 507), the client tries to connect to the server (step 505).
[0046] When the client cannot connect to all servers in the list (NO in step 507), the client finishes the processes.
[0047] When the connection tried server is working (OK in step 506) and the user is authenticated by the server (OK in step 508), the connectable server list

table 420 is downloaded onto the own client machine (step 509).

[0048] When the table 420 for the user doesn't exist, the client finishes the processes (NO in step 502).

[0049] The above process is realized by software which is executed by the CPU of the client.

[0050] The order of selecting the connection trying server in the server list table 420 by the client can be determined by the client or can be merely the topdown order of in the table.

[0051] The basic screen 200 which is displayed on the display device of the client is shown in the paragraph (2) mentioned above and Fig. 2. The INBOX and OUTBOX buttons of all of the subsystems and each subsystem which can be used by the user are displayed in the above screen. This display is performed on the basis of the connectable server list table 420 on the client. When the INBOX or OUTBOX button of a certain subsystem (server) is designated, the client obtains the address of the designated server from the server list table 420. When the client is at present connected to the server, the process corresponding to the designated button is started. When the client is not connected to the server, the connecting process is executed by using the obtained address and, after completion of the user authentication, the process corresponding to the designated button is started. In the basic screen 200, when the case input button 201 and the INBOX and OUTBOX buttons 211 and 221 of all of the subsystems are designated, the client sequentially connects to all of the servers in the connectable server list table 420, receives the user authentication, and executes the transmission and reception of the information and the processes. During the process, if there is a server which is not working, the process for this server is skipped.

### (5) Effects

[0052] By constructing the system and the table arrangement as mentioned above, the client can obtain the list of the servers which can be used by the user from any server.

[0053] A service for accessing a plurality of servers can be provided to the user with a simple user interface.

[0054] It is sufficient to perform the change of the server, server address, and user in only the management server and the maintenance becomes simple.

### (6) Modifications

[0055] Although the embodiment has been described with respect to the workflow system as an example, the defining method and distributing method of the information on the servers and users can be also applied to another multiserver systems.

[0056] The numbers of items in the tables of the subsystem list, user information, subsystem user information, user connection information, and connectable

server list can be increased or decreased as necessary.

### Claims

1. A multiserver workflow system comprising:

   a plurality of servers (120-1, 120-2, 120-N);
   a plurality of clients (130-1, 130-2, 130-N); and
   a network (110) to which said servers and said clients are connected,
   wherein each of said servers and users who use the clients construct a subsystem,
   all of the servers have address information (310) of the servers constructing all subsystems and correspondence information (340) of all users and the subsystems which can be used by respective users, and
   when each client connects to any one of said servers, said client downloads a list of the subsystems which can be used by the user who uses said client and addresses of the servers constructing said usable subsystems from the connected server and stores the list as a connectable server list (420).

2. A system according to claim 1, wherein each client provides a user interface (200) to access all of the usable subsystems with reference to said connection server list (420) and connects to the server constructing the subsystem selected by the user by using the addresses in the connectable server list.

3. A system according to claim 1, wherein each client connects to the server by using the stored connectable server list (420) and, when the connection to said server fails, said client tries to connect to another server in the connectable server list.

4. A method of managing information on servers and users in a multiserver workflow system including a plurality of subsystems, comprising the steps of:

   deciding an information management server;
   on said information management server, defining subsystem/server address information (310) including addresses of servers constructing all of the subsystems and user/subsystem correspondence information (340) indicating a correspondence between all of the users and the subsystems which can be used by respective users and storing the information;
   distributing said subsystem/server address information (310) and said user/subsystem correspondence information (340) from said information management server to all of the servers; and
   in each of the servers constructing the subsystems, storing said subsystem/server address

JA1254

information and said user/subsystem corre-
spondence information being distributed,
extracting a list of the subsystems which can
be used by the user who uses said client and
the addresses of the servers constructing said
usable subsystems from said stored informa-
tion in response to a request from the client,
and transmitting the list (420) to said client.

5. A method according to claim 4, wherein in said
management server,

information (320) on all of the users is col-
lected,
a condition (330) of the user constructing the
subsystem is inputted, and
said information on every user is compared
with the condition of the user constructing said
subsystem, the usable subsystem is deter-
mined for every user, and said user/subsystem
correspondence information (340) is made.

6. A method of connecting to a server by a client, com-
prising the steps of:

having an address (410) of a default connec-
tion server;
connecting to said default connection server at
first, downloading a list of subsystems which
can be used by a user who uses said client and
addresses of the servers constructing said
usable subsystems from the connection server,
and storing the list as a connectable server list
(420); and
performing the connection to the server by
using the stored connectable server list at sec-
ond and subsequent times, and when the con-
nection to said server fails, the client tries to
connect to another server in said connectable
server list.

7. A method according to claim 6, further comprising
the step of:

when the connection to the server succeeds,
downloading the connectable server list (420)
from the connection server in order to obtain
latest information.

8. A program storage device readable by a client
machine, tangibly embodying a program of instruc-
tions executable by the client machine to perform
method steps for connecting with a server machine,
said method comprising the steps of:

connecting to a predetermined default connec-
tion server at first, downloading a list of subsys-
tems which can be used by a user who uses

said client and addresses of servers construct-
ing said usable subsystems from the connec-
tion server, and storing the list as a
connectable server list; and
connecting to the server by using the stored
connectable server list at second and subse-
quent times, and when the connection to said
server fails, trying to connect to another server
in said connectable server list.

9. A server/client system comprising:

a plurality of servers (120);
a plurality of clients (130); and
a network (110) to which said servers and said
clients are connected,
wherein all of the servers have address infor-
mation (310) on all servers and correspond-
ence information (340) of all users and the
servers which can be used by respective users,
and
when each client is connected to any one of
said servers, said client downloads a list of the
servers which can be used by the user who
uses said client and addresses of the servers
from the connection server and stores the list
as a connectable server list (420).

JA1255

# FIG. 1



COMMUNICATIONS
NETWORK

120-1

SERVER

DATABASE — 121-1

110

120-2

SERVER

DATABASE — 121-2

SERVER

DATABASE — 121-N

120-N

COMMUNICATIONS
NETWORK

CLIENT     CLIENT  • •  CLIENT

130-1      130-2      130-N

JA1256

# FIG. 2



SERVER 1    SERVER 2    SERVER 3

120-1    120-2    120-3

ACCOUNTING
BUSINESS
SUBSYSTEM

PERSONNEL
BUSINESS
SUBSYSTEM

MATERIALS
BUSINESS
SUBSYSTEM

110

LAN / WAN

130-1    130-2

CLIENT X    CLIENT Y

200

| CASE INPUT — 201 | | | |
|---|---|---|---|
| 211 | 212 | 213 | 214 |
| INBOX OF ALL SYSTEMS | INBOX OF SERVER 1 | INBOX OF SERVER 2 | INBOX OF SERVER 3 |
| 221 | 222 | 223 | 224 |
| OUTBOX OF ALL SYSTEMS | OUTBOX OF SERVER 1 | OUTBOX OF SERVER 2 | OUTBOX OF SERVER 3 |

SDOCID: <EP    0919912A2  I  >

JA1257

**FIG. 3**

SUBSYSTEM LIST

| SERVER | IP ADDRESS |
|--------|------------|
| SERVER 1 | 196. 14. 43. 1 |
| SERVER 2 | 196. 14. 43. 5 |
| SERVER 3 | 196. 14. 43. 6 |

~310

⟹ DISTRIBUTE TO ALL SERVERS

USER INFORMATION ~320

| SECTION | ID | NAME | POST |
|---------|-----|------|------|
| OPERATION | USER-A | John Smith | GROUP LEADER |
| OPERATION | USER-B | Mary Green | MANAGER |
| GENERAL AFFAIRS | USER-C | Bob White | GROUP LEADER |
| : | : | : | : |

SUBSYSTEM USER INFORMATION ~330

| SERVER | CONDITION |
|--------|-----------|
| SERVER 1 | SECTION="OPERATION " |
| SERVER 2 | ALL |
| SERVER 3 | SECTION="OPERATION" OR POST="GROUP LEADER" |

USER CONNECTION INFORMATION

~340

| ID | SECTION | NAME | POST | CONNECTABLE SERVERS |
|-----|---------|------|------|---------------------|
| USER-A | OPERATION | John Smith | GROUP LEADER | SERVER 1,SERVER 2,SERVER 3 |
| USER-B | OPERATION | Mary Green | MANAGER | SERVER 1,SERVER 2,SERVER 3 |
| USER-C | GENERAL AFFAIRS | Bob White | NULL | SERVER 2,SERVER 3 |
| : | : | : | : | : |

⟱

DISTRIBUTE TO ALL SERVERS



EP 0 919 912 A2

# FIG. 4



CLIENT  SERVER

DEFAULT CONNECTION SERVER

| SERVER 2 | 196. 14. 43. 5 |
|----------|----------------|

410

LOGIN REQUEST,
SERVER INFORMATION
UPDATING REQUEST
(WITH USER-ID)

430

CONNECTABLE
SERVER LIST
TRANSMISSION

440

SUBSYSTEM LIST                310

| SERVER 1 | 196. 14. 43. 1 |
|----------|----------------|
| SERVER 2 | 196. 14. 43. 5 |
| SERVER 3 | 196. 14. 43. 6 |

USER CONNECTION INFORMATION        340

| USER-A | - - | SERVER 1,SERVER 2,SERVER 3 |
|--------|-----|----------------------------|
| USER-B | - - | SERVER 1,SERVER 2,SERVER 3 |
| :      | :   | :                          |

CONNECTABLE SERVER LIST

| SERVER 1 | 196. 14. 43. 1 |
|----------|----------------|
| SERVER 2 | 196. 14. 43. 5 |
| SERVER 3 | 196. 14. 43. 6 |

420

EP 0 919 912 A2

10

# FIG. 5



LOGIN OF USER

START

REQUEST CONNECTION TO DEFAULT SERVER — 500

SERVER IS WORKING ? 501

YES

NO

A

USER IS AUTHENTICATED ? 508

NG

OK

DOWNLOAD SERVER LIST — 509

WORKFLOW BUSINESS — 510

END

CONNECTABLE SERVER LIST EXISTS ? 502

YES

NO

CONNECT TO SERVER IN LIST — 505

SERVER IS WORKING ? 506

OK

NG

A

NEXT CANDIDATE EXISTS ? 507

NO

YES

ERROR END

ERROR END

DOCID: <EP___0919912A2_I_>

JA1260

This Page Blank (uspto)



**U.S.P.S. EXPRESS MAIL "POST OFFICE TO ADDRESSEE" SERVICE
DEPOSIT INFORMATION**

Express Mail Label No.: _____ EV 325 994 102 US

Date of Deposit: ___ September 14, 2004

**BRINKS
HOFER
GILSON
&LIONE**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:   J. Overton et al.

Appln. No.:   09/872,736

Filed:   June 1, 2001

For:   Method And Apparatus For Managing
Location Information In A Network

Attorney Docket No:   11958-49

Examiner:  Unknown

Art Unit:  2152

Commissioner for Patents
P. O. Box 1450
Alexandria, VA 22313-1450

**TRANSMITTAL**

Sir:

**Attached is/are**:

☒   Transmittal Letter (in duplicate); Third Supplemental Information Disclosure Statement; PTO Form 1449;
One Copy of References D1-D17

☒   Return Receipt Postcard

**Fee calculation:**

☐   No additional fee is required.

☐   Small Entity.

☐   An extension fee in an amount of $_____ for a _____-month extension of time under 37 C.F.R. § 1.136(a).

☐   A petition or processing fee in an amount of $_____ under 37 C.F.R. § 1.17(_____).

☐   An additional filing fee has been calculated as shown below:

| | Claims Remaining After Amendment | | Highest No. Previously Paid For | Present Extra | Small Entity | | or | Not a Small Entity | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Rate | Add'l Fee | | Rate | Add'l Fee |
| Total | | Minus | | | x $9= | | | x $18= | |
| Indep. | | Minus | | | x 43= | | | x $86= | |
| First Presentation of Multiple Dep. Claim | | | | | +$145= | | | + $290= | |
| | | | | | Total | $ | | Total | $ |

**Fee payment:**

☐   A check in the amount of $_____ is enclosed.

☐   Please charge Deposit Account No. 23-1925 in the amount of $    . A copy of this Transmittal is
enclosed for this purpose.

☐   Payment by credit card in the amount of $_____ (Form PTO-2038 is attached).

☒   The Director is hereby authorized to charge payment of any additional filing fees required under 37 CFR
§ 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper
(including any extension fee required to ensure that this paper is timely filed), or to credit any
overpayment, to Deposit Account No. 23-1925.

9/14/2004

Date

Respectfully submitted,

Kent E. Genin (Reg. No. 37,834)

**JA1262**



9-16-04

2152
DFW)

"Express Mail" mailing label number EV 325 994 102 US

Date of Deposit: September 14, 2004

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Appln. of: | John K. Overton et al. | | |
| Appln. No.: | 09/872,736 | Examiner: | Unknown |
| Filed: | June 1, 2001 | Art Unit: | 2152 |
| For: | METHOD AND APPARATUS FOR MANAGING LOCATION INFORMATION IN A NETWORK | | |
| Attorney Docket No: 11958-49 | | | |

### THIRD SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

In accordance with the duty of disclosure under 37 C.F.R. §1.56 and §§1.97-1.98, and more particularly in accordance with 37 C.F.R. §1.97(b), Applicant hereby cites the following reference(s):

#### U.S. PATENTS

| Patent No. | Date | Inventor |
|---|---|---|
| 4,835,372 | 05/1989 | Gombrich et al. |
| 5,291,399 | 03/1994 | Chaco |
| 5,475,817 | 12/1995 | Waldo et al. |
| 5,479,654 | 12/1995 | Squibb |
| 5,740,428 | 04/1998 | Mortimore et al. |
| 5,903,889 | 05/1999 | de la Huerga et al. |
| 5,918,241 | 06/1999 | Perkowski |
| 6,108,787 | 08/2000 | Anderson et al. |
| 6,131,095 | 10/2000 | Low et al. |
| 6,154,873 | 11/2000 | Call |
| 6,377,986 | 04/2002 | Philyaw et al. |
| 6,418,441 | 07/2002 | Call |
| 2002/0112048 | 08/2002 | Gruyer et al. |

BRINKS
HOFER
GILSON
&LIONE

-1-

## OTHER ART

Callaghan V L et al., "Structures and Metrics for Image Storage and Interchange" Journal of Electronic Imaging, Vol. 2, No. 2, 1 April 1993, pp. 126-137

"Method for Network Naming and Routing" IBM Technical Disclosure Bulletin, Vol. 37, No. 9, 1 September 1994, page 255

"Service Location in an Open Distributed Environment," Beitz et al., Second International Workshop on Services in Distributed and Networked Environments, IEEE Comput. Soc., June, 1995, pp. 28-34

Baer, Tony, "Tales from the Network", Computerworld Healthcare Journal, www.computerworld.com/news/1996/story/0,11280,14557,00.html, pp. 1-9, October 1, 1996

For the Examiner's convenience, Applicant is enclosing Form PTO-1449 (one sheet), along with a copy of each listed reference for which a copy is required under 37 C.F.R. §1.98(a)(2). As each of the listed references is in English, no further commentary is believed to be necessary, 37 C.F.R §1.98(a)(3). Applicant respectfully requests the Examiner's consideration of the above reference(s) and entry thereof into the record of this application.

By submitting this Statement, Applicant is attempting to fully comply with the duty of candor and good faith mandated by 37 C.F.R. §1.56. As such, this Statement is not intended to constitute an admission that any of the enclosed references, or other information referred to therein, constitutes "prior art" or is otherwise "material to patentability," as that phrase is defined in 37 C.F.R. §1.56(a).

Applicant also notes for the Examiner's consideration co-pending U.S. Application Serial Nos. 10/646,350, filed August 22, 2003 and 09/661,222, filed September 13, 2000. These applications share at least one common inventor with the present application and generally related subject matter.


BRINKS
HOFER
GILSON
&LIONE

-2-

JA1264

Applicant has calculated no fee to be due in connection with the filing of this Statement. However, the Director is authorized to charge any fee deficiency associated with the filing of this Statement to a deposit account, as authorized in the Transmittal accompanying this Statement.

Respectfully submitted

9/14/2004
Date

Kent E. Genin (Reg. No.37,834)

OIPE
SEP 1 4 2004
PATENT & TRADEMARK

| FORM PTO-1449 | | | SERIAL NO. 09/872,736 | CASE NO. 11958/49 |
|---|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | | FILING DATE June 1, 2001 | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | | | APPLICANT(S): J. Overton et al. | |

REFERENCE DESIGNATION          U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | D1 | 4,835,372 | 05/1989 | Gombrich et al. | | |
| | D2 | 5,291,399 | 03/1994 | Chaco | | |
| | D3 | 5,475,817 | 12/1995 | Waldo et al. | | |
| | D4 | 5,479,654 | 12/1995 | Squibb | | |
| | D5 | 5,740,428 | 04/1998 | Mortimore et al. | | |
| | D6 | 5,903,889 | 05/1999 | de la Huerga et al. | | |
| | D7 | 5,918,241 | 06/1999 | Perkowski | | |
| | D8 | 6,108,787 | 08/2000 | Anderson et al. | | |
| | D9 | 6,131,095 | 10/2000 | Low et al. | | |
| | D10 | 6,154,873 | 11/2000 | Call | | |
| | D11 | 6,377,986 | 04/2002 | Philyaw et al. | | |
| | D12 | 6,418,441 | 07/2002 | Call | | |
| | D13 | 2002/0112048 | 08/2002 | Gruyer et al. | | |

| EXAMINER INITIAL | | OTHER ART – NON PATENT LITERATURE DOCUMENTS (Include name of author, title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date page(s), volume-issue number(s), publisher, city and/or country where published. |
|---|---|---|
| | D14 | Callaghan V L et al., "Structures and Metrics for Image Storage and Interchange" Journal of Electronic Imaging, Vol. 2, No. 2, 1 April 1993, pp. 126-137 |
| | D15 | "Method for Network Naming and Routing" IBM Technical Disclosure Bulletin, Vol. 37, No. 9, 1 September 1994, page 255 |
| | D16 | "Service Location in an Open Distributed Environment," Beitz et al., Second International Workshop on Services in Distributed and Networked Environments, IEEE Comput. Soc., June, 1995, pp. 28-34 |
| | D17 | Baer, Tony, "Tales from the Network", Computerworld Healthcare Journal, www.computerworld.com/news/1996/story/0,11280,14557,00.html, pp. 1-9, October 1, 1996 |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Rev. Dec.-99
\\fsv11\common\kgenin\Econnectix 11958\11958-49\11958-49 PTO 1449.4.doc

JA1266



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/872,736 | 06/01/2001 | John K. Overton | 10406/49 | 3927 |

7590        12/06/2004

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

| EXAMINER |
|---|
| DELGADO, MICHAEL A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2144 | |

DATE MAILED: 12/06/2004

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

**JA1267**

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 09/872,736 | OVERTON ET AL. |
| | Examiner | Art Unit | |
| | Michael S. A. Delgado | 2144 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *1* MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *14 September 2004*.

2a)☐ This action is **FINAL**.      2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-45* is/are pending in the application.

     4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☐ Claim(s) _____ is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☒ Claim(s) *1-45* are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

     Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

     Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

     a)☐ All   b)☐ Some * c)☐ None of:

        1.☐ Certified copies of the priority documents have been received.

        2.☐ Certified copies of the priority documents have been received in Application No. _____.

        3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

     * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application (PTO-152)

6)☐ Other: _____.

## DETAILED ACTION

### *Election/Restrictions*

1.      Restriction to one of the following inventions is required under 35 U.S.C. 121:

      I.      Claims 1-23 and 45 drawn to computer-to-computer data addressing classified in

        class 709, subclass 245.

      II.     Claims 24-44, drawn to generating database or data structure, classified in class

        707, subclass 102.

The inventions are distinct, each from the other because of the following reasons:

2.      Inventions I and II are related as subcombinations disclosed as usable together in a single

combination.  The subcombinations are distinct from each other if they are shown to be

separately usable.  In the instant case, invention I has separate utility such as the using of an

identifier to locate an address in a network environment.  Invention II has separate utility such as

the step taken in creating a database See MPEP § 806.05(d).

3.      Because these inventions are distinct for the reasons given above and have acquired a

separate status in the art as shown by their different classification, restriction for examination

purposes as indicated is proper.

    -   Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Michael S. A. Delgado whose telephone number is (571) 272-

3926.  The examiner can normally be reached on 7.30 AM - 5.30PM.

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, WILLIAM A CUCHLINSKI JR can be reached on (571) 272-3925

. The fax phone number for the organization where this application or proceeding is

assigned is 703-872-9306.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

MD

WILLIAM A. CUCHLINSKI, JR.
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2800



1-10—05

2144
Rkr

U.S.P.S. EXPRESS MAIL "POST OFFICE TO ADDRESSEE" SERVICE
DEPOSIT INFORMATION

Express Mail Label No.: ____ EV 314 908 598 US

Date of Deposit: ___ January 6, 2005

**BRINKS**
**HOFER**
**GILSON**
**&LIONE**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:   J. Overton et al.

Appln. No.:   09/872,736                          Examiner: M. Delgado

Filed:   June 1, 2001                             Art Unit: 2144

For:   Method And Apparatus For Managing
       Location Information In A Network

Attorney Docket No:   11958/49

Commissioner for Patents
P. O. Box 1450
Alexandria, VA  22313-1450                   **TRANSMITTAL**

Sir:

**Attached is/are:**
☒   Transmittal Letter (in duplicate); Response to Election/Restriction Requirement
☒   Return Receipt Postcard

**Fee calculation:**
☐   No additional fee is required.
☐   Small Entity.
☐   An extension fee in an amount of $_____ for a _____-month extension of time under 37 C.F.R. § 1.136(a).
☐   A petition or processing fee in an amount of $_____ under 37 C.F.R. § 1.17(_____).
☐   An additional filing fee has been calculated as shown below:

|  |  |  | Highest No. Previously Paid For | Present Extra | Small Entity | | or | Not a Small Entity | |
|---|---|---|---|---|---|---|---|---|---|
|  | Claims Remaining After Amendment |  |  |  | Rate | Add'l Fee |  | Rate | Add'l Fee |
| Total |  | Minus |  |  | x $25= |  |  | x $50= |  |
| Indep. |  | Minus |  |  | X100= |  |  | x $200= |  |
| First Presentation of Multiple Dep. Claim |  |  |  |  | +$180= |  |  | + $360= |  |
|  |  |  |  |  | Total | $ |  | Total | $ |

**Fee payment:**
☐   A check in the amount of $_____ is enclosed.
☐   Please charge Deposit Account No. 23-1925 in the amount of $____. A copy of this Transmittal is enclosed for this purpose.
☐   Payment by credit card in the amount of $_____ (Form PTO-2038 is attached).
☒   The Director is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925.

Respectfully submitted,

January 6, 2005
_____
Date

_____
Kent E. Genin (Reg. No. 37,834)

JA1271

"Express Mail" mailing label number EV 314 908 598 US

Date of Deposit: January 6, 2005

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:   John K. Overton et al.

Appln. No.:       09/872,736                          Examiner:  M. Delgado

Filed:            June 1, 2001                        Art Unit:   2144

For:              METHOD AND APPARATUS
                  FOR MANAGING LOCATION
                  INFORMATION IN A NETWORK

Attorney Docket No:  11958-49

## RESPONSE TO ELECTION/RESTRICTION REQUIREMENT

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

   In response to the Restriction/Election Requirement in the Action mailed December 6, 2004, please consider the following:

BRINKS
HOFER
GILSON
&LIONE

-1-

JA1272

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:

1.      (Original) A system for managing location information and providing location information to location queries, the system comprising:

a transfer protocol comprising an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity;

a location server containing location information corresponding to at least one entity, the location information formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and

programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising all locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity.

2.      (Original) The system of claim 1, wherein the entity comprises a physical object and wherein the at least one location comprises a geographic location.

3.      (Original)  The system of claim 2, wherein the geographic location comprises at least one of a latitude, a longitude and an altitude.

4.      (Original)  The system of claim 1, wherein the at least one location comprises a plurality of geographic locations, each of the geographic locations representing a position of an object at a different time.

JA1273

5.    (Original)  The system of claim 1, wherein the location server comprises a plurality of location servers, each of the plurality of location servers comprising at least a portion of a total amount of location information residing on the plurality of location servers, and wherein the location information is formatted according to the transfer protocol; and

wherein the programming logic is stored on each of the plurality of location servers.

6.    (Original)  The system of claim 5, wherein the programming logic stored at each of the location servers further comprises logic responsive to the location query to return one of a location message and a redirect message, wherein the location server returns the location message if the queried location server contains location information for the desired entity, and wherein the location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising a list of at least one other location server known to have location information relevant to the location query.

7.    (Original)  The system of claim 6, wherein the list of at least one other location server comprises a list of all location servers in the plurality of location servers and a corresponding list of each of the entities having location information on the respective location servers.

8.    (Original)  The system of claim 5, wherein each of the location servers stores at least a portion of the total amount of location information on a persistent storage device.

9.    (Original)  The system of claim 8, wherein the persistent storage device comprises one of a hard disk drive, tape drive, optical storage device and removable storage media.

10.    (Original)  The system of claim 1, wherein the location information in the location server is maintained in an indexed location store.



11.     (Original)  The system of claim 10, wherein the location store comprises a string store indexed by a hash table.

12.     (Original)  The system of claim 10, wherein the location query identifying the desired entity comprises a unique identifier for the desired entity, and wherein the programming logic stored on the location server further comprises programming logic for applying an index function to the unique identifier to retrieve at least a portion of the locations associated with the unique identifier in the location store.

13.     (Original)  The method of claim 12, wherein the programming logic further comprises logic for applying the index function to retrieve all of the locations associated with the unique identifier in the location store.

14.     (Original)  The system of claim 12, wherein the location store comprises a string store and the index function comprises a hash function.

15.     (Original)  The system of claim 6, wherein the plurality of location servers are arranged in a network topology having a plurality of nodes organized in a tree-structure, wherein each node comprises at least one location server and wherein each node is connected to at least one other node in the tree structure.

16.     (Original)  The system of claim 12, wherein the data location query is received at a data location server in a first node and wherein the redirect message comprises a list of at least one other location server in a node other than the first node that is known to have data location information relevant to the location query.

17.     (Original)  A system for managing location information and providing data location information to location queries, the system comprising:

          a transfer protocol comprising an identifier and at least one location association, wherein the identifier uniquely specifies an entity and wherein each location specifies a location pertaining to the entity;

a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to the transfer protocol, and comprising at least one application server address, wherein the plurality of location servers are arranged in a server cluster topology such that each location server contains a unique portion of the location information; and

programming logic stored on each of the location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises a list of all of the plurality of location servers containing location information related to the desired identifier.

18.    (Original)  The system of claim 17, wherein the location information comprises geographic location information.

19.    (Original)  The system of claim 17, wherein the location information comprises network address information.

20.    (Original)  The system of claim 19, wherein the network address information comprises a network address of a data repository containing data pertaining to the desired identifier.

21.    (Original)  A method of handling location queries in a network, the network comprising a plurality of location servers containing location information correlating each of a plurality of identifiers with at least one location, the method comprising:

receiving a location query from a client at one of the plurality of location servers, the location query requesting an identifier's location;

sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one

BRINKS
HOFER
GILSON
&LIONE

JA1276

application server containing information relevant to the entity identified in the query; and

 sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising a list of location servers containing location information relevant to the entity identified in the query.

 22.   (Original)  The method of claim 21, further comprising applying information in the location query from the client to an indexing function to determine if the queried location server contains location information relevant to the entity identified in the query.

 23.   (Original)  The method of claim 22, wherein each of the plurality of location servers comprises an indexed table of identifiers and associated locations, and wherein applying information in the location query comprises applying an identifier in the location query to a hash function.

 24.   (Original)  A method of scaling at least one of location server capacity and transaction rate capability in a system for storing and retrieving location information, the method comprising:

 providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information relevant to the identifier;

 providing a first location server storing location information formatted according to the transfer protocol;

 receiving an identifier and a location relevant to the identifier at the first location server;

 storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and

BRINKS
HOFER
GILSON
&LIONE

JA1277

transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit.

25.     (Original)  The method of claim 24, wherein receiving an identifier and a location comprises receiving the identifier and the location at the first location server from an application server, wherein the location comprises an address for the application server.

26.     (Original)  The method of claim 24, wherein receiving an identifier and a location comprises receiving the identifier and the location at the first location server from a physical object, wherein the identifier identifies the physical object and wherein the location comprises a geographic location for the physical object.

27.     (Original)  The method of claim 26, wherein the physical object comprises a vehicle.

28.     (Original)  The method of claim 26, wherein the physical object comprises a portable telecommunications device.

29.     (Original)  The method of claim 24, wherein transferring a portion of the identifier and location associations comprises:

identifying a portion of identifier and location associations on the first location server to be transferred to the second location server and identifying a data set state of the identified portion at an initial time;

copying a data set for the identified portion corresponding to the identified data set state from the first location server to the second location server and maintaining a second data set containing changes to the identified portion since the initial time;

identifying a data set state for the second data set;

JA1278

ceasing operation of the first location server with respect to the identified portion and copying the second data set to the second location server, wherein the second data set corresponds to the identified data set state for the second data set; and

initiating operation of the second location server for the identified portion of identifiers and location associations.

30.    (Original)  The method of claim 24, wherein the performance criterion comprises an amount of available persistent storage space in the first location server.

31.    (Original)  The method of claim 24, wherein the performance criterion comprises a transaction rate limit.

32.    (Original)  The method of claim 24, wherein the transaction rate limit comprises a processor speed limit.

33.    (Original)  The method of claim 24, wherein the transaction rate limit comprises a network connection bandwidth limit.

34.    (Original)  The method of claim 24, further comprising transmitting a location server map from the first location server, the location server map comprising information identifying the second location server and a list of identifiers associated with the second location server.

35.    (Original)  The method of claim 34, wherein the first and second location servers are part of a location server cluster comprising a plurality of location servers, and wherein transmitting the location server map comprises transmitting the location server map to each of the plurality of data location servers asynchronously.

36.    (Original)  The method of claim 34, wherein transmitting a location server map comprises transmitting the location server map to a client in response to query received at the first location server from the client regarding an identifier that is not resident on the first location server.

37.    (Original)  The method of claim 24, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit.

38.    (Original)  A database comprising:
        a computer readable medium;
        a plurality of index designations, each index designation representative of one of a plurality of identifiers, wherein each identifier uniquely identifies an entity;
        a plurality of locations, wherein each of the locations is associated with at least one of the plurality of index designations and represents a location of information relevant to an identifier represented by an index designation;
        a location store stored in the computer readable medium, the location store comprising a table containing the plurality of index designations and associated locations; and
        an indexing function stored in the computer readable medium, the indexing function operative to map each of the plurality of identifiers to a respective one of the plurality of index designations.

39.    (Original)  The database of claim 38, wherein the indexing function comprises one of a hash function, a b-tree function, and a t-tree function.

40.    (Original)  The database of claim 39, further comprising a front end in communication with the location store and indexing function, the front end operative to transport identifiers and associated locations via a transport protocol.

41.    (Original)  The database of claim 40, further comprising a buffer in communication with the front end, the buffer configured to maintain a log of each of a plurality of location store update transactions.

BRINKS
HOFER
GILSON
&LIONE

Page 9 of 11

JA1280

42.     (Original)  The database of claim 38, wherein the computer readable medium comprises at least one of RAM and a persistent storage device.

43.     (Original)  The database of claim 38, wherein the location store comprises a string store and wherein the plurality of locations comprise network address strings.

44.     (Original)  The database of claim 43, wherein at least one of the network address strings comprises an address of a database in a network.

45.     (Original)  A system for managing location information and providing location information to location queries, the system comprising:

a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity, the location server containing location information corresponding to at least one entity and formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and

programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising all locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity.

JA1281

# REMARKS

In response to the restriction requirement of the Office Action dated December 6, 2004, Applicants elect Group II (claims 24-44) with traverse. This election is being made with traverse on the grounds that the invention of both Groups I and II can be efficiently searched together.

Respectfully submitted,

Kent E. Genin
Registration No. 37,834
Attorney for Applicant

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, ILLINOIS 60610
(312) 321-4200

JA1282



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/872,736 | 06/01/2001 | John K. Overton | 10406/49 | 3927 |

7590          08/22/2005

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

| EXAMINER |
|---|
| DELGADO, MICHAEL A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2144 | |

DATE MAILED: 08/22/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

JA1283

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 09/872,736 | OVERTON ET AL. |
| | Examiner | Art Unit | |
| | Michael S. A. Delgado | 2144 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM
THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed
  after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any
  earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>06 January 2005</u>.

2a)☐ This action is **FINAL**.     2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is
    closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-45</u> is/are pending in the application.

    4a) Of the above claim(s) <u>1-23</u> is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>24-45</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>14 September 2001</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage
         application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08)
    Paper No(s)/Mail Date <u>9/04, 8/02, 05/02 09/01</u>

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.
5)☐ Notice of Informal Patent Application (PTO-152)
6)☐ Other: _____.

*ⅅ*

**JA1284**

## DETAILED ACTION

### *Claim Rejections - 35 USC § 102*

1.    The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

2.    Claims 24-26, 29-38 and 40-45 rejected under 35 U.S.C. 102(e) as being anticipated by US Patent No. 6,466,980 by Lumelsky et al.

In claim 24, Lumelsky teaches about a method of scaling at least one of location server capacity and transaction rate capability in a system for storing and retrieving location information, the method comprising (Fig 4) (abstract) :

providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information relevant to the identifier (Col 9, lines 15-20) (Col 9, lines 20-30);

providing a first location server storing location information formatted according to the transfer protocol (Col 9, lines 20-25);

receiving an identifier and a location relevant to the identifier at the first location server (Col 9, lines 20-25);

storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one

location, wherein the received location is associated with the received identifier in the location

store (Fig 6) (Col 9, lines 35-45); and

      transferring a portion of the identifiers and associated locations to a second data location

server when a performance criterion of the first location server reaches a predetermined

performance limit (Col 6, lines 33-43).

      In claim 25, Lumelsky teaches about a method of claim 24, wherein receiving an

identifier and a location comprises receiving the identifier and the location at the first location

server from an application server, wherein the location comprises an address for the application

server (Col 9, lines 50-60).

      In claim 26, Lumelsky teaches about a method of claim 24, wherein receiving an

identifier and a location comprises receiving the identifier and the location at the first location

server from a physical object, wherein the identifier identifies the physical object and wherein

the location comprises a geographic location for the physical object (Col 10, lines 10-30).

      In claim 29, Lumelsky teaches about a method of claim 24, wherein transferring a portion

of the identifier and location associations comprises:

      identifying a portion of identifier and location associations on the first location server to

be transferred to the second location server and identifying a data set state of the identified

portion at an initial time (Col 24, lines 10-20);

      copying a data set for the identified portion corresponding to the identified

JA1286

data set state from the first location server to the second location server and maintaining a second

data set containing changes to the identified portion since the initial time (Col 24, lines 10-20);

identifying a data set state for the second data set (Col 24, lines 19-23);

ceasing operation of the first location server with respect to the identified portion and

copying the second data set to the second location server, wherein the second data set

corresponds to the identified data set state for the second data set (Col 20, lines 20-30) (Col 24,

lines 10-20); and

initiating operation of the second location server for the identified portion of identifiers

and location associations (Col 24, lines 10-20).

In claim 30, Lumelsky teaches about a method of claim 24, wherein the performance

criterion comprises an amount of available persistent storage space in the first location server

(Col 19, lines 40-45).

In claim 31, Lumelsky teaches about a method of claim 24, wherein the performance

criterion comprises a transaction rate limit (Col 1, lines 45-55) (Col 10, lines 47-56).

In claim 32, Lumelsky teaches about a method of claim 24, wherein the transaction rate

limit comprises a processor speed limit (Col 1, lines 45-55) (Col 10, lines 47-56).

In claim 33, Lumelsky teaches about a method of claim 24, wherein the transaction rate

limit comprises a network connection bandwidth limit (Col 1, lines 45-55) (Col 10, lines 47-56).

In claim 34, Lumelsky teaches about a method of claim 24, further comprising transmitting a location server map from the first location server, the location server map comprising information identifying the second location server and a list of identifiers associated with the second location server (Fig 6) (Col 10, lines 20-30).

In claim 35, Lumelsky teaches about a method of claim 34, wherein the first and second location servers are part of a location server cluster comprising a plurality of location servers, and wherein transmitting the location server map comprises transmitting the location server map to each of the plurality of data location servers asynchronously (Fig 4) (Col 10, lines 35-45).

In claim 36, Lumelsky teaches about a method of claim 34, wherein transmitting a location server map comprises transmitting the location server map to a client in response to query received at the first location server from the client regarding an identifier that is not resident on the first location server (Col 24, lines 1-10).

In claim 37, Lumelsky teaches about a method of claim 24, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit (Col 24, lines 10-20).

In claim 38, Lumelsky teaches about a database comprising;

a computer readable medium (Col 28, lines 20-25);

a plurality of index designations, each index designation representative of one of a plurality of identifiers, wherein each identifier uniquely identifies an entity (Fig 6) (Col 9, lines 35-45);

a plurality of locations, wherein each of the locations is associated with at least one of the plurality of index designations and represents a location of information relevant to an identifier represented by an index designation (Col 9, lines 35-45);

a location store stored in the computer readable medium, the location store comprising a table containing the plurality of index designations and associated locations (Fig 6); and

an indexing function stored in the computer readable medium, the indexing function operative to map each of the plurality of identifiers to a respective one of the plurality of index designations (Col 9, lines 35-45).

In claim 40, Lumelsky teaches about a database of claim 39, further comprising a front end in communication with the location store and indexing function, the front end operative to transport identifiers and associated locations via a transport protocol (Col 9, lines 15-25).

In claim 41, Lumelsky teaches about a database of claim 40, further comprising a buffer in communication with the front end, the buffer configured to maintain a log of each of a plurality of location store update transactions (Col 10, lines 20-30).

In claim 42, Lumelsky teaches about a database of claim 38, wherein the computer readable medium comprises at least one of RAM and a persistent storage device (Col 28, lines 20-30).

In claim 43, Lumelsky teaches about a database of claim 38, wherein the location store comprises a string store and wherein the plurality of locations comprise network address strings (Fig 6a).

In claim 44, Lumelsky teaches about a database of claim 43, wherein at least one of the network address strings comprises an address of a database in a network (Fig 6b).

In claim 45, Lumelsky teaches about a system for managing location information and providing location information to location queries, the system comprising (Fig 4):

a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity, the location server containing location information corresponding to at least one entity and formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network (Col 9, lines 15-20) (Col 9, lines 20-30); and

programming logic stored on the location server responsive to a location

query identifying a desired entity to return a location message, the location message

comprising all locations associated with the desired entity, wherein the location server

returns the location message if the location server contains location information for the

desired entity (Col 10, lines 20-30).

### *Claim Rejections - 35 USC § 103*

3.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the
> manner in which the invention was made.

4.      Claim 27-28 and 29 are rejected under 35 U.S.C. 103(a) as being unpatentable over US

Patent No. 6,466,980 by Lumelsky et al in view of US Patent No. 6,578,068 by Bowman-

Amuah.

In claim 27 Lumelsky teaches all the limitation but fails to explicitly teach that the

physical object comprises a vehicle. In Bowman-Amuah, the advantage of a delivery vehicle is

used in the association of end-user (object) to applications (Col 23, lines 50-65).

The vehicle approach combined with the object method of Lumelsky (Col 9, lines 20-30)

would improve the portability of the software thus makes it reusable.

It would have been obvious for some one of ordinary skill at the time of the invention to

use an object comprising of a vehicle in order to take advantage of the portable feature

In claim 28, the use of a physical object comprises a portable telecommunications device is well known in the art as disclosed by Bowman-Amuah (Col 29, lines 44-50)

In claim 39, the use of an indexing function comprises a hash function is commonly used in object search and is well known in the art as disclosed by Bowman-Amuah (Col 191, lines 50-60).

## *Conclusion*

5.    The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

US 6,438,652 by Jordan et al , teaches about load balancing cooperating cache servers by shifting forwarded request.

US 6,711,408 by Raith, teaches about position assisted handoff within a wireless communications network.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Michael S. A. Delgado whose telephone number is (571) 272-3926. The examiner can normally be reached on 7.30 AM - 5.30PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, David A. Wiley can be reached on (571) 272-3923

. The fax phone number for the organization where this application or proceeding is assigned is 703-872-9306.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

MD

DAVID WILEY
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2100

JA1293

OIPE
SEP 1 4 2004

| FORM PTO-1449 | | SERIAL NO. 09/872,736 | | CASE NO. 11958/49 |
|---|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | FILING DATE June 1, 2001 | | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | | APPLICANT(S): J. Overton et al. | | |

### REFERENCE DESIGNATION    U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| ⋔⋔⋔ | D1 | 4,835,372 | 05/1989 | Gombrich et al. | | |
| | D2 | 5,291,399 | 03/1994 | Chaco | | |
| | D3 | 5,475,817 | 12/1995 | Waldo et al. | | |
| | D4 | 5,479,654 | 12/1995 | Squibb | | |
| | D5 | 5,740,428 | 04/1998 | Mortimore et al. | | |
| | D6 | 5,903,889 | 05/1999 | de la Huerga et al. | | |
| | D7 | 5,918,241 | 06/1999 | Perkowski | | |
| | D8 | 6,108,787 | 08/2000 | Anderson et al. | | |
| | D9 | 6,131,095 | 10/2000 | Low et al. | | |
| | D10 | 6,154,873 | 11/2000 | Call | | |
| | D11 | 6,377,986 | 04/2002 | Philyaw et al. | | |
| | D12 | 6,418,441 | 07/2002 | Call | | |
| | D13 | 2002/0112048 | 08/2002 | Gruyer et al. | | |

| EXAMINER INITIAL | | OTHER ART – NON PATENT LITERATURE DOCUMENTS (Include name of author, title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date page(s), volume-issue number(s), publisher, city and/or country where published. |
|---|---|---|
| ⋔⋔⋔ | D14 | Callaghan V L et al., "Structures and Metrics for Image Storage and Interchange" Journal of Electronic Imaging, Vol. 2, No. 2, 1 April 1993, pp. 126-137 |
| | D15 | "Method for Network Naming and Routing" IBM Technical Disclosure Bulletin, Vol. 37, No. 9, 1 September 1994, page 255 |
| | D16 | "Service Location in an Open Distributed Environment," Beitz et al., Second International Workshop on Services in Distributed and Networked Environments, IEEE Comput. Soc., June, 1995, pp. 28-34 |
| | D17 | Baer, Tony, "Tales from the Network", Computerworld Healthcare Journal, www.computerworld.com/news/1996/story/0,11280,14557,00.html, pp. 1-9, October 1, 1996 |

| EXAMINER | DATE CONSIDERED 8/17/05 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Rev. Dec.-99
\\fsv11\common\kgenin\Econnectix 11958\11958-49\11958-49 PTO 1449.4.doc

JA1294

Best Available Copy

OIPE
AUG 1 3 2002

| FORM PTO-1449 | | SERIAL NO. 09/872,736 | CASE NO. 10406/49 |
|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | FILING DATE June 1, 2001 | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | | APPLICANT(S): J. Overton et al. | |

REFERENCE DESIGNATION     U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| ᶆᴡ | C1 | 5,724,575 | 03/03/98 | Hoover et al. | | |
| | C2 | 5,913,210 | 06/15/99 | Call | | |
| | C3 | 5,950,173 | 09/07/99 | Perkowski | | |
| | C4 | 5,974,409 | 10/26/99 | Sanu et al. | | |

FOREIGN PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS/ SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| ᶆᴡ | C5 | EP 0 919 912 A2 | 06/02/99 | EPO | | | |

RECEIVED
AUG 1 6 2002
Technology Center 2100

| EXAMINER M. Dolorado | DATE CONSIDERED 8/12/05 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Rev. Dec.-99
\\Bhglmain3\common\keg\OverX 10406\10406-49\10406-49 PTO 1449.3.doc

JA1295



Best Available Copy

| FORM PTO-1449 | | | SERIAL NO. 09/872,736 | CASE NO. 10406/49 |
|---|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | | FILING DATE June 1, 2001 | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | | | APPLICANT(S): John K. Overton et al. | |

OIPE MAY 07 2002

### REFERENCE DESIGNATION U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| M·D | B1 | 5,724,575 | 03/03/98 | Hoover et al. | | |
| | B2 | 5,913,210 | 06/15/99 | Call | | |
| | B3 | 5,950,173 | 09/07/99 | Perkowski | | |
| | B4 | 5,974,409 | 10/26/99 | Sanu et al. | | |

### FOREIGN PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS/ SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| MMD | B5 | EP 0 919 912 A2 | 06/02/99 | EPO | | | |

| EXAMINER INITIAL | | OTHER ART (Including Author, Title, Date, Pertinent Pages, etc.) |
|---|---|---|
| MMD | B6 | Copy of Communication relating to the results of the Partial International Search Report for PCT Application No. PCT/US01/18013 dated April 15, 2002 |

RECEIVED
MAY 1 0 2002
Technology Center 2100

| EXAMINER M. Relgado | DATE CONSIDERED 8/12/05 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Rev. Dec.-99
F:\COMMON\KEG\overX 10406\10406-49\10406-49 PTO 1449.2.doc

JA1296

| FORM PTO-1449 | | SERIAL NO. 09/872,736 | CASE NO. 10406/49 |
|---|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | | FILING DATE June 1, 2001 | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | | APPLICANT(S): J. Overton et al. | |

**REFERENCE DESIGNATION**     **U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| MTD | A1 | 4,553,261 | 11/12/85 | FROESSL | | |
| | A2 | 4,636,858 | 01/1987 | HAGUE | | |
| | A3 | 4,728,978 | 03/01/88 | INOUE ET AL. | | |
| | A4 | 4,800,488 | 01/24/89 | AGRAWAL ET AL. | | |
| | A5 | 4,825,406 | 04/25/89 | BEAN ET AL. | | |
| | A6 | 4,914,571 | 04/03/90 | BARATZ ET AL. | | |
| | A7 | 5,008,700 | 04/1991 | OKAMOTO | | |
| | A8 | 5,124,814 | 06/23/92 | TAKAHASHI ET AL. | | |
| | A9 | 5,193,185 | 03/1883 | LANTER | | |
| | A10 | 5,208,623 | 05/04/93 | TAKAHASHI | | |
| | A11 | 5,319,401 | 06/07/94 | HICKS | | |
| | A12 | 5,347,600 | 09/1994 | BARNSLEY | | |
| | A13 | 5,384,643 | 01/24/95 | INGA ET AL. | | |
| | A14 | 5,414,841 | 05/09/95 | BINGHAM ET AL. | | |
| | A15 | 5,455,648 | 10/03/95 | KAZAMI | | |
| | A16 | 5,499,113 | 03/1996 | TSUBOI | | |
| | A17 | 5,522,077 | 05/28/96 | CUTHBERT ET AL. | | |
| | A18 | 5,537,547 | 07/16/96 | CHAN ET AL. | | |
| | A19 | 5,550,981 | 08/27/96 | BAUER ET AL. | | |
| | A20 | 5,551,027 | 08/27/96 | CHOY ET AL. | | |
| | A21 | 5,557,790 | 09/17/96 | BINGHAM ET AL. | | |
| | A22 | 5,560,005 | 09/24/96 | HOOVER ET AL. | | |
| | A23 | 5,576,952 | 11/19/96 | STUTMAN ET AL. | | |
| | A24 | 5,579,067 | 11/26/96 | WAKABAYASHI | | |
| | A25 | 5,610,653 | 03/1997 | ABECASSIS | | |
| | A26 | 5,617,570 | 04/01/97 | RUSSELL ET AL. | | |
| | A27 | 5,625,841 | 04/29/97 | DAWKINS ET AL. | | |
| | A28 | 5,649,247 | 07/15/97 | ITOH ET AL. | | |
| | A29 | 5,664,170 | 09/02/97 | TAYLOR | | |
| | A30 | 5,669,029 | 09/16/97 | FYSON ET AL. | | |
| | A31 | 5,764,889 | 06/09/98 | AULT ET AL. | | |
| | A32 | 5,764,906 | 06/09/98 | EDELSTEIN ET AL. | | |
| | A33 | 5,774,670 | 06/30/98 | MONTULLI | | |
| | A34 | 5,781,725 | 07/14/98 | SAITO | | |
| | A35 | 5,784,565 | 07/21/98 | LEWINE | | |
| | A36 | 5,802,518 | 09/01/98 | KARAEV ET AL. | | |
| | A37 | 5,809,161 | 09/1998 | AUTY | | |

| EXAMINER M. Delgado | DATE CONSIDERED 8/12/05 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

| FORM PTO-1449 | | | SERIAL NO. 09/872,736 | | CASE NO. 10406/49 |
|---|---|---|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | | | FILING DATE June 1, 2001 | | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | | | APPLICANT(S): J. Overton et al. | | |

### REFERENCE DESIGNATION    U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| ⟨YYY⟩ | A38 | 5,809,331 | 09/15/98 | STAATS ET AL. | | |
| | A39 | 5,809,495 | 09/15/98 | LOAIZA | | |
| | A40 | 5,813,006 | 09/22/98 | POLNEROW ET AL. | | |
| | A41 | 5,848,246 | 12/08/98 | GISH | | |
| | A42 | 5,864,482 | 01/1999 | HAZAMA | | |
| | A43 | 5,872,973 | 02/16/99 | MITCHELL ET AL. | | |
| | A44 | 5,875,302 | 02/23/99 | OBHAN | | |
| | A45 | 5,907,837 | 05/25/99 | FERREL ET AL. | | |
| | A46 | 5,915,240 | 06/22/99 | KARPF | | |
| | A47 | 5,920,702 | 07/06/99 | BLEIDT ET AL. | | |
| | A48 | 5,940,844 | 08/17/99 | CAHILL ET AL. | | |
| | A49 | 5,961,610 | 10/05/99 | KELLY ET AL. | | |
| | A50 | 5,966,705 | 10/12/99 | KONERU ET AL. | | |
| | A51 | 5,974,124 | 10/26/99 | SCHLUETER, JR. ET AL. | | |
| | A52 | 5,978,773 | 11/02/99 | HUDETZ ET AL. | | |
| | A53 | 5,987,519 | 11/16/99 | PEIFER ET AL. | | |
| | A54 | 5,995,965 | 11/30/99 | EXPERTON | | |
| | A55 | 6,032,175 | 02/29/00 | FLETCHER ET AL. | | |
| | A56 | 6,047,332 | 04/04/00 | VISWANATHAN ET AL. | | |
| | A57 | 6,055,544 | 04/25/00 | DEROSE ET AL. | | |
| | A58 | 6,058,193 | 05/02/00 | CORDERY ET AL. | | |
| | A59 | 6,092,189 | 07/18/00 | FISHER ET AL. | | |
| | A60 | 6,188,766 B1 | 02/13/01 | KOCHER | | |
| | A61 | 6,201,931 B1 | 03/13/01 | CIPOLLA ET AL. | | |
| | A62 | 6,202,070 B1 | 03/13/01 | NGUYEN ET AL. | | |
| | A63 | 6,209,095 B1 | 03/27/01 | ANDERSON ET AL. | | |
| | A64 | 6,212,280 B1 | 04/03/01 | HOWARD, JR. ET AL. | | |

### FOREIGN PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS/ SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| ⟨mm⟩ | A65 | 0 568 161 A1 | 01/1992 | EPO | | | |
| | A66 | 0 889 422 A2 | 01/07/99 | EPO | | | |
| | A67 | WO 86/05610 | 09/1986 | PCT | | | |
| • | A68 | WO 98/00624 | 07/1998 | PCT | | | |
| | A69 | WO 98/15910 | 04/16/98 | PCT | | | |
| | A70 | WO 98/31138 | 07/16/98 | PCT | | | |
| | A71 | WO 00/03526 | 01/20/00 | PCT | | | |

| EXAMINER M. Delgado | DATE CONSIDERED 8/12/05 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

| FORM PTO-1449 | | | SERIAL NO. 09/872,736 | CASE NO. 10406/49 |
|---|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | | FILING DATE June 1, 2001 | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | | | APPLICANT(S): J. Overton et al. | |

| EXAMINER INITIAL | | OTHER ART (Including Author, Title, Date, Pertinent Pages, etc.) |
|---|---|---|
| (initialed) | A72 | Bourke D G et al: "Programmable Module and Circuit for Machine-Readable Unique Serial Number" IBM Technical Disclosure Bulletin, vol. 27, no. 4A, 1 September 1984 pages 1942-1944. |
| | A73 | Kleinholz L et al: "Supporting Cooperative Medicine: The Bermed Project" IEEE Multimedia, vol. 1, no. 4, 21 December 1994 pages 44-53. |
| | A74 | "Method for Network Naming and Routing" IBM Technical Disclosure Bulletin, vol. 37, no. 9, 1 September 1994 page 255. |
| | A75 | "Minimizing Locking To Access Global Shared Data", IBM Technical Disclosure Bulletin, pp 619-622, February 1995. |
| | A76 | "A robust software barcode reader using the Hough transform", Muniz, R., Junco, L.; Otero, A., Abstract, 1999 Int'l Conf. On Information Intelligence and Systems (10-31 to 11-3/1999). |
| | A77 | "In-Fab identification of silicon wafers with clean, laser marked barcodes", Fresonke, D., Abstract, 1994 IEEE/Semi Advanced Semiconductor Manufacturing Conference and Workshop (11-14 to 11-16/1994). |
| | A78 | "Applications of barcode technology in automated storage and retrieval systems", Sriram, T.; Vishwanatha Rao, K.; Biswas, S.; Ahmed, Abstract, Proceedings of the 1996 IEEE IECON 22nd Int'l Conf. On Industrial Electrodes (8-5 to 8-10/1996). |
| • | A79 | Copy of claims for U.S. Application Serial No. 09/111,896 filed July 8, 1998 entitled System And Method For Establishing And Retrieving Data Based On Global Indices. |
| • | A80 | Copy of claims for U.S. Application Serial No. 09/503,441 filed February 14, 2000 entitled Automated Image Archiving System. |
| • | A81 | Copy of claims for U.S. Application Serial No. 09/367,461 filed August 13, 1999 entitled Automated Image Archiving System. |
| • | A82 | Copy of claims for U.S. Application Serial No. 09/661,222 filed September 13, 2000 entitled Network Distributed Tracking Wire Transfer Protocol. |

| EXAMINER M. Relgado | DATE CONSIDERED 8/12/05 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Rev. Feb.-97
F:\COMMON\KEG\OverX 10406\10406-49\10406-49 PTO 1449.1.doc

JA1299

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| ***Notice of References Cited*** | | 09/872,736 | OVERTON ET AL. |
| | | Examiner | Art Unit | Page 1 of 1 |
| | | Michael S. A. Delgado | 2144 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US-6,463,454 | 10-2002 | Lumelsky et al. | 718/105 |
| | B | US-6,466,980 | 10-2002 | Lumelsky et al. | 709/226 |
| | C | US-6,578,068 | 06-2003 | Bowman-Amuah, Michel K. | 709/203 |
| | D | US-6,711,408 | 03-2004 | Raith, Alex Krister | 455/440 |
| | E | US-6,438,652 | 08-2002 | Jordan et al. | 711/120 |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

JA1300

| Index of Claims | Application/Control No. 09/872,736 | Applicant(s)/Patent under Reexamination OVERTON ET AL. |
|---|---|---|
| | Examiner Michael S. A. Delgado | Art Unit 2144 |

| | | | | |
|---|---|---|---|---|
| √ | Rejected | — | (Through numeral) Cancelled | N Non-Elected | A Appeal |
| = | Allowed | + | Restricted | I Interference | O Objected |

| Claim | | Date | | Claim | | Date | | Claim | | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 8/12/05 | | Final | Original | | | Final | Original | |
| | 1 | | | | 51 | | | | 101 | |
| | 2 | | | | 52 | | | | 102 | |
| | 3 | | | | 53 | | | | 103 | |
| | 4 | | | | 54 | | | | 104 | |
| | 5 | | | | 55 | | | | 105 | |
| | 6 | | | | 56 | | | | 106 | |
| | 7 | | | | 57 | | | | 107 | |
| | 8 | | | | 58 | | | | 108 | |
| | 9 | | | | 59 | | | | 109 | |
| | 10 | | | | 60 | | | | 110 | |
| | 11 | | | | 61 | | | | 111 | |
| | 12 | | | | 62 | | | | 112 | |
| | 13 | | | | 63 | | | | 113 | |
| | 14 | | | | 64 | | | | 114 | |
| | 15 | | | | 65 | | | | 115 | |
| | 16 | | | | 66 | | | | 116 | |
| | 17 | | | | 67 | | | | 117 | |
| | 18 | | | | 68 | | | | 118 | |
| | 19 | | | | 69 | | | | 119 | |
| | 20 | | | | 70 | | | | 120 | |
| | 21 | | | | 71 | | | | 121 | |
| | 22 | | | | 72 | | | | 122 | |
| | 23 | | | | 73 | | | | 123 | |
| | 24 | | | | 74 | | | | 124 | |
| | 25 | | | | 75 | | | | 125 | |
| | 26 | | | | 76 | | | | 126 | |
| | 27 | | | | 77 | | | | 127 | |
| | 28 | | | | 78 | | | | 128 | |
| | 29 | | | | 79 | | | | 129 | |
| | 30 | | | | 80 | | | | 130 | |
| | 31 | | | | 81 | | | | 131 | |
| | 32 | | | | 82 | | | | 132 | |
| | 33 | | | | 83 | | | | 133 | |
| | 34 | | | | 84 | | | | 134 | |
| | 35 | | | | 85 | | | | 135 | |
| | 36 | | | | 86 | | | | 136 | |
| | 37 | | | | 87 | | | | 137 | |
| | 38 | | | | 88 | | | | 138 | |
| | 39 | | | | 89 | | | | 139 | |
| | 40 | | | | 90 | | | | 140 | |
| | 41 | | | | 91 | | | | 141 | |
| | 42 | | | | 92 | | | | 142 | |
| | 43 | | | | 93 | | | | 143 | |
| | 44 | | | | 94 | | | | 144 | |
| | 45 | | | | 95 | | | | 145 | |
| | 46 | | | | 96 | | | | 146 | |
| | 47 | | | | 97 | | | | 147 | |
| | 48 | | | | 98 | | | | 148 | |
| | 49 | | | | 99 | | | | 149 | |
| | 50 | | | | 100 | | | | 150 | |

JA1301

| Search Notes | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 09/872,736 | OVERTON ET AL. |
| | Examiner | Art Unit | |
| | Michael S. A. Delgado | 2144 | |

| SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| 718 | 105 | 8/12/2005 | MD |
| 709 | 203 | | |
| 709 | 206 | | |
| 709 | 217 | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| SEARCH NOTES (INCLUDING SEARCH STRATEGY) | | |
|---|---|---|
| | DATE | EXMR |
| USPAT, USPGPUB, DERWENT, JPO, EPO | 8/12/2005 | MD |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |
| | | | |
| | | | |
| | | | |

JA1302



Express Mail" mailing label number <u>EV 655 031 233 US</u>

Date of Deposit: <u>February 22, 2006</u>

<u>Our Case No. 11958/49</u>

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of: )
)
JOHN OVERTON et al. )
) Examiner: Delgado, Michael A.
Serial No. 09/872,736 )
) Group Art Unit: 2144
Filing Date: June 6, 2001 )
)
For   METHOD AND APPARATUS FOR )
      MANAGING LOCATION )
      INFORMATION IN A )
)

## AMENDMENT

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450


Dear Sir:

In response to the non-final Office Action dated August 22, 2005, please consider the following:

**JA1303**

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:

1.      (Withdrawn) A system for managing location information and providing location information to location queries, the system comprising:

a transfer protocol comprising an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity;

a location server containing location information corresponding to at least one entity, the location information formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and

programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising all locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity.

2.      (Withdrawn) The system of claim 1, wherein the entity comprises a physical object and wherein the at least one location comprises a geographic location.

3.      (Withdrawn) The system of claim 2, wherein the geographic location comprises at least one of a latitude, a longitude and an altitude.

4.      (Withdrawn) The system of claim 1, wherein the at least one location comprises a plurality of geographic locations, each of the geographic locations representing a position of an object at a different time.

JA1304

5.      (Withdrawn)  The system of claim 1, wherein the location server comprises a plurality of location servers, each of the plurality of location servers comprising at least a portion of a total amount of location information residing on the plurality of location servers, and wherein the location information is formatted according to the transfer protocol; and

wherein the programming logic is stored on each of the plurality of location servers.

6.      (Withdrawn)  The system of claim 5, wherein the programming logic stored at each of the location servers further comprises logic responsive to the location query to return one of a location message and a redirect message, wherein the location server returns the location message if the queried location server contains location information for the desired entity, and wherein the location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising a list of at least one other location server known to have location information relevant to the location query.

7.      (Withdrawn)  The system of claim 6, wherein the list of at least one other location server comprises a list of all location servers in the plurality of location servers and a corresponding list of each of the entities having location information on the respective location servers.

8.      (Withdrawn)  The system of claim 5, wherein each of the location servers stores at least a portion of the total amount of location information on a persistent storage device.

9.      (Withdrawn)  The system of claim 8, wherein the persistent storage device comprises one of a hard disk drive, tape drive, optical storage device and removable storage media.

10.     (Withdrawn)  The system of claim 1, wherein the location information in the location server is maintained in an indexed location store.

JA1305

11.    (Withdrawn)  The system of claim 10, wherein the location store comprises a string store indexed by a hash table.

12.    (Withdrawn)  The system of claim 10, wherein the location query identifying the desired entity comprises a unique identifier for the desired entity, and wherein the programming logic stored on the location server further comprises programming logic for applying an index function to the unique identifier to retrieve at least a portion of the locations associated with the unique identifier in the location store.

13.    (Withdrawn)  The method of claim 12, wherein the programming logic further comprises logic for applying the index function to retrieve all of the locations associated with the unique identifier in the location store.

14.    (Withdrawn)  The system of claim 12, wherein the location store comprises a string store and the index function comprises a hash function.

15.    (Withdrawn)  The system of claim 6, wherein the plurality of location servers are arranged in a network topology having a plurality of nodes organized in a tree-structure, wherein each node comprises at least one location server and wherein each node is connected to at least one other node in the tree structure.

16.    (Withdrawn)  The system of claim 12, wherein the data location query is received at a data location server in a first node and wherein the redirect message comprises a list of at least one other location server in a node other than the first node that is known to have data location information relevant to the location query.

17.    (Withdrawn)  A system for managing location information and providing data location information to location queries, the system comprising:
        a transfer protocol comprising an identifier and at least one location association, wherein the identifier uniquely specifies an entity and wherein each location specifies a location pertaining to the entity;
        a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to the transfer protocol, and comprising at least one application server address, wherein

the plurality of location servers are arranged in a server cluster topology such that each location server contains a unique portion of the location information; and

programming logic stored on each of the location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises a list of all of the plurality of location servers containing location information related to the desired identifier.

18.    (Withdrawn)  The system of claim 17, wherein the location information comprises geographic location information.

19.    (Withdrawn)  The system of claim 17, wherein the location information comprises network address information.

20.    (Withdrawn)  The system of claim 19, wherein the network address information comprises a network address of a data repository containing data pertaining to the desired identifier.

21.    (Withdrawn)  A method of handling location queries in a network, the network comprising a plurality of location servers containing location information correlating each of a plurality of identifiers with at least one location, the method comprising:

receiving a location query from a client at one of the plurality of location servers, the location query requesting an identifier's location;

sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and

sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the

redirect message comprising a list of location servers containing location information relevant to the entity identified in the query.

22.    (Withdrawn)  The method of claim 21, further comprising applying information in the location query from the client to an indexing function to determine if the queried location server contains location information relevant to the entity identified in the query.

23.    (Withdrawn)  The method of claim 22, wherein each of the plurality of location servers comprises an indexed table of identifiers and associated locations, and wherein applying information in the location query comprises applying an identifier in the location query to a hash function.

24.    (Original)  A method of scaling at least one of location server capacity and transaction rate capability in a system for storing and retrieving location information, the method comprising:

providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information relevant to the identifier;

providing a first location server storing location information formatted according to the transfer protocol;

receiving an identifier and a location relevant to the identifier at the first location server;

storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and

transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit.

25.    (Original)  The method of claim 24, wherein receiving an identifier and a location comprises receiving the identifier and the location at the first location server

JA1308

from an application server, wherein the location comprises an address for the application server.

26. (Original) The method of claim 24, wherein receiving an identifier and a location comprises receiving the identifier and the location at the first location server from a physical object, wherein the identifier identifies the physical object and wherein the location comprises a geographic location for the physical object.

27. (Original) The method of claim 26, wherein the physical object comprises a vehicle.

28. (Original) The method of claim 26, wherein the physical object comprises a portable telecommunications device.

29. (Original) The method of claim 24, wherein transferring a portion of the identifier and location associations comprises:

identifying a portion of identifier and location associations on the first location server to be transferred to the second location server and identifying a data set state of the identified portion at an initial time;

copying a data set for the identified portion corresponding to the identified data set state from the first location server to the second location server and maintaining a second data set containing changes to the identified portion since the initial time;

identifying a data set state for the second data set;

ceasing operation of the first location server with respect to the identified portion and copying the second data set to the second location server, wherein the second data set corresponds to the identified data set state for the second data set; and

initiating operation of the second location server for the identified portion of identifiers and location associations.

30. (Original) The method of claim 24, wherein the performance criterion comprises an amount of available persistent storage space in the first location server.

JA1309

31.    (Original)  The method of claim 24, wherein the performance criterion comprises a transaction rate limit.

32.    (Original)  The method of claim 24, wherein the transaction rate limit comprises a processor speed limit.

33.    (Original)  The method of claim 24, wherein the transaction rate limit comprises a network connection bandwidth limit.

34.    (Original)  The method of claim 24, further comprising transmitting a location server map from the first location server, the location server map comprising information identifying the second location server and a list of identifiers associated with the second location server.

35.    (Original)  The method of claim 34, wherein the first and second location servers are part of a location server cluster comprising a plurality of location servers, and wherein transmitting the location server map comprises transmitting the location server map to each of the plurality of data location servers asynchronously.

36.    (Original)  The method of claim 34, wherein transmitting a location server map comprises transmitting the location server map to a client in response to query received at the first location server from the client regarding an identifier that is not resident on the first location server.

37.    (Original)  The method of claim 24, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit.

38.    (Original)  A database comprising:
       a computer readable medium;

JA1310

a plurality of index designations, each index designation representative of one of a plurality of identifiers, wherein each identifier uniquely identifies an entity;

a plurality of locations, wherein each of the locations is associated with at least one of the plurality of index designations and represents a location of information relevant to an identifier represented by an index designation;

a location store stored in the computer readable medium, the location store comprising a table containing the plurality of index designations and associated locations; and

an indexing function stored in the computer readable medium, the indexing function operative to map each of the plurality of identifiers to a respective one of the plurality of index designations.

39. (Original) The database of claim 38, wherein the indexing function comprises one of a hash function, a b-tree function, and a t-tree function.

40. (Original) The database of claim 39, further comprising a front end in communication with the location store and indexing function, the front end operative to transport identifiers and associated locations via a transport protocol.

41. (Original) The database of claim 40, further comprising a buffer in communication with the front end, the buffer configured to maintain a log of each of a plurality of location store update transactions.

42. (Original) The database of claim 38, wherein the computer readable medium comprises at least one of RAM and a persistent storage device.

43. (Original) The database of claim 38, wherein the location store comprises a string store and wherein the plurality of locations comprise network address strings.

44. (Original) The database of claim 43, wherein at least one of the network address strings comprises an address of a database in a network.

45. (Original) A system for managing location information and providing location information to location queries, the system comprising:

JA1311

a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity, the location server containing location information corresponding to at least one entity and formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and

programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising all locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity.

JA1312

**REMARKS**

## I.    Office Action Summary

Claims 24, 38 and 45 are the pending independent claims.  In the Office Action dated August 22, 2005, the Examiner rejected claims 24-26, 29-38, and 40-45, under 35 U.S.C. §102(e) as being anticipated by Lumelsky et al (U.S. Patent No. 6,466,980). The Examiner also rejected claims 27-28 and 39 under 35 U.S.C. §103(a) as obvious over the combination of Lumelsky et al. in view of Bowman-Amuah (U.S. Patent No. 6,578,068).

## II.    Rejections Under 35 U.S.C. § 102(e)

Applicants respectfully disagree with the Examiner's rejections of claims 24-26, 29-38 and 40-45 over U.S. Patent No. 6,466,980 (Lumelsky).  As discussed in greater detail below, Lumelsky discloses using location information in service of optimizing **distribution of multimedia objects**[1], whereas Applicants' specification **manages location information** separately from the data to which the location information pertains[2].

CLAIM 24

Claim 24 relates to a method of scaling at least one of location server capacity and transaction rate capability in a system for storing and retrieving location information. Claim 24 includes, *inter alia,*  the step of:

---

[1] See: "A system and method for dynamically shaping available capacity of **multimedia objects** based on aggregated demand across **distributed media/world-wide-web servers**" (Abstract; **bold** added).  See also: "Thus, unlike the prior art system **10**, the various **collections of objects (130, 131, 132)** found at each independent server **(1201, 1211, 1221)** aggregate now into a **distributed collection (130, 131, 132) of objects** and **object replicas** which model a **multimedia object** as a **scalable** and relocatable resource **in accordance with demand and capacity conditions**" (col. 8, ll. 40-46; **bold** added).

[2] See specification: "According to one aspect of the invention, a system for managing **location information** and providing **location information** to data locations queries comprises a transfer protocol configured to manipulate an identifier, and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each data location specifies a location of data in a network pertaining to the entity" (Applicant's p. 3, ll. 4-9; **bold** added).  **See also**: "A network distributed tracking protocol (NDTP) is a transfer protocol having the capability to manipulate **location information** used to efficiently track the **location of information** associated with an individual entity in the distributed database system" (Applicant's p. 6, ll. 14-17; **bold** added).

JA1313

transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first server reaches a predetermined performance limit (p. 46, ll. 25-27).

Thus, claim 24 relates to improvements for transaction rate scalability for **location information** separate and apart from any data to which the location information points.[3]  As recited in claim 24, transferring a portion of the identifiers and associated locations to a second **data location server** involves isolating specifically the location information from the end-point data itself and making changes to how the location information is managed, not the end-point data that is stored at a location identified by the location information.  Examples of partitioning portions of the *location information* across servers are found in Applicants' specification.  Applicants' specification includes techniques and network topologies for optimizing transaction rate including *[1]* clustering and *[2]* distributed topology replication of *associated identifier and location information*.

> For example, FIG. 5 illustrates a flat NDTP server topology using *[1]* **clustering**, or a *[2]* **distributed topology using replication**, where each of the NDTP servers 12 in the cluster may contain a **different portion of** a pool of **associated identifier and location information** (p. 11, ll. 30 – p. 12, l. 1; **bold** and *[enumeration]* added).

Clustering and distributed topologies using replication separate specifically location information onto different machines, thereby allowing portions of the location information to be processed by more server and network resources.

In contrast to Claim 24, Lumelsky only focuses on replication of data objects rather than on management of specifically location information separated from the data objects themselves.  Lumelsky teaches the use of location information to improve transmission performance and scalability of multimedia objects.[4]  Instead of teaching

---

[3] Regarding **(a) transaction rate**, see: "An advantage of distributing an NDTP server data set across independent machines is that **both capacity and transaction rate scale can be increased**.  In one embodiment, each additional machine in an NDTP server cluster 50 **linearly increases capacity**, by adding main and secondary storage, and **transaction rate**, by adding processing power and network bandwidth (assuming a properly scalable network infrastructure is employed)" (p. 25, ll. 24-30; **bold** added).  Regarding **(b) specifically location information**, see: "For example, FIG. 5 illustrates a flat NDTP server topology using clustering, or a distributed topology using replication, where each of the NDTP servers 12 in the cluster may contain a different portion of a **pool of associated identifier and location information**" (p. 11, ll. 30 – p. 12, l. 1; **bold** added).

[4] See note 1.

JA1314

the management of location data itself so that data location servers with data location information are reconfigured to handle queries for the location of data, Lumelsky discloses managing and replicating the end-point data itself (in Lumelsky, the data objects disclosed are multimedia files).[5] The method of claim 24 relates to the management of specifically location information and capacity and transaction rate scaling for accessing the location information needed to access data, while Lumelsky is concerned with the replicating and managing the data itself rather than the location information relating to the whereabouts of the data.

The Examiner asserts that Lumelsky teaches or suggests transferring portions of identifier-location associations to a second server given a performance limit. On page 3, the Examiner asserts that Lumelsky teaches:

> transferring a **portion of the identifiers and associated locations** to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit (Examiner remarks, p. 3; **bold** added).

In support of this assertion, the Examiner cites Lumelsky:

> More particularly, the present invention introduces the notion of a global server which **provides a spare, shared, and highly available capacity that can be used to assist a multimedia server** by temporarily increasing the overall system capacity associated **with some particular multimedia object** to match its predicted demand. The present invention additionally introduces the notion of a **transient replica** which replica acts as a **migrating object** of limited lifetime that responds to demand and capacity conditions. To do so, the controller node monitors demand and capacity and uses, creates, and deletes **transient replicas** from global servers (col. 6, ll. 33-43; **bold** added).

Lumelsky's "spare, shared, and highly available capacity" refers to resources assisting multimedia objects not location information. Lumelsky's "transient replica" refers to a multimedia object not location information. Therefore, Lumelsky teaches transferring data objects to additional servers but does not teach transferring portions of location information to additional servers. Lumelsky fails to teach or suggest the separate management of location information pertaining to the data, therefore Lumelsky does not teach transferring a portion of the identifiers and associated locations to a

---

[5] See: "Large databases store large amounts of data, but the NDTP server is only concerned with the location of that data, **rather than the end-point referent data itself**" (p. 8, ll. 23-26; **bold** added). "End-point referent data itself" are multimedia objects in Lumelsky.

JA1315

second data location server when a performance criterion of the first location server reaches a predetermined performance limit as claimed in claim 24.

Thus, Lumelsky does not teach either (a) a method of scaling at least one of location server capacity and transaction rate capability in a system for storing and retrieving location information, or (b) transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. For at least these reasons, Applicants submit that independent Claim 24 is patentable over Lumelsky. Claims 25-37 are dependent claims, therefore their allowability directly follows from the allowability of independent claim 24.


CLAIM 38.

Claim 38 relates to a database using an indexing function to map identifiers and index designations. Claim 38 includes, *inter alia,* the step of:

> an indexing function stored in the computer readable medium, the indexing function operative to map each of the plurality of identifiers to a respective one of the plurality of index designations

An example of an indexing function may be found in Applicants' specification at, for example p. 27, ll. 15-22, where a well-known function for mapping identifiers to index designations is described:

> The presently preferred embodiment for accomplishing this [NDTP database insertion and scaling] is to define **a well-known function of the identifier** and **use this function** to select from a set of NDTP servers. NDTP clients will preferably apply this well-known function to the identifier for each NDTP request, and send the NDTP request to the indicated NDTP server. This technique will effectively partition the set of all identifier/location associations across the NDTP servers. **Each NDTP server will only maintain the portion of the total association set which corresponds to its particular identifiers** (**bold** added).

An example of a "well-known function" is a hash function.[6] Using a specific **indexing function** Applicants deliberately permit distributing portions of the database's location information onto separate servers. In contrast, Lumelsky teaches three **components** (but not a <u>function)</u> to interact with placement recommendations and inquiries:

---

[6] Applicants' specification (p. 28, ll. 6-27) provides an example algorithm and specific usage conditions.

JA1316

Particularly, the placement module (610) **interfaces with** both a replica directory service (665) (for maintaining the replica directory 666 as described herein with respect to FIG. 6(*a*)) and a server directory service (655) (for maintaining the server directory 656 as described herein with respect to FIG. 6(*b*)) **to generate the tentative placements** (620). That is, the placement module (610), replica directory service (665), and replica directory (666) **operate in conjunction** to locate all replicas associated with the given object identifier of the received request. Further, the placement module (610), server directory service (655) and server directory (656) **operate in conjunction** to determine the willingness of any such location (holding a replica) to consider new placement inquiries (620) (Col. 9, ll. 31-44; **bold** added).

Lumelsky teaches that the (a) placement module, (b) replica directory service, and (c) server directory service interact to generate placement recommendations and to consider placement inquiries, but Lumelsky does not teach an indexing function. Therefore, not teaching an indexing function, Lumelsky does not teach an indexing function operative to map each of the plurality of identifiers to a respective one of the plurality of index designations.

Illustrated in FIG. 6(a) and FIG. 6(b), Lumelsky further specifies the replica and server directories.[7] The replica directory records various statistics for identifiers, such as predicted demand, geography, demand volume, and time-to-live (col. 10, ll. 23-28). The server directory records information such as IP address or hostname and capacity rating (col. 10, ll. 42-46). These are values. However, Lumelsky does not teach an indexing function to map identifiers to index designations. Thus, Lumelsky does not teach an indexing function operative to map each of the plurality of identifiers to a respective one of the plurality of index designations.

Therefore, while Lumelsky teaches a placement module interacting with replica and server directory services, Lumelsky does not teach a database comprising the use of an indexing function stored in the computer readable medium, the indexing function operative to map each of the plurality of identifiers to a respective one of the plurality of index designations. For at least these reasons independent Claim 38 is patentable over Lumelsky. Claims 39-44 are dependent claims, therefore their allowability directly follows from the allowability of independent claim 38.

---

[7] See discussion of replica directory in Lumelsky, Col. 10, ll. 21-35, and server directory in Col. 10, ll. 36-62.

JA1317

CLAIM 45

Claim 45 relates to a system for managing location information and providing location information to location queries. Claim 45 includes, *inter alia,* the step of:

> a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier

Different than Lumelsky, claim 45 recites a transfer protocol for **specifically managing location information**. Applicants' specification provides detail and figures describing an example of suitable protocol instructions for database management of specifically location information.[8]

> A network distributed tracking protocol (NDTP) is a transfer protocol having the capability to manipulate **location information** used to efficiently track the location of information associated with an individual entity in the distributed database system (p. 6, ll. 14-17; **bold** added).[9]

The NDTP transfer protocol runs on standard lower-level network transport protocols, such as TCP and UDP:

> NDTP defines a transaction oriented protocol, which can be carried over any of a variety of lower level network transport protocols. TCP and UPD are currently supported, however any of a number of other protocols are also supportable (p. 21, ll. 6-9; **bold** added).

NDTP is carried over TCP and UDP transport protocols, and NDTP is a transfer protocol designed for managing location information. In contrast, Lumelsky teaches use of transfer and transport protocols for transmitting multimedia data rather than for managing location information:

---

[8] See Applicants' specification, FIGS. 8-17B (p.12, l. 7 – p. 20, l. 20), which provides examples of instructions for database interaction and management of location information. Example instructions for location information include: (a) querying the database for identifier associations (NDTP_GET, NDTP_GET_RSP, NDTP_GET_TRANSACTION), (b) adding location associations to an identifier (NDTP_PUT, NDTP_PUT_RSP, NDTP_PUT_TRANSACTION), (c) deleting entries from the database (NDTP_DEL, NDTP_DEL_RSP, NDTP_DEL_TRANSACTION), (d) updating records in the database (NDTP_UPD, NDTP_UPD_RSP), and redirecting queries (NDTP_RDR_RSP).
[9] See also applicant specification: "The Network Distributed Tracking Protocol (NDTP) efficiently tracks the **location of data** associated with an individual entity in a distributed database" (p. 12, ll. 8-9, **bold** added).

JA1318

It should be noted that standards for controlling multimedia streaming data over the World Wide Web such as H. 323 and Real Time Streaming Protocol (RTSP) are already in place and implemented to provide the streaming capabilities they are intended for. Whereas H.323 is **designed for videoconferencing** across small groups, RTSP is designed to efficiently **broadcast audio-visual data** to large groups. Each standard [H.323 and RTSP] describes a client-server application-level protocol for **controlling the delivery of data** with real-time properties. For example, the RTSP establishes and controls either a single or several time-synchronized **streams of continuous media,** such as **audio and video** and **uses transport protocols** such as **UDP, multicast UDP, TCP,** and **Real Time Protocol (RTP)** to **deliver the continuous streams** (Lumelsky, Col. 9, II. 14-21; **bold** added).

Lumelsky teaches the use of transfer protocols designed for (a) videoconferencing and (b) broadcasting audio-visual data, (c) controlling delivery of data, and (d) lower-level transport protocols UDP, multicast UDP, TCP, and RTP to deliver continuous streams. However, Lumelsky does not teach use of a transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier.

Lumelsky additionally teaches use of a controller device for managing placement of multimedia objects:

FIG. 5 is a detailed block diagram of the intermediary *controller device* (**520**) implemented for *managing the placement of multimedia objects themselves* onto servers. As shown in FIG. 5, a request processing module (**600**) is provided for receiving requests (**601, 602, 603, 604**) from clients, the request including a unique object identifier, and feeding these requests to a *placement module* (**610**). The placement module (**610**) applies a *placement policy* (**615**) to each request and generates a set of tentative placement queries (**620**) for the request. Particularly, the placement module (**610**) *interfaces with both a replica directory service* (**665**) (for maintaining the replica directory **666** as described herein with respect to FIG. 6(*a*)) and a *server directory service* (**655**) (for maintaining the server directory **656** as described herein with respect to FIG. 6(*b*)) to generate the tentative placements (**620**) (Col. 9, II. 22-37; *bold italic* added).

Lumelsky teaches use of a controller device for managing the placement of multimedia objects, using a placement module within a controller device, applying a placement policy, and interfacing the placement module with replica and server directory services, to generate tentative placements. However, Lumelsky does not teach the use of a transfer protocol comprising instructions for manipulating an identifier. Therefore, Lumelsky does not teach a location server operating in accordance with a transfer

JA1319

protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier.

Finally, Lumelsky teaches the use of replica and server directories to advise placement policy, illustrated in FIG. 6(a) and FIG. 6(b).[10] The *replica directory* records various statistics for identifiers, such as predicted demand, geography, demand volume, and time-to-live (col. 10, ll. 23-28). The *server directory* records information such as IP address or hostname and capacity rating (col. 10, ll. 42-46). However, Lumelsky does not teach the use of a *transfer protocol* comprising instructions for manipulating an identifier and at least one location associated with the identifier.

Lumelsky teaches the use of transport protocols for transmitting multimedia data, including videoconferencing, audio-visual data, and continuously streaming data. Lumelsky also teaches using a controller device and directory services for replicas and servers relating to placement policy of multimedia objects. However, Lumelsky does not teach the use of a transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier. For at least these reasons Applicants submit that claim 45 is patentable over Lumelsky.

## IV. Rejections Under 35 U.S.C. § 103(a)

Applicants respectfully disagree with the Examiner's rejections under 35 U.S.C. § 103. Applicants submit that dependent claims 27-28 and 39 are allowable for at least the same reasons as provided above for their respective independent claims.

---

[10] See discussion of replica directory in Lumelsky, Col. 10, ll. 21-35, and server directory in Col. 10, ll. 36-62.

JA1320

## V.   Conclusion

In light of the above, Applicants submit that claims 24-45 are in condition for allowance. If any issues arise or questions remain, the Examiner is invited to contact the undersigned at the number listed below in order to expedite disposition of this case.

Respectfully submitted,

_____

Kent E. Genin
Registration No. 37,834
Attorney for Applicants

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, ILLINOIS 60610
(312) 321-4200

JA1321



"Express Mail" mailing label number <u>EV 655 031 233 US</u>

Date of Deposit: <u>February 22, 2006</u>

Case No. <u>11958/49</u>

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

    J. Overton et al.

Serial No:    09/872,736              Examiner:  M. Delgado

Filed:       June 6, 2001             Group Art Unit:  2144

For:  METHOD AND APPARATUS
      FOR MANAGING LOCATION
      INFORMATION IN A

## PETITION AND FEE FOR EXTENSION OF TIME (37 CFR § 1.136(a))

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

    This is a petition for an extension of the time to respond to <u>the Offic Action</u> dated <u>August 22, 2005</u> for a period of <u>three</u> month(s).

☒    Applicant:

    ☒    claims small entity status.  See 37 C.F.R. §1.27.

    ☐    is other than small entity

| | **Extension Months** | **Other Than Small Entity** | **Small Entity** |
|---|---|---|---|
| ☐ | One Month | $120.00 | $60.00 |
| ☐ | Two Months | $450.00 | $225.00 |
| ☒ | Three Months | $1,020.00 | $510.00 |
| ☐ | Four Months | $1,590.00 | $795.00 |
| ☐ | Five Months | $2,160.00 | $1,080.00 |

02/27/2006 SHASSEN1 00000009 09872736
01 FC:2253          510.00 OP

JA1322

**Fee Payment**

☒     Attached is a check for $<u>510</u> for the Petition fee.

☐     Attached is a credit card authorization form for $_____ for the Petition fee.

☐     Charge Petition fee to Deposit Account No. 23-1925. A duplicate copy of this Petition is attached.

☒     Charge any additional fee required or credit for any excess fee paid to Deposit Account No. 23-1925. A duplicate copy of this Petition is attached.

Respectfully submitted,

Dated: *February 22, 2006*

Kent E. Genin
Registration No. 37,834
Attorney for Applicant

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610
(312)321-4200

JA1323

*82-23-06*

*1GN 21444*

BRINKS
HOFER
GILSON
&LIONE

OIPE
IAP82
FEB 22 2006
PATENT & TRADEMARK OFFICE

---

**U.S.P.S. EXPRESS MAIL "POST OFFICE TO ADDRESSEE" SERVICE
DEPOSIT INFORMATION**

Express Mail Label No.:   EV 655 031 233 US

Date of Deposit:   February 22, 2006

---

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Appln. of: | J. Overton et al. | | |
| Appln. No.: | 09/872,736 | Examiner: | M. Delgado |
| Filed: | June 1, 2001 | Art Unit: | 2144 |
| For: | Method And Apparatus For Managing Location Information In A Network | | |

Attorney Docket No:   11958/49

Mail Stop Amendment
Commissioner for Patents
P. O. Box 1450
Alexandria, VA  22313-1450

**TRANSMITTAL**

Sir:

**Attached is/are:**

☒ Check for $510.00 (three month extension of time); Transmittal Letter (in duplicate); Petition and Fee for Extension of Time (in duplicate); Amendment

☒ Return Receipt Postcard

**Fee calculation:**

☐ No additional fee is required.

☒ Small Entity.

☒ An extension fee in an amount of $510.00 for a three-month extension of time under 37 C.F.R. § 1.136(a).

☐ A petition or processing fee in an amount of $_____ under 37 C.F.R. § 1.17(_____).

☐ An additional filing fee has been calculated as shown below:

| | Claims Remaining After Amendment | | Highest No. Previously Paid For | Present Extra | Small Entity | | or | Not a Small Entity | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Rate | Add'l Fee | | Rate | Add'l Fee |
| Total | | Minus | | | x $25= | | | x $50= | |
| Indep. | | Minus | | | X100= | | | x $200= | |
| First Presentation of Multiple Dep. Claim | | | | | +$180= | | | + $360= | |
| | | | | | Total | $ | | Total | $ |

**Fee payment:**

☒ A check in the amount of $510.00 is enclosed.

☐ Please charge Deposit Account No. 23-1925 in the amount of $    . A copy of this Transmittal is enclosed for this purpose.

☐ Payment by credit card in the amount of $_____ (Form PTO-2038 is attached).

☒ The Director is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925.

February 22, 2006
Date

Respectfully submitted,

Kent E. Genin (Reg. No. 37,834)

**JA1324**

**Fee Payment**

☒   Attached is a check for $\underline{510}$ for the Petition fee.

☐   Attached is a credit card authorization form for $\_\_\_\_\_ for the Petition fee.

☐   Charge Petition fee to Deposit Account No. 23-1925. A duplicate copy of this Petition is attached.

☒   Charge any additional fee required or credit for any excess fee paid to Deposit Account No. 23-1925. A duplicate copy of this Petition is attached.

Respectfully submitted,

Dated: _February 22, 2006_

Kent E. Genin
Registration No. 37,834
Attorney for Applicant

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610
(312)321-4200

- 2 -

JA1325

Best Available Copy

# PATENT APPLICATION FEE DETERMINATION RECORD
## Effective October 1, 2000

Application or Docket Number

09/872736

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 45 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 45 minus 20= | 25 |
| INDEPENDENT CLAIMS | 6 minus 3 = | 3 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | OR | RATE | FEE |
| BASIC FEE | 355.00 | OR | BASIC FEE | 710.00 |
| X$ 9= | | OR | X$18= | 450 |
| X40= | | OR | X80= | 240 |
| +135= | | OR | +270= | |
| TOTAL | | OR | TOTAL | 1400 |

* If the difference in column 1 is less than zero, enter "0" in column 2

## CLAIMS AS AMENDED - PART II

2/2/06

### AMENDMENT A

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | 45 | Minus | 45 | = |
| Independent | 6 | Minus | 6 | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT B

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | | Minus | | = |
| Independent | | Minus | | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT C

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | | Minus | | = |
| Independent | | Minus | | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
*U.S. GPO: 2000-460-703/30103

JA1326

# EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 22 | (("5,291,399") or ("5,475,817") or ("5,479,654") or ("5,740,428") or ("5,903,889") or ("5,918,241") or ("6,108,787") or ("6,131,095") or ("6,154,873") or ("6,377,986") or ("6,418,441")).PN. or (2002/0112048).CCLS. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2006/05/25 13:14 |
| L2 | 8 | (("5,724,575") or ("5,913,210") or ("5,950,173") or ("5,974,409")).PN. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2006/05/25 13:15 |
| L3 | 8 | (("5,724,575") or ("5,913,210") or ("5,950,173") or ("5,974,409")).PN. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2006/05/25 13:15 |
| S1 | 28293 | ("707").CLAS. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2005/08/13 09:38 |
| S2 | 11332 | S1 and @ad<"20000214" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/12 10:37 |
| S3 | 250 | S2 and (server with scal$4) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/09 12:23 |
| S4 | 0 | S3 and (Frontend with server) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/09 16:24 |
| S5 | 699 | (718/105).CCLS. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2005/08/09 12:23 |
| S6 | 3 | S3 and S5 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/09 12:23 |
| S7 | 699 | (718/105).CCLS. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2005/08/09 16:23 |
| S8 | 395 | S7 and @ad<"20000214" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 09:15 |

JA1327

# EAST Search History

| | | | | | | |
|---|---|---|---|---|---|---|
| S9 | 0 | S8 and ("quality of service") and (front$3 near2 server) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 12:09 |
| S10 | 0 | S8 and ("quality of service") | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/09 16:25 |
| S11 | 7 | S8 and (front$3 near2 server) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/09 16:26 |
| S12 | 1780 | ((mobile or handheld or cellular) with geograph$4).ab. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 09:17 |
| S13 | 811 | S12 and @ad<"20000214" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 09:18 |
| S14 | 54 | S13 and (hand near off) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 09:40 |
| S15 | 54 | S14 and ((hand near off)withy server) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 09:41 |
| S16 | 2 | S14 and ((hand near off) with server) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 11:52 |
| S17 | 5 | NDTP | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 12:00 |
| S18 | 1661 | (distribut$4 with database).ti. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 12:01 |
| S19 | 833 | S18 and @ad<"20000214" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 12:02 |
| S20 | 825 | S18 and @ad<"20000214" | USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 12:02 |

JA1328

# EAST Search History

| | | | | | | |
|---|---|---|---|---|---|---|
| S21 | 0 | S20 and ("quality of service") and (front$3 near2 server) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 12:10 |
| S22 | 1 | S20 and(front$3 near2 server) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 12:10 |
| S23 | 8 | S20 and messaging | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 12:14 |
| S24 | 2 | S20 and messaging and (application with server) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 12:16 |
| S25 | 19 | S20 and (application adj server) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/10 12:17 |
| S26 | 2 | ("6463454").PN. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2005/08/12 10:01 |
| S27 | 6053 | (mobile or cellular or handheld or vehicle) and (hash or b?tree or t?tree) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/12 10:37 |
| S28 | 1272 | S27 and @ad<"20000214" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/12 10:38 |
| S29 | 700 | (718/105).CCLS. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2005/08/12 10:38 |
| S30 | 5 | S28 and S29 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/12 10:38 |
| S31 | 2 | ("6240455").PN. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2005/08/12 17:04 |
| S32 | 45456 | (meyer or murray or ranous).in. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/13 09:42 |

JA1329

# EAST Search History

| S33 | 9699 | "HEWLETT PACKARD COMPANY".as. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/13 09:44 |
|-----|------|------|------|----|----|------|
| S34 | 49058 | HEWLETT.as. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/13 09:43 |
| S35 | 48964 | "HEWLETT PACKARD".as. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/13 09:44 |
| S36 | 9699 | S33 and S35 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/13 09:52 |
| S37 | 1 | S35 and NAR | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/13 09:49 |
| S38 | 532 | S35 and aggregat$4 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/13 09:52 |
| S39 | 38 | S35 and (aggregat$4 and encapsul$4) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/13 10:04 |
| S40 | 267 | S32 and S35 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/13 09:52 |
| S41 | 10 | S40 and aggregat$4 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/13 10:01 |
| S42 | 7177 | (709/223-224).CCLS. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2005/08/13 10:03 |
| S43 | 0 | ("11and@ad<20000427").PN. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2005/08/13 10:03 |
| S44 | 2707 | S42 and @ad<"20000427" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2005/08/13 10:03 |

JA1330

# EAST Search History

| S45 | 64 | S44 and (aggregat$4 and encapsul$4) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2006/05/25 13:12 |
|-----|----|-----|-----|-----|-----|-----|



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/872,736 | 06/01/2001 | John K. Overton | 10406/49 | 3927 |

7590          06/01/2006

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL  60610

| EXAMINER |
|---|
| DELGADO, MICHAEL A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2144 | |

DATE MAILED: 06/01/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/872,736 | OVERTON ET AL. |
| | Examiner | Art Unit |
| | Michael S. A. Delgado | 2144 |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>22 February 2006</u>.

2a)☒ This action is **FINAL**.        2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) <u>24-45</u> is/are pending in the application.

    4a) Of the above claim(s) <u>1-23</u> is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>24-45</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>14 September 2001</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All    b)☐ Some * c)☐ None of:

        1.☐ Certified copies of the priority documents have been received.

        2.☐ Certified copies of the priority documents have been received in Application No. _____.

        3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08)
    Paper No(s)/Mail Date 9/14/01, 5/7/02, 8/13/02

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application (PTO-152)
6)☐ Other: _____.

JA1333

## DETAILED ACTION

### *Response to Arguments*

Applicant's arguments filed 02/22/2006 have been fully considered but they are not

persuasive. In response to the argument that US Patent No. 6,466,980 by Lumelsky et al does not

teach about managing specifically the location of information relevant to the identifier.

Lumelsky teaches about creating replica of objects, which are associated with their respective

identifier (Fig 6a) (Col 8, lines 45-55) (Col 9, lines 30-45). These object are distributed across

different servers in which the combine function of a replica directory service and a server

directory service is used to determine where the objects were located amongst the different

servers (Fig 6b) (Col 10, lines 30-45). This feature is consistent with the limitation as claimed.

### *Claim Rejections - 35 USC § 102*

1.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (e) the invention was described in (1) an application for patent, published under section 122(b), by another filed
> in the United States before the invention by the applicant for patent or (2) a patent granted on an application for
> patent by another filed in the United States before the invention by the applicant for patent, except that an
> international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this
> subsection of an application filed in the United States only if the international application designated the United
> States and was published under Article 21(2) of such treaty in the English language.

2.      Claims 24-26, 29-38 and 40-45 rejected under 35 U.S.C. 102(e) as being anticipated  by

US Patent No. 6,466,980 by Lumelsky et al.

In claim 24, Lumelsky teaches about a method of scaling at least one of location server

capacity and transaction rate capability in a system for storing and retrieving location

information, the method comprising (Fig 4) (abstract) :

providing a transfer protocol configured to transport identifier and location

information, the location information specifying the location of information relevant to the

identifier (Col 9, lines 15-20) (Col 9, lines 20-30);

providing a first location server storing location information formatted

according to the transfer protocol (Col 9, lines 20-25);

receiving an identifier and a location relevant to the identifier at the first

location server (Col 9, lines 20-25);

storing the received location in a location store at the first data location server, the

location store comprising a plurality of identifiers, each identifier associated with at least one

location, wherein the received location is associated with the received identifier in the location

store (Fig 6) (Col 9, lines 35-45); and

transferring a portion of the identifiers and associated locations to a second data location

server when a performance criterion of the first location server reaches a predetermined

performance limit (Col 6, lines 33-43).


In claim 25, Lumelsky teaches about a method of claim 24, wherein receiving an

identifier and a location comprises receiving the identifier and the location at the first location

server from an application server, wherein the location comprises an address for the application

server (Col 9, lines 50-60).


In claim 26, Lumelsky teaches about a method of claim 24, wherein receiving an

identifier and a location comprises receiving the identifier and the location at the first location

server from a physical object, wherein the identifier identifies the physical object and wherein

the location comprises a geographic location for the physical object (Col 10, lines 10-30).

In claim 29, Lumelsky teaches about a method of claim 24, wherein transferring a portion

of the identifier and location associations comprises:

identifying a portion of identifier and location associations on the first location server to

be transferred to the second location server and identifying a data set state of the identified

portion at an initial time (Col 24, lines 10-20);

copying a data set for the identified portion corresponding to the identified

data set state from the first location server to the second location server and maintaining a second

data set containing changes to the identified portion since the initial time (Col 24, lines 10-20);

identifying a data set state for the second data set (Col 24, lines 19-23);

ceasing operation of the first location server with respect to the identified portion and

copying the second data set to the second location server, wherein the second data set

corresponds to the identified data set state for the second data set (Col 20, lines 20-30) (Col 24,

lines 10-20); and

initiating operation of the second location server for the identified portion of identifiers

and location associations (Col 24, lines 10-20).

In claim 30, Lumelsky teaches about a method of claim 24, wherein the performance

criterion comprises an amount of available persistent storage space in the first location server

(Col 19, lines 40-45).

In claim 31, Lumelsky teaches about a method of claim 24, wherein the performance criterion comprises a transaction rate limit (Col 1, lines 45-55) (Col 10, lines 47-56).

In claim 32, Lumelsky teaches about a method of claim 24, wherein the transaction rate limit comprises a processor speed limit (Col 1, lines 45-55) (Col 10, lines 47-56).

In claim 33, Lumelsky teaches about a method of claim 24, wherein the transaction rate limit comprises a network connection bandwidth limit (Col 1, lines 45-55) (Col 10, lines 47-56).

In claim 34, Lumelsky teaches about a method of claim 24, further comprising transmitting a location server map from the first location server, the location server map comprising information identifying the second location server and a list of identifiers associated with the second location server (Fig 6) (Col 10, lines 20-30).

In claim 35, Lumelsky teaches about a method of claim 34, wherein the first and second location servers are part of a location server cluster comprising a plurality of location servers, and wherein transmitting the location server map comprises transmitting the location server map to each of the plurality of data location servers asynchronously (Fig 4) (Col 10, lines 35-45).

In claim 36, Lumelsky teaches about a method of claim 34, wherein transmitting a location server map comprises transmitting the location server map to a client in response to

query received at the first location server from the client regarding an identifier that is not

resident on the first location server (Col 24, lines 1-10).


In claim 37, Lumelsky teaches about a method of claim 24, wherein transferring a portion

of the identifiers and associated locations to a second location server when a performance

criterion of the first data location server reaches a predetermined performance limit further

comprises monitoring the performance criterion and automatically transferring the portion of

identifiers and associated locations when the first location server reaches the predetermined limit

(Col 24, lines 10-20).


In claim 38, Lumelsky teaches about a database comprising;

a computer readable medium (Col 28, lines 20-25);

a plurality of index designations, each index designation representative of one of a

plurality of identifiers, wherein each identifier uniquely identifies an entity (Fig 6) (Col 9, lines

35-45);

a plurality of locations, wherein each of the locations is associated with at least one of the

plurality of index designations and represents a location of information relevant to an identifier

represented by an index designation (Col 9, lines 35-45);

a location store stored in the computer readable medium, the location store comprising a

table containing the plurality of index designations and associated locations (Fig 6); and

an indexing function stored in the computer readable medium, the indexing function operative to map each of the plurality of identifiers to a respective one of the plurality of index designations (Col 9, lines 35-45).

In claim 40, Lumelsky teaches about a database of claim 39, further comprising a front end in communication with the location store and indexing function, the front end operative to transport identifiers and associated locations via a transport protocol (Col 9, lines 15-25).

In claim 41, Lumelsky teaches about a database of claim 40, further comprising a buffer in communication with the front end, the buffer configured to maintain a log of each of a plurality of location store update transactions (Col 10, lines 20-30).

In claim 42, Lumelsky teaches about a database of claim 38, wherein the computer readable medium comprises at least one of RAM and a persistent storage device (Col 28, lines 20-30).

In claim 43, Lumelsky teaches about a database of claim 38, wherein the location store comprises a string store and wherein the plurality of locations comprise network address strings (Fig 6a).

In claim 44, Lumelsky teaches about a database of claim 43, wherein at least one of the network address strings comprises an address of a database in a network (Fig 6b).

In claim 45, Lumelsky teaches about a system for managing location information and

providing location information to location queries, the system comprising (Fig 4):

a location server operating in accordance with a transfer protocol, the

transfer protocol comprising instructions for manipulating an identifier and at least one

location associated with the identifier, wherein the identifier uniquely specifies an entity

and wherein each location specifies a location of data in a network pertaining to the

entity, the location server containing location information corresponding to at least one

entity and formatted according to the transfer protocol, and wherein the location of data

for the location comprises an application server in communication with the network (Col 9, lines

15-20) (Col 9, lines 20-30); and

programming logic stored on the location server responsive to a location

query identifying a desired entity to return a location message, the location message

comprising all locations associated with the desired entity, wherein the location server

returns the location message if the location server contains location information for the

desired entity (Col 10, lines 20-30).

### *Claim Rejections - 35 USC § 103*

3.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the
> manner in which the invention was made.

4.      Claim 27-28 and 29 are rejected under 35 U.S.C. 103(a) as being unpatentable over US
Patent No. 6,466,980 by Lumelsky et al in view of US Patent No. 6,578,068 by Bowman-
Amuah.

        In claim 27 Lumelsky teaches all the limitation but fails to explicitly teach that the
physical object comprises a vehicle. In Bowman-Amuah, the advantage of a delivery vehicle is
used in the association of end-user (object) to applications (Col 23, lines 50-65).

        The vehicle approach combined with the object method of Lumelsky (Col 9, lines 20-30)
would improve the portability of the software thus makes it reusable.

        It would have been obvious for some one of ordinary skill at the time of the invention to
use an object comprising of a vehicle in order to take advantage of the portable feature

        In claim 28, the use of a physical object comprises a portable telecommunications device
is well known in the art as disclosed by Bowman-Amuah (Col 29, lines 44-50)

        In claim 39, the use of an indexing function comprises a hash function is commonly used
in object search and is well known in the art as disclosed by Bowman-Amuah (Col 191, lines 50-
60).

### *Conclusion*

5.      **THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time
policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action. In the event a first reply is filed within TWO

MONTHS of the mailing date of this final action and the advisory action is not mailed until after

the end of the THREE-MONTH shortened statutory period, then the shortened statutory period

will expire on the date the advisory action is mailed, and any extension fee pursuant to 37

CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event,

however, will the statutory period for reply expire later than SIX MONTHS from the mailing

date of this final action.


6.      The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.

US 6,438,652 by Jordan et al , teaches about load balancing cooperating cache servers by

shifting forwarded request.

US 6,711,408  by Raith, teaches about position assisted handoff within a wireless

communications network.


Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Michael S. A. Delgado whose telephone number is (571) 272-

3926. The examiner can normally be reached on 7.30 AM - 5.30PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, William C. Vaughn Jr. can be reached on (571) 272-3922. The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

MD

WILLIAM C. VAUGHN, JR.
PRIMARY EXAMINER

OIPE
MAY 0 7 2002

| FORM PTO-1449 | | | SERIAL NO. 09/872,736 | | CASE NO. 10406/49 | |
|---|---|---|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | | FILING DATE June 1, 2001 | | GROUP ART UNIT 2152 | |
| (use several sheets if necessary) | | | APPLICANT(S): John K. Overton et al. | | | |

## REFERENCE DESIGNATION      U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | | DOCUMENT NUMBER | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|---|
| ᶬᶰ | | B1 | 5,724,575 | 03/03/98 | Hoover et al. | | |
| | | B2 | 5,913,210 | 06/15/99 | Call | | |
| | | B3 | 5,950,173 | 09/07/99 | Perkowski | | |
| | | B4 | 5,974,409 | 10/26/99 | Sanu et al. | | |

## FOREIGN PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS/ SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| ᶬᶰ | B5 | EP 0 919 912 A2 | 06/02/99 | EPO | | | |

| EXAMINER INITIAL | | OTHER ART (Including Author, Title, Date, Pertinent Pages, etc.) |
|---|---|---|
| ᶬᶰ | B6 | Copy of Communication relating to the results of the Partial International Search Report for PCT Application No. PCT/US01/18013 dated April 15, 2002 |

RECEIVED
MAY 1 0 2002
Technology Center 2100

| EXAMINER | DATE CONSIDERED |
|---|---|
| M. Orlando | 5/25/06 |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609;
Draw line through citation if not in conformance and not considered. Include copy of this form with next
communication to applicant.

Rev. Dec.-99
F:\COMMON\KEG\overX 10406\10406-49\10406-49 PTO 1449.2.doc

OIPE

AUG 1 3 2002

| FORM PTO-1449 | | SERIAL NO. 09/872,736 | CASE NO. 10406/49 |
|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | FILING DATE June 1, 2001 | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | | APPLICANT(S): J. Overton et al. | |

REFERENCE DESIGNATION          U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| MW | C1 | 5,724,575 | 03/03/98 | Hoover et al. | | |
| | C2 | 5,913,210 | 06/15/99 | Call | | |
| | C3 | 5,950,173 | 09/07/99 | Perkowski | | |
| | C4 | 5,974,409 | 10/26/99 | Sanu et al. | | |

FOREIGN PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS/ SUBCLASS | TRANSLATION YES    NO |
|---|---|---|---|---|---|---|
| MW | C5 | EP 0 919 912 A2 | 06/02/99 | EPO | | |

**RECEIVED**

AUG 1 6 2002

Technology Center 2100

| EXAMINER    M. Pelagadu | DATE CONSIDERED    5/25/06 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Rev. Dec.-99
\\Bhglmain3\common\keg\OverX 10406\10406-49\10406-49 PTO 1449.3.doc

JA1345

| FORM PTO-1449 | | SERIAL NO. 09/872,736 | CASE NO. 10406/49 |
|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | FILING DATE June 1, 2001 | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | | APPLICANT(S): J. Overton et al. | |

REFERENCE DESIGNATION    U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | A1 | 4,553,261 | 11/12/85 | FROESSL | | |
| | A2 | 4,636,858 | 01/1987 | HAGUE | | |
| | A3 | 4,728,978 | 03/01/88 | INOUE ET AL. | | |
| | A4 | 4,800,488 | 01/24/89 | AGRAWAL ET AL. | | |
| | A5 | 4,825,406 | 04/25/89 | BEAN ET AL. | | |
| | A6 | 4,914,571 | 04/03/90 | BARATZ ET AL. | | |
| | A7 | 5,008,700 | 04/1991 | OKAMOTO | | |
| | A8 | 5,124,814 | 06/23/92 | TAKAHASHI ET AL. | | |
| | A9 | 5,193,185 | 03/1883 | LANTER | | |
| | A10 | 5,208,623 | 05/04/93 | TAKAHASHI | | |
| | A11 | 5,319,401 | 06/07/94 | HICKS | | |
| | A12 | 5,347,600 | 09/1994 | BARNSLEY | | |
| | A13 | 5,384,643 | 01/24/95 | INGA ET AL. | | |
| | A14 | 5,414,841 | 05/09/95 | BINGHAM ET AL. | | |
| | A15 | 5,455,648 | 10/03/95 | KAZAMI | | |
| | A16 | 5,499,113 | 03/1996 | TSUBOI | | |
| | A17 | 5,522,077 | 05/28/96 | CUTHBERT ET AL. | | |
| | A18 | 5,537,547 | 07/16/96 | CHAN ET AL. | | |
| | A19 | 5,550,981 | 08/27/96 | BAUER ET AL. | | |
| | A20 | 5,551,027 | 08/27/96 | CHOY ET AL. | | |
| | A21 | 5,557,790 | 09/17/96 | BINGHAM ET AL. | | |
| | A22 | 5,560,005 | 09/24/96 | HOOVER ET AL. | | |
| | A23 | 5,576,952 | 11/19/96 | STUTMAN ET AL. | | |
| | A24 | 5,579,067 | 11/26/96 | WAKABAYASHI | | |
| | A25 | 5,610,653 | 03/1997 | ABECASSIS | | |
| | A26 | 5,617,570 | 04/01/97 | RUSSELL ET AL. | | |
| | A27 | 5,625,841 | 04/29/97 | DAWKINS ET AL. | | |
| | A28 | 5,649,247 | 07/15/97 | ITOH ET AL. | | |
| | A29 | 5,664,170 | 09/02/97 | TAYLOR | | |
| | A30 | 5,669,029 | 09/16/97 | FYSON ET AL. | | |
| | A31 | 5,764,889 | 06/09/98 | AULT ET AL. | | |
| | A32 | 5,764,906 | 06/09/98 | EDELSTEIN ET AL. | | |
| | A33 | 5,774,670 | 06/30/98 | MONTULLI | | |
| | A34 | 5,781,725 | 07/14/98 | SAITO | | |
| | A35 | 5,784,565 | 07/21/98 | LEWINE | | |
| | A36 | 5,802,518 | 09/01/98 | KARAEV ET AL. | | |
| | A37 | 5,809,161 | 09/1998 | AUTY | | |

| EXAMINER | DATE CONSIDERED 5/25/06 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609;
Draw line through citation if not in conformance and not considered. Include copy of this form with next
communication to applicant.

Rev. Dec.-99
F:\COMMON\KEG\OverX 10406\10406-49\10406-49 PTO 1449.1.doc

| FORM PTO-1449 | | SERIAL NO. 09/872,736 | | CASE NO. 10406/49 |
|---|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | FILING DATE June 1, 2001 | | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | | APPLICANT(S): J. Overton et al. | | |

### REFERENCE DESIGNATION    U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| ⋀⋀⋀ | A38 | 5,809,331 | 09/15/98 | STAATS ET AL. | | |
| | A39 | 5,809,495 | 09/15/98 | LOAIZA | | |
| | A40 | 5,813,006 | 09/22/98 | POLNEROW ET AL. | | |
| | A41 | 5,848,246 | 12/08/98 | GISH | | |
| | A42 | 5,864,482 | 01/1999 | HAZAMA | | |
| | A43 | 5,872,973 | 02/16/99 | MITCHELL ET AL. | | |
| | A44 | 5,875,302 | 02/23/99 | OBHAN | | |
| | A45 | 5,907,837 | 05/25/99 | FERREL ET AL. | | |
| | A46 | 5,915,240 | 06/22/99 | KARPF | | |
| | A47 | 5,920,702 | 07/06/99 | BLEIDT ET AL. | | |
| | A48 | 5,940,844 | 08/17/99 | CAHILL ET AL. | | |
| | A49 | 5,961,610 | 10/05/99 | KELLY ET AL. | | |
| | A50 | 5,966,705 | 10/12/99 | KONERU ET AL. | | |
| | A51 | 5,974,124 | 10/26/99 | SCHLUETER, JR. ET AL. | | |
| | A52 | 5,978,773 | 11/02/99 | HUDETZ ET AL. | | |
| | A53 | 5,987,519 | 11/16/99 | PEIFER ET AL. | | |
| | A54 | 5,995,965 | 11/30/99 | EXPERTON | | |
| | A55 | 6,032,175 | 02/29/00 | FLETCHER ET AL. | | |
| | A56 | 6,047,332 | 04/04/00 | VISWANATHAN ET AL. | | |
| | A57 | 6,055,544 | 04/25/00 | DEROSE ET AL. | | |
| | A58 | 6,058,193 | 05/02/00 | CORDERY ET AL. | | |
| | A59 | 6,092,189 | 07/18/00 | FISHER ET AL. | | |
| | A60 | 6,188,766 B1 | 02/13/01 | KOCHER | | |
| | A61 | 6,201,931 B1 | 03/13/01 | CIPOLLA ET AL. | | |
| | A62 | 6,202,070 B1 | 03/13/01 | NGUYEN ET AL. | | |
| | A63 | 6,209,095 B1 | 03/27/01 | ANDERSON ET AL. | | |
| | A64 | 6,212,280 B1 | 04/03/01 | HOWARD, JR. ET AL. | | |

### FOREIGN PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS/ SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| ⋀⋀⋀ | A65 | 0 568 161 A1 | 01/1992 | EPO | | | |
| | A66 | 0 889 422 A2 | 01/07/99 | EPO | | | |
| | A67 | WO 86/05610 | 09/1986 | PCT | | | |
| • | A68 | WO 98/00624 | 07/1998 | PCT | | | |
| | A69 | WO 98/15910 | 04/16/98 | PCT | | | |
| | A70 | WO 98/31138 | 07/16/98 | PCT | | | |
| | A71 | WO 00/03526 | 01/20/00 | PCT | | | |

| EXAMINER ⋀. Pelgado | DATE CONSIDERED 5/28/06 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609;
Draw line through citation if not in conformance and not considered. Include copy of this form with next
communication to applicant.

Rev. Feb.-97
F:\COMMON\KEG\OverX 10406\10406-49\10406-49 PTO 1449.1.doc

JA1347

| FORM PTO-1449 | | SERIAL NO. 09/872,736 | CASE NO. 10406/49 |
|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | FILING DATE June 1, 2001 | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | | APPLICANT(S): J. Overton et al. | |

| EXAMINER INITIAL | | OTHER ART (Including Author, Title, Date, Pertinent Pages, etc.) |
|---|---|---|
| (initials) | A72 | Bourke D G et al: "Programmable Module and Circuit for Machine-Readable Unique Serial Number" IBM Technical Disclosure Bulletin, vol. 27, no. 4A, 1 September 1984 pages 1942-1944. |
| | A73 | Kleinholz L et al: "Supporting Cooperative Medicine: The Bermed Project" IEEE Multimedia, vol. 1, no. 4, 21 December 1994 pages 44-53. |
| | A74 | "Method for Network Naming and Routing" IBM Technical Disclosure Bulletin, vol. 37, no. 9, 1 September 1994 page 255. |
| | A75 | "Minimizing Locking To Access Global Shared Data", IBM Technical Disclosure Bulletin, pp 619-622, February 1995. |
| | A76 | "A robust software barcode reader using the Hough transform", Muniz, R.; Junco, L.; Otero, A., Abstract, 1999 Int'l Conf. On Information Intelligence and Systems (10-31 to 11-3/1999). |
| | A77 | "In-Fab identification of silicon wafers with clean, laser marked barcodes", Fresonke, D., Abstract, 1994 IEEE/Semi Advanced Semiconductor Manufacturing Conference and Workshop (11-14 to 11-16/1994). |
| | A78 | "Applications of barcode technology in automated storage and retrieval systems", Sriram, T.; Vishwanatha Rao, K.; Biswas, S.; Ahmed, Abstract, Proceedings of the 1996 IEEE IECON 22nd Int'l Conf. On Industrial Electrodes (8-5 to 8-10/1996). |
| • | A79 | Copy of claims for U.S. Application Serial No. 09/111,896 filed July 8, 1998 entitled System And Method For Establishing And Retrieving Data Based On Global Indices. |
| • | A80 | Copy of claims for U.S. Application Serial No. 09/503,441 filed February 14, 2000 entitled Automated Image Archiving System. |
| • | A81 | Copy of claims for U.S. Application Serial No. 09/367,461 filed August 13, 1999 entitled Automated Image Archiving System. |
| • | A82 | Copy of claims for U.S. Application Serial No. 09/661,222 filed September 13, 2000 entitled Network Distributed Tracking Wire Transfer Protocol. |

| EXAMINER M. Relgeror | DATE CONSIDERED 5/25/06 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Rev. Feb.-97
F:\COMMON\KEG\OverX 10406\10406-49\10406-49 PTO 1449.1.doc

SEP 1 4 2004

| FORM PTO-1449 | | SERIAL NO. 09/872,736 | | CASE NO. 11958/49 | |
|---|---|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | FILING DATE June 1, 2001 | | GROUP ART UNIT 2152 | |
| (use several sheets if necessary) | | APPLICANT(S): J. Overton et al. | | | |

**REFERENCE DESIGNATION**    **U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| MMI | D1 | 4,835,372 | 05/1989 | Gombrich et al. | | |
| | D2 | 5,291,399 | 03/1994 | Chaco | | |
| | D3 | 5,475,817 | 12/1995 | Waldo et al. | | |
| | D4 | 5,479,654 | 12/1995 | Squibb | | |
| | D5 | 5,740,428 | 04/1998 | Mortimore et al. | | |
| | D6 | 5,903,889 | 05/1999 | de la Huerga et al. | | |
| | D7 | 5,918,241 | 06/1999 | Perkowski | | |
| | D8 | 6,108,787 | 08/2000 | Anderson et al. | | |
| | D9 | 6,131,095 | 10/2000 | Low et al. | | |
| | D10 | 6,154,873 | 11/2000 | Call | | |
| | D11 | 6,377,986 | 04/2002 | Philyaw et al. | | |
| | D12 | 6,418,441 | 07/2002 | Call | | |
| | D13 | 2002/0112048 | 08/2002 | Gruyer et al. | | |

| EXAMINER INITIAL | | OTHER ART – NON PATENT LITERATURE DOCUMENTS (Include name of author, title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date page(s), volume-issue number(s), publisher, city and/or country where published. |
|---|---|---|
| MM | D14 | Callaghan V L et al., "Structures and Metrics for Image Storage and Interchange" Journal of Electronic Imaging, Vol. 2, No. 2, 1 April 1993, pp. 126-137 |
| | D15 | "Method for Network Naming and Routing" IBM Technical Disclosure Bulletin, Vol. 37, No. 9, 1 September 1994, page 255 |
| | D16 | "Service Location in an Open Distributed Environment," Beitz et al., Second International Workshop on Services in Distributed and Networked Environments, IEEE Comput. Soc., June, 1995, pp. 28-34 |
| | D17 | Baer, Tony, "Tales from the Network", Computerworld Healthcare Journal, www.computerworld.com/news/1996/story/0,11280,14557,00.html, pp. 1-9, October 1, 1996 |

| EXAMINER M. Alonoto | DATE CONSIDERED 5/25/06 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609;
Draw line through citation if not in conformance and not considered. Include copy of this form with next
communication to applicant.

Rev. Dec.-99
\\fsv11\common\kgenin\Econnectix 11958\11958-49\11958-49 PTO 1449.4.doc

JA1349

# Index of Claims

| | |
|---|---|
| **Application/Control No.** | **Applicant(s)/Patent under Reexamination** |
| 09/872,736 | OVERTON ET AL. |
| **Examiner** | **Art Unit** |
| Michael S. A. Delgado | 2144 |

| | | | | | |
|---|---|---|---|---|---|
| √ | Rejected | − | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
| = | Allowed | + | Restricted | I | Interference | O | Objected |

| Claim | | Date | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Final | Original | 5/25/06 | | | | | | |
| | 1 | | | | | | | |
| | 2 | | | | | | | |
| | 3 | | | | | | | |
| | 4 | | | | | | | |
| | 5 | | | | | | | |
| | 6 | | | | | | | |
| | 7 | | | | | | | |
| | 8 | | | | | | | |
| | 9 | | | | | | | |
| | 10 | | | | | | | |
| | 11 | | | | | | | |
| | 12 | | | | | | | |
| | 13 | | | | | | | |
| | 14 | | | | | | | |
| | 15 | | | | | | | |
| | 16 | | | | | | | |
| | 17 | | | | | | | |
| | 18 | | | | | | | |
| | 19 | | | | | | | |
| | 20 | | | | | | | |
| | 21 | | | | | | | |
| | 22 | | | | | | | |
| | 23 | | | | | | | |
| | 24 | | | | | | | |
| | 25 | | | | | | | |
| | 26 | | | | | | | |
| | 27 | | | | | | | |
| | 28 | | | | | | | |
| | 29 | | | | | | | |
| | 30 | | | | | | | |
| | 31 | | | | | | | |
| | 32 | | | | | | | |
| | 33 | | | | | | | |
| | 34 | | | | | | | |
| | 35 | | | | | | | |
| | 36 | | | | | | | |
| | 37 | | | | | | | |
| | 38 | | | | | | | |
| | 39 | | | | | | | |
| | 40 | | | | | | | |
| | 41 | | | | | | | |
| | 42 | | | | | | | |
| | 43 | | | | | | | |
| | 44 | | | | | | | |
| | 45 | | | | | | | |
| | 46 | | | | | | | |
| | 47 | | | | | | | |
| | 48 | | | | | | | |
| | 49 | | | | | | | |
| | 50 | | | | | | | |

Claims 51–100 and 101–150 have no entries.

JA1350

| Search Notes | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 09/872,736 | OVERTON ET AL. |
| | Examiner | Art Unit | |
| | Michael S. A. Delgado | 2144 | |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

## SEARCH NOTES
## (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| IDS : 9/14/01<br>IDS: 8/13/02<br>IDS: 5/7/02 | 5/25/2006 | |

JA1351



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/872,736 | 06/01/2001 | John K. Overton | 10406/49 | 3927 |

7590          08/24/2006

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL  60610

| EXAMINER |
|---|
| DELGADO, MICHAEL A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2144 | |

DATE MAILED: 08/24/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

JA1352

| | Application No. | Applicant(s) |
|---|---|---|
| ***Interview Summary*** | 09/872,736 | OVERTON ET AL. |
| | Examiner | Art Unit | |
| | Michael S. A. Delgado | 2144 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Michael S. A. Delgado_.  (3)_Kent Genin_.

(2) _William Vaughn_.  (4)_John Overton_.

Date of Interview: _09 August 2006_.

Type: a)☒ Telephonic   b)☐ Video Conference
c)☐ Personal [copy given to: 1)☒ applicant   2)☒ applicant's representative]

Exhibit shown or demonstration conducted:   d)☐ Yes   e)☒ No.
If Yes, brief description: _____.

Claim(s) discussed: _1_.

Identification of prior art discussed: _US 6,466,980_.

Agreement with respect to the claims f)☐ was reached.   g)☐ was not reached.   h)☒ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: _the prior art not using the management of location identifier in order to support load balancing_ .

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a reply to the last Office action has already been filed, APPLICANT IS GIVEN A NON-EXTENDABLE PERIOD OF THE LONGER OF ONE MONTH OR THIRTY DAYS FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

Examiner Note: You must sign this form unless it is an Attachment to a signed Office action.

Examiner's signature, if required

JA1353

# Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

### Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews
Paragraph (b)
In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

### 37 CFR §1.2 Business to be transacted in writing.
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

———

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
- Application Number (Series Code and Serial Number)
- Name of applicant
- Name of examiner
- Date of interview
- Type of interview (telephonic, video-conference, or personal)
- Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
- An indication whether or not an exhibit was shown or a demonstration conducted
- An identification of the specific prior art discussed
- An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
- The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

2



"Express Mail" mailing label number <u>EV 316 041 955 US</u>

Date of Deposit: <u>November 1, 2006</u>

Our Case No. 11958/49

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
JOHN OVERTON et al.　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
Serial No. 09/872,736　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
Filing Date: June 6, 2001　　　　　 )
　　　　　　　　　　　　　　　　　 )
For　METHOD AND APPARATUS FOR )
　　MANAGING LOCATION　　　　　 )
　　INFORMATION IN A NETWORK　 )
　　　　　　　　　　　　　　　　　 )

Examiner: Delgado, Michael A.

Group Art Unit: 2144

### AMENDMENT

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

　　　　In response to the Office Action dated August 24, 2006, please consider the following:

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:

1.      (Currently Amended) A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising:

~~a transfer protocol comprising an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity;~~

a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity ~~formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network~~;

a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and

programming logic stored on each of the location servers ~~the location server~~ responsive to a location query identifying a desired entity to return a location message, the location message comprising ~~all~~ at least one location of data pertaining to ~~locations associated with~~ the desired entity, ~~wherein the location server returns the location message~~ if the location server receiving the location query contains location information for the desired entity.

2. – 3.      (Cancelled)

JA1356

4.     (Currently Amended)  The system of claim 1, wherein the at least one location comprises a plurality of geographic locations, each of the geographic locations representing a position of the entity an object at a different time.

5.     (Cancelled)

6.     (Currently Amended)  The system of claim 1[[5]], wherein the programming logic stored at each of the location servers further comprises logic responsive to the location query to return one of a location message or[[and]] a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a a list of at least one other location server known to have location information relevant to the location query.

7.     (Currently Amended)  The system of claim 6, wherein the information for finding the location server known to have location information relevant to the location query list of at least one other location server comprises a list of [[all]] location servers in the plurality of location servers and a corresponding list of each of the entities having location information on the respective location servers.

8.     (Currently Amended)  The system of claim 1 [[5]], wherein each of the location servers stores at least a portion of the total amount of location information on a persistent storage device.

9.     (Cancelled)

10.    (Currently Amended)  The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table.

11.    (Cancelled)

JA1357

12.　(Currently Amended)  The system of claim 10, wherein the location query identifying the desired entity comprises a unique identifier for the desired entity, and wherein the programming logic stored on the location server further comprises programming logic for applying an index function to the unique identifier to retrieve at least a portion of the location information ~~locations~~ associated with the unique identifier in the indexed location store.

13. – 14.　(Cancelled)

15.　(Currently Amended)  The system of claim 1[[6]], wherein the plurality of location servers are arranged in a network topology having a plurality of nodes organized in a logical hierarchy ~~tree structure~~, wherein each node comprises at least one location server and wherein each node is connected to at least one other node in the logical hierarchy ~~tree structure~~.

16.　(Currently Amended)  The system of claim 12, wherein the [[data]] location query is received at a [[data]] location server in a first node and wherein the redirect message comprises a list of at least one other location server in a node other than the first node that may ~~is known to~~ have [[data]] location information relevant to the location query.

17.　(Currently Amended)  A system having a plurality of location servers for managing location information and providing ~~data~~ location information to location queries, the system comprising:

~~a transfer protocol comprising an identifier and at least one location association, wherein the identifier uniquely specifies an entity and wherein each location specifies a location pertaining to the entity;~~

a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a ~~the~~ transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a ~~server~~ cluster topology such that each location server contains a unique set of location information ~~portion~~ of an aggregate set of the location information; and

JA1358

programming logic stored on each of the <u>plurality of </u>location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises <u>information for finding a location server having</u> ~~a list of all of the plurality of location servers containing~~ location information related to the desired identifier.

18.     (Previously Presented)  The system of claim 17, wherein the location information comprises geographic location information.

19.     (Previously Presented)  The system of claim 17, wherein the location information comprises network address information.

20.     (Previously Presented)  The system of claim 19, wherein the network address information comprises a network address of a data repository containing data pertaining to the desired identifier.

21.     (Currently Amended)  A method of handling location queries in a network, the network comprising a plurality of location servers<u>, each location server containing a unique set of location information of an aggregate set of location information</u> ~~containing location information~~ correlating each of a plurality of identifiers with at least one location, the method comprising:

receiving a location query from a client at one of the plurality of location servers, the location query requesting an <u>entity's</u> ~~identifier's~~ location;

sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and

sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the

JA1359

redirect message comprising <u>information for finding a location server storing</u> <s>a list of location servers containing location information relevant to</s> the entity identified in the query.

22.    (Previously Presented)  The method of claim 21, further comprising applying information in the location query from the client to an indexing function to determine if the queried location server contains location information relevant to the entity identified in the query.

23.    (Previously Presented)  The method of claim 22, wherein each of the plurality of location servers comprises an indexed table of identifiers and associated locations, and wherein applying information in the location query comprises applying an identifier in the location query to a hash function.

24.    (Currently Amended)  A method of scaling at least one of <u>capacity and transaction rate capability in a</u> location server <s>capacity and transaction rate capability</s> in a system<u> having a plurality of location servers</u> for storing and retrieving location information, <u>wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information,</u> the method comprising:

providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information <u>related</u> <s>relevant</s> to the identifier;

<s>providing a first location server</s> storing location information formatted according to the transfer protocol <u>at a first location server</u>;

receiving an identifier and a location relevant to the identifier at the first location server;

storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and

transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit.

25.    (Original)  The method of claim 24, wherein receiving an identifier and a location comprises receiving the identifier and the location at the first location server from an application server, wherein the location comprises an address for the application server.

26.    (Original)  The method of claim 24, wherein receiving an identifier and a location comprises receiving the identifier and the location at the first location server from a physical object, wherein the identifier identifies the physical object and wherein the location comprises a geographic location for the physical object.

27.    (Original)  The method of claim 26, wherein the physical object comprises a vehicle.

28.    (Original)  The method of claim 26, wherein the physical object comprises a portable telecommunications device.

29.    (Original)  The method of claim 24, wherein transferring a portion of the identifier and location associations comprises:

identifying a portion of identifier and location associations on the first location server to be transferred to the second location server and identifying a data set state of the identified portion at an initial time;

copying a data set for the identified portion corresponding to the identified data set state from the first location server to the second location server and maintaining a second data set containing changes to the identified portion since the initial time;

identifying a data set state for the second data set;

ceasing operation of the first location server with respect to the identified portion and copying the second data set to the second location server, wherein the second data set corresponds to the identified data set state for the second data set; and

JA1361

initiating operation of the second location server for the identified portion of identifiers and location associations.

30. (Original) The method of claim 24, wherein the performance criterion comprises an amount of available persistent storage space in the first location server.

31. (Original) The method of claim 24, wherein the performance criterion comprises a transaction rate limit.

32. (Original) The method of claim 24, wherein the transaction rate limit comprises a processor speed limit.

33. (Original) The method of claim 24, wherein the transaction rate limit comprises a network connection bandwidth limit.

34. (Original) The method of claim 24, further comprising transmitting a location server map from the first location server, the location server map comprising information identifying the second location server and a list of identifiers associated with the second location server.

35. (Original) The method of claim 34, wherein the first and second location servers are part of a location server cluster comprising a plurality of location servers, and wherein transmitting the location server map comprises transmitting the location server map to each of the plurality of data location servers asynchronously.

36. (Original) The method of claim 34, wherein transmitting a location server map comprises transmitting the location server map to a client in response to query received at the first location server from the client regarding an identifier that is not resident on the first location server.

37. (Original) The method of claim 24, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring

the portion of identifiers and associated locations when the first location server reaches the predetermined limit.

38. – 44.    (Cancelled)

45.    (Currently Amended)  A system for managing location information and providing location information to location queries, the system comprising:

a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity, the location server containing location information corresponding to at least one entity and formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and

programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising [[all]] locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity.

## REMARKS

### I.  Office Action Summary

Upon entry of this amendment claims 1, 4, 6-8, 10, 12, 15-37 and 45 will be pending.  In the Office Action dated June 1, 2006, the Examiner rejected claims 24-26, 29-38, and 40-45, under 35 U.S.C. §102(e) as being anticipated by Lumelsky et al (U.S. Patent No. 6,466,980).  The Examiner also rejected claims 27-28 and 39 under 35 U.S.C. §103(a) as obvious over the combination of Lumelsky et al. in view of Bowman-Amuah (U.S. Patent No. 6,578,068).

### II.  Interview Summary

A telephone interview was conducted with the inventor, the undersigned and Examiners Delgado and Vaughn on August 9, 2006.  The undersigned thanks the Examiners for the courtesy extended in that discussion.  The aspect of the claims that was discussed was the management of location information separate from the data to which the location information pertains.  The inventor pointed out that this permitted functions, such as load balancing, to be performed by management of location information rather than simple replication of location information and the data to which the location information pertains.  The inventor also pointed out that the cited Lumelsky reference relates to manipulation of the actual data (multimedia objects in Lumelsky) rather than just the location information for that data.

### III.  Rejections Under 35 U.S.C. § 102(e)

Applicants respectfully disagree with the Examiner's rejections of claims 24-26, 29-38 and 40-45 over U.S. Patent No. 6,466,980 (Lumelsky).  As discussed in greater detail below, Lumelsky discloses using location information in service of optimizing **distribution of multimedia objects**, whereas Applicants' specification **manages location information** separately from the data (or multimedia objects, using the Lumelsky terminology) to which the location information pertains.

JA1364

CLAIM 24

Amended claim 24 relates to a method of scaling at least one of location server capacity and transaction rate capability in a system for storing and retrieving location information by manipulating the location information used to find the data that is being requested.

Claim 24 includes, *inter alia,* the step of:

transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first server reaches a predetermined performance limit

**Thus, amended claim 24 relates to improvements for transaction rate scalability for location information separate and apart from any data to which the location information points.** As recited in claim 24, **transferring a portion of the identifiers and associated locations to a second data location server** involves isolating specifically the location information from the end-point data itself and making changes to how the location information is managed, not the end-point data that is stored at a location identified by the location information. Examples of partitioning portions of the *location information* across servers are found in Applicants' specification (See, for example, FIG. 5 and p. 11, ll. 30 – p. 12, l. 1 illustrating location data server topology using clustering, or a distributed topology using replication, where each of the servers in the cluster may contain a different portion of a pool of associated identifier and location information).

In contrast to Claim 24, Lumelsky only focuses on replication of data objects rather than on management of specifically location information separated from the data objects themselves. Instead of teaching the management of location data itself so that data location servers with data location information are reconfigured to handle queries for the location of data, Lumelsky discloses managing and replicating the end-point data itself (in Lumelsky, the data objects disclosed are multimedia files). The method of claim 24 relates to the management of specifically location information and capacity and transaction rate scaling for accessing the location information needed to access data,

JA1365

while Lumelsky is concerned with the replicating and managing the data itself rather than the location information relating to the whereabouts of the data.

The Examiner asserts that Lumelsky teaches or suggests transferring portions of identifier-location associations to a second server given a performance limit. As pointed out in Applicants' Response filed February 22, 2006, Lumelsky actually teaches replication of the multimedia objects, not simply the location data (See Lumelsky, Col. 6, lines 33-43: "The present invention additionally introduces the notion of a transient replica which replica acts as a migrating object of limited lifetime that responds to demand and capacity conditions. To do so, the controller node monitors demand and capacity and uses, creates, and deletes transient replicas from global servers.")

Lumelsky's "transient replica" refers to a multimedia object, not location information. Therefore, Lumelsky teaches transferring data objects to additional servers but does not teach transferring portions of location information to additional servers separate from data objects. Lumelsky fails to teach or suggest the separate management of location information pertaining to the data, therefore Lumelsky does not teach transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit as claimed in claim 24.

Thus, Lumelsky does not teach either (a) a method of scaling at least one of location server capacity and transaction rate capability in a system for storing and retrieving location information, or (b) transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. Also, Applicants have amended claim 24 to note that different sets of location information are maintained on each of the location servers to further emphasize the difference between Lumelsky and the invention of claim 24.

For at least these reasons, Applicants submit that independent Claim 24 is patentable over Lumelsky. Claims 25-37 are dependent claims, therefore their allowability directly follows from the allowability of independent claim 24.

CLAIM 45

Claim 45 relates to a system for managing location information and providing location information to location queries. Claim 45 includes, *inter alia*:

> a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier . . .

Unlike Lumelsky where replication of data (e.g. multimedia objects) is disclosed rather than the location information relating to the whereabouts of the data, claim 45 recites a location server specifically configured with a location data protocol for managing location information separately from the data the location data is pointing to. In contrast, Lumelsky teaches use of transfer and transport protocols for transmitting multimedia data rather than for managing location information (See Lumelsky, Col. 9, lines 14-21). Lumelsky teaches the use of transfer protocols designed for (a) videoconferencing and (b) broadcasting audio-visual data, (c) controlling delivery of data, and (d) lower-level transport protocols UDP, multicast UDP, TCP, and RTP to deliver continuous streams. However, Lumelsky does not teach use of a transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier.

Accordingly, Applicants submit that Lumelsky does not teach a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier.

Finally, Lumelsky teaches the use of replica and server directories to advise placement policy, illustrated in FIG. 6(a) and FIG. 6(b). The replica directory records various statistics for identifiers, such as predicted demand, geography, demand volume, and time-to-live (col. 10, ll. 23-28). The server directory records information such as IP address or hostname and capacity rating (col. 10, ll. 42-46). However, Lumelsky does not teach the use of a transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier.

As discussed in the interview of August 9, 2006 and reiterated in more detail above, Applicants respectfully submit that claim 45 distinguishes over Lumelsky

JA1367

because Lumelsky fails to teach or suggest a system for manipulating location information separately from the data to which the location data pertains.

For at least the above reasons, Applicants submit that claim 45 is allowable over the cited art.

## IV.  Rejections Under 35 U.S.C. § 103(a)

Applicants respectfully disagree with the Examiner's rejections under 35 U.S.C. § 103. Applicants submit that dependent claims 27-28 are allowable for at least the same reasons as provided above for independent claim 24. Claim 39 has been cancelled to expedite allowance of the remaining claims. Applicants reserve the right to refile claim 39 in a continuation application.

## V.  Reintroduction of Withdrawn Claims

In view of the August 9, 2006 interview and the clarification that the claims relate to systems and methods for manipulating location information, as opposed to data identified by the location information, Applicants have reintroduced claims 1, 4, 6-8, 10, 12, and 15-23 which all relate to manipulation of location information.

Independent claim 1 relates to a system for managing location information for an entity (e.g. data) separately from the entity itself, where location servers in the system each have differing sets of location information and are configured to return a location information for the desired entity (i.e. information on where to find the entity) if that location server contains the location information.

Independent claim 17 relates to a system for managing location information for data separately from the data itself, where, among other features, each of a plurality location servers are arranged in a cluster topology and, in response to a query, will return either the requested location information or a redirect message providing information on where to find a location server with the location information for the data.

Independent claim 21 recites a method for handling location queries where each of a plurality of location servers has a unique set of location information of an aggregate set of the location information. The method includes the steps of receiving an identifier for an entity, sending a location response with the location information of the entity if the

JA1368

location server receiving the query possesses the location information, or sending a redirect message identifying another location server with the location information for the entity.

Applicants submit that each of the reintroduced claims, along with their respective dependent claims, distinguish over Lumelsky for at least one or more of the reasons provided above. Consideration and allowance of the reintroduced claims is respectfully requested.

## VI. Conclusion

In light of the above, Applicants submit that claims 1, 4, 6-8, 10, 12, 15-37 and 45 are in condition for allowance. Applicants further submit that the amendments to the claims are fully supported by the specification as filed. Applicants have cancelled claims 2-3, 5, 9, 11, 13-14 and 38-44 in order to expedite review and allowance of the remaining claims. Applicants reserve the right to refile these claims in a continuation application. If any issues arise or questions remain, the Examiner is invited to contact the undersigned at the number listed below in order to expedite disposition of this case.

Respectfully submitted,

Kent E. Genin
Registration No. 37,834
Attorney for Applicants

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, ILLINOIS 60610
(312) 321-4200

JA1369

OIPE
NOV 0 1 2006
PATENT & TRADEMARK OFFICE

U.S. EXPRESS MAIL "POST OFFICE TO ADDRESSEE" SERVICE
DEPOSIT INFORMATION

Express Mail Label No.: _____ EV 316 041 955 US

Date of Deposit: ___ November 1, 2006

**BRINKS**
**HOFER**
**GILSON**
**&LIONE**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of: John Overton et al.

Appln. No.: 09/872,736

Filed: June 6, 2001

For: METHOD AND APPARATUS FOR
MANAGING LOCATION INFORMATION IN
A NETWORK

Attorney Docket No: 11958/49

Examiner: M. Delgado

Art Unit: 2144

Mail Stop RCE
Commissioner for Patents
U.S. Patent and Trademark Office
P. O. Box 1450
Alexandria, VA 22313-1450

### REQUEST FOR CONTINUED EXAMINATION (37 C.F.R. § 1.114)

Sir:

Applicant(s) requests continued examination of the above-identified application under 37
C.F.R. §1.114.

☒ Submission under 37 CFR 1.114 (*check at least one of the following*):

    ☐ Previously submitted:

        ☐ Applicant(s) requests nonentry of any previously-filed unentered amendments.

        ☐ Please enter and consider the Amendment After Final Under 37 C.F.R. §1.116
previously filed on_____

        ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on
_____

        ☐ Other: _____

    ☒ Attached is/are:

        ☐ An Information Disclosure Statement

        ☒ An Amendment to the written description, claims, or drawings

        ☐ New Arguments and/or New Evidence in support of Patentability

        ☐ Other: _____

11/02/2006 MBIZUNES 00000084 231925    09872736
01 FC:2801        395.00 DA

*Page 1 of 2*

**JA1370**

☐ Request for suspension of action:

Applicant(s) hereby request suspension of action on the above-identified application under 37 C.F.R. §1.103(c) for a period of _____ months. (Period of suspension shall not exceed 3 months; requires Processing Fee under 37 C.F.R. §1.17(i)).

☒ Small Entity Status:

☒ Applicant hereby asserts entitlement to claim small entity status under 37 CFR §§ 1.9 and 1.27.

☐ A small entity statement or assertion of entitlement to claim small entity status was filed in prior application no._____/_____ and such status is still proper and desired.

☐ Is no longer desired.

☒ Applicant(s) calculate the following fees to be due in connection with this Request:

☒ A Request fee of $395 under 37 C.F.R. §1.17(e).

☐ A suspension processing fee of $_____ under 37 C.F.R. §1.17(i).

☐ An additional filing fee of $_____ under 37 C.F.R. §1.16 (_____ additional independent claims and/or _____ additional total claims).

☒ An extension fee of $225 under 37 C.F.R. §1.17(a) for a two-month extension of time.

☒ Fee payment to cover the above-enumerated fee(s):

☐ A check in the amount of $_____ is enclosed.

☒ Please charge Deposit Account No. 23-1925 (BRINKS HOFER GILSON & LIONE) in the amount of $620. A copy of this Request is enclosed for this purpose.

☐ A payment by credit card in the amount of $_____ (Form PTO-2038 is attached).

☒ The Commissioner is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925 (BRINKS HOFER GILSON & LIONE). A copy of this Request is enclosed for this purpose.

Respectfully submitted,

November 1, 2006
_____            _____
Date                               Kent E. Genin (Reg. No. 37,834)

*Page 2 of 2*

**JA1371**



Case No. <u>11958/49</u>

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

     J. Overton et al.

Serial No:    09/872,736

Filed:      June 6, 2001

For:   METHOD AND APPARATUS
       FOR MANAGING LOCATION
       INFORMATION IN A

Examiner:  M. Delgado

Group Art Unit:  2144

## PETITION AND FEE FOR EXTENSION OF TIME (37 CFR § 1.136(a))

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

    This is a petition for an extension of the time to respond to <u>the Offic Action</u> dated <u>August 24, 2006</u> for a period of <u>two</u> month(s).

☒   Applicant:

    ☒   claims small entity status.  See 37 C.F.R. §1.27.

    ☐   is other than small entity

| | Extension Months | Other Than Small Entity | Small Entity |
|---|---|---|---|
| ☐ | One Month | $120.00 | $60.00 |
| ☒ | Two Months | $450.00 | $225.00 |
| ☐ | Three Months | $1,020.00 | $510.00 |
| ☐ | Four Months | $1,590.00 | $795.00 |
| ☐ | Five Months | $2,160.00 | $1,080.00 |

11/02/2006 MBIZUNES 00000084 231925   09872736
02 FC:2252      225.00 DA

**JA1372**

## Fee Payment

☐    Attached is a check for $_____ for the Petition fee.

☐    Attached is a credit card authorization form for $_____ for the Petition fee.

☒    Charge Petition fee to Deposit Account No. 23-1925.  A duplicate copy of this Petition is attached.

☒    Charge any additional fee required or credit for any excess fee paid to Deposit Account No. 23-1925.  A duplicate copy of this Petition is attached.

Respectfully submitted,

Dated: *November 1, 2006*

Kent E. Genin
Registration No. 37,834
Attorney for Applicant

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL  60610
(312)321-4200

JA1373

11-02-06

#RCE


**BRINKS**
**HOFER**
**GILSON**
**&LIONE**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:  J. Overton et al.

Appln. No.:  09/872,736                    Examiner:  M. Delgado

Filed:  June 1, 2001                        Art Unit:  2144

For:  Method And Apparatus For Managing
Location Information In A Network

Attorney Docket No:  11958/49

Mail Stop RCE
Commissioner for Patents
P. O. Box 1450
Alexandria, VA  22313-1450

**TRANSMITTAL**

Sir:

Attached is/are:

☒  Transmittal (in duplicate); Petition and Fee for Extension of Time (in duplicate); Request for Continued Examination (in duplicate); Amendment

☒  Return Receipt Postcard

**Fee calculation:**

☐  No additional fee is required.

☒  Small Entity.

☒  An extension fee in an amount of $225 for a two-month extension of time under 37 C.F.R. § 1.136(a).

☐  A petition or processing fee in an amount of $_____ under 37 C.F.R. § 1.17(_____).

☐  An additional filing fee has been calculated as shown below:

|  | Claims Remaining After Amendment |  | Highest No. Previously Paid For | Present Extra | Small Entity | | or | Not a Small Entity | |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  | Rate | Add'l Fee |  | Rate | Add'l Fee |
| Total |  | Minus |  |  | x $25= |  |  | x $50= |  |
| Indep. |  | Minus |  |  | X100= |  |  | x $200= |  |
| First Presentation of Multiple Dep. Claim |  |  |  |  | +$180= |  |  | + $360= |  |
|  |  |  |  |  | Total | $ |  | Total | $ |

**Fee payment:**

☐  A check in the amount of $_____ is enclosed.

☒  Please charge Deposit Account No. 23-1925 in the amount of $620. A copy of this Transmittal is enclosed for this purpose.

☐  Payment by credit card in the amount of $_____ (Form PTO-2038 is attached).

☒  The Director is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925.

Respectfully submitted

November 1, 2006
_____
Date

_____
Kent E. Genin (Reg. No. 37,834)

**JA1374**

Best Available Copy

09/872736

## PATENT APPLICATION FEE DETERMINATION RECORD
### Effective October 1, 2000

09/872736

### CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 45 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 45 minus 20= | 25 |
| INDEPENDENT CLAIMS | 6 minus 3 = | 3 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

* If the difference in column 1 is less than zero, enter "0" in column 2

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | OR | RATE | FEE |
| BASIC FEE 355.00 | | OR | BASIC FEE 710.00 | |
| X$ 9= | | OR | X$18= | 450 |
| X40= | | OR | X80= | 240 |
| +135= | | OR | +270= | |
| TOTAL | | OR | TOTAL | 1400 |

### CLAIMS AS AMENDED - PART II

2b2406

#### AMENDMENT A

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | 45 | Minus | 45 | = |
| Independent | 6 | Minus | 6 | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

#### AMENDMENT B

111106

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | 31 | Minus | 45 | 1 |
| Independent | 5 | Minus | 6 | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | |

| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | 1 |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

#### AMENDMENT C

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | | Minus | | = |
| Independent | | Minus | | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | |

| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
*U.S. GPO: 2000-460-709/20103

# EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L2 | 19010 | 709/203,207,223,226,230,232,235,241,242.ccls. | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:03 |
| L4 | 1706 | 2 and (location same (load balance$3 delay congest$5 bottleneck neck)) | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:04 |
| L5 | 132 | 4 and (server near5 (location near (information data address))) | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:05 |
| L7 | 7025 | location near server | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:08 |
| L9 | 177 | 7 and ((location near (data information)) same (location near2 quer$4)) | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:11 |
| L12 | 1 | ("7103640").pn. | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:13 |
| L13 | 19010 | 709/203,207,223,226,230,232,235,241,242.ccls. | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:13 |
| L14 | 11606 | 2 and (location) | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:13 |
| L15 | 1706 | 2 and (location same (load balance$3 delay congest$5 bottleneck neck)) | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:13 |
| L16 | 132 | 4 and (server near5 (location near (information data address))) | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:13 |
| L17 | 36 | 5 and @ad<"20000602" | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:13 |
| L18 | 7025 | location near server | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:13 |
| L19 | 3047 | 7 and (location near (data information)) | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:13 |
| L20 | 177 | 7 and ((location near (data information)) same (location near2 quer$4)) | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:13 |

JA1376

# EAST Search History

| L21 | 20 | 9 and @ad<"20000602" | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:13 |
|-----|----|----------------------|-------------------------------|----|----|------------------|
| L22 | 14 | 7 and (((location near (data information)) same (location near2 quer$4)) same (management manag$5)) | US-PGPUB; USPAT; EPO; IBM_TDB | OR | ON | 2007/02/05 15:13 |

JA1377



 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

7590          02/13/2007

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

| EXAMINER |
|---|
| KANG, PAUL H |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2144 | |

DATE MAILED: 02/13/2007

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/872,736 | 06/01/2001 | John K. Overton | 10406/49 | 3927 |

TITLE OF INVENTION: METHOD AND APPARATUS FOR MANAGING LOCATION INFORMATION IN A NETWORK SEPARATE FROM THE DATA TO WHICH THE LOCATION INFORMATION PERTAINS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1400 | $300 | $0 | $1700 | 05/14/2007 |

THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.

Page 1 of 3

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.

JA1378

## PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), to: **Mail** **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or **Fax** **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

7590        02/13/2007

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

|  |
|---|
| (Depositor's name) |
| (Signature) |
| (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/872,736 | 06/01/2001 | John K. Overton | 10406/49 | 3927 |

TITLE OF INVENTION: METHOD AND APPARATUS FOR MANAGING LOCATION INFORMATION IN A NETWORK SEPARATE FROM THE DATA TO WHICH THE LOCATION INFORMATION PERTAINS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1400 | $300 | $0 | $1700 | 05/14/2007 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| KANG, PAUL H | 2144 | 709-217000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.   ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____        Date _____

Typed or printed name _____        Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

**JA1379**



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/872,736 | 06/01/2001 | John K. Overton | 10406/49 | 3927 |

| | |
|---|---|
| 7590 02/13/2007 | EXAMINER |
| BRINKS HOFER GILSON & LIONE | KANG, PAUL H |
| P.O. BOX 10395 | |
| CHICAGO, IL 60610 | ART UNIT / PAPER NUMBER |
| | 2144 |

DATE MAILED: 02/13/2007

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 813 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 813 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.

JA1380

| | Application No. | Applicant(s) |
|---|---|---|
| ***Notice of Allowability*** | 09/872,736 | OVERTON ET AL. |
| | Examiner | Art Unit | |
| | Paul H. Kang | 2144 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*
All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the amendment filed November 1, 2006*.

2. ☒ The allowed claim(s) is/are *1,4,6-8,10,12,15-37 and 45*.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*  c) ☐ None  of the:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____.

      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

      1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
      Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftperson's Patent Drawing Review (PTO-948)

3. ☐ Information Disclosure Statements (PTO/SB/08),
    Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit
    of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413),
    Paper No./Mail Date _____.

7. ☒ Examiner's Amendment/Comment

8. ☒ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____.

JA1381

## EXAMINER'S AMENDMENT

1.    An Examiner's Amendment to the record appears below. Should the changes and/or

additions be unacceptable to applicant, an amendment may be filed as provided by 37 C.F.R.

§ 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the

payment of the Issue Fee.

2.    Pursuant to MPEP 606.01, the title has been changed to read:

--METHOD AND APPARATUS FOR MANAGING LOCATION INFORMATION IN

A NETWORK SEPARATE FROM THE DATA TO WHICH THE LOCATION

INFORMATION PERTAINS--

### *Allowable Subject Matter*

3.    The following is an Examiner's Statement of Reasons for Allowance:

In interpreting the claims, in light of the specification and the applicant's arguments, the

Examiner finds the claimed invention to be patentably distinct from the prior art of record.

Lumelsky et al., US Pat. No. 6,466,980 B1, teaches the invention substantially as claimed.

Lumelsky teaches a system and method for capacity shaping in an internet environment to enable

network management functions such as load balancing. Lumelsky also teaches a replica directory

(66) for storing location information of a data object to retrieve all replicas of the data object

using the user provided unique object identifier (See Lumelsky, col. 9, lines 22 – col. 10, line 3).

However, the prior art of record fails to teach or suggest individually or in combination a system in which a location query requests from multiple servers location information, separate from the data objects to which the location information pertains, to be returned to the requestor. The Examiner finds the applicant's arguments in page 10, lines 9-27 of the amendment filed November 1, 2006 to be persuasive. The applicant argued in substance that Lumelsky does not teach a system and method for management of location information separate from the data to which the location information pertains, but instead relates to manipulation of the actual data (multimedia objects in Lumelsky) rather than just the location information for that data.

4.      Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

### *Conclusion*

5.      Any inquiry concerning this communication or earlier communications from the examiner should be directed to Paul H. Kang whose telephone number is (571) 272-3882. The examiner can normally be reached on 9 hour flex. First Friday.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, William Vaughn can be reached on (571) 272-3922. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

PAUL H. KANG
PRIMARY PATENT EXAMINER

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 09/872,736 | OVERTON ET AL. |
| | Examiner | Art Unit |
| | Paul H. Kang | 2144 |

## ISSUE CLASSIFICATION

| ORIGINAL | | CROSS REFERENCE(S) | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CLASS | SUBCLASS | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | | |
| 709 | 217 | 709 | 226 | 232 | | | | | |
| INTERNATIONAL CLASSIFICATION | | | | | | | | | |
| G 0 6 F | 15 / 16 | | | | | | | | |
| | / | | | | | | | | |
| | / | | | | | | | | |
| | / | | | | | | | | |
| | / | | | | | | | | |

| N/A | |
|---|---|
| (Assistant Examiner) | (Date) |
| (Legal Instruments Examiner) | (Date) |

Paul H. Kang   Feb. 5, 2006
(Primary Examiner)   (Date)

**Total Claims Allowed: 31**

| O.G. Print Claim(s) | O.G. Print Fig. |
|---|---|
| 1 | 24 |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 24 | 31 | | 61 | | 91 | | 121 | | 151 | | 181 |
| | 2 | 25 | 32 | | 62 | | 92 | | 122 | | 152 | | 182 |
| | 3 | 26 | 33 | | 63 | | 93 | | 123 | | 153 | | 183 |
| 2 | 4 | 27 | 34 | | 64 | | 94 | | 124 | | 154 | | 184 |
| | 5 | 28 | 35 | | 65 | | 95 | | 125 | | 155 | | 185 |
| 3 | 6 | 29 | 36 | | 66 | | 96 | | 126 | | 156 | | 186 |
| 4 | 7 | 30 | 37 | | 67 | | 97 | | 127 | | 157 | | 187 |
| 5 | 8 | | 38 | | 68 | | 98 | | 128 | | 158 | | 188 |
| | 9 | | 39 | | 69 | | 99 | | 129 | | 159 | | 189 |
| 6 | 10 | | 40 | | 70 | | 100 | | 130 | | 160 | | 190 |
| | 11 | | 41 | | 71 | | 101 | | 131 | | 161 | | 191 |
| 7 | 12 | | 42 | | 72 | | 102 | | 132 | | 162 | | 192 |
| | 13 | | 43 | | 73 | | 103 | | 133 | | 163 | | 193 |
| | 14 | | 44 | | 74 | | 104 | | 134 | | 164 | | 194 |
| 9 | 15 | 31 | 45 | | 75 | | 105 | | 135 | | 165 | | 195 |
| 8 | 16 | | 46 | | 76 | | 106 | | 136 | | 166 | | 196 |
| 10 | 17 | | 47 | | 77 | | 107 | | 137 | | 167 | | 197 |
| 11 | 18 | | 48 | | 78 | | 108 | | 138 | | 168 | | 198 |
| 12 | 19 | | 49 | | 79 | | 109 | | 139 | | 169 | | 199 |
| 13 | 20 | | 50 | | 80 | | 110 | | 140 | | 170 | | 200 |
| 14 | 21 | | 51 | | 81 | | 111 | | 141 | | 171 | | 201 |
| 15 | 22 | | 52 | | 82 | | 112 | | 142 | | 172 | | 202 |
| 16 | 23 | | 53 | | 83 | | 113 | | 143 | | 173 | | 203 |
| 17 | 24 | | 54 | | 84 | | 114 | | 144 | | 174 | | 204 |
| 18 | 25 | | 55 | | 85 | | 115 | | 145 | | 175 | | 205 |
| 19 | 26 | | 56 | | 86 | | 116 | | 146 | | 176 | | 206 |
| 20 | 27 | | 57 | | 87 | | 117 | | 147 | | 177 | | 207 |
| 21 | 28 | | 58 | | 88 | | 118 | | 148 | | 178 | | 208 |
| 22 | 29 | | 59 | | 89 | | 119 | | 149 | | 179 | | 209 |
| 23 | 30 | | 60 | | 90 | | 120 | | 150 | | 180 | | 210 |

JA1385



| *Search Notes* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 09/872,736 | OVERTON ET AL. |
| | Examiner | Art Unit | |
| | Paul H. Kang | 2144 | |

| SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| 709 | 203 207 | 2/07 | ꝑₖ |
| | 223 | | |
| | 226 230 | | |
| | 232 235 | | |
| | 241 242 | | |
| (Supplemented with EAST) | | | |
| Updated previous 2/07 ꝑₖ | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| SEARCH NOTES (INCLUDING SEARCH STRATEGY) | | |
|---|---|---|
| | DATE | EXMR |
| EAST UPDATE | 2/07 | ꝑₖ |
| DP SEARCH (USP 7103640) | 2/07 | ꝑₖ |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| 709 | 217 | 2/07 | ꝑₖ |
| | 226 | | |
| | 232 | | |
| | | | |

JA1386

| Index of Claims | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 09/872,736 | OVERTON ET AL. |
| | Examiner | Art Unit |
| | Paul H. Kang | 2144 |

| √ | Rejected | — | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | + | Restricted | I | Interference | O | Objected |

| Final | Original | Date | | | | | | | | | | Final | Original | Date | | | | | | | | | | Final | Original | Date | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | | | | | | 51 | | | | | | | | | | | | 101 | | | | | | | | | | |
| | 2 | | | | | | | | | | | | 52 | | | | | | | | | | | | 102 | | | | | | | | | | |
| | 3 | | | | | | | | | | | | 53 | | | | | | | | | | | | 103 | | | | | | | | | | |
| | 4 | | | | | | | | | | | | 54 | | | | | | | | | | | | 104 | | | | | | | | | | |
| | 5 | | | | | | | | | | | | 55 | | | | | | | | | | | | 105 | | | | | | | | | | |
| | 6 | | | | | | | | | | | | 56 | | | | | | | | | | | | 106 | | | | | | | | | | |
| | 7 | | | | | | | | | | | | 57 | | | | | | | | | | | | 107 | | | | | | | | | | |
| | 8 | | | | | | | | | | | | 58 | | | | | | | | | | | | 108 | | | | | | | | | | |
| | 9 | | | | | | | | | | | | 59 | | | | | | | | | | | | 109 | | | | | | | | | | |
| | 10 | | | | | | | | | | | | 60 | | | | | | | | | | | | 110 | | | | | | | | | | |
| | 11 | | | | | | | | | | | | 61 | | | | | | | | | | | | 111 | | | | | | | | | | |
| | 12 | | | | | | | | | | | | 62 | | | | | | | | | | | | 112 | | | | | | | | | | |
| | 13 | | | | | | | | | | | | 63 | | | | | | | | | | | | 113 | | | | | | | | | | |
| | 14 | | | | | | | | | | | | 64 | | | | | | | | | | | | 114 | | | | | | | | | | |
| | 15 | | | | | | | | | | | | 65 | | | | | | | | | | | | 115 | | | | | | | | | | |
| | 16 | | | | | | | | | | | | 66 | | | | | | | | | | | | 116 | | | | | | | | | | |
| | 17 | | | | | | | | | | | | 67 | | | | | | | | | | | | 117 | | | | | | | | | | |
| | 18 | | | | | | | | | | | | 68 | | | | | | | | | | | | 118 | | | | | | | | | | |
| | 19 | | | | | | | | | | | | 69 | | | | | | | | | | | | 119 | | | | | | | | | | |
| | 20 | | | | | | | | | | | | 70 | | | | | | | | | | | | 120 | | | | | | | | | | |
| | 21 | | | | | | | | | | | | 71 | | | | | | | | | | | | 121 | | | | | | | | | | |
| | 22 | | | | | | | | | | | | 72 | | | | | | | | | | | | 122 | | | | | | | | | | |
| | 23 | | | | | | | | | | | | 73 | | | | | | | | | | | | 123 | | | | | | | | | | |
| | 24 | | | | | | | | | | | | 74 | | | | | | | | | | | | 124 | | | | | | | | | | |
| | 25 | | | | | | | | | | | | 75 | | | | | | | | | | | | 125 | | | | | | | | | | |
| | 26 | | | | | | | | | | | | 76 | | | | | | | | | | | | 126 | | | | | | | | | | |
| | 27 | | | | | | | | | | | | 77 | | | | | | | | | | | | 127 | | | | | | | | | | |
| | 28 | | | | | | | | | | | | 78 | | | | | | | | | | | | 128 | | | | | | | | | | |
| | 29 | | | | | | | | | | | | 79 | | | | | | | | | | | | 129 | | | | | | | | | | |
| | 30 | | | | | | | | | | | | 80 | | | | | | | | | | | | 130 | | | | | | | | | | |
| | 31 | | | | | | | | | | | | 81 | | | | | | | | | | | | 131 | | | | | | | | | | |
| | 32 | | | | | | | | | | | | 82 | | | | | | | | | | | | 132 | | | | | | | | | | |
| | 33 | | | | | | | | | | | | 83 | | | | | | | | | | | | 133 | | | | | | | | | | |
| | 34 | | | | | | | | | | | | 84 | | | | | | | | | | | | 134 | | | | | | | | | | |
| | 35 | | | | | | | | | | | | 85 | | | | | | | | | | | | 135 | | | | | | | | | | |
| | 36 | | | | | | | | | | | | 86 | | | | | | | | | | | | 136 | | | | | | | | | | |
| | 37 | | | | | | | | | | | | 87 | | | | | | | | | | | | 137 | | | | | | | | | | |
| | 38 | | | | | | | | | | | | 88 | | | | | | | | | | | | 138 | | | | | | | | | | |
| | 39 | | | | | | | | | | | | 89 | | | | | | | | | | | | 139 | | | | | | | | | | |
| | 40 | | | | | | | | | | | | 90 | | | | | | | | | | | | 140 | | | | | | | | | | |
| | 41 | | | | | | | | | | | | 91 | | | | | | | | | | | | 141 | | | | | | | | | | |
| | 42 | | | | | | | | | | | | 92 | | | | | | | | | | | | 142 | | | | | | | | | | |
| | 43 | | | | | | | | | | | | 93 | | | | | | | | | | | | 143 | | | | | | | | | | |
| | 44 | | | | | | | | | | | | 94 | | | | | | | | | | | | 144 | | | | | | | | | | |
| | 45 | | | | | | | | | | | | 95 | | | | | | | | | | | | 145 | | | | | | | | | | |
| | 46 | | | | | | | | | | | | 96 | | | | | | | | | | | | 146 | | | | | | | | | | |
| | 47 | | | | | | | | | | | | 97 | | | | | | | | | | | | 147 | | | | | | | | | | |
| | 48 | | | | | | | | | | | | 98 | | | | | | | | | | | | 148 | | | | | | | | | | |
| | 49 | | | | | | | | | | | | 99 | | | | | | | | | | | | 149 | | | | | | | | | | |
| | 50 | | | | | | | | | | | | 100 | | | | | | | | | | | | 150 | | | | | | | | | | |

JA1387



UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, D.C. 20231
www.uspto.gov

Bib Data Sheet

**CONFIRMATION NO. 3927**

| SERIAL NUMBER 09/872,736 | FILING DATE 06/01/2001 RULE | CLASS 709 | GROUP ART UNIT 2152 | ATTORNEY DOCKET NO. 10406/49 |
|---|---|---|---|---|

**APPLICANTS**
John K. Overton, Chicago, IL;
Stephen W. Bailey, Andover, MA;

** CONTINUING DATA **************************
THIS APPLICATION IS A CIP OF 09/661,222 09/13/2000
WHICH CLAIMS BENEFIT OF 60/153,709 09/14/1999    pvc  2/9/07
THIS APPLICATION 09/872,736
CLAIMS BENEFIT OF 60/209,070 06/02/2000

** FOREIGN APPLICATIONS *********************  NONE  pvc  2/9/07

IF REQUIRED, FOREIGN FILING LICENSE GRANTED** SMALL ENTITY **
** 08/02/2001

| Foreign Priority claimed ☐ yes ☒ no | STATE OR COUNTRY IL | SHEETS DRAWING 15 | TOTAL CLAIMS 45 | INDEPENDENT CLAIMS 6 |
|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance | | | | |
| Verified and Acknowledged    Examiner's Signature    Initials | | | | |

**ADDRESS**
BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO ,IL 60610

**TITLE**
Method and apparatus for managing location information in a network

| FILING FEE RECEIVED 765 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |

SEP 14 2004

FORM PTO-1449

| | | |
|---|---|---|
| FORM PTO-1449 | SERIAL NO. 09/872,736 | CASE NO. 11958/49 |
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | FILING DATE June 1, 2001 | GROUP ART UNIT 2152 |
| (use several sheets if necessary) | APPLICANT(S): J. Overton et al. | |

REFERENCE DESIGNATION        U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| MM | D1 | 4,835,372 | 05/1989 | Gombrich et al. | | |
| | D2 | 5,291,399 | 03/1994 | Chaco | | |
| | D3 | 5,475,817 | 12/1995 | Waldo et al. | | |
| | D4 | 5,479,654 | 12/1995 | Squibb | | |
| | D5 | 5,740,428 | 04/1998 | Mortimore et al. | | |
| | D6 | 5,903,889 | 05/1999 | de la Huerga et al. | | |
| | D7 | 5,918,241 5,918,214 | 06/1999 | Perkowski | | |
| | D8 | 6,108,787 | 08/2000 | Anderson et al. | | |
| | D9 | 6,131,095 | 10/2000 | Low et al. | | |
| | D10 | 6,154,873 | 11/2000 | Call | | |
| | D11 | 6,377,986 | 04/2002 | Philyaw et al. | | |
| | D12 | 6,418,441 | 07/2002 | Call | | |
| | D13 | 2002/0112048 | 08/2002 | Gruyer et al. | | |

| EXAMINER INITIAL | | OTHER ART – NON PATENT LITERATURE DOCUMENTS (Include name of author, title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date page(s), volume-issue number(s), publisher, city and/or country where published. |
|---|---|---|
| MM | D14 | Callaghan V L et al., "Structures and Metrics for Image Storage and Interchange" Journal of Electronic Imaging, Vol. 2, No. 2, 1 April 1993, pp. 126-137 |
| | D15 | "Method for Network Naming and Routing" IBM Technical Disclosure Bulletin, Vol. 37, No. 9, 1 September 1994, page 255 |
| | D16 | "Service Location in an Open Distributed Environment," Beitz et al., Second International Workshop on Services in Distributed and Networked Environments, IEEE Comput. Soc., June, 1995, pp. 28-34 |
| | D17 | Baer, Tony, "Tales from the Network", Computerworld Healthcare Journal, www.computerworld.com/news/1996/story/0,11280,14557,00.html, pp. 1-9, October 1, 1996 |

| EXAMINER M. Alexander | DATE CONSIDERED 5/25/06 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Rev. Dec.-99
\\fsv11\common\kgenin\Econnectix 11958\11958-49\11958-49 PTO 1449.4.doc

JA1389

SEP 1 4 2004

| FORM PTO-1449 | | | SERIAL NO. 09/872,736 | | CASE NO. 11958/49 | |
|---|---|---|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | | FILING DATE June 1, 2001 | | GROUP ART UNIT 2152 | |
| (use several sheets if necessary) | | | APPLICANT(S): J. Overton et al. | | | |

REFERENCE DESIGNATION          U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| MM | D1 | 4,835,372 | 05/1989 | Gombrich et al. | | |
| | D2 | 5,291,399 | 03/1994 | Chaco | | |
| | D3 | 5,475,817 | 12/1995 | Waldo et al. | | |
| | D4 | 5,479,654 | 12/1995 | Squibb | | |
| | D5 | 5,740,428 | 04/1998 | Mortimore et al. | | |
| | D6 | 5,903,889 | 05/1999 | de la Huerga et al. | | |
| | D7 | ~~5,918,241~~ 5,918,214 | 06/1999 | Perkowski | | |
| | D8 | 6,108,787 | 08/2000 | Anderson et al. | | |
| | D9 | 6,131,095 | 10/2000 | Low et al. | | |
| | D10 | ~~6,154,879~~ 6,154,738 | 11/2000 | Call | | |
| | D11 | 6,377,986 | 04/2002 | Philyaw et al. | | |
| | D12 | 6,418,441 | 07/2002 | Call | | |
| | D13 | 2002/0112048 | 08/2002 | Gruyer et al. | | |

CW 2/12/07

| EXAMINER INITIAL | | OTHER ART – NON PATENT LITERATURE DOCUMENTS (Include name of author, title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date page(s), volume-issue number(s), publisher, city and/or country where published. |
|---|---|---|
| MM | D14 | Callaghan V L et al., "Structures and Metrics for Image Storage and Interchange" Journal of Electronic Imaging, Vol. 2, No. 2, 1 April 1993, pp. 126-137 |
| | D15 | "Method for Network Naming and Routing" IBM Technical Disclosure Bulletin, Vol. 37, No. 9, 1 September 1994, page 255 |
| | D16 | "Service Location in an Open Distributed Environment," Beitz et al., Second International Workshop on Services in Distributed and Networked Environments, IEEE Comput. Soc., June, 1995, pp. 28-34 |
| | D17 | Baer, Tony, "Tales from the Network", Computerworld Healthcare Journal, www.computerworld.com/news/1996/story/0,11280,14557,00.html, pp. 1-9, October 1, 1996 |

| EXAMINER  M. Alponov | DATE CONSIDERED  5/25/06 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Rev. Dec.-99
\\fsv11\common\kgenin\Econnectix 11958\11958-49\11958-49 PTO 1449.4.doc

JA1390

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## *BIBDATASHEET*

Bib Data Sheet

**CONFIRMATION NO. 3927**

| SERIAL NUMBER 09/872,736 | FILING OR 371(c) DATE 06/01/2001 RULE | CLASS 709 | GROUP ART UNIT 2144 | ATTORNEY DOCKET NO. 10406/49 |
|---|---|---|---|---|

**APPLICANTS**
John K. Overton, Chicago, IL;
Stephen W. Bailey, Andover, MA;

** CONTINUING DATA ************************
This application is a CIP of 09/661,222 09/13/2000 PAT 7,103,640
and is a CIP of 09/503,441 02/14/2000 ABN
and is a CIP of 09/367,461 08/13/1999 ABN
and is a CIP of 09/111,896 07/08/1998 ABN
and claims benefit of 60/209,070 06/02/2000
and claims benefit of 60/277,408 03/19/2001

** FOREIGN APPLICATIONS *******************

IF REQUIRED, FOREIGN FILING LICENSE GRANTED
** 08/02/2001

| Foreign Priority claimed | ☒ yes ☐ no | STATE OR COUNTRY IL | SHEETS DRAWING 15 | TOTAL CLAIMS 45 | INDEPENDENT CLAIMS 6 |
|---|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met | ☒ yes ☐ no ☐ Met after Allowance | | | | |
| Verified and Acknowledged | Examiner's Signature        Initials | | | | |

**ADDRESS**
BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL60610

**TITLE**
METHOD AND APPARATUS FOR MANAGING LOCATION INFORMATION IN A NETWORK SEPARATE FROM THE DATA TO WHICH THE LOCATION INFORMATION PERTAINS

| FILING FEE RECEIVED 765 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |

JA1391

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail**  **Mail Stop ISSUE FEE**
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or **Fax**  (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

7590   02/13/2007

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

05/16/2007 LUQHDIH2 00000044 231925   09872736
01 FC:1501   1400.00 DA
02 FC:1504    300.00 DA



**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

| Kent E. Genin | (Depositor's name) |
| --- | --- |
| _[Signature]_ | (Signature) |
| May 14, 2007 | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 09/872,736 | 06/01/2001 | John K. Overton | 10406/49 | 3927 |

TITLE OF INVENTION: METHOD AND APPARATUS FOR MANAGING LOCATION INFORMATION IN A NETWORK SEPARATE FROM THE DATA TO WHICH THE LOCATION INFORMATION PERTAINS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | NO | $1400 | $300 | $0 | $1700 | 05/14/2007 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
| --- | --- | --- |
| KANG, PAUL H | 2144 | 709-217000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1  Brinks Hofer Gilson & Lione

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

| (A) NAME OF ASSIGNEE | (B) RESIDENCE (CITY and STATE OR COUNTRY) |
| --- | --- |
| Econnectix, LLC | Chicago, Illinois |

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:

☒ Issue Fee

☒ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number 23-1925   (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.   ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _[Signature]_   Date May 14, 2007

Typed or printed name  Kent E. Genin   Registration No. 37,834

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.   OMB 0651-0033   U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

JA1392

CERTIFICATE OF MAILING UNDER 37 C.F.R. §1.8

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail, with sufficient postage, in an envelope addressed to: Commissioner for Patents, P. O. Box 1450, Alexandria, VA 22313-1450, on the below date:

Date: May 14, 2007       Name: Kent E. Genin       Signature:

**BRINKS**
**HOFER**
**GILSON**
**&LIONE**

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of:   J. Overton et al.

| Appln. No.: | 09/872,736 | Examiner:  P. Kang |
| Filed: | June 1, 2001 | Art Unit:  2144 |

For:   Method And Apparatus For Managing Location Information In A Network Separate From The Data To Which The Location Information Pertains

Attorney Docket No:     11958/49

Mail Stop Issue Fee
Commissioner for Patents
P. O. Box 1450
Alexandria, VA  22313-1450

## TRANSMITTAL

Sir:

**Attached is/are**:

☒   Transmittal (in duplicate); Issue Fee Transmittal (in duplicate); Comments On Statement Of Reasons For Allowance

☒   Return Receipt Postcard

**Fee calculation:**

☐   No additional fee is required.

☒   Small Entity.

☐   An extension fee in an amount of $_____ for a _____-month extension of time under 37 C.F.R. § 1.136(a).

☐   A petition or processing fee in an amount of $_____ under 37 C.F.R. § 1.17(_____).

☐   An additional filing fee has been calculated as shown below:

| | Claims Remaining After Amendment | | Highest No. Previously Paid For | Present Extra | Small Entity | | or | Not a Small Entity | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Rate | Add'l Fee | | Rate | Add'l Fee |
| Total | | Minus | | | x $25= | | | x $50= | |
| Indep. | | Minus | | | x 100= | | | x $200= | |
| First Presentation of Multiple Dep. Claim | | | | | +$180= | | | + $360= | |
| | | | | | Total | $ | | Total | $ |

**Fee payment:**

☐   A check in the amount of $_____ is enclosed.

☒   Please charge Deposit Account No. 23-1925 in the amount of $1000.  A copy of this Transmittal is enclosed for this purpose.

☐   Payment by credit card in the amount of $_____ (Form PTO-2038 is attached).

☒   The Director is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925.

Respectfully submitted,

Date   May 14, 2007                                      Kent E. Genin (Reg. No. 37,834)

**BRINKS HOFER GILSON & LIONE**
NBC Tower – Suite 3600, 455 N. Cityfront Plaza Drive, Chicago, IL  60611-5599

**BRINKS**
**HOFER**
**GILSON**
**&LIONE**

JA1393

I hereby certify that this correspondence is being deposited with the United States Postal Service, with sufficient postage, as first class mail in an envelope addressed to:

Mail Stop Issue Fee
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450
on May 14, 2007
_____
Date of Deposit

_____
Kent E. Genin
Name of applicant, assignee or
Registered Representative

_____
Signature

_____
Date of Signature

Attorney Docket No. 11958/49

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: | ) |
| | ) |
| J. Overton et al. | ) |
| | ) Examiner:  P. Kang |
| Serial No. 09/872,736 | ) |
| | ) Group Art Unit:  2144 |
| Filing Date:  June 01, 2001 | ) |
| | ) |
| For :   Method And Apparatus For | ) |
|        Managing Location Information In A | ) |
|        Network Separate From The Data | ) |
|        To Which The Location Information | ) |
|        Pertains | ) |

### Comments on Statement of Reasons for Allowance

Mail Stop Issue Fee
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

In response to the Notice of Allowance dated February 13, 2006, Applicants provide the following comments on the Examiner's Statement of Reasons for Allowance:

JA1394

Reasons for allowance are only warranted in instances in which "the record of the prosecution as a whole does not make clear the Examiner's reasons for allowing a claim or claims." 37 C.F.R. 1.104(e). In the present case, Applicants believe the record as a whole makes clear the reasons for allowance and therefore no statement by the Examiner is necessary or warranted. Therefore, the record should reflect that Applicants do not necessarily agree with the limited statement in the reasons for allowance.

For example, the Examiner recites only general inventive concepts in the Statement of Reasons for Allowance, which purportedly apply to all of the claims of the application. Applicants' claims should be limited only by the terms utilized therein. Thus, Applicants hereby submit these Comments in an effort to ensure that the claims are properly construed based only upon limitations that are actually present therein and/or to ensure that the claims are not interpreted so as to include any additional claim limitations that are not found in the respective claims.

Should there be any outstanding matters that need to be resolved in the present application, the Examiner is respectfully requested to contact the undersigned. If necessary, the Commissioner is hereby authorized in this, concurrent, and future replies, to charge payment or credit any overpayment to Deposit Account No. 23-1925 for any additional fees required under 37 C.F.R. § 1.16 or under 37 C.F.R. § 1.17; particularly, extension of time fees.

Respectfully submitted,

Kent E. Genin
Registration No. 37,834
Attorney for Applicants

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, ILLINOIS 60610
(312) 321-4200

Page 2 of 2

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## *BIBDATASHEET*

Bib Data Sheet

**CONFIRMATION NO. 3927**

| SERIAL NUMBER 09/872,736 | FILING OR 371(c) DATE 06/01/2001 RULE | CLASS 709 | GROUP ART UNIT 2144 | ATTORNEY DOCKET NO. 10406/49 |
|---|---|---|---|---|

**APPLICANTS**

John K. Overton, Chicago, IL;
Stephen W. Bailey, Andover, MA;

**\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

This application is a CIP of 09/661,222 09/13/2000 PAT 7,103,640
and is a CIP of 09/503,441 02/14/2000 ABN
and is a CIP of 09/367,461 08/13/1999 ABN
and is a CIP of 09/111,896 07/08/1998 ABN
and claims benefit of 60/209,070 06/02/2000
and claims benefit of 60/277,408 03/19/2001

**\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**IF REQUIRED, FOREIGN FILING LICENSE GRANTED \*\*** SMALL ENTITY **\*\***
**\*\* 08/02/2001**

| Foreign Priority claimed ☐ yes ☐ no | | STATE OR COUNTRY IL | SHEETS DRAWING 15 | TOTAL CLAIMS 45 | INDEPENDENT CLAIMS 6 |
|---|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance | | | | | |
| Verified and Acknowledged _____ Examiner's Signature _____ Initials | | | | | |

**ADDRESS**

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL60610

**TITLE**

METHOD AND APPARATUS FOR MANAGING LOCATION INFORMATION IN A NETWORK SEPARATE
FROM THE DATA TO WHICH THE LOCATION INFORMATION PERTAINS

| FILING FEE RECEIVED 1065 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |

JA1396



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/872,736 | 06/19/2007 | 7233978 | 10406/49 | 3927 |

7590        05/30/2007

BRINKS HOFER GILSON & LIONE
P.O. BOX 10395
CHICAGO, IL 60610

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 810 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

John K. Overton, Chicago, IL;
Stephen W. Bailey, Andover, MA;

IR103 (Rev. 11/05)

**JA1397**