IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOVE IO, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:18-cv-08175 |
| AMAZON WEB SERVICES, INC., ) | |
| ) | Hon. Rebecca R. Pallmeyer |
| Defendant. ) | |
| ) | |
| ) | |

**AMAZON WEB SERVICES, INC.'S MEMORANDUM IN OPPOSITION TO KOVE IO, INC.'S MOTION TO COMPEL AWS TO PRODUCE FINANCIAL INFORMATION**

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
aunikowsky@jenner.com

Terri L. Mascherin
Timothy J. Barron
Michael T. Werner
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
tmascherin@jenner.com
tbarron@jenner.com
mwerner@jenner.com

*Attorneys for Amazon Web Services, Inc.*

The Court should deny Kove's motion to compel production of sensitive financial information concerning products with no relevance to this litigation.

Defendant Amazon Web Services, Inc. ("AWS") has produced abundant financial information to Kove, including detailed financial records regarding the two accused products, as well as high-level financial information regarding AWS as a whole. Yet Kove now claims that this is insufficient, and that Kove is entitled to additional financial information that is not limited to the accused products—including "cash flow statements, income statements, balance sheet statements, and profit-and-loss statements, as well as any contemporaneously created financial disclosures or explanatory footnotes." Dkt. 212 at 2.

Kove's motion should be denied. Kove is not entitled to financial discovery on the full slate of AWS's product offerings. Kove's brief does not cite a single case from any court authorizing discovery remotely similar to the discovery Kove seeks. All of the cases that Kove cites merely recite the general legal standards for relevance and the determination of a reasonable royalty. Meanwhile, a wall of case law establishes that the information Kove seeks is not discoverable. These cases reach the unremarkable conclusion that financial information regarding products not accused of infringement is irrelevant to the determination of a reasonable royalty for products that are accused of infringement. The Court should follow that established law and deny Kove's motion to compel.

## BACKGROUND

AWS provides dozens of cloud-based Internet products, including products in the areas of computing, storage, database, analytics, and networking.[1] Kove accuses only two of those

---

[1] *See generally* https://aws.amazon.com/products/.

1

products of infringement: S3 and DynamoDB. S3 provides users with secure data storage, while DynamoDB provides users with access to a secure database.

Kove has served far-reaching discovery requests seeking a wide array of financial information. AWS has sought to comply with these discovery requests in good faith and has produced a wealth of financial information on the accused products, including monthly and annual data on net revenues, costs, and profits.

During discovery, Kove has taken the position that AWS company-wide financial information concerning *all* of AWS's products—not just S3 and DynamoDB—is relevant to the determination of a reasonable royalty. Hence, Kove has sought revenue, profit, and cost information regarding AWS as a whole, even though the vast majority of AWS's products are not accused of infringement. AWS strongly disagrees that such financial information is relevant under the Federal Rules, and would seek to exclude any expert testimony purporting to rely on such information. Nevertheless, in an effort to reach compromise and avoid taxing judicial resources, AWS agreed to produce certain company-level financial information.

First, AWS produced its 10-K and 10-Q statements, which began reporting AWS-level financial information in 2015. When Kove responded that this was not sufficient, AWS produced a spreadsheet containing AWS-level financial information from 2009 to 2020. This spreadsheet contains AWS's annual revenues, contribution profits, fixed costs, and operating income. *See* Exs. M, N to Kove's Motion, Dkt. 212-13, 212-14.

On September 30, 2020, Kove advised AWS that even this information was insufficient for Kove's purposes, ostensibly because it failed to include the "contemporaneously created financial disclosures that typically accompany and explain such statements." Ex. 1. However, AWS did not withhold any "financial disclosures": AWS did not begin reporting AWS-level

2

financial information on its 10-K and 10-Q statements until 2015, and it produced all of those statements and accompanying disclosures. Nonetheless, Kove filed its motion to compel two days later.

After Kove filed its motion, in an effort to settle this dispute, AWS produced additional company-wide financial information containing a more granular breakdown of costs (although AWS maintains that this information is categorically irrelevant). However, Kove declined to withdraw its motion to compel, asserting that the new information is insufficient because it aggregates fixed costs into "broad single line items" and does not "break down these aggregated cost line items." Ex. 2.[2] Because AWS believes that even this financial information is not relevant under the Federal Rules, and that Kove has no basis for seeking even more detailed financial information, AWS now opposes the motion to compel.

## ARGUMENT

The Court should deny Kove's motion to compel because Kove improperly seeks financial information concerning products that are not accused of infringement. Kove accuses only two AWS products—S3 and DynamoDB—of infringement, and AWS has produced financial information related to those products. Yet Kove now seeks aggregate financial information on *all* of AWS's products, the vast majority of which are not accused of infringement.

Kove cites no case that comes close to holding that such discovery requests are permissible. Instead, Kove relies on cases reciting, generally, that "[t]here is a strong policy for a broad type of discovery." Dkt. 212 at 4 (quoting *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 2005 WL 1300778, at *1 (N.D. Ill. Apr. 28, 2005)). Case law addressing the specific issue before the Court—the discoverability of company-wide financial information or financial information on products that

---

[2] Kove also objected that the documents covered an insufficient time period. Ex. 2.

3

are not accused of infringement—is abundant, and it overwhelmingly goes against Kove. In case after case, courts have denied the type of far-reaching and intrusive discovery Kove seeks here. The Court should follow that unbroken line of authority.

I. **AWS's Company-Level Financial Information is Irrelevant.**

The Court should deny discovery on AWS's aggregate financial information because it is irrelevant to the calculation of a reasonable royalty.

Under the Patent Act, a plaintiff may recover "a reasonable royalty *for the use made of the invention by the infringer*." 35 U.S.C. § 284 (emphasis added). To that end, courts "must carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). "Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute." *Id.*

It follows from that principle that "where a damages model apportions from a royalty base, the model should use the smallest salable patent-practicing unit as the base." *Commonwealth Sci. and Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015). Moreover, "[e]ven when a damages theory relies on the smallest salable unit as the basis for calculating the royalty, the patentee must estimate what portion of that smallest salable unit is attributable to the patented technology when the smallest salable unit itself contains several non-infringing features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018).

Thus, if Kove can prove infringement, Kove must isolate the smallest salable patent-practicing unit of the accused products; then estimate what portion of that smallest salable unit is attributable to the allegedly patented technology; and then use *that* portion of a portion of the accused products as a basis for determining a reasonable royalty.

The Federal Circuit has identified only one "narrow exception" to this "general rule." "Under the entire market value rule, if a party can prove that the patented invention drives demand for the accused end product, it can rely on the end product's entire market value as the royalty base." *Commonwealth Scientific*, 809 F.3d at 1302. However, the Federal Circuit has "cautioned against reliance on use of the entire market value of a multi-component product that includes a patented component because it cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Power Integrations*, 904 F.3d at 977 (quotation marks omitted). "Admission of evidence of the entire market value only serves to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is adequate to compensate for the infringement." *Id.* (quotation marks and brackets omitted).

In this case, AWS strongly disputes that the "entire market value rule" applies. AWS will argue vigorously that even if there is infringement, Kove must isolate the relevant portion of the smallest salable component of the accused products. However, *even if* the "entire market value rule" applies, then *at most* Kove could rely on the entire market value of the accused products— *i.e.*, S3 and DynamoDB. It may not rely on all of AWS's products as its basis for calculating a reasonable royalty.

Here, Kove seeks financial information not only for S3 and DynamoDB as a whole, but for all of AWS, including products that have nothing to do with the accused products and could not possibly be the basis for calculating a reasonable royalty. That information is simply irrelevant— as numerous courts confronting the identical issue have held.

For instance, in *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 1:CV-09-1685, 2011 WL 13199148 (M.D. Pa. Dec. 21, 2011), the court denied the patent

plaintiff's motion to compel discovery of "company-wide financial summaries," finding that the plaintiff "fail[ed] to establish the relevance" of those documents. *Id.* at *1. The court rejected the plaintiff's argument "that the financial documents are relevant to calculating a reasonable royalty." *Id.* Instead, it agreed with the defendant that "reasonable royalties are calculated with respect to specific infringing products, not company-wide finances, and the requested documents are company-wide financial statements that take into account numerous products *not* at issue in the instant case." *Id.* The court declined to order production of such "sensitive, confidential financial records" given that the "alleged relevance of the documents" was so "marginal and speculative." *Id.* at *2.

Likewise, in *C&C Jewelry Mfg., Inc. v. West*, No. C09-01303 JF (HRL), 2011 WL 2559638 (N.D. Cal. June 28, 2011), the court denied the patent plaintiff's motion to compel discovery relating to the defendant's "overall profitability, including revenues derived from non-accused products." *Id.* at *1. The court rejected the plaintiff's argument that this information "is relevant to the determination of a reasonable royalty." *Id.* The court identified "no binding precedent holding that the overall financial condition of an accused infringer is *per se* relevant to the determination of a reasonable royalty." *Id.* The court was "unconvinced" that sales of "non-accused products … have any relevance to the accused [products]." *Id.* "There is nothing in the record presented to suggest, for example, that sales of [the defendant's] other products are driven by or otherwise connected to" the accused products. *Id.*

Similarly, in *Generac Power Sys., Inc. v. Kohler Co.*, No. 11–CV–1120–JPS, 2012 WL 2049945 (E.D. Wis. June 6, 2012), the patent plaintiff sought discovery on "cost bases," "balance sheets," and "annual reports." *Id.* at *3. The defendant objected to the requested discovery, insisting that "it has provided… all pertinent financial documents regarding the allegedly-

6

infringing product, and that any remaining documents sought by [the plaintiff] relate more broadly to the full stable of … products." *Id.* The court denied the plaintiff's motion to compel, finding that because the plaintiff had not accused the full stable of products of infringement, there was "no reasonable purpose for gathering information on the full stable" of products. *Id.* The court also noted that "financial documents provide distinct insight into the business of their owner" and declined to require production of such "sensitive" information. *Id.*

Yet another example is *Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. 14–3103 (SRN/FLN), 2016 WL 6908109 (D. Minn. Jan. 11, 2016), in which the court denied the patent plaintiff's motion to compel discovery on "company-level financial data," such as documents identifying "gross profits, net profits, and operating costs." *Id.* at *1. Reciting the principle that courts "must carefully tie proof of damages to the claimed invention's footprint in the market place," the court held that "company-level financial data" that "encompasses information unrelated to damages for the patents-in-suit" is "not relevant" to the plaintiff's claims. *Id.* at *1-2; *see also, e.g.*, *Carolina Waterworks, Inc. v. Taylor Made Group, LLC*, No. 2:12-CV-02568-DCN, 2013 WL 4018678, at *2-3 (D.S.C. Aug. 6, 2013) (denying patent plaintiff's motion to compel discovery on "[b]alance sheets of each Defendant on a monthly, quarterly, and annual basis (both audited and unaudited)" because the balance sheets "would not provide any financial information that would enable [plaintiff] to calculate what a reasonable royalty would be"); *Crystal Photonics, Inc. v. Siemens Med. Sols. USA, Inc.*, No. 6:11-cv-1118-Orl-31DAB, 2013 WL 12158132, at *1 (M.D. Fla. Aug. 23, 2013) (denying patent plaintiff's motion to compel "information regarding *all* goods

7

sold, company and division wide" and finding that "the financial information sought here is not limited to the … products relevant to determine reasonable royalties").[3]

Strikingly, Kove does not cite any case law supporting its position that company-wide financial information that includes non-accused products is discoverable. The Court should follow this consistent line of cases and hold that Kove is not entitled to the discovery that it seeks.

## II. Kove's arguments for seeking AWS-level financial information do not hold water.

Kove offers three theories for why AWS-level financial information is relevant. None of these theories has been accepted by any court, and none has any merit.

### A. Cost allocation

Kove's first theory is as follows:

> AWS-level financials are necessary to evaluate whether AWS has costs that accrue at the unit (rather than product) level that should be allocated across products. The AWS-level financial information should contain notes and calculations that bear on how to allocate any such costs among the various products in the unit. Allocating those unit-level costs allows isolation of the profits attributable to infringement—the core question under the income approach.

Dkt. 212 at 6. According to Kove, AWS's product-level financial statements are insufficient because they "aggregate the fixed costs into broad line items," so there is "no way to tell what discrete costs are included in these aggregated line items." *Id.*; *see id.* at 7 (same).

---

[3] For the same reasons, courts routinely grant motions *in limine* and exclude company-wide financial evidence at trial, deeming such information irrelevant or more prejudicial than probative. *See, e.g.*, *Pavo Solns. LLC v. Kingston Tech. Co.*, No. 8:14-cv-01352-JLS-KES, 2019 WL 8138163, at *6-7 (C.D. Cal. 2019); *Carucel Investments, L.P. v. Novatel Wireless, Inc.*, No. 16-cv-118-H-KSC, 2017 WL 1215838, at *19-20 (S.D. Cal. Apr. 3, 2017); *Finjan, Inc. v. Blue Coat Sys., Inc.,* No. 13–cv–03999–BLF, 2015 WL 4129193, at *4 (N.D. Cal. July 8, 2015); *World Wide Stationary Mfg., Co. v. Bensons Int'l Sys., Inc*., No. 3:11 CV 523, 2012 WL 12894226, at *3-4 (N.D. Ohio Sept. 12, 2012); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1319 (Fed. Cir. 2011) (affirming grant of new trial when plaintiff's expert testified regarding aggregate revenues of accused products, rather than portion attributable to accused functionality).

8

Kove's explanation is both unprecedented and illogical. To begin, Kove's argument has no case law support. AWS is unaware of any patent case in which a court has ordered production of company-wide financial information based on the theory of cost allocation that Kove posits. Similarly, AWS is unaware of any patent case in which an expert has relied on company-wide financial information based on such a theory.

None of Kove's cases remotely suggests that company-wide financial information is discoverable. Kove relies on *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 2014 WL 5080411, at *4 (W.D. Wis. Oct. 9, 2014) (Dkt. 212 at 5), but that case merely recites the general legal standard for determining a reasonable royalty and then excludes an expert's testimony because it impermissibly involves "the subtraction of averages for two different time periods." *Id.* at *4. The case has nothing to do with the discoverability of company-wide financial information. Likewise, the Federal Circuit cases cited by Kove (Dkt. 212 at 5) merely recite the general legal standard for calculating a reasonable royalty and say nothing that endorses Kove's approach.

Kove's reasoning is also illogical. Kove acknowledges that AWS served documents in discovery identifying DynamoDB and S3's fixed costs. Dkt. 212 at 6. Kove claims that this product-specific cost information is insufficiently granular because Kove cannot disentangle which of those costs are expended on DynamoDB and S3 only, and which are expended on multiple products. Even if that were true, Kove's alleged need to seek more granular information on *DynamoDB and S3*'s cost inputs does not justify seeking aggregate financial information for *all AWS products*. Kove's complaint—that it does not fully understand the cost structure of the two specific accused products—has no relationship to what Kove seeks in discovery—company-wide financial information not limited to the accused products.

9

### B. Convoyed sales

Next, Kove claims it is entitled to discovery on non-accused products because a reasonable royalty might be affected by "convoyed sales—that is, the additional profit a licensee could make from *other products* by selling the licensed product." Dkt. 212 at 8. As a multitude of courts have held, Kove's speculation regarding "convoyed sales" is an insufficient basis to order discovery regarding non-accused products.

"A 'convoyed sale' refers to the relationship between the sale of a patented product and a functionally associated nonpatented product." *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008). "A patentee may recover lost profits on unpatented components sold with a patented item, a convoyed sale, if both the patented and unpatented products together were considered to be components of a single assembly or parts of a complete machine, or they together constituted a functional unit." *Id.* (quotation marks omitted). However, the Federal Circuit "has not extended liability to include items that have essentially no functional relationship to the patented invention and that may have been sold with an infringing device only as a matter of convenience or business advantage." *Id.* (quotation marks omitted). "Damages on these items would exceed that which suitably compensates for the infringement." *Id.*

Here, Kove does not identify any other AWS product that is part of a "functional unit" with S3 or DynamoDB. Indeed, it does not identify any other AWS product at all. It argues only that convoyed sales are "likely significant here, because the accused products involve foundational technology that enabled AWS's broader market gains." Dkt. 212 at 8. Based on that vague statement, it seeks aggregate financial information on *all* products sold by AWS.

10

Kove cites no case allowing discovery on this basis. Moreover, several cases reject Kove's argument, holding that a plaintiff may not obtain discovery on a "convoyed sales" theory unless it identifies a specific product with a functional relationship to the accused product.

For instance, in *RTC Indus., Inc. v. Fasteners for Retail, Inc.*, No. 1:17-cv-03595, Dkt. 313 (N.D. Ill. Nov. 26, 2019) (Magistrate Judge Schenkier), the plaintiff moved to compel discovery on "all sales of any product sold to [the defendant's] customer that purchased an Accused Product, without any regard as to whether the other products are functionally related to the Accused Products." *Id.* at 2. Like Kove, the plaintiff contended that this information was relevant to the determination of a reasonable royalty. *Id.* The court denied the plaintiff's motion to compel. It concluded that the plaintiff "seeks discovery of information that does not fit the definition of convoyed sales set forth by the Federal Circuit in *American Seating Co.*, and RTC has offered nothing to support the proposition that the definition of that term in the context of a reasonable royalty analysis sweeps as broadly as it claims." *Id.* The court explained that there was "no evidence that [the defendant's] sales of accused products to customers provided the foot in the door that then allowed it to sell other, wholly unrelated products to those customers." *Id.*

Likewise, in *BASCOM Global Internet Servs., Inc. v. AT&T Corp.*, No. 3:14-CV-3942-M, 2017 WL 11490077 (N.D. Tex. July 31, 2017), the court denied the plaintiff's motion to compel production of revenue information for "all AT&T products and services from its sales to customers of the Accused Offerings." *Id.* at *2. The plaintiff argued that other bundled offerings "should be considered as convoyed sales associated with the Accused Offerings" and hence were relevant to the determination of a reasonable royalty. *Id.* The court rejected this argument, finding that the plaintiff had not adequately shown a "functional relationship between the Accused Offerings and any other AT&T product or service" and therefore "failed to make a preliminary showing of

11

relevance for the discovery of revenue for all AT&T products and services sold to a customer of the Accused Offerings." *Id.*

Yet another example is *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2015 WL 2357685 (N.D. Cal. May 15, 2015), in which the plaintiff sought financial discovery on certain products and services that interfaced with the accused products. *Id.* at *1. The plaintiff asserted that the sought-after financial information was relevant to a reasonable royalty under a "convoyed sales theory." *Id.* at *4. The court denied the plaintiff's motion to compel. The court pointed out that the plaintiff did not "identify specific products that were relevant to its royalty analysis," did not "articulate a theory as to how the sales of the particular products were connected to the sales of the infringing products," and did not limit its discovery request to sales of other products "using the accused products." *Id.* The court concluded: "[B]ased upon [the plaintiff's] inability to articulate any theory of damages that involved specific Oracle database or application products, the requested information was not reasonably calculated to lead to any admissible evidence." *Id.* at *5; *accord Bobrick Washroom Equip., Inc. v. Am. Specialties, Inc.*, No. CV 10-6938-SVW (PLAx), 2011 WL 13128374, at *2 (C.D. Cal. Sept. 23, 2011) (denying motion to compel production of financial documents relating to non-accused products, and rejecting plaintiff's "convoyed sales" theory because non-accused products were not functionally related to accused products).

Those cases establish that Kove's "convoyed sales" argument fails. Kove does not identify any particular product with a "functional relationship" to the accused products, and does not tailor its discovery requests to any products that might involve "convoyed sales." Instead, it seeks discovery on *all* products based on vague speculation that convoyed sales are "likely significant."

12

Dkt. 212 at 8. This speculation is not a sufficient basis for Kove's far-reaching discovery request on non-accused products.

### C. Similar non-infringing products

Finally, Kove contends in conclusory fashion that AWS-level financial information would allow Kove to compare the profits of the accused products with "related non-infringing products." Dkt. 212 at 8. But Kove does not identify *any* "related non-infringing products," much less make a showing that is entitled to revenue information on *all* of AWS's products.

Courts have taken two approaches to discovery disputes involving non-accused products: some courts have denied discovery on any products other than those specifically named in the infringement contentions, while others have permitted targeted discovery on specific products that are "reasonably similar" to the accused product. *See, e.g.*, *SPH Am. LLC v. Research in Motion, Ltd.*, No. 13cv2320 CAB (KSC), 2016 WL 6304510, at *2-3 (S.D. Cal. June 30, 2016) (holding that patent plaintiff was not entitled to discovery on any non-accused product, but noting that some courts had permitted discovery on non-accused products that were "reasonably similar" to accused product). But "at its broadest, the case law provides only that a party may request discovery of devices reasonably similar to accused devices—not of all devices in a party's inventory to determine whether any are reasonably similar." *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-cv-00772-GMN-NJK, 2015 WL 13238450, at *4 (D. Nev. Dec. 18, 2015); *accord Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-871-LPS-CJB, 2018 WL 1392341, at *3 (D. Del. Feb. 12, 2018).

Here, Kove has requested financial discovery on all products in AWS's inventory based on the vague speculation that some unspecified number of them might be similar to the accused

13

products and hence relevant to the reasonable royalty analysis in an unspecified way. No court ever has compelled discovery based on such a weak showing of relevance.

## CONCLUSION

For the reasons set forth above, AWS respectfully requests that the Court deny Kove's Motion to Compel.

October 23, 2020

Respectfully submitted,

*/s/ Terri L. Mascherin*

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
aunikowsky@jenner.com

Terri L. Mascherin
Timothy Barron
Michael T. Werner
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
tmascherin@jenner.com
tbarron@jenner.com
mwerner@jenner.com

*Attorneys for Amazon Web Services, Inc.*

**CERTIFICATE OF SERVICE**

I, Timothy Barron, an attorney at the law firm of Jenner & Block LLP, certify that on October 23, 2020, the foregoing AWS's Memorandum in Opposition to Kove IO, Inc.'s Motion to Compel AWS To Produce Financial Information was electronically served on counsel of record via the Court's ECF system.

>/s/Timothy J. Barron
> Timothy J. Barron