IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Hon. Rebecca R. Pallmeyer |
| v. | Jury Trial Demanded |
| Amazon Web Services, Inc., | |
| Defendant. | |

**KOVE IO, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL
AMAZON WEB SERVICES, INC. TO PRODUCE FINANCIAL INFORMATION**

1

Plaintiff Kove IO, Inc. ("Kove") submits this reply brief in support of its Motion to Compel Defendant Amazon Web Services, Inc. ("AWS") to Produce Financial Information (Dkt. 212).

I. **INTRODUCTION**

AWS offers only one reason to deny Kove's Motion to Compel: relevance. Notably, it does not assert undue burden from production in its opposition brief, nor does it contest that the financial statements Kove requests could be easily produced out of AWS's existing accounting files. This leaves only the question of relevance, which is a very low bar for purposes of discovery. Discovery is freely permitted when relevant or likely to lead to the discovery of admissible evidence. Kove readily surpasses this low bar. The financial information it seeks is relevant both because it shows costs associated with the accused products *and* because it contains data about non-accused products for purposes of determining a reasonable royalty.

AWS's brief focuses on arguing the merits of potential damages theories and the ultimate admissibility of evidence. Neither of these are appropriate grounds to bar discovery in the first place. The case law is uniform that both questions should be taken up later, only after Kove has the opportunity to review AWS's records and develop its own arguments. Under AWS's theory, Kove must first prove the merits case before it is entitled to discovery, which has never been the law.

Kove has articulated damages theories well-grounded in the case law. It has requested documents necessary to meet the legal standards. There is no burden in producing these documents. Accordingly, AWS should be ordered to produce them forthwith.

II. **ARGUMENT**

"Relevance, particularly in the discovery phase, is a low bar to meet." *DeLeon-Reyes v. Guevara*, 2020 WL 1429521, at *4 (N.D. Ill. Mar. 18, 2020). To be relevant, evidence need only have "any tendency" to make a material fact more or less probable. Fed. R. Evid. 401. Relevance in discovery "has been broadly construed 'to encompass any matter that bears on, or that reasonably

could lead to other matter that could bear on, any issue that is or may be in the case.'" *TIG Ins. Co. v. Giffin, Winning, Cohen & Bodewes*, 2001 WL 969037, at *1 (N.D. Ill. Aug. 24, 2001) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). "Discovery is not the time to spin the facts; all evidence that is relevant, or likely to lead to the discovery of admissible evidence is fair game." *Yahnke v. Cty. of Kane*, 2014 WL 1673739, at *5 (N.D. Ill. Apr. 28, 2014).

Here, the AWS-level financial statements Kove seeks easily clear the low bar for relevance in discovery. First, the AWS-level financial statements contain otherwise-undisclosed, relevant information about the costs associated with the accused products. Second, the financial statements contain information about related non-accused products. The finances of those related products are also relevant to damages, because they may demonstrate convoyed sales or help prove the benefits of the infringing products over similar non-infringing products — both relevant factors under the *Georgia-Pacific* framework for calculating a reasonable royalty.

### A. The AWS-Level Financial Statements Are Relevant To Allocating Costs To The Accused Products.

The missing financial documents include relevant cost information. Kove's opening brief explains at length the importance of cost information about the accused products to the overall damages analysis. *See* Motion to Compel, Dkt. 212, at 5-6 (explaining that "[d]ata at the AWS level will permit Kove to calculate profits associated with S3 and DynamoDB specifically" because the AWS-level data would show "costs that accrue at the unit (rather than product) level that should be allocated across products" and "contain notes and calculations that bear on how to allocate any such costs among the various products in the unit"). The costs associated with the accused product are also directly relevant to several *Georgia-Pacific* factors including "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity," "[t]he portion of the profit or of the selling price that may be customary in the particular business or in comparable

businesses to allow for the use of the invention or analogous inventions," and "[t]he portion of the realizable profit that should be credited to the invention . . . ." *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

The financial statements for the AWS unit, which includes both accused and non-accused products, contain information bearing on the *accused products* that has not otherwise been disclosed. Without these statements, Kove can rely only on the product-level financial documents AWS has chosen to produce, which do not tell the whole story.[1] But these product-level financial documents aggregate all costs into broad line items. *See* Dkt. 212 at 6. For example, AWS's financial statements for S3 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ *See* Dkt. 212-11. Likewise, for DynamoDB, ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ *See* Dkt. 212-12.[2] Kove has no way of discerning what costs are included in each of these broad categories. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ But without the unit-level financial statements, Kove does not know *how* costs are allocated to S3 and DynamoDB in comparison to other products in the unit that share the same costs. Kove is entitled to the unit-level financial statements so that it can contest the allocations, if it sees fit. Without it, Amazon's cost

---

[1] AWS did not object to the request for product-level financial statements but rather claims to have produced the responsive documents. Thus, there do not appear to be any additional, yet-to-be-produced financial statements at the product level.

[2] In opposition, AWS identifies no more-detailed product-level cost data it has produced.

information may overstate the costs attributable to the accused products, and Kove is left without information needed to contest this overstatement.

AWS does not engage with the idea that the AWS-level financial statements contain information about costs associated with the accused products. Instead, AWS responds with a series of cases holding that financial documents are not relevant when they contain new information only about *non-accused* products. These cases, all out-of-circuit, are inapposite because the plaintiffs in those cases did not argue that they were missing relevant information about the *accused products* that could only be obtained from higher-level financial statements. For example, in *C&C Jewelry*, the court denied discovery regarding the "revenues derived from non-accused products" when the defendant had already produced "financial information relating to the accused products" and the plaintiff did not argue any necessary data was missing relating to the accused products. *C&C Jewelry Mfg., Inc. v. West*, 2011 WL 2559638, at *1 (N.D. Cal. June 28, 2011) (rejecting argument "that the overall financial condition of an accused infringer is *per se* relevant to the determination of a reasonable royalty"). Similarly, in *Generac Power*, the defendant "provided [the plaintiff] with all pertinent financial documents regarding the allegedly-infringing product," and the plaintiff did not argue that any necessary financial data relevant to the accused product was missing. *Generac Power Sys., Inc. v. Kohler Co.*, 2012 WL 2049945, at *3 (E.D. Wis. June 6, 2012); *see also Carolina Waterworks, Inc. v. Taylor Made Grp., LLC*, 2013 WL 4018678, at *3 (D.S.C. Aug. 6, 2013) (denying motion to compel only after concluding that the disputed financial statements "would not provide any financial information that would enable [the plaintiff] to calculate what a reasonable royalty would be" and that the defendant had already provided all relevant information about the accused products); *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 2016 WL 6908109, at *2 (D. Minn. Jan. 11, 2016) (concluding without explanation that the plaintiff's "request for company-level

5

financial data encompasses information unrelated to damages for the patents-in-suit," in the absence of any identifiable missing data about the accused products that would be disclosed on the company-level statements).[3]

In contrast to these cases, Kove does not argue that it is entitled to company-level financial statements because the "overall financial condition" of AWS is relevant. Instead, it has identified a specific category of financial data — a breakdown of the costs associated with the accused products — which is missing from the product-level financial statements produced so far, and which appears to be included on the unit-level financial statements. Kove simply wants these cost figures to accurately calculate the profits associated with the accused products. AWS has never denied that more detailed cost information would be found in the AWS unit-level financial statements.

When the disputed higher-level financial statements contain information about the accused products, the statements must be produced. Indeed, in one of the cases AWS cites, the court rejected the notion that sales of non-accused products were inherently relevant, but it explicitly caveated that any statements that contained "financial information regarding the accused products" should still be produced. *Crystal Photonics, Inc. v. Siemens Med. Sols. USA, Inc.*, 2013 WL 12158132, at *1 (M.D. Fla. Aug. 23, 2013). And in another case, this Court ordered the production of the defendant's "company-wide financial data" because "it would be relevant to a calculation of what a reasonable royalty for use of the patent would have been." *Amsted Indus. Inc. v. Nat'l Castings, Inc.*, 1989 WL

---

[3] AWS also relies on *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*, 2011 WL 13199148 (M.D. Pa. Dec. 21, 2011). It appears that the plaintiff in that case did not contend that the disputed financial records contained any new information about the *accused products*. *See id.* at *1 (rejecting only the argument that damages should be based on "company-wide finances," noting that "the requested documents are company-wide financial statements that take into account numerous products *not* at issue in the instant case"). At most, the *Kimberly-Clark* court concluded that the plaintiff had failed to explain why the higher-level financial statements were relevant, not that such statements are always categorically irrelevant.

68393, at *1 (N.D. Ill. June 15, 1989). As the *Amsted* Court emphasized, the "request for financial data appears reasonably calculated to lead to the discovery of admissible evidence, which is all that Rule 26(b)(1) of the Federal Rules of Civil Procedure requires." *Id.* (collecting cases). *Amsted* thus proves that higher-level financial statements meet the low bar for relevance under the Federal Rules — and, in contrast to the list of out-of-circuit cases AWS cites, *Amsted* is a decision of this district court. *See also Caterpillar, Inc. v. Detroit Diesel Corp.*, 1997 WL 33165848, at *5 (N.D. Ind. Jan. 24, 1997) (ordering production of financial information that covered both accused and non-accused products, because the defendant did not keep all the relevant data about the accused feature in segregated financial records that could be easily separated).

AWS also cites a litany of cases where higher-level financial information was excluded through motions in limine as more prejudicial than probative, or through *Daubert* motions because the information was used to support an improper damages calculation methodology. *See* Opp. at 8 n.3. But these cases prove Kove's point: in all of these them, the information was *produced*, allowing the admissibility question to be taken up later in the case. Those cases support production, which is the only question at issue here. When and if questions of admissibility later arise, they will be decided under a different standard than the lax relevance test for discovery. *See, e.g.*, *McNally Tunneling Corp. v. City of Evanston, Illinois*, 2001 WL 1414437, at *1 (N.D. Ill. Nov. 13, 2001) (noting that "[d]iscoverable information is not limited to that which would be admissible at trial"); *Positive Techs., Inc.*, 2013 WL 707914, at *6 (distinguishing the standards for discovery and admissibility in ordering production of financial information about non-accused, related products). For example, the standard for admissibility under Rule 403 is stricter than the standard for relevance in discovery, because there is no balancing test involving prejudice at this stage. Similarly, before expert reports, AWS cannot make arguments about the admissibility of future expert testimony,

7

speculating about ways Kove could hypothetically use the unit-level financial data. *Cf.* Opp. at 4-5, 8 n.3 (arguing that Kove's damages expert cannot aggregate the revenues across all products in the unit and use the complete unit-level revenue as the base for a reasonable royalty). As its own cited cases confirm, AWS may contest admissibility at the appropriate time, but for now, its obligation is to produce the information.

In short, the unit-level financial data is relevant to understanding the costs properly allocated to *the accused products*. The fact that the unit-level financial statements incidentally contain information about other, non-accused products does not shield them from production when they also contain relevant information about the accused products that has not otherwise been produced.

### B. Financial Information About Non-Accused, Related Products Is Also Relevant.

In addition to new information about the accused products, the AWS-level statements also contain financial information about related, non-accused products. As Kove explained in its opening brief, financial information about the non-accused products is relevant to show convoyed sales and to assess the incremental value of the infringing features over non-infringing alternatives.

#### 1. Convoyed Sales

Convoyed sales are sales of non-accused products that are driven by the sales of the accused products. Convoyed sales can be relevant in either of two ways. First, under certain circumstances, they can be included in the overall revenue base to which a reasonable royalty is applied. Second, they can factor into the calculation of a reasonable royalty. *See Georgia-Pac. Corp.*, 318 F. Supp. at 1120 (listing the sixth factor in the *Georgia-Pacific* analysis as the "effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales."). "Courts have granted motions to compel discovery requests extending to

8

unaccused products where the plaintiff had asserted a derivative or convoyed sales theory of damages, and where the plaintiff has sufficiently articulated how the documents at issue are relevant to that theory." *Invensas Corp. v. Renesas Elecs. Corp.*, 2013 WL 12146531, at *3 (D. Del. May 8, 2013) (collecting cases).[4]

AWS argues that convoyed sales are not relevant because Kove has not demonstrated that the accused and non-accused products in the AWS unit operate as a "functional unit." *See* Opp. at 10 (arguing that convoyed sales require a "functional relationship" between the accused product and any non-accused product included in a convoyed sales analysis, such that they "together constituted a functional unit") (quoting *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008)). There are at least three problems with AWS's argument.

First, while Kove must ultimately prove the merits of its damages theories, it does not have to prove the merits *before it accesses relevant discovery*. AWS attempts to deny Kove access to the financial documents that would demonstrate convoyed sales until Kove first proves convoyed sales exist. This circular logic makes no sense.[5] Discovery is not the appropriate time to litigate the merits of Kove's damages positions. AWS is free to raise its objections to convoyed sales through a motion for summary judgment or a *Daubert* motion regarding Kove's damages expert's methodology. But it cannot deny Kove the data to even *assert* convoyed sales by prejudging the merits of such a claim.

---

[4] The *Invensas* court denied further discovery, but only after the defendant agreed to produce financial data about the entire "product families within which the accused products are sold." *Invensas Corp.*, 2013 WL 12146531, at *3. That is exactly what Kove is requesting here — data for products included in the AWS business unit.

[5] It is especially unreasonable for AWS to demand early proof of the merits of Kove's damages theories when AWS has produced so few documents Kove could rely upon. The documents that would prove the merits of Kove's convoyed sales theories are likely in AWS's possession, and AWS has turned over very few documents in this entire case — only 2,614 total documents. The parties continue to try to resolve their other discovery disputes without the Court's assistance, but AWS's limited participation in discovery more broadly makes even more unreasonable its demands that Kove prove the merits of its damages theories at this early stage.

*See Positive Techs.*, 2013 WL 707914, at *6 (rejecting argument that "[p]laintiff has produced no evidence to show that its patented invention is correlated to the value of the sales of the non-accused products" because "[i]t would be improper under Rule 26 to expect Plaintiff show that the discovery it seeks is admissible when it has not yet obtained the discovery"). For the purposes of relevance, the only question is whether the contested documents "bear[] on, or . . . reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *TIG Ins. Co.*, 2001 WL 969037, at *1 (quotation omitted). At a minimum, convoyed sales *could* be warranted, and data regarding other products in the AWS unit would bear on convoyed sales.

Second, to the extent Kove must make some showing that convoyed sales are at issue before accessing the relevant discovery, ample facts support further discovery. Kove has clearly asserted the potential for convoyed sales since the start of the case: Kove's initial disclosures in April 2019 disclosed Kove's contention that damages would be based in part on "the extent to which Amazon's infringement drives or assists Amazon in the sale of non-patented features and products" — that is, convoyed sales. *See* Ex. A (initial disclosures). And AWS's own public statements support the notion that S3 and DynamoDB are used to drive sales of other non-accused products in the unit. *See, e.g.*, Ex. B (EC2 webpage) (Amazon webpage regarding non-accused EC2 product, which states that "Amazon EC2 uses Amazon S3" and describes the "the benefits of Amazon S3" in combination with Amazon EC2). The accused products involve foundational technology that underlies AWS's broader position in the market. Kove's interest in the non-accused products is not a fishing expedition, but rather a reasonable investigation in light of the nature of the patented technology and the way Amazon itself advertises its products.

Third and finally, convoyed sales are relevant here whether or not the accused and non-accused products form a functional unit. While the products may need to operate as a functional unit

to include non-accused products in the royalty base, there is no such test to consider convoyed sales as merely one factor among many in the *Georgia-Pacific* analysis.[6] AWS relies on *American Seating Co.* for the "functional unit" test, but that case concerns the inclusion of convoyed sales in the overall revenue base for the lost profits analysis, such that the plaintiff claims a royalty directly on the sales of those products. There is no such "functional unit" requirement to consider convoyed sales in setting a reasonable royalty. *See Infinity Computer Prod., Inc. v. Epson Am., Inc.*, 2018 WL 7890859, at *3 (C.D. Cal. Dec. 14, 2018). *Infinity Computer* explicitly rejected "[d]efendant's assertion that" convoyed sales in the reasonable royalty context must "have a functional relationship to the patented technology." *Id.* The court concluded that the cases cited, including *American Seating Co.*, "consider whether unpatented products can be recoverable convoyed sales under a lost profits theory of damages, and not whether convoyed sales or collateral sales can be considered in determining a reasonable royalty rate." *Id.*; *see also Lucent Techs., Inc. v. Microsoft Corp.*, 2011 WL 13101230, at *14 (S.D. Cal. Feb. 4, 2011) (in deciding a motion in limine, declining to exclude discussion of convoyed sales supported by very limited facts, because the convoyed sales "were not part of [the plaintiff's] actual damage calculation, but are relevant to show the conservative nature of its damage calculation under the *Georgia-Pacific* factors," without addressing the "functional unit" test at all); *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 286, 288 (W.D. Mich. 1995) (distinguishing between the standard to recover lost profits on convoyed sales versus the lower standard to consider convoyed sales as part of a reasonable royalty analysis, and noting that the discovery stage was "too soon to tell" whether convoyed sales would be an appropriate consideration

---

[6] Kove may or may not ultimately argue that the accused and non-accused products in the AWS unit should be considered a "functional unit" and included in the royalty base. Damages discovery is necessary to finalize those positions. At this stage, all that matters is that Kove has plausibly asserted convoyed sales as relevant to either the reasonable royalty analysis *or* the calculation of the revenue base. That alone warrants discovery.

11

in the ultimate royalty awarded); *Positive Techs., Inc. v. Sony Elecs., Inc.*, 2013 WL 707914, at *3 (N.D. Cal. Feb. 26, 2013) (distinguishing cases regarding the entire market value rule because "[p]laintiff wants to obtain the discovery [about non-accused products] to calculate the royalty rate, not the royalty base"). Thus, the Court need not decide whether the products might or do operate as a functional unit to conclude that sales of the non-accused products are relevant at a minimum to the analysis of convoyed sales under the *Georgia-Pacific* factors for a reasonable royalty rate.

The cases AWS cites regarding convoyed sales are inapposite. AWS first relies upon an unpublished opinion, *RTC Indus., Inc. v. Fasteners for Retail, Inc.*, No. 1:17-cv-03595, Dkt. 313 (N.D. Ill. Nov. 26, 2019). There are two important distinctions between this case and *RTC*. First, in *RTC*, the defendant had already produced sales data not only for the accused products, but also all other products "conceivably related" to the accused products. *Id.* at 2. Here, in contrast, AWS refuses to produce financial data for *any product* other than the accused products, taking the position that *no other products* are conceivably related to S3 or DynamoDB. Kove is not seeking full sales data for every product Amazon has ever sold. It seeks only the high-level financial records kept by the AWS unit, which will necessarily contain financial information only about the products in the same unit as the accused products.

Second, the *RTC* Court specifically distinguished the use of convoyed sales to increase the profit base from the use of convoyed sales in setting the reasonable royalty rate. *Id.* at 2. *RTC* explicitly leaves open the possibility that "sales of products that are not functionally related to the patented product might be relevant to a reasonable royalty analysis in certain circumstances." *Id.* It rejected that argument only in the specific circumstances at hand, because the plaintiff had not explained "how the sales and financial data concerning the sales of those unrelated products would help show that [the defendant] was able to make those sales because of the sales of the accused

12

product." *Id.* at 2-3. Here, Kove has offered exactly such an explanation, relying upon AWS's own statements about the interrelationship between its accused and non-accused products. *See supra*, p. 10.

AWS finally relies upon two out-of-circuit cases. *See* Opp. at 11-12 (citing *BASCOM Global Internet Servs., Inc. v. AT&T Corp.*, 2017 WL 11490077 (N.D. Tex. July 31, 2017); *Thought, Inc. v. Oracle Corp.*, 2015 WL 2357685 (N.D. Cal. May 15, 2015)). Both are distinguishable for the same reasons as *RTC*. First, the discovery requests in both *BASCOM* and *Thought, Inc.* were much broader than the one at issue here. In *BASCOM*, like *RTC*, the plaintiff sought all revenue data for every product ever bought by every customer of the accused product. *BASCOM*, 2017 WL 11490077, at *2 (rejecting request for "all revenues from any customer of the" accused product). Similarly, in *Thought, Inc.*, the plaintiff apparently requested financial data for all of "Oracle's database and application products." 2015 WL 2357685 at *5 (acknowledging that the plaintiff "may be entitled to relevant information about certain of Oracle's database or application products with a more targeted request"). Kove's request is more targeted: it seeks only pre-existing financial statements that would cover only products in the same unit (AWS) as the accused products.

Second, both cases do not reject the *principle* that data for non-accused products can be relevant, but merely demanded greater explanation of that relevance. The *BASCOM* court acknowledged that "[c]ourts have routinely granted motions to compel discovery requests extending to unaccused products where the plaintiff has asserted a derivative or convoyed sales theory of damages," as long as "the plaintiff has *sufficiently articulated* how the documents at issue *are relevant* to that theory." 2017 WL 11490077 at *2 (emphasis in original). Similarly, in *Thought, Inc.*, the court acknowledged that the use of convoyed sales in a reasonable royalty analysis could be relevant, and discussed a case ordering discovery into sales of non-accused products approvingly.

2015 WL 2357685 at *4 (discussing unpublished opinion in *Aylus Networks Inc. v. Apple Inc.*). The *Thought, Inc.* court found no clear error in the magistrate judge's decision to deny discovery regarding sales of non-accused products only for narrow, case-specific reasons. *Id.* (noting that the plaintiff had not "identif[ied] specific products that were relevant to its royalty analysis" or "articulate[d] a theory as to how the sales of the particular products were connected to the sales of the infringing products"). Here, again, Kove has explained why the other products in the AWS unit are likely connected to S3 and DynamoDB. *See supra*, p. 10.

### 2. Incremental Value Of Infringing Features Over Non-Infringing Products

Finally, financial information about other products in the AWS unit is relevant to allow comparison of the profitability of infringing and non-infringing products. AWS itself argues that, after calculating the revenues associated with the smallest salable infringing unit, the plaintiff must further narrow its damages by "estimat[ing] what portion of that smallest salable unit is attributable to the patented technology . . . ." Opp. at 4 (quoting *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018)). This same principle is reflected in the *Georgia-Pacific* factors, which include "[t]he portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer." *Georgia-Pac.*, 318 F. Supp. 1116 at 1120. The profitability of similar but non-infringing products informs how much of S3 and DynamoDB's profits should be credited to their infringing features in particular.

Indeed, comparison between the profitability of infringing and non-infringing products is one of the bases this Court has relied upon for production of higher-level company financial information. In *Amsted*, the Court allowed discovery into company-wide financial statements in part because they "would be relevant to the commercial success of [the defendant's] purportedly infringing center plate

14

as compared to [its] other products." *Amsted Indus. Inc.*, 1989 WL 68393, at *1.

AWS's response here is the same as its response to convoyed sales: it contests that the other products in the AWS unit are similar to the accused products. As an initial matter, a dispute over how to interpret the data does not make it *irrelevant*; AWS may offer its own explanation for the comparative financial performance of accused and non-accused products, but it may not withhold the underlying data. In any event, AWS's own public statements make clear that the accused and non-accused products in the AWS unit are similar enough that AWS itself suggests customers use them together. *See supra*, p. 10. The performance of the non-infringing products in comparison to the infringing ones is relevant to the *Georgia-Pacific* analysis.

### III. CONCLUSION

AWS asserts no burden from producing its unit-level financial statements. Those statements contain new and relevant information about both accused and non-accused products. Kove respectfully requests that the Court grant the Motion to Compel.

15

| | |
|---|---|
| Dated: November 6, 2020 | Respectfully submitted,<br><br>*/s/ Courtland L. Reichman*<br><br>Renato Mariotti (State Bar No. 6323198)<br>rmariotti@thompsoncoburn.com<br>Holly H. Campbell (State Bar No. 6320395)<br>hcampbell@thompsoncoburn.com<br>THOMPSON COBURN LLP<br>55 E. Monroe St., 37th Floor<br>Chicago, IL 60603<br>Telephone: (312) 346-7500 |
| Sarah O. Jorgensen (*pro hac vice*)<br>sjorgensen@reichmanjorgensen.com<br>REICHMAN JORGENSEN LLP<br>1201 West Peachtree, Suite 2300<br>Atlanta, GA 30309<br>Telephone: (404) 609-1040<br>Telecopier: (650) 623-1449<br><br>Christine E. Lehman (*pro hac vice*)<br>clehman@reichmanjorgensen.com<br>REICHMAN JORGENSEN LLP<br>1615 M Street, NW, Suite 300<br>Washington, DC 20036<br>Telephone: (202) 894-7310<br>Telecopier: (650) 623-1449<br><br>Khue Hoang (*pro hac vice*)<br>khoang@reichmanjorgensen.com<br>Jaime F. Cardenas-Navia (*pro hac vice*)<br>jcardenas-navia@reichmanjorgensen.com<br>Wesley White (*pro hac vice*)<br>wwhite@reichmanjorgensen.com<br>Rahul Sarkar (*pro hac vice*)<br>rsarkar@reichmanjorgensen.com<br>Michael W. Marvin (*pro hac vice*)<br>mmarvin@reichmanjorgensen.com<br>REICHMAN JORGENSEN LLP<br>750 Third Avenue, Suite 2400<br>New York, NY 10017<br>Telephone: (212) 381-1965<br>Telecopier: (650) 623-1449 | Courtland L. Reichman (*pro hac vice*)<br>creichman@reichmanjorgensen.com<br>Shawna L. Ballard<br>(Identification No. 155188)<br>sballard@reichmanjorgensen.com<br>Jennifer P. Estremera (*pro hac vice*)<br>jestremera@reichmanjorgensen.com<br>Michael G. Flanigan (State Bar No. 6309008)<br>mflanigan@reichmanjorgensen.com<br>Kate M. Falkenstien (*pro hac vice*)<br>kfalkenstien@reichmanjorgensen.com<br>REICHMAN JORGENSEN LLP<br>100 Marine Parkway, Suite 300<br>Redwood Shores, CA 94065<br>Telephone: (650) 623-1401<br>Telecopier: (650) 623-1449<br><br>*Attorneys for Kove IO, Inc.* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing, and all exhibits thereto, was filed electronically on November 6, 2020, with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all registered counsel of record or was emailed to all registered counsel of record.

                                                                             /s/    *Holly Campbell*
                                                                                 Holly H. Campbell