

**EXHIBIT G**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Hon. Rebecca R. Pallmeyer |
| v. | Jury Trial Demanded |
| Amazon Web Services, Inc., | |
| Defendant. | |

## KOVE IO, INC'S FINAL ENFORCEABILITY AND VALIDITY CONTENTIONS

Plaintiff Kove IO, Inc. ("Kove") hereby submits its Final Enforceability and Validity Contentions ("Contentions") in response to Defendant Amazon Web Services, Inc.'s ("AWS") Second Amended Final Invalidity Contentions ("SAFIC"), pursuant to Local Patent Rule ("LPR") 3.2 and the Amended Scheduling Order (ECF No. 180).

## I.     KOVE'S RESERVATIONS OF RIGHTS

Kove's investigation, research, and analysis of the issues in this case are ongoing, and Kove expressly reserves the right to supplement its Contentions as its investigation continues. As set forth in correspondence between the parties, *see, e.g.*, 2020-07-28 Letter re AWS Invalidity Contentions, AWS's SAFIC fails to comply with the specificity requirements set forth in the LPR, including by exceeding the permissible prior art grounds of rejection, exceeding the permissible number of references, failing to properly identify prior art systems, claiming the right to rely on undisclosed evidence and theories, and amending the references, prior art grounds, and claim chart mappings, without obtaining leave of the Court. As such, AWS's SAFIC are improper at least as to these unpermitted portions. Kove reserves all rights to amend and/or supplement its Contentions should AWS be allowed to maintain the unpermitted portions or in any way modify its SAFIC.

Further, it is AWS's burden to prove invalidity and unenforceability by clear and convincing evidence, but, as demonstrated in Kove's Contentions, AWS has failed to carry its burden for any asserted claim. The case has also not yet reached the stage where claim construction has been determined. Kove's Contentions are necessarily limited to information now known to it.

In light of the foregoing, Kove reserves all rights to amend and/or supplement its Contentions as additional information becomes available, once AWS complies with the LPR, if AWS is permitted to make any amendments or supplementations to its contentions, and in light of any Court order on claim construction. Kove further reserves all rights to rely on additional evidence in support of its Contentions.

## II.    KOVE'S CONTENTIONS

### A.    <u>AWS's Failure to Establish That Its References Are Prior Art</u>

The Asserted Claims are entitled to the following priority dates:

<u>'170 Patent</u>

- Claims 1, 2, 6, 8, 12, 15, 17: at least as early as October 28, 1999

<u>'640 Patent</u>

- Claims 17, 18, 24: at least as early as October 28, 1999

<u>'978 Patent</u>

- Claims 1, 31: at least as early as July 8, 1998

- Claims 3, 6, 10, 14: at least as early as October 28, 1999

- Claims 17, 23, 24, 30: at least as early as June 2, 2000

AWS bears the burden of proving that each of its references qualify as pre-AIA 35 U.S.C. § 102 prior art for the Asserted Claims, but it has failed to do so. In particular, AWS has not met

its burden of showing that the following references are prior art for one or more of the Asserted Claims:

- Domain Name System ("DNS"): AWS has failed to sufficiently identify any version of any DNS system, to produce any such system, to establish that any such system was in operation, publicly used, sold, or offered for sale before the priority dates of the Asserted claims, and to establish that any of the documents AWS identifies refer to any identified system much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under LPR 3.1 and 3.3 and ECF No. 54.

- Cache Resolver System: AWS has failed to sufficiently identify any version of any Cache Resolver system, to produce any such system, to establish that any such system was in operation, publicly used, sold, or offered for sale before the priority dates of the Asserted claims, and to establish that any of the documents AWS identifies refer to any identified system, much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under LPR 3.1 and 3.3 and ECF No. 54.

- All non-patent references: AWS has failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including Terry, RFC1034, Hua DBMS, Devine DDH, Neuman, Browne, van Steen, Lewis, Karger '97, Venkatasubramanian, Dasgupta, Sherman, Karger/Sherman, Kangasharju, Cardellini, Baker, BIND and DNS, all versions of BIND, RFC1035, RFC2168, and any other materials referenced in the SAFIC.

Additional reasons why AWS has failed to establish that its references are prior art are set forth in Exhibits 1A–1D, 2A–2D, and 3A–3D.

## B.     Response to AWS's Anticipation and Obviousness Arguments

As set forth in Exhibits 1A–1D, 2A–2D, and 3A–3D, AWS fails to establish that any Asserted Claims are anticipated or obvious. Additionally, the following objective indicia of non-obviousness apply to each of the Asserted Claims:

- Copying: entities, including AWS, have copied the patented inventions, as evidenced by Kove's operative infringement contentions (incorporated by reference) and the many similarities between the design, operation, and marketing of the accused AWS products and the Patents-in-Suit.

- Long-felt-but-unsolved-need: entities have written about the long need for technology that would enable a highly scalable information database. *See, e.g.*, Neimat at 1:6-4:36; Frey at 1:30-2:12; Terry at §§ 1.1-1.3, 2.1, 2.5; RFC1034 at §§ 2.1-2.2; Hua DBMS at § 1; Devine DDH at § 1; Neuman at Abstract, §§ 1, 3.1-3.4; Browne at § 1; Van Steen at § 1, 4; Lewis at § 1, 2, 6; Karger '97 at § 1; Venkatasubramanian at §§ 1.1; Sherman at Abstract, §§ 1.1-1.2; Karger-Sherman at Abstract, § 1; Kangasharju at Abstract, § 1; Dasgupta at §§ 3.4, 3.5; Cardellini at § 1, 2, 4; Baker at Abstract, § 1, 2; Bind and DNS at Preface, § 1; Minami at 1:37-3:35; Karger '618 at 1:31-6:19; Karger '420 at 1:36-6:26; Carpentier at 1:22-4:23.

- Failure of others: entities have written about the failure of others to develop technology that would enable a highly scalable information database. *See, e.g.*, Neimat at 1:6-4:36; Frey at 1:30-2:12; Terry at §§ 1.1-1.3, 2.1, 2.5; RFC1034 at §§ 2.1-2.2; Hua DBMS at § 1; Devine DDH at § 1; Neuman at Abstract, §§ 1, 3.1-3.4;

Browne at § 1; Van Steen at § 1, 4; Lewis at § 1, 2, 6; Karger '97 at § 1; Venkatasubramanian at §§ 1.1; Sherman at Abstract, §§ 1.1-1.2; Karger-Sherman at Abstract, § 1; Kangasharju at Abstract, § 1; Dasgupta at §§ 3.4, 3.5; Cardellini at § 1, 2, 4; Baker at Abstract, § 1, 2; Bind and DNS at Preface, § 1; Minami at 1:37-3:35; Karger '618 at 1:31-6:19; Karger '420 at 1:36-6:26; Carpentier at 1:22-4:23.

- Commercial Success and Industry Praise: entities, including AWS, use the Asserted Claims and have had substantial commercial success. Also, the inventions of the Asserted Claims attracted substantial interest from investors in OverX, Inc. and Kove IO, Inc. Also, the type of distributed data storage technology described in the Asserted Claims have been recognized by the MIT Technology Review as one of the top 10 emerging technologies that would change the world. Complaint, Ex. 1. Also, the Patents-in-Suit have each been cited by more than 100 later-filed patent applications.

- Skepticism of Skilled Artisans: entities have written about the unlikelihood of the inventions of the Asserted Claims. *See, e.g.*, Dasgupta, §§ 3.4, 3.5. Also, when the inventions of the Asserted Claims were presented at Yale University, the audience did not believe the inventions were possible. *See, e.g.*, KOV_00034264-292.

Kove also incorporates by reference its response to AWS's Interrogatory No. 4 and any amendments and/or supplements thereto.

### C.   Response to AWS's Invalidity Contentions Under 35 U.S.C. § 112

Kove denies that any asserted claim is invalid under 35 U.S.C. § 112 ¶ 1 or § 112 ¶ 2. The SAFIC fails to provide "a *detailed* statement" regarding invalidity under § 112, as required under the LPR. Instead, for example, AWS identifies various terms but provides little to no explanation

as to why the person of ordinary skill in the art would not be able to ascertain the scope of the claim limitation. Such conclusory assertions do not sufficiently disclose Amazon's theories of invalidity. *See, e.g., Mediatek Inc. v. FreeScale Semiconductor, Inc.*, 2014 U.S. DIST. LEXIS 22422, at *19-20 (N.D. Cal. Feb. 21, 2014) (holding disclosure in invalidity contentions inadequate when it did "nothing more than state that a theory of 'indefiniteness, written description/enablement' is asserted as to this term" and where defendant failed to "explain in even the most basic terms why" the written description was inadequate).

Regarding AWS's claims of invalidity under § 112 ¶ 2, each of the identified claim limitations, read in light of their respective specifications and prosecution histories, informs those skilled in the art with reasonable certainty as to the scope of the invention. Kove identifies at least the following intrinsic support for the claim terms AWS alleges are indefinite under 35 U.S.C. § 112, while reserving all rights to rely on additional supporting evidence:

- "based on a hash function" as found in claims 1 and 2 of the '170 patent, and "hash table generated with the hash function" as used in claim 2 of the '170 patent patent:
    - AWS contends that a skilled artisan would not have understood the scope of "based on a hash function" and "hash table generated with the hash function" as used in claims 1 and 2 of the '170 patent because the patent does not explain "how to use the 'hash function,' how it works, what it does, or what it means for a 'portion' of 'data location information' to be 'based on' a 'hash function used to organize the data location information across the plurality of data location servers.' To the contrary, the '170 patent expressly sets forth, for example, that a hash function such as "hashpjw" may be applied to the "identifier string" and that the "function result" be used as "an index" into the hash table of location servers (called "NDTP servers" in the specification) to determine the portion of data location information that corresponds to that identifier string. *See, e.g.*, '170 patent at 15:12-16:20. Moreover, the person of ordinary skill in the art ("POSA") would understand that the NDTP server table referenced within the specification is a hash table generated

by a hash function. *Id.* In light of the intrinsic evidence and their background knowledge, the POSA would understand these terms with reasonable certainty.

- o Exemplary specification support:
  - ▪ '170 patent at 15:12-16:30; Fig. 9 (and describing text); current and original claims.
- o Exemplary file history support
  - ▪ '640 Prosecution History at 8/9/2005 Amendment/Request for Reconsideration at 9 (discussing "distributed hash table").

- "performance criterion" and "predetermined performance limit" as found in claim 17, 23, 24, and 30 of the '978 patent:
  - o AWS contends that a "skilled artisan would not have understood the bounds of 'performance criterion' and 'predetermined performance limit' because the '978 patent "does not explain the range of 'performance criteria,' how to determine a 'limit' for 'performance criterion,' or what it means for a 'performance criterion' to be 'predetermined.'" To the contrary, the '978 patent expressly discloses that a "performance criterion" may include "storage capacity" and "transaction rate." '170 patent at 20:7-31. The '978 patent also, for example, that a predetermined transaction rate limit may be the "number of requests for a particular URI" made by clients in Paris but serviced by location servers in Chicago, and that once the number of requests is breached, the location servers in Chicago would transfer the corresponding identifier/location mappings to location servers in Paris. *Id.* at 21:24-22:16. In light of the intrinsic evidence and their background knowledge, the POSA would understand these terms with reasonable certainty.
  - o Exemplary specification support:
    - ▪ '978 patent at 2:53-3:4, 15:45-62, 19:50-20:46, 21:35-48, 21:24-22:16, Figs. 22, 23 (and describing text); original and current claims.
  - o Exemplary file history support:
    - ▪ '978 FH at 02/22/2006 11/01/2006 Applicant Arguments at 11-12;
    - ▪ Provisional 60/209,070 at 12-14, 29-34, 37-39;
    - ▪ Provisional 60/277,408 at 7-8;
    - ▪ Originally filed '978 claims including claims 24, 29, 30.

- "first data location server..." as found in claims 17, 23, 24 and 30 of the '978 patent

    - AWS contends that the limitation "first data location server" is indefinite because the term "first data location server" lacks antecedent basis. Clerical or typographical errors resulting in inadvertent lack antecedent basis, however, do not per se render a term indefinite. *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1376 (Fed. Cir. 2008) (noting "well-settled rule that claims are not necessarily invalid for a lack of antecedent basis"). The POSA would understand the "first data location server" to be the same as the "first location server," and distinct from a "second data location server." In light of the intrinsic evidence and their background knowledge, the POSA would understand these terms with reasonable certainty.

    - Exemplary specification support:
        - '978 patent at 19:50-20:46, 21:35-48, 21:50-22:16, Fig. 22 (and describing text); original and current claims.

    - Exemplary file history support:
        - Provisional 60/209,070 at 12-14, 41-42;
        - Provisional 60/277,408 at 4;
        - Originally filed '978 claims including claims 24, 29, 35.

- "programming logic … configured to return, in response to a location query related to a desired entity, a location message … comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity" as found in claim 6 of the '170 patent

    - AWS contends that this limitation is indefinite because "a skilled artisan could not discern whether the server returns two messages or one message if the location server lacks location information for the desired entity." There is, however, no such ambiguity in the limitation, which expressly states that only the redirect message is sent back "if the location server lacks the location information for the desired

entity." In light of the intrinsic evidence and their background knowledge, the POSA would understand these terms with reasonable certainty.

- o Exemplary specification support:
    - ▪ '170 Patent at Figs. 9, 12 (and describing text); 1:19–25 (Microfiche Appendix); 6:50–7:4; 8:9-30; 9:23–29; 14:42–16:32; 17:26–19:27; claims 13, 15; original and current claims;
- o Exemplary file history support:
    - ▪ Provisional 60/153,709 at Figs. 1-2 (and describing text); 3, 8–10, 26-29;
    - ▪ '170 Prosecution History at 2/13/2006 Claims 5-16; *Id.* at 9/6/2006 Claims 20-29; *Id.* at 3/2/2009 Claims 20-29; *Id.* at 3/2/2009 Applicant Arguments/Remarks Made in an Amendment;
    - ▪ '640 Prosecution History at 9/13/2000, claims 5-16.

AWS also contends that claims 1, 3, 6, 10, and 31 of the '978 patent, claims 1, 2, 6, 8, and 12 of the '170 patent, and claims 17, 18, and 24 of the '640 patent are indefinite because they include both apparatus and method limitations. AWS' argument is unavailing, however, because each of the apparatus claims it challenges merely "place[s] functional limitations on the apparatuses by describing the capabilities of the apparatuses." *Yodlee, Inc. v. CashEdge,* 84 U.S.P.Q.2d. (BNA) 1594, 1597-98 (N.D. Cal. 2006). Such functional limitations within apparatus claims "do not constitute invalid mixed method-apparatus claims." *Id.* Claim 1 of the '978 patent, for example, describes a system comprised of location servers containing "programming logic" enabling those location servers to "return a location message" in response to a "location query." Such functional language merely "describes the capability" of a system of location servers, and consequently does not render claim 1 an invalid mixed method-apparatus claim. Similarly, claims 3, 6, 10 and 31 of the '978 patent, claims 1, 2, 6, 8 and 12 of the '170 patent, and claims 17, 18 and 24 of the '640 patent use merely functional language to describe the capabilities of the apparatuses they describe, and do not constitute mixed method-apparatus claims.

AWS also contends that certain limitations appearing within the asserted claims are indefinite under 35 U.S.C. § 112, ¶ 6. Amazon's contentions in this regard fail to comply with LPR 2.3 because they are utterly devoid of specificity, failing to describe in even the barest detail why it contends that these limitations, none of which contain the words "means for" or "step for," should be construed as invoking 35 U.S.C. § 112, ¶ 6.

The identified limitations are not means plus function limitations: as set forth below, each of the challenged limitations has a corresponding structure recited in the body of the associated claim. Additionally, in the event that these limitations are construed as invoking 35 U.S.C. § 112, ¶ 6, Kove also identifies corresponding structures from the patent specifications, while reserving all rights to rely on additional supporting evidence:

- o "hash function" (appearing in claims 1, 2, and 17 of the '170 patent), "hash table" (appearing in claims 2, 12, and 17 of the '170 patent, claim 6 of the '978 patent, and claim 24 of the '640 patent);

  - ▪ AWS has not and cannot overcome the presumption that "hash function" or "hash table" does not invoke 112, ¶ 6 because the limitation does not include the words "means for." Far from being a generic "means," hash functions are a known technique in computer science. The limitation "hash function," therefore, imports a specific structure into the claim in which it is used and cannot be construed as a generic "nonce term." *Zeroclick, LLC v. Apple Inc.,* 891 F.3d 1003, 1008 (Fed. Cir. 2018). More generally, in light of the intrinsic evidence, hash function and hash table connote specific structure to the POSA.

  - ▪ Exemplary specification support: The specification for each patent-in-suit discloses the algorithm for the "hashpjw function" and its use in generating both a hash table, and an index into that hash table, of "location servers." *E.g.*, '170 patent at 15:12-16:20; Fig. 9 (and describing text); '640 patent at 14:28-16:13; '978 patent at 12:43-62, 16:54-18:35.

o "indexing function" or "indexed" (appearing in claims 12 and 17 of the '170 patent, and claim 6 of the '978 patent);

   ▪ The term "indexing function" is not recited in any asserted claim;

   ▪ The term, as used in claim 6 of the '978 patent and claim 12 of the '170 patent is "indexed by a hash table." Claim 17 of the '170 patent does not recite an indexing function;

   ▪ For the reasons stated above with respect to "hash table," 112, ¶ 6 does not apply. *See Zeroclick, LLC v. Apple Inc.,* 891 F.3d at 1008;

   ▪ Exemplary specification support: The specification for each patent-in-suit discloses the algorithm for the "hashpjw function" and its use in generating both a hash table, and an index into that hash table, of "location servers." More generally, in light of the intrinsic evidence, indexing connotes a specific structure to the POSA. *E.g.*, '170 patent at 15:12-16:20; Fig. 9 (and describing text); '640 patent at 14:28-16:13; '978 patent at 12:43-62, 16:54-18:35.

o "calculate a location" (appearing in claims 17, 18, and 24 of the '640 patent);

   ▪ AWS has not and cannot overcome the presumption that "calculate a location" does not invoke 112, ¶ 6 because the limitation does not include the words "means for." Moreover, claims 17, 18, and 24 of the '640 patent expressly tether the calculation of a location by the client to the "redirect message" sent back to it by the "location server," whereby the client uses the redirect "information" to determine the appropriate location. More generally, in light of the intrinsic evidence, calculating a location connotes specific structure to the POSA.

   ▪ Exemplary specification support: *E.g.*, '640 Patent at 14:26-16:13; 17:8-19:14.

o "configured…to determine…the data location server[]" or "determining…the…location server[]" (appearing in claims 1, 2, 15, and 17 of the '170 patent);

- AWS has not and cannot overcome the presumption that the limitations "configured…to determine…the data location server[]" or "determining…the…location server[]" do not invoke 112, ¶ 6 because they do not include the words "means for." Moreover, claims 1, 2 and 17 of the '170 patent expressly tether the "determin[ation] of the appropriate location server to the "hash function" appearing throughout the claims. As discussed above, the limitation "hash function" imports a highly specific structure into the claim in which it is used and cannot be construed as a generic "nonce term." *Zeroclick, LLC v. Apple Inc*., 891 F.3d 1003, 1008 (Fed. Cir. 2018). Claim 15 tethers the determination of the appropriate location server to "correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network," and employing that correlation to determine which location server an "identifier" maps to. More generally, in light of the intrinsic evidence, determining a location connotes specific structure to the POSA.

- Exemplary specification support: *E.g.*, '170 patent at 15:12-16:20; Fig. 9 (and describing text); '978 patent at 12:43-62, 16:54-18:35, 19:50-20:46, 21:35-48, 21:50-22:16, Fig. 22 (and describing text).

o "transfer protocol configured for manipulating" or "transfer protocol comprising instructions for manipulating" (appearing in claims 10 and 31 of the '978 patent);

- AWS has not and cannot overcome the presumption that the limitations "transfer protocol configured for manipulating" and "transfer protocol comprising instructions for manipulating" do not invoke 112, ¶ 6 because they do not include the words "means for." Far from being a generic "means," a "transfer protocol" is a data structure enabling the modification of information over computer networks. The limitation "transfer protocol," therefore, imports a specific structure into the claim in which it is used and cannot be construed as a generic "nonce term." *See Zeroclick, LLC v. Apple Inc.,* 891 F.3d at 1008. More generally, in light of the intrinsic evidence, a transfer protocol connotes specific structure to the POSA.

- ▪ Exemplary specification support: *E.g.*, '978 Patent at Abstract ("The system and method utilize a transfer protocol configured to transport an ...."); 2:19-37; 2:53-3:4; 4:19-44.

- o "transfer protocol configured to transport" (appearing in claims 17, 23, 24, and 30 of the '978 patent);

  - ▪ AWS has not and cannot overcome the presumption that the limitation "transfer protocol configured to transport" does not invoke 112, ¶ 6 because it does not include the words "means for." Far from being a generic "means," a "transfer protocol" is a well-known and conventional data structure enabling the transmission of information over computer networks. The limitation "transfer protocol," therefore, imports a highly specific structure into the claim in which it is used and cannot be construed as a generic "nonce term." *See Zeroclick, LLC v. Apple Inc.,* 891 F.3d at 1008. More generally, in light of the intrinsic evidence, a transfer protocol connotes specific structure to the POSA.

  - ▪ Exemplary specification support: *E.g.*, 978 Patent at Abstract ("The system and method utilize a transfer protocol configured to transport an ...."); 2:19-37; 2:53-3:4; 4:19-44.

- o "computer executable code configured to execute the following steps" (appearing in claims 17 and 18 of the '640 patent);

  - ▪ AWS has not and cannot overcome the presumption that the limitation "computer executable code configured to execute the following steps" does not invoke 112, ¶ 6 because it does not include the words "means for." Moreover, the Federal Circuit has held that "program" and "user interface code" are not "nonce terms" and do not invoke 112, ¶ 6 as equivalents of "means for" or "steps for;" to the contrary, their plain and ordinary meanings import specific structures. *Zeroclick,* 891 F.3d at 1008 (finding sufficient structure in the term "user interface code" because "Claim 19…similarly tethers 'user interface code'---code meant to be updated using two configuration changes recited in the claim---to the code 'stored

in a memory connected to the processor"); *Trading Techs. Int'l, Inc. v. IBG LLC*, 2019 U.S. Dist. LEXIS 209589 at *19-21 (N.D. Ill. December 5, 2019) (holding that "program code" used to implement certain algorithmic trading steps claimed "sufficient structure"). As in *Trading Techs*, the "computer executable code configured to execute the following steps" appearing in the asserted claims is tethered to the recited steps of returning either a "location message" or a "redirect message." And as in *Zeroclick*, the computer executable code is stored on "data location servers." More generally, in light of the intrinsic evidence, "computer executable code configured to execute the following steps" connotes specific structure to the POSA.

- Exemplary specification support: *E.g.*, '640 patent (col. 14:28-16:13).

o "location server configured to receive," or "programming logic" that is "configured to return" (appearing in claims 6, 8, and 12 of the '170 patent);

- AWS has not and cannot overcome the presumption that the limitation "location server configured to receive" or "programming logic" that is "configured to return" do not invoke 112, ¶ 6 because they do not include the words "means for." The limitation "location server configured to receive" is an inherently structural limitation, defining the location server as being capable of receiving a "location addition request" and including a "processor." As discussed above, with respect to the limitation "programming logic…configured to return," the Federal Circuit has held that "program" and "user interface code" are not "nonce terms" and do not invoke 112, ¶ 6 as equivalents of "means for" or "steps for;" to the contrary, their plain and ordinary meanings import specific structures. *Zeroclick,* , 891 F.3d at 1008; *Trading Techs.*, 2019 U.S. Dist. LEXIS 209589 at *19-21 (N.D. Ill. December 5, 2019) The "programming logic" appearing in claims 6, 8, and 12 of the '170 patent is tethered to the structure-importing limitation "stored on the location server" and conjoined to the acts of returning a location message or redirect message. More generally, in light

of the intrinsic evidence, these terms connote specific structure to the POSA.

- Exemplary specification support: *E.g.*, '170 patent at 4:8-26, 14:44-16:30.

o "programming logic … responsive to" a "location query" (appearing in claims 1, 3, 6, 10, and 31 of the '978 patent

- AWS has not and cannot overcome the presumption that the limitation "programming logic…responsive to…a location query" does not invoke 112, ¶ 6 because it does not include the words "means for." As discussed above, the Federal Circuit has held that "program" and "user interface code" are not "nonce terms" and do not invoke 112, ¶ 6 as equivalents of "means for" or "steps for;" to the contrary, their plain and ordinary meanings import specific structures. *Zeroclick,* , 891 F.3d at 1008; *Trading Techs.*, 2019 U.S. Dist. LEXIS 209589 at *19-21 (N.D. Ill. December 5, 2019) The "programming logic" appearing in claims 3,6, 10, and 31 of the '170 patent are tethered to the structure-importing limitations "stored on the location server" (claim 31), "stored on each of the plurality of location servers" (claim 10), and "stored on each of the location servers" (claims 1, 3, and 6), and conjoined to the acts of returning a location message or redirect message. More generally, in light of the intrinsic evidence, these terms connote specific structure to the POSA.

- Exemplary specification support: *E.g.*, '978 patent at 14:28-16:13.

AWS also makes bare and unsupported allegations that each of the asserted limitations it designates as invalid under 35 U.S.C. § 112, ¶ 6 also lack sufficient written description under 35 U.S.C. § 112, ¶ 1; AWS's allegations under § 112, ¶ 1 are deficient for the same reasons articulated with respect to 35 U.S.C. § 112, ¶ 6.

AWS also contends that all asserted claims that reference "hash" or "hashing" are invalid under 35 U.S.C. § 112, ¶ 1 because "the Patents-in-Suit do not explain how to use the claimed 'hash function' or 'hash table,' how it works, what it does, or how its output is used." AWS

Invalidity Contentions, at 34. To the contrary, the specifications of the patents-in-suit describe in granular, algorithmic detail how to use known hash functions to both generate, and traverse, a hash table of "location servers." *See, e.g.*, '170 patent at 15:12-16:20; '640 patent at 14:28-16:13; '978 patent at 12:43-62, 16:54-18:35. In light of the intrinsic evidence and their background knowledge, these terms are sufficiently described and enabled to the POSA.

AWS also contends that claims 17, 23, 24 and 30 of the '978 patent is invalid as not enabled and lacking an adequate written description under 35 U.S.C. § 112, ¶ 1, because the '978 patent specification does not describe or enable the full scope of "performance criterion," "predetermined performance limit," and "monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit." As discussed above, however, the '978 patent expressly discloses that a "performance criterion" may be embodied by "storage capacity" and "transaction rate." '170 patent at 20:7-31. The '978 patent also discloses at least one embodiment of monitoring a predetermined performance criterion, such as a "number of requests for a particular URI" made by clients in Paris but serviced by location servers in Chicago, whereby once that predetermined number of requests is breached, the location servers in Chicago automatically transfer their corresponding identifier/location mappings to location servers in Paris. *Id*. at 19:50-20:46, 21:24-22:16, Fig. 22. In light of the intrinsic evidence and their background knowledge, these terms are sufficiently described and enabled to the POSA.

Finally, AWS contends that claims 6, 8, and 12 of the '170 patent are invalid as not enabled and lacking an adequate written description under 35 U.S.C. § 112, ¶ 1 because "the '170 patent does not disclose how to configure programming logic to return both a location message and a redirect message in response to a location query." AWS Invalidity Contentions at 35. The specification of the '170 patent, however, describes the data structures involved in, sample source

code embodying, and algorithms describing, how location servers return both location messages and redirect messages. '170 patent at 5:30-9:29, 14:44-16:30. In light of the intrinsic evidence and their background knowledge, these terms are sufficiently described and enabled to the POSA.

### D.   Response to AWS's Invalidity Contentions Under 35 U.S.C. § 101

As Kove explained in its Response Memorandum in Opposition to Amazon's Motion to Dismiss based on 35 U.S.C. § 101 (ECF No. 44), incorporated here by reference, the Patents-in-Suit are rooted in computer technology and are eligible for patenting under § 101 and controlling Federal Circuit precedent. The patented technology is tailored to improving conventional database storage systems and provides specific distributed data storage architecture for improving functionality in computer networks. ECF No. 44 at 1. The Court agreed and held that the Patents-in-Suit are not invalid under § 101. ECF No. 110. The reasoning of Kove's opposition and the Court's decision apply to all Asserted Claims.

As Kove explained in its Opposition and Sur-Reply to AWS's Motion for Judgment on the Pleadings (ECF Nos. 145, 160), incorporated here by reference, the asserted claims of the '978 patent are not invalid for obviousness-type double patenting ("ODP"). The claims of the '170 and '640 patents are not proper ODP references, and the asserted claims of the '978 patent are not obvious in view of those claims. ECF Nos. 145, 160. The other references cited in the SAFIC are also not proper ODP references and do not render the asserted claims of the '978 patent obvious. Further, none of the Patents-in-Suit are proper ODP references against any other Patents-in-Suit, and no Asserted Claims are invalid for ODP for this reason, and because the differences between the claims are non-obvious.

### E.   Response to AWS's Unenforceability Contentions

The LPR require that AWS identify the acts allegedly supporting and all bases for the assertion of unenforceability. AWS has not made such allegations.

With respect to AWS's threadbare allegations of unenforceability in its Answer and Counterclaims (ECF No. 129), Kove incorporates by reference its Answer to AWS's Counterclaims (ECF No. 161). With respect to inequitable conduct, the Karger reference is not material. Indeed, AWS has long known about Karger, yet did not assert it as invalidating any of the Asserted Claims in its SAFIC or in any proceedings before the USPTO. AWS has never set forth how or why Karger is material. Further, neither the inventors nor the prosecuting attorneys had an intent to deceive the USPTO. With respect to "laches, estoppel, acquiescence, waiver, unclean hands, and/or other equitable principles" (ECF No. 129 at 40-42), AWS has not set forth a sufficient factual basis, its assertions are untrue and/or misleading, and it fails to meet the legal threshold for establishing any of these doctrines.

Should AWS be permitted to introduce claims of unenforceability in the future, Kove will respond at that time.

Dated: August 13, 2020

Respectfully submitted,

/s/      *Khue V. Hoang*
Khue V. Hoang

Renato Mariotti (State Bar No. 6323198)
rmariotti@thompsoncoburn.com
THOMPSON COBURN LLP
55 E. Monroe St., 37th Floor
Chicago, IL 60603
Telephone: (312) 346-7500
Telecopier: (312) 580-2201

Sarah O. Jorgensen (*pro hac vice*)
sjorgensen@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
1201 West Peachtree, Suite 2300
Atlanta, GA 30309
Telephone: (650) 623-1403
Telecopier: (650) 623-1449

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
818 Connecticut Avenue NW, Suite
850Washington, DC 20006
Telephone: (202) 894-7311
Telecopier: (650) 623-1449

Khue Hoang (*pro hac vice*)
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (*pro hac vice*)
jcardenas-navia@reichmanjorgensen.com
Wesley White (*proc hac vice*)
wwhite@reichmanjorgensen.com
Michael Matulewicz-Crowley (*pro hac vice*)
mmatulewicz-crowley@reichmanjorgensen.com
Rahul Sarkar (*pro hac vice*)
rsarkar@reichmanjorgensen.com
Michael Marvin (pro hac vice)
mmarvin@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
750 Third Avenue, Suite 2400
New York, NY 10017
Telephone: (212) 381-1965
Telecopier: (650) 623-1449

Courtland L. Reichman (*pro hac vice*)
creichman@reichmanjorgensen.com
Shawna L. Ballard (*pro hac vice*)
sballard@reichmanjorgensen.com
Jennifer P. Estremera (*pro hac vice*)
jestremera@reichmanjorgensen.com
Joachim B. Steinberg (*pro hac vice*)
jsteinberg@reichmanjorgensen.com
Michael G. Flanigan (State Bar No. 6309008)
mflanigan@reichmanjorgensen.com
Kate M. Falkenstien (*pro hac vice*)
kfalkenstien@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Telecopier: (650) 623-1449

*Attorneys for Kove IO, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2020, the foregoing document was served via email on the attorneys of record who have consented to service by electronic means.

*/s/ Jaime F. Cardenas-Navia*
Jaime F. Cardenas-Navia