**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: 100% GRATED PARMESAN CHEESE MARKETING AND SALES PRACTICES LITIGATION | Case No. 1:16-cv-05802<br>MDL No. 2705<br><br>The Hon. Gary S. Feinerman |
| *This Document Relates to All Cases on The Kraft Heinz Company Track* | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
<u>AGAINST THE KRAFT HEINZ COMPANY</u>**

**JENNER & BLOCK LLP**

Dean N. Panos (Ill. Bar No. 6203600)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350

*-and-*

Kenneth K. Lee (admitted *pro hac vice*)
klee@jenner.com
Alexander M. Smith (admitted *pro hac vice*)
asmith@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Tel.: (213) 239-5100

*Attorneys for Defendant*
The Kraft Heinz Company

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

    I.    Plaintiffs Sue Kraft Heinz for Using Cellulose and Potassium Sorbate, Which Were Disclosed on the Packaging and Are Authorized by the FDA in Grated Cheeses. ................................................... 2

    II.    The Court Finds That Kraft Heinz's Labeling Is Not Deceptive, and Plaintiffs Reiterate the Same Theory of Deception in Their Amended Complaint. .......................................................................................... 5

ARGUMENT ............................................................................................................................ 6

    I.    Plaintiffs Still Have Not Plausibly Alleged That Kraft Heinz's "100% Grated Parmesan Cheese" Label Is Likely to Deceive a Reasonable Consumer. ....................................................................................... 6

        A.    The Amended Complaint Still Does Not Plausibly Allege That the Phrase "100% Grated Parmesan Cheese," Viewed in Full Context, Is Deceptive. ............................................................... 7

        B.    Plaintiffs' Linguistic Expert Reports Have No Bearing on How a Reasonable Consumer Would View the Packaging as a Whole. ............................................................................................... 10

            1    Plaintiffs' Expert Reports Are Procedurally Improper. ............................................................................................ 11

            2    Plaintiffs' Expert Reports Are Divorced from Consumer Expectations and Confirm That the Phrase "100% Grated Parmesan Cheese" Is Ambiguous. ........................................................................................ 12

        C.    Plaintiffs' Unidentified Survey Cannot Salvage Their Claim. ........................................................................................................ 14

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................6, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................6

*DeMarco v. DepoTech Corp.*,
  149 F. Supp. 2d 1212 (S.D. Cal. 2001) ........................................................................11

*El-Hallani v. Huntington Nat'l Bank*,
  No. 13-2983, 2014 WL 2217237 (E.D. Mich. May 29, 2014) ....................................14

*Fin. Acquisition Partners LP v. Blackwell*,
  440 F.3d 278 (5th Cir. 2006) ........................................................................................12

*Fink v. Time Warner Cable.*,
  714 F.3d 739 (2d Cir. 2013) .....................................................................................8, 13

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) .......................................................................................8, 13

*Goldman v. Bayer AG*,
  No. 17-647, 2017 WL 3168525 (N.D. Cal. July 26, 2017) ...................................14, 15

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
  --- F. Supp. 3d ----, No. 16-5802, 2017 WL 3642076 (N.D. Ill. Aug. 24, 2017) ............ *passim*

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ......................................................................................12

*Martin v. Living Essentials, LLC*,
  160 F. Supp. 3d 1042 (N.D. Ill. 2016) ...........................................................................6

*Mazzeo v. Nature's Bounty, Inc.*,
  No. 14-60580, 2015 WL 1268271 (S.D. Fla. Mar. 19, 2015) .....................................12

*McCauley v. City of Chicago*,
  671 F.3d 611 (7th Cir. 2011) ........................................................................................14

*McKinnis v. Sunny Delight Beverages Co.*,
  No. 07-2034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ..........................................9

*Nemphos v. Nestle Waters N. Am., Inc.*,
   775 F.3d 616 (4th Cir. 2015) ........................................................................................................4

*Red v. Kraft Foods, Inc.*,
   No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012).......................................................10

*Spector v. Mondelēz Int'l, Inc.*,
   178 F. Supp. 3d 657 (N.D. Ill. 2016) ...........................................................................................6

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
   No. 14-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) .....................................................13

*Stuart v. Cadbury Adams USA, LLC*,
   458 F. App'x 689 (9th Cir. 2011) .................................................................................................6

*Stuart v. Cadbury Adams USA, LLC*,
   No. 09-6295, 2010 WL 1407303 (C.D. Cal. Apr. 5, 2010) ..................................................11, 12

*Trujillo v. Apple Computer, Inc.*,
   581 F. Supp. 2d 935 (N.D. Ill. 2008) ...........................................................................................8

*Veal v. Citrus World, Inc.*,
   No. 12-801, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013).........................................................9, 10

*Williams Foods, Inc. v. Eastman Chem. Co.*,
   No. 99-16680, 2001 WL 1298887 (D. Kan. Aug. 8, 2001) .........................................................3

*Workman v. Plum, Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) .......................................................................................9

**OTHER AUTHORITIES**

21 C.F.R. § 101.22 .............................................................................................................................3

21 C.F.R. § 133.146 ......................................................................................................................4, 9

*Cheeses; Amendment of Standards of Identity to Permit Use of Antimycotics on
   the Exterior of Bulk Cheeses During Curing & Aging*, 54 Fed. Reg. 32050-01
   (Aug. 4, 1989) ......................................................................................................................4, 5, 7

Federal Rule of Civil Procedure 10(c) ......................................................................................11, 12

*Grated Cheeses; Amendment of the Standard of Identity*, 51 Fed. Reg. 30210-01
   (Aug. 25, 1986) ............................................................................................................................4

**INTRODUCTION**

In a methodically detailed opinion that surveyed and synthesized false-advertising case law across the country, this Court dismissed Plaintiffs' putative class action lawsuit challenging Kraft Heinz's "100% Grated Parmesan Cheese" and other cheese products. *See In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, --- F. Supp. 3d ----, No. 16-5802, 2017 WL 3642076 (N.D. Ill. Aug. 24, 2017). As this Court is aware, Plaintiffs had argued that they were deceived because they subjectively understood "100% Grated Parmesan Cheese" to mean that the products contained only 100% cheese — and no other ingredients whatsoever. This Court, however, held that this phrase was ambiguous because some consumers may read it to mean that the product has only 100% Parmesan cheese — and no other type of cheese, such as process cheese. And in light of this ambiguity, this Court held that a reasonable consumer would review the packaging as a whole — including the ingredient list — and immediately learn that the product also contains cellulose powder (to prevent clumping) and potassium sorbate (to prevent mold).

In their amended complaint, Plaintiffs do not dispute the legal principles articulated by the Court in its opinion. Rather, they argue that their reading of "100% Grated Parmesan Cheese" is the only plausible interpretation by relying on (a) two largely indecipherable expert reports offered by linguistics professors and (b) an unidentified survey bereft of any details. Plaintiffs do not fare better the second time around, and their amended complaint should be dismissed with prejudice.

First, Plaintiffs' two expert reports from linguistics professors cannot salvage their claims. As an initial matter, these expert reports — which were created for the express purpose of avoiding dismissal — are procedurally improper. Federal courts have repeatedly held that a plaintiff cannot commission an expert report and attach it to the complaint for the sole purpose of avoiding dismissal at the pleading stage. Moreover, Plaintiffs completely miss the point about the

1

reasonable consumer standard. The term "100% Grated Parmesan Cheese" must be read from the perspective of a reasonable consumer, not professors with Ph.Ds in linguistics. Contrary to the professors' assertions, a reasonable consumer does not rely on "stacking modifiers" or "H.P. Grice's theory of conversational implicature" in reviewing a packaged cheese product. This Court correctly ruled that a reasonable consumer could interpret "100% Grated Parmesan Cheese" in multiple ways, and that she therefore should review the entire packaging as a whole in light of this ambiguity.

<u>Second</u>, Plaintiffs' reference to an unidentified survey cannot stave off dismissal. The amended complaint vaguely mentions a "recent survey" that supposedly showed that the "majority of consumers who purchase the Products believe the Products are 100% Cheese." ECF No. 225 at ¶ 3. But the amended complaint does not mention a single fact about this survey. Kraft Heinz — and the Court — are kept in the dark about how the survey was conducted, what questions were asked, how many people were surveyed, whether the respondents are purchasers of Kraft Heinz's 100% Grated Parmesan Cheese, whether the respondents saw the entire packaging, who conducted the survey, and other basic facts. Plaintiffs cannot try to avoid dismissal by invoking a survey shrouded in anonymity and mystery.[1]

## BACKGROUND

I. **Plaintiffs Sue Kraft Heinz for Using Cellulose and Potassium Sorbate, Which Were Disclosed on the Packaging and Are Authorized by the FDA in Grated Cheeses.**

As this Court is aware, Kraft Heinz produces several varieties of grated Parmesan cheese

---

[1] In its order dismissing Plaintiffs' initial complaint, the Court did not address Kraft Heinz's other alternative grounds for dismissal, including the safe harbor doctrine and federal preemption. To avoid burdening the Court with additional pages, Kraft Heinz will not repeat the arguments here and instead incorporate them by reference. *See* ECF No. 162.

2

products, including "100% Grated Parmesan," a Parmesan-Romano blend, and a three-cheese variety with Parmesan, Romano, and Asiago cheeses. These grated cheese products are shelf-stable and packaged in a convenient, easy-to-use plastic cylinder with a perforated lid:

 

ECF No. 162-1, Decl. of Alexander M. Smith, ¶¶ 2-4. As disclosed in the ingredient list, these products contain a small amount of cellulose powder — a fiber naturally found in fruits and vegetables — to prevent the grated cheese from clumping together and allow consumers to sprinkle Parmesan onto their favorite dishes directly from the container. *See id.* (disclosing in the ingredient list that cellulose powder is "to prevent caking"). Small amounts of potassium sorbate, a white salt, are also added as an antimycotic to prevent the growth of fungus and to protect the cheese from losing its flavor after it is grated. *Id.* (disclosing in the ingredient list that potassium sorbate is "to protect flavor").[2]

---

[2] An antimycotic is an antifungal substance intended to inhibit fungal or mold growth. *See generally* http://www.dictionary.com/browse/antimycotic. Potassium sorbate is a type of antimycotic that is used to preserve the cheese and protect flavor. *See Williams Foods, Inc. v. Eastman Chem. Co.*, No. 99-16680, 2001 WL 1298887, at *1 (D. Kan. Aug. 8, 2001) (noting that potassium sorbate is a "preservative[] used

As Kraft Heinz noted in its initial motion to dismiss, both cellulose and potassium sorbate are expressly authorized for use in grated cheeses. Critically, the FDA's standard of identity for "grated cheese" includes both anticaking agents (*e.g.*, cellulose powder) and "antimycotics" (*e.g.*, potassium sorbate).[3] 21 C.F.R. § 133.146(c). The FDA has explained that the use of anticaking agents is often "necessary" to "provide consumers with grated cheese products having the characteristic flavor and texture of freshly grated cheese," and that "the use of safe and suitable anticaking agents avoids the limitation, presents no safety concerns, and is clearly advantageous to consumers." *Grated Cheeses; Amendment of the Standard of Identity*, 51 Fed. Reg. 30210-01 (Aug. 25, 1986). Indeed, in defining "grated cheese," the FDA explicitly *rejected* a comment that argued "consumers expect grated cheeses to be pure and not to contain ingredients such as cellulose." *Id.*

The FDA has likewise approved the use of antimycotic agents in grated cheeses. 21 C.F.R. § 133.146(c). And as with anticaking agents, the FDA has rejected comments expressing concern over the use of antimycotic agents in grated cheeses. *See Cheeses; Amendment of Standards of Identity to Permit Use of Antimycotics on the Exterior of Bulk Cheeses During Curing & Aging*, 54 Fed. Reg. 32050-01 (Aug. 4, 1989). Although a commenter "expressed concern about the expanded use of antimycotics," the FDA found that the "safe and suitable" use of antimycotics did

---

primarily as mold-inhibitors in high-moisture . . . food products, such as . . . cheeses"); 21 C.F.R. § 101.22(j) (noting that a "mold inhibitor" can "help[] protect flavor").

[3] "A standard of identity specifies the defining characteristics of a given food." *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 621 (4th Cir. 2015) (citing 21 U.S.C. § 341). In addition to specifying those ingredients that manufacturers *must* place in a given food, a standard of identity "may also distinguish 'optional' ingredients that manufacturers can add to a food." *Id.* at 622 (citing 21 U.S.C. §§ 341 & 343(g)). In either case, the purpose of a standard of identity is to promote uniformity in food labeling and to insure "that individuals will encounter a label reflecting the food's actual contents — that consumers 'will get what they may reasonably expect to receive.'" *Id.*

4

not present health concerns. *Id.* at 32051. The FDA emphasized that because "label declaration is required for all optional ingredients, including antimycotics . . . consumers will have a means of avoiding those substances if they so choose." *Id.*

Despite the fact that the FDA has approved the use of both cellulose and potassium sorbate in grated cheese — and that the ingredient list on the back of each container clearly discloses the presence of those ingredients — over two dozen plaintiffs sued Kraft Heinz in early 2016, alleging that they were misled by the "100% Grated Parmesan Cheese," "100% Grated Parmesan & Romano Cheese," and "100% Three Cheese Blend - 100% Real Grated Parmesan, Romano, and Asiago Cheeses" labels because Kraft Heinz's products contain ingredients other than the identified cheese(s). Those lawsuits were then consolidated into a single class action complaint against Kraft Heinz. *See* ECF No. 120.

## II. The Court Finds That Kraft Heinz's Labeling Is Not Deceptive, and Plaintiffs Reiterate the Same Theory of Deception in Their Amended Complaint.

On August 24, 2017, the Court issued a Memorandum Opinion and Order in which it dismissed all of Plaintiffs' claims against Kraft Heinz. The Court rejected Plaintiffs' core theory of deception and held that Kraft Heinz's "labeling and marketing, when viewed as a whole," is "not deceptive." *Grated Parmesan*, 2017 WL 3642076, at *6.

On October 19, 2017, Plaintiffs filed their Amended Consolidated Class Action Complaint. ECF No. 225. It asserts the same causes of action, seeks to certify the same putative classes, and asserts the same basic theory of deception as Plaintiffs' initial Complaint — namely, that Kraft Heinz's use of the term "100% Grated Parmesan Cheese" is "likely to deceive the reasonable consumer because the Products are not 100% cheese." Am. Compl. ¶ 1. The Amended Complaint differs from Plaintiffs' initial complaint in only two material respects: (1) it references (and appends as exhibits) two expert reports by three linguistics professors analyzing the "semantics

and syntax" of the phrase "100% Grated Parmesan Cheese." *Id.* ¶ 30 & Exs. A-B; and (2) it mentions an unidentified survey that Plaintiffs claim supports their reading of the phrase. *Id.* ¶ 29.

## ARGUMENT

To survive a motion to dismiss, a complaint "must 'contain sufficient factual allegations to state a claim to relief that is plausible on its face.'" *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 661 (N.D. Ill. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief under Rule 8." *Martin v. Living Essentials, LLC*, 160 F. Supp. 3d 1042, 1045 (N.D. Ill. 2016), *aff'd*, 653 F. App'x 482 (7th Cir. 2016). Rather, the pleader must "allege more by way of factual content to 'nudg[e]' his claim" of unlawful action "'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 683 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Moreover, "[d]etermining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and *common sense*." *Iqbal*, 556 U.S. at 679 (emphasis added). In light of that guidance from the Supreme Court, courts have regularly dismissed lawsuits where common sense belies the allegations in the complaint. *See, e.g., Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690 (9th Cir. 2011) (affirming dismissal of false advertising claim that "def[ied] common sense"); *Spector*, 178 F. Supp. 3d at 670-71 (applying "common sense" standard to dismiss false advertising claim under Illinois law).

**I. Plaintiffs Still Have Not Plausibly Alleged That Kraft Heinz's "100% Grated Parmesan Cheese" Label Is Likely to Deceive a Reasonable Consumer.**

As the Court noted in its order dismissing the original consolidated complaint, Plaintiffs must show that the "allegedly deceptive statements were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Grated Parmesan*, 2017 WL 3642076, at *5 (citations

and internal quotation marks omitted). To satisfy this standard, "there must be 'more than a mere possibility that [a] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the reasonable consumer standard requires a probability that a *significant portion of the general consuming public* . . . , acting reasonably in the circumstances, could be misled." *Id.* (citations and internal quotation marks omitted) (emphasis added). Plaintiffs' amended complaint still falls well short of this standard.

### A. The Amended Complaint Still Does Not Plausibly Allege That the Phrase "100% Grated Parmesan Cheese," Viewed in Full Context, Is Deceptive.

Plaintiffs' amended complaint fails for the same reason that their initial complaint failed: it does not plausibly identify *any* affirmative misrepresentation on the labeling of Kraft Heinz's parmesan cheese products.[4] At best, it establishes that the phrase "100% Grated Parmesan Cheese" is ambiguous and that, viewed in a vacuum, *some* consumers might interpret this term to mean that the products contain nothing but parmesan cheese. As this Court explained, there are multiple plausible interpretations of "100% Grated Parmesan Cheese." *Id.* at *6. Even though this phrase "*might* be interpreted as saying that the product is 100% cheese and nothing else," the Court

---

[4] Plaintiffs in their amended complaint allege that the amount of cellulose "exceed[s] what is necessary for achieving anticaking effects in the Products. Am. Compl. ¶ 27. But this accusation is a red herring because the issue presented in this case is not whether the amount of cellulose is supposedly excessive; rather, the issue is the meaning of the term "100%" in the context of the full packaging. In any event, this allegation is implausible absent any details about what percentage of Kraft Heinz Grated Parmesan Cheese consists of cellulose or what percentage of cellulose consumers would regard as excessive. While Plaintiffs cite one of Kraft Heinz's patents for grated parmesan cheese to assert that grated parmesan cheese does not require *any* anticaking agents, *see id.* ¶ 26, the patent explicitly states that "[t]he grated Parmesan cheese may then be blending with anticaking materials and/or antimycotic materials prior to packaging for consumer use without further aging." U.S. Patent No. 6,242,016 B1. In any event, the FDA has rejected Plaintiffs' assertion that grated parmesan cheese should not contain *any* anticaking agents; instead, it has emphasized that the use of anticaking agents like cellulose is often "necessary" to "provide consumers with grated cheese products having the characteristic flavor and texture of freshly grated cheese." 54 Fed. Reg. at 32051.

explained, "it might also mean be an assertion that 100% of the cheese is parmesan cheese, or that the parmesan cheese is 100% grated." *Id.*

The Court surveyed the relevant case law for false-advertising claims across the country and found a common thread throughout the cases:

> Where a plaintiff contends that certain aspects of a product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous; if so, context can cure the ambiguity and defeat the claim . . . . [W]hile a reasonable consumer, lulled into a false sense of security by an unavoidable interpretation of an allegedly deceptive statement, may rely upon it without further investigation, consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight . . . .

*Id.* Put another way, it is well-established that "if a statement on a package or advertisement might be ambiguous or unclear in isolation, 'the presence of a disclaimer or similar clarifying language may defeat a claim of deception.'" *Id.* at *5 (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)); *see also, e.g., Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (requiring that advertisement be reviewed "as a whole" to assess whether it is misleading); *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008) ("If other information disclosed or available to the consumer dispels any tendency to deceive, there is no deception.").

In light of the ambiguity of the word "100%" in this case, "[r]easonable consumers would thus need more information before concluding that the labels promised only cheese and nothing more, and they would know exactly where to look to investigate—the ingredient list." *Grated Parmesan*, 2017 WL 3642076, at *5. The Court emphasized that doing so "would inform [Plaintiffs] that the product contained non-cheese ingredients." *Id.* at *6. Even if consumers would not "expect to find *cellulose* (or any other specific additive) in a container of unrefrigerated, shelf-stable cheese," the Court concluded, "they would still suspect that *something* other than

8

cheese might be in the container, and so would turn it around, enabling them to learn the truth from a quick skim of the ingredient label." *Id.* at *7.[5] Here, it is beyond dispute that Kraft Heinz Grated Parmesan Cheese prominently discloses the presence of both cellulose powder and potassium sorbate — two ingredients that the FDA has included as part of the standard of identity that defines a "grated cheese" — on the ingredient label.[6] *See* Smith Decl. ¶¶ 2-4.

Further, Plaintiffs' allegation that they believed Kraft Heinz Grated Parmesan Cheese contained no additional ingredients, despite the disclosure on the labeling that they contained both cellulose and potassium sorbate, is especially implausible because the products are packaged, shelf-stable containers of Parmesan cheese that are cased in plastic containers and are placed on unrefrigerated supermarket shelves. A reasonable consumer understands that such a packaged product could contain other ingredients to prevent the grated cheese from clumping together or developing mold.

Numerous courts have applied "common sense" (as urged by the Supreme Court in *Iqbal*) in dismissing similar claims challenging the use of purportedly "artificial" ingredients in packaged, shelf-stable food products. *See, e.g., Veal v. Citrus World, Inc.*, No. 12-801, 2013 WL 120761, at *4 n.4 (N.D. Ala. Jan. 8, 2013) (rejecting challenge to lawsuit challenging labeling of "fresh

---

[5] *See also e.g., Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (dismissing consumer fraud claim when "any potential ambiguity" about the ingredients in the challenged products could "be resolved by the back panel of the products, which lists all ingredients in order of predominance, as required by the FDA"); *McKinnis v. Sunny Delight Beverages Co.*, No. 07-2034, 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007) (dismissing claim where any ambiguity about the fruit content of defendant's products could "readily and accurately" be resolved "by reading the front and back of the label").

[6] It is completely irrelevant that Plaintiffs allege that some of Kraft Heinz's other competitors do not use antimycotic agents in their grated cheeses. *See* Am. Compl. ¶ 28. The labels of Kraft Heinz's Grated Parmesan Cheese make clear that they *do* use potassium sorbate, and there is no dispute that federal law expressly authorizes the use of potassium sorbate (or other antimycotics). 21 C.F.R. § 133.146(c).

squeezed" orange juice because "common sense dictates that by the time the [bottled orange juice] makes its way to a grocery store and sits on a shelf awaiting purchase, it is no longer 'fresh'"); *Red v. Kraft Foods, Inc.,* No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (dismissing challenge to packaged crackers labeled as "made with real vegetables" and reasoning that "a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables"). Indeed, the Court stressed this exact point in dismissing Plaintiffs' initial Complaint and concluding that their "nothing-but-cheese" reading defied common sense:

> The products are packaged and shelf-stable at room temperature, a quality that reasonable consumers know is not enjoyed by pure cheese. Cheese is a dairy product, after all, and reasonable consumers are well aware that pure dairy products spoil, grow blue, green, or black fuzz, or otherwise become inedible if left unrefrigerated for an extended period of time.

*Grated Parmesan*, 2017 WL 3642076 at *6. And because Plaintiffs have alleged no additional facts plausibly suggesting that this "nothing-but-cheese" reading is consistent with common sense or reasonable consumer expectations, this Court should dismiss their amended complaint.

**B.     Plaintiffs' Linguistic Expert Reports Have No Bearing on How a Reasonable Consumer Would View the Packaging as a Whole.**

Plaintiffs attempt to rehabilitate their theory of the case by appending two expert reports to their amended complaint. These expert reports, which were prepared by three linguistics professors for use in this lawsuit, apply an almost incoherent, hyper-technical linguistic analysis (involving arcane concepts like "informativity," "stacking modifiers," and "H.P. Grice's theory of conversational implicature") to argue that Plaintiffs' reading of the term "100% Grated Parmesan Cheese" is the only plausible one. *See* Am. Compl. ¶ 30 & Exs. A-B. The professors' reasoning is so convoluted that Plaintiffs do not even bother to try to explain it in their amended complaint, and instead just mention that three professors have opined that their reading of the phrase is the only plausible one. These expert reports fail to salvage Plaintiffs' lawsuit for at least two

independent reasons.

### 1     Plaintiffs' Expert Reports Are Procedurally Improper.

This Court should disregard Plaintiffs' expert reports because they are not "written instruments" within the meaning of Federal Rule of Civil Procedure 10(c). Under Rule 10(c), a pleading can attach and incorporate a "written instrument," which is "a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement." *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1220 (S.D. Cal. 2001). Materials that satisfy this definition "consist largely of documentary evidence, specifically, contracts, notes, and other writings on which a party's action or defense is based[.]" *Id.* (quoting *Rose v. Bartle*, 871 F.2d 331, 339 n. 3 (3d Cir. 1989)).

In contrast, expert reports generated for the purpose of prosecuting a lawsuit do not fall within this definition because they were not created independently of the litigation. For instance, in *Stuart v. Cadbury Adams USA, LLC*, the court had dismissed the plaintiff's complaint after determining that it "defied common sense" that a reasonable consumer would believe that chewing Trident White alone would "whiten teeth" by removing stains without brushing one's teeth regularly. No. 09-6295, 2010 WL 1407303, at *3 (C.D. Cal. Apr. 5, 2010), *aff'd*, 458 F. App'x 689 (9th Cir. 2011). The plaintiff's amended complaint included a new expert report purporting to show that reasonable consumers believe that "teeth whitening" and "stain removal" are two separate concepts. *Id.* The court declined to consider the report, holding that it was "not a 'written instrument' that can be incorporated into a pleading" since it "was generated for the purposes of this litigation." *Id.* at *4; *see also DeMarco*, 149 F. Supp. 2d at 1220, 1222 (holding that expert affidavit did not qualify as a "written instrument" because it "represent[ed] a piece of evidentiary matter generated by a retained expert who had no contact with [defendant]").

Similarly here, the expert reports submitted by Plaintiffs must be stricken because they do

11

not form the basis of Plaintiff's claims, did not exist independently of the lawsuit, and were expressly created for use in this litigation. The Court should accordingly disregard any allegations in the amended complaint based on the opinions set forth in these improperly-submitted reports. *See, e.g.*, *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285-86 (5th Cir. 2006) (affirming refusal to consider expert report attached to amended complaint because "considering such opinions might require ruling on the expert's qualifications [which] would be inappropriate at the pleading stage."); *Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580, 2015 WL 1268271, at *3 (S.D. Fla. Mar. 19, 2015) (striking expert report and declining to consider expert opinion statements incorporated into amended complaint).

        2        Plaintiffs' Expert Reports Are Divorced from Consumer Expectations and Confirm That the Phrase "100% Grated Parmesan Cheese" Is Ambiguous.

Even if the Court were to consider Plaintiffs' expert reports (which it should not), those reports do not salvage Plaintiffs' theory of deception because they offer virtually no insight into how a reasonable consumer would interpret the phrase "100% Grated Parmesan Cheese." Whatever conclusion that these three professors reached about the "syntax and semantics" of the phrase "100% Grated Parmesan Cheese" is not probative of how an ordinary, reasonable consumer (*i.e.,* one without a Ph.D. in linguistics) would interpret that phrase. *See, e.g.*, *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 510 (2003) (noting that the reasonable consumer standard is not measured from the perspective of an "exceptionally acute and sophisticated" consumer). While a Ph.D. in linguistics may take into account "informativity" or "H.P. Grice's theory of conversational implicature" in reading a packaged cheese products, a reasonable consumer certainly does not.

These experts' conclusions are particularly unhelpful because they consider the meaning of the phrase "100% Grated Parmesan Cheese" in isolation from the packaging "as a whole,"

which is the relevant context in which the Court should evaluate the meaning of this phrase. *Freeman*, 68 F.3d at 290. Their analysis is completely divorced from other key aspects of the packaging, such as the other statements on the label (including the ingredient list) or the nature of the products themselves (including, among other things, the fact that they are packaged and shelf-stable cheese products). Indeed, it is not clear if these experts have ever *seen* a container of Kraft Heinz's parmesan cheese products, or if they are even aware that these products are sold in plastic containers (as opposed to a container of parmesan cheese grated in-store and sold by the pound that one might buy at certain supermarkets). Accordingly, their expert reports fail to address the relevant question in this case — whether, viewed *in context*, the phrase "100% Grated Parmesan Cheese" would mislead a reasonable consumer. *See Fink*, 714 F.3d at 742 ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial"); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-3826, 2015 WL 5579872, at *16 (E.D.N.Y. Sept. 22, 2015) ("In assessing the likelihood that a reasonable consumer would be misled, it is necessary to consider not only the allegedly misleading statement but also the surrounding context based on the content of the entire label or advertisement at issue.").

Finally, even if these three experts were correct that their interpretation of the phrase "100% Grated Parmesan Cheese" is the *best* reading (which they are not), it does not establish that their interpretation is the *only* plausible reading of this phrase. Indeed, Professors Curzan and Keshet expressly concede that "phrases with three modifiers have the potential for multiple interpretations in terms of how the modifiers stack." Am. Compl., Ex. A, at 1. In view of these "multiple interpretations" of the phrase "100% Grated Parmesan Cheese," a reasonable consumer would not "rely upon it without further investigation"; instead, and as the Court made clear, he or she would consult the ingredient label, which would disclose that Kraft Heinz Grated Parmesan

Cheese contains both cellulose and potassium sorbate. *See Grated Parmesan*, 2017 WL 3642076 at *6 (emphasizing that "consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight").

### C. Plaintiffs' Unidentified Survey Cannot Salvage Their Claim.

Plaintiffs also make a half-hearted attempt to avoid dismissal by referencing a "recent survey conducted in connection with this litigation" that purportedly found that the "vast majority" of consumers believe that Kraft Heinz Grated Parmesan Cheese consists of "100% cheese and do[es] not contain fillers or artificial ingredients." Am. Compl. ¶ 29.

But Plaintiffs do not provide *any* details about the survey. There is not a single detail about the sample size, survey demographics, question design, or any other aspect of this survey sufficient to substantiate this allegation. For example, did the survey test people who actually have purchased Kraft Heinz Grated Parmesan Cheese in the past? Did the survey allow the respondent to view the entire packaging? Plaintiffs cannot avoid dismissal by vaguely referencing a survey that lacks specific or particularized facts. *See, e.g., El-Hallani v. Huntington Nat'l Bank*, No. 13-12983, 2014 WL 2217237, at *4 (E.D. Mich. May 29, 2014), *rev'd and remanded on other grounds,* 623 F. App'x 730 (6th Cir. 2015) ("Carter's survey must set forth sufficient facts . . . in order for Plaintiffs to satisfy Rule 8(a)'s pleading requirements"); *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (holding that a plaintiff must "provide 'specific facts' to support the legal claims asserted"). Further, as this Court pointed out, Plaintiffs' claims fail as a matter of law under the objective reasonable consumer standard, regardless of the results of any survey. *Grated Parmesan*, 2017 WL 3642076 at *8 ("[T]he question is whether Plaintiffs' (alleged) subjective belief that the products promised only cheese was objectively reasonable."); *see also Goldman v. Bayer AG*, No. 17-647, 2017 WL 3168525, at *10 (N.D. Cal. July 26, 2017) (denying leave to amend complaint to commission a consumer survey because the plaintiff's claim was not

plausible as a matter of law).

## CONCLUSION

This Court should dismiss Plaintiffs' Amended Consolidated Class Action Complaint with prejudice and without leave to amend.

Dated: November 30, 2017    Respectfully submitted,

JENNER & BLOCK LLP

By: */s/ Dean N. Panos*

Dean N. Panos
353 N. Clark Street
Chicago, IL 60654-3456
Tel.: (312) 222-9350
dpanos@jenner.com

Attorneys for Defendant
The Kraft Heinz Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed on November 30, 2017 with the Clerk of the Court by using the CM/ECF system which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.


Dated: November 30, 2017             By: */s/ Dean N. Panos*
                                                                                         Dean N. Panos