# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: 100% GRATED PARMESAN CHEESE MARKETING AND SALES PRACTICES LITIGATION | Civil No. 1:16-cv-05802 <br> MDL 2705 <br><br> Judge Gary S. Feinerman |
| *This Document Relates to All Cases* | |

### PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AMENDED CONSOLIDATED CLASS ACTION COMPLAINTS

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

STATEMENT OF FACTS ..................................................................................1

ARGUMENT ......................................................................................................2

    I.       THE AMENDED COMPLAINTS ADEQUATELY PLEAD THAT THE 100% CLAIMS ARE LIKELY TO MISLEAD A REASONABLE CONSUMER ........2

        A.     Defendants May Not Use the Ingredient List as a Shield from Liability ........4

        B.     The Ambiguity Test Relies on Distinguishable Cases ....................................6

        C.     Even if the Products are Shelf Stable, Reasonable Consumers Can Believe the Products Contain Nothing but Hard Cheeses ............................................9

    II.      PLAINTIFFS' CLAIMS ARE NOT PREEMPTED ...........................................10

    III.    PLAINTIFFS ADEQUATELY PLEAD CLAIMS UNDER STATE CONSUMER PROTECTION STATUTES .........................................................11

        A.     Plaintiffs Plausibly Plead the 100% Claims Are Likely to Deceive a Reasonable Consumer ..................................................................................11

        B.     Defendants' Additional Challenges to the Individual Claims Lack Merit ....11

    IV.    PLAINTIFFS STATE CLAIMS FOR BREACH OF WARRANTY .................13

        A.     Defendants Breached Their Express Warranties ...........................................13

        B.     Plaintiffs Allege a Breach of Implied Warranty ...........................................14

    V.      PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT ...................15

    VI.    THE LAW OF THE CASE DOCTRINE DOES NOT APPLY .........................16

CONCLUSION ..................................................................................................17

i

# TABLE OF AUTHORITIES

Cases

*Ackerman v. Coca-Cola Co.*,
   No. 09-cv-00395, 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010)..........................4, 8

*Arizona v. California*,
   460 U.S. 605 (1983)..........................................................................................................16

*Atik v. Welch Foods, Inc.*,
   No. 15-cv-05405, 2016 U.S. Dist. LEXIS 136056 (E.D.N.Y. Sep. 30, 2016) ..........................8

*Black v. Lane*,
   22 F.3d 1395 (7th Cir. 1994) ............................................................................................16

*Blue Buffalo Co. v. Nestlé Purina Petcare Co.*,
   No. 15-cv-00384, 2015 U.S. Dist. LEXIS 74905 (E.D. Mo. June 10, 2015) ............................4

*Bober v. Glaxo Wellcome Plc*,
   246 F.3d 934 (7th Cir. 2001) ..............................................................................................7

*Bohac v. Gen. Mills, Inc.*,
   No. 12-cv-05280, 2014 U.S. Dist. LEXIS 41454 (N.D. Cal. Mar. 26, 2014) ..........................13

*Bohlke v. Shearer's Foods, LLC*,
   No. 14-cv-80727, 2015 U.S. Dist. LEXIS 6054 (S.D. Fla. Jan. 20, 2015)..............................13

*Boswell v. Costco Wholesale Corp.*,
   No. 16-cv-00278, 2016 U.S. Dist. LEXIS 73926 (C.D. Cal. June 6, 2016)..............................15

*Campen v. Frito-Lay N. Am., Inc.*,
   No. 12-cv-01586, 2013 U.S. Dist. LEXIS 47126 (N.D. Cal. Apr. 1, 2013)..............................5

*City of L.A. v. Santa Monica BayKeeper*,
   254 F.3d 882 (9th Cir. 2001) ............................................................................................17

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) ............................................................................................7

*Daugherty v. Am. Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (2006) ............................................................................................7

*Dzielak v. Whirlpool Corp.*,
   26 F. Supp. 3d 304 (D.N.J. 2014)......................................................................................15

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013)................................................................................9

*Firestone Tire & Rubber Co. v. FTC*,
481 F.2d 246 (6th Cir. 1973) ..............................................................................3

*Freeman v. Time, Inc.*,
68 F.3d 285, 289 (9th Cir. 1995) .........................................................................8

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014).....................................................................6

*Hudock v. LG Elecs. U.S.A., Inc.*,
No. 16-cv-01220, 2017 U.S. Dist. LEXIS 44681 (D. Minn. Mar. 27, 2017) ............................12

*In re ConAgra Foods Inc.*,
908 F. Supp. 2d 1090 (C.D. Cal. 2012) ..............................................................15

*In re Ferrero Litig.*,
794 F. Supp. 2d 1107 (S.D. Cal. 2011)...............................................................15

*In re Novartis Corp.*,
127 F.T.C. 580 (1999)..........................................................................................4

*In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*,
155 F. Supp. 3d 772 (N.D. Ill. 2016) ..................................................................13

*In re Telebrands Corp.*,
140 F.T.C. 278 (2005)...........................................................................................3

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) ...............................................................7

*Key v. Sullivan*,
925 F.2d 1056 (7th Cir. 1991) ...........................................................................16

*Klein v. Chevron U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012) ............................................................................7

*Kraft, Inc. v. F.T.C.*,
970 F.2d 311 (7th Cir. 1992) ........................................................................ 3, 11

*Krommenhock v. Post Foods, LLC*,
255 F. Supp. 3d 938 (N.D. Cal. 2017) .................................................................5

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ...................................................................................................3

*Lam v. General Mills, Inc.*,
   859 F. Supp. 2d 1097 (N.D. Cal. 2012) ....................................................................5, 6

*Manchouck v. Mondeléz Int'l Inc.*,
   No. 13-cv-02148, 2013 U.S. Dist. LEXIS 138877 (N.D. Cal. Sept 26, 2013) ...........7

*McKinniss v. Kellogg USA*,
   No. 07-cv-02611, 2007 U.S. Dist. LEXIS 96106 (C.D. Cal. Sept. 19, 2007) ............9

*Menzer v. United States*,
   200 F.3d 1000 (7th Cir. 2000) ..................................................................................17

*Mervyn v. Nelson Westerberg, Inc.*,
   76 F. Supp. 3d 715 (N.D. Ill. 2014) ..........................................................................16

*Pepper v. United States*,
   562 U.S. 476 (2011) ..................................................................................................17

*Piro v. Exergen Corp.*,
   No. 15-cv-11834, 2016 U.S. Dist. LEXIS 41176 (D. Mass. Mar. 29, 2016) ...........15

*Silva v. Unique Beverage Co., LLC*,
   No. 17-cv-00391, 2017 U.S. Dist. LEXIS 179362 (D. Or. Oct. 30, 2017) ...............11

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) .............................................................................. 2, 3, 11

*Thornton v. Pinnacle Foods Grp. LLC*,
   No. 16-cv-00158, 2016 U.S. Dist. LEXIS 99975 (E.D. Mo. Aug. 1, 2016) ...........4, 8

*United States v. Harris*,
   531 F.3d 507 (7th Cir. 2008) ....................................................................................16

*United States v. Smith*,
   389 F.3d 944 (9th Cir. 2004) ....................................................................................17

*Wheeler v. Sunbelt Tool Co.*,
   537 N.E.2d 1332 (Ill. Ct. App. 1989) .......................................................................15

*White v. United States*,
   371 F.3d 900 (7th Cir. 2004) ....................................................................................16

*Williams v. Gerber*,
   552 F.3d 934 (9th Cir. 2008) ...............................................................................3, 4, 5, 6, 7, 11

*Workman v. Plum, Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) ..................................................................................6, 7

*York v. Andalou Naturals, Inc.*,
   No. 16-cv-00894, 2016 U.S. Dist. LEXIS 169923 (S.D. Ill. Dec. 8, 2016) ................................8

*Zemola v. Carrington Tea Co., LLC*,
   No. 17-cv-00760, 2017 U.S. Dist. LEXIS 179659 (S.D. Cal. Oct. 30, 2017) ...........................15

Plaintiffs Ann Bell, Alan Ducorsky, Alfonso Fata, Karen Ford, Dan Lang, Samantha Lewin, Yvette Nash, Carmen Pellitteri, Rosemary Quinn, Nancy Reeves, Erin Rudder, Larry Rollinger, Jr., Rita Schmoll, Becky Sikes, Adam Weiss, Michael Wills, and Rodney Zachary ("Plaintiffs") submit the following consolidated opposition to defendants Target Corporation and ICCO-Cheese Company, Inc.; Wal-Mart Stores, Inc.; Albertsons Companies, Inc., Albertsons LLC, and Supervalu, Inc.; Publix Super Markets, Inc.; and Kraft Heinz Company's (collectively, "Defendants") motions to dismiss Plaintiffs' amended consolidated class action complaints.

## INTRODUCTION

Defendants' motions to dismiss ignore the additional allegations Plaintiffs assert and controlling law, relying primarily on the Court's previous ruling on the prior complaints. In dismissing those complaints, the Court misapplied the law on false advertising. The amended complaints sufficiently plead that a reasonable consumer would be deceived by Defendants' labels.

In their amended complaints, Plaintiffs go above and beyond what is required to adequately plead the claims at issue, citing consumer surveys and expert statements for support that reasonable consumers take Defendants at their word: the labels state the products are 100% cheese, and a consumer can reasonably believe that means the products are 100% cheese. But they are not. All the arguments Defendants raise in opposition are based on mischaracterizations of the facts and the law. Defendants' motions should be denied.

## STATEMENT OF FACTS

Plaintiffs responded to the Court's order dismissing their Consolidated Class Action Complaints by including additional factual allegations in their Amended Consolidated Class Action Complaints. The new allegations include a recent survey showing that the vast majority of purchasers surveyed (from 85% to greater than 90%) believe that the labels mean the Products are

1

100% cheese and fully grated. ECF No. 225 ¶ 29 (in excess of 90%); ECF No. 226 ¶ 17 (in excess

of 90%); ECF No. 227 ¶ 24 (in excess of 85%); ECF No. 228 ¶ 24 (in excess of 90%); ECF No.

229 ¶ 25 (in excess of 85%). The amendments also include analyses from linguists demonstrating

that the labels are not ambiguous, but have only one meaning—namely, that the Products consist

entirely of grated parmesan cheese. ECF No. 225 ¶ 30; ECF No. 226 ¶ 18; ECF No. 227 ¶ 25; ECF

No. 228 ¶ 25; ECF No. 229 ¶ 26. Plaintiffs also include facts, including admissions from Kraft,

that fully cured Parmesan cheese keeps almost indefinitely, and at certain moisture levels there is

no risk of clumping or agglomeration. ECF No. 225 ¶ 26; ECF No. 226 ¶ 15; ECF No. 227 ¶ 22;

ECF No. 228 ¶ 21; ECF No. 229 ¶ 22. Further, the use of antimycotics in the Products is not a

universal practice; in fact, Essential Everyday brand does not include it as an ingredient. ECF No.

225 ¶ 28; ECF No. 226 ¶ 16; ECF No. 228 ¶ 23; ECF No. 229 ¶ 24. The amended complaints also

allege certain Products contain excessive quantities of cellulose powder, and the Products falsely

describe the filler as included "for anticaking purposes" on the ingredients panel. ECF No. 225 ¶

27; ECF No. 227 ¶23; ECF No. 228 ¶ 22; ECF No. 229 ¶ 23.

## ARGUMENT

## I.    THE AMENDED COMPLAINTS ADEQUATELY PLEAD THAT THE 100% CLAIMS ARE LIKELY TO MISLEAD A REASONABLE CONSUMER

"[S]tate consumer protection laws require proof that a statement is either (1) literally false,

or (2) likely to mislead (either through a statement or material omission) a reasonable consumer."

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). This may be satisfied by proof

that a statement is likely to mislead a reasonable consumer, even if the statement is literally true.

*Id.* at 761–62. It is not the law that a package must contain literal falsehoods to be deceptive. *Id.*

at 761. Whether an advertisement is likely to deceive is a question of fact not typically determined

on a pleading motion: "the determination [] whether an ad has a tendency to deceive is an

2

impressionistic one more closely akin to a finding of fact than a conclusion of law." *Id.* at 762 (quoting *Kraft, Inc. v. F.T.C.*, 970 F.2d 311, 317 (7th Cir. 1992)).

If a marketing message is likely to mislead a reasonable consumer, then the advertising violates deceptive advertising laws. *Id.* at 762. As the California Supreme Court explained: "Simply stated: labels matter." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 328 (2011). The marketing industry is based on this premise, and "consumers rely on the accuracy of those representations in making their buying decisions." *Id.* Further, consumers do not have a duty to investigate. *See Williams v. Gerber*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."). The question is whether the advertisement could mislead a reasonable consumer, without more.

Consumer surveys are the gold standard for determining the advertising message conveyed to a reasonable consumer. *See Suchanek*, 764 F.3d at 753; *see also Kraft*, 970 F.2d at 318 ("The most convincing extrinsic evidence is a survey of what consumers thought upon reading the advertisement in question . . . ."). Based on a consumer survey conducted in this litigation, over 85% of purchasers of the Products understand the labels to mean the Products are 100% cheese and fully grated. *See* ECF No. 225 ¶¶3, 29; ECF No. 226 ¶¶3, 17; ECF No. 227 ¶¶3, 24; ECF No. 228 ¶¶3, 24; and ECF No. 229 ¶¶3, 25. This percentage greatly exceeds the 10–20% standard generally used in determining whether an advertising message misleads a reasonable consumer. *See In re Telebrands Corp.*, 140 F.T.C. 278, 291 (2005) (10.5% to 17.3% "was sufficient to conclude that the challenged claims were communicated"), *aff'd*, 457 F.3d 354 (4th Cir. 2006); *Firestone Tire & Rubber Co. v. FTC*, 481 F.2d 246, 249 (6th Cir. 1973) (court unwilling to

"overturn the deception findings of the Commission if the ad thus misled 15% (or 10%) of the buying public"); *In re Novartis Corp.*, 127 F.T.C. 580, 685 (1999), *aff'd*, 223 F.3d 783 (D.C. Cir. 2000) (30-45% is "more than a significant minority").

## A. Defendants May Not Use the Ingredient List as a Shield from Liability

"[T]he mere presence of an ingredient statement on the back of a product does not eliminate the possibility that reasonable consumers may be misled." *Thornton v. Pinnacle Foods Grp. LLC*, No. 16-cv-00158, 2016 U.S. Dist. LEXIS 99975, at *7 (E.D. Mo. Aug. 1, 2016) (quoting *Blue Buffalo Co. v. Nestlé Purina Petcare Co.*, No. 15-cv-00384, 2015 U.S. Dist. LEXIS 74905, at *11 (E.D. Mo. June 10, 2015)). *See also Ackerman v. Coca-Cola Co.*, No. 09-cv-00395, 2010 U.S. Dist. LEXIS 73156, at *62-63 (E.D.N.Y. July 21, 2010) ("[T]he presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by [defendant's] labeling and marketing. Morever [*sic*], even reasonable consumers may not read the nutritional label prior to every purchase of a new product.") (citation omitted). The effect such an ingredient list may have on a reasonable consumer's understanding of advertising and product labels requires a factual inquiry. *Thornton*, 2016 U.S. Dist. LEXIS 99975, at *7.

In *Williams*, the Ninth Circuit held that despite "[t]he ingredient list on the side of the box appear[ing] to comply with FDA regulations[,] . . . [w]e do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception." 552 F.3d at 939. In setting forth this pronouncement, the Ninth Circuit made no distinction between literal falsehoods, implicit falsehoods, or technically true but misleading falsehoods, or whether the labels were clear or ambiguous. For example, the *Williams* court found that a statement that the product

4

"was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural," and that a package picturing a number of different fruits could "potentially suggest[] (falsely) that those fruits or their juices are contained in the product." *Id.* Likewise, despite the "nutritious" claim being "difficult to measure concretely," the court found it "certainly contributes . . . to the deceptive context of the packaging as a whole," for "[i]t is not difficult to choose statements, designs, and devices which will not deceive." *Id.* at 939 n.3 (citations omitted).

Allowing a manufacturer who creates a misleading label to escape liability in the fine print regardless of the evidence of deception would abrogate state false advertising laws, contrary to their stated purpose and directives to liberally interpret the laws in a manner that protects consumers. The benefit of the doubt is given to the consumer, not the advertiser. *See Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 964 (N.D. Cal. 2017) ("Because the 'features' on the front of the package could deceive a reasonable consumer, that the actual ingredients were disclosed on the back in the Panel did not defeat the claim on a motion to dismiss."); *Campen v. Frito-Lay N. Am., Inc.*, No. 12-cv-01586, 2013 U.S. Dist. LEXIS 47126, at *33-36 (N.D. Cal. Apr. 1, 2013) (the court determined defendants' argument that a reasonable consumer would "sate any further curiosity by reading the nutrition box" failed and held that plaintiffs' "All Natural" claims under the UCL, FAL, and CLRA survived precisely because "[t]he label is ambiguous" and "could suggest either that the labeled product is exclusively natural or that the product simply includes some all-natural ingredients").

The 100% Claims are similar to those in *Lam v. General Mills, Inc.*, where "the statement 'made with real fruit' appears in large and colorful letters on the side panel of the packaging of strawberry Fruit Roll-Ups," and "the word 'strawberry' appears in large letters on the front, back,

top, and bottom panels." 859 F. Supp. 2d 1097, 1104 (N.D. Cal. 2012). The court stated that even though "[i]t is true that General Mills lists the ingredients of the Fruit Snacks in small print on the bottom of the side panel," and even though the snacks did contain fruit, "[a]fter seeing these prominent aspects of the packaging, a reasonable consumer might be surprised to learn that a substantial portion of each serving of the Fruit Snacks consists of partially hydrogenated oil and sugars." *Id. See also Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478-80 (S.D.N.Y. 2014) ("[T]he Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer" where they contain the phrase "Active Naturals," because even though the cosmetics did contain active, natural ingredients, consumers could be misled into believing that they contained only natural ingredients.). The *Lam* court held that "at the pleading stage, the Court cannot conclude that a reasonable consumer should be expected to look beyond 'made with real fruit' in order to discover the truth in the small print." *Id.*

Like *Williams* and *Lam*, this case does not present "the rare situation in which granting a motion to dismiss is appropriate" because here, the advertising message "could likely deceive a reasonable consumer." *Williams*, 552 F.3d at 939. Thus, "[t]he district court erred in determining as a matter of law that the [] packaging was not deceptive." *Id.* at 940.

**B. The Ambiguity Test Relies on Distinguishable Cases**

The ambiguity test appears to be distilled from decisions that do not apply here. *Workman v. Plum, Inc.*, for instance, is distinguishable because unlike the present case, the *Workman* "[p]laintiff concede[d] that the labels contain no affirmative misrepresentations." 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015). The products at issue "merely show[ed] pictures of featured ingredients contained in the puree pouch and fruit bars," and "[n]o reasonable consumer would expect the size of the flavors pictured on the label to directly correlate with the predominance of

the pictured ingredient in the puree blend." *Id.* at 1036. Importantly, *Workman*, however dubious the distinction, held that *Williams* applies to affirmative misrepresentations, such as the ones here that the Products are 100% cheese when they are not. *See Workman*, 141 F. Supp. 3d at 1036 (the "court of appeals' main reservations about the deceptiveness of the fruit juice snacks label related to its affirmatively false statements," including pictures of fruits not actually contained in the product and statements that the snacks were made with "other all natural ingredients" when many of the ingredients were unnatural). *See also Manchouck v. Mondeléz Int'l Inc.*, No. 13-cv-02148, 2013 U.S. Dist. LEXIS 138877, at *9-10 (N.D. Cal. Sept 26, 2013) (holding *Williams* did not apply where there was not an affirmative misrepresentation). *But see Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) ("Fraudulent omissions are actionable under both [the CLRA and the UCL].") (citing *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1379-83 (2012)); *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006) (an omission is actionable under the CLRA if it is contrary to a representation actually made by the defendant or the defendant was obligated to disclose it); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1172-73 (C.D. Cal. 2010) (same under numerous states' laws).

Likewise, in *Bober v. Glaxo Wellcome Plc*, 246 F.3d 934 (7th Cir. 2001), there were no affirmative misrepresentations. The plaintiff alleged that the statements that Zantac 75 and Zantac 150 were different medications and those advising consumers to consult their physicians before substituting Zantac 75 for Zantac 150 were misleading, but those statements were true. *Id.* at 938-40. The plaintiff also stated that the defendant falsely claimed that Zantac 75 and Zantac 150 do not contain the same medicine, but no such claim was ever made. *Id.* at 938-39. Here, the 100% Claims are affirmative misrepresentations, and therefore, Defendants should not be permitted to

invoke an "ingredient list defense." *See York v. Andalou Naturals, Inc.*, No. 16-cv-00894, 2016 U.S. Dist. LEXIS 169923, at *8 (S.D. Ill. Dec. 8, 2016) (holding that the "'ingredient list' defense cannot, as a matter of law, defeat [consumer protection] claim[s]").

*Freeman v. Time, Inc.* is distinguishable because "[t]he qualifying language appears immediately next to the representations it qualifies and no reasonable reader could ignore it." 68 F.3d 285, 289 (9th Cir. 1995). The *Freeman* plaintiff received mailers for a sweepstakes that contained statements representing he won the sweepstakes followed or preceded by language in the same sentence indicating he would win only if he returned a winning prize number. *Id.* at 287. That is not the case here, where the "100% Claims" are prominently displayed on the front of the label, with the additives listed in small print on the back of the container nowhere near the representations. At the status hearing on December 4, 2017 (ECF No. 252), the Court asked whether it was difficult for consumers to turn their wrists to look at the ingredient list. But that is not the test. The test is whether a reasonable consumer is likely to be misled by the labeling, and, as the evidence pleaded in the amended complaint demonstrates, reasonable consumers do, in fact, believe the products consist of only cheese. *See Thornton*, 2016 U.S. Dist. LEXIS 99975, at *7. *See also Atik v. Welch Foods, Inc.,* No. 15-cv-05405, 2016 U.S. Dist. LEXIS 136056, at *27, 31 (E.D.N.Y. Sep. 30, 2016) ("While Defendants may ultimately prevail on their argument that based on the Products' labeling, a reasonable consumer would not assume that the Products contain significant amounts of the fruit depicted on the label, the allegations in the Complaint 'do not present the type of patently implausible claim that warrants dismissal as a matter of law based on the reasonable consumer prong.'") (citation omitted); *Ackerman*, 2010 U.S. Dist. LEXIS 73156, at *63 ("[E]ven reasonable consumers may not read the nutritional label prior to every purchase of a new product.").

*McKinniss v. Kellogg USA*, No. 07-cv-02611, 2007 U.S. Dist. LEXIS 96106 (C.D. Cal. Sept. 19, 2007), was a case where the plaintiff interpreted clearly fanciful statements in an unnatural or debatable manner. *See* ECF No. 216 at *26-27. The *McKinniss* court found the plaintiff did not state a claim because the representations included the "fanciful" term "Froot Loops"—a term that requires further investigation to determine what exactly "froot" and "loops" are. *McKinniss*, 2007 U.S. Dist. LEXIS 96106, at *10-11. Stated another way, the plaintiff's interpretation did not meet the reasonable consumer threshold. Here, the 100% Claims are not fanciful or "merely vague or suggestive." ECF No. 216, at *27. They explicitly state that the Products are 100% grated cheese when they are not, and reasonable consumers were misled.

Even *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013), which states that "under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception," does not support the ambiguity test. There, the plaintiffs misquoted the language of the advertisement for Time Warner's "always-on," "blazing speed," and "fastest, easiest way to get online" internet service so that the allegations of the complaint were materially inconsistent with the sole advertisement the plaintiffs submitted to the court. *Id.* at 741-42. The court "easily conclude[d] that Plaintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss." *Id.* at 742. Here, Plaintiffs have submitted the misleading representations in their entirety, and they sufficiently demonstrate the plausibility of reasonable consumers being deceived by the 100% Claims.

### C. Even if the Products are Shelf Stable, Reasonable Consumers Can Believe the Products Contain Nothing But Hard Cheeses

Finally, a reasonable consumer would not necessarily "suspect that *something* other than cheese might be in the container" based on an assumption of fact that the hard cheeses involved here—Parmesan, Romano, and Asiago—will "spoil, grow blue, green, or black fuzz, or otherwise

become inedible if left unrefrigerated for an extended period of time." ECF No. 216 at 17. This assumption is factually incorrect. According to the U.S. Department of Agriculture Food Safety and Inspection Service, "[a]s a general rule, hard cheeses such as cheddar, processed cheeses (American), and both block and grated Parmesan do not require refrigeration for safety, but they will last longer if kept refrigerated."[1] As Plaintiffs allege, Defendant Kraft agrees that "[f]ully cured Parmesan cheese is very hard and keeps almost indefinitely," and at the typical moisture level of Parmesan available in the marketplace, "there is little problem of clumping or agglomeration of the grated cheese product." ECF No. 225 ¶26 (quoting U.S. Patent No. 6,242,016 B1). *See also* ECF No. 226 ¶15; ECF No. 227 ¶22; ECF No. 228 ¶21; and ECF No. 229 ¶22. Defendants' factual assertions only serve to create issues of fact for trial.

## II.    PLAINTIFFS' CLAIMS ARE NOT PREEMPTED

In their original motions to dismiss Plaintiffs' Consolidated Complaints, Defendants argued extensively that Plaintiffs' claims were preempted. *See* ECF Nos. 157, 162, 164, 168, 170-1, 174. The Court did not accept Defendants' preemption arguments. *See generally*, *In re: Cheese*, 2017 U.S. Dist. LEXIS 135523. In their pending motions to dismiss, no Defendant contends that the changes made in Plaintiffs' Amended Consolidated Complaint affect the preemption analysis; they merely ask the Court to incorporate their earlier arguments.[2] Plaintiffs incorporate Section I of their Consolidated Opposition to Motions to Dismiss the Consolidated Complaint, ECF No. 185

---

[1]      *See* https://www.fsis.usda.gov/wps/portal/informational/askkaren, last visited Jan. 4, 2018.

[2]      *See* Motion to Dismiss filed by The Kraft Heinz Company, ECF No. 250 ("Kraft Mot."), at 2 n.1; Motion to Dismiss filed by Publix Super Markets, Inc., ECF No. 247 ("Publix Mot."), at 12; Motion to Dismiss filed by Albertsons Companies, Inc., Albertsons LLC, and Supervalu, Inc., ECF No. 244 ("Albertsons Mot."), at 12; Motion to Dismiss filed by Target Corp. and ICCO-Cheese Company, Inc., ECF No. 239 ("Target Mot."), at 9-10; and Motion to Dismiss filed by Wal-Mart Stores, Inc., ECF No. 240 ("Wal-Mart Mot."), at 15.

("Pls.' Opp'n"), by reference and urge the Court to again reject Defendants' preemption arguments.

## III. PLAINTIFFS ADEQUATELY PLEAD CLAIMS UNDER STATE CONSUMER PROTECTION STATUTES

### A. Plaintiffs Plausibly Plead the 100% Claims Are Likely to Deceive a Reasonable Consumer

Because Plaintiffs adequately allege that a reasonable consumer is likely to be deceived by the 100% Claims (*see supra* Section I), the claims asserted by Plaintiffs under various consumer protection statutes must be sustained. *See, e.g.*, *Suchanek*, 764 F.3d at 761–62 (consumer protections statutes may be satisfied by proof a statement is likely to mislead, a determination "more closely akin to a finding of fact than a conclusion of law" (quoting *Kraft*, 970 F.2d at 314, and citing *Williams*, 552 F.3d at 938); *Silva v. Unique Beverage Co., LLC*, No. 17-cv-00391, 2017 U.S. Dist. LEXIS 179362, at *9-14 (D. Or. Oct. 30, 2017) (discussing "reasonable consumer" standard; finding beverage label as a whole could be misleading to reasonable consumer as to coconut content even though it stated in small print "Contains No Coconut" and ingredient list confirmed there was "no coconut of any kind in the product"). This is particularly so under these facts, where the Products' ingredient lists assert cellulose is added only for anti-caking, without disclosing that Defendants use it as filler. *See, e.g.*, ECF No. 225 ¶¶4, 23, 27. *Compare* Kraft Mot. at 3 (Kraft asserting it uses cellulose powder "to prevent caking").

### B. Defendants' Additional Challenges to the Individual Claims Lack Merit

Defendants Wal-Mart, Albertsons, and Publix each incorporate by reference certain arguments made in their prior motions to dismiss the consumer protection claims. *See* Wal-Mart Mot. at 13 and n.14; Albertsons Mot. at 13 n.11; Publix Mot. at 13 and n.11. Plaintiffs likewise reassert their arguments in opposition. *See* Pls.' Opp'n at 24-30. Wal-Mart, Albertsons, and Publix

each reiterates that Plaintiffs' claims are barred by the "safe harbor" provision of the applicable statutes. *See* Wal-Mart Mot. at 13 n.14; Albertsons Mot. at 13 n.11; Publix Mot. at 13 n.11. However, there is no safe harbor. No legislation or regulation authorizes Defendants to use the 100% Claims. Similarly, the FDA has not conducted an investigation into whether the 100% Claims are accurate, false, or misleading. Pls.' Opp'n at 13-17. Thus, federal law does not bar Plaintiffs' entitlement to relief under any of the statutes, including FDUTPA, the ICFA, or the ADTPA. *See id.*; *see also id.* at 26. Defendants' other assertions as to these claims are also incorrect.

In particular, Wal-Mart reiterates its position that Plaintiff Rollinger "seeks only personal damages." Wal-Mart Mot. at 13 n.14. However, Plaintiff Rollinger states a claim under the Minnesota Deceptive Trade Practices Act because his claims are brought for the benefit of the public. *See* Pls.' Opp'n at 24-25; *see also Hudock v. LG Elecs. U.S.A., Inc.*, No. 16-cv-01220, 2017 U.S. Dist. LEXIS 44681, at *13-14 (D. Minn. Mar. 27, 2017) (claims brought for public benefit where "Plaintiffs requested injunctive relief and alleged that LG and BestBuy.com fraudulently market televisions to the public").

Albertsons and Wal-Mart's challenges to Plaintiff Wills's ADTPA claim fail because neither Defendant has shown it maintained a place of business or held any assets in Alabama fifteen days prior to filing the action. *See* Ala. Code §8-19-10(e) ("The demand requirements of this subsection shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the state"); *see also* Pls.' Opp'n at 28. Wal-Mart's assertion that Plaintiff Wills's claim is barred by the statute of limitations is similarly baseless as there is no evidence or allegation Plaintiff Wills did not purchase the Products within the applicable statute of limitations period. *See* ECF No. 229 ¶13. There is no basis for dismissal.

Finally, with regard to Wal-Mart's claim that "Plaintiff Reeves' claims under California law are barred for lack of notice" (Wal-Mart Mot. at 13 n.14), Plaintiff Reeves has not sought damages for Wal-Mart's violation of the CLRA. *See* ECF No. 229 ¶155.

## IV.    PLAINTIFFS STATE CLAIMS FOR BREACH OF WARRANTY

### A.    Defendants Breached Their Express Warranties

As this Court has stated, the key question is whether Plaintiffs' "belief that the products promised only cheese was objectively reasonable." ECF No. 216 at *35. For the reasons detailed above, the answer is yes. *See supra* Section I; *see also Bohlke v. Shearer's Foods, LLC*, No. 14-cv-80727, 2015 U.S. Dist. LEXIS 6054, at *29-31 (S.D. Fla. Jan. 20, 2015) (rejecting Defendant's argument that because it "expressly informed consumers of the allegedly artificial ingredients by including them in the ingredient list, it cannot be in breach of an express warranty"); *Bohac v. Gen. Mills, Inc.*, No. 12-cv-05280, 2014 U.S. Dist. LEXIS 41454, *at 30 (N.D. Cal. Mar. 26, 2014) ("General Mills may not rely on the ingredients list 'to correct those misinterpretations.'"). Even Defendants' ingredient lists are false and misleading. Each Defendant states in the ingredient list on the back of its Product labels that cellulose powder was added to prevent caking. *See, e.g.*, Wal-Mart Compl., ¶¶4, 46; *see also, e.g.*, Wal-Mart Mot. at Ex. A (attaching Great Value label). Yet Defendants use more cellulose than necessary to achieve anti-caking effects, instead using it as a filler. *See, e.g.*, Wal-Mart Compl., ¶¶4, 19, 23, 46. Defendants' statements that the Products consist of 100% cheese (and even the purpose of the cellulose) are "affirmation[s] of fact or promise[s]" and "description[s] of the goods" such that they form the basis of an express warranty. *See* 810 ILCS 5/2-313; *see also In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 787 (N.D. Ill. 2016) ("An explicit promise by the seller with respect to the quality of the goods and that is part of the bargain between the parties creates an express warranty 'that

13

the goods shall conform to the affirmation or promise.'" (quoting U.C.C. § 2-313)). Defendants breached their express warranties to Plaintiffs and the proposed classes, not only by representing their Products as 100% grated cheese, but also by using non-cheese ingredients as fillers.

Defendants Wal-Mart, Albertsons, and Publix incorporate by reference additional arguments concerning Plaintiffs' claims for express warranty. *See* Wal-Mart Mot. at 14 and n.15; Albertsons Mot. at 15 n.13; Publix Mot. at 14 n.12. Plaintiffs similarly incorporate their prior briefing on these issues, including those concerning privity and pre-suit notice. *See* Pls.' Opp'n at 30-35.

## B. Plaintiffs Allege a Breach of Implied Warranty

Plaintiffs state claims for breach of implied warranty for the same reasons. In its prior Order, this Court assumed without deciding that a defendant could breach implied warranties for food products even though such products were otherwise fit for consumption. ECF No. 216 at *38. Plaintiffs reassert their arguments that Defendants breached their implied warranties because the Products do not conform to their labels. Pls.' Opp'n at 35-36. To hold otherwise would read the various definitions of merchantability out of the law. *See, e.g.*, Cal. Comm. Code §2314(2) (Merchantability also requires that goods "(a) Pass without objection in the trade under the contract description; and (b) In the case of fungible goods, are of fair average quality within the description; and . . . (e) Are adequately contained, packaged, and labeled as the agreement may require; and (f) Conform to the promises or affirmations of fact made on the container or label . . . .").[3] The Products here satisfy none of these criteria. They do not conform to the promises on their labels.

---

[3]    *See also* Ala. Code §7-2-314(2)(f); Conn. Gen. Stat. §42a-2-314(2)(f); Fla. Stat. §672.314(2)(f); 810 Ill. Comp. Laws 5/2-314(2)(f); Mich. Comp. Laws §440.2314(2)(f); Minn. Stat. §336.2-314(2)(f); Mo. Stat. §400.2-314(2)(f); N.J. Stat. §12A:2-314(2)(f); N.Y. U.C.C. Law §2-314(2)(f).

*See, e.g.*, *Zemola v. Carrington Tea Co., LLC*, No. 17-cv-00760, 2017 U.S. Dist. LEXIS 179659, at *15-16 (S.D. Cal. Oct. 30, 2017) (implied warranty claim based on allegations coconut oil not healthy as represented on label).[4] Further, each Product is comprised partially of non-cheese filler and thus is not merchantable as a 100% grated cheese product. Defendants' motions to dismiss these claims should be denied.

## V.     PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT

This Court previously dismissed Plaintiffs' claims for unjust enrichment for the same reason that it dismissed Plaintiffs' other claims, finding that "[n]o reasonable consumer would think [Defendants] delivered something other than what their labels promised." ECF No. 216 at *39. However as detailed above, the amended complaints adequately allege that reasonable consumers do indeed interpret Defendants' 100% Claims to mean that the Products contain 100% cheese. *See supra* Section I. Thus, Defendants' labeling was deceptive, and Defendants were unjustly enriched at Plaintiffs' expense when they delivered something less. Further, in its prior

---

[4]        *See also* Pls.' Opp'n at 36 (citing *Wheeler v. Sunbelt Tool Co.*, 537 N.E.2d 1332, 1341 (Ill. Ct. App. 1989) ("A description of the product may create an implied warranty of merchantability.") (Illinois law); *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1112 (C.D. Cal. 2012) ("Plaintiffs have alleged that Wesson Oils do not conform to the representation on their labels that they are '100% Natural.' This allegation plainly falls within the ambit of the statutes, and plaintiffs' claims cannot be dismissed on this basis as a result.") (applying New Jersey and Texas law); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011) (denying motion to dismiss implied warranty claim, even though food product was fit for consumption, because it did not conform to label representation under Cal. Comm. Code § 2314(2)(f)); *Boswell v. Costco Wholesale Corp.*, No. 16-cv-00278, 2016 U.S. Dist. LEXIS 73926, at *32-33 (C.D. Cal. June 6, 2016) (denying motion to dismiss implied warranty claim under California law where defendant argued plaintiffs could not plead the "coconut oil they purchased could not be consumed or used to assist with cooking"); *Piro v. Exergen Corp.*, No. 15-cv-11834, 2016 U.S. Dist. LEXIS 41176, at *35 (D. Mass. Mar. 29, 2016) (denying motion to dismiss implied warranty claim where a thermometer was labeled as "MADE IN U.S.A." but contained foreign-made parts because "label nonconformity represents a distinct ways [*sic*] in which a defendant might breach the implied warranty of merchantability") (applying California and Massachusetts law); *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 329–30 (D.N.J. 2014) (finding plaintiffs stated claim under New Jersey law, where although clothes dryer dried clothes, it did not conform to Energy Star Label on packaging)).

Order, this Court reasoned that Plaintiffs' "only basis" for their unjust enrichment claims was the 100% Claims. ECF No. 216 at *39. While that was enough because reasonable consumers understand that 100% cheese means all cheese, Plaintiffs further allege in their amended complaints that Defendants use more cellulose than necessary to achieve anti-caking effects. *See, e.g.*, ECF No. 225 ¶4.

Plaintiffs state a claim for unjust enrichment under each applicable state law. Certain Defendants incorporate by reference prior arguments concerning the unjust enrichment claims. *See* Wal-Mart Mot. at 14 n.16; Albertsons Mot. at 15; Publix Mot. at 14-15. In particular, Defendants seek dismissal on the basis that Plaintiffs have an adequate remedy at law. However, Plaintiffs are permitted to plead an unjust enrichment claim in the alternative. *See* Fed. R. Civ. P. 8(d)(2); *see also, e.g.*, *Mervyn v. Nelson Westerberg, Inc.*, 76 F. Supp. 3d 715, 721 (N.D. Ill. 2014) (Feinerman, J.) (finding dismissal of unjust enrichment claim premature and noting parties are permitted to set forth as many separate claims as they have). Plaintiffs similarly incorporate their prior briefing on this issue. *See* Pls.' Opp'n at 37-41.

## VI.   THE LAW OF THE CASE DOCTRINE DOES NOT APPLY

Defendants' argument that Plaintiffs' Amended Complaints should be dismissed pursuant to law of the case doctrine incorrectly applies that rule of law. The law of the case doctrine holds "that once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." *Black v. Lane*, 22 F.3d 1395, 1398 (7th Cir. 1994) (quoting *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991)). The doctrine is not intended to be "a straitjacket that might cause a miscarriage of justice." *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004). Rather, it is a "flexible rule" that "does not bar a trial court from revisiting its own [] rulings." *United States v. Harris*, 531 F.3d 507, 513 (7th Cir.

2008) (citing *Menzer v. United States*, 200 F.3d 1000, 1004-05 (7th Cir. 2000)). *See also Pepper v. United States*, 562 U.S. 476, 506 (2011) (The doctrine "directs a court's discretion, it does not limit the tribunal's power." (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983))); *United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004) ("The legal effect of the doctrine of the law of the case depends upon whether the earlier ruling was made by a trial court or an appellate court. All rulings of a trial court are subject to revision at any time before the entry of judgment. A trial court may not, however, reconsider a question decided by an appellate court." (quoting *City of L.A. v. Santa Monica BayKeeper*, 254 F.3d 882, 888-89 (9th Cir. 2001))).

Here, there have been no appellate rulings on any aspect of this case. In fact, discovery is currently stayed, and there is no trial date. Thus, the law of the case doctrine does not and could not apply.

## CONCLUSION

Plaintiffs have adequately pleaded claims for violations of consumer protection and false advertising statutes, breach of warranty, and unjust enrichment, and their claims are not barred by preemption or the safe harbor doctrine. For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motions to dismiss.

Respectfully submitted,

Dated: January 19, 2018      BLOOD HURST & O'REARDON, LLP

By:  *s/ Timothy G. Blood*
Timothy G. Blood (149343CA)
Camille S. Bass (297609CA)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619-338-1100
tblood@bholaw.com
cbass@bholaw.com

17

Ben Barnow
Erich P. Schork
Jeffrey D. Blake
Anthony L. Parkhill
BARNOW AND ASSOCIATES, P.C.
1 North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: 312/621-2000
b.barnow@barnowlaw.com
e.schork@barnowlaw.com
j.blake@barnowlaw.com
aparkhill@barnowlaw.com

Eduard Korsinsky
Andrea Clisura
LEVI & KORSINSKY LLP
30 Broad Street, 24th Floor
New York, NY 10004
Tel: 212/363-7500
ek@zlk.com
aclisura@zlk.com

*Co-Lead Counsel*

18

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 19, 2018, a copy of the foregoing document was electronically filed with the United States District Court, Southern District of Illinois, via the Court's CM/ECF filing system, which will send notification of such filing to counsel of record, on January 19, 2018.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD
