# EXHIBIT 3

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-------------------------------------x

KOVE IO, INC ,

        Plaintiff,

vs

AMAZON WEB SERVICES, INC ,

        Defendant

-------------------------------------x

December 18, 2020
12:00 p m

Videotaped Deposition of MICHAEL T GOODRICH, held remotely via Zoom, before David Henry, a Certified Court Reporter and Notary Public

_____

DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D C  20036
(202) 232-0646

Page 2

1  APPEARANCES:
2
3  REICHMAN JORGENSEN, LLP
4  Attorneys for Plaintiff
5     750 Third Avenue, Suite 2400
6     New York, New York 10017
7  BY:  KHUE V. HOANG, ESQ.
8
9  FISCH & SIGLER, LLP
10 Attorneys for Defendant
11    5301 Wisconsin Avenue NW
12    Washington, D.C. 20015
13 BY:  ADAM A. ALLGOOD, ESQ.
14 AND: R. WILLIAM SIGLER, ESQ.
15 AND: MATTHEW VENNER, ESQ.
16
17 ALSO PRESENT:
18    BILL GEIGERT, Videographer
19    BRIAN SPARKS, Hotseater
20
21
22

Page 3

1  INDEX OF EXHIBITS
2
3  Goodrich Exhibit 1, Memorandum     28
4  Opinion and Order dated August
5  19, 2015
6
7  Goodrich Exhibit 2, Declaration    37
8  of Dr. Michael T. Goodrich dated
9  November 24, 2020
10
11 Goodrich Exhibit 3, United         49
12 States Patent 7,103,640
13
14 Goodrich Exhibit 4, United         50
15 States Patent 7,233,978
16
17 Goodrich Exhibit 5, United         50
18 States Patent 7,814,170
19
20 Goodrich Exhibit 6, Excerpts       162
21 from the book Compiler,
   Principles, Techniques and Tools
22 by Aho, Sethi and Ullman

Page 4

1  THE VIDEOGRAPHER:  Good
2  morning.  We are now on the record.
3  My name is Bill Geigert and I am the
4  videogapher with Digital Evidence
5  Group.  Today's date is December 18,
6  2020 and the time on screen is 12:05
7  p.m.  This videotaped deposition is
8  being held via remote Zoom in the
9  matter of Kove IO, Incorporated versus
10 Amazon Web Services, Incorporated.
11 The deponent today is Dr. Michael G.
12 Goodrich.  All parties to this
13 deposition are appearing remotely and
14 have agreed to the witness being sworn
15 in remotely.  Will counsel please
16 state their appearances for the
17 record.
18    MS. HOANG:  Khue Hoang of
19 Reichman Jorgensen of behalf of Kove
20 IO and Dr. Goodrich.
21    MR. ALLGOOD:  Adam Allgood with
22 Fisch Sigler, LLP on behalf of Amazon

Page 53

 1   A.  I'm there.
 2   Q.  In your declaration you provide
 3  an opinion with respect to certain disputed
 4  claim terms in this lawsuit, is that
 5  correct?
 6   A.  Yes, that is correct.
 7   Q.  Dr. Goodrich, in your declaration
 8  you provide an opinion on the claim terms
 9  including location, location server,
10  clients, based on a hash function and hash
11  table, is that correct?
12   A.  Yes, that is correct.
13   Q.  Did you provide an opinion on any
14  other disputed claim term?
15   A.  No, not in this declaration.
16   Q.  Have you provided an opinion on
17  any other disputed claim term in any other
18  declaration that I am unaware of?
19   A.  Not that I recall sitting here
20  today.
21   Q.  You are aware that there are
22  other disputed claim terms in this

Page 54

 1  litigation, aren't you?
 2   A.  Yes, I am aware of that.
 3   Q.  But you did not provide an
 4  opinion with regard to the claim terms
 5  location information, data pertaining to the
 6  entity or redirect message, is that correct?
 7   A.  Yes, that is correct.
 8   Q.  Dr. Goodrich, did you decide
 9  which of the disputed claim terms you were
10  going to provide an opinion on?
11   A.  No.  I was asked by counsel with
12  respect to certain terms that had been
13  requesting my opinion regarding their
14  construction.
15   Q.  So it was Kove's counsel that
16  determined which disputed claim terms you
17  were going to provide an opinion on, is that
18  correct?
19   MS. HOANG:  Objection, form.
20   A.  I would say that there were
21  certain terms they asked me about and that's
22  what I included in my declaration.

Page 55

 1   Q.  Did you want to provide an
 2  opinion on any of the claim terms that are
 3  not contained in your declaration?
 4   A.  Not as I recall just sitting here
 5  today.
 6   Q.  If you could please turn to,
 7  should be pdf page 7 of your declaration.
 8   A.  I'm there.
 9   Q.  Starting at paragraph 13 of your
10  declaration, I believe you provide an
11  opinion with regard to the claim term
12  location, is that correct?
13   A.  That's correct.
14   Q.  Generally in the field of
15  computer network storage and retrieval, what
16  is a location?
17   MS. HOANG:  Objection, scope.
18   A.  So that term has many
19  understandings in that context, so I would
20  refer to that as sort of like a generic
21  notion of a location.  There are several
22  notions of a location in that context.

Page 56

 1   Q.  Can you give me an example?
 2   MS. HOANG:  Same objection.
 3   A.  Yes, one example of just a
 4  general notion of a location could be what
 5  is known as an URL, uniform resource
 6  locator.
 7   Q.  That would be an example of a
 8  location in a computer network storage and
 9  retrieval general industry?
10   A.  Yes, that's one example.
11   Q.  That's an example, Dr. Goodrich,
12  but do you have an understanding as to what
13  a location is generally in the computer
14  network storage and retrieval industry?
15   MS. HOANG:  Objection, form and
16   also outside the scope.
17   A.  So generally yes, I have an
18  understanding of that term.
19   Q.  What is that understanding,
20  Dr. Goodrich?
21   MS. HOANG:  Same objection.
22   I'm going to interpose this as a

Page 57

standing objection for everything that's outside the scope of his report.

A. Yes, so again, it depends on the context, of course. Even in that field of network data storage and retrieval, there is a lot of notions of location. This is something that a person of ordinary skill would be familiar with, of course, but it's just generally a place, a notion of place in a network. It would be considered a notion of location.

Q. Dr. Goodrich, do you think there is a plain and ordinary meaning for the term location in the computer network storage and retrieval industry?

MS. HOANG: Objection, scope.

A. So again, outside the patents, yes, there is a general understanding of location, what I just explained to you.

Q. And your statement that a place in a network would be a general

Page 58

understanding of a location in the computer network storage and retrieval industry, is that correct?

MS. HOANG: Same objection.

A. Just sitting here today, that definition seems reasonable, but I would want to spend more time really thinking about that before I give you a definitive answer, because there is a lot of context even within that notion of network storage and retrieval, I want to make sure I covered all the bases there.

Q. In paragraph 13 of your declaration, your Kove's proposed construction, do you see that?

A. I do see that.

Q. Did you create this proposed construction for the term location?

MS. HOANG: Objection, form. Also calls for attorney-client privileged communication. So Dr. Goodrich, to the extent you can

Page 59

answer yesterday or no, that's fine, but nothing else beyond that, please.

A. Again, what was the question?

Q. Did you create this proposed construction for the term location?

A. No.

Q. Is there anything you would change about Kove's proposed construction for the term location?

A. No.

Q. Dr. Goodrich, do you believe that Kove's proposed construction for the term location is the same as the plain and ordinary meaning of the term location in the computer network storage and retrieval industry?

A. No, it's more limited than that.

Q. And why is that?

A. So if you look at the proposed construction from Kove, there is a number of elements here that would not be shared by just a generic notion of location. The

Page 60

first is in the coding, that's the first limitation that's more limited than just the broad definition; that is a member of a set of associations, that's also more limiting. These associations are with an identifier on the location server and that specifies a location of data pertaining to the entity identified by the identifier. These are all limitations straight out of the patent, express definitions that are more limiting than just the notion of a plain and ordinary meaning of location.

Q. In a way that the inventors of the copatents were acting as their own lexicographers in their understanding of the term location?

A. I believe this definition comes straight out of the patents, and I cite to that in my report, passages that support this.

Q. Can you give me an example a passage in one of the patents that provides

Page 61

1　this definition for the term location?
2　　A.　Sure. So if you go to paragraph
3　22 in my report, which is on pdf page 11, I
4　cite to a passage for example from the '978
5　Patent that states each data location
6　specifies a location of data in a network
7　pertaining to the entity. This is from the
8　'978 Patent at column two, lines 27 to 28.
9　This patent also states a data location or
10　location is an encoding, for example string,
11　that is a member of a set of associations
12　with an identifier in an NDTP server, and I
13　cite to column 4, line 28 to 30. Further,
14　of the '978 Patent also states in one
15　embodiment, when the client queries the NDTP
16　server for information pertaining to an
17　entity, the NDTP server preferably returns a
18　list of all locations for the specified
19　entity. So these specifications, these
20　disclosures from the '978 Patent support
21　Kove's proposed construction. And there are
22　similar passages from the other patents as

Page 62

1　well. I just did this in an exemplary
2　fashion for the '978.
3　　Q.　Those other citations are
4　contained within your declaration?
5　　A.　No. I didn't cite to the other
6　patents. I used the '978 Patent here as an
7　example because they have largely
8　overlapping specifications. But I can try
9　and find those other passages today if you'd
10　like, if you're unsure of where I was
11　referring to.
12　　Q.　If you turn back to paragraph 13.
13　In the proposed construction, Kove's
14　proposed construction contains a segment
15　that says, and that specifies a location of
16　data pertaining to the entity identified by
17　the identifier. Can you provide a
18　definition of the term location without
19　using the word location in the definition?
20　　A.　Oh, so if you're asking about now
21　the use of the word location here in the
22　definition, this would be understood to be

Page 63

1　referring to location in its generic sense.
2　So all the other words are now specifying,
3　you know, type of location, which is how the
4　patents are limiting the use of that word
5　location in the claims.
6　　Q.　Can you provide a definition of
7　the word location in the generic sense?
8　　A.　That's the kind of thing we were
9　talking about this morning. So location is,
10　you know, this notion of place in a network,
11　broadly defined. I think just the word
12　location itself though is appropriate here,
13　that it's clear that now this is referring
14　to location in its generic sense. So for
15　example I would not consider this a circular
16　definition.
17　　Q.　Dr. Goodrich, is there any way
18　that you could simplify the current proposed
19　construction in order to further assist the
20　jury in understanding what a location is in
21　the Kove patents?
22　　　MS. HOANG:　Objection, scope.

Page 64

1　　A.　Personally I think that the Kove
2　construction is the proper construction.
3　There is nothing I would want to try to do
4　to simplify or change it because doing so in
5　my opinion would now be changing from what
6　is expressly disclosed in the patents. And
7　as I opined in my declaration, I think there
8　is a lot of problems with the AWS
9　construction. I think it's wrong and
10　potentially confusing.
11　　　MR. ALLGOOD:　Objection,
12　　non-responsive. Move to strike
13　　everything after what is expressly
14　　disclosed in the patents.
15　　Q.　Dr. Goodrich, you used a postcard
16　example that talks about street addresses in
17　your declaration when you talk about the six
18　degrees of separation example. The
19　courthouse's street address in this case is
20　it 219 Dearborn Street, Chicago, Illinois,
21　zip code 60604. Would you agree that the
22　courthouse's street address is a location

Page 65

1  for the courthouse?
2  　A.　I think broadly defined, you
3  know, and apart from the notion that is
4  being used in the patents, yes, that's a
5  location.
6  　Q.　Would you agree that the
7  courthouse's phone number is not a location
8  for the courthouse?
9  　A.　That depends on context.  So in
10 some contexts it might be a location.  I
11 wouldn't try to rule that out, out of hand.
12 It very much depends on context.
13 　Q.　In what context would a
14 courthouse's phone number be a location for
15 the courthouse?
16 　A.　Just for example looking, you
17 know, thinking about a notion of switching
18 technologies for how phone networks are
19 transmitted, a phone number could be a
20 notion of the location of the courthouse,
21 and the notion of now we're referring to the
22 phone part of the courthouse, the phone

Page 66

1  network, the device that answers that phone
2  number.
3  　Q.　So you're saying that the phone
4  number could be a location for the phone of
5  the courthouse but not the courthouse, is
6  that correct?
7  　A.　Oh, you're drawing that
8  distinction.  It depends on, again, on
9  context, how people are referring to things.
10 Sometimes for example my home, we just say
11 here's the home phone number.  But really
12 it's the phone in my home, but we refer to
13 it as the home.  That's the phone number for
14 my home.  So that's another thing that
15 depends very much on context.
16 　Q.　So would you consider the phone
17 number for your home to the same as the
18 location of your home?
19 　A.　Depending on the context, there
20 could be some scenarios where it would and
21 somewhere it wouldn't.
22 　Q.　In the general understanding of

Page 67

1  what a location is, and we've agreed that
2  the street address of the courthouse is a
3  location for the courthouse, how is the
4  phone number for the courthouse the same as
5  a location for the courthouse as a street
6  address for the courthouse would be a
7  location for the courthouse?
8  　　MS. HOANG:　Objection, form.
9  　A.　So again, this notion of location
10 always depends on the context.  And just
11 like I was sort of opining on this notion of
12 a context in my paragraph 15 and 16 in my
13 declaration, so there could be contexts
14 where we referred to the location of a
15 courthouse as being a street address; there
16 could be other contexts where that is
17 inappropriate and we want something more
18 precise like GPS coordinates of a precise
19 point on the courthouse.  There could be
20 other contexts where we would use a phone
21 number as the location.  It depends on the
22 context.  So for example driving directions

Page 68

1  with Google Maps, a phone number would
2  probably not be a location.  But for some
3  switching technology for phone networks,
4  that could be.  It very much depends on
5  context.
6  　Q.　You talked about driving
7  directions.  Would you agree that if someone
8  stopped at a gas station while driving to
9  the courthouse, the courthouse's street
10 address still remains a location for the
11 courthouse?
12 　A.　Now we're going into sort of an
13 interesting hypothetical.  Are you asking
14 this in the context of the patents or just
15 in general?
16 　Q.　Well, start with just in general.
17 If someone stopped at a gas station on the
18 way to the courthouse, would the
19 courthouse's street address still remain a
20 location for the courthouse?
21 　A.　Yeah, in general, and apart from
22 the patents, I would say that that's true,

Page 69

1 yes.
2  Q. Alright, same question, but in
3 the context of the patents.
4  A. So now in the context of the
5 patents, a notion of a location as from the
6 claims, it requires certain other properties
7 that that location has. So first it has to
8 be an encoding. So now it's not just an
9 address, but we're talking about an encoding
10 of that address, in some let's say computer
11 format of some kind. Then it would have to
12 have an association with it of an identifier
13 in a location server. And then it's
14 specifying the location of data pertaining
15 to an entity identified by some identifier.
16 So there is a lot of other things that have
17 to be met in order for that address of the
18 courthouse to meet the claim term location
19 from the patents.
20  Q. You mentioned data. What is the
21 difference between data and an entity?
22  A. I think this is getting into a

Page 70

1 term I was not asked to opine on, data
2 pertaining to an entity. Am I
3 misunderstanding your question?
4  Q. Well, you included the words data
5 pertaining to the entity in your
6 construction for location, isn't that
7 correct?
8  A. Yes.
9  Q. So I'm just trying to ask you
10 what that means. So is there a difference
11 between data and entity?
12  MS. HOANG: Objection, scope.
13  A. Yes, I would -- for this phrase
14 data pertaining to the entity identified by
15 the identifier, I think that is plain and
16 clear just from its terminology. I
17 understand that entity is a claim term that
18 is being disputed and Kove has a
19 construction for that, but in this scenario
20 data pertaining to the entity, I think
21 that's clear. That's data pertaining to the
22 entity. Now, the entity may itself comprise

Page 71

1 data. I don't see anything from the claim
2 or the patents that rules that out, if that
3 is your question.
4  Q. Do you believe that data
5 pertaining to the entity has a plain and
6 ordinary meaning to a person of ordinary
7 skill in the art of computer network storage
8 and retrieval?
9  A. If your question is, is the term
10 clear from this definition, I'd say yes.
11 It's clear based on the specification of the
12 patents. If your question instead is, is
13 this a term of art, I'm not recalling it
14 being used as a term of art, but it is
15 something that I believe is clear from the
16 patents themselves.
17  Q. Dr. Goodrich, what is an entity
18 with regard to your proposed construction
19 here?
20  A. So an entity is, again, I
21 understand this to be a claim term that's in
22 dispute, so I didn't provide a construction

Page 72

1 for that. I believe it's, you know,
2 whatever is the understanding of entity that
3 the court decides is fine for that.
4  Q. What is the understanding of a
5 person of ordinary skill in the art with
6 regard to the term entity in your proposed
7 construction for location?
8  MS. HOANG: Objection.
9  A. I think it's clear. I think it's
10 the notion of entity. For example it could
11 be notion of data, it could be other things
12 too. That at least is inclusive of an
13 entity, you know, has some way of referring
14 to it. It's identified by the identifier.
15 That's already cleared from the construction
16 itself.
17  Q. Dr. Goodrich, are you familiar
18 with the entity relationship model in
19 software engineering?
20  A. Yes.
21  Q. With regard to the entity
22 relationship model, can you explain the

18 (Pages 69 to 72)

Page 81

1 your declaration.
2   A.  Sure.
3   Q.  Dr. Goodrich, do you believe that
4 the inventors served as their own
5 lexicographers for the term location server?
6   A.  Yes, with the understanding that
7 there is some appropriate substitution of
8 words for this term NDTP.
9   Q.  What does NDTP stand for?
10   A.  Yeah, so each of the patents has
11 this definition of its system. It just kind
12 of refers to it using this acronym NDTP of
13 the system of its invention. So using it
14 again here in the claim, I think it's more
15 appropriate to use the terms that Kove is
16 proposing instead, and NDTP stands for
17 network distributed tracking protocol.
18   Q.  Why do you believe that it's more
19 appropriate to use the terms that Kove is
20 proposing instead of using NDTP?
21   A.  To avoid confusing the jury, for
22 example. Because to insert those phrases,

Page 82

1 it's not a phrase that juries are generally
2 familiar with, you would then be, in my
3 opinion, asking the court to construe the
4 phrase NDTP itself and I think in the end
5 you just get back to the same definition
6 being proposed anyway, so avoid that extra
7 step and just go right to the equivalent
8 definition, appropriate definition supported
9 by the patent.
10   Q.  Do you understand that network
11 distributed tracking protocol is part of the
12 invention?
13   A.  That's the phrase that's being
14 used to describe the system. It's a phrase
15 that the patents use.
16   Q.  But do you understand that
17 network distributed tracking protocol is
18 part of the invention?
19   MS. HOANG:  Objection, form.
20   A.  I'm not understanding the
21 question, I'm sorry.
22   Q.  If asked, Dr. Goodrich, given the

Page 83

1 disclosures in the specifications, would you
2 be able to explain NDTP to a judge or jury?
3   MS. HOANG:  Objection, form.
4   A.  I believe I could. I mean, I'd
5 want to spend some time thinking about how
6 to phrase it in a way that's generally
7 understandable.
8   Q.  Does NDTP mean the same thing as
9 location?
10   MS. HOANG:  Objection, form and
11   scope.
12   A.  No. It's not -- it depends on --
13 NDTP is often used as an adjective and a
14 noun. So sometimes it's referring to NDTP
15 as a noun, that's the system, the protocol
16 that they're defining and giving as a
17 preferred embodiment in the patent, and
18 other times it's referred to as an
19 adjective, NDTP server, NDTP client, these
20 are phrases from the patent that for example
21 with respect to the server, which is what
22 we're talking about now, it is synonymous

Page 84

1 with location as an adjective, because NDTP
2 server is synonymous with location server.
3   MS. HOANG:  Objection,
4   non-responsive, move to strike
5   everything after no, it's not.
6   Q.  Dr. Goodrich, why isn't your
7 proposed construction to just be exactly the
8 claim language that you cite to in
9 paragraph 24 with regard to an NDTP server
10 or a server is a network attached component
11 that maintains a set of identifier location
12 mappings that are modified or returned in
13 response to NDTP request messages from NDTP
14 clients?
15   MS. HOANG:  Objection, form,
16   asked and answered.
17   A.  So I believe I've answered that
18 before, but to summarize again, the claim
19 term itself is location server. And so as I
20 opine here in paragraph 24, a POSA would
21 understand that NDTP server in this express
22 definition is synonymous with location

Page 85

1  server. And so the appropriate thing, since
2  location server is the claim term, is to
3  continue using that adjective throughout the
4  definition rather than introducing NDTP from
5  a preferred embodiment into the claim. I
6  think that would be inappropriate in this
7  phrase. The proper phrase is the way that
8  Kove has proposed the construction for
9  location server, in my opinion.
10     Q.    Dr. Goodrich, do you believe that
11 network distributed tracking protocol is
12 important to the patents in this case?
13           MS. HOANG:    Objection, form.
14     Beyond the scope of his report.
15     A.    So what do you mean by important?
16 I'm not quite following that question.
17     Q.    Do you believe that the network
18 distributed tracking protocol discussed in
19 all three of the patents in this case is an
20 important piece of the invention disclosed
21 in the patents in this case?
22           MS. HOANG:    Objection, form,

Page 86

1  and beyond the scope of his report.
2     A.    That's not something that I was
3  asked to opine on. If you're asking, is
4  NDTP something that is in the preferred
5  embodiments of the patents, absolutely. But
6  if you're asking this notion of importance,
7  I'm not sure quite sure I follow what you
8  mean by importance.
9           MR. ALLGOOD:    Mr. Sparks, can we
10    pull up Exhibit number 5.
11    Q.    Dr. Goodrich, can you please tell
12 me what the title of '170 Patent is.
13    A.    Oh, it's called Network
14 Distributed Tracking Wire Transfer Protocol.
15    Q.    Turning back to paragraph 26 of
16 your declaration, other than simply the word
17 component, can you point to anywhere in the
18 '640 Patent specification where a location
19 server is described as anything other than a
20 computer?
21    A.    So in paragraph 26, I'm citing to
22 an example from the '170 Patent, but I

Page 87

1  believe that same passage also appears in
2  the '640. Yes, it does. So in the '640
3  Patent that similar passage is in column two
4  starting at line 28 and ending at line 44.
5     Q.    Let's look at Deposition Exhibit
6  Number 3, the '640 Patent at column 2, lines
7  28 through 44.
8     A.    That is correct.
9     Q.    Dr. Goodrich, is the term
10 location server anywhere in this section of
11 the '640 Patent that you cited?
12    A.    Yes.
13    Q.    Which column and line number
14 would you refer me to, to see the term
15 location server?
16    A.    Are you asking about the exact
17 words or the concept?
18    Q.    I'm asking about the exact words.
19    A.    Oh, the exact words are not used.
20 Instead the concept is used in column 2 at
21 line 34, where it says a first server entity
22 operative to locate data in the distributed

Page 88

1  data collection.
2     Q.    And how is this citation in the
3  '640 Patent disclosing anything other than a
4  location server being a computer?
5     A.    Oh, throughout the whole passage
6  it's referring to it not as a computer, it's
7  referring to it as a component. And
8  therefore a person of ordinary skill in the
9  art would understand that this is referring
10 to a component, which could be a computer,
11 it's not exclusively saying it's not a
12 computer, but it could be other hardware
13 and/or software that would also comprise a
14 component.
15    Q.    Other than simply the word
16 component, can you point to anywhere in the
17 '640 Patent specification where a location
18 server is described as anything other than a
19 computer?
20    A.    This is an exemplary place. And
21 as I opine in my declaration, paragraph 27,
22 the patents-in-suit are not silent regarding

Page 101

1  Q. Did you review anything while we
2  were on the break related to your deposition
3  today?
4  A. No.
5  Q. Dr. Goodrich, before the break we
6  were talking about some disputed claim terms
7  that you offered opinions on in your
8  declaration. One of those claim terms is
9  client. Generally in the field of computer
10 network storage and retrieval, what is a
11 client?
12    MS. HOANG: Objection, scope.
13 A. A client generally has many
14 definitions, so that really depends on the
15 scope and the context.
16 Q. So without defining a scope or a
17 context, that context being computer network
18 storage and retrieval, there is no ordinary
19 definition of what a client is, is that your
20 testimony?
21    MS. HOANG: Objection, scope,
22    form.

Page 102

1  A. That is correct. It's too broad.
2  There's too many contexts.
3  Q. Could you please turn to
4  paragraph 29 of your declaration, which is
5  Goodrich Deposition Exhibit Number 2.
6  A. I'm there.
7  Q. For the disputed claim term
8  client, you see Kove has proposed a
9  construction of a network attached component
10 that initiates update or lookup of
11 identifier/location mappings from a location
12 server with location request messages. Do
13 you see that?
14 A. Yes.
15 Q. Did you create that proposed
16 construction?
17 A. No.
18 Q. Is there anything that you would
19 like to change about it?
20 A. No.
21 Q. If you turn to paragraph 30 of
22 your declaration, is it your understanding

Page 103

1  that an inventor can serve as his or her own
2  lexicographer?
3  A. That is correct, and they did so
4  in this case.
5  Q. It's your belief that the
6  inventors of the patents-in-suit, the Kove
7  patents, provided explicit definitions for
8  client in this case?
9  A. Yes.
10 Q. And then you list those
11 definitions in paragraph 30 quoting to each
12 of the asserted patents in this case, is
13 that correct?
14 A. Yes.
15 Q. And one of those citations in
16 both the '170 and the '640 Patent. That
17 explicit definition is that an NDTP client
18 or a client is a network attached component
19 that initiates update or lookup of
20 identifier/location mappings from an NDTP
21 server with NDTP request messages. Is that
22 correct?

Page 104

1  A. Yes, that is correct.
2  Q. But that definition is not the
3  same as Kove's proposed construction, is it?
4  A. I disagree. I believe it is
5  equivalent to their definition.
6  Q. I didn't ask if it is equivalent.
7  That definition is not the same as Kove's
8  proposed construction word for word, is it?
9  A. No. They've done what I believe
10 is an appropriate substitution of the word
11 NDTP with the word location.
12    MR. ALLGOOD: Objection,
13    non-responsive. Move to strike
14    everything after no.
15 Q. Dr. Goodrich, let's move to your
16 paragraph number 32 of your declaration.
17 A. I'm there.
18 Q. Similar to what we've already
19 talked about, I believe it's your opinion
20 that component could be a hardware or
21 software component and is not restricted to
22 just a computer, is that your opinion?

Page 109

 1  computers in contrast to components.
 2      Q.   Well, let's pull up the '170
 3  Patent and let's go to column 19 lines 45
 4  through 60.  Let me know when you're there,
 5  sir.
 6      A.   I'm there now.
 7      Q.   Could you please point out to
 8  where specifically in this paragraph a
 9  client would be considered and understood to
10  be anything other than a computer?
11          MS. HOANG:   Objection, form.
12      A.   Yeah, that's not what I was
13  saying.  Instead what I was saying is that
14  this passage discloses computers as
15  computers, not as components.  Hence a
16  person of ordinary skill taking the whole of
17  the specification in context would
18  understand that when the passages are
19  referring to components, that that's broader
20  than just a computer, because here these
21  computers clearly would also qualify as
22  components, but the patent is referring them

Page 110

 1  specifically now as computers with respect
 2  to this preferred embodiment.
 3      Q.   I see, and I'm trying to
 4  understand your argument, sir.  So your
 5  opinion is that because the patent uses two
 6  different words, component in one section
 7  and then computer in the other, that it was
 8  the intent of the inventors to distinguish
 9  between those two.  Is that your opinion,
10  sir?
11          MS. HOANG:   Objection, form.
12      A.   In broad terms that's part of my
13  opinion, yes.
14      Q.   Is there any additional part of
15  your opinion with regard to the term
16  component?
17          MS. HOANG:   Objection, form.
18      A.   Well, there is.  As I mentioned
19  with respect to the '978 Patent, there is
20  some other passages we talked about with
21  respect to another claim term that also make
22  it clear that components are software.  They

Page 111

 1  used to have overlapping specifications,
 2  overlapping inventors.  Therefore I also
 3  conclude that inventors were aware of the
 4  distinctions that they intended by using the
 5  words component versus computer, and that
 6  that carries over to the '170 and '640
 7  Patents.
 8      Q.   If a component included a
 9  processor, would that make it a computer or
10  could it still be software?
11          MS. HOANG:   Objection, form.
12      A.   I think that also depends on
13  context.  In some cases a processor is
14  hardware, other times it's software.  So if
15  you have a specific passage you'd like me to
16  try to suss that out, I can do that.
17      Q.   Certainly, sir.  We're in the
18  '170 Patent, I believe.  Can we turn to
19  Claim 1.  And sir, I will refer you to the
20  last line, beginning on the last line of
21  column 20 into the first line of column 21.
22  Each one of the plurality of data location

Page 112

 1  servers comprises a processor.  Do you see
 2  that, sir?
 3      A.   Yes.
 4      Q.   So for this claim, Claim 1 of the
 5  '170 Patent, would the data location server
 6  be a computer?
 7          MS. HOANG:   Objection to form,
 8      and scope.
 9      A.   Yes, that's not a question I was
10  asked to opine on, so that's something I'd
11  want to spend a little more time in
12  analyzing to see if, for example, it could
13  be a processor and a virtual computer, if
14  that's within the scope.
15      Q.   So sitting here today as a person
16  of ordinary skill in the art, you can't tell
17  me whether or not a component that also
18  includes a processor would be a computer or
19  could just simply be software, is that your
20  opinion today?
21          MS. HOANG:   Objection to form,
22      and scope.

Page 125

1  A. Yes.
2  Q. An identifier string, that's
3  singular, isn't it?
4  A. This here, yes.
5  Q. Then further on you will see a
6  phrase that says, includes location
7  information associated with the identifier
8  string. Do you see that, sir?
9  A. I do.
10 Q. And again, the identifier string
11 indicates a singular identifier string, is
12 that correct?
13 A. I agree.
14 Q. Now can we turn back, please, to
15 the proposed definitions in paragraph 34 of
16 your report.
17 A. I'm there.
18 Q. And you see the proposed
19 construction by code, do you see that, sir?
20 A. I do.
21 Q. Did you create that proposed
22 construction for the claim term based on a

Page 126

1  hash function?
2  A. No.
3  Q. Is there anything you would like
4  to change about it?
5  A. No.
6  Q. Sir, in the first bolded part of
7  Kove's proposed definition you see based on
8  a hash function that maps identifier strings
9  to one or more of the data location servers.
10 Do you see that, sir?
11 A. I do.
12 Q. Would you agree that Kove's
13 proposed construction here talks about
14 identifier strings plural?
15 A. It does in terms of a mapping,
16 which is consistent with what a person of
17 ordinary skill would understand. It's
18 consistent with the use of the singular in
19 Claim 1.
20 Q. If we were able to change this to
21 a singular and say based on a hash function
22 that maps an identifier string to one or

Page 127

1  more of the data location servers, would
2  that be consistent with your understanding,
3  sir?
4  A. No, that would be not a good
5  definition any more.
6  Q. Why is that?
7  A. Because a hash function, a person
8  of ordinary skill in the art will understand
9  here in this context of Claim 1, the hash
10 function maps a set of identifiers, a
11 plurality of identifiers to the one or more
12 data location servers Where each identifier
13 is mapped to one or more data location
14 servers, but if you just put in the an here,
15 that would be changing the meaning, I think,
16 depending on the way you phrased it, that
17 the hash function would only ever map one
18 identifier string, you know, just one and
19 that's it. It would just be like a key
20 value pair itself, which would be improper.
21 Q. Is it your opinion that a single
22 identifier string maps to one location?

Page 128

1      MS. HOANG: Objection, form.
2  A. So each identifier string with
3  respect to this claim maps to one or more
4  locations.
5  Q. So it's your opinion that it's a
6  one to many relationship between being an
7  identifier string and locations?
8      MS. HOANG: Objection, form.
9  A. I'm not sure what you mean by one
10 to many. What I'm saying is it can be one
11 to, let's call it one or more, I thought
12 that's in the claim itself, or in the patent
13 specification itself, that that's the
14 definition of -- in all these definitions we
15 had in the beginning.
16 Q. Dr. Goodrich, the claim language
17 of '170 Patent Claim 1 is talking about a
18 single identifier string. What I'm trying
19 to understand is, is it your opinion that
20 that single identifier string can only map
21 to one location? Can it map to one or more
22 locations? What is your understanding of