**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

IN RE: 100% GRATED PARMESAN CHEESE
MARKETING AND SALES PRACTICES LITIGATION,

Case No. 1:16-cv-05802
MDL No. 2705

The Hon. Gary S. Feinerman

*This Document Relates to All Cases on*
*The Kraft Heinz Company Track*

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**TO DISMISS AMENDED CONSOLIDATED CLASS ACTION**
**COMPLAINT AGAINST THE KRAFT HEINZ COMPANY**

**JENNER & BLOCK LLP**

Dean N. Panos (Ill. Bar No. 6203600)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*-and-*

Kenneth K. Lee (admitted *pro hac vice*)
klee@jenner.com
Alexander M. Smith (admitted *pro hac vice*)
asmith@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
(213) 239-5100

*Attorneys for Defendant*
The Kraft Heinz Company

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.      Plaintiffs Still Have Not Plausibly Alleged That Kraft Heinz's "100% Grated Parmesan Cheese" Label Is Likely to Deceive a Reasonable Consumer. ..........................2

          A.      The Court's Initial Opinion Correctly Distinguished between Affirmative Misrepresentations and Merely Ambiguous Statements..........................................2

          B.      Plaintiffs Have Not Plausibly Alleged That "100% Grated Parmesan Cheese" Is Misleading, Let Alone an Affirmative Misrepresentation...................6

II.     The Handful of New, Irrelevant Allegations in the Amended Complaint Do Not Establish That "100% Grated Parmesan Cheese" Is Deceptive or Misleading. ................10

          A.      Plaintiffs' Expert Reports Are Procedurally Improper and Do Not Reflect Reasonable Consumer Expectations About "100% Grated Parmesan Cheese." ..................................................................................................10

          B.      Plaintiffs' Unidentified Survey Cannot Salvage Their Lawsuit. ..........................13

CONCLUSION...................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ackerman v. Coca-Cola Co.*,
No. 09-395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010).......................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................................8

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015) .................................................................................................6

*DeMarco v. DepoTech Corp.*,
149 F.Supp. 2d 1212 (S.D. Cal. 2001).....................................................................................11

*El-Hallani v. Huntington Nat'l Bank*,
No. 13-12983, 2014 WL 2217237 (E.D. Mich. May 29, 2014) ..............................................13

*Fin. Acquisition Partners LP v. Blackwell*,
440 F.3d 278 (5th Cir. 2006) ..................................................................................................11

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013)................................................................................................3, 12

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ...........................................................................................3, 4, 12

*Goldman v. Bayer AG*,
No. 17-0647, 2017 WL 3168525 (N.D. Cal. July 26, 2017) ....................................................8

*Henderson v. Gruma Corp.*,
No. 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ..................................................5

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
--- F. Supp. 3d ---, No. 16-5802, 2017 WL 3642076 (N.D. Ill. Aug. 24, 2017).............. *passim*

*In re Telebrands Corp.*,
140 F.T.C. 278 (2005)..............................................................................................................13

*Lam v. Gen. Mills, Inc.*,
859 F. Supp. 2d 1097 (N.D. Cal. 2012) ....................................................................................5

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003) ..................................................................................................11

*Manchouck v. Mondelez Int'l Inc.*,
  No. 13-02148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ................................................6

*Markin v. Chebemma Inc.*,
  526 F. Supp. 2d 890 (N.D. Ill. 2007) ...................................................................12

*Mazzeo v. Nature's Bounty, Inc.*,
  No. 14-60580, 2015 WL 1268271 (S.D. Fla. Mar. 19, 2015)................................................11

*McCauley v. City of Chicago*,
  671 F.3d 611 (7th Cir. 2011) ...........................................................................14

*Nemphos v. Nestle Waters N. Am, Inc.*,
  775 F.3d 616 (4th Cir. 2015) ...........................................................................6

*Red v. Kraft Foods, Inc.*,
  No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)...........................................4, 5, 9

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) ...........................................................................7

*Spector v. Mondelēz Int'l, Inc.*,
  178 F. Supp. 3d 657 (N.D. Ill. 2016) ...................................................................8

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
  No. 14-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ................................................12

*Stuart v. Cadbury Adams USA, LLC*,
  No. 09-6295, 2010 WL 1407303 (C.D. Cal. Apr. 5, 2010) ................................................10

*Stuart v. Cadbury Adams USA, LLC*,
  458 F. App'x 689 (9th Cir. 2011) ...................................................................8, 11

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ...........................................................................13

*Thornton v. Pinnacle Foods Group*,
  No. 16-158, 2016 WL 4073713 (E.D. Mo. Aug. 1, 2016)......................................................4

*Trujillo v. Apple Computer, Inc.*,
  581 F. Supp. 2d 935 (N.D. Ill. 2008) ...................................................................3

*Veal v. Citrus World, Inc.*,
  No. 12-801, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013)......................................................8, 9

*William Blair & Co. v. FI Liquidation Corp.*,
  358 Ill. App. 324 (2005) ...........................................................................12

iii

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ......................................................................4

*Wilson v. Frito-Lay N. Am.*,
  No. 12-1586, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013)................................5, 7

*Workman v. Plum Inc.*,
  141 F. Supp. 1032 (N.D. Cal. 2015) ...........................................................4

**STATUTES**

21 U.S.C. § 341 ...................................................................................6

**OTHER AUTHORITIES**

21 C.F.R. § 133.146(c).............................................................................6, 9

Federal Rule of Civil Procedure 10(c) .........................................................10

*Grated Cheeses: Amendment of the Standard of Identity*,
  51 Fed. Reg. 30210-01 (Aug. 25, 1986) .......................................................9

U.S. Patent No. 6,242,016 B1 ....................................................................9

## <u>INTRODUCTION</u>

Plaintiffs' opposition brief confirms that they are essentially seeking reconsideration of the Court's earlier Order dismissing the original complaint — even though there has been no intervening case law or new relevant facts since that Order. The second sentence of their introduction makes that clear: it declares that "the Court misapplied the law on false advertising," and the rest of Plaintiffs' brief regurgitates the same arguments that this Court already considered and rejected.

Contrary to Plaintiffs' assertion, this Court did not misapply the law on false advertising in dismissing their original complaint. This Court systematically surveyed and synthesized all the relevant case law on false advertising, and then summarized a simple, commonsense rule that courts across the country have established: a consumer cannot claim that she was deceived by an ambiguous labeling statement if the remainder of the packaging, viewed in context and as a whole, would dispel that ambiguity. Applying that rule, this Court held that the statement "100% Grated Parmesan Cheese" was ambiguous because reasonable consumers could interpret it in multiple ways. And because that statement is ambiguous, the Court reasoned, Plaintiffs could not plausibly allege that they were deceived into believing that Kraft Heinz Grated Parmesan Cheese[1] contained no other ingredients whatsoever, as the remainder of the packaging (including the ingredient line) makes abundantly clear that the products also contain small amounts of cellulose to prevent clumping and potassium sorbate to inhibit the growth of mold.

In their opposition, Plaintiffs barely attempt to explain how their amended complaint remedies the defects this Court identified in its order dismissing the case. Instead, Plaintiffs'

---

[1] This brief uses the term "Kraft Heinz Grated Parmesan Cheese" to refer to all three varieties of Kraft Heinz's grated parmesan cheese products challenged in Plaintiffs' lawsuit.

opposition, like their amended complaint, largely reiterates the same theory of deception that this Court rejected. The most that Plaintiffs can muster in their amended complaint are (i) two letters from linguistic professors that they hired as experts, and (ii) a brief reference to a mystery survey that supposedly proves their case of deception. Neither is enough to salvage their claims, as explained in Kraft Heinz's motion to dismiss.

First, the expert reports from linguistics Ph.D.'s are procedurally improper at the pleading stage, and in any event they do not address how a reasonable consumer — as opposed to a linguistics professor who invokes "H.P. Grice's theory of conversational implicature" — would construe the packaging of Kraft Heinz's parmesan cheese products.

Second, Plaintiffs briefly mention a consumer survey that purportedly shows that the majority of consumers "believe the Products are 100% Cheese." But the amended complaint does not mention a single fact about this survey.

Tellingly, Plaintiffs in their opposition spend virtually no time addressing these arguments, and instead recycle the same meritless arguments that they advanced before. This Court should reject them again and dismiss their amended complaint with prejudice.

## ARGUMENT

### I. Plaintiffs Still Have Not Plausibly Alleged That Kraft Heinz's "100% Grated Parmesan Cheese" Label Is Likely to Deceive a Reasonable Consumer.

#### A. The Court's Initial Opinion Correctly Distinguished between Affirmative Misrepresentations and Merely Ambiguous Statements.

To state a consumer fraud claim against Kraft Heinz, Plaintiffs must allege that its "allegedly deceptive statements were likely to mislead a reasonable consumer acting reasonably under the circumstances." *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, --- F. Supp. 3d ----, No. 16-5802, 2017 WL 3642076, at *5 (N.D. Ill. Aug. 24, 2017) (citations and

2

internal quotation marks omitted). To satisfy this standard, "there must be 'more than a mere possibility that [a] label might conceivably be understood by some few consumers viewing it in an unreasonable manner. Rather, the reasonable consumer standard requires a probability that a *significant portion of the general consuming public* . . . , acting reasonably in the circumstances, could be misled." *Id.* (citations and internal quotation marks omitted).

In determining whether a plaintiff has met this standard, courts distinguish between labels that contain affirmative misrepresentations and labels that are merely ambiguous. The Court's opinion dismissing Plaintiffs' initial complaint explained this distinction as follows:

> Where a plaintiff contends that certain aspects of a product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous; if so, context can cure the ambiguity and defeat the claim . . . . [W]hile a reasonable consumer, lulled into a false sense of security by an unavoidable interpretation of an allegedly deceptive statement, may rely upon it without further investigation, consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight . . . .

*Id*. at *6 (citations and internal quotation marks omitted). In other words, even "if a statement on a package or advertisement might be ambiguous or unclear in isolation, 'the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Id*. at *5 (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)); *see also, e.g., Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (requiring that advertisement be reviewed "as a whole" to assess whether it is misleading); *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008) ("If other information disclosed or available to the consumer dispels any tendency to deceive, there is no deception.").

Plaintiffs apparently disagree with the Court's so-called "ambiguity test," and they repeatedly assert that "the Court misapplied the law on false advertising." But the Court's opinion explicitly anticipated and countered the arguments Plaintiffs raise in their opposition brief:

First, Plaintiffs cite *Williams v. Gerber Products Co*., 552 F.3d 934 (9th Cir. 2008), *Ackerman v. Coca-Cola Co.*, No. 09-395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010), and *Thornton v. Pinnacle Foods Group*, No. 16-158, 2016 WL 4073713 (E.D. Mo. Aug. 1, 2016) for the generic proposition that a defendant cannot rely on an ingredient statement on the back of a product label to correct a potentially misleading statement elsewhere on the packaging. Opp'n at 4-5. Tellingly, however, these are the exact three cases the Court distinguished in its initial opinion. *See Grated Parmesan*, 2017 WL 3642076, at *6. As this Court and others made clear, these cases stand only for the narrow and unremarkable proposition that a defendant cannot use an ingredient list to shield itself from liability for affirmative misrepresentations; that rule, however, does not apply to statements that are merely ambiguous. *See id*.[2]

Second, Plaintiffs argue that the "ambiguity test" articulated by the Court is based on decisions that do not involve affirmative misrepresentations and therefore "do not apply here." Opp'n at 6. But Plaintiffs' argument is circular because it assumes that the statement "100% Grated Parmesan Cheese" is an affirmative misrepresentation — which, for numerous reasons, it is not. *See infra* I.B. And despite their efforts to distinguish these cases on their facts, Plaintiffs

---

[2] *See also, e.g., Freeman*, 68 F.3d at 290 ("[A]ny ambiguity that [the plaintiff] would read into any particular statement is dispelled by the promotion [advertisement] as a whole."); *Workman v. Plum Inc.*, 141 F. Supp. 1032, 1036-37 (N.D. Cal. 2015) (holding that "*Williams'* applicability was limited to affirmative misrepresentations" and is not applicable when "the packaging at issue contain[s] no affirmative misrepresentations" and is instead merely ambiguous); *Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, at *2 (C.D. Cal. Oct. 25, 2012), *tentative order adopted*, 2012 WL 5502359 (C.D. Cal. Oct. 26, 2012) (C.D. Cal. Nov. 1, 2012) ("[A] close reading of *Williams* and its progeny discloses that . . . the case 'merely bars a defendant from correcting an affirmative misrepresentation on the front packaging through a back of the box ingredient list.").

cite only one unpublished district court opinion supporting the proposition that a merely "ambiguous" statement can be deceptive when other elements of the packaging are sufficient to resolve that ambiguity. *See Wilson v. Frito-Lay N. Am.*, No. 12-1586, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013). As this Court made clear, that position is simply inconsistent with the majority of courts that have distinguished between affirmative misrepresentations and merely ambiguous statements. *See Grated Parmesan*, 2017 WL 3642076, at *5-6 (summarizing case law).

Third, Plaintiffs attempt to analogize this case to *Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097 (N.D. Cal. 2012), in which the court supposedly found that the statement "made with real fruit" was deceptive notwithstanding the fact that the challenged products actually contained real fruit. Opp'n at 5-6. As in *Lam,* Plaintiffs contend, the term "100% Grated Parmesan Cheese" is likewise misleading — even though Kraft Heinz Grated Parmesan Cheese indisputably contains real parmesan cheese. But Plaintiffs misstate the holding of *Lam*, where the court determined that the challenged labeling was potentially deceptive because it featured the word "strawberry," even though the "real fruit" in the products consisted of "pears from concentrate." 859 F. Supp. 2d at 1104. Here, by contrast, there is no dispute that Kraft Heinz Grated Parmesan Cheese *only* contains the type of cheese represented on the canister and no other type of cheese, such as process cheese or American cheese. Moreover, even if Plaintiffs' characterization of *Lam* were accurate, *Lam* was decided by the same judge who decided the *Wilson* case. The Court has pointed out that this judge's view represents a minority position, as numerous courts have dismissed lawsuits premised on truthful statements that a product was "made with" a certain ingredient.[3]

---

[3] *See, e.g., Red*, 2012 WL 5504011, at *3-4 (dismissing lawsuit challenging phrase "Made with Real Vegetables" when plaintiffs conceded that defendant's "Vegetable Thins" crackers were made with vegetables); *Henderson v. Gruma Corp.*, No. 10-04173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) (dismissing lawsuit challenging dip labeled "With Garden Vegetables" because the dip "in fact contain[s] vegetables that can be grown in a garden" and the label truthfully

Fourth, Plaintiffs suggest in passing that they can state a claim of consumer fraud based on a theory that Kraft Heinz "fraudulent[ly] omi[tted]" information from its labels. *See* Opp'n at 7 (citing *Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015)). But Plaintiffs do not even attempt to explain how the allegations of their amended complaint support a theory of "fraudulent omission." Nor could they, as it is indisputable that the labeling of Kraft Heinz Grated Parmesan Cheese discloses the presence of cellulose and potassium sorbate, the two "non-cheese" ingredients challenged in this lawsuit.[4]

In short, while Plaintiffs take issue with the Court's analysis of the relevant law, they identify no intervening changes in the law and no new facts that would merit reconsideration of the Court's earlier order. Accordingly, so long as the statement "100% Grated Parmesan Cheese" does not constitute an affirmative misrepresentation, Plaintiffs cannot state a plausible claim of deception if other information on the packaging is sufficient to dispel any potential ambiguity resulting from that phrase. *See Grated Parmesan*, 2017 WL 3642076 at *5-6.

## B. Plaintiffs Have Not Plausibly Alleged That "100% Grated Parmesan Cheese" Is Misleading, Let Alone an Affirmative Misrepresentation.

Applying the standard articulated by the Court in its earlier opinion, Plaintiffs' amended complaint fails for the same reason their initial complaint failed: it does not identify *any* affirmative misrepresentation on the labeling of Kraft Heinz Grated Parmesan Cheese. As the Court noted,

---

"speaks to their presence in the product, which is not misleading"); *Manchouck v. Mondelez Int'l Inc.*, No. 13-02148, 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x 632 (9th Cir. 2015) (dismissing plaintiff's challenge to the term "Made with Real Fruit" in Strawberry and Raspberry Newtons when the "complaint does not dispute that the cookies contain real fruits").

[4] Although Plaintiffs characterize cellulose and potassium sorbate as "non-cheese ingredients," they do not dispute that both of these ingredients are expressly authorized by the FDA in its standard of identity, which *defines* what "grated cheese" is. 21 C.F.R. 133.146(c); *see also Nemphos v. Nestle Waters N. Am, Inc.*, 775 F.3d 616, 621 (4th Cir. 2015) ("A standard of identity specifies the defining characteristics of a given food.") (citing 21 U.S.C. § 341).

the phrase "100% Grated Parmesan Cheese" is ambiguous because it "might also be an assertion that 100% of the cheese is parmesan cheese, or that the parmesan cheese is 100% grated" — both of which are indisputably true statements. *Id*. at \*6. Accordingly, the term "100% Grated Parmesan Cheese" is not an affirmative misrepresentation; at best, it is merely ambiguous. *Id*.

In light of the ambiguity of the phrase "100% Grated Parmesan Cheese," "[r]easonable consumers would . . . need more information before concluding that the labels promised only cheese and nothing more, and they would know exactly where to look to investigate—the ingredient list." *Grated Parmesan*, 2017 WL 3642076, at \*5; *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) (noting that the ingredient list is a "familiar and ubiquitous" feature "found on most food packages"). Had Plaintiffs reviewed the ingredient list, they would have realized that Kraft Heinz Grated Parmesan Cheese "contained non-cheese ingredients." *Grated Parmesan*, 2017 WL 3642076, at \*6. Indeed, a brief look at the labeling confirms that this information was readily available to any consumer who chose to look for it:



ECF No. 162-1, Decl. of Alexander M. Smith, ¶ 2 (highlighting added); *see also Goldman v. Bayer AG*, No. 17-0647, 2017 WL 3168525 (N.D. Cal. July 26, 2017) (holding that ambiguous name of One-A-Day vitamins could be clarified if "[a] reasonable consumer would simply need turn the bottle slightly to see" the serving size of two gummies per day that dispelled the plaintiff's alleged misconception).

Plaintiffs' insistence that their "nothing-but-cheese" reading is the only plausible interpretation is especially suspect in light of the fact that Kraft Heinz Grated Parmesan Cheese is a shelf-stable product packaged in plastic cylinders and stored on unrefrigerated supermarket shelves. As this Court recognized, a reasonable consumer would have anticipated the possibility that a grated, unrefrigerated cheese product could contain other ingredients to prevent the cheese from clumping together or developing mold. *Grated Parmesan*, 2017 WL 3642076 at *6 ("[R]reasonable consumers are well aware that pure dairy products spoil, grow blue, green, or black fuzz, or otherwise become inedible if left unrefrigerated for an extended period of time.").

For that reason, numerous courts have applied "common sense" — as urged by the Supreme Court and many other federal courts[5] — in rejecting similar lawsuits premised on the use of allegedly "artificial" ingredients in packaged, shelf-stable food products. *See, e.g., Veal v. Citrus World, Inc.*, No. 12-801, 2013 WL 120761, at *4 n.4 (N.D. Ala. Jan. 8, 2013) (dismissing lawsuit challenging labeling of "fresh squeezed" orange juice because "common sense dictates that by the time the [bottled orange juice] makes its way to a grocery store and sits on a shelf

---

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and *common sense*.") (emphasis added); *see also, e.g., Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690 (9th Cir. 2011) (affirming dismissal of false advertising claim that "def[ied] common sense"); *Spector v. Mondelēz Int'l, Inc*., 178 F. Supp. 3d 657, 670-71 (N.D. Ill. 2016) (applying "common sense" standard to dismiss false advertising claims under Illinois law).

awaiting purchase, it is no longer 'fresh'"); *Red*, 2012 WL 5504011, at *3 (dismissing challenge to crackers labeled as "Made with Real Vegetables" and reasoning that "a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables").

Here, as in *Veal* and *Red*, a reasonable consumer would expect (or would at least not foreclose the possibility) that shelf-stable, pre-grated parmesan cheese contained other ingredients to prevent clumping, preserve flavor, and inhibit the growth of mold. The Court recognized as much in its previous opinion: even if consumers might not "expect to find *cellulose* (or any other specific additive) in a container of unrefrigerated, shelf-stable cheese," the Court noted, "they would still suspect that something other than cheese might be in the container, and so would turn it around, enabling them to learn the truth from a quick skim of the ingredient label." *Grated Parmesan*, 2017 WL 3642076, at *7.[6]  *Id.*

In sum, Plaintiffs have not stated a plausible claim of deception because "100% Grated Parmesan Cheese" is ambiguous at worst and the remainder of the packaging makes clear that Kraft Heinz Grated Parmesan Cheese includes both cellulose and potassium sorbate.

---

[6] Plaintiffs point to a USDA website Q&A and a Kraft Heinz patent application to suggest that some parmesan cheese need not be refrigerated. But that does not establish that reasonable consumers would be surprised to discover cellulose or potassium sorbate in a pre-grated parmesan cheese product. Indeed, the FDA declared that the use of anticaking agents (such as cellulose) is often "necessary" to "provide consumers with grated cheese products having the characteristic flavor and texture of freshly grated cheese." *Grated Cheeses: Amendment of the Standard of Identity*, 51 Fed. Reg. 30210-01 (Aug. 25, 1986). Further, the FDA's standard of identity for "grated cheese" includes both anticaking agents (*e.g.*, cellulose powder) and antimycotics (*e.g.*, potassium sorbate). 21 C.F.R. § 133.146(c). And the patent that Plaintiffs cite recognizes that these ingredients are routinely included in grated parmesan cheese: "The grated parmesan cheese may then be blended with anticaking materials and/or antimycotic materials prior to packaging for consumer use without further aging." U.S. Patent No. 6,242,016 B1.

II.     **The Handful of New, Irrelevant Allegations in the Amended Complaint Do Not Establish That "100% Grated Parmesan Cheese" Is Deceptive or Misleading.**

Plaintiffs' amended complaint differs from their initial complaint in only two significant respects: (1) it appends two highly technical expert reports prepared by linguistics professors about the "semantics and syntax" of the phrase "100% Grated Parmesan Cheese"; and (2) it references a survey purportedly showing that "in excess of 90% of consumers believe that the label means the Products are 100% and fully grated." Am. Compl. ¶ 3, Exs. A-B. Plaintiffs do not discuss these amendments at length in their opposition, as they choose instead to extensively re-argue their previously rejected legal arguments. Nonetheless, neither of these amendments come close to curing the defects that compelled this Court to dismiss Plaintiffs' earlier complaint.

A.      **Plaintiffs' Expert Reports Are Procedurally Improper and Do Not Reflect Reasonable Consumer Expectations About "100% Grated Parmesan Cheese."**

Plaintiffs' amended complaint references two expert reports, which were prepared by three linguistics professors, that apply a variety of hyper-technical linguistic techniques (including "informativity," "stacking modifiers," and "H.P. Grice's theory of conversational implicature") to argue that Plaintiffs' reading of the term "100% Grated Parmesan Cheese" is the only plausible interpretation. Plaintiffs spend virtually no time in their amended complaint or their opposition brief explaining these professors' reasoning — if Plaintiffs even understand it in the first instance. Nonetheless, to the extent Plaintiffs rely on these expert reports to evade dismissal, these expert reports fail to salvage Plaintiffs' lawsuit for at least three separate reasons.

First, Plaintiffs' expert reports are procedurally improper. Although Federal Rule of Civil Procedure 10(c) allows a pleading to attach and incorporate a "written instrument," that term does not encompass Plaintiffs' expert reports, which were "generated for the purposes of this litigation." *Stuart v. Cadbury Adams USA, LLC*, No. 09-6295, 2010 WL 1407303, at *4 (C.D. Cal. Apr. 5,

2010), *aff'd*, 458 F. App'x 689 (9th Cir. 2011); *see also DeMarco v. DepoTech Corp.*, 149 F.Supp. 2d 1212, 1220-22 (S.D. Cal. 2001) (holding that expert affidavit did not qualify as a "written instrument" because it "represent[ed] a piece of evidentiary matter generated by a retained expert who had no contact with [defendant]"). Here, as in *Stuart* and *DeMarco*, the expert reports submitted by Plaintiffs do not form the basis of Plaintiffs' claims and did not exist independently of this lawsuit; instead, they were created expressly for use in this litigation. The Court should accordingly disregard any allegations in the amended complaint based on the opinions set forth in these improperly-submitted reports. *See, e.g., Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285-86 (5th Cir. 2006) (affirming refusal to consider expert report attached to amended complaint because "considering such opinions might require ruling on the expert's qualifications [which] would be inappropriate at the pleading stage."); *Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580, 2015 WL 1268271, at *3 (S.D. Fla. Mar. 19, 2015) (striking expert report and declining to consider expert opinion statements incorporated into amended complaint).

Second, even if the Court were to consider Plaintiffs' expert reports (which it should not), those reports offer virtually no insight into the relevant question in this case — how a reasonable consumer would interpret the phrase "100% Grated Parmesan Cheese." As Plaintiffs concede, the conclusion that three linguistics professors reached about the "syntax and semantics" of the phrase "100% Grated Parmesan Cheese" is not probative of how an ordinary, reasonable consumer (*i.e.*, one without a Ph.D. in linguistics) would interpret that phrase. *See Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 510 (2003) (noting that the reasonable consumer standard is not measured from the perspective of an "exceptionally acute and sophisticated" consumer).

These expert reports are divorced not only from the perspective of reasonable, ordinary consumers, but also from the context in which the phrase "100% Grated Parmesan Cheese" appears

on the labels of Kraft Heinz Grated Parmesan Cheese — which is the relevant context in which the Court should evaluate the meaning of this phrase. *See Freeman*, 68 F.3d at 290 (noting that courts must evaluate a challenged advertisement "as a whole" to determine whether it is false or misleading). For instance, the expert reports do not mention the ingredient line (or any other statement on the label). Nor do they mention the fact that the products are packaged, shelf-stable canisters of pre-grated cheese. Accordingly, these expert reports fail to address the crucial question in this case — whether, viewed in context, the phrase "100% Grated Parmesan Cheese" would mislead a reasonable consumer. *See Fink*, 714 F.3d at 742 ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial"); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-3826, 2015 WL 5579872, at *16 (E.D.N.Y. Sept. 22, 2015) ("In assessing the likelihood that a reasonable consumer would be misled, it is necessary to consider not only the allegedly misleading statement but also the surrounding context based on the content of the entire label or advertisement at issue.").

Third, the expert reports do not assist Plaintiffs because, at best, they merely establish that Plaintiffs' "nothing-but-cheese" reading is *one* plausible reading of the phrase "100% Grated Parmesan Cheese" (*i.e.*, that it is ambiguous) — not that it is the *only* plausible reading. Indeed, Professors Curzan and Keshet expressly concede that "phrases with three modifiers have the potential for multiple interpretations in terms of how the modifiers stack." Am. Compl., Ex. A, at 1. And because the phrase "100% Grated Parmesan Cheese" is susceptible of "multiple interpretations," it is ambiguous. *See Markin v. Chebemma Inc.*, 526 F. Supp. 2d 890, 894 (N.D. Ill. 2007) ("A . . . term is ambiguous if it can reasonably be interpreted in more than one way due to the indefiniteness of the language or due to the term having a double or multiple meaning.") (citing *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill. App. 324 (2005)). Accordingly, as

this Court made clear, a reasonable consumer would not "rely on it without further investigation"; instead, he or she would consult the ingredient label, which would disclose that Kraft Heinz Grated Parmesan Cheese contains both cellulose and potassium sorbate. *See Grated Parmesan*, 2017 WL 3642076 at *6 (emphasizing that "consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight.")

### B. Plaintiffs' Unidentified Survey Cannot Salvage Their Lawsuit.

Finally, Plaintiffs attempt to avoid dismissal by referencing a "recent survey conducted in connection with this litigation" that purportedly found that the "vast majority" — over 90% — of consumers believe that Kraft Heinz Grated Parmesan Cheese consists of "100% cheese and do[es] not contain fillers or artificial ingredients." Am. Compl. ¶ 29. But Plaintiffs do not provide any details about the survey. Plaintiffs cannot avoid dismissal by obliquely referencing a survey without describing any specific or particularized facts about it.[7] *See, e.g., El-Hallani v. Huntington Nat'l Bank*, No. 13-12983, 2014 WL 2217237, at *4 (E.D. Mich. May 29, 2014), *rev'd & remanded on other grounds*, 623 F. App'x 730 (6th Cir. 2015) (holding that allegations related to a survey "must set forth sufficient facts . . . in order for Plaintiffs to satisfy Rule 8(a)'s pleading requirements" and "refus[ing] to do an end-around *Twombly/Iqbal* by drawing an inference . . .

---

[7] Tellingly, the proponents of the surveys in the cases Plaintiffs cite offered *far* more detail than Plaintiffs offer here. For instance, in *Suchanek v. Sturm Foods, Inc.*, the court noted that the plaintiffs' survey expert had "attempted to recreate conditions of in-store buying by presenting participants first with a photograph of the GSC product on shelves near other Keurig-related products, and then presenting participants with images of the GSC box to look at for over 30 seconds." 764 F.3d 750, 753 (7th Cir. 2014). Likewise, in *In re Telebrands Corp.*, survey participants were segregated into a test and a control group, were eliminated from the study if they could not recall the product name or missed certain "filtering" questions, and were asked a series of questions — including both "open-ended" and "closed-ended" questions — to assess whether certain statements were implied by the advertisement. 140 F.T.C. 278, 317-18 (2005). Plaintiffs' amended complaint, by contrast, does not include a *single* detail about how their survey concluded that over 90% of respondents agree with Plaintiffs' "nothing-but-cheese" interpretation.

from the additional facts presented in [the] hastily cobbled together survey"); *see generally McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (noting that a plaintiff must "provide 'specific facts' to support the legal claims asserted").

## **CONCLUSION**

This Court should dismiss Plaintiffs' Amended Consolidated Class Action Complaint with prejudice.

Dated:  February 9, 2018                    Respectfully submitted,

                                           JENNER & BLOCK LLP


                                           By:  */s/* Dean N. Panos___
                                                  Dean N. Panos
                                                  353 N. Clark Street
                                                  Chicago, IL  60654-3456
                                                  Tel.:    (312) 222-9350
                                                  dpanos@jenner.com

                                           *Attorneys for Defendant*
                                           The Kraft Heinz Company

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing document was filed on February 9, 2018 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated: February 9, 2018          By:    *<u>/s/ Dean N. Panos</u>*
                                         Dean N. Panos