UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: 100% GRATED PARMESAN CHEESE MARKETING AND SALES PRACTICES LITIGATION<br><br>*This Document Relates to all Cases on the Albertsons and Supervalu Track and the Publix Super Markets, Inc. Track* | Civil Action No. 16 CV 5802<br><br>MDL 2705<br><br>Judge Gary S. Feinerman |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AGAINST
ALBERTSONS COMPANIES, INC., ALBERTSONS LLC, SUPERVALU, INC.
<u>AND PUBLIX SUPER MARKETS, INC.</u>**

Gary Hansen (admitted *pro hac vice*)
Heidi A.O. Fisher (admitted *pro hac vice*)
FOX ROTHSCHILD LLP
222 South Ninth Street, Suite 2000
Minneapolis, MN 55402-3338
Phone: 612.607.7000
Facsimile: 612.607.7100
ghansen@foxrothschild.com
hfisher@foxrothschild.com

Joseph E. Collins
FOX ROTHSCHILD LLP
353 N. Clark Street, Suite 3650
Chicago, IL 60654
Phone: 312.517.9227
Facsimile: 312.517.9201
jcollins@foxrothschild.com

*Counsel for Defendants Albertsons Companies, Inc., Albertsons LLC,
Supervalu Inc., and Publix Super Markets, Inc.*

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ..................................................................................................I

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I. THE NEW ALLEGATIONS IN THE AMENDED COMPLAINTS ARE INSUFFICIENT TO RESURRECT PLAINTIFFS' CLAIMS. ........................................ 2

    A. THE COURT SHOULD DISREGARD THE SURVEY AND LINGUIST "EXPERT" OPINIONS AS IMPROPERLY PLED. ............................................ 2

    B. REFERENCES TO PARMESAN CHEESE CHARACTERISTICS ARE IRRELEVANT. ........................................................................................ 3

    C. PLAINTIFFS' CELLULOSE ALLEGATIONS ARE CONCLUSIONS WITHOUT SUPPORTING ALLEGATIONS OF FACT. ................................. 4

        1. Albertsons/Supervalu ........................................................................... 4

        2. Publix ................................................................................................. 5

II. THE COURT CORRECTLY DETERMINED REASONABLE CONSUMERS WOULD NOT BE DECEIVED BY DEFENDANTS' LABELS. .................................. 5

    A. THE AMBIGUITY TEST IS AN APPROPRIATE FRAMEWORK FOR APPLYING THE REASONABLE CONSUMER STANDARD. ........................ 6

    B. THE COURT PROPERLY APPLIED THE REASONABLE CONSUMER STANDARD. ........................................................................................ 7

CONCLUSION ............................................................................................................. 10

i

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................................4

*Bober v. Glaxo Wellcome Plc*,
    246 F.3d 934 (7th Cir. 2001) ............................................................................................ 7, 8, 10

*Davis v. G.N. Mortgage Corp.*,
    396 F.3d 869 (7th Cir. 2005) ....................................................................................................8

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ....................................................................................................8

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ...................................................................................................10

*Kraft, Inc. v. F.T.C.*,
    970 F.2d 311 (7th Cir. 1992) .................................................................................................2, 3

*Krommenhock v. Post Foods, LLC*,
    255 F. Supp. 3d 938 (N.D. Cal. 2017) ......................................................................................9

*Lam v. General Mills, Inc.*,
    859 F. Supp. 2d 1097 (N.D. Cal. 2012) .............................................................................. 9, 10

*McKinnis v. Kellogg USA*,
    No. CV 07-2611 ABC, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ...................................6

*Mead Johnson & Co. v. Abbott Labs*,
    201 F.3d 883 (7th Cir. 2000) .................................................................................................2, 7

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) .................................................................................................2, 3

*Toulon v. Continental Casualty Co.*,
    877 F.3d 725 (7th Cir. 2017) ....................................................................................................8

*Trujillo v. Apple Computer, Inc.*,
    581 F. Supp. 2d 935 (N.D. Ill. 2008) ........................................................................................7

*Veal v. Citrus World, Inc.*,
    No. 2:12-CV-801-IPJ, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013) ..........................................4

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2012) ...................................................................................4

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir. 2008) ......................................................................... 8, 9, 10

*Workman v. Plum, Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015)...................................................................6

*Zlotnick v. Premier Sales Group, Inc.*,
   480 F.3d 1281 (11th Cir. 2007)...............................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 8 ......................................................................................4

Federal Rule of Civil Procedure 9 ......................................................................................4

Federal Rule of Civil Procedure 12......................................................................................2

**INTRODUCTION**

The Amended Consolidated Complaints ("Amended Complaints") present a handful of "new" allegations primarily relating to the conclusory recitation of the supposed results of an undisclosed survey and the opinions of linguists about the interpretation of a phrase on Defendants' grated parmesan cheese labels. Contrary to Plaintiffs' assertion that Defendants ignored these allegations, (Doc. No. 255 at 1), Defendants' opening briefs discussed the deficiencies of each of the new allegations in detail.

Tellingly, Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss Amended Consolidated Class Action Complaints ("Plaintiffs' Opposition") makes no response to Defendants' discussion of the new allegations, essentially conceding the allegations do not remedy the deficiencies in the original consolidated complaints ("Original Complaints"). Instead, Plaintiffs appear to have added the allegations primarily as a procedural mechanism to accomplish their real objective—asking the Court to reconsider and reverse its August 24, 2017 order dismissing the Original Complaints ("Dismissal Order"). The second sentence in the introduction to Plaintiffs' Opposition makes that unquestionably clear, asserting that "[i]n dismissing those complaints, the Court misapplied the law of false advertising." (Doc. No. 255 at 1.)

Though Plaintiffs may be free to ask the Court to reverse itself, the Court's Dismissal Order accurately assessed and applied the law. Plaintiffs' rehash of their earlier arguments cites no compelling new authority and provides no basis for the Court to reverse course. The Court should dismiss the Amended Complaints with prejudice.

**ARGUMENT**

I. **THE NEW ALLEGATIONS IN THE AMENDED COMPLAINTS ARE INSUFFICIENT TO RESURRECT PLAINTIFFS' CLAIMS.**

The new allegations in the Amended Complaints are not allegations of fact, are not all new, and do not save Plaintiffs' claims. Even Plaintiffs seem to recognize the insufficiency of the allegations because they barely mention them in Plaintiffs' Opposition and make no response at all to Defendants' detailed discussion of why the allegations do not correct the deficiencies in the Original Complaints.

A. **The Court Should Disregard the Survey and Linguist "Expert" Opinions as Improperly Pled.**

The Amended Complaints added allegations related to the results of an undisclosed survey and the reports of linguists. The allegations are opinions and conclusions masquerading as facts, and Defendants' opening briefs addressed them in detail. (Doc. No. 244 at 4–9; Doc. No. 247 at 4–9.) Plaintiffs' Opposition neither acknowledges nor rebuts those arguments.

Instead of a substantive response, Plaintiffs claim "[c]onsumer surveys are the gold standard for determining the advertising message conveyed to a reasonable consumer." (Doc. No. 255 at 3.) This ignores Seventh Circuit precedent cited in Defendants' opening briefs rejecting surveys as useful to determine "the meaning of words" and as inherently unreliable and subjective. *E.g., Mead Johnson & Co. v. Abbott Labs*, 201 F.3d 883, 886 (7th Cir. 2000) (explaining that surveys allegedly showing that "factual propositions that are susceptible to misunderstanding" are not the same thing as "misleading").

Plaintiffs rely on *Suchanek v. Sturm Foods, Inc*., 764 F.3d 750 (7th Cir. 2014) and *Kraft, Inc. v. F.T.C*., 970 F.2d 311 (7th Cir. 1992). Neither case supports the contention that reference in a complaint to the supposed results of an undisclosed survey is a well-pled allegation sufficient to withstand a motion to dismiss under Rule 12(b)(6). *Suchanek* was decided in the context of

2

class certification and, importantly, included a lengthy discussion of how the expert surveys in the record were performed and by whom—a discussion clearly intended to set out the facts supporting the opinions constituting the survey's conclusions. *Suchanek*, 764 F.3d at 753–54. In contrast, the Amended Complaints plead only the supposed conclusions of the survey without pleading any facts from which those conclusions could reliably be drawn.

*Kraft* similarly did not involve a pleading challenge, but instead involved a court's review of an order following an administrative trial in which Kraft challenged the Federal Trade Commission's findings of the implied "claims" made in a series of print and broadcast media advertisements. *Kraft*, 970 F.2d at 314. The case stands for the unremarkable proposition that a fact finder can consider surveys in a proceeding where the facts underlying the opinions stating the conclusions of the survey are fully known and examined. (*Id*. at 318.)

### B. References to Parmesan Cheese Characteristics Are Irrelevant.

Plaintiffs have also elected not to acknowledge or respond to Defendants' arguments demonstrating the irrelevance of the Amended Complaints' description of the characteristics of cheese, drawn from a portion of a dated patent of questionable pertinence. (AC ¶¶ 15, 22; Doc. No. 244 at 9–10; Doc. No. 247 at 10.) Instead, they challenge the Dismissal Order's discussion of the reasonable consumer's understanding of the nature of cheese as a dairy product. Plaintiffs characterize the Court's observation that dairy products will spoil and become inedible if left unrefrigerated for an extended period as "factually incorrect" when applied to certain hard cheeses "as a general rule." They do so without demonstrating the supposed "general rule" even applies to the Grated Parmesan Cheese product at issue in this case. (Doc. No. 255 at 10.)

Moreover, Plaintiffs contradict their own position in prior briefing. Plaintiffs previously argued that one could not expect reasonable consumers to understand the "intricacies relating to shelf life and processing of" grated cheese. (Doc. No. 216 at 18) (citing Doc. 185 at 36.) Doing

3

an about-face, they now suggest reasonable consumers are experts on cheese and can discern that certain varieties do not require refrigeration for safety. They ask the Court to ignore common sense and both attribute specialized knowledge gleaned from an old patent to the consumer and assume the consumer will apply that knowledge to the Grated Parmesan Cheese product at issue in this case—ignoring the product label instructing the consumer to "Refrigerate After Opening." (Doc. 216 at 4–6.) *See Veal v. Citrus World, Inc.,* No. 2:12-CV-801-IPJ, 2013 WL 120761, at *4 n.4 (N.D. Ala. Jan. 8, 2013) (applying common sense to the reasonable consumer's understanding of shelf life). The Court should reject this illogical and contradictory argument.

### C. Plaintiffs' Cellulose Allegations Are Conclusions Without Supporting Allegations of Fact.

Plaintiffs appear to argue, almost in passing, that Defendants use more cellulose than necessary to prevent caking. (Doc. No. 255 at 11, 13, 16.) They make no attempt to identify facts supporting these speculative allegations, which are largely unchanged from the Original Complaints and are still insufficiently pled under both Rule 8(a)(2) and Rule 9(b). *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("conclusory statements and naked assertions are insufficient" under Rule 8(a)(2)); *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 569 (7th Cir. 2012) (Rule 9(b) requires specificity, including the "who, what, where, and how"). Because the allegations in the Albertsons/Supervalu Amended Complaint and Publix Amended Complaint differ, Defendants address them separately.

#### 1. Albertsons/Supervalu.

Based on an undisclosed report from an unidentified testing facility, using an unspecified methodology, and with no allegation that they have even seen the report or know the facts supporting its supposed conclusions, Plaintiffs repeat the Original Complaint's allegation that one sample of Supervalu's grated cheese product contained 8.8% cellulose. (Doc. No. 227 ¶ 19; Doc.

4

No. 121 ¶ 18.) Even if they could allege 8.8% cellulose as fact rather than unsupported conclusion garnered via hearsay from an unidentified source, Plaintiffs have not alleged facts regarding the level of cellulose necessary or permitted to prevent caking and provide no facts from which to conclude 8.8% is "too much cellulose." As discussed in Defendants' opening brief, the allegation of the amount of cellulose in the product and the conclusion it is "too much" are conclusory statements insufficient to state a claim. (Doc. No. 244 at 10–11.)

### 2. Publix.

Plaintiffs' allegations regarding the cellulose in Publix products are even more nebulous. There is no allegation as to the amount of cellulose in Publix's Grated Parmesan Cheese. Plaintiffs allege only that "a significant portion" of the product is cellulose. (AC ¶ 13.) Even if Plaintiffs had alleged facts regarding the amount of cellulose necessary or permitted to prevent caking, they have not alleged facts supporting a conclusion that Publix grated parmesan cheese exceeded that level of cellulose. The Amended Complaint therefore does not support a claim that Publix's grated cheese products had "too much cellulose."

## II. THE COURT CORRECTLY DETERMINED REASONABLE CONSUMERS WOULD NOT BE DECEIVED BY DEFENDANTS' LABELS.

Plaintiffs' challenge to the Dismissal Order begins with the conclusion that the principal product identification on Defendants' labels (100% Grated Parmesan Cheese) is an affirmative misrepresentation. Assuming that misrepresentation, Plaintiffs skip past the ambiguity test applied by the Court because "[t]he ambiguity test appears to be distilled from decisions that do not apply here." (Doc. No. 255 at 6.)

Plaintiffs' analysis is faulty because it begins by assuming their predetermined result (that the product identification is an affirmative misrepresentation) and ignores all precedent to the contrary. This is the same tactic the Court previously recognized and rejected. (Doc. No. 216 at

5

17) ("Plaintiffs take a different view, casting this case as one about 'affirmative misrepresentations,' not ambiguous statements."). The cases relied upon by Plaintiffs were cited by or available to them when briefing the prior motions to dismiss. That authority presents nothing new to the Court and provides no basis for rejecting the reasoning or results of the Dismissal Order.

### A. The Ambiguity Test is an Appropriate Framework for Applying the Reasonable Consumer Standard.

Plaintiffs portray the ambiguity test as an improper alternative to the "reasonable consumer" standard (Doc. No. 255 at 2–3) when, in fact, the ambiguity test is an analytical framework for applying the reasonable consumer standard. The Court recognized this after thoroughly reviewing and synthesizing extensive case law across multiple jurisdictions. (Doc. 216 at 14.)

The ambiguity test is grounded in logic and consistent with the FDA's regulatory scheme. If a label's principal product identification is ambiguous and might leave a reasonable consumer wondering about its meaning, that reasonable consumer would seek additional information to resolve the ambiguity. *Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) ("Every reasonable shopper knows that the devil is in the details.") Contrary to Plaintiffs' argument, this does not require a complex "investigation." Often, as here, it requires only a simple twist of the wrist. Reasonable consumers know food product labels include ingredients panels. *Id.*; *see also McKinnis v. Kellogg USA,* No. CV 07-2611 ABC (RCx), 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) ("Plaintiffs cannot claim surprise over these labels, which have long been required on food products and are familiar to a reasonable consumer.") The FDA mandates ingredients panels specifically to provide consumers with information about the product, and a court cannot ignore their existence. *Workman*, 141 F. Supp. 3d at 1035 (noting that FDA requires products to list all ingredients in order of predominance). It is eminently reasonable to expect a consumer to twist

6

the wrist and review the easily accessible ingredients list to clarify any confusion created by an ambiguity elsewhere on the label.

On the other hand, if the label is not ambiguous, but instead presents an affirmative misrepresentation, a reasonable consumer might not be confused or spurred to seek additional information. As the Court noted, an affirmative misrepresentation can "lull" a reasonable consumer into a "false sense of security by an *unavoidable interpretation* of an allegedly deceptive statement." (Doc. 216 at 15) (emphasis added). In that case, a reasonable consumer might not be expected to look to the ingredients panel to learn more, and the challenged statement may be analyzed without reference to the ingredients panel.

In essence, Plaintiffs ask the Court to ignore the existence—or even the possibility—of an ambiguity and to assume an ambiguous statement is by default an affirmative misrepresentation. (Doc. No. 255 at 5.) That position does not comport with the law. *See, e.g., Zlotnick v. Premier Sales Grp., Inc.,* 480 F.3d 1281, 1284 (11th Cir. 2007) ("This standard requires a showing of probable, not possible, deception."); *see also Mead Johnson & Co.*, 201 F.3d at 887 ("A 'misunderstood' statement is not the same as one designed to mislead.") If Plaintiffs' position were correct, it would nullify the regulatory scheme through which FDA requires manufacturers to convey information to consumers in mandated product names, such as Grated Parmesan Cheese, and in ingredients panels identifying the ingredients in the product.

### B. The Court Properly Applied the Reasonable Consumer Standard.

The Court found the front of Defendants' labels ambiguous because a consumer could interpret it in at least three different ways. (Doc. 216 at 6). The Court then correctly determined that a reasonable consumer would review the ingredients panel and confirm that the cheese identified on the front of the package was the only type of cheese in the container. *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008) (citing *Bober v. Glaxo Wellcome*

7

*Plc,* 246 F.3d 934, 938 (7th Cir. 2001)) ("If other information disclosed or available to the consumer dispels any tendency to deceive, there is no deception.") This determination recognized that both statutory and warranty claims fail to state a claim when the totality of the information available to the consumer dispels any likelihood of an alleged misrepresentation or omission deceiving a reasonable consumer. *Bober,* 246 F.3d at 940; *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 730–31 (7th Cir. 2017) (quoting *Davis v. G.N. Mortg. Corp.,* 396 F.3d 869, 884 (7th Cir. 2005) (the "allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff")). Therefore, as the Court found, Defendants' labels, viewed as a whole, are not likely to mislead a reasonable consumer because all relevant information was readily available to that consumer.

Plaintiffs rely heavily on cases interpreting California law on affirmative label misrepresentations, even though California law does not apply to any claims against the Supervalu, Albertsons, or Publix Defendants. The courts in those cases found affirmative representations not because statements or depictions on the front of the label were ambiguous and susceptible to multiple interpretations, but because those *unambiguous* statements or depictions were *directly contradictory* to the ingredients panels.

For example, Plaintiffs again rely heavily on *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), which the Court distinguished in its Dismissal Order. (Doc. 216 at 15.) In *Williams*, a product called "fruit juice snacks" prominently depicted certain fruit on the label, even though the product contained neither those fruits nor their juices. *Williams*, 552 F. 3d at 939. The Ninth Circuit has since clarified that *Williams* does not suggest, as Plaintiffs urge here, that a court should ignore information in the ingredients label on a motion to dismiss. Rather, "[s]tated straightforwardly, *Williams* stands for the proposition that *if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." *Ebner v. Fresh,*

8

*Inc*., 838 F.3d 958, 966 (9th Cir. 2016) (emphasis in original) (explaining that the product's label "complies with both state and federal law" and "does not contradict other representations or inferences" on the label).

Plaintiffs also rely on *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017). In that case, Post's affirmative health and wellness claims on the front label of certain breakfast cereals were allegedly false and misleading because of Post's failure to disclose the presence of unhealthy added sugar, even though the ingredients panel disclosed the total sugar content. (*Id*. at 954, 964.) The court found that the ingredients panel did not clarify the claims that the product was "healthy", but rather both contradicted the claims and failed to disclose the fact that sugar was added.

Plaintiffs argue their claims are similar to those in *Lam v. General Mills, Inc*., 859 F. Supp. 2d 1097 (N.D. Cal. 2012), which is also similar to *Williams*. In *Lam*, the side of the label contained the statement "made with real fruit." *Id*. at 1100, 1104. The word "strawberry" appeared in large letters on the front, back, top, and bottom panels. *Id*. at 1104. The ingredients panel revealed there were no strawberries in the product at all, and the "real fruit" ingredient was actually "pears from concentrate." *Id*. The claims of "made with real fruit" and "strawberry" taken together, therefore, could lull a reasonable consumer into a "false sense of security by an *unavoidable interpretation* of an allegedly deceptive statement" (Doc. 216 at 15) (emphasis added). Presented with the unambiguous representation that the product contained strawberries, a consumer would not reasonably be expected to review the ingredients panel to learn it did not.

Though *Lam* does not apply as Plaintiffs suggest, it is of interest for another reason. The court reached a different conclusion regarding a claim describing the product as "naturally strawberry flavored" because FDA regulations expressly authorized that description. *Id*. at 1102–03. The court found it was "bound to apply" that regulation. *Id*. at 1102. Similarly, here, the FDA

9

requires Defendants to call their products Grated Parmesan Cheese. By FDA definition, Grated Parmesan Cheese can include cellulose and potassium sorbate. Thus, labeling the product Grated Parmesan Cheese, as required, cannot be an affirmative misrepresentation and nothing on the ingredients panel contradicts that accurate product description. At most, adding "100%" before the FDA-approved statement of identity created an ambiguity, and the ingredients panel dispelled any such ambiguity.

Ignoring Defendant's mandated compliance with FDA requirements, Plaintiffs retreat to their previous strategy of misquoting the label as if it read "100% cheese" or "100% grated cheese" rather than "100% *Grated Parmesan Cheese*." (Doc. No. 255 at 1, 7, 9.) Only in this way, if at all, can Plaintiffs shoehorn this case into the *Williams* analysis: "Williams applies to affirmative misrepresentations, such as the ones here *that the Products are 100% cheese when they are not*." (Doc. No. 255 at 7) (emphasis added). By both misquoting the label and ignoring Defendants' required use of a mandated product name, Plaintiffs employ the same tactic they highlighted while attempting to distinguish cases relied upon by the Court in the Dismissal Order. (*Id.*) (discussing how the plaintiffs in *Bober* alleged false statements were made when in fact they were not); (*id.* at 9) (noting that the plaintiff in *Fink v. Time Warner Cable,* 714 F.3d 739 (2d Cir. 2013) "misquoted the language in the advertisement"). Plaintiffs have similarly misquoted the labels at issue here. The Court should reject Plaintiffs' characterization and arguments and reaffirm the analysis and conclusions in the Dismissal Order.

## **CONCLUSION**

Because Plaintiffs have not presented well-pled facts curing the deficiencies in the Original Complaints and because any further amendment would be futile, the Court should dismiss the Amended Complaints with prejudice.

10

Dated: February 9, 2018            Respectfully submitted,

/s/ Gary Hansen
Gary Hansen (admitted *pro hac vice*)
Heidi A.O. Fisher (admitted *pro hac vice*)
FOX ROTHSCHILD LLP
222 South Ninth Street - Suite 2000
Minneapolis, MN 55402-3338
Telephone: 612.607.7000
Facsimile: 612.607.7100
Email: ghansen@foxrothschild.com
       hfisher@foxrothschild.com

and

Joseph E. Collins
FOX ROTHSCHILD LLP
353 N. Clark St., Suite 3650
Chicago, IL 60654
Telephone: 312.517.9227
Facsimile: 312.517.9201
Email: jcollins@foxrothschild.com

*Counsel for Defendants Albertsons Companies, Inc., Albertsons LLC, Supervalu, Inc., and Publix Super Markets, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed on February 9, 2018, with the Clerk of the Court by using the CM/ECF system which will send a notice of filing to all counsel of record.

/s/ Heidi A.O. Fisher
Heidi A.O. Fisher