**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| **IN RE: 100% GRATED PARMESAN CHEESE MARKING AND SALES PRACTICES LITIGATION** | Case No.: 1:16-CV-05802 (MDL No. 2705) |
| *This Document Relates to All Cases on the Target and Wal-Mart Tracks* | The Hon. Gary S. Feinerman |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED
CONSOLIDATED CLASS ACTION COMPLAINTS AGAINST
<u>TARGET CORPORATION AND ICCO-CHEESE COMPANY, INC.</u>**

**BOWIE & JENSEN, LLC**

Joshua A. Glikin (General Bar No.: 008107)
glikin@bowie-jensen.com
Bowie & Jensen, LLC
210 West Pennsylvania Avenue, Suite 400
Towson, Maryland 21204
(410) 583-2400 Telephone

*Attorneys for Defendants Target
Corporation and ICCO-Cheese
Company, Inc.*

Plaintiffs style their most recent filing as an "opposition." In reality, the Opposition [Doc. 255] does not actually oppose the most salient points in the ICCO-Target opening brief in support of their Motion to Dismiss the Amended Complaint (the "Motion") [Doc. 239]. Plaintiffs instead bury their heads in the sand, apparently hoping this Court will follow their lead and ignore the legal arguments that establish that the Amended Complaint ("AC")[1] fails to state any claim as a matter of law. Indeed, the Opposition devotes no effort to convincing the Court that the new allegations in the AC are sufficient to save this matter from dismissal, which is telling. It instead resurrects old arguments that this Court correctly rejected. There is no reason why these recycled arguments should succeed now, and so the AC should be dismissed with prejudice.

## I. ARGUMENT

### A. The Court Should Not Consider The Linguists' Opinions, And Plaintiffs Have Waived Any Argument To The Contrary

One of only three plausibly new features of the AC was the inclusion of two reports by three linguists (the "Linguists' Opinions") who disagreed with the Court's conclusion that the statement "100% Grated Parmesan Cheese" is ambiguous to the ordinary, reasonable consumer. Defendants' Motion asserted that the Court need not, and should not, give any weight to the Linguists' Opinions now attached to the AC, for at least four reasons. Significant argument was dedicated to each of the four reasons; namely, that the Linguists' Opinions are not allegations of fact that the Court need accept as true at this stage, that the Linguist' Opinions are irrelevant; that the opinions are unreliable as a matter of law; and that the opinions ignore the FDA's definition of what "grated parmesan cheese," as a specific product, may contain.

---

[1] Proper names and defined terms used in this Reply have the same meanings ascribed to them in the Target/ICCO opening brief [Docket No. 239]. Defendants do not waive any arguments asserted in their opening brief even if they are not mentioned or repeated in this Reply.

Plaintiffs' Opposition addresses none of those four reasons. It is utterly silent on the addition of the Linguists' Opinions and their effect on the AC, save to state that the AC "also include[s] analyses from linguists demonstrating that the labels are not ambiguous, but have only one meaning[.]" Opposition at p.8. Plaintiffs' failure to address the arguments advanced in Defendants' Motion regarding the Linguists' Opinions should result in a waiver. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("[T]he forfeiture doctrine applies not only to a litigant's failure to raise a general argument ... but also to a litigant's failure to advance a specific point in support of a general argument ...."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal quotation marks omitted); *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (a party's failure to oppose an argument permits an inference of acquiescence, and "acquiescence operates as a waiver"). The rule that a party waives an argument by failing to make it before the district court applies both "where a party fails to develop arguments related to a discrete issue," and "where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss." *Alioto*, 651 F.3d at 721. Indeed, this Court has not hesitated to apply this doctrine in cases where a plaintiff has failed to respond to an argument made by a defendant seeking to dismiss a complaint. *See Jones*

*v. UPS Ground Freight, Inc.*, 15 C 7991, 2016 U.S. Dist. LEXIS 26865, at \*9 (N.D.Ill. Mar. 3, 2016); *Matthews v. Hughes*, 14 C 7582, 2015 U.S. Dist. LEXIS 135139, at \*11–12 (N.D.Ill. Oct. 5, 2015).

In short, by failing to offer any reasons why the Linguists' Opinions are relevant and merit consideration by the Court at this stage of the proceedings, Plaintiffs concede that the Linguists' Opinions are not allegations of fact that must be considered as true at this stage; that they are irrelevant to this Court's finding as a matter of law that "100% grated parmesan cheese" is ambiguous; that they are unreliable as a matter of law; and that they ignore the FDA's definition of "grated parmesan cheese" as a specific product. These irrelevant and unreliable opinions should be disregarded. There is nothing in the AC that casts doubt upon this Court's well-reasoned previous conclusion that the phrase "100% grated parmesan cheese" is ambiguous to a reasonable consumer, but capable of clarification once the Products' labels are consulted in their entirety.

**B. Plaintiffs Offer No Reason Why Their "Consumer Survey" Is Entitled To Consideration**

Consumer surveys may be the "gold standard," as Plaintiffs describe them, for determining what consumers believe about a particular product label, but they are only necessary where extrinsic evidence of consumer perception is required. Plaintiffs attempt to distract the Court with an unsupported reference to a "10–20% standard"—a standard not discussed in any of the three cases cited to somehow support this proposition—but this misdirection ignores the obvious. Since the Products' labels, as a whole, could not mislead a reasonable consumer about the contents of the Product, then survey evidence has no helpful part to play on the question of what the label communicates to the consumer. *Cf. Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 250 (3d Cir. 2011).

Moreover, the cases cited by Plaintiffs to persuade this Court to accept their unsubstantiated survey results as true are inapposite. In those cases, which examined the results of consumer surveys in different procedural contexts than a motion to dismiss for failure to state a claim, all of the evidence about the consumer survey was available to the courts or commissions that rendered the decisions, including how the survey was conducted, the full results of the surveys, each possible survey response, etc. *See Firestone Tire & Rubber v. FTC*, 481 F.2d 246, 249 (6th Cir. 1973) (reviewing the FTC's findings of fact and reviewing the entire text of the survey response chosen by 15.3% of respondents); *In re Telebrands Corp.*, 140 F.T.C. 278, 316–23 (discussing in detail the design of the survey and its findings). Not so here, where Plaintiffs have simply claimed a survey was conducted but declined to attach the results to their AC, and have baldly asserted that a "vast majority" of an unknown sample size, when presented with unknown questions, chose one of an unknown number of responses indicating that the Products were 100% cheese.

In short, while the Court must accept Plaintiffs' factual allegations as true at this stage, the consumer survey (or any reference to it) must still set forth enough facts for the Court to infer that reasonable consumers were deceived. *Cf. El-Hallani v. Huntington Nat'l Bank,* No. 13-12983, 2014 U.S. Dist. LEXIS 72887, at *12 (E.D. Mich. May 29, 2014), *rev'd & remanded on other grounds*, 623 F. App'x 730 (6th Cir. 2015). The complete absence of any facts about the survey means that Plaintiffs' allegations cannot satisfy the most basic requirements of Federal Rule of Civil Procedure 8(a), which requires a plaintiff to "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). Nor do Plaintiffs attempt to give any reason why the Court should consider their survey results at this stage. The simple fact is, there is no

reason why their putative "survey" should be given any consideration, much less any presumption of truth. And once again, when the claims regarding the consumer survey are removed from the AC, Plaintiffs are left with nothing more than the same arguments this Court already rejected, and correctly so.

**C.   Plaintiffs Still Cannot Plausibly Allege That A Reasonable Consumer Would Be Misled By The "100% Grated Parmesan Cheese" Claim On The Products' Labels**

Plaintiffs have, once again, retreated to a position that the phrase "100% grated parmesan cheese" is misleading to a reasonable consumer and can only mean that the Products consist of nothing but cheese, despite this Court's findings to the contrary. But in order to sustain this position, Plaintiffs also continue to misstate that the Products' labels contain the phrase, "100% cheese." Opposition at pp. 1, 7, 13, 16. No such claim was ever made on any label at issue in this case. It stands to reason that, if Plaintiffs could state a plausible claim based upon the *actual* statement that appears on the Products' labels, they would. Yet Plaintiffs' Opposition, like its AC, remains stubbornly premised on a label claim that does not exist.

Nor is it true, as Plaintiffs assert, that Defendants are using the ingredient panel on the Products' labels to "shield" themselves from liability. In their effort to convince the Court that the labels on the Products are likely to mislead reasonable consumers, Plaintiffs continue to rely on cases that are inapposite. The cases cited or discussed by Plaintiffs all concerned products with <u>unambiguous</u>, but deceptive, labels on the front of the packages in question. The ingredient panels on the products all revealed something else about the product that contradicted or clarified the claim made on the front of the product—for example, that no strawberries were contained in a package of purportedly strawberry-flavored Fruit Roll-Ups, *Lam v. Gen. Mills, Inc.* 859 F. Supp. 2d 1097, 1100 (N.D.Cal. 2012)—but a reasonable consumer, believing the unambiguous statements on the fronts of the products and thus deceived by them, would have no need or

5

responsibility to conduct further investigation by consulting the ingredient list. This line of cases is best exemplified by *Williams v. Gerber*, 552 F.3d 934 (9th Cir. 2008) and the cases adopting its line of reasoning. *E.g.*, *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017) (discussing deceptive features concerning sugar content in breakfast cereals); *Lam*, 859 F. Supp. 2d at 1100 (discussing deceptive packaging of Fruit By the Foot and Fruit Roll-Ups); *Ackerman v. Coca-Cola Co.*, No. 09-cv-00395, 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) (discussing deceptive packaging of "vitaminwater"). Each one of these cases is distinguishable, and thus their holdings and reasoning do not govern here.

Plaintiffs' continued reliance on *Williams* is particularly perplexing given that this Court has already pointed out the difference between the *Williams* case and the instant action (in response to the identical argument that Plaintiffs made in response to Defendants' original motions to dismiss). In *Williams*, the marketing of fruit snacks for toddlers was found to be deceptive because the front of the label included the phrase "Fruit Juice" and pictured a number of fruits, but the ingredient list on the back of the package revealed that the only fruit-related ingredient was white grape juice from concentrate. [Doc. 216 at pp.18–19] (citing *Williams*, 552 F.3d at 936). Because "the product's label 'potentially suggest[ed] *(falsely)* that [the prominently pictured] fruits or their juices were contained in the product,' … a reasonable consumer might be deceived even though the ingredient label was accurate." [Doc. 216 at p.19] (quoting *Williams*, 552 F.3d at 939). But as this Court noted, the key in *Williams* was "the allegedly deceptive term "Fruit Juice" on the front of the package was an affirmatively false impression; there was no ambiguity." [Doc. 216 at p.19].

By contrast, this Court has determined, and rightly so, that the phrase "100% grated parmesan cheese" that appeared on the labels of the Products <u>was ambiguous</u> and open to at least three plausible determinations to a reasonable consumer standing in a dry-goods aisle of his or

her local supermarket and considering a shelf-stable product: does this product contain cheese that is 100% grated? Is the cheese in this product 100% parmesan? Is the product comprised of 100% cheese and nothing else? However, the ingredient labels on the Products <u>unquestionably resolve</u> that ambiguity, by telling consumers that the Products contain 100% of what the FDA defines "grated parmesan cheese" to be—parmesan cheese, anti-caking agents, and antimycotics. *See Williams*, 552 F.3d at 393 n.3 (explaining the "context of the packaging as a whole" must be considered in evaluating whether deception has occurred).

Defendants do not dispute that a reasonable consumer can plausibly be deceived by an unambiguous but false statement. This happened in *Williams*, where the labels on fruit snacks depicted a variety of fruits and claimed to be made with "fruit juice" (but in reality the only fruit product present was white grape concentrate). 552 F.3d at 936. It happened in *Lam*, where the labels on fruit-snack products touted real fruit and were accompanied by large pictures of strawberries (but in reality there were no strawberries present and the only fruit ingredient was pears from concentrate). 859 F. Supp. 2d at 1100. It happened in *Ackerman*, where labels on a beverage claimed that the product contained "vitamins + water = all you need" (but in reality the beverage contained added sugars and other ingredients), 2010 U.S. Dist. Lexis 73156, at *16, 56–57, 61, and in *Thornton v. Pinnacle Foods Grp LLC*, where a muffin mix label made a claim of "nothing artificial" (when in reality the mix contained synthetic ingredients), No. 4:16-CV-00158, 2016 U.S. Dist. Lexis 99975, at *1–2 (E.D. Mo. Aug. 1, 2016). The list of cases along these lines goes on, and Plaintiffs cite many more of them. In such instances, the reasonable consumer does not question the deceptive statement on the label, and need not turn to the back of the package to consult the ingredient panel, because there is no ambiguity as to what the label implies, falsely or not. In those instances, it stands to reason that having an ingredient panel

clarify or contradict a statement made on the front of the package cannot be a defense to a false advertising claim.

But none of the foregoing cases presents a factual scenario that is analogous to the present case. As this Court already found, reasonable consumers cannot plausibly be deceived by an ambiguous statement subject to multiple interpretations, especially when that ambiguity is resolved in light of the totality of the circumstances available to the consumer, *i.e.* the explanation found on the ingredient panel (the most obvious place for a consumer to turn when confused by an ambiguous statement on the label). That is the case before this Court, where the "context of the packaging as a whole" must be considered in evaluating whether deception has occurred, *Williams*, 552 F.3d at 393 n.3, and where the packaging as a whole establishes that there was no deception.

**D. The Claims For Breaches Of Express And Implied Warranties And Unjust Enrichment Should Be Dismissed**

As Defendants explained in their Motion to Dismiss, Plaintiffs' warranty and unjust enrichment claims rise and fall with the Court's interpretation of "100% Grated Parmesan Cheese," and its ambiguity as a matter of law. *See* Motion at p. 14. Nothing in Plaintiffs' Opposition changes either Defendants' position or the fact that Plaintiffs received exactly what Defendants promised them on the labels. *See also* Opinion at pp. 22–24.

**E. Adoption And Incorporation By Reference Of Arguments From Co-Defendants' Briefs**

To avoid repetition, ICCO and Target hereby adopt and incorporate herein by reference all of the arguments in the briefs submitted by co-Defendants Wal-Mart Stores, Inc., Albertsons Companies, Inc., *et al.*, and The Kraft Heinz Company.

## II. CONCLUSION

Defendants have previously contended that the AC, when all the elements this Court should not and cannot consider are stripped away, adds nothing more than the same allegations this Court already found deficient. Plaintiffs have done nothing to counter this contention and, indeed, have failed to respond to the bulk of the arguments made in Defendants' Motion to Dismiss. This Court should dismiss the AC with prejudice.

Dated: February 9, 2018                                  Respectfully submitted,

                                                                                      /s/ Joshua A. Glikin
Joshua A. Glikin
Bowie & Jensen, LLC
210 West Pennsylvania Avenue, Suite 400
Towson, Maryland 21204
Telephone: (410) 583-2400
Facsimile: (410) 583-2437
glikin@bowie-jensen.com

*Attorneys for Defendants Target Corporation and ICCO Cheese Company, Inc.*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a copy of the foregoing document was filed on February 9, 2018, with the Clerk of the Court by using the CM/ECF system, which will send a notice of the filing to all counsel of record.

                                                   /s/ Joshua A. Glikin
                                                 Joshua A. Glikin