# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | |
| | Hon. Rebecca R. Pallmeyer |
| v. | Hon. Sheila M. Finnegan |
| Amazon Web Services, Inc., | |
| Defendant. | Jury Trial Demanded |

**DECLARATION OF JAIME F. CARDENAS-NAVIA
IN SUPPORT OF PLAINTIFF KOVE IO, INC.'S
MOTION TO COMPEL AMAZON WEB SERVICES, INC. TO
TIMELY PROVIDE A WITNESS PURSUANT TO RULE 30(b)(6)**

I, Jaime F. Cardenas-Navia, declare as follows:

1.      I am an attorney at Reichman Jorgensen LLP, counsel for Plaintiff Kove IO, Inc. ("Kove") in the above-referenced action.  I am admitted in the State of New York, and I have been admitted to appear in this case *pro hac vice.*  I make this declaration of my own personal knowledge, and if compelled to testify, I could and would competently testify thereto.  I submit this declaration in support of Kove's Motion to Compel Amazon Web Services, Inc. to Timely Provide a Witness Pursuant to Rule 30(b)(6) ("Motion").

2.      Kove filed its Complaint in this case on December 12, 2018 (Dkt. 1) and served its initial set of discovery requests — including interrogatories and requests for production ("RFPs") — on June 10, 2019.  At various points over the course of discovery, Kove served additional RFPs and interrogatories on Defendant Amazon Web Services, Inc. ("AWS").  Through its RFPs and interrogatories, Kove sought information and documents pertaining to a variety of issues relevant to this litigation, including AWS'S corporate structure; the design, development, operation, and testing of the accused products; market studies; consumer surveys; AWS's financial information (e.g., sales, revenue, costs, profit-and-loss, and product pricing); telemetry and metrics relating to the operation and performance of the accused products; the technical and commercial benefits of the accused products; licensing; and the benefits to AWS and its customers that stem from the accused products.

3.      Since discovery began, AWS has produced less than 6,000 documents.  Of the documents AWS has produced, roughly 2,300 were collected using ESI search terms.  In that same period of time, Kove has produced over 12,462 documents.  A table showing the timing and volume of the parties' productions is attached to this declaration as Exhibit GG.

4.      In response to many of Kove's requests, AWS agreed to search for and produce

"relevant and non-privileged documents" without providing any specific limits as to what the production scope would be. As discovery progressed, AWS agreed to produce additional categories of documents, as explained throughout this declaration.

5. Despite serving its initial set of RFPs in June of 2019, AWS failed to produce any documents for several months. On October 24, 2019, I wrote to AWS to inquire as to the status of its production. My 10/24/19 letter is attached to this declaration as Exhibit A.

6. It took AWS over 6 weeks to respond to my letter. In its response, dated December 9, 2019, AWS stated that it was "continuing to investigate" to determine what documents AWS had in response to Kove's requests for technical documents, design documents, documents showing when particular versions of the accused products were used, and financial information. AWS's 12/9/19 letter is attached to this declaration as Exhibit B.

7. Several months passed, and Kove still had not received the documents AWS had promised. Thus, on February 28, 2020, I wrote to AWS to inquire as to the status of AWS's investigation and production. I specifically inquired as to the status of AWS's production with respect to financial documents ("quantities sold, gross revenue, net revenue, costs, profits and other realized financial benefits for the Accused products, on a monthly basis"), and usage metrics, analytics, and reports. My 2/28/20 letter is attached to this declaration as Exhibit C.

8. AWS responded to my letter on March 16, 2020. AWS asserted that it "ha[d] collected and [would] produce" the information Kove had requested. At the same time, AWS asserted that Kove's requests for product telemetry, metrics, and usage data were "vague and ambiguous to the point of being impossible to investigate," and asked Kove to identify "*specific* types of information" it sought. AWS's 3/16/20 letter is attached to this declaration as Exhibit D.

9. On May 20, 2020, I sent an e-mail to AWS containing a specific exemplary list of

the "types of information" that was missing from AWS's productions. Kove's 5/20/20 e-mail is attached to this declaration as Exhibit E.

10.    Counsel for Kove and AWS met and conferred on May 21, 2020. During that meeting, counsel for AWS agreed to meet with AWS employees to identify documents responsive to Kove's requests. The parties' counsel met and conferred again on May 29, 2020 to discuss the results of that investigation. In that follow up meeting, AWS's counsel stated that its investigations were not complete, and that they would "expeditiously report back ... on the results of the search." AWS's counsel agreed to report back with respect to damages and financial documents, historical pricing lists, and product telemetry/metrics "within the next couple of weeks." They also asked Kove to "provide more information on the type of documents" that Kove sought. Kove's summary of the 5/21/20 meet and confer (dated 5/28/20) is attached to this declaration as Exhibit F. Kove's and AWS's summary of the 5/29/20 meet and confer (dated 6/2/20 and 6/4/20, respectively) are attached as Exhibits G and H.

11.    Kove did not hear back from AWS "within a couple of weeks." Thus, on June 17, 2020, Kove's counsel e-mailed AWS's counsel asking for an update on the status of their investigation and collection efforts. AWS responded on June 23, 2020, and, once again, asserted that AWS was "in the process of searching for and collecting documents" responsive to Kove's requests. Kove's 6/17/20 e-mail is attached to this declaration as Exhibit I. AWS's 6/23/20 letter is attached to this declaration as Exhibit J.

12.    On July 8, 2020, Kove sent another follow up letter to AWS to inquire as to the status of AWS's investigation and document production. Kove noted that AWS had not provided the updates it had promised during the May 29, 2020 meet and confer. AWS responded to that letter on July 16, 2020, and asserted that it had produced documents Kove had requested. Kove's

7/8/20 letter is attached to this declaration as Exhibit K.  AWS's 7/16/20 letter is attached to this declaration as Exhibit L.

13.     On August 14, 2020, counsel for Kove and AWS met and conferred to discuss the status of AWS's production.  During that call, AWS claimed to have already produced the telemetry and metrics data that Kove had requested.  At Kove's request, AWS agreed that, by August 24, 2020, AWS would identify the bates numbers of documents containing that telemetry and metrics data.  AWS also agreed to confirm, no later than August 28, 2020, whether it could locate documents describing the benefits of the relevant features of the accused products.  AWS also agreed that, by August 28, 2020, it would produce product-specific revenue data that Kove had requested.  Kove's letter summarizing the 8/14/20 meet and confer (dated 8/18/20) is attached to this declaration as Exhibit M.  AWS's letter summarizing the 8/14/20 meet and confer (dated 8/19/20) is attached to this declaration as Exhibit N.

14.     AWS did not meet any of the deadlines it agreed to in the August 14, 2020 meet and confer.  On September 17, 2020, Kove, having not heard back from AWS, wrote an e-mail setting forth several of the deficiencies in AWS's production that AWS had already agreed to resolve.  Kove's 9/17/20 e-mail is attached to this declaration as Exhibit O.

15.     AWS responded to Kove's September 17, 2020 e-mail on September 28, 2020.  In its response, AWS's counsel stated that AWS's productions were not deficient and that AWS had already produced responsive financial documents.  Nevertheless, AWS's counsel stated that they were "still following up with [their] client" to determine whether additional documents existed.  AWS also asked Kove to identify responsive documents missing from its production.  AWS's 9/28/20 letter is attached to this declaration as Exhibit P.

16.     Kove responded to AWS's September 28, 2020 letter on October 1, 2020.  In its

response, Kove once again identified broad and numerous categories of documents that were missing from AWS's production, including many categories of documents that AWS had previously agreed to produce but had not followed through. Kove requested a meet and confer to discuss the missing documents. Kove's 10/1/20 e-mail is attached to this declaration as Exhibit Q.

17.     Counsel for Kove and AWS met and conferred on October 8, 2020 to discuss the deficiencies in AWS's production. During the meet and confer, Kove once again identified specific categories of documents that were missing from AWS's production. Altogether, Kove identified nearly a dozen categories about which AWS had produced few, if any responsive documents. AWS agreed to investigate whether any documents containing the missing information were available and agreed to apprise Kove as to the results of its investigation. Kove's letter summarizing the meet and confer (dated October 15, 2020) is attached to this declaration as Exhibit R.

18.     Having not heard back from AWS, Kove sent an e-mail to AWS on December 11, 2020 inquiring as to the status of Kove's production. AWS responded to Kove's e-mail on December 18, 2021, and stated that AWS was "in the process of collecting and reviewing and anticipates production beginning in the new year" additional documents. Kove's 12/11/20 e-mail is attached to this declaration as Exhibit S. AWS's 12/18/21 e-mail is attached to this declaration as Exhibit T.

19.     On January 5, 2021, I sent AWS a letter that once again set forth the categories of documents for which AWS had failed to provide a sufficient production. My 1/5/21 letter is attached to this declaration as Exhibit V.

20.     Kove and AWS met and conferred on February 2, 2021 to discuss the status of AWS's document production. During the meet and confer, Kove once again identified the

categories for which AWS's production was deficient. In response, AWS stated that it was still in the process of identifying responsive and relevant documents and custodians and, other than stating that it had identified a few database sources for its review, AWS was unable to engage in specific discussions with respect to either topic. AWS also asserted that it did not understand what type of telemetry or product usage information Kove sought, and that AWS would investigate and provide Kove with more information regarding the metrics AWS maintains, so that Kove could identify the metrics it wants AWS to produce. Kove's letter summarizing the February 2, 2021 meet and confer (dated 2/8/21) is attached to this declaration as Exhibit W.

21.     On December 17, 2020, Kove served a 30(b)(6) deposition notice on AWS. The noticed topics seek information regarding "the existence, volume, location, custodians, retention and collection and production efforts" relating to each of several categories of documents missing from AWS's productions. Kove served an additional notice on January 28, 2021 that sought the same kind of information in connection with AWS's technical documents. AWS provided its responses and objections to Kove's 12/17/20 deposition notice on January 15, 2021. AWS agreed to designate a corporate designee in connection with each of the noticed topics. Kove's deposition notices are attached to this declaration as Exhibits X and Y. AWS's objections and responses to the 12/17/20 notice is attached to this declaration as Exhibit Z.

22.     After serving its December 17, 2020 deposition notice, Kove attempted to schedule a meet and confer with AWS to schedule a date for the deposition. Kove requested a date for the meet and confer on at least four occasions: January 5, 2021; January 15, 2021; January 22, 2021; and January 28, 2021. AWS resisted these efforts, as demonstrated through their correspondence on January 6, 2021; January 19, 2021; and January 26, 2021. Correspondence regarding Kove's efforts to schedule the meet and confer are attached to this declaration as Exhibit V and Exhibits

AA-FF.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed in Boulder, Colorado, on the 10th day of February, 2021.

/s/ *Jaime F. Cardenas-Navia*

Jaime F. Cardenas-Navia (*pro hac vice*)
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
750 Third Avenue, Suite 2400
New York, NY 10017

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Kove IO, Inc.,

               Plaintiff,

    v.

Amazon Web Services, Inc.,

               Defendant.

Civil Action No. 1:18-cv-08175

Hon. Rebecca R. Pallmeyer.
Hon. Sheila M. Finnegan

Jury Trial Demanded

**PLAINTIFF KOVE IO INC.'S TABLE OF CONTENTS IN SUPPORT OF KOVE'S MOTION TO COMPEL AMAZON WEB SERVICES, INC. TO TIMELY <u>PROVIDE A WITNESS PURSUANT TO RULE 30(b)(6).</u>**

# KOVE'S TABLE OF CONTENTS OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| A | October 24, 2019 Kove Letter from J. Cardenas-Navia to M. Babbit re Discovery Requests |
| B | December 9, 2019 AWS Letter from M. Babbitt to J. Cardenas re Discovery |
| C | February 28, 2020 Kove Letter from J. Cardenas-Navia to Babbitt re AWS Discovery Deficiencies |
| D | March 16, 2020 AWS Letter from M. Babbitt to J. Cardenas-Navia re Resp to February 28 Letter re AWS Production |
| E | May 20, 2020 Kove Email from J. Cardenas-Navia to AWS RE_Kove, IO, Inc. v. AWS, Inc. |
| F | May 28, 2020 Kove Letter from M. from Marvin to T. Mascherin re Search Terms |
| G | June 2, 2020 Kove Letter from M. Marvin to T. Barron re May 29 Meet and Confer |
| H | June 4, 2020 AWS Letter from T. Barron to M. Marvin re June 2 meet and confer |
| I | June 17, 2020 Kove Email from M. Marvin to AWS re Kove IO, Inc. v. AWS, Inc. (NDIL 18-cv-8175) |
| J | June 23, 2020 AWS Letter from T. Barron to M. Marvin re ESI |
| K | July 8, 2020 Kove Letter from M. Marvin to T. Barron re Kove IO Inc. v. Amazon Web Services |
| L | July 16, 2020 AWS Letter from M. Werner to M. Marvin re ESI |
| M | August 18, 2020 Kove Letter from M. Marvin to M. Barron re August 14 Meet and Confer |
| N | August 19, 2020 AWS Letter from M. Barron to M. Marvin re August 18 Meet and Confer |
| O | September 17, 2020 Kove Email from M. Marvin to AWS re Kove IO, Inc. v. AWS, Inc. (NDIL 18-cv-8175) |

| P | September 28, 2020 AWS Email from T. Barron to Kove RE_ Kove IO, Inc. v. AWS, Inc. (NDIL 18-cv-8175) |
|---|---|
| Q | October 1, 2020 Kove Email from M. Marvin to AWS RE_ Kove IO, Inc. v. AWS, Inc. (NDIL 18-cv-8175) |
| R | October 15, 2020 Kove Letter from M. Marvin to T. Barron re October 8 Meet and Confer |
| S | December 11, 2020 Kove Email from M. Marvin to AWS re Kove IO, Inc. v. AWS, Inc. (ND Ill. 18-cv-8175) |
| T | December 18, 2020 AWS Email from E.Bernard to Kove Re_ Kove IO, Inc. v. AWS, Inc. (ND Ill. 18-cv-8175) |
| V | January 5, 2021 Kove Letter from J. Cardenas-Navia to E. Bernard re Discovery Requests |
| W | February 8, 2021 Kove Letter from J. Cardenas-Navia to E. Bernard re AWS Discovery Responses |
| X | December 17, 2020 Kove Third Supplemental 30(b)(6) Deposition Notice to AWS |
| Y | January 28, 2021 Kove Fourth Supplemental 30(b)(6) Deposition Notice to AWS |
| Z | January 15, 2021 AWS Responses and Objections to Kove Third Supplemental 30(b)(6) Deposition Notice [63-70] |
| AA | January 6, 2021 AWS Email from E, Bernars to Kove RE: Kove IO, Inc. v. AWS, Inc. (ND Ill. 18-cv-8175) |
| BB | January 15, 2021 Kove Email from J. Cardenas-Navia to AWS RE: Kove IO, Inc. v. AWS, Inc. (ND Ill. 18-cv-8175) |
| CC | January 19, 2021 AWS Email from E. Bernard to Kove RE: Kove IO, Inc. v. AWS, Inc. (ND Ill. 18-cv-8175) |
| DD | January 22, 2021 Kove Email from J. Cardenas-Navia to AWS RE: Kove IO, Inc. v. AWS, Inc. (ND Ill. 18-cv-8175) |
| EE | January 26, 2021 AWS Email from E. Bernard to Kove RE: Kove IO, Inc. v. AWS, Inc. (ND Ill. 18-cv-8175) |
| FF | January 28, 2021 Kove Email from J. Cardenas-Navia to AWS RE: Kove IO, Inc. v. AWS, Inc. (ND Ill. 18-cv-8175) |

| GG | Party Production Information |
|----|------------------------------|

# Exhibit A



Jaime Cardenas-Navia
Direct Dial: (646) 921-1474
jcardenas-navia@reichmanjorgensen.com

100 Park Avenue
Suite 1600
New York, NY 10017

October 24, 2019

**By E-Mail**

Michael G. Babbitt
Jenner & Block LLP
353 North Clark St.
Chicago, IL 60654
mbabbitt@jenner.com

   RE:  *Kove IO, Inc. v. Amazon Web Services, Inc.*, Case No. 18-cv-8175 (N.D. Ill.)

Michael**,**

   Following up on our calls from October 16th and earlier today, I write regarding Amazon's responses to Kove's First Set of Requests for Production and First Set of Interrogatories, served on June 10, 2019. There are a number of deficiencies in Amazon's responses that must be addressed.[1]

### 1) **Amazon's Document Production**

   Amazon has agreed to produce documents in response to many of Kove's Requests but has yet to do so (*e.g.*, Request Nos. 2-13, 16, 19-22, 25-32, 34, 36-39, 41, 45, 50, 53-58, 77-86, 88-92, 96-97, 99-101, 105-106, 108, 113-119). Please confirm that Amazon will promptly produce these documents.

   Additionally, for many of Kove's Requests, Amazon has improperly refused to produce documents or unjustifiably narrowed the scope of documents that it says it will produce. Exemplary documents and information that Kove seeks but that Amazon is refusing to produce are identified below:

- <u>Request No. 1:</u> Kove seeks a corporate structure chart and a corporate hierarchy chart, which are relevant at least to identifying key entities and witnesses.
- <u>Request Nos. 2(b), 3, 107:</u> Kove seeks documents that identify the geographic location of the Accused Products, *e.g.*, the location of the servers that provide the Amazon S3 and DynamoDB services. This information is relevant at least to Kove's claims of direct and indirect infringement.
- <u>Request Nos. 14-15, 111:</u> Kove seeks the source code and technical documents (*e.g.*, architectural diagrams, white papers, design documents, technical specifications, internal wikis, pseudo-code, directory structure, libraries, etc.) that describe the aspects of the Accused Products that are relevant to Kove's infringement claims. Kove has already raised multiple deficiencies with Amazon's source code and document

---

[1] Kove reserves all rights to identify additional deficiencies in Amazon's discovery responses.

production (*see* 2019-10-18 email from J. Cardenas-Navia) and will be raising additional deficiencies in a separate letter.

- <u>Request Nos. 28-30, 82-84, 89, 92-93:</u> Kove seeks financial data relevant to its damages claims, including quantities sold, gross revenue, net revenue, costs, profits, and other realized financial benefits for the Accused Products, on a monthly basis. Kove also seeks business reports, such as profit and loss statements, demand forecasts, and market analyses. Finally, Kove seeks documents that describe the accounting practices and methodologies by which Amazon collects, tracks, and compiles this financial information.
- <u>Request Nos. 32, 88, 99-100, 108:</u> Kove seeks documents that relate to the use of the Accused Products, including customer use studies, tracking data, usage statistics, usage analytics, usage metrics, usage reports, estimates of use, and business plans. This information is relevant to Kove's infringement claims as well as damages.
- <u>Request Nos. 51-52:</u> Kove seeks all non-privileged documents that describe or analyze the issues of infringement, validity, or enforceability of Kove's asserted patents.
- <u>Request Nos. 61-63:</u> Kove seeks all non-privileged documents that relate to Amazon's efforts to design around Kove's asserted patents, and more generally to any designs that Amazon contends are non-infringing alternatives. These documents are relevant to damages and willfulness.
- <u>Request No. 67:</u> Kove seeks all non-privileged documents that describe or analyze the impact this lawsuit may have on Amazon, including with respect to damages, injunctive relief, or product changes. This information is relevant to damages and willfulness.
- <u>Request Nos. 68:</u> Kove seeks all non-privileged documents that describe or analyze the value or benefits of the inventions of Kove's asserted patents. This information is relevant to damages.
- <u>Request No. 71:</u> Kove seeks all documents that relate to Amazon's defenses (affirmative, equitable, or otherwise). That Amazon has not formally filed an Answer in this case is not a valid basis to withhold this relevant information.
- <u>Request Nos. 100, 102, 104:</u> Kove seeks documents that describe the importance, significance, and benefits of the Accused Products, including internal and third-party reports, presentations, analyses, studies, and other documents. These documents are relevant to damages.
- <u>Request No. 118:</u> Kove seeks all agreements stemming from allegations that the Accused Products are covered by patents, or agreements that involve patents that Amazon alleges cover the Accused Products. These documents are relevant to damages.

Please confirm that Amazon will produce the above documents that are responsive to these Requests promptly.

### 2) **Amazon's Interrogatory Responses**

Amazon has also not adequately responded to Kove's Interrogatories. Exemplary information that Amazon must provide is identified below:

<u>Interrogatory No. 2:</u> Kove seeks the factual and legal bases for Amazon's defenses. That Amazon has not formally filed an Answer in this case is not a valid basis to withhold this relevant

information, as Amazon knows the defenses it may assert and must provide relevant discovery pertaining to those defenses.

  <u>Interrogatory No. 5:</u> Kove seeks an identification of all versions of the Accused Products. For example, for Amazon S3 and DynamoDB, Amazon must indicate if there are multiple versions, and if so, how those versions are identified. Amazon must also identify the first and last dates of sale for each version of each Accused Product.

  <u>Interrogatory No. 6:</u> Kove seeks, on a monthly basis, the number of Accused Products sold, leased, licensed, or distributed by Amazon, as well as revenues, costs, profits, margins, and any other financial benefit. Further, Kove seeks an explanation of how Amazon distinguishes between U.S. and non-U.S. sales.

  Please confirm that Amazon will supplement its response to these Interrogatories promptly.

*************************************

  Amazon's failure to provide documents that it stated it would be provide three months ago, combined with its improper objections to Kove's discovery requests, are highly prejudicial to Kove, and must be immediately addressed. If Amazon does not agree to provide the requested discovery as requested herein, then please provide your availability to meet and confer this coming Monday or Tuesday.

Best regards,

Jaime Cardenas-Navia

# Exhibit B

## FILED UNDER SEAL

# Exhibit C

FILED UNDER SEAL

# Exhibit D

FILED UNDER SEAL

# Exhibit E

Tim,

For tomorrow's call, as we have already stated, we would like to discuss the issues raised in my February 28th letter, including Amazon's lack of production of technical materials and the need for an additional 30(b)(6) deposition (outlined in more detail in my February 19th letter). This is analogous to how we discussed Amazon's March 11th and 12th letters last week.

Further, to help focus the discussion with respect to the damages-related matters, below is some of the information that Kove is seeking:

- Historic pricing lists/terms/sheets for DynamoDB and S3 pricing and service tiers over the damages period, including pricing information for any customers that pay something different from the list price.
- Monthly U.S. volume/revenue/cost/profit/total customer data for S3 broken down by how each S3 service level is priced (e.g., based on storage, requests, data retrievals, data transfer, management, and replication) (https://aws.amazon.com/s3/pricing/) over the damages period. By way of example, the volume data for storage would under the current S3 pricing model include the number of Gigabytes used by customers at each of the pricing levels.
- Monthly U.S. volume/revenue/cost/profit/total customer data for DynamoDB broken down by how each DynamoDB service is priced (e.g., based on read requests, write requests, data storage, backup, data transfer) (https://aws.amazon.com/dynamodb/pricing/provisioned/ and https://aws.amazon.com/dynamodb/pricing/on-demand/) over the damage period.
- U.S. Revenue for S3 and Dynamo over the entire damages period, i.e., preceding 2014
- AWS unit-level P&Ls and financial statements
- Revenue recognition and cost allocation policies relevant to the S3 and DynmnoDB P&Ls
- Telemetry, usage data, and metrics regarding speed, scalability, and availability, including any customer testing (such as A/B testing) or surveys, of Amazon S3 and DynamoDB.

We would also like to discuss ESI discovery on tomorrow's call. We have been working to identify a list of proposed custodians and search terms that AWS use to search its own email, but because of AWS's deficient initial disclosures and delays in responses to interrogatories served on AWS caused by the COVID-19 pandemic, we are unable to identify with specificity AWS custodians. Accordingly, we would like to discuss which custodians would be knowledgeable about the following topics:

- Marketing, advertising, and customer support related to speed, scalability, and availability for Amazon S3 and DynamoDB.
- Telemetry, usage data, and metrics regarding speed, scalability, and availability, including any customer testing (such as A/B testing), of Amazon S3 and DynamoDB.
- Surveys, studies, analyses or purchase journey mapping relating to pricing, sales, and customer procurement and retention for Amazon S3 and DynamoDB, including any studies commissioned by AWS.

Best regards,
Jaime

**Jaime F. Cardenas-Navia**
**REICHMAN JORGENSEN LLP**
750 Third Avenue, Suite 2400
New York, NY 10017

(646) 921-1474

---

**From:** Barron, Timothy J. <TBarron@jenner.com>
**Sent:** Friday, May 15, 2020 3:52 AM
**To:** Jaime F. Cardenas-Navia <jcardenas-navia@reichmanjorgensen.com>; Mascherin, Terri L. <TMascherin@jenner.com>; Unikowsky, Adam G. <AUnikowsky@jenner.com>; Werner, Michael T. <MWerner@jenner.com>; Garcia, Daniel O. <DGarcia@jenner.com>
**Cc:** Mariotti, Renato <rmariotti@thompsoncoburn.com>; Parks, Michael A. <MParks@thompsoncoburn.com>; RJ_Kove_AWS <RJ_Kove_AWS@reichmanjorgensen.com>
**Subject:** RE: Kove, IO, Inc. v. AWS, Inc.

[EXTERNAL]
Jaime,

We are working on supplementing our initial disclosures and will provide you a date by which we will do so when we have a better sense of what we expect to supplement.

As for our availability to discuss "discovery issues" next week, we're not available on Wednesday, but are available Thursday afternoon from 1 to 2 pm CDT, 2:30 to 3:00 pm CDT, or 4 to 5 pm CDT. Please let us know the specific matters you want to discuss several days before the call.

Best regards,

Tim

---

**From:** Jaime F. Cardenas-Navia <jcardenas-navia@reichmanjorgensen.com>
**Sent:** Thursday, May 14, 2020 5:48 PM
**To:** Mascherin, Terri L. <TMascherin@jenner.com>; Unikowsky, Adam G. <AUnikowsky@jenner.com>; Barron, Timothy J. <TBarron@jenner.com>; Werner, Michael T. <MWerner@jenner.com>; Garcia, Daniel O. <DGarcia@jenner.com>
**Cc:** Mariotti, Renato <rmariotti@thompsoncoburn.com>; Parks, Michael A. <MParks@thompsoncoburn.com>; RJ_Kove_AWS <RJ_Kove_AWS@reichmanjorgensen.com>
**Subject:** RE: Kove, IO, Inc. v. AWS, Inc.

External Email – Exercise Caution
Thanks, Terri. In order for us to be able to continue meaningful discovery (including designations of custodians for ESI), it's imperative that we receive the information below very soon – by when do you expect to supplement?

Also, please provide your availability to discuss discovery issues next Wednesday or Thursday afternoon.

Best regards,
Jaime

**Jaime F. Cardenas-Navia**
**REICHMAN JORGENSEN LLP**
750 Third Avenue, Suite 2400
New York, NY 10017
(646) 921-1474

---

**From:** Mascherin, Terri L. <TMascherin@jenner.com>
**Sent:** Thursday, May 14, 2020 10:06 AM
**To:** Jaime F. Cardenas-Navia <jcardenas-navia@reichmanjorgensen.com>; Unikowsky, Adam G. <AUnikowsky@jenner.com>; Barron, Timothy J. <TBarron@jenner.com>; Werner, Michael T. <MWerner@jenner.com>; Garcia, Daniel O. <DGarcia@jenner.com>
**Cc:** Mariotti, Renato <rmariotti@thompsoncoburn.com>; Parks, Michael A. <MParks@thompsoncoburn.com>; RJ_Kove_AWS <RJ_Kove_AWS@reichmanjorgensen.com>
**Subject:** RE: Kove, IO, Inc. v. AWS, Inc.

[EXTERNAL]
Jaime:

We are aware of our obligations and will update our disclosures in due course.

Regards,
Terri

---

**From:** Jaime F. Cardenas-Navia <jcardenas-navia@reichmanjorgensen.com>
**Sent:** Thursday, May 14, 2020 12:04 PM
**To:** Unikowsky, Adam G. <AUnikowsky@jenner.com>; Mascherin, Terri L. <TMascherin@jenner.com>; Barron, Timothy J. <TBarron@jenner.com>; Werner, Michael T. <MWerner@jenner.com>; Garcia, Daniel O. <DGarcia@jenner.com>
**Cc:** Mariotti, Renato <rmariotti@thompsoncoburn.com>; Parks, Michael A. <MParks@thompsoncoburn.com>; RJ_Kove_AWS <RJ_Kove_AWS@reichmanjorgensen.com>
**Subject:** Kove, IO, Inc. v. AWS, Inc.

External Email – Exercise Caution
Counsel,

Amazon has not updated its Initial Disclosures since they were first served on April 19, 2019.  They are facially deficient, as they identify just four Amazon employees, and fail to reflect the current scope of the case.  Amazon must supplement its Initial Disclosure to include, at minimum, the following:

1. Persons knowledgeable about the design and operation of Amazon S3, DynamoDB, and their Relevant Features from 2012 through the present (Messrs. Sorenson and Markle admitted at their depositions that they lacked such knowledge for earlier time periods, and Mr. Sears appears to also lack such knowledge)

2. Persons knowledgeable about the financials for Amazon S3, DynamoDB, and their Relevant Features (including sales, pricing, revenues, costs, profits, margins, etc.) from 2012 through the present (Amazon identifies just Mr. Park as knowledgeable about DynamoDB's financials and no one as knowledgeable about Amazon S3's financials)
3. Persons knowledgeable about marketing, advertising, and support for Amazon S3, DynamoDB, and their Relevant Features from 2012 through the present (no one is identified)
4. Persons knowledgeable about telemetry, usage, metrics, surveys, studies and analyses related to the use, importance and value of Amazon S3, DynamoDB, and their Relevant Features from 2012 through the present (no one is identified)
5. Persons knowledgeable about Amazon's patent licensing practices related to Amazon S3, DynamoDB, and the technologies of the patents-in-suit (no one is identified)
6. Any other persons Amazon may rely on in support of its defenses or claims.

Please confirm by this Friday that Amazon will serve updated Initial Disclosures by no later than May 22, 2020.

Separately, we would like to discuss the issues raised in our meet and confer letter dated February 28, 2020, and AWS's response thereto. Please let us know your availability next Wednesday or Thursday afternoon (central time).

Best regards,
Jaime

**Jaime F. Cardenas-Navia**
**REICHMAN JORGENSEN LLP**
750 Third Avenue, Suite 2400
New York, NY 10017
(646) 921-1474

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.
NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

**Timothy J. Barron**

**Jenner & Block LLP**
353 N. Clark Street, Chicago, IL 60654-3456  |  jenner.com
+1 312 923 8309 | TEL
+1 312 593 0461 | MOBILE
+1 312 923 8409 | FAX
TBarron@jenner.com
Download V-Card  |  View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

# Exhibit F

## FILED UNDER SEAL

# Exhibit G

Michael Marvin
Direct Dial: (646) 970-2652
mmarvin@reichmanjorgensen.com

June 2, 2020

750 Third Avenue
Suite 2402
New York, NY 10017

**By E-Mail**

Tim Barron
Jenner & Block LLP
353 North Clark St.
Chicago, IL 60654
tbarron@jenner.com

RE: *Kove IO, Inc. v. Amazon Web Services, Inc.*, Case No. 18-cv-8175 (N.D. Ill.)

Counsel,

I write following the parties' meet and confer on May 29 to memorialize the discussions between the parties and agreements on various outstanding discovery issues. Below, by category of discovery issue, is our understanding of what AWS has agreed to provide. Please confirm by June 4 that you agree with our understanding.

**Technical Discovery**

- With respect to the discussion regarding design and operation documents and 30(b)(6) topics, the parties are at an impasse.
- With respect to Interrogatory No. 4, which is deficient because it fails to identify AWS's own view of material differences between implementations of the Accused Products over time, you indicated that the parties should revisit the issue following service of AWS's non-infringement contentions, as AWS is not likely to make non-infringement arguments that depend on the specific implementation of the Accused Products at different points in time. The parties agreed to discuss AWS's response to Interrogatory No. 4 the week of June 17th.
- With respect to Interrogatory No. 7, you confirmed that AWS will supplement its response to provide a narrative response by June 24.
- You confirmed that videos collected from AWS, such as AMZ_KOVE_000064820-64823, are improperly cut off. You confirmed that you have asked your client to search for versions of videos of produced that are not cut off, and you agreed to produce such videos if they exist.

## Damages-Related Discovery

- AWS agreed that it would produce documents relating to monthly U.S. volume/revenue/cost/profit/total customer data for S3 and DynamoDB broken down by how each S3/DynamoDB service is priced, to the extent such documents are in AWS's possession. AWS expects to produce these items within the next couple of weeks.
- AWS agreed that it would produce documents relating to historical pricing lists, terms, and sheets for DynamoDB and S3 pricing and service tiers over the entire damages period, as well as pricing information for any customers that pay something different from the list price. AWS expects to produce these items within the next couple of weeks.
- AWS agreed that it would also supplement its response to Interrogatory No. 6, as appropriate, to provide information requested in my letter of May 28 within the next couple of weeks.
- You stated with respect to our request for profit and loss statements for S3 and DynamoDB, from before 2014, that you are in the process of determining where such documents are located, and you confirmed that once you locate and collect such documents, you will produce them.
- You refused our request that AWS produce profit and loss statements covering AWS as a reporting segment. We explained that such documents are relevant to Kove's damages case, is specifically responsive to RFPs Nos. 82-85, 89, 9 and 101, and should not pose a burden to collect. We believe the parties are at an impasse on this issue.
- AWS agreed that it would look for and produce the telemetry, usage data, and metrics data and analyses regarding speed, scalability and availability of Amazon S3 and Dynamo, including any customer testing or customer or other surveys, within its possession described in my May 28 letter. You stated you would report back within a couple of weeks about what you have found, including your collection and production status. You also explained that your forthcoming responses to Interrogatories No. 14 and 15 would identify such metrics.

## Miscellaneous Discovery

- The parties continue to disagree as to whether there is a need for AWS to delay in its substantive response to Interrogatory No. 3, which was served on June 10, 2019. As we have repeatedly explained, AWS has all the information it needs to identify any non-infringing alternatives, and we believe AWS is obligated to amend its response immediately.
- With respect to RFP No. 118, you confirmed that AWS is collecting responsive documents and that you will produce them once you receive them. Similarly, you confirmed that you will supplement your response to Interrogatory No. 11 to identify responsive documents once AWS collects such documents.
- You also confirmed that your client is currently searching for documents responsive to RFPs Nos. 20-22, 30, 32, and 101, regarding non-AWS entities use of Amazon S3 and DynamoDB, and that you will produce such documents once your client collects them.
- With respect to our request that AWS supplement its response to Interrogatory No. 9 to provide information regarding the ways in which S3 is used by DynamoDB, and vice versa, you confirmed that you have asked your client for additional information based on this interrogatory, and will supplement your response if you receive further information.

- You also confirmed that you expect to supplement your response to Interrogatory No. 2. You provided an estimate that you would supplement by June 12 and told us that you would let us know if you need additional time.

## ESI Search-Term Discovery

- You confirmed that you are in the process of working with your client to identify AWS custodians knowledgeable about the topics identified in Jaime Cardenas-Navia's emails of May 14 and 20, and would get us a proposal by two weeks from May 29. You also indicated that you would further review the ESI protocols and get back to us shortly regarding the ESI search terms

Regards,

Michael Marvin

CC (by email): Renato Mariotti (rmariotti@thompsoncoburn.com);
Michael Parks (mparks@thompsoncoburn.com)

# Exhibit H

## FILED UNDER SEAL

# Exhibit I

| From: | Michael W. Marvin |
| --- | --- |
| To: | Barron, Timothy J.; Mascherin, Terri L.; Werner, Michael T.; Unikowsky, Adam G.; Garcia, Daniel O. |
| Cc: | RJ_Kove_AWS; rmariotti@thompsoncoburn.com; mparks@thompsoncoburn.com |
| Subject: | Kove IO, Inc. v. AWS, Inc. (NDIL 18-cv-8175) |
| Date: | Wednesday, June 17, 2020 7:12:35 PM |

Tim,

I write to follow up on topics discussed during the meet and confers between the parties on May 21 and 29, as memorialized in my letters of May 28 and June 2.  We have yet to hear back from you regarding the search terms that Kove proposed on May 28, nor have we received from you the identification of custodians knowledgeable about the topics identified in Jaime Cardenas-Navia's emails of May 14 and 20 that you agreed to provide.

In addition, although it has now been more than two weeks since you agreed to search for and produce a variety of documents missing from AWS's production, as outlined in my letter of June 2 under the headers "Damages-Related Discovery" and "Miscellaneous Discovery", we have not received any communication or responsive production relevant to these topics.  As you stated in your letter of June 4, AWS agreed during the parties' meet and confer on May 29 to provide an update on certain items within two weeks; but that time has now passed, and we have not heard from you.

Please provide your availability early next week to discuss ESI discovery and the continuing deficiencies in AWS's production.

Regards,
Michael

MICHAEL W. MARVIN
REICHMAN JORGENSEN LLP
750 THird AvENuE
SuItE 2400
NEw YOrk, NY 10017
DIrECt: (646) 970-2652
mmArvIN@rEICHmANJOrGENSEN.COm

# Exhibit J

## FILED UNDER SEAL

# Exhibit K

## FILED UNDER SEAL

# Exhibit L

FILED UNDER SEAL

# Exhibit M

**REICHMAN JORGENSEN LLP**

Michael Marvin
Direct Dial: (646) 970-2652
mmarvin@reichmanjorgensen.com

750 Third Avenue
Suite 2402
New York, NY 10017

August 18, 2020

**By E-Mail**

Tim Barron
Jenner & Block LLP
353 North Clark St.
Chicago, IL 60654
tbarron@jenner.com

RE: *Kove IO, Inc. v. Amazon Web Services, Inc.*, Case No. 18-cv-8175 (N.D. Ill.)

Counsel,

I write to memorialize the various agreements between the parties during the most recent meet and confer on August 14, 2020.

**Discovery Requests**

During our call, you agreed that by August 28 AWS would:

- Produce documents showing the storage and usage revenue for DynamoDB, broken up by how DynamoDB is priced, from 2012 to today.
- Produce documents showing the pricing tiers for DynamoDB from 2012 to today.
- Produce documents showing the terms and differences between different tiers of Amazon S3 and DynamoDB since 2006 and 2012, respectively, to today.
- Supplement AWS's response to Kove's Interrogatory No. 11 to provide an identification of Transfer of Rights agreements that relate to Amazon S3 and DynamoDB. As we discussed on the call, and as Kove's Interrogatories state, "Transfer of Rights" means an assignment, license, sublicense, cross-license, release, covenant not to sue, grant of manufacturing rights, or grant of any other rights in a patent or patent application, domestic or foreign, whether alone or in combination with other consideration.

You also agreed to let us know whether AWS has documents showing monthly revenue by data center for Amazon S3 and DynamoDB going back to 2006 and 2012, respectively. As we explained during our call, AWS has produced documents showing monthly revenue for Amazon S3 and DynamoDB by data center going back to 2014 (*see* AMZ_KOVE_000065598 and AMZ_KOVE_000081695). Please confirm by August 28 that AWS will inform Kove whether spreadsheets showing these metrics from before 2014 exist.

Relatedly, we also discussed AWS's failure to produce documents showing storage and usage revenue for Amazon S3 from before 2013. As we explained during our call, AWS has produced documents showing storage and usage revenue for Amazon S3 beginning in 2013 (*see* AMZ_KOVE_000081682). Please confirm by August 28 that AWS will inform Kove whether documents showing storage and usage revenue for Amazon S3 from before 2013 exist.

AWS further agreed to provide the following updates by August 28:

- You will confirm whether or not your search has identified any documents describing the benefits accruing to AWS from S3 and DynamoDB, such as, as illustrative but non-exhaustive examples, cost reductions, additional sales, and enhanced brand image.
- You will provide a date certain by which AWS will supplement its response to Kove's Interrogatory No. 6 to: (1) provide an explanation of how AWS allocates revenue to the United States, including in particular for Amazon S3 and DynamoDB; and (2) provide an explanation of how Amazon recognizes revenue and allocates costs to specific products.

You also agreed to supplement AWS's response to Kove's Interrogatory No. 3 by September 4 to identify any acceptable, available, non-infringing alternatives or substitutes, to any of the inventions claimed in any of the asserted claims of the Patents-in-Suit that You are aware of or that You intend to rely upon for any purpose.

The parties also discussed organizational charts and corporate directories, and we explained that AWS has not produced documents identifying employees who are knowledgeable about: (1) marketing, advertising, and customer support related to speed, scalability, and availability for Amazon S3 and DynamoDB; (2) telemetry, usage data, and metrics regarding speed, scalability, and availability, including any customer testing (such as A/B testing), of Amazon S3 and DynamoDB; and (3) surveys, studies, or analyses or purchase journey mapping relating to pricing, sales, and customer procurement and retention for Amazon S3 and DynamoDB. You agreed to investigate whether such documents exist, and to let us know the results of your search. Please confirm that AWS will confirm whether such organizational charts and corporate directories exist by August 24.

In addition, the parties discussed missing telemetry and usage data and metrics tied to the speed, scalability, and availability of Amazon S3 and DynamoDB, which we have been asking for since at least May. On our call you agreed to provide us the Bates numbers for the documents that AWS contends it has produced that are responsive to this request. As you know, we have been asking for these documents for more than two months, so we ask that AWS identify such responsive documents by August 24.

## **ESI**

The parties also discussed ESI discovery. First, you agreed to provide Kove with a hit count report once the parties agree on AWS's custodians. With respect to AWS's custodians, in Jaime Cardenas-Navia's email of May 20, we asked AWS to identify as custodians persons knowledge about specific topics. During our call, we asked that you confirm that the custodians proposed by AWS in Michael Werner's letter of July 16 are indeed knowledgeable about those topics

noted in Mr. Cardenas-Navia's email of May 20 or otherwise promptly provide appropriate custodians. Please confirm that AWS will confirm or propose custodians by August 24, so that by August 28 AWS can provide Kove with hit count reports for its proposed search terms.

## **Scheduling**

Finally, the parties discussed the case schedule. We asked for the information addressed herein to be provided earlier and raised the fact that the timing of AWS's productions and supplements prejudices Kove's ability to complete discovery before the current cut-off. You replied that AWS will not seek to require Kove to complete fact discovery by the current fact-discovery cut-off date. Relatedly, you made a broader proposal relating to the discovery schedule for both parties, which we are considering; we will respond under separate cover in due course.

Regards,

Michael Marvin

CC (by email): Renato Mariotti (rmariotti@thompsoncoburn.com);
Michael Parks (mparks@thompsoncoburn.com)

# Exhibit N

**JENNER&BLOCK** LLP

August 19, 2020

Timothy J. Barron
Tel  +1 312 923 8309
Fax +1 312 923 8409
TBarron@jenner.com

**VIA EMAIL**

Michael W. Marvin, Esq.
Reichman Jorgensen LLP
750 Third Avenue
Suite 2400
New York, NY 10017
mmarvin@reichmanjorgensen.com

Re:     *Kove IO, Inc. v. Amazon Web Services*

Dear Michael:

This follows up on a few items we discussed on our call last Friday and responds to your
August 18, 2020 letter.

**Kove's Document Production**

During our call, either you or Mr. Cardenas-Navia stated:

- Kove has produced all non-privileged documents responsive to AWS's document
  requests.

- To the extent Kove has documents responsive to AWS's subpoenas to OverX and/or
  Econnectix, those documents have been produced.

- All documents responsive to the subpoenas to Mr. Overton and Mr. Bailey have been
  produced and no documents have been withheld on privilege grounds.

- Kove has searched for responsive documents that pre-date the filing of the application
  that led to the '640 patent and that was the parent application for the '170 and '978
  patents, but has found no documents.

- Kove is preparing to send an unspecified "small supplemental production."

- A production of documents from Arctide is "in the works."

- Kove has nothing to add to its privilege log.

- Kove will identify its ESI email custodians by August 28, 2020.

Please let me know if I have misunderstood these representations.

**Proposal For Discovery Schedule**

On Friday, we proposed that the parties agree that fact discovery not completed by Sept. 29, 2020 will simply resume during the post-*Markman* fact discovery period already built into the Court's current scheduling order.  We informed you that our proposal was a practical solution to the on-going disruption caused by the pandemic and the reality that no in-person depositions or preparation sessions are likely to be able to occur before the end of 2020, at the earliest.  We did not propose, as your letter appears to indicate, a unilateral extension of fact discovery that would only allow Kove, and not AWS, to pursue the discovery it believes is necessary.  You said you would consider our proposal and get back to us.  We would appreciate a prompt response so that we may raise this matter with the Court substantially in advance of the current September 29, 2020 deadline for the initial close of fact discovery.

**AWS's ESI Custodians**

In our call on Friday, you mentioned for the first time that Kove wanted additional ESI custodians beyond the five that we had identified a month earlier, on July 16, 2020.  The custodians we identified were persons knowledgeable on the technology and finances for S3 and DynamoDB – the first two topics for which Kove indicated it was seeking custodians.  On Friday, you asked AWS to identify additional custodians for three of the other four topics you proposed.  Specifically, you indicated that Kove now wanted AWS to identify ***for both Amazon S3 and DynamoDB*** persons knowledgeable about:

- "marketing, advertising and customer support related to speed, scalability, and availability";

- "telemetry, usage data, and metrics regarding speed, scalability, and availability, including any customer testing (such as A/B testing)"; and

- "surveys, studies, analyses or purchase journey mapping relating to pricing, sales, and customer procurement and retention," including "any studies commissioned by AWS."

By our count, the number of custodians for these additional topics, likely different people for each product, may be six (assuming we can identify custodians on these topics).  Together with the five persons we have already identified on Kove's first two topics, these additional ESI custodians would total eleven – six more than allowed under the Local Rules.  Accordingly, please tell us which five of the eleven total topics you select.  To the extent you wish to select any of these six additional topics to be among the five allowed by the Local Rules, we will need to identify appropriate custodians.  Once you have identified the five topics and we have identified the individuals for those topics, we will run your five search terms and provide a hit report.

**Discovery Requests**

We also discussed Kove's discovery requests and documents Kove believes it has not yet received.  As we explained at the outset of the call and as you know, Michael Werner has been the attorney from our firm most steeped in AWS's document collection and production efforts in

this case, and he is now on medical leave.  Consequently, we are following up on the collection of documents Mike initiated and will produce those documents expeditiously to the extent they exist.

Without responding point-by-point to your letter, which does not accurately set forth our agreements (and omits a few items), I summarize below the matters we discussed:

- You raised the issue of AWS's production of company-level profit-and-loss and cost information.  We wanted to let you know that we are reconsidering our position on this issue and are consulting with our client on it.  We will get back to you shortly on whether AWS will agree to produce this information.

- You asked for organizational charts for the AWS groups responsible for the three topics I set forth above relating to ESI.  You are undoubtedly aware that AWS is not organized along these specific lines, but we will inquire of our client and get back to you.

- We will produce license and other agreements related to S3 and DynamoDB by August 28, 2020, and will supplement AWS's response to Kove's Interrogatory No. 11, likely with a reference to those documents under Federal Rule of Civil Procedure 33(d).

- We will produce by August 28, 2020 documents showing storage and usage revenue for DynamoDB and discounts on pricing for DynamoDB from 2012 to today to the extent those documents exist.

- We will produce documents setting forth monthly revenue for DynamoDB going back to 2012, and will determine if that revenue can be broken down by data center.  We will also inquire if documents exist describing S3 revenue back to 2006 allocated by data center.

- We will inquire whether documents exist describing storage and usage revenue for Amazon S3 from before 2013.

- We will inquire whether documents exist describing benefits accruing to AWS from S3 or DynamoDB, such as cost reductions, additional sales and enhanced brand image.  I foresee some difficulty in identifying such documents given the vagueness of the request.

- We will supplement our response to Interrogatory No. 3 by September 4, 2020 regarding noninfringing alternatives (recognizing that this is mainly a topic for expert discovery).

- We will inform you of telemetry and usage data that has been produced to date.

- We will supplement AWS's response to Kove's Interrogatory No. 6 relating to allocation of costs.

- We will supplement AWS's response to Kove's Interrogatory No. 9 regarding how S3 and DynamoDB work together

Michael W. Marvin, Esq.
August 19, 2020
Page 4

We are, as always, happy to discuss these matters with you further.

Very truly yours,

Timothy J. Barron

TJB:rlu

# Exhibit O

| From: | Michael Marvin |
|---|---|
| To: | Barron, Timothy J.; "Mascherin, Terri L."; Werner, Michael T.; Unikowsky, Adam G. |
| Cc: | RJ_Kove_AWS; rmariotti@thompsoncoburn.com; "MParks@thompsoncoburn.com" |
| Subject: | Kove IO, Inc. v. AWS, Inc. (NDIL 18-cv-8175) |
| Date: | Thursday, September 17, 2020 12:53:52 PM |

Tim,

I write about numerous outstanding production deficiencies and delays.  These continued deficiencies and delays are hindering Kove's ability to identify follow-up discovery and to prepare for depositions.   In particular, the parties have discussed AWS's failure to produce telemetry and usage data and metrics tied to the speed, scalability, and availability of Amazon S3 and DynamoDB since May.  During the meet and confer between the parties on August 14 you stated that such telemetry and usage data had already been produced—a position we still believe is inaccurate—and you agreed to identify documents containing such information.  *See also* 08-19-2020 Letter from T. Barron to M. Marvin (memorializing agreement to identify documents).  However, over one month after agreeing to do so, AWS still has not identified documents that contain telemetry and usage data and metrics tied to the speed, scalability, and availability of Amazon S3 and DynamoDB. Moreover, AWS's production of only ~2,500 documents in a case of this scale speaks for itself.  We would expect that productions pertaining to the requested metrics would equal at least the volume of documents you have produced thus far this case.   Please confirm by next Tuesday that the metrics will be produced by no later than September 25.

I also write to follow up on the discussions between the parties regarding AWS's ESI custodians.  On May 20, Mr. Cardenas-Navia requested that AWS identify custodians knowledgeable about the following topics:  (1) marketing, advertising, and customer support related to speed, scalability, and availability for Amazon S3 and DynamoDB; (2) telemetry, usage data, and metrics regarding speed, scalability, and availability, including any customer testing (such as A/B testing), of Amazon S3 and DynamoDB; and (3) surveys, studies, analyses or purchase journey mapping relating to pricing, sales, and customer procurement and retention for Amazon S3 and DynamoDB, including any studies commissioned by AWS.  Nearly four months later, AWS has yet to identify a single custodian knowledgeable on these topics.  The delay is hindering Kove's ability to complete discovery and depositions ahead of the discovery cut off deadline.   By next Tuesday, please identify the custodians, confirm that you are running the search terms we last circulated on such custodians and provide a date by which we can expect to begin receiving ESI productions from such custodians.

In addition, I have not received a response to my email from September 1, regarding the AWS company-level financial information that Kove has been requesting and providing information about since May.  Please confirm by the end of this week whether AWS will agree to produce such documents in accord with my email of September 1.  Otherwise, we will assume we are at an impasse.

Finally, as you will recall, and as memorialized in my letter correspondence, during the meet and confer on August 14 the parties discussed, and AWS agreed, to address the below list of discovery deficiencies.  I believe each of these deficiencies is still unresolved.  AWS's failure to proactively satisfy its production obligations needlessly delays the parties and prevents discovery from

proceeding efficiently.

- Documents showing the pricing tiers for DynamoDB from 2012 to today. AWS agreed to produce such documents by August 28. These have not been produced. By the end of this week, please provide a date certain for the production.
- Documents showing the terms and differences between different tiers of Amazon S3 and DynamoDB since 2006 and 2012, respectively, to today. AWS agreed to produce such documents by August 28. These have not been produced. By the end of this week, please provide a date certain for the production.
- Documents showing the monthly revenue for Amazon S3 and DynamoDB from before 2014. AWS agreed during the meet and confer on August 14 to determine whether such documents exist. Please provide your availability to meet and confer this week or early next week to discuss.
- Documents describing the benefits accruing to AWS from S3 and DynamoDB. AWS agreed on August 14 to search for such documents and to let Kove know by August 28 whether AWS's search had identified any responsive documents. No such update was provided on August 28; please provide your availability to meet and confer this week or early next week to discuss.
- Organizational charts and corporate directories identifying employees knowledgeable about (1) marketing, advertising, and customer support related to speed, scalability, and availability for Amazon S3 and DynamoDB; (2) telemetry, usage data, and metrics regarding speed, scalability, and availability, including any customer testing (such as A/B testing), of Amazon S3 and DynamoDB; and (3) surveys, studies, or analyses or purchase journey mapping relating to pricing, sales, and customer procurement and retention for Amazon S3 and DynamoDB. On August 14 you agreed to investigate whether such documents exist, and to let us know the results of your search. We have not received any response or update. Please provide your availability to meet and confer this week or early next week to discuss.

Also, globally, considering the size of AWS, the foundational nature of the patented technology and the importance of the patented technology to AWS's core products and considering the scope of the document requests, the fact that AWS has only produced a few thousand responsive documents to date does not make sense. This suggests that (a) AWS has not undertaken a sufficiently diligent or reasonable effort to locate responsive documents to date, (b) the documents that should exist no longer exist for some reason, or (c) there is a forthcoming large production on the horizon. Please provide your availability to meet and confer this week or early next week to discuss.

Regards,
Michael

MICHAEL W. MARVIN
REICHMAN JORGENSEN LLP
750 THIRD AVENUE
SUITE 2400
NEW YORK, NY 10017
DIRECT: (646) 970-2652
mmarvin@reichmanjorgensen.com

# Exhibit P

| From: | Barron, Timothy J. |
|---|---|
| To: | Michael Marvin; Mascherin, Terri L.; Werner, Michael T.; Unikowsky, Adam G. |
| Cc: | RJ_Kove_AWS; rmariotti@thompsoncoburn.com; "MParks@thompsoncoburn.com" |
| Subject: | RE: Kove IO, Inc. v. AWS, Inc. (NDIL 18-cv-8175) |
| Date: | Monday, September 28, 2020 4:38:52 PM |

**[EXTERNAL]**
Michael,

Thank you for your email below regarding alleged production deficiencies and delays. We disagree with you that there are any deficiencies or delays as it relates to AWS's production. We have been working diligently to respond to Kove's overbroad and ill-defined requests for documents, and I can provide you with an update on those efforts below. I do not respond point-by-point to your email, but instead focus on the matters that appear to still be at issue.

First, as you know, today we are responding to Kove's Interrogatory No. 18, which will provide information on persons knowledgeable on the topics you requested, e.g., persons knowledgeable on the topics of marketing and advertising. As you will recall, AWS already identified five ESI custodians, as required, but Kove for its own reasons, did not accept those persons. Nevertheless, to avoid Court involvement, we have been working to try to identify persons responsive to Kove's vague categories, which will be set forth in the interrogatory responses. Once you've received that information, please contact us if you need anything further.

Second, regarding your assertion that AWS has not produced company-level financial documents, you are incorrect. As you know, we provided company-level AWS P&L documents last week. Other responsive financial documents we have produced include, for example AMZ_KOVE_000088413; 87328-87430; 81656-87430; 75589-75805. We are still following up with our client to determine if further documents Kove requested exist.

Third, you asked for documents showing the monthly revenue for Amazon S3 and DynamoDB from before 2014. We produced those documents at various time, including on August 26, 2020. See AMZ_KOVE_000087328-8740. If you believe there is additional information you require, please let us know. As we have informed you several times, Amazon's systems tracking this type of information changed in 2014 and thus obtaining data before that period is difficult.

Fourth, you requested documents describing the benefits accruing to AWS from S3 and DynamoDB. We have asked for those documents but have not identified any responsive documents. To clarify, we understood this as asking for documents describing benefits to AWS from S3 and DynamoDB, and not benefits to third parties, such as AWS customers. If we are misreading this request, please let us know.

Fifth, with respect to organization charts and corporate directories relating to the specific topics you requested, as we previously told you, AWS is not organized along the lines of your topics. Consequently, we have not yet located any responsive organization charts or corporate directories pertaining to these topics or that identify employees by these specific topics or groupings. We will happily meet and confer with you if you require further information.

Finally, as we have done all along, we continue to work with our client to identify and collect responsive documents.  To the extent you believe other responsive documents exist that have not been produced, please let us know and we will follow up with our client, and produce them.

We are available at your convenience to meet and confer if you would like to discuss any of the issues further.

Best regards,

Tim

---

**From:** Michael Marvin <mmarvin@reichmanjorgensen.com>
**Sent:** Thursday, September 17, 2020 2:54 PM
**To:** Barron, Timothy J. <TBarron@jenner.com>; Mascherin, Terri L. <TMascherin@jenner.com>; Werner, Michael T. <MWerner@jenner.com>; Unikowsky, Adam G. <AUnikowsky@jenner.com>
**Cc:** RJ_Kove_AWS <RJ_Kove_AWS@reichmanjorgensen.com>; rmariotti@thompsoncoburn.com; 'MParks@thompsoncoburn.com' <MParks@thompsoncoburn.com>
**Subject:** Kove IO, Inc. v. AWS, Inc. (NDIL 18-cv-8175)

External Email – Exercise Caution

Tim,

I write about numerous outstanding production deficiencies and delays.  These continued deficiencies and delays are hindering Kove's ability to identify follow-up discovery and to prepare for depositions.  In particular, the parties have discussed AWS's failure to produce telemetry and usage data and metrics tied to the speed, scalability, and availability of Amazon S3 and DynamoDB since May.  During the meet and confer between the parties on August 14 you stated that such telemetry and usage data had already been produced—a position we still believe is inaccurate—and you agreed to identify documents containing such information. *See also* 08-19-2020 Letter from T. Barron to M. Marvin (memorializing agreement to identify documents).  However, over one month after agreeing to do so, AWS still has not identified documents that contain telemetry and usage data and metrics tied to the speed, scalability, and availability of Amazon S3 and DynamoDB.  Moreover, AWS's production of only ~2,500 documents in a case of this scale speaks for itself.  We would expect that productions pertaining to the requested metrics would equal at least the volume of documents you have produced thus far this case.   Please confirm by next Tuesday that the metrics will be produced by no later than September 25.

I also write to follow up on the discussions between the parties regarding AWS's ESI custodians.  On May 20, Mr. Cardenas-Navia requested that AWS identify custodians knowledgeable about the following topics:  (1) marketing, advertising, and customer support related to speed, scalability, and availability for Amazon S3 and DynamoDB; (2) telemetry, usage data, and metrics regarding speed, scalability, and availability, including any customer testing (such as A/B testing), of Amazon S3 and DynamoDB; and (3) surveys, studies, analyses or purchase journey mapping relating to pricing, sales,

and customer procurement and retention for Amazon S3 and DynamoDB, including any studies commissioned by AWS.  Nearly four months later, AWS has yet to identify a single custodian knowledgeable on these topics.  The delay is hindering Kove's ability to complete discovery and depositions ahead of the discovery cut off deadline.   By next Tuesday, please identify the custodians, confirm that you are running the search terms we last circulated on such custodians and provide a date by which we can expect to begin receiving ESI productions from such custodians.

In addition, I have not received a response to my email from September 1, regarding the AWS company-level financial information that Kove has been requesting and providing information about since May.  Please confirm by the end of this week whether AWS will agree to produce such documents in accord with my email of September 1.  Otherwise, we will assume we are at an impasse.

Finally, as you will recall, and as memorialized in my letter correspondence, during the meet and confer on August 14 the parties discussed, and AWS agreed, to address the below list of discovery deficiencies.  I believe each of these deficiencies is still unresolved.  AWS's failure to proactively satisfy its production obligations needlessly delays the parties and prevents discovery from proceeding efficiently.

- Documents showing the pricing tiers for DynamoDB from 2012 to today.  AWS agreed to produce such documents by August 28.  These have not been produced.  By the end of this week, please provide a date certain for the production.
- Documents showing the terms and differences between different tiers of Amazon S3 and DynamoDB since 2006 and 2012, respectively, to today.  AWS agreed to produce such documents by August 28.  These have not been produced.  By the end of this week, please provide a date certain for the production.
- Documents showing the monthly revenue for Amazon S3 and DynamoDB from before 2014.  AWS agreed during the meet and confer on August 14 to determine whether such documents exist.  Please provide your availability to meet and confer this week or early next week to discuss.
- Documents describing the benefits accruing to AWS from S3 and DynamoDB.  AWS agreed on August 14 to search for such documents and to let Kove know by August 28 whether AWS's search had identified any responsive documents.   No such update was provided on August 28; please provide your availability to meet and confer this week or early next week to discuss.
- Organizational charts and corporate directories identifying employees knowledgeable about (1) marketing, advertising, and customer support related to speed, scalability, and availability for Amazon S3 and DynamoDB; (2) telemetry, usage data, and metrics regarding speed, scalability, and availability, including any customer testing (such as A/B testing), of Amazon S3 and DynamoDB; and (3) surveys, studies, or analyses or purchase journey mapping relating to pricing, sales, and customer procurement and retention for Amazon S3 and DynamoDB.  On August 14 you agreed to investigate whether such documents exist, and to let us know the results of your search. We have not received any response or update.  Please provide your availability to meet and confer this week or early next week to discuss.

Also, globally, considering the size of AWS, the foundational nature of the patented technology and

the importance of the patented technology to AWS's core products and considering the scope of the document requests, the fact that AWS has only produced a few thousand responsive documents to date does not make sense. This suggests that (a) AWS has not undertaken a sufficiently diligent or reasonable effort to locate responsive documents to date, (b) the documents that should exist no longer exist for some reason, or (c) there is a forthcoming large production on the horizon. Please provide your availability to meet and confer this week or early next week to discuss.

Regards,
Michael


MICHAEL W. MARVIN
REICHMAN JORGENSEN LLP
750 THIRD AVENUE
SUITE 2400
NEW YORK, NY 10017
DIRECT: (646) 970-2652
mmarvin@reichmanjorgensen.com


---

**Timothy J. Barron**

**Jenner & Block LLP**
353 N. Clark Street, Chicago, IL 60654-3456  |  jenner.com
+1 312 923 8309 | TEL
+1 312 593 0461 | MOBILE
+1 312 923 8409 | FAX
TBarron@jenner.com
Download V-Card  |  View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

# Exhibit Q

## FILED UNDER SEAL

# Exhibit R

FILED UNDER SEAL

# Exhibit S

| From: | Michael Marvin |
|---|---|
| To: | "adam.allgood@fischllp.com"; "alan.fisch@fischllp.com"; "Elizabeth Bernard"; "jeffrey.saltman@fischllp.com"; "Bill Sigler"; "Kove Team" |
| Cc: | RJ_Kove_AWS; mparks@thompsoncoburn.com; rmariotti@thompsoncoburn.com |
| Subject: | Kove IO, Inc. v. AWS, Inc. (ND Ill. 18-cv-8175) |
| Date: | Friday, December 11, 2020 2:02:32 PM |
| Attachments: | RE Kove IO Inc. v. AWS Inc. (NDIL 18-cv-8175).msg |
| | 2020-10-15 Kove Letter M. Marvin to T. Barron re 10-8 Meet and Confer..pdf |
| | 2020-08-28 Kove IO Inc. v. Amazon Web Services.pdf |

Elizabeth,

We'd like to call your attention to several significant discovery issues that Kove raised nearly two months ago with prior counsel that remain open.  These are memorialized in the attached e-mail chain from late September and early October and the attached October 15 letter memorializing our October 8 meet and confer call.  With approximately 30 days remaining before depositions restart on January 15, we ask that you provide a response to the issues raised by mid-week next week or provide your availability to meet and confer next Friday (Dec. 18).  Also,  please let us know when we will receive the requested discovery, as well as the estimated volume of the productions.

Additionally, there are outstanding issues involving ESI discovery and AWS's response to Interrogatory No. 22.  With respect to ESI, in a November 19 email, AWS proposed Liz Coddington, Alan Park, and Jonathan Sullivan as ESI custodians.  Kove, however, had previously rejected those individuals (see attached Aug. 28 letter from M. Marvin to T. Barron), as they do not appear to be knowledgeable on the topics we identified in our May 20 correspondence (see May 20 email from J. Cardenas-Navia to T. Barron).  We reminded AWS of our objections in response to the Nov. 19 communication and requested that AWS provide alternate knowledgeable custodians.   We have not received a response.  Please propose appropriate custodians by mid-week next week as well.  Relatedly, for custodians that the parties have agreed upon (*i.e.*, Werner Vogels and Allen Vermeulen), please let us know when we will receive their ESI productions.

With respect to Kove's Interrogatory No. 22, AWS's response does not identify the documents related to its answer (*e.g.*, the documents from which its current response was obtained).  AWS's response also does not address parts (iv) or (v) of the interrogatory.  The requested information is relevant to damages, as the benefits of the asserted patents include improvements to durability, availability, scalability, and latency.  Please supplement your response or provide your availability to meet and confer next Friday.

Regards,
Michael

MICHAEL W. MARVIN
REICHMAN JORGENSEN LLP
750 THIRD AVENUE
SUITE 2400
NEW YORK, NY 10017
DIRECT: (310) 600-0834
mmARVIN@rEICHmANJOrGENSEN.COm

# Exhibit T

## FILED UNDER SEAL

# Exhibit V

## FILED UNDER SEAL

# Exhibit W

FILED UNDER SEAL

# Exhibit X

## FILED UNDER SEAL

# Exhibit Y

## FILED UNDER SEAL

# Exhibit Z

## FILED UNDER SEAL

# Exhibit AA

## FILED UNDER SEAL

# Exhibit BB

FILED UNDER SEAL

# Exhibit CC

## FILED UNDER SEAL

# Exhibit DD

FILED UNDER SEAL

# Exhibit EE

## FILED UNDER SEAL

# Exhibit FF

## FILED UNDER SEAL

# Exhibit GG

| Amazon's Productions | | |
|---|---|---|
| | | |
| Volume | Date of Production | Document Count |
| AMZ_ACM001 | 2/2/2021 | 3 |
| AMZ_KOVE_001 | No other info | 728 |
| AMZ_KOVE_002 | 7/24/2019 | 204 |
| AMZ_KOVE_003 | No other info | 19 |
| AMZ_KOVE_004 | 10/30/2019 | 92 |
| AMZ_KOVE_005 | 10/30/2019 | 6 |
| AMZ_KOVE_006 | 11/13/2019 | 29 |
| AMZ_KOVE_007 | 11/15/2019 | 14 |
| AMZ_KOVE_008 | 11/22/2019 | 21 |
| AMZ_KOVE_009 | 1/22/2020 | Source Code Production (Not Loaded) |
| AMZ_KOVE_010 | 12/3/2019 | 12 |
| AMZ_KOVE_011 | 12/10/2019 | 123 |
| AMZ_KOVE_012 | 12/30/2019 | 9 |
| AMZ_KOVE_013 | 12/31/2019 | 2 |
| AMZ_KOVE_014 | 1/7/2020 | 180 |
| AMZ_KOVE_015 | 1/24/2020 | Source Code Production (Not Loaded) |
| AMZ_KOVE_016 | 1/27/2020 | Source Code Production (Not Loaded) |
| AMZ_KOVE_017 | 2/13/2020 | 5 |
| AMZ_KOVE_018 | 3/6/2020 | 373 |
| AMZ_KOVE_019 | 3/18/2020 | 55 |
| AMZ_KOVE_020 | 6/15/2020 | 66 |
| AMZ_KOVE_021 | 7/10/2020 | 141 |
| AMZ_KOVE_022 | 7/15/2020 | 8 |
| AMZ_KOVE_023 | 8/17/2020 | 340 |
| AMZ_KOVE_024 | 8/26/2020 | 7 |
| AMZ_KOVE_025 | 8/28/2020 | 16 |
| AMZ_KOVE_026 | 9/14/2020 | 15 |
| AMZ_KOVE_027 | 9/22/2020 | 1 |
| AMZ_KOVE_028 | 9/25/2020 | 55 |
| AMZ_KOVE_029 | 10/5/2020 | 2 |
| AMZ_KOVE_030 | 10/21/2020 | |
| AMZ_KOVE_031 | 10/29/2020 | 91 |
| AMZ_KOVE_032 | 11/10/2020 | 24 |
| AMZ_KOVE_033 | 1/21/2021 | 2329 |
| AMZ_KOVE_034 | 1/29/2021 | 862 |
| Total Documents Produced: 5,832 | | |

| Kove's Productions | | |
|---|---|---|
| KOVE001_Initial Production | | 453 |
| KOV002 | | 156 |
| KOV003 | | 2 |
| KOV004 | | 1,828 |
| KOV005 | | 1,219 |
| KOV005 - Re-production | | 4 |
| KOV006 | | 3,831 |
| KOV007 | | 553 |
| KOV008 | | 4,557 |
| KOV008 - Re-production | | 2 |
| KOV009 | | 1 |
| KOV010 | | 13 |
| KOV011 | | 1 |
| KOV012 | | 87 |
| KOV013 | | 79 |
| KOV014 | | 1 |
| KOV015 | | 11 |
| KOV016 | | 71 |
| KOV017 | | 130 |
| Total Documents Produced: 12,993 | | |