UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: 100% GRATED PARMESAN CHEESE | ) | |
| MARKETING AND SALES PRACTICES | ) | 16 C 5802 |
| LITIGATION | ) | MDL 2705 |
| | ) | |
| | ) | Judge Gary Feinerman |
| This Document Relates to All Cases | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER

Defendants in this multidistrict litigation are purveyors of grated parmesan cheese products with labels stating "100% Grated Parmesan Cheese" or some variation thereof.  After the Judicial Panel on Multidistrict Litigation assigned these suits to the undersigned judge, Doc. 1, Plaintiffs filed five consolidated class action complaints, Docs. 120-123, 143, which alleged that they were misled by the labels because the products contain non-cheese ingredients such as cellulose.  Defendants moved to dismiss the complaints under Civil Rules 12(b)(1) and 12(b)(6). The court denied the Rule 12(b)(1) motions but granted the Rule 12(b)(6) motions without prejudice to repleading.  Docs. 215-216 (reported at 275 F. Supp. 3d 910 (N.D. Ill. 2017)).

Plaintiffs then filed five amended consolidated class action complaints.  Doc. 225 (against Kraft Heinz Company); Doc. 226 (against Publix Super Markets, Inc.); Doc. 227 (against Albertsons Companies, Inc., Albertsons LLC, and SuperValu, Inc.); Doc. 228 (against Target Corp. and ICCO-Cheese Company, Inc.); Doc. 229 (against Wal-Mart Stores, Inc. and ICCO-Cheese Company, Inc.).  Like the initial complaints, the amended complaints allege that Plaintiffs were misled by the "100% Grated Parmesan Cheese" labels because the products contained cellulose and other non-cheese ingredients.  In addition, the amended complaints except for the one against Publix allege that the products' ingredient lists are misleading because they say that the cellulose was added to prevent caking, when in fact it also acted as filler.

Defendants move to dismiss the amended complaints under Civil Rule 12(b)(6), Docs. 237, 238, 243, 246, 249, incorporating by reference many of the arguments they made in litigating the motions to dismiss the initial complaints. The motions are granted in part and denied in part.

## Background

On a Rule 12(b)(6) motion, the court assumes the truth of the operative complaints' factual allegations, though not their legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint[s], documents that are critical to the complaint[s] and referred to in [them], and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Plaintiffs as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Defendants Kraft Heinz Company, Albertsons Companies, Inc., Albertsons LLC (the Albertsons entities will be referred to together as "Albertsons"), SuperValu, Inc., Target Corporation, Wal-Mart Stores, Inc., ICCO-Cheese Company, Inc., and Publix Super Markets, Inc., design, develop, manufacture, sell, test, package, label, distribute, promote, market, and/or advertise grated parmesan cheese products. Doc. 225 at ¶ 19; Doc. 226 at ¶ 10; Doc. 227 at ¶ 16; Doc. 228 at ¶¶ 13-14; Doc. 229 at ¶¶ 15, 29. (Albertsons and SuperValu, as close corporate relatives, are named in one complaint. Doc. 227. ICCO manufactures the products for both

Target and Wal-Mart, and is named as a defendant in both the Target and Wal-Mart complaints. Docs. 228-229.) The products all bore labels stating "100% Grated Parmesan Cheese," Doc. 225 at ¶ 21; Doc. 227 at ¶ 18; Doc. 228 at ¶ 17; Doc. 229 at ¶ 18, or some variation thereof, Doc. 225 at ¶ 21 ("100% Grated Parmesan & Romano Cheese" and "100% Grated Three Cheese Blend"); Doc. 226 at ¶ 12 ("100% Real Grated Romano Parmesan Cheese" and "100% Real Grated Parmesan Cheese"); Doc. 227 at ¶ 18 ("100% Grated Parmesan and Romano Cheese"); Doc. 228 at ¶ 17 ("Parmesan 100% Grated Cheese"); Doc. 229 at ¶ 18 ("100% Parmesan Grated Cheese"). For ease of exposition, the variations will be ignored. Publix and Wal-Mart removed the term "100%" from their labels after this litigation began. Doc. 225 at ¶¶ 31-32; Doc. 226 at ¶¶ 19-20; Doc. 227 at ¶¶ 26-27; Doc. 228 at ¶¶ 26-27; Doc. 229 at ¶ 27-28.

The products are comprised largely of cured, dried hard Italian cheeses that can keep (*e.g.*, not spoil or clump) a long time without refrigeration. Doc. 225 at ¶ 26; Doc. 226 at ¶ 15; Doc. 227 at ¶ 22; Doc. 228 at ¶ 21; Doc. 229 at ¶ 22. The products also include a small but nontrivial percentage of cellulose, an organic polymer with no nutritional value that is "often used as a filler." Doc. 225 at ¶¶ 23-24 (Kraft, 3.8%); Doc. 226 at ¶ 13 (Publix, "a significant portion"); Doc. 227 at ¶¶ 19-20 (Albertsons/SuperValu, 8.8%); Doc. 228 at ¶ 19 (Target/ICCO, no percentage specified); Doc. 229 at ¶¶ 19-20 (Wal-Mart/ICCO, 7.8%). Some of the products contain other ingredients, including potassium sorbate, Doc. 225 at ¶ 24; Doc. 226 at ¶ 13; Doc. 228 at ¶ 19; Doc. 229 at ¶ 20, and corn starch, Doc. 228 at ¶ 19.

Each product container has an ingredient list that discloses the non-cheese ingredients. Doc. 239 at 6; Doc. 240 at 7-8; Doc. 244 at 7-8; Doc. 247 at 7; Doc. 250 at 6-7. While "100% Grated Parmesan Cheese" is prominently featured on the containers' front labels, the ingredient lists are smaller, less conspicuous, and located near the nutritional facts on the rear labels. Doc.

3

239 at 6; Doc. 240 at 7-8; Doc. 244 at 7; Doc. 247; Doc. 250 at 6-7. A more detailed description

of the products' appearance and labeling, along with representative images, are set forth in this

court's earlier opinion on the motions to dismiss the initial consolidated class action complaints.

275 F. Supp. 3d at 915-17.

Plaintiffs are consumers who purchased Defendants' products at grocery stores in

Alabama (Kraft, Albertsons/SuperValu, Wal-Mart/ICCO), California (Kraft, Target/ICCO,

Wal-Mart/ICCO), Connecticut (Kraft), Florida (Kraft, Publix, Target/ICCO, Wal-Mart/ICCO),

Illinois (Kraft, Albertsons/SuperValu, Target/ICCO), Michigan (Kraft), Minnesota (Kraft,

Wal-Mart/ICCO); Missouri (Target/ICCO), New Jersey (Wal-Mart/ICCO), and New York

(Kraft, Wal-Mart/ICCO). Doc. 225 at ¶¶ 9-17; Doc. 226 at ¶¶ 8-9; Doc. 227 at ¶¶ 9-11; Doc.

228 at ¶¶ 9-12; Doc. 229 at ¶¶ 9-14. Plaintiffs purchased the products believing that they

contained only cheese. Doc. 225 at ¶¶ 9-17; Doc. 226 at ¶¶ 8-9; Doc. 227 at ¶¶ 9-11; Doc. 228 at

¶¶ 9-12; Doc. 229 at ¶¶ 9-14. Plaintiffs allege that they are not alone in that belief; the operative

complaints reference a survey, conducted in connection with this litigation, purporting to find

that more than 85-90% of consumers stated that they believed that the products "are 100%

cheese and fully grated." Doc. 225 at ¶ 29; Doc. 226 at ¶ 17; Doc. 227 at ¶ 24; Doc. 228 at ¶ 24;

Doc. 229 at ¶ 25. In addition, two reports authored by linguistics professors opine that the

phrase "100% Grated Parmesan Cheese" is "linguistically subject to only one plausible

interpretation … that the Product contains nothing other than grated parmesan cheese." Doc. 225

at ¶ 30; Doc. 226 at ¶ 18; Doc. 227 at ¶ 25; Doc. 228 at ¶ 25; Doc. 229 at ¶ 26.

Each amended complaint except the one against Publix adds a claim not made in the

initial complaints: that although the ingredient lists state that cellulose is added "to prevent

caking," Doc. 239 at 6; Doc. 240 at 7; Doc. 244 at 7; Doc. 247 at 7; Doc. 250 at 7, the amount of

cellulose added exceeds what is necessary to prevent caking, Doc. 225 at ¶ 27; Doc. 227 at ¶ 23; Doc. 228 at ¶ 22; Doc. 229 at ¶ 23, and thus the cellulose must also serve the undisclosed purpose of acting as filler, Doc. 225 at ¶ 4; Doc. 227 at ¶ 4; Doc. 228 at ¶ 2; Doc. 229 at ¶ 4.

## Discussion

The amended complaints assert violations of various state consumer protection statutes, breaches of express and implied warranty, and unjust enrichment stemming from two alleged misrepresentations: (1) the representation on the containers' front labels that the products are "100% Grated Parmesan Cheese," when in fact they contain non-cheese ingredients ("100% claims"); and (2) the representation on the ingredient lists that cellulose is used to prevent caking, when in fact it is also used as filler ("Anticaking claims"). The 100% claims are dismissed, while the Anticaking claims are dismissed in large part.

## I. 100% Claims

The court's earlier opinion—familiarity with which is assumed—dismissed the 100% claims on the ground that, given the context provided by the ingredient lists and the products' placement on unrefrigerated shelves, no reasonable consumer could be misled by the "100% Grated Parmesan Cheese" labels into thinking that the products were 100% cheese. 275 F. Supp. 3d at 919-27. Plaintiffs contend that three new allegations in the amended complaints warrant a different result: (1) a consumer survey showing that "the vast majority of purchasers" believed, based on the labels, that the products are "100% cheese and fully grated"; (2) two reports from linguistics professors opining that "100% Grated Parmesan Cheese" is susceptible only to the interpretation that the products "consist entirely of grated parmesan cheese"; and (3) a Kraft patent stating that fully cured parmesan cheese "keeps almost indefinitely." Doc. 255 at 7-8. Those new allegations do not save the 100% claims.

A.     **Consumer Protection Claims**

The state consumer protection statutes that Plaintiffs invoke, and the framework adopted to evaluate claims brought under those statutes, are set forth in the court's earlier opinion. 275 F. Supp. 3d at 919-23. In short, when "a plaintiff contends that certain aspects of a product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous; if so, context [such as an ingredient label] can cure the ambiguity and defeat the claim, but if not, then context will not cure the deception and the claim may proceed." *Id*. at 922; *see also Solak v. Hain Celestial Grp., Inc.*, 2018 WL 1870474, at *5 (N.D.N.Y. Apr. 17, 2018) (adopting this rule under New York and California law); *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018) (same under New York law). The court declines Plaintiffs' invitation, Doc. 255 at 10-15, to reconsider that standard.

As for applying the standard, the court's earlier opinion held that "the description '100% Grated Parmesan Cheese' is ambiguous," reasoning that although "'100% Grated Parmesan Cheese' *might* be interpreted as saying that the product is 100% cheese and nothing else, it also might be an assertion that 100% of the cheese is parmesan cheese, or that the parmesan cheese is 100% grated." *Id*. at 923. In challenging that conclusion, Plaintiffs cite two reports from linguistics professors opining that the phrase "100% Grated Parmesan Cheese" conveys only the message that the products consist entirely of cheese. Doc. 255 at 7-8. The linguists do not advance Plaintiffs' cause. As an initial matter, a reasonable consumer—the touchstone for analysis under the consumer fraud statutes—does not approach or interpret language in the manner of a linguistics professor. *See Rugg v. Johnson & Johnson*, 2018 WL 3023493, at *2 (N.D. Cal. June 18, 2018) (noting that a "reasonable consumer need not be exceptionally acute

6

and sophisticated," and that "the reasonable consumer test focuses on the perspective of ordinary minds") (internal quotation marks omitted).

In any event, the reports do not indicate that the professors examined the phrase "100% Grated Parmesan Cheese" in the context of shelf-stable, unrefrigerated containers of cheese. As the court explained, that context is important given that the "products are packaged and shelf-stable at room temperature, a quality that reasonable consumers know is not enjoyed by pure cheese," and that "reasonable consumers are well aware that pure dairy products spoil, grow blue, green, or black fuzz, or otherwise become inedible if left unrefrigerated for an extended period of time." 275 F. Supp. 3d at 923. Even assuming (incorrectly) that reasonable consumers view language through the same lens as linguistics professors, because the linguists did not take account of that context, their opinions are valueless in deciding whether "100% Grated Parmesan Cheese" is ambiguous.

Plaintiffs also cite consumer surveys purporting to show that the "vast majority" of consumers believe that "100% Grated Parmesan Cheese" means that the product contains only cheese. Doc. 255 at 7-9. Those surveys are valueless as well. As the Seventh Circuit has held, it is "well settled" that a court, on its own, may "determine as a matter of law" that "an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (7th Cir. 2013). The Seventh Circuit has also recognized that "context is crucial" in that, "under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Ibid*. Accordingly, consumer surveys do not assist the analysis where, as here, the court can determine as a matter of law that the challenged statement is ambiguous standing alone and particularly given its context. *See Goldman v. Bayer AG*, 2017 WL 3168525, at *10 (N.D. Cal. July 26, 2017) (denying leave to amend after

dismissing statutory consumer fraud claims, even though the plaintiff wished to "arrange for consumer surveys to be conducted," because surveys would not assist the plaintiff in plausibly "alleg[ing] that he was deceived by information that is plainly accurate"); *cf. Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 201 (3d Cir. 2014) (in a Lanham Act suit, noting that "words may be used plainly enough and carry baseline meanings such that consumer survey evidence is irrelevant"). Moreover, it bears mention that the surveys find that some consumers do *not* believe that the products are 100% cheese; the disagreement between those consumers and those who *do* believe that the products are 100% cheese supports, rather than refutes, the notion that the label is ambiguous.

Finally, Plaintiffs cite a Kraft patent teaching a method for manufacturing grated parmesan cheese, which states that "[f]ully cured Parmesan cheese is very hard and keeps almost indefinitely," and a U.S. Department of Agriculture Food Safety and Inspection Service webpage, which states that, "[a]s a general rule … grated Parmesan do[es] not require refrigeration for safety, but … will last longer if kept refrigerated." Doc. 255 at 16 & n.1. These materials do not render unambiguous the phrase "100% Grated Parmesan Cheese." There is no reason to believe that either the patent or the Department of Agriculture report would be familiar to a reasonable consumer with an ordinary understanding of how dairy products generally fare when unrefrigerated. In any event, by saying that pure grated parmesan "keeps *almost* indefinitely" and, "[a]s a *general* rule," "will last *longer* if kept refrigerated," the materials necessarily imply that pure grated parmesan will *not* keep indefinitely if left unrefrigerated. The materials therefore do not undermine the court's view that a reasonable consumer would not presume that a shelf-stable dairy product was 100% cheese or would disregard the "well-known fact[] of life" that pure dairy products spoil if left unrefrigerated. *Red v. Kraft Foods, Inc.*, 2012

WL 5504011, at *3-4 (C.D. Cal. Oct. 25, 2012) (dismissing a statutory consumer fraud claim on the ground that "it strains credulity to imagine that a reasonable consumer will be deceived into thinking a box of crackers … contains huge amounts of vegetables simply because there are pictures of vegetables and the true phrase 'Made with Real Vegetables' on the box").

For these reasons, Plaintiffs' new allegations do not save their 100% claims to the extent they arise under state consumer fraud statutes.

### B. Warranty and Unjust Enrichment Claims

As the court's earlier opinion explained, Plaintiffs' warranty and unjust enrichment claims may succeed only if a reasonable consumer could plausibly understand the label "100% Grated Parmesan Cheese," on a shelf-stable dairy product whose easily accessible ingredient list identifies non-cheese ingredients, to mean that the product contains only cheese. 275 F. Supp. 3d at 925-27. Because a reasonable consumer would not reach that understanding, particularly given the important contextual clues discussed above and in the earlier opinion, the warranty and unjust enrichment 100% claims are dismissed. *Ibid.*

## II. Anticaking Claims

As noted, the operative complaints also claim that the products' ingredient lists (except for Publix's) falsely assert that cellulose is added only to prevent caking, when in fact it also serves as "filler." Doc. 255 at 8.

### A. Rules 8(a)(2) and 9(b)

Defendants argue that the Anticaking claims fail to satisfy the pleading requirements of Rule 8(a)(2). Doc. 239 at 16-17; Doc. 240 at 15-17; Doc. 244 at 15-17; Doc. 250 at 11 n.4; Doc. 267 at 8. To satisfy Rule 8(a), a plaintiff need only provide "enough detail[] … to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Upon

accomplishing this task, the plaintiff receives "the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007)). With the exceptions noted below, the Anticaking claims satisfy this standard.

Plaintiffs allege the following. Grated parmesan "usually available in the marketplace" is cured and dried in such a way that there is "little problem of clumping or agglomeration," so there is little need to ensure that grated parmesan does not clump or "cake." Doc. 225 at ¶ 26; Doc. 227 at ¶ 22; Doc. 228 at ¶ 21; Doc. 229 at ¶ 22. Yet the ingredient lists assert that cellulose is added to prevent caking. Doc. 225 at ¶ 4; Doc. 227 at ¶ 4; Doc. 228 at ¶ 4; Doc. 229 at ¶ 4. This assertion is false or misleading because the products contain more cellulose than necessary to accomplish this "anticaking" purpose. Doc. 225 at ¶¶ 4, 23; Doc. 227 at ¶¶ 4, 19; Doc. 228 at ¶¶ 4, 22; Doc. 229 at ¶¶ 4, 19. The excess cellulose serves as "filler," a use that the labels do not disclose. Doc. 225 at ¶ 24; Doc. 227 at ¶ 20; Doc. 228 at ¶ 2; Doc. 229 at ¶ 20.

These allegations provide Defendants sufficient "notice of what the case is all about"— that their ingredient lists falsely suggest that cellulose is used only to prevent caking—and show "how, in the plaintiff's mind at least, the dots should be connected"—that the products contain suspiciously high percentages of cellulose given that grated parmesan cheese is unlikely to clump or "cake." *Swanson*, 614 F.3d at 405. No more is required under Rule 8(a)(2).

Defendants also contend that the Anticaking claims fail to satisfy the more stringent pleading requirements of Rule 9(b). Doc. 239 at 19; Doc. 240 at 17; Doc. 244 at 17. Plaintiffs do not dispute that their claims (except for those under New York law) are subject to Rule 9(b). Doc. 185 at 37 & n.16. That concession is correct; because Plaintiffs' allegations sound in fraud, Rule 9(b) applies. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir.

2007) ("A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements."); *see also*, *e.g.*, *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 334-35 (7th Cir. 2018) (Illinois consumer fraud statute); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (California consumer fraud statutes); *E-Shops Corp. v. U.S. Bank N.A.*, 678 F.3d 659, 665 (8th Cir. 2012) (Minnesota consumer fraud statutes); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (New Jersey consumer fraud statute). And the court need not decide whether Rule 9(b) applies to Plaintiffs' New York law claims—which are brought only against Kraft and Wal-Mart/ICCO—because, as explained below, Plaintiffs have pleaded those claims with enough particularity to satisfy Rule 9(b).

"Rule 9(b) requires a pleading to state with particularity the circumstances constituting fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (internal quotation marks omitted). As a general matter, a plaintiff must describe the "who, what, when, where, and how of the fraud." *Ibid.* (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)). That said, the "requisite information" needed to satisfy the Rule "may vary on the facts of a given case," *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011), and a "plaintiff who provides a general outline of [a] fraud scheme sufficient to reasonably notify the defendants of their purported role in the fraud" will comply with Rule 9(b), *In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 812 (N.D. Ill. 2016) (quotation marks omitted) (collecting cases); *see also Camasta*, 761 F.3d at 737 (noting that a plaintiff need not "provide the precise date, time, and location that he saw [an] advertisement or every word that was included on it").

With the exceptions noted below, the Anticaking claims satisfy these requirements because Plaintiffs allege that Defendants (the "who") misrepresented on their ingredient lists (the "where" and "how") the role of cellulose in their products (the "what"), which were purchased by Plaintiffs at retail locations (the "when"). *See Wagner v. Gen. Nutrition Corp.*, 2017 WL 3070772, at *8 (N.D. Ill. July 19, 2017) ("By including the relevant labels in the [operative complaint], alleging what the information on the labels means, alleging the results of the various scientific studies [suggesting that glutamine supplements do not have the benefits claimed on the products' labels], and alleging how the information on the labels deceived him, Plaintiff has met his pleading burden [under Rules 8(a) and 9(b)]."); *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119, 1130 (E.D. Wis. 2016) (same, where the plaintiffs alleged the date they visited the stores, the items they purchased, the "regular" prices of the purchased merchandise, and the "sale" prices on the merchandise); *Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 930-31 (N.D. Ill. 2015) (same, where the plaintiff alleged that "specific statements … on [the defendants' products'] label and website caused him to believe the whiskey was distilled, aged, and finished in small batches in Kentucky"). This is all that is necessary under Rule 9(b).

Target/ICCO argue that the Anticaking claims against them do not provide sufficient detail to satisfy Rule 8(a)—let alone Rule 9(b)—because Plaintiffs do "not even allege how much cellulose is in the product that ICCO makes for Target." Doc. 239 at 17. Target/ICCO are right. The particularity requirement of Rule 9(b) is "designed to discourage a sue first, ask questions later philosophy," *Pirelli*, 631 F.3d at 441 (internal quotation marks omitted), and to "force[] the plaintiff to conduct a careful pretrial investigation" so as to operate "as a screen against spurious fraud claims," *Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005). The Target/ICCO complaint alleges only that Plaintiffs

12

believe that Target's product contains excess cellulose; unlike the complaints against Albertsons, Kraft, and Wal-Mart/ICCO, the Target/ICCO complaint does not allege how much cellulose is in the Target/ICCO product, and therefore cannot plausibly allege that the product includes more cellulose than necessary for anticaking purposes. *Compare* Doc. 225 at ¶¶ 23-24 (Kraft, 3.8%), Doc. 227 at ¶¶ 19-20 (Albertsons/SuperValu, 8.8%), *and* Doc. 229 at ¶¶ 19-20 (Wal-Mart/ICCO, 7.8%), *with* Doc. 228 at ¶ 19 (Target/ICCO, no percentage specified). It follows that the Anticaking claims against Target/ICCO do not satisfy Rule 9(b).

Wal-Mart/ICCO argue that Plaintiffs fail to plead any "non-conclusory factual allegations regarding Wal-Mart's alleged participation in the fraud." Doc. 240 at 17 (Wal-Mart) (internal quotation marks omitted); *see* Doc. 237 at 2 (ICCO joining Wal-Mart's brief). As the Seventh Circuit has held, "because fair notice is the most basic consideration underlying Rule 9(b), in a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (internal quotation marks omitted). The Wal-Mart/ICCO complaint alleges that several named plaintiffs purchased "100% Grated Parmesan Cheese" products at Wal-Mart stores in different States, Doc. 229 at ¶¶ 9-14; that Wal-Mart is "the registered owner of the trademark 'Great Value,'" the brand name under which the products were sold, *id*. at ¶ 15; and that Wal-Mart and ICCO are "co-participants in committing the acts of consumer fraud alleged," *id*. at ¶ 29. These allegations do not impermissibly "lump[] together" ICCO and Wal-Mart; to the contrary, they provide Wal-Mart with sufficient notice of its alleged participation in the fraud. *Rocha*, 826 F.3d at 911; *see also United States ex rel. Derrick v. Roche Diagnostics Corp.*, 2018 WL 2735090, at *5 (N.D. Ill. June 7, 2018) (noting that the plaintiff "would not be expected to know the particulars of [the defendant's] internal operations," and holding that the "critical question"

under Rule 9(b) is simply whether the plaintiff's allegations are sufficient "to inform each defendant of the nature of his alleged participation in the fraud") (internal quotations omitted); *Clay Fin. LLC v. Mandell*, 2017 WL 3581142, at *7 (N.D. Ill. Aug. 18, 2017) (same).

Finally, Albertsons contends that because Plaintiffs fail to allege that they "purchased any product from any store owned, operated, or connected in any way to Albertsons" in Alabama, the Alabama claims against Albertsons should be dismissed. Doc. 192 at 10-11. Albertsons is correct. The Albertsons/SuperValu complaint alleges that "six containers of Essential Everyday '100% Grated Parmesan Cheese,'" a brand whose trademark is owned by SuperValu, were purchased "at various stores in Alabama." Doc. 227 at ¶¶ 11, 15. There is no indication, however, that the products were purchased at a store owned by Albertsons in Alabama or that Albertsons played any other role in the distribution, marketing, or sale of the products purchased in Alabama. It follows that the Anticaking claims against Albertsons under Alabama law are dismissed.

\* \* \*

In sum, the Anticaking claims against Target/ICCO are dismissed, as are the Alabama Anticaking claims against Albertsons. The Anticaking claims against SuperValu, Kraft, and Wal-Mart/ICCO, and the Anticaking claims against Albertsons other than those under Alabama law, survive Rules 8(a)(2) and 9(b), although they face the additional hurdles set forth below.

### B. Statutory Consumer Protection Claims

Plaintiffs assert claims under the following state consumer protection statutes against Albertsons/SuperValu, Kraft, and/or Wal-Mart/ICCO: Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1 *et seq*. ("ADPTA"), Doc. 225 at ¶¶ 160-171 (Kraft); Doc. 227 at ¶¶ 62-73 (Albertsons/SuperValu); Doc. 229 at ¶¶ 130-141 (Wal-Mart/ICCO); California Consumers Legal

Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), Doc. 225 at ¶¶ 91-97 (Kraft); Doc. 229 at ¶¶ 151-155 (Wal-Mart/ICCO); California Unfair Competition Law, Cal. Bus. & Profs. Code § 17200 *et seq.* ("UCL"), Doc. 225 at ¶¶ 81-90 (Kraft); Doc. 229 at ¶¶ 142-150 (Wal-Mart/ICCO); Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b ("CUTPA"), Doc. 225 at ¶¶ 140-147 (Kraft); Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"), Doc. 225 at ¶¶ 148-159 (Kraft); Doc. 229 at ¶¶ 110-121 (Wal-Mart/ICCO); Illinois Deceptive Practices and Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), Doc. 225 at ¶¶ 132-139 (Kraft); Doc. 227 at ¶¶ 74-81 (Albertsons/SuperValu); Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903 *et seq.* ("MCPA"), Doc. 225 at ¶¶ 172-182 (Kraft); Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.09 *et seq.* ("MUTPA") pursuant to Minn. Stat. § 8.31 sub div. 3a, Doc. 225 at ¶¶ 108-117 (Kraft); Doc. 229 at ¶¶ 86-95 (Wal-Mart/ICCO); Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44 *et seq.* ("MDTPA"), Doc. 225 at ¶¶ 126-131 (Kraft); Doc. 229 at ¶¶ 104-109 (Wal-Mart/ICCO); Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67 ("MFSAA") pursuant to Minn. Stat. § 8.31 sub div. 3a, Doc. 225 at ¶¶ 118-125 (Kraft); Doc. 229 at ¶¶ 96-103 (Wal-Mart/ICCO); Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq.* ("MPCFA"), pursuant to Minn. Stat. § 8.31 sub div. 3a, Doc. 225 at ¶¶ 98-107 (Kraft); Doc. 229 at ¶¶ 76-85 (Wal-Mart/ICCO); New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1 *et seq.* ("NJCFA"), Doc. 229 at ¶¶ 122-129 (Wal-Mart/ICCO); and New York General Business Law §§ 349, 350 ("NYGBL"), Doc. 225 at ¶¶ 170-180 (Kraft); Doc. 229 at ¶¶ 65-75 (Wal-Mart/ICCO).

Wal-Mart contends that Plaintiffs have no Anticaking claim under the consumer protection statutes of Alabama, California, Florida, New Jersey, or New York, or the MPCFA,

MUTPA, or MFSAA, because they do not allege that they were "injured as a result of any conduct by Wal-Mart." Doc. 168 at 28; *see id*. at 25, 27-28, 29, 31-34. The court will consider this argument as to Albertsons/SuperValu, Kraft, and ICCO as well because Defendants generally joined each other's arguments (from the motions to dismiss the original complaints and the present motions), and because the argument applies with equal force to them all.

The operative complaints allege that Plaintiffs purchased the products believing them to be "100% Grated Parmesan Cheese." Doc. 225 at ¶¶ 9-17; Doc. 227 at ¶¶ 9-11; Doc. 229 at ¶¶ 9-14. The necessary implication is that Plaintiffs never consulted, let alone relied upon, the ingredient labels' assertion that cellulose was added to prevent caking. This dooms Plaintiffs' claims under the above-referenced statutes, all of which require some form of causal connection between the alleged misrepresentation and the plaintiff's alleged injury. *See Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (holding that the defendant was entitled to summary judgment on a FDUTPA claim where the plaintiff "made no allegation and presented no evidence that the alleged misleading statement caused [its] damages");[*] *Sateriale v.*

---

[*] Some explanation is warranted as to the FDUTPA. "To state an FDUTPA claim, [a plaintiff] must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC*, 715 F.3d at 1250. Courts have split on the precise role that causation or reliance plays in alleging an FDUTPA claim. Some courts hold that the "FDUTPA does not require proof of actual, individualized reliance; rather, it requires only a showing that the practice was likely to deceive a reasonable consumer." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 515 (6th Cir. 2015); *see also Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) (same). Others hold that where a plaintiff does not allege that the misrepresentation played some role in her alleged damages, particularly where the plaintiff has not actually seen the alleged misrepresentation, she fails to adequately allege an FDUTPA claim. *See Dolphin LLC*, 715 F.3d at 1250 (cited in the text); *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015) (holding that the plaintiff failed to state an FDUTPA claim where she "made no allegation as to causation; she did not allege that, but for the quoted statement on [the defendants'] websites, she would not have applied for (or would have received) a loan modification"); *Kais v. Mansiana Ocean Residences, LLC*, 2009 WL 825763, at *1-2 (S.D. Fla. Mar. 26, 2009) (dismissing an FDUTPA claim where the plaintiff did not "state that the[] alleged deceptive acts caused him to enter into the contract with Defendant or caused him

---

*R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793-94 (9th Cir. 2012) (holding that because the plaintiffs' UCL and CLRA claims sounded in fraud, they had to prove reliance); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012) (noting that while the NJCFA does not "require proof of reliance … the alleged unlawful practice must be a proximate cause of the plaintiff's ascertainable loss"); *Bykov v. Radisson Hotels, Int'l Inc.*, 221 F. App'x 490 (8th Cir. 2007) (holding that the plaintiff failed to establish the casual nexus required by the MFSAA and the MPCFA where he alleged that statements on Radisson's website regarding room rates at a hotel were misleading, but had "never examined the Radisson website … prior to staying at the hotel"); *Friest v. Luxottica Grp. S.P.A.*, 2016 WL 7668453, at *7 (D.N.J. Dec. 16, 2016) (dismissing NJCFA claims where the plaintiff did not "sufficiently allege[] that the advertisement caused [his] purported loss," as the complaint did not "allege Plaintiff saw the advertisement before purchasing prescription glasses from Defendants"); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) ("To properly allege causation [under NYGBL § 349], a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased."); *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *22 (E.D.N.Y. July 21, 2010) ("To prevail on a claim under [NY]GBL § 350, a plaintiff must demonstrate reliance on defendants' false advertising."); *Cooper v. Bristol-Myers Squibb Co.*, 2009 WL 5206130, at *9 (D.N.J. Dec. 30, 2009) (dismissing an ADTPA claim because the plaintiff "fail[ed] to allege with

---

to act differently in any way").  The court agrees with the latter set of decisions, including the Eleventh Circuit's published decision in *Dolphin LLC*, which affirmed the district court's holding that the plaintiff's failure to allege that it "relied on the allegedly misleading statement in signing the contract … is fatal to [its] claim because an FDUTPA claim must allege that the deceptive act or unfair practice actually caused plaintiff's claimed damages."  *Dolphin, LLC v. WCI Communities, Inc.*, 2008 WL 6894512, at *5 (S.D. Fla. Feb. 20, 2008).

specificity the connection between Defendants' conduct and Plaintiff's resultant injury"); *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13 (Minn. 2001) (holding that, for purposes of MPCFA, MUTPA, and MFSAA claims brought pursuant to Minn. Stat. § 8.31, "[c]ausation is … a necessary element of an action to recover damages," and that "where … plaintiffs allege that their damages were caused by deceptive, misleading, or fraudulent statements … as a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the statues"). Accordingly, Plaintiffs' Anticaking claims under the ADTPA, CLRA, UCL, FDUTPA, NJCFA, NYGBL, MPCFA, MUTPA, and MFSAA are dismissed.

Finally, Defendants argue that the MDTPA claims fail because "injunctive relief is the sole remedy under th[is] statute," Doc. 168 at 26, and because Plaintiffs have "not plausibly alleged that they are likely to suffer future harm from [Defendants'] alleged misrepresentations," Doc. 162 at 26; *see* Doc. 168 at 17-18, 26. Defendants are right that injunctive relief is the sole remedy available under the MDTPA. *See Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1140 (D. Minn. 2016) ("[U]nder Minnesota law, the sole statutory remedy for [a plaintiff's MDTPA claim] is injunctive relief."); *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1070 (D. Minn. 2013) (same). And the "general rule" is "that consumer plaintiffs cannot seek injunctive relief once they are aware of a deceptive practice." *Forth v. Walgreen Co.*, 2018 WL 1235015, at *14 (N.D. Ill. Mar. 9, 2018) (distinguishing cases in which plaintiffs "plausibly allege that they will have no choice but to be injured in the future") (collecting cases); *cf. Johnson v. Wal-Mart Stores Inc.*, 2016 WL 3753663, at *3 (S.D. Ill. July 14, 2016) (denying injunctive relief under the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") because the "plaintiffs' awareness of the defendants' tendency to mislabel products means the plaintiffs can avoid future harm by

exercising consumer choice" and not purchasing the defendants' products). This is so because once a plaintiff is aware of the defendant's allegedly unlawful "sales practices, he is not likely to be harmed by the practices in the future." *Camasta*, 761 F.3d at 740-41 (denying injunctive relief under the IUDTPA); *see also Demedicis v. CVS Health Corp.*, 2017 WL 569157, at *2 (N.D. Ill. Feb. 13, 2017) (dismissing an IUDTPA claim where the plaintiff had not "alleged that he is likely to keep buying products from Defendants with the knowledge of their allegedly deceptive practices," and noting that because the plaintiff "is now aware that Defendants allegedly deceptively label products … [he] is not likely to be harmed in the future"); *Mednick v. Precor, Inc.*, 2016 WL 5390955, at *8-9 (N.D. Ill. Sept. 27, 2016) (collecting cases).

The amended complaints do not adequately allege that Plaintiffs will purchase Defendants' products again now that they are aware of Defendants' alleged misrepresentations. Doc. 225 at ¶ 130; Doc. 229 at ¶ 108. It follows that Plaintiffs may not seek injunctive relief, and because only injunctive relief is available under the MDTPA, their MDTPA Anticaking claims are dismissed.

* * *

In sum, Plaintiff's Anticaking claims under the ADTPA, CLRA, UCL, FDUTPA, MPCFA, MUTPA, MFSAA, MDTPA, NJCFA, and NYGBL are dismissed. The Anticaking claims under the CUTPA (against Kraft), ICFA (against Kraft and Albertsons/SuperValu), and MCPA (against Kraft) may proceed.

## C.     Express Warranty Claims

Like the statutory consumer fraud claims, the express warranty claims allege that although the products' ingredient lists state that cellulose was added to prevent caking, the

amount of cellulose exceeded what was necessary for anticaking purposes. Doc. 225 at ¶¶ 46, 50; Doc. 228 at ¶¶ 40, 44; Doc. 229 at ¶ 46.

Kraft contends that Plaintiffs cannot bring an express warranty claim on behalf of a nationwide class given the "material and significant differences in express warranty law across the fifty states." Doc. 162 at 30-31. This contention is premature and more appropriately addressed during class certification proceedings. True enough, Rule 23(c)(1)(A) provides that the court may reject a plaintiff's attempt to represent a class as soon as it becomes obvious that she will be unable to satisfy Rule 23. *See* Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues … as a class representative, the court must determine by order whether to certify the action as a class action."). In limited circumstances, that time can arise at the pleading stage. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829-30 (N.D. Ill. 2013).

But Seventh Circuit precedent teaches that certifying multistate or nationwide classes is not categorically prohibited. *See Martin v. Reid*, 818 F.3d 302, 308 (7th Cir. 2016) (noting, in a state law warranty and consumer fraud case, that Seventh Circuit precedent should not be understood to hold that "nationwide classes are impermissible as a matter of law"); *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010) ("While consumer fraud class actions present problems that courts must carefully consider before granting certification, there is not and should not be a rule that they never can be certified."). Indeed, the Seventh Circuit has upheld decisions to certify a nationwide class so long as "the central questions in the litigation are the same for all class members." *Pella Corp.*, 606 F.3d at 394. Accordingly, class certification analysis is necessarily contextual, and the context—including whether and how to create subclasses—is better explored in this case under Rule 23, on a developed record, than under Rule 12. *See id.* at

396; *Alea v. Wilson Sporting Goods Co.*, 2017 WL 5152344, at *7 (N.D. Ill. Nov. 7, 2017);

*Kostovetsky v. Ambit Energy Holdings, LLC*, 2016 WL 105980, at *8 (N.D. Ill. Jan. 8, 2016).

Albertsons/SuperValu and Wal-Mart/ICCO argue that the express warranty claims should

be dismissed because Plaintiffs failed to provide them with pre-suit notice.  Doc. 157 at 27-28;

Doc. 168 at 20-21.  Yet the Albertsons/SuperValu and Wal-Mart/ICCO complaints allege that

"[a]ll conditions precedent [of the express warranty claims] have occurred or been performed,"

Doc. 227 at ¶ 42; Doc. 229 at ¶ 45, which suffices at this stage to satisfy Plaintiffs' obligation to

allege that they met the notice requirement.  Where, as here, notice is a "condition precedent" to

asserting an express warranty claim, a plaintiff may rely on such general allegations.  *See* Fed. R.

Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions

precedent have occurred or been performed."); *Kmart Corp. v. Footstar, Inc.*, 2010 WL

1541296, at *4-5 (N.D. Ill. Apr. 14, 2010) (noting that courts "have allowed parties seeking

insurance coverage to plead conditions precedent" by alleging simply that "all of the conditions

precedent to coverage provided in the Policy have been complied with"); *Smith v. Apple, Inc.*,

2009 WL 3958096, at *1 (N.D. Ala. Nov. 4, 2009) (treating notice as a condition precedent for

breach of warranty); *Collins v. Pfizer*, 2009 WL 126913, at *2 (S.D. Ind. Jan. 20, 2009) (same,

"[u]nless some exception applies").

Kraft and Albertsons/SuperValu contend that the Alabama, Connecticut, Florida, Illinois,

and Michigan express warranty claims should be dismissed because Plaintiffs "lack vertical

privity of contract with Defendants."  Doc. 157 at 30-32; *see also* Doc. 162 at 32-33.  Plaintiffs

implicitly concede that lack of privity can defeat an express warranty claim, but argue that the

privity requirement is waived when: (1) the plaintiff relies on a manufacturer's written

representations; (2) the plaintiff is an "intended beneficiary of the contract for sale"; or (3) the

21

plaintiff purchased a product from an agent of the manufacturer. Doc. 185 at 47-48. Plaintiffs are correct as to Alabama, Florida, and Illinois, but not as to the other States.

Where, as here, a plaintiff would not expect a retailer to provide her with "detailed information" about a product and the warranty is reflected in the manufacturer's advertisements, Florida law does not require the plaintiff to establish privity between herself and the manufacturer. *See Alea*, 2017 WL 5152344, at *4-5 (analyzing Florida law in detail). Alabama similarly permits express warranty claims where a manufacturer "intended to extend the express warranty [at issue] directly to the ultimate purchaser," which is alleged to be the case here. *Johnson v. Anderson Ford, Inc.*, 686 So.2d 224, 228-29 (Ala. 1996). (Albertsons/SuperValu argue that this exception does not apply because Plaintiffs do not allege that SuperValu was a remote manufacturer of the Essential Everyday 100% Grated Parmesan Cheese. Doc. 192 at 13. However, it is reasonable to conclude, when drawing all reasonable inferences in Plaintiffs' favor, that SuperValu falls within this exception given the complaints' allegation that SuperValu is "the registered owner of the 'Essential Everyday' trademark and distributes [these] products" to various stores. Doc. 227 at ¶ 15.)

These exceptions to the privity requirement do not apply under Connecticut law. Plaintiffs contend that Connecticut will relax the privity requirement where a plaintiff "relies on a manufacturer's written representations," Doc. 185 at 46-47, but this exception applies only where the plaintiff suffers a physical injury—not where, as here, only economic injury is alleged. *See Hamon v. Digliani*, 174 A.2d 294, 297 (Conn. 1961) (holding that the plaintiff could maintain an express warranty claim against a manufacturer arising from its advertising where she was "severely burned" after the manufacturer's detergent spilled on her); *Fraiser v. Stanley Black & Decker, Inc.*, 109 F. Supp. 3d 498, 506-07 (D. Conn. 2015) (noting that under

22

Connecticut law, "the privity requirement is relaxed where injured parties seek warranty recovery for personal injury damages—but parties seeking to state a claim for breach of express warranty for economic losses … still have to establish privity"); *Cavanaugh v. Subaru of Am., Inc.*, 2017 WL 2293124, at *3 (Conn. Super. Ct. May 4, 2017) (same). Plaintiffs' fallback position, that Connecticut "recognizes an exception to the privity requirement where other avenues of recovery are foreclosed," Doc. 185 at 47 n.19, is inapplicable here, as the Connecticut statutory consumer protection and unjust enrichment claims have not been dismissed.

Plaintiffs also contend that Michigan creates an exception where the consumer purchases a product from the manufacturer's agent. Doc. 185 at 48. Yet Plaintiffs plead no facts suggesting an agency relationship between Kraft—the only defendant whose products Plaintiffs purchased in Michigan—and the "retail locations in Plymouth, Michigan" where they acquired Kraft's products. Doc. 225 at ¶ 17.

Finally, Plaintiffs contend that Illinois will relax its privity requirements when a plaintiff relies on a manufacturer's written representations, is the intended beneficiary of the sale, or purchases a product from an agent of the manufacturer. Doc. 185 at 46-48. The first two exceptions do not apply here. As to the first, Plaintiffs fail to allege that they saw, let alone relied on, Defendants' anticaking representations. As to the second, while it is true that the Illinois privity requirement is relaxed when a manufacturer "knows the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements," the exception applies only where the manufacturer is aware of the individual customer's identity—a situation not alleged here. *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, 2005 WL 782698, at *12-13 (N.D. Ill. Apr. 6, 2005) (holding that the exception applied where a remote manufacturer delivered goods specifically to

meet the plaintiff's requirements); *see also Schwebe v. AGC Flat Glass N. Am., Inc.*, 2013 WL 2151551, at *4 (N.D. Ill. May 16, 2013) ("This Court reads this privity exception narrowly to apply to cases where the component manufacturer knows the identity of the manufacturer's customer."); *Walsh v. Ford Motor Co.*, 588 F. Supp. 1513, 1529 (D.D.C. 1985) (holding that the exception did not apply where there had "been neither direct dealing by Ford with the ultimate consumer nor were the vehicles manufactured to the requirements of the ultimate user").

As to the third exception to the privity requirement under Illinois law, Defendants do not dispute the existence of an agency exception. Accordingly, the Illinois express warranty claim against Albertsons survives, as Plaintiffs adequately allege the existence of an agency relationship between the "various Jewel Osco retail store locations" at which the Illinois plaintiffs bought Essential Everyday "100% Grated Parmesan Cheese" and Albertsons, which "operates" stores under the "Jewel-Osco" brand. Doc. 227 at ¶¶ 9-10, 12; *see Johnke v. Espinal-Quiroz*, 2016 WL 454333, at *9 (N.D. Ill. Feb. 5, 2016) ("Ordinarily, the question of whether an agency relationship existed is a question of fact that is not properly resolved on a motion to dismiss."). The Illinois express warranty claims against Kraft and SuperValu, by contrast, are dismissed, as Plaintiffs fail to plead any facts suggesting the existence of an agency relationship between those defendants and the locations in Illinois where the plaintiffs acquired the products. Doc. 225 at ¶¶ 10 ("local Jewel grocery store"), 14 ("local Costco, Jewel Osco, Mariano's, Meijer, and Target"); Doc. 227 at ¶¶ 9-10 ("Jewel Osco retail store").

Finally, as Wal-Mart notes, Plaintiffs cannot assert a New York express warranty claim because such a claim requires "proof of reliance" and Plaintiffs make clear that they never actually saw the Anticaking statements. Doc. 168 at 23-24; *see In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 410 (S.D.N.Y. 2015); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F.

Supp. 3d 467, 482 (S.D.N.Y. Mar. 27, 2014) (noting that to "state a claim for breach of express warranty under New York law, a plaintiff must allege … the buyer's reliance on th[e] warranty as a basis for the contract with the immediate seller"); *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *11 (S.D.N.Y. Aug. 5, 2010). Likewise, Plaintiffs do not allege that they relied on Kraft's Anticaking statements, so the New York express warranty claim against Kraft is dismissed as well.

\* \* \*

In sum, the Connecticut, Michigan, and New York express warranty claims are dismissed, as are the Illinois express warranty claims against Kraft and SuperValu. The express warranty claims under Alabama law (against Kraft, SuperValu, and Wal-Mart/ICCO), California law (against Kraft and Wal-Mart/ICCO), Florida law (against Kraft and Wal-Mart/ICCO), Illinois law (against Albertsons only), Minnesota law (against Kraft and Wal-Mart/ICCO), and New Jersey law (against Wal-Mart/ICCO) may proceed.

### D. Implied Warranty Claims

Plaintiffs allege that Albertsons/SuperValu, Kraft, and Wal-Mart/ICCO breached an implied warranty of merchantability because their products "do not pass without objection in the trade and are not of … average quality within the contract description because they contain cellulose powder in excessive quantities." Doc. 225 at ¶ 67; Doc. 227 at ¶ 59; Doc. 229 at ¶ 62. Defendants' arguments regarding pre-suit notice and multistate classes, Doc. 157 at 27-28; Doc. 162 at 32; Doc. 168 at 20-21, fail for the reasons set forth above in discussing the express warranty claims.

Kraft and Wal-Mart/ICCO contend that the implied warranty claims fail because Plaintiffs do not allege that their products were "inedible" or lacked "even the most basic degree of fitness of ordinary use." Doc. 162 at 33; *see also* Doc. 168 at 22-23. Yet the statutes

25

governing implied warranty claims in the States (Alabama, California, Connecticut, Florida, Illinois, Michigan, Minnesota, New Jersey, and New York) where Plaintiffs purchased the Albertsons, Kraft, and Wal-Mart/ICCO products require not only that goods be fit for ordinary use, but also that they "[c]onform to the promises or affirmations of fact made on the container or label if any." Ala. Code. § 7-2-314(2)(f); *see also* Cal. Com. Code § 2314(2)(f); Conn. Gen. Stat. § 42a-2-314(2)(f); Fla. Stat. Ann. § 672.314(2)(f); 810 ILCS 5/2-314(2)(f); Mich. Comp. Laws § 440.2314(2)(f); Minn. Stat. Ann. § 336.2-314(2)(f); N.J. Stat. Ann. § 12A:2-314(2)(f); N.Y. U.C.C. Law § 2-314(2)(f). As their text suggests, those statutes permit a plaintiff alleging solely a misrepresentation on a product's label to pursue an implied warranty claim. *See Perez v. Monster Inc.*, 149 F. Supp. 3d 1176, 1186 (N.D. Cal. 2016) (California law) ("Here … Mr. Perez alleges a false promise or affirmation of fact made on the container or label [of the product]. Accordingly, the Court shall not dismiss [his] state law implied warranty claim."); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011) (same under California law, where the plaintiff alleged that the manufacturer of Nutella falsely stated that it was "healthy" or "nutritious" breakfast food, even though the product was otherwise "fit for its ordinary purpose of consumption"); *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 2017 WL 2646286, at *12-13 (E.D. Va. June 20, 2017) (holding that implied warranty claims under California, Florida, Illinois, and New York law, in which the plaintiff alleged that the defendant's products did not conform to the promises or affirmations made on the label, survived summary judgment); *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1111-12 (C.D. Cal. 2012) (holding that New Jersey implied warranty claims could proceed where the plaintiffs "alleged that Wesson Oils do not conform to the representation on their labels that they are '100% Natural'").

Albertsons/SuperValu argue that the Alabama and Illinois implied warranty claims should be dismissed for lack of privity. Doc. 157 at 30-32. The Alabama implied warranty claims are dismissed because Plaintiffs do not cite, and the court has not found, any exceptions to the general rule that, "in cases of strictly economic harm," the absence of privity "is fatal to an implied warranty claim" under Alabama law. *Johnson v. Anderson Ford, Inc.*, 686 So.2d 224, 228 (Ala. 1996). The Illinois implied warranty claims survive only as to Albertsons. As explained above, Plaintiffs adequately allege the existence of an agency relationship between Albertsons and the retailers where Plaintiffs purchased the Albertsons product, but not between SuperValu and those retailers.

Kraft suggests in passing that the California, Connecticut, and Michigan implied warranty claims against it fail for lack of privity. Doc. 162 at 34 n.19. Because Kraft does not cite any case law in support, it forfeits the argument for purposes of this motion. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("[P]erfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). (Kraft cannot benefit from Albertsons/SuperValu's privity arguments under Alabama or Illinois law because Plaintiffs do not bring Alabama or Illinois implied warranty claims against Kraft. Doc. 225 at 16.)

Finally, Wal-Mart/ICCO argue that the New York implied warranty claims should be dismissed because Plaintiffs do not allege reliance. Doc. 168 at 23-24 (Wal-Mart); Doc. 164 at 28 (ICCO adopting Wal-Mart's brief). However, Wal-Mart/ICCO cite no authority for the proposition that reliance is an element of a New York implied warranty claim, and thus forfeit

the argument for purposes of this motion. *See G & S Holdings*, 697 F.3d at 538; *Judge*, 612 F.3d at 557.

* * *

In sum, Plaintiffs' Alabama and Illinois implied warranty claims against SuperValu are dismissed, while the other implied warranty claims may proceed.

### E.     Unjust Enrichment Claims

Finally, Plaintiffs bring unjust enrichment claims against Albertsons/SuperValu, Kraft, and Wal-Mart/ICCO. Doc. 225 at ¶¶ 53-59; Doc. 227 at ¶¶ 46-52; Doc. 229 at ¶¶ 49-55. Defendants' arguments regarding the propriety of nationwide classes, Doc. 162 at 28, fail for the reasons set forth above in discussing the express warranty claims.

Defendants contend that the unjust enrichment claims should be dismissed because the laws of Alabama, California, Connecticut, Florida, Minnesota, New Jersey, and New York do not permit such claims if the plaintiff has an "adequate remedy at law." Doc. 157 at 33-34; Doc. 162 at 28-29; Doc. 168 at 28, 30, 32. True enough, some courts dismiss unjust enrichment claims where a plaintiff also pursues tort, contract, or state consumer protection claims based on the same allegedly wrongful conduct. *See, e.g.*, *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *7-8 (S.D. Fla. Dec. 5, 2013); *Arena Dev. Grp., LLC v. Naegele Commc'ns, Inc.*, 2008 WL 1924179, at *5 (D. Minn. Apr. 29, 2008). Yet there is an equally robust line of cases holding that because Rule 8(d)(2) permits parties to "set out two or more statements of a claim or defense alternatively or hypothetically," it would be premature to dismiss unjust enrichment claims at the pleading stage simply because the plaintiff also pursues claims at law. *See, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015) (reinterpreting an unjust enrichment claim as a quasi-contract claim, and holding that the fact that it might be "duplicative of or superfluous to [the plaintiff's] other claims … was not grounds for dismissal");

*McMillan v. Lowe's Home Ctrs., LLC*, 2016 WL 232319, at *7 (E.D. Cal. Jan. 20, 2016) (declining to dismiss an unjust enrichment claim "on the ground that it is duplicative of relief available under plaintiff's false advertising and consumer fraud claims"); *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 963 (N.D. Ill. 2016) (same); *Gate Techs., LLC v. Delphix Capital Mkts., LLC*, 2013 WL 3455484, at *5-6 (S.D.N.Y. July 9, 2013) (same); *Talon Indus., LLC v. Rolled Metal Prods., Inc.*, 2016 WL 11325768, at *2 (D.N.J. Apr. 12, 2016) (same); *PNY Techs., Inc. v. Salhi*, 2013 WL 4039030, at *7 (D.N.J. Aug. 5, 2013) (same); *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1349-50 (S.D. Fla. 2014) (same); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at *36 (N.D. Ill. June 29, 2015) (observing that dismissing unjust enrichment claims as duplicative of other claims "is not a widely-accepted theory for dismissal at the motion-to-dismiss stage"). The court agrees with the second line of cases and thus declines to dismiss the unjust enrichment claims at the pleading stage on the ground that they are duplicative of the warranty or consumer protection claims.

Albertsons/SuperValu and Kraft contend that Plaintiffs' Alabama and Illinois unjust enrichment claims "rise and fall" with the Alabama and Illinois warranty and state consumer protection claims because the underlying allegations rest on the same underlying conduct. Doc. 157 at 33; Doc. 162 at 30. In *Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011), the Seventh Circuit held that because the "improper conduct" underlying an ICFA claim and an unjust enrichment claim "was insufficient to support" the ICFA claim, it was also "insufficient to establish unjust enrichment." *Id.* at 518. There is no reason to run this issue to ground, however; because the Alabama express warranty claims against SuperValu and Kraft, the ICFA claims against Albertsons/SuperValu and Kraft, and the Illinois express and implied warranty claims

against Albertsons survive dismissal, there remain several claims on which to ground the Alabama and Illinois unjust enrichment claims.

Finally, Kraft argues that the Michigan unjust enrichment claims fail because Michigan law requires a plaintiff to show that he "directly conferred a benefit on the defendant." Doc. 162 at 29 (quoting *Storey v. Attends Healthcare Prods., Inc.*, 2016 WL 3125210, at *12 (June 3, 2016)) (emphasis omitted). Courts have split on whether Michigan unjust enrichment law requires that a plaintiff confer a direct benefit on a defendant, or whether a benefit "may be unjustly obtained by a defendant through an intermediary." *Compare Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 617-18 (E.D. Mich. 2017) ("To state a claim for unjust enrichment, Michigan law requires a direct benefit or some sort of direct interaction between Plaintiffs and Whirlpool."), *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 426-28 (S.D.N.Y. 2017), *and Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, 2015 WL 4755335, at *29 (N.D. Cal. Aug. 11, 2015), *with State Farm Mut. Auto. Ins. Co. v. Vital Cmty. Care, P.C.*, 2018 WL 2194019, at *8 (E.D. Mich. May 14, 2018) (holding that "individual participants in a fraud scheme who benefitted indirectly can be liable under an unjust enrichment theory"), *In re Opana Er Antritrust Litig.*, 2016 WL 4245516, at *2-3 (N.D. Ill. Aug. 11, 2016) (holding that the critical inquiry under Michigan law is whether the plaintiff's detriment and the defendant's benefit are related), *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2015 WL 5458570, at *18 (D. Mass. Sept. 16, 2015) (noting that courts have held that Michigan unjust enrichment law does "not necessarily require a plaintiff to plead a conferral of a direct benefit"), *and Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 670 (E.D. Mich. 2008) ("Numerous cases have held that a benefit may be unjustly obtained by a defendant through an intermediary, especially if there is some wrongdoing on the defendant's part."). The court

believes that the latter cases have the better of the argument, and accordingly will allow the Michigan unjust enrichment claims to proceed.

\* \* \*

In sum, other than those dismissed under Rule 9(b), the Anticaking unjust enrichment claims may proceed.

### Conclusion

The 100% claims are dismissed in their entirety, as are all Anticaking claims against Target/ICCO and all Anticaking claims under Alabama law against Albertsons. The Anticaking claims under the ADTPA, CLRA, UCL, FDUTPA, MUTPA, MDTPA, MFSAA, MPCFA, NJCFA, and NYGBL are dismissed as well. The Anticaking claims under Connecticut, Michigan, and New York express warranty law are dismissed, as are the Anticaking claims against Kraft and SuperValu under Illinois express warranty law. The Anticaking claims against SuperValu under Alabama and Illinois implied warranty law are also dismissed.

Plaintiffs may proceed on their Anticaking claims against Kraft under the CUTPA, ICFA, and MCFA, and against Albertsons/SuperValu under the ICFA. They may proceed with their Anticaking express warranty claims against Kraft under Alabama, California, Florida, and Minnesota law; against Albertsons under Illinois law; against SuperValu under Alabama law; and against Wal-Mart/ICCO under Alabama, California, Florida, Minnesota, and New Jersey law. They may proceed with their Anticaking implied warranty claims against Kraft under California, Connecticut, Michigan, and Minnesota law; against Albertsons under Illinois law; and against Wal-Mart/ICCO under Alabama, California, Florida, New Jersey, New York, and Minnesota law. Finally, Plaintiffs may proceed with their Anticaking unjust enrichment claims against Kraft, Albertsons/SuperValu, and Wal-Mart/ICCO, except for the claims against

Albertsons under Alabama law.  No Anticaking claims may proceed against Publix and Target, which are dismissed from this litigation.

November 1, 2018

_____
United States District Judge