**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DISTRICT**

| | |
|---|---|
| IN RE: 100% GRATED PARMESAN CHEESE MARKETING AND SALES PRACTICES LITIGATION | Case No. 1:16-cv-05802<br>MDL No. 2705<br><br>The Hon. Gary S. Feinerman |
| *This Document Relates to All Cases on The Kraft Heinz Company Track* | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KRAFT HEINZ**
**COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**JENNER & BLOCK LLP**

Dean N. Panos (Ill. Bar No. 6203600)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350

*-and-*

Kenneth K. Lee (admitted *pro hac vice*)
klee@jenner.com
Alexander M. Smith (admitted *pro hac vice*)
asmith@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Tel.: (213) 239-5100

*Attorneys for Defendant*
The Kraft Heinz Company

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................... 3

      I.     Kraft Heinz Uses Cellulose in Its Grated Parmesan Cheese to Prevent Caking ............................................................................................ 3

      II.    Plaintiffs Challenge the Statement "100% Grated Parmesan Cheese" as Misleading ..................................................................................... 4

      III.   The Court Permits Some of Plaintiffs' Claims to Proceed on an "Anticaking" Theory .............................................................................. 4

ARGUMENT ..................................................................................................................... 5

      I.     Plaintiffs' "Anticaking" Theory Does Not Establish a Plausible Claim of Deception Under the Connecticut, Illinois, or Michigan Consumer Fraud Statutes ................................................................. 6

           A.    Plaintiffs Cannot Plausibly Allege Reliance on the "Anticaking" Statement ..................................................... 6

           B.    The Challenged "Anticaking" Statement Is Accurate and Not Misleading. ............................................................. 8

      II.    Plaintiffs' Warranty Claims Fail for Lack of Reliance and/or Privity ........................................................................................... 10

      III.   Plaintiffs Cannot State an Unjust Enrichment Claim. ................................. 12

      IV.   Plaintiffs Lack Article III Standing to Proceed Under Their "Anticaking" Theory ............................................................................ 13

CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrahams v. Young & Rubicam, Inc.*,
    692 A.2d 709 (Conn. 1997) ...................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................5, 6

*Ashgari v. Volkswagen Grp. of Am., Inc.*,
    42 F. Supp. 3d 1306 (C.D. Cal. 2013) ...................................................................11

*Baye v. HBI Branded Apparel Enters.*,
    No. 12-12869, 2013 WL 6546815 (E.D. Mich. Dec. 13, 2013) ...........................7

*Byrnes v. Small*,
    142 F. Supp. 3d 1262 (M.D. Fla. 2015)..................................................................11

*Cleary v. Philip Morris Inc.*,
    656 F.3d 511 (7th Cir. 2011) ........................................................................12, 13

*County of Cook v. HSBC N. Am. Holdings Inc.*,
    136 F. Supp. 3d 952 (N.D. Ill. 2015) ...................................................................14

*Gill v. City of Milwaukee*,
    850 F.3d 335 (7th Cir. 2017) ................................................................................5

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...............................................................11

*Haywood v. Massage Envy Franchising, LLC*,
    887 F.3d 329 (7th Cir. 2018) ................................................................................7

*Henderson v. Gruma Corp.*,
    No. 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) .................................9

*Hendricks v. Callahan*,
    972 F.2d 190 (8th Cir. 1992) ...............................................................................11

*Hendricks v. StarKist Co.*,
    30 F. Supp. 3d 917 (N.D. Cal. 2014) ...................................................................11

*Hobco, Inc. v. Tallahassee Assocs.*,
    807 F. 2d 1529 (11th Cir. 1987) ..........................................................................11

*Ibarrola v. Kind, LLC*,
  83 F. Supp. 3d 751 (N.D. Ill. 2015) ........................................................................8

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
  275 F. Supp. 3d 910 (N.D. Ill. 2017) ..............................................................4, 13

*In re iPhone Application Litig.*,
  6 F. Supp. 3d 1004 (N.D. Cal. 2013) ....................................................................15

*In re OnStar Contract Litig.*,
  278 F.R.D. 352 (E.D. Mich. 2011) ..........................................................................7

*Kahn v. Volkswagen of Am.*,
  No. 07-05004090, 2008 WL 590469 (Conn. Super. Ct. Feb. 13, 2008).................10

*Larobina v. Wells Fargo Bank, N.A.*,
  No. 10-1279, 2012 WL 1032953 (D. Conn. Mar. 27, 2012) ....................................8

*Manchouck v. Mondelēz Int'l Inc.*,
  No. 13-2148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ..................................9

*Martin v. Living Essentials, LLC*,
  160 F. Supp. 3d 1042 (N.D. Ill. 2016) ....................................................................6

*Mayhall v. A.H. Pond Co.*,
  341 N.W.2d 268 (Mich. Ct. App. 1983) ..................................................................7

*Midland Loan Fin. Co. v. Madsen*,
  14 N.W. 2d 475 (Minn. 1944)................................................................................11

*Muir v. Playtex Prods., LLC*,
  983 F. Supp. 2d 980 (N.D. Ill. 2013) ......................................................................7

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) ..................................................................................7

*Payton v. County of Kane*,
  308 F.3d 673 (7th Cir. 2002) ..........................................................................14, 15

*Phillips v. Apple Inc.*,
  No. 15-4879, 2016 WL 1579693 (N.D. Cal. Apr. 19, 2016)............................14, 15

*Red v. Kraft Foods, Inc.*,
  No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)....................................9

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ..................................................................11

*Shannon v. Boise Cascade Co.*,
  805 N.E.2d 213 (Ill. 2004) ........................................................................7

*Siegel v. Shell Oil Co.*,
  656 F. Supp. 2d 825 (N.D. Ill. 2009) ........................................................7

*Smith v. Wells Fargo Bank, N.A.*,
  158 F. Supp. 3d 91 (D. Conn. 2016) ..........................................................7

*Spector v. Mondelēz Int'l, Inc.*,
  178 F. Supp. 3d 657 (N.D. Ill. 2016) ........................................................5

*Stevenson Lumber Co.-Suffield v. Chase Assocs., Inc.*,
  932 A.2d 401 (Conn. 2007) ........................................................................7

*Sterk v. Redbox Automated Retail, LLC, Inc.*,
  770 F.3d 618 (7th Cir. 2014) ....................................................................14

*Stickrath v. Globalstar, Inc.*,
  527 F. Supp. 2d 992 (N.D. Cal. 2007) ....................................................14

*TD Props., LLC v. VP Bldgs., Inc.*,
  602 F. Supp. 2d 351 (D. Conn. 2009) ......................................................11

*Vandermale v. Harvey Auto., Inc.*,
  No. 253100, 2005 WL 1459610 (Mich. Ct. App. June 21, 2005) .............7

*Walker v. People's United Bank*,
  305 F. Supp. 3d 365 (D. Conn. 2018) ........................................................7

*Wiegel v. Stork Craft Mfg., Inc.*,
  891 F. Supp. 2d 941 (N.D. Ill. 2012) ......................................................14

*Wiegel v. Stork Craft Mfg., Inc.*,
  946 F. Supp. 2d 804 (N.D. Ill 2013) ..........................................................7

*Zine v. Chrysler Corp.*,
  236 Mich. App. 261 (1999)..........................................................................9

## STATUTES

Connecticut Unfair Trade Practices Act ........................................... *passim*

Illinois Consumer Fraud Act................................................................ *passim*

Michigan Consumer Protection Act.................................................... *passim*

**OTHER AUTHORITIES**

21 C.F.R. § 184.1061(b) ...............................................................................................10

21 C.F.R. § 133.146(c)...................................................................................................3

51 Fed. Reg. 30210-01............................................................................................3, 9

Fed. R. Civ. P. 12(c) ......................................................................................................5

## INTRODUCTION

This litigation originally began as a challenge against the phrase "100% Grated Parmesan Cheese" found on Kraft Grated Parmesan Cheese and other similar cheese products. Plaintiffs argued that the phrase falsely indicated that Kraft Grated Parmesan Cheese contains only grated cheese and no other ingredients whatsoever, but this Court has twice rejected that theory as implausible. Plaintiffs, however, were allowed — at least under the laws of a small handful of states — to pursue an alternative "anticaking" theory of deception based on a brief snippet in their latest complaint. In an amended complaint spanning nearly 200 paragraphs, Plaintiffs suggested in a conclusory and cursory allegation that the phrase "cellulose powder added to prevent caking" found in the *ingredient line* is deceptive because the product contains more cellulose than is necessary to achieve this anticaking purpose.

This Court pointed out the internal inconsistency in Plaintiffs' half-hearted attempt to plead this alternative theory of deception. As this Court explained in its Order on Kraft Heinz's motion to dismiss, Plaintiffs' allegation that they relied *solely* on the "100% Grated Parmesan Cheese" statement in buying the product precludes them from now alleging that they were deceived by the "added to prevent caking" statement found in the ingredient line. As the Court put it, the "necessary implication is that Plaintiffs never consulted, let alone relied upon, the ingredient labels' assertion that cellulose was added to prevent caking [in challenging the '100% Grated Parmesan Cheese' label]." ECF No. 297 ("Order"). The Court held that this "dooms Plaintiffs' claims" under the majority of the consumer fraud statutes at issue, "all of which require some form of causal connection between the alleged misrepresentation and the plaintiff's alleged injury." ECF No. 297 ("Order") at 16. Accordingly, this Court rejected this alternative "anticaking" theory of deception under most of the state laws asserted in the amended complaint.

This Court, however, indicated that Plaintiffs could pursue this "anticaking" claim under the consumer protection statutes of Connecticut, Illinois, and Michigan. But those three statutes are no different from the other (dismissed) state statutes, as they similarly require Plaintiffs to identify a causal connection between Kraft Heinz's alleged misrepresentation and their alleged injuries. Nowhere in the amended complaint do Plaintiffs allege that they read or relied on the challenged "anticaking" statement. Having alleged that they relied solely on the phrase "100% Grated Parmesan Cheese" and did *not* look at the ingredient line, Plaintiffs cannot now plausibly allege that they saw — or were deceived by — the "anticaking" statement. In short, this Court's prior order dismissing the bulk of the "anticaking" claims mandates the dismissal of Plaintiffs' identical consumer fraud claims under Connecticut, Illinois, and Michigan law.

The "anticaking" theory fails for another independent reason — Kraft Heinz's "anticaking" representation is factually accurate. Plaintiffs do not dispute that powdered cellulose prevents caking. Further, permitting Plaintiffs' "anticaking" theory to proceed would open up a Pandora's box of class action lawsuits challenging the ingredient line, even when the ingredient was truthfully disclosed, on the theory that the amount of ingredient was more than necessary. That would usurp the FDA's regulatory role and compel courts to second-guess how much is too much (or too little) for a flavoring, coloring, preservative, or other ingredients commonly found in food products. Ironically, Plaintiffs would have no claim here if Kraft Heinz had been *less transparent* and instead listed "cellulose powder" (instead of "cellulose powder added to prevent caking").

Similarly, Plaintiffs' lack of reliance on the ingredient line, among other things, dooms Plaintiffs' remaining breach-of-warranty claims under California, Connecticut, Florida, and Minnesota law. Florida and Minnesota law require a plaintiff to establish that she relied on the seller's alleged warranty; Connecticut law requires vertical privity with the defendant; and

California law requires either vertical privity or reliance. Here, Plaintiffs cannot establish either element: they did not purchase the challenged products directly from Kraft Heinz, and they cannot plausibly allege that they relied on Kraft Heinz's supposed "warranty."

Finally, Plaintiffs lack standing to pursue their "anticaking" theory. The challenged conduct here is not the use of cellulose powder; rather, it is Kraft Heinz's representation that the cellulose powder is added "to prevent caking." Plaintiffs cannot establish that their injuries are traceable to that representation, as their central theory of deception — that they believed Kraft Heinz 100% Grated Parmesan Cheese contained no non-cheese ingredients — precludes any plausible allegation that they saw or relied on the "anticaking" statement in the ingredient line.

## BACKGROUND

### I. Kraft Heinz Uses Cellulose in Its Grated Parmesan Cheese to Prevent Caking.

As the Court is aware, the FDA's standard of identity for "grated cheese" expressly allows the use of anticaking agents. 21 C.F.R. § 133.146(c). The FDA has explained that the use of anticaking agents is often "necessary" to "provide consumers with grated cheese products having the characteristic flavor and texture of freshly grated cheese" and that "the use of safe and suitable anticaking agents . . . presents no safety concerns[] and is clearly advantageous to consumers." *Grated Cheeses; Amendment of the Standard of Identity*, 51 Fed. Reg. 30210-01 (Aug. 25, 1986). Indeed, in defining "grated cheese," the FDA explicitly *rejected* a comment that argued "consumers expect grated cheeses to be pure and not to contain ingredients such as cellulose." *Id.*

Consistent with the FDA's guidance, Kraft Heinz's grated parmesan cheese products include cellulose powder, a fiber naturally found in fruits and vegetables, to prevent clumping and caking. The ingredient line on the back of each cylindrical package states in small print that it contains "cellulose powder to prevent caking." *See* ECF No. 162-1 at ¶¶ 2-4.

**II.**     <u>**Plaintiffs Challenge the Statement "100% Grated Parmesan Cheese" as Misleading.**</u>

Despite the fact that the FDA has approved the use of cellulose in grated cheese — and that the ingredient line discloses the presence of cellulose — over two dozen plaintiffs sued Kraft Heinz in early 2016, alleging that the statement "100% Grated Parmesan Cheese" misled them into believing that Kraft Grated Parmesan Cheese contained no non-cheese ingredients whatsoever. Those lawsuits were combined into a single proceeding and transferred to this Court, where Plaintiffs filed a single consolidated complaint against Kraft Heinz. ECF No. 120.

On August 24, 2017, this Court issued a Memorandum Opinion and Order in which it dismissed all of Plaintiffs' claims against Kraft Heinz. The Court understood Plaintiffs to allege that they were misled because they understood the phrase "100% Grated Parmesan Cheese" to mean that the products are "100% cheese and nothing else." *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 923 (N.D. Ill. 2017). The Court held that this statement was "not deceptive," as it did not constitute an affirmative misrepresentation and any ambiguity could be resolved by examining the ingredient line. *Id.* In their amended complaint, Plaintiffs attempted to bolster this theory by referencing expert reports submitted by two linguists, a consumer survey, and language from a Kraft Heinz patent. ECF No. 225 ("Am. Compl.") ¶¶ 26-30 & Ex. A-B. The Court nevertheless held that "[t]hose new allegations do not save the 100% claims" and dismissed any claims premised on this theory with prejudice. Order at 5.

**III.**     <u>**The Court Permits Some of Plaintiffs' Claims to Proceed on an "Anticaking" Theory.**</u>

Although the Court held that the statement "100% Grated Parmesan Cheese" was not deceptive, it nonetheless permitted some claims under certain state laws to proceed on the theory that Kraft Heinz's statement in the ingredient line that cellulose is added "to prevent caking" is

"false or misleading because the products contain more cellulose than is necessary to accomplish this 'anticaking' purpose." Order at 10.

The Court addressed Wal-Mart's argument that Plaintiffs could not state a consumer fraud claim under the laws of Alabama, California, Florida, New Jersey, New York, or Minnesota — the statutes under which Plaintiffs sued Wal-Mart — because "they do not allege that they were injured as a result of any conduct by Wal-Mart." *Id.* at 15-16. The Court held Plaintiffs could not state a consumer fraud claim under these statutes, as Plaintiffs' allegation that they "purchased the products believing them to be '100% Grated Parmesan Cheese'" necessarily forecloses them from alleging that they "consulted, let alone relied upon, the ingredient labels' assertion that cellulose was added to prevent caking." *Id.* at 16. The Court nonetheless declined to dismiss Plaintiffs' claims against Kraft Heinz under the Connecticut Unfair Trade Practices Act ("CUTPA"), Illinois Consumer Fraud Act ("ICFA"), and Michigan Consumer Protection Act ("MCPA"). *Id.* at 19. The Court also declined to dismiss Plaintiffs' breach of express warranty claims under Alabama, California, Florida, and Minnesota law, their breach of implied warranty claims under California, Connecticut, Michigan, and Minnesota law, and their claim for unjust enrichment. *Id.* at 31.

## ARGUMENT

"After the pleadings have closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). Under Rule 12(b)(6), a complaint "must 'contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'" *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 661 (N.D. Ill. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief under Rule 8." *Martin v. Living Essentials, LLC*, 160 F. Supp. 3d 1042, 1045 (N.D. Ill. 2016) (citation and internal quotation marks omitted). Rather, the pleader must "allege more by way of factual content to 'nudg[e]' his claim" of unlawful action "'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 683.

## I. Plaintiffs' "Anticaking" Theory Does Not Establish a Plausible Claim of Deception Under the Connecticut, Illinois, or Michigan Consumer Fraud Statutes.

### A. Plaintiffs Cannot Plausibly Allege Reliance on the "Anticaking" Statement.

In its Order, the Court dismissed Plaintiffs' "anticaking" claims based on statutory consumer fraud claims under Alabama, California, Florida, New Jersey, New York, and Minnesota law because there was no causal nexus between Plaintiffs' alleged injuries and Kraft Heinz's statement that it added cellulose "to prevent caking." Order at 15-16. As the Court explained, Plaintiffs' new anticaking theory was internally inconsistent with their prior theory of the case:

> The operative complaints allege that Plaintiffs purchased the products believing them to be "100% Grated Parmesan Cheese." The necessary implication is that Plaintiffs never consulted, let alone relied upon, the ingredient labels' assertion that cellulose was added to prevent caking. This dooms Plaintiffs' claims under the above-referenced statutes, all of which require some form of causal connection between the alleged misrepresentation and the plaintiff's alleged injury.

*Id.* at 16 (citations omitted).

That reasoning applies with equal force to Plaintiffs' remaining claims under the Connecticut Unfair Practices Act ("CUTPA"), the Illinois Consumer Fraud Act ("ICFA"), and the Michigan Consumer Protection Act ("MCPA"). Like the consumer fraud claims the Court dismissed, each of these statutes requires a plaintiff to show that the defendant's false advertising *caused* his or her alleged injury. "Under the ICFA, deceptive advertising cannot be the proximate

6

cause of damages . . . unless it actually deceives the plaintiff."[1]  *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 991 (N.D. Ill. 2013) (Feinerman, J.).  The same is true under the CUTPA.[2]  *See, e.g.*, *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 101 (D. Conn. 2016) (noting that a plaintiff must "plead[] reliance on the alleged misrepresentation" and "alleg[e] that the defendant's actions caused her injury" to state a CUTPA claim).  And the MCPA likewise requires a plaintiff to establish damages resulting from the defendant's alleged deception.[3]  *See, e.g.*, *In re OnStar Contract Litig.*, 278 F.R.D. 352, 376 (E.D. Mich. 2011) (noting that an MCPA claim requires proof of "reliance" and "*resulting* damages") (emphasis added).

Plaintiffs' amended complaint does not come close to establishing causation or reliance. Plaintiffs' "anticaking" theory is premised on the allegation that Kraft Heinz "states, albeit in small

---

[1] *See also, e.g.*, *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 334 (7th Cir. 2018) (holding that a plaintiff must establish that the "alleged deception was the but-for cause of her injury" to state a claim under the ICFA); *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 217 (Ill. 2004) ("[D]eceptive advertising cannot be the proximate cause of damages under the [ICFA] unless it actually deceives the plaintiff."); *Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 832 (N.D. Ill. 2009) ("In the context of deceptive practices claims, 'a damages claim under the ICFA requires that the plaintiff was deceived in some manner and damaged by the deception.'") (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006); *Wiegel v. Stork Craft Mfg., Inc.*, 946 F. Supp. 2d 804, 809 (N.D. Ill 2013) ("ICFA plaintiffs must still establish proximate causation.").

[2] *See also, e.g.*, *Stevenson Lumber Co.-Suffield v. Chase Assocs., Inc.*, 932 A.2d 401, 406 (Conn. 2007) ("[I]n order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act *and* that, 'as a result of' this act, the plaintiff suffered an injury. The language 'as a result of' requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff."); *Abrahams v. Young & Rubicam, Inc.*, 692 A.2d 709, 712 (Conn. 1997) (same); *Walker v. People's United Bank*, 305 F. Supp. 3d 365, 381 (D. Conn. 2018) (same)

[3] *See also, e.g.*, *Mayhall v. A.H. Pond Co.*, 341 N.W.2d 268, 270 (Mich. Ct. App. 1983) ("[A] plaintiff must have 'suffered injury' as a result of his reliance on the defendant's false representation."); *Baye v. HBI Branded Apparel Enters.*, No. 12-12869, 2013 WL 6546815, at *5 (E.D. Mich. Dec. 13, 2013) ("[T]he court agrees with defendant that plaintiff has not offered any serious evidence of reliance on defendants' purported express warranties or misrepresentations, which would be required for express warranty, *MCPA*, and fraud claims.") (emphasis added); *Vandermale v. Harvey Auto., Inc.*, No. 253100, 2005 WL 1459610, at *1 (Mich. Ct. App. June 21, 2005) ("Reliance on the seller's representations is an implicit element of the MCPA.").

print on the back of the Products' container, that the Products contain cellulose powder for anticaking purposes and omits the fact that the cellulose powder is included as a filler." Am. Compl. ¶ 4. But Plaintiffs do not allege *anywhere* in their amended complaint that they saw — let alone relied on — Kraft Heinz's statement that it added cellulose "to prevent caking." To the contrary, Plaintiffs insist that this representation was hidden "in small print on the back of the Products' container," (*id.*), and that most consumers interpret the phrase "100% Grated Parmesan Cheese" to mean that the products contain no non-cheese ingredients whatsoever (*id.* ¶ 3).

Indeed, the Court appeared to recognize that Plaintiffs cannot establish causation or reliance under an "anticaking" theory. Because "[t]he operative complaints allege that Plaintiffs purchased the products believing them to be '100% Grated Parmesan Cheese,'" the Court reasoned, "[t]he necessary implication is that Plaintiffs never consulted, let alone relied upon, the ingredient labels' assertion that cellulose was added to prevent caking." Order at 16. Here, like the claims the Court dismissed, Plaintiffs' CUTPA, ICFA, and MCPA claims "all . . . require some form of causal connection between the alleged misrepresentation and the plaintiff's alleged injury." *Id.* Because Plaintiffs cannot establish that the "anticaking" representation *caused* their alleged injuries, they cannot prevail on *any* of their consumer fraud claims.

**B.** **The Challenged "Anticaking" Statement Is Accurate and Not Misleading.**

There is another independent reason why the remaining "anticaking" claims must be dismissed — the ingredient line is factually accurate. Under Connecticut, Illinois, and Michigan law, a plaintiff cannot state a consumer fraud claim "if the challenged statement was not misleading as a matter of law." *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (dismissing ICFA claim); *see also Larobina v. Wells Fargo Bank, N.A.*, No. 10-1279, 2012 WL 1032953, at *8 (D. Conn. Mar. 27, 2012) (dismissing CUTPA claim when challenged representations were

8

factually accurate); *Zine v. Chrysler Corp.*, 236 Mich. App. 261, 285 (1999) (holding consumer could not establish an MCPA claim when the challenged representations were "not misleading").

Plaintiffs do not dispute that powdered cellulose prevents grated cheese from clumping. Indeed, this is the precise reason that the FDA permits the use of anticaking agents: even though some commenters asserted that "consumers expect grated cheeses to be pure and not to contain ingredients such as cellulose," the FDA rejected that position and explained that the use of anticaking agents is often "necessary" to "provide consumers with grated cheese products having the characteristic flavor and texture of freshly grated cheese . . . ." 51 Fed. Reg. at 30210-01. Indeed, the use of cellulose to prevent caking is such an important practice that the FDA has incorporated it as part of the *definition* of what constitutes a "grated cheese."

Instead of alleging that cellulose does not prevent clumping, Plaintiffs' "anticaking" theory appears to allege that Kraft Heinz adds *more* cellulose than is necessary to achieve this effect. But this allegation does not salvage Plaintiffs' "anticaking" theory, as the *amount* of cellulose in Kraft Grated Parmesan Cheese does not affect the veracity of Kraft Heinz's representation that cellulose prevents clumping. Many courts have rejected claims that are based on the quantity of a specific ingredient, as that quantity has no bearing on whether the challenged claim is true or false.[4]

---

[4] *See, e.g.*, *Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012), *adopted as final order*, 2012 WL 5502359 (C.D. Cal. Oct. 26, 2012) (rejecting claim alleging that statement "made with real vegetables" implied that Vegetable Thins crackers "contain[] a significant amount of vegetables"); *Manchouck v. Mondelēz Int'l Inc.*, No. 13-2148, 2013 WL 5400285, at *2-3 (N.D. Cal. Sept. 26, 2013) (holding that statement "made with real fruit" was accurate when defendant's cookies were made with "a small amount of processed fruit puree"); *Henderson v. Gruma Corp.*, No. 10-04173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) (dismissing lawsuit challenging claim that guacamole dip was made "with garden vegetables" because the "product does in fact contain vegetables that can be grown in a garden" and accurately "speaks to the presence" of vegetables in the dip).

This conclusion accords not only with the case law, but also with common sense.  Food manufacturers routinely add ingredients to their products to improve their color, texture, or taste. If a plaintiff could survive dismissal simply by alleging what Plaintiffs have alleged here — that Kraft Heinz "adds powdered cellulose in amounts that exceed what is necessary for achieving anticaking effects in the Products" (Am. Compl. ¶ 27) — food manufacturers would inevitably face a flurry of meritless lawsuits that are as limitless as the number and type of ingredients used in food products.  These claims would put courts in the untenable position of making factual determinations about how much of a given ingredient is more than necessary, which is a role far better suited for the FDA and which the agency regulates.  Indeed, the question of deciding the "necessary" amount of an ingredient for a particular purpose becomes even thornier because many ingredients have multiple purposes.  For example, lactic acid can be used as a "flavoring agent," "a pH control agent," *or* "an antimicrobial agent."  21 C.F.R. § 184.1061(b).  Courts would therefore have to try to parse out exactly how much of a particular ingredient is used for each purpose, and what is the supposed "necessary" amount required to achieve each purpose.  In sum, this Court should avoid this morass and reject Plaintiffs' attempt to characterize a factually accurate claim — that powdered cellulose prevents grated cheese from caking — as misleading.

## II.  **Plaintiffs' Warranty Claims Fail for Lack of Reliance and/or Privity.**

The Court should also dismiss Plaintiffs' breach-of-warranty claims, as these claims fail either for lack of privity or because Plaintiffs cannot establish reliance on the "anticaking" claim.

Privity.  Under Connecticut law, a claim for breach of the implied warranty of merchantability requires the plaintiff to establish vertical privity with the defendant.  *See Kahn v. Volkswagen of Am., Inc.*, No. 07-05004090, 2008 WL 590469, at *8 (Conn. Super. Ct. Feb. 13, 2008) ("Connecticut law has maintained a privity requirement that prevents parties who are not in

contractual privity with the warrantor from enforcing any implied warranty."); *TD Props., LLC v. VP Bldgs., Inc.*, 602 F. Supp. 2d 351, 362 (D. Conn. 2009) (holding that the plaintiff's claim for breach of implied warranty "fails because of its lack of privity with the Defendant"). Here, because Plaintiffs do not allege that they purchased Kraft Grated Parmesan Cheese directly from Kraft Heinz, they cannot state a breach-of-warranty claim under Connecticut law.

    <u>Reliance</u>.  In Florida, "ample law suggests that justifiable reliance is in fact a required element of a breach of express warranty claim." *Byrnes v. Small*, 142 F. Supp. 3d 1262, 1275 n.9 (M.D. Fla. 2015); *see also Hobco, Inc. v. Tallahassee Assocs.*, 807 F. 2d 1529, 1533 (11th Cir. 1987) ("Under Florida law, an express warranty may arise only where justifiable reliance upon assertions or affirmations is part of the basis of the bargain.").  Minnesota law extends this requirement to both express warranty and implied warranty claims. *See Midland Loan Fin. Co. v. Madsen*, 14 N.W. 2d 475, 481 (Minn. 1944) ("To enable a party relying upon breach of express or implied warranty to recover, it must be clear and definite that there was actual reliance upon the warranties involved."); *see also Hendricks v. Callahan*, 972 F.2d 190, 194 (8th Cir. 1992) (holding that Minnesota law "require[s] some sort of reliance" to establish a breach-of-warranty claim). And California also requires reliance to state a breach-of-warranty claim in the absence of privity.[5] *See Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986-87 (N.D. Cal. 2009) (elements of breach of express warranty claim); *Ashgari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1335 (C.D. Cal. 2013) (dismissing breach of express warranty claim where "[t]he complaint does not allege that any plaintiff relied on the express warranty in deciding to purchase his or her vehicle").

---

[5] In California, when an implied warranty claim alleges that the products do not "conform to the promises or affirmations of fact" on the label, "the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1106 (N.D. Cal. 2017) (citing *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014)).

Here, as explained earlier, Plaintiffs cannot establish reliance: even if they were correct that Kraft Grated Parmesan Cheese includes more cellulose than necessary, they cannot establish that Plaintiffs saw or relied on the statement that cellulose was added "to prevent caking." *See supra* § I.A. Accordingly, this Court should dismiss Plaintiffs' breach-of-warranty claims under California, Florida, and Minnesota law.

## III. Plaintiffs Cannot State an Unjust Enrichment Claim.

Plaintiffs' inability to allege that they relied on the "anticaking" statement also precludes them from establishing an unjust enrichment claim. It is well-established that a claim for unjust enrichment requires the plaintiff to establish "a connection between [the plaintiff's] detriment and the defendant's retention of the benefit." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 519 (7th Cir. 2011). Here, because Plaintiffs cannot establish that they suffered any injury *in reliance* on the "anticaking" statement, they cannot state a plausible claim for unjust enrichment.

The Seventh Circuit's opinion in *Cleary* is instructive. There, the plaintiffs alleged that Philip Morris and other cigarette manufacturers were unjustly enriched because they "fail[ed] to disclose the full truth about cigarettes" and their retention of revenue from cigarette sales was unjust. 656 F.3d at 518. The district court dismissed their unjust enrichment claim, and the Seventh Circuit affirmed. In so doing, it rejected the plaintiffs' assertion that "their unjust enrichment claim does not require proof of deception, causation, or actual harm." *Id.* Instead, the Seventh Circuit explained, the plaintiffs could not state an unjust enrichment claim absent allegations that "they suffered any harm, that they relied on the defendants' marketing, or that they would have acted differently had the defendants been truthful about the cigarettes they were selling." *Id.* Because the plaintiffs did not allege that they changed their behavior in reliance on the defendants' advertising, the court concluded that "their transfer of money to the defendants in

exchange for the cigarettes was not to their detriment" and accordingly did not establish that the defendants had been unjustly enriched. *Id.* at 519.

Here, as in *Cleary*, Plaintiffs cannot establish a causal connection between their alleged losses and Kraft Heinz's use of the "anticaking" statement — which they do not allege seeing and could not plausibly allege that they relied on. *See generally supra* § I.A. Accordingly, Plaintiffs cannot state a plausible unjust enrichment claim against Kraft Heinz.

## IV. <u>Plaintiffs Lack Article III Standing to Proceed Under Their "Anticaking" Theory.</u>

In its August 2017 Order, this Court held that Plaintiffs had established Article III standing under their "100%" theory by alleging that they "overpaid" for the challenged products in reliance on the representation that they contained nothing but grated cheese. 275 F. Supp. 3d at 918. The Court explained that "[i]f Plaintiffs are correct that Defendants' labels are misleading, then the complaints — which assert that Plaintiffs viewed the allegedly misleading labels and formed a belief that the products contained only cheese — provide an adequate basis to conclude that the challenged conduct caused their injuries." *Id.* at 919. In its November 2018 Order, however, the Court did not address whether Plaintiffs also had standing to assert their claims under an "anticaking" theory — which they do not.

Article III requires a plaintiff to establish not only that he has suffered an "injury in fact," but also that this injury is "fairly traceable to the challenged conduct of the defendant." *Spokeo, Inc. v.* Robins, 136 S. Ct. 1540, 1547 (2016). "To satisfy the causation prong of Article III standing, the injury complained of must be fairly traceable to the challenged action of the defendant — *i.e.*, there must be a causal connection between the injury and the conduct." *County of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 959-60 (N.D. Ill. 2015) (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). In a putative class action, at least one

named plaintiff must have standing to sue; thus, Plaintiffs cannot "piggy-back on the injuries of the unnamed class members" or "acquire standing to sue by bringing [their] action on behalf of others who would have suffered injury which would have afforded them standing had they been named plaintiffs . . . ." *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (citations and internal quotation marks omitted).

Here, Plaintiffs lack Article III standing to proceed under an "anticaking" theory. Even if the money they allegedly overpaid for Kraft Heinz's grated parmesan cheese products constituted an "injury in fact," Plaintiffs lack standing because they cannot establish that this alleged injury resulted from Kraft Heinz's representation that it added cellulose "to prevent caking." As the Court noted in its discussion of Plaintiffs' consumer fraud claims, "[t]he operative complaints allege that Plaintiffs purchased the products believing them to be '100% Grated Parmesan Cheese.'" Order at 16. "The necessary implication" of this allegation, the Court explained, "is that Plaintiffs never consulted, let alone relied upon, the ingredient labels' assertion that cellulose was added to prevent caking." *Id.* Accordingly, Plaintiffs lack standing because they cannot establish that their alleged injuries resulted from Kraft Heinz's use of the "anticaking" statement, as opposed to the "100%" claims this Court has found not to be actionable.

Under similar circumstances, many federal courts have held that a plaintiff lacks standing where he does not see or rely on the challenged advertising.[6] *Phillips v. Apple Inc.* is particularly instructive. There, the plaintiffs challenged Apple's alleged misrepresentation that the "Wi-Fi Assist" feature in iOS 9 would not result in significantly increased data usage. No. 15-4879, 2016

---

[6] *See, e.g.*, *Wiegel v. Stork Craft Mfg., Inc.*, 891 F. Supp. 2d 941, 943 (N.D. Ill. 2012) (no Article III standing where the plaintiff alleged the defendant's recall notices were misleading, but did not allege that she "read or received any of these notices" herself); *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 996 (N.D. Cal. 2007) (no Article III standing where "Plaintiffs fail to allege that they read any of the alleged misrepresentations before purchasing the service").

WL 1579693, at *7 (N.D. Cal. Apr. 19, 2016).  Although the plaintiffs asserted that their alleged injuries were "fairly traceable" to Apple's practice of activating the Wi-Fi Assist feature by default, the court held that this was not the pertinent inquiry; instead, it explained, the relevant question was whether those injuries were "'fairly traceable' to Apple's *representations or omissions*."  *Id.* (emphasis in original).  The court explained that "for Plaintiffs' data overuse charges to be caused by Apple's representations, Plaintiffs must have seen the representations and taken action based on what they say—in other words, Plaintiffs must have actually relied on the misrepresentations or omissions to have been harmed by them."  *Id.*  (citing *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013)).  Because the plaintiffs did "not assert that they read or relied on this statement when choosing to download iOS 9 or use Wi-Fi Assist" and conceded they were "*unlikely* to have viewed Apple's statement until after downloading iOS 9, using Wi–Fi Assist, and incurring data overuse charges," the court concluded that they lacked Article III standing.  *Id.*

Here, as in *Phillips*, Plaintiffs cannot establish that their injuries are fairly traceable to the *statement* that cellulose is added to prevent caking — which they admittedly did not read or rely on — as opposed to the *presence* of cellulose powder.  Even if Plaintiffs could establish that *other* consumers might have seen or relied on the "anticaking" statement, they cannot acquire standing by "piggy-back[ing] on the injuries of unnamed class members."  *Payton*, 308 F.3d at 682. Accordingly, this Court should dismiss Plaintiffs' remaining claims for lack of Article III standing.

## CONCLUSION

This Court should grant Kraft Heinz's motion for judgment on the pleadings.

Dated: December 7, 2018

Respectfully submitted,

JENNER & BLOCK LLP

By: */s/ Dean N. Panos*

Dean N. Panos
353 N. Clark Street
Chicago, IL 60654-3456
Tel.: (312) 222-9350
dpanos@jenner.com

Attorneys for Defendant
The Kraft Heinz Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed on December 7, 2018 with the Clerk of the Court by using the CM/ECF system which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  December 7, 2018                                        By:  */s/ Dean N. Panos*
                                                                              Dean N. Panos