**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: 100% GRATED PARMESAN CHEESE MARKETING AND SALES PRACTICE LITIGATION | Civil No. 1:16-cv-05802 <br> MDL 2705 <br><br> Judge Gary S. Feinerman |
| *This Document Relates to All Cases on The Kraft Heinz Company Track* | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT**
**KRAFT HEINZ COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS**

00145737

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     LEGAL STANDARD .........................................................................................2

III.    STATEMENT OF FACTS ................................................................................3

IV.    ARGUMENT ......................................................................................................5

      A.       Plaintiffs Have Article III Standing Because They Pleaded Facts To Show Kraft's Anticaking Misrepresentations Caused Their Injury ...............................5

             1.      Plaintiffs Sufficiently Alleged Traceability For Article III Purposes .......7

             2.      Kraft Misconstrues Article III's Causation Requirement .........................8

      B.       Plaintiffs' "Anticaking" Theory Establishes A Plausible Claim Of Deception Under The Connecticut, Illinois, And Michigan Consumer Fraud Statutes ......................................................................................................9

             1.      Plaintiffs Do Not Have To Plead Reliance To Allege Kraft's Conduct Caused Their Injury ..................................................................9

                    a.      Plaintiffs Allege They Saw The Products' Labels .....................11

                    b.      Plaintiffs Sufficiently Alleged Causation ...................................12

             2.      Kraft's "Anticaking" Statement Is False And Misleading Because Kraft Used Cellulose As A Filler ...........................................................13

      C.       Plaintiffs State Their Claims For Breach Of Express And Implied Warranty ..........................................................................................................14

             1.      Direct Privity Is Not Required Under Connecticut's Implied Warranty Law .............................................................................................14

             2.      Breach Of Express And Implied Warranties ...........................................15

                    a.      Plaintiffs Adequately Alleged A Claim For Breach Of Implied Warranty Under California Law .....................................15

                    b.      Plaintiffs Adequately Alleged A Claim For Breach Of Express Warranty Under California Law ...................................16

                    c.      Breach Of Express Warranty Under Florida Law ......................16

i

d.      Breach Of Express And Implied Warranty Under Minnesota Law............................................................................17

D.      Plaintiffs Pleaded Facts To State A Claim For Unjust Enrichment....................18

V.      CONCLUSION............................................................................................21

00145017

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrahams v. Young & Rubicam*,
240 Conn. 300 (1997) ...........................................................................................12

*Alpha Tech Pet, Inc. v. Lagasse, LLC*,
2017 U.S. Dist. LEXIS 182499 (N.D. Ill. Nov. 3, 2017)........................................2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................2, 3, 7

*Assoc. Inv. Co. Ltd. P'ship v. Williams Assocs. IV*,
230 Conn. 148 (1994) ...........................................................................................10

*Brunt v. Serv. Emps. Int'l Union*,
284 F.3d 715 (7th Cir. 2002) ...................................................................................2

*Buchanan-Moore v. Cty. of Milwaukee*,
570 F.3d 824 (7th Cir. 2009) ...................................................................................2

*Byrnes v. Small*,
142 F. Supp. 3d 1262 (M.D. Fla. 2015)..................................................................17

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ...........................................................................20, 21

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015) ......................................................................16

*Cty. of Cook v. HSBC N. Am. Holdings, Inc.*,
136 F. Supp. 3d 952 (N.D. Ill. 2015) .......................................................................6

*Daniels v. Bursey*,
2003 U.S. Dist. LEXIS 15488 (N.D. Ill. Sep. 3, 2003) .........................................12

*Davidson v. Apple, Inc.*,
2017 U.S. Dist. LEXIS 36524 (N.D. Cal. Mar. 14, 2017).......................................6

*DeMotses v. Leonard Schwartz Nissan, Inc.*,
22 Conn. App. 464 (1990) .....................................................................................12

*Dickinson v. Cosmos Broad. Co.*,
782 So. 2d 260 (Ala. 2000).....................................................................................20

iii

*Duke Power Co. v. Carolina Envtl. Study Grp.*,
  438 U.S. 59 (1978)............................................................................................................6

*Evraets v. Intermedics Intraocular, Inc.*,
  29 Cal. App. 4th 779 (1994) ...........................................................................................16

*Gasperoni v. Metabolife*,
  2000 U.S. Dist. LEXIS 20879 (E.D. Mich. Sep. 27, 2000)..........................................10

*Hamon v. Digliani*,
  148 Conn. 710 (1961) .....................................................................................................14

*Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*,
  231 Conn. 276 (1994) ...............................................................................................19, 20

*Hinchliffe v. Am. Motors Corp.*,
  184 Conn. 607, 440 A.2d 810 (1981) ...............................................................................9

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
  131 Ill. 2d 145 (1989) .....................................................................................................19

*Izzarelli v. R.J. Reynolds Tobacco Co.*,
  117 F. Supp. 2d 167 (D. Conn. 2000)..............................................................................12

*Kahn v. Volkswagen of Am., Inc.*,
  2008 Conn. Super. LEXIS 376 (Super. Ct. Feb. 13, 2008) ............................................15

*Keegan v. Am. Honda Motor Co.*,
  838 F. Supp. 2d 929 (C.D. Cal. 2012) ............................................................................15

*Keith v. Ferring Pharms., Inc.*,
  2016 U.S. Dist. LEXIS 131808 (N.D. Ill. Sep. 27, 2016) .........................................19, 20

*Kerrigan v. Visalus, Inc.*,
  112 F. Supp. 3d 580 (E.D. Mich. 2015)...........................................................................19

*Khoday v. Symantec Corp.*,
  858 F. Supp. 2d 1004 (D. Minn. 2012) ............................................................................19

*Krause v. City of Elk River*,
  2015 Minn. App. Unpub. ................................................................................................18

*Leshine Carton Co. v. Matik of N. Am.*,
  2008 Conn. Super. LEXIS 3022 (Super. Ct. Nov. 19, 2008)...........................................9

*Lipinski v. Martin J. Kelly Oldsmobile, Inc.*,
  325 Ill. App. 3d 1139 (2001) ............................................................................................9

iv

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).................................................................................6, 7

*Midland Loan Fin. Co. v. Madsen*,
   217 Minn. 267 (1944) ........................................................................18

*Mitchell v. H & R Block, Inc.*,
   783 So. 2d 812 (Ala. 2000)................................................................19

*Muehlbauer v. GMC*,
   431 F. Supp. 2d 847 (N.D. Ill. 2006) ...............................................19

*Muir v. Playtex Prods., LLC*,
   983 F. Supp. 2d 980 (N.D. Ill. 2013) ................................6, 8, 10, 11

*In re OnStar Contract Litig.*,
   278 F.R.D. 352 (E.D. Mich. 2011) ..............................................10, 11

*Orgone Capital III, LLC v. Daubenspeck*,
   2019 U.S. App. LEXIS 392 (7th Cir. Jan. 7, 2019) ...........................8

*In re Packaged Seafood Prods. Antitrust Litig.*,
   242 F. Supp. 3d 1033 (S.D. Cal. 2017).........................................10, 12

*Pisciotta v. Old Nat'l Bancorp*,
   499 F.3d 629 (7th Cir. 2007) .............................................................2

*Resnick v. AvMed, Inc.*,
   693 F.3d 1317 (11th Cir. 2012) .........................................................20

*S. Broad. Grp., LLC v. Gem Broad., Inc.*,
   145 F. Supp. 2d 1316 (M.D. Fla. 2001)........................................16, 17

*Segovia v. Vitamin Shoppe, Inc.*,
   2016 U.S. Dist. LEXIS 15171 (S.D.N.Y. Feb. 5, 2016).....................19

*Suchanek v. Sturm Foods*,
   2018 U.S. Dist. LEXIS 213658 (S.D. Ill. July 3, 2018) .....................9

*In re Viagra Prods. Liab. Litig.*,
   658 F. Supp. 2d 950 (D. Minn. 2009).................................................20

*Zakaria v. Gerber Prods. Co.*,
   2015 U.S. Dist. LEXIS 80428 (C.D. Cal. June 18, 2015) ..................15

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   267 F.R.D. 549 (D. Minn. 2010).................................................17, 18

**Constitutions**

U.S. Const. art. III ...................................................................................................5, 6, 7, 8

**Statutes and Regulations**

Conn. Gen. Stat. § 42-110a (2018)
    (Connecticut Unfair Trade Practices Act) ...................................................... *passim*

Fla. Stat. Ann. § 672.313 (2018) ..........................................................................16, 17

815 Ill. Comp. Stat. 505/1 (2018)
    (Illinois Deceptive Practices and Consumer Fraud Act) ................................... *passim*

Mich. Comp. Laws § 445.901 (2018)
    (Michigan Consumer Protection Act) .............................................................. *passim*

*Grated Cheeses; Amendment of the Standard of Identity*,
    51 Fed. Reg. at 30210-01 (Aug. 25, 1986) (codified at 21 C.F.R. § 133.146) ......................20

**Rules**

Fed. R. Civ. Proc.
    rule 8(a)(2) ...........................................................................................................3
    rule 9(b) ................................................................................................................3
    rule 12(b)(6) ..........................................................................................................2
    rule 12(c) ...............................................................................................................2

00145017

Plaintiffs Ann Bell, Alfonso Fata, Karen Ford, Samantha Lewin, Yvette Nash, Rosemary Quinn, Larry Rollinger, Jr., Adam Weiss, and Michael Wills ("Plaintiffs") submit the following Opposition to defendant Kraft Heinz Company's ("Kraft" or "Defendant") Motion for Judgment on the Pleadings.

## I.    INTRODUCTION

This Court previously held that Plaintiffs have standing to bring their claims and that Plaintiffs sufficiently alleged violations of the various consumer protection laws, breaches of express and implied warranties, and for unjust enrichment. *See* MTD Order.[1]

Kraft brings this Motion for Judgment on the Pleadings attacking claims that this Court already held were adequately alleged. Kraft makes one argument throughout its Motion, which is based on mischaracterizations of the Complaint[2] and the MTD Order. Kraft argues its anticaking statement is truthful and non-actionable. Plaintiffs' claim was and remains that Kraft promised to sell them a certain amount of grated cheese but sold them a lesser amount.

Kraft argues that because Plaintiffs thought they were receiving "100% Grated Parmesan Cheese," as stated on the front of the labels, the fact that it also falsely states in fine print on the ingredients label that the grated cheese actually contains "cellulose powder to prevent caking," Plaintiffs do not care that they actually received far less grated cheese than any reading of the labels could support. Kraft's argument is that two wrongs make a right – it lied on the front of the package and then lied on the disclaimer on the back of the package, so it did nothing wrong. Kraft's packaging violates a host of consumer protection laws, some of which require Plaintiffs' reliance and some of which do not. Kraft's grated cheese contained far less cheese than stated on

---

[1]    "MTD Order" references are to the Memorandum Opinion Order on Defendants' Motions to Dismiss the Amended Consolidated Class Action Complaint. *See* ECF No. 297.

[2]    "Complaint" or "Compl." references are to the Amended Consolidated Class Action Complaint Against The Kraft Heinz Company. *See* ECF No. 225.

1

the labels. As a result, Plaintiffs and the other class members were harmed by purchasing goods that were not delivered as promised. Compl., ¶¶33-34. This falls squarely within well-accepted principals of consumer protection laws, indeed their very existence. For the following reasons, this Court should deny Kraft's Motion for Judgment on the Pleadings.

## II.    LEGAL STANDARD

A court may grant a motion for judgment on the pleadings, made pursuant to Federal Rule of Civil Procedure 12(c), "only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 718-19 (7th Cir. 2002). In evaluating the moving party's arguments, "[a court will] take [all] the facts alleged in the complaint as true, drawing all reasonable inferences in favor of the [non-moving party]." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004)). "[A] Rule 12(c) motion [is subject to the] same standard [as a] Rule 12(b)(6) motion." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

"A complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief,…, and provide defendant with fair notice of the claim and the basis for it." *Alpha Tech Pet, Inc. v. Lagasse, LLC*, 2017 U.S. Dist. LEXIS 182499, at *23 (N.D. Ill. Nov. 3, 2017).[3] "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual

---

[3]    Here, as throughout, all citations and internal quotations are omitted and all emphasis is added unless otherwise stated.

00145737

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

The Complaint alleges facts that demonstrate Plaintiffs and the other class members received less than what Kraft promised, were misled by Kraft's misrepresentations about the Products'[4] contents, and consequently suffered an injury that is traceable to Kraft's wrongful conduct. Plaintiffs have suffered a financial injury that this Court could remedy by finding, among other things, that Kraft did not deliver what it promised and that its product labels and marketing materials omitted the fact Kraft used cellulose in its grated cheese as a filler rather than merely as an anticaking agent.

## III.    STATEMENT OF FACTS

Kraft's Motion for Judgment on the Pleadings follows Kraft's Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint and Kraft's Motion to Dismiss Amended Consolidated Class Action Complaint Against the Kraft Heinz Company. ECF Nos. 160, 249. After having considered Kraft's motions to dismiss, the Court determined that Plaintiffs' claims arise under two misrepresentations: "(1) the representation on the containers' front labels that the products are '100% Grated Parmesan Cheese,' when in fact they contain non-cheese ingredients ('100% claims'); and (2) the representation on the ingredient lists that cellulose is used to prevent caking, when in fact it is also used as filler ('Anticaking claims')." *See* MTD Order at 5.

The Court dismissed the 100% claims but found that the Anticaking claims were alleged with the requisite specificity and held that Plaintiffs "Anticaking claims against … Kraft … survive Rules 8(a)(2) and 9(b)." MTD Order at 14. The Court also analyzed Plaintiffs' allegations that Kraft violated statutory consumer protection laws of multiple states; specifically,

---

[4]      The term "Products" means and refers to Kraft's grated cheese products.

the Kraft considered the issue of whether Plaintiffs adequately alleged a causal connection between Kraft's false and misleading statements on the Products' labels and Plaintiffs' damages. *Id*. at 14-19. Ultimately, the Court dismissed some of Plaintiffs' claims for violations of the consumer protection statutes but held that Plaintiffs' claims arising under the Connecticut Unfair Trade Practices Act ("CUTPA"), the Illinois Deceptive Practices and Consumer Fraud Act ("ICFA"), and the Michigan Consumer Protection Act ("MCPA") may proceed. *Id*. at 19. Kraft now asks the Court to reconsider its ruling by assuming the Court forgot to consider the "causal connection" purportedly required under CUTPA, MCPA, and ICFA. Mem. at 2.[5]

The Court also held that Plaintiffs' claims for breaches of express warranty under Alabama, California, Florida, and Minnesota law may proceed. MTD Order at 25. However, Kraft now asks the Court to reconsider its ruling by assuming the Court forgot to consider the "reliance" purportedly required under the express warranty laws still at issue. Mem. at 2. Kraft does not ask the Court to dismiss Plaintiffs' claim for breach of express warranty under Alabama law.

The Court also upheld Plaintiffs' claims for breaches of implied warranty under California, Connecticut, Michigan, and Minnesota law. MTD Order at 28. The Court noted that in its motion to dismiss, Kraft did not cite any law in support of its contention that Plaintiffs did not adequately plead claims for breach of implied warranty. *Id*. at 27. Kraft now seeks to re-litigate this issue. *Id*. at 16-17. Kraft, however, does not contend Plaintiffs failed to state a claim for breach of implied warranty under Michigan law.

The entirety of Kraft's motion rests on an implication this Court articulated in the MTD Order – after considering paragraphs 9-17 of the Complaint – that Plaintiffs did not allege they

---

[5] "Mem." refers to the Memorandum of Law in Support of Defendant Kraft Heinz Company's Motion for Judgment on the Pleadings. *See* ECF No. 316.

saw Kraft's false and misleading representation that Kraft used cellulose powder "to prevent caking" and consequently could not rely on it. MTD Order at 16; Complaint at 14. The Complaint, however, alleges that:

- "Defendant persists in selling the Products with false and misleading labels that omit the material fact that the Products contain substances other than Parmesan, Romano, or Asiago cheese, **and that the amount of other substances is excessive and unnecessary**." Compl., ¶33. "Plaintiffs and the Class members did not receive that which was promised and represented to them. **Each** has been exposed to Defendant's advertisements and **has seen the Products' labels**. Plaintiffs and the Class members overpaid for the Products they purchased." Compl., ¶34.
- Kraft "also stated in fine print on the back of the label that cellulose powder was added to prevent caking." Compl., ¶46. "**Defendant's affirmations of fact and descriptions of the Products formed the basis of the bargain between Plaintiffs and the Class members and Defendant**…." Compl., ¶47.

Kraft's Motion for Judgment on the Pleadings should be denied in its entirety.

## IV. ARGUMENT

### A. Plaintiffs Have Article III Standing Because They Pleaded Facts To Show Kraft's Anticaking Misrepresentations Caused Their Injury

Kraft argues that Plaintiffs "lack Article III standing to proceed under an 'anticaking' theory." Mem. at 14. According to Kraft, if Plaintiffs cannot allege relying on the Products' cellulose representations, they cannot establish that their injuries are traceable to Kraft's anticaking misrepresentations. Kraft tries to recast this argument, but it is one the Court already rejected. As the Court previously held, "[t]he complaints allege, among other things, that Plaintiffs overpaid for Krafts' products because the non-cheese ingredients made the products less valuable than what they cost. As in *Aqua Dots*, that is sufficient to establish standing." ECF No. 216 at 8.

Nothing has changed since the last time the Court found Plaintiffs satisfied Article III standing. Kraft "persists in selling the Products with false and misleading labels that omit the material fact that the Products contain substances other than Parmesan, Romano, or Asiago

5

cheese, and that the amount of other substances is excessive and unnecessary." Compl., ¶33. "Plaintiffs and the Class members did not receive that which was promised and represented to them. Each has been exposed to Kraft's advertisements and has seen the Products' labels. Plaintiffs and the Class members overpaid for the Products they purchased." *Id.*, ¶34. For Article III purposes, these allegations are sufficient at this stage to meet the "less rigorous" burden of alleging that Plaintiffs' harm is "fairly traceable" to Kraft's conduct. *See Davidson v. Apple, Inc.*, 2017 U.S. Dist. LEXIS 36524, at \*18 (N.D. Cal. Mar. 14, 2017).

A plaintiff has standing if they: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. ECF No. 216 at 7. Whether plaintiff's injury is "fairly traceable to" defendant's conduct, is an inquiry into whether "the exercise of the Court's remedial powers would redress the claimed injuries." *Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 74 (1978).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "[I]t suffices at the pleading stage to allege that the plaintiff incurred a financial injury upon purchasing a product based on the defendant's deceptive statements." *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 991 (N.D. Ill. 2013). Consequently, "[a] motion to dismiss for lack of standing should not be granted unless there are no set of facts consistent with the complaint's allegations that could establish standing." *Cty. of Cook v. HSBC N. Am. Holdings, Inc.*, 136 F. Supp. 3d 952, 958 (N.D. Ill. 2015).

Here, Plaintiffs allege facts sufficient to show: (1) Kraft's wrongful conduct by selling less of something than promised (i.e., failing to disclose it uses cellulose as a filler and not as a

mere anticaking agent); (2) Plaintiffs' injury-in-fact by overpaying for Kraft's Products; and (3) a causal connection between Kraft's deceptive conduct and the overpayment. Compl., ¶¶4-6.

### 1. Plaintiffs Sufficiently Alleged Traceability For Article III Purposes

Kraft argues "the Court appeared to recognize that Plaintiffs cannot establish causation or reliance under an 'anticaking' theory." Mem. at 8. Kraft adopts the Court's implication that "Because '[t]he operative complaints allege that Plaintiffs purchased the products believing them to be '100% Grated Parmesan Cheese,' the Court reasoned, '[t]he necessary implication is that Plaintiffs never consulted, let alone relied upon, the ingredient labels' assertion that cellulose was added to prevent caking.'" *Id.*

In noting this "implication," however, the MTD Order cites only paragraphs 9 through 17 of the amended complaint. MTD Order at 16. Paragraphs 9 through 17 identify the Plaintiffs. In relevant part, each states: "[Plaintiff] purchased the Kraft '100% Grated Parmesan and Romano Cheese' believing it was 100% Parmesan and Romano cheese. [Plaintiff] did not receive that which she was promised." Compl., ¶¶9-17. The remainder of these paragraphs explains when and where Plaintiffs purchased Kraft's Product. *Id.*

The Court did not cite to paragraphs 4 through 6 of the amended complaint in its MTD Order, or Plaintiffs' anticaking allegations in the amended complaint's Factual Allegations and Causes of Action sections. *See* Compl., ¶¶33, 34, 46, 47.

Plaintiffs never allege they found Kraft's excessive use of cellulose acceptable. For Kraft to make this argument violates the basic tenet that in deciding a motion for judgment on the pleadings, courts "must accept as true [factual] allegations contained in a complaint" (*Iqbal*, 556 U.S. at 679) and "embrace those specific facts that are necessary to support the claim" (*Lujan*,

497 U.S. at 889). *See also Orgone Capital III, LLC v. Daubenspeck*, 2019 U.S. App. LEXIS 392, at *9 (7th Cir. Jan. 7, 2019).

### 2. Kraft Misconstrues Article III's Causation Requirement

Kraft relies on *Phillips* to argue that "Plaintiffs lack standing because they cannot establish that this alleged injury resulted from Kraft Heinz's representation that it added cellulose 'to prevent caking.'" Mem. at 14-15. Kraft misses the point. Kraft violates the laws at issue because it adds excessive amounts of cellulose, including more than it states anywhere on its label. Kraft's reliance on *Phillips* is misplaced and its contention is without merit.

Plaintiffs need only to allege, rather than establish, a causal connection between their injury and Kraft's conduct. *See Muir*, 983 F. Supp. 2d at 991. Also, unlike the plaintiff in *Phillips*, Plaintiffs here alleged the Products' labels were false and misleading because they omitted to disclose that Kraft used cellulose powder not only for anticaking, but also for filler, and that because of this omission Plaintiffs overpaid for the Products and, consequently, suffered an economic injury. Compl., ¶¶33, 34, 46, 47.

Kraft's representation that the Products are "100% Grated Parmesan Cheese" and that it adds cellulose only for anticaking are not merely ambiguous, they are false if, as Plaintiffs allege, Kraft used cellulose in amounts that exceed that needed for anticaking. If Kraft used cellulose powder as a filler, the ingredients label should have read, at a minimum: "cellulose powder to prevent caking and to add weight and volume" (and deleted "100% on the product label").

For these reasons, Plaintiffs alleged a causal relationship between their injury and Kraft's conduct sufficient to establish Article III standing, and to adequately plead causation in support of their claims for violations of the ICFA, CUTPA, and MCPA.

00145737

**B.**     **Plaintiffs' "Anticaking" Theory Establishes a Plausible Claim of Deception Under the Connecticut, Illinois, and Michigan Consumer Fraud Statutes**

Kraft's position may be reduced to: as long as the label discloses use of cellulose in the Products as an anticaking agent, the amount of cellulose used is irrelevant. This argument is flawed for obvious reasons and inconsistent with relevant authority. *See, e.g., Suchanek v. Sturm Foods*, 2018 U.S. Dist. LEXIS 213658, at *33-34 (S.D. Ill. July 3, 2018). In *Suchanek*, the court certified the class, rejecting the defendant's argument that the plaintiffs could not prove causation or reliance on a class wide basis because "Plaintiffs purchased [coffee pods] for one reason – they wanted premium, ground coffee in pods" and defendants' packages did not inform plaintiffs that the coffee pods were "over 95% instant coffee; thus, there is no risk that some Plaintiffs bought [the pods] despite knowing the true nature of the product." *Id.* at *35.

Here, the Kraft's Product was expressly different than promised – grated cheese and cellulose for anticaking. Instead, contrary to the labels, it provides grated cheese, anticaking amounts of cellulose and additional cellulose as filler. *See* Compl., ¶23.

**1.**     **Plaintiffs Do Not Have To Plead Reliance To Allege Kraft's Conduct Caused Their Injury**

"[I]t is not necessary to … show actual reliance in order to state a valid claim based on an omission or concealment under the [Illinois] Consumer Fraud Act." *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 325 Ill. App. 3d 1139, 1145 (2001). "The CUTPA plaintiff need not prove reliance or that the representation became part of the basis of the bargain." *Hinchliffe v. Am. Motors Corp.*, 184 Conn. 607, 617, 440 A.2d 810, 815-16 (1981); *Leshine Carton Co. v. Matik of N. Am.*, 2008 Conn. Super. LEXIS 3022, at *64 (Super. Ct. Nov. 19, 2008). It is well-established that "the CUTPA plaintiff need not prove reliance or that the representation became

9

part of the basis of the bargain." *Assoc. Inv. Co. Ltd. P'ship v. Williams Assocs. IV*, 230 Conn. 148, 158 (1994).

"The provisions of the MCPA are to be construed with reference to the common-law tort of fraud." *In re OnStar Contract Litig.*, 278 F.R.D. 352, 376 (E.D. Mich. 2011). "To validly plead a fraud-based cause of action under the MCPA, a plaintiff must plead with particularity that [a defendant] employed fraudulent and deceptive means with the intent to deceive[,] and that the plaintiff relied on such deceptive conduct when making a purchase." *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1076 (S.D. Cal. 2017). "Unlike a claim for an affirmative representation, a claim for fraudulent omission does not require any proof of actual reliance." *Gasperoni v. Metabolife*, 2000 U.S. Dist. LEXIS 20879, at *19 (E.D. Mich. Sep. 27, 2000).

Here, Plaintiffs' consumer fraud allegations are based on Kraft's failure to disclose, *i.e.*, omission, of a material fact that Kraft used cellulose powder as a filler in its Products. Compl., ¶4. Plaintiffs could not have been reasonably expected to discover this information.

Kraft relies on *Muir* for the proposition that "deceptive advertising cannot be the proximate cause of damages … unless it actually deceives the plaintiff." Mem. at 6 (citing *Muir*, 983 F. Supp. 2d at 991). However, in the very same paragraph of its opinion, *Muir* explains that "At the pleading stage, … all that is necessary to allege proximate causation is to assert … that after the alleged misrepresentations were made, the wrongful charges were paid." *Id*. Here, Plaintiffs allege the Products' labels were false and misleading because they omit the fact that Kraft uses cellulose powder as filler and Plaintiffs did not receive that which was promised. Compl., ¶34.

10

Kraft relies on *In re OnStar Contract Litig.*, 278 F.R.D. 352, 376 (E.D. Mich. 2011) to argue that under MCPA, Plaintiffs must prove reliance and resulting damages. Mem. at 7. *OnStar*, however, never reached the question of whether plaintiffs adequately alleged a violation of the MCPA at the pleading stage, and Plaintiffs do not have to prove reliance or damages at the pleading stage. *See Muir*, 983 F. Supp. 2d at 991 ("it suffices at the pleading stage to allege that the plaintiff incurred a financial injury upon purchasing a product based on the defendant's deceptive statements").

Accordingly, Kraft's argument that Plaintiffs did not allege facts to state a claim for violation of the ICFA, CUTPA, and MCPA are without merit.

### a. Plaintiffs Allege They Saw The Products' Labels

Kraft argues that Plaintiffs' remaining claims for violations of the consumer fraud statutes should be dismissed because "Plaintiffs do not allege anywhere in their amended complaint that they saw – let alone relied on – Kraft Heinz's statement that it added cellulose 'to prevent caking.'" Mem. at 8. Kraft's contention is factually inaccurate and inconsistent with Plaintiffs' allegations.

Plaintiffs allege they each saw "the Products' labels" and "did not receive that which was promised and represented to them." Compl., ¶34. Plaintiffs' allegations use the plural "labels," one of which, Plaintiffs allege, states "that the Products contain cellulose powder for anticaking purposes and omits the fact that the cellulose powder is included as filler." *Id.*, ¶4. Plaintiffs also alleged the Products affirmed that "cellulose powder was added to prevent caking," and that this affirmation "formed the basis of the bargain between Plaintiffs and the Class members and Defendant…." Compl., ¶¶46, 47.

11

Plaintiffs sufficiently alleged that Kraft's misrepresentation that it added cellulose "to prevent caking" caused them to overpay for the Products because Kraft omitted to state that it used the cellulose powder as filler.

### b. Plaintiffs Sufficiently Alleged Causation

"Plaintiffs are not required to plead proximate cause with any particular degree of specificity." *Daniels v. Bursey*, 2003 U.S. Dist. LEXIS 15488, at *11 (N.D. Ill. Sep. 3, 2003) "[T]o assert a claim under the [ICFA] [a plaintiff] must allege that he was 'in some manner deceived.'" *Id*. Similarly "[u]nder [the] CUTPA, if the message is false, then it is a deceptive act without inquiry into whether the consumer actually believed the message or whether the consumer acted reasonably in relying on it." *Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 176 (D. Conn. 2000) (rejecting argument that plaintiff could not have relied under many alleged misrepresentations because they were made before she was born). "Whether a practice is unfair and thus violates CUTPA is an issue of fact." *DeMotses v. Leonard Schwartz Nissan, Inc.*, 22 Conn. App. 464, 466 (1990); *see also Abrahams v. Young & Rubicam*, 240 Conn. 300, 307 (1997) ("the issue of causation generally is a question reserved for the trier of fact"). "Reliance and causation may be satisfied under the [MCPA] by demonstrating that plaintiffs purchased and consumed the product.'" *Packaged Seafood Prods.*, 242 F. Supp. 3d at 1076.

Here, Plaintiffs alleged they "did not receive that which was promised and represented to them" because Kraft hid the fact it used excessive amounts of cellulose, rendering the characterization of its Products as "100% cheese" false, even if considering Kraft's representation that cellulose powder was used "to prevent caking." Compl., ¶¶5, 9-17, 33, 34. A label "100% Grated Parmesan Cheese" on an 8-ounce container, 4% of which comprises

cellulose in an amount that exceeds the maximum amount the FDA permits by almost 100%, is false and misleading, not ambiguous.

### 2. Kraft's "Anticaking" Statement Is False And Misleading Because Kraft Used Cellulose As A Filler

Kraft argues that Plaintiffs' "anticaking" claims must be dismissed because the "ingredient line is factually accurate." Mem. at 8. Kraft argues that "the FDA rejected [a consumer argument that 'consumers expect grated cheeses to be pure and not to contain ingredients such as cellulose'] and explained that the use of anticaking agents is often 'necessary' to 'provide consumers with grated cheese products having the characteristic flavor and texture of freshly grated cheese.…'" *Id*. at 9 (citing *Grated Cheeses; Amendment of the Standard of Identity*, 51 Fed. Reg. at 30210-01 (Aug. 25, 1986) (codified at 21 C.F.R. § 133.146)).

This authority, however, is fatal to Kraft's arguments because there, the FDA explained that one of the commenters, a large cheese manufacturer and producer, urged that "in some circumstances, it is necessary to use more than 1 percent of powdered cellulose in order to achieve the desired results," and asked the FDA to make clear "that while usage levels of powdered cellulose often do not exceed 1 percent, amounts up to 2 percent may be appropriate under some circumstances." *Id*. The FDA acquiesced to the commenter's request and prescribed that the "FDA believes that the use of powdered cellulose in **amounts up to 2 percent** of the weight of the finished food … to be **the maximum use level for powdered cellulose**, either alone or in combination with other suitable anticaking agents.…" *Id*. at 30210-02.

Plaintiffs allege that "an independent testing facility determined that a [Products' sample] allegedly consisting of 100% grated Parmesan cheese actually contained 3.8% cellulose." Compl., ¶23. This is almost twice the maximum amount of cellulose the FDA permits. Plaintiffs

00145737

further allege that Kraft's patent states that "there is little problem of clumping or agglomeration of the grated cheese product." Compl., ¶26.

Plaintiffs thus allege facts to show Kraft's representation that cellulose was "added to prevent caking" is false and misleading by omission, as: (1) the amounts of cellulose exceed the levels permitted by the FDA to achieve anticaking by almost 100%; and (2) it contradicts Kraft's representation that "there is little problem of clumping or agglomeration" with its hard, dried cheeses, as it begs the question of why did Kraft add more cellulose powder than FDA permits to achieve anticaking when clumping and agglomeration is a "little problem."

### C. Plaintiffs State Their Claims For Breach Of Express And Implied Warranty

Kraft does not contend Plaintiffs failed to state claims for breach of express warranty under Alabama law or for breach of implied warranty under Michigan law. Instead, Kraft's argument concerns the claims for breach of warranty under California, Connecticut, Florida, and Minnesota laws.

### 1. Direct Privity Is Not Required Under Connecticut's Implied Warranty Law

Kraft argues Plaintiffs' implied warranty claims under Connecticut law requires direct privity. Mem. at 10-11. However, "[w]here the manufacturer or producer makes representations in his advertisements or by the labels on his products as an inducement to the ultimate purchaser, the manufacturer or producer should be held to strict accountability to any person who buys the product in reliance on the representations and later suffers injury because the product fails to conform to them." *Hamon v. Digliani*, 148 Conn. 710, 718 (1961). "Lack of privity is not a bar to suit under these circumstances." *Id*.

Here, Plaintiffs may bring a claim for breach of implied warranty by virtue of being the Products' ultimate purchaser. Direct privity is not required. *See id*. at 718-19 (Because

14

manufacturer advertisements "are widely used in the appeal directed to the ultimate consumer," lack of technical privity provides "no sound reason for depriving a plaintiff of the right to maintain [an implied warranty] action against the manufacturer."). Kraft relies on *Kahn v. Volkswagen of Am., Inc.*, 2008 Conn. Super. LEXIS 376, at *1 (Super. Ct. Feb. 13, 2008). *Kahn* considered plaintiff's claim for breach of the implied warranty under the Federal Magnuson-Moss Warranty Act, not Connecticut state law, in an action where plaintiff claimed protection under the implied warranty as a third-party beneficiary to a contract between defendant and another person.

The facts and claims in *Kahn* are wholly inapposite with Plaintiffs' claims here. Kraft breached its implied warranty under Connecticut state law by failing to disclose its use of cellulose as a filler, rather than a mere anticaking agent to the ultimate consumer.

### 2. Breach Of Express And Implied Warranties

#### a. Plaintiffs Adequately Alleged A Claim For Breach Of Implied Warranty Under California Law

"[P]rivity of contract [is not] required in implied warranty claims related to substances intended for human consumption." *Zakaria v. Gerber Prods. Co.*, 2015 U.S. Dist. LEXIS 80428, at *31 (C.D. Cal. June 18, 2015) ("foodstuffs do not fall within the general rule of privity between the manufacturer and the consumer, even though the purchase is made through a retailer")). The California legislature also "did away with the vertical privity requirements that apply to implied warranty causes of action." *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 946-47 (C.D. Cal. 2012). Similarly, California courts have held that "individuals who purchase a [product] from an authorized dealership can maintain an implied warranty cause of action against the manufacturer as third party beneficiaries." *Id.*

00145737

Plaintiffs here do not have to allege or prove direct privity with Kraft because it is not required, and, in the alternative, because they are third-party beneficiaries to the purchasing agreements between Kraft and the various outlets where Plaintiffs purchased Kraft's Products.

> **b.** **Plaintiffs Adequately Alleged A Claim For Breach Of Express Warranty Under California Law**

"To prevail on a breach of express warranty claim under California law, a plaintiff must prove that: "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015). "Proof of reliance on specific promises or representations is not required." *Id*. Similarly, "privity is not a requirement for actions based upon an express warranty." *Evraets v. Intermedics Intraocular, Inc.*, 29 Cal. App. 4th 779, 789 n.4 (1994).

Here, Plaintiffs alleged Kraft's affirmation that cellulose powder was added for anticaking and that this affirmation became the basis of their bargain with Kraft. Compl., ¶¶46, 47. Plaintiffs also allege that Kraft breached the warranty by using cellulose powder as a filler, not merely as an anticaking agent. *Id.*, ¶50.

> **c.** **Breach Of Express Warranty Under Florida Law**

Florida courts have adopted the "modern view that express warranties are bargained-for terms of a contractual agreement, any breach of which is actionable notwithstanding proof of non-reliance at the time of closing on the contract." *S. Broad. Grp., LLC v. Gem Broad., Inc.*, 145 F. Supp. 2d 1316, 1324 (M.D. Fla. 2001). The Florida legislature explained that "[i]n actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." Fla. Stat. Ann. § 672.313,

16

commentary no. 3 (2018). "Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof." *Id*.

Here, Plaintiffs alleged Kraft's affirmation that cellulose powder was added for anticaking and that this affirmation became the basis of their bargain with Kraft. Compl., ¶¶46, 47. Further, Plaintiffs do not have to allege or prove that their reliance was contemporaneous with the purchase. *See S. Broad. Grp.*, 145 F. Supp. 2d at 1324.

Kraft relies on *Byrnes v. Small*, 142 F. Supp. 3d 1262, 1274 n.9 (M.D. Fla. 2015) in support of its contention Plaintiffs failed to allege reliance on Kraft's affirmations. Mem. at 15. However, in *Byrnes*, the court pointed out that "[i]t is not entirely settled that justifiable reliance is a required element of a claim for breach of express warranty." *Byrnes v. Small*, 142 F. Supp. 3d 1262, 1274 n.9 (M.D. Fla. 2015). *Byrnes* also emphasized that plaintiffs failed to argue the fact they did not need to allege reliance, or provide authority on the issue, and additionally found plaintiffs failed to adequately plead reliance because they made conclusory allegations and failed to provide any factual support for their claim of breach of express warranty. *Id*. at 1274. These are all distinguishing facts from the allegations here. *See supra* § IV.B.2. Plaintiffs adequately allege breach of express warranty under Florida law.

### d.     Breach Of Express And Implied Warranty Under Minnesota Law

"Under Minnesota law, an express warranty may be created by '[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain' or '[a]ny description of the goods which is made part of the basis of the bargain.'" *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 267 F.R.D. 549, 564 (D. Minn. 2010) (citing Minn. Stat. § 336.2-313(1)(a)-(b)). *Zurn* held that plaintiffs do not need to prove reliance because "affirmations of fact made by the seller about the goods during a bargain are regarded as

17

part of the description of those goods; hence no particular reliance on such statements need be shown." *Id.*

Here, while not required under Minnesota law, Plaintiffs actually alleged that Kraft's affirmation that cellulose powder was added for anticaking and that this affirmation became the basis of their bargain with Kraft. Compl., ¶¶46, 47.

Kraft's argument that Plaintiffs must prove reliance is without merit, and its reliance on *Midland Loan Fin. Co. v. Madsen*, 217 Minn. 267 (1944) is misplaced. Mem. at 11. Reliance is no longer a required element. *See Krause v. City of Elk River*, 2015 Minn. App. Unpub. LEXIS 577, at *8 (Minn. Ct. App. June 22, 2015). As *Krause* explained, "since *Midland*, the Minnesota Supreme Court has stated that, … a party need only allege (1) the existence of warranty; (2) a breach of the warranty; and (3) causation of damages." *Id.* Moreover, the *Midland* opinion was limited to instances where there was no written agreement between the parties and where the aggrieved party could observe the defect in the purchased good. *Midland*, 217 Minn. at 278 ("[i]n the absence of express agreement a buyer cannot recover under a general warranty of quality for defects which were actually known by him at the time of the sale, or for defects which were obvious to ordinary observation, if he had a convenient opportunity to inspect the property").

Here, the *Midland* opinion is inapplicable – in addition to reasons stated above – because Plaintiffs had no means to discover Kraft used cellulose powder as filler at the time they purchased the Products or at any time thereafter.

## D. Plaintiffs Pleaded Facts To State A Claim For Unjust Enrichment

Kraft's only argument about unjust enrichment is that because Plaintiffs cannot demonstrate they suffered injury in reliance on anticaking misrepresentations, they cannot

establish a connection between Plaintiffs' detriment and Kraft's retention of the benefit. Mem. at 12-13. Among other reasons, Kraft's argument fails because it is a non-*sequitur* – reliance is not the means by which the causal link must be demonstrated.

To state a claim for unjust enrichment, "plaintiff must allege that defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989). With unjust enrichment, the "focus [is] on the defendant's retention of benefits." *Muehlbauer v. GMC*, 431 F. Supp. 2d 847, 853 (N.D. Ill. 2006); *see also Kerrigan v. Visalus, Inc.*, 112 F. Supp. 3d 580, 614 (E.D. Mich. 2015); *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 282-83 (1994); *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1019 (D. Minn. 2012); *Mitchell v. H & R Block, Inc.*, 783 So. 2d 812, 817 (Ala. 2000).

Applying Michigan law, *Kerrigan* explained that at the pleading stage, a plaintiff "must sufficiently allege a connection between … Defendant's actions and enrichment, on one hand, and Plaintiffs' losses on the other hand." *Kerrigan*, 112 F. Supp. 3d at 615; *see also Keith v. Ferring Pharms., Inc.*, 2016 U.S. Dist. LEXIS 131808, at *38 (N.D. Ill. Sep. 27, 2016); *Segovia v. Vitamin Shoppe, Inc.*, 2016 U.S. Dist. LEXIS 15171, at *26-27 (S.D.N.Y. Feb. 5, 2016). In *Segovia*, the court found the plaintiffs stated a claim for unjust enrichment under Florida law by alleging that plaintiff "purchased [a product] from Defendant, that Defendant was enriched as a result of [plaintiff]'s purchase and retains that benefit, and that it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefit it received from [plaintiff] in light of the false or misleading statements relating to lactase included on [the product]'s label." *Id*. at *26-27. Following the same rationale as *Segovia*, *Keith* also found plaintiffs stated a claim

for unjust enrichment under Illinois and Michigan law. *Keith*, 2016 U.S. Dist. LEXIS 131808, at *38.

Florida, Connecticut, Alabama, and Minnesota do not require an allegation or proof of causation to state a cause of action for unjust enrichment. *Dickinson v. Cosmos Broad. Co.*, 782 So. 2d 260, 266 (Ala. 2000) (a plaintiff must only allege "defendant holds money which, in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or fraud"); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012) (applying Florida law and stating that "Plaintiffs' unjust enrichment claim does not have a causation element"); *Harford Whalers*, 231 Conn. at 282-83 (unjust enrichment incorporates "no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable"); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 968 (D. Minn. 2009) ("Plaintiffs' unjust enrichment claim does not explicitly require a showing of causation.").

Here, Kraft promised consumers 100% cheese Products less an amount of cellulose for anticaking purposes. Plaintiffs and the other class members paid Kraft for those Products, but unbeknownst to consumers, Kraft did not deliver the Products as promised because the Products contain almost 100% more cellulose powder than the FDA allows cheese producers and manufacturers to use to prevent caking. Compl., ¶¶23, 33, 34; 51 Fed. Reg. at 30210-2. As a result of their misconduct, Kraft has been enriched. Compl., ¶54.

Kraft relies on *Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011) for the proposition that "a claim for unjust enrichment requires the plaintiff to establish 'a connection between [plaintiff's] detriment and the defendant's retention of benefit.'" Mem. at 18. In *Cleary*, however, "plaintiffs disclaim[ed] any need to allege either personal damages, deception, or

reliance with regard to any member of the class." *Cleary*, 656 F.3d at 519. Consequently, the *Cleary* court found it "difficult to see how the defendants' retention of the revenue paid by a consumer [was] to that consumer's detriment." *Id*. Indeed, plaintiffs in *Cleary* did not even allege they were damaged.

Unlike the plaintiffs in *Cleary*, Plaintiffs here alleged they saw the Products' labels, and bought the Products after having seen the labels. Compl., ¶34. Plaintiffs allege the labels falsely represent that the Products are 100% cheese and that Kraft uses cellulose powder to prevent caking because at least half of the cellulose powder Kraft puts in the Products is filler and not needed for anticaking purposes. *Id.*, ¶¶2, 4, 23, 27, 33. Plaintiffs also allege Kraft was unjustly enriched at Plaintiffs' expense – *i.e.*, Kraft charged Plaintiffs and other consumers the same amount for cheese as it did for a much cheaper cellulose powder – and that Plaintiffs suffered damages as a result of Kraft's inclusion of cellulose powder as filler. *Id.*, ¶¶54-56.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Kraft's Motion for Judgment on the Pleadings in its entirety.

Respectfully submitted,

Dated: January 24, 2019                    BLOOD HURST & O'REARDON, LLP

By:   *s/ Timothy G. Blood*
Timothy G. Blood (149343CA)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619-338-1100
tblood@bholaw.com

Ben Barnow
Erich P. Schork
Jeffrey Blake
BARNOW AND ASSOCIATES, P.C.
1 North LaSalle Street, Suite 4600
Chicago, IL  60602
Tel: 312/621-2000

00145737

b.barnow@barnowlaw.com
e.schork@barnowlaw.com
j.blake@barnowlaw.com

Eduard Korsinsky
Andrea Clisura
LEVI & KORSINSKY LLP
30 Broad Street, 24th Floor
New York, NY 10004
Tel: 212/363-7500
ek@zlk.com
aclisura@zlk.com

*Proposed Co-Lead Counsel*

22

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 24, 2019, a copy of the foregoing document was electronically filed with the United States District Court, Southern District of Illinois, via the Court's CM/ECF filing system, which will send notification of such filing to counsel of record, on January 24, 2019.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

00145737