## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: 100% GRATED PARMESAN CHEESE MARKETING AND SALES PRACTICES LITIGATION | Case No. 1:16-cv-05802 <br> MDL No. 2705 <br><br> The Hon. Gary S. Feinerman |
| *This Document Relates to All Cases on The Kraft Heinz Company Track* | |

## REPLY IN SUPPORT OF DEFENDANT KRAFT HEINZ COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS

**JENNER & BLOCK LLP**

Dean N. Panos (Ill. Bar No. 6203600)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350

*-and-*

Kenneth K. Lee (admitted *pro hac vice*)
klee@jenner.com
Alexander M. Smith (admitted *pro hac vice*)
asmith@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Tel.: (213) 239-5100

*Attorneys for Defendant*
The Kraft Heinz Company

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................3

     I.     Plaintiffs' Failure to Allege That They Saw or Relied on the Challenged
           Anticaking Statement Precludes Them from Stating a Plausible Consumer
           Fraud Claim Under Connecticut, Illinois, and Michigan Consumer Protection
           Statutes. ............................................................................................................3

     II.    Plaintiffs Lack Article III Standing Because Their Alleged Injuries Are Not
           Fairly Traceable to the "Anticaking" Statement in the Ingredient Line. .............6

     III.   The Challenged "Anticaking" Statement Is Accurate and Not Misleading.........9

     IV.   Plaintiffs' Warranty Claims Fail for Lack of Reliance and/or Privity...............10

     V.    Plaintiffs Cannot State an Unjust Enrichment Claim. .......................................15

CONCLUSION...................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abraham v. Volkswagen of Am., Inc.*,
    795 F.2d 238 (2d Cir. 1986)......................................................................12

*Ashgari v. Volkswagen Grp. of Am., Inc.*,
    42 F. Supp. 3d 1306 (C.D. Cal. 2013) .....................................................11

*Am. Int'l Adjustment Co. v. Galvin.*,
    86 F.3d 1455 (7th Cir. 1996) ......................................................................6

*Bober v. Glaxo Wellcome PLC*,
    246 F.3d 934 (7th Cir. 2001) ....................................................................15

*Burr v. Sherwin Williams Co.*,
    268 P.2d 1041 (Cal. 1954) ...................................................................11, 12

*Byrnes v. Small*,
    142 F. Supp. 3d 1262 n.9 (M.D. Fla. 2015).............................................13

*Cleary v. Philip Morris Inc.*,
    656 F.3d 511 (7th Cir. 2011) ....................................................................15

*County of Cook v. HSBC N. Am. Holdings Inc.*,
    136 F. Supp. 3d 952 (N.D. Ill. 2015) .........................................................7

*De Bouse v. Bayer AG*,
    922 N.E.2d 309 (Ill. 2009).........................................................................4

*Decerbo v. Melitta USA Inc.*,
    No. 16-850, 2016 WL 7206244 (M.D. Fla. Oct. 17, 2016) .....................14

*Evraets v. Intermedics Ocular, Inc.*,
    29 Cal. App. 4th 779 (1994) .....................................................................11

*Guttmann v. Nissin Foods (U.S.A.) Co.*,
    No. 15-567, 2015 WL 4881073 (N.D. Cal. Aug. 14, 2015) ......................6

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...................................................11

*Ham v. Hain Celestial Grp., Inc.*,
    70 F. Supp. 3d 1188 (N.D. Cal. 2014) .....................................................11

*Hamon v. Digiliani,*
    174 A.2d 294 (Conn. 1961) ................................................................13

*Haywood v. Massage Envy Franchising, LLC,*
    887 F.3d 329 (7th Cir. 2018) ..............................................................4

*Henderson v. Gruma Corp.,*
    No. 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ................10

*Hendricks v. Callahan,*
    972 F.2d 190 (8th Cir. 1992) ..............................................................14

*Hendricks v. StarKist Co.,*
    30 F. Supp. 3d 917 (N.D. Cal. 2014) ..................................................11

*Hobco, Inc. v. Tallahassee Assocs.,*
    807 F.2d 1529 (11th Cir. 1987) ...........................................................13

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.,*
    275 F. Supp. 3d 910 (N.D. Ill. 2017) ...............................................9, 15

*In re ConAgra Foods, Inc.,*
    90 F. Supp. 3d 919 (C.D. Cal. 2014) ...................................................12

*In re OnStar Contract Litig.,*
    278 F.R.D. 352 (E.D. Mich. 2011) .......................................................5

*In re Packaged Seafood Products Antitrust Litigation,*
    242 F. Supp. 3d 1033 (S.D. Cal. 2017) .................................................5

*In re Zurn Pex Plumbing Products Liability Litigation,*
    267 F.R.D. 549 (D. Minn. 2010) .........................................................14

*Kahn v. Volkswagen of Am., Inc.,*
    No. 07-05004090, 2008 WL 590469 (Conn. Super. Ct. Feb. 13, 2008) ....12

*Keegan v. Am. Honda Motor Co.,*
    284 F.R.D. 504 (C.D. Cal. 2012) ...................................................11, 12

*Keep Chicago Livable v. City of Chicago,*
    --- F.3d ----, 2019 WL 178566 (7th Cir. 2019) .....................................9

*Krause v. City of Elk River,*
    No. 14-1575, 2015 WL 3823093 (Minn. Ct. App. June 22, 2015) .........14

*Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.,*
    848 N.W.2d 539 (Minn. 2014) ...........................................................14

*Manchouck v. Mondelēz Int'l Inc.*,
    No. 13-2148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ................................................10

*Meyers v. Nicolet Rest. of De Pere, LLC*,
    843 F.3d 724 (7th Cir. 2016) ........................................................................................................6

*Midland Loan Fin. Co. v. Madsen*,
    14 N.W. 2d 475 (Minn. 1944)......................................................................................................14

*Muir v. Playtex Prods., LLC*,
    983 F. Supp. 2d 980 (N.D. Ill. 2013) ...........................................................................................4

*Nature's Prods., Inc. v. Natrol, Inc.*,
    990 F. Supp. 2d 1307 (S.D. Fla. 2013) .......................................................................................14

*Payton v. County of Kane*,
    308 F.3d 673 (7th Cir. 2002) ........................................................................................................7

*Phillips v. Apple Inc.*,
    No. 15-4879, 2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ........................................................7

*Red v. Kraft Foods, Inc.*,
    No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)........................................................10

*Royal Typewriter Co. v. Xerographic Supplies Corp.*,
    719 F.2d 1092 (11th Cir. 1983) ..................................................................................................13

*S. Broad. Grp., LLC v. Gem Broad., Inc.*,
    145 F. Supp. 2d 1316 (M.D. Fla. 2001) .....................................................................................13

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .................................................................................................................7

*Sterk v. Redbox Automated Retail, LLC*,
    770 F.3d 618 (7th Cir. 2014) ........................................................................................................7

*Stevenson Lumber Co.-Suffield v. Chase Assocs., Inc.*,
    932 A.2d 401 (Conn. 2007) ..........................................................................................................5

*Stickrath v. Globalstar, Inc.*,
    527 F. Supp. 2d 992 (N.D. Cal. 2007) .........................................................................................8

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) ......................................................................................................6

*TD Props., LLC v. VP Bldgs., Inc.*,
    602 F. Supp. 2d 351 (D. Conn. 2009) .......................................................................................12

*Thursby v. Reynolds Metals Co.*,
    466 So. 2d 245 (Fla. Ct. App. 1984) ...............................................................................13, 14

*Weimar v. Yacht Club Point Estates, Inc.*,
    223 So. 2d 100 (Fla. Ct. App. 1969) ........................................................................................13

*Weinstat v. Dentsply Int'l, Inc.*,
    180 Cal. App. 4th 1213 (2010) .................................................................................................12

*Wiegel v. Stork Craft Mfg., Inc.*,
    891 F. Supp. 2d 941 (N.D. Ill. 2012) ........................................................................................8

**STATUTES**

Fla. Stat. Ann. § 672.313, cmt. 3 ....................................................................................................14

**OTHER AUTHORITIES**

21 C.F.R. § 133.146(b) ...................................................................................................................10

51 Fed. Reg. 30210 (Aug. 25, 1986) ..............................................................................................10

## INTRODUCTION

In its Order on the motions to dismiss Plaintiffs' Amended Consolidated Class Action Complaint, this Court pointed to the inherent inconsistency between (1) Plaintiffs' earlier theory of deception, which alleged that they read the statement "100% Grated Parmesan Cheese" to mean that the product had *no* non-cheese ingredients whatsoever, and (2) their current "anticaking" theory of deception, which alleges that they actually *knew* that the product had a non-cheese ingredient — "cellulose powder to prevent caking" — but that the amount was allegedly excessive.

Put another way, having previously alleged that they believed that Kraft Grated Parmesan Cheese did *not* contain cellulose, Plaintiffs cannot now plausibly allege that they saw and were misled by the statement "cellulose powder to prevent caking" in the ingredient line. As this Court correctly recognized, this inconsistency "dooms Plaintiffs' claims" under any consumer fraud statute that requires a "causal connection between the alleged misrepresentation and the plaintiff's alleged injury." ECF No. 297 ("Order"), at 16. This Court accordingly dismissed Plaintiffs' claims under the consumer protection statutes of California, New York, and four other states.

But the Court's prior order did not address whether Plaintiffs' contradictory anticaking theory passes muster under the consumer protection statutes of Connecticut, Illinois, and Michigan. As set forth in Kraft Heinz's motion, Plaintiffs' claims fail under those three states' laws, too, as they similarly require a causal connection between the alleged misrepresentation and the plaintiff's injury. ECF No. 316, at 6-8. Because Plaintiffs have not alleged and cannot allege that they saw the "cellulose powder to prevent caking" statement in the ingredient line when they purchased the product, their claims under Connecticut, Illinois, and Michigan law must fail.

Notably, Plaintiffs do not even attempt to argue that Connecticut, Illinois, and Michigan law is materially different from those in California, New York, and the other four states in which

the claims were dismissed earlier. Rather, Plaintiffs resort to attempting to re-litigate arguments this Court has already rejected and insisting that the Court got it wrong. Plaintiffs' arguments are as baseless now as they were three months ago when this Court rejected them.

If anything, Plaintiffs' opposition brief underscores that this entire lawsuit should be tossed for lack of standing. Simply put, Plaintiffs' inability to establish a causal connection between the challenged "anticaking" statement and their alleged injuries deprives them of Article III standing. Critically, the challenged conduct in this case is not the *use* of cellulose, which is expressly permitted by the FDA for use in grated cheeses; instead, it is the *representation* that cellulose is added "to prevent caking." Having alleged that they relied solely on the phrase "100% Grated Parmesan Cheese" and did *not* look at the ingredient line, Plaintiffs cannot plausibly allege that they saw — or were deceived by — the "anticaking" statement. Thus, Plaintiffs lack standing because they cannot establish that their alleged injuries are "fairly traceable" to the "anticaking" representation, as is required by Article III. This is entirely consistent with the Court's earlier ruling that Plaintiffs had standing for their "100% Grated Parmesan Cheese" claim. In that instance, Plaintiffs alleged they saw that statement; therefore their alleged injuries were "fairly traceable" to it. In contrast, Plaintiffs do not now allege that they saw or relied on the "cellulose powder to prevent caking" statement; therefore, their alleged harm cannot be "fairly traceable" to it.

Plaintiffs' claims fail for additional, independent reasons:

The consumer fraud claims also fail because the "anticaking" statement is factually accurate. Plaintiffs do not dispute that powdered cellulose prevents caking. Nor do they cite a single case that holds, or even suggests, that the *amount* of a substance in a product renders a representation about its presence or absence misleading. Instead, Plaintiffs rely on a single, out-of-context snippet from a decades-old comment in the Federal Register to suggest misleadingly that the amount of cellulose in Kraft Grated Parmesan Cheese is excessive. But the actual, adopted FDA regulation flatly contradicts

Plaintiffs' position. In any event, the relevant question is not whether the amount of cellulose is excessive; instead, it is whether powdered cellulose prevents grated cheese from caking. It does.

Plaintiffs' breach-of-warranty claims under California, Connecticut, Florida, and Minnesota law also fail, either for lack of privity (which Plaintiffs concede is absent) or lack of reliance.

Finally, Plaintiffs' tag-along unjust enrichment claim fails: if Plaintiffs did not see or rely on the "anticaking" representation in the ingredient line, it is difficult to fathom how Kraft Heinz could have been unjustly enriched by that representation.

<u>**ARGUMENT**</u>

I. **Plaintiffs' Failure to Allege That They Saw or Relied on the Challenged Anticaking Statement Precludes Them from Stating a Plausible Consumer Fraud Claim Under <u>Connecticut, Illinois, and Michigan Consumer Protection Statutes.</u>**

In its earlier Order, the Court correctly recognized that Plaintiffs' anticaking theory of deception was internally inconsistent with their earlier theory that they "purchased the products believing them to be '100% Grated Parmesan Cheese'" — *i.e.,* they earlier alleged that they believed the product was made solely of cheese without any non-cheese ingredients. Order at 16. As the Court explained, the "necessary implication" of this earlier theory of deception "is that Plaintiffs never consulted, let alone relied upon, the ingredient labels' assertion that cellulose was added to prevent caking." *Id.* Plaintiffs therefore cannot now pivot and plausibly claim that they were misled by the "cellulose powder to prevent caking" line in the ingredient list, given that they earlier implicitly admitted that they never read or relied on it.

This Court specifically cited this inconsistency in dismissing Plaintiffs' statutory consumer fraud claims under California, New York, Alabama, Florida, Minnesota, and New Jersey. *See id.* (ruling that Plaintiffs' failure to establish that they saw or relied on the "anticaking" claim precludes them from establishing causation and "dooms [their] claims" under those six state laws). The Court, however, did not address the viability of Plaintiffs' claims under Connecticut, Illinois, and Michigan

consumer fraud statutes. But as set forth in Kraft's motion (ECF No. 316, at 6-8) and below, these three states' statutes — like the other six state laws — require "some form of causal connection between the alleged misrepresentation and the plaintiff's alleged injury." *Id.* Simply put, Plaintiffs do not articulate a causal connection between their alleged injuries and the "anticaking" statement, and they accordingly cannot state a plausible statutory consumer fraud claim under these three statutes.

Notably, Plaintiffs do not even attempt to argue in their opposition that the consumer protection statutes of Connecticut, Illinois, and Michigan laws different from the other state law claims that this Court dismissed. Rather, they re-argue points that this Court rejected already:

<u>First</u>, it is irrelevant whether one views the "anticaking" statement as an affirmative representation or as an omission: if Plaintiffs cannot establish that this statement *caused* their alleged injuries, then they cannot prevail on their claims under any of these statutes. *See De Bouse v. Bayer AG*, 922 N.E.2d 309, 314-16 (Ill. 2009) (holding that "the plaintiff must actually be deceived by a statement or omission . . . by the defendant" to state an ICFA claim and cannot establish causation if he has not "seen or heard the allegedly deceptive advertisements").

"Under the ICFA, deceptive advertising cannot be the proximate cause of damages . . . unless it actually deceives the plaintiff."[1] *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 991 (N.D. Ill. 2013) (Feinerman, J.) (citations and internal quotation marks omitted); *see also Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 334 (7th Cir. 2018) (holding that a plaintiff must establish that the "alleged deception was the but-for cause of her injury" to state a claim

---

[1] Plaintiffs rely on an out-of-context snippet from *Muir* to suggest that a plaintiff can allege proximate causation simply by alleging that, "after the alleged misrepresentations were made, the wrongful charges were paid." ECF No. 335, at 10. But *Muir* clearly did not dispense with the need to identify a causal connection between the alleged misrepresentation and the plaintiff's alleged injury. Rather, it made clear that a plaintiff must "allege that the plaintiff incurred a financial injury upon purchasing a product *based on the defendant's deceptive statements*." *Muir*, 983 F. Supp. 2d at 991 (citation omitted) (emphasis added).

under the ICFA). The same rule applies under Connecticut law. *See Stevenson Lumber Co.-Suffield v. Chase Assocs., Inc.*, 932 A.2d 401, 406 (Conn. 2007) ("[I]n order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act *and* that, 'as a result of' this act, the plaintiff suffered an injury. The language 'as a result of' requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff."). And Michigan law also requires a plaintiff to establish damages resulting from the defendant's alleged deception.[2] *See In re OnStar Contract Litig.*, 278 F.R.D. 352, 376 (E.D. Mich. 2011) (noting that an MCPA claim requires proof of "reliance" and "*resulting* damages") (emphasis added).

Second, Plaintiffs assert they have sufficiently alleged causation because their Amended Complaint alleges that they saw "the Products' labels." ECF No. 335, at 11. But this bare and vague allegation does not come close to establishing that they saw — or relied on — the statement that "cellulose powder [is added] to prevent caking." Plaintiffs' core theory of deception is that consumers interpret the phrase "100% Grated Parmesan Cheese," which appears on the *front* of the package, to imply that Kraft Grated Parmesan Cheese contains no non-cheese ingredients whatsoever. Am. Compl. ¶ 3. In pursuing that theory, Plaintiffs' counsel denied that a reasonable consumer would be expected to look at the ingredient line, which reveals the presence of cellulose:

> [O]ne has to look at the entire advertisement . . . but one doesn't have to investigate. So one can look at the . . . advertisement. They can look at the label. They ***don't have to go and look at the back of the label*** and figure out whether or not what is said is true or false.

---

[2] Even if Plaintiffs are correct that *OnStar* does not address the adequacy of an MCPA claim at the pleading stage, it nonetheless stands for the uncontroversial proposition that the MCPA requires a plaintiff to establish a causal connection between the defendant's alleged misconduct and the plaintiff's alleged injuries. Even one of the cases Plaintiffs cite, *In re Packaged Seafood Products Antitrust Litigation*, notes that the MCPA requires a plaintiff to establish that he "relied on such deceptive conduct when making a purchase." 242 F. Supp. 3d 1033, 1076 (S.D. Cal. 2017).

Dec. 4, 2017 Hearing Tr. at 9:23-10:3 (emphasis added). Plaintiffs' counsel even told this Court that a consumer should not be expected to "turn [her] wrist so that the canister is turned 180 degrees." *Id.* at 10:11-14. Having denied that they saw (or should have been expected to see) the ingredient line, Plaintiffs cannot plausibly allege that they were deceived by the "anticaking" statement, which appears *only* in the ingredient line and which expressly highlights the presence of cellulose. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("[A] plaintiff pleads himself out of court where it would be necessary to contradict the complaint in order to prevail on the merits.") (citation and internal quotation marks omitted); *see also Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996) (noting that a plaintiff cannot plead inconsistent facts in her complaint unless she is "legitimately in doubt about the facts in question"). Therefore, Plaintiffs' consumer fraud claims under Connecticut, Illinois, and Michigan law must be dismissed for the same reason this Court dismissed Plaintiffs' six other statutory consumer fraud claims.

## II. Plaintiffs Lack Article III Standing Because Their Alleged Injuries Are Not Fairly Traceable to the "Anticaking" Statement in the Ingredient Line.

The Court's prior ruling on the lack of a causal link between the alleged misrepresentation and alleged harm leads to the logical conclusion that Plaintiffs' entire lawsuit must be tossed for lack of Article III standing.

Article III's standing requirement vindicates the principle "that courts do not decide abstract principles of law but rather concrete cases and controversies." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (citation and internal quotation marks omitted). In food labeling cases, Article III standing ensures that federal courts hear cases involving consumers who claim actual deception — and not a case from a "self-appointed inspector general roving the aisles of our supermarkets" for potential lawsuits. *Guttmann v. Nissin Foods (U.S.A.) Co.*, No. 15-567, 2015 WL 4881073, at *3 (N.D. Cal. Aug. 14, 2015). And in class actions, Article

III standing ensures that the named plaintiffs have *personally* suffered an injury by prohibiting them from "piggy-back[ing] on the injuries of the unnamed class members . . . ." *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (citations and internal quotation marks omitted).

To that end, Article III requires a plaintiff to establish both he has suffered an "injury in fact" and that that this injury is "fairly traceable to the challenged conduct of the defendant."[3] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To satisfy the causation prong of Article III standing, the injury complained of must be fairly traceable to the challenged action of the defendant — *i.e.*, there must be a causal connection between the injury and the conduct." *County of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 959-60 (N.D. Ill. 2015) (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)).

Plaintiffs assert that they have standing because their alleged injury (overpaying for Kraft Grated Parmesan Cheese) is traceable to Kraft's alleged misconduct — *i.e.*, "add[ing] excessive amounts of cellulose." ECF No. 335, at 8. But the relevant conduct in this case is *not* the presence of cellulose to Kraft Grated Parmesan Cheese; instead, it is the *representation* that "cellulose powder [is] added to prevent caking." To establish that their injuries were "caused by" the challenged "anticaking" representations, "Plaintiffs must have seen the representations and taken action based on what they say — in other words, Plaintiffs must have actually relied on the misrepresentations or omissions to have been harmed by them."[4] *Phillips v. Apple Inc.*, No. 15-

---

[3] Plaintiffs assert that "[w]hether plaintiff's injury is 'fairly traceable to' defendant's conduct[] is an inquiry into whether the exercise of the Court's remedial powers would redress the claimed injuries." ECF No. 335, at 6. Not so. Whether an injury is "traceable to the challenged conduct of the defendant" is a separate inquiry from whether that injury is "likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547.

[4] Plaintiffs attempt to distinguish *Phillips* by arguing that the "anticaking" statement deceptively omitted that Kraft Heinz uses cellulose as a "filler." ECF No. 335, at 8. This argument is a red herring: if Plaintiffs did not even *see* the challenged "anticaking" statement, then it is irrelevant — at least for standing purposes — what the "anticaking" statement did or did not say.

4879, 2016 WL 1579693, at *7 (N.D. Cal. Apr. 19, 2016) (dismissing lawsuit for lack of standing when the plaintiffs did "not assert that they read or relied on [the challenged] statement" and conceded that they were "*unlikely* to have viewed [this] statement"). Put another way, a plaintiff cannot be deceived by a statement she does not see. That is why courts routinely dismiss false advertising cases when the plaintiffs fail to allege that they saw the challenged advertising.[5]

In a bid to salvage their complaint, Plaintiffs claim that they have standing because they have "been exposed to Kraft's advertisements" and have "seen the Products' labels." ECF No. 335, at 6 (quoting Am. Compl. ¶ 34). But they do not plausibly allege that they saw the "anticaking" representation, which appears only in small font in the ingredient line on the back of each package. As this Court recognized, the "necessary implication" of Plaintiffs' allegation that they "purchased the Products believing them to be '100% Grated Parmesan Cheese'" is that they "never consulted, let alone relied upon, the ingredient labels' assertion that cellulose was added to prevent caking." Order at 16.

Plaintiffs point to a smattering of "anticaking allegations" in their Amended Complaint to dispute the "implication" the Court drew in its earlier Order. ECF No. 335, at 7. Not a single one of those allegations establish that *Plaintiffs* saw or relied on the challenged "anticaking" statement.[6] At best, these allegations establish that Plaintiffs' *lawyers* state that the "anticaking" statement appeared on the back of the label (which Kraft Heinz does not dispute). Those

---

[5] *See, e.g.*, *Wiegel v. Stork Craft Mfg., Inc.*, 891 F. Supp. 2d 941, 943 (N.D. Ill. 2012) (no Article III standing where the plaintiff did not allege she "read" the misleading ad); *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 996 (N.D. Cal. 2007) (no Article III standing where "Plaintiffs fail to allege that they read any of the alleged misrepresentations").

[6] *See* Am. Compl. ¶¶ 4-6 (alleging, *inter alia*, that Kraft Heinz "states. . . in small print on the back of the Products' container[] that the Products contain cellulose powder for anticaking purposes"); *id.* ¶¶ 33-34 (alleging, *inter alia*, that Plaintiffs have "been exposed to Defendant's advertisements" and have "seen the Products' labels"); *id.* ¶¶ 46-47 (alleging, *inter alia*, that Kraft Heinz "stated in fine print on the back of the label that cellulose powder was added to prevent caking").

allegations do *not* establish that *Plaintiffs* specifically saw the "anticaking" statement. And because Plaintiffs allege that they construed the statement "100% Grated Parmesan Cheese" to imply the absence of any non-cheese ingredients whatsoever, Plaintiffs cannot *also* allege that they saw or relied on the "anticaking" statement, which would have disclosed the presence of cellulose.

Plaintiffs insist that "[n]othing has changed since the last time the Court found Plaintiffs satisfied Article III standing." ECF No. 335, at 5. Not so. In its initial Order granting Defendants' motion to dismiss, the Court concluded that Plaintiffs had standing because Plaintiffs' claims were based on the "100% Grated Parmesan Cheese" label, which Plaintiffs alleged that they had viewed and relied upon. *See In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 919 (N.D. Ill. 2017). In other words, the Court held that Plaintiffs had standing because they viewed that statement, to which their alleged harm was "fairly traceable."

Here, by contrast, Plaintiffs have not plausibly alleged that they saw or relied on the "anticaking" representation; thus, they cannot establish that their alleged injuries are traceable to it. Even if this Court initially concluded that Plaintiffs had Article III standing, the dismissal of Plaintiffs' "100%" claims requires the Court to determine anew whether Plaintiffs have standing under their "anticaking" theory. *See Keep Chicago Livable v. City of Chicago*, --- F.3d ----, 2019 WL 178566, at *2 (7th Cir. 2019) (noting that "[t]he necessity of demonstrating and maintaining standing does not subside as litigation proceeds" and that "standing must be present at all stages of the litigation"). Because Plaintiffs cannot establish that their alleged injuries are "fairly traceable" to the statement that "cellulose powder [is] added to prevent caking," they lack standing.

## III. The Challenged "Anticaking" Statement Is Accurate and Not Misleading.

There is another independent reason to dismiss Plaintiffs' consumer fraud claims: the ingredient line is factually accurate. Plaintiffs do not dispute that Kraft Grated Parmesan Cheese

contains cellulose or that cellulose prevents grated cheese from clumping together. As Plaintiffs concede, many courts have rejected claims that are based on the quantity of a specific ingredient, as that quantity does not affect whether the challenged claim is true or false.[7]

Instead of attempting to distinguish these cases, Plaintiffs rely on a single comment from the FDA to suggest that it only allows grated cheese products to contain up to 2 percent cellulose by weight. *See* 51 Fed. Reg. 30210 (Aug. 25, 1986). But the FDA's standard of identity for "grated cheese" does not set forth a rigid 2% cap on cellulose; to the contrary, it specifically requires that each "cheese ingredient . . . is present at a *minimum* level of 2 percent of the weight of the finished food." 21 C.F.R. § 133.146(b) (emphasis added). In any event, Plaintiffs miss the point. Plaintiffs do not allege that cellulose ceases to prevent caking beyond a certain threshold. It is accordingly irrelevant whether Kraft Grated Parmesan Cheese has one percent, two percent, or 3.8% cellulose by weight; all that matters is that cellulose prevents caking. Indeed, had Kraft Heinz been *less* descriptive and simply stated "cellulose powder" in the ingredient line, Plaintiffs would not have any claim against Kraft Heinz at all.

## IV. Plaintiffs' Warranty Claims Fail for Lack of Reliance and/or Privity.

As explained above, Plaintiffs cannot plausibly establish that they saw or relied on the challenged "anticaking" representation, which admittedly appears only in "small print on the back

---

[7]  *See, e.g.*, *Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012), *adopted as final order*, 2012 WL 5502359 (C.D. Cal. Oct. 26, 2012) (rejecting claim alleging that statement "made with real vegetables" implied that Vegetable Thins crackers "contain[] a significant amount of vegetables"); *Manchouck v. Mondelēz Int'l Inc.*, No. 13-2148, 2013 WL 5400285, at *2-3 (N.D. Cal. Sept. 26, 2013) (holding that statement "made with real fruit" was accurate when defendant's cookies were made with "a small amount of processed fruit puree"); *Henderson v. Gruma Corp.*, No. 10-04173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) (dismissing lawsuit challenging claim that guacamole dip was made "with garden vegetables" because the "product does in fact contain vegetables that can be grown in a garden" and accurately "speaks to the presence" of vegetables in the dip).

of the Products' container." Am. Compl. ¶ 4. Plaintiffs also concede that they did not buy Kraft Grated Parmesan Cheese directly from Kraft Heinz and accordingly cannot establish privity. These deficiencies are fatal to Plaintiffs' breach-of-warranty claims.

California. To state a claim for breach of express warranty "in the absence of privity, California law requires a showing that a plaintiff relied on an alleged omission or misrepresentation." *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 546 (C.D. Cal. 2012); *see also Ashgari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1335 (C.D. Cal. 2013) (dismissing breach of express warranty claim where "[t]he complaint does not allege that any plaintiff relied on the express warranty in deciding to purchase his or her vehicle"). The same requirements apply to Plaintiffs' implied warranty claim: when a plaintiff alleges that the products do not "conform to the promises or affirmations of fact" on the label, as Plaintiffs allege here, "the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product."[8] *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1106 (N.D. Cal. 2017) (citing *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014)). Here, because Plaintiffs cannot establish reliance on the "anticaking" representation or privity with Kraft Heinz, they cannot state a breach-of-warranty claim under California law.

Plaintiffs cite *Evraets v. Intermedics Ocular, Inc.*, 29 Cal. App. 4th 779 (1994), for the proposition that California law simply does not require privity to state a breach-of-warranty claim.

---

[8] Plaintiffs assert that California law does not require privity in breach-of-warranty cases involving food products. ECF No. 335, at 15. But "[t]he 'foodstuffs exception' only applies to alleged breaches of the implied warranty of fitness for human consumption which 'runs from the manufacturer to the ultimate consumer regardless of privity of contract.'" *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1196 (N.D. Cal. 2014) (quoting *Burr v. Sherwin Williams Co.*, 268 P.2d 1041 (Cal. 1954)). Here, Plaintiffs do not allege that Kraft Grated Parmesan Cheese is inedible or unfit for human consumption; rather, they allege that it does "not conform to the promises and affirmations of fact made on [the] containers and labels." Am. Compl. ¶ 66. California's "foodstuffs rule" accordingly does not apply.

But as the California Supreme Court has made clear, a plaintiff can state a breach-of-warranty claim in the absence of privity *only* if he alleges reliance on the warranty. *See Burr*, 268 P.2d at 1049 (holding that a plaintiff could state a breach of warranty claim "without a showing of privity" only if he "relied on representations made by the manufacturer in labels or advertising material").

Plaintiffs are similarly incorrect in relying on *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2014), for the proposition that "[p]roof of reliance on specific promises or representations is not required." In making this pronouncement, the court in *ConAgra* relied on a California Court of Appeal case, *Weinstat v. Dentsply International, Inc.*, 180 Cal. App. 4th 1213 (2010), in which the defendant sold its goods directly to the plaintiff. Courts have limited *Weinstat*'s holding to cases in which the buyer and seller are in privity, and they have maintained that reliance is required when they are not. *See, e.g.*, *Keegan*, 284 F.R.D. at 546 (rejecting the plaintiffs' argument that reliance is not required and noting that the absence of privity is a "crucial distinction that sets this case apart from *Weinstat*").

Connecticut. Under Connecticut law, a claim for breach of the implied warranty of merchantability requires the plaintiff to establish vertical privity with the defendant.[9] *See Kahn v. Volkswagen of Am., Inc.*, No. 07-05004090, 2008 WL 590469, at *8 (Conn. Super. Ct. Feb. 13, 2008) ("Connecticut law has maintained a privity requirement that prevents parties who are not in contractual privity with the warrantor from enforcing any implied warranty."); *TD Props., LLC v. VP Bldgs., Inc.*, 602 F. Supp. 2d 351, 362 (D. Conn. 2009) (holding that the plaintiff's claim for

---

[9] Although Plaintiffs argue that *Kahn* inapposite because it involved claims under the Magnuson-Moss Warranty Act, that is a distinction without a difference because "[s]tate law, rather than Magnuson-Moss, governs the creation and enforcement of implied warranties." *Kahn*, 2008 WL 590469, at *7 (citing *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986)). And as the opinion in *Kahn* makes clear, the court was discussing privity requirements *under Connecticut law*, not under federal law. *See id.* at *8.

breach of implied warranty "fails because of its lack of privity with the Defendant"). Plaintiffs do not dispute that they did not purchase Kraft Grated Parmesan Cheese directly from Kraft Heinz

The only case Plaintiffs cite to the contrary is a nearly 60-year old case, *Hamon v. Digiliani*, 174 A.2d 294 (Conn. 1961). Even if *Hamon* is still good law, that case excuses a plaintiff from establishing privity *only* when he "buys the product *in reliance on the representations* and later suffers injury because the product fails to conform to them." *Id.* at 298 (emphasis added). Because Plaintiffs cannot establish that they relied on the "anticaking" claim, they cannot state a breach-of-warranty claim under Connecticut law.

<u>Florida</u>. In Florida, "ample law suggests that justifiable reliance is in fact a required element of a breach of express warranty claim." *Byrnes v. Small*, 142 F. Supp. 3d 1262, 1275 n.9 (M.D. Fla. 2015); *see also Hobco, Inc. v. Tallahassee Assocs.*, 807 F.2d 1529, 1533 (11th Cir. 1987) ("Under Florida law, an express warranty may arise only where justifiable reliance upon assertions or affirmations is part of the bargain.") (citations omitted). Plaintiffs point to language from *Byrnes* suggesting that the law is unsettled, but *Byrnes* identified only *one* case — *Southern Broadcast Group, LLC v. Gem Broadcasting, Inc.*, 145 F. Supp. 2d 1316 (M.D. Fla. 2001) — that suggests reliance is not required to state a breach of express warranty claim under Florida law. *See Byrnes*, 142 F. Supp. 3d at 1275 n.9. The fact that Plaintiffs can point to *one* outlier case should not compel this Court to ignore the "ample" case law that requires reliance.[10] *Id.*

---

[10] *See also, e.g.*, *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1101 (11th Cir. 1983) ("The buyer's knowledge or absence of reliance will negate the existence of an express warranty."); *Thursby v. Reynolds Metals Co.*, 466 So. 2d 245, 250 (Fla. Ct. App. 1984) (holding that the plaintiffs did not establish a breach of express warranty claim when they "show no reliance . . .on any affirmations of particular facts"); *Weimar v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 104 (Fla. Ct. App. 1969) (noting that reliance is an "essential allegation[]" of a claim for breach of express warranty and must be "expressly set forth" in the complaint).

Plaintiffs also point to a comment to Florida's Uniform Commercial Code to suggest that the Florida legislature did not intend to require reliance to state a breach of express warranty claim. *See* Fla. Stat. Ann. § 672.313, cmt. 3. But even after the Florida legislature revised Section 672.313 in 1997 (and not in 2018, as Plaintiffs misleadingly suggest), Florida courts have continued to require reliance to state a claim for breach of express warranty. *See, e.g.*, *Nature's Prods., Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1320 (S.D. Fla. 2013) (discussing Section 672.313 and noting that an "express warranty is generally considered to arise only when the seller asserts a fact . . . on which the buyer justifiably relies") (quoting *Thursby*, 466 So. 2d at 250); *Decerbo v. Melitta USA Inc.*, No. 16-850, 2016 WL 7206244, at *6 (M.D. Fla. Oct. 17, 2016) (discussing Section 672.313 and noting that "alleged reliance" is required to "state a claim for breach of express warranty").

Minnesota. Minnesota law requires a plaintiff to establish reliance to prevail on a claim for breach of express or implied warranty. *See Midland Loan Fin. Co. v. Madsen*, 14 N.W. 2d 475, 481 (Minn. 1944) ("To enable a party relying upon breach of express or implied warranty to recover, it must be clear and definite that there was actual reliance upon the warranties involved."); *see also Hendricks v. Callahan*, 972 F.2d 190, 194 (8th Cir. 1992) (holding that Minnesota law "require[s] some sort of reliance" to establish a breach-of-warranty claim). Relying on *In re Zurn Pex Plumbing Products Liability Litigation*, 267 F.R.D. 549 (D. Minn. 2010), and *Krause v. City of Elk River*, No. 14-1575, 2015 WL 3823093 (Minn. Ct. App. June 22, 2015), Plaintiffs claim that *Midland* is no longer good law and that Minnesota no longer requires reliance to state a breach-of-warranty claim. But despite Plaintiffs' claims to the contrary, the Minnesota Supreme Court has recently cited *Midland* for the proposition that "we have required reliance in warranty actions" and has expressly declined to overrule it. *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d

539, 544 & 544 n.6 (Minn. 2014). Because Plaintiffs cannot plausibly establish reliance on the "anticaking" statement, they cannot state any breach-of-warranty claims under Minnesota law.

## V. Plaintiffs Cannot State an Unjust Enrichment Claim.

Plaintiffs' inability to establish that they saw or relied on the "anticaking" statement is also fatal to their unjust enrichment claim. The Seventh Circuit has made clear that a claim for unjust enrichment requires the plaintiff to establish "a connection between [the plaintiff's] detriment and the defendant's retention of the benefit." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 519 (7th Cir. 2011). Therefore, if Plaintiffs cannot establish that they suffered any injury *in reliance* on the "anticaking" statement, they cannot state a plausible claim for unjust enrichment.

Plaintiffs argue that unjust enrichment does not require proof of causation or reliance. *See* ECF No. 335, at 18-21. This Court has already considered and rejected that argument. Plaintiffs previously made the same argument they make now — namely, that Kraft Heinz's "marketing violated principles of justice, equity, and good conscience" because it "marketed [its] products as '100% grated cheese' while delivering something less." *Grated Parmesan*, 275 F. Supp. 3d at 927. But the Court held that Plaintiffs could not prevail, absent deception. *Id.* The same reasoning applies here: if Plaintiffs cannot establish that they saw or relied on the "anticaking" representation, they cannot establish that Kraft Heinz used this representation to acquire a benefit at their expense. *See Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 943 (7th Cir. 2001) ("[I]n the absence of any deception on the part of the defendants, the requisite violation of 'fundamental principles of justice, equity, and good conscience' is not present.").

## CONCLUSION

This Court should grant Kraft Heinz's motion for judgment on the pleadings.

Dated: February 7, 2019

Respectfully submitted,

JENNER & BLOCK LLP

By:  */s/ Dean N. Panos*

Dean N. Panos
353 N. Clark Street
Chicago, IL 60654-3456
Tel.:  (312) 222-9350
dpanos@jenner.com

Attorneys for Defendant
The Kraft Heinz Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed on February 7, 2019 with the Clerk of the Court by using the CM/ECF system which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  February 7, 2019                          By:   */s/ Dean N. Panos*
                                                            Dean N. Panos