UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: 100% GRATED PARMESAN CHEESE MARKETING AND SALES PRACTICE LITIGATION<br><br>*This Document Relates to All Cases* | Civil No. 1:16-cv-05802<br>MDL 2705<br><br>Judge Gary S. Feinerman |

**STIPULATION AND PROPOSED ORDER FOR PRODUCING DOCUMENTS AND ESI**

This Stipulated Protocol for Producing Documents and ESI (the "ESI Protocol") shall govern the production of documents and electronically stored information ("ESI") by the parties in the above-captioned litigation. The ESI Protocol shall also govern productions made by any third party who is subpoenaed in this action unless otherwise agreed to by the issuing party and the third party.

A.  **GENERAL PROVISIONS**

1. These specifications apply to both ESI and documents originating as paper, which are also to be produced in electronic form in this Litigation as provided below. The parties will make reasonable efforts to prepare responsive and non-privileged paper documents and ESI for production in accordance with the agreed-upon specifications set forth below.

2. **Cooperation.** The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this case on electronic discovery issues. Furthermore, the Parties acknowledge the spirit of the Seventh Circuit's ESI Pilot Program and agree to consider its Principles when coordinating and discussing ESI discovery.

3. **Security.** The Parties will make reasonable efforts to ensure that any productions made are free from viruses and provided on encrypted media for submission. The producing party shall provide the necessary information to decrypt any productions to the receiving party by a separate e-mail or letter contemporaneously with the production.

4. **Confidentiality Designation.** The parties anticipate that all productions will be subject to a Protective Order that they will discuss and submit to the Court before any documents the producing party considers "confidential" in this matter are produced. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order.

5. **Non-Standard Files.** The parties shall make reasonable efforts to produce non-standard electronic files, large oversized documents, and other files for which production pursuant to the standard format specified below would be impracticable in a reasonably useable format.

6. **Deduplication.** A party need not produce identical information items in more than one form and shall globally de-duplicate identical items within and across custodians using each document's unique MD5 or SHA1 hash values. In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message and provided that the software used to identify these "near-duplicate" threads is able to identify any substantive differences to the thread such as changes in recipients (*e.g.*, side threads, subject line changes), selective deletion of previous thread content by sender, etc. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate."

7. **Media.** The preferred means of producing documents is via secure FTP or secure file share. However, documents may also be produced via encrypted CD, DVD, flash drive, or hard drive if (a) the size of the production exceeds the size limitations applicable to the producing party's secure FTP or file share or (b) if the interest of preserving the confidentiality of the information produced outweighs the speed and efficiency of producing documents via secure FTP or secure file share. Each encrypted media volume should have its own unique filename and a consistent naming convention (*e.g.*, ZZZ001 or BLOOD001). The volume names shall be consecutive (*e.g.*, BLOOD001, BLOOD002, etc.).

8. **Custodian or Originating Source.** If technically feasible and available, the custodian or originating source shall be identified in the Custodian field of the database load files. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) should be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (*e.g.*, office, file room, archive, network storage, file share, back-up, hard drive, *etc*.) should be produced in such a fashion as to identify the department, group, entity, or facility. A producing party shall use a uniform description of a particular custodian across productions.

B. **EXCHANGE OF ESI-RELATED INFORMATION**

1. Within 30 days of the entry of this ESI Protocol, the parties agree to exchange in writing the information listed below. The parties agree and understand that their respective responses are based on their knowledge and understanding as of the date of the response, and each party will comply with the supplementation requirements of Federal Rule of Civil Procedure 26:

(a) A preliminary list of custodians (including current employees, former employees and any other individuals or companies) likely to have discoverable information, including job title and a brief description of job responsibilities for each individual, and a general description of the devices and/or storage systems on which the custodian's ESI is located and the time period for which potentially discoverable information may exist.

00147571

(b)  A general description of any other systems for electronic communications and ESI storage ("non-custodial sources") that may contain discoverable information and the time period for which potentially discoverable information may exist;

(c)  A description of any potentially discoverable ESI that the party is aware of having been lost or destroyed; and

(d)  A description of any potentially discoverable ESI that the party contends is inaccessible or only of limited accessibility and, hence, not producible by that party without undue burden and/or expense.

**C.  ESI SEARCH**

1.  **ESI Search Methodologies.** The parties will discuss and attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the parties. The parties shall discuss proposed search terms, date restrictions, and custodian restrictions. If technically feasible, any search methodology employed must support the use of stemmed (*e.g.*, using * to include variations on a keyword), fuzzy, and Boolean searches. The documents on which the search terms hit and that are within the date and custodian restrictions are referred to as the "Review Set."

(a)  **Keyword Searches:**

(i)  Prior to implementing search terms, the producing party will provide a list of proposed search terms to the requesting party and confer in good faith with the requesting party to determine the mutually agreeable search terms before using any search terms.

(ii)  The parties agree to consider additional search terms suggested by the other parties. If the producing party opposes using certain proposed search terms because they would return an excessive number of documents, the producing party will provide a search term hit list or hit report after global de-duplication. The list or report should include: (1) the number of documents that hit on each term; (2) the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list); (3) the total number of documents that would be returned by using the proposed search term list (including families); and (4) a general description of some of the types of irrelevant documents that each disputed search term is returning. The parties will use the report to modify terms, if necessary.

(iii)  The requesting party may, with good cause, propose additional search terms once all searches for a custodian are complete (for example, if the proposed term, or the significance of the proposed term, was unknown to the requesting party as of the time the original list was formulated). The parties agree to meet and confer in good faith regarding the utility and burden of applying additional search terms.

///

///

(iv)    If the parties are unable to resolve disputes over search terms through the meet and confer process, the parties will submit the dispute to the Court in the form of a joint discovery letter or report, with a discussion of the relevance and/or burden associated with the search terms in dispute.

(v)     The producing party agrees to quality check the data that does not hit on any terms (the Null Set) by selecting a statistically random sample of documents from the Null Set. The size of the statistically random sample shall be calculated using a confidence level of 95% and a margin of error of 2%. If responsive documents are found during the Null Set review, the producing party agrees to produce the responsive documents separate and apart from the regular production. The parties will then meet and confer to determine if any additional terms, or modifications to existing terms, are needed to ensure substantive, responsive documents are not missed.

(b)    **Technology Assisted Review:** If a producing party seeks to use predictive coding, also known as technology assisted review ("TAR"), for the purpose of identifying or culling the documents to be reviewed or produced, they will notify the opposing party of their intent to do so. Following this notification, the parties will meet and confer on a mutually agreeable protocol.

(c)    **Targeted Collection:** A producing party may collect some documents without using search terms or TAR at all, but instead doing "targeted" collections from custodians or sources, for example, if it is able to identify particular network or other folders that are likely to contain relevant information, without the need to cull by search terms or TAR. The producing party will identify which categories of documents it is collecting and producing without the use of search terms or TAR. The producing party will also identify any categories of documents it is collecting and producing using custodian self-identification or collection methods.

2.    Once the Review Set is segregated for review, each party will then determine the best method to review those hits for responsiveness and privilege – either manually or using technology assisted review – and shall inform the other party of which method(s) it chooses to use. If the party chooses TAR, the subsection b. above will apply.

D.    **PRODUCTION / PROCESSING INSTRUCTIONS**

1.    **Production of Documents Originating as Paper:** For documents originating in paper format, the following specifications should be used for their production:

(a)    **TIFFs.** Images should be produced as black-and-white or color (as applicable), single-page, TIFF group IV format imaged at 300 dpi, with text and related path provided in document level text files.

(b)    **Color.** Documents or records produced in non-native format and containing color (for example, graphs, pictures, or color marketing materials) will be produced in color. This provision does not apply to documents solely containing color logos, signatures, watermarks, or letterhead.

00147571

4

    (c) **Unique IDs.** Each image should have a unique filename, which is the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example, ABC0000001).

    (d) **Concordance Delimited Load File/Opticon Cross-Reference File.** Documents should be provided with a Concordance Delimited File and an Opticon Cross-Reference File. Every TIFF in each production delivery must be referenced in the production's corresponding Load File. The total number of images referenced in a production delivery's Load File should match the total number of TIFF files in the production.

    (i) The Concordance Delimited Load File should contain available fielded data, including Beginning Bates Number, Ending Bates Number, and Number of Pages. For example:

þBegDocþ¶þEndDocþ¶þBegAttachþ¶þEndAttachþ¶þPagesþ¶þCDVolþ¶þCustodianþ

    (ii) **Delimiter File.** The available fielded data and/or electronic metadata should be provided in the following format: (a) fields should be delimited by the default Concordance field delimiter for ACII character 20 (¶); (b) string values within the fields file should be enclosed with a text delimiter ASCII character 254 (þ); (c) the first line should contain objective coding and/or electronic file metadata headers, and below the first line there should be exactly one line for each document; (d) each row of objective coding and/or electronic file metadata must contain the same amount of fields as the header row; and (e) multi-values should be separated by a semicolon (;).

    (iii) Examples of appropriate Opticon Cross-Reference files are:

- MSC000001,MSC001,D:\MSC001\IMAGES\001\MSC000001.TIF,Y,,,3
- MSC000002,MSC001,D:\MSC001\IMAGES\001\MSC000002.TIF,,,,
- MSC000003,MSC001,D:\MSC001\IMAGES\001\MSC000003.TIF,,,,
- MSC000004,MSC001,D:\MSC001\IMAGES\001\MSC000004.TIF,Y,,,2
- MSC000005,MSC001,D:\MSC001\IMAGES\001\MSC000005.TIF,,,,

    (iv) **OCR Text Files.** Text shall be provided on a document level in an appropriately formatted text file (.txt) that is named to match the first the first bates number of the document; provided, however, that the parties to this lawsuit agree to evenly split the cost, if any, that the producing party reasonably incurs as a result of providing OCR'd images. That is, only the reasonable costs of OCR'ing the documents provided to the requesting party may be shared. If a defendant who is not the producing or receiving party wishes to receive a copy of the document produced to the requesting party that defendant shall participate in the cost-sharing. Cost-sharing is contingent upon the producing party providing the requesting party with 10 days advance written notice of its intent to demand that the requesting party share in the cost for OCR of such paper documents, including disclosing the number of pages, the cost per page and the proposal from its vendor. Further, the parties shall use the receiving party's vendor in the event the cost for OCR of such paper documents is less. Notwithstanding the foregoing, the requesting party may elect not to receive such paper documents in OCR format from the producing party.

00147571

(v) **Unitizing Documents.** In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized). The parties will make reasonable efforts to have their vendors logically unitize documents correctly and maintain Parent-Child Relationships (discussed below), and will commit to address situations of improperly unitized documents or circumstances where Parent-Child Relationships have not been maintained and produced.).

(vi) **Objective Coding Fields.** The load files accompanying any scanned paper documents will include the following objective coding fields:

| Field | Description |
| --- | --- |
| Bates_Begin | The Bates number of the first page of the document. |
| Bates_End | The Bates number of the last page of the document. |
| Custodians | The custodian or source where the document was found. |
| Folder Label | The hard copy folder / binder title / label. |
| OCR/Text Path | The relative path to the OCR/Txt Files. |
| Redaction | Whether the document is redacted (Yes/No) |
| Conf_Desig | The confidentiality designation, if any, for the document pursuant to any protective order in the case. |
| Prod_Volume | Production volume. |

(vii) **Non-Waiver of Rule 34(b)(2) Inspection.** The parties agree that nothing in this Order prohibits either of them from responding to any requests for production of documents by permitting the inspection of paper documents (instead of scanning and producing them in accordance with this Order).

2. **Production of Email and Electronic Documents:**

(a) The TIFF, Unique ID, and Opticon Cross-Reference File specifications above also apply to electronic information. In the alternative, electronic information may be provided solely in its native or "near-native" format. The table below supplies examples of agreed-upon native or near-native forms in which specific types of ESI should be produced:

| Source ESI | Examples of Native or Near-Native Form or Forms Sought |
| --- | --- |
| Word Processing Documents | .DOC, .DOCX, .ODT, .RTF, .WPD, .Pages |
| Spreadsheets | .XLS, .XLSX, .ODS, .Numbers |

00147571

6

| Source ESI | Examples of Native or Near-Native Form or Forms Sought |
|---|---|
| Presentations | .PPT, .PPTX, .ODP, .Keynote |
| Microsoft Access Databases | .MDB, .ACCDB |
| Documents | .PDF, .JPG, .GIF, .TIF, .TIFF, .PNG |
| Audio or Video Files | .MP3, .MOV., MP4, .AVI, .WAV, .WMA |
| E-mail | Messages should be produced in a form or forms that readily support import into standard e-mail client programs; that is, the form of production should adhere to the conventions set out in RFC 5322 (the internet e-mail standard). For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished, if source foldering data is preserved and identified in the metadata in the load file. For Lotus Notes mail, furnish .NSF files or convert to .PST. If your workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the message and container(s) preserved and produced in a Concordance Delimited Load File. |

If production in native or near-native forms is preferred, the parties should further meet and confer regarding whether any data is encrypted or password-protected (in which case the producing party shall provide a means to gain access to those files), requires proprietary or legacy software for review, as well as any other format-related issues reasonably foreseeable due to the native or near-native production formatting. Moreover, the file names for electronic information produced in native or near-native format should be their Unique ID number. The native or near-native production should also include Concordance delimited load files containing the metadata associated with each electronic document, including those metadata fields identified below, along with the extracted text and a link to the produced native file.

      (b)    **Parent-Child Relationships.** Attachments, enclosures, and/or exhibits to any parent document should also be produced and proximately linked to the respective parent document (and vice-versa) where reasonably possible. The child-document should be produced immediately after the parent-document.

      (c)    **Tracked Changes and Comments.** To the extent that a document contains tracked changes or comments, the document should be imaged showing tracked changes and comments or produced in native form.

00147571

7

(d) **Embedded Documents.** If reasonably possible, embedded ESI documents (*e.g.* a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records and related back to the respective top level parent document (*e.g.*, standalone file, email message, *etc*.) via the Attach_Begin and Attach_End fields referenced below. Related documents will be produced within a continuous Bates range.

(e) **Time Zone.** Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to the time zone of the party's principal place of business. The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text.

(f) **Concordance Delimited Text File / Metadata.** Using the delimiters detailed above, the Concordance Delimited Text file applicable to electronic documents produced in TIFF should also contain all available metadata, but at a minimum and to the extent applicable, available and/or not privileged, the following extracted metadata fields should be included, except that if the field contains privileged information, the field should be left blank and the privilege assertion should be made clear:

| Field | Description |
|---|---|
| Bates_Begin | The Bates number of the first page of the document |
| Bates_End | The Bates number of the last page of the document |
| Attach _Begin | The Bates number of the first page of a family of documents (*e.g.*, email and attachment) |
| Attach_End | The Bates number of the last page of a family of documents |
| File_Path Source | Original file path to the files collection source or e-mailbox folder structure |
| File Name | The filename of an attachment or stand-alone e-file |
| File Extension | The file extension of an attachment or stand-alone e-file (*e.g.*, .doc, .xls) |
| Subject | The subject of an email |
| Sent Date | For email, the sent date of the message in the format MM/DD/YYYY |

00147571

| Field | Description |
| --- | --- |
| Sent Time | For email, the sent time of the message in the format HH:MM |
| Received Date | For email, the received date of the message in the format MM/DD/YYYY |
| Received Time | For email, the received time of the message in the format HH:MM |
| Message_ID | For email, the message ID |
| Item Type | Identifies whether the file is an email, attachment to an email, or stand-alone efile |
| Create Date | For efiles or attachments, the document's creation date or operating system creation date in the format MM/DD/YYYY HH:MM |
| Create Time | For efiles or attachments, the document's creation time or operating system creation time in the format HH:MM |
| Modified Date | For efiles or attachments, date the document was last modified to the file system of the original media from which it was collected. In the format MM/DD/YYYY |
| Modified Time | For efiles or attachments, time the document was last modified to the file system of the original media from which it was collected. In the format HH:MM |
| Author | The author of a stand-alone efile or attachment |
| From | The sender of an email message |
| To | The recipients of an email message, in a semi-colon delimited multi-value list |
| CC | The copyee(s) of an email message, in a semi-colon delimited multi-value list |
| BCC | The blind copyee(s) of an email message, in a semi-colon delimited multi-value list |
| Importance | For emails, "High," "Low," or "Normal (or equivalent if an email client other than Outlook was used). |

00147571

| Field | Description |
|---|---|
| Custodians | The custodian in whose file the document was found. |
| Duplicate Custodian | The custodians of any duplicates, in a semi-colon delimited multi-value list |
| Modified _Author | The author who last modified the document. |
| Hash_Value | The calculated MD5 or SHA1 hash value of the document. |
| Native_File | The file path to the location of the native file if produced natively |
| OCR/Txt Path | The relative path to the OCR/Txt Files |
| Redaction | Whether the document is redacted (Yes/No) |
| Conf_Desig | The confidentiality designation, if any, for the document pursuant to any protective order in the case |
| Prod_Volume | Production volume |

If a producing party intentionally withholds some or all of the metadata that was contained in the electronic documents, the producing party shall inform all other parties of this fact, in writing, at or before the time of production.

(g) **Extracted Text Files.** For each electronic document, a text file (not OCR text) should be provided along with the TIFF. Electronic text should be extracted directly from the native file and should be delivered on a document level according to the specifications above similar to paper documents.

(h) **Native Format.** All spreadsheets (*e.g.*, MS Excel), presentation files (*e.g.*, PowerPoint files), documents with "macros," electronic information containing audio or visual components, and additional documents of a type which cannot be reasonably converted to useful TIFF images shall be produced in native (unless redacted, in which instance, they will be produced in TIFF and processed with all hidden text unhidden), and should be linked to the database by the above metadata field "Path to Native File." The requesting party may request the producing party consider production of certain other documents and/or databases initially produced in their petrified (TIFF or PDF) format to be produced in their native format in the event that the petrified format is not reasonably usable. The requesting party shall identify the documents by their Bates numbers, and the documents should be produced in their unaltered native format with an accompanying delimited text file (using the delimiters above) containing the metadata associated with each electronic document, including those metadata fields identified above, along with the extracted text and a link to the produced native file. Natively produced documents should include a Bates-numbered TIFF image placeholder stating that the document has been produced in native format.

00147571

10

(i) **Hidden Text.** All Hidden text (*e.g.*, track changes, hidden columns, hidden slides, mark-ups, notes) shall be expanded and rendered in the extracted text file. For files that cannot be expanded linked native files shall be produced with the image files.

3. **Production of Databases and Other Structured Data:** The parties agree to provide background information on structured data sources, including databases, that are likely to contain responsive information. Upon receipt of the background information, if any party finds the background information insufficient, the parties will meet and confer in good faith about requests for additional information or clarification about the content within and searchability of the data sources. Upon review of this information, the parties should meet and confer regarding the data to be produced from each source, if any, and the format specifications for such productions, including the ability to produce the structured data using standard or customized reports.

Respectfully submitted,

Dated: March 15, 2019　　　　　　　　　　BLOOD HURST & O'REARDON, LLP

By: *s/ Timothy G. Blood*
Timothy G. Blood (149343CA)
Thomas J. O'Reardon II (247952CA)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
tblood@bholaw.com
toreardon@bholaw.com

Ben Barnow
Erich P. Schork
Jeffrey Blake
BARNOW AND ASSOCIATES, P.C.
1 North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: 312/621-2000
b.barnow@barnowlaw.com
e.schork@barnowlaw.com
j.blake@barnowlaw.com

Eduard Korsinsky
Courtney Maccarone
LEVI & KORSINSKY LLP
30 Broad Street, 24th Floor
New York, NY 10004
Tel: 212/363-7500
ek@zlk.com
cmaccarone@zlk.com

*Plaintiffs' Interim Co-Lead Counsel*

00147571

| | |
|---|---|
| Dated: March 15, 2019 | JENNER & BLOCK LLP |
| | By: *s/ Dean N. Panos* |
| | Dean N. Panos |
| | 353 N. Clark Street |
| | Chicago, IL 60654 |
| | Tel: 312/222-9350 |
| | dpanos@jenner.com |
| | |
| | *Attorneys for Defendant Kraft Heinz Company* |
| Dated: March 15, 2019 | FOX ROTHSCHILD LLP |
| | By: *s/ Gary Hansen* |
| | Gary Hansen |
| | 222 South Ninth Street - Suite 2000 |
| | Minneapolis, MN 55402-3338 |
| | Tel: 612/607-7000 |
| | ghansen@foxrothschild.com |
| | |
| | *Attorneys for Defendants Albertsons, LLC; Albertson Companies, Inc.; and Supervalu, Inc.* |
| Dated: March 15, 2019 | BOWIE & JENSEN, LLC |
| | By: *s/ Joshua A. Glikin* |
| | Joshua A. Glikin |
| | 29 W. Susquehanna Ave., Suite 600 |
| | Towson, MD 21204 |
| | Tel: 410/583-2400 |
| | glikin@bowie-jensen.com |
| | |
| | *Attorneys for Defendants ICCO-Cheese Company, Inc.* |
| Dated: March 15, 2019 | GREENBERG TRAURIG LLP |
| | By: *s/ David E. Sellinger* |
| | David E. Sellinger |
| | 500 Campus Drive, Suite 400 |
| | Florham Park, New Jersey 07932 |
| | Tel: 973/360-7900 |
| | sellingerd@gtlaw.com |
| | |
| | *Attorneys for Defendants Wal-Mart Stores, Inc.; and Wal-Mart Stores East, L.P.* |

## ECF CERTIFICATION

The filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories to this document.

Dated: March 15, 2019                    BLOOD HURST & O'REARDON, LLP

By:     *s/ Timothy G. Blood*

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated: _____

The Honorable Gary Feinerman
United States District Judge

00147571

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 15, 2019, a copy of the foregoing document was electronically filed with the United States District Court, Northern District of Illinois, via the Court's CM/ECF filing system, which will send notification of such filing to counsel of record, on March 15, 2019.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD
