# Exhibit 10



5301 Wisconsin Avenue NW | Fourth Floor | Washington, DC 20015 USA

May 11, 2021

**Elizabeth Bernard**
Attorney
Elizabeth.Bernard@FischLLP.com
Direct: +1.202.362.3529
Main: +1.202.362.3500

**VIA EMAIL**

Jaime F. Cardenas-Navia
Reichman Jorgensen Lehman & Feldberg LLP
750 Third Avenue, Suite 2400
New York, NY 10017
jcardenas-navia@reichmanjorgensen.com

Adam Adler
Reichman Jorgensen Lehman & Feldberg LLP
1710 Rhode Island Avenue, NW, 12th Floor
Washington, DC 20036
aadler@reichmanjorgensen.com

Re: *Kove IO, Inc. v. Amazon Web Services, Inc.*
Case No. 18-cv-8175 (N.D. Ill.)

Dear Counsel:

      I write in response to Kove's April 30, May 6 and May 7 correspondence. Throughout this case, AWS has been transparent about its discovery efforts and compliance with the Local Rules and the Federal Rules of Civil Procedure.[1] As part of those efforts, AWS has produced over 110,000 source code files that reflect the design and operation of the accused services. And Kove hasn't identified any deficiencies in that production. AWS has also repeatedly confirmed its internal investigations and collection and production of responsive documents to the extent such documents exist. Indeed, the Court recently denied Kove's "broad" and "vague" demand for design and development documents regarding the accused services, instead ordering the parties to focus on wiki production consistent with AWS's investigations.[2] In addition, AWS has to date produced 452,500 pages and 21,742 documents, including non-technical documents collected from past and present product managers, marketing managers, and central repositories. Each of these custodians and repositories is clearly identified in the production.

      The parties recently conducted an omnibus meet and confer on April 30 regarding 18 topics that Kove asked to confer on regarding AWS's document production and other discovery efforts.[3] For over two hours, the parties discussed these and other matters in detail. AWS again confirmed several times that it has collected documents from relevant custodians and central repositories identified through its extensive investigations and produced responsive documents to

---

[1] *See, e.g.*, Dkt. Nos. 185-1, 286; 2-9-2021 Bernard Letter to Marvin; 3-24-2021 Hearing Tr. at 33:15-40:5; 4-7-2021 Saltman Letter to Counsel.

[2] *See* 3-24-2021 Hearing Tr. at 18:15-19:2.

[3] *See* 4-29-2021 Adler Email to Bernard.

the extent they exist.[4] AWS further informed Kove that a production was forthcoming early the next week[5] and AWS had only one further substantial production remaining before its document production is substantially complete. In addition to discussing AWS's final document production efforts, AWS also informed Kove that it would supplement its interrogatories on a rolling basis to the extent necessary following substantial completion of its document production. Notably, AWS indicated that Interrogatory No. 22 would be first, as AWS is currently drafting its response to the numerous discrete subparts of that interrogatory. Specifically, AWS confirmed the responsive metrics collection was complete, but there was a delay due to a covid hospitalization.

Three hours after that meet and confer ended, Kove sent a five-page letter purporting to raise additional deficiencies regarding AWS's discovery for the first time.[6] For instance, Kove requested additional documents related to surveys and studies, "clairvoyant" forecasts, and more wikis. But as confirmed during the meet and confer, AWS has performed a reasonable search and collected from central repositories and produced responsive documents to the extent they exist. AWS isn't aware of any other repositories to search for these documents. And the production of wikis is either completed or ongoing pursuant to the parties' agreements, which AWS will conduct and complete accordingly. Kove also demanded customer-specific pricing information, despite AWS's objections to such requests as irrelevant and burdensome. But Kove didn't provide any response to those objections, including any basis for the relevance of customer-specific information or how the burdensome collection of such extensive information is proportional to the needs of this case, especially given AWS's production of overall revenue and customer usage.[7] And Kove is incorrect that AWS hasn't produced infrastructure costs—in addition to the extensive analysis of the product managers over time collected and produced in this case, AWS has provided P&Ls that include infrastructure costs. And as discussed on the

---

[4] Notably, Kove refused to do the same for its production, claiming details of its collection efforts, such as confirming custodial collection, is "privileged." AWS disagrees and will address Kove's deficient discovery efforts in separate correspondence.

[5] Indeed, AWS made a production on May 4 of 8,184 pages.

[6] *See* April 30, 2021 Adler Letter to Bernard (sent at 7:38 pm).

[7] This is especially true given Kove's deficient response to Interrogatory No. 7, which doesn't provide its damages claims in this case as requested, but merely dictates all possible reasonable royalty theories in a patent infringement case untethered from the facts of this case. Kove's response thus doesn't identify any theory of damages wherein customer-specific information is relevant. Moreover, Kove also now improperly seeks revenues unrelated to the accused services. AWS has produced the U.S. non-government revenue attributable to the accused services and it isn't obligated to produce any other revenue.

parties' May 10 meet and confer, AWS is in the process of collecting more detailed infrastructure cost details and will produce that information by May 21.[8]

Notably, Kove demanded AWS supplement Interrogatory No. 22 to account for additional metrics—metrics never before identified in a discovery request and just hours after AWS confirmed that its extensive metrics collection efforts are complete.[9] But Kove can't demand that AWS supplement an interrogatory by adding additional subparts after service of the interrogatory. The scope of the metrics collection was finalized pursuant to the parties' agreement by early February, when Kove requested fifteen additional subparts for Interrogatory No. 22.[10] AWS wasn't obligated to agree to these additional discrete subparts, but did so at that time to move discovery forward. Since that agreement, AWS has expended dozens of hours of engineering time on the metrics collection, as the metrics requested by Kove, to the extent they exist, must be collected for this litigation by the engineering teams, including by custom scripts. Thus, not only is Kove's attempt to add metrics requests untimely and burdensome, but it's also facially improper as interrogatories aren't open ended.[11] AWS will provide a supplemental response to Interrogatory No. 22 as propounded, plus the additional fifteen discrete subparts from Kove's February 8 correspondence as agreed by the parties. AWS won't agree to any additional metrics requests and its forthcoming responses are final.[12]

And several days after the April 30 omnibus meet and confer, Kove sent its nine-page May 6 letter regarding AWS's responses to Kove's first 133 RFPs, which AWS responded to at least six months ago and in some cases, almost two years ago. But that letter facially fails to account for any recent productions, meet and confers, or orders of the Court, and AWS declines to respond to such outdated and moot demands. AWS has repeatedly confirmed its production in numerous meet and confers and it isn't obligated to repeat those confirmations in response to Kove's *ad nauseam* correspondence.

---

[8] And contrary to Kove's statement in its May 11 letter, AWS never stated that these documents would include a separate line item for energy costs.

[9] These metrics are easy to find in AWS's production, as the custodian is "AWS Metrics" and the files names include "S3 Metric" or "DDB Metric." *See* AMZ_KOVE_000390558-577; AMZ_KOVE_000401268-274.

[10] 2-8-2021 J. Cardenas-Navia Letter to Bernard.

[11] Moreover, despite AWS's repeated requests, Kove has failed to articulate any relevance of this metrics collection to the issues in this case. Indeed, Kove's response to Interrogatory No. 7 doesn't provide one.

[12] As AWS also confirmed during the meet and confer, AWS's collection of metrics in response to Kove's 6th and 7th set of requests for production are also complete.

Then on May 7, Kove sent an 11-page letter purporting to memorialize the April 30 meet and confer. As has now become Kove's practice, Kove's letter contains so many misstatements that AWS won't expend the time and effort to fully respond. AWS however will address the more egregious misstatements:[13]

- **Historical Wikis**: The parties discussed the production of the pre-2013 wikis from a recently located hard drive. AWS clearly stated on the call that it produced all of the responsive wikis and documents that were collected on that hard drive and it's not aware of any additional locations for documents that are cited in the wikis nor is there a different format to investigate or provide. With regards to Kove's request regarding AMZ_KOVE_000436815 and AMZ_KOVE_000435619, AWS again confirms that any responsive file attachments that were located on the hard drive were produced. Indeed, in that production, along with the wiki .txt documents, over 250 .doc, .pdf, etc. files were produced. That was the extent of the parties' discussion regarding wiki's.
- **Financial Documents**: As AWS has confirmed numerous times, AWS doesn't have service-level P&Ls prior to 2014. During the meet and confer, AWS again confirmed that it already produced revenue information for the services prior to 2014. AWS has thus never refused to produce financial information prior to 2014 for the accused services, but provided what it has, and Kove's misstatements of AWS's financial production must stop. The dispute regarding AWS's overall financials between the parties remains in front of the Court, and as AWS noted in its response to that motion, it has produced AWS-related financial information from prior to 2014. *See* AMZ_KOVE_000090090.
- **Collection from Amazon.com Inc.**: During the meet and confer, AWS confirmed that Amazon.com and AWS are separate corporate entities. AWS also asked Kove what documents it seeks from separate Amazon entities, as the accused services are AWS services and the relevant and responsive information has been collected and produced by AWS. And AWS confirmed it wasn't withholding any documents that discuss or refer to the use of the accused services by other Amazon entities and indeed would be providing updated usage information. While Kove confirmed that it wasn't seeking information from individual teams at other Amazon entities, e.g., Prime Video, regarding the use of the AWS accused services, Kove only requested during the meet and confer that AWS investigate whether there's a "list" of the other Amazon services that use the accused services. AWS indicated that it wasn't aware of any list but that it would investigate. Kove didn't request any other documents during the meet and confer. In Kove's May 7, 2021 letter, you requested information of whether AWS "has or can obtain" access to Amazon.com documents. But the case you provided only discusses that the relevant inquiry is whether a party has the legal right to

---

[13] To the clear, just because AWS doesn't address each and every misstatement in the May 7 correspondence doesn't mean that AWS agrees or acquiesces to any of Kove's misstatements.

obtain the documents, not whether it has the ability to do so. *Boyd Group (U.S.), Inc. v. D'Orazio*, 2015 WL 5321262, at *3 (N.D. Ill. Sept. 11, 2015) ("the fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession custody or control; in fact it means the opposite"). Please provide any case law that you have to support the inquiry about a party's ability to obtain documents from another party. Also, I note that despite AWS's request to do so, Kove hasn't specified what information it is seeking from Amazon.com that hasn't already been produced in this case or what additional information it claims AWS has the obligation to search for, collect, and produce.

- **Customer-Specific Data:** During the meet and confer, Kove couldn't articulate the relevance of customer-specific data, including specific data regarding the use of the accused services by other Amazon entities. It also didn't specify what information it is seeking. AWS thus never agreed to investigate this data, but indicated that it didn't understand counsel's attempts at relevance arguments. In its May 7 letter, Kove again fails to articulate the relevance of this data. AWS has produced, and is updating, overall revenues, costs, and usage data for the accused services. AWS has also produced extensive information gathered from the product managers for each accused service. Kove has provided no reason why its entitled to more specific data nor how such a burdensome request is proportional to the needs of the case. AWS remains willing to consider a narrow and coherent request for customer-related information to the extent Kove can establish relevance to the issues in this case.
- **Internal Videos:** AWS didn't agree to any additional searches for internal videos. AWS indicated that is has already performed a reasonable search of central repositories and produced any responsive videos located during that search.
- **NY Times Article:** AWS never said that it hadn't accessed the article. AWS's counsel indicated that it couldn't view the article during the meet and confer. But AWS did reiterate its objection to investigating a single documents from over 15 years ago related to the entire business of AWS, especially given S3 wasn't AWS's only cloud offering. Such a request is facially irrelevant and not proportional to the needs of the case.
- **Design Documents:** AWS recently located a hard drive with older wikis and attached documents, including an "S3 Design" document (AMZ_KOVE_000441191) and meeting notes (AMZ_KOVE_000444035). AWS isn't aware of any other locations to search for additional documents.
- **April 2 Letter:** Contrary to Kove's May 7 letter, AWS addressed all of the issues raised in Kove's April 2 letter during the meet and confer. Regarding downstream impact analyses, AWS never said that it didn't search for these documents. AWS confirmed that it investigated for the accused services and it hasn't located any. Likewise, for "forecasting" and "economists," AWS confirmed that it specifically investigated these documents but hasn't located anything specific for the accused services beyond the numerous forecasts related to the accused services that have been produced. Regarding the single spreadsheet that Kove identified with

DynamoDB "revenue projections," AWS also indicated it investigated and confirmed it collected and produced all similar documents that it located after a reasonable search. Kove didn't ask AWS to investigate anything further. And as clearly indicated in the production, the custodian is "DynamoDB Workdocs." Thus, the document came from the DynamoDB product management team folder. Regarding KPIs, AWS specifically confirmed it investigated whether any specific documents existed regarding KPIs. To the extent there are any KPIs, they would be reflected in the documents produced.

- **Non-Custodial Email "Accounts":** Prior to and during the meet and confer, AWS requested Kove's explanation or evidence why it claims these are "accounts" and not just email lists or reflectors. Kove didn't answer. AWS didn't refuse to provide any information as Kove now claims—AWS confirmed it looked through the emails produced and didn't see any email "from" any of these email addresses that would indicate the existence of any "account." And AWS has confirmed that these are email lists or reflectors. Further, as Kove is facially requesting information regarding email "accounts," any discovery is governed by the LPR ESI and Model Order. AWS also repeatedly confirmed throughout the meet and confer that is has already collected and produced thousands of documents from custodians and central respositories that cover all aspects of this case and respond to Kove's RFPs. Kove thus isn't entitled to information that it has requested in correspondence separate and apart from any proper discovery request. AWS is now in receipt of Kove's recently-served Rule 30(b)(6) topic related to this issue and will provide its objections and response in due course.
- **ESI Custodians**: AWS has provided its detailed objections over several months now regarding Kove's improper approach to email discovery. The parties agreed to be bound to the LPR ESI and Model Order in this case and Kove's email demands continue to violate to the express mandate that email discovery be limited to specific issues for which emails are warranted. Email isn't for general discovery and Kove isn't entitled to additional email custodians just because there may be people with knowledge of the accused services across different time periods. Kove hasn't identified any specific issues that warrant the email discovery its seeks. AWS therefore objects to Kove's demand for additional email custodians for the reasons set forth in its prior correspondence.
- **Kove's Selection of ESI Custodians**. For the first time during the the meet and confer, Kove confirmed Mr. Kelman as one of its three remaining email production custodians. AWS therefore didn't change its position as Kove now claims—AWS has been clear that it won't run search terms until Kove confirms the custodian. Now that Kove has confirmed Mr. Kelman, AWS will work with Kove to run search terms that result in a reasonable number of hits. Kove's proposed search terms like "S3 w/65 price" aren't proper under the LPR ESI and Model Order. And as AWS indicated during the meet and confer, AWS shouldn't have to bear the burden and cost of running such search terms that have already shown to be overbroad. Regarding Mr. Jassy, AWS never said it would be willing to proceed with Mr. Jassy as an email custodian. AWS repeatedly referred back to

its detailed objections in its correspondence regarding Mr. Jassy. Upon Kove's insistence, AWS indicated that it was willing to consider a proposal from Kove for very narrow search terms and time period to address AWS's objections. But Kove hasn't provided a proper proposal, instead insisting on the same overbroad search terms for Messrs. Vogels and Vermeulen that don't address the breadth of Mr. Jassy's position at the company nor the cumulative nature of the request. AWS's objections remain as detailed in the prior correspondence. To be clear, AWS never has agreed to Mr. Jassy as an email custodian and doesn't do so now.

In sum, AWS isn't going to engage in further unproductive, time-consuming, correspondence in response to Kove's untimely and seemingly unending requests, which bear the hallmarks of efforts to stall discovery. As AWS confirmed in the meet and confer last week, its document production will be soon be substantially complete. AWS will begin rolling supplementation of its interrogatories to the extent necessary, beginning with Interrogatory No. 22 shortly thereafter. AWS is thus ready to proceed with scheduling depositions and completing fact discovery.

As discussed on our May 10 call, AWS is available this Wednesday at 3 pm ET regarding the wiki document review. And as discussed, Kove should provide its revised search terms prior to the parties meet and confer to ensure a productive discussion, especially since Kove has previously rejected AWS's proposed search terms.

In addition, during the April 30 meet and confer, Kove confirmed Ariel Kelman as one of its three remaining email custodians and indicated it would provide revised search terms. Kove purported to provide those terms in its May 7 correspondence. But Kove's terms violate the LPR ESI and Model Order as AWS has repeatedly explained. Without waiving its objections, however, AWS will run the search terms Mr. Marvin provided in his May 10 email for Mr. Kelman. AWS also requests that Kove please provide remaining two email production requests, in accordance with the LPR ESI and the Model Order governing email discovery in this case, without further delay. Thank you.

Sincerely,

*/s/ Elizabeth Bernard*

Elizabeth Bernard