# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KOVE IO, INC.,

     *Plaintiff,*

  v.

AMAZON WEB SERVICES, INC.,

     *Defendant.*

Case No. 1:18-cv-8175

**FILED UNDER SEAL**

## AWS'S OPPOSITION TO KOVE'S MOTION TO COMPEL DISCOVERY OF ANDREW JASSY

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Elizabeth Bernard (*pro hac vice*)
*elizabeth.bernard@fischllp.com*
Adam A. Allgood (*pro hac vice*)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................... 1

II.  BACKGROUND ................................................................................................. 2

    A.  AWS Objects to Jassy's Deposition Under the Apex Doctrine. .................................2

    B.  Kove's Email Requests Contravene the ESI Rules............................................3

III. ARGUMENT ...................................................................................................... 7

    A.  The Apex Doctrine and Rule 26 Preclude Jassy's Deposition. ...............................7

        1.  Jassy Lacks "Unique Personal Knowledge of the Matter in Dispute." ............... 8

        2.  Kove Can Obtain the Information from Other Witnesses or Methods. ............. 11

        3.  A Deposition Would Be Unduly Burdensome. .................................. 12

    B.  This Court Should Deny Kove's Motion to the Extent It Seeks to Compel Production of Emails or Other ESI from Jassy...........................................13

IV.  CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Cty. of Contra Costa*,
No. 15-cv-1673, 2017 WL 930315 (N.D. Cal. Mar. 9, 2017) ................................ 11

*Apple Inc. v. Samsung Elecs. Co., Ltd*,
282 F.R.D. 259 (N.D. Cal. 2012) ........................................................................ 12

*Cochran v. Brinkmann Corp.*,
No. 1:08-cv-1790, 2009 WL 10668460 (N.D. Ga. Feb. 11, 2009) ......................... 12

*Cty. of Cook v. Bank of Am. Corp.*,
No. 14-cv-2280, 2019 WL 5393997 (N.D. Ill. Oct. 22, 2019) ............................... 14

*Hallmark Licensing LLC v. Dickens Inc.*,
No. 17-cv-2149, 2018 WL 6573435 (E.D.N.Y. Dec. 13, 2018) ............................. 12

*In re Google Litig.*,
3:08-cv-3172, 2011 WL 4985279 (N.D. Cal. Oct. 19, 2011) .......................... 10, 11

*In re Yasmin and Yaz*,
No. 3:09-md-2100, 2011 WL 3759699 (S.D. Ill. Aug. 18, 2011) ............................ 9

*Klungvedt v. Unum Grp.*,
No. 2:12-cv-651, 2013 WL 551473 (D. Ariz. Feb. 13, 2013) ........................... 11, 12

*Little v. JB Pritzker for Governor*,
No. 18-cv-6954, 2020 WL 868528 (N.D. Ill. Feb. 21, 2020) ........................ 8, 9, 12

*Minter v. Wells Fargo Bank, N.A.*,
258 F.R.D. 118 (D. Md. 2009) ............................................................................. 11

*Motion Games, LLC v. Nintendo Co.*,
No. 6:12-cv-878, 2015 WL 11143486 (E.D. Tex. Mar. 18, 2015) ......................... 12

*Murillo v. Kohl's Corp.*,
No. 16-cv-196, 2016 WL 6090862 (E.D. Wis. Oct. 18, 2016) ....................... 1, 7, 11

*Nucap Indus. Inc. v. Robert Bosch LLC*,
No. 15-cv-2207, 2017 WL 6059770 (N.D. Ill. Dec. 7, 2017) ................................ 14

*Patterson v. Avery Dennison Corp.*,
281 F.3d 676 (7th Cir. 2002) ................................................................................ 8

*R. F. J. v. Fla. Dep't of Child. & Fams.*,
    No. 3:15-cv-1184, 2017 WL 5306888 (M.D. Fla. June 8, 2017)........................................ 9, 12

*Skytruck Co., LLC v. Sikorsky Aircraft Corp.*,
    No. 2:09-cv-267, 2011 WL 13141023 (M.D. Fla. May 11, 2011)......................................... 12

**Statutes and Rules**

Fed. R. Civ. P. 26(a)(1)(A)(i) ........................................................................................................ 2

Fed. R. Civ. P. 26(c)(1) ............................................................................................................ 8, 14

Fed. R. Civ. P. 30(b)(1).................................................................................................................. 2

Fed. R. Civ. P. 30(b)(6)...................................................................................................... 10, 11, 12

N.D. Ill. LPR ESI 2.6(a) ....................................................................................................... 2, 4, 13

N.D. Ill. LPR ESI 2.6(c) ................................................................................................................. 4

N.D. Ill. LPR ESI 2.6(d) ....................................................................................................... 4, 5, 7

N.D. Ill. LPR ESI 2.6(e) ....................................................................................................... 2, 4, 13

N.D. Ill. LR 37.2 ........................................................................................................................... 15

## I.     <u>INTRODUCTION</u>

Two weeks ago, Andy Jassy succeeded Jeff Bezos as CEO of Amazon.com, Inc., placing him at the helm of the one of the world's five largest companies. Shortly before that, Kove—for the first time, after over two years of litigation—asserted he's a relevant witness and noticed his deposition. But Mr. Jassy has no unique personal knowledge justifying a deposition. While he previously served as AWS's CEO, he oversaw more than 200 different products in that role, only two of which are accused here. And though he was involved in the early stages of one of those accused products (S3) over 15 years ago, AWS has produced or agreed to produce other witnesses, who are knowledgeable about that topic and all others Kove now contends are within Jassy's knowledge.

Kove bases its motion to compel Jassy's deposition on vague assertions that Jassy's "executive-level responsibilities ha[ve] necessarily positioned him to have unique information."[1] But this rationale, if accepted, would subject any top-level executive to a deposition in any case. And that'd encourage litigants to adopt this tactic, and particularly harm successful businesses that are frequent litigation targets. Indeed, 19 more cases against Amazon have been filed in this court since Kove filed this one, and the plaintiff in each could argue that Jassy has relevant but high-level information about company history, policies, or products.[2] Fortunately, this is just the fact pattern for which courts have developed the "apex doctrine," which protects leaders like Jassy from such discovery abuses.[3] Both that doctrine and Rule 26 preclude this unnecessary and

---

[1] Dkt. 351 at 13.

[2] *See* N.D. Ill. Nos. 1:21-cv-3169, -1578, -1092; 1:20-cv-7702, -7508, -6485, -5233, -3071, -560, -92; 1:19-cv-7569, -7543, -5835, -5659, -5061, -3990, -1426, -684; 1:18-cv- 8358. This includes cases removed from state court, but not pro se cases against Amazon dismissed at the screening stage.

[3] *E.g.*, *Murillo v. Kohl's Corp.*, No. 16-cv-196, 2016 WL 6090862, at *2 (E.D. Wis. Oct. 18, 2016) ("Virtually every court that has addressed deposition notices directed at" the "'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment.").

burdensome deposition.

And Kove's demand for emails and ESI from Jassy is similarly abusive and contrary to law. Kove ignores the ESI rules that it agreed to at the case's outset, which require email discovery to be "narrowly tailored" to focus on "particular issues."[4] For instance, Kove seeks all of Jassy's emails that mention "price" and "S3." In addition to contravening the rules' specificity requirements, these search requests duplicate discovery that Kove has sought—and AWS has agreed to provide—for other custodians, showing that they aren't narrowly tailored to any specific issues for Jassy. But instead of providing requests adhering to the ESI rules, Kove ignored AWS's objections and brought this motion.

For these and the other reasons below, AWS respectfully requests that the Court deny Kove's motion to compel.

## II.     BACKGROUND

### A.     AWS Objects to Jassy's Deposition Under the Apex Doctrine.

Through 25 months of discovery, Kove didn't identify Jassy as a knowledgeable witness in its Rule 26 disclosures.[5] But on February 2, 2021, Jassy was announced as the next CEO of Amazon.com.[6] And on May 26, 2021, when Kove served its Rule 30(b)(1) deposition notice for Jassy, Kove didn't explain why it was seeking his testimony.[7] AWS responded by explaining that the apex doctrine precludes his deposition, citing supporting facts and case law.[8] As AWS detailed, Jassy oversaw "AWS's entire operation, spanning at least 200 different products, only two

---

[4] LPR ESI 2.6(e); *see also* LPR ESI 2.6(a) (requiring "specific" email production requests).

[5] *See generally* Fed. R. Civ. P. 26(a)(1)(A)(i) (Parties must disclose "each individual likely to have discoverable information--along with the subjects of that information.").

[6] As Kove acknowledges, Jassy became CEO of Amazon.com on July 5, 2021. *See, e.g.*, Dkt. 351 at 1, 3.

[7] Ex. A (notice and enclosing letter).

[8] Dkt. 351-12 (Kove Ex. 11).

of which are relevant here."[9] And AWS further explained that Kove could obtain any information Jassy may have from others, including James Sorenson, Allan Vermeulen, and Jeff Barr, all of whom AWS has produced or agreed to produce for deposition.[10]

Despite this, Kove filed this motion on June 25. It was only after that, though, that Kove for the first time identified Jassy as a person likely to have discoverable information under Rule 26(a)(1)(A)(i). Kove's Third Amended Initial Disclosures stated the subject matter of this information as: "History of AWS and the development and launching of Amazon S3; benefits of speed, performance, scalability, and availability of S3."[11]

But, consistent with AWS's apex objection, Kove's disclosures also identified seven others as having the same information.[12]

### B. Kove's Email Requests Contravene the ESI Rules.

Kove claims that AWS has grounded its objections to Kove's ESI requests for Jassy on the apex doctrine. But that's incorrect. Rather, AWS has based its objections on the Court's ESI Rules and Kove's failure to comply with them throughout discovery here.

The parties agreed at the outset of discovery "to conform to the Local Patent Rules for Electronically Stored Information" (LPR ESI), supplemented "by following the Federal Circuit

---

[9] *Id*. at 1.

[10] The parties further exchanged letters, on June 16 and 18, 2021, in which they continued to address the deposition and email-production issues separately. *See* Ex. B; Dkt. 351-16. On the deposition issue, however, Kove didn't address the case law and arguments AWS raised on June 2 (Dkt. 351-12), except to aver in conclusory fashion that it's "entitled to depose" Jassy because of "unique personal knowledge relevant to the claims at issue in this case that cannot be garnered from other sources." Ex. B at 1.

[11] Ex. C at 8.

[12] Namely, ███████████████████████████████████████. Kove states that each has information on "benefits of speed, performance, scalability, and availability of S3," and "[d]esign, development, implementation and operation" of S3. Ex. C at 7, 9–10; *see also id*. at 3 (listing another witness with knowledge of "history and background of AWS").

Model Order Regarding E-Discovery in Patent Cases" (Model Order).[13] As is relevant here, LPR

ESI 2.6(a) provides: "General ESI production requests … shall not include email," and to "obtain

emails parties must propound specific email production requests." Further, LPR ESI 2.6(d)–(e)

provide that each party "shall limit its email production requests to a total of five custodians,"

and up to "five search terms per custodian." And LPR ESI 2.6(e) requires the email search terms

to be focused and specific:

> The search terms shall be narrowly tailored to particular issues. Indiscriminate
> terms, such as the producing company's name or its product name, are inappropri-
> ate unless combined with narrowing search criteria that sufficiently reduce the risk
> of overproduction.[14]

After a year of discovery, Kove requested that AWS assist in identifying email custodians

knowledgeable about the following three topics:

- Marketing, advertising, and customer support related to speed, scalability, and availa-
  bility for Amazon S3 and DynamoDB.
- Telemetry, usage data, and metrics regarding speed, scalability, and availability, in-
  cluding any customer testing (such as A/B testing), of Amazon S3 and DynamoDB.
- Surveys, studies, analyses or purchase journey mapping relating to pricing, sales, and
  customer procurement and retention for Amazon S3 and DynamoDB, including any
  studies commissioned by AWS.[15]

AWS responded by proposing five senior employees with relevant knowledge. Kove rejected

them all.[16] Kove instead asked for a list of alternative custodians more knowledgeable about the

---

[13] Dkt. 52 (joint motion for entry of planning report) at ¶ 3(c); Dkt. 54 (granting motion).

[14] Similarly, the Model Order provides: "Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business." Ex. D (Model Order) at ¶ 7; *see also* LPR ESI 2.6(c) ("Email production requests shall identify the custodian, search terms, and time frame.").

[15] Ex. E (Kove May 21, 2020 email).

[16] Specifically, AWS proposed: ▮▮▮▮▮ (Director of Finance), ▮▮▮▮ (Sr. Finance Manager, DynamoDB), ▮▮▮▮ (Sr. Finance Manager, S3), ▮▮▮▮ (Sr. Principal Engineer, Dy-namoDB), and ▮▮▮▮ (Principal Software Engineer, S3).

above-quoted topics.[17] Weeks later, in October 2020, Kove identified Werner Vogels and Allen Vermeulen (its own proposals) as two of its five email-custodian selections under LPR ESI 2.6(d). But Kove proposed search terms that, for example, capture all emails with the name of an accused service and the word "price," as shown below.[18]

> S3 AND (price OR pricing OR (rate w/5 charge) OR fee OR tier OR scale OR scalability OR speed OR availability OR durability OR durable OR throughput OR "bucket size" OR "bytes uploaded" OR (first-byte w/5 latency) OR (total-request w/5 latency) OR "total time" OR (elapsed w/4 time) OR "A/B" OR survey! OR (conjoint w/2 study) OR (conjoint w/2 analysis) OR "focus group" OR telemetry OR "journey map" OR "journey mapping" OR Omniture OR Webtrends OR Coremetrics OR SiteSpect)

As AWS has repeatedly explained to Kove, such search terms yield an excessive number of results and fail to comply with the ESI rules.[19] Despite AWS's request that Kove narrowly tailor its search terms to particular issues, Kove refused any substantive revisions, except to replace "and" with "w/65," which still captured 13,123 emails.[20] On February 9, 2021, to break the impasse, and without waiving its objections, AWS began reviewing those emails. And on March 12, 2021, AWS completed that production.[21]

---

[17] Ex. F (Kove Aug. 28, 2020 letter) at 1–2 ("[W]e are interested in these topics for both Amazon S3 and DynamoDB. … Once AWS identifies custodians …, Kove can then decide which five to accept.").

[18] Ex. G (Kove's Oct. 7, 2020 search terms). In September 2020, Kove also noticed the depositions of Vogels (current Amazon.com CTO) and Vermeulen (former CTO). In October 2020, AWS objected to both depositions (but not email production requests) under the apex doctrine. Kove then agreed to not depose Vogels at that time. *See* Ex. H. And the parties scheduled the deposition of Vermeulen (now a non-party, after his retirement from AWS), which took place on June 4, 2021. *See*, *e.g.*, Dkt. 351-2.

[19] For instance, on January 19, 2021, AWS informed Kove that, even when including an additional limitation (replacing "AND" with "w/100," thus requiring "price," etc., to be within 100 words of "S3" or "DynamoDB"), Kove's two damages-related terms would yield 57,000 emails. Ex. I (Jan. 19, 2021 email); *see also id*. (Jan. 11 email in same chain); Ex. J (AWS Jan. 27 letter, objecting based on ESI rules).

[20] *See* Ex. I (AWS explaining it also ran searches using "w/30," yielding ~10,000 hits, and still too many; Kove responding that 10,000 is "too low for each custodian" and asking to rerun with "w/65"); Ex. K (Kove Feb. 3 letter, insisting terms are "tailored to the benefits of the relevant technology"); Ex. L (AWS Feb. 9 letter, explaining that Kove's relevance argument "conflates general ESI discovery with email").

[21] Ex. L at 1; Dkt. 351-6 at 1. Previously, AWS also produced 2,329 emails for Kove's "technical" search terms, a process that by itself took over three weeks and yielded 9,911 pages. Ex. J. at 2.

Meanwhile, as Kove had requested, AWS continued to investigate and interview employees knowledgeable about the "marketing," "telemetry," and "survey" topics Kove had identified. And in December 2020 and January 2021, AWS proposed three more email custodians who worked specifically on the accused services and were knowledgeable about those topics.[22] But Kove delayed confirming its last three selections of those or any other email custodians.[23] And Kove ignored AWS's repeated requests to do so, including on January 15, January 27, February 9, and February 22, 2021.[24]

Instead, on March 8, 2021, Kove again rejected all of AWS's proposed custodians, and for the first time indicated that it may request emails from Jassy and three other current or former high-level employees (███████████████████████████████)—all of whom had general responsibility for all AWS services, rather than focusing on the accused services like the custodians Kove had requested and AWS had proposed.[25] So, AWS objected to this about-face.[26] But AWS provided additional information Kove requested on ███████████.[27] AWS also objected to Jassy based on the LPR ESI and Model Order, explaining that he oversees AWS's entire operation and Kove's request was thus improper because it wasn't "targeted to the accused

---

[22] ███████████ (Head of Product Marketing, AWS Storage Services), ███████████ (Senior Product Manager for DynamoDB), and ███████████ (Director of Product Management for S3).

[23] Instead, Kove asked AWS to collect ███████████████████ emails, then generate hit counts using the search terms that had proven problematic. Given that, and that AWS had now proposed eight custodians, AWS asked Kove to revise the terms before doing so. *See, e.g.*, Ex. J.

[24] Ex. M at 3; Ex. J at 2; Ex. L at 3–4; Dkt. 351-5 (Feb. 22 email).

[25] *See* Dkt. 351-5 (Mar. 8 email).

[26] Dkt. 351-6 at 1 ("Kove originally requested that AWS investigate and propose email custodians for three topics …. In response, AWS performed an internal investigation and proposed custodians … [Three months later,] Kove has rejected all [those] custodians" and "ostensibly abandoned [those] topics.").

[27] Dkt. 351-5 (Kove stating: "Once we have your confirmation [that ███████████ emails are preserved], we will confirm our remaining three custodians."); Dkt. 351-6 at 2 (AWS explaining it had 6 GB for ██████, and none for ██████, who left before this case was filed).

services, let alone specific issues in this case as required by the LPR ESI and Model Order."[28]

Nonetheless, on April 14, 2021, Kove tentatively identified Jassy, ███████, and yet another possible email custodian (███████████) as its last three LPR ESI 2.6(d) selections.[29] And in doing so, Kove asked AWS to run the same search terms that had resulted in more than 57,000 hits for Vermeulen and Vogels.[30] In response, AWS reiterated the rule-based objections it had raised many times before, and that running the terms for Jassy would be "███████████ ████████████████████████████████████████████████████."[31]

But Kove didn't relent. On May 7, 2021, it requested that AWS search Jassy's emails using the terms that had resulted in over 13,000 hits for Vogels and Vermeulen.[32] Although AWS offered to consider narrower search terms, and repeatedly asked Kove to revise the terms to comply with the LPR ESI and Model Order requirements, Kove would agree to only insignificant changes.[33] And rather than continue discussions on the issue, Kove brought the instant motion.

## III.   ARGUMENT

### A.   The Apex Doctrine and Rule 26 Preclude Jassy's Deposition.

When a party seeks an "apex" deposition of a high-level executive, courts have "observed that such discovery creates a tremendous potential for abuse or harassment."[34] Hence, this

---

[28] Dkt. 351-6 at 1–2.

[29] Dkt. 351-7 at 2 (requesting information to confirm they're "suitable" custodians). A month later, Kove selected ███████ (early General Manager for S3) in place of Sundaram. *See, e.g.*, Dkt. 351-13.

[30] *See id.*

[31] Dkt. 351-10 at 3 (███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████).

[32] *See* Dkt. 351-8 at 10.

[33] *See, e.g.*, Dkt. 351-11 at 6–7; Dkt. 351-16 at 2–4; Dkt. 351-9 at 3 (proposing only to replace "w/65" with "w/50," "AND" with "w/100," and change temporal scope from 2006-2020 to 2006-2018).

[34] *Murillo*, 2016 WL 6090862, at *2.

District has applied the "apex doctrine" to "protect high-level executives from being deposed when any of four circumstances exist: (1) the [executive] has no unique personal knowledge of the matter in dispute; (2) the information can be garnered from other witnesses or (3) other discovery methods; and (4) sitting for the deposition would impose a hardship in light of the [executive's] other duties."[35] All four circumstances apply here. And under the apex doctrine, or Rule 26,[36] this Court should deny Kove's deposition request.

###### 1. Jassy Lacks "Unique Personal Knowledge of the Matter in Dispute."

Jassy was AWS's highest-ranking executive, overseeing all of AWS and its more than 200 different products, only two of which are relevant here. And the record confirms that he has at most high-level, cumulative knowledge, not the required unique personal knowledge.

For instance, in the emails spanning a 10-year period that AWS produced from Vermeulen and Vogels, Jassy is listed in the To: or CC: line in less than 4%, with most of his responses spanning one word.[37] The emails that Kove attaches to its motion illustrate this, and further demonstrate Jassy's lack of unique personal knowledge. For instance, Kove's Exhibit 18



[38] Exhibits 17 and 22 are similar,

.[39] And though Exhibits 20 and 21 are more substantive, they further demonstrate that Jassy was involved only at the highest level, and thus lacks unique

---

[35] *See Little v. JB Pritzker for Governor*, No. 18-cv-6954, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020); *see also Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681-82 (7th Cir. 2002).

[36] *E.g.*, Fed. R. Civ. P. 26(c)(1) (with or without a motion, the Court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense").

[37] *See* Dkt. 351-9 at 2.

[38] Dkt. 351-19. As noted, Kove selected ▮▮ as an email custodian, and AWS is currently in the process of producing her email. ▮▮ also sent this to S3 email reflectors, thus cc'ing members of the S3 team.

[39] Dkt. 351-18 and 351-23.

knowledge warranting a deposition.[40] To be sure, as Magistrate Judge Cummings explained in *Little v. JB Pritzker for Governor*, even if a proposed apex deponent "was made aware of some of plaintiffs' allegations" by receiving information from subordinates, "mere knowledge of events is not sufficient to require a deposition: [he] must have 'unique' personal knowledge."[41] And nothing in the emails that Kove attaches, or 11,730 other emails AWS has produced, suggests Jassy's knowledge qualifies as unique.

The testimony of Vermeulen, one of the key engineers who developed S3, also confirms that Jassy lacks unique knowledge. To begin with, Kove noticed Jassy's deposition ten days *before* deposing Vermeulen.[42] Kove thus didn't base its decision to seek Jassy's deposition on anything Vermeulen said, despite what Kove's brief suggests.[43] And courts view such after-the-fact justifications for an apex deposition with suspicion.[44] Further, the passages of Vermeulen's testimony that Kove cites contradict the various explanations Kove has provided for deposing Jassy. Vermeulen's descriptions of Jassy's role are consistent with a high-level executive, lacking any unique knowledge that subordinates wouldn't be able to provide.[45] And although Vermeulen states that Jassy had "▮▮▮▮▮▮▮▮▮" than he did for "▮▮▮▮▮▮▮," the Rule 26

---

[40] *See* Dkt. 351-21 and 351-22 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

[41] 2020 WL 868528, at *2; *accord In re Yasmin and Yaz*, No. 3:09-md-2100, 2011 WL 3759699, at *2 (S.D. Ill. Aug. 18, 2011) ("[D]istrict courts may preclude the depositions of high-ranking executives if the witness does not possess unique or specialized knowledge relevant to the litigation.").

[42] Dkt. 351-2 (Kove Ex. 1, June 4, 2021 Vermeulen Tr.).

[43] The transcript is the first exhibit cited in (and attached to) Kove's motion, which goes on to cite the transcript 15 times, quoting from it 11 times. Dkt. 351 at 3, 4, 6, 7, 10, 12, 13.

[44] *See, e.g.*, *R. F. J. v. Fla. Dep't of Child. & Fams.*, No. 3:15-cv-1184, 2017 WL 5306888, at *3 (M.D. Fla. June 8, 2017) ("Plaintiffs noticed [apex] deposition one day before Mr. Abramowitz's deposition took place. Thus, it appears that [his] testimony merely serves as an after-the-fact justification.").

[45] *E.g.*, Dkt. 351-2 at 37:22–24 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); *id.* at 38:8–9 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").

disclosures Kove served 11 days after this motion don't aver that he has any information on "pricing" or "pricing strategy." At the same time, Kove named 12 other individuals having that information as knowledgeable witnesses, including email custodians that Kove selected and Barr, AWS's Chief Evangelist, whom Kove is scheduled to depose on August 5.[46]

Barr also could provide information on the early history of AWS (as could Vermeulen).[47] Indeed, Barr's blog post celebrating his own 15 years at AWS is one of the public sources of information that Kove relies on regarding Jassy's role.[48] And that and other public documents that Kove cites confirm that other members of the S3 team have the same knowledge of the disputed matters that Kove claims Jassy has.[49]

And the cases Kove cites don't suggest that Jassy has any unique knowledge warranting a deposition. Kove relies on a decision permitting depositions of Google's founders, Larry Page and Sergey Brin. But as the court there explained, they had "undisputedly created and developed a version of the PageRank algorithm at issue."[50] And that's not referring to high-level oversight—Page was "the named inventor on seven patents directed to PageRank …, all of which cite to one or more of the asserted patents."[51] In addition, Google's own discovery responses "specifically reference[d] Page and Brin's unique [technical] knowledge," and its Rule 26 disclosures

---

[46] Namely: ███████████████████████████████████████████
███████████████████████████████████████████████████.

[47] Kove has already deposed Sorenson as a Rule 30(b)(6) witness, and the parties have scheduled another deposition of Sorenson in his personal capacity for July 20, 2021.

[48] Dkt. 351-20.

[49] The "six-pager" memo is addressed further below, in connection with the email production issue. As detailed there, Kove contends that the relevant time period begins in 2006, so it's unclear how a memo authored before that could demonstrate any unique knowledge.

[50] *In re Google Litig.*, 3:08-cv-3172, 2011 WL 4985279, at *1 (N.D. Cal. Oct. 19, 2011) .

[51] *Id.*

named Page and Brin as witnesses.[52] No such analogous facts are present here. Rather, Kove argues that "[a]t bottom," Jassy's "executive-level responsibilities ha[ve] necessarily positioned him to have unique information." But one could say the same about any CEO, and the case law confirms that this doesn't qualify as "unique" information.[53]

### 2. Kove Can Obtain the Information from Other Witnesses or Methods.

As the Eastern District of Wisconsin has explained, "an apex deposition is generally inappropriate… when the requested information can be garnered from more knowledgeable subordinates."[54] Here, as noted, Kove could obtain any information that Jassy may have on the development of S3 from other deponents. That includes Vermeulen, whose deposition confirmed that he attended early S3 meetings and had personal knowledge on its development,[55] and Sorenson, whose deposition is scheduled for July 20. And Kove has served seven Rule 30(b)(6) deposition notices, covering 85 topics that encompass everything that Kove now contends is uniquely within Jassy's knowledge. One of many examples is Topic 6, on which Kove has already deposed AWS's witnesses, which asks about:

██████████████████████████████████████████████████████

███████ [56] Another is Topic 28, which asks about: ████████████████████

---

[52] *Id.*

[53] *See Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 126 (D. Md. 2009) (The apex doctrine prevents the deposition of a high-level executive "that is sought simply because [that person is] the CEO … not because of any special knowledge of, or involvement in, the matter in dispute."); *Klungvedt v. Unum Grp.*, No. 2:12-cv-651, 2013 WL 551473, at *2 (D. Ariz. Feb. 13, 2013) (prohibiting deposition "to discover general strategic corporate information that could more appropriately be obtained using less burdensome methods of discovery"); *Anderson v. Cty. of Contra Costa*, No. 15-cv-1673, 2017 WL 930315, at *4 (N.D. Cal. Mar. 9, 2017) (Apex deponent "was not an appropriate witness for general information regarding the Jail's policies and practices.").

[54] *Murillo*, 2016 WL 6090862, at *4 (citation omitted).

[55] *See, e.g.*, Ex. N at 34:6–35:25, 78:17–24, 126:6–132:5; *see also* Dkt. 351-4 at 1; Dkt. 351-10 at 3 n.7.

[56] Ex. O (Kove's First Notice of Deposition of Amazon) at 9.

████████████████████████████████████[57] And courts prohibit or limit apex

depositions where, as here, they would duplicate such Rule 30(b)(6) topics.[58]

### 3.  A Deposition Would Be Unduly Burdensome.

In his new role, Jassy's duties have only expanded. As Mr. Bezos observed:

> Millions of customers depend on us for our services, and more than a million employees depend on us for their livelihoods. Being the CEO of Amazon is a deep responsibility, and it's consuming. When you have a responsibility like that, it's hard to put attention on anything else.[59]

Preparing for and sitting for a deposition would disrupt Jassy's ability to fulfill those all-consuming responsibilities. And, given Mr. Jassy's position as CEO, the case law supports that a deposition would "clearly impose a hardship."[60] Indeed, this is a paradigm case for applying the apex doctrine and other protections of Rule 26, with Jassy now overseeing 1.3 million employees and in the midst of a particularly busy transition period. And, as noted, were it not for the protections of the apex doctrine and Rule 26, CEOs of companies like Amazon that are frequent targets would likely devote a significant portion of their workdays solely to depositions.

---

[57] *Id*. at 12; *see also* Ex. P (Kove's six supplemental Rule 30(b)(6) deposition notices).

[58] *See, e.g.*, *R. F. J.*, 2017 WL 5306888; *Klungvedt*, 2013 WL 551473; *Hallmark Licensing LLC v. Dickens Inc.*, No. 17-cv-2149, 2018 WL 6573435, at *5 (E.D.N.Y. Dec. 13, 2018); *Skytruck Co., LLC v. Sikorsky Aircraft Corp.*, No. 2:09-cv-267, 2011 WL 13141023, at *2 (M.D. Fla. May 11, 2011); *Motion Games, LLC v. Nintendo Co.*, No. 6:12-cv-878, 2015 WL 11143486, at *3 (E.D. Tex. Mar. 18, 2015); *see also Cochran v. Brinkmann Corp.*, No. 1:08-cv-1790, 2009 WL 10668460, at *2 (N.D. Ga. Feb. 11, 2009) ("The Court has reviewed the Plaintiffs' proposed list of [30(b)(6)] depositions topics and finds them to be far too broad and unduly burdensome for a deposition of [proposed apex deponent].").

[59] www.cnbc.com/2021/02/02/jeff-bezos-to-step-down-as-amazon-ceo-andy-jassy-to-take-over-in-q3.html.

[60] *See, e.g.*, *Little,* 2020 WL 868528, at *2 (finding that deposition would "clearly impose a hardship," as proposed deponent's duties required his full-time attention at all times); *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (A "court must assess not only the materiality of the proposed deponent's knowledge …, but—with apologies—the person's degree of 'apex-ness' …. [T]he closer [the person] is to the apex of some particular peak in the corporate mountain range, and the less directly relevant …, the more appropriate the protections of the apex doctrine become.").

**B.**     **This Court Should Deny Kove's Motion to the Extent It Seeks to Compel Production of Emails or Other ESI from Jassy.**

As the introduction to the Model Order explains, patent cases "tend to suffer from dispro-portionally high discovery expenses," which "are compounded when attorneys use discovery tools as tactical weapons."[61] Thus, it states that:

> The goal of this Model Order is to promote economic and judicial efficiency by streamlining e-discovery, particularly email production, and requiring litigants to focus on the proper purpose of discovery—the gathering of material information—rather than permitting unlimited fishing expeditions.[62]

And it requires, among other things, that "[e]mail production requests shall only be propounded for specific issues, rather than general discovery of a product or business."[63] Likewise, as noted above, LPR ESI 2.6(a) and (e) provide that "[t]o obtain emails parties must propound specific email production requests" that "shall be narrowly tailored to particular issues."

As detailed above, AWS has repeatedly objected to Kove's improper approach to email production as contrary to the Model Order and LPR ESI. Specifically for Jassy's emails, AWS detailed its objections based on the Model and LPR ESI in April 19, May 11, June 2, and June 18, 2021 letters.[64] As AWS explained, terms that capture every document with the name of a product and "price" (or any of about 30 other terms) aren't narrowly tailored to any issue in the case; rather, they comprise the prohibited fishing expedition. And Kove's improper approach has only continued in its motion. Kove cites general law on the definition of relevance and argues that it requires the production of emails, drawing no distinction between email production and

---

[61] Ex. D at 1–2 (further explaining that "disproportionate, overbroad email production requests," in partic-ular, "carry staggering time and production costs that have a debilitating effect on litigation").

[62] *Id*. at 2.

[63] *Id*. at ¶ 7; *see also id.* at 3 ("[E]mail production requests should be focused on a particular issue.").

[64] Dkt. 351-10, 351-11, 351-14, and 351-16. AWS also repeatedly raised similar objections previously to Kove's search terms for Vermeulen and Vogels. Rather than seek court intervention at that time, AWS proceeded with the burdensome task of reviewing more than 15,000 emails from those custodians alone.

other discovery.[65] But email production requests here are governed by this Court's LPR ESI and the parties' court-approved agreement to follow the Model Order.[66] AWS has complied with those obligations.[67] Kove must do the same, including in its email production requests.[68]

Kove's motion also suggests that AWS objected to producing emails based on the apex doctrine, citing four cases to support the proposition that "[t]he apex doctrine does not shield e-mails or documents from production."[69] But AWS didn't assert the doctrine as a basis to object to disclosing emails or documents.[70] And, in any event, this District has taken the view that the "apex doctrine" is merely an application of Rule 26,[71] which protects parties from unnecessary and burdensome discovery of all stripes.[72]

Finally, Kove's motion also contravenes the ESI Rules and Model Order by conflating

---

[65] *See* Dkt. 351 at 6–9.

[66] *See also, generally, Cty. of Cook v. Bank of Am. Corp.*, No. 14-cv-2280, 2019 WL 5393997, at *6 (N.D. Ill. Oct. 22, 2019) (noting this Court's "broad and substantial authority to manage the discovery process to effectuate the principles of Rules 1 and 26(b)(1) of the Federal Rules of Civil Procedure").

[67] This includes AWS's production of emails, investigating and proposing custodians, proposing modified search terms to Kove and generating hit counts, and AWS's own requests for email production. And to the extent Kove seeks non-email ESI, AWS has also complied with those obligations. For instance, as stated in the May 11, 2021 letter that Kove attaches, AWS had by then "produced 452,500 pages and 21,742 documents, including non-technical documents collected from past and present product managers, marketing managers, and central repositories." Dkt. 351-11 at 1.

[68] Although Kove cites *Cty. of Cook,* 2019 WL 5393997, at *6, for the proposition that a "w/50" connector is reasonably tailored, the court there didn't apply the LPR ESI or Model Rule. And unlike here, where Kove's previous requests demonstrate the burdensome nature of its search terms, that court hadn't received "any information from which it can perform the balancing of benefits and burdens."

[69] Dkt. 351 at 5.

[70] *See, e.g.*, Dkt. 351-14; Dkt. 351 at 4–5 (acknowledging AWS didn't "explicitly invoke the doctrine" in refusing to produce any emails, instead claiming AWS's objections are "tantamount" to it).

[71] *E.g., Nucap Indus. Inc. v. Robert Bosch LLC*, No. 15-cv-2207, 2017 WL 6059770, at *1 (N.D. Ill. Dec. 7, 2017) ("The 'apex doctrine' is 'a framework used by some courts to analyze whether to allow the depositions of high-ranking senior executives or officials.'").

[72] *E.g.*, Fed. R. Civ. P. 26(c)(1). Kove's argument that "[t]he burden to produce e-mails is low" also runs contrary to the Model Order, and common sense. *See* Dkt. 351 at 7. AWS can't produce tens of thousands of emails from its CEO without reviewing them, and that'd require significant time and resources.

general ESI with email production in requesting a six-page memo that Jassy reportedly authored in 2003. For instance, Kove argues that it "voluntarily narrowed its original terms," and that AWS's refusal to run those searches deprived Kove of relevant information "going back [to Jassy's] 2003 six-pager."[73] Yet, Kove has from the beginning limited its proposed search terms for Jassy (and other email custodians) to after 2006.[74] So the dispute over "Jassy's ESI," as recited in Kove's motion and as discussed at the parties' June 15 meet and confer, has nothing to do with the production of this reported document.[75] And thus no motion to compel its production is properly before the Court.[76] Moreover, Kove first mentioned this document in its 182nd Request for Production, part of its February 2021 Sixth Set of RFPs.[77] And as AWS explained to Kove months ago, the six-pager is a non-technical document that Jassy reportedly authored before AWS or any of the accused products existed, before the asserted patents issued, and before the time period for which Kove is claiming damages.[78] So it's not relevant here.

## IV. **CONCLUSION**

The apex doctrine and Rule 26 protect Amazon's CEO from the unnecessary and burdensome deposition that Kove seeks here. And Kove's isn't entitled to the requested emails, since it hasn't complied with the ESI rules it agreed to at the beginning of this case. Accordingly, the Court should deny Kove's motion.

---

[73] *Id*. at 8.

[74] *See*, *e.g.*, Ex. G; Dkt. 351-9 at 3; Ex. K at 2 (stating "relevant time period … extends back to 2006").

[75] *See*, *e.g.*, Ex. B (Kove writing "to memorialize the substance of" June 15, 2021 meet and confer, but not mentioning six-pager).

[76] *See* N.D. Ill. LR 37.2 (providing that this Court shall refuse to hear a discovery motion unless it recites the date, time, and place of a conference where the parties attempted to resolve the issue in good faith); Dkt. 351 at 1 (reciting only June 15 meet and confer).

[77] This was two weeks before AWS produced 42,738 pages of responsive non-technical documents. Dkt. 351-5 (Feb. 22 email). Kove has since served its Ninth Set, bringing its total number of RFPs to 232.

[78] *See*, *e.g.*, Dkt. 351-8 at 6.

Dated: July 19, 2021

Respectfully submitted,

*/s/ R. William Sigler*
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Elizabeth Bernard (*pro hac vice*)
*elizabeth.bernard@fischllp.com*
Adam A. Allgood (*pro hac vice*)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 19, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, which will send notice to all counsel of record who have consented to service by electronic means.

*/s/ R. William Sigler*