HIGHLY CONFIDENTIAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Hon. Rebecca R. Pallmeyer |
| v. | Hon. Sheila M. Finnegan Magistrate Judge |
| Amazon Web Services, Inc., | |
| Defendant. | Jury Trial Demanded |

**KOVE IO, INC.'S REPLY IN SUPPORT OF
MOTION TO COMPEL DISCOVERY OF ANDREW JASSY**

**HIGHLY CONFIDENTIAL**

**TABLE OF CONTENTS**

I. NEITHER THE APEX DOCTRINE NOR RULE 26 PRECLUDES JASSY'S DEPOSITION. ........................................................................................................... 1

   A. Jassy's Personal Knowledge Is Relevant, Discoverable, and Not Barred by the Apex Doctrine. .................................................................................................................. 1

   B. Jassy's Knowledge Is Unique and Cannot Be Obtained from Other Witnesses. ................. 5

   C. Jassy's Busy Schedule Cannot Shield Him from Deposition. ............................................. 9

II. THE MODEL ORDER AND LPR ESI DO NOT SUPPORT AWS'S ATTEMPT TO FORECLOSE DISCOVERY OF JASSY'S ESI. .................................................................. 10

   A. AWS's Refusal Provide Discovery of Jassy's ESI Necessitated Kove's Motion. .............. 10

   B. Kove's Search Terms Comply with the Model Order and LPR ESI. ................................. 11

   C. Jassy's "Six-Pager" Is Relevant and Discoverable. ........................................................... 12

III. CONCLUSION ....................................................................................................................... 13

**HIGHLY CONFIDENTIAL**

**TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
   282 F.R.D. 259 (N.D. Cal. Apr. 4, 2012)...................................................................1, 8, 10, 11

*County of Cook v. Bank of America Corp.*,
   No. 14-cv-2280, 2019 WL 5393997 (N.D. Ill. Oct. 22, 2019) ...........................................11, 12

*Dyson, Inc., et al. v. Sharkninja Operating LLC, et al.*,
   No. 1:14-cv-0779, 2016 WL 1613489 (N.D. Ill. Apr. 22, 2016)..........................................2, 10

*In re Google Litig.*,
   No. 08-cv-03172, 2011 WL 4985279 (N.D. Cal. Oct. 19, 2011) ................................... *passim*

*Hallmark Licensing LLC v. Dickens Inc.*,
   No. 17-cv-2149, 2018 WL 6573435 (E.D.N.Y. Dec. 13, 2018)..................................................9

*Johnson v. Jung*,
   242 F.R.D. 481 (N.D. Ill. May 10, 2007) ..............................................................................2, 5

*Klungvedt v. Unum Grp.*,
   No. 2:12-CV-00651, 2013 WL 551473 (D. Ariz. Feb. 13, 2013) ..............................................9

*Little v. JB Pritzker for Governor*,
   No. 18-cv-6954, 2020 WL 868528 (N.D. Ill. Feb. 21, 2020).......................................2, 3, 4, 5

*Mendez v. City of Chicago*,
   No. 18-cv-5560, 2020 WL 3510692 (N.D. Ill. June 29, 2020)..........................................1, 5, 8

*Minks v. Polaris Indus.*,
   546 F.3d 1364 (Fed. Cir. 2008).................................................................................................12

*Murillo v. Kohl's Corp.*,
   No. 16-CV-196-JPS, 2016 WL 6090862 (E.D. Wis. Oct. 18, 2016).....................................7, 8

*Nucap Indus. Inc. v. Robert Bosch LLC*,
   No. 15-cv-2207, 2017 WL 6059770 (N.D. Ill. Dec. 7, 2017).................................................1, 9

*Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, No. 3:12-cv-2385, 2014 WL
   257566, at *2-4 (S.D. Ill. Jan. 23, 2014)................................................................................2, 5

*R.F.J. v. Fla. Dep't of Child. & Fams.*,
   No. 3:15-cv-1184, 2017 WL 5306888 (M.D. Fla. June 8, 2017) ...............................................9

**HIGHLY CONFIDENTIAL**

*Salter v. Upjohn Co.*,
    593 F.2d 649 (5th Cir. 1979) ................................................................................................5

*In re Yasmin and Yaz*,
    2011 WL 3759699, (S.D. Ill. Aug. 18, 2011) .........................................................................3

**Other Authorities**

8A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, Federal
    Practice and Procedure, § 2036 n.7 (3d ed. 2010) ....................................................................2

**HIGHLY CONFIDENTIAL**

Plaintiff Kove IO, Inc. ("Kove") respectfully submits this Reply to Amazon Web Services, Inc.'s ("AWS") Opposition to Kove's Motion to Compel Discovery of Andrew Jassy ("Motion").

## I. NEITHER THE APEX DOCTRINE NOR RULE 26 PRECLUDES JASSY'S DEPOSITION.

Jassy's responsibilities as the head of Amazon do not change the fact that he possesses unique and personal knowledge of matters in dispute in this case. He is not exempt from deposition under the apex doctrine, and AWS's Opposition fails to show otherwise. The apex doctrine's "sensitiv[ity] to the risk of abuse where an executive has no real information"[1] is not offended by Kove's reasonable and well-grounded request for Jassy's deposition, and the extreme and "unusual" remedy of completely foreclosing it is unwarranted.[2]

### A. Jassy's Personal Knowledge Is Relevant, Discoverable, and Not Barred by the Apex Doctrine.

AWS does not deny that Jassy has personal knowledge relevant to matters in dispute in this case.[3] Rather, AWS argues that Jassy's knowledge is not "unique," characterizing it as "at most high-level, cumulative knowledge."[4] AWS asserts that Jassy lacks "any unique knowledge that

---

[1] *Nucap Indus. Inc. v. Robert Bosch LLC*, No. 15-cv-2207, 2017 WL 6059770, at *2 (N.D. Ill. Dec. 7, 2017).

[2] *Mendez v. City of Chicago*, No. 18-cv-5560, 2020 WL 3510692, at *2 (N.D. Ill. June 29, 2020); *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. Apr. 4, 2012) (granting motion to compel deposition of CEO for two hours over apex objections); *In re Google Litig.*, No. 08-cv-03172, 2011 WL 4985279 at *2 (N.D. Cal. Oct. 19, 2011) (ordering CEO to sit for 3-hour deposition over apex objections).

[3] Kove has explained that Jassy's knowledge is directly relevant to understanding the business incentives; profits and design decisions; corporate genesis and corporate structure of the Defendant; issues surrounding the hypothetical negotiation; issues relevant to damages such as commercial success, pricing, profitability, and convoyed sales; and assessment of the value of Kove's inventions as used by AWS in the accused products and dependent services. Dkt. 351 at 9-13. AWS does not dispute that Jassy has this knowledge.

[4] Dkt. 361 at 8-9.

1

**HIGHLY CONFIDENTIAL**

subordinates wouldn't be able to provide" because he "managed teams" and "the entire team ha[d] full responsibility for the entire product."[5]

AWS ignores the testimony of its own employee, who testified that Jassy was very much involved in the details of S3's and AWS's early days, including the initial drive to develop the technology and the pricing decisions that went into commercializing it.[6]

AWS also over-stretches the purpose of the apex doctrine; having knowledgeable subordinates does not render an executive immune to deposition for lack of "unique" personal knowledge.[7] AWS's cited case law does not support its too-broad interpretation of the doctrine.[8]

AWS cites *Little v. JB Pritzker for Governor*[9] for the proposition that "mere knowledge of events is not sufficient to require a deposition: [the witness] must have "unique" personal

---

[5] *Id.*

[6] Dkt. 351 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[7] *Johnson v. Jung*, 242 F.R.D. 481, 485-86 (N.D. Ill. May 10, 2007) (denying protective order to bar deposition of CEO despite CEO's learning of relevant information through meetings and being cc'ed on emails); *Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, No. 3:12-cv-2385, 2014 WL 257566, at *2-4 (S.D. Ill. Jan. 23, 2014) (permitting apex deposition even though "there are other less prominent employees . . . who could provide testimony on these matters," because "[t]hat [ ] is not the end of the issue").

[8] Under AWS's broad interpretation, any executive would necessarily be immune from discovery on any official business about which a subordinate also has knowledge. AWS's interpretation improperly expands the application of the apex doctrine far beyond situations where "the officer has no real information," resulting in a doctrine akin to "executive immunity." *See Dyson, Inc., et al. v. Sharkninja Operating LLC, et al.*, No. 1:14-cv-0779, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016) (quoting 8A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, Federal Practice and Procedure, § 2036 n.7 (3d ed. 2010)).

[9] No. 18-cv-6954, 2020 WL 868528, at *2 (N.D. Ill. Feb. 21, 2020).

knowledge."[10] That statement is true, but inapposite. In *Little*, the apex witness "lacked daily supervisory responsibilities" over the people involved, "was rarely made aware" of relevant matters, "had no direct role" in the relevant issues, and "was not responsible for" the matters at issue.[11]

None of the preconditions from *Little* are present here.[12] *First*, Jassy did not "lack[] daily supervisory responsibilities" over the people tasked with envisioning and designing S3.[13] Instead, Jassy himself drafted the initial vision document for AWS's business and assembled the team to execute the vision.[14] As author of the vision document that launched the company, Jassy has unique personal knowledge and insight about, among other things, the genesis of the ideas expressed therein and how they manifested themselves in the founding of AWS and the accused S3 product. His knowledge about how and why S3 became critical to AWS's other offered services is highly relevant to assessing the value of Kove's inventions, particularly at the time of the hypothetical negotiation.

*Second*, AWS has not demonstrated that Jassy was "rarely made aware" of relevant issues.[15]

---

[10] Dkt. 361 at 9.

[11] 2020 WL 868528, at *2-5 (N.D. Ill. Feb. 21, 2020).

[12] The same distinction applies to all of the cases on which AWS relies. For example, AWS cites *In re Yasmin and Yaz* to support the proposition that "district courts may preclude the depositions of high-ranking executives if the witness does not possess unique or specialized knowledge relevant to the litigation." Dkt. 361 at 9n.41 (citing 2011 WL 3759699, at *2 (S.D. Ill. Aug. 18, 2011). Yet, AWS has not demonstrated that Jassy lacks relevant or unique information.

[13] *Little*, 2020 WL 868528, at *2.

[14] Dkt. 351 at 10, Ex. 19 (Dkt. 351-20) (AWS blog post reminiscing on Jassy's "narrative to define the AWS business"), Ex. 1 ; Ex. 2 (Dkt. 351-3) (article telling the story of Jassy's "six-pager" and that Jassy "requested 57 people" to start the company that "became Amazon Web Services"); *see infra* at 12-13 (discussing vision document).

[15] *Little*, 2020 WL 868528, at *2.

3

**HIGHLY CONFIDENTIAL**



AWS argues that the relatively small number of emails involving Jassy that Kove was able to cite is proof that Jassy lacks knowledge regarding the issues in this case.[19] But far from disproving Jassy's involvement, AWS's criticism bolsters Kove's position that Jassy's knowledge is unique, and that Kove cannot obtain his information from other witnesses.[20]

AWS's criticism also underscores Kove's complaint regarding AWS's refusal to produce Jassy's emails. Leaving aside the chutzpah it takes to refuse email production, and then point to lack of email as a basis for refusing a deposition, AWS cannot explain away the demonstrated knowledge that Jassy clearly possesses.

*Finally*, unlike in *Little*, AWS does not claim that Jassy "had no direct role" in the development of S3 or in AWS's greater portfolio of service, or that Jassy "was not responsible

---

[16] 

[17] *Id.*

[18] *Id.* at 6, Ex. 17 (Dkt. 351-18) Ex. 18 (Dkt. 351-19)

[19] Dkt. 361 at 8.

[20] It should go without saying that Jassy's knowledge is not limited to e-mail communications and that Jassy has unique information that was never communicated via e-mail. *See* Dkt. 351, Ex. 1

for" relevant issues.[21] Nor could it—the record contains ample evidence of Jassy's hands-on approach to executive leadership, as well as his personal involvement in the decision making surrounding the development and success of S3.[22] The evidence also shows that Jassy had a role in developing DynamoDB, ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████ Kove should be allowed to probe this knowledge.

**B. Jassy's Knowledge Is Unique and Cannot Be Obtained from Other Witnesses.**

AWS suggests that Jassy's knowledge is not unique and that Kove can obtain the information it seeks from Allan Vermeulen, Jeff Barr, and James Sorenson.[24] But AWS has failed to show that these witnesses' knowledge is actually duplicative.[25] Indeed, ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████ Likewise, as AWS's "evangelist," Barr's role was mostly limited to

---

[21] *Little*, 2020 WL 868528, at *2.

[22] Dkt. 351 at 10-12 (citing Exs. 1 (Dkt. 351-2), 2 (Dkt. 351-3), and 19-21 (Dkts. 351-20, 21, 22)); *see Pradaxa*, 2014 WL 257566, at *2-4 (specific and unique knowledge may exist where an executive is uniquely hands on); *Johnson*, 242 F.R.D. at 485-86 (sufficient knowledge may exist where an executive had personal involvement in the specific decisions at issue).

[23] *Id*. (citing Ex. 22 (Dkt. 351-23)).

[24] Dkt. 361 at 10.

[25] *See Mendez v. City of Chicago*, No. 18-cv-5560, 2020 WL 3510692, at *2 (N.D. Ill. June 29, 2020) (that a witness "may have different facts or perspectives than those" already deposed was enough to permit an allegedly cumulative deposition to go forward) (quoting *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)).

[26] Dkt. 351, Ex. 1 ███████████████████████████████

public outreach and "developer relations."[27] Sorenson's role is similarly distinct, as he is a technical engineer who was not involved in the creation of AWS, the early design of the accused products, product pricing, or business strategy.[28] Thus, the scope of Jassy's responsibilities is unique from the responsibilities and viewpoints of Vermeulen, Barr, or Sorenson.

In arguing that Jassy lacks unique knowledge, AWS refers to *In re Google Litig.*, and suggests that, to possess "unique" knowledge for the purposes of the apex doctrine, a witness must be a named inventor on a relevant patent or must be identified in the Rule 26 disclosures of the party resisting discovery.[29] *In re Google* does not support any such proposition. Far from setting a minimum standard for "knowledge warranting a deposition," the case instead stands for the principle that "[a]bsent extraordinary circumstances, it is *very unusual* for a court to prohibit the taking of a deposition," and "when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition."[30]

In *In re Google Litig.*, the witness (Google's CEO) participated in developing an algorithm, was a named inventor on a Google patent, and was one of few employees present at the time of the hypothetical negotiation, which gave him unique personal knowledge relevant to the case.[31] The court found the CEO was "clearly [a] high-level executive[] whose deposition[] must satisfy

---

[27] *See* Dkt. 351 at Ex. 19 (Dkt. 351-20) at 2 (about himself, Barr saying being a Web Services Evangelist "was a great match for my skills and I took to it right away, booking events with any developer, company, school, or event that wanted to hear from me!").

[28] *See* Dkt. 351 at Ex. 24 (Dkt. 351-25)

[29] Dkt. 361 at 10-11 (referring to Kove's citation to *In re Google Litig.*, 3:08-cv-3172, 2011 WL 4985279, at *1 (N.D. Cal. Oct. 19, 2011)).

[30] *In re Google Litig.*, 2011 WL 4985279, at *2 (emphasis added).

[31] *Id.* at *1-2.

the 'apex' requirements," but that he nonetheless had "unique knowledge of facts that cannot be secured by other less intrusive means of discovery."[32]

The same thing is true here. As the architect of AWS, and the driving force behind AWS's offerings and business strategy, Jassy has unique knowledge regarding the formation of AWS, the conception of the accused products, the value of the accused products, how the accused products have contributed to AWS's success, and AWS's expectations and beliefs at the time of the hypothetical negotiation. Like the Google CEO who was the subject of the *In re Google Litig.* decision, Jassy has unique personal knowledge about relevant technology and, in particular, the accused S3 and DynamoDB products.[33] This knowledge more than satisfies the requirements of the apex doctrine,[34] and AWS has not satisfied its burden to show otherwise.

AWS argues that "Kove could obtain any information that Jassy may have on the development of S3 from other deponents,"[35] pointing to the holding in *Murillo v. Kohl's Corp.*[36] But AWS takes the holding in *Murillo* far out of context.

In *Murillo*, the court performed a balancing of the plaintiff's right to discovery with the need to prevent fishing expeditions by weighing plaintiff's need to depose "an upper-level executive"—one "who swears under oath to have no knowledge of the underlying facts . . . at issue in this case" despite plaintiff's "mere allegations" of the executive's knowledge—against the plaintiff's "ample opportunity to discuss these topics with lower-level employees with direct,

---

[32] *Id.* at *2.

[33] *See* Dkt. 351 at 10 (citing Ex. 2 (Dkt. 351-3), an article noting that Jassy "requested 57 people" to start AWS).

[34] *See In re Google Litig.*, 2011 WL 4985279, at *2.

[35] Dkt. 361 at 11.

[36] *Murillo v. Kohl's Corp.*, No. 16-CV-196-JPS, 2016 WL 6090862 (E.D. Wis. Oct. 18, 2016).

personal involvement and knowledge about these issues."[37] In that context, the court held that access to "more knowledgeable subordinates" could justify blocking an executive's deposition.[38]

*Murillo* is inapposite here. Kove is not seeking Jassy's deposition based on "mere allegations" of his unique personal knowledge, nor has AWS (let alone Jassy himself) stated that Jassy "[has] no knowledge of the underlying facts." Instead, Kove's Motion cites unrefuted evidence of Jassy's unique personal knowledge, including documents and testimony.[39] AWS's assertion that "Kove could obtain any information that Jassy may have on the development of S3 from other deponents," namely Vermeulen and Sorenson, does not make this case like *Murillo*. This is particularly true where, as here, the other deponents have noted that Jassy's knowledge is unique from their own.[40]

AWS's argument that "courts prohibit or limit apex depositions where, as here, they would duplicate such Rule 30(b)(6) topics" also fails to justify foreclosure of Jassy's deposition.[41] On the contrary, the foreclosure of an executive's deposition pursuant to the apex doctrine remains an extreme and "unusual" remedy.[42] And AWS's cited case law stands for the simple and uncontroversial proposition that the apex doctrine only bars depositions where the witness lacks

---

[37] *Id.* at *3-4.

[38] *Id.* at *4.

[39] Dkt. 351 at 9-12.

[40] Dkt. 351 at 12-13 ████████████████████████
████████████████████████████████████████

[41] Dkt. 361 at 11-12.

[42] *See Mendez*, 2020 WL 3510692, at *2; *Apple Inc.*, 282 F.R.D. at 263; *In re Google Litig.*, 2011 WL 4985279 at *2.

unique knowledge.[43] As explained above, the evidence cited in Kove's Motion clears that hurdle, and AWS has not satisfied its burden to show otherwise.

### C. Jassy's Busy Schedule Cannot Shield Him from Deposition.

AWS's "unduly burdensome" argument is facially insufficient to foreclose Jassy's deposition. AWS argues that "this is a paradigm case for applying the apex doctrine" because Jassy now oversees "1.3 million employees and [is] in the midst of a particularly busy transition period," and cautions that a deposition would "disrupt Jassy's ability to fulfill [his] all-consuming responsibilities" as CEO of Amazon.[44] But, with respect, Jassy's busy schedule and the size of Amazon do not make this a paradigm case.

As Magistrate Judge Kim has explained, "[a]s hectic as an executive's schedule might be, the hypothetical single parent could make a compelling argument that he is busier than the hypothetical chief executive officer."[45] Thus, "[t]he more important consideration . . . is the executive's knowledge of relevant information."[46] It goes without saying that a CEO is busy—the

---

[43] *E.g.*, *Hallmark Licensing LLC v. Dickens Inc.*, No. 17-cv-2149, 2018 WL 6573435, at *5 (E.D.N.Y. Dec. 13, 2018) (denying an apex deposition because the requesting party did "not provide a basis for why [the witness] may have unique knowledge"); *R.F.J. v. Fla. Dep't of Child. & Fams.*, No. 3:15-cv-1184, 2017 WL 5306888, at *3-4 (M.D. Fla. June 8, 2017) (precluding an apex deposition for the purpose of seeking "policies and procedures," but noting that it may be permitted if the witness was shown to have unique personal knowledge); *Klungvedt v. Unum Grp.*, No. 2:12-CV-00651, 2013 WL 551473, at *3 (D. Ariz. Feb. 13, 2013) (denying an apex deposition because the request "was made without a solid basis for believing [the witness] had some unique and personal knowledge related to these issues which makes his deposition more than marginally relevant and enough to outweigh the burden").

[44] Dkt. 361 at 12.

[45] *Nucap*, 2017 WL 6059770, at *4 (quotations and citation omitted).

[46] *Id*.

apex doctrine assumes an executive's time is valuable.[47] But the doctrine exists to protect executives "when they do not have personal knowledge of the relevant facts," not simply because they should not be bothered.[48] Jassy's demonstrated possession of unique personal knowledge removes him from the apex exception.[49]

## II. THE MODEL ORDER AND LPR ESI DO NOT SUPPORT AWS'S ATTEMPT TO FORECLOSE DISCOVERY OF JASSY'S ESI.

### A. AWS's Refusal Provide Discovery of Jassy's ESI Necessitated Kove's Motion.

AWS avers that it objected to Kove's search terms for Jassy because they were the same terms "that had resulted in over 13,000 hits for Vogels and Vermeulen," but that it "offered to consider narrower search terms."[50] But what AWS actually offered Kove was much less. After working with Kove to reach reasonable terms for four other custodians,[51] for Jassy, AWS ███████ would not offer a counter-proposal to Kove's reasoned terms.[52] Effectively, AWS insisted that Kove bargain against itself, requiring it to offer terms that AWS refused to collaborate on, even as

---

[47] *See Dyson*, 2016 WL 1613489, at *1 (The apex doctrine "is not an ironclad rule, but bespeaks sensitivity to the risk that very valuable executive time would be wasted where the officer has no real information.") (quotations and citation omitted).

[48] *See id.* ("[T]he logical underpinnings of the apex doctrine seeks to prevent a high-ranking corporate executive from being run through the wringer of civil discovery, when they do not have personal knowledge of the relevant facts; in other words, to protect apex employees "from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1)").

[49] *See Apple*, 282 F.R.D. at 263-65 (ordering the CEO of Samsung to sit for a deposition because he "engaged in the type of hands-on action which demonstrates the unique personal knowledge required to compel a deposition of a CEO.") (quotations and citation omitted).

[50] Dkt. 361 at 7.

[51] The four custodians are ███████████████████████. *See* Dkt. 351 at 7-8; Dkt. 361 at 6-7.

[52] Dkt. 351 at Ex. 15 (Dkt. 351-16) at 2-3.

Case: 1:18-cv-08175 Document #: 370 Filed: 07/30/21 Page 15 of 19 PageID #:10290

HIGHLY CONFIDENTIAL

it reserved the right to wave them off as unacceptable. In spite of this gamesmanship, Kove proposed revised terms it hoped would satisfy AWS's opaque standards (AWS acknowledges this in its Opposition), but AWS dismissed Kove's narrowed proposal out of hand, deeming the changes "insignificant," and again offering no hit counts or counter-proposals.[53] AWS maintains that its objections are based on the Local Patent Rules for Electronically Stored Information ("LPR ESI"),[54] but there is no "very narrowly tailored" provision in the LPR ESI.[55] As is clear from its actions, AWS means to block Jassy's ESI, regardless of the governing rules.

### B. Kove's Search Terms Comply with the Model Order and LPR ESI.

Kove's proposed search terms are reasonable and tailored to the issues in the case. AWS takes issue with the combination of "S3" and "price," despite the price of S3 being a key issue in this case, and an issue about which Jassy is knowledgeable.[56] But AWS maintains its "rule-based objections" even after Kove added the delimiter "w/50," which is a narrowing in the spirit of the local rules,[57] and is even more conservative than the "w/60" delimiter that was explicitly approved in *County of Cook v. Bank of America Corp.*[58] AWS attempts to distinguish *Cook* because that court "didn't apply the LPR ESI or Model Order."[59] But that is no distinction at all, since the LPR ESI and Model Order do not provide such specific guidance. AWS does not dispute that the *Cook*

---

[53] *See* Dkt. 351 at Ex. 15 (Dkt. 351-16); Dkt. 361 at 7.

[54] *See* Dkt. 361 at 7, 13.

[55] LPR ESI 2.6.

[56] Dkt. 351 at 12

[57] See LPR ESI 2.6(e) (requiring search term to be "narrowly tailored to particular issues," where conjunctive combinations are considered narrowing).

[58] No. 14-cv-2280, 2019 WL 5393997, at *6 (N.D. Ill. Oct. 22, 2019) ("a w/60 connector is an appropriate connector to be used for the ESI searches here because it will likely produce documents where the set of search terms are within a single document.")

[59] Dkt. 361 at 14 n.68.

decision was motivated by the same concerns at issue here—efficiency, burden, and proportionality.[60] AWS's reliance on the total hit counts for Vermeulen and Vogels to argue that Jassy's hit counts would be equally high is also unavailing—different terms with different delimiters for different custodians are bound to have different hit counts, and AWS refuses to even provide the hit counts for Jassy. Regardless, a high hit count did not stop the parties from working together to reach agreeable terms for other custodians, and AWS's special objection for Jassy is unwarranted.

### C. Jassy's "Six-Pager" Is Relevant and Discoverable.

The six-page vision document Jassy authored describing the initial design of AWS and the accused S3 product is relevant to the value of infringing features and the hypothetical negotiation. The memorandum describes the vision for the architecture and significance of S3—the very accused feature that infringes Kove's patents—and is contemporaneous with the hypothetical negotiation.[61] AWS argues that the document is not relevant because it is "non-technical,"[62] but a document need not be technical to be discoverable.[63]

AWS also argues that the six-page vision document is not discoverable because it was authored in 2003. AWS asserts that because Kove limited its proposed *ESI search terms* to 2006

---

[60] 2019 WL 5393997, at *6 (ordering the use of a "w/60" delimiter and rejecting the parties' dueling proposals of using an "AND" connector with no delimiter, and a narrow delimiter of "w/15" after considering burden, relevance, and proportionality).

[61] The hypothetical negotiation takes place "at the time infringement began." *Minks v. Polaris Indus.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008) (quotations and citations omitted).

[62] Dkt. 361 at 15.

[63] The six-pager meets the bar for relevance. *See* Fed. R. Ev. 401 (Relevant evidence is that which "has any tendency to make a fact more or less probable" and "is of consequence in determining the action.").

and later, the six-pager falls outside the scope.[64] But there is no reason to apply an *ESI* limit to exclude a known and clearly identified document that is responsive to requests for production.[65] ESI search terms and delimiters are meant to help contain the proliferation of large-volume information, such as email. ESI limitations have no bearing on the six-page document Jassy unquestionably authored, has possession of, and is responsive to production requests served months ago.

Finally, despite AWS's contention otherwise,[66] Kove's request for the memo is properly before the Court. The parties met and conferred to discuss Kove's request for the document on multiple occasions, both as a formal standalone request and, alternatively, as a portion of Jassy's ESI.[67] It is unclear how AWS can claim that the memo is not within the scope of this Motion while, at the same time, arguing that the Court should deny Kove's request for the document. Regardless, AWS has not demonstrated—either procedurally or substantively—why Kove's request should be denied.

### III. CONCLUSION

For the above reasons, Kove respectfully requests that the Court order AWS to produce Jassy for deposition, and to produce Jassy's discovery, including responsive ESI and the six-pager.

---

[64] Dkt. 361 at 15.
[65] Dkt. 351 at Ex. 16 ▮
[66] Dkt. 361 at 15.
[67] Dkt. 351 at Ex. 7 (Dkt. 351-8) at 6; ▮

**HIGHLY CONFIDENTIAL**

Dated: July 30, 2021.

Respectfully submitted,

*/s/ Khue Hoang*

| | |
|---|---|
| Khue V. Hoang *(pro hac vice)* <br> khoang@reichmanjorgensen.com <br> Jaime Cardenas-Navia *(pro hac vice)* <br> jcardenas-navia@reichmanjorgensen.com <br> Michael W. Marvin *(pro hac vice)* <br> mmarvin@reichmanjorgensen.com <br> REICHMAN JORGENSEN LEHMAN & FELDBERG LLP <br> 750 Third Avenue, Suite 2400 <br> New York, NY 10017 <br> Telephone: (212) 381-1965 <br> Facsimile: (650) 623-1449 <br><br> Christine E. Lehman *(pro hac vice)* <br> clehman@reichmanjorgensen.com <br> Adam Adler *(pro hac vice)* <br> aadler@reichmanjorgensen.com <br> Phil Eklem *(pro hac vice)* <br> peklem@reichmanjorgensen.com <br> REICHMAN JORGENSEN LEHMAN & FELDBERG LLP <br> 1710 Rhode Island Ave, NW, 12th Floor <br> Telephone: (202) 894-7310 <br> Facsimile: (650) 623-1449 | Renato Mariotti (State Bar No. 6323198) <br> rmariotti@thompsoncoburn.com <br> Holly H. Campbell (State Bar No. 6320395) <br> hcampbell@thompsoncoburn.com <br> THOMPSON COBURN LLP <br> 55 E. Monroe St., 37th Floor <br> Chicago, IL 60603 <br> Telephone: (312) 346-7500 <br> Facsimile: (312) 580-2201 <br><br> Courtland L. Reichman *(pro hac vice)* <br> creichman@reichmanjorgensen.com <br> Shawna L. Ballard (Identification No. 155188) <br> sballard@reichmanjorgensen.com <br> Kate M. Falkenstien *(pro hac vice)* <br> kfalkenstien@reichmanjorgensen.com <br> REICHMAN JORGENSEN LEHMAN & FELDBERG LLP <br> 100 Marine Parkway, Suite 300 <br> Redwood Shores, CA 94065 <br> Telephone: (650) 623-1401 <br> Facsimile: (650) 623-1449 <br><br> **ATTORNEYS FOR PLAINTIFF** <br> **KOVE IO, INC.** |

**HIGHLY CONFIDENTIAL**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of July, 2021, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Khue Hoang*
Khue Hoang