**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KOVE IO, INC.,

*Plaintiff*,

v.

AMAZON WEB SERVICES, INC.,

*Defendant*.

Case No. 1:18-cv-8175

**AWS'S OPPOSITION TO KOVE'S MOTION TO COMPEL PRODUCTION OF INFORMATION REGARDING USAGE, FINANCIAL, AND HYPOTHETICAL NEGOTIATION DATA (DKT. NO. 405)**

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Adam A. Allgood (*pro hac vice*)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. AWS Has Produced Extensive Financial Information. ..... 2

B. The Parties' Correspondence and Meet and Confers on Financial Information. ..... 4

III. ARGUMENT ..... 6

A. Kove Improperly Seeks to Compel Discovery That It Didn't Confer On. ..... 6

B. AWS has Collected or is Collecting Information Regarding Costs for Internal Usage. ..... 9

C. Specific Financial and Usage Information Regarding AWS's Top 50 Customers and Internal Users Isn't Proportional to the Needs of the Case. ..... 11

IV. CONCLUSION ..... 16

## TABLE OF AUTHORITIES

**Cases**

*Asus Comp. Int'l v. Micron Tech. Inc.*,
No. 14-cv-00275, 2014 WL 12625461 (N.D. Cal. Apr. 21, 2014) ........................................ 1, 7

*Awalt v. Marketti*,
No. 11 C 6142, 2012 WL 6568242 (N.D. Ill. Dec. 17, 2012) .................................................... 8

*Biax Corp. v. Nvidia Corp.*,
271 F.R.D. 200 (D. Colo. 2010) ............................................................................................. 14

*Fellowes, Inc. v. Aurora Corp. of Am.*,
No. 07 C 7237, 2009 WL 1097063 (N.D. Ill. Apr. 1, 2009) .................................................... 14

*Funai Elec. Co., Ltd. v. Orion Elec. Co., Ltd.*,
No. 02-cv-2605, 2002 WL 1808419 (S.D.N.Y. Aug. 7, 2002) .................................................. 8

*Gevas v. Baldwin*,
No. 18 C 3165, 2020 WL 6781801 (N.D. Ill. Nov. 18, 2020).................................................... 8

*Gunn v. Stevens Sec. & Training Servs., Inc.*,
No. 17 C 6314, 2018 WL 1737518 (N.D. Ill. Apr. 11, 2018) .................................................... 6

*James v. Wash. Depo Holdings, Inc.*,
240 F.R.D. 693 (S.D. Fla. 2006)............................................................................................. 11

*Lowe v. CVS Pharmacy, Inc.*,
No. 14 C 3687, 2016 WL 9185324 (N.D. Ill. May 23, 2016) ........................................... 1, 7, 8

*Lukis v. Whitepages, Inc.*,
No. 19 C 4871, 2021 WL 1600194 (N.D. Ill. Apr. 23, 2021) ............................................ 1, 6, 7

*Rustom v. Rustom*,
No. 17 C 9061, 2018 WL 3105926 (N.D. Ill. June 25, 2018) .................................................. 11

*Syngenta Corp. Protection, LLC v. Willowood, LLC*,
Civ. No. 16-mc-171, 2016 WL 4925099 (D. Del. Sept. 14, 2016) .......................................... 14

*Trading Techs. Intern., Inc. v. GL Consultants, Inc.*,
No. 05 C 4120, 2013 WL 4010582 (N.D. Ill Aug. 5, 2013)..................................................... 14

*Troutman v. Louisville Metro Dept. of Corr.*,
No. 3:16-cv-742, 2018 WL 3873588 (W.D. Ky. Aug. 15, 2018) ............................................ 11

*TVIIM, LLC v. McAfee, Inc.*,
No. 13-cv-04545, 2015 WL 4448022 (N.D. Cal. July 19, 2015) .......... 14

*Visual Networks Ops. Inc. v. Paradyne Corp.*,
C.A. No. DKC 2004-0604, 2005 WL 8174741 (D. Md. June 15, 2005) .......... 12

*World Healthcare Sys., Inc. v. Surgical Servs., Inc.*,
No. 1:10-cv-60, 2011 WL 849318 (N.D. Ill. Mar. 8, 2011) .......... 14

**Statutes**

35 U.S.C. § 286 .......... 3

**Rules**

Local Rule 37.2 .......... 1, 6, 7, 8

# I. INTRODUCTION

Local Rule 37.2 requires a party to make a good-faith attempt to resolve any discovery issue before raising it with the Court. The Rule specifies that such a good-faith attempt must include an in-person or telephonic conference with the opposing party. As Judge Feinerman recently reiterated, this "requirement is no mere formality, as conversation encourages productive compromise."[1] But here, Kove's motion raises several demands that it never discussed with AWS before filing. And, if Kove had conducted the required conference on those issues, they would've been resolved without motions practice. By way of example, Kove didn't confer with AWS on the motion's request for service-wide, detailed usage information for the accused services (S3 and DynamoDB) by service level. AWS will search for and collect that information now that it's aware of Kove's request. As such, this Court should deny the portions of Kove's motion that seek relief on issues for which Kove didn't comply with Rule 37.2, as courts in this district have done on similar fact sets in other cases.[2]

The remaining categories of information that Kove seeks to compel go beyond Rule 26(b)'s limitation of discovery to matters that are "proportional to the needs of the case"—particularly given AWS's productions to-date and agreement to produce additional information. For instance, AWS has already produced documents detailing the amount of external and internal usage[3] of S3 and DynamoDB and revenue by usage type and datacenter. AWS has also agreed to

---

[1] *Lukis v. Whitepages, Inc.*, Case No. 19 C 4871, 2021 WL 1600194, at *16 (N.D. Ill. Apr. 23, 2021).

[2] *See id.* (refusing to consider a motion to compel on any issues on which parties hadn't met and conferred); *Lowe v. CVS Pharmacy, Inc.*, No. 14 C 3687, 2016 WL 9185324, at *2 (N.D. Ill. May 23, 2016) (denying motion on information not previously requested); *see also Asus Comp. Int'l v. Micron Tech. Inc.*, Case No. 14-cv-00275, 2014 WL 12625461, at *4 (N.D. Cal. Apr. 21, 2014) (granting motion for costs in part due to plaintiff first raising issue in motion to compel).

[3] Internal usage refers to usage of a service by other AWS services or by other portions of Amazon, such as the Amazon.com website.

search for documents to provide additional revenue information by usage type. Despite this, Kove has demanded the further production of more than a dozen categories of detailed usage information for each accused service's top 50 external customers annually and each Amazon internal user. To comply, AWS would have to collect and analyze such data for over [REDACTED] internal users and [REDACTED] external customers. But Kove hasn't explained why this is necessary for its damages case, or proportional to the needs of the case.

Given Kove's violation of the Local Rules, and overreach beyond Rule 26's proportionality limitation, AWS respectfully requests that the Court deny Kove's motion to compel.

## II. BACKGROUND

### A. AWS Has Produced Extensive Financial Information.

As part of its early document productions, AWS produced financial and usage information for S3 and DynamoDB, the two accused services.[4] Those productions included global profit and loss statements for each service.[5] They also included revenue separated by the data centers AWS operates so that the parties would be able to apportion those profit and loss statements to the United States.[6] AWS also included information regarding usage of the two accused services in those early productions. That information segregated the usage between [REDACTED] [REDACTED].[7] For S3, AWS also provided additional information about its revenue and usage by storage class and [REDACTED] [REDACTED].[8]

---

[4] Since those productions occurred in 2020, the information AWS produced mostly included data through the end of 2019.

[5] *See* Ex. A; Ex. B.

[6] *See* Ex. C.

[7] *See* Ex. D; Ex. E.

[8] *See* Ex. F. This information is for November 2019.

And as AWS has informed Kove, AWS's finance system, [REDACTED] [REDACTED].[9] Nonetheless, AWS was able to locate and produce some early revenue information for each of the accused services beginning in 2012.[10] And since the damages period began in December 2012, the financial data includes information for the entirety of the damages period.[11]

As discovery continued, AWS supplemented its financial production, both to provide additional and more detailed information. Specifically, AWS collected and produced updated profit and loss statements for each of the accused services to provide more detail regarding the infrastructure and hardware costs for each of the accused services.[12] AWS also produced more detailed revenue information. For example, AWS produced information providing revenue by datacenter for each of 15 different service types/pricing categories for DynamoDB.[13]

AWS also supplemented its prior production of usage information to further segregate the information by [REDACTED] [REDACTED].[14] And AWS provided a list of [REDACTED] for each of the two accused services.[15] AWS collected and produced the [REDACTED] [REDACTED][16]—though,

---

[9] *See* Ex. 39 to Dkt. No. 405 at 5.

[10] *See* Ex. G (for S3); Ex. H (for DynamoDB). DynamoDB launched in January 2012, so AWS has produced financial information for the entirety of DynamoDB's existence.

[11] *See* 35 U.S.C. § 286.

[12] *See* Ex. 31 to Dkt. No. 405; Ex. 30 to Dkt. No. 405.

[13] *See* Ex. I. AWS also produced detailed information for S3 usage and revenue. *See* Ex. J.

[14] *See, e.g.,* Ex. K.

[15] *See* Ex. L (DynamoDB CDO List); Ex. M (S3 Internal Users List); Ex. N (S3 CDO List); Ex. 38 to Dkt. No. 405 (DynamoDB Internal User List).

[16] *See* Exs. 28 & 29 to Dkt. No. 405.

as AWS has explained, ███████████████████████████████.[17] AWS also provided a narrative response to interrogatory no. 6, explaining how it allocates costs to internal usage.[18]

AWS also produced pricing information for S3 and DynamoDB. Particularly, in response to interrogatory no. 22, AWS provided a 45-page narrative response on pricing and other information.[19] Of those 45 pages, 32 describe pricing for S3 and DynamoDB.[20] And that response provides information on AWS's public prices, ██████████████████.[21] AWS has also produced ██████████████████████████████████████████ ██████████████████████████.[22]

### B. The Parties' Correspondence and Meet and Confers on Financial Information.

The parties have corresponded on Kove's continuing requests for financial information.[23] In an attempt to resolve any remaining disputes ahead of the discovery motions deadline, the parties conducted a meet and confer on August 27. As detailed in the correspondence that followed, the parties discussed several issues related to the instant motion. For example, the parties agreed

---

[17] *See* Ex. O at 26, 44.

[18] *See* Ex. P at 32.

[19] *See* Ex. O. Pages 1-3 and page 49 of the response are not part of the narrative and so weren't included in the page count.

[20] *See* Ex. O at 5-26, 25-44.

[21] *See id.*

[22] *See* Ex. Q.

[23] Contrary to Kove's assertion (Dkt. No. 405 at 2), AWS never "refused to engage" on any of the issues Kove raises in its motion. Indeed, each of AWS's responsive letters that Kove identifies were detailed, spanning between five and seven pages. And they also discuss issues involved in the instant motion. *See, e.g.*, Ex. 34 to Dkt. No. 405 at 5 (discussing the relevance of customer-specific data). AWS included the statements Kove cites to stem Kove's serial correspondence on issues that the parties had resolved or for which AWS had already produced responsive documents. These statements were appropriate given Kove's conduct, which included, for example, sending 12 discovery letters to AWS during a 15-business day period in early June.

that they had reached an impasse on customer-specific financial and usage information.[24] As AWS indicated in its letters, such information isn't relevant in light of the data AWS has already produced, and it is unduly burdensome to collect.[25]

For other issues, the parties didn't agree that there was an impasse. For example, as to early financial data for S3 and DynamoDB, AWS stated in a letter following the meet and confer that it would again "confirm with the appropriate teams that all of the relevant available information has been provided, including any financial information dating back to 2006."[26] AWS is in the process of confirming whether any of its financial systems contain such data [REDACTED]. And regarding the accounting [REDACTED], AWS agreed to search for documents sufficient to show the accounting for [REDACTED] of the accused services, in accordance with Kove's requests, including documents sufficient to show the [REDACTED] to the extent it exists.[27] And since the meet and confer, AWS has proceeded with those agreed searches.

Further, the parties never discussed the more detailed service-wide (as opposed to customer specific) usage information that Kove requested for the first time in its motion. Indeed, the

---

[24] *See* Ex. R at 3.

[25] *See* Ex. 34 to Dkt. No. 405 at 5.

[26] *See* Ex. R at 7.

[27] *See* Ex. R at 3-4; Ex. S at 2. Further, Kove expanded the categories of documents it sought after the meet and confer. Nonetheless, the documents AWS has agreed to produce should obviate any dispute between the parties on this issue.

parties' correspondence summarizing the August 27 meet and confer doesn't discuss this request.[28] And none of the other letters Kove cites in its motion describe more detailed usage information.[29] Nonetheless, AWS is searching for more detailed usage information for external customers, [REDACTED]. AWS is also searching for more detailed [REDACTED] [REDACTED], which Kove also raised for the first time in its motion.

## III. ARGUMENT

### A. Kove Improperly Seeks to Compel Discovery That It Didn't Confer On.

Local Rule 37.2 requires counsel to certify "(1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's."[30] As Magistrate Judge Cole has explained, the Rule's purpose is to "curtail undue delay and expense in the administration of justice," as each "hour needlessly spent on a dispute is an hour squandered."[31]

And when the mandatory meet and confer hasn't occurred on specific issues, the Court won't consider requests to compel on those issues. For example, in *Lukis v. Whitepages, Inc.*, Judge Feinerman found that the parties had met and conferred on only five of the 18 issues the defendant raised in its motion to compel.[32] The remaining issues had either been discussed in

---

[28] *See generally* Ex. T; Ex. U; and Ex. R.

[29] *See* Dkt. No. 405 at 5, n. 6.

[30] Local Rule 37.2.

[31] *Gunn v. Stevens Sec. & Training Servs., Inc.*, No. 17 C 6314, 2018 WL 1737518, at *3 (N.D. Ill. Apr. 11, 2018).

[32] Case No. 19 C 4871, 2021 WL 1600194, at *16 (N.D. Ill. Apr. 23, 2021).

written correspondence or the defendant first raised them in its motion.[33] The Court only considered the five conferred-on issues, because they were "proper subjects for a motion to compel," unlike the 13 undiscussed topics.[34]

Here, Kove hasn't met and conferred with AWS regarding the detailed usage information Kove seeks in its motion. Indeed, the correspondence Kove cites in its motion doesn't mention service-wide usage data by service-level or pricing category.[35] And the parties' correspondence summarizing the August 27 meet and confer doesn't discuss this issue, either.[36] As such, Kove's motion with respect to service-wide usage information should be denied for failure to comply with Local Rule 37.2.[37]

Further, as described above, AWS has produced detailed usage documentation for the two accused services. For example, AWS has produced usage for each of the services [REDACTED] [REDACTED].[38] And AWS provided revenue data for DynamoDB by datacenter for 15 service types, including storage, write requests, and read requests.[39] Despite this, after receiving Kove's motion, AWS is now searching for additional usage and revenue information by service tier for the accused services for [REDACTED]

---

[33] *Id*. at *16.

[34] *Id*. at *17; *see also Lowe*, 2016 WL 9185324, at *2; *Asus Comp. Int'l.*, 2014 WL 12625461, at *4.

[35] *See* Dkt. No. 405 at 5, n. 6 (citing correspondence).

[36] *See generally* Exs. T, U, and R. And to the extent the RFP's Kove cites cover this request, they didn't provide the documents requested with reasonable particularity. For example, RFP no. 22 requests "[a]ll documents that discuss, refer to, or evidence how subscribers, customers, users, partners, or distributors use, operate, or access the Accused Products." Ex. V. These types of generalized requests don't seek the specific usage that Kove now seeks through its motion.

[37] *See Lukis*, 2021 WL 1600194 at *16-17; *Lowe*, 2016 WL 9185324 at *2; *Asus*, 2014 WL 12625461 at *4.

[38] *See, e.g.*, Ex. K.

[39] *See* Ex. I.

[REDACTED]. AWS will produce the information it locates after a reasonable search. Thus, Kove's motion with respect to service-wide usage information should be denied on this basis, as well.[40]

Kove also hasn't complied with Local Rule 37.2 with respect to the pre-2012 financial data Kove seeks, as there's no impasse on that issue warranting a motion. Kove asserts that "AWS will not produce anything prior to 2012."[41] But this is incorrect. As AWS has informed Kove, AWS's [REDACTED].[42] And, to the extent AWS was able to locate financial data [REDACTED], it has produced it.[43] This includes older financial data that individual custodians maintained in their files.[44] And in the correspondence following the August 27 meet and confer, AWS indicated that it would reconfirm that [REDACTED] isn't available.[45] Thus, the parties haven't reached an impasse on this issue—rather, Kove's motion seeks to compel the production of information that AWS doesn't possess, and it should therefore be denied. To be sure, the Court has recognized the axiom in other cases that parties "cannot produce what they do not have."[46]

---

[40] *See Awalt v. Marketti*, Case No. 11 C 6142, 2012 WL 6568242, at *8 (N.D. Ill. Dec. 17, 2012) (denying motion to compel where defendant agreed to produce documents discussed in motion); *Funai Elec. Co., Ltd. v. Orion Elec. Co., Ltd.*, No. 02-cv-2605, 2002 WL 1808419, at *4 (S.D.N.Y. Aug. 7, 2002) (denying motion to compel where plaintiff agreed to produce documents responsive to a narrowed discovery request).

[41] Dkt. No. 405 at 15.

[42] *See* Ex. 39 to Dkt. No. 405 at 5.

[43] *See* Ex. G; Ex. H.

[44] *See, e.g.*, Ex. W; Ex. X.

[45] *See* Ex. R at 7.

[46] *Lowe*, 2016 WL 9185324 at *2 ("In other words, defendants cannot produce what they do not have."); *Gevas v. Baldwin*, No. 18 C 3165, 2020 WL 6781801, at *2 (N.D. Ill. Nov. 18, 2020) (holding that, "for obvious reasons, [defendants] cannot produce additional documents if those documents do not exist").

### B. AWS has Collected or is Collecting Information Regarding Costs for Internal Usage.

AWS has produced or agreed to produce information regarding its cost allocation for internal usage and the costs associated with that usage. And in the body of its motion, Kove hasn't identified the specific categories of internal cost documents it's moved on or their relevance to the case. Kove's motion on this point should thus be denied.

As detailed above, AWS has produced documents detailing its [redacted] of the accused services. Those documents include a breakdown of that usage between [redacted].[47] AWS has also included the [redacted].[48] [redacted][49] And AWS provided a response to interrogatory no. 6 that details how it [redacted]

[redacted]

Kove has the information to be able to perform this allocation since AWS has produced the [redacted] of the two accused services.

[47] *See, e.g.,* Ex. K.

[48] *See* Exs. 28 and 29 to Dkt. No. 405.

[49] *See* Ex. O at 26, 44 ([redacted]).

[50] Ex. P at 32.



And AWS has agreed to search for the [redacted] of the accused services and documents sufficient to show [redacted].[51] Further, Kove first raised the concern that the [redacted]. While this was improper, AWS is searching for [redacted] and will produce the information it is able to locate. Thus, [redacted] to the extent it exists. That's the information that Kove's motion alleges Kove needs.[52]

But the conclusion of Kove's motion also requests additional documents that the body of its motion doesn't. For example, Kove requests documents from 2006-2020 that show the profits and benefits [redacted].[53] But as AWS has told Kove, [redacted].[54] Indeed, one of the exhibits that Kove attaches to its brief [redacted]."[55] [redacted].[56] And because [redacted].[57]

---

[51] *See* Ex. R at 3-4. Kove first specified that it was seeking this information at the August 27 meet and confer. *Id.*

[52] *See* Dkt. No. 405 at 7-10.

[53] *See* Dkt. No. 405 at 16.

[54] *See* Ex. O at 26, 44.

[55] Ex. 15 to Dkt. No. 405 at 3.

[56] *Id.* at 2 ([redacted]).

[57] Kove has also requested documents regarding the [redacted]. To the extent the teams for the accused services maintain that information, it has been collected. And it would be unduly burdensome



Kove also requests in passing information on [redacted].[58] But, as noted, AWS has provided [redacted].[59] AWS has also produced documents describing the [redacted].[60]

Moreover, the document requests Kove identifies in its motion (RFP nos. 93, 96, 142, 144, 183, 206, and 212) don't seek information on [redacted]. For example, RFP nos. 142 and 144 request documents sufficient to show how much [redacted].[61] AWS has provided documents sufficient to show this information and is in the process of searching for additional documents.[62]

**C. Specific Financial and Usage Information Regarding AWS's Top 50 Customers and Internal Users Isn't Proportional to the Needs of the Case.**

Kove's motion requests detailed pricing, usage, and revenue information for the top 50 customers for each year from 2006 to 2020 for each of the two accused services. Similarly, Kove seeks detailed usage information for each of the [redacted]

---

and not proportional to the needs of the case for AWS to collect documents from each [redacted].

[58] *See* Dkt. No. 405 at 10.

[59] *See* Exs. 28 & 29 to Dkt. No. 405.

[60] *See* Ex. 15 to Dkt. No. 405 at 3.

[61] *See* Ex. Y at 10.

[62] And it's improper for Kove to serve discovery through correspondence or motions practice, rather than discovery requests. *See Rustom v. Rustom*, No. 17 C 9061, 2018 WL 3105926, at *2 (N.D. Ill. June 25, 2018) ("A discovery request under Fed.R.Civ.P. 34 is the appropriate way to get documents from an opponent, not a subpoena to an opponent's lawyer or informal emails"); *Troutman v. Louisville Metro Dept. of Corr.*, No. 3:16-cv-742, 2018 WL 3873588 at *3 (W.D. Ky. Aug. 15, 2018) (denying a motion to compel based on plaintiff's serial, correspondence-based discovery requests); *James v. Wash. Depo Holdings, Inc.*, 240 F.R.D. 693, 695 (S.D. Fla. 2006) (denying a motion to compel where movant failed to issue a formal discovery request for the documents).

[REDACTED]. But because AWS has produced the data Kove asserts that it needs for its damages case, these requests don't seek relevant information and, given their burden, are disproportionate to the needs of the case.

AWS has produced extensive financial information regarding the accused services. In addition to its production of financial and usage data,[63] AWS has produced [REDACTED].[64] AWS has also produced revenue information by service type for both services.[65] And AWS provided a list of [REDACTED].[66]

AWS has also collected and produced detailed pricing information for the two accused services. AWS provided a 32-page narrative response to interrogatory no. 22 detailing its pricing for S3 and DynamoDB.[67] That response identifies dozens of documents that AWS has produced that describe that pricing. AWS has also produced [REDACTED].[68]

Because of AWS's production, Kove's requests for customer and service-specific information aren't proportional to the needs of the case.[69] In its motion, Kove asserts that it needs this

[63] *See, e.g.,* Ex. 31 to Dkt. No. 405; Ex. 30 to Dkt. No. 405; Ex. J; Ex. K.

[64] *See* Ex. F.

[65] *See* Ex. I; Ex. J.

[66] [REDACTED]

[67] *See* Ex. O at 5-26, 25-44.

[68] *See* Ex. Q.

[69] *See Visual Networks Ops. Inc. v. Paradyne Corp.*, C.A. No. DKC 2004-0604, 2005 WL 8174741, at *2 (D. Md. June 15, 2005) (finding that "detailed per-customer sales data will not aid in calculating either market share (for determining lost profits) or a reasonable royalty rate").

customer and service-specific information to determine customer usage preferences and the prices customers have actually paid.[70] But Kove already has that information in its possession. For example, regarding customer preferences, AWS has produced a document detailing revenue information by service type and datacenter for DynamoDB.[71] That document indicates the particular services within DynamoDB that customers use and pay for the most. And the further usage and revenue data AWS is collecting for [REDACTED] will provide additional information. These documents indicate customer preferences for the accused services and which aspects of the services they utilize and purchase most often.[72]

AWS has similarly produced information on the price customers actually pay for the accused services.[73] So, Kove can determine the average price AWS's customers have paid. For example, AWS has produced external revenue and usage by storage class for S3.[74] To determine the average price customers paid for usage of a particular storage class, Kove can divide the revenue associated with that storage class by the usage amount to get a per unit price.[75] And this average price—not what a specific customer pays—would be a potentially relevant data point for

---

[70] *See* Dkt. No. 405 at 11.

[71] *See* Ex. I; *see also* Ex. J (S3 revenue and usage by storage class and datacenter). AWS has produced data regarding internal usage for categories of usage types and is searching for more detailed information Kove raises for the first time in its motion.

[72] The analysis would be the same for [REDACTED] information since AWS has produced information regarding that usage. *See, e.g.,* Ex. K And to do the analysis Kove suggests on whether [REDACTED], Kove would need financial and usage information for each of AWS's over 200 services to determine which services are the most popular and/or profitable.

[73] *See* Ex. O at 5-26, 25-44, Ex. Q.

[74] *See* ExJ .

[75] For example, using this methodology indicates that customers [REDACTED].

damages.[76]

Kove also argues that it needs the additional data to test the veracity of AWS's produced financial documents. This is also incorrect. AWS has produced service-specific financial documents from the database that it maintains in the ordinary course of business. Courts have denied motions to compel underlying financial information when parties have made such a production.[77] And the two cases Kove cites aren't to the contrary. Each involved documents created specifically for the litigation that weren't maintained in the ordinary course of business.[78] For example, in *World Healthcare Sys., Inc. v. Surgical Servs., Inc.*, the defendant created "summary spreadsheets" of its internal commission documents specifically for the litigation.[79] The plaintiff questioned whether the spreadsheets included all of the commissions at issue.[80] The court held that, given the plaintiff's concerns over the litigation-created summaries, the defendant was required to produce a limited amount of underlying information to permit the plaintiff to verify the summaries' accuracy.[81] Unlike in these cases, AWS has produced the specific financial documents

[76] *See TVIIM, LLC v. McAfee, Inc.*, Case No. 13-cv-04545, 2015 WL 4448022, at *2 (N.D. Cal. July 19, 2015) (finding that using the average sales price of the accused product and then apportioning down to the patented invention was proper).

[77] *See Biax Corp. v. Nvidia Corp.*, 271 F.R.D. 200, 210-11 (D. Colo. 2010) (denying motion to compel underlying data because "BIAX fails to refute Nvidia's representation that it has indeed produced 'raw data' from its databases created and kept in the ordinary course of business"); *see also Trading Techs. Intern., Inc. v. GL Consultants, Inc.*, Case No. 05 C 4120, 2013 WL 4010582, at *3 (N.D. Ill Aug. 5, 2013) (denying defendants' motion to compel royalty reports and underlying financial data because plaintiff had produced sufficient information); *Syngenta Corp. Protection, LLC v. Willowood, LLC*, Civ. No. 16-mc-171, 2016 WL 4925099, at *4 (D. Del. Sept. 14, 2016) (customer-specific information not relevant for price erosion damages analysis).

[78] *See* Ex. Z, Dkt. No. 55 in *Fellowes, Inc. v. Aurora Corp. of Am.*, Case No. 07 C 7237 (N.D. Ill.), at 3-4 (documents were created specifically "for Fellowes"); *World Healthcare Sys., Inc. v. Surgical Servs., Inc.*, Case No. 1:10-cv-60, 2011 WL 849318, at *2 (N.D. Ill. Mar. 8, 2011).

[79] 2011 WL 849318 at *2.

[80] *See id*.

[81] *See id*. at *2-3. Similarly, in the *Fellowes* case, the defendant produced high-level, litigation-driven, "hand-crafted financial 'summaries'" and year-end companywide financial statements. *See* Ex. Z, Dkt.

maintained in the ordinary course of business—not litigation-crafted summaries— and Kove thus isn't entitled to the underlying customer-specific revenue and usage to verify the information in those documents.[82]

The collection of the customer and service specific information Kove requests is also unduly burdensome. AWS would have to collect data on its top 50 customers each year for each of the two accused services going back as far in time as it has the data. Given the relevant launch dates (2012 for DynamoDB and 2006 for S3), that could include up to 450 customers for DynamoDB and 750 customers for S3.[83] And Kove previously indicated that it's seeking extensive data about each customer. For example, for DynamoDB, Kove requested revenue, usage, and pricing information for each of those customers for 12 different categories for each of two different capacity modes.[84] So for DynamoDB, Kove is requesting 24 different categories of data for usage, pricing, and revenue for each of AWS's top 50 customers for every year from 2012-2020. And Kove is seeking similar detailed usage information for each of the [REDACTED] [REDACTED].

AWS's finance teams have confirmed the undue burden imposed by Kove's request. For example, the DynamoDB team would have [REDACTED]

No. 55 in *Fellowes, Inc. v. Aurora Corp. of Am.*, Case No. 07 C 7237 (N.D. Ill.), at 3-4. The defendant also produced more detailed financial data for mediation. *Id*. at 4. The court granted plaintiff's motion to compel this more detailed financial data and the underlying financial data. *Fellowes, Inc. v. Aurora Corp. of Am.*, Case No. 07 C 7237, 2009 WL 1097063, at *5 (N.D. Ill. Apr. 1, 2009).

[82] Kove's motion also doesn't explain how this data would permit Kove to verify the overall financial information AWS has produced. *See* Dkt. No. 405 at 13.

[83] The numbers for each of these is likely lower, as the top customers in one year will likely overlap with the top customers in the next year. Nonetheless, information would have to be collected for 50 customers each year, so it would be similar to having to collect data on 750 S3 customers.

[84] *See* Ex. 12 to Dkt. No. 405 at 2-3. Kove is seeking 10 categories of data for S3. *Id*. at 2.



[redacted].[85] That person would have to [redacted].[86] That person would also have to access and collect the data [redacted][88]

In light of this burden and the irrelevance of the data requested (particularly given AWS's prior and forthcoming productions), Kove's motion should be denied with respect to specific customers and internal users.

## IV. <u>CONCLUSION</u>

Kove seeks to compel information that Kove requested for the first time in its motion, that AWS has agreed to collect, or that AWS has already collected. And Kove's motion's remaining requests seek data that isn't proportional to the needs of the case given AWS's extensive financial production and the burden involved in collecting those additional documents. Thus, Kove's motion to compel should be denied.

---

[85] *See* Declaration of C. Perumal at ¶ 4.

[86] *Id.*

[87] *Id.* at ¶ 3.

[88] *Id.* at ¶ 4.

Dated: October 7, 2021

Respectfully submitted,

*/s/ R. William Sigler*

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Adam A. Allgood (*pro hac vice*)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, which will send notice to all counsel of record who have consented to service by electronic means.

*/s/ R. William Sigler*
R. William Sigler