# Exhibit Z

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FELLOWES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| AURORA CORPORATION OF AMERICA, | ) Civil Action No.: 07-CV-7237 |
| | ) Judge: Charles P. Kocoras |
| and | ) Magistrate Judge: Arlander Keys |
| | ) |
| AURORA OFFICE EQUIPMENT, LTD. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO COMPEL DISCOVERY: PRODUCTION OF DOCUMENTS AND THINGS, INTERROGATORY ANSWERS, AND RULE 30(B)(6) DEPONENT LOCATION

Fellowes Inc. ("Fellowes") served interrogatory and document requests on both defendants on May 30, 2008, had protracted discussions about the inadequacy of the production and responses before, during, and after the October 16th meeting with this Court, and filed the underlying motion to compel ("Motion") [D.N. 47] on November 9, 2008. Aurora Corporation of America ("Aurora America") and Aurora Office Equipment, Ltd., ("Aurora China", collectively "Defendants") have since quickly produced more pages and slightly amended their interrogatory responses. Now, they ask this Court to declare that "all is well."

The just-produced 2,000 pages that the Defendants rely on so heavily contain hundreds of blank pages, publicly available reexamination pages, and duplicates of previously produced exhibits. In stark contrast, Fellowes has produced 363,000 pages comprising over 72,597

documents which is 34 gigabytes of data.[1]  The Defendants' latest production confirmed, however, that they sold additional safety-switch shredders.  They also did not supplement their responses to document requests, instead choosing to ignore some of their previous objections and merely quickly produce some responsive documents.  In spite of their latest production and supplemental response, their discovery remains incomplete and inadequate, and must be compelled because Fellowes needs damages and technical documents as well as interrogatory answers to substantively and independently assess this case and actually prepare it for trial.

## I.     FELLOWES NEEDS DOCUMENTS FROM THE DEFENDANTS

Having been spurned to maximize its post-motion production with blank pages, duplicates, and publicly available documents and to supplement interrogatory responses with citations to the few documents they finally did produce and the made-for-Fellowes summary documents described below, the Defendants continue to withhold critical discovery.

After Fellowes filed its Motion, the Defendants produced documents bearing Bates numbers AUR620-AUR2562, which did not identify to which Defendant they are attributable. 323 pages were blank and these were not sporadic individual pages, there are portions with 92, 23, 76, 83, and 24 <u>consecutive</u> blank pages.[2]  All 322 pages of the publicly available Request for Reexamination (with prior art) of Fellowes' patent were also included in the Defendants' post-

---

[1]  See ¶ 2 of Ex. Z, Declaration of William P. Atkins In Support Of Reply To Defendant's Motion to Compel Discovery: Production of Documents and Things, Interrogatory Answers, and Rule 30(B)(6) Deponent Location. ("Atkins Declaration").

[2]  See ¶ 3 of Ex. Z and Ex. M (a few representative blank pages).  Blank pages include AUR1005-1096; AUR1150-1172; AUR 1347-1354; AUR1482-1557; AUR1709-1791; AUR1799-1805; AUR1816-1820; AUR1845-1868; AUR1879-1883.

motion production.[3]  There were also at least four documents in the Defendants' latest

production that were easily-identifiable as copies of previously produced documents (although

the way they were printed this second time alters their length).[4]  These accounted for an

additional 185 pages and the undersigned is not conversant in Chinese or there may have been

more.[5]  Consequently, at least 830 pages of the Defendants' post-motion production is blank,

duplicative, or part of Fellowes' own publicly available reexamination.  As noted in Fellowes'

Motion, the Defendants have over 500 models of shredders approved for sale in the United

States, according to the Underwriters Laboratories.  *See* Fellowes' Motion [D.N. 47], Ex. A.

## 1.  **Withheld Damages Documents**

The Defendants updated their interrogatory responses on damages by invoking Rule

33(d) and citing to hand-crafted financial "summaries" that they created for Fellowes.  *See*

Aurora Opp. [D.N. 51], Ex. A, pp. 7-10; *see also id*. at Ex. B, pp. 7-11; Fellowes' Motion, Ex. H.

The attached Exhibit V[6] is a sample of one summary, purportedly showing monthly sales in

quantity and price by customer and shredder model (note the upper left).  Although it is hard to

read, take note that the footnote on this document indicates that this is custom-made evidence for

Fellowes.  In response to another damages related interrogatory that asks for revenue, units, and

costs on a monthly basis, the Defendants cite to non-detailed, company-wide, year end financial

---

[3]  One need only visit the PAIR portion of  www.uspto.gov and enter the reexamination control number of

90/009,230 to see the publicly available documents relating to this reexamination.

[4]  See ¶ 4 of Ex. Z and compare Exs. N to O,  P to Q, R to S, and T to U (to decrease the burden on the Court and

the court clerk, a few representative pages of each are included).

[5]  Id.

[6]  Both Aurora defendants cite to this page, among others that are similar, in response to Fellowes' interrogatories 3

and 4 on pages 8 and 9 of Ex. A for Aurora America and pages 8 and 9 of Ex. B for Aurora China.

statements, such as Exhibit W, in its new supplemental response and states flatly that they are "unable to further break down the requested financial information" other than what is provided in the summary documents and the year end, company-wide financial statement. Aurora Opp. [D.N. 51], Ex. A, p. 10; *id*. at Ex. B, p. 11.

Before the mediation, however, the Defendants produced additional "summaries" showing gross and net profits for a number of shredder models which included two of those named specifically in Fellowes' complaint. Exhibit X shows gross and net profits, including percentages of the various expenses and noting that the company-wide net profit percentage differs from this hand-crafted Exhibit X profit summary. Exhibit Y provides a month by month, model by model sales summary complete with gross profit, quantity, and amount sold.

Since May, Fellowes has sought and moved to compel production of the Defendants' financial documents that could be used by Fellowes to create such a summary and possibly settle this case. The Defendants have not produced them and now simply state that they are "unable to further break down the requested financial information." Aurora Opp. [D.N. 51], Ex. A, p. 10; *id*. at Ex. B, p. 11. Interestingly, in their opposition, they boldly state that "the level of granularity here is an issue as it would be over burdensome for the Defendants to produce every invoice for every shredder sale." Aurora Opp. [D.N. 51] at 6. The Defendants then go on to admonish Fellowes for not specifying what additional documents it requests. *Id*. When a mediation and this Court were involved, the Defendants managed to create detailed summaries, complete with all sorts of detailed financial information, and yet now, even having the support of their latest discovery responses, the only discovery responses they can supply are the summary sheets that they created and year end financial statements. This Court needs to get involved again. The Defendants should be compelled to produce the requested financial documents so that

4

Fellowes can do a damages/profit analysis instead of having to rely on <u>only</u> the Defendants' <u>combined</u> summary sheets and their year end financial statements.

Both Defendants should be compelled to produce all responsive, non-privileged documents to Fellowes' document requests 29-33, 35-36, 40, 41, 43.

### 2. <u>Withheld Technical Documents on "Other" Shredders</u>

In its Amended Complaint, Fellowes specifically accuses three Aurora shredder models (AS1219CD, AS1225CD, and AS1019CS) of infringement along with "any other shredder covered by at least one valid claim of the" three asserted patents.  See D.N. 29 at ¶¶ 112, 114, 118, 119, 121, 122, 126, 127, 129, and 120.  As discussed in Fellowes' Motion, the Defendants refused to produce documents relating to shredders other than those three that were specifically accused.  And yet, in the damages summaries, they chose to include additional shredders as having a safety switch.  *See* Exs. X and Y.  In spite of repeated requests, they did not produce technical documents relating to these additional shredders until <u>after</u> Fellowes filed its Motion. Now, the Defendants tout that they have produced catalogs for 2006, 2007, and 2008.  Aurora Opp. [D.N. 51] at 8.  They have indeed produced such catalogs but these are only Aurora-branded shredders and do not include private branded shredders.  Private branded shredders would not have the Aurora name but would instead be sold under a different name.  This explains why Aurora's UL certifications for sales in the United States for over 500 different shredder models have many models that start with WM (typically Wal-Mart) or OD (typically Office Depot).  *See* Fellowes' Motion [D.N. 47], Ex. A.  Furthermore, in their amended interrogatory response 3, the Defendants state that Aurora America "does not even use the aforementioned catalogs, relying instead on data sheets when necessary."  *See* Aurora Opp. [D.N. 51], Ex. A, p. 8; *id.* at Ex. B, p. 8.  The Defendants did not cite to any such data sheets

(newly produced or otherwise) in their opposition or interrogatory answers. The undersigned has also been unable to identify any data sheets in their production.

In addition to those shredders that the Defendants have reluctantly disclosed, the Defendants sell or have offered for sale many shredders in the United States – 500 having been approved by the Underwriters Laboratory. In their opposition, the Defendants declare that the shredder models on which they refuse to produce documents are irrelevant and "unrelated to this litigation." Aurora Opp. [D.N. 51] at 8. Fellowes is left to rely upon the Defendants' good faith that they have identified all shredders that were sold or offered for sale in the United States that have the safety switch or what they call a Touchguard sensor feature. This strategy of stonewalling and declaring all other shredder models "unrelated" should not be condoned.

Furthermore, the issue with these three asserted patents is safety, so the fundamental question involves what safety features Aurora shredders have as alternatives to the safety switch or Touchguard feature. Fellowes and its experts may be unable to answer that unless the Defendants produce the withheld shredder documents.

In their opposition, the Defendants state that "because Aurora did not sell any of the accused shredders or any other shredders incorporating the alleged switch or sensor features until" shortly after the first of the three asserted patents issued, the Defendants' post-patent-issuance production is sufficient. Aurora Opp. [D.N. 51] at 8. Fellowes filed the patent application that became the asserted patent in April of 2004 and began making shredders with the safety switch before the applicable patent issued. The Defendants' adoption of the safety switch in its various models and the state of their shredders before the patent application was filed and the infringement began is critical from a damages perspective and from a technology perspective with respect to the ease with which the design was implemented in the existing

6

shredders.  Furthermore, pre-patent issuance damages are at stake here.  *See* 35 U.S.C. § 154(d).

Pre-patent issuance financial and technical documents should be produced.

The technical documents on shredders sold or offered for sale by the Defendants since

2003 in the United States should be produced.

**3.      Allegedly Premature Documents – Another Way To Withhold**

Fellowes' contention based document requests asked for documents relating to

willfulness (Document Request No. 17), invalidity and unenforceability (Document Request

Nos.  46 and 47), damages (Document Request No.  48), communications "relating to this case,

either of the asserted patents, Fellowes, or any products or patents of Fellowes" (Document

Request Nos.  53 and 54).  *See* Fellowes' First Request for Production of Documents and Things

to Aurora America [D.N. 47-3] at 11, 15, and 16; *see also* Fellowes' First Request for Production

of Documents and Things to Aurora China [D.N. 47-4] at 11 and 14-16.

Wanting to avoid production and certainly any production before *Markman* briefing, the

Defendants cite another District Court's local rule in the hope of preventing production of any

opinion of counsel and any other responsive documents.  *See* Aurora Opp. [D.N. 51] at 6.  This

would be used in the potential trebling of damages and awarding of attorneys' fees to Fellowes.

Parts of such opinion would likely support Fellowes' *Markman* and infringement positions,

which would narrow the terms to be construed and proven.  For example, the claims require a

shredder with a housing, a throat, a motor, cutter elements, and an on/off switch.  While it is

expected that the Defendants' non-infringement position will concede these points and they will

recognize that their shredders have such features, an opinion (and interrogatory answer) that

confirms such would narrow the terms to be construed and proven.  What claim construction and

non-infringement analyses the Defendants relied on, if any, is responsive and relevant, and it should be produced if it exists. If no opinion exists, the Defendants should say so.

On invalidity and unenforceability (Document Request Nos. 46 and 47), the Defendants avoid responding to any claims of unenforceability of the asserted safety switch patents.

Damages (Document Request No. 48) are dealt with above but interestingly, the Defendants state in their response that they "will be in a better position to identify and produce responsive documents when Fellowes completes its own document production and after Aurora retains a damages expert." Aurora Opp. [D.N. 51] at 7.

Fellowes sought all correspondence "relating to this case, either of the asserted patents, Fellowes, or any products or patents of Fellowes." *See* Fellowes' First Request for Production of Documents and Things to Aurora America [D.N. 47-3] at 16 (Document Request Nos. 53 and 54); *see also* Fellowes' First Request for Production of Documents and Things to Aurora China [D.N. 47-4] at 15-16 (Document Request Nos. 53 and 54). The Defendants confidently state that they have "produced all non-privileged documents containing correspondence with these third parties as AUR500-526." Aurora Opp. [D.N. 51] at 7. Fellowes takes them at their word and asks this Court to order that if additional documents are discovered from third parties (other than each other), the Defendants are precluded from responding with the production of any additional documents. This production also includes no correspondence between the Defendants in this case and those should be compelled.

Both Defendants should be compelled to produce all non-privileged documents responsive to Fellowes' document requests 17, 46, 47, 48, 53, and 54.

## II.   INTERROGATORIES

Fellowes propounded nine interrogatories.  The Defendants' newly supplied answers leave the same questions unanswered.

Fellowes' Interrogatory No. 1 sought non-infringement contentions.  *See* Aurora Opp. [D.N. 51] at Ex. A, p. 3; *see also id.* at Ex. B, pp. 3-4.  The Defendants refuse to respond, saying it is premature.  *See id.* at Ex. A, p. 4; *see also id.* at Ex. B, p. 4.  This did not change with their latest response.    Fellowes filed its infringement contentions and needs to discover the withheld, non-infringement contentions that the Defendants pled, including their *Markman* positions.

Fellowes' Interrogatory No. 2 asks for invalidity and unenforceability contentions.  *See* Aurora Opp. [D.N. 51] at Ex. A, p. 4; *see also id.* at Ex. B, p. 4.  Both Defendants avoid responding to any claims of unenforceability of the asserted safety switch patents, saying it is premature.  *See* Aurora Opp. [D.N. 51] at Ex. A, pp. 4-7; *see also id.* at Ex. B, pp. 4-7.

Fellowes' Interrogatory No. 3 asks for identification of parties that sell or offer Aurora's various shredders for sale.  *See* Aurora Opp. [D.N. 51] at Ex. A, p. 7; *see also id.* Ex. B, p. 7. Invoking Rule 33(d) by citing to "catalogs," the Defendants says that they use data sheets instead of its catalogs.  *See* Aurora Opp. [D.N. 51] at Ex. A, p. 8; *see also id.* at Ex. B, p. 8.  They then cite to the hand-crafted summary sheets and state that sales have stopped.  *Id.*  The summary sheets have underlying information that the Defendants withhold, which will indicate who their customers are and hopefully who they <u>attempted</u> to sell to.  This information is also not in the answer to the interrogatory.  The Defendants' withheld datasheets for all of their various models over time should be discoverable as well but this is an interrogatory response.

Fellowes' Interrogatory Nos. 4 and 5 ask for damages information.  *See* Aurora Opp. [D.N. 51] at Ex. A, pp. 8-9; *see also id.* at Ex. B, pp. 9-10.  The Defendants also rely on the

9

401052886v2

production of documents under Rule 33(d), citing to the summaries that they created and year end company statements.  *See* Aurora Opp. [D.N. 51] at Ex. A, pp. 9-10; *see also id.* at Ex. B, pp. 9-11.  Other than these, the Defendants provided no further substantive information and this issue was dealt with above.

Fellowes' Interrogatory No. 6 seeks information on common ownership.  *See* Aurora Opp. [D.N. 51] at Ex. A, p. 10-11; *see also id.* at Ex. B, p. 11.  Each defendant merely states who owns it, even though the names of individuals with ownership interests are requested.  *See* Aurora Opp. [D.N. 51] at Ex. A, p. 11; *see also id.* at Ex. B, pp. 11-12.  It has been the experience of the undersigned that companies such as these have comingled boards of directors and ownership relationships.  This relationship is certainly financial because at least a portion of the income derived by Aurora America from companies like Wal-Mart eventually pay for the manufacturing in China, probably after the monies go to the Caribbean owner of Aurora America. This issue will be used in understanding control of Aurora America and how a foreign manufacturer might know where the infringing products are heading after manufacture or to whom they are being sold.

Fellowes' Interrogatory Nos. 7, 8, and 9 request information on damages and willfulness. *See* Aurora Opp. [D.N. 51] at Ex. A, pp. 12-13; *see also id.* at Ex. B, pp. 12-14.  Both Defendants refuse to respond, saying it is premature.  *See* Aurora Opp. [D.N. 51] at Ex. A, pp. 12-13; *see also id.* at Ex. B, pp. 12-14.  This did not change with their latest response.  The Defendants allege that there are no damages and their infringement is not willful.

The Defendants' supplemental responses consisted of slap-dash updates with little and mostly no substantive change.  Their Interrogatory Responses 1, 6, 7, 8, and 9 did not change. Their responses to Interrogatory Nos. 3, 4, and 5 merely cite to their summary sheets and newly

10

produced year end, company-wide financial statements for damages. Their responses to Interrogatory No. 2 merely add a citation to the invalidity contention that this Court wisely forced upon them and an allegation of inequitable conduct on one patent, but does not reveal any allegation of inequitable conduct on the other two safety switch patents. Discovery is supposed to be the time when Fellowes discovers information from the Defendants. The Defendants give no further information and withhold the truly relevant and needed information. They should be compelled to answer each of these interrogatories.

## III.    DEPONENT LOCATION

Both Defendants filed counterclaims in this District. Their opposition wrongly states that the counterclaims they chose to file were compulsory. They were not. The counterclaims that the Defendants chose to file were permissive and done so of their own free will and volition. They did not have to file their non-infringement and invalidity counterclaims and therefore, the case they rely upon, *Zuchert*, supports Fellowes' position that "a defendant who files a permissive counterclaim may be subject to deposition in the forum in which it filed the claim." Aurora Opp. [D.N. 51] at 12.

When it is convenient, the Defendants play themselves as being California based. In this portion of their brief, they argue that their mutual Rule 30(B)(6) deponent is Ms. Chen who lives in California, as does the Defendants' counsel. Yet, when it comes to document production, their documents being in Shanghai, China make such an effort time consuming and burdensome. Aurora Opp. [D.N. 51] at 4. It is more convenient for Fellowes to take the deposition in this District for the reasons mentioned in its Motion.

The Defendants urge an attorney from Pillsbury's Los Angeles office to take Ms. Chen's deposition. The undersigned prefers to learn the facts directly through deposition testimony.

11

The Defendants each filed permissive counterclaims in this District and should be compelled to produce witnesses here.

## IV.    REPLY TO THE ALLEGED NEGLECT TO MEET AND CONFER

The Defendants state that this Motion was rushed to Court "without attempting to resolve the parties' dispute," in violation of LR37.2.  Aurora Opp. [D.N. 51] at 1.  This is simply not accurate and the following series of documents confirms that the Motion, which sparked a flurry of activity by the Defendants and very little substance, revealed that the Defendants remain steadfast in their previous positions with the slight exception of the recent production of a few technical documents relating to their "other" safety switch shredders.

Fellowes notified the Defendants of the inadequacy of their then-recent discovery responses by email on Friday, August 8, 2008, and requested a teleconference.  Ex. AA.  On August 13, 2008, as requested, Fellowes provided the Defendants with a detailed account of the deficiencies.  Ex. BB.  The Defendants explained their position on the date cut-off being post-issuance and an allegation of overbreadth due to the Defendants' other shredder models and also pushed back on discovery issues pending the entry of a protective order. *See* Ex. CC at 1, 3.

Fellowes suggested a meeting on issues including discovery before this Court's hearing on September 4th.  Ex. DD at 1.  After the hearing with the Court where the parties were directed to prepare for a mediation the following month, counsel for Fellowes and the Defendants met in person in the courthouse.  The outcome of that meeting is contained in an email of Sept. 8th wherein specific damages and technical documents were again requested.  Ex. EE at 1.

With no documents produced, Fellowes notified the Defendants that Fellowes "will have to start drafting a motion to compel in this case on Thursday [Sept. 18th]."  Ex. FF at 1.   The

parties filed a stipulated protective order on September 18th. On September 19th, this Court issued the stipulated protective order. *See* Order [D.N. 42].

The Defendants then finally produced 491 pages on September 22, 2008. They contained only one damages related document and no documents related to shredders other than the three specifically mentioned by model number in Fellowes' Amended Complaint. Fellowes brought these shortcomings to the Defendants' attention on Friday, September 26th. Ex. GG. With no further response, on Wednesday, October 1, Fellowes again requested the requested documents and stated, "[w]ithout a response and a confirmed production date in the very near future, I will have no choice but to start drafting a motion to compel." Ex. HH. This is the second mention of a motion to compel.

Due to the impending mediation on October 16th and these persistent requests by Fellowes, the Defendants created and produced their various damages summaries on Oct. 3, 10, 13, and 14. Exs. V, X, and Y; Aurora Opp. [D.N. 51] at 5.

During the mediation, counsel for Fellowes spoke with counsel for the Defendants and asked <u>again</u> in person for the underlying damages documents and the "other" shredder documents that are requested in Fellowes' Motion. *See* Ex. Z, ¶ 5.

In an email on Oct. 27th, the Defendants asked to confirm that Fellowes' Rule 30(B)(6) deposition will take place in Los Angeles and if not "please let me know . . . so that we can take it up with Judge Kocorus [sic] at the status conference." *See* Ex. II at 2. That same day, the Defendants confirmed that they will not bring their deponent to Chicago. *See* Ex. II at 1.

On October 29th, the Defendants apologized for not responding sooner and indicated that they would respond again soon. *See* Ex. JJ at 3. They did not. At this point, Fellowes had some technical documents on the three models it specifically cited in its complaint and damages

summary sheets with hand-crafted profit margins showing additional shredder model numbers that the Defendants decided to disclose.

About one week later, Fellowes again asked for the documents and amended interrogatory responses noting that the Defendants' position on not supplying information on "other" shredders remained absurd. On Nov. 4th, the Defendants stated that Fellowes "should be receiving a substantial document production before the end of the week. This production should address the majority of issues raised in Fellowes 30(b)(6) deposition notices as well as the remainder of your concerns." Ex. JJ at 1. Supplemented interrogatory responses were supposed to be provided "at approximately the same time." *Id.*

Fellowes confirmed that interrogatory responses and documents would arrive on Friday. Ex. KK at 1. When they did not, Fellowes drafted and filed its Motion seeking the very documents and interrogatory answers that the Defendants have still not provided.

Despite repeated objections, requests and then assurances, the Defendants provided nothing. Fellowes filed the Motion. Two days later Fellowes received supplemental interrogatory responses that add little more than an inequitable conduct articulation for one patent and a document production that continues to be limited to what the Defendants choose: some technical documents on some shredders disclosed in the summary sheets and year-end financial statements.

Pursuant to LR 37.2, the foregoing and Exhibits AA-KK provide the date, time, and place of the various conferences and the good faith attempts to resolve the remaining differences.

## V.      CONCLUSION

Both Defendants should be compelled to produce all non-privileged documents and things responsive to Document Request Nos. 17, 28-33, 35-36, 40-41, 43, 46-48, 53-54 (only as

14

to documents between the Defendants themselves) in Fellowes' First Request for Production of Documents and Things by a date certain with an identifying Bates number.  At that time, both Defendants should also produce documents responsive to Fellowes' First Set of Document Requests that include information relating to the shredders that were made, used, sold, or offered for sale in the United States or imported into the United States by them, starting in May of 2003 and continuing until present.

This Court should also preclude the Defendants from relying on or using any additional correspondence "relating to this case, either of the asserted patents, Fellowes, or any products or patents of Fellowes," other than AUR500-526, that pre-dates the filing of the Motion.

Both Defendants should be compelled to also answer Fellowes' First Set of Interrogatories by a date certain.

Because both Defendants chose to avail themselves of this District, their Rule 30(B)(6) deponents should be provided in this District unless otherwise agreed by the parties. Alternatively, if the Defendants prevail on this issue, this Court should order that all of <u>both</u> Defendants' Rule 30(B)6) deponents should be provided in California.

A Proposed Order was attached to Fellowes' Motion.

Respectfully Submitted,                              December 1, 2008

/s/ William P. Atkins
William P. Atkins                                    Peter J. Shakula
william.atkins@pillsburylaw.com                      pshakula @woodphillips.com
Benjamin L. Kiersz                                   Wood, Phillips, Katz, Clark & Mortimer
Christopher K. Dorsey                                500 W. Madison Street
Pillsbury Winthrop Shaw Pittman LLP                  Suite 3800
1650 Tysons Boulevard                                Chicago, Illinois  60661-2562
McLean, Virginia  22102                              (312) 876-1800
(703) 770-7900

*Attorneys for Plaintiff,*
*Fellowes Inc.*

15

401052886v2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of December, 2008, true and correct copies of Fellowes's **REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO COMPEL DISCOVERY: PRODUCTION OF DOCUMENTS AND THINGS, INTERROGATORY ANSWERS, AND RULE 30(B)(6) DEPONENT LOCATION,** and its non-confidential Exhibits Z-FF and II-KK, were caused to be served upon counsel of record for Aurora Corporation of America, and Aurora Office Equipment, Ltd., by electronic Case Management/Electronic Case Filing System.  The undersigned hereby certifies that on the 1st day of December, 2008, true and correct copies of the confidential Exhibits M-Y, GG, and HH were served by U.S. mail postage pre-paid and email upon counsel of record for Aurora Corporation of America, and Aurora Office Equipment, Ltd. as follows:

Richard F. Cauley
rcauley@whglawfirm.com
Erick P. Wolf
ewolf@whglawfirm.com
Franklin E. Gibbs
fgibbs@whglawfirm.com
WANG HARTMANN GIBBS & CAULEY, P.L.C.
1301 Dove Street, Suite 1050
Newport Beach, CA  92660

Karl R. Fink
krfink@fitcheven.com
Nicholas T. Peters
ntpete@fitcheven.com
FITCH, EVEN, TABIN & FLANNERY
120 South LaSalle Street, Suite 1600
Chicagp, Illinois  60603

By:    /s/ William P. Atkins

Attorney for Plaintif,
Fellowes Inc.