**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| KOVE IO, INC., | |
| *Plaintiff*, | Case No. 1:18-cv-8175 |
| v. | |
| AMAZON WEB SERVICES, INC., | |
| *Defendant*. | |

## AWS'S OPPOSITION TO KOVE'S MOTION FOR PROTECTIVE ORDER REGARDING DISCOVERY INTO LITIGATION FINANCING

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Adam A. Allgood (*pro hac vice*)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

III.  ARGUMENT ...................................................................................................... 7

      A.    The Court Should Deny Kove's Motion Because the Information AWS Sought Is Relevant and Discoverable. ........................................................................... 7

      B.    Kove Has Failed to Establish That Any Withheld Documents Are Attorney-Client Privileged or Work Product. ...................................................................... 11

      C.    AWS Should Be Permitted to Continue Mr. Connolly's Deposition. ......................... 12

IV.  CONCLUSION ................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
  No. 16-cv-453, 2018 WL 798731 (D. Del. Feb. 9, 2018) ............................................... 1, 10, 12

*AM Int'l, Inc. v. Eastman Kodak Co.*,
  100 F.R.D. 255 (N.D. Ill. 1981) .................................................................................... 8

*Art Akiane LLC. v. Art & Soulworks LLC*,
  No. 19 C 2952, 2020 WL 5593242 (N.D. Ill. Sept. 18, 2020) .................................................. 10

*Bally Techs., Inc. v. Bus. Intelligence Sys. Sols., Inc.*,
  No. 2:10-cv-440, 2011 WL 3892221 (D. Nev. Aug. 30, 2011) .................................................. 9

*Bell v. Pension Comm. of ATH Holding Co.*, LLC,
  330 F.R.D. 517 (S.D. Ind. 2018) .................................................................................... 12

*Cincinnati Ins. v. Serrano*,
  No. 11-2075-JAR, 2012 WL 28071 (D. Kan. Jan. 5, 2012) .................................................... 15

*Continental Circuits LLC v. Intel Corp.*,
  435 F. Supp. 3d 1014 (D. Ariz. 2020) ............................................................................. 10

*Cordova v. United States*,
  No. 05-cv-563, 2006 WL 4109659 (D.N.M. July 30, 2006) .................................................... 15

*Fisher v. United States*,
  425 U.S. 391 (1976) .................................................................................................... 13

*Fresenius Medical Care Holding Inc. v. Baxter Intern.*, Inc.,
  224 F.R.D. 644 (N.D. Cal. 2004) ................................................................................... 9

*Fulton v. Foley*,
  No. 17-cv-8696, 2019 WL 6609298 (N.D. Ill. Dec. 5, 2019) ............................................... 1, 11

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) .............................................................................. 8, 9

*Impact Engine, Inc. v. Google LLC*,
  No. 19-cv-1301, Dkt. 101 at 3 (S.D. Cal. Aug. 12, 2020) .............................................. 1, 8, 10

*In re Andre*,
  No. 19-mc-80266, 2019 WL 6699958 (N.D. Cal. Dec. 9, 2019) .......................................... 1, 8

*In re Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*,
   831 F. Supp. 1354 (N.D. Ill. 1993) ............................................................................... 8

*Intel Corp. v. Prot. Cap. LLC*,
   No. 13-cv-1685, 2013 WL 12313348 (S.D. Cal. Oct. 2, 2013) ............................... 1, 8

*Johnson v. Jung*,
   242 F.R.D. 481, 483 (N.D. Ill. 2007) .......................................................................... 7

*LM Ins. Corp. v. ACEO, Inc.*,
   275 F.R.D. 490 (N.D. Ill. 2011) ................................................................................. 15

*Lucent Techs, Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ................................................................................... 8

*Medline Indus. v. Lizzo*,
   No. 08-cv-5867, 2009 WL 3242299 (N.D. Ill. Oct. 6, 2009) ..................................... 13

*Odyssey Wireless, Inc. v. Samsung Elecs. Co.*,
   No. 3:15-cv-1738, 2016 WL 7665898 (S.D. Cal. Sept. 20, 2016) ...................... 1, 8, 12

*Oleksy v. Gen. Elec. Co.*,
   No. 06-cv-1245, 2011 WL 3471016 (N.D. Ill. Aug. 8, 2011) ............................... 11, 12

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ..................................................................................................... 7

*Parker v. ABC Debt Relief Co.*,
   No. 3:10-cv-1332, 2011 WL 13156847 (N.D. Tex. Aug. 15, 2011) ..................... 11, 12

*Specht v. Google, Inc.*,
   268 F.R.D. 596 (N.D. Ill. 2010) ..................................................................... 13, 14, 15

*Square D Co. v. E.I. Elecs., Inc.*,
   264 F.R.D. 385 (N.D. Ill. 2009) ........................................................................... 13, 14

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
   No. 04-cv-5312, 2005 WL 1300778 (N.D. Ill. Apr. 28, 2005) .................................... 7

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ................................................................................... 8

*United States v. Evans*,
   113 F.3d 1457 (7th Cir.1997) ..................................................................................... 13

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ................................................................................................... 14

*Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc.*,
  No. 1:05-cv-955, 2011 WL 2470460 (M.D.N.C. June 20, 2011)................................. 9

*White v. Kenneth Warren & Son, Ltd.*,
  203 F.R.D. 364 (N.D. Ill. 2001) ................................................................................... 7

## I.  **INTRODUCTION**

A patentholder's discussions with third parties about funding litigation are typically discoverable. As the district court stated in *Impact Engine, Inc. v. Google LLC*, "courts have generally ruled that litigation funding agreements and related documents are relevant and discoverable in patent litigation."[1] Hence, courts have repeatedly ordered the disclosure of such information in patent-infringement cases.[2] For instance, in *Acceleration Bay LLC v. Activision Blizzard, Inc.*, the District of Delaware agreed that documents the plaintiff provided to a litigation funder were "relevant to central issues like validity and infringement, valuation, damages, royalty rates, presuit investigative diligence, and whether [plaintiff] is an operating company."[3]

Despite this well-settled law, Kove has obstructed AWS's efforts to obtain discovery on Kove's discussions ███████████████████████████████████. For instance, Kove clawed back documents relating to such communications before and during the deposition of Kove's Operations Manager, Keith Connolly. And due to Kove's attorney's speaking objections, demands for breaks, and instructions not to answer, Mr. Connolly's half-day deposition included nine breaks, and on-the-record sessions of four, five, eleven, twelve, twelve, and twelve minutes

---

[1] No. 19-cv-1301, Dkt. 101 at 3 (S.D. Cal. Aug. 12, 2020); *accord Intel Corp. v. Prot. Cap. LLC,* No. 13-cv-1685, 2013 WL 12313348, at *3 (S.D. Cal. Oct. 2, 2013).

[2] *E.g., Odyssey Wireless, Inc. v. Samsung Elecs. Co.*, No. 3:15-cv-1738, 2016 WL 7665898, at *7 (S.D. Cal. Sept. 20, 2016) (finding documents concerning "potential investments by third parties" discoverable, as "valuations of Odyssey's patents are directly relevant to these claims"); *Intel*, 2013 WL 12313348, at *3 ("[T]he investment and litigation information sought in these requests is relevant because it relates to the valuation of the patents" and "the damages USEI seeks in the underlying patent case."); *In re Andre*, No. 19-mc-80266, 2019 WL 6699958, at *3–4 (N.D. Cal. Dec. 9, 2019) (permitting discovery concerning representations "made to potential investors or funders regarding the patents and their value"). Courts in California have most often confronted discovery on litigation funding in patent cases. Nonetheless, as further detailed below, this district's available decisions in related contexts accord with those cases. *See, e.g., Fulton v. Foley*, No. 17-cv-8696, 2019 WL 6609298 (N.D. Ill. Dec. 5, 2019) (directing civil rights plaintiff to turn over some funding documents and noting discovery issues are "case-specific and deserve individual consideration").

[3] No. 16-cv-453, 2018 WL 798731, at *1 (D. Del. Feb. 9, 2018).

each.[4] ████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████[5]

As such, AWS respectfully asks the Court to bring discovery here into line with the law and deny Kove's motion for protective order. And in so doing, the Court should order Kove to (1) produce all of the relevant documents on this topic that Kove has clawed back or withheld, (2) produce Mr. Connolly for a further half-day of deposition, and (3) refrain in future depositions from repeating the improper, obstructive conduct that derailed the Connolly deposition.

## II.    **BACKGROUND**

Two years ago, AWS requested production of "any communications between Kove" and "third parties related to the Patents-in-Suit [or] this Action."[6] Six months later, AWS also asked Kove for documents relating to any financing arrangements for this lawsuit.[7] Kove objected, agreed to "conduct a reasonable search" for responsive communications, but refused to "search for or produce" documents in response to AWS's request for financing arrangements.[8] So AWS followed up, explaining that the information it was seeking is relevant to "the value of the patents," among other things, and reminding Kove of its obligation to serve a privilege log.[9] Kove responded by declining "to make [further] productions."[10] Kove's responsive letter didn't assert

---

[4] *See* Kove Ex. F at 2. All Kove exhibits cited herein are attached to Dkt. 400.

[5] *See* Kove Ex. D at 90:11-91:10.

[6] Dkt. 222-1 at 9–10 (Request No. 34).

[7] Dkt. 222-2 at 8 (Request No. 45); *see also* Dkt. 222-3 at 5 (corresponding Interrogatory No. 14).

[8] Dkt. 222-4 at 48; Dkt. 222-5 at 13; Dkt. 222-6 at 9–10.

[9] Dkt. 222-7 at 1–2 (citing patent case finding such information relevant and discoverable).

[10] Dkt. 222-8 at 2.

any privilege, and Kove didn't identify any responsive documents on a privilege log.[11]

AWS then moved to compel last October.[12] In that motion, AWS explained that any Kove negotiations with third-party funders would "shed light on the actual value of its patents," and thus the damages it's seeking "based on a reasonable royalty."[13] Two weeks after the motion was filed, Kove stated it had "██████████████████████████████████████ ████████████████."[14] AWS asked about third-party communications, and Kove said ██████ ██████████████████████████████████████████████████████████████████ ██████[15] At Kove's request, and in reliance on those representations, AWS withdrew its motion.[16]

The next year of discovery, though, proved Kove's representations inaccurate. The night before Mr. Connolly's deposition, Kove clawed back one ████████████████████ it produced earlier in discovery.[17] And during the deposition, Kove clawed back another document, prepared by non-attorney employees and disclosed to non-attorney third parties, which AWS had introduced as a deposition exhibit.[18] Afterward, Kove served a privilege log claiming attorney-client privilege and work product for these documents.[19] And Kove's present motion suggests

---

[11] *See id.* (instead citing non-patent cases arguing the information is irrelevant). Weeks after AWS moved to compel, Kove wrote "for completeness" that it reserved its right to assert privilege. Kove Ex. C.

[12] Dkt. 222 (seeking, *inter alia*, relevant documents "exchanged with third-party litigation funders").

[13] Dkt. 222 at 4–5; *see also id.* at 1 (also arguing this information is relevant to "rebut Kove's anticipated David-and-Goliath theme at trial" and for impeachment).

[14] Kove Ex. C. This excludes agreements with litigation counsel, which AWS never sought.

[15] Ex. A (11-9-20 Kove email); *see also id.* (11-7-20 Kove email, responding "we are working to provide the information you are requesting" to AWS question about third-party communications).

[16] *See* Dkt. 239.

[17] *E.g.*, Dkt. 400 at 2.

[18] *E.g.*, *id.* (citing Kove Ex. D at 65:1–82:2). AWS objected but complied with the claw-back requests.

[19] *See*, *e.g.*, *id.*

there are additional relevant documents, similar to those, which Kove hasn't produced or identified on any privilege log.[20]

On August 12, 2021, AWS began to depose Mr. Connolly. But Kove's counsel repeatedly interrupted AWS's questioning ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████"[21] Then, after Mr. Connolly testified he was ████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████.[22] This conduct continued over the rest of the deposition, with Kove's counsel conferring with Mr. Connolly on pending questions, instructing him not to answer, and improperly asserting "attorney client work product."[23]

Kove's counsel also coached the witness on how he could answer pending questions. For instance ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████"[24] ████████████████████████████████

---

[20] *See*, *e.g.*, *id.* at 3 ("Kove provided the updated log as to these two documents only because they were the subject of a specific dispute at the deposition …. Kove has no obligation to log irrelevant documents."); *see also* Dkt. 392 (AWS motion to compel non-email documents Kove didn't search for).

[21] Kove Ex. D at 50:10–12 (AWS Atty: "[W]ho have you spoken with regarding litigation funding about this case?" Kove Atty: "Objection, relevance."); *see also id.* at 50:13–20 (additional speaking objections).

[22] *See id.* at 53:4–56:13. Kove didn't identify a basis for instructing the witness not to answer. ████████
████████████████████████████ *Id.* at 54:1–2.
████████████████████████████████. *Id.* at 54:3–22; *see also id.* at 52:7–53:3 (
████████████████████████." *Id.* at 55:1–6.

[23] *See*, *e.g.*, *id.* at 66:7–12; 67:16–68:3; 69:11–16; 70:1–8; 75:13–81:14; 88:21–89:8; 92:14–94:10.

[24] *Id.* at 20:10–21:8 (also attempting to block question based on privilege).

███████████████████████████████████████.[25] And the transcript contains a dozen similar examples where Kove's counsel told Mr. Connolly how to answer questions.[26] And as these and other interruptions continued, ██████████████████████████████████████ ██████████████████████████████, doing so more than a dozen times.[27] ████████████ ██████████████████████████████[28] This pattern eventually led to ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████. This colloquy began as follows:



[29]

████████████████████████████████████████████████████████████████

---

[25] *See id.* at 21:9–11.

[26] *Id.* at 40:14–41:1; 142:21–143:8; *see also id.* at 77:2–81:14 (██████████████████████████████ ████████████████): 56:19–57:2 ("███████ ██"); 68:1–2 (similar); 68:5–11 (similar); 69:11–16 (similar); 75:13–22 (similar); 76:15–21 ("█████████████████████████████████████████████").

[27] *See, e.g., id.* at 20:10–15; 20:17–19; 40:14–22; 56:19–22; 76:15–21; 78:15–20; 81:7–14; 88:13–18; 88:21–89:8; 92:14–18; 94:11–15; 123:9–18; 130:3–9; 142:21–143:8.

[28] *See, e.g., id.* at 70:13–22; 78:15–79:5; 88:21–89:22; 92:22–93:6; 178:3–14.

[29] *Id.* at 88:13–89:13.

[redacted].”[30] After a 10-minute break, AWS repeated its question:

> [redacted][31]

And when AWS modified its question to ensure that Mr. Connolly understood, Kove continued to obstruct his answers:

> [redacted].[32]

---

[30] *Id*. at 89:14–22.

[31] *Id*. at 90:11–91:10.

[32] *Id*. at 92:8–93:8. After this, AWS's counsel "[redacted]." *Id*. at 93:8–10.

From there, ████████████████████████████████████████████████████████

████.[33] After seven hours, but only about four on the record, the parties called a halt. Kove's

counsel said it would move for a protective order.[34] And AWS informed Kove that it considered

the deposition not concluded.[35]

## III.  ARGUMENT

### A.  The Court Should Deny Kove's Motion Because the Information AWS Sought Is Relevant and Discoverable.

It's well established that the party seeking a protective order has the burden to show good

cause.[36] Kove can't do so here because the information at issue is relevant and discoverable. As

this Court has explained, relevancy is "construed broadly to encompass 'any matter that bears on,

or that reasonably could lead to other matter that could bear on, any issue that is or may be in the

case.'"[37] Here, like in most patent-infringement cases, the plaintiff seeks damages in the form of

a reasonable royalty under 35 U.S.C. § 284. Specifically, in response to AWS Interrogatory No.

7, Kove stated that it "intends to seek a reasonable royalty for the asserted infringement."[38] Thus,

if Kove succeeds in proving liability, damages will depend on a hypothetical negotiation to de-

---

[33] *See id.* at 94:11–18 (Mr. Connolly asking permission and saying only ████████████████████
████████████████████████████████"); *see also id.* at 95:7–8 (Mr. Connolly
testifying "████████████████████████████████"); *id.* at 95:11–14 (Mr. Connolly: "████
████████████████).

[34] *Id.* at 56:6–7; *see also id.* at 54:6–7.

[35] *E.g.*, *id.* at 194:5–11.

[36] *E.g.*, *Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D. Ill. 2007); *see also Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04-cv-5312, 2005 WL 1300778, at *1 (N.D. Ill. Apr. 28, 2005) ("[T]he party objecting to the discovery request 'bears the burden of showing why that request is improper.'").

[37] *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 366 (N.D. Ill. 2001) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

[38] Dkt. 397-13 (Kove response to AWS interrogatory on claimed damages) at 5.

termine what AWS would've paid, and Kove would've accepted, for a license to the asserted patents.[39] This may consider a wide range of evidence relating to the value of the asserted patents and 15 commonly used factors, known as the *Georgia-Pacific* factors.[40]

Against that backdrop, courts in patent cases find litigation funding information relevant because it directly relates to the value of the asserted patents and what the plaintiff would've accepted in a hypothetical negotiation. As the Southern District of California found in *Impact Engine, Inc. v. Google LLC*, "any litigation funding agreements and related documents are relevant to the patent infringement claims at issue here."[41] And, as noted, other courts presiding over patent cases have repeatedly reached similar conclusions.[42] As in those cases, the information AWS seeks is relevant to the value of the patents and the reasonable royalty damages Kove is seeking.

Indeed, the Federal Circuit has repeatedly recognized that the hypothetical negotiation should consider "real-world" indicators of the value of the asserted patents.[43] Here, Kove's ██ ████████████████████ are likely to shed light on the actual value of its patents outside the context of a litigation expert report.[44] And this information is particularly important in this case

---

[39] *See, e.g., id.* (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970)).

[40] *See Georgia-Pacific*, 318 F. Supp. at 1120–21; *see also Lucent Techs, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333–34 (Fed. Cir. 2009) ("[F]actual developments occurring after the date of the hypothetical negotiation can inform the damages calculation."); Dkt. 397-13 at 6 (in connection with hypothetical negotiation, Kove stating "the evidence should be linked to the economic demand for the claimed technology").

[41] *Impact Engine,* S.D. Cal. No. 19-cv-1301, Dkt. 101 at 4.

[42] *E.g., Odyssey*, 2016 WL 7665898, at *7; *Intel*, 2013 WL 12313348, at *3; *In re Andre*, 2019 WL 6699958, at *3–4.

[43] *See, e.g., Lucent*, 580 F.3d at 1334 (Hypothetical negotiation shouldn't be "far-removed from what parties regularly do during real-world licensing negotiations"); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1313 (Fed. Cir. 2011) (rejecting damages theory that didn't take into account "the idiosyncrasies of the patent at issue that would have affected a real-world negotiation").

[44] *See AM Int'l, Inc. v. Eastman Kodak Co.*, 100 F.R.D. 255, 258 (N.D. Ill. 1981) (crediting argument that "licensing and attempts to license are prolific sources of information regarding weaknesses in patents"); *see also In re Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*, 831 F. Supp. 1354, 1379 (N.D. Ill. 1993) (Easterbrook, J., sitting by designation) ("[D]eciding whether to take a license entails a similar

because there's no other source of information on transactions between Kove and third parties relating to the value of the patents. For instance, the first *Georgia-Pacific* factor considers "royalties received by the patentee for the licensing of the patent in suit."[45] ████████████████████ ██████████████████████████████████████[46] In effect, Kove seeks to limit the evidence on damages to not-yet-undisclosed expert testimony,[47] and the information AWS has provided (e.g., showing income for the accused products).[48] But when other sources of information aren't available on the value of the asserted patents, courts permit discovery into potentially sensitive areas, such as settlement negotiations.[49] So even if discovery of the information at issue weren't routine in patent cases, it's justified here.[50]

Moreover, Kove describes itself as a "small, innovative product company" that "sells hardware and data management technology" and is "competing in a field of behemoths, like

---

assessment of the risks posed by litigation.").

[45] 318 F. Supp. at 1120.

[46] Dkt. 397-13 at 11 (Kove stating it ████████████████████████████████████████ ███████████████████████████████████████████. Dkt. 397-13 at 10 n.1.

[47] *E.g.*, *id*. at 6 ("[T]his will be the subject of expert opinion at the appropriate time."); *id*. at 11 (same).

[48] *See id*. at 5–13. For instance, *Georgia-Pacific* factor 2 considers licenses of "comparable" patents. As previously noted, "Kove has demanded, and received, numerous of AWS's third-party licenses." Dkt. 222 at 5. But Kove contends such evidence isn't relevant to the royalty analysis. *See* Dkt. 397-13 at 13.

[49] *Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc.*, No. 1:05-cv-955, 2011 WL 2470460, at *16 (M.D.N.C. June 20, 2011) ("[I]f few (or no ) licenses [separate from litigation] exist, licenses from settlements may serve a more useful (or even necessary) function."); *Bally Techs., Inc. v. Bus. Intelligence Sys. Sols., Inc.*, No. 2:10-cv-440, 2011 WL 3892221, at *3 (D. Nev. Aug. 30, 2011) (noting plaintiff's other licenses of other patents ordinarily aren't discoverable, but may be if it never licensed patents-in-suit); *Fresenius Medical Care Holding Inc. v. Baxter Intern.*, Inc., 224 F.R.D. 644, 652–53 (N.D. Cal. 2004) (similar, and compelling discovery of licenses involving patentee's other technology).

[50] Preventing AWS from exploring the withheld information also would be unfair and prejudicial because Kove plans to affirmatively argue ████████████████████████████████████████ ████████████████████████████████████████████. Dkt. 397-13 at 11–12.

AWS."[51] Kove's complaint further alleges Kove "cannot outspend these dominant global players," and that "[t]his case is about ensuring a level playing field so smaller competitors like Kove can compete fairly."[52] Kove's communications with third-parties are relevant to these allegations, as well. To be sure, courts have found such information relevant and discoverable under similar circumstances. For instance, in *Acceleration Bay LLC v. Activision Blizzard, Inc.*, the accused infringers sought documents the patentee provided to a litigation funder during due diligence, arguing they "may be relevant to central issues like validity and infringement, valuation, damages, royalty rates, pre-suit investigative diligence, and whether [Plaintiff] is an operating company."[53] The court agreed, and directed the patentee to produce the documents."[54] Likewise, the *Impact Engine* court concluded such information was relevant to "establish the value of the patents" and "refute potential trial themes."[55]

By contrast, the non-patent cases Kove relies on to support its argument that "litigation funding is generally irrelevant" are inapposite.[56] For instance, the defendants in *Art Akiane LLC. v. Art & Soulworks LLC* "provided no explanation" beyond "the generalization that the documents are relevant to 'exploring statements or representations about the facts of the case ....'"[57] In rejecting such arguments for "virtually automatic discoverability of litigation funding," the court noted that funding information may be warranted in other cases where a party provides a

---

[51] Dkt. 1 at ¶ 3.

[52] *Id*. at ¶ 4.

[53] No. 16-cv-453, 2018 WL 798731, at *1 (D. Del. Feb. 9, 2018).

[54] *Id*.

[55] *Impact Engine*, *supra*; *see also Continental Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1018–19 (D. Ariz. 2020) (finding litigation funding documents relevant because they "concern Plaintiff's financial resources and could be used to refute any David vs. Goliath narrative at trial").

[56] Dkt. 400 at 1; *accord id*. at 4–5.

[57] No. 19 C 2952, 2020 WL 5593242, at *5 (N.D. Ill. Sept. 18, 2020).

"meaningful explanation to satisfy the requirement of relevancy."[58] AWS has provided such an explanation here.[59] And in *Fulton v. Foley*, the court directed the civil rights plaintiff to turn over some of the documents it sent to its litigation funder, explaining that "discovery issues are generally case-specific and deserve individual consideration."[60] Here, the documents Kove withheld are relevant to this specific case and, as in *Fulton*, it must produce them.

**B.     Kove Has Failed to Establish That Any Withheld Documents Are Attorney-Client Privileged or Work Product.**

On the basis of attorney-client privilege/work product, Kove clawed back an exhibit AWS introduced at Mr. Connolly's deposition, even though attorneys didn't author it and it was shared with third parties. But Kove has failed to establish that this document, and any similar documents Kove has clawed back or withheld, are entitled to such protection. As this Court has held, "[t]he party claiming the privilege has the burden of showing the specific facts giving rise to the privilege; blanket claims of privilege are improper."[61] In other words, Kove must demonstrate how each document satisfies the elements of any asserted privilege.[62] And it must provide a detailed privilege log of the documents that it asserts are protected from disclosure.[63] Yet, Kove didn't include the clawed back documents on any privilege log until after Mr. Connolly's deposition, or submit any of the supposedly privileged documents, or its privilege log, to the

---

[58] *Id.*

[59] *See, e.g.*, Dkt. 222 at 4–6.

[60] No. 17-cv-8696, 2019 WL 6609298, at *2, 4 (N.D. Ill. Dec. 5, 2019) (finding these documents relevant to "allegations of the Complaint, identify witnesses, and potentially … for impeachment").

[61] *Oleksy v. Gen. Elec. Co.*, No. 06-cv-1245, 2011 WL 3471016, at *3 (N.D. Ill. Aug. 8, 2011).

[62] *See, e.g., id.*; *Parker v. ABC Debt Relief Co.*, No. 3:10-cv-1332, 2011 WL 13156847, at *2 (N.D. Tex. Aug. 15, 2011) (finding party must demonstrate attorney-client privilege, and listing elements).

[63] *See, e.g.*, Fed. R. Civ. P. 26(b)(5).

Court. And it now appears Kove likely has withheld an unknown number of other relevant documents.[64] In such circumstances, where the proponent of privilege relies on little more than unsupported, blanket assertions, courts order discovery.[65] Here, too, the Court should deny Kove's motion, and require Kove to produce the relevant clawed back and withheld documents.

Alternatively, work-product protection may be overcome where there's a substantial need for the discovery.[66] The doctrine's primary purpose is to prevent disclosure of attorney mental impressions and theories.[67] So even if what Kove describes as litigation funding documents satisfy the broad threshold requirement of being prepared in anticipation of litigation, documents that don't directly include attorney mental impressions and theories should be disclosed. There's a substantial need for these documents because, as discussed above, Kove never licensed the asserted patents and hasn't produced comparable sources of information. Indeed, in patent cases, courts often order the disclosure of litigation funding materials over work-product objections.[68]

### C.    AWS Should Be Permitted to Continue Mr. Connolly's Deposition.

In addition to the reasons detailed above, AWS should also be permitted to continue its deposition of Mr. Connolly due to the improper conduct of Kove's counsel. Rule 30(c)(2) prescribes that deposition objections "must be stated concisely in a nonargumentative and nonsuggestive manner," but the "examination still proceeds," and "the testimony is taken subject to any

---

[64] *See*, *e.g.*, Dkt. 400 at 3.

[65] *See*, *e.g.*, *Oleksy*, 2011 WL 3471016, at *3 ("[B]road and conclusory assertions … are improper to demonstrate that a privilege applies."); *Parker*, 2011 WL 13156847, at *2 (finding parties failed to establish privilege because they didn't "explain how each document … satisfies the requirements of the attorney-client privilege," and "have not even bothered to submit a privilege log or the documents for an *in camera* review").

[66] Fed. R. Civ. P. 26(b)(3).

[67] *See Bell v. Pension Comm. of ATH Holding Co.*, LLC, 330 F.R.D. 517, 523 (S.D. Ind. 2018) (explaining that information less related to litigation strategy is more likely to be discoverable).

[68] *See*, *e.g.*, *Acceleration Bay*, 2018 WL 798731; *Odyssey*, 2016 WL 7665898.

12

objection."[69] Attorneys "may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a [court order], or to present a motion under Rule 30(d)(3)" to limit or terminate the deposition.[70] Yet, here Kove's counsel improperly interrupted AWS's examination of Mr. Connolly. As noted, Kove's counsel objected to AWS questions based on relevance and a purported "agreement not to get into litigation funding."[71] But neither relevance nor the alleged agreement is a proper basis to interrupt the examination. As this District stated in *Medline Indus. v. Lizzo*, "Rule 30 provides three grounds for instructing a deponent not to answer, and relevance is not among them."[72] Kove also didn't put the alleged agreement on record and, to date, has never identified what its counsel was referring to at the deposition.[73]

Kove's counsel's assertions of "attorney client work product" were similarly improper.[74] As this District has explained, attorney-client privilege "is in derogation of the search for the truth," so it's "construed narrowly," and only protects communications "necessary to obtain informed legal advice."[75] Here, Kove prevented Mr. Connolly from testifying about what was discussed ████████████████████████████████████████████████████████

---

[69] Fed. R. Civ. P. 30(c)(2).

[70] *Id.*; *accord Specht v. Google, Inc.*, 268 F.R.D. 596, 598 (N.D. Ill. 2010); *see also* Fed. R. Civ. P. 30(d)(3)(A) (providing grounds for motion to terminate or limit).

[71] *See* Kove Ex. D at 53:4–56:13; *see also id.* at 55:1–6 ("████████████████████.").

[72] No. 08-cv-5867, 2009 WL 3242299, at *2 (N.D. Ill. Oct. 6, 2009).

[73] AWS asked what agreement Kove was referring to. Kove Ex. D at 54:16–22; 56:8–10. As noted in later correspondence, "Kove's counsel never provided any details of an agreement on the record because there is no such agreement." Kove Ex. E at 3 n.10. Kove's motion also doesn't explain, or even mention, its "agreement" objections. And if they were referring to the prior motion to compel, AWS didn't agree not to ask about or seek further discoverable information, or restrict discovery in any way.

[74] *See, e.g.*, Kove Ex. D at 66:7–12; 67:16–68:3; 69:11–70:8; 75:13–81:14; 88:21–89:8; 92:14–94:10.

[75] *Square D Co. v. E.I. Elecs., Inc.*, 264 F.R.D. 385, 390 (N.D. Ill. 2009) (quoting *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir.1997), and *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

██████.[76] That was improper. First, Kove ████████████████████████████████ ████████████████████ that privilege could've protected. Second, as this District explained in *Specht v. Google, Inc.*, attorney-client privilege "protects communications, not facts."[77] Underlying facts communicated between an attorney and client can be discovered through depositions and other discovery.[78] Third, even if there were such communications, the privilege doesn't protect confidential information that Kove disclosed to third parties as a business opportunity.[79]

For similar reasons, Kove also had no basis to impede AWS's questioning about other matters where Kove improperly asserted privilege. These matters include Kove's internal ████ ████████████████████████████████, such as the deposition exhibit Kove improperly clawed back.[80] That wasn't an attorney communication.[81] Mr. Connolly's truncated testimony also confirmed that he ████████████████████████ as part of his business responsibilities, and that it reflected information Kove had provided to third parties.[82]

In addition to violating Rule 30, Kove's counsel improperly coached the witness on how he could answer. Courts have repeatedly found that such instructions justify sanctions, a new deposition, or a protective order.[83] And, as also detailed above, following Kove's counsel's lead,

---

[76] In addition to preventing Mr. Connolly from testifying about this meeting with ████████████, Kove also prevented testimony on communications with ████████, and any other potential funders that remain unknown because Kove hasn't disclosed communications with them on its privilege logs.

[77] 268 F.R.D. 596, 601 (N.D. Ill. 2010).

[78] *See*, *e.g.*, *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)).

[79] *See*, *e.g.*, *Specht*, 268 F.R.D. at 601 (holding plaintiff's attorney who wore two hats couldn't claim privilege regarding "interest in the outcome of the case," or advice/decisions as head of company that had done business with plaintiff); *Square D*, 264 F.R.D. at 390 (explaining common interest doctrine doesn't apply absent identical litigation interest (e.g., joint defense), not merely a common business interest).

[80] *See* Kove Ex. D at 77:2–81:14; 88:21–89:22; 90:11–94:18.

[81] Kove's belated privilege log lists Connolly as "Addressee" and a non-attorney subordinate as "Author."

[82] *See* Kove Ex. D at 71:12–73:18; 81:7–19.

[83] *See*, *e.g.*, *LM Ins. Corp. v. ACEO, Inc.*, 275 F.R.D. 490, 490 (N.D. Ill. 2011) (where attorney objected

Mr. Connolly , doing so more than a dozen times.[84] When Kove's counsel interrupted, he ███████████████████████████████████████.[85] And this pattern eventually led to ███████████████████████████████. In *Cordova v. United States*, the district court found that such conduct warranted additional deposition time, plus Rule 37 sanctions.[86]

    Here, to mitigate the harm caused by Kove's conduct, AWS has asked Kove to permit AWS to continue deposing Mr. Connolly, for up to three and a half hours, with Kove bearing the costs.[87] For all the above reasons, this Court should grant that relief.

## IV.   CONCLUSION

    Kove withheld documents and prevented Mr. Connolly from giving testimony about non-privileged discussions relevant to Kove's patent-infringement allegations and the reasonable royalty damages Kove is seeking. The Court should deny Kove's motion for a protective order, and permit AWS to continue Mr. Connolly's deposition, with Kove bearing the costs. And the Court should also order Kove to produce the clawed-back spreadsheets, along with any other ██████ ████████████████████ that Kove has improperly withheld, and to refrain from repeating the improper conduct that occurred at Mr. Connolly's deposition.

---

to answering "unless [witness] has … clear information," finding this "coaching" that the Federal Rules "do not allow"); *Cincinnati Ins. v. Serrano,* No. 11-2075-JAR, 2012 WL 28071 (D. Kan. Jan. 5, 2012); *Specht*, 268 F.R.D. at 599 (Attorney "egregiously violated Rule 30(c)(2) by instructing [witness] not to answer a question because his answer would be a 'guess.'").

[84] *See, e.g.*, Kove Ex. D at 20:10–15; 20:17–19; 40:14–22; 56:19–22; 76:15–21; 78:15–20; 81:7–14; 88:13–18; 88:21–89:8; 92:14–18; 94:11–15; 123:9–18; 130:3–9; 142:21–143:8.

[85] *See, e.g.*, *id.* at 70:13–22; 78:15–79:5; 88:21–89:22; 92:22–93:6; 178:3–14.

[86] No. 05-cv-563, 2006 WL 4109659, at *4–5 (D.N.M. July 30, 2006).

[87] Kove Ex. E at 1.

Dated: October 7, 2021

Respectfully submitted,

/s/ R. William Sigler
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Adam A. Allgood (*pro hac vice*)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2021, I electronically filed the foregoing with the

Clerk of the Court for the United States District Court for the Northern District of Illinois, via the

CM/ECF system, which will send notice to all counsel of record who have consented to service

by electronic means.

*/s/ R. William Sigler*
R. William Sigler