**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KOVE IO, INC.,

      *Plaintiff*,

    v.

AMAZON WEB SERVICES, INC.,

      *Defendant*.

Case No. 1:18-cv-8175

## AWS'S OPPOSITION TO KOVE'S MOTION TO COMPEL HARDWARE, METRICS, & PREDECESSOR PRODUCT INFORMATION

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Adam A. Allgood (*pro hac vice*)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

**TABLE OF CONTENTS**

I.    INTRODUCTION...................................................................................................... 1

II.   BACKGROUND........................................................................................................ 3

     A.   AWS Produced Relevant Service-Specific Hardware Information for the Accused
          Services. ................................................................................................................ 3

     B.   AWS Produced Metrics in Accordance with the Parties' Agreements After
          Months-Long Negotiations and Despite the Heavy Burden. ....................................... 4

     C.   AWS Produced the Available Documents Relating to the Use of Predecessor
          Products During the Development of the Accused Products. ..................................... 6

III.  ARGUMENT .............................................................................................................. 6

     A.   The Hardware-Related Information Kove Seeks Isn't Relevant or Proportional to
          the Needs of the Case. ............................................................................................ 6

     B.   The Court Should Deny Kove's Motion Seeking Additional Metrics Documents....... 9

     C.   The Court Should Deny Kove's Motion for A Further Supplemental Response to
          Interrogatory No. 14. ........................................................................................... 11

     D.   The Court Should Deny Kove's Motion on Predecessor Product Information
          Unrelated to the Development of the Accused Products............................................. 12

IV.  CONCLUSION ........................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*,
   328 F.3d 309 (7th Cir. 2003) ............................................................................ 2

*Cement-Lock v. Gas Tech. Inst.*,
   618 F. Supp. 2d 856 (N.D. Ill. 2009) ................................................................ 7

*Drone Techs., Inc. v. Parrot S.A.*,
   838 F.3d 1283 (Fed. Cir. 2016) ...................................................................... 13

*Garrison v. Dutcher*,
   No. 1:07-cv-642, 2008 WL 938159 (W.D. Mich. Apr. 7, 2008) ...................... 1

*Goro v. Flowers Foods Inc.*,
   17-cv-02580-JLS-JLB, 2019 WL 6252499 (S.D. Cal. Nov. 22, 2019) .......... 10, 12

*Hanson v. Alpine Valley Ski Area, Inc.*,
   718 F.2d 1075 (Fed. Cir. 1983) ....................................................................... 7

*Invensas Corp. v. Renesas Elecs. Corp.*,
   287 F.R.D. 273 (D. Del. 2012) .................................................................... 13, 14

*Kelora Sys., LLC v. Target Corp.*,
   No. 11-cv-1548, 2011 WL 5444419 (N.D. Cal. Nov. 9, 2011) ...................... 13

*Kinkead v. Southwestern Bell Tel. Co.*,
   49 F.3d 454 (8th Cir. 1995) ............................................................................ 2

*Montanez v. Simon*,
   755 F.3d 547 (7th Cir. 2014) .......................................................................... 2

*Ossola v. American Express Co.*,
   No. 13 C 4836, 2015 WL 5158712 (N.D. Ill. Sept. 3, 2015) .......................... 2

*Ousterhout v. Zukowski*,
   No. 11 CV 9136, 2016 WL 3675564 (N.D. Ill. Apr. 5, 2016) ........................ 1

*Rustom v. Rustom*,
   No. 17 C 9061, 2018 WL 3105926 (N.D. Ill. June 25, 2018) ...................... 1, 2

*Sensor Elec. Tech., Inc. v. Bolb, Inc.*,
   No. 18-cv-05194-LHK (VKD), 2019 WL 570758 (N.D. Cal. Feb. 12, 2019) ........ 14

*Sithon Mar. Co. v. Holiday Mansion*,
  No. CIV. A. 96–2262–EEO, 1998 WL 182785 (D. Kan. Apr. 10, 1998) ................................... 1

*Std. Havens Prods., Inc. v. Gencor Indus., Inc.*,
  953 F.2d 1360 (Fed. Cir. 1991) ................................................................................................. 7

*Stephens v. City of Chicago*,
  203 F.R.D. 353 (N.D. Ill. 2001) ......................................................................................... 1, 10

*Troutman v. Louisville Metro Dep't of Corr.*,
  No. 3:16-CV-742-DJH, 2018 WL 3873588 (W.D. Ky. Aug. 15, 2018) ................................... 1

**Rules**

Fed. R. Civ. P. 26 ......................................................................................................................... 2

Fed. R. Civ. P. 34 ....................................................................................................................... 10

## I. __INTRODUCTION__

The Federal Rules of Civil Procedure work when parties adhere to their formalities. Those formalities include the issuance of formal discovery requests when a party wants another party to produce documents. As this court recently stated in another case, "adherence to the Rules is not up to the whim of a party," and a "discovery request under Fed.Civ.P. 34 is the appropriate way to get documents from an opponent."[1] And allowing a party to ignore Rule 34 leads only to uncertainty and delay—or, as another district court put it, "chaos and confusion."[2] So, this district and others across the country routinely deny motions to compel based on informal requests for production raised through correspondence.[3]

Here, Kove's motion exemplifies the exact behavior that these decisions have found improper. Kove seeks to compel a litany of documents not requested in any of Kove's 237 Rule 34 requests for production.[4] For instance, Kove demands the production of detailed, highly-specific data on metrics measuring the performance of the accused products based on requests it made in correspondence. Permitting Kove to rely on such informal discovery requests here would invite the very chaos that the case law warns against, as it would allow Kove to expand discovery into

---

[1] *Rustom v. Rustom*, No. 17 C 9061, 2018 WL 3105926, at *2 (N.D. Ill. June 25, 2018).

[2] *Sithon Mar. Co. v. Holiday Mansion*, No. CIV. A. 96–2262–EEO, 1998 WL 182785, at *2 (D. Kan. Apr. 10, 1998) ("To treat correspondence between counsel as formal requests for production under Rule 34 would create confusion and chaos in discovery.").

[3] *See, e.g.*, *Rustom*, 2018 WL 3105926, at *2 (denying motion to compel); *Stephens v. City of Chicago*, 203 F.R.D. 353, 360 (N.D. Ill. 2001) ("Letter requests are not a formal document request. Letter requests can be a tool for abusive discovery."); *Ousterhout v. Zukowski*, No. 11 CV 9136, 2016 WL 3675564, at *4 (N.D. Ill. Apr. 5, 2016) (informal requests "are not recognized under the Federal Rules"); *Sithon Maritime Co.*, 1998 WL 182785, a *2 (holding correspondence-based requests don't provide grounds for moving to compel); *Troutman v. Louisville Metro Dep't of Corr.*, Civil Action No. 3:16-CV-742-DJH, 2018 WL 3873588, at *3 (W.D. Ky. Aug. 15, 2018) ("Federal courts across the country have routinely denied motions to compel on the basis that the discovery requests were informally made"); *Garrison v. Dutcher*, No. 1:07-cv-642, 2008 WL 938159, at *2 (W.D. Mich. Apr. 7, 2008) (denying motion to compel in-part because basis was "January 3rd letter" and not a Rule 34 request).

[4] ██████████████████████████████████████████████████████████████████████.

1

new areas at this late stage of the case and skirt the limitations Kove agreed to for the number of RFPs (240) and the deadline to serve them (July 28, 2021).[5] AWS asks this Court to deny the portions of Kove's motion seeking to compel information sought through informal discovery requests.

Rule 26 is another rule that provides a road map for an orderly and efficient discovery process. And within Rule 26, the relevance and proportionality limitations on discovery are designed to help foster closure and reduce undue inefficiency.[6] As this court recently stated in enforcing these limitations, the "discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest," and "[f]ailure to exercise appropriate control results in needless and enormous costs to the litigants and to the due administration of justice."[7] But here, Kove's motion seeks extensive information on products and components beyond S3 and DynamoDB—the sole targets of Kove's infringement allegations from the complaint through the past 30 months of discovery. Indeed, here on the discovery cutoff's eve, Kove is asking this Court to compel production of data on unaccused hardware components and products that preceded S3 and DynamoDB. Kove's requests are exactly what Rule 26's relevance and proportionality requirements are designed to prevent. And because Kove hasn't shown why this 11th-hour expansion of AWS's discovery burdens is justified, Koves motion should be denied.

For these reasons and those discussed in more detail below, AWS respectfully asks the

---

[5] *See* Dkt. No. 358.

[6] *See* Fed. R. Civ. P. 26(b)(1) (limiting discovery to those matters that are both "relevant to any party's claim or defense and proportional to the needs of the case").

[7] *Rustom*, 2018 WL 3105926, at *2 n.3 (citing *Montanez v. Simon*, 755 F.3d 547, 562 (7th Cir. 2014)). So, this district and others frequently restrict discovery based on Rule 26's relevance and proportionality limitations. *See, e.g.*, *Rustom*, 2018 WL 3105926, at *2; *Ossola v. American Express Co.*, No. 13 C 4836, 2015 WL 5158712, at *7-8 (N.D. Ill. Sept. 3, 2015); *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003); *Kinkead v. Southwestern Bell Tel.* Co., 49 F.3d 454, 457 (8th Cir. 1995).

Court to deny Kove's motion to compel in all respects.[8] This will provide predictability and certainty for AWS and other litigants, and avoid the never-ceasing expansion of discovery that Kove pursues.

## II.    BACKGROUND

### A.    AWS Produced Relevant Service-Specific Hardware Information for the Accused Services.

The patents-in-suit are directed to software that locates data stored in a distributed networking environment.[9] And the two accused products, S3 and DynamoDB are both software-based services.[10] Despite this, Kove has requested extensive information about AWS's hardware. Specifically, for each make and model of hardware used for each accused service since it was launched, Kove seeks documents sufficient to show the purchase price, average life span, and how often the device is purchased.[11] After discussing these requests with Kove, AWS agreed to produce documents sufficient to show the hardware and infrastructure costs for S3 and DynamoDB.[12] And AWS produced that information ███████████████████████████████████████████████ ████████████████████████████████████████.[13] Kove has also sought information regarding the throughput capacity, storage capacity, and utilization of AWS's hardware. But AWS has provided the metrics relating to the utilization for both S3 and DynamoDB.[14] For example, in

---

[8] The parties discussed Kove's hardware requests, AWS's metrics production, and Kove's request for predecessor product information at a meet-and-confer on Aug. 27, 2021 (J. Saltman, L. Phillips, and E. Bernard for AWS; A. Adler and T. Mauze for Kove). AWS identifies specific issues that haven't been the subject of meet-and-confer discussions and aren't properly before the Court below. LR 37.2.

[9] Dkt. No. 1-1 ('978 Patent), at 56 (Abstract), 75 (2:19-37), 76 (4:20-21).

[10] https://aws.amazon.com/s3/; https://aws.amazon.com/dynamodb/. To be sure, like all software, S3 and DynamoDB run on hardware.

[11] Dkt. No. 409-13, at 16 (for S3); Dkt. No. 409-14, at 14 (for DynamoDB).

[12] Dkt. No. 409-21, at 2-3.

[13] *See*, *e.g.*, Dkt. No. 409-27, at 3; Ex. A; Ex. B.

[14] Dkt. No. 409-23, at 14-25; Ex. C, at 28-30 and 46-50.

response to Kove's requests for throughput utilization, AWS has provided ███████████

████████████████████████████████████████████████████████████████████████

████████████████████ [15]

### B. AWS Produced Metrics in Accordance with the Parties' Agreements After Months-Long Negotiations and Despite the Heavy Burden.

Kove has issued several discovery requests generically seeking "performance metrics" for the accused services. For example, Kove's RFP 108 seeks 13 general categories of documents, including "all documents constituting, identifying, describing, or referencing… metrics."[16] Similarly, Kove's Interrogatory No. 14 asks AWS to "[i]dentify in detail all metrics… used to measure the performance of each of the Relevant Features and each Accused Product."[17]

But AWS maintains ██████████ potential performance metrics for each of the accused services.[18] As such, in October 2020, AWS engaged Kove in discussions about focusing the scope of Kove's metrics requests so that AWS could meaningfully respond.[19] During those discussions, AWS explained that certain of Kove's requested metrics don't exist, suggested alternative metrics that could be collected, and explained the burden involved in collecting specific metrics.[20] As the discussions continued into February 2021, Kove asked AWS to collect and produce 15 metrics in responding to Kove's Interrogatory No. 22.[21] AWS agreed to collect those metrics to the extent

---

[15] Ex. D, at 136:18-24. *See also*, *id*. at 137:12-17 (identifying Ex. E as that metric, ███████████████

████████).

[16] Dkt. No. 409-6, at 27.

[17] Dkt. No. 409-23, at 12. Kove also served RFP 131 and Interrogatory No. 22, which generically seek metrics related to durability, availability, scalability, latency, and throughput. Dkt. No. 409-11, at 9, subpart (iv). *See also*, Dkt. No. 409-35, at 9 (same)

[18] Ex. F at 4.

[19] *Id*.

[20] Ex. G at 2; *see also* Ex. H at 2; Dkt. No. 409-21, at 3.

[21] Ex. I at 2 (addressing Dkt. No. 409-18).

they existed.[22] And by April 30, 2021, AWS confirmed that it had completed the parties' agreed-to metrics collection.[23] That same day, though, Kove sent AWS a letter lodging more metrics requests.[24] As these informal requests were outside the scope of the parties' agreement and Kove's RFP requests, AWS declined to produce in response to them.[25] Kove later served RFPs seeking further metrics, which AWS collected and produced to the extent they existed.[26]

Similarly, AWS supplemented its response to Interrogatory No. 14 to include the metrics data that AWS had collected based on the parties' discussions and Kove's additional RFPs.[27] AWS also designated ███████ as its corporate designee to testify regarding metrics for DynamoDB. Before that deposition, Kove asked AWS to ensure that ██████ would be prepared to answer questions regarding certain metrics-related documents and discovery responses, including AWS's response to Interrogatory No. 14.[28] AWS confirmed that ██████ would be prepared to address such questions.[29] But during ███████ August 25, 2021 deposition, Kove didn't mark AWS's response to Interrogatory No. 14 as an exhibit or ask him any questions about the specific content of that response.[30] And when ██████ asked to see the response in order to appropriately answer

---

[22] Ex. I at 2; Dkt. No. 409-21, at 3.

[23] Dkt. No. 409-22, at 2-3.

[24] *Id*. (referencing Dkt. No. 409-2 at 5).

[25] Dkt. No. 409-21, at 3.

[26] *See*, *e.g.*, Dkt. No. 409-30, at 6.

[27] Dkt. No. 409-23 at 12-24. Through correspondence, Kove attempted to expand the interrogatory to include information used most often in connection with marketing, pricing, and design decisions, and the identification of "any listings or indices… with respect to performance metrics for the accused products." This effort to recast its interrogatory by letter was improper, as AWS informed Kove. Ex. J, at 2. *See also*, Dkt. No. 409-14 at 7.

[28] Ex. K.

[29] Ex. J at 2.

[30] Dkt. No. 409-28, at 5-6; *see generally* Ex. D.

Kove's questions, Kove declined to provide it to him.[31]

### C. AWS Produced the Available Documents Relating to the Use of Predecessor Products During the Development of the Accused Products.

Kove has requested information regarding predecessor products to S3 and DynamoDB (i.e., products predating these two accused products that provide similar functionality). For example, RFP 216 seeks "documents that discuss or consider the scalability, speed/latency, availability, durability, and cost of" predecessor products, including ███████, and SimpleDB.[32] Kove has never accused these products (███████, and SimpleDB) of infringing the patents-in-suit, and neither party has identified them as non-infringing alternatives.[33] So, in response to these requests, AWS searched for documents regarding the development of the accused services, and produced all documents within that search that discussed any predecessor products.[34] For example, AWS produced a DynamoDB development document ██████████████████████████████████ ███████████[35]

## III. ARGUMENT

### A. The Hardware-Related Information Kove Seeks Isn't Relevant or Proportional to the Needs of the Case.

AWS has produced detailed costs data for the accused services, including information about hardware costs relating to those accused services. For example, AWS produced profit and

---

[31] Ex. D at 83:6-12, 103:18-104:14, 168:16-169:2, 225:7-226:4, 253:10-254:6, 254:12-255:14.

[32] Dkt. No. 409-17, at 10. RFP 222 similar seeks information regarding the design, architecture, implementation, and operation of ██. Dkt. No. 409-18, at 10.

[33] The issues regarding SimpleDB (and potentially other unnamed predecessor products) are related to the issues discussed in AWS's Motion for Protective Order. Dkt. No. 397 at 7-10.

[34] Thus, AWS has searched for documents responsive to RFP 211, which seeks "documents relating to the decision to develop DynamoDB." Dkt. No. 409-17, at 9. So, AWS disagrees that the parties have reached an impasse on its production in response to RFP 211.

[35] Ex. L. *See also*, *e.g.*, Ex. M (comparing ██████ available operations to S3's available operations).

loss statements that contain monthly financial information regarding the hardware and infrastructure costs for each of the accused services.[36] Kove's motion, though, seeks to compel more detailed cost data on hardware, down to the level of individual components.[37] But Kove hasn't established why such data is relevant or proportional to the needs of this case, and its demand for it should thus be denied under Rule 26.[38]

Kove argues that it needs hardware information to perform a damages analysis under both the cost savings methodology and the incremental income methodology.[39] But Kove doesn't explain why the infrastructure and hardware costs AWS has already produced aren't sufficient to perform those analyses. And the cases Kove cites don't provide a basis to require AWS to provide cost information for each make and model of the hardware it uses—rather, they address issues that aren't relevant here, like the calculation of intellectual property devaluation and lost profits damages, or simply define the methodology for calculating cost savings.[40]

In its motion, Kove also seeks to compel the storage capacity, throughput capacity, and the utilization for each make and model of hardware used for a 15-year period.[41] But Kove hasn't properly requested this information through Rule 34. Kove relies on RFP 12 for this demand, but that request only mentions "hardware requirements" in passing and doesn't identify the hardware

---

[36] *See*, Ex. A; Ex. B.

[37] Dkt. No. 409, at 3.

[38] *See* note 7, *supra.*

[39] Dkt. No. 409, at 3-4.

[40] *See Cement-Lock v. Gas Tech. Inst.*, 618 F. Supp. 2d 856, 864 (N.D. Ill. 2009) (addressing cost savings in calculating intellectual property devaluation, which isn't at issue here); *Std. Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991) (discussing noninfringing alternatives in a lost profits analysis, which isn't at issue here); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1080–81 (Fed. Cir. 1983) (discussing generally the cost savings approach to damages).

[41] Kove also asserts it needs utilization information on each make and model of hardware in order "to properly estimate the hardware costs attributable to" each of S3 and DynamoDB." But AWS has provided this information in its detailed profit and loss statements.

specifications that Kove seeks.[42] And the correspondence-based requests Kove references in its motion (i.e., the April 30, 2021 letter) are outside the scope of RFP 12.[43] Since such informal requests don't comply with Rule 34, Kove's motion to compel this information should be denied.[44]

Kove's request for capacity and utilization data also should be denied because these hardware capabilities aren't relevant to the issues in the case. Kove asserts that it needs the information "to estimate Accused Product performance and help formulate the expected performance of alternative products."[45] But AWS has already produced the agreed-to performance metrics on the two accused services.[46] And it's unclear what "alternate products" Kove refers to, since neither party has identified any hardware-related non-infringing alternatives.[47]

Finally, given the lack of relevance, requiring AWS to provide the requested information wouldn't be proportional to the needs of the case, and particularly so given the burden involved. The temporal scope alone—15 years for S3 and 9 years for DynamoDB—for providing the discovery on each make and model of hardware shows the undue burden imposed by Kove's demands. Indeed, ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████.

---

[42] Dkt. No. 409-6, at 9-10 (RFP 12 requests at least 13 broad categories of information).

[43] *Compare* Dkt. No. 409-6, at 9-10 *with* Dkt. No. 409-2, at 5 (requesting specific metrics relating to hardware utilization, asserting they're responsive to several RFPs. But the only one Kove moved on is RFP 12). *See also* Dkt. No. 409, at 4.

[44] *See* note 3, *supra.*

[45] Dkt. No. 409, at 4.

[46] *See infra*, Section III.B.

[47] Ex. N at 9; Ex. O at 18-29.

**B.  The Court Should Deny Kove's Motion Seeking Additional Metrics Documents.**

The portion of Kove's motion demanding the production of additional documents showing performance metrics for S3 and DDB should be denied for three reasons.

First, Kove seeks to compel metrics-related information that AWS has already produced, to the extent it exists. For example, Kove requests ███████████████████████████ ████████████████████████████.[48] But AWS explained in its supplemental response to Interrogatory No. 14 and in correspondence that it produced the available information responsive to this request.[49] And Kove had the opportunity to question AWS's corporate designee, ███ ████, about this data. As noted, Kove asked AWS to prepare ████████ to answer such questions, but chose not to ask them; and, when he asked to review AWS's interrogatory responses to provide more detailed responses, Kove refused.[50] As another example, Kove's motion repeats its February 8, 2021 requests for 15 categories of metrics.[51] But, per the parties' agreement and as detailed in AWS's response to Interrogatory No. 22, AWS collected documents responsive to those categories to the extent they existed.[52]

Second, Kove's motion again relies on correspondence-based requests that go beyond or seek to rewrite its RFPs. For example, citing RFP 195, Kove seeks to compel "information about the ████████████████████████████████████████████, over the infringement

---

[48] Dkt. No. 409, at 8. DynamoDB wasn't introduced until 2012 so the temporal scope is incorrect.

[49] Dkt. No. 409-23, at 21 (citing AWS_KOVE_000390575); Dkt. No. 409-29, at 2; Dkt. No. 409-30, at 6.

[50] *See* Dkt. No. 409-27, at 2-3. *See also*, Ex. D, at 83:6-12, 103:18-104:14, 168:16-169:2, 225:7-226:4, 253:10-254:6, 254:12-255:14. In one instance, Kove's counsel responded ████████████████████ █████████████" Ex. D at 83:6-12.

[51] Dkt. No. 409, at 10; Dkt. No. 409-19.

[52] Ex. C at 29-30, 46-49.

9

period," and lists five distinct metrics.[53] But only two of those metrics (ii and iii – ██████████
████████████████████) are included in RFP 195, and AWS produced documents responsive to those two subparts to the extent they exist.[54] As detailed above, though, Rule 34 doesn't permit Kove to compel production based on informal requests.[55] And Kove's attempted reliance on its generic requests seeking "metrics" generally (e.g., RFP 108) doesn't change that conclusion.[56] Such requests don't define the scope with reasonable particularity, as Rule 34 requires.[57] Indeed, as another district court explained when ruling on a similarly amorphous request, such "'all-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet Rule 34's particularity requirement."[58] And this is particularly applicable here, as Kove itself has stated that it "served additional requests that provided AWS's sought after specificity" regarding those generic requests.[59]

Third, Kove has yet to explain the relevance and proportionality of the additional metrics

---

[53] Dkt. No. 409, at 7.

[54] Dkt. No. 409-14, at 12. Dkt. No. 409-10, at 24-25. *See also* Ex. D at 134:23-25 ████████
████████████████████████████████████████); 254:12-21
████████████████████ Ex. D at 254:12-21.

[55] *See* note 3, *supra*.

[56] Dkt. No. 409, at 9-10.

[57] *See* Fed. R. Civ. P. 34(b)(1)(A).

[58] *Goro v. Flowers Foods Inc.*, 17-cv-02580-JLS-JLB, 2019 WL 6252499, at *6 (S.D. Cal. Nov. 22, 2019) (internal quotations omitted); *see also Stephens*, 203 F.R.D. at 360 (denying motion to compel and explaining that the requests at-issue were "so overly broad that in asking for everything under the sun, they ask for nothing specific").

[59] Dkt. No. 409, at 9 (referencing RFP 131 and corresponding Interrogatory No. 22). AWS provided the requested metrics, or close proxies for them, in response to specific RFPs. Dkt. No. 409-28, at 6. And AWS has never refused to produce any metrics in response to Kove's properly served discovery requests. For example, in response to RFP 184, which requests "[t]he amount of time ████████████████
████████████████," AWS produced "████████
████████" Dkt. No. 409-10, at 17.

it seeks to compel, despite Rule 26's limitation. Kove posits that they're generally relevant to cost savings and incremental income damages methodologies, but never specifically connects its requests to those damages theories.[60] And their collection isn't proportional to the needs of the case, especially since it would be unduly burdensome. As AWS informed Kove, the collection of even a few metrics ███████████████████████████[61] and ████████████████████████████████ ██████[62] Indeed, ██████████ testified that it took ████████████████████████████████████ ████████████████████████ that AWS has already produced to Kove.[63]

**C.    The Court Should Deny Kove's Motion for A Further Supplemental Response to Interrogatory No. 14.**

Kove's Interrogatory No. 14 asks AWS to "[i]dentify in detail all metrics, including key performance indicators, [AWS] used to measure the performance of each of the Relevant Features and each Accused Product."[64] As AWS has explained, there are ████████████ performance metrics for S3 and DynamoDB. And ████████████████████████████████████████████ ██████████████████████. The metrics that each product team uses to measure performance ███████ ████████████████████████████████████████████████████████. To be sure, ███████████ testified that "████████████████████████████████████████████████████████████ ███████████████."[65] So, the parties worked together to determine which metrics needed to be

---

[60] Dkt. No. 409, at 6-10.

[61] Ex. G at 2.

[62] Dkt. No. 409-21, at 3.

[63] Ex. D at 273:5-9.

[64] Dkt. No. 409-8, at 9.

[65] Ex. D at 27:21-28:15.

collected for this case.[66] And AWS produced documents and supplemented its interrogatory responses, including to Interrogatory No. 14, consistent with that collection.

Nonetheless, Kove's motion asserts that "AWS has yet to respond to Interrogatory No. 14."[67] This is incorrect, as it ignores the parties' discussions and AWS's 11-page substantive supplementation of that interrogatory response following its metrics production.[68] That supplemental response details the metrics AWS has produced, how they measure performance, and why they're responsive to Kove's requests.[69] And, as detailed above, to the extent Kove had questions about that response, it didn't address any with AWS's corporate designee.

Still, Kove moves to compel AWS to identify and collect all metrics that "it deems most important in evaluating the Accused Products' performance."[70] But this nebulous demand doesn't define the information Kove is requesting with reasonable particularity, in contravention of Rule 26.[71] And Kove's offer to narrow Interrogatory No. 14 to the "50 types of metrics that AWS deems most significant"[72] doesn't help either, since there's no AWS document or consensus about the "most significant" metrics, and, ██████████████████████████████████████ ████████████████████████.

### D. The Court Should Deny Kove's Motion on Predecessor Product Information Unrelated to the Development of the Accused Products.

In response to Kove's requests about the accused services' development, AWS collected

---

[66] Ex. F at 4. *See also*, Ex. J at 3.

[67] Dkt. No. 409-8, at 9.

[68] Dkt. No. 409-23, at 14-24.

[69] *Id.*

[70] Dkt. No. 409, at 11.

[71] *See, e.g., Goro*, 2019 WL 6252499 at *6.

[72] Dkt. No. 409-14, at 7.

and produced the available, responsive, non-privileged documents. And, consistent with Kove's RFP 211, AWS collected and produced documents that discuss predecessor products in the context of the development of DynamoDB.[73] For example, AWS produced a document discussing options addressed during the development of DynamoDB, ███████████████████████████████ ███████████████████.[74] Thus, Kove's motion should be denied with respect to RFP 211, which seeks exactly this type of information for DynamoDB.[75]

Beyond RFP 211, though, Kove also seeks detailed information on unaccused predecessor products apart from their relationship to the accused services. For example, Kove seeks information on each predecessor product's scalability, speed/latency, availability, durability, and cost. And, for ██, Kove seeks data on its design, architecture, implementation, operation, and functionality.[76] But Kove hasn't shown that it's entitled to discovery on these unaccused products, including explaining with specificity how the information is relevant to its infringement claims under Rule 26.[77] Kove claims that the documents it seeks are "relevant to understanding the design and operation of the resulting Accused Products" for infringement purposes.[78] But Kove doesn't explain why the technical S3 and DynamoDB documents AWS has already produced, including the

---

[73] AWS also confirmed that "any available information on ██ had already been searched for in connection with the S3 development documents." Dkt. No. 409-29, at 3.

[74] Ex. L. *See also*, *e.g.*, Ex. M (comparing ███████ available operations to S3's available operations).

[75] Kove also asserts AWS has refused to search for broadcast videos using the term "██." Dkt. No. 409, at n.10. But AWS told Kove that it conducted that search and none of the resulting hits "relate to the early ██ system on which Kove has sought discovery," based on a review of the video dates and titles. Ex. P, at 3.

[76] Dkt. No. 409-17, at 10; Dkt. No. 409-18, at 10.

[77] *See Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 282 (D. Del. 2012) (denying the plaintiff's motion for discovery on unaccused products because it hadn't shown how the unaccused products were relevant to its infringement claims with specificity); *see also Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1299 (Fed. Cir. 2016) (finding no basis to support order to produce discovery relating to unaccused products); *Kelora Sys., LLC v. Target Corp.*, No. 11-cv-1548, 2011 WL 5444419, at *2 (N.D. Cal. Nov. 9, 2011) (denying discovery for unaccused instrumentalities).

[78] Dkt. No. 409, at 11.

████ source code files, don't provide a full understanding of the "design and operation" of S3 and DynamoDB. Nor does Kove explain how discovery of unaccused services provides additional information about the operation of the accused services.

Kove also asserts that predecessor products could be relevant to non-infringing alternatives.[79] But neither party has identified ████, SimpleDB, or any other predecessor product as a non-infringing alternative.[80] And courts hold that such speculation like Kove's isn't sufficient to compel discovery. Indeed, in *Sensor Elec. Tech., Inc. v. Bolb, Inc.*, the court denied the plaintiff's motion to compel information on the defendant's non-accused products because no party had contended those products were non-infringing alternatives.[81]

As the requested information isn't relevant, requiring AWS to provide it wouldn't be proportional to the needs of the case, and particularly so given the burden involved. To comply with Kove's demands, AWS would need to search for documents for each predecessor product, independent of any relationship to the accused services. And for any of these products that were released, like SimpleDB, AWS would have to collect, review, and produce relevant source code, wiki's, and financial documents. To the extent Kove seeks to compel the production of information on any predecessor product beyond the three listed in its motion,[82] AWS's burden would be even higher.[83] And at this late stage of discovery, Kove's attempt to inject detailed discovery on unaccused services into the case would lead to significant further delays in the schedule.

---

[79] Dkt. No. 409, at 14.

[80] Ex. N at 9; Ex. O, at 18-29.

[81] Case No. 18-cv-05194-LHK (VKD), 2019 WL 570758, at *3 (N.D. Cal. Feb. 12, 2019); *see also Invensas Corp.*, 287 F.R.D. at 279.

[82] Portions of Kove's motion and the conclusion appear to broaden RFP 216 back out to information relating to all predecessor products (without a definition of that term), rather than just ████, and SimpleDB.

[83] For example, Allan Vermeulen, who helped design S3 in the early 2000s, testified that during that initial

## IV.    <u>CONCLUSION</u>

Rules 26 and 34 establish procedures and formalities necessary for the orderly and efficient completion of discovery. In particular, they help foster closure and preclude unlimited, never-ceasing discovery demands and motions. Here, for the reasons detailed above, AWS respectfully asks the Court to enforce these Rules, and prevent Kove's improper expansion of discovery on the eve of its conclusion after 30 months. Doing so will provide predictability and certainty for AWS in this case, as well as for other litigants who come before the Court.

---

development, ████████████████████████████████████████████████
████████████████████. Ex. Q, at 116:18-117:24; 121:9-12.

Dated: October 7, 2021

Respectfully submitted,

*/s/ R. William Sigler*

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Adam A. Allgood (*pro hac vice*)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, which will send notice to all counsel of record who have consented to service by electronic means.

*/s/ R. William Sigler*
R. William Sigler