# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KOVE IO, INC.,

    *Plaintiff,*

    v.

AMAZON WEB SERVICES, INC.,

    *Defendant.*

Case No. 1:18-cv-8175

## AWS'S OPPOSITION TO KOVE'S MOTION TO ENFORCE COMPLIANCE WITH COURT ORDER AND TO COMPEL VARIOUS DISCOVERY (DKT. 403)

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Adam A. Allgood (*pro hac vice*)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

**TABLE OF CONTENTS**

I.     Kove's Attempt to Re-open Wiki Discovery Contradicts the Court's March 24 Order and Kove's Representations to the Court After That Order. ....................................................1

II.    Kove Isn't Entitled to Expand the Limit on Email Custodians That the Parties Agreed to. .....5

III.   Kove Has Already Exceeded the Interrogatory Limit. .............................................................8

IV.  Kove's Arguments about RFPs Contravene the Local and Federal Rules. ...........................13

V.    Conclusion ............................................................................................................................15

i

## TABLE OF AUTHORITIES

**Cases**

*Bell v. Woodward Governor Co.*,
   No. 3:03-cv-50190, 2005 WL 3829134 (N.D. Ill. June 30, 2005) ........................................... 10

*Edge Sys. LLC. v. Image MicroDerm Inc.*,
   No. 17-cv-8699, 2019 WL 2902492 (C.D. Cal. May 3, 2019) .................................................... 9

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*,
   315 F.R.D. 191 (E.D. Tex. 2016) ........................................................................................ 12

*Fair Hous. Ctr. of Cent. Indiana, Inc. v. Welton*,
   No. 1:18-cv-1098, 2019 WL 2422594 (S.D. Ind. June 10, 2019) ........................................... 10

*Finjan, Inc. v. Qualys Inc.*,
   No. 4:18-cv-7229, 2020 WL 4923964 (N.D. Cal. Aug. 21, 2020) ........................................... 10

*Go Daddy Operating Co., LLC v. Ghaznavi*,
   No. 17-cv-6545, 2018 WL 2946370 (N.D. Cal. June 13, 2018) ............................................... 12

*McCoy v. Ramirez*,
   No. 1:13-cv-1808, 2016 WL 3196738 (E.D. Cal. June 9, 2016) ............................................. 14

*New York Life Ins. Co. v. Peters*,
   No. 19-cv-2269, 2021 WL 229659 (N.D. Ill. Jan. 22, 2021) .................................................. 11

*Paananen v. Cellco P'ship*,
   No. 08-cv-1042, 2009 WL 3327227 (W.D. Wash. Oct. 8, 2009) ........................................... 10

*Potter v. Torres*,
   No. 2:20-cv-823, 2021 WL 4290156 (D.N.M. Sept. 21, 2021) .............................................. 15

*PsyBio Therapeutics, Inc. v. Corbin*,
   No. 20-cv-3340, 2021 WL 4459527 (N.D. Ill. Sept. 29, 2021) .............................................. 13

*Racing Optics, Inc. v. Aevoe Corp.*,
   No. 2:15-cv-1774, 2016 WL 1595354 (D. Nev. Apr. 20, 2016) ............................................. 10

*Shaw v. Davis*,
   No. 3:18-cv-551, 2021 WL 3889982 (D. Nev. Aug. 31, 2021) .............................................. 14

For the reasons detailed below, AWS respectfully asks the Court to deny in full Kove's omnibus motion (1) to compel the production of additional Wikis, (2) for leave to take discovery from additional ESI custodians beyond the five the parties agreed to, (3) to compel additional interrogatory responses or for leave to serve additional interrogatories, and (4) to compel AWS to provide new written responses to all 237 of Kove's RFPs.

I.    **KOVE'S ATTEMPT TO RE-OPEN WIKI DISCOVERY CONTRADICTS THE COURT'S MARCH 24 ORDER AND KOVE'S REPRESENTATIONS TO THE COURT AFTER THAT ORDER.**

In arguing that AWS failed to comply with the Court's March 24 order (Dkt. 301, 303), Kove ignores the content of that order and the relevant history of this case. At the very beginning of discovery, AWS produced the most relevant Wiki documents.[1] By August 2020, AWS had produced thousands of documents and millions of lines of source code explaining the design and operation of the accused services.[2] AWS also offered to search for and produce further Wikis, if Kove were willing to narrow its overbroad search terms.[3] Instead, Kove moved to compel additional, unspecified technical documents.[4] On March 24, 2021, the Court granted in part and denied in part that motion, as stated on the record.[5] "[M]ost significantly," in the Court's words:

[ redacted ]

---

[1] *See generally* Dkt. 286-5 at 183:3–18 [ redacted ]

[2] *See, e.g.,* Dkt. 186-1 at ¶ 2; *see also, e.g.,* Dkt. 286-6 at 55:17–25, 295:21–296:5 (explaining that the source code is the best source of information on the design and operation of the accused services).

[3] *See, e.g.,* Dkt. 177-2; 186-7 (explaining to Kove that terms would return over 12,000 hits); Dkt. 186 at 4.

[4] *See, e.g.,* Dkt. 176 at 9 (requesting production of "documents describing the design and operation of the components in the Accused Products," and referring to one-page list of components attached to motion); *see also id.* at 4 (falsely stating AWS "refused on all counts" to provide additional Wikis).

[5] Dkt. 301; *see also* Dkt. 303 (transcript of hearing). While Kove's motion to compel technical documents was pending, Kove also filed a separate motion to compel 30(b)(6) testimony on the existence and collection of such technical documents (Dkt. 276), which the Court denied. Dkt. 301.

███████████████████████████████████

The Court thus denied Kove's request "for a broad and … vague order to produce all design doc-uments."[7] Mindful of Rule 26's relevance and proportionality limitations, the Court instead in-structed AWS to provide random samples of Wikis for search terms that had resulted in a large number of hits, and required the parties to periodically confer and report back on the production of useful and responsive additional Wiki documents.[8] The parties did so. And on June 24, 2021, Kove and AWS jointly stated to the Court: "AWS's production of the Wikis is complete."[9]

Yet Kove's present motion entirely ignores that affirmation and what the Court ordered on the record.[10] Kove also ignores the four Court-ordered status reports the parties submitted be-tween March and June 2021, as well as two conferences, where Kove could've brought up any issues with the production of Wikis.[11] Thus, to the extent produced ████████████████████

████████████████████████████████,[12] Kove failed to timely bring that before the Court, despite having had numerous opportunities to do so. Indeed, the exemplary images

---

[6] Dkt. 303 at 9:4–10.

[7] *Id.* at 18:24–19:2 (referencing Kove's list of components attached to its motion).

[8] *See id.* at 6:15–15:4. In doing so, the Court explained that searches could be unduly burdensome, large hit counts may reflect draft or incomplete documents that aren't useful, and sampling would allow the parties and Court to identify helpful materials not yet produced). *Id.* at 8:15–9:19.

[9] Dkt. 348 at 2.

[10] *E.g.*, Dkt. 403 at 1 (arguing "[t]he Court granted Kove's motion to compel production of relevant Wikis and ordered AWS to provide them" and that this "necessarily entails producing complete Wikis"); *id.* at 2 (inaccurately describing AWS as "attempt[ing] to relitigate what the Court already determined in granting Kove's prior motion").

[11] *See* Dkt. 309, 339, 342, & 348. The parties also attended a conference with the Court on May 5, 2021, reporting "no issues pertaining to the production of wiki materials or other topics that require the Court's assistance at this time." Dkt. 341. And the Court granted the parties' request to cancel another conference on May 28, 2021, because it was unnecessary. Dkt. 343.

[12] Kove misleadingly states AWS "produced text-only versions." Dkt. 403 at 1. AWS produced the Wikis as kept in the ordinary course of business, ██████████████████████. *E.g.*, Ex. A. Exhibits cited herein are attached to the accompanying Declaration of R. William Sigler.

2

Kove includes in its brief show a document that AWS produced on August 18, 2020, almost a full year before Kove informed the Court that "AWS's production of the Wikis is complete."[13] AWS also produced that document over six months before the Court's March 24, 2021 hearing on the Wiki production issues.[14] So Kove could've brought up any issues with that document and any similar documents long ago, or in any of the parties' four status reports. But Kove didn't, even though it raised issues much less relevant to the Court's March 24 order, such as Kove's anticipated motion to compel production of Amazon.com's CEO's emails.[15]

Moreover, Kove is well aware that ████████████████, some of which date back a decade, may be broken or unviewable, similar to a webpage that hasn't been actively updated for a long time.[16] ██████████████████



[18] For instance, when ████████████

_____

[13] *See* Dkt. 403 at 1; Dkt. 348; Ex. B (8-18-20 email producing AMZ_KOVE_000081714–87327).

[14] *See* Dkt. 303; Ex. B.

[15] *See* Dkt. 348 at 2.

[16] Kove argued in the underlying motion to compel that "AWS's wiki functions similarly to the well-known website Wikipedia.org." Dkt. 176 at 3.

[17] *See, e.g.*, Ex. C (Vermeulen Tr.) at 327:7–11; 372:23–373:10.

[18] *See, e.g.*, Ex. D at 369:3–24 ████████████ ████████████ ; Ex. C at 326:25–327:11.

[19] Ex. C at 326:13–327:11.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Thus, contrary to what Kove suggests in its motion, there's no quick action AWS can take to make all embedded images appear.[22] Nonetheless, AWS repeatedly offered to attempt to retrieve particular missing images, if Kove were willing to identify a manageable number of Wikis that it believes contain relevant information.[23] But Kove never responded, except to demand a "full" reproduction of the Wikis AWS has produced.[24] And Kove's request would impose an extreme burden on AWS. As the parties discussed last year, ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[20] When asked what he would do at Amazon if an image was missing, ███████████████
████████████████████████████████████████████████████
████████████████████████████████████ *Id.* at 328:25–330:3.

[21] *Id.* at 372:23–373:10; *see also id.* at 372:20–22 ███████████████
███████████; *id.* at 230:15–231:7
████████████████████████████████████

[22] Kove argues "each Wiki page has an 'Export to PDF' function that can presumably be used to export the full Wiki." Dkt. 403 at 3. ████████████████████████████████
██████████████████ *Id.* at 327:22–328:10.
████████████████████████████████████████████ Accompanying Declaration of J. Saltman ("Saltman Decl.") at ¶ 3.

[23] *See* Kove Ex. 15 at 3; Ex. E at 6–7.

[24] *E.g.*, Ex. F at 3.

[25] Dkt. 185-1 at ¶ 4.

 [26] As a result, AWS would have to perform individual searches for each of the ▆▆▆▆ produced Wikis to attempt to locate them in the Wiki system, and then, to the extent the specific Wiki can be located ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.[27] Such a process would take months.[28] The Court thus should deny Kove's belated and unfeasible request to produce embedded images.

## II. KOVE ISN'T ENTITLED TO EXPAND THE LIMIT ON EMAIL CUSTODIANS THAT THE PARTIES AGREED TO.

Kove's request for emails from three additional AWS custodians—▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆—ignores AWS's early and repeated disclosure of the employees most knowledgeable about the accused services. Rather than use the information AWS provided, Kove instead chose to demand emails from high-level employees with no particular relation to the accused services, like Amazon.com's CEO. Kove provides no reason why it should be relieved from the consequences of such choices at this late stage in discovery.

Specifically, the parties agreed to conform to the Local Patent Rules for Electronically Stored Information, which provide that each party "shall limit its email production requests to a total of five custodians."[29] In May 2020, Kove initially asked AWS to identify email custodians with knowledge relating to "Marketing," "Telemetry," and "Surveys."[30] AWS proposed five senior employees with such knowledge, all of whom Kove rejected.[31] Then, in December 2020 and

---

[26] Saltman Decl. at ¶ 4.

[27] *Id.*

[28] *Id.*

[29] LPR ESI 2.6(d); Dkt. 52 at ¶ 3(c); Dkt. 54; *see also* LPR ESI 2.6(a) (providing that general ESI requests "shall not include email" and requiring "specific email production requests" to obtain emails). In addition, the parties agreed to supplement the LPR ESI "by following the Federal Circuit Model Order Regarding E-Discovery in Patent Cases" (Model Order). Dkt. 52 at ¶ 3(c).

[30] Dkt. 361-6.

[31] *E.g.*, Dkt. 361 at 4.

early January 2021, AWS proposed three more, including ████████, whose emails Kove

now seeks.[32] On January 5, 2021, Kove responded that it "cannot accept ███████ as an

ESI custodian."[33] AWS asked Kove to reconsider, given ██████ knowledge and longevity on

the S3 team.[34] But on March 8, 2021, Kove again rejected him and AWS's other proposals.[35]

In addition to proposing custodians in response to Kove's correspondence, AWS repeat-

edly identified employees with relevant knowledge in other disclosures. For instance, in Septem-

ber 2020, AWS's initial response to Kove's Interrogatory No. 18 identified ████████, whose

emails Kove now seeks, as having relevant knowledge.[36] And the amended responses AWS

served on January 28 and March 26, 2021, added ██████████████, respectively.[37]

Kove, however, disregarded the information AWS provided, and, for one of its first two

selections under LPR ESI 2.6(d), insisted on Amazon CTO ████████, who lacked specific

knowledge of Kove's requested topics and facts relating to this case. Despite his high-level posi-

tions, and generic Kove search terms that required AWS to review more than 10,000 emails,

AWS accommodated Kove's proposal.[38] And in May 2021, after a year of discussion, Kove

identified its remaining LPR ESI 2.6(d) selections, which included Amazon.com CEO Andy

---

[32] *Id*. at 6; Dkt. 361-10 (email chain discussing AWS's proposal of █████, among others).

[33] Ex. G at 3.

[34] Dkt. 361-14 at 3.

[35] *See*, *e.g.*, Dkt. 351-5.

[36] Ex. H at 4.

[37] Ex. I. AWS also identified ████████████ as having relevant knowledge on its Feb. 17, 2021 Second Amended Initial Disclosures, and all three employees at issue on its Apr. 2, 2021 Third Amended Initial Disclosures.

[38] *See* Dkt. 361 at 3–7; Dkt. 361-13 at 1; Dkt. 361-11 at 2 (noting that narrow technical subset of Kove search terms alone yielded 2,329 emails and 9,911 pages); Dkt. 351-6 at 1.

Jassy.³⁹ Excluding Jassy, whose emails are the subject of another pending motion, AWS ran

Kove's search terms, collected and reviewed the results, and produced over ███ emails and

attachments from the custodians Kove selected.⁴⁰

Kove has provided no justification for why AWS should now bear the burden of reviewing and producing emails from three additional custodians—████████████████████

████—all of whom AWS identified as having relevant knowledge before Kove made its last

three selections under LPR ESI 2.6(d). AWS even proposed ████ as a custodian in December

2020, five months before Kove made those selections, then asked Kove to reconsider him in January 2021. AWS also repeatedly asked Kove to confirm its remaining LPR ESI 2.6(d) selections.⁴¹ But Kove didn't do so until May, when it pressed forward with requests for discovery

from witnesses who, as AWS repeatedly told Kove, lack any unique information.⁴²

And emails are only one component of discovery, which the parties agreed to disfavor.

As the Model Order that the parties agreed to follow in this case explains, email production requests can "carry staggering time and production costs that have a debilitating effect on litigation."⁴³ Accordingly, it and this Court's LPR ESI are designed to streamline email production by,

---

³⁹ *See* Dkt. 361 at 3–7; Dkt. 351-7 at 2 (Kove tentatively selecting high-level employee ██████, the former head of marketing, in addition to Jassy); Dkt. 351-13 (selecting early S3 manager ██████). In March 2021, Kove also sought emails from ██████████, but in April dropped that request. Kove then requested ██ as an additional custodian in July, but dropped that, too.

⁴⁰ *See* Dkt. 351; Dkt. 361.

⁴¹ *See* Dkt. 361 (citing correspondence). Kove selected ██████████ in the fall of 2020, and after a dispute stemming from search terms that initially produced 57,000 hits, AWS finished producing emails for those two custodians in March 2021.

⁴² *See, e.g.*, Dkt. 351-12 at 1 (explaining that Jassy oversaw "AWS's entire operation, spanning at least 200 different products, only two of which are relevant here"); Ex. J (similar, for ████.

⁴³ Dkt. 361-5 at 1–2.

among other things, presumptively limiting parties to five email custodians.[44] And despite what

Kove argues, it would indeed be burdensome for AWS to collect and review emails from the

three additional custodians Kove requests, as AWS estimates that using the search terms Kove

insisted on for these custodians would yield ███████████ emails.[45]

## III.  KOVE HAS ALREADY EXCEEDED THE INTERROGATORY LIMIT.

Fed. R. Civ. P. 33(a)(1) provides that "[u]nless otherwise stipulated or ordered by the

court, a party may serve on any other party no more than 25 written interrogatories, including all

discrete subparts." Here, between June 2019 and July 2021, Kove served nine sets of interrogato-

ries ostensibly numbered 1 through 25. But many of these included discrete subparts, such as

Kove's Interrogatory No. 22, shown below.[46]

> **INTERROGATORY NO. 22:**
>
> For each storage class and configuration of Amazon S3 that has ever been provided to a customer and for each configuration of DynamoDB that has ever been provided to a customer: (i) identify the storage class and/or configuration; (ii) identify and describe the products and services offered related to the storage class and/or configuration; (iii) provide the pricing of the products and services offered related to the storage class and/or configuration (including any surcharges or discounts, and by storage tier), and identify and describe the methodology by which the pricing was arrived at; (iv) provide metrics on a per-month (or as often as possible) basis that cover the following: (a) durability (min/max/average/SLA values), (b) availability (min/max/average/SLA values), (c) scalability (min/max/average/SLA values), (d) latency (min/max/average/SLA values), (e) throughput (get and put) (min/max/average/SLA values), (f) latency when a KFC provides the requested i-node (only applies for S3) (min/max/average), and (g) latency when a BM provides the requested i-node (only applies for S3) (min/max/average); and (v) identify and describe all data, values, equations, assumptions, and methodologies used to arrive at the metrics in (iv). Your answer should include an identification of all documents and communications related to Your answer and the persons most knowledgeable about Your answer.

---

[44] *See* LPR ESI 2.6 (providing, *inter alia*, that "[t]o obtain emails parties must propound specific email production requests" that "shall be narrowly tailored to particular issues"); Dkt. 361-5 at 2 (stating that Model Order's goal is to "streamlin[e] e-discovery, particularly email production").

[45] Saltman Decl. at ¶ 5. Moreover, the parties are 30 months into a discovery period where Kove has is-sued 237 RFPs and 90 30(b)(6) topics. AWS has produced 28,116 documents from 27 different custodi-ans and 114,015 source code files. Kove has deposed four AWS 30(b)(6) witnesses, will likely depose seven more, and has also deposed three AWS 30(b)(1) witnesses and noticed two others. Kove's motion doesn't explain why it needs more emails in addition to this discovery.

[46] Ex. K at 11–16 (also noting previous Kove interrogatories had multiple such subparts).

This interrogatory seeks information about each of the two accused services. In the patent context, as explained in *Edge Systems LLC. v. Image MicroDerm Inc.*, "courts generally have concluded that a single interrogatory seeking information about all accused products contains at least as many discrete subparts as there are accused products at issue, and potentially more depending on what information is sought about each."[47] In addition to requesting information on the two accused services, Interrogatory No. 22 seeks at least three unrelated subcategories of information (i.e., storage classes, pricing, and metrics): "[f]or each storage class and configuration of Amazon S3 that has ever been provided to a customer and for each configuration of DynamoDB that has ever been provided to a customer." Thus, based on the unrelated information it seeks about two products, Kove's Interrogatory No. 22 should count as at least six interrogatories.

So, when AWS served responses to Kove's seventh set of interrogatories in November 2020, AWS objected to the subparts in Kove's Interrogatory No. 22.[48] But without waiving that objection, in an attempt to avoid Court involvement, AWS provided a detailed 46-page substantive response.[49] And AWS had previously accommodated other Kove interrogatories with many subparts. For example, Kove's Interrogatory No. 2 sought "all factual and legal bases for each of [AWS's] counterclaims and affirmative defenses in this action."[50] Under the relevant case law, that counts as at least nine separate interrogatories.[51] Thus, in *Bell v. Woodward Governor Co.*,

---

[47] No. 17-cv-8699, 2019 WL 2902492, *3 (C.D. Cal. May 3, 2019) (collecting cases).

[48] Ex. K at 11–16.

[49] Ex. L (AWS Aug. 18, 2021 supplemental response) at 4–50; *see also* Ex. K at 11–16 (providing some of this information and noting that AWS was searching for additional documents). Between AWS's initial and amended response, the parties exchanged numerous letters discussing the information sought by this interrogatory, in which Kove identified 15 additional categories of information that it believed to be responsive. AWS's amended response addressed those 15 categories, but explained that Kove's correspondence-expanded interpretation of its Interrogatory No. 22 should count as at least 20 interrogatories.

[50] Ex. M at 8.

[51] That is, one for each of AWS's distinct counterclaims and affirmative defenses: (1) non-infringement,

this Court found that an interrogatory seeking only the factual bases for affirmative defenses should count as 21 separate interrogatories, one for each asserted affirmative defense.[52] And decisions from other courts accord with that.[53] In addition, Kove's Interrogatory Nos. 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, and 18 all count as more than one interrogatory, at least because they request information on two separate accused AWS services.

Thus, when Kove served the interrogatories at issue (i.e., Kove Interrogatory Nos. 23–25, which have as many subparts as Kove's No. 22), Kove had already exceeded the 25-interrogatory limit, even when using a conservative count of discrete subparts. What's more, AWS had repeatedly informed Kove of this, including months earlier in multiple interrogatory objections and correspondence.[54] Accordingly, AWS objected to Kove Interrogatories Nos. 23–25 based on their discrete subparts, among other things, and didn't further respond to Nos. 23–25.

Contrary to Kove's arguments in its motion, AWS never waived its objections to Kove Interrogatories Nos. 23–25. As the Southern District of Indiana has explained, the "appropriate course" for a party objecting to the number of interrogatories is to do so once the limit is exceeded.[55] Any other rule would encourage unnecessary objections and motion practice, as other

---

(2) invalidity, (3) failure to state a claim, (4) unenforceability, (5) failure to mark, (6) statute of limitations, (7) equitable defenses, (8) double patenting, and (9) lack of standing. Dkt. No. 129 at 37–54.

[52] No. 3:03-cv-50190, 2005 WL 3829134, at *2 (N.D. Ill. June 30, 2005) ("Plaintiffs' Interrogatory # 1 improperly seeks to combine twenty-one questions into one.").

[53] *Finjan, Inc. v. Qualys Inc.*, No. 4:18-cv-7229, 2020 WL 4923964, at *1 (N.D. Cal. Aug. 21, 2020) (counting interrogatory asking for bases for each affirmative defense as 10 interrogatories); *Racing Optics, Inc. v. Aevoe Corp.*, No. 2:15-cv-1774, 2016 WL 1595354, at *3 (D. Nev. Apr. 20, 2016) (where interrogatory asked for bases for all affirmative defenses, counting this as 20 interrogatories).

[54] This includes AWS's November 2020 response to Kove's Interrogatory No. 22, as well as AWS's earlier discrete subpart objection to Kove's Interrogatory No. 18 (i.e., the sole numbered interrogatory of the previous set). Ex. H at 2.

[55] *Fair Hous. Ctr. of Cent. Indiana, Inc. v. Welton*, No. 1:18-cv-1098, 2019 WL 2422594, at *4 (S.D. Ind. June 10, 2019).

courts have noted.[56] Hence, AWS properly objected to the interrogatories it didn't answer and

that are the subject of Kove's instant motion to compel.[57]

And the Court should deny Kove's alternative request for leave to submit additional in-

terrogatories, based on AWS purportedly serving "numerous interrogatories containing subparts

similar to those in Kove's."[58] Although Kove uses AWS's Interrogatory No. 20 as an example, it

only highlights why Kove's request lacks merit. More specifically, AWS found it necessary to

ask its Interrogatory No. 20 because Kove's previous responses had provided minimal infor-

mation or were evasive. For instance, AWS's Interrogatory No. 11 is identical to No. 20 except

that it asked about each Kove "Embodiment" instead of "Product & Service."[59] But Kove pro-

vided only a two-sentence response that denied any relevant information.[60] And Kove did so de-

spite previous responses, allegations, and evidence suggesting Kove wasn't being forthright.[61]

Thus, the focus of AWS's Interrogatory No. 20 is the extent of Kove's non-litigation business, if

---

[56] *See*, *e.g.*, *Paananen v. Cellco P'ship*, No. 08-cv-1042, 2009 WL 3327227, at *4–5 (W.D. Wash. Oct. 8, 2009) (declining to adopt a rule that "would incentivize litigants to file protective orders in every case be-fore responding," especially "where parties submit their interrogatories in multiple sets," as if "a respond-ing party answers an initial set of 15 interrogatories and is then served with 11 more, it would defy logic to hold that that party has waived its objection to the numerosity of the new set"). For example, it wouldn't have made sense for AWS to object to Kove's Interrogatory 2, in Kove's first set of interrogato-ries, as Kove hadn't yet exceeded the 25-interrogatory limit at that time.

[57] The cases Kove cites are inapposite. For instance, in *New York Life Ins. Co. v. Peters*, the defendant waited until the plaintiff had served 54 interrogatories, and had moved for sanctions, before objecting or responding to any of them. No. 19-cv-2269, 2021 WL 229659, at *3 (N.D. Ill. Jan. 22, 2021). Naturally, at that point, this Court found that the defendant had waived any excuse based on subparts.

[58] Dkt. 403 at 11.

[59] Ex. N at 5. Previously, in response to AWS's Interrogatory No. 3, Kove had identified one embodi-ment, but provided no other information. Ex. O at 12. Kove's later amended response still identified only the same embodiment, but stated that it's referred to by other names.

[60] Ex. N at 5 ("There was no licensing, sale, or distribution of any Kove Embodiment ….").

[61] *See*, *e.g.*, note 59, *supra*; Dkt. 1 at 2 (alleging Kove was a "competitor" of AWS). In addition, AWS un-covered that Kove's website had offered for sale products and services in the same field as the patents-in-suit. But Kove repeatedly refused requests to produce information from its website, claiming this infor-mation had been deleted. Recently, after AWS served 30(b)(6) topics relating to spoliation, Kove said it found the information, and designated a Rule 30(b)(6) witness on these topics.

11

any. The items listed in the interrogatory merely add specificity on what information AWS

would consider responsive on that topic. And courts have found that analogous interrogatories

should count as one. For instance, in *Go Daddy Operating Co., LLC v. Ghaznavi*, the court found

that an interrogatory asking about a defendant's relationship with 11 different entities counted as

one because the "main thrust of the interrogatory" was about the defendant, not the entities.[62] In-

deed, the court contrasted that with interrogatories asking about multiple products in patent

cases, like Kove's, where the main thrust is about the products.[63]

In any event, here Kove understood the main thrust of AWS's Interrogatory No. 20, or at

least wasn't burdened by providing a full response to it, given that the entire substance of Kove's

response to that interrogatory is the following three sentences:

> Pursuant to Fed. R. Civ. P. 33(d), the information requested by this Interrogatory
> may be determined from documents produced by Kove and the burden of deriving
> the requested information will be substantially the same for Kove as it is for AWS.
> In particular, Kove directs AWS to the following documents:
>
> KOV_00037363; KOV_00037364; KOV_00037365; KOV_00037366; KOV_00037367;
> KOV_00037368; KOV_00037369; KOV_00037370; KOV_00037371; KOV_00037372;
> KOV_00037373; KOV_00037790.
>
> Kove identifies John Overton as a [sic] person most knowledgeable about Kove's
> answer.[64]

By contrast, AWS provided nearly 50 pages of detailed information in response to Kove's No.

22, not including documents and other discovery that AWS produced.[65] Thus, requiring AWS to

answer additional Kove interrogatories with many subparts isn't retributive; rather, it's unfair,

---

[62] No. 17-cv-6545, 2018 WL 2946370, at *2 (N.D. Cal. June 13, 2018).

[63] *See id.*; *see also*, *e.g.*, *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 198 (E.D. Tex. 2016) (Bryson, C.J., by designation, finding interrogatory on whether drug inhibited 11 compounds counted as one, as it "relates to a family of compounds that could have been described more generically").

[64] Ex. P at 3. On Apr. 9, 2021, Kove served an amended response that's identical apart from adding one bates number.

[65] Ex. L.

prejudicial, and unduly burdensome.

And finally, Kove shouldn't be given leave to submit or re-submit its Interrogatories Nos. 2, 4–10, and 12–16 in excess of the limit, as its motion confusingly requests.[66] As Kove states, "AWS responded to Nos. 1–22."[67] AWS hasn't argued, for example, that Kove exceeding the limit means that it may not rely on previous AWS responses. And, as Kove only moved to compel responses to Nos. 23–25, its request concerning other interrogatories is moot.[68]

## IV. KOVE'S ARGUMENTS ABOUT RFPS CONTRAVENE THE LOCAL AND FEDERAL RULES.

Kove's motion also seeks an order requiring AWS to revise and supplemental its written responses to all 237 of Kove's RFPs. But Kove bases this demand on the generalized accusation of AWS "obfuscation" implicating "a large number of RFPs," which Kove claims it's not "feasible" to identify and didn't confer with AWS about. Kove's failure to identify the RFPs at issue and confer with AWS about them justifies the denial of this portion of the motion. Indeed, Local Rule 37.2 establishes that this Court shall refuse to hear a discovery motion unless it recites the date, time, and place of a conference where the parties attempted to resolve the issue in good faith. And Kove doesn't attempt to show that it satisfied this for the unidentified RFPs at issue.[69]

Likewise, a motion to compel discovery has certain minimum requirements that Kove failed to satisfy here. As this Court explained last week in *PsyBio Therapeutics, Inc. v. Corbin*, "[d]espite the liberal breadth of discovery allowed under Rule 26 of the Federal Rules of Civil

---

[66] Dkt. 403 at 12 (requesting "leave to submit its Nos. 2, 4-10, 12-16, and 23-25").

[67] *Id*. at 8. Indeed, Kove only moved to compel responses to Nos. 23–25. *Id*. at 1, 8.

[68] Since Kove didn't request leave to re-submit No. 22, and that alone has more than three subparts, it's further unclear why leave to submit Nos. 2, 4–10, and 12–16 would make any difference.

[69] Dkt. 403 at 14. AWS's opposition to Kove's motion to compel financial information (Dkt. No. 405) further details the requirements of LR 37.2 and Kove's failure to comply with it here.

Procedure, a proponent of a motion to compel discovery bears the initial burden to prove that the information sought is relevant."[70] In addition to showing relevance, Kove was required to identify the discovery requests at issue, address AWS's objections to those requests, and explain why it believes AWS's responses were inadequate.[71] Kove's failure to do so for any of AWS's objections to the unidentified RFPs Kove complains about requires denying its motion.[72] Indeed, Kove's concession that its discovery-related complaints are too numerous to address, after 30 months of discovery and numerous separately briefed Kove discovery motions, only confirms that the discovery Kove is seeking isn't proportional to the needs of the case.

Kove does at one point briefly list 16 RFPs and alleges that for these and "dozens" of other unidentified RFPs AWS objected, but then only agreed to produce documents limited to a "narrowed version."[73] Kove, however, only provides one example, namely AWS's July 24, 2019 response to an RFP (No. 3) served on June 10, 2019.[74] It is now 27 months after it was served, and after numerous AWS document productions and Kove motions to compel. The appropriate time to address any deficiency with that response passed long ago.

Kove also avers that "[s]imilar uncertainty exists" as to RFPs "for which AWS objected on grounds of privilege but has not provided a privilege log."[75] But this is incorrect. As Kove is

---

[70] No. 20-cv-3340, 2021 WL 4459527, at *1 (N.D. Ill. Sept. 29, 2021).

[71] *Id.*; *Shaw v. Davis*, No. 3:18-cv-551, 2021 WL 3889982, at *3 (D. Nev. Aug. 31, 2021).

[72] *See*, *e.g.*, *McCoy v. Ramirez*, No. 1:13-cv-1808, 2016 WL 3196738, at *2 (E.D. Cal. June 9, 2016) (agreeing plaintiff hadn't met burden in moving to compel "documents responsive to all 18 Requests," where plaintiff focused on four responses and didn't address defendant's objections to other requests).

[73] Dkt. 403 at 13–14.

[74] *See id*. at 14

[75] *Id*.

aware, AWS has provided a privilege log, and AWS will continue to update it as discovery proceeds.[76] If Kove is suggesting AWS must associate each identified document on its logs with a list of RFPs it's arguably responsive to, Kove cites no legal basis for doing so. Under Rule 34(b)(2)(E), AWS produced documents "as they are kept in the usual course of business," and thus wasn't required to categorize and label them in response to Kove's RFPs. Further, AWS's privilege log complies with Rule 26(b)(5)(A), which required it to "describe the nature of the documents, communications, or tangible things not produced or disclosed" in a manner that enables other parties to assess its privileged claims. And Kove doesn't explain how anything it's seeking in its motion is necessary to assess AWS's privilege claims, nor articulate any reason to believe AWS improperly withheld any documents. The Court thus should deny Kove's motion.[77]

## V.   CONCLUSION

Despite discovery nearing completion, Kove's motion seeks to re-open disputes that Kove previously represented to the Court were resolved. It also makes disproportional and unduly burdensome demands for unnecessary additional email discovery, interrogatories, interrogatory responses, and responses to Kove's 237 RFPs. Thus, AWS respectfully requests that the Court deny Kove's motion.

---

[76] Saltman Decl. at ¶ 2.

[77] *See*, *e.g.*, *Potter v. Torres*, No. 2:20-cv-823, 2021 WL 4290156, at *2 (D.N.M. Sept. 21, 2021) (rejecting argument that non-movant "improperly failed to specify which document is responsive to each RFP").

Dated: October 7, 2021

Respectfully submitted,

/s/ R. William Sigler

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Adam A. Allgood (*pro hac vice*)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

16

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, which will send notice to all counsel of record who have consented to service by electronic means.

/s/ R. William Sigler