**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Kove IO, Inc.,

Plaintiff,

v.

Amazon Web Services, Inc.,

Defendant.

Civil Action No. 1:18-cv-08175

Hon. Rebecca R. Pallmeyer
Hon. Sheila M. Finnegan, Magistrate Judge

Jury Trial Demanded

# KOVE IO, INC.'S OPPOSITION TO AMAZON WEB SERVICES, INC.'S MOTION TO COMPEL SUFFICIENT TIME TO DEPOSE JOHN K. OVERTON AND NON-EMAIL ESI DOCUMENTS

Plaintiff Kove IO, Inc. ("Kove") files this opposition to Defendant Amazon Web Services, Inc.'s ("AWS's") Motion to Compel Sufficient Time to Depose John K. Overton and Non-Email ESI Documents ("Motion" or "Mot.") (ECF No. 392).

## I. INTRODUCTION

AWS demands 21 hours of deposition time for Kove's CEO, Dr. John Overton but fails to establish the "good cause" required of a party seeking additional deposition time. AWS does not even cite the "good cause" standard, much less apply it, and for good reason – it cannot make such a showing. As this Court has recognized, typically, the better practice is for a deposition to go forward within the time limits imposed by the Federal Rules; then, if additional time is needed, the parties should work together to reach a solution and, if they are unable to do so, ask the Court to address the request for more time on a developed factual record. Kove has offered 14 hours for Dr. Overton's deposition. This is an extraordinary amount of time with a single witness. Without even first trying to ask its questions in those hours, AWS should not be heard to demand even more.

The facts demonstrate why AWS cannot meet its good cause burden before even trying to depose Dr. Overton. Kove is a small, closely held company with only seven employees. There is limited information in its possession, given the small scale of its operations. Dr. Overton's role as CEO militates against AWS's proposal for preemptively demanding extra deposition time before even trying to complete its questioning in the time frame permitted by the Federal Rules. This tends to suggest that AWS's call for 21 hours is more for harassing and distracting a critical employee than a legitimate effort to obtain information. Under the apex doctrine, a high-level executive is protected from long depositions if it would impose a hardship in light of the officer's other duties. As a small company struggling to develop its operations, Dr. Overton is involved in

virtually all aspects of the business and is indispensable. It bears noting that AWS refused *any* amount of deposition time of its CEO on grounds that, *inter alia*, he is important and busy, despite the fact that he has critical and unique information about the accused products and is central to the facts of this case. (ECF No. 361 at 12). Dr. Overton plays an outsized role as CEO of a seven person company (having to wear many "hats" on a daily basis) as compared to a company like AWS, with its 25,000 employees. It would be like Kove seeking to depose one seventh of AWS's employees (3,571 employees) for 21 hours each – surely AWS would complain about the effect on its business from such distraction.

In short, Kove has been extremely accommodating and has proposed a practical solution. AWS can have 14 hours with Dr. Overton, then if at that point it can establish the requisite "good cause" for additional time, the parties can work it out. But in practicality, 14 hours is excessive to begin with, and if AWS does not foot drag or waste time, it should be more than sufficient.

Finally, AWS moves to compel Kove to conduct unnecessary document searches. As shown below, Kove has conducted more than reasonable searches, and what AWS now demands is either unnecessary or moot. For example, it complains about what custodial tags are associated with documents, but those are the tags that belong with them, so there is no meaningful additional data to be had. AWS also demands that additional employee computers should be searched – while Kove searched locations where it expected to find the information requested, it now has gone back and looked at the other computers requested by AWS, and found only about 40 non-duplicative documents, which are in the process of being produced. There is nothing more to order.

## II. BACKGROUND

Dr. Overton is a co-inventor of the patents-in-suit and the founder and CEO of Kove. In the late 1990's and early 2000's, Dr. Overton developed and then worked to commercialize the

technology relating to in the patents-in-suit at a company called OverX, Inc. ("OverX"). OverX ultimately shuttered as a business and sold its intellectual property in 2002 to Econnectix LLC, a company founded by Dr. Overton that, through a series of corporate transactions and name changes, is now Kove IO. All commercialization efforts related to the patents-in-suit ceased in 2005.

Since 2005, Kove (and its predecessor entities) have been in the business of designing, developing, and selling hardware memory products. These memory products *do not* embody the patents-in-suit, and are the chief (and essentially only) revenue generator for Kove. Dr. Overton holds primary responsibility in overseeing Kove's operating business, including its six full-time employees and single full-time contractor who comprise Kove's engineering, marketing, sales, and customer support teams. He is the principal contact for all Kove's current and potential customers and an indispensable participant in developing go-to-market alignment and strategies with clients. He consistently works 80-100 hours per week to ensure that Kove continues to remain viable as a business. In short, the demands on Dr. Overton's time are extreme; forcing him to reserve an extra deposition day which AWS hasn't even attempted to demonstrate it needs would cause undue hardship on him and Kove.

## III. ARGUMENT

### A. AWS Cannot Show Good Cause For A Deposition Exceeding 14 Hours.

Depositions are limited to seven hours "unless otherwise stipulated or ordered by the court." Fed. R. Civ. P. 30(d)(1). This seven hour limit applies to both individual depositions under Rule 30(b)(1) and corporate depositions under Rule 30(b)(6). *See id.*; Fed. R. Civ. P. 30(d)(1) Advisory Committee Notes (2000) ("Paragraph (2) imposes a presumptive durational limitation of one day of seven hours for any deposition."); *Berkeley*IEOR v. Teradata Operations, Inc.*, No. 17-CV-7472, 2021 WL 3566596, at *3 (N.D. Ill. Aug. 12, 2021) (maintaining "two

seven-hour sessions" for a witness designated under both 30(b)(1) and 30(b)(6)). Rule 30's advisory committee notes state that "[f]or purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition." Fed. R. Civ. P. 30(d) advisory committee's note to 2000 amendment; *see also Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Solutions, LLC*, No. 13-CV-133, 2015 WL 13640104, at *1 (S.D. Ind. June 11, 2015) ("Fed. R. Civ. P. 30(d) provides that 'unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours.'").

While Kove has compromised by offering Dr. Overton for a total of 14 hours given AWS seeks him in his individual and corporate representative capacities, cases recognize that not even this is required. *Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 14-CV-3618, 2016 WL 11739883, at *2 (N.D. Ill. Apr. 26, 2016) (recognizing "the possibility that a 30(b)(1) and 30(b)(6) deposition may be conducted simultaneously"); *see also Bresaz v. Cty. of Santa Clara*, No. 14-CV-03868, 2015 U.S. Dist. LEXIS 109110, at *11 (N.D. Cal. Aug. 18, 2015) ("However, that does not mean that a party has the right to depose an individual for seven hours as a Fed. R. Civ. P. 30(b)(6) designee and for another seven hours as an individual. Nor does it mean that plaintiffs can take the full seven hours to depose an individual when there is no purpose for it.") (internal citations omitted).

"Additional time is not available for the asking. A party seeking additional time must show good cause." *Apollo v. Stasinopoulos*, No. 18-CV-6475, 2021 WL 1414090, at *2 (N.D. Ill. Apr. 14, 2021) (citing *Mother & Father v. Cassidy*, 338 F.3d 704, 711 (7th Cir. 2003)); *see also* Fed. R. Civ. P. 30(d)(1) advisory committee notes (2000) ("The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order."). Good cause is a "fact-intensive inquiry" in which courts may consider "whether the

examination will cover events occurring over a long period of time, the witness will be questioned about numerous or lengthy documents, or expert witnesses will be involved." *U.S. SEC v. Kandalepas*, No. 18-CV-2637, 2018 WL 4005201, at *2 (N.D. Ill. Aug. 22, 2018) (citations and quotations omitted).

AWS has not and cannot meet its burden of establishing good cause for taking a deposition of longer than 14 hours. This is particularly true because it has not even attempted to take the deposition to see if it can obtain the information it seeks within the fourteen hours. As this Court advised:

> Given the fact-intensive nature of deciding whether to extend time, typically the better practice is for the deposition to go forward to determine how much is able to be covered in the seven hours and, then, if additional time is needed, for counsel to stipulate to extend the deposition for a specific additional time period. If the parties cannot reach a stipulation, then Court intervention may be sought."

*Kandalepas*, *supra* at *2. Kove proposes just this. AWS can proceed with its fourteen hour deposition, determine how much it can cover in that time, and then if additional time is legitimately needed, Kove of course would stipulate to it, and if the parties disagree, the Court can resolve the dispute on a complete factual record. Without going through this process, AWS cannot meet its burden of showing good cause, and should not be taking the Court's time with such hypothetical disputes.

Kove has even compromised by offering that the entire 14 hours can be for both Rule 30(b)(6) questions and Rule 30(b)(1) questions – *i.e.,* Kove is not insisting that it is a separate seven hours for each. This affords AWS plenty of time to ask all of its questions. And it only makes practical sense. Kove is a small, closely-held company with only seven employees. As CEO and an inventor of the patents-in-suit, Dr. Overton possesses detailed knowledge of the company and most of the facts relevant to this case. If there are "individual capacity" questions

beyond his designated 30(b)(6) topics, there is plenty of time within the 14 hours to ask them. If AWS wants to start with the corporate deposition and then when done move straight into the individual deposition (or visa versa), it can do so. Or, as other courts have recognized, there is no need to do them separately – they can run concurrently. *See, e.g.*, *Uni-Systems, LLC. v. United States Tennis Association, Inc*., 17-CV-147, 2020 WL 8266015, at *4-5 (E.D.N.Y. July 6, 2020) (ordering plaintiffs to conduct 30(b)(1) and 30(b)(6) depositions "simultaneously," because it was "in the interest of efficiency"); *Zeng v. Electronic Data Sys. Corp.*, No. 07-CV-310, 2007 WL 2713905, at *3 (E.D. Va. Sept. 13, 2007) (requiring plaintiff to conduct 30(b)(1) and 30(b)(6) depositions simultaneously, noting there is no requirement "that the depositions be done separately").[1]

The available facts show that 14 hours is more than enough, particularly where AWS has not even tried to cover its questions first to determine how much can be addressed in the 14 hours.[2] The conceivable topics for the deposition would be background information on Kove and its finances, the technology in question, circumstances of the invention, the patent and its prosecution, prior commercialization efforts, issues surrounding damages (reasonable royalties) and prior licenses (there are none), prior art, document production questions (collection, retention, production, etc.), Kove's first knowledge of infringement, any interaction between Kove and

[1] Courts have also made clear that the separate rules governing personal and corporate depositions cannot be used to justify duplicative questioning. *See Bison Advisors LLC v. Kessler*, No. 14-CV-3121, 2015 WL 4509158, at *2 (D. Minn. July 24, 2015) ("[A] separate deposition of a closely held corporation may not be appropriate where the testimony of the corporate representative would be identical to the testimony given in his or her individual capacity."); *see also Ball Corp. v. Air Tech of Mich., Inc.*, 329 F.R.D. 599, 603 (N.D. Ind. 2019) ("Requiring a corporate representative to testify as to [information covered in a 30(b)(1) deposition] would be unduly duplicative") (citation and quotations omitted).

[2] It also bears noting that Kove is putting up two 30(b)(6) witnesses beyond Dr. Overton (at least Mr. Poling), and AWS will have seven hours with each of them as well.

AWS, and perhaps the company's personnel (which are only six other people).[3] Fourteen hours is an extravagant amount of time to ask these questions for such a small company – indeed, with efficient deposition taking, they may very well be covered in seven hours. Kove can discern no reason for requiring 21 deposition hours at the outset beyond harassment of Dr. Overton.

Dr. Overton's critical role of CEO of a seven-person company underscores the unreasonableness of taking 21 hours of deposition testimony from him. The apex doctrine recognizes that high-level executives should be protected from unduly long depositions if, *inter alia*, sitting for the deposition would impose a hardship in light of the officer's other duties. *Little v. JB Pritzker for Governor*, No. 18-CV-6954, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020). With such a small company, Dr. Overton is critical to Kove's daily operations. As its CEO, he is deeply involved in the company's technical direction as well as the marketing, sales, and support of its sole product.[4] Taking three full days out of his duties, as AWS demands, would impose a specific and concrete hardship on Kove due to Dr. Overton's unique role within the company, including impeding Kove's ability to communicate with and respond to customers during business hours for three days, meet with and lead business development with potential customers, and oversee ongoing software development efforts.[5]

This Court recently held that even where high-ranking individuals with relevant personal knowledge must testify, it is nevertheless appropriate to put reasonable limits on their depositions to reduce burden. *DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, 2021 WL 3109662, *8 (N.D.

---

[3] Kove is not representing that Dr. Overton even has knowledge of these things – many he knows little or nothing about. While there may be other discrete topics, this is essentially the universe of what AWS may seek to confirm through questioning. These are routine areas of inquiry in a patent case, and given the small company, there simply is not that much to ask about.

[4] Ex. C (Overton Decl.) at ¶¶4-6.

[5] *Id.*

Ill., July 7, 2021) (imposing a limit of 3 hours on deposition of former Cook County prosecutor with relevant, unique personal knowledge, even though he no longer serves in an apex capacity).

AWS argues that because it has issued so many 30(b)(6) topics, it should be automatically awarded more time than required by the Federal Rules. In AWS's view, a party can evade Rule 30's time limits simply by issuing more topics. This hardly is the rule, affording parties the unilateral ability to extend deposition limits. That's particularly true here because many (more than a dozen) of AWS' topics are overlapping and duplicative. *See* Ex. A, attached to this brief.[6]

Taking into account the numerous redundancies, a more accurate number of relevant topics is somewhere in the range of 15-20, although even those would necessarily overlap with one another.[7] While mathematical precision is unnecessary, it bears noting that even liberally counting 20 non-duplicative topics, this is only 52% of the 38 topics AWS points to – applying that math, AWS should only need approximately 11 hours of deposition time (52% of 21 hours).

AWS also argues that because it put up multiple Rule 30(b)(6) designees, that entitles it to more deposition time with Kove designees. Again, the Rules hardly contemplate allowing a party a unilateral end run around Rule 30's time limits by putting up multiple witnesses, which only would lead to gamesmanship. And what AWS ignores is that the well-established rule is that if an entity designates multiple Rule 30(b)(6) witnesses, each witness can be deposed for up to seven hours. AWS chose to put up multiple witnesses, as was its right, but this does not establish good cause to increase the time limits in the Federal Rules. Moreover, AWS's accused products involve highly complex technology first developed approximately 15 years ago and which have been

[6] Kove identified these and other examples to AWS and asked it to withdraw duplicative topics. AWS refused. *See* Ex. B (06-16-2021 J. Cardenas-Navia Letter to J. Saltman); Ex. L (06-30-2021 E. Bernard Letter to J. Cardenas-Navia).

[7] *See* Ex. B (06-16-2021 J. Cardenas-Navia Letter to J. Saltman).

continuously modified and commercialized since. At a basic level, understanding AWS's business, the accused products, AWS's commercialization, product development, and finances is a significantly more complex undertaking than understanding Kove's seven-person shop. There are tens of thousands of relevant documents that have been touched in some relevant way by generations of engineers, sales, marketing, and finance people. It stands to reason that AWS's relevant knowledge is widely dispersed and that it chose to designate many witnesses as a result.

It bears noting that Kove has been living within the rules. For example, Kove deposed Mr. Sorenson for less than 14 hours – once as an AWS 30(b)(6) designee, and again in his personal capacity. Mr. Sorenson has 15 years of in-depth knowledge of both accused products, spanning design, development, training, marketing, sales, metrics, and customer interactions; he is also a single engineer among thousands, who would reasonably be expected to have personal knowledge separate and apart from AWS-the-corporation's. Despite this tremendous breadth of scope and the clear separation between personal and corporate knowledge, Kove did not seek more than 7 hours for either his 30(b)(6) deposition or 30(b)(1) deposition — Kove used only (actually less than) what the Rules expressly permit.

### B. Kove Conducted A Reasonable Investigation And Produced Documents As They Are Kept In The Ordinary Course Of Business

Kove has provided source identification information for its ESI and conducted a more than reasonable search for documents responsive to AWS's requests. It now wants more. As shown below, its requests are unjustified or moot.

#### 1. There Is No Additional Custodial Information For Documents Produced Under The "Kove" Custodial Tag

Of the approximately 33,000 documents Kove has produced in this litigation, 2,836 were

produced under the custodial tag "Kove."[8] AWS asserts that the tag is inappropriate because it does not comply with Rule 34(b)(2)(E)(i)'s requirement that documents be produced as "kept in the usual course of business" and that the tag obscures "where [the] documents came from and who prepared them." Mot. at 12. A breakdown of the documents produced with the "Kove" tag shows why AWS's complaint is baseless:

- ~ 25% of the documents are from Kove's internal "wiki"[9]
- ~ 25% are Amazon-owned patents that reference the three asserted Kove patents
- ~ 43% are miscellaneous documents collected by Kove's attorneys specifically for this litigation, including screenshots of AWS webpages and marketing materials,[10] publicly available articles about AWS,[11] publicly available documents cited in Kove's complaint,[12] archived versions of Econnectix's website collected at AWS's request,[13] and documents from the *inter partes* review of one of the patents-in-suit.[14]

This means AWS's complaint boils down to about 7% (or roughly 200) of the ~2,800 "Kove" documents. This is a very reasonable number of documents to attribute to a company for records that kept in the ordinary course of business. For example, check registers and profit and loss statements are corporate documents which identify "Kove" as the custodian.[15] *See* Ex. D (KOV_00062746); Ex. E (KOV_00063052).

---

[8] AWS's Motion says the 2,125 documents have "Kove" as their custodian (Mot. at 4); Kove believes the actual number is 2,836.

[9] Each document collected from the Kove wiki bears a stamp indicating that it was retrieved from "http://wiki.kove.net/." *See, e.g.*, Ex. K (KOV_00174230) (stating, "Retrieved from: http://wiki.kove.net/index.php?title=2008_Q2_XPD_Quality_Assurance_Enhancements&oldid=12144").

[10] KOV_00127902-KOV_00174157; KOV_00216849-KOV_00216902.

[11] KOV_00062166-KOV_00062364

[12] KOV_00179827-KOV_00184170.

[13] KOV_00176675-KOV_00179436.

[14] KOV_00057829-KOV_00060955.

[15] This is similar to AWS's productions, which tagged thousands of similar documents with "Amazon Web Services, Inc." or "Amazon" as the custodian, without providing any additional custodial information.

Thus, other than the "wiki" identifier, which is already present on the face of wiki-collected documents, there simply is no additional custodial information to provide for "Kove" tagged documents. But as the above breakdown explains, it's a simple exercise to differentiate among their origins.

**2. Kove Conducted Reasonable Searches As Required Under Rule 26**

Under the Local Patent Rules for Electronically Stored Information (LPR ESI) and Fed. R. Civ. P. 26, parties are required to conduct reasonable searches for responsive documents, including electronically stored documents. LPR ESI 1.3; Fed. R. Civ. P. 26(b). Kove diligently searched the locations in its possession, custody, or control that were reasonably likely to contain responsive and relevant information, including ESI belonging to identified custodians. Advisory Committee Notes, Fed. R. Civ. P. 26(g) (the "reasonable inquiry" requirement is met where the investigation undertaken is "reasonable under the circumstances"); *see also Moore v. Napolitano*, 723 F. Supp. 2d 167, 173 (D.D.C. 2010) (parties are obligated to make a "reasonable search"). AWS wants Kove to search each custodian's individual laptops as well, despite Kove's representations that it already searched relevant repositories, that individual laptops were not reasonably expected to contain relevant information, and that even if they did, it would be redundant of sources already searched. As detailed below, Kove confirmed that its searches were reasonable.



[16]



**3. AWS's Demand For Additional Custodian Searches Is Unwarranted, And In All Events, Is Now Moot**

AWS demands to know if Kove additionally searched individual custodian's devices for responsive non-email documents, namely those of John Overton, Stephen Bailey, Keith Connolly,

Andy Poling, and Brian Toonen.

Kove has already searched Dr. Overton's computer. For Bailey and Toonen, neither is a Kove employee, and Kove has no obligation (or right) to search their personal devices. *Davidson v. Schneider*, No. 10-CV-2101, 2013 WL 352669, at *3 (N.D. Ill. Jan. 22, 2013) (denying motion to compel production of documents held by third party former employee on grounds that documents were not in defendants' "possession, custody, or control.") (citations omitted). Kove did, however, search for and produce email ESI from Kove-affiliated email accounts that each had from their prior work.

That leaves Connolly and Poling. Both individuals (as all Kove employees are expected to do) routinely upload documents to SVN, which gets synced with Dr. Overton's computer. In searching Dr. Overton's computer (as well as Kove's wiki), Kove fulfilled its obligation of conducting a reasonable inquiry into repositories which could reasonably be expected to have relevant information. There was (and is) no need to additionally search Connolly's and Poling's machines. *See Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) ("there is 'no obligation' on the part of the responding party to examine every scrap of paper in its potentially voluminous files"). Kove also confirmed through custodial interviews that Connolly and Poling were not expected to have non-duplicative responsive documents, which aligns with the fact that both have minimal involvement with the underlying issues of the litigation, as Poling joined the company in 2007 and Connolly joined the company in 2014, many years after the patented technology was developed.[17]

[17] Indeed, because Kove has not been commercializing the technology of the patents-in-suit for the last 15 years, Kove employees other than Dr. Overton have little if any knowledge that is relevant to this lawsuit. The other inventor, Dr. Stephen Bailey, is not an employee of Kove. In response to subpoenas served by AWS, Dr. Bailey has already produced documents and had his deposition taken.

Additionally, with respect to Connolly, AWS asserts that documents relevant to the litigation must be stored on his laptop, pointing to statements from his deposition regarding "an NDA or a contract that was executed . . . if necessary, to reference."[18] But Connolly's testimony demonstrates the documents stored on his laptop are not unique – they are executed documents he keeps locally "for reference." Moreover, there is nothing to suggest that copies of these types of documents (NDAs and contracts unrelated to the patents in suit or any product that practices them) are even relevant to any issue in the case.

Kove recently searched Poling's and Connolly's laptops and confirmed its original belief that neither have unique, relevant information stored there. The search showed no non-duplicative documents from Poling. Connolly had 26 documents, 17 of which were created in 2020 and 2021, meaning they did not exist when Kove conducted its original search; the other 9 are cumulative of documents already in AWS's possession (and are of questionable relevance to any issue in this case). Kove is preparing the documents for production. There is nothing left to compel.

## IV. CONCLUSION

Kove respectfully requests that the Court deny AWS's motion to depose Dr. Overton for up to 3 days and deny AWS's motion to compel Kove to search the files of its e-mail custodians as moot in view of Kove's search and expected production.

[18] Ex. F (Connolly Tr. at 44:14-20).

Dated: October 7, 2021

Respectfully submitted,

*Khue Hoang*

Renato Mariotti (State Bar No. 6323198)
rmariotti@thompsoncoburn.com
Holly H. Campbell (State Bar No. 6320395)
hcampbell@thompsoncoburn.com
THOMPSON COBURN LLP
55 E. Monroe St., 37th Floor
Chicago, IL 60603
Telephone: (312) 346-7500
Facsimile: (312) 580-2201

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard (Identification No. 155188)
sballard@reichmanjorgensen.com
Kate M. Falkenstien *(pro hac vice)*
kfalkenstien@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
Michael W. Marvin *(pro hac vice)*
mmarvin@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
750 Third Avenue, Suite 2400
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 623-1449

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com
Phil Eklem (*pro hac vice*)
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
1710 Rhode Island Ave, NW, 12th Floor
Telephone: (202) 894-7310
Facsimile: (650) 623-1449

**ATTORNEYS FOR PLAINTIFF KOVE IO, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of October 2021, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*Khue Hoang*
Khue Hoang