**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Kove IO, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Amazon Web Services, Inc.,<br><br>Defendant. | Civil Action No. 1:18-cv-08175<br><br>Hon. Rebecca R. Pallmeyer<br>Hon. Sheila M. Finnegan<br>Magistrate Judge<br><br>Jury Trial Demanded |

**KOVE IO, INC.'S RESPONSE TO AWS'S MOTION FOR PROTECTIVE ORDER REGARDING 30(b)(6) TOPIC NOS. 84-85 AND 87-88 AND REQUESTS FOR PRODUCTION NOS. 219-21 AND 223-26**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. The SimpleDB Requests Are Central To Kove's Damages Theory. ........ 3

B. Kove's Rule 30(b)(6) Topic Regarding AWS's Relationship With Amazon.com Seeks Information Directly Relevant To Damages And Is Proportional To The Case. ........ 6

C. AWS Is Required To Search Its Key Document Archive ........ 10

III. CONCLUSION ........ 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Apotex, Inc. v. Mylan Pharms., Inc.*,
No. 12-cv-60704, 2013 WL 8184264 (S.D. Fla. June 4, 2013)....5

*Aqua Shield v. Inter Pool Cover Team*,
774 F.3d 766 (Fed. Cir. 2014)....3

*Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*,
231 F.R.D. 426, 428, 430 (N.D. Ga. 2005)....9

*Baxter Int'l, Inc. v. Becton, Dickinson & Co.*,
No. 17-cv-7576, 2020 WL 424918 (N.D. Ill. Jan. 27, 2020)....5

*Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*,
318 F. Supp. 1116 (S.D.N.Y. 1970)....7, 8

*Gross v. Lunduski*,
304 F.R.D. 136 (W.D.N.Y. 2014)....11

*Homeland Ins. Co. of New York v. Health Care Serv. Corp.*,
No. 18-cv-6306, 2021 WL 601672 (N.D. Ill. Feb. 16, 2021)....10

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011)....7

*Invensas Corp. v. Renesas Elecs. Corp.*,
287 F.R.D. 273 (D. Del. 2012)....5

*Jenkins v. White Castle Mgmt. Co.*,
No. 12-cv-7273, 2014 WL 3809763 (N.D. Ill. Aug. 4, 2014)....2

*Katz v. Batavia Marine & Sporting Supplies, Inc.*,
984 F.2d 422 (Fed.Cir.1993)....4

*Loggerhead Tools, LLC v. Sears Holdings Corp.*,
No. 12-cv-9033, 2016 WL 5080034 (N.D. Ill. Sept. 20, 2016)....14

*Lymon v. Chamberlain*,
No. 17-cv-50093, 2020 WL 6940985 (N.D. Ill. Nov. 24, 2020)....2

*MGA Ent., Inc. v. Nat'l Prods. Ltd.*,
No. 10-cv-07083, 2012 WL 12886446 (C.D. Cal. Jan. 26, 2012)....11

*Murata Mfg. Co. v. Bel Fuse, Inc.*,
422 F. Supp. 2d 934 (N.D. Ill. 2006) ........ 2, 4

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ........ 5

*Putco, Inc. v. Carjamz Com Inc.*,
No. 20-cv-50109, 2021 WL 492902 (N.D. Ill. Feb. 10, 2021) ........ 3, 6

*Sanders v. Quicktrip Corp.*,
378 F. Supp. 3d 1177 (N.D. Ga. 2019) ........ 9

*Schaap v. Exec. Indus., Inc.*,
130 F.R.D. 384 (N.D. Ill. 1990) ........ 2

*Street v. Ingalls*,
No. 06-cv-2963, 2007 WL 9813345 (N.D. Ill. July 5, 2007) ........ 2

*In re Watts Coordinated Pretrial Proceedings*,
No. 19-cv-1717, 2020 WL 7398789 (N.D. Ill. Dec. 17, 2020) ........ 2, 3

**Rules**

Fed. R. Civ. P. 26(c)(1) ........ 10

Rule 2.6 ........ 14

Rule 2.6(d) ........ 15

Rule 26 ........ 2, 14

Rule 30(b)(6) ........ 1, 6

Rule 33 ........ 11

Rule 34 ........ 11

Rule 45 ........ 9

## TABLE OF EXHIBITS

| **Exhibit Label** | **Description** |
|---|---|
| Exhibit A | DynamoDB P&L Statement (AMZ_KOVE_000463914) |
| Exhibit B | Amazon S3 P&L Statement (AMZ_KOVE_000463920) |
| Exhibit C | [redacted] (AMZ_KOVE_000237880) |
| Exhibit D | [redacted] (AMZ_KOVE_000466810) |
| Exhibit E | 2/27/17 e-mail from E. Karulf to J. Mooney (AMZ_KOVE_000273229) |
| Exhibit F | Document Sent by BCC to [redacted] Archive (AMZ_KOVE_000235956) |
| Exhibit G | Draft Blog Post from W. Vogels Announcing DynamoDB (AMZ_KOVE_000452063) |
| Exhibit H | Notes from 12/7/2004 Meeting Between Jeff Bezos, Andy Jassy, and Other Amazon Employees (AMZ_KOVE_000444305) |
| Exhibit I | Forbes Interview with Andy Jassy (AMZ_KOVE_000375531) |
| Exhibit J | Document Sent to the [redacted] Archive Directory (AMZ_KOVE_000091297) |
| Exhibit K | Wiki Titled [redacted] (AMZ_KOVE_000070227) |
| Exhibit L | Document Sent to the [redacted] Archive Directory (AMZ_KOVE_000094196) |
| Exhibit M | Document Sent to the [redacted] Archive Directory (AMZ_KOVE_000225238) |
| Exhibit N | Report Sent to [redacted] Archive Directory (AMZ_KOVE_000479160) |
| Exhibit O | Promotion Request Summary Form for Seth Markle (AMZ_KOVE_000236440) |
| Exhibit P | Document Sent to the [redacted] Archive Direcotry (AMZ_KOVE_000091828) |
| Exhibit Q | Document Sent to [redacted] Archive Directory (AMZ_KOVE_000460874) |
| Exhibit R | Report Sent to the [redacted] Archive Directory (AMZ_KOVE_000225251) |
| Exhibit S | Report Sent to the [redacted] Archive Directory (AMZ_KOVE_000267262) |
| Exhibit T | Report Sent to [redacted] Archive Directory (AMZ_KOVE_000466876) |
| Exhibit U | Document Set to the [redacted] Archive Directory (AMZ_KOVE_000226733) |
| Exhibit V | Wiki Titled [redacted] (AMZ_KOVE_000068468) |
| Exhibit W | Wiki Titled [redacted] (AMZ_KOVE_000012822) |

| | |
|---|---|
| Exhibit X | Wiki Titled [redacted] (AMZ_KOVE_000086745) |
| Exhibit Y | Wiki Titled [redacted] (AMZ_KOVE_000074340) |
| Exhibit Z | Wiki Titled [redacted] (AMZ_KOVE_000065925) |
| Exhibit AA | Wiki Titled [redacted] (AMZ_KOVE_000071210) |
| Exhibit AB | Wiki Titled [redacted] (AMZ_KOVE_000435749) |
| Exhibit AC | [redacted] (AMZ_KOVE_000448440) |
| Exhibit AD | [redacted] (AMZ_KOVE_000460869) |
| Exhibit AE | Excerpts from Donal Walsh Deposition Transcript (August 25, 2021) |
| Exhibit AF | 5/18/21 Letter from Kove to AWS |
| Exhibit AG | 5/7/21 Letter from Kove to AWS |
| Exhibit AH | Amazon.com, Inc.'s Response to Kove Subpoena |

## I. INTRODUCTION

Kove seeks certain categories of evidence that are highly relevant to the claims in this case. AWS refuses to produce this information, and has not made any particular and specific demonstration of fact showing undue burden, as required by the case law.

*First*, AWS categorically refuses discovery into SimpleDB, a predecessor to the accused DynamoDB. SimpleDB is relevant as a non-infringing alternative in Kove's damages analysis.

*Second*, AWS opposes a Rule 30(b)(6) deposition topic on AWS's relationship with its affiliate Amazon.com. Amazon.com is among the largest customers of AWS's accused products. Sales to Amazon.com, and profit on those sales, is directly relevant to damages, as are the benefits the two companies receive from the patented invention in light of AWS's discounting of prices to Amazon.com. Further, Amazon.com's involvement in the development of the accused products is directly relevant to infringement, intent, and willfulness. It appears that Amazon.com even created some or all of the accused products prior to the creation of the AWS entity; thus, the relationship between the companies informs the hypothetical negotiation and the reasonable royalty analysis.

*Third*, AWS refuses to search for responsive documents in an archive Kove recently discovered. Kove learned through discovery that AWS maintains an archive system to preserve specific, topic-oriented documents directly relevant to this case, and to store key metrics relating to the accused products, including data that AWS seemingly has failed to preserve elsewhere. The archives include highly relevant, specific directories with titles that directly bear on the claims in this case.

AWS makes conclusory allegations of burden, but fails to make the particularized showing of burden required by the case law. Instead, it characterizes the discovery Kove seeks as "new," "late," and "recent." But the facts show that Kove has long sought the information at issue. Instead of being forthcoming with the requested discovery, AWS has for months to obfuscated and dragged its feet, forcing Kove to continually revisit old requests to address gaps in AWS's productions. When possible,

Kove tried to assist the process by updating its requests with information learned from AWS's own productions, adding details that would more precisely articulate the information sought. None of the three subject areas addressed in AWS's Motion warrant the extreme relief of categorically denying Kove discovery on key evidence for its claims. Kove respectfully requests an order denying AWS's motion for protective order and compelling the requested productions.

## II. ARGUMENT

The parties conferred on the procedure for presenting these disputes so as to reduce the burden on the Court. Rather than Kove filing a motion to compel and AWS a mirror image motion for protective order, the parties agreed to consolidate their positions into one set of briefs in the context of AWS' motion for protective order. The present Response is both Kove's reciprocal response to AWS' motion and Kove's request that AWS be compelled to produce the information identified herein.

The party objecting to discovery – here, AWS – bears "the burden of showing why a particular discovery request is improper." *Street v. Ingalls*, No. 06-cv-2963, 2007 WL 9813345, at *2 (N.D. Ill. July 5, 2007) (citation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning are insufficient." *In re Watts Coordinated Pretrial Proceedings*, No. 19-cv-1717, 2020 WL 7398789, at *3 (N.D. Ill. Dec. 17, 2020) (Finnegan, M.J.) (quotation omitted).

Rule 26 allows discovery of all information relevant and proportional to the claims and defenses in a case. *Lymon v. Chamberlain*, No. 17-cv-50093, 2020 WL 6940985, at *2 (N.D. Ill. Nov. 24, 2020). Relevance is construed broadly, *Murata Mfg. Co. v. Bel Fuse, Inc.*, 422 F. Supp. 2d 934, 945 (N.D. Ill. 2006), and relevant discovery cannot be avoided with "general assertions of undue hardship." *Schaap v. Exec. Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990); *see also Jenkins v. White Castle Mgmt. Co.*, No. 12-cv-7273, 2014 WL 3809763, at *2 (N.D. Ill. Aug. 4, 2014) ("A party claiming undue burden must do more than intone the phrase," and may not avoid "comply[ing] with discovery requests that involve anything other than the slightest effort."). Instead, "[t]he party seeking

the protective order must show good cause by making a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Putco, Inc. v. Carjamz Com Inc.*, No. 20-cv-50109, 2021 WL 492902, at *1 (N.D. Ill. Feb. 10, 2021) (citation omitted); *see also In re Watts Coordinated Pretrial Proceedings*, *supra* *3.

**A. The SimpleDB Requests Are Central To Kove's Damages Theory.**

Kove seeks discovery on a product called SimpleDB because it is a non-infringing alternative. SimpleDB is a predecessor of DynamoDB,[1] a product accused of infringing Kove's patents in this case. Key benefits of DynamoDB enabled by the patented technology include its abilities to scale ("scalability"), serve requests at high speeds (a lack of "latency"), and remain online ("availability").[2] A reasonable royalty for damages may be based on the incremental benefit to AWS of the patented invention over a non-infringing alternative. *See Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770, 772 (Fed. Cir. 2014). That is, if not for the patented invention, what could AWS have used, and what would be the profitability difference to AWS if it used that non-infringing alternative?

SimpleDB is one such non-infringing alternative.[3] SimpleDB has similar functionality to DynamoDB, but without the benefits of the patented invention. For example, [REDACTED] Because scalability is a feature enabled by the patented invention, comparing DynamoDB's scalability against SimpleDB's will provide important information regarding how the patented technology benefits DynamoDB. Relatedly, in order to

[1] [REDACTED]

[2] *See* https://aws.amazon.com/dynamodb/. Scalability, latency, and availability are intertwined.

[3] Kove's understanding at this point is that SimpleDB does not infringe.

[4] [REDACTED]

understand what value (*i.e.*, what portion of DynamoDB's profitability) is fairly attributable to its ability to scale, Kove needs relevant cost, revenue, and usage information for SimpleDB.

Kove seeks information sufficient to show the comparative benefits and drawbacks of SimpleDB versus DynamoDB, from both a technical and financial perspective.[5] For this comparison, Kove seeks documents regarding SimpleDB's architecture and operation (RFP 220) and the speed with which SimpleDB can perform specific tasks (RFP 223). Kove also seeks information sufficient to show comparative profitability between SimpleDB and DynamoDB, including information regarding SimpleDB's pricing, revenue, costs, and usage data (RFP 221); information sufficient to understand how pricing was determined (RFP 225); costs associated with SimpleDB's index system, retrieval of information, and associated hardware (RFP 224); and cost modeling (RFP 226). Kove's corresponding 30(b)(6) topics seek testimony covering similar information.[6]

AWS contends that because SimpleDB has not been accused of infringement, it is *per se* irrelevant and immune from discovery.[7] To the contrary, although infringement is one issue in this case, damages are of course another. And SimpleDB is highly relevant to damages. "Patent infringement cases are not exceptions to the rule that discovery is liberal and relevancy is broadly construed." *Murata*, 422 F. Supp. 2d at 945 (N.D. Ill. 2006) (citing *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed.Cir.1993)). Kove's requests for technical and pricing information on SimpleDB are directly relevant to Kove's reasonable royalty analysis, in which it seeks to determine the incremental benefits of the patented invention (in DynamoDB) over a non-infringing alternative

---

[5] The information and requests at issue in this motion overlap in part with Kove's Motion to Compel regarding predecessor products, in which Kove seeks information regarding the connection between SimpleDB and DynamoDB. (Dkt. 409 at 11-15.) The current motion relates to RFPs 220-221 and 223-226 and Kove 30(b)(6) topics 87 and 88, which were not at issue in the prior motion.

[6] Kove's corresponding 30(b)(6) topics seek information on the "design, architecture, implementation, operation, and performance" of SimpleDB, in particular with regards to "scalability, latency, availability, and data durability," (Topic 87), and "[t]he costs and pricing" of the product. (Topic 88).

[7] *See* Dkt. 397 at 5.

(SimpleDB). There is no way to do this analysis without discovery into SimpleDB. *See Baxter Int'l, Inc. v. Becton, Dickinson & Co.*, No. 17-cv-7576, 2020 WL 424918, at *6 (N.D. Ill. Jan. 27, 2020) (discovery into non-infringing alternatives is relevant to a reasonable royalty analysis); *Apotex, Inc. v. Mylan Pharms., Inc.,* No. 12-cv-60704, 2013 WL 8184264, at *4 (S.D. Fla. June 4, 2013) ("Plaintiffs are entitled to discovery on unaccused products . . . where the 'information sought is otherwise relevant to issues in the case.'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978)).

AWS misapplies the standard for relevance, citing a three-part test to determine if a plaintiff is entitled to discovery *on infringement*.[8] This test is inapposite as Kove is not seeking this discovery to prove infringement.[9] Rather, the requested information is directly relevant to Kove's damages case.

Finally, AWS asserts that producing the requested information would be unduly burdensome. As a threshold matter, AWS's argument assumes that Kove is seeking information on five or six potential non-infringing alternatives, which broadly are called NoSQL products.[10] Kove is not – it only seeks discovery as to SimpleDB (one of the NoSQL products). While Kove initially sought broader discovery as to the other NoSQL products, in a good faith effort to narrow its requests and reduce the burden on AWS, it has narrowed its requests to just SimpleDB.

Production of the requested information about SimpleDB would not impose an undue burden on AWS, and is proportional to the needs of the case because it is central to Kove's damages analysis. AWS appears to maintain information of the type directly relevant to Kove's requests for the accused products (as evidenced by its productions). Presumably, the same information is available for

---

[8] *See* Dkt. 397 at 8 (citing *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 282 (D. Del. 2012)).

[9] Nevertheless, Kove can meet the three-prong test. Namely, (1) the information is relevant to Kove's damages assessment for all of the reasons explained *supra*; (2) this information cannot be obtained publicly because it concerns designs of proprietary AWS products; and (3) the burden on AWS to search for and produce the information is reasonable, as explained *infra*. *Invensas*, 287 F.R.D. at 282.

[10] NoSQL refers to the way a database is structured, and specifically refers to database products that use a nonrelational data model. *See, e.g.*, https://aws.amazon.com/nosql/.

SimpleDB. For example, AWS's productions show it maintains profit and loss statements by product,[11] including pricing, revenue, costs, and usage, as well as "costs of development." AWS has also [REDACTED] that show the architecture, implementation, operation of products. There is no discernable reason (and AWS offers none) why the same cannot be done for SimpleDB or why doing so would be unduly burdensome. AWS has failed to come forward with any particular and specific demonstration of fact showing undue burden, instead offering merely stereotyped and conclusory statements. *See Putco,* 2021 WL 492902, at *1.

Accordingly, Kove respectfully requests that AWS be ordered to produce documents and information relating to Kove's SimpleDB requests, *i.e.*, Kove's RFP Nos. 220-221 and 223-226, and Kove's 30(b)(6) Topic Nos. 87-88.

**B. Kove's Rule 30(b)(6) Topic Regarding AWS's Relationship With Amazon.com Seeks Information Directly Relevant To Damages And Is Proportional To The Case.**

AWS objects to providing a Rule 30(b)(6) witness on Kove's Topic 85, which seeks information relating to the relationship between AWS and Amazon.com, Inc.[12] This relationship is relevant and important because [REDACTED] Information about that relationship is relevant to damages and the determination of the reasonable royalty rate, as it speaks to the prices, revenue, and

[11] Ex. A (AMZ_KOVE_000463914) (DynamoDB P&L); Ex. B (AMZ_KOVE_000463920) (S3 P&L).

[12] Specifically, Topic 85 seeks the following information:

> The operational, financial, and managerial relationship between AWS and Amazon.com, Inc., including the corporate structure of each, the management structure of each, including any overlapping directors, officers, or employees between AWS and Amazon.com, Inc., any policies and procedures concerning the sharing of documents or information between AWS and Amazon.com, Inc., and Amazon.com, Inc.'s involvement in this litigation.

[REDACTED]



profitability obtained from Amazon.com for the accused products. [redacted] Those benefits are part of the value of the patented inventions. Indeed, the *Georgia Pacific*[15] factors examine "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity," "the benefits to those who have used the invention," and "the amount which a prudent licensee . . . would have been willing to pay as a royalty and yet be able to make a reasonable profit." *Georgia-Pac.*, 318 F. Supp. at 1120.

[redacted]

[redacted]

15 *Georgia-Pac. Corp. v. U.S. Plywood Corp.* provides an established methodology for determining damages, including 15 factors for assessment. 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971); *see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ("We have consistently upheld experts' use of a hypothetical negotiation and *Georgia–Pacific* factors for estimating a reasonable royalty.").

16 [redacted] Dkt. 405 Ex. 15 (AMZ_KOVE_000106253) at 1, 3.

17 Dkt. 405 Ex. 15 (AMZ_KOVE_000106253) at 1.

18 Dkt. 405 Ex. 15 (AMZ_KOVE_000106253) at 3; *see also id.* [redacted] (*see* https://www.linkedin.com/in/charlie--bell)).

19 *Id.* at 3 (emphasis added).



[redacted]

[redacted] *See Georgia-Pac.*, 318 F. Supp. at 1120 (Factor 9, "The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results."). [redacted] It is Kove's understanding that Amazon.com directed the initial development and marketing of the accused products, which necessarily informs how AWS would have valued the patented technology at or near the time of the hypothetical negotiation in 2006 (the year of its formation).

---

[20] The [redacted] alone are not a sufficient substitute for the documents sought in Kove's pending Motion regarding financial information. *See* Dkt. 405 at 10. However, information about [redacted] is central to Topic 85, which seeks testimony about the relationship between AWS and Amazon.com. [redacted] and how they are calculated is evidence of the complexity of its relationship with Amazon.com in terms of finances, resource sharing, and shared objectives.

[21] *See, e.g.*, Ex. F (AMZ_KOVE_000235956) at 1 [redacted]

AWS asserts that Kove's Topic 85 "seeks unrelated information about Amazon.com," and claims that the topic seeks "broad discovery . . . regarding [a] non-part[y]." Dkt. 397 at 10. As a threshold matter, Kove seeks information in AWS's possession, custody, or control. [redacted]

Neither of AWS's cases support blocking discovery into its relationship with Amazon.com. The court in *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.* granted a protective order as to "the non-parties' finances" for purposes of "determin[ing] whether the non-parties should be added to the law suit as real parties in interest," but it *permitted* the plaintiff "to conduct discovery of the non-parties' corporate structure, corporate governance, and the relationship of the corporations to Defendants." 231 F.R.D. 426, 428, 430 (N.D. Ga. 2005). The court in *Sanders v. Quicktrip Corp.* granted a protective order because it found discovery into "incidents" at other locations was legally "irrelevant" to the defendant's knowledge of a dangerous condition at the location at issue. 378 F. Supp. 3d 1177, 1183–84 (N.D. Ga. 2019). No similar facts exist here.

AWS fails to show that preparing a witness on Topic 85 would be unduly burdensome. Kove has been clear that it will work with AWS to narrow this topic so as to make it more concrete and manageable. Kove seeks information such as how AWS and Amazon arrived at their pricing; the information underlying the "six-pager" memo in which Jassy—who was eventually named AWS CEO—justified the formation of AWS; investments by Amazon.com and the use of its personnel and other resources to develop, market, analyze, price, and sell the accused products; resources provided

[redacted]

by Amazon.com to launch AWS and the accused products. This type of information is directly relevant to the development, sales, profits, and other benefits derived from the accused products. AWS has articulated no particularized burden of producing such information. *Homeland Ins. Co. of New York v. Health Care Serv. Corp.*, No. 18-cv-6306, 2021 WL 601672, at *2 (N.D. Ill. Feb. 16, 2021) ("But the governing standard is '*undue* burden or expense,' . . . .") (quoting Fed. R. Civ. P. 26(c)(1)) (emphasis in original). AWS's assertion that preparing a witness would require conversations with "teams for AWS's 200 services" greatly overstates what is reasonably necessary—Kove seeks, and has always sought, information relevant to the accused products (*i.e.*, S3 and DynamoDB). (Dkt. 397 at 11.)

Lastly, AWS suggests that Topic 85 is duplicative of Topic 33. But Topic 85 addresses particular aspects of AWS's "operational, financial, and managerial relationship" with Amazon.com not addressed in Topic 33, which addresses AWS's "founding, history, current and past corporate organization structure, and relation to Amazon.com, Inc. and other Amazon.com, Inc. subsidiaries."[26]

**C. AWS Is Required To Search Its Key Document Archive.**

Kove learned through discovery that AWS maintains an archive of key documents relating to the accused products (the "List Archive"). Internal documentation on those products extends across several teams, components, and areas of expertise.[27] AWS uses its List Archive to help its employees filter, find, and store information, including information highly germane to issues in this case.[28] Parties to litigation are required to search in places they reasonably expect to find documents and information in response to Rule 34 document requests and Rule 33 interrogatories. *MGA Entm't, Inc. v. Nat'l Prods.*

[26] Kove's pending motion to compel (Dkt. 405) seeks different information than Topic 85, which seeks information about the AWS/Amazon.com relationship, as relevant to AWS's valuation of the accused products.

[27] *See* Dkt. 403 at 4.

*Ltd.*, No. 10-cv-07083, 2012 WL 12886446, at *2 (C.D. Cal. Jan. 26, 2012) ("[I]t is . . . well settled that a party responding to a discovery request has a duty to make a reasonable search of <u>all</u> sources reasonably likely to contain responsive documents.") (quotation omitted); *Gross v. Lunduski*, 304 F.R.D. 136, 163 (W.D.N.Y. 2014) (same). Kove simply asks that AWS provide information about its List Archive and search its relevant directories. AWS refuses.

The directories in AWS's List Archive are hyper-specific. AWS maintains List Archive directories on particular infringing components, specific benefits attributable to the patented invention, marketing efforts regarding the accused products, and product metrics, among other things. [redacted] AWS maintains similar List Archive [redacted] AWS also has List Archive directories that relate to specific benefits attributable to the patented invention, including directories dedicated to [redacted][1] Similar examples abound with respect to other issues at the core of this litigation, including directories that relate specifically to AWS's internal usage, marketing, finances, and metrics relating to the accused products.[32]

[29] Ex. J (AMZ_KOVE_00091297).

[redacted]

AWS uses its List Archive as a reference source. AWS training materials show that the List Archive is treated like Wikis, and AWS instructs its engineers to search both sources when looking for technical information.[33] The significance of the List Archive is underscored by the fact that [redacted] The produced Wikis contain myriad instances of AWS engineers using the List Archive as a reference source.

AWS also uses its List Archive to store metrics and reports relating to the accused products, including regular and automatic reports. For example, [redacted]

AWS's List Archive is especially significant in connection with metrics. [redacted]

---

[redacted]

[redacted] If that same usage and performance data is preserved in its List Archive, a serious spoliation issue may be avoided.

AWS cannot deny the List Archive contains relevant information. Instead, it categorically refuses to search this location on the grounds that such search and production are not required by the Local ESI Rules.[41] LPR ESI 2.6 provides a procedure for production of emails, and requires a specific email production request. Such requests include such things as email custodians to search.

The archive here is different. AWS employees submit documents to the List Archive directories via email, but only after concluding their submission warrants inclusion in the archive at all – and once the transmittal email is sent, the relevant documents are stored in a searchable archive system, separate and apart from the system used to store personal correspondence. Using an analogy, the List Archive is the electronic equivalent of a physical folder—AWS has printed key documents (emails and other documents) and placed them in a folder by topic. AWS now refuses to search those folders because they contain emails.

AWS's List Archive is not akin to a traditional email repository – it is more like a folder that has database search functionality (making it even easier to search), as evidenced by the fact AWS uses the List Archive in the same way it uses the Wiki system. Like Wikis (and unlike emails), the List Archive is open to all employees. Also like Wikis (and unlike emails), List Archive documents can be linked, shared, referenced, and stored. That information in the List Archive may have, at one point, been sent via email does not shield the Archive from discovery, nor does it transform the Archive into

---

[redacted]

[40] Kove filed this lawsuit in 2018, but AWS did not collect metrics or data until 2021. Thus, the data AWS has produced extends back to 2016 (with a few items of summary data dating back to Q4 2015). Had AWS properly issued and enforced a litigation hold, it would have had metrics dating back to 2013.

[41] *E.g.*, Ex. AF (5/18/21 Letter from Kove to AWS) at 2; Ex. AG (5/7/21 Letter from Kove to AWS) at 8-9.

a custodial email account subject to LPR ESI 2.6. *See Loggerhead Tools, LLC v. Sears Holdings Corp.*, No. 12-cv-9033, 2016 WL 5080034, at *2 (N.D. Ill. Sept. 20, 2016) ("That the spreadsheets may have been included in emails does not relieve Sears of their duty to produce responsive discovery under Rule 26.").

The rationale underlying Rule 2.6 does not apply to archives. As a threshold matter, the ESI rules make clear that they are intended to "supplement all other discovery rules and orders." LPR ESI 1.1. Rule 2.6 imposes special rules for email discovery because emails tend to be difficult to collect and only a small fraction of emails will be relevant to the disputed issues. Neither rationale applies here. There is little or no burden associated with collecting List Archive documents, since AWS has already preserved and indexed them. The only effort would be identifying which directories are relevant to this litigation – a task that Kove volunteered to assist with, if provided information on the directories AWS maintains.[42] For similar reasons, the process of reviewing the Archive does not impose much burden, as it is already organized by topic.

Rule 2.6 is designed to govern the collection of emails from individual accounts, rather than archives more generally.[43] It therefore requires email production requests to specify a particular custodian. But AWS's List Archive is *non-custodial* and does not belong to any individual. Custodial email accounts tend to cover a wide range of issues and require parties to use specific search terms to isolate the small fraction of relevant emails from the chaff. The fact that [REDACTED] means that the documents included in a particular directory (i.e., sent to a particular list) necessarily relate to the subject of that directory.

At this point, AWS categorically opposes any search of its List Archive for responsive

[42] Kove has already identified several lists that seem to relate directly to issues implicated by this litigation. Given the specificity of these lists, it is likely that there are several additional lists with relevant information.

[43] Because AWS did not disclose its List Archive as a source of information, the parties never discussed potential methodologies for identifying documents in it pursuant to LPR ESI 2.4.

documents. That refusal is the issue presented by this motion practice – whether LPR ESI 2.6 eliminates the obligation to search for responsive documents in AWS' List Archive. If, as Kove contends, it does not, then Kove has offered to work with AWS to develop a methodology of searching the Archive to reduce any burden. For example, if AWS produces information about the topics of the archive directories, Kove could target searches of them. At this point, however, AWS refuses to even produce information *about* the List Archive.[44] Once the appropriate directories are identified, all of Kove's document requests would be applicable to them, or if helpful, key word searches can be performed. While Kove does not believe LPR ESI 2.6 applies to the List Archive, in all events, the List Archive could be considered a "custodian" and searched with the search terms already provided.[45] At this point, however, AWS refuses to even produce information *about* the List Archive.[46]

Accordingly, Kove respectfully requests that the Court (1) order AWS to search its List Archive for documents responsive to Kove's RFPs, (2) order AWS to search for documents responsive to Kove RFP 219, and (3) deny AWS's motion for a protective order with respect to Topic 84. Kove will work with AWS to target the appropriate archive directories after receiving information about the directory subject matters.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Kove respectfully requests that the Court deny AWS's Motion for Protective Order and order AWS to produce the requested information.

---

[45] Under Rule 2.6(d), the Court may authorize up to ten email custodians. Kove has served requests for eight custodians, but has only received emails in connection with four custodians (AWS refused to produce emails in connection with the remaining requests). Thus, if authorized, this would be Kove's ninth e-mail request.

[46] Dkt. 397-10 at 19 (Kove RFP 219); Dkt. 397-7 at 6 (Topic 84).

Dated: October 7, 2021

Respectfully submitted,

*/s/ Khue V. Hoang*

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
Michael W. Marvin *(pro hac vice)*
mmarvin@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
750 Third Avenue, Suite 2400
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 623-1449

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com
Phil Eklem (*pro hac vice*)
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
1710 Rhode Island Ave, NW, 12th Floor
Telephone: (202) 894-7310
Facsimile: (650) 623-1449

Renato Mariotti (State Bar No. 6323198)
rmariotti@thompsoncoburn.com
Holly H. Campbell (State Bar No. 6320395)
hcampbell@thompsoncoburn.com
THOMPSON COBURN LLP
55 E. Monroe St., 37th Floor
Chicago, IL 60603
Telephone: (312) 346-7500
Facsimile: (312) 580-2201

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard (Identification No. 155188)
sballard@reichmanjorgensen.com
Kate M. Falkenstien *(pro hac vice)*
kfalkenstien@reichmanjorgensen.com
Taylor N. Mauze *(pro hac vice)*
tmauze@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

**ATTORNEYS FOR PLAINTIFF KOVE IO, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of October, 2021, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Khue V. Hoang*
Khue Hoang