**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| KOVE IO, INC., | |
| *Plaintiff,* | Case No. 1:18-cv-8175 |
| v. | |
| AMAZON WEB SERVICES, INC., | |
| *Defendant.* | |

## AWS'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER REGARDING 30(b)(6) TOPIC NOS. 84-85 AND 87-88 AND REQUESTS FOR PRODUCTION 219-21 AND 223-26 (DKT. NO. 397)

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (*pro hac vice pending*)
*lisa.phillips@fischllp.com*
Adam A. Allgood (*pro hac vice*)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

**TABLE OF CONTENTS**

I.    INTRODUCTION.................................................................................................1

II.   ARGUMENT .....................................................................................................3

      A.    Kove Isn't Entitled to Sweeping Discovery on the Non-accused SimpleDB
            Service....................................................................................................3

      B.    Kove's Requests Regarding the Relationship between AWS and Amazon.com
            aren't Tethered to Topic No. 85. ..................................................................7

      C.    Kove's Request to Collect Documents from Hundreds of Email Distribution Lists
            is Overbroad and Contrary to the Local Rules .............................................. 10

III.  CONCLUSION ............................................................................................... 15

i

# TABLE OF AUTHORITIES

**Cases**

*Apotex, Inc. v. Mylan Pharms., Inc.*,
    No. 12-607040-CIV, 2013 WL 818264 (S.D. Fla. June 14, 2013) ............................................. 5

*Asus Comp. Int'l v. Micron Tech. Inc.*,
    No. 14-cv-00275, 2014 WL 12625461 (N.D. Cal. Apr. 21, 2014) ....................................... 8, 10

*Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*,
    231 F.R.D. 426 (M.D. Fla. 2005) ................................................................................................. 9

*Baxter Int'l, Inc. v. Becton, Dickinson, & Co.*,
    No. 17-cv-7576, 2020 WL 424918 (N.D. Ill. Jan. 27, 2020) ....................................................... 6

*Castillon v. Corrections Corp. of Am., Inc.*,
    No. 1:12-cv-00559, 2014 WL 517505 (D. Idaho Feb. 7, 2014) ....................................... 2, 8, 12

*EEOC v. Doherty Group*,
    No. 14-cv-81184, 2017 WL 878705 (S.D. Fla. Feb. 28, 2017) .............................................. 8, 12

*First Nat. Bank of Okla. v. Bank of Am.*,
    No. CIV-09-172, 2009 WL 2997048 (W.D. Okla. Sept. 15, 2009) .......................................... 11

*Gross v. Chapman*,
    No. 19 C 2743, 2020 WL 4336062 (N.D. Ill. July 28, 2020) .................................................... 11

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
    No. 12-cv-03844, 2014 WL 4593338 (N.D. Cal. Sept. 15, 2014) ............................................... 5

*Invensas Corp. v. Renesas Elecs. Corp.*,
    287 F.R.D. 273 (D. Del. 2012) ..................................................................................................... 5

*Lowe v. CVS Pharmacy, Inc.*,
    No. 14 C 3687, 2016 WL 9185324 (N.D. Ill. May 23, 2016) ............................................... 8, 10

*Lukis v. Whitepages, Inc.*,
    No. 19 C 4871, 2021 WL 1600194 (N.D. Ill. Apr. 23, 2021) ............................................... 8, 10

*Murata Mfg. Co. v. Bel Fuse, Inc.*,
    422 F. Supp. 2d 934 (N.D. Ill. 2006) ........................................................................................... 6

*Perez v. DirecTV Group Holdings, LLC*,
    No. CV 16-01440, 2020 WL 5875026 (C.D. Cal. Aug. 17, 2020) ............................................ 11

ii

*Promega Corp. v. Applied Biosystems, LLC*,
 No. 13–cv–2333, 2013 WL 2898260 (N.D. Ill. June 12, 2013) .................................................. 3

*Rustom v. Rustom*,
 No. 17 C 9061, 2018 WL 3105926 (N.D. Ill. June 25, 2018) ...................................... 1, 2, 8, 12

*Sanofi Aventis Deutschland GMBH v. Genentech, Inc.*,
 No. C 08-4909, 2011 WL 839411 (N.D. Cal. Mar. 7, 2011) ............................................. 1, 3, 4

*Spellbound Development Group, Inc. v. Pacific Handy Cutter*,
 No. SACV 09-00951, 2011 WL 5554312 (C.D. Cal. Nov. 14, 2011) ....................................... 4

*Velocity Patent LLC v. FCA US LLC*,
 319 F. Supp. 3d 950 (N.D. Ill. 2018) ........................................................................................ 4

*Vital Pharms., Inc. v. Monster Energy Co.*,
 No. 19-60809-CIV, 2020 WL 4501763 (S.D. Fla. May 19, 2020) ........................................... 3

**Rules**

Fed. R. Civ. P. 37 .................................................................................................................. 1, 4

I. **INTRODUCTION**

A party can't unilaterally decide to forego following the Federal and Local discovery rules. As this court put it in another case, "[a]dherence to the Rules is not up to the whim of a party."[1] Kove's Response to AWS's Motion for Protective Order, however, shows that Kove continues to ignore the rules, thus frustrating the orderly and efficient completion of discovery in this case.

For instance, Kove's Response marks the first time—after 30 months of discovery—that it has alleged that SimpleDB is a non-infringing alternative. This is despite AWS repeatedly asking Kove through formal discovery requests to identify any such alternatives. Kove's reliance on this belatedly-disclosed contention to justify its demands for substantial discovery on an unaccused product contravenes Federal Rule 37, which precludes a party from relying on information to oppose a motion that it didn't disclose in response to discovery requests.[2] And even if Kove's belated disclosure were proper, its own statements contradict its new assertion that SimpleDB is a non-infringing alternative. Thus, the discovery Kove seeks on SimpleDB—which is commensurate to the discovery for the two accused services and would take months to collect—isn't relevant or proportional to the needs of the case.

In addition, Kove's Response confirms that it's demanding information about the relationship between AWS and Amazon.com that extends well beyond the scope of the deposition topic AWS moved on. Kove's topic 85 seeks testimony on the sharing of employees, documents, and information between the two companies. But Kove now asserts that it covers detailed data on

---

[1] *Rustom v. Rustom*, No. 17 C 9061, 2018 WL 3105926, at *2 (N.D. Ill. June 25, 2018).

[2] *See* Fed. R. Civ. P. 37(c)(1); *Sanofi Aventis Deutschland GMBH v. Genentech, Inc.*, Case No. C 08-4909, 2011 WL 839411, at *27 (N.D. Cal. Mar. 7, 2011) (precluding the plaintiff from relying on a previously undisclosed theory it first raised during briefing).

1

the price and profitability from internal use of the accused services, and the initial design and development of the accused services. The rules, though, don't permit Kove to expand and rewrite its discovery requests through motions practice.[3] Indeed, allowing Kove to do so would nullify not just the process for seeking corporate testimony under Rule 30, but also the 90-deposition topic limit that the parties agreed to. And as AWS explained in its Motion, the topic as written isn't relevant or proportional to the needs of the case.

Further, Kove's Response for the first time demands that AWS collect documents from hundreds of AWS's email distribution lists. But Kove's discovery requests and other prior statements confirmed that it wasn't seeking such documents. A June letter from Kove said "[t]o be clear, Kove is *not* requesting e-mails, only information relating to the mailing lists themselves."[4] So Kove again is seeking to vastly expand its discovery requests through motions practice. And since the request is new, the parties never discussed it in any pre-motion meet and confer. As such, it shouldn't be considered under LPR 37.2. And AWS deposition testimony and documents establish that the emails Kove now seeks are distribution lists that aren't centrally located, and thus would be extraordinarily burdensome to collect, particularly at this late stage of the case.

Accordingly, Kove's requests contravene the Federal and Local Rules and seek irrelevant information that isn't proportional to the needs of the case. And, for the reasons detailed here and in AWS's Motion, AWS respectfully requests that the Court preclude Kove from unilaterally foregoing adherence to these Rules, and grant AWS's Motion.

---

[3] *See, e.g.*, *Castillon v. Corrections Corp. of Am., Inc.*, No. 1:12-cv-00559, 2014 WL 517505, at *2-3 (D. Idaho Feb. 7, 2014) (denying motion to compel where plaintiffs "improperly [sought] information that *Plaintiffs did not include in their discovery request*") (emphasis in the original); *see Rustom*, 2018 WL 3105926 at *2 ("A discovery request under Fed.R.Civ.P. 34 is the appropriate way to get documents from an opponent, not a subpoena to an opponent's lawyer or informal emails").

[4] Ex. O at 1 (emphasis in the original).

2

## II.   ARGUMENT

### A.   Kove Isn't Entitled to Sweeping Discovery on the Unaccused SimpleDB Service.

AWS has produced 1,655 documents that reference SimpleDB. These documents discuss the availability and durability of the service and financial issues.[5] So AWS hasn't refused to produce documents related to SimpleDB, as Kove argues. And AWS has specifically searched for documents that relate to the development of the accused DynamoDB service that discuss SimpleDB.[6] For example, AWS produced a document ███████████████████████ ████████████████████████████████████████████████████████████████████ ███████.[7] Also, AWS's public website has included extensive information about SimpleDB since it launched in December 2007, eleven years before Kove filed its complaint.[8]

Despite this, and AWS's discovery requests to identify all potential non-infringing alternatives, Kove never identified SimpleDB as a non-infringing alternative during the 30 months of discovery before its Response brief.[9] AWS repeatedly asked Kove to supplement its discovery responses to identify any such alternatives.[10] Kove refused, and then relied on the non-disclosed information in its Response. Courts consistently hold such conduct improper.[11] Indeed, Rule 37

---

[5] Ex. P at AMZ_KOVE_000444939; *see also* Ex. Q (discussing financial issues related to SimpleDB). The documents also discuss DynamoDB.

[6] Dkt. 428 at 12-14.

[7] *See* Ex. L to Dkt. 428.

[8] *See, e.g.,* https://aws.amazon.com/simpledb/details/.

[9] Dkt. 397 at 1, 8 ("And neither party has identified any of these services as a non-infringing alternative").

[10] Ex. R at 4-5 (requesting Kove supplement its response on non-infringing alternatives); Ex. S at 1 (similar); *see* Ex. T at 6 (noting that Kove hasn't supplemented its response).

[11] *See Sanofi Aventis Deutschland GMBH*, 2011 WL 839411, at *27; *Vital Pharms., Inc. v. Monster Energy Co.*, No. 19-60809-CIV, 2020 WL 4501763, at *1 (S.D. Fla. May 19, 2020) (discussing denial of motion to obtain discovery on a product defendant knew about but didn't seek discovery on); *Promega Corp. v. Applied Biosystems, LLC*, No. 13–cv–2333, 2013 WL 2898260, at *5 (N.D. Ill. June 12, 2013)

specifically precludes Kove from relying on this theory. The Rule states that "[i]f a party fails to provide information … required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion."[12] This Rule applies equally to undisclosed theories. For example, in *Sanofi Aventis Deutschland GMBH v. Genentech, Inc.*, the plaintiff attempted to disclose "a new and previously undisclosed theory" of the asserted patent's priority date during motions practice.[13] The court barred the plaintiff from doing so and didn't consider the plaintiff's new theory in deciding the defendants' motion.[14]

Further, based on Kove's own description of it, SimpleDB isn't a non-infringing alternative to DynamoDB. An alternative must be acceptable to be a non-infringing alternative.[15] Kove acknowledged this in its response to interrogatory no. 7: ███████████████████████ ██████████████████████████████████████████████[16] Yet, in its Response, Kove admits that SimpleDB isn't acceptable because it ████████████████████████ ███████████████████████[17] ████████████████████████████████ ████████████████████████. Thus, it wouldn't be an acceptable substitute to DynamoDB. Given this, it's unsurprising that Kove's identification in its Response was the first time either party had asserted that SimpleDB was a non-infringing alternative.

---

(denying patentee's request for earlier priority date it first disclosed in motions practice); *Spellbound Development Group, Inc. v. Pacific Handy Cutter*, No. SACV 09-00951, 2011 WL 5554312, at *5 (C.D. Cal. Nov. 14, 2011) (similar).

[12] Fed. R. Civ. P. 37(c)(1).

[13] 2011 WL 839411 at *27.

[14] *Id*.

[15] *See Velocity Patent LLC v. FCA US LLC*, 319 F. Supp. 3d 950, 972-73 (N.D. Ill. 2018) (discussing the requirements to show that a non-infringing alternative is available and acceptable in the reasonable royalty context).

[16] Ex. L to Dkt. 397 at 5.

[17] Dkt. 437 at 3.

Kove also hasn't met the high requirements to obtain discovery on an unaccused product.[18] When determining whether to permit discovery into unaccused products, courts require a specific showing of the relevance of those products to the case, the inability to obtain the information publicly, and the nature of the burden on the defendant.[19] Kove hasn't made such a showing, aside from a blanket statement that because SimpleDB is a non-infringing alternative, full discovery on it is relevant and proportional.[20] But courts have denied motions to compel discovery on unaccused products when a patentee, like Kove, relies on its damages theories as the basis for that discovery.[21] For example, in *Icon-IP Ltd. v. Specialized Bicycle Components, Inc.*, the court denied the plaintiff's motion to compel sales of unaccused products to show the absence of non-infringing alternatives because such sales weren't sufficiently connected to the issues in the case.[22]

And the cases Kove cites in its opposition support AWS's position. For example, in *Apotex, Inc. v. Mylan Pharms., Inc.*, the court denied the plaintiff's motion to compel information on unaccused products to support its damages theories.[23] Specifically, the plaintiff argued that the unaccused products were relevant to the costs associated with developing a non-infringing alter-

---

[18] Dkt. 397 at 8.

[19] Dkt. 397 at 8 citing *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 282 (D. Del. 2012) (denying motion to compel into non-accused products in context of determining if those products infringe).

[20] Dkt. 437 at 4.

[21] *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-cv-03844, 2014 WL 4593338, at *4 (N.D. Cal. Sept. 15, 2014) (holding that plaintiff failed to articulate a basis to request financial information on unaccused products); *Apotex, Inc. v. Mylan Pharms., Inc.*, No. 12-607040-CIV, 2013 WL 818264, at *7 (S.D. Fla. June 14, 2013) (denying plaintiff's motion that non-accused products were relevant to non-infringing alternatives).

[22] 2014 WL 4593338 at *4.

[23] 2013 WL 818264 at *7.

native. The court disagreed, finding that "Plaintiffs' argument borders on the non-sensical" because the defendant, like AWS, had already produced information regarding the financials and development of the accused products.[24]

Moreover, given the burden involved, requiring AWS to provide the extensive SimpleDB information Kove requests wouldn't be proportional to the needs of the case. To comply with Kove's demands, AWS would need to search for documents for SimpleDB similar to what took months to collect for each of the accused services. Specifically, AWS would have to collect, review, and produce relevant source code, wiki's, development documents, metrics, performance comparisons, pricing, and financial documents. This would involve identifying multiple teams and individuals within AWS, including custodial and centrally located files from the ████████ ███████████████████████████████████████████████.[25] AWS would also need to designate and prepare three witnesses—one on technical topics, one on financial aspects, and

---

[24] *Id.*; *see also Murata Mfg. Co. v. Bel Fuse, Inc.*, 422 F. Supp. 2d 934, 945 (N.D. Ill. 2006) (dealing with foreign sales of the accused product); *Baxter Int'l, Inc. v. Becton, Dickinson, & Co.*, No. 17-cv-7576, 2020 WL 424918, at *6 (N.D. Ill. Jan. 27, 2020) (discussing whether a third party non-infringing alternative was available to the defendant).

[25] Indeed, RFP 224, one of the six RFPs at issue, seeks the following information on SimpleDB: "[T]he Costs for developing, implementing, and maintaining [SimpleDB], including without limitation the following information (or analogous information tracked by AWS or Amazon.com, Inc.): (i) system Costs and Costs associated with developing, implementing, and maintaining the index information (e.g., ████ ███████████████████████, etc.); (ii) Costs per server that stores index information; (iii) Costs per request(s) to store data (e.g., put requests) and to retrieve data (e.g., get requests); (iv) Costs per request(s) to retrieve data (e.g., get requests) in S3 when ████████████████████████████ ██████████████████████; (v) Costs to provide storage on-demand, autoscaling, and provisioned storage (including Costs per GB, per request, and per data item); (vi) difference in Costs between on-demand, autoscaling, and/or provisioned storage, (including Costs per GB, per request, and per data item); and (vii) Hardware Costs Information, Software Costs Information, Application Development Costs Information, Software/Database Services Costs Information, End User Services Costs Information, Infrastructure Services Costs Information, Facilities Costs Information, Training Costs Information, Service Desk Costs Information, User Documents Costs Information, and Architecture/Design Costs Information." Ex. C to Dkt. 397 at RFP 224.

one on operations/metrics for SimpleDB.[26] And at this late stage of discovery, Kove's attempt to inject detailed discovery on an unaccused service into the case would lead to a months-long delay in the schedule.

Thus, AWS respectfully requests that the Court grants it Motion for Protective Order on topics 87-88 and document requests 220-21 and 223-26.

**B.      Kove's Requests On the Relationship between AWS and Amazon.com aren't Tethered to Topic No. 85.**

In its Motion, AWS explained why Kove's topic 85 isn't relevant or proportional to the needs of the case.[27] Kove's Response doesn't address AWS's points. Instead, Kove seeks to expand topic 85 to detailed, extensive subject matter that it doesn't cover and that Kove never identified until its Response.

Deposition topic 85 seeks testimony on Amazon.com's corporate structure, the sharing of employees, resources, and documents between Amazon.com and AWS, and Amazon.com's involvement in this case.[28] During the parties' August 27 meet and confer, Kove clarified that it would seek testimony regarding the founding and history of AWS, why Amazon Web Services, Inc. was created, the corporate structure of Amazon.com and AWS, documents or information shared between the two companies, employees and resources shared between the two companies, Amazon.com's involvement in this case, and technical support provided by Amazon.com to AWS and vice versa.[29] AWS's Motion explained why this topic wasn't relevant or proportional

---

[26] Topic 87 includes the "performance of [SimpleDB]" as part of the topic. Depending on the scope, this would require a metrics/operations specific deponent. Dkt. 397 at 4.

[27] Dkt. 397 at 10-11.

[28] Dkt. 397 at 5.

[29] *See* Dkt. 397 at 5 (citing Ex. G at 3-4).

to the needs of the case.[30] Instead of addressing AWS's showing directly, Kove now asserts that

the topic seeks information on: ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████[32] and (3) the initial design and development of the accused products.[33] But on its face, the

topic doesn't encompass these subjects.

Kove can't now rewrite the topic in this manner through motions practice. Courts have

routinely denied motions to compel information that isn't included in the discovery requests at

issue.[34] Indeed, the court in *Castillon v. Corrections Corp. of Am., Inc.* denied the plaintiffs' mo-

tion to compel as "frivolous" because it "improperly seeks information that Plaintiffs *did not in-*

*clude in their discovery requests.*[35] And Local Rule 37.2 precludes Kove from obtaining relief on

this newly expanded scope of topic 85, since Kove didn't raise it during the parties' August 27

meet and confer or any time before filing its Response.[36]

---

[30] Dkt. 397 at 10-11.

[31] Dkt. 437 at 6-7.

[32] *Id.* at 7.

[33] *Id.* at 8.

[34] *Castillon v. Corrections Corp. of Am., Inc.*, No. 1:12-cv-00559, 2014 WL 517505, at *2-3 (D. Idaho Feb. 7, 2014) (denying motion to compel where plaintiffs sought information not in discovery requests) (emphasis in the original); *EEOC v. Doherty Group*, No. 14-cv-81184, 2017 WL 878705, at *3 (S.D. Fla. Feb. 28, 2017) (denying motion to compel harassment complaints when plaintiff didn't include them in the discovery requests at issue); *see Rustom v. Rustom*, No. 17 C 9061, 2018 WL 3105926, at *2 (N.D. Ill. June 25, 2018) ("A discovery request under Fed.R.Civ.P. 34 is the appropriate way to get documents from an opponent, not a subpoena to an opponent's lawyer or informal emails").

[35] 2014 WL 517505 at *3 (emphasis in the original).

[36] *Lukis v. Whitepages, Inc.*, Case No. 19 C 4871, 2021 WL 1600194, at *16 (N.D. Ill. Apr. 23, 2021) (re-fusing to consider a motion to compel on any issues on which parties hadn't met and conferred); *Lowe v. CVS Pharmacy, Inc.*, No. 14 C 3687, 2016 WL 9185324, at *2 (N.D. Ill. May 23, 2016) (denying motion on information not previously requested); *see also Asus Comp. Int'l v. Micron Tech. Inc.*, No. 14-cv-00275, 2014 WL 12625461, at *4 (N.D. Cal. Apr. 21, 2014) (granting motion for costs in part due to plaintiff first raising issue in motion to compel).

And the cases AWS cited in its Motion—which Kove hasn't distinguished—further support that topic 85 isn't proportional to the needs of the case. For example, in *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, the plaintiff sought information regarding both the corporate relationship between the defendant and third parties and the finances of those third parties.[37] In deciding the third parties' motion for protective order, the court permitted discovery into the corporate relationship, but granted the motion with respect to the third parties' finances. The court found "good cause to prevent the overbroad discovery of the non-parties' finances and enters a protective order as to the financial information."[38] Here, AWS has also agreed to designate a witness on topic 33 regarding the corporate relationship between AWS and Amazon.com.[39] And like in *Auto-Owners*, the remaining scope of topic 85, such as the sharing of employees and information between the two companies, isn't relevant or proportional to the needs of the case.

Kove further didn't dispute AWS's showing that the burden of educating and preparing a witness to testify regarding topic 85 would be substantial.[40] Kove instead stated that it would work to make the topic "more concrete and manageable."[41] But Kove didn't propose any such limitations to topic 85 during the meet and confer process. And its Response instead seeks to expand the topic's scope. Though Kove now states that the topic is limited to the accused services, the topic doesn't mention either service and discusses issues—such as the corporate structure of Amazon.com and the sharing of resources—that aren't limited to the accused services.[42]

---

[37] 231 F.R.D. 426, 430 (M.D. Fla. 2005).

[38] *Id*.

[39] Dkt. 397 at 10-11.

[40] *See* Dkt. 397 at 11.

[41] Dkt. 437 at 9.

[42] *See* Dkt. 397 at 5, 10-11; Ex. G to Dkt. 397 at 3-4.

And even if the topic were limited to the accused services, it would still be overly bur-

densome. ████████████████████████████████████████████████

███. A witness would have to determine what documents, information, and resources those em-

ployees have shared with Amazon.com since 2006 and if any have worked for Amazon.com dur-

ing that period. And employees in other departments, such as legal or human resources, may do

work relating both to the accused services and for Amazon.com. Having to educate and prepare a

witness on all of this information would be unduly burdensome and not proportional to the needs

of the case.

Thus, AWS respectfully requests that this Court grant its Motion for Protective Order

with respect to topic 85.

### C. Kove's Request to Collect Documents from Hundreds of Email Distribution Lists is Contrary to the Local Rules and Overbroad.

When seeking to compel discovery, a party must comply with Local Rule 37.2 and partic-

ipate in a telephonic meet and confer. And when the mandatory meet and confer hasn't occurred

on specific issues, the Court won't consider requests to compel discovery on those issues. In

*Lukis v. Whitepages, Inc.*, the court held that the parties had met and conferred on only five of

the 18 issues the defendant raised in its motion.[43] The remaining issues had either been discussed

in written correspondence or the defendant first raised them in its motion.[44] The Court only con-

sidered the five conferred-on issues, because they were "proper subjects for a motion to compel,"

unlike the 13 undiscussed topics.[45]

Here, for the first time in its Response, Kove asks to compel information beyond what

---

[43] 2021 WL 1600194 at *16.

[44] *Id*. at *16.

[45] *Id*. at *17; *see also Lowe*, 2016 WL 9185324, at *2; *Asus Comp. Int'l.*, 2014 WL 12625461, at *4.

document request 219 and topic 84 cover. Those requests seek information about AWS's email

distribution lists and not the emails themselves.[46] As noted, Kove explicitly confirmed this in

pre-briefing correspondence, stating "[t]o be clear, Kove is *not* requesting e-mails, only infor-

mation relating to the mailing lists themselves."[47] And as AWS's Motion details, courts disfavor

this type of discovery about discovery, absent a showing that a party's compliance has been

drawn into question.[48] Kove hasn't made such a showing, nor did it respond to AWS's points on

that issue or the burden involved with responding to topic 84 and request for production 219.[49]

Thus, AWS's motion for protective order should be granted with respect to that topic and request

for production.

And Kove's efforts to expand its requests beyond the scope of the topics, its prior state-

ments, and the parties' pre-motion meet and confer should be rebuffed. More particularly, Kove

now requests that AWS collect, review, and produce documents from each of its email distribu-

tion lists in response to Kove's 237 document requests.[50] But as discussed *supra*, Kove can't ex-

---

[46] Ex. F to Dkt. 397 at Topic 84; Ex. I to Dkt. 397 at Request 219.

[47] Ex. O at 1 (emphasis in the original). And the topics and requests for production at issue are consistent with Kove's characterization.

[48] Dkt. 397 at 12 (citing *Gross v. Chapman*, No. 19 C 2743, 2020 WL 4336062, at *2 (N.D. Ill. July 28, 2020) (stating that circumstances when discovery about discovery is appropriate "are limited to times when one party's compliance has reasonably been drawn into question, [so] that there is an 'adequate fac-tual basis' for an inquiry"); *see also Perez v. DirecTV Group Holdings, LLC*, No. CV 16-01440, 2020 WL 5875026, at *2 (C.D. Cal. Aug. 17, 2020) ("Courts typically look upon such discovery [about discov-ery] 'with skepticism and it is strongly discouraged'"); *First Nat. Bank of Okla. v. Bank of Am.*, No. CIV-09-172, 2009 WL 2997048, at *15-16 (W.D. Okla. Sept. 15, 2009) (holding that requests regarding plain-tiff's email system sought information "which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence").

[49] Dkt. 397 at Dkt. 437 at 10-15.

[50] Dkt. 437 at 15.

pand its discovery requests through motions practice and courts routinely deny motions to compel when parties do so.[51]

And even if Kove could expand its requests, its Response mischaracterizes the nature of those email lists, the contents of which would be extremely burdensome to collect, review, and produce. Indeed, both deposition testimony and the documents themselves establish that these are distribution lists designed to efficiently send emails to a team or group of employees. For example, ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████

And the exhibits Kove attaches to its Response reinforce that these addresses are email distribution lists, not a central repository for storing key documents. For example, Exhibit V to Kove's Response ███████████████████████████████████████████████████████████

██████████████████████████[53] Similarly, AWS has produced numerous emails from its custodians that were sent only to one of these distribution lists. For example, ████████████████████████████████████

---

[51] *See Castillon*, 2014 WL 517505 at *2-3; *Doherty Group*, 2017 WL 878705 at *3; *Rustom*, 2018 WL 3105926 at *2.

[52] Ex. U at 257:12-258:21.

[53] Ex. V. to Dkt. 437 at 5, 8; *see also* Ex. AC to Dkt. 437 ████████████████████████████
███████████████████████████).

████████████████████████████████████████.[54] Thus, these distri-

bution lists Kove has requested comprise emails, not central repositories of documents, that are

subject to the LPR ESI rules.[55]

And Kove isn't entitled to those emails under the parties' agreement to follow those

rules. The parties agreed to conform to the Local Patent Rules for Electronically Stored Infor-

mation, which provide that each party "shall limit its email production requests to a total of five

custodians."[56] Kove has already identified those five custodians, has requested three above the

limit, and hasn't sought leave to increase the number of email custodians to include █████████

█ email lists that relate in any way to the accused services.[57] Indeed, in its Response alone, Kove

identified thirteen such lists, several of which cover AWS-wide issues.[58] Just the identified email

lists would triple the parties' agreed-to amount. And there are approximately ███ such email lists

that just contain the name DynamoDB or ██████████████████.[59]

---

[54] Ex. V (████████████████████████████████████████ *see also*
Ex. W (██████████████████████████████████).

[55] And as described more fully below, AWS would have to collect, run agreed upon search terms, and re-
view the emails associated with each of those lists, and any others associated with the accused products.
In other words, the process AWS would have to undertake would be the greater as the LPR ESI rules con-
template since it would encompass multiple email addresses. *See* LPR ESI 2.6.

[56] LPR ESI 2.6(d); Dkt. 52 at ¶ 3(c); Dkt. 54; *see also* LPR ESI 2.6(a) (providing that general ESI re-
quests "shall not include email" and requiring "specific email production requests" to obtain emails). In
addition, the parties agreed to supplement the LPR ESI "by following the Federal Circuit Model Order
Regarding E-Discovery in Patent Cases" (Model Order). Dkt. 52 at ¶ 3(c).

[57] Ex. J to Dkt. 397 at 364:19-21. Declaration of Jeffrey Saltman ("Saltman Decl.") at ¶ 6.

[58] *See* Dkt. 437 (listing █████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████).

[59] Saltman Decl. at ¶ 6.

13

The burden in collecting these emails is also substantial.[60] As the Model Order that the parties agreed to explains, email production requests can "carry staggering time and production costs that have a debilitating effect on litigation."[61] And collection of email distribution lists are even more burdensome than typical custodial collection. With one exception, the email addresses Kove lists in its Response ███████████████████████.[62] ████████████████████████ ████████████████████████████████████████████████████.[63] Given that ██████████████████████████████████████████████, such a process would involve the collection of a staggering amount of data.[64] And once all of these emails are collected, the parties would have to negotiate search terms, AWS would have to re-view the results, produce any responsive documents, and log any privileged documents. This process for the custodians collected so far in the case took two to three months per custodian. Given the breadth of the collection required for the email distribution lists, the process would take longer for each such list and require a substantial extension to the case schedule.[65]

Thus, AWS respectfully requests that its motion for protective order be granted on Kove's request to topic 84 and request for production 219. AWS also respectfully asks that Kove's request to require AWS collect, review, and produce documents from each of its email distribution lists in response to Kove's 237 requests for production be denied.

---

[60] In its Motion, AWS articulated the burden associated with the collection of documents in response to request 219 and preparing a witness in response to topic 84. Dkt. 397 at 12-13. Kove didn't respond.

[61] Dkt. 361-5 at 1–2.

[62] Saltman Decl. at ¶ 2. ████████████████████████████████████████ ████████████████████. *Id.*

[63] *Id.* at ¶ 4.

[64] *See Id.* at ¶¶ 5-6. ████████████████████████████████████████. *Id.* at ¶ 7. This collection process would be similar to collecting from a custodial account and, thus, would in-clude the time and costs associated with those collections. *Id.*

[65] *Id.* at ¶ 5.

## III. <u>CONCLUSION</u>

Kove's Response demands discovery based on information it first disclosed in that brief, that is outside the plain terms of its requests, and that the parties never discussed previously. These demands thus contravene the Federal and Local Rules governing discovery. And the information sought isn't proportional to the needs of the case and would require significant further extensions to the case schedule to collect and produce. Thus, good cause supports a protective order. And AWS respectfully requests that the Court enter such an order, and thus prevent Kove from unilaterally choosing which discovery Rules to adhere to.

Dated: October 28, 2021

Respectfully submitted,

*/s/ R. William Sigler*

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (*pro hac vice pending*)
*lisa.phillips@fischllp.com*
Adam A. Allgood (*pro hac vice*)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 28, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, which will send notice to all counsel of record who have consented to service by electronic means.

*/s/ R. William Sigler*
R. William Sigler
