IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kove IO, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Amazon Web Services, Inc., <br><br> Defendant. | Civil Action No. 1:18-cv-08175 |

**KOVE'S SUR-REPLY IN SUPPORT OF ITS MOTION TO COMPEL AMAZON WEB SERVICES TO PRODUCE INFORMATION REGARDING USAGE, FINANCIAL, AND HYPOTHETICAL NEGOTIATION DATE**

AWS's productions make incremental steps towards curing its discovery deficiencies, but do not resolve them. AWS's sur-reply addresses only two of the six categories of information at issue: usage data by pricing category ("usage"), and documents showing how AWS accounts for internal use of the accused products ("internal cost allocation"). An order to compel should issue as to the four categories not addressed by AWS. An order should also issue as to the two categories addressed in the sur-reply, since AWS's recent productions continue to lack key information.

### A. AWS's Suggestion That Kove Did Not Meet And Confer Is Wrong.

AWS's suggestion (repeated from its initial response) that Kove did not satisfy its meet and confer obligation is inaccurate. Kove explained in its Reply that it met and conferred about the briefed issues and did so notwithstanding AWS's months-long obstruction efforts. *See* Dkt. 468 ("Reply") at 3-4. AWS ignores the evidence cited in Kove's Reply and simply repeats its disproven arguments.

### B. AWS Has Not Produced Key Usage Data.

AWS has not produced key usage data sought in Kove's Motion. Kove sought to compel:

1. Documents or data sufficient to show, on an annual basis, from 2006-2020, the volume of usage of the Accused Products, by pricing category (including, for example, by storage tier, service-level, and, where appropriate, by region), by each of (a) AWS, (b) Amazon.com, Inc., and (c) external customers.

Dkt. 405 ("Motion") at 16. AWS claims it provided this information in its October 22 production. Not so; the October 22 documents are limited in time, omit key pricing categories, and do not consistently distinguish between external and internal customers. Reply at 2 & n.2. In particular:

- Kove requested information for S3 and DynamoDB, but the production includes only S3.[1]
- Kove requested usage data starting from 2006 for S3 and 2012 for DynamoDB. AWS only

---

[1] AWS produced an additional document on November 22. That document includes some usage data for DynamoDB, but only for 2014 forward (pre-2014 data is still missing). Importantly, the new document also does not distinguish between DynamoDB's "provisioned" and "on-demand" tiers of service, which have separate pricing. *See* Dkt. 422 Ex. O at 35-40.

produced data starting from 2014[2] (and in one instance, 2018[3]).

- Kove requested usage information by pricing category. The October 22 documents are missing key information:



AWS admits these deficiencies (Dkt. 474 at 3) and suggests it *may* produce *some* of the missing information, but carefully avoids affirming that it will do so (*id.* at 3) ("AWS is currently investigating whether that information is available."). This is not good enough because it leaves Kove without certainty as to whether or when it will finally have access to the discovery it needs and has requested for many months.[8]

Some of the usage data Kove seeks is in ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Reply at 2-3 & n.4 (citing Reply Exhibits A and B). A complete set of these reports would go a long way

---

[2] *See* Dkt. 474 Ex. AA, BB.

[3] *See* Dkt. 474 Ex. FF.

[4] Dkt. 474 Ex. AA ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[5] *Id.* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[6] *See* Dkt. 474 Ex. BB at Rows 26-31 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[7] *See* Dkt. 422 Ex. O at 7-10.

[8] AWS seems to suggest that some of the requested information may not be "available" (Dkt. 474 at 3), but its own productions show that the data undoubtedly exists within AWS. As the Court recently recognized, "requiring a party to query an existing database to produce reports … is not the creation of a new document." *Adams v. Target Corp.*, 2021 WL 3620280, at *2-3 (N.D. Ill. Aug. 16, 2021) (finding proportional and no undue burden where generating database reports "would not so much require Target to create a new document as it would require it to … find an electronic version of a box or a binder … .").

towards filling the information gap on usage data. AWS has produced some reports, but not others, without a salient explanation as to why.⁹ ▮

▮

▮.¹⁰

### C. AWS Has Not Produced Sufficient Internal Accounting Information.

Kove's Motion also sought production of:

2. Documents or data from 2006-2020 that: (a) show how AWS accounted and charged for internal use of the Accused Products; (b) describe the function, methodology, and application of Amazon's internal pricing rates; (c) show how AWS allocated the costs, profits, and benefits of the Accused Products to internal customers, AWS services, and/or Amazon.com, Inc.; and (d) show, on an annual basis, the amount of costs, profits, and benefits of the Accused Products that AWS allocated to internal customers, AWS services, and/or Amazon.com, Inc.

Motion at 16. AWS points to Exhibit DD as satisfying this request, but that document falls short.

First, Exhibit DD does not show how costs are allocated to the AWS services that use the accused products—it only describes ▮ ▮ Ex. DD at 1 (emphasis added). Forecast information does not speak to cost allocation methods.

Second, while Appendix B to Exhibit DD contains some information as to ▮

▮

---

⁹ AWS claims the reports were not discussed in Kove's motion. Dkt. 474 at 3 n.15. Not true; they were. *See* Reply at 2-3 & n.4; Reply Exhibits A and B. AWS also states that the information in the reports is not "derived from the audited financial system." That's irrelevant; discovery is not limited to "audited" data. It is also irrelevant that the weekly business reports "aren't limited to the United States"—that they include data for the United States makes them relevant and discoverable. Reply Ex. B at, *e.g.*, Rows 502-533. Also irrelevant is the fact that the reports don't provide detail for each pricing category—the reports do not need to contain every detail to be discoverable.

¹⁰ As noted in FN 1, AWS very recently produced additional, but still insufficient, DynamoDB data. The new production does not include any weekly business reports. Fulsome production of weekly business reports would reduce the need for the piecewise productions AWS has been making.

3

███████ it does not explain how AWS accounts for Amazon.com's use of the *accused* products. The explanation that *is* included is not helpful because it relates to *un*accused products.[11]

And third, although Exhibit DD has some cost allocation information, that information lacks critical context. In particular, Exhibit DD explains that ███████

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████

███████████████. What's more, AWS has steadfastly refused to provide product-level usage data regarding non-accused products,[12] thus precluding Kove from even attempting to replicate AWS's cost allocation. ███████████████

███████████████████████████████████
███████████████████████████████████
███████████████████████████████

Other requested information not contained in Exhibit DD includes:

- Exhibit DD state ███████████████
███████████████████████████████

- Exhibit DD contains screenshots of a financial database that includes data for *non-accused* products showin ███████████████
███████████████████████████████

---

[11] For example, Exhibit DD states that ███████████████
███████████████████████████████████
███████████████████████████████████

[12] *See* Dkt. 422 at 11-12 (opposing requests for data showing how other AWS services use S3/DynamoDB).

4

- 

- 

- 

As requested in Kove's opening brief, AWS should be ordered to provide the following not-yet-produced information (*See* Motion at 16):

1. On an annual basis, from 2006-2020, the volume of usage of the Accused Products, by pricing category (including, for example, by storage tier, service-level, and, where appropriate, by region), by each of (a) AWS, (b)Amazon.com, Inc., and (c) external customers, ***less the ▇▇▇ already produced, as detailed above.***

2. For 2006-2020, (a) how AWS accounted and charged for internal use of the Accused Products; (b) the function, methodology, and application of Amazon's internal pricing rates; (c) how AWS allocated the costs, profits, and benefits of the Accused Products to internal customers, AWS services, and/or Amazon.com, Inc.; and (d), on an annual basis, the amount of costs, profits, and benefits of the Accused Products that AWS allocated to internal customers, AWS services, and/or Amazon.com, Inc., *less any relevant information provided in Exhibit DD, as detailed above.*

3. On an annual basis, for each of AWS's Top 50 customers (by revenue): (a) the applicable rates the customer paid for use of the Accused Products for each tier of service/pricing category that was used, (b) the amount of usage per storage tier/pricing category, and (c) the amounts paid by the customer in connection with each tier of service/pricing category, from 2006-2020. *[Not addressed in AWS's Sur-Reply]*

4. On an annual basis, for each product or service operated by AWS, documents sufficient to show the amount of usage per service-level and pricing category with respect to the Accused Products, from 2006-2020. *[Not addressed in AWS's Sur-Reply]*

5. For each of items 1-4, AWS must supplement its response to Interrogatory Nos. 6 and 22 to identify the documents produced and explain any accounting principles or methodologies, or assumptions in the documents. *[Not addressed in AWS's Sur-Reply]*

6. Documents responsive to RFPs 84, 89, 96, 101, 146-147, 155, 159-180, and 207-208, extending back to 2006. *[Not addressed in AWS's Sur-Reply]*

---

[13] The fact that several non-accused services "run atop" of and depend on the accused products suggests the existence of convoyed sales, necessitating the production of additional usage and revenue data relating to these "dependent" products. Kove will work with AWS to obtain this additional data.

| | |
|---|---|
| Dated: November 24, 2021 | Respectfully submitted, |
| | */s/ Khue Hoang* |
| Khue V. Hoang *(pro hac vice)*<br>khoang@reichmanjorgensen.com<br>Jaime Cardenas-Navia *(pro hac vice)*<br>jcardenas-navia@reichmanjorgensen.com<br>REICHMAN JORGENSEN LEHMAN &<br>FELDBERG LLP<br>750 Third Avenue, Suite 2400<br>New York, NY 10017<br>Telephone: (212) 381-1965<br>Facsimile: (650) 623-1449<br><br>Christine E. Lehman *(pro hac vice)*<br>clehman@reichmanjorgensen.com<br>Adam Adler *(pro hac vice)*<br>aadler@reichmanjorgensen.com<br>Phil Eklem *(pro hac vice)*<br>peklem@reichmanjorgensen.com<br>REICHMAN JORGENSEN LEHMAN &<br>FELDBERG LLP<br>1710 Rhode Island Ave, NW, 12th Floor<br>Telephone: (202) 894-7310<br>Facsimile: (650) 623-1449 | Renato Mariotti (State Bar No. 6323198)<br>rmariotti@thompsoncoburn.com<br>Holly H. Campbell (State Bar No. 6320395)<br>hcampbell@thompsoncoburn.com<br>THOMPSON COBURN LLP<br>55 E. Monroe St., 37th Floor<br>Chicago, IL 60603<br>Telephone: (312) 346-7500<br>Facsimile: (312) 580-2201<br><br>Courtland L. Reichman *(pro hac vice)*<br>creichman@reichmanjorgensen.com<br>Shawna L. Ballard (Identification No. 155188)<br>sballard@reichmanjorgensen.com<br>Kate M. Falkenstien *(pro hac vice)*<br>kfalkenstien@reichmanjorgensen.com<br>REICHMAN JORGENSEN LEHMAN &<br>FELDBERG LLP<br>100 Marine Parkway, Suite 300<br>Redwood Shores, CA 94065<br>Telephone: (650) 623-1401<br>Facsimile: (650) 623-1449<br><br>**ATTORNEYS FOR PLAINTIFF<br>KOVE IO, INC.** |

6

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of November, 2021, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Khue Hoang*
Khue Hoang
