IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOVE IO, INC.,<br><br>    *Plaintiff*,<br><br>    v.<br><br>AMAZON WEB SERVICES, INC.,<br><br>    *Defendant*. | Case No. 1:18-cv-8175 |

**AWS'S OPPOSITION TO KOVE'S MOTION TO
ENFORCE COURT ORDER (DKT. 493/494)**

<div style="text-align:right">

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (*pro hac vice*)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

</div>

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .................................................................................................................. 2

    A. The Court's July 14, 2021 Order ........................................................................... 2

    B. By September 1, 2021, AWS Had Complied with the Order. ........................................ 4

    C. Kove Belatedly Alleges Deficiencies in AWS's Compliance with the Order. .............. 5

    D. Between November 2021 and January 2022, AWS Investigated and Collected Additional Information at Kove's Request. ................................................................. 6

    E. Kove Raises New Issues in January, then Abruptly Files This Motion. ....................... 7

III. ARGUMENT ........................................................................................................................ 9

    A. AWS Complied with the Court's July 14, 2021 Order. ................................................ 9

    B. The Parties Hadn't Reached an Impasse on this Issue. ............................................... 12

    C. Kove Isn't Entitled to Fees. ......................................................................................... 13

IV. CONCLUSION ................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Asus Comp. Int'l v. Micron Tech. Inc.*,
  No. 14-cv-275, 2014 WL 12625461 (N.D. Cal. Apr. 21, 2014) ............................................. 14

*Bovinett v. HomeAdvisor, Inc.*,
  No. 17-cv-6229, 2020 WL 1330407 (N.D. Ill. Mar. 23, 2020) ................................................ 14

*Domanus v. Lewicki*,
  742 F.3d 290 (7th Cir. 2014) .................................................................................................. 14

*e360 Insight, Inc. v. Spamhaus Project*,
  658 F.3d 637 (7th Cir. 2011) .................................................................................................. 14

*Gardner v. Johnson*,
  No. 08-cv-50006, 2009 WL 5215589 (N.D. Ill. Dec. 30, 2009) ....................................... 13, 14

*Hardwick v. United States*,
  No. 79-cv-1710, 2021 WL 242882 (N.D. Cal. Jan. 25, 2021) ................................................ 13

*Jensen v. Clements*,
  No. 11-cv-803, 2017 WL 5712690 (E.D. Wis. Nov. 27, 2017) ................................................. 9

*Lukis v. Whitepages, Inc.*,
  No. 19-cv-4871, 2021 WL 1600194 (N.D. Ill. Apr. 23, 2021) ......................................... 12, 13

*Yahnke v. Cty. of Kane*,
  No. 12-cv-5151, 2014 WL 1673739 (N.D. Ill. Apr. 28, 2014) ............................................... 14

**Other Authorities**

Fed. R. Civ. P. 34(b)(2)(E)(i) ........................................................................................................ 11

Local Rule 37.2 ............................................................................................................................ 12

I.    **INTRODUCTION**

After this Court's July 14, 2021 Order granting Kove's motion to compel on RFP 84, AWS immediately investigated what responsive information could be provided. This investigation confirmed that AWS ▮▮▮▮▮▮▮▮▮▮▮▮ in the ordinary course of its business. But AWS determined that it could create ▮▮▮▮▮▮▮▮▮▮ specifically for purposes of complying with the Court's Order. AWS dedicated a team of employees to collect and compile this data, and complied with the Court's Order by producing that ▮▮▮▮▮▮▮▮▮▮ on September 1, 2021.[1]

Though the parties hadn't reached an impasse on any issues since the production of this data, Kove abruptly filed this motion to compel enforcement of the Court's Order. Indeed, AWS has continued to accommodate Kove's requests for more financial information, despite such requests going beyond RFP 84 and the Court's ordered production. For example, when Kove asked for still more granular cost data beyond what AWS had provided, AWS agreed to investigate whether such data was available. AWS determined that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, again employed a dedicated team to undertake that collection and compiling process (which took 40 hours), and will produce that data upon securing certain required internal approvals. Those approvals are necessary to help avoid ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Dkt. 493-2. Kove's motion incorrectly depicts ▮▮▮▮▮▮▮▮▮▮ as "one-sheet," followed by an image showing just the first page. Dkt. 493 at 3. The PDF version is a three-page, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮, on a quarterly basis and as far back as is available. *See* Dkt. 493-2 (showing, among other things, ▮▮▮▮▮▮▮▮▮▮).

■■■. Likewise, when Kove sent AWS a letter on January 3, 2022, for the first time asking if AWS had any more documents like one that AWS had produced seven months ago (i.e., on June 23, 2021, before the Order at issue), AWS agreed to investigate.

But Kove didn't afford AWS the opportunity to complete these investigations and secure the necessary approvals. Kove knows its requests are non-trivial undertakings ■■■ ■■■—they need to be created for this litigation. Yet, Kove doesn't identify any exigent circumstances that might justify the present motion, much less its allegations that AWS is flouting this Court's Order and should be sanctioned. There are no such circumstances. Kove waited months to allege various deficiencies in the AWS-wide profit and loss information that AWS produced in response to the Court's Order, and to ask for the additional documents it seeks in the motion. And there are no upcoming deadlines or other scheduled events (e.g., depositions on financial topics) justifying Kove's filing of the motion without confirming that there was an impasse on these issues.

Kove's motion to enforce should be denied. And because AWS has complied with the Court's Order, and is also continuing to accommodate Kove's requests for additional information, Kove's request for attorney's fees and costs should be denied as well.

**II.     BACKGROUND**

    **A.     The Court's July 14, 2021 Order**

The underlying dispute centered on Kove's RFP 84, which requested "documents identi-

fying, describing, or referencing *profits and losses* (e.g., profit and loss statements) for the business unit(s) responsible for revenue and/or sales relating to each of the Accused Products."[2] After AWS objected and produced detailed financial information tied to the accused products, Kove insisted that AWS also produce "profit and loss statements covering AWS as a reporting unit."[3] AWS asked Kove to clarify what that meant, beyond Amazon's 10Qs and 10Ks.[4] AWS then produced some AWS profit and loss information, based on Kove's response.[5] But on October 2, 2020, Kove moved to compel.[6]

Following briefing on the issue, the Court granted Kove's motion to compel. The Court's July 14, 2021 Order states: "Kove now seeks an order compelling AWS to produce the documents described in RFP 84."[7] The Order concludes: "Kove's motion to compel AWS to produce financial information is granted."[8] And the Order provides further guidance by explaining, for instance, that Kove's motion had argued that Kove was entitled to "'AWS-level financial information,' such as 'cash flow statements, income statements, balance sheet statements, and profit-

---

[2] Dkt. 359 at 1 (emphasis added).

[3] *See* Dkt. 212-9 at 1 ("As we have stated many times, our discovery requests seek profit and loss statements covering AWS as a reporting unit…."); Dkt. 225-1 (two days before motion to compel, arguing "AWS continues to refuse to produce profit and loss statements covering AWS as a reporting units…").

[4] *See* Dkt. 212-9 at 3 ("You have requested the production of AWS company-level profit and loss statements covering AWS as a reporting segment…[W]e've produced Amazon 10Qs and 10Ks, which contain this very information broken out for AWS. Can you explain what additional information you need…?").

[5] Dkt. 213, sealed Ex. N (four-line spreadsheet with 2009–20 AWS-level profit and loss information, produced shortly before motion to compel).

[6] Dkt. 212.

[7] Dkt. 359 at 2.

[8] *Id.* at 4.

3

and-loss statements, as well as any contemporaneously created financial disclosures or explanatory footnotes that would commonly accompany and explain the financial statements."[9]

### B. By September 1, 2021, AWS Had Complied with the Order.

After the Court issued its Order, AWS immediately began working to identify the proper individuals to collect or generate additional responsive information. After speaking with multiple finance teams, AWS identified the relevant individuals, and provided them a copy of the Order.[10] AWS also specifically asked them to collect the document categories identified in the Order (e.g., AWS-wide "cash flow statements, income statements, balance sheet statements, and profit-and-loss statements," with accompanying and explanatory disclosures).[11] The finance team indicated that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[12] But the team stated that they could pull data to compile an AWS-wide profit and loss document, with additional detail on costs.[13] This data would come ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[14]

AWS then directed the central finance team to collect the available data and generate this profit and loss document.[15] The PDF version is a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that provides

---

[9] *Id*. at 1–2; *see also id*. at 2 ("Kove contends that AWS-level financial information is necessary to calculate the allocation of higher-level operating costs among various AWS products, the effect of convoyed sales (if any), and the profitability of the accused products."); *id*. at 4 ("Kove is seeking high-level financial records that contain aggregate data about products in the same unit as the accused products.").

[10] Declaration of B. Sigler ("Sigler Decl.") at ¶ 2; Dkt. 493-3 (AWS 10-5-21 letter) at 1.

[11] Sigler Decl. at ¶ 2; Dkt. 493-3 at 1.

[12] Sigler Decl. at ¶ 3; Dkt. 493-3 at 1.

[13] Sigler Decl. at ¶ 3. As noted, AWS had already collected and produced some AWS-wide profit and loss information before Kove's motion to compel. *See also* Dkt. 405-31 (produced profit and loss statement for accused products).

[14] Sigler Decl. at ¶ 3; Dkt. 493-3 at 1. The two sources were due to the expansive timespan of the request.

[15] Sigler Decl. at ¶ 3; Dkt. 493-2 (AWS-level document produced Sept. 1, 2021).

███████████████████████████████████████████.[16] This document had to go through several internal approvals, ███████████████████████████

███████████████████████████.[17] AWS produced it on September 1, 2021. The next day, AWS also wrote to Kove: "AWS confirms that it produced … the AWS-level financial documents on September 1, 2021."[18]

### C. Kove Belatedly Alleges Deficiencies in AWS's Compliance with the Order.

A month passed before Kove alleged that there were any deficiencies in what AWS had produced in response to the Court's Order. Then, in a September 27, 2021 letter, Kove alleged: "*First*, it appears AWS has not produced several categories of financial statements ordered by the Court."[19] That letter also argued, among other things, that the profit and loss information that AWS had produced "was prepared for purposes of litigation," when Kove had "specifically moved to compel AWS to produce the '*AWS*-level financial statements that it [keeps] *in the ordinary course of business*.'"[20] In an October 5 response, AWS detailed its process for collecting the information it had produced on September 1, and explained what AWS's finance team had said regarding the availability of other types of financial statements.[21]

---

[16] For example, ███████████████████████
███████. Dkt. 493-2. In total, it has ███████████████ the entries and detail as the AWS-level document mentioned in the Court's Order. *Compare* Dkt. 359 at 2.

[17] Sigler Decl. at ¶ 3. Since AWS created the profit and loss document from two sources and it wasn't a regularly created financial statement, this approval also required a statement indicating that the document is not a financial statement of AWS. *Id.*; Dkt. 493-2.

[18] Ex. A at 9.

[19] Ex. B at 1; *see also id*. (demanding "the other financial statements the Court ordered AWS to produce"); *see also id*. at 2 (emphasizing that Kove moved to compel "AWS-level financial statements [kept] *in the ordinary course of business*"). Kove also argued, *inter alia*, that the produced profit and loss document wouldn't allow it to do the cost allocation discussed in its motion. *See id*. at 1 ("*Second*, [that doc.] does not contain the level of detail that the Court ordered AWS to produce.").

[20] *Id*. at 2 (quoting Dkt. 212 at 6, emphasis and alteration in original).

[21] Dkt. 493-2.

Another month passed without AWS hearing back from Kove. Then, on November 3, 2021, Kove again wrote to allege various deficiencies in AWS's compliance. This time, for instance, instead of demanding documents kept in the ordinary course of business, Kove changed tack and demanded that AWS "immediately" create more documents similar to the profit and loss document that AWS had produced on September 1.[22] AWS promptly responded on November 8,[23] and this led to further discussions between the parties, as detailed below.

### D. Between November 2021 and January 2022, AWS Investigated and Collected Additional Information at Kove's Request.

On a November 15, 2021 call, Kove requested that AWS investigate whether more granular AWS-wide cost data was available. Although AWS disagreed that the additional cost data that Kove requested would be sufficient for the cost allocation that Kove described,[24] AWS agreed to investigate whether it could provide a profit and loss statement with additional subcategories of costs.[25] AWS has since conducted that investigation and 

.[26] And AWS will produce that

---

[22] Ex. C (Kove 11-3-21 letter, referring to Dkt. 493-2) ("*First*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ surely it can prepare the Court-ordered cash flow statements, income statements, and balance sheets. Please do so immediately.").

[23] Dkt. 493-4.

[24] As in its present motion to compel compliance, Kove mischaracterized the Court's order as requiring the production of any information it needs to perform a cost allocation as desired. *E.g.*, Ex. C at 1 (arguing AWS's 9-1-21 production "does not contain the information the Court expressly ordered AWS to produce, i.e., unit-level financial statements that contain the detailed information necessary to understand the high-level aggregate cost line items on AWS's product-level financial statements"); Ex. D at 2 (AWS 11-22-21 letter, noting more granular data "wouldn't provide the cost allocations and that Kove already has the cost allocations for each of the accused services in the service-specific profit and loss statements").

[25] *See* Ex. D; Ex. E (Kove 11-18-21 letter) at 1 ("AWS agreed to investigate whether additional AWS-wide information is available that would provide more detail on high-level AWS operating costs…. AWS also stated that it would investigate whether it would be willing to reproduce the profit-and-loss statement without the disclaimer.").

[26] Sigler Decl. at ¶ 5.

data upon ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

### E. Kove Raises New Issues in January, then Abruptly Files This Motion.

While that investigation was ongoing, the parties continued to correspond on many other discovery issues. In the one-month period between November 24 and December 28, Kove sent five letters raising or following up on numerous issues that Kove is pursuing, and none of those letters follow-up on Kove's request for more granular profit and loss information or AWS's investigation in response to that request.[27]

Then, on January 3, 2022, Kove for the first time brought up a document that AWS had produced seven months earlier, on June 23, 2021.[28] And Kove requested that AWS search for and produce similar documents, on the basis that it includes AWS-wide information.[29] Notably, the document, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.[30] Based on its investigation, AWS believes the most up-to-date, responsive information is included the document that it produced on September 1, 2021.

Although the parties briefly discussed that document during a January 7, 2022 phone call, cited in Kove's present motion, that discussion focused almost entirely on other discovery issues that Kove is pursuing. Kove's letter of January 10, 2022, shows this. It purports to memorialize

---

[27] Ex. F (Kove 11-24-21 letter, requesting responses on four discovery issues); Ex. F (12-2-21 Kove letter, requesting meet and confer on 3d party discovery); Ex. H (12-8-21 Kove letter, requesting supplemental responses to 27 RFPs); Ex. I (12-24-21 Kove letter, disagreeing with AWS on 3d party discovery and threatening to "enforce [Kove] subpoena through court order"); Ex. J (12-28-21 Kove letter, demanding production of eight categories of documents in connection with fully briefed discovery motion).

[28] *See* Dkt. 493-7 (Kove 1-3-22 letter); Dkt. 493-5 (OP1 Outputs Review).

[29] *See id.*

[30] *Compare* Dkt. 493-2 at 2 (for FY16) *to* Dkt. 493-5 at 1 (for FY16).

7

the January 7 conference, and is divided up into four sections, with separate headings, each concerning different issues. The section on AWS-level financial information is by far the shortest, and doesn't mention the Court's July 14, 2021 Order.[31] Consistent with that, AWS told Kove that it still was looking into ▇▇▇▇ during the January 7 call.[32]

AWS's investigation included first determining whether it had already produced other versions of the ▇▇▇▇.[33] AWS had collected and produced ▇▇▇▇, most of which are targeted to the accused services. For example, a search of ▇▇▇▇.[34] Reviewing those documents took time, and counsel was in the process of conferring with AWS personnel responsible ▇▇▇▇ regarding what those documents show and next steps.[35] But without the parties having discussed the issue further or having reached an impasse, or any follow-up from Kove on the more granular cost information that AWS began investigating in November at Kove's request, Kove unexpectedly filed this motion to enforce compliance with the Court's Order.[36]

---

[31] Dkt. 493-8 at 1–2 (devoting little over five lines to section beginning: "Kove asked whether AWS searched for the documents described in Kove's January 3, 2022 letter…"); *compare id.* (devoting 10 times as much space (51 lines) to first section of letter, concerning third party discovery).

[32] *See id.*; Sigler Decl. at ¶ 6.

[33] *Id.* at ¶ 7.

[34] *Id.* AWS also searched for non-produced documents it collected, which included the ESI collection from finance team members that Kove ultimately rejected as ESI custodians.

[35] *Id.*

[36] The day before filing the present motion, Kove also sent another letter, this time with six headings, to which AWS didn't have an opportunity to respond. Ex. K. This letter referenced a deadline that Kove set unilaterally, but didn't threaten motion practice. *Id.* at 2 ("Kove requested that AWS produce the documents identified in the January 3 letter by today, January 18, 2022. Please provide an update as to the status of that investigation."). This differs from past Kove letters, in which it affirmatively threatened motions. *See, e.g.*, Ex. B at 2; *see also* Dkt. 493-4 at 1 (AWS objecting to Kove's practice of unilaterally setting short deadlines).

III. **ARGUMENT**

A. **AWS Complied with the Court's July 14, 2021 Order.**

As noted, the Court's Order stated that "Kove's motion to compel AWS to produce financial information is granted."[37] The Order further explained that Kove's motion had sought "an order compelling AWS to produce the documents described in RFP 84."[38] And the Order provided additional guidance by noting, for instance, that Kove had sought production of "'AWS-level financial information,' such as 'cash flow statements, income statements, balance sheet statements, and profit-and-loss statements, as well as any contemporaneously created financial disclosures or explanatory footnotes that would commonly accompany and explain the financial statements.'"[39] As detailed below, AWS conducted a good faith search for all documents described in or responsive to the Court's Order.[40]

To begin with, AWS provided the Order to its central finance team, and directed the team's attention to the operative language. That team confirmed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. But the team ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which AWS then produced on September 1, 2021.

And that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ contains the information Kove requested in its RFP, along with additional cost information. Specifically, Kove's RFP 84 requested AWS-wide "doc-

---

[37] Dkt. 359 at 4.

[38] *Id.* at 2.

[39] *Id.* at 1–2.

[40] *See generally Jensen v. Clements*, No. 11-cv-803, 2017 WL 5712690, at *4 (E.D. Wis. Nov. 27, 2017) ("[A] a federal court's jurisdiction to determine whether a party has complied with the terms of its order allows, indeed requires, the court to inquire into whether the State's actions constitute a good faith effort to comply with the substance, as well as the form, of the court's order.").

9

uments identifying, describing, or referencing profits and losses (e.g., profit and loss statements)."[41] [redacted]

And after the parties discussed the [redacted].[47]

And since AWS generated [redacted][48] To create such footnotes, AWS would need to draft them [redacted] outside of the ordinary course of business. So, although data included in [redacted]

---

[41] Dkt. 359 at 1.

[42] *See* Dkt. 493-2.

[43] *Id*.

[44] *Compare id*. *with* Dkt. 493-5.

[45] Ex. D. That investigation took longer than expected due to the holidays and end of quarter financial close.

[46] Sigler Decl. at ¶ 5; Ex. E at 1.

[47] Sigler Decl. at ¶ 5.

[48] Dkt. 359 at 2 (quoting list of potential documents from Kove's motion to compel).

▇▇▇▇▇ is maintained in the ordinary course of business, the footnotes would be purely litigation created. The Federal Rules counsel against unnecessarily creating made-for-litigation documents, specifically requiring parties to produce documents "as they are kept in the usual course of business."[49] Though because the ▇▇▇▇▇ ▇▇▇▇▇, AWS has already searched its document collection for other versions of that document and similar documents. Since no additional such documents were located, AWS has begun a search of its internal systems.

Kove also identifies a document describing non-AWS internal use of AWS services (referred to as "CDO") as evidence that additional AWS-wide financial statements exist.[50] Specifically, Kove cites information in the document from ▇▇▇▇▇.[51] After Kove first identified this issue in its January 3 letter, ▇▇▇▇▇ ▇▇▇▇▇ the same system that the central finance team investigated and used to generate the ▇▇▇▇▇ ▇▇▇▇▇. And it's from that system that the central finance team confirmed ▇▇ ▇▇▇▇▇[53]

Thus, AWS has complied with the Court's Order and conducted a reasonable search for

---

[49] Fed. R. Civ. P. 34(b)(2)(E)(i) ("A party must produce documents as they are kept in the usual course of business"). Further, any such footnotes wouldn't permit Kove to do the cost allocations that it asserts the footnotes would provide. For example, the explanatory footnotes in the OP1 don't include details regarding cost allocations and Kove doesn't allege that they do. Dkt. 493 at 4.

[50] Dkt. 493-6.

[51] *See id*. at 7.

[52] *See, e.g.*, https://www.ibm.com/docs/en/planning-analytics/2.0.0?topic=excel-cube-viewer.

[53] ▇▇▇▇▇ ▇▇▇▇▇.

any responsive documents, including but not limited to "cash flow statements, income statements, balance sheet statements, and profit-and-loss statements, as well as any contemporaneously created financial disclosures or explanatory footnotes that would commonly accompany and explain the financial statements."[54] And Kove's motion should be denied on that basis.

### B. The Parties Hadn't Reached an Impasse on this Issue.

Local Rule 37.2 requires counsel to certify "(1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's."[55] And if parties haven't properly met and conferred on an issue, courts can deny motions on that basis.[56] Here, while the parties had discussed the issues Kove raises in its motion, they weren't unable to reach an accord, as the Rule requires. On the contrary, AWS had explained to Kove that it was investigating whether additional cost information existed—an issue the parties hadn't discussed since AWS's letter on that issue. And, as discussed above, ███████████ ███████████████████████████████████████████████████████████████████ ███████████

Similarly, the parties hadn't been unable to reach an accord regarding the ████████ ████████ that AWS produced in June 2021, seven months ago. Kove first sent a letter regarding that document on January 3, 2022. Later that week, the parties conducted a meet and confer on multiple other discovery issues that Kove is pursuing, during which they only briefly discussed that document. Indeed, AWS stated that it was still looking into the issues Kove had raised.

---

[54] Dkt. 359 at 1–2.

[55] Local Rule 37.2.

[56] *Lukis v. Whitepages, Inc.*, No. 19-cv-4871, 2021 WL 1600194, at *16–17 (N.D. Ill. Apr. 23, 2021) (refusing to consider 13 issues on which parties hadn't properly met and conferred).

12

AWS had just begun that investigation and its search ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to determine if any other similar documents had been collected or produced. After that review, AWS counsel was in the process of conferring with their client on next steps when Kove filed its motion. The parties hadn't been unable to reach an accord—rather, they hadn't substantively discussed the issues that Kove raised on January 3, 2022 at all. And AWS's willingness to investigate this issue, despite Kove's belated raising of it, further shows that Kove filed its motion prematurely, before the parties had reached an impasse.

Accordingly, Kove's motion should be denied.[57]

### C.   Kove Isn't Entitled to Fees.

Kove isn't entitled to the fees and costs associated with bringing its motion. As detailed above, AWS complied with the Court's Order, and thereafter tried to accommodate Kove's requests for additional information. At the very least, AWS made a good faith effort to comply with the Court's Order.[58] This included identifying the individuals at AWS who could collect the information, providing them with the Order and operative language, and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

And after Kove brought ▓▓▓▓▓▓▓▓▓▓ document to AWS's attention, which Kove could've done long before now, AWS studied its entire production and collection to determine if other similar documents were available. Following that review, counsel was in the process of

---

[57] *See Lukis*, 2021 WL 1600194, at *17.

[58] *Gardner v. Johnson*, No. 08-cv-50006, 2009 WL 5215589, at *4 (N.D. Ill. Dec. 30, 2009) (denying sanctions because plaintiff had failed to show that defendants' failure to comply with the Court's order "was intentional on the part of either Defendants or Defendants' counsel"); *see Hardwick v. United States*, No. 79-cv-1710, 2021 WL 242882, at *1 (N.D. Cal. Jan. 25, 2021) ("[A] court may assess attorney's fees as a sanction for the willful disobedience of a court order … [and] when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons").

13

conferring with their client on next steps when Kove filed its motion. And AWS has begun its search of its internal system for other ████████ documents.

The premature nature of Kove's motion also weighs against awarding Kove its fees.[59] As discussed above, the parties hadn't reached an impasse on the issues Kove raises in its motion. Indeed, Kove had first raised the ████████ document issues only two weeks before it filed its motion, without the parties having substantively discussed it. And AWS's continuing effort to collect documents responsive to the Court's Order after Kove raised issue with that production further counsel against awarding fees here.[60]

And the cases Kove cites are inapposite, with each involving repeated, egregious behavior by the non-complying party. For example, in *e360 Insight, Inc. v. Spamhaus Project*, the plaintiff failed to appear at a deposition and failed to provide interrogatory responses as the Court required.[61] When the plaintiff finally revised its interrogatories after the close of discovery, it identified 16 new witnesses and increased its damages calculation twelvefold.[62] AWS's good-faith efforts to comply with the Court's Order aren't analogous to these cases, each of which involved repeated defiant behavior by a non-complying party.[63]

Thus, Kove isn't entitled to the fees associated with bringing its motion.

---

[59] *See Asus Comp. Int'l v. Micron Tech. Inc.*, No. 14-cv-275, 2014 WL 12625461, at *4 (N.D. Cal. Apr. 21, 2014) (granting sanctions in part due to plaintiff first raising issue in motion to compel).

[60] *Gardner*, 2009 WL 5215589 at *4.

[61] 658 F.3d 637, 642–43 (7th Cir. 2011).

[62] *Id.*

[63] *See Domanus v. Lewicki*, 742 F.3d 290, 296–97 (7th Cir. 2014) (holding that defendant's repeated sending of deficient request that was inconsistent with Court's orders warranted sanction); *Bovinett v. HomeAdvisor, Inc.*, No. 17-cv-6229, 2020 WL 1330407, at *3–4 (N.D. Ill. Mar. 23, 2020) (holding that plaintiff's failure to revise discovery responses in accordance with Court's clear direction warranted attorney's fees); *Yahnke v. Cnty. of Kane*, No. 12-cv-5151, 2014 WL 1673739 (N.D. Ill. Apr. 28, 2014) (holding that it was improper for defendant to unilaterally determine that certain information within the scope of Court's order was irrelevant).

## IV. <u>CONCLUSION</u>

AWS has complied with the Court's Order. It conducted a reasonable search for responsive documents and generated . And when Kove belatedly raised issues with AWS's production, AWS worked to resolve those issues, including the issues that Kove raised just before filing its motion. Thus, Kove's motion to enforce the Court's order and to recover its attorneys' fees should be denied.

Dated: January 27, 2022   Respectfully submitted,

*/s/ R. William Sigler*
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (*pro hac vice*)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, which will send notice to all counsel of record who have consented to service by electronic means.

                                                                         */s/ R. William Sigler*
                                                                           R. William Sigler