**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Kove IO, Inc.,

                Plaintiff,

    v.

Amazon Web Services, Inc.,

                Defendant.

Civil Action No. 1:18-cv-08175

Hon. Rebecca R. Pallmeyer

Jury Trial Demanded

## KOVE IO, INC.'S OPPOSITION TO AWS'S MOTION TO STAY

**CONTENTS**

I.   INTRODUCTION ............................................................................................................... 1

II.  BACKGROUND ................................................................................................................ 2

   A.  AWS's Delays Regarding USPTO Proceedings. .................................................... 2

   B.  AWS's Dilatory Discovery Tactics. ....................................................................... 3

III. ARGUMENT ..................................................................................................................... 4

   A.  No Exceptional Circumstances Excuse AWS's Late Request. ............................... 4

   B.  There Are No Other Exceptional Circumstances Justifying A Stay. ...................... 6

     1.   Kove will suffer undue prejudice and severe tactical disadvantage from a stay ............. 7

     2.   *Ex parte* reexamination is unlikely to meaningfully simplify issues or reduce the burden of litigation ........................................................................................................... 12

   C.  AWS's reliance on *British Telecommunications* is misplaced. ........................... 14

IV.  CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

## CASES

*Affinity Labs of Texas, LLC v. BMW N. Am., LLC*,
No. 9:08-CV-164, 2009 WL 8590914 (E.D. Tex. Feb. 20, 2009) ...................................... 10

*Ambato Media, LLC v. Clarion Co., Ltd.*,
2012 WL 194172 (E.D. Tex. Jan. 23, 2012) ......................................................................... 13

*Area 55, Inc. v. Celeras LLC*,
2010 WL 11508457 (S.D. Cal. May 26, 2010) ..................................................................... 13

Brit. Telecommunications PLC v. IAC/InterActiveCorp,
2020 WL 5517283 (D. Del. Sept. 11, 2020) ......................................................................... 14

*Cirba Inc. v. VMware, Inc.*,
No. 1-19-cv-00742, slip op. (D. Del. Dec. 6, 2021) .............................................................. 9

*Celgene Corp. v. Peter*,
931 F.3d 1342 (Fed. Cir. 2019) ............................................................................................... 3

*CIVIX v. National Ass'n of Realtors*,
No. 05 C 6869, 2007 WL 7759150 (N.D. Ill. Sept. 17, 2007) ............................................ 12

Cheese Systems, Inc. v. Tetra Pak Cheese and Powder Sys. Inc.,
2014 WL 840752 (W.D. Wisc. Mar. 3, 2014) ........................................................................ 7

*Cooper Notification, Inc. v. Twitter, Inc.*,
2010 WL 5149351 (D. Del. Dec. 13, 2010) ........................................................................... 9

*Enprotech Corp. v. Autotech Corp.*
1990 WL 37217 (N.D.Ill. March 16, 1990) ........................................................................... 7

*Fujitsu Ltd. v. Tellabs Operations, Inc.*,
2012 WL 987272 (N.D. Ill. Mar. 21, 2012) ........................................................................... 7

*Genzyme Corp. v. Cobrek Pharm., Inc.*,
WL 686807 (N.D. Ill. Feb. 17, 2011) ..................................................................................... 6

*In re Groupon Derivative Litig.*,
882 F. Supp. 2d 1043 (N.D. Ill. 2012)..................................................................................... 6

*Inland Am. (LIP) SUB, LLC v. Lauth*,
2010 WL 670546 (S.D. Ind. Feb. 19, 2010) ......................................................................... 11

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ...................................................................................... 4

*Longhorn HD LLC v. NetScout Systems, Inc.*,
  2022 WL 71652 (E.D. Tex. Jan. 6, 2022) ................................................. 8

*Markel Am. Ins. Co. v. Dolan*,
  787 F.Supp.2d 776 (N.D. Ill. 2011) ........................................................ 4

*New Medium Techs. LLC v. Barco NV*,
  No. 1-05-cv-05620, slip op. (N.D. Ill. Jun. 5, 2008) ....................... 7, 13

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed.Cir.2005) ................................................................ 12

*Pro-Troll, Inc. v. Shortbus Flashers, LLC*,
  2016 WL 11432003 (N.D. Cal. Dec. 23, 2016) ................................... 12

*In re Rambus, Inc.*,
  753 F.3d 1253 (Fed. Cir. 2014) ....................................................... 12, 14

*SAS Inst., Inc. v. Iancu*,
  138 S. Ct. 1348, 1353 (2018) ................................................................. 10

*Smartflash LLC v. Apple, Inc.*,
  2014 WL 3366661 (E.D. Tex. July 8, 2014) ....................................... 10

Tap Pharm. Prod., Inc. v. Atrix Lab'ys, Inc.,
  2004 WL 422697 (N.D. Ill. Mar. 3, 2004) ............................................ 6

*Think Prod., Inc. v. Acco Brands Corp.*,
  2021 WL 4992534 (N.D. Ill. Aug. 3, 2021) ........................................ 12

*United States v. Masquelier*,
  210 F.3d 756 (7th Cir. 2000) .................................................................. 11

*Visteon Global Techs., Inc. v. Garmin Intern., Inc.*,
  2013 WL 434135 (E.D. Mich. Feb. 4, 2013) ......................................... 7

## **STATUTES**

35 U.S.C. §305 ................................................................................................ 8

35 U.S.C. § 315(b) ......................................................................................... 2

35 U.S.C. 316(a) ............................................................................................ 8

Plaintiff Kove IO, Inc. ("Kove") opposes Defendant Amazon Web Services, Inc.'s ("AWS") Motion to Stay Case Pending Outcome of *Ex Parte* Reexaminations (ECF No. 490).

## I.   INTRODUCTION

AWS's request for a stay of the case comes at least 17 months too late.  Local Patent Rule 3.5 states that "[a]bsent exceptional circumstances, no party may file a motion to stay the lawsuit pending any proceeding in the U.S. Patent and Trademark Office after the due date for service of that party's Final Contentions."  AWS served its Final Contentions on August 13, 2020.  By that time, it sought *inter partes* review against one of the three patents-in-suit, which was denied by the Patent Office, and AWS was time-barred from filing others.  And although it could have requested reexamination on any (or all) of the patents at any point in time, AWS elected not to do so until more than a year later, in November 2021, and filed its motion to stay this month, nearly a year and a half after the deadline imposed by LPR 3.5(b), and three years after this case was filed.  AWS offers nothing by way of "exceptional circumstances" to justify its delay.  It relies instead on the conclusory assertion that the references it relies on for the reexaminations were "recently uncovered."  This statement, devoid of supporting facts, cannot constitute "exceptional circumstances," especially when the references were allegedly publicly available the whole time.  Local Patent Rule 3.5 requires diligence, so that stay requests are not tactically delayed to disadvantage the non-moving party.  There are no facts on the record showing such diligence, and therefore AWS' motion should be denied.

Further, there is nothing exceptional about the other circumstances considered by courts on motions to stay.  Kove would suffer severe prejudice by a stay.  The parties and the Court have already expended tremendous resources in litigating this case through claim construction and most of fact discovery.  The stay requested is of indeterminant length, and its outcome is highly unlikely to simplify the issues in this case.  A stay would be a one-sided windfall for AWS, which does not

1

make sense when it was AWS that chose to wait three years to seek reexamination. AWS, like defendants everywhere, would of course prefer to delay the day of reckoning, but it cannot do so at this late date absent exceptional circumstances. Nothing about the circumstances is exceptional, and thus its motion to stay should be denied.

## II. BACKGROUND

Kove filed this lawsuit on December 12, 2018, alleging infringement of three patents: U.S. Patent Nos. 7,103,640 (the "'640 patent"), 7,223,978 (the "'978 patent"), and 7,814,170 (the "'170 patent") (collectively, the "Asserted Patents"). Dkt. 1.

### A. AWS's Delays Regarding USPTO Proceedings.

Kove served its complaint on December 14, 2018 (Dkt. 15), which began the one-year statutory period for AWS to petition the U.S. Patent and Trademark Office (USPTO) for *inter partes* review ("IPR").[1] Dkt. 52 at 6–7. On December 12, 2019, two days before the end of the one-year period, AWS filed an IPR petition against the '978 patent but chose not to file IPRs against either of the other two patents-in-suit. The petition was denied on June 16, 2020. Ex. 1.

Two months later, on August 13, 2020, AWS filed its Final Noninfringement Contentions, triggering LPR 3.5(b), which makes clear that after the party's final non-infringement contentions have been served, it may not file a motion to stay pending a U.S. Patent and Trademark Office proceeding absent "exceptional circumstances." LPR 3.5(b); *see also* Dkt. 183-2 (Ex. A) at 5 (AWS Final Noninfringement Contentions). Fifteen months later, AWS filed its requests for reexamination against all three patents on November 19, 2021.[2] Dkt. 490 at 3.

---

[1] 35 U.S.C. § 315(b) ("An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner . . . is served with a complaint alleging infringement of the patent.").

[2] AWS refers to *ex parte* reexamination as "EPR." Similar monikers are used for AIA review proceedings, including *inter partes* review (IPR). To be clear, *ex parte* reexamination is <u>not</u> an AIA review proceeding.

**B. AWS's Dilatory Discovery Tactics.**

Over the last three years, Kove has invested tremendous resources to move this case forward, having to engage in extraordinary litigation to obtain from AWS even the basic materials needed to prosecute its case. At every turn, it has met foot dragging, delay, and obstruction by AWS, requiring disproportionate motion practice to obtain discovery AWS is plainly required to produce. This systematic delay has included, for example:

- AWS moving to dismiss Kove's complaint (Dkt. 36) and asking to stay discovery pending resolution (Dkt. 39). The Court granted-in-part and denied-in-part the stay motion and denied the motion to dismiss. Dkt. 41; Dkt. 110.[3]

- Failing to produce *any* source code for more than *four months* after Kove served its source code discovery requests. Dkt. 71 at 3.

- Omitting dozens of relevant source code packages from what it did produce, causing months of back-and-forth correspondence and meet-and-confers. *See id.* (describing AWS's recalcitrance and requesting modification of the scheduling order); Dkt. 79 (granting-in-part Kove's opposed motion to extend the case schedule).

- Continuing to refuse production of core technical documents, necessitating motion practice. *See* Dkt. 301 (granting Kove's Motion to Compel additional documents (Dkt. 176, 177)).

- Failing to comply with the Court's Order regarding production of Wikis, necessitating additional motion practice. Dkt. 403 at 1-2. The Court granted Kove's motion in large part. Dkt. 497 at 26–28.

- Refusing production of readily available financial, hardware, and metrics data, necessitating additional motions practice. Dkt. 405, 409 (currently pending).

- Refusing to produce plainly relevant AWS-level financial information. The Court granted Kove's Motion to Compel these documents. Dkt. 212, 359.

- Failing to comply with another Court Order, necessitating additional motions practice. Dkt. 493 (currently pending; oral argument scheduled for 1/28/22 per Dkt. 496).

---

It was created in 1980, 32 years before the AIA was enacted, *Celgene Corp. v. Peter*, 931 F.3d 1342, 1359 (Fed. Cir. 2019), thus it is not subject to the same AIA time bar and estoppel provisions as IPRs.

[3] The Court stayed deadlines pending *argument* on the motion to dismiss, but denied AWS's request to stay the case while its *motion* was pending. *See* Dkt. 39 at 4; Dkt. 41; 5/30/19 Hr'g Tr. at 43:8–9. The Court denied AWS's motion to dismiss on March 23, 2020. *See* Dkt. 110.

- Refusing discovery into custodian, Andy Jassy, including email production accorded by the ESI Order. The Court granted Kove's Motion to Compel responsive e-mail and Jassy's "six-pager" memo. Dkt. 441. Three months later, AWS had yet to produce any of the ordered discovery.[4]

Now, three years into the case, AWS seeks an indefinite stay as the U.S. Patent Office considers a reexamination request AWS recently filed.

## III. ARGUMENT

The Local Patent Rules provide: "Absent exceptional circumstances, no party may file a motion to stay the lawsuit pending any proceeding in the U.S. Patent and Trademark Office after the due date for service of that party's Final Contentions pursuant to LPR 3.2." There is no dispute that the deadline for serving final contentions has long passed (AWS served its LPR 3.2 final contentions almost two years ago, in August 2020). As shown below, there are no exceptional circumstances justifying a stay in this case.

### A. No Exceptional Circumstances Excuse AWS's Late Request.

A key reason for adopting LPR 3.5 was that it would "among other things, discourage parties from strategically requesting a stay in belated fashion." Judge Matthew F. Kennelly & Edward D. Manzo, *Northern District of Illinois Adopts Local Patent Rules*, 9 J. MARSHALL REV. INTELL. PROP. L. 202, 204 (2009).

AWS seems to argue that the exceptional circumstance is that "the PTO has ordered reexamination of all the asserted claims." Dkt. 490 at 12. This hardly qualifies as "exceptional" – the premise of virtually every stay motion is that the U.S. Patent and Trademark Office ("PTO")

---

[4] AWS claims its search for the Jassy memo is ongoing. Dkt. 470 at 2 ("AWS is conducting a search for the "six-pager" memorandum . . . ."). Months later, AWS still has not produced it. On Jassy's e-mails, after much back and forth, Kove provided on January 7, 2022 a final set of carefully tailored search terms intended to limit the burden on AWS while not forgoing substantive discovery. Ex. 2. AWS did not provided a response for weeks. Ex. 3 (1/18/22 letter from Kove to AWS) at 2. Today, at 4:23 p.m. ET, AWS finally responded.

has instituted some proceedings.[5]  The point of the rule is to encourage diligent action on the part

of the movant, which has nothing to do with whether the PTO instituted proceedings.

Instead, the key question is why AWS waited almost three years after this lawsuit was filed

(from December 2018 to November 2021) to file a request for reexamination of Kove's patents.

AWS argues that it did not file earlier based on its conclusory assertion that it "recently uncovered"

the reexamination references.  Dkt. 490 at 12–13.  Surely such a conclusory statement cannot

qualify as an "exceptional circumstance" or it would swallow the rule.  Any party could claim that

a prior art reference was "recently" discovered – or more to the point, it could simply not look for

a prior art reference, which would ensure that it was only discovered at an advantageous time.

AWS provides no facts or details explaining its diligence and why, despite that diligence, it could

not identify the prior art references earlier.  Its motion to stay fails for this reason alone – there is

no basis to conclude that the circumstance are "exceptional," and thus its motion is time barred.

Further, the allegation that these references were only "recently uncovered" is dubious.

The references in question are two publicly-available U.S. patents (the "McGarvey" and "Rajani"

patents) and two apparently publicly available publications ("Oracle publications").  These

publications would have had to have been publicly accessible for AWS to claim them to be prior

art.  Moreover, both the McGarvey and Rajani patents were listed as "References Cited" on the

face of other prior art references AWS disclosed in this litigation as early as 2019.  Ex. 4 at 1

(citing McGarvey); Ex. 5 at 2 (citing Rajani).  AWS has been aware of Oracle's database

technology for decades.  According to a patent filed in 1999 that AWS produced with its LPR

---

[5] For context, the USPTO grants *over 90%* of all reexam requests, making such grants run-of-the-mill, not exceptional.  Dkt. 490-2 (Ex. B) at 1 (PTO grants 92.2% of all reexam requests).  At a recent panel talk including the Director of the PTO's Central Reexamination Unit, PTO statistics showing a 95% acceptance rate for reexamination requests were presented during a discussion concerning the recent "significant" uptick in reexamination requests that are partially attributable to "parties trying to double-dip after having a patent challenge turned away by the PTAB." Ex. 9.

2.1(b) prior art disclosures, Oracle 7.3 was "the RDBMS of choice" for many industries. Ex. 6 at 49:48–60. According to Allan Vermeulen, a former AWS Distinguished Technologist, Amazon (which spun off AWS) ███████████ in 1999. Ex. 7. It cannot be credibly argued (and, indeed, not even AWS argues) that AWS could not have discovered these references with the exercise of reasonable diligence.

In short, AWS has failed to show any exceptional circumstances justifying its lack of diligence in pursuing its *ex parte* reexamination.

## B.      There Are No Other Exceptional Circumstances Justifying A Stay.

Generally speaking, in exercising its discretion as to whether to stay a case, a Court "must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043 (N.D. Ill. 2012) ("In deciding whether to grant a stay, courts will 'balance the competing interests of the parties and the interest of the judicial system.'" (quoting *Markel Am. Ins. Co. v. Dolan*, 787 F.Supp.2d 776, 779 (N.D. Ill. 2011))). As the movant, AWS bears the high burden of demonstrating both a need for a stay *and* the absence of prejudice to Kove. "'[I]f there is even a fair possibility that the stay . . . will work damage to some one else,' the party seeking the stay 'must make out a clear case of hardship or inequity in being required to go forward.'" *Id*. (quoting *Landis*, 299 U.S. at 255).

There is nothing exceptional about this case that would justify a stay in light of the three factors typically considered by courts in this district on stay motions – i.e., whether a stay will "(1) unduly prejudice or tactically disadvantage the non-moving party, (2) simplify the issues in questions and streamline the trial, and (3) reduce the burden of litigation on the parties and on the court." *Genzyme Corp. v. Cobrek Pharm., Inc.*, 2011 WL 686807, at *1 (N.D. Ill. Feb. 17, 2011) (citing *Tap Pharm. Prod., Inc. v. Atrix Lab'ys, Inc.*, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004)).

### 1. Kove will suffer undue prejudice and severe tactical disadvantage from a stay.

A delay of any length will compound the already significant prejudice Kove has faced in this case from AWS' delays. Suspending a case three-years into litigation, pending reexaminations that will take an unknowable amount of time to resolve, would not only make completing fact discovery more difficult when the stay is lifted, it will also force Kove to expend more time and resources it can ill-afford, litigating the validity of its patents before the UPSTO while AWS rests on the sidelines, only to have to re-litigate validity again on different grounds before this Court.

Indeed, even where the Local Patent Rules' "exceptional circumstances" time bar is not at issue, courts consider long delays to cut decidedly against staying a case. *See*, *e.g.*, *New Medium Techs. LLC v. Barco NV*, No. 1-05-cv-05620, slip op. at 2 (N.D. Ill. Jun. 5, 2008) (denying a stay where "[t]he Court and the parties have devoted substantial resources to this litigation in the course of the greater than 32 months that it has been pending, and any further delay would serve to prejudice Plaintiffs.") (Attached as Exhibit 8); *Fujitsu Ltd. v. Tellabs Operations, Inc.*, 2012 WL 987272, at *4 (N.D. Ill. Mar. 21, 2012) ("As the late Judge James B. Moran once wrote in a similar context: 'We are too far along the road to justify halting the journey while the [plaintiff] explores an alternate route.'" (quoting *Enprotech Corp. v. Autotech Corp.*, 1990 WL 37217, at *2 (N.D.Ill. March 16, 1990)), ("There is no per se rule that patent cases be stayed pending re-examination because such a rule would invite parties to unilaterally derail litigation." (quotation and citation omitted)). Other courts do likewise. *See*, *e.g.*, *Cheese Systems, Inc. v. Tetra Pak Cheese and Powder Sys. Inc.*, 2014 WL 840752, at *1 (W.D. Wisc. Mar. 3, 2014) (after three years of pendency, holding, "If I granted plaintiff's motion under these circumstances, it would create an incentive for patent litigants to use the reexamination process as a stalling tactic after they have run out of other options."); *Visteon Global Techs., Inc. v. Garmin Intern., Inc.*, 2013 WL 434135

at *2 (E.D. Mich. Feb. 4, 2013) (after delaying at least 15 months to 2 years in filing reexamination requests, defendant "offers no sound basis for its decision to seek reexamination at such an advanced stage of the litigation, inviting the conclusion that dong so was solely to delay a decision on the merits of [plaintiff's] claims.").

### i. *Reexaminations are of indefinite length.*

There are no rules governing how long an *ex parte* reexamination may take. Unlike an IPR, which must be resolved within 1 year of institution, *ex parte* reexamination has no prescribed timeline. *Compare* 35 U.S.C. § 305 (governing reexamination) *with* 35 U.S.C. § 316(a)(11) (governing *inter partes* review). AWS estimates that the reexams may conclude within roughly 14 months, *i.e.*, somewhere around March 2023. Dkt. 490 at 10. But this is just guesswork. There is nothing that requires all three reexaminations to be resolved so quickly. Each of the patents here have been assigned to a different examiner, meaning they will proceed on independent timelines. In recent years, reexaminations have been known to last upwards of 2 years, with annual average statistics fluctuating year-to-year.[6] And that does not account for subsequent appeals to the PTAB or the Federal Circuit, which together could add an additional 1.5–2 years to any stay.[7] The reported "significant" uptick in recent requests for *ex parte* reexamination may also slow the pace of reexaminations. *See supra* note 5. Courts often find that delays of such possible (but unknown) duration are prejudicial and inflict tactical disadvantage. *See*, *e.g.*, *Longhorn HD LLC v. NetScout*

---

[6] Average pendency was over 2 years in 2016–2018. *See* USPTO, Reexaminations – FY 2021, https://www.uspto.gov/sites/default/files/documents/Website_Op_stats_FY07-21Q1.pdf

[7] Each appeal to the Board can take on average approximately 4–5 months. *See* U.S. Court of Appeals for the Federal Circuit, Median Time to Disposition in Cases Terminated After Hearing or Submission, https://www.uspto.gov/sites/default/files/documents/appeal_and_interference_statistics_september2021.pdf. In 2021, PTO appeals to the Federal Circuit took on average 14 months. *See* https://cafc.uscourts.gov/wp-content/uploads/reports-stats/disposition-time/06_Med_Disp_Time_MERITS_table.pdf.

*Systems, Inc.*, 2022 WL 71652, at *2 (E.D. Tex. Jan. 6, 2022) (potential of two-year stay "will prejudice [defendant] by creating a clear tactical disadvantage); *Cirba Inc. v. VMware, Inc.*, No. 1-19-cv-00742, slip op. at 1 (D. Del. Dec. 6, 2021) (denying a stay "of indeterminate and likely quite substantial length" pending PTO proceedings, including reexamination) (Attached as Exhibit 10).

### ii. *Pausing the case will result in lost documents and faded memories.*

The longer this case is delayed, the more Kove will suffer from lost or misplaced documents and faded memories. *See, e.g.*, *Cooper Notification, Inc. v. Twitter, Inc.*, 2010 WL 5149351, at *4 (D. Del. Dec. 13, 2010) ("Resuming this litigation after a protracted stay would likely raise issues with stale evidence, faded memories, and lost documents.").

Indeed, this issue already is front and center in the case. *See, e.g.*, Ex. 13 (Walsh Tr.) at 49:11–13 (explaining that █████████████████████████████████████); Dkt. 405-40 (Ex. 39) at 5 (AWS ████████████████████████████████ and ██████████████████████████████████); Dkt. 403-21 (Ex. 20) at 2–3 (6/23/21 letter from AWS to Kove) ("[I]nvestigating email lists from over fifteen years ago and collecting email lists . . . would be unduly burdensome . . . ."); Dkt. 428 (AWS Opposition to Kove Motion to Compel) at 8 ("The temporal scope alone—15 years for S3 and 9 years for DynamoDB . . . shows the undue burden imposed by Kove's demands."); Ex. 11 (Vermeulen Tr.) at 76:13–17 ("I mean, it was 18 years ago. I have a hard time recalling specific sort of day-by-day events . . . ."), 334:14–18 ("Q: Do you know when DynamoDB launched? . . . A: I probably should know that, but I can't remember."); Ex. 12 (Barr Tr.) at 142:4–143:19 (in response to question about location of documents, stating "at this point we're talking 17 years ago for this document. I honestly don't know."). And of course employees change jobs and memories necessarily fade.

Already the Court had to grant a motion to compel AWS to produce documents from custodians because there were job changes. Dkt. 497 at 28–30 (granting Kove's motion for additional ESI custodians that Kove sought "based on their respective tenure at AWS").

### iii. The prejudice from AWS's delay falls disproportionately on Kove.

The prejudice of a stay would fall disproportionately – if not exclusively – on Kove. As memories fade and documents are lost, the prejudice falls on Kove. AWS has Kove's information and, of course, it is Kove's burden to prove its case. There is an information asymmetry to this case – virtually all of the proof needed for trial is in AWS' hands. Further, AWS incurs no expense by the reexamination proceedings – unlike IPRs, *ex parte* reexamination proceedings are not adversarial.[8] That means AWS bears no expense and can sit back and watch while Kove litigates the reexamination before the PTO. AWS also is not estopped by any decisions in the reexamination proceedings. *See Smartflash LLC v. Apple, Inc.*, 2014 WL 3366661, at *4 (E.D. Tex. July 8, 2014) ("This splitting of invalidity theories allows [defendant] to have the tactical advantage of two chances at a potentially dispositive defense."). Unlike IPRs, which are adversarial and where AWS would be estopped, this is a proverbial "free shot," allowing AWS to later litigate all of its invalidity defenses once the reexamination proceedings are dismissed. All costs, burdens, and prejudice fall on Kove.

This of course explains the tactical motivation for filing such a motion, as courts have recognized. *Affinity Labs of Texas, LLC v. BMW N. Am., LLC*, 2009 WL 8590914, at *2 (E.D. Tex. Feb. 20, 2009) (denying motion to stay where a "Defendant has reached back in history to the non-binding 'no risk for me' *ex parte* reexamination process . . . . Instead of streamlining the process, Defendants' choice guarantees the imposition of additional costs on [plaintiff], and indicates a lack

---

[8] *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018).

of desire to resolve the issues in the case in a timely manner" and noting that it allows a defendant to "lay behind the log, hoping for favorable developments with the passage of time.").  Any defendant would like to delay a case for years – particularly once it realizes the case is not going well – in hopes that either the passage of time or getting lucky in the PTO will save it.  Or worse, some defendants even hope that they can outspend smaller rivals and win a war of attrition.

### iv.    *AWS's discovery delays should not be rewarded.*

AWS suggests that a stay is appropriate because, in its view, "in many ways this case already is stayed, at least with respect to the parties" because the Court postponed setting future case deadlines "pending this Court's decisions on the . . . outstanding discovery motions."  Dkt. 490 at 11.  The hypocrisy in AWS's position is that it is the architect behind the delay:  for all but one of the pending and recently decided discovery motions, it was AWS's refusal to comply with basic discovery obligations that caused Kove to move (in certain cases, twice) for relief.[9]  The Court has already undertaken the substantial burden of resolving numerous motions dealing with AWS's discovery misconduct, including providing a detailed order covering four of the six discovery motions AWS cites in its brief.  AWS's reliance on delays caused by its own discovery obstruction as justification for *even more* delays should not be rewarded.  *See United States v. Masquelier*, 210 F.3d 756, 759 n.1 (7th Cir. 2000) ("We are reminded of the adage defining chutzpah, where the man who kills both his parents throws himself on the mercy of the court because he is an orphan.").

---

[9] AWS's reliance on the number of pending discovery disputes to support its late request for a stay is not only mooted in large part by the Court's recent order (Dkt. 497), but it seeks to capitalize on its own discovery misconduct that necessitated the motions in the first instance and "smacks of the type of gamesmanship that has no place in litigation in federal court."  *See Inland Am. (LIP) SUB, LLC v. Lauth*, 2010 WL 670546, at *2 (S.D. Ind. Feb. 19, 2010) (disapproving of defendant's motion for stay after requesting additional time to respond to discovery requests when it "had no intention of responding").

### 2. *Ex parte* reexamination is unlikely to meaningfully simplify issues or reduce the burden of litigation.

The second and third factors also militate against a stay. The PTO's reexamination of Kove's patents is unlikely to simplify issues or reduce the burden of litigation. First, none of AWS's reexamination references has been asserted as prior art in this case, rendering any PTO findings about them irrelevant. Further, *ex parte* reexamination has no statutory estoppel effect, meaning that AWS would have a free second bite at the apple in District Court. *See Think Prod., Inc. v. Acco Brands Corp.*, 2021 WL 4992534, at *4 (N.D. Ill. Aug. 3, 2021) ("The PTO's validity decisions [by *ex parte* reexamination] do not serve as an estoppel bar in district court . . . ."); *see also*, *e.g.*, *Pro-Troll, Inc. v. Shortbus Flashers*, LLC, 2016 WL 11432003, at *1 (N.D. Cal. Dec. 23, 2016) ("Shortbus Flashers had a choice of applying for ex parte reexamination or inter partes review. The choice of ex parte reexamination was strategically advantageous to Shortbus Flashers because the result of the reexamination will have no estoppel effect on Shortbus Flashers's arguments here. . . . [E]ven if the PTO decided not to invalidate the patent after reexamination, Shortbus Flashers could continue to press an invalidity argument here.").

Second, the reexaminations will have no meaningful impact on claim construction because the PTO interprets claims of expired patents during reexamination according to the *Phillips* standard (instead of the "broadest reasonable interpretation" standard), which this Court has already done. Dkt. 484; *In re Rambus, Inc.*, 753 F.3d 1253, 1255–56 (Fed. Cir. 2014) ("If, as is the case here, a reexamination involves claims of an expired patent, a patentee is unable to make claim amendments and the PTO applies the claim construction principles outlined by this court in *Phillips*." (citation omitted)). And because Kove's claims cannot be amended, there is no risk that resources will have been wasted litigating claims that get amended during reexamination. *Cf. CIVIX v. National Ass'n of Realtors*, 2007 WL 7759150, at *3 (N.D. Ill. Sept. 17, 2007)

(expressing concerns over wasting resources due to possibility of claims being amended).

Lastly, the burden of litigation is very unlikely to be meaningfully reduced. The only circumstance in which the PTO's reexamination would materially reduce the litigation burden would be if the PTO invalidates all or almost all of Kove's 19 asserted claims. By AWS's own evidence, there is only a 14.2% chance that all claims of a patent will be cancelled in any given reexamination. *See* Dkt. 490 Ex. B at 2. With three reexaminations before three different examiners, the likelihood that all of Kove's claims will be cancelled is even smaller. Whether any of Kove's claims will be cancelled is purely speculative. Staying a case based on such speculation does not serve "the interests of justice" and "would invite parties to unilaterally derail timely patent case resolution by seeking reexamination and not promote the efficient and timely resolution of patent cases." *See Ambato Media, LLC v. Clarion Co., Ltd.*, 2012 WL 194172, at *2 (E.D. Tex. Jan. 23, 2012); *Area 55, Inc. v. Celeras LLC*, 2010 WL 11508457, at *2 (S.D. Cal. May 26, 2010) (speculation about claim cancellation based on reexamination statistics "does not weigh in favor of staying the litigation"). That a reexamination could, in rare circumstances, be successful in invalidating one or more claims can be said in any case, so it hardly qualifies as an exceptional circumstance justifying a stay.

Even if only some of Kove's claims survive, the shape of what remains of discovery will be largely unchanged, since many of Kove's asserted claims cover the same accused products and features. *New Medium Techs*, slip op. at 2 (considering the scope of infringement issues that would remain after reexamination in denying stay) (Attached as Exhibit 8). Thus, in all but the most extreme (and unlikely) outcomes, the scope of fact discovery, expert discovery, and summary judgment would be only minimally impacted by the outcome of the reexam. AWS's hyperbolic assertion that reexamination could "potentially resolv[e] the whole lawsuit," Dkt. 490 at 6, or that

13

it could moot "the issues presented in [all pending] motions," *id*. at 9, ignores all but the most extreme (and unlikely) outcomes.

### C. AWS's reliance on *British Telecommunications* is misplaced.

*British Telecommunications PLC v. IAC/InterActiveCorp*, 2020 WL 5517283 (D. Del. Sept. 11, 2020), an out of district case, does not change the analysis *supra*. Most importantly, the District of Delaware does not have a Local Patent Rule that "exceptional circumstances" must be demonstrated to seek a stay pending PTO review after final contentions have been served.

Moreover, the circumstances of that case were drastically different, making the case inapposite. The reexamination request involved only one claim of one patent. *Id*. at *9 ("The reexamination . . . will result in either cancellation, confirmation, or amendment of . . . the only claim at issue in this litigation."). The court went out of its way to note that this was different than more complex cases with more than a minimal single claim at issue, where it makes the prospect of simplification much less likely. *Id.* at *9–10. Here, 19 claims across three patents in three separate reexaminations must be cancelled to dispose of the case (which is an extraordinarily unlikely outcome), and not a single invalidity issue presented in this litigation will be clarified because the reexaminations concern different prior art. Also unlike this case, four of the six patents in *British Telecommunications* were dismissed on patent eligibility grounds, and a fifth was subject to an IPR, based on which it was severed and stayed. *Id.* at *1. The party opposing the stay even took an interlocutory appeal of the dismissal order. *Id*. The court relied on the actual reasoning of the PTO with respect to the one claim at issue reaching a decision as to the likelihood that the claim would be rejected based on the Court's assessment of the strength of the prior art, *id.* at *10, which made sense when it was not a multi-patent, multi-claim case such as this. Finally, the court expressed concern for the potential of wasted resources if the claim were to be amended during reexamination. *Id*. at * 9. But, because Kove's patents are expired and cannot be amended, that

concern is not present here. *Rambus*, 753 F.3d at 1256 ("If, as is the case here, a reexamination involves claims of an expired patent, a patentee is unable to make claim amendments . . . .").

## IV.    CONCLUSION

This case has been delayed enough by AWS. It chose not to file its reexamination request until 3 years after this case was filed, then missed the deadline for filing a motion to stay pending PTO proceedings, and now has failed to demonstrate any exceptional circumstances justifying its untimely motion. Accordingly, Kove respectfully requests that the Court deny AWS's motion to stay.

Dated: January 27, 2022

Respectfully submitted,

*/s/ Khue Hoang*

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
750 Third Avenue, Suite 2400
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 623-1449

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com
Phil Eklem (*pro hac vice*)
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1710 Rhode Island Ave, NW, 12th Floor
Telephone: (202) 894-7310
Facsimile: (650) 623-1449

Renato Mariotti (State Bar No. 6323198)
rmariotti@thompsoncoburn.com
Holly H. Campbell (State Bar No. 6320395)
hcampbell@thompsoncoburn.com
THOMPSON COBURN LLP
55 E. Monroe St., 37th Floor
Chicago, IL 60603
Telephone: (312) 346-7500
Facsimile: (312) 580-2201

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard (Identification No. 155188)
sballard@reichmanjorgensen.com
Kate M. Falkenstien *(pro hac vice)*
kfalkenstien@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

**ATTORNEYS FOR PLAINTIFF
KOVE IO, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of January 2022, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Khue Hoang*
Khue Hoang