IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOVE IO, INC., *Plaintiff*, v. AMAZON WEB SERVICES, INC., *Defendant*. | Case No. 1:18-cv-8175 |

**AWS'S REPLY IN FURTHER SUPPORT OF MOTION TO STAY CASE PENDING OUTCOME OF *EX PARTE* REEXAMINATIONS (DKT. 490)**

Alan M. Fisch
alan.fisch@fischllp.com
R. William Sigler
bill.sigler@fischllp.com
Jeffrey M. Saltman (*pro hac vice*)
jeffrey.saltman@fischllp.com
Lisa Phillips (*pro hac vice*)
lisa.phillips@fischllp.com
Matthew Benner (*pro hac vice pending*)
matthew.benner@fischllp.com
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. THE RELEVANT FACTORS CONTINUE TO WARRANT A STAY. ..............................2

    A. A Stay Pending the EPRs Will Simplify the Issues for Trial. .......................................2

    B. A Stay Will Reduce the Burdens of Litigation. .............................................................3

    C. Kove Fails to Show Any Undue Prejudice or Tactical Disadvantage. ..........................5

III. KOVE'S LOCAL PATENT RULE ARGUMENTS ARE UNAVAILING........................10

IV. CONCLUSION................................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**

*Baxter Int'l v. Becton, Dickinson & Co.*,
  No. 17-cv-7576, 2018 WL 11189348 (N.D. Ill. Nov. 26, 2018) ............................................... 6

*Baxter Int'l, Inc. v. CareFusion Corp.*,
  No. 15-cv-9986, 2017 WL 11624669 (N.D. Ill. May 31, 2017) ............................................... 6

*Black & Decker Inc. v. Positec USA, Inc.*,
  No. 13-cv-3075, 2013 WL 5718460 (N.D. Ill. Oct. 1, 2013) ................................................... 8

*Brit. Telecommc'ns v. IAC/InterActiveCorp*,
  No. 18-cv-366, 2020 WL 5517283 (D. Del. Sept. 11, 2020) ............................................... 2, 5

*Caravan Canopy Int'l Inc. v. Home Depot U.S.A., Inc.*,
  No. 19-cv-6224, 2021 WL 831028 (C.D. Cal. Feb. 25, 2021) ................................................. 5

*CIVIX v. Nat'l Ass'n of Realtors*,
  No. 05-cv-6869, 2007 WL 7759150 (N.D. Ill. Sept. 17, 2007) ............................................. 11

*ClearPlay v. Dish Network LLC*,
  No. 2:14-cv-191, 2021 WL 2515008 (D. Utah June 18, 2021) ........................................ 10, 11

*Gould v. Control Laser Corp.*,
  705 F.2d 1340 (Fed. Cir. 1983) ............................................................................................. 11

*Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*,
  No. 14-cv-856, 2014 WL 2505166 (N.D. Ill. May 29, 2014) .................................................. 8

*JAB Distributors, LLC v. London Luxury, LLC*,
  No. 09C5831, 2010 WL 1882010 (N.D. Ill. May 11, 2010) ................................................... 3

*Medline Indus., Inc. v. C.R. Bard, Inc.*,
  No. 17-cv-7216, 2019 WL 10948865 (N.D. Ill. Sept. 10, 2019) ............................................. 3

*Oxygenator Water Techs., Inc. v. Tennant Co.*,
  No. 20-cv-358, 2021 WL 4622241 (D. Minn. Oct. 7, 2021) ................................................... 4

*Oyster Optics, LLC v. Ciena Corp.*,
  No. 4:20-cv-2354, 2021 WL 4027370 (N.D. Cal. Apr. 22, 2021) ........................................... 4

*Putco, Inc. v. Carjamz Com Inc.*,
  No. 20-cv-50109, 2021 WL 4926499 (N.D. Ill. Mar. 2, 2021) ..................................... 2, 3, 5, 7

*SAS Institute, Inc. v. Iancu*,
  138 S. Ct. 1348 (2018) .......................................................................................................... 10

*SCA Hygiene Prod. Aktiebolag v. Tarzana Enters., LLC*,
   No. 17-cv-4395, 2017 WL 5952166 (C.D. Cal. Sept. 27, 2017) ................................................ 4

*Smartflash LLC v. Apple Inc.*,
   621 F. App'x 995 (Fed. Cir. 2015) .............................................................................................. 5

*Softview Comput. Prods. Corp. v. Haworth, Inc.*,
   No. 97-cv-8815, 2000 WL 1134471 (S.D.N.Y Aug. 10, 2000) ................................................ 5

*Spa Syspatronic, AG v. Verifone, Inc.*,
   No. 2:07-cv-416, 2008 WL 1886020 (E.D. Tex. Apr. 25, 2008) ............................................... 7

*Sun-Flex Co. v. Softview Computer Prod. Corp.*,
   No. 89-cv-296, 1989 WL 117976 (N.D. Ill. Sept. 27, 1989) ..................................................... 9

*TC Tech. LLC v. Sprint Corp.*,
   No. 16-cv-153, 2021 WL 4521045 (D. Del. Oct. 4, 2021) ........................................................ 3

## Other Authorities

35 U.S.C. § 302 ............................................................................................................................. 12

35 U.S.C. § 303(a) .......................................................................................................................... 9

35 U.S.C. § 305 ............................................................................................................................... 9

Local Patent Rule 3.5(b) ......................................................................................................... 10, 14

**I.      INTRODUCTION**

All three relevant factors here continue to favor a stay. First, Kove doesn't dispute that the EPRs may moot this entire case, and thus a stay would eliminate the risk of the parties, the Court, and the taxpayers unnecessarily devoting further resources to it. Nor does Kove dispute that the simplification factor strongly favors a stay where, as here, the PTO is reviewing all asserted claims. Second, Kove doesn't dispute that significant, resource-intensive case tasks remain ahead, including further fact discovery, expert discovery, dispositive motions, and trial itself. Indeed, at the January 28 hearing on discovery motions, Kove stated that "[we] aren't more than halfway through the number of depositions we have yet to take."[1] Third, Kove doesn't dispute that it delayed in filing this case until 12 years after AWS launched one of the accused products, and six years after it launched the other. Kove also concedes that the patents are expired, so any alleged infringement has stopped and monetary damages can no longer be accruing. And though Kove nonetheless asserts that any delay from a stay will cause it prejudice, it cites no more than the ordinary prejudice inherent in any stay pending post-grant proceedings.

Beyond that, Kove's response raises two arguments that don't comport with the record or justify denial of the motion. Kove suggests that AWS has delayed and obfuscated discovery, thus frustrating the progress of the case and making a stay unjust. But Kove doesn't disclose that its own counsel sought multiple recent extensions of the case schedule due to trials in other matters. And, after filing its response laying the blame for delay on AWS, Kove backtracked at the January 28 hearing, stating that they too are responsible for delays in the case.[2] Kove also argues that AWS unduly delayed in seeking reexamination and could have found the invalidating prior art

---

[1] *E.g.*, Dkt. 505 at 40:3–5.

[2] *Id*. at 43:15–20 ("We are well aware that this case has taken a very, very long time. We are not laying the blame squarely on anyone. … Some of it, candidly, yes, was due to trial schedules by us.").

1

earlier. But this ignores that the timing of AWS's reexaminations are an artifact of Kove's delay in filing this case more than 12 years after AWS launched S3, when Kove's patents were about to expire. Indeed, the manuals and guides that the PTO has determined raise substantial questions about the validity of every asserted claim relate to Oracle software introduced in the early 1990s. Had Kove not waited so long to bring its infringement claims, such prior art—which Kove didn't submit to the PTO when it sought these patents—would have been more easily accessible.

For these reasons and others detailed below and in AWS's motion, a stay is warranted pending the outcome of the reexaminations.

## II. THE RELEVANT FACTORS CONTINUE TO WARRANT A STAY.

### A. A Stay Pending the EPRs Will Simplify the Issues for Trial.

The first factor, "whether the stay will simplify the issues in question and streamline the trial,"[3] continues to strongly favor a stay. Kove doesn't dispute that this Court, the Federal Circuit, and other courts have repeatedly found that this factor strongly favors a stay where, as here, the PTO initiates review proceedings on all asserted claims.[4]

Moreover, it's undisputed that in a given EPR, on average, there's a 78.6 percent chance that the PTO will invalidate at least one asserted claim.[5] Here, the PTO initiated three EPRs, compounding the chance that one or more asserted claims won't survive. And contrary to Kove's arguments,[6] the elimination of any asserted claims would significantly simplify the case, even if some other claims survive. Each claim that's eliminated will simplify the infringement analysis

---

[3] Dkt. 490 at 5 (quoting *Putco, Inc. v. Carjamz Com Inc.*, No. 20-cv-50109, 2021 WL 4926499, at *1 (N.D. Ill. Mar. 2, 2021)).

[4] *See* Dkt. 490 at 6 n.26 (citing eight cases emphasizing this, three from N.D. Ill.); *see also Brit. Telecommc'ns v. IAC/InterActiveCorp*, No. 18-cv-366, 2020 WL 5517283, at *9 (D. Del. Sept. 11, 2020) (Bryson, J.) (describing whether "stay is likely to simplify the issues" as "most important factor").

[5] *See* Dkt. 490-2 (Ex. B) at 2 (§ 10.b).

[6] *See* Dkt. 503 at 13–14.

by one or multiple claim elements, which will directly simplify expert reports and expert discovery, dispositive motions, and trial. And this Court's cases confirm that this favors a stay.[7]

Additionally, Kove argues that the EPRs "will have no meaningful impact on claim construction because the PTO interprets claims of expired patents during reexamination according to the *Phillips* standard," which this Court also applied.[8] But that suggests that a stay is advisable to avoid the possibility of contradictory rulings. And as discussed below, in connection with the burden factor, courts have granted stays after issuing *Markman* orders.[9] Kove also ignores that the expiration of the three patents-in-suit, and in turn Kove's inability to amend, means that any flawed claims will be found invalid.[10] And Kove doesn't address the cases finding that this increased chance of invalidation tips the simplification factor more heavily toward a stay.[11]

## B. A Stay Will Reduce the Burdens of Litigation.

The second factor, "whether the stay will reduce the burden of litigation on the parties and on the court,"[12] also continues to favor a stay. There remains no trial date set, and the parties haven't begun any expert discovery. And as Kove acknowledged at the recent January 28 hearing, significant portions of fact discovery—including the bulk of the party and third-party depositions—and three pending discovery motions also remain outstanding.[13]

---

[7] *Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 17-cv-7216, 2019 WL 10948865, at *2 (N.D. Ill. Sept. 10, 2019) (finding this factor to favor stay in part based on PTO statistics); *JAB Distributors, LLC v. London Luxury, LLC*, No. 09-cv-5831, 2010 WL 1882010, at *5 (N.D. Ill. May 11, 2010) (same).

[8] Dkt. 503 at 12.

[9] *See*, *e.g.*, *Oxygenator Water Techs.*, *infra*.

[10] *TC Tech. LLC v. Sprint Corp.*, No. 16-cv-153, 2021 WL 4521045, at *6 (D. Del. Oct. 4, 2021).

[11] *See* Dkt. 490 at 7 n.34.

[12] *Putco*, 2021 WL 4926499, at *1.

[13] *E.g.*, Dkt. 505 at 40:2–6 (Kove: "And, again, with all due respect, your Honor, I don't see discovery completing because we haven't really – aren't more than halfway through the number of depositions we have yet to take, the majority of which, just by a sheer count, are of Amazon witnesses.").

Yet Kove's arguments against a stay focus on costs incurred, instead of the prospective costs on the parties and the taxpayers that a stay would reduce. For instance, Kove argues that "[t]he parties and the Court have already expended tremendous resources in litigating this case through claim construction and most of fact discovery."[14] But, while that may be true, it doesn't mean more resources should be spent litigating patent claims that the PTO may soon invalidate.

Indeed, a decision either way on a motion to stay can't alter the sunk costs, so courts focus on the expenses yet to come. As the Northern District of California explained in *Oyster Optics, LLC v. Ciena Corp.*, it "finds persuasive decisions that examine future costs that could be avoided through an IPR, rather than sunk costs that have already been incurred in the litigation."[15] Thus, that court found that the status of the litigation favored a stay, even though the parties had conducted fact discovery and drafted claim construction briefs.[16] The District of Minnesota reached a similar conclusion in *Oxygenator Water Technologies, Inc. v. Tennant Co.*, issuing a stay after its claim construction order and with a trial-ready date set.[17] There, "expert preparation [was] no doubt underway," but "expert disclosures [were] on hold while the Court resolves several pending motions that could further extend fact discovery, and dispositive motion practice [would] not begin for several months."[18] But the court observed that "the denial of a stay

---

[14] Dkt. 503 at 1.

[15] No. 4:20-cv-2354, 2021 WL 4027370, at *2 (N.D. Cal. Apr. 22, 2021); *accord SCA Hygiene Prod. Aktiebolag v. Tarzana Enters., LLC*, No. 17-cv-4395, 2017 WL 5952166, at *3 (C.D. Cal. Sept. 27, 2017).

[16] *Oyster Optics*, 2021 WL 4027370, at *2.

[17] No. 20-cv-358, 2021 WL 4622241, at *8 (D. Minn. Oct. 7, 2021) ("This case is neither incipient nor on the brink of trial. … [F]act discovery is nearly complete and a *Markman* order has been issued.").

[18] *Id*.

4

can have no effect whatsoever on past events," while "the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."[19] Thus, "[o]n the whole," the circumstances favored a stay.[20] And in *Caravan Canopy International Inc. v. Home Depot U.S.A., Inc.*, the Central District of California described that case as being "in its early stages," even though it "had already issued its Claim Construction Order."[21] The court then granted a stay in part because the parties still needed to finish document production, exchange expert reports, and file dispositive motions.

Here, as in *Oyster Optics*, *Oxygenator Water Technologies*, *Caravan Canopy*, and many other cases AWS previously cited that have granted stays at similar stages of litigation,[22] the substantial work yet to do in this lawsuit, including the trial, favors a stay.

    **C.**    **Kove Fails to Show Any Undue Prejudice or Tactical Disadvantage.**

Kove's response also confirms that the third factor, "whether the stay will unduly prejudice or tactically disadvantage the nonmoving party,"[23] continues to favor a stay, too. Kove acknowledges that the three patents-in-suit are expired,[24] and doesn't argue that it sells any products that practice those patents, or that it requires any injunctive relief.[25] Thus, it's undisputed that any alleged liability is compensable with monetary damages. And on similar facts, this Court

---

[19] *Id*. at *9 (quoting *Softview Comput. Prods. Corp. v. Haworth, Inc.*, No. 97-cv-8815, 2000 WL 1134471, at *3 (S.D.N.Y Aug. 10, 2000) ("[A]lthough there has been a great deal of activity in this litigation to date, much remains to be decided before the case is ready for trial.")).

[20] *Id*. (directing parties to complete fact discovery but otherwise staying case).

[21] No. 19-cv-6224, 2021 WL 831028, at *2 (C.D. Cal. Feb. 25, 2021) (quoting court's earlier order staying case against defendant Walmart).

[22] Dkt. 490 at 8–9 (discussing *Brit. Telecommc'ns*, 2020 WL 5517283, and *Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005 (Fed. Cir. 2015)); *id*. at n.38 (collecting and quoting additional cases).

[23] *Putco*, 2021 WL 4926499, at *1.

[24] Dkt. 503 at 12.

[25] *Compare* Dkt. 490 at 9 ("Kove didn't seek a preliminary injunction in this matter, and denies selling any products that practice its claimed inventions.") *with* Dkt. 503 (not addressing those facts).

and others have repeatedly reached that conclusion.[26] For instance, in *Baxter International Inc. v. Becton, Dickinson & Co.*, this Court observed that the asserted patents "have all expired," meaning the defendant "cannot infringe them during a stay."[27] This Court further explained that even if the plaintiff were a competitor, money damages would be sufficient to make it whole.[28]

And Kove doesn't explain why it took so long to file this case when the accused S3 product has been on the market since 2006, and the accused DynamoDB product since early 2012. In another, previously cited *Baxter* case, the plaintiff gave "no explanation" for a comparable delay, and this Court found it "difficult to accept Baxter's arguments that a relatively short delay is unfairly prejudicial."[29] Other cases reach similar conclusions.[30] Thus, the expiration of Kove's patents, the sufficiency of money damages, and Kove's unexplained decision to file this lawsuit near the end of the terms of the patents-in-suit all belie Kove's arguments that AWS's delay caused any undue prejudice or tactical disadvantage.[31] Indeed, in *Spa Syspatronic, AG v. Verifone, Inc.*, the Eastern District of Texas described a similar attempt to rely on a defendant's alleged delay as "somewhat disingenuous":

> Spa's argument regarding VeriFone's delay is somewhat disingenuous.… [It] brought its lawsuit late in the '862 patent's life, which ultimately resulted in a trial date after the expiration of the patent's twenty-year term. Since Spa will apparently be unable to enforce its exclusive intellectual property rights in the '862 patent post-trial, a permanent injunction to prevent future infringement will be unavailable as

---

[26] *See* Dkt. 490 at 10 n.42 & 43 (collecting cases finding no undue prejudice where plaintiffs didn't sell competing products, didn't or couldn't seek injunctive relief, or were non-practicing entities).

[27] No. 17-cv-7576, 2018 WL 11189348, at *2 (N.D. Ill. Nov. 26, 2018).

[28] *Id*. ("The only competitive disadvantage is that Becton might enjoy extra money that by rights should be Baxter's, which prejudgment interest will rectify.").

[29] *Baxter Int'l, Inc. v. CareFusion Corp.*, No. 15-cv-9986, 2017 WL 11624669, at *4 (N.D. Ill. May 31, 2017) (noting "allegedly infringing products were on the market for well over ten years before Baxter filed suit"); *see also* Dkt. 490 at 10 (discussing *Baxter v. CareFusion*, *supra*).

[30] *See* Dkt. 490 at 10 n.42.

[31] *E.g.*, Dkt. 503 at 10 (arguing that "prejudice from AWS's delay falls disproportionately on Kove").

6

a remedy, and therefore damages and pre-judgment interest provide an adequate measure of relief to Spa for any infringement finding.[32]

Kove's long delay in bringing this case has resulted in many of the discovery disputes that Kove blames AWS for in its response, as the Court recognized at the January 28 hearing.[33] And though Kove's response accuses AWS of "dilatory tactics" and claims "AWS's delay" has prejudiced Kove,[34] the record shows otherwise, with Kove omitting, among other things, that it agreed to all scheduling extensions. For example, in August 2021, Kove's counsel requested an extension of discovery due to an upcoming trial in another matter. AWS's counsel agreed to that request, and the parties' August 17 joint motion requesting a two-month extension of fact discovery stated: "Counsel for Kove has trial in another matter in the Northern District of California that is scheduled to begin on September 13, 2021 and may last for several weeks, restricting counsel's availability."[35] Yet, less than two weeks later, and without informing AWS, Kove's counsel asked the California court to postpone its other client's trial.[36] And after that, Kove's

---

[32] No. 2:07-cv-416, 2008 WL 1886020, at *2 (E.D. Tex. Apr. 25, 2008) (internal citation omitted); *accord Putco*, 2021 WL 4926499, at *2 (noting plaintiff's failure to seek injunctive relief in finding that plaintiff's "concerns about potential delay or strategic disadvantage are overstated").

[33] Dkt. 505 at 38:12–18 (Court: "I am concerned about the burden, I have got to say. Recognizing that I think there is some important information that Kove is going to need with respect to the damages issues, I recognize also significant concerns about the fact that we are looking at data from a long time ago maintained in, I think, probably a variety of different places in different ways.").

[34] *See*, *e.g.*, Dkt. 503 at 3 (purporting to describe "AWS's Dilatory Discovery Tactics," but omitting motions or issues where Kove didn't prevail, such as Dkt. 90 or Dkt. 351); *id*. at 15 ("This case has been delayed enough by AWS."); *id*. at 10 (arguing "AWS's delay" prejudiced Kove); *contra* Dkt. 490 at 13 n.57 (noting that Kove has sought and received voluminous discovery via, e.g., Kove's 237 RFPs).

[35] Dkt. 387 at 2 (¶ 5).

[36] *Droplets, Inc. v. Yahoo! Inc.*, N.D. Cal. No. 4:12-cv-3733, Dkt. 866 (15-page motion filed on Aug. 30, arguing court protocols excluding unvaccinated witnesses and jurors would violate Seventh Amendment and Jury Selection and Service Act of 1968); Dkt. 874 (postponing trial, after defendants agreed to do so).

7

counsel asked AWS for extensions of other deadlines, explaining that Kove's counsel had "several scheduling and personal conflicts that have cropped up."[37] Again, AWS agreed, and the parties have agreed on and jointly requested each extension since.[38] As such, it was unsurprising that Kove's counsel conceded at the January 28 hearing: "We are not laying the blame squarely on anyone. We understand that the situation has just unspooled over a far longer period of time than would otherwise be desirable. Some of it, candidly, yes, was due to trial schedules by us."[39]

Apart from its misdirected delay argument, Kove doesn't identify any undue prejudice or tactical disadvantage that it would suffer apart from the delay inherent in any stay. As noted, AWS had a statutory right to request EPR of Kove's patents. And this case is at a convenient stopping point, given the pause pending the resolution of the discovery motions and that the parties haven't begun expert discovery.

Kove's arguments on undue prejudice and tactical disadvantage thus boil down to the time it will take the PTO to complete the EPRs. But as this Court has repeatedly held, that's not enough for the prejudice factor to weigh against a stay.[40] And contrary to Kove's arguments, there's no indication that the EPRs will take very long, much less an unduly prejudicial time.[41]

---

[37] Ex. E (Kove 8-29-21 email).

[38] *See*, *e.g.*, Dkt. 447 (jointly requesting extension of fact discovery); Dkt 470 (reporting "Parties have agreed that a further extension to the close of fact discovery… is necessary"); Dkt 488 (jointly requesting extension of deadlines due to "number of outstanding discovery motions and [their] potential impact").

[39] Dkt. 505 at 43:16–20.

[40] *E.g.*, *Ignite USA, LLC v. Pacific Marketing International, LLC*, No. 14-cv-856, 2014 WL 2505166, at *3 (N.D. Ill. May 29, 2014); *Black & Decker Inc. v. Positec USA, Inc.*, No. 13-cv-3075, 2013 WL 5718460, at *1 (N.D. Ill. Oct. 1, 2013); *see also* Dkt. 490 at 9 n.40 (collecting additional cases).

[41] Dkt. 503 at 8 (arguing that "delays of such possible (but unknown) duration are prejudicial"). Notably, Kove's arguments don't refer to *undue* prejudice, which is what's relevant to this factor.

Kove overlooks that 35 U.S.C. § 305 commands the PTO to conduct EPRs and any agency appeals "with special dispatch."[42] In recent years, the PTO has followed that mandate. Here, it took just over a month for the PTO to issue the decisions granting AWS's EPR requests.[43] That was well before the statutory deadline to issue the decisions (i.e., February 19, 2022, three months from filing).[44] And based on the PTO's statistics, the EPRs most likely will conclude less than 14 months from now.[45] Although Kove argues that "average pendency was over 2 years in 2016–2018," that figure was 20.7 months in 2019, and has improved every year since.[46]

Likewise, Kove's contention that the EPRs may "proceed on independent timelines" is unsupported.[47] The three patents-in-suit are related. So, unsurprisingly, the PTO already is coordinating its efforts. All three EPRs are assigned to the same art unit.[48] The PTO mailed two of the decisions on the same day, and the Examiners who authored them conferred with the same Supervisory Patent Examiner.[49] The PTO also was working on the third decision at the same

---

[42] *See Sun-Flex Co. v. Softview Computer Prod. Corp.*, No. 89-cv-296, 1989 WL 117976, at *1 (N.D. Ill. Sept. 27, 1989) (finding non-movant's arguments on prejudice unpersuasive for this reason).

[43] *See* Dkt. 487-1 (16-page decision on '978 patent, mailed 12-23-21); Dkt. 487-2 (20-page decision on '640 patent, mailed 12-23-21); Dkt. 490-3 (22-page decision on '170 patent, dated 12-9-21 on the last page but mailed on 1-10-22).

[44] 35 U.S.C. § 303(a).

[45] *See* Dkt. 490-1 at 2 (showing "Average Months to EP Certificate" from filing date (i.e., Nov. 19, 2021, for EPRs at issue here) as 16.12). In the year before, the statistics were similar. *See id*. at 4.

[46] *See* Dkt. 503 at 8 n.6 (citing USPTO, Reexaminations – FY 2021, https://www.uspto.gov/sites/default/files/documents/Website_Op_stats_FY07-21Q1.pdf). The cited URL shows quarterly statistics for 2019 of 23.89, 19.73, 16.12, and 23.17 (for an average of 20.72). For 2020, the average is 19.87. These improved pendency times may have contributed to an uptick in EPR filings, although filings still are a fraction of what they were before IPRs (i.e., 273 in 2021, according to Kove's cited article, compared to totals of 600–780 in years 2007–12, *see* Dkt. 490-2).

[47] Dkt. 503 at 8.

[48] *See* Dkt. 487-1, 487-2, & 490-3.

[49] *See* Dkt. 487-1 & 487-2. Three examiners (i.e., the author and two conferees) reviewed each EPR.

9

time, though it wasn't mailed until after the holidays.[50] And as Kove acknowledges, "unlike IPRs, *ex parte* reexamination proceedings are not adversarial."[51] This means AWS will have limited, if any, further involvement in the EPRs, and couldn't delay them if it wanted to. Kove, on the other hand, will have the opportunity to accelerate those proceedings (e.g., by filing early any responses to PTO actions), further alleviating the run-of-the-mill prejudice inherent in any stay pending post-grant proceedings.[52]

    Accordingly, all three factors favor a stay.

**III.    KOVE'S LOCAL PATENT RULE ARGUMENTS ARE UNAVAILING.**

    The exceptional circumstances satisfying LPR 3.5(b) also remain present here. As AWS detailed, the court in *ClearPlay v. Dish Network LLC* found that "the USPTO's decision to reexamine *all* the claims in this case renders the circumstances here exceptional."[53] Here, too, the PTO ordered reexamination of all the asserted claims, and thus such circumstances exist.[54] Kove doesn't cite a single case applying the "exceptional circumstances" requirement, much less one denying a similar stay request on that basis.[55] And Kove fails to distinguish the persuasive authority that's on all fours.[56]

---

[50] *Compare* Dkt. 487-1 at 22–24 (indicating examiner reviewed prior art and litigation on 12-9-21) *with* Dkt. 490-3 (decision dated 12-9-21 on page 22, but mailed on 1-10-22).

[51] Dkt. 503 at 10.

[52] *See*, *e.g.*, Dkt. 487-1 at 4 (providing that Kove may file optional statement two months from mailing).

[53] No. 2:14-cv-191, 2021 WL 2515008, at *3 (D. Utah June 18, 2021) (granting stay despite parties having begun expert discovery and trial date set approximately three months away).

[54] And notably, unlike the IPRs that Kove draws comparisons to, the PTO didn't have to do so. As the Supreme Court explained in *SAS Institute, Inc. v. Iancu*, the EPR "statute allows the Director to institute proceedings on a claim-by-claim and ground-by-ground basis." 138 S. Ct. 1348, 1356 (2018) (holding that IPRs, by contrast, must be instituted on all challenged claims or none, contrary to previous PTO practice).

[55] *See* Dkt. 503. To AWS's knowledge, this Court has never denied a stay request based on a lack of exceptional circumstances under LPR 3.5(b).

[56] Kove ignores the section of AWS's motion on "exceptional circumstances" and *ClearPlay*, incorrectly

Additionally, Kove doesn't dispute that LPR 3.5 should be interpreted consistent with Congress's intent that EPRs provide a forum to test validity in an "inexpensive manner."[57] Rather, Kove's arguments that "[t]he parties and the Court have already expended tremendous resources in litigating this case" support staying it to prevent additional such expenditures.

The *ClearPlay* court also found convincing that the defendant couldn't have filed its "plenary requests" for EPR until after it had discovered "two of the references forming the basis of these requests."[58] Here, AWS's requests are entirely based on never-before-considered prior art that Kove didn't cite during the original prosecutions. And although Kove argues that AWS wasn't diligent in searching for the prior art it relied on in the EPR requests, that again ignores the impact of Kove's own decade-plus delay in alleging AWS infringes the now-expired patents.

Kove's patents claim priority back to the early dot.com era, based on a July 8, 1998 patent application.[59] And finding software references from that era, as well as satisfying the applicable evidentiary standards,[60] can be a Herculean task. Software development typically happens at a fast pace, in a competitive environment, using development tools that aren't optimized for record keeping. Developers often disclose software innovations to the public through the release

---

stating that "AWS offers nothing by way of 'exceptional circumstances' to justify its delay" and "relies instead on the conclusory assertion that the references … were 'recently uncovered.'" Dkt. 503 at 1.

[57] *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983); *accord CIVIX v. Nat'l Ass'n of Realtors*, No. 05-cv-6869, 2007 WL 7759150, at *2 (N.D. Ill. Sept. 17, 2007).

[58] 2021 WL 2515008, at *3. And Kove doesn't dispute that AWS brought its EPRs more quickly than the *ClearPlay* defendant, further establishing exceptional circumstances here. *See id.* at *3 (defendant had requested a stay "over three years after the deadline for final non-infringement contentions" had expired).

[59] *See, e.g.*, Dkt. 490-3 at 2.

[60] Defendants must prove invalidity by clear-and-convincing evidence. The PTO also applies requirements in post-grant proceedings concerning what constitutes prior art or a printed publication.

of new versions or patches, without leaving a lasting chronicle of the details. Those releases often aren't recorded in any patent.[61] And other publications or descriptions of them may be incomplete or unavailable. After all, developers encourage users to adopt each new version, and discard the old. URLs stop working, making it difficult to find prior art and show when it was publicly available. Indeed, one survey found that URLs cited in scientific journals have an average lifespan of 9.3 years.[62] In the software context, it's likely shorter. But most online publications discussing prior-art software releases, from the time Dr. Overton filed his patent applications or before, were long gone when Kove filed this lawsuit in late 2018.

Kove doesn't explain why it took so long to file. And Kove didn't provide AWS notice of alleged infringement beforehand, giving AWS a limited window to search for prior art. Nonetheless, after the window to file an IPR had passed, AWS identified prior art that it believes invalidates all patents-in-suit. Under 35 U.S.C. § 302, AWS was entitled to request PTO review of that prior art.[63] And the PTO agreed that it raised a "substantial new question of patentability."[64]

More specifically, in August 2021, AWS found a copy of the DBA Survival Guide, 1st ed. (October 1, 1995), by Joseph B. Greene, in a used book store. After contacting the author, AWS also identified the Oracle Names Administrator's Guide, Release 2.0 (1996). AWS didn't know about those references beforehand. Both references describe a no-longer-supported software release from the relevant time, namely Oracle version 7.3.[65] AWS primarily relied on those

---

[61] *See*, *e.g.*, Ronald J. Mann & Thomas W. Sager, *Patents, Venture Capital, and Software Start-Ups*, 36 Res. Pol'y 193, 197 (2007) ("[M]ost venture-backed software firms did not acquire any patents.").

[62] *See*, *e.g.*, Jason Hennesey & Steven Xijin Ge, *A Cross Disciplinary Study of Link Decay and the Effectiveness of Mitigation Techniques*, 14 BMC Bioinformatics S5, 3 (2013).

[63] 35 U.S.C. § 302 ("Any person at any time may file a request for [EPR] of any claim of a patent," based on prior-art patents or printed publications.).

[64] Dkt. 487-1, 487-2, & 490-3.

[65] *See* Dkt. 487-1, 487-2, & 490-3.

references in its EPR requests.[66] And though Kove suggests that Oracle was well known, information about each relevant version isn't readily available. After all, Dr. Overton and his patent lawyers didn't cite any Oracle references during the prosecution of the patents-in-suit in the late 1990s and early 2000s.

And Kove's reliance on the testimony of retired AWS employee Allan Vermeulen illustrates the difficulty of finding prior art this old, and an expert who can testify about the knowledge of those in the industry at the relevant time. Kove argues that AWS should've known about Oracle 7.3, because Vermeulen testified that he used a version of Oracle software as far back as 1999. But as Kove highlights elsewhere in its response, Mr. Vermeulen had trouble recalling the details on that and other topics from the distant past: "I mean, it was 18 years ago. I have a hard time recalling specific sort of day-by-day events…."[67] This and the other difficulties relating to potentially faded memories of events near the turn of the millennium result from Kove's choice to file this lawsuit near the end of the terms of the patents-in-suit. And that decision caused AWS disproportionate prejudice on validity issues, in addition to creating undue burdens for document collection throughout this matter.

Beyond its delay assertions, Kove also suggests that certain PTO statistics mean the circumstances here aren't exceptional. But in addition to facts that satisfied the *ClearPlay* court, Kove ignores that here the PTO granted three EPR requests.[68] If the odds that the PTO will grant

---

[66] In view of those references, AWS also relied on two patents that the PTO hadn't before considered. *See* Dkt. 487-1, 487-2, & 490-3.

[67] Dkt. 503 at 9.

[68] *See* Dkt. 503 at 4 ("AWS seems to argue that the exceptional circumstance is that 'the PTO has ordered reexamination of all the asserted claims.' … This hardly qualifies as 'exceptional' – the premise of virtually every stay motion is that the [PTO] has instituted some proceedings.").

one request on at least one claim are 92 percent, as Kove says,[69] then the odds that the PTO will grant three such requests are notably lower, at around 78 percent (.92 cubed). And the odds that the PTO will initiate EPR on *every* claim in all three requests (here, a total of 20 claims) must be lower still, although the precise statistics aren't available.

Kove also states that "the premise of virtually every stay motion is that the [PTO] has instituted some proceedings."[70] Even if that were correct,[71] there's no merit to Kove's suggestion that it means the circumstances here don't satisfy LPR 3.5(b). It's well established that a court may exercise its discretion to stay a case before the PTO initiates EPR. As the Federal Circuit has explained, "a motion to stay could be granted even before the [PTO] rules on a post-grant review petition," but "no doubt the case for a stay is stronger after post-grant review has been instituted."[72] Thus, the PTO's decisions granting AWS's EPR requests here strengthen the justification for a stay and, in combination with other facts, help satisfy LPR 3.5(b).

Accordingly, "exceptional circumstances" are present here.

IV.  **CONCLUSION**

The facts satisfy all three stay factors, as well as LPR 3.5(b). Thus, for the reasons above and in AWS's motion, this Court should stay this case until the final resolution of the EPR proceedings concerning Kove's asserted patent claims.

---

[69] *See id*. at 5, n.5.

[70] *Id*. at 4.

[71] Although it's academic, pre-institution stays aren't uncommon. For example, this Court granted pre-institution stays in *Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*, No. 14-cv-856, 2014 WL 2505166, at *3 (N.D. Ill. May 29, 2014), and *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15-cv-1067, 2015 WL 13650951, at *3 (N.D. Ill. May 5, 2015), which AWS's motion cited on other issues.

[72] *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014); *see also Ellenby Techs., Inc. v. Fireking Sec. Grp.*, 533 F. Supp. 3d 656 (N.D. Ill. 2021) (noting "[t]he Federal Circuit has expressed no opinion on whether it is a better practice to deny requested stays before IPR review has been instituted" before opting to deny stay without prejudice).

14

Dated: February 3, 2022

Respectfully submitted,

*/s/ R. William Sigler*
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (*pro hac vice*)
*lisa.phillips@fischllp.com*
Matthew R. Benner (*pro hac vice pending*)
*matthew.benner@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, which will send a copy to all counsel of record via email.

／s/ R. William Sigler
R. William Sigler