# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| KOVE IO, INC., | |
| *Plaintiff*, | Case No. 1:18-cv-8175 |
| v. | Judge Rebecca R. Pallmeyer |
| AMAZON WEB SERVICES, INC., | Jury Trial Demanded |
| *Defendant*. | |

**AMAZON WEB SERVICES, INC.'S ~~THIRD~~ FOURTH**
**AMENDED FINAL UNENFORCEABILITY AND INVALIDITY**
**CONTENTIONS**

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (*pro hac vice*)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

# TABLE OF CONTENTS

I.    AWS RESERVATIONS OF RIGHTS .................................................................. 3

II.   CURRENT IDENTIFICATION OF PRIOR ART FOR PATENTS-IN-SUIT ................... 4

    A.  PRIOR ART PATENTS AND PUBLICATIONS ............................................... 4
    B.  PRIOR ART SYSTEMS ............................................................................ 5

III.  SELECTION OF CURRENT GROUNDS OF INVALIDITY ..................................... 8

    '170 PATENT CLAIMS 1, 2, AND 12 ............................................................ 8
    '170 PATENT CLAIMS 6, 8, AND 15 ............................................................ 9
    '640 PATENT CLAIMS 17 AND 18 ............................................................... 9
    '640 PATENT CLAIM 24 ........................................................................... 10
    '978 PATENT CLAIMS 1, 3, 6, 10, 14, AND 31 ............................................ 11
    '978 PATENT CLAIMS 17, 23, AND 30 ....................................................... 12
    '978 PATENT CLAIM 24 ........................................................................... 12

IV.  EXEMPLARY OBVIOUSNESS ARGUMENTS AND REASONS TO COMBINE THE IDENTIFIED PRIOR ART ........................................................................ 13

V.   INVALIDITY CLAIM CHARTS FOR PATENTS-IN-SUIT .................................... 31

VI.  INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 112 .................... 32

VII.  INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 101 .................... 36

VIII.  UNENFORCEABILITY CONTENTIONS AGAINST PATENTS-IN-SUIT .................. 38

IX.  DOCUMENT PRODUCTION ....................................................................... 39

Pursuant to the Local Patent Rules and the Court's January 3~~September 17~~, 202~~1~~2 Minute Entry~~Order~~ (Dkt. No. 4~~189~~89), Defendant Amazon Web Services, Inc. ("AWS") provides the following ~~Third~~ Fourth Amended Final Unenforceability and Invalidity Contentions to Plaintiff Kove IO, Inc. ("Kove") for the Asserted Claims of the Patents-in-Suit, as defined herein. This disclosure contains the information required by LPR 3.1(b) (including as related to LPR 2.3(b) and (c)). As required by the Local Patent Rules, AWS herein identifies twenty-five prior art references, four prior art grounds per asserted claim, and four non-prior art grounds per asserted claim.

## I.      AWS RESERVATIONS OF RIGHTS

These contentions are limited to the claims identified in Kove's Second Amended Final Infringement Contentions Under Local Patent Rule 3.1 served on July 10, 2020 (the "Asserted Claims") for U.S. Patent Nos. 7,814,170 ("the '170 patent"), 7,103,640 ("the '640 patent"), and 7,233,978 ("the '978 patent") (collectively the "Patents-in-Suit").

These contentions are based on AWS's current knowledge, understanding, and beliefs based on the facts and information available at this time and are subject to supplementation and/or amendment as provided in the Local Rules, the Federal Rules of Civil Procedure, and/or any order of this Court, including the Court's December 17, 2021 Claim Construction Memorandum Opinion and Order (Dkt. No. 484). AWS also reserves the right to supplement and/or amend these contentions based on ~~claim construction rulings or arguments made in support thereof. AWS's contentions may change based upon the Court's construction of the claims or upon positions that Kove may take leading up to and after such construction(s~~future discovery, rulings in related proceedings, and any future amendments made by Kove to its infringement and validity contentions~~)~~. For at least this reason, nothing contained in these contentions should be understood or deemed to be an express or implied admission or contention with respect to the proper construction or scope of any terms in the asserted claims.

## II.    CURRENT IDENTIFICATION OF PRIOR ART FOR PATENTS-IN-SUIT

AWS provides below an identification with particularity of twenty-five items of prior art that anticipate or render obvious each Asserted Claim of the Patents-in-Suit.

AWS also reserves the right to argue that the proper priority date for any claim of the Patents-in-Suit is the patent's filing date and that the claims are not supported by earlier-filed applications.

### A.    Prior Art Patents and Publications

Subject to AWS's reservations set forth above, AWS lists below twenty-five (25) items of prior art that AWS currently believes either anticipate or render obvious the Patents-in-Suit in combination with one or more other references and/or the knowledge of one of ordinary skill in the art around the time of invention.[1]

1.    U.S. Patent No. 5,230,047 to Frey ("Frey"), assigned to IBM, issued July 20, 1993;

2.    "Distributed Name Servers: Naming and Caching in Large Distributed Computing Environments" by Terry (1985) ("Terry");

3.    "DNS RFC1034 Domain names – Concepts and Facilities" by Mockapetris(1987) ("RFC1034");

4.    "An Adaptive Data Placement Scheme for Parallel Database Computer Systems"by Hua and Lee (1990) ("Hua DBMS");

5.    "Design and Implementation of DDH: A Distributed Dynamic HashingAlgorithm" by Devine (1993) ("Devine DDH");

6.    "Scale in Distributed Systems" by Neuman (1994) ("Neuman");

7.    "Location-Independent Naming for Virtual Distributed Software Repositories" by Browne et al. (1995) ("Browne");

8.    "A Model for Worldwide Tracking of Distributed Objects" by van Steen, Hauck,and Tanenbaum (1996) ("van Steen");

9.    "The Core Legion Object Model" by Lewis and Grimshaw (1996) ("Lewis");

10.   U.S. Patent No. 5,542,087 to Neimat ("Neimat"), assigned to Hewlett-PackardCo., issued July 30, 1996;

11.   "Consistent Hashing and Random Trees: Distributed Caching Protocols forRelieving Hot Spots on the World Wide Web" by Karger et al. (1997) ("Karger '97");

---

[1] AWS's identification of four prior art grounds per asserted claim is found in Section III. The remaining references on this list are included, in an abundance of caution, because they provide evidence of the background knowledge and common sense of those of ordinary skill in the art at the alleged time of invention of the Patents-in-Suit.

12.    "Load Management in Distributed Video Servers" by Venkatasubramanian and Ramanathan (1997) ("Venkatasubramanian");

13.    "Resource Location in Very Large Networks" by Partha Dasgupta (1994) ("Dasgupta");

14.    "Distributed Web Caching System with Consistent Hashing" by Sherman (1999) ("Sherman");

15.    "Web Caching with Consistent Hashing" by Karger, Sherman, et al. (1999) ("Karger/Sherman");

16.    "Locating Copies of Objects Using the Domain Name System" by Kangasharju etal. (1999) ("Kangasharju");

17.    Dynamic Load Balancing on Web-server Systems by Valeria Cardellini et al.,IEEE Internal Computing, vol. 3, no. 3, pp. 28-39, May-June 1999 ("Cardellini");

18.    "Distributed cooperative Web servers" by Baker and Moon (1999) ("Baker");

19.    Paul Albitz and Cricket Liu, DNS and BIND, O'Reilly & Associates, Inc., 3rd ed. 1998 ("BIND and DNS");

20.    U.S. Patent No. 6,212,521 to Minami ("Minami"), assigned to Fujitsu Ltd., issued April 3, 2001;

21.    U.S. Patent No. 6,430,618 to Karger ("Karger '618"), assigned to Massachusetts Institute of Technology, issued August 6, 2002;

22.    U.S. Patent No. 6,553,420 to Karger ("Karger '420"), assigned to Massachusetts Institute of Technology, issued April 22, 2003[2];

23.    U.S. Patent No. 6,807,632 to Carpentier ("Carpentier"), assigned to EMC Corp, issued October 19, 2004;

24.    Domain Name System (DNS) as described in the next section; and

25.    Cache Resolver system as described in the next section.

## B.    Prior Art Systems

To the extent a prior art reference identified herein describes a system that was publicly available or invented prior to the patents-in-suit, AWS contends the underlying system as a whole constitutes the identified prior art for the purposes of these contentions. For example:

**Domain Name System (DNS):**  AWS contends that BIND 8.1, a prior art Domain Name System (DNS) implementation anticipates and/or renders obvious claims of the Asserted Patents, as

---

[2] The Karger '618 and '420 patents are in the same patent family and closely related. Therefore, AWS refers to these patents together herein as "Karger '618/420."

DEFENDANT AMAZON WEB SERVICES, INC.                 CIVIL ACTION NO. 1:18-CV-8175
FOURTH AMENDED FINAL UNENFORCEABILITY    5
AND INVALIDITY CONTENTIONS

described herein. Paul Mockapetris created DNS in 1983 and the Internet Engineering Task Force published the original specifications for DNS in November of that year. The following year, four University of California at Berkeley students, Douglas Terry, Mark Painter, David Riggle, and Songnian Zhou, wrote the first Unix name server implementation for the BerkeleyInternet Name Domain (BIND). (*See*, Terry).)

The Computer Systems Research Group at Berkeley released BIND versions up to version 4.8.3. Digital Equipment Corporation released versions 4.9 and 4.9.1 and Vixie Enterprises released version 4.9.2. Since then, the Internet Software Consortium (ISC) has released versions from 4.9.3 onward.  In May 1997, ISC released the first version of BIND 8.  In September 2000, ISC released the first version of BIND 9. ISC stopped supporting BIND 8 in 2007.

In November 1987, the Internet Engineering Task Force published RFC 1034,which superseded the 1983 DNS specifications.

Thus, DNS was well-known and widely used before the earliest alleged priority date of the Patents-in-Suit.  As one example, the inventors of the Patents-in-Suit used DNS, as apparent from the face of the Asserted Patents. (*See, e.g.*, '978 patent, col. 24:1.) Based on the history of DNS, it is likely that the inventors were using a version of BIND 8. BIND 8 was used by Sherman and Karger/Sherman in the Cache Resolver system described below. Accordingly, for the purposes of these contentions, AWS contends that BIND 8.1, a version of DNS and available as of May 1997, is a prior art DNS system that anticipates and/or renders obvious claims of the Asserted Patents, as described herein. BIND 8.1 can be found at ftp://ftp.isc.org/isc/bind8/src/DEPRECATED/8.1/bind-src.tar.gz and has already been produced. Additional information describing this DNS system can be found in the produced documents, including BIND and DNS, RFC 1034, Sherman, Karger/Sherman, Baker, Cardellini, and Kangasharju.

Moreover, a person of skill in the art would be knowledgeable regarding the use and operation

of DNS. As described in BIND and DNS, "[i]f you're connected to the Internet … DNS is a must." (BIND and DNS, 9.) "Think of DNS as the *lingua franca* of the Internet: nearly all of the Internet's network services use DNS. That includes the World Wide Web, electronic mail, remote terminal access, and file transfer." (*Id.*) And the BIND software "is the most popular implementation of the DNS specs." (*Id.* at xi.)

**Cache Resolver System:** AWS contends that the Cache Resolver system as described in Distributed Web Caching System with Consistent Hashing by Alexander Sherman (February 1999) ("Sherman") and Web Caching with Consistent Hashing by Karger, Sherman, et al. (March 4, 1999) ("Karger/Sherman") anticipates and/or renders obvious claims of the Asserted Patents, as described herein. Both Sherman and Karger/Sherman describe aspects of the same Cache Resolver system. Therefore, citations herein regarding Sherman apply equally to Karger/Sherman, and vice versa. AWS contends that all of the features and functionality of DNS are inherent to systems using DNS, such as the use of DNS in the Cache Resolver system. In particular, the Cache Resolver system uses DNS servers running BIND 8 and the program "dnshelper." The authors of these papers used the Cache Resolver system.

The Cache Resolver system was known at least by February 1999. Alexander Sherman made the Cache Resolver system known to at least Madhu Sudan and Arthur C. Smith when he submitted his thesis to the Department of Electrical Engineering and Computer Science at MIT. Dr. Sudan was Dr. Sherman's Thesis Supervisor and Dr. Smith was the Chairman, Department Committee on Graduate Students at that time. David Karger, Alex Sherman, Andy Berkheimer, Bill Bogstad, Rizwan Dhanidina, Ken Iwamoto, Brian Kim, Luke Matkins, and Yoav Yerushalmi, the authors of Karger/Sherman made the Cache Resolver system known to at least the readers of the May 1999 issue of Computer Networks: The International Journal of Computerand Telecommunications Networking, which included a copy of the Karger/Sherman paper that describes the Cache Resolver

system.

## III.    SELECTION OF CURRENT GROUNDS OF INVALIDITY

Pursuant to LPR 3.1(b), AWS specifically identifies below the four (4) prior art grounds per asserted claim and four (4) non-prior art grounds asserted against Kove's patents at this time.The prior art grounds are further supported by the attached claim charts Exhibits 1-3.

### '170 Patent Claims 1, 2, and 12

AWS contends that '170 patent claims 1, 2, and 12 are invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for these claims at this time.  These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Obviousness based on the combination of Domain Name System (DNS) and Karger '618/420 (*see* Exhibit 1A);
2. Anticipation based on the Cache Resolver system (*see* Exhibit 1B);
3. Obviousness based on the combination of U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 (*see* Exhibit 1C);
4. Obviousness based on the combination of U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 (*see* Exhibit 1D).

AWS asserts the following four non-prior art grounds for these claims at this time. These non-prior art grounds are further supported by Sections IV-VII.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss[3], *see* Dkts. 38, 45 etc. and Section VII below);
2. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* SectionVI);
3. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);

---

[3] To the extent that the district court has determined that the Asserted Patents are not unpatentable under 35 U.S.C. § 101 (*see* Dkt. 110), AWS maintains its position for the purposes of appeal.

4. Indefiniteness under 35 U.S.C. § 112, ¶ 2 (*see* Section VI).

**'170 Patent Claims 6, 8, and 15**

AWS contends that '170 patent claims 6, 8, and 15 are invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for these claims at this time. These prior art grounds are further supported by the accompanying claim chart exhibits as well Sections IV-V herein.

1. Anticipation based on the Domain Name System (DNS) (*see* Exhibit 1A);
2. Anticipation based on the Cache Resolver system (*see* Exhibit 1B);
3. Obviousness based on the combination of U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 (*see* Exhibit 1C);
4. Obviousness based on the combination of U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 (*see* Exhibit 1D).

AWS asserts the following four non-prior art grounds for these claims at this time. These non-prior art grounds are further supported by Sections IV-VII.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);
2. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* SectionVI);
3. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);
4. Indefiniteness under 35 U.S.C. § 112, ¶ 2 (*see* Section VI).

**'640 Patent Claims 17 and 18**

AWS contends that '640 patent claims 17 and 18 are invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for these claims at this time. These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Anticipation based on the Domain Name System (DNS) (*see* Exhibit 2A);

2. Anticipation based on the Cache Resolver system (*see* Exhibit 2B);

3. Obviousness based on the combination of U.S. Patent No. 5,542,087 to Neimat and DNS (*see* Exhibit 2C);

4. Obviousness based on the combination of U.S. Patent No. 6,212,521 to Minami and DNS (*see* Exhibit 2D).

AWS asserts the following four non-prior art grounds for these claims at this time. These non-prior art grounds are further supported by Sections IV-VII.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);

2. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* SectionVI);

3. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);

4. Indefiniteness under 35 U.S.C. § 112, ¶ 2 (*see* Section VI).

### **'640 Patent Claim 24**

AWS contends that '640 patent claim 24 is invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for this claim at this time. These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Obviousness based on the combination of Domain Name System (DNS) and Karger '618/420 (*see* Exhibit 2A);

2. Anticipation based on the Cache Resolver system (*see* Exhibit 2B);

3. Obviousness based on the combination of U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 (*see* Exhibit 2C);

4. Obviousness based on the combination of U.S. Patent No. 6,212,521 to Minami, DNS, and

Karger '618/420 (*see* Exhibit 2D).

AWS asserts the following four non-prior art grounds for this claim at this time. These non-prior art grounds are further supported by Sections IV-VII.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);

2. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* SectionVI);

3. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);

4. Indefiniteness under 35 U.S.C. § 112, ¶ 2 (*see* Section VI).

## **'978 Patent Claims 1, 3, 6, 10, 14, and 31**

AWS contends that '978 patent claims 1, 3, 6, 10, 14, and 31 are invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for these claims at this time. These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Anticipation based on the Domain Name System (DNS) (*see* Exhibit 3A);

2. Anticipation based on the Cache Resolver system (*see* Exhibit 3B);

3. Obviousness based on the combination of U.S. Patent No. 5,542,087 to Neimat and DNS (*see* Exhibit 3C);

4. Obviousness based on the combination of U.S. Patent No. 6,212,521 to Minami and DNS (*see* Exhibit 3D).

AWS asserts the following four non-prior art grounds for these claims at this time. These non-prior art grounds are further supported by Sections IV-VII.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);

2. Invalid for Double Patenting (*see* Section VII);

3. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* SectionVI);

4. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI).

**'978 Patent Claims 17, 23, and 30**

AWS contends that '978 patent claims 17, 23, and 30 are invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for these claims at this time. These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Obviousness based on the combination of Domain Name System (DNS) and U.S.Patent No. 5,542,087 to Neimat (*see* Exhibit 3A);
2. Obviousness based on the combination of the Cache Resolver system and Neimat (*see* Exhibit 3B);
3. Obviousness based on the combination of Neimat and DNS (*see* Exhibit 3C);
4. Obviousness based on the combination of U.S. Patent No. 6,212,521 to Minami, DNS, and Neimat (*see* Exhibit 3D);

AWS asserts the four non-prior art grounds below for these claims at this time. These non-prior art grounds are further supported by Sections IV-VII.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);
2. Invalid for Double Patenting (*see* Section VII);
3. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* SectionVI);
4. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI).

**'978 Patent Claim 24**

AWS contends that '978 patent claim 24 is invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35

U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for this claim at this time. These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Obviousness based on the combination of Domain Name System (DNS), U.S. Patent No. 5,542,087 to Neimat, and Venkatasubramanian (*see* Exhibit 3A);

2. Obviousness based on the combination of the Cache Resolver system, Neimat, and Venkatasubramanian (*see* Exhibit 3B);

3. Obviousness based on the combination of Neimat, DNS, and Venkatasubramanian (*see* Exhibit 3C);

4. Obviousness based on the combination of U.S. Patent No. 6,212,521 to Minami, DNS, Neimat, and Venkatasubramanian (*see* Exhibit 3D).

AWS asserts the four non-prior art grounds below for this claim at this time. These non-prior art grounds are further supported by Sections IV-VII.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);

2. Invalid for Double Patenting (*see* Section VII);

3. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);

4. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI).

## IV. EXEMPLARY OBVIOUSNESS ARGUMENTS AND REASONS TO COMBINE THE IDENTIFIED PRIOR ART

The asserted claims of the Patents-in-Suit relate to combinations of various systems and methods for storing and retrieving data in a computer network that were known in the art prior to the Patents-in-Suit. Where the combination of features recited in any particular asserted claim were not included in a single piece of prior art, as a general matter, it would have been obvious to modify the prior art to make such a combination. The individual features recited in the asserted

claims were known to be available and suitable for use in computer networking systems.Thus, as discussed in specific instances in the attached charts, the inclusion of such known structures and/or features in the asserted claims was a matter not of innovation in the art, but of simple choices that would have been within the level of ordinary skill to implement and would have led to no more than the predictable results around the time of the Patents-in-Suit.

To show obviousness, AWS intends to rely on the presence of various structures and features, and combinations thereof, of the prior art described herein as a basis for incorporating those structures and features into other prior art described herein. The reasons justifying such modifications and combinations of prior art features is evident from the prior art itself, the knowledge of one of ordinary skill in the art, and the nature of the problems to be solved related to the Patents-in-Suit.

Furthermore, the combinations in the accompanying claim charts would have been readily made by one of ordinary skill in the art at the time of the alleged invention of the Patents-in-Suit, at least in that one of ordinary skill would have been motivated to combine the references disclosed herein in such a way as to render the alleged inventions obvious. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007); *Randall Mfg. v. Rea*, 733 F.3d 1355 (Fed. Cir. 2013). Each of the references disclosed herein was directed at the same or similar field of technology and to the same or similar problem as the Patents-in-Suit.  As discussed in more detail below and in the accompanying invalidity claim charts, the teaching, suggestion, or motivation to combine these references may be found, explicitly or implicitly, for one or more of the following reasons:

(1)     the combination results from a simple substitution of one known element for another to obtain predictable results;

(2)     the combination results from the use of known techniques to improve similar methods in the same way;

(3)     the combination results from applying a known technique to a known method ready for improvement to yield predictable results;

(4)     the combination results from choosing a finite number of identified,predictable solutions, with a reasonable expectation of success, andtherefore is obvious to try;

(5)     the combination results from known work in one field of endeavor prompting a variation of it for use in either the same field or a different one based on design incentives or other market forces and the variations would have been predictable to one of ordinary skill in the art; or

(6)     the combination results from using known techniques or solutions to address a problem addressed by the invention or a problem that would be encountered by one of ordinary skill in the art working in that field.

AWS also intends to rely on the background knowledge and common sense of those of ordinary skill in the art at the alleged time of invention of the Patents-in-Suit to show invalidity of the Patents-in-Suit.

The accompanying invalidity claim charts identify specific claim limitations with combinations of references that render the Asserted Claims obvious. For each such combination of references, if any particular claim limitation is alleged not to be disclosed or inherent in those references, then it would have been obvious to one of ordinary skill in the art to combine the charted reference with one or more of the references identified in the charts for the particular claim limitations.

Furthermore, AWS describes here additional evidence of obviousness related to the subject matter as a whole and certain specific feature of the Asserted Claims of the Patents-in-Suit. To the extent that Kove alleges that any of the prior art references charted in AWS's Exhibits 1-3 do not disclose one of the limitations described below, it would have been obvious to one of ordinary skill in the art before the time of invention, for example, to include the following features in a distributed storage system such as claimed by the Asserted Patents. AWS also refers Kove to AWS's Initial Non-Infringement and Invalidity Contentions dated August 6, 2019 for additional information regarding the identified prior art and invalidity contentions, in

particular, the claim charts which further illustrate where specifically in each item of prior art each element of each asserted claim is found. AWS intends to rely on such evidence to support its contention that one of ordinary skill in the art would have had reason to combine the identified prior art as claimed.

**Data Location Server and Location Information:** To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of data location servers, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, '170 patent claims 1, 2, 1.b, 6.a, 8, 15.b; '640 patent claim 17.b, 18, 24.c; '978 patent claims 1.a, 3, 5, 10.a, 14.a, 17.b, 31.a.) The Patents-in-Suit recognize that "location" is not a requirement for its Network Distributed Tracking Protocol ("NDTP"). "NDTP can be used for any application in which one-to-zero or one-to-many associations amongstrings are to be maintained and accessed on a network. In applications of NDTP other than distributed databases, the term identifier is likely to make sense in most cases, but the term location may not." ('170 patent, 20:30-37; '640 patent, 20:18-25; '978 patent, 25:11-14.) The Microfiche Appendix filed with the '170 and '640 patents provide software code that is not location-specific, demonstrating that any key-value store can be used.

Further, the Court held in its Claim Construction Order (Dkt. No. 484) that "Location Server" should be construed as "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients." And the Court held that "Location Information" should be "one or more identifiers and their associated locations" for the '978 Patent, and "information pertaining to one or more locations of data and/or the identities of one or more location servers" for the '170 and

'640 Patents. And these constructions by the Court support the finding that the identified prior art references disclose the claim limitations. For example, the Court held that a "location server" should not be limited to a NDTP server. And the Court held that for the '170 and '640 Patents, "location information" included "information pertaining to . . . the identities of one or more location servers" in addition to the "location of data stored in a distributed system."[4]

The concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science, for example. As the Domain Name Server (DNS) protocol recognized long before the alleged invention, there was a known problem in the art that "[t]he applications on the internet were getting more sophisticated and creating a need for general purpose name service," and "[t]he result was several ideas about name spaces and their management." (RFC1034, Section 2.1-2.2.) And the concept of storing information about the location of data, and information pertaining to the location of data is well known, even fundamental, in the field of computer science. For example, as the Domain Name Server (DNS) protocol recognized long before the alleged invention, there was a known problem in the art that "[t]he applications on the internet were getting more sophisticated and creating a need for general purpose name service," and "[t]he result was several ideas about name spaces and their management." (RFC1034, Section 2.1-2.2.). And RFC1034 discloses that not only are identification of data servers returned as responses to queries for data, but also information that "point toward a name server that has the desired information" of information "expected to be useful in interpreting the relevant RRs." (RFC1034, p. 17.) Browne further appreciated that "[f]or a name to be useful, there must be some means of resolving a name to a location from which the resource can be retrieved or accessed" such as in DNS. (Browne, 182.) Kangasharju

---

[4] Court's December 17, 2021 Claim Construction Memorandum Opinion and Order (Dkt. No. 484), at 18-19.

similarly recognized "[i]t is highly desirable for host in the Internet to be able to determine the locations (i.e., the IP addresses) of all object servers that contain copies of a specified URL." (Kangasharju, 3.)

In addition, the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science. Indeed, DNS uses "name servers" that store information about network address locations (the "where," for example, a mailbox address) that is separate from the underlying data (the "what" in the mailbox). (RFC1034, Sections 2.4, 3.1, 3.6, 3.7; Sherman, pgs. 34-39; Karger/Sherman, Section 3.) Sherman and Karger/Sherman stated: "The primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP addresses of the caches." (Sherman, p. 37; Karger/Sherman, p. 10.) Dasgupta described a "completely scalable, non-hierarchical naming that is independent of the entities['] location or affiliations." (Dasgupta, Abstract.)

Neuman described techniques for reducing "the number of requests that must be handled by a name server" and explained that the "[a]dvantages to distribution are that only part of the naming database is stored on each server, thus reducing the number of queries and updates to be processed." (Neuman, 4.2.) The van Steen article outlines "a solution for locating objects using location-independent identifiers." (van Steen, 1-2.) One of skill would have been motivated to use such separation methods, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system. Furthermore, to the extent any prior art discloses the use of one server, it would have been obvious to use more than one server to achieve further benefits. *See* MPEP § 2144.VI.B (Obviousness of Duplication of Parts).

DEFENDANT AMAZON WEB SERVICES, INC.
FOURTH AMENDED FINAL UNENFORCEABILITY
AND INVALIDITY CONTENTIONS                    CIVIL ACTION NO. 1:18-CV-8175

18

Therefore, it would have been obvious to one of skill to employ data location servers and utilize location information in a distributed network, particularly in view of the references identified below:

- U.S. Patent No. 6,212,521 to Minami (see, e.g., cols. 7-8);
- DNS (see, e.g., RFC1034, Sections 2.4, 3.1, 3.6, 3.7);
- Cache Resolver system (see, e.g., Sherman, pp. 34-39; Karger/Sherman, Section 3); and/or
- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to combine them with other prior art disclosing distributed networks. For example, RFC1034 states that DNS uses distributed name servers and local caches to increase the amount of memory and improve performance: "The sheer size of the database and frequency of updates suggest that it must be maintained in a distributed manner, with local caching to improve performance." (RFC1034, 2.) RFC1034 discloses that this caching occurs to reduce name server load: "A veryimportant goal of the resolver is to eliminate network delay and name server load from most requests by answering them from its cache of prior results." (*Id.*, 29.) Thus, DNS discloses the use of a distributed network to ensure scalability and performance. The Cache Resolver system specifically refers to DNS and a skilled artisan would therefore use DNS's teachings as motivation to combine the Cache Resolver system with other art.

Neimat similarly discloses scaling a distributed network: "The present invention accommodates any number of clients and servers, and allows the database storage to extend to occupy any number of servers." (Col. 6:37-39; *see also* 1:36-40, 8:12-15.) Likewise, Minami states, "[A] first object of the present invention is to provide a data management system which relieves processing loads imposed on individual data management servers by distributing data registration and retrieval tasks and reducing the amount of data maintained in each server." (Col.

3:38-43.) Thus, a skilled artisan seeking to ensure scalability and improve performance in a distributed network would be motivated to combine references that disclose location servers, such as DNS, with references disclosing distributed networks, such as Minami or Neimat.

**Hash Function:** To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of a hash function, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, '170 patent claim 1.f, 6.c, 15.a; '640 patent claim 24; '978 patent claim 6.) The specifications of the asserted patents themselves concede that the "preferably applied" hash function was "well-known" in computer science. ('170 patent, col. 15:12-18.) Numerous other publications before the filing of the Patents-in-Suit describe the useof hash functions in distributed systems. As one example, the prior art recognized that it was well understood "for clients to use a standard hash function to determine from which server to request a document." (U.S. Patent No. 6,553,420 to Karger, col. 3:23-50; *see also* U.S. Patent No. 6,430,618 to Karger.) And the Court's adoption of the parties' agreed construction of "hash table" as "a data structure that stores values in a table, where values are stored and retrieved by applying a hash function to an input and using the function result as an index into the table" further supports this finding.

Karger, for example, described a hashing technique known as consistent hashing, which stored and retrieved data by a hashed key across a set of distributed and dynamic server machines. (*See* "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web" by Karger et al. (1997).) This seminal paper showed how hash keys serve to partition the data across the servers and is cited over 2,500 times as indicated by Google Scholar. It also declared: "We believe the ideas have broader

applicability. In particular, consistent hashing may be a useful tool for distributing information from name servers such as DNS and label servers such as PICS in a load-balanced and fault tolerant fashion." As another example, Dasgupta describes a "name to server mapping [that] is controlled by a set of well known hash functions." (Dasgupta, 4.4.) Courts have similarly recognized that hash functions are "generic and basic mathematical or algorithmic functions that do not make a patent inventive." *Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 WL 1456678, at *7 (N.D. Cal. March 23, 2018).

Therefore, it would have been obvious to one of skill to employ a hash function to organize data in a distributed system, and further in view of the references identified below:

- U.S. Patent No. 5,542,087 to Neimat (see, e.g., col. 8);
- U.S. Patent No. 6,212,521 to Minami (see, e.g., cols. 10, 14);
- U.S. Patent No. 6,553,420 to Karger (see, e.g., cols. 3-4; see also U.S. Patent No. 6,430,618 to Karger);
- DNS (see, e.g., RFC1034, p. 13);
- Cache Resolver system (see, e.g., Sherman, pp. 34-39; Karger/Sherman, Section 3); and/or
- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to use hash functions to organize data in other distributed networks, such as those disclosed in DNS, Neimat, and Minami. For example, the stated purpose of Karger '618/420 is to distribute requests efficiently "among a plurality of resources." Karger's hashing avoids the known problem in the art of having to spend costly resources to reshuffle data when there is a change in the number of servers. As Karger explains, a reason to use "consistent hashing" is because "for most of the set of requests the allocation is consistent even as resources are added and removed" and "consistent hashing avoids increasing loads and spread when the number of servers change." (Col. 6:28-41.)

As explained above, DNS, Neimat, and Minami similarly disclose the enhancement of

performance and scalability in a distributed network. Thus, one of skill would have been motivated to use the consistent hashing of Karger to avoid reshuffling and overload problems in other distributed networks, such as DNS, Neimat, or Minami. Consistent hashing would also complement the fundamental performance and scalability goals of other distributed networks, such as DNS, Neimat, and Minami. A skilled artisan seeking to ensure scalability and improve performance in a distributed network would be motivated to combine references that disclose hashing, such as Karger '618/420, with references disclosing distributed networks, such as DNS, Minami, or Neimat.

**Redirection:** To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of redirection, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, '170 patent claims 6.c, 15.e; '640 patent claim 17.c, 18.e; '978 patent claims 3, 10.b, 14.c.) The concept of redirection—*i.e.*, searching a first server for information and then searching a second server for information if the first server does not have that information—is obvious and conventional in the field of computer science. For example, DNS provides responses from DNS name servers, including referring the requester to another set of name servers. "The response by the name server either answers the question posed in the query, refers the requester to another set of name servers, or signals someerror condition." (RFC1034, p. 16.) One of skill would have been motivated to employ redirection for example, for the obvious benefit of improving the ability of a system to locate information. It would have also been obvious for a system to employ redirection on the client side or the server side. Cardellini, for example, recognized "[t]he approach of routing the document requests from the client side can be applied to any replicated Web-server architecture even when the nodes are loosely or not

coordinated at all." (Cardellini, p. 3.)

Therefore, it would have been obvious to one of skill to employ redirection in a distributed system, and further in view of the references identified below:

- U.S. Patent No. 5,542,087 to Neimat (see, e.g., col. 10);
- U.S. Patent No. 6,212,521 to Minami (see, e.g., col. 9);
- DNS (see, e.g., RFC1034, pp. 15-17);
- Cache Resolver system (see, e.g., Sherman, pp. 34-39; Karger/Sherman, Section 3); and/or
- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to use redirection in other prior art disclosing distributed networks. For example, RFC1034 describes: "In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (RFC1034, 17.) Further, as explained above, RFC1034 discloses the goals of enhancing scalability and performance in a distributed network—a goal also disclosed by other distributed network references, such as Neimat and Minami. Therefore, a skilled artisan would have understood that redirection can be used to enhance scalability and performance in a distributed network, and would have understood that a server in Neimat or Minami could similarly be used advantageously to point toward a server with the desired information if that information is not on that server. A skilled artisan would therefore have been motivated to combine references that disclose redirection, such as DNS, with references disclosing distributed networks, such as Neimat or Minami.

**Load Balancing:** To the extent that Kove contends that an identified piece of prior art

does not disclose a claim limitation related to the use of a load balancing, such as based on a performance criterion, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, '978 patent claims 17.e, 23, 24, 30.) The concept of transferring information from one server to another when the server is full, for example, is obvious and conventional in the field of computer science.

Hua DBMS recognizes, for instance, "since effective data placement is an important lever for load balancing, it is normally the determining factor for the performance of a multi-processor system." (Hua DBMS at 494.) Devine DDH states as background "[i]deally, no server is responsive for more than its proportional share of the total data size. This principle can be enforced by actively checking the local load level against the global load level and then performing adaptive load balancing to ameliorate hot spots." (Devine DDH at 3.) Baker notes that "[i]f there is a way to distribute [a collection of Web documents] in such a way that the load is evenly distributed despite the dynamically changing Web access patterns, then the problem of load balancing, one of the most important issues of creating a distributed Web server, has been solved." (Baker, 1215.) Baker then describes a distributed cooperative Web server system that "effectively eliminates the bottleneck of centralized resources, while balancing the load among distributed web servers." (Baker, Abstract.) As another example, Frey disclosed a scheme for load balancing distributed tree file structures in a parallel computing system. (Frey, 3:53-59, 4:42-6:48, Figures 5-6.) One of skill would have been motivated to employ load balancing, for example, for the obvious benefit of improving system performance, speed, and efficiency.

Therefore, it would have been obvious to one of skill to employ load balancing in a distributed system, and further in view of the references identified below:

- U.S. Patent No. 5,542,087 to Neimat (see, e.g., col. 13);
- "Load Management in Distributed Video Servers" by Venkatasubramanian and Ramanathan (1997); and/or
- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to use load balancing in other prior art disclosing distributed networks, such as DNS and the Cache Resolver system. DNS discloses the transfer of RRs from one location server to another: "Whole zones can be transferred between name servers by transferring the RRs." (RFC1034, 20.) Further, DNS is "intentionally extensible" (RFC1034, 1), and as explained above, it is expressly concerned about server load and performance. Neimat discloses one way of transferring records from one server to another in order to ensure servers are efficiently loaded: transferring when a predetermined storage criterion is reached. (Col. 13:26-27.) One of ordinary skill would have understood Neimat to be a solution to the problem of server load disclosed in RFC1034 and would combine these two references for at least this reason. As another reason, Neimat proposes a solution to the well-known problem of memory "collisions" (Col. 13:32-37), which is a problem experienced in distributed data storage systems such as the system disclosed in RFC1034.

Venkatasubramanian likewise teaches load management based on the amount of "disk space." (Venkatasubramanian, 529). But Venkatasubramanian also teaches that load management based on storage space (as in Neimat) is only one approach, and that a combination of that approach with others is preferred. Specifically, Venkatasubramanian states that "disk bandwidth, memory buffer space, CPU cycles, and network transfer bandwidth" are different variables that may be "necessary for supporting" a request. (*Id*.) Venkatasubramanian explicitly teaches the combination of these different approaches for system optimization: "Performance evaluations indicate that a load management procedure which uses a judicious combination of

the different policies performs best for most server con-figurations." (*Id*., 528.) Thus, Neimat teaches one method of load balancing (based on disk space), and Venkatasubramanian expressly teaches Neimat's method while presenting methods of load balancing based on other performance criteria, including transaction rate, as alternatives to Neimat's method. One of ordinary skill would have therefore modified Neimat in view of Venkatasubramanian's teaching.

A skilled artisan would therefore have been motivated to combine references disclosing load balancing, such as Neimat and Venkatasubramanian, with other references disclosing distributed networks, such as DNS or the Cache Resolver system.

**Client**: To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of a client, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention.  (*See, e.g.*, '170 patent claim 15; '640 patent claim 17, 18, 24; '978 patent claims 14.)  For example, the Court held that a "client" should be construed as "a network-attached component (which may be software or hardware) that initiates update or lookup of identifier/location mappings from a location server with location request messages."[5] And in its order, the Court further held that the location mappings from location servers are not limited to NDTP servers.[6] This clarification by the Court supports a finding that the identified prior art references disclose the claim limitations relating to the use of a client.

For example, in addition to disclosing DNS "name servers" that store information about network locations (RFC1034, Sections 2.4, 3.1, 3.6, 3.7; Sherman, pgs. 34-39; Karger/Sherman, Section 3.), RFC1034 further discloses that its system contain "DNS software" that is run when a name server is locating information contained in a RR responsive to a location query.

---

[5] Court's December 17, 2021 Claim Construction Memorandum Opinion and Order (Dkt. No. 484), pp. 21-23.
[6] *Id.*, pp. 21-22.

(RFC1034, 15.) Likewise, Karger/Sherman discloses implementation of its system in both hardware and software: "In order to get around the problem, we decided to use DNS. We could set up our own DNS servers, and modify them to support consistent hashing. This consistent hashing could be "propagated" to browsers during name resolution. More precisely, we wrote an autoconfigure script that performs a standard hash of the input URL to a range of 1000 names that we call virtual caches. We then used DNS to map the 1000 virtual cache names onto actual code IP addresses via consistent hashing." (Karger/Sherman, p. 10; see also Sections 2-3.) Additionally, Neimat reflects that the processor sites necessarily includes executable code to execute, for example, the steps described with respect to Figure 2. (Neimat, 8:48-11:64.)

Therefore, it would have been obvious to one of skill to employ data location servers in a distributed network, particularly in view of the references identified below:

- U.S. Patent No. 6,212,521 to Minami (see, e.g., cols. 7-8);
- DNS (see, e.g., RFC1034, Sections 2.4, 3.1, 3.6, 3.7);
- U.S. Patent No. 5,542,087 to Neimat (see, e.g., cols. 8-11);
- Cache Resolver system (see, e.g., Sherman, pp. 10, 34-39; Karger/Sherman, Sections 2-3); and/or
- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to combine them with other prior art disclosing distributed networks that include client components. For example, DNS discloses a system having a plurality of DNS name servers that manage location information, such as DNS resource records, and provide location information to location queries, called standard queries in DNS. And each DNS name server is attached to a DNS network and maintains a set of domain name/address mappings that are modified or returned in response to standard queries from clients. (*See, e.g.*, RFC1034, Sections 2.4). And the Cache Resolver system discloses that "system clients" are responsible for sending requests to caches or

directories in a distributed web caching system. (*See., e.g.,* Sherman, p. 15.) And similarly, both Neimat and Minami disclose systems using a client that interacts with a server site of data retrieval and storage. (*See., e.g.,* Niemat, 5:23-37, 8:16-67; Minami, Abstract.)

A skilled artisan would therefore have been motivated to combine references disclosing distributed data systems that include a client component, such as Neimat and Minami, with other references disclosing distributed networks, such as DNS or the Cache Resolver system.

**Data Pertaining to the Entity**: To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of data pertaining to the entity, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.,* '170 Patent, claim 1; '978 Patent, claims 1, 31.) For example, the Court held that the term "data pertaining to the entity" should be construed as "data pertaining to a person or thing (real, digital, or abstract) distinct from that data."[7] This clarification by the Court that the entity may be "real, digital, or abstract" further supports a finding that the identified prior art references disclose the claim limitations relating data pertaining to the entity.

For example, RFC1034 discloses different types of resources in the resource record, including "abstract resources." (*See., e.g.,* RFC1034, 11-12.) And the Cache Resolver system, Neimat, and Minami discloses that the "thing" that the data pertains to may be real, digital, or abstract as well. (*See., e.g.,* Sherman, p. 37; Neimat, 8:16-67; Minami, 3:48-4:9.)

Therefore, it would have been obvious to one of skill to employ data location servers in a distributed network, particularly in view of the references identified below:

- U.S. Patent No. 6,212,521 to Minami (see, e.g., col. 3);
- DNS (see, e.g., RFC1034, Sections 2.3, 2.4, 3.5, 4);

---

[7] Court's December 17, 2021 Claim Construction Memorandum Opinion and Order (Dkt. No. 484), pp. 31-35.

- U.S. Patent No. 5,542,087 to Neimat (see, e.g., cols. 8-11);
- Cache Resolver system (see, e.g., Sherman, pp. 10, 34-39; Karger/Sherman, Sections 2-3); and/or
- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to combine them with other prior art disclosing distributed networks. For example, RFC1034 states that DNS uses distributed name servers and local caches to increase the amount of memory and improve performance: "The sheer size of the database and frequency of updates suggest that it must be maintained in a distributed manner, with local caching to improve performance." (RFC1034, 2.) RFC1034 discloses that this caching occurs to reduce name server load: "A very important goal of the resolver is to eliminate network delay and name server load from most requests by answering them from its cache of prior results." (*Id.*, 29.) Thus, DNS discloses the use of a distributed network to ensure scalability and performance. The Cache Resolver system specifically refers to DNS and a skilled artisan would therefore use DNS's teachings as motivation to combine the Cache Resolver system with other art.

Neimat similarly discloses scaling a distributed network: "The present invention accommodates any number of clients and servers, and allows the database storage to extend to occupy any number of servers." (Col. 6:37-39; *see also* 1:36-40, 8:12-15.) Likewise, Minami states, "[A] first object of the present invention is to provide a data management system which relieves processing loads imposed on individual data management servers by distributing data registration and retrieval tasks and reducing the amount of data maintained in each server." (Col. 3:38-43.) Thus, a skilled artisan seeking to ensure scalability and improve performance in a distributed network would be motivated to combine references that disclose location servers, such as DNS, with references disclosing distributed networks, such as Minami or Neimat.

**Based on a Hash System**: To the extent that Kove contends that an identified piece of

prior art does not disclose a claim limitation related to the use of "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string," the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.,* '170 Patent, claim 1.) For example, the Court held that this term should be construed to include both indirect mapping and direct mapping.[8] This clarification by the Court further supports a finding that the identified prior art references disclose this claim limitation is disclosed by the identified prior art references.

For example, RFC1034 discloses that various mapping conventions may be employed in its distributed data system, that "can be quite simple or fairly complex" where "[m]ultiple mappings or levels of mapping may be required." (*See., e.g.,* RFC1034, 9-10.) RFC1034 further discloses examples of different types of mapping schemes, such as the mapping of addresses to host names and specific mapping schemes, such as for mailboxes. (*Id.*) The Cache Resolver system similarly discloses multiple hashing and mapping methods, such as hashing of URLs and Consistent Hashing. (Sherman, pgs. 15, Section 3; Karger/Sherman, Sections 2-3.) And Neimat and Minami further disclose various methods of hashing and mapping key values to produce addresses. (*See., e.g.,* Neimat, 8:57-67, 9:43-65, 10:13-26; Minami, Abstract, 7:52-57, 10:43-46, 14:6-47, 18:21-19:34, 28:12-32.)

Therefore, it would have been obvious to one of skill to employ a hash function to organize data in a distributed system, and further in view of the references identified below:

---

[8] Court's December 17, 2021 Claim Construction Memorandum Opinion and Order (Dkt. No. 484), pp. 24-30.

- U.S. Patent No. 5,542,087 to Neimat (see, e.g., col. 8);
- U.S. Patent No. 6,212,521 to Minami (see, e.g., cols. 10, 14);
- U.S. Patent No. 6,553,420 to Karger (see, e.g., cols. 3-4; see also U.S. Patent No. 6,430,618 to Karger);
- DNS (see, e.g., RFC1034, p. 13);
- Cache Resolver system (see, e.g., Sherman, pp. 34-39; Karger/Sherman, Section 3); and/or
- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to use hash functions to organize data in other distributed networks, such as those disclosed in DNS, the Cache Resolver system, Neimat, and Minami for the same reasons discussed above to "Hash Functions."

## V.    INVALIDITY CLAIM CHARTS FOR PATENTS-IN-SUIT

Claim charts 1A-1D identify where specifically in each item of identified prior art each element of each asserted claim of the '170 patent is found.

**Exhibit 1A:** DNS, and for claims 1, 2, and 12 also Karger '618/420;

**Exhibit 1B:** Cache Resolver system;

**Exhibit 1C:** Neimat, DNS, and Karger '618/420; and

**Exhibit 1D:** Minami, DNS, and Karger '618/420.

Claim charts 2A-2D identify where specifically in each item of identified prior art each element of each asserted claim of the '640 patent is found.

**Exhibit 2A:** DNS, and for claim 24 also Karger '618/420;

**Exhibit 2B:** Cache Resolver system;

**Exhibit 2C:** Neimat and DNS, and for claim 24 also Karger '618/420; and

**Exhibit 2D:** Minami and DNS, and for claim 24 also Karger '618/420.

Claim charts 3A-3D identify where specifically in each item of identified prior art each

element of each asserted claim of the '978 patent is found.

> **Exhibit 3A:** DNS, and for claims 17, 23, 24, and 30 also Neimat, and for claim 24 also Venkatasubramanian;

> **Exhibit 3B:** Cache Resolver system, and for claims 17, 23, 24, and 30 also Neimat, and for claim 24 also Venkatasubramanian;

> **Exhibit 3C:** Neimat and DNS, and for claim 24 also Venkatasubramanian; and

> **Exhibit 3D:** Minami and DNS, and for claims 17, 23, 24, and 30 also Neimat, and for claim 24 also Venkatasubramanian.

## VI.    INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 112

AWS contends that one or more of the Asserted Claims are invalid as indefinite under 35 U.S.C. § 112, ¶ 2. The Asserted Claims fail to particularly point out and distinctly claim the subject matter that the patentee regards as its alleged invention such that one of ordinary skill in the relevant art would be reasonably apprised of the bounds of the asserted claims when read in light of the specification. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014). For example, the following claim terms of the Patents-in-Suit are indefinite:

- **"*Based on a hash function*"** as used in claims 1 and 2 of the '170 patent and **"*hash table generated with the hash function*"** as used in claim 2 of the '170 patent.

A skilled artisan would not have understood the scope of "based on a hash function" as found in claims 1 and 2 of the '170 patent.  Claim 1 recites: "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers." Claim 2 depends from claim 1 and hence incorporates this limitation. The patents do not explain how to use the claimed "hash function," how it works, what it does, or what it means for a "portion" of "data location information" to be "based on" a "hash function used to organize the data location information across the plurality of data location servers." Similarly, a skilled artisan would not have understood the scope of "hash table generated with the hash function" in

claim 2. The patents do not explain how the hash table is "generated with" the hash function or the relationship between this "hash table" and the "location information."

- **"*Performance criterion*" and "*predetermined performance limit*"** as used in claims 17, 23, 24, and 30 of the '978 patent.

A skilled artisan would not have understood the bounds of "performance criterion" or "predetermined performance limit." The '978 patent does not explain the range of "performance criteria," how to determine a "limit" for "performance criterion," or what it means for a "performance criterion" to be "predetermined."

- **"*The first data location server*"** as used in claims 17, 23, 24, and 30 of the '978 patent.

This limitation is indefinite because the phrase "the first data location server" lacks antecedent basis in the claim. A skilled artisan could not discern whether "the first data location server" is the same server as "a location server" recited earlier in the claim.

- **"*Programming logic … configured to return, in response to a location query related to a desired entity, a location message … comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity,*"** as used in claim 6 of the '170 patent.

This limitation is indefinite because a skilled artisan could not discern whether the server returns two messages or one message if the location server lacks location information for the desired entity.

In addition, the Asserted Claims include functional claim limitations governed by pre-AIA 35 U.S.C. § 112(6). Those claim limitations are indefinite because a skilled artisan could not recognize the structure in the specification and associate it with the corresponding function in the claims. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1352 (Fed. Cir. 2015) ("Under 35 U.S.C. § 112, paras. 2 and 6, therefore, if a person of ordinary skill in the art would be unable to

DEFENDANT AMAZON WEB SERVICES, INC.                      CIVIL ACTION NO. 1:18-CV-8175
FOURTH AMENDED FINAL UNENFORCEABILITY 33
AND INVALIDITY CONTENTIONS

recognize the structure in the specification and associate it with the corresponding function in the claim, a means-plus-function clause is indefinite.").  Those functional claim limitations include:

- **"*Hash function*,"** as used in claims 1 and 2 of the '170 patent.
- **"*Hash table*,"** as used in claims 2 and 12 of the '170 patent, claim 6 of the '978 patent, and claim 24 of the '640 patent.
- **"*Indexing function*"** or **"*indexed*,"** as used in claim 12 of the '170 patent and claim 6 of the '978 patent.
- **"*Calculate a location*,"** as used in claims 17, 18, and 24 of the '640 patent.
- **"*Configured to determine the … data location server[]*"** or **"*determining … the … location server[]*,"** as used in claims 1, 2, and 15 of the '170 patent.
- **"*Transfer protocol configured for manipulating*"** or **"*transfer protocol comprising instructions for manipulating*,"** as used in claims 10 and 31 of the '978 patent.
- **"*Transfer protocol configured to transport*,"** as used in claims 17, 23, 24, and 30 of the '978 patent.
- **"*Computer executable code configured to execute the following steps*,"** as used in claim 17, 18, 24 of the '640 patent.
- **"*Location server configured to receive*,"** or **"*programming logic*"** that is **"*configured to return*,"** as used in claims 6, 8, and 12 of the '170 patent.
- **"*Programming logic … responsive to*"** a **"*location query*,"** as used in claims 1, 3, 6, 10, and 31 of the '978 patent.

In addition, claims 1, 3, 6, 10, and 31 of the '978 patent, claims 1, 2, 6, 8, and 12 of the '170 patent, and claims 17, 18, and 24 of the '640 patent are indefinite because they include both apparatus and method limitations. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F. 3d 1377, 1384 (Fed. Cir. 2005); *Rembrandt Data Techs., LP v. AOL LLC*, 641 F.3d 1331 (Fed. Cir. 2011).  For example:

- Claim 1 of the '978 patent includes both apparatus limitations (*e.g.*, a "location server") and steps requiring the performance of an action (*e.g.*, "programming logic … identifying a desired entity to return a location message").
- Claim 3 of the '978 patent includes both apparatus limitations (*e.g.*, a "location server") and steps requiring the performance of an action (*e.g.*, "programming logic … to return one of a location message or a redirect message").
- Claim 6 of the '978 patent includes both apparatus limitations (*e.g.*, a "location server") and steps requiring the performance of an action (*e.g.*, "is maintained in an

indexed location store indexed by a hash table").

- Claim 10 of the '978 patent includes both apparatus limitations (*e.g.*, "plurality of location servers") and steps requiring the performance of an action (*e.g.*, "programming logic … responsive to a location query … to return one of a location message … and a redirect message").

- Claim 31 of the '978 patent includes both apparatus limitations (*e.g.*, "location server") and steps requiring the performance of an action (*e.g.*, "location server operating in accordance with a transfer protocol" and "programming logic … toreturn a location message").

- Claims 1 and 2 of the '170 patent include both apparatus limitations (*e.g.*, "a data location server network comprising a plurality of data location servers") and steps requiring the performance of an action (*e.g.*, "hash function used to organize the data location information across the plurality of data location servers" and in claim 2, "hash table generated with the hash function").

- Claims 6, 8, and 12 of the '170 patent include both apparatus limitations (*e.g.*, a "location server") and steps requiring the performance of an action (*e.g.*, "programming logic is configured to return … the location message" and "redirect message" and in claim 12, "indexed by a hash table distributed across a plurality of servers").

- Claims 17, 18, and 24 of the '640 patent include both apparatus limitations (*e.g.*, "data location server network") and steps requiring the performance of an action (*e.g.*, "computer executable code configured to execute the following steps" and in claim24, "hash table distributed over the plurality of data location servers").

In addition, the Asserted Claims lack sufficient written description and are not enabled.

All asserted claims with references to "hash" or "hashing" are invalid for lack of written description and lack of enablement under 35 U.S.C. § 112, because the specification does not adequately disclose or enable the hashing limitations recited in the claims. The Patents-in-Suit do not explain how to use the claimed "hash function" or "hash table," how it works, what it does, or how its output is used. For example, claim 6 of the '978 patent recites: "The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table." However, the specification neither describes nor enables location information within a location server being maintained in an indexed location store indexed by a hash table. Likewise, claims 1, 2, and 12 of the '170 patent and claim 24 of the '640 patent recite "hash function" and/or "hash table" limitations, but the specification neither

describes nor enables those limitations.

In addition, each of the claim limitations characterized above as indefinite "functional claim limitations" is, in the alternative, invalid for lack of written description and lack of enablement. The claim limitations recite generic functions (*e.g.*, "based on a hash function" / "hash table," "indexing function" / "indexed," "calculate," "manipulate," "determine"). Alternatively, they recite "programming logic" or "computer executable code" that accomplishes functions, or servers that are "configured to" accomplish functions. In each case, the specifications do not describe or enable the full scope of those limitations because they do not explain *how* to accomplish those functions. As additional examples, claim 17 of the '978 patent, as well as dependent claims 23, 24, and 30, are invalid for lack of written description and lack of enablement. The specification does not describe or enable the full scope of the claim terms "performance criterion," "predetermined performance limit," and "monitoring the performance criterion and automaticallytransferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit." Additionally, claim 6 of the '170 patent, as well as dependent claims 8 and 12, are not described or enabled because the '170 patent does not disclose how to configure programming logic to return both a location message and a redirect message in response to a location query.

AWS reserves the right to make additional arguments under 35 U.S.C. § 112 as the positions that Kove takes with regard to priority, infringement, claim interpretation of various terms that have been construed by the Court or terms that have not been construed by the Court, and responses to AWS's invalidity arguments, become more clearly articulated or are modified and as Kove attempts to support its positions with specific reference to disclosures in its patents.

## VII.    INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 101

Each of the Asserted Claims is invalid as unpatentable subject matter under 35 U.S.C. § 101. The claims of the Asserted Patents recite abstract data-manipulation steps, such as "receiving" or "storing" information, on generic computer components, as described in detail in the briefing on the AWS motion to dismiss, which is incorporated herein by reference. (*See* Dkt. 38, 45.) The logic of this § 101 argument applies to all Asserted Claims.

Additionally, AWS contends that claims of the '978 patent are unpatentable under the doctrine of obviousness-type double patenting. For example, the asserted claims of the '978 patent are invalid in view of the '170 patent, because the '978 patent claims are not patentably distinct from the '170 patent. As Kove admits, for example, claims of the '978 patent "recites substantially the same claimed architecture as claim 1 of the '170 patent… ." (Dkt. 44 at 10.) Any claim limitations added to the '978 patent claims are simply obvious variants. Likewise, the asserted claims of the '978 patent are invalid in view of the '640 patent because the '978 patent claims are not patentably distinct from the '640 patent. (*See id.*) Further, Kove alleges that the '978 patent claims are entitled to priority to the same application as the '170 and '640 patents, and, under this view of the claims, everything claimed in the '978 patent is necessarily disclosed in, and not patentably distinct from, each of the prior applications in the '978 patent priority chain. AWS also incorporates by reference its Motion for Judgment on the Pleadings (Dkt. 131-132, 156, 162).

Further, in response to AWS's Motion for Judgment on the Pleadings, Kove has taken the position that claim construction may reveal distinctions between the claims of the '978 patent and the claims of the '640 and '170 patents. To the extent such distinctions exist, AWS reserves the right to argue that the claims of the '978 patent are invalid for obviousness-type double patenting in view of the claims of the '640 and '170 patent, when viewed in light of the prior art

references and combinations disclosed above with respect to the '978 patent.

For example, claims 1, 3, 6, 10, 14, and 31 of the '978 patent are invalid for obviousness-type double patenting in view of the '640 patent and '170 patent, further in view of the prior art references and combinations identified as anticipation and obviousness references for those claims. As a non-limiting example, claims 1, 3, 6, 10, 14, and 31 of the '978 patent are invalid for obviousness-type double patenting in view of the '640 patent and '170 patent, further in view of DNS.

Likewise, claims 17, 23, and 30 of the '978 patent are invalid for obviousness-typedouble patenting in view of the '640 patent and '170 patent, further in view of the prior art references and combinations identified as anticipation and obviousness references for those claims. As a non-limiting example, claims 17, 23, and 30 of the '978 patent are invalid for obviousness-type double patenting in view of the '640 patent and '170 patent, further in view ofNeimat and/or DNS. Likewise, claim 24 of the '978 patent is invalid for obviousness-type double patenting in view of the '640 patent and '170 patent, further in view of the prior art references and combinations identified as anticipation and obviousness references for that claim.As a non-limiting example, claim 24 of the '978 patent is invalid for obviousness-type double patenting in view of the '640 patent and '170 patent, further in view of DNS and/or Neimat and/or Venkatasubramanian.

## VIII.   UNENFORCEABILITY CONTENTIONS AGAINST PATENTS-IN-SUIT

AWS incorporates by reference its Answer, Additional Defenses, and Counterclaims (Dkt. 129), which includes its unenforceability defenses and counterclaims. AWS reserves the right to disclose additional contentions of unenforceability for the Patents-in-Suit if AWS discovers additional facts giving rise to additional unenforceability defenses. AWS's

investigation of Kove's actions concerning the prosecution of the Patents-in-Suit and knowledge of the prior art is ongoing. For example, AWS will seek the Rule 30(b)(6) corporate representative deposition of Kove regarding the prosecution of the asserted patents and knowledge of the prior art.

## IX.    DOCUMENT PRODUCTION

Pursuant to LPR 2.1(b)(2), Defendants have previously produced documents bearing Bates numbers AMZ_KOVE_000017145 - AMZ_KOVE_000017175, AMZ_KOVE_000044829 - AMZ_KOVE_000044859, AMZ_KOVE_000044908 - AMZ_KOVE_000044943, AMZ_KOVE_000044970 - AMZ_KOVE_000044982, AMZ_KOVE_000045035 - AMZ_KOVE_000045069, AMZ_KOVE_000061911 - AMZ_KOVE_000062127, AMZ_KOVE_000062299 - AMZ_KOVE_000062367, AMZ_KOVE_000062395 - AMZ_KOVE_000062662, AMZ_KOVE_000070463 - AMZ_KOVE_000070530, AMZ_KOVE_000075810 - AMZ_KOVE_000076531, AMZ_KOVE_000078678 - AMZ_KOVE_000078694, AMZ_KOVE_000080051 - AMZ_KOVE_000081655 related to prior art identified in these contentions.

Dated: February 24, 2022

Respectfully submitted,

/s/ R. William Sigler
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (*pro hac vice*)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above document

was served on all counsel of record via email on February 24, 2022.


Dated: February 24, 2022                                         */s/ R. William Sigler*
                                                                R. William Sigler

**Exhibit 1A: Invalidity Claim Chart Against U.S. Patent No. 7,814,170 in View of the Domain Name System (DNS)**

AWS asserts that U.S. Patent No. 7,814,170 ("the '170 patent") claims 6, 8, and 15 are anticipated by, and claims 1, 2, and 12 are obvious in view of, the BIND 8.1 version of DNS, the operation of which is described in BIND and DNS, RFC 1034, Sherman, and Karger/Sherman. DNS qualifies as prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it was publicly available in May 1997, more than a year before Kove's October 28, 1999 claimed priority date for the '170 patent. Karger '618/420 is prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it has a priority date of March 15, 1998. The citations below are representative of where specifically in the item of prior art each element of each asserted claim may be found, and AWS reserves the right to rely on other portions of the prior art, versions of the cited documents, and/or evidence to show the invalidity of the asserted claims, including all evidence referenced in the accompanying contentions.

Furthermore, the following list includes examples of specifically where certain '170 patent claim elements are found in DNS:
- Client: Client
- Identifier: Domain name
- Location information: Resource records ("RRs")
- Location server: Name server
- Data repository: Host data or mailbox data
- Hash function: Hash structures

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| **[1.Preamble]** A system for managing data stored in a distributed network, the system comprising: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>In general, DNS discloses a system having a plurality of DNS name servers that manage location information, such as DNS resource records, and provide location information to location queries, called standard queries in DNS. Each DNS name server is attached to a DNS network and maintains a set of domain name/address mappings that are modified or returned in response to standard queries from clients.<br><br>"NAME SERVERS are server programs which hold information about the domain tree's structure and set information. A name server may cache structure or set information about any part of the domain tree, but in general a particular name server has complete information about a subset of the domain space, and pointers to other |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| | name servers that can be used to lead to information from any part of the domain tree." (RFC1034, 6.)<br><br>"[Q]uery operations are attempts to extract specific types of information from a particular set. A query names the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its domain names to identify hosts; queries for address resources return Internet host addresses." (*Id.*)<br><br>In response to a query, a "name server either answers the question posed in the query, refers the requester to another set of name servers, or signals some error condition." (*Id.*, 16.)<br><br>"The principal activity of name servers is to answer standard queries." (*Id.*, 22.)<br><br>*See also* Paul Albitz and Cricket Liu, DNS and BIND, 4, O'Reilly & Associates, Inc., 3rd ed. 1998 ("Programs called *name servers* constitute the server half of DNS's client-server mechanism. Name servers contain information about some segment of the database and make it available to clients, called *resolvers*." (emphasis original)). |
| **[1.a]** a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>"We should be able to use names to retrieve host addresses, mailbox data, and other as yet undetermined information. All data associated with a name is tagged with a type, and queries can be limited to a single type." (RFC1034, 3.)<br><br>The name space is "used for hosts, mailboxes, etc." (*Id.*, 9). "A convention for mapping between object names and domain names [is needed as] [t]his describes how information about an object is accessed." (*Id.*) "The mailbox HOSTMASTER@SRI-NIC.ARPA is represented as a domain name by HOSTMASTER.SRI-NIC.ARPA." (*Id.*, 9-10.) |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| | *See also* Paul Albitz and Cricket Liu, DNS and BIND, O'Reilly & Associates, Inc., 3rd ed. 1998: "Every domain has a unique name." (p. 5, *see also* 7.) "Each host on a network has a domain name, which points to information about the host." (p. 6.) "[A] domain name uniquely identifies a single node in the tree." (p. 13.) "The hosts are … represented by domain names. … Domain names at the leaves of the tree generally represent individual hosts, and they may point to network addresses, hardware information, and mail routing information. Domain names in the interior of the tree can name a host *and* can point to information about the domain. Interior domain names … can represent both the domain that they correspond to and a particular host on the network. For example, *hp.com* is both the name of the Hewlett-Packard Company's domain and the domain name of a host that runs HP's main web server." (pp. 15-16, *see also* 19-20.) |
| **[1.b]** a data location server network comprising a plurality of data location servers, | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>"In any system that has a distributed database, a particular name server may be presented with a query that can only be answered by some other server." (RFC1034, 4.)<br><br>"[I]n general a particular name server has complete information about a subset of the domain space, and pointers to other name servers that can be used to lead to information from any part of the domain tree." (*Id.*, 6.)<br><br>"Name servers are the repositories of information that make up the domain database. The database is divided up into sections called zones, which are distributed among name servers." (*Id.*, 18.)<br><br>"A given name server will typically support one or more zones, but this gives it authoritative information about only a small section of the domain tree." (*Id.*, 19.) |
| **[1.c]** wherein data location information for a plurality of data entities is stored in the data location server network, | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below. |

3

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
|  | The "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (*Id.*, 2.) |
|  | RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.) |
|  | "DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*) |
|  | "The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.) |
|  | "In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.*, 17.) |
|  | A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034. |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
|  | ```SRI-NIC.ARPA.    A      26.0.0.73                     A      10.0.0.51                     MX     0 SRI-NIC.ARPA.                     HINFO  DEC-2060 TOPS20```  (*Id.*, 37.) |
| **[1.d]** at least one of the plurality of data location servers includes location information associated with the identifier string, | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.  "A domain name identifies a node." (*Id.*, 11.)  "Conceptually, each node and leaf of the domain name space tree names a set of information, and query operations are attempts to extract specific types of information from a particular set. A query names the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its domain names to identify hosts; queries for address resources return Internet host addresses." (*Id.*, 6.)  For example, the identifier "vaxa.isi.edu" has two IP addresses shown below.  ```For example, we might show the RRs carried in a message as:     ISI.EDU.         MX     10 VENERA.ISI.EDU.                      MX     10 VAXA.ISI.EDU.     VENERA.ISI.EDU.  A      128.9.0.32                      A      10.1.0.52     VAXA.ISI.EDU.    A      10.2.0.27                      A      128.9.0.33```  (*Id.*, 14.)  "In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| | domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.) |
| **[1.e]** each one of the plurality of data location servers comprises a processor and a portion of the data location information, | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>See above evidence regarding claim limitation 1.b.<br><br>RFC1034 discloses that name servers are "server programs" (*id.*, 6) that respond to queries with a DNS response answer.  A server necessarily includes a processor.<br><br>DNS name servers contain "DNS software" that is run when a name server is locating information contained in a RR responsive to a location query. (*Id.*, 15.)<br><br>RFC1034 discloses that DNS name servers "answer standard queries" and that they send "response[s]" that "are carried in a standard message format." (*Id.*, 22.)<br><br>RCF 1034 discloses that the "sheer size of the database" requires that it be "maintained in a distributed manner, with local caching" wherein a portion of the data location information is stored on each name server.  (*Id.*, 2.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)<br><br>"The actual algorithm used by the name server will depend on the local OS and data structures used to store RRs." (*Id.*, 24.) |
| **[1.f]** the portion of the data location information included in a corresponding one of the data location servers is based | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below. |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| on a hash function used to organize the data location information across the plurality of data location servers, and | "The owner name is often implicit, rather than forming an integral part of the RR. For example, many name servers internally form tree or hash structures for the name space, and chain RRs off nodes." (*Id.*, 13.)<br><br>"Before the DNS can be used to hold naming information for some kind of object, two needs must be met:<br>- A convention for mapping between object names and domain names. This describes how information about an object is accessed.<br>- RR types and data formats for describing the object.<br>These rules can be quite simple or fairly complex. Very often, the designer must take into account existing formats and plan for upward compatibility for existing usage. Multiple mappings or levels of mapping may be required.<br>For hosts, the mapping depends on the existing syntax for host names which is a subset of the usual text representation of domain names, together with RR formats for describing host addresses, etc. Because we need a reliable inverse mapping from address to host name, a special mapping for addresses into the IN-ADDR.ARPA domain is also defined.<br>For mailboxes, the mapping is slightly more complex. The usual mail address <local-part> <mail-domain> is mapped into a domain name by converting <local-part> into a single label (regardless of dots it contains) , converting <mail-domain> into a domain name using the usual text format for domain names (dots denote label breaks), and concatenating the two to form a single domain name. Thus the mailbox HOSTMASTER@SRI-NIC.ARPA is represented as a domain name by HOSTMASTER.SRI-NIC.ARPA. An appreciation for the reasons behind this design also must take into account the scheme for mail exchanges [RFC-974] ." (*Id.,* 9-10.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.) |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| | **Obviousness of Hash Function:** To the extent that Kove contends that DNS does not disclose this limitation, and this claim is construed to require a hash function, the subject matter as a whole of each claim, including this limitation, would have been obvious to one of skill in the art before the invention. The specification of the asserted patents themselves concede that the "preferably applied" hash function used to organize the data location information across the plurality of data location servers was "well-known" in computer science. ('170 patent, col. 15:12-18.) Numerous other publications before the filing of the Patents-in-Suit describe the use of hash functions to organize location information across servers in distributed systems. Courts have also recognized that hash functions are "generic and basic mathematical or algorithmic functions that do not make a patent inventive." *Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 WL 1456678, at *7 (N.D. Cal. March 23, 2018). One skilled in the art would be familiar with the use of hashing in a distributed network. Karger '618/420 states that it was well understood "for clients to use a standard hash function to determine from which server to request a document." ('420 patent, 3:23-50; '618 patent, 3:18-44.) "In one embodiment, the mapping of requests [e.g., for a document] and resources [e.g., servers] to the mathematical mapping space is accomplished with a hash function. A hash function takes an input (k) and returns an output in a given range. Hash functions can be used to allocate pointers or keys to a location in a hash table, which is a data structure having a specified number of locations or 'slots.' If h(k) is a hash function, key (k) is said to hash to a hash table location h(k). A goal in designing a hash function is for each key (k) to be equally likely to hash to any of the locations in the hash table. An approach to achieve this is to derive the hash function in a way that is expected to be independent of any patterns that might exist in the data." ('420 patent, 10:22-34; '618 patent, 10:13-25.) Karger '420/618 discloses a "consistent hashing" function, which "avoids increasing load and spread when the number of servers changes." ('420 patent, 6:29-41; '618 patent, 6:21-33.) "Networked distributed file systems, groups of computers that store large amounts of data on an intranet or internet, and have too much information to effectively serve on one server, can use the invention to great benefit." ('420 patent, 19:47-50; '618 patent, 18:14-17.) Thus, one skilled in the art would recognize that consistent hashing as taught by Karger '420/618 |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| | could be used to improve the operation of a distributed system such as DNS when a server is added to or removed from that system. |
| **[1.g]** each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>See above evidence regarding claim limitation 1.f.<br><br>Where resource records are organized on a plurality of name servers using a hash function applied to the domain name, it would be further obvious to use the hash function applied to the domain name to determine the name server that stores a portion of the resource records.<br><br>"In any system that has a distributed database, a particular name server may be presented with a query that can only be answered by some other server. The two general approaches to dealing with this problem are 'recursive', in which the first server pursues the query for the client at another server, and 'iterative', in which the server refers the client to another server and lets the client pursue the query." (*Id.*, 4.)<br><br>"Before the DNS can be used to hold naming information for some kind of object, two needs must be met:<br>- A convention for mapping between object names and domain names. This describes how information about an object is accessed.<br>- RR types and data formats for describing the object.<br>These rules can be quite simple or fairly complex. Very often, the designer must take into account existing formats and plan for upward compatibility for existing usage. Multiple mappings or levels of mapping may be required.<br>For hosts, the mapping depends on the existing syntax for host names which is a subset of the usual text representation for domain names, together with RR formats for describing host addresses, etc. Because we need a reliable inverse mapping from address to host name, a special mapping for addresses into the IN-ADDR.ARPA domain is also defined. |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| | For mailboxes, the mapping is slightly more complex. The usual mail address <local-part> <mail-domain> is mapped into a domain name by converting <local-part> into a single label (regardles of dots it contains) , converting <mail-domain> into a domain name using the usual text format for domain names (dots denote label breaks), and concatenating the two to form a single domain name. Thus the mailbox HOSTMASTER@SRI-NIC.ARPA is represented as a domain name by HOSTMASTER.SRI-NIC.ARPA. An appreciation for the reasons behind this design also must take into account the scheme for mail exchanges [RFC-974] ." (*Id.,* 9-10.)<br><br>"Using the query domain name, QTYPE, and QCLASS, the name server looks for matching RRs. In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.) |
| [2] The system of claim 1, wherein the location information comprises any portion of a hash table generated with the hash function. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>"The owner name is often implicit, rather than forming an integral part of the RR. For example, many name servers internally form tree or hash structures for the name space, and chain RRs off nodes." (*Id.,* 13.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)<br><br>It would be further obvious to organize the results of a hash function into a "hash structure" in the form of a table. |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| | **Obviousness of Hash Function:** To the extent that Kove contends that DNS does not disclose this limitation, and this claim is construed to require a hash function, the subject matter as a whole of each claim, including this limitation, would have been obvious to one of skill in the art before the invention. The specification of the asserted patents themselves concede that the "preferably applied" hash function used to organize the data location information across the plurality of data location servers was "well-known" in computer science. ('170 patent, col. 15:12-18.) Numerous other publications before the filing of the Patents-in-Suit describe the use of hash functions to organize location information across servers in distributed systems. Courts have also recognized that hash functions are "generic and basic mathematical or algorithmic functions that do not make a patent inventive." *Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 WL 1456678, at *7 (N.D. Cal. March 23, 2018). One skilled in the art would be familiar with the use of hashing in a distributed network. Karger '618/420 states that it was well understood "for clients to use a standard hash function to determine from which server to request a document." ('420 patent, 3:23-50; '618 patent, 3:18-44.) "In one embodiment, the mapping of requests [e.g., for a document] and resources [e.g., servers] to the mathematical mapping space is accomplished with a hash function. A hash function takes an input (k) and returns an output in a given range. Hash functions can be used to allocate pointers or keys to a location in a hash table, which is a data structure having a specified number of locations or 'slots.' If h(k) is a hash function, key (k) is said to hash to a hash table location h(k). A goal in designing a hash function is for each key (k) to be equally likely to hash to any of the locations in the hash table. An approach to achieve this is to derive the hash function in a way that is expected to be independent of any patterns that might exist in the data." ('420 patent, 10:22-34; '618 patent, 10:13-25.) Karger '420/618 discloses a "consistent hashing" function, which "avoids increasing load and spread when the number of servers changes." ('420 patent, 6:29-41; '618 patent, 6:21-33.) "Networked distributed file systems, groups of computers that store large amounts of data on an intranet or internet, and have too much information to effectively serve on one server, can use the invention to great benefit." ('420 patent, 19:47-50; '618 patent, 18:14-17.) Thus, one skilled in the art would recognize that consistent hashing as taught by Karger '420/618 |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| | could be used to improve the operation of a distributed system such as DNS when a server is added to or removed from that system. |
| **[6.Preamble]** A system for managing data location information and providing the data location information in response to location queries, the system comprising: | See above evidence regarding the preamble of claim 1. |
| **[6.a]** a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity; | See above evidence regarding claim limitation 1.b.<br><br>RFC1034 discloses a DNS protocol for implementing domain name facilities wherein location addition requests are made to the name servers. (*Id.*, 1.)<br><br>For example, RCF1034 discloses that a location addition request to a name server takes place when a name server "cach[es] retrieved data and … refresh[es] data." (*Id.*, 5.)<br><br>"A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs). The order of RRs in a set is not significant, and need not be preserved by name servers, resolvers, or other parts of the DNS.<br>When we talk about a specific RR, we assume it has the following:<br>owner          which is the domain name where the RR is found.<br>type          which is an encoded 16 bit value that specifies the type of the resource in this resource record. Types refer to abstract resources." (*Id.*, 11-12.)<br><br>"RRs are represented in binary form in the packets of the DNS protocol, and are usually represented in highly encoded form when stored in a name server or resolver." (*Id.*, 13.)<br><br>BIND 8 supports DNS dynamic updates. This feature "permits authorized updaters to add and delete resource records from a zone for which the server is authoritative." (DNS and BIND, 231.) "Dynamic update permits more than the simple addition and deletion of records. Updaters can add or delete individual resource records, delete |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| | RRsets …, or even delete all records associated with a given name." (*Id.*) "For the most part, dynamic update functionality is used by programs … [that] use the *ns_update()* routine to create update messages and send them to an authoritative server for the zone that contains the domain name." (*Id.*, 231-232.) |
| **[6.b]** wherein the location server includes a processor; and | See above evidence regarding claim limitations 1.b and 1.e. |
| **[6.c]** programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>DNS name servers contain programming logic such as "DNS software" that is run when a name server is locating information contained in a RR responsive to a location query. (*Id.*, 15.)<br><br>"In any system that has a distributed database, a particular name server may be presented with a query that can only be answered by some other server. The two general approaches to dealing with this problem are 'recursive', in which the first server pursues the query for the client at another server, and 'iterative', in which the server refers the client to another server and lets the client pursue the query." (*Id.*, 4.)<br><br>RCF1034 discloses that name servers contain programming logic that "defines procedures for accessing the data and for referrals to other name servers. The domain system also defines procedures for caching retrieved data and for periodic refreshing of data defined by the system administrator." (*Id.*, 5.)<br><br>RFC1034 discloses that name servers include "server programs" (*id.*, 6) that respond to queries with a DNS response answer.<br><br>"Queries are messages which may be sent to a name server to provoke a response. … The response by the name server either answers the question posed in the query, refers the requester to another set of name servers, or signals some error condition." (*Id.*, 15-16.) |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| | "A standard query specifies a target domain name (QNAME), query type (QTYPE), and query class (QCLASS) and asks for RRs which match." (*Id*., 16.)<br><br>"Using the query domain name, QTYPE, and QCLASS, the name server looks for matching RRs. In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address. For example, a mailer tying [sic, trying] to send mail to Mockapetris@ISI.EDU might ask the resolver for mail information about ISI.EDU, resulting in a query for QNAME=ISI.EDU, QTYPE=MX, QCLASS=IN. The response's answer section would be" as follows. (*Id*., 17.)<br><br><pre>    ISI.EDU.          MX      10 VENERA.ISI.EDU.<br>                      MX      10 VAXA.ISI.EDU.<br><br> while the additional section might be:<br><br>    VAXA.ISI.EDU.     A       10.2.0.27<br>                      A       128.9.0.33<br>    VENERA.ISI.EDU.   A       10.1.0.52<br>                      A       128.9.0.32</pre><br>(*Id*.) The additional section is provided "[b]ecause the server assumes that if the requester wants mail exchange information, it will probably want the addresses of the mail exchanges soon afterward." (*Id*.)<br><br>RFC1034 discloses that DNS name servers "answer standard queries" and that they send "response[s]" that "are carried in a standard message format." (*Id.*, 22.) |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| | "The actual algorithm used by the name server will depend on the local OS and data structures used to store RRs." (*Id.*, 24.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)<br><br>*See also* Section 6.2 providing example queries and responses. (*Id.*, 39-50.) Sections 6.2.6 and 6.2.7 disclose examples of responses with a referral. (*Id.*, 44-46.)<br><br>*See also* Paul Albitz and Cricket Liu, DNS and BIND, 27-30, 247, O'Reilly & Associates, Inc., 3rd ed. 1998 (describing that the response may contain the answer or a referral to other name servers). |
| **[8]** The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information. | See above evidence regarding claim limitation 1.e. |
| **[12]** The system of claim 9, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>"The owner name is often implicit, rather than forming an integral part of the RR. For example, many name servers internally form tree or hash structures for the name space, and chain RRs off nodes." (RFC1034, 13.)<br><br>RCF1034 discloses that resource records can be stored on name servers as "binary strings." (*Id.*, 13.) Moreover, the Patents-in-Suit recognize that "location" is not a requirement for its data servers as "NDTP can be used for any application in which one-to-zero or one-to-many associations among strings are to be maintained and accessed on a network. In applications of NDTP other than distributed databases, the |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| | term identifier is likely to make sense in most cases, but the term location may not." ('170 patent, 20:30-37.) The Microfiche Appendix filed with the '170 patent provides software code that demonstrates that location is not necessary for the operation of the data servers.<br><br>*See also* Paul Albitz and Cricket Liu, DNS and BIND, 6, O'Reilly & Associates, Inc., 3rd ed. 1998 ("Domain names are used as indexes into the DNS database.").<br><br>**Obviousness of Hash Function:** To the extent that Kove contends that DNS does not disclose this limitation, and this claim is construed to require a hash function, the subject matter as a whole of each claim, including this limitation, would have been obvious to one of skill in the art before the invention. The specification of the asserted patents themselves concede that the "preferably applied" hash function was "well-known" in computer science. (*See, e.g.*, '170 patent, col. 15:12-18.) Numerous other publications before the filing of the Patents-in-Suit describe the use of hash functions in distributed systems. Courts have also recognized that hash functions are "generic and basic mathematical or algorithmic functions that do not make a patent inventive." *Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 WL 1456678, at *7 (N.D. Cal. March 23, 2018). One skilled in the art would be familiar with the use of hashing in a distributed network. Karger '618/420 states that it was well understood "for clients to use a standard hash function to determine from which server to request a document." ('420 patent, 3:23-50; '618 patent, 3:18-44.) Karger also discloses a consistent hashing algorithm applicable to distributed systems. "In one embodiment, the mapping of requests [e.g., for a document] and resources [e.g., servers] to the mathematical mapping space is accomplished with a hash function. A hash function takes an input (k) and returns an output in a given range. Hash functions can be used to allocate pointers or keys to a location in a hash table, which is a data structure having a specified number of locations or 'slots.' If h(k) is a hash function, key (k) is said to hash to a hash table location h(k). A goal in designing a hash function is for each key (k) to be equally likely to hash to any of the locations in the hash table. An approach to achieve this is to derive the hash function in a way that is expected to be independent of any patterns that might exist in the data." ('420 patent, 10:22-34; '618 patent, 10:13- |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| | 25.) Karger '420/618 discloses a "consistent hashing" function, which "avoids increasing load and spread when the number of servers changes." ('420 patent, 6:29-41; '618 patent, 6:21-33.) "Networked distributed file systems, groups of computers that store large amounts of data on an intranet or internet, and have too much information to effectively serve on one server, can use the invention to great benefit." ('420 patent, 19:47-50; '618 patent, 18:14-17.) Thus, one skilled in the art would recognize that consistent hashing as taught by Karger '420/618 could be used to improve the operation of a distributed system such as DNS when a server is added to or removed from that system. |
| **[15.Preamble]** A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising: | See above evidence regarding the preamble of claim 1. |
| **[15.a]** correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network; | See above evidence regarding claim limitations 1.a and 1.d. |
| **[15.b]** receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities; | See above evidence regarding claim limitation 6.c. |
| **[15.c]** determining which of the plurality of location servers includes the location information; | See above evidence regarding claim limitation 6.c. |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, and 12, Karger '618/420 |
|---|---|
| **[15.d]** sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and | See above evidence regarding claim limitation 6.c. |
| **[15.e]** sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information. | See above evidence regarding claim limitation 6.c. |

**Exhibit 1B: Invalidity Claim Chart Against U.S. Patent No. 7,814,170 in View of the Cache Resolver System**

AWS asserts that U.S. Patent No. 7,814,170 ("the '170 patent") claims 1, 2, 6, 8, 12, and 15 are anticipated by the Cache Resolver system, such as described in Distributed Web Caching System with Consistent Hashing by Alexander Sherman (1999) ("Sherman"), and Web Caching with Consistent Hashing by Karger, Sherman, et al. (March 4, 1999) ("Karger/Sherman"). The Cache Resolver system qualifies as prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it was known, used, and published before Kove's October 28, 1999 claimed priority date for the '170 patent. The citations below are representative of where specifically in the item of prior art each element of each asserted claim may be found, and AWS reserves the right to rely on other portions of the prior art, versions of the cited documents, and/or evidence to show the invalidity of the asserted claims, including all evidence referenced in the accompanying contentions. AWS also contends that the complete features and functionality of DNS is inherent to any system using DNS, such as described in Sherman or Karger/Sherman.

Furthermore, the following list includes examples of specifically where certain '170 patent claim elements are found in DNS:

- Client: Client
- Identifier: Domain name
- Location information: Resource records ("RRs")
- Location server: Name server
- Data repository: Host data or mailbox data
- Hash function: Hash functions

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| **[1.Preamble]** A system for managing data stored in a distributed network, the system comprising: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>In general, the Cache Resolver system discloses that a user browser can communicate with a network of Domain Name Servers (DNS) that access proxy caches with data. A URL or virtual name may be used with a consistent hash function to identify actual physical IP addresses of data. The DNS servers may store and/or calculate location information.<br><br>Sherman discloses "a solution to the problem of slow service experienced by most World Wide Web users" that includes an improvement over local browser caching, |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | regional caching, and previous distributed cache solutions. (Pgs. 9-13.) Sherman's solution resolves "the tradeoff between a good hit rate and fast access times." (Pg. 13.) |
| | Sherman "describes a Distributed Web Caching system based on the Consistent Hashing algorithms that improve on the methods used by the existing web caching systems. Consistent Hashing as used in our system provides for a more efficient use of caches on the World Wide Web, which translates into faster service for the users." (Abstract, pg. 3) |
| | "Cache Resolver, the distributed web caching system that we developed, eliminates the necessity for any inter-cache communication on a cache miss by letting clients decide for themselves which cache has the required data. Instead of contacting a primary cache which on a miss sends requests to other caches or a directory, user's browser directly contacts the cache that contains the required resource. Browsers make their decision with help of a hash function which maps resources (or URLs) to a set of available caches. With a globally known hash function, all of the system clients (users) can agree on which caches are responsible for storing each resource. Thus, our system speeds up access time to the 'right cache' in two ways. First of all, executing a hash function locally is faster than running non-trivial protocols among caches to find the right cache. Also, if there is a 'right cache', no time is wasted on a possible miss in the primary cache." (Pg. 15.) |
| | Sherman discloses: "The system consists of three major components: the actual cache machines for storing the content, users' browsers that direct requests toward virtual names of the caches, and the domain name servers (also known as resolution units) that use consistent hashing to resolve virtual names requested by the users into specific physical addresses of the cache machines." (Pg. 34.) |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| |  Figure 4-1: System Components<br><br>Karger/Sherman has the same architecture. Both Sherman and Karger/Sherman describe aspects of the same Cache Resolver system. Therefore, citations herein regarding Sherman apply equally to Karger/Sherman, and vice versa. AWS also contends that the complete features and functionality of DNS is inherent to any system using DNS, such as described in Sherman or Karger/Sherman.<br><br>In general, DNS discloses a system having a plurality of DNS name servers that manage location information, such as DNS resource records, and provide location information to location queries, called standard queries in DNS. Each DNS name server is attached to a DNS network and maintains a set of domain name/address mappings that are modified or returned in response to standard queries from clients. |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | "NAME SERVERS are server programs which hold information about the domain tree's structure and set information. A name server may cache structure or set information about any part of the domain tree, but in general a particular name server has complete information about a subset of the domain space, and pointers to other name servers that can be used to lead to information from any part of the domain tree." (RFC1034, 6.)<br><br>"[Q]uery operations are attempts to extract specific types of information from a particular set. A query names the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its domain names to identify hosts; queries for address resources return Internet host addresses." (*Id.*)<br><br>In response to a query, a "name server either answers the question posed in the query, refers the requester to another set of name servers, or signals some error condition." (*Id.*, 16.)<br><br>"The principal activity of name servers is to answer standard queries." (*Id.*, 22.)<br><br>*See also* Paul Albitz and Cricket Liu, DNS and BIND, 4, O'Reilly & Associates, Inc., 3rd ed. 1998 ("Programs called *name servers* constitute the server half of DNS's client-server mechanism. Name servers contain information about some segment of the database and make it available to clients, called *resolvers*." (emphasis original)). |
| **[1.a]** a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>Sherman discloses proxy caches that "replies with the data if it has a valid copy stored. Otherwise, it fetches the data from the original web server and stores a copy as well." (Pg. 34.) |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | "This function takes requested URLs as input and performs a modulo hash (the hash function here is not related to Consistent Hashing that takes place elsewhere in the system) and returns a list of virtual names of the cache machines. To resolve virtual names into actual IP addresses of the caches, a browser will have to contact the DNS system. … These numeric values returned by the hash function are included in the virtual names (e.g., A123.ProxyCache.com, where 123 is the numeric value corresponding to a hash of a URL string)." (Pg. 36.) |

"The DNS units represent the key component of our system since these units ultimately decide which physical cache stores each resource." (Pg. 37.)

"We should be able to use names to retrieve host addresses, mailbox data, and other as yet undetermined information. All data associated with a name is tagged with a type, and queries can be limited to a single type." (RFC1034, 3.)

The name space is "used for hosts, mailboxes, etc." (*Id.*, 9). "A convention for mapping between object names and domain names [is needed as] [t]his describes how information about an object is accessed." (*Id.*) "The mailbox HOSTMASTER@SRI-NIC.ARPA is represented as a domain name by HOSTMASTER.SRI-NIC.ARPA." (*Id.*, 9-10.)

*See also* Paul Albitz and Cricket Liu, DNS and BIND, O'Reilly & Associates, Inc., 3rd ed. 1998: "Every domain has a unique name." (p. 5, *see also* 7.) "Each host on a network has a domain name, which points to information about the host." (p. 6.) "[A] domain name uniquely identifies a single node in the tree." (p. 13.) "The hosts are … represented by domain names. … Domain names at the leaves of the tree generally represent individual hosts, and they may point to network addresses, hardware information, and mail routing information. Domain names in the interior of the tree can name a host *and* can point to information about the domain. Interior domain names … can represent both the domain that they correspond to and a particular host on the network. For example, *hp.com* is both the name of the Hewlett-Packard Company's

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | domain and the domain name of a host that runs HP's main web server." (pp. 15-16, *see also* 19-20.) |
| **[1.b]** a data location server network comprising a plurality of data location servers, | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>Sherman discloses a DNS server network with data location servers.<br><br>Sherman discloses that "[t]he primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP addresses of the caches. … It then uses consistent hashing to map all of the virtual names to physical addresses of only the live machines. … The DNS units represent the key component of our system since these units ultimately decide which physical cache stores each resource." (Pg. 37.)<br><br>"In any system that has a distributed database, a particular name server may be presented with a query that can only be answered by some other server." (RFC1034, 4.)<br><br>"[I]n general a particular name server has complete information about a subset of the domain space, and pointers to other name servers that can be used to lead to information from any part of the domain tree." (*Id.*, 6.)<br><br>"Name servers are the repositories of information that make up the domain database. The database is divided up into sections called zones, which are distributed among name servers." (*Id.*, 18.)<br><br>"A given name server will typically support one or more zones, but this gives it authoritative information about only a small section of the domain tree." (*Id.*, 19.) |
| **[1.c]** wherein data location information for a plurality of data entities is stored in the data location server network, | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below. |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | "First, we eliminate duplication of resources among caches since each DNS server with the same view of caches will compute the same mapping from virtual names to IPs." (Pg. 38.)<br><br>The "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)<br><br>RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.)<br><br>"DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*)<br><br>"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.*, 17.) |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034.<br><br>SRI-NIC.ARPA.   A     26.0.0.73<br>                 A     10.0.0.51<br>                 MX    0 SRI-NIC.ARPA.<br>                 HINFO DEC-2060 TOPS20<br><br>(*Id.*, 37.) |
| **[1.d]** at least one of the plurality of data location servers includes location information associated with the identifier string, | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>Sherman states: "First, we eliminate duplication of resources among caches since each DNS server with the same view of caches will compute the same mapping from virtual names to IPs." (Pg. 38.)<br><br>"Hashing allows all of the DNS servers to agree on the mappings from virtual names to IP addresses." (Pg. 40.)<br><br>*See also* Chapter 3 "Consistent Hashing." (Pgs. 22-33.)<br><br>"A domain name identifies a node." (RFC1034, 11.)<br><br>"Conceptually, each node and leaf of the domain name space tree names a set of information, and query operations are attempts to extract specific types of information from a particular set. A query names the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its domain names to identify hosts; queries for address resources return Internet host addresses." (*Id.*, 6.)<br><br>For example, the identifier "vaxa.isi.edu" has two IP addresses shown below. |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | ```
For example, we might show the RRs carried in a message as:

    ISI.EDU.        MX      10 VENERA.ISI.EDU.
                    MX      10 VAXA.ISI.EDU.
    VENERA.ISI.EDU. A       128.9.0.32
                    A       10.1.0.52
    VAXA.ISI.EDU.   A       10.2.0.27
                    A       128.9.0.33
```<br><br>(*Id*., 14.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.) |
| **[1.e]** each one of the plurality of data location servers comprises a processor and a portion of the data location information, | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>Sherman states: "To test these systems, we used a network of seven machines connected to one 100Mbit switch. … Another machine ran a copy of BIND and was the designated domain name server that used Consistent Hashing to resolve virtual names to IP addresses of the three caches." (Pg. 43.) |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| |  Figure 5-1: Test Network Setup <br><br> "In a large web caching system it is possible that the views of live caches will differ slightly from one DNS server to another perhaps due to some lost connections over congested Internet links."  (Pg. 38.) <br><br> See above evidence regarding claim limitation 1.b. <br><br> RFC1034 discloses that name servers are "server programs" (RFC1034, 6) that respond to queries with a DNS response answer.  A server necessarily includes a processor. <br><br> DNS name servers contain "DNS software" that is run when a name server is locating information contained in a RR responsive to a location query. (*Id.*, 15.) <br><br> "In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)<br><br>RFC1034 discloses that DNS name servers "answer standard queries" and that they send "response[s]" that "are carried in a standard message format." (*Id.*, 22.)<br><br>"The actual algorithm used by the name server will depend on the local OS and data structures used to store RRs." (*Id.*, 24.) |
| **[1.f]** the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>The Cache Resolver system discloses that a user browser can communicate with a network of DNS servers that access proxy caches with data. Data is organized based on a consistent hash function applied to a URL or virtual name. The DNS servers may store and/or calculate location information based on that hash function.<br><br>"With a globally known hash function, all of the system clients (users) can agree on which caches are responsible for storing each resource." (Pg. 15.)<br><br>"A family of consistent hash functions developed by the Algorithms group at MIT possesses all of the properties required for mapping documents to caches in the global cache system. As the name suggests these functions maintain consistent mappings despite fluctuations in range. The basic construction of a consistent hash function is quite simple. Both, the data items and the caches, are mapped randomly and independently to a circle with circumference of length 1 as shown in figure 2.3(i). A data item is assigned to the closest cache in the clockwise direction along the circle. Thus, in figure 2.3(i), items 1, 2, and 3 are mapped to cache A, and items 4 and 5 are mapped to cache B." (Pg. 18.) |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
|  |  Figure 2-2: The basic construction of a consistent hash function "Hashing a URL means finding a cache point whose value is the smallest upper bound on the mapped value of a URL and returning the physical cache associated with that point." (Pg. 30.) "In order to demonstrate the practical advantage of Consistent Hashing we implemented a web caching system, called the Cache Resolver that uses our hashing algorithm." (Pg. 34.) "Properties of consistent hashing allow us to use the caches very effectively." (*Id.*, Pg. 38.) "Consistent Hashing allows all of the DNS servers to agree on the mappings from virtual names to IP addresses." (Pg. 40.) *See also* Sherman, Chapter 3 "Consistent Hashing." (Pgs. 22-33.) Likewise, Karger/Sherman discloses: "In order to get around the problem, we decided to use DNS. We could set up our own DNS servers, and modify them to support |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | consistent hashing. This consistent hashing could be "propagated" to browsers during name resolution. More precisely, we wrote an autoconfigure script that performs a *standard* hash of the input URL to a range of 1000 names that we call *virtual caches*. We then used DNS to map the 1000 virtual cache names onto actual code IP addresses via consistent hashing." (Karger/Sherman, p. 10; *see also* Sections 2-3.)<br><br>"The primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP addresses of the caches. We use a number of DNS servers each running a copy of unmodified BIND 8.0 distribution, an implementation of DNS protocol. BIND reads the mappings of virtual names to IP addresses from a *records* file, that is being updated dynamically by another program called "dnshelper". Dnshelper monitors the set of caches, and runs consistent hashing to map all of the 1000 virtual names (see section 3.2) to the range of only the live cache machines. If the set of available caches changes, "dnshelper" signals BIND to reload the *records* file that contains new mappings." (*Id.*)<br><br>"The owner name is often implicit, rather than forming an integral part of the RR. For example, many name servers internally form tree or hash structures for the name space, and chain RRs off nodes." (RFC1034, 13.)<br><br>"Before the DNS can be used to hold naming information for some kind of object, two needs must be met:<br>- A convention for mapping between object names and domain names. This describes how information about an object is accessed.<br>- RR types and data formats for describing the object.<br>These rules can be quite simple or fairly complex. Very often, the designer must take into account existing formats and plan for upward compatibility for existing usage. Multiple mappings or levels of mapping may be required.<br>For hosts, the mapping depends on the existing syntax for host names which is a subset of the usual text representation for domain names, together with RR formats for describing host addresses, etc. Because we need a reliable inverse mapping from |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | address to host name, a special mapping for addresses into the IN-ADDR.ARPA domain is also defined. For mailboxes, the mapping is slightly more complex. The usual mail address <local-part> <mail-domain> is mapped into a domain name by converting <local-part> into a single label (regardles of dots it contains) , converting <mail-domain> into a domain name using the usual text format for domain names (dots denote label breaks), and concatenating the two to form a single domain name. Thus the mailbox HOSTMASTER@SRI-NIC.ARPA is represented as a domain name by HOSTMASTER.SRI-NIC.ARPA. An appreciation for the reasons behind this design also must take into account the scheme for mail exchanges [RFC-974] .” (*Id.,* 9-10.) <br><br> “In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.) |
| **[1.g]** each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below. <br><br> The Cache Resolver system discloses that a “globally known hash function” can be used to determine “which caches are responsible for storing each resource.” (Pg. 15.) <br><br> “We then split our DNS system into a two-layer hierarchy. The top-layer DNS machines serve all of the users. The bottom-layer DNS machines as well as the cache machines correspond to specific regions. The top layer DNS servers resolve for the part of the name that contains geographical information (e.g. ‘ProxyCache3’) and direct the user’s DNS resolver to a set of bottom layer DNS servers that correspond to the user’s geographical region. The bottom layer DNS servers resolve for the next part of the name (e.g ‘A456’) in terms of IP addresses of the cache machines in the same region. |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | Figure 6-1 shows how the two layers of DNS machines are used to split the system into locality regions." (Pgs. 51-52.)<br><br><br><br>Figure 6-1: Splitting the System into Locality Regions<br><br>The Cache Resolver system discloses that a user browser can communicate with a network of DNS servers that access proxy caches with data. A URL or virtual name may be used with a consistent hash function to identify actual physical IP addresses of data. The DNS servers may store and/or calculate location information.<br><br>"A family of consistent hash functions developed by the Algorithms group at MIT possesses all of the properties required for mapping documents to caches in the global cache system. As the name suggests these functions maintain consistent mappings despite fluctuations in range. The basic construction of a consistent hash function is quite simple. Both, the data items and the caches, are mapped randomly and |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | independently to a circle with circumference of length 1 as shown in figure 2.3(i). A data item is assigned to the closest cache in the clockwise direction along the circle. Thus, in figure 2.3(i), items 1, 2, and 3 are mapped to cache A, and items 4 and 5 are mapped to cache B." (Pg. 18.)<br><br><br><br>Figure 2-2: The basic construction of a consistent hash function<br><br>"Hashing a URL means finding a cache point whose value is the smallest upper bound on the mapped value of a URL and returning the physical cache associated with that point." (Pg. 30.)<br><br>"In order to demonstrate the practical advantage of Consistent Hashing we implemented a web caching system, called the Cache Resolver that uses our hashing algorithm." (Pg. 34.)<br><br>"Properties of consistent hashing allow us to use the caches very effectively." (*Id.*, Pg. 38.)<br><br>"Consistent Hashing allows all of the DNS servers to agree on the mappings from virtual names to IP addresses." (Pg. 40.) |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | *See also* Sherman, Chapter 3 "Consistent Hashing." (Pgs. 22-33.)<br><br>Likewise, Karger/Sherman discloses: "In order to get around the problem, we decided to use DNS.  We could set up our own DNS servers, and modify them to support consistent hashing. This consistent hashing could be "propagated" to browsers during name resolution. More precisely, we wrote an autoconfigure script that performs a *standard* hash of the input URL to a range of 1000 names that we call *virtual caches*. We then used DNS to map the 1000 virtual cache names onto actual code IP addresses via consistent hashing." (Karger/Sherman, p. 10; *see also* Sections 2-3.)<br><br>"The primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP addresses of the caches. We use a number of DNS servers each running a copy of unmodified BIND 8.0 distribution, an implementation of DNS protocol. BIND reads the mappings of virtual names to IP addresses from a *records* file, that is being updated dynamically by another program called "dnshelper". Dnshelper monitors the set of caches, and runs consistent hashing to map all of the 1000 virtual names (see section 3.2) to the range of only the live cache machines. If the set of available caches changes, "dnshelper" signals BIND to reload the *records* file that contains new mappings." (*Id.*)<br><br>"The owner name is often implicit, rather than forming an integral part of the RR. For example, many name servers internally form tree or hash structures for the name space, and chain RRs off nodes." (RFC1034, 13.)<br><br>"In any system that has a distributed database, a particular name server may be presented with a query that can only be answered by some other server. The two general approaches to dealing with this problem are 'recursive', in which the first server pursues the query for the client at another server, and 'iterative', in which the server refers the client to another server and lets the client pursue the query." (RFC1034, 4.) |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
|  | "Before the DNS can be used to hold naming information for some kind of object, two needs must be met:<br>- A convention for mapping between object names and domain names. This describes how information about an object is accessed.<br>- RR types and data formats for describing the object.<br>These rules can be quite simple or fairly complex. Very often, the designer must take into account existing formats and plan for upward compatibility for existing usage. Multiple mappings or levels of mapping may be required.<br>For hosts, the mapping depends on the existing syntax for host names which is a subset of the usual text representation for domain names, together with RR formats for describing host addresses, etc. Because we need a reliable inverse mapping from address to host name, a special mapping for addresses into the IN-ADDR.ARPA domain is also defined.<br>For mailboxes, the mapping is slightly more complex. The usual mail address <local-part> <mail-domain> is mapped into a domain name by converting <local-part> into a single label (regardles of dots it contains) , converting <mail-domain> into a domain name using the usual text format for domain names (dots denote label breaks), and concatenating the two to form a single domain name. Thus the mailbox HOSTMASTER@SRI-NIC.ARPA is represented as a domain name by HOSTMASTER.SRI-NIC.ARPA. An appreciation for the reasons behind this design also must take into account the scheme for mail exchanges [RFC-974] ." (*Id.*, 9-10.)<br><br>"Using the query domain name, QTYPE, and QCLASS, the name server looks for matching RRs. In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.*, 17.) |
| **[2]** The system of claim 1, wherein the location information comprises any | See above evidence regarding claim limitation 1.f. |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| portion of a hash table generated with the hash function. | |
| **[6.Preamble]** A system for managing data location information and providing the data location information in response to location queries, the system comprising: | See above evidence regarding the preamble of claim 1. |
| **[6.a]** a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity; | See above evidence regarding claim limitation 1.b.<br><br>RFC1034 discloses a DNS protocol for implementing domain name facilities. (*Id.*, 1.)<br><br>"The domain system also defines procedures for caching retrieved data and for periodic refreshing of data defined by the system administrator." (*Id.*, 5.)<br><br>"A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs). The order of RRs in a set is not significant, and need not be preserved by name servers, resolvers, or other parts of the DNS.<br>When we talk about a specific RR, we assume it has the following:<br>owner        which is the domain name where the RR is found.<br>type          which is an encoded 16 bit value that specifies the type of the resource in this resource record. Types refer to abstract resources." (*Id.*, 11-12.)<br><br>"RRs are represented in binary form in the packets of the DNS protocol, and are usually represented in highly encoded form when stored in a name server or resolver." (*Id.*, 13.)<br><br>BIND 8 supports DNS dynamic updates. This feature "permits authorized updaters to add and delete resource records from a zone for which the server is authoritative." (DNS and BIND, 231.) "Dynamic update permits more than the simple addition and deletion of records. Updaters can add or delete individual resource records, delete RRsets …, or even delete all records associated with a given name." (*Id.*) "For the most |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | part, dynamic update functionality is used by programs … [that] use the *ns_update()* routine to create update messages and send them to an authoritative server for the zone that contains the domain name." (*Id.*, 231-232.) |
| **[6.b]** wherein the location server includes a processor; and | See above evidence regarding claim limitation 1.e. |
| **[6.c]** programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>Sherman states: "The primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP addresses of the caches. We use a number of DNS servers each running a copy of unmodified BIND 8.0 distribution. (BIND is an implementation of DNS protocol.) In addition to BIND, each DNS machine runs one of our programs, called 'dnshelper'. The 'dnshelper' program periodically polls all of the caches, by communicating with the Squid monitors (that run on the cache machines), to determine the dead/alive status of each machine. It then uses consistent hashing to map all of the virtual names to physical addresses of only the live machines. (As noted in section 4.2 our virtual name space consists of 997 possible names.) If any of the mappings change, it writes the new mappings to a 'records' file and signals BIND to update itself by reloading that file. BIND updates itself 'dynamically' which allows it to respond to DNS queries even during the update stage. … When a user request arrives, DNS immediately replies with the mappings that it currently contains." (Pg. 37.)<br><br>"In any system that has a distributed database, a particular name server may be presented with a query that can only be answered by some other server. The two general approaches to dealing with this problem are 'recursive', in which the first server pursues the query for the client at another server, and 'iterative', in which the server refers the client to another server and lets the client pursue the query." (RFC1034, 4.) |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | RFC1034 discloses that name servers are "server programs" (*id.*, 6) that respond to queries with a DNS response answer.

DNS name servers contain "DNS software" that is run when a name server is locating information contained in a RR responsive to a location query. (*Id.*, 15.)

"Queries are messages which may be sent to a name server to provoke a response. … The response by the name server either answers the question posed in the query, refers the requester to another set of name servers, or signals some error condition." (*Id.*, 15-16.)

"A standard query specifies a target domain name (QNAME), query type (QTYPE), and query class (QCLASS) and asks for RRs which match." (*Id.*, 16.)

"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.*, 17.)

"Using the query domain name, QTYPE, and QCLASS, the name server looks for matching RRs. In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address. For example, a mailer tying [sic, trying] to send mail to Mockapetris@ISI.EDU might ask the resolver for mail information about ISI.EDU, resulting in a query for QNAME=ISI.EDU, QTYPE=MX, QCLASS=IN. The response's answer section would be" as follows. (*Id.*, 17.) |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | ```
ISI.EDU.          MX      10 VENERA.ISI.EDU.
                  MX      10 VAXA.ISI.EDU.

while the additional section might be:

   VAXA.ISI.EDU.   A      10.2.0.27
                   A      128.9.0.33
   VENERA.ISI.EDU. A      10.1.0.52
                   A      128.9.0.32
```<br><br>(*Id.*) The additional section is provided "[b]ecause the server assumes that if the requester wants mail exchange information, it will probably want the addresses of the mail exchanges soon afterward." (*Id.*)<br><br>RFC1034 discloses that DNS name servers "answer standard queries" and that they send "response[s]" that "are carried in a standard message format." (*Id.*, 22.)<br><br>"The actual algorithm used by the name server will depend on the local OS and data structures used to store RRs." (*Id.*, 24.)<br><br>*See also* Section 6.2 providing example queries and responses. (*Id.*, 39-50.) Sections 6.2.6 and 6.2.7 discloses examples of responses with a referral. (*Id.*, 44-46.)<br><br>*See also* Paul Albitz and Cricket Liu, DNS and BIND, 27-30, 247, O'Reilly & Associates, Inc., 3rd ed. 1998 (describing that the response may contain the answer or a referral to other name servers). |
| **[8]** The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information. | See above evidence regarding claim limitation 1.e. |
| **[12]** The system of claim 9, wherein the indexed location store comprises a string | See above evidence regarding claim limitation 1.f. |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| store indexed by a hash table distributed across a plurality of servers. | *See also* Paul Albitz and Cricket Liu, DNS and BIND, 6, O'Reilly & Associates, Inc., 3rd ed. 1998 ("Domain names are used as indexes into the DNS database."). |
| **[15.Preamble]** A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising: | See above evidence regarding the preamble of claim 1. |
| **[15.a]** correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network; | See above evidence regarding claim limitations 1.a and 1.d.<br><br>Sherman states: "Browsers make DNS requests to resolve virtual names of proxy caches in terms of concrete IP addresses. Then, they contact a proxy cache with a given IP. Asynchronously from users' requests, DNS units monitor proxy caches as discussed in section 4.3.1. (This monitoring is indicated with dashed lines.) DNS units run consistent hashing to map all the virtual names to IP addresses of only the live cache machines." (Pg. 35.)<br><br>DNS servers "uses consistent hashing to map all of the virtual names to physical addresses of only the live machines. … If any of the mappings change, it writes the new mappings to a 'records' file and signals BIND to update itself by reloading that file." (Pg. 37.)<br><br>"Consistent Hashing allows all of the DNS servers to agree on the mappings from virtual names to IP addresses." (Pg. 40.)<br><br>"This decision would need to take place at our bottom layer DNS servers that ultimately determine the mapping between virtual names and IP addresses." (Pg. 53.)<br><br>*See also* Chapter 3 "Consistent Hashing." (Pgs. 22-33.) |
| **[15.b]** receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location | See above evidence regarding claim limitation 6.c.<br><br>The Cache Resolver system discloses a DNS server network with data location servers. |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| of a data entity included in the data entities; | "The system consists of three major components: the actual cache machines for storing the content, users' browsers that direct requests toward virtual names of the caches, and the domain name servers (also known as resolution units) that use consistent hashing to resolve virtual names requested by the users into specific physical addresses of the cache machines." (Pg. 34.)<br><br>"Browsers make DNS requests to resolve virtual names of proxy caches in terms of concrete IP addresses. Then, they contact a proxy cache with a given IP." (Pg. 35.)<br><br>"When a user request arrives, DNS immediately replies with the mappings that it currently contains." (Pg. 37.) |
| **[15.c]** determining which of the plurality of location servers includes the location information; | See above evidence regarding claim limitation 6.c. |
| **[15.d]** sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and | See above evidence regarding claim limitation 6.c. |
| **[15.e]** sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information. | See above evidence regarding claim limitation 6.c. |

**Exhibit 1C: Invalidity Claim Chart Against U.S. Patent No. 7,814,170 in View of U.S. Patent No. 5,542,087 to Neimat**

AWS asserts that claims 1, 2, 6, 8, 12, and 15 of U.S. Patent No. 7,814,170 ("the '170 patent") are obvious in view of the combination of U.S. Patent No. 5,542,087 to Neimat ("Neimat"), DNS, and Karger '618/420. Neimat qualifies as prior art under pre-AIA 35 U.S.C. § 102(b), e.g., because it was issued on July 30, 1996, more than a year before Kove's October 28, 1999 claimed priority date for the '170 patent. DNS qualifies as prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it was publicly available in May 1997, more than a year before Kove's October 28, 1999 claimed priority date for the '170 patent. Karger '618/420 is prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it has a priority date of March 15, 1998. The citations below are representative of where specifically in the item of prior art each element of each asserted claim may be found, and AWS reserves the right to rely on other portions of the prior art, versions of the cited documents, and/or evidence to show the invalidity of the asserted claims, including all evidence referenced in the accompanying contentions.

Furthermore, the following list includes examples of specifically where certain '170 patent claim elements are found in Neimat.

- Client: Client
- Identifier: Record key value (e.g., value generated from a patient's name)
- Location information: Memory address
- Location server: File server
- Data repository: Memory
- Hash function: Hashing function

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| **[1.Preamble]** A system for managing data stored in a distributed network, the system comprising: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>Neimat discloses that a client can use a record key value (e.g., a value generated from a patient's name) to access a memory address in a distributed computer network.<br><br>"The present invention provides a flexible and efficient data processing method and apparatus, which generate a correct memory address from a character or digit string such as a record key value, and which is adapted for use in distributed or parallel processing architectures such as computer networks, multiprocessing systems, and the like. The present invention provides fast storage and subsequent searching and retrieval of data records in data processing applications such as database applications." (4:40-49.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | <br><br>"The present invention is generally directed to data processing and in particular to a data processing method and apparatus for generating a correct memory address from a character or digit string such as a record key." (1:6-9.)<br><br>"One of the simple data storage and retrieval schemes designed by data processing pioneers is known as a basic hashing scheme. The basic hashing scheme has been used in many areas of data processing such as database addressing and data encryption. The basic hashing scheme will now be introduced with reference to the particular example of database addressing." (1:24-30.)<br><br>"Currently, more and more data base applications are mission critical and require fast storage and subsequent searching, and retrieval of unpredictably large amounts of incoming data. Database operations such as storing records, searching for records and retrieving records all require generating a correct memory address from a record key value. Accordingly, what is needed is a flexible and efficient data processing method and apparatus, which generates a correct memory address from a character or digit string such as a record key value, and which is adapted for use in distributed or parallel processing architectures such as computer networks, multiprocessing systems, and the like." (4:25-36.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| **[1.a]** a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>Neimat discloses file server sites configured to store records of a database at memory locations.<br><br>"A database is a collection of records stored in memory locations or 'buckets'. In accordance with distributed processing principles of the preferred embodiment, data records reside in memory locations at sites of the network. For storing records, it is more efficient to use memory locations in random access memory, RAM, of another processor site of the network than to use memory locations in a local disk. Accordingly, in the preferred embodiment, storage of records is distributed in RAM at various network sites, providing efficient performance of very large database operations that are not feasible in practice within the traditional database architecture." (7:48-59.)<br><br>"Data records are stored under control of the data processor sites, which are further distinguished herein as client data processor sites and file server sites. The database is created in a distributed environment from records provided by any number of distributed and autonomous client data processors. Records of the database are stored at memory locations or 'buckets' provided by file servers. As records are inserted into the database by the clients, the addressable storage space available to the database expands so that records reside on virtually any number of servers. The addressable storage space available to the database expands linearly, one memory location or "bucket" at a time, to a size limited only by data storage capacity of the servers. Accordingly, addressable storage space available to the database expands to occupy new servers linearly, one server at a time, and only when servers already used are efficiently loaded." (8:1-15.)<br><br>"The computer network includes a plurality of data processor sites coupled so as to provide high speed data communication between the processor sites. FIG. 1 is a simplified block diagram of the computer network employed in conjunction with the |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | preferred embodiment of the present invention. In accordance with a preferred embodiment of the present invention, a number of processor sites is large, for example in a range of 10 to 10,000 servers. It should be understood that although in the preferred embodiment the network includes the large number of processor sites, only three processor sites 101, 103, 105, are shown in FIG. 1 for the sake of simplicity. The processor sites are interconnected, preferably by a network cable 107, to provide the data communication between the processor sites. A first one of the processor sites includes a data processor 109, preferably a microprocessor, coupled to the network cable 107 through a network interface 111. The first one of the processor sites further includes memory 113, preferably random access memory, RAM, coupled to the data processor 109. As shown in FIG. 1, remaining processor sites 103, 105 include similar components, arranged in a similar manner, as those discussed with respect to the first processor site." (7:12-33.)<br><br>"In accordance with the teachings of the present invention, a database is created in a distributed environment from records provided by any number of distributed and autonomous clients. Records of the database are stored at memory locations or "buckets' provided by file servers. In accordance with a preferred embodiment of the present invention, a number of servers is large, for example in a range of 10 to 10,000 servers. The large number of servers provide a memory pool that offers many gigabytes of random access memory, RAM, perhaps even terabytes, and even more bytes of disk space memory." (4:50-60.)<br><br>"As indicated previously, in accordance with principles of the present invention, the database is the collection of data records stored in memory locations or 'buckets' provided by file servers. For the sake of simplicity in the following discussions, it is assumed that each file server site includes a respective one memory location or "bucket". However, the present invention is not strictly limited to the respective one memory location at each file server site since the invention can be alternatively practiced with more than one respective memory location at each file server site. Each memory location or 'bucket' has a respective sequentially numbered address, and each server has a respective sequentially numbered address, for example: memory location 0 |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | and server 0, memory location 1 and server 1 . . . and so on to a last memory location and server." (12:15-29.)<br><br>Neimat discloses a "record key value" to identify a record, such as a record related to a value generated from a person's name in a medical database.<br><br>"In general, each data record comprises two sections: a short record key identifying the record, and a remainder of information associated with that key. For example, a particular database may use a person's name as the key to identify a larger portion of data containing further details about that person. As a specific example, in a medical database application, ASCII character values of a patient's name, such as Janet Jones, are scaled or otherwise manipulated to produce a key value, which identifies a larger portion of data containing details about the patient, such as details concerning medical treatment history. From the information in the key value alone, the client site interacts with the server sites, finding the location of the stored data record in order to access the data record corresponding to the key value. For example, if the data is stored in Random Access Memory, RAM, the physical memory address is required. Preferably, memory locations are in RAM, although they could alternatively be on disk as well. In the case of storage on a magnetic or optical disk, the track and sector address is required before a particular data record can be accessed." (8:27-47.)<br><br>"If any one of the clients initiates a database operation such as inserting a record into the database, searching the database to determine whether a particular record are present, or retrieving a record, the client initiating the operation provides a record key value. From the record key value, the method of the present invention provides a correct memory address needed to perform the database operation." (5:23-29.)<br><br>"The key value is generated by means of any one of the client data processors. From the key value, the one client generates a first memory address, which identifies a first memory location or 'bucket'." (5:34-37.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| **[1.b]** a data location server network comprising a plurality of data location servers, | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>Neimat discloses "a plurality of client processors and a plurality of file servers." (Abstract.)<br><br>"From the key value, the one client processor generates a first memory address that identifies a first memory location as shown in block 202. The step of generating the first address includes the one client data processor retrieving a client index value, i', which is stored in a client memory coupled to the one client data processor. The one client data processor hashes the key value using a hashing function based upon the client index value, i', so as to produce the first address, $a_1$." (8:57-67.)<br><br>"Using the first memory address, the client data processor selects from the plurality of servers a server that includes the first memory location." (9:43-45.)<br><br>"By means of one of the client sites interacting with the server sites, a computer user is able to browse or search through the data records, or to insert, or retrieve data records as required. Although the computer user has no need to be aware of the exact manner in which data are stored, it is important for speed of operation that the clients and servers are able to locate and retrieve a particular data record as accurately and quickly as possible. In practice, this requires that the client and server sites interact to locate a desired data record in a fashion that is more direct than having to search through the entire database." (8:16-27.)<br><br>"The computer network includes a plurality of data processor sites coupled so as to provide high speed data communication between the processor sites. FIG. 1 is a simplified block diagram of the computer network employed in conjunction with the preferred embodiment of the present invention. In accordance with a preferred embodiment of the present invention, a number of processor sites is large, for example in a range of 10 to 10,000 servers. It should be understood that although in the preferred embodiment the network includes the large number of processor sites, only |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | three processor sites 101, 103, 105, are shown in FIG. 1 for the sake of simplicity. The processor sites are interconnected, preferably by a network cable 107, to provide the data communication between the processor sites. A first one of the processor sites includes a data processor 109, preferably a microprocessor, coupled to the network cable 107 through a network interface 111. The first one of the processor sites further includes memory 113, preferably random access memory, RAM, coupled to the data processor 109. As shown in FIG. 1, remaining processor sites 103, 105 include similar components, arranged in a similar manner, as those discussed with respect to the first processor site." (7:12-33.) <br><br> "The plurality of clients are coupled to the file servers by the network to provide client access to the database." (5:3-4.) <br><br> "Briefly and in general terms, the data processing method of the present invention includes providing a plurality of client data processors and a plurality of file servers, each server including at least a respective one memory location or 'bucket.'" (5:30-34.) <br><br> **Obviousness of Data Location Server:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. The Patents-in-Suit recognize that "location" is not a requirement for its data servers as "NDTP can be used for any application in which one-to-zero or one-to-many associations among strings are to be maintained and accessed on a network. In applications of NDTP other than distributed databases, the term identifier is likely to make sense in most cases, but the term location may not." ('170 patent, 20:30-37.) The Microfiche Appendix filed with the '170 patent provides software code that demonstrates that location is not necessary for the operation of the data servers. The concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science. In addition, the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science. One of skill would have been motivated to use such a method, for |

49

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system. Furthermore, to the extent the prior art discloses the use of at least one location server, it would have been obvious to use more than one location server to achieve further benefits. *See* MPEP § 2144.VI.B. (Obviousness of Duplication of Parts). One skilled in the art would also be familiar with DNS, which relies on a network of location servers to map host names to internet addresses. Therefore, it would have been obvious to one of skill to employ data location servers in Neimat. |
| **[1.c]** wherein data location information for a plurality of data entities is stored in the data location server network, | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below. |
| | Neimat discloses memory addresses related to locations of records are stored in the client processor sites. |
| | "In general, each data record comprises two sections: a short record key identifying the record, and a remainder of information associated with that key. For example, a particular database may use a person's name as the key to identify a larger portion of data containing further details about that person. As a specific example, in a medical database application, ASCII character values of a patient's name, such as Janet Jones, are scaled or otherwise manipulated to produce a key value, which identifies a larger portion of data containing details about the patient, such as details concerning medical treatment history. From the information in the key value alone, the client site interacts with the server sites, finding the location of the stored data record in order to access the data record corresponding to the key value. For example, if the data is stored in Random Access Memory, RAM, the physical memory address is required. Preferably, memory locations are in RAM, although they could alternatively be on disk as well. In the case of storage on a magnetic or optical disk, the track and sector address is required before a particular data record can be accessed." (8:27-47.) |
| | "Each server includes at least a respective one memory location." (8:53-54.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
|  | **Obviousness of Location Information:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)<br><br>RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.)<br><br>"DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*)<br><br>"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)<br><br>A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034. <br><br> `SRI-NIC.ARPA.     A     26.0.0.73` <br> `                  A     10.0.0.51` <br> `                  MX    0 SRI-NIC.ARPA.` <br> `                  HINFO DEC-2060 TOPS20` <br><br> (*Id.*, 37.) |
| **[1.d]** at least one of the plurality of data location servers includes location information associated with the identifier string, | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below. <br><br> Neimat discloses that the client processor site includes memory addresses related to locations of records, such as a record related to a value generated from a person's name in a medical database. <br><br> "In general, each data record comprises two sections: a short record key identifying the record, and a remainder of information associated with that key. For example, a particular database may use a person's name as the key to identify a larger portion of data containing further details about that person. As a specific example, in a medical database application, ASCII character values of a patient's name, such as Janet Jones, are scaled or otherwise manipulated to produce a key value, which identifies a larger portion of data containing details about the patient, such as details concerning medical treatment history. From the information in the key value alone, the client site interacts with the server sites, finding the location of the stored data record in order to access the data record corresponding to the key value. For example, if the data is stored in Random Access Memory, RAM, the physical memory address is required. Preferably, memory locations are in RAM, although they could alternatively be on disk as well. In the case of storage on a magnetic or optical disk, the track and sector address is required before a particular data record can be accessed." (8:27-47.) <br><br> "Each server includes at least a respective one memory location." (8:53-54.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | **Obviousness of Location Information:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)

RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.)

"DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*)

"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.)

"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)

A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034.<br><br>SRI-NIC.ARPA.   A     26.0.0.73<br>                 A     10.0.0.51<br>                 MX    0 SRI-NIC.ARPA.<br>                 HINFO DEC-2060 TOPS20<br><br>(*Id*., 37.) |
| **[1.e]** each one of the plurality of data location servers comprises a processor and a portion of the data location information, | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>Neimat discloses that the processor sites includes data processor 109 and at least a portion of memory addresses related to locations of records, such as a record related to a person's name in a medical database.<br><br>Neimat discloses that "records provided by any number of distributed and autonomous clients . . . are stored at memory locations or 'buckets' provided by file servers" and that each file server contains only a portion of the records and/or buckets. (4:51-54.)<br><br>"The computer network includes a plurality of data processor sites coupled so as to provide high speed data communication between the processor sites. FIG. 1 is a simplified block diagram of the computer network employed in conjunction with the preferred embodiment of the present invention. In accordance with a preferred embodiment of the present invention, a number of processor sites is large, for example in a range of 10 to 10,000 servers. It should be understood that although in the preferred embodiment the network includes the large number of processor sites, only three processor sites 101, 103, 105, are shown in FIG. 1 for the sake of simplicity. The processor sites are interconnected, preferably by a network cable 107, to provide the data communication between the processor sites. A first one of the processor sites includes a data processor 109, preferably a microprocessor, coupled to the network cable 107 through a network interface 111. The first one of the processor sites further includes memory 113, preferably random access memory, RAM, coupled to the data |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | processor 109. As shown in FIG. 1, remaining processor sites 103, 105 include similar components, arranged in a similar manner, as those discussed with respect to the first processor site." (7:13-33.) <br><br>  <br><br> FIG. 1 <br><br> "In general, each data record comprises two sections: a short record key identifying the record, and a remainder of information associated with that key. For example, a particular database may use a person's name as the key to identify a larger portion of data containing further details about that person. For small data records, the entire record may be used as the key. From the information in the key alone, the data processor must be able to find the physical location in the stored data in order to access the data record corresponding to the key. For example, if the data is stored on a magnetic or optical disk, the track and sector address is required before a particular data record can be accessed. In the case of hardware storage in Random Access Memory, RAM, the memory address is required." (1:45-57.) <br><br> "A computing apparatus of the present invention, preferably a network of computers, is programmed to perform the method of the present invention." (6:1-3.) |

55

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | "In general, each data record comprises two sections: a short record key identifying the record, and a remainder of information associated with that key. For example, a particular database may use a person's name as the key to identify a larger portion of data containing further details about that person. As a specific example, in a medical database application, ASCII character values of a patient's name, such as Janet Jones, are scaled or otherwise manipulated to produce a key value, which identifies a larger portion of data containing details about the patient, such as details concerning medical treatment history. From the information in the key value alone, the client site interacts with the server sites, finding the location of the stored data record in order to access the data record corresponding to the key value. For example, if the data is stored in Random Access Memory, RAM, the physical memory address is required. Preferably, memory locations are in RAM, although they could alternatively be on disk as well. In the case of storage on a magnetic or optical disk, the track and sector address is required before a particular data record can be accessed." (8:27-47.)<br><br>"Each server includes at least a respective one memory location." (8:53-54.)<br><br>**Obviousness of Location Information:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)<br><br>RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.)<br><br>"DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*)<br><br>"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
|  | identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.*, 17.)<br><br>A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034.<br><br>SRI-NIC.ARPA.    A     26.0.0.73<br>              A     10.0.0.51<br>              MX    0 SRI-NIC.ARPA.<br>              HINFO   DEC-2060 TOPS20<br><br>(*Id.*, 37.) |
| **[1.f]** the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>"From the key value, the one client processor generates a first memory address that identifies a first memory location as shown in block 202. The step of generating the first address includes the one client data processor retrieving a client index value, i', which is stored in a client memory coupled to the one client data processor. The one |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | client data processor hashes the key value using a hashing function based upon the client index value, i', so as to produce the first address, $a_1$." (8:57-67.)<br><br>"Using the first memory address, the client data processor selects from the plurality of servers a server that includes the first memory location. Preferably, the client memory stores a static table which maps a respective memory address of each memory location to a respective server address. Alternatively, some other mapping means such as a dynamic table may be employed. Preferably, the one client data processor looks up the first memory address in the table to select from the plurality of servers the server that includes the first memory location. Over the network, the one client data processor transmits the key value to the server that includes the first memory location, as shown in block 204 of the flow chart of FIG. 2." (9:43-55.)<br><br>"From the key value, the server determines whether the first memory address is the correct memory address, as shown in block 206. In the preferred embodiment, the step of determining whether the first address is the correct address includes retrieving a first server index value, J, from the first memory location, hashing the key value using a hashing function based upon the first server index value to produce a first hash value, and comparing the first address to the first hash value to determine whether the first address is the correct address." (9:56-65.)<br><br>"If the first memory address is not the correct memory address, then, from the key value, the server generates a second memory address, $a_2$, that identifies a second memory location, as shown in block 208 of the flow chart of FIG. 2. The step of generating the second address by means of the server includes: making the second address, $a_2$, equal to the first hash value, $h_1$ (C); decrementing the first server index value, J, to produce a decremented first server index value, J-1; hashing the key value using a hashing function based upon the decremented first server index value to produce a second hash value, $h_2$ (C); and changing the second address so as to be equal to the second hash value if the second hash value is greater than the first address, and if the second hash value is less than the first hash value." (10:13-26.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | **Obviousness of Hash Function:** To the extent that Kove contends that Neimat does not disclose this limitation, and this claim is construed to require a hash function, the subject matter as a whole of each claim, including this limitation, would have been obvious to one of skill in the art before the invention. The specification of the asserted patents themselves concede that the "preferably applied" hash function used to organize the data location information across the plurality of data location servers was "well-known" in computer science. ('170 patent, col. 15:12-18.) Numerous other publications before the filing of the Patents-in-Suit describe the use of hash functions to organize location information across servers in distributed systems. Courts have also recognized that hash functions are "generic and basic mathematical or algorithmic functions that do not make a patent inventive." *Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 WL 1456678, at *7 (N.D. Cal. March 23, 2018). One skilled in the art would be familiar with the use of hashing in a distributed network. Karger '618/420 states that it was well understood "for clients to use a standard hash function to determine from which server to request a document." ('420 patent, 3:23-50; '618 patent, 3:18-44.) "In one embodiment, the mapping of requests [e.g., for a document] and resources [e.g., servers] to the mathematical mapping space is accomplished with a hash function. A hash function takes an input (k) and returns an output in a given range. Hash functions can be used to allocate pointers or keys to a location in a hash table, which is a data structure having a specified number of locations or 'slots.' If h(k) is a hash function, key (k) is said to hash to a hash table location h(k). A goal in designing a hash function is for each key (k) to be equally likely to hash to any of the locations in the hash table. An approach to achieve this is to derive the hash function in a way that is expected to be independent of any patterns that might exist in the data." ('420 patent, 10:22-34; '618 patent, 10:13-25.) Karger '420/618 discloses a "consistent hashing" function, which "avoids increasing load and spread when the number of servers changes." ('420 patent, 6:29-41; '618 patent, 6:21-33.) "Networked distributed file systems, groups of computers that store large amounts of data on an intranet or internet, and have too much information to effectively serve on one server, can use the invention to great benefit." ('420 patent, 19:47-50; '618 patent, 18:14-17.) Thus, one skilled in the art would recognize that consistent hashing as taught by Karger '420/618 |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
|  | could be used to improve the operation of a distributed system such as disclosed by Neimat when a server is added to or removed from that system.  FIG. 2 |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | **Obviousness of Location Information:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.) |
| | RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.) |
| | "DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*) |
| | "The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.) |
| | "In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034. <br><br> SRI-NIC.ARPA.    A      26.0.0.73 <br>                   A      10.0.0.51 <br>                   MX     0 SRI-NIC.ARPA. <br>                   HINFO   DEC-2060 TOPS20 <br><br> (*Id.*, 37.) |
| **[1.g]** each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below. <br><br> "From the key value, the one client processor generates a first memory address that identifies a first memory location as shown in block 202. The step of generating the first address includes the one client data processor retrieving a client index value, i', which is stored in a client memory coupled to the one client data processor. The one client data processor hashes the key value using a hashing function based upon the client index value, i', so as to produce the first address, $a_1$." (8:57-67.) <br><br> "Using the first memory address, the client data processor selects from the plurality of servers a server that includes the first memory location. Preferably, the client memory stores a static table which maps a respective memory address of each memory location to a respective server address. Alternatively, some other mapping means such as a dynamic table may be employed. Preferably, the one client data processor looks up the first memory address in the table of servers to select from the plurality of servers the server that includes the first memory location. Over the network, the one client data processor transmits the key value to the server that includes the first memory location, as shown in block 204 of the flow chart of FIG. 2." (9:43-55.) <br><br> "If the first memory address is not the correct memory address, then, from the key value, the server generates a second memory address, $a_2$, that identifies a second |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
|  | memory location, as shown in block 208 of the flow chart of FIG. 2. The step of generating the second address by means of the server includes: making the second address, $a_2$, equal to the first hash value, $h_1$ (C); decrementing the first server index value, J, to produce a decremented first server index value, J-1; hashing the key value using a hashing function based upon the decremented first server index value to produce a second hash value, $h_2$ (C); and changing the second address so as to be equal to the second hash value if the second hash value is greater than the first address, and if the second hash value is less than the first hash value." (10:13-26.)<br><br>"Using the second memory address, the server selects from the plurality of servers another server, which includes the second memory location." (10:48-50.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| |  |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| **[2]** The system of claim 1, wherein the location information comprises any portion of a hash table generated with the hash function. | See above evidence regarding claim limitation 1.f. |
| **[6.Preamble]** A system for managing data location information and providing the data location information in response to location queries, the system comprising: | See above evidence regarding the preamble of claim 1. |
| **[6.a]** a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity; | See above evidence regarding claim limitation 1.b.<br><br>**Obviousness of Data in a Network Pertaining to the Entity:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, RFC1034 discloses a DNS protocol for implementing domain name facilities. (*Id.*, 1.)<br><br>"The domain system also defines procedures for caching retrieved data and for periodic refreshing of data defined by the system administrator." (*Id.*, 5.)<br><br>"A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs). The order of RRs in a set is not significant, and need not be preserved by name servers, resolvers, or other parts of the DNS.<br>When we talk about a specific RR, we assume it has the following:<br>owner　　　which is the domain name where the RR is found.<br>type　　　　which is an encoded 16 bit value that specifies the type of the resource in this resource record. Types refer to abstract resources." (*Id.*, 11-12.)<br><br>"RRs are represented in binary form in the packets of the DNS protocol, and are usually represented in highly encoded form when stored in a name server or resolver." (*Id.*, 13.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | BIND 8 supports DNS dynamic updates. This feature "permits authorized updaters to add and delete resource records from a zone for which the server is authoritative." (DNS and BIND, 231.) "Dynamic update permits more than the simple addition and deletion of records. Updaters can add or delete individual resource records, delete RRsets …, or even delete all records associated with a given name." (*Id.*) "For the most part, dynamic update functionality is used by programs … [that] use the *ns_update()* routine to create update messages and send them to an authoritative server for the zone that contains the domain name." (*Id.*, 231-232.) |
| **[6.b]** wherein the location server includes a processor; and | See above evidence regarding claim limitation 1.e. |
| **[6.c]** programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.

Neimat discloses that "[a] computing apparatus of the present invention, preferably a network of computers, is programmed to perform the method of the present invention," as described below. (6:1-3.)

Additionally, Neimat reflects that the processor sites necessarily includes executable code to execute, for example, the steps described with respect to Figure 2. (8:48-11:64.)

"From the key value, the one client generates a first memory address, which identifies a first memory location or 'bucket'. The one client selects from the plurality of servers a server that includes the first memory location. The one client then transmits the key value as part of a message to the server that includes the first memory location. The server that includes the first memory location determines whether the first address is the correct address. Often the first address is the correct address. However, if the first address is not the correct address, then the following steps are performed in accordance with the method of the present invention. From the key value, the server that includes the first memory location generates a second memory address, which identifies a second memory location or 'bucket'. The server that includes the first memory location |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | then selects from the plurality of servers a server that includes the second memory location. The server that includes the first memory location then transmits the key value as part of a message to the server that includes the second memory location. The server that includes the second memory location determines whether the second address is the correct address. Quite often, if the first address is not the correct address then the second address is the correct address. However, if the second address is not the correct address, then the server that includes the second memory location generates a third memory address. In accordance with the teachings of the present invention discussed greater detail later herein, the third address is certain to be the correct address if neither one of the first or second addresses is the correct address." (5:35-67.)<br><br>"If the first memory address is not the correct memory address, then, from the key value, the server generates a second memory address, $a_2$, that identifies a second memory location, as shown in block 208 of the flow chart of FIG. 2. The step of generating the second address by means of the server includes: making the second address, $a_2$, equal to the first hash value, $h_1$ (C); decrementing the first server index value, J, to produce a decremented first server index value, J-1; hashing the key value using a hashing function based upon the decremented first server index value to produce a second hash value, $h_2$ (C); and changing the second address so as to be equal to the second hash value if the second hash value is greater than the first address, and if the second hash value is less than the first hash value." (10:13-27.)<br><br>**Obviousness of Location Information:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)<br><br>RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | "DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id*.)<br><br>"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id*., 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id*., 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id*., 12.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)<br><br>A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034.<br><br>`SRI-NIC.ARPA.    A     26.0.0.73`<br>`                 A     10.0.0.51`<br>`                 MX    0 SRI-NIC.ARPA.`<br>`                 HINFO DEC-2060 TOPS20`<br><br>(*Id*., 37.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| **[8]** The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information. | See above evidence regarding claim limitation 1.e. |
| **[12]** The system of claim 9, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers. | See above evidence regarding claim 2. |
| **[15.Preamble]** A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising: | See above evidence regarding the preamble of claim 1 and claim limitation 1.g. |
| **[15.a]** correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>"From the key value, the one client processor generates a first memory address that identifies a first memory location as shown in block 202. The step of generating the first address includes the one client data processor retrieving a client index value, i', which is stored in a client memory coupled to the one client data processor. The one client data processor hashes the key value using a hashing function based upon the client index value, i', so as to produce the first address, $a_1$." (8:57-67.) |
| **[15.b]** receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities; | See above evidence regarding claim limitation 6.a. |
| **[15.c]** determining which of the plurality of location servers includes the location information; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below. |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | "From the key value, the one client generates a first memory address, which identifies a first memory location or 'bucket'. The one client selects from the plurality of servers a server that includes the first memory location. The one client then transmits the key value as part of a message to the server that includes the first memory location. The server that includes the first memory location determines whether the first address is the correct address." (5:35-43.)<br><br>"If the first memory address is not the correct memory address, then, from the key value, the server generates a second memory address, $a_2$, that identifies a second memory location, as shown in block 208 of the flow chart of FIG. 2. The step of generating the second address by means of the server includes: making the second address, $a_2$, equal to the first hash value, $h_1$ (C); decrementing the first server index value, J, to produce a decremented first server index value, J-1; hashing the key value using a hashing function based upon the decremented first server index value to produce a second hash value, $h_2$ (C); and changing the second address so as to be equal to the second hash value if the second hash value is greater than the first address, and if the second hash value is less than the first hash value." (10:13-27.)<br><br>**Obviousness of Location Information:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)<br><br>RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.)<br><br>"DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*)<br><br>"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). ... The domain name of a node is the list of |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| | the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.*, 17.)<br><br>A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034.<br><br>`SRI-NIC.ARPA.    A      26.0.0.73`<br>`                 A      10.0.0.51`<br>`                 MX     0 SRI-NIC.ARPA.`<br>`                 HINFO  DEC-2060 TOPS20`<br><br>(*Id.*, 37.) |
| **[15.d]** sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response | See above evidence regarding claim limitation 6.c. |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 |
|---|---|
| message comprising the location information; and | |
| **[15.e]** sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information. | See above evidence regarding claim limitation 6.c. |

**Exhibit 1D: Invalidity Claim Chart Against U.S. Patent No. 7,814,170 in View of U.S. Patent No. 6,212,521 to Minami**

AWS asserts that claims 1, 2, 6, 8, 12, and 15 of U.S. Patent No. 7,814,170 ("the '170 patent") are obvious in view of the combination of U.S. Patent No. 6,212,521 to Minami ("Minami"), DNS, and Karger '618/420. Minami qualifies as prior art under pre-AIA 35 U.S.C. § 102(e), e.g., because it was filed on March 27, 1998, before Kove's October 28, 1999 claimed priority date for the '170 patent, and issued on April 3, 2001. DNS qualifies as prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it was publicly available in May 1997, more than a year before Kove's October 28, 1999 claimed priority date for the '170 patent. Karger '618/420 is prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it has a priority date of March 15, 1998. The citations below are representative of where specifically in the item of prior art each element of each asserted claim may be found, and AWS reserves the right to rely on other portions of the prior art, versions of the cited documents, and/or evidence to show the invalidity of the asserted claims, including all evidence referenced in the accompanying contentions.

Furthermore, the following list includes examples of specifically where certain '170 patent claim elements are found in Minami.

- Client: Terminal
- Identifier: Search keyword
- Location information: Primary server identifier
- Location server: Primary server
- Data repository: Data storage
- Hash function: Hash function unit

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| **[1.Preamble]** A system for managing data stored in a distributed network, the system comprising: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>Minami discloses that a terminal can send a search keyword to a primary server that has a primary hash function unit that computes a primary server identifier.<br><br>"A data management system that allows client terminals on a network to register records with search keywords to distributed data management servers and to retrieve them by entering a specific search keyword." (Abstract) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | <br><br>FIG. 3<br><br>"Taking the above into consideration, a first object of the present invention is to provide a data management system which relieves processing loads imposed on individual data management servers by distributing data registration and retrieval tasks and reducing the amount of data maintained in each server. Moreover, a second object of the present invention is to provide a primary server for use in the above data management system; a third object of the present invention is to provide a secondary server for use in the above data management system." (3:38-47.) |
| **[1.a]** a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>"Local backup data storage 112 stores such records that have been delivered in extra data registration request messages. Here, the term 'local backup data' denotes that the data stored in this storage 112 is replicas of the original registration data that is stored in secondary servers located in the same primary area. Remote backup data storage 113 saves, as a measure of precaution, such records that have been delivered in replicated data registration request messages. Here, the term 'remote backup data' denotes that |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | the data stored in this storage 113 is replicas of the original registration data that is stored in secondary servers located in remote primary areas." (10:46-57.)<br><br>"Regular data storage 1109 is the first place to store the data contained in the data registration request messages when they are directly received from terminals. Local replicated data storage 1110 registers information, when local replicated data registration request message are received. Here, the term 'local replicated data' denotes that the data stored in this storage 1110 is replicas of the original registration data that is stored in other secondary servers located in the same (or local) primary area. In contrast to this, remote replicated data storage 1111 is used to save information extracted from remote replicated data registration request messages when they are received. The term 'remote replicated data' denotes that the data stored in this storage 1111 is replicas of the original registration data that is stored in other secondary servers located in some remote primary areas." (11:35-51.)<br><br>"FIG. 20--Regular data storage, local replicated data storage, remote replicated data storage, local backup data storage, and remote backup data storage. (All those five storage areas are used to store search keywords and data objects to be retrieved with specific keywords, along with related server identifiers. This structure is common to primary servers and secondary servers.)" (12:49-56, Fig. 20.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | COMMON DATA STRUCTURE OF REGULAR DATA STORAGE, LOCAL REPLICATED DATA STORAGE, REMOTE REPLICATED DATA STORAGE, LOCAL BACKUP DATA STORAGE, AND REMOTE BACKUP DATA STORAGE<br><br>DATA COUNTER<br><br>SEARCH KEYWORD (=IP ADDRESS)<br>DATA OBJECT TO BE RETRIEVED (=ATM ADDRESS)<br>SERVER IDENTIFIER<br>SEARCH KEYWORD (=IP ADDRESS)<br>DATA OBJECT TO BE RETRIEVED (ATM ADDRESS)<br>SERVER IDENTIFIER<br><br>FIG. 20 |
| **[1.b]** a data location server network comprising a plurality of data location servers, | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>"The entire coverage area of the network is divided into a plurality of primary areas, and each primary area is further subdivided into a plurality of secondary areas. Primary and secondary servers are deployed over the network, one for each individual primary area and secondary area, respectively." (Abstract, see also 7:43-50, Fig. 1.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| |  FIG. 1 "To accomplish the first object, according to the present invention, there is provided a data management system which allows terminals on a network to register records with search keywords and to retrieve the records by entering a specific search keyword. This system comprises the following elements: a plurality of primary areas which constitute an entire coverage area of the network; a plurality of secondary areas which constitute each of the primary areas; a plurality of primary servers, one for each primary area, which are uniquely identified in the network by primary server identifiers assigned thereto; a plurality of secondary servers, one for each secondary area, which are uniquely identified in each primary area by secondary server identifiers assigned thereto; a primary transformation unit, disposed in each primary server, for processing a given search keyword to derive a specific primary server identifier indicating one of the |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located; and a secondary transformation unit, disposed in each primary server and each secondary server, for processing a given search keyword to derive a specific secondary server identifier indicating one of the secondary servers that is located in the same primary area and has a record corresponding to the given search keyword." (3:48-4:9.)<br><br>**Obviousness of Data Location Server:** To the extent that Kove contends that Minami does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. The Patents-in-Suit recognize that "location" is not a requirement for its data servers as "NDTP can be used for any application in which one-to-zero or one-to-many associations among strings are to be maintained and accessed on a network. In applications of NDTP other than distributed databases, the term identifier is likely to make sense in most cases, but the term location may not." ('170 patent, 20:30-37.) The Microfiche Appendix filed with the '170 patent provides software code that demonstrates that location is not necessary for the operation of the data servers. The concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science. In addition, the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science. One of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system. Furthermore, to the extent the prior art discloses the use of at least one location server, it would have been obvious to use more than one location server to achieve further benefits. *See* MPEP § 2144.VI.B. (Obviousness of Duplication of Parts). One skilled in the art would also be familiar with DNS, which relies on a network of location servers to map host names to internet addresses. Therefore, it would have been obvious to one of skill to employ data location servers in Minami. |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| **[1.c]** wherein data location information for a plurality of data entities is stored in the data location server network, | See above evidence regarding claim limitations 1.a and 1.b. Further, <br><br> "[A] primary transformation unit, disposed in each primary server, for processing a given search keyword to derive a specific primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located" (7:52-57.) <br><br>  <br><br> FIG. 1 <br><br> "According to the present invention, the entire coverage area of a network is divided into a plurality of primary areas, and each primary area is subdivided into a plurality of secondary areas. Primary and secondary servers are deployed in the network, one for each individual primary area and secondary area, respectively. The primary servers employ a primary hash function that processes a given search keyword to derive a |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located. Further, the primary servers have a secondary hash function that processes a given search keyword to derive a specific secondary server identifier indicating one of the secondary servers that is located in the same primary area as their own and has a record corresponding to the given search keyword. The secondary servers are also equipped with the same secondary hash function as the primary servers'. Those two hash functions are used in both data registration and data retrieval processes." (28:12-32.)<br><br>**Obviousness of Location Information:** To the extent that Kove contends that Minami does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)<br><br>RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.)<br><br>"DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*)<br><br>"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | "In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)<br><br>A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034.<br><br>```<br>SRI-NIC.ARPA.    A    26.0.0.73<br>                 A    10.0.0.51<br>                 MX   0 SRI-NIC.ARPA.<br>                 HINFO DEC-2060 TOPS20<br>```<br><br>(*Id.,* 37.) |
| **[1.d]** at least one of the plurality of data location servers includes location information associated with the identifier string, | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>"Now, in the above-described structural arrangement, it is supposed that a terminal located in the secondary area 3a, for instance, is attempting to newly enter some registration data that consists of a search keyword and a data object to be shared in the network. This new registration data will be saved not only in the secondary server 5a, but also in another secondary server deployed in the primary area 2a, and further in a secondary server deployed in a different primary area. More specifically, the secondary server 5a, having received a data registration request from a terminal, first stores the received registration data into its local storage. At the same time, the secondary server 5a identifies another secondary server in the primary area 2a by using its own secondary transformation unit 8, and requests the identified secondary server to store the same registration data in its data storage. The appointed secondary server stores the |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | registration data as requested. The secondary server 5a further sends a request for the data registration to the primary server 4a governing the primary area 2a where the secondary server 5a is located. Upon receipt of this request, the primary server 4a determines another primary server by using its own primary transformation unit 6 and requests the determined primary server to store the same registration data. Having received this request, the primary server identifies a secondary server in its own coverage area by using its secondary transformation unit and requests it to store the registration data. The secondary server stores the registration data as requested by the primary server." (8:23-50.)<br><br>"[A] primary transformation unit, disposed in each primary server, for processing a given search keyword to derive a specific primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located" (7:52-57.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| |  |

FIG. 1

"According to the present invention, the entire coverage area of a network is divided into a plurality of primary areas, and each primary area is subdivided into a plurality of secondary areas. Primary and secondary servers are deployed in the network, one for each individual primary area and secondary area, respectively. The primary servers employ a primary hash function that processes a given search keyword to derive a primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located. Further, the primary servers have a secondary hash function that processes a given search keyword to derive a specific secondary server identifier indicating one of the secondary servers that is located in the same primary area as their own and has a record corresponding to the given search keyword. The secondary servers are also equipped with the same secondary hash function as the primary

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | servers'. Those two hash functions are used in both data registration and data retrieval processes." (28:12-32.) |
| | **Obviousness of Location Information:** To the extent that Kove contends that Minami does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.) |
| | RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.) |
| | "DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*) |
| | "The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.) |
| | "In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.*, 17.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034.<br><br>`SRI-NIC.ARPA.    A      26.0.0.73`<br>`                 A      10.0.0.51`<br>`                 MX     0 SRI-NIC.ARPA.`<br>`                 HINFO  DEC-2060 TOPS20`<br><br>(*Id.*, 37.) |
| **[1.e]** each one of the plurality of data location servers comprises a processor and a portion of the data location information, | See above evidence regarding claim limitation 1.d. In addition, Minami describes that the primary and secondary servers are ATM address resolution servers (ATM-ARP servers), which one skilled in the art would understand as having a processor.<br><br>"The present invention proposes several techniques applicable to such ATM-ARP servers, essential facilities for interconnecting the existing LANs and public ATM networks. They can also be used in data management systems that provides data registration and retrieval services in a distributed environment."<br><br>"[A] primary transformation unit, disposed in each primary server, for processing a given search keyword to derive a specific primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located" (7:52-57.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
|  | <br><br>FIG. 1<br><br>"According to the present invention, the entire coverage area of a network is divided into a plurality of primary areas, and each primary area is subdivided into a plurality of secondary areas. Primary and secondary servers are deployed in the network, one for each individual primary area and secondary area, respectively. The primary servers employ a primary hash function that processes a given search keyword to derive a primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located. Further, the primary servers have a secondary hash function that processes a given search keyword to derive a specific secondary server identifier indicating one of the secondary servers that is located in the same primary area as their own and has a record corresponding to the given search keyword. The secondary servers are also equipped with the same secondary hash function as the primary |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | servers'. Those two hash functions are used in both data registration and data retrieval processes." (28:12-32.) |

To the column cell:

**Obviousness of Location Information:** To the extent that Kove contends that Minami does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)

RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.)

"DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*)

"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.)

"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.*, 17.)

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034. <br><br> `SRI-NIC.ARPA.    A       26.0.0.73` <br> `                 A       10.0.0.51` <br> `                 MX      0 SRI-NIC.ARPA.` <br> `                 HINFO   DEC-2060 TOPS20` <br><br> (*Id.*, 37.) |
| **[1.f]** the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below. <br><br> "The primary servers employ a primary hash function that processes a given search keyword to derive a primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record relevant to the given search keyword is located. Further, the primary servers have a secondary hash function that processes a given search keyword to derive a specific secondary server identifier indicating one of the secondary servers that is located in the same primary area as their own and has a record relevant to the given search keyword. The secondary servers are also equipped with the same secondary hash function as the primary servers'. Those two hash functions are used in both data registration and data retrieval processes." (Abstract.) <br><br> "A primary hash function unit 109 and secondary hash function unit 111 are used to obtain a primary and secondary server identifiers, respectively, from a given search keyword." (10:43-46.) <br><br> "As a background knowledge, the following few paragraphs present a brief description of hash functions used in the present embodiment, assuming the area division illustrated in FIG. **2**. Generally, hash function is a transformation that takes a variable- |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | size input (a search keyword in the present case) and returns a fixed-size string, which is called the hash value. In the present invention, the data management servers use two kinds of hash functions called "primary hash function" and "secondary hash function." It is noted here that all primary servers commonly use the same primary hash function, while each primary server and its subordinate secondary servers (i.e., secondary servers in that server's primary area) share a common same secondary hash function of their own. In other words, the primary and secondary servers in different primary areas use different secondary hash functions." (14:6-20.)<br><br>"The primary hash function, commonly used by the primary servers, produces the primary hash value by processing a given search keyword in the following way, based on the number of primary areas (="3") and the number of secondary areas (="3"). First, the given search keyword, now being treated as a binary value, is divided by "3." A constant value of "1" is then added to the remainder of that division, thus obtaining the primary hash value. The secondary hash function commonly used in the primary area of the primary server **10** divides a given search keyword by 2 (i.e., applying a 1-bit right-shift operation to the binary dividend) and further divides the quotient by 3. Lastly, a constant value of 1 is added to the remainder of the second division, thereby yielding the secondary hash value. The secondary hash function commonly used in the primary server **20**'s primary area divides a given search keyword by "4" (i.e., applying a 2-bit right-shift operation to the binary dividend) and further divides the quotient by 3. Then, a constant value of 1 is added to the remainder of the second division, thereby yielding the secondary hash value. Likewise, the secondary hash function commonly used in the primary server **30**'s primary area first divides a given search keyword by "8" (i.e., applying a 3-bit right-shift operation to the binary dividend), further divides the quotient by "3," and adds a constant value of "1" to the remainder of the second division, thereby yielding the secondary hash value." (14:21-47.)<br><br>*See also,* (18:21-19:34.)<br><br>"[A] primary transformation unit, disposed in each primary server, for processing a given search keyword to derive a specific primary server identifier indicating one of |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located" (7:52-57.)<br><br><br><br>**FIG. 1**<br><br>_____<br><br>"According to the present invention, the entire coverage area of a network is divided into a plurality of primary areas, and each primary area is subdivided into a plurality of secondary areas. Primary and secondary servers are deployed in the network, one for each individual primary area and secondary area, respectively. The primary servers employ a primary hash function that processes a given search keyword to derive a primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located. Further, the primary servers have a secondary hash function that processes a given search keyword to derive a specific secondary server identifier |

90

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | indicating one of the secondary servers that is located in the same primary area as their own and has a record corresponding to the given search keyword. The secondary servers are also equipped with the same secondary hash function as the primary servers'. Those two hash functions are used in both data registration and data retrieval processes." (28:12-32.)<br><br>**Obviousness of Hash Function:** To the extent that Kove contends that Minami does not disclose this limitation, and this claim is construed to require a hash function, the subject matter as a whole of each claim, including this limitation, would have been obvious to one of skill in the art before the invention. The specification of the asserted patents themselves concede that the "preferably applied" hash function used to organize the data location information across the plurality of data location servers was "well-known" in computer science. ('170 patent, col. 15:12-18.) Numerous other publications before the filing of the Patents-in-Suit describe the use of hash functions to organize location information across servers in distributed systems. Courts have also recognized that hash functions are "generic and basic mathematical or algorithmic functions that do not make a patent inventive." *Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 WL 1456678, at *7 (N.D. Cal. March 23, 2018). One skilled in the art would be familiar with the use of consistent hashing in a distributed network. Karger '618/420 states that it was well understood "for clients to use a standard hash function to determine from which server to request a document." ('420 patent, 3:23-50; '618 patent, 3:18-44.) "In one embodiment, the mapping of requests [e.g., for a document] and resources [e.g., servers] to the mathematical mapping space is accomplished with a hash function. A hash function takes an input (k) and returns an output in a given range. Hash functions can be used to allocate pointers or keys to a location in a hash table, which is a data structure having a specified number of locations or 'slots.' If h(k) is a hash function, key (k) is said to hash to a hash table location h(k). A goal in designing a hash function is for each key (k) to be equally likely to hash to any of the locations in the hash table. An approach to achieve this is to derive the hash function in a way that is expected to be independent of any patterns that might exist in the data." ('420 patent, 10:22-34; '618 patent, 10:13-25.) Karger '420/618 discloses a "consistent hashing" function, which "avoids increasing load and |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | spread when the number of servers changes." ('420 patent, 6:29-41; '618 patent, 6:21-33.) "Networked distributed file systems, groups of computers that store large amounts of data on an intranet or internet, and have too much information to effectively serve on one server, can use the invention to great benefit." ('420 patent, 19:47-50; '618 patent, 18:14-17.) Thus, one skilled in the art would recognize that consistent hashing as taught by Karger '420/618 could be used to improve the operation of a distributed system such as disclosed by Minami when a server is added to or removed from that system. |
| | **Obviousness of Location Information:** To the extent that Kove contends that Minami does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.) |
| | RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.) |
| | "DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*) |
| | "The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.) |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | "In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)<br><br>A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034.<br><br>`SRI-NIC.ARPA.    A    26.0.0.73`<br>`                 A    10.0.0.51`<br>`                 MX   0 SRI-NIC.ARPA.`<br>`                 HINFO DEC-2060 TOPS20`<br><br>(*Id.,* 37.) |
| **[1.g]** each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>Minami describes data retrieval using a hash function. (19:35-23:37.) For example, "(D-2-2) The secondary server 120 receives this data retrieval request message through its communication controller, and initiates a process of FIG. 42 by activating its data retrieval unit that deals with the data retrieval message class. Since the received message is identified as a data retrieval request message, the data retrieval unit takes a process flow of F423, whose main part is shown in FIG. 43. In F423, the data retrieval unit first extracts a search keyword '5' from the request message, saves this search keyword and the connection identifier for the terminal 50 for later use, and then searches its own regular data storage for a record relevant to the extracted search keyword '5.' In this CASE (2), however, this search ends up with no matches. The data retrieval unit then applies its secondary hash function to the search keyword '5,' thus obtaining a secondary hash value of '3.' Since this secondary hash value '3' does not |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | match with its own secondary server identifier '2,' the secondary server 120 produces a local replicated data retrieval request message (FIG. 13) on the basis of the data retrieval request message in process. This new message, having a value of '2' in its secondary server identifier field, is transmitted by the communication controller to another secondary server 130 whose secondary server identifier is known to be '3.'" (20:27-50.)<br><br>"As a background knowledge, the following few paragraphs present a brief description of hash functions used in the present embodiment, assuming the area division illustrated in FIG. **2**. Generally, hash function is a transformation that takes a variable-size input (a search keyword in the present case) and returns a fixed-size string, which is called the hash value. In the present invention, the data management servers use two kinds of hash functions called "primary hash function" and "secondary hash function." It is noted here that all primary servers commonly use the same primary hash function, while each primary server and its subordinate secondary servers (i.e., secondary servers in that server's primary area) share a common same secondary hash function of their own. In other words, the primary and secondary servers in different primary areas use different secondary hash functions." (14:6-20.)<br><br>"The primary hash function, commonly used by the primary servers, produces the primary hash value by processing a given search keyword in the following way, based on the number of primary areas (="3") and the number of secondary areas (="3"). First, the given search keyword, now being treated as a binary value, is divided by "3." A constant value of "1" is then added to the remainder of that division, thus obtaining the primary hash value. The secondary hash function commonly used in the primary area of the primary server **10** divides a given search keyword by 2 (i.e., applying a 1-bit right-shift operation to the binary dividend) and further divides the quotient by 3. Lastly, a constant value of 1 is added to the remainder of the second division, thereby yielding the secondary hash value. The secondary hash function commonly used in the primary server **20**'s primary area divides a given search keyword by "4" (i.e., applying a 2-bit right-shift operation to the binary dividend) and further divides the quotient by 3. Then, a constant value of 1 is added to the remainder of the second division, thereby |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | yielding the secondary hash value. Likewise, the secondary hash function commonly used in the primary server **30**'s primary area first divides a given search keyword by "8" (i.e., applying a 3-bit right-shift operation to the binary dividend), further divides the quotient by "3," and adds a constant value of "1" to the remainder of the second division, thereby yielding the secondary hash value." (14:21-47.)

*See also,* (18:21-19:34.) |
| **[2]** The system of claim 1, wherein the location information comprises any portion of a hash table generated with the hash function. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.

"The primary hash function, commonly used by the primary servers, produces the primary hash value by processing a given search keyword in the following way, based on the number of primary areas (='3') and the number of secondary areas (='3'). First, the given search keyword, now being treated as a binary value, is divided by '3.' A constant value of '1' is then added to the remainder of that division, thus obtaining the primary hash value. The secondary hash function commonly used in the primary area of the primary server 10 divides a given search keyword by 2 (i.e., applying a 1-bit right-shift operation to the binary dividend) and further divides the quotient by 3. Lastly, a constant value of 1 is added to the remainder of the second division, thereby yielding the secondary hash value. The secondary hash function commonly used in the primary server 20's primary area divides a given search keyword by '4' (i.e., applying a 2-bit right-shift operation to the binary dividend) and further divides the quotient by 3. Then, a constant value of 1 is added to the remainder of the second division, thereby yielding the secondary hash value. Likewise, the secondary hash function commonly used in the primary server 30's primary area first divides a given search keyword by '8' (i.e., applying a 3-bit right-shift operation to the binary dividend), further divides the quotient by '3,' and adds a constant value of '1' to the remainder of the second division, thereby yielding the secondary hash value." (14:21-47.)

"[A] primary transformation unit, disposed in each primary server, for processing a given search keyword to derive a specific primary server identifier indicating one of |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located" (7:52-57.) <br><br>  <br><br> FIG. 1 <br><br> _____ <br><br> "According to the present invention, the entire coverage area of a network is divided into a plurality of primary areas, and each primary area is subdivided into a plurality of secondary areas. Primary and secondary servers are deployed in the network, one for each individual primary area and secondary area, respectively. The primary servers employ a primary hash function that processes a given search keyword to derive a primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located. Further, the primary servers have a secondary hash function that processes a given search keyword to derive a specific secondary server identifier |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | indicating one of the secondary servers that is located in the same primary area as their own and has a record corresponding to the given search keyword. The secondary servers are also equipped with the same secondary hash function as the primary servers'. Those two hash functions are used in both data registration and data retrieval processes." (28:12-32.)<br><br>**Obviousness of Location Information:** To the extent that Kove contends that Minami does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)<br><br>RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.)<br><br>"DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*)<br><br>"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
|  | requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.*, 17.)<br><br>A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034.<br><br>`SRI-NIC.ARPA.    A     26.0.0.73`<br>`                 A     10.0.0.51`<br>`                 MX    0 SRI-NIC.ARPA.`<br>`                 HINFO DEC-2060 TOPS20`<br><br>(*Id.*, 37.) |
| **[6.Preamble]** A system for managing data location information and providing the data location information in response to location queries, the system comprising: | See above evidence regarding the preamble of claim 1. |
| **[6.a]** a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity; | See above evidence regarding claim 1.b~~3~~.<br><br>**Obviousness of Data in a Network Pertaining to the Entity:** To the extent that Kove contends that Minami does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, RFC1034 discloses a DNS protocol for implementing domain name facilities. (*Id.*, 1.)<br><br>"The domain system also defines procedures for caching retrieved data and for periodic refreshing of data defined by the system administrator." (*Id.*, 5.)<br><br>"A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| | records (RRs). The order of RRs in a set is not significant, and need not be preserved by name servers, resolvers, or other parts of the DNS. When we talk about a specific RR, we assume it has the following: owner       which is the domain name where the RR is found. type       which is an encoded 16 bit value that specifies the type of the resource in this resource record. Types refer to abstract resources." (*Id.*, 11-12.) "RRs are represented in binary form in the packets of the DNS protocol, and are usually represented in highly encoded form when stored in a name server or resolver." (*Id.*, 13.) BIND 8 supports DNS dynamic updates. This feature "permits authorized updaters to add and delete resource records from a zone for which the server is authoritative." (DNS and BIND, 231.) "Dynamic update permits more than the simple addition and deletion of records. Updaters can add or delete individual resource records, delete RRsets …, or even delete all records associated with a given name." (*Id.*) "For the most part, dynamic update functionality is used by programs … [that] use the *ns_update()* routine to create update messages and send them to an authoritative server for the zone that contains the domain name." (*Id.*, 231-232.) |
| **[6.b]** wherein the location server includes a processor; and | See above evidence regarding claim limitation 1.e. |
| **[6.c]** programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location | See above evidence regarding claim limitation 1.g. |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity. | |
| **[8]** The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information. | See above evidence regarding claim limitation 1.d and claim 3. |
| **[12]** The system of claim 9, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers. | See above evidence regarding claims 2 and 3. |
| **[15.Preamble]** A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising: | See above evidence regarding the preamble of claim 1 and claim limitation 1.g. |
| **[15.a]** correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network; | See above evidence regarding claim 3. |
| **[15.b]** receiving a location query from a client at one of the plurality of location | See above evidence regarding claim limitation 1.g. |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 |
|---|---|
| servers, the location query requesting location information identifying a location of a data entity included in the data entities; | |
| **[15.c]** determining which of the plurality of location servers includes the location information; | See above evidence regarding claim limitation 1.g. |
| **[15.d]** sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and | See above evidence regarding claim limitation 1.g. |
| **[15.e]** sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information. | See above evidence regarding claim limitation 1.g. |

**Exhibit 2A: Invalidity Claim Chart Against U.S. Patent No. 7,103,640 in View of the Domain Name System (DNS)**

AWS asserts that U.S. Patent No. 7,103,640 ("the '640 patent") claims 17 and 18 are anticipated by, and claim 24 is obvious in view of, the BIND 8.1 version of DNS, the operation of which is described in BIND and DNS, RFC 1034, Sherman, and Karger/Sherman. DNS qualifies as prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it was publicly available in May 1997, more than a year before Kove's October 28, 1999 claimed priority date for the '640 patent. Karger '618/420 is prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it has a priority date of March 15, 1998. The citations below are representative of where specifically in the item of prior art each element of each asserted claim may be found, and AWS reserves the right to rely on other portions of the prior art, versions of the cited documents, and/or evidence to show the invalidity of the asserted claims, including all evidence referenced in the accompanying contentions.

Furthermore, the following list includes examples of specifically where certain '640 patent claim elements are found in DNS:

- Client: Client
- Identifier: Domain name
- Location information: Resource records ("RRs")
- Location server: Name server
- Data repository: Host data or mailbox data
- Redirect message: Response from name server that refers the requester to another set of name servers

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420 |
|---|---|
| **[17.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below. |
| | In general, DNS discloses a system for retrieving data location information from a plurality of DNS name servers that manage location information, such as DNS resource records, and provide location information to location queries, called standard queries in RFC1034. Each DNS name server is attached to a DNS network and maintains a set of domain name/address mappings that are modified or returned in response to standard queries from clients. |
| | "NAME SERVERS are server programs which hold information about the domain tree's structure and set information. A name server may cache structure or set information about any part of the domain tree, but in general a particular name server has complete information about a subset of the domain space, and pointers to other |

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420 |
|---|---|
| | name servers that can be used to lead to information from any part of the domain tree." (RFC1034, 6.)

"[Q]uery operations are attempts to extract specific types of information from a particular set. A query names the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its domain names to identify hosts; queries for address resources return Internet host addresses." (*Id.*, 6.)

In response to a query, a "name server either answers the question posed in the query, refers the requester to another set of name servers, or signals some error condition." (*Id.*, 16.)

"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.*, 17.)

"The principal activity of name servers is to answer standard queries." (*Id.*, 22.)

*See also* Paul Albitz and Cricket Liu, DNS and BIND, 4, O'Reilly & Associates, Inc., 3rd ed. 1998 ("Programs called *name servers* constitute the server half of DNS's client-server mechanism. Name servers contain information about some segment of the database and make it available to clients, called *resolvers*." (emphasis original)). |
| **[17.a]** a plurality of data repositories configured to store data, wherein the data is associated with a respective identifier string in each data repository; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.

"We should be able to use names to retrieve host addresses, mailbox data, and other as yet undetermined information. All data associated with a name is tagged with a type, and queries can be limited to a single type." (RFC1034, 3.) |

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420 |
|---|---|
|  | The name space is "used for hosts, mailboxes, etc." (*Id.*, 9). "A convention for mapping between object names and domain names [is needed as] [t]his describes how information about an object is accessed." (*Id.*) "The mailbox HOSTMASTER@SRI-NIC.ARPA is represented as a domain name by HOSTMASTER.SRI-NIC.ARPA." (*Id.*, 9-10.)<br><br>*See also* Paul Albitz and Cricket Liu, DNS and BIND, O'Reilly & Associates, Inc., 3rd ed. 1998: "Every domain has a unique name." (p. 5, *see also* 7.) "Each host on a network has a domain name, which points to information about the host." (p. 6.) "[A] domain name uniquely identifies a single node in the tree." (p. 13.) "The hosts are … represented by domain names. … Domain names at the leaves of the tree generally represent individual hosts, and they may point to network addresses, hardware information, and mail routing information. Domain names in the interior of the tree can name a host *and* can point to information about the domain. Interior domain names … can represent both the domain that they correspond to and a particular host on the network. For example, *hp.com* is both the name of the Hewlett-Packard Company's domain and the domain name of a host that runs HP's main web server." (pp. 15-16, *see also* 19-20.) |
| [17.b] a data location sewer [sic] network having a plurality of data location servers, each of the plurality of data location servers containing location strings associated with respective identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>The "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)<br><br>"In any system that has a distributed database, a particular name server may be presented with a query that can only be answered by some other server." (*Id.*, 4.)<br><br>"Conceptually, each node and leaf of the domain name space tree names a set of information, and query operations are attempts to extract specific types of information from a particular set. A query names the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its |

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420 |
|---|---|
| | domain names to identify hosts; queries for address resources return Internet host addresses." (*Id.*, 6.)

RFC1034 discloses that name servers include "server programs" (*id.*, 6) that respond to queries with a DNS response answer. "[I]n general a particular name server has complete information about a subset of the domain space, and pointers to other name servers that can be used to lead to information from any part of the domain tree." (*Id.*)

"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.)

For example, the identifier "vaxa.isi.edu" has two IP addresses shown below.

```
For example, we might show the RRs carried in a message as:

    ISI.EDU.          MX      10 VENERA.ISI.EDU.
                      MX      10 VAXA.ISI.EDU.
    VENERA.ISI.EDU.   A       128.9.0.32
                      A       10.1.0.52
    VAXA.ISI.EDU.     A       10.2.0.27
                      A       128.9.0.33
```

(*Id.*, 14 (emphasis added).)

DNS name servers contain computer executable code in the form of "DNS software" that is run when a name server is locating information contained in a RR responsive to a location query. (*Id.*, 15.) |

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420 |
|---|---|
| | "Name servers are the repositories of information that make up the domain database. The database is divided up into sections called zones, which are distributed among name servers." (*Id.*, 18.)<br><br>"A given name server will typically support one or more zones, but this gives it authoritative information about only a small section of the domain tree." (*Id.*, 19.) |
| **[17.c]** in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>"In any system that has a distributed database, a particular name server may be presented with a query that can only be answered by some other server. The two general approaches to dealing with this problem are 'recursive', in which the first server pursues the query for the client at another server, and 'iterative', in which the server refers the client to another server and lets the client pursue the query." (*Id.*, 4.)<br><br>"Queries are messages which may be sent to a name server to provoke a response. … The response by the name server either answers the question posed in the query, refers the requester to another set of name servers, or signals some error condition." (*Id.*, 15-16.)<br><br>"A standard query specifies a target domain name (QNAME), query type (QTYPE), and query class (QCLASS) and asks for RRs which match." (*Id.*, 16.)<br><br>"Using the query domain name, QTYPE, and QCLASS, the name server looks for matching RRs. In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address. For example, a mailer tying [sic, trying] to send mail to Mockapetris@ISI.EDU might ask the resolver for mail information about ISI.EDU, |

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420 |
|---|---|
| | resulting in a query for QNAME=ISI.EDU, QTYPE=MX, QCLASS=IN. The response's answer section would be" as follows. (*Id.*, 17.)

```
        ISI.EDU.        MX      10 VENERA.ISI.EDU.
                        MX      10 VAXA.ISI.EDU.

     while the additional section might be:

        VAXA.ISI.EDU.   A       10.2.0.27
                        A       128.9.0.33
        VENERA.ISI.EDU. A       10.1.0.52
                        A       128.9.0.32
```

(*Id.*) The additional section is provided "[b]ecause the server assumes that if the requester wants mail exchange information, it will probably want the addresses of the mail exchanges soon afterward." (*Id.*)

"When some organization wants to control its own domain, the first step is to identify the proper parent zone, and get the parent zone's owners to agree to the delegation of control. While there are no particular technical constraints dealing with where in the tree this can be done, there are some administrative groupings discussed in [RFC-1032] which deal with top level organization, and middle level zones are free to create their own rules. For example, one university might choose to use a single zone, while another might choose to organize by subzones dedicated to individual departments or schools. [RFC-1033] catalogs available DNS software an discusses administration procedures." (*Id.*, 21.)

RFC1034 discloses that DNS name servers "answer standard queries" and that they send "response[s]" that "are carried in a standard message format." (*Id.*, 22.) |

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420 |
|---|---|
| | "The actual algorithm used by the name server will depend on the local OS and data structures used to store RRs." (*Id.*, 24.) <br><br> *See, also,* Sections 6.2.6 and 6.2.7 providing examples of responses with a referral. (*Id.*, 44-46.) <br><br> *See also* Paul Albitz and Cricket Liu, DNS and BIND, 27-30, 247, O'Reilly & Associates, Inc., 3rd ed. 1998 (describing that the response may contain the answer or a referral to other name servers). |
| **[18.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | See above evidence regarding the preamble of claim 17. |
| **[18.a]** a data repository configured to store data, wherein the data is associated with an identifier string; | See above evidence regarding claim limitation 17.a. |
| **[18.b]** a client responsive to a data query to query a data location server for location information associated with the identifier string; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below. <br><br> A client can use DNS to retrieve "mailbox data" associated with a particular mailbox. (RCS1034, 3.) <br><br> "Clients of the domain system should be able to identify trusted name servers they prefer to use before accepting referrals to name servers outside of this 'trusted' set." (*Id.*, 4.) <br><br> "The two general approaches to dealing with this problem are 'recursive', in which the first server pursues the query for the client at another server, and 'iterative', in which the server refers the client to another server and lets the client pursue the query." (*Id.*) |

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420 |
|---|---|
|  | A client sends a query that "names the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its domain names to identify hosts [and] queries for address resources return Internet host addresses." (*Id.*, 6.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)<br><br>"When some organization wants to control its own domain, the first step is to identify the proper parent zone, and get the parent zone's owners to agree to the delegation of control. While there are no particular technical constraints dealing with where in the tree this can be done, there are some administrative groupings discussed in [RFC-1032] which deal with top level organization, and middle level zones are free to create their own rules. For example, one university might choose to use a single zone, while another might choose to organize by subzones dedicated to individual departments or schools. [RFC-1033] catalogs available DNS software an discusses administration procedures." (*Id.,* 21.) |
| **[18.c]** a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client: | See above evidence regarding claim limitation 17.b. |

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420 |
|---|---|
| **[18.d]** if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>RFC1034 discloses that name servers include "server programs" (*id*., 6) that respond to queries with a DNS response answer.<br><br>"Queries are messages which may be sent to a name server to provoke a response…. The response by the name server either answers the question posed in the query, refers the requester to another set of name servers, or signals some error condition." (*Id.*, 15-16.)<br><br>RFC1034 discloses that DNS name servers "answer standard queries" and that they send "response[s]" that "are carried in a standard message format." (*Id.*, 22.)<br><br>"The actual algorithm used by the name server will depend on the local OS and data structures used to store RRs." (*Id.*, 24.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)<br><br>"When some organization wants to control its own domain, the first step is to identify the proper parent zone, and get the parent zone's owners to agree to the delegation of control. While there are no particular technical constraints dealing with where in the tree this can be done, there are some administrative groupings discussed in [RFC-1032] which deal with top level organization, and middle level zones are free to create their own rules. For example, one university might choose to use a single zone, while another might choose to organize by subzones dedicated to individual departments or |

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420 |
|---|---|
| | schools. [RFC-1033] catalogs available DNS software an discusses administration procedures." (*Id.,* 21.) |
| **[18.e]** if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | See above evidence regarding claim limitation 17.c. |
| **[24]** The system of claim 18, wherein the location information comprises a portion of a hash table distributed over the plurality of data location servers. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.

"The owner name is often implicit, rather than forming an integral part of the RR. For example, many name servers internally form tree or hash structures for the name space, and chain RRs off nodes." (*Id.,* 13 (emphasis added).)

"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)

**Obviousness of Hash Function:** To the extent that Kove contends that DNS does not disclose this limitation, and this claim is construed to require a hash function or a hash table, the subject matter as a whole of each claim, including this limitation, would have been obvious to one of skill in the art before the invention. The specification of the asserted patents themselves concede that the "preferably applied" hash function was |

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420 |
|---|---|
| | "well-known" in computer science. (*See, e.g.*, '170 patent, col. 15:12-18.) Numerous other publications before the filing of the Patents-in-Suit describe the use of hash functions in distributed systems. Courts have also recognized that hash functions are "generic and basic mathematical or algorithmic functions that do not make a patent inventive." *Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 WL 1456678, at *7 (N.D. Cal. March 23, 2018). One skilled in the art would be familiar with the use of hashing in a distributed network. Karger '618/420 states that it was well understood "for clients to use a standard hash function to determine from which server to request a document." ('420 patent, 3:23-50; '618 patent, 3:18-44.) "In one embodiment, the mapping of requests [e.g., for a document] and resources [e.g., servers] to the mathematical mapping space is accomplished with a hash function. A hash function takes an input (k) and returns an output in a given range. Hash functions can be used to allocate pointers or keys to a location in a hash table, which is a data structure having a specified number of locations or 'slots.' If h(k) is a hash function, key (k) is said to hash to a hash table location h(k). A goal in designing a hash function is for each key (k) to be equally likely to hash to any of the locations in the hash table. An approach to achieve this is to derive the hash function in a way that is expected to be independent of any patterns that might exist in the data." ('420 patent, 10:22-34; '618 patent, 10:13-25.) Karger '420/618 discloses a "consistent hashing" function, which "avoids increasing load and spread when the number of servers changes." ('420 patent, 6:29-41; '618 patent, 6:21-33.) "Networked distributed file systems, groups of computers that store large amounts of data on an intranet or internet, and have too much information to effectively serve on one server, can use the invention to great benefit." ('420 patent, 19:47-50; '618 patent, 18:14-17.) One skilled in the art would recognize that consistent hashing as taught by Karger '420/618 could be used to improve the operation of a distributed system such as DNS when a server is added to or removed from that system. |

**Exhibit 2B: Invalidity Claim Chart Against U.S. Patent No. 7,103,640 in View of the Cache Resolver System**

AWS asserts that U.S. Patent No. 7,103,640 ("the '640 patent") claims 17, 18, and 24 are anticipated by the Cache Resolver system, such as described in Distributed Web Caching System with Consistent Hashing by Alexander Sherman (1999) ("Sherman"), and Web Caching with Consistent Hashing by Karger, Sherman, et al. (March 4, 1999) ("Karger/Sherman"). The Cache Resolver system qualifies as prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it was known, used, and published before Kove's October 28, 1999 claimed priority date for the '640 patent. The citations below are representative of where specifically in the item of prior art each element of each asserted claim may be found, and AWS reserves the right to rely on other portions of the prior art, versions of the cited documents, and/or evidence to show the invalidity of the asserted claims, including all evidence referenced in the accompanying contentions. AWS also contends that the complete features and functionality of DNS is inherent to any system using DNS, such as described in Sherman or Karger/Sherman.

Furthermore, the following list includes examples of specifically where certain '640 patent claim elements are found in DNS:
- Client: Client
- Identifier: Domain name
- Location information: Resource records ("RRs")
- Location server: Name server
- Data repository: Host data or mailbox data
- Redirect message: Response from name server that refers the requester to another set of name servers

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| **[17.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>In general, the Cache Resolver system discloses a system for retrieving the physical IP addresses for data stored in a distributed network. A user browser can communicate with a network of DNS servers that access proxy caches with data. A URL or virtual name may be used with a consistent hash function to identify actual physical IP addresses of data. The DNS servers may store and/or calculate location information. Karger/Sherman discloses a related DNS system.<br><br>Sherman discloses "a solution to the problem of slow service experienced by most World Wide Web users" that includes an improvement over local browser caching, |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | regional caching, and previous distributed cache solutions. (Pgs. 9-13.) Sherman's solution resolves "the tradeoff between a good hit rate and fast access times." (Pg. 13.)<br><br>Sherman "describes a Distributed Cache Resolver system based on the Consistent Hashing algorithms that improve on the methods used by the existing web caching systems. Consistent Hashing as used in our system provides for a more efficient use of caches on the World Wide Web, which translates into faster service for the users." (Abstract, pg. 3)<br><br>"Cache Resolver, the distributed web caching system that we developed, eliminates the necessity for any inter-cache communication on a cache miss by letting clients decide for themselves which cache has the required data. Instead of contacting a primary cache which on a miss sends requests to other caches or a directory, user's browser directly contacts the cache that contains the required resource. Browsers make their decision with help of a hash function which maps resources (or URLs) to a set of available caches. With a globally known hash function, all of the system clients (users) can agree on which caches are responsible for storing each resource. Thus, our system speeds up access time to the 'right cache' in two ways. First of all, executing a hash function locally is faster than running non-trivial protocols among caches to find the right cache. Also, if there is a 'right cache', no time is wasted on a possible miss in the primary cache." (Pg. 15.)<br><br>Sherman discloses: "The system consists of three major components: the actual cache machines for storing the content, users' browsers that direct requests toward virtual names of the caches, and the domain name servers (also known as resolution units) that use consistent hashing to resolve virtual names requested by the users into specific physical addresses of the cache machines." (Sherman, Pg. 34.) |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| |  Figure 4-1: System Components <br><br> Karger/Sherman has the same architecture. Both Sherman and Karger/Sherman describe aspects of the same Cache Resolver system. Therefore, citations herein regarding Sherman apply equally to Karger/Sherman, and vice versa. AWS also contends that the complete features and functionality of DNS is inherent to any system using DNS, such as described in Sherman or Karger/Sherman. <br><br> In general, DNS discloses a system having a plurality of DNS name servers that manage location information, such as DNS resource records, and provide location information to location queries, called standard queries in RFC1034. Each DNS name server is attached to a DNS network and maintains a set of domain name/address mappings that are modified or returned in response to standard queries from clients. |

14

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | "NAME SERVERS are server programs which hold information about the domain tree's structure and set information. A name server may cache structure or set information about any part of the domain tree, but in general a particular name server has complete information about a subset of the domain space, and pointers to other name servers that can be used to lead to information from any part of the domain tree." (RFC1034, 6.)<br><br>"[Q]uery operations are attempts to extract specific types of information from a particular set. A query names the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its domain names to identify hosts; queries for address resources return Internet host addresses." (*Id.*, 6.)<br><br>In response to a query, a "name server either answers the question posed in the query, refers the requester to another set of name servers, or signals some error condition." (*Id.*, 16.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)<br><br>"The principal activity of name servers is to answer standard queries." (*Id.*, 22.)<br><br>*See also* Paul Albitz and Cricket Liu, DNS and BIND, 4, O'Reilly & Associates, Inc., 3rd ed. 1998 ("Programs called *name servers* constitute the server half of DNS's client-server mechanism. Name servers contain information about some segment of the database and make it available to clients, called *resolvers*." (emphasis original)). |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| **[17.a]** a plurality of data repositories configured to store data, wherein the data is associated with a respective identifier string in each data repository; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>The Cache Resolver system discloses a DNS server network with data location servers.<br><br>Sherman discloses proxy caches that "replies with the data if it has a valid copy stored. Otherwise, it fetches the data from the original web server and stores a copy as well." (Pg. 34.)<br><br>"This function takes requested URLs as input and performs a modulo hash (the hash function here is not related to Consistent Hashing that takes place elsewhere in the system) and returns a list of virtual names of the cache machines. To resolve virtual names into actual IP addresses of the caches, a browser will have to contact the DNS system. … These numeric values returned by the hash function are included in the virtual names (e.g., A123.ProxyCache.com, where 123 is the numeric value corresponding to a hash of a URL string)." (Pg. 36.)<br><br>"The DNS units represent the key component of our system since these units ultimately decide which physical cache stores each resource." (Pg. 37.)<br><br>"We should be able to use names to retrieve host addresses, mailbox data, and other as yet undetermined information. All data associated with a name is tagged with a type, and queries can be limited to a single type." (RFC1034. 3.)<br><br>The name space is "used for hosts, mailboxes, etc." (*Id.*, 9). "A convention for mapping between object names and domain names [is needed as] [t]his describes how information about an object is accessed." (*Id.*) "The mailbox HOSTMASTER@SRI-NIC.ARPA is represented as a domain name by HOSTMASTER.SRI-NIC.ARPA." (*Id.*, 9-10.) |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | *See also* Paul Albitz and Cricket Liu, DNS and BIND, O'Reilly & Associates, Inc., 3rd ed. 1998: "Every domain has a unique name." (p. 5, *see also* 7.) "Each host on a network has a domain name, which points to information about the host." (p. 6.) "[A] domain name uniquely identifies a single node in the tree." (p. 13.) "The hosts are … represented by domain names. … Domain names at the leaves of the tree generally represent individual hosts, and they may point to network addresses, hardware information, and mail routing information. Domain names in the interior of the tree can name a host *and* can point to information about the domain. Interior domain names … can represent both the domain that they correspond to and a particular host on the network. For example, *hp.com* is both the name of the Hewlett-Packard Company's domain and the domain name of a host that runs HP's main web server." (pp. 15-16, *see also* 19-20.) |
| **[17.b]** a data location sewer [sic] network having a plurality of data location servers, each of the plurality of data location servers containing location strings associated with respective identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>Sherman states: "The system consists of three major components: the actual cache machines for storing the content, users' browsers that direct requests toward virtual names of the caches, and the domain name servers (also known as resolution units) that use consistent hashing to resolve virtual names requested by the users into specific physical addresses of the cache machines." (Pg. 34.)<br><br>"Browsers make DNS requests to resolve virtual names of proxy caches in terms of concrete IP addresses. Then, they contact a proxy cache with a given IP." (Pg. 35.)<br><br>Sherman discloses that "[t]he primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP addresses of the caches." (Pg. 37.)<br><br>The "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.) |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | "In any system that has a distributed database, a particular name server may be presented with a query that can only be answered by some other server." (*Id.*, 4.)

"Conceptually, each node and leaf of the domain name space tree names a set of information, and query operations are attempts to extract specific types of information from a particular set. A query names the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its domain names to identify hosts; queries for address resources return Internet host addresses." (*Id.*, 6.)

RFC1034 discloses that name servers include "server programs" (*id.*, 6) that respond to queries with a DNS response answer. "[I]n general a particular name server has complete information about a subset of the domain space, and pointers to other name servers that can be used to lead to information from any part of the domain tree." (*Id.*)

"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). ... The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.)

For example, the identifier "vaxa.isi.edu" has two IP addresses shown below. |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | For example, we might show the RRs carried in a message as:<br><br>```<br>ISI.EDU.          MX      10 VENERA.ISI.EDU.<br>                  MX      10 VAXA.ISI.EDU.<br>VENERA.ISI.EDU. A       128.9.0.32<br>                  A       10.1.0.52<br>VAXA.ISI.EDU.   A       10.2.0.27<br>                  A       128.9.0.33<br>```<br><br>(*Id.*, 14 (emphasis added).)<br><br>DNS name servers contain "DNS software" that is run when a name server is locating information contained in a RR responsive to a location query. (*Id.*, 15.)<br><br>"Name servers are the repositories of information that make up the domain database. The database is divided up into sections called zones, which are distributed among name servers." (*Id.*, 18.)<br><br>"A given name server will typically support one or more zones, but this gives it authoritative information about only a small section of the domain tree." (*Id.*, 19.) |
| **[17.c]** in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>Sherman states: "The primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP addresses of the caches. We use a number of DNS servers each running a copy of unmodified BIND 8.0 distribution. (BIND is an implementation of DNS protocol.) In addition to BIND, each DNS machine runs one of our programs, called 'dnshelper'. The 'dnshelper' program periodically polls all of the caches, by communicating with the Squid monitors (that run on the cache machines), to determine the dead/alive status of each machine. It then uses consistent hashing to map all of the virtual names to physical addresses of only the live machines. (As noted in section 4.2 our virtual name space consists of 997 possible names.) If any of the mappings change, it writes the new |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
|  | mappings to a 'records' file and signals BIND to update itself by reloading that file. BIND updates itself 'dynamically' which allows it to respond to DNS queries even during the update stage. … When a user request arrives, DNS immediately replies with the mappings that it currently contains." (Pg. 37.)<br><br>"In any system that has a distributed database, a particular name server may be presented with a query that can only be answered by some other server. The two general approaches to dealing with this problem are 'recursive', in which the first server pursues the query for the client at another server, and 'iterative', in which the server refers the client to another server and lets the client pursue the query." (RFC1034, 4.)<br><br>"Queries are messages which may be sent to a name server to provoke a response. … The response by the name server either answers the question posed in the query, refers the requester to another set of name servers, or signals some error condition." (*Id.*, 15-16.)<br><br>"A standard query specifies a target domain name (QNAME), query type (QTYPE), and query class (QCLASS) and asks for RRs which match." (*Id.*, 16.)<br><br>"Using the query domain name, QTYPE, and QCLASS, the name server looks for matching RRs. In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address. For example, a mailer tying [sic, trying] to send mail to Mockapetris@ISI.EDU might ask the resolver for mail information about ISI.EDU, resulting in a query for QNAME=ISI.EDU, QTYPE=MX, QCLASS=IN. The response's answer section would be" as follows. (*Id.*, 17.) |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | ```
ISI.EDU.           MX      10 VENERA.ISI.EDU.
                   MX      10 VAXA.ISI.EDU.

while the additional section might be:

    VAXA.ISI.EDU.    A      10.2.0.27
                     A      128.9.0.33
    VENERA.ISI.EDU.  A      10.1.0.52
                     A      128.9.0.32
```

(*Id*.) The additional section is provided "[b]ecause the server assumes that if the requester wants mail exchange information, it will probably want the addresses of the mail exchanges soon afterward." (*Id*.)

"When some organization wants to control its own domain, the first step is to identify the proper parent zone, and get the parent zone's owners to agree to the delegation of control. While there are no particular technical constraints dealing with where in the tree this can be done, there are some administrative groupings discussed in [RFC-1032] which deal with top level organization, and middle level zones are free to create their own rules. For example, one university might choose to use a single zone, while another might choose to organize by subzones dedicated to individual departments or schools. [RFC-1033] catalogs available DNS software an discusses administration procedures." (*Id., 21.*)

RFC1034 discloses that DNS name servers "answer standard queries" and that they send "response[s]" that "are carried in a standard message format." (*Id.*, 22.)

"The actual algorithm used by the name server will depend on the local OS and data structures used to store RRs." (*Id*., 24.)

*See, also,* Sections 6.2.6 and 6.2.7 providing examples of responses with a referral. (*Id*., 44-46.) |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | *See also* Paul Albitz and Cricket Liu, DNS and BIND, 27-30, 247, O'Reilly & Associates, Inc., 3rd ed. 1998 (describing that the response may contain the answer or a referral to other name servers). |
| **[18.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | See above evidence regarding the preamble of claim 17. |
| **[18.a]** a data repository configured to store data, wherein the data is associated with an identifier string; | See above evidence regarding claim limitation 17.a. |
| **[18.b]** a client responsive to a data query to query a data location server for location information associated with the identifier string; | *If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.* <br><br> See above evidence regarding claim limitation 17.a and 17.b. <br><br> A client can use DNS to retrieve "mailbox data" associated with a particular mailbox. (*Id.*, 3.) <br><br> "Clients of the domain system should be able to identify trusted name servers they prefer to use before accepting referrals to name servers outside of this 'trusted' set." (*Id.*, 4.) <br><br> "The two general approaches to dealing with this problem are 'recursive', in which the first server pursues the query for the client at another server, and 'iterative', in which the server refers the client to another server and lets the client pursue the query." (*Id.*) <br><br> A client sends a query that "names the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | domain names to identify hosts [and] queries for address resources return Internet host addresses." (*Id.*, 6.) |
| **[18.c]** a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client: | See above evidence regarding claim limitation 17.b. |
| **[18.d]** if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>Sherman states: "When a user request arrives, DNS immediately replies with the mappings that it currently contains." (Pg. 37.)<br><br>RFC1034 discloses that name servers include "server programs" (RFC1034, 6) that respond to queries with a DNS response answer.<br><br>"Queries are messages which may be sent to a name server to provoke a response.… The response by the name server either answers the question posed in the query, refers the requester to another set of name servers, or signals some error condition." (*Id.*, 15-16.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)<br><br>"When some organization wants to control its own domain, the first step is to identify the proper parent zone, and get the parent zone's owners to agree to the delegation of control. While there are no particular technical constraints dealing with where in the tree this can be done, there are some administrative groupings discussed in [RFC-1032] which deal with top level organization, and middle level zones are free to create their own rules. For example, one university might choose to use a single zone, while another might choose to organize by subzones dedicated to individual departments or schools. [RFC-1033] catalogs available DNS software an discusses administration procedures." (*Id.,* 21.)<br><br>RFC1034 discloses that DNS name servers "answer standard queries" and that they send "response[s]" that "are carried in a standard message format." (*Id.*, 22.)<br><br>"The actual algorithm used by the name server will depend on the local OS and data structures used to store RRs." (*Id.*, 24.) |
| **[18.e]** if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | See above evidence regarding claim limitation 17.c. |
| **[24]** The system of claim 18, wherein the location information comprises a portion | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below. |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| of a hash table distributed over the plurality of data location servers. | The Cache Resolver system discloses that a user browser can communicate with a network of DNS servers that store location information in a hash structure, such as a hash table, that access proxy caches with data. A URL or virtual name may be used with a consistent hash function to identify actual physical IP addresses of data. The DNS servers may store and/or calculate location information.<br><br>"With a globally known hash function, all of the system clients (users) can agree on which caches are responsible for storing each resource." (Sherman, Pg. 15.)<br><br>"A family of consistent hash functions developed by the Algorithms group at MIT possesses all of the properties required for mapping documents to caches in the global cache system. As the name suggests these functions maintain consistent mappings despite fluctuations in range. The basic construction of a consistent hash function is quite simple. Both, the data items and the caches, are mapped randomly and independently to a circle with circumference of length 1 as shown in figure 2.3(i). A data item is assigned to the closest cache in the clockwise direction along the circle. Thus, in figure 2.3(i), items 1, 2, and 3 are mapped to cache A, and items 4 and 5 are mapped to cache B." (*Id.*, Pg. 18.) |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| |  Figure 2-2: The basic construction of a consistent hash function <br><br> "Hashing a URL means finding a cache point whose value is the smallest upper bound on the mapped value of a URL and returning the physical cache associated with that point." (*Id.*, Pg. 30.) <br><br> "In order to demonstrate the practical advantage of Consistent Hashing we implemented a web caching system, called the Cache Resolver that uses our hashing algorithm." (*Id.*, Pg. 34.) <br><br> "Properties of consistent hashing allow us to use the caches very effectively." (*Id.*, Pg. 38.) "Consistent Hashing allows all of the DNS servers to agree on the mappings from virtual names to IP addresses." (Pg. 40.) <br><br> *See, also*, Sherman, Chapter 3 "Consistent Hashing." (Pgs. 22-33.) <br><br> Likewise, Karger/Sherman discloses: "In order to get around the problem, we decided to use DNS. We could set up our own DNS servers, and modify them to support consistent hashing. This consistent hashing could be "propagated" to browsers during name resolution. More precisely, we wrote an autoconfigure script that performs a |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman) |
|---|---|
| | *standard* hash of the input URL to a range of 1000 names that we call *virtual caches*. We then used DNS to map the 1000 virtual cache names onto actual code IP addresses via consistent hashing." (Karger/Sherman, p. 10; *see also* Sections 2-3.)<br><br>"The primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP addresses of the caches. We use a number of DNS servers each running a copy of unmodified BIND 8.0 distribution, an implementation of DNS protocol. BIND reads the mappings of virtual names to IP addresses from a *records* file, that is being updated dynamically by another program called "dnshelper". Dnshelper monitors the set of caches, and runs consistent hashing to map all of the 1000 virtual names (see section 3.2) to the range of only the live cache machines. If the set of available caches changes, "dnshelper" signals BIND to reload the *records* file that contains new mappings." (*Id.*)<br><br>"The owner name is often implicit, rather than forming an integral part of the RR. For example, many name servers internally form tree or hash structures for the name space, and chain RRs off nodes." (RFC1034, 13.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.) |

**Exhibit 2C: Invalidity Claim Chart Against U.S. Patent No. 7,103,640 in View of U.S. Patent No. 5,542,087 to Neimat**

AWS asserts that claims 17, 18, and 24 of U.S. Patent No. 7,103,640 ("the '640 patent") are obvious in view of the combination of U.S. Patent No. 5,542,087 to Neimat ("Neimat"), DNS and, for claim 24, Karger '618/420. Neimat qualifies as prior art under pre-AIA 35 U.S.C. § 102(b), e.g., because it was issued on July 30, 1996, more than a year before Kove's October 28, 1999 claimed priority date for the '640 patent. DNS qualifies as prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it was publicly available in May 1997, more than a year before Kove's October 28, 1999 claimed priority date for the '640 patent. Karger '618/420 is prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it has a priority date of March 15, 1998. The citations below are representative of where specifically in the item of prior art each element of each asserted claim may be found, and AWS reserves the right to rely on other portions of the prior art, versions of the cited documents, and/or evidence to show the invalidity of the asserted claims, including all evidence referenced in the accompanying contentions.

Furthermore, the following list includes examples of specifically where certain '640 patent claim elements are found in Neimat.

- Client: Client
- Identifier: Record key value (e.g., value generated from a patient's name)
- Location information: Memory address
- Location server: File server
- Data repository: Memory
- Redirect message: Identifying and generating a second memory address

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat,  DNS and, for Claim 24, Karger '618/420 |
|---|---|
| **[17.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>Neimat discloses that a client can use a record key value (e.g., a value generated from a patient's name) to access a memory address in a distributed computer network.<br><br>"The present invention provides a flexible and efficient data processing method and apparatus, which generate a correct memory address from a character or digit string such as a record key value, and which is adapted for use in distributed or parallel processing architectures such as computer networks, multiprocessing systems, and the like. The present invention provides fast storage and subsequent searching and retrieval of data records in data processing applications such as database applications." (4:40-49.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat,  DNS and, for Claim 24, Karger '618/420 |
|---|---|
|  |  |

FIG. 1

"The present invention is generally directed to data processing and in particular to a data processing method and apparatus for generating a correct memory address from a character or digit string such as a record key." (1:6-9.)

"One of the simple data storage and retrieval schemes designed by data processing pioneers is known as a basic hashing scheme. The basic hashing scheme has been used in many areas of data processing such as database addressing and data encryption. The basic hashing scheme will now be introduced with reference to the particular example of database addressing." (1:24-30.)

"Currently, more and more data base applications are mission critical and require fast storage and subsequent searching, and retrieval of unpredictably large amounts of incoming data. Database operations such as storing records, searching for records and retrieving records all require generating a correct memory address from a record key value. Accordingly, what is needed is a flexible and efficient data processing method and apparatus, which generates a correct memory address from a character or digit string such as a record key value, and which is adapted for use in distributed or parallel

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat,  DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | processing architectures such as computer networks, multiprocessing systems, and the like." (4:25-36.) |

**Obviousness of Location Information:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)

RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.)

"DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id*.)

"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.)

"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034.<br><br>SRI-NIC.ARPA.  A      26.0.0.73<br>                   A      10.0.0.51<br>                   MX    0 SRI-NIC.ARPA.<br>                   HINFO DEC-2060 TOPS20<br><br>(*Id.*, 37.) |
| **[17.a]** a plurality of data repositories configured to store data, wherein the data is associated with a respective identifier string in each data repository; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>"A database is a collection of records stored in memory locations or 'buckets'. In accordance with distributed processing principles of the preferred embodiment, data records reside in memory locations at sites of the network. For storing records, it is more efficient to use memory locations in random access memory, RAM, of another processor site of the network than to use memory locations in a local disk. Accordingly, in the preferred embodiment, storage of records is distributed in RAM at various network sites, providing efficient performance of very large database operations that are not feasible in practice within the traditional database architecture." (7:48-59.)<br><br>"Data records are stored under control of the data processor sites, which are further distinguished herein as client data processor sites and file server sites. The database is created in a distributed environment from records provided by any number of distributed and autonomous client data processors. Records of the database are stored at memory locations or 'buckets' provided by file servers. As records are inserted into the database by the clients, the addressable storage space available to the database expands so that records reside on virtually any number of servers. The addressable storage space available to the database expands linearly, one memory location or "bucket" at a time, to a size limited only by data storage capacity of the servers. Accordingly, addressable |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | storage space available to the database expands to occupy new servers linearly, one server at a time, and only when servers already used are efficiently loaded." (8:1-15.) |

In the right column below, continuing:

"The computer network includes a plurality of data processor sites coupled so as to provide high speed data communication between the processor sites. FIG. 1 is a simplified block diagram of the computer network employed in conjunction with the preferred embodiment of the present invention. In accordance with a preferred embodiment of the present invention, a number of processor sites is large, for example in a range of 10 to 10,000 servers. It should be understood that although in the preferred embodiment the network includes the large number of processor sites, only three processor sites 101, 103, 105, are shown in FIG. 1 for the sake of simplicity. The processor sites are interconnected, preferably by a network cable 107, to provide the data communication between the processor sites. A first one of the processor sites includes a data processor 109, preferably a microprocessor, coupled to the network cable 107 through a network interface 111. The first one of the processor sites further includes memory 113, preferably random access memory, RAM, coupled to the data processor 109. As shown in FIG. 1, remaining processor sites 103, 105 include similar components, arranged in a similar manner, as those discussed with respect to the first processor site." (7:12-33.)

"In accordance with the teachings of the present invention, a database is created in a distributed environment from records provided by any number of distributed and autonomous clients. Records of the database are stored at memory locations or 'buckets' provided by file servers. In accordance with a preferred embodiment of the present invention, a number of servers is large, for example in a range of 10 to 10,000 servers. The large number of servers provide a memory pool that offers many gigabytes of random access memory, RAM, perhaps even terabytes, and even more bytes of disk space memory." (4:50-60.)

"As indicated previously, in accordance with principles of the present invention, the database is the collection of data records stored in memory locations or 'buckets' provided by file servers. For the sake of simplicity in the following discussions, it is

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat,  DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | assumed that each file server site includes a respective one memory location or "bucket". However, the present invention is not strictly limited to the respective one memory location at each file server site since the invention can be alternatively practiced with more than one respective memory location at each file server site. Each memory location or "bucket" has a respective sequentially numbered address, and each server has a respective sequentially numbered address, for example: memory location 0 and server 0, memory location 1 and server 1 . . . and so on to a last memory location and server." (12:15-29.)<br><br>"In general, each data record comprises two sections: a short record key identifying the record, and a remainder of information associated with that key. For example, a particular database may use a person's name as the key to identify a larger portion of data containing further details about that person. As a specific example, in a medical database application, ASCII character values of a patient's name, such as Janet Jones, are scaled or otherwise manipulated to produce a key value, which identifies a larger portion of data containing details about the patient, such as details concerning medical treatment history. From the information in the key value alone, the client site interacts with the server sites, finding the location of the stored data record in order to access the data record corresponding to the key value. For example, if the data is stored in Random Access Memory, RAM, the physical memory address is required. Preferably, memory locations are in RAM, although they could alternatively be on disk as well. In the case of storage on a magnetic or optical disk, the track and sector address is required before a particular data record can be accessed." (8:27-47.)<br><br>"If any one of the clients initiates a database operation such as inserting a record into the database, searching the data base to determine whether a particular record are present, or retrieving a record, the client initiating the operation provides a record key value. From the record key value, the method of the present invention provides a correct memory address needed to perform the database operation." (5:23-29.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat,  DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | "The key value is generated by means of any one of the client data processors. From the key value, the one client generates a first memory address, which identifies a first memory location or 'bucket'." (5:34-37.)<br><br>**Obviousness of Data Location Server:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. The Patents-in-Suit recognize that "location" is not a requirement for its data servers as "NDTP can be used for any application in which one-to-zero or one-to-many associations among strings are to be maintained and accessed on a network. In applications of NDTP other than distributed databases, the term identifier is likely to make sense in most cases, but the term location may not." ('640 patent, 20:18-25.) The Microfiche Appendix filed with the '640 patent provides software code that demonstrates that location is not necessary for the operation of the data servers. The concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science. In addition, the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science. One of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system. Furthermore, to the extent the prior art discloses the use of at least one location server, it would have been obvious to use more than one location server to achieve further benefits. *See* MPEP § 2144.VI.B. (Obviousness of Duplication of Parts). One skilled in the art would also be familiar with DNS, which relies on a network of location servers to map host names to internet addresses. Therefore, it would have been obvious to one of skill to employ data location servers in Neimat |
| **[17.b]** a data location sewer [sic] network having a plurality of data location servers, each of the plurality of data location servers containing location strings associated with respective | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>"The plurality of clients are coupled to the file servers by the network to provide client access to the database." (5:3-4.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps: | "Briefly and in general terms, the data processing method of the present invention includes providing a plurality of client data processors and a plurality of file servers, each server including at least a respective one memory location or 'bucket.'" (5:30-34.)<br><br>"The computer network includes a plurality of data processor sites coupled so as to provide high speed data communication between the processor sites. FIG. 1 is a simplified block diagram of the computer network employed in conjunction with the preferred embodiment of the present invention. In accordance with a preferred embodiment of the present invention, a number of processor sites is large, for example in a range of 10 to 10,000 servers. It should be understood that although in the preferred embodiment the network includes the large number of processor sites, only three processor sites 101, 103, 105, are shown in FIG. 1 for the sake of simplicity. The processor sites are interconnected, preferably by a network cable 107, to provide the data communication between the processor sites. A first one of the processor sites includes a data processor 109, preferably a microprocessor, coupled to the network cable 107 through a network interface 111. The first one of the processor sites further includes memory 113, preferably random access memory, RAM, coupled to the data processor 109. As shown in FIG. 1, remaining processor sites 103, 105 include similar components, arranged in a similar manner, as those discussed with respect to the first processor site." (7:12-33.)<br><br>"By means of one of the client sites interacting with the server sites, a computer user is able to browse or search through the data records, or to insert, or retrieve data records as required. Although the computer user has no need to be aware of the exact manner in which data are stored, it is important for speed of operation that the clients and servers are able to locate and retrieve a particular data record as accurately and quickly as possible. In practice, this requires that the client and server sites interact to locate a desired data record in a fashion that is more direct than having to search through the entire database." (8:16-26.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | "In general, each data record comprises two sections: a short record key identifying the record, and a remainder of information associated with that key. For example, a particular database may use a person's name as the key to identify a larger portion of data containing further details about that person. As a specific example, in a medical database application, ASCII character values of a patient's name, such as Janet Jones, are scaled or otherwise manipulated to produce a key value, which identifies a larger portion of data containing details about the patient, such as details concerning medical treatment history. From the information in the key value alone, the client site interacts with the server sites, finding the location of the stored data record in order to access the data record corresponding to the key value. For example, if the data is stored in Random Access Memory, RAM, the physical memory address is required. Preferably, memory locations are in RAM, although they could alternatively be on disk as well. In the case of storage on a magnetic or optical disk, the track and sector address is required before a particular data record can be accessed." (8:27-47.) <br><br> "Each server includes at least a respective one memory location." (8:53-54.) <br><br> "From the key value, the one client processor generates a first memory address that identifies a first memory location as shown in block 202. The step of generating the first address includes the one client data processor retrieving a client index value, i', which is stored in a client memory coupled to the one client data processor. The one client data processor hashes the key value using a hashing function based upon the client index value, i', so as to produce the first address, $a_1$." (8:57-67.) <br><br> "Using the first memory address, the client data processor selects from the plurality of servers a server that includes the first memory location." (9:43-45.) <br><br> "By means of one of the client sites interacting with the server sites, a computer user is able to browse or search through the data records, or to insert, or retrieve data records as required. Although the computer user has no need to be aware of the exact manner in which data are stored, it is important for speed of operation that the clients and servers are able to locate and retrieve a particular data record as accurately and quickly as |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | possible. In practice, this requires that the client and server sites interact to locate a desired data record in a fashion that is more direct than having to search through the entire database." (8:16-27.) |
| **[17.c]** in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>"However, if the first address is not the correct address, then the following steps are performed in accordance with the method of the present invention. From the key value, the server that includes the first memory location generates a second memory address, which identifies a second memory location or 'bucket'. The server that includes the first memory location then selects from the plurality of servers a server that includes the second memory location. The server that includes the first memory location then transmits the key value as part of a message to the server that includes the second memory location. The server that includes the second memory location determines whether the second address is the correct address. Quite often, if the first address is not the correct address then the second address is the correct address. However, if the second address is not the correct address, then the server that includes the second memory location generates a third memory address. In accordance with the teachings of the present invention discussed greater detail later herein, the third address is certain to be the correct address if neither one of the first or second addresses is the correct address." (5:42-67.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420 |
|---|---|
|  |  |

FIG. 2

"If the first memory address is not the correct memory address, then, from the key value, the server generates a second memory address, $a_2$, that identifies a second memory location, as shown in block 208 of the flow chart of FIG. 2. The step of generating the second address by means of the server includes: making the second address, $a_2$, equal to the first hash value, $h_1$ (C); decrementing the first server index value, J, to produce a

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420 |
|---|---|
|  | decremented first server index value, J-1; hashing the key value using a hashing function based upon the decremented first server index value to produce a second hash value, $h_2$ (C); and changing the second address so as to be equal to the second hash value if the second hash value is greater than the first address, and if the second hash value is less than the first hash value." (10:13-27.)<br><br>"Using the second memory address, the server selects from the plurality of servers another server, which includes the second memory location. In the preferred embodiment, the first memory location stores a static table which maps a respective memory address of each memory location to a respective server address. Accordingly, the server looks up the second memory address in the table to select from the plurality of servers the other server, which includes the second memory location. Over the network, the server transmits the key value to the other server, which includes the second memory location, as shown in block 210 of the flow chart of FIG. 2." (10:48-59.) |
| **[18.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | See above evidence regarding the preamble of claim 17. |
| **[18.a]** a data repository configured to store data, wherein the data is associated with an identifier string; | See above evidence regarding claim limitation 17.a. |
| **[18.b]** a client responsive to a data query to query a data location server for location information associated with the identifier string; | See above evidence regarding claim limitations 17.a and 17.b. |
| **[18.c]** a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier | See above evidence regarding claim limitations 17.a and 17.b.<br><br>Additionally, Neimat reflects that the client processor site necessarily includes executable code to execute, for example, the steps described with respect to Figure 2. (8:48-11:64.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client: | "A computing apparatus of the present invention, preferably a network of computers, is programmed to perform the method of the present invention." (6:1-3.) |
| **[18.d]** if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>"From the key value, the one client generates a first memory address, which identifies a first memory location or 'bucket'. The one client selects from the plurality of servers a server that includes the first memory location. The one client then transmits the key value as part of a message to the server that includes the first memory location. The server that includes the first memory location determines whether the first address is the correct address." (5:35-43.)<br><br>"If the first memory address is not the correct memory address, then, from the key value, the server generates a second memory address, $a_2$, that identifies a second memory location, as shown in block 208 of the flow chart of FIG. 2. The step of generating the second address by means of the server includes: making the second address, $a_2$, equal to the first hash value, $h_1$ (C); decrementing the first server index value, J, to produce a decremented first server index value, J-1; hashing the key value using a hashing function based upon the decremented first server index value to produce a second hash value, $h_2$ (C); and changing the second address so as to be equal to the second hash value if the second hash value is greater than the first address, and if the second hash value is less than the first hash value." (10:13-27.)<br><br>**Obviousness of Location Information:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.)

"DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*)

"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.)

"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)

A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034. |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat,  DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | `SRI-NIC.ARPA.`    `A`      `26.0.0.73`<br>`A`      `10.0.0.51`<br>`MX`     `0 SRI-NIC.ARPA.`<br>`HINFO`  `DEC-2060 TOPS20`<br><br>(*Id.*, 37.) |
| **[18.e]** if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | See above evidence regarding claim limitation 17.c. |
| **[24]** The system of claim 18, wherein the location information comprises a portion of a hash table distributed over the plurality of data location servers. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>"From the key value, the one client processor generates a first memory address that identifies a first memory location as shown in block 202. The step of generating the first address includes the one client data processor retrieving a client index value, i', which is stored in a client memory coupled to the one client data processor. The one client data processor hashes the key value using a hashing function based upon the client index value, i', so as to produce the first address, $a_1$." (8:57-67.)<br><br>"From the key value, the server determines whether the first memory address is the correct memory address, as shown in block 206. In the preferred embodiment, the step of determining whether the first address is the correct address includes retrieving a first server index value, J, from the first memory location, hashing the key value using a |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat,  DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | hashing function based upon the first server index value to produce a first hash value, and comparing the first address to the first hash value to determine whether the first address is the correct address." (9:56-65.) |

hashing function based upon the first server index value to produce a first hash value, and comparing the first address to the first hash value to determine whether the first address is the correct address." (9:56-65.)

"If the first memory address is not the correct memory address, then, from the key value, the server generates a second memory address, $a_2$, that identifies a second memory location, as shown in block 208 of the flow chart of FIG. 2. The step of generating the second address by means of the server includes: making the second address, $a_2$, equal to the first hash value, $h_1$ (C); decrementing the first server index value, J, to produce a decremented first server index value, J-1; hashing the key value using a hashing function based upon the decremented first server index value to produce a second hash value, $h_2$ (C); and changing the second address so as to be equal to the second hash value if the second hash value is greater than the first address, and if the second hash value is less than the first hash value." (10:13-26.)

In addition, DNS teaches name servers and hash structures: "The owner name is often implicit, rather than forming an integral part of the RR. For example, many name servers internally form tree or hash structures for the name space, and chain RRs off nodes." (RFC1034, 13.)

**__Obviousness of Hash Function:__** To the extent that Kove contends that Neimat does not disclose this limitation, and this claim is construed to require a hash function, the subject matter as a whole of each claim, including this limitation, would have been obvious to one of skill in the art before the invention. The specification of the asserted patents themselves concede that the "preferably applied" hash function used to organize the data location information across the plurality of data location servers was "well-known" in computer science. ('170 patent, col. 15:12-18.) Numerous other publications before the filing of the Patents-in-Suit describe the use of hash functions to organize location information across servers in distributed systems. Courts have also recognized that hash functions are "generic and basic mathematical or algorithmic functions that do not make a patent inventive." *Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 WL 1456678, at *7 (N.D. Cal. March 23, 2018). One skilled in the art would be familiar with

43

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | the use of hashing in a distributed network. Karger '618/420 states that it was well understood "for clients to use a standard hash function to determine from which server to request a document." ('420 patent, 3:23-50; '618 patent, 3:18-44.) "In one embodiment, the mapping of requests [e.g., for a document] and resources [e.g., servers] to the mathematical mapping space is accomplished with a hash function. A hash function takes an input (k) and returns an output in a given range. Hash functions can be used to allocate pointers or keys to a location in a hash table, which is a data structure having a specified number of locations or 'slots.' If h(k) is a hash function, key (k) is said to hash to a hash table location h(k). A goal in designing a hash function is for each key (k) to be equally likely to hash to any of the locations in the hash table. An approach to achieve this is to derive the hash function in a way that is expected to be independent of any patterns that might exist in the data." ('420 patent, 10:22-34; '618 patent, 10:13-25.) Karger '420/618 discloses a "consistent hashing" function, which "avoids increasing load and spread when the number of servers changes." ('420 patent, 6:29-41; '618 patent, 6:21-33.) "Networked distributed file systems, groups of computers that store large amounts of data on an intranet or internet, and have too much information to effectively serve on one server, can use the invention to great benefit." ('420 patent, 19:47-50; '618 patent, 18:14-17.) Thus, one skilled in the art would recognize that consistent hashing as taught by Karger '420/618 could be used to improve the operation of a distributed system such as disclosed by Neimat when a server is added to or removed from that system.<br><br>**Obviousness of Location Information:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)<br><br>RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | "DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*)<br><br>"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)<br><br>A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034.<br><br>`SRI-NIC.ARPA.    A      26.0.0.73`<br>`                 A      10.0.0.51`<br>`                 MX     0 SRI-NIC.ARPA.`<br>`                 HINFO  DEC-2060 TOPS20`<br><br>(*Id.*, 37.) |

**Exhibit 2D: Invalidity Claim Chart Against U.S. Patent No. 7,103,640 in View of U.S. Patent No. 6,212,521 to Minami**

AWS asserts that claims 17, 18, and 24 of U.S. Patent No. 7,103,640 ("the '640 patent") are obvious in view of the combination of U.S. Patent No. 6,212,521 to Minami ("Minami"), DNS and, for claim 24, Karger '618/420. Minami qualifies as prior art under pre-AIA 35 U.S.C. § 102(e), e.g., because it was filed on March 27, 1998, before Kove's October 28, 1999 claimed priority date for the '640 patent, and issued on April 3, 2001. DNS qualifies as prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it was publicly available in May 1997, more than a year before Kove's October 28, 1999 claimed priority date for the '640 patent. Karger '618/420 is prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it has a priority date of March 15, 1998. The citations below are representative of where specifically in the item of prior art each element of each asserted claim may be found, and AWS reserves the right to rely on other portions of the prior art, versions of the cited documents, and/or evidence to show the invalidity of the asserted claims, including all evidence referenced in the accompanying contentions.

Furthermore, the following list includes examples of specifically where certain '640 patent claim elements are found in Minami.
- Client: Terminal
- Identifier: Search keyword
- Location information: Primary server identifier
- Location server: Primary server
- Data repository: Data storage
- Redirect message: Data Retrieval Process (e.g., D-2-2)

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| **[17.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>In general, Minami discloses that a terminal can send a search keyword to a primary server that has a primary hash function unit that computes a primary server identifier.<br><br>"A data management system that allows client terminals on a network to register records with search keywords to distributed data management servers and to retrieve them by entering a specific search keyword." (Abstract) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| |  FIG. 3 <br><br> "Taking the above into consideration, a first object of the present invention is to provide a data management system which relieves processing loads imposed on individual data management servers by distributing data registration and retrieval tasks and reducing the amount of data maintained in each server. Moreover, a second object of the present invention is to provide a primary server for use in the above data management system; a third object of the present invention is to provide a secondary server for use in the above data management system." (3:38-47.) <br><br> "[A] primary transformation unit, disposed in each primary server, for processing a given search keyword to derive a specific primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located" (7:52-57.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| |  FIG. 1 ———————————————— "According to the present invention, the entire coverage area of a network is divided into a plurality of primary areas, and each primary area is subdivided into a plurality of secondary areas. Primary and secondary servers are deployed in the network, one for each individual primary area and secondary area, respectively. The primary servers employ a primary hash function that processes a given search keyword to derive a primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located. Further, the primary servers have a secondary hash function that processes a given search keyword to derive a specific secondary server identifier indicating one of the secondary servers that is located in the same primary area as their own and has a record corresponding to the given search keyword. The secondary servers are also equipped with the same secondary hash function as the primary servers'. Those |

48

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | two hash functions are used in both data registration and data retrieval processes." (28:12-32.)<br><br>**Obviousness of Location Information:** To the extent that Kove contends that Minami does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)<br><br>RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.)<br><br>"DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*)<br><br>"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" "and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.*, 17.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034. <br><br> `SRI-NIC.ARPA.`    `A`    `26.0.0.73` <br>                        `A`    `10.0.0.51` <br>                       `MX`   `0 SRI-NIC.ARPA.` <br>                       `HINFO` `DEC-2060 TOPS20` <br><br> (*Id.*, 37.) |
| **[17.a]** a plurality of data repositories configured to store data, wherein the data is associated with a respective identifier string in each data repository; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below. <br><br> "Local backup data storage 112 stores such records that have been delivered in extra data registration request messages. Here, the term 'local backup data' denotes that the data stored in this storage 112 is replicas of the original registration data that is stored in secondary servers located in the same primary area. Remote backup data storage 113 saves, as a measure of precaution, such records that have been delivered in replicated data registration request messages. Here, the term 'remote backup data' denotes that the data stored in this storage 113 is replicas of the original registration data that is stored in secondary servers located in remote primary areas." (10:46-57.) <br><br> "Regular data storage 1109 is the first place to store the data contained in the data registration request messages when they are directly received from terminals. Local replicated data storage 1110 registers information, when local replicated data registration request message are received. Here, the term 'local replicated data' denotes that the data stored in this storage 1110 is replicas of the original registration data that is stored in other secondary servers located in the same (or local) primary area. In contrast to this, remote replicated data storage 1111 is used to save information extracted from remote replicated data registration request messages when they are received. The term 'remote replicated data' denotes that the data stored in this storage 1111 is replicas of the original |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | registration data that is stored in other secondary servers located in some remote primary areas." (11:35-51.)<br><br>"FIG. 20--Regular data storage, local replicated data storage, remote replicated data storage, local backup data storage, and remote backup data storage. (All those five storage areas are used to store search keywords and data objects to be retrieved with specific keywords, along with related server identifiers. This structure is common to primary servers and secondary servers.)" (12:49-56, Fig. 20.)<br><br><br><br>FIG. 20 |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| **[17.b]** a data location sewer [sic] network having a plurality of data location servers, each of the plurality of data location servers containing location strings associated with respective identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>"The entire coverage area of the network is divided into a plurality of primary areas, and each primary area is further subdivided into a plurality of secondary areas. Primary and secondary servers are deployed over the network, one for each individual primary area and secondary area, respectively." (Abstract, see also 7:43-50, Fig. 1.)<br><br><br>FIG. 1<br><br>The primary and secondary servers contain computer executable code configured to "initiate a process" in response to a "data retrieval request message through its communication controller." (20:27-30.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
|  | **Obviousness of Data Location Server:** To the extent that Kove contends that Minami does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. The Patents-in-Suit recognize that "location" is not a requirement for its data servers as "NDTP can be used for any application in which one-to-zero or one-to-many associations among strings are to be maintained and accessed on a network. In applications of NDTP other than distributed databases, the term identifier is likely to make sense in most cases, but the term location may not." ('640 patent, 20:18-25.) The Microfiche Appendix filed with the '640 patent provides software code that demonstrates that location is not necessary for the operation of the data servers. The concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science. In addition, the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science. One of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system. Furthermore, to the extent the prior art discloses the use of at least one location server, it would have been obvious to use more than one location server to achieve further benefits. *See* MPEP § 2144.VI.B. (Obviousness of Duplication of Parts). One skilled in the art would also be familiar with DNS, which relies on a network of location servers to map host names to internet addresses. Therefore, it would have been obvious to one of skill to employ data location servers in Minami |
| **[17.c]** in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>"(D-2-2) The secondary server 120 receives this data retrieval request message through its communication controller, and initiates a process of FIG. 42 by activating its data retrieval unit that deals with the data retrieval message class. Since the received message is identified as a data retrieval request message, the data retrieval unit takes a process flow of F423, whose main part is shown in FIG. 43. In F423, the data retrieval unit first extracts a search keyword '5' from the request message, saves this search keyword and |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | the connection identifier for the terminal 50 for later use, and then searches its own regular data storage for a record relevant to the extracted search keyword '5.' In this CASE (2), however, this search ends up with no matches. The data retrieval unit then applies its secondary hash function to the search keyword '5,' thus obtaining a secondary hash value of '3.' Since this secondary hash value '3' does not match with its own secondary server identifier '2,' the secondary server 120 produces a local replicated data retrieval request message (FIG. 13) on the basis of the data retrieval request message in process. This new message, having a value of '2' in its secondary server identifier field, is transmitted by the communication controller to another secondary server 130 whose secondary server identifier is known to be '3.'" (20:27-50.) |
| | "In the present invention, data retrieval is carried out by tracing just the same hierarchical path. Suppose, for instance, that a terminal located in the secondary area 3 *a* has sent a data retrieval request to the secondary server 5 *a*, along with a specific search keyword. Upon receiving this request, the secondary server 5 *a* tries to search its own data storage by using the given search keyword information. If no match is found, then the secondary server **5** *a* identifies another secondary server in the same primary area 2 *a* by activating its own secondary transformation unit 8 and requests the identified server to make a search. That secondary server attempts to retrieve a record relevant to the given search keyword, as requested by the secondary server 5 *a*. If it is still unable to find such a record, the secondary server, now acting as an agent for the secondary server 5 *a*, sends the data retrieval request to the primary server 4 *a* in the same primary area 2 *a*. The primary server 4*a* forwards the request to another primary server that is identified by using its own primary transformation unit. That primary server further forwards the request to a secondary server that is found within its own coverage area by using a secondary transformation unit of its own. The secondary server searches its local data storage as requested by the primary server." (8:61-9:15.) |
| | "A primary hash function unit 109 and secondary hash function unit 111 are used to obtain a primary and secondary server identifiers, respectively, from a given search keyword." (10:43-46.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | "As a background knowledge, the following few paragraphs present a brief description of hash functions used in the present embodiment, assuming the area division illustrated in FIG. **2**. Generally, hash function is a transformation that takes a variable-size input (a search keyword in the present case) and returns a fixed-size string, which is called the hash value. In the present invention, the data management servers use two kinds of hash functions called "primary hash function" and "secondary hash function." It is noted here that all primary servers commonly use the same primary hash function, while each primary server and its subordinate secondary servers (i.e., secondary servers in that server's primary area) share a common same secondary hash function of their own. In other words, the primary and secondary servers in different primary areas use different secondary hash functions." (14:6-20.) |
| **[18.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | See above evidence regarding the preamble of claim 17. |
| **[18.a]** a data repository configured to store data, wherein the data is associated with an identifier string; | See above evidence regarding claim limitation 17.a. |
| **[18.b]** a client responsive to a data query to query a data location server for location information associated with the identifier string; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>"CASE (2) describes such a situation that the information that a terminal is looking for is what was originally registered by another terminal located in another secondary area as part of the same primary area. Suppose, for example, that a terminal 50 is trying to communicate with another terminal 40 having an IP address '5' without knowing its ATM address." (20:13-19.)<br><br>"To accomplish the first object, according to the present invention, there is provided a data management system which allows terminals on a network to register records with search keywords and to retrieve the records by entering a specific search keyword. This system comprises the following elements:<br>a plurality of primary areas which constitute an entire coverage area of the network; |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | a plurality of secondary areas which constitute each of the primary areas; a plurality of primary servers, one for each primary area, which are uniquely identified in the network by primary server identifiers assigned thereto; a plurality of secondary servers, one for each secondary area, which are uniquely identified in each primary area by secondary server identifiers assigned thereto; a primary transformation unit, disposed in each primary server, for processing a given search keyword to derive a specific primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located; and a secondary transformation unit, disposed in each primary server and each secondary server, for processing a given search keyword to derive a specific secondary server identifier indicating one of the secondary servers that is located in the same primary area and has a record corresponding to the given search keyword." (3:48-4:9.) <br><br> "[A] primary transformation unit, disposed in each primary server, for processing a given search keyword to derive a specific primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located" (7:52-57.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| |  |

FIG. 1

"According to the present invention, the entire coverage area of a network is divided into a plurality of primary areas, and each primary area is subdivided into a plurality of secondary areas. Primary and secondary servers are deployed in the network, one for each individual primary area and secondary area, respectively. The primary servers employ a primary hash function that processes a given search keyword to derive a primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located. Further, the primary servers have a secondary hash function that processes a given search keyword to derive a specific secondary server identifier indicating one of the secondary servers that is located in the same primary area as their own and has a record corresponding to the given search keyword. The secondary servers are also equipped with the same secondary hash function as the primary servers'. Those

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
|  | two hash functions are used in both data registration and data retrieval processes." (28:12-32.)<br><br>**Obviousness of Location Information:** To the extent that Kove contends that Minami does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)<br><br>RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.)<br><br>"DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*)<br><br>"The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" "and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.)<br><br>"In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.*, 17.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034. <br><br> SRI-NIC.ARPA.  A      26.0.0.73 <br>                   A      10.0.0.51 <br>                   MX    0 SRI-NIC.ARPA. <br>                   HINFO  DEC-2060 TOPS20 <br><br> (*Id.*, 37.) |
| **[18.c]** a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client: | See above evidence regarding claim limitation 17.b. |
| **[18.d]** if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below. <br><br> "(D-1-2) The secondary server 110 receives this request message through its communication controller, and executes a process of FIG. 42 by activating its data retrieval unit that is responsible for the data retrieval message class. Since the received message is identified as a data retrieval request message, the data retrieval unit takes a process flow of F423, whose main part is shown in FIG. 43. In F423, the data retrieval unit extracts a search keyword '5' from the request message, saves this search keyword and the connection identifier for the terminal 41 for later use, and then searches the regular data storage for a record relevant to the extracted search keyword '5.' In CASE |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | (1), this search successfully ends up with a record containing 'IP ADDRESS=5' (search keyword) and 'ATM ADDRESS=55' (retrieved data). Then, according to the flowchart of FIG. 45, the search report unit produces a 'data found' message with the format of FIG. 16 to inform the requesting terminal 41 of the successful search result. It obtains the connection to the terminal 41 from the search keyword '5' and transmits the 'data found' message to the requesting terminal 41 by activating the communication controller." (19:58-20:11.)<br><br>"[A] primary transformation unit, disposed in each primary server, for processing a given search keyword to derive a specific primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located" (7:52-57.)<br><br><br><br>FIG. 1 |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | "According to the present invention, the entire coverage area of a network is divided into a plurality of primary areas, and each primary area is subdivided into a plurality of secondary areas. Primary and secondary servers are deployed in the network, one for each individual primary area and secondary area, respectively. The primary servers employ a primary hash function that processes a given search keyword to derive a primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located. Further, the primary servers have a secondary hash function that processes a given search keyword to derive a specific secondary server identifier indicating one of the secondary servers that is located in the same primary area as their own and has a record corresponding to the given search keyword. The secondary servers are also equipped with the same secondary hash function as the primary servers'. Those two hash functions are used in both data registration and data retrieval processes." (28:12-32.) |
| | **Obviousness of Location Information:** To the extent that Kove contends that Minami does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.) |
| | RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.) |
| | "DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*) |
| | "The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | resource information associated with a particular name is composed of separate resource records (RRs))." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.) |
| | "In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.*, 17.) |
| | A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034. |
| | `SRI-NIC.ARPA.    A      26.0.0.73`<br>`                 A      10.0.0.51`<br>`                 MX     0 SRI-NIC.ARPA.`<br>`                 HINFO  DEC-2060 TOPS20` |
| | (*Id.*, 37.) |
| [18.e] if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>"(D-2-2) The secondary server 120 receives this data retrieval request message through its communication controller, and initiates a process of FIG. 42 by activating its data retrieval unit that deals with the data retrieval message class. Since the received message is identified as a data retrieval request message, the data retrieval unit takes a process flow of F423, whose main part is shown in FIG. 43. In F423, the data retrieval unit first extracts a search keyword '5' from the request message, saves this search keyword and |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| location servers, wherein the different data location server contains the location string. | the connection identifier for the terminal 50 for later use, and then searches its own regular data storage for a record relevant to the extracted search keyword '5.' In this CASE (2), however, this search ends up with no matches. The data retrieval unit then applies its secondary hash function to the search keyword '5,' thus obtaining a secondary hash value of '3.' Since this secondary hash value '3' does not match with its own secondary server identifier '2,' the secondary server 120 produces a local replicated data retrieval request message (FIG. 13) on the basis of the data retrieval request message in process. This new message, having a value of '2' in its secondary server identifier field, is transmitted by the communication controller to another secondary server 130 whose secondary server identifier is known to be '3.'" (20:27-50.)<br><br>"In the present invention, data retrieval is carried out by tracing just the same hierarchical path. Suppose, for instance, that a terminal located in the secondary area 3 *a* has sent a data retrieval request to the secondary server 5 *a*, along with a specific search keyword. Upon receiving this request, the secondary server 5 *a* tries to search its own data storage by using the given search keyword information. If no match is found, then the secondary server 5 *a* identifies another secondary server in the same primary area 2 *a* by activating its own secondary transformation unit 8 and requests the identified server to make a search. That secondary server attempts to retrieve a record relevant to the given search keyword, as requested by the secondary server 5 *a*. If it is still unable to find such a record, the secondary server, now acting as an agent for the secondary server 5 *a*, sends the data retrieval request to the primary server 4 *a* in the same primary area 2 *a*. The primary server 4*a* forwards the request to another primary server that is identified by using its own primary transformation unit. That primary server further forwards the request to a secondary server that is found within its own coverage area by using a secondary transformation unit of its own. The secondary server searches its local data storage as requested by the primary server." (8:61-9:15.)<br><br>"A primary hash function unit 109 and secondary hash function unit 111 are used to obtain a primary and secondary server identifiers, respectively, from a given search keyword." (10:43-46.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | "As a background knowledge, the following few paragraphs present a brief description of hash functions used in the present embodiment, assuming the area division illustrated in FIG. 2. Generally, hash function is a transformation that takes a variable-size input (a search keyword in the present case) and returns a fixed-size string, which is called the hash value. In the present invention, the data management servers use two kinds of hash functions called "primary hash function" and "secondary hash function." It is noted here that all primary servers commonly use the same primary hash function, while each primary server and its subordinate secondary servers (i.e., secondary servers in that server's primary area) share a common same secondary hash function of their own. In other words, the primary and secondary servers in different primary areas use different secondary hash functions." (14:6-20.) |
| **[24]** The system of claim 18, wherein the location information comprises a portion of a hash table distributed over the plurality of data location servers. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>Minami describes data retrieval using a hash function. (19:35-23:37.) For example, "(D-2-2) The secondary server 120 receives this data retrieval request message through its communication controller, and initiates a process of FIG. 42 by activating its data retrieval unit that deals with the data retrieval message class. Since the received message is identified as a data retrieval request message, the data retrieval unit takes a process flow of F423, whose main part is shown in FIG. 43. In F423, the data retrieval unit first extracts a search keyword '5' from the request message, saves this search keyword and the connection identifier for the terminal 50 for later use, and then searches its own regular data storage for a record relevant to the extracted search keyword '5.' In this CASE (2), however, this search ends up with no matches. The data retrieval unit then applies its secondary hash function to the search keyword '5,' thus obtaining a secondary hash value of '3.' Since this secondary hash value '3' does not match with its own secondary server identifier '2,' the secondary server 120 produces a local replicated data retrieval request message (FIG. 13) on the basis of the data retrieval request message in process. This new message, having a value of '2' in its secondary server identifier field, is transmitted by the communication controller to another secondary server 130 whose secondary server identifier is known to be '3.'" (20:27-50.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
|  | "[A] primary transformation unit, disposed in each primary server, for processing a given search keyword to derive a specific primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located" (7:52-57.)<br><br><br><br>FIG. 1<br><br>"According to the present invention, the entire coverage area of a network is divided into a plurality of primary areas, and each primary area is subdivided into a plurality of secondary areas. Primary and secondary servers are deployed in the network, one for each individual primary area and secondary area, respectively. The primary servers employ a primary hash function that processes a given search keyword to derive a primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given |

65

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | search keyword is located. Further, the primary servers have a secondary hash function that processes a given search keyword to derive a specific secondary server identifier indicating one of the secondary servers that is located in the same primary area as their own and has a record corresponding to the given search keyword. The secondary servers are also equipped with the same secondary hash function as the primary servers'. Those two hash functions are used in both data registration and data retrieval processes." (28:12-32.)<br><br>**Obviousness of Hash Function:** To the extent that Kove contends that Minami does not disclose this limitation, and this claim is construed to require a hash function, the subject matter as a whole of each claim, including this limitation, would have been obvious to one of skill in the art before the invention. The specification of the asserted patents themselves concede that the "preferably applied" hash function used to organize the data location information across the plurality of data location servers was "well-known" in computer science. ('170 patent, col. 15:12-18.) Numerous other publications before the filing of the Patents-in-Suit describe the use of hash functions to organize location information across servers in distributed systems. Courts have also recognized that hash functions are "generic and basic mathematical or algorithmic functions that do not make a patent inventive." *Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 WL 1456678, at *7 (N.D. Cal. March 23, 2018). One skilled in the art would be familiar with the use of consistent hashing in a distributed network. Karger '618/420 states that it was well understood "for clients to use a standard hash function to determine from which server to request a document." ('420 patent, 3:23-50; '618 patent, 3:18-44.) "In one embodiment, the mapping of requests [e.g., for a document] and resources [e.g., servers] to the mathematical mapping space is accomplished with a hash function. A hash function takes an input (k) and returns an output in a given range. Hash functions can be used to allocate pointers or keys to a location in a hash table, which is a data structure having a specified number of locations or 'slots.' If h(k) is a hash function, key (k) is said to hash to a hash table location h(k). A goal in designing a hash function is for each key (k) to be equally likely to hash to any of the locations in the hash table. An approach to achieve this is to derive the hash function in a way that is expected to be independent of any patterns that might exist in the data." ('420 patent, 10:22-34; '618 patent, 10:13- |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | 25.) Karger '420/618 discloses a "consistent hashing" function, which "avoids increasing load and spread when the number of servers changes." ('420 patent, 6:29-41; '618 patent, 6:21-33.) "Networked distributed file systems, groups of computers that store large amounts of data on an intranet or internet, and have too much information to effectively serve on one server, can use the invention to great benefit." ('420 patent, 19:47-50; '618 patent, 18:14-17.) Thus, one skilled in the art would recognize that consistent hashing as taught by Karger '420/618 could be used to improve the operation of a distributed system such as disclosed by Minami when a server is added to or removed from that system. |
| | **Obviousness of Location Information:** To the extent that Kove contends that Minami does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, the "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.) |
| | RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.) |
| | "DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*) |
| | "The domain name space is a tree structure. Each node and leaf on the tree corresponds to a resource set (which may be empty). … The domain name of a node is the list of the labels on the path from node to the root of the tree." (*Id.*, 7.) "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs)." (*Id.*, 11-12.) A particular RR includes the "owner" "which is the domain name where the RR is found" and the "type," which may be "A" "a host address," "CNAME," which "identifies the conical name of an alias," "HINFO," which "identifies the CPU and OS used by a host," or "MX," which "identifies a mail exchange." (*Id.*, 12.) |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420 |
|---|---|
| | "In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id.,* 17.)<br><br>A domain name is represented by a "dotted quad" in symbolic form (e.g., SRI-NIC.ARPA) and associated address of the domain name is a "dotted quad" in numeric form, the so-called IP-address (e.g., 26.0.0.73). This example is shown below from RFC1034.<br><br>`SRI-NIC.ARPA.    A    26.0.0.73`<br>`                 A    10.0.0.51`<br>`                 MX   0 SRI-NIC.ARPA.`<br>`                 HINFO DEC-2060 TOPS20`<br>_____<br>(*Id.*, 37.) |

**Exhibit 3A: Invalidity Claim Chart Against U.S. Patent No. 7,233,978 in View of the Domain Name System (DNS)**

AWS asserts that U.S. Patent No. 7,233,978 ("the '978 patent") claims 1, 3, 6, 10, 14, and 31 are anticipated by, and claims 17, 23, 24, 30 are obvious in view of, the BIND 8.1 version of DNS, the operation of which is described in BIND and DNS, RFC 1034, Sherman, and Karger/Sherman. DNS qualifies as prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it was publicly available in May 1997, more than a year before Kove's July 8, 1998 claimed priority date for claims 1 and 31, Kove's October 28, 1999 claimed priority dated for claims 3, 6, 10, and 14, and Kove's June 2, 2000 claimed priority date for claims 17, 23, 24, and 30 the '978 patent. Neimat qualifies as prior art under pre-AIA 35 U.S.C. § 102(b), e.g., because it was issued on July 30, 1996, more than a year before Kove's claimed priority dates. Venkatasubramanian qualifies as prior art under pre-AIA 35 U.S.C. § 102(b), e.g., because it published in 1997, more than a year before Kove's claimed priority dates. The citations below are representative of where specifically in the item of prior art each element of each asserted claim may be found, and AWS reserves the right to rely on other portions of the prior art, versions of the cited documents, and/or evidence to show the invalidity of the asserted claims, including all evidence referenced in the accompanying contentions.

Furthermore, the following list includes examples of specifically where certain '978 patent claim elements are found in DNS:

- Client: Client
- Identifier: Domain name
- Location information: Resource records ("RRs")
- Location server: Name server
- Data: Host data or mailbox data
- Entity: Host, mailbox, object, or resource
- Location query: Standard query
- Location message: Response from name server that answers the question posed in the query
- Redirect message: Response from name server that refers the requester to another set of name servers

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| **[1.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>In general, DNS discloses a system having a plurality of DNS name servers that manage location information, such as DNS resource records, and provide location information to location queries, called standard queries in DNS. Each DNS name |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | server is attached to a DNS network and maintains a set of domain name/address mappings that are modified or returned in response to standard queries from clients.<br><br>"NAME SERVERS are server programs which hold information about the domain tree's structure and set information. A name server may cache structure or set information about any part of the domain tree, but in general a particular name server has complete information about a subset of the domain space, and pointers to other name servers that can be used to lead to information from any part of the domain tree." (RFC1034, 6.)<br><br>"[Q]uery operations are attempts to extract specific types of information from a particular set. A query names the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its domain names to identify hosts; queries for address resources return Internet host addresses." (*Id.*)<br><br>In response to a query, a "name server either answers the question posed in the query, refers the requester to another set of name servers, or signals some error condition." (*Id.*, 16.)<br><br>"The principal activity of name servers is to answer standard queries." (*Id.*, 22.)<br><br>*See also* Paul Albitz and Cricket Liu, DNS and BIND, 4, O'Reilly & Associates, Inc., 3rd ed. 1998 ("Programs called *name servers* constitute the server half of DNS's client-server mechanism. Name servers contain information about some segment of the database and make it available to clients, called *resolvers*." (emphasis original)). |
| **[1.a]** a first location server containing a first set of location information corresponding to at least one entity, the location information | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below. |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity | The "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)<br><br>A client can use DNS to retrieve "mailbox data" associated with a particular mailbox. (*Id.*, 3.)<br><br>"Conceptually, each node and leaf of the domain name space tree names a set of information, and query operations are attempts to extract specific types of information from a particular set. A query names the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its domain names to identify hosts; queries for address resources return Internet host addresses." (*Id.*, 6.)<br><br>"[I]n general a particular name server has complete information about a subset of the domain space, and pointers to other name servers that can be used to lead to information from any part of the domain tree." (*Id.*)<br><br>RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.)<br><br>"DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*)<br><br>"[T]he mailbox HOSTMASTER@SRI-NIC.ARPA is represented as a domain name by HOSTMASTER.SRI-NIC.ARPA." (*Id.*, 9-10.)<br><br>"A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs). The order of RRs in a set is |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | not significant, and need not be preserved by name servers, resolvers, or other parts of the DNS. |

*Row below is the continuation of the right-hand cell:*

not significant, and need not be preserved by name servers, resolvers, or other parts of the DNS.

When we talk about a specific RR, we assume it has the following:

owner          which is the domain name where the RR is found.

type           which is an encoded 16 bit value that specifies the type of the resource in this resource record. Types refer to abstract resources." (*Id.*, 11-12.)

" (*Id.*, 11-12.)
The information in a name server corresponds to a *"resource"* such as a "host," "alias," "CPU and OS," or "a mail exchange." (*Id.*, 12.)

For example, the identifier "vaxa.isi.edu" has two IP addresses shown below.

```
For example, we might show the RRs carried in a message as:

   ISI.EDU.        MX    10 VENERA.ISI.EDU.
                   MX    10 VAXA.ISI.EDU.
   VENERA.ISI.EDU. A     128.9.0.32
                   A     10.1.0.52
   VAXA.ISI.EDU.   A     10.2.0.27
                   A     128.9.0.33
```

(*Id.*, 14.)

*See also* Paul Albitz and Cricket Liu, DNS and BIND, O'Reilly & Associates, Inc., 3rd ed. 1998: "Every domain has a unique name." (p. 5, *see also* 7.) "Each host on a network has a domain name, which points to information about the host." (p. 6.) "[A] domain name uniquely identifies a single node in the tree." (p. 13.) "The hosts are … represented by domain names. … Domain names at the leaves of the tree generally represent individual hosts, and they may point to network addresses, hardware information, and mail routing information. Domain names in the interior of the tree can name a host *and* can point to information about the domain. Interior

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | domain names … can represent both the domain that they correspond to and a particular host on the network. For example, *hp.com* is both the name of the Hewlett-Packard Company's domain and the domain name of a host that runs HP's main web server." (pp. 15-16, *see also* 19-20.) |
| **[1.b]** a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below. See above evidence regarding claim limitation 1.a. "In any system that has a distributed database, a particular name server may be presented with a query that can only be answered by some other server." (RFC1034, 4.) "A given name server will typically support one or more zones, but this gives it authoritative information about only a small section of the domain tree." (*Id.*, 19.) RCF 1034 discloses that the "sheer size of the database" requires that it be "maintained in a distributed manner, with local caching" wherein a portion of the data location information is stored on each name server. (*Id.*, 2.) |
| **[1.c]** programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below. RFC1034 discloses that name servers include "server programs" (*id.*, 6) that respond to queries with a DNS response answer. "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs). The order of RRs in a set is |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | not significant, and need not be preserved by name servers, resolvers, or other parts of the DNS.<br><br>When we talk about a specific RR, we assume it has the following:<br><br>owner      which is the domain name where the RR is found.<br><br>type      which is an encoded 16 bit value that specifies the type of the resource in this resource record. Types refer to abstract resources." (*Id.*, 11-12.)<br><br>DNS name servers contain programming logic, such as "DNS software" that is run when a name server is locating information contained in a RR responsive to a location query. (*Id.*, 15.)<br><br>"Queries are messages which may be sent to a name server to provoke a response…. The response by the name server either answers the question posed in the query, refers the requester to another set of name servers, or signals some error condition." (*Id.*, 15-16.)<br><br>"A standard query specifies a target domain name (QNAME), query type (QTYPE), and query class (QCLASS) and asks for RRs which match." (*Id.*, 16.) "Using the query domain name, QTYPE, and QCLASS, the name server looks for matching RRs. … For example, a mailer tying [sic, trying] to send mail to Mockapetris@ISI.EDU might ask the resolver for mail information about ISI.EDU, resulting in a query for QNAME=ISI.EDU, QTYPE=MX, QCLASS=IN. The response's answer section would be" as follows. (*Id.*, 17.) |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | ```
ISI.EDU.          MX       10 VENERA.ISI.EDU.
                  MX       10 VAXA.ISI.EDU.

while the additional section might be:

VAXA.ISI.EDU.     A        10.2.0.27
                  A        128.9.0.33
VENERA.ISI.EDU.   A        10.1.0.52
                  A        128.9.0.32
```<br><br>(*Id*.) The additional section is provided "[b]ecause the server assumes that if the requester wants mail exchange information, it will probably want the addresses of the mail exchanges soon afterward." (*Id*.)<br><br>RFC1034 discloses that DNS name servers "answer standard queries" and that they send "response[s]" that "are carried in a standard message format." (*Id*., 22.) "The actual algorithm used by the name server will depend on the local OS and data structures used to store RRs." (*Id*., 24.)<br><br>*See also* Section 6.2 providing example queries and responses. (*Id*., 39-50.) |
| **[3]** The system of claim 1, wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>RFC1034 explains that "[i]n addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (*Id*., 17.) |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| message comprising information for finding a location server known to have location information relevant to the location query. | RFC1034, Section 6.2 discloses examples of queries and responses. (*Id.*, 39-50.) Sections 6.2.6 and 6.2.7 discloses examples of responses with a referral. (*Id.*, 44-46.)<br><br>*See also* Paul Albitz and Cricket Liu, DNS and BIND, 27-30, 247, O'Reilly & Associates, Inc., 3rd ed. 1998 (describing that the response may contain the answer or a referral to other name servers). |
| **[6]** The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>"The owner name is often implicit, rather than forming an integral part of the RR. For example, many name servers internally form tree or **hash structures** for the name space, and chain RRs off nodes." (RFC1034, 13.)<br><br>*See also* Paul Albitz and Cricket Liu, DNS and BIND, 6, O'Reilly & Associates, Inc., 3rd ed. 1998 ("Domain names are used as indexes into the DNS database."). |
| **[10.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | See above evidence regarding the preamble of claim 1. |
| **[10.a]** a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>See above evidence regarding claim limitations 1.a and 1.b.<br><br>A first server can "pursue[] the query for the client at another server." (RFC1034, 4.) |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| an aggregate set of the location information; and | "RRs are represented in binary form in the packets of the DNS protocol, and are usually represented in highly encoded form when stored in a name server or resolver." (*Id.*, 13.)<br><br>For example, RFC1034 discloses that the IP address of the mail server named "venera.isi.edu" is "128.9.0.32." (*Id.*, 14, 17.)<br><br>"The database is divided up into sections called zones, which are distributed among the name servers…. [T]he essential task of a name server is to answer queries using data in its zones." (*Id.*, 18.)<br><br>RFC1034 discloses that "[w]hole zones can be transferred between name servers by transferring the RRs, either carried in a series of messages or by FTPing a master file which is a textual representation." (*Id.*, 20.)<br><br>RFC1034 discloses a DNS protocol for implementing domain name facilities. (*Id.*, 1, 13, 23, 26.) In particular, the "zone transfer part of the DNS protocol" transports zones of identifiers and location information. (*Id.*, 28.)<br><br>Since the DNS database is partitioned and queries may be submitted to any name server, the DNS name servers are interconnected to enable a query to be redirected to the name server holding the unique identifier location mapping for a query and, therefore, are arranged in a cluster topology. |
| **[10.b]** programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server | See above evidence regarding claim limitation 1.c and claim 3. |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier. | |
| **[14.Preamble]** A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising: | See above evidence regarding the preamble of claim 1. |
| **[14.a]** receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>"Clients of the domain system should be able to identify trusted name servers they prefer to use before accepting referrals to name servers outside of this 'trusted' set." (*Id.*, 4.)<br><br>"The two general approaches to dealing with this problem are 'recursive', in which the first server pursues the query for the client at another server, and 'iterative', in which the server refers the client to another server and lets the client pursue the query." (*Id.*)<br><br>Name servers receive location queries from clients that "name[] the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its domain names to identify hosts [and] queries for address resources return Internet host addresses." (*Id.*, 6.) |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| **[14.b]** sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and | See above evidence regarding claim limitations 1.c and 10.a. |
| **[14.c]** sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query. | See above evidence regarding claim limitation 1.c and claim 3. |
| **[17.Preamble]** A method of scaling at least one of capacity and transaction rate capability in a location server in a system having a plurality of location servers for storing and retrieving location information, wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information, the method comprising: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>See above evidence regarding the preamble of claim 1, and claim limitations 1.a and 1.b.<br><br>RFC1034 discloses a system that, in order to scale at least one of capacity and transaction rate in view of the "sheer size of the database," "must be maintained in a distributed manner, with local caching to improve performance." (*Id.*, 2.) |
| **[17.a]** providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information related to the identifier; | See above evidence regarding claim limitation 10.a. |
| **[17.b]** storing location information formatted according to the transfer protocol at a first location server; | See above evidence regarding claim limitation 10.a. |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| **[17.c]** receiving an identifier and a location relevant to the identifier at the first location server; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>See above evidence regarding claim limitation 10.a.<br><br>RFC1034 discloses a DNS protocol for implementing domain name facilities wherein domain names and resource records are received by the name servers. (*Id.*, 1.)<br><br>"The name server must periodically refresh its zones from master copies in local files or foreign name servers." (*Id.*, 7.)<br><br>"The general model of automatic zone transfer or refreshing is that one of the name servers is the master or primary for the zone." (*Id.*, 28.) |
| **[17.d]** storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below.<br><br>DNS discloses a location store in the form of "master files." (*Id.*, 5.)<br><br>"RRs are represented in binary form in the packets of the DNS protocol, and are usually represented in highly encoded form when stored in a name server or resolver." (*Id.*, 13.)<br><br>RFC1034 discloses that resource records are contained within a zone stored at a name server. (*Id.*, 24.) |
| **[17.e]** transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then DNS discloses this element, for example, as described below. |

12

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| the first location server reaches a predetermined performance limit. | RFC1034 discloses "transferring a portion of the identifiers and associated locations to a second data location server" as whole zones of resource records are transferred between name servers. (*Id.*, 20.)<br><br>**Obviousness of Load Balancing:** To the extent that Kove contends that DNS does not disclose this limitation, the subject matter as a whole of this claim would have been obvious to one of skill in the art before the invention. The concept of transferring information from one server to another when the server is full, for example, is obvious and conventional in the field of computer science. One of skill would have been motivated to do so, for example, for the obvious benefit of improving system performance, speed, and efficiency. Therefore, it would have been obvious to one of skill to employ redirection in DNS, and further in view of Neimat described below.<br><br>As an example, Neimat discloses database records. (Neimat, 4:46-49, 6:16-21, 7:7-10.) A database record is identified by a record key value supplied by a client. (*Id.*, 8:28-41, 8:48-56.) "In general, each data record comprises two sections: a short record key identifying the record, and a remainder of information associated with that key." (*Id.*, 8:27-30.)<br><br>Database records are contained in "buckets" which are synonymous with memory locations. (*Id.*, 4:53-60, 5:30-42.) "In accordance with the invention, address space of memory locations available for storage is gradually increased as needed by a process of 'splitting' a respective predetermined one of the memory locations or 'buckets'." (*Id.*, 13:27-32.)<br><br>Neimat's "predetermined performance limit" is when "memory location 0 becomes full." (*Id.*, 13:26-27.) |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | When the memory is full, (and it therefore hits a predetermined performance limit), the transfer process commences: "In response to each collision, the respective predetermined memory location or 'bucket' is 'split' by creating a respective new memory location, and moving approximately half of the records from the respective predetermined memory location to the respective new memory location." (*Id.*, 13:32-37.)<br><br>For example, in Neimat, the memory capacity is to store four records. (*Id.*, Figure 3B.) When an attempt to store for data record key named 153 reaches server 0, location 0, the transfer is initiated as the memory is full. In this case, the server decides to transfer the named key 321 to server 1, location 1. Key 321 is received and stored by server 1 having previously been stored in server 0. (*Id.*, 14:22-42.) |
| **[23]** The method of claim 17, wherein the performance criterion comprises an amount of available persistent storage space in the first location server. | To the extent this claim language can be understood, see above evidence regarding claim limitation 17.e.<br><br>As described with respect to claim 17, Neimat uses the amount of available storage space as the performance criteria regarding when to start its splitting process. (*See id.,* 13:26-43.) Neimat also discloses that this storage space can be "persistent." "Preferably, memory locations are in RAM, although they could alternatively be on disk as well." (*Id.*, 8:42-44.) |
| **[24]** The method of claim 17, wherein the performance criterion comprises a transaction rate limit. | To the extent this claim language can be understood, see above evidence regarding claim limitation 17.e.<br><br>In addition, Venkatasubramanian discloses "A Load Management Example" of load balancing data in a video delivery system using memory size, CPU load, and network and disk bandwidth. |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | **1.2  A Load Management Example**<br><br>Consider the example in Figure 2. Suppose that at some time instant, a video server that has two data sources $S_1$ and $S_2$ has sufficient storage to accommodate eight video objects on $S_1$ and two video objects on $S_2$. Further, suppose $S_1$ and $S_2$ have sufficient bandwidth to support three and eight additional requests, respectively. Also, suppose that ten additional requests, eight for a video object $V_1$ and one each for video objects $V_2$ and $V_3$ are expected to arrive in the near future. Considering the disk space and bandwidth availabilities of the data sources, it is prudent to allocate $V_1$ to $S_2$ and $V_2$ and $V_3$ to $S_1$. On the other hand, if $V_2$ and $V_3$ were allocated to $S_2$, the video server would only be able to handle five of the ten requests - three for $V_1$ and one each for $V_2$ and $V_3$.<br><br>(Venkatasubramanian, 529.) |
| **[30]** The method of claim 17, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit. | To the extent this claim language can be understood, see above evidence regarding claim limitation 17.e.<br><br>As described with respect to claim 17, Neimat uses the amount of available storage space as the performance criteria regarding when to start its splitting process. (*See* Neimat, 13:26-43.) Neimat discloses "monitoring the performance criterion." There would be no possible way to conduct the "splitting" described in Neimat unless the performance criterion was "monitored," such that the splitting would occur when the performance criterion was met.<br><br>Moreover, Neimat discloses a "split coordinator server" that "receives a collision message over the network from a server that includes a memory location that undergoes a collision." (*Id.*, 14:42-44.) Thus, the "split coordinator server" engages in "monitoring the performance criterion," *i.e.*, it monitors whether a collision occurs that results from the performance criterion being satisfied. |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | Neimat also discloses "automatically transferring." The "split coordinator server transmits a split message to a target server that includes the predetermined memory location identified by the coordinator pointer value." (*Id.*, 14:44-47). "In response to the split message," the "target server performs" several steps that result in splitting. (*Id.*, 14:51-15:15.) Thus, the transfer takes place automatically, *i.e.*, the server is programmed to automatically conduct this operation. |
| **[31.Preamble]** A system for managing location information and providing location information to location queries, the system comprising: | See above evidence regarding the preamble of claim 1. |
| **[31.a]** a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity, the location server containing location information corresponding to at least one entity and formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and | See above evidence regarding claim 10.a. |
| **[31.b]** programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity. | See above evidence regarding claim 1.c. |

16

**Exhibit 3B: Invalidity Claim Chart Against U.S. Patent No. 7,233,978 in View of the Cache Resolver System**

AWS asserts that U.S. Patent No. 7,233,978 ("the '978 patent") claims 1, 3, 6, 10, 14, and 31 are anticipated by, and claims 17, 23, 24, 30 are obvious in view of, the Cache Resolver system, such as described in Distributed Web Caching System with Consistent Hashing by Alexander Sherman (1999) ("Sherman"), and Web Caching with Consistent Hashing by Karger, Sherman, et al. (March 4, 1999) ("Karger/Sherman"). The Cache Resolver system qualifies as prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it was known, used, and published before the filing date of the '978 patent. In addition, the Cache Resolver System was known, used, and published prior to Kove's October 28, 1999 claimed priority dated for claims 3, 6, 10, and 14, and Kove's June 2, 2000 claimed priority date for claims 17, 23, 24, and 30. Neimat qualifies as prior art under pre-AIA 35 U.S.C. § 102(b), e.g., because it was issued on July 30, 1996, more than a year before Kove's claimed priority dates, including its July 8, 1998 claimed priority date for claims 1 and 31. Venkatasubramanian qualifies as prior art under pre-AIA 35 U.S.C. § 102(b), e.g., because it published in 1997, more than a year before Kove's claimed priority dates. The citations below are representative of where specifically in the item of prior art each element of each asserted claim may be found, and AWS reserves the right to rely on other portions of the prior art, versions of the cited documents, and/or evidence to show the invalidity of the asserted claims, including all evidence referenced in the accompanying contentions. AWS also contends that the complete features and functionality of DNS is inherent to any system using DNS, such as Sherman or Karger/Sherman.

Furthermore, the following list includes examples of specifically where certain '978 patent claim elements are found in DNS:
- Client: Client
- Identifier: Domain name
- Location information: Resource records ("RRs")
- Location server: Name server
- Data: Host data or mailbox data
- Entity: Host, mailbox, object, or resource
- Location query: Standard query
- Location message: Response from name server that answers the question posed in the query
- Redirect message: Response from name server that refers the requester to another set of name servers

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| **[1.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below. |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | In general, the Cache Resolver system discloses that a user browser can communicate with a network of DNS servers that access proxy caches with data. A URL or virtual name may be used with a consistent hash function to identify actual physical IP addresses of data. The DNS servers may store and/or calculate location information. Karger/Sherman discloses a related DNS system.

Sherman discloses "a solution to the problem of slow service experienced by most World Wide Web users" that includes an improvement over local browser caching, regional caching, and previous distributed cache solutions. (Pgs. 9-13.) Sherman's solution resolves "the tradeoff between a good hit rate and fast access times." (Pg. 13.)

Sherman "describes a Distributed Web Caching system based on the Consistent Hashing algorithms that improve on the methods used by the existing web caching systems. Consistent Hashing as used in our system provides for a more efficient use of caches on the World Wide Web, which translates into faster service for the users." (Abstract, pg. 3)

"Cache Resolver, the distributed web caching system that we developed, eliminates the necessity for any inter-cache communication on a cache miss by letting clients decide for themselves which cache has the required data. Instead of contacting a primary cache which on a miss sends requests to other caches or a directory, user's browser directly contacts the cache that contains the required resource. Browsers make their decision with help of a hash function which maps resources (or URLs) to a set of available caches. With a globally known hash function, all of the system clients (users) can agree on which caches are responsible for storing each resource. Thus, our system speeds up access time to the 'right cache' in two ways. First of all, executing a hash function locally is faster than running non-trivial protocols among caches to find the right cache. Also, if there is a 'right cache', no time is wasted on a possible miss in the primary cache." (Pg. 15.) |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | Sherman discloses: "The system consists of three major components: the actual cache machines for storing the content, users' browsers that direct requests toward virtual names of the caches, and the domain name servers (also known as resolution units) that use consistent hashing to resolve virtual names requested by the users into specific physical addresses of the cache machines." (Sherman, Pg. 34.)<br><br><br>Figure 4-1: System Components<br><br>Karger/Sherman has the same architecture. Both Sherman and Karger/Sherman describe aspects of the same Cache Resolver system. Therefore, citations herein regarding Sherman apply equally to Karger/Sherman, and vice versa. AWS also |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | contends that the complete features and functionality of DNS is inherent to any system using DNS, such as described in Sherman or Karger/Sherman. |
| | In general, DNS discloses a system having a plurality of DNS name servers that manage location information, such as DNS resource records, and provide location information to location queries, called standard queries in DNS. Each DNS name server is attached to a DNS network and maintains a set of domain name/address mappings that are modified or returned in response to standard queries from clients. |
| | "NAME SERVERS are server programs which hold information about the domain tree's structure and set information. A name server may cache structure or set information about any part of the domain tree, but in general a particular name server has complete information about a subset of the domain space, and pointers to other name servers that can be used to lead to information from any part of the domain tree." (RFC1034, 6.) |
| | "[Q]uery operations are attempts to extract specific types of information from a particular set. A query names the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its domain names to identify hosts; queries for address resources return Internet host addresses." (*Id.*) |
| | In response to a query, a "name server either answers the question posed in the query, refers the requester to another set of name servers, or signals some error condition." (*Id.*, 16.) |
| | "The principal activity of name servers is to answer standard queries." (*Id.*, 22.) |
| | *See also* Paul Albitz and Cricket Liu, DNS and BIND, 4, O'Reilly & Associates, Inc., 3rd ed. 1998 ("Programs called *name servers* constitute the server half of DNS's client-server mechanism. Name servers contain information about some |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | segment of the database and make it available to clients, called *resolvers*." (emphasis original)). |
| **[1.a]** a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>The Cache Resolver system discloses a DNS server network with data location servers containing sets of location information corresponding to at least one entity.<br><br>Sherman discloses that "[t]he primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP addresses of the caches. … It then uses consistent hashing to map all of the virtual names to physical addresses of only the live machines. … The DNS units represent the key component of our system since these units ultimately decide which physical cache stores each resource." (Pg. 37.)<br><br>The "primary goal" of DNS "is a consistent name space which will be used for referring to resources." (RFC1034, 2.)<br><br>A client can use DNS to retrieve "mailbox data" associated with a particular mailbox. (*Id.*, 3.)<br><br>"Conceptually, each node and leaf of the domain name space tree names a set of information, and query operations are attempts to extract specific types of information from a particular set. A query names the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its domain names to identify hosts; queries for address resources return Internet host addresses." (*Id.*, 6.) |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | "[I]n general a particular name server has complete information about a subset of the domain space, and pointers to other name servers that can be used to lead to information from any part of the domain tree." (*Id.*) |

(continuing in right column)

"[I]n general a particular name server has complete information about a subset of the domain space, and pointers to other name servers that can be used to lead to information from any part of the domain tree." (*Id.*)

RFC1034 states that "hosts" and "mailboxes" are a "normal" part of the name space. (*Id.*, 9.)

"DNS can be used to hold naming information for some kind of object" using "a convention for mapping between object names and domain names." (*Id.*)

"[T]he mailbox HOSTMASTER@SRI-NIC.ARPA is represented as a domain name by HOSTMASTER.SRI-NIC.ARPA." (*Id.*, 9-10.)

"A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs). The order of RRs in a set is not significant, and need not be preserved by name servers, resolvers, or other parts of the DNS.

When we talk about a specific RR, we assume it has the following:

owner           which is the domain name where the RR is found.

type            which is an encoded 16 bit value that specifies the type of the resource in this resource record. Types refer to abstract resources." (*Id.*, 11-12.)

The information in a name server corresponds to a *"resource"* such as a "host," "alias," "CPU and OS," or "a mail exchange." (*Id.*, 12.)

For example, the identifier "vaxa.isi.edu" has two IP addresses shown below.

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | For example, we might show the RRs carried in a message as:<br><br>ISI.EDU.  MX  10 VENERA.ISI.EDU.<br>          MX  10 VAXA.ISI.EDU.<br>VENERA.ISI.EDU. A  128.9.0.32<br>          A  10.1.0.52<br>VAXA.ISI.EDU. A  10.2.0.27<br>          A  128.9.0.33<br><br>(*Id.*, 14.)<br><br>*See also* Paul Albitz and Cricket Liu, DNS and BIND, O'Reilly & Associates, Inc., 3rd ed. 1998: "Every domain has a unique name." (p. 5, *see also* 7.) "Each host on a network has a domain name, which points to information about the host." (p. 6.) "[A] domain name uniquely identifies a single node in the tree." (p. 13.) "The hosts are … represented by domain names. … Domain names at the leaves of the tree generally represent individual hosts, and they may point to network addresses, hardware information, and mail routing information. Domain names in the interior of the tree can name a host *and* can point to information about the domain. Interior domain names … can represent both the domain that they correspond to and a particular host on the network. For example, *hp.com* is both the name of the Hewlett-Packard Company's domain and the domain name of a host that runs HP's main web server." (pp. 15-16, *see also* 19-20.) |
| **[1.b]** a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>Sherman explains that DNS servers contain different portions of resource records: "In a large web caching system it is possible that the views of live caches will differ slightly from one DNS server to another perhaps due to some lost connections over congested Internet links." (Pg. 38.)<br><br>See above evidence regarding claim limitation 1.a. |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | "In any system that has a distributed database, a particular name server may be presented with a query that can only be answered by some other server." (*Id.*, 4.)<br><br>"A given name server will typically support one or more zones, but this gives it authoritative information about only a small section of the domain tree." (*Id.*, 19.) |
| **[1.c]** programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>Sherman states: "The primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP addresses of the caches. We use a number of DNS servers each running a copy of unmodified BIND 8.0 distribution. (BIND is an implementation of DNS protocol.) In addition to BIND, each DNS machine runs one of our programs, called 'dnshelper'. The 'dnshelper' program periodically polls all of the caches, by communicating with the Squid monitors (that run on the cache machines), to determine the dead/alive status of each machine. It then uses consistent hashing to map all of the virtual names to physical addresses of only the live machines. (As noted in section 4.2 our virtual name space consists of 997 possible names.) If any of the mappings change, it writes the new mappings to a 'records' file and signals BIND to update itself by reloading that file. BIND updates itself 'dynamically' which allows it to respond to DNS queries even during the update stage. … When a user request arrives, DNS immediately replies with the mappings that it currently contains." (Pg. 37.)<br><br>RFC1034 discloses that name servers include "server programs" (RFC1034, 6) that respond to queries with a DNS response answer.<br><br><span style="color:red">"A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular</span> |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | name is composed of separate resource records (RRs). The order of RRs in a set is not significant, and need not be preserved by name servers, resolvers, or other parts of the DNS.<br>When we talk about a specific RR, we assume it has the following:<br>owner       which is the domain name where the RR is found.<br>type        which is an encoded 16 bit value that specifies the type of the resource in this resource record. Types refer to abstract resources." (*Id.*, 11-12.)<br><br>DNS name servers contain programming logic, such as "DNS software" that is run when a name server is locating information contained in a RR responsive to a location query. (*Id.*, 15.)<br><br>"Queries are messages which may be sent to a name server to provoke a response.… The response by the name server either answers the question posed in the query, refers the requester to another set of name servers, or signals some error condition." (*Id.*, 15-16.)<br><br>"A standard query specifies a target domain name (QNAME), query type (QTYPE), and query class (QCLASS) and asks for RRs which match." (*Id.*, 16.)<br><br>"Using the query domain name, QTYPE, and QCLASS, the name server looks for matching RRs. …  For example, a mailer tying [sic, trying] to send mail to Mockapetris@ISI.EDU might ask the resolver for mail information about ISI.EDU, resulting in a query for QNAME=ISI.EDU, QTYPE=MX, QCLASS=IN. The response's answer section would be" as follows. (*Id.*, 17.) |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | ```
ISI.EDU.          MX      10 VENERA.ISI.EDU.
                  MX      10 VAXA.ISI.EDU.

while the additional section might be:

    VAXA.ISI.EDU.     A      10.2.0.27
                      A      128.9.0.33
    VENERA.ISI.EDU.   A      10.1.0.52
                      A      128.9.0.32
```<br><br>(*Id*.) The additional section is provided "[b]ecause the server assumes that if the requester wants mail exchange information, it will probably want the addresses of the mail exchanges soon afterward." (*Id*.)<br><br>RFC1034 discloses that DNS name servers "answer standard queries" and that they send "response[s]" that "are carried in a standard message format." (*Id*., 22.)<br><br>"The actual algorithm used by the name server will depend on the local OS and data structures used to store RRs." (*Id*., 24.)<br><br>*See also* Section 6.2 providing example queries and responses. (*Id*., 39-50.) |
| **[3]** The system of claim 1, wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>Sherman states: "The primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP addresses of the caches. We use a number of DNS servers each running a copy of unmodified BIND 8.0 distribution. (BIND is an implementation of DNS protocol.) In addition to BIND, each DNS machine runs one of our programs, called 'dnshelper'. The 'dnshelper' program periodically polls all of the caches, by |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query. | communicating with the Squid monitors (that run on the cache machines), to determine the dead/alive status of each machine. It then uses consistent hashing to map all of the virtual names to physical addresses of only the live machines. (As noted in section 4.2 our virtual name space consists of 997 possible names.) If any of the mappings change, it writes the new mappings to a 'records' file and signals BIND to update itself by reloading that file. BIND updates itself 'dynamically' which allows it to respond to DNS queries even during the update stage. … When a user request arrives, DNS immediately replies with the mappings that it currently contains." (Pg. 37.)<br><br>RFC1034 explains that "[i]n addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (RFC1034, 17.)<br><br>RFC1034, Section 6.2 discloses examples of queries and responses. (*Id.*, 39-50.) Sections 6.2.6 and 6.2.7 discloses examples of responses with a referral. (*Id.*, 44-46.)<br><br>*See also* Paul Albitz and Cricket Liu, DNS and BIND, 27-30, 247, O'Reilly & Associates, Inc., 3rd ed. 1998 (describing that the response may contain the answer or a referral to other name servers). |
| **[6]** The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>The Cache Resolver system discloses that a user browser can communicate with a network of DNS servers that access indexed location stores, indexed by a hash table, of proxy caches with data. A URL or virtual name may be used with a |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | consistent hash function to identify actual physical IP addresses of data. The DNS servers may store and/or calculate location information.<br><br>Sherman discloses that "a globally known hash function," can be used to created an indexed location store such that "all of the system clients (users) can agree on which caches are responsible for storing each resource." (Sherman, Pg. 15.)<br><br>"A family of consistent hash functions developed by the Algorithms group at MIT possesses all of the properties required for mapping documents to caches in the global cache system. As the name suggests these functions maintain consistent mappings despite fluctuations in range. The basic construction of a consistent hash function is quite simple. Both, the data items and the caches, are mapped randomly and independently to a circle with circumference of length 1 as shown in figure 2.3(i). A data item is assigned to the closest cache in the clockwise direction along the circle. Thus, in figure 2.3(i), items 1, 2, and 3 are mapped to cache A, and items 4 and 5 are mapped to cache B." (*Id.*, Pg. 18.)<br><br><br><br>Figure 2-2: The basic construction of a consistent hash function |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | "Hashing a URL means finding a cache point whose value is the smallest upper bound on the mapped value of a URL and returning the physical cache associated with that point." (*Id.*, Pg. 30.)<br><br>"In order to demonstrate the practical advantage of Consistent Hashing we implemented a web caching system, called the Cache Resolver that uses our hashing algorithm." (*Id.*, Pg. 34.)<br><br>"Properties of consistent hashing allow us to use the caches very effectively." (*Id.*, Pg. 38.)<br><br>"Consistent Hashing allows all of the DNS servers to agree on the mappings from virtual names to IP addresses." (Pg. 40.)<br><br>*See also* Sherman, Chapter 3 "Consistent Hashing." (Pgs. 22-33.)<br><br>Likewise, Karger/Sherman discloses: "In order to get around the problem, we decided to use DNS.   We could set up our own DNS servers, and modify them to support consistent hashing.  This consistent hashing could be "propagated" to browsers during name resolution.  More precisely, we wrote an autoconfigure script that performs a *standard* hash of the input URL to a range of 1000 names that we call *virtual caches*.  We then used DNS to map the 1000 virtual cache names onto actual code IP addresses via consistent hashing." (Karger/Sherman, p. 10; *see also* Sections 2-3.)<br><br>"The primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP addresses of the caches. We use a number of DNS servers each running a copy of unmodified BIND 8.0 distribution, an implementation of DNS protocol.  BIND reads the mappings of virtual names to IP addresses from a *records* file, that is being updated dynamically by another program called "dnshelper".  Dnshelper monitors the set of caches, and |

29

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | runs consistent hashing to map all of the 1000 virtual names (see section 3.2) to the range of only the live cache machines. If the set of available caches changes, "dnshelper" signals BIND to reload the *records* file that contains new mappings." (*Id.*)<br><br>"The owner name is often implicit, rather than forming an integral part of the RR. For example, many name servers internally form tree or hash structures for the name space, and chain RRs off nodes." (RFC1034, 13.)<br><br>*See also* Paul Albitz and Cricket Liu, DNS and BIND, 6, O'Reilly & Associates, Inc., 3rd ed. 1998 ("Domain names are used as indexes into the DNS database."). |
| **[10.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | See above evidence regarding the preamble of claim 1. |
| **[10.a]** a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>See above evidence regarding claim limitations 1.a and 1.b.<br><br>A first server can "pursue[] the query for the client at another server." (RFC1034, 4.)<br><br>"RRs are represented in binary form in the packets of the DNS protocol, and are usually represented in highly encoded form when stored in a name server or resolver." (*Id.*, 13.)<br><br>For example, RFC1034 discloses that the IP address of the mail server named "venera.isi.edu" is "128.9.0.32." (*Id.*, 14, 17.) |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | "The database is divided up into sections called zones, which are distributed among the name servers…. [T]he essential task of a name server is to answer queries using data in its zones." (*Id.*, 18.) |
| | RFC1034 discloses that "[w]hole zones can be transferred between name servers by transferring the RRs, either carried in a series of messages or by FTPing a master file which is a textual representation." (*Id.*, 20.) |
| | RFC1034 discloses a DNS protocol for implementing domain name facilities. (*Id.*, 1, 13, 23, 26.) In particular, the "zone transfer part of the DNS protocol" transports zones of identifiers and location information. (*Id.*, 28.) |
| | Since the DNS database is partitioned and queries may be submitted to any name server, the DNS name servers are interconnected to enable a query to be redirected to the name server holding the unique identifier location mapping from the aggregate set of location information for a query and, therefore, are arranged in a cluster topology. |
| **[10.b]** programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier. | See above evidence regarding claim limitation 1.c and claim 3. |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| **[14.Preamble]** A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising: | See above evidence regarding the preamble of claim 1. |
| **[14.a]** receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>"Clients of the domain system should be able to identify trusted name servers they prefer to use before accepting referrals to name servers outside of this 'trusted' set." (RFC1034, 4.)<br><br>"The two general approaches to dealing with this problem are 'recursive', in which the first server pursues the query for the client at another server, and 'iterative', in which the server refers the client to another server and lets the client pursue the query." (*Id.*)<br><br>A client sends a query that "names the domain name of interest and describes the type of resource information that is desired. For example, the Internet uses some of its domain names to identify hosts [and] queries for address resources return Internet host addresses." (*Id.*, 6.) |
| **[14.b]** sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server | See above evidence regarding claim limitations 1.c and 10.a. |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| containing information relevant to the entity identified in the query; and | |
| **[14.c]** sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query. | See above evidence regarding claim limitation 1.c and claim 3. |
| **[17.Preamble]** A method of scaling at least one of capacity and transaction rate capability in a location server in a system having a plurality of location servers for storing and retrieving location information, wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information, the method comprising: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>See above evidence regarding the preamble of claim 1, and claim limitations 1.a and 1.b.<br><br>RFC1034 discloses that in order to scale at least one of capacity and transaction rate, in view of the "sheer size of the database," it "must be maintained in a distributed manner, with local caching to improve performance." (RFC1034, 2.) |
| **[17.a]** providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information related to the identifier; | See above evidence regarding claim limitation 10.a. |
| **[17.b]** storing location information formatted according to the transfer protocol at a first location server; | See above evidence regarding claim limitation 10.a. |
| **[17.c]** receiving an identifier and a location relevant to the identifier at the first location server; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>See above evidence regarding claim limitation 10.a. |

33

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | "The name server must periodically refresh its zones from master copies in local files or foreign name servers." (RFC1034, 7.)<br><br>"The general model of automatic zone transfer or refreshing is that one of the name servers is the master or primary for the zone." (*Id.*, 28.) |
| **[17.d]** storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>DNS discloses a location store in the form of "master files." (RFC1034, 5.)<br><br>"RRs are represented in binary form in the packets of the DNS protocol, and are usually represented in highly encoded form when stored in a name server or resolver." (*Id.*, 13.)<br><br>RFC1034 discloses that resource records are contained within a zone stored at a name server. (*Id.*, 24.) |
| **[17.e]** transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then the Cache Resolver system discloses this element, for example, as described below.<br><br>RFC1034 discloses "transferring a portion of the identifiers and associated locations to a second data location server" as whole zones of resource records are transferred between name servers. (RFC1034, 20.)<br><br>**Obviousness of Load Balancing:** To the extent that Kove contends that the Cache Resolver system does not disclose this limitation, the subject matter as a whole of this claim would have been obvious to one of skill in the art before the invention. The concept of transferring information from one server to another when the server is full, for example, is obvious and conventional in the field of computer science. One of skill would have been motivated to do so, for example, for the obvious |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | benefit of improving system performance, speed, and efficiency. Therefore, it would have been obvious to one of skill to employ redirection in DNS, and further in view of Neimat described below.<br><br>As an example, Neimat discloses database records. (Neimat, 4:46-49, 6:16-21, 7:7-10.) A database record is identified by a record key value supplied by a client. (*Id*., 8:28-41, 8:48-56.) "In general, each data record comprises two sections: a short record key identifying the record, and a remainder of information associated with that key." (*Id*., 8:27-30.)<br><br>Database records are contained in "buckets" which are synonymous with memory locations. (*Id*., 4:53-60, 5:30-42.) "In accordance with the invention, address space of memory locations available for storage is gradually increased as needed by a process of 'splitting' a respective predetermined one of the memory locations or 'buckets'." (*Id*., 13:27-32.)<br><br>Neimat's "predetermined performance limit" is when "memory location 0 becomes full." (*Id*., 13:26-27.)<br><br>When the memory is full, (and it therefore hits a predetermined performance limit), the transfer process commences: "In response to each collision, the respective predetermined memory location or 'bucket' is 'split' by creating a respective new memory location, and moving approximately half of the records from the respective predetermined memory location to the respective new memory location." (*Id*., 13:32-37.)<br><br>For example, in Neimat, the memory capacity is to store four records. (*Id*., Figure 3B.) When an attempt to store for data record key named 153 reaches server 0, location 0, the transfer is initiated as the memory is full. In this case, the server decides to transfer the named key 321 to server 1, location 1. Key 321 is received and stored by server 1 having previously been stored in server 0. (*Id*., 14:22-42.) |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| **[23]** The method of claim 17, wherein the performance criterion comprises an amount of available persistent storage space in the first location server. | To the extent this claim language can be understood, see above evidence regarding claim limitation 17.e.<br><br>As described with respect to claim 17, Neimat uses the amount of available storage space as the performance criteria regarding when to start its splitting process. (*See id.,* 13:26-43.) Neimat also discloses that this storage space can be "persistent." "Preferably, memory locations are in RAM, although they could alternatively be on disk as well." (*Id.,* 8:42-44.) |
| **[24]** The method of claim 17, wherein the performance criterion comprises a transaction rate limit. | To the extent this claim language can be understood, see above evidence regarding claim limitation 17.e.<br><br>In addition, Venkatasubramanian discloses "A Load Management Example" of load balancing data in a video delivery system using memory size, CPU load, and network and disk bandwidth.<br><br>**1.2  A Load Management Example**<br><br>Consider the example in Figure 2. Suppose that at some time instant, a video server that has two data sources $S_1$ and $S_2$ has sufficient storage to accommodate eight video objects on $S_1$ and two video objects on $S_2$. Further, suppose $S_1$ and $S_2$ have sufficient ==bandwidth to support three and eight additional requests,== respectively. Also, suppose that ten additional requests, eight for a video object $V_1$ and one each for video objects $V_2$ and $V_3$ are expected to arrive in the near future. Considering the disk space and bandwidth availabilities of the data sources, it is prudent to allocate $V_1$ to $S_2$ and $V_2$ and $V_3$ to $S_1$. On the other hand, if $V_2$ and $V_3$ were allocated to $S_2$, the video server would only be able to handle five of the ten requests - three for $V_1$ and one each for $V_2$ and $V_3$.<br><br>(Venkatasubramanian, 529.) |
| **[30]** The method of claim 17, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data | To the extent this claim language can be understood, see above evidence regarding claim limitation 17.e. |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit. | As described with respect to claim 17, Neimat uses the amount of available storage space as the performance criteria regarding when to start its splitting process. (*See* Neimat, 13:26-43.) Neimat discloses "monitoring the performance criterion." There would be no possible way to conduct the "splitting" described in Neimat unless the performance criterion was "monitored," such that the splitting would occur when the performance criterion was met.<br><br>Moreover, Neimat discloses a "split coordinator server" that "receives a collision message over the network from a server that includes a memory location that undergoes a collision." (*Id.*, 14:42-44.) Thus, the "split coordinator server" engages in "monitoring the performance criterion," *i.e.*, it monitors whether a collision occurs that results from the performance criterion being satisfied.<br><br>Neimat also discloses "automatically transferring." The "split coordinator server transmits a split message to a target server that includes the predetermined memory location identified by the coordinator pointer value." (*Id.*, 14:44-47.) "In response to the split message," the "target server performs" several steps that result in splitting. (*Id.*, 14:51-15:15.) Thus, the transfer takes place automatically, *i.e.*, the server is programmed to automatically conduct this operation. |
| [31.Preamble] A system for managing location information and providing location information to location queries, the system comprising: | See above evidence regarding the preamble of claim 1. |
| [31.a] a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity, the location server containing location information | See above evidence regarding claim 10.a. |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| corresponding to at least one entity and formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and | |
| **[31.b]** programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity. | See above evidence regarding claim 1.c. |

**Exhibit 3C: Invalidity Claim Chart Against U.S. Patent No. 7,233,978 in View of U.S. Patent No. 5,542,087 to Neimat**

AWS asserts that claims 1, 3, 6, 10, 14, 17, 23, 24, 30, and 31 of U.S. Patent No. 7,233,978 ("the '978 patent") are obvious in view of the combination of U.S. Patent No. 5,542,087 to Neimat ("Neimat"), DNS and, for claim 24, Venkatasubramanian. Neimat qualifies as prior art under pre-AIA 35 U.S.C. § 102(b), e.g., because it was issued on July 30, 1996, more than a year before the July 8, 1998 filing date of U.S. Application No. 09/111,896, Kove's earliest claimed priority date for the claims of the '978 patent. DNS qualifies as prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it was publicly available in May 1997, more than a year before Kove's claimed priority dates. Venkatasubramanian qualifies as prior art under pre-AIA 35 U.S.C. § 102(b), e.g., because it published in 1997, more than a year before Kove's claimed priority dates. The citations below are representative of where specifically in the item of prior art each element of each asserted claim may be found, and AWS reserves the right to rely on other portions of the prior art, versions of the cited documents, and/or evidence to show the invalidity of the asserted claims, including all evidence referenced in the accompanying contentions.

Furthermore, the following list includes examples of specifically where certain '978 patent claim elements are found in the Neimat.

- Client: Client
- Identifier: Record key value (e.g., value generated from a patient's name)
- Location information: Memory address
- Location server: File server
- Data: Information associated with a key
- Redirect message: Identifying and generating a second memory address

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| **[1.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>Neimat discloses that a client can use a record key value (e.g., a value generated from a patient's name) to access a memory address in a distributed computer network. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| | "The present invention provides a flexible and efficient data processing method and apparatus, which generate a correct memory address from a character or digit string such as a record key value, and which is adapted for use in distributed or parallel processing architectures such as computer networks, multiprocessing systems, and the like. The present invention provides fast storage and subsequent searching and retrieval of data records in data processing applications such as database applications." (4:40-49.)<br><br><br>FIG. 1<br><br>"The present invention is generally directed to data processing and in particular to a data processing method and apparatus for generating a correct memory address from a character or digit string such as a record key." (1:6-9.)<br><br>"One of the simple data storage and retrieval schemes designed by data processing pioneers is known as a basic hashing scheme. The basic hashing scheme has been used in many areas of data processing such as database addressing and data encryption. The basic hashing scheme will now be introduced with reference to the particular example of database addressing." (1:24-30.)<br><br>"Currently, more and more data base applications are mission critical and require fast storage and subsequent searching, and retrieval of unpredictably large amounts of incoming data. Database operations such as storing records, searching for |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| | records and retrieving records all require generating a correct memory address from a record key value. Accordingly, what is needed is a flexible and efficient data processing method and apparatus, which generates a correct memory address from a character or digit string such as a record key value, and which is adapted for use in distributed or parallel processing architectures such as computer networks, multiprocessing systems, and the like." (4:25-36.) |
| **[1.a]** a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>Neimat discloses client processor sites that generate memory addresses related to locations of records.<br><br>"From the key value, the one client processor generates a first memory address that identifies a first memory location as shown in block 202. The step of generating the first address includes the one client data processor retrieving a client index value, i', which is stored in a client memory coupled to the one client data processor. The one client data processor hashes the key value using a hashing function based upon the client index value, i', so as to produce the first address, $a_1$." (8:57-67.)<br><br>"Using the first memory address, the client data processor selects from the plurality of servers a server that includes the first memory location." (9:43-45.)<br>"By means of one of the client sites interacting with the server sites, a computer user is able to browse or search through the data records, or to insert, or retrieve data records as required. Although the computer user has no need to be aware of the exact manner in which data are stored, it is important for speed of operation that the clients and servers are able to locate and retrieve a particular data record as accurately and quickly as possible. In practice, this requires that the client and server sites interact to locate a desired data record in a fashion that is more direct than having to search through the entire database." (8:16-27.) |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| | "The computer network includes a plurality of data processor sites coupled so as to provide high speed data communication between the processor sites. FIG. 1 is a simplified block diagram of the computer network employed in conjunction with the preferred embodiment of the present invention. In accordance with a preferred embodiment of the present invention, a number of processor sites is large, for example in a range of 10 to 10,000 servers. It should be understood that although in the preferred embodiment the network includes the large number of processor sites, only three processor sites 101, 103, 105, are shown in FIG. 1 for the sake of simplicity. The processor sites are interconnected, preferably by a network cable 107, to provide the data communication between the processor sites. A first one of the processor sites includes a data processor 109, preferably a microprocessor, coupled to the network cable 107 through a network interface 111. The first one of the processor sites further includes memory 113, preferably random access memory, RAM, coupled to the data processor 109. As shown in FIG. 1, remaining processor sites 103, 105 include similar components, arranged in a similar manner, as those discussed with respect to the first processor site." (7:12-33.)<br><br>"The plurality of clients are coupled to the file servers by the network to provide client access to the database." (5:3-4.)<br><br>"Briefly and in general terms, the data processing method of the present invention includes providing a plurality of client data processors and a plurality of file servers, each server including at least a respective one memory location or 'bucket.'" (5:30-34.)<br><br>**Obviousness of Data Location Server:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. The Patents-in-Suit recognize that "location" is not a requirement for its data servers as "NDTP can be used for any application in which |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| | one-to-zero or one-to-many associations among strings are to be maintained and accessed on a network. In applications of NDTP other than distributed databases, the term identifier is likely to make sense in most cases, but the term location may not." ('170 patent, 20:30-37; '640 patent, 20:18-25; '978 patent, 25:11-14.) The Microfiche Appendix filed with the '170 and '640 patents provides software code that demonstrates that location is not necessary for the operation of the data servers. The concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science. In addition, the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science. One of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system. Furthermore, to the extent the prior art discloses the use of at least one location server, it would have been obvious to use more than one location server to achieve further benefits. *See* MPEP § 2144.VI.B. (Obviousness of Duplication of Parts). One skilled in the art would also be familiar with DNS, which relies on a network of location servers to map host names to internet addresses. Therefore, it would have been obvious to one of skill to employ data location servers in Neimat.<br><br>**Obviousness of Data in a Network Pertaining to the Entity:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, RFC1034 discloses a DNS protocol for implementing domain name facilities. (*Id.*, 1.)<br><br>"The domain system also defines procedures for caching retrieved data and for periodic refreshing of data defined by the system administrator." (*Id.*, 5.) |

43

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| | "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs). The order of RRs in a set is not significant, and need not be preserved by name servers, resolvers, or other parts of the DNS.<br>When we talk about a specific RR, we assume it has the following:<br>owner          which is the domain name where the RR is found.<br>type            which is an encoded 16 bit value that specifies the type of the resource in this resource record. Types refer to abstract resources." (*Id.*, 11-12.)<br><br>"RRs are represented in binary form in the packets of the DNS protocol, and are usually represented in highly encoded form when stored in a name server or resolver." (*Id.*, 13.)<br><br>BIND 8 supports DNS dynamic updates. This feature "permits authorized updaters to add and delete resource records from a zone for which the server is authoritative."  (DNS and BIND, 231.) "Dynamic update permits more than the simple addition and deletion of records. Updaters can add or delete individual resource records, delete RRsets …, or even delete all records associated with a given name." (*Id.*) "For the most part, dynamic update functionality is used by programs … [that] use the *ns_update()* routine to create update messages and send them to an authoritative server for the zone that contains the domain name." (*Id.*, 231-232.) |
| **[1.b]** a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and | See above evidence regarding claim limitation 1.a. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| **[1.c]** programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>"From the key value, the one client generates a first memory address, which identifies a first memory location or 'bucket'. The one client selects from the plurality of servers a server that includes the first memory location. The one client then transmits the key value as part of a message to the server that includes the first memory location. The server that includes the first memory location determines whether the first address is the correct address." (5:35-43.)<br><br>"If the first memory address is not the correct memory address, then, from the key value, the server generates a second memory address, $a_2$, that identifies a second memory location, as shown in block 208 of the flow chart of FIG. 2. The step of generating the second address by means of the server includes: making the second address, $a_2$, equal to the first hash value, $h_1$ (C); decrementing the first server index value, J, to produce a decremented first server index value, J-1; hashing the key value using a hashing function based upon the decremented first server index value to produce a second hash value, $h_2$ (C); and changing the second address so as to be equal to the second hash value if the second hash value is greater than the first address, and if the second hash value is less than the first hash value." (10:13-27.) |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
|  | <br><br>**Obviousness of Data in a Network Pertaining to the Entity:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, RFC1034 discloses a DNS protocol for implementing domain name facilities. (*Id.*, 1.)<br><br>"The domain system also defines procedures for caching retrieved data and for periodic refreshing of data defined by the system administrator." (*Id.*, 5.) |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
|  | "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs). The order of RRs in a set is not significant, and need not be preserved by name servers, resolvers, or other parts of the DNS. When we talk about a specific RR, we assume it has the following: owner          which is the domain name where the RR is found. type            which is an encoded 16 bit value that specifies the type of the resource in this resource record. Types refer to abstract resources." (*Id.*, 11-12.)<br><br>"RRs are represented in binary form in the packets of the DNS protocol, and are usually represented in highly encoded form when stored in a name server or resolver." (*Id.*, 13.)<br><br>BIND 8 supports DNS dynamic updates. This feature "permits authorized updaters to add and delete resource records from a zone for which the server is authoritative." (DNS and BIND, 231.) "Dynamic update permits more than the simple addition and deletion of records. Updaters can add or delete individual resource records, delete RRsets …, or even delete all records associated with a given name." (*Id.*) "For the most part, dynamic update functionality is used by programs … [that] use the *ns_update()* routine to create update messages and send them to an authoritative server for the zone that contains the domain name." (*Id.*, 231-232.) |
| **[3]** The system of claim 1, wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>"However, if the first address is not the correct address, then the following steps are performed in accordance with the method of the present invention. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query. | From the key value, the server that includes the first memory location generates a second memory address, which identifies a second memory location or 'bucket'. The server that includes the first memory location then selects from the plurality of servers a server that includes the second memory location. The server that includes the first memory location then transmits the key value as part of a message to the server that includes the second memory location.<br><br>The server that includes the second memory location determines whether the second address is the correct address. Quite often, if the first address is not the correct address then the second address is the correct address. However, if the second address is not the correct address, then the server that includes the second memory location generates a third memory address. In accordance with the teachings of the present invention discussed greater detail later herein, the third address is certain to be the correct address if neither one of the first or second addresses is the correct address." (5:42-67.) |
| [6] The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>"From the key value, the one client processor generates a first memory address that identifies a first memory location as shown in block 202. The step of generating the first address includes the one client data processor retrieving a client index value, i', which is stored in a client memory coupled to the one client data processor. The one client data processor hashes the key value using a hashing function based upon the client index value, i', so as to produce the first address, $a_1$." (8:57-67.)<br><br>"From the key value, the server determines whether the first memory address is the correct memory address, as shown in block 206. In the preferred embodiment, the step of determining whether the first address is the correct address includes retrieving a first server index value, J, from the first memory location, hashing the |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| | key value using a hashing function based upon the first server index value to produce a first hash value, and comparing the first address to the first hash value to determine whether the first address is the correct address." (9:56-65.)

"If the first memory address is not the correct memory address, then, from the key value, the server generates a second memory address, $a_2$, that identifies a second memory location, as shown in block 208 of the flow chart of FIG. 2. The step of generating the second address by means of the server includes: making the second address, $a_2$, equal to the first hash value, $h_1$ (C); decrementing the first server index value, J, to produce a decremented first server index value, J-1; hashing the key value using a hashing function based upon the decremented first server index value to produce a second hash value, $h_2$ (C); and changing the second address so as to be equal to the second hash value if the second hash value is greater than the first address, and if the second hash value is less than the first hash value." (10:13-26.) |
| [10.Preamble] A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | See above evidence regarding the preamble of claim 1. |
| [10.a] a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.

See above evidence regarding claim limitation 1.a. In addition, Neimat discloses a distributed topology of servers, each with a unique set of information.

"Accordingly, what is needed is a flexible and efficient data processing method and apparatus, which generates a correct memory address from a character or digit string such as a record key value, and which is adapted for use in distributed or parallel processing architectures such as computer networks, multiprocessing systems, and the like." (4:31-36.) |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| | "The servers are coupled, preferably by a network, so that each server can send records to other servers." (4:63-65.)

"In accordance with distributed processing principles of the preferred embodiment, data records reside in memory locations at sites of the network. For storing records, it is more efficient to use memory locations in random access memory, RAM, of another processor site of the network than to use memory locations in a local disk. Accordingly, in the preferred embodiment, storage of records is distributed in RAM at various network sites, providing efficient performance of very large database operations that are not feasible in practice within the traditional database architecture." (7:49-59.)

See also Figures 1 and 4. |
| **[10.b]** programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier. | See above evidence regarding claim limitation 1.c and claim 3. |
| **[14.Preamble]** A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location | See above evidence regarding the preamble of claim 1. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising: | |
| **[14.a]** receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>"If any one of the clients initiates a database operation such as inserting a record into the database, searching the database to determine whether a particular record are present, or retrieving a record, the client initiating the operation provides a record key value. From the record key value, the method of the present invention provides a correct memory address needed to perform the database operation." (5:23-29.)<br><br>"The key value is generated by means of any one of the client data processors. From the key value, the one client generates a first memory address, which identifies a first memory location or 'bucket'." (5:34-37.)<br><br>**Obviousness of Data Location Server:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. The Patents-in-Suit recognize that "location" is not a requirement for its data servers as "NDTP can be used for any application in which one-to-zero or one-to-many associations among strings are to be maintained and accessed on a network. In applications of NDTP other than distributed databases, the term identifier is likely to make sense in most cases, but the term location may not." ('170 patent, 20:30-37; '640 patent, 20:18-25; '978 patent, 25:11-14.) The Microfiche Appendix filed with the '170 and '640 patents provides software code that demonstrates that location is not necessary for the operation of the data servers. The concept of storing information about the location of data in a |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| | distributed network is well known, even fundamental, in the field of computer science. In addition, the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science. One of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system. Furthermore, to the extent the prior art discloses the use of at least one location server, it would have been obvious to use more than one location server to achieve further benefits. *See* MPEP § 2144.VI.B. (Obviousness of Duplication of Parts). One skilled in the art would also be familiar with DNS, which relies on a network of location servers to map host names to internet addresses. Therefore, it would have been obvious to one of skill to employ data location servers in Neimat. |
| **[14.b]** sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and | See above evidence regarding claim limitation 1.c and claim 3. |
| **[14.c]** sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query. | See above evidence regarding claim limitation 1.c and claim 3. |
| **[17.Preamble]** A method of scaling at least one of capacity and transaction rate capability in a location server in a system having a plurality of location servers for storing and retrieving | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| location information, wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information, the method comprising: | See above evidence regarding the preamble of claim 1 and claim limitation 1.a. In addition, Neimat discloses a method of scaling.<br><br>Neimat discloses a method of scaling at least the capacity of a system "to a size limited only by data storage capacity of the servers." (5:18-20.)<br><br>"The addressable storage space available to the database expands linearly, one memory location or 'bucket' at a time, to a size limited only by data storage capacity of the servers. Accordingly, addressable storage space available to the database expands to occupy new servers linearly, one server at a time, and only when servers already used are efficiently loaded." (5:16-22.) |
| [17.a] providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information related to the identifier; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>Neimat discloses that "servers are coupled, preferably by a network, so that each server can send records to other servers" via an appropriate transfer protocol.<br><br>"By means of one of the client sites interacting with the server sites, a computer user is able to browse or search through the data records, or to insert, or retrieve data records as required." (8:16-19.)<br><br>"Over the network, the one client data processor transmits the key value to the server that includes the first memory location, as shown in block 204 of the flow chart of FIG. 2." (9:52-55.) |
| [17.b] storing location information formatted according to the transfer protocol at a first location server; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| | "In the preferred embodiment, the first memory location stores a static table which maps a respective memory address of each memory location to a respective server address." (10:50-53.)<br><br>"As shown in FIG. 3A, it is preferred that the database storage space initially includes a single memory location 0, which is included in server 0. Accordingly, in the preferred embodiment, one is the initial number of memory locations available for record storage before any expansion of the addressable storage space, so N=1. Since memory location 0 is not initially completely filled with data records, records initially provided by the autonomous clients are stored in memory location 0. If any one of the clients inserts a record into the database, the one client generates a key value of the record, the correct address is generated from the key value in accordance with the method of the invention discussed previously herein with respect to the flow chart of FIG. 2, and the record is stored at a memory location identified by the correct address." (12:30-44.)<br><br>**Obviousness of Data Location Server:** To the extent that Kove contends that Neimat does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. The Patents-in-Suit recognize that "location" is not a requirement for its data servers as "NDTP can be used for any application in which one-to-zero or one-to-many associations among strings are to be maintained and accessed on a network. In applications of NDTP other than distributed databases, the term identifier is likely to make sense in most cases, but the term location may not." ('170 patent, 20:30-37; '640 patent, 20:18-25; '978 patent, 25:11-14.) The Microfiche Appendix filed with the '170 and '640 patents provides software code that demonstrates that location is not necessary for the operation of the data servers. The concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science. In addition, the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| | information that is well known in computer science. One of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system. Furthermore, to the extent the prior art discloses the use of at least one location server, it would have been obvious to use more than one location server to achieve further benefits. *See* MPEP § 2144.VI.B. (Obviousness of Duplication of Parts). One skilled in the art would also be familiar with DNS, which relies on a network of location servers to map host names to internet addresses. Therefore, it would have been obvious to one of skill to employ data location servers in Neimat. |
| **[17.c]** receiving an identifier and a location relevant to the identifier at the first location server; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>"As further exemplary illustration in FIG. 3B, the clients insert four records into the database by generating key values of 10, 32, 321, and 216, generating the correct memory address of Location 0, and storing the records in Location 0. Accordingly, FIG. 3B shows four data records stored in Location 0." (14:22-27.) |
| **[17.d]** storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, and to the extent this claim language can be understood, then Neimat discloses this element, for example, as described above with respect to claim limitations 17.b and 17.c, and below.<br><br>"The addressable storage space available to the database expands linearly, one memory location or 'bucket' at a time, to a size limited only by data storage capacity of the servers. Accordingly, addressable storage space available to the database expands to occupy new servers linearly, one server at a time, and only when servers already used are efficiently loaded. For the purposes of this discussion only, it is assumed that each of the data locations has a storage capacity of four records. Accordingly, location 0 has become full and a 'collision' occurs if there is an attempt to store a fifth record at location 0. For the sake of this |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| | discussion only, it is assumed that one of the Clients provides the fifth record, which has a key value, C=153, and which triggers the collision." (14:28-41.) |
| **[17.e]** transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, and to the extent this claim language can be understood, then Neimat discloses this element, for example, as described below.<br><br>"If memory location 0 becomes full, then what is known as a 'collision' occurs. Collisions are well known to those with ordinary skill in the art. In accordance with the invention, address space of storage memory locations available for storage is gradually increased as needed by a process of 'splitting' a respective predetermined one of the memory locations or 'buckets'. In response to each collision, the respective predetermined memory location or 'bucket' is 'split' by creating a respective new memory location, and moving approximately half of the records from the respective predetermined memory location to the respective new memory location." (13:26-37.)<br><br>"In a general case, the split coordinator server receives a collision message over the network from a server that includes a memory location that undergoes a collision. In response to the collision message, the split coordinator server transmits a split message to a target server that includes the predetermined memory location identified by the coordinator pointer value, n." (14:42-48.) |
| **[23]** The method of claim 17, wherein the performance criterion comprises an amount of available persistent storage space in the first location server. | To the extent this claim language can be understood, see above evidence regarding claim limitation 17.e.<br><br>As described with respect to claim 17, Neimat uses the amount of available storage space as the performance criteria regarding when to start its splitting process. (*See id.*, 13:26-43.) Neimat also discloses that this storage space can be "persistent." "Preferably, memory locations are in RAM, although they could alternatively be on disk as well." (*Id.*, 8:42-44.) |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| **[24]** The method of claim 17, wherein the performance criterion comprises a transaction rate limit. | To the extent this claim language can be understood, see above evidence regarding claim limitation 17.e.<br><br>**Obviousness of Load Balancing:** To the extent that Kove contends that Neimat does not disclose this limitation, the subject matter as a whole of this claim would have been obvious to one of skill in the art before the invention. The concept of transferring information from one server to another when the server is full, for example, is obvious and conventional in the field of computer science. One of skill would have been motivated to do so, for example, for the obvious benefit of improving system performance, speed, and efficiency. Therefore, it would have been obvious to one of skill to employ redirection in Neimat, and further in view of Venkatasubramanian.<br><br>Venkatasubramanian discloses "A Load Management Example" of load balancing data in a video delivery system using memory size, CPU load, and network and disk bandwidth.<br><br>**1.2  A Load Management Example**<br><br>    Consider the example in Figure 2. Suppose that at some time instant, a video server that has two data sources $S_1$ and $S_2$ has sufficient storage to accommodate eight video objects on $S_1$ and two video objects on $S_2$. Further, suppose $S_1$ and $S_2$ have sufficient ==bandwidth to support three and eight additional requests==, respectively. Also, suppose that ten additional requests, eight for a video object $V_1$ and one each for video objects $V_2$ and $V_3$ are expected to arrive in the near future. Considering the disk space and bandwidth availabilities of the data sources, it is prudent to allocate $V_1$ to $S_2$ and $V_2$ and $V_3$ to $S_1$. On the other hand, if $V_2$ and $V_3$ were allocated to $S_2$, the video server would only be able to handle five of the ten requests - three for $V_1$ and one each for $V_2$ and $V_3$.<br><br>(Venkatasubramanian, 529.) |
| **[30]** The method of claim 17, wherein transferring a portion of the identifiers and | To the extent this claim language can be understood, see above evidence regarding claim limitation 17.e. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit. | |
| **[31.Preamble]** A system for managing location information and providing location information to location queries, the system comprising: | See above evidence regarding the preamble of claim 1. |
| **[31.a]** a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity, the location server containing location information corresponding to at least one entity and formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Neimat discloses this element, for example, as described below.<br><br>See above evidence regarding claim limitation 1.a. In addition, Neimat discloses a database application.<br><br>"The present invention provides fast storage and subsequent searching and retrieval of data records in data processing applications such as database applications." (Abstract, 4:46-49, 20:4-7, see also, 7:2-7, 8:33-37 (describing medical database application).) |
| **[31.b]** programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising locations associated with the desired entity, wherein the location server returns the location | See above evidence regarding claim 1.c. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian |
|---|---|
| message if the location server contains location information for the desired entity. | |

**Exhibit 3D: Invalidity Claim Chart Against U.S. Patent No. 7,233,978 in View of U.S. Patent No. 6,212,521 to Minami**

AWS asserts that claims 1, 3, 6, 10, 14, 17, 23, 24, 30, and 31 of U.S. Patent No. 7,233,978 ("the '978 patent") are obvious in view of the combination of U.S. Patent No. 6,212,521 to Minami ("Minami"), DNS and, for claims 17, 23, 24, and 30, Neimat, and for claim 24, Venkatasubramanian. Minami qualifies as prior art under pre-AIA 35 U.S.C. § 102(e), e.g., because it was filed on March 27, 1998, before the July 8, 1998 filing date of U.S. Application No. 09/111,896, Kove's earliest claimed priority date for claims of the '978 patent, and issued on April 3, 2001. DNS qualifies as prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it was publicly available in May 1997, more than a year before Kove's claimed priority dates. Neimat qualifies as prior art under pre-AIA 35 U.S.C. § 102(b), e.g., because it was issued on July 30, 1996, more than a year before Kove's claimed priority dates. Venkatasubramanian qualifies as prior art under pre-AIA 35 U.S.C. § 102(b), e.g., because it published in 1997, more than a year before Kove's claimed priority dates. The citations below are representative of where specifically in the item of prior art each element of each asserted claim may be found, and AWS reserves the right to rely on other portions of the prior art, versions of the cited documents, and/or evidence to show the invalidity of the asserted claims, including all evidence referenced in the accompanying contentions.

Furthermore, the following list includes examples of specifically where certain '978 patent claim elements are found in Minami.

- Client: Terminal
- Identifier: Search keyword
- Location information: Primary server identifier
- Location server: Primary server
- Data: Data
- Redirect message:  Data Retrieval Process (e.g., D-2-2)

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| **[1.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>In general, Minami discloses that a terminal can send a search keyword to a primary server that has a primary hash function unit that computes a primary server identifier. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | "A data management system that allows client terminals on a network to register records with search keywords to *distributed data management servers* and to *retrieve them* by entering a specific search keyword." (Abstract)<br><br><br><br>FIG. 3<br><br>"Taking the above into consideration, a first object of the present invention is to provide a data management system which relieves processing loads imposed on individual data management servers by distributing data registration and retrieval tasks and reducing the amount of data maintained in each server. Moreover, a second object of the present invention is to provide a primary server for use in the above data management system; a third object of the present invention is to provide a secondary server for use in the above data management system." (3:38-47.) |
| **[1.a]** a first location server containing a first set of location information corresponding to at least one entity, the location information | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity | "The entire coverage area of the network is divided into a plurality of primary areas, and each primary area is further subdivided into a plurality of secondary areas. ***Primary and secondary servers are deployed over the network***, one for each individual primary area and secondary area, respectively." (Abstract, see also 7:43-50, Fig. 1.)<br><br><br>FIG. 1<br><br>"FIG. 20--Regular data storage, local replicated data storage, remote replicated data storage, local backup data storage, and remote backup data storage. (All those five storage areas are used to store search keywords and data objects to be retrieved with specific keywords, along with related server identifiers. This structure is common to primary servers and secondary servers.)" (12:49-56, Fig. 20.) |

62

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | COMMON DATA STRUCTURE OF REGULAR DATA STORAGE, LOCAL REPLICATED DATA STORAGE, REMOTE REPLICATED DATA STORAGE, LOCAL BACKUP DATA STORAGE, AND REMOTE BACKUP DATA STORAGE <br><br> DATA COUNTER <br> SEARCH KEYWORD (=IP ADDRESS) <br> DATA OBJECT TO BE RETRIEVED (=ATM ADDRESS) <br> SERVER IDENTIFIER <br> SEARCH KEYWORD (=IP ADDRESS) <br> DATA OBJECT TO BE RETRIEVED (ATM ADDRESS) <br> SERVER IDENTIFIER <br><br> FIG. 20 <br><br> "To accomplish the first object, according to the present invention, there is provided a data management system which allows terminals on a network to register records with search keywords and to retrieve the records by entering a specific search keyword. This system comprises the following elements: <br> a plurality of primary areas which constitute an entire coverage area of the network; <br> a plurality of secondary areas which constitute each of the primary areas; |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | a plurality of primary servers, one for each primary area, which are uniquely identified in the network by primary server identifiers assigned thereto; a plurality of secondary servers, one for each secondary area, which are uniquely identified in each primary area by secondary server identifiers assigned thereto; a primary transformation unit, disposed in each primary server, for processing a given search keyword to derive a specific primary server identifier indicating one of the primary servers that governs a particular primary area where the secondary server having a record corresponding to the given search keyword is located; and a secondary transformation unit, disposed in each primary server and each secondary server, for processing a given search keyword to derive a specific secondary server identifier indicating one of the secondary servers that is located in the same primary area and has a record corresponding to the given search keyword." (3:48-4:9.)<br><br>**Obviousness of Data Location Server:** To the extent that Kove contends that Minami does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. The Patents-in-Suit recognize that "location" is not a requirement for its data servers as "NDTP can be used for any application in which one-to-zero or one-to-many associations among strings are to be maintained and accessed on a network. In applications of NDTP other than distributed databases, the term identifier is likely to make sense in most cases, but the term location may not." ('170 patent, 20:30-37; '640 patent, 20:18-25; '978 patent, 25:11-14.) The Microfiche Appendix filed with the '170 and '640 patents provides software code that demonstrates that location is not necessary for the operation of the data servers. The concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science. In addition, the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science. One of skill would have been motivated to use such a method, for example, to use less space or memory in the |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system. Furthermore, to the extent the prior art discloses the use of at least one location server, it would have been obvious to use more than one location server to achieve further benefits. *See* MPEP § 2144.VI.B. (Obviousness of Duplication of Parts). One skilled in the art would also be familiar with DNS, which relies on a network of location servers to map host names to internet addresses. Therefore, it would have been obvious to one of skill to employ data location servers in Minami. |
| | **Obviousness of Data in a Network Pertaining to the Entity:** To the extent that Kove contends that Minami does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, RFC1034 discloses a DNS protocol for implementing domain name facilities. (*Id.*, 1.) |
| | "The domain system also defines procedures for caching retrieved data and for periodic refreshing of data defined by the system administrator." (*Id.*, 5.) |
| | "A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs). The order of RRs in a set is not significant, and need not be preserved by name servers, resolvers, or other parts of the DNS. When we talk about a specific RR, we assume it has the following: owner     which is the domain name where the RR is found. type      which is an encoded 16 bit value that specifies the type of the resource in this resource record. Types refer to abstract resources." (*Id.*, 11-12.) |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
|  | "RRs are represented in binary form in the packets of the DNS protocol, and are usually represented in highly encoded form when stored in a name server or resolver." (*Id*., 13.)<br><br>BIND 8 supports DNS dynamic updates. This feature "permits authorized updaters to add and delete resource records from a zone for which the server is authoritative." (DNS and BIND, 231.) "Dynamic update permits more than the simple addition and deletion of records. Updaters can add or delete individual resource records, delete RRsets …, or even delete all records associated with a given name." (*Id*.) "For the most part, dynamic update functionality is used by programs … [that] use the *ns_update()* routine to create update messages and send them to an authoritative server for the zone that contains the domain name." (*Id*., 231-232.) |
| **[1.b]** a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and | See above evidence regarding claim limitation 1.a. |
| **[1.c]** programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>Minami describes data retrieval. (19:35-23:37.) For example, "(D-1-2) The secondary server 110 receives this request message through its communication controller, and executes a process of FIG. 42 by activating its data retrieval unit that is responsible for the data retrieval message class. Since the received message is identified as a data retrieval request message, the data retrieval unit takes a process flow of F423, whose main part is shown in FIG. 43. In F423, the data retrieval unit extracts a search keyword '5' from the request message, saves this search keyword and the connection identifier for the terminal 41 for later use, and then searches the regular data storage for a record relevant to the extracted search |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | keyword '5.' In CASE (1), this search successfully ends up with a record containing 'IP ADDRESS=5' (search keyword) and 'ATM ADDRESS=55' (retrieved data). Then, according to the flowchart of FIG. 45, the search report unit produces a 'data found' message with the format of FIG. 16 to inform the requesting terminal 41 of the successful search result. It obtains the connection to the terminal 41 from the search keyword '5' and transmits the 'data found' message to the requesting terminal 41 by activating the communication controller." (19:58-20:11.)<br><br>**Obviousness of Data in a Network Pertaining to the Entity:** To the extent that Kove contends that Minami does not disclose this claim limitation, the subject matter as a whole of this claim, including this limitation, would have been obvious to one of skill in the art before the invention. For example, RFC1034 discloses a DNS protocol for implementing domain name facilities. (*Id*., 1.)<br><br>"The domain system also defines procedures for caching retrieved data and for periodic refreshing of data defined by the system administrator." (*Id*., 5.)<br><br>"A domain name identifies a node. Each node has a set of resource information, which may be empty. The set of resource information associated with a particular name is composed of separate resource records (RRs). The order of RRs in a set is not significant, and need not be preserved by name servers, resolvers, or other parts of the DNS.<br>When we talk about a specific RR, we assume it has the following:<br>owner          which is the domain name where the RR is found.<br>type            which is an encoded 16 bit value that specifies the type of the resource in this resource record. Types refer to abstract resources." (*Id*., 11-12.) |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | "RRs are represented in binary form in the packets of the DNS protocol, and are usually represented in highly encoded form when stored in a name server or resolver." (*Id.*, 13.) <br><br> BIND 8 supports DNS dynamic updates. This feature "permits authorized updaters to add and delete resource records from a zone for which the server is authoritative." (DNS and BIND, 231.) "Dynamic update permits more than the simple addition and deletion of records. Updaters can add or delete individual resource records, delete RRsets …, or even delete all records associated with a given name." (*Id.*) "For the most part, dynamic update functionality is used by programs … [that] use the *ns_update()* routine to create update messages and send them to an authoritative server for the zone that contains the domain name." (*Id.*, 231-232.) |
| **[3]** The system of claim 1, wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below. <br><br> Minami describes data retrieval. (19:35-23:37.) For example, "(D-2-2) The secondary server 120 receives this data retrieval request message through its communication controller, and initiates a process of FIG. 42 by activating its data retrieval unit that deals with the data retrieval message class. Since the received message is identified as a data retrieval request message, the data retrieval unit takes a process flow of F423, whose main part is shown in FIG. 43. In F423, the data retrieval unit first extracts a search keyword '5' from the request message, saves this search keyword and the connection identifier for the terminal 50 for later use, and then searches its own regular data storage for a record relevant to the extracted search keyword '5.' In this CASE (2), however, this search ends up with no matches. The data retrieval unit then applies its secondary hash function to the search keyword '5,' thus obtaining a secondary hash value of '3.' Since this secondary hash value '3' does not match with its own secondary server identifier '2,' the secondary server 120 produces a local replicated data retrieval request |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | message (FIG. 13) on the basis of the data retrieval request message in process. This new message, having a value of '2' in its secondary server identifier field, is transmitted by the communication controller to another secondary server 130 whose secondary server identifier is known to be '3.'" (20:27-50.)<br><br>"A primary hash function unit 109 and secondary hash function unit 111 are used to obtain a primary and secondary server identifiers, respectively, from a given search keyword." (10:43-46.)<br><br>"As a background knowledge, the following few paragraphs present a brief description of hash functions used in the present embodiment, assuming the area division illustrated in FIG. 2. Generally, hash function is a transformation that takes a variable-size input (a search keyword in the present case) and returns a fixed-size string, which is called the hash value. In the present invention, the data management servers use two kinds of hash functions called "primary hash function" and "secondary hash function." It is noted here that all primary servers commonly use the same primary hash function, while each primary server and its subordinate secondary servers (i.e., secondary servers in that server's primary area) share a common same secondary hash function of their own. In other words, the primary and secondary servers in different primary areas use different secondary hash functions." (14:6-20.) |
| **[6]** The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table. | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>"The primary hash function, commonly used by the primary servers, produces the primary hash value by processing a given search keyword in the following way, based on the number of primary areas (='3') and the number of secondary areas (='3'). First, the given search keyword, now being treated as a binary value, is divided by '3.' A constant value of '1' is then added to the remainder of that division, thus obtaining the primary hash value. The secondary hash function |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | commonly used in the primary area of the primary server 10 divides a given search keyword by 2 (i.e., applying a 1-bit right-shift operation to the binary dividend) and further divides the quotient by 3. Lastly, a constant value of 1 is added to the remainder of the second division, thereby yielding the secondary hash value. The secondary hash function commonly used in the primary server 20's primary area divides a given search keyword by '4' (i.e., applying a 2-bit right-shift operation to the binary dividend) and further divides the quotient by 3. Then, a constant value of 1 is added to the remainder of the second division, thereby yielding the secondary hash value. Likewise, the secondary hash function commonly used in the primary server 30's primary area first divides a given search keyword by '8' (i.e., applying a 3-bit right-shift operation to the binary dividend), further divides the quotient by '3,' and adds a constant value of '1' to the remainder of the second division, thereby yielding the secondary hash value." (14:21-47.) |
| **[10.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | See above evidence regarding the preamble of claim 1. |
| **[10.a]** a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and | See above evidence regarding claim limitation 1.a.  In addition, Minami discloses a plurality of servers arranged in a cluster topology such that each server contains a unique set of information, as shown in Figure 4, below.  "FIG. 4 is a diagram which shows a configuration of a network where permanent virtual connections (PVCs) have been established between servers." (5:1-3, see also 12:6-7.) |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| |  FIG. 4 |
| **[10.b]** programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier. | See above evidence regarding claim limitation 1.c and claim 3. |
| **[14.Preamble]** A method of handling location queries in a network, the network comprising a | See above evidence regarding the preamble of claim 1. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising: | |
| [14.a] receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location; | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>"(D-1-1) Due to the lack of knowledge about the destination ATM address, the terminal 41 executes a data retrieval process of FIG. 22. That is, the data retrieval request unit creates a data retrieval request message with a search keyword value of "5" and activates the communication controller to send the message to the secondary server 110." (19:52-57, see also, 20:20-26, 21:21-27.) |
| [14.b] sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and | See above evidence regarding claim limitation 1.c and claim 3. |
| [14.c] sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query. | See above evidence regarding claim limitation 1.c and claim 3. |
| [17.Preamble] A method of scaling at least one of capacity and transaction rate capability in a | See above evidence regarding the preamble of claim 1 and claim limitation 1.a. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| location server in a system having a plurality of location servers for storing and retrieving location information, wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information, the method comprising: | Minami discloses a "data management system" that allows for the scaling of at least one of capacity and transaction rate in order to "relieve[] processing loads imposed on individual data management servers by distributing data registration and retrieval tasks and reducing the amount of data maintained on each server." (3:38-47.) |
| **[17.a]** providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information related to the identifier; | See above evidence regarding claim 1.a. |
| **[17.b]** storing location information formatted according to the transfer protocol at a first location server; | See above evidence regarding claim 1.a. |
| **[17.c]** receiving an identifier and a location relevant to the identifier at the first location server; | See above evidence regarding claim 1.c. |
| **[17.d]** storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and | See above evidence regarding claim 1.c. |
| **[17.e]** transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. | **Obviousness of Load Balancing:** To the extent that Kove contends that Minami does not disclose this limitation, the subject matter as a whole of this claim would have been obvious to one of skill in the art before the invention. The concept of transferring information from one server to another when the server is full, for example, is obvious and conventional in the field of computer science. One of skill would have been motivated to do so, for example, for the obvious benefit of improving system performance, speed, and efficiency. Therefore, it would have |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | been obvious to one of skill to employ redirection in Minami, and further in view of Neimat.<br><br>Neimat states: "If memory location 0 becomes full, then what is known as a 'collision' occurs. Collisions are well known to those with ordinary skill in the art. In accordance with the invention, address space of memory locations available for storage is gradually increased as needed by a process of 'splitting' a respective predetermined one of the memory locations or 'buckets'. In response to each collision, the respective predetermined memory location or 'bucket' is 'split' by creating a respective new memory location, and moving approximately half of the records from the respective predetermined memory location to the respective new memory location." (13:26-37.)<br><br>Neimat further explains: "In a general case, the split coordinator server receives a collision message over the network from a server that includes a memory location that undergoes a collision. In response to the collision message, the split coordinator server transmits a split message to a target server that includes the predetermined memory location identified by the coordinator pointer value, n." (14:42-48.) |
| **[23]** The method of claim 17, wherein the performance criterion comprises an amount of available persistent storage space in the first location server. | To the extent this claim language can be understood, see above evidence regarding claim limitation 17.e.<br><br>As described with respect to claim 17, Neimat uses the amount of available storage space as the performance criteria regarding when to start its splitting process. (*See id.,* 13:26-43.) Neimat also discloses that this storage space can be "persistent." "Preferably, memory locations are in RAM, although they could alternatively be on disk as well." (*Id.,* 8:42-44.) |
| **[24]** The method of claim 17, wherein the performance criterion comprises a transaction rate limit. | To the extent this claim language can be understood, see above evidence regarding claim limitation 17.e. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| | In addition, Venkatasubramanian discloses "A Load Management Example" of load balancing data in a video delivery system using memory size, CPU load, and network and disk bandwidth.<br><br>**1.2 A Load Management Example**<br><br>Consider the example in Figure 2. Suppose that at some time instant, a video server that has two data sources $S_1$ and $S_2$ has sufficient storage to accommodate eight video objects on $S_1$ and two video objects on $S_2$. Further, suppose $S_1$ and $S_2$ have sufficient bandwidth to support three and eight additional requests, respectively. Also, suppose that ten additional requests, eight for a video object $V_1$ and one each for video objects $V_2$ and $V_3$ are expected to arrive in the near future. Considering the disk space and bandwidth availabilities of the data sources, it is prudent to allocate $V_1$ to $S_2$ and $V_2$ and $V_3$ to $S_1$. On the other hand, if $V_2$ and $V_3$ were allocated to $S_2$, the video server would only be able to handle five of the ten requests - three for $V_1$ and one each for $V_2$ and $V_3$.<br><br>(Venkatasubramanian, 529.) |
| [30] The method of claim 17, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit. | To the extent this claim language can be understood, see above evidence regarding claim limitation 17.e. |
| [31.Preamble] A system for managing location information and providing location information to location queries, the system comprising: | See above evidence regarding the preamble of claim 1. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian |
|---|---|
| **[31.a]** a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity, the location server containing location information corresponding to at least one entity and formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and | If this claim language is interpreted to cover the Accused Products, as Kove appears to contend, then Minami discloses this element, for example, as described below.<br><br>See above evidence regarding claim limitations 1.a and 1.c. |
| **[31.b]** programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity. | See above evidence regarding claim 1.c. |