# Exhibit 4

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,034 | 11/19/2021 | 7233978 | | 3927 |

184647          7590          06/28/2022

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway
Suite 300
Redwood City, CA 94065

| EXAMINER |
|---|
| CAMPBELL, JOSHUA D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/28/2022 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**Ex. 11 Page 1**



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

FISCH SIGLER LLP
5301 WISCONSIN AVENUE, NW
FOURTH FLOOR
WASHINGTON, DC 20015

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,034* .

PATENT UNDER REEXAMINATION *7233978* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

Ex. 11 Page 2

| *Office Action in Ex Parte Reexamination* | **Control No.** 90/019,034 | **Patent Under Reexamination** 7233978 | |
|---|---|---|---|
| | **Examiner** JOSHUA D CAMPBELL | **Art Unit** 3992 | **AIA (FITF) Status** No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a. ☐ Responsive to the communication(s) filed on _____.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b. ☐ This action is made FINAL.

c. ☑ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire 2 month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).** If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

  1. ☐ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.

  2. ☐ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____.

Part II    SUMMARY OF ACTION

  1a. ☑ Claims 1,3,6,10,14,17,23-24 and 30-31 are subject to reexamination.

  1b. ☑ Claims 2,4-5,7-9,11-13,15-16,18-22 and 25-29 are not subject to reexamination.

  2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

  3. ☑ Claims 17,23-24 and 30 are patentable and/or confirmed.

  4. ☑ Claims 1,3,6,10,14 and 31 are rejected.

  5. ☐ Claims _____ are objected to.

  6. ☐ The drawings, filed on _____ are acceptable.

  7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b) ☐ disapproved.

  8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. 119(a)-(d) or (f).

    a) ☐ All  b) ☐ Some*  c) ☐None    of the certified copies have

    1 ☐ been received.

    2 ☐ not been received.

    3 ☐ been filed in Application No. _____.

    4 ☐ been filed in reexamination Control No. _____.

    5 ☐ been received by the International Bureau in PCT application No. _____.

    * See the attached detailed Office action for a list of the certified copies not received.

  9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

  10. ☐ Other: _____.

cc: Requester (if third party requester)

**Ex. 11 Page 3**

Application/Control Number: 90/019,034                                   Page 2
Art Unit: 3992

## DETAILED ACTION

1)      This Office action addresses claims 1, 3, 6, 10, 14, 17, 23, 24, 30, and 31 of United States Patent

Number 7,233,978 (hereinafter " '978 patent") for which it has been determined in the Order Granting Ex

Parte Reexamination mailed January 12, 2022, regarding Reexamination Control No. 90/019,034

(hereinafter the "Order") that a substantial new question of patentability was raised in the Request for *Ex*

*Parte* reexamination filed on November 19, 2021 (hereinafter the "Request").

2)      This action is Non-Final.

### *Status of Claims*

3)      Claims 1-31 are pending:

     a.      Claims 1, 3, 6, 10, 14, and 31 are rejected as discussed below.

     b.      Claims 17, 23, 24, and 30 are found patentable as discussed below.

     c.      Claims 2, 4, 5, 7-9, 11-13, 15, 16, 18-22, and 25-29 are not subject to reexamination.

### *Rejections*

4)      The following rejections are utilized by the examiner below, referencing the proposed prior art

listed on page *vi* of the Request:

     *Issue 1:*      Claims 1 and 31 in view of ONAG and OSG

     *Issue 2:*      Claims 3, 10, and 14 in view of ONAG, OSG, and McGarvey

     *Issue 3:*      Claim 6 in view of ONAG, OSG, and Rajani

5)      The rejections below are confined to what has been deemed to be the best available art from the

Request.  However, prior to conclusion of this reexamination proceeding, claims must be patentable over

all prior art cited in the order granting reexamination in order to be considered patentable or confirmed on

the reexamination certificate.

### Priority and Patent Term

6)       The '978 patent was a continuation-in-part of application 09/661,222, filed on September 13,

2000 (U.S. Patent 7,103,640), a continuation-in-part of application 09/503,441, filed on February 14,

2000 (abandoned), a continuation-in-part of application 09/367,461, filed on August 13, 1999

(abandoned), a continuation-in-part of application 09/111,896, filed on July 8, 1998 (abandoned).  The

Overton application also relied on Provisional Applications 60/277,408, filed on March 19, 2001 and

60/209,070, filed on June 2, 2000.

> MPEP 2701(I) states the following:
>
> *A patent granted on a continuation, divisional, or continuation-in-part application that was filed*
> *on or after June 8, 1995, will have a term which ends twenty years from the filing date of earliest*
> *application for which a benefit is claimed under 35 U.S.C. 120, 121, 365(c), or 386(c) regardless*
> *of whether the application for which a benefit is claimed under 35 U.S.C. 120, 121, or 365(c) was*
> *filed prior to June 8, 1995.*

Based on the citation above, the Overton patent is expired.  The term of twenty years from the filing date

of the earliest filed application (09/111,896, filed on July 8, 1998) for which a benefit is claimed plus the

term adjustment of 810 days under 35 U.S.C. 154(b) has passed.  The patent expired on September 25,

2020.

7)       37 C.F.R. 1.530(j) states, "No enlargement of claim scope. No amendment may enlarge the scope

of the claims of the patent or introduce new matter. ***No amendment may be proposed for entry in an***

***expired patent. Moreover, no amendment, other than the cancellation of claims, will be incorporated***

***into the patent by a certificate issued after the expiration of the patent.***" (emphasis added).  Thus,

Application/Control Number: 90/019,034                                    Page 4
Art Unit: 3992

because the patent is expired no amendments of the claims will be allowed aside from the cancellation of

claims.

Additionally, in making the determination of whether to order reexamination, the Office will

determine the proper meaning of the patent claims by giving the claims their broadest reasonable

interpretation consistent with the specification (see In re Yamamoto, 740 F.2d 1569 (Fed. Cir. 1984)),

except in the case of an expired patent (in a reexamination involving claims of an expired patent, claim

construction is pursuant to the principle set forth by the court in Phillips v. AWH Corp., 415 F.3d 1303,

1316, 75 USPQ2d 1321, 1329 (Fed. Cir. 2005) (words of a claim "are generally given their ordinary and

customary meaning" as understood by a person of ordinary skill in the art in question at the time of the

invention, see Ex parte Papst-Motoren, 1 USPQ2d 1655 (Bd. Pat. App. & Inter. 1986)).


### *Claim Rejections*

8)      ***Claim Rejections - 35 USC § 103***

The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102, if the differences between the subject matter sought to be patented and the prior art
> are such that the subject matter as a whole would have been obvious at the time the invention was made
> to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not
> be negatived by the manner in which the invention was made.


### *Issue 1*

9)      Claims 1 and 31 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over ONAG

("Oracle Names Administrator's Guide, Release 2.0" published 1996) in view of OSG ("Oracle DBA

Survival Guide, 1st ed." published October 1, 1995).

Application/Control Number: 90/019,034                                         Page 5
Art Unit: 3992

      **Regarding independent claim 1,** ONAG discloses a system having a plurality of location

servers ("Names servers" in ONAG) for managing location information and providing location

information to location queries, the system comprising:

*See* OracleNamesAdminGuide at 32:



Figure 2 – 1  Components of a Network Using Oracle Names
with the Dynamic Discovery Option

Oracle Names version 2.0 is a supporting product for Oracle7 release 7.3
and SQL*Net release 2.3. Oracle Names makes network address and
database link information available to all nodes throughout the network.
Each database server's network address is stored with a name that is
used to identify it. Client applications can then request a database
connection with a simple name rather than a lengthy address.

                                      (page 20 of ONAG)

The Names Server has a single purpose: to resolve, or assist in resolving,
a client-initiated name request. It interprets the request, then looks up
the name in its cache, or it calls a Names Server in another region.  The
response or error conditions are passed back to the client.

                                      (page 52 of ONAG)

a first location server containing a first set of location information corresponding to at least one entity, the

location information comprising an identifier and at least one location string associated with the identifier,

wherein the identifier ("named Poultry" of ONAG) identifies an entity and the location string ("address"

of ONAG) specifies a location of data pertaining to the entity

Application/Control Number: 90/019,034                                              Page 6
Art Unit: 3992

> The Names Server has a single purpose: to resolve, or assist in resolving,
> a client-initiated name request. It interprets the request, then looks up
> the name in its cache, or it calls a Names Server in another region. The
> response or error conditions are passed back to the client.
>
> Figure 3 – 11 shows a client requesting access to a Names Server named
> POULTRY and a Names Server providing the answer. A flat naming
> model is assumed.

(page 52 of ONAG)

> The sequence of events is as follows:
> 1. The client application issues a connection request to SQL*Net of
> the form:
> ```
> sqlplus scott/tiger@POULTRY
> ```
> where POULTRY is a database service name defined in the Oracle
> Names Server.
> SQL*Net determines from the client configuration in the
> SQLNET.ORA file that the client's default domain is WORLD and
> the preferred Names Server is the one shown. SQL*Net sends the
> Names Server a request to resolve the name POULTRY.WORLD.
> 2. The Names Server receives the request, looks it up in the cache,
> then sends the response back to the client.
> 3. The client receives the answer and substitutes the address in
> place of the initial name POULTRY.
> 4. The client contacts POULTRY and establishes a standard
> SQL*Net client–server connection.

(pages 52-53 of ONAG)

Additionally, OSG further supports this discussion by explaining that SQL*Net (such as

that of ONAG) uses executable code to make it easier for users to connect to various databases

and find their data; however, "the burden of providing the translation between the easy names and

the exact server and instance address falls on the DBA." (page 87 of OSG, see also pages 20, 27

and 694 of OSG)


a second location server comprising a second set of location information, wherein at least a portion of the

second set of location information differs from the first set of location information; and

ONAG discloses the use of multiple Names Servers, the Names Servers containing different sets of location information and communicating between each other to resolve the different sets of locations information on behalf of the client.



Figure C—4 Network Messages in a Multi-Level Foreign Name Resolution

3. The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2.

4. The receiving server in DR2 forwards the request to a Names Server in region DR2.1.

5. The name is retrieved from its authoritative Names Server in DR2.1.

6. The names Server in region DR2 caches the answer and returns it to the root.

7. The root caches the answer and returns it to the preferred Names Server in region DR1.

8. The preferred Names Server caches the answer and returns it to the client.

9. The client establishes a connection to the destination server.

(page 191 of ONAG, see also pages 189, 190, and 193 of ONAG)

programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity.

Application/Control Number: 90/019,034                                    Page 8
Art Unit: 3992

Figure 2–2 shows the components of the Names Server using the Dynamic Discovery Option and their relationships.



Figure 2 – 2  Oracle Names Server Components Using the Dynamic Discovery Option

(page 33 of ONAG)

ONAG describes a portable software that runs on a variety of computer platforms (pages 62-63 of ONAG).  An example found on page 129 of ONAG shows a query and the systems response, reproduced below:

```
NAMESCTL> QUERY BONES.DEM.MEDICINE A.SMD
Total response time:      0.04 seconds
Response status:          normal, successful completion
Authoritative answer:     yes
Number of answers:        1
Canonical name:           bones.dem.medicine
TTL:                      1 day
Alias translations:
    from:                 bones.dem.medicine
    to:                   bones.dem.medicine
Answers:
    data type is "a.smd"
        Syntax is ADDR:...{DESCRIPTION=(ADDRESS=
    {COMMUNITY=tcp}{PROTOCOL=TCP}{Host=cowboy}
    {Port=1522}}{CONNECT_DATA={SID=rodeo}}}
```

As can be seen in the example above, the request from the client for location information results in a response ("Answers") which provides the location information for the desired entity (see also page 109 of ONAG).

Ex. 11 Page 10

Additionally, OSG further supports this discussion by describing an SQL query to be used explicitly to "determine the location of your data files" (page 152 of OSG).

To the extent it could be argued that ONAG fails to teach certain limitations, OSG teaches an SQL query to be used explicitly to "determine the location of your data files" (page 152 of OSG, see also disclosure of "easy name" synonyms for specifying a database – pages 86-87, 181, 189-190, and 352 of OSG).

ONAG and OSG are in the same field of art and discuss managing distributed database systems using Oracle7 technology, and its associated tools and utilities (see pages 5, 22, and 52-54 of ONAG and pages 20, 27, and 695 of OSG). They contain overlapping disclosures focused on the similar purposes of improving query efficiency and resolution of user access.

A POSITA would have found it obvious for ONAG to associate location information (i.e. connection descriptor) with an identifier (i.e. network-service-name-alias) and respond to queries with location messages. As OSG explains, ONAG's SQL*Net makes it easier for users to connect to various databases and find their data; however, "the burden of providing the translation between the easy names and the exact server and instance address falls on the DBA." (page 87 of OSG). Making use of identifiers

Application/Control Number: 90/019,034                                       Page 10
Art Unit: 3992

to improve the users' experience and to ease their ability to find their desired data entity is a primary

objective of an Oracle database administrator ("DBA").

 Indeed, before the '978 Patent, POSITAs were combining these teachings in Oracle7 systems in

the 1990s, and OSG includes techniques explaining to DBAs how to improve their systems (page 19

OSG). And OSG directs DBAs to combine OSG's teachings with various reference manuals and

resources to take advantage of all of Oracle7's capabilities. For example, to use SQL*Net effectively,

OSG provides that a DBA should record error messages and consult "specific product manuals (for

example, SQL*Net)" for solutions (pages 44 and 52 of OSG).

 For those reasons, a POSITA would have been motivated to associate an identifier with ONAG's

data and location information for use in optimizing query efficiency, based on OSG's teachings. As OSG

explains, a POSITA was often asked to help improve query efficiency during the relevant timeframe:

> You may be regarded by your project team as the database guru because you have the title of
>
> DBA [database administrator]. If this is the case, try to obtain as much knowledge as possible
>
> about the DBMS [database management system] and query optimization through training courses
>
> and books. It may mean more work for you, but it could save many hours of project team labor if
>
> you can quickly provide your compatriots with the answers that they need.
>
>         (page 51 of OSG)

**Regarding independent claim 31,** ONAG discloses a system for managing location information

and providing location information to location queries, the system comprising:

Application/Control Number: 90/019,034                                         Page 11
Art Unit: 3992

*See OracleNamesAdminGuide at 32:*



Figure 2 – 1  Components of a Network Using Oracle Names
with the Dynamic Discovery Option

Oracle Names version 2.0 is a supporting product for Oracle7 release 7.3
and SQL*Net release 2.3. Oracle Names makes network address and
database link information available to all nodes throughout the network.
Each database server's network address is stored with a name that is
used to identify it. Client applications can then request a database
connection with a simple name rather than a lengthy address.

                                                        (page 20 of ONAG)

The Names Server has a single purpose: to resolve, or assist in resolving,
a client-initiated name request. It interprets the request, then looks up
the name in its cache, or it calls a Names Server in another region.  The
response or error conditions are passed back to the client.

                                                        (page 52 of ONAG)

a location server operating in accordance with a transfer protocol, the transfer protocol comprising

instructions for manipulating an identifier and at least one location associated with the identifier, wherein

the identifier uniquely specifies an entity and wherein each location specifies a location of data in a

network pertaining to the entity, the location server containing location information corresponding to at

least one entity and formatted according to the transfer protocol, and wherein the location of data for the

location comprises an application server in communication with the network; and

Application/Control Number: 90/019,034                                          Page 12
Art Unit: 3992

> The Names Server has a single purpose: to resolve, or assist in resolving, a client-initiated name request. It interprets the request, then looks up the name in its cache, or it calls a Names Server in another region. The response or error conditions are passed back to the client.
>
> Figure 3 – 11 shows a client requesting access to a Names Server named POULTRY and a Names Server providing the answer. A flat naming model is assumed.

(page 52 of ONAG)

> The sequence of events is as follows:
> 1. The client application issues a connection request to SQL*Net of the form:
> ```
> sqlplus scott/tiger@POULTRY
> ```
> where POULTRY is a database service name defined in the Oracle Names Server.
> SQL*Net determines from the client configuration in the SQLNET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net sends the Names Server a request to resolve the name POULTRY.WORLD.
> 2. The Names Server receives the request, looks it up in the cache, then sends the response back to the client.
> 3. The client receives the answer and substitutes the address in place of the initial name POULTRY.
> 4. The client contacts POULTRY and establishes a standard SQL*Net client–server connection.

(pages 52-53 of ONAG)

Additionally, OSG further supports this discussion by explaining that SQL*Net (such as that of ONAG) uses executable code to make it easier for users to connect to various databases and find their data; however, "the burden of providing the translation between the easy names and the exact server and instance address falls on the DBA." (page 87 of OSG, see also pages 20, 27 and 694 of OSG)

programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity.

Figure 2–2 shows the components of the Names Server using the
Dynamic Discovery Option and their relationships.



Figure 2 – 2  Oracle Names Server Components
Using the Dynamic Discovery Option

(page 33 of ONAG)

ONAG describes a portable software that runs on a variety of computer platforms (pages

62-63 of ONAG).  An example found on page 129 of ONAG shows a query and the systems

response, reproduced below:

```
NAMESCTL> QUERY BONES.DEM.MEDICINE A.SMD
Total response time:     0.04 seconds
Response status:         normal, successful completion
Authoritative answer:    yes
Number of answers:       1
Canonical name:          bones.dem.medicine
TTL:                     1 day
Alias translations:
    from:                bones.dem.medicine
    to:                  bones.dem.medicine
Answers:
    data type is "a.smd"
        Syntax is ADDR:...{DESCRIPTION=(ADDRESS=
    {COMMUNITY=tcp}{PROTOCOL=TCP}{Host=cowboy}
    {Port=1522}){CONNECT_DATA={SID=rodeo}}}
```

As can be seen in the example above, the request from the client for location information results

in a response ("Answers") which provides the location information for the desired entity (see also

page 109 of ONAG).

Additionally, OSG further supports this discussion by describing an SQL query to be used explicitly to "determine the location of your data files" (page 152 of OSG).

To the extent it could be argued that ONAG fails to teach certain limitations, OSG teaches an SQL query to be used explicitly to "determine the location of your data files" (page 152 of OSG, see also disclosure of "easy name" synonyms for specifying a database – pages 86-87, 181, 189-190, and 352 of OSG).

ONAG and OSG are in the same field of art and discuss managing distributed database systems using Oracle7 technology, and its associated tools and utilities (see pages 5, 22, and 52-54 of ONAG and pages 20, 27, and 695 of OSG). They contain overlapping disclosures focused on the similar purposes of improving query efficiency and resolution of user access.

A POSITA would have found it obvious for ONAG to associate location information (i.e. connection descriptor) with an identifier (i.e. network-service-name-alias) and respond to queries with location messages. As OSG explains, ONAG's SQL*Net makes it easier for users to connect to various databases and find their data; however, "the burden of providing the translation between the easy names and the exact server and instance address falls on the DBA." (page 87 of OSG). Making use of identifiers

to improve the users' experience and to ease their ability to find their desired data entity is a primary

objective of an Oracle database administrator ("DBA").

Indeed, before the '978 Patent, POSITAs were combining these teachings in Oracle7 systems in

the 1990s, and OSG includes techniques explaining to DBAs how to improve their systems (page 19

OSG). And OSG directs DBAs to combine OSG's teachings with various reference manuals and

resources to take advantage of all of Oracle7's capabilities. For example, to use SQL*Net effectively,

OSG provides that a DBA should record error messages and consult "specific product manuals (for

example, SQL*Net)" for solutions (pages 44 and 52 of OSG).

For those reasons, a POSITA would have been motivated to associate an identifier with ONAG's

data and location information for use in optimizing query efficiency, based on OSG's teachings. As OSG

explains, a POSITA was often asked to help improve query efficiency during the relevant timeframe:

> You may be regarded by your project team as the database guru because you have the title of
>
> DBA [database administrator]. If this is the case, try to obtain as much knowledge as possible
>
> about the DBMS [database management system] and query optimization through training courses
>
> and books. It may mean more work for you, but it could save many hours of project team labor if
>
> you can quickly provide your compatriots with the answers that they need.
>
> (page 51 of OSG)

### Issue 2

10)      Claims 3, 10, and 14 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over

ONAG ("Oracle Names Administrator's Guide, Release 2.0" published 1996) in view of OSG ("Oracle

DBA Survival Guide, 1st ed." published October 1, 1995), further in view of McGarvey (U.S. Patent No.

5,777,989, filed December 19, 1995).

**Regarding dependent claim 3,** ONAG in view of McGarvey discloses the system of claim 1,

wherein the programming logic further comprises logic responsive to the location query to return one of a

Application/Control Number: 90/019,034          Page 16
Art Unit: 3992

location message or a redirect message, wherein the location server receiving the query returns the

location message if the queried location server contains location information for the desired entity, and

wherein the queried location server returns a redirect message if the queried location server lacks location

information for the desired entity, the redirect message comprising information for finding a location

server known to have location information relevant to the location query.

ONAG discloses the use of multiple Names Servers, the Names Servers containing different sets

of location information and communicating between each other to resolve the different sets of

locations information on behalf of the client.



Figure C – 4 Network Messages in a Multi–Level Foreign Name Resolution

3. The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2.

4. The receiving server in DR2 forwards the request to a Names Server in region DR2.1.

5. The name is retrieved from its authoritative Names Server in DR2.1.

6. The names Server in region DR2 caches the answer and returns it to the root.

7. The root caches the answer and returns it to the preferred Names Server in region DR1.

8. The preferred Names Server caches the answer and returns it to the client.

9. The client establishes a connection to the destination server.

(page 191 of ONAG, see also pages 189, 190, and 193 of ONAG)

Application/Control Number: 90/019,034                                    Page 17
Art Unit: 3992

ONAG also discloses that this forwarding feature may be turned off at which point the Names

Server will return the address of another Names Server that can answer the request.

> This setting is intended only for Names Servers that have no local clients
> and are exclusively handling requests from foreign Names Servers. This
> usually would only apply to Names Servers in the root region when the
> root is configured without clients or services. If such a server is a
> performance bottleneck in cross-region request processing then
> disabling forwarding in that Names Server will cut its workload in half.
> Rather than forward the request and return the answer the Names
> Server simply tells the requestor the address of the Names Server that
> can answer the request. Note that there is no overall reduction in work;
> the work is simply displaced from the non-forwarding Names Server to
> the requesting Names Server.

                                                        (page 137 of ONAG)

Additionally, when discussing the background of the art at the time of filing (1995) McGarvey

demonstrates the well-known teaching of providing a redirect message if the name server can not

resolve a request.

> *A particular name server may contain information on only a subset of the domain namespace,*
> *but the name server typically belongs to a hierarchy of name servers, and if it does, either it*
> *communicates with other members of the hierarchy to attempt to resolve host names, or it*
> *returns information referring the client to another server in the hierarchy, so that the client*
> *can redirect the query.*                    (column 1, lines 43-48 of McGarvey)

To the extent it could be argued that ONAG fails to teach certain limitations, for instance

explicitly discussing a redirect message, McGarvey teaches that a redirect message as claimed was well-

known at the time of filing the McGarvey application (1995) (column 1, lines 43-48 of McGarvey).

McGarvey is in the same field as ONAG and OSG. For example, ONAG describes a distributed

database system, focusing on Names Servers that respond to a client's data requests using unique

customer identifiers associated with the data's network address. Similarly, McGarvey describes a

distributed network configuration that uses well-known name resolution techniques.

Before the '978 Patent, it was well known and ubiquitous for computer network systems to use redirect messaging when a names server lacks the requested location information. For example, McGarvey teaches a "particular name server may contain information on only a subset of the domain namespace, but the name server typically belongs to a hierarchy of name servers, and if it does, ... it returns information referring the client to another server in the hierarchy, so that the client can redirect the query." (column 1, lines 43-48 of McGarvey).

For those reasons, a POSITA would have found it obvious for ONAG's first Names Server—if it lacks the requested location information—to send a redirect message to the client containing redirect information for the client to calculate the location of a different Names Server having the location information. A POSITA would have been motivated to do so because this would further the use of ONAG's SQL*Net and Names Servers to respond to certain data requests and lessens the workload of the root Names Server because it no longer needs to perform forwarding functions to other servers containing the requested information (pages 33, 61, and 137 of ONAG). Further, if a Names Server can't resolve a client's information query, a POSITA would have been motivated to have the server transmit a redirect message so the client can calculate the location of another Names Server housing the location information. This is because using such redirect messages was an established method in hierarchical naming services to address unresolved location requests (column 2, lines 61-67 and column 5, lines 3-32 of McGarvey.

**Regarding independent claim 10,** ONAG in view of OSG, further in view of McGarvey discloses a system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising:

Application/Control Number: 90/019,034                                          Page 19
Art Unit: 3992

*See OracleNamesAdminGuide at 32:*



Figure 2 – 1  Components of a Network Using Oracle Names
with the Dynamic Discovery Option

Oracle Names version 2.0 is a supporting product for Oracle7 release 7.3
and SQL*Net release 2.3. Oracle Names makes network address and
database link information available to all nodes throughout the network.
Each database server's network address is stored with a name that is
used to identify it. Client applications can then request a database
connection with a simple name rather than a lengthy address.

(page 20 of ONAG)

The Names Server has a single purpose: to resolve, or assist in resolving,
a client-initiated name request. It interprets the request, then looks up
the name in its cache, or it calls a Names Server in another region.  The
response or error conditions are passed back to the client.

(page 52 of ONAG)

plurality of location servers containing location information corresponding to a plurality of entities, the

location information formatted according to a transfer protocol configured for manipulating location

information, and comprising at least one application server address, wherein the plurality of location

servers are arranged in a cluster topology such that each location server contains a unique set of location

information of an aggregate set of the location information; and

The Names Server has a single purpose: to resolve, or assist in resolving,
a client-initiated name request. It interprets the request, then looks up
the name in its cache, or it calls a Names Server in another region.  The
response or error conditions are passed back to the client.

Figure 3 – 11 shows a client requesting access to a Names Server named
POULTRY and a Names Server providing the answer. A flat naming
model is assumed.

Application/Control Number: 90/019,034                                      Page 20
Art Unit: 3992

(page 52 of ONAG)

The sequence of events is as follows:

1. The client application issues a connection request to SQL*Net of the form:

```
sqlplus scott/tiger@POULTRY
```

where POULTRY is a database service name defined in the Oracle Names Server.

SQL*Net determines from the client configuration in the SQLNET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net sends the Names Server a request to resolve the name POULTRY.WORLD.

2. The Names Server receives the request, looks it up in the cache, then sends the response back to the client.

3. The client receives the answer and substitutes the address in place of the initial name POULTRY.

4. The client contacts POULTRY and establishes a standard SQL*Net client–server connection.

(pages 52-53 of ONAG)

ONAG discloses the use of multiple Names Servers, the Names Servers containing different sets of location information and communicating between each other to resolve the different sets of locations information on behalf of the client.

Application/Control Number: 90/019,034                                                    Page 21
Art Unit: 3992



Figure C – 4  Network Messages in a Multi-Level Foreign Name Resolution

3.  The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2.

4.  The receiving server in DR2 forwards the request to a Names Server in region DR2.1.

5.  The name is retrieved from its authoritative Names Server in DR2.1.

6.  The names Server in region DR2 caches the answer and returns it to the root.

7.  The root caches the answer and returns it to the preferred Names Server in region DR1.

8.  The preferred Names Server caches the answer and returns it to the client.

9.  The client establishes a connection to the destination server.

(page 191 of ONAG, see also pages 189, 190, and 193 of ONAG)

Additionally, OSG further supports this discussion by explaining that SQL*Net (such as that of ONAG) uses executable code to make it easier for users to connect to various databases and find their data; however, "the burden of providing the translation between the easy names and the exact server and instance address falls on the DBA." (page 87 of OSG, see also pages 20, 27 and 694 of OSG)

To the extent it could be argued that ONAG fails to teach certain limitations, OSG teaches an SQL query to be used explicitly to "determine the location of your data files" (page

Application/Control Number: 90/019,034                                    Page 22
Art Unit: 3992

152 of OSG, see also disclosure of "easy name" synonyms for specifying a database – pages 86-87, 181, 189-190, and 352 of OSG).

ONAG and OSG are in the same field of art and discuss managing distributed database systems using Oracle7 technology, and its associated tools and utilities (see pages 5, 22, and 52-54 of ONAG and pages 20, 27, and 695 of OSG). They contain overlapping disclosures focused on the similar purposes of improving query efficiency and resolution of user access.

A POSITA would have found it obvious for ONAG to associate location information (i.e. connection descriptor) with an identifier (i.e. network-service-name-alias) and respond to queries with location messages. As OSG explains, ONAG's SQL*Net makes it easier for users to connect to various databases and find their data; however, "the burden of providing the translation between the easy names and the exact server and instance address falls on the DBA." (page 87 of OSG). Making use of identifiers to improve the users' experience and to ease their ability to find their desired data entity is a primary objective of an Oracle database administrator ("DBA").

Indeed, before the '978 Patent, POSITAs were combining these teachings in Oracle7 systems in the 1990s, and OSG includes techniques explaining to DBAs how to improve their systems (page 19 OSG). And OSG directs DBAs to combine OSG's teachings with various reference manuals and resources to take advantage of all of Oracle7's capabilities. For example, to use SQL*Net effectively, OSG provides that a DBA should record error messages and consult "specific product manuals (for example, SQL*Net)" for solutions (pages 44 and 52 of OSG).

For those reasons, a POSITA would have been motivated to associate an identifier with ONAG's data and location information for use in optimizing query efficiency, based on OSG's teachings. As OSG explains, a POSITA was often asked to help improve query efficiency during the relevant timeframe:

You may be regarded by your project team as the database guru because you have the title of DBA [database administrator]. If this is the case, try to obtain as much knowledge as possible about the DBMS [database management system] and query optimization

Application/Control Number: 90/019,034                                    Page 23
Art Unit: 3992

> through training courses and books. It may mean more work for you, but it could save
>
> many hours of project team labor if you can quickly provide your compatriots with the
>
> answers that they need.                                    (page 51 of OSG)

programming logic stored on each of the plurality of location servers responsive to a location query for a

desired identifier to return one of a location message, wherein a queried location server returns a location

message if the queried location server contains location information for the desired identifier, and a

redirect message if the queried location server does not contain location information relevant to the

desired identifier, wherein the redirect message comprises information for finding a location server

having location information related to the desired identifier.

> ONAG discloses the use of multiple Names Servers, the Names Servers containing different sets
>
> of location information and communicating between each other to resolve the different sets of
>
> locations information on behalf of the client.



Figure C - 4 Network Messages in a Multi-Level Foreign Name Resolution

3.  The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2.

4.  The receiving server in DR2 forwards the request to a Names Server in region DR2.1.

5.  The name is retrieved from its authoritative Names Server in DR2.1.

6.  The names Server in region DR2 caches the answer and returns it to the root.

7.  The root caches the answer and returns it to the preferred Names Server in region DR1.

8.  The preferred Names Server caches the answer and returns it to the client.

9.  The client establishes a connection to the destination server.

> (page 191 of ONAG, see also pages 189, 190, and 193 of ONAG)

ONAG also discloses that this forwarding feature may be turned off at which point the Names

Server will return the address of another Names Server that can answer the request.

> This setting is intended only for Names Servers that have no local clients and are exclusively handling requests from foreign Names Servers. This usually would only apply to Names Servers in the root region when the root is configured without clients or services. If such a server is a performance bottleneck in cross-region request processing then disabling forwarding in that Names Server will cut its workload in half. Rather than forward the request and return the answer the Names Server simply tells the requestor the address of the Names Server that can answer the request. Note that there is no overall reduction in work; the work is simply displaced from the non-forwarding Names Server to the requesting Names Server.

(page 137 of ONAG)

Additionally, when discussing the background of the art at the time of filing (1995) McGarvey

demonstrates the well-known teaching of providing a redirect message if the name server can not

resolve a request.

> *A particular name server may contain information on only a subset of the domain namespace,*
>
> *but the name server typically belongs to a hierarchy of name servers, and if it does, either it*
>
> *communicates with other members of the hierarchy to attempt to resolve host names, or it*
>
> *returns information referring the client to another server in the hierarchy, so that the client*
>
> *can redirect the query.*          (column 1, lines 43-48 of McGarvey)

To the extent it could be argued that ONAG fails to teach certain limitations, for instance

explicitly discussing a redirect message, McGarvey teaches that a redirect message as claimed was well-

known at the time of filing the McGarvey application (1995) (column 1, lines 43-48 of McGarvey).

McGarvey is in the same field as ONAG and OSG. For example, ONAG describes a distributed

database system, focusing on Names Servers that respond to a client's data requests using unique

customer identifiers associated with the data's network address. Similarly, McGarvey describes a

distributed network configuration that uses well-known name resolution techniques.

Before the '978 Patent, it was well known and ubiquitous for computer network systems to use redirect messaging when a names server lacks the requested location information. For example, McGarvey teaches a "particular name server may contain information on only a subset of the domain namespace, but the name server typically belongs to a hierarchy of name servers, and if it does, ... it returns information referring the client to another server in the hierarchy, so that the client can redirect the query." (column 1, lines 43-48 of McGarvey).

For those reasons, a POSITA would have found it obvious for ONAG's first Names Server—if it lacks the requested location information—to send a redirect message to the client containing redirect information for the client to calculate the location of a different Names Server having the location information. A POSITA would have been motivated to do so because this would further the use of ONAG's SQL*Net and Names Servers to respond to certain data requests and lessens the workload of the root Names Server because it no longer needs to perform forwarding functions to other servers containing the requested information (pages 33, 61, and 137 of ONAG). Further, if a Names Server can't resolve a client's information query, a POSITA would have been motivated to have the server transmit a redirect message so the client can calculate the location of another Names Server housing the location information. This is because using such redirect messages was an established method in hierarchical naming services to address unresolved location requests (column 2, lines 61-67 and column 5, lines 3-32 of McGarvey.

**Regarding independent claim 14,** ONAG in view of OSG, further in view of McGarvey discloses a method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising:

Application/Control Number: 90/019,034                                    Page 26
Art Unit: 3992

*See OracleNamesAdminGuide at 32:*



Figure 2 – 1  Components of a Network Using Oracle Names
with the Dynamic Discovery Option

Oracle Names version 2.0 is a supporting product for Oracle7 release 7.3
and SQL*Net release 2.3. Oracle Names makes network address and
database link information available to all nodes throughout the network.
Each database server's network address is stored with a name that is
used to identify it. Client applications can then request a database
connection with a simple name rather than a lengthy address.

(page 20 of ONAG)

The Names Server has a single purpose: to resolve, or assist in resolving,
a client-initiated name request. It interprets the request, then looks up
the name in its cache, or it calls a Names Server in another region. The
response or error conditions are passed back to the client.

(page 52 of ONAG)

receiving a location query from a client at one of the plurality of location servers, the location query

requesting an entity's location;

ONAG discloses the use of multiple Names Servers, the Names Servers containing different sets

of location information and communicating between each other to resolve the different sets of

locations information on behalf of the client.

Application/Control Number: 90/019,034                                                    Page 27
Art Unit: 3992



Figure C - 4  Network Messages in a Multi-Level Foreign Name Resolution

3.  The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2.

4.  The receiving server in DR2 forwards the request to a Names Server in region DR2.1.

5.  The name is retrieved from its authoritative Names Server in DR2.1.

6.  The names Server in region DR2 caches the answer and returns it to the root.

7.  The root caches the answer and returns it to the preferred Names Server in region DR1.

8.  The preferred Names Server caches the answer and returns it to the client.

9.  The client establishes a connection to the destination server.

                              (page 191 of ONAG, see also pages 189, 190, and 193 of ONAG)

sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and

ONAG discloses the use of multiple Names Servers, the Names Servers containing different sets of location information and communicating between each other to resolve the different sets of locations information on behalf of the client.

Application/Control Number: 90/019,034              Page 28
Art Unit: 3992



Figure C – 4 Network Messages in a Multi-Level Foreign Name Resolution

3.   The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2.

4.   The receiving server in DR2 forwards the request to a Names Server in region DR2.1.

5.   The name is retrieved from its authoritative Names Server in DR2.1.

6.   The names Server in region DR2 caches the answer and returns it to the root.

7.   The root caches the answer and returns it to the preferred Names Server in region DR1.

8.   The preferred Names Server caches the answer and returns it to the client.

9.   The client establishes a connection to the destination server.

                      (page 191 of ONAG, see also pages 189, 190, and 193 of ONAG)

ONAG also discloses that this forwarding feature may be turned off at which point the Names

Server will return the address of another Names Server that can answer the request.

> This setting is intended only for Names Servers that have no local clients and are exclusively handling requests from foreign Names Servers. This usually would only apply to Names Servers in the root region when the root is configured without clients or services. If such a server is a performance bottleneck in cross–region request processing then disabling forwarding in that Names Server will cut its workload in half. Rather than forward the request and return the answer the Names Server simply tells the requestor the address of the Names Server that can answer the request. Note that there is no overall reduction in work; the work is simply displaced from the non–forwarding Names Server to the requesting Names Server.

                         (page 137 of ONAG)

Additionally, OSG further supports this discussion by explaining that SQL*Net (such as

that of ONAG) uses executable code to make it easier for users to connect to various databases

and find their data; however, "the burden of providing the translation between the easy names and

the exact server and instance address falls on the DBA." (page 87 of OSG, see also pages 20, 27 and 694 of OSG)

To the extent it could be argued that ONAG fails to teach certain limitations, OSG teaches an SQL query to be used explicitly to "determine the location of your data files" (page 152 of OSG, see also disclosure of "easy name" synonyms for specifying a database – pages 86-87, 181, 189-190, and 352 of OSG).

ONAG and OSG are in the same field of art and discuss managing distributed database systems using Oracle7 technology, and its associated tools and utilities (see pages 5, 22, and 52-54 of ONAG and pages 20, 27, and 695 of OSG). They contain overlapping disclosures focused on the similar purposes of improving query efficiency and resolution of user access.

A POSITA would have found it obvious for ONAG to associate location information (i.e. connection descriptor) with an identifier (i.e. network-service-name-alias) and respond to queries with location messages. As OSG explains, ONAG's SQL*Net makes it easier for users to connect to various databases and find their data; however, "the burden of providing the translation between the easy names and the exact server and instance address falls on the DBA." (page 87 of OSG). Making use of identifiers to improve the users' experience and to ease their ability to find their desired data entity is a primary objective of an Oracle database administrator ("DBA").

Indeed, before the '978 Patent, POSITAs were combining these teachings in Oracle7 systems in the 1990s, and OSG includes techniques explaining to DBAs how to improve their systems (page 19 OSG). And OSG directs DBAs to combine OSG's teachings with various reference manuals and resources to take advantage of all of Oracle7's capabilities. For example, to use SQL*Net effectively, OSG provides that a DBA should record error messages and consult "specific product manuals (for example, SQL*Net)" for solutions (pages 44 and 52 of OSG).

For those reasons, a POSITA would have been motivated to associate an identifier with ONAG's data and location information for use in optimizing query efficiency, based on OSG's

teachings. As OSG explains, a POSITA was often asked to help improve query efficiency during the relevant timeframe:

> You may be regarded by your project team as the database guru because you have the title of DBA [database administrator]. If this is the case, try to obtain as much knowledge as possible about the DBMS [database management system] and query optimization through training courses and books. It may mean more work for you, but it could save many hours of project team labor if you can quickly provide your compatriots with the answers that they need.                                          (page 51 of OSG)

sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query.

ONAG discloses the use of multiple Names Servers, the Names Servers containing different sets of location information and communicating between each other to resolve the different sets of locations information on behalf of the client.



Figure C-4 Network Messages in a Multi-Level Foreign Name Resolution

3. The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2.

4. The receiving server in DR2 forwards the request to a Names Server in region DR2.1.

5. The name is retrieved from its authoritative Names Server in DR2.1.

6. The names Server in region DR2 caches the answer and returns it to the root.

7. The root caches the answer and returns it to the preferred Names Server in region DR1.

8. The preferred Names Server caches the answer and returns it to the client.

9. The client establishes a connection to the destination server.

(page 191 of ONAG, see also pages 189, 190, and 193 of ONAG)

Application/Control Number: 90/019,034                                                    Page 31
Art Unit: 3992

ONAG also discloses that this forwarding feature may be turned off at which point the Names

Server will return the address of another Names Server that can answer the request.

This setting is intended only for Names Servers that have no local clients
and are exclusively handling requests from foreign Names Servers. This
usually would only apply to Names Servers in the root region when the
root is configured without clients or services. If such a server is a
performance bottleneck in cross-region request processing then
disabling forwarding in that Names Server will cut its workload in half.
Rather than forward the request and return the answer the Names
Server simply tells the requestor the address of the Names Server that
can answer the request. Note that there is no overall reduction in work;
the work is simply displaced from the non-forwarding Names Server to
the requesting Names Server.

(page 137 of ONAG)

Additionally, when discussing the background of the art at the time of filing (1995) McGarvey

demonstrates the well-known teaching of providing a redirect message if the name server can not

resolve a request.

*A particular name server may contain information on only a subset of the domain namespace,*

*but the name server typically belongs to a hierarchy of name servers, and if it does, either it*

*communicates with other members of the hierarchy to attempt to resolve host names, or it*

*returns information referring the client to another server in the hierarchy, so that the client*

*can redirect the query.*                            (column 1, lines 43-48 of McGarvey)

To the extent it could be argued that ONAG fails to teach certain limitations, for instance

explicitly discussing a redirect message, McGarvey teaches that a redirect message as claimed was well-

known at the time of filing the McGarvey application (1995) (column 1, lines 43-48 of McGarvey).

McGarvey is in the same field as ONAG and OSG. For example, ONAG describes a distributed

database system, focusing on Names Servers that respond to a client's data requests using unique

customer identifiers associated with the data's network address. Similarly, McGarvey describes a

distributed network configuration that uses well-known name resolution techniques.

Application/Control Number: 90/019,034                                   Page 32
Art Unit: 3992

  Before the '978 Patent, it was well known and ubiquitous for computer network systems to use redirect messaging when a names server lacks the requested location information. For example, McGarvey teaches a "particular name server may contain information on only a subset of the domain namespace, but the name server typically belongs to a hierarchy of name servers, and if it does, ... it returns information referring the client to another server in the hierarchy, so that the client can redirect the query." (column 1, lines 43-48 of McGarvey).

  For those reasons, a POSITA would have found it obvious for ONAG's first Names Server—if it lacks the requested location information—to send a redirect message to the client containing redirect information for the client to calculate the location of a different Names Server having the location information. A POSITA would have been motivated to do so because this would further the use of ONAG's SQL*Net and Names Servers to respond to certain data requests and lessens the workload of the root Names Server because it no longer needs to perform forwarding functions to other servers containing the requested information (pages 33, 61, and 137 of ONAG). Further, if a Names Server can't resolve a client's information query, a POSITA would have been motivated to have the server transmit a redirect message so the client can calculate the location of another Names Server housing the location information. This is because using such redirect messages was an established method in hierarchical naming services to address unresolved location requests (column 2, lines 61-67 and column 5, lines 3-32 of McGarvey.

  *Issue 3*

11) Claim 6 is rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over ONAG ("Oracle Names Administrator's Guide, Release 2.0" published 1996) in view of OSG ("Oracle DBA Survival Guide, 1[st] ed." published October 1, 1995), further in view of Rajani (U.S. Patent No. 5,301,286, issued April 5, 1994).

Application/Control Number: 90/019,034                                         Page 33
Art Unit: 3992

     **Regarding dependent claim 6,** ONAG in view of OSG, further in view of Rajani discloses the system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table.

     OSG discusses the use of hashing to improve efficiency of a query:

> The concept behind the rule-based optimizer is simple. It looks at the SQL statement to determine all the possible ways that it can execute the query. Then it selects the one on its list of queries that it thinks will be most effective. The key here is that it has a simple list of possible ways to approach the problem that is fixed for all types and sizes of tables. The following is the basic order in which the execution plans are selected by the rule-based optimizer:
>
> 1. Access a single row by using its internal row ID.
> 2. Access a single row by a join formed out of a cluster of tables.
> 3. Access a single row by combining a hash cluster key with a unique or primary key from a table not in the cluster
> 4. Access a single row by a unique or primary key.
> 5. Access by joining rows in a cluster together.
> 6. Access by hash cluster keys.
> 7. Access by using a cluster index key.

                                     (page 633 of OSG)

     It would have been obvious to a POSITA to combine the teachings of ONAG and OSG for the reasons given above regarding claim 1.

     Rajani discloses hashing the locations of data entities to make them more easily accessible.

> *Upon receipt of the file, or path name /etc/services, computer 110 maps the path name into the aforementioned unique identity which may be used to locate the file after it has been stored in memory 30-1. That is, computer 110 first converts each component of the pathname, i.e., etc and services, in accord with an aspect of the invention, into a unique identification comprising a predetermined number of bytes-illustratively four bytes. I call this unique identification an S index. In the present illustrative example of the invention, the S index for the components "etc" and "services" are assumed to be, for example, 310 and 205, respectively. Computer 10 generates each S index by first passing each component of the pathname through a conventional hashing algorithm to obtain a memory offset (i.e., h.sub.m =hash ("string component"=i). It is assumed herein that*

> *memory offsets of 32 and 10 are obtained as a result of respectively passing "etc" and*
>
> *then "services" through such a hashing algorithm. (It is noted that the latter values were*
>
> *selected so that the following illustrative example of the invention may be discussed in*
>
> *simple terms, and do not represent actual hashing values that might be obtained by*
>
> *passing the aforementioned components through a conventional hashing algorithm.)*

(column 4 lines 16-39 of Rajani)

To the extent it could be argued that ONAG in view of OSG fails to teach certain limitations, for instance explicitly discussing the location information in the location server is maintained in an indexed location store indexed by a hash table., Rajani teaches that mapping received files, path names, services, etc. to an index in the form of a hash table (column 4 lines 16-56 and column 5, lines 40-48 of Rajani).

Because ONAG and Rajani share the common goal of parsing data sets quickly, a POSITA would have been motivated to use Rajani's hashing table techniques in ONAG's Names Servers to quickly and efficiently determine the location of a requested data entity.  It was understood in the art that DBAs would actively search for resources to solve problems that may arise in the specific database environment that they are working in. As OSG states: "[T]ry to obtain as much knowledge as possible about the DBMS and query optimization through training courses and books. It may mean more work for you, but it could save many hours of project team labor if you can quickly provide your compatriots with the answers that they need." (page 51 of OSG).  ONAG describes one specific database environment—hierarchical configurations—that provides certain RDBMS-related advantages. But such hierarchical configurations can complicate the naming practices and location information needed to identify each data entity. For example, in non-hierarchical configurations, Oracle7's "flat-naming" convention allows the omission of domains.  Conversely, ONAG's hierarchical configurations include multiple domains requiring that a data entity's location information identify the specific domain of the data entity (page 41 and 42 of ONAG).

Even further, and well before the '978 Patent, it was well known and ubiquitous for a computer network system to use a hash table to locate information stored in the system (column 4, lines 40-56 and column 6, lines 26-36 of Rajani).  Like Rajani, the '978 Patent and its family prosecution history establish

that it was generally known in the art to use hashing operations in a computer networking environment.

For example, the '978 Patent acknowledges that it was generally known in the art that hashing algorithms

existed to locate information in a table (e.g., the hashing algorithm) (column 17, lines 19-40 of '978

Patent).

### Statement of Reasons for Patentability and/or Confirmation

12)      Claims 17, 23, 24, and 30 are confirmed over the prior art that was explained in the request and

determined to raise a substantial new question of patentability in the order granting reexamination

because the art of record does not teach:

> *transferring a portion of the identifiers and associated locations to a second data location*
> *server when a performance criterion of the first location server reaches a predetermined*
> *performance limit.*                                                    (as found in claim 17)

In a reexamination proceeding involving claims of an expired patent, claim construction pursuant

to the principle set forth by the court in Phillips v. AWH Corp., 415 F.3d 1303, 1316, 75 USPQ2d 1321,

1329 (Fed. Cir. 2005) (words of a claim "are generally given their ordinary and customary meaning" as

understood by a person of ordinary skill in the art in question at the time of the invention) should be

applied since the expired claim are not subject to amendment. See *Ex parte* Papst-Motoren, 1 USPQ2d

1655 (Bd. Pat. App. & Inter. 1986).  In regards to independent claim 17, the claim requires explicitly

"transferring a portion of the identifiers and associated locations to a second data location server" when a

performance criterion reaches a limit.  Under the Phillips construction, the ordinary and customary

meaning as understood by a person of ordinary skill in the art at the time of the invention of the

requirement of explicitly "transferring a portion of the identifiers and associated locations to a second

data location server" would require that the identifiers and associated locations first be stored on the first

data location server and then be transferred from said first location server to said second location server.

The mere concept of having more than one location servers that contain potentially different identifiers and associated locations as discussed in the ONAG and OSG references in combination with the discussions of optimization found in ONAG and OSG does not actually teach the act of "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit" as it is claimed. Neither the McGarvey nor the Rajani references cure the deficiencies of the teachings of the ONAG and OSG references. Therefore, none of the references considered in this reexamination proceeding properly disclose at least the discussed limitations of the claimed invention, either alone or in combination.

### *Conclusion*

13)      In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and 37 CFR 41.33 after appeal, which will be strictly enforced.

14)      Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extension of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

15)      All correspondence relating to this ex parte reexamination proceeding should be directed as follows:

Application/Control Number: 90/019,034                                                    Page 37
Art Unit: 3992

By U.S. Postal Service Mail to:

      Mail Stop Ex Parte Reexam
      ATTN: Central Reexamination Unit
      Commissioner for Patents
      P.O. Box 1450
      Alexandria, VA 22313-1450

By FAX to:

      (571) 273-9900
      Central Reexamination Unit

By hand to:

      Customer Service Window
      Randolph Building
      401 Dulany St.
      Alexandria, VA 22314

By EFS-Web:

      Registered users of EFS-Web may alternatively submit such correspondence via the electronic filing system EFS-Web, at

      https://efs.uspto.gov/efile/myportal/efs-registered

      EFS-Web offers the benefit of quick submission to the particular area of the Office that needs to act on the correspondence. Also, EFS-Web submissions are "soft scanned" (i.e., electronically uploaded) directly into the official file for the reexamination proceeding, which offers parties the opportunity to review the content of their submissions after the "soft scanning" process is complete.

      Any inquiry concerning this communication or earlier communications from the Reexamination

Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central

Reexamination Unit at telephone number (571) 272-7705.

/JOSHUA D CAMPBELL/
Primary Examiner, Art Unit 3992

Conferees:

Application/Control Number: 90/019,034                                    Page 38
Art Unit: 3992


/ADAM L BASEHOAR/
Primary Examiner, Art Unit 3992

/ALEXANDER J KOSOWSKI/
Supervisory Patent Examiner, Art Unit 3992

| *Reexamination* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90/019,034 | 7233978 |
| | Certificate Date | Certificate Number |
| | | |

| Requester Correspondence Address: ☐    Patent Owner ☑    Third Party |
|---|
| FISCH SIGLER LLP<br>5301 WISCONSIN AVENUE, NW<br>FOURTH FLOOR<br>WASHINGTON, DC 20015 |

| LITIGATION REVIEW ☑ | JDC<br>(examiner initials) | 09 December 2021<br>(date) |
|---|---|---|
| | Case Name | Director Initials |
| 1:18cv8175 – Open | | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| **TYPE OF PROCEEDING** | **NUMBER** |
| Inter Partes Review | IPR2020-00276 (Denied Institution) |

| | |
|---|---|
| | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90/019,034 | 7233978 |
| | Examiner | Art Unit |
| | JOSHUA D CAMPBELL | 3992 |

| CPC - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| | | |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| Search Notes | Date | Examiner |
| Reviewed patented file's prosecution history, the request, and proposed prior art | 12/09/2021 | JDC |

| Interference Search | | | |
|---|---|---|---|
| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
| | | | |

| | |
|---|---|
| | |

**Ex. 11 Page 42**