# Exhibit 8

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | |
|---|---|
| <u>In re</u>: Patent of John K. Overton et al. | <u>Reexamination Control No.</u>: 90/019,109 |
| <u>Patent No.</u>: 7,233,978 | <u>Filing Date</u>: August 31, 2022 |
| <u>Application No.</u>: 09/872,736 | <u>Examiner</u>: Erron J. SORRELL |
| <u>Filing Date</u>: June 1, 2001 | |
| <u>Title</u>: Method and Apparatus for Managing Location Information in a Network Separate from the Data to which the Location Information Pertains | |

**PATENT OWNER'S PETITION FOR SUSPENSION OF THE RULES AND FOR SUMMARY TERMINATION OF REEXAMINATION AS A MATTER OF LAW, PURSUANT TO 37 C.F.R. §§ 1.181, 1.182, AND 1.183**

Mail Stop Petitions
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Commissioner:

Patent Owner hereby petitions the Commissioner of Patents to summarily and immediately terminate the reexamination proceeding that Amazon Web Services, Inc. ("AWS") brought against Patent No. 7,223,978 ("the '978 patent") in its request for *ex parte* reexamination of August 31, 2022, which was assigned Reexamination Control No. 90/019,109. Termination is warranted and proper under 35 U.S.C. § 325(d) on the grounds that "the same or substantially the same prior art or arguments previously were presented to the Office" and because the request is an "undesirable, incremental" challenge amounting to an abuse of process. *See In re Vivint, Inc.*, 14 F.4th 1342 (Fed. Cir. 2021).

This is AWS's third post-grant challenge against certain claims of the '978 patent in connection with the same parallel district court litigation. AWS's first challenge was a petition for *inter partes* review, which was denied on the merits. A year and a half later, AWS filed a request for *ex parte* reexamination against the same set of claims, based on a different set of

1

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

prior art references. The Office ordered reexamination but confirmed patentability of four claims in the first Office Action on the merits. AWS then sought a third bite at the apple by filing the instant request—its third overall challenge—to attack the four confirmed claims.

This latest iteration of AWS's campaign against the '978 patent presents substantially the same art and arguments as its prior request. It asserts a cherry-picked collection of old references (including the primary reference from its prior reexamination request) and new references, using the Office's prior decisions as a roadmap in an attempt to overcome the deficiencies of its prior challenges. This is precisely the type of "undesirable, incremental petitioning" the Office has rejected on numerous occasions and the Federal Circuit recently found to be an abuse of process. *In re Vivint*, 14 F.4th at 1353.

AWS makes no attempt to show that its follow-on request should not be denied under § 325(d) despite the Federal Circuit's clear holding that the statute is applicable to reexamination proceedings. *Id.* at 1354. While AWS argues its request should be granted because it purportedly raises substantial new questions of patentability based on "new" art, the law is clear that even requests that raise new questions of patentability can be denied under § 325(d). *In re Vivint*, 14 F.4th at 1350.

As explained below, AWS's follow-on request for *ex parte* reexamination—and third overall challenge to the '978 patent—should be denied under § 325(d) as an abusive incremental request that uses prior Office decisions as a roadmap to cure deficiencies from prior challenges. Further, an extraordinary situation exists, and justice requires waiver of any regulations that would otherwise prevent granting the relief requested by this petition.

## I.      Procedural Background

On December 12, 2018, Patent Owner Kove IO, Inc. filed a complaint against AWS, the requestor of the instant reexamination, alleging infringement of U.S. Patent Nos. 7,814,170

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

("'170 patent"); 7,103,640 ("'640 patent"); and 7,233,978 ("'978 patent"), in the Northern District of Illinois.

On December 12, 2019, just two days before being time barred from doing so, AWS filed a petition seeking *inter partes* review ("IPR") of claims 1, 3, 6, 10, 14, 17, 23, 24, 30, and 31 of the '978 patent,[1] *Amazon Web Services, Inc. v. Kove IO, Inc.*, IPR2020-00276, Paper No. 2 at 1-2 (P.T.A.B. Dec. 12, 2019). The petition asserted four grounds of unpatentability:

| 1st Challenge to '978 patent: IPR2020-00276 | | |
|---|---|---|
| Claims Challenged | 35 U.S.C. § | References(s) |
| 1, 3, 6, 10, 14, 31 | § 102(b) | RFC 1034[2] |
| 6 | § 103(a) | RFC 1034 |
| 17, 23, 30 | § 103(a) | RFC 1034 and Neimat[3] |
| 24 | § 103(a) | RFC 1034, Neimat, and Venkatasubramanian[4] |

The Board denied institution of AWS's IPR petition because "[AWS] fail[ed] to demonstrate a reasonable likelihood that [AWS] would prevail in establishing the unpatentability of at least one challenged claim of the '978 patent." *Amazon Web Services, Inc. v. Kove IO, Inc.*, IPR2020-00276, Paper 23 at 2 (P.T.A.B. June 16, 2020).

On November 19, 2021, nearly a year and a half after its IPR petition was denied, AWS filed three requests for *ex parte* reexamination against each of the '640, '170, and '978 patents.

---

[1] 35 U.S.C. § 315(b) ("An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner . . . is served with a complaint alleging infringement of the patent.").

[2] P. Mochapetris, "Domain Names - Concepts And Facilities," Request for Comment No. 1034, Network Working Group, Nov. 1987 ("RFC1034").

[3] U.S. Patent No. 5,542,087 (issued July 30, 1996) ("Neimat").

[4] N. Venkatasubramanian and S. Ramanathan, "Load Management in Distributed Video Servers," Proceedings of 17th International Conference on Distributed Computing Systems, IEEE, Baltimore, MD, USA, 1997, pp. 528–35 ("Venkatasubramanian").

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

*See* Reexamination Control Nos. 90/019,034 ('978 patent); 90/019,035 ('170 patent); and 90/019,036 ('640 patent).

On September 22, 2022, the Office issued a Notice of Intent to Issue Ex Parte Reexamination Certificate in the '036 proceeding finding all challenged claims patentable for the '640 patent. The Office issued a similar notice in the '035 proceedings on September 27, 2022, finding all challenged claims patentable for the '170 patent.

AWS's November 19, 2021 request for *ex parte* reexamination of the '978 patent (its *second* post-grant challenge of the '978 patent, after the IPR) asserted the following references:

| 2nd Challenge to '978 patent - Reexamination Control No. 90/019,034[5] | | |
|---|---|---|
| **Claims Challenged** | **35 U.S.C. §** | **References(s)** |
| **SNQ 1:** 1, 17, 23, 24, 30, 31 | § 103(a) | ONAG[6] in view of OSG[7] |
| **SNQ 2:** 3, 10, 14 | § 103(a) | ONAG in view of OSG and McGarvey[8] |
| **SNQ 3:** 6 | § 103(a) | ONAG in view of OSG and further in view of Rajani[9] |

The request for reexamination was granted as to all challenged claims of the '978 patent (claims 1, 3, 6, 10, 14, 17, 23, 24, 30, and 31). January 12 Order Granting Request for *Ex Parte* Reexamination at 2, 16.

On June 28, 2022, the USPTO issued a non-final Office action ("June 2022 Office Action") rejecting claims 1, 3, 6, 10, 14, and 31 but ***confirming the patentability of claims 17,***

---

[5] Request for *Ex Parte* Reexamination of U.S. Patent No. 7,722,978, accorded reexamination control no. 90/019,034 (the "'034 proceeding"), dated November 19, 2021 (the "November 2021 Request").

[6] Oracle Names Administrator's Guide, Release 2.0, (Oracle Corp., Redwood City, CA), published 1996 ("ONAG").

[7] Joseph B. Greene, Oracle DBA Survival Guide, 1st ed. (Sams Publishing, Indianapolis, Ind.), ISBN: 0672306816, published October 1, 1995 ("OSG").

[8] U.S. Patent No. 5,777,989, filed December 19, 1995, issued July 7, 1998 ("McGarvey").

[9] U.S. Patent No. 5,301,286, filed January 2, 1991, issued April 5, 1994 ("Rajani").

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

***23, 24, and 30***.  The Primary Examiner explained that claims 17, 23, 24, and 30[10] are patentable

over the art raised in the November 2021 Request "because it does not teach *transferring a*

*portion of the identifiers and associated locations to a second data location server when a*

*performance criterion of the first location server reaches a predetermined performance limit.*

(as found in claim 17)."  June 2022 Office Action at 35.[11]  The Primary Examiner explained

why  OracleNamesAdminGuide  (primary  reference,  "ONAG")  and  OracleSG  (related

secondary reference, "OSG") do not disclose element 17.e:

> The mere concept of having more than one location servers that contain
> potentially different identifiers and associated locations as discussed in the
> ONAG and OSG references in combination with the discussions of
> optimization found in ONAG and OSG does not actually teach the act of
> "transferring a portion of the identifiers and associated locations to a second
> data location server when a performance criterion of the first location server
> reaches a predetermined  performance limit" as it is claimed.

June 2022 Office Action at 36.  The Primary Examiner further determined that "[n]either the

McGarvey nor the Rajani references," *i.e.*, the additional secondary references, "cure the

deficiencies of the teachings of the ONAG and OSG references."  *Id.*

Two months after the June 2022 Office Action, AWS filed the instant August 2022

Request seeking *ex parte* reexamination of confirmed claims 17, 23, 24, and 30 (AWS's ***third***

overall post-grant challenge of the '978 patent), based on the following references:

| 3rd Challenge to '978 patent: Reexamination Control No. 90/019,109 | | |
|---|---|---|
| **Claims Challenged** | **35 U.S.C. §** | **References(s)** |
| **SNQ 1:** 17, 23, 24 and 30 | § 103(a) | ONAG in view of Boukobza[12] |
| **SNQ 2:** 17, 23, 24 and 30 | § 103(a) | ONAG in view of OracleUnleashed[13] |

---

[10] Claims 23, 24, and 30 are dependent claims of claim 17.

[11] This "transferring" element is referred to as "17.e."  *See* August 2022 Request at 4, 101.

[12] U.S. Patent No. 6,122,664, filed June 27, 1997, issued September 19, 2000 ("Boukobza").

[13] Joseph B. Greene, Oracle8 Server Unleashed, (Sams Publishing, Indianapolis, Ind.),
published August 2, 1998 ("OracleUnleashed").

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

| **SNQ 3:** 17, 23, 24 and 30 | § 103(a) | Ault[14] in view of Yocum[15] and Boukobza |
|---|---|---|

The asserted primary reference, ONAG, is the same primary reference AWS asserted in its first request for *ex parte* reexamination.

In the August 2022 Request, AWS acknowledges the Office previously determined that ONAG does not disclose claim element "17.e" of the '978 patent. *See* August 2022 Request at 4, 12. AWS asserts that the Office did, however, find that ONAG discloses elements of claims 1, 14, and 31 that "parallel" the preamble and elements 17.a-17.d. *Id.* at 12-14. Accordingly, just as it did in its first request for *ex parte* reexam, AWS relies on the same ONAG reference to allegedly disclose elements 17.a-17.d in its second request. To cover the admittedly missing element 17.e, AWS further relies on the Boukobza and OracleUnleashed references. *See id.* at 70-179 (SNQ 1 and SNQ2).

And, despite asserting (again) that ONAG discloses claim elements 17.[pre]-17.e, AWS's latest August 2022 Request includes an additional, redundant proposed SNQ (SNQ 3)—also challenging only the four confirmed claims—asserting that the newly raised Ault reference also discloses elements 17.[pre]-17.e and that element 17.e (which the Office previously determined is not disclosed by ONAG) is allegedly obvious over Ault in combination with Boukobza and Yocum. *Id.* at 179-225.

---

[14] U.S. Patent No. 5,617,568 to Ault, filed on December 14, 1994, issued on April 1, 1997 ("Ault").

[15] U.S. Patent No. 6,230,183 to Yocum, filed on March 11, 1998, issued on May 8, 2001 ("Yocum").

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

**II.**     **The Director May Terminate *Ex Parte* Reexamination Proceedings Under 35 U.S.C. § 325(d) And May Consider Whether The Request Is An Undesirable, Incremental Challenge That Uses A Prior USPTO Decision As A Roadmap To Correct Past Deficiencies**

"Section 325(d) applies to . . . requests for *ex parte* reexamination." *In re Vivint, Inc.*, 14 F.4th 1342, 1354 (Fed. Cir. 2021); 35 U.S.C. § 325(d) (provisions applicable to determinations under "chapter 30"). Accordingly, "[i]n determining whether to . . . order [*ex parte* reexamination], the Office may take into account whether, and reject the . . . request because, the same or substantially the same prior art or arguments previously were presented to the Office." § 325(d). The Office may reject a request for *ex parte* reexamination under § 325(d) "[e]ven when [the request] presents a substantial new question of patentability." *In re Vivint*, 14 F.4th at 1350.

The Office should apply § 325(d) to requests for *ex parte* reexamination consistently with its application to petitions for IPR and other types of post-grant review. *In re Vivint*, 14 F.3d at 1352 ("Agency action that departs from established precedent without a reasoned explanation is arbitrary and capricious." (cleaned up) (citation omitted)). In confirming that "Section 325(d) applies to both IPR petitions and requests for *ex parte* reexamination," the Federal Circuit found "no difference between the IPR and *ex parte* reexamination processes that would justify" denying an IPR petition under § 325(d) based on "undesirable, incremental petitioning" but not denying a similarly abusive request for *ex parte* reexamination. *In re Vivint*, 14 F.3d at 1354. Accordingly, reasons and rationales for rejecting a petition for IPR (or other post-grant review) under § 325(d) apply equally to requests for *ex parte* reexamination. *See id*. at 1353 (finding request for *ex parte* reexamination "a more egregious abuse" than a prior IPR petition that was denied under § 325(d) "*under the same considerations* already analyzed by the Board" (emphasis added)).

7

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

### A. The *Becton Dickinson* Factors Used For 325(d) Analyses

As explained by the Board in *Advanced Bionics, LLC v. Med-El Elektromedizinishce Geräte GmbH*, IPR2019-01469, Paper No. 6 (P.T.A.B. Feb. 13, 2020) (precedential), "35 U.S.C. § 325(d) identifies two separate issues for the Director to consider in exercising discretion to deny institution of review: whether the petition presents to the Office the same or substantially the same ***art*** previously presented to the Office, or whether the petition presents to the Office the same or substantially the same ***arguments*** previously presented to the Office." IPR2019-01469, Paper No. 6 at 7 (emphasis added). This question "is a highly factual inquiry, which may be resolved by reference to the factors set forth in [*Becton, Dickinson and Co. v. B. Braun Melsungen AG*, IPR2017-01586, Paper No. 8 (P.T.A.B. Dec. 15, 2017) (precedential as to § III.C.5, first paragraph "*Becton Dickinson*")]." *Id*. "If the 'same or substantially the same prior art or arguments previously were presented to the Office,' then the Board's decisions generally have required a showing that the Office erred in evaluating the art or arguments." *Id*. "If the petitioner fails to show that the Office erred, the Director may exercise his discretion not to institute *inter partes* review." *Id*.

*Becton Dickinson* identifies the following *non-exclusive* factors: (a) the similarities and material differences between the asserted art and the prior art involved during examination; (b) the cumulative nature of the asserted art and the prior art evaluated during examination; (c) the extent to which the asserted art was evaluated during examination, including whether the prior art was the basis for rejection; (d) the extent of the overlap between the arguments made during examination and the manner in which petitioner relies on the prior art; (e) whether petitioner has pointed out sufficiently how the examiner erred in its evaluation of the asserted prior art; and (f) the extent to which additional evidence and facts presented in the petition warrant

8

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

reconsideration of the prior art or arguments. *Becton Dickson*, Paper No. 8 at 17-18 (§ III.C.5, first paragraph).

"If, after review of factors (a), (b), and (d), it is determined that the same or substantially the same art or arguments previously were presented to the Office, then factors (c), (e), and (f) relate to whether the petitioner has demonstrated a material error by the Office." *Advanced Bionics*, IPR2019-01469, Paper No. 6 at 10.

**B. "Roadmapping" Weighs in Favor of Termination Under 325(d)**

In assessing whether to deny serial challenges under § 325(d), the Office has also long considered whether—and rejected challenges because—a challenger "uses information gleaned from [the Office's] earlier decisions to bolster challenges it advanced unsuccessfully." *See id*. (citing *Alarm.com Inc.*, IPR2016-01091, Paper 11 at 12); *see also, e.g., Google LLC v. Uniloc Luxembourg S.A.*, IPR2017-01665, Paper No. 10 at 21-22 (P.T.A.B. Jan. 11, 2018) (relying on rationale in *General Plastic Industrial Co., Ltd. v. Canon Kabushiki Kaisha*, IPR2016-01357, Paper No. 19 at 9, 17-18 (PTAB Sept. 6, 2017) (precedential)); *Synaptics Incorporated v. Amkor Technology, Inc.*, IPR2017-00085, Paper No. 12 at 9-10 (P.T.A.B. Apr. 18, 2017); *Praxair Distribution, Inc. v. Ino Therapeutics LLC*, IPR2016-00781, Paper No. 10 at 12-13 (P.T.A.B. Aug. 25, 2016); *T-Mobile US, Inc. v. Tracbeam, LLC*, IPR2016-00728, Paper No. 11 at 10-11 (P.T.A.B. May 25, 2016); *Great West Casualty Co. v. Intellectual Ventures II LLC*, IPR2016-00453, Paper No. 12 at 11-14 (P.T.A.B. June 9, 2016); *Arista Networks, Inc. v. Cisco Systems, Inc.*, IPR2016-00301 at 7-8 (P.T.A.B. June 11, 2016); *Whole Space Industries Ltd. v. Zipshade Industrial (B.V.I.) Corp.*, IPR2015-01632, Paper No. 10 at 8-10 (P.T.A.B. Jan. 29 2016); *Ube Maxell Co., Ltd. v. Celgard, LLC*, IPR2015-01511, Paper No. 10 at 9-11 (P.T.A.B. Jan. 7, 2016); *Square, Inc. v. Think Computer Corp.*, CBM2015-00067, Paper No. 14 at 9-10 (P.T.A.B. Jul. 2, 2015); *Conopco, Inc. v. The Proctor & Gamble Co.*,

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

IPR2014-00506, Paper No, 25 at 4-5 (P.T.A.B. Mar. 20, 2015); *Butamax Advanced Biofuels*

*LLC v. Gevo, Inc.*, IPR2014-00581, Paper No. 8 at 11-13 (P.T.A.B. Oct. 14, 2014).

As explained by a panel of the PTAB ("Board") in *Google LLC v. Uniloc*,

determinations of whether to deny follow-on challenges under § 325(d) are guided by the

rationale in the Board's precedential *General Plastic* decision. IPR2017-01665, Paper No. 10

at 21-22. That rationale seeks to curb the abusive practice of filing follow-on challenges that

are tailored to overcome prior unsuccessful challenges:

> Multiple, staggered petitions challenging the same patent and same claims raise
> the potential for abuse. The absence of any restrictions on follow-on petitions
> would allow petitioners the opportunity to strategically stage their prior art and
> arguments in multiple petitions, using our decisions as a roadmap, until a
> ground is found that results in the grant of review. All other factors aside, this
> is unfair to patent owners and is an inefficient use of the *inter partes* review
> process and other post-grant review processes.

*Id.* at 22 (quoting *General Plastic*, IPR2016-01357, Paper No. 19 at 17-18). That reasoning

"is pertinent" when challenges are filed "in an iterative fashion" and the challenger engages in

"roadmapping," *i.e.*, "us[ing] prior Board decisions as a roadmap to correct past deficiencies."

*Id.*; *Alarm.com*, IPR2016-01091, Paper 11 at 12. Accordingly, the Board may reject challenges

under § 325(d) where the challenger engages in

> undesirable, incremental petitioning, in which a petitioner relies on a patent
> owner's contentions and/or a Board decision in an earlier proceeding or
> proceedings involving the same parties, the same patent, and the same
> claims to mount another challenge after an earlier, unsuccessful or only
> partially successful challenge, by fixing deficiencies, noted by the Board,
> that were within the petitioner's capacity to avoid in the earlier petition or
> petitions.

*Alarm.com*, IPR2016-01091, Paper 11 at 12 (citing cases); *see also Google LLC v. Uniloc*,

IPR2017-01665, Paper No. 10 at 22 ("This is precisely the type of roadmapping *General*

*Plastic* counsels against.").

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

In exercising its discretion under § 325(d), the Board has consistently refused to "allow petitioners to unveil strategically their best prior art and arguments in serial petitions, using [Board] decisions on institution as a roadmap, until a ground is advanced that results in review—a practice that would tax Board resources, and force patent owners to defend multiple attacks." *Conopco*, IPR2014-00506, Paper No, 25 at 4; *Ube Maxell*, IPR2015-01511, Paper No. 10 at 9-11 (citing *Conopco*); *Synaptics*, IPR2017-00085, Paper No. 12 at 10 (same).

For example, the Board in *Butamax* denied under § 325(d) an IPR petition that presented four obviousness grounds "expressly intended to 'squarely address the alleged deficiencies identified by the Board' in [a prior] Decision." *Butamax*, IPR2014-00581, Paper No. 8 at 12-13 (cleaned up, bracketing added). The Board disapproved of Butamax's "second bites at the apple, which use our prior decision as a roadmap to remedy Butamax's prior, deficient challenge." *Id*. As another example, the Board in *Square, Inc. v. Think Computer Corp.* denied a CBM petition under § 325(d) where a prior Board decision provided "a substantive 'roadmap' concerning how to present" prior art in the later petition. CBM2015-00067, Paper No. 14 at 9-10. And in *Whole Space Industries*, the Board denied an IPR petition under § 325(d) that "use[d] our [prior decision] as a roadmap to attempt to remedy Petitioner's prior, deficient challenge." IPR2015-01632, Paper No. 10 at 9; *see also id*. (quoting *ZTE Corp. v. ContentGuard Holdings, Inc.*, IPR2013-00454, Paper No. 12 at 6 (PTAB Sept. 25, 2013) (a first Board decision "should not act as an entry ticket, and a how-to guide, for the same Petitioner . . . for filing a second petition to challenge those claims which it unsuccessfully challenged in the first petition.")).

An abusive follow-on challenge need not "copy" content from a prior challenge for § 325(d) to apply. *See In re Vivint*, 14 F.4th at 1353 (applying 325(d) to portions of a follow-on challenge that the petitioner "did not copy" from a prior petition). Indeed, the Office

11

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

regularly rejects follow-on petitions that engage in roadmapping even when the prior art and arguments they present are not identical to or copied verbatim from prior challenges. *See*, *e.g.*, *Google LLC v. Uniloc*, IPR2017-01665, Paper No. 10 at 22 (new arguments); *Synaptics*, IPR2017-00085, Paper No. 12 at 9-10 (new arguments); *Praxair*, IPR2016-00781, Paper No. 10 at 12-13 (new art); *T-Mobile US*, IPR2016-00728, Paper No. 11 at 10-11 (new arguments); *Great West Casualty Co.*, IPR2016-00453, Paper No. 12 at 11-14 (new art); *Arista*, IPR2016-00301 at 7-8 (new art); *Whole Space Industries*, IPR2015-01632, Paper No. 10 at 8-10 (new arguments); *Ube Maxell*, IPR2015-01511, Paper No. 10 at 9-11 (new art and arguments); *Conopco*, IPR2014-00506, Paper No, 25 at 4-5 (new art and arguments); *Butamax*, IPR2014-00581, Paper No. 8 at 11-13 (new art).

As the Federal Circuit recently indicated, rejecting a challenge that uses a prior Office decision as a roadmap despite presenting some new art or arguments, is consistent with the purpose of § 325(d). *In re Vivint*, 14 F.4th at 1353 (explaining that "the heart of a § 325(d) analysis" is the principle that "allowing **similar**, serial challenges to the same patent, by the same petitioner, risks harassment of patent owners and frustration of Congress's intent in enacting the [AIA]" (quoting *Alarm.com Inc. v. Vivint, Inc.*, IPR2016-01091, Paper 11 at 12 (P.T.A.B. Nov. 23, 2016) (emphasis added by the court in *In re Vivint*)).

## III. The Director Should Reject AWS's August 2022 Request for *Ex Parte* Reexamination Under 35 U.S.C. § 325(d) and Terminate the Proceeding

AWS's August 2022 request for *ex parte* reexamination is a textbook example of "roadmapping" and abusive incremental petitioning that the Office has long rejected under § 325(d). AWS's first challenge against the '978 patent—a petition for IPR that raised multiple grounds based primarily on RFC 1034—failed on the merits. After lying in wait for almost a year and a half, AWS launched a *second* challenge against the '978 patent in its November

12

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

2021 Request for *ex parte* reexam, which relied on a different primary reference, ONAG. Soon

after the Office confirmed the patentability of four challenged claims, AWS launched a *third*

challenge against those claims in its August 2022 Request for reexam. In doing so, AWS relied

on the same primary reference (ONAG), but tries to improve upon its previous request by

pairing ONAG with (and, in a redundant, alternative ground, replacing it with) new references.

"This is precisely the type of roadmapping" in a serial challenge that warrants rejection under

§ 325(d). *Google LLC v. Uniloc*, IPR2017-01665, Paper No. 10 at 21-22.

The Federal Circuit recently recognized similar filing practices as abusive and requiring

termination of reexamination proceedings under § 325(d) in *In re Vivint*. 14 F.4th at 1353. In

*Vivint*, Alarm.com filed three petitions for IPR against a Vivint patent (the '513 patent). *Id*. at

1346. The Board denied the first two petitions because Alarm.com failed to demonstrate "a

reasonable likelihood that it would prevail on at least one challenged claim." *Id*.[16] After the

Board issued its decision denying the second petition on May 3, 2016, Alarm.com filed a third

petition later that month on May 24, 2016, which the Board denied "as an example of

'undesirable, incremental petitioning,'" finding that "Alarm.com had 'used prior Board

decisions as a roadmap to correct past deficiencies.'" *In re Vivint*, 14 F.4th at 1346 (quoting

*Alarm. com Inc. v. Vivint, Inc.*, IPR2016-01091, Paper No. 11, at 12 (P.T.A.B. Nov. 23, 2016)).

"Rather than learn its lesson, however, Alarm.com continued to engage in abusive filing

practices" by then filing a request for *ex parte* reexamination that copied portions of its third

IPR petition and added additional grounds based on new references. *Id*. at 1347, 1353. Finding

"Alarm.com's *ex parte* reexamination request [to be] another, fourth iteration of Alarm.com's

abuse of process," the Federal Circuit remanded the case to the PTO, holding "[i]t would be

---

[16] *See Alarm.com Inc. v. Vivint, Inc.*, IPR2015-01997, Paper No. 14 (P.T.A.B. Apr. 7, 2016);
*Alarm.com Inc. v. Vivint, Inc.*, IPR2016-00129, Paper No. 13 (P.T.A.B. May 3, 2016).

13

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

arbitrary and capricious for the Patent Office to do anything . . . other than terminate the reexamination" under § 325(d). 1352–54.

AWS's August 22 Request is its third attempt at challenging claims 17, 23, 24, and 30 of the '978 patent after its two prior attempts failed. Both prior attempts resulted in decisions from the Office detailing how AWS's asserted art and arguments failed to meet its burden on the merits. This third bite at the apple uses those prior decisions as a roadmap in an attempt to overcome those prior deficiencies. AWS's practice of filing incremental challenges to the '978 patent amounts to abuse of process, and this third iteration should be denied under § 325(d).

**A.    SNQs 1 and 2 presents substantially the same art and arguments.**

*1.    Becton Dickinson Factors (a) and (d) applied to SNQs 1 and 2 weigh in favor of denial.*

SNQs 1 and 2 present substantially the same art (the same primary reference) and substantially the same arguments as AWS's November 2021 Request. To the extent the art or arguments are different, it is because AWS used the Office's June 2022 Office Action as a roadmap to attempt to remedy the deficiencies in the November 2021 Request.

*Becton Dickinson* factors (a) and (d) consider: (a) the similarities and material differences between the asserted art and the prior art involved during examination; and (d) the extent of the overlap between the arguments made during examination and the manner in which petitioner relies on the prior art. These factors strongly favor denial of the instant Request.

As shown in the table below, SNQs 1 and 2 of AWS's August 2022 Request present the same primary reference as its November 2022 Request, *i.e.*, ONAG. Whereas the November 2021 request combined ONAG with OSG, the August 2022 Request replaces OSG with Boukobza (in SNQ 1) and OracleUnleashed (in SNQ 2).

14

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

| 1st Challenge: November 2021 Request | | |
|---|---|---|
| **Claims Challenged** | **35 U.S.C. §** | **References(s)** |
| 17, 23, 24, 30 | § 103(a) | ONAG in view of OSG |
| 2nd Challenge: August 2022 Request | | |
| **Claims Challenged** | **35 U.S.C. §** | **References(s)** |
| **SNQ 1:** 17, 23, 24, 30 | § 103(a) | ONAG in view of Boukobza |
| **SNQ 2:** 17, 23, 24, 30 | § 103(a) | ONAG in view of OracleUnleashed |

A comparison of the August 2022 Request with the November 2021 request shows the August 2022 Request presents ONAG (the primary reference) in substantially the same way as the November 2021 Request, including by copying swaths of arguments word-for-word from the November 2021 Request. *Compare* August 2022 Request (90/019,109) at 71-113, 121-179 (analyzing claims 17, 23, 24, and 30) *with* November 2021 Request (90/019,034) at 68-95 (analyzing claims 17, 23, 24, and 30, which incorporates analyses of claim 1 elements by reference). Where AWS presents some additional arguments about ONAG, they are insubstantial incremental changes made with the benefit of having seen the Office's June 2022 Office Action. *See* section III.A.2., *infra*.

Although AWS's August 2022 Request combines ONAG with Boukobza and OracleUnleashed (its new secondary references) instead of with OSG (its prior secondary reference), AWS re-presents ONAG substantially as it did before. AWS merely modifies its arguments to rely on Boukobza and OracleUnleashed in response to the Office's prior decision, particularly as to element 17.e, after the Office found OSG insufficient. This is textbook roadmapping.

Furthermore, AWS's arguments regarding Boukobza and OracleUnleashed are substantially similar to its assertions regarding OSG from the November 2021 Request. As summarized in Exhibit A, AWS makes similar assertions as to what each reference discloses and their applicability to ONAG. AWS also asserts similar reasons to combine each secondary

15

reference with ONAG. *See* Exhibit A. In this sense, the arguments in both cases are substantially similar.

To the extent AWS's arguments regarding Boukobza and OracleUnleashed differ from its arguments with respect to OSG, they are insubstantial incremental changes made with the benefit of having seen the Office's June 2022 Office Action aimed at overcoming the deficiencies of its prior request, particularly with respect to element 17.e. *See* section III.A.2., *infra*. For example, AWS's November 2021 Request asserted that the combination of ONAG and OSG renders obvious element 17e. *See* November 2022 Request at 85-89. However, the Office found that ONAG and OSG "does not actually teach the act of 'transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit' as it is claimed." June 2022 Office Action at 35-36. Accordingly, in its follow-on request, AWS modified its arguments to assert that each of Boukobza and OraculeUnleashed "further teaches" the specific "transferring" imitations the Office found to be missing from ONAG and OSG. *See* August 2022 Request at 66, 103-107, 114, 161-169; Exhibit A.

The Office has found the art and arguments to be "the same or substantially the same" under § 325(d) when a follow-on challenge re-presents a primary reference from a prior challenge but with different secondary references aimed at overcoming a prior deficiency. For example, in *Butamax*, the Board denied a follow-on IPR petition under § 325(d) that asserted grounds based on a previously presented primary reference combined with new secondary references to overcome the deficiencies in Butamax's prior petition. *Butamax*, IPR2014-00581, Paper 8 at 11-13. Butamax's prior IPR petition combined a primary reference called "Anthony" with a secondary reference called "Overkamp," but the Board found the combination failed to disclose "inactivated GPD." *Id.* Butamax's follow-on petition reasserted

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

its Anthony-based combinations, but replaced Overkamp with new secondary references, "Dundon" and "Valadi." *Id*. In denying the follow-on petition, the Board found that aside from the substitution of secondary references, Butamax's arguments overlap the arguments made in its prior petition:

> Other than the substitution of Valadi and Dundon for Overkamp, the art cited in the present Petition's obviousness grounds overlaps completely with that asserted against claim 10 in the 539 Petition. Furthermore, Butamax's assertions regarding the disclosures of Valadi and Dundon are substantially similar to the disclosure of Overkamp as Butamax characterized it in the 539 IPR; in this sense, the arguments made in both cases are substantially similar. For these reasons, we conclude that the instant Petition advances "the same or substantially the same prior art or arguments [that] previously were presented to the Office" in the 539 IPR, and, therefore, we have discretion under § 325(d) to deny institution of the four obviousness grounds.

*Id*. at 12. The Board further found that the new grounds "are expressly intended to squarely address the alleged deficiencies identified by the Board in our [prior] Decision," characterizing the new grounds as "second bites at the apple, which use our prior decision as a roadmap to remedy Butamax's prior, deficient challenge." *Id*. (cleaned up) (brackets added).

This case is like *Butamax*. Here, the SNQs based on ONAG (SNQ 1 and SNQ 2) are analogous to the grounds based on Anthony in *Butamax*. The secondary references in this case (Boukobza and OracleUnleashed) (which replace OSG from the prior request) are like Dundon and Valadi in *Butamax* (which replaced Overkamp). AWS asserts Boukobza and OracleUnleashed in substantially the same way as OSG (as secondary references that allegedly teach the use of "performance criterion"), just as Butamax asserted Dundon and Valadi in substantially the same way as Overkamp (as secondary references that teach "inactivated GPD"). The purpose of the substitution in this case is to teach a claim element the Office previously found was not disclosed by ONAG and OSG (*i.e.*, element 17.e), just like the purpose of the substitution in *Butamax* was to teach an element the Board previously found

17

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

was not disclosed by Anthony and Overkamp (*i.e.*, inactivated GPD"). *See also Great West Casualty Co.*, IPR2016-00453, Paper No. 12 at 13-14, *Arista Networks*, IPR2016-00301, Paper No. 8 at 7-8, and *Conopco*, IPR2014-00506, Papers 17 and 25; *Alarm.com*, IPR2016-01091, Paper No. 11 at 12 (citing *Travelocity.com L.P. v. Cronos Tech., LLC*, CBM2015-00047, Paper No. 7 at 13 (P.T.A.B. June 15, 2015) and *Butamax*, IPR2014-00581, Paper 8 at 12-13).

2.    *AWS's "roadmapping" in SNQs 1 and 2 supports denial.*

AWS, by its own characterizations, used the Office's June 2022 Office Action from the '034 proceedings as a roadmap to remedy deficiencies in its prior November 2021 Request. In particular, AWS acknowledges the June 2022 Office Action, "found that ONAG in view of OSG didn't render obvious claim 17.e" (August 2022 Request at 14), and argues this failure was the only reason the claim was not found unpatentable. To obviate that reason, AWS replaced its unsuccessful art with new secondary references that purportedly teach element 17.e, *i.e.*, Boukobza and OracleUnleashed. *Id.* at 14, 101-107, 158-169. This is precisely the type of "undesirable, incremental petitioning" and "roadmapping" for which the Office regularly denies follow-on challenges under § 325(d). *See In re Vivint*, 14 F.4[th] at 1353 (citing *Alarm.com*, IPR2016-01091, Paper 11, at 12 (citing cases)).

**B.    SNQ 3 presents substantially the same arguments.**

1.    *Becton Dickinson Factors (a) and (d) applied to SNQ 3 weigh in favor of denial.*

AWS's SNQ 3 presents a new combination of art: Ault (new primary reference) in view of Yocum (new secondary reference) and Boukobza (new secondary reference). August 2022 Request at 8. Despite presenting new references, AWS's arguments are substantially the same

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

as those in its November 2021 Request, thus causing *Becton Dickinson* factors (a) and (d) to support denial of SNQ 3.[17]

AWS's argument with respect to Ault is substantively the same as its argument regarding ONAG. *See Praxair*, IPR2016-00781, Paper No, 10 at 12 ("Although Petitioner now relies on Greenough and Jaypee, its underlying argument—that the prior art taught or suggested the exclusion of neonates with LVD from iNO treatment—is essentially the same as that raised in IPR2015-00529."). Indeed, AWS appears to put Ault and ONAG on equal footing in terms of disclosure, stating, "Requester establishes that the limitations of issued independent claim 17 and claims 23, 24, and 30 depending from claim 17 were already known in the art, as shown by OracleNamesAdminGuide's distributed database storage system *and other art*," which presumably includes Ault. August 2022 Request at 7 (emphasis added). For example, AWS asserts, "[ONAG] and Ault disclose distributed data storage systems that use the same techniques described in the '978 Patent." August 2022 Request at 1. AWS characterizes Ault and ONAG as "[s]imilarly" disclosing how to "answer the question in a distributed data storage system: 'where is my data?'" and how to "separate the 'where; (i.e., the location of the data entity) from the 'what' (i.e., the data entity itself)." *Id*. at 1-3 (asserting (1) "[ONAG] does this by using specialized servers called Names Servers, which serve as intermediaries between clients requesting data entities and the corresponding data storage servers," whereby a client "will query a Names Server to retrieve the data entity's network address, then use that address to connect to the entity housing the data," and (2) "…Ault discloses a location server for locating data in a distributed network using an identifier," whereby "a client seeking to locate

---

[17] As explained above in footnote 17, factor (b) should, at most, be neutral and should not weigh significantly against denial if, as the MPEP suggests, a cumulative reference is a "rare occurrence."

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

data will query the location server for the data's location" and "[t]he location server then sends the client the requested location information, which the client uses to build the connection request to access the desired data.").

AWS relies on Yocum in the same way it does Boukobza and OracleUnleashed—to teach the limitations of claim element 17.e. *See id*. at 7 ("In particular, Boukobza, OracleUnleashed, Ault, and Yocum teach or render obvious the method step of claim element 17.e."), 180 ("And regarding claim 17's 'transferring' step, Boukobza and Yocum further teach transferring identifiers and associated locations from a first server to a second server when a performance criterion of the first location server reaches a predetermined performance limit."). Thus, for similar reasons explained above in section 3.A, *supra*, and for the additional reasons explained below in section III.B.2., *infra*, AWS's new Request looks to Yocum to cure the deficiencies of ONAG and OSG, with respect to claim element 17.e.

Accordingly, *Becton Dickinson* factors (a) and (d), which deal with similarities and overlap between AWS's previously asserted art and the art it relies on in its August 2022 Request, weigh in favor of denying AWS's August 2022 Request.

> 2. *AWS's use of "roadmapping" in SNQ 3 supports denial.*

As with SNQs 1 and 2, the June 2022 Office Action provided AWS with a roadmap for presenting new arguments in hopes of overcoming the deficiencies of its earlier requests.

The August 2022 Request challenges <u>only</u> the four claims confirmed in the June 2022 Office Action—*i.e.*, claims 17, 23, 24, and 30. Those claims were confirmed because AWS failed to show element 17.e was obvious over ONAG and OSG.[18] *See* June 2022 Office Action at 35-36 (Statement of Reasons for Patentability and/or Confirmation). The June 2022 Office

---

[18] Claim 17 is an independent claim; claims 23, 24, and 30 depend from claim 17.

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

Action included a detailed explanation as to why ONAG and OSG do not disclose element 17.e. *Id*. In its follow-on request, AWS contends that the combination of Ault, Yocum, and Boukobza overcomes that specific failure. August 2022 Request at 14. The June 2022 Office Action thus provided AWS with a roadmap for presenting Ault, Yocum, and Boukobza in the manner asserted in SNQ 3, just as it did for SNQs 1 and 2.

As in *Alarm.com*, "[t]hese facts suggest that [this follow-on challenge] is a case of undesirable, incremental petitioning." IPR2016-01091, Paper 11 at 11-14 (citing cases). In *Alarm.com*, the challenger filed two prior IPR petitions, one raising grounds based on a primary reference called "Scadaware" combined with "Austin" or "Garton, and another raising grounds based on a primary reference called "Johnson" combined with "Joao" and "BACnet." *Id*. at 8. Both petitions were denied for failure to demonstrate a reasonable likelihood that the challenged claims would be found unpatentable. *Id*. After receiving both denials, the challenger filed a third IPR petition based on a new primary reference called "Shetty" combined with "Joao" and "Britton." *Id*. at 11. In denying the third petition under § 325(d), the Board found that it relied on the new combination of "Shetty, Joao, and Britton" to replace the primary references asserted in the prior petitions (Scadaware and Johnson) in order to "correct deficiencies" in those references and "use information cleaned from [the Board's] earlier decisions to bolster challenges it advanced unsuccessfully." *Id*. at 11-12.

AWS's August 2022 Request is analogous to the petition denied in *Alarm.com*. Here, the SNQ based on Ault (SNQ 3) is like the grounds based on Shetty in *Alarm.com*. Ault, like Shetty, is a new primary reference not presented in the prior November 2021 Request. The combination of Ault with Boukobza and Yocum replaces the combination of ONAG and OSG, just like the combination of Shetty with Joao and Britton replaced the Scadaware- and Johnson-based combinations in *Alarm.com*. The substitution of the Oracle-based combinations for the

21

Ault-based combinations comes *after* the Office's prior June 2022 Office Action for the purpose of correcting deficiencies in the prior November 2021 Request, just as the substitution in *Alarm.com* was responsive to deficiencies in the two prior IPR petitions that were previously denied.

As the Board noted in *Alarm.com*, it "repeatedly has exercised its discretion to deny petitions where petitioners similarly have used prior Board decisions as a roadmap to correct past deficiencies." IPR2016-01091, Paper 11 at 11-14 (citing cases). The Office should exercise such discretion here and deny, under reasoning similar to *Alarm.com*, AWS's second request for reexamination (its third overall challenge) of claims 17, 23, 24, and 30 of the '978 patent.

**C.    AWS offers no reason why its follow-on request should not be rejected under § 325(d).**

       *1.    AWS fails to demonstrate material error by the Office under any of Becton Dickinson Factors (c), (e), and (f).*

AWS's August 2022 Request should be terminated for the further reason that it cannot demonstrate any material error by the office under any of *Becton Dickinson* factors (c), (e) or (f). AWS contends only that its follow-on request "raises new and non-cumulative questions of patentability" that "have never been reviewed" by the Office. *See* August 2022 Request at 14-17 (§ II.E.). But more must be shown to avoid termination under § 325(d). Not only can a request for reexamination be denied under § 325(d) even when it raises an SNQ, *In re Vivint*, 14 F.4th at 1350, but AWS has made no attempt to demonstrate that "the Office erred in evaluating the old art or argument." *Advanced Bionics*, IPR2019-01469, Paper No. 6 at 7. That

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

AWS's follow-on request allegedly does not present solely "old art" or "cumulative" references[19] does not mean the request should not be terminated under the § 325(d) framework.

AWS's arguments distinguishing *In re Vivint* misapprehend its ruling. According to AWS, the court in *In re Vivint* ordered dismissal of reexamination proceedings because the request in that case "simply 'repackaged' arguments raised in a prior IPR petition." August 2022 Request at 14 n.35. AWS contends that its request is "unlike the request in *In re Vivint*" because it "relies on four new prior art references and three distinct SNQs that have never been reviewed or determined to be abusive by the USPTO." But *In re Vivint* is not limited to cases of "repackaging" or copying from a prior challenge. Rather, the decision holds that the Office must reject requests for *ex parte* reexamination under § 325(d) when the conditions for doing so are satisfied, just as it does for IPR petitions, and that failure to do so is an abuse of discretion. *In re Vivint*, 14 F.4th at 1346. Moreover, the court made clear that the *ex parte* reexamination request in *In re Vivint* (which followed an IPR request that had been denied institution under § 325(d)) was an even "more egregious abuse" than the unsuccessful IPR because it "used prior Board decisions as a roadmap to correct past deficiencies," and in doing so exemplified "'undesirable, incremental petitioning' practices." *Id.* at 1353 (citation omitted).

> 2. *AWS fails to justify its follow-on request and use of roadmapping.*

In determining whether to reject a serial challenge under § 325(d), the Office regularly considers whether the challenger fails to explain why it could not have raised the presented art and arguments in a prior challenge. *See, e.g.*, *Praxair*, IPR2016-00781, Paper No. 10 at 13

---

[19] *See* August 2022 Request at 14-17 (citing MPEP § 2258.01 and *In re Hiniker Co.*, 150 F.3d 1362, 1365-66 (Fed Cir. 1998)).

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

("[B]ecause, Petitioner now advances the same or substantially the same arguments it presented in IPR2015-00529 and because, as discussed above, it should have been aware of the newly-cited Greenough and Jaypee references when it filed the earlier Petition, we exercise our discretion under § 325(d) to deny the instant Petition with respect to all challenged claims."); *Butamax*, IPR2014-00581, Paper No. 8 at 12 ("First, we note that Butamax does not contend that the newly cited references were not known or available to it at the time it filed the 539 IPR. *See Unilever, Inc. v. Procter & Gamble Co.*, Case IPR2014-00506, slip op. at 6 (PTAB July 7, 2014) (Paper 17) (considering, in exercising § 325(d) discretion, whether new references were previously known).").

AWS makes no attempt to demonstrate that Boukobza (a U.S. patent), OracleUnleahsed (its own expert's publication), Ault (a U.S. patent), or Yocum (a U.S. patent) was previously unknown or unavailable to it. This is unsurprising, given that AWS admits prior awareness of OracleUnleashed—a book authored by AWS's own expert in both this and the '034 proceeding. August 2022 Request at 16. AWS also knew that OracleUnleashed was at issue in a prior (unsuccessful) request for reexamination of a patent related to the '978 patent. *Id.* at 16 (referring to Reexamination Control No. 90/014,552). Moreover, Boukobza, Ault, and Yocum are U.S. patents and were readily accessible through numerous catalogued and searchable databases, including those maintained by the USPTO.

## IV. Any Requirements of the Regulations That Would Otherwise Preclude Summary Termination of the Reexamination Should Be Waived Under 37 C.F.R. § 1.183

If any requirements of PTO regulations would preclude summary termination of the present reexamination, they should be waived under 37 C.F.R. § 1.183 because justice so requires in the extraordinary situation here. For example, PTO regulations prohibit patent owners from filing statements prior to the issuance of an order for reexamination. *See* 37 C.F.R.

24

§ 1.530(a) ("Except as provided in § 1.510(e), no statement or other response by the patent owner in an *ex parte* reexamination proceeding shall be filed prior to the determinations made in accordance with § 1.515 or § 1.520. If a premature statement or other response is filed by the patent owner, it will not be acknowledged or considered in making the determination, and it will be returned or discarded (at the Office's option).").

Extraordinary circumstances exist here because the requestor of the instant Request for *ex parte* reexamination failed to address whether the request should be rejected under 35 U.S.C. § 325(d) despite the applicability of that statute's provisions to its request, which is potentially dispositive at this early juncture. Justice and fundamental fairness require termination of this reexamination and any necessary waiver of PTO regulations for the reasons explained above in this Petition, which demonstrate that the instant Request should indeed be rejected under § 325(d).

Furthermore, in the case of *In re Vivint*, the Office asserted that the patent owner should have sought waiver of the Office's rules in order to raise a 37 C.F.R. § 1.181 petition to terminate the proceedings under § 325(d) before reexamination was ordered. *In re Vivint*, 14 F.4th at 1348. Patent Owner does so here to provide the Office with an early opportunity to consider the issue avoid the unnecessary waste of its resources.

## V. Petition Fee

The fees required by this paper under 37 C.F.R. §§ 1.16 and 1.17 are submitted herewith. If any extension of time is required in connection with the filing of this paper and has not been separately requested, such extension is hereby requested.

## VI. Relief Requested by This Petition

For the foregoing reasons, and in light of the aforementioned circumstances, regulations, and statutes, the Patent Owner respectfully requests the following relief:

25

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

1.  That the present reexamination be summarily and immediately terminated.

2.  That any requirement of regulations that would otherwise prevent granting this relief

    be waived in the interest of justice.


Respectfully submitted,

Date: October 6, 2022                         By /Khue V. Hoang/
                                              Khue V. Hoang
                                              Reg. No. 44,767
                                              REICHMAN JORGENSEN LEHMAN
                                              & FELDBERG LLP
                                              750 Third Avenue, Suite 2402
                                              New York, New York 10017
                                              (646) 921-0704

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

# EXHIBIT A

| OracleSG (OSG)<br>(Nov. 2021 Request) | Boukobza<br>(Aug. 2022 Request – SNQ 1) | OracleUnleashed<br>(Aug. 2022 Request – SNQ 2) |
|---|---|---|
| "To the extent OracleNamesAdminGuide doesn't disclose all elements of claims 1, 17, 23, 24, 30, and 31, OracleSG teaches associating an identifier to location information and the use of performance criterion to improve the query functions of the location servers." (page 42). | "To the extent OracleNamesAdminGuide doesn't disclose all elements of claim 17's "providing" "storing", and "receiving" steps, Boukobza teaches associating an identifier to location information. And regarding claim 17's "transferring" step, Boukobza further teaches transferring identifiers and associated locations from [a first server] to a second server when a performance criterion of the first location server reaches a predetermined performance limit." (page 66). | To the extent OracleNamesAdminGuide doesn't disclose all elements of claim 17's "providing," "storing," and "receiving" steps, OracleUnleashed teaches associating an identifier to location information. And regarding claim 17's "transferring" step, OracleUnleashed further teaches transferring identifiers and associated locations from a first server to a second server when a performance criterion of the first location server reaches a predetermined performance limit. (page 114) |
| "As the above overviews show, OracleNamesAdminGuide and OracleSG are in the same field of art and discuss managing distributed database systems using Oracle7 technology, and its associated tools and utilities. They contain overlapping disclosures focused on the similar purposes of improving query efficiency and resolution of user access." (page 42) | "As the above overviews show, OracleNamesAdminGuide and Boukobza are in the same field of endeavor—managing distributed data processing systems. They contain overlapping disclosures focused on the similar purposes of improving efficiency and resolution of user tasks. (page 66).<br><br>"Boukobza also describes its applicability to Oracle systems, making it likely that one working with OracleNamesAdminGuide would look to Boukobza to boost performance, as Mr. Greene outlines." (page 67) | "As the above overviews show, OracleNamesAdminGuide and OracleUnleashed are in the same field of art and discuss managing distributed database systems using Oracle7 technology, and its associated tools and utilities. They contain overlapping disclosures focused on the similar purposes of improving query efficiency and resolution of user access in relational database systems." (page 114) |
| "For example, to use SQL*Net effectively, OracleSG provides that a DBA should record error messages and consult "specific product manuals (for example, SQL*Net)" for solutions." (page 44) | "Boukobza then teaches methods applicable to SQL*Net and TNS Names Services, as shown in the below exemplary code, including the use of identifiers, connect strings, and the SQL*Net protocol language itself." (page 68) | "As described in OracleUnleashed, SQL*Net makes it easier for users to connect to various databases and find their data, which is advantageous because '[y]our users do not want to write complex queries.'" (page 116) |

| | | |
|---|---|---|
| "As Mr. Greene concludes, based on the commonplace need for efficiency in running queries, a POSITA would have been motivated to associate the identifier with data and location information because this allows OracleNamesAdminGuide's Names Server to quickly return the location information associated with the identifier string to the requesting client with minimized cost." (page 45) | "A POSITA would have been motivated to combine these references, as Mr. Greene attests. Boukobza touts the "significant gains in performance" its disclosures teach to combat "slow reaction times" and provide improved "access to objects." . . . To prevent or reduce slow reaction times on OracleNamesAdminGuide's Names Servers, a POSITA would have been motivated to apply Boukobza's performance tuning teachings to help achieve OracleNamesAdminGuide's desired "lightning fast" reaction times." (page 67) | "[A] POSITA would have been motivated and found it obvious to have OracleNamesAdminGuide's system associate location information with an identifier and respond to queries with location messages, based on OracleUnleashed's teachings." <br><br> "[A] a POSITA would have found it obvious to associate an identifier string with OracleNamesAdminGuide's data entity and location information for use in optimizing query efficiency, based on OracleUnleashed's teachings." (page 116) |
| "[A] POSITA would have found it obvious for OracleNamesAdminGuide's automatically transfer a portion of location information and associated identifiers from one Names Server to another Names Server in response to performance criteria measurements, based on OracleSG's teachings. As Mr. Greene explains, a POSITA would have been motivated to do so because this minimizes the time necessary to monitor and address performance criteria like storage usage and transaction limits for DBAs having limited resources to devote to maintaining performance. Further, a POSITA would have understood that Names Servers would routinely need to be added in an expanding system, such that automating the addition Names Servers when the number of transactions or available space reached a | As Mr. Greene concludes, based on Boukobza's teachings, a POSITA would have found it obvious for OracleNamesAdminGuide's system to automatically transfer a portion of location information and associated identifiers from one Names Server to another Names Server in response to performance criteria measurements. A POSITA would have been motivated to do so because this minimizes the time necessary to monitor and address performance criteria like storage usage and transaction limits for DBAs having limited time and resources to devote to maintaining performance. A POSITA would have understood that Names Servers would routinely need to be added in an expanding system in response to performance levels, including transaction rates and available storage space. As such, a POSITA would have been motivated to automate the addition of Names Servers to OracleNamesAdminGuide's system to reduce any manual | As Mr. Greene concludes, based on OracleUnleashed's teachings, a POSITA would have found it obvious for OracleNamesAdminGuide's system to automatically transfer a portion of location information and associated identifiers from one Names Server to another Names Server in response to performance criteria measurements. As Mr. Greene attests, a POSITA would have been motivated to do so because this would minimize the time necessary to monitor and address performance criteria like storage usage and transaction limits for DBAs having limited time and resources to devote to maintaining performance." (page 119) <br><br> "[A] POSITA would have understood that Names Servers would routinely need to be added in an expanding system in response to performance levels, including transaction rates andavailable storage space. As such, a POSITA would have been motivated to automate the |

Reexamination Control No. 90/019,109
U.S. Patent No. 7,233,978

| | | |
|---|---|---|
| certain level, results in maintaining performance of the system and reducing the time necessary to do so, as Mr. Greene explains." (page 46-47) | delay and more effectively maintain system performance. (page 70) | addition of Names Servers to OracleNamesAdminGuide's system to reduce any manual delay and moreeffectively maintain system performance." (page 120) |