# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| KOVE IO, INC., | |
| *Plaintiff*, | Case No. 1:18-cv-8175 |
| v. | |
| AMAZON WEB SERVICES, INC., | |
| *Defendant*. | |

## AWS'S MOTION FOR ADDITIONAL CLAIM CONSTRUCTION BRIEFING

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (*pro hac vice*)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Suite 400
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................1

II.   BACKGROUND ............................................................................................2

     A.   Claim Construction .............................................................................2

     B.   The *Ex Parte* Reexaminations of the Patents-in-Suit .............................2

     C.   The Stay Pending Reexaminations (March 8–November 5, 2022) ........................3

     D.   Kove Disputes AWS's Proposed Constructions. ......................................4

III.  LEGAL STANDARD........................................................................................5

IV.  ARGUMENT ..................................................................................................6

     A.   Additional Claim Construction Is Warranted Where Statements During Reexamination Lead to a Fundamental Dispute on Claim Scope............................6

     B.   During the Reexaminations, Kove Limited the Asserted Claims in Three Key Ways to Avoid the Prior Art. ...............................................8

     C.   AWS Has Proposed Constructions That Incorporate Kove's Disclaimers............13

     D.   Briefing the Claim Construction Disputes Before Summary Judgment Will Streamline the Litigation......................................................14

V.   CONCLUSION..............................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*,
  No. 1:06-cv-253, 2015 WL 3681065 (N.D. Ohio June 12, 2015) .......................................... 2

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001) ................................................................................. 15

*Aylus Networks, Inc. v. Apple Inc.*,
  856 F.3d 1353 (Fed. Cir. 2017) .......................................................................... 9, 13

*Bayer AG v. Biovail Corp.*,
  279 F.3d 1340 (Fed. Cir. 2002) ................................................................................. 15

*CIVIX v. Nat'l Ass'n of Realtors*,
  No. 05-cv-6869, 2007 WL 7759150 (N.D. Ill. Sept. 17, 2007) .......................................... 1, 6

*Conoco, Inc. v. Energy & Env't Int'l, L.C.*,
  460 F.3d 1349 (Fed. Cir. 2006) ................................................................................. 6

*Every Penny Counts, Inc. v. American Express Co.*,
  563 F.3d 1378 (Fed. Cir. 2009) ................................................................................. 5

*Finjan, Inc. v. Symantec Corp.*,
  No. 14-cv-2998, 2016 WL 6563342 (N.D. Cal. Nov. 4, 2016) ...................................... 1, 7, 8

*GPNE Corp. v. Apple Inc.*,
  830 F.3d 1365 (Fed. Cir. 2016) ................................................................................. 6

*In re Papst Licensing Digit. Camera Pat. Litig.*,
  778 F.3d 1255 (Fed. Cir. 2015) ................................................................................. 6

*Jack Guttman, Inc. v. Kopykake Enters., Inc.*,
  302 F.3d 1352 (Fed. Cir. 2002) ................................................................................. 6

*Kim v. Earthgrains Co.*,
  766 F. Supp. 2d 866 (N.D. Ill. 2011) ........................................................................ 2

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) ................................................................................................. 5

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
  No. 14-cv-03657, 2018 WL 4616255 (N.D. Cal. Sept. 26, 2018) ...................................... 1, 8

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ........................................................................ 1, 5, 6

*Pfizer, Inc. v. Teva Pharm., USA, Inc.*,
   429 F.3d 1364 (Fed. Cir. 2005) ............................................................................................... 6

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ............................................................................................... 8

*Pitney Bowes, Inc. v. HewlettPackard Co.*,
   182 F.3d 1298 (Fed. Cir. 1999) ............................................................................................. 15

*Procter & Gamble Co. v. Kraft Foods Glob., Inc.*,
   549 F.3d 842 (Fed. Cir. 2008) ................................................................................................. 6

*Saffran v. Johnson & Johnson*,
   712 F.3d 549 (Fed. Cir. 2013) ............................................................................................. 8, 9

*Sloan Valve Co. v. Zurn Indus., Inc.*,
   No. 10-cv-204, 2012 WL 4049361 (N.D. Ill. Sept. 13, 2012) ................................................ 6

*Southwall Techs., Inc. v. Cardinal IG Co.*,
   54 F.3d 1570 (Fed. Cir. 1995) ................................................................................................. 9

*TVIIM, LLC v. McAfee, Inc.*,
   No. 13-cv-04545, 2015 WL 3956313 (N.D. Cal. Jun. 28, 2015) ............................................ 5

*X One, Inc. v. Uber Techs., Inc.*,
   440 F. Supp. 3d 1019 (N.D. Cal. 2020) ...................................................................... 1, 11, 12

## I. INTRODUCTION

As the Federal Circuit held in *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."[1] Here, there are three such fundamental disputes about the asserted claims of the patents-in-suit. All three are rooted in arguments that Kove made in *ex parte* reexaminations to differentiate the claims from AWS's prior art. For example, Kove further limited the scope of all asserted claims by arguing to the Patent Office that they "require *non-hierarchical* structure."[2] Yet, Kove has declined to agree to AWS's proposed claim constructions in this forum limiting the claims to "non-hierarchical" structure.

As this Court explained in *CIVIX v. National Association of Realtors*, statements like those Kove made to the Patent Office "become part of the prosecution history."[3] Thus, consistent with *O2 Micro*, courts routinely revisit claim construction to address narrowing arguments that patent owners make during *ex parte* reexaminations and other post-grant proceedings. For instance, in *Finjan, Inc. v. Symantec Corp.*, after lifting a stay pending *inter partes* review, the Northern District of California found "good cause to allow for additional claim construction briefing and a *Markman* hearing" to address the plaintiff's assertions to the Patent Office that "arguably" narrowed the asserted claims.[4] Absent such further claim construction, a patent owner like Kove

---

[1] 521 F.3d 1351, 1362 (Fed. Cir. 2008).

[2] *See, e.g.*, Ex. A at 23, n. 2 (describing asserted '640 claims 17 and 18) (emphasis in original); *accord, e.g.*, Ex. B at 25 (Asserted "claims 1, 6, and l5 of the '170 patent require networks with *non-hierarchical* (or 'cluster') configurations of location servers ...."); Ex. C at 35 (similar, in '978 reexamination).

[3] No. 05-cv-6869, 2007 WL 7759150, *3 (N.D. Ill. Sept. 17, 2007).

[4] No. 14-cv-2998, 2016 WL 6563342, at *2 (N.D. Cal. Nov. 4, 2016) (also granting briefing on statements in co-pending litigation); *see also, e.g.*, *X One, Inc. v. Uber Techs., Inc.*, 440 F. Supp. 3d 1019, 1040–46 (N.D. Cal. 2020) (revisiting claim construction and concluding that arguments in *inter partes* review further limited claims); *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657, 2018 WL 4616255, at *6 (N.D. Cal. Sept. 26, 2018) (revisiting claim construction to address two terms following *ex parte*

would be permitted to reduce the bounds of its monopoly to secure Patent Office approval, and then expand those bounds in litigation to recapture what it disclaimed.

Hence, AWS respectfully requests additional claim construction briefing to resolve the parties' disputes regarding the scope of the asserted claims. Addressing and resolving these disputes before the close of fact and expert discovery will allow the parties to develop a full record before the dispositive motion deadline and trial. It will thus streamline the briefing and disputed issues for the Court to adjudicate during the latter stages of the case. Accordingly, and as detailed further below, AWS asks that the Court grant its motion.

## II.    BACKGROUND

### A.    Claim Construction

Per the Court's scheduling order, the parties previously exchanged claim construction positions and filed claim construction briefs.[5] On July 23, 2021, the Court held a video *Markman* hearing.[6] Before or shortly after the hearing, the parties narrowed the issues, and agreed on constructions for three of the eight claim terms that they initially disputed.[7] On December 17, 2021, the Court issued an order construing the remaining five disputed terms.[8]

### B.    The *Ex Parte* Reexaminations of the Patents-in-Suit

In November 2021, AWS filed three requests for *ex parte* reexamination, collectively challenging Kove's 19 asserted patent claims. By January 2022, the Patent Office had found that each

---

reexamination); *01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*, No. 1:06-cv-253, 2015 WL 3681065, at *2 (N.D. Ohio June 12, 2015) (similar); *Kim v. Earthgrains Co.*, 766 F. Supp. 2d 866, 870–71 (N.D. Ill. 2011) (revisiting claim construction following amendment of asserted patent).

[5] *See* Dkt. 219, 247, 262, 265, & 273.

[6] *See* Dkt. 365.

[7] *See* Dkt. 484 at 11; *see also* Dkt. 247 at 25 (Kove withdrawing proposed construction for one of eight disputed terms addressed in AWS's in opening brief, and agreeing that no construction was required).

[8] Dkt. 484; *see also* Dkt. 382 (post-hearing chart of proposed constructions of disputed terms).

request raised a "substantial new question of patentability," and had instituted reexamination proceedings corresponding to each of Kove's three patents-in-suit.[9]

In the '640 and '170 patent reexaminations, the Patent Office issued non-final office actions that initially rejected all asserted claims over the prior art that AWS had identified.[10] Similarly, in the '978 reexamination, the Patent Office initially rejected six of ten asserted claims.[11]

Kove then filed responses in each proceeding with arguments for overcoming the cited prior art.[12] In those responses, as well as accompanying expert declarations and other statements, Kove limited the scope of its patents in at least three key ways. For instance, as detailed below, Kove repeatedly argued that the asserted claims require a "non-hierarchical … server structure that enables retrieval of requested information in not more than two iterations."[13] None of the asserted claims, though, refers to a "non-hierarchical" server structure or such "iterations."

## C. The Stay Pending Reexaminations (March 8–November 5, 2022)

On March 8, 2022, Judge Pallmeyer stayed this action pending resolution of the *ex parte* reexaminations.[14] Those reexaminations substantially concluded on October 27, 2022, with the Patent Office issuing a final action rejecting independent claims 1 and 31 of the '978 patent, and

---

[9] Specifically, Reexamination No. 90/019,034 ('978 patent), Reexamination No. 90/019,035 ('170 patent), and Reexamination No. 90/019,036 ('640 patent). *See* Dkt. 487-1, 487-2, & 490-3.

[10] Ex. D (May 11, 2022 Non-Final Office Action in Reexamination No. 90/019,035); Ex. E (May 4, 2022 Non-Final Office Action in Reexamination No. 90/019,036).

[11] Dkt. 526-4 (June 28, 2022 Non-Final Office Action in Reexamination No. 90/019,034).

[12] Ex. A ('640 patent response to non-final office action); Ex. B ('170 patent response to non-final office action); Ex. C ('978 patent response to non-final office action).

[13] Ex. A at 10; Ex. B at 11; Ex. C at 12.

[14] Dkt. 515. On Aug. 31, 2022, after the stay order, AWS filed an additional request for *ex parte* reexamination of the first four asserted claims to be confirmed (Reexamination No. 90/019,109, challenging '978 claims 17, 23, 24, and 30). The Patent Office granted that additional request on Nov. 22, 2022.

confirming the other asserted claims.[15]

On September 23, 2022, Kove moved to lift the stay, and AWS initially opposed that motion.[16] In doing so, AWS advised that "based on what Kove argued to overcome prior art" in the reexaminations, "AWS will ask this Court to revisit the construction of disputed claim terms found in all three patents."[17] After the substantial conclusion of the '978 reexamination, AWS consented to lifting the stay.[18] On November 5, the Court did so, directing the parties to confer and "file a joint status report setting out a proposed schedule."[19]

**D.      Kove Disputes AWS's Proposed Constructions.**

On November 9, as stated in the joint status report, AWS provided Kove with a written explanation of AWS's basis for requesting further claim construction, including the three key ways that Kove had narrowed the scope of its asserted claims in the EPRs.[20] AWS also proposed dates for further claim construction.[21] Kove responded by maintaining that there was no basis for further construction of any claim terms.[22]

---

[15] *See* Dkt. 532-2. In September–October 2022, the Patent Office issued notices of its intent to confirm the asserted '640 and '170 claims. *See* Dkt. 533 at 2. So far, only one of the three reexaminations that AWS requested in November 2021 has formally concluded through the issuing of a Reexamination Certificate.

[16] Dkt. 526, 527.

[17] Dkt. 530 at 12 ("Kove has made numerous arguments in these EPRs to overcome the prior art and thus narrow the scope of the asserted claims. As this Court has recognized, this is 'relevant prosecution history when interpreting claims.' And the upcoming Kove arguments and decisions in the '978 patent EPRs will provide further evidence on the proper scope of the claims, and also may introduce additional claim construction issues that AWS will ask the Court to address.") (internal citation omitted).

[18] Dkt. 533.

[19] Dkt. 534.

[20] Dkt. 535 at 4–5. Specifically, AWS stated: "Kove narrowed the scope of its invention to cover: (1) location servers in non-hierarchical, cluster structures, (2) which each contain the relevant location information or information to locate the relevant location information, (3) and can resolve the request in two or fewer steps."

[21] *Id*. at 2–3.

[22] *Id*. at 5.

On November 10, 2022, the Court conducted a telephonic status hearing. At that hearing, the Court extended the fact discovery cutoff, and declined to schedule further claim construction, but stated that AWS could file a motion for further claim construction with a more detailed explanation for why it's warranted.[23]

After the hearing, AWS provided Kove a chart identifying the terms and proposed constructions that AWS sought to address.[24] And on November 16, the parties conducted a meet-and-confer regarding additional claim construction. Later that day, AWS also provided additional information in response to Kove's questions regarding Amazon's proposed claim constructions.[25] But on Friday, November 18, Kove informed AWS that it "does not agree with AWS's proposed constructions and opposes its motion to reopen claim construction."[26]

## III. LEGAL STANDARD

Claim construction is a matter of law for the Court to determine.[27] Under *O2 Micro*, "the court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury. In order to fulfill this obligation, the court must see to it that disputes concerning the scope of the patent claims are fully resolved."[28] Depending on the circumstances of a particular case, this

---

[23] Dkt. 536 (also directing parties to file joint status report by January 10, 2023, and scheduling a further status hearing for January 17, 2023).

[24] Ex. F (Nov. 15, 2022 email from AWS to Kove).

[25] *Id*. (Nov. 16, 2022 email from AWS to Kove).

[26] *Id*. (Nov. 18, 2022 email from Kove to AWS).

[27] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996).

[28] *Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) (internal citation to *O2 Micro*, 521 F.3d at 1362, omitted); *accord, e.g.*, *TVIIM, LLC v. McAfee, Inc.*, No. 13-cv-04545, 2015 WL 3956313, at *1 (N.D. Cal. Jun. 28, 2015) ("Because the parties fundamentally dispute the meaning and scope of the term 'vulnerability' as used in the [asserted] claims, the Court finds that some degree of claim construction is required.").

duty may extend to disputes that arise after a *Markman* order.[29] Indeed, the Federal Circuit has further held that "a district court may (and sometimes must) revisit, alter, or supplement its claim constructions ... to the extent necessary to ensure that final constructions serve their purpose of genuinely clarifying the scope of claims for the finder of fact."[30] And this Court's Local Patent Rules are consistent with this, as LPR 1.1 provides that this Court "may modify the obligations and deadlines of the LPR based on the circumstances of any particular case."

## IV.   ARGUMENT

### A.   Additional Claim Construction Is Warranted Where Statements During Reexamination Lead to a Fundamental Dispute on Claim Scope.

As this Court has explained, "statements made during … reexamination proceedings become part of the prosecution history."[31] Such statements may not be available at the time of the *Markman* hearing in a particular case. But parties may timely raise them before trial.[32] And courts routinely revisit claim construction to address narrowing arguments that patent owners make during post-grant proceedings.[33]

For instance, in *Finjan, Inc. v. Symantec Corp.*, the parties had previously identified ten

---

[29] *See, e.g.*, *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) (Courts "may engage in claim construction during various phases of litigation, not just in a *Markman* order."); note 4, *supra* (collecting cases); *see also Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.").

[30] *In re Papst Licensing Digit. Camera Pat. Litig.*, 778 F.3d 1255, 1261 (Fed. Cir. 2015) (citing *O2 Micro*, 521 F.3d at 1359, and *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005)); *see also Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 848 (Fed. Cir. 2008) ("The district court should monitor the proceedings before the PTO to ascertain whether its construction of any of the claims has been impacted by further action at the PTO or any subsequent proceedings.").

[31] *CIVIX*, 2007 WL 7759150, at *3; *accord Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10-cv-204, 2012 WL 4049361, at *7 (N.D. Ill. Sept. 13, 2012) (Such statements "are relevant prosecution history when interpreting claims.").

[32] *E.g.*, *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1372 (Fed. Cir. 2016).

[33] *See* note 4, *supra* (collecting cases).

terms for construction.[34] They had completed briefing those terms, and the court had held a *Markman* hearing before staying the case pending resolution of an IPR.[35] But during the stay, the patent owner made arguments in the IPR and other litigation that "arguably" limited the claims.[36] And when the court lifted the stay, the defendant sought "an order allowing the parties to submit additional claim construction briefing and scheduling another *Markman* hearing" to address those discrete issues.[37] For example, after the patent owner's statements, the parties disputed whether it had disclaimed "manually updating" search results. As the court explained:

> The parties already submitted for construction the "dynamically updating" phrases from these patents.… During the subsequent IPR proceedings, Plaintiff arguably represented that the prior art submitted by Defendant did not meet the claim limitation because the prior art taught manually updating search results. Defendant contends that Plaintiff, having made these arguments before the PTAB, cannot now accuse products of infringing these claims where the "dynamically updating..." step is allegedly performed only after user intervention. Accordingly, Defendant seeks leave to brief whether "without user intervention" should be added to its proposed constructions. Plaintiff, in contrast, argues that its statements during the IPR proceedings do not constitute claim disavowal.[38]

So, the court found that there was a "fundamental dispute" over the scope of the "dynamically updating" terms.[39] And when applying local patent rules similar to this Court's, the court found "good cause" for additional claim construction briefing and a second *Markman* hearing, before the close of discovery and dispositive motions.[40]

---

[34] No. 14-cv-2998, 2016 WL 6563342, at *1 (N.D. Cal. Nov. 4, 2016).

[35] *Id.*

[36] *Id.* at *2.

[37] *Id.* at *1.

[38] *Id.* at *2 (internal citations and parentheticals omitted).

[39] *Id.*

[40] *Id.* at *3 ("There is good cause to depart from the default deadlines and obligations of the Patent Local Rules because resolving the targeted number of fundamental disputes described above will assist the fact finder in ruling on the patent infringement claims, help the parties tailor discovery to the scope of claims,

Similarly, in *MLC Intellectual Property, LLC v. Micron Technology, Inc.*, the defendant requested supplemental claim construction in light of statements that the plaintiff made during reexamination.[41] The court concluded that "[t]o the extent that the file history changed as a result of the *ex parte* reexamination and there is an actual dispute between the parties, the Court must reconsider claim construction."[42] The Court then addressed each of the terms that the defendant argued had changed due to reexamination, and whether the plaintiff's statements to the Patent Office affected the construction of those terms.[43]

Here, Kove's statements during reexamination, detailed below, more clearly constitute disclaimer and limit the asserted claims than those at issue in *Finjan*, *MLC Intellectual Property*, and similar cases.[44] And the case for additional claim construction here is stronger accordingly.

## B. During the Reexaminations, Kove Limited the Asserted Claims in Three Key Ways to Avoid the Prior Art.

Typically, courts interpret claim terms using the ordinary and customary meaning to an ordinarily skilled artisan at the time of invention.[45] One well-established exception is where the

---

and allow experts to render more precise opinions.").

[41] No. 14-cv-3657, 2018 WL 4616255 (N.D. Cal. Sept. 26, 2018).

[42] *Id.* at *6.

[43] This included terms the court had previously construed, and terms it hadn't. *Id.* at *2–4. Based on the patent owner's statements during reexamination, the court construed one new term, revised its previous construction of another, and declined to reconstrue three terms. *Id.* at *7–12.

[44] In *Finjan*, for instance, the defendant relied on two substantially similar statements that plaintiff made in the *inter partes* review. *See, e.g.*, 2016 WL 6563342, at *2 ("Rowan simply gives the user an opportunity to check a site's trustworthiness manually at a later time based on a trustworthiness report, not a presentation that is dynamically updated when additional security assessments are received."). After granting and conducting the second *Markman* hearing, the court ultimately decided the dispute over these statements in the patent owner's favor. *See* N.D. Cal. No. 4:14-cv-2998, Dkt. 170 at 23 ("Given that in the IPR proceeding Finjan never used the phrasing that Symantec now seeks to insert into the claim construction to define the invention, the Court cannot find a clear and unambiguous disavowal.").

[45] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

patentee clearly and unambiguously disavows claim scope during prosecution.[46] For example, where a patentee stated during prosecution that "the device used is a sheet," the Federal Circuit found that the claimed invention was limited to a continuous sheet.[47] Holding patentees to such statements in Patent Office proceedings serves fundamental notions of fairness, and is necessary for the public to have notice of the claimed monopoly.[48] As the Federal Circuit explained in *Aylus Networks, Inc. v. Apple Inc.*: "Ultimately, the doctrine of prosecution disclaimer ensures that claims are not 'construed one way in order to obtain their allowance and in a different way against accused infringers.'"[49]

Here, to overcome the Oracle System prior art that AWS submitted to the Patent Office, Kove limited the scope of the asserted claims in three key ways. Specifically, Kove made it clear that its inventions only cover: (1) location servers in non-hierarchical, cluster structures, where each location server (2) contains the relevant location information, or information to locate the relevant location information, and (3) can resolve the request in two or fewer steps.

**Non-Hierarchical, Cluster Structure:** In all three reexaminations, in response to the Patent Office's initial rejections of asserted claims over the prior art,[50] Kove disclaimed networks with hierarchical or non-cluster structures. For instance, Kove argued that limitations of the asserted claims "cannot be met in hierarchical configurations such as [Oracle's] Names Server."[51]

---

[46] *E.g.*, *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013).

[47] *Id*.

[48] *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359–1360 (Fed. Cir. 2017).

[49] *Id*. at 1360 (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995)); *see also id*. (noting that this doctrine extends to "statements made in reexamination proceedings").

[50] *See generally* notes 10–12, *supra*.

[51] Ex. C at 36; Ex. B at 26.

And Kove repeatedly distinguished the Oracle Names Administrator's Guide (ONAG) prior art on this basis. In the '978 reexamination, Kove argued that:

> The Examiner points to ONAG Figure C-4 as allegedly disclosing the claimed "cluster topology" recited in claim 10. But ONAG only describes the hierarchical topology of [Oracle's] Names Servers.[52]

Kove also made similar arguments in the other reexaminations.[53]

Moreover, in the '170 patent reexamination, Kove argued that a non-hierarchical cluster structure is "expressly" claimed, despite the absence of the words "non-hierarchical," "cluster," or any description of how the location servers are arranged:

> This non-hierarchical cluster composition is expressly claimed in claim 1, through the requirement that the data location information is portioned and organized across the data location servers based on a hash function and each and every data location server being configured to determine the data location server that contains the location information based on applying the hash function to the identifier string associated to the location information.[54]

Kove made similar assertions in the '640 and '978 reexaminations, based on the different language of the asserted claims of those patents.[55] Yet, only one asserted claim, claim 10 of the '978 patent, describes location servers arranged in a "cluster topology." And "non-hierarchical" doesn't appear in any asserted claim of any patent-in-suit.

And Kove admitted that the patent specifications describe hierarchical, non-hierarchical, and hybrid embodiments, but made it clear that the asserted claims are non-hierarchical:

---

[52] Ex. C at 51; *see also id.* at 35 ("ONAG lacks the non-hierarchical cluster structure required to satisfy the requirements of independent claims 10 and 14 and dependent claim 3."); *id.* ("In contrast, independent claims 10 and 14 and dependent claim 3 of the '978 patent require networks with *non-hierarchical* (or 'cluster') configurations ....") (emphasis in original).

[53] *See, e.g.,* Ex. A at 23; Ex. B at 26.

[54] Ex. B at 36; *see also id.* at 53 ("This non-hierarchical cluster composition is expressly claimed in claims 6 and 15, through the requirement that the redirect message indicate with specificity the data location server that contains the location information.").

[55] Ex. A at 39; Ex. C at 35, 66.

10

> Although the '640 specification discloses hierarchical applications for NDTP as possible embodiments, [asserted] claims 17 and 18 require *non-hierarchical* structure, as explained here and throughout this Reply [to the non-final rejection].[56]

Such repeated statements are clear and unmistakable disclaimers that limit the asserted claims beyond what may otherwise be the plain and ordinary meaning.[57]

**Every Location Server Has Data for Every Network Request:** Second, based on the new structure limitation, Kove further argued that the claims require that *all* location servers store information to serve *all* location requests. For instance, in the '640 patent reexamination, Kove argued as follows, with all bold, italics, and underlining in the original:

> The[] invention, as embodied in the claims of the '640 patent, enables a client to retrieve data *by sending a query to __any__ server in the network*, not just servers organized by a tree, and having that server *be capable of providing information that permits the client to calculate the location of a second server __known to contain the requested information__*. Claims 17 and 18 therefore require *__every server__* in the network be able to return information for calculating the location of the server that contains the requested information.[58]

And Kove argued that this capability of all location servers distinguished the claims from the prior art:

> [T]he '640 patent requires that *each and every* server in the data location server network have the capability of transmitting information to the client that the client then processes to determine the server that contains its requested information. This configuration "collapses" the hierarchical composition of Oracle Names, making it entirely different in practice and principle from what Oracle Admin discloses. Oracle Admin in no way teaches that Oracle Names network servers have this capability.[59]

Kove similarly emphasized this requirement in its arguments in the reexaminations of the '978 and

---

[56] Ex. A at 23, n. 2; *see also* Dkt. 484 at 13 (noting '640 and '170 patents "share the same specification").

[57] *See, e.g., X One*, 440 F. Supp. 3d at 1045 ("That X One repeatedly made this argument to the [Patent Office during *inter partes* review] leads the Court to find that these statements, taken together, amount to a 'clear and unmistakable disclaimer' of the '647 Patent's scope.").

[58] Ex. A at 10.

[59] *Id.* at 23 (emphasis in original); *see also, e.g.*, Ex. C at 36 (similar).

'170 patents.[60] Again, such statements amount to clear and unmistakable disclaimers.[61]

**Location Servers Resolve Requests in Two or Fewer Steps:** Relatedly, Kove argued the claims require clients to receive their location information in two or fewer steps or "iterations." For instance, in all three reexaminations, Kove argued:

> The structured relationships of the invention allow clients to access data in distributed environments through a non-hierarchical, limitlessly scalable, server structure *that enables retrieval of requested information in not more than two iterations*.[62]

In other words, if a client requests location information from a location server, and the location server contains the requested information, then the client receives it on the first iteration.[63] If the location server doesn't contain the requested information, it identifies the location server that does, and the client receives the requested information on the second iteration.[64] According to Kove, this retrieval of requested information in not more than two iterations distinguished the claimed inventions from the prior art. For instance, in the '640 reexamination, Kove argued that the prior art's "hierarchical configuration restricts the ability of a client to find the authoritative server in the network without undergoing the traversals (iterations) required in navigating a tree structure."[65]

---

[60] Ex. B at 11 ("Their invention, as embodied in the claims of the '170 patent, enables a client to retrieve data through *any server* in the network and *receiving in response the location information associated with a desired entity*. Claims 1, 6, and 15 (and their dependent claims) require the servers in the network to provide the relevant location information. In other words, *any queried server will either have the requested information or will identify which other server contains the requested information*.") (emphasis in original); Ex. C at 12 (same, but referring to '978 claims); *see also, e.g.*, Ex. B at 25 ("For example, if a queried server receives a request for the data locations associated with a particular identifier but does not have it, that server will return a message to [sic] indicating which other server in the network contains the requested information.").

[61] *See, e.g.*, *X One*, 440 F. Supp. 3d at 1045.

[62] Ex. A at 10 (emphasis added); Ex. B at 11 (same); Ex. C at 12 (same).

[63] *See, e.g.*, Ex. C at 12, 16–17.

[64] *See, e.g.*, *id.*

[65] Ex. A at 28; *see also id.* at 23 (describing prior art as requiring "numerous" iterations).

Kove also made similar arguments in its other responses.[66]

But, as with other limitations that Kove added to overcome prior art, these "iterations" are absent from the claims, the specifications, the previous prosecution history, Kove's previous claim-construction arguments, and the Court's claim construction. Without further construction, Kove won't be held to its representations during the reexaminations, as Federal Circuit law requires.[67] Kove isn't free to argue limitations that don't exist in the claims to the Patent Office to overcome prior art, but jettison those same limitations when arguing infringement to the jury.

### C.    AWS Has Proposed Constructions That Incorporate Kove's Disclaimers

As noted, AWS has already proposed constructions that incorporate Kove's arguments and disclaimers during the reexaminations.[68] Each is material to the infringement analysis and, AWS believes, dispositive. For example, the term "location server" is found in the limitations of all 19 asserted claims.[69] The Court previously addressed this term in its December 2021 Order.[70] As the Court noted, the parties agreed that a "location server" should be interpreted as "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to [ ] request messages from clients."[71] The only difference in the parties' proposals was one word before "request messages"—Kove argued for "location request messages," while

---

[66] *See*, *e.g.*, Ex. B at 11; Ex. C at 12.

[67] *E.g.*, *Aylus Networks*, 856 F.3d 1353 at 1359–1360.

[68] *See* Appendix A, attached hereto. Per the schedule that AWS suggested and the LPR, AWS is willing to further confer with Kove regarding these proposed constructions.

[69] Of the 19 asserted claims, 17 expressly include this term. And the remaining two asserted claims depend from independent claims that include it. The Court's claim construction order quotes claims that are illustrative (e.g., independent claim 17 of the '978 patent). Dkt. 484 at 6–9.

[70] *Id*. at 19.

[71] *Id*.

AWS argued for "NDTP request messages."[72] Ultimately, the Court adopted Kove's variation of the otherwise-agreed-upon construction.[73]

On November 15, AWS proposed a revised construction of "location server" that incorporates the second Kove disclaimer discussed above—that location servers must have data for every network request. And based on concerns that Kove raised at the meet-and-confer, AWS further revised this proposed construction to the following (with added language in bold):

> a network-attached component that maintains, **for satisfying every request for the location of data on the network,** a set of **at least one of (1)** identifier/location mappings **or (2) information about the location of such mappings** that are modified or returned in response to **all** location request messages from clients.[74]

AWS similarly proposed constructions that incorporate the requirement that the location servers be arranged in non-hierarchical, cluster structures, and that clients receive relevant location information in two or fewer iterations.[75] And AWS is willing to further confer and refine these proposals, as the LPRs contemplate, should the Court schedule further claim construction briefing.

### D. Briefing the Claim Construction Disputes Before Summary Judgment Will Streamline the Litigation.

At the last status conference, the Court suggested that it may revisit any new claim construction issues in connection with summary judgment motions. AWS agrees that the Court may revisit claim construction at that time.[76] But the Court would still be required to construe the claims first, before proceeding with the validity or infringement analyses. As the Federal Circuit has

---

[72] *Id.*

[73] *Id.* at 21.

[74] Appendix A (chart incorporating revisions from Ex. F (Nov. 16, 2022 email from AWS to Kove)).

[75] *See id.*

[76] *See, e.g., Kim*, 766 F. Supp. 2d 866 (following reexamination, finding it necessary to revisit claim construction for new and previously construed terms, then granting summary judgment of non-infringement based on updated constructions).

stated, "[a] claim must be construed before determining its validity just as it is first construed before deciding infringement."[77] And AWS respectfully submits that separate claim construction briefing before dispositive motions will help streamline the briefing of those motions, as well as expert reports and expert discovery. For instance, this would avoid unnecessary alternative briefing and expert reports based on alternative or later-revised claim constructions. This also would allow the parties to more fully address the language of the 19 asserted claims, and avoid the need for summary judgment briefing to repeatedly cross-reference the relevant statements that Kove made in the three *ex parte* reexaminations.

## V. CONCLUSION

In the *ex parte* reexaminations, Kove's arguments to overcome the prior art limited the scope of its asserted monopoly to location servers in non-hierarchical, cluster structures, with each location server containing information to resolve every request in two or fewer steps. As Kove disputes that its claims should be commensurately limited here, the Court should set a schedule for additional claim construction briefing to address the fundamental disputes that have arisen since the *Markman* hearing, due to Kove's statements in the *ex parte* reexaminations.[78]

---

[77] *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001); *accord Bayer AG v. Biovail Corp.*, 279 F.3d 1340, 1349 (Fed. Cir. 2002) (requiring district court to construe claims before granting summary judgment of non-infringement); *Pitney Bowes, Inc. v. HewlettPackard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (Infringement requires a two-step analysis: "First, the claims of the patent must be construed to determine their scope. Second, a determination must be made as to whether the properly construed claims read on the accused device.") (internal citations omitted).

[78] The November 9 joint status report proposes such a schedule, though the dates would need to be pushed back to allow for the ruling on the present motion.

Dated: November 28, 2022

Respectfully submitted,

_/s/ R. William Sigler_
Alan M. Fisch
_alan.fisch@fischllp.com_
R. William Sigler
_bill.sigler@fischllp.com_
Jeffrey M. Saltman (_pro hac vice_)
_jeffrey.saltman@fischllp.com_
Lisa Phillips (_pro hac vice_)
_lisa.phillips@fischllp.com_
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Suite 400
Washington, DC 20015
202.362.3500

_Attorneys for Amazon Web Services, Inc._

**APPENDIX A**

| Claims | Terms | Proposed Constructions |
|---|---|---|
| '640: 17, 18, 24 '170: 1, 2, 6, 8, 9, 12, 15 '978: 1, 3, 6, 10, 14, 17, 23, 24, 30, 31 | "network" / "system" | [network/system] **arranged in a non-hierarchical, cluster topology** |
| '640: 17, 18, 24 '170: 1, 2, 6, 8, 9, 12, 15 '978: 1, 3, 6, 10, 14, 17, 23, 24, 30, 31 | "location server" | a network-attached component that maintains**, for satisfying every request for the location of data on the network,** a set of **at least one of (1)** identifier/location mappings **or (2) information about the location of such mappings** that are modified or returned in response to **all** location request messages from clients |
| '640: 17, 18 '170: 1, 2, 5, 6, 8, 9, 12 '978: 1, 3, 6, 10, 17, 23, 24, 30, 31 | "providing" / "determin[e/ing]" / "retrieving" location information or servers | providing, **without performing any request iterations,** … location information / determin[e/ing] **without performing any request iterations,** … location servers / retrieving **in two or fewer request iterations** location information |
| '640: 17, 18 '170: 6, 15 '978: 3, 10, 14 | "return" / "sending" / "transmit[s/ting]" a redirect message | return / sending / transmit[s/ting] a redirect message **without performing any request iterations** |

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 28, 2022, I electronically filed the foregoing with the

Clerk of the Court for the United States District Court for the Northern District of Illinois, via the

CM/ECF system, and served a copy on all counsel of record via email.

*/s/ R. William Sigler*
R. William Sigler