# Exhibit A

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| *In re*: Reexam of U.S. Patent No. 7,103,640 | Confirmation No.: 7777 |
| Control No. 90/019,036 | Art Unit: 3992 |
| Filed: November 19, 2021 | Examiner: KE, Peng |
| For: **Network Distributed Tracking Wire Transfer Protocol** | Atty. Docket: KOVE-640EPR036 |

## Patent Owner's Reply to Office Action in *Ex Parte* Reexamination

***Mail Stop "Ex Parte* Reexam"**
Attn: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Commissioner:

Patent Owner hereby replies to the Office Action dated May 4, 2022, issued in the above-captioned *ex parte* reexamination. The due date for reply is August 4, 2022, based on the Office's June 9, 2022 Decision on Petition for Extension of Time in Reexamination granting Patent Owner's petition for an extension of time. No additional fees are believed to be necessary, however, to prevent abandonment of this reexamination, please contact the undersigned representative for payment information.

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

### *Status of the Claims*

A listing of each claim under reexamination is provided below. Although no claim amendments are proposed in this response, the patent owner nonetheless provides this listing of original claims from U.S. Patent No. 7,103,640 to Overton et al. ("the '640 patent") for ease of reference and review.

The following claims are subject to *ex parte* reexamination:

17. (Patent Claim) A system for retrieving data location information for data stored in a distributed network, the system comprising:

a plurality of data repositories configured to store data, wherein the data is associated with a respective identifier string in each data repository;

a data location sewer network having a plurality of data location servers, each of the plurality of data location servers containing location strings associated with respective identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps:

in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string.

18. (Patent Claim) A system for retrieving data location information for data stored in a distributed network, the system comprising: a data repository configured to store data, wherein the data is associated with an identifier string;

a client responsive to a data query to query a data location server for location information associated with the identifier string;

a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the

identifier string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client:

if the data location server contains the location String associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string:

if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string.

24. (Patent Claim) The system of claim 18, wherein the location information comprises a portion of a hash table distributed over the plurality of data location servers.

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

## *Remarks*

Claims 17-18 and 24 of the '640 patent are currently subject to *ex parte* reexamination. Claims 17-18 and 24 stand rejected in the Office Action dated May 4, 2022 ("Office Action"). Claims 1-16, 19-23 and 25 are not subject to reexamination. Patent Owner respectfully traverses the pending rejections. Based on the following remarks, and the Declaration of M. T. Goodrich submitted herewith, Patent Owner respectfully requests that the Examiner reconsider and withdraw the outstanding rejections.

The following Table of Contents is included for ease of reference:

I. STATUS OF RELATED MATTERS ....................................................................6

II. INFORMATION DISCLOSURE STATEMENTS .............................................6

III. STATEMENT OF SUBSTANCE OF EXAMINER INTERVIEW .....................6

IV. RESPONSE TO SUBSTANTIVE REJECTIONS IN THE OFFICE ACTION ..................6

    A. Relevant Prosecution History ....................................................................7

    B. Overview of the Technology ......................................................................7

        1. The problems with the existing systems .............................................8

        2. The '640 patent claims overcome the limitations of pre-existing systems........11

    C. Claim Construction ...................................................................................15

        1. Claim Construction Summary Table ................................................16

        2. Claims 17 and 18 in view of the claim constructions .....................16

    D. Reasons for continued patentability..........................................................20

    E. Oracle Names and the '640 Patent Invention Are Fundamentally Different Protocols...........................................................................................................21

        1. Oracle Names lacks the non-hierarchical cluster structure required to enable every server in the network to return information useable by the client to locate the server that contains the requested information ...........................................23

    F. Oracle Admin, OracleSG, and McGarvey, alone or in combination, fail to render claims 17 obvious for at least four reasons................................................26

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

1. Claim elements [17.e] and [17.f] are not taught or suggested by the asserted references ...................................................................................26

2. The asserted references do not teach or suggest transmitting a "redirect message" to the client that "contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string," as required by element [17.e]...........................................................29

3. Oracle Admin, OracleSG, and McGarvey do not teach or suggest an identifier string that identifies an entity and is associated with data, as required by claim 17....................................................................................33

4. POSA would not be motivated to modify Oracle Admin or combine it with OracleSG or McGarvey ...........................................................38

G. Oracle Admin, OracleSG, and McGarvey, alone or in combination, do not render Claim 18 obvious for at least the same reasons discussed with respect to Claim 17. 41

H. Oracle Admin, OracleSG, McGarvey, and Rajani do not render claim 24 obvious...42

1. The combination of Oracle Admin with Rajani does not satisfy claim 24's requirements....................................................................43

2. A POSA would not find it obvious to modify Oracle Admin with OracleSG or Rajani to satisfy claim 24..................................................43

3. A POSA would not be motivated to modify Oracle Admin-McGarvey with OracleSG or Rajani to satisfy the claim 24 requirements.................................44

I. Secondary Considerations of Non-Obviousness.......................................46

1. Long felt but unsolved needs ...............................................46

2. Failure of others and unexpected results........................................48

3. Commercial success..........................................................51

V. CONCLUSION.....................................................................53

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

## I.      STATUS OF RELATED MATTERS

The '640 patent is the subject of litigation in *Kove IO, Inc., v. Amazon Web Services, Inc.,* Case No. 1:18-cv-08175 (N.D. Ill.).

## II.     INFORMATION DISCLOSURE STATEMENTS

Patent Owner previously submitted an information disclosure statement (IDS) on July 12, 2022.

## III.    STATEMENT OF SUBSTANCE OF EXAMINER INTERVIEW

Patent Owner thanks Examiners Peng (Simon) Ke and Luke Wassum and Supervisory Patent Examiner Fuelling for an Interview held July 21, 2022 with Co-Inventor John Overton and Patent Owner's representatives Khue Hoang (Reg. No. 44,767) and Naveed Hasan (Reg. No. 72,688). The Interview was conducted for this reexamination, as well as the co-pending reexamination of related U.S. Patent No. 7,814,170 (Control No. 90/019,035). The Interview included discussions regarding the background and history of the invention, interpretations of certain claims being reexamined, and the deficiencies of the applied references, both individually and when combined, with respect to particular claim terms.

Examiner Ke requested Patent Owner provide further clarification about certain aspects of the claims, including the term "data" and "calculate" as recited in claims 17 and 18 of the '640 patent. In this Response, Patent Owner provides the requested clarifications, as well as additional support for the patentability of the reexamined claims over the asserted prior art, whether considered individually or in combination.

## IV.     RESPONSE TO SUBSTANTIVE REJECTIONS IN THE OFFICE ACTION

The Office Actions includes three rejections:

Claims 17 and 18 are rejected under pre-AIA 35 U.S.C. § 103(a) as allegedly being obvious over OracleNamesAdminGuide (hereinafter "Oracle Admin") in view of OracleSG and in further view of McGarvey.

Claim 24 is rejected under pre-AIA 35 U.S.C. § 103(a) as allegedly being obvious over Oracle Admin in view of OracleSG and in further view of McGarvey and in further view of Rajani.

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

Patent Owner respectfully traverses the rejections, each of which is fully addressed within this Reply.

### A.    Relevant Prosecution History

U.S. Patent Application No: 09/661,222 ('222 application) was filed on September 13, 2000 and issued as the '640 patent on September 5, 2006. The '222 application claimed priority to U.S. Provisional Application No: 60/153,709, filed September 14, 1999. The '222 application, as originally filed, included original claims 1-16, with claims 1, 5, and 12 being independent claims. A Notice of Allowance was issued on November 14, 2005.

### B.    Overview of the Technology

Towards the latter half of the 1990's, data storage was still relatively manageable. Most data could be stored locally, on local drives, compact discs (CDs) or disk drives. Single servers were often sufficient for data storage needs. Not long thereafter, the amount and size of data began increasing, soon reaching exponential rates. Networking became ubiquitous and storing data in single servers became impractical if not impossible. This paved the way for distributed data collection environments.

Distributed data collection involves storing data stored and retrieved among multiple databases or data repositories connected by a network. Conventional distributed data collection environments maintained a static relationship of data and its location. In this regard, conventional distributed data collection environments maintained a static relationship of data and its location. Every time data moved from one location to the next, all of the systems that maintained the static relationship had to be updated. As a result, while conventional distributed data collection environments allowed for dispersed storage, doing so made reliably locating and retrieving the data challenging, particularly where data is added or removed dynamically. ('640 patent, 1:37-41).

As John Overton, co-Inventor and CEO of Kove IO, Inc. (Patent Owner), noted during the Examiner Interview, the Inventors of the '640 patent predicted networking would become ubiquitous and data would become explosive, years before it actually happened. The Inventors understood that maintaining a static relationship of data and its location in traditional distributed

7

data collection environments (i.e., tree structures) would become untenable, given the growing unreliability of locating and retrieving dispersed data, particularly where the data in the components of the network could change location, unbeknownst to one another. The Inventors invented a protocol that dynamically creates a relationship between the data and its location using an algorithm or function. That is, the Inventors invented a protocol that replaced storing caches and state information across the network, with a stateless approach that allows clients to compute the location of data's location information based on a dynamically created relationship between the data and its location. The Inventors sought to find a way to achieve seamless dynamic and spontaneous global search and retrieval of data across a distributed network. The result are the claims embodying the Inventors' network distributed tracking protocol ("NDTP").

## 1. The problems with the existing systems

The Inventors studied then-existing systems to determine if there were ways to improve efficiency and scalability in locating and retrieving distributed data. They concluded that conventional systems were fundamentally limited in the types of searches that could be performed and the forms of data returned based on the search. ('640 patent, 1:43-53). For example, the '640 patent states, "One example is where a client requests files based on a subject, like a person's name. In the search results, therefore, only text files of peoples' names may be retrieved. Another problem in current retrieval systems is that the client may receive text and image files in the search results, but could not seamlessly access the image files. Yet another problem in current retrieval systems is that video and sound files related to the request may not even be found in the search results. For example, a doctor might be able to retrieve medical records on a specific patient, but cannot view an MRI or X-Ray results associated with that record." ('640 patent, 1:45-55).

The Inventors also recognized that while Doman Name Service's (DNS) "names and machine" mapping format is analogous to the "entity identifier and data location" mappings in the NDTP protocol ('640 patent, 20:8-17), NDTP has foundationally different structure that enables it to support "very fast, very diverse, and very large scale mapping manipulations" (id.), which names services like DNS cannot because of their tree node organizational structure.

Conventional systems consistently used hierarchical-tree structures when attempting to scale their networks. For example, Oracle Admin acknowledged that a network may follow a flat

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

naming model or a hierarchical naming model but cautioned that "A flat naming model should be used when the actual number of services is small (under 100), when the likelihood of future growth of network services is *minimal*...." (Oracle Admin, 40) (emphasis added). Similarly, McGarvey and Rajani disclosed only hierarchical structures for more complex systems. (*See e.g.,* McGarvey, 5:5-43; Rajani, Abstract; 2:55-67). This illustrates that conventional data systems were dependent on hierarchical structures.

An example of this prior art hierarchical structure is Fig. C-4 from Oracle Admin (reproduced below).



Figure C – 4 Network Messages in a Multi-Level Foreign Name Resolution

**Oracle Admin, Figure C-4 (p. 191)**

For Figure C-4, Oracle Admin describes the activities that must take place in response to a client query for information (in this case, the network address of the "Destination Server"): "1. The client sends request to preferred Names Server in its local region (DR1). 2. The preferred Names Server in DR1 issues request for the Names Servers authoritative for the destination server (in region DR2.1). 3. The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2. 4. The receiving server in DR2 forwards the request to a Names Server in region DR2.1. 5. The name is retrieved from its authoritative Names Server in DR2.1. 6. The names Server in region DR2

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

caches the answer and returns it to the root. 7. The root caches the answer and returns it to the preferred Names Server in region DR1. 8. The preferred Names Server caches the answer and returns it to the client. 9. The client establishes a connection to the destination server." (*Id.*, 190-191).

Retrieving a network address in the tree-node configuration shown in Figure C-4 require nine (9) traversals up, down, and back through the hierarchal structure. (*Id.*). As such, the organizational structure in Figure C-4 is limited in its efficiency by its underlying network paths and network relationships that require queries to make hierarchical traversals until it finds the server with the sought-after information (assuming the information exists somewhere in the network).

The Inventors understood the challenges that existed in locating and retrieving data in a distributed data collection environment and addressed the challenges with the inventions of the '640 patent. Their invention, as embodied in the claims of the '640 patent, enables a client to retrieve data by ***sending a query to any server in the network,*** not just servers organized by a tree, and having that server ***be capable of providing information that permits the client to calculate the location of a second server known to contain the requested information***. Claims 17 and 18 therefore require ***every server*** in the network be able to return information for calculating the location of the server that contains the requested information. In other words, any first queried server will either have the requested information or will provide the client with the information to find the requested information in the client's next query. The structured relationships of the invention allow clients to access data in distributed environments through a non-hierarchical, limitlessly scalable, server structure that enables retrieval of requested information in not more than two iterations.

For reasons discussed more fully below, prior art systems, including names services like Oracle Names are not configured in the manner required by claims 17 and 18, nor would combining the Oracle system with the other cited prior art references render any claim obvious. Moreover, a lack of motivation to make any such combinations, as well as significant indicia of non-obviousness make it clear that the invention of claims 17 and 18 would not have been obvious to a person of ordinary skill in the art (POSA).

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

**2.   The '640 patent claims overcome the limitations of pre-existing systems**

The Inventors addressed the limitations of pre-existing systems, including tree-based systems like DNS and other names service systems, including Oracle Names Service, in the '640 patent in two foundational ways.

**First**, the '640 patent teaches separating the data location information from the data itself. The specification teaches this is a fundamental aspect of the invention:

Col. 1:62-65: "A distributed data collection is a system where *data is stored and retrieved among multiple machines connected by a network*. Typically, each machine in which some portion of the data in a distributed data collection may reside is called a 'data repository machine', or simply a 'data repository'. One commonly asked question in a data repository environment is: *Where is data associated with a particular entity in a distributed data collection? The data location is a key question* when a distributed data collection has highly dynamic data distribution properties."

Col. 1:14-18: "The protocol is designed for use in the larger context of a distributed data collection. As such, it supports an architecture in which information about *where data associated with particular application entities can be managed and obtained independently of the data itself*."

Col. 20:4-8: "NDTP is designed for use in the larger context of a distributed data collection. As such, it supports an architecture, in which *information about where data associated with particular application entities, can be managed and obtained independently of the data itself*."

Figure 11 of the '640 patent (annotated below) illustrates the separation of the data location information from the data itself:

11

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036



*Fig. 11*

NDTP Server Constellation Context

**'640 patent, Fig. 11 (annotated with colored boxes)**

The NDTP Server Constellation 110 (red box) includes data location servers that store the location of specific units of data stored in Repository1 114 (green box). ('640 patent, 16:53-56; 17:10-20). The data stored in Repository1 114 may be moved to any repository. (*Id.*, 6:29-31). The location of the data, if it is moved, will be updated in the data location servers in the NDTP Server Constellation 110. (*Id.*, 4:59-67). Locating the data requires querying the NDTP Server Constellation 110. (*Id.*, 16:53-56; 17:10-20). Specifically, the '640 patent states, "As shown in FIG.11, a client 112 consults the server constellation 110, which may be construed in either of two forms (*see* FIGS. 12 and 13), and which returns location strings in response to a client 112 request. Once the client 112 has the location string for a particular unit of data, the client 112 contacts and retrieves information directly from the data repository 114. In one embodiment, if the client 112 contains a data repository 114, internal application logic would facilitate this interaction." ('640 patent, 16:53-61).

Claims 17 and 18 require data, stored in a plurality of data repositories, to be associated with an identifier that is associated with location strings contained in separately claimed location servers. As recited by the plain language of claims 17 and 18, and in light of the various relationships set forth in their respective claim constructions, "data" would be understood by a

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

person of ordinary skill in the art to be claimed distinctly from "data repository," "location string," "location information," "identifier string," and "entity."

**Second**, the '640 patent teaches organizing data location information in location servers such that *every* location server is configured to either identify another location server that has the requested information or enable the client device to calculate the location of the data location information (if the first location server does not itself have the requested information – if it does, it simply returns that to the client).

Figure 12 (reproduced below) of the '640 patent illustrates the organization of the data location information.



**'640 patent, Fig. 12 (annotated with colored dots and boxes)**

In Figure 12, the NDTP Server Constellation 110 includes data location servers 120a and 120b. (*Id.*, 17:10-18:15). The ellipses are added to illustrate the disclosed teaching that the number of NDTP servers can extend to however many are desired (Server0 to ServerN). (*Id.*, 17:61-18:8). Data location servers 120a and 120b store location information for data stored in data repositories. (*See e.g., id.*, 16:53-57; 17:61-18:8). Each unit of data is associated with an identifier that uniquely identifies an entity. (*See e.g., id.*, 4:26-67; 20:10-12). The location information for the data is organized across data location servers 120a and 120b using an algorithm or function. (*See*

13

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

*e.g., id.* at 4:26-67). Specifically, an algorithm or function is applied to each identifier for each unit of data. (*Id*). Based on the outcome of the algorithm or function, the location information for each unit of data is stored in a respective location server. (*Id*). The location information for the data is thereby divided up and each of data location servers 120a and 120b stores a portion of the location information for the data based on applying the algorithm or function on the identifier. (*Id*). For example, if there are 10 units of data, data location server 120a may store location information for units 1-5 and data location server 120b stores location information for units 6-10. (*See e.g., id.,* 3:14-25; 16:40-57; 17:10-20; 17:61-18-8).

Importantly, the '640 patent teaches that each data location server 120a and 120b stores the algorithm or function that was used to divide up the location information. (*Id.,* 14:56-63; 17:54-60). This allows each data location server to (1) itself determine, using the function, which other data location server stores the location information for a particular unit of data (*id.,* 14:31-67); (2) transmit a list of location servers which contains the location server known to have the location information (*id.,* 17:49-59); and (3) transmit the algorithm or function to the client to enable the client to determine which one of the data location servers stores the location information for the particular unit of data (*id.,* 14:31-67; 17:54-60). In other words, ***whatever location server is queried, if that location server does not have the information, it will either identify the location server that does, identify a list of location servers containing at least the location server that does, or send the algorithm or function that will allow the client to make that identification for itself***, rather than traverse a network path across a tree structure like DNS or Oracle Name Service that maintained a static relationship of data and its location. Continuing from the earlier example, if location server 120a receives a query from a client for an identifier associated with data unit 7 and it does not have the requested information itself, it then either determines that the location for unit 7 is in the data location server 120b by applying the algorithm or function on the identifier and transmits that back; transmits a list of location servers which contains the location server known to have the location information to which the client can apply a well-known function to the identifier to identify; or transmits the algorithm or function to the client for the client to determine that the location information for unit 7 is in data location server 120b. (*See, e.g., id.,* 14:31-67; 17:49-60).

In contrast to the hierarchical "tree" structure of existing systems, the above-described configuration allows for linear scaling of the location servers. Particularly, the above-described

14

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

configuration allows for seamlessly adding location servers based on the growth of a network. Each new or existing location server is configured to store a portion of the location information and the algorithm or function used to divide up the location information, irrespective of the amount of data distributed across one or more repositories and the amount of movement of the data across the one or more repositories. This allows for easily locating the location information in networks of any size. *See e.g., id.,* 16:24-26). As anticipated by the Inventors, the explosion of the Internet, in which moving data rapidly across any scale of system or complexity became de facto, without requiring tree structures with caches.

The features of the '640 patent provide numerous advantages over the existing systems. For example, linear scaling eliminates the need for a "root" node. In particular, the '640 patent allows for *each* location server in a network to either resolve a query for location information or provide the information needed to resolve for that location information. By doing so, the '640 patent eliminates the reliance of network paths and relationships present in hierarchical structures. *See* Goodrich Decl. ¶¶ 18-21.

C.    **Claim Construction**

The claims of the '640 patent must be given their ordinary and customary meaning in light of the specification. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005) (*en banc*). **The Broadest Reasonable Interpretation (BRI) standard may not be applied to the claims in the instant reexamination proceeding because the claims are expired.** *In re Rambus,* 694 F.3d 42 (2012). *See also In re CSB-Sys. Int'l, Inc.,* 832 F.3d 1335, 1341 (Fed. Cir. 2016) (confirming that "when an expired patent is subject to reexamination, the traditional *Phillips* construction standard attaches").

In its Request for Reexamination, the requestor proposed constructions for certain claim terms based on positions that had been taken in the parallel litigation (*Kove IO, Inc., v. Amazon Web Services, Inc.,* Case No. 1:18-cv-08175) involving the same patent and the same parties. Since that time, (1) the parties to the litigation (i.e., requestor and Patent Owner) have agreed on the constructions of certain claim terms (*see* NPL 42 in an Information Disclosure Statement (IDS) filed July 12, 2022), and (2) the Court in the Northern District of Illinois overseeing the litigation has issued a claim construction Order regarding other terms (*id.,* NPL 43). The parties' agreed-to

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

constructions and the Court's ordered constructions are fully supported by disclosures in the specification, as evidenced by the citations and analysis in the Court's Memorandum and Order. (*Id.*, NPL 42 and 43).

### *1.* Claim Construction Summary Table

A summary chart of the construed terms is as follows:

| Claim Term | Construction |
|---|---|
| identifier/identifier string | a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server (NPL 43) |
| location/data location | an encoding that is a member of a set of associations with an identifier in a location server, and that specifies where data pertaining to the entity identified by the identifier is stored (NPL 43) |
| location server/server | a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients (NPL 42) |
| location information | information pertaining to one or more locations of data and/or the identities of one or more location servers (NPL 42) |
| hash table | a data structure that stores values in a table, where values are stored and retrieved by applying a hash function to an input and using the function result as an index into the table (NPL 43) |
| based on a hash function used to organize the data location information across the plurality of data location servers … based on the hash function applied to the identifier string | the portion of the data location information included in a corresponding one of the data location servers is based on a hash function that maps identifier strings to one or more of the data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string (NPL 42) |
| data pertaining to an entity | data pertaining to a person or thing (real, digital, or abstract) distinct from that data (NPL 42) |

Patent Owner respectfully submits that the above-referenced constructions, which were construed in accordance with the *Philips* standard, be adopted in the instant reexamination.

### *2.* Claims 17 and 18 in view of the claim constructions

Claim 17 states:

[17.premble] A system for retrieving data location information for data stored in a distributed network, the system comprising:

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

[17.a] a plurality of data repositories configured to store data,

[17.b] wherein the data is associated with a respective identifier string in each data repository;

[17.c] a data location sewer network having a plurality of data location servers,

[17.d] each of the plurality of data location servers containing location strings associated with respective identifier strings and

[17.e] each of the plurality of data location servers having computer executable code configured to execute the following steps:

[17.f] in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string.

Claim 18 states:

[18.Preamble] A system for retrieving data location information for data stored in a distributed network, the system comprising:

[18.a] a data repository configured to store data,

[18.b] wherein the data is associated with an identifier string;

[18.c] a client responsive to a data query to query a data location server for location information associated with the identifier string;

[18.d] a data location server network comprising a plurality of data location servers,

[18.e] at least one of the plurality of data location servers containing location information associated with the identifier string,

[18.f] wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client:

[18.g] if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string;

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

[18.h] if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string

Claims 17 and 18 must be interpreted in light of the appropriate claim constructions and not in a vacuum. In particular, the claim terms should be construed in accordance with the *Phillips* standard, the claim constructions provided above, and relationships among the claim terms, as set forth in claims 17 and 18.

Claims 17 and 18 recite the terms "data," "data repository," "location string," "location information," "identifier/identifier string," and "entity," all of which are inter-related in accordance with their constructions. These relationships are schematically depicted in the figure below:



**Patent Owner's Figure A**

As per the claim constructions, an "identifier" or "identifier string" uniquely identifies an entity. (NLP 43). The "identifier/identifier string" is also associated with "location strings" stored in a location server. *Id.* "Location strings" are also known as "location" or "data location," which are construed as specifying where "data pertaining to the entity" is stored. (*Id.*). As the patent teaches, and as claims 17 and 18 require, the data is stored in one or more "data repositories." '640 patent, claims 17, 18.

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

In issuing its Order for Claim Construction, the District Court discussed the relationships among the terms "data," "data repository," "location string," "identifier/identifier string," and "entity." The Court determined that an "entity" is a person or thing (real, digital, or abstract) which must be *distinct from the data itself.* (NPL 43). The Court provided an analogy: an example of a digital "entity" may be an award-winning film (''Award-Winning Film'). (NPL 43, 34). The entity's "data" would consist of the millions of bytes of audiovisual information that a subscriber would download to view Award-Winning Film. Data may also include other information, for example, closed captions, subtitles, or alternative audio tracks (e.g., from other languages). The entity's "identifier" may simply be the film's title, for example, ''awardwinningfilm.'" (*Id.*).

The '640 patent confirms the relationship between a data repository and data shown in the above figure. For example, the specification teaches, "Once the client 112 has the location string for *a particular unit of data,* the client 112 contacts and *retrieves information directly from the data repository 114.* In one embodiment, if the client 112 contains a data repository 114, internal application logic would facilitate this interaction." ('640 patent, 16:56-62) *(emphasis added).* Furthermore, the '640 patent indicates that "NDTP is designed for use in the larger context of a distributed data collection. As such, it supports an architecture, in which information about where data associated with particular application entities, can be managed and obtained independently of the data itself." (*Id.*, 20:6-8). Therefore, data, as recited by claims 17 and 18, are units of data stored in a data repository.

The '640 patent further explains, "The network distributed tracking wire transfer protocol includes two basic components: identification strings for specifying the identity of an entity in the distributed data collection, and *location strings for specifying network locations of data associated with an entity.*" ('640 patent, 2:15-19). Therefore, the "location string" specifies a location of the "data" stored in the "data repositories."

The above-referenced claim construction and the requirements of claims 17 and 18 explicitly show the required relationships among "data," "location string," "location server," and "identifier/identification strings." In particular, as properly construed, claims 17 and 18 require data, stored in a plurality of data repositories, to be associated with an identifier that is associated with location strings contained in separately claimed location servers.

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

During the Examiner Interview, Examiner Ke asked whether "data" is limited to particular types of data. The Examiner also asked whether "calculate" should be construed in some specific way. These are discussed below.

### a) "Data"

As recited by the plain language of claims 17 and 18, and in light of the various relationships set forth in their respective claim constructions, "data" would be understood by a person of ordinary skill in the art to be claimed distinctly from "data repository," "location string," "location information," "identifier string," and "entity." Aside from the requirement that "data" be distinct from the other claim elements, the term "data" is not further limited and should be given its plain and ordinary meaning. *See* Declaration of M. T. Goodrich ("Goodrich Decl."), ¶ 26.

### b) "Calculate"

Claims 17 and 18 require that "each of the plurality of data location servers include computer executable code configured to" transmit "a redirect message to the client if the identification string is not associated with a location string at the data location server." The claims further require that the redirect message includes "information for use by the client to *calculate* a location of a different data location server" that contains the location string associated with the identifier associated with the data. Nothing in the plain language of the claim further defines the term "calculate" nor does the intrinsic record indicate that it should be given any meaning other than its ordinary and customary meaning.

As a non-limiting example, the '640 provides the following relevant disclosure: "The NDTP RDR_RSP message contains all the information required for the originator of the NDTP request 122a to reissue the original NDTP request 122b to a different NDTP server 120b that does have location strings associated with the identifier string supplied in the NDTP request 122b. This information may be an array of NDTP server hosts from which one is selected *by applying a well-known function* to the identifier string supplied in the NDTP request 122b, *or the communicated function* to apply as well as a list or other description of the NDTP server hosts from which to choose, as described above." ('640 patent, 17:49-60). *See also* Goodrich Decl., ¶¶ 27-29.

### D. Reasons for continued patentability

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

Currently, independent claims 17 and 18 are rejected as obvious based on Oracle Admin in view of OracleSG and in further view of McGarvey. Dependent claim 24 is rejected as obvious based on Oracle Admin in view of OracleSG in further view of McGarvey and further in view of Rajani. Patent Owner respectfully traverses each rejection. The Examiner's rejections rely on initially-perceived similarities between certain disclosures in the references and the claims, but a closer study shows that the cited references and the invention are foundationally different, and these differences make claims 17, 18, and 24 novel and patentable.

In this Reply, Patent Owner will specify the lack of disclosure in the references and the lack of motivation to combine Oracle Admin with any other reference (or combinations thereof). For at least the issues addressed in this Reply, Patent Owner respectfully requests the Examiner to reconsider and withdraw the rejections of claims 17, 18, and 24.

### E. Oracle Names and the '640 Patent Invention Are Fundamentally Different Protocols

Oracle Admin is a manual that provides information about Oracle Names products. (Oracle Admin, 5). Oracle Names involves making network address and database link information in a distributed database network available to all nodes in the network. (*Id.*).

Figure 3-11 depicts a client-server connection in Oracle Names:



Figure 3 – 11 Client-Server Connection

**Oracle Admin, Figure 3-11 (p. 52)**

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

During the Examiner Interview, the Examiner asked Patent Owner and its representatives to explain how Fig. 3-11 of Oracle Admin (depicted above) is different from Fig. 11 of the '640 patent (depicted below):



While these depictions may look similar at a very high level, they obscure the critical differences between Oracle Admin and claims 17 and 18 of the '640 patent. These differences become apparent when the "network" is examined to see how servers and their relationships are structured:



**Patent Owner's Figure B**

22

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

As explained above and more fully below, Oracle Names depends on a *hierarchical* structure where a client can only query to the node immediately "above" or "below" it in the "tree." If the queried server does not have the requested information, that server forwards the query to the next higher node and so on until it reaches the root server. The root server, if it has the desired information registered, will forward the request down successive nodes until it arrives at the server last known to have the information. As the example in Fig. C-4 shows, and as explained on pages 190-192 of Oracle Admin, even a modestly sized environment with a handful of servers may take numerous iterations to return a query. [1]

In contrast, claims 17 and 18 recites a *non-hierarchical* cluster configuration. [2] A client can send a query to *any* server in the network – not just its local region, as taught by Oracle Admin (*see* Oracle Admin, p. 190). If the queried server does not have the requested information, that server (as are all servers in the data location server network) is configured to return a message to the client containing information that the client can then use to calculate the location of the server that does have the requested information. In other words, the '640 patent requires that *each and every* server in the data location server network have the capability of transmitting information to the client that the client then processes to determine the server that contains its requested information. This configuration "collapses" the hierarchical composition of Oracle Names, making it entirely different in practice and principle from what Oracle Admin discloses. Oracle Admin in no way teaches that Oracle Names network servers have this capability.

        *1.*    **Oracle Names lacks the non-hierarchical cluster structure required to enable every server in the network to return information useable by the client to locate the server that contains the requested information**

Claims 17 and 18 require that "***each of the plurality of data location servers*** having computer executable code *[be] **configured to***" carry out specific activity. In particular, each location server must be able to "transmit[] a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the ***redirect***

_____

[1] Oracle Admin cautions that a "network can have no more than five well-known Names Servers, that is, Names Servers that use the Dynamic Discovery Option." (Oracle Admin., pp. 28, 32, 60).

[2] Although the '640 specification discloses hierarchical applications for NDTP as possible embodiments, claims 17 and 18 require *non-hierarchical* structure, as explained here and throughout this Reply.

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

*message contains information for <u>use by the client to calculate a location of a different data location server</u>* in the plurality of data location servers, **wherein the different <u>data location server contains the location string</u>**." By its plain language, the claim requires that each (i.e., every) location server must be configured to return information that the ***client uses*** to determine a second location server that contains the sought-after location string, if the first queried location server does not contain that location string. Oracle Admin does not teach this limitation.

Oracle Admin's Figure C-4 (reproduced below) depicts the process by which a client sends a request for information to the Names Service network:



**Oracle Admin, Figure C-4 (p. 191)**

Oracle Admin describes the process of requesting information in a Names Service network as: "1. The client sends request to preferred Names Server in its local region (DR1). 2. The preferred Names Server in DR1 issues request for the Names Servers authoritative for the destination server (in region DR2.1). 3. The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2. 4. The receiving server in DR2 forwards the request to a Names Server in region DR2.1. 5. The name is retrieved from its authoritative Names Server in DR2.1. 6. The names Server in region DR2 caches the answer and returns it to the root. 7. The root caches the answer and returns it to the preferred Names Server in region DR1. 8. The preferred Names Server caches

the answer and returns it to the client. 9. The client establishes a connection to the destination server." (*Id.*).

Oracle Admin teaches that if a queried server does not have the requested information, that server forwards the request to the next server up the hierarchy until one is able resolve the request; if none can, the process errors out. (*Id.*, 190-192). Oracle Names requires traversals up and down the hierarchical tree in order to resolve a request and return a response. (*Id.*). Oracle Admin indicates its compatibility with DNS-based systems by disclosing:

> Many companies already have global naming standards for their PC LANs, large hosts, or mail systems. If such policies exist, you can use them as the basis for the Oracle Names naming model. Using the same structure leverages the investment in the education users already have with global names.
>
> For example, many companies with TCP/IP networks use the Domain Name Service (DNS) model for communication on the worldwide Internet. In this model, all naming models are hierarchical from a set of base domains such as:
>
> • COM - commercial organizations
>
> • EDU - educational institutions
>
> • MIL - military
>
> • ORG – organizations
>
> Individual companies are then assigned domains within which to build their naming model (for example, ACME.COM). To adapt any example in this book to the DNS Internet model, add a single high-level domain, such as COM (or other stem). For organizations which are on the Internet, and therefore already have one or more DNS domains, the sensible choice is to align their Oracle naming domains with their DNS domains.

*Id.*, 56-57.

Like DNS, Oracle Names is dependent on its network paths. Names Servers do not have any knowledge of which Names Server contains the address to the requested network service nor is anything taught about *every* Names Server storing information that is returned to a client for the client to use in calculating the location of the Names Server that contains the requested information. In order to do so, Names Service would have to completely abandon its "tree"

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

composition that is the center of its organizational structure in favor of a non-hierarchical one where any given server is able to return either the requested information or information useable by the client to locate the server with the requested information. Nothing in Oracle Admin states or suggests that such elimination of hierarchical structures would be desirable.

Moreover, claims 17 and 18 require every server in the network be configured to return "redirect messages" that contain information for use by the client to calculate the location of the network server that contains the requested location information. As discussed in detail below, Oracle Admin also lacks this important limitation. Oracle Admin's disclosures referring to disabling or turning off "name request forwarding," which the Examiner points to as teaching this limitation, are inapposite. Disclosures relating to setting "name request forwarding" to off neither teaches nor suggests that Names Servers are configured to return such information to the client or that the client is able to do any form of "calculating" the location of the requested information, as required by claims 17 and 18. *See* Goodrich Decl. ¶¶ 30-38

### F. Oracle Admin, OracleSG, and McGarvey, alone or in combination, fail to render claims 17 obvious for at least four reasons[3]

#### 1. Claim elements [17.e] and [17.f] are not taught or suggested by the asserted references

Claim 17 describes a data location server network in a non-hierarchical cluster configuration. This configuration is embodied in element [17.e], which specifies that *each* one of the plurality of data location servers in the data location server network must be configured to execute claim element [17.f]. For ease of reference, claim 17 is reproduced here:

> **[17.premble]** A system for retrieving data location information for data stored in a distributed network, the system comprising:
>
> **[17.a]** a plurality of data repositories configured to store data,
>
> **[17.b]** wherein the data is associated with a respective identifier string in each data repository;
>
> **[17.c]** a data location sewer network having a plurality of data location servers,

---

[3] The Examiner references claim 18's rejection chart for the rejection of claim 17. Patent Owner will therefore also reference claim 18's rejection chart when addressing the rejection of claim 17.

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

**[17.d]** each of the plurality of data location servers containing location strings associated with respective identifier strings and

**[17.e]** each of the plurality of data location servers having computer executable code configured to execute the following steps:

**[17.f]** in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string.

> **a)** *Oracle Admin does not teach or suggest that **each** of the plurality of data location servers **configured to execute** claim element [17.f]*

The Examiner alleges that a POSA would have understood that Oracle Admin's Name Server includes "a processor and memory" as shown in Fig. 2-2 (Office Action, 43[4]) and computer readable code (*id.*, 43-44), and that various platforms and operating systems may run Oracle Names products (*id.*, 43-45). Based on this, the Examiner concludes, without supporting citations, that Oracle Admin "discloses or renders obvious each Names Server comprises computer executable code configured to execute" the requirements of element [17.f]. (*Id.*, 45). The Examiner's conclusion is demonstrably untrue. For the reasons below (and throughout this Reply), Oracle Admin does not (and cannot) satisfy or render obvious the "each" claim requirement of element [17.e].

Oracle Names is built on a hierarchical organizational structure (Figure C-4). The Names Servers in an Oracle Names network are limited in the information they contain and what actions they are enabled to take.

---

4 The Examiner alleges claim element [17.e] is similar to claim element [18.g]. (Office Action, 64). In fact, Claim element [17.e] is similar to claim element [18.f]. Patent Owner will address the rejection of claim element [17.e] with reference to the Examiner's rejection of claim element [18.f].

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036



**Oracle Admin, Figure C-4 (p. 191)**

This hierarchical configuration restricts the ability of a client to find the authoritative server in the network without undergoing the traversals (iterations) required in navigating a tree structure. As Oracle Admin explains, any given "root may only know the addresses of its direct children, which in turn can supply its children's addresses." (Oracle Admin, p. 190). As the disclosure accompanying Figure C-4 explains, a request by the client must first go to local region DR1 who then (because it does not have the sought-after address) must forward the request up to ROOT; but "because root only knows about its direct child regions," ROOT then must forward the request to DR2, which then forwards to DR2.1. (*Id.*) It is therefore evident that not *every* Names Server (e.g., Root, DR2, DR2.1, and DR2.2) is configured to receive a data location request from the client, as required by claim element [17.e].

Similarly, in the above configuration, the client may only receive a response to the data location request from the preferred name server (e.g., DR1). (*Id.*, 190-192). Specifically, DR2.1's response may be forwarded back to the client but only via DR2, ROOT, and DR1. (*Id.*). As such, *each* Names Server is *not* configured to transmit the claimed "redirect message" to the client that transmitted the data location request, as required by claim elements [17.e] and [17.f].

Oracle Admin therefore does not teach, suggest or render obvious *each* one of the of the plurality of data location servers (Names Servers) in the data location server network be configured to execute claim element [17.f], as required by element [17.e].

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

**b)** *OracleSG fails for the same reasons as Oracle Admin*

Examiner cites to various disclosures in OracleSG, including disclosures on pp. 313, 168, 125, 133, 142, 682, 87 and 152 (Office Action, pp. 46-47). None of these disclosures discuss, suggest, or in any way render obvious claim 17's requirement that "***each*** of the plurality of data location servers" must be "***configured to execute claim element [17.f].***" As such, OracleSG is completely silent with respect to *each* of a plurality of data location servers in a data location server network being *configured to receive the data location request from the client*, as required by claim element [17.e]. Furthermore, OracleSG is also silent with respect to *each* of a plurality of data location servers in a data location server network being *configured transmit a redirect message to the client* that transmitted the data location request, as required by claim element claim element [17.e]. Therefore, OracleSG does not cure the deficiencies of Oracle Admin.

**c)** *McGarvey does not cure the deficiencies of Oracle Admin*

McGarvey is neither relied upon for nor does it teach or suggest that *each* one of the of the plurality of data location servers in the data location network be configured to execute claim element [17.e].

**2. The asserted references do not teach or suggest transmitting a "redirect message" to the client that "contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string," as required by element [17.e]**

Claim 17 requires that each location server be able to transmit to the client a redirect message that contains information for use by the client to calculate the location of the different data location server that contains the location string. In this regard, claim 17 requires that the client be able to calculate the location of the location string using the information received in the redirect message.

**a)** *Oracle Admin's "name-request forwarding function" does not disclose or render obvious the "redirect message" requirement of element [17.f]*

The last element of Claim 17 requires:

29

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

**[17.f]** in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, ***transmitting a redirect message to the client*** if the identification string is not associated with a location string at the data location server, ***wherein the redirect message contains information for use by the client to calculate a location of a different data location server*** in the plurality of data location servers, ***wherein the different data location server contains the location string***.

The Examiner alleges Oracle Admin discloses this element because it "explains that, if the queried Names Server lacks the requested information, the server sends a message to the requesting client containing the address of the Names Server that can service the request. OracleNamesAdminGuide teaches that this occurs when the server's ***name-request forwarding function is disabled***…. (Office Action, 57) (emphasis added). The Examiner concludes "OracleNamesAdminGuide discloses or renders obvious that, if the Names Server doesn't contain the location information associated with the network-service-name-alias (i.e., identifier string) provided in the data location request, the Names Server transmits a redirect message to the client containing redirect information for use by the client to calculate a location of the Names Server having the location information." (*Id.,* 60). Patent Owner respectfully disagrees. Oracle Admin's "name request forwarding" is not a "redirect message" and does not teach, suggest or render obvious multiple requirements of element [17.f].

> **(1)** *Oracle Admin's disabled "name-request forwarding function" does not transmit **to the client** as required by element [17.f]*

Element [17.f] requires "***transmitting a redirect message to the client***." Oracle Admin makes clear that, even in the event FORWARDING_AVAILABLE is set to OFF, "the work is simply displaced from the non-forwarding Names Server to the requesting ***Names Server***." Oracle Admin goes on to specify:

> WARNING: If FORWARDING_AVAILABLE is set to off, any clients who rely directly on that Names Server will be unable to resolve foreign names. ***Clients are not capable of redirecting their requests as Names Servers would.***

Oracle Admin, p. 137. Thus, Oracle Admin teaches that responses that are returned in a FORWARDING_AVAILABLE OFF situation ***does not return anything to the client***, which is "not capable of redirecting their requests as Names Servers would," but rather to the requesting

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

Names Server. This does not teach, suggest or render obvious the "transmit to the client" requirement of [17.f] but rather teaches away from it.

> **(2)**  *Oracle Admin's disabled "name-request forwarding function" does not cause a "redirect message" containing "__information for use by the client__ to calculate a location of a different data location server [that] contains the location string," as required by element [17.f]*

Element [17.f] also requires a "redirect message" that "__contains information for use by the client__ to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string." As discussed above, Oracle Admin does not teach sending anything to the client, let alone "information for use by the client to calculate a location" of a Names Server that "contains the location string." And as Oracle Admin warns, "clients are not capable of redirecting their requests as Names Servers would." As such, it is apparent that Oracle Admin does not teach or render obvious element [17.f].

> **(3)**  *Oracle Admin does not teach or suggest transmitting information for use by the client __to calculate a location of a different data location server__ containing the location string*

The "redirect message" of element [17.f] must contain information for use by the client "to calculate a location" of a location server that contains the location information. Oracle Admin's cache memory does not correspond with transmitting information for use by the client to calculate a location of a different data location server that contains the location string. Specifically, Oracle Admin states, "the cache—the Names cache is an in-memory database of all data required to resolve names. The cache contains the following types of data: – system information—includes the service addresses of all of the Names Servers. – registration information—includes all registered TNS services which includes other Names Servers and information automatically generated by the Names Server when it was installed." (Oracle Admin, 33). However, Oracle Admin is silent with respect to transmitting information for *use by the client to calculate* a location of a different data location server that contains the location string.

> **(4)**  *Oracle Admin does not teach or suggest transmitting information for use by the client to calculate a location of a different data location server __containing the location string__*

31

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

Element [17.f] requires that the client use information returned in the redirect message to calculate a location of a location server *that contains the location information*. In other words, the redirect information allows the client to ascertain with specificity the particular server that contains the response to the client's query. Oracle Admin does not teach or suggest any such ability to calculate the location of the authoritative server with specificity. Rather, Oracle Admin states that, if FORWARDING_AVAILABLE is set to OFF:

> Rather than forward the request and return the answer *the Names Server simply tells the requestor the address of the Names Server that **can** answer the request*. Note that there is no overall reduction in work; the work is simply displaced from the non–forwarding Names Server to the requesting Names Server.

> WARNING: If FORWARDING_AVAILABLE is set to off, any clients who rely directly on that Names Server will be unable to resolve foreign names. Clients are not capable of redirecting their requests as Names Servers would. Their requests will fail at that point, even if other Names Servers are listed in the NAMES.PREFERRED_SERVERS configuration parameter.

Oracle Admin, p. 137.

As Oracle Admin explains, turning off "name request forwarding" simply shifts the "work" from the queried server to the server that queried it (requesting Names Server). (*Id.*). That "work" is querying the next server above it in the network path. Nowhere in Oracle Admin is there any contemplation that the next server is somehow in possession of the requested information – rather, the next server "*can*" answer the request (if it happens to have the information) but will not necessarily do so (as required by element [17.f]).

### *b)* *McGarvey does not cure the deficiencies of Oracle Admin*

The Examiner points to McGarvey's TCP/IP resolution as allegedly teaching or suggesting a redirect message to the client that "contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string," as recited by claim 17. (Office Action, 60). The Examiner further points to McGarvey's querying of names servers. (*Id.*, 60; *see also* McGarvey, 5:3-32). However, McGarvey is silent with respect to transmitting information for

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

use by the client to *calculate* a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string.

McGarvey merely indicates that in the TCP/IP name resolution process, if a names server cannot resolve a host name based on a client query, the names sever returns information about a different server so the client may send the query to the different server. (McGarvey, 1:40-49). The client does not calculate or determine the location of the requested information. The client does not know whether the different server is able to resolve the query before the client redirects its query. Therefore, McGarvey does not teach or suggest that the TCP/IP name resolution process transmits information for use by the client to *calculate* the location of the location string.

Furthermore, McGarvey describes establishing communication with a host by forwarding name server queries. (*Id.*, 5:3-35 and Fig.3). The process shown in FIG. 3 is terminated when the hostname is resolved, or an failure message is sent to the client. (*Id.*, 5:5-43). The failure message is <u>not</u> a redirect message. The failure message indicates that the domain name has not been found. (*Id*). The failure message thus does not include information for use by a client to *calculate* the location of the requested information. As such, McGarvey's process shown in Fig. 3 is silent with respect to transmitting a redirect message including information for use by the client to *calculate* the location of the location string.

Therefore, McGarvey does not teach or suggest transmitting a redirect message to the client that "contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string," as recited by claim 17.

> *c)* *OracleSG does not cure the deficiencies of Oracle Admin*

OracleSG is neither relied upon for nor does it teach or suggest transmitting a redirect message to the client that "contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string," as recited by claim 17.

> **3.** **Oracle Admin, OracleSG, and McGarvey do not teach or suggest an identifier string that identifies an entity and is associated with data, as required by claim 17**

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

As described above, "identifier string" is construed as "a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server." (7/12/2022 IDS, NPL 43). Based on this construction, claim 17 requires that the "data" stored in the data repositories is associated with a respective "identifier string" that identifies an entity.

The Patent Trials and Appeals Board (the Board) in an *Inter Partes* Review (IPR) proceeding of a related patent (IPR2020-00276) agreed that the identifier ***uniquely*** identifies a ***single*** entity that can be associated with ***multiple*** locations of data. (*See* 7/13/2022 IDS, NPL 29).

Based on the construction of "location" and the description of "location string" in the '640 patent specification, claim 17 further requires the "location string" specify the location of the data. The "location string" is also associated with the respective "identifier string."

Moreover, "data," as recited by claims 17 and 18, must be distinct from the "data repository," "location string," "location information," "identifier string," and "entity" due to the *Phillips* standard, claim constructions provided above, and relationships between the claim terms, as defined in claims 17. *See* Goodrich Decl., ¶ 26.

> **a)** *Oracle Admin does not teach or suggest an identifier string that identifies an entity and is associated with data*

The Examiner alleges that Oracle Admin describes "a database (e.g., the data) [that] is associated with a net-work-service-name-alias (i.e., identifier string)." (Office Action, 12-13). The Examiner further alleges that Oracle Admin's alias "is the claimed 'identifier string' because it is a unique encoding that identifies an entity (e.g., database) and that is associates [sic] with a connection descriptor (i.e., location information) in a NamesServer." (*Id.*). But, as established above, "data" in claim 17 is claimed separately from the "entity," and a POSITA would understand the two to be distinct from one another. Goodrich Decl., ¶26. This is illustrated in Patent Owner's Figure A (reproduced below).

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036



**Patent Owner's Figure A**

As described above, an "identifier" or "identifier string" uniquely identifies an entity. (7/12/2022 IDS, NPL 43). The "identifier/identifier string" is also associated with "location strings" stored in a location server. *Id.* "Location strings" are also known as "location" or "data location," which are construed as specifying where "data pertaining to the entity" is stored. (*Id.*). As the patent teaches, and as claims 17 and 18 require, the data is stored in one or more "data repositories." '640 patent, claims 17, 18. (Goodrich Decl., ¶ 22-29). It is therefore improper to collapse two distinct claim elements into the same Oracle Admin feature. *See CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) (holding there is a presumption that when different words are used to describe different elements they have different meanings).

Oracle Admin describes using aliases to query for network addresses of network services, such as databases. For example, Oracle Admin's Figure 3-11 (reproduced below) illustrates the communication between the Oracle Names Server, client, and database server.

35

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036



Figure 3 – 11 Client–Server Connection

In Figure 3-11, the client application issues a connection request to SQL*Net of form: sqlplus scott/tiger@POULTRY. "POULTRY" is a database service name defined in the Oracle Names Server. (*Id.*, 52-53). Here, "POULTRY" is the identifier for database. The database cannot be both the "entity" and the "data." *Compare* Patent Owner's Figure A (above).

Even when Oracle Admin's configuration that includes multiple domains, Oracle Admin does not teach or suggest an identifier string that identifies an entity and is associated with data. For example, Oracle Admin illustrates a configuration with multiple domains in Figure 3-6 (reproduced below).



Figure 3 – 6 Hierarchical Naming Model

*Id.*, 42.

Figure 3-6 illustrates multiple domains including different network services. (*Id.*, 41-43). The names of the domain names are unique within the domain but can be repeated across domains. (*Id.*). The global names for the network services may be "HISTORY.ROW.ACME" or

36

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

"HISTORY.EUROPE.ACME." (*Id.*). The global name for the domains would be "US.ACME," "EUROPE.ACME," etc. (*Id.*).

Even if, *arguendo*, the domains correspond to an "entity," the global names for the domains (e.g., ROW.ACME or "EUROPE.ACME") do not teach or suggest an "identifier string" that is associated with "data," as claimed in claim 17. Furthermore, the full global names for network services (e.g., "HISTORY.ROW.ACME" or "HISTORY.EUROPE.ACME.") within the domain do not teach or suggest an identifier string that has a 1-to-1 relationship with the domain.

Therefore, Oracle Admin does not teach or suggest an identifier string that identifies an entity and is associated with data.

### b) *OracleSG fails for the same reasons as Oracle Admin*

The Examiner alleges that OracleSG also teaches or suggests an identifier string. Specifically, the Examiner alleges that OracleSG's easy name synonyms for specifying a database correspond to the "identifier string." (Office Action, 16-17). The Examiner further alleges that the easy name synonyms may also be used as aliases for tables and views. (*Id.*). However, OracleSG's easy-name synonyms do not identify an entity, as required by claim 17.

OracleSG describes easy name synonyms to retrieve and connect to a database. (OracleSG, 86-87). OracleSG further describes assigning synonyms to tables and views. (*Id.*, 189-190). The synonym is merely an alias for a database, table, or view. OracleSG is silent with respect an "identifier string" identifying an entity and the same "identifier string" being associated with data.

Even if assuming, *arguendo*, a database, table or view may be interpreted as an "entity," OracleSG does not teach or suggest a synonym that uniquely identifies a database, table or view. For example, OracleSG describes using private or public synonyms to identify a database, table, or view. (*Id*). Multiple users in the database network may use the same synonym to identify the different databases, tables, or views. (*Id*). That is, a first user may use synonym X to refer to database 1 and a second user in the same database network may also use synonym X to refer to database 2. (*Id*). Therefore, OracleSG does not teach or suggest an identifier that uniquely identifies an entity. (Goodrich Decl. ¶ 43).

37

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

In light of the above, OracleSG does not teach or suggest an identifier string that uniquely identifies an entity and is associated with data.

### c) McGarvey does not cure the deficiencies of Oracle Admin and OracleSG

McGarvey is neither relied upon for nor does it teach or suggest an identifier string that identifies an entity <u>and</u> is associated with data.

### 4. POSA would not be motivated to modify Oracle Admin or combine it with OracleSG or McGarvey

#### a) A POSA would not find it obvious, nor would a POSA be motivated to modify Oracle Admin or combine it with OracleSG and/or McGarvey, to achieve the limitations of claim 17 because OracleSG and McGarvey suffer from the same flaws as Oracle Admin

As described above, OracleSG and McGarvey fail to cure the deficiencies of Oracle Admin. Specifically, neither OracleSG nor McGarvey teach or suggest *each* one of the of the plurality of data location servers in the data location network be configured to execute claim element [17.f]. Moreover, neither OracleSG nor McGarvey teach or suggest transmitting a redirect message to the client that "contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string," as recited by claim 17. Furthermore, neither OracleSG nor McGarvey teach or suggest an identifier string that identifies an entity and is associated with data, as required by claim 17. Therefore, a POSA would not be motivated or find it obvious to turn to references that include the same flaws as Oracle Admin to achieve the claim 17 limitations because a POSA would understand that modifying Oracle Admin with OracleSG and/or McGarvey *would not* satisfy claim 17's requirements. (Goodrich Decl. ¶ 39-50).

#### b) A POSA would not be motivated to modify Oracle Admin or combine it with one or more of OracleSG, and/or McGarvey because there was no reasonable expectation of success to do so to satisfy Claim 17's requirements

In order to establish a reasonable expectation of success, there must be "a reasonable expectation of achieving what is claimed in the patent-at-issue." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016); *see also Teva Pharms. USA,*

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

*Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1380-1382 (Fed. Cir. 2021). Here, the basis for the Examiner's conclusion as to reasonable expectation of success is unclear and appears to employ impermissible hindsight. In any regard, the Examiner does not consider the incompatibility of the asserted references with the '640 patent.

As described above, the '640 patent is significantly different than conventional naming systems. Specifically, the '640 patent teaches the ability to linearly scale location servers using a cluster formation which allows each location server to receive data location requests for location strings from any client and transmit information needed to calculate the location of the location string to the any client. This non-hierarchical cluster composition is expressly claimed in claims 17 and 18, through the requirement that "each" (i.e., all) of the data location servers be similarly configured to respond to a client request with the aforementioned information. In contrast, naming systems like Oracle Names imposes a hierarchical tree structure that limits queries to be received by a client's local or preferred server, and servers are not configured to provide the aforementioned information.

Like Oracle Names, McGarvey is a TCP/IP name resolution system. (McGarvey, Abstract). And, like Oracle Names, McGarvey describes names servers that are distributed in hierarchical tree structures. (McGarvey, 1:40-49; 5:3-35).

Neither Oracle Admin nor McGarvey contemplate a non-hierarchical cluster configuration. Any attempt to modify Oracle Admin or McGarvey would require a wholesale collapsing of the hierarchical tree and a fundamental change as to what information is provided by Names Servers, i.e., a listing of network addresses only. Moreover, Oracle Admin and McGarvey do not contemplate *clients* redirecting requests or calculating server locations for themselves. As such, modifying (or combining) Oracle Admin with OracleSG and/or McGarvey to achieve claim 17's requirements would require significant modifications that may result in constructing a completely different system. Therefore, a POSA would not have had reasonable expectation of success to modify Oracle Admin (with or without OracleSG) with McGarvey to meet the claim requirements of claim 17. (Goodrich Decl. ¶ 39-50).

> *c)*    *Modifying Oracle Admin or combine it with one or more of OracleSG, and/or McGarvey to satisfy claim 17's requirements changes the principle operation underpinning Oracle Admin*

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

If the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims prima facie obvious. *In re Ratti*, 270 F.2d 810, 813 (CCPA 1959) (holding the "suggested combination of references would require a substantial reconstruction and redesign of the elements shown in [the primary reference] as well as a change in the basic principle under which the [primary reference] construction was designed to operate.").

As described above, claim 17 requires a data location network in a cluster configuration and each data location server being configured to transmit a redirect message to the client including information for use by the client to *calculate* the location of a different data location server containing the location string. However, attempting to modify or combine Oracle Admin with one or more of OracleSG and/or McGarvey to satisfy claim 17's requirements of enabling the client to calculate the location of the requested information changes the principle operation underpinning Oracle Admin.

Oracle Names involves making network address and database link information in a distributed database network available to all nodes in the network. (Oracle Admin at 5). Specifically, Oracle Admin involves a client transmitting a name resolution request to a Names Server. (*See e.g., id.,* 30-32; 52-54; 190-192). The name resolution request includes an alias for a network service. (*Id*). The request is traversed up and down ta hierarchical tree configuration of Names Severs to retrieve a network address. (*See e.g.,* Oracle Admin at 190-192). The client receives the network address in response to the name resolution request for the network service and connects with the network service using the network address. (*Id*).

Oracle Admin's principle operation involves traversing a hierarchical tree configuration of Names Severs to retrieve a network address. (*Id*). As described above, attempting to modifying Oracle Admin with one or more of OracleSG and/or McGarvey to satisfy claim 17's requirements would involve collapsing Oracle Admin's hierarchical structure. This would require substantial reconstruction and redesign of Oracle Admin's elements (e.g., Names Servers).

Oracle Admin's principle operation further involves allowing a client to connect with a network service by using an alias for the network service. In this regard, Oracle Admin restricts the amount of operations executed by the client. For example, Oracle Admin describes the client's

40

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

limitations when discussing the disabling forward. Specifically, Oracle Admin states "Clients are not capable of redirecting their requests as Names Servers would." (*Id.*, 137). As such, modifying Oracle Admin with one or more of OracleSG and/or McGarvey to satisfy claim 17's requirements would involve enabling the client to calculate the location of the requested information. This would be counterintuitive to Oracle Admin's teachings. (Goodrich Decl. ¶ 46-48).

Therefore, attempting to modify Oracle Admin with one or more of OracleSG and/or McGarvey to satisfy claim 17's requirements would change the principle operation of Oracle Admin. (*Id.*, 39-50).

**G.    Oracle Admin, OracleSG, and McGarvey, alone or in combination, do not render Claim 18 obvious for at least the same reasons discussed with respect to Claim 17.**

Similar to claim 17, claim 18 claims a data location server network in a non-hierarchical cluster configuration. This configuration is embodied in element [18.f], which specifies that *each* one of the of the plurality of data location servers in the data location server network be configured to execute claim elements [18.g-h]. For ease of reference, claim 18 is reproduced again here:

> **[18.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising:
>
> **[18.a]** a data repository configured to store data,
>
> **[18.b]** wherein the data is associated with an identifier string;
>
> **[18.c]** a client responsive to a data query to query a data location server for location information associated with the identifier string;
>
> **[18.d]** a data location server network comprising a plurality of data location servers,
>
> **[18.e]** at least one of the plurality of data location servers containing location information associated with the identifier string,
>
> **[18.f]** wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client:
>
> **[18.g]** if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string;

41

**[18.h]** if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string

Because claim 18 requires "each of the plurality of data location servers comprises computer executable code configured to execute" claim elements [18.g-h], which requires being configured to "transmit a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string" that is similar to claim element [17.f], Oracle Admin does not, either alone or in combination with any of OracleSG or McGarvey, disclose, suggest, or render obvious claim 18 for the same reasons discussed in Section F above.

### H.   Oracle Admin, OracleSG, McGarvey, and Rajani do not render claim 24 obvious

Claim 24 specifies that the location information comprises *a portion of a hash table that is distributed across the plurality data location servers* in the data location server network. That is, the claim requires a hash table that is divided into portions that are distributed over the data location servers in the data location server network.

The Examiner points to OracleSG's brief mention of hashing to execute queries as satisfying this limitation of claim 24. (Office Action, 67-68; *see also* OracleSG, 633). Patent Owner respectfully disagrees.

OracleSG's rule-based optimizers execute queries to retrieve data. (OracleSG, 633). While OracleSG mentions using hashing to execute the queries, OracleSG is silent with respect to a hash table that is ***portioned and distributed*** across a plurality of data location servers. (*Id*). That is, OracleSG does not teach or suggest storing portions of a single hash table over a plurality of data location servers.

The Examiner further points to Rajani's hash function which is used to locate a file in backup memory as satisfying this limitation of claim 24. Patent Owner respectfully disagrees. As

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

explained in further detail below, Rajani describes a server storing an *entire* hash table (Table 1). (Rajani, 4:1-67). Rajani does not teach or suggest storing *portions* of a hash table across a plurality of data location servers.

### *1.* The combination of Oracle Admin with Rajani does not satisfy claim 24's requirements

The Examiner alleges a POSA would find it obvious to include "a portion of location information in one Names Server based on Rajani's hash function used to organize the information across multiple Names Servers…. (*Id.*, 70). The Examiner's conclusion is not supported by the record. As an initial matter, the claim requires the "location information comprise a portion of a hash table," <u>not</u> that a location server include a "portion of location information." Further, Rajani does not contemplate portioning a hash table and distributing those portions across the plurality of Names Servers (data location servers). Rajani specifically discloses a single hash table (Table 1; *see* Rajani, Fig. 2, 4:1-6) with no discussion or suggestion of portioning that table or distributing those portions over multiple data location servers. The Examiner cites to disclosures in columns 4, 5, and 6 of Rajani (Office Action, p. 68-69), but none teach or suggest portioning Table 1 and distributing it over multiple servers.

Accordingly, a POSA would not have found it obvious at the time of the invention to include a portion of the location information in Oracle Admin's one Names Server based on Rajani's hash function used to organize the information across the Names Servers. *See* Goodrich Decl., ¶ 51-57.

### *2.* A POSA would not find it obvious to modify Oracle Admin with OracleSG or Rajani to satisfy claim 24

The Examiner alleges that a POSA could use OracleSG's rule-based optimizer and general knowledge to modify Oracle Admin to include a portion of a hash table in its location information that is distributed across Name Servers. (Office Action, 67-70). The Examiner further alleges that a POSA would find it obvious to include a portion of the location information in Oracle Admin's one Names Server based on Rajani's hash function used to organize the information across the Names Servers. (*Id.*, 68-70). However, Oracle Admin, OracleSG, McGarvey, and Rajani are completely silent with respect to a single hash table that is portioned and distributed over a plurality of data servers.

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

Portioning a hash table and distributing the portions of the hash table was not a well-known concept in the art. *See* Goodrich Decl., ¶ 54. As described above, Oracle Admin, OracleSG, McGarvey, and Rajani are silent with respect to a hash table that is portioned and distributed across a plurality of data servers. Therefore, the Examiner fails to explain how a POSA could use OracleSG's hash-based queries to store portions of a single hash table distributed across Oracle Admin's Names Servers. The Examiner further fails to explain why Rajani's hash table would be portioned and why only portions of that hash table would be included in Oracle Admin's Names Servers. Indeed, given the complexity of using a distributed hash table to organize data location information and the lack of relevant teachings in general knowledge or asserted references, a POSA would not find it obvious to modify Oracle Admin with one or more of OracleSG and/or Rajani to include a respective portion of a single hash table in each respective Oracle Admin Name Server. *See* Goodrich Decl., ¶ 51-57.

### 3. A POSA would not be motivated to modify Oracle Admin-McGarvey with OracleSG or Rajani to satisfy the claim 24 requirements

The Examiner alleges a POSA would be motivated to modify Oracle Admin with OracleSG's hash-based queries to optimize search performance in its location request queries. (Office Action, 68). The Examiner further alleges that a POSA would be motivated to modify Oracle Admin with Rajani's hashing to quickly identify the data's location. (*Id.*, 70). However, a POSA would not be motivated to modify Oracle Admin-McGarvey with one or more of OracleSG and/or Rajani for at least two reasons.

#### a) *First, grafting either OracleSG's hash-based queries or Rajani's hashing to Oracle Admin to optimize searches or quickly identify data's location is fraught with impermissible hindsight bias*

Oracle Admin, OracleSG, McGarvey, and Rajani are all silent with respect to a distributed hash table. As such, Oracle Admin, OracleSG, McGarvey and Rajani do not teach or suggest storing portions of a single hash table across a plurality of data location servers. In contrast, the '640 patent describes location information for the data is organized across data location servers a hash function. (*See e.g., id.,* 4:26-67). The '640 patent further teaches that each data location server stores a portion of the hash table (e.g., a distributed hash table). (*Id.*, 14:56-63; 17:54-60).

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

The asserted references are devoid of any reasoning to motivate use of a distributed hash table. To this end, the reasoning for using a distributed hash table is only present on the record in '640 specification. As such, it logically follows that grafting a portion of a hash table in each of the Oracle Admin Name Servers has been improperly garnered from Patent Owner's own specification. Therefore, the combination of Oracle Admin and OracleSG or Oracle Admin, OracleSG and Rajani is an exercise of impermissible hindsight, and not modifications or combinations a POSA would have made at the time of the invention.

> **b)** *Second, a POSA would not have had reasonable expectation of success for satisfying claim 24's requirements by modifying Oracle Admin-McGarvey with OracleSG or Oracle Admin-OracleSG-McGarvey with Rajani*

As stated above, in order to establish a reasonable expectation of success, the Examiner must show "a reasonable expectation of achieving what is claimed in the patent-at-issue." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.,* 821 F.3d 1359, 1367 (Fed. Cir. 2016); *see also Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.,* 18 F.4th 1377, 1380-1382 (Fed. Cir. 2021). The Examiner fails to clearly show how reasonable expectation of success would have been arrived at by a POSA at the time of the invention. Additionally, the Examiner did not address the complexity and incompatibility of implanting distributed hash tables in Oracle Admin's Names Servers.

As described above, claim 24 specifies that a portion of a hash table is distributed over a plurality of data location servers. In contrast, Oracle Admin describes a hierarchical tree configuration where Names Servers store network addresses of network services and/or addresses of parent or child Names Servers. (*See e.g.,* Oracle Admin at 190-192). Oracle Admin does not teach or suggest organizing data location information using a hash function. To this end, Oracle Admin is silent with respect to each Name Server storing a portion of a hash table corresponding to the data location information that is stored in the Names Server. OracleSG, McGarvey, and Rajani are similarly silent with respect to each data location server in a plurality of data location servers storing a portion of a hash table.

Oracle Admin explicitly teaches away from using Dynamic Discovery for complicated networks. (Oracle Admin, 21). For example, Oracle Admin explicitly states, "If you have a *simple*

existing network that is growing, the Dynamic Discovery Option is a good choice." (Oracle Admin, 21) (emphasis added). Oracle Admin further states that Dynamic Discovery (or "DDO") is "not a good choice" and is "not suitable" for "large, enterprise-scale networks." (*Id*). A POSA would understand Oracle Admin discourages the use of DDO in combination with large-scale networks. Furthermore, Oracle Admin indicates that its Dynamic Discovery Option only works with SQL*Net 2.3. (*Id.*; *see also*, Goodrich Decl., ¶ 45). Therefore, a POSA would not have a reasonable expectation of success to modify or combine Oracle Admin with one or more of the complex networks described in OracleSG and/or McGarvey.

Furthermore, attempting to modify Oracle Admin with one or more of OracleSG, McGarvey, and/or Rajani to store a portion of a distributed hash table stored over a plurality of data location servers requires significant reengineering and reconfiguration of Oracle Admin. Therefore, a POSA would not have a reasonable expectation of success to configure Oracle Admin such that each Names Server stored a portion of a hash table. *See* Goodrich Decl., ¶¶ 51-57.

### I.   Secondary Considerations of Non-Obviousness

Significant evidence also supports a finding that the claims at issue are not obvious. As set forth in MPEP § 2141:

> The framework for the objective analysis for determining obviousness under 35 U.S.C. 103 is stated in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966). Obviousness is a question of law based on underlying factual inquiries. The factual inquiries enunciated by the Court are as follows:
>
> > (A) Determining the scope and content of the prior art;
> >
> > (B) Ascertaining the differences between the claimed invention
> >     and the prior art; and
> >
> > (C) Resolving the level of ordinary skill in the pertinent art.
>
> Objective evidence relevant to the issue of obviousness must be evaluated by Office personnel. *Id.* at 17-18, 148 USPQ at 467. Such evidence, sometimes referred to as 'secondary considerations,' may include evidence of commercial success, long-felt but unsolved needs, failure of others, and unexpected results.

Here, evidence of secondary considerations of non-obviousness includes the following:

### 1.   Long felt but unsolved needs

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

Many people and institutions have written about the long need for technology that would enable a highly scalable information database, which is enabled by the technology of the asserted claims. For example, in February 2004, years after the invention of the '640 patent, an article reported on work being conducted at MIT that asked the question, "Wouldn't it be better to store data in the nooks and crannies of the Internet, a few keystrokes away from any computer, anywhere?" *10 Emerging Technologies That Will Change Your World*, at www.technologyreview.com (February 2004) (attached as Exhibit A) at 44. The article characterized a long-felt need for "making digital files easier to maintain and access while eliminating the threat of catastrophes that obliterate information, from blackouts to hard-drive failures." *Id.* The article goes on to discuss using "distributed hash tables" to identify the locations of "files scattered around the Internet." *Id.*

Additional evidence that speaks to a long felt but unmet need for the inventions of the '640 patent include: U.S. Patent No. 5,542,087 to Neimat at 1:6-4:36 (7/12/2022 IDS, U.S. Pat. cite no. 2); U.S. Patent No. 5,230,047 to Frey at 1:30-2:12 (7/12/2022 IDS, U.S. Pat. cite no. 1); "Distributed Name Servers: Naming and Caching in Large Distributed Computing Environments" by Terry at §§ 1.1-1.3, 2.1, 2.5(7/12/2022 IDS, NPL cite no. 15); DNS RFC1034 Domain names Concepts and Facilities by Mockapetris at §§ 2.1-2.2 (7/12/2022 IDS, NPL cite no. 11); "An Adaptive Data Placement Scheme for Parallel Database Computer Systems" by Hua and Lee at § 1 (7/12/2022 IDS, NPL cite no. 5); "Design and Implementation of DDH: A Distributed Dynamic Hashing Algorithm" by Devine at § 1 (7/12/2022 IDS, NPL cite no. 4); "Scale in Distributed Systems" by Neuman at Abstract, §§ 1, 3.1-3.4 (7/12/2022 IDS, NPL cite no. 12); "Location-Independent Naming for Virtual Distributed Software Repositories" by Browne et al. at § 1 (7/12/2022 IDS, NPL cite no. 2); "A Model for Worldwide Tracking of Distributed Objects" by van Steen, Hauck, and Tanenbaum at § 1, 4 (7/12/2022 IDS, NPL cite no. 14); "The Core Legion Object Model" by Lewis and Grimshaw at § 1, 2, 6 (7/12/2022 IDS, NPL cite no. 9); "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web" by Karger et al. at § 1 (7/12/2022 IDS, NPL cite no. 7); "Load Management in Distributed Video Servers" by Venkatasubramanian and Ramanathan at §§ 1.1 (7/12/2022 IDS, NPL cite no. 16); "Distributed Web Caching System with Consistent Hashing" by Sherman at Abstract, §§ 1.1-1.2 (7/12/2022 IDS, NPL cite no. 13); "Web Caching with Consistent Hashing" by Karger, Sherman, et al. at Abstract, § 1 (7/12/2022 IDS, NPL cite no. 8); "Locating Copies of

Objects Using the Domain Name System" by Kangasharju et al. at Abstract, § 1 (7/12/2022 IDS,
NPL cite no. 6); "Resource Location in Very Large Networks" by Partha Dasgupta at §§ 3.4, 3.5
(7/12/2022 IDS, NPL cite no. 17); Dynamic Load Balancing on Web-server Systems by Valeria
Cardellini et al., IEEE Internal Computing, vol. 3, no. 3, pp. 28-39 at § 1, 2, 4 (7/12/2022 IDS,
NPL cite no. 3); "Distributed cooperative Web servers" by Baker and Moon at Abstract, § 1, 2
(7/12/2022 IDS, NPL cite no. 1); Paul Albitz and Cricket Liu, DNS and BIND, O'Reilly &
Associates, Inc., 3rd ed. 1998 at Preface, § 1 7/12/2022 IDS, NPL cite no. 18, which was
mistakenly identified as "Dasgupta" in the SB-08, but was submitted to the Office with the IDS);
U.S. Patent No. 6,212,521 to Minami at 1:37-3:35 (7/12/2022 IDS, U.S. Pat. cite no. 8); U.S.
Patent No. 6,430,618 to Karger at 1:31-6:19 (7/12/2022 IDS, U.S. Pat. cite no. 11); U.S. Patent
No. 6,553,420 to Karger at 1:36-6:26 (7/12/2022 IDS, U.S. Pat. cite no. 20); U.S. Patent No.
6,807,632 to Carpentier at 1:22-4:23(7/12/2022 IDS, U.S. Pat. cite no. 19).

### 2.    Failure of others and unexpected results

Individuals and entities have written about the failure of others to develop technology that
would enable a highly scalable information database, which was achieved by the technology of
the asserted claims. For example, *Distributed Name Servers: Naming and Caching in Large
Distributed Computing Environments* by Douglas Brian Terry ("Terry") (*see* 7/12/2022 IDS, NPL
cite no. 15) observes that "[e]xisting distributed name services, which manage names based on
their syntactic structure, may lack the flexibility needed by large, diverse, and evolving computing
communities." Terry at p. 1 (Abstract).

Terry provides a summary of several distributed name services that were developed to
manage and locate data in distributed database systems but were unable to manage highly scalable
systems. For instance, Terry describes the "NIC Name Server" of ARPANET, which ran into
problems as it began to grow. Terry observed that "[w]ith the growth in size of the ARPANET
and its expansion into the DARPA Internet . . . maintaining up-to-date host name to network
address mappings became increasingly difficult on individual hosts." *Id*. at p. 8. According to
Terry, "[t]he development of an experimental NIC Name Server" only "slightly alleviated the
situation by allowing the host table information to be retrieved incrementally via network
protocols." *Id*. As another example, Terry discusses the "DARPA Domain Name System," which
suffered "inadequacies of central administration" but eventually gave way to "a decentralized

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

scheme" that would "permit information on network entities to be distributed and replicated" on the DARPA Internet. *Id.* at 9. Terry also identifies a number of other systems that attempted to provide solutions for identifying and locating information in distributed databases, such as "BIND Server," "PUP Name Lookup Server," "Grapevine," "Clearinghouse," "CSNET Name Server," "Cambridge Name Server," "COSIE Name Server," and "R* Catalog Manager." *Id.* at 9-11. Terry describes how these systems work, *see id.* at 11-17, but notes that these systems "stress[] functionality, while performance considerations have remained of secondary importance." *Id.* at 17.

Terry observed that while "[s]ignificant work has been done in the area of communication protocols for accessing name services and in the area of database management systems for storing object attributes," "[t]he currently unresolved problems in designing name services concern how to manage large distributed name spaces." *Id.* at 20. According to Terry, existing technologies "fail to adequately address some of the problems … for very large and diverse computing environments," including problems related to:

- "Name resolution" (e.g., with respect to limitations of "location-dependent names"),
- "Administrative control" (e.g., with respect to inflexible means for "[c]hanging an object's name"),
- "Overhead costs" (e.g., with respect to "[a] lack of scalability" and associated high costs that render large network applications "infeasible"),
- "Adaption" (e.g., with respect to existing technologies' "lack [of] flexibility to scale up to very large environments"), and
- "Performance" (e.g., with respect to "response times for name service lookups or updates").

*Id.* at 20-22. Terry noted "[t]he DARPA Internet's Domain Name System seems to come the closes to handling very large and diverse computing environments," but observed that "a more flexible approach to name management" was still needed. *See id.* at 22.

Additional evidence that speaks to the failures of others to solve the problem solved by the inventions of the '640 patent include: U.S. Patent No. 5,542,087 to Neimat at 1:6-4:36 (7/12/2022 IDS, U.S. Pat. cite no. 2); U.S. Patent No. 5,230,047 to Frey at 1:30-2:12 (7/12/2022 IDS, U.S. Pat. cite no. 1); "Distributed Name Servers: Naming and Caching in Large Distributed Computing Environments" by Terry at §§ 1.1-1.3, 2.1, 2.5(7/12/2022 IDS, NPL cite no. 15); DNS RFC1034

49

Domain names Concepts and Facilities by Mockapetris at §§ 2.1-2.2 (7/12/2022 IDS, NPL cite no. 11); "An Adaptive Data Placement Scheme for Parallel Database Computer Systems" by Hua and Lee at § 1 (7/12/2022 IDS, NPL cite no. 5); "Design and Implementation of DDH: A Distributed Dynamic Hashing Algorithm" by Devine at § 1 (7/12/2022 IDS, NPL cite no. 4); "Scale in Distributed Systems" by Neuman at Abstract, §§ 1, 3.1-3.4 (7/12/2022 IDS, NPL cite no. 12); "Location-Independent Naming for Virtual Distributed Software Repositories" by Browne et al. at § 1 (7/12/2022 IDS, NPL cite no. 2); "A Model for Worldwide Tracking of Distributed Objects" by van Steen, Hauck, and Tanenbaum at § 1, 4 (7/12/2022 IDS, NPL cite no. 14); "The Core Legion Object Model" by Lewis and Grimshaw at § 1, 2, 6 (7/12/2022 IDS, NPL cite no. 9); "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web" by Karger et al. at § 1 (7/12/2022 IDS, NPL cite no. 7); "Load Management in Distributed Video Servers" by Venkatasubramanian and Ramanathan at §§ 1.1 (7/12/2022 IDS, NPL cite no. 16); "Distributed Web Caching System with Consistent Hashing" by Sherman at Abstract, §§ 1.1-1.2 (7/12/2022 IDS, NPL cite no. 13); "Web Caching with Consistent Hashing" by Karger, Sherman, et al. at Abstract, § 1 (7/12/2022 IDS, NPL cite no. 8); "Locating Copies of Objects Using the Domain Name System" by Kangasharju et al. at Abstract, § 1 (7/12/2022 IDS, NPL cite no. 6); "Resource Location in Very Large Networks" by Partha Dasgupta at §§ 3.4, 3.5 (7/12/2022 IDS, NPL cite no. 17); Dynamic Load Balancing on Web-server Systems by Valeria Cardellini et al., IEEE Internal Computing, vol. 3, no. 3, pp. 28-39 at § 1, 2, 4 (7/12/2022 IDS, NPL cite no. 3); "Distributed cooperative Web servers" by Baker and Moon at Abstract, § 1, 2 (7/12/2022 IDS, NPL cite no. 1); Paul Albitz and Cricket Liu, DNS and BIND, O'Reilly & Associates, Inc., 3rd ed. 1998 at Preface, § 1 7/12/2022 IDS, NPL cite no. 18, which was mistakenly identified as "Dasgupta" in the SB-08, but was submitted to the Office with the IDS); U.S. Patent No. 6,212,521 to Minami at 1:37-3:35 (7/12/2022 IDS, U.S. Pat. cite no. 8); U.S. Patent No. 6,430,618 to Karger at 1:31-6:19 (7/12/2022 IDS, U.S. Pat. cite no. 11); U.S. Patent No. 6,553,420 to Karger at 1:36-6:26 (7/12/2022 IDS, U.S. Pat. cite no. 20); U.S. Patent No. 6,807,632 to Carpentier at 1:22-4:23(7/12/2022 IDS, U.S. Pat. cite no. 19).

Much has also been written about the unlikelihood of the inventions of the asserted claims. *See, e.g., Resource Location in Very Large Networks* by Partha Dasgupta ("Dasgupta") §§ 3.4, 3.5 (*see* 7/12/2022 IDS, NPL cite no. 17). Dasgupta observed that "[w]hile such networks" as the Internet and telephone systems "are quite common, what is not so common is completely scalable,

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

non-hierarchical naming that is independent of the entities location or affiliations." *Id.* at 156 (Abstract). According to Dasgupta, this problem "has been studied in many contexts," but "most results are not scalable for really large worldwide networks." *Id.* For example, Dasgupta discusses known technologies, such as "The Domaine Name System (DNS)," "Amoeba," "The V System," "Clouds," "Locus," "Clearinghouse," and "Galaxy," but finds them limited in terms of scalability because they rely on hierarchical naming. *Id.* at 157-158. While Dasgupta advocates for a non-hierarchical naming system to achieve "a scalable name service" and suggests that such solutions "may actually be implementable (or desirable)," Dasgupta observes that "[t]he bad news is that we have been unable to come up with a straightforward algorithmic solution to this problem, that is scalable and fault tolerant and works with feasible complexity." *Id.* at 159. Dasgupta initially posits that "such a algorithmic solution indeed may not exist." *Id.* Dasgupta ultimately concludes that "[t]here is no straightforward solution" and proffers only a "workable" solution with "plenty of room for improvement." *Id.* at 162.

### 3. Commercial success

Entities, including AWS, use the asserted claims in products accused of infringing claims 17, 18, and 24, like Amazon Web Services DynamoDB, and have had substantial commercial success. For example, DynamoDB customers include companies with extremely large-scale data storage and data management needs, including household names like Netflix (video entertainment streaming), Zoom (video conferencing platform), Disney (Disney+ video entertainment streaming), Dropbox (cloud-based data storage), Snap Inc. (Snapchat messaging ap), CapitalOne (mobile banking apps), Amazon (workflow engines for order fulfillment), and many others. Exhibit B (https://aws.amazon.com/dynamodb/customers/). Entities have written that "[m]any of the world's fast-growing enterprises use Amazon's DynamoDB service to manage their big data," including "[e]nterprises such as Airbnb, Toyota, Capital One, and many more." Exhibit C (https://www.contino.io/insights/aws-dynamodb). Reasons for this significant commercial success include "DynamoDB's cost-effective, high performance, throughput, lower latency, and reduced cost of ownership." *Id.* DynamoDB is regarded as "one of the most popular cloud-based NoSQL database services," which "provides reliable, scalable, and highly available databases to users with millisecond range latency at any scale." Exhibit D (https://dynobase.dev/dynamodb-use-cases/). DynamoDB is said to be popular in (and has "revolutionized") a wide range of industry segments (described as "most industries worldwide"), including the "Gaming Industry"

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

(e.g., improving multiplayer gaming), "Transportation Industry" (e.g., improving vehicle tracking), "Entertainment Industry" (e.g., improving customization of user experience), "Social Media Industry" (e.g., improving ability to feed information in real time), and "Retail Industry" (e.g., improving resiliency and persistence of shopping experience). *Id.* AWS boasts that "DynamoDB is popular with developers building serverless applications." Exhibit E (https://aws.amazon.com/getting-started/hands-on/purpose-built-databases/dynamodb/). DynamoDB is regarded as one of "the most popular options for NoSQL databases," "widely deployed," and "used by more than 100,000 AWS customers." Exhibit F (https://www.missioncloud.com/blog/resource-choosing-the-best-nosql-database-aws-dynamodb-vs-mongodb-performance). DynamoDB is considered one of the "market leaders for NoSQL databases." Exhibit G (https://www.bmc.com/blogs/mongodb-vs-dynamodb/).

The claimed inventions contain substantial overlap with the accused products. The benefits of the products accused of infringing claims 17, 18, and 24 – *i.e.*, the combination of massive scalability and throughput, high availability, low latency, and high durability, which are directly enabled by Kove's patented technology – are identified by AWS as defining features of DynamoDB. For example, AWS touts DynamoDB as "designed to run high-performance, internet-scale applications that would overburden traditional relational databases."[5] According to AWS, "DynamoDB is a key-value and document database that can support tables of virtually any size with horizontal scaling," which "enables DynamoDB to scale to more than 10 trillion requests per day with peaks greater than 20 million requests per second, over petabytes of storage."[6] AWS

---

[5] Exhibit H (https://aws.amazon.com/dynamodb/features/?pg=dynamodbt&sec=hs).

[6] *Id.*

Control No. 90/019,036
Atty. Dkt. No. KOVE-640EPR036

states that DynamoDB "delivers low-latency performance at any scale"[7], has a throughput capacity that is "practically unlimited"[8], and has "99.999% availability"[9].

## V. CONCLUSION

All of the stated grounds of rejection have been properly traversed, accommodated, or rendered moot. The Patent Owner therefore respectfully requests that the Examiner reconsider all presently outstanding rejections and that they be withdrawn. The Patent Owner believes that a full and complete reply has been made to the outstanding Office Action and, as such, the present reexamination proceeding is in condition for a Notice of Intent to Issue a Reexamination Certificate. If the Examiner believes, for any reason, that personal communication will expedite this proceeding, the Examiner is invited to telephone the undersigned at the number provided.

Prompt and favorable consideration of this Reply is respectfully requested.


Respectfully submitted,

REICHMAN JORGENSEN LEHMAN & FELDBERG LLC


/Naveed Hasan/
Naveed Hasan, Reg. No. 72,688
Signed under 37 C.F.R. § 1.34 Acting in a Representative
Capacity for Patent Owner

Dated: August 4, 2022

1909 K Street, NW, Suite 800
Washington, DC 20006
(202) 894-7305

---

[7] Exhibit I (https://aws.amazon.com/blogs/database/amazon-dynamodb-auto-scaling-performance-and-cost-optimization-at-any-scale/).

[8] Exhibit J (https://aws.amazon.com/dynamodb/faqs/?trk=94bf4df1-96e1-4046-a020-b07a2be0d712&sc_channel=ps&sc_campaign=acquisition&sc_medium=ACQ-P|PS-GO|Brand|Desktop|SU|Database|DynamoDB|US|EN|Text|IE&ef_id=Cj0KCQjwuaiXBhCCARIsAKZL43n_9aEOrFdTIWqmipW7mQbvIbqDk_kV84UNDDs5wDKIfmkitlZHRbUaAgoZEALw_wcB:G:s&s_kwcid=AL!4422!3!610001015513!e!!g!!aws%20dynamodb)

[9] Exhibit K (https://aws.amazon.com/dynamodb/).