# Exhibit B

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| *In re*: Reexam of U.S. Patent No. 7,814,170 | Confirmation No.: 7078 |
| Control No. 90/019,035 | Art Unit: 3992 |
| Filed: November 19, 2021 | Examiner: WASSUM, Luke S. |
| For: **Network Distributed Tracking Wire Transfer Protocol** | Atty. Docket: KOVE-170EPR035 |

### Patent Owner's Reply to Office Action in *Ex Parte* Reexamination

*Mail Stop "Ex Parte Reexam"*
Attn: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Commissioner:

Patent Owner hereby replies to the Office Action dated May 11, 2022, issued in the above-captioned *ex parte* reexamination. The due date for reply is August 11, 2022 based on the Office's granting of a petition for an extension of time. No additional fees are believed to be necessary, however, to prevent abandonment of this reexamination, please contact the undersigned representative for payment information.

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

### *Status of the Claims*

A listing of each claim under reexamination is provided below. Although no claim amendments are proposed in this response, the patent owner nonetheless provides this listing of the original claims from U.S. Patent No. 7,814,170 to Overton et al. ("the '170 patent") that are at issue, for ease of reference and review.

Claims 1, 2, 6, 8, 9,12, and 15 are subject to *ex parte* reexamination:

1. (Patent Claim) A system for managing data stored in a distributed network, the system comprising: a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and a data location server network comprising a plurality of data location servers, wherein data location information for a plurality of data entities is stored in the data location server network, at least one of the plurality of data location servers includes location information associated with the identifier string, each one of the plurality of data location servers comprises a processor and a portion of the data location information, the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.

2. (Patent Claim) The system of claim 1, wherein the location information comprises any portion of a hash table generated with the hash function.

6. (Patent Claim) A system for managing data location information and providing the data location information in response to location queries, the system comprising: a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity; wherein the location server includes a processor, and programming logic stored on the location server, wherein the

2

programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity.

8. (Patent Claim) The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information.

9. (Patent Claim) The system of claim 6, wherein the location information in the location server is maintained in an indexed location store.

12. (Patent Claim) The system of claim 9, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers.

15. (Patent Claim) A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising:

correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network;

receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities:

determining which of the plurality of location servers includes the location information;

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and

sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information.

4

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

*Remarks*

Claims 1-2, 6, 8-9, 12 and 15 of the '170 patent are currently subject to *ex parte* reexamination. Claims 1-2, 6, 8-9, 12 and 15 stand rejected in the Office Action dated May 11, 2022 ("Office Action"). Claims 3-5, 7, 10-11, 13-14 and 16-17 are not subject to reexamination.

Patent Owner respectfully traverses all rejections. Based on the following remarks, and the Declaration of M. T. Goodrich submitted herewith, Patent Owner respectfully requests the Examiner reconsider and withdraw the outstanding rejections.

The following Table of Contents is included for ease of reference:

I. STATUS OF RELATED MATTERS ..................................................................7

II. INFORMATION DISCLOSURE STATEMENTS ...............................................7

III. STATEMENT OF SUBSTANCE OF EXAMINER INTERVIEW ......................7

IV. RESPONSE TO SUBSTANTIVE REJECTIONS IN THE OFFICE ACTION ..................7

    A. Relevant Prosecution History ......................................................................8

    B. Overview of the Technology and continued patentability of the claims ...........................8

        1. The problems with the existing systems ...................................................9

        2. The '170 patent claims overcome the limitations present in the prior art .................12

        3. Reasons for continued patentability...........................................................17

    C. Claim Construction .....................................................................................17

        1. Claim Construction Summary Table ........................................................18

        2. Independent claims 1, 6, and 15 in view of the claim construction...........................19

    D. Oracle Names and the '170 Patent Invention Are Fundamentally Different Protocols....23

        1. Servers in hierarchically structured networks do not "know" what's contained in other servers throughout the network ....................................................25

        2. Oracle Admin lacks the non-hierarchical cluster structure required to satisfy the requirements of claims 1, 6, and 15 ..........................................................25

    E. Oracle Admin, alone or in combination with OracleSG and/or Rajani, do not render claims 1 obvious .............................................................................30

        1. The combination of Oracle Admin-OracleSG-Rajani does not teach or suggest portioning the data location information across data location servers based on applying a hash function to the identifier identifying the data entity, as required by claim 1.........................................................................................30

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

2. The combination of Oracle Admin-OracleSG-Rajani does not teach or suggest "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string," as recited by claim 1 ................................................................. 32

3. A POSA would not be motivated or find it obvious to modify or combine Oracle Admin with one or more of OracleSG and/or Rajani to satisfy the requirements of claim 1 .......................................................................................................... 34

4. The combination of Oracle Admin, OracleSG, and Rajani does not teach or suggest the required relationships among "identifier string," "data entity," and "location information," as required by claim 1 ..................................................... 38

F. Claim 2 Is Not Obvious In View of Oracle Admin-OracleSG-Rajani .......................... 40

1. A POSA would not be motivated or find it obvious to modify or combine Oracle Admin with one or more of OracleSG and/or Rajani to satisfy claim 2's requirements .................................................................................................... 41

G. Oracle Admin, OracleSG, and McGarvey fail to render claims 6 or claim 15 obvious ... 42

1. The combination of Oracle Admin-OracleSG-McGarvey fail to teach or suggest a redirect message that identifies which data location server contains the location information .................................................................................................... 44

2. The combination of Oracle Admin-OracleG-McGarvey fail to teach or suggest transmitting a redirect message that indicates with specificity which data location server contains the location information to the client, as required by claim 15 ........ 47

3. Oracle Admin, OracleSG, and McGarvey do not teach or suggest associating the location of data pertaining to an entity to an identifier identifying the entity, as required by claim 6 ..................................................................................... 48

4. A POSA would not be motivated to modify or combine Oracle Admin with one or more of OracleSG and/or McGarvey ........................................................... 51

5. The combination of Oracle Admin, OracleSG, and McGarvey do not teach or suggest an identifier string that identifies a data entity, as required by claim 15 ................. 55

H. Claim 8 Is not obvious in view of Oracle Admin-OracleSG-Rajani ............................. 55

I. Oracle Admin, OracleSG, McGarvey, and Rajani fail to render claims 9 and 12 obvious ............................................................................................................ 57

1. The combination of Oracle Admin with one or more of OracleSG, McGarvey, and Rajani does not render claims 9 or 12 obvious ............................................... 58

J. Secondary Considerations of Non-Obviousness ..................................................... 59

1. Long felt but unsolved needs and industry praise .......................................... 60

2. Failure of others and unexpected results ..................................................... 61

3. Commercial success ............................................................................. 64

V. CONCLUSION ........................................................................................... 66

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

### I.      *Status of Related Matters*

The '170 patent is the subject of litigation in *Kove IO, Inc., v. Amazon Web Services, Inc.,* Case No. 1:18-cv-08175 (N.D. Ill.).

### II.     *Information Disclosure Statements*

Patent Owner previously submitted an information disclosure statement (IDS) on July 12, 2022.

### III.    *Statement of Substance of Examiner Interview*

Patent Owner thanks Examiners Luke Wassum and Peng (Simon) Ke and Supervisory Patent Examiner Fuelling for an Interview held July 21, 2022 with Co-Inventor John Overton and Patent Owner's representatives Khue Hoang (Reg. No. 44,767) and Naveed Hasan (Reg. No. 72,688). The Interview was conducted for this reexamination, as well as the co-pending reexamination of related U.S. Patent No: 7,103,640 (Control No. 90/019,036). The Interview included discussions regarding the background and history of the invention, interpretations of certain claims being reexamined, and the deficiencies of the applied references, both individually and when combined, with respect to particular claim terms.

Examiner Wassum requested Patent Owner provide further clarification about certain aspects of the reexamined claims, including distinguishing the "turn off request forwarding" disclosure in Oracle Admin as it pertains to claim 6, and the term "data entity," as recited in claims 1 and 15 of the '170 patent. In this Response, Patent Owner provides the requested clarifications, as well as detailed support for the patentability of the reexamined claims over the asserted prior art, whether considered individually or in combination.

### IV.     *Response to Substantive Rejections in the Office Action*

The Office Actions includes three grounds of rejections:

Ground 1: Claims 1 and 2 are rejected under pre-AIA 35 U.S.C. § 103(a) as allegedly being obvious over Oracle Admin in view of OracleSG and in further view of Rajani.

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

Ground 2: Claims 6, 8, and 15 are rejected under pre-AIA 35 U.S.C. § 103(a) as allegedly being obvious over Oracle Admin in view of OracleSG and in further view of McGarvey.

Ground 3: Claims 9 and 12 are rejected under pre-AIA 35 U.S.C. § 103(a) as allegedly being obvious over Oracle Admin in view of OracleSG and in further view of Rajani and in further view of McGarvey.

Patent Owner respectfully traverses the rejections, each of which are addressed below.

### A. Relevant Prosecution History

U.S. Patent Application No: 11/354,224 ('224 application) was filed on February 13, 2006, and issued as the '170 patent on October 12, 2010.

### B. Overview of the Technology and continued patentability of the claims

Towards the latter half of the 1990's, data storage was still relatively manageable. Most data could be stored locally, on local drives, compact discs (CDs) or disk drives. Single servers were often sufficient for data storage needs. Not long thereafter, the amount and size of data began increasing, soon reaching exponential rates. Networking became ubiquitous and storing data in single servers became impractical if not impossible. This paved the way for distributed data collection environments.

Distributed data collection involves storing data stored and retrieved among multiple databases or data repositories connected by a network. Conventional distributed data collection environments maintained a static relationship of data and its location. Accordingly, every time data moved from one location to the next, all of the systems that maintained the static relationship had to be updated. As a result, while conventional distributed data collection environments allowed for dispersed storage, doing so made reliably locating and retrieving the data challenging, particularly where data is added or removed dynamically. ('170 patent, 1:40-43).

As John Overton, co-Inventor and CEO of Kove IO, Inc. (Patent Owner), noted during the Examiner Interview, the Inventors of the '170 patent predicted networking would become ubiquitous and data would become explosive, years before it actually happened. The Inventors understood that maintaining a static relationship of data and its location in traditional distributed

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

data collection environments (*i.e.*, tree structures) would become untenable, given the growing unreliability of locating and retrieving dispersed data, particularly where the data in the components of the network could change location, unbeknownst to one another. The Inventors invented a protocol that dynamically creates relationships between data and its locations using an algorithm or function. That is, the Inventors invented a protocol that replaced storing caches and state information across the network, with a stateless approach that allows clients to compute the location of data's location information based on a dynamically created relationship between the data and its location. The Inventors sought to find a way to achieve seamless dynamic and spontaneous global search and retrieval of data across a distributed network. The result are the claims embodying the Inventors' network distributed tracking protocol ("NDTP").

### 1.     The problems with the existing systems

The Inventors studied then-existing systems to determine if there were ways to improve efficiency and scalability in locating and retrieving distributed data. They concluded that conventional systems were fundamentally limited in the types of searches that could be performed and the forms of data returned based on the search. ('170 patent, 1:43-53). For example, the '170 patent states, "One example is where a client requests files based on a subject, like a person's name. In the search results, therefore, only text files of peoples' names may be retrieved. Another problem in current retrieval systems is that the client may receive text and image files in the search results, but could not seamlessly access the image files. Yet another problem in current retrieval systems is that video and sound files related to the request may not even be found in the search results. For example, a doctor might be able to retrieve medical records on a specific patient, but cannot view an MRI or X-Ray results associated with that record." ('170 patent, 1:52-57).

The Inventors recognized that while Doman Name Service's (DNS) "names and machine" mapping format is analogous to the "entity identifier and data location" mappings in the NDTP protocol ('170 patent, 20:17-29), NDTP has a foundationally different structure that enables it to support "very fast, very diverse, and very large scale mapping manipulations" (*id.*), which names services like DNS cannot do because of their tree-node organizational structure.

Conventional systems consistently used hierarchical-tree structures when attempting to scale their networks. For example, Oracle Admin acknowledged that a network may follow a flat

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

naming model or a hierarchical naming model but cautioned that "[a] flat naming model should be used when the actual number of services is small (under 100), when the likelihood of future growth of network services is *minimal*...." (Oracle Admin, 40) (emphasis added). More pointedly, Oracle Admin ***discouraged*** the use of "flat" structures in larger networks, in contrast to hierarchical structures which Oracle Admin noted "allow[s] for future growth or greater naming autonomy." (*Id.*, 41). Similarly, McGarvey and Rajani disclosed only hierarchical structures for more complex systems. (*See e.g.,* McGarvey, 5:5-43; Rajani, Abstract; 2:55-67). This illustrates that POSAs, at the time of invention, would have understood that conventional data systems were dependent on hierarchical structures. Goodrich Decl., ¶¶ 43-46.

An example of this prior art hierarchical structure is Fig. C-4 from Oracle Admin (reproduced below).



Figure C – 4  Network Messages in a Multi-Level Foreign Name Resolution

**Oracle Admin, Figure C-4 (p. 191)**

Oracle Admin describes the activities that must take place in response to a client query for information (in this case, the network address of the "Destination Server"): "1. The client sends request to preferred Names Server in its local region (DR1). 2. The preferred Names Server in DR1 issues request for the Names Servers authoritative for the destination server (in region DR2.1). 3. The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2. 4. The receiving

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

server in DR2 forwards the request to a Names Server in region DR2.1. 5. The name is retrieved from its authoritative Names Server in DR2.1. 6. The names Server in region DR2 caches the answer and returns it to the root. 7. The root caches the answer and returns it to the preferred Names Server in region DR1. 8. The preferred Names Server caches the answer and returns it to the client. 9. The client establishes a connection to the destination server." (*Id.*, 190-191).

Retrieving a network address in the tree-node configuration in Figure C-4 require nine (9) traversals up, down, and back through the hierarchal structure. (*Id*). As such, the organizational structure is limited in efficiency by its underlying network paths and network relationships that require queries to make hierarchical traversals until it finds the server with the sought-after information (assuming the information exists somewhere in the network).

The Inventors understood the challenges that existed in locating and retrieving data in a distributed data collection environment and addressed the challenges with the inventions of the '170 patent. Their invention, as embodied in the claims of the '170 patent, enables a client to retrieve data through *any server* in the network and *receiving in response the location information associated with a desired entity*. Claims 1, 6, and 15 (and their dependent claims) require the servers in the network to provide the relevant location information. In other words, *any queried server will either have the requested information or will identify which other server contains the requested information*. The structured relationships of the invention allow clients to access data in distributed environments through a non-hierarchical, limitlessly scalable, server structure that enables retrieval of requested information in not more than two iterations.

For reasons discussed more fully below, prior art, including names services like Oracle Names, are not configured in the manner required by claims 1, 6, and 15 and therefore not do not disclose the limitations claimed in these claims. The required limitations would also not be obvious to, nor achievable by, a person of ordinary skill in the art (POSA) through modifications or combinations of the Oracle Names system with the other cited prior art references, including OracleSG, McGarvery, and/or Rajani. Moreover, a lack of motivation to make any such combinations, as well as significant indicia of non-obviousness, make it clear that the invention of claims 1, 6, and 15 would not have been obvious to a POSA at the time of the invention. (*See* Declaration of M. T. Goodrich ("Goodrich Decl."), 18-23).

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

**2.** **The '170 patent claims overcome the limitations present in the prior art**

The Inventors addressed the limitations of pre-existing systems, including tree-based systems like DNS and other names service systems, including Oracle Names Service, in two foundational ways.

**First**, the '170 patent teaches separating the data location information from the data itself. The specification teaches this is a fundamental aspect of the invention:

Col. 1:59-67: "A distributed data collection is a system where *data is stored and retrieved among multiple machines connected by a network.* Typically, each machine in which some portion of the data in a distributed data collection may reside is called a 'data repository machine', or simply a 'data repository'. One commonly asked question in a data repository environment is: *Where is data associated with a particular entity in a distributed data collection? The data location is a key question* when a distributed data collection has highly dynamic data distribution properties."

Col. 3:14-18: "The protocol is designed for use in the larger context of a distributed data collection. As such, it supports an architecture in which information about *where data associated with particular application entities can be managed and obtained independently of the data itself.*"

Col. 20:18-21: "NDTP is designed for use in the larger context of a distributed data collection. As such, it supports an architecture, in which *information about where data associated with particular application entities, can be managed and obtained independently of the data itself.*"

Figure 11 of the '170 patent (annotated below) illustrates the separation of the data location information from the data itself:

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035



'170 patent, Fig. 11 (annotated with colored boxes)

The NDTP Server Constellation 110 (red box) includes data location servers that store the location of specific units of data stored in Repository1 114 (green box). ('170 patent, 16:59-17:17). The data stored in Repository1 114 may be moved to any repository. (*Id.*, 4:57-67). The location of the data, if it is moved, will be updated in the data location servers in the NDTP Server Constellation 110. (*Id.*, 4:59-67; 20:25-29). Locating the data requires querying the NDTP Server Constellation 110. (*Id.*, 17:3-11; 17:26-37). Specifically, the '170 patent states, "As shown in FIG.11, a client 112 consults the server constellation 110, which may be construed in either of two forms (*see* FIGS. 12 and 13), and which returns location strings in response to a client 112 request. Once the client 112 has the location string for a particular unit of data, the client 112 contacts and retrieves information directly from the data repository 114. In one embodiment, if the client 112 contains a data repository 114, internal application logic would facilitate this interaction." (*Id.*, 17:3-11).

Claims 1, 6, and 15 (and their dependent claims) require entities, identified by identifiers and associated with location information, contained in separately claimed location servers. As recited by the plain language of the claims, and in light of the various relationships set forth in their respective claim constructions, "data" would be understood by a person of ordinary skill in the art to be claimed distinctly from "data repository," "location string," "location information," "identifier string," and "entity."

13

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

**Second**, the '170 patent teaches organizing data location information in location servers such that every location server is configured to either identify another location server that has the requested information or determine the location of the data location information (if the first location server does not itself have the requested information -- if it does, it simply returns that to the client).

Figure 12 of the '170 patent illustrates the organization of the data location information.



**'170 patent, Fig. 12 (annotated with colored dots and boxes)**

In Figure 12, the NDTP Server Constellation 110 includes data location servers 120a and 120b. (*Id.*, 17:26-18:22). The ellipses are added to illustrate the disclosed teaching that the number of NDTP servers can extend to however many are desired (Server0 to ServerN). (*Id.*, 18:9-22). Data location servers 120a and 120b store location information for data stored in data repositories. (*See e.g., id.*, 17:3-11; 18:9-22). Each unit of data is associated with an identifier that uniquely identifies an entity. (*See e.g., id.*, 4:29-67; 20:21-25). The location information for the data is organized across data location servers 120a and 120b using an algorithm or function, such as a hash function. (*See e.g., id.*, 4:29-67). Specifically, an algorithm or function is applied to each identifier for each unit of data. (*Id*). Based on the outcome of the algorithm or function, the location information for each unit of data is stored in a respective location server. (*Id*). The

14

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

location information for the data is thereby divided up and each of data location servers 120a and 120b stores a portion of the location information, based on applying the algorithm or function on the identifier – *i.e.*, the location information is distributed among the location servers in the network. (*Id*). For example, if there are 10 units of data, data location server 120a may store location information for units 1-5 and data location server 120b stores location information for units 6-10. (*See e.g., id.,* 3:14-25; 16:59-17:7; 17:26-37; 18:9-22). In another example, if there are two identifiers associated with 10 units of data, where the first five units of data are associated with a first identifier and the second five units of data are associated with the second identifier, data location server 120a may store location information for the first five units of data and data location server 120b may store location information for the second five units of data. (*Id*). The location information in the data location servers 120a-b is mapped to the respective identifier associated with the data. (*Id*).

The '170 patent also teaches that data location servers 120a and 120b (etc.) store the algorithm or function that is used to divide up the location information. (*Id.,* 15:6-11; 18:3-8). This allows each data location server to (1) itself determine, using the function, which other data location server stores the location information for a particular unit of data (*id.,* 14:46-15:15); (2) transmit a list of location servers which contains the location server known to have the location information (*id.,* 17:65-18:8); and (3) transmit the algorithm or function to the client to enable the client to determine which one of the data location servers stores the location information for the particular unit of data (*id.,* 14:46-15:15; 18:3-8). In other words, ***whatever location server is queried, if that location server does not have the information, it will either identify the location server that does, identify a list of location servers containing at least the location server that does, and/or send the algorithm or function that will allow the client to make that identification for itself***, rather than traverse a network path across a tree structure like DNS or Oracle Name Service that maintained a static relationship of data and that data's location. Continuing from the earlier example, if location server 120a receives a query from a client for an identifier associated with data unit 7 and it does not have the requested information itself, it then either determines that the location for unit 7 is in the data location server 120b by applying the algorithm or function on the identifier and transmits that back; transmits a list of location servers which contains the location server known to have the location information to which the client can apply a well-known function to the identifier to identify; or transmits the algorithm or function to the client for the

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

client to determine that the location information for unit 7 is in data location server 120b. (*See, e.g., id.,* 14:46-15:15; 17:65-18:8).

In contrast to the hierarchical "tree" structure of existing systems, the above-described configuration allows for linear scaling of the location servers. Particularly, the above-described configuration allows for seamlessly adding location servers based on the growth of a network. Each new or existing location server is configured to store a portion of the location information and the algorithm or function used to divide up the location information, irrespective of the amount of data distributed across one or more repositories and the amount of movement of the data across the one or more repositories. This allows for easily locating the location information in networks of any size. (*See e.g., id.,* 17:41-43). As anticipated by the Inventors, the explosion of the Internet, in which moving data rapidly across any scale of system or complexity became de facto, without requiring tree structures with caches.

The features of the '170 patent provide numerous advantages over the existing systems. For example, linear scaling eliminates the need for a "root" node. In particular, the '170 patent allows for *each* location server in a network to either resolve a query for location information or provide the location of the requested information. By doing so, the '170 patent eliminates the reliance of network paths and relationships present in hierarchical structures.

The '170 patent teaches use of a hash function to portion, organize, and distribute location information across location servers. Using a hash function allows the location information to be portioned, organized, and distributed across the location servers. (*See e.g.,* '170 patent, 15:12-49). This way each location server stores a roughly even amount of location information. This organization of the location information provides a consistent operational performance from each location server. Each server in the network is available to receive and resolve queries without facing potential performance risks, thereby preventing any given server from being overburdened or overloaded. (*See e.g., id.,* 4:29-67; 14:46-15:15; 15:12-49; 18:9-22; 20:21-25).

> a)  *Using distributed hash tables to manage data networks was not known at the time of the invention*

Technology that enables highly scalable information databases, like that taught by the '170 patent, was not known in the field at the time of the invention. In the late 1990s, hierarchical

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

organizational structures such as Oracle Names, was the only known way to manage data networks. It was only years later that the unconventional use of distributed hash tables became better known. For example, in February 2004, years after the invention of the '640 patent, an article reported on work being conducted at MIT that asked the question, "Wouldn't it be better to store data in the nooks and crannies of the Internet, a few keystrokes away from any computer, anywhere?" The article, titled "*10 Emerging Technologies That Will Change Your World*" (www.technologyreview.com (February 2004) (attached as Exhibit A) at 44), described "making digital files easier to maintain and access while eliminating the threat of catastrophes that obliterate information, from blackouts to hard-drive failures." *Id.* The story spotlighted the use of "distributed hash tables" to identify the locations of "files scattered around the Internet," and quoted the MIT researcher, Hari Balakrishnan as saying, "'I view distributed hash tables as the coming future' of networked storage." (*Id.; see also* Goodrich Decl., 18-23).

### 3. Reasons for continued patentability

Currently, claims 1 and 2 are rejected as obvious based on Oracle Admin in view of OracleSG and in further view of Rajani. Claims 6, 8, and 15 are rejected as obvious based on Oracle Admin in view of OracleSG and in further view of McGarvey. Claims 9 and 12 are rejected as obvious based on Oracle Admin in view of OracleSG in further view of McGarvey and in further view of Rajani. Patent Owner respectfully traverses each rejection. The Examiner's rejections rely on initially perceived similarities between certain disclosures in the references and the claims, but closer study shows that the cited references and the invention are foundationally different, and that these differences make claims 1-2, 6, 8, 15, 9, and 12 novel and patentable.

In this Reply, Patent Owner details the lack of disclosure in the references and the lack of motivation to combine Oracle Admin with any other reference (or combinations thereof).) For at least the issues addressed in this Reply, Patent Owner respectfully requests the Examiner reconsider and withdraw the rejections pending against claims 1-2, 6, 8, 15, 9, and 12 and find them patentable.

### C. Claim Construction

As noted in the Office Action, the claims of the '170 patent must be given their ordinary and customary meaning in light of the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

1313 (Fed. Cir. 2005) (*en banc*). (Office Action, 3-4). **The Broadest Reasonable Interpretation (BRI) standard <u>may not</u> be applied to the claims in the instant reexamination proceeding because the claims are expired**. *In re Rambus*, 694 F.3d 42 (2012). *See also In re CSB-Sys. Int'l, Inc.*, 832 F.3d 1335, 1341 (Fed. Cir. 2016) (confirming that "when an expired patent is subject to reexamination, the traditional *Phillips* construction standard attaches").

In its Request for Reexamination, the requestor proposed constructions for certain claim terms based on positions that had been taken in the parallel litigation (*Kove IO, Inc., v. Amazon Web Services, Inc.*, Case No. 1:18-cv-08175) involving the same patent and the same parties. Since that time, (1) the parties to the litigation (i.e., requestor and Patent Owner) have agreed on the constructions of certain claim terms (*see* NPL 42 in an Information Disclosure Statement (IDS) filed July 12, 2022), and (2) the Court in the Northern District of Illinois overseeing the litigation has issued a claim construction Order regarding other terms (*id.*, NPL 43). The parties' agreed-to constructions and the Court's ordered constructions are fully supported by disclosures in the specification, as evidenced by the citations and analysis in the Court's Memorandum and Order. (*Id.*, NPL 42 and 43).

### 1. Claim Construction Summary Table

A summary chart of the construed terms is as follows:

| Claim Term | Construction |
|---|---|
| identifier/identifier string | a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server (NPL 43) |
| location/data location | an encoding that is a member of a set of associations with an identifier in a location server, and that specifies where data pertaining to the entity identified by the identifier is stored (NPL 43) |
| location server/server | a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients (NPL 42) |
| location information | information pertaining to one or more locations of data and/or the identities of one or more location servers (NPL 42) |
| hash table | a data structure that stores values in a table, where values are stored and retrieved by applying a hash function to an input and using the function result as an index into the table (NPL 43) |
| based on a hash function used to organize the data | the portion of the data location information included in a corresponding one of the data location servers is based on a hash |

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

| location information across the plurality of data location servers … based on the hash function applied to the identifier string | function that maps identifier strings to one or more of the data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string (NPL 42) |
|---|---|
| data pertaining to an entity | data pertaining to a person or thing (real, digital, or abstract) distinct from that data (NPL 42) |

Patent Owner respectfully submits that the above-referenced constructions, which were construed in accordance with the *Philips* standard, be adopted in the instant reexamination.

### 2. Independent claims 1, 6, and 15 in view of the claim construction

Claim 1 recites:

[1.pre] A system for managing data stored in a distributed network, the system comprising:

[1.a] a data repository configured to store a data entity;

[1.b] wherein an identifier string identifies the data entity; and

[1.c] a data location server network comprising a plurality of data location servers,

[1.d] wherein data location information for a plurality of data entities is stored in the data location server network,

[1.e] at least one of the plurality of data location servers includes location information associated with the identifier string;

[1.f] each one of the plurality of data location servers comprises a processor and a portion of the data location information,

[1.g] the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and

[1.h] each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

Claim 6 recites:

[6.pre] A system for managing data location information and providing the data location information in response to location queries, the system comprising:

[6.a] a location server configured to receive a location addition request,

[6.b] the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier,

[6.c] wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity;

[6.d] wherein the location server includes a processor, and programming logic stored on the location server,

[6.e] wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message,

[6.f] the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity,

[6.g] wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and

[6.h] wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity,

[6.i] the redirect message comprising a list of at least one other location server known to have the location information for the desired entity.

Claim 15 recites:

[15.pre] A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising:

[15.a] correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network,

[15.b] each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network;

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

[15.c] receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities;

[15.d] determining which of the plurality of location servers includes the location information;

[15.e] sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and

[15.f] sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information,

[15.g] the redirect message identifying which of the plurality of location servers includes the location information.

Claims 1, 6, and 15 (and their dependent claims) must be interpreted in light of the appropriate claim constructions and not in a vacuum. In particular, the claim terms should be construed in accordance with the *Phillips* standard, the claim constructions provided above, and the relationships among the claim terms, as set forth in claims 1, 6, and 15.

Claims 1, 6, and 15 recite the terms "identifier string," "data repository," and "location information." Claim 6 also recites the terms "data," "entity," and "location." These claim terms are necessarily interrelated in accordance with their constructions.

As per the claim constructions, an "identifier" or "identifier string" uniquely identifies an entity. (NLP 43). The "identifier/identifier string" is also associated with "location strings" stored in a location server. (NPL 42). "Location information" is information pertaining to one or more locations of data and/or the identities of one or more location servers. "Location strings" are also known as "location" or "data location," which are construed as specifying where "data pertaining to the entity" is stored. (*Id.*). Location information may include location strings. These relationships are schematically depicted in the figure below:

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035



**Patent Owner's Figure A**

In issuing its Order for Claim Construction, the District Court discussed the relationships among the terms "data," "data repository," "location string," "identifier/identifier string," and "entity." The Court determined that an "entity" is a person or thing (real, digital, or abstract) which must be distinct from the data itself. (NPL 43).

The Court provided an analogy: an example of a digital "entity" may be an award-winning film ("Award-Winning Film"). (NPL 43, 34). The entity's "data" are the millions of bytes of audiovisual information that a subscriber would download to view the Award-Winning Film. Data may include additional information, for example, closed captions, subtitles, or alternative audio tracks (e.g., from other languages). The entity's "identifier" may be the film's title, for example, "awardwinningfilm.'" (*Id.*).

The '170 patent confirms the relationship between a data repository and data shown in the above figure. For example, the specification teaches, "Once the client 112 has the location string for *a particular unit of data*, the client 112 contacts and *retrieves information directly from the data repository 114*. In one embodiment, if the client 112 contains a data repository 114, internal application logic would facilitate this interaction." ('170 patent, 17:6-11) (emphasis added*).* Furthermore, the '170 patent indicates that "NDTP is designed for use in the larger context of a distributed data collection. As such, it supports an architecture, in which information about where data associated with particular application entities, can be managed and obtained independently of the data itself." (*Id.*, 20:17-21).

22

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

The '170 patent further explains, "The network distributed tracking wire transfer protocol includes two basic components: identification strings for specifying the identity of an entity in the distributed data collection, and *location strings for specifying network locations of data associated with an entity*." ('170 patent, 2:17-21).

As recited by the plain language of claim 1, 6, 15, and their dependent claims, and in light of the various relationships set forth in their respective claim constructions, the terms "data," "entity," "location," "location information," and "identifier string" are separately claimed and would be understood by a POSA at the time of the invention to be distinct from one another. (*See* Goodrich Decl., ¶¶ 24-27).

### D. Oracle Names and the '170 Patent Invention Are Fundamentally Different Protocols

Oracle Admin is a manual that provides information about Oracle Names products. (Oracle Admin, 5). Oracle Names involves making network address and database link information in a distributed database network available to all nodes in the network. (*Id*).

Figure 3-11 depicts a client-server connection in Oracle Names:



Figure 3 - 11 Client-Server Connection

**Oracle Admin, Figure 3-11 (p. 52)**

Figure 3-11 of Oracle Admin (depicted above) and Fig. 11 (reproduced below) of the '170 patent illustrate the differences between Oracle Names and the '170 patent:

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035



NDTP Server Constellation Context

*Fig. 11*

While these depictions may look similar at a high level, they obscure the critical differences between Oracle Admin and the claimed invention of the '170 patent. These differences become apparent when the "network" is examined to see ***how servers and their relationships are structured***:



**Patent Owner's Figure B**

As explained above and more fully below, Oracle Names depends on a *hierarchical* structure where a client can only query to the node immediately "above" or "below" it in the "tree." If the queried server does not have the requested information, that server forwards the

24

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

query to the next higher node and so on until it reaches the root server. The root server, if it has the desired information registered, will forward the request down successive nodes until it arrives at the server last known to have the information. As the example in Fig. C-4 shows, and as explained on pages 190-192 of Oracle Admin, even a modestly sized environment with a handful of servers may take numerous iterations to return a query.[1]

> ### *1.* Servers in hierarchically structured networks do not "know" what's contained in other servers throughout the network

The Name Servers in Oracle Admin's hierarchical configuration do not have any knowledge of what is stored in other Names Server in the network, beyond their direct children. (Oracle Admin, p. 191). If a queried server or its direct children do not have the requested information, the server knows only to forward a query to the next Names Server up the tree. *Names Servers are ignorant as to what information other Names Servers beyond their direct children may have and have no way of finding out.* This was the common and accepted configuration at the time of the invention. (Goodrich Decl., ¶¶ 34-41).

In contrast, claims 1, 6, and 15 of the '170 patent require networks with *non-hierarchical* (or "cluster") configurations of location servers that enable each server in the server network to know which location server contains the location(s)of the desired data. For example, if a queried server receives a request for the data locations associated with a particular identifier but does not have it, that server will return a message to indicating which other server in the network contains the requested information. This configuration "collapses" the hierarchical composition of Oracle Names, making it entirely different in practice and principle from what Oracle Admin discloses. Oracle Admin in no way teaches or suggests something so fundamentally different from the architecture of the Oracle Names system. (Goodrich Decl., ¶¶ 28-33).

> ### *2.* Oracle Admin lacks the non-hierarchical cluster structure required to satisfy the requirements of claims 1, 6, and 15

Each of the claims at issue require, expressly or impliedly, a non-hierarchical cluster configuration of locations servers in a network. For example, claim 1 recites "**each one of the**

---

[1] Oracle Admin cautions that a "network can have no more than five well-known Names Servers, that is, Names Servers that use the Dynamic Discovery Option." (Oracle Admin., pp. 28, 32, 60).

**plurality of data location servers** comprises [...] a portion of the data location information [for a plurality of entities]." Claim 1 also requires "**each one of the data location servers is configured to determine** the at least one of the plurality of data location servers [that contains the location information associated with the identifier string] based on the hash function applied to the identifier string." As such, claim 1 requires data location information to be portioned and organized across the data location servers in the network *based on a hash function*. A hash function necessarily organizes data in a non-hierarchical manner, meaning claim 1 can only be accomplished through the cluster configuration taught by the specification. (Goodrich Decl., ¶¶ 28-33). Claim 1 requires that *each* server in the data location server network have the capability of determining the location of the requested information based on applying *the hash function*. These features exemplify the non-hierarchical cluster configuration required in claim 1. (*Id*).

Claim 6's non-hierarchical configuration is embodied the requirement that the location server must be able to return a "redirect message" where "the redirect message compris[es] a list of at least one other location server *known* to have the location information for the desired entity." This limitation cannot be met in hierarchical configurations such as Names Server because location servers in tree-structures *do not necessarily know* which other server has the desired information. (*Id*). Turning off request forwarding, as taught by Oracle Admin, does not enable servers in the Names network to meet this limitation (*see infra*, pp. 28-29 and 44-45).

Claims 15 contains a similar requirement that location servers in the network be capable of returning "redirect messages" identifying other servers in the network with the desired information. This is embodied in the limitation "the redirect message identifying which of the plurality of location servers includes the location information." (*Id*). Therefore, the redirect message, as recited by claims 6 and 15, indicates with specificity and certainty which data location server in the network contains the location information for the desired entity. A hierarchical configuration does not enable nodes to have such knowledge. (*Id*). Accordingly, the redirect message limitations, as recited by claims 6 and 15, demonstrate that claims 6 and 15 recite a non-hierarchical cluster configuration. (*Id*).

Oracle Admin does not teach or suggest the aforementioned limitations. Oracle Admin's Figure C-4 (reproduced below) depicts the process by which a client sends a request for information to the Names Service network:

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035



**Oracle Admin, Figure C-4 (p. 191)**

Oracle Admin describes the process of requesting information in a Names Service network as: "1. The client sends request to preferred Names Server in its local region (DR1). 2. The preferred Names Server in DR1 issues request for the Names Servers authoritative for the destination server (in region DR2.1). 3. The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2. 4. The receiving server in DR2 forwards the request to a Names Server in region DR2.1. 5. The name is retrieved from its authoritative Names Server in DR2.1. 6. The names Server in region DR2 caches the answer and returns it to the root. 7. The root caches the answer and returns it to the preferred Names Server in region DR1. 8. The preferred Names Server caches the answer and returns it to the client. 9. The client establishes a connection to the destination server." (*Id.*).

Oracle Admin teaches that if a queried server does not have the requested information, that server forwards the request to the next server up the hierarchy until one is able resolve the request; if none can, the process errors out. (*Id.*, 190-192). Oracle Names requires traversals up and down the hierarchical tree in order to resolve a request and return a response. (*Id.*). Oracle Admin indicates its compatibility with DNS-based systems by disclosing:

> Many companies already have global naming standards for their PC LANs, large hosts, or mail systems. If such policies exist, you can use them as the basis for the Oracle Names naming model. Using the same structure

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

leverages the investment in the education users already have with global names.

For example, many companies with TCP/IP networks use the Domain Name Service (DNS) model for communication on the worldwide Internet. In this model, all naming models are hierarchical from a set of base domains such as:

- COM - commercial organizations

- EDU - educational institutions

- MIL - military

- ORG — organizations

Individual companies are then assigned domains within which to build their naming model (for example, ACME.COM). To adapt any example in this book to the DNS Internet model, add a single high-level domain, such as COM (or other stem). For organizations which are on the Internet, and therefore already have one or more DNS domains, the sensible choice is to align their Oracle naming domains with their DNS domains.

*Id.,* 56-57.

Like DNS, Oracle Names is dependent on its network paths. Names Servers do not have any knowledge of which Names Server contains the address to the requested network service (beyond itself and its direct children) nor is anything taught about *any* (much less *every*) Names Server being configured to determine the location of the requested information. Oracle Admin's hierarchical structure does not enable a given Names Server the ability to know or determine what is stored in every Names Server in the network. (Goodrich Decl., ¶¶ 34-57; 63-78). Oracle Admin's disclosures referring to disabling or turning off "name request forwarding," which the Examiner points to as teaching the redirect message, as recited in claims 6 and 15, are inapposite. (*Id*).

> a) *Setting "name request forwarding" to "off" in Oracle Admin does not disclose the "redirect message" limitations of claims 6 and 15*

Disclosures relating to setting "name request forwarding" to "off" in Oracle Admin neither teaches nor suggests that Names Servers are configured provide with *any* specificity which Name Server contains the requested information. As discussed previously and more fully below (*infra,* pp. 44-45), turning off "forwarding" in Oracle Names does not somehow enable a server to know

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

which other server in the network has the requested information. All that happens when forwarding is turned off is that the queried server, instead of forwarding the query onto the next server, simply tells the querying server what that next server is. Using Fig. C-4 above to illustrate, the client queries DR1:



If DR1 does not have the information, it forwards the query to ROOT. If ROOT does not have the information (and its direct children do not have the information) and its "forwarding" capabilities are "off," it cannot forward the query to DR2, as it otherwise would have done. Instead, Oracle Admin teaches that ROOT returns a message to DR1 identifying DR2, which *can* have the requested information *or not*. In other words, ROOT simply tells DR1 the next server it would otherwise have queried had its forwarding not been turned off. DR2 may or may not have the requested information -- ROOT has no way of knowing. Because ROOT does not know one way or another, the Oracle system does not meet the knowledge requirement of the claims.

In order to satisfy the requirements of claims 1, 6, and 15, Names Service would have to abandon its "tree" composition that is the center of its organizational structure in favor of a non-hierarchical one where any given server is able to return either the requested information or information useable by the client to locate the server with the requested information. Nothing in Oracle Admin states or suggests that such elimination of hierarchical structures would be desirable. (Goodrich Decl., ¶¶ 34-57).

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

**E.  Oracle Admin, alone or in combination with OracleSG and/or Rajani, do not render claims 1 obvious**

For ease of reference, claim 1 is reproduced below:

[**1.pre**] A system for managing data stored in a distributed network, the system comprising:

[**1.a**] a data repository configured to store a data entity,

[**1.b**] wherein an identifier string identifies the data entity; and

[**1.c**] a data location server network comprising a plurality of data location servers,

[**1.d**] wherein data location information for a plurality of data entities is stored in the data location server network,

[**1.e**] at least one of the plurality of data location servers includes location information associated with the identifier string,

[**1.f**] each one of the plurality of data location servers comprises a processor and a portion of the data location information,

[**1.g**] the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and

[**1.h**] each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.

*1.*  **The combination of Oracle Admin-OracleSG-Rajani does not teach or suggest portioning the data location information across data location servers based on applying a hash function to the identifier identifying the data entity, as required by claim 1**

Oracle Admin, alone or in combination with any of OracleSG and Rajani, do not render claim 1 obvious at least because they fail to teach or suggest the "each one of the plurality of data location servers comprises a processor and a portion of the data location information, the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers" limitation. As such, claim 1 requires portioning data location information based

on a hash function and organizing the portions across every location server in the data location server network.

> a) *Oracle Admin does not teach or suggest **portioning data location information based on a hash function** and **organizing the portions of the data location information across the data location servers***

As the Office Action acknowledges, Oracle Admin itself does not teach or suggest "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers," as recited by claim 1. (Office Action, 15).

> b) *OracleSG does not cure Oracle Admin's deficiencies*

The Examiner points to OracleSG brief mention of using hashing when querying to allegedly satisfy this requirement. (Office Action, 15-17). OracleSG, however, is completely silent with respect to the claimed *portioning* of data location information and further organizing such portions across *each* data location server in the network.

OracleSG describes queries that use hashing. (OracleSG, 633). OracleSG's hash-based queries merely retrieve data. (*Id.*). OracleSG does not teach or suggest applying hashing to portion and organize data location information across each server in the network. OracleSG's brief mention of hashing is in fact wholly unrelated to any concept of portioning data location information and organizing such portions across servers. Accordingly, OracleSG does not teach, suggest or otherwise render obvious portioning data location information and organizing the portions of the data location information across the data location servers based on a hash function. Further, a POSA at the time of the invention would have no reason to modify or combine Oracle Admin with OracleSG to achieve this limitation because both references are silent with respect to applying hashing for the purposes of portioning, organizing, and distributing data location information in the manner claimed. (Goodrich Decl., ¶¶ 42-57).

> c) *Rajani does not cure the deficiencies of Oracle Admin and OracleSG*

The Examiner alleges that Rajani teaches "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

organize the data location information across the plurality of data location servers" limitation of claim 1. (Office Action, 17-18). Specifically, the Examiner points to Rajani's use of hashing to retrieve a file from backup memory. (*Id.*; *see also* Rajani, 4:1-62 and 8:38-40). However, Rajani does not teach or suggest *portioning* data location information and *organizing the portions across the data location servers.*

Rajani describes using a hash function to retrieve a file from backup memory. (Rajani, 4:1-62 and 8:38-40). But Rajani does not teach or suggest portioning data location information and organizing those portions across all servers in the network. Accordingly, Rajani does not teach, suggest or otherwise render obvious portioning data location information and organizing the portions of the data location information across the data location servers based on a hash function. Further, a POSA at the time of the invention would have no reason to modify or combine Oracle Admin with Rajani to achieve this limitation because both references are silent with respect to applying hashing for the purposes of portioning, organizing, and distributing data location information in the manner claimed. (Goodrich Decl., ¶¶ 42-57).

> **2. The combination of Oracle Admin-OracleSG-Rajani does not teach or suggest "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string," as recited by claim 1**

Oracle Admin, alone or in combination with any of OracleSG and McGarvey, do not claim 1 obvious for the additional reason that they do not disclose the "***each one of the data location servers is configured to determine the at least one of the plurality of data location servers,***" where **"the at least one of the plurality of data location servers" must "include location information associated with the identifier string"** limitation. In other words, claim 1 requires every location server in the network must be configured to identify the location server in that network that contains the location information for the data entity identified by the identifier.

> *a)     Oracle Admin does not teach or suggest "**each one of the data location servers is configured to determine the at least one of the plurality of data location servers…**"*

As the Office Action acknowledges, Oracle Admin does not teach or suggest "each one of the data location servers is configured to determine the at least one of the plurality of data location

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

servers based on the hash function applied to the identifier string," as recited by claim 1. (Office Action, 15).

### b) OracleSG does not cure the deficiencies of Oracle Admin

The Examiner points to OracleSG brief mention of using hashing when querying to allegedly satisfy this requirement. (Office Action, 15-17). However, OracleSG is completely silent with respect to the aspect of the limitation that requires *each* data location server in a data location network being configured to determine the data location server that contains the location information.

OracleSG describes a rule-based optimizer that includes queries that use hashing. (OracleSG, 633). OracleSG's hash-based queries merely retrieves data using hashing. OracleSG is silent with respect to applying hashing to portion and organize data location information. OracleSG's brief mention of hashing is irrelevant to each and every data location server in a data location network being configured to determine the data location server that contains the location information. Accordingly, OracleSG does not teach, suggest or otherwise render obvious that *each* (i.e., every) data location server in a data location network be configured to determine the data location server that contains the location information based on a hash function being applied to the identifier string associated with the data location information. Further, a POSA at the time of the invention would have no reason to modify or combine Oracle Admin with OracleSG to achieve this limitation because both references are silent with respect to configuring every server in the network to determine the data location server that contains the location information. (Goodrich Decl., ¶¶ 42-57).

### c) Rajani does not cure the deficiencies of Oracle Admin and/or OracleSG

The Examiner alleges that Rajani teaches "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string," as recited by claim 1. (Office Action, 17-18). Specifically, the Examiner points to Rajani's use of hashing to retrieve a file from backup memory. (*Id.*; *see also* Rajani, 4:1-62 and 8:38-40). However, Rajani does not teach or suggest each and every data location server in a data location network being configured to determine the data location server that contains the location information.

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

Rajani describes using a hash function to retrieve a file from backup memory. (Rajani, 4:1-62 and 8:38-40). However, does not contemplate each and every data location server in a data location network being configured to determine the data location server that contains the location information. Accordingly, Rajani does not teach, suggest or otherwise render obvious that *each* (i.e., every) data location server in a data location network be configured to determine the data location server that contains the location information based on a hash function being applied to the identifier string associated with the data location information. Further, a POSA at the time of the invention would have no reason to modify or combine Oracle Admin with Rajani to achieve this limitation because both references are silent with respect to configuring every server in the network to determine the data location server that contains the location information. (Goodrich Decl., ¶¶ 42-57).

> **3.** **A POSA would not be motivated or find it obvious to modify or combine Oracle Admin with one or more of OracleSG and/or Rajani to satisfy the requirements of claim 1**

The Examiner alleges that a POSA would find it obvious to modify or combine Oracle Admin with one or more of OracleSG's hashing and/or Rajani's hashing table techniques to satisfy claim 1's requirements. (Office Action, 16-22). However, Oracle Admin, as modified or combined with one or more of OracleSG's hashing and/or Rajani's hashing table techniques, cannot satisfy claim 1's requirements for at least the following reasons.

As stated above, claim 1 recites a non-hierarchical cluster configuration that allows for the data location information to be portioned and organized across the data location servers based on a *hash function*. Furthermore, the non-hierarchical cluster configuration allows for *each and every* server in the data location server network have the capability of determining the location of the requested information based on applying *the hash function*. (Goodrich Decl., ¶¶ 28-33).

OracleSG's hashing or Rajani's use of the hash table to retrieve a file from backup memory is distinct from the use of the hash function in the '170 patent. In particular, OracleSG and Rajani's alleged teachings regarding hashing are not used to solve problems addressed by the '170 patent such as, distributing data location information across servers, allowing for the addition of location servers, easily updating the location information in servers based on new or moved data, or enabling each server in a network to be configured to determine the location information stored

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

in other servers. (*See e.g.*, '170 patent, 4:29-67; 14:46-15:15; 18:9-22; 20:21-25). As such, a POSA would not appreciate the use of the hash function, as claimed in claim 1, from OracleSG or Rajani. In other words, a POSA would not understand to modify or combine Oracle Admin with OracleSG and Rajani's alleged teachings regarding hashing to satisfy the requirements of claim 1, given the teachings of Oracle Admin, OracleSG, Rajani, and basic general knowledge. Therefore, a POSA would not be motivated to use the OracleSG or Rajani's teachings for portioning and organizing data location information across the Oracle Admin's Names Servers and enabling each and every Names Server to determine the location of the requested location information. (Goodrich Decl., ¶¶ 42-57).

Like OracleSG and Rajani, Oracle Admin does not contemplate portioning and organizing data location information across data location servers and enabling each and every Names Server to be configured to determine which one of the Names Servers stores the requested location information. In fact, Oracle Admin cannot satisfy these features. (Goodrich Decl., ¶¶ 42-57).

Oracle Admin describes a hierarchical configuration and does not contemplate collapsing the hierarchical configuration into a cluster configuration. OracleSG and Rajani also do not contemplate a non-hierarchical cluster configuration. Therefore, a POSA would not find it obvious to collapse Oracle Admin's hierarchical configuration to allow for portioning and organizing data location information across data location servers based on OracleSG's teachings regarding hashing and/or Rajani's hashing table techniques. Furthermore, a POSA would not find it obvious to collapse Oracle Admin's hierarchical configuration to allow for *each and every* server in the data location server network have the capability of determining the location of the requested information based on OracleSG's teachings regarding hashing and/or Rajani's hashing table techniques. (Goodrich Decl., ¶¶ 34-57).

> a) *A POSA would not be motivated to modify Oracle Admin or combine it with OracleSG and/or Rajani, to achieve the limitations of claim 1 because OracleSG and Rajani suffer from the same deficiencies as Oracle Admin*

As described above, OracleSG and Rajani fail to cure the deficiencies of Oracle Admin. Specifically, neither OracleSG nor Rajani teach or suggest portioning and organizing data location information across the data location servers. Moreover, neither OracleSG nor Rajani teach or suggest *each and every* server in the data location server network have the capability of

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

determining the location of the requested information. Therefore, a POSA would not be motivated or find it obvious to turn to references that include the same flaws as Oracle Admin to achieve the claim 1 limitations because a POSA would understand that modifying Oracle Admin with OracleSG and/or Rajani *would not* satisfy claim 1's requirements. (Goodrich Decl., ¶¶ 42-57).

> b) *A POSA would not be motivated to modify Oracle Admin or combine it with one or more of OracleSG, and/or Rajani because there was no reasonable expectation of success to do so to satisfy Claim 1's requirements*

In order to establish a reasonable expectation of success, there must be "a reasonable expectation of achieving what is claimed in the patent-at-issue." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016); *see also Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1380-1382 (Fed. Cir. 2021). Here, the basis for the Examiner's conclusion as to reasonable expectation of success is unclear and appears to employ impermissible hindsight. In any regard, the Examiner does not consider the incompatibility of the asserted references with the '170 patent.

As described above, the '170 patent is significantly different than conventional naming systems. Specifically, the '170 patent teaches the ability to linearly scale location servers using a cluster formation. This non-hierarchical cluster composition is expressly claimed in claim 1, through the requirement that the data location information is portioned and organized across the data location servers based on a hash function and each and every data location server being configured to determine the data location server that contains the location information based on applying the hash function to the identifier string associated to the location information. In contrast, naming systems like Oracle Names imposes a hierarchical tree structure that limits queries to be received by a client's local or preferred server, and servers are not configured to provide the aforementioned information.

Oracle Admin, OracleSG, and Rajani do not contemplate a non-hierarchical cluster configuration. Any attempt to modify or combine Oracle Admin with OracleSG and/or Rajani would require a wholesale collapsing of the hierarchical tree and a fundamental change as to how the location information is organized across the Names Servers and enabling each and every Names Servers to determine where the sought-after location information is stored. Therefore, a POSA would not have had reasonable expectation of success to modify or combine Oracle Admin

with one or more of OracleSG and/or Rajani to meet the claim requirements of claim 1. (Goodrich Decl., ¶¶ 42-57).

            *c)*       *Modifying Oracle Admin or combining it with one or more of OracleSG, and/or Rajani in accordance with claim 1's requirements changes the principal operation underpinning Oracle Admin*

If the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims prima facie obvious. *In re Ratti*, 270 F.2d 810, 813 (CCPA 1959) (holding the "suggested combination of references would require a substantial reconstruction and redesign of the elements shown in [the primary reference] as well as a change in the basic principle under which the [primary reference] construction was designed to operate.").

Oracle Names involves making network address and database link information in a distributed database network available to all nodes in the network. (Oracle Admin at 5). Specifically, Oracle Admin involves a client transmitting a name resolution request to a Names Server. (*See e.g., id.,* 30-32; 52-54; 190-192). The name resolution request includes an alias for a network service. (*Id*). The request is traversed up and down ta hierarchical tree configuration of Names Severs to retrieve a network address. (*See e.g., id.,* 190-192). The client receives the network address in response to the name resolution request for the network service and connects with the network service using the network address. (*Id*).

Oracle Admin's principal operation involves traversing a hierarchical tree configuration of Names Severs to retrieve a network address. (*Id*). As described above, attempting to modifying Oracle Admin with one or more of OracleSG and/or Rajani to satisfy claim 1's requirements would involve collapsing Oracle Admin's hierarchical structure. This would require substantial reconstruction and redesign of Oracle Admin's elements (e.g., Names Servers).

Therefore, attempting to modify Oracle Admin with one or more of OracleSG and/or McGarvey to satisfy claim 1's requirements would change the principal operation of Oracle Admin. (Goodrich Decl., ¶¶ 42-57).

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

4.    **The combination of Oracle Admin, OracleSG, and Rajani does not
       teach or suggest the required relationships among "identifier string,"
       "data entity," and "location information," as required by claim 1**

a)    *Oracle Admin does not teach or suggest an identifier string that
       identifies a data entity" and "at least one of the plurality of data
       location servers includes location information associated with the
       identifier string"*

Claim is further not obvious in view of Oracle Admin, OracleSG, and Rajani for the
additional reason that these references, alone or in combination, do not disclose the required
relationship among the terms "identifier string," "data entity," and "location information."

In rejecting claim 1 in view of Oracle Admin, OracleSG, and Rajani, the Examiner maps
"data entity" to a "database" and "identifier string" to the alias associated with the database
server's network address. (Office Action, 9-10; *see also* Oracle Admin, 30-32; 50-54).[2]  Patent
Owner respectfully disagrees.  The term "data entity" must be read in the context of the entire
claim as well as the specification of the '170 patent.  Doing so shows that a database cannot be
the claimed "data entity."

A data entity may be made up of units of data.  (*See e.g.,* '170 patent, 17:3-10; 20:17-21).
The '170 patent teaches that data units may be stored in one or more repositories.  (*See e.g., id.,*
2:17-21).  An identifier uniquely identifies a particular data entity and is associated with the
multiple units of data that make up the data entity.  (*See e.g., id.,* 2:17-45; 4:8-17).  The locations
of data units comprising the data entity may be organized and distributed across location servers
based on the identifier associated with those units of data.  (*See e.g., id.,* 2:17-45; 4:8-17; 15:12-
49).  If the locations of the units of the data change from one repository to the next, the locations
of the data may still be retrieved using the same identifier.  (*See e.g., id.,* 2:17-45; 4:8-17; 4:57-
67; 6:34-7:5; 15:12-49; 17:3-10; 20:17-30).  These relationships are depicted in Patent Owner's
Figure A:

---

[2] During the Examiner Interview, the Examiner hypothesized that "data repository" could
be the "physical server" housing the database.  This, however, does not cure the fact that, for
reasons explained herein, a database cannot be the claimed "data entity."

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035



**Patent Owner's Figure A**

In Oracle Admin, if a database is the data entity, and the identifier is the network address alias of that database, then data within that database comprises the data entity, and the "location information associated with the identifier string" is the network address of the database (and not the alias for that network address, e.g., POULTRY). If any data comprising the data entity (i.e., the database in this scenario) is moved, the association between the location information and the identifier string is broken -- in other words, POULTRY will still only point to the database's network location but is not otherwise associated with location information for whatever data may have moved from the POULTRY database. (Oracle Admin, 30-32; 50-54). Claim 1, however, requires every location server in the network be configured to determine which location server has the ***location information associated with the identifier string***, which cannot be the case if "data entity" is a database.

> b)   *OracleSG does not cure the deficiencies of Oracle Admin*

The Examiner alleges that OracleSG also teaches or suggests an identifier string. Specifically, the Examiner alleges that OracleSG's easy name synonyms for specifying a database correspond to the "identifier string." (Office Action, 12). The Examiner further alleges that the easy name synonyms may also be used as aliases for tables and views. (*Id*). However, OracleSG's easy-name synonyms do not identify a data entity, as required by claim 1.

OracleSG describes easy name synonyms to retrieve and connect to a database. (OracleSG, 86-87). OracleSG further describes assigning synonyms to tables and views. (*Id*., 189-190).

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

Even assuming, *arguendo*, a database, table or view may be interpreted as an "entity," OracleSG does not teach or suggest a synonym that uniquely identifies a database, table or view. For example, OracleSG describes using private or public synonyms to identify a database, table, or view. (*Id*). Multiple users in the database network may use the same synonym to identify the different databases, tables, or views. (*Id*). That is, a first user may use synonym X to refer to database 1 and a second user in the same database network may also use synonym X to refer to database 2. (*Id*). Therefore, OracleSG does not teach or suggest an identifier that uniquely identifies an entity. (Goodrich Decl. ¶ 49).

In light of the above, OracleSG does not teach or suggest an identifier string that uniquely identifies a data entity.

c)   *Rajani does not cure the deficiencies of Oracle Admin and OracleSG*

Rajani is not relied upon and does not teach or suggest an identifier string that identifies a data entity, as required by claim 1.

**F.   Claim 2 Is Not Obvious In View of Oracle Admin-OracleSG-Rajani**

For ease of reference, claim 2 is reproduced here:

2.   The system of claim 1, wherein ***the location information comprises any portion of a hash table generated with the hash function***.

Claim 2, which depends from claim 1, is not obvious in light of Oracle Admin, alone or in combination with any or all of OracleSG and Rajani for at least the reasons discussed with respect to claim 1.

Claim 2's additional requirement that the *location information comprises any portion of a hash table generated with the hash function* provides an additional basis for non-obviousness in view of these references.

Claim 2, which depends from claim 1, requires the "location information," which has antecedent basis in claim 1, to comprise "a portion of a hash table." Claim 1 requires the "location information" to be present in "at least one of the plurality of data location servers." Thus, the "at

40

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

least one of the plurality of data location servers" must include "location information" comprising "a portion of a hash table."

The Examiner points to Rajani's hash table techniques and OracleSG's hash-based queries as satisfying the added limitation of claim 2. (Office Action, 22-23). However, Oracle Admin, OracleSG, and Rajani fail to teach or suggest generating a hash table and then including *only a portion* of that table as part of the location information in the "at least one of the plurality of data location servers" in the network.

OracleSG's rule-based optimizers execute queries to retrieve data. (OracleSG, 633). While OracleSG mentions using hashing to execute the queries, OracleSG is silent with respect to *portioning* that hash table and including only a portion in the location information. (*Id*). Nothing in OracleSG suggests such treatment of hash tables in data networks.

The Examiner further points to Rajani's hash function which is used to locate a file in backup memory as satisfying the limitations of claim 2. Rajani describes a server storing an *entire* hash table (Table 1). (Rajani, 4:1-67). Like OracleSG, Rajani does not teach or suggest *portioning* the hash table and including only a portion in the location information of a data location server in the network. (Goodrich Decl., ¶¶ 58-62).

### 1. A POSA would not be motivated or find it obvious to modify or combine Oracle Admin with one or more of OracleSG and/or Rajani to satisfy claim 2's requirements

The Examiner alleges that a POSA would find it obvious for Oracle Admin's location information to include only a portion of the hash table based on OracleSG and/or Rajani's teachings. (Office Action, 23). Patent Owner respectfully disagrees.

The asserted references are devoid of any reasoning to motivate the portioning of a hash table and including only a portion of that table as part of location information included in a data location server. The reasoning for using such a feature is only present on the record in '170 specification. Therefore, the combination of Oracle Admin and OracleSG or Oracle Admin, OracleSG and Rajani is an exercise of impermissible hindsight, and not modifications or combinations a POSA would have made at the time of the invention.

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

Furthermore, a POSA would not have had reasonable expectation of success for satisfying claim 2's requirements by modifying Oracle Admin and OracleSG or Oracle Admin, OracleSG and Rajani. In order to establish a reasonable expectation of success, the Examiner must show "a reasonable expectation of achieving what is claimed in the patent-at-issue." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016); *see also Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1380-1382 (Fed. Cir. 2021). The Examiner has not shown how or why a POSA would have a reasonable expectation of success in combining Rajani with Oracle Admin and OracleSG to arrive at the limitation in question, at the time of the invention. Attempting to modify Oracle Admin with one or more of OracleSG and/or Rajani to include a portion of a hash table in the location information requires significant reengineering and reconfiguration of Oracle Admin. Therefore, a POSA would not have had a reasonable expectation of success to configure Oracle Admin to satisfy claim 2's requirement. (Goodrich Decl., ¶¶ 58-62).

### G. Oracle Admin, OracleSG, and McGarvey fail to render claims 6 or claim 15 obvious

For ease of reference, claims 6 and 15 are reproduced below:

Claim 6 recites:

[6.pre] A system for managing data location information and providing the data location information in response to location queries, the system comprising:

[6.a] a location server configured to receive a location addition request,

[6.b] the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier,

[6.c] wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity;

[6.d] wherein the location server includes a processor, and programming logic stored on the location server,

[6.e] wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message,

[6.f] the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity,

[6.g] wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and

[6.h] wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity,

[6.i] the redirect message comprising a list of at least one other location server known to have the location information for the desired entity.

Claim 15 recites:

[15.pre] A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising:

[15.a] correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network,

[15.b] each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network;

[15.c] receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities:

[15.d] determining which of the plurality of location servers includes the location information;

[15.e] sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and

[15.f] sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information,

[15.g] the redirect message identifying which of the plurality of location servers includes the location information.

Oracle Admin, alone or in combination with any of OracleSG and McGarvey, do not render either claim 6 or claim 15 obvious at least because they do not teach or disclose the "redirect

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

message" limitations of elements [6.h-i] and [15.f-g]. In the case of claim 6, the redirect message must comprise "a list of at least one other location server known to have the location information for the desired entity." In the case of claim 15, the redirect message has to "identify[] which of the plurality of location servers includes the location information." Both claims therefore require location servers in the network to be able to return a redirect message that *identifies which other location server has the location information of a particular entity.*

> ### 1. The combination of Oracle Admin-OracleSG-McGarvey fail to teach or suggest a redirect message that identifies which data location server contains the location information

>> #### a) *Oracle Admin does not teach or suggest a redirect message that identifies which data location server contains the location information*

The Examiner first relies on Oracle Admin to satisfy this requirement. Specifically, the Examiner alleges Oracle Admin teaches a redirect message based on its discussion of "FORWARDING_AVAILABLE is set to OFF." (Office Action, 27 and 40-41). But Oracle Admin's "FORWARDING_AVAILABLE is set to OFF" teaches something altogether different from and not apropos to the redirect message requirement of claims 6 and 15.

Oracle Admin states that, if FORWARDING_AVAILABLE is set to OFF:

> Rather than forward the request and return the answer *the Names Server simply tells the requestor the address of the Names Server that __can__ answer the request.* Note that there is no overall reduction in work; the work is simply displaced from the non–forwarding Names Server to the requesting Names Server.

> WARNING: If FORWARDING_AVAILABLE is set to off, any clients who rely directly on that Names Server will be unable to resolve foreign names. Clients are not capable of redirecting their requests as Names Servers would. Their requests will fail at that point, even if other Names Servers are listed in the NAMES.PREFERRED_SERVERS configuration parameter.

Oracle Admin, p. 137 (emphasis added).

As Oracle Admin explains, turning off "name request forwarding" simply shifts the "work" from the queried server to the server that queried it (requesting Names Server). (*Id.*). That "work" is querying the next server above it in the network path (e.g., the next Names Server in

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

the hierarchy as shown in Figure C-4). *(Id.,* 190-192). Nowhere in Oracle Admin is there any contemplation that the next server is somehow known by the queried server to be in possession of the requested information – rather, the next server merely "*can*" answer the request (if it happens to have the information) but will not necessarily do so (as required claims 6 and 15).

As explained above, and repeated here for context, Fig. C-4 can be used to illustrate what happens when FORWARDING_AVAILABLE is OFF versus when it is on.



For example, the client queries DR1. If DR1 does not have the information, it forwards the query to ROOT. If ROOT does not have the information and its FORWARDING_AVAILABLE is set to OFF, it cannot forward the query to DR2, as it otherwise would have done. Instead, Oracle Admin teaches that ROOT shifts the work to DR1 by returning a message to DR1 identifying DR2, which *can* have the requested information *or not.* In other words, ROOT simply tells DR1 the next server it would otherwise have queried had its forwarding not been turned off. A POSA would understand Oracle Admin to teach that DR2 may *or may not* have the requested information because ROOT has no way of knowing whether it does. Because ROOT does not know one way or another, the Oracle system does not meet the knowledge requirement of the claims. (Goodrich Decl., ¶¶ 34-41; 63-78).

Oracle Admin's hierarchical structure does not contemplate having any given server in the Names Server network know which other server contains the queried information. (Goodrich Decl., ¶¶ 34-41; 63-78). Therefore, Oracle Admin hierarchical structure does not allow a Names

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

Server to return a redirect message that indicates with specificity which data location server contains the location information.

### b) McGarvey does not cure the deficiencies of Oracle Admin

The Examiner points to McGarvey's TCP/IP resolution as allegedly teaching or suggesting a redirect message to the client that indicates with specificity which data location server contains to the location information for the desired entity, as required by claims 6 and 15. (Office Action, 31 and 44). However, McGarvey is silent with respect to transmitting a redirect message that identifies which data location server in fact contains the location information.

McGarvey merely indicates that in the TCP/IP name resolution process, if a names server cannot resolve a host name based on a client query, the names sever returns information about a different server so the client may send the query to the different server. (McGarvey, 1:40-49). McGarvey does not determine whether the different server contains the location information. To this end, the returned information does not indicate with specificity which data location server contains the location information.

McGarvey further describes maintaining a list of domain name servers for each domain. (*Id.*, 2:60-67). However, McGarvey explains that the list of domain name servers are alternate domain name servers to be queried if a given domain name server is not available. (*Id.*, 1-3). As such, the list of domain name servers are irrelevant to a redirect message that indicates with specificity which data location server contains the location information.

Furthermore, McGarvey describes establishing communication with a host by forwarding name server queries. (*Id.*, 5:3-35 and Fig.3). The process shown in FIG. 3 is terminated when the hostname is resolved, or a failure message is sent to the client. (*Id.*, 5:5-43). The failure message is <u>not</u> a redirect message. (*Id*). The failure message thus does not indicate with specificity which data location server contains the location information.

Therefore, McGarvey does not teach or suggest transmitting a redirect message that indicates with specificity which data location server contains the location information, as required by claims 6 and 15. (Goodrich Decl., ¶¶ 63-78)

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

      *c)*      *OracleSG does not cure the deficiencies of Oracle Admin and McGarvey*

OracleSG is neither relied upon for nor does it teach or suggest transmitting a redirect message that indicates with specificity which data location server contains the location information, as required by claims 6 and 15.

      **2.**      **The combination of Oracle Admin-OracleG-McGarvey fail to teach or suggest transmitting a redirect message that indicates with specificity which data location server contains the location information ~~to the client~~, as required by claim 15**

Claim 15 recites "sending a redirect message *to the client* in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information." (emphasis added). As such, claim 15 requires transmitting a redirect message that indicates with specificity which data location server contains the location information **to the client**.

Oracle Admin makes clear that, even in the event FORWARDING_AVAILABLE is set to OFF, "the work is simply displaced from the non-forwarding Names Server to the requesting *Names Server*." Oracle Admin goes on to specify:

> WARNING: If FORWARDING_AVAILABLE is set to off, any clients who rely directly on that Names Server will be unable to resolve foreign names. *Clients are **not** capable of redirecting their requests as Names Servers would.*

Oracle Admin, p. 137.

Thus, Oracle Admin teaches that responses that are returned in a FORWARDING_AVAILABLE OFF situation *does **not** return anything to the client*, which is "not capable of redirecting their requests as Names Servers would," but rather to the requesting Names Server. This does not teach, suggest or render obvious the "transmit to the client" requirement of claim 15 but rather teaches away from it. (Goodrich Decl., ¶¶ 34-41; 63-78).

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

### 3. Oracle Admin, OracleSG, and McGarvey do not teach or suggest associating the location of data pertaining to an entity to an identifier identifying the entity, as required by claim 6

Claim 6 further requires that "a location addition request" comprise "an identifier and at least one location to associate with the ***identifier***." Claim 6 also requires the identifier to "identify an entity" and the location to "specify a location of the ***data in a network pertaining to the entity***." "Identifier" is construed as "a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server," (7/12/2022 IDS, NPL 43), and "data pertaining to an entity" is construed as "data pertaining to a person or thing (real, digital, or abstract) *distinct from that data*" (*id.*, NPL 42) (emphasis added).

The Patent Trials and Appeals Board (the Board) in an *Inter Partes* Review (IPR) proceeding of a related patent (IPR2020-00276) agreed that the identifier ***uniquely*** identifies a ***single*** entity that can be associated with ***multiple*** locations of data. (*See id.*, NPL 29).

This is illustrated in Patent Owner's Figure A (reproduced below).



**Patent Owner's Figure A**

As described above, an "identifier" or "identifier string" uniquely identifies an entity. (*Id.*, NPL 43). The "identifier/identifier string" is also associated with "location strings" stored in a location server. *Id.* "Location strings," also known as "location" or "data location," is construed as specifying where "data pertaining to the entity" is stored. (*Id.*). Thus, claim 6 requires associating a "location" of "data … pertaining to an entity" to an "identifier" identifying the "entity," each of which is distinct from the others.

48

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

a)  *Oracle Admin does not teach or suggest **associating the location of data pertaining to an entity to an identifier identifying the entity**, as required by claim 6*

The Examiner alleges that Oracle Admin allows for adding, changing, deleting network objects. (Office Action, 24; Oracle Admin, 104). The Examiner further points to Oracle Admin's register command to register a network service and its address. (Office Action, 24; Oracle Admin, 131). Moreover, the Examiner alleges that Oracle Admin describes using a name to identify a database server's network address. (Office Action, 24-25). However, the reasoning in the Office Action collapses distinct claim elements into the same Oracle Admin feature. *See CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) (holding there is a presumption that when different words are used to describe different elements, they have different meanings).

The Office Action does not specify whether Oracle Admin's name-alias identifies an "entity," "data," or a "location." Regardless, Oracle Admin merely describes registering a network object or service name and its address. (Oracle Admin, 104 and 131). Oracle Admin describes using aliases for network addresses of network services, such as databases. For example, Oracle Admin's Figure 3-11 (reproduced below) illustrates the communication between the Oracle Names Server, client, and database server.



Figure 3 - 11  Client-Server Connection

In Figure 3-11, "POULTRY" is the database service name. (*Id.*, 52-53). The database service name is used to identify the address for the database service. (*Id*).

49

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

Based on the above, the network object or service is registered with an alias or name. The network object or service cannot be the entity, data, or the location. In this regard, Oracle Admin does not teach or suggest associating the location of data pertaining to an entity to an identifier identifying the entity.

*b)      OracleSG fails for the same reasons as Oracle Admin*

The Examiner alleges that OracleSG teaches or suggests receiving a "location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity," as recited by claim 6. Specifically, the Examiner points to that OracleSG's easy name synonyms for specifying a database. (Office Action, 28; *see also* OracleSG, 86-87, 181, 189-190, and 352)[3]. The Examiner further alleges that OracleSG's disclosure about SQL*Net version 2 on page 87 would render obvious the ability for adding new identifiers and respective location and connection information. (Office Action, 28). Patent Owner respectfully disagrees.

OracleSG describes easy name synonyms to retrieve and connect to a database. (OracleSG, 86-87). OracleSG further describes assigning synonyms to tables and views. (*Id.*, 189-190). The synonym is merely an alias for a database, table, or view. The database, table, or view cannot be both the entity and the data. In this regard, assigning synonyms to databases, tables, or views do not correspond with associating a location of data pertaining to an entity to an identifier identifying an entity.

Even assuming, *arguendo*, a database, table or view may be interpreted as an "entity," OracleSG does not teach or suggest a synonym that uniquely identifies a database, table or view.

_____

[3] The Examiner further points to OracleSG's SQL query to retrieve the locations of data files. (Office Action, 28; *see also* OracleSG, 152). However, Oracle Admin's SQL query is irrelevant to receiving a "location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity," as recited by claim 6.

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

For example, OracleSG describes using private or public synonyms to identify a database, table, or view. (*Id*). Multiple users in the database network may use the same synonym to identify the different databases, tables, or views. (*Id*). That is, a first user may use synonym X to refer to database 1 and a second user in the same database network may also use synonym X to refer to database 2. (*Id*). Therefore, OracleSG does not teach or suggest an identifier that uniquely identifies an entity. (Goodrich Decl. ¶ 49).

Furthermore, OracleSG's disclosure about SQL*Net version on page 87 would not render obvious receiving obvious the ability for adding new identifiers and respective location and connection information. (OracleSG, 87). OracleSG describes various Oracle utilities, such as starting, stopping, configuring database instances. However, these utilities are irrelevant to associating the location of data pertaining to an entity to an identifier identifying the entity.

Based on the reasons above, OracleSG does not teach or suggest receiving a "location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity," as recited by claim 6.

> c) *McGarvey does not cure the deficiencies of Oracle Admin and OracleSG*

McGarvey is neither relied upon for nor does it teach or suggest associating the location of data pertaining to an entity to an identifier identifying the entity, as required by claim 6.

> **4.** **A POSA would not be motivated to modify or combine Oracle Admin with one or more of OracleSG and/or McGarvey**

> a) *A POSA would not find it obvious, or be motivated, to modify Oracle Admin or combine it with OracleSG and/or McGarvey, to achieve the limitations of claims 6 and/or 15*

As stated above, the limitations of claims 6 and 15 require a non-hierarchical cluster configuration that allows location servers to return a redirect message that identifies which data location server is "known to have" (claim 6) or definitively "includes" (claim 15) the location information.

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

Oracle Amin's Name Servers has no such capability; the hierarchical tree structure of the network limits each server to knowing only about its direct children and therefore has no knowledge of information stored in other Names Servers. (Oracle Admin, p. 191). Accordingly, Oracle Admin's Names Servers are not configured to determine with any specificity or certainty which data location server is known to include the sought-after data location information. Therefore, a POSA would not find it obvious to collapse Oracle Admin's hierarchical configuration using OracleSG or McGarvey's teachings to allow for the Names Servers to transmit a redirect message that indicates with specificity the Names Server that contains the data location information. (Goodrich Decl., ¶¶ 34-41; 63-78).

> b) *A POSA would not find it obvious, or be motivated, to modify Oracle Admin or combine it with OracleSG and/or McGarvey, to achieve the limitations of claims 6 and/or 15 because OracleSG and McGarvey suffer from the same flaws as Oracle Admin*

As indicated above, neither OracleSG nor McGarvey teach or suggest transmitting a redirect message that indicates with specificity which data location server contains the location information, as required by claims 6 and 15[4]. Moreover, neither OracleSG nor McGarvey teach or suggest sending a redirect message that indicates with specificity which data location server contains the location information to a client, as required by claim 15.

Furthermore, neither OracleSG nor McGarvey teach or suggest associating the location of data pertaining to an entity to an identifier identifying the entity, as required by claim 6.

Therefore, a POSA would not be motivated or find it obvious to turn to references that include the same flaws as Oracle Admin to achieve the requirements of claims 6 and/or 15 because a POSA would understand that modifying Oracle Admin with OracleSG and/or McGarvey *would not* satisfy claims 6 and 15's requirements. (Goodrich Decl., ¶¶ 34-41; 63-78).

---

[4] The Examiner alleges OracleSG describes "redirects" as useful tool for Oracle systems. (Office Action, 34; *see also* OracleSG, 112). However, OracleSG does not teach or suggest a "redirect message," as required by claims 6 and 15. OracleSG describes *redirecting an output* to a file or printer. (OracleSG, 112). As such, OracleSG's disclosure is irrelevant to a redirect message indicating a location server containing the requested information, as required by claims 6 and 15.

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

      c)     *A POSA would not be motivated to modify Oracle Admin or combine it with one or more of OracleSG, and/or McGarvey because there was no reasonable expectation of success to satisfy Claim 6 or 15's requirements*

In order to establish a reasonable expectation of success, there must be "a reasonable expectation of achieving what is claimed in the patent-at-issue." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016); *see also Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1380-1382 (Fed. Cir. 2021). Here, the basis for the Examiner's conclusion as to reasonable expectation of success is unclear and appears to employ impermissible hindsight. In any regard, the Examiner does not consider the incompatibility of the asserted references with the '170 patent.

As an initial matter, Oracle Admin explicitly teaches away from using Dynamic Discovery for complicated networks. (Oracle Admin, 21). For example, Oracle Admin explicitly states, "If you have a *simple* existing network that is growing, the Dynamic Discovery Option is a good choice." (Oracle Admin, 21) (emphasis added). Oracle Admin further states that Dynamic Discovery (or "DDO") is "not a good choice" and is "not suitable" for "large, enterprise-scale networks." (*Id*). A POSA would understand Oracle Admin discourages the use of DDO in combination with large-scale networks. Furthermore, Oracle Admin indicates that its Dynamic Discovery Option only works with SQL*Net 2.3. (*Id.; see also,* Goodrich Decl., ¶¶ 63-78). Therefore, a POSA would not have a reasonable expectation of success to modify or combine Oracle Admin with one or more of the complex networks described in OracleSG and/or McGarvey.

As described above, the '170 patent is significantly different than conventional naming systems. Specifically, the '170 patent teaches the ability to linearly scale location servers using a cluster formation. This non-hierarchical cluster composition is expressly claimed in claims 6 and 15, through the requirement that the redirect message indicate with specificity the data location server that contains the location information. In contrast, naming systems like Oracle Names imposes a hierarchical tree structure that limits queries to be received by a client's local or preferred server, and servers are not configured to provide the aforementioned information.

Oracle Admin, OracleSG, and McGarvey do not contemplate a non-hierarchical cluster configuration. Furthermore, Oracle Admin, OracleSG, and McGarvey do not contemplate

53

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

determining with certainty the location of the requested information. Any attempt to modify or combine Oracle Admin with OracleSG and/or McGarvey would require a wholesale collapsing of the hierarchical tree and a fundamental change as to enabling the Names Servers to determine which Names Server contains the location information. As such, modifying (or combining) Oracle Admin with OracleSG and/or McGarvey to achieve claims 6 and 15's requirements would require significant modifications that may result in constructing a completely different system. Therefore, a POSA would not have had reasonable expectation of success to modify Oracle Admin (with or without OracleSG) with McGarvey to meet the claim requirements of claims 6 and/or 15. (Goodrich Decl., ¶¶ 34-41; 63-78).

> d) *Modifying Oracle Admin or combine it with one or more of OracleSG, and/or McGarvey to satisfy claims 6 and/or 15's requirements changes the principle operation underpinning Oracle Admin*

If the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims prima facie obvious. In re Ratti, 270 F.2d 810, 813 (CCPA 1959) (holding the "suggested combination of references would require a substantial reconstruction and redesign of the elements shown in [the primary reference] as well as a change in the basic principle under which the [primary reference] construction was designed to operate.").

The Examiner alleges as POSA would find it obvious for "Oracle Admin's Names Server to send a redirect message to the client that identifies another Names Server having the location information." (Office Action, 32). However, Oracle Admin explicitly prevents this functionality.

Oracle Admin makes clear that, even in the event FORWARDING_AVAILABLE is set to OFF, "the work is simply displaced from the non-forwarding Names Server to the requesting *Names Server*." Oracle Admin goes on to specify:

> WARNING: If FORWARDING_AVAILABLE is set to off, any clients who rely directly on that Names Server will be unable to resolve foreign names. *Clients are not capable of redirecting their requests as Names Servers would*.

Oracle Admin, p. 137.

54

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

Oracle Admin prevents clients from redirecting their requests. As such, configuring Oracle Admin to do so, as alleged in the Office Action, would require substantial reconstruction and redesign of Oracle Admin.

Furthermore, Oracle Names involves making network address and database link information in a distributed database network available to all nodes in the network. (Oracle Admin at 5). Specifically, Oracle Admin involves a client transmitting a name resolution request to a Names Server. (*See e.g., id.,* 30-32; 52-54; 190-192). The name resolution request includes an alias for a network service. (*Id*). The request is traversed up and down ta hierarchical tree configuration of Names Severs to retrieve a network address. (*See e.g., id.,* 190-192). The client receives the network address in response to the name resolution request for the network service and connects with the network service using the network address. (*Id*).

Oracle Admin's principle operation involves traversing a hierarchical tree configuration of Names Severs to retrieve a network address. (*Id*). As described above, attempting to modifying Oracle Admin with one or more of OracleSG and/or Rajani to satisfy claim 1's requirements would involve collapsing Oracle Admin's hierarchical structure. This would require substantial reconstruction and redesign of Oracle Admin's elements (e.g., Names Servers). (Goodrich Decl., ¶¶ 63-78).

> **5. The combination of Oracle Admin, OracleSG, and McGarvey do not teach or suggest an identifier string that identifies a data entity, as required by claim 15**

For the reasons described above with respect to claim 1, Oracle Admin and OracleSG do not teach or suggest an identifier string that identifies a data entity.[5] (*See Section IV.E.4, supra*).

*H.* **Claim 8 Is not obvious in view of Oracle Admin-OracleSG-Rajani**

For ease of reference, claim 8 is reproduced here:

8. The system of claim 6, wherein *each of a plurality of location servers in the network stores only a portion of the data location information*.

----

[5] McGarvey does not teach or suggest and is not relied upon to teach or suggest an identifier that identifies a data entity.

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

Claim 8, which depends from claim 6, is not obvious in light of Oracle Admin, alone or in combination with any or all of OracelSG and Rajani, for at least the reasons discussed with respect to claim 6.

Claim 8 specifies that *each* of a plurality of locations servers in the network stores *only a portion* of the data location information. This requires the data location information to be portioned and distributed across all location servers in the network.

The Examiner points to Oracle Admin Names Server's cache memory storing "some or all of the connection descriptors" to satisfy claim 8's limitations. (Office Action, 34-35). The Examiner further points to Oracle Admin's turn forwarding off feature to satisfy claim 8's limitations. (*Id*). However, Oracle Admin is silent with respect to *portioning and distributing* the data location information across the location servers.

Oracle Admin does not limit the Names Server's cache memory to store *only* a portion of the data location information. Oracle Admin explicitly states that the Names Server's cache memory can store *all* of service addresses of the Names Servers. (Oracle Admin, 32-33). But even if Oracle Admin could be read to teach or suggest limiting storing "only" a portion of the connection descriptors, Oracle Admin says nothing about distributing those portions across every server in the network. (Goodrich Decl., ¶¶ 34-41; 79-82).

> *a)* **A POSA would not be motivated or find it obvious to modify or combine Oracle Admin with one or more of OracleSG and/or McGarvey to satisfy claim 8's requirements**

The asserted references are devoid of any reasoning to motivate the portioning the data location information and distributing the portions of the data location information across location servers. Such reasoning is present on the record only in '170 specification. Therefore, the combination of Oracle Admin and OracleSG or Oracle Admin, OracleSG and McGarvey is an exercise of impermissible hindsight, and not modifications or combinations a POSA would have made at the time of the invention.

Furthermore, a POSA would not have had reasonable expectation of success for satisfying claim 8's requirements by modifying Oracle Admin and OracleSG or Oracle Admin, OracleSG and McGarvey. In order to establish a reasonable expectation of success, the Examiner must show

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

"a reasonable expectation of achieving what is claimed in the patent-at-issue." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016); *see also Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1380-1382 (Fed. Cir. 2021). The Examiner has not shown how or why a POSA would have a reasonable expectation of success in combining Oracle Admin with one or more of OracleSG and McGarvey to arrive at the limitation in question, at the time of the invention.

Attempting to modify Oracle Admin to enable portioning and distributing location information across Oracle Admin's Name Servers requires significant reengineering and reconfiguration of Oracle Admin. Therefore, a POSA would not have had a reasonable expectation of success to configure Oracle Admin to satisfy claim 8's requirement. (Goodrich Decl., ¶¶ 79-82).

### *i.* **Oracle Admin, OracleSG, McGarvey, and Rajani fail to render claims 9 and 12 obvious**

For ease of reference, claims 9 and 12 are reproduced here:

9. The system of claim 6, wherein *the location information in the location server is maintained in an indexed location store*.

12. The system of claim 9, wherein *the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers*.

Claim 9, which depends from claim 6, is not obvious in light of Oracle Admin, alone or in combination with any or all of OracelSG and Rajani, for at least the reasons discussed with respect to claim 6.

Claim 12, which depends from claim 9, is not obvious in light of Oracle Admin, alone or in combination with any or all of OracelSG and Rajani, for at least the reasons discussed with respect to claims 6 and 9.

The Examiner's analysis combines these limitations to read "the location information in the location server is maintained in an indexed location store comprising a strong store indexed by a hash table distributed across a plurality of server" and discusses both claims 9 and 12 together. (Office Action, pp. 48-54). Accordingly, Patent Owner traverses Examiner's rejections as to both claims simultaneously.

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

The Examiner points to OracleSG's "rule-based optimizer in executing SQL queries" and specifically "hashing [] utilized by the rule-based optimizer [] to execute queries," in combination with Oracle Admin, as teaching the added limitation of claim 9. The Examiner also relies on Rajani's hashing table techniques to satisfy the limitations of claims 9 and 12. (Office Action, 48-49). However, Oracle Admin, OracleSG McGarvey, and Rajani fail to teach or suggest using a distributed hash table to organize location information. (Goodrich Decl., ¶¶ 34-41; 83-87).

### *1.* **The combination of Oracle Admin with one or more of OracleSG, McGarvey, and Rajani does not render claims 9 or 12 obvious**

#### a) *A POSA would not find it obvious to modify or combine Oracle Admin with one or more of OracleSG, McGarvey, and Rajani to satisfy claim 12's requirements*

The Examiner alleges a POSA would find it obvious to use OracleSG's hash-based queries and/or Rajani's hashing table techniques with Oracle Admin's system to organize location information. (Office Action, 48-49). The Examiner's conclusion is not supported by the record. As an initial matter, Oracle Admin, OracleSG McGarvey, and Rajani fail to teach or suggest a ***distributed*** hash table used to organize location information across a plurality of location servers. Using a distributed hash table to manage location information across servers was not well-known in the art and did not become subject of significant study until years later. (Goodrich Decl., ¶¶ 83-87).

#### b) *Combining OracleSG's hash-based queries or Rajani's hashing to Oracle Admin in order to organize data location information in accordance with the claims require impermissible hindsight*

The asserted references are devoid of any reasoning that would motivate a POSA to create and use a ***distributed*** hash table in a network to organize location information. Such reasoning is present on the record only in '170 specification. (*See e.g.,* '170 patent, 4:29-67; 15:13-49). Therefore, the combination of Oracle Admin with one or more of OracleSG, McGarvey, and/or Rajani is an exercise of impermissible hindsight, and not modifications or combinations a POSA would have made at the time of the invention. (Goodrich Decl., ¶¶ 34-41; 83-87).

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

      c)     *A POSA would not have had reasonable expectation of success for satisfying claim 12's requirements by modifying or combining Oracle Admin with OracleSG, McGarvey, and/or Rajani*

The law requires a showing of "a reasonable expectation of achieving what is claimed in the patent-at-issue." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016); *see also Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1380-1382 (Fed. Cir. 2021). The Office Action does not provide such a showing, and indeed none is possible because although a distributed hash table may be used in a non-hierarchical cluster configuration, it **cannot** be used in a hierarchical-tree configuration, making the modification of the combined references to practice the invention improbable. (Goodrich Decl., ¶¶ 34-41; 83-87).

As stated above, OracleSG, McGarvey, and Rajani rely on hierarchical configurations. Any attempt to modify Oracle Admin to a non-hierarchical configuration would require abandoning the hierarchical model and a fundamental change as to how Oracle Names organizes the location information on its network. Such reconfiguring would require non-trivial work by a POSA at the time of the invention and would not engender a reasonable expectation of success as a result. (Goodrich Decl., ¶¶ 34-41; 83-87).

**J.**    **Secondary Considerations of Non-Obviousness**

Significant evidence also supports a finding that the claims at issue are not obvious. As set forth in MPEP § 2141:

The framework for the objective analysis for determining obviousness under 35 U.S.C. 103 is stated in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966). Obviousness is a question of law based on underlying factual inquiries. The factual inquiries enunciated by the Court are as follows:

(A) Determining the scope and content of the prior art;

(B) Ascertaining the differences between the claimed invention and the prior art; and

(C) Resolving the level of ordinary skill in the pertinent art.

Objective evidence relevant to the issue of obviousness must be evaluated by Office personnel. *Id.* at 17-18, 148 USPQ at 467. Such evidence, sometimes referred to as 'secondary considerations,' may include evidence of commercial success, long-felt but unsolved needs, failure of others, and unexpected results.

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

Here, evidence of secondary considerations of non-obviousness includes the following:

*1.* **Long felt but unsolved needs and industry praise**

Many people and institutions have written about the long need for technology that would enable a highly scalable information database, which is enabled by the technology of the asserted claims. For example, in February 2004, years after the invention of the '640 patent, an article reported on work being conducted at MIT that asked the question, "Wouldn't it be better to store data in the nooks and crannies of the Internet, a few keystrokes away from any computer, anywhere?" *10 Emerging Technologies That Will Change Your World*, at www.technologyreview.com (February 2004) (attached as Exhibit A) at 44. The article characterized a long-felt need for "making digital files easier to maintain and access while eliminating the threat of catastrophes that obliterate information, from blackouts to hard-drive failures." *Id.* The article goes on to discuss using "distributed hash tables" to identify the locations of "files scattered around the Internet." *Id.* The benefits of distributed hash tables that are praised in the article, including the potential to "change the basic operation of the Internet," (*id.* at 47), are achieved by the use of a distributed storage architecture that implements a hash function, which is embodied in claim 1 of the '170 patent (and its dependent claims). (Goodrich Decl., ¶¶ 18-23; 28-33).

Additional evidence that speaks to a long felt but unmet need for the inventions of the '640 patent include: U.S. Patent No. 5,542,087 to Neimat at 1:6-4:36 (7/12/2022 IDS, U.S. Pat. cite no. 2); U.S. Patent No. 5,230,047 to Frey at 1:30-2:12 (7/12/2022 IDS, U.S. Pat. cite no. 1); "Distributed Name Servers: Naming and Caching in Large Distributed Computing Environments" by Terry at §§ 1.1-1.3, 2.1, 2.5(7/12/2022 IDS, NPL cite no. 15); DNS RFC1034 Domain names Concepts and Facilities by Mockapetris at §§ 2.1-2.2 (7/12/2022 IDS, NPL cite no. 11); "An Adaptive Data Placement Scheme for Parallel Database Computer Systems" by Hua and Lee at § 1 (7/12/2022 IDS, NPL cite no. 5); "Design and Implementation of DDH: A Distributed Dynamic Hashing Algorithm" by Devine at § 1 (7/12/2022 IDS, NPL cite no. 4); "Scale in Distributed Systems" by Neuman at Abstract, §§ 1, 3.1-3.4 (7/12/2022 IDS, NPL cite no. 12); "Location-Independent Naming for Virtual Distributed Software Repositories" by Browne et al. at § 1 (7/12/2022 IDS, NPL cite no. 2); "A Model for Worldwide Tracking of Distributed Objects" by van Steen, Hauck, and Tanenbaum at § 1, 4 (7/12/2022 IDS, NPL cite no. 14); "The Core Legion

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

Object Model" by Lewis and Grimshaw at § 1, 2, 6 (7/12/2022 IDS, NPL cite no. 9); "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web" by Karger et al. at § 1 (7/12/2022 IDS, NPL cite no. 7); "Load Management in Distributed Video Servers" by Venkatasubramanian and Ramanathan at §§ 1.1 (7/12/2022 IDS, NPL cite no. 16); "Distributed Web Caching System with Consistent Hashing" by Sherman at Abstract, §§ 1.1-1.2 (7/12/2022 IDS, NPL cite no. 13); "Web Caching with Consistent Hashing" by Karger, Sherman, et al. at Abstract, § 1 (7/12/2022 IDS, NPL cite no. 8); "Locating Copies of Objects Using the Domain Name System" by Kangasharju et al. at Abstract, § 1 (7/12/2022 IDS, NPL cite no. 6); "Resource Location in Very Large Networks" by Partha Dasgupta at §§ 3.4, 3.5 (7/12/2022 IDS, NPL cite no. 17); Dynamic Load Balancing on Web-server Systems by Valeria Cardellini et al., IEEE Internal Computing, vol. 3, no. 3, pp. 28-39 at § 1, 2, 4 (7/12/2022 IDS, NPL cite no. 3); "Distributed cooperative Web servers" by Baker and Moon at Abstract, § 1, 2 (7/12/2022 IDS, NPL cite no. 1); Paul Albitz and Cricket Liu, DNS and BIND, O'Reilly & Associates, Inc., 3rd ed. 1998 at Preface, § 1 7/12/2022 IDS, NPL cite no. 18, which was mistakenly identified as "Dasgupta" in the SB-08, but was submitted to the Office with the IDS); U.S. Patent No. 6,212,521 to Minami at 1:37-3:35 (7/12/2022 IDS, U.S. Pat. cite no. 8); U.S. Patent No. 6,430,618 to Karger at 1:31-6:19 (7/12/2022 IDS, U.S. Pat. cite no. 11); U.S. Patent No. 6,553,420 to Karger at 1:36-6:26 (7/12/2022 IDS, U.S. Pat. cite no. 20); U.S. Patent No. 6,807,632 to Carpentier at 1:22-4:23(7/12/2022 IDS, U.S. Pat. cite no. 19).

## 2. Failure of others and unexpected results

Individuals and entities have written about the failure of others to develop technology that would enable a highly scalable information database, which was achieved by the technology of the asserted claims. For example, *Distributed Name Servers: Naming and Caching in Large Distributed Computing Environments* by Douglas Brian Terry ("Terry") (*see* 7/12/2022 IDS, NPL cite no. 15) observes that "[e]xisting distributed name services, which manage names based on their syntactic structure, may lack the flexibility needed by large, diverse, and evolving computing communities." Terry at p. 1 (Abstract).

Terry provides a summary of several distributed name services that were developed to manage and locate data in distributed database systems but were unable to manage highly scalable systems. For instance, Terry describes the "NIC Name Server" of ARPANET, which ran into

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

problems as it began to grow. Terry observed that "[w]ith the growth in size of the ARPANET and its expansion into the DARPA Internet . . . maintaining up-to-date host name to network address mappings became increasingly difficult on individual hosts." *Id.* at p. 8. According to Terry, "[t]he development of an experimental NIC Name Server" only "slightly alleviated the situation by allowing the host table information to be retrieved incrementally via network protocols." *Id.* As another example, Terry discusses the "DARPA Domain Name System," which suffered "inadequacies of central administration" but eventually gave way to "a decentralized scheme" that would "permit information on network entities to be distributed and replicated" on the DARPA Internet. *Id.* at 9. Terry also identifies a number of other systems that attempted to provide solutions for identifying and locating information in distributed databases, such as "BIND Server," "PUP Name Lookup Server," "Grapevine," "Clearinghouse," "CSNET Name Server," "Cambridge Name Server," "COSIE Name Server," and "R* Catalog Manager." *Id.* at 9-11. Terry describes how these systems work, *see id.* at 11-17, but notes that these systems "stress[] functionality, while performance considerations have remained of secondary importance." *Id.* at 17.

Terry observed that while "[s]ignificant work has been done in the area of communication protocols for accessing name services and in the area of database management systems for storing object attributes," "[t]he currently unresolved problems in designing name services concern how to manage large distributed name spaces." *Id.* at 20. According to Terry, existing technologies "fail to adequately address some of the problems ... for very large and diverse computing environments," including problems related to:

- "Name resolution" (e.g., with respect to limitations of "location-dependent names"),
- "Administrative control" (e.g., with respect to inflexible means for "[c]hanging an object's name"),
- "Overhead costs" (e.g., with respect to "[a] lack of scalability" and associated high costs that render large network applications "infeasible"),
- "Adaption" (e.g., with respect to existing technologies' "lack [of] flexibility to scale up to very large environments"), and
- "Performance" (e.g., with respect to "response times for name service lookups or updates").

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

*Id.* at 20-22. Terry noted "[t]he DARPA Internet's Domain Name System seems to come the closes to handling very large and diverse computing environments," but observed that "a more flexible approach to name management" was still needed. *See id.* at 22.

Additional evidence that speaks to the failures of others to solve the problem solved by the inventions of the '640 patent include: U.S. Patent No. 5,542,087 to Neimat at 1:6-4:36 (7/12/2022 IDS, U.S. Pat. cite no. 2); U.S. Patent No. 5,230,047 to Frey at 1:30-2:12 (7/12/2022 IDS, U.S. Pat. cite no. 1); "Distributed Name Servers: Naming and Caching in Large Distributed Computing Environments" by Terry at §§ 1.1-1.3, 2.1, 2.5(7/12/2022 IDS, NPL cite no. 15); DNS RFC1034 Domain names Concepts and Facilities by Mockapetris at §§ 2.1-2.2 (7/12/2022 IDS, NPL cite no. 11); "An Adaptive Data Placement Scheme for Parallel Database Computer Systems" by Hua and Lee at § 1 (7/12/2022 IDS, NPL cite no. 5); "Design and Implementation of DDH: A Distributed Dynamic Hashing Algorithm" by Devine at § 1 (7/12/2022 IDS, NPL cite no. 4); "Scale in Distributed Systems" by Neuman at Abstract, §§ 1, 3.1-3.4 (7/12/2022 IDS, NPL cite no. 12); "Location-Independent Naming for Virtual Distributed Software Repositories" by Browne et al. at § 1 (7/12/2022 IDS, NPL cite no. 2); "A Model for Worldwide Tracking of Distributed Objects" by van Steen, Hauck, and Tanenbaum at § 1, 4 (7/12/2022 IDS, NPL cite no. 14); "The Core Legion Object Model" by Lewis and Grimshaw at § 1, 2, 6 (7/12/2022 IDS, NPL cite no. 9); "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web" by Karger et al. at § 1 (7/12/2022 IDS, NPL cite no. 7); "Load Management in Distributed Video Servers" by Venkatasubramanian and Ramanathan at §§ 1.1 (7/12/2022 IDS, NPL cite no. 16); "Distributed Web Caching System with Consistent Hashing" by Sherman at Abstract, §§ 1.1-1.2 (7/12/2022 IDS, NPL cite no. 13); "Web Caching with Consistent Hashing" by Karger, Sherman, et al. at Abstract, § 1 (7/12/2022 IDS, NPL cite no. 8); "Locating Copies of Objects Using the Domain Name System" by Kangasharju et al. at Abstract, § 1 (7/12/2022 IDS, NPL cite no. 6); "Resource Location in Very Large Networks" by Partha Dasgupta at §§ 3.4, 3.5 (7/12/2022 IDS, NPL cite no. 17); Dynamic Load Balancing on Web-server Systems by Valeria Cardellini et al., IEEE Internal Computing, vol. 3, no. 3, pp. 28-39 at § 1, 2, 4 (7/12/2022 IDS, NPL cite no. 3); "Distributed cooperative Web servers" by Baker and Moon at Abstract, § 1, 2 (7/12/2022 IDS, NPL cite no. 1); Paul Albitz and Cricket Liu, DNS and BIND, O'Reilly & Associates, Inc., 3rd ed. 1998 at Preface, § 1 7/12/2022 IDS, NPL cite no. 18, which was mistakenly identified as "Dasgupta" in the SB-08, but was submitted to the Office with

the IDS); U.S. Patent No. 6,212,521 to Minami at 1:37-3:35 (7/12/2022 IDS, U.S. Pat. cite no. 8); U.S. Patent No. 6,430,618 to Karger at 1:31-6:19 (7/12/2022 IDS, U.S. Pat. cite no. 11); U.S. Patent No. 6,553,420 to Karger at 1:36-6:26 (7/12/2022 IDS, U.S. Pat. cite no. 20); U.S. Patent No. 6,807,632 to Carpentier at 1:22-4:23(7/12/2022 IDS, U.S. Pat. cite no. 19).

Much has also been written about the unlikelihood of the inventions of the asserted claims. *See, e.g., Resource Location in Very Large Networks* by Partha Dasgupta ("Dasgupta") §§ 3.4, 3.5 (*see* 7/12/2022 IDS, NPL cite no. 17). Dasgupta observed that "[w]hile such networks" as the Internet and telephone systems "are quite common, what is not so common is completely scalable, non-hierarchical naming that is independent of the entities location or affiliations." *Id.* at 156 (Abstract). According to Dasgupta, this problem "has been studied in many contexts," but "most results are not scalable for really large worldwide networks." *Id.* For example, Dasgupta discusses known technologies, such as "The Domaine Name System (DNS)," "Amoeba," "The V System," "Clouds," "Locus," "Clearinghouse," and "Galaxy," but finds them limited in terms of scalability because they rely on hierarchical naming. *Id.* at 157-158. While Dasgupta advocates for a non-hierarchical naming system to achieve "a scalable name service" and suggests that such solutions "may actually be implementable (or desirable)," Dasgupta observes that "[t]he bad news is that we have been unable to come up with a straightforward algorithmic solution to this problem, that is scalable and fault tolerant and works with feasible complexity." *Id.* at 159. Dasgupta initially posits that "such a algorithmic solution indeed may not exist." *Id.* Dasgupta ultimately concludes that "[t]here is no straightforward solution" and proffers only a "workable" solution with "plenty of room for improvement." *Id.* at 162.

### 3. Commercial success

Entities, including AWS, use the asserted claims in products accused of infringing claims 17, 18, and 24, like Amazon Web Services DynamoDB, and have had substantial commercial success. For example, DynamoDB customers include companies with extremely large-scale data storage and data management needs, including household names like Netflix (video entertainment streaming), Zoom (video conferencing platform), Disney (Disney+ video entertainment streaming), Dropbox (cloud-based data storage), Snap Inc. (Snapchat messaging ap), CapitalOne (mobile banking apps), Amazon (workflow engines for order fulfillment), and many others. Exhibit B (https://aws.amazon.com/dynamodb/customers/). Entities have written that "[m]any of

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

the world's fast-growing enterprises use Amazon's DynamoDB service to manage their big data," including "[e]nterprises such as Airbnb, Toyota, Capital One, and many more." Exhibit C (https://www.contino.io/insights/aws-dynamodb). Reasons for this significant commercial success include "DynamoDB's cost-effective, high performance, throughput, lower latency, and reduced cost of ownership." *Id.* DynamoDB is regarded as "one of the most popular cloud-based NoSQL database services," which "provides reliable, scalable, and highly available databases to users with millisecond range latency at any scale." Exhibit D (https://dynobase.dev/dynamodb-use-cases/). DynamoDB is said to be popular in (and has "revolutionized") a wide range of industry segments (described as "most industries worldwide"), including the "Gaming Industry" (e.g., improving multiplayer gaming), "Transportation Industry" (e.g., improving vehicle tracking), "Entertainment Industry" (e.g., improving customization of user experience), "Social Media Industry" (e.g., improving ability to feed information in real time), and "Retail Industry" (e.g., improving resiliency and persistence of shopping experience). *Id.* AWS boasts that "DynamoDB is popular with developers building serverless applications." Exhibit E (https://aws.amazon.com/getting-started/hands-on/purpose-built-databases/dynamodb/). DynamoDB is regarded as one of "the most popular options for NoSQL databases," "widely deployed," and "used by more than 100,000 AWS customers." Exhibit F (https://www.missioncloud.com/blog/resource-choosing-the-best-nosql-database-aws-dynamodb-vs-mongodb-performance). DynamoDB is considered one of the "market leaders for NoSQL databases." Exhibit G (https://www.bmc.com/blogs/mongodb-vs-dynamodb/).

The claimed inventions contain substantial overlap with the accused products. The benefits of the products accused of infringing claims 17, 18, and 24 – *i.e.*, the combination of massive scalability and throughput, high availability, low latency, and high durability, which are directly enabled by Kove's patented technology – are identified by AWS as defining features of DynamoDB. For example, AWS touts DynamoDB as "designed to run high-performance, internet-scale applications that would overburden traditional relational databases."[6] According to AWS, "DynamoDB is a key-value and document database that can support tables of virtually any size with horizontal scaling," which "enables DynamoDB to scale to more than 10 trillion requests

---

[6] Exhibit H (https://aws.amazon.com/dynamodb/features/?pg=dynamodbt&sec=hs).

Control No. 90/019,035
Atty. Dkt. No. KOVE-170EPR035

per day with peaks greater than 20 million requests per second, over petabytes of storage."[7] AWS states that DynamoDB "delivers low-latency performance at any scale"[8], has a throughput capacity that is "practically unlimited"[9], and has "99.999% availability"[10].

## V. *Conclusion*

All of the stated grounds of rejection have been properly traversed, accommodated, or rendered moot. Patent Owner therefore respectfully requests that the Examiner reconsider all presently outstanding rejections and that they be withdrawn. Patent Owner believes that a full and complete reply has been made to the outstanding Office Action and, as such, the present reexamination proceeding is in condition for a Notice of Intent to Issue a Reexamination Certificate. If the Examiner believes, for any reason, that personal communication will expedite this proceeding, the Examiner is invited to telephone the undersigned at the number provided.

Prompt and favorable consideration of this Reply is respectfully requested.

Respectfully submitted,

REICHMAN JORGENSEN LEHMAN & FELDBERG LLC

/Naveed Hasan/
Naveed Hasan, Reg. No. 72,688
Signed under 37 C.F.R. § 1.34 Acting in a Representative Capacity for Patent Owner

Date:   8/11/2022
1909 K Street, NW, Suite 800
Washington, DC 20006
(202) 894-7305

---

[7] *Id.*
[8]    Exhibit    I    (https://aws.amazon.com/blogs/database/amazon-dynamodb-auto-scaling-performance-and-cost-optimization-at-any-scale/).
[9] Exhibit J (https://aws.amazon.com/dynamodb/faqs/?trk=94bf4df1-96e1-4046-a020-b07a2be0d712&sc_channel=ps&sc_campaign=acquisition&sc_medium=ACQ-P|PS-GO|Brand|Desktop|SU|Database|DynamoDB|US|EN|Text|LE&ef_id=Cj0KCQjwuaiXBhCCARIsAKZL43n_9aEQrFdTlWqnipW7mQbvIbqDk_kV84UNDDs5wDKIfmkitlZHRbUaAgoZEALw_wcB:G:s&s_kwcid=AL!4422!3!610000!01513!e!!g!!aws%20dynamodb)
[10] Exhibit K (https://aws.amazon.com/dynamodb/).