IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOVE IO, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON WEB SERVICES, INC., <br><br> Defendant. | Civil Action No. 1:18-cv-08175 <br><br> Judge Matthew F. Kennelly <br><br> Jury Trial Demanded |

## JOINT STATUS REPORT

Pursuant to the Court's November 29, 2022 order, Plaintiff Kove IO, Inc. ("Kove") and Defendant Amazon Web Services, Inc. (collectively, the "Parties") submit this joint status report and proposed orders on the outstanding discovery motions (Dkts. 405, 409).

**KOVE'S STATEMENT**

In the weeks since the November 29 status conference, AWS has not produced any additional documents in connection with the outstanding motions. The information Kove seeks falls into two general categories. *First,* for some categories of information, AWS promises to produce if it can locate the information (i.e., it is not objecting to production). *Second*, for other categories of information, AWS objects and refuses to produce. Kove has submitted a Proposed Order (attached as Exhibit A). In that proposed order, the categories to which AWS objects are highlighted in yellow, and the categories to which it does not object are highlighted in green.

**1. Unobjected-to Categories:** There are several categories of documents that AWS has agreed to search for and produce. *See* Dkt. 544 (Kove's Slide Deck on Pending Motions ("Kove Slides")) at 10, 20. These are highlighted in green in the Proposed Order (Nos. 1a, 1b, 2b, 2c, 2d,

1

and 2e). AWS has not yet produced any additional documents with respect to any of these categories. AWS asserts it is "still investigating." It has made this same "still investigating" representation for years, including in pre-motion correspondence, in its written opposition to the motions, at the January oral argument in front of Judge Pallmeyer, and at the Court's most recent oral argument.[1] Indeed, the parties are in almost exactly the same position as they were two years ago. *See* Dkt. 276 at 1-2 ("AWS has thus far failed to produce several key categories of documents, despite having agreed to do so.").

AWS's "investigation" remains at such a preliminary stage that, for several categories, AWS cannot even state whether the investigation will yield any of the information Kove seeks. For other categories, AWS has indicated it likely will *not* be able to locate the requested information. But Kove has pointed to evidence showing that these documents appear to exist, such that AWS's representations that it hasn't located them through a "reasonable search" at best indicate that AWS's search hasn't been reasonable. As detailed in Kove's briefs and in substantial correspondence between the parties, AWS's own documents and sworn witness testimonies belie AWS's insistence that it does not have the requested information.[2]

To help break the logjam, Kove respectfully requests that the Court order AWS to provide sworn declarations that detail AWS's search and collection efforts and to make each declarant available for a limited document deposition. This approach is consistent with what other courts

---

[1] *See* Dkt. 276 at 3 n.6 (providing a detailed account of AWS's numerous "still investigating" assertions from 2019-2021) (citing Dkt. 277 (Cardenas-Navia Dec.)); Dkt. 422 (AWS Opposition to Finance Motion) at 7 ("AWS is now searching for additional usage and revenue information ... ."), 10 ("AWS has agreed to search for the cost data it maintains ... ."); Dkt. 505 (1/28/22 Hr'g Tr.) at 13:6-13:10 ("[THE COURT:] With respect to pricing category materials, AWS is making additional -- is investigating that further and potentially producing more information.").

[2] *See, e.g.*, Kove Slides at 17 (AWS tracks the usage, financial, and internal accounting information Kove seeks), 30-32, 44 (AWS tracks and maintains the information Kove seeks in its Hardware Motion); Dkt. 480 (Kove Finance Motion Sur-Reply) at 2-5.

have done in similar circumstances. *E.g.*, *McMaster v. Kohl's Dep't Stores, Inc.*, 2020 WL 755379, at *2 (E.D. Mich. Feb. 15, 2020) (ordering party to produce a sworn declaration "stating in detail what was done to locate the documents," which the court ordered); *Ruiz-Bueno v. Scott*, 2013 WL 6055402, at *4 (S.D. Ohio Nov. 15, 2013) (requiring defendants to produce sworn statement about search process because plaintiff's concerns were reasonable, defendants were not forthcoming, and "the need to get this case moving toward[s] resolution"); *EnvTech, Inc. v. Suchard*, 2013 WL 4899085, at *5 (D. Nev. Sept. 11, 2013) ("Information regarding the search conducted should be provided through declarations under oath detailing the nature of the efforts to locate responsive documents." (quotation marks omitted)); *see also H Guys, LLC v. Halal Guys Franchise, Inc.*, 2020 WL 3578026, at *5 (N.D. Ill. July 1, 2020) ("[I]t should go without saying" that plaintiff is entitled to depose declarants regarding the substance of discovery declarations on which defendant relies).

The Court previously ordered similar relief during the January 28, 2022 hearing, when it ordered AWS to designate a corporate witness to testify as to how AWS stores and maintains internal accounting documents. This deposition helped identify specific areas for AWS to search and ultimately led to the production of documents AWS had previously represented it could not locate. Kove believes similar depositions will yield similar results.

**2. Objected-To Categories.** Highlighted in yellow in the Proposed Order are categories AWS objects to (1c, 1d, and 2a) on grounds of burden.

AWS objects to producing usage, revenue, and pricing information for AWS's top internal and external customers (Proposed Order Nos. 1c and 1d). This customer-level information is needed to prove Kove's damages, as it shows the preferences and usage patterns of AWS's most significant customers – i.e., the preferences and usage patterns AWS would prioritize at the

3

hypothetical negotiation. Aggregated data is insufficient because it mixes top-customer information with information from the more voluminous (but less significant) "average" customers in a way that cannot be disentangled. For example, for Dynamo DB, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[3] Understanding what is important to these top customers is key to understanding how AWS benefits form Kove's patented technology.

AWS claims aggregate usage information is representative of AWS's top customers, but offers no support for that statistical assumption. Kove is entitled to the data needed to prove its damages reliably. There is also good reason to believe aggregate data corresponding to *all* customers does not accurately reflect the preferences and usage patterns for the *top few* customers. The argument AWS relies on to the contrary is not in its underlying briefing. *See* Dkt. 422 at 11-16.

AWS also opposes Kove's request on grounds of burden. But AWS's only support for that claim is the declaration of Chithra Perumal, Dkt. 422-1, which is limited to DynamoDB (and says nothing about the other accused product, S3), conflates multiple categories of requested relief (which obscures the ability to assess burden with respect to any specific request), conflicts with sworn testimony from an AWS designee, and lacks supporting details.[4] *See Jenkins v. White Castle Mgmt. Co.*, 2014 WL 3809763, at *2 (N.D. Ill. Aug. 4, 2014) ("Undue burden or expense ... must be shown by 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981))).

---

[3] *See* AMZ_KOVE_000463931.

[4] *Compare, e.g.*, 2/17/22 Deposition Transcript of Kevin Gasper at 233:3-234:6 (explaining that AWS's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and confirming that it ▮▮▮▮▮▮▮▮▮▮▮▮) *with* Dkt. 422-1 (Perumal Declaration) ¶ 3 (claiming that the information Kove seeks is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

AWS has the information in its database but states it will not pull it. Instead, it has only committed to search for already-existing business documents that *might* reflect *some* of this information (if they exist at all). AWS has not explained what information it expects to exist, its volume, or what timeframes it covers, and it states that it will not provide whatever it finds until December 30. AWS has stated that even *it* does not believe this approach will yield much. In other words, AWS's "compromise" is to search for a small subset of documents it does not think exists, and not provide the results (if any) until December 30.

Kove's proposed order requires AWS to provide the requested information because AWS has the information, knows where it is, and has not demonstrated that it would be unduly burdensome to do so. Kove's proposed order also requires AWS to provide a detailed declaration describing its search and collection efforts and to produce the declarant for a document deposition.

Next, as to category 2a in the Proposed order (cost, capacity, and utilization data for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), AWS says it is investigating whether it has the requested information but will not agree to produce it. *See* Kove Slides at 25-28. AWS intimates that it would be burdensome to collect this information but offers nothing to meet its obligation of showing that any such burden is undue. *See Jenkins*, 2014 WL 3809763, at *2. Documents in AWS's productions show that AWS tracks and should have ready access to the information Kove seeks. *Id.* at 30-32. Kove's proposed order requires AWS to provide the requested information, to provide a detailed declaration describing its search and collection efforts, and to produce the declarant for a document deposition.

**AMAZON'S STATEMENT**

To date, Kove has issued 240 requests for production, 90 30(b)(6) topics, and serial correspondence expanding and altering those requests. These ever-expanding requests have

demanded data and documents beginning in 2006, over 12 years before Kove filed this case in 2018. Amazon's lengthy search for and collection of documents is due to both Kove's continually multiplying discovery demands for information dating back to AWS's inception and how Amazon maintains its documents and data. Indeed, Amazon founded AWS ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Amazon.com. So, for example, AWS's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ launched its first products in 2006.

But per the Court's guidance, the Parties have worked to narrow and resolve many of the issues Kove raised in its two pending motions. Through those discussions, Kove provided additional clarity on the information it's seeking and why. While Amazon still maintains the positions detailed in its oppositions to these motions, to move discovery forward Amazon has conducted additional searches for information based on Kove's narrowed and clarified demands. Amazon's proposed order (attached as Exhibit B) codifies its agreements on the vast majority of the pending issues and details the three areas of Kove demands—document depositions and declarations, customer specific usage and financial data, and hardware-related data—that Amazon still opposes.

**Agreed-To Categories**

Over the past month, Amazon has worked with 11 distinct teams to search for documents and data responsive to Kove's narrowed requests. These teams include the finance teams for each of the two accused services (S3 and DynamoDB), the performance metrics teams for each of those services, the program and general manager teams for each of the services, the central finance team, the ▮▮▮▮▮▮▮▮▮▮▮▮▮ team (which handles ▮▮▮▮▮▮▮▮▮▮▮▮▮▮), the S3 business

intelligence team, the SimpleDB engineering team, and the ███████████ (which handles ███████████████████████ of AWS's over 200 services).

Through near-daily emails and calls with these teams, Amazon has collected some of the documents within the narrowed scope the Parties discussed, confirmed that some can't be located after a reasonable search, and is working to determine whether others can be located and produced. For those documents already located and collected, Amazon is confirming that the data includes all available information before producing it, to reduce the possibility of any subsequent Kove requests for additional data. Indeed, at the Parties' most recent meet and confer, Amazon detailed for Kove the documents it has been able to locate, including financial and usage documents for S3 and metrics data for DynamoDB. Since then, Amazon has collected additional metrics data for DynamoDB, additional usage data for S3, and financial data for DynamoDB. And Amazon has informed Kove that it anticipates completing its investigation and document production by December 30. Thus, Kove's assertions that Amazon's investigation is continually ongoing are incorrect.

**Contested Categories**

Three categories of discovery remain contested: separate declarations and depositions regarding document collection, customer specific information (financial, usage, and pricing data), and hardware data. This discovery isn't proportional to the needs of the case, as each category is cumulative, burdensome, and seeks irrelevant information.[5]

Kove's requests for detailed declarations and depositions on document issues weren't raised in Kove's briefing on the pending motions and would unnecessarily require multiple

---

[5] The parties are continuing to discuss a potential agreement on the hardware related data. The parties will provide an update on any agreement by the next status report.

Amazon witnesses to be deposed twice in close succession.[6] As noted, Amazon worked with 11 separate teams to collect the relevant data. Members of these teams will also be Amazon's substantive deponents. So, at least seven of the witnesses who would be deposed before January 20 under Kove's proposal would be deposed again before the March 17 close of fact discovery. And during those substantive depositions, the witnesses will be designated on document collection issues within the scope of the substantive topics. Kove's proposal doesn't streamline discovery and reduce the number of depositions; rather, it multiplies both. And, before the stay, Kove filed a motion to compel separate depositions on document collection issues,[7] which Judge Finnegan denied.[8] And contrary to Kove's assertion, courts don't allow such document collection depositions before substantive depositions in similar circumstances. Indeed, the cases Kove cites are readily distinguishable. For example, in *Ruiz-Bueno*, the defendant had only produced a "small number of documents" and counsel didn't provide any details on how it had conducted its search.[9] Neither is true here. Amazon has detailed the steps it's taken to collect documents, including the teams it has asked, and the databases searched. And, unlike the defendant in *Ruiz-Bueno*, Amazon has produced ▇▇▇ documents totaling ▇▇▇ pages to date with more on the way. In addition

---

[6] Kove first raised this issue over the Thanksgiving weekend and four days before the November 29 hearing.

[7] *See* Dkts. 276, 286, and 290.

[8] *See* Dkt. 303 at 39:9-11 ("But based on what I've read, I've seen insufficient justification to start with these separate [document collection based] depositions at this time.").

[9] *Ruiz-Bueno, III v. Scott*, Case No. 2:12-cv-0809, 2013 WL 6055402, at *3-4 (S.D. Ohio Nov. 15, 2013) (discussing the low volume of produced documents and defendants' counsel reticence to provide details of its searches); *see also EnvTech, Inc. v. Suchard*, Case No. 3:11-cv-00523, 2013 WL 4899085, at *6 (D. Nev. Sept. 11, 2013) (defendant admitted that documents existed, but asserted that he didn't have access to them); *H Guys, LLC v. Halal Guys Franchise, Inc.*, 2020 WL 3578026, at *5 (N.D. Ill. July 1, 2020) (defendant willingly submitted a declaration regarding its document collection efforts and could be deposed on that declaration).

to Judge Finnegan's ruling here, courts have regularly denied such requests, finding the burden of the depositions outweighs any potential benefit.[10] Even so, to move discovery forward, the Parties are discussing a compromise regarding potential document depositions that would be limited in scope and length.

And the Parties agree that Amazon's top customers account for the vast majority of the accused services' usage. As Kove asserted, for S3 █████████████████████████[11] And as Kove notes above, for DynamoDB, Amazon's documents state that the ████████ ████████████████████████[12] Amazon has produced that overall revenue and usage data by month for each usage type as far back as it available.[13] Because the top customers drive overall usage, Kove already has data on the particular usage types that Amazon's largest customers use by month for as far back as Amazon maintains the data.

And the collection of the customer specific data is unduly burdensome. As Ms. Perumal, the Director of Finance for DynamoDB, detailed in her declaration, Amazon ████████ ███████████████████████████████████ in a readily available database.[14] Instead, the ████████████████████████████████████████████████████ ████████. Data going back in time ████████████████████████████. As Ms. Perumal

---

[10] *See Freed v. Home Depot USA, Inc.*, Case No. 18-cv-359, at *5 (S.D. Cal. Feb. 13, 2019) (quashing plaintiff's deposition notice because defendant would put up a subsequent witness on the discovery itself and whether additional information existed); *Watkins v. Hireright, Inc.*, Case No. 13-CV-1432, at *3 (S.D. Cal. Nov. 18, 2013) (finding that a document preservation deposition wasn't needed in light of Defendant's "voluminous" production of 600 pages of documents).

[11] Dkt. 405 at 13.

[12] *Supra* at 4, citing AMZ_KOVE_000463931.

[13] *See, e.g.,* Ex. I to Dkt. 422, Ex. BB to Dkt. 474. Since that motion, Amazon has produced even more granular usage and revenue data.

[14] Dkt. 422-1, C. Perumal Declaration at 1-2.

9



stated, to collect the available data by customer, her finance team would ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. It would take that person ▮▮▮▮▮▮▮ to compile it.[15] The same burden would apply to S3 since it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[16]

And Kove mischaracterizes Amazon's compromise offer. Amazon agreed to search the relevant document repositories for any reports or other documents created and maintained in the ordinary course of its business that include snapshots of usage and revenue information by customer at particular points in time. The search would include both external customers and internal customers (i.e., other AWS or Amazon services use of S3 and DynamoDB). Amazon is currently identifying documents—in addition to those it has already produced—that would fall within this compromise proposal.

Similarly, given Kove's recent, more detailed explanation of the basis for its hardware requests, to explore a potential compromise Amazon is determining what information can be produced.[17] Kove noted that it would agree to Amazon providing snapshots of the requested data during the damages period. Amazon recently learned that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[18] But it's determining what type of cost, utilization, and capacity data is available at the subcomponent level, if any. Amazon anticipates being able to provide Kove with additional information before the next status report.

---

[15] Dkt. 422-1, C. Perumal Declaration at 2.

[16] Mr. Gasper's testimony doesn't conflict with Ms. Perumal's declaration, as Kove asserts. Mr. Gasper testified that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dep. Tr. of K. Gasper at 173:19-174:12. And Mr. Gasper never testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was readily available or that it was in the ▮▮▮▮▮▮▮. See id. at 233:3-234:6.

[17] Amazon continues to oppose the full scope of Kove's request. See Dkt. 428 at 6-8. Amazon has already produced the overall server cost data Kove seeks in the profit & loss data as a ▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. B to Dkt. 428.

[18] Based on discussions with the S3 finance team. And Amazon maintains millions of relevant servers at each of its datacenters and maintains four such datacenters in the United States.

Dated: December 19, 2022

Respectfully Submitted,

| | |
|---|---|
| KOVE IO, INC. | AMAZON WEB SERVICES, INC. |
| By: /s/ Khue Hoang | By: /s/ R. William Sigler |

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL  60601
Telephone: (312) 602-5037

Courtland L. Reichman (*pro hac vice*)
creichman@reichmanjorgensen.com
Shawna L. Ballard (*pro hac vice*)
sballard@reichmanjorgsensen.com
Taylor Mauze (*pro hac vice*)
tmauze@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

Khue V. Hoang (*pro hac vice*)
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (*pro hac vice*)
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com
Philip Eklem (*pro hac vice*)
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Lisa N. Phillips (*pro hac vice*)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Ave, NW
Suite 400
Washington, D.C. 20015
Telephone: (202) 362-3500

*Attorneys for Defendant Amazon Web Services, Inc.*

FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310

*Attorneys for Plaintiff Kove IO, Inc.*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and exact copy of the foregoing was filed electronically on December 19, 2022, with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all registered counsel of record.

                                              */s/ R. William Sigler*
                                              R. William Sigler