# Exhibit B

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Hon. Matthew F. Kennelly |
| v. | Jury Trial Demanded |
| Amazon Web Services, Inc., | |
| Defendant. | |

## KOVE IO, INC'S ~~SECOND~~ THIRD AMENDED FINAL ENFORCEABILITY AND VALIDITY CONTENTIONS

Plaintiff Kove IO, Inc. ("Kove") hereby submits its ~~Second~~ Third Amended Final Enforceability and Validity Contentions ("Contentions") in response to Defendant Amazon Web Services, Inc.'s ("AWS") Fourth Amended Final Invalidity Contentions ("FAFIC"), pursuant to Local Patent Rule ("LPR") 3.2 and 3.4, the Amended Scheduling Order (ECF No. 180), the Court's Order entered on September 17, 2021 (ECF No. 418), the Court's Claim Construction Order (ECF No. 484), ~~and~~ the Court's Minute Entry following the Claim Construction Order (ECF No. 489), and the Court's January 14, 2023 Minute Entry (Dkt. No. 580).

### I. KOVE'S RESERVATIONS OF RIGHTS

It is AWS's burden to prove invalidity and unenforceability by clear and convincing evidence, but, as demonstrated in Kove's Contentions, AWS has failed to carry its burden for any asserted claim. Kove's Contentions are necessarily limited to information now known to it.

Kove herein addresses, as best as it is presently able to based on the limited information available, AWS's new claim construction proposals, as set forth in Appendix A to AWS's Motion for Additional Claim Construction Briefing (Dkt. 539). In doing so, Kove in no way agrees with

1

or endorses AWS's claim construction proposals, which have not been addressed or ordered by the Court. Kove does not agree that any additional claim construction is necessary or proper and does not agree that any of AWS's claim construction proposals are justified or correct. Indeed, Kove contends that AWS's claim construction proposals are unsupportable and without merit. Kove further notes that AWS's new claim construction proposals are vague and confusing, including as to which terms in each claim the construction is supposed to apply to, and as to the proposed constructions themselves. Kove reserves all rights to further amend its Contentions as new information comes to light and if the Court orders and further claim constructions. Kove's validity-related theories herein should be understood as being in addition to, or in the alternative to, one another, and its Contentions are to be understood as a whole.

In light of the foregoing, Kove reserves all rights to amend and/or supplement its Contentions as additional information becomes available, once AWS complies with the LPR, if AWS is permitted to make any amendments or supplementations to its contentions, theories, or evidence in support thereof, and in light of any Court order on claim construction. Kove further reserves all rights to rely on additional evidence in support of its Contentions.

## II. KOVE'S CONTENTIONS

### A. AWS's Failure to Establish That Its References Are Prior Art

The Asserted Claims are entitled to the following priority dates:

'170 Patent

- Claims 1, 2, 6, 8, 12, 15, 17: at least as early as October 28, 1999

'640 Patent

- Claims 17, 18, 24: at least as early as October 28, 1999

'978 Patent

- Claims 3, 6, 10, 14: at least as early as October 28, 1999

2

- Claims 17, 23, 24, 30: at least as early as June 2, 2000

AWS bears the burden of proving that each of its references qualify as pre-AIA 35 U.S.C. § 102 prior art for the Asserted Claims, but it has failed to do so. In particular, AWS has not met its burden of showing that the following references are prior art for one or more of the Asserted Claims:

- Domain Name System ("DNS"): AWS has failed to establish any such system was in operation, publicly used, sold, or offered for sale before the priority dates of the Asserted Claims, and to establish that any of the documents AWS identifies refer to any identified system much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under LPR 3.1 and 3.3 and ECF No. 54.

- Cache Resolver System: AWS has failed to sufficiently identify any version of any Cache Resolver system, to produce any such system, to establish that any such system was in operation, publicly used, sold, or offered for sale before the priority dates of the Asserted claims, and to establish that any of the documents AWS identifies refer to any identified system, much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under LPR 3.1 and 3.3 and ECF No. 54.

- All non-patent references: AWS has failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including Terry, RFC1034, Hua DBMS, Devine DDH, Neuman, Browne, van Steen, Lewis, Karger '97, Venkatasubramanian, Dasgupta, Sherman, Karger/Sherman, Kangasharju,

Cardellini, Baker, BIND and DNS, all versions of BIND, RFC1035, RFC2168, and any other materials referenced in the FAFIC.

Additional reasons why AWS has failed to establish that its references are prior art are set forth in Exhibits 1A–1D, 2A–2D, and 3A–3D.

**B.** **Response to AWS's Anticipation and Obviousness Arguments**

As set forth in Exhibits 1A–1D, 2A–2D, and 3A–3D, AWS fails to establish that any Asserted Claims are anticipated or obvious. Additionally, the following objective indicia of non-obviousness apply to each of the Asserted Claims:

- Copying: entities, including AWS, have copied the patented inventions, as evidenced by Kove's operative infringement contentions (incorporated by reference) and the many similarities between the design, operation, and marketing of the accused AWS products and the Patents-in-Suit.

- Long-felt-but-unsolved-need: entities have written about the long need for technology that would enable a highly scalable information database. *See, e.g.*, Neimat at 1:6-4:36; Frey at 1:30-2:12; Terry at §§ 1.1-1.3, 2.1, 2.5; RFC1034 at §§ 2.1-2.2; Hua DBMS at § 1; Devine DDH at § 1; Neuman at Abstract, §§ 1, 3.1-3.4; Browne at § 1; Van Steen at § 1, 4; Lewis at § 1, 2, 6; Karger '97 at § 1; Venkatasubramanian at §§ 1.1; Sherman at Abstract, §§ 1.1-1.2; Karger-Sherman at Abstract, § 1; Kangasharju at Abstract, § 1; Dasgupta at §§ 3.4, 3.5; Cardellini at § 1, 2, 4; Baker at Abstract, § 1, 2; Bind and DNS at Preface, § 1; Minami at 1:37-3:35; Karger '618 at 1:31-6:19; Karger '420 at 1:36-6:26; Carpentier at 1:22-4:23.

- Failure of others: entities have written about the failure of others to develop technology that would enable a highly scalable information database. *See, e.g.*,

Neimat at 1:6-4:36; Frey at 1:30-2:12; Terry at §§ 1.1-1.3, 2.1, 2.5; RFC1034 at §§ 2.1-2.2; Hua DBMS at § 1; Devine DDH at § 1; Neuman at Abstract, §§ 1, 3.1-3.4; Browne at § 1; Van Steen at § 1, 4; Lewis at § 1, 2, 6; Karger '97 at § 1; Venkatasubramanian at §§ 1.1; Sherman at Abstract, §§ 1.1-1.2; Karger-Sherman at Abstract, § 1; Kangasharju at Abstract, § 1; Dasgupta at §§ 3.4, 3.5; Cardellini at § 1, 2, 4; Baker at Abstract, § 1, 2; Bind and DNS at Preface, § 1; Minami at 1:37-3:35; Karger '618 at 1:31-6:19; Karger '420 at 1:36-6:26; Carpentier at 1:22-4:23.

- Commercial Success and Industry Praise: entities, including AWS, use the Asserted Claims and have had substantial commercial success. Also, the inventions of the Asserted Claims attracted substantial interest from investors in OverX, Inc. and Kove IO, Inc. Also, the type of distributed data storage technology described in the Asserted Claims have been recognized by the MIT Technology Review as one of the top 10 emerging technologies that would change the world. Complaint, Ex. 1. Also, the Patents-in-Suit have each been cited by more than 100 later-filed patent applications.

- Skepticism of Skilled Artisans: entities have written about the unlikelihood of the inventions of the Asserted Claims. *See, e.g.*, Dasgupta, §§ 3.4, 3.5. Also, when the inventions of the Asserted Claims were presented at Yale University, the audience did not believe the inventions were possible. *See, e.g.*, KOV_00034264-292.

Kove also incorporates by reference its response to AWS's Interrogatory No. 4 and any amendments and/or supplements thereto.

**C.**   **Response to AWS's Invalidity Contentions Under 35 U.S.C. § 112**

Kove denies that any asserted claim is invalid under 35 U.S.C. § 112 ¶ 1 or § 112 ¶ 2.  The FAFIC fails to provide "a *detailed* statement" regarding invalidity under § 112, as required under the LPR.  Instead, for example, AWS identifies various terms but provides little to no explanation as to why the person of ordinary skill in the art would not be able to ascertain the scope of the claim limitation.  Such conclusory assertions do not sufficiently disclose Amazon's theories of invalidity.  *See, e.g., Mediatek Inc. v. FreeScale Semiconductor, Inc.*, 2014 U.S. DIST. LEXIS 22422, at *19-20 (N.D. Cal. Feb. 21, 2014) (holding disclosure in invalidity contentions inadequate when it did "nothing more than state that a theory of 'indefiniteness, written description/enablement' is asserted as to this term" and where defendant failed to "explain in even the most basic terms why" the written description was inadequate).

Regarding AWS's claims of invalidity under § 112 ¶ 2, each of the identified claim limitations, read in light of their respective specifications and prosecution histories, informs those skilled in the art with reasonable certainty as to the scope of the invention.  Kove identifies at least the following intrinsic support for the claim terms AWS alleges are indefinite under 35 U.S.C. § 112, while reserving all rights to rely on additional supporting evidence:

- "based on a hash function" as found in claims 1 and 2 of the '170 patent, and "hash table generated with the hash function" as used in claim 2 of the '170 patent patent:
    - AWS contends that a skilled artisan would not have understood the scope of "based on a hash function" and "hash table generated with the hash function" as used in claims 1 and 2 of the '170 patent because the patent does not explain "how to use the 'hash function,' how it works, what it does, or what it means for a 'portion' of 'data location information' to be 'based on' a 'hash function used to organize the data location information across the plurality of data location servers.'  To the contrary, the '170 patent expressly sets forth, for example, that a hash function such as "hashpjw" may be applied to the "identifier string" and that the "function result" be used as "an index" into the hash table of location servers (called "NDTP servers"

in the specification) to determine the portion of data location information that corresponds to that identifier string. *See, e.g.*, '170 patent at 15:12-16:20. Moreover, the person of ordinary skill in the art ("POSA") would understand that the NDTP server table referenced within the specification is a hash table generated by a hash function. *Id.* In light of the intrinsic evidence and their background knowledge, the POSA would understand these terms with reasonable certainty.

- o Exemplary specification support:
  - ▪ '170 patent at 15:12-16:30; Fig. 9 (and describing text); current and original claims.

- o Exemplary file history support
  - ▪ '640 Prosecution History at 8/9/2005 Amendment/Request for Reconsideration at 9 (discussing "distributed hash table").

- "performance criterion" and "predetermined performance limit" as found in claim 17, 23, 24, and 30 of the '978 patent:
  - o AWS contends that a "skilled artisan would not have understood the bounds of "performance criterion" and "predetermined performance limit" because the '978 patent "does not explain the range of 'performance criteria,' how to determine a 'limit' for 'performance criterion,' or what it means for a 'performance criterion' to be 'predetermined.'" To the contrary, the '978 patent expressly discloses that a "performance criterion" may include "storage capacity" and "transaction rate." '170 patent at 20:7-31. The '978 patent also, for example, that a predetermined transaction rate limit may be the "number of requests for a particular URI" made by clients in Paris but serviced by location servers in Chicago, and that once the number of requests is breached, the location servers in Chicago would transfer the corresponding identifier/location mappings to location servers in Paris. *Id.* at 21:24-22:16. In light of the intrinsic evidence and their background knowledge, the POSA would understand these terms with reasonable certainty.
  - o Exemplary specification support:
    - ▪ '978 patent at 2:53-3:4, 15:45-62, 19:50-20:46, 21:35-48, 21:24-22:16, Figs. 22, 23 (and describing text); original and current claims.
  - o Exemplary file history support:

- ▪ '978 FH at 02/22/2006 11/01/2006 Applicant Arguments at 11-12;
- ▪ Provisional 60/209,070 at 12-14, 29-34, 37-39;
- ▪ Provisional 60/277,408 at 7-8;
- ▪ Originally filed '978 claims including claims 24, 29, 30.

- "first data location server..." as found in claims 17, 23, 24 and 30 of the '978 patent
  - o AWS contends that the limitation "first data location server" is indefinite because the term "first data location server" lacks antecedent basis. Clerical or typographical errors resulting in inadvertent lack antecedent basis, however, do not per se render a term indefinite. *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1376 (Fed. Cir. 2008) (noting "well-settled rule that claims are not necessarily invalid for a lack of antecedent basis"). The POSA would understand the "first data location server" to be the same as the "first location server," and distinct from a "second data location server." In light of the intrinsic evidence and their background knowledge, the POSA would understand these terms with reasonable certainty.
  - o Exemplary specification support:
    - ▪ '978 patent at 19:50-20:46, 21:35-48, 21:50-22:16, Fig. 22 (and describing text); original and current claims.
  - o Exemplary file history support:
    - ▪ Provisional 60/209,070 at 12-14, 41-42;
    - ▪ Provisional 60/277,408 at 4;
    - ▪ Originally filed '978 claims including claims 24, 29, 35.

- "programming logic … configured to return, in response to a location query related to a desired entity, a location message … comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity" as found in claim 6 of the '170 patent
  - o AWS contends that this limitation is indefinite because "a skilled artisan could not discern whether the server returns two messages or one message if the location

server lacks location information for the desired entity." There is, however, no such ambiguity in the limitation, which expressly states that only the redirect message is sent back "if the location server lacks the location information for the desired entity." In light of the intrinsic evidence and their background knowledge, the POSA would understand these terms with reasonable certainty.

- o Exemplary specification support:
  - ▪ '170 Patent at Figs. 9, 12 (and describing text); 1:19–25 (Microfiche Appendix); 6:50–7:4; 8:9-30; 9:23–29; 14:42–16:32; 17:26–19:27; claims 13, 15; original and current claims;
- o Exemplary file history support:
  - ▪ Provisional 60/153,709 at Figs. 1-2 (and describing text); 3, 8–10, 26-29;
  - ▪ '170 Prosecution History at 2/13/2006 Claims 5-16; *Id.* at 9/6/2006 Claims 20-29; *Id.* at 3/2/2009 Claims 20-29; *Id.* at 3/2/2009 Applicant Arguments/Remarks Made in an Amendment;
  - ▪ '640 Prosecution History at 9/13/2000, claims 5-16.

AWS also contends that claims 3, 6, and 10 of the '978 patent, claims 1, 2, 6, 8, and 12 of the '170 patent, and claims 17, 18, and 24 of the '640 patent are indefinite because they include both apparatus and method limitations. AWS' argument is unavailing, however, because each of the apparatus claims it challenges merely "place[s] functional limitations on the apparatuses by describing the capabilities of the apparatuses." *Yodlee, Inc. v. CashEdge,* 84 U.S.P.Q.2d. (BNA) 1594, 1597-98 (N.D. Cal. 2006). Such functional limitations within apparatus claims "do not constitute invalid mixed method-apparatus claims." *Id.* Claim 1 of the '978 patent, for example, describes a system comprised of location servers containing "programming logic" enabling those location servers to "return a location message" in response to a "location query." Such functional language merely "describes the capability" of a system of location servers, and consequently does not render claim 1 an invalid mixed method-apparatus claim. Similarly, claims 3, 6, and 10 of the '978 patent, claims 1, 2, 6, 8 and 12 of the '170 patent, and claims 17, 18 and 24 of the '640 patent

use merely functional language to describe the capabilities of the apparatuses they describe, and do not constitute mixed method-apparatus claims.

AWS also contends that certain limitations appearing within the asserted claims are indefinite under 35 U.S.C. § 112, ¶ 6. Amazon's contentions in this regard fail to comply with LPR 2.3 because they are utterly devoid of specificity, failing to describe in even the barest detail why it contends that these limitations, none of which contain the words "means for" or "step for," should be construed as invoking 35 U.S.C. § 112, ¶ 6.

The identified limitations are not means plus function limitations: as set forth below, each of the challenged limitations has a corresponding structure recited in the body of the associated claim. Additionally, in the event that these limitations are construed as invoking 35 U.S.C. § 112, ¶ 6, Kove also identifies corresponding structures from the patent specifications, while reserving all rights to rely on additional supporting evidence:

- o "hash function" (appearing in claims 1, 2, and 17 of the '170 patent), "hash table" (appearing in claims 2, 12, and 17 of the '170 patent, claim 6 of the '978 patent, and claim 24 of the '640 patent);

    - ▪ AWS has not and cannot overcome the presumption that "hash function" or "hash table" does not invoke 112, ¶ 6 because the limitation does not include the words "means for." Far from being a generic "means," hash functions are a known technique in computer science. The limitation "hash function," therefore, imports a specific structure into the claim in which it is used and cannot be construed as a generic "nonce term." *Zeroclick, LLC v. Apple Inc.,* 891 F.3d 1003, 1008 (Fed. Cir. 2018). More generally, in light of the intrinsic evidence, hash function and hash table connote specific structure to the POSA.

    - ▪ Exemplary specification support: The specification for each patent-in-suit discloses the algorithm for the "hashpjw function" and its use in generating

both a hash table, and an index into that hash table, of "location servers." *E.g.*, '170 patent at 15:12-16:20; Fig. 9 (and describing text); '640 patent at 14:28-16:13; '978 patent at 12:43-62, 16:54-18:35.

- o "indexing function" or "indexed" (appearing in claims 12 and 17 of the '170 patent, and claim 6 of the '978 patent);

  - ▪ The term "indexing function" is not recited in any asserted claim;

  - ▪ The term, as used in claim 6 of the '978 patent and claim 12 of the '170 patent is "indexed by a hash table." Claim 17 of the '170 patent does not recite an indexing function;

  - ▪ For the reasons stated above with respect to "hash table," 112, ¶ 6 does not apply. *See Zeroclick, LLC v. Apple Inc.,* 891 F.3d at 1008;

  - ▪ Exemplary specification support: The specification for each patent-in-suit discloses the algorithm for the "hashpjw function" and its use in generating both a hash table, and an index into that hash table, of "location servers." More generally, in light of the intrinsic evidence, indexing connotes a specific structure to the POSA. *E.g.*, '170 patent at 15:12-16:20; Fig. 9 (and describing text); '640 patent at 14:28-16:13; '978 patent at 12:43-62, 16:54-18:35.

- o "calculate a location" (appearing in claims 17, 18, and 24 of the '640 patent);

  - ▪ AWS has not and cannot overcome the presumption that "calculate a location" does not invoke 112, ¶ 6 because the limitation does not include the words "means for." Moreover, claims 17, 18, and 24 of the '640 patent expressly tether the calculation of a location by the client to the "redirect message" sent back to it by the "location server," whereby the client uses the redirect "information" to determine the appropriate location. More generally, in light of the intrinsic evidence, calculating a location connotes specific structure to the POSA.

  - ▪ Exemplary specification support: *E.g.*, '640 Patent at 14:26-16:13; 17:8-19:14.

- "configured…to determine…the data location server[]" or "determining…the…location server[]" (appearing in claims 1, 2, 15, and 17 of the '170 patent);

  - AWS has not and cannot overcome the presumption that the limitations "configured…to determine…the data location server[]" or "determining…the…location server[]" do not invoke 112, ¶ 6 because they do not include the words "means for." Moreover, claims 1, 2 and 17 of the '170 patent expressly tether the "determin[ation] of the appropriate location server to the "hash function" appearing throughout the claims. As discussed above, the limitation "hash function" imports a highly specific structure into the claim in which it is used and cannot be construed as a generic "nonce term." *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1008 (Fed. Cir. 2018). Claim 15 tethers the determination of the appropriate location server to "correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network," and employing that correlation to determine which location server an "identifier" maps to. More generally, in light of the intrinsic evidence, determining a location connotes specific structure to the POSA.

  - Exemplary specification support: *E.g.*, '170 patent at 15:12-16:20; Fig. 9 (and describing text); '978 patent at 12:43-62, 16:54-18:35, 19:50-20:46, 21:35-48, 21:50-22:16, Fig. 22 (and describing text).

- "transfer protocol configured for manipulating" or "transfer protocol comprising instructions for manipulating" (appearing in claim 10 of the '978 patent);

  - AWS has not and cannot overcome the presumption that the limitations "transfer protocol configured for manipulating" and "transfer protocol comprising instructions for manipulating" do not invoke 112, ¶ 6 because they do not include the words "means for." Far from being a generic "means," a "transfer protocol" is a data structure enabling the modification of information over computer networks. The limitation "transfer protocol," therefore, imports a specific structure into the claim in which it is used and cannot be construed as a generic "nonce term." *See Zeroclick, LLC v. Apple*

*Inc.,* 891 F.3d at 1008. More generally, in light of the intrinsic evidence, a transfer protocol connotes specific structure to the POSA.

- Exemplary specification support: *E.g.*, '978 Patent at Abstract ("The system and method utilize a transfer protocol configured to transport an ...."); 2:19-37; 2:53-3:4; 4:19-44.

o  "transfer protocol configured to transport" (appearing in claims 17, 23, 24, and 30 of the '978 patent);

- AWS has not and cannot overcome the presumption that the limitation "transfer protocol configured to transport" does not invoke 112, ¶ 6 because it does not include the words "means for." Far from being a generic "means," a "transfer protocol" is a well-known and conventional data structure enabling the transmission of information over computer networks. The limitation "transfer protocol," therefore, imports a highly specific structure into the claim in which it is used and cannot be construed as a generic "nonce term." *See Zeroclick, LLC v. Apple Inc.,* 891 F.3d at 1008. More generally, in light of the intrinsic evidence, a transfer protocol connotes specific structure to the POSA.

- Exemplary specification support: *E.g.*, 978 Patent at Abstract ("The system and method utilize a transfer protocol configured to transport an ...."); 2:19-37; 2:53-3:4; 4:19-44.

o  "computer executable code configured to execute the following steps" (appearing in claims 17 and 18 of the '640 patent);

- AWS has not and cannot overcome the presumption that the limitation "computer executable code configured to execute the following steps" does not invoke 112, ¶ 6 because it does not include the words "means for." Moreover, the Federal Circuit has held that "program" and "user interface code" are not "nonce terms" and do not invoke 112, ¶ 6 as equivalents of "means for" or "steps for;" to the contrary, their plain and ordinary meanings import specific structures. *Zeroclick,* 891 F.3d at 1008 (finding sufficient structure in the term "user interface code" because "Claim

19…similarly tethers 'user interface code'---code meant to be updated using two configuration changes recited in the claim---to the code 'stored in a memory connected to the processor"); *Trading Techs. Int'l, Inc. v. IBG LLC*, 2019 U.S. Dist. LEXIS 209589 at *19-21 (N.D. Ill. December 5, 2019) (holding that "program code" used to implement certain algorithmic trading steps claimed "sufficient structure"). As in *Trading Techs*, the "computer executable code configured to execute the following steps" appearing in the asserted claims is tethered to the recited steps of returning either a "location message" or a "redirect message." And as in *Zeroclick*, the computer executable code is stored on "data location servers." More generally, in light of the intrinsic evidence, "computer executable code configured to execute the following steps" connotes specific structure to the POSA.

- Exemplary specification support: *E.g.*, '640 patent (col. 14:28-16:13).

o "location server configured to receive," or "programming logic" that is "configured to return" (appearing in claims 6, 8, and 12 of the '170 patent);

- AWS has not and cannot overcome the presumption that the limitation "location server configured to receive" or "programming logic" that is "configured to return" do not invoke 112, ¶ 6 because they do not include the words "means for." The limitation "location server configured to receive" is an inherently structural limitation, defining the location server as being capable of receiving a "location addition request" and including a "processor." As discussed above, with respect to the limitation "programming logic…configured to return," the Federal Circuit has held that "program" and "user interface code" are not "nonce terms" and do not invoke 112, ¶ 6 as equivalents of "means for" or "steps for;" to the contrary, their plain and ordinary meanings import specific structures. *Zeroclick*, , 891 F.3d at 1008; *Trading Techs.*, 2019 U.S. Dist. LEXIS 209589 at *19-21 (N.D. Ill. December 5, 2019) The "programming logic" appearing in claims 6, 8, and 12 of the '170 patent is tethered to the structure-importing limitation "stored on the location server" and conjoined to the acts of

returning a location message or redirect message. More generally, in light of the intrinsic evidence, these terms connote specific structure to the POSA.

- ▪ Exemplary specification support: *E.g.*, '170 patent at 4:8-26, 14:44-16:30.
- o "programming logic … responsive to" a "location query" (appearing in claims 1, 3, 6, and 10 of the '978 patent

  - ▪ AWS has not and cannot overcome the presumption that the limitation "programming logic…responsive to…a location query" does not invoke 112, ¶ 6 because it does not include the words "means for." As discussed above, the Federal Circuit has held that "program" and "user interface code" are not "nonce terms" and do not invoke 112, ¶ 6 as equivalents of "means for" or "steps for;" to the contrary, their plain and ordinary meanings import specific structures. *Zeroclick,*, 891 F.3d at 1008; *Trading Techs.*, 2019 U.S. Dist. LEXIS 209589 at *19-21 (N.D. Ill. December 5, 2019) The "programming logic" appearing in claims 3, 6, and 10 of the '978 patent are tethered to the structure-importing limitations "stored on each of the plurality of location servers" (claim 10) and "stored on each of the location servers" (claims 1, 3, and 6), and conjoined to the acts of returning a location message or redirect message. More generally, in light of the intrinsic evidence, these terms connote specific structure to the POSA.

  - ▪ Exemplary specification support: *E.g.*, '978 patent at 14:28-16:13.

AWS also makes bare and unsupported allegations that each of the asserted limitations it designates as invalid under 35 U.S.C. § 112, ¶ 6 also lack sufficient written description under 35 U.S.C. § 112, ¶ 1; AWS's allegations under § 112, ¶ 1 are deficient for the same reasons articulated with respect to 35 U.S.C. § 112, ¶ 6.

AWS also contends that all asserted claims that reference "hash" or "hashing" are invalid under 35 U.S.C. § 112, ¶ 1 because "the Patents-in-Suit do not explain how to use the claimed 'hash function' or 'hash table,' how it works, what it does, or how its output is used." AWS

Invalidity Contentions, at 34. To the contrary, the specifications of the patents-in-suit describe in granular, algorithmic detail how to use known hash functions to both generate, and traverse, a hash table of "location servers." *See, e.g.*, '170 patent at 15:12-16:20; '640 patent at 14:28-16:13; '978 patent at 12:43-62, 16:54-18:35. In light of the intrinsic evidence and their background knowledge, these terms are sufficiently described and enabled to the POSA.

AWS also contends that claims 17, 23, 24 and 30 of the '978 patent is invalid as not enabled and lacking an adequate written description under 35 U.S.C. § 112, ¶ 1, because the '978 patent specification does not describe or enable the full scope of "performance criterion," "predetermined performance limit," and "monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit." As discussed above, however, the '978 patent expressly discloses that a "performance criterion" may be embodied by "storage capacity" and "transaction rate." '170 patent at 20:7-31. The '978 patent also discloses at least one embodiment of monitoring a predetermined performance criterion, such as a "number of requests for a particular URI" made by clients in Paris but serviced by location servers in Chicago, whereby once that predetermined number of requests is breached, the location servers in Chicago automatically transfer their corresponding identifier/location mappings to location servers in Paris. *Id.* at 19:50-20:46, 21:24-22:16, Fig. 22. In light of the intrinsic evidence and their background knowledge, these terms are sufficiently described and enabled to the POSA.

Finally, AWS contends that claims 6, 8, and 12 of the '170 patent are invalid as not enabled and lacking an adequate written description under 35 U.S.C. § 112, ¶ 1 because "the '170 patent does not disclose how to configure programming logic to return both a location message and a redirect message in response to a location query." AWS Invalidity Contentions at 35. The specification of the '170 patent, however, describes the data structures involved in, sample source

16

code embodying, and algorithms describing, how location servers return both location messages and redirect messages. '170 patent at 5:30-9:29, 14:44-16:30. In light of the intrinsic evidence and their background knowledge, these terms are sufficiently described and enabled to the POSA.

### D. Response to AWS's Invalidity Contentions Under 35 U.S.C. § 101

As Kove explained in its Response Memorandum in Opposition to Amazon's Motion to Dismiss based on 35 U.S.C. § 101 (ECF No. 44), incorporated here by reference, the Patents-in-Suit are rooted in computer technology and are eligible for patenting under § 101 and controlling Federal Circuit precedent. The patented technology is tailored to improving conventional database storage systems and provides specific distributed data storage architecture for improving functionality in computer networks. ECF No. 44 at 1. The Court agreed and held that the Patents-in-Suit are not invalid under § 101. ECF No. 110. The reasoning of Kove's opposition and the Court's decision apply to all Asserted Claims.

As Kove explained in its Opposition and Sur-Reply to AWS's Motion for Judgment on the Pleadings (ECF Nos. 145, 160), incorporated here by reference, the asserted claims of the '978 patent are not invalid for obviousness-type double patenting ("ODP"). The claims of the '170 and '640 patents are not proper ODP references, and the asserted claims of the '978 patent are not obvious in view of those claims. ECF Nos. 145, 160. The other references cited in the SAFIC are also not proper ODP references and do not render the asserted claims of the '978 patent obvious. Further, none of the Patents-in-Suit are proper ODP references against any other Patents-in-Suit, and no Asserted Claims are invalid for ODP for this reason, and because the differences between the claims are non-obvious.

### E. Response to AWS's Unenforceability Contentions

The LPR require that AWS identify the acts allegedly supporting and all bases for the assertion of unenforceability. AWS has not made such allegations.

With respect to AWS's threadbare allegations of unenforceability in its Answer and Counterclaims (ECF No. 129), Kove incorporates by reference its Answer to AWS's Counterclaims (ECF No. 161). With respect to inequitable conduct, the Karger reference is not material. Indeed, AWS has long known about Karger, yet did not assert it as invalidating any of the Asserted Claims in its SAFIC or in any proceedings before the USPTO. AWS has never set forth how or why Karger is material. Further, neither the inventors nor the prosecuting attorneys had an intent to deceive the USPTO. With respect to "laches, estoppel, acquiescence, waiver, unclean hands, and/or other equitable principles" (ECF No. 129 at 40-42), AWS has not set forth a sufficient factual basis, its assertions are untrue and/or misleading, and it fails to meet the legal threshold for establishing any of these doctrines.

Should AWS be permitted to introduce claims of unenforceability in the future, Kove will respond at that time.

## F.    Response to AWS's Obviousness-Related Analysis

Pursuant to the Court's September 17, 2021 Order, AWS "may rely on only the precise combinations of references listed in Section III for its obviousness grounds of invalidity, but the explanations in Section IV may inform that analysis." ECF No. 418 at 6. Accordingly, Kove responds to Section IV of the FAFIC in the event that AWS is permitted to rely on it for this limited purpose.

To the extent AWS's FAFIC points to disclosures in the specifications and/or the file histories that inform embodiments of the invention that are not in the asserted claims, such disclosures do not inform the obviousness of the asserted claims.

Further, to the extent AWS resorts to conclusory assertions of general knowledge, common sense, or skill in the art, AWS's allegations are insufficient to supply the limitations or obviousness of the limitations of the asserted claims. Similarly, to the extent AWS makes vague, overbroad,

conclusory statements, and/or improperly relies on hindsight reconstruction that claim limitations are known or obvious, AWS's reasons are insufficient to show disclosure, obviousness, or motivation to combine.

To the extent the references AWS seeks to combine or reference for disclosure, obviousness, or motivation to combine are non-analogous art and/or change basic principles under which the references were designed to operate, a person of skill in the art would not have been motivated to combine them. Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references.

Further, AWS addresses only a handful of portions of claim limitations at a high level. AWS therefore fails to show that all claim limitations would be disclosed or obvious to a person of skill in the art. To the extent AWS distills entire claim limitations to a single, high-level concept, AWS fails to show that each and every element of a claim limitation is disclosed, obvious, or serves as a motivation to combine.

Each purported disclosure, obviousness, or motivation to combine AWS discusses with respect to its distillation is insufficient for at least the reasons below.

**Data Location Server:** None of the recited references employ, disclose, render obvious, or motivate a POSA to combine references to result in data location servers.

As an example, to the extent the purported prior art in the FAFIC does not disclose the recited use of data location servers, the data location servers would not have been obvious to one of skill in the art before the invention. The "location servers" of the '170 Patent are capable of updating their identifier location mappings in response to "update" requests originating from client machines connected to the network. *See* '170 Patent at 4:14-17; *see also, e.g., id.* at Abstract. By

contrast, the update servers of DNS and DNS-based systems maintain static mappings between domain names and IP addresses, which are only refreshed at pre-determined intervals. *See, e.g.,* RFC1034 at 6-7, 28. DNS-based systems do not update identifier/location mappings in name servers, and therefore the servers do not act as data location servers. For example, Kangasharju discloses "receiving the IP addresses of all the servers that contain the object," and "when each copy was last modified or the 'age' of the object." Kangasharju at 3. But Kangasharju does not disclose that the servers maintain or update unique identifier/location mappings. As another example, Browne discloses that its "current client uses an ordinary DNS lookup for IP address records" and that it "attempts to query each IP address until it finds one that can satisfy the . . . lookup request." Browne at 183. Accordingly, Browne does not disclose that the servers maintain or update unique identifier/location mappings.

Similarly, the name servers of Cache Resolver update themselves by polling the caches, "independently of user requests." *See* Sherman at 37; Karger/Sherman at 9-10. Accordingly, neither Sherman nor Karger/Sherman disclose dynamic updates of mapping in response to requests.

Likewise, van Steen describes "[s]toring contact addresses at stable locations," and therefore does not disclose servers that maintain or update unique identifier/location mappings. Van Steen at 2. Similarly, Neuman describes that "[t]he system maintains a table mapping name prefixes to servers," which does not update unique identifier/location mappings. Neuman at 15.

Additionally, the FAFIC discusses disparate and non-analogous art that do not show disclosure, obviousness, or motivations to combine to a person of skill in the art. For example, Neimat discloses file servers that store records, or data. *See* Neimat at 8:1-15. Neimat does not disclose or render obvious data location servers storing or updating data location information. *See*

'170 Patent at 20:62-65. Similarly, the servers in Minami store data—non-unique keywords and records—and not data location information. *See, e.g.,* Minami at Abstract. As another example, Dasgupta discloses a mechanism for naming resources in a large distributed system. *See, e.g.,* Dasgupta at Abstract. Dasgupta does not describe or relate to location server networks storing data location information for a plurality of data entities. *See* '170 Patent at 20:62-65. The FAFIC does not show why a person of ordinary skill in the art would find data location servers obvious from these incomparable references, nor that the non-analogous art would motivate a person of skill in the art to combine the references to result in data location servers.

The FAFIC's conclusory assertions of "common sense and background knowledge in the art" are insufficient to show disclosure, obviousness, or motivation to combine.

Further, AWS's recitation of "data location server" fails to show every element of the claim limitation "a data location server network comprising a plurality of data location servers, wherein data location information for a plurality of data entities is stored in the data location server network, at least one of the plurality of data location servers includes location information associated with the identifier string, each one of the plurality of data location servers comprises a processor and a portion of the data location information . . . " or similarly-recited variations were disclosed or obvious. *See* '170 Patent at 20:62-21:2.

**<u>Hash Function:</u>** AWS fails to provide any reference or disclosure that suggests, renders obvious, or motivates a POSA to apply hash functions to organize data location information. The mere fact that hash functions were known is insufficient to show that a person of skill in the art would have been motivated to use a hash function to organize data location information. The references in the FAFIC that AWS points to are from disparate and non-analogous arts, and would not have motivated or made obvious to a person of skill in the art basing the portion of data location

information included in a corresponding one of the data location servers on a hash function used to organize the data location information across the plurality of data location servers. *See* '170 Patent at 21:2-6. Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references.

As an example, Karger '420, Karger '618, and the Karger Paper disclose organizing data across servers housing data. *See, e.g.,* Karger '420 at 3:23-50. None disclose, discuss, or suggest organizing location information about data across multiple location servers.

As another example, as explained above, Dasgupta discloses a mechanism for naming resources. *See, e.g.,* Dasgupta at Abstract. Dasgupta does not describe, disclose, or render obvious organizing location information about data across multiple servers.

Further, AWS's recitation of "hash function" fails to show every element of the claim limitation "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers" or similarly-recited variations were disclosed or obvious. *See* '170 Patent at 21:2-6.

**Redirection:** AWS fails to provide any support that redirection is disclosed or obvious. AWS resorts to vague, overbroad, and conclusory assertions of general knowledge, common sense, or skill in the art to show disclosure, obviousness, or motivation to combine resulting in redirection. AWS's allegations are insufficient to supply the limitations or obviousness of the limitations of the asserted claims, and do not show, render obvious, or motivate transmitting a redirect message to the client if the identification string is not associated with a location string at

the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server. *See,* '640 Patent at 22:30-40.

As an example, DNS and DNS-based systems do not disclose, suggest, or render obvious redirection. DNS name servers are not required to know which name server contains the desired resource records. *See* RFC1034 at 17. Therefore, while the '640 Patent transmits a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server (*see, e.g.,* '640 Patent at 22:30-40), DNS does not disclose any mechanism by which a name server has information to calculate a location of a different location server, nor any motivation to do so. Cardellini also does not disclose or render obvious calculating a location of a data server. Instead, Cardellini discloses routing a "document request" either by "select[ing] a random number *i* between1 and the number of servers and direct[ing] the user request to the node www*i*.netscape.com" or using an "applet [that] knows the IP addresses of all server nodes in the Web cluster." Cardellini at 4.

The FAFIC conclusorily point to common sense and background knowledge, but such conclusory assertions are insufficient to supply the claim limitations or motivations missing from the disclosure. The FAFIC are similarly insufficient with vague assertions that performance enhancement would have motivated a person of skill in the art to combine teachings.

Further, AWS's recitation of "redirection" fails to show every element of the claim limitation "transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data

location servers" or similarly-recited variations were disclosed or obvious. *See* '640 Patent at 22:33-38; *see also, e.g., id.* at 22:64-23:1.

**Load Balancing:**  AWS does not show that load balancing is disclosed or rendered obvious. The references AWS points to are from disparate and non-analogous arts, and would not have motivated or made obvious transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit to a person of skill in the art. '978 Patent at 27:40-43.

For example, none of the references in the FAFIC discloses balancing identifiers and associated locations. Hua DBMS, Devine DDH, Baker, Frey, and Venkatasubramanian disclose balancing *data*. Further, Hua DBMS and Frey disclose a parallel computing system, not a distributed one.

As another example, Venkatasubramanian discloses load management in video streaming applications. *See, e.g.,* Venkatasubramanian at Abstract. Venkatasubramanian does not disclose servers that store, return, or balance data location information. Nor does it store data location servers, identifiers, or locations. Further, Venkatasubramanian discloses that data minimization, or "minimizing the number of copies[ ] of a video object." Venkatasubramanian at 529. Venkatasubramanian does not describe or render obvious transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. '978 Patent at 27:40-43.

The FAFIC conclusorily points to common sense and background knowledge, but such conclusory assertions are insufficient to supply the claim limitations or motivations missing from the disclosure. The FAFIC is similarly insufficient with vague assertions that performance enhancement would have motivated a person of skill in the art to combine teachings.

24

Further, AWS's recitation of "load balancing" fails to show every element of the claim limitation "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit" or similarly-recited variations were disclosed or obvious. *See* '978 Patent at 27:40-43.

Dated: ~~February 23~~March 2, 2023

Respectfully submitted,

*/s/    Jaime F. Cardenas-Navia*
Jaime F. Cardenas-Navia

Khue V. Hoang (*pro hac vice*)
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (*pro hac vice*)
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com
Philip Eklem (*pro hac vice*)
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5037

Courtland L. Reichman (*pro hac vice*)
creichman@reichmanjorgensen.com
Shawna L. Ballard (*pro hac vice*)
sballard@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

Taylor Mauze (*pro hac vice*)
tmauze@reichmanjorgensen.com
Navid Bayar (*pro hac vice*)
nbayar@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
Telephone: (650) 623-1401

*Attorneys for Plaintiff Kove IO, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on ~~February 23~~March 2, 2023, the foregoing document was served via email on the attorneys of record who have consented to service by electronic means.

/s/ *Jaime F. Cardenas-Navia*
Jaime F. Cardenas-Navia

AWS purports to assert that U.S. Patent No. 7,814,170 ("the '170 patent") claims 6, 8, and 15 are anticipated by, and claims 1, 2, 12, and 17 are obvious in view of, the BIND 8.1 version of DNS. AWS further alleges that the operation of DNS is described in BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman. But AWS has failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman.

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, 12, and 17, Karger '618/420[2,3] |
|---|---|
| **[1.Preamble]** A system for managing data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove denies that DNS discloses the limitations of the preamble.<br><br>*See* claim [1.a] re "data repository" and "system for managing data stored in a distributed network." |
| **[1.a]** a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and | Kove denies that this element is disclosed by DNS. |

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[3] Kove incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276.

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, 12, and 17, Karger '618/420[2,3] |
|---|---|
| | DNS does not disclose a "data repository." While AWS identifies DNS "mailbox data" and "host data" as the requisite "data repository," these components of DNS comprise only *data*, not the repository on which such data resides. *See, e.g.*, '170 patent at col. 1, l. 58-67 ("Typically, each machine in which some portion of the data in a distributed data collection may reside is called a 'data repository machine,' or simply a 'data repository'"); RFC1034 at 3 (describing "host addresses" and "mailbox data" as "data associated with a name"). DNS instead discloses name servers as the "repositories of information that make up the domain database," RFC1034 at 18, but AWS identifies these name servers as the "data location servers" of claim 1. Data location servers and data repositories are, however, separate machines within the distributed network architecture claimed by the '170 patent. *See, e.g.*, '170 patent at Fig. 11, 2:30-45 (describing the "data repository" and "a first server entity operative to locate data" as separate components), 4:58-67 ("When a query is performed for an entity key, the NDTP server supplies the set of data repositories in which data may be found for that entity key."). The prosecution history further supports this separation.<br><br>DNS does not disclose an "identifier string" or an "identifier string [that] identifies the data entity." An "identifier string" is expressly described in the '170 patent as "a *unique* string with which zero or more location strings are associated in an NDTP server." '170 patent at 4:10-12 (emphasis added). The identifier string must "be unique to a particular entity," '170 patent at 4:39-49, i.e. it cannot identify more than one data entity. By contrast, the "domain name" designated by AWS as the "identifier string" does not constitute a unique string as described in the specification of the '170 patent because each domain name can correspond to multiple host IP addresses or mailboxes, which constitute the "data entities" under Amazon's theory of invalidity. *See, e.g.*, RFC1034 at 14 (showing the domain names "Venera.ISI.EDI" and "VAXA.ISI.EDU" as each corresponding to two different IP addresses, or hosts), 17 (showing the domain names "Venera.ISI.EDI" and "VAXA.ISI.EDI" as resolving to all mailboxes ending in ISI.EDU). |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, 12, and 17, Karger '618/420[2,3] |
|---|---|
| **[1.b]** a data location server network comprising a plurality of data location servers, | Kove denies that this element is disclosed in DNS.<br><br>There is no "data location server" (much less a plurality or network of them) disclosed by DNS. The "name servers" of DNS are not capable of modifying identifier/location mappings in response to location request messages (from clients). The specification of the '170 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from NDTP clients." '170 patent at 4:17-20 (emphasis added). Specifically, the "location servers" of the '170 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See* '170 patent at 4:14-17 (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the entity key and the data repository's data location specifier." '170 patent at 4:61-64. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '170 patent at Abstract ("According to the protocol, a location string can be spontaneously and dynamically changed"), 2:22-26 ("Relationships between identification strings and location strings can be dynamically and spontaneously manipulated thus allowing the corresponding data relationships also to change dynamically, spontaneously, and efficiently"), 20:42-45 ("it is the manipulation of dynamic and spontaneous relationships between indices and locations, not the indices and locations, that is the core significance").<br><br>By contrast, the "name servers" disclosed by DNS maintain *static* mappings between domain names and IP addresses, which are refreshed at pre-determined intervals by downloading a master file that needs to first be physically edited by a system administrator. RFC1034 at 6-7, 28. "Name servers" do not update their mappings dynamically, i.e. "in response to" update requests from client machines that are sent in real time as changes to identifier/location mappings occur, as contemplated by the '170 |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, 12, and 17, Karger '618/420[2,3] |
|---|---|
|  | patent. Instead, name servers only refresh themselves at pre-determined intervals with new zone data physically edited by system administrators. The name servers of DNS also cannot determine which other name servers store location information for an identifier, as that information is not stored. Nor do name servers have identifier/location mappings, as they do not have identifiers (as described for 1.a) and do not have locations that are associated with identifiers/entities. Resource records encompass many types of data that are not locations. Clients in DNS cannot update identifier/location mappings in name servers. |
| **[1.c]** wherein data location information for a plurality of data entities is stored in the data location server network, | Kove denies that this element is disclosed by DNS. <br><br> *See* claim [1.b]. <br><br> As explained above, DNS does not disclose a "data location server" or "data entities." <br><br> There is no "data location information for a plurality of entities" disclosed by DNS, nor is the data location information stored on the data location server network. The name servers of DNS cannot determine which other name servers store location information for an identifier, as that information is not stored. Nor do name servers have data location information, as they do not have identifiers (as described for 1.a) and do not have locations that are associated with identifiers/entities. Resource records encompass many types of data that are not locations. |
| **[1.d]** at least one of the plurality of data location servers includes location information associated with the identifier string, | Kove denies that this element is disclosed by DNS. <br><br> *See* claim [1.a, 1.b]. <br><br> As explained above, DNS does not disclose an "identifier string" or a "data location server." <br><br> There is no "location information" or "location information associated with the identifier string" disclosed by DNS, nor is the location information stored on a location server. |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, 12, and 17, Karger '618/420[2,3] |
|---|---|
| | The name servers of DNS cannot determine which other name servers store location information for an identifier, as that information is not stored. Nor do name servers have location information, as they do not have identifiers (as described for 1.a) and do not have locations that are associated with identifiers/entities. Resource records encompass many types of data that are not locations. |
| [1.e] each one of the plurality of data location servers comprises a processor and a portion of the data location information, | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1.b, 1.c].<br><br>As explained above, DNS does not disclose a "data location server" or "data location information." |
| [1.f] the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and | Kove denies that this element is disclosed by DNS or other references, or that it is rendered obvious.<br><br>*See* claim [1.b, 1.c].<br><br>As explained above, DNS does not disclose a "data location server" or "data location information."<br><br>The disclosure in DNS of name servers that "internally form tree or hash structures for the name space", RFC1034 at 13 (emphasis added), is inapposite to the limitation that a hash function be "used to organize the data location information across the plurality of data location servers." DNS neither discloses nor suggests that a hash function be used to determine which resource records (the purported "data location information") are allocated to which name servers (AWS's "data location servers"); at best, it suggests that the resource records stored by a name server may be internally organized as a tree or a "hash structure." By contrast, the hash function of claim 1 is used externally to allocate and retrieve particular sets of identifier/location mappings from particular data location servers. '170 patent at 15:12-18 ("The appropriate NDTP server is selected from the |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, 12, and 17, Karger '618/420[2,3] |
|---|---|
| | table…by applying a [hash] function to the identifier string and using the function result as an index into the NDTP server table."). |

AWS's contention that this limitation ("hash function") would be obvious in view of DNS and the Karger references is similarly unavailing. Amazon's contention that hash functions were well-known at the time of the '170 patent is irrelevant to an assessment of the obviousness of applying a hash function to organize data location information across data location servers. AWS's improper reliance on the asserted patent's specification and case law (*Symantec*) are unavailing for the same reasons. Amazon fails to adduce a single reference that either discloses or suggests the application of hash functions to organize data location information: both Karger references pertain to the organization of data across servers housing data, rather than to the organization of location information about that data across multiple location servers. *See* U.S. Patent No. 6,553,420 to Karger at col. 3:23-50 (disclosing the use of a hash function to retrieve a document from a server). Amazon's references neither teach nor suggest the problem that the '170 patent is directed to solve: the separation of the "where" (a constellation of location servers informing their clients where a data entity is stored) from the "what" (the data entities themselves) in an extremely large distributed environment. '170 patent at 3:14-25, 20:17-29 ("NDTP… supports an architecture, in which information about where data associated with particular application entities, can be managed and obtained independently of the data itself."). Indeed, the Karger references do not describe the basic architecture of the claim (separating location information from data), data location information or location information (relationship between identifiers and locations or location servers), identifiers (not uniquely associated with entities), location servers (no identifier/location mappings or modifying this information in response to client requests), or clients (no modifying identifier/location mappings). The POSA would have no rationale to combine DNS with either of the Karger references (or any other reference); to the contrary, for the reasons above, DNS and the Karger references teach away from the claimed invention.

Further, AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined DNS with any

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, 12, and 17, Karger '618/420[2,3] |
|---|---|
| | alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from DNS's disclosure. AWS asserts that hash functions could be combined with DNS and various other references because they are purportedly well known. Its statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine hash functions into any disclosure. The mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why the POSA would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references AWS seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the specifically identified references do not disclose one or more of the claim limitations for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. |
| **[1.g]** each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string. | Kove denies that this element is disclosed by DNS. *See* claim [1.a, 1.b]. As explained above, DNS does not disclose an "identifier string" or a "data location server." *See* claim [1.f]. The hash structures disclosed by DNS pertain to the *internal* organization of resource records (Amazon's "data location information") within each name server and are not used to organize data location information *across* name servers. Consequently, name servers cannot refer to other name servers by using, or "based on", a hash function. |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, 12, and 17, Karger '618/420[2,3] |
|---|---|
| | DNS does not describe "each one of the data location servers is configured to determine the at least one of the plurality of data location servers." The names servers of DNS are not configured to determine which other name server stores particular IP addresses for a request, as they are organized in a hierarchical tree structure that is not based on a hash function and are merely programmed to get "closer" to a name server with the requested information. Only for certain requests, with canonical names, can a name server identify a name server to respond to a request, but this functionality does not apply to *each* name server with respect to any given domain name and it is not based on a hash function applied to a domain name. RFC1034 at 3-4, 14-15, 18-19, 25-26. *See* [claim 6.c]. |
| [2] The system of claim 1, wherein the location information comprises any portion of a hash table generated with the hash function. | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1.a-1.g]. There is no disclosure in DNS or the Karger references of "a hash table generated with the hash function," much less that "location information comprises any portion of a hash table." There is no disclosure of "location information." The POSA would have no rationale to combine DNS with either of the Karger references; to the contrary, for the reasons above, DNS and the Karger references teach away from the claimed invention. |
| [6.Preamble] A system for managing data location information and providing the data location information in response to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1a-1.g]. |
| [6.a] a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1a] for DNS's failure to disclose an "identifier" that "identifies an entity," [1b] for DNS's failure to disclose a "location server," and claim [1.c] for DNS' failure to disclose "location" and "location of data." Further, the purported location in DNS does not "specif[y] a location of data in a network pertaining to the entity," as AWS has not identified a proper relationship between location, data, and an entity. |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, 12, and 17, Karger '618/420[2,3] |
|---|---|
| each of the at least one location specifies a location of data in a network pertaining to the entity; | Moreover, DNS does not disclose "a location server configured to receive location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier" because such requests must comprise "an identifier and at least one location to associate with the identifier." Also, the zone transfer requests Amazon points to are wholesale migrations of resource records from one name server to another untethered to, and failing to specify, any particular identifier/location mapping. *See* RFC1034 at 20 ("*Whole* zones can be transferred between name servers") (emphasis added), 28 (an "AFXR request" migrates an entire zone of resource records from one name server to another). |
| [6.b] wherein the location server includes a processor; and | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1.b] for evidence that DNS does not disclose a "location server." |
| [6.c] programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1.b] for evidence that DNS does not disclose a "location server."<br><br>DNS does not disclose a "redirect message" or any of this claim limitation because the name servers to which DNS queries are forwarded are not "known to have the location information for the desired entity." Because the domain name space of DNS is split into "separate sets of local information called zones" which are managed by different entities, name servers generally do not know which other name servers contains the resource records to answer a given query. RFC1034 at 6-7. Consequently, multiple redirects are often necessary. *See* RFC1034 at 17-18 (describing the "essential task" of name servers as answering queries "using data in *its zones*" and describing name servers as capable of making referrals to other name servers that are merely "closer" to the desired information) (emphasis added). Crucially, "a name server that doesn't have the requested information *may know* a name server that does." RFC1034 at 17 (emphasis added). Unlike the "redirect message" claimed by the '170 patent, DNS discloses no |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, 12, and 17, Karger '618/420[2,3] |
|---|---|
| least one other location server known to have the location information for the desired entity. | function whereby a name server can *actually know* which name server contains the desired resource records. *See, e.g.,* '170 patent at 14:43-15:35. *See* claim [1.g]. |
| [8] The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information. | Kove denies that this claim is disclosed by DNS.<br><br>*See* claim [1.b] and [1.e]. |
| [12] The system of claim 9, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers. | Kove denies that this claim is disclosed by DNS.<br><br>*See* claim [1.pre-1.g].<br><br>Further, AWS failed to provide any evidence that claim 9, from which claim 12 depends, is disclosed by DNS or the Karger references. |
| [15.Preamble] A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising: | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1.pre-1.g.]. |
| [15.a] correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network; | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1.a and 1.d.]. |
| [15.b] receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1.b, 6.c.]. |

| U.S. Patent No. 7,814,170 | Domain Name System (DNS) and, for Claims 1, 2, 12, and 17, Karger '618/420[2,3] |
|---|---|
| of a data entity included in the data entities; | |
| [15.c] determining which of the plurality of location servers includes the location information; | Kove denies that this element is disclosed by DNS. *See* claim [1.b, 1.f, 1.g, 6.c.]. |
| [15.d] sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and | Kove denies that this element is disclosed by DNS. *See* claim [1.b, 6.c, 15.c]. |
| [15.e] sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information. | Kove denies that this element is disclosed by DNS. *See* claim [6.c]. |
| [17] The method of claim 16, wherein each one of the plurality of location servers comprises a portion of an indexed table of the identifiers and corresponding associated locations, and wherein determining which of the plurality of location servers includes the location information comprises applying one of the identifiers to a hash function to look up corresponding associated locations in the indexed table, the one of the identifiers identifying the data entity. | Kove denies that this element is disclosed by DNS. *See* claim [1.a-1.g, 6.c.]. |

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of DNS et al.

EXHIBIT 1B: U.S. 7,814,170 Validity Claim Chart in View of the Cache Resolver System et al.

AWS purports to assert that U.S. Patent No. 7,814,170 ("the '170 patent") claims 1, 2, 6, 8, 12, 15, and 17 are anticipated by the Cache Resolver system. AWS further alleges that the operation of the Cache Resolver System is described in Distributed Web Caching System with Consistent Hashing by Alexander Sherman (1999) ("Sherman"), and Web Caching with Consistent Hashing by Karger, Sherman, et al. (March 4, 1999) ("Karger/Sherman"). But AWS has failed to (1) sufficiently identify any version of any cache resolver system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system. AWS has also failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to (1) establish that any Cache Resolver System necessarily encompassed any DNS system, (2) identify any version of any such combined system, (3) produce any such combined system, (4) establish that any such combined system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (5) establish that any of the documents AWS identifies refer to any identified combined system, much less the same combined system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "Cache Resolver System" reference is thus limited only to the documents Sherman and Karger/Sherman,[2] which are improperly discussed together without obviousness arguments (as is RFC1034). AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including Sherman, Karger/Sherman, and RFC1034.

---

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] While AWS has failed to timely identify any evidence in support of its Cache Resolver System-based contentions other than Sherman and Karger/Sherman, Kove's analysis applies equally to any Cache Resolver System-related reference.

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
| **[1.Preamble]** A system for managing data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove denies that the Cache Resolver System ("CRS") discloses the limitations of the preamble.<br><br>*See* claim [1.a] re "data repository" and "system for managing data stored in a distributed network." |
| **[1.a]** a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and | Kove denies that this element is disclosed by CRS.<br><br>CRS does not disclose a "data repository." While AWS identifies "mailbox data" and "host data" from CRS's use of DNS as the requisite "data repository," these components of DNS comprise only *data*, not the repository on which such data resides. *See, e.g.,* '170 patent at col. 1, l. 58-67 ("Typically, each machine in which some portion of the data in a distributed data collection may reside is called a 'data repository machine,' or simply a 'data repository'"); RFC1034 at 3 (describing "host addresses" and "mailbox data" as "data associated with a name"). DNS instead discloses name servers as the "repositories of information that make up the domain database," RFC1034 at 18, but AWS identifies these name servers as the "data location servers" of claim 1. Data location servers and data repositories are, however, separate machines within the distributed network architecture claimed by the '170 patent. *See, e.g.,* '170 patent at Fig. 11, 2:30-45 (describing the "data repository" and "a first server entity operative to locate data" as separate components), 4:58-67 ("When a query is performed for an entity key, |

[3] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[4] Kove incorporates by reference Exhibit 1A of its Contentions, which discusses DNS. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276, which discusses DNS.

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
| | the NDTP server supplies the set of data repositories in which data may be found for that entity key."). The prosecution history further supports this separation. The modified DNS servers and the cache servers of CRS do not alter this analysis. *See, e.g.*, Sherman at 34-37; Karger/Sherman at 9-10. |
| | CRS does not disclose an "identifier string" or an "identifier string [that] identifies the data entity." An "identifier string" is expressly described in the '170 patent as "a *unique* string with which zero or more location strings are associated in an NDTP server." '170 patent at 4:10-12 (emphasis added). The identifier string must "be unique to a particular entity," '170 patent at 4:39-49, i.e. it cannot identify more than one data entity. By contrast, the "domain name" designated by AWS as the "identifier string" does not constitute a unique string as described in the specification of the '640 patent because each domain name can correspond to multiple host IP addresses or mailboxes, which constitute the "data entities" under Amazon's theory of invalidity. *See, e.g.*, RFC1034 at 14 (showing the domain names "Venera.ISI.EDI" and "VAXA.ISI.EDU" as each corresponding to two different IP addresses, or hosts), 17 (showing the domain names "Venera.ISI.EDI" and "VAXA.ISI.EDI" as resolving to all mailboxes ending in ISI.EDU). The URLs taken in as an input by the CRS resolve to five virtual names, and each virtual name uses DNS to resolve to a list of IP addresses instead of just one. *See, e.g.*, Sherman at 34-37; Karger/Sherman at 9-10. Thus, the name servers of CRS return many proxy caches, which corresponds to many entities. |
| **[1.b]** a data location server network comprising a plurality of data location servers, | Kove denies that this element is disclosed in CRS. |
| | There is no "data location server" (much less a plurality or network of them) disclosed by CRS. The "name servers" of DNS are not capable of modifying identifier/location mappings in response to location request messages (from clients). The specification of the '170 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from NDTP clients." '170 patent at 4:17-20 (emphasis added). Specifically, the "location servers" of the '170 patent are capable of updating their identifier/location mappings in response to "update" |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
|  | requests originating from client machines connected to the network. *See* '170 patent at 4:14-17 (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the entity key and the data repository's data location specifier." '170 patent at 4:61-64. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '170 patent at Abstract ("According to the protocol, a location string can be spontaneously and dynamically changed"), 2:22-26 ("Relationships between identification strings and location strings can be dynamically and spontaneously manipulated thus allowing the corresponding data relationships also to change dynamically, spontaneously, and efficiently"), 20:42-45 ("it is the manipulation of dynamic and spontaneous relationships between indices and locations, not the indices and locations, that is the core significance").<br><br>By contrast, the "name servers" disclosed by DNS maintain *static* mappings between domain names and IP addresses, which are refreshed at pre-determined intervals by downloading a master file that needs to first be physically edited by a system administrator. RFC1034 at 6-7, 28. "Name servers" do not update their mappings dynamically, i.e. "in response to" update requests from client machines that are sent in real time as changes to identifier/location mappings occur, as contemplated by the '170 patent. Instead, name servers only refresh themselves at pre-determined intervals with new zone data physically edited by system administrators. The name servers of CRS update themselves by polling the caches, a process that occurs "independently of user requests," *i.e.*, not in response to requests from clients. *See, e.g.,* Sherman at 34-37; Karger/Sherman at 9-10. The name servers also cannot determine which other name servers store location information for an identifier, as that information is not stored. Nor do name servers have identifier/location mappings, as they do not have identifiers (as described for 1.a) and do not have locations that are associated with identifiers/entities. Resource records encompass many types of data that are not locations. Clients cannot update identifier/location mappings in name servers. |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
| | |
| **[1.c]** wherein data location information for a plurality of data entities is stored in the data location server network, | Kove denies that this element is disclosed by CRS. *See* claim [1.b]. As explained above, CRS does not disclose a "data location server" or "data entities." There is no "data location information for a plurality of entities" disclosed by CRS, nor is the data location information stored on the data location server network. The name servers of DNS cannot determine which other name servers store location information for an identifier, as that information is not stored. Nor do name servers have data location information, as they do not have identifiers (as described for 1.a) and do not have locations that are associated with identifiers/entities. Resource records encompass many types of data that are not locations. |
| **[1.d]** at least one of the plurality of data location servers includes location information associated with the identifier string, | Kove denies that this element is disclosed by CRS. *See* claim [1.a, 1.b]. As explained above, CRS does not disclose an "identifier string" or a "data location server." There is no "location information" or "location information associated with the identifier string" disclosed by CRS, nor is the location information stored on a location server. The name servers of DNS cannot determine which other name servers store location information for an identifier, as that information is not stored. Nor do name servers have location information, as they do not have identifiers (as described for 1.a) and do not have locations that are associated with identifiers/entities. Resource records encompass many types of data that are not locations. |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
| **[1.e]** each one of the plurality of data location servers comprises a processor and a portion of the data location information, | Kove denies that this element is disclosed by CRS.<br><br>*See* claim [1.b, 1.c].<br><br>As explained above, CRS does not disclose a "data location server" or "data location information." |
| **[1.f]** the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and | Kove denies that this element is disclosed by CRS.<br><br>*See* claim [1.b, 1.c].<br><br>As explained above, CRS does not disclose a "data location server" or "data location information."<br><br>The disclosure in DNS of name servers that "internally form tree or hash structures for the name space", RFC1034 at 13 (emphasis added), is inapposite to the limitation that a hash function be "used to organize the data location information across the plurality of data location servers." DNS neither discloses nor suggests that a hash function be used to determine which resource records (the purported "data location information") are allocated to which name servers (AWS's "data location servers"); at best, it suggests that the resource records stored by a name server may be internally organized as a tree or a "hash structure." By contrast, the hash function of claim 1 is used externally to allocate and retrieve particular sets of identifier/location mappings from particular data location servers. '170 patent at 15:12-18 ("The appropriate NDTP server is selected from the table…by applying a [hash] function to the identifier string and using the function result as an index into the NDTP server table.").<br><br>Further, CRS purports to have the name servers use a hash function to determine which cache server stores the requested data, not to organize any purported location information across the name servers. The "family of consistent hash functions" disclosed in Sherman and Karger/Sherman does not organize data location information across the DNS name servers that AWS identifies as "location servers," for at least the reason that CRS does |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
|  | not disclose "data location servers" or "data location information." Instead, Sherman and Karger/Sherman disclose using consistent hashing to assign hashed virtual names to a list of available proxy web caches. *See, e.g.*, Sherman at 34-37; Karger/Sherman at 9-10. |
| **[1.g]** each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string. | Kove denies that this element is disclosed by CRS.<br><br>*See* claim [1.a, 1.b, 1.f].<br><br>As explained above, CRS does not disclose an "identifier string," a "data location server," or the claimed use of a "hash function." |
| **[2]** The system of claim 1, wherein the location information comprises any portion of a hash table generated with the hash function. | Kove denies that this element is disclosed by CRS.<br><br>*See* claim [1.a, 1.b, 1.f, 1.g].<br><br>As explained above, CRS does not disclose "location information." CRS also does not disclose a "hash table generated with" any "hash function." |
| **[6.Preamble]** A system for managing data location information and providing the data location information in response to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by CRS.<br><br>*See* claim [1a-1.g]. |
| **[6.a]** a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a | Kove denies that this element is disclosed by CRS.<br><br>*See* claim [1a-1.g].<br>Moreover, the DNS name servers AWS identifies as "location servers" are not capable of receiving a "location addition request" because such requests must comprise "an identifier and at least one location to associate with the identifier." The '170 Patent specifies that "[t]he protocol permits client entities to add and remove identifier/location associations." '170 Patent at 3:10-11.By contrast, AWS points to DNS dynamic updates, which "functionality is used by programs like DHCP servers that assigned IP addresses |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
| location of data in a network pertaining to the entity; | automatically to computers, and then need to register the resulting name-to-address and address-to-name mappings. These programs use the *ns_update()* routine to create update messages and send them to an authoritative server for the zone that contains the domain name." DNS and BIND at 231-232. <br><br> The name servers of CRS update themselves by polling the caches, a process that occurs "independently of user requests," *i.e.*, not in response to requests from clients. *See, e.g.*, Sherman at 34-37; Karger/Sherman at 9-10. |
| **[6.b]** wherein the location server includes a processor; and | Kove denies that this element is disclosed by CRS. <br><br> *See* claim [1a-1.g]. <br><br> As explained above, CRS does not disclose a "location server." |
| **[6.c]** programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to | Kove denies that this element is disclosed by CRS. <br><br> *See* claim [1a-1.g]. <br><br> CRS does not disclose a "redirect message" or the rest of this limitation. If a request fails, then there is a retry or the next request on the list is performed. There is no redirect message that identifies the location server to query. *See, e.g.*, Sherman at 34-37; Karger/Sherman at 9-10. <br><br> DNS does not disclose a "redirect message" or any of this claim limitation because the name servers to which DNS queries are forwarded are not "known to have the location information for the desired entity." Because the domain name space of DNS is split into "separate sets of local information called zones" which are managed by different entities, name servers generally do not know which other name servers contains the resource records to answer a given query. RFC1034 at 6-7. Consequently, multiple redirects are often necessary. *See* RFC1034 at 17-18 (describing the "essential task" of name servers as answering queries "using data in *its zones*" and describing name servers as capable of making referrals to other name servers that are merely "closer" to the desired |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
| have the location information for the desired entity. | information) (emphasis added). Crucially, "a name server that doesn't have the requested information *may know* a name server that does." RFC1034 at 17 (emphasis added). Unlike the "redirect message" claimed by the '170 patent, DNS discloses no function whereby a name server can *actually know* which name server contains the desired resource records. *See, e.g.,* '170 patent at 14:43-15:35. *See* claim [1.g]. The names servers of DNS are not configured to determine which other name server stores particular IP addresses for a request, as they are organized in a hierarchical tree structure that is not based on a hash function and are merely programmed to get "closer" to a name server with the requested information. Only for certain requests, with canonical names, can a name server identify a name server to respond to a request, but this functionality does not apply to *each* name server with respect to any given domain name and it is not based on a hash function applied to a domain name. RFC1034 at 3-4, 14-15, 18-19, 25-26. |
| **[8]** The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information. | Kove denies that this claim is disclosed by CRS. *See* claim [1.a-1.g]. |
| **[12]** The system of claim 9, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers. | Kove denies that this claim is disclosed by CRS. *See* claim [1.a-1.g]. Further, AWS failed to provide any evidence that claim 9, from which claim 12 depends, is disclosed by CRS. |
| **[15.Preamble]** A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising: | Kove denies that this claim is disclosed by CRS. *See* claim [1.a-1.g]. |
| **[15.a]** correlating each one of a plurality of identifiers with at least one of a | Kove denies that this claim is disclosed by CRS. |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
| plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network; | *See* claim [1.a-1.g]. |
| **[15.b]** receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities; | Kove denies that this claim is disclosed by CRS. <br><br> *See* claim [1.a-1.g, 6.c]. |
| **[15.c]** determining which of the plurality of location servers includes the location information; | Kove denies that this claim is disclosed by CRS. <br><br> *See* claim [1.a-1.g, 6.c]. |
| **[15.d]** sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and | Kove denies that this claim is disclosed by CRS. <br><br> *See* claim [1.a-1.g, 6.c]. |
| **[15.e]** sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information. | Kove denies that this claim is disclosed by CRS. <br><br> *See* claim [1.a-1.g, 6.c]. |
| **[17]** The method of claim 16, wherein each one of the plurality of location | Kove denies that this claim is disclosed by CRS. |

| U.S. Patent No. 7,814,170 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
| servers comprises a portion of an indexed table of the identifiers and corresponding associated locations, and wherein determining which of the plurality of location servers includes the location information comprises applying one of the identifiers to a hash function to look up corresponding associated locations in the indexed table, the one of the identifiers identifying the data entity. | *See* claim [1.a-1.g, 6.c]. |

AWS purports to assert that claims 1, 2, 6, 8, 12, 15, and 17 of U.S. Patent No. 7,814,170 ("the '170 patent") are obvious in view of the combination of U.S. Patent No. 5,542,087 to Neimat ("Neimat"), DNS, and Karger '618/420. AWS further alleges that the operation of DNS is described in BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman. But AWS has failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| **[1.Preamble]** A system for managing data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove admits that Neimat discloses a system for managing data stored in a distributed network. |
| **[1.a]** a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and | Kove denies that this element is disclosed by Neimat.<br><br>Neimat does not disclose the claimed "identifier string," but instead describes non-unique key values for autonomous clients that do not uniquely identify an entity. An "identifier string" is expressly described in the '170 patent as "a *unique* string with which zero or more location strings are associated in an NDTP server." '170 patent at 4:10-12 |

---

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[3] Kove incorporates by reference Exhibit 1A of its Contentions, which discusses DNS. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276, which discusses DNS.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| | (emphasis added). The identifier string must "be unique to a particular entity," '170 patent at 4:39-49, i.e. it cannot identify more than one data entity. AWS maps the "identifier" as the "Record key value (e.g., value generated from a patient's name)" of Neimat, but Neimat does not disclose that its "record keyvalue" is unique. Instead, Neimat discloses, e.g., "if each key is a respective subject's personal name, it is clear that certain character strings of a common last name such as "Jones" will appear many times in the keys." Neimat at 2:8-10. *See, also, e.g.,* Neimat at 8:28-47, which discloses, e.g., using "Janet Jones" as a patient name key value to produce a record key. |
| | Neimat does not disclose "a data repository . . .," but instead describes file servers that store records and relationships between memory addresses and server addresses. *See, e.g.* Neimat at 4:40-60, 7:48-8:15. Memory on a file server (which AWS identifies as the "location server") by itself is not the claimed data repository. Data location servers and data repositories are, however, separate machines within the distributed network architecture claimed by the '170 patent. *See, e.g.*, '170 patent at Fig. 11, 2:30-45 (describing the "data repository" and "a first server entity operative to locate data" as separate components), 4:58-67 ("When a query is performed for an entity key, the NDTP server supplies the set of data repositories in which data may be found for that entity key."). The prosecution history further supports this separation. |
| **[1.b]** a data location server network comprising a plurality of data location servers, | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious. <br><br> *See* claim [1.a]. <br><br> AWS fails to explain how the file servers in Neimat are "data location servers," and indeed concedes that they are not. Moreover, Neimat does not disclose the claimed "data location server network" or "a plurality of data location servers." The file servers in Neimat are not data location servers. The file servers in Neimat store records, i.e. the data itself. *See* Neimat at 8:1-15("Records of the database are stored at memory locations or 'buckets' provided by file servers."). Further, the file servers of Neimat also cannot determine which other file servers store location information for an identifier, as |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| | that information is not stored. Nor do file servers have identifier/location mappings, as they do not have identifiers (as described for 1.a) and do not have locations that are associated with identifiers/entities. Memory addresses are not proper locations. Clients in Neimat cannot update identifier/location mappings in file servers.<br><br>The specification of the '170 patent describes "location server", which it refers to as a "NDTP server," as "a network-attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from NDTP clients." '170 patent at 4:17-20 (emphasis added). Specifically, the "location servers" of the '170 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See* '170 patent at 4:14-17 (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the entity key and the data repository's data location specifier." '170 patent at 4:61-64. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '170 patent at Abstract ("According to the protocol, a location string can be spontaneously and dynamically changed"), 2:22-26 ("Relationships between identification strings and location strings can be dynamically and spontaneously manipulated thus allowing the corresponding data relationships also to change dynamically, spontaneously, and efficiently"), 20:42-45 ("it is the manipulation of dynamic and spontaneous relationships between indices and locations, not the indices and locations, that is the core significance").<br><br>With respect to "location server," AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Neimat with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| | common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Neimat's disclosure. AWS asserts that Neimat would have been combined with the Data Location References because (1) the "concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science"; (2) "the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science," and (3) "one of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system." These statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine features from any known distributed network with any other known distributed network, since all distributed networks have common goals (e.g., to improve system performance, speed, and efficiency). Moreover, merely doubling any location server, which is not described or rendered obvious, would not yield the claimed invention. Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references Amazon seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the secondary references, such as DNS, do not disclose "location servers" or many other claim elements for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. AWS's assertion that "location is not necessary" is wrong, as evidenced by the plain language of the claims as well as the discussion of location in the specification and |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| | prosecution history. AWS's efforts to use the '170 patent itself to support an obviousness argument necessarily fails. |
| **[1.c]** wherein data location information for a plurality of data entities is stored in the data location server network, | Kove denies that this element is disclosed by Neimat. <br><br> *See* claim [1.a-1.b]. <br><br> As explained above, the file servers in Neimat are not data location servers and do not store data location information. The file servers instead store records and relationships between memory addresses and server addresses. *See, e.g.*, Neimat at 4:40-60, 7:48-8:15. |
| **[1.d]** at least one of the plurality of data location servers includes location information associated with the identifier string, | Kove denies that this element is disclosed by Neimat. <br><br> *See* claim [1.a-1.c]. <br><br> As explained above, Neimat does not disclose "data location servers," "data location information," "identifier string," or the claimed relationships among them. Further, Amazon fails to explain how a file server, which it identifies as a data "location server," "includes location information.". |
| **[1.e]** each one of the plurality of data location servers comprises a processor and a portion of the data location information, | Kove denies that this element is disclosed by Neimat. <br><br> *See* claim [1.a-1.d]. <br><br> As explained above, Neimat does not disclose "data location servers," "data location information," or the claimed relationships among them. Further, Neimat does not disclose "each one of the plurality of data location servers comprises . . . a portion of the data location information," as the file servers in Neimat are not "data location servers" and do not store data location information. The servers instead store records and relationships between memory addresses and server addresses, and the full set of such |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| | relationships, rather than merely a "portion" of them.   *See ,e.g.* Neimat at 4:40-60, 7:48-8:15, 5:49-67. |
| **[1.f]** the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious. *See* claim [1.a-1.e]. As explained above, Neimat does not disclose "data location servers," "data location information," "a portion of the data location information," or the claimed relationships among them. Furthermore, Neimat does not disclose using a hash function to organize "data location information" across a "plurality of data location servers" because the hash functions disclosed in Neimat distribute records onto file servers, i.e. to distribute the data itself rather than "data location information." As AWS concedes, Neimat does not disclose a hash function or this limitation more broadly. The hash function of claim 1 is used externally to allocate and retrieve particular sets of identifier/location mappings from particular data location servers. '170 patent at 15:12-18 ("The appropriate NDTP server is selected from the table...by applying a [hash] function to the identifier string and using the function result as an index into the NDTP server table."). AWS's contention that this limitation ("hash function") would be obvious in view of Neimat and the Karger references is unavailing. AWS's contention that hash functions were well-known at the time of the '170 patent is irrelevant to an assessment of the obviousness of applying a hash function to organize data location information across data location servers. AWS's improper reliance on the asserted patent's specification and case law (*Symantec*) are unavailing for the same reasons. AWS fails to adduce a single reference that either discloses or suggests the application of hash functions to organize data location information: both Karger references pertain to the organization of data across servers housing that data, rather than to the organization of location information about that data across multiple location servers. *See* |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| | U.S. Patent No. 6,553,420 to Karger at col. 3:23-50 (disclosing the use of a hash function to retrieve a document from a server). AWS's references neither teach nor suggest the problem that the '170 patent is directed to solve: the separation of the "where" (a constellation of location servers informing their clients where a data entity is stored) from the "what" (the data entities themselves) in an extremely large distributed environment. '170 patent at 3:14-25, 20:17-29 ("NDTP… supports an architecture, in which information about where data associated with particular application entities, can be managed and obtained independently of the data itself."). Indeed, the Karger references do not describe the basic architecture of the claim (separating location information from data), data location information or location information (relationship between identifiers and locations or location servers), identifiers (not uniquely associated with entities), location servers (no identifier/location mappings or modifying this information in response to client requests), or clients (no modifying identifier/location mappings). The POSA would have no rationale to combine Neimat with either of the Karger references (or any other reference); to the contrary, for the reasons above, DNS and the Karger references teach away from the claimed invention.<br><br>Further, AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Neimat with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Neimat's disclosure. AWS asserts that hash functions could be combined with Neimat and various other references because they are purportedly well known. Its statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine hash functions into any disclosure. The mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why the POSA would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references AWS seeks to combine are non-analogous art and/or |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| | change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the specifically identified references do not disclose one or more of the claim limitations for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. |
| **[1.g]** each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string. | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.f]. As explained above, Neimat does not disclose "data location servers," "data location information," "portion of the data location information," "identifier string," "hash function" or the claimed relationships among them. Further, Neimat does not disclose "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string," as the file servers in Neimat do not store data location information. The servers instead store records and relationships between memory addresses and server addresses |
| **[2]** The system of claim 1, wherein the location information comprises any portion of a hash table generated with the hash function. | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.g]. There is no disclosure in Neimat or the Karger references of "a hash table generated with the hash function," much less that "location information comprises any portion of a hash table." There is no disclosure of "location information." The POSA would have no rationale to combine Neimat with either of the Karger references; to the contrary, for the reasons above, Neimat and the Karger references teach away from the claimed invention. AWS wholly fails to explain why this claim limitation is met or rendered obvious. |
| **[6.Preamble]** A system for managing data location information and providing the | To the extent the preamble is limiting, Kove denies that this element is disclosed by Neimat. |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| data location information in response to location queries, the system comprising: | *See* claim [1a-1.g]. |
| **[6.a]** a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity; | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.g]. As explained above, Neimat fails to disclose a "location server," an "identifier" that "identifies an entity" and the claims relationships among them. Further, AWS fails to explain how Neimat discloses a "location addition request." |
| **[6.b]** wherein the location server includes a processor; and | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.g]. As explained above, Neimat fails to disclose a "location server." |
| **[6.c]** programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.g]. As explained above, Neimat does not disclose "the location server," "location query," "location information," or the claimed relationships among them. Further, Neimat does not disclose "the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity" or "return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity," as the file servers in Neimat do not store or return data location information. |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity. | The file servers instead store records and relationships between memory addresses and server addresses, and return records. *See, e.g.*, Neimat at 4:40-60, 7:48-8:15. Moreover, each file servers stores the full set of relationships between memory addresses and server addresses. *See, e.g.*, Neimat at 5:49-67. Furthermore, the servers do not send redirect messages, but instead merely communicate with other servers if needed. Finally, Neimat discloses no way for an incorrect file server to know what the correct file server is, and instead merely teaches successively generating additional memory addresses until the correct server is found. |
| **[8]** The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information. | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.g, 6.a-6.c]. |
| **[12]** The system of claim 9, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers. | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.g, 2, 6.a-6.c].<br><br>AWS failed to show that this limitation is described in Neimat or rendered obvious. Further, AWS failed to provide any evidence that claim 9, from which claim 12 depends, is disclosed by DNS or the Karger references. |
| **[15.Preamble]** A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising: | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.pre-1.g.]. |
| **[15.a]** correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1.a and 1.d.]. |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| of data entities, wherein the data entities are stored in corresponding locations in the network; | |
| [15.b] receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities; | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.f, 6.a]. |
| [15.c] determining which of the plurality of location servers includes the location information; | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.g, 6.c.]. |
| [15.d] sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.g, 6.a, 6.c.]. |
| [15.e] sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information. | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.g, 6.a, 6.c.]. |
| [17] The method of claim 16, wherein each one of the plurality of location servers comprises a portion of an indexed table of the identifiers and corresponding associated locations, and wherein | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.g, 6.a, 6.c.]. |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| determining which of the plurality of location servers includes the location information comprises applying one of the identifiers to a hash function to look up corresponding associated locations in the indexed table, the one of the identifiers identifying the data entity. | |

AWS purports to assert that claims 1, 2, 6, 8, 12, 15, and 17 of U.S. Patent No. 7,814,170 ("the '170 patent") are obvious in view of the combination of U.S. Patent No. 6,212,521 to Minami ("Minami"), DNS, and Karger '618/420. AWS further alleges that the operation of DNS is described in BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman. But AWS has failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| **[1.Preamble]** A system for managing data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove admits that Minami discloses a system for managing data stored in a distributed network. |
| **[1.a]** a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and | Kove denies that this element is disclosed by Minami. Minami does not disclose the claimed "identifier string," but instead describes a non-unique keyword that does not uniquely identify an entity. *See, e.g.,* Neimat at 8:61-9:67 (search keywords may be mapped to multiple data objects, as well as to different data objects within different "areas" of the network); Fig. 3, Fig. 20. An "identifier string" is |

---

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[3] Kove incorporates by reference Exhibit 1A of its Contentions, which discusses DNS. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276, which discusses DNS.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| | expressly described in the '170 patent as "a *unique* string with which zero or more location strings are associated in an NDTP server." '170 patent at 4:10-12 (emphasis added). The identifier string must "be unique to a particular entity," '170 patent at 4:39-49, i.e. it cannot identify more than one data entity.<br><br>Minami does not disclose "a data repository," but instead describes servers that store both non-unique keywords and records. Data location servers and data repositories are, however, separate machines within the distributed network architecture claimed by the '170 patent. *See, e.g.*, '170 patent at Fig. 11, 2:30-45 (describing the "data repository" and "a first server entity operative to locate data" as separate components), 4:58-67 ("When a query is performed for an entity key, the NDTP server supplies the set of data repositories in which data may be found for that entity key."). The prosecution history further supports this separation. |
| **[1.b]** a data location server network comprising a plurality of data location servers, | Kove denies that this element is disclosed by Minami or other references, or that it is rendered obvious.<br><br>*See* claim [1.a].<br><br>The specification of the '170 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from NDTP clients." '170 patent at 4:17-20 (emphasis added). Specifically, the "location servers" of the '170 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See* '170 patent at 4:14-17 (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the entity key and the data repository's data location specifier." '170 patent at 4:61-64. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| | data associated with an identifier is added to a new location. *See, e.g.,* '170 patent at Abstract ("According to the protocol, a location string can be spontaneously and dynamically changed"), 2:22-26 ("Relationships between identification strings and location strings can be dynamically and spontaneously manipulated thus allowing the corresponding data relationships also to change dynamically, spontaneously, and efficiently"), 20:42-45 ("it is the manipulation of dynamic and spontaneous relationships between indices and locations, not the indices and locations, that is the core significance").<br><br>AWS fails to explain how the primary servers in Minami are "data location servers," and in fact concedes that they are not. Moreover, Minami does not disclose the claimed "data location server network" or "a plurality of data location servers." The primary servers in Minami are not data location servers. The servers in Minami do not store data location information and instead store *non-unique keywords and records, i.e.,* the data itself. *See, e.g.,* Neimat at 8:61-9:67; Fig. 3, Fig. 20. Further, the primary servers of Minami cannot determine which other primary servers store location information for an identifier, as not all of the servers in Minami can determine the appropriate server; multiple servers can be involved, and other functions that are unknown to a particular server can be used. *See, e.g.,* Neimat at 8:61-9:15, 10:36-60 (a "primary hash function unit 109 and secondary hash function unit 111 are used to obtain a primary and secondary server identifiers, respectively, from a given search keyword."). Nor do primary servers have identifier/location mappings, as they do not have identifiers (as described for 1.a) and do not have locations that are associated with identifiers/entities. Primary server identifiers are not proper locations for an entity's data. Clients in Minami cannot update identifier/location mappings in primary servers.<br><br>With respect to "location server" (and this claim limitation), AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Minami with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| | supply the claim limitations missing from Minami's disclosure. AWS asserts that Minami would have been combined with the Data Location References because (1) the "concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science"; (2) "the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science," and (3) "one of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system." These statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine features from any known distributed network with any other known distributed network, since all distributed networks have common goals (e.g., to improve system performance, speed, and efficiency). Moreover, merely doubling any location server, which is not described or rendered obvious, would not yield the claimed invention. <br><br> Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references Amazon seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the secondary references, such as DNS, do not disclose "location servers" or many other claim elements for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. <br><br> AWS's assertion that "location is not necessary" is wrong, as evidenced by the plain language of the claims as well as the discussion of location in the specification and |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
|  | prosecution history. AWS's efforts to use the '170 patent itself to support an obviousness argument necessarily fails. |
| **[1.c]** wherein data location information for a plurality of data entities is stored in the data location server network, | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1.a-1.b].<br><br>AWS fails to explain how purported data location information is "stored" in the purported data location server network. Moreover, Minami does not disclose "data location information for a plurality of data entities" or "the data location server network." The servers in Minami are not data location servers and do not store data location information. The servers instead store non-unique keywords and records. |
| **[1.d]** at least one of the plurality of data location servers includes location information associated with the identifier string, | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1.a-1.c].<br><br>AWS fails to explain how a purported data location server "includes location information." Moreover, as described above, Minami does not disclose "data location servers," "location information," or "identifier string," or the claimed relationships among them. |
| **[1.e]** each one of the plurality of data location servers comprises a processor and a portion of the data location information, | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1.a-1.d].<br><br>As described above, Minami does not disclose "data location servers," "data location information," or the claimed relationships among them. Further, Minami does not disclose "each one of the plurality of data location servers comprises . . . a portion of the data location information," as the primary servers in Minami do not store data location information. |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| **[1.f]** the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and | Kove denies that this element is disclosed by Minami or other references, or that it is rendered obvious.<br><br>*See* claim [1.a-1.e].<br><br>As described above, Minami does not disclose "data location servers," "data location information," "portion of the data location information," or the claimed relationships among them.<br><br>As AWS concedes, Minami does not disclose a hash function or this limitation more broadly.<br><br>The hash function of claim 1 is used externally to allocate and retrieve particular sets of identifier/location mappings from particular data location servers. '170 patent at 15:12-18 ("The appropriate NDTP server is selected from the table…by applying a [hash] function to the identifier string and using the function result as an index into the NDTP server table."). AWS's contention that this limitation ("hash function") would be obvious in view of Minami and the Karger references is unavailing. AWS's contention that hash functions were well-known at the time of the '170 patent is irrelevant to an assessment of the obviousness of applying a hash function to organize data location information across data location servers. AWS's improper reliance on the asserted patent's specification and case law (*Symantec*) are unavailing for the same reasons. AWS fails to adduce a single reference that either discloses or suggests the application of hash functions to organize data location information: both Karger references pertain to the organization of data across servers housing that data, rather than to the organization of location information about that data across multiple location servers. *See* U.S. Patent No. 6,553,420 to Karger at col. 3:23-50 (disclosing the use of a hash function to retrieve a document from a server). AWS's references neither teach nor suggest the problem that the '170 patent is directed to solve: the separation of the "where" (a constellation of location servers informing their clients where a data entity is stored) from the "what" (the data entities themselves) in an extremely large distributed environment. '170 patent at 3:14-25, 20:17-29 ("NDTP… supports an architecture, in |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| | which information about where data associated with particular application entities, can be managed and obtained independently of the data itself."). Indeed, the Karger references do not describe the basic architecture of the claim (separating location information from data), data location information or location information (relationship between identifiers and locations or location servers), identifiers (not uniquely associated with entities), location servers (no identifier/location mappings or modifying this information in response to client requests), or clients (no modifying identifier/location mappings). The POSA would have no rationale to combine Minami with either of the Karger references (or any other reference); to the contrary, for the reasons above, Minami and the Karger references teach away from the claimed invention. |
| | Further, AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Minami with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Minami's disclosure. AWS asserts that hash functions could be combined with Minami and various other references because they are purportedly well known. Its statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine hash functions into any disclosure. The mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why the POSA would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references AWS seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the specifically identified references do not disclose one or more of the claim limitations for the reasons given with |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| | respect to those individual references, to the extent those references were even addressed by AWS. |
| **[1.g]** each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string. | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1.a-1.f].<br><br>As described above, Minami does not disclose "data location servers," "identifier string," or the claimed relationships among them. Further, Minami does not disclose "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string," as not all of the primary servers in Minami can determine the appropriate server; multiple servers can be involved, and other functions that are unknown to a particular server can be used. *See, e.g.,* Neimat at 8:61-9:15, 10:36-60 (a "primary hash function unit 109 and secondary hash function unit 111 are used to obtain a primary and secondary server identifiers, respectively, from a given search keyword."). |
| **[2]** The system of claim 1, wherein the location information comprises any portion of a hash table generated with the hash function. | Kove denies that this element is disclosed by Minami or other references, or that it is rendered obvious.<br><br>*See* claim [1.a-1.g].<br><br>As described above, Minami does not disclose "location information." Moreover, Minami simply does not disclose a hash table, or a hash table with the claimed relationships. AWS concedes as much. |
| **[6.Preamble]** A system for managing data location information and providing the data location information in response to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1a-1.g]. |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| **[6.a]** a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity; | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1a-1.g].<br><br>AWS has failed to provide any evidence for this limitation. |
| **[6.b]** wherein the location server includes a processor; and | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1a-1.g].<br><br>AWS has failed to provide sufficient evidence for this limitation. |
| **[6.c]** programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1a-1.g].<br><br>AWS has failed to provide sufficient evidence for this limitation.  Further, Minami does not disclose "wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity." Minami does not disclose redirect messages back to the client, but instead has its servers pass messages to one another. *See, e.g.*, Neimat at 8:61-9:67.  Further, the servers in Minami are not data location servers and do not store data location information (they store records), or information from which a client could calculate a location, or a second data location server that contains a location string. |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| redirect message comprising a list of at least one other location server known to have the location information for the desired entity. | |
| [8] The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information. | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1a-1.g].<br><br>AWS has failed to provide sufficient evidence for this limitation. |
| [12] The system of claim 9, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers. | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1a-1.g].<br><br>AWS has failed to provide sufficient evidence for this limitation. Further, AWS failed to provide any evidence that claim 9, from which claim 12 depends, is disclosed by Minami, DNS, or the Karger references. |
| [15.Preamble] A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising: | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.g].<br><br>AWS has failed to provide sufficient evidence for this limitation. |
| [15.a] correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network; | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.g].<br><br>AWS has failed to provide any evidence for this limitation. |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| **[15.b]** receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities; | Kove denies that this element is disclosed by Minami. <br><br> *See* claim [1pre-1.g]. <br><br> AWS has failed to provide sufficient evidence for this limitation. |
| **[15.c]** determining which of the plurality of location servers includes the location information; | Kove denies that this element is disclosed by Minami. <br><br> *See* claim [1pre-1.g]. <br><br> AWS has failed to provide sufficient evidence for this limitation. |
| **[15.d]** sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and | Kove denies that this element is disclosed by Minami. <br><br> *See* claim [1pre-1.g]. <br><br> AWS has failed to provide sufficient evidence for this limitation. |
| **[15.e]** sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information. | Kove denies that this element is disclosed by Minami. <br><br> *See* claim [1pre-1.g]. <br><br> AWS has failed to provide sufficient evidence for this limitation. |
| **[17]** The method of claim 16, wherein each one of the plurality of location servers comprises a portion of an indexed table of the identifiers and corresponding associated locations, and wherein determining which of the plurality of | Kove denies that this element is disclosed by Minami. <br><br> *See* claim [1pre-1.g]. <br><br> AWS has failed to provide sufficient evidence for this limitation. |

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| location servers includes the location information comprises applying one of the identifiers to a hash function to look up corresponding associated locations in the indexed table, the one of the identifiers identifying the data entity. | |

AWS purports to assert that U.S. Patent No. 7,103,640 ("the '640 patent") claims 17 and 18 are anticipated by, and claim 24 is obvious in view of, the BIND 8.1 version of DNS. AWS further alleges that the operation of DNS is described in BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman. But AWS has failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman.

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| **[17.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove denies that DNS discloses the limitations of the preamble.<br><br>*See* claim [17.a, 17.b] re "location" and "data repository." |
| **[17.a]** a plurality of data repositories configured to store data, wherein the data is associated with a respective identifier string in each data repository; | Kove denies that this element is disclosed by DNS.<br><br>DNS does not disclose a "a plurality of data repositories configured to store data." While AWS identifies DNS "mailbox data" and "host data" as the requisite "data repository," |

---

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[3] Kove incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276.

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | these components of DNS comprise only *data*, not the repository on which such data resides. *See, e.g.*, '170 patent at col. 1, l. 58-67 ("Typically, each machine in which some portion of the data in a distributed data collection may reside is called a 'data repository machine,' or simply a 'data repository'"); RFC1034 at 3 (describing "host addresses" and "mailbox data" as "data associated with a name"). DNS instead discloses name servers as the "repositories of information that make up the domain database," RFC1034 at 18, but Amazon identifies these name servers as the "data location servers" of claim 1. Data location servers and data repositories are, however, separate machines within the distributed network architecture claimed by the '640 patent. *See, e.g.*, '170 patent at Fig. 11, 2:30-45 (describing the "data repository" and "a first server entity operative to locate data" as separate components), 4:58-67 ("When a query is performed for an entity key, the NDTP server supplies the set of data repositories in which data may be found for that entity key."). The prosecution history further supports this separation. |
| | DNS does not disclose an "identifier string" or "wherein the data is associated with a respective identifier string in each data repository." An "identifier string" is expressly described in the '640 patent as "a *unique* string with which zero or more location strings are associated in an NDTP server." '170 patent at 4:10-12 (emphasis added).[4] The identifier string must "be unique to a particular entity," '170 patent at 4:39-49, i.e. it cannot identify more than one data entity. By contrast, the "domain name" designated by AWS as the "identifier string" does not constitute a unique string as described in the specification of the '640 patent because each domain name can correspond to multiple host IP addresses or mailboxes, which constitute the "data entities" under Amazon's theory of invalidity. *See, e.g.*, RFC1034 at 14 (showing the domain names "Venera.ISI.EDI" and "VAXA.ISI.EDU" as each corresponding to two different IP addresses, or hosts), 17 (showing the domain names "Venera.ISI.EDI" and "VAXA.ISI.EDI" as resolving to all mailboxes ending in ISI.EDU). |
| **[17.b]** a data location sewer [sic] network having a plurality of data location servers, | Kove denies that this element is disclosed in DNS. |

---

[4] All citations to the '170 patent are also found in the related '640 patent.

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| each of the plurality of data location servers containing location strings associated with respective identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps: | There is no "data location server" (much less a plurality or network of them) disclosed by DNS. The "name servers" of DNS are not capable of modifying identifier/location mappings in response to location request messages (from clients). The specification of the '170 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from NDTP clients." '170 patent at 4:17-20 (emphasis added). Specifically, the "location servers" of the '170 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See* '170 patent at 4:14-17 (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the entity key and the data repository's data location specifier." '170 patent at 4:61-64. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '170 patent at Abstract ("According to the protocol, a location string can be spontaneously and dynamically changed"), 2:22-26 ("Relationships between identification strings and location strings can be dynamically and spontaneously manipulated thus allowing the corresponding data relationships also to change dynamically, spontaneously, and efficiently"), 20:42-45 ("it is the manipulation of dynamic and spontaneous relationships between indices and locations, not the indices and locations, that is the core significance").<br><br>By contrast, the "name servers" disclosed by DNS maintain *static* mappings between domain names and IP addresses, which are refreshed at pre-determined intervals by downloading a master file that needs to first be physically edited by a system administrator. RFC1034 at 6-7, 28. "Name servers" do not update their mappings dynamically, i.e. "in response to" update requests from client machines that are sent in real time as changes to identifier/location mappings occur, as contemplated by the '170 patent. Instead, name servers only refresh themselves at pre-determined intervals with new zone data physically edited by system administrators. The name servers of DNS |

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | also cannot determine which other name servers store location information for an identifier, as that information is not stored. Nor do name servers have identifier/location mappings, as they do not have identifiers (as described for 17.a) and do not have locations that are associated with identifiers/entities. Resource records encompass many types of data that are not locations. Clients in DNS cannot update identifier/location mappings in name servers. |
| **[17.c]** in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [17.a, 17.b].<br><br>As explained above, DNS does not disclose a "data location server," "location string," "identifier string," "data location request," or "client."<br><br>DNS does not disclose a "redirect message" or any of this claim limitation because the name servers to which DNS queries are forwarded are not "known to have the location information for the desired entity." Because the domain name space of DNS is split into "separate sets of local information called zones" which are managed by different entities, name servers generally do not know which other name servers contains the resource records to answer a given query. RFC1034 at 6-7. Consequently, multiple redirects are often necessary. *See* RFC1034 at 17-18 (describing the "essential task" of name servers as answering queries "using data in *its zones*" and describing name servers as capable of making referrals to other name servers that are merely "closer" to the desired information) (emphasis added). Crucially, "a name server that doesn't have the requested information *may know* a name server that does." RFC1034 at 17 (emphasis added). Unlike the "redirect message" claimed by the '170 patent, DNS discloses no function whereby a name server can *actually know* which name server contains the desired resource records. *See, e.g.,* '170 patent at 14:43-15:35. The names servers of DNS are not configured to determine which other name server stores particular IP addresses for a request, as they are organized in a hierarchical tree structure that is not based on a hash function and are merely programmed to get "closer" to a name server with the requested information. Only for certain requests, with canonical names, can a name server identify |

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | a name server to respond to a request, but this functionality does not apply to *each* name server with respect to any given domain name and it is not based on a hash function applied to a domain name. RFC1034 at 3-4, 14-15, 18-19, 25-26. *See* [claim 6.c]. . |
| **[18.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | Kove denies that this claim is disclosed by DNS. *See* claim [17.pre]. |
| **[18.a]** a data repository configured to store data, wherein the data is associated with an identifier string; | Kove denies that this claim is disclosed by DNS. *See* claim [17.a]. |
| **[18.b]** a client responsive to a data query to query a data location server for location information associated with the identifier string; | Kove denies that this claim is disclosed by DNS. *See* claim [17.a-17.c]. |
| **[18.c]** a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client: | Kove denies that this claim is disclosed by DNS. *See* claim [17.a-17.c]. |
| **[18.d]** if the data location server contains the location string associated with the identification string provided in the data location request, the data location server | Kove denies that this claim is disclosed by DNS. *See* claim [17.a-17.c]. |

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| transmits location information for use by the client to calculate a location of the data associated with the identification string; | |
| [18.e] if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | Kove denies that this claim is disclosed by DNS.<br><br>*See* claim [17.a-17.c]. |
| [24] The system of claim 18, wherein the location information comprises a portion of a hash table distributed over the plurality of data location servers. | Kove denies that this element is disclosed by DNS or other references, or that it is rendered obvious.<br><br>*See* claim [18.a-18.e].<br><br>As explained above, DNS does not disclose a "data location server" or "location information."<br><br>The disclosure in DNS of name servers that "internally form tree or hash structures for the name space", RFC1034 at 13 (emphasis added), is inapposite to the limitation that a "the location information comprises a portion of a hash table distributed over the plurality of data location servers." DNS neither discloses nor suggests that a hash function or hash table be used to determine which resource records (the purported "data location information") are allocated to which name servers (Amazon's "data location servers"); at best, it suggests that the resource records stored by a name server may be internally organized as a tree or a "hash structure." By contrast, the hash function of claim 24 is used externally to allocate and retrieve particular sets of identifier/location mappings |

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | from particular data location servers. '170 patent at 15:12-18 ("The appropriate NDTP server is selected from the table…by applying a [hash] function to the identifier string and using the function result as an index into the NDTP server table."). |
| | AWS's contention that this limitation ("hash function") would be obvious in view of DNS and the Karger references is similarly unavailing. Amazon's contention that hash functions were well-known at the time of the '170 patent is irrelevant to an assessment of the obviousness of applying a hash function to organize data location information across data location servers. AWS's improper reliance on the asserted patent's specification and case law (*Symantec*) are unavailing for the same reasons. Amazon fails to adduce a single reference that either discloses or suggests the application of hash functions to organize data location information: both Karger references pertain to the organization of data across servers housing data, rather than to the organization of location information about that data across multiple location servers. *See* U.S. Patent No. 6,553,420 to Karger at col. 3:23-50 (disclosing the use of a hash function to retrieve a document from a server). Amazon's references neither teach nor suggest the problem that the '170 patent is directed to solve: the separation of the "where" (a constellation of location servers informing their clients where a data entity is stored) from the "what" (the data entities themselves) in an extremely large distributed environment. '170 patent at 3:14-25, 20:17-29 ("NDTP… supports an architecture, in which information about where data associated with particular application entities, can be managed and obtained independently of the data itself."). Indeed, the Karger references do not describe the basic architecture of the claim (separating location information from data), data location information or location information (relationship between identifiers and locations or location servers), identifiers (not uniquely associated with entities), location servers (no identifier/location mappings or modifying this information in response to client requests), or clients (no modifying identifier/location mappings). The POSA would have no rationale to combine DNS with either of the Karger references (or any other reference); to the contrary, for the reasons above, DNS and the Karger references teach away from the claimed invention. |

| U.S. Patent No. 7,103,640 | Domain Name System (DNS) and, for Claim 24, Karger '618/420[2,3] |
| --- | --- |
| | Further, AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined DNS with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible.  AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from DNS's disclosure.  AWS asserts that hash functions could be combined with DNS and various other references because they are purportedly well known.  Its statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine hash functions into any disclosure. The mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why the POSA would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references AWS seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the specifically identified references do not disclose one or more of the claim limitations for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. |

EXHIBIT 2B: U.S. 7,103,640 Validity Claim Chart in View of the Cache Resolver System et al.

AWS purports to assert that U.S. Patent No. 7,103,640 ("the '640 patent") claims 17, 18, and 24 are anticipated by the Cache Resolver system. AWS further alleges that the operation of the Cache Resolver System is described in Distributed Web Caching System with Consistent Hashing by Alexander Sherman (1999) ("Sherman"), and Web Caching with Consistent Hashing by Karger, Sherman, et al. (March 4, 1999) ("Karger/Sherman"). But AWS has failed to (1) sufficiently identify any version of any cache resolver system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system. AWS has also failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to (1) establish that any Cache Resolver System necessarily encompassed any DNS system, (2) identify any version of any such combined system, (3) produce any such combined system, (4) establish that any such combined system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (5) establish that any of the documents AWS identifies refer to any identified combined system, much less the same combined system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "Cache Resolver System" reference is thus limited only to the documents Sherman and Karger/Sherman,[2] which are improperly discussed together without obviousness arguments (as is RFC1034). AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including Sherman, Karger/Sherman, and RFC1034.

---

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] While AWS has failed to timely identify any evidence in support of its Cache Resolver System-based contentions other than Sherman and Karger/Sherman, Kove's analysis applies equally to any Cache Resolver System-related reference.

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
| [17.Preamble] A system for retrieving data location information for data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove denies that Cache Resolver System ("CRS") discloses the limitations of the preamble.<br><br>*See* claim [17.a, 17.b] re "location" and "data repository." |
| [17.a] a plurality of data repositories configured to store data, wherein the data is associated with a respective identifier string in each data repository; | Kove denies that this element is disclosed by CRS.<br><br>CRS does not disclose a "data repository" or the rest of this limitation. While AWS identifies "mailbox data" and "host data" as the requisite "data repository," these components of DNS comprise only *data*, not the repository on which such data resides. *See, e.g.*, '170[5] patent at col. 1, l. 58-67 ("Typically, each machine in which some portion of the data in a distributed data collection may reside is called a 'data repository machine,' or simply a 'data repository'"); RFC1034 at 3 (describing "host addresses" and "mailbox data" as "data associated with a name"). DNS instead discloses name servers as the "repositories of information that make up the domain database," RFC1034 at 18, but AWS identifies these name servers as the "data location servers" of claim 1. Data location servers and data repositories are, however, separate machines within the distributed network architecture claimed by the '170 patent. *See, e.g.*, '170 patent at Fig. 11, 2:30-45 (describing the "data repository" and "a first server entity operative to locate data" as separate components), 4:58-67 ("When a query is performed for an entity key, |

---

[3] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[4] Kove incorporates by reference Exhibit 2A of its Contentions, which discusses DNS. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276, which discusses DNS.

[5] All citations to the '170 patent are also found in the related '640 patent.

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
| | the NDTP server supplies the set of data repositories in which data may be found for that entity key."). The prosecution history further supports this separation. The modified DNS servers and the cache servers of CRS do not alter this analysis. *See, e.g.*, Sherman at 34-37; Karger/Sherman at 9-10.<br><br>CRS does not disclose an "identifier string" or an "identifier string [that] identifies the data entity." An "identifier string" is expressly described in the '170 patent as "a *unique* string with which zero or more location strings are associated in an NDTP server." '170 patent at 4:10-12 (emphasis added). The identifier string must "be unique to a particular entity," '170 patent at 4:39-49, i.e. it cannot identify more than one data entity. By contrast, the "domain name" designated by AWS as the "identifier string" does not constitute a unique string as described in the specification of the '640 patent because each domain name can correspond to multiple host IP addresses or mailboxes, which constitute the "data entities" under AWS's theory of invalidity. *See, e.g.*, RFC1034 at 14 (showing the domain names "Venera.ISI.EDI" and "VAXA.ISI.EDU" as each corresponding to two different IP addresses, or hosts), 17 (showing the domain names "Venera.ISI.EDI" and "VAXA.ISI.EDI" as resolving to all mailboxes ending in ISI.EDU). The purported location strings in DNS thus correspond to multiple entities, not the uniquely identified entity. The URLs taken in as an input by the CRS resolve to five virtual names, and each virtual name uses DNS to resolve to a list of IP addresses instead of just one. *See, e.g.*, Sherman at 34-37; Karger/Sherman at 9-10. Thus, the name servers of CRS return many proxy caches, which corresponds to many entities. |
| [17.b] a data location sewer [sic] network having a plurality of data location servers, each of the plurality of data location servers containing location strings associated with respective identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps: | Kove denies that this element is disclosed in CRS.<br><br>There is no "data location server" (much less a plurality or network of them) disclosed by CRS. The "name servers" of DNS are not capable of modifying identifier/location mappings in response to location request messages (from clients). The specification of the '170 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from NDTP clients." '170 patent at 4:17-20 (emphasis added). Specifically, the "location servers" of the '170 |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
| | patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See* '170 patent at 4:14-17 (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the entity key and the data repository's data location specifier." '170 patent at 4:61-64. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '170 patent at Abstract ("According to the protocol, a location string can be spontaneously and dynamically changed"), 2:22-26 ("Relationships between identification strings and location strings can be dynamically and spontaneously manipulated thus allowing the corresponding data relationships also to change dynamically, spontaneously, and efficiently"), 20:42-45 ("it is the manipulation of dynamic and spontaneous relationships between indices and locations, not the indices and locations, that is the core significance"). <br><br> By contrast, the "name servers" disclosed by DNS maintain *static* mappings between domain names and IP addresses, which are refreshed at pre-determined intervals by downloading a master file that needs to first be physically edited by a system administrator. RFC1034 at 6-7, 28. "Name servers" do not update their mappings dynamically, i.e. "in response to" update requests from client machines that are sent in real time as changes to identifier/location mappings occur, as contemplated by the '170 patent. Instead, name servers only refresh themselves at pre-determined intervals with new zone data physically edited by system administrators. The name servers of CRS update themselves by polling the caches, a process that occurs "independently of user requests," *i.e.,* not in response to requests from clients. *See, e.g.,* Sherman at 34-37; Karger/Sherman at 9-10. The name servers also cannot determine which other name servers store location information for an identifier, as that information is not stored. Nor do name servers have identifier/location mappings, as they do not have identifiers (as described for 17.a) and do not have locations that are associated with identifiers/entities. |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
| | Resource records encompass many types of data that are not locations. Clients cannot update identifier/location mappings in name servers. |
| [17.c] in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | Kove denies that this element is disclosed by CRS.

*See* claim [17.a, 17.b].

As explained above, CRS does not disclose a "data location server," "location string," "identifier string," "data location request," or "client."

CRS does not disclose a "redirect message" or the rest of this limitation. If a request fails, then there is a retry or the next request on the list is performed. There is no redirect message that identifies the location server to query. *See, e.g.,* Sherman at 34-37; Karger/Sherman at 9-10.

DNS does not disclose a "redirect message" or any of this claim limitation because the name servers to which DNS queries are forwarded are not "known to have the location information for the desired entity." Because the domain name space of DNS is split into "separate sets of local information called zones" which are managed by different entities, name servers generally do not know which other name servers contains the resource records to answer a given query. RFC1034 at 6-7. Consequently, multiple redirects are often necessary. *See* RFC1034 at 17-18 (describing the "essential task" of name servers as answering queries "using data in *its zones*" and describing name servers as capable of making referrals to other name servers that are merely "closer" to the desired information) (emphasis added). Crucially, "a name server that doesn't have the requested information *may know* a name server that does." RFC1034 at 17 (emphasis added). Unlike the "redirect message" claimed by the '640 patent, DNS discloses no function whereby a name server can *actually know* which name server contains the desired resource records. *See, e.g.,* '170 patent at 14:43-15:35. *See* claim [1.g]. The names servers of DNS are not configured to determine which other name server stores particular IP addresses for a request, as they are organized in a hierarchical tree structure that is not based on a hash function and are merely programmed to get "closer" to a name server |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
|  | with the requested information. Only for certain requests, with canonical names, can a name server identify a name server to respond to a request, but this functionality does not apply to *each* name server with respect to any given domain name and it is not based on a hash function applied to a domain name. RFC1034 at 3-4, 14-15, 18-19, 25-26. |
| **[18.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | Kove denies that this claim is disclosed by CRS. *See* claim [17.pre]. |
| **[18.a]** a data repository configured to store data, wherein the data is associated with an identifier string; | Kove denies that this claim is disclosed by CRS. *See* claim [17.a]. |
| **[18.b]** a client responsive to a data query to query a data location server for location information associated with the identifier string; | Kove denies that this claim is disclosed by CRS. *See* claim [17.a-17.c]. |
| **[18.c]** a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client: | Kove denies that this claim is disclosed by CRS. *See* claim [17.a-17.c]. |
| **[18.d]** if the data location server contains the location string associated with the identification string provided in the data | Kove denies that this claim is disclosed by CRS. *See* claim [17.a-17.c]. |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
| location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string; | |
| **[18.e]** if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | Kove denies that this claim is disclosed by CRS.<br><br>*See* claim [17.a-17.c]. |
| **[24]** The system of claim 18, wherein the location information comprises a portion of a hash table distributed over the plurality of data location servers. | Kove denies that this element is disclosed by CRSA.<br><br>*See* claim [17.a-17.c].<br><br>As explained above, CRS does not disclose a "data location server" or "location information."<br><br>The disclosure in DNS of name servers that "internally form tree or hash structures for the name space", RFC1034 at 13 (emphasis added), is inapposite to the limitation that a hash function be used to organize the data location information across the plurality of data location servers." DNS neither discloses nor suggests that a hash function be used to determine which resource records (the purported "data location information") are allocated to which name servers (AWS's "data location servers"); at best, it suggests that the resource records stored by a name server may be internally organized as a tree or a "hash structure." By contrast, the hash function of claim 1 is used externally to allocate and retrieve particular sets of identifier/location mappings from particular data location |

| U.S. Patent No. 7,103,640 | The Cache Resolver System (Sherman and Karger/Sherman)[3,4] |
|---|---|
|  | servers. '170 patent at 15:12-18 ("The appropriate NDTP server is selected from the table…by applying a [hash] function to the identifier string and using the function result as an index into the NDTP server table.").<br><br>Further, CRS purports to have the name servers use a hash function to determine which cache server stores the requested data, not to organize any purported location information across the name servers. The "family of consistent hash functions" disclosed in Sherman and Karger/Sherman does not organize data location information across the DNS name servers that AWS identifies as "location servers," for at least the reasons that CRS does not disclose "data location servers" or "location information." Instead, Sherman and Karger/Sherman disclose using consistent hashing to assign hashed virtual names to a list of available proxy web caches. *See, e.g.*, Sherman at 34-37; Karger/Sherman at 9-10. There is not a hash table. |

AWS purports to assert that claims 17, 18, and 24 of U.S. Patent No. 7,103,640 ("the '640 patent") are obvious in view of the combination of U.S. Patent No. 5,542,087 to Neimat ("Neimat"), DNS and, for claim 24, Karger '618/420. AWS further alleges that the operation of DNS is described in BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman. But AWS has failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| **[17.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove denies that Neimat discloses the limitations of the preamble. *See* claim [17.a, 17.b] re "location" and "data repository." |
| **[17.a]** a plurality of data repositories configured to store data, wherein the data is associated with a respective identifier string in each data repository; | Kove denies that this element is disclosed by Neimat. Neimat does not disclose the claimed "identifier string," but instead describes non-unique key values for autonomous clients that do not uniquely identify an entity. An "identifier |

---

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[3] Kove incorporates by reference Exhibit 2A of its Contentions, which discusses DNS. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276, which discusses DNS.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | string" is expressly described in the '640 patent as "a *unique* string with which zero or more location strings are associated in an NDTP server." '170 patent[4] at 4:10-12 (emphasis added). The identifier string must "be unique to a particular entity," '170 patent at 4:39-49, i.e. it cannot identify more than one data entity. AWS maps the "identifier" as the "Record key value (e.g., value generated from a patient's name)" of Neimat, but Neimat does not disclose that its "record key value" is unique. Instead, Neimat discloses, e.g., "if each key is a respective subject's personal name, it is clear that certain character strings of a common last name such as "Jones" will appear many times in the keys." Neimat at 2:8-10. *See, also, e.g.,* Neimat at 8:28-47, which discloses, e.g., using "Janet Jones" as a patient name key value to produce a record key. |
| | Neimat does not disclose "a data repository . . .," but instead describes file servers that store records and relationships between memory addresses and server addresses. *See, e.g.,* Neimat at 4:40-60, 7:48-8:15. Memory on a file server (which AWS identifies as the "location server") by itself is not the claimed data repository. Data location servers and data repositories are, however, separate machines within the distributed network architecture claimed by the '640 patent. *See, e.g.,* '170 patent at Fig. 11, 2:30-45 (describing the "data repository" and "a first server entity operative to locate data" as separate components), 4:58-67 ("When a query is performed for an entity key, the NDTP server supplies the set of data repositories in which data may be found for that entity key."). The prosecution history further supports this separation. Neimat does not disclose "a location string" or "data location servers," as the servers in Neimat are not data location servers and do not store location strings. The servers instead store records and relationships between memory addresses and server addresses. *See, e.g.,* Neimat at 4:40-60, 7:48-8:15. |
| | The specification of the '640 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from NDTP clients." '170 patent at 4:17-20 (emphasis added). Specifically, |

---

[4] All citations to the '170 patent are also found in the related '640 patent.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | the "location servers" of the '640 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See* '170 patent at 4:14-17 (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular data identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the entity key and the data repository's data location specifier." '170 patent at 4:61-64. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '170 patent at Abstract ("According to the protocol, a location string can be spontaneously and dynamically changed"), 2:22-26 ("Relationships between identification strings and location strings can be dynamically and spontaneously manipulated thus allowing the corresponding data relationships also to change dynamically, spontaneously, and efficiently"), 20:42-45 ("it is the manipulation of dynamic and spontaneous relationships between indices and locations, not the indices and locations, that is the core significance"). <br><br> With respect to "location server," AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Neimat with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Neimat's disclosure. AWS asserts that Neimat would have been combined with the Data Location References because (1) the "concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science"; (2) "the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science," and (3) "one of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system." These statements are vague, overbroad, and conclusory, |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine features from any known distributed network with any other known distributed network, since all distributed networks have common goals (e.g., to improve system performance, speed, and efficiency). |
| | Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references Amazon seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the secondary references, such as DNS, do not disclose "location servers" or many other claim elements for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. |
| | AWS's assertion that "location is not necessary" is wrong, as evidenced by the plain language of the claims as well as the discussion of location in the specification and prosecution history. AWS's efforts to use the '170 patent itself to support an obviousness argument necessarily fails. |
| [17.b] a data location sewer [sic] network having a plurality of data location servers, each of the plurality of data location servers containing location strings associated with respective identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps: | Kove denies that this element is disclosed in Neimat. *See* claim [17.a]. As described above, Neimat does not disclose "a plurality of data location servers," "location strings," "identifier strings," or the claimed relationships among them. The servers in Neimat are not data location servers. The servers in Neimat do not store data location information or location strings and instead store non-unique key values and records for autonomous clients. |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | |
| **[17.c]** in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | Kove denies that this element is disclosed in Neimat. *See* claim [17.a-17.b]. As described above, Neimat does not disclose a "data location server," "location string," or the claimed relationships among them. Further, Neimat does not disclose a "redirect message" or the other aspects of this claim limitation. The servers in Neimat do not store or transmit location strings. The servers instead store records and relationships between memory addresses and server addresses, and return records. *See, e.g.*, Neimat at 4:40-60, 7:48-8:15. Moreover, the servers store all the relationships between memory addresses and server addresses. *See ,e.g. id.* at 5:49-67 Moreover, the servers do not send redirect messages, but instead communicate with other servers if needed. *See, e.g.*, Neimat at 5:49-67; Fig. 2. |
| **[18.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | Kove denies that this element is disclosed by Neimat. *See* claim [17.pre]. |
| **[18.a]** a data repository configured to store data, wherein the data is associated with an identifier string; | Kove denies that this element is disclosed by Neimat. *See* claim [17.a]. |
| **[18.b]** a client responsive to a data query to query a data location server for location information associated with the identifier string; | Kove denies that this element is disclosed by Neimat. *See* claim [17.a-17.c]. |
| **[18.c]** a data location server network comprising a plurality of data location | Kove denies that this element is disclosed by Neimat. |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client: | *See* claim [17.a-17.c]. |
| [18.d] if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string; | Kove denies that this element is disclosed by Neimat. *See* claim [17.a-17.c]. As described above, Neimat does not disclose "the data location server," "the location string," "the identification string," "the data location request," "location information," or the claimed relationships among them. Further, Neimat does not disclose "if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string." The servers in Neimat do not store or return data location information. The servers instead store records and relationships between memory addresses and server addresses, and return records. *See, e.g.*, Neimat at 4:40-60, 7:48-8:15. Moreover, the servers store all the relationships between memory addresses and server addresses. *See, e.g., id.* at 5:49-67. Moreover, the servers do not transmit location information for calculating a location, but instead communicate with other servers if needed to provide records. *See, e.g.*, Neimat at 5:49-67; Fig. 2. |
| [18.e] if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the | Kove denies that this element is disclosed by Neimat. *See* claim [17.a-17.c]. |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | |
| [24] The system of claim 18, wherein the location information comprises a portion of a hash table distributed over the plurality of data location servers. | Kove denies that this claim is disclosed by Neimat or other references, or that it is rendered obvious. *See* claim [17.a-17.c, 18.a-18.e]. As described above, Neimat does not disclose "data location servers," "data location information," "a portion of the data location information," or the claimed relationships among them. Furthermore, Neimat does not disclose using hash functions and/or hash tables to organize "location information" across a "plurality of data location servers." The hash functions disclosed in Neimat distribute records onto file servers, i.e. to distribute the data itself rather than "data location information." AWS concedes that Neimat does not disclose a hash function, hash table, or this limitation more broadly. The hash table of claim 24 is used to allocate and retrieve particular sets of identifier/location mappings from particular data location servers. '170 patent at 15:12-18 ("The appropriate NDTP server is selected from the table…by applying a [hash] function to the identifier string and using the function result as an index into the NDTP server table."). AWS's contention that this limitation would be obvious in view of Neimat and the Karger references is unavailing. AWS's contention that hash functions were well-known at the time of the '640 patent is irrelevant to an assessment of the obviousness of applying a hash function to organize data location information across data location servers. AWS's improper reliance on the asserted patent's specification and case law (*Symantec*) are unavailing for the same reasons. AWS fails to adduce a single reference that either discloses or suggests the application of hash functions to organize data location information: both Karger references pertain to the organization of data across servers |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | housing that data, rather than to the organization of location information about that data across multiple location servers. *See* U.S. Patent No. 6,553,420 to Karger at col. 3:23-50 (disclosing the use of a hash function to retrieve a document from a server). AWS's references neither teach nor suggest the problem that the '640 patent is directed to solve: the separation of the "where" (a constellation of location servers informing their clients where a data entity is stored) from the "what" (the data entities themselves) in an extremely large distributed environment. '170 patent at 3:14-25, 20:17-29 ("NDTP… supports an architecture, in which information about where data associated with particular application entities, can be managed and obtained independently of the data itself."). Indeed, the Karger references do not describe the basic architecture of the claim (separating location information from data), data location information or location information (relationship between identifiers and locations or location servers), identifiers (not uniquely associated with entities), location servers (no identifier/location mappings or modifying this information in response to client requests), or clients (no modifying identifier/location mappings). The POSA would have no rationale to combine Neimat with either of the Karger references (or any other reference); to the contrary, for the reasons above, DNS and the Karger references teach away from the claimed invention. <br><br>Further, AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Neimat with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Neimat's disclosure. AWS asserts that hash functions could be combined with Neimat and various other references because they are purportedly well known. Its statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine hash functions into any disclosure. The mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why the POSA would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat,  DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | references AWS seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the specifically identified references do not disclose one or more of the claim limitations for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS.<br><br>Moreover, there is no disclosure in Neimat or the Karger references of "a hash table," much less that "location information comprises a portion of a hash table."  AWS thus wholly fails to explain why this claim limitation is met or rendered obvious. |

AWS purports to assert that claims 17, 18, and 24 of U.S. Patent No. 7,103,640 ("the '640 patent") are obvious in view of the combination of U.S. Patent No. 6,212,521 to Minami ("Minami"), DNS and, for claim 24, Karger '618/420. AWS further alleges that the operation of DNS is described in BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman. But AWS has failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| **[17.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove denies that Minami discloses this limitation.<br><br>*See* claim [17.a, 17.b] re "location" and "data repository." |
| **[17.a]** a plurality of data repositories configured to store data, wherein the data is associated with a respective identifier string in each data repository; | Kove denies that this element is disclosed by Minami.<br><br>Minami does not disclose "a data repository," but instead describes servers that store both non-unique keywords and records. *See, e.g.,* Minami at 8:61-9:67 (search keywords may be mapped to multiple data objects, as well as to different data objects within different |

---

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[3] Kove incorporates by reference Exhibit 2A of its Contentions, which discusses DNS. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276, which discusses DNS.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | "areas" of the network); Fig. 3, Fig. 20. Data location servers and data repositories are, however, separate machines within the distributed network architecture claimed by the '170 patent. *See, e.g.*, '170 patent[4] at Fig. 11, 2:30-45 (describing the "data repository" and "a first server entity operative to locate data" as separate components), 4:58-67 ("When a query is performed for an entity key, the NDTP server supplies the set of data repositories in which data may be found for that entity key."). The prosecution history further supports this separation.<br><br>Minami does not disclose the claimed "identifier string," but instead describes a non-unique keyword that does not uniquely identify an entity. An "identifier string" is expressly described in the '170 patent as "a *unique* string with which zero or more location strings are associated in an NDTP server." '170 patent at 4:10-12 (emphasis added). The identifier string must "be unique to a particular entity," '170 patent at 4:39-49, i.e. it cannot identify more than one data entity. |
| **[17.b]** a data location sewer [sic] network having a plurality of data location servers, each of the plurality of data location servers containing location strings associated with respective identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps: | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [17.a].<br><br>The specification of the '170 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from NDTP clients." '170 patent at 4:17-20 (emphasis added). Specifically, the "location servers" of the '170 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See* '170 patent at 4:14-17 (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the entity key and the data repository's data |

---

[4] All citations to the '170 patent are also found in the related '640 patent.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | location specifier." '170 patent at 4:61-64. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '170 patent at Abstract ("According to the protocol, a location string can be spontaneously and dynamically changed"), 2:22-26 ("Relationships between identification strings and location strings can be dynamically and spontaneously manipulated thus allowing the corresponding data relationships also to change dynamically, spontaneously, and efficiently"), 20:42-45 ("it is the manipulation of dynamic and spontaneous relationships between indices and locations, not the indices and locations, that is the core significance"). |
| | AWS fails to explain how the primary servers in Minami are "data location servers," and in fact concedes that they are not. Moreover, Minami does not disclose the claimed "data location server network" or "a plurality of data location servers." The primary servers in Minami are not data location servers. The servers in Minami do not store data location information and instead store non-unique keywords and records, *i.e.*, the data itself. *See, e.g.,* Minami at 8:61-9:67; Fig. 3, Fig. 20. Further, the primary servers of Minami cannot determine which other primary servers store location information for an identifier, as not all of the servers in Minami can determine the appropriate server; multiple servers can be involved, and other functions that are unknown to a particular server can be used. *See, e.g.,* Minami at 8:61-9:15, 10:36-60 (a "primary hash function unit 109 and secondary hash function unit 111 are used to obtain a primary and secondary server identifiers, respectively, from a given search keyword."). Nor do primary servers have identifier/location mappings, as they do not have identifiers (as described for 17.a) and do not have locations that are associated with identifiers/entities. Primary server identifiers are not proper locations for an entity's data. Clients in Minami cannot update identifier/location mappings in primary servers. |
| | With respect to "location server" (and this claim limitation), AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Minami with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Minami's disclosure. AWS asserts that Minami would have been combined with the Data Location References because (1) the "concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science"; (2) "the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science," and (3) "one of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system." These statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine features from any known distributed network with any other known distributed network, since all distributed networks have common goals (e.g., to improve system performance, speed, and efficiency). Moreover, merely doubling any location server, which is not described or rendered obvious, would not yield the claimed invention. <br><br> Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references Amazon seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the secondary references, such as DNS, do not disclose "location servers" or many other claim elements for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. <br><br> AWS's assertion that "location is not necessary" is wrong, as evidenced by the plain language of the claims as well as the discussion of location in the specification and |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | prosecution history. AWS's efforts to use the '170 patent itself to support an obviousness argument necessarily fails. |
| [17.c] in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | Kove denies that this element is disclosed by Minami. *See* claim [17.a, 17.b]. As described above, Minami does not disclose a "data location server," "location string," "identification string," or the claimed relationships among them. Further, Minami does not disclose "receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request," as the servers in Minami do not process requests for data location, but instead requests for records. Further, Minami does not disclose a "redirect message" or the rest of the limitation. Minami does not disclose redirect messages back to the client, but instead has its servers pass messages to one another. *See, e.g.*, Minami at 8:61-9:67. Further, the servers in Minami are not data location servers and do not store data location information (they store records), or information from which a client could calculate a location, or a second data location server that contains a location string. |
| [18.Preamble] A system for retrieving data location information for data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Minami. *See* claim [17.pre]. |
| [18.a] a data repository configured to store data, wherein the data is associated with an identifier string; | Kove denies that this element is disclosed by Minami. *See* claim [17.a, 17.b]. |
| [18.b] a client responsive to a data query to query a data location server for | Kove denies that this element is disclosed by Minami. *See* claim [17.a-17.c]. |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| location information associated with the identifier string; | |
| **[18.c]** a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client: | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [17.a-17.c]. |
| **[18.d]** if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string; | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [17.a-17.c].<br><br>As described above, Minami does not disclose "the data location server," "the location string," "the identification string," "the data location request," "location information," or the claimed relationships among them. Further, Minami does not disclose "if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string." The servers in Minami are not data location servers and do not receive data location requests. The servers in Minami do not store data location information (they store records) or location strings and instead store non-unique keywords and records. Minami does not disclose clients that calculate locations of different servers, as the servers in Minami communicate directly with one another. |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| [18.e] if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | Kove denies that this element is disclosed by Minami. *See* claim [17.a-17.c]. |
| [24] The system of claim 18, wherein the location information comprises a portion of a hash table distributed over the plurality of data location servers. | Kove denies that this element is disclosed by Minami or other references, or that it is rendered obvious. *See* claim [17.a-17.c]. As AWS concedes, Minami does not disclose a hash function, hash table, or this limitation more broadly. The hash function of claim 24 is used externally to allocate and retrieve particular sets of identifier/location mappings from particular data location servers. '170 patent at 15:12-18 ("The appropriate NDTP server is selected from the table…by applying a [hash] function to the identifier string and using the function result as an index into the NDTP server table."). AWS's contention that this limitation ("hash function") would be obvious in view of Minami and the Karger references is unavailing. AWS's contention that hash functions were well-known at the time of the '640 patent is irrelevant to an assessment of the obviousness of applying a hash function to organize data location information across data location servers. AWS's improper reliance on the asserted patent's specification and case law (*Symantec*) are unavailing for the same reasons. AWS fails to adduce a single reference that either discloses or suggests the application of hash functions to organize data location information: both Karger references pertain to the organization of data across |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | servers housing that data, rather than to the organization of location information about that data across multiple location servers. *See* U.S. Patent No. 6,553,420 to Karger at col. 3:23-50 (disclosing the use of a hash function to retrieve a document from a server). AWS's references neither teach nor suggest the problem that the '640 patent is directed to solve: the separation of the "where" (a constellation of location servers informing their clients where a data entity is stored) from the "what" (the data entities themselves) in an extremely large distributed environment. '170 patent at 3:14-25, 20:17-29 ("NDTP… supports an architecture, in which information about where data associated with particular application entities, can be managed and obtained independently of the data itself."). Indeed, the Karger references do not describe the basic architecture of the claim (separating location information from data), data location information or location information (relationship between identifiers and locations or location servers), identifiers (not uniquely associated with entities), location servers (no identifier/location mappings or modifying this information in response to client requests), or clients (no modifying identifier/location mappings). The POSA would have no rationale to combine Minami with either of the Karger references (or any other reference); to the contrary, for the reasons above, Minami and the Karger references teach away from the claimed invention.<br><br>Further, AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Minami with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Minami's disclosure. AWS asserts that hash functions could be combined with Minami and various other references because they are purportedly well known. Its statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine hash functions into any disclosure. The mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why the POSA would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references AWS seeks |

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the specifically identified references do not disclose one or more of the claim limitations for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. |

AWS purports to assert that U.S. Patent No. 7,233,978 ("the '978 patent") claims 3, 6, 10, and 14 are anticipated by, and claims 17, 23, 24, 30 are obvious in view of, the BIND 8.1 version of DNS. AWS further alleges that the operation of DNS is described in BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman. But AWS has failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman.

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| **[1.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1.a-1.c] re "location server" and "location information." |
| **[1.a]** a first location server containing a first set of location information corresponding to at least one entity, the location information | Kove denies that this element is disclosed in DNS.<br><br>There is no "location server" disclosed by DNS. The "name servers" of DNS are not capable of modifying identifier/location mappings in response to location request |

---

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[3] Kove incorporates by reference Exhibit 3C of its Contentions, which discusses Neimat. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276. .

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity | messages (from clients). The specification of the '978 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from clients." '978 patent at 4:19-38 (emphasis added). Specifically, the "location servers" of the '978 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See id.* (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the identifier and the application server's location." '978 patent at 8:14-25. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '978 patent at Abstract, Background.<br><br>By contrast, the "name servers" disclosed by DNS maintain *static* mappings between domain names and IP addresses, which are refreshed at pre-determined intervals by downloading a master file that needs to first be physically edited by a system administrator. RFC1034 at 6-7, 28. "Name servers" do not update their mappings dynamically, i.e. "in response to" update requests from client machines that are sent in real time as changes to identifier/location mappings occur, as contemplated by the '978 patent. Instead, name servers only refresh themselves at pre-determined intervals with new zone data physically edited by system administrators. The name servers of DNS also cannot determine which other name servers store location information for an identifier, as that information is not stored. Nor do name servers have identifier/location mappings, as they do not have identifiers and do not have locations that are associated with identifiers/entities. Resource records encompass many types of data that are not locations. Clients in DNS cannot update identifier/location mappings in name servers. |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | DNS does not disclose an "identifier" or an "identifier [that]t identifies an entity" or a "location string [that] specifies a location of data pertaining to the entity." An "identifier" is expressly described in the '978 patent as "a *unique* encoding, which may be a string in one embodiment, with which zero or more data location specifiers are associated in an NDTP server." '978 patent at 4:19-43 (emphasis added). The identifier string must "be unique to a particular entity," '978 patent at 7:62-67, i.e. it cannot identify more than one data entity. By contrast, the "domain name" designated by AWS as the "identifier string" does not constitute a unique string as described in the specification of the '978 patent because each domain name can correspond to multiple host IP addresses or mailboxes, which constitute the "data entities" under Amazon's theory of invalidity. *See, e.g.*, RFC1034 at 14 (showing the domain names "Venera.ISI.EDI" and "VAXA.ISI.EDU" as each corresponding to two different IP addresses, or hosts), 17 (showing the domain names "Venera.ISI.EDI" and "VAXA.ISI.EDI" as resolving to all mailboxes ending in ISI.EDU). The purported location strings in DNS thus correspond to multiple entities, not the uniquely identified entity.<br><br>DNS does not disclose "location information." The '978 patent describes "location information" as "one or more identifiers and their associated locations." *See, e.g.*, '978 patent at 2:28-42, 4:55-57, claims 1, 10, 14, 17. As described above, DNS does not disclose identifiers or locations. |
| [1.b] a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1.a].<br><br>As explained above, DNS does not disclose a "location server" or "location information." |
| [1.c] programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1.a]. |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| desired entity, if the location server receiving the location query contains location information for the desired entity. | As explained above, DNS does not disclose a "location server," "location information," or "location." |
| [3] The system of claim 1, wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query. | Kove denies that this element is disclosed by DNS. *See* claim [1.a]. As explained above, DNS does not disclose a "location server," "location information," or "location." DNS does not disclose a "redirect message" or any of this claim limitation because the name servers to which DNS queries are forwarded are not "known to have the location information for the desired entity." Because the domain name space of DNS is split into "separate sets of local information called zones" which are managed by different entities, name servers generally do not know which other name servers contains the resource records to answer a given query. RFC1034 at 6-7. Consequently, multiple redirects are often necessary. *See* RFC1034 at 17-18 (describing the "essential task" of name servers as answering queries "using data in *its zones*" and describing name servers as capable of making referrals to other name servers that are merely "closer" to the desired information) (emphasis added). Crucially, "a name server that doesn't have the requested information *may know* a name server that does." RFC1034 at 17 (emphasis added). Unlike the "redirect message" claimed by the '978 patent, DNS discloses no function whereby a name server can *actually know* which name server contains the desired resource records. *See, e.g.,* '170 patent at 14:43-15:35. The names servers of DNS are not configured to determine which other name server stores particular IP addresses for a request, as they are organized in a hierarchical tree structure that is not based on a hash function and are merely programmed to get "closer" to a name server with the requested information. Only for certain requests, with canonical names, can a name server identify a name server to respond to a request, but this functionality does not apply to *each* name server with respect to any given domain name and it is not based on a |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | hash function applied to a domain name. RFC1034 at 3-4, 14-15, 18-19, 25-26. *See* [claim 6.c]. |
| **[6]** The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table. | *See* claim [1.a].<br><br>As explained above, DNS does not disclose a "location server," "location information," or "location."<br><br>DNS does not describe the purported location information "maintained in an indexed location store indexed by a hash table." DNS at most vaguely describes a tree or hash structure, which does not store location information and is not at a location server. |
| **[10.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1pre-1.c, 10.a-10.b]. |
| **[10.a]** a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1pre-1.c].<br><br>As explained above, DNS does not disclose a "location server," or "location information," and the location information is not "formatted according to a transfer protocol configured for manipulating location information."<br><br>DNS does not describe "wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information." DNS requires that each organization that maintains a portion of the domain name space must maintain "redundant" name servers. (DNS, at 4 ("Each organization that has responsibility for a particular set of domains will provide *redundant name servers*, either on the |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | organization's own hosts or other hosts that the organization arranges to use.") (emphasis added); *see also id.*, at 6 ("Authoritative information is organized into units called ZONEs, and these zones can be automatically distributed to the name servers which provide *redundant service* for the data in a zone.") (emphasis added), 19 ("By administrative fiat, *we require every zone to be available on at least two servers*, and many zones have more redundancy than that.") (emphasis added), 21 ("Once the proper name for the new subzone is selected, the new owners should be required to demonstrate *redundant name server support*.") (emphasis added), 34 ("The reason for *two of each* is for *redundancy*.") (emphasis added).) DNS thus discloses that there will be *at least two* name servers with the same name space information, which AWS contends is the claimed "location information." |
| **[10.b]** programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier. | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1.a-1.c, 3].<br><br>As explained above, DNS does not disclose "location server," "location information," "location message," "identifier," or "redirect message." |
| **[14.Preamble]** A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of | To the extent the preamble is limiting, Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1pre-1.c, 10.pre-10.b]. |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| identifiers with at least one location, the method comprising: | |
| [14.a] receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location; | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1a-1.c, 10.a-10.b] for discussion of "location query," "client," "location server," "location," and "entity." |
| [14.b] sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1a-1.c, 10.a-10.b]. |
| [14.c] sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query. | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1a-1.c, 3, 10.a-10.b]. |
| [17.Preamble] A method of scaling at least one of capacity and transaction rate capability in a location server in a system having a plurality of location servers for storing and retrieving location information, wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information, the method comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1pre-1.c, 10.pre-10.b, 17.a-17.e]. |
| [17.a] providing a transfer protocol configured to transport identifier and location information, | Kove denies that this element is disclosed by DNS. |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| the location information specifying the location of information related to the identifier; | *See* claim [1pre-1.c, 10.pre-10.b]. |
| [17.b] storing location information formatted according to the transfer protocol at a first location server; | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1pre-1.c, 10.pre-10.b]. |
| [17.c] receiving an identifier and a location relevant to the identifier at the first location server; | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1pre-1.c, 10.pre-10.b]. |
| [17.d] storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and | Kove denies that this element is disclosed by DNS.<br><br>*See* claim [1pre-1.c, 10.pre-10.b]. |
| [17.e] transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. | Kove denies that this element is disclosed by DNS or other references, or that it is rendered obvious.<br><br>*See* claim [1pre-1.c, 10.pre-10.b].<br><br>With respect to "load balancing" and this claim limitation, AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined DNS with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from DNS's disclosure. AWS asserts that DNS would have been combined with any of the specifically identified references because (1) the "concept of transferring |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
|  | information from one server to another when the server is full, for example, is obvious and conventional in the field of computer science"; and (2) "One of skill would have been motivated to do so, for example, for the obvious benefit of improving system performance, speed, and efficiency." These statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine load balancing with any disclosure. Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references AWS seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the specifically identified references do not disclose one or more of the claim limitations for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS.

Further, Neimat does not disclose at least "identifiers," "locations," "data location server," "predetermined performance limit," or the claimed relationships among them. The servers in Neimat do not store or return data location information. The servers instead store records and relationships between memory addresses and server addresses. Further, Neimat does not disclose "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." Neimat instead discloses moving half the files in a storage location to a new location when there is a collision, not a performance criterion or predetermined performance limit. Exhibit 3C is hereby incorporated by reference. |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | AWS thus fails to adduce a single reference that either discloses or suggests the claimed limitation, and AWS's references neither teach nor suggest the load balancing and scaling problem that the '978 patent is directed to solve. The POSA would have no rationale to combine DNS with Neimat (or any other reference); to the contrary, for the reasons above, DNS and Neimat teach away from the claimed invention. |
| [23] The method of claim 17, wherein the performance criterion comprises an amount of available persistent storage space in the first location server. | Kove denies that this element is disclosed by DNS or other references, or that it is rendered obvious.<br><br>*See* claim [17.a-17.e]. Further, AWS wholly failed to provide a basis for why this claim limitation is obvious. |
| [24] The method of claim 17, wherein the performance criterion comprises a transaction rate limit. | Kove denies that this element is disclosed by DNS or other references, or that it is rendered obvious.<br><br>*See* claim [17.a-17.e]. Further, AWS wholly failed to provide a basis for why this claim limitation is obvious.<br><br>Further, Venkatasubramanian does not disclose at least "identifiers," "locations," "data location server," "predetermined performance limit," or the claimed relationships among them. The servers in Venkatasubramanian do not store or return data location information. Further, Venkatasubramanian does not disclose "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit wherein the performance criterion comprises a transaction rate limit." Venkatasubramanian is directed to video streaming, and purports to provide an example of load management that involves replications, which actually teaches away from the claimed inventions. |

| U.S. Patent No. 7,233,978 | Domain Name System (DNS) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | AWS thus fails to adduce a single reference that either discloses or suggests the claimed limitation, and AWS's references neither teach nor suggest the load balancing and scaling problem that the '978 patent is directed to solve. The POSA would have no rationale to combine DNS with Neimat or Venkatasubramanian (or any other reference); to the contrary, for the reasons above, DNS, Neimat, and Venkatasubramanian teach away from the claimed invention. |
| **[30]** The method of claim 17, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit. | Kove denies that this element is disclosed by DNS or other references, or that it is rendered obvious.<br><br>*See* claim [17.a-17.e]. Further, AWS wholly failed to provide a basis for why this claim limitation is obvious. |

AWS purports to assert that U.S. Patent No. 7,233,978 ("the '978 patent") claims 3, 6, 10, and 14 are anticipated by, and claims 17, 23, 24, 30 are obvious in view of, the Cache Resolver system.  AWS further alleges that the operation of the Cache Resolver System is described in Distributed Web Caching System with Consistent Hashing by Alexander Sherman (1999) ("Sherman"), and Web Caching with Consistent Hashing by Karger, Sherman, et al. (March 4, 1999) ("Karger/Sherman").  But AWS has failed to (1) sufficiently identify any version of any cache resolver system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system.  AWS has also failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system.  AWS's "DNS" reference is thus limited only to the document RFC1034.[1]  AWS has also failed to (1) establish that any Cache Resolver System necessarily encompassed any DNS system, (2) identify any version of any such combined system, (3) produce any such combined system, (4) establish that any such combined system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (5) establish that any of the documents AWS identifies refer to any identified combined system, much less the same combined system.  Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court.  AWS's "Cache Resolver System" reference is thus limited only to the documents Sherman and Karger/Sherman,[2] which are improperly discussed together without obviousness arguments (as is RFC1034).  AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including Sherman, Karger/Sherman, and RFC1034.

---

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] While AWS has failed to timely identify any evidence in support of its Cache Resolver System-based contentions other than Sherman and Karger/Sherman, Kove's analysis applies equally to any Cache Resolver System-related reference.

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[3,4] |
|---|---|
| **[1.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed Cache Resolver System ("CRS"). *See* claim [1.a-1.c] re "location server" and "location information." |
| **[1.a]** a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity | Kove denies that this element is disclosed in CRS. There is no "location server" disclosed by CRS. The "name servers" of DNS are not capable of modifying identifier/location mappings in response to location request messages (from clients). The specification of the '978 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from clients." '978 patent at 4:19-38 (emphasis added). Specifically, the "location servers" of the '978 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See id.* (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an |

---

[3] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[4] Kove incorporates by reference Exhibit 3A of its Contentions, which discusses DNS. Kove incorporates by reference Exhibit 3C of its Contentions, which discusses Neimat. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276, which discusses DNS.

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[3,4] |
|---|---|
| | association between the identifier and the application server's location." '978 patent at 8:14-25.  The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '978 patent at Abstract, Background.<br><br>By contrast, the "name servers" disclosed by DNS maintain *static* mappings between domain names and IP addresses, which are refreshed at pre-determined intervals by downloading a master file that needs to first be physically edited by a system administrator. RFC1034 at 6-7, 28.  "Name servers" do not update their mappings dynamically, i.e. "in response to" update requests from client machines that are sent in real time as changes to identifier/location mappings occur, as contemplated by the '978 patent.  Instead, name servers only refresh themselves at pre-determined intervals with new zone data physically edited by system administrators. The name servers of CRS update themselves by polling the caches, a process that occurs "independently of user requests," *i.e.*, not in response to requests from clients. *See, e.g.*, Sherman at 34-37; Karger/Sherman at 9-10.  The name servers also cannot determine which other name servers store location information for an identifier, as that information is not stored.  Nor do name servers have identifier/location mappings, as they do not have identifiers and do not have locations that are associated with identifiers/entities.  Resource records encompass many types of data that are not locations.  Clients cannot update identifier/location mappings in name servers.<br><br>DNS does not disclose an "identifier" or an "identifier [that]t identifies an entity" or a "location string [that] specifies a location of data pertaining to the entity."  An "identifier" is expressly described in the '978 patent as "a *unique* encoding, which may be a string in one embodiment, with which zero or more data location specifiers are associated in an NDTP server." '978 patent at 4:19-43 (emphasis added).  The identifier string must "be unique to a particular entity," '978 patent at 7:62-67,  i.e. it cannot identify more than one data entity.  By contrast, the "domain name" designated by AWS as the "identifier string" does not constitute a unique string as |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[3,4] |
|---|---|
| | described in the specification of the '978 patent because each domain name can correspond to multiple host IP addresses or mailboxes, which constitute the "data entities" under AWS's theory of invalidity. *See, e.g.*, RFC1034 at 14 (showing the domain names "Venera.ISI.EDI" and "VAXA.ISI.EDU" as each corresponding to two different IP addresses, or hosts), 17 (showing the domain names "Venera.ISI.EDI" and "VAXA.ISI.EDI" as resolving to all mailboxes ending in ISI.EDU). The purported location strings in DNS thus correspond to multiple entities, not the uniquely identified entity. The URLs taken in as an input by the CRS resolve to five virtual names, and each virtual names uses DNS to resolve to a list of IP addresses instead of just one. *See, e.g.*, Sherman at 34-37; Karger/Sherman at 9-10. Thus, the name servers of CRS return many proxy caches, which corresponds to many entities. <br><br> CRS does not disclose "location information." The '978 patent describes "location information" as "one or more identifiers and their associated locations." *See, e.g.*, '978 patent at 2:28-42, 4:55-57, claims 1, 10, 14, 17. As described above, CRS does not disclose identifiers or locations. |
| **[1.b]** a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and | Kove denies that this element is disclosed by CRS. <br><br> *See* claim [1.a]. <br><br> As explained above, CRS does not disclose a "location server" or "location information." |
| **[1.c]** programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving | Kove denies that this element is disclosed by CRS. <br><br> *See* claim [1.a]. <br><br> As explained above, CRS does not disclose a "location server," "location information," or "location." |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[3,4] |
|---|---|
| the location query contains location information for the desired entity. | |
| [3] The system of claim 1, wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query. | Kove denies that this element is disclosed by CRS. <br><br> *See* claim [1.a]. <br><br> As explained above, CRS does not disclose a "location server," "location information," or "location." <br><br> CRS does not disclose a "redirect message" or the rest of this limitation. If a request fails, then there is a retry or the next request on the list is performed. There is no redirect message that identifies the location server to query. *See, e.g.*, Sherman at 34-37; Karger/Sherman at 9-10. <br><br> DNS does not disclose a "redirect message" or any of this claim limitation because the name servers to which DNS queries are forwarded are not "known to have the location information for the desired entity." Because the domain name space of DNS is split into "separate sets of local information called zones" which are managed by different entities, name servers generally do not know which other name servers contains the resource records to answer a given query. RFC1034 at 6-7. Consequently, multiple redirects are often necessary. *See* RFC1034 at 17-18 (describing the "essential task" of name servers as answering queries "using data in *its zones*" and describing name servers as capable of making referrals to other name servers that are merely "closer" to the desired information) (emphasis added). Crucially, "a name server that doesn't have the requested information *may know* a name server that does." RFC1034 at 17 (emphasis added). Unlike the "redirect message" claimed by the '978 patent, DNS discloses no function whereby a name server can *actually know* which name server contains the desired resource records. *See, e.g.,* '978 patent. The names servers of DNS are not configured to determine which other name server stores particular IP addresses for a request, as they are organized in a hierarchical tree structure that is not based on a hash function and are merely programmed to get "closer" to a name server with the requested information. |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[3,4] |
|---|---|
| | Only for certain requests, with canonical names, can a name server identify a name server to respond to a request, but this functionality does not apply to *each* name server with respect to any given domain name and it is not based on a hash function applied to a domain name. RFC1034 at 3-4, 14-15, 18-19, 25-26. |
| [6] The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table. | Kove denies that this element is disclosed by CRS. *See* claim [1.a]. As explained above, CRS does not disclose a "location server," "location information," or "location." CRS does not describe the purported location information "maintained in an indexed location store indexed by a hash table." DNS at most vaguely describes a tree or hash structure, which does not store location information and is not at a location server. |
| [10.Preamble] A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by CRS. *See* claim [1pre-1.c, 10.a-10.b]. |
| [10.a] a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of | Kove denies that this element is disclosed by CRS. *See* claim [1pre-1.c]. As explained above, CRS does not disclose a "location server," or "location information," and the location information is not "formatted according to a transfer protocol configured for manipulating location information." CRS/DNS does not describe "wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[3,4] |
|---|---|
| an aggregate set of the location information; and | information of an aggregate set of the location information." DNS requires that each organization that maintains a portion of the domain name space must maintain "redundant" name servers. (DNS, at 4 ("Each organization that has responsibility for a particular set of domains will provide *redundant name servers*, either on the organization's own hosts or other hosts that the organization arranges to use.") (emphasis added); *see also id.*, at 6 ("Authoritative information is organized into units called ZONES, and these zones can be automatically distributed to the name servers which provide *redundant service* for the data in a zone.") (emphasis added), 19 ("By administrative fiat, *we require every zone to be available on at least two servers*, and many zones have more redundancy than that.") (emphasis added), 21 ("Once the proper name for the new subzone is selected, the new owners should be required to demonstrate *redundant name server support*.") (emphasis added), 34 ("The reason for *two of each* is for *redundancy*.") (emphasis added).) DNS thus discloses that there will be *at least two* name servers with the same name space information, which AWS contends is the claimed "location information." <br><br> CRS fails to disclose "each location server contains a unique set of location information of an aggregate set of the location information." Instead, CRS discloses balancing with multiple caches, which assigns multiple copies of cache data across the arcs used in consistent hashing, thereby disclosing non-unique sets of what AWS identifies as "location information." Sherman at 24-27; Karger/Sherman at 15-16. |
| [10.b] programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant | Kove denies that this element is disclosed by CRS. <br><br> *See* claim [1.a-1.c, 3]. <br><br> As explained above, CRS does not disclose "location server," "location information," "location message," "identifier," or "redirect message." |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[3,4] |
|---|---|
| to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier. | |
| [14.Preamble] A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by CRS.<br><br>*See* claim [1pre-1.c, 10.pre-10.b]. |
| [14.a] receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location; | Kove denies that this element is disclosed by CRS.<br><br>*See* claim [1pre-1.c, 10.pre-10.b]. |
| [14.b] sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and | Kove denies that this element is disclosed by CRS.<br><br>*See* claim [1pre-1.c, 10.pre-10.b]. |
| [14.c] sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query. | Kove denies that this element is disclosed by CRS.<br><br>*See* claim [1pre-1.c, 10.pre-10.b]. |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[3,4] |
|---|---|
| **[17.Preamble]** A method of scaling at least one of capacity and transaction rate capability in a location server in a system having a plurality of location servers for storing and retrieving location information, wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information, the method comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by CRS. *See* claim [1pre-1.c, 10.pre-10.b, 17.a-17.e]. |
| **[17.a]** providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information related to the identifier; | Kove denies that this element is disclosed by CRS. *See* claim [1pre-1.c, 10.pre-10.b]. |
| **[17.b]** storing location information formatted according to the transfer protocol at a first location server; | Kove denies that this element is disclosed by CRS. *See* claim [1pre-1.c, 10.pre-10.b]. |
| **[17.c]** receiving an identifier and a location relevant to the identifier at the first location server; | Kove denies that this element is disclosed by CRS. *See* claim [1pre-1.c, 10.pre-10.b]. |
| **[17.d]** storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and | Kove denies that this element is disclosed by CRS. *See* claim [1pre-1.c, 10.pre-10.b]. |
| **[17.e]** transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of | Kove denies that this element is disclosed by CRS or other references, or that it is rendered obvious. *See* claim [1pre-1.c, 10.pre-10.b]. |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[3,4] |
|---|---|
| the first location server reaches a predetermined performance limit. | As AWS concedes, CRS does not describe "load balancing" or this claim limitation.<br><br>With respect to "load balancing" and this claim limitation, AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined CRS with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from CRS's disclosure. AWS asserts that CRS would have been combined with any of the specifically identified references because (1) the "concept of transferring information from one server to another when the server is full, for example, is obvious and conventional in the field of computer science"; and (2) "One of skill would have been motivated to do so, for example, for the obvious benefit of improving system performance, speed, and efficiency." These statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine load balancing with any disclosure. Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references AWS seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the specifically identified references do not disclose one or more of the claim limitations for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[3,4] |
|---|---|
|  | Further, Neimat does not disclose at least "identifiers," "locations," "data location server," "predetermined performance limit," or the claimed relationships among them. The servers in Neimat do not store or return data location information. The servers instead store records and relationships between memory addresses and server addresses. Further, Neimat does not disclose "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." Neimat instead discloses moving half the files in a storage location to a new location when there is a collision, not a performance criterion or predetermined performance limit. Exhibit 3C is hereby incorporated by reference.<br><br>AWS thus fails to adduce a single reference that either discloses or suggests the claimed limitation, and AWS's references neither teach nor suggest the load balancing and scaling problem that the '978 patent is directed to solve. The POSA would have no rationale to combine CRS with Neimat (or any other reference); to the contrary, for the reasons above, CRS and Neimat teach away from the claimed invention. |
| **[23]** The method of claim 17, wherein the performance criterion comprises an amount of available persistent storage space in the first location server. | Kove denies that this element is disclosed by CRS or other references, or that it is rendered obvious.<br><br>*See* claim [17.a-17.e].  Further, AWS failed to provide a basis for why this claim limitation is obvious. |
| **[24]** The method of claim 17, wherein the performance criterion comprises a transaction rate limit. | Kove denies that this element is disclosed by CRS or other references, or that it is rendered obvious.<br><br>*See* claim [17.a-17.e].  Further, AWS wholly failed to provide a basis for why this claim limitation is obvious. |

| U.S. Patent No. 7,233,978 | The Cache Resolver System (Sherman and Karger/Sherman) and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[3,4] |
|---|---|
| | Further, Venkatasubramanian does not disclose at least "identifiers," "locations," "data location server," "predetermined performance limit," or the claimed relationships among them. The servers in Venkatasubramanian do not store or return data location information. Further, Venkatasubramanian does not disclose "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit wherein the performance criterion comprises a transaction rate limit." Venkatasubramanian is directed to video streaming, and purports to provide an example of load management that involves replications, which actually teaches away from the claimed inventions. |
| | AWS thus fails to adduce a single reference that either discloses or suggests the claimed limitation, and AWS's references neither teach nor suggest the load balancing and scaling problem that the '978 patent is directed to solve. The POSA would have no rationale to combine CRS with Neimat or Venkatasubramanian (or any other reference); to the contrary, for the reasons above, CRS, Neimat, and Venkatasubramanian teach away from the claimed invention. |
| [30] The method of claim 17, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit. | Kove denies that this element is disclosed by CRS or other references, or that it is rendered obvious. *See* claim [17.a-17.e]. Further, AWS wholly failed to provide a basis for why this claim limitation is obvious. |

AWS purports to assert that claims 3, 6, 10, 14, 17, 23, 24, and 30 of U.S. Patent No. 7,233,978 ("the '978 patent") are obvious in view of the combination of U.S. Patent No. 5,542,087 to Neimat ("Neimat"), DNS and, for claim 24, Venkatasubramanian. AWS further alleges that the operation of DNS is described in BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman. But AWS has failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| **[1.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Neimat.<br><br>Neimat does not disclose "a plurality of location servers for managing location information and providing location information to location queries," as the servers in Neimat are not data location servers. The servers in Neimat store records and relationships between memory addresses and server addresses. There are no location queries. |

---

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[3] Kove incorporates by reference Exhibit 3A of its Contentions, which discusses DNS. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276, which discusses DNS.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | The specification of the '978 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from clients."  '978 patent at 4:19-38 (emphasis added). Specifically, the "location servers" of the '978 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See id.* (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers).  For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the identifier and the application server's location." '978 patent at 8:14-25.  The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '978 patent at Abstract, Background. The '978 patent describes "location information" as "one or more identifiers and their associated locations." *See, e.g.,* '978 patent at 2:28-42, 4:55-57, claims 1, 10, 14, 17. An "identifier" is expressly described in the '978 patent as "a *unique* encoding, which may be a string in one embodiment, with which zero or more data location specifiers are associated in an NDTP server." '978 patent at 4:19-43 (emphasis added).  The identifier string must "be unique to a particular entity," '978 patent at 7:62-67,  i.e. it cannot identify more than one data entity. |
| **[1.a]** a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and | Kove denies that this element is disclosed by Neimat.  *See* claim [1.pre]. As described above, Neimat does not disclose a "location server," "location information corresponding to at least one entity," or the claimed relationships among them. Further, Neimat does not disclose "an identifier," as Neimat instead describes non-unique key values for autonomous clients. AWS maps the "identifier" as the "Record key value (e.g., value generated from a patient's |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| the location string specifies a location of data pertaining to the entity | name)" of Neimat, but Neimat does not disclose that its "record key value" is unique. Instead, Neimat discloses, e.g., "if each key is a respective subject's personal name, it is clear that certain character strings of a common last name such as "Jones" will appear many times in the keys." See, also, e.g., Neimat at 2:8-10. See, also, e.g., Neimat at 8:28-47, which discloses, e.g., using "Janet Jones" as a patient name key value to produce a record key.Further, Neimat does not disclose "at least one location string associated with the identifier," as the servers in Neimat are not data location servers and do not store location information. The servers instead store records and relationships between memory addresses and server addresses. See, e.g., Neimat at 4:40-60, 7:48-8:15. |
| | With respect to "location server," AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Neimat with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Neimat's disclosure. AWS asserts that Neimat would have been combined with the Data Location References because (1) the "concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science"; (2) "the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science," and (3) "one of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system." These statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine features from any known distributed network with any other known |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
|  | distributed network, since all distributed networks have common goals (e.g., to improve system performance, speed, and efficiency). |
|  | Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references Amazon seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the secondary references, such as DNS, do not disclose "location servers" or many other claim elements for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. |
|  | AWS's assertion that "location is not necessary" is wrong, as evidenced by the plain language of the claims as well as the discussion of location in the specification and prosecution history. AWS's efforts to use the '978 patent itself to support an obviousness argument necessarily fails. |
| [1.b] a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious. |
|  | *See* claim [1.a]. |
|  | As described above, Neimat does not disclose a "second location server," "a second set of location information," or the claimed relationships among them. Further, Neimat does not disclose "wherein at least a portion of the second set of location information differs from the first set of location information," as the servers in Neimat are not data location servers and do not store location information. The servers instead store records and relationships between memory addresses and server |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | addresses. *See, e.g.*, Neimat at 4:40-60, 7:48-8:15. Moreover, the servers store all the relationships between memory addresses and server addresses. *See, e.g.*, Neimat at 5:49-67. |
| [1.c] programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity. | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.b]. As explained above, Neimat does not disclose "location servers," "a location query," or the claimed relationships among them. Further, Neimat does not disclose "identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity." The servers in Neimat are not data location servers and do not store or return location information. The servers instead store records and relationships between memory addresses and server addresses, and return records. Moreover, the servers store all the relationships between memory addresses and server addresses. |
| [3] The system of claim 1, wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.c]. As described above, Neimat does not disclose "wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity." Further, Neimat does not disclose "wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message" or "wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| location server known to have location information relevant to the location query. | information relevant to the location query." The servers in Neimat do not store or return data location information. The servers instead store records and relationships between memory addresses and server addresses, and return records. *See, e.g.,* Neimat at 4:40-60, 7:48-8:15. Moreover, each file servers stores the full set of relationships between memory addresses and server addresses. Furthermore, the servers do not send redirect messages, but instead merely communicate with other servers if needed. *See, e.g.,* Neimat at 5:49-67; Fig. 2. Finally, Neimat discloses no way for an incorrect file server to know what the correct file server is, and instead merely teaches successively generating additional memory addresses until the correct server is found. |
| **[6]** The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table. | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.c]. As described above, Neimat does not disclose "the location information," "the location server," or the claimed relationships among them. Further, for the same reasons, Neimat does not disclose "an indexed location store indexed by a hash table." Additionally, AWS's citations are inapposite, as they describe a different use of hash functions and no hash table. Furthermore, Neimat does not disclose using hash functions and/or hash tables to organize "location information" across a "plurality of data location servers." The hash functions disclosed in Neimat distribute records onto file servers, i.e. to distribute the data itself rather than "data location information." |
| **[10.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Neimat. *See* claim [1pre-1.c, 10.a-10.b]. |
| **[10.a]** a plurality of location servers containing location information corresponding to a | Kove denies that this element is disclosed by Neimat. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and | *See* claim [1pre-1.c]. |
| [10.b] programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier. | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1pre-1.c, 3]. |
| [14.Preamble] A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising: | To the extent the preamble is limiting , Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1pre-1.c]. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| [14.a] receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location; | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious.<br><br>*See* claim [1pre-1.c]. |
| [14.b] sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious.<br><br>*See* claim [1pre-1.c]. |
| [14.c] sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query. | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious.<br><br>*See* claim [1pre-1.c]. |
| [17.Preamble] A method of scaling at least one of capacity and transaction rate capability in a location server in a system having a plurality of location servers for storing and retrieving location information, wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information, the method comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1pre-1.c, 17.a-17.e].<br><br>As described above, Neimat does not disclose "a location server," "a system having a plurality of location servers for storing and receiving location information," "wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information," or the claimed relationships among them. The servers in Neimat do not store or return data location information. The servers instead store records and relationships between memory addresses and server addresses, and return records. Moreover, the servers store all the relationships |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | between memory addresses and server addresses. Moreover, the servers do not send location information, but instead communicate with other servers if needed. Further, Neimat does not disclose "a method of scaling at least one of capacity and transaction rate capability," but instead discloses moving half the files in a storage location to a new location when there is a collision. *See, e.g.* Neimat at 3:19-33. |
| **[17.a]** providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information related to the identifier; | Kove denies that this element is disclosed by Neimat. *See* claim [1pre-1.c]. |
| **[17.b]** storing location information formatted according to the transfer protocol at a first location server; | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious. *See* claim [1pre-1.c]. |
| **[17.c]** receiving an identifier and a location relevant to the identifier at the first location server; | Kove denies that this element is disclosed by Neimat. *See* claim [1pre-1.c]. |
| **[17.d]** storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and | Kove denies that this element is disclosed by Neimat. *See* claim [1pre-1.c]. |
| **[17.e]** transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. | Kove denies that this element is disclosed by Neimat. *See* claim [1pre-1.c, 17.a]. Neimat does not disclose "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
|  | location server reaches a predetermined performance limit." Neimat instead discloses moving half the files in a storage location to a new location when there is a collision, not a performance criterion or predetermined performance limit. *See, e.g.* Neimat at 3:19-33. |
| [23] The method of claim 17, wherein the performance criterion comprises an amount of available persistent storage space in the first location server. | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1pre-1.c, 17.a, 17.e]. |
| [24] The method of claim 17, wherein the performance criterion comprises a transaction rate limit. | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious.<br><br>*See* claim [1pre-1.c, 17.a, 17.e].<br><br>Venkatasubramanian does not disclose at least "identifiers," "locations," "data location server," "predetermined performance limit," or the claimed relationships among them. The servers in Venkatasubramanian do not store or return data location information. Further, Venkatasubramanian does not disclose "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit wherein the performance criterion comprises a transaction rate limit." Venkatasubramanian is directed to video streaming, and purports to provide an example of load management that involves replications, which actually teaches away from the claimed inventions.<br><br>AWS thus fails to adduce a single reference that either discloses or suggests the claimed limitation, and AWS's references neither teach nor suggest the load balancing and scaling problem that the '978 patent is directed to solve. The POSA would have no rationale to combine DNS with Neimat or Venkatasubramanian (or any other reference); to the contrary, for the reasons above, DNS, Neimat, and Venkatasubramanian teach away from the claimed invention. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | |
| [30] The method of claim 17, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit. | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious.<br><br>*See* claim [1pre-1.c, 17.a, 17.e]. |

AWS purports to assert that claims 3, 6, 10, 14, 17, 23, 24, and 30 of U.S. Patent No. 7,233,978 ("the '978 patent") are obvious in view of the combination of U.S. Patent No. 6,212,521 to Minami ("Minami"), DNS and, for claims 17, 23, 24, and 30, Neimat, and for claim 24, Venkatasubramanian. AWS further alleges that the operation of DNS is described in BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman. But AWS has failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| **[1.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Minami. |
| | The specification of the '978 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP |

---

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[3] Kove incorporates by reference Exhibit 3A of its Contentions, which discusses DNS. Kove incorporates by reference Exhibit 3C of its Contentions, which discusses Neimat. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276, which discusses DNS.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | request messages from clients." '978 patent at 4:19-38 (emphasis added). Specifically, the "location servers" of the '978 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See id.* (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the identifier and the application server's location." '978 patent at 8:14-25. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '978 patent at Abstract, Background. The '978 patent describes "location information" as "one or more identifiers and their associated locations." *See, e.g.,* '978 patent at 2:28-42, 4:55-57, claims 1, 10, 14, 17. An "identifier" is expressly described in the '978 patent as "a *unique* encoding, which may be a string in one embodiment, with which zero or more data location specifiers are associated in an NDTP server." '978 patent at 4:19-43 (emphasis added). The identifier string must "be unique to a particular entity," '978 patent at 7:62-67, i.e. it cannot identify more than one data entity.<br><br>AWS fails to explain how the primary servers in Minami are "data location servers," and in fact concedes that they are not. Moreover, Minami does not disclose the claimed "a plurality of data location servers." The primary servers in Minami are not data location servers. The servers in Minami do not store location information and instead store non-unique keywords and records, *i.e.,* the data itself. *See, e.g.,* Minami at 8:61-9:67 (search keywords may be mapped to multiple data objects, as well as to different data objects within different "areas" of the network); Fig. 3, Fig. 20. Further, the primary servers of Minami cannot determine which other primary servers store location information for an identifier, as not all of the servers in Minami can determine the appropriate server; multiple servers can be involved, and other functions that are unknown to a particular server can be used. *See, e.g.,* Minami at |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
|  | 8:61-9:15, 10:36-60 (a "primary hash function unit 109 and secondary hash function unit 111 are used to obtain a primary and secondary server identifiers, respectively, from a given search keyword."). Nor do primary servers have identifier/location mappings, as they do not have identifiers and do not have locations that are associated with identifiers/entities. Minami does not disclose the claimed "identifier," but instead describes a non-unique keyword that does not uniquely identify an entity. Minami also does not disclose the claimed "location string," as the primary servers in Minami do not process requests for data location, but instead requests for records, i.e., the data itself. Primary server identifiers are not proper locations for an entity's data. Clients in Minami cannot update identifier/location mappings in primary servers. There are no location queries. |
| [1.a] a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1.pre].<br><br>As described above, Minami does not disclose a "location server," "location information corresponding to at least one entity," or the claimed relationships among them. Further, Minami does not disclose "an identifier" or "at least one location string associated with the identifier," as Minami instead discloses non-unique keywords and records.<br><br>With respect to "location server" (and this claim limitation), AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Minami with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Minami's disclosure. AWS asserts that Minami would have been combined with the Data Location References because (1) the "concept of storing information about the |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | location of data in a distributed network is well known, even fundamental, in the field of computer science"; (2) "the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science," and (3) "one of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system." These statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine features from any known distributed network with any other known distributed network, since all distributed networks have common goals (e.g., to improve system performance, speed, and efficiency). Moreover, merely doubling any location server, which is not described or rendered obvious, would not yield the claimed invention.<br><br>Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references Amazon seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the secondary references, such as DNS, do not disclose "location servers" or many other claim elements for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS.<br><br>AWS's assertion that "location is not necessary" is wrong, as evidenced by the plain language of the claims as well as the discussion of location in the specification and |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | prosecution history. AWS's efforts to use the '978 patent itself to support an obviousness argument necessarily fails. |
| [1.b] a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1.pre-1.a].<br><br>As described above, Minami does not disclose a "second location server," "a second set of location information," or the claimed relationships among them. Further, Minami does not disclose "wherein at least a portion of the second set of location information differs from the first set of location information," as the server groups in Minami do not store data location information (they store records), and they contain a complete set of the keywords and associated records information. *See, e.g.,* Minami at 8:61-9:67; Fig. 17-20. |
| [1.c] programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity. | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1.pre-1.b].<br><br>As described above, Minami does not disclose "location servers," "a location query," or the claimed relationships among them. Further, Minami does not disclose "identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity." The servers in Minami do not store or send location information (they store records), and they contain a complete set of the keywords and associated records information. *See, e.g.,* Minami at 8:61-9:67; Fig. 17-20. |
| [3] The system of claim 1, wherein the programming logic further comprises logic responsive to the location query to return one | Kove denies that this claim is disclosed by Minami.<br><br>*See* claim [1.pre-1.c]. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query. | As described above, Minami does not disclose "wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity."<br><br>Further, Minami does not disclose "wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message" or "wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query." Minami does not disclose redirect messages back to the client, but instead has its servers pass messages to one another. *See, e.g.*, Minami at 8:61-9:67. Further, the servers in Minami are not data location servers and do not store data location information (they store records), or information from which a client could calculate a location, or a second data location server that contains a location string. |
| **[6]** The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table. | Kove denies that this claim is disclosed by Minami.<br><br>*See* claim [1.pre-1.c].<br><br>As described above, Minami does not disclose "the location information or "the location server." Further, Minami does not disclose "an indexed location store indexed by a hash table." The servers in Minami do not have indexed location stores or hash tables, but instead apply a function. |
| **[10.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.c, 10.a-10.b]. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| [10.a] a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and | Kove denies that this element is disclosed by Minami. *See* claim [1pre-1.c]. As described above, Minami does not describe "wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information." The servers in Minami do not store or send location information (they store records), and they contain a complete set of the keywords and associated records information. |
| [10.b] programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier. | Kove denies that this element is disclosed by Minami. *See* claim [1pre-1.c]. |
| [14.Preamble] A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of | To the extent the preamble is limiting, Kove denies that this element is disclosed by Minami. *See* claim [1pre-1.c]. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| identifiers with at least one location, the method comprising: | |
| [14.a] receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location; | Kove denies that this element is disclosed by Minami. *See* claim [1pre-1.c]. |
| [14.b] sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and | Kove denies that this element is disclosed by Minami. *See* claim [1pre-1.c]. |
| [14.c] sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query. | Kove denies that this element is disclosed by Minami. *See* claim [1pre-1.c]. |
| [17.Preamble] A method of scaling at least one of capacity and transaction rate capability in a location server in a system having a plurality of location servers for storing and retrieving location information, wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information, the method comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Minami. *See* claim [1pre-1.c, 17.a-17.e]. |
| [17.a] providing a transfer protocol configured to transport identifier and location information, | Kove denies that this element is disclosed by Minami. *See* claim [1pre-1.c]. |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| the location information specifying the location of information related to the identifier; | |
| [17.b] storing location information formatted according to the transfer protocol at a first location server; | Kove denies that this element is disclosed by Minami. *See* claim [1pre-1.c]. |
| [17.c] receiving an identifier and a location relevant to the identifier at the first location server; | Kove denies that this element is disclosed by Minami. *See* claim [1pre-1.c]. |
| [17.d] storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and | Kove denies that this element is disclosed by Minami. *See* claim [1pre-1.c]. |
| [17.e] transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. | Kove denies that this element is disclosed by Minami. *See* claim [1pre-1.c]. Minami does not disclose "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." AWS concedes this, and there is no disclosure of it. With respect to "load balancing" and this claim limitation, AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Minami with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Minami's disclosure. AWS asserts that Minami would have been combined with any of the specifically identified references because (1) the "concept of transferring information from one server to another when the server is full, for example, is obvious and conventional in the field of computer science"; and (2) "for the obvious benefit of improving system performance, speed, and efficiency." These statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine features from any known server with any other known server, premised on the assumption that all servers have common goals (e.g., to improve system performance, speed, and efficiency). Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references AWS seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the specifically identified references do not disclose one or more of the claim limitations for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS.<br><br>Further, Neimat does not disclose at least "identifiers," "locations," "data location server," "predetermined performance limit," or the claimed relationships among them. The servers in Neimat do not store or return data location information. The servers instead store records and relationships between memory addresses and server addresses. Further, Neimat does not disclose "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | Neimat instead discloses moving half the files in a storage location to a new location when there is a collision, not a performance criterion or predetermined performance limit. Exhibit 3C is hereby incorporated by reference.<br><br>AWS thus fails to adduce a single reference that either discloses or suggests the claimed limitation, and AWS's references neither teach nor suggest the load balancing and scaling problem that the '978 patent is directed to solve. The POSA would have no rationale to combine Minami with Neimat (or any other reference); to the contrary, for the reasons above, Minami and Neimat teach away from the claimed invention. |
| **[23]** The method of claim 17, wherein the performance criterion comprises an amount of available persistent storage space in the first location server. | Kove denies that this element is disclosed by Minami or other references, or that it is rendered obvious.<br><br>*See* claim [17.pre-17.e].  Further, AWS wholly failed to provide a basis for why this claim limitation is obvious. |
| **[24]** The method of claim 17, wherein the performance criterion comprises a transaction rate limit. | To Kove denies that this element is disclosed by Minami or other references, or that it is rendered obvious.<br><br>*See* claim [17.pre-17.e].  Further, AWS wholly failed to provide a basis for why this claim limitation is obvious.<br><br>Further, Venkatasubramanian does not disclose at least "identifiers," "locations," "data location server," "predetermined performance limit," or the claimed relationships among them.  The servers in Venkatasubramanian do not store or return data location information.  Further, Venkatasubramanian does not disclose "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit wherein the performance criterion comprises a transaction rate limit."  Venkatasubramanian is directed to video streaming, and |

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | purports to provide an example of load management that involves replications, which actually teaches away from the claimed inventions. |
| | AWS thus fails to adduce a single reference that either discloses or suggests the claimed limitation, and AWS's references neither teach nor suggest the load balancing and scaling problem that the '978 patent is directed to solve. The POSA would have no rationale to combine Minami with Neimat or Venkatasubramanian (or any other reference); to the contrary, for the reasons above, Minami, Neimat, and Venkatasubramanian teach away from the claimed invention. |
| [30] The method of claim 17, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit. | To Kove denies that this element is disclosed by Minami or other references, or that it is rendered obvious. *See* claim [17pre-17.e]. Further, AWS failed to provide a sufficient basis for why this claim limitation is obvious. |