**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Kove IO, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Amazon Web Services, Inc.,<br><br>Defendant. | Civil Action No. 1:18-cv-08175<br><br>Hon. Matthew F. Kennelly<br><br>Jury Trial Demanded |

**KOVE IO, INC.'S MOTION TO COMPEL**
**THE DEPOSITION OF ANDREW JASSY**

## TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 4

A. Jassy's Integral Role In The Design, Development, And Promotion Of S3. ........ 4

B. The Court Ordered AWS To Produce The Six Pager. ........ 5

C. Kove's Technology Made AWS Feasible And Commercially Successful. ........ 7

III. ARGUMENT ........ 8

A. The Circumstances Have Changed Since The Court's Order On Kove's Earlier Motion To Compel Jassy's Deposition. ........ 9

B. Jassy Has Unique And Relevant Knowledge. ........ 10

1. Information Needed For Kove's Reasonable Royalty Analysis. ........ 10

2. Jassy Has Unique Knowledge About The Six Pager, AWS's Origin Story, And His Decisions. ........ 11

IV. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Apple Inc. v. Samsung Elecs. Co., Ltd*,
282 F.R.D. 259 (N.D. Cal. Apr. 4, 2012)....................15

*Aqua Shield v. Inter Pool Cover Team*,
774 F.3d 766 (Fed. Cir. 2014)....................11

*Boyd v. Lazer Spot, Inc.*,
2022 WL 2865881 (N.D. Ill. July 6, 2022)....................8

*City of Rockford v. Mallinckrodt ARD, Inc.*,
2020 WL 1675593 (N.D. Ill. Apr. 6, 2020)....................14, 15

*CSC Holdings, Inc. v. Redisi*,
309 F.3d 988 (7th Cir. 2002)....................8

*DeLeon-Reyes v. Guevara*,
2021 WL 3109662 (N.D. Ill. July 22, 2021)....................8

*Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*,
2022 WL 16646418 (N.D. Ill. Nov. 2, 2022)....................10

*Georgia–Pac. Corp. v. United States Plywood Corp.*,
318 F.Supp. 1116 (S.D.N.Y. 1970)....................11

*In re Google Litig.*,
2011 WL 4985279 (N.D. Cal. Oct. 19, 2011)....................15

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
378 F. Supp. 2d 459 (D. Del. 2005)....................11

*Johnson v. Jung*,
242 F.R.D. 481 (N.D. Ill. 2007)....................8, 10, 12, 15

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)....................11

*Patterson v. Avery Dennison Corp.*,
281 F.3d 676 (7th Cir. 2002)....................8

*In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*,
2014 WL 257566 (S.D. Ill. Jan. 23, 2014)....................10

**Rules**

Federal Rule of Civil Procedure 30(a) ........................................................................................8

Federal Rule of Civil Procedure 30(b)(6) ....................................................................................9

Kove IO, Inc. ("Kove") respectfully requests that the Court compel Amazon Web Services, Inc. ("AWS") to produce Andrew Jassy for a deposition. The parties have met and conferred multiple times in good faith but have been unable to resolve their dispute. Kove respectfully requests an expedited briefing schedule to resolve this issue before the end of fact discovery.

## I. INTRODUCTION

Andrew Jassy has unique knowledge that goes to the heart of this case—necessary information Kove cannot obtain without deposing him. Because Jassy was formerly AWS's CEO and is currently Amazon's CEO, AWS refuses to produce him for deposition under the apex doctrine. But this doctrine is not a categorical bar to the deposition of powerful people. Executives like Jassy can be deposed if they have unique personal knowledge that cannot otherwise be obtained. The burden is on AWS to make a specific and particularized demonstration of fact to avoid the deposition. AWS cannot meet this burden because Jassy lies at the hub of critical information that cannot be obtained elsewhere.

Kove seeks information from Jassy necessary to prove its damages. Kove's patents cover foundational technology for hyper-scalable cloud computing. Before Kove's inventions, cloud environments generally organized data using a central server. Single servers, however, have limited capacity, and so cannot support the large volume of data that large cloud environments demand. Kove's patents provided a new way forward. Instead of using a central server, Kove's patents describe a system that uses hash functions to distribute information across multiple servers, and so allows cloud service providers to seamlessly store, update, access, and organize trillions of objects. Conventional databases could not store enough data for massive cloud environments like AWS. AWS needed scalability (meaning the ability to handle more data than ever before in a cloud computing environment), high availability (the ability to function even when some components fail), durability (the ability to reliably store data without data loss), and speed (the

ability to quickly retrieve data). Kove's innovations made this possible. With a unique architecture and employing distributed hash functions in a novel way, Kove's patented inventions enabled databases that were orders of magnitude larger than the upper limit of previous technologies—allowing trillions of data objects to be seamlessly stored, updated, and identified without interruption. This sea change led the *MIT Technology Review* to name this then-emerging technology as one that would change the world.

Kove's damages model, rooted in Federal Circuit precedent, depends on showing the benefits of the patented inventions over potential non-infringing alternatives. This method of proving reasonable royalty damages seeks to estimate what AWS would have agreed to pay Kove for a license to the patented invention at the time of first infringement. The outcome of this "hypothetical negotiation" depends on AWS's alternatives to using Kove's technology, and on how beneficial Kove's technology was compared to those alternatives—all at the time AWS selected its technology. This requires information about why and how AWS selected Kove's technology, why alternatives were not selected, pricing and profitability differences between the alternatives, and other commercial and technical differences between AWS's options.

AWS's origin story, which took place at the time of the hypothetical negotiation, is at the heart of this inquiry, and Jassy has unique knowledge of it. Jassy came up with the idea for AWS, including its strategic technology, pricing, and commercial foundations. High-level strategic information was uniquely channeled through him. Most importantly, Jassy was the decisionmaker, and it is his decisions that are key to the hypothetical negotiation. These were not trivial decisions—use of Kove's technology unlocked [REDACTED] in profit for AWS. Nor can these decisions be deduced from the products because Kove's technology is the behind-the-scenes engine that allows AWS to offer cloud computing on a massive scale. Understanding what

occurred behind closed doors is critical, and Jassy was the employee at the center of the action by conceptualizing AWS and making the decisions among the various alternatives that led to the architecture and business today. His decisions are central to this inquiry.

Jassy's role is intertwined with a critical document known as AWS's "vision document," or, in AWS lore, the "Six Pager." In 2003, Jassy participated in a pivotal brainstorming session at then-Amazon CEO Jeff Bezos's house where the idea for the accused S3 product was born. After that meeting, Jassy wrote a six-page memo setting forth his vision for S3 and for the cloud computing platform that would become AWS. The Six Pager has been the subject of widespread reporting, though Kove's understanding is that the Six Pager itself has not been published.

Kove has long sought the Six Pager. When AWS refused to produce it, Kove moved to compel its production as well as Jassy's deposition. Dkt. 351. After extensive briefing, the Court found the Six Pager relevant and ordered AWS to produce it. Dkt. 441 at 15-16. AWS led the Court to believe that the Six Pager was "in hand" and could easily be produced. *Id.* at 9. Thirteen months later, AWS shifted field, claiming that it cannot find this famous document. Troublingly, AWS refused to even ask Jassy for it or identify any witness who could discuss the document's contents and impact other than Jassy, but refuses to produce him for deposition.

Kove is left with no practical alternative but to move to compel Jassy's deposition. Time is running out; fact discovery is scheduled to close on May 5, 2023, and the Court has stated it will not be extended. Kove has diligently sought this information to no avail, even though it is indisputably in AWS's possession, custody, or control. AWS has had years to voluntarily produce this information, but instead has obfuscated and resisted. AWS cannot meet its burden of protecting Jassy from deposition when any inconvenience results from AWS failing to work cooperatively to identify an alternative means of producing this necessary information.

## II. BACKGROUND

### A. Jassy's Integral Role In The Design, Development, And Promotion Of S3.

In 2003, Jassy participated in a brainstorming session at Amazon CEO Bezos's house.[1] After that meeting, Jassy [REDACTED] The Six Pager relied on what would become the accused S3 product as a justification for forming AWS, "outlin[ing] a broad collection of services and a long-term roadmap to build, promote, scale, and charge for them."[3] Jassy later presented the Six Pager to Amazon's Board of Directors and "spearheaded Amazon's move into a new field: cloud computing."[4] Once formed, AWS provided on-demand cloud computing platforms on a pay-as-you-go basis with one of its earliest products, S3. Launched in 2006, S3 was "storage for the Internet" and provided highly scalable, reliable, and low-latency data storage infrastructure at very low costs.[5] Jassy served as senior vice-president of AWS until 2016, when he was named CEO, a role he held until he was named CEO of Amazon in 2021.

Current and former AWS executives cannot recall the contents of the Six Pager. *See* Ex. C [REDACTED] Ex. B [REDACTED].

---

[1] https://www.nytimes.com/2021/02/03/technology/andy-jassy-amazon-ceo-jeff-bezos.html.

[2] Ex. A [REDACTED] *see also* Dkt. 441 at 8.

[3] http://jeff-barr.com/2014/08/19/my-first-12-years-at-amazon-dot-com/ (Longtime AWS spokesperson Jeff Barr writing on personal blog that Jassy led effort to develop infrastructure services in 2003, which included writing the Six Pager); *see* Ex. B [REDACTED]

[4] https://www.nytimes.com/2021/02/03/technology/andy-jassy-amazon-ceo-jeff-bezos.html.

[5] Ex. W [Press Release, Amazon Web Services Launches (March 14, 2006), at *1].

Jassy was the strategic thinker in developing, launching, and marketing S3. He led internal discussions over how S3 should store objects, which resulted in AWS adopting an infringing design over a non-infringing design.[6] He implemented the pricing strategy for S3 using his judgment to determine the value of S3 to his desired market.[7] And he coordinated at length with Bezos on the accused products, including product design,[8] marketing,[9] and pricing,[10] which is significant given that Amazon is AWS's largest customer.[11] Jassy used his judgment on the value of the accused products to personally approve pricing deals and recommend acquisitions.[12]

**B. The Court Ordered AWS To Produce The Six Pager.**

When Kove filed this lawsuit in 2018, it did not know the extent of Jassy's role in the accused products. Kove only learned these highly relevant facts by pursuing discovery. As Kove has previously pointed out, discovery in this case has been slow-going because of AWS's delays and stonewalling. For example, when Kove served its Second Amended Initial Disclosures on July 14, 2019, AWS had produced only 728 documents (cases of this size (hundreds of millions of dollars in damages) typically involve tens or hundreds of thousands of documents). As information trickled out, Kove gradually learned of Jassy's prominent role in developing S3. In

[6] *See* Ex. D [redacted] Ex. E [redacted] Ex. F [redacted].

[7] *See* Ex. G [redacted] Ex. H [redacted]

[8] Ex. D [redacted]

[9] Ex. I [redacted]

[10] Ex. G [redacted] Ex. H [redacted].

[11] Ex. J [redacted]

[12] Ex. K [redacted] Ex. L [redacted]

May 2021, Kove designated Jassy as an ESI custodian, noticed his deposition, and sought the Six Pager. AWS refused and Kove moved to compel. Dkt. 351. In October 2021, the Court determined, *inter alia*, that the Six Pager is relevant and ordered its production. Dkt. 441 at 7, 9.

Thirteen months after the Court's order, AWS claimed it could not find the document. This inability to locate a document that was widely reported on, and of which Jassy claims to have written 30 drafts, is troubling.[13] AWS's briefing led the Court to conclude that the Six Pager was readily available—the Court explained: "AWS does not claim it would be burdensome or difficult to produce this small document that already is in hand." Dkt. 441 at 9. Only after the Court ordered the Six Pager to be produced did AWS claim it could not find it. Ex. M [AWS Supp. O&Rs to Kove's 1st, 3rd, 8th, and 9th RFPs at 25-26]. Worse, AWS has not even conducted a reasonable search for the document because it did not ask Jassy for the document he wrote, instead just checking with his assistant. *Id*. This is particularly problematic because Amazon's former CTO testified that if he wanted to find the Six Pager, he [REDACTED] Ex. A [REDACTED] Since the Court's Order, Kove has diligently taken discovery to discern whether this information can be obtained elsewhere and to further clarify Jassy's role. In that time, AWS produced Jassy's ESI and Kove took additional depositions, both of which confirm Jassy's significant role in major strategic decisions for the accused products. But critical parts of the puzzle remain missing.

After Kove deposed high-level current and former AWS employees—each of whom disclaimed knowledge about the details of the Six Pager[14]—Kove asked AWS to identify a witness who could testify to the contents of the Six Pager and how it was used by Jassy. On March 13,

---

[13] *See, e.g.*, https://www.nytimes.com/2021/02/03/technology/andy-jassy-amazon-ceo-jeff-bezos.html ("'I was so nervous. I wrote 30 drafts of this paper,' Mr. Jassy said.").

[14] *See* Ex. A [REDACTED] Ex. B [REDACTED] ; Ex. C [REDACTED]

2023, AWS categorically refused to produce such a witness. Ex. N [redacted]

**C. Kove's Technology Made AWS Feasible And Commercially Successful.**

A high level description of Kove's technology is useful in understanding how central the Six Pager and Jassy's testimony are. Kove's patents solved the problem of capacity limitations of using a central server to organize information by creating a system for locating data in a hyper-scaled environment where the data are continuously changing. Ex. O [AMZ_KOVE_000017676 (U.S. Patent No. 7,814170 ("the '170 patent")) at 2:14-3:36]. Instead of using a central server, Kove's patents describe a system that uses hash functions to distribute information across multiple servers, and so allows cloud service providers to seamlessly store, update, access, and organize trillions of objects. This architecture allowed for the types of extraordinary data needs in today's cloud, in a way that conventional systems could not even come close. This is why *MIT Technology Review* found distributed storage to be a top emerging technology that would change the world. The 2004 article quotes researchers declaring "distributed hash tables as the coming future of networked storage" and that "[w]hat's striking about it is its huge variety of applications . . . Not very many technologies have that broad potential."[15]

AWS recognized that potential. As one AWS engineer explained, AWS "ha[s] a history of 10 years of using distributed hash tables to run systems and that becomes very powerful and

[15] Ex. P [*10 Emerging Technologies That Will Change Your World*, MIT TECHNOLOGY REVIEW February 2004, at 4].

that algorithm makes things work at massive scales and pretty much nothing else does."[16] Without Kove's technology, AWS would not have been able to create hyper-scalable, available, durable, and speedy storage. Indeed, Kove's patents are cited over 100 times in AWS-related patents, illustrating their foundational value.[17]

## III. ARGUMENT

A party has a right to compel any person to appear at a deposition, with limited exceptions. Fed. R. Civ. P. 30(a); *see CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002) (abuse of discretion to bar CEO's deposition). "Before restricting discovery, the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it," and "society's interest in . . . truthseeking." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (attribution omitted). Although not yet adopted by the Seventh Circuit, courts in this circuit have applied the apex doctrine to determine, with discretion, whether to order a senior official's deposition. *See, e.g.*, *DeLeon-Reyes v. Guevara*, 2021 WL 3109662, at *3 (N.D. Ill. July 22, 2021); *Boyd v. Lazer Spot, Inc.*, 2022 WL 2865881, at *4-6 (N.D. Ill. July 6, 2022). Under this doctrine, courts consider the extent that: "(1) the official has no unique personal knowledge of the matter in dispute; (2) the information can be garnered from other witnesses or (3) other discovery methods; and (4) sitting for the deposition would impose a hardship in light of the officer's other duties." *Boyd*, 2022 WL 2865881, at *5.

"In short, highly placed executives are not immune from discovery, and the fact that an executive has a busy schedule cannot shield that witness from being deposed." *Johnson v. Jung*,

[16] AWS re:Invent 2017: How DynamoDB Powered Amazon Prime Day 2017 (DAT326), YouTube (November 30, 2017), available at https://www.youtube.com/watch?v=83-IWlvJ__8&feature=youtu.be&t=38m38s.

[17] Ex. Q [Kove's Sixth Amended Responses to AWS's First Set of Interrogatories (Nos. 2, 4, 8, 9) at 23-43].

242 F.R.D. 481, 486 (N.D. Ill. 2007). As every apex deposition involves some hardship, "[t]he party seeking protection from discovery bears the burden of presenting a particular and specific demonstration of fact as to the need for that protection." *Boyd*, 2022 WL 2865881, at *5 (attribution omitted). "[C]ompletely prohibiting a deposition is an extraordinary measure." *Id.*; *see* Dkt. 441 at 11 (requiring "strong showing" before completely denying deposition).

**A. The Circumstances Have Changed Since The Court's Order On Kove's Earlier Motion To Compel Jassy's Deposition.**

The Court previously granted Kove's motion to compel the Six Pager and "ordered Defendant to produce this document that reportedly lays out the foundation of the company that led to the development of the accused Amazon S3 product." Dkt. 441 at 16. But when it came to Jassy's deposition, the Court denied Kove's motion without prejudice and with leave to renew the motion after Kove reviewed the Six Pager. *Id.* at 10-17. In reaching this conclusion, the Court found no question that "Jassy has personal knowledge related to the accused products in this case," and agreed that "there is at least one topic about which it appears [Jassy] may have unique knowledge: his creation of the 'six-pager' setting forth the vision for AWS." *Id.* at 11, 15-16. Nevertheless, the Court decided to wait for its production to take up the question of Jassy's deposition, as the Court thought there was a chance that the production of the Six-Pager would obviate the need for a deposition:

> [W]ithout knowing the specific content of the document, Plaintiff is hard-pressed to persuasively argue (and this Court to find) that Jassy's testimony about the six-pager would be probative of matters at issue in this lawsuit, and that the information sought could not be obtained from other witnesses. . . .
> . . . If, after reviewing the "six-pager" and completing the Rule 30(b)(6) and other depositions, Plaintiff is able to demonstrate that it has been unable to obtain information on specific topics that bear on the elements of the claims or the alleged damages, and that Jassy has unique knowledge of this information, the motion may be renewed. If that happens, the Court will consider "the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court.

*Id.* at 16-17 (internal citations omitted).

The Court's previous Order seems to contemplate completion of depositions before determining whether Jassy could be deposed, *id.* at 17, but that assumed AWS would produce the Six Pager. Because AWS has not produced it, refused to conduct a reasonable search (which necessarily would have included asking Jassy for the document he wrote), and refused to produce a witness with knowledge of the document, Jassy's deposition is appropriate without deposing additional witnesses. Nor would it be practical to wait for those other depositions to be completed before deposing Jassy when fact discovery is set to close on May 5, 2023. *See* Dkt. 580 ("No further requests to extend this date will be entertained."). In short, there is no other available means to learn about the Six Pager (and the associated origin story) except by deposing Jassy.

The foregoing is enough to warrant Jassy's deposition and for the Court to grant Kove's motion to compel. The Court already found the Six Pager relevant and, as discussed, Jassy is the only person with knowledge of those contents and the surrounding circumstances. The following sections provide additional background information on the relevance of Jassy's knowledge.

**B. Jassy Has Unique And Relevant Knowledge.**

The apex doctrine is meant to mitigate the risk of wasting executive time "where the officer has no real information." *Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, 2022 WL 16646418, at *3 (N.D. Ill. Nov. 2, 2022) (compelling CEO's deposition). But the doctrine also recognizes that busy executives cannot avoid a deposition if they possess unique knowledge, including hands-on involvement or substantial roles in relevant matters. *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 2014 WL 257566, at *2-4 (S.D. Ill. Jan. 23, 2014) (hands-on); *Johnson*, 242 F.R.D. at 485-86 (substantial role). Jassy has both.

**1. Information Needed For Kove's Reasonable Royalty Analysis.**

The information Kove seeks from Jassy is relevant to Kove's damages case and the jury's

consideration of the hypothetical negotiation, which "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Under the hypothetical negotiation construct, the jury considers the fifteen *Georgia-Pacific* factors, including the commercial relationship between patentee and infringer (factor #5) and the profitability, success, and popularity of the infringing products (factor #8). *See Georgia–Pac. Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970). Unlike a real negotiation, this approach assumes that, at the time of the hypothetical negotiation, both parties know all future information that would have been relevant to their discussion. *See Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 378 F. Supp. 2d 459, 466 (D. Del. 2005) (summarizing law).

Jassy is necessary to answer "the core economic question" in the hypothetical negotiation: "what the infringer . . . would have anticipated the profit-making potential of use of the patented technology to be, compared to using non-infringing alternatives." *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014). The jury will consider if AWS "would expect to earn X profits in the future without using the patented technology, and X + Y profits by using the patented technology." *Id.* at 770-71. To establish its damages, Kove needs to know why AWS decided to use Kove's patented technology over alternatives.

### 2. Jassy Has Unique Knowledge About The Six Pager, AWS's Origin Story, And His Decisions.

Jassy can uniquely describe the missing Six Pager because he was the one who conceptualized, wrote, and implemented it.[18] Jassy authored the six-page memo in 2003, setting forth the business case to launch AWS as its own company. The memo "define[s] the AWS

[18] Other high-level employees and former employees cannot recall details of the meeting, Six Pager, or Board memos. *See* Ex. A [redacted] Ex. B [redacted] [redacted] Ex. C [redacted]

business" and demonstrates Jassy's corporate vision "to build something complex & substantial."[19] It describes the vision and significance of the accused S3 product and is contemporaneous in time with the hypothetical negotiation. The Six Pager has been the subject of extensive reporting, with Jassy himself regaling how he "was so nervous" that he "wrote 30 drafts of this paper."[20]

Beyond the Six Pager, Jassy—as the person who conceptualized, developed, and launched AWS and S3—is the only person who can provide information regarding his strategic vision for AWS and S3, the decisions he made as the leader of AWS, and the basic tenets, design philosophy, and priorities that he instilled in the company and in the accused products. Likewise, Jassy is the only person who can provide information regarding how Jassy—who would have been the decisionmaker at the hypothetical negotiation—valued scalable, durable, available, and speedy storage at the time of the hypothetical negotiation. Such "personal involvement in the decision-making process . . . alone would be sufficient" to warrant Jassy's deposition. *Johnson*, 242 F.R.D. at 485 (permitting CEO's deposition).

Jassy was also responsible for managing the technical team's development of S3 and provided the final word on the decision to implement an infringing S3 design over non-infringing alternatives. For example, in late 2004, [redacted]

[19] https://aws.amazon.com/blogs/aws/15-years-of-aws-blogging/
[20] https://www.nytimes.com/2021/02/03/technology/andy-jassy-amazon-ceo-jeff-bezos.html
[21] Ex. D [redacted]
[22] Ex. F [redacted]

[redacted] Under Jassy, AWS ultimately implemented an infringing version of S3 over other alternatives—Kove needs to understand why and how Jassy made the decisions he did. Jassy is the only person who can provide that information.

Jassy's unique knowledge also extends to annual memos regarding AWS and S3 that he wrote and presented to Amazon's Board of Directors, many of which were never produced.[25] These "board memos" seem to describe [redacted] *See* Ex. T [redacted] For example, the 2005 board memo explains that [redacted] The fact that AWS [redacted] indicates that in the hypothetical negotiation, AWS would have been willing to pay more to license Kove's technology [redacted][27] The memo also reveals that around the time of the hypothetical negotiation, [redacted], indicating AWS would have paid more in a hypothetical negotiation for Kove's technology because [redacted][28] This information is key to estimating the benefits of Kove's technology to AWS, and Jassy uniquely knows it

---

[23] Ex. R [redacted]

[24] Ex. S [redacted]

[25] *See* Ex. T [redacted] Ex. C [redacted]

[26] *See* Ex. T [redacted]

[27] *Id.*

[28] *Id.* [redacted] *see id.* [redacted]

because he was the one who synthesized his strategic insight into his annual reports.

Like the Six Pager, many board memos are missing. While Jassy [REDACTED] *see* Ex. C [REDACTED] AWS has only produced two—one from 2005, and one from 2008. When notified of their absence, AWS refused to look for them. [REDACTED] None of AWS's witnesses were familiar with their contents. Ex. C [REDACTED] Ex. A [REDACTED]; Ex. B [REDACTED] Once again, Jassy holds the key.

Jassy also had decision-making authority on pricing and pricing strategy and is the only person who can explain why and how he made pricing decisions. For example, in February 2006, [REDACTED] In subsequent years, [REDACTED][32] AWS's ability to charge more for a product because it contains Kove's technology, as opposed to alternatives, is at the heart of the hypothetical negotiation. For example, [REDACTED], a massive benefit from Kove's technology that undoubtedly impacted pricing strategy.[33] Only Jassy can testify about how Kove's inventions (or features enabled by Kove's inventions) impacted his pricing decisions. *See City of Rockford v.*

[29] Ex. G [REDACTED]
[30] *Id.*; Ex. H [REDACTED]
[31] Ex. U [REDACTED]
[32] Ex. K [REDACTED]
[33] Ex. V [REDACTED]

*Mallinckrodt ARD, Inc.*, 2020 WL 1675593, at *3 (N.D. Ill. Apr. 6, 2020) (permitting deposition where CEO of large corporation emailed pricing strategy).

Other AWS employees confirmed Jassy possesses unique information from the time around the hypothetical negotiation. [redacted][34] He was [redacted] and [redacted].[35] Employees confirmed that [redacted][36] Unique, personal knowledge of such critical information makes Jassy a necessary deponent, despite his executive status. *See Johnson*, 242 F.R.D. at 485 (permitting deposition of busy CEO with "personal involvement in the decision-making process").

## IV. CONCLUSION

The apex doctrine is not intended to shield people with unique knowledge from discovery simply because they are powerful. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. Apr. 4, 2012) (permitting deposition of Samsung's president and CEO); *In re Google Litig.*, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011) (permitting deposition of Google's CEO). Jassy was the key decision-maker and possesses unique knowledge necessary for Kove's damages case. Accordingly, Kove respectfully requests that the Court order AWS to make Andrew Jassy available for deposition. Kove will strive to minimize disruption to Jassy's schedule.

---

[34] Ex. A [redacted]

[35] *Id*. at [redacted].

[36] Ex. C [redacted]

Dated: March 28, 2023

Respectfully submitted,

*/s/ Courtland L. Reichman*

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5000

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard (*pro hac vice*)
sballard@reichmanjorgensen.com
Savannah Carnes *(pro hac vice*)
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 560-3501

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com
Philip Eklem (*pro hac vice*)
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Taylor Mauze (*pro hac vice*)
tmauze@reichmanjorgensen.com
Navid Bayar (*pro hac vice*)
nbayar@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

***ATTORNEYS FOR PLAINTIFF KOVE IO, INC.***

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of March, 2023, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Courtland L. Reichman*
Courtland L. Reichman