**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Kove IO, Inc.,

Plaintiff,

v.

Amazon Web Services, Inc.,

Defendant.

Civil Action No. 1:18-cv-08175

Hon. Matthew F. Kennelly

Jury Trial Demanded

**MOTION TO ENFORCE THIRD-PARTY AMAZON.COM'S AND AMAZON TECHNOLOGIES, INC.'S COMPLIANCE WITH SUBPOENAS**

# TABLE OF CONTENTS

**Page**

BACKGROUND ..... 1

A. Amazon Has Not Produced Documents In Its Possession ..... 2

B. ATI's Production Has Been Similarly Paltry ..... 5

C. Amazon Has Refused To Make Witnesses Available for Deposition ..... 6

ARGUMENT ..... 7

A. The Court Should Order the Amazon Entities to Produce the Subpoenaed Documents ..... 8

B. Amazon Must Provide Corporate Deposition Testimony ..... 10

CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AstraZeneca AB v. Apotex Corp.*,
985 F. Supp. 2d 452 (S.D.N.Y. 2013), *aff'd in part, rev'd in part,* 782 F.3d 1324 (Fed. Cir. 2015)....2, 9, 10

*BNSF Ry. Co. v. Alere, Inc.*,
2018 WL 2267144 (S.D. Cal. May 17, 2018)....11

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
807 F.3d 1283 (Fed. Cir. 2015)....2

*Castelino v. Rose-Hulman Inst. of Tech.*,
2018 WL 3721391 (S.D. Ind. Aug. 6, 2018) ....11

*Cent. States, Se. & Sw. Areas Pension Fund v. GWT 2005 Inc.*,
2009 WL 3255246 (N.D. Ill. Oct. 6, 2009)....11

*Frenchporte LLC v. C.H.I. Overhead Doors, Inc.*,
2023 WL 24475917 (C.D. Ill. Mar. 10, 2023)....8, 10

*Kingsberry v. United States*,
2012 WL 1296903 (S.D. Ill. Apr. 16, 2012)....11

*LaSalle Nat. Assoc. v. Nomura Asset Capital Corp.*,
2003 WL 21688225 (N.D. Ill. 2003) ....8

*Malibu Media, LLC v. Reynolds*,
2013 WL 870618 (N.D. Ill. Mar. 7, 2013)....8

*In re Motorsports Merch. Antitrust Litig.*,
186 F.R.D. 344 (W.D. Va. 1999)....9, 10

*Petersen v. Union Pacific R. Co.*,
2006 WL 2054365 (C.D. Ill. July 21, 2006)....8

*U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,
238 F. Supp. 2d 270 (D.D.C. 2002)....11

*Raap v. Brier & Thorn, Inc.*,
2017 WL 2462823 (C.D. Ill. July 7, 2017)....1

*Roy v. Fedex Ground Package Sys.*,
2021 WL 3727143 (D. Mass. Aug. 23, 2021) ....8, 10

*Trs. of the Chi. Reg'l Council v. Drive Constr.*,
2023 WL 429047 (N.D. Ill. Jan. 26, 2023) .......... 7

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) .......... 9

**Rules**

Federal Rule of Civil Procedure 45 .......... 1, 7

Federal Rule of Civil Procedure 45(d)(2)(B)(i) .......... 8

Federal Rule of Civil Procedure 45(d)(3) .......... 2

Federal Rules of Civil Procedure Rules 37 and 45 .......... 1

Local Rule 37.2 .......... 7

Pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure, Kove IO ("Kove") respectfully moves to enforce its subpoenas to Amazon.com, Inc. ("Amazon") and Amazon Technologies, Inc. ("ATI") (collectively, the "Amazon Entities" or "Entities"). Kove respectfully requests for an expedited briefing schedule as described in the Joint Status Report (Dkt. 603) to resolve this issue before the end of fact discovery.

Nearly a year-and-a-half ago, in October 2021, Kove served subpoenas on Amazon and ATI, requesting documents and deposition testimony relating to the issues of damages and willful infringement. Though Amazon and ATI initially agreed to comply with the subpoenas, they have yet to do so. In the 18 months since the subpoenas were served, Amazon has produced no responsive documents, and ATI has produced a mere eight documents. And despite assuring Kove that the Amazon Entities will make their witnesses available for deposition on all subpoenaed topics, the Entities reversed course last week. With fact discovery closing on May 5, 2023, Kove cannot wait any longer to preserve its ability to seek judicial relief. Thus, Kove respectfully requests that the Court compel the Amazon Entities to produce the subpoenaed documents (as described in more detail below) and to make their witnesses available for deposition.[1]

## BACKGROUND

AWS (the named defendant) has long asserted that it is a separate entity from Amazon (its parent company), that it cannot access Amazon's documents, and that Kove must subpoena Amazon and its subsidiaries (like ATI) for discovery directly. Kove subpoenaed both entities in

[1] Kove and the Amazon Entities agreed that this dispute should be heard before this Court. Under Rule 45, a party can move to compel compliance in the district "where compliance is required" but courts have held that the phrase "is unclear." *Raap v. Brier & Thorn, Inc.*, 2017 WL 2462823, at *2 (C.D. Ill. July 7, 2017) (collecting cases). Instead, "the better approach is to tie the place of compliance to the location of the subpoenaed person or entity." *Id.* at *3. Because Amazon transacts business in Chicago, the subpoenaed documents will be produced electronically, counsel from Fisch Sigler is litigating the underlying case against AWS in N.D. Ill., and depositions are conducted remotely, Kove and the Amazon Entities agreed to resolving this dispute in N.D. Ill. rather than in S.D.N.Y. (the district in which the subpoena requests compliance).

October 2021, serving carefully tailored requests for documents and deposition testimony. Amazon and ATI—which, like AWS, are represented by Fisch Sigler LLP—did not move to quash or modify the subpoenas under Rule 45(d)(3), instead agreeing to comply. But despite having over a year to do so, the Entities have yet to make good on their promises.[2]

### A. Amazon Has Not Produced Documents In Its Possession

Kove's October 2021 subpoena to Amazon included five requests for production and five corresponding deposition topics.[3] The requests are relevant to Kove's damages analysis—specifically the hypothetical negotiation[4]—and seek documents showing Amazon's targeted or actual return on investment (ROI), investment hurdle rate, or equivalent metric.[5] The document requests sought this information with respect to both Amazon's investments and AWS-related investments.[6]

In February 2022, after months of back-and-forth, counsel for Amazon stated that [REDACTED] responsive to the subpoena and that [REDACTED][7] Amazon never produced any documents. The next month, the Amazon Entities stated they [REDACTED]

---

[2] The facts related to the communication history between Kove, and the Amazon Entities are verified through counsel's declaration. *See* Decl. of Navid Bayar ¶ 17.

[3] Ex. A (Subpoena to Amazon.com, dated October 27, 2021).

[4] A "hypothetical negotiation" is an approach to determining a reasonable royalty based on what a willing licensor and a willing licensee would have agreed to had they successfully negotiated an agreement just before infringement began. *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1304 (Fed. Cir. 2015). Financial hurdle rates and target ROIs are financial concepts used to assess the financial benefit a corporation expects to receive when making investment and acquisition decisions. Thus, both concepts would be relevant to the royalty that a corporation would be willing to pay to license patented technology. *See AstraZeneca AB v. Apotex Corp.*, 985 F. Supp. 2d 452, 475 (S.D.N.Y. 2013), *aff'd in part, rev'd in part,* 782 F.3d 1324 (Fed. Cir. 2015).

[5] The term hurdle rate refers to the minimum rate that a company would accept when considering an investment.

[6] *See, e.g.*, Ex. A at 10 (Request for Production No. 3: "Documents sufficient to show the target or projected return on investment (or equivalent metric) and investment hurdle rate (or equivalent metric) for developing any AWS product or service, including the Accused Products.").

[7] *See* Ex. C (Letter from Amazon and ATI, dated February 10, 2022), at 1.

No production ever came.

In March 2022, the Court stayed the case pending the outcome of several reexamination proceedings in the PTO (Dkt. 514). The stay was lifted in November 2022 (Dkt. 534). Afterwards, Kove *again* asked Amazon to produce the subpoenaed documents.[9] To Kove's surprise, Amazon suggested that two documents that *AWS* previously produced satisfied Amazon's obligations under the subpoena.[10] That cannot be true, as neither document includes Amazon's hurdle rate, ROI, or similar information, which the subpoena explicitly requested.[11] When Kove pointed out the inaptness of Amazon's identified documents, Amazon continued to represent that it was [12]

To assist Amazon's search, Kove (in January 2023) identified exemplary documents responsive to its subpoena. Specifically, Kove's attorneys identified a set of documents that Amazon had recently produced to Congress. This batch of documents included reports detailing how Amazon assesses the financial worthwhileness of technology acquisitions in terms of an expected ROI. While the reports appeared to contain information responsive to Kove's subpoena, the most pertinent information (*i.e.*, Amazon's valuation of the target companies and its analysis as to whether the acquisition would be sufficiently profitable) was redacted. Kove asked Amazon to produce any such acquisition reports (or documents with similar information)—in unredacted form—for the subset of companies that Amazon acquired[13] and incorporated into AWS's products

[8] *See* Ex. D (Letter from Amazon and ATI, dated March 7, 2022), at 2-3.

[9] *See* Ex. E (Letter from Kove, dated December 6, 2022).

[10] *See* Ex. F (Letter from Amazon and ATI, dated December 15, 2022) at 1 ( .

[11] . *See* Ex. F (Letter from Amazon and ATI, dated December 15, 2022), at 1.

[12] *See* Ex. H (Letter from Amazon and ATI, dated February 17, 2023) at 2.

[13] While AWS is a separate company from Amazon.com, it appears that Amazon.com was responsible for vetting and consummating acquisitions for AWS.

or services ("AWS-related acquisitions").[14]

In response, Amazon asked Kove to identify Amazon's own acquisitions. To break the logjam, Kove (at Amazon's request) sent Amazon a list of Amazon's 16 publicly known AWS-related acquisitions for which Kove sought accompanying acquisition reports or similar financial analysis.[15] This list of 16 included major AWS-related acquisitions like the acquisition of Elemental Technologies (valued at $500,000,000) and CloudEndure (valued at $200,000,000). By any measure, these were significant transactions for which Amazon maintains financial documents.

Amazon eventually agreed to search for and produce AWS-related acquisition reports and other documents with similar information. *See* Ex. I (Letter from Amazon, dated February 24, 2023), at 2 [REDACTED] (emphasis added). But to Kove's surprise—during counsels' recent meet-and-confer the following month (on March 24th)—Amazon (1) confirmed that it has not searched for any of the 16 acquisition reports and (2) stated that Amazon has no plans to search for or produce any acquisition reports whatsoever. Instead, Amazon rested on amorphous claims of burden, relevance, and its sufficient search efforts, none of which is

[14] *See* Ex. G (Letter from Kove, dated January 3, 2023), at 2. The acquisition reports Kove referenced were produced to the House Judiciary Committee during a Committee investigation into Amazon's potential antitrust violations.

[15] *See* Ex. H (Letter from Kove, dated February 17, 2023), at 1 ([REDACTED]

persuasive.[16] Then, five-days later, and just as Kove was about to file the motion Amazon knew was being drafted, Amazon's counsel for the first time informed Kove [redacted] (something that was never said in the March 24th call).[17] The letter provides no explanation about why the Amazon Entities waited a month to inform Kove [redacted]. Irrespective, Amazon's counsel acts on its behalf in discovery and Kove justifiably relied on the assurances provided.

This motion seeks an order requiring Amazon to honor its agreement by producing the 16 AWS-related acquisition reports or other documents with similar information and analyses if Amazon lacks an acquisition report for a specific acquisition.

**B. ATI's Production Has Been Similarly Paltry**

ATI is a subsidiary of Amazon that conducts intellectual property licensing activities on behalf of both Amazon and AWS. Kove's subpoena to ATI included 21 requests for production and 21 corresponding deposition topics.[18] The requests generally seek (1) hurdle rate/ROI information (relevant to Kove's damages analysis); (2) information regarding ATI's licensing practices (relevant to whether AWS's infringement has been willful); and (3) information regarding the relationship between AWS and ATI (relevant to whether ATI's practices can be imputed to AWS). Like Amazon, ATI agreed to search for and produce documents.[19] And like Amazon, ATI has not followed-through.[20] ATI has produced a mere eight documents. No hurdle rate documents have been produced (RFP Nos. 1-5), little to no procedures or policies related to invention disclosures or patent applications have been produced (RFP Nos. 7, 8, 12, 13, 14, 15,

---

[16] *See* Ex. M (Letter from Kove, dated March 28, 2023). Needless to say, Amazon's search efforts could not have been sufficient, given Amazon's admission that there had been no search.

[17] *See* Ex. O (Letter from Amazon, dated March 29, 2023). Additionally, this letter does not change the fact that the parties are at an impasse on the issues raised in this motion.

[18] *See* Ex. B (Subpoena to ATI, dated October 27, 2021).

[19] *See* Ex. H (Letter from Amazon and ATI, dated February 17, 2023).

[20] *See* Ex. L (Email from Kove, dated March 21, 2023), at 2.

and 16), no management-related documents have been produced (RFP Nos. 9, 17, 20, and 21), and no documents on communications with AWS employees about the Asserted Patents were produced (RFP Nos. 10, 11).

When Kove asked ATI to confirm in writing during the parties' meet-and-confer on February 28 that it searched for but could not locate responsive documents, ATI's counsel demurred, stating they needed to confer with ATI about whether ATI will give counsel "resources" to provide such a confirmation. This is improper, particularly because Amazon is a trillion-dollar company. This motion requests that the Court order ATI to complete its on-going search efforts and produce the responsive documents in its possession.

### C. Amazon Has Refused To Make Witnesses Available for Deposition

On February 28, 2023, counsel for Kove and counsel for the Amazon Entities met-and-conferred at the Amazon Entities' request. During the meeting, counsel for the Amazon Entities confirmed that the Amazon Entities would make witnesses available for deposition for *all of the deposition topics in Kove's subpoenas*, but wanted to continue negotiations over the scope of many of them.[21] In follow-up communication, Kove stated that it could not agree to narrow certain topics about ROIs and hurdle rates any further without rendering those topics meaningless.[22] Instead of justifying its position, to Kove's surprise, on March 22nd—at the 11th hour of discovery—the Amazon Entities abandoned their prior agreement, now stating that Amazon planned to move to quash *all* deposition topics in Kove's subpoena while ATI planned to quash three of Kove's subpoenaed deposition topics.[23] The parties conferred again on March 24th. Kove

[21] In fact, the Amazon Entities refuted Kove's previous statements that the Amazon Entities appeared unwilling to designate witnesses for corporate testimony, *see* Ex. I at 4 [REDACTED] *See also* Ex. N (Email from Amazon, dated March 3, 2023)

[22] *See* Ex. N (Email from Kove, dated February 28, 2023); Ex. J (Letter from Kove, dated March 9, 2023); Ex. K (Letter from Amazon, dated March 20, 2023).

[23] *See* Ex. L (Email from Amazon, dated March 22, 2023).

compromised and accepted Amazon's proposals to narrow deposition topic nos. 2-5 in the Amazon subpoena.[24] But with respect to Topic No. 1,[25] Kove continued to seek deposition testimony within the same scope as the Subpoena's RFPs so it could obtain information about AWS-related acquisitions and transactions.[26] Amazon refused, arguing that Topic No. 1 should be narrowed to [redacted][27] But (as Amazon's counsel admitted during the meet-and-confer) the Accused Products lack their own ROI or hurdle rates. So if Kove agreed to Amazon's proposal, it would not get any relevant testimony. Kove is moving to compel testimony on just this remaining topic.[28]

* * *

As evidenced by the numerous exhibits of prior correspondence, the parties have met and conferred multiple times, including most recently on March 24, 2023.[29] Given the impending close of fact discovery, Kove cannot afford to wait any longer. This dispute is therefore ripe for the Court's adjudication under Local Rule 37.2.

## ARGUMENT

Under Rule 45, "parties may seek discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Trs. of the Chi. Reg'l Council v. Drive Constr.*, 2023 WL 429047, at *3 (N.D. Ill. Jan. 26, 2023) (cleaned up).

---

[24] *See* Ex. M (Letter from Kove, dated March 28, 2023), at 3.

[25] *See* Ex. A ("[Amazon's] target return on investment (or equivalent metric) and investment hurdle rate (or equivalent metric) between 2003 and 2020."), at 6.

[26] *See* Ex. J (Letter from Kove, dated March 9, 2023), at 2-3.

[27] *See* Ex. N (Email from Amazon, dated March 3, 2023).

[28] Mindful of its responsibility to be judicious with the Court's time, Kove has elected to not compel deposition testimony for the three ATI deposition topics that ATI has refused to provide a witness for (topic nos. 1, 2, and 4).

[29] *See* Ex. M (Letter from Kove, dated March 28, 2023). The following counsel participated during the March 24th conferral: Adam Adler and Navid Bayar (on behalf of Kove) and Jeffrey Saltman and Lisa Phillips (on behalf of Amazon and ATI).

"Courts resolve discovery disputes in their discretion by adopting a liberal interpretation of the discovery rules." *Id.* (citation omitted). If a non-party fails to comply with a validly issued subpoena, Rule 45 empowers courts to compel compliance. *See* Fed. R. Civ. P. 45(d)(2)(B)(i). In resolving motions to enforce subpoenas, courts consider whether the discovery is proportionate and whether the benefit outweighs the burden. *Malibu Media, LLC v. Reynolds*, 2013 WL 870618, at * 6 (N.D. Ill. Mar. 7, 2013). The subpoenaed party carries the burden of showing that requested discovery should not be provided. *See Petersen v. Union Pacific R. Co.*, 2006 WL 2054365, at *1 (C.D. Ill. July 21, 2006) ("The party opposing discovery has the burden of proving that the requested discovery should be disallowed."); *see also LaSalle Nat. Assoc. v. Nomura Asset Capital Corp.*, 2003 WL 21688225, at *1 (N.D. Ill. 2003) ("A party seeking to quash a subpoena bears the burden of proving that the subpoena is unduly burdensome.").

### A. The Court Should Order the Amazon Entities to Produce the Subpoenaed Documents

The Amazon Entities should be ordered to produce the acquisition reports and similar documents that they previously agreed to produce.

As an initial matter, the Court should order production because the Amazon Entities have already agreed, via their counsel, to provide these documents. *See Frenchporte LLC v. C.H.I. Overhead Doors, Inc.*, 2023 WL 24475917, at * 3 (C.D. Ill. Mar. 10, 2023) ("[I]f the parties could not rely on courts to enforce discovery agreements, there would be little incentive for parties to make them." (citation omitted)); *Roy v. Fedex Ground Package Sys*., 2021 WL 3727143, at *8 (D. Mass. Aug. 23, 2021) ("Courts are inclined to enforce discovery agreements between the parties, particularly when 'the parties' agreed to each other's requests[.]'" (citation omitted) (collecting cases)). Amazon's counsel expressly confirmed that Amazon would produce AWS-related acquisition reports or similar documents but has strategically—and dilatorily—changed its

position. This about-face is troubling and should not be rewarded. *See In re Motorsports Merch. Antitrust Litig.*, 186 F.R.D. 344, 350 (W.D. Va. 1999) (finding "[e]ven more troubling," that defendant informed plaintiffs' counsel "it intended to comply with the subpoena and simply needed more time to produce the documents requested" but did not).[30]

Notwithstanding the parties' agreement, the Court should order production because the documents Kove seeks bear directly on disputed issues in the case. The acquisition reports at issue include key financial metrics that will shed light on Amazon's target ROIs, hurdle rates, or similar metrics. This information is relevant to the parties' "hypothetical negotiation" and, in particular, to the so-called profit-split, which considers how the parties would split or divide the profits from the invention during a hypothetical negotiation. Documents relating to Amazon's hurdle rate or expected return-on-investment speak directly to this issue, as they speak to the financial worthwhileness of a transaction. *See, e.g.*, *AstraZeneca AB*, 985 F. Supp. 2d at 475 (finding relevant to the hypothetical negotiation "the expected return on investment and other financial metrics, as well as the license's overall alignment with corporate strategy." (emphasis added)); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317-18 (Fed. Cir. 2011) ("looking at the portion of profit that may be customarily allowed in the particular business for the use of the invention or similar inventions—remain valid and important factors in the determination of a reasonable royalty rate"). This information is particularly relevant in the context of Amazon because any hypothetical negotiation would likely involve Amazon (as the parent company), as AWS did not formally exist on the date of first infringement.

Amazon has no informed relevance objections or valid claims of burden, since, by its own

---

[30] *See* Ex. I (Letter from Amazon and ATI, dated February 24, 2023) [redacted] at 1-2.

admission, it has neither searched for nor reviewed any of the documents at issue.[31] And there is no reason to think that any of the discretely identified reports at issue would be difficult to locate, since they concern significant transactions that Amazon likely disclosed to Congress, and because documents relating to recent transactions worth hundreds-of-millions of dollars are not likely to simply disappear, *e.g.*, the acquisition reports for each of Elemental Technologies (valued at $500,000,000) and CloudEndure (valued at $200,000,000).

Finally, ATI should similarly be ordered to complete its search and production efforts. As explained above, the subpoenaed ATI documents are both relevant to damages and willful infringement because ATI, as the patent licensing entity, either sets or carries out AWS's licensing practices and policies. ATI has not claimed that it cannot search for and locate the requested documents, instead regularly representing to Kove that it is "[redacted] Compliance is now long overdue. Kove requests that the Court hold ATI to its representations and order it to produce the responsive documents in its possession. *See Roy*, 2021 WL 3727143, at *8 (D. Mass. Aug. 23, 2021); *In re Motorsports Merch. Antitrust Litig.*, 186 F.R.D. at 350 (W.D. Va. 1999).

### B. Amazon Must Provide Corporate Deposition Testimony

Kove further requests that Amazon be ordered to make its witnesses available for deposition under Topic No. 1. Kove needs the deposition to understand and authenticate the produced documents. Also, as with the documents themselves, the deposition is relevant to the profit-split inquiry at the hypothetical negotiation. *See AstraZeneca AB*, 985 F. Supp. 2d at 475. And the Court should require that Amazon comply with its prior agreement. *See Frenchporte LLC*, 2023 WL 24475917, at *3 (C.D. Ill. Mar. 10, 2023). Further, Amazon's last-minute [redacted]

---

[31] *See* Ex. M (Letter from Kove, dated March 28, 2023), at 2-3.
[32] *See* Ex. I (Letter from Amazon, dated February 24, 2023), at 2.

[REDACTED][33] is not sufficient as a [REDACTED] to ensure that the full scope of important information on the topic is being provided.

Additionally, the "only relief available to a nonparty when served with a subpoena to testify at a deposition is to file a motion to quash or modify the subpoena." *BNSF Ry. Co. v. Alere, Inc.*, 2018 WL 2267144, at *7 (S.D. Cal. May 17, 2018). Thus, Amazon should have timely moved to quash or modify the deposition subpoena by the date of compliance in the subpoena (November 17, 2021). It did not. *Cent. States, Se. & Sw. Areas Pension Fund v. GWT 2005 Inc.*, 2009 WL 3255246, at *1 (N.D. Ill. Oct. 6, 2009); *see also Castelino v. Rose-Hulman Inst. of Tech.*, 2018 WL 3721391 at *2 (S.D. Ind. Aug. 6, 2018) (finding that generally a motion to quash must be made either within 14 days of service or at or before the time of compliance, though district courts may have discretion in considering a motion timely). They should not be permitted to do so now, in 2023. *See U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 278 n.6 (D.D.C. 2002) (finding that a motion to quash filed ten months after the deadline specified in the subpoena is untimely).

Amazon may argue that it can still move to quash because it served objections to Kove's subpoena in November 2021. Not so. "Unlike a subpoena seeking the production of documents, a subpoena seeking a testimonial deposition cannot be objected to with written notice." *Kingsberry v. United States*, 2012 WL 1296903, at *2 (S.D. Ill. Apr. 16, 2012). Thus, Amazon must provide a witness for deposition Topic No. 1.

**CONCLUSION**

Kove respectfully requests that within 7 days of resolving this motion, the Court order the Amazon Entities to: (1) produce the 16 AWS-related acquisition reports and similar documents

[33] *See* Ex. O (Letter from Amazon, dated March 29, 2023).

that they agreed to search for and produce and (2) complete their search and production efforts under the ATI subpoena. Kove further requests that within 14 days of resolving this motion, the Court order the Amazon Entities to designate a witness to provide testimony on Topic No. 1 in the October 2021 Amazon.com subpoena.

Dated: March 29, 2023

Respectfully submitted,

/s/ Courtland L. Reichman

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5000

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard (*pro hac vice*)
sballard@reichmanjorgensen.com
Savannah Carnes *(pro hac vice*)
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 560-3501

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com
Philip Eklem (*pro hac vice*)
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Taylor Mauze (*pro hac vice*)
tmauze@reichmanjorgensen.com
Navid Bayar (*pro hac vice*)
nbayar@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

***ATTORNEYS FOR PLAINTIFF KOVE IO, INC.***

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of March, 2023, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Courtland L. Reichman*
Courtland L. Reichman