# Exhibit A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Hon. Matthew F. Kennelly |
| v. | Jury Trial Demanded |
| Amazon Web Services, Inc., | |
| Defendant. | |

## KOVE'S FOURTH AMENDED FINAL ENFORCEABILITY AND VALIDITY CONTENTIONS

Plaintiff Kove IO, Inc. ("Kove") hereby submits its Fourth Amended Final Enforceability and Validity Contentions ("Contentions") in response to Defendant Amazon Web Services, Inc.'s ("AWS") Fifth Amended Final Invalidity Contentions ("FAFIC"), pursuant to Local Patent Rule ("LPR") 3.2 and the Court's Order entered on February 25, 2023 (ECF No. 512).

## I. KOVE'S RESERVATIONS OF RIGHTS

It is AWS's burden to prove invalidity and unenforceability by clear and convincing evidence, but, as demonstrated in Kove's Contentions, AWS has failed to carry its burden for any asserted claim. Kove's Contentions are necessarily limited to information now known to it.

In light of the foregoing, Kove reserves all rights to amend and/or supplement its Contentions as additional information becomes available, once AWS complies with the LPR, if AWS is permitted to make any amendments or supplementations to its contentions, theories, or evidence in support thereof, and in light of any Court order on claim construction. Kove further reserves all rights to rely on additional evidence in support of its Contentions.

1

Kove herein addresses, as best as it is presently able to based on the limited information available, AWS's new claim construction proposals, as set forth in Appendix A to AWS's Motion for Additional Claim Construction Briefing (Dkt. 539). In doing so, Kove in no way agrees with or endorses AWS's claim construction proposals, which have not been addressed or ordered by the Court. Kove does not agree that any additional claim construction is necessary or proper and does not agree that any of AWS's claim construction proposals are justified or correct. Indeed, Kove contends that AWS's claim construction proposals are unsupportable and without merit. Kove further notes that AWS's new claim construction proposals are vague and confusing, including as to which terms in each claim the construction is supposed to apply to, and as to the proposed constructions themselves. Kove reserves all rights to further amend its Contentions as new information comes to light and if the Court orders and further claim constructions. Kove's validity and enforceability theories herein should be understood as being in addition to, or in the alternative to, one another, and its Contentions are to be understood as a whole. Kove further notes that AWS's FAFIC will only be operative if the Court adopts one or more of AWS's proposed constructions. Kove accordingly reserves its right to rely on its Second or Third Amended Final Enforceability and Validity Contentions if appropriate.

## II. KOVE'S CONTENTIONS

### A. <u>AWS's Failure to Establish That Its References Are Prior Art</u>

The Asserted Claims are entitled to the following priority dates:

<u>'170 Patent</u>

- Claims 1, 2, 6, 8, 12, 15, 17: at least as early as October 28, 1999

<u>'640 Patent</u>

- Claims 17, 18, 24: at least as early as October 28, 1999

<u>'978 Patent</u>

- Claims 3, 6, 10, 14: at least as early as October 28, 1999

- Claims 17, 23, 24, 30: at least as early as June 2, 2000

AWS bears the burden of proving that each of its references qualify as pre-AIA 35 U.S.C. § 102 prior art for the Asserted Claims, but it has failed to do so. In particular, AWS has not met its burden of showing that the following references are prior art for one or more of the Asserted Claims:

- Domain Name System ("DNS"): AWS has failed to establish any such system was in operation, publicly used, sold, or offered for sale before the priority dates of the Asserted Claims, and to establish that any of the documents AWS identifies refer to any identified system much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under LPR 3.1 and 3.3 and ECF No. 54.

- Cache Resolver System: AWS has failed to sufficiently identify any version of any Cache Resolver system, to produce any such system, to establish that any such system was in operation, publicly used, sold, or offered for sale before the priority dates of the Asserted claims, and to establish that any of the documents AWS identifies refer to any identified system, much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under LPR 3.1 and 3.3 and ECF No. 54.

- All non-patent references: AWS has failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including OracleNamesAdminGuide, OracleUnleashed, Steen, Terry, RFC1034, Hua DBMS, Devine DDH, Neuman, Browne, van Steen, Lewis, Karger '97,

Venkatasubramanian, Dasgupta, Sherman, Karger/Sherman, Kangasharju, Cardellini, Baker, BIND and DNS, all versions of BIND, RFC1035, RFC2168, Steen, and any other materials referenced in the FAFIC.

Additional reasons why AWS has failed to establish that its references are prior art are set forth in Exhibits 1A–1D, 2A–2D, and 3A–3F.

AWS also improperly claims that it may rely on thirty items of prior art, and that it incorporates by reference the references and grounds identified in three *ex parte* reexaminations. FAFIC, § II. This plainly violates the Local Patent Rules. Should AWS seek to rely on anything other than the 25 references in § II.A of its FAFIC, or seek to rely on any grounds other than those enumerated in § III of its FAFIC, Kove will have them struck accordingly.

### B. Response to AWS's Anticipation and Obviousness Arguments

As set forth in Exhibits 1A–1D, 2A–2D, and 3A–3F, AWS fails to establish that any Asserted Claims are anticipated or obvious. Additionally, the following objective indicia of non-obviousness apply to each of the Asserted Claims:

- Copying: entities, including AWS, have copied the patented inventions, as evidenced by Kove's operative infringement contentions (incorporated by reference) and the many similarities between the design, operation, and marketing of the accused AWS products and the Patents-in-Suit.

- Long-felt-but-unsolved-need: entities have written about the long need for technology that would enable a highly scalable information database. *See, e.g.*, Neimat at 1:6-4:36; Frey at 1:30-2:12; Terry at §§ 1.1-1.3, 2.1, 2.5; RFC1034 at §§ 2.1-2.2; Hua DBMS at § 1; Devine DDH at § 1; Neuman at Abstract, §§ 1, 3.1-3.4; Browne at § 1; Van Steen at § 1, 4; Lewis at § 1, 2, 6; Karger '97 at § 1;

Venkatasubramanian at §§ 1.1; Sherman at Abstract, §§ 1.1-1.2; Karger-Sherman at Abstract, § 1; Kangasharju at Abstract, § 1; Dasgupta at §§ 3.4, 3.5; Cardellini at § 1, 2, 4; Baker at Abstract, § 1, 2; Bind and DNS at Preface, § 1; Minami at 1:37-3:35; Karger '618 at 1:31-6:19; Karger '420 at 1:36-6:26; Carpentier at 1:22-4:23.

- Failure of others: entities have written about the failure of others to develop technology that would enable a highly scalable information database. *See, e.g.*, Neimat at 1:6-4:36; Frey at 1:30-2:12; Terry at §§ 1.1-1.3, 2.1, 2.5; RFC1034 at §§ 2.1-2.2; Hua DBMS at § 1; Devine DDH at § 1; Neuman at Abstract, §§ 1, 3.1-3.4; Browne at § 1; Van Steen at § 1, 4; Lewis at § 1, 2, 6; Karger '97 at § 1; Venkatasubramanian at §§ 1.1; Sherman at Abstract, §§ 1.1-1.2; Karger-Sherman at Abstract, § 1; Kangasharju at Abstract, § 1; Dasgupta at §§ 3.4, 3.5; Cardellini at § 1, 2, 4; Baker at Abstract, § 1, 2; Bind and DNS at Preface, § 1; Minami at 1:37-3:35; Karger '618 at 1:31-6:19; Karger '420 at 1:36-6:26; Carpentier at 1:22-4:23.

- Commercial Success and Industry Praise: entities, including AWS, use the Asserted Claims and have had substantial commercial success. Also, the inventions of the Asserted Claims attracted substantial interest from investors in OverX, Inc. and Kove IO, Inc. Also, the type of distributed data storage technology described in the Asserted Claims have been recognized by the MIT Technology Review as one of the top 10 emerging technologies that would change the world. Complaint, Ex. 1. Also, the Patents-in-Suit have each been cited by more than 100 later-filed patent applications.

- Skepticism of Skilled Artisans: entities have written about the unlikelihood of the inventions of the Asserted Claims. *See, e.g.*, Dasgupta, §§ 3.4, 3.5. Also, when the

5

inventions of the Asserted Claims were presented at Yale University, the audience did not believe the inventions were possible. *See, e.g.*, KOV_00034264-292.

Kove also incorporates by reference its response to AWS's Interrogatory No. 4 and any amendments and/or supplements thereto.

### C.    Response to AWS's Invalidity Contentions Under 35 U.S.C. § 112

Kove denies that any asserted claim is invalid under 35 U.S.C. § 112 ¶ 1 or § 112 ¶ 2.  The FAFIC fails to provide "a *detailed* statement" regarding invalidity under § 112, as required under the LPR.  Instead, for example, AWS identifies various terms but provides little to no explanation as to why the person of ordinary skill in the art would not be able to ascertain the scope of the claim limitation.  Such conclusory assertions do not sufficiently disclose Amazon's theories of invalidity.  *See, e.g., Mediatek Inc. v. FreeScale Semiconductor, Inc.*, 2014 U.S. DIST. LEXIS 22422, at *19-20 (N.D. Cal. Feb. 21, 2014) (holding disclosure in invalidity contentions inadequate when it did "nothing more than state that a theory of 'indefiniteness, written description/enablement' is asserted as to this term" and where defendant failed to "explain in even the most basic terms why" the written description was inadequate).

Regarding AWS's claims of invalidity under § 112 ¶ 2, each of the identified claim limitations, read in light of their respective specifications and prosecution histories, informs those skilled in the art with reasonable certainty as to the scope of the invention.  Kove identifies at least the following intrinsic support for the claim terms AWS alleges are indefinite under 35 U.S.C. § 112, while reserving all rights to rely on additional supporting evidence:

- "based on a hash function" as found in claims 1 and 2 of the '170 patent, and "hash table generated with the hash function" as used in claim 2 of the '170 patent patent:
  - AWS contends that a skilled artisan would not have understood the scope of "based on a hash function" and "hash table generated with the hash function" as used in claims 1 and 2 of the '170 patent because the patent does not explain "how to use

the 'hash function,' how it works, what it does, or what it means for a 'portion' of 'data location information' to be 'based on' a 'hash function used to organize the data location information across the plurality of data location servers.'  To the contrary, the '170 patent expressly sets forth, for example, that a hash function such as "hashpjw" may be applied to the "identifier string" and that the "function result" be used as "an index" into the hash table of location servers (called "NDTP servers" in the specification) to determine the portion of data location information that corresponds to that identifier string.  *See, e.g.*, '170 patent at 15:12-16:20. Moreover, the person of ordinary skill in the art ("POSA") would understand that the NDTP server table referenced within the specification is a hash table generated by a hash function.  *Id.*  In light of the intrinsic evidence and their background knowledge, the POSA would understand these terms with reasonable certainty.

- o  Exemplary specification support:
  - ▪  '170 patent at 15:12-16:30; Fig. 9 (and describing text); current and original claims.
- o  Exemplary file history support
  - ▪  '640 Prosecution History at 8/9/2005 Amendment/Request for Reconsideration at 9 (discussing "distributed hash table").
- •  "performance criterion" and "predetermined performance limit" as found in claim 17, 23, 24, and 30 of the '978 patent:
  - o  AWS contends that a "skilled artisan would not have understood the bounds of "performance criterion" and "predetermined performance limit" because the '978 patent "does not explain the range of 'performance criteria,' how to determine a 'limit' for 'performance criterion,' or what it means for a 'performance criterion' to be 'predetermined.'"  To the contrary, the '978 patent expressly discloses that a "performance criterion" may include "storage capacity" and "transaction rate." '170 patent at 20:7-31.  The '978 patent also, for example, that a predetermined transaction rate limit may be the "number of requests for a particular URI" made by clients in Paris but serviced by location servers in Chicago, and that once the number of requests is breached, the location servers in Chicago would transfer the corresponding identifier/location mappings to location servers in Paris.  *Id.* at

7

21:24-22:16. In light of the intrinsic evidence and their background knowledge, the POSA would understand these terms with reasonable certainty.

- o Exemplary specification support:
  - ▪ '978 patent at 2:53-3:4, 15:45-62, 19:50-20:46, 21:35-48, 21:24-22:16, Figs. 22, 23 (and describing text); original and current claims.

- o Exemplary file history support:
  - ▪ '978 FH at 02/22/2006 11/01/2006 Applicant Arguments at 11-12;
  - ▪ Provisional 60/209,070 at 12-14, 29-34, 37-39;
  - ▪ Provisional 60/277,408 at 7-8;
  - ▪ Originally filed '978 claims including claims 24, 29, 30.

- • "first data location server..." as found in claims 17, 23, 24 and 30 of the '978 patent
  - o AWS contends that the limitation "first data location server" is indefinite because the term "first data location server" lacks antecedent basis. Clerical or typographical errors resulting in inadvertent lack antecedent basis, however, do not per se render a term indefinite. *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1376 (Fed. Cir. 2008) (noting "well-settled rule that claims are not necessarily invalid for a lack of antecedent basis"). The POSA would understand the "first data location server" to be the same as the "first location server," and distinct from a "second data location server." In light of the intrinsic evidence and their background knowledge, the POSA would understand these terms with reasonable certainty.

  - o Exemplary specification support:
    - ▪ '978 patent at 19:50-20:46, 21:35-48, 21:50-22:16, Fig. 22 (and describing text); original and current claims.

  - o Exemplary file history support:
    - ▪ Provisional 60/209,070 at 12-14, 41-42;
    - ▪ Provisional 60/277,408 at 4;
    - ▪ Originally filed '978 claims including claims 24, 29, 35.

- • "programming logic … configured to return, in response to a location query related to a desired entity, a location message … comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location

8

message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity" as found in claim 6 of the '170 patent

- o AWS contends that this limitation is indefinite because "a skilled artisan could not discern whether the server returns two messages or one message if the location server lacks location information for the desired entity." There is, however, no such ambiguity in the limitation, which expressly states that only the redirect message is sent back "if the location server lacks the location information for the desired entity." In light of the intrinsic evidence and their background knowledge, the POSA would understand these terms with reasonable certainty.
- o Exemplary specification support:
  - ▪ '170 Patent at Figs. 9, 12 (and describing text); 1:19–25 (Microfiche Appendix); 6:50–7:4; 8:9-30; 9:23–29; 14:42–16:32; 17:26–19:27; claims 13, 15; original and current claims;
- o Exemplary file history support:
  - ▪ Provisional 60/153,709 at Figs. 1-2 (and describing text); 3, 8–10, 26-29;
  - ▪ '170 Prosecution History at 2/13/2006 Claims 5-16; *Id.* at 9/6/2006 Claims 20-29; *Id.* at 3/2/2009 Claims 20-29; *Id.* at 3/2/2009 Applicant Arguments/Remarks Made in an Amendment;
  - ▪ '640 Prosecution History at 9/13/2000, claims 5-16.

AWS also contends that claims 3, 6, and 10 of the '978 patent, claims 1, 2, 6, 8, and 12 of the '170 patent, and claims 17, 18, and 24 of the '640 patent are indefinite because they include both apparatus and method limitations. AWS' argument is unavailing, however, because each of the apparatus claims it challenges merely "place[s] functional limitations on the apparatuses by describing the capabilities of the apparatuses." *Yodlee, Inc. v. CashEdge,* 84 U.S.P.Q.2d. (BNA) 1594, 1597-98 (N.D. Cal. 2006). Such functional limitations within apparatus claims "do not constitute invalid mixed method-apparatus claims." *Id.* Claim 1 of the '978 patent, for example, describes a system comprised of location servers containing "programming logic" enabling those

9

location servers to "return a location message" in response to a "location query." Such functional language merely "describes the capability" of a system of location servers, and consequently does not render claim 1 an invalid mixed method-apparatus claim. Similarly, claims 3, 6, and 10 of the '978 patent, claims 1, 2, 6, 8 and 12 of the '170 patent, and claims 17, 18 and 24 of the '640 patent use merely functional language to describe the capabilities of the apparatuses they describe, and do not constitute mixed method-apparatus claims.

AWS also contends that certain limitations appearing within the asserted claims are indefinite under 35 U.S.C. § 112, ¶ 6. Amazon's contentions in this regard fail to comply with LPR 2.3 because they are utterly devoid of specificity, failing to describe in even the barest detail why it contends that these limitations, none of which contain the words "means for" or "step for," should be construed as invoking 35 U.S.C. § 112, ¶ 6.

The identified limitations are not means plus function limitations: as set forth below, each of the challenged limitations has a corresponding structure recited in the body of the associated claim. Additionally, in the event that these limitations are construed as invoking 35 U.S.C. § 112, ¶ 6, Kove also identifies corresponding structures from the patent specifications, while reserving all rights to rely on additional supporting evidence:

- o "hash function" (appearing in claims 1, 2, and 17 of the '170 patent), "hash table" (appearing in claims 2, 12, and 17 of the '170 patent, claim 6 of the '978 patent, and claim 24 of the '640 patent);

  - ▪ AWS has not and cannot overcome the presumption that "hash function" or "hash table" does not invoke 112, ¶ 6 because the limitation does not include the words "means for." Far from being a generic "means," hash functions are a known technique in computer science. The limitation "hash function," therefore, imports a specific structure into the claim in which it is used and cannot be construed as a generic "nonce term." *Zeroclick, LLC v. Apple*

*Inc.*, 891 F.3d 1003, 1008 (Fed. Cir. 2018). More generally, in light of the intrinsic evidence, hash function and hash table connote specific structure to the POSA.

- ▪ Exemplary specification support: The specification for each patent-in-suit discloses the algorithm for the "hashpjw function" and its use in generating both a hash table, and an index into that hash table, of "location servers." *E.g.*, '170 patent at 15:12-16:20; Fig. 9 (and describing text); '640 patent at 14:28-16:13; '978 patent at 12:43-62, 16:54-18:35.

o "indexing function" or "indexed" (appearing in claims 12 and 17 of the '170 patent, and claim 6 of the '978 patent);

- ▪ The term "indexing function" is not recited in any asserted claim;
- ▪ The term, as used in claim 6 of the '978 patent and claim 12 of the '170 patent is "indexed by a hash table." Claim 17 of the '170 patent does not recite an indexing function;
- ▪ For the reasons stated above with respect to "hash table," 112, ¶ 6 does not apply. *See Zeroclick, LLC v. Apple Inc.*, 891 F.3d at 1008;
- ▪ Exemplary specification support: The specification for each patent-in-suit discloses the algorithm for the "hashpjw function" and its use in generating both a hash table, and an index into that hash table, of "location servers." More generally, in light of the intrinsic evidence, indexing connotes a specific structure to the POSA. *E.g.*, '170 patent at 15:12-16:20; Fig. 9 (and describing text); '640 patent at 14:28-16:13; '978 patent at 12:43-62, 16:54-18:35.

o "calculate a location" (appearing in claims 17, 18, and 24 of the '640 patent);

- ▪ AWS has not and cannot overcome the presumption that "calculate a location" does not invoke 112, ¶ 6 because the limitation does not include the words "means for." Moreover, claims 17, 18, and 24 of the '640 patent expressly tether the calculation of a location by the client to the "redirect message" sent back to it by the "location server," whereby the client uses the redirect "information" to determine the appropriate location. More

11

generally, in light of the intrinsic evidence, calculating a location connotes specific structure to the POSA.

- Exemplary specification support: *E.g.*, '640 Patent at 14:26-16:13; 17:8-19:14.

o "configured…to determine…the data location server[]" or "determining…the…location server[]" (appearing in claims 1, 2, 15, and 17 of the '170 patent);

- AWS has not and cannot overcome the presumption that the limitations "configured…to determine…the data location server[]" or "determining…the…location server[]" do not invoke 112, ¶ 6 because they do not include the words "means for." Moreover, claims 1, 2 and 17 of the '170 patent expressly tether the "determin[ation] of the appropriate location server to the "hash function" appearing throughout the claims. As discussed above, the limitation "hash function" imports a highly specific structure into the claim in which it is used and cannot be construed as a generic "nonce term." *Zeroclick, LLC v. Apple Inc*., 891 F.3d 1003, 1008 (Fed. Cir. 2018). Claim 15 tethers the determination of the appropriate location server to "correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network," and employing that correlation to determine which location server an "identifier" maps to. More generally, in light of the intrinsic evidence, determining a location connotes specific structure to the POSA.
- Exemplary specification support: *E.g.*, '170 patent at 15:12-16:20; Fig. 9 (and describing text); '978 patent at 12:43-62, 16:54-18:35, 19:50-20:46, 21:35-48, 21:50-22:16, Fig. 22 (and describing text).

o "transfer protocol configured for manipulating" or "transfer protocol comprising instructions for manipulating" (appearing in claim 10 of the '978 patent);

- AWS has not and cannot overcome the presumption that the limitations "transfer protocol configured for manipulating" and "transfer protocol comprising instructions for manipulating" do not invoke 112, ¶ 6 because they do not include the words "means for." Far from being a generic

"means," a "transfer protocol" is a data structure enabling the modification of information over computer networks. The limitation "transfer protocol," therefore, imports a specific structure into the claim in which it is used and cannot be construed as a generic "nonce term." *See Zeroclick, LLC v. Apple Inc.,* 891 F.3d at 1008. More generally, in light of the intrinsic evidence, a transfer protocol connotes specific structure to the POSA.

- Exemplary specification support: *E.g.*, '978 Patent at Abstract ("The system and method utilize a transfer protocol configured to transport an ...."); 2:19-37; 2:53-3:4; 4:19-44.

o "transfer protocol configured to transport" (appearing in claims 17, 23, 24, and 30 of the '978 patent);

- AWS has not and cannot overcome the presumption that the limitation "transfer protocol configured to transport" does not invoke 112, ¶ 6 because it does not include the words "means for." Far from being a generic "means," a "transfer protocol" is a well-known and conventional data structure enabling the transmission of information over computer networks. The limitation "transfer protocol," therefore, imports a highly specific structure into the claim in which it is used and cannot be construed as a generic "nonce term." *See Zeroclick, LLC v. Apple Inc.,* 891 F.3d at 1008. More generally, in light of the intrinsic evidence, a transfer protocol connotes specific structure to the POSA.

- Exemplary specification support: *E.g.*, 978 Patent at Abstract ("The system and method utilize a transfer protocol configured to transport an ...."); 2:19-37; 2:53-3:4; 4:19-44.

o "computer executable code configured to execute the following steps" (appearing in claims 17 and 18 of the '640 patent);

- AWS has not and cannot overcome the presumption that the limitation "computer executable code configured to execute the following steps" does not invoke 112, ¶ 6 because it does not include the words "means for." Moreover, the Federal Circuit has held that "program" and "user interface

13

code" are not "nonce terms" and do not invoke 112, ¶ 6 as equivalents of "means for" or "steps for;" to the contrary, their plain and ordinary meanings import specific structures. *Zeroclick,* 891 F.3d at 1008 (finding sufficient structure in the term "user interface code" because "Claim 19…similarly tethers 'user interface code'---code meant to be updated using two configuration changes recited in the claim---to the code 'stored in a memory connected to the processor"); *Trading Techs. Int'l, Inc. v. IBG LLC*, 2019 U.S. Dist. LEXIS 209589 at *19-21 (N.D. Ill. December 5, 2019) (holding that "program code" used to implement certain algorithmic trading steps claimed "sufficient structure"). As in *Trading Techs*, the "computer executable code configured to execute the following steps" appearing in the asserted claims is tethered to the recited steps of returning either a "location message" or a "redirect message." And as in *Zeroclick*, the computer executable code is stored on "data location servers." More generally, in light of the intrinsic evidence, "computer executable code configured to execute the following steps" connotes specific structure to the POSA.

- Exemplary specification support: *E.g.*, '640 patent (col. 14:28-16:13).

o "location server configured to receive," or "programming logic" that is "configured to return" (appearing in claims 6, 8, and 12 of the '170 patent);

- AWS has not and cannot overcome the presumption that the limitation "location server configured to receive" or "programming logic" that is "configured to return" do not invoke 112, ¶ 6 because they do not include the words "means for." The limitation "location server configured to receive" is an inherently structural limitation, defining the location server as being capable of receiving a "location addition request" and including a "processor." As discussed above, with respect to the limitation "programming logic…configured to return," the Federal Circuit has held that "program" and "user interface code" are not "nonce terms" and do not invoke 112, ¶ 6 as equivalents of "means for" or "steps for;" to the contrary, their plain and ordinary meanings import specific structures. *Zeroclick, ,*

891 F.3d at 1008; *Trading Techs.*, 2019 U.S. Dist. LEXIS 209589 at *19-21 (N.D. Ill. December 5, 2019)  The "programming logic" appearing in claims 6, 8, and 12 of the '170 patent is tethered to the structure-importing limitation "stored on the location server" and conjoined to the acts of returning a location message or redirect message.  More generally, in light of the intrinsic evidence, these terms connote specific structure to the POSA.

- Exemplary specification support: *E.g.*, '170 patent at 4:8-26, 14:44-16:30.

o   "programming logic … responsive to" a "location query" (appearing in claims 1, 3, 6, and 10 of the '978 patent

- AWS has not and cannot overcome the presumption that the limitation "programming logic…responsive to…a location query" does not invoke 112, ¶ 6 because it does not include the words "means for."  As discussed above, the Federal Circuit has held that "program" and "user interface code" are not "nonce terms" and do not invoke 112, ¶ 6 as equivalents of "means for" or "steps for;" to the contrary, their plain and ordinary meanings import specific structures. *Zeroclick*, , 891 F.3d at 1008; *Trading Techs.*, 2019 U.S. Dist. LEXIS 209589 at *19-21 (N.D. Ill. December 5, 2019)  The "programming logic" appearing in claims 3, 6, and 10 of the '978 patent are tethered to the structure-importing limitations "stored on each of the plurality of location servers" (claim 10) and "stored on each of the location servers" (claims 1, 3, and 6), and conjoined to the acts of returning a location message or redirect message.  More generally, in light of the intrinsic evidence, these terms connote specific structure to the POSA.

- Exemplary specification support: *E.g.*, '978 patent at 14:28-16:13.

AWS also makes bare and unsupported allegations that each of the asserted limitations it designates as invalid under 35 U.S.C. § 112, ¶ 6 also lack sufficient written description under 35 U.S.C. § 112, ¶ 1; AWS's allegations under § 112, ¶ 1 are deficient for the same reasons articulated with respect to 35 U.S.C. § 112, ¶ 6.

15

AWS also contends that all asserted claims that reference "hash" or "hashing" are invalid under 35 U.S.C. § 112, ¶ 1 because "the Patents-in-Suit do not explain how to use the claimed 'hash function' or 'hash table,' how it works, what it does, or how its output is used." AWS Invalidity Contentions, at 34. To the contrary, the specifications of the patents-in-suit describe in granular, algorithmic detail how to use known hash functions to both generate, and traverse, a hash table of "location servers." *See, e.g.*, '170 patent at 15:12-16:20; '640 patent at 14:28-16:13; '978 patent at 12:43-62, 16:54-18:35. In light of the intrinsic evidence and their background knowledge, these terms are sufficiently described and enabled to the POSA.

AWS also contends that claims 17, 23, 24 and 30 of the '978 patent is invalid as not enabled and lacking an adequate written description under 35 U.S.C. § 112, ¶ 1, because the '978 patent specification does not describe or enable the full scope of "performance criterion," "predetermined performance limit," and "monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit." As discussed above, however, the '978 patent expressly discloses that a "performance criterion" may be embodied by "storage capacity" and "transaction rate." '170 patent at 20:7-31. The '978 patent also discloses at least one embodiment of monitoring a predetermined performance criterion, such as a "number of requests for a particular URI" made by clients in Paris but serviced by location servers in Chicago, whereby once that predetermined number of requests is breached, the location servers in Chicago automatically transfer their corresponding identifier/location mappings to location servers in Paris. *Id*. at 19:50-20:46, 21:24-22:16, Fig. 22. In light of the intrinsic evidence and their background knowledge, these terms are sufficiently described and enabled to the POSA.

Finally, AWS contends that claims 6, 8, and 12 of the '170 patent are invalid as not enabled and lacking an adequate written description under 35 U.S.C. § 112, ¶ 1 because "the '170 patent

does not disclose how to configure programming logic to return both a location message and a redirect message in response to a location query." AWS Invalidity Contentions at 35. The specification of the '170 patent, however, describes the data structures involved in, sample source code embodying, and algorithms describing, how location servers return both location messages and redirect messages. '170 patent at 5:30-9:29, 14:44-16:30. In light of the intrinsic evidence and their background knowledge, these terms are sufficiently described and enabled to the POSA.

### D. Response to AWS's Invalidity Contentions Under 35 U.S.C. § 101

As Kove explained in its Response Memorandum in Opposition to Amazon's Motion to Dismiss based on 35 U.S.C. § 101 (ECF No. 44), incorporated here by reference, the Patents-in-Suit are rooted in computer technology and are eligible for patenting under § 101 and controlling Federal Circuit precedent. The patented technology is tailored to improving conventional database storage systems and provides specific distributed data storage architecture for improving functionality in computer networks. ECF No. 44 at 1. The Court agreed and held that the Patents-in-Suit are not invalid under § 101. ECF No. 110. The reasoning of Kove's opposition and the Court's decision apply to all Asserted Claims.

As Kove explained in its Opposition and Sur-Reply to AWS's Motion for Judgment on the Pleadings (ECF Nos. 145, 160), incorporated here by reference, the asserted claims of the '978 patent are not invalid for obviousness-type double patenting ("ODP"). The claims of the '170 and '640 patents are not proper ODP references, and the asserted claims of the '978 patent are not obvious in view of those claims. ECF Nos. 145, 160. The other references cited in the SAFIC are also not proper ODP references and do not render the asserted claims of the '978 patent obvious. Further, none of the Patents-in-Suit are proper ODP references against any other Patents-in-Suit, and no Asserted Claims are invalid for ODP for this reason, and because the differences between the claims are non-obvious.

17

### E.     Response to AWS's Unenforceability Contentions

The LPR require that AWS identify the acts allegedly supporting and all bases for the assertion of unenforceability. AWS has not made such allegations.

With respect to AWS's threadbare allegations of unenforceability in its Answer and Counterclaims (ECF No. 129), Kove incorporates by reference its Answer to AWS's Counterclaims (ECF No. 161). With respect to inequitable conduct, the Karger reference is not material. Indeed, AWS has long known about Karger, yet did not assert it as invalidating any of the Asserted Claims in its SAFIC or in any proceedings before the USPTO. AWS has never set forth how or why Karger is material. Further, neither the inventors nor the prosecuting attorneys had an intent to deceive the USPTO. With respect to "laches, estoppel, acquiescence, waiver, unclean hands, and/or other equitable principles" (ECF No. 129 at 40-42), AWS has not set forth a sufficient factual basis, its assertions are untrue and/or misleading, and it fails to meet the legal threshold for establishing any of these doctrines.

Should AWS be permitted to introduce claims of unenforceability in the future, Kove will respond at that time.

### F.     Response to AWS's Obviousness-Related Analysis

Pursuant to the Court's September 17, 2021 Order, AWS "may rely on only the precise combinations of references listed in Section III for its obviousness grounds of invalidity, but the explanations in Section IV may inform that analysis." ECF No. 418 at 6. Accordingly, Kove responds to Section IV of the FAFIC in the event that AWS is permitted to rely on it for this limited purpose.

To the extent AWS's FAFIC points to disclosures in the specifications and/or the file histories that inform embodiments of the invention that are not in the asserted claims, such disclosures do not inform the obviousness of the asserted claims.

Further, to the extent AWS resorts to conclusory assertions of general knowledge, common sense, or skill in the art, AWS's allegations are insufficient to supply the limitations or obviousness of the limitations of the asserted claims. Similarly, to the extent AWS makes vague, overbroad, conclusory statements, and/or improperly relies on hindsight reconstruction that claim limitations are known or obvious, AWS's reasons are insufficient to show disclosure, obviousness, or motivation to combine.

To the extent the references AWS seeks to combine or reference for disclosure, obviousness, or motivation to combine are non-analogous art and/or change basic principles under which the references were designed to operate, a person of skill in the art would not have been motivated to combine them. Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references.

Further, AWS addresses only a handful of portions of claim limitations at a high level. AWS therefore fails to show that all claim limitations would be disclosed or obvious to a person of skill in the art. To the extent AWS distills entire claim limitations to a single, high-level concept, AWS fails to show that each and every element of a claim limitation is disclosed, obvious, or serves as a motivation to combine.

Each purported disclosure, obviousness, or motivation to combine AWS discusses with respect to its distillation is insufficient for at least the reasons below.

**Data Location Server:** None of the recited references employ, disclose, render obvious, or motivate a POSA to combine references to result in data location servers.

As an example, to the extent the purported prior art in the FAFIC does not disclose the recited use of data location servers, the data location servers would not have been obvious to one

of skill in the art before the invention. The "location servers" of the '170 Patent are capable of updating their identifier location mappings in response to "update" requests originating from client machines connected to the network. *See* '170 Patent at 4:14-17; *see also, e.g., id.* at Abstract. By contrast, the update servers of DNS and DNS-based systems maintain static mappings between domain names and IP addresses, which are only refreshed at pre-determined intervals. *See, e.g.,* RFC1034 at 6-7, 28. DNS-based systems do not update identifier/location mappings in name servers, and therefore the servers do not act as data location servers. For example, Kangasharju discloses "receiving the IP addresses of all the servers that contain the object," and "when each copy was last modified or the 'age' of the object." Kangasharju at 3. But Kangasharju does not disclose that the servers maintain or update unique identifier/location mappings. As another example, Browne discloses that its "current client uses an ordinary DNS lookup for IP address records" and that it "attempts to query each IP address until it finds one that can satisfy the . . . lookup request." Browne at 183. Accordingly, Browne does not disclose that the servers maintain or update unique identifier/location mappings.

Similarly, the name servers of Cache Resolver update themselves by polling the caches, "independently of user requests." *See* Sherman at 37; Karger/Sherman at 9-10. Accordingly, neither Sherman nor Karger/Sherman disclose dynamic updates of mapping in response to requests.

Likewise, van Steen describes "[s]toring contact addresses at stable locations," and therefore does not disclose servers that maintain or update unique identifier/location mappings. Van Steen at 2. Similarly, Neuman describes that "[t]he system maintains a table mapping name prefixes to servers," which does not update unique identifier/location mappings. Neuman at 15.

Additionally, the FAFIC discusses disparate and non-analogous art that do not show disclosure, obviousness, or motivations to combine to a person of skill in the art. For example, Neimat discloses file servers that store records, or data. *See* Neimat at 8:1-15. Neimat does not disclose or render obvious data location servers storing or updating data location information. *See* '170 Patent at 20:62-65. Similarly, the servers in Minami store data—non-unique keywords and records—and not data location information. *See, e.g.,* Minami at Abstract. As another example, Dasgupta discloses a mechanism for naming resources in a large distributed system. *See, e.g.,* Dasgupta at Abstract. Dasgupta does not describe or relate to location server networks storing data location information for a plurality of data entities. *See* '170 Patent at 20:62-65. The FAFIC does not show why a person of ordinary skill in the art would find data location servers obvious from these incomparable references, nor that the non-analogous art would motivate a person of skill in the art to combine the references to result in data location servers.

The FAFIC's conclusory assertions of "common sense and background knowledge in the art" are insufficient to show disclosure, obviousness, or motivation to combine.

Further, AWS's recitation of "data location server" fails to show every element of the claim limitation "a data location server network comprising a plurality of data location servers, wherein data location information for a plurality of data entities is stored in the data location server network, at least one of the plurality of data location servers includes location information associated with the identifier string, each one of the plurality of data location servers comprises a processor and a portion of the data location information . . . " or similarly-recited variations were disclosed or obvious. *See* '170 Patent at 20:62-21:2.

Kove also relies on the evidence and arguments in Exhibits 1A–1D, 2A–2D, and 3A–3F.

**Hash Function:** AWS fails to provide any reference or disclosure that suggests, renders obvious, or motivates a POSA to apply hash functions to organize data location information. The mere fact that hash functions were known is insufficient to show that a person of skill in the art would have been motivated to use a hash function to organize data location information. The references in the FAFIC that AWS points to are from disparate and non-analogous arts, and would not have motivated or made obvious to a person of skill in the art basing the portion of data location information included in a corresponding one of the data location servers on a hash function used to organize the data location information across the plurality of data location servers. *See* '170 Patent at 21:2-6. Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references.

As an example, Karger '420, Karger '618, and the Karger Paper disclose organizing data across servers housing data. *See, e.g.,* Karger '420 at 3:23-50. None disclose, discuss, or suggest organizing location information about data across multiple location servers.

As another example, as explained above, Dasgupta discloses a mechanism for naming resources. *See, e.g.,* Dasgupta at Abstract. Dasgupta does not describe, disclose, or render obvious organizing location information about data across multiple servers.

Further, AWS's recitation of "hash function" fails to show every element of the claim limitation "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers" or similarly-recited variations were disclosed or obvious. *See* '170 Patent at 21:2-6.

Kove also relies on the evidence and arguments in Exhibits 1A–1D, 2A–2D, and 3A–3F.

22

**Redirection:** AWS fails to provide any support that redirection is disclosed or obvious. AWS resorts to vague, overbroad, and conclusory assertions of general knowledge, common sense, or skill in the art to show disclosure, obviousness, or motivation to combine resulting in redirection. AWS's allegations are insufficient to supply the limitations or obviousness of the limitations of the asserted claims, and do not show, render obvious, or motivate transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server. *See,* '640 Patent at 22:30-40.

As an example, DNS and DNS-based systems do not disclose, suggest, or render obvious redirection. DNS name servers are not required to know which name server contains the desired resource records. *See* RFC1034 at 17. Therefore, while the '640 Patent transmits a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server (*see, e.g.,* '640 Patent at 22:30-40), DNS does not disclose any mechanism by which a name server has information to calculate a location of a different location server, nor any motivation to do so. Cardellini also does not disclose or render obvious calculating a location of a data server. Instead, Cardellini discloses routing a "document request" either by "select[ing] a random number *i* between1 and the number of servers and direct[ing] the user request to the node www*i*.netscape.com" or using an "applet [that] knows the IP addresses of all server nodes in the Web cluster." Cardellini at 4.

The FAFIC conclusorily point to common sense and background knowledge, but such conclusory assertions are insufficient to supply the claim limitations or motivations missing from

the disclosure. The FAFIC are similarly insufficient with vague assertions that performance enhancement would have motivated a person of skill in the art to combine teachings.

Further, AWS's recitation of "redirection" fails to show every element of the claim limitation "transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers" or similarly-recited variations were disclosed or obvious. *See* '640 Patent at 22:33-38; *see also, e.g., id.* at 22:64-23:1.

Kove also relies on the evidence and arguments in Exhibits 1A–1D, 2A–2D, and 3A–3F.

**Load Balancing:** AWS does not show that load balancing is disclosed or rendered obvious. The references AWS points to are from disparate and non-analogous arts, and would not have motivated or made obvious transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit to a person of skill in the art. '978 Patent at 27:40-43.

For example, none of the references in the FAFIC discloses balancing identifiers and associated locations. Hua DBMS, Devine DDH, Baker, Frey, and Venkatasubramanian disclose balancing *data*. Further, Hua DBMS and Frey disclose a parallel computing system, not a distributed one.

As another example, Venkatasubramanian discloses load management in video streaming applications. *See, e.g.,* Venkatasubramanian at Abstract. Venkatasubramanian does not disclose servers that store, return, or balance data location information. Nor does it store data location servers, identifiers, or locations. Further, Venkatasubramanian discloses that data minimization, or "minimizing the number of copies[ ] of a video object." Venkatasubramanian at 529.

Venkatasubramanian does not describe or render obvious transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. '978 Patent at 27:40-43.

The FAFIC conclusorily points to common sense and background knowledge, but such conclusory assertions are insufficient to supply the claim limitations or motivations missing from the disclosure. The FAFIC is similarly insufficient with vague assertions that performance enhancement would have motivated a person of skill in the art to combine teachings.

Further, AWS's recitation of "load balancing" fails to show every element of the claim limitation "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit" or similarly-recited variations were disclosed or obvious. *See* '978 Patent at 27:40-43.

Kove also relies on the evidence and arguments in Exhibits 1A–1D, 2A–2D, and 3A–3F.

Dated: April 28, 2023

Respectfully submitted,

/s/    *Jaime F. Cardenas-Navia*
Jaime F. Cardenas-Navia

Khue V. Hoang (*pro hac vice*)
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (*pro hac vice*)
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5037

Courtland L. Reichman (*pro hac vice*)
creichman@reichmanjorgensen.com
Shawna L. Ballard (*pro hac vice*)
sballard@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &

25

Philip Eklem (*pro hac vice*)
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310

FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

Taylor Mauze (*pro hac vice*)
tmauze@reichmanjorgensen.com
Navid Bayar (*pro hac vice*)
nbayar@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
Telephone: (650) 623-1401

*Attorneys for Plaintiff Kove IO, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2023, the foregoing document was served via email on the attorneys of record who have consented to service by electronic means.

/s/ *Jaime F. Cardenas-Navia*
Jaime F. Cardenas-Navia

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

AWS purports to assert that U.S. Patent No. 7,814,170 ("the '170 patent") claims 1, 2, 6, 8, 12, and 15 are rendered obvious by OracleNamesAdminGuide alone or in combination with OracleUnleashed, Steen, and/or Wolff. But AWS has failed to establish that OracleNamesAdminGuide, OracleUnleashed, and/or Steen were publicly available before the priority date of the '170 patent. AWS alleges that AWS's Exhibit 1A reflect "the additional requirements for the claims based on Kove's statements in reexamination and are consistent with Amazon's proposed constructions reflecting those statements." 2023-03-02 Exhibit 1A-1B, 53-54 at 1 (citation omitted). Kove does not agree that Kove's statements created any additional claim requirements. Kove believes that OracleNamesAdminGuide alone or in combination with OracleUnleashed, Steen, and/or Wolff are deficient based on the claim requirements imposed by the plain language of the claims and the current claim construction order, as well as AWS's proposed constructions. *See* Joint Claim Construction Chart (Updated) (Dkt. No. 382) and Claim Construction Order (Updated) (Dkt. No. 484).

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| **[1.Preamble]** A system for managing data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove denies that OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff discloses the limitations of the preamble, or that it is rendered obvious.<br><br>*See* claim [1.a] re "data repository" and "system for managing data stored in a distributed network." |

---

[1] Kove uses the information currently available to it to provide its responses to AWS's Fifth Amended Final Unenforceability and Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFUIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[2] Kove incorporates by reference its Response to the Office Action and Notice of Intent to Issue Reexamination Certificate in the Reexamination Proceeding of the '170 patent (90/019,035).

[3] AWS does not present any contentions regarding Wolff with regards to claims 1 and 2.

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | OracleNamesAdminGuide lacks the non-hierarchical structure to satisfy the claim requirements. For example, OracleNamesAdminGuide's hierarchical structure is illustrated in Fig. C-4 (reproduced below).<br><br><br>Figure C – 4 Network Messages in a Multi–Level Foreign Name Resolution<br><br>OracleNamesAdminGuide, Figure C-4 at 191.<br><br>OracleNamesAdminGuide describes the activities that must take place in response to a client query for information (in this case, the network address of the "Destination Server"): "1. The client sends request to preferred Names Server in its local region (DR1). 2. The preferred Names Server in DR1 issues request for the Names Servers authoritative for the destination server (in region DR2.1). 3. The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2. 4. The receiving server in DR2 forwards the request to a Names Server in region DR2.1. 5. The name is retrieved from |

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | its authoritative Names Server in DR2.1.  6.  The names Server in region DR2 caches the answer and returns it to the root.  7.  The root caches the answer and returns it to the preferred Names Server in region DR1.  8.  The preferred Names Server caches the answer and returns it to the client.  9.  The client establishes a connection to the destination server." *Id*. at 190-191.<br><br>Retrieving a network address in the tree-node configuration in Figure C-4 require nine (9) traversals up, down, and back through the hierarchal structure.  (Id).  As such, the organizational structure is limited in efficiency by its underlying network paths and network relationships that require queries to make hierarchical traversals until it finds the server with the sought-after information (assuming the information exists somewhere in the network). *See id.*<br><br>OracleNamesAdminGuide acknowledged that a network may follow a flat naming model or a hierarchical naming model but cautioned that "[a] flat naming model should be used when the actual number of services is small (under 100), when the likelihood of future growth of network services is *minimal*…." *Id*. at 40) (emphasis added).  More pointedly, OracleNamesAdminGuide ***discouraged*** the use of "flat" structures in larger networks, in contrast to hierarchical structures which Oracle Admin noted "allow[s] for future growth or greater naming autonomy." *Id*. at 41.<br><br>The Name Servers in OracleNamesAdminGuide's hierarchical configuration do not have any knowledge of what is stored in other Names Server in the network, beyond their direct children.  *Id*. at 191.  If a queried server or its direct children do not have the requested information, the server knows only to forward a query to the next Names Server up the tree.  Names Servers are ignorant as to what information other Names Servers beyond their direct children may have and have no way of finding out.  This was the common and accepted configuration at the time of the invention.<br><br>Oracle Names is dependent on its network paths. *Id*. at 56-57.  Names Servers do not have any knowledge of which Names Server contains the address to the requested |

3

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | network service (beyond itself and its direct children) nor is anything taught about *any* (much less *every*) Names Server being configured to determine the location of the requested information.  Oracle Admin's hierarchical structure does not enable a given Names Server the ability to know or determine what is stored in every Names Server in the network.<br><br>Steen also does not teach or suggest a non-hierarchical configuration.  Steen illustrates in Fig. 2 its hierarchical configuration:<br><br><br>■ **Figure 2.** *The logical organization of the location service as a virtual search tree.*<br><br>Steen at Fig. 2.<br><br>Like, OracleNamesAdminGuide, Steen's hierarchical configuration do not have any knowledge of what is stored in the other nodes in the network, beyond their direct parents/children.  *See e.g.,* Steen at 107-108.  As such, Oracle Admin's hierarchical structure does not enable a given Names Server the ability to know or determine what is stored in every Names Server in the network. |

4

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| **[1.a]** a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and | "Identifier string" is construed as a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."[4]<br><br>Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. *See* claim [1.Preamble] re hierarchical configuration.<br><br>OracleNamesAdminGuide does not teach or suggest an identifier string that is a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server." OracleNamesAdminGuide describes using service names (e.g., canonical names or aliases) or database links to retrieve network addresses of network objects and services. OracleNamesAdminGuide, 52-54. For example, OracleNamesAdminGuide describes the following process when attempting to retrieve a network address for a database service "1. The client application issues a connection request to SQL*Net of the form: sqlplus scott/tiger@POULTRY where POULTRY is a database service name defined in the Oracle Names Server. SQL*Net determines from the client configuration in the SQLNET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net sends the Names Server a request to resolve the name POULTRY.WORLD. 2. The Names Server receives the request, looks it up in the cache, then sends the response back to the client. 3. The client receives the answer and substitutes the address in place of the initial name POULTRY. 4. The client contacts POULTRY and establishes a standard SQL*Net client–server connection." *Id.*, 52-53. In this example, the network addresses service name is "POULTRY."<br><br>However, the service names or database links are not unique. For example, OracleNamesAdminGuide allows users to create public and private names or database |

---

[4] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | links to network services or objects. OracleNamesAdminGuide defines a public database links as "A database link created by a DBA on a local database which is accessible to all users on that database." *Id.*, 202. Furthermore, OracleNamesAdminGuide defines a private database link as "A DBlink created by one user for his or her exclusive use." [Id]. OracleNamesAdminGuide does not restrict users from assigning identical private and public database links to two different databases.<br><br>OracleNamesAdminGuide provides numerous examples of allowing users to use non-unique names or links for network services or objects. For example, OracleNamesAdminGuide describes the process of locating a database link as follows: "Server TOM receives the SQL statement shown and checks its data dictionary for a private or public database link called JERRY. When it does not find one, SQL*Net determines from the client configuration in the SQLNET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net then sends the Names Server a request to resolve the database link name JERRY.WORLD." OracleNamesAdminGuide, 54. OracleNamesAdminGuide further states "When a database link is used to select information from a remote database table (for example, SELECT * FROM EMP@HR.US.ORACLE.COM), Oracle searches for a connect descriptor in the following locations in the following order: 1. the user's private database links 2. the database public database links 3. the Oracle Names Server global database links." *Id.*, 110. Therefore, when processing a query, OracleNamesAdminGuide first checks for the name or database link in the user's private database links. To this end, this configuration does not prevent the same name or link from being included in the user's private database links and the public database links.<br><br>OracleNamesAdminGuide's use of non-unique names or database links for network services or objects is further illustrated in its querying process. OracleNamesAdminGuide teaches that "If the QUERY command is used with just a name as a parameter, the Names Server responds with the number of pieces of data with that name, and the time required to complete the operation." *Id.*, 129. OracleNamesAdminGuide provides the following example of a query: |

6

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | Example:<br><br>```<br>NAMESCTL> QUERY BONES.DEM.MEDICINE A.SMD<br>Total response time:     0.04 seconds<br>Response status:         normal, successful completion<br>Authoritative answer:    yes<br>Number of answers:       1<br>Canonical name:          bones.dem.medicine<br>TTL:                     1 day<br>Alias translations:<br>    from:                bones.dem.medicine<br>    to:                  bones.dem.medicine<br>Answers:<br>    data type is "a.smd"<br>        Syntax is ADDR:...(DESCRIPTION=(ADDRESS=<br>    (COMMUNITY=tcp)(PROTOCOL=TCP)(Host=cowboy)<br>    (Port=1522))(CONNECT_DATA=(SID=rodeo)))<br>```<br><br>Id.<br><br>In this example, the "number of answers" is 1. However, if multiple network objects are found using the same name or database link, the number of answers would be more than 1. As such multiple network objects or database links may be retrieved using the same name or database link.<br><br>Furthermore, OracleNamesAdminGuide requires that the query command include the network object name and network object type. *Id.*, 129. As such, OracleNamesAdminGuide attempts to identify network object using the network object name and network object type. This further confirms that the network object name is non-unique; otherwise, the network object type would not be needed to locate the network object. Therefore, OracleNamesAdminGuide does not restrict the network objects in the network from having non-unique names.<br><br>Additionally, Oracle Names Servers are not restricted from storing identifiers where each identifier identifies a single entity, as required by the claims. Oracle Names allows for |

7

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | users to assign public and private names to network services and objects. *See e.g.*, OracleNamesAdminGuide, 54, 110. Oracle Names allows for the public and private names to be identical, and the same name can be used to identify multiple entities. *Id.* OracleNamesAdminGuide also does not teach or suggest the required relationship among the terms "identifier string," "data entity," and "location information." In Oracle Admin, if a database is the data entity, and the identifier is the network address alias of that database, then data within that database comprises the data entity, and the "location information associated with the identifier string" is the network address of the database (and not the alias for that network address, e.g., POULTRY). If any data comprising the data entity (i.e., the database in this scenario) is moved, the association between the location information and the identifier string is broken – in other words, POULTRY will still only point to the database's network location but is not otherwise associated with location information for whatever data may have moved from the POULTRY database. *Id.* at 30-32; 50-54. <br><br> Steen does not teach or suggest an identifier that identifies a single entity. Specifically, Steen states "Unlike cellular telephones, computer objects often have two or more addresses. For example, a replicated file will be known to its users under one name, which is mapped to several addresses, one for each copy." Steen at 104. Here, each copy of the file is a separate entity. Therefore, in Steen an identifier identifies multiple entities. <br><br> Steen further states "As an illustration, consider an officeless company whose employees are located across the country, normally working at home, or visiting customers. Using our approach, we assign a lifetime and location-independent telephone number to the company. This number corresponds to an object handle. A naming or directory service would maintain a mapping between the company's name and it's lifetime telephone number. The telephone number is used by a location service to redirect incoming calls to, for example, the nearest employee currently working. An employee's own telephone number is registered at the location service when he or she starts work, and is unregistered again when he or she finishes. An employee's telephone number |

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | corresponds to a contact address. Note that how the company is named, and in which directories its name is registered, is no longer important. Naming has been fully separated from how and where we contact the company." Steen, 105. Again, in Steen's example, the telephone number identifies multiple employees (i.e., multiple entities). Therefore, Steen does not teach or suggest an identifier string that identifies a single entity, as required by the claims.<br><br>OracleUnleashed is neither relied upon for nor does it teach "a data repository configured to store a data entity, wherein an identifier string identifies the data entity." Specifically, OracleUnleashed does not teach or suggest an identifier/identifier string that is a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server." OracleUnleashed describes assigning synonyms and/or aliases for tables or views in a database. *See* OracleUnleashed at 219 and 228. However, OracleUnleashed does not teach or suggest a synonym that uniquely identifies a database, table or view. For example, OracleUnleashed describes using private or public synonyms to identify a database, table, or view. *See e.g., id.* Multiple users in the database network may use the same synonym to identify the different databases, tables, or views. *See e.g., id.* That is, a first user may use synonym X to refer to database 1 and a second user in the same database network may also use synonym X to refer to database 2. *See e.g., id.* Additionally, while OracleUnleashed mentions a Names Server, OracleUnleashed does not describe whether the names stored in the Names Server uniquely identify a single entity. *See e.g., id.* at 424. Therefore, OracleUnleashed does not teach or suggest an identifier that uniquely identifies an entity.<br><br>Wolff is neither relied upon for nor does it teach this claim element. |

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| **[1.b]** a data location server network comprising a plurality of data location servers, | "Location server" is construed as "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients"[5]<br><br>"Client" is construed as "a network-attached component (which may be software or hardware) that initiates update or lookup of identifier/location mappings from a location server with location request messages." [6]<br>Kove denies that this element is disclosed in OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. *See* claim [1.Preamble]-[1.a] re identifier/identifier string, data location server, and location information, and hierarchical configuration, and the relationship among the terms "identifier," "entity," "location" and "location information.<br><br>As indicated above, OracleNamesAdminGuide, Steen, and OracleUnleashed do not teach or suggest an identifier/identifier string that identifies a single entity. Furthermore, OracleNamesAdminGuide, Steen, and OracleUnleashed are completely silent regarding modifying identifier/location mappings in response to receiving a *location* request. Therefore, OracleNamesAdminGuide, Steen, and Wolff cannot teach or suggest "a network-attached component that maintains a set of **identifier/location** mappings that are modified or returned in response to location request messages from clients." *See* claim [1.a] (emphasis added). |
| **[1.c]** wherein data location information for a plurality of data entities is stored in the data location server network, | "Location information" is construed as "information pertaining to one or more locations of data and/or the identities of one or more location servers." [7] |

---

[5] Claim Construction Order (Updated) (Dkt. No. 484) at 35.
[6] Claim Construction Order (Updated) (Dkt. No. 484) at 35.
[7] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

10

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. *See* claim [1.Preamble]-[1.b] re identifier/identifier string, data location server, and location information, and hierarchical configuration. |
| **[1.d]** at least one of the plurality of data location servers includes location information associated with the identifier string, | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. *See* claim [1.Preamble]-[1.b] re identifier/identifier string, data location server, and location information, and hierarchical configuration. |
| **[1.e]** each one of the plurality of data location servers comprises a processor and a portion of the data location information, | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. *See* claim [1.Preamble]-[1.b] re identifier/identifier string, data location server, and location information, and hierarchical configuration. |
| **[1.f]** the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and | "Based on a hash function used to organize the data location information across the plurality of data location servers … based on the hash function applied to the identifier string" is construed as "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function that maps identifier strings to one or more of the data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string." [8] |

---

[8] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

11

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. <br><br> *See* claim [1.Preamble]-[1.b] re identifier/identifier string, data location server, and location information, and hierarchical configuration. <br> OracleNamesAdminGuide does not teach or suggest "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers." Specifically, OracleNamesAdminGuide is completely silent about organizing location information across data location servers using a hash function. <br><br> OracleUnleashed also does not teach or suggest organizing location information across data location servers using a hash function. OracleUnleashed describes hashing as follows: |

12

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | A good candidate for hashing has the following properties:<br><br>• *Unique cluster keys*. Hashing performs best when the value of the cluster key is fairly unique. Because the data is laid out based on the key value, a column with a lot of duplicates is not a good candidate for the hash key.<br><br>• *Equality queries*. The majority of queries are equality queries on the cluster key. This type of query reaps the greatest benefit from the hash cluster.<br><br>• *Static size*. Hashing is optimal when the table or tables are fairly static in size. If the table stays within its initial storage allocation, you do not see any performance degradation from using a hash cluster; but if the table grows out of its initial allocation, performance can degrade. In this case, overflow blocks are required.<br><br>• *Constant cluster key*. Hashing can also degrade performance when the value of the cluster key changes. Because the location of the block in which the data resides is based on the cluster key value, a change in that value can cause the row to migrate to maintain the cluster.<br><br>• *No table scans*. Hashing can degrade the performance of table scans because the scan must read blocks that may not have much data in them. Because the table is originally created by laying out the data in the cluster based on the value of the cluster key, there may be some blocks that have few rows.<br><br>Do not use a hash cluster on a table if the application frequently modifies the cluster key or the table is constantly being modified. Because the cluster key is based on a calculation, you can incur significant overhead by constantly recalculating the key.<br><br>OracleUnleashed at 394.<br><br>OracleUnleashed merely describes organizing data based on hashing. However, OracleUnleashed is silent regarding organizing *location information* of data pertaining to an entity across location servers using hashing. Specifically, OracleUnleashed does not teach or suggest organizing location information of data pertaining to an entity based on a hash function that maps identifier strings identifying the entity to one or more of the data location servers. |

13

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | Steen also does not teach or suggest organizing location information across data location servers using a hash function. Steen states "We note that we have developed more realistic hashing-based methods than explained here. For example, we also have to take into account that the total number of links between parent and children subnodes remains manageable." Steen at 108. Steen does not provide any detail regarding how the "hash-based" methods are used. Steen is completely silent organizing location information of data pertaining to an entity based on a hash function that maps identifier strings identifying the entity to one or more of the data location servers.<br><br>A POSA would not find it obvious or be motivated to modify OracleNamesAdminGuide, OracleUnleashed, and/or Steen to satisfy the claim limitations because OracleNamesAdminGuide, OracleUnleashed, and Steen do not contemplate organizing location information of data pertaining to an entity based on a hash function. OracleNamesAdminGuide is a manual that describes Oracle 7 products. *See* OracleNamesAdminGuide at 19-26. Specifically, OracleNamesAdminGuide describes the use of Oracle Names products. *See e.g., id.* OracleNamesAdminGuide looks to address issues in networking databases. *See e.g., id.* OracleUnleashed is a manual that describes Oracle 8 products. *See* OracleUnleashed at 8-14. OracleUnleashed looks to address issues with managing databases. *See e.g., id.* Steen describes managing wide-area networks. *See e.g.,* Steen at 105. Steen describes locating mobile objects in a wide-area network. *See e.g., id.* OracleNamesAdminGuide, Steen, and/or OracleUnleashed are not directed to addressing issues such as organizing location information using a hash function. As such, any rationale to modify OracleNamesAdminGuide, OracleUnleashed, and/or Steen to satisfy the claim limitations is based on impermissible hindsight. Additionally, there is no reasonable expectation of success of satisfying the claim requirements by modifying OracleNamesAdminGuide, OracleUnleashed, and/or Steen because attempting to do so would require extensive reengineering of OracleNamesAdminGuide, OracleUnleashed, and/or Steen.<br><br>Wolff is neither relied upon for nor does it teach this claim element. |

14

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| **[1.g]** each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string. | "Based on a hash function used to organize the data location information across the plurality of data location servers … based on the hash function applied to the identifier string" is construed as "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function that maps identifier strings to one or more of the data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string."[9] <br><br> *See* claim [1.a]-[1.b] and [1.f] re identifier/identifier string, data location server, location information, and organizing location information across location servers using a hash function. <br><br> Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. <br> OracleNamesAdminGuide does not teach or suggest "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string." With respect to the OracleNamesAdminGuide, the Notice of Intent to Issue a Reexam Certificate in the Reexamination of the '170 Patent states, "However, the claims require that any given location server have the ability to determine the location of a desired data item by applying a hash function to the identifier string. If Oracle's Names Server had this ability, there would be no need to pass requests up and down a hierarchy of Names Servers; it could determine on its own the Names Server having the desired information and send the request directly to that Names Server" Notice of Intent to Issue Reexam Certificate, 10. <br><br> In this regard, OracleNamesAdminGuide is silent regarding applying a hash function to an identifier string. Furthermore, OracleNamesAdminGuide does not teach or suggest each data location server being configured to determine at least one of the plurality of |

[9] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | data location servers storing the location information.  The Name Servers in OracleNamesAdminGuide's hierarchical configuration do not have any knowledge of what is stored in other Names Server in the network, beyond their direct children. OracleNamesAdminGuide, 191.  If a queried server or its direct children do not have the requested information, the server knows only to forward a query to the next Names Server up the tree. *Id*. ***Names Servers are ignorant as to what information other Names Servers beyond their direct children may have and have no way of finding out.*** *Id*.<br><br>OracleNamesAdminGuide describes the process of requesting information in a Names Service network as: "1.  The client sends request to preferred Names Server in its local region (DR1).  2.  The preferred Names Server in DR1 issues request for the Names Servers authoritative for the destination server (in region DR2.1).  3.  The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2.  4.  The receiving server in DR2 forwards the request to a Names Server in region DR2.1. 5.  The name is retrieved from its authoritative Names Server in DR2.1.  6.  The names Server in region DR2 caches the answer and returns it to the root.  7.  The root caches the answer and returns it to the preferred Names Server in region DR1.  8.  The preferred Names Server caches the answer and returns it to the client.  9.  The client establishes a connection to the destination server." *Id*. Oracle Names is dependent on its network paths.  Names Servers do not have any knowledge of which Names Server contains the address to the requested network service (beyond itself and its direct children) nor is anything taught about any (much less every) Names Server being configured to determine the location of the requested information. *Id*.<br><br>Steen does not teach or suggest "each one of the data location servers is configured to determine the at least one of the plurality of data location servers" storing the location information.  Steen states "Our solution is to partition a directory node into one or more *directory subnodes* such that each subnode is responsible for a subset of the records originally stored at the directory node. [...] Because communication between directory nodes in the original search tree now takes place between their respective subnodes, each |

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | subnode should be aware of how the directory node with which it communicates is actually partitioned. This information is contained in a separate tree management service. This service also maintains the mapping of subnodes to physical nodes. Partitioning and mapping information is assumed to be relatively stable so that it can be easily cached by subnodes. This assumption is necessary to avoid having to query the management service each time a subnode needs to communicate with its parent or children, which would turn the management service into a potential communication bottleneck. Steen at 107-108 (emphasis in original). That is, each subnode only knows how the directory node with which it communicates. *Id*. Steen does not teach that *each* subnode is configured to determine the node which stores the desired location information. *Id*.<br><br>Furthermore, Steen does not teach or suggest applying hash function to an identifier string to determine which one of the data location servers stores the location information. As an initial matter Steen does not teach or suggest an identifier string that identifies a single entity. *See* claim [1.a]. Furthermore, Steen is completely silent regarding applying a hash function to an identifier. Steen mentions "hash-based" methods one time in the entire document. Specifically, Steen states "We note that we have developed more realistic hashing-based methods than explained here. For example, we also have to take into account that the total number of links between parent and children subnodes remains manageable." Steen at 108. Steen does not provide any detail regarding how the "hash-based" methods are used. Therefore, Steen does not teach or suggest applying hash function to an identifier string to determine which one of the data location servers stores the location information.<br><br>OracleUnleashed is not relied upon for and does not teach or suggest "each one of the data location servers is configured to determine the at least one of the plurality of data location servers."<br><br>Furthermore, OracleUnleashed does not teach or suggest applying an hash function to an identifier string. As described above, "identifier string" is construed as a "unique encoding that identifies an individual entity, and with which zero or more location strings |

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | are associated in a location server.[10] OracleUnleashed does not teach or suggest applying a hash function to an identifier string that identifies an individual entity to locate the location information for data pertaining to the individual entity. OracleUnleashed describes hashing as follows:<br><br>A good candidate for hashing has the following properties:<br><br>• *Unique cluster keys.* Hashing performs best when the value of the cluster key is fairly unique. Because the data is laid out based on the key value, a column with a lot of duplicates is not a good candidate for the hash key.<br><br>• *Equality queries.* The majority of queries are equality queries on the cluster key. This type of query reaps the greatest benefit from the hash cluster.<br><br>• *Static size.* Hashing is optimal when the table or tables are fairly static in size. If the table stays within its initial storage allocation, you do not see any performance degradation from using a hash cluster; but if the table grows out of its initial allocation, performance can degrade. In this case, overflow blocks are required.<br><br>• *Constant cluster key.* Hashing can also degrade performance when the value of the cluster key changes. Because the location of the block in which the data resides is based on the cluster key value, a change in that value can cause the row to migrate to maintain the cluster.<br><br>• *No table scans.* Hashing can degrade the performance of table scans because the scan must read blocks that may not have much data in them. Because the table is originally created by laying out the data in the cluster based on the value of the cluster key, there may be some blocks that have few rows.<br><br>Do not use a hash cluster on a table if the application frequently modifies the cluster key or the table is constantly being modified. Because the cluster key is based on a calculation, you can incur significant overhead by constantly recalculating the key.<br><br>OracleUnleashed, 394. |

---

[10] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

18

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | OracleUnleashed is silent regarding organizing *location information* of data across location servers using hashing.  OracleUnleashed is also silent regarding an identifier string that identifies an entity and the data location servers store location information for the data pertaining to the entity.  Therefore, OracleUnleashed **cannot** teach applying a hash function to an identifier string to determine which *location server* stores the desired location information. |
| | A POSA would not find it obvious to modify OracleNamesAdminGuide with OracleUnleashed and Steen to satisfy the claim limitations because OracleNamesAdminGuide, OracleUnleashed, and Steen do not contemplate organizing and locating location information of data pertaining to an entity based on applying a hash function to an identifier string that identifies the entity.  OracleNamesAdminGuide is a manual that describes Oracle 7 products.  *See* OracleNamesAdminGuide at 19-26.  Specifically, OracleNamesAdminGuide describes the use of Oracle Names products.  *See e.g., id.*  OracleNamesAdminGuide looks to address issues in networking databases.  *See e.g., id.*  OracleUnleashed is a manual that describes Oracle 8 products.  *See* OracleUnleashed at 8-14.  OracleUnleashed looks to address issues with managing databases.  *See e.g., id.*  Steen describes managing wide-area networks.  *See e.g.,* Steen at 105.  Steen describes locating mobile objects in a wide-area network.  *See e.g., id.*  OracleNamesAdminGuide, Steen, and/or OracleUnleashed are not directed to addressing issues such as locating location information using a hash function.  As such, any rationale to modify OracleNamesAdminGuide with OracleUnleashed and Steen to satisfy the claim limitations is based on impermissible hindsight.  Additionally, there is no reasonable expectation of success of satisfying the claim requirements by modifying OracleNamesAdminGuide, OracleUnleashed, and/or Steen because attempting to do so would require extensive reengineering of OracleNamesAdminGuide, OracleUnleashed, and/or Steen.

Wolff is neither relied upon for nor does it teach this claim element. |

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | |
| **[2]** The system of claim 1, wherein the location information comprises any portion of a hash table generated with the hash function. | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or rendered obvious. *See* claim [1.f]-[1.g].<br><br>As indicated above, OracleNamesAdminGuide, Steen, and OracleUnleashed do not teach or suggest organizing or locating location information using a hash function. *See* claim [1.f]-[1.g]. In the same vain, OracleNamesAdminGuide, Steen, and OracleUnleashed do not teach or suggest location information using a hash table. Furthermore, OracleNamesAdminGuide, Steen, and OracleUnleashed is completely silent with respect to including a *portion* of the hash table in the location information. That is, OracleNamesAdminGuide, Steen, and OracleUnleashed do not contemplate a distributed hash table. |

20

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | A good candidate for hashing has the following properties: <br><br> • *Unique cluster keys*. Hashing performs best when the value of the cluster key is fairly unique. Because the data is laid out based on the key value, a column with a lot of duplicates is not a good candidate for the hash key. <br><br> • *Equality queries*. The majority of queries are equality queries on the cluster key. This type of query reaps the greatest benefit from the hash cluster. <br><br> • *Static size*. Hashing is optimal when the table or tables are fairly static in size. If the table stays within its initial storage allocation, you do not see any performance degradation from using a hash cluster; but if the table grows out of its initial allocation, performance can degrade. In this case, overflow blocks are required. <br><br> • *Constant cluster key*. Hashing can also degrade performance when the value of the cluster key changes. Because the location of the block in which the data resides is based on the cluster key value, a change in that value can cause the row to migrate to maintain the cluster. <br><br> • *No table scans*. Hashing can degrade the performance of table scans because the scan must read blocks that may not have much data in them. Because the table is originally created by laying out the data in the cluster based on the value of the cluster key, there may be some blocks that have few rows. <br><br> Do not use a hash cluster on a table if the application frequently modifies the cluster key or the table is constantly being modified. Because the cluster key is based on a calculation, you can incur significant overhead by constantly recalculating the key. <br><br> OracleUnleashed at 394. <br><br> OracleUnleashed is silent regarding including a *portion* of the hash table in the location information distributed over the data location servers. |
| [6.Preamble] A system for managing data location information and providing the data location information in response to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or rendered obvious. <br><br> *See* claim [1.Preamble]-[1.f]. |

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | |
| **[6.a]** a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity; | "Location server" is construed as "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients."[11]<br><br>"Identifier" is construed as a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."[12]<br><br>"Location" is construed as "an encoding that is a member of a set of associations with an identifier in a location server, and that specifies where data pertaining to the entity identified by the identifier is stored."[13]<br><br>Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.b] re identifier, location server, and hierarchical configuration.<br><br>Furthermore, OracleNamesAdminGuide is silent about "a location addition request formatted in conformance with a transfer protocol." Specifically, OracleNamesAdminGuide does not teach or suggest receiving a location addition request formatted in the same transfer protocol as when receiving the location message.<br><br>OracleNamesAdminGuide also does not teach or suggest the required relationship among the terms "identifier," "entity," "location" and "location information." In OracleNamesAdminGuide, if a database is the data entity, and the identifier is the |

---

[11] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.
[12] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.
[13] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | network address alias of that database, then data within that database comprises the data entity, and the "location information associated with the identifier string" is the network address of the database (and not the alias for that network address, e.g., POULTRY). If any data comprising the data entity (i.e., the database in this scenario) is moved, the association between the location information and the identifier string is broken – in other words, POULTRY will still only point to the database's network location but is not otherwise associated with location information for whatever data may have moved from the POULTRY database. *Id.* at 30-32; 50-54. |
| **[6.b]** wherein the location server includes a processor; and | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.b] re identifier, location server, and hierarchical configuration, and [6.a] re the relationship among the terms "identifier," "entity," "location" and "location information." |
| **[6.c]** programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location | AWS's claim chart regarding this element is incomplete. *See* 2023-03-02 Exhibit 1A-1B at 53-54. AWS alleges that "OracleNamesAdminGuide describes a distributed database system, focusing on Names Servers that respond to a client's data requests using unique identifiers associated with …" *Id.* However, the sentence is never completed.<br><br>Additionally, AWS's Exhibit 1A indicates that the invalidity contention is based on OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff. However, Exhibit 1A includes citations to Skagerwall. *See id.* at 59. Kove will assume these citations are inadvertent because Skagerwall is not included in the invalidity contention detailed in Exhibit 1A.<br><br>Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. |

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity. | *See* claim [1.Preamble]-[1.b] re identifier, location server, and hierarchical configuration, and [6.a] re the relationship among the terms "identifier," "entity," "location" and "location information." |
| | Furthermore, this element requires that redirect message include the at least one location server ***known*** to have the location information for the desired entity. That is, claim 6 requires that the location server which receives the location query must determine which location server stores the desired location information. |
| | With respect to claim 6 and OracleNamesAdminGuide, the Notice of Intent to Issue a Reexam Certificate states "Returning to Fig. C-4 of the OracleNamesAdminGuide, Oracle's Names Servers forward name requests up and down a hierarchy of Names Servers until the Names Server containing the desired information is reached, and the desired information is returned in the same way, traversing the network of Names Servers. This fact gives evidence to the fact that any given Names Server has no information regarding which specific Names Server stores a desired information item. Were any given Names Server to have such information, then the Names Server would simply pass the request directly to that Names Server, instead of forwarding the request up and down a hierarchy of Names Servers. Since any given Names Server has no information regarding which specific Names Server stores a requested item, there would be no way for the Names Server to include such information in a redirect message returned to the requesting device." Notice of Intent to Issue Reexam Certificate, 12. OracleNamesAdminGuide does not teach or suggest a redirect message that identifies which data location server ***known*** to contain the location information. OracleNamesAdminGuide does not states: |
| | Rather than forward the request and return the answer *the Names Server simply tells the requestor the address of the Names Server that **can** answer the request*. Note that there is no overall reduction in work; the work is simply displaced from the non–forwarding Names Server to the requesting Names Server. |

24

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | WARNING: If FORWARDING_AVAILABLE is set to off, any clients who rely directly on that Names Server will be unable to resolve foreign names. Clients are not capable of redirecting their requests as Names Servers would. Their requests will fail at that point, even if other Names Servers are listed in the NAMES.PREFERRED_SERVERS configuration parameter. OracleNamesAdminGuide, p. 137 (emphasis added).<br><br>As OracleNamesAdminGuide explains, turning off "name request forwarding" simply shifts the "work" from the queried server to the server that queried it (requesting Names Server). *Id.* That "work" is querying the next server above it in the network path (e.g., the next Names Server in the hierarchy as shown in Figure C-4). *Id.,* 190-192. Nowhere in OracleNamesAdminGuide is there any contemplation that the next server is somehow known by the queried server to be in possession of the requested information – rather, the next server merely "***can***" answer the request (if it happens to have the information) but will not necessarily do so.<br><br>OracleNamesAdminGuide's Fig. C-4 can be used to illustrate what happens when FORWARDING_AVAILABLE is OFF versus when it is on<br><br> |

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | *Id.*, Fig. C-4 192<br><br>For example, the client queries DR1. If DR1 does not have the information, it forwards the query to ROOT. If ROOT does not have the information and its FORWARDING_AVAILABLE is set to OFF, it cannot forward the query to DR2, as it otherwise would have done. Instead, OracleNamesAdminGuide teaches that ROOT shifts the work to DR1 by returning a message to DR1 identifying DR2, which *can* have the requested information *or not*. In other words, ROOT simply tells DR1 the next server it would otherwise have queried had its forwarding not been turned off. A POSA would understand OracleNamesAdminGuide to teach that DR2 may *or may not* have the requested information because ROOT has no way of knowing whether it does. Because ROOT does not know one way or another, the Oracle System does not meet the knowledge requirement of the claims.<br><br>OracleUnleashed also does not "return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity." While OracleUnleashed describes hashing to partition database tables, OracleUnleashed is silent with respect to redirect messages. *See* OracleUnleashed, 394, 638. Furthermore, OracleUnleashed is silent with respect to data location servers being configured to determine which location server stores the desired location information and transmit a redirect message including "a list of at least one other location server known to have the location information for the desired entity."<br><br>Furthermore, OracleNamesAdminGuide does not teach or suggest receiving a location addition request formatted in the same transfer protocol as when receiving the location message. |

26

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | Steen also does not "return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity." AWS alleges that Steen's hashing allows "ensures each subnode is aware (i.e., knows) the location of any requested location information regardless of which server it is contained on." *See* 2023-03-02 Exhibit 1A-1B, 55.<br><br>However, Steen states "Our solution is to partition a directory node into one or more *directory subnodes* such that each subnode is responsible for a subset of the records originally stored at the directory node. […] Because communication between directory nodes in the original search tree now takes place between their respective subnodes, each subnode should be aware of how the directory node with which it communicates is actually partitioned. This information is contained in a separate tree management service. This service also maintains the mapping of subnodes to physical nodes. Partitioning and mapping information is assumed to be relatively stable so that it can be easily cached by subnodes. This assumption is necessary to avoid having to query the management service each time a subnode needs to communicate with its parent or children, which would turn the management service into a potential communication bottleneck. Steen, 107-108 (emphasis in original). That is, each subnode only knows how the directory node with which it communicates. The subnodes are not aware of of the location of *any* requested location information. *Id*. Furthermore, Steen is silent with respect to transmitting a "redirect message." Therefore, Steen does not teach or suggest returning a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity."<br><br>Wolff does not teach or suggest returning "a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity." |

27

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | Wolff describes optimizing network performance using client load rebalancing. Specifically, Wolff states: "Client load rebalancing refers to the ability of a client, enabled with processes in accordance with the current invention, to re-map a path through a plurality of nodes to a resource. The re-mapping may take place in response to a redirection command emanating from an overloaded node, e.g. server. The embodiments disclosed allow more efficient, robust communication between a plurality of clients and a plurality of resources, via a plurality of nodes. Resources can include, but are not limited to, computers, memory devices, imaging devices, printers, and data sets. A data set can include a database or a file system." Wolff, 2:41-51. Furthermore, Wolff states: "In operation at time T=0, normal client 100A is shown accessing memory resource 118 via path 70 through overloaded server 104. At the same time, aware client 102A is shown accessing memory resource 18, via path 74, through overloaded server 104A. At time T=1, process 102P1, implemented on aware client 102A, detects the overload condition of server 104A, and accesses memory resource 118 via an alternate path 76 through server 106A. Thus, in this subsequent state, the load on server." *Id.*, 5:25-38. As such, in the event of a network bottleneck, Wolff reroutes a client requesting to connect to a memory resource via an alternate path. *Id.*

Wolff's client does not transmit a location query to the server or node. Rather, Wolff's client transmits a request to connect to a given resource (e.g., memory resource). *Id.*, 2:41-51. To this end, Wolff's server or note server does not determine or know which server (i.e., location server) stores the desired location information. Rather, Wolff's server or node redirects the client to a different server or node that is not as burdened. *Id.*, 5:25-38. As such, Wolff does not transmit a redirect message that includes "a list of at least one other location server known to have the location information for the desired entity."

A POSA would not find it obvious to modify OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff to satisfy the claim limitations because OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff do not contemplate not transmitting a redirect message that includes "a list of at least one other location server |

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | known to have the location information for the desired entity. OracleNamesAdminGuide is a manual that describes Oracle 7 products. *See* OracleNamesAdminGuide at 19-26. Specifically, OracleNamesAdminGuide describes the use of Oracle Names products. *See e.g., id.* OracleNamesAdminGuide looks to address issues in networking databases. *See e.g., id.* OracleUnleashed is a manual that describes Oracle 8 products. *See* OracleUnleashed at 8-14. OracleUnleashed looks to address issues with managing databases. *See e.g., id.* Steen describes managing wide-area networks. *See e.g.,* Steen at 105. Steen describes locating mobile objects in a wide-area network. *See e.g., id.* Wolff describes optimizing network performance using client load rebalancing. *See e.g.,* Wolff *at* 2:41-51. Wolff looks to address issues with load balancing in a network. *See e.g.* OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff are not directed to addressing issues such as transmitting redirect message that includes "a list of at least one other location server known to have the location information for the desired entity." As such, any rationale to modify OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff to satisfy the claim limitations is based on impermissible hindsight. Additionally, there is no reasonable expectation of success of satisfying the claim requirements by modifying OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff because attempting to do so would require extensive reengineering of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff. |
| **[8]** The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information. | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claims [1.a]-[1.b]. |
| **[12]** The system of claim 9, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers. | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claims [1.f]-[1.g]. |

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| **[15.Preamble]** A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising: | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. <br><br> *See* claims [1.Preamble]-[1.g] and [6.Preamble]-[6.c]. |
| **[15.a]** correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network; | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. <br><br> *See* claim [1.Preamble]-[1.b] re identifier, location server, and hierarchical configuration, and [6.a] re the relationship among the terms "identifier," "entity," "location" and "location information." |
| **[15.b]** receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities; | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. <br><br> *See* claim [1.Preamble]-[1.b] re identifier, location server, and hierarchical configuration, and [6.a] re the relationship among the terms "identifier," "entity," "location" and "location information." |
| **[15.c]** determining which of the plurality of location servers includes the location information; | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. <br><br> *See* claim [1.Preamble]-[1.b] re identifier, location server, and hierarchical configuration, and [6.a] re the relationship among the terms "identifier," "entity," "location" and "location information." |
| **[15.d]** sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. |

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| location response message comprising the location information; and | *See* claim [1.Preamble]-[1.b] re identifier, location server, and hierarchical configuration, and [6.a] re the relationship among the terms "identifier," "entity," "location" and "location information." |
| [15.e] sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information. | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or rendered obvious.<br><br>*See* claim [1.Preamble]-[1.b] re identifier, location server, and hierarchical configuration, [6.a] re the relationship among the terms "identifier," "entity," "location" and "location information," and [6.c] re the redirect message.<br><br>Additionally, OracleNamesAdminGuide makes clear that, even in the event FORWARDING_AVAILABLE is set to OFF, "the work is simply displaced from the non-forwarding Names Server to the requesting Names Server." OracleNamesAdminGuide goes on to specify:<br><br>WARNING: If FORWARDING_AVAILABLE is set to off, any clients who rely directly on that Names Server will be unable to resolve foreign names. Clients are not capable of redirecting their requests as Names Servers would. OracleNamesAdminGuide, p. 137.<br><br>OracleNamesAdminGuide teaches that responses that are returned in a FORWARDING_AVAILABLE OFF situation does not return anything to the **client**, which is "not capable of redirecting their requests as Names Servers would," but rather to the requesting Names Server. Therefore, OracleNamesAdminGuide teach, suggest or render obvious the "transmit to the client" requirement of claim 15 but rather teaches away from it.<br><br>Furthermore, even if a given Oracle Names Server can act as a client, the Oracle Names Servers are not configured to transmit a redirect message that identify "which of the |

31

EXHIBIT 1A: U.S. 7,814,170 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,814,170 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2,3] |
|---|---|
| | plurality of location servers includes the location information ." with any specificity. *See* claim [6.c]. |

EXHIBIT 1B: U.S. 7,814,170 Validity Claim Chart in View of **Skagerwall and Wolff**.

AWS purports to assert that U.S. Patent No. 7,814,170 ("the '170 patent") claims 1, 2, 6, 8, 12, and 15 are rendered obvious by Skagerwall alone or in combination with Wolff. AWS alleges that AWS's Exhibit 1B reflect "the additional requirements for the claims based on Kove's statements in reexamination and are consistent with Amazon's proposed constructions reflecting those statements." 2023-03-02 Exhibit 1A-1B, 53-54 at 1 (citation omitted). Kove does not agree that Kove's statements created any additional claim requirements. Kove believes that Skagerwall alone or in combination with Wolff is deficient based on the claim requirements imposed by the plain language of the claims and the current claim construction order, as well as AWS's proposed constructions. *See* Joint Claim Construction Chart (Updated) (Dkt. No. 382) and Claim Construction Order (Updated) (Dkt. No. 484).

| U.S. Patent No. 7,814,170 | Skagerwall and Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2] |
|---|---|
| **[1.Preamble]** A system for managing data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove denies that Skagerwall and/or Wolff discloses the limitations of the preamble, or renders it obvious.<br><br>Skagerwall describes a hierarchical system. Specifically, Skagerwall describes a primary directory server (i.e. a parent directory server) and child directory servers. *See e.g.,* Skagerwall at 12:8-22. Therefore, Skagerwall's hierarchical configuration does not allow for satisfying the claim requirements. |
| **[1.a]** a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and | "Identifier string" is construed as a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."[3] |

---

[1] Kove uses the information currently available to it to provide its responses to AWS's Fifth Amended Final Unenforceability and Invalidity Contentions ("FAFUIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFUIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[2] Kove incorporates by reference its Response to the Office Action and Notice of Intent to Issue Reexamination Certificate in the Reexamination Proceeding of the '170 patent (90/019,035).

[3] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

EXHIBIT 1B: U.S. 7,814,170 Validity Claim Chart in View of **Skagerwall and Wolff**.

| U.S. Patent No. 7,814,170 | Skagerwall and Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2] |
|---|---|
| | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. *See* claim [1. Preamble]<br><br>Furthermore, Skagerwall does not teach or suggest an identifier that uniquely identifies a *single* entity. AWS alleges that Skagerwall's tag corresponds with the claimed identifier. However, Skagerwall describes using a tag for groups of objects. For example, Skagerwall states With the System according to the invention, the user is, e.g., able to access default information related to an object or a group of objects, for example, as provided by the manufacturer of the particular objects or products." Skagerwall at 6:59-62. As such, a tag can identify more than one object. Furthermore, even if different objects have different tags, as long as the objects are the same type of object, the tag will retrieve the same data packets. *See e.g., id.* at 6:59-62.<br><br>Furthermore, Skagerwall describes each tag including its own identifier. For example, Skagerwall states "The search means SM groups object tags, preferably in correspondence with the number of objects and the number of available directory Servers, i.e., a target directory Server for Storing as well as for retrieving object data is determined based on an identifier of an object tag, which, e.g., may be a number assigned to the tag, and the number of available directory servers DS; DS1-DSn." *Id.* at 10:43-49; *see also id.* at 13:24-30. This suggests that object tags are not unique, and that uniqueness would be achieved, if at all, through the object tag identifier.<br><br>Moreover, Skagerwall does not teach or suggest a data entity. AWS alleges that Skagerwall's object corresponds with the claimed "data entity." However, Skagerwall's object is not a data entity, rather, it is a real-world physical object. For example, Skagerwall states "The System is arranged to link the plurality of objects, which can, for example, be any products or items of the physical world to various kinds of information related to the objects." *Id.* at 6:45-48. Therefore, Skagerwall does not teach or suggest a data entity. |

EXHIBIT 1B: U.S. 7,814,170 Validity Claim Chart in View of **Skagerwall and Wolff**.

| U.S. Patent No. 7,814,170 | Skagerwall and Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2] |
|---|---|
| | Wolff is not relied upon and does not teach or suggest this element. Wolff is silent regarding an identifier that is a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server." |
| **[1.b]** a data location server network comprising a plurality of data location servers, | "Location server" is construed as "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients"[4] |
| | "Client" is construed as "a network-attached component (which may be software or hardware) that initiates update or lookup of identifier/location mappings from a location server with location request messages." [5] |
| | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. *See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier, and data entity. |
| | Skagerwall does not teach or suggest a location server that is a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients" because Skagerwall does not teach or suggest the claimed identifier. *See* claim [1.a]. |
| | Wolff is not relied upon and does not teach or suggest this element. Specifically, Wolff does not teach or suggest a location server that is a "network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients." Wolff is completely silent with respect to identifier/location mappings. Additionally, does not teach or suggest receiving location request messages from clients. Wolff describes a client transmitting requests in an attempt to connect to a specified resource. *See e.g.,* Wolff at 5:25-38. Wolff identifies a network path for the client to connect to the specified resource given the network conditions. *See e.g., id.* As such, Wolff does not teach or |

---

[4] Claim Construction Order (Updated) (Dkt. No. 484) at 35.
[5] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

EXHIBIT 1B: U.S. 7,814,170 Validity Claim Chart in View of **Skagerwall and Wolff**.

| U.S. Patent No. 7,814,170 | Skagerwall and Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2] |
|---|---|
| | suggest a location server that is a "network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients." |
| **[1.c]** wherein data location information for a plurality of data entities is stored in the data location server network, | "Location information" is construed as "information pertaining to one or more locations of data and/or the identities of one or more location servers." [6]<br><br>Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br>*See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier, location server, and data entity. |
| **[1.d]** at least one of the plurality of data location servers includes location information associated with the identifier string, | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier, location server, and data entity. |
| **[1.e]** each one of the plurality of data location servers comprises a processor and a portion of the data location information, | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier, location server, and data entity. |
| **[1.f]** the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the | "Based on a hash function used to organize the data location information across the plurality of data location servers … based on the hash function applied to the identifier string" is construed as "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function that maps |

---

[6] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

EXHIBIT 1B: U.S. 7,814,170 Validity Claim Chart in View of **Skagerwall and Wolff**.

| U.S. Patent No. 7,814,170 | Skagerwall and Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2] |
|---|---|
| data location information across the plurality of data location servers, and | identifier strings to one or more of the data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string." [7] <br><br> Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. *See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier, location server, and data entity. <br><br> Additionally, Wolff is completely silent regarding a hash function. Therefore, Wolff does not teach or suggest organizing location information across data location servers using a hash function. |
| **[1.g]** each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string. | "Based on a hash function used to organize the data location information across the plurality of data location servers … based on the hash function applied to the identifier string" is construed as "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function that maps identifier strings to one or more of the data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string."[8] <br><br> Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. <br> *See* claim [1.Preamble]-[1.b] re hierarchical configuration, identifier, location server, and data entity. <br><br> As an initial matter, Skagerwall is completely silent regarding location servers being configured to apply a hash function on an identifier string. Furthermore, Skagerwall does not teach or suggest that each one of the data location servers is configured to *determine* the at least one of the plurality of data location servers storing the desired |

---

[7] Claim Construction Order (Updated) (Dkt. No. 484) at 35.
[8] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

EXHIBIT 1B: U.S. 7,814,170 Validity Claim Chart in View of **Skagerwall and Wolff**.

| U.S. Patent No. 7,814,170 | Skagerwall and Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2] |
|---|---|
| | location information based on the hash function applied to the identifier string.  AWS points to Skagerwall's Fig. 2a (reproduced below) to satisfy this limitation.  Skagerwall, Fig. 2.<br><br>With respect to Fig. 2, Skagerwall states "If in step S26 it has been determined that object data related to the object tag is not located at the identified primary directory server, in a step S28, the lookup request is forwarded to other directory servers. In case the number of directory servers has been increased recently, the lookup request may be forwarded to a directory server which is determined using the hashfunction based on a |

EXHIBIT 1B: U.S. 7,814,170 Validity Claim Chart in View of **Skagerwall and Wolff**.

| U.S. Patent No. 7,814,170 | Skagerwall and Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2] |
|---|---|
| | previous number of available directory servers." *Id.* at 12:63-66. Therefore, the primary directory server is not configured to determine with any certainty which directory server stores the desired location information.<br><br>Skagerwall's Fig. 3 (reproduced below) illustrates the process for retrieving application data packets related to an object.<br><br><br><br>Skagerwall, Fig. 3.<br><br>With respect to Fig. 3, Skagerwall states: |

7

EXHIBIT 1B: U.S. 7,814,170 Validity Claim Chart in View of **Skagerwall and Wolff**.

| U.S. Patent No. 7,814,170 | Skagerwall and Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2] |
|---|---|
| | "If the location γ of the server hashtable is empty, in a step S35 an operation α=α/2 is performed and the flow returns to step S33. In S33, again, β mod α is computed in order to obtain a new γ. The flow then again reaches step S34 and once again it is determined, whether the hashtable location γ contains a record comprising one of the directory server addresses. This loop of steps S33, S34 and S35 is repeated until, in step S35 it is determined that the hashtable location γ contains a record comprising a directory server address. Then, in a step S36 a request including the read object tag is transmitted to the target directory server, i.e., the directory server, whose address is stored at the hashtable location γ. Subsequently, in a step S37, the target directory server determines, whether the object data stored thereon actually includes a record comprising the read object tag. In case such a record can not be found, the flow returns to step S33, and γ is newly computed. The flow then continues as outlined before, until the directory server storing the object data is found. If none of the directory servers stores the object data, an error message is generated." *Id.*, at 13:45-65. <br><br> In this regard, Skagerwall's access server identifies a target directory server that *may* store the desired object data based on the above-referenced computation. *See e.g., id.* The request for the object data is forwarded to the target directory server. *See e.g., id.* The target directory server determines whether it contains the desired location information. If not, the request is returned to the access server. *See e.g., id.* Therefore, the access server did not determine whether the target directory stores the desired location information. As such, each of Skagerwall's servers are *not* configured to determine with any certainty which data location server stores the desired data location information with or without the hash function. Skagerwall does not return the desired location information in two iterations or less. Therefore, Skagerwall does not teach or suggest that each one of the data location servers is configured to determine the at least one of the plurality of data location servers storing the desired location information based on the hash function applied to the identifier string. |

8

EXHIBIT 1B: U.S. 7,814,170 Validity Claim Chart in View of **Skagerwall and Wolff**.

| U.S. Patent No. 7,814,170 | Skagerwall and Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2] |
|---|---|
| | Furthermore, Skagerwall does not teach or suggest data location servers that use hash functions to determine which data location server stores the desired data location information.  As indicated above, AWS alleges that Skagerwall's directory servers correspond with the claimed data location servers.  However, Skagerwall states "The system kernel K of the described embodiment comprises at least one access server AS; AS1-ASr, which preferably is responsible for receiving a request for information about an object including an object tag T; T1-Tw read by the reader R." *Id*., at 9:1-5.  Furthermore, Skagerwall states the access server attempts to identify the target directory server that stores the desired location information using a hash table. *See e.g., id*., at 13:45-65.  That is, Skagerwall's *directory servers* do not use the hash table to attempt to identify the target directory server, rather, the access server is responsible for attempting to find the target directory server. *See e.g., id*., at 9:1-5; 13:45-65.  Therefore, Skagerwall does not teach or suggest *data location servers* that use hash functions to determine which data location server stores the desired data location information. <br><br> Wolff does not teach or suggest this element.  Wolff identifies a network path for the client to connect to the specified resource given the network conditions. *See e.g.,* Wolff at 5:25-38.  Wolff is completely silent regarding determining which data location server is storing the desired location information.  Furthermore,  Wolff does not teach or suggest using a hash function to determine determining which data location server is storing the desired location information.  Therefore, Wolff does not teach or suggest "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string." <br><br> A POSA would not find it obvious to modify Skagerwall with Wolff to satisfy the claim limitations because Skagerwall and Wolff do not contemplate each of the data location servers being configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.  Skagerwall describes linking physical objects to data stored about the objects in databases. *See* Skagerwall at Abstract.  Wolff describes optimizing network performance using client |

EXHIBIT 1B: U.S. 7,814,170 Validity Claim Chart in View of **Skagerwall and Wolff**.

| U.S. Patent No. 7,814,170 | Skagerwall and Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2] |
|---|---|
| | load rebalancing. *See* Wolff at 2:41-51. Skagerwall and Wolff are not directed at addressing the issue of allowing location servers to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string. As such, any rationale to modify Skagerwall and Wolff to satisfy the claim limitations is based on impermissible hindsight. Additionally, there is no reasonable expectation of success of satisfying the claim requirements by modifying Skagerwall and/or Wolff because doing so would require extensive reengineering of Skagerwall and/or Wolff. |
| **[2]** The system of claim 1, wherein the location information comprises any portion of a hash table generated with the hash function. | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.g]. |
| **[6.Preamble]** A system for managing data location information and providing the data location information in response to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Skagerwall and/or Wolff, that it is or rendered obvious.<br><br>*See* claim [1.Preamble]-[1.g]. |
| **[6.a]** a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity; | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier, and location server. |
| **[6.b]** wherein the location server includes a processor; and | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. |

EXHIBIT 1B: U.S. 7,814,170 Validity Claim Chart in View of **Skagerwall and Wolff**.

| U.S. Patent No. 7,814,170 | Skagerwall and Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2] |
|---|---|
| | *See* claim [1.Preamble]-[1.a] re hierarchical configuration and identifier. |
| **[6.c]** programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity. | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. *See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier, and location server.<br><br>This element requires that redirect message include the at least one location server ***known*** to have the location information for the desired entity. That is, claim 6 requires that the location server which receives the location query must determine which location server stores the desired location information.<br><br>Skagerwall does not teach or suggest location servers that can determine with any certainty which location server is storing the desired location information. *See* claim [1.g]. Furthermore, Skagerwall does not teach or suggest location servers configured to determine which location server is storing the desired location information. *See id*. Furthermore, Skagerwall is completely silent regarding returning "a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity."<br><br>Wolff does not teach or suggest returning "a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity."<br><br>Wolff describes optimizing network performance using client load rebalancing. Specifically, Wolff states: "Client load rebalancing refers to the ability of a client, enabled with processes in accordance with the current invention, to re-map a path through a plurality of nodes to a resource. The re-mapping may take place in response to a redirection command emanating from an overloaded node, e.g. server. The embodiments disclosed allow more efficient, robust communication between a plurality of clients and a plurality of resources, via a plurality of nodes. Resources can |

EXHIBIT 1B: U.S. 7,814,170 Validity Claim Chart in View of **Skagerwall and Wolff**.

| U.S. Patent No. 7,814,170 | Skagerwall and Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2] |
|---|---|
| | include, but are not limited to, computers, memory devices, imaging devices, printers, and data sets. A data set can include a database or a file system." Wolff, 2:41-51. Furthermore, Wolff states: "In operation at time T=0, normal client 100A is shown accessing memory resource 118 via path 70 through overloaded server 104. At the same time, aware client 102A is shown accessing memory resource 18, via path 74, through overloaded server 104A. At time T=1, process 102P1, implemented on aware client 102A, detects the overload condition of server 104A, and accesses memory resource 118 via an alternate path 76 through server 106A. Thus, in this subsequent state, the load on server." *Id.*, 5:25-38. As such, in the event of a network bottleneck, Wolff reroutes a client requesting to connect to a memory resource via an alternate path. *Id.* |
| | Wolff's client does not transmit a location query to the server or node. Rather, Wolff's client transmits a request to connect to a given resource (e.g., memory resource). *Id.*, 2:41-51. To this end, Wolff's server or note server does not determine or know which server (i.e., location server) stores the desired location information. Rather, Wolff's server or node redirects the client to a different server or node that is not as burdened. *Id.*, 5:25-38. As such, Wolff does not transmit a redirect message that includes "a list of at least one other location server known to have the location information for the desired entity." |
| | A POSA would not find it obvious to modify Skagerwall with Wolff to satisfy the claim limitations because Skagerwall and Wolff do not contemplate not transmitting a redirect message that includes "a list of at least one other location server known to have the location information for the desired entity. Skagerwall describes linking physical objects to data stored about the objects in databases. *See* Skagerwall at Abstract. Wolff describes optimizing network performance using client load rebalancing. *See* Wolff at 2:41-51. Skagerwall and Wolff are not directed at addressing the issue of transmitting a redirect message that includes "a list of at least one other location server known to have the location information for the desired entity. As such, any rationale to modify Skagerwall and Wolff to satisfy the claim limitations is based on impermissible hindsight. Additionally, there is no reasonable expectation of success of satisfying the |

EXHIBIT 1B: U.S. 7,814,170 Validity Claim Chart in View of **Skagerwall and Wolff**.

| U.S. Patent No. 7,814,170 | Skagerwall and Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2] |
|---|---|
| | claim requirements by modifying Skagerwall and/or Wolff because doing so would require extensive reengineering of Skagerwall and/or Wolff |
| **[8]** The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information. | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.b]. |
| **[12]** The system of claim 9, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers. | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.g]. |
| **[15.Preamble]** A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising: | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier, location server, and data entity. and [6.Preamble]-[6.c]. |
| **[15.a]** correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network; | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier, location server, and data entity. |
| **[15.b]** receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities; | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier, location server, and data entity. |

13

EXHIBIT 1B: U.S. 7,814,170 Validity Claim Chart in View of **Skagerwall and Wolff**.

| U.S. Patent No. 7,814,170 | Skagerwall and Wolff for claims 1, 2, 6, 8, 12, and 15 [1,2] |
|---|---|
| **[15.c]** determining which of the plurality of location servers includes the location information; | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier, location server, and data entity. |
| **[15.d]** sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier, location server, and data entity. |
| **[15.e]** sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information. | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.c] and [6.c]. |

14

EXHIBIT 1C: U.S. 7,814,170 Validity Claim Chart in View of Neimat et al.

AWS purports to assert that claims 1, 2, 6, 8, 12, 15, and 17 of U.S. Patent No. 7,814,170 ("the '170 patent") are obvious in view of the combination of U.S. Patent No. 5,542,087 to Neimat ("Neimat"), DNS, and Karger '618/420. AWS further alleges that the operation of DNS is described in BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman. But AWS has failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| **[1.Preamble]** A system for managing data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove admits that Neimat discloses a system for managing data stored in a distributed network. |
| **[1.a]** a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and | Kove denies that this element is disclosed by Neimat.<br><br>Neimat does not disclose the claimed "identifier string," but instead describes non-unique key values for autonomous clients that do not uniquely identify an entity. An "identifier string" is expressly described in the '170 patent as "a *unique* string with which zero or more location strings are associated in an NDTP server." '170 patent at 4:10-12 |

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[3] Kove incorporates by reference Exhibit 1A of its Contentions, which discusses DNS. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276, which discusses DNS.

EXHIBIT 1C: U.S. 7,814,170 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| | (emphasis added). The identifier string must "be unique to a particular entity," '170 patent at 4:39-49, i.e. it cannot identify more than one data entity. AWS maps the "identifier" as the "Record key value (e.g., value generated from a patient's name)" of Neimat, but Neimat does not disclose that its "record keyvalue" is unique. Instead, Neimat discloses, e.g., "if each key is a respective subject's personal name, it is clear that certain character strings of a common last name such as "Jones" will appear many times in the keys." Neimat at 2:8-10. *See, also, e.g.,* Neimat at 8:28-47, which discloses, e.g., using "Janet Jones" as a patient name key value to produce a record key.

Neimat does not disclose "a data repository . . .," but instead describes file servers that store records and relationships between memory addresses and server addresses. *See, e.g.* Neimat at 4:40-60, 7:48-8:15. Memory on a file server (which AWS identifies as the "location server") by itself is not the claimed data repository. Data location servers and data repositories are, however, separate machines within the distributed network architecture claimed by the '170 patent. *See, e.g.,* '170 patent at Fig. 11, 2:30-45 (describing the "data repository" and "a first server entity operative to locate data" as separate components), 4:58-67 ("When a query is performed for an entity key, the NDTP server supplies the set of data repositories in which data may be found for that entity key."). The prosecution history further supports this separation. |
| **[1.b]** a data location server network comprising a plurality of data location servers, | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious.

*See* claim [1.a].

AWS fails to explain how the file servers in Neimat are "data location servers," and indeed concedes that they are not. Moreover, Neimat does not disclose the claimed "data location server network" or "a plurality of data location servers." The file servers in Neimat are not data location servers. The file servers in Neimat store records, i.e. the data itself. *See* Neimat at 8:1-15("Records of the database are stored at memory locations or 'buckets' provided by file servers."). Further, the file servers of Neimat also cannot determine which other file servers store location information for an identifier, as |

EXHIBIT 1C: U.S. 7,814,170 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
|  | that information is not stored. Nor do file servers have identifier/location mappings, as they do not have identifiers (as described for 1.a) and do not have locations that are associated with identifiers/entities. Memory addresses are not proper locations. Clients in Neimat cannot update identifier/location mappings in file servers.<br><br>The specification of the '170 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from NDTP clients." '170 patent at 4:17-20 (emphasis added). Specifically, the "location servers" of the '170 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See* '170 patent at 4:14-17 (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the entity key and the data repository's data location specifier." '170 patent at 4:61-64. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '170 patent at Abstract ("According to the protocol, a location string can be spontaneously and dynamically changed"), 2:22-26 ("Relationships between identification strings and location strings can be dynamically and spontaneously manipulated thus allowing the corresponding data relationships also to change dynamically, spontaneously, and efficiently"), 20:42-45 ("it is the manipulation of dynamic and spontaneous relationships between indices and locations, not the indices and locations, that is the core significance").<br><br>With respect to "location server," AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Neimat with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, |

EXHIBIT 1C: U.S. 7,814,170 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| | common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Neimat's disclosure. AWS asserts that Neimat would have been combined with the Data Location References because (1) the "concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science"; (2) "the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science," and (3) "one of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system." These statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine features from any known distributed network with any other known distributed network, since all distributed networks have common goals (e.g., to improve system performance, speed, and efficiency). Moreover, merely doubling any location server, which is not described or rendered obvious, would not yield the claimed invention. <br><br> Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references Amazon seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the secondary references, such as DNS, do not disclose "location servers" or many other claim elements for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. <br><br> AWS's assertion that "location is not necessary" is wrong, as evidenced by the plain language of the claims as well as the discussion of location in the specification and |

EXHIBIT 1C: U.S. 7,814,170 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| | prosecution history.  AWS's efforts to use the '170 patent itself to support an obviousness argument necessarily fails. |
| **[1.c]** wherein data location information for a plurality of data entities is stored in the data location server network, | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.b].<br><br>As explained above, the file servers in Neimat are not data location servers and do not store data location information. The file servers instead store records and relationships between memory addresses and server addresses.  *See, e.g.*, Neimat at 4:40-60, 7:48-8:15. |
| **[1.d]** at least one of the plurality of data location servers includes location information associated with the identifier string, | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.c].<br><br>As explained above, Neimat does not disclose "data location servers," "data location information," "identifier string," or the claimed relationships among them. Further, Amazon fails to explain how a file server, which it identifies as a data "location server," "includes location information.". |
| **[1.e]** each one of the plurality of data location servers comprises a processor and a portion of the data location information, | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.d].<br><br>As explained above, Neimat does not disclose "data location servers," "data location information," or the claimed relationships among them. Further, Neimat does not disclose "each one of the plurality of data location servers comprises . . . a portion of the data location information," as the file servers in Neimat are not "data location servers" and do not store data location information. The servers instead store records and relationships between memory addresses and server addresses, and the full set of such |

EXHIBIT 1C: U.S. 7,814,170 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| | relationships, rather than merely a "portion" of them. *See ,e.g.* Neimat at 4:40-60, 7:48-8:15, 5:49-67. |
| **[1.f]** the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious. <br><br> *See* claim [1.a-1.e]. <br><br> As explained above, Neimat does not disclose "data location servers," "data location information," "a portion of the data location information," or the claimed relationships among them. Furthermore, Neimat does not disclose using a hash function to organize "data location information" across a "plurality of data location servers" because the hash functions disclosed in Neimat distribute records onto file servers, i.e. to distribute the data itself rather than "data location information." <br><br> As AWS concedes, Neimat does not disclose a hash function or this limitation more broadly. <br><br> The hash function of claim 1 is used externally to allocate and retrieve particular sets of identifier/location mappings from particular data location servers. '170 patent at 15:12-18 ("The appropriate NDTP server is selected from the table…by applying a [hash] function to the identifier string and using the function result as an index into the NDTP server table."). AWS's contention that this limitation ("hash function") would be obvious in view of Neimat and the Karger references is unavailing. AWS's contention that hash functions were well-known at the time of the '170 patent is irrelevant to an assessment of the obviousness of applying a hash function to organize data location information across data location servers. AWS's improper reliance on the asserted patent's specification and case law (*Symantec*) are unavailing for the same reasons. AWS fails to adduce a single reference that either discloses or suggests the application of hash functions to organize data location information: both Karger references pertain to the organization of data across servers housing that data, rather than to the organization of location information about that data across multiple location servers. *See* |

EXHIBIT 1C: U.S. 7,814,170 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| | U.S. Patent No. 6,553,420 to Karger at col. 3:23-50 (disclosing the use of a hash function to retrieve a document from a server). AWS's references neither teach nor suggest the problem that the '170 patent is directed to solve: the separation of the "where" (a constellation of location servers informing their clients where a data entity is stored) from the "what" (the data entities themselves) in an extremely large distributed environment. '170 patent at 3:14-25, 20:17-29 ("NDTP... supports an architecture, in which information about where data associated with particular application entities, can be managed and obtained independently of the data itself."). Indeed, the Karger references do not describe the basic architecture of the claim (separating location information from data), data location information or location information (relationship between identifiers and locations or location servers), identifiers (not uniquely associated with entities), location servers (no identifier/location mappings or modifying this information in response to client requests), or clients (no modifying identifier/location mappings). The POSA would have no rationale to combine Neimat with either of the Karger references (or any other reference); to the contrary, for the reasons above, DNS and the Karger references teach away from the claimed invention. <br><br> Further, AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Neimat with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Neimat's disclosure. AWS asserts that hash functions could be combined with Neimat and various other references because they are purportedly well known. Its statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine hash functions into any disclosure. The mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why the POSA would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references AWS seeks to combine are non-analogous art and/or |

EXHIBIT 1C: U.S. 7,814,170 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| | change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the specifically identified references do not disclose one or more of the claim limitations for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. |
| **[1.g]** each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string. | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.f].<br><br>As explained above, Neimat does not disclose "data location servers," "data location information," "portion of the data location information," "identifier string," "hash function" or the claimed relationships among them. Further, Neimat does not disclose "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string," as the file servers in Neimat do not store data location information. The servers instead store records and relationships between memory addresses and server addresses |
| **[2]** The system of claim 1, wherein the location information comprises any portion of a hash table generated with the hash function. | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.g]. There is no disclosure in Neimat or the Karger references of "a hash table generated with the hash function," much less that "location information comprises any portion of a hash table." There is no disclosure of "location information." The POSA would have no rationale to combine Neimat with either of the Karger references; to the contrary, for the reasons above, Neimat and the Karger references teach away from the claimed invention. AWS wholly fails to explain why this claim limitation is met or rendered obvious. |
| **[6.Preamble]** A system for managing data location information and providing the | To the extent the preamble is limiting, Kove denies that this element is disclosed by Neimat. |

EXHIBIT 1C: U.S. 7,814,170 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| data location information in response to location queries, the system comprising: | *See* claim [1a-1.g]. |
| **[6.a]** a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity; | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.g]. As explained above, Neimat fails to disclose a "location server," an "identifier" that "identifies an entity" and the claims relationships among them. Further, AWS fails to explain how Neimat discloses a "location addition request." |
| **[6.b]** wherein the location server includes a processor; and | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.g]. As explained above, Neimat fails to disclose a "location server." |
| **[6.c]** programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.g]. As explained above, Neimat does not disclose "the location server," "location query," "location information," or the claimed relationships among them. Further, Neimat does not disclose "the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity" or "return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity," as the file servers in Neimat do not store or return data location information. |

EXHIBIT 1C: U.S. 7,814,170 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity. | The file servers instead store records and relationships between memory addresses and server addresses, and return records. *See, e.g.*, Neimat at 4:40-60, 7:48-8:15. Moreover, each file servers stores the full set of relationships between memory addresses and server addresses. *See, e.g.*, Neimat at 5:49-67. Furthermore, the servers do not send redirect messages, but instead merely communicate with other servers if needed. Finally, Neimat discloses no way for an incorrect file server to know what the correct file server is, and instead merely teaches successively generating additional memory addresses until the correct server is found. |
| **[8]** The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information. | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.g, 6.a-6.c]. |
| **[12]** The system of claim 9, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers. | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.g, 2, 6.a-6.c]. AWS failed to show that this limitation is described in Neimat or rendered obvious. Further, AWS failed to provide any evidence that claim 9, from which claim 12 depends, is disclosed by DNS or the Karger references. |
| **[15.Preamble]** A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising: | Kove denies that this element is disclosed by Neimat. *See* claim [1.pre-1.g.]. |
| **[15.a]** correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality | Kove denies that this element is disclosed by DNS. *See* claim [1.a and 1.d.]. |

EXHIBIT 1C: U.S. 7,814,170 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| of data entities, wherein the data entities are stored in corresponding locations in the network; | |
| [15.b] receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities; | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.f, 6.a]. |
| [15.c] determining which of the plurality of location servers includes the location information; | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.g, 6.c.]. |
| [15.d] sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.g, 6.a, 6.c.]. |
| [15.e] sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information. | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.g, 6.a, 6.c.]. |
| [17] The method of claim 16, wherein each one of the plurality of location servers comprises a portion of an indexed table of the identifiers and corresponding associated locations, and wherein | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.a-1.g, 6.a, 6.c.]. |

EXHIBIT 1C: U.S. 7,814,170 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420[2,3] |
|---|---|
| determining which of the plurality of location servers includes the location information comprises applying one of the identifiers to a hash function to look up corresponding associated locations in the indexed table, the one of the identifiers identifying the data entity. | |

EXHIBIT 1D: U.S. 7,814,170 Validity Claim Chart in View of Minami et al.

AWS purports to assert that claims 1, 2, 6, 8, 12, 15, and 17 of U.S. Patent No. 7,814,170 ("the '170 patent") are obvious in view of the combination of U.S. Patent No. 6,212,521 to Minami ("Minami"), DNS, and Karger '618/420. AWS further alleges that the operation of DNS is described in BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman. But AWS has failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| **[1.Preamble]** A system for managing data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove admits that Minami discloses a system for managing data stored in a distributed network. |
| **[1.a]** a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and | Kove denies that this element is disclosed by Minami. Minami does not disclose the claimed "identifier string," but instead describes a non-unique keyword that does not uniquely identify an entity. *See, e.g.,* Neimat at 8:61-9:67 (search keywords may be mapped to multiple data objects, as well as to different data objects within different "areas" of the network); Fig. 3, Fig. 20. An "identifier string" is |

---

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[3] Kove incorporates by reference Exhibit 1A of its Contentions, which discusses DNS. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276, which discusses DNS.

EXHIBIT 1D: U.S. 7,814,170 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| | expressly described in the '170 patent as "a *unique* string with which zero or more location strings are associated in an NDTP server." '170 patent at 4:10-12 (emphasis added). The identifier string must "be unique to a particular entity," '170 patent at 4:39-49, i.e. it cannot identify more than one data entity.<br><br>Minami does not disclose "a data repository," but instead describes servers that store both non-unique keywords and records. Data location servers and data repositories are, however, separate machines within the distributed network architecture claimed by the '170 patent. *See, e.g.*, '170 patent at Fig. 11, 2:30-45 (describing the "data repository" and "a first server entity operative to locate data" as separate components), 4:58-67 ("When a query is performed for an entity key, the NDTP server supplies the set of data repositories in which data may be found for that entity key."). The prosecution history further supports this separation. |
| **[1.b]** a data location server network comprising a plurality of data location servers, | Kove denies that this element is disclosed by Minami or other references, or that it is rendered obvious.<br><br>*See* claim [1.a].<br><br>The specification of the '170 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from NDTP clients." '170 patent at 4:17-20 (emphasis added). Specifically, the "location servers" of the '170 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See* '170 patent at 4:14-17 (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the entity key and the data repository's data location specifier." '170 patent at 4:61-64. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as |

EXHIBIT 1D: U.S. 7,814,170 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| | data associated with an identifier is added to a new location. *See, e.g.,* '170 patent at Abstract ("According to the protocol, a location string can be spontaneously and dynamically changed"), 2:22-26 ("Relationships between identification strings and location strings can be dynamically and spontaneously manipulated thus allowing the corresponding data relationships also to change dynamically, spontaneously, and efficiently"), 20:42-45 ("it is the manipulation of dynamic and spontaneous relationships between indices and locations, not the indices and locations, that is the core significance").

AWS fails to explain how the primary servers in Minami are "data location servers," and in fact concedes that they are not. Moreover, Minami does not disclose the claimed "data location server network" or "a plurality of data location servers." The primary servers in Minami are not data location servers. The servers in Minami do not store data location information and instead store non-unique keywords and records, *i.e.,* the data itself. *See, e.g.,* Neimat at 8:61-9:67; Fig. 3, Fig. 20. Further, the primary servers of Minami cannot determine which other primary servers store location information for an identifier, as not all of the servers in Minami can determine the appropriate server; multiple servers can be involved, and other functions that are unknown to a particular server can be used. *See, e.g.,* Neimat at 8:61-9:15, 10:36-60 (a "primary hash function unit 109 and secondary hash function unit 111 are used to obtain a primary and secondary server identifiers, respectively, from a given search keyword."). Nor do primary servers have identifier/location mappings, as they do not have identifiers (as described for 1.a) and do not have locations that are associated with identifiers/entities. Primary server identifiers are not proper locations for an entity's data. Clients in Minami cannot update identifier/location mappings in primary servers.

With respect to "location server" (and this claim limitation), AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Minami with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to |

EXHIBIT 1D: U.S. 7,814,170 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| | supply the claim limitations missing from Minami's disclosure. AWS asserts that Minami would have been combined with the Data Location References because (1) the "concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science"; (2) "the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science," and (3) "one of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system." These statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine features from any known distributed network with any other known distributed network, since all distributed networks have common goals (e.g., to improve system performance, speed, and efficiency). Moreover, merely doubling any location server, which is not described or rendered obvious, would not yield the claimed invention.

Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references Amazon seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the secondary references, such as DNS, do not disclose "location servers" or many other claim elements for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS.

AWS's assertion that "location is not necessary" is wrong, as evidenced by the plain language of the claims as well as the discussion of location in the specification and |

EXHIBIT 1D: U.S. 7,814,170 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| | prosecution history. AWS's efforts to use the '170 patent itself to support an obviousness argument necessarily fails. |
| **[1.c]** wherein data location information for a plurality of data entities is stored in the data location server network, | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1.a-1.b].<br><br>AWS fails to explain how purported data location information is "stored" in the purported data location server network. Moreover, Minami does not disclose "data location information for a plurality of data entities" or "the data location server network." The servers in Minami are not data location servers and do not store data location information. The servers instead store non-unique keywords and records. |
| **[1.d]** at least one of the plurality of data location servers includes location information associated with the identifier string, | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1.a-1.c].<br><br>AWS fails to explain how a purported data location server "includes location information." Moreover, as described above, Minami does not disclose "data location servers," "location information," or "identifier string," or the claimed relationships among them. |
| **[1.e]** each one of the plurality of data location servers comprises a processor and a portion of the data location information, | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1.a-1.d].<br><br>As described above, Minami does not disclose "data location servers," "data location information," or the claimed relationships among them. Further, Minami does not disclose "each one of the plurality of data location servers comprises . . . a portion of the data location information," as the primary servers in Minami do not store data location information. |

EXHIBIT 1D: U.S. 7,814,170 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| **[1.f]** the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and | Kove denies that this element is disclosed by Minami or other references, or that it is rendered obvious.<br><br>*See* claim [1.a-1.e].<br><br>As described above, Minami does not disclose "data location servers," "data location information," "portion of the data location information," or the claimed relationships among them.<br><br>As AWS concedes, Minami does not disclose a hash function or this limitation more broadly.<br><br>The hash function of claim 1 is used externally to allocate and retrieve particular sets of identifier/location mappings from particular data location servers. '170 patent at 15:12-18 ("The appropriate NDTP server is selected from the table…by applying a [hash] function to the identifier string and using the function result as an index into the NDTP server table."). AWS's contention that this limitation ("hash function") would be obvious in view of Minami and the Karger references is unavailing. AWS's contention that hash functions were well-known at the time of the '170 patent is irrelevant to an assessment of the obviousness of applying a hash function to organize data location information across data location servers. AWS's improper reliance on the asserted patent's specification and case law (*Symantec*) are unavailing for the same reasons. AWS fails to adduce a single reference that either discloses or suggests the application of hash functions to organize data location information: both Karger references pertain to the organization of data across servers housing that data, rather than to the organization of location information about that data across multiple location servers. *See* U.S. Patent No. 6,553,420 to Karger at col. 3:23-50 (disclosing the use of a hash function to retrieve a document from a server). AWS's references neither teach nor suggest the problem that the '170 patent is directed to solve: the separation of the "where" (a constellation of location servers informing their clients where a data entity is stored) from the "what" (the data entities themselves) in an extremely large distributed environment. '170 patent at 3:14-25, 20:17-29 ("NDTP… supports an architecture, in |

EXHIBIT 1D: U.S. 7,814,170 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| | which information about where data associated with particular application entities, can be managed and obtained independently of the data itself."). Indeed, the Karger references do not describe the basic architecture of the claim (separating location information from data), data location information or location information (relationship between identifiers and locations or location servers), identifiers (not uniquely associated with entities), location servers (no identifier/location mappings or modifying this information in response to client requests), or clients (no modifying identifier/location mappings). The POSA would have no rationale to combine Minami with either of the Karger references (or any other reference); to the contrary, for the reasons above, Minami and the Karger references teach away from the claimed invention. <br><br> Further, AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Minami with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Minami's disclosure. AWS asserts that hash functions could be combined with Minami and various other references because they are purportedly well known. Its statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine hash functions into any disclosure. The mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why the POSA would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references AWS seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the specifically identified references do not disclose one or more of the claim limitations for the reasons given with |

EXHIBIT 1D: U.S. 7,814,170 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| | respect to those individual references, to the extent those references were even addressed by AWS. |
| **[1.g]** each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string. | Kove denies that this element is disclosed by Minami. *See* claim [1.a-1.f]. As described above, Minami does not disclose "data location servers," "identifier string," or the claimed relationships among them. Further, Minami does not disclose "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string," as not all of the primary servers in Minami can determine the appropriate server; multiple servers can be involved, and other functions that are unknown to a particular server can be used. *See, e.g.,* Neimat at 8:61-9:15, 10:36-60 (a "primary hash function unit 109 and secondary hash function unit 111 are used to obtain a primary and secondary server identifiers, respectively, from a given search keyword."). |
| **[2]** The system of claim 1, wherein the location information comprises any portion of a hash table generated with the hash function. | Kove denies that this element is disclosed by Minami or other references, or that it is rendered obvious. *See* claim [1.a-1.g]. As described above, Minami does not disclose "location information." Moreover, Minami simply does not disclose a hash table, or a hash table with the claimed relationships. AWS concedes as much. |
| **[6.Preamble]** A system for managing data location information and providing the data location information in response to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Minami. *See* claim [1a-1.g]. |

EXHIBIT 1D: U.S. 7,814,170 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| **[6.a]** a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity; | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1a-1.g].<br><br>AWS has failed to provide any evidence for this limitation. |
| **[6.b]** wherein the location server includes a processor; and | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1a-1.g].<br><br>AWS has failed to provide sufficient evidence for this limitation. |
| **[6.c]** programming logic stored on the location server, wherein the programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1a-1.g].<br><br>AWS has failed to provide sufficient evidence for this limitation. Further, Minami does not disclose "wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity." Minami does not disclose redirect messages back to the client, but instead has its servers pass messages to one another. *See, e.g.*, Neimat at 8:61-9:67. Further, the servers in Minami are not data location servers and do not store data location information (they store records), or information from which a client could calculate a location, or a second data location server that contains a location string. |

9

EXHIBIT 1D: U.S. 7,814,170 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| redirect message comprising a list of at least one other location server known to have the location information for the desired entity. | |
| [8] The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information. | Kove denies that this element is disclosed by Minami. *See* claim [1a-1.g]. AWS has failed to provide sufficient evidence for this limitation. |
| [12] The system of claim 9, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers. | Kove denies that this element is disclosed by Minami. *See* claim [1a-1.g]. AWS has failed to provide sufficient evidence for this limitation. Further, AWS failed to provide any evidence that claim 9, from which claim 12 depends, is disclosed by Minami, DNS, or the Karger references. |
| [15.Preamble] A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising: | Kove denies that this element is disclosed by Minami. *See* claim [1pre-1.g]. AWS has failed to provide sufficient evidence for this limitation. |
| [15.a] correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network; | Kove denies that this element is disclosed by Minami. *See* claim [1pre-1.g]. AWS has failed to provide any evidence for this limitation. |

EXHIBIT 1D: U.S. 7,814,170 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| **[15.b]** receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities; | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.g].<br><br>AWS has failed to provide sufficient evidence for this limitation. |
| **[15.c]** determining which of the plurality of location servers includes the location information; | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.g].<br><br>AWS has failed to provide sufficient evidence for this limitation. |
| **[15.d]** sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.g].<br><br>AWS has failed to provide sufficient evidence for this limitation. |
| **[15.e]** sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information. | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.g].<br><br>AWS has failed to provide sufficient evidence for this limitation. |
| **[17]** The method of claim 16, wherein each one of the plurality of location servers comprises a portion of an indexed table of the identifiers and corresponding associated locations, and wherein determining which of the plurality of | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.g].<br><br>AWS has failed to provide sufficient evidence for this limitation. |

EXHIBIT 1D: U.S. 7,814,170 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,814,170 | U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420[2,3] |
|---|---|
| location servers includes the location information comprises applying one of the identifiers to a hash function to look up corresponding associated locations in the indexed table, the one of the identifiers identifying the data entity. | |

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

AWS purports to assert that U.S. Patent No. 7,103,640 ("the '640 patent") claims 17, 18 and 24 are rendered obvious by are rendered obvious by OracleNamesAdminGuide alone or in combination with OracleUnleashed, Steen, and/or Wolff. But AWS has failed to establish that OracleNamesAdminGuide, OracleUnleashed, and/or Steen were publicly available before the priority date of the '640 patent AWS alleges that AWS's Exhibit 1A reflect "the additional requirements for the claims based on Kove's statements in reexamination and are consistent with Amazon's proposed constructions reflecting those statements." 2023-03-02 Exhibit 2A-2B at 1 (citation omitted). Kove does not agree that Kove's statements created any additional claim requirements. Kove believes that OracleNamesAdminGuide alone or in combination with OracleUnleashed, Steen, and/or Wolff are deficient based on the claim requirements imposed by the plain language of the claims and the current claim construction order as well as AWS's proposed constructions. *See* Joint Claim Construction Chart (Updated) (Dkt. No. 382) and Claim Construction Order (Updated) (Dkt. No. 484).

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| **[17.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | "Location information" is construed as "information pertaining to one or more locations of data and/or the identities of one or more location servers."[4]<br><br>*See* claim [1.a] re "data location information" and "system for retrieving data location information for data stored in a distributed network." |

---

[1] Kove uses the information currently available to it to provide its responses to AWS's Fifth Amended Final Unenforceability and Invalidity Contentions ("FAFUIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFUIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[2] Kove incorporates by reference its Response to the Office Action and Notice of Intent to Issue Reexamination Certificate in the Reexamination Proceeding of the '170 patent (90/019,035).

[3] AWS does not present any contentions regarding Wolff with regards to claim 17.

[4] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

1

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | To the extent the preamble is limiting, Kove denies that OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff discloses the limitations of the preamble, or that it is rendered obvious. <br><br> OracleNamesAdminGuide lacks the non-hierarchical structure to satisfy the claim requirements. For example, OracleNamesAdminGuide's hierarchical structure is illustrated in Fig. C-4 (reproduced below). <br><br>  <br> Figure C – 4 Network Messages in a Multi–Level Foreign Name Resolution <br><br> OracleNamesAdminGuide, Figure C-4 at 191. <br><br> OracleNamesAdminGuide describes the activities that must take place in response to a client query for information (in this case, the network address of the "Destination Server"): "1. The client sends request to preferred Names Server in its local region (DR1). 2. The preferred Names Server in DR1 issues request for the Names Servers |

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | authoritative for the destination server (in region DR2.1). 3. The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2. 4. The receiving server in DR2 forwards the request to a Names Server in region DR2.1. 5. The name is retrieved from its authoritative Names Server in DR2.1. 6. The names Server in region DR2 caches the answer and returns it to the root. 7. The root caches the answer and returns it to the preferred Names Server in region DR1. 8. The preferred Names Server caches the answer and returns it to the client. 9. The client establishes a connection to the destination server." *Id*. at 190-191.<br><br>Retrieving a network address in the tree-node configuration in Figure C-4 require nine (9) traversals up, down, and back through the hierarchal structure. (Id). As such, the organizational structure is limited in efficiency by its underlying network paths and network relationships that require queries to make hierarchical traversals until it finds the server with the sought-after information (assuming the information exists somewhere in the network). *See id.*<br><br>OracleNamesAdminGuide acknowledged that a network may follow a flat naming model or a hierarchical naming model but cautioned that "[a] flat naming model should be used when the actual number of services is small (under 100), when the likelihood of future growth of network services is *minimal*…." *Id*. at 40) (emphasis added). More pointedly, OracleNamesAdminGuide ***discouraged*** the use of "flat" structures in larger networks, in contrast to hierarchical structures which Oracle Admin noted "allow[s] for future growth or greater naming autonomy." *Id*. at 41.<br><br>The Name Servers in OracleNamesAdminGuide's hierarchical configuration do not have any knowledge of what is stored in other Names Server in the network, beyond their direct children. *Id*. at 191. If a queried server or its direct children do not have the requested information, the server knows only to forward a query to the next Names Server up the tree. Names Servers are ignorant as to what information other Names Servers |

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | beyond their direct children may have and have no way of finding out. This was the common and accepted configuration at the time of the invention.<br><br>Oracle Names is dependent on its network paths. *Id.* at 56-57. Names Servers do not have any knowledge of which Names Server contains the address to the requested network service (beyond itself and its direct children) nor is anything taught about *any* (much less *every*) Names Server being configured to determine the location of the requested information. Oracle Admin's hierarchical structure does not enable a given Names Server the ability to know or determine what is stored in every Names Server in the network.<br><br>Steen also does not teach or suggest a non-hierarchical configuration. Steen illustrates in Fig. 2 its hierarchical configuration:<br><br><br>■ **Figure 2.** *The logical organization of the location service as a virtual search tree.*<br>Steen at Fig. 2.<br><br>Like, OracleNamesAdminGuide, Steen's hierarchical configuration do not have any knowledge of what is stored in the other nodes in the network, beyond their direct parents/children. *See e.g.,* Steen at 107-108. As such, Oracle Admin's hierarchical |

4

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
|  | structure does not enable a given Names Server the ability to know or determine what is stored in every Names Server in the network. |
| **[17.a]** a plurality of data repositories configured to store data, wherein the data is associated with a respective identifier string in each data repository; | "Identifier" is construed as a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."[5]<br><br>Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. *See* claim [17.Preamble] re hierarchical configuration.<br><br>OracleNamesAdminGuide does not teach or suggest an identifier string that is a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server." OracleNamesAdminGuide describes using service names (e.g., canonical names or aliases) or database links to retrieve network addresses of network objects and services. OracleNamesAdminGuide, 52-54. For example, OracleNamesAdminGuide describes the following process when attempting to retrieve a network address for a database service "1. The client application issues a connection request to SQL*Net of the form: sqlplus scott/tiger@POULTRY where POULTRY is a database service name defined in the Oracle Names Server. SQL*Net determines from the client configuration in the SQLNET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net sends the Names Server a request to resolve the name POULTRY.WORLD. 2. The Names Server receives the request, looks it up in the cache, then sends the response back to the client. 3. The client receives the answer and substitutes the address in place of the initial name POULTRY. 4. The client contacts POULTRY and establishes a standard SQL*Net client–server connection." *Id.*, 52-53. In this example, the network addresses service name is "POULTRY." |

---

[5] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | However, the service names or database links are not unique. For example, OracleNamesAdminGuide allows users to create public and private names or database links to network services or objects. OracleNamesAdminGuide defines a public database links as "A database link created by a DBA on a local database which is accessible to all users on that database." *Id.*, 202. Furthermore, OracleNamesAdminGuide defines a private database link as "A DBlink created by one user for his or her exclusive use." [Id]. OracleNamesAdminGuide does not restrict users from assigning identical private and public database links to two different databases. <br><br> OracleNamesAdminGuide provides numerous examples of allowing users to use non-unique names or links for network services or objects. For example, OracleNamesAdminGuide describes the process of locating a database link as follows: "Server TOM receives the SQL statement shown and checks its data dictionary for a private or public database link called JERRY. When it does not find one, SQL*Net determines from the client configuration in the SQLNET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net then sends the Names Server a request to resolve the database link name JERRY.WORLD." OracleNamesAdminGuide, 54. OracleNamesAdminGuide further states "When a database link is used to select information from a remote database table (for example, SELECT * FROM EMP@HR.US.ORACLE.COM), Oracle searches for a connect descriptor in the following locations in the following order: 1. the user's private database links 2. the database public database links 3. the Oracle Names Server global database links." *Id.*, 110. Therefore, when processing a query, OracleNamesAdminGuide first checks for the name or database link in the user's private database links. To this end, this configuration does not prevent the same name or link from being included in the user's private database links and the public database links. <br><br> OracleNamesAdminGuide's use of non-unique names or database links for network services or objects is further illustrated in its querying process. OracleNamesAdminGuide teaches that "If the QUERY command is used with just a name as a parameter, the Names Server responds with the number of pieces of data with |

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | that name, and the time required to complete the operation." *Id.*, 129. OracleNamesAdminGuide provides the following example of a query:<br><br>Example:<br><br>```<br>NAMESCTL> QUERY BONES.DEM.MEDICINE A.SMD<br>Total response time:    0.04 seconds<br>Response status:       normal, successful completion<br>Authoritative answer:  yes<br>Number of answers:     1<br>Canonical name:        bones.dem.medicine<br>TTL:                   1 day<br>Alias translations:<br>    from:              bones.dem.medicine<br>    to:                bones.dem.medicine<br>Answers:<br>    data type is "a.smd"<br>        Syntax is ADDR:...(DESCRIPTION=(ADDRESS=<br>    (COMMUNITY=tcp)(PROTOCOL=TCP)(Host=cowboy)<br>    (Port=1522))(CONNECT_DATA=(SID=rodeo)))<br>```<br><br>Id.<br><br>In this example, the "number of answers" is 1. However, if multiple network objects are found using the same name or database link, the number of answers would be more than 1. As such multiple network objects or database links may be retrieved using the same name or database link.<br><br>Furthermore, OracleNamesAdminGuide requires that the query command include the network object name and network object type. *Id.*, 129. As such, OracleNamesAdminGuide attempts to identify network object using the network object name and network object type. This further confirms that the network object name is non-unique; otherwise, the network object type would not be needed to locate the network object. Therefore, OracleNamesAdminGuide does not restrict the network objects in the network from having non-unique names. |

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | Furthermore, Oracle Names's Names Servers are not restricted from storing identifiers where each identifier identifies a single entity, as required by the claims. Oracle Names allows for users to assign public and private names to network services and objects. *See e.g.*, OracleNamesAdminGuide, 54, 110. Oracle Names allows for the public and private names to be identical, and the same name can be used to identify multiple entities. *Id*.<br><br>OracleNamesAdminGuide also does not teach or suggest the required relationship among the terms "identifier," "entity," and "location information." In OracleNamesAdminGuide, if a database is the data entity, and the identifier is the network address alias of that database, then data within that database comprises the data entity, and the "location information associated with the identifier string" is the network address of the database (and not the alias for that network address, e.g., POULTRY). If any data comprising the data entity (i.e., the database in this scenario) is moved, the association between the location information and the identifier string is broken – in other words, POULTRY will still only point to the database's network location but is not otherwise associated with location information for whatever data may have moved from the POULTRY database. *Id*. at 30-32; 50-54.<br><br>Steen does not teach or suggest an identifier that identifies a single entity. Specifically, Steen states "Unlike cellular telephones, computer objects often have two or more addresses. For example, a replicated file will be known to its users under one name, which is mapped to several addresses, one for each copy." Steen, 104. Here, each copy of the file is a separate entity. Therefore, in Steen an identifier identifies multiple entities.<br><br>Steen further states "As an illustration, consider an officeless company whose employees are located across the country, normally working at home, or visiting customers. Using our approach, we assign a lifetime and location-independent telephone number to the company. This number corresponds to an object handle. A naming or directory service would maintain a mapping between the company's name and it's lifetime telephone number. The telephone number is used by a location service to redirect incoming calls to, for example, the nearest employee currently working. An employee's own telephone |

8

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | number is registered at the location service when he or she starts work, and is unregistered again when he or she finishes. An employee's telephone number corresponds to a contact address. Note that how the company is named, and in which directories its name is registered, is no longer important. Naming has been fully separated from how and where we contact the company." Steen, 105. Again, in Steen's example, the telephone number identifies multiple employees (i.e., multiple entities). Therefore, Steen does not teach or suggest an identifier string that identifies a single entity, as required by the claims.

OracleUnleashed is neither relied upon for nor does it teach "a data repository configured to store a data entity, wherein an identifier string identifies the data entity."
Specifically, OracleUnleashed does not teach or suggest an identifier/identifier string that is a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server." OracleUnleashed describes assigning synonyms and/or aliases for tables or views in a database. *See* OracleUnleashed at 219 and 228. However, OracleUnleashed does not teach or suggest a synonym that uniquely identifies a database, table or view. For example, OracleUnleashed describes using private or public synonyms to identify a database, table, or view. *See e.g., id.* Multiple users in the database network may use the same synonym to identify the different databases, tables, or views. *See e.g., id.* That is, a first user may use synonym X to refer to database 1 and a second user in the same database network may also use synonym X to refer to database 2. *See e.g., id.* Additionally, while OracleUnleashed mentions a Names Server, OracleUnleashed does not describe whether the names stored in the Names Server uniquely identify a single entity. *See e.g., id.* at 424. Therefore, OracleUnleashed does not teach or suggest an identifier that uniquely identifies an entity.

Wolff is neither relied upon for nor does it teach "a data repository configured to store a data entity, wherein an identifier string identifies the data entity." |

9

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| **[17.b]** a data location sewer [sic] network having a plurality of data location servers, each of the plurality of data location servers containing location strings associated with respective identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps: | "Location server" is construed as "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients"[6]<br><br>"Client" is construed as "a network-attached component (which may be software or hardware) that initiates update or lookup of identifier/location mappings from a location server with location request messages."[7]<br><br>Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. *See* claim [17.Preambe]-[17.a] re identifier/identifier string, location server, location information, and hierarchical configuration.<br><br>As indicated above, OracleNamesAdminGuide, Steen, and OracleUnleashed do not teach or suggest an identifier/identifier string that identifies a single entity. Therefore, OracleNamesAdminGuide and Steen cannot teach or suggest "a network-attached component that maintains a set of **identifier/location** mappings that are modified or returned in response to location request messages from clients." Furthermore, OracleNamesAdminGuide, Steen, and OracleUnleashed are completely silent regarding modifying identifier/location mappings in response to receiving a *location* request. *See* claim [17.Preambe]-[17.a] (emphasis added).<br><br>Wolff is neither relied upon for nor does it teach this element. |
| **[17.c]** in response to receiving a data location request from a client to retrieve a location string associated with an | "Location" is construed as "an encoding that is a member of a set of associations with an identifier in a location server, and that specifies where data pertaining to the entity identified by the identifier is stored."[8] |

---

[6] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

[7] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

[8] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. *See* claim [17.Preambe]-[17.b] re identifier/identifier string, location server, and location information, and hierarchical configuration.

This claim element requires that if a data location server does not contain the desired location string, the data location server transmits a redirect message to the client. The redirect message contains information for use by the client the location of a different data location server that contains the desired location string. That is, the information allows the client to determine which data location server contains the location string with certainty and specificity.

OracleNamesAdminGuide does not teach or suggest transmitting a redirect message that contains "information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string."

Specifically, OracleNamesAdminGuide does not teach or suggest each of the plurality of data location servers having computer executable code configured to transmit a redirect message to the client in response to receiving a data location request from the client. AWS alleges that if Forwarding is disabled in OracleNamesAdminGuide, "The initial Names Server that received the request will send a message to the client where the message contains the address of a second Names Server containing the requested location string, then the client will send its request to the address of the second Names Server." FAFUIC, Exhibit 2A at 50. This is categorically false.

OracleNamesAdminGuide makes clear that, even in the event FORWARDING AVAILABLE is set to OFF, "the work is simply displaced from the |

11

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | non-forwarding Names Server to the requesting Names Server." OracleNamesAdminGuide goes on to specify:<br><br>WARNING: If FORWARDING_AVAILABLE is set to off, any clients who rely directly on that Names Server will be unable to resolve foreign names. **Clients are not capable of redirecting their requests as Names Servers would**. OracleNamesAdminGuide at 137 (emphasis added).<br><br>Thus, OracleNamesAdminGuide teaches that responses that are returned in a FORWARDING_AVAILABLE OFF situation does not return anything to the client, which is "not capable of redirecting their requests as Names Servers would," but rather to the requesting Names Server. Therefore, OracleNamesAdminGuide cannot transmit redirect messages to clients.<br><br>Furthermore, OracleNamesAdminGuide teaches away from transmitting redirect messages to a client. AWS argues "OracleNamesAdminGuide states this is an "intended" preference rather than a requirement. Illustrating this isn't a requirement, OracleNamesAdminGuide specifies that a Names Server with this forwarding command disabled may have "clients who rely directly on that Names Server. […] OracleNamesAdminGuide warns that, when forwarding is disabled and the Names Server sends redirect messages to the client, the server can't resolve request inquiries for "foreign names." [citation omitted]. But this concern is irrelevant to OracleNamesAdminGuide's non-hierarchical configuration because all the data entities are locating in the same region, thus resulting in no foreign names." FAFUIC, Exhibit 2A at 54. However, this is incorrect. OracleNamesAdminGuide explicitly states "Clients are not capable of redirecting their requests as Names Servers would." OracleNamesAdminGuide at 137. OracleNamesAdminGuide never describes this feature with respect to a flat naming model. It is unclear whether this feature is available in the flat naming model. As such, OracleNamesAdminGuide explicitly teaches away from transmitting a redirect message to a client. |

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | AWS further points to OracleNamesAdminGuide Figure 3-8 to satisfy the claim requirements. OracleNamesAdminGuide's Figure 3-8 depicts a flat naming model including two names servers. OracleNamesAdminGuide at 45. With respect to Figure 3-8 AWS alleges, "a POSITA would understand the upper Names Server transmits a message to the client where the message includes in the address of the would have found this limitation obvious. For instance, to optimize query efficiency, a POSITA would have found it obvious to have each Names Server in OracleNamesAdminGuide's nonhierarchical configuration be able to transmit a redirect message to the client having information the client can use to calculate the location of a different Names Server that contains the requested location string. A POSITA would have been motivated to do so because this would further the use of OracleNamesAdminGuide's SQL *Net and Names Servers to respond to certain data requests and lessen the workload of the initially-requested Names Server because it no longer needs to perform forwarding functions to other servers containing the requested information." FAFUIC, Exhibit 2A at 51-52. <br><br> However, AWS's rationale is erroneous. AWS provides conclusory statements without any support as to why or how a POSA would understand that an "upper" Names Server would transmit a message including the address of the address of the "lower" Names Server. Indeed, OracleNamesAdminGuide clearly teaches away from transmitting redirect messages to clients. *See* OracleNamesAdminGuide at 137. Additionally, OracleNamesAdminGuide never describes redirect messages with respect to Figure 3-8. In fact, OracleNamesAdminGuide never describes forwarding with respect to Figure 3-8. As such, any rationale to modify OracleNamesAdminGuide such that it can transmit a redirect message to a client is based on impermissible hindsight. Additionally, there is no reasonable expectation of success of modifying OracleNamesAdminGuide to such that it can transmit a redirect message to a client because OracleNamesAdminGuide teaches away from it and doing so would require extensive reengineering. <br><br> Furthermore, OracleNamesAdminGuide does not teach or suggest transmitting a redirect message to the client that allows the client to calculate the location of the authoritative |

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | server with specificity. Rather, OracleNamesAdminGuide states that, if FORWARDING_AVAILABLE is set to OFF:<br><br>Rather than forward the request and return the answer the Names Server simply tells the requestor the address of the Names Server that can answer the request. Note that there is no overall reduction in work; the work is simply displaced from the non–forwarding Names Server to the requesting Names Server.<br><br>WARNING: If FORWARDING_AVAILABLE is set to off, any clients who rely directly on that Names Server will be unable to resolve foreign names. Clients are not capable of redirecting their requests as Names Servers would. Their requests will fail at that point, even if other Names Servers are listed in the NAMES.PREFERRED_SERVERS configuration parameter. OracleNamesAdminGuide at 137.<br><br>As Oracle Admin explains, turning off "name request forwarding" simply shifts the "work" from the queried server to the server that queried it (requesting Names Server). *Id.* That "work" is querying the next server above it in the network path. Nowhere in OracleNamesAdminGuide is there any contemplation that the next server is somehow in possession of the requested information – rather, the next server "can" answer the request (if it happens to have the information) but will not necessarily do so (as required by element [17.c]).<br><br>AWS argues that "the '640 Patent expressly teaches that returning the address of next location server above it in the network path would meet claim element 17.c.ii because that server would "function as a next client." FAFUIC, Exhibit 2A at 53. However, AWS's reasoning is unfounded. Even if assuming arguendo that a names server may act as the "client," the OracleNamesAdminGuide's alleged redirect message does not include information that allows the client to calculate the location of the authoritative server *with specificity*. That is, there is no certainty that the next names server in the network path will contain the desired location string. |

14

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | Therefore, OracleNamesAdminGuide does not teach or suggest transmitting a redirect message that contains "information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string." |
| | OracleUnleashed also does not teach or suggest transmitting a redirect message that contains "information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string." While OracleUnleashed describes hashing to partition database tables, OracleUnleashed is silent with respect to redirect messages. *See* OracleUnleashed at 394, 638. Furthermore, OracleUnleashed is silent with respect to transmitting a message to a client that allows the client to calculate the location of the authoritative server *with specificity*. Therefore, OracleUnleashed does not teach or suggest transmitting a redirect message that contains "information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string." |
| | Steen also does not teach or suggest transmitting a redirect message that contains "information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string." AWS alleges that Steen's hashing allows "ensures each subnode is aware (i.e., knows) the location of any requested location information regardless of which server it is contained on." *See* 2023-03-02 Exhibit 2A, 56-57. |
| | However, Steen states "Our solution is to partition a directory node into one or more *directory subnodes* such that each subnode is responsible for a subset of the records originally stored at the directory node. […] Because communication between directory nodes in the original search tree now takes place between their respective subnodes, each subnode should be aware of how the directory node with which it communicates is actually partitioned. This information is contained in a separate tree management service. This service also maintains the mapping of subnodes to physical nodes. Partitioning and |

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | mapping information is assumed to be relatively stable so that it can be easily cached by subnodes. This assumption is necessary to avoid having to query the management service each time a subnode needs to communicate with its parent or children, which would turn the management service into a potential communication bottleneck. Steen at 107-108 (emphasis in original). That is, each subnode only knows how the directory node with which it communicates. The subnodes are not aware of of the location of *any* requested location information. *Id.* Furthermore, Steen is silent with respect to transmitting a "redirect message." Steen also does not teach or suggest transmitting a message to a client that allows the client to calculate the location of the authoritative server *with specificity*. Therefore, Steen does not teach or suggest returning a redirect message that contains "information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string." <br><br> AWS does not present any contentions regarding Wolff with regards to claim 17. <br><br> Nevertheless, Wolff does not teach or suggest returning "transmitting a redirect message that contains "information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string." <br><br> Wolff describes optimizing network performance using client load rebalancing. Specifically, Wolff states: "Client load rebalancing refers to the ability of a client, enabled with processes in accordance with the current invention, to re-map a path through a plurality of nodes to a resource. The re-mapping may take place in response to a redirection command emanating from an overloaded node, e.g. server. The embodiments disclosed allow more efficient, robust communication between a plurality of clients and a plurality of resources, via a plurality of nodes. Resources can include, but are not limited to, computers, memory devices, imaging devices, printers, and data sets. A data set can include a database or a file system." Wolff, 2:41-51. Furthermore, Wolff states: "In operation at time T=0, normal client 100A is shown accessing memory resource 118 |

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | via path 70 through overloaded server 104. At the same time, aware client 102A is shown accessing memory resource 18, via path 74, through overloaded server 104A. At time T=1, process 102P1, implemented on aware client 102A, detects the overload condition of server 104A, and accesses memory resource 118 via an alternate path 76 through server 106A. Thus, in this subsequent state, the load on server." *Id.*, 5:25-38. As such, in the event of a network bottleneck, Wolff reroutes a client requesting to connect to a memory resource via an alternate path. *Id.*<br><br>Wolff's client does not transmit a location query to the server or node. Rather, Wolff's client transmits a request to connect to a given resource (e.g., memory resource). *Id.*, 2:41-51. Wolff's server or node redirects the client to a different server or node that is not as burdened. *Id.*, 5:25-38. Wolff is completely silent with respect transmitting a redirect message that contains "information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string."<br><br>A POSA would not find it obvious to modify OracleNamesAdminGuide with OracleUnleashed, Steen, and/or Wolff[9] to satisfy the claim limitations because OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolf do not contemplate transmitting a redirect message that contains "redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string." OracleNamesAdminGuide is a manual that describes Oracle 7 products. *See* OracleNamesAdminGuide at 19-26. Specifically, OracleNamesAdminGuide describes the use of Oracle Names products. *See e.g., id.* OracleNamesAdminGuide looks to address issues in networking databases. *See e.g., id.* OracleUnleashed is a manual that describes Oracle 8 products. *See* OracleUnleashed at 8-14. OracleUnleashed looks to address issues with managing databases. *See e.g., id.* Steen describes managing wide-area networks. *See e.g.,* Steen at 105. Steen describes locating mobile objects in a wide- |

---

[9] AWS does not include Wolff in this combination for claim 17.

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | area network. *See e.g., id.* Wolff describes optimizing network performance using client load rebalancing. *See e.g.,* Wolff *at* 2:41-51. Wolff looks to address issues with load balancing in a network. *See e.g.* OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff are not directed to addressing issues such transmitting a redirect message that contains "redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string." As such, any rationale to modify OracleNamesAdminGuide with OracleUnleashed, Steen, and/or Wolff to satisfy the claim limitations is based on impermissible hindsight. Additionally, there is no reasonable expectation of success of satisfying the claim requirements by modifying OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff because doing so would require extensive reengineering of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff. |
| **[18.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [17.Preamble]. |
| **[18.a]** a data repository configured to store data, wherein the data is associated with an identifier string; | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [17.Preamble]-[17.b] re identifier/identifier string, location server, location information, and hierarchical configuration. |
| **[18.b]** a client responsive to a data query to query a data location server for location information associated with the identifier string; | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [17.Preamble]-[17.b] re identifier/identifier string, location server, location information, and hierarchical configuration. |

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| **[18.c]** a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client: | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [17.Preamble]-[17.b] re identifier/identifier string, location server, location information, and hierarchical configuration. |
| **[18.d]** if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string; | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [17.Preamble]-[17.b] re identifier/identifier string, location server, location information, and hierarchical configuration. |
| **[18.e]** if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [17.Preamble]-[17.b] re identifier/identifier string, location server, location information, and hierarchical configuration.<br><br>*See* claim [17.c] re the redirect message.<br><br>A POSA would not find it obvious to modify OracleNamesAdminGuide with OracleUnleashed, Steen, and/or Wolff to satisfy the claim limitations because OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolf do not contemplate transmitting a redirect message that contains "redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string." |

19

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | OracleNamesAdminGuide is a manual that describes Oracle 7 products. *See* OracleNamesAdminGuide at 19-26. Specifically, OracleNamesAdminGuide describes the use of Oracle Names products. *See e.g., id.* OracleNamesAdminGuide looks to address issues in networking databases. *See e.g., id.* OracleUnleashed is a manual that describes Oracle 8 products. *See* OracleUnleashed at 8-14. OracleUnleashed looks to address issues with managing databases. *See e.g., id.* Steen describes managing wide-area networks. *See e.g.,* Steen at 105. Steen describes locating mobile objects in a wide-area network. *See e.g., id.* Wolff describes optimizing network performance using client load rebalancing. *See e.g.,* Wolff *at* 2:41-51. Wolff looks to address issues with load balancing in a network. *See e.g.* OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff are not directed to addressing issues such as transmitting a redirect message that contains "redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string." As such, any rationale to modify OracleNamesAdminGuide with OracleUnleashed, Steen, and/or Wolff to satisfy the claim limitations is based on impermissible hindsight. Additionally, there is no reasonable expectation of success of satisfying the claim requirements by modifying OracleNamesAdminGuide with OracleUnleashed, Steen, and/or Wolff because doing so would require extensive reengineering of OracleNamesAdminGuide. |
| [24] The system of claim 18, wherein the location information comprises a portion of a hash table distributed over the plurality of data location servers. | "Hash table" is construed as "a data structure that stores values in a table, where values are stored and retrieved by applying a hash function to an input and using the function result as an index into the table." [10]

As indicated above, location information is construed as "information pertaining to one or more locations of data and/or the identities of one or more location servers." [11]

Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. |

---

[10] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

[11] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
|  | *See* claim [18.a-18.e].<br><br>AWS alleges that "the '640 Patent acknowledges that motivation existed in a POSITA's general knowledge before the earliest priority date to have OracleNamesAdminGuide's location information comprise a portion of a hash table distributed over the plurality of Names Servers." FAFUIC, Exhibit 2A at 69.  AWS points to '640 patent at 14:64-15:21 and '640 History at 447-48 to support its position.  However, AWS's support merely describes the use of a hash function.  Indeed, the '640 patent never indicates that motivation existed in a POSA's general knowledge before the earliest priority date to have *location information* comprise a *portion* of a hash table distributed over the plurality of Names Servers.  To this end, OracleNamesAdminGuide is completely silent with respect to including a *portion* of the hash table in the location information.  As such, a AWS fails demonstrate why a POSA would not be motivated to modify OracleNamesAdminGuide to include portion of a hash table in the location information distributed over the Names Servers.<br><br>AWS further points to Steen to satisfy the requirements of claim 24.  Steen uses hashing-based methods for partitioning nodes.  Steen at 108. However, Steen is silent regarding including a *portion* of the hash table in the location information distributed over the data location servers.  Furthermore, Steen does not contemplate a distributed hash table.  In this regard, a POSA would not find it obvious to modify OracleNamesAdminGuide and/or Steen to include a portion of the hash table in the location information distributed over the data location servers.<br><br>OracleUnleashed also does not teach or suggest including a *portion* of the hash table in the location information distributed over the data location servers. OracleUnleashed describes hashing as follows: |

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | A good candidate for hashing has the following properties: <br><br> • *Unique cluster keys*. Hashing performs best when the value of the cluster key is fairly unique. Because the data is laid out based on the key value, a column with a lot of duplicates is not a good candidate for the hash key. <br><br> • *Equality queries*. The majority of queries are equality queries on the cluster key. This type of query reaps the greatest benefit from the hash cluster. <br><br> • *Static size*. Hashing is optimal when the table or tables are fairly static in size. If the table stays within its initial storage allocation, you do not see any performance degradation from using a hash cluster; but if the table grows out of its initial allocation, performance can degrade. In this case, overflow blocks are required. <br><br> • *Constant cluster key*. Hashing can also degrade performance when the value of the cluster key changes. Because the location of the block in which the data resides is based on the cluster key value, a change in that value can cause the row to migrate to maintain the cluster. <br><br> • *No table scans*. Hashing can degrade the performance of table scans because the scan must read blocks that may not have much data in them. Because the table is originally created by laying out the data in the cluster based on the value of the cluster key, there may be some blocks that have few rows. <br><br> Do not use a hash cluster on a table if the application frequently modifies the cluster key or the table is constantly being modified. Because the cluster key is based on a calculation, you can incur significant overhead by constantly recalculating the key. <br><br> OracleUnleashed at 394. <br><br> OracleUnleashed is silent regarding including a *portion* of the hash table in the location information distributed over the data location servers. <br><br> Furthermore, a POSA would not find it obvious or be motivated to modify OracleNamesAdminGuide, Steen, and/or OracleUnleashed to satisfy the claim requirements because OracleNamesAdminGuide, Steen, and/or OracleUnleashed did not |

EXHIBIT 2A: U.S. 7,103,640 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff.

| U.S. Patent No. 7,103,640 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 17, 18, and 24[1,2,3] |
|---|---|
| | contemplate a distributed hash table or including a portion of the hash table in the location information distributed over the data location servers. |
| | A POSA would not find it obvious to modify OracleNamesAdminGuide with OracleUnleashed, Steen, and/or Wolff to satisfy the claim limitations because OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolf do not contemplate including a *portion* of the hash table in the location information distributed over the data location servers. OracleNamesAdminGuide is a manual that describes Oracle 7 products. *See* OracleNamesAdminGuide at 19-26. Specifically, OracleNamesAdminGuide describes the use of Oracle Names products. *See e.g., id.* OracleNamesAdminGuide looks to address issues in networking databases. *See e.g., id.* OracleUnleashed is a manual that describes Oracle 8 products. *See* OracleUnleashed at 8-14. OracleUnleashed looks to address issues with managing databases. *See e.g., id.* Steen describes managing wide-area networks. *See e.g.,* Steen at 105. Steen describes locating mobile objects in a wide-area network. *See e.g., id.* Wolff describes optimizing network performance using client load rebalancing. *See e.g.,* Wolff *at* 2:41-51. Wolff looks to address issues with load balancing in a network. *See e.g.* OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff are not directed to addressing issues such including a *portion* of the hash table in the location information distributed over the data location servers. As such, any rationale to modify OracleNamesAdminGuide with OracleUnleashed, Steen, and/or Wolff to satisfy the claim limitations is based on impermissible hindsight. Additionally, there is no reasonable expectation of success of satisfying the claim requirements by modifying OracleNamesAdminGuide with OracleUnleashed, Steen, and/or Wolff because doing so would require extensive reengineering of OracleNamesAdminGuide. |

EXHIBIT 2B: U.S. 7,103,640 Validity Claim Chart in View of Skagerwall and Wolff.

AWS purports to assert that U.S. Patent No. 7,103,640 ("the '640 patent") claims 17 and 18 are rendered obvious by Skagerwall alone or in combination with Wolff. AWS alleges that AWS's Exhibit 1B reflect "the additional requirements for the claims based on Kove's statements in reexamination and are consistent with Amazon's proposed constructions reflecting those statements." 2023-03-02 Exhibit 1A-1B, 53-54 at 1 (citation omitted). Kove does not agree that Kove's statements created any additional claim requirements. Kove believes that Skagerwall alone or in combination with Wolff is deficient based on the claim requirements imposed by the plain language of the claims and the current claim construction order, as well AWS's proposed constructions. *See* Joint Claim Construction Chart (Updated) (Dkt. No. 382) and Claim Construction Order (Updated) (Dkt. No. 484).

| U.S. Patent No. 7,103,640 | Skagerwall and Wolff for claims 17, 18, and 24[1,2] |
|---|---|
| **[17.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | "Location information" is construed as "information pertaining to one or more locations of data and/or the identities of one or more location servers." [3]<br><br>To the extent the preamble is limiting, Kove denies that Skagerwall and/or Wolff discloses the limitations of the preamble, or that it renders it obvious.<br><br>Skagerwall describes a hierarchical system. Specifically, Skagerwall describes a primary directory server (i.e. a parent directory server) and child directory servers. *See e.g.,* Skagerwall at 12:8-22. Therefore, Skagerwall's hierarchical configuration does not allow for satisfying the claim requirements . |

---

[1] Kove uses the information currently available to it to provide its responses to AWS's Fifth Amended Final Unenforceability and Invalidity Contentions ("FAFUIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFUIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[2] Kove incorporates by reference its Response to the Office Action and Notice of Intent to Issue Reexamination Certificate in the Reexamination Proceeding of the '170 patent (90/019,035).

[3] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

EXHIBIT 2B: U.S. 7,103,640 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,103,640 | Skagerwall and Wolff for claims 17, 18, and 24[1,2] |
|---|---|
| **[17.a]** a plurality of data repositories configured to store data, wherein the data is associated with a respective identifier string in each data repository; | "Identifier string" is construed as a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."[4]<br><br>Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. *See* claim [17.Preamble].<br><br>Furthermore, Skagerwall does not teach or suggest an identifier that uniquely identifies a *single* entity. AWS alleges that Skagerwall's tag corresponds with the claimed identifier. However, Skagerwall describes using a tag for groups of objects. For example, Skagerwall states With the System according to the invention, the user is, e.g., able to access default information related to an object or a group of objects, for example, as provided by the manufacturer of the particular objects or products." Skagerwall at 6:59-62. As such, a tag can identify more than one object. Furthermore, even if different objects have different tags, as long as the objects are the same type of object, the tag will retrieve the same data packets. *See e.g., id.* at 6:59-62.<br><br>Furthermore, Skagerwall describes each tag including its own identifier. For example, Skagerwall states "The search means SM groups object identifier, preferably in correspondence with the number of objects and the number of available directory Servers, i.e., a target directory Server for Storing as well as for retrieving object data is determined based on an identifier of an object tag, which, e.g., may be a number assigned to the tag, and the number of available directory servers DS; DS1-DSn." *Id.* at 10:43-49; *see also id.* at 13:24-30. This suggests that object tags are not unique, and that uniqueness would be achieved, if at all, through the object tag identifier.<br><br>Wolff is not relied upon and does not teach or suggest this element. |
| **[17.b]** a data location sewer [sic] network having a plurality of data location servers, each of the plurality of data location | Kove denies that this element is disclosed in DNS. |

---

[4] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

EXHIBIT 2B: U.S. 7,103,640 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,103,640 | Skagerwall and Wolff for claims 17, 18, and 24[1,2] |
|---|---|
| servers containing location strings associated with respective identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps: | "Location server" is construed as "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients"[5]<br><br>"Client" is construed as "a network-attached component (which may be software or hardware) that initiates update or lookup of identifier/location mappings from a location server with location request messages." [6]Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. *See* claim [17.Preamble]-[17.a] re hierarchical configuration and identifier.<br><br>Skagerwall does not teach or suggest a location server that is a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients" because Skagerwall does not teach or suggest the claimed identifier. *See* claim [17.a].<br><br>Wolff is not relied upon and does not teach or suggest this element. Specifically, Wolff does not teach or suggest the claimed identifier and a location server that is a "network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients." Wolff is completely silent with respect to identifier/location mappings. Additionally, does not teach or suggest receiving location request messages from clients. Wolff describes a client transmitting requests in an attempt to connect to a specified resource. *See e.g.,* Wolff at 5:25-38. Wolff identifies a network path for the client to connect to the specified resource given the network conditions. *See e.g., id.* As such, Wolff does not teach or suggest the claimed identifier and a location server that is a "network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients." |

---

[5] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

[6] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

EXHIBIT 2B: U.S. 7,103,640 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,103,640 | Skagerwall and Wolff for claims 17, 18, and 24[1,2] |
|---|---|
| **[17.c]** in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | "Location" is construed as "an encoding that is a member of a set of associations with an identifier in a location server, and that specifies where data pertaining to the entity identified by the identifier is stored." [7]<br><br>Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. *See* claim [17.Preamble]-[17.a] re hierarchical configuration, identifier, location server.<br><br>This claim requires that if a data location server does not contain the desired location string, the data location server transmits a redirect message to the client. The redirect message contains information for use by the client the location of a different data location server that contains the desired location string. That is, the information allows the client to determine which data location server contains the location string with certainty.<br><br>Skagerwall does not teach or suggest "transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string."<br><br>Skagerwall's Fig. 2a (reproduced below) illustrates a process for retrieving object data. |

---

[7] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

EXHIBIT 2B: U.S. 7,103,640 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,103,640 | Skagerwall and Wolff for claims 17, 18, and 24[1,2] |
|---|---|
| |  |

Skagerwall, Fig. 2.

With respect to Fig. 2, Skagerwall states "If in step S26 it has been determined that object data related to the object tag is not located at the identified primary directory server, in a step S28, the lookup request is forwarded to other directory servers. In case the number of directory servers has been increased recently, the lookup request may be forwarded to a directory server which is determined using the hashfunction based on a previous number of available directory servers." *Id.* at 12:63-66.

EXHIBIT 2B: U.S. 7,103,640 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,103,640 | Skagerwall and Wolff for claims 17, 18, and 24[1,2] |
|---|---|
| | Skagerwall's Fig. 3 (reproduced below) illustrates the process for retrieving application data packets related to an object.<br><br><br><br>Skagerwall, Fig. 3.<br><br>With respect to Fig. 3, Skagerwall states: "If the location γ of the server hashtable is empty, in a step S35 an operation α=α/2 is performed and the flow returns to step S33. In S33, again, β mod α is computed in order to obtain a new γ. The flow then again reaches step S34 and once again it is determined, whether the hashtable location γ contains a record comprising one of the directory server addresses. |

EXHIBIT 2B: U.S. 7,103,640 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,103,640 | Skagerwall and Wolff for claims 17, 18, and 24[1,2] |
|---|---|
| | This loop of steps S33, S34 and S35 is repeated until, in step S35 it is determined that the hashtable location γ contains a record comprising a directory server address. Then, in a step S36 a request including the read object tag is transmitted to the target directory server, i.e., the directory server, whose address is stored at the hashtable location γ. Subsequently, in a step S37, the target directory server determines, whether the object data stored thereon actually includes a record comprising the read object tag. In case such a record can not be found, the flow returns to step S33, and γ is newly computed. The flow then continues as outlined before, until the directory server storing the object data is found. If none of the directory servers stores the object data, an error message is generated." *Id*., at 13:45-65.<br><br>In this regard, Skagerwall's access server identifies a target directory server that *may* store the desired object data based on the above-referenced computation.  *See e.g., id.*  The request for the object data is forwarded to the target directory server. *See e.g., id.*  The target directory server determines whether it contains the desired location information.  If not, the request is returned to the access server.  *See e.g., id.*  Skagerwall does not return the desired location information in two iterations or less.<br><br>AWS alleges that Skagerwall's access server can access act as a client.  Even assuming arguendo that the access server can act as a client, Skagerwall's access server is only informed whether the directory server contains the desired location information.  *Id*., at 13:45-65.  The access server cannot use this information to calculate a location of a different data location server that contains the desired location string with any certainty.  Therefore, Skagerwall does not teach or suggest "transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string."<br><br>Skagerwall is completely silent regarding transmitting a "redirect message" to a client.  Furthermore, Skagerwall does not teach or suggest a location server transmitting a |

EXHIBIT 2B: U.S. 7,103,640 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,103,640 | Skagerwall and Wolff for claims 17, 18, and 24[1,2] |
|---|---|
| | message that contains information for use by the client to calculate a location of a different data location server that contains the desired location string.<br><br>Wolff does not teach or suggest "transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string."<br><br>Wolff describes optimizing network performance using client load rebalancing. Specifically, Wolff states: "Client load rebalancing refers to the ability of a client, enabled with processes in accordance with the current invention, to re-map a path through a plurality of nodes to a resource. The re-mapping may take place in response to a redirection command emanating from an overloaded node, e.g. server. The embodiments disclosed allow more efficient, robust communication between a plurality of clients and a plurality of resources, via a plurality of nodes. Resources can include, but are not limited to, computers, memory devices, imaging devices, printers, and data sets. A data set can include a database or a file system." Wolff, 2:41-51. Furthermore, Wolff states: "In operation at time T=0, normal client 100A is shown accessing memory resource 118 via path 70 through overloaded server 104. At the same time, aware client 102A is shown accessing memory resource 18, via path 74, through overloaded server 104A. At time T=1, process 102P1, implemented on aware client 102A, detects the overload condition of server 104A, and accesses memory resource 118 via an alternate path 76 through server 106A. Thus, in this subsequent state, the load on server." *Id.*, 5:25-38. As such, in the event of a network bottleneck, Wolff reroutes a client requesting to connect to a memory resource via an alternate path. *Id.*<br><br>Wolff's client does not transmit a location query to the server or node. Rather, Wolff's client transmits a request to connect to a given resource (e.g., memory resource). *Id.*, 2:41-51. Wolff's server or node redirects the client to a different server or node that is not as burdened. *Id.*, 5:25-38. Wolff is completely silent with respect transmitting a |

EXHIBIT 2B: U.S. 7,103,640 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,103,640 | Skagerwall and Wolff for claims 17, 18, and 24[1,2] |
|---|---|
| | message to a client that contains information for use by the client to *calculate a location of a different data location server* that contains the location string." A POSA would not find it obvious to modify Skagerwall with Wolff to satisfy the claim limitations because Skagerwall and Wolff do not contemplate "transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string." Skagerwall describes linking physical objects to data stored about the objects in databases. *See* Skagerwall at Abstract. Wolff describes optimizing network performance using client load rebalancing. *See* Wolff at 2:41-51. Skagerwall and Wolff are not directed at addressing the issue "transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string." As such, any rationale to modify Skagerwall and Wolff to satisfy the claim limitations is based on impermissible hindsight. Additionally, there is no reasonable expectation of success of satisfying the claim requirements by modifying Skagerwall and/or Wolff because doing so would require extensive reengineering of Skagerwall and/or Wolff. |
| **[18.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. *See* claim [17.pre]-[17.c]. |
| **[18.a]** a data repository configured to store data, wherein the data is associated with an identifier string; | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. *See* claim [17.Preamble]-[17.a] re hierarchical configuration, identifier, location server. |

9

EXHIBIT 2B: U.S. 7,103,640 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,103,640 | Skagerwall and Wolff for claims 17, 18, and 24[1,2] |
|---|---|
| **[18.b]** a client responsive to a data query to query a data location server for location information associated with the identifier string; | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [17.Preamble]-[17.a] re hierarchical configuration, identifier, location server.. |
| **[18.c]** a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client: | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [17.Preamble]-[17.a] re hierarchical configuration, identifier, location server.. |
| **[18.d]** if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string; | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [17.Preamble]-[17.a] re hierarchical configuration, identifier, location server.. |
| **[18.e]** if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [17.Preamble]-[17.c] re hierarchical configuration, identifier, location server, and redirect message. |

10

EXHIBIT 2B: U.S. 7,103,640 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,103,640 | Skagerwall and Wolff for claims 17, 18, and 24[1,2] |
|---|---|
| **[24]** The system of claim 18, wherein the location information comprises a portion of a hash table distributed over the plurality of data location servers. | "Hash table" is construed as "a data structure that stores values in a table, where values are stored and retrieved by applying a hash function to an input and using the function result as an index into the table." [8] <br><br> As indicated above, location information is construed as "information pertaining to one or more locations of data and/or the identities of one or more location servers." [9] <br><br> Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. <br><br> *See* claim [18.a-18.e]. <br><br> Skagerwall does not teach or suggest "location information" including a *portion* of a hash table. AWS points to Skagerwall at 10:31-49 to satisfy the requirements of claim 24. However, while Skagerwall mentions the use of a hash table, Skagerwall does not teach or suggest a distributed hash table. Furthermore, Skagerwall is completely silent regarding location information including a *portion* of a hash table. *See* Skagerwall 10:31-49. <br><br> Wolff does not teach or suggest "location information" including a *portion* of a hash table. Wolff is completely silent regard location information that is "information pertaining to one or more locations of data and/or the identities of one or more location servers." Furthermore, Wolff is completely silent regarding the use of a hash table. Therefore, Wolff does not teach or suggest location information that comprises "a portion of a hash table distributed over the plurality of data location servers." <br><br> A POSA would not find it obvious to modify Skagerwall with Wolff to satisfy the claim limitations because Skagerwall and Wolff do not contemplate location information |

---

[8] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

[9] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

EXHIBIT 2B: U.S. 7,103,640 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,103,640 | Skagerwall and Wolff for claims 17, 18, and 24[1,2] |
|---|---|
| | comprising "a portion of a hash table distributed over the plurality of data location servers." Skagerwall describes linking physical objects to data stored about the objects in databases. *See* Skagerwall at Abstract. Wolff describes optimizing network performance using client load rebalancing. *See* Wolff at 2:41-51. Skagerwall and Wolff are not directed at addressing the issue of a distributed hash table As such, any rationale to modify Skagerwall and Wolff to satisfy the claim limitations is based on impermissible hindsight. Additionally, there is no reasonable expectation of success of satisfying the claim requirements by modifying Skagerwall and/or Wolff because doing so would require extensive reengineering of Skagerwall and/or Wolff. |

EXHIBIT 2C: U.S. 7,103,640 Validity Claim Chart in View of Neimat et al.

AWS purports to assert that claims 17, 18, and 24 of U.S. Patent No. 7,103,640 ("the '640 patent") are obvious in view of the combination of U.S. Patent No. 5,542,087 to Neimat ("Neimat"), DNS, and for claim 24, Karger '618/420. AWS further alleges that the operation of DNS is described in BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman. But AWS has failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat,  DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| **[17.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove denies that Neimat discloses the limitations of the preamble.<br><br>*See* claim [17.a, 17.b] re "location" and "data repository." |
| **[17.a]** a plurality of data repositories configured to store data, wherein the data is associated with a respective identifier string in each data repository; | Kove denies that this element is disclosed by Neimat.<br><br>Neimat does not disclose the claimed "identifier string," but instead describes non-unique key values for autonomous clients that do not uniquely identify an entity. An "identifier |

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[3] Kove incorporates by reference Exhibit 2A of its Contentions, which discusses DNS. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276, which discusses DNS.

EXHIBIT 2C: U.S. 7,103,640 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | string" is expressly described in the '640 patent as "a *unique* string with which zero or more location strings are associated in an NDTP server." '170 patent[4] at 4:10-12 (emphasis added). The identifier string must "be unique to a particular entity," '170 patent at 4:39-49, i.e. it cannot identify more than one data entity. AWS maps the "identifier" as the "Record key value (e.g., value generated from a patient's name)" of Neimat, but Neimat does not disclose that its "record key value" is unique. Instead, Neimat discloses, e.g., "if each key is a respective subject's personal name, it is clear that certain character strings of a common last name such as "Jones" will appear many times in the keys." Neimat at 2:8-10. *See, also, e.g.,* Neimat at 8:28-47, which discloses, e.g., using "Janet Jones" as a patient name key value to produce a record key.<br><br>Neimat does not disclose "a data repository . . .," but instead describes file servers that store records and relationships between memory addresses and server addresses. *See, e.g.*, Neimat at 4:40-60, 7:48-8:15. Memory on a file server (which AWS identifies as the "location server") by itself is not the claimed data repository. Data location servers and data repositories are, however, separate machines within the distributed network architecture claimed by the '640 patent. *See, e.g.*, '170 patent at Fig. 11, 2:30-45 (describing the "data repository" and "a first server entity operative to locate data" as separate components), 4:58-67 ("When a query is performed for an entity key, the NDTP server supplies the set of data repositories in which data may be found for that entity key."). The prosecution history further supports this separation. Neimat does not disclose "a location string" or "data location servers," as the servers in Neimat are not data location servers and do not store location strings. The servers instead store records and relationships between memory addresses and server addresses. *See, e.g.*, Neimat at 4:40-60, 7:48-8:15.<br><br>The specification of the '640 patent describes "location server", which it refers to as a "NDTP server," as "a network-attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from NDTP clients." '170 patent at 4:17-20 (emphasis added). Specifically, |

---

[4] All citations to the '170 patent are also found in the related '640 patent.

2

EXHIBIT 2C: U.S. 7,103,640 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | the "location servers" of the '640 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See* '170 patent at 4:14-17 (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular data identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the entity key and the data repository's data location specifier." '170 patent at 4:61-64. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '170 patent at Abstract ("According to the protocol, a location string can be spontaneously and dynamically changed"), 2:22-26 ("Relationships between identification strings and location strings can be dynamically and spontaneously manipulated thus allowing the corresponding data relationships also to change dynamically, spontaneously, and efficiently"), 20:42-45 ("it is the manipulation of dynamic and spontaneous relationships between indices and locations, not the indices and locations, that is the core significance").<br><br>With respect to "location server," AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Neimat with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Neimat's disclosure. AWS asserts that Neimat would have been combined with the Data Location References because (1) the "concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science"; (2) "the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science," and (3) "one of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system." These statements are vague, overbroad, and conclusory, |

EXHIBIT 2C: U.S. 7,103,640 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat,  DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine features from any known distributed network with any other known distributed network, since all distributed networks have common goals (e.g., to improve system performance, speed, and efficiency). <br><br>Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references Amazon seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the secondary references, such as DNS, do not disclose "location servers" or many other claim elements for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. <br><br>AWS's assertion that "location is not necessary" is wrong, as evidenced by the plain language of the claims as well as the discussion of location in the specification and prosecution history.  AWS's efforts to use the '170 patent itself to support an obviousness argument necessarily fails. |
| **[17.b]** a data location sewer [sic] network having a plurality of data location servers, each of the plurality of data location servers containing location strings associated with respective identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps: | Kove denies that this element is disclosed in Neimat. <br><br>*See* claim [17.a].  As described above, Neimat does not disclose "a plurality of data location servers," "location strings," "identifier strings," or the claimed relationships among them. The servers in Neimat are not data location servers. The servers in Neimat do not store data location information or location strings and instead store non-unique key values and records for autonomous clients. |

EXHIBIT 2C: U.S. 7,103,640 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | |
| **[17.c]** in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | Kove denies that this element is disclosed in Neimat.<br><br>*See* claim [17.a-17.b]. As described above, Neimat does not disclose a "data location server," "location string," or the claimed relationships among them. Further, Neimat does not disclose a "redirect message" or the other aspects of this claim limitation. The servers in Neimat do not store or transmit location strings. The servers instead store records and relationships between memory addresses and server addresses, and return records. *See, e.g.*, Neimat at 4:40-60, 7:48-8:15. Moreover, the servers store all the relationships between memory addresses and server addresses. *See, e.g. id.* at 5:49-67 Moreover, the servers do not send redirect messages, but instead communicate with other servers if needed. *See, e.g.*, Neimat at 5:49-67; Fig. 2. |
| **[18.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [17.pre]. |
| **[18.a]** a data repository configured to store data, wherein the data is associated with an identifier string; | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [17.a]. |
| **[18.b]** a client responsive to a data query to query a data location server for location information associated with the identifier string; | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [17.a-17.c]. |
| **[18.c]** a data location server network comprising a plurality of data location | Kove denies that this element is disclosed by Neimat. |

EXHIBIT 2C: U.S. 7,103,640 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client: | *See* claim [17.a-17.c]. |
| **[18.d]** if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string; | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [17.a-17.c].<br><br>As described above, Neimat does not disclose "the data location server," "the location string," "the identification string," "the data location request," "location information," or the claimed relationships among them. Further, Neimat does not disclose "if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string." The servers in Neimat do not store or return data location information. The servers instead store records and relationships between memory addresses and server addresses, and return records. *See, e.g.*, Neimat at 4:40-60, 7:48-8:15. Moreover, the servers store all the relationships between memory addresses and server addresses. *See, e.g.*, *id.* at 5:49-67. Moreover, the servers do not transmit location information for calculating a location, but instead communicate with other servers if needed to provide records. *See, e.g.*, Neimat at 5:49-67; Fig. 2. |
| **[18.e]** if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [17.a-17.c]. |

EXHIBIT 2C: U.S. 7,103,640 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | |
| **[24]** The system of claim 18, wherein the location information comprises a portion of a hash table distributed over the plurality of data location servers. | Kove denies that this claim is disclosed by Neimat or other references, or that it is rendered obvious.<br><br>*See* claim [17.a-17.c, 18.a-18.e].<br><br>As described above, Neimat does not disclose "data location servers," "data location information," "a portion of the data location information," or the claimed relationships among them. Furthermore, Neimat does not disclose using hash functions and/or hash tables to organize "location information" across a "plurality of data location servers." The hash functions disclosed in Neimat distribute records onto file servers, i.e. to distribute the data itself rather than "data location information." AWS concedes that Neimat does not disclose a hash function, hash table, or this limitation more broadly.<br><br>The hash table of claim 24 is used to allocate and retrieve particular sets of identifier/location mappings from particular data location servers. '170 patent at 15:12-18 ("The appropriate NDTP server is selected from the table…by applying a [hash] function to the identifier string and using the function result as an index into the NDTP server table."). AWS's contention that this limitation would be obvious in view of Neimat and the Karger references is unavailing. AWS's contention that hash functions were well-known at the time of the '640 patent is irrelevant to an assessment of the obviousness of applying a hash function to organize data location information across data location servers. AWS's improper reliance on the asserted patent's specification and case law (*Symantec*) are unavailing for the same reasons. AWS fails to adduce a single reference that either discloses or suggests the application of hash functions to organize data location information: both Karger references pertain to the organization of data across servers |

EXHIBIT 2C: U.S. 7,103,640 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat,  DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
|  | housing that data, rather than to the organization of location information about that data across multiple location servers.  *See* U.S. Patent No. 6,553,420 to Karger at col. 3:23-50 (disclosing the use of a hash function to retrieve a document from a server).  AWS's references neither teach nor suggest the problem that the '640 patent is directed to solve: the separation of the "where" (a constellation of location servers informing their clients where a data entity is stored) from the "what" (the data entities themselves) in an extremely large distributed environment.  '170 patent at 3:14-25, 20:17-29 ("NDTP… supports an architecture, in which information about where data associated with particular application entities, can be managed and obtained independently of the data itself.").  Indeed, the Karger references do not describe the basic architecture of the claim (separating location information from data), data location information or location information (relationship between identifiers and locations or location servers), identifiers (not uniquely associated with entities), location servers (no identifier/location mappings or modifying this information in response to client requests), or clients (no modifying identifier/location mappings).  The POSA would have no rationale to combine Neimat with either of the Karger references (or any other reference); to the contrary, for the reasons above, DNS and the Karger references teach away from the claimed invention.<br><br>Further, AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Neimat with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Neimat's disclosure.  AWS asserts that hash functions could be combined with Neimat and various other references because they are purportedly well known.  Its statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine hash functions into any disclosure. The mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why the POSA would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the |

EXHIBIT 2C: U.S. 7,103,640 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | references AWS seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the specifically identified references do not disclose one or more of the claim limitations for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS.<br><br>Moreover, there is no disclosure in Neimat or the Karger references of "a hash table," much less that "location information comprises a portion of a hash table." AWS thus wholly fails to explain why this claim limitation is met or rendered obvious. |

EXHIBIT 2D: U.S. 7,103,640 Validity Claim Chart in View of Minami et al.

AWS purports to assert that claims 17, 18, and 24 of U.S. Patent No. 7,103,640 ("the '640 patent") are obvious in view of the combination of U.S. Patent No. 6,212,521 to Minami ("Minami"), DNS and, for claim 24, Karger '618/420. AWS further alleges that the operation of DNS is described in BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman. But AWS has failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| [17.Preamble] A system for retrieving data location information for data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove denies that Minami discloses this limitation.<br><br>*See* claim [17.a, 17.b] re "location" and "data repository." |
| [17.a] a plurality of data repositories configured to store data, wherein the data is associated with a respective identifier string in each data repository; | Kove denies that this element is disclosed by Minami.<br><br>Minami does not disclose "a data repository," but instead describes servers that store both non-unique keywords and records. *See, e.g.,* Minami at 8:61-9:67 (search keywords may be mapped to multiple data objects, as well as to different data objects within different |

---

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[3] Kove incorporates by reference Exhibit 2A of its Contentions, which discusses DNS. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276, which discusses DNS.

EXHIBIT 2D: U.S. 7,103,640 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | "areas" of the network); Fig. 3, Fig. 20. Data location servers and data repositories are, however, separate machines within the distributed network architecture claimed by the '170 patent. *See, e.g.*, '170 patent[4] at Fig. 11, 2:30-45 (describing the "data repository" and "a first server entity operative to locate data" as separate components), 4:58-67 ("When a query is performed for an entity key, the NDTP server supplies the set of data repositories in which data may be found for that entity key."). The prosecution history further supports this separation.<br><br>Minami does not disclose the claimed "identifier string," but instead describes a non-unique keyword that does not uniquely identify an entity. An "identifier string" is expressly described in the '170 patent as "a *unique* string with which zero or more location strings are associated in an NDTP server." '170 patent at 4:10-12 (emphasis added). The identifier string must "be unique to a particular entity," '170 patent at 4:39-49, i.e. it cannot identify more than one data entity. |
| **[17.b]** a data location sewer [sic] network having a plurality of data location servers, each of the plurality of data location servers containing location strings associated with respective identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps: | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [17.a].<br><br>The specification of the '170 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from NDTP clients." '170 patent at 4:17-20 (emphasis added). Specifically, the "location servers" of the '170 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See* '170 patent at 4:14-17 (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the entity key and the data repository's data |

---

[4] All citations to the '170 patent are also found in the related '640 patent.

EXHIBIT 2D: U.S. 7,103,640 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | location specifier." '170 patent at 4:61-64. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '170 patent at Abstract ("According to the protocol, a location string can be spontaneously and dynamically changed"), 2:22-26 ("Relationships between identification strings and location strings can be dynamically and spontaneously manipulated thus allowing the corresponding data relationships also to change dynamically, spontaneously, and efficiently"), 20:42-45 ("it is the manipulation of dynamic and spontaneous relationships between indices and locations, not the indices and locations, that is the core significance").<br><br>AWS fails to explain how the primary servers in Minami are "data location servers," and in fact concedes that they are not. Moreover, Minami does not disclose the claimed "data location server network" or "a plurality of data location servers." The primary servers in Minami are not data location servers. The servers in Minami do not store data location information and instead store non-unique keywords and records, *i.e.*, the data itself. *See, e.g.,* Minami at 8:61-9:67; Fig. 3, Fig. 20. Further, the primary servers of Minami cannot determine which other primary servers store location information for an identifier, as not all of the servers in Minami can determine the appropriate server; multiple servers can be involved, and other functions that are unknown to a particular server can be used. *See, e.g.,* Minami at 8:61-9:15, 10:36-60 (a "primary hash function unit 109 and secondary hash function unit 111 are used to obtain a primary and secondary server identifiers, respectively, from a given search keyword."). Nor do primary servers have identifier/location mappings, as they do not have identifiers (as described for 17.a) and do not have locations that are associated with identifiers/entities. Primary server identifiers are not proper locations for an entity's data. Clients in Minami cannot update identifier/location mappings in primary servers.<br><br>With respect to "location server" (and this claim limitation), AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Minami with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of |

EXHIBIT 2D: U.S. 7,103,640 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Minami's disclosure. AWS asserts that Minami would have been combined with the Data Location References because (1) the "concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science"; (2) "the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science," and (3) "one of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system." These statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine features from any known distributed network with any other known distributed network, since all distributed networks have common goals (e.g., to improve system performance, speed, and efficiency). Moreover, merely doubling any location server, which is not described or rendered obvious, would not yield the claimed invention. |
| | Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references Amazon seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the secondary references, such as DNS, do not disclose "location servers" or many other claim elements for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. |
| | AWS's assertion that "location is not necessary" is wrong, as evidenced by the plain language of the claims as well as the discussion of location in the specification and |

EXHIBIT 2D: U.S. 7,103,640 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | prosecution history. AWS's efforts to use the '170 patent itself to support an obviousness argument necessarily fails. |
| **[17.c]** in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | Kove denies that this element is disclosed by Minami.

*See* claim [17.a, 17.b].

As described above, Minami does not disclose a "data location server," "location string," "identification string," or the claimed relationships among them. Further, Minami does not disclose "receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request," as the servers in Minami do not process requests for data location, but instead requests for records.

Further, Minami does not disclose a "redirect message" or the rest of the limitation. Minami does not disclose redirect messages back to the client, but instead has its servers pass messages to one another. *See, e.g.*, Minami at 8:61-9:67. Further, the servers in Minami are not data location servers and do not store data location information (they store records), or information from which a client could calculate a location, or a second data location server that contains a location string. |
| **[18.Preamble]** A system for retrieving data location information for data stored in a distributed network, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Minami.

*See* claim [17.pre]. |
| **[18.a]** a data repository configured to store data, wherein the data is associated with an identifier string; | Kove denies that this element is disclosed by Minami.

*See* claim [17.a, 17.b]. |
| **[18.b]** a client responsive to a data query to query a data location server for | Kove denies that this element is disclosed by Minami.

*See* claim [17.a-17.c]. |

EXHIBIT 2D: U.S. 7,103,640 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| location information associated with the identifier string; | |
| [18.c] a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client: | Kove denies that this element is disclosed by Minami. *See* claim [17.a-17.c]. |
| [18.d] if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string; | Kove denies that this element is disclosed by Minami. *See* claim [17.a-17.c]. As described above, Minami does not disclose "the data location server," "the location string," "the identification string," "the data location request," "location information," or the claimed relationships among them. Further, Minami does not disclose "if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string." The servers in Minami are not data location servers and do not receive data location requests. The servers in Minami do not store data location information (they store records) or location strings and instead store non-unique keywords and records. Minami does not disclose clients that calculate locations of different servers, as the servers in Minami communicate directly with one another. |

EXHIBIT 2D: U.S. 7,103,640 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| **[18.e]** if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [17.a-17.c]. |
| **[24]** The system of claim 18, wherein the location information comprises a portion of a hash table distributed over the plurality of data location servers. | Kove denies that this element is disclosed by Minami or other references, or that it is rendered obvious.<br><br>*See* claim [17.a-17.c].<br><br>As AWS concedes, Minami does not disclose a hash function, hash table, or this limitation more broadly.<br><br>The hash function of claim 24 is used externally to allocate and retrieve particular sets of identifier/location mappings from particular data location servers. '170 patent at 15:12-18 ("The appropriate NDTP server is selected from the table…by applying a [hash] function to the identifier string and using the function result as an index into the NDTP server table."). AWS's contention that this limitation ("hash function") would be obvious in view of Minami and the Karger references is unavailing. AWS's contention that hash functions were well-known at the time of the '640 patent is irrelevant to an assessment of the obviousness of applying a hash function to organize data location information across data location servers. AWS's improper reliance on the asserted patent's specification and case law (*Symantec*) are unavailing for the same reasons. AWS fails to adduce a single reference that either discloses or suggests the application of hash functions to organize data location information: both Karger references pertain to the organization of data across |

EXHIBIT 2D: U.S. 7,103,640 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
| | servers housing that data, rather than to the organization of location information about that data across multiple location servers. *See* U.S. Patent No. 6,553,420 to Karger at col. 3:23-50 (disclosing the use of a hash function to retrieve a document from a server). AWS's references neither teach nor suggest the problem that the '640 patent is directed to solve: the separation of the "where" (a constellation of location servers informing their clients where a data entity is stored) from the "what" (the data entities themselves) in an extremely large distributed environment. '170 patent at 3:14-25, 20:17-29 ("NDTP… supports an architecture, in which information about where data associated with particular application entities, can be managed and obtained independently of the data itself."). Indeed, the Karger references do not describe the basic architecture of the claim (separating location information from data), data location information or location information (relationship between identifiers and locations or location servers), identifiers (not uniquely associated with entities), location servers (no identifier/location mappings or modifying this information in response to client requests), or clients (no modifying identifier/location mappings). The POSA would have no rationale to combine Minami with either of the Karger references (or any other reference); to the contrary, for the reasons above, Minami and the Karger references teach away from the claimed invention.<br><br>Further, AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Minami with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Minami's disclosure. AWS asserts that hash functions could be combined with Minami and various other references because they are purportedly well known. Its statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine hash functions into any disclosure. The mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why the POSA would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references AWS seeks |

EXHIBIT 2D: U.S. 7,103,640 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,103,640 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claim 24, Karger '618/420[2,3] |
|---|---|
|  | to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the specifically identified references do not disclose one or more of the claim limitations for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. |

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

AWS purports to assert that U.S. Patent No. 7,233,978 ("the '978 patent") claims 1, 3, 6, 10, 14, and 31 are rendered obvious by OracleNamesAdminGuide alone or in combination with OracleUnleashed, Steen, and/or Wolff.  But AWS has failed to establish that OracleNamesAdminGuide, OracleUnleashed, and/or Steen were publicly available  before the priority date of the '978 patent.  AWS alleges that AWS's Exhibit 3A reflect "Specifically, based on Kove's statements and Amazon's proposed constructions, claims 1, 3, 6, 10, 14, and 31 also require that the location servers be organized in a nonhierarchical cluster structure, that each location server be able to respond to any location request with either the location of the data or the location of a server known to contain the requested location data without an intervening traversal, and that each request must be resolved in two or fewer traversals." AWS's Fifth Amended Final Unenforceability and Invalidity Contentions Exhibits 3A-D at 1.  Kove does not agree that Kove's statements created any additional claim requirements.  Kove believes that OracleNamesAdminGuide alone or in combination with OracleUnleashed, Steen, and/or Wolff are deficient based on the claim requirements imposed by the plain language of the claims and the current claim construction order, as well as AWS's proposed constructions.  *See* Joint Claim Construction Chart (Updated) (Dkt. No. 382) and Claim Construction Order (Updated) (Dkt. No. 484).

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| **[1.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff discloses the limitations of the preamble, or that it is rendered obvious.  *See* claim [1.a] re "system for managing data stored in a distributed network." |

---

[1] Kove uses the information currently available to it to provide its responses to AWS's Fifth Amended Final Unenforceability and Invalidity Contentions ("FAFUIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity.  Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFUIC.  Moreover, the parties are still engaged in discovery and expert discovery has not yet begun.  For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[2] Kove incorporates by reference its Response to the Office Action and Final Rejection in the Reexamination Proceeding of the '978 patent (90/019,034).

[3] AWS does not present any contentions regarding Wolff with regards to claims 1, 3, 6, 10, 14, and 31.

1

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| **[1.a]** a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity | "Identifier string" is construed as a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."[4]  "Location server" is construed as a "network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients"[5]  "Location information" is construed as "information pertaining to one or more locations of data and/or the identities of one or more location servers." [6]   Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.  OracleNamesAdminGuide does not teach or suggest an identifier string that is a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."  OracleNamesAdminGuide describes using service names (e.g., canonical names or aliases) or database links to retrieve network addresses of network objects and services. OracleNamesAdminGuide, 52-54.  For example, OracleNamesAdminGuide describes the following process when attempting to retrieve a network address for a database service "1. The client application issues a connection request to SQL*Net of the form: sqlplus scott/tiger@POULTRY where POULTRY is a database service name defined in the Oracle Names Server. SQL*Net determines from the client configuration in the SQLNET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net sends the Names Server a request to resolve the name POULTRY.WORLD. 2. The Names Server receives the request, looks it up in the cache, then sends the response back to the client. 3. The client receives the answer and substitutes the address in place of the initial name |

---

[4] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

[5] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

[6] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | POULTRY. 4. The client contacts POULTRY and establishes a standard SQL*Net client–server connection." *Id*., 52-53. In this example, the network addresses service name is "POULTRY." <br><br> However, the service names or database links are not unique. For example, OracleNamesAdminGuide allows users to create public and private names or database links to network services or objects. OracleNamesAdminGuide defines a public database links as "A database link created by a DBA on a local database which is accessible to all users on that database." *Id*., 202. Furthermore, OracleNamesAdminGuide defines a private database link as "A DBlink created by one user for his or her exclusive use." *Id*. OracleNamesAdminGuide does not restrict users from assigning identical private and public database links to two different databases. <br> OracleNamesAdminGuide provides numerous examples of allowing users to use non-unique names or links for network services or objects. For example, OracleNamesAdminGuide describes the process of locating a database link as follows: "Server TOM receives the SQL statement shown and checks its data dictionary for a private or public database link called JERRY. When it does not find one, SQL*Net determines from the client configuration in the SQLNET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net then sends the Names Server a request to resolve the database link name JERRY.WORLD." OracleNamesAdminGuide at 54. OracleNamesAdminGuide further states "When a database link is used to select information from a remote database table (for example, SELECT * FROM EMP@HR.US.ORACLE.COM), Oracle searches for a connect descriptor in the following locations in the following order: 1. the user's private database links 2. the database public database links 3. the Oracle Names Server global database links." *Id*., 110. Therefore, when processing a query, OracleNamesAdminGuide first checks for the name or database link in the user's private database links. To this end, this configuration does not prevent the same name or link from being included in the user's private database links and the public database links. |

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | OracleNamesAdminGuide's use of non-unique names or database links for network services or objects is further illustrated in its querying process. OracleNamesAdminGuide teaches that "If the QUERY command is used with just a name as a parameter, the Names Server responds with the number of pieces of data with that name, and the time required to complete the operation." *Id.*, 129. OracleNamesAdminGuide provides the following example of a query: |

```
Example:

   NAMESCTL> QUERY BONES.DEM.MEDICINE A.SMD
   Total response time:    0.04 seconds
   Response status:        normal, successful completion
   Authoritative answer:   yes
   Number of answers:      1
   Canonical name:         bones.dem.medicine
   TTL:                    1 day
   Alias translations:
       from:               bones.dem.medicine
       to:                 bones.dem.medicine
   Answers:
       data type is "a.smd"
           Syntax is ADDR:...(DESCRIPTION=(ADDRESS=
       (COMMUNITY=tcp)(PROTOCOL=TCP)(Host=cowboy)
       (Port=1522))(CONNECT_DATA=(SID=rodeo)))
```

*Id.*

In this example, the "number of answers" is 1. However, if multiple network objects are found using the same name or database link, the number of answers would be more than 1. As such multiple network objects or database links may be retrieved using the same name or database link.

Furthermore, OracleNamesAdminGuide requires that the query command include the network object name and network object type. *Id.*, 129. As such, OracleNamesAdminGuide attempts to identify network object using the network object name and network object type. This further confirms that the network object name is non-unique; otherwise, the network object type would not be needed to

4

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | locate the network object. Therefore, OracleNamesAdminGuide does not restrict the network objects in the network from having non-unique names. |
| | Furthermore, Oracle Names's Names Servers are not restricted from storing identifiers where each identifier identifies a single entity, as required by the claims. Oracle Names allows for users to assign public and private names to network services and objects. *See e.g.*, OracleNamesAdminGuide at 54, 110. Oracle Names allows for the public and private names to be identical, and the same name can be used to identify multiple entities. *Id.* |
| | OracleNamesAdminGuide also does not teach or suggest the required relationship among the terms "identifier string," "data entity," and "location information." In Oracle Admin, if a database is the data entity, and the identifier is the network address alias of that database, then data within that database comprises the data entity, and the "location information associated with the identifier string" is the network address of the database (and not the alias for that network address, e.g., POULTRY). If any data comprising the data entity (i.e., the database in this scenario) is moved, the association between the location information and the identifier string is broken – in other words, POULTRY will still only point to the database's network location but is not otherwise associated with location information for whatever data may have moved from the POULTRY database. *Id.* at 30-32; 50-54. |
| | Steen does not teach or suggest an identifier that identifies a single entity. Specifically, Steen states "Unlike cellular telephones, computer objects often have two or more addresses. For example, a replicated file will be known to its users under one name, which is mapped to several addresses, one for each copy." Steen at 104. Here, each copy of the file is a separate entity. Therefore, in Steen an identifier identifies multiple entities. |
| | Steen further states "As an illustration, consider an officeless company whose employees are located across the country, normally working at home, or visiting customers. Using our approach, we assign a lifetime and location-independent telephone number to the company. This number corresponds to an object handle. A naming or directory service would maintain a mapping between the company's name |

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
|  | and it's lifetime telephone number. The telephone number is used by a location service to redirect incoming calls to, for example, the nearest employee currently working. An employee's own telephone number is registered at the location service when he or she starts work, and is unregistered again when he or she finishes. An employee's telephone number corresponds to a contact address. Note that how the company is named, and in which directories its name is registered, is no longer important. Naming has been fully separated from how and where we contact the company." Steen, 105. Again, in Steen's example, the telephone number identifies multiple employees (i.e., multiple entities). Therefore, Steen does not teach or suggest an identifier string that identifies a single entity, as required by the claims. OracleNamesAdminGuide and Steen do not teach or suggest an identifier/identifier string that identifies a single entity. Therefore, OracleNamesAdminGuide and Steen cannot teach or suggest "a network-attached component that maintains a set of **identifier/location** mappings that are modified or returned in response to location request messages from clients." *See* claim [1.a] (emphasis added). OracleUnleashed does not teach or suggest data location servers that are network-attached components that maintain "a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients." While OracleUnleashed describes partitioning database tables, OracleUnleashed is completely silent with respect to servers that maintain identifier/location mappings. *See* OracleUnleashed, 424-425. <br><br> Furthermore, OracleNamesAdminGuide, Steen, and OracleUnleashed are completely silent regarding modifying identifier/location mappings in response to receiving a *location* request. |
| **[1.b]** a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. <br> *See* claim [1.Preamble]-[1.a] re identifier/identifier string, data location server, and location information, and the relationship among the terms "identifier," "entity," "location" and "location information. |

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | |
| **[1.c]** programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity. | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. *See* claim [1.Preamble]-[1.a] re identifier/identifier string, data location server, and location information, and the relationship among the terms "identifier," "entity," "location" and "location information. |
| **[3]** The system of claim 1, wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query. | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re identifier/identifier string, data location server, and location information, and the relationship among the terms "identifier," "entity," "location" and "location information.<br><br>This claim element requires that if a location server does not contain the desired location information, the location server transmits a redirect message to the client. The redirect message contains information for finding the location server known to have the information relevant to the location query. That is, the information allows for determining which location server contains the location information with certainty and specificity.<br><br>OracleNamesAdminGuide does not teach or suggest a redirect message comprising information for finding a location server known to have location information relevant to the location query.<br><br>The Final Office Action in the reexam of the 978 patent stated:<br><br>"In regards to independent claims 10 and 14 and dependent claim 3, the claims all require the use of a "redirect message comprising information for finding a location |

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | server known to have location information relevant to the location query" (as found in claim 3, similar language in claims 10 and 14). Oracle's Names Servers forward name requests up and down a hierarchy of Names Servers until the Names Server containing the desired information is reached, and the desired information is returned in the same way, traversing the network of Names Servers. This fact gives evidence to the fact that any given Names Server has no information regarding which specific Names Server stores a desired information item. Were any given Names Server to have such information, then the Names Server would simply pass the request directly to that Names Server, instead of forwarding the request up and down a hierarchy of Names Servers. Since any given Names Server has no information regarding which specific Names Server stores a requested item, there would be no way for the Names Server to include such information in a redirect message returned to the requesting device." '978 Final Office Action at 24-25.<br><br>OracleNamesAdminGuide does not teach or suggest transmitting a redirect message that allows for determining the location server containing the location information with certainty and specificity. OracleNamesAdminGuide states that, if FORWARDING_AVAILABLE is set to OFF:<br>Rather than forward the request and return the answer the Names Server simply tells the requestor the address of the Names Server that can answer the request. Note that there is no overall reduction in work; the work is simply displaced from the non–forwarding Names Server to the requesting Names Server.<br>WARNING: If FORWARDING_AVAILABLE is set to off, any clients who rely directly on that Names Server will be unable to resolve foreign names. Clients are not capable of redirecting their requests as Names Servers would. Their requests will fail at that point, even if other Names Servers are listed in the NAMES.PREFERRED_SERVERS configuration parameter. OracleNamesAdminGuide at 137.<br>As Oracle Admin explains, turning off "name request forwarding" simply shifts the "work" from the queried server to the server that queried it (requesting Names Server). *Id.* That "work" is querying the next server above it in the network path. |

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | Nowhere in OracleNamesAdminGuide is there any contemplation that the next server is somehow in possession of the requested information – rather, the next server "can" answer the request (if it happens to have the information) but will not necessarily do so (as required by claim 3). <br><br> AWS argues that "For instance, '640 claim 25 states "each of the plurality of servers is configured to function as a next client and retransmit the data location request to a next logically associated server." Thus, the Names Server servicing a data request from a foreign Names Server is servicing a request from the claimed "client" and sending a redirect message back to that client if the server doesn't have a location string associated with the requested identifier." FAFUIC, Exhibit 3A at 31-32. As an initial matter, AWS reliance to the '640 patent is improper. The '978 patent and '640 patent are different patents that have different Specifications. AWS may not use the Specification of the '640 patent to interpret the claims of the '978 patent. <br><br> Nevertheless, AWS's reasoning is unfounded. Even if assuming arguendo that a names server may act as the "client," the OracleNamesAdminGuide's alleged redirect message does not include information that allows for determining that the location of the authoritative server *with certainty and specificity*. That is, there is no certainty that the next names server in the network path will contain the desired location information. <br><br> Therefore, OracleNamesAdminGuide does not teach or suggest transmitting a redirect message that comprises "information for finding a location server known to have location information relevant to the location query." <br><br> Furthermore, AWS alleges that if Forwarding is disabled in OracleNamesAdminGuide, "The initial Names Server that received the request will send a message to the client where the message contains the address of a second Names Server containing the requested location string, then the client will send its request to the address of the second Names Server." FAFUIC, Exhibit 3A at 25. This is categorically false. <br><br> OracleNamesAdminGuide makes clear that, even in the event FORWARDING AVAILABLE is set to OFF, "the work is simply displaced from |

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | the non-forwarding Names Server to the requesting Names Server." OracleNamesAdminGuide goes on to specify: <br><br> WARNING: If FORWARDING_AVAILABLE is set to off, any clients who rely directly on that Names Server will be unable to resolve foreign names. **Clients are not capable of redirecting their requests as Names Servers would**. OracleNamesAdminGuide at 137 (emphasis added). <br><br> OracleNamesAdminGuide teaches away from transmitting redirect messages to a client. AWS argues "OracleNamesAdminGuide states this is an "intended" preference rather than a requirement. Illustrating this isn't a requirement, OracleNamesAdminGuide specifies that a Names Server with this forwarding command disabled may have "clients who rely directly on that Names Server. […] OracleNamesAdminGuide warns that, when forwarding is disabled and the Names Server sends redirect messages to the client, the server can't resolve request inquiries for "foreign names." [citation omitted]. But this concern is irrelevant to OracleNamesAdminGuide's non-hierarchical configuration because all the data entities are locating in the same region, thus resulting in no foreign names." FAFUIC, Exhibit 2A at 54. However, this is incorrect. OracleNamesAdminGuide explicitly states "Clients are not capable of redirecting their requests as Names Servers would." OracleNamesAdminGuide at 137. OracleNamesAdminGuide never describes this feature with respect to a flat naming model. It is unclear whether this feature is available in the flat naming model. As such, OracleNamesAdminGuide explicitly teaches away from transmitting a redirect message to a client. <br><br> AWS further points to OracleNamesAdminGuide Figure 3-8 to satisfy the claim requirements. OracleNamesAdminGuide's Figure 3-8 depicts a flat naming model including two names servers. OracleNamesAdminGuide at 45. With respect to Figure 3-8 AWS alleges, "a POSITA would understand the upper Names Server transmits a message to the client where the message includes in the address of the lower Names Server housing the location string. The client uses that address to calculate the location of the lower Names Server, then the client sends its data location request to the lower Names Server." FAFUIC, Exhibit 3A at 26. |

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | However, AWS's rationale is erroneous. AWS provides conclusory statements without any support as to why or how a POSA would understand that an "upper" Names Server would transmit a message including the address of the address of the "lower" Names Server. Indeed, OracleNamesAdminGuide clearly teaches away from transmitting redirect messages to clients. *See* OracleNamesAdminGuide at 137. Additionally, OracleNamesAdminGuide never describes redirect messages with respect to Figure 3-8. In fact, OracleNamesAdminGuide never describes forwarding with respect to Figure 3-8. As such, any rationale to modify OracleNamesAdminGuide such that it can transmit a redirect message to a client is based on impermissible hindsight. Additionally, there is no reasonable expectation of success of modifying OracleNamesAdminGuide to such that it can transmit a redirect message to a client because OracleNamesAdminGuide teaches away from it and doing so would require extensive reengineering. OracleNamesAdminGuide lacks the non-hierarchical structure to satisfy the claim requirements. For example, OracleNamesAdminGuide's hierarchical structure is illustrated in Fig. C-4 (reproduced below). |

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| |  Figure C – 4 Network Messages in a Multi–Level Foreign Name Resolution OracleNamesAdminGuide, Figure C-4 at 191. OracleNamesAdminGuide describes the activities that must take place in response to a client query for information (in this case, the network address of the "Destination Server"): "1. The client sends request to preferred Names Server in its local region (DR1). 2. The preferred Names Server in DR1 issues request for the Names Servers authoritative for the destination server (in region DR2.1). 3. The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2. 4. The receiving server in DR2 forwards the request to a Names Server in region DR2.1. 5. The name is retrieved from its authoritative Names Server in DR2.1. 6. The names Server in region DR2 caches the answer and returns it to the root. 7. The root caches the answer and returns it to the preferred Names Server in region DR1. 8. The preferred |

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | Names Server caches the answer and returns it to the client. 9. The client establishes a connection to the destination server." *Id*. at 190-191.<br><br>Retrieving a network address in the tree-node configuration in Figure C-4 require nine (9) traversals up, down, and back through the hierarchal structure. (Id). As such, the organizational structure is limited in efficiency by its underlying network paths and network relationships that require queries to make hierarchical traversals until it finds the server with the sought-after information (assuming the information exists somewhere in the network). *See id.*<br><br>OracleNamesAdminGuide acknowledged that a network may follow a flat naming model or a hierarchical naming model but cautioned that "[a] flat naming model should be used when the actual number of services is small (under 100), when the likelihood of future growth of network services is *minimal*...." *Id*. at 40) (emphasis added). More pointedly, OracleNamesAdminGuide ***discouraged*** the use of "flat" structures in larger networks, in contrast to hierarchical structures which Oracle Admin noted "allow[s] for future growth or greater naming autonomy." *Id.* at 41.<br><br>The Name Servers in OracleNamesAdminGuide's hierarchical configuration do not have any knowledge of what is stored in other Names Server in the network, beyond their direct children. *Id.* at 191. If a queried server or its direct children do not have the requested information, the server knows only to forward a query to the next Names Server up the tree. Names Servers are ignorant as to what information other Names Servers beyond their direct children may have and have no way of finding out. This was the common and accepted configuration at the time of the invention.<br><br>Oracle Names is dependent on its network paths. *Id.* at 56-57. Names Servers do not have any knowledge of which Names Server contains the address to the requested network service (beyond itself and its direct children) nor is anything taught about *any* (much less *every*) Names Server being configured to determine the location of the requested information. Oracle Admin's hierarchical structure does |

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | not enable a given Names Server the ability to know or determine what is stored in every Names Server in the network. |

OracleUnleashed also does not teach or suggest transmitting a redirect message that allows for determining the location server containing the location information with certainty and specificity. While OracleUnleashed describes hashing to partition database tables, OracleUnleashed is silent with respect to redirect messages. *See* OracleUnleashed at 394, 638. Furthermore, OracleUnleashed is silent with respect to transmitting a message to a client that allows for determining the location server that stores the location information *with specificity and certainty*. Therefore, OracleUnleashed does not teach or suggest transmitting a redirect message that comprises "information for finding a location server known to have location information relevant to the location query."

Steen also does not teach or suggest transmitting a redirect message that comprises "information for finding a location server known to have location information relevant to the location query." AWS alleges that Steen's hashing allows "ensures each subnode is aware (i.e., knows) the location of any requested location information regardless of which server it is contained on." *See* 2023-03-02 Exhibit 3A, 34.

However, Steen states "Our solution is to partition a directory node into one or more *directory subnodes* such that each subnode is responsible for a subset of the records originally stored at the directory node. […] Because communication between directory nodes in the original search tree now takes place between their respective subnodes, each subnode should be aware of how the directory node with which it communicates is actually partitioned. This information is contained in a separate tree management service. This service also maintains the mapping of subnodes to physical nodes. Partitioning and mapping information is assumed to be relatively stable so that it can be easily cached by subnodes. This assumption is necessary to avoid having to query the management service each time a subnode needs to communicate with its parent or children, which would turn the management service into a potential communication bottleneck. Steen at 107-108 (emphasis in original). That is, each subnode only knows how the directory node with which it

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | communicates. The subnodes are not aware of of the location of *any* requested location information. *Id*. Furthermore, Steen is silent with respect to transmitting a "redirect message." Therefore, Steen does not teach or suggest transmitting a redirect message that allows for determining the location server containing the location information with certainty and specificity. |
| | Steen also does not teach or suggest a non-hierarchical configuration. Steen illustrates in Fig. 2 its hierarchical configuration: |
| |  |
| | ■ **Figure 2.** *The logical organization of the location service as a virtual search tree.* |
| | Steen at Fig. 2. |
| | Like, OracleNamesAdminGuide, Steen's hierarchical configuration do not have any knowledge of what is stored in the other nodes in the network, beyond their direct parents/children. *See e.g.,* Steen at 107-108. As such, Oracle Admin's hierarchical structure does not enable a given Names Server the ability to know or determine what is stored in every Names Server in the network. |
| | AWS does not present any contentions regarding Wolff with regards to claim 17. |

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
|  | Nevertheless, Wolff does not teach or suggest transmitting a redirect message that comprises "information for finding a location server known to have location information relevant to the location query." |
|  | Wolff describes optimizing network performance using client load rebalancing. Specifically, Wolff states: "Client load rebalancing refers to the ability of a client, enabled with processes in accordance with the current invention, to re-map a path through a plurality of nodes to a resource. The re-mapping may take place in response to a redirection command emanating from an overloaded node, e.g. server. The embodiments disclosed allow more efficient, robust communication between a plurality of clients and a plurality of resources, via a plurality of nodes. Resources can include, but are not limited to, computers, memory devices, imaging devices, printers, and data sets. A data set can include a database or a file system." Wolff, 2:41-51. Furthermore, Wolff states: "In operation at time T=0, normal client 100A is shown accessing memory resource 118 via path 70 through overloaded server 104. At the same time, aware client 102A is shown accessing memory resource 18, via path 74, through overloaded server 104A. At time T=1, process 102P1, implemented on aware client 102A, detects the overload condition of server 104A, and accesses memory resource 118 via an alternate path 76 through server 106A. Thus, in this subsequent state, the load on server." *Id.*, 5:25-38. As such, in the event of a network bottleneck, Wolff reroutes a client requesting to connect to a memory resource via an alternate path. *Id.* |
|  | Wolff's client does not transmit a location query to the server or node. Rather, Wolff's client transmits a request to connect to a given resource (e.g., memory resource). *Id.*, 2:41-51. Wolff's server or node redirects the client to a different server or node that is not as burdened. *Id.*, 5:25-38. Wolff is completely silent with respect transmitting a redirect message that comprises "information for finding a location server known to have location information relevant to the location query." |
|  | A POSA would not find it obvious to modify OracleNamesAdminGuide with OracleUnleashed, Steen, and/or Wolff[7] to satisfy the claim limitations because |

---

[7] AWS does not include Wolff in this combination for claim 3.

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff do not contemplate transmitting a redirect message that contains "redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string." OracleNamesAdminGuide is a manual that describes Oracle 7 products. *See* OracleNamesAdminGuide at 19-26. Specifically, OracleNamesAdminGuide describes the use of Oracle Names products. *See e.g., id.* OracleNamesAdminGuide looks to address issues in networking databases. *See e.g., id.* OracleUnleashed is a manual that describes Oracle 8 products. *See* OracleUnleashed at 8-14. OracleUnleashed looks to address issues with managing databases. *See e.g., id.* Steen describes managing wide-area networks. *See e.g.,* Steen at 105. Steen describes locating mobile objects in a wide-area network. *See e.g., id.* Wolff describes optimizing network performance using client load rebalancing. *See e.g.,* Wolff *at* 2:41-51. Wolff looks to address issues with load balancing in a network. *See e.g.* OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff are not directed to addressing issues such as transmitting a redirect message that contains "redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string." As such, any rationale to modify OracleNamesAdminGuide with OracleUnleashed, Steen, and/or Wolff to satisfy the claim limitations is based on impermissible hindsight. Additionally, there is no reasonable expectation of success of satisfying the claim requirements by modifying OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff because doing so would require extensive reengineering of OracleNamesAdminGuide OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff. |
| **[6]** The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table. | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. *See* claim [1.a]-[1.c]. |

17

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | As stated in the Final Office Action in the reexam of the '978 patent "In regards to dependent claim 6, the claim requires that "the location information in the location server is maintained in an indexed location store indexed by a hash table."  If Oracle's Names Server had this ability, there would be no need to pass requests up and down a hierarchy of Names Servers; it could determine on its own the Names Server having the desired information and send the request directly to that Names Server.  While OSG discloses the use of hashing in resolving queries, it fails to disclose the use of hashing at any given location server (i.e., by any given Names Server) to determine the location server/Names Server that contains the desired location information." '978 Final Office Action at 25. |
| | OracleNamesAdminGuide does not teach or suggest location information in the location server being maintained in an indexed location store indexed by a hash table. |
| | Steen is silent regarding location information in the location server being maintained in an indexed location store indexed by a hash table.  Steen uses hashing-based methods for partitioning nodes.  Steen at 108. However, Steen does not contemplate using a hashtable for maintaining location information in location servers.  In this regard, a POSA would not find it obvious to modify OracleNamesAdminGuide and/or Steen to maintain location information in the location server in an indexed location store indexed by a hash table. |
| | OracleUnleashed also does not teach or suggest location information in the location server being maintained in an indexed location store indexed by a hash table.  OracleUnleashed describes hashing as follows: |

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | A good candidate for hashing has the following properties: <br><br> • *Unique cluster keys*. Hashing performs best when the value of the cluster key is fairly unique. Because the data is laid out based on the key value, a column with a lot of duplicates is not a good candidate for the hash key. <br><br> • *Equality queries*. The majority of queries are equality queries on the cluster key. This type of query reaps the greatest benefit from the hash cluster. <br><br> • *Static size*. Hashing is optimal when the table or tables are fairly static in size. If the table stays within its initial storage allocation, you do not see any performance degradation from using a hash cluster; but if the table grows out of its initial allocation, performance can degrade. In this case, overflow blocks are required. <br><br> • *Constant cluster key*. Hashing can also degrade performance when the value of the cluster key changes. Because the location of the block in which the data resides is based on the cluster key value, a change in that value can cause the row to migrate to maintain the cluster. <br><br> • *No table scans*. Hashing can degrade the performance of table scans because the scan must read blocks that may not have much data in them. Because the table is originally created by laying out the data in the cluster based on the value of the cluster key, there may be some blocks that have few rows. <br><br> Do not use a hash cluster on a table if the application frequently modifies the cluster key or the table is constantly being modified. Because the cluster key is based on a calculation, you can incur significant overhead by constantly recalculating the key. <br><br> OracleUnleashed at 394. <br> OracleUnleashed is silent regarding location servers storing location information. As such, OracleUnleashed does not teach or suggest location information in the location server being maintained in an indexed location store indexed by a hash table. <br> . |

19

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | Wolff is silent regarding maintaining location information in the location server in an indexed location store indexed by a hash table.[8] <br><br> A POSA would not find it obvious to modify OracleNamesAdminGuide with OracleUnleashed, Steen, and/or Wolff[9] to satisfy the claim limitations because OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff do not contemplate using a hashtable for maintaining location information in location servers. OracleNamesAdminGuide is a manual that describes Oracle 7 products. *See* OracleNamesAdminGuide at 19-26. Specifically, OracleNamesAdminGuide describes the use of Oracle Names products. *See e.g., id*. OracleNamesAdminGuide looks to address issues in networking databases. *See e.g., id*. OracleUnleashed is a manual that describes Oracle 8 products. *See* OracleUnleashed at 8-14. OracleUnleashed looks to address issues with managing databases. *See e.g., id*. Steen describes managing wide-area networks. *See e.g.,* Steen at 105. Steen describes locating mobile objects in a wide-area network. *See e.g., id*. Wolff describes optimizing network performance using client load rebalancing. *See e.g.,* Wolff *at* 2:41-51. Wolff looks to address issues with load balancing in a network. *See e.g.* OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff are not directed to addressing issues such as using a hashtable for maintaining location information in location servers. As such, any rationale to modify OracleNamesAdminGuide with OracleUnleashed, Steen, and/or Wolff to satisfy the claim limitations is based on impermissible hindsight. Additionally, there is no reasonable expectation of success of satisfying the claim requirements by modifying OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff because doing so would require extensive reengineering of OracleNamesAdminGuide OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff. |

[8] AWS does not include Wolff in this combination for claim 6.

[9] AWS does not include Wolff in this combination for claim 6.

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| **[10.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claims [1.Preamble]-[3]. |
| **[10.a]** a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re identifier/identifier string, data location server, and location information, and the relationship among the terms "identifier," "entity," "location" and "location information." |
| **[10.b]** programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier. | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br>*See* claim [1.Preamble]-[1.a] re identifier/identifier string, data location server, and location information, and the relationship among the terms "identifier," "entity," "location" and "location information." *See* claim [3] re the redirect message and the hierarchical configuration. |
| **[14.Preamble]** A method of handling location queries in a network, the network comprising a | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. |

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising: | *See* claims [1.Preamble-1.c] and [3]. |
| [14.a] receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location; | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. *See* claim [1.Preamble]-[1.a] re identifier/identifier string, data location server, and location information, and the relationship among the terms "identifier," "entity," "location" and "location information." |
| [14.b] sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re identifier/identifier string, data location server, and location information, and the relationship among the terms "identifier," "entity," "location" and "location information." |
| [14.c] sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query. | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re identifier/identifier string, data location server, and location information, and the relationship among the terms "identifier," "entity," "location" and "location information." *See* claim [3] re the redirect message and the hierarchical configuration. |
| [31.Preamble] A system for managing location information and providing location information to location queries, the system comprising: | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious. |

22

EXHIBIT 3A: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff.

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | *See* claims [1.Preamble-1.c]. |
| **[31.a]** a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity, the location server containing location information corresponding to at least one entity and formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re identifier/identifier string, data location server, and location information, and the relationship among the terms "identifier," "entity," "location" and "location information." |
| **[31.b]** programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity. | Kove denies that this element is disclosed by OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re identifier/identifier string, data location server, and location information, and the relationship among the terms "identifier," "entity," "location" and "location information." |

EXHIBIT 3B: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall and Wolff.

AWS purports to assert that U.S. Patent No. 7,233,978 ("the '978 patent") claims 1, 3, 6, 10, 14, and 31 are rendered obvious by Skagerwall alone or in combination with Wolff. AWS alleges that AWS's Exhibit 3A reflect "Specifically, based on Kove's statements and Amazon's proposed constructions, claims 1, 3, 6, 10, 14, and 31 also require that the location servers be organized in a nonhierarchical cluster structure, that each location server be able to respond to any location request with either the location of the data or the location of a server known to contain the requested location data without an intervening traversal, and that each request must be resolved in two or fewer traversals." AWS's Fifth Amended Final Unenforceability and Invalidity Contentions Exhibits 3A-D at 50. Kove does not agree that Kove's statements created any additional claim requirements. Kove believes that Skagerwall alone or in combination with Wolff are deficient based on the claim requirements imposed by the plain language of the claims and the current claim construction order, as well as AWS's proposed constructions. See Joint Claim Construction Chart (Updated) (Dkt. No. 382) and Claim Construction Order (Updated) (Dkt. No. 484).

| U.S. Patent No. 7,233,978 | Skagerwall and Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| [1.Preamble] A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Wolff discloses the limitations of the preamble.<br><br>Skagerwall describes a hierarchical system. Specifically, Skagerwall describes a primary directory server (i.e. a parent directory server) and child directory servers. *See e.g.,* Skagerwall at 12:8-22. Therefore, Skagerwall's hierarchical configuration does not allow for satisfying the claim requirements. |

---

[1] Kove uses the information currently available to it to provide its responses to AWS's Fifth Amended Final Unenforceability and Invalidity Contentions ("FAFUIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFUIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[2] Kove incorporates by reference its Response to the Office Action and Final Rejection in the Reexamination Proceeding of the '978 patent (90/019,034).

[3] AWS does not present any contentions regarding Wolff with regards to claims 1, 6, and 31.

1

EXHIBIT 3B: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,233,978 | Skagerwall and Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| [1.a] a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity | "Identifier string" is construed as a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."[4]<br><br>"Location server" is construed as a "network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients"[5]<br><br>Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. *See* claim [1.Preamble] re hierarchical configuration.<br><br>Skagerwall does not teach or suggest an identifier that uniquely identifies a *single* entity. AWS alleges that Skagerwall's tag corresponds with the claimed identifier. However, Skagerwall describes using a tag for groups of objects. For example, Skagerwall states With the System according to the invention, the user is, e.g., able to access default information related to an object or a group of objects, for example, as provided by the manufacturer of the particular objects or products." Skagerwall at 6:59-62. As such, a tag can identify more than one object. Furthermore, even if different objects have different tags, as long as the objects are the same type of object, the tag will retrieve the same data packets. *See e.g., id.* at 6:59-62.<br><br>Furthermore, Skagerwall describes each tag including its own identifier. For example, Skagerwall states "The search means SM groups object tags, preferably in correspondence with the number of objects and the number of available directory Servers, i.e., a target directory Server for Storing as well as for retrieving object data is determined based on an identifier of an object tag, which, e.g., may be a number assigned to the tag, and the number of available directory servers DS; DS1-DSn." *Id.* at 10:43-49; *see also id.* at 13:24-30. This suggests that object tags are not unique, and that uniqueness would be achieved, if at all, through the object tag identifier. |

---

[4] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

[5] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

EXHIBIT 3B: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,233,978 | Skagerwall and Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | Moreover, Skagerwall cannot teach or suggest location servers that stores identifier/location mappings, because Skagerwall does not teach or suggest the claimed identifier.<br><br>Wolff is not relied upon and does not teach or suggest this element. Specifically, Wolff does not teach or suggest the claimed identifier and location server that is a "network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients." Wolff is completely silent with respect to identifier/location mappings. Additionally, does not teach or suggest receiving location request messages from clients. Wolff describes a client transmitting requests in an attempt to connect to a specified resource. *See e.g.*, Wolff at 5:25-38. Wolff identifies a network path for the client to connect to the specified resource given the network conditions. See e.g., id. As such, Wolff does not teach or suggest the claimed identifier and location server that is a "network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients." |
| [1.b] a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier and location server. |
| [1.c] programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity. | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier and location server. |

EXHIBIT 3B: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,233,978 | Skagerwall and Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| [3] The system of claim 1, wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query. | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. *See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier and location server. This claim element requires that if a location server does not contain the desired location information, the location server transmits a redirect message to the client. The redirect message contains information for finding the location server known to have the information relevant to the location query. That is, the information allows for determining which location server contains the location information with certainty and specificity. Skagerwall does not teach or suggest transmitting a redirect message that comprises "information for finding a location server known to have location information relevant to the location query." Skagerwall's Fig. 2a (reproduced below) illustrates a process for retrieving object data. |

EXHIBIT 3B: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,233,978 | Skagerwall and Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | <br><br>Skagerwall, Fig. 2.<br>With respect to Fig. 2, Skagerwall states "If in step S26 it has been determined that object data related to the object tag is not located at the identified primary directory server, in a step S28, the lookup request is forwarded to other directory servers. In case the number of directory servers has been increased recently, the lookup request may be forwarded to a directory server which is determined using the hashfunction based on a previous number of available directory servers." Id. at 12:63-66.<br>Skagerwall's Fig. 3 (reproduced below) illustrates the process for retrieving application data packets related to an object. |

5

EXHIBIT 3B: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,233,978 | Skagerwall and Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| |  Skagerwall, Fig. 3. With respect to Fig. 3, Skagerwall states: "If the location γ of the server hashtable is empty, in a step S35 an operation α=α/2 is performed and the flow returns to step S33. In S33, again, β mod α is computed in order to obtain a new γ. The flow then again reaches step S34 and once again it is determined, whether the hashtable location γ contains a record comprising one of the directory server addresses. This loop of steps S33, S34 and S35 is repeated until, in step S35 it is determined that the hashtable location γ contains a record comprising a directory server address. Then, in a step S36 a request including the read object tag is transmitted to the target |

EXHIBIT 3B: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,233,978 | Skagerwall and Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | directory server, i.e., the directory server, whose address is stored at the hashtable location γ.<br><br>Subsequently, in a step S37, the target directory server determines, whether the object data stored thereon actually includes a record comprising the read object tag. In case such a record can not be found, the flow returns to step S33, and γ is newly computed. The flow then continues as outlined before, until the directory server storing the object data is found. If none of the directory servers stores the object data, an error message is generated." *Id*. at 13:45-65.<br><br>In this regard, Skagerwall's access server identifies a target directory server that may store the desired object data based on the above-referenced computation. *See e.g., id*. The request for the object data is forwarded to the target directory server. *See e.g., id*. The target directory server determines whether it contains the desired location information. If not, the request is returned to the access server. *See e.g., id*.<br><br>AWS alleges that Skagerwall's access server can access act as a client. See FAFUIC, Exhibit 3B at 66. Even assuming arguendo that the access server can act as a client, Skagerwall's access server is only informed whether the directory server contains the desired location information. *Id*. at 13:45-65. The access server cannot use this information to calculate a location of a different data location server that contains the desired location string with any specificity and certainty. *Id*. Skagerwall does not return the desired location information in two or fewer iterations. Therefore, Skagerwall does not teach or suggest transmitting a redirect message that comprises "information for finding a location server known to have location information relevant to the location query."<br><br>Wolff does not teach or suggest transmitting a redirect message that comprises "information for finding a location server known to have location information relevant to the location query." Wolff describes optimizing network performance using client load rebalancing. Specifically, Wolff states: "Client load rebalancing refers to the ability of a client, enabled with processes in accordance with the current invention, to re-map a path through a plurality of nodes to a resource. The re- |

EXHIBIT 3B: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,233,978 | Skagerwall and Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | mapping may take place in response to a redirection command emanating from an overloaded node, e.g. server. The embodiments disclosed allow more efficient, robust communication between a plurality of clients and a plurality of resources, via a plurality of nodes. Resources can include, but are not limited to, computers, memory devices, imaging devices, printers, and data sets. A data set can include a database or a file system." Wolff at 2:41-51. Furthermore, Wolff states: "In operation at time T=0, normal client 100A is shown accessing memory resource 118 via path 70 through overloaded server 104. At the same time, aware client 102A is shown accessing memory resource 18, via path 74, through overloaded server 104A. At time T=1, process 102P1, implemented on aware client 102A, detects the overload condition of server 104A, and accesses memory resource 118 via an alternate path 76 through server 106A. Thus, in this subsequent state, the load on server." *Id.* at 5:25-38. As such, in the event of a network bottleneck, Wolff reroutes a client requesting to connect to a memory resource via an alternate path. Id. Wolff's client does not transmit a location query to the server or node. Rather, Wolff's client transmits a request to connect to a given resource (e.g., memory resource). *Id.*, 2:41-51. Wolff's server or node redirects the client to a different server or node that is not as burdened. Id., 5:25-38. Wolff is completely silent with respect transmitting a message contains information that allows for finding which location server contains the desired location information with certainty and specificity.

A POSA would not find it obvious to modify Skagerwall with Wolff to satisfy the claim limitations because Skagerwall and Wolff do not contemplate transmitting a redirect message that comprises "information for finding a location server known to have location information relevant to the location query." Skagerwall describes linking physical objects to data stored about the objects in databases. *See* Skagerwall at Abstract. Wolff describes optimizing network performance using client load rebalancing. *See* Wolff at 2:41-51. Skagerwall and Wolff are not directed at addressing the issue of transmitting a redirect message that comprises "information for finding a location server known to have location information relevant to the location query." As such, any rationale to modify Skagerwall and Wolff to satisfy |

EXHIBIT 3B: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,233,978 | Skagerwall and Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
|  | the claim limitations is based on impermissible hindsight. Additionally, there is no reasonable expectation of success satisfying the claim requirements by modifying Skagerwall and/or Wolff because doing so would require extensive reengineering of Skagerwall and/or Wolff. |
| [6] The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table. | "Hash table" is construed as "a data structure that stores values in a table, where values are stored and retrieved by applying a hash function to an input and using the function result as an index into the table." 6<br><br>Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. *See* claim [1.a]-[1.c].<br><br>Both Skagerwall and Wolff are completely silent regarding using a distributed hash table or consistent hashing. AWS alleges that "the '978 Patent acknowledges that motivation existed in a POSITA's general knowledge prior to the earliest priority date to have Skagerwall's location information comprises a portion of a hash table distributed over the plurality of directory servers. This establishes that claim 6 is obvious over the prior art. This general knowledge available to a POSITA was confirmed in the related reexamination of U.S. Pat. No. 7,814,170, where the Reexamination Specialist found that "the use of hash functions was well known in the database art long before the date of the invention." However, AWS's support for this argument merely describes the use of a hash function. Indeed, the '978 patent never indicates that motivation existed in a POSA's general knowledge before the earliest priority date to have location information in the location server is maintained in an indexed location store indexed by a hash table. |
| [10.Preamble] A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>See claims [1.Preamble]-[3]. |

---

6 Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

EXHIBIT 3B: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,233,978 | Skagerwall and Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| | |
| [10.a] a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier and location server. |
| [10.b] programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier. | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] and [3] re hierarchical configuration, identifier, location server, and the redirect message. |
| [14.Preamble] A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising: | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>See claims [1.Preamble]-[1.c] and [3]. |

10

EXHIBIT 3B: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,233,978 | Skagerwall and Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| [14.a] receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location; | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious. *See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier and location server |
| [14.b] sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier and location server. |
| [14.c] sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query. | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claims [1.Preamble]-[1.a] and [3].re hierarchical configuration, identifier, location server, and the redirect message. |
| [31.Preamble] A system for managing location information and providing location information to location queries, the system comprising: | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claims [1.Preamble]-[1.c]. |
| [31.a] a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity, the location server | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier and location server. |

EXHIBIT 3B: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall and Wolff.

| U.S. Patent No. 7,233,978 | Skagerwall and Wolff for claims 1, 3, 6, 10, 14, and 31[1,2,3] |
|---|---|
| containing location information corresponding to at least one entity and formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and | |
| [31.b] programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity. | Kove denies that this element is disclosed by Skagerwall and/or Wolff, or that it is rendered obvious.<br><br>*See* claim [1.Preamble]-[1.a] re hierarchical configuration, identifier and location server. |

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

AWS purports to assert that U.S. Patent No. 7,233,978 ("the '978 patent") claims 17, 23, 24, and 30 are rendered obvious by OracleNamesAdminGuide alone or in view of OracleUnleashed, Steen, Yocum, and/or Boukobza. But AWS has failed to establish that OracleNamesAdminGuide, OracleUnleashed, and/or Steen were publicly available before the priority date of the '978 patent. AWS alleges that AWS's Exhibit 3A reflect "Specifically, based on Kove's statements and Amazon's proposed constructions, claims 17, 23, 24, and 30 also require that the location servers be organized in a non-hierarchical cluster structure, that each location server be able to respond to any location request with either the location of the data or the location of a server known to contain the requested location data without an intervening traversal, and that each request must be resolved in two or fewer traversals." AWS's Fifth Amended Final Unenforceability and Invalidity Contentions Exhibits 3A-D at 86. Kove does not agree that Kove's statements created any additional claim requirements. Kove believes that OracleNamesAdminGuide alone or in combination with OracleUnleashed, Steen, and/or Wolff are deficient based on the claim requirements imposed by the plain language of the claims and the current claim construction order. *See* Joint Claim Construction Chart (Updated) (Dkt. No. 382) and Claim Construction Order (Updated) (Dkt. No. 484).

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| [17.Preamble] A method of scaling at least one of capacity and transaction rate capability in a location server in a system having a plurality of location servers for storing and retrieving location information, wherein each of the plurality of location servers stores unique set of | "Location information" is construed as "information pertaining to one or more locations of data and/or the identities of one or more location servers." [3] <br> "Identifier string" is construed as a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."[4] |

---

[1] Kove uses the information currently available to it to provide its responses to AWS's Fifth Amended Final Unenforceability and Invalidity Contentions ("FAFUIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFUIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[2] Kove incorporates by reference its Response to the Office Action, the Non-Final Office Action, and Final Rejection in the Reexamination Proceeding of the '978 patent (90/019,034).

[3] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

[4] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

1

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| location information of an aggregate set of location information, the method comprising: | "Location server" is construed as "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients"[5]<br><br>To the extent the preamble is limiting, Kove denies that this element is disclosed OracleNamesAdminGuide alone or in view of OracleUnleashed, Steen, Yocum, and/or Boukobza, or that it is rendered obvious.<br><br>OracleNamesAdminGuide does not teach or suggest a "location server" that is "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients" because OracleNamesAdminGuide does not teach or suggest an identifier/identifier string that is a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server." OracleNamesAdminGuide describes using service names (e.g., canonical names or aliases) or database links to retrieve network addresses of network objects and services. OracleNamesAdminGuide at 52-54. For example, OracleNamesAdminGuide describes the following process when attempting to retrieve a network address for a database service "1. The client application issues a connection request to SQL*Net of the form: sqlplus scott/tiger@POULTRY where POULTRY is a database service name defined in the Oracle Names Server. SQL*Net determines from the client configuration in the SQLNET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net sends the Names Server a request to resolve the name POULTRY.WORLD. 2. The Names Server receives the request, looks it up in the cache, then sends the response back to the client. 3. The client receives the answer and substitutes the address in place of the initial name POULTRY. 4. The client contacts POULTRY and establishes a standard SQL*Net client–server connection." *Id*. at 52-53. In this example, the network addresses service name is "POULTRY." |

---

[5] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | However, the service names or database links are not unique. For example, OracleNamesAdminGuide allows users to create public and private names or database links to network services or objects. OracleNamesAdminGuide defines a public database links as "A database link created by a DBA on a local database which is accessible to all users on that database." *Id*. at 202. Furthermore, OracleNamesAdminGuide defines a private database link as "A DBlink created by one user for his or her exclusive use." [Id]. OracleNamesAdminGuide does not restrict users from assigning identical private and public database links to two different databases. OracleNamesAdminGuide provides numerous examples of allowing users to use non-unique names or links for network services or objects. For example, OracleNamesAdminGuide describes the process of locating a database link as follows: "Server TOM receives the SQL statement shown and checks its data dictionary for a private or public database link called JERRY. When it does not find one, SQL*Net determines from the client configuration in the SQLNET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net then sends the Names Server a request to resolve the database link name JERRY.WORLD." OracleNamesAdminGuide, 54. OracleNamesAdminGuide further states "When a database link is used to select information from a remote database table (for example, SELECT * FROM EMP@HR.US.ORACLE.COM), Oracle searches for a connect descriptor in the following locations in the following order: 1. the user's private database links 2. the database public database links 3. the Oracle Names Server global database links." *Id*. at 110. Therefore, when processing a query, OracleNamesAdminGuide first checks for the name or database link in the user's private database links. To this end, this configuration does not prevent the same name or link from being included in the user's private database links and the public database links. OracleNamesAdminGuide's use of non-unique names or database links for network services or objects is further illustrated in its querying process. OracleNamesAdminGuide teaches that "If the QUERY command is used with just a name as a parameter, the Names Server responds with the number of pieces of data |

3

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | with that name, and the time required to complete the operation." *Id.* at 129. OracleNamesAdminGuide provides the following example of a query:<br><br>Example:<br><br>```<br>NAMESCTL> QUERY BONES.DEM.MEDICINE A.SMD<br>Total response time:    0.04 seconds<br>Response status:        normal, successful completion<br>Authoritative answer:   yes<br>Number of answers:      1<br>Canonical name:         bones.dem.medicine<br>TTL:                    1 day<br>Alias translations:<br>    from:               bones.dem.medicine<br>    to:                 bones.dem.medicine<br>Answers:<br>    data type is "a.smd"<br>        Syntax is ADDR:...(DESCRIPTION=(ADDRESS=<br>    (COMMUNITY=tcp)(PROTOCOL=TCP)(Host=cowboy)<br>    (Port=1522))(CONNECT_DATA=(SID=rodeo)))<br>```<br><br>Id.<br><br>In this example, the "number of answers" is 1. However, if multiple network objects are found using the same name or database link, the number of answers would be more than 1.  As such multiple network objects or database links may be retrieved using the same name or database link.<br>Furthermore, OracleNamesAdminGuide requires that the query command include the network object name and network object type. *Id.* at 129.  As such, OracleNamesAdminGuide attempts to identify network object using the network object name and network object type.  This further confirms that the network object name is non-unique; otherwise, the network object type would not be needed to locate the network object.  Therefore, OracleNamesAdminGuide does not restrict the network objects in the network from having non-unique names.<br>Furthermore, Oracle Names's Names Servers are not restricted from storing identifiers where each identifier identifies a single entity, as required by the claims. |

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | Oracle Names allows for users to assign public and private names to network services and objects. *See e.g.*, OracleNamesAdminGuide, 54, 110. Oracle Names allows for the public and private names to be identical, and the same name can be used to identify multiple entities. *Id*. |
| | OracleUnleashed also does not teach or suggest a "location server" that is "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients" because OracleUnleashed does not teach or suggest an identifier/identifier string that is a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server." OracleUnleashed describes assigning synonyms and/or aliases for tables or views in a database. *See* OracleUnleashed at 219 and 228. However, OracleUnleashed does not teach or suggest a synonym that uniquely identifies a database, table or view. For example, OracleUnleashed describes using private or public synonyms to identify a database, table, or view. *See e.g., id*. Multiple users in the database network may use the same synonym to identify the different databases, tables, or views. *See e.g., id*. That is, a first user may use synonym X to refer to database 1 and a second user in the same database network may also use synonym X to refer to database 2. *See e.g., id*. Additionally, while OracleUnleashed mentions a Names Server, OracleUnleashed does not describe whether the names stored in the Names Server uniquely identify a single entity. *See e.g., id*. at 424. Therefore, OracleUnleashed does not teach or suggest an identifier that uniquely identifies an entity. |
| | Steen also does not teach or suggest a "location server" that is "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients" because Steen does not teach or suggest an identifier/identifier string that is a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server.". Specifically, Steen states "Unlike cellular telephones, computer objects often have two or more addresses. For example, a |

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | replicated file will be known to its users under one name, which is mapped to several addresses, one for each copy." Steen at 104. Here, each copy of the file is a separate entity. Therefore, in Steen an identifier identifies multiple entities. Steen further states "As an illustration, consider an officeless company whose employees are located across the country, normally working at home, or visiting customers. Using our approach, we assign a lifetime and location-independent telephone number to the company. This number corresponds to an object handle. A naming or directory service would maintain a mapping between the company's name and it's lifetime telephone number. The telephone number is used by a location service to redirect incoming calls to, for example, the nearest employee currently working. An employee's own telephone number is registered at the location service when he or she starts work, and is unregistered again when he or she finishes. An employee's telephone number corresponds to a contact address. Note that how the company is named, and in which directories its name is registered, is no longer important. Naming has been fully separated from how and where we contact the company." *Id.* at 105. Again, in Steen's example, the telephone number identifies multiple employees (i.e., multiple entities). Therefore, Steen does not teach or suggest an identifier string that identifies a single entity, as required by the claims. <br><br> Boukobza does not teach or suggest a "location server" that is "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients." Boukobza is completely silent regarding a location server that maintains mappings of identifiers and locations. <br><br> Furthermore, Boukobza does not teach or suggest an identifier/identifier string that is a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server." AWS points to Boukobza's description of connection string and TNS_ADMIN variables to allegedly teach the claimed location information and identifier. *See* Exhibit 3C at 147-148 and Boukobza at 7:1-31. However, Boukobza does not indicate that the |

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | connection string and/or TNS_ADMIN are identifiers that uniquely *identify* a *unique entity*. Therefore, Boukobza does not teach or suggest the claimed identifier/identifier string. <br><br> Yocum is silent regarding location server" that is "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients" and an identifier/identifier string that is a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server." |
| **[17.a]** providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information related to the identifier; | Kove denies that this element is disclosed OracleNamesAdminGuide alone or in view of OracleUnleashed, Steen, Yocum, and/or Boukobza, or that it is rendered obvious. <br><br> *See* claim [1.Preamble] re location string and identifier. |
| **[17.b]** storing location information formatted according to the transfer protocol at a first location server; | Kove denies that this element is disclosed OracleNamesAdminGuide alone or in view of OracleUnleashed, Steen, Yocum, and/or Boukobza, or that it is rendered obvious. <br><br> *See* claim [17.Preamble] re location string and identifier. |
| **[17.c]** receiving an identifier and a location relevant to the identifier at the first location server; | Kove denies that this element is disclosed OracleNamesAdminGuide alone or in view of OracleUnleashed, Steen, Yocum, and/or Boukobza, or that it is rendered obvious. <br><br> *See* claim [17.Preamble] re location string and identifier. |
| **[17.d]** storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each | Kove denies that this element is disclosed OracleNamesAdminGuide alone or in view of OracleUnleashed, Steen, Yocum, and/or Boukobza, or that it is rendered obvious. |

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and | *See* claim [17.Preamble] re location string and identifier. |
| **[17.e]** transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. | Kove denies that this element is disclosed OracleNamesAdminGuide alone or in view of OracleUnleashed, Steen, Yocum, and/or Boukobza, or that it is rendered obvious. |

Other content in the second column below the claim element:

*See* claim [17.Preamble] re location string and identifier.

OracleNamesAdminGuide does not teach or suggest "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." As indicated in the Non-Final Office Action in the reexam of the '978 patent, "The mere concept of having more than one location servers that contain potentially different identifiers and associated locations as discussed in the ONAG and OSG references in combination with the discussions of optimization found in ONAG and OSG does not actually teach the act of "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit" as it is claimed" Non-Final Office Action in the '978 Reexam at 36.

OracleNamesAdminGuide is completely silent regarding *transferring* a portion of the identifiers and associated locations from a first location server to a second location server. OracleNamesAdminGuide merely indicates that there may be multiple Names Servers. *See* OracleNamesAdminGuide at 146, 191-192, and 198. In this regard, a POSA would not find it obvious to modify OracleNamesAdminGuide to "transfer a portion of the identifiers and associated locations from a first location server to a second location server when a performance criterion of the first location server reaches a predetermined performance limit,"

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | because OracleNamesAdminGuide never contemplates transferring a portion of the identifiers and associated locations from a first location server to a second location server.<br><br>OracleUnleashed does not teach or suggest transferring a portion of *the identifiers and associated locations* from a *first location server to a second location server* when *a performance criterion of the first location server reaches a predetermined performance limit*.<br><br>AWS points to OracleUnleashed's description of monitoring and partitioning to satisfy this claim element. *See e.g.,* Exhibit 3C at 178-192 and OracleUnleashed at 235, 338, 424-425, 443-444, 468, and 591. AWS further points to OracleUnleashed mention of a Names Server. *See e.g., id.* However, OracleUnleashed never describes *transferring* data from a first server to a second server based on the first database reaching a performance limit. OracleUnleashed's partitioning does not correspond with *transferring* data form a first server to a second server. Partitioning involves splitting up database tables – not transferring data. *See e.g., id.* at 235, 338, 424-425, 443-444, 468, and 591. Furthermore, even if OracleUnleashed's partitioning corresponds with transferring data, OracleUnleashed is silent with respect to transferring the data *when* the first server reaches a performance limit.<br><br>OracleUnleashed describes adding new databases to add new data. *See e.g., id.* OracleUnleashed does not describe partitioning in terms of transferring existing data between existing databases. *See e.g., id.* OracleUnleashed warehouses old data in a static way, which is different than transferring data for the purpose of scaling based on performance limits. *See e.g., id.* Moreover, the performance limits are system wide performance limits—not server or database specific performance limits. Furthermore, the OracleUnleashed's partitioning is system wide, not server or database specific. *See e.g., id.* Therefore, OracleUnleashed does not teach or |

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
|  | suggest transferring the data from a first server to a second server *when* the first database reaches a performance limit.<br><br>Furthermore, OracleUnleashed is completely silent about determining whether the Names Server has reached a performance limit.  OracleUnleashed only describes its monitoring functionality with respect to databases that store data – not a Names Server.  *See e.g.,* OracleUnleashed at 424-425, 443-444, and 468.  Additionally, OracleUnleashed only describes the partitioning functionality with respect to the databases that store data – not a Names Server.  *See e.g., id.* at 424-425 and 840.  OracleUnleashed never contemplates transferring a portion of identifiers and their locations from a first location server to a second location server.<br><br>A POSA would not have found it obvious or be motivated to modify OracleNamesAdminGuide and/or OracleUnleashed to satisfy the requirements of this element.  AWS alleges that "a POSITA would have understood that Names Servers would be candidates for partitioning because they may be "***the limiting factor for performance because it is accessed all of the time (and it is too big to cache in memory).***" […] OracleNamesAdminGuide doesn't describe partitioning for a specific application to location servers, it would have been obvious to a POSITA to apply this performance correcting process to location servers based on OracleUnleashed's teachings." Exhibit 3C at 190-191 (citation omitted) (emphasis in original).<br><br>A POSA would  have found it obvious or be motivated to modify OracleNamesAdminGuide and/or OracleUnleashed to satisfy the requirements of this element because neither OracleNamesAdminGuide and/or OracleUnleashed contemplate transferring a portion of transferring a portion of identifiers and their locations from a first location server to a second location server and determining that a location server has reached a predetermined performance limit based on performance criterion.  OracleNamesAdminGuide is a manual that describes Oracle 7 products.  *See* OracleNamesAdminGuide at 19-26.  Specifically, |

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | OracleNamesAdminGuide describes the use of Oracle Names products. *See e.g., id.* OracleNamesAdminGuide looks to address issues in networking databases. *See e.g., id.* OracleUnleashed is a manual that describes Oracle 8 products. *See* OracleUnleashed at 8-14. OracleUnleashed looks to address issues with managing databases. *See e.g., id.* OracleNamesAdminGuide and OracleUnleashed are not directed to the issue of determining if location servers are at their performance limits and/or scaling location servers. As such, any motivation to combine OracleNamesAdminGuide and OracleUnleashed is based on impressionable hindsight. Furthermore, a POSA would not have a reasonable expectation of success of satisfying the requirements of this element by modifying OracleNamesAdminGuide and/or OracleUnleashed because doing so would require extensive reengineering of OracleNamesAdminGuide and/or OracleUnleashed. |
| | Furthermore, OracleUnleashed teaches away from scaling location servers. OracleUnleashed describes partitioning the databases that store the data not the locations. Therefore, OracleUnleashed's teachings are counterintuitive to the claims requirements, and thus, OracleUnleashed teaches away from scaling location servers. |
| | Steen also does not teach or suggest "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." Steen states that "In particular, higher-level directory nodes not only have to handle a relatively large number of requests, they also have enormous storage demands. Our solution is to partition a directory node into one or more directory subnodes such that each subnode is responsible for a subset of the records originally stored at the directory node." Steen at 107-108. However, Steen does not teach or suggest *transferring* identifiers and associated locations from a first location server to a second location server. The partitioning described in Steen only splits the information stored in a directory node into subnodes. Steen does not teach or suggest transferring identifiers and associated locations from a first location server to a second location server that |

11

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | already exists. *See e.g., id*. Furthermore, Steen does not teach or suggest initiating the transfer *when* a given location server reaches a predetermined performance limit. Steen is completely silent about determining that a location server has reached a predetermined performance limit. A POSA would have found it obvious or be motivated to modify OracleNamesAdminGuide, OracleUnleashed, and/or Steen to satisfy the requirements of this element because neither OracleNamesAdminGuide, OracleUnleashed, and/or Steen contemplate transferring a portion of transferring a portion of identifiers and their locations from a first location server to a second location server and determining that a location server has reached a predetermined performance limit based on performance criterion. OracleNamesAdminGuide, OracleUnleashed, and/or Steen are not directed to the issue of scaling location servers. As such, any motivation to combine OracleNamesAdminGuide, OracleUnleashed, and/or Steen is based on impermissible hindsight. Furthermore, a POSA would not have a reasonable expectation of success of satisfying the requirements of this element by modifying OracleNamesAdminGuide, OracleUnleashed, and/or Steen because doing so would require extensive reengineering of OracleNamesAdminGuide, OracleUnleashed, and/or Steen. Boukobza also does not teach or suggest "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." As indicated above, Boukobza does not teach or suggest a location server that maintains mapping of identifiers associated locations. *See* claim [17.Preamble]. In this regard, Boukobza is completely silent about *transferring* identifiers and associated locations from a first location server to a second location server. Furthermore, Boukobza is completely silent regarding determining that a location server has reached its predetermined performance limit. |

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | A POSA would have found it obvious or be motivated to modify OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Boukobza to satisfy the requirements of this element because neither OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Boukobza contemplate transferring a portion of transferring a portion of identifiers and their locations from a first location server to a second location server and determining that a location server has reached a predetermined performance limit based on performance criterion. OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Boukobza are not directed to the issue of scaling location servers. As such, any motivation to combine OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Boukobza is based on impermissible hindsight. Furthermore, a POSA would not have a reasonable expectation of success of satisfying the requirements of this element by modifying OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Boukobza because doing so would require extensive reengineering of OracleNamesAdminGuide, OracleUnleashed, Steen, and/or Boukobza. <br><br> Yocum is neither relied on nor does it teach or suggest transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." Particularly, Yocum does not teach or suggest location servers that store mapping of identifiers and locations of data. Furthermore, Yocum is silent about determining the performance limit of a location server. As such, Yocum does not teach or suggest transferring a portion of transferring a portion of identifiers and their locations from a first location server to a second location server and determining that a location server has reached a predetermined performance limit based on a performance criterion. |
| [23] The method of claim 17, wherein the performance criterion comprises an amount of available persistent storage space in the first location server. | Kove denies that this element is disclosed by DNS or other references, or that it is rendered obvious. *See* claim [17.Preamble-e]. <br><br> As indicated above, OracleNamesAdminGuide, OracleUnleashed, Steen, Boukobza, and/or Yocum does not teach or suggest determining that a location server has |

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
|  | reached a predetermined performance limit based on performance criterion. *See* claim [17.e]. As such, OracleNamesAdminGuide, OracleUnleashed, Steen, Boukobza, and/or Yocum does not teach or suggest "the performance criterion comprises an amount of available persistent storage space in the first location server." A POSA would not find it obvious or be motivated to modify OracleNamesAdminGuide, OracleUnleashed, Steen, Boukobza, and/or Yocum to satisfy the claim requirements because OracleNamesAdminGuide, OracleUnleashed, Steen, Boukobza, and/or Yocum do not teach or suggest determining that a location server has reached a predetermined performance limit based on performance criterion. *See* claim [17.e]. |
| [24] The method of claim 17, wherein the performance criterion comprises a transaction rate limit. | Kove denies that this element is disclosed by DNS or other references, or that it is rendered obvious. *See* claim [17.Preamble-e].<br><br>As indicated above, OracleNamesAdminGuide, OracleUnleashed, Steen, Boukobza, and/or Yocum does not teach or suggest determining that a location server has reached a predetermined performance limit based on performance criterion. *See* claim [17.e]. As such, OracleNamesAdminGuide, OracleUnleashed, Steen, Boukobza, and/or Yocum does not teach or suggest "the performance criterion comprises a transaction rate limit." A POSA would not find it obvious or be motivated to modify OracleNamesAdminGuide, OracleUnleashed, Steen, Boukobza, and/or Yocum to satisfy the claim requirements because OracleNamesAdminGuide, OracleUnleashed, Steen, Boukobza, and/or Yocum do not teach or suggest determining that a location server has reached a predetermined performance limit based on performance criterion. *See* claim [17.e]. |
| [30] The method of claim 17, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined | Kove denies that this element is disclosed by DNS or other references, or that it is rendered obvious. *See* claim [17.Preamble-e].<br><br>OracleNamesAdminGuide does not teach or render obvious "transferring a portion of the identifiers and associated locations to a second location server when a |

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit. | performance criterion of the first data location server reaches a predetermined performance limit." *See* claim [17.e]. Therefore, OracleNamesAdminGuide does not teach or suggest the "transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit." |
| | OracleUnleashed also does not teach or suggest "transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit." *See* claim [17.e]. Therefore, OracleUnleashed does not teach or suggest the "transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit." |
| | AWS alleges OracleUnleashed discloses monitoring database conditions. *See* Exhibit 3C at 226-228. However, OracleUnleashed is completely silent regarding monitoring the conditions of a location server that includes mapping of identifiers and associated locations. *See* claim [17.e]. |
| | Furthermore, OracleUnleashed also does not teach or suggest *automatically* transferring identifiers and associated locations from a first location server to a second location server. AWS points to OracleUnleashed description of automation of tasks related to database systems to satisfy the claim requirements. *See e.g.,* Exhibit 3C at 228-230 and OracleUnleashed at 448, 482, 576. However, OracleUnleashed never describes initiating transfer as an automated task. For example, AWS alleges that OracleUnleashed's partitioning corresponds with the |

15

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | claimed "transferring." *See e.g.,* Exhibit 3C at 178-192 and OracleUnleashed at 235, 338, 424-425, 443-444, 468, and 591. However, even assuming arguendo that OracleUnleashed's partitioning corresponds with the claimed "transferring," OracleUnleashed never describes partitioning as an automated task. Instead, partitioning is always described as a manual task. OracleUnleashed at 235, 338, 424-425, 443-444, 468, and 591. Therefore, OracleUnleashed does not teach or suggest *automatically* transferring identifiers and associated locations from a first location server to a second location server. |

Yocum also does not teach or suggest "transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit." AWS alleges that "Yocum discloses automating the performance assessment and corrective actions based on predetermined performance criterion." Exhibit 3C at 231. However, as indicated above, Yocum does not teach or suggest location servers that store mapping of identifiers and locations of data. Furthermore, Yocum is silent about determining the performance limit of a location server. As such, Yocum does not teach or suggest transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit. *See* claim [17.e].

Boukobza also does not teach or suggest "transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches

16

EXHIBIT 3C: U.S. 7,233,978 Validity Claim Chart in View of OracleNamesAdminGuide, OracleUnleashed, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | OracleNamesAdminGuide in view of OracleUnleashed, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | the predetermined limit." As indicated above, Boukobza does not teach or suggest a location server that maintains mapping of identifiers associated locations. *See* claim [17.Preamble]. In this regard, Boukobza is completely silent about *transferring* identifiers and associated locations from a first location server to a second location server. Furthermore, Boukobza is completely silent regarding determining that a location server has reached its predetermined performance limit. *See* claim [17.e]. |
| | A POSA would not find it obvious or be motivated to modify OracleNamesAdminGuide, OracleUnleashed, Yocum, and Boukobza to satisfy the claim requirements because OracleNamesAdminGuide, OracleUnleashed, Yocum, and Boukobza do not teach or suggest *automatically* transferring identifiers and associated locations from a first location server to a second location server. OracleNamesAdminGuide, OracleUnleashed, Yocum, and Boukobza do not address the issue of scaling location servers automatically. As such, any motivation to combine OracleNamesAdminGuide, OracleUnleashed, Yocum, and/or Boukobza is based on impermissible hindsight. Furthermore, a POSA would not have a reasonable expectation of success of satisfying the requirements of this element by modifying OracleNamesAdminGuide, OracleUnleashed, Yocum, and Boukobza because doing so would require extensive reengineering of OracleNamesAdminGuide, OracleUnleashed, Yocum, and Boukobza. |

17

EXHIBIT 3D: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall, Steen, Yocum, and/or Boukobza

AWS purports to assert that U.S. Patent No. 7,233,978 ("the '978 patent") claims 17, 23, 24, and 30 are rendered obvious by Skagerwall alone or in view of Steen, Yocum, and/or Boukobza. But AWS has failed to establish that Steen was publicly available before the priority date of the '978 patent. AWS alleges that AWS's Exhibit 3A reflect "Specifically, based on Kove's statements and Amazon's proposed constructions, claims 17, 23, 24, and 30 also require that the location servers be organized in a non-hierarchical cluster structure, that each location server be able to respond to any location request with either the location of the data or the location of a server known to contain the requested location data without an intervening traversal, and that each request must be resolved in two or fewer traversals." AWS's Fifth Amended Final Unenforceability and Invalidity Contentions Exhibits 3A-D at 237. Kove does not agree that Kove's statements created any additional claim requirements. Kove believes that OracleNamesAdminGuide alone or in combination with OracleUnleashed, Steen, and/or Wolff are deficient based on the claim requirements imposed by the plain language of the claims and the current claim construction order. *See* Joint Claim Construction Chart (Updated) (Dkt. No. 382) and Claim Construction Order (Updated) (Dkt. No. 484).

| U.S. Patent No. 7,233,978 | Skagerwall, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| **[17.Preamble]** A method of scaling at least one of capacity and transaction rate capability in a location server in a system having a plurality of location servers for storing and retrieving location information, wherein each of the plurality of location servers stores unique set of | "Location information" is construed as "one or more identifiers and their associated locations." [3]<br>"Identifier string" is construed as a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."[4] |

---

[1] Kove uses the information currently available to it to provide its responses to AWS's Fifth Amended Final Unenforceability and Invalidity Contentions ("FAFUIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFUIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[2] Kove incorporates by reference its Response to the Office Action, the Non-Final Office Action, and Final Rejection in the Reexamination Proceeding of the '978 patent (90/019,034).

[3] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

[4] Joint Claim Construction Chart (Updated) (Dkt. No. 382) at 6.

1

EXHIBIT 3D: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | Skagerwall, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| location information of an aggregate set of location information, the method comprising: | "Location server" is construed as "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients"[5] <br><br> "Client" is construed as "a network-attached component (which may be software or hardware) that initiates update or lookup of identifier/location mappings from a location server with location request messages." [6] <br><br> To the extent the preamble is limiting, Kove denies that Skagerwall, Steen, Yocum, and/or Boukobza discloses this element, or that it is rendered obvious. <br><br> Skagerwall describes linking objects to information services in a network. *See* Skagerwall at Abstract. Skagerwall is completely silent regarding determining the capacity and/or transaction rate of a location server. <br><br> Skagerwall does not teach or suggest an identifier that uniquely identifies a *single* entity. AWS alleges that Skagerwall's tag corresponds with the claimed identifier. However, Skagerwall describes using a tag for groups of objects. For example, Skagerwall states With the System according to the invention, the user is, e.g., able to access default information related to an object or a group of objects, for example, as provided by the manufacturer of the particular objects or products." Skagerwall at 6:59-62. As such, a tag can identify more than one object. Furthermore, even if different objects have different tags, as long as the objects are the same type of object, the tag will retrieve the same data packets. *See e.g., id*. at 6:59-62. <br><br> Furthermore, Skagerwall describes each tag including its own identifier. For example, Skagerwall states "The search means SM groups object tags, preferably in correspondence with the number of objects and the number of available directory Servers, i.e., a target directory Server for Storing as well as for retrieving object data is determined based on an identifier of an object tag, which, e.g., may be a number |

---

[5] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

[6] Claim Construction Order (Updated) (Dkt. No. 484) at 35.

2

EXHIBIT 3D: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | Skagerwall, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | assigned to the tag, and the number of available directory servers DS; DS1-DSn." *Id.* at 10:43-49; *see also id.* at 13:24-30. This suggests that object tags are not unique, and that uniqueness would be achieved, if at all, through the object tag identifier.<br><br>Steen does not teach or suggest a "location server" that is "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients" because Steen does not teach or suggest an identifier/identifier string that is a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server.". Specifically, Steen states "Unlike cellular telephones, computer objects often have two or more addresses. For example, a replicated file will be known to its users under one name, which is mapped to several addresses, one for each copy." Steen at 104. Here, each copy of the file is a separate entity. Therefore, in Steen an identifier identifies multiple entities.<br><br>Steen further states "As an illustration, consider an officeless company whose employees are located across the country, normally working at home, or visiting customers. Using our approach, we assign a lifetime and location-independent telephone number to the company. This number corresponds to an object handle. A naming or directory service would maintain a mapping between the company's name and it's lifetime telephone number. The telephone number is used by a location service to redirect incoming calls to, for example, the nearest employee currently working. An employee's own telephone number is registered at the location service when he or she starts work, and is unregistered again when he or she finishes. An employee's telephone number corresponds to a contact address. Note that how the company is named, and in which directories its name is registered, is no longer important. Naming has been fully separated from how and where we contact the company." *Id.* at 105. Again, in Steen's example, the telephone number identifies multiple employees (i.e., multiple entities). Therefore, Steen does not teach or suggest an identifier string that identifies a single entity, as required by the claims. |

EXHIBIT 3D: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | Skagerwall, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | Boukobza does not teach or suggest a "location server" that is "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients." Boukobza is completely silent regarding a location server that maintains mappings of identifiers and locations.<br><br>Furthermore, Boukobza does not teach or suggest an identifier/identifier string that is a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server." AWS points to Boukobza's description of connection string and TNS_ADMIN variables to allegedly teach the claimed location information and identifier. *See* Exhibit 3C at 147-148 and Boukobza at 7:1-31. However, Boukobza does not indicate that the connection string and/or TNS_ADMIN are identifiers that uniquely *identify* a *unique entity*. Therefore, Boukobza does not teach or suggest the claimed identifier/identifier string.<br><br>Yocum is silent regarding location server" that is "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients" and an identifier/identifier string that is a "unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server." |
| **[17.a]** providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information related to the identifier; | Kove denies that Skagerwall, Steen, Yocum, and/or Boukobza discloses this element, or that it is rendered obvious.<br><br>*See* claim [1.Preamble] re location server and identifier. |
| **[17.b]** storing location information formatted according to the transfer protocol at a first location server; | Kove denies that this element is disclosed OracleNamesAdminGuide alone or in view of OracleUnleashed, Steen, Yocum, and/or Boukobza, or that it is rendered obvious.<br><br>*See* claim [17.Preamble] re location server and identifier. |

4

EXHIBIT 3D: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | Skagerwall, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | |
| **[17.c]** receiving an identifier and a location relevant to the identifier at the first location server; | Kove denies that Skagerwall, Steen, Yocum, and/or Boukobza discloses this element, or that it is rendered obvious. *See* claim [17.Preamble] re location server and identifier. |
| **[17.d]** storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and | Kove denies that Skagerwall, Steen, Yocum, and/or Boukobza discloses this element, or that it is rendered obvious. *See* claim [17.Preamble] re location server and identifier. |
| **[17.e]** transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. | Kove denies that Skagerwall, Steen, Yocum, and/or Boukobza discloses this element, or that it is rendered obvious. *See* claim [17.Preamble] re location server and identifier. Skagerwall does not teach or suggest "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." AWS relies on Skagerwall's discussion of "It is a key aspect of the invention that the data base of object data is distributed over a plurality of directory servers DS; DS1-DSn, allowing that the number of objects can be scaled almost arbitrarily by adding new directory servers to the existing ones for storing new object data. Each of the directory servers DS; DS1-DSn preferably stores object data related to a small number of the range of available object tags T; T1-Tw." Skagerwall at 8:15-22; *See also* Exhibit 3D at 271. AWS further points to Skagerwall's feature of adding directory servers. *See* Exhibit 3D at 271-276. However, Skagerwall does not mention *transferring* information from one directory server to another directory server. Notably, Skagerwall indicates that *new* directory servers are added to store *new* object data. In this regard, Skagerwall is silent |

EXHIBIT 3D: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | Skagerwall, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | regarding *transferring* a portion of identifiers and associated locations from a first location server to a second location server. |
| | Furthermore, AWS points to Skagerwall's discussion of "Specifically, the System is able to handle the insertion of new object data or removal of obsolete object data. Also, in case the capacity of the System needs to be increased, new directory servers can be added and Storage locations of object data can be rearranged accordingly. Similarly, directory servers may be removed." *Id*. at 11:19-24. Here, Skagerwall may rearrange object data from various directory servers based on adding new directory servers. *See id.* However, Skagerwall does not determine whether the performance criterion of a *specific location server* reaches a predetermined performance limit to transfer the portion of identifiers and associated location information from the *specific location server* to the second location server. Therefore, Skagerwall is silent regarding determining whether a given location server has reached a predetermined performance limit. As such, Skagerwall does not teach or suggest "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." |
| | Steen also does not teach or suggest "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." Steen states that "In particular, higher-level directory nodes not only have to handle a relatively large number of requests, they also have enormous storage demands. Our solution is to partition a directory node into one or more directory subnodes such that each subnode is responsible for a subset of the records originally stored at the directory node." Steen at 107-108. However, Steen does not teach or suggest *transferring* identifiers and associated locations from a first location server to a second location server. The partitioning described in Steen only splits the information stored in a directory node into subnodes. Steen does not teach or suggest transferring identifiers and associated locations from a first location server to a second location server that already exists. *See e.g., id.* Furthermore, Steen does not teach or suggest initiating |

EXHIBIT 3D: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | Skagerwall, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | the transfer *when* a given location server reaches a predetermined performance limit. Steen is completely silent about determining that a location server has reached a predetermined performance limit.<br><br>Boukobza also does not teach or suggest "transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first location server reaches a predetermined performance limit." As indicated above, Boukobza does not teach or suggest a location server that maintains mapping of identifiers associated locations. *See* claim [17.Preamble]. In this regard, Boukobza is completely silent about *transferring* identifiers and associated locations from a first location server to a second location server. Furthermore, Boukobza is completely silent regarding determining that a location server has reached its predetermined performance limit.<br><br>Yocum does not teach or suggest "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." Particularly, Yocum does not teach or suggest location servers that store mapping of identifiers and locations of data. Furthermore, Yocum is silent about determining the performance limit of a location server. As such, Yocum does not teach or suggest transferring a portion of transferring a portion of identifiers and their locations from a first location server to a second location server and determining that a location server has reached a predetermined performance limit based on a performance criterion.<br><br>A POSA would have found it obvious or be motivated to modify Skagerwall, Steen, Boukobza, and/or Yocum to satisfy the requirements of this element because neither Skagerwall, Steen, Boukobza, and/or Yocum contemplate transferring a portion of transferring a portion of identifiers and their locations from a first location server to a second location server and determining that a location server has reached a predetermined performance limit based on performance criterion. Skagerwall, Steen, Boukobza, and/or Yocum are not directed to the issue of scaling location servers. |

7

EXHIBIT 3D: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | Skagerwall, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | As such, any motivation to combine Skagerwall, Steen, Boukobza, and/or Yocum is based on impermissible hindsight.  Furthermore, a POSA would not have a reasonable expectation of success of satisfying the requirements of this element by modifying Skagerwall, Steen, Boukobza, and/or Yocum  because doing so would require extensive reengineering of Skagerwall, Steen, Boukobza, and/or Yocum. |
| **[23]** The method of claim 17, wherein the performance criterion comprises an amount of available persistent storage space in the first location server. | Kove denies that Skagerwall, Steen, Yocum, and/or Boukobza discloses this element, or that it is rendered obvious.  *See* claim [17.Preamble]-[17.e].<br><br>As indicated above, Skagerwall does not determine whether the performance criterion of a *specific location server* reaches a predetermined performance limit. Furthermore, Yocum and Boukobza are silent regarding location servers that store mapping of identifiers and locations of data.  Moreover, Yocum, Boukobza, and Steen are silent about determining the performance limit of a location server.  As such, Skagerwall, Steen,  Yocum, and/or Boukobza do not teach or render obvious claim 23.  *See* claim [17.e]. |
| **[24]** The method of claim 17, wherein the performance criterion comprises a transaction rate limit. | Kove denies that Skagerwall, Steen, Yocum, and/or Boukobza discloses this element, or that it is rendered obvious.  *See* claim [17.Preamble]-[17.e].<br><br>Skagerwall is silent regarding a transaction rate limit.  Moreover, as indicated above, Skagerwall does not determine whether the performance criterion of a *specific location server* reaches a predetermined performance limit.  Yocum and Boukobza are silent regarding location servers that store mapping of identifiers and locations of data.  Furthermore, Yocum, Boukobza, and Steen are silent about determining the performance limit of a location server.  As such, Skagerwall, Steen,  Yocum, and/or Boukobza do not teach or render obvious claim 24.  *See* claim [17.e]. |
| **[30]** The method of claim 17, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined | Kove denies that this element is disclosed by DNS or other references, or that it is rendered obvious.  *See* claim [17.Preamble-[17.e].<br><br>AWS does not rely upon Skagerwall and/or Steen to satisfy the claim requirements of claim 30.  Furthermore, Skagerwall and/or Steen are completely silent regarding |

EXHIBIT 3D: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | Skagerwall, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit. | "monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit." |
| | Yocum also does not teach or suggest "transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit." AWS alleges that "Yocum discloses automating the performance assessment and corrective actions based on predetermined performance criterion." Exhibit 3C at 231. However, as indicated above, Yocum does not teach or suggest location servers that store mapping of identifiers and locations of data. Furthermore, Yocum is silent about determining the performance limit of a location server. As such, Yocum does not teach or suggest transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit. *See* claim [17.e]. |
| | Boukobza also does not teach or suggest "transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit." As indicated above, Boukobza does not teach or suggest a location server that maintains mapping of identifiers associated locations. *See* claim [17.Preamble]. In this regard, Boukobza is completely silent about *transferring* identifiers and associated locations from a first location server to a second location server. Furthermore, Boukobza is completely silent regarding |

9

EXHIBIT 3D: U.S. 7,233,978 Validity Claim Chart in View of Skagerwall, Steen, Yocum, and/or Boukobza

| U.S. Patent No. 7,233,978 | Skagerwall, Steen, Yocum, and/or Boukobza for claims 17, 23, 24, and 30[1,2] |
|---|---|
| | determining that a location server has reached its predetermined performance limit. *See* claim [17.e]. <br><br> A POSA would not find it obvious or be motivated to modify Skagerwall, Steen, Yocum, and/or Boukobza to satisfy the claim requirements because Skagerwall, Steen, Yocum, and/or Boukobza do not teach or suggest *automatically* transferring identifiers and associated locations from a first location server to a second location server. Skagerwall, Steen, Boukobza, and/or Yocum are not directed to the issue of automatically scaling location servers. As such, any motivation to combine Skagerwall, Steen, Boukobza, and/or Yocum is based on impermissible hindsight. Furthermore, a POSA would not have a reasonable expectation of success of satisfying the requirements of this element by modifying Skagerwall, Steen, Boukobza, and/or Yocum because doing so would require extensive reengineering of Skagerwall, Steen, Boukobza, and/or Yocum. |

EXHIBIT 3E: U.S. 7,233,978 Validity Claim Chart in View of Neimat et al.

AWS purports to assert that claims 3, 6, 10, 14, 17, 23, 24, and 30 of U.S. Patent No. 7,233,978 ("the '978 patent") are obvious in view of the combination of U.S. Patent No. 5,542,087 to Neimat ("Neimat"), DNS and, for claim 24, Venkatasubramanian. AWS further alleges that the operation of DNS is described in BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman. But AWS has failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "DNS" reference is thus limited only to the document RFC1034.[1] AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| **[1.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Neimat.<br><br>Neimat does not disclose "a plurality of location servers for managing location information and providing location information to location queries," as the servers in Neimat are not data location servers. The servers in Neimat store records and relationships between memory addresses and server addresses. There are no location queries. |

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[3] Kove incorporates by reference Exhibit 3A of its Contentions, which discusses DNS. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276, which discusses DNS.

EXHIBIT 3E: U.S. 7,233,978 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2.3] |
|---|---|
| | The specification of the '978 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP request messages from clients." '978 patent at 4:19-38 (emphasis added). Specifically, the "location servers" of the '978 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See id.* (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the identifier and the application server's location." '978 patent at 8:14-25. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '978 patent at Abstract, Background. The '978 patent describes "location information" as "one or more identifiers and their associated locations." *See, e.g.,* '978 patent at 2:28-42, 4:55-57, claims 1, 10, 14, 17. An "identifier" is expressly described in the '978 patent as "a *unique* encoding, which may be a string in one embodiment, with which zero or more data location specifiers are associated in an NDTP server." '978 patent at 4:19-43 (emphasis added). The identifier string must "be unique to a particular entity," '978 patent at 7:62-67, i.e. it cannot identify more than one data entity. |
| [1.a] a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1.pre]. As described above, Neimat does not disclose a "location server," "location information corresponding to at least one entity," or the claimed relationships among them. Further, Neimat does not disclose "an identifier," as Neimat instead describes non-unique key values for autonomous clients. AWS maps the "identifier" as the "Record key value (e.g., value generated from a patient's |

EXHIBIT 3E: U.S. 7,233,978 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| the location string specifies a location of data pertaining to the entity | name)" of Neimat, but Neimat does not disclose that its "record key value" is unique. Instead, Neimat discloses, e.g., "if each key is a respective subject's personal name, it is clear that certain character strings of a common last name such as "Jones" will appear many times in the keys." Neimat at 2:8-10. *See, also, e.g.,* Neimat at 8:28-47, which discloses, e.g., using "Janet Jones" as a patient name key value to produce a record key.Further, Neimat does not disclose "at least one location string associated with the identifier," as the servers in Neimat are not data location servers and do not store location information. The servers instead store records and relationships between memory addresses and server addresses. *See, e.g.,* Neimat at 4:40-60, 7:48-8:15.<br><br>With respect to "location server," AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Neimat with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Neimat's disclosure. AWS asserts that Neimat would have been combined with the Data Location References because (1) the "concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science"; (2) "the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science," and (3) "one of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system." These statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine features from any known distributed network with any other known |

EXHIBIT 3E: U.S. 7,233,978 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | distributed network, since all distributed networks have common goals (e.g., to improve system performance, speed, and efficiency). |
| | Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references Amazon seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the secondary references, such as DNS, do not disclose "location servers" or many other claim elements for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. |
| | AWS's assertion that "location is not necessary" is wrong, as evidenced by the plain language of the claims as well as the discussion of location in the specification and prosecution history. AWS's efforts to use the '978 patent itself to support an obviousness argument necessarily fails. |
| **[1.b]** a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious.

*See* claim [1.a].

As described above, Neimat does not disclose a "second location server," "a second set of location information," or the claimed relationships among them. Further, Neimat does not disclose "wherein at least a portion of the second set of location information differs from the first set of location information," as the servers in Neimat are not data location servers and do not store location information. The servers instead store records and relationships between memory addresses and server |

EXHIBIT 3E: U.S. 7,233,978 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
|  | addresses. *See, e.g.*, Neimat at 4:40-60, 7:48-8:15. Moreover, the servers store all the relationships between memory addresses and server addresses. *See, e.g.*, Neimat at 5:49-67. |
| **[1.c]** programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity. | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.b]. As explained above, Neimat does not disclose "location servers," "a location query," or the claimed relationships among them. Further, Neimat does not disclose "identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity." The servers in Neimat are not data location servers and do not store or return location information. The servers instead store records and relationships between memory addresses and server addresses, and return records. Moreover, the servers store all the relationships between memory addresses and server addresses. |
| **[3]** The system of claim 1, wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.c]. As described above, Neimat does not disclose "wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity." Further, Neimat does not disclose "wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message" or "wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location |

EXHIBIT 3E: U.S. 7,233,978 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| location server known to have location information relevant to the location query. | information relevant to the location query." The servers in Neimat do not store or return data location information. The servers instead store records and relationships between memory addresses and server addresses, and return records. *See, e.g.,* Neimat at 4:40-60, 7:48-8:15. Moreover, each file servers stores the full set of relationships between memory addresses and server addresses. Furthermore, the servers do not send redirect messages, but instead merely communicate with other servers if needed. *See, e.g.,* Neimat at 5:49-67; Fig. 2. Finally, Neimat discloses no way for an incorrect file server to know what the correct file server is, and instead merely teaches successively generating additional memory addresses until the correct server is found. |
| [6] The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table. | Kove denies that this element is disclosed by Neimat. *See* claim [1.a-1.c]. As described above, Neimat does not disclose "the location information," "the location server," or the claimed relationships among them. Further, for the same reasons, Neimat does not disclose "an indexed location store indexed by a hash table." Additionally, AWS's citations are inapposite, as they describe a different use of hash functions and no hash table. Furthermore, Neimat does not disclose using hash functions and/or hash tables to organize "location information" across a "plurality of data location servers." The hash functions disclosed in Neimat distribute records onto file servers, i.e. to distribute the data itself rather than "data location information." |
| [10.Preamble] A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Neimat. *See* claim [1pre-1.c, 10.a-10.b]. |
| [10.a] a plurality of location servers containing location information corresponding to a | Kove denies that this element is disclosed by Neimat. |

EXHIBIT 3E: U.S. 7,233,978 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and | *See* claim [1pre-1.c]. |
| [10.b] programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier. | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1pre-1.c, 3]. |
| [14.Preamble] A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising: | To the extent the preamble is limiting , Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1pre-1.c]. |

EXHIBIT 3E: U.S. 7,233,978 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| [14.a] receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location; | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious.<br><br>*See* claim [1pre-1.c]. |
| [14.b] sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious.<br><br>*See* claim [1pre-1.c]. |
| [14.c] sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query. | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious.<br><br>*See* claim [1pre-1.c]. |
| [17.Preamble] A method of scaling at least one of capacity and transaction rate capability in a location server in a system having a plurality of location servers for storing and retrieving location information, wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information, the method comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1pre-1.c, 17.a-17.e].<br><br>As described above, Neimat does not disclose "a location server," "a system having a plurality of location servers for storing and receiving location information," "wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information," or the claimed relationships among them. The servers in Neimat do not store or return data location information. The servers instead store records and relationships between memory addresses and server addresses, and return records. Moreover, the servers store all the relationships |

EXHIBIT 3E: U.S. 7,233,978 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | between memory addresses and server addresses. Moreover, the servers do not send location information, but instead communicate with other servers if needed. Further, Neimat does not disclose "a method of scaling at least one of capacity and transaction rate capability," but instead discloses moving half the files in a storage location to a new location when there is a collision. *See, e.g.* Neimat at 3:19-33. |
| [17.a] providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information related to the identifier; | Kove denies that this element is disclosed by Neimat. *See* claim [1pre-1.c]. |
| [17.b] storing location information formatted according to the transfer protocol at a first location server; | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious. *See* claim [1pre-1.c]. |
| [17.c] receiving an identifier and a location relevant to the identifier at the first location server; | Kove denies that this element is disclosed by Neimat. *See* claim [1pre-1.c]. |
| [17.d] storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and | Kove denies that this element is disclosed by Neimat. *See* claim [1pre-1.c]. |
| [17.e] transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. | Kove denies that this element is disclosed by Neimat. *See* claim [1pre-1.c, 17.a]. Neimat does not disclose "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first |

EXHIBIT 3E: U.S. 7,233,978 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | location server reaches a predetermined performance limit." Neimat instead discloses moving half the files in a storage location to a new location when there is a collision, not a performance criterion or predetermined performance limit. *See, e.g.* Neimat at 3:19-33. |
| [23] The method of claim 17, wherein the performance criterion comprises an amount of available persistent storage space in the first location server. | Kove denies that this element is disclosed by Neimat.<br><br>*See* claim [1pre-1.c, 17.a, 17.e]. |
| [24] The method of claim 17, wherein the performance criterion comprises a transaction rate limit. | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious.<br><br>*See* claim [1pre-1.c, 17.a, 17.e].<br><br>Venkatasubramanian does not disclose at least "identifiers," "locations," "data location server," "predetermined performance limit," or the claimed relationships among them. The servers in Venkatasubramanian do not store or return data location information. Further, Venkatasubramanian does not disclose "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit wherein the performance criterion comprises a transaction rate limit." Venkatasubramanian is directed to video streaming, and purports to provide an example of load management that involves replications, which actually teaches away from the claimed inventions.<br><br>AWS thus fails to adduce a single reference that either discloses or suggests the claimed limitation, and AWS's references neither teach nor suggest the load balancing and scaling problem that the '978 patent is directed to solve. The POSA would have no rationale to combine DNS with Neimat or Venkatasubramanian (or any other reference); to the contrary, for the reasons above, DNS, Neimat, and Venkatasubramanian teach away from the claimed invention. |

EXHIBIT 3E: U.S. 7,233,978 Validity Claim Chart in View of Neimat et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 5,542,087 to Neimat, DNS and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | |
| [30] The method of claim 17, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit. | Kove denies that this element is disclosed by Neimat or other references, or that it is rendered obvious. *See* claim [1pre-1.c, 17.a, 17.e]. |

EXHIBIT 3F: U.S. 7,233,978 Validity Claim Chart in View of Minami et al.

AWS purports to assert that claims 3, 6, 10, 14, 17, 23, 24, and 30 of U.S. Patent No. 7,233,978 ("the '978 patent") are obvious in view of the combination of U.S. Patent No. 6,212,521 to Minami ("Minami"), DNS and, for claims 17, 23, 24, and 30, Neimat, and for claim 24, Venkatasubramanian. AWS further alleges that the operation of DNS is described in BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman. But AWS has failed to (1) sufficiently identify any version of any DNS system, (2) produce any such system, (3) establish that any such system was in operation, publicly used, sold, or offered for sale before the priority date of the Asserted claims, and (4) establish that any of the documents AWS identifies refer to any identified system, much less the same system. Moreover, AWS failed to do any of the above within the timeframe required under the LPR and ordered by the Court. AWS's "DNS" reference is thus limited only to the document RFC1034.[1]  AWS has also failed to establish that any non-patent materials were sufficiently publicly available so as to qualify as prior art, including BIND and DNS, RFC 1034, RFC 1035, RFC 2168, Sherman, and Karger/Sherman.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| **[1.Preamble]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Minami.<br><br>The specification of the '978 patent describes "location server", which it refers to as a "NDTP server," as "a network -attached component that maintains a set of identifier/location mappings that are *modified* or returned in response to NDTP |

---

[1] While AWS has failed to timely identify any evidence in support of its DNS-based contentions other than RFC1034, Kove's analysis applies equally to any DNS-related reference.

[2] Kove uses the information currently available to it to provide its responses to AWS's Fourth Amended Final Invalidity Contentions ("FAFIC") and reserves all rights to rely on additional evidence in support of its Contentions. Amazon bears the burden of proof on invalidity, which it has not met; it is not Kove's burden to show validity. Kove need not respond to any anticipation or obviousness analysis that is not set forth with specificity in the Exhibits to the FAFIC. Moreover, the parties are still engaged in discovery and expert discovery has not yet begun. For at least these reasons, Kove reserves the right to modify, amend, retract, and/or supplement these Contentions, including with regard to further deficiencies in Amazon's invalidity positions and identification of secondary considerations of non-obviousness, as permitted under the Federal Rules of Civil Procedure and the LPR.

[3] Kove incorporates by reference Exhibit 3A of its Contentions, which discusses DNS. Kove incorporates by reference Exhibit 3C of its Contentions, which discusses Neimat. Kove further incorporates by reference its Patent Owner Preliminary Response and the PTAB Board's decision denying institution for IRP2020-00276, which discusses DNS.

EXHIBIT 3F: U.S. 7,233,978 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | request messages from clients." '978 patent at 4:19-38 (emphasis added). Specifically, the "location servers" of the '978 patent are capable of updating their identifier/location mappings in response to "update" requests originating from client machines connected to the network. *See id.* (describing a "client" as a "network-attached component" that "initiate[s] update" operations on location servers). For example, when data associated with a particular identifier is added to a particular data repository machine, the location servers responsible for storing the location mappings for that identifier are "updated to indicate an association between the identifier and the application server's location." '978 patent at 8:14-25. The identifier/location mappings within each "location server" are updated *dynamically* and spontaneously as data associated with an identifier is added to a new location. *See, e.g.,* '978 patent at Abstract, Background. The '978 patent describes "location information" as "one or more identifiers and their associated locations." *See, e.g.,* '978 patent at 2:28-42, 4:55-57, claims 1, 10, 14, 17. An "identifier" is expressly described in the '978 patent as "a *unique* encoding, which may be a string in one embodiment, with which zero or more data location specifiers are associated in an NDTP server." '978 patent at 4:19-43 (emphasis added). The identifier string must "be unique to a particular entity," '978 patent at 7:62-67, i.e. it cannot identify more than one data entity. <br><br> AWS fails to explain how the primary servers in Minami are "data location servers," and in fact concedes that they are not. Moreover, Minami does not disclose the claimed "a plurality of data location servers." The primary servers in Minami are not data location servers. The servers in Minami do not store location information and instead store non-unique keywords and records, *i.e.,* the data itself. *See, e.g.,* Minami at 8:61-9:67 (search keywords may be mapped to multiple data objects, as well as to different data objects within different "areas" of the network); Fig. 3, Fig. 20. Further, the primary servers of Minami cannot determine which other primary servers store location information for an identifier, as not all of the servers in Minami can determine the appropriate server; multiple servers can be involved, and other functions that are unknown to a particular server can be used. *See, e.g.,* Minami at |

EXHIBIT 3F: U.S. 7,233,978 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
|  | 8:61-9:15, 10:36-60 (a "primary hash function unit 109 and secondary hash function unit 111 are used to obtain a primary and secondary server identifiers, respectively, from a given search keyword."). Nor do primary servers have identifier/location mappings, as they do not have identifiers and do not have locations that are associated with identifiers/entities. Minami does not disclose the claimed "identifier," but instead describes a non-unique keyword that does not uniquely identify an entity. Minami also does not disclose the claimed "location string," as the primary servers in Minami do not process requests for data location, but instead requests for records, i.e., the data itself. Primary server identifiers are not proper locations for an entity's data. Clients in Minami cannot update identifier/location mappings in primary servers. There are no location queries. |
| **[1.a]** a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity | Kove denies that this element is disclosed by Minami. <br><br> *See* claim [1.pre]. <br><br> As described above, Minami does not disclose a "location server," "location information corresponding to at least one entity," or the claimed relationships among them. Further, Minami does not disclose "an identifier" or "at least one location string associated with the identifier," as Minami instead discloses non-unique keywords and records. <br><br> With respect to "location server" (and this claim limitation), AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Minami with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Minami's disclosure. AWS asserts that Minami would have been combined with the Data Location References because (1) the "concept of storing information about the |

EXHIBIT 3F: U.S. 7,233,978 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | location of data in a distributed network is well known, even fundamental, in the field of computer science"; (2) "the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science," and (3) "one of skill would have been motivated to use such a method, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system." These statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine features from any known distributed network with any other known distributed network, since all distributed networks have common goals (e.g., to improve system performance, speed, and efficiency). Moreover, merely doubling any location server, which is not described or rendered obvious, would not yield the claimed invention.<br><br>Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references Amazon seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the secondary references, such as DNS, do not disclose "location servers" or many other claim elements for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS.<br><br>AWS's assertion that "location is not necessary" is wrong, as evidenced by the plain language of the claims as well as the discussion of location in the specification and |

EXHIBIT 3F: U.S. 7,233,978 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | prosecution history. AWS's efforts to use the '978 patent itself to support an obviousness argument necessarily fails. |
| [1.b] a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and | Kove denies that this element is disclosed by Minami. *See* claim [1.pre-1.a]. As described above, Minami does not disclose a "second location server," "a second set of location information," or the claimed relationships among them. Further, Minami does not disclose "wherein at least a portion of the second set of location information differs from the first set of location information," as the server groups in Minami do not store data location information (they store records), and they contain a complete set of the keywords and associated records information. *See, e.g.,* Minami at 8:61-9:67; Fig. 17-20. |
| [1.c] programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity. | Kove denies that this element is disclosed by Minami. *See* claim [1.pre-1.b]. As described above, Minami does not disclose "location servers," "a location query," or the claimed relationships among them. Further, Minami does not disclose "identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity." The servers in Minami do not store or send location information (they store records), and they contain a complete set of the keywords and associated records information. *See, e.g.,* Minami at 8:61-9:67; Fig. 17-20. |
| [3] The system of claim 1, wherein the programming logic further comprises logic responsive to the location query to return one | Kove denies that this claim is disclosed by Minami. *See* claim [1.pre-1.c]. |

EXHIBIT 3F: U.S. 7,233,978 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query. | As described above, Minami does not disclose "wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity."

Further, Minami does not disclose "wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message" or "wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query." Minami does not disclose redirect messages back to the client, but instead has its servers pass messages to one another. *See, e.g.*, Minami at 8:61-9:67. Further, the servers in Minami are not data location servers and do not store data location information (they store records), or information from which a client could calculate a location, or a second data location server that contains a location string. |
| [6] The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table. | Kove denies that this claim is disclosed by Minami.

*See* claim [1.pre-1.c].

As described above, Minami does not disclose "the location information or "the location server." Further, Minami does not disclose "an indexed location store indexed by a hash table." The servers in Minami do not have indexed location stores or hash tables, but instead apply a function. |
| [10.Preamble] A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Minami.

*See* claim [1pre-1.c, 10.a-10.b]. |

6

EXHIBIT 3F: U.S. 7,233,978 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| **[10.a]** a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.c].<br><br>As described above, Minami does not describe "wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information." The servers in Minami do not store or send location information (they store records), and they contain a complete set of the keywords and associated records information. |
| **[10.b]** programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier. | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.c]. |
| **[14.Preamble]** A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of | To the extent the preamble is limiting, Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.c]. |

EXHIBIT 3F: U.S. 7,233,978 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| identifiers with at least one location, the method comprising: | |
| **[14.a]** receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location; | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.c]. |
| **[14.b]** sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.c]. |
| **[14.c]** sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query. | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.c]. |
| **[17.Preamble]** A method of scaling at least one of capacity and transaction rate capability in a location server in a system having a plurality of location servers for storing and retrieving location information, wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information, the method comprising: | To the extent the preamble is limiting, Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.c, 17.a-17.e]. |
| **[17.a]** providing a transfer protocol configured to transport identifier and location information, | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.c]. |

EXHIBIT 3F: U.S. 7,233,978 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| the location information specifying the location of information related to the identifier; | |
| **[17.b]** storing location information formatted according to the transfer protocol at a first location server; | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.c]. |
| **[17.c]** receiving an identifier and a location relevant to the identifier at the first location server; | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.c]. |
| **[17.d]** storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.c]. |
| **[17.e]** transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. | Kove denies that this element is disclosed by Minami.<br><br>*See* claim [1pre-1.c].<br><br>Minami does not disclose "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." AWS concedes this, and there is no disclosure of it.<br><br>With respect to "load balancing" and this claim limitation, AWS has not provided an adequate explanation or rationale as to why or how the person of ordinary skill in the art ("POSA") would have combined Minami with any alleged knowledge or skill in the art or any of the specifically identified references to arrive at the inventions claimed, or even that such a combination was technically feasible. AWS resorts to |

EXHIBIT 3F: U.S. 7,233,978 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | conclusory assertions of general knowledge, common sense, and skill in the art, which are insufficient to supply the claim limitations missing from Minami's disclosure. AWS asserts that Minami would have been combined with any of the specifically identified references because (1) the "concept of transferring information from one server to another when the server is full, for example, is obvious and conventional in the field of computer science"; and (2) "for the obvious benefit of improving system performance, speed, and efficiency." These statements are vague, overbroad, and conclusory, and insufficient to supply a motivation to combine. AWS's flawed logic results in an erroneous conclusion that the POSA would have been motivated to combine features from any known server with any other known server, premised on the assumption that all servers have common goals (e.g., to improve system performance, speed, and efficiency). Further, the mere fact that references are supposedly in the same field of endeavors falls short of any adequate rationale and reasoned analysis as to why a person of ordinary skill in the art would combine certain references; it is merely the jumping-off point in assessing whether a claimed invention may be obvious. Further, the references AWS seeks to combine are non-analogous art and/or change the basic principles under which the references were designed to operate, and thus the POSA would not have been motivated to combine them. AWS improperly resorts to hindsight reconstruction to cherry-pick among isolated disclosures in the prior art to allegedly arrive at the claimed inventions. Moreover, the specifically identified references do not disclose one or more of the claim limitations for the reasons given with respect to those individual references, to the extent those references were even addressed by AWS. <br><br> Further, Neimat does not disclose at least "identifiers," "locations," "data location server," "predetermined performance limit," or the claimed relationships among them. The servers in Neimat do not store or return data location information. The servers instead store records and relationships between memory addresses and server addresses. Further, Neimat does not disclose "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." |

EXHIBIT 3F: U.S. 7,233,978 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | Neimat instead discloses moving half the files in a storage location to a new location when there is a collision, not a performance criterion or predetermined performance limit. Exhibit 3C is hereby incorporated by reference.<br><br>AWS thus fails to adduce a single reference that either discloses or suggests the claimed limitation, and AWS's references neither teach nor suggest the load balancing and scaling problem that the '978 patent is directed to solve. The POSA would have no rationale to combine Minami with Neimat (or any other reference); to the contrary, for the reasons above, Minami and Neimat teach away from the claimed invention. |
| [23] The method of claim 17, wherein the performance criterion comprises an amount of available persistent storage space in the first location server. | Kove denies that this element is disclosed by Minami or other references, or that it is rendered obvious.<br><br>*See* claim [17.pre-17.e]. Further, AWS wholly failed to provide a basis for why this claim limitation is obvious. |
| [24] The method of claim 17, wherein the performance criterion comprises a transaction rate limit. | To Kove denies that this element is disclosed by Minami or other references, or that it is rendered obvious.<br><br>*See* claim [17.pre-17.e]. Further, AWS wholly failed to provide a basis for why this claim limitation is obvious.<br><br>Further, Venkatasubramanian does not disclose at least "identifiers," "locations," "data location server," "predetermined performance limit," or the claimed relationships among them. The servers in Venkatasubramanian do not store or return data location information. Further, Venkatasubramanian does not disclose "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit wherein the performance criterion comprises a transaction rate limit." Venkatasubramanian is directed to video streaming, and |

EXHIBIT 3F: U.S. 7,233,978 Validity Claim Chart in View of Minami et al.

| U.S. Patent No. 7,233,978 | U.S. Patent No. 6,212,521 to Minami, DNS and, for Claims 17, 23, 24, and 30, Neimat, and, for Claim 24, Venkatasubramanian[2,3] |
|---|---|
| | purports to provide an example of load management that involves replications, which actually teaches away from the claimed inventions. |
| | AWS thus fails to adduce a single reference that either discloses or suggests the claimed limitation, and AWS's references neither teach nor suggest the load balancing and scaling problem that the '978 patent is directed to solve. The POSA would have no rationale to combine Minami with Neimat or Venkatasubramanian (or any other reference); to the contrary, for the reasons above, Minami, Neimat, and Venkatasubramanian teach away from the claimed invention. |
| [30] The method of claim 17, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit. | To Kove denies that this element is disclosed by Minami or other references, or that it is rendered obvious.<br><br>See claim [17pre-17.e]. Further, AWS failed to provide a sufficient basis for why this claim limitation is obvious. |