# Exhibit A

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oꜰꜰɪᴄᴇ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,162 | 02/17/2023 | 7233978 | 10406/49 | 3927 |

184647 7590 05/16/2023
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway
Suite 300
Redwood City, CA 94065

| EXAMINER |
|---|
| SORRELL, ERON J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 05/16/2023 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

 **UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

FISCH SIGIER LLP (GENERAL)
5301 WISCONSIN AVENUE NW,
SUITE 400
WASHINGTON, DC 20015

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,162* .

PATENT UNDER REEXAMINATION *7233978* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| ***Order Granting Request For Ex Parte Reexamination*** | Control No. 90/019,162 | | Patent Under Reexamination 7233978 | |
|---|---|---|---|---|
| | Examiner ERON J SORRELL | | Art Unit 3992 | AIA (FITF) Status No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed 02/17/2023 has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐   PTO-892,   b)☑   PTO/SB/08,   c)☐   Other: _____

1. ☑   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| | | |
|---|---|---|
| | | |

cc:Requester ( if third party requester )

U.S. Patent and Trademark Office
PTOL-471G(Rev. 01-13)                      **Office Action in *Ex Parte* Reexamination**                      Part of Paper No. 20230403

Application/Control Number: 90/019,162                                    Page 2
Art Unit: 3992

### *Decision*

A Third-Party Requester, Amazon Web Service, Inc., has filed a Request for *Ex Parte* reexamination of claims 3, 6, 10, and 14 of U.S. Patent No. 7,233,978 to Overton et al. ("the '978 Patent"). The Request was granted a filing date of February 16, 2023.

MPEP 2240 recites in part,

> *37 C.F.R. 1.515   Determination of the request for ex parte reexamination.*
>
> (a) Within three months following the filing date of a request for an *ex parte* reexamination, an examiner will consider the request and determine whether or not a substantial new question of patentability affecting <u>any claim</u> of the patent is raised by the request and the prior art cited therein, with or without consideration of other patents or printed publications. A statement and any accompanying information submitted pursuant to § 1.501(a)(2) will not be considered by the examiner when making a determination on the request. The examiner's determination will be based on the claims in effect at the time of the determination, will become a part of the official file of the patent, and will be given or mailed to the patent owner at the address provided for in § 1.33(c) and to the person requesting reexamination.

The Request is found to raise at least one Substantial New Question of Patentability (SNQ), therefore the Request is hereby, <u>**GRANTED**</u>.

Application/Control Number: 90/019,162                                   Page 3
Art Unit: 3992

### *Listing of Prior Art*

The Request alleges the existence of at least one SNQ based on
the following patents and/or printed publications:

i.   U.S. Patent No. 6,473,781 to Roger Skagerwall and Kaj
     Nygren, filed October 27, 1998, issued October 29, 2002
     ("Skagerwall");

ii.  U.S. Patent No. 6,185,601 to James Wolff, filed April 15,
     1998, issued February 6, 2001 ("Wolff");

iii. Maarten van Steen et al., "Locating Objects in Wide-Area
     Systems," IEEE Communications Magazine, Vol. 36, Issue 1,
     pp. 104-09 (Jan. 1998) ("Steen");

iv.  Oracle Names Administrator 's Guide, Release 2.0, (Oracle
     Corp., Redwood City, CA), published 1996 ("ONAG")

v.   Joseph B. Greene, Oracle8 Server Unleashed, (Sams
     Publishing, Indianapolis, Ind.), published August 2, 1998
     ("OracleUnleashed").

Of the five (5) references listed above, Skagerwall, Wolff,
and Steen are newly cited with the instant Request while ONAG

Application/Control Number: 90/019,162                          Page 4
Art Unit: 3992

and OraacleUnleashed was cited in prior and/or concurrent

examinations of the '978 Patent.

### *Third Party Requester's Position*

The Request alleges the following SNQs which have been

grouped/re-organized for discussion purposes:

**SNQ I:** Skagerwall in view of Wolff to raise SNQs over

claims 3, 6, 10, and 14. This group of SNQs is based on proposed

rejections of claims 3, 6, 10, and 14 under pre-AIA 35 USC §

103(a) as being obvious over Skagerwall taken alone or in

combination with Wolff.

**SNQ II:** ONAG in view of OracleUnleashed and Steen to raise

SNQs over claims 3, 6, 10, and 14. This group of SNQs is based

on proposed rejections of claims 3, 6, 10, and 14 under pre-AIA

35 USC § 103(a) as being obvious over ONAG in view of one or

more of OracleUnleashed and Steen.

**SNQ III:** Steen in view of Wolff and Skagerwall to raise

SNQs over claims 3, 6, 10, and 14. This group of SNQs is based

on proposed rejections of claims 3, 6, 10, and 14 under pre-AIA

Application/Control Number: 90/019,162                     Page 5
Art Unit: 3992

35 USC § 103(a) as being obvious over Steen in view of one or

more of Wolff and Skagerwall.

### *Analysis of the '978 Patent*

The '978 Patent issued on June 19, 2007, maturing from U.S.

Patent application No. 09/872,736 filed June 1, 2001 as a

continuation-in-part of application no. 09/661,222 filed on

September 13, 2000, now U.S. Patent No. 7,103,640, and a

continuation-in-part of application no. 09/503,441 filed on

February 14, 2000, now abandoned, and a continuation-in-part of

application no. 09/367,461, filed August 13, 1999, now abandoned,

and a continuation-in-part of application no. 09/111,896, filed

June 8, 1998, now abandoned. The '978 Application also claims

priority to provisional application no. 60/277,408, filed Mar.

19, 2001, and provisional application no. 60/209,070, filed June

2, 2000.

**The '978 Patent has expired.** Per MPEP 2240

(emphasis added),

> "In making the determination of whether to order
> reexamination, the Office will determine the proper meaning
> of the patent claims by giving the claims their broadest
> reasonable interpretation consistent with the specification
> (see *In re Yamamoto*, 740 F.2d 1569 (Fed. Cir. 1984)),
> except in the case of an expired patent (in a reexamination
> involving claims of an expired patent, claim construction
> is pursuant to the principle set forth by the court
> in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316, 75 USPQ2d
> 1321, 1329 (Fed. Cir. 2005) (words of a claim "are

Application/Control Number: 90/019,162                                    Page 6
Art Unit: 3992

> generally given their ordinary and customary meaning" as
> understood by a person of ordinary skill in the art in
> question at the time of the invention, see *Ex parte Papst-*
> *Motoren*, 1 USPQ2d 1655 (Bd. Pat. App. & Inter. 1986)). If
> reexamination is ordered, the patent owner statement, if
> applicable, and any accompanying information submitted
> pursuant to 37 CFR 1.501(a)(2) will be considered during
> the examination stage to the fullest extent possible when
> determining the scope of any claims of the patent which are
> subject to reexamination."

   The challenged claims of the '978 Patent are toward a

method and system for processing location queries in a system

comprising a plurality of location servers. Claims 10 and 14 are

independent claims, while claims 3 and 6 are dependent on claim

1. The challenged claims are reproduced below for discussion

purposes. Claims 3 and 6 are presented in independent form.

> *3. A system having a plurality of location servers for*
>
> *managing location information and providing location*
>
> *information to location queries, the system comprising: a*
>
> *first location server containing a first set of location*
>
> *information corresponding to at least one entity, the*
>
> *location information comprising an identifier and at least*
>
> *one location string associated with the identifier, wherein*
>
> *the identifier identifies an entity and the location string*
>
> *specifies a location of data pertaining to the entity a*
>
> *second location server comprising a second set of location*
>
> *information, wherein at least a portion of the second set*

Application/Control Number: 90/019,162                               Page 7
Art Unit: 3992

*of location information differs from the first set of location information; and programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity, wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query.*

*6. A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: a*

Application/Control Number: 90/019,162                           Page 8
Art Unit: 3992

*first location server containing a first set of location*

*information corresponding to at least one entity, the*

*location information comprising an identifier and at least*

*one location string associated with the identifier, wherein*

*the identifier identifies an entity and the location string*

*specifies a location of data pertaining to the entity a*

*second location server comprising a second set of location*

*information, wherein at least a portion of the second set*

*of location information differs from the first set of*

*location information; and programming logic stored on each*

*of the location servers responsive to a location query*

*identifying a desired entity to return a location message,*

*the location message comprising at least one location of*

*data pertaining to the desired entity, if the location*

*server receiving the location query contains location*

*information for the desired entity, wherein the programming*

*logic further comprises logic responsive to the location*

*query to return one of a location message or a redirect*

*message, wherein the location information in the location*

*server is maintained in an indexed location store indexed*

*by a hash table.*

Application/Control Number: 90/019,162                    Page 9
Art Unit: 3992

*10. A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising: a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier.*

Application/Control Number: 90/019,162                    Page 10
Art Unit: 3992

*14. A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising: receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location; sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query.*

### *Review of Prosecution History*

<u>Original Prosecution</u>

Reviewing the original prosecution of the of the '736 application which matured into the '978 Patent, the Examiner

Application/Control Number: 90/019,162                    Page 11
Art Unit: 3992

finds that claims 1, 4, 6-8, 10, 12, 15-37 and 45 were allowed

in a Notice of Allowance mailed February 13, 2007 and

subsequently renumbered as claims 1-31. In that action, the

Examiner provided the following reasons for allowance:

> However, the prior art of record fails to teach or suggest individually or in combination a
> system in which a location query requests from multiple servers location information, separate
> from the data objects to which the location information pertains, to be returned to the requestor.
> The Examiner finds the applicant's arguments in page 10, lines 9-27 of the amendment filed
> November 1, 2006 to be persuasive. The applicant argued in substance that Lumelsky does not
> teach a system and method for management of location information separate from the data to
> which the location information pertains, but instead relates to manipulation of the actual data
> (multimedia objects in Lumelsky) rather than just the location information for that data.

After issuance, claims 1, 3, 6, 10, 14, 17, 23, 24, 30,

and 31 were later challenged in *Inter Partes* Review IPR2020-

00276 filed December 12, 2019 and *Ex Parte* Reexamination

proceeding 90/019,034 filed November 19, 2021. Additionally

claims 17, 23, 24, and 30 where challenged in Ex Parte

Reexamination proceeding 90/019,109 filed August 21, 2022.

## **Prior IPR Proceeding**

Claims 1, 3, 6, 10, 14, 17, 23, 24, 30, and 31 of the '978

Patent were challenged in IPR2020-00276 citing RFC1034, US

Patent No. 5,542,087 to Neimat, and "Load Management in

Application/Control Number: 90/019,162                     Page 12
Art Unit: 3992

Distributed Video Servers" by Venkatasubramanian. The Patent
Trial and Appeal Board (PTAB) denied institution finding the
petitioner did not demonstrate a reasonable likelihood of
prevailing in their challenge of the claims.


**Concurrent Ex Parte Proceeding(s)**

**EP Proceeding 90/019,034**

     Claims 1, 3, 6, 10, 14 ,17, 23, 24, 30, and 31 were
challenged in *Ex Parte* Reexamination proceeding 90/019,034,
citing ONAG, Oracle DBA Survival Guide (OSG), U.S. Patent
5,777,989 to McGarvey, and U.S. Patent No. 5,301,286 to Rajani.


     In a Non-final Office action mailed June 28, 2022,
claims 1 and 31 were rejected under pre-AIA 35 USC § 103(a)
as being unpatentable over ONAG; claims 3, 10, and 14, were
rejected under pre-AIA 35 USC § 103(a) as being unpatentable
over ONAG in view of OSG, and further in view of McGarvey;
and claim 6 was rejected under pre-AIA 35 USC § 103(a) as
being unpatentable over ONAG in view of OSG, and further in
view of Rajani. Claims 17, 23, 24, and 31 were confirmed as
patentable over the prior art of record.

     The Patent Owner filed a response to the June 28, 2022
Office action on September 28, 2022 including arguments

Application/Control Number: 90/019,162                    Page 13
Art Unit: 3992

toward the prior art rejections in the Non-final Office

action.

On October 27, 2022 a Final Office action was mailed in

which the rejections under pre-AIA 35 USC § 103(a) of claims

1 and 31 as being unpatentable over ONAG in view of OSG were

maintained, however all of the other grounds of rejection

were withdrawn, resulting in claims 3, 6, 10, 14 being

confirmed over the art of record in addition to claims 17,

23, 24, and 31 which were confirmed in the June 28, 2022

Office action.

With respect to claims 3, 6, 10, and 14, the Examiner

provided the following statements as to the reasons for

confirmation,

> "*In regards to independent claims 10 and 14 and dependent
> claim 3, the claims all require the use of a "redirect
> message comprising information for finding a location
> server known to have location information relevant to the
> location query" (as found in claim 3, similar language in
> claims 10 and 14)… …Since any given Names Server has no
> information regarding which specific Names Server stores a
> requested item, there would be no way for the Names Server
> to include such information in a redirect message returned
> to the requesting device.*
>
> *In regards to dependent claim 6, the claim requires that
> "the location information in the location server is
> maintained in an indexed location store indexed by a hash
> table." If Oracle's Names Server had this ability, there
> would be no need to pass requests up and down a hierarchy
> of Names Servers; it could determine on its own the Names
> Server having the desired information and send the request
> directly to that Names Server. While OSG discloses the use*

Application/Control Number: 90/019,162                                    Page 14
Art Unit: 3992

> *of hashing in resolving queries, it fails to disclose the*
> *use of hashing at any given location server (Le., by any*
> *given Names Server) to determine the location server/Names*
> *Server that contains the desired location information."*

See pages 24-26 of the Final Rejection mailed October 27, 2022.


**EP Proceeding 90/019,109**


Claims 17, 23, 24, and 30 were challenged again in EP
proceeding 90/019,109. In a Non-final Office action mailed April
3, 2023, claims 17, 23, 24, and 30 were rejected under pre-AIA
35 USC § 103(a) as being unpatentable over ONAG in view of
Boukabza, ONAG in view of OracleUnleashed, and Ault in view of
Yocum, and further in view of Boukabza. The claimed challenged
in EP proceeding 90/019,109 are not challenged in the instant
Request.


Per MPEP 2240 II,

> If a second or subsequent request for ex parte
> reexamination is filed (by any party) under 35 U.S.C. 302
> while a first *ex parte* reexamination is pending, the
> presence of a substantial new question of patentability
> depends on the prior art (patents and printed publications)
> cited by the second or subsequent requester. If the
> requester includes in the second or subsequent request
> prior art which raised a substantial new question in the
> pending reexamination, reexamination should be ordered only
> if the prior art cited raises a substantial new question of
> patentability which is different from that raised in the
> pending reexamination proceeding. If the prior art cited
> raises the same substantial new question of patentability
> as that raised in the pending reexamination proceedings,
> the second or subsequent request should be denied.

Application/Control Number: 90/019,162                    Page 15
Art Unit: 3992

In light of the foregoing, if a new reference or combination of references teaches, **a redirect message comprising information for finding a location server known to have location information relevant a location query**, the that new reference or combination of reference would raise a SNQ with respect to independent claims 10, 14, and dependent claim 3. Additionally, if a new reference of combination of references teaches, **the location information in the location server is maintained in an indexed location store indexed by a hash table**, then that new reference of combination of references would raise a SNQ with respect to dependent claim 6.

### *Substantial New Questions of Patentability*

**SNQ I:** The Request alleges that Skagerwall in view of Wolff raises SNQs over claims 3, 6, 10, and 14. For the reasons explained below, the Examiner agrees in part. The Examiner agrees that Skagerwall in view of Wolff raises a SNQ over claim 6, but disagrees that the combination raises SNQs over claims 3, 10, and 14.

**Skagerwall**

Skagerwall teaches a communication system and method for linking a plurality of tagged objects to information services

Application/Control Number: 90/019,162                    Page 16
Art Unit: 3992

stored on a network. See Abstract. Skagerwall provides an

illustrative example of the system at figure 1 (reproduced

below).



**FIG.1**

As shown above, the system comprises a plurality of objects

(D) each identified with an object tag (T); a plurality of

applications servers each having an address (IS1-ISp); a

plurality of directory servers (DS1-DSn) for storing a

distributed data base of object data associating each of the

objects with at least one of a plurality of application data

packets which are identified by an application identifier (AI1-

AIm) and stored in the application servers. Skagerwall teaches

each of the directory servers (DS1-DSn) also stores a list of

Application/Control Number: 90/019,162                    Page 17
Art Unit: 3992

all available directory servers in a hash table (H). See line 51

of column 2 to line 24 of column 3.

In operation, Skagerwall teaches the retrieval of

application data packets by the system kernel (K) is performed

in two-steps. In the first step, the directory server storing

object data related to an object tag is identified, via a lookup

in a hash table using a hash function, and the object data is

retrieved. In the second step, using the object data,

application data packets are retrieved from application data

servers and/or the object data or parts thereof are transmitted

to the user via mobile phone (M) or data processing unit (DPU).

See lines 16-42 of column 8. Thus, Skagerwall expressly

discloses the limitation in claim 6 of "the location information

in the location server is maintained in an indexed location

store indexed by a hash table" which was one of the limitations

indicated as being patentable over the art of record in

concurrent EP proceeding 90/019,034.


Continuing, Skagerwall further discloses an important

feature of the system is the ability to handle a large data base

of object data and the ability to adapt to a varying size of

object data. The system is able to handle the insertion of new

object data or the removal of obsolete object data. The capacity

of the system can be changed by adding or removing directory

Application/Control Number: 90/019,162                    Page 18
Art Unit: 3992

servers and updating the hash table accordingly. Since the

number of directory servers can change, there may be situations

where a directory server is identified as having object data

that it may not have. In this case the hash function can

designed to interrogate the other directory servers to locate

the desired object data. Once located that data is then moved to

the correct directory server and erased from the other. See

lines 16-48 of column 11.

Skagerwall, having a filing date of October 27, 1998, is

deemed to be available against the patent claims, because the

patented claims challenged in the Request are not entitled to

the priority date of the first filed related application no.

09/111,896 ('the '896 application') application (i.e. July 8,

1998, because the '896 application does not provide support for

programming logic returning a redirect message as recited in

claims 3, 10, and 15; or an indexed location store indexed by a

hash table as recited in claim 6.


**Wolff**

Wolff teaches a method and system for load balancing in a

network of client and server computers. Wolff teaches a network

implementing the disclosed invention can dynamically rebalance

itself to optimize throughput by migrating I/O requests from

Application/Control Number: 90/019,162                    Page 19
Art Unit: 3992

over utilized pathways to under utilized pathways. Wolff teaches

the client can re-map a path through a plurality of nodes to a

resources with the re-mapping occurring in response to a

redirection command from an overloaded server. See Wolff,

Abstract. In a particular embodiment, Wolff teaches a client may

detect an overloaded condition in a server and access a resource

through an alternate path, through an alternate server to the

resource. See Wolff, lines 25-38 of column 5.

Wolff qualifies as prior art under pre-AIA 102(e).

**SNQ I Analysis:**

As shown above, the combination of Skagerwall and Wolff can

be reasonably interpreted as disclosing subject matter relevant

to the limitations in claim 6 found patentable in a prior

examination of the '978 Patent. Both Skagerwall and Wolff are

newly cited with respect to the '978 Patent and their teachings

are significant as Skagerwall expressly discloses the limitation

in claim 6 found patentable in concurrent EP processing

90/019,034. Moreover, there is a substantial likelihood that a

reasonable Examiner would consider these teachings from this new

reference combination to be important in deciding the

patentability of claim 6, therefore Skagerwall in view of Wolff

is seen as raising a SNQ over claim 6, which question having not

been decided in a prior examination of the '978 Patent.

Application/Control Number: 90/019,162                                    Page 20
Art Unit: 3992


    The combination of Skagerwall and Wolff is not seen as
teaching the limitations of claims 3, 10, and 14 found
patentable in concurrent EP proceeding 09/019,034. Skagerwall
fails to teach the limitation of a *redirect message comprising
information for finding a location server known to have location
information relevant to the location query,"* as required by
dependent claim 3 and independent claims 10 and 14. Skagerwall
teaches that if an identified directory server does not store
the requested object data, it interrogates the other directory
servers in sequence until the object data is located. Once
located, the object data is moved to the correct directory
server and deleted from the incorrect directory server. See
lines 31-59 of column 11 and also lines 54 of column 12 to line
12 of column 13.

    Wolff is also not seen as disclosing the claimed "redirect
message". Wolff teaches a system comprising a plurality of
client computers that can access a resource through a plurality
of access servers. Wolff teaches one client recognizing the
first access servers over utilized condition and selecting an
alternate path through another access server to the same
resource. See lines 51-62 of column 4 and lines 25-38 of column
5. A client recognizing a condition of a first server and
selecting an alternate path to a resource is not a teaching of a

Application/Control Number: 90/019,162                     Page 21
Art Unit: 3992

location server sending a redirect message comprising

information for finding a location server known to have location

information relevant a location query.


    The Request alleges Skagerwall discloses or renders obvious

the redirect message and references the same procedure cited

above. The Request attempts to explain why it would be obvious

to implement a redirect message given Skagerwall's teachings,

however the various stated rationales simply are supported by

the reference. See Request at pages 89-90.

    The Request further states if Skagerwall does not render

the "redirect message" obvious, than Wolff teaches the "redirect

message" or renders it obvious. The Request points to the same

citations in Wolff cited above. See Request at pages 90-91.

However, as mentioned above, a client recognizing a condition in

a first server and selecting an alternate path is not equivalent

to the claimed "redirect message".


    With that, the combination of Skagerwall and Wolff is seen

as raising an SNQ over claim 6, however the combination is not

seen as raising an SNQ over claims 3, 10, and 14.

Application/Control Number: 90/019,162                    Page 22
Art Unit: 3992

**SNQ II:** The Request alleges ONAG in view of OracleUnleashed and Steen raises SNQs over claims 3, 6, 10, and 14. For the reasons below, the Examiner agrees in part. The Examiner agrees ONAG in view of OracleUnleashed and Steen raises a SNQ over claim 6, the but Examiner does not agree ONAG in view of OracleUnleashed and Steen raises a SNQ over claims 3, 10, and 14.

**ONAG**

ONAG is a book documenting version 2.0 of "Oracle Names" which is a product supporting Oracle7 release 7.3 and SQL*Net release 2.3 which makes network addresses and database link information available to all nodes in the network via a Names Server. Each database server's network address is stored with a name used to identify it in the Names Server. Client applications can request a connection to a database using a name instead of a long address. See ONAG at 1-2. The Names Server can also store database link definitions, VI connect strings, and other name server names and addresses. See ONAG at page 1-5.

ONAG states there are two basic naming models for naming objects in a network, flat and hierarchical. ONAG provides an example of a flat naming model at figure 3-5 reproduced below.

Application/Control Number: 90/019,162                    Page 23
Art Unit: 3992



Figure 3 – 5 shows a flat naming model. The actual database service names are appended with ".WORLD" as in CONFIG.WORLD, FLIGHTS.WORLD, etc.

Figure 3 – 5  Flat Naming Model

All names in the WORLD domain must be unique. The Network Manager has a validation feature that ensures that all names you enter are unique.

3

ONAG discloses a network is made up of one or more administrative regions, wherein each region comprises at least one Names Server, however ONAG suggests at least two Names Servers per administrative region to provide highly reliable access to the data. See ONAG at page 3-10. ONAG provides an example of a flat naming model network with multiple names servers in figure 3-8 (reproduced below).

Application/Control Number: 90/019,162        Page 24
Art Unit: 3992





Figure 3 – 8 Two Centralized Administration Alternatives

Each Names Server in an administrative region resolves address requests for that region. In the most common case of a single, central administrative region, all Names Servers contain identical data, and give identical results.

As changes are made to network objects within a particular administrative region (such as adding or changing database or Names Server addresses) the network administrator refreshes the cache of the Oracle Names Servers using the Network Manager (or the Names Control Utility). Each of the Names Servers then gets a new copy of the relevant contents of the network definition database, making the data quickly available to all clients.

ONAG describes the Names resolution process as a series of events as described in figure 3-11 reproduced below.

Figure 3 – 11 shows a client requesting access to a Names Server named POULTRY and a Names Server providing the answer. A flat naming model is assumed.

> Note: The service name is the same as the global object name. For example, a global database name might be POULTRY.WORLD, which is also the service name.



Figure 3 – 11  Client–Server Connection

The sequence of events is as follows:

1.  The client application issues a connection request to SQL*Net of the form:

    ```
    sqlplus scott/tiger@POULTRY
    ```

    where POULTRY is a database service name defined in the Oracle Names Server.

    SQL*Net determines from the client configuration in the SQL.NET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net sends the Names Server a request to resolve the name POULTRY.WORLD.

2.  The Names Server receives the request, looks it up in the cache, then sends the response back to the client.

3.  The client receives the answer and substitutes the address in place of the initial name POULTRY.

4.  The client contacts POULTRY and establishes a standard SQL*Net client–server connection.

Only step 1 and the acknowledgement of Step 4 are seen by the user, unless an error occurs.

ONAG qualifies as prior art under 35 USC 102(b).

Application/Control Number: 90/019,162                    Page 26
Art Unit: 3992

**OracleUnleashed**

OracleUnleashed is a book detailing version 8 of the
Oracle database management system ("Oracle8"). OracleUnleashed
describes Oracle8 as a "significant upgrade" to the Oracle
database management system. See OracleUnleashed at page 8. Some
of the key enhancements include parallel processing made
possible through the use of partitioned tables; incremental
backups where only updated parts of the tablespace or database
are backed up instead of the entire tablespace or database; and
improved replication. See OracleUnleashed at page 11. Table
partitioning is performed by dividing a table into multiple
sections based on some logical index value and each section can
be stored on a different disk. See OracleUnleashed at page 12.

OracleUnleashed provides an overview of the administrative
requirements of Oracle 8, including concepts related to
tablespace maintenance and performance tuning. OracleUnleashed
states that performance can be monitored and adjusted for a
variety of means and that partitioning greatly enhances
database performance. The administration and tuning are
simplified via features that make the partitions easy to
create, move, split, and so on. See OracleUnleashed at pages
424-425. In Oracle8, the units of data are the partitions
rather than the tables as in earlier versions. As the tables

Application/Control Number: 90/019,162                    Page 27
Art Unit: 3992

get bigger however, the partition size does not increase rather the number of partitions increases. The use of partitions is what allows parts of the table to be relocated to a different device. See OracleUnleashed at pages 840.

OracleUnleashed, copywrite 1998, is deemed to be available against the patent claims, because the patented claims challenged in the Request are not entitled to the priority date of the first filed related application no. 09/111,896 ('the '896 application') application (i.e. July 8, 1998), because the '896 application does not provide support for programming logic returning a redirect message as recited in claims 3, 10, and 15; or an indexed location store indexed by a hash table as recited in claim 6.


**Steen**

Steen describes a naming service called "Globe" that provides flexible and easily adaptable name-to-address bindings for mobile objects which may be telephones, computers, or data objects which may change locations frequently. See Steen at page 104. Steen describes a two-level naming hierarchy including a first level that deals with user defined name spaces handled by a distributed names service, wherein a name is bound to an object handle. The second level deals with mapping each object handle to a set of contact addresses and is handled by a

Application/Control Number: 90/019,162                          Page 28
Art Unit: 3992

distributed object location service. Steen states, "we assume hierarchical decomposition of a (worldwide) network into regions." See Steen, page 105. Steen states that decomposition is only relevant to the location service and each region has a directory node capable of storing addresses within that region. See Steen, page 105. Steen, when discussing scalability of the system, discloses that directory nodes may be portioned into one or more directory subnodes (shown in figure 6 reproduced below) each subnode responsible for a subset of records originally stored at the directory node.



■ **Figure 6.** *A search tree and a corresponding logical tree after partitioning the directory nodes into subnodes.*

In this configuration, the system can use the first n bits of an objects handle to identify a subnode (i.e. maintaining location information in an indexed location store indexed by a hash table). Thus, Steen expressly discloses the limitations in claim 6 found patentable in concurrent EP proceeding 90/019,034.

Steen qualifies as prior art under pre-AIA 102(a).


**SNQ II Analysis:**

Application/Control Number: 90/019,162                    Page 29
Art Unit: 3992

    As shown above, the combination of ONAG, OracleUnleasjed,
and Steen can be reasonably interpreted as disclosing subject
matter relevant to the limitations in claim 6 found patentable
in a prior examination of the '978 Patent. ONAG and
OracleUnleashed have been considered in prior examinations of
the of the '978 Patent, however Steen is newly cited, thus ONAG
and OracleUnleased, and Steen is a new combination of references
and their teachings are significant as Steen expressly disclose
the limitations found patentable in concurrent EP processing
90/019,034. Moreover, there is a substantial likelihood that a
reasonable Examiner would consider these teachings from this new
reference combination to be important in deciding the
patentability of claim 6, therefore ONAG in view of
OracleUnleashed, and further in view of Steen is seen as raising
a SNQ over claim 6, which question having not been decided in a
prior examination of the '978 Patent.


    The combination of ONAG, OracleUnleashed, and Steen is not
seen as teaching the limitations of claims 3, 10, and 14 found
patentable in concurrent EP proceeding 09/019,034.

    The Request alleges ONAG teaches the claimed redirect
message by referencing ONAGs figure 3-8 and arguing that when
the upper Names server receives a query but lacks the location

Application/Control Number: 90/019,162                    Page 30
Art Unit: 3992

information, it sends a redirect command. See Request at pages
107-108.

The Examiner disagrees. ONAG is silent with respect to the
claimed "redirect message". ONAG discloses when the system is
configured as it is in figure 3-8, both Names servers comprising
"identical data and give identical results." ONAG further states
if changes are made to the database, that change is reflected
across both Names Servers to make the data available to all
clients quickly. See ONAG at page 3-11. With that being the
case, a redirect message would not serve any purpose.

The Request also alleges ONAG's "SET FORWARDING_AVAILABLE"
functions as the claimed "redirect message" when applied to the
network configuration in ONAG's figure 3-8. See Request pages at
137-144.

The Examiner disagrees with this comparison. ONAG discloses
the "SET FORWARDING_AVAILABLE" command is only applicable to a
node at the root level of a hierarchical naming model servicing
a request from a foreign region. See ONAG at page A-23. The
command is not applicable to the flat naming configuration in
figure 3-8. ONAG teaches each Names server in the flat naming
model have the same information, therefore a redirect message
would not serve any purpose.

Application/Control Number: 90/019,162                     Page 31
Art Unit: 3992

    The Request also argues that OracleUnleashed's teachings of
multiple hashing techniques renders the "redirect message"
obvious. See Request at pages 145-146. The Examiner disagrees.
OracleUnleashed is silent with regards to what happens if a
location server does not have the requested content. The
arguments in the Request simply lack support from the reference.


    The Request also alleges Steen discloses or renders obvious
the "redirect message". See Reqeust at pages 146-148. Steen
teaches a system wherein a directory subnode can be partitioned
and object identifier bits being used to determine which
partition stores location data. See Steen at page 108. Steen
does not disclose what happens if requested data is not stored
at the directory server that receives the query. The Request
alleges Steen discloses or renders obvious the "redirect
message" by referencing Steen's teachings of hashing in
connection with partitioned location servers. See Request at
pages 195-916. The Examiner disagrees. The use of hashing does
not necessarily imply there is a redirect message comprising
information on a location server known to have the requested
location data. Steen is silent with respect to the claimed
"redirect message".

Application/Control Number: 90/019,162                          Page 32
Art Unit: 3992

    With that, the combination of ONAG, OracleUnleashed, and

Steen is seen as raising an SNQ over claim 6, however the

combination is not seen as raising an SNQ over claims 3, 10, and

14.



**SNQ III:** The Request alleges Steen in view of Wolff and

Skagerwall raises SNQs over claims 3, 6, 10, and 14. For the

reasons below, the Examiner agrees in part. The Examiner agrees

that Steen in view of Wolff and Skagerwall raises a SNQ over

claim 6, but the Examiner does not agree that Steen in view of

Wolff and Skagerwall raises a SNQ over claims 3, 10, and 14.

**Steen**

    Steen describes a naming service called "Globe" that

provides flexible and easily adaptable name-to-address bindings

for mobile objects which may be telephones, computers, or data

objects which may change locations frequently. See Steen page

104. Steen describes a two-level naming hierarchy including a

first level that deals with user defined name spaces handled by

a distributed names service, wherein a name is bound to an

object handle. The second level deals with mapping each object

handle to a set of contact addresses and is handled by a

distributed object location service. Steen states, "we assume

Application/Control Number: 90/019,162                                    Page 33
Art Unit: 3992

hierarchical decomposition of a (worldwide) network into

regions." See Steen, page 105. Steen states that decomposition

is only relevant to the location service and each region has a

directory node capable of storing addresses within that region.

See Steen at page 105. Steen, when discussing scalability of the

system, discloses that directory nodes may be portioned into one

or more directory subnodes (shown in figure 6 reproduced below)

each subnode responsible for a subset of records originally

stored at the directory node.



■ **Figure 6.** *A search tree and a corresponding logical tree after partitioning the directory nodes into subnodes.*

In this configuration, the system can use the first n bits of an

objects handle to identify a subnode (i.e. maintaining location

information in an indexed location store indexed by a hash

table). Thus, Steen expressly discloses the limitations in claim

6 found patentable in concurrent EP proceeding 90/019,034.

Steen qualifies as prior art under pre-AIA 35 USC 102(a).

**Wolff**

Application/Control Number: 90/019,162                    Page 34
Art Unit: 3992

Wolff teaches a method and system for load balancing in a network of client and server computers. Wolff teaches a network implementing the disclosed invention can dynamically rebalance itself to optimize throughput by migrating I/O requests from over utilized pathways to underutilized pathways. Wolff teaches the client can re-map a path through a plurality of nodes to a resources with the re-mapping occurring in response to a redirection command from an overloaded server. See Wolff, Abstract. In a particular embodiment, Wolff teaches a client may detect an overloaded condition in a server and access a resource through an alternate path, through an alternate server to the resource. See Wolff, lines 25-38 of column 5.

ONAG qualifies as prior art under pre-AIA 35 USC 102(e).

**Skagerwall**

Skagerwall teaches a communication system and method for linking a plurality of tagged objects to information services stored on a network. See Abstract. Skagerwall provides an illustrative example of the system at figure 1 (reproduced below).

Application/Control Number: 90/019,162          Page 35
Art Unit: 3992



FIG.1

As shown above, the system comprises a plurality of objects (D) each identified with an object tag (T); a plurality of applications servers each having an address (IS1-ISp); a plurality of directory servers (DS1-DSn) for storing a distributed data base of object data associating each of the objects with at least one of a plurality of application data packets which are identified by an application identifier (AI1-AIm) and stored in the application servers. Skagerwall teaches each of the directory servers (DS1-DSn) also stores a list of all available directory servers in a hash table (H). See line 51 of column 2 to line 24 of column 3.

Application/Control Number: 90/019,162                    Page 36
Art Unit: 3992

     In operation, Skagerwall teaches the retrieval of

application data packets by the system kernel (K) is performed

in two-steps. In the first step, the directory server storing

object data related to an object tag is identified, via a lookup

in a hash table using a hash function, and the object data is

retrieved. In the second step, using the object data,

application data packets are retrieved from application data

servers and/or the object data or parts thereof are transmitted

to the user via mobile phone (M) or data processing unit (DPU).

See lines 16-42 of column 8. Thus, Skagerwall expressly

discloses the limitation in claim 6 of "the location information

in the location server is maintained in an indexed location

store indexed by a hash table" which was one of the limitations

indicated as being patentable over the art of record in

concurrent EP proceeding 90/019,034.


     Skagerwall discloses an important feature of the system is

the ability to handle a large data base of object data and the

ability to adapt to a varying size of object data. The system is

able to handle the insertion of new object data or the removal

of obsolete object data. The capacity of the system can be

changed by adding or removing directory servers and updating the

hash table accordingly. Since the number of directory servers

can change, there may be situations where a directory server is

Application/Control Number: 90/019,162                                    Page 37
Art Unit: 3992

identified as having object data that it may not have. In this

case the hash function can designed to interrogate the other

directory servers to locate the desired object data. Once

located that data is then moved to the correct directory server

and erased from the other. See lines 16-48 of column 11.

Skagerwall, having a filing date of October 27, 1998, is

deemed to be available against the patent claims, because the

patented claims challenged in the Request are not entitled to

the priority date of the first filed related application no.

09/111,896 ('the '896 application') application (i.e. July 8,

1998), because the '896 application does not provide support for

programming logic returning a redirect message as recited in

claims 3, 10, and 15; or an indexed location store indexed by a

hash table as recited in claim 6.


**SNQ III Analysis:**

As shown above, the combination of Steen, Wolff, and

Skagerwall can be reasonably interpreted as disclosing subject

matter relevant to the limitations in claim 6 found patentable

in a prior examination of the '978 Patent. Steen, Wolff, and

Skagerwall are newly cited with respect to the '978 Patent and

their teachings are significant Steen and Skagerwall expressly

disclose the limitations in claim 6 found patentable in

concurrent EP processing 90/019,034. Moreover, there is a

Application/Control Number: 90/019,162                    Page 38
Art Unit: 3992

substantial likelihood that a reasonable Examiner would consider

these teachings from this new reference combination to be

important in deciding the patentability of claim 6, therefore

Steen in view of Skagerwall, and further in view of Wolff is

seen as raising a SNQ over claim 6, which question having not

been decided in a prior examination of the '978 Patent.


    The combination of Steen, Wolff, and Skagerwall is not seen

as teaching the limitations of claims 3, 10, and 14 found

patentable in concurrent EP proceeding 09/019,034.

    Steen teaches a system wherein a directory subnode can be

partitioned and object identifier bits being used to determine

which partition stores location data. See Steen at page 108.

Steen does not disclose what happens if requested data is not

stored at the directory server that receives the query. The

Request alleges Steen discloses or renders obvious the "redirect

message" by referencing Steen's teachings of hashing in

connection with partitioned location servers. See Request at

pages 195-916. The Examiner disagrees. The use of hashing does

not necessarily imply there is a redirect message comprising

information on a location server known to have the requested

location data. Steen is silent with respect to the claimed

"redirect message".

Application/Control Number: 90/019,162                                    Page 39
Art Unit: 3992

The Request also relies on Skagerwall and Wolff to teach the "redirect message", however as explained above in the SNQ 1 Analysis, neither Skagerwall or Wolff is seen as teaching the claimed "redirect message."

Skagerwall fails to teach the limitation of a "*redirect message comprising information for finding a location server known to have location information relevant to the location query,*" as required by dependent claim 3 and independent claims 10 and 14. Skagerwall teaches that if an identified directory server does not store the requested object data, it interrogates the other directory servers in sequence until the object data is located. Once located, the object data is moved to the correct directory server and deleted from the incorrect directory server. See lines 31-59 of column 11 and also lines 54 of column 12 to line 12 of column 13.

Wolff teaches a system comprising a plurality of client computers that can access a resource through a plurality of access servers. Wolff teaches one client recognizing the first access servers over utilized condition and selecting an alternate path through another access server to the same resource. See lines 51-62 of column 4 and lines 25-38 of column 5. A client recognizing a condition of a first server and selecting an alternate path to a resource is not a teaching of a location server sending a redirect message comprising

Application/Control Number: 90/019,162                          Page 40
Art Unit: 3992

information for finding a location server known to have location

information relevant a location query.


    The Request alleges Skagerwall discloses or renders obvious

the redirect message and references the same procedure cited

above. The Request attempts to explain why it would be obvious

to implement a redirect message given Skagerwall's teachings,

however the various stated rationales simply are not supported

by the reference. See Request at pages 197-198.

    The Request further states if Skagerwall does not render

the "redirect message" obvious, than Wolff teaches the "redirect

message" or renders it obvious. The Request points to the same

citations in Wolff cited above. See Request at pages 199-200.

However, as mentioned above, a client recognizing a condition in

a first server and selecting an alternate path is not equivalent

to the claimed redirect message.


    With that, the combination of Steen in view of Wolff and

further in view of Skagerwall is seen as raising an SNQ over

claim 6, however the combination is not seen as raising an SNQ

over claims 3, 10, and 14.

### *Summary of Proposed SNQ*

The Examiner agrees with the following proposed SNQs:

**SNQ I:** Skagerwall in view of Wolff to raise a SNQ over claim 6;

**SNQ II:** ONAG in view of OracleUnleashed and Steen to raise a SNQ over claim 6;

**SNQ III:** Steen in view of Wolff and Skagerwall to raise a SNQ over claim 6.

The Examiner disagrees with the following proposed SNQs:

**SNQ I:** Skagerwall in view of Wolff to raise SNQs over claims 3, 10, and 14.

**SNQ II:** ONAG in view of OracleUnleashed and Steen to raise SNQs over claims 3, 10, and 14.

**SNQ III:** Steen in view of Wolff and Skagerwall to raise SNQs over claims 3, 6, 10, and 14. This group of SNQs is based on proposed rejections of claims 3, 6, 10, and 14 under 35 USC § 103(a) as being obvious over Steen in view of one or more of Wolff and Skagerwall.

Application/Control Number: 90/019,162                    Page 42
Art Unit: 3992

### *35 USC 325(d)*

A review of the post grant history of the '978 patent indicates that the patent has been the subject of 3 prior post grant challenges.

On December 12, 2019, Petitioner Amazon Web Services filed a petition for *inter partes* review of claims 1, 3, 6l, 10, 14, 17, 23, 24, 30 and 31 of the '978 patent asserting the following grounds as raising a reasonable likelihood in prevailing (RLP)(IPR2020-00276)

| Claims Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1, 3, 6, 10, 14, 31 | § 102(b) | RFC1034[1] |
| 6 | § 103(a) | RFC1034 |
| 17, 23, 30 | § 103(a) | RFC1034, Neimat[2] |
| 24 | § 103(a) | RFC1034, Neimat, Venkatasubramanian[3] |

On June 16, 2020, the Patent Trial and Appeal Board (PTAB) issued a decision denying institution which held that the petition failed to adequately explain how the "host" and "domain name" in RFC 1034 satisfied the requirement of the claimed "identifier" in independent claim 1. The same analysis carried over as the basis for independent claim 17.

On November 19, 2021, 3rd On August 31, 2022, 3rd Party Requester Amazon Web Services filed a request for *ex parte* reexamination of claims 1, 3, 6, 10, 14, 17, 23, 24, 30 and 31

Application/Control Number: 90/019,162                    Page 43
Art Unit: 3992

asserting the following grounds of as raising a substantial new

question of patentability (SNQ) of the '978 patent (90/019,034).

| Claims Challenged | 35 U.S.C | Reference(s)/Basis |
|---|---|---|
| 1, 17, 23, 24, 30 and 31 | 103(a) | ONAG, OSG |
| 3, 10 and 14 | 103(a) | ONAG, OSG and McGarvey |
| 6 | 103(a) | ONAG, OSG and Rajani |

On December 23, 2021, the Office mailed issued an Order granting

*ex parte* reexamination. On June 28, 2022, the Office issued a

non-final Office action rejecting claims 1, 3, 6, 10, 14 and 37

and confirming claims 17, 23, 24 and 30. On October 27, 2022,

the Office issued a final Office action maintaining the

rejection of claims 1 and 31 and confirming claims 3, 6, 10, 14,

17, 23, 24 and 30.

On August 31, 2022, 3rd Party Requester Amazon Web Services

filed a request for *ex parte* reexamination of claims 17, 23, 24

and 30 asserting the following grounds of as raising a

substantial new question of patentability (SNQ) of the '978

patent (90/019,109).

| Claims Challenged | 35 U.S.C | Reference(s)/Basis |
|---|---|---|
| 17, 23, 24 and 30 | 103(a) | ONAG, Boukobza |
| 17, 23, 24 and 30 | 103(a) | ONAG, Oracle Unleashed |
| 17, 23, 24 and 30 | 103(a) | Ault, Yocum, Boukobza |

Application/Control Number: 90/019,162                      Page 44
Art Unit: 3992

On November 22, 2022, the Office issued an Order granting *ex parte* reexamination. On April 3, 2023, the Office issued a non-final Office action rejecting claims 17, 23, 24 and 30.

On February 17, 2023, 3ʳᵈ Party Requester Amazon Web Services filed the instant request for *ex parte* reexamination of claims 3, 6, 19 and 14 of the '978 patent (the instant reexamination request 90/019,162), asserting the following grounds of as raising a substantial new question of patentability (SNQ) of the '978 patent:

| Claims Challenged | 35 U.S.C | Reference(s)/Basis |
|---|---|---|
| 3, 6, 10 and 14 | 103(a) | Skagerwall alone and in view of Wolf |
| 3, 6, 10 and 14 | 103(a) | ONAG alone and in view of Oracle Unleashed and/or, Steen |
| 3, 6, 10 and 14 | 103(a) | Steel alone and in view of Wolf and/or Skagerwall |

As stated above, in response to the instant Request, the Examiner has determined that the instant request raises the following SNQs:

(1) Skagerwall in view of Wolff to raise over claim 6.

(2) ONAG in view of OracleUnleashed and Steen over claim 6.

(3) Steen in view of Wolff and Skagerwall over claim 6.

The Examiner further determined that the Request failed to raise the following asserted SNQs:

(1) Skagerwall in view of Wolff over claims 3, 10, and 14.

Application/Control Number: 90/019,162                      Page 45
Art Unit: 3992

    (2)   ONAG in view of OracleUnleashed and Steen over claims 3,

          10, and 14.

    (3)   Steen in view of Wolff and Skagerwall over claims 3, 6,

          10, and 14.

Accordingly, the Examiner has determined that the instant Request only raises a substantial new question of patentability with respect to claim 6 of the '978 patent.

On April 19, 2023, Patent Owner filed a petition under 1.181, 1.182 and 1.183 A.) seeking to waiver under 1.183 of any Office regulations that would prevent consideration of the petition and B.) requesting under 37 CFR 1,181 that the the Director terminate the reexam pursuant 35 USC 325(d).

On May 8, 2023, the Office issued a decision on the April 19, 2023 petition which granted the petition under 1.183 to waive the provisions of 37 CFR 1.530(a) and 37 CFR 1.540 to the extent necessary to permit entry and consideration of any information regarding 35 USC 325(d) issues set forth in Patent Owner's April 19, 2023 petition by addressing them in this Order.

On May 8, 2023, on the same day the petition decision mailed, Third Party Requester filed an opposition to Patent Owner's April 19, 2023 petition.

<u>Patent Owner's Arguments in their May 8, 2023 petition</u>

Application/Control Number: 90/019,162                     Page 46
Art Unit: 3992

First, Patent Owner argues that that Office should
terminate the instant reexamination under 35 USC 325(d) because
it is the third challenge is an abusive similar serial challenge
to the same patent by the same petitioner and impermissibly
"Roadmap" the Office's prior decisions (See pages 10-15 of
Patent Owner's April 19, 2023 petition).

Second, Patent Owner argues that 3rd Party Requester's
request relies on prior art that is the same or substantially
the same as the previously presented prior art (See pages 16-22
of Patent Owner's April 19, 2023 petition). In particular, with
regard to claim 6 (the only claim at issue determined to have an
SNQ raised in this proceeding), Patent Owner argues that each of
the 3 asserted SNQs in the request are cumulative to the
previous asserted grounds presented in the prior challenges with
respect to claim 6.

Third Patent Owner argues that the 3rd Party Requester is
harassing Patent Owner and frustrating congressional intent.

 Response to Patent Owner's Arguments the May 8, 2023 Petition

As an initial matter, 35 USC 325(d) states in part that
"[i]n determining whether to institute or order a proceeding
under this chapter, chapter 30, or chapter 31, the Director may
take into account whether, and reject the petition or request
because, the same or substantially the same prior art or
arguments previously were presented to the Office."

Application/Control Number: 90/019,162                    Page 47
Art Unit: 3992

      Thus, in order for the Director to exercise her discretion

under this statutory provision as to whether or not to Order a

reexamination proceeding under chapter 30, the request must

first be determined to be based on the same or substantially the

same prior art or arguments that previously were presented to

the Office. Until it is first demonstrated that this threshold

has been met (e.g. the request is based on the same or

substantially the same prior art or arguments previously were

presented to the Office), it is premature to decide whether

third party requester's prior post grant challenges are

"abusive" such that the Director should exercise discretion to

reject the request.

      As stated above, it has been determined that the instant

request only raises an SNQ as to claim 6 of the '978 patent. For

this Order it has been determined that that following grounds

raise an SNQ for claim 6.

    SNQ 1: Skagerwall in view of Wolff.
    SNQ 2: ONAG in view of OracleUnleashed and Steen.
    SNQ 3: Steen in view of Wolff and Skagerwall.

A comparison between the grounds presented for this Request and

the prior post grant challenges to claim 6 of the '978 patent

indicates that there are no identical prior art grounds

presented as to claim 6 in the prior challenges.

Application/Control Number: 90/019,162                     Page 48
Art Unit: 3992

As stated above, in IPR2020-00276, petitioner asserts that RFC1034 either anticipates or makes obvious claim 6. RFC1034 is not presented or raised in the instant Reexam request.

With respect to the 90/019,034 reexam request, third party requester asserts that the combination of ONAG, OSG and Rajani raised an SNQ as to claim 6 of the '978 patent. While the ONAG reference was presented as a primary reference in the 90/019,162 request, it was not presented in combination with OracleUnleashed and Steen.

With respect to 90/019,109, third party requester did not challenge claim 6 in that request.

Accordingly, there are no grounds raised in any of the prior requests with respect to claim 6 that are based on the same prior art and arguments that were previously presented. Petitioner effectively acknowledges this in their petition, by arguing that SNQs 1, 2 and 3 in the 90/019,162 Request are "cumulative" (substantially the same) of previously asserted prior art. In arguing that the references in the instant reexamination request are "cumulative" to previously presented prior art, Patent Owner focuses not on comparing the teachings in the prior art references newly presented with previous presented prior art, but rather argues that the new references "describe technologies that are similar" and simply makes assertions that the combination of prior art doesn't meet

Application/Control Number: 90/019,162                                Page 49
Art Unit: 3992

certain limitations of the claims (See pages 16-21 of the April

19, 2023 petition).

    However, for a reference to be cumulative, the teachings

themselves in the compared references need to "substantially

reiterate verbatim the teachings" See MPEP 2258.01. Here, none

of the teachings of Skagerwall, Steen, Wolf or OracleUnleashed

are cumulative to the teachings in the prior art presented as to

challenged claim 6 in either IPR2020-00276 or 90/019,034. These

new references do not present the verbatim teachings when

compared with the teachings presented in the combination of

ONAG, OSG and Rajani (90/019,034) or RFC1034 (IPR2020-00276).

Further, while the is one common prior art reference in SNQ 2 in

the instant request that was previously presented in challenging

claim 6 in 90/019,034 (ONAG), as stated above, that reference is

now being presented in combination with OracleUnleashed and

Steen which were not previously presented to the Office. In

addition, as stated above, these two new references are not

"cumulative" to the prior art previously considered, because

they do not present verbatim teachings.

    Accordingly, because there are no grounds presented in the

90/019,162 Request which are based on an identical combination

of prior art which was previously presented to the Office in a

post grant challenge with respect to claim 6, and because the

newly presented prior art provides non-cumulative teachings

Application/Control Number: 90/019,162                          Page 50
Art Unit: 3992

which are relied on the in the Request as the basis of the asserted SNQ, neither the art nor arguments are the same or substantially the same as the art or arguments previously presented to the Office.

Therefore, the threshold for the Director to exercise discretion to reject the Request under the statute has not been met and *ex parte* reexamination of claim 6 is ordered in view of the holdings above that the prior art presented in this request raises a substantial new question of patentability as to claim 6.

### *Scope of the Proceeding*

Claim 6 is of U.S. Patent No. 7,233,978 are subject to reexamination.

### *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that ex parte reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in ex parte reexamination proceedings are provided for in 37 CFR 1.550(c).

Application/Control Number: 90/019,162                    Page 51
Art Unit: 3992

*Conclusion*

ALL correspondence relating to this ex parte reexamination proceeding should be directed as follows:

**Please mail any communications to:**

Attn: Mail Stop *"Ex Parte Reexam"*
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450 Alexandria VA 22313-1450

**Please FAX any communications to:**

(571) 273-9900
Central Reexamination Unit

**Please hand-deliver any communications to:**

Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

**By EFS-Web**

Registered users of EFS-Web may alternatively submit such correspondence via electronic filing system EFS-Web, at

https://efs.uspto.gov/efile/myportal/efs-registered

EFS-Web offers the benefit of quick submission to the particular area of the Office that needs to act on the correspondence. Also, EFS-Web submissions are "soft scanned" (i.e., electronically uploaded) directly into the official file for the reexamination proceeding, which offers parties the opportunity to review the content of their submissions after the "soft scanning" process is complete.

Application/Control Number: 90/019,162                                    Page 52
Art Unit: 3992


Any inquiry concerning this communication or earlier
communications from the Reexamination Legal Advisor or Examiner,
or as to the status of this proceeding, should be directed to
the Central Reexamination Unit at telephone number (571) 272-
7705.


        Signed:

        /ERON J SORRELL/
        Primary Examiner, Art Unit 3992

        Conferees:        /JOSEPH R POKRZYWA/
                          Primary Examiner, Art Unit 3992
/MICHAEL FUELLING/
Supervisory Patent Examiner, Art Unit 3992