IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KOVE IO, INC.,

    *Plaintiff*,

v.

AMAZON WEB SERVICES, INC.,

    *Defendant.*

Case No. 1:18-cv-8175

# AMAZON'S MOTION TO COMPEL ADDITIONAL TIME
# TO DEPOSE JOHN K. OVERTON

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman *(pro hac vice)*
*jeffrey.saltman@fischllp.com*
Lisa N. Phillips *(pro hac vice)*
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Ave., NW
Suite 400
Washington, D.C. 20015
Telephone: (202) 362-3500

*Attorneys for Amazon Web Services, Inc.*

I.  INTRODUCTION

Amazon previously moved for three days to depose Dr. John Overton, Kove's principal fact and Rule 30(b)(6) witness. As Amazon explained, not only is Dr. Overton Kove's designee for nearly all 30(b)(6) topics, he also has deep personal involvement in all aspects of this case.[1] Judge Pallmeyer declined this request, but stated that "[s]hould two days prove inadequate, [Amazon] may seek Kove's agreement to, or court authorization for, additional deposition time."[2] Two days did indeed prove inadequate, largely due to Dr. Overton's lack of preparation and evasive answers, as well as Kove's obstructive conduct.

For instance, Dr. Overton answered "I don't know" 246 times and "I don't recall" 76 times at his deposition. This includes his answers to questions seeking information within his designated Rule 30(b)(6) topics and personal knowledge, such as Kove's finances and sales, and the prior art that he was aware of when prosecuting the patents-in-suit. And he admitted to not reviewing documents that would have prepared him to answer Amazon's questions, including any profit and loss statements or prior art, despite being Kove's sole corporate witness on damages and validity topics. He and Kove attempted to justify his inability to answer Amazon's questions by complaining that Amazon was seeking detailed information over a 25-year period. But this circumstance was of Kove's own making, as it waited until 2018 to sue—12 years after the launch of the first accused product (S3), and when the asserted patents had nearly expired. And Kove's proffered excuse contrasts with the discovery it has demanded and received from Amazon. This includes detailed corporate testimony on Amazon products developed as far back as 2001—which Amazon provided through its former CTO, who retired several years ago. Indeed, Amazon has produced *seventeen*

---

[1] Dkt. 392/393 (Motion) at 7; Dkt. 454 (Reply) at 1, 3; Dkt. 497 (Jan. 26, 2022 Order) at 3.
[2] Dkt. 497 at 3.

30(b)(6) witnesses for over 100 hours of corporate testimony, while Kove has provided less than 17 hours of corporate testimony across just two witnesses.³

Dr. Overton also outright refused to answer—in either a personal or corporate capacity—Amazon's questions on the asserted patents' claims, despite being a named inventor and Kove's corporate designee on several related topics, including the priority date of each claim. He attempted to justify his testimony ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He also said that he couldn't recall ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

And Kove's attorney prevented Amazon from exercising its fundamental right to cross-examine Dr. Overton. Kove's attorney called time on Amazon's examination right at 14 hours, and then, after he and Dr. Overton met privately for over 20 minutes, proceeded with his own examination. This questioning elicited different answers on critical topics Amazon had asked Dr. Overton about. For example, when Amazon asked Dr. Overton about why Kove only began considering a case against Amazon in 2015, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Yet, when Kove's attorney finished his examination, he unilaterally shut down the deposition and refused Amazon any opportunity to ask about this changed testimony or any of the other new material that Kove had elicited.

---

³ Dr. Overton's 14-hour combined individual and 30(b)(6) deposition, plus around two hours with another witness on document issues.

⁴ *See*, *e.g.*, Ex. A (transcript) at 794:5–11.

⁵ *Id.* at 231:15.

⁶ *Id.* at 815:9–15.

2

Because of all this, and as further detailed below, Amazon has been unable to obtain the answers it's entitled to, both in response to questions Amazon asked during Dr. Overton's deposition and questions Amazon was unable to ask during the time provided. Indeed, Kove and Dr. Overton's concerted effort to run out the clock precluded Amazon from reaching lines of questioning and exhibits relating to relevant prior art, the prosecution of the patents-in-suit, and damages, among other topics. Accordingly, Amazon respectfully asks the Court to grant this motion and compel Kove to produce Dr. Overton for an additional full day of deposition.

## II. BACKGROUND

**Kove's Initial Attempts to Limit the Examination:** By May 2021, Amazon had served three Rule 30(b)(6) deposition notices on Kove, covering 41 topics, and had also noticed Dr. Overton's individual deposition. Kove designated Dr. Overton for 38 of the Rule 30(b)(6) topics, but stated that it would only make Dr. Overton "available for a maximum of two consecutive days (14 hours on the record), with his 30(b)(1) deposition running concurrently."[7] Given the breadth of Dr. Overton's designation and personal knowledge, Amazon sought an additional day to depose him, and detailed the basis for this request in correspondence and when conferring. Kove refused.[8]

**Judge Pallmeyer's Ruling**: On September 3, 2021, Amazon filed a combined motion (Dkt. 392) that, in relevant part, requested that Kove produce Dr. Overton for three days. Judge Pallmeyer denied Amazon's request without prejudice, reasoning that "[t]he better practice is for the deposition to go forward to determine how much is able to be covered."[9] And, as noted, the Order further stated that Amazon could seek more time if two days proved inadequate.

---

[7] Dkt. 392/393 at 2 (quoting Dkt. 393-7 at 3).

[8] *Id.* at 3.

[9] Dkt. 497 (Jan. 26, 2022 Order) at 3.

**The 2023 Deposition**: As discovery proceeded, Amazon requested dates in the last week of discovery to depose Dr. Overton. This was necessary due to Kove's designation of him on 30(b)(6) topics related to its validity contentions (e.g., priority dates, secondary considerations, prior art, prosecution, and unenforceability), which Kove moved for leave to amend on April 28, 2023, one week before the close of fact discovery.[10] Kove didn't provide dates for Dr. Overton during Amazon's requested May 2–5 period, instead offering him for May 16–17, 2023.[11]

On Kove's selected dates, Amazon deposed Dr. Overton in his individual capacity and as the corporate representative of both Kove and Arctide, a prior owner of the patents responding to Amazon's subpoena seeking testimony on 16 topics. Kove made no scope objections during the deposition. But as further detailed below, Dr. Overton was evasive or unprepared on many topics of examination. After the 14th hour, Kove called a halt, at which point Amazon left the deposition open and stated its intent to request additional time.[12] Kove's attorney and Dr. Overton then met privately, and Kove's attorney announced that he would proceed with his own examination, which lasted another 19 minutes.[13] When Kove finished, it unilaterally terminated the deposition and refused to permit any follow-up questions, over Amazon's objections.[14]

Amazon attempted to resolve these issues with Kove, including via a May 24 letter detailing its position and again requesting more time.[15] Kove's June 5 response argues ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[10] Dkt. No. 646. Kove also designated Dr. Overton on topics related to its interrogatory responses, including the three sets of supplemental responses that he verified and Kove served on the last day of discovery.

[11] Kove previously offered Dr. Overton for deposition on April 16–17, but given these outstanding validity issues, Amazon requested later deposition dates.

[12] *Id*. at 805:16–19; *see also id.* at 823:7–9 (noting reasons on the record why more time was warranted).

[13] *Id*. at 807:1–3.

[14] *Id*. at 821:19–21.

[15] Ex. B (Amazon's May 24 letter) at 1.

███████████████████████████ on a variety of topics.[16] Although this problem is of Kove's making, given among other things its lengthy delay in suing, Kove continued to refuse any additional time (including by dismissing Amazon's proposed compromise of less than a full-day supplemental deposition) at the parties' June 7 telephonic meet-and-confer, resulting in an impasse.[17]

### III. THERE'S GOOD CAUSE FOR EXTENDING DR. OVERTON'S DEPOSITION.

Under Rule 30(d)(1), the default duration for each deposition is seven hours. Individual depositions and Rule 30(b)(6) depositions are both entitled to the full duration, giving a default of 14 hours when a witness testifies in both capacities. But this default is subject to modification.[18] And Rule 30(d)(1) further provides that a court "must allow additional time … if needed to fairly examine the deponent." As the Advisory Committee Notes explain, courts should "consider a variety of factors" in determining whether to grant additional time to depose a witness under Rule 30.[19] For example, there may be good cause to do so for a deposition covering events "over a long period of time" or "numerous or lengthy documents," or where a witness failed to read relevant documents before their deposition.[20] And courts often grant requests to extend depositions where parties designate one witness to respond to most Rule 30(b)(6) topics, or where the topics are complex, because the default limit wasn't designed to rigidly control in those circumstances.[21]

Here, the relevant factors all confirm that additional time is necessary to fairly examine Dr. Overton in both capacities. As noted, Dr. Overton is Kove's principal officer, and one of two

---

[16] Ex. C (Kove's June 5 letter) at 1.

[17] R. William Sigler and Lisa Phillips for Amazon; Jaime Cardenas-Navia and Gina Cremona for Kove.

[18] *See* Dkt. 497 at 2 (Judge Pallmeyer's Jan. 26, 2022 Order).

[19] Fed. R. Civ. P. 30, Advisory Committee Notes on 2000 Amendment.

[20] *Id.*

[21] *See, e.g.*, *Canal Barge Co. v. Commonwealth Edison Co.*, No. 98-cv-509, 2001 WL 817853, *3–4 (N.D. Ill. July 19, 2001); *Brennan v. Ford Motor Co.*, No. 14-cv-6, 2016 WL 10592217, *3 (D.N.M. Feb. 1, 2016).

named inventors on all three asserted patents-in-suit.[22] And he's the primary Kove fact and Rule 30(b)(6) witness for 25-plus years of relevant history, from conception of the asserted patents to all predecessor entities and attempts to commercialize those patents.[23] Unsurprisingly, 15 of Kove's 25 interrogatory responses (Nos. 1–2, 6, 8, 10–13, 15–20, and 22) refer to Dr. Overton by name and indicate that he possesses relevant personal knowledge.[24] And he was Kove's designee to testify on nearly all of Amazon's Rule 30(b)(6) topics, including all topics related to damages and patent prosecution, including the recent reexaminations and the relevant prior art.

Moreover, as the Court knows from recent briefing, Amazon anticipates moving for summary judgment based in part on Kove's disclaimers of claim scope during the recent ex parte reexaminations. Dr. Overton personally participated in the Examiner interviews during those proceedings.[25] Apart from the limited summary available in the file history, or deposing Kove's lawyers, Amazon has no way of getting more information about those interviews and what happened in the reexaminations, which is material to claim construction and non-infringement.

This very situation is why Rule 30(d)(1)'s durational limit is only a presumptive or default provision. The deposition of Kove's primary witness must cover substantial ground, and more time is necessary to fairly examine him. And Kove's deposition conduct further shows good cause.

    A.    **Dr. Overton Was Unprepared to Testify and Evasive.**

As this Court explained in *Hunter v. WirelessPCS*, "corporations have a duty to … prepare [their corporate designees] in order that they can answer fully, completely, unevasively, the

---

[22] The other named inventor, Stephen Bailey, left Kove's employ in 2004.

[23] *See, e.g.*, Dkt. 361-4 at 2 (Kove's Rule 26 disclosures).

[24] *See, e.g.*, Dkt. 392-2 at 4 (asserting that Kove sold the asserted patents to "a company controlled by John Overton" in 2015, who sold the patents back to Kove in 2018); Dkt. 392-3 at 11 ("Kove Corp., through John Overton, had a call with Aequitas Ventures regarding the potential licensing of [Kove's] patents.").

[25] *See, e.g.*, Ex D (interview summaries in Reexamination No. 90/019,036).

6

questions posed by [the discovering party]."[26] Despite this obligation, Dr. Overton wasn't prepared to answer simple questions covering many of his designated topics.[27] And despite the breadth of Dr. Overton's personal knowledge, he repeatedly provided vague and evasive responses to Amazon's questions—uttering the phrase "I don't know" 246 times and "I don't recall" 76 times.

Although Dr. Overton testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ his deposition, he, by his own admission, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even if Dr. Overton had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as Kove later claimed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ he was wholly unprepared to testify on many of his designated topics.[29] For example, Dr. Overton testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Hence, he was unable to provide the required corporate testimony. Rather, he testified for example that he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Likewise, Dr. Overton testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ despite being designated to testify on Kove's and its

---

[26] No. 18-cv-980, 2021 WL 4621889, *9 (N.D. Ill. Oct. 5, 2021); accord, e.g., *Bierk v. Tango Mobile, LLC*, No. 19-cv-5167, 2021 WL 698479, *2 (N.D. Ill. Feb. 23, 2021).

[27] *See* Ex. A at 805:22–806:1, 806:7–13 (Amazon noting on the record that Dr. Overton was unprepared on topics relating to "the reexaminations," "the prosecution of the patents," "OverX's finances, Econnectix's finances, Kove's finances," and "investment information," among others); *see also* Dkt. 435-11 (Topics 2–4, 6–7); Dkt. 393-5 (Topics 3, 4, 8, 18); Dkt. 393-4 (Topics 3, 5).

[28] *E.g.*, Ex. A at 36:22, 37:11.

[29] Ex. C at 3.

[30] Ex. A at 34:3–6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Dkt. 393-4 at 3 (Topic 3); Dkt. 393-5 at 7 (Topic 3).

[31] *Id.* at 796:19–797:4.

7

predecessor entities' finances, including "revenue, expenses, profits, … capitalization," and "the internal allocations of the value of the patents-in-suit."[32] As a result, he was unable to answer simple questions such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Similarly, Dr. Overton was designated to testify regarding any investment memoranda that Kove provided to potential investors, including "the circumstances surrounding [their] creation" and "all persons involved in [their] creation and drafting," yet ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Dr. Overton was also unprepared to answer questions on topics relating to the prosecution of the patents-in-suit, prior art, and unenforceability. For instance, he testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Kove must provide a prepared corporate witness to testify about these interviews and other events from the patents' prosecution and reexaminations, whether it be Dr. Overton or the Kove attorneys who also participated in the interviews.

And apart from Rule 30(b)(6), Dr. Overton responded evasively to questions about factual issues within his personal knowledge throughout his two-day deposition.[36] For example, when

---

[32] *Id*. at 521:6–8 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."); *id*. at 520:8–10 (similar, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Dkt. 393-5 (Topics 8, 18).

[33] Ex. A at 528:6–10 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) (referring to ▮▮▮▮▮▮▮▮▮▮▮▮).

[34] Dkt. 435-11 at 6 (Topics 2 and 3); Ex. A at 627:8–14.

[35] *See, e.g.*, Ex. A at 767:19–768:3, 786:17–22, 788:3–5, 801:14–805:12; Dkt. 393-4 (Topics 1, 4, 6).

[36] *See, e.g., Signature Fin. LLC v. Shtayner*, No. 18-cv-4676, 2020 WL 6870817, *3 (N.D. Ill. Nov. 23, 2020) (holding that testimony was "intentionally evasive" where deponent "repeatedly respond[ed] 'I don't recall' to questions plainly within his ken").

asked whether Kove's predecessor, Econnectix, of which Dr. Overton was the CEO, had ever sold any of its XMC products, ▓▓▓▓ Dr. Overton also testified that ▓▓▓▓ And he was unwilling to state, without equivocation, that ▓▓▓▓ Other examples include Dr. Overton testifying that ▓▓▓▓ It strains credulity that Dr. Overton, as CEO and owner of those entities, wouldn't be able to recall this information.[41]

Dr. Overton was also unwilling to answer Amazon's questions on the asserted patents' claims, despite being a named inventor. For example, Dr. Overton refused to answer whether "there are any differences in the claims between [his] patents."[42] ▓▓▓▓ But even if that were so, Kove should've prepared him to testify as its corporate designee on subjects relating to the claims, as noted above.

Thus, as a fact or Rule 30(b)(6) witness, Dr. Overton should've been prepared to answer

---

[37] Ex. A at 140:16–21.

[38] *Id*. at 12:17–21.

[39] *Id*. at 13:3–8. ( ▓▓▓▓ ).

[40] *Id*. at 557:10–558:8.

[41] *See generally Signature Fin.*, 2020 WL 6870817, *4 (finding it not credible that a deponent would be unable to recall how he funded payroll or spent a $25,000 gift from his mother).

[42] Ex. A at 732:6–12.

[43] *Id*. at 794:5–11; *see also id*. at 770:19–20 (similar).

Amazon's questions. And this Court should require him to sit for another deposition to provide the information that he couldn't, and in some cases refused, to provide.[44]

      **B.    Kove's Unilateral Termination of the Deposition, Following Its Improper Examination, Also Constitutes Good Cause for Extending the Deposition.**

On the second day of the deposition, Kove stopped Amazon's examination as soon as it reached the end of the default seven hours.[45] After Amazon agreed to pause the deposition pending relief from this Court, however, Kove's attorney met privately for over 20 minutes with the witness and then announced that he would proceed with his own examination.[46] As further shown in the examples below, Kove's attorney then asked Dr. Overton a series of leading questions that elicited testimony contradicting Dr. Overton's earlier answers to Amazon.[47] Kove's attorney also introduced and asked Dr. Overton questions about three new exhibits.[48] Right after these questions, Kove unliterally terminated the deposition, refusing to permit any follow-up questions from Amazon on anything that Kove asked the witness about, even the new exhibits.[49] In doing so, Kove's attorney asserted: "Your time has been used up. You used all of your 14 hours."[50]

As an example of Dr. Overton's shifting testimony, Amazon had asked Dr. Overton earlier in the deposition how and when he first learned of the accused products, S3 and DynamoDB.[51] He

---

[44] *See* Fed. R. Civ. P. 37(a)(4); *Trustees*, 2022 WL 16635553, *2; *Signature Fin.*, 2020 WL 6870817, *4.

[45] Ex. A at 804:18–20.

[46] *Id*. at 805:15–19 (Amazon explaining: "If you're calling time, then … we're leaving this deposition open and will be seeking additional time with Mr. Overton."), 807:1–3 (Kove announcing: "We are going to have some examination, but let's go ahead and take a short break.").

[47] *See id*. at 807:11–820:12.

[48] *See id*.

[49] *Id*. at 821:19–21 (Amazon Atty: "Are you shutting down the deposition?" Kove Atty: "Yes."), 825:3–6 (Amazon Atty: "I'm giving you one more chance to let me ask my follow-up questions based on your redirect." Kove Atty: "No.").

[50] *Id*. at 820:15–16.

[51] *See, e.g., id*. at 201:8–202:2.

testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Amazon then introduced and asked Dr. Overton about the basis for Kove's response to Interrogatory No. 6, which identifies him as having relevant knowledge and states that he "may have become generally aware of Amazon S3 at least on or around March 14, 2006, and … DynamoDB at least on or around January 18, 2012."[53] Dr. Overton signed a sworn verification for this interrogatory response just nine days before his deposition. He's also Kove's designee on Rule 30(b)(6) topics such as Kove's knowledge of the accused products and the alleged infringement, and why it waited until 2018 to sue.[54] Yet, he provided only vague and evasive responses to numerous Amazon questions on these topics. The following exchange is representative:



---

[52] *Id*.

[53] Ex. E at 28 (Kove's response to Interrogatory No. 6).

[54] Dkt. 393-4 (Topic 13); Dkt. 393-5 (Topics 14 and 20).

11



Thus, it took several minutes of questioning and confronting Dr. Overton with his sworn verification signed nine days earlier to learn that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ are the basis for Kove's interrogatory response on when it learned of the accused products. Given this lack of clarity on a factual issue material to many aspects of this case, Amazon then marked and asked Dr. Overton about both bates-numbered documents cited in Kove's response to Interrogatory No. 6. But after questions spanning 14 more deposition transcript pages, Dr. Overton ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

After Amazon's examination, Kove marked two documents not cited in its response to Interrogatory No. 6 as new exhibits. Kove then asked Dr. Overton leading questions, to which Amazon objected, resulting in testimony contradicting Dr. Overton's previous statements that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ For example:

---

[55] Ex. A at 204:20–207:4.
[56] *Id*. at 211:15–225:12 (" ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ); *see also id*. at 226:15–18 ( ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ").
[57] *Id*. at 206:19–207:15.



Dr. Overton also testified during Kove's questioning that ███████████ ███████████████████████████████████████████████████████ But when asked why ███████████████████████████████████████ during Amazon's examination, ███████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████ Likewise, Dr. Overton refused to answer Amazon's questions about patent prosecution ███████████████ ███ But when Kove asked him, ███████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████

---

[58] *Id.* at 811:17–812:17; *see also id.* at 813:15–814:18 (similar, for Exhibit 98 and DynamoDB).

[59] *Id.* at 815:9–15.

[60] *Id.* at 231:15, 232:11, 232:18–20.

[61] *See, e.g., id.* at 780:16–781:15; *see also id.* at 392:7–8; 535:7–9.

[62] *Id.* at 819:15–820:2.

13

And this pattern of Dr. Overton first providing vague, evasive, or unprepared answers to Amazon, followed by concrete responses to Kove's leading questions, repeated for topics related to damages and other material issues. These topics include: (1) ███████████████████████████████████████████████████████;[63] ███████████████████████████████████████████████████████;[64] and ███████████████████████████████████████████████████████.[65]

Courts have found such conduct improper. Questioning the witness and raising new issues, while allowing no opportunity to respond, violates the right to cross-examination.[66] As such, courts hold that unilaterally terminating a deposition is rarely proper.[67] Here, Kove opted to continue after 14 hours; thus, Amazon had a right to question the witness on the issues Kove raised. Kove's refusal to permit further questions on the new issues and exhibits is so far outside the bounds of ordinary conduct that few cases address similar situations. The closest may be *Smith v. Logansport Cmty. Sch. Corp.*, where the defendant school noticed and took the plaintiff's deposition.[68] After an initial round of examinations, an attorney representing a co-defendant questioned the deponent, raising new issues. But when the school's attorney tried to follow up, the plaintiff's attorney terminated the deposition.[69] In granting more time, the Northern District of Indiana explained:

---

[63] *See, e.g., id.* at 807:19–21 ("████████████████████████████████████████").

[64] *Id.* at 816:4–819:3 (████████████████████████████████████████).

[65] *See, e.g., id.* at 819:15–19 (████████████████████████████████████████).

[66] *E.g., Derewecki v. Penn. R. Co.*, 353 F.2d 436, 442 (3d Cir. 1965) ("[T]he right of cross-examination inheres in every adversary proceeding," as "is established beyond any necessity for citation of authorities.").

[67] *E.g., Incorvati v. Best Buy Co.*, No. 10-cv-1939, 2011 WL 13363862, *2 (D.N.J. Nov. 29, 2011) ("The unilateral termination of a deposition by counsel is rarely warranted.").

[68] 139 F.R.D. 637, 641 (N.D. Ind. 1991).

[69] *Id.*

14

> Apparently convinced that his election to forego further examination of his client would somehow prevent redirect, [plaintiff's attorney] refused to allow further questioning … and insisted that the deposition was "over." His assumption was ill-founded, and his unilateral termination of the deposition was improper.[70]

Here, Kove's unilateral termination of the deposition, after examining the witness and raising new issues, was at least as improper as the conduct in *Smith*. And Kove compounded that by having Dr. Overton first give evasive answers, followed by Kove's leading questions at the deposition's close. Such questions and tactics are improper. For instance, in *Westfall v. Norfolk Southern Ry. Co.*, at the end of the plaintiff's deposition, the plaintiff's counsel "engaged in the tactic of asking his own client improper leading questions, thereby getting his client to respond in the way he wanted" and contradicting earlier answers.[71] Because asking such questions of one's own client is improper, the court struck that testimony.[72] Here, this Court should grant Amazon's request for additional time not only to follow-up on what Kove asked, but also to give Amazon an opportunity to address the questions it wasn't able to ask due to Dr. Overton's unprepared and evasive answers.

## IV.    CONCLUSION

Dr. Overton testified in his individual capacity, as Kove's primary corporate witness, and as Arctide's sole corporate witness. Fourteen hours proved inadequate to cover such a broad swath of material. And Kove's and Dr. Overton's actions further frustrated Amazon's ability to obtain the testimony to which it is entitled. Therefore, Amazon respectfully asks the Court to grant its motion to compel Kove to produce Dr. Overton for a full additional day of deposition.

---

[70] *Id*.

[71] No. 3:13-cv-926, 2014 WL 4979273, *2–3 (N.D. Ind. Oct. 6, 2014).

[72] *Id*.

Dated: June 20, 2023

Respectfully Submitted,

/s/ *R. William Sigler*
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (pro hac vice)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (pro hac vice)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Suite 400
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on June 20, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, and served a copy on all counsel of record via email.

                */s/ R. William Sigler*
                R. William Sigler