**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | |
| v. | Hon. Matthew F. Kennelly |
| Amazon Web Services, Inc., | Jury Trial Demanded |
| Defendant. | |

**KOVE IO, INC.'S OPPOSITION TO AMAZON'S MOTION TO COMPEL
<u>ADDITIONAL TIME TO DEPOSE JOHN K. OVERTON</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ................................................................................................ 1

II. AWS HAS NOT DEMONSTRATED GOOD CAUSE FOR EXCEEDING THE
FOURTEEN HOURS ALLOTTED TO IT FOR THE DEPOSITION OF DR. OVERTON,
AN APEX WITNESS. ........................................................................................ 2

    A. Fourteen Hours Was Ample Time For An Apex Witness But AWS Did Not
    Use Its Time Wisely.............................................................................. 3

    B. Dr. Overton Was Prepared to Testify................................................... 5

    C. Dr. Overton Answered the Questions He Was Asked. .......................... 9

    D. Kove's Twenty-Minute Targeted Follow-Up Examination Does Not Justify
    Another Day of Unbounded And Unlimited Scope Deposition Testimony. ............... 11

III. CONCLUSION ................................................................................................ 15

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Apollo v. Stasinopoulos*,
  2021 WL 1414090 (N.D. Ill. Apr. 14, 2021) ..................................................2, 4, 11

*Cardenas v. Prudential Ins. Co. of Am.*,
  2003 WL 21302960 (D. Minn. May 16, 2003)................................................................4

*DeLeon-Reyes v. Guevara*,
  2021 WL 3109662 (N.D. Ill., July 7, 2021)....................................................................3

*Derewecki v. Penn. R. Co.*,
  353 F.2d 436 (3d Cir. 1965)..........................................................................................14

*Fountain v. Farmers Ins. Exch.*,
  2014 WL 6851623 (E.D.N.C. Dec. 3, 2014) .................................................................12

*Goldie v. Hartford Ins. Co.*,
  2006 WL 8451352 (C.D. Cal. Feb. 16, 2006).................................................................5

*Hunter v. WirelessPCS*,
  2021 WL 4621889 (N.D. Ill. Oct. 5, 2021).....................................................................5

*HVLPO2, LLC v. Oxygen Frog, LLC*,
  949 F.3d 685 (Fed. Cir. 2020).......................................................................................11

*Incorvati v. Best Buy Co.*,
  2011 WL 13363862 (D.N.J. Nov. 29, 2011) .................................................................14

*Jensen v. Astrazeneca LP.*,
  2004 WL 2066837 (D. Minn. Aug. 30, 2004) .................................................................4

*Mother & Father v. Cassidy*,
  338 F.3d 704 (7th Cir. 2003) ...........................................................................................2

*QBE Ins. Corp. v. Jorda Enterprises, Inc.*,
  277 F.R.D. 676 (S.D. Fla. 2012)......................................................................................5

*Scott v. Multicare Health Sys.*,
  2019 WL 1505880 (W.D. Wash. Apr. 5, 2019)...............................................................4

*Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*,
  218 F.R.D. 29 (D. Conn. 2003)........................................................................................4

*Signature Fin. LLC v. Shtayner*,
    2020 WL 6870817 (N.D. Ill. Nov. 23, 2020) ...................................................10, 11

*Smith v. Logansport Cmty. Sch. Corp.*,
    139 F.R.D. 637 (N.D. Ind. 1991) .............................................................................14

*U.S. SEC v. Kandalepas*,
    2018 WL 4005201 (N.D. Ill. Aug. 22, 2018) ...........................................................2

*Westfall v. Norfolk Southern Ry. Co.*,
    2014 WL 4979273 (N.D. Ind. Oct. 6, 2014) ............................................................14

**Rules**

Fed. R. Civ. P. 30(d)(1).........................................................................................2, 4, 6

Rule 30(b)(6)...............................................................................................................5

Rule 30(d)(3)..............................................................................................................12

## I.    INTRODUCTION

AWS has already deposed Dr. Overton for a full fourteen hours.  But because it regrets how it went about using all that time, and because it was displeased with some of Dr. Overton's responses, AWS demands a third full day.  Nothing warrants subjecting Dr. Overton to another deposition.  Fourteen hours was more than enough.

AWS complains about the quality of Dr. Overton's answers, mischaracterizing him as unprepared and evasive.  The deposition transcript belies these claims and proves the opposite. Dr. Overton provided more than 800 pages of testimony during his two-day deposition.  He explained how he had spent considerable time preparing with counsel.  He also brought notes, which AWS marked on the record, containing certain factual information on topics for which he was Kove's corporate designee, so that he would not need to rely solely on his memory.  By any reasonable measure, Dr. Overton was sufficiently prepared for his deposition.  That Dr. Overton was occasionally unable to recall certain details (often from events long ago) does not justify deposing him again.  Nor does being cautious and endeavoring to be accurate with his answers.

There are also apex doctrine concerns, which AWS conveniently did not address.  Dr. Overton is the CEO of a small, closely-held software company that is working furiously to roll out its software-defined memory products.[1]  His professional obligations regularly cause him to work over eighty hours a week.  In fact, the reason why Dr. Overton was not able to accommodate AWS's requested rescheduled deposition dates was because he was preparing for and attending the "AIM for Climate Summit" in Washington, DC.[2]  Having taken significant time already to prepare and then sit for a two-day deposition, Dr. Overton and his company would suffer undue

---

[1] *See* Ex. 1, Overton Tr. (May 16), 34:10-20, 345:12-347:14, 357:16-358:4; Ex. 2, Overton Tr. (May 17), 643:7-644:8.
[2] Ex.1, Overton Tr. (May 16), 345:15-328:12.

hardship if he were recalled for more. AWS well understands the demands on a CEO's time, having wielded that same shield to oppose Kove's request to depose its own CEO.[3] Another deposition of Dr. Overton is overreach and the basis AWS musters to justify it is not enough. Kove respectfully requests the Court deny AWS's motion.

## II. AWS HAS NOT DEMONSTRATED GOOD CAUSE FOR EXCEEDING THE FOURTEEN HOURS ALLOTTED TO IT FOR THE DEPOSITION OF DR. OVERTON, AN APEX WITNESS.

Depositions are limited to seven hours "unless otherwise stipulated or ordered by the court." Fed. R. Civ. P. 30(d)(1). Because AWS sought to depose Dr. Overton in both his individual and corporate representative capacities, Kove agreed in prior briefing before the Court to make him available for fourteen hours, even though Kove was not required to double Dr. Overton's availability. *See* Dkt. 434 at 4–6. The Court agreed that two days should be enough. Dkt. 497 at 3–4.

Additional time beyond the durational limit "is not available for the asking." *Apollo v. Stasinopoulos*, No. 18-CV-6475, 2021 WL 1414090, at *2 (N.D. Ill. Apr. 14, 2021). "A party seeking additional time must show good cause." *Id.* (citing *Mother & Father v. Cassidy*, 338 F.3d 704, 711 (7th Cir. 2003)); *see also* Fed. R. Civ. P. 30(d)(1) advisory committee notes (2000) ("The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order."). Good cause is a "fact-intensive inquiry" and may involve considering "whether the desired information could have been gathered in the first seven hours of formal deposition." *U.S. SEC v. Kandalepas*, No. 18-CV-2637, 2018 WL 4005201, at *2 (N.D. Ill. Aug. 22, 2018). Here, the Court previously denied AWS's prior motion for three days of testimony for Dr. Overton and limited the testimony to two days (Dkt. 497). AWS has not met

---

[3] The Court allowed Kove to depose AWS's CEO for 1 hour. Dkt. 641.

its burden to show good cause for any additional deposition time, let alone a full day with unfettered scope.

### A. Fourteen Hours Was Ample Time For An Apex Witness But AWS Did Not Use Its Time Wisely.

Dr. Overton has a significant apex role as CEO of a small, closely-held software company. This is an important consideration weighing against ordering more than the fourteen hours of testimony already provided by Dr. Overton, particularly where that time was not used efficiently. *See DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, 2021 WL 3109662, *8 (N.D. Ill., July 7, 2021) (imposing a limit of 3 hours on deposition of former Cook County prosecutor with relevant, unique personal knowledge, even though he no longer serves in an apex capacity).

AWS wasted much of its ample allotted time fishing for privileged information and having Dr. Overton verify interrogatory responses that he had already verified under oath in writing.[4]  For example, AWS asked Dr. Overton about prior art references he discussed with his attorneys during the prosecution of each of his patents and about whether his attorneys instructed him to search for prior art.[5]  AWS also asked Dr. Overton about a memorandum that was clearly labeled in the privilege log as encompassing work product prepared in anticipation of litigation.[6]  And AWS violated the Court's protective order by asking questions directed toward litigation funding.[7] These lines of questioning wasted significant amounts of time.  It was AWS's choice to "us[e] up limited time that might have been better spent on the topics counsel claims they did not have the

---

[4] *See, e.g.*, Ex. 1, Overton Tr. (May 16), 129:18-130:17, 143:3-14, 162:6-163:7, 171:1-18, 175:17-176:12, 202:11-203:6, 267:8-268:2, 370:18-371:18; 239:15-22, 241:7-14,  243:2-14, 244:14-21, 252:10-17, 254:2-9, 259:1-7, 260:5-12; Ex. 2, Overton Tr. (May 17), 596:4-16, 746:15-748:22.
[5] Ex. 1, Overton Tr. (May 16), 103:14-104:16, 109:8-21, 112:5-19; Ex. 2, Overton Tr. (May 17), 595:21-596:16.
[6] *See* Ex. 1, Overton Tr. (May 16), 243:2-5.
[7] *See* Ex. 1, Overton Tr. (May 16), 76:11-21; Dkt. 497 at 18–25 (granting protective order as to Topics 7, 13, and 14 in AWS's August 20, 2021 Rule 30(b)(6) deposition notice).

opportunity to sufficiently address." *Apollo*, 2021 WL 1414090, at *2 (noting that "many cases have denied motions for additional time to conduct a deposition because the questioner often asked the 'wrong' questions"); *see also Scott v. Multicare Health Sys.*, No. 18-C-0063, 2019 WL 1505880, at *2 (W.D. Wash. Apr. 5, 2019) ("The seven-hour limit imposed by Rule 30(d)(1) encourages efficiency in depositions—while parties may wish to cover a wide breadth of topics in a given deposition, they are necessarily required to prioritize their questions in order to remain within the limitations set by the Federal Rules."). AWS's "inadequate time management" is not good cause. *See Jensen v. Astrazeneca LP.*, No. 02-CV-4844, 2004 WL 2066837, at *3 (D. Minn. Aug. 30, 2004) (denying additional deposition time where defendant was "not [] able to elicit all of the information it wished to get to" due to inefficient use of 11 hours of questioning).

Tellingly, AWS does not identify any specific information it did not have time to ask about in its allotted fourteen hours. While AWS insists that "[t]his very situation is why Rule 30(d)(1)'s durational limit is only a presumptive or default provision" and "[t]he deposition of Kove's primary witness must cover substantial ground,"[8] it never specifically articulates what substantial ground it didn't have time to cover over two full days. This makes sense, given the extravagant amount of time it had to ask him about a relatively small company and his personal knowledge. This shows that more time is not needed. *Cardenas v. Prudential Ins. Co. of Am.*, No. 99-CV-1421, 2003 WL 21302960, at *2 (D. Minn. May 16, 2003) (denying additional deposition time where "plaintiffs have not shown any need to obtain substantive or relevant information from the witnesses; they merely seek more time"); *Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 32 (D. Conn. 2003) (denying motion for additional time where "it is not apparent why more time would be required").

---

[8] Mot. at 6.

AWS is also not owed more deposition time simply because it has offered more 30(b)(6) witnesses than Kove. That AWS has offered more witnesses is expected, as Kove is a small company with discrete operations, while AWS is, in contrast, a critical arm of one of the five largest tech companies in the world.

### B. Dr. Overton Was Prepared to Testify.

AWS makes much of Dr. Overton answering "I don't know" and "I don't recall" to certain questions.[9] But the answer to a question depends, of course, on the question. As a general matter, many of AWS's questions were directed toward events that took place fifteen to twenty-five years ago. As AWS has acknowledged, a 30(b)(6) deposition is not a memory test, and a "corporation need not produce witnesses who know every single fact" in order to comply with its obligations under Rule 30(b)(6).[10] *See, e.g.*, *Goldie v. Hartford Ins. Co.*, No. CV053801, 2006 WL 8451352, at *2 (C.D. Cal. Feb. 16, 2006) (denying a motion to compel additional designations where the witness "answered that she had to 'guess' or 'speculate' as to the answer to a question" because such answers were "understandable, given that [the witness] testified regarding a multitude of subjects over a two-day period" and "[a] Rule 30(b)(6) deposition is not a 'memory test'"); *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012) ("Absolute perfection is not required of a 30(b)(6) witness. The mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation.").

AWS relies on *Hunter v. WirelessPCS* to describe Dr. Overton's obligations to prepare for his deposition, but unlike the deponent in that case, who testified that she did not review any documents or speak to anyone in preparation, Dr. Overton prepared over several days and reviewed

---

[9] Mot. at 1.
[10] *See* Dkt. No. 185 at 9 (AWS arguing that "a deposition is not a memory test").

numerous documents. No. 18-cv-980, 2021 WL 4621889, *9 (N.D. Ill. Oct. 5, 2021). Dr. Overton's extensive preparation is not in conflict with his testimony, as AWS suggests. Dr. Overton testified that he met with three attorneys and spent many hours reviewing documents, source code, and corporate documents. AWS never asked him about the facts surrounding his preparation.[11]

Moreover, on several occasions, AWS chose not to show Dr. Overton documents that would refresh his memory, even when Dr. Overton specifically asked to see documents to help him remember.[12] This problem was exacerbated by AWS's refusal to tell Kove in advance what information AWS was searching for so that Dr. Overton could better prepare, even after Kove sent letters for many of AWS's numerous 30(b)(6) witnesses doing just that.[13] *See* Fed. R. Civ. P. 30(d)(1) advisory committee's notes (2000) ("In cases in which the witness will be questioned about numerous or lengthy documents, it is often desirable for the interrogating party to send copies of the documents to the witness sufficiently in advance of the deposition so that the witness can become familiar with them."). AWS also could have raised its complaints during the two deposition days, and Kove would have then had the opportunity to further educate or refresh Dr. Overton's memory. It did not. Absent any effort to address the problem, expecting Dr. Overton to know every nuance of his inventions, investors, corporate finances, and prosecution proceedings (among other topics) over the past twenty-five years is unreasonable, and the Federal Rules do not require it.

---

[11] *See* Ex. 1, Overton Tr. (May 16), 36:11-38:11 (no follow-up questions about additional days of prep).

[12] *See, e.g.*, Ex. 2, Overton Tr. (May 17), 796:19-797:4 (asking Dr. Overton technical details about a piece of prior art and then, when Dr. Overton testifies that he "would want to review the documents physically to be able to make comments on that right now," counsel for AWS does not present the prior art and continues questioning).

[13] *See, e.g.*, Ex. 3, April 13, 2023 A. Adler Letter Re Singh Deposition.

6

AWS asserts that Dr. Overton was unprepared to testify about several specific topics. These assertions are unfounded based on the nature of Dr. Overton's response or his obligations given the agreed-upon scope of his designated topics.

First, AWS complains that Dr. Overton was not prepared to testify about prior art references.[14] Kove, however, only agreed to provide a witness to "testify generally about the identification of alleged prior art references during prosecution."[15] The questions AWS asked during the deposition sought to elicit improper expert testimony regarding prior art in relation to the claims of the Asserted Patents. Under these circumstances, Dr. Overton testified as best as he was able to as a fact witness. For example, Dr. Overton's testimony regarding whether the Oracle Names Guide prior art reference taught a non-hierarchical architecture was entirely appropriate. Dr. Overton provided thoughtful testimony to support his answer that the Oracle Names Guide taught a hierarchical architecture, including testifying that, from what he remembered, the Oracle document had a hierarchical architecture as an "obvious preferred embodiment" but that he needed to study the document further to answer questions about "other exceptions and details."[16] AWS also neglects to credit the additional substantive testimony that Dr. Overton provided about the Oracle Names Guide reference.[17] These answers more than met his obligations given that Dr. Overton was not designated to testify about such prior art references, AWS did not serve a topic about reexaminations, and AWS's topics about patent prosecution were served before the pertinent reexaminations were even filed.

Next, AWS contends that Dr. Overton failed to adequately review "tax returns or profit

---

[14] Mot. at 7.
[15] Ex. 4, Kove's 3/30/2023 Objections and Responses to AWS's February 12, 2020 Notice of 30(b)(6) Deposition of Kove at 6-7.
[16] Ex. 2, Overton Tr. (May 17), 797:6-12.
[17] *See* Ex. 2, Overton Tr. (May 17), 789:1-793:18.

and loss statements" over a twenty-year period.[18]   Specifically, AWS takes issue with

Dr. Overton's lack of familiarity with one line from an Econnectix tax return from 2006 regarding

intangible assets.[19]   But AWS's question about intangible assets does not, as AWS claims, address

the "internal allocation[] of the value of the patents-in-suit."[20]   Moreover, it is unreasonable to

expect Dr. Overton to engage in a rigorous analysis of what is or is not included in every line item

of all of Kove's and Econnectix's tax returns across a twenty-year time period.

     AWS also contends that Dr. Overton could not explain who provided the valuation of Kove

appearing in investment memoranda that Kove provided to potential investors.[21]   AWS only cites

to a small portion of the transcript, where Dr. Overton did answer the question, but was unable to

list out all the investors that were involved in the valuation.  The transcript continues to show that

Dr. Overton was able to answer many questions about the investment memoranda and even

identify two investors.[22]   AWS's expectation that Dr. Overton readily remember the names of all

the investors he's interacted with over the past twenty years is unreasonable.  As noted above, a

30(b)(6) deposition is not a memory test.  Kove has produced documents that identify all the

investors during this period and documents detailing ███████████████████.  Therefore,

AWS has the relevant information that it was seeking. If AWS wanted to ask specific questions

about the investors, it should have provided relevant documents to Dr. Overton during his

deposition.

     AWS also overstates Dr. Overton's obligation to answer questions about the "patents-in-

---

[18] Mot. at 7–8.
[19] Mot. at 8 n.33.
[20] Mot. 7-8 (citing Dkt. 393-95 (Topics 8, 18)).
[21] Mot. at 8.
[22] *See* Ex. 2, Overton Tr. (May 17), 627:5-630:5.

suit, prior art, and unenforceability."[23]  Dr. Overton was only designated to testify generally regarding the Asserted Patents and facts related to the prosecution of the Asserted Patents.[24]  The questions that AWS asked were highly detailed and beyond the scope of this designation.[25]  Despite this, Dr. Overton testified to the best of his ability about events that occurred many months ago.  Dr. Overton has been involved in several Examiner interviews and it is therefore reasonable that he may not remember the details of each one, particularly because the interviews are predominantly verbal and there are few documents available to refresh his recollection.  Given that AWS has already asked its questions to Dr. Overton about the Examiner interviews, it is unclear what AWS expects would happen if allowed more time to depose him.[26]

In sum, Dr. Overton was adequately prepared to testify about the agreed upon scope of his designated topics.  AWS's assertions otherwise should not convince.

### C.  Dr. Overton Answered the Questions He Was Asked.

AWS insists that Dr. Overton responded evasively to its questions, but its proffered examples are divorced from context.  For example, Dr. Overton's response to whether Econnectix ever sold any XMC products simply reflected his desire to be accurate.  His explanation was not merely that the products "might have or might not have" have been sold, as AWS asserts, but rather that it's possible XMC was sold because it was the same code base as the XPD product, which was being sold.[27]  Regardless, AWS's question was answered in detail in Kove's

---

[23] Mot. at 8.

[24] *See* Ex. 4, Kove's 3/30/2023 Objections and Responses to AWS's February 12, 2020 Notice of 30(b)(6) Deposition of Kove at 8.

[25] Ex. 2, Overton Tr. (May 17), 763:22-771:21 (questioning Dr. Overton on a meeting relating to an *ex parte* reexamination, despite Dr. Overton's repeated statements that he does not recall the meeting).

[26] AWS has provided no legal basis for its unusual and problematic request that Kove make its outside counsel available for a deposition.

[27] *See* Ex. 1, Overton Tr. (May 16), 140:13-21.

interrogatory response, which was verified under oath by Dr. Overton twice: once before the deposition and again during the deposition.[28]

AWS's example about Dr. Overton consulting for Amazon is similarly misleading. Dr. Overton was not being evasive but rather being careful to provide a truthful answer. Amazon is a very large company with many divisions and subsidiaries and product lines; Dr. Overton's answer reflects that it's possible that he may have unknowingly consulted with Amazon at some point during his twenty-five-year career, or simply forgotten about it. Additionally, Dr. Overton's companies have sold many XPD products, and it's possible that one of these products may have been used with an Amazon-affiliated customer. Dr. Overton's response was out of caution and a desire to be accurate, not evasive. Dr. Overton is allowed to qualify his answers and provide a narrative for accurate testimony.

AWS's questions regarding Econnectix funding were outside the scope of Dr. Overton's designated topics.[29] Therefore, Dr. Overton only had an obligation to provide testimony on what he could reasonably remember, which he did.[30] Dr. Overton's best efforts on these issues does not warrant further deposition time, especially because questions about investments from family members have little to no relevance to the issues in the case. Again, Dr. Overton testified that documents existed that would provide the information about funding that AWS was asking about and in fact Kove did produce documents relevant to these questions. AWS's reliance on *Signature Fin. LLC v. Shtayner* as a comparison to determine the credibility of Dr. Overton's testimony is inapt because the deponent there could not remember how he spent a $25,000 gift he received a

---

[28] *See* Ex. 1, Overton Tr. (May 16), 129:18-140:21.
[29] *See generally* Ex. 5, AWS's 30(b)(6) deposition notices.
[30] Ex. 2, Overton Tr. (May 17), 556:1-559:5 ███████

month earlier and not sixteen years ago, as in Dr. Overton's case.  No. 18-cv-4676, 2020 WL 6870817, *2 (N.D. Ill. Nov. 23, 2020).

Dr. Overton's testimony about the Asserted Patents' claims was also entirely proper.  Kove only agreed to provide a witness to testify "generally about the specifications of the Asserted Patents," and objected to the topic as seeking expert testimony and legal conclusions.[31] AWS never challenged Kove's topic scope prior to Dr. Overton's deposition, so Dr. Overton was only prepared to testify generally about the specifications.  Regardless, as he testified, Dr. Overton does not have the appropriate training to provide testimony about the scope and meaning of the claims and it was improper for AWS to ask for expert testimony regarding the meaning of the claim terms from a lay witness.  *See HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 689 (Fed. Cir. 2020).  With respect to the scope that he was designated for, Dr. Overton was willing and did answer questions about the technology disclosed in the Asserted Patents.[32]

Dr. Overton's answers satisfied his obligations and accordingly do not remotely qualify as the kind of bad faith or obstructionist behavior that would warrant additional deposition time.  *See Apollo*, 2021 WL 1414090, at *3, 11 (declining to impose additional deposition time even where the witness was "exceedingly cautious in his answers" because it was "no more than occurs routinely in many depositions," and it "certainly cannot be considered as conduct 'that may be characterized as uncivil, abrasive, abusive, hostile, or obstructive and that impedes the fundamental goal of resolving disputes rationally, peacefully and efficiently'") (citation omitted).

### D.  Kove's Twenty-Minute Targeted Follow-Up Examination Does Not Justify Another Day of Unbounded And Unlimited Scope Deposition Testimony.

---

[31] *See* Ex. 4, Kove's 3/30/2023 Objections and Responses to AWS's February 12, 2020 Notice of 30(b)(6) Deposition of Kove at 8-9.
[32] *See, e.g.*, Ex. 2, Overton Tr. (May 17), 590:7-591:13, 792:20-793:18.

After AWS had burned through its allotted fourteen hours, Kove exercised its right to conduct a follow-up examination, which lasted less than twenty minutes, and then ended the deposition.[33]  The questions asked in this examination were targeted follow-up questions with respect to a few items of testimony procured during AWS's fourteen-hour direct examination. Dr. Overton's less than twenty minutes of follow-up examination testimony does not justify AWS's request for additional deposition time, let alone the seven hours of unbounded and unlimited scope testimony requested by AWS.

Ending a deposition when the Court-ordered time has run out does not qualify as an improper "unilateral termination" under Rule 30(d)(3), as AWS asserts. Indeed, AWS cites no authority for its assertion that it is entitled to more deposition time in such circumstances.  It instead levies unsupported charges of misconduct and violations of constitutional rights.  These charges have no merit.  AWS used up the entirety of its time afforded by this Court.  In doing so, it consciously chose not to reserve additional time for any redirect.  As such, AWS cannot now claim it is owed more time, particularly in the absence of any direction suggesting otherwise.  *Cf. Fountain v. Farmers Ins. Exch.*, No. 4:13-CV-120-D, 2014 WL 6851623, at *3 (E.D.N.C. Dec. 3, 2014) (ordering that the "Plaintiff shall be permitted four hours for each deposition, which shall include any redirect/rebuttal time; provided, however, that if Defendants' cross-examination of a deponent shall exceed one hour, then Plaintiff shall be given one-half of the time exceeding one hour, in addition to any time reserved for redirect/rebuttal").

AWS's complaints are particularly inappropriate considering that Kove conducted its brief follow-up examination to clarify a few items of ambiguous testimony that AWS elicited through vague and misleading questions during its fourteen hours of direct examination.  Specifically, with

---

[33] Ex. 2, Overton Tr. (May 17), 807:7-825:20.

respect to when Dr. Overton first learned of S3 and DynamoDB, AWS directly asked about Dr. Overton's awareness of S3 and DynamoDB at the time of their launch.[34] Later, Dr. Overton specifically noted that the dates in Kove's interrogatory response may correspond to the launch dates of S3 and DynamoDB.[35] At that point, presumably because it received the information it was after, AWS moved on rather than show Dr. Overton the product launch press releases.[36] Thus, Kove's follow-up questioning and exhibits regarding S3 and DynamoDB launch dates were within the subject matter of the AWS's examination and resolved a potential ambiguity that AWS chose not to address.

Similarly, AWS asked vague questions that directly related to an available document, the Econnectix and Founders Capital agreement, without showing it to Dr. Overton.[37] Therefore, showing Dr. Overton this document during Kove's follow-up examination was thus both within the permissible scope and necessitated by AWS's potentially confusing examination.

AWS's additional examples where Kove asked some discrete follow-up questions about a few topics that AWS covered during in its fourteen hours of questioning do not warrant another day of testimony.[38] AWS's assertion that such questions were prompted by initially vague or evasive answers is not supported or accurate. Instead, Kove asked follow-up clarifying questions to those posed by AWS. AWS fails to adequately explain why this justifies additional testimony

---

[34] *See* Ex.1, Overton Tr. (May 16), 114:16-19, 119:9-120:8, 208:1-19, 210:13-211:13.

[35] Ex. 1, Overton Tr. (May 16), 227:10-21 ("Q. … It's your belief that there are documents reflecting the fact that you became generally aware of Amazon S3 on or around March 14, 2006? A. No. It's my belief that those are specific dates and there wouldn't be specific dates unless there was some way to make those specific dates. I don't know if that's the introduction to S3 and the introduction of DynamoDB and that's that date, or if there's an email or if there's something else, I don't know, but those are specific dates.").

[36] *Id.* at 227:22.

[37] *See, e.g.*, Ex. 2, Overton Tr. (May 17), 448:11-449:11, 453:5-459:18.

[38] *See* Mot. at 14.

13

from an apex witness that it questioned for the Court-allotted fourteen hours without reserving time.

Follow-up questioning in depositions by the party representing the witness is common. AWS nonetheless chose not to reserve time for redirect. AWS's suggestion that it had some fundamental right to redirect when it failed to reserve time is unsupported; this issue was not before the court in *Derewecki v. Penn. R. Co.*, 353 F.2d 436, 442 (3d Cir. 1965), which is the only case AWS cites for this proposition. The other cases cited by AWS are likewise inapposite. *Incorvati v. Best Buy Co.*, has no relevance here because the plaintiff there suspended the deposition before it even began. No. 10-cv-1939, 2011 WL 13363862, *1 (D.N.J. Nov. 29, 2011). Here, by contrast, AWS used its fourteen hours of record time to depose Dr. Overton. AWS also incorrectly relies on *Smith v. Logansport Cmty. Sch. Corp.*, to support its position. *Smith* had nothing to do with a party seeking more time after using the substantial time allotted to it. Instead, *Smith* involved a multi-defendant case where the plaintiff refused to allow the defendant that noticed the deposition the opportunity to conduct an adverse redirect examination after the other defendants' multi-hour cross-examination, even after it had reserved time to do so. 139 F.R.D. 637, 642-43 (N.D. Ind. 1991). The court held that was procedurally improper. *Id.* In short, *Smith* does not contemplate the same facts as in this case, where AWS — after using all fourteen hours that the Court allotted to it and failing to reserve any additional time — seeks an additional seven hours of testimony to counter less than twenty minutes of cross-examination. Lastly, AWS's reliance on *Westfall v. Norfolk Southern Ry. Co.* to justify additional deposition time is also misplaced. That is a case ruling on evidentiary issues stemming from leading questions, not one about additional deposition time. *Westfall v. Norfolk Southern Ry. Co.*, No. 3:13-cv-926, 2014 WL 4979273, *3 (N.D. Ind. Oct. 6, 2014).

## III.    CONCLUSION

For the reasons set forth above, Kove respectfully requests that the Court deny AWS's Motion.

Dated: July 17, 2023

Respectfully submitted,

*/s/ Khue V. Hoang*

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 560-3501

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com
Philip Eklem (*pro hac vice*)
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Taylor Mauze (*pro hac vice*)
tmauze@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5000

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard *(pro hac vice)*
sballard@reichmanjorgensen.com
Gina H. Cremona *(pro hac vice)*
gcremona@reichmanjorgensen.com
Navid Bayar *(pro hac vice)*
nbayar@reichmanjorgensen.com
Savannah Carnes *(pro hac vice)*
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

***ATTORNEYS FOR PLAINTIFF
KOVE IO, INC.***

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of July, 2023, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Khue V. Hoang*
Khue V. Hoang
