**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | |
| v. | Hon. Matthew F. Kennelly |
| Amazon Web Services, Inc., | |
| Defendant. | Jury Trial Demanded |

## KOVE IO, INC.'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ................................................................................................2

      A.    AWS Has Long Known That Performance Metrics Are Relevant. .......................2

      B.    AWS Did Not Take Reasonable Steps To Retain Key Metrics, Resulting in Years of Lost Data....................................................................................................3

      C.    AWS Hindered Kove's Ability to Discover the Spoliation. ...................................5

      D.    AWS's Expert Criticizes Kove For Not Having Missing Data That AWS Spoliated. ...................................................................................................6

III.  ARGUMENT ................................................................................................7

      A.    AWS Spoliated Relevant Metrics After It Knew They May Be Discoverable........8

          1.    AWS Had A Duty To Preserve Potentially Relevant Performance Metrics. .....8

          2.    The Spoliated Metrics Cannot be "Restored or Replaced." ...........................10

          3.    AWS Did Not Take Reasonable Steps to Preserve Metrics Older Than Five Years. ...................................................................................................11

      B.    AWS's Spoliation Prejudices Kove. ...................................................................13

      C.    Kove Requests Relief Tailored To Mitigate Prejudice To It. ...............................14

IV.   CONCLUSION ...............................................................................................15

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ayers v. Heritage-Crystal Clean, LLC*,
    2022 WL 2355909 (N.D. Ill. June 1, 2022) ..................................................................15

*Covarrubias v. Wendy's Rest.*,
    2021 WL 4258701 (N.D. Ill. June 21, 2021) ................................................................15

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
    513 F. Supp. 3d 839 (N.D. Ill. 2021) .................................................................7, 11, 13, 15

*Estrada v. Pao Pao, Inc.*,
    2021 WL 8202677 (N.D. Ill. Oct. 25, 2021) ................................................................15

*Franklin v. Howard Brown Health Ctr.*,
    2018 WL 4784668 (N.D. Ill. Oct. 4, 2018) ..................................................................15

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970) ............................................................................8

*Hollis v. CEVA Logistics U.S., Inc.*,
    603 F. Supp. 3d 611 (N.D. Ill. 2022) ................................................................. *passim*

*Jones v. Bremen High Sch. Dist. 228*,
    2010 WL 2106640 (N.D. Ill. May 25, 2010) ................................................................8

*Konica Minolta Bus. Solutions, USA Inc. v. Lowery Corp.*,
    2016 WL 4537847 (E.D. Mich. Aug. 31, 2016) .........................................................11

*Oliver v. Amazon.com Services, LLC*,
    2023 WL 3322382 (E.D. Wis. May 8, 2023) ..............................................................10

*Pable v. Chicago Transit Auth.*,
    2023 WL 2333414 (N.D. Ill. Mar. 2, 2023) ................................................................15

*Schmalz v. Vill. of N. Riverside*,
    2018 WL 1704109 (N.D. Ill. Mar. 23, 2018) ..............................................................15

*Torgersen v. Siemens Bldg. Tech., Inc.*,
    2021 WL 2072151 (N.D. Ill. May 24, 2021) ..............................................................15

*Zubulake v. UBS Warburg LLC*,
    229 F.R.D. 422 (S.D.N.Y. 2004) ................................................................................12

**Rules**

Fed. R. Civ. P. 37 ................................................................................................................14

Fed. R. Civ. P. 37(e) ...................................................................................................7, 8, 11

Rule 37(e)(1) .........................................................................................................7, 13, 14, 15

Rule 37(e)(2) ...................................................................................................................7, 9

Kove IO, Inc. respectfully requests the Court sanction Amazon Web Services, Inc. ("AWS") for spoliating evidence. The parties met and conferred by phone on May 9 and May 31, and by extensive correspondence, including most recently on July 11. Adam Adler and Savannah Carnes attended on behalf of Kove, and Jeff Saltman and Lisa Phillips attended on behalf of AWS.

## I. INTRODUCTION

AWS has irreversibly destroyed years' worth of key performance data for products accused of infringement. The spoliated data is directly relevant because it shows evidence of the extent of AWS's infringement and the technical benefits of Kove's patents. Despite its critical importance, AWS failed to take reasonable steps to preserve this information, resulting in years-long gaps in the data. As a result, Kove's expert necessarily used well-reasoned estimations to fill the gaps. AWS's expert now attempts to capitalize on the absence of the spoliated data to challenge Kove's expert's opinions. AWS seeks to benefit from its spoliation by attacking the absence it created. One cannot destroy evidence and then claim victory because it is missing. Kove seeks relief targeted to the gaps created by AWS's spoliation.

The spoliation arose from AWS's practice of automatically deleting performance data after ████████ (the "Auto-Delete Policy"). Despite an affirmative obligation to put a litigation hold in place back in December 2018 (when the complaint in this case was served), and after years more of discovery requests culminating in a Court order, AWS never suspended the Auto-Delete Policy, nor did it otherwise take reasonable steps to preserve relevant data beyond the ██████ window. Had AWS done so, Kove would have three to five years of additional data relevant to proving infringement and damages. Worse, AWS failed to inform either Kove or the Court of the Auto-Delete Policy. Instead, AWS assured Kove that it was complying with its preservation obligations, even as it continued deleting relevant data.

Kove is materially prejudiced by AWS's spoliation. Kove sought performance data to

1

quantify the extent of AWS's infringement, and the extent to which Kove's inventions improved AWS's product performance. Because of AWS's spoliation, Kove only has data corresponding to roughly half the damages period. To bridge the gap, Kove's expert, Dr. Michael Goodrich, used the available data to extrapolate back in time. Such extrapolations expose Kove's experts to challenges and invites the jury to wonder why large chunks of data are missing from Kove's damages analysis. This prejudice is not hypothetical; AWS's rebuttal report attacks Kove based on the spoliated data.

Kove seeks relief narrowly tailored to AWS's spoliation. As detailed below, Kove respectfully requests the Court: (1) instruct the jury on AWS's failure to preserve this information despite a duty to do so; (2) strike the portions of AWS's expert report challenging Kove's projections, as well as any such testimony or arguments; and (3) award Kove's fees and costs for bringing this motion.

## II.     BACKGROUND

### A. AWS Has Long Known That Performance Metrics Are Relevant.

The performance of the accused products has always been central to this case. Kove's complaint alleges that AWS used Kove's technology to improve the performance and scalability of S3 and DynamoDB. Dkt. 1 ¶¶ 1-2, 16-19, 64. Given Kove's complaint, it was not surprising that Kove sought discovery on related performance metrics. AWS knew which components and features were relevant, confirming it should have known to preserve relevant metrics.[1] For example, on June 10, 2019, Kove sought "metrics" for S3 and DynamoDB, and their "benefits,

---

[1] *See* Dkt. 1 ¶ 39 (describing S3's "index subsystem"), ¶¶ 61-62 (describing DynamoDB's index) (December 2018); Ex. F at 39 (AWS's non-infringement contentions identifying and discussing the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) (August 2019); Ex. G at 5 (Kove's infringement contentions identifying ▮▮▮▮▮▮▮▮▮▮) (February 2020).

2

development, testing, [and] assessment." Ex. D (Kove's 1st RFPs) at 13. On March 13, 2020, Kove asked AWS to identify "metrics, including key performance indicators, you used to measure the performance of each of the Relevant Features and each Accused Product." Ex. E (Kove's 2nd ROGs) at 14. Kove explained that it sought "metrics data and analyses regarding speed, scalability and availability." Ex. H (correspondence) at 3. Kove also identified specific performance metrics in its 30(b)(6) topics served on July 28, 2020 (Ex. I at 10 (Topic 54)) and served discovery requests for specific metrics concerning durability, availability, scalability, latency, and throughput on October 2, 2020 (Ex. J (Kove's 7th ROGs) at 9-10; Ex. K (Kove's 5th RFPs) at 9). Kove also asked AWS to identify and produce the "most significant" metrics relating to the accused functions, and those "used most often" when developing and designing the accused components. Ex. L (correspondence) at 7. Over the years, AWS agreed to produce relevant metrics, and participated in numerous discussions on the identification and production of metrics.[2]

Many of the metrics at issue here were also the subject of a September 9, 2021 motion to compel. Dkt. 409 at 10-11. On December 30, 2022, the Court granted-in-part Kove's motion and ordered AWS to produce, "[a]n identification of what AWS considers the most useful metrics or metrics reports to measure speed, availability, durability, and scalability of the Accused Products." Dkt. 562 ¶ 3. The order covered several metrics that AWS continued to spoliate even after the Court's Order.

**B.     AWS Did Not Take Reasonable Steps To Retain Key Metrics, Resulting in Years of Lost Data.**

AWS tracks and stores performance metrics for each of its products in a database for a limited time, after which they are automatically deleted. Unless automatic deletion is disabled, no

---

[2] Exs. H at 3, M at 2, N at 3-4, O, P, Q (correspondences).

metric is maintained for more than ███████.[3] Even though performance metrics were front-and-center throughout this litigation, *see supra* at II.A, AWS did not suspend its Auto-Delete Policy or otherwise preserve its metrics beyond the ███████.[4]

AWS's spoliation resulted in years of permanently lost data. If AWS had preserved the relevant metrics when Kove filed its complaint, Kove would have data going back to ███.[5] That is, in 2018, AWS possessed relevant data from ████ 2018, but because AWS did not adequately preserve it, AWS deleted data on a rolling basis as it reached the ██████ Auto-Delete limit. Even under a more conservative hold date of March 2020 (when Kove served an interrogatory expressly identifying performance metrics as relevant), Kove would have data going back to early ████. Instead, many of the metrics AWS produced date back to only 2017 or 2018. *See* Ex. A (Appendix) (detailing spoliation); Goodrich Decl. ¶ 16 (Kove's technical expert).

For example, one benefit of Kove's invention is that it allows AWS to use faster, cheaper servers. Ex. W (7/6/2023 Corrected Opening Report of Michael Goodrich ("Goodrich Report")) ¶¶ 84-85. AWS has data showing the fraction of requests benefiting from this mechanism. But because AWS did not preserve it, Kove only has the data extending back to April 2016, and not ████████. Ex. A (Appendix) at Row 3. AWS also did not preserve metrics reflecting the speed differential between the fast and slow servers. *Id.* at Rows 4-5; Ex. W (Goodrich Report)

---

[3] Ex. R (4/21/2023 Donal Walsh Dep. Tr. ("4/21/2023 Walsh Tr.")) at 131:1-133:10; Ex. S (6/14/2023 Donal Walsh Dep. Tr. ("6/14/2023 Walsh Tr.")) at 324:21-325:15.

[4] Ex. R (4/21/2023 Donal Walsh Dep. Tr. ("4/21/2023 Walsh Tr.")) at 131:11-133:5 ████████ ████ Ex. B (Shiv Pal Singh Dep. Tr. ("Singh Tr.")) at 144:15-19, 197:5-198:3 (same, but for S3); Ex. T (8/25/2021 Donal Walsh Dep. Tr. ("8/25/2021 Walsh Tr.")) at 218:12-20; Ex. U (correspondence) (AWS counsel acknowledging that AWS did not take steps to retain specific metrics); Ex. V (correspondence) (summarizing meet and confer where AWS counsel acknowledged AWS did not modify the Auto-Delete Policy).

[5] Kove seeks damages for December 2012 to September 2020.

¶¶ 107-119.  When AWS finally collected that data in May 2023, it was only able to produce data back to ▋▋▋▋▋.  *Id.*  As shown in Exhibit A, these examples are not isolated incidents.

### C.    AWS Hindered Kove's Ability to Discover the Spoliation.

AWS not only destroyed evidence, but hindered Kove's ability to discover the spoliation by withholding information regarding the Auto-Delete Policy and by assuring Kove that AWS had preserved relevant data.  Indeed, Kove only became aware in a limited sense of the Auto-Delete Policy in August 2021 (almost three years into the case), when it deposed an AWS corporate designee.  But even that information was incomplete, as the witness did not know whether the deleted metrics were backed up and was instructed not to answer questions relating to litigation hold notices.  Ex. T (8/25/2021 Walsh Tr.) at 49:16-20, 217:6-221:12.  The deposition testimony was further limited to just DynamoDB, and so did not speak to potential spoliation issues for S3.  Based on this testimony, Kove asked the Court to authorize alternate forms of discovery to potentially capture some of the deleted data.  Dkt. 437 at 12-13.  Kove also cited spoliation concerns in January 2022 when opposing AWS's motion to stay.  Dkt. 502 at 9-10.  AWS did not respond to these concerns, nor (as Kove later learned) did AWS download, copy, or otherwise preserve the metrics at issue, despite being squarely on notice.[6]

When the Court stayed the case in March 2022, Kove sent AWS a letter detailing Kove's spoliation concerns and reminding AWS of its "continued obligation to preserve documents relevant to this litigation," including "metrics relating to the accused products that would otherwise be deleted after five years."  Ex. X at 1-2.  AWS assured Kove that it "[had] met its obligations under the applicable rules to preserve information relevant to the litigation, and will continue to do so."  Ex. Y at 1.  Unbeknownst to Kove, AWS still had not modified its Auto-Delete Policy or

---

[6] *See* Dkt. 449; Dkt. 507; Ex. R (4/21/2023 Walsh Tr.) at 132:21-133:10.

otherwise retained the relevant metrics. After the stay was lifted, in December 2022, the Court granted in relevant part Kove's motion to compel and ordered AWS to search for and produce several categories of metrics. *See* Dkt. 562 at 2-3. AWS never notified the Court that AWS had deleted (and was continuing to delete) data subject to the order.[7] Instead, AWS continued to delete the very metrics the Court ordered it to produce, resulting in several additional months of lost data. *See* Ex. A (Appendix) at Rows 1-4, 6-8 (metrics covered by the Court's order).

In the final weeks of discovery earlier this year, Kove learned that AWS's Auto-Delete Policy applied not just to DynamoDB, but also to S3. Ex. B (Singh Tr.) at 112:11-114:8. Kove also learned that the deleted data had not been backed up and could not be discovered through other sources, e.g., through testimony or duplicate files. *E.g.*, Ex. Z at 2 (AWS's "search for additional metrics information" was complete). It was only after fact discovery (during an out-of-time deposition) in June 2023 that Kove discovered AWS had not even *considered* the steps it would need to take to preserve relevant metrics or the associated costs, even after Kove raised its spoliation concerns.[8] Ex. S (6/14/2023 Walsh Tr.) at 436:21-438:5.

### D. AWS's Expert Criticizes Kove For Not Having Data That AWS Spoliated.

Kove sought to resolve this dispute with AWS, but AWS denied that it even had an obligation to preserve metrics in the first place—including the data the Court ordered AWS to produce. Ex. BB. To avert motion practice, AWS suggested that the issues in dispute could be narrowed in expert discovery and that AWS might agree to at least some of Kove's requested relief after seeing how Kove and its experts accounted for the deleted data. *See* Ex. LL (correspondence).

---

[7] This type of failure does not appear to be an isolated incident. After extensive briefing on a key document—the Six Pager—and a Court order to produce it, AWS stated that it was lost. Dkt. 643.

[8] The out-of-time deposition was necessary because AWS's designee on metrics was not prepared for his original deposition. *E.g.*, Ex. AA (correspondence) (summarizing lack of preparation). AWS did not make the witness available until roughly six weeks after discovery.

AWS's representation was a red herring. Kove served its opening reports on July 3, 2023, and then sought to resume discussion. AWS did not meaningfully respond. Exs. CC & DD (correspondence). Kove did not discover AWS's true position until it served its rebuttal reports on August 18. In his report, AWS's expert, Dr. Ananth Grama, criticizes Kove's expert for having insufficient data during the spoliated period. Ex. UU (Rebuttal Expert Report of Ananth Grama ("Grama Report") ¶¶ 437-445 ("Goodrich provides no support for his conclusion regarding the average BM lookup time for the time period from July 2012 through April 2016."). AWS's expert further claims, without support, "that Amazon did not delete metrics." *Id.* at ¶ 469.

## III. ARGUMENT

A party may be sanctioned if "electronically stored information ["ESI"] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Upon finding spoliation, a court may implement corrective measures under either subdivision (e)(1) or (e)(2). Kove seeks relief under Rule 37(e)(1), which provides that the Court, "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice."[9] Although AWS's conduct was willful, bad faith is not necessary to sanction under Rule 37(e)(1). *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 957-58 (N.D. Ill. 2021).

The sheer scale of the spoliation is extraordinary. There were several dozen metrics that AWS should have preserved beyond the default ▮▮▮▮ window but did not. To make this motion more manageable, Kove identified a small subset of those metrics whose deletion has most

---

[9] Rule 37(e)(2) permits more severe sanctions, like dismissal, if it finds that the spoliator "acted with the intent to deprive another party of the information's use in the litigation."

clearly prejudiced Kove. These are identified in Exhibit A, and several are used as examples.[10]

**A. AWS Spoliated Relevant Metrics After It Knew They May Be Discoverable.**

When deciding to issue sanctions for spoliation, courts consider: (1) whether the ESI should have been preserved; (2) whether it is lost and cannot be restored or replaced; and (3) whether it was lost because a party failed to take reasonable steps to preserve it. *See* Fed. R. Civ. P. 37(e). All three conditions are satisfied here.

**1. AWS Had A Duty To Preserve Potentially Relevant Performance Metrics.**

AWS "has a duty to preserve evidence that it has control over and which it reasonably knows or can foresee would be material (and thus relevant) to a potential legal action." *Jones v. Bremen High Sch. Dist. 228*, 2010 WL 2106640, at *5 (N.D. Ill. May 25, 2010). "A document is potentially relevant, and thus must be preserved for discovery, if there is a possibility that the information therein is relevant to any of the claims." *Id.*; *see Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 620 (N.D. Ill. 2022) (explaining that this is "not a high standard").

The data at issue unambiguously meets this standard. AWS knew "there [was] a possibility" that performance metrics were relevant to Kove's claims, since Kove's complaint alleges AWS infringed Kove's "high-performance" distributed storage technology and, separately, because of Kove's increasingly specific requests for those metrics.[11] *See Jones*, 2010 WL 2106640, at *5. AWS further knew that this type of evidence is bedrock of patent damages. *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (factor 11 is "[t]he extent to which the infringer has made use of the invention; and any evidence probative

---

[10] Kove will provide the Court a USB drive containing native versions of Exhibit A and the metrics.

[11] AWS should have preserved this data since December 2018, when Kove filed its complaint. But even if one views some other date as the critical date, AWS still failed its preservation obligation as it never took reasonable steps to preserve relevant metrics beyond the ███ default.

of the value of that use").  Indeed, AWS, as "the party that destroyed the ESI," had better "access to the information programs or systems or the relevant resources" to identify and preserve the relevant metrics.  *See Hollis*, 603 F. Supp. 3d at 621 (suggesting spoliator bears burden of proof to establish that it took reasonable steps to preserve destroyed ESI).

Exhibit A provides an appendix of the key evidence, including the evidence as to why AWS knew or should have known to preserve each metric.  *See* Ex. A.  For most metrics, the explanation is the same—the metric should have been preserved because it was either specifically requested by Kove, or because it is a metric that AWS views as most useful or most significant when evaluating product performance, or both.[12]

For example, AWS should have known to preserve



.[13]  Despite its significance, AWS did not preserve this data beyond the

default, and did not produce it until April 2023.  As a result, Kove only has this data dating back

to April 2018 (and not ▮▮▮▮▮▮▮), which amounts to over ▮▮▮▮▮ of spoliated data.

AWS does not meaningfully dispute that the data at issue is "potentially relevant" to the

litigation, nor could it, given the primacy of performance in the complaint, the substance of Kove's

---

[12] *See id.*; Ex. EE (AWS's 2nd Supp Resp to 4th ROGs) at 25-29 (AWS identifying most useful performance metrics for the index subsystem of S3 and DynamoDB); Ex. B (Singh Tr.) at 40:11-16, 54:20-56:17, 193:2-6, 200:2-18 (AWS identifying core metrics it regularly reviews for S3); Ex. R (4/21/2023 Walsh Tr.) at 221:11-222:13 (same, but for DynamoDB).

[13] Ex. T (8/25/2021 Walsh Tr.) at 86:3-16; Ex. S (6/14/2023 Walsh Tr.) at 387:1-390:14; *see* Ex. A (Appendix) at Row 12.

discovery requests, the Court's order compelling production, and the fact that AWS produced all of the metrics at issue for the years that had not yet been autodeleted. Instead, AWS claims it was not obligated "to retain all available metrics . . . when Kove filed suit in December 2018." Ex. FF (correspondence). Kove is not claiming AWS had to preserve "all" metrics, but rather that AWS was required to preserve relevant metrics, and yet deleted *all* metrics beyond five years.

This is not the first time an Amazon entity has encountered spoliation issues of this kind. The court in *Oliver v. Amazon.com Services, LLC* held that Amazon had a duty to preserve relevant ESI from a large pool of irrelevant ESI. 2023 WL 3322382 (E.D. Wis. May 8, 2023). In *Oliver*, an employee sued Amazon for wrongful termination, alleging she was harassed on the warehouse floor. *Id.* at *4. When Amazon would not produce warehouse security footage for the specific days she worked, the employee moved for sanctions. *Id.* Amazon—echoing AWS's arguments here—argued it could not possibly be expected to retain all footage for its entire warehouse. *Id.* The court rejected that argument as an unreasonable exaggeration:

> Clearly preservation of video footage for the entire facility, running twenty-four hours a day from October 2019 through June 2020 would be neither relevant nor proportional to the parties' claims and defenses in this case. What would have been proportional and relevant, however, was retaining video footage for the hours in which Oliver worked and for those specific areas in which she worked.

*Id.* In other words, the court held that Amazon breached its preservation duty by failing to preserve *potentially relevant* evidence. *Id.* The same analysis (and conclusion) applies here.

### 2. The Spoliated Metrics Cannot be "Restored or Replaced."

ESI is spoliated when it cannot be restored or replaced. *Hollis*, 603 F. Supp. 3d at 622. Deposition testimony taken at the end of fact discovery confirms the deleted data cannot be recovered and was not backed up elsewhere. *See, e.g.*, Ex. S (6/14/2023 Walsh Tr.) at 439:15-19. Similarly, correspondence confirms AWS was unable to locate or recover the spoliated data. *See, e.g.*, Ex. Z at 2 (AWS's "search for additional metrics . . . is complete").

### 3.    AWS Did Not Take Reasonable Steps to Preserve Metrics Older Than Five Years.

Despite direct notice of the performance metrics' relevance and significance (*supra* at III.A.1), AWS did not deactivate or suspend its Auto-Delete Policy, nor did it copy, export, or take any other reasonable steps to preserve the metrics prior to their deletion. *See, e.g.*, *DR Distributors*, 513 F. Supp. 3d at 979 (defendant acted unreasonably by failing to turn off autodeletion, or to even informally copy and save the ESI); *Hollis*, 603 F. Supp. 3d at 621 & n.13 (defendant acted unreasonably by failing to stop autodeletion, even after being notified of relevance, "meaning that employer took no steps, let alone reasonable steps, to preserve"); *Oliver*, 2023 WL 3322382 at *4 (Amazon acted unreasonably by failing to deactivate autodeletion). Instead, AWS, a sophisticated litigant represented by sophisticated counsel, allowed auto-deletion to wipe out relevant metrics over years. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (advising courts to consider spoliator's "considerable experience in litigation").

When confronted with the extent of its spoliation, AWS claimed preservation would be too burdensome given that "there are over 10,000 metrics for each of these services." *See* Ex. U (correspondence). In other words, AWS argues that because it would have been unreasonable to preserve all metrics, it was reasonable for AWS to preserve none. But that is no different from AWS's argument that it had no preservation obligation in the first place. Once one accepts, as one must, that AWS was obligated to preserve potentially relevant metrics, AWS's argument crumbles.

*First*, AWS's belief that preservation would be too burdensome does not excuse its failure to preserve *any* metrics past the five-year default. *See Konica Minolta Bus. Solutions, USA Inc. v. Lowery Corp.*, 2016 WL 4537847, at *4 (E.D. Mich. Aug. 31, 2016) ("Whether the Defendants believed that they were asked to preserve too much and accordingly decided that they did not need to preserve ESI is a different, but still unpersuasive argument."). AWS's failure to take reasonable

11

steps to preserve data past ▮▮▮▮▮ cannot satisfy its preservation obligation. *Oliver*, 2023 WL 3322382 at *4 (large volume of irrelevant data cannot justify failure to preserve relevant data).

*Second*, AWS vastly overstates the universe of metrics at issue. While AWS may have "over 10,000 metrics," only a tiny fraction is potentially relevant. AWS only identified roughly two dozen metrics as most useful to product performance, and testimony confirmed that just a few dozen metrics are tracked with respect to key infringing components.[14]

*Third*, any claim of burden rings hollow because AWS has not even *considered* the steps it would need to take to preserve relevant metrics, let alone the cost or burden for such preservation:



Ex. S (6/14/2023 Walsh Tr.) at 437:22-439:8; *contra Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) (duty to preserve "involve[s] speaking with [IT] personnel").

To put things in perspective, *all* metrics AWS produced in this case amount to fewer than 50 megabytes of storage. This is less storage than what is required to store a single photo taken on an iPhone 14 Pro.[15] Even if one assumes that the spoliated data would take up *ten times* the space as every metric AWS produced, it would still only cost a penny a month for AWS to store that data, based on AWS's own public pricing.[16] AWS cannot dispute this, as it never investigated the cost of reasonable retention. *Id.* at 436:21-438:5.

---

[14] Exs. GG (1/10/2023 Singh Decl.); HH (1/10/2023 Walsh Decl.); B (Singh Tr.) at 108:17-109:16.

[15] https://www.wired.com/story/how-to-keep-photos-videos-taking-up-space/.

[16] https://aws.amazon.com/s3/pricing (AWS charges 2.3 cents/month to store a gigabyte of data).

*Finally*, if AWS believed that preservation would have been too burdensome, then it should have notified Kove and the Court of its claimed burden *prior* to the loss of any data. *DR Distributors*, 513 F. Supp. 3d at 906 ("[C]ounsel must immediately inform the court and opposing counsel when they learn that ESI has been destroyed."). AWS's decision to withhold this information, while assuring Kove that all preservation obligations were satisfied, is inexcusable.

## B. AWS's Spoliation Prejudices Kove.

The Court may order curative measures under Rule 37(e)(1) if it finds that Kove has been prejudiced by AWS's spoliation. Parties are prejudiced when their access to relevant information impairs their ability to prepare for trial. *DR Distributors*, 513 F. Supp. 3d at 973. Intent does not matter under this subdivision. *See Hollis*, 603 F. Supp. 3d at 622 ("only prejudice needs to exist").

AWS's spoliation prejudices Kove by depriving it of years' worth of key data relating to the amount, extent, and significance of AWS's infringement. *See* Ex. A (Appendix). If this data had been preserved, Kove's expert would have considered it. Goodrich Decl. ¶ 17. Kove is further prejudiced because it must now account for the spoliated data, which Dr. Goodrich did by extrapolating the produced data back in time, as shown below. As Dr. Goodrich explained in his report, he assumed that there were no significant changes in the spoliated period that would alter the trajectory of the produced data—without the spoliated data, this was the only reasonable assumption he could have made. *Id.* ¶¶ 18-19.



These concerns are heightened because AWS challenges Kove's analysis as lacking

sufficient data for the spoliated period. AWS argues Kove's expert "provides no support for his conclusion[s]" relating to spoliated speed metrics. Ex. UU (Grama Report) ¶ 445. AWS's expert also challenges the reliability of Dr. Goodrich's projections. *See id.* ¶¶ 441 n.556 (claiming Dr. Goodrich should have used a projected value of ███████████████), 445 (criticizing Dr. Goodrich for using a projected value of ████████████████████), 445 n.564 (challenging Dr. Goodrich's projections of speed data because values in the spoliation period would "be variable"). AWS further calls Kove's analysis and projections into question by denying that AWS deleted data in the first place. *Id.* ¶ 469 ("Amazon did not delete metrics"), ¶ 445 n.563 (suggesting Kove did not need to project speed data back in time). AWS invites jury scrutiny on the gaps in data, while denying responsibility. Even in the absence of AWS's arguments, Kove is prejudiced because it is deprived relevant evidence and because the jury could have independent concerns regarding the projections.

### C. Kove Requests Relief Tailored To Mitigate Prejudice To It.

AWS should not be permitted to destroy evidence and then benefit from its absence. To mitigate Kove's prejudice, Kove asks the Court to: (1) instruct the jury that AWS had a duty to preserve the spoliated metrics; that AWS failed to take reasonable steps to preserve the spoliated metrics and as a result they were permanently destroyed; and that the jury may consider these circumstances as part of its deliberation; (2) strike the portions of paragraphs 445 and 469 and footnotes 556 and 563-64 in AWS's rebuttal report that challenge Kove's projections, and preclude AWS from arguing the same to the jury (including through cross-examination); and (3) award Kove's costs and fees for bringing this motion. This relief is necessary for a level playing field.

This relief is well-supported by the Federal Rules and regularly ordered in this district. *See* Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment (Rule 37(e)(1) curative measures may include "forbidding the party that failed to preserve information from putting on certain

evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, [] giving the jury instructions to assist in its evaluation of such evidence or argument," or "exclud[ing] a specific item of evidence to offset prejudice"); *Hollis*, 603 F. Supp. 3d at 625 (ordering instruction and calling it "[a] common curative measure"); *DR Distributors*, 513 F. Supp. at 982 (instruction and prevented spoliator from disputing contents of spoliated ESI); *Torgersen v. Siemens Bldg. Tech., Inc.*, 2021 WL 2072151, at *5 (N.D. Ill. May 24, 2021) (similar); *Estrada v. Pao Pao, Inc*., 2021 WL 8202677, at *4 (N.D. Ill. Oct. 25, 2021) (Courts "may order curative measures under Rule 37(e)(1) such as barring evidence or instructing the jury that it can consider the circumstances surrounding the loss of ESI."); *Pable v. Chicago Transit Auth.*, 2023 WL 2333414, at *37 (N.D. Ill. Mar. 2, 2023) (attorney's fees); *Franklin v. Howard Brown Health Ctr.*, 2018 WL 4784668, at *6 (N.D. Ill. Oct. 4, 2018) (recommending jury hear evidence and argument on spoliation); *Covarrubias v. Wendy's Rest*., 2021 WL 4258701, at *4 (N.D. Ill. June 21, 2021) (similar); *Ayers v. Heritage-Crystal Clean, LLC*, 2022 WL 2355909, at *4 (N.D. Ill. June 1, 2022) (similar); *Schmalz v. Vill. of N. Riverside*, 2018 WL 1704109, at *7 (N.D. Ill. Mar. 23, 2018) (similar).

## IV.    CONCLUSION

AWS is the world's leading provider of cheap, scalable, cloud storage, and prides itself on never losing data.  The integrity of the discovery process depends on parties scrupulously abiding their data preservation obligations.  Kove respectfully requests that the Court grant Kove's motion.

Dated: September 8, 2023

Respectfully submitted,

/s/ Courtland L. Reichman

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 560-3501

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com
Philip Eklem (*pro hac vice*)
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Taylor Mauze (*pro hac vice*)
tmauze@reichmanjorgensen.com
Navid Bayar (*pro hac vice*)
nbayar@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5000

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard (*pro hac vice*)
sballard@reichmanjorgensen.com
Savannah Carnes (*pro hac vice*)
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

**ATTORNEYS FOR PLAINTIFF
KOVE IO, INC.**

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of September, 2023, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Courtland L. Reichman*
Courtland L. Reichman
