# Exhibit H

██████████████████████


Michael Marvin  
Direct Dial: (646) 970-2652  
mmarvin@reichmanjorgensen.com

750 Third Avenue  
Suite 2402  
New York, NY 10017

May 28, 2020

**By E-Mail**

Terri Mascherin  
Jenner & Block LLP  
353 North Clark St.  
Chicago, IL 60654  
tmascherin@jenner.com

RE: *Kove IO, Inc. v. Amazon Web Services, Inc.*, Case No. 18-cv-8175 (N.D. Ill.)

Counsel,

I write following the parties' meet and confer on May 21 to memorialize the discussions between the parties and the status of outstanding discovery issues. Below, by category of discovery issue, is a summary of the issues. We ask that AWS be prepared to discuss the open items below on the next meet and confer, scheduled for May 29.

**Initial Disclosures**

- AWS agreed that it would amend its Initial Disclosures by June 1 to identify additional custodians as required by Federal Rule of Civil Procedure 26. Kove reiterated its request that the identified witnesses include those with knowledge of the topics listed in our May 14 and May 20 e-mails.

**Technical Discovery**

- Amazon's production remains highly deficient with respect to its technical documents. We requested that AWS produce in response to RFPs Nos. 12-14 all documents describing the design and operation of the components of DynamoDB and S3 that are identified in Jaime Cardenas-Navia's letter of February 19.[1] You stated that you viewed Kove's request as overly broad. However, as we have previously made clear, and as we again stated in our meet and confer, Kove seeks documents that describe the design and

---

[1] As listed in Kove's letter of February 19, with respect to DynamoDB, the components are: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ With respect to S3, the components are: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

operation of specifically identified components of the Accused Products. Your claim that you are unaware of what constitutes a "design document" is unavailing. Design and operation documents are routinely produced in patent litigation. Indeed, in response to the February 19th letter, Amazon searched for and produced a subset of design documents for the components ███████████████████████. Please confirm that Amazon will conduct a search for documents describing the design and operation of the components of DynamoDB and S3 as identified in the February 19 letter. If Amazon will not agree to do so, then Kove will need to raise this issue with the Court.

- The parties also discussed the lack of preparedness of AWS's 30(b)(6) witnesses. We discussed that neither of AWS's 30(b)(6) witnesses, James Sorenson and Seth Markle, was prepared to testify about prior implementations of the Accused Products or changes across the various implementations of the Accused Products. They each testified that they would need to "research" or "study" to reliably answer questions about this subject matter. This occurred even though this subject matter is expressly encompassed by 30(b)(6) Topic Nos. 1, 3, and 6. On the basis of these deficiencies, Kove is entitled to an additional 30(b)(6) witness for these topics. Although you agreed that Kove is entitled to knowledgeable witnesses, you made the unsupportable claim that Messrs. Sorenson and Markle were prepared (despite their testimonies to the contrary), and refused to provide any additional 30(b)(6) witnesses. We urge you to reconsider your position. As it stands, the parties are at an impasse on this issue, as well as the additional deficiencies in the witnesses' preparedness that are noted in detail in Jaime Cardenas-Navia's letter of February 19.

- We also discussed AWS's response to Interrogatory No. 4, which is deficient because it fails to identify AWS's own view of material differences between implementations of the Accused Products over time. You indicated that you believed you could provide a supplemental response in the short-term, and that after receiving Kove's Amended Final Infringement Contentions, would let us know whether Amazon will be providing a response that clearly identifies what Amazon contends are the material differences in the Accused Products across the relevant time period, such that Kove can identify representative versions of the source code. If Amazon provides such a response, then the scope of Kove's request for deployment histories and versioning information can potentially be reduced. If not, then Kove maintains its request that Amazon produce the full scope of this information.

- Kove also requested that Amazon provide a narrative response to Interrogatory No. 7. You stated that Amazon would let us know by this Friday whether or not it will do so.

- Kove again requested that Amazon produce the complete versions of the videos it has produced, including at AMZ_KOVE_000064820-64823. You indicated that you had seen the complete versions, and that Amazon would obtain and produce them. Please confirm that they will be produced promptly.

**Damages-Related Discovery**

- In addition to other responsive materials, we requested that AWS agree to produce in response to RFPs Nos. 10, 28-30, 82-85, 89, 92-93, 96 and 101 monthly U.S. volume/revenue/cost/profit/total customer data for S3 and DynamoDB broken down by how each S3/DynamoDB service is priced, as well as historical pricing lists for both S3 and DynamoDB and other information described in the first three bullet points of our May 20 e-mail. You agreed that you would discuss this with AWS finance personnel and produce it if available.

- We also requested that in connection with Interrogatory No. 6, in addition to providing the financial information referenced in the above bullet point, AWS provide a description of how it allocates revenue from S3 and DynamoDB to different regions, and specifically to the United States. By way of example, we need to know how revenues in the spreadsheet bearing the Bates stamp AMZ_KOVE_00065598 are allocated to specific regional data centers. We also discussed that in response to Interrogatory No. 6, AWS must supplement its response to explain how it recognizes revenue for, and allocates cost to, specific products, such as S3 and DynamoDB, in profit and loss statements, such as AMZ_KOVE_00075781. You responded that you understood our requests and would check with your client to determine whether you can provide us with this information.

- In addition, [REDACTED] you would ask your client to provide you with such information and, if available, produce it.

- The parties also discussed Kove's request that AWS produce profit and loss statements covering AWS as a reporting segment. We explained that such documents are relevant to Kove's damages case, for example because information contained therein is relevant to, among other things, convoyed sales, disclosures and notes relevant to both the AWS business unit and products, and analyzing and providing context as to how AWS allocates costs and recognizes product-level revenue. AWS objected that such information is not relevant. We disagree. This information is relevant to Kove's damages case, is specifically responsive to RFPs Nos. 82-85, 89, 9 and 101, and should not pose a burden to collect. We encourage you to reconsider your position.

- The parties also discussed metrics and usage data requested in RFPs Nos. 13, 22, 32, 85-86, 88, 97, 99, 100, 105 and 108. As explained in Jaime Cardenas-Navia's email of May 20, and as reiterated in our May 21 meet and confer discussion, we are specifically seeking telemetry, usage data, and metrics data and analyses regarding speed, scalability, and availability of Amazon S3 and DynamoDB, including any customer testing (such as A/B testing) or customer or other surveys. You confirmed that you would investigate the metrics AWS has and see what metrics exist that are responsive to our request that can be produced. The parties agreed to discuss the results of your investigation during the meet and confer between the parties on May 29.

**Miscellaneous Discovery**

- The parties also discussed AWS's deficient response to Interrogatory No. 3, which fails to identify any non-infringing alternatives. We asked that AWS provide a day by which it would supplement its response to identify any non-infringing alternative; AWS refused. As we explained on the meet and confer, and reiterate now, it is inappropriate for AWS to refuse to identify any non-infringing alternative at this juncture of the case. AWS has Kove's Infringement Contentions, the Patents-in-Suit, and the relevant source code, such that AWS has all the information it needs to identify any non-infringing alternative. AWS did agree that once it discloses its non-infringement contentions it will notify Kove of a date certain by which it will identify a non-infringing alternative. However, as stated on our call, we believe any delay in disclosing any non-infringing alternative is improper and delays Kove's ability to do necessary discovery related to any asserted non-infringing alternatives. Kove therefore requests that AWS reconsider its position and supplement its response to promptly identify any non-infringing alternatives.

- The parties also discussed when AWS would produce documents in response to RFP No. 118. AWS confirmed that it has determined where documents responsive to RFP No. 118 are stored, and would provide an update on its collection by this week. As stated on our call, Kove requests that by end of this week AWS provide a date certain by which it will produce such documents. RFP No. 118 was served on AWS more than eleven months ago, and AWS already has had adequate time to search for and produce responsive documents. The parties also discussed Interrogatory No. 11, which requests that AWS identify any Transfer of Rights agreements relating to either Amazon S3 or DyamoDB, and you stated that these documents are expected to be identified in the process of collecting documents in response to RFP No. 118, since the topics overlapped, and otherwise confirmed that you were still in the process of identifying such documents.

- We also explained that we have not received documents responsive to RFPs Nos. 20-22, 30, 32 and 101, regarding non-AWS Amazon entities' use of Amazon S3 and DynamoDB. Documents that show, for example, intercompany charges for non-AWS Amazon entities' use of AWS services and products, as well as metrics showing usage of AWS products by non-AWS Amazon entities (such as, although this list is not exhaustive, amount of storage, number of requests against buckets and objects, and volume of data transferred) are responsive to this request. AWS agreed that it would go back and search for such documents describing use of DynamoDB or S3.

- We also asked that AWS supplement its response to Interrogatory No. 9 to provide information regarding the ways in which S3 is used by DynamoDB, and vice versa. We provided specific examples of the ways in which we know S3 is used by DynamoDB and vice versa, and asked that you supplement your response to identify all ways in which S3 is currently used or has been used by DynamoDB, and vice versa. You confirmed that you would discuss this issue with AWS and supplement your response.

- The parties also discussed Interrogatory No. 2 and AWS's response thereto. As we explained, as AWS has now filed its Answer, which contains counterclaims and

affirmative defenses, AWS must amend its response to this interrogatory to identify all facts supporting each of its counterclaims and affirmative defenses. You confirmed that AWS would supplement its response.

**ESI Search-Term Discovery**

- During our meet and confer, we also explained that we are focused on identifying ESI custodians with knowledge of the matters outlined in both Jaime Cardenas-Navia's May 14 e-mail and in his follow-up May 20 e-mail. We requested to meet and confer about the identity of such persons identified in our correspondence for purposes of ESI discovery. We also reiterated our request that AWS provide information regarding the metrics AWS tracks to monitor customer success, as previously discussed in our meet and confer on May 12, 2020. Our May 20 e-mail further clarifies the topical custodians we are focused on identifying as ESI custodians. You agreed to discuss these matters in our May 29 call. In the meantime, in order to further these discussions, we have attached to this letter a preliminary draft of ESI search terms for purposes of our discussions on Friday.

Regards,

Michael Marvin

CC (by email):  Renato Mariotti (rmariotti@thompsoncoburn.com);
                Michael Parks (mparks@thompsoncoburn.com)