# Exhibit CC

| | |
|---|---|
| **From:** | Adam Adler |
| **To:** | Jeff Saltman |
| **Cc:** | RJ_Kove_AWS; Kove Team |
| **Subject:** | RE: Kove v. Amazon: Historical Metrics |
| **Date:** | Sunday, July 9, 2023 9:36:32 AM |

Dear Jeff,

In our previous discussions, AWS suggested that it might change its position regarding Kove's spoliation motion after reviewing our expert reports. Now that you have seen our experts' opening reports, has your position changed?

Thanks,
Adam

## Adam Adler

Rᴇɪᴄʜᴍᴀɴ Jᴏʀɢᴇɴsᴇɴ Lᴇʜᴍᴀɴ & Fᴇʟᴅʙᴇʀɢ LLP

(650) 623-1480

aadler@reichmanjorgensen.com

---

**From:** Jeff Saltman <Jeffrey.Saltman@fischllp.com>
**Sent:** Monday, June 12, 2023 4:11 PM
**To:** Savannah Carnes <scarnes@reichmanjorgensen.com>
**Cc:** RJ_Kove_AWS <RJ_Kove_AWS@reichmanjorgensen.com>; Kove Team <FS-Kove@fischllp.com>
**Subject:** Re: Kove v. Amazon: Historical Metrics

**[EXTERNAL]**

Hi Savannah,

Thank you for your email. In your June 2 email, you asked Amazon to agree to the extraordinary relief of Rule 37 sanctions. Specifically, you asked for "a jury instruction that AWS had a duty to preserve the spoliated metrics, that the spoliated metrics were relevant to Kove's claims, that AWS failed to take reasonable steps to preserve the spoliated metrics, and that the spoliated metrics cannot be recovered," plus "an agreement that AWS cannot make arguments regarding the spoliated data."

As I explained in my emails on May 15 and 19, Amazon doesn't agree that spoliation occurred, that it had a duty to retain all metrics for S3 and DynamoDB from the beginning of the case, or that it could have predicted which metrics Kove would request. Again, there are over 10,000 metrics for each service, and retaining the metrics and log data, even for a short time, would be extremely expensive as Mr. Walsh can confirm at his deposition this Wednesday. Nonetheless, to address the concerns that Kove raised, I explained that Amazon would agree that Kove's experts could use the available data in order to extrapolate data back to time periods where data isn't available. We're available to further meet and confer on the details of that proposal if Kove is interested in attempting to resolve the issue.

And after you provided your proposed sanctions to be imposed, we asked you to provide case law supporting this extraordinary relief. But the only case provided, *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839 (N.D. Ill. 2021), confirms that Rule 37(e) sanctions aren't warranted here. To begin with, the facts here bear little resemblance to the "series of missteps, misdeeds, and misrepresentations" detailed in DR Distributors. *Id*. at 861; *see also id*. at 982 (noting that the sanctioned defendants proposed the jury-instruction remedy). Your June 7 email doesn't argue that DR Distributors is analogous or otherwise attempt to explain why the same relief would be warranted here.

Further, no curative measures are warranted under Rule 37 unless all five threshold requirements are met. As explained in *DR Distributors*:

> Rule 37(e) has five threshold requirements: (1) the information must be ESI; (2) there must have been anticipated or actual litigation that triggers the duty to preserve ESI; (3) the relevant ESI should have been preserved at the time of the litigation was anticipated or ongoing; (4) the ESI must have been lost because a party failed to take reasonable steps to preserve it; and (5) the lost ESI cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e); *Snider*, 2017 WL 2973464, at *3-4, 2017 U.S. Dist. LEXIS 107591, at *8-10.  If any of these requirements are not met, then curative measures and sanctions are unavailable under Rule 37(e).

513 F. Supp. 3d at 958. In addition, there must be a "finding of prejudice to another party from loss of the information," in which case the court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

As indicated in Amazon's previous correspondence, threshold requirements 2-5 all aren't met here, and Kove also hasn't shown any prejudice. Here, Amazon collected data soon after the parties agreed on the scope of Kove's requests and further complied with the Court's orders and produced voluminous discovery on the information that Kove requested. Speculation about the content of data relating to the 10,000-plus metrics for each service doesn't show prejudice. For instance, in *Snider v. Danfoss, LLC*, the same judge who authored the DR Distributors opinion considered a relatively egregious scenario where a defendant failed to preserve the emails of a terminated employee plaintiff and her supervisor. 15-cv-4748, 2017 WL 2973464, at *6 (N.D. Ill. July 12, 2017) (noting defendant had "mechanically and blindly followed its 90 day destruction policy"). But the court found that the requirements for taking any measures under Rule 37 weren't met because the plaintiff relied on speculation about the content of the deleted emails and information about the relevant facts was available elsewhere. *See id*. at *2 (crediting defendant's review of "over 22 gigabytes of data and the production of over 400 pages of emails"), *8 ("Under these facts, no prejudice has been shown, and consequently, no sanctions are warranted.").

If Kove has any case law indicating that any measures under Rule 37 are warranted here, we are happy to consider it. As noted, we are also available to further discuss the use of the available data by the parties' experts.

Thank you.

Regards,
Jeff

**Jeffrey Saltman** | **Fisch Sigler LLP** | **Partner**
+1.202.362.3640 (o)
+1.202.258.5781 (m)

From: Savannah Carnes <scarnes@reichmanjorgensen.com>
Date: Wednesday, June 7, 2023 at 5:29 PM
To: Jeff Saltman <Jeffrey.Saltman@fischllp.com>
Cc: RJ_Kove_AWS <RJ_Kove_AWS@reichmanjorgensen.com>, Kove Team <FS-Kove@fischllp.com>
Subject: RE: Kove v. Amazon: Historical Metrics

Hi Jeff,

Kove's proposal is nearly identical to the relief granted in DR Distributors, LLC v. 21 Century Smoking, Inc., 513 F. Supp. 3d 839 (N.D. Ill. 2021) under Rule 37(e)(1).  Kove's proposal is also contemplated by the Advisory Committee notes for Rule 37, which recognize that curative measures for spoliation can include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendments.  The Committee notes further state that a court may allow a party "to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision."  Id.

Although you characterize Kove's proposal as seeking "adverse jury instructions," Kove's proposed instructions are not adverse-inference instructions because Kove does not seek an instruction that the jury should presume the spoliated information was unfavorable.  See id. (describing these measures as available under 37(e)(1)); DR Distributors, 513 F. Supp. at 863 (ordering instructions under Rule 37(e)(1)).

If we do not hear from you by end of business Monday, we will assume you disagree with Kove's proposal.

Best regards,
Savannah


From: Jeff Saltman <Jeffrey.Saltman@fischllp.com>
Sent: Tuesday, June 6, 2023 5:18 PM
To: Savannah Carnes <scarnes@reichmanjorgensen.com>
Cc: RJ_Kove_AWS <RJ_Kove_AWS@reichmanjorgensen.com>; Kove Team <FS-Kove@fischllp.com>
Subject: Re: Kove v. Amazon: Historical Metrics

[EXTERNAL]
Hi Savannah,

Thank you for your email. Kove's new request goes far further than its previous request for a verified statement. Now Kove is requesting Amazon's agreement to the extraordinary relief of multiple adverse jury instructions and an agreement that it will not present any arguments relating to metrics from earlier periods to the jury at all.

Given that Kove has the burden under Rule 37 and so that we can better assess your request and confer with our client, can you please provide any case law support for your position that such extraordinary relief is warranted?  Thank you.

Regards,
Jeff

**Jeffrey Saltman** | **Fisch Sigler LLP** | **Partner**
+1.202.362.3640 (o)
+1.202.258.5781 (m)

From: Savannah Carnes <mailto:scarnes@reichmanjorgensen.com>
Date: Tuesday, June 6, 2023 at 1:48 PM
To: Jeff Saltman <mailto:Jeffrey.Saltman@fischllp.com>
Cc: RJ_Kove_AWS <mailto:RJ_Kove_AWS@reichmanjorgensen.com>, Kove Team <mailto:FS-Kove@fischllp.com>
Subject: RE: Kove v. Amazon: Historical Metrics

Hi Jeff,

When can we expect a response on the below message?

Thank you,
Savannah

From: Savannah Carnes <mailto:scarnes@reichmanjorgensen.com>
Sent: Friday, June 2, 2023 8:00 PM
To: Jeff Saltman <mailto:Jeffrey.Saltman@fischllp.com>
Cc: RJ_Kove_AWS <mailto:RJ_Kove_AWS@reichmanjorgensen.com>; Kove Team <mailto:FS-Kove@fischllp.com>
Subject: RE: Kove v. Amazon: Historical Metrics

Hi Jeff,

Thank you for your time earlier this week to discuss this issue further.  On the call, you suggested that a spoliation motion may not yet be ripe because, in your view, Kove will only be harmed if AWS challenges Kove's treatment of the spoliated data.  You then suggested that Kove wait to see how

AWS responds to Kove's initial expert report, as AWS may or may not challenge Kove's treatment of the spoliated data.

We cannot accept this proposal. For one, Kove is currently prejudiced by AWS's systematic deletion of relevant performance metrics because Kove is permanently deprived of that evidence. Kove is further prejudiced because any reliance on the spoliated data will require Kove's experts to perform additional statistical analysis. That prejudice will be further compounded if AWS is permitted to argue about the spoliated data. For these reasons, AWS's proposal to wait and see if AWS disputes Kove's treatment of the data does not cure Kove's prejudice.

After further consideration on Kove's prejudice, we would need: (1) the ability to present evidence relating to AWS's failure to preserve performance metrics, and a jury instruction that AWS had a duty to preserve the spoliated metrics, that the spoliated metrics were relevant to Kove's claims, that AWS failed to take reasonable steps to preserve the spoliated metrics, and that the spoliated metrics cannot be recovered. The jury should be further instructed that it may consider that evidence of spoliation, along with all the other evidence in the case, in making its decision; and (2) an agreement that AWS cannot make arguments regarding the spoliated data.

Please let us know as soon as possible if AWS will agree.

Best regards,
Savannah


From: Jeff Saltman <mailto:Jeffrey.Saltman@fischllp.com>
Sent: Thursday, May 25, 2023 4:52 PM
To: Savannah Carnes <mailto:scarnes@reichmanjorgensen.com>
Cc: RJ_Kove_AWS <mailto:RJ_Kove_AWS@reichmanjorgensen.com>; Kove Team <mailto:FS-Kove@fischllp.com>
Subject: Re: Kove v. Amazon: Historical Metrics

[EXTERNAL]
Hi Savannah,

Thank you for your email. Because of the nature of the data, ███████████ and performance metrics are treated differently under Amazon's proposed solution. Specifically, with respect to ███████████, Amazon agrees that it won't challenge Kove's treatment of that data as representative for the applicable period (back to ███████████) since it is only retained for █ ██████ As I noted in my initial proposal, ███████████████████████ will move directionally with the ███████████. Amazon provided the ███████████.

But Amazon has provided performance metrics over a much larger temporal scope than ███████. And as I noted, in some cases for performance metrics that were initiated after 2016, the performance metric was provided over its full available temporal scope. For other performance metrics, based on the data Amazon has produced for example, there may be a trend showing that

the metric has generally decreased (or increased) over time from the beginning of the available data to the end. Extrapolating back means that a similar trend at a similar rate as the change over the available data period (which is known) would continue into the past. So, for performance metrics, it's calculating trends in the known data that are then applied to the earlier time period.

Regarding your request for a verified declaration, Amazon cannot agree. As we've noted, we don't agree that a duty arose for Amazon to retain all available metrics relating to both S3 and DynamoDB beginning when Kove filed suit in December 2018. Amazon has provided its proposal as a means to move discovery to closure and avoid consuming resources on unnecessary disputes. And, as we stated during the recent meet and confers Amazon agrees it won't challenge Kove's experts' use of the available data in order to support time periods where data isn't available. But Amazon won't simply agree not to cross-examine or disagree with the way in which they do so. For example, if Kove's experts picked the lowest available latency number and asserted that value should be the latency figure during the full time period predating the available data, Amazon's experts should be able to provide their own opinions countering that assertion and to provide their own calculations regarding the trends observed in the available performance metrics data and the application of them to the time period where data is no longer available.

Thank you.

Regards,
Jeff

**Jeffrey Saltman** | **Fisch Sigler LLP** | **Partner**
+1.202.362.3640 (o)
+1.202.258.5781 (m)

From: Savannah Carnes <mailto:scarnes@reichmanjorgensen.com>
Date: Friday, May 19, 2023 at 9:03 AM
To: Jeff Saltman <mailto:Jeffrey.Saltman@fischllp.com>
Cc: RJ_Kove_AWS <mailto:RJ_Kove_AWS@reichmanjorgensen.com>, Kove Team <mailto:FS-Kove@fischllp.com>
Subject: RE: Kove v. Amazon: Historical Metrics

Hi Jeff,

Thank you for noting that "the average number of ████████████████████████ [AWS] has produced (and to the extent it produces additional similar data) are representative" back to ████████████.   Because actual data has been lost, we cannot verify whether this is in fact the case.  But, as per your statements, we understand that should Kove treat the produced data as representative, AWS will not challenge any such treatment.

We propose a similar approach with respect to ████████████—that AWS stipulate Kove may treat any produced metrics as representative of actual missing data over time.  We don't understand what you mean by "extrapolated back in time" or how that differs (if at all) from representativeness.

In order for us to move forward, we need (1) a verified declaration from AWS that AWS destroyed, deleted, or purged metrics during the course of this litigation and, as a result, for the metric types that AWS has produced or will produce, AWS does not have any additional actual metrics data, including metrics data ordered produced in Dkt. 562 ("Information sufficient to show the distribution of data in the Accused Productions [sic] annually from 2006-2020"); and (2) an agreement that Kove may treat produced metrics as representative of missing metrics of the same type and that AWS will not challenge (by way of cross-examination, rebuttal opinions, Daubert, MILs or otherwise) the treatment of such metrics as representative, Kove's extrapolations based on such treatment, or the methodologies Kove uses to extrapolate based on any such treatment.

Please let us know asap if AWS will agree to provide such a stipulation.

Best regards,
Savannah

From: Jeff Saltman <mailto:Jeffrey.Saltman@fischllp.com>
Sent: Monday, May 15, 2023 4:25 PM
To: RJ_Kove_AWS <mailto:RJ_Kove_AWS@reichmanjorgensen.com>
Cc: Kove Team <mailto:FS-Kove@fischllp.com>
Subject: Kove v. Amazon: Historical Metrics

[EXTERNAL]
Counsel,

I'm writing to follow up on the parties' meet and confer discussion of the timeframe for the metrics data. As noted, Amazon doesn't agree that there was any spoliation or that a duty arose for Amazon to retain all available metrics relating to both S3 and DynamoDB beginning when Kove filed suit in December 2018. As you know there are over 10,000 metrics for each of these services and retaining that data, even for ███████, is extraordinarily expensive. Further to your suggestion that Amazon should have retained certain specific metrics beginning in December 2018 (or soon thereafter), Amazon could not have predicted that metrics would be relevant to the case at all, much less which specific metrics Kove would request. Indeed, Amazon still disputes that many of the metrics Kove has requested are relevant to the claims or defenses in the case.

Nonetheless, to move discovery forward and avoid disputes on this issue, Amazon would agree that the metrics data it produced can be extrapolated back in time to the time period to which Amazon would have had the data had it retained all of ████ when the case was first filed. For example, the trends from the data Amazon produced could be extrapolated back to that time. For some of the data, this will be back to ████████████ as ████ retains ████████ of data. But for other metrics, Amazon has already produced all of the available data since some metrics weren't tracked until after 2016. For those, Amazon has produced all of the available data.

Further, as we explained, the ████████████████████████████████ for DynamoDB is only available as a snapshot in time for ████████. So, even if Kove's position that the data should

have been retained as of the date of the complaint, the earliest retained data would have been from ███████████ not back to ████. Amazon agrees that the ███████████████████████ ███████████████ it has produced (and to the extent it produces additional similar data) are representative for that time period (i.e., the period in which Amazon would have had the data had it retained all of ████ when the case was filed). And that the average number of ██████████████ will move directionally with the ████████████, which Amazon has provided.

Thank you.


**Jeffrey Saltman** | **Fisch Sigler LLP** | **Partner**
+1.202.362.3640 (o)
+1.202.258.5781 (m)

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.
NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.
NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.