**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KOVE IO, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>AMAZON WEB SERVICES, INC.,<br><br>*Defendant*. | Case No. 1:18-cv-8175<br><br>█████████████ |

## AMAZON'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman *(pro hac vice)*
*jeffrey.saltman@fischllp.com*
Lisa N. Phillips *(pro hac vice)*
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW, Suite 400
Washington, D.C. 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 4

   I.  Patents-in-Suit and Asserted Claims.................................................................. 4

   II.  Ex Parte Reexaminations ................................................................................... 4

   III. This Court's January 13, 2023 Order................................................................. 6

LEGAL STANDARDS ...................................................................................................... 7

ARGUMENT ..................................................................................................................... 7

   I.  Summary Judgment of Non-Infringement of All 17 Asserted Claims Based on Kove's Disclaimers is Appropriate........................................................................ 7

      A.  It's Undisputed That at Least 12 of 17 Asserted Claims Require a Non-Hierarchical Cluster Configuration............................................................ 8

      B.  All 17 Asserted Claims Should Be Construed to Require a Non-Hierarchical Configuration. ........................................................................ 9

      C.  During the Reexaminations, Kove Disclaimed "Non-Hierarchical" Structures..........11

      D.  S3 and DDB Don't Employ the Asserted Claims' "Non-Hierarchical" Configuration. ...................................................................................... 16

   II.  Summary Judgment of Non-Infringement of All 17 Asserted Claims Under the Court's Previous Constructions Is Warranted. ................................................... 22

      A.  S3 Doesn't Infringe Under the Current Constructions. ............................. 23

      B.  DDB Doesn't Infringe Under the Current Constructions. ......................... 26

   III. Summary Judgment on Willfulness and Enhanced Damages is Warranted. ..... 29

      A.  Kove Can't Show Pre-Suit Willfulness...................................................... 30

      B.  Post-Suit: Kove Can't Show Willfulness Between December 12, 2018, and the Expiration of Its Patents........................................................................ 35

CONCLUSION................................................................................................................. 38

**TABLE OF AUTHORITIES**

## Cases

*Acceleron, LLC v. Dell Inc.*,
No. 1:12-cv-4123, 2022 WL 1087683 (N.D. Ga. Mar. 7, 2022) ...................................... 33, 37

*Arbmetrics, LLC v. Dexcom Inc.*,
No. 18-cv-134, 2019 WL 12473781 (S.D. Cal. Feb. 19, 2019) .............................. 36

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017) ....................................................................... 1, 11

*BASF v. CSIRO*,
28 F.4th 1247 (Fed. Cir. 2022) ...................................................................... 3, 32

*Bayer Healthcare LLC v. Baxalta Inc.*,
989 F.3d 964 (Fed. Cir. 2021) .............................................................. 3, 29, 35

*Bd. of Regents, the Univ. of Texas Sys. v. Ethicon, Inc.*,
No. 1:17-cv-1084, 2020 WL 3582793 (W.D. Tex. Apr. 17, 2020) ........................... 30

*Blackbird Tech LLC v. ELB Elecs., Inc.*,
No. 15-cv-56, 2020 WL 5409052 (D. Del. Sept. 9, 2020) ..................................... 37

*Bos. Sci. Corp. v. Nevro Corp.*,
560 F. Supp. 3d 837 (D. Del. 2021) ............................................................... 37

*Callwave Commc'ns LLC v. AT & T Mobility LLC*,
No. 12-cv-1701, 2014 WL 5363741 (D. Del. Jan. 28, 2014) ............................ 3, 32

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ......................................................................................... 7

*Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*,
638 F. Supp. 3d 1088 (N.D. Cal. 2022) ............................................................. 32

*Del Raine v. Jumao-as*,
76 F.3d 381 (7th Cir. 1996) ............................................................................... 7

*Ecofactor v. Google*,
No. 6:20-cv-75, Dkt. 236 (W.D. Tex. March 26, 2022) ...................................... 37

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
946 F.3d 1367 (Fed. Cir. 2020) ................................................................ 29, 30

*Every Penny Counts, Inc. v. American Express Co.*,
563 F.3d 1378 (Fed. Cir. 2009) ......................................................................... 9

*Extang Corp. v. Truck Accessories Grp., LLC*,
No. 19-cv-923, 2022 WL 607868 (D. Del. Feb. 18, 2022) ................................... 29

*GoTV Streaming, LLC v. Netflix, Inc.*,
No. 2:22-cv-7556, 2023 WL 2627016 (C.D. Cal. Feb. 16, 2023) ........................... 37

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
579 U.S. 93 (2016) ................................................................................... 3, 35

*Intellectual Ventures I LLC v. Symantec Corp.*,
    234 F. Supp. 3d 601 (D. Del. 2017) ....................................................... 37

*Invitrogen Corp. v. Clontech Lab'ys, Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005) .............................................................. 24

*Kimble v. Marvel Entertainment, LLC*,
    576 U.S. 446 (2015) ............................................................................... 35

*MG Freesites Ltd. v. ScorpCast LLC*,
    No. 20-cv-1012, 2023 WL 346301 (D. Del. Jan. 20, 2023) .................... 37

*NXP USA, Inc. v. Impinj, Inc.*,
    No. 2:20-cv-1503, 2023 WL 3852914 (W.D. Wash. June 6, 2023) .......... 37

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ........................................................11, 19

*PSC Computer Prod., Inc. v. Foxconn Int'l, Inc.*,
    355 F.3d 1353 (Fed. Cir. 2004) .............................................................. 16

*Ravgen, Inc. v. Quest Diagnostics Inc.*,
    No. 2:21-cv-9011, 2022 WL 2047613 (C.D. Cal. Jan. 18, 2022) ........... 37

*Rembrandt Pat. Innovations, LLC v. Apple, Inc.*,
    716 F. App'x 965 (Fed. Cir. 2017) .......................................................... 19

*Saffran v. Johnson & Johnson*,
    712 F.3d 549 (Fed. Cir. 2013) ................................................................11

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
    No. 13-cv-1161, 2017 WL 4354999 (N.D. Cal. Sept. 29, 2017)............. 37

*Southwall Techs., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) .................................................................. 1

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    14 F.4th 1323 (Fed. Cir. 2021) .............................................................. 29

*Symantec Corp. v. Computer Associates Int'l, Inc.*,
    522 F.3d 1279 (Fed. Cir. 2008) ............................................................... 1

*TecSec, Inc. v. Adobe Inc.*,
    No. 1:10-cv-115, 2019 WL 1233882 (E.D. Va. Mar. 14, 2019) ............. 37

*Wolverine World Wide, Inc. v. Nike, Inc.*,
    38 F.3d 1192 (Fed. Cir. 1994).......................................................... 16, 23

*Wrinkl, Inc. v. Facebook, Inc.*,
    No. 20-cv-1345, 2021 WL 4477022 (D. Del. Sept. 30, 2021) ................ 37

*X One, Inc. v. Uber Techs., Inc.*,
    440 F. Supp. 3d 1019 (N.D. Cal. 2020).................................................. 16

*Xiamen Baby Pretty Prod. Co. v. Talbot's Pharms. Fam. Prod., LLC*,
    No. 3:21-cv-409, 2022 WL 509336 (W.D. La. Feb. 18, 2022) .............. 37

## INTRODUCTION

A patent owner can't say that its claims have one meaning to secure approval of its patented monopoly, and then say that they mean something else when enforcing its patent. The doctrine of prosecution disclaimer serves this foundational principle. As the Federal Circuit said in *Aylus Networks, Inc. v. Apple Inc.*: "Ultimately, the doctrine of prosecution disclaimer ensures that claims are not 'construed one way in order to obtain their allowance and in a different way against accused infringers.'"[1] Absent judicial enforcement of this doctrine, a patent owner could reduce the bounds of its monopoly to obtain Patent Office approval, and then expand those bounds in litigation to recapture what it disclaimed—and thus unfairly take from the public that which the patent owner didn't invent and isn't entitled to own. That's what Kove is doing here.

To attempt to evade prior art Amazon submitted in *ex parte* reexaminations at the Patent Office, Kove has repeatedly insisted that its claims only cover non-hierarchical structures (i.e., structures with components arranged in a flat, unranked manner).[2] And Kove's technical expert has opined in the reexaminations and in his reports here that the asserted claims require non-hierarchical structure. He further testified that he intends to rely on that opinion when testifying at trial, including to distinguish Amazon's prior art.[3] Despite its disclaimers to the Patent Office and its expert's testimony, Kove has objected here to the claims being construed to include the non-hierarchical requirement. But the prosecution disclaimer doctrine dictates that, as a matter of fundamental fairness, Kove's claims be construed to prevent Kove from taking back from the public—including Amazon—what Kove gave up at the Patent Office. And thus, Amazon's proposed

---

[1] 856 F.3d 1353, 1360 (Fed. Cir. 2017) (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995)); *see also Symantec Corp. v. Computer Associates Int'l, Inc.*, 522 F.3d 1279, 1298 (Fed. Cir. 2008) ("[T]he same construction governs for validity determinations as for infringement.").

[2] Accompanying Statement of Material Facts ("SMF") at ¶¶ 27–41.

[3] SMF at ¶¶ 43–45.

additional claim constructions—which incorporate Kove's disclaimers—should be granted.

The undisputed evidence shows that the accused Amazon products, S3 and DynamoDB (DDB), don't use a non-hierarchical structure. S3 and DDB are two of the over 200 cloud computing services that comprise Amazon Web Services. These products allow Amazon customers to store and retrieve data at any time, from anywhere on the internet.[4] Amazon engineers designed S3 and DDB from the ground up, and chose a hierarchical structure to serve their users' needs. A hierarchical structure is one way that data can be stored for later retrieval. Its components are arranged in a hierarchy of different levels, ranked one above the other, like in the command-and-control structure of the military. As in the military, where officers give orders to sergeants, and sergeants then give orders to privates, and the tasks are completed and passed back up the chain, a computing system can distribute tasks for completion through a hierarchy of components. S3 and DDB have always used such a hierarchical structure, from their respective releases in 2006 and 2012 through today. For this reason, Amazon doesn't infringe the claims as properly construed, and this Court should grant summary judgment of noninfringement.

But, even if Kove is permitted to rewrite the bounds of its claims in this Court to recapture what it surrendered to overcome Amazon's prior art at the Patent Office, summary judgment of noninfringement is still warranted, for a wholly independent reason. The undisputed facts show that the accused products don't meet the "location" requirements of every asserted claim, as previously construed by the Court. The claims require specific ways of managing data that separate the "where" (i.e., the location of the data) from the "what" (i.e., the data itself). But to meet its users' needs, Amazon created its own ways of storing and retrieving data and information on the location of that data, which S3 and DDB have used from their first release through today.

---

[4] SMF at ¶¶ 15, 55.

Amazon's design divides stored data across hierarchies of multiple components, each serving a purpose and contributing to a whole that's different than the "location servers" required by Kove's patents.

Summary judgment on Kove's willfulness and enhanced damages allegations is also appropriate. It's undisputed that Kove didn't notify Amazon of the patents or Amazon's purported infringement before filing suit, and Amazon didn't have the "specific intent to infringe" that the willfulness test requires.[5] Though Kove has alleged that Amazon knew of Kove's patents because later Amazon patents list them among hundreds of other cited references, that's insufficient as a matter of law to show willfulness.[6] And, once notified of Kove's infringement allegations through this lawsuit, Amazon has vigorously defended itself—including through its noninfringement and other defenses here, and reexamination proceedings that have resulted in the invalidation of some asserted claims and Kove narrowing the scope of the rest. There's no factual dispute that Amazon didn't have a subjective intent to infringe and had a good-faith basis to defend this lawsuit, and no reasonable factfinder could conclude that Amazon's conduct was the "egregious" behavior "characteristic of a pirate" that the Supreme Court's *Halo* test for willfulness and enhanced damages requires.[7] Indeed, *Halo* and its progeny are meant to protect the public—including Amazon—from investing in technology, only for a patent owner like Kove to sit quietly for over a decade and then try to unjustly profit through a punitive willfulness sanction.

---

[5] *See, e.g., Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021) ("To establish willfulness, the patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct.").

[6] *See BASF v. CSIRO*, 28 F.4th 1247 (Fed. Cir. 2022) (That "certain BASF witnesses were aware and kept track of CSIRO patents" was insufficient to send willfulness to jury.); *accord Callwave Commc'ns LLC v. AT & T Mobility LLC*, No. 12-cv-1701, 2014 WL 5363741, at *2 (D. Del. Jan. 28, 2014) (finding, pre-*Halo*, citations to patent-in-suit "in multiple Information Disclosure Statements relating to [defendant's] patents … insufficient to support an allegation of willfulness").

[7] *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93, 103-04 (2016).

For these reasons and those detailed further below, Amazon's motion should be granted.

## BACKGROUND

### I.    PATENTS-IN-SUIT AND ASSERTED CLAIMS

Kove alleges that Amazon infringes three patents: U.S. Patent Nos. 7,814,170; 7,103,640; and 7,233,978. The patents are directed to locating data in distributed networks, and purport to disclose specific techniques that involve storing location information for data in addition to the data itself, i.e. what the patents dub a "network distributed tracking protocol (NDTP)."[8] Kove is asserting the following claims against one or both products:[9]

| '170 Patent | Claims **1**, **2**, 6, 8, 12, and 15 |
| '640 Patent | Claims 17, 18, and 24 |
| '978 Patent | Claims 3, **6**, 10, 14, **17**, **23**, **24**, and 30 |

### II.    EX PARTE REEXAMINATIONS

Techniques for locating data in a distributed storage system that separate the "where" (i.e., the location of the data entity) from the "what" (i.e., the data entity itself) already existed at the time of Kove's purported inventions.[10] In November 2021, AWS filed three requests for *ex parte* reexamination, collectively challenging Kove's asserted claims based on prior art that described, for example, the then-commercially available Oracle7 data storage system.[11] By January 2022, the

---

[8] SMF at ¶ 2 (citing '640 patent, title, abstract; '170 patent, title, abstract; '978 patent at 3:28–35).

[9] SMF at ¶ 4. For DDB, Kove is asserting all 17 claims. *Id.* For S3, Kove is asserting only a subset, consisting of seven claims: '170 claims 1 and 2; and '978 claims 6, 17, 23, 24, and 30 (bolded above). *Id.*

[10] SMF at ¶ 2.

[11] Specifically:

Reexamination No. 90/019,034 (for '978 patent claims 1, 3, 6, 10, 14, 17, 23, 24, 30, and 31)
Reexamination No. 90/019,035 (for '170 patent claims 1, 2, 6, 8, 9, 12, and 15)
Reexamination No. 90/019,036 (for '640 patent claims 17, 18, and 24).

SMF at ¶ 21 (citing Dkt. 487-1, 487-2, 490-3).

Patent Office had agreed that each request raised a "substantial new question of patentability," and initiated the reexaminations.[12]

Based on Amazon's requests, the Patent Office determined that the validity of all of Kove's asserted claims needed to be reconsidered based on the new prior art.[13] After initial rejections of 13 of the 17 currently asserted claims, Kove then filed responses with multiple disclaiming statements to distinguish its invention from the prior art.[14] For example, Kove defined its invention as follows:

> The structured relationships of the invention allow clients to access data in distributed environments through a non-hierarchical, limitlessly scalable, server structure that enables retrieval of requested information in not more than two iterations.[15]

And then, Kove repeatedly disclaimed specific aspects on a claim-by-claim basis, arguing various rejected claims "require, expressly or impliedly, a non-hierarchical cluster configuration of location servers in a network."[16] But none of the claims themselves expressly recite these requirements. And these requirements differ from what the specifications teach, given their descriptions of "hierarchical" embodiments of the purported inventions.[17]

During the '978 patent reexamination, the Patent Office initially confirmed four asserted claims: '978 claims 17, 23, 24, and 30. Because the Examiner had overlooked certain relevant teachings of the prior art, Amazon filed a follow-up request for reexamination.[18] The Patent Office

---

[12] *Id.*

[13] SMF at ¶ 21 (citing Dkt. 539-5, 539-6, 527-5 (non-final actions in Reexams. 90/019,034, -035, -036)).

[14] *Id.* (citing Dkt. 539-2, 539-3, 539-4 (Kove responses to those non-final actions)).

[15] SMF at ¶ 8 (Ex. 38, '036 Reexam. Response at 10, Ex. 39, '036 Reexam. Goodrich Declaration at 10, Ex. 35, '035 Reexam. Response at 10, Ex. 44, '034 Reexam. Response at 12, Ex. 10, '109 Reexam. Response at 19.)

[16] SMF at ¶ 32 (quoting, *inter alia*, Dkt. 539-2 at 10, Dkt. 539-3 at 11, 539-4 at 12).

[17] SMF at ¶¶ 46–50.

[18] SMF at ¶ 8.

granted Amazon's request, initiating Reexamination No. 90/019,109. On April 3, 2023, the Patent Office issued non-final rejections of these four claims.[19] Kove then responded, repeating the same "non-hierarchical" arguments that Kove made in the other reexaminations, when seeking to overcome the earlier rejections of the other asserted claims.[20] As a result, Kove has now made substantially the same statements limiting the scope of all 17 asserted claims, following non-final rejections of all 17 asserted claims in reexaminations.

And three of those non-final rejections recently turned into final rejections. On August 31, 2023, the Patent Office issued a Final Office Action invalidating (subject to any Kove appeals) '978 asserted claims 17, 23, and 30.[21] Thus, all asserted claims except for '978 claims 3, 10, and 14 have been invalidated or are currently under reexamination at the Patent Office.[22] The Patent Office also previously invalidated two claims ('978 independent claims 1 and 31) that Kove had been but is no longer asserting in this matter.

## III.    THIS COURT'S JANUARY 13, 2023 ORDER

After Kove's disclaimers, Amazon moved for additional claim constructions to address Kove's narrowed claim scope.[23] On January 13, this Court denied that motion "without prejudice to the presentation of the claim construction arguments during briefing on summary judgment."[24]

---

[19] SMF at ¶ 8.

[20] SMF at ¶ 32.

[21] SMF at ¶ 10. The Final Office Action confirmed asserted claim 24.

[22] SMF at ¶ 11. In April and May 2023, the Patent Office granted further requests for reexamination of '978 asserted claim 6 and all asserted '170 and '640 claims, as detailed in Amazon's Notices of Related Proceedings (Dkt. 618 & 648). *See id*. Amazon's petition to the Patent Office Director to overturn the Examiner's decision on '978 claims 3, 10, and 14 remains pending.

[23] SMF at ¶ 42; Dkt. 539 at 9 (arguing that Kove limited its claims to: "(1) location servers in non-hierarchical, cluster structures, where each location server (2) contains the relevant location information, or information to locate the relevant location information, and (3) can resolve the request in two or fewer steps").

[24] SMF at ¶ 42; Dkt. 579/580. At the time, Kove hadn't yet made any relevant statements in Reexam. 90/019,109. *See generally* Dkt. 539 at 3 n.14 (noting recent commencement of that proceeding).

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When the nonmoving party bears the burden of proof on an element at trial, but fails to supply sufficient evidence to establish that element, summary judgment must be granted in favor of the moving party.[25] Amazon addresses relevant patent law standards where appropriate below.

## ARGUMENT

### I. SUMMARY JUDGMENT OF NON-INFRINGEMENT OF ALL 17 ASSERTED CLAIMS BASED ON KOVE'S DISCLAIMERS IS APPROPRIATE.

Kove's technical expert Dr. Goodrich conceded in his reports and deposition here that 12 of 17 asserted claims "require" a non-hierarchical server structure that enables every location server to respond to requests for information in not more than two steps—i.e., every location server must have the requested information or know where to find it. At the Patent Office, Kove has repeatedly stated and relied on these requirements when seeking to overcome rejections of all 17 asserted claims in the reexaminations. And Dr. Goodrich has confirmed that he will rely on these requirements in his testimony to the jury at trial, including to distinguish Amazon's prior art. Nonetheless, Kove has declined to agree that any of the asserted claims should be construed to include these requirements, seeking to sidestep them when presenting its infringement case. Such tactics are contrary to Federal Circuit law, which dictates that Kove should be held to its disclaimed claim scope on both invalidity and infringement. And if this Court construes the asserted claims to include Kove's disclaimers, as Federal Circuit law requires and Amazon proposes, there's no

---

[25] *E.g.*, *Del Raine v. Jumao-as*, 76 F.3d 381 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986)).

genuine dispute of material fact that S3 and DDB don't infringe any asserted claims.

### A. IT'S UNDISPUTED THAT AT LEAST 12 OF 17 ASSERTED CLAIMS REQUIRE A NON-HIERARCHICAL CLUSTER CONFIGURATION.

Kove and Dr. Goodrich assert that a POSITA would've understood that most asserted claims require non-hierarchical structure, based solely on the claim language, making it unnecessary to further construe them in view of any disclaimers during the *ex parte* reexaminations. For instance, Dr. Goodrich stated in his rebuttal report:

> I agree with Kove that the plain language of claims 17 and 18 of the '640 patent ***requires each server in the data location server network*** to be capable of transmitting ... a redirect message that must contain information that would allow the client to determine the data location server with the location string information. I also agree with Kove that for each data location server to have this capability, ***they must be structured in a non-hierarchical cluster configuration***, because not every server ordered in a hierarchical topology would have this capability. As such, Kove's statements did not change the scope of claims 17 or 18 (or, by extension, claim 24, which depends from claim 18).[26]

Dr. Goodrich also provides similar opinions with respect to all asserted '170 patent claims, as well as asserted '978 patent claims 3, 10, and 14.[27]

As such, it's undisputed that at least 12 of the 17 total asserted claims require location servers in a "non-hierarchical cluster configuration," where each server contains the relevant location information, or information to locate the relevant location information, and can resolve the request in two or fewer steps. And, as detailed below, Kove cannot meritoriously dispute that the other 5 also have these requirements. Notably, this is a negative limitation that excludes systems where some, but not all, servers are in such a configuration. As Dr. Goodrich stated, it "requires **each server** in the data location server network to be capable of transmitting" a message that

---

[26] SMF at ¶ 52 (quoting Goodrich 8-18-23 Rep. at ¶ 56) (emphasis added)).

[27] SMF at ¶¶ 51–52.

"must" provide the requested location information.[28] A hierarchical (or mixed) topology can't suffice, "because not every server ordered in a hierarchical topology would have this capability."[29]

Thus, regardless of whether further claim construction is unnecessary, as Kove and Dr. Goodrich erroneously assert, the substance of Kove's disclaimers in the reexaminations is undisputed for 12 asserted claims (i.e., all '640 claims, all '170 claims, and '978 claims 3, 10, and 14). Summary judgment of non-infringement is warranted on at least those claims because the accused products both have hierarchical structures, as detailed in Section I.C., below. And, as also detailed below, all 17 asserted claims, when properly construed in view of Kove's disclaimers, aren't infringed for the same reason.

### B. ALL 17 ASSERTED CLAIMS SHOULD BE CONSTRUED TO REQUIRE A NON-HIERARCHICAL CONFIGURATION.

Notwithstanding Dr. Goodrich's admissions about what the claims require, a dispute between the parties that requires further claim construction remains.[30] This is because Kove has refused to agree that any of the asserted claims should be construed to include the requirements Kove placed on its monopoly at the Patent Office, and Kove and Dr. Goodrich have sought to take advantage of that by relying on dramatically different interpretations of what the claims require, depending on whether the issue is invalidity or non-infringement.

Indeed, Dr. Goodrich's rebuttal report repeatedly attempts to distinguish the prior art that

---

[28] SMF at ¶ 52 (emphasis added).

[29] *Id.* For the five remaining asserted claims, '978 claims 6, 17, 23, 24, or 30 (of which claims 17, 23, and 30 have been invalidated in a Final Office Action, which Kove may appeal to the Examiner and then Federal Circuit), Dr. Goodrich didn't provide a clear opinion either way on whether they require a "non-hierarchical cluster configuration." Instead, he argues that Kove didn't make statements concerning those five claims in Reexamination No. 90/019,034. SMF ¶ 45.

[30] *See generally Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) (Under *O2 Micro*, "the court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury. In order to fulfill this obligation, the court must see to it that disputes concerning the scope of the patent claims are fully resolved.").

Amazon's expert Joseph Greene cited in his invalidity expert report, in a manner consistent with Kove's statements in the reexaminations and the above-quoted passage describing the "non-hierarchical cluster configuration." For example, Dr. Goodrich states that:

> ['170] claim 1 requires that each location server is configured to determine which location server stores the sought-after location information with *certainty and specificity* based on the plain language of claim 1.[31]

Dr. Goodrich then provides the same opinion when distinguishing most asserted claims over one or more prior art references.[32] In fact, Dr. Goodrich's rebuttal report uses the phrase "certainty and specificity" 129 times when arguing, in support of validity, that prior art fails to satisfy the language of the asserted claims unless every location server can provide the sought-after information.[33] Yet, when it comes to Amazon's products, Kove and Dr. Goodrich instead rely on a different understanding of what the claims require. The phrase "certainty and specificity" doesn't appear in Dr. Goodrich's opening report, where he opines that S3 and DDB infringe.[34]  And as detailed in Section III, he relies on what components in the accused products might do, depending on various factors, not what they do with "certainty and specificity."

This Court previously denied Amazon's request for additional claim construction, "without prejudice to the presentation of the claim construction arguments during briefing on summary judgment."[35] Given the above, there is a material dispute between the parties requiring further claim construction.

---

[31] SMF at ¶ 51.

[32] SMF at ¶¶ 51–54 (citing the following in Dr. Goodrich's rebuttal report: ¶¶ 205 ('170 claims 6 and 15), ¶ 376 ('640 claims 17, 18), ¶ 461 ('978 claims 3, 10, and 14)).

[33] SMF at ¶ 51.

[34] SMF at ¶ 73.

[35] SMF at ¶ 42; Dkt. 579/580.

C. DURING THE REEXAMINATIONS, KOVE DISCLAIMED "NON-HIERARCHICAL" STRUCTURES.

Under *Phillips v. AWH Corp.*, courts usually construe claims using the ordinary and customary meaning to an ordinarily skilled artisan at the time of invention.[36] One well-established exception is where a patentee clearly and unambiguously disavows claim scope during prosecution, including *ex parte* reexamination.[37] For example, when a patentee told the Patent Office that "the device used is a sheet," the Federal Circuit found the claimed invention to be limited to a sheet.[38] Holding patentees to such statements made during prosecution about what their claims require serves fundamental notions of fairness, and is necessary for the public to have notice of a patentee's claimed monopoly.[39]

Here, Kove limited the scope of the asserted claims to: (1) location servers in non-hierarchical, cluster structures, where each location server (2) contains the relevant location information, or information to locate the relevant location information, and (3) can resolve the request in two or fewer steps.[40] But Kove's infringement and validity contentions served before the reexaminations didn't notify Amazon of these requirements of the claim language or identify how the accused products and prior art compared to them—thus undermining Kove's and Goodrich's later assertions that the claim language itself should've made these requirements apparent.[41] And the specification of each patent-in-suit, on its face, describes examples using the invention in hierarchical structures, thus further undermining these assertions. For example, the specifications of the '640

---

[36] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

[37] *E.g.*, *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013).

[38] *Id.*

[39] *Aylus*, 856 F.3d at 1359–60 (noting that this doctrine extends to "statements made in reexamination proceedings").

[40] *See generally* Dkt. 539 at 9.

[41] SMF at ¶ 55.

and '170 patents (both entitled "Network Distributed Wire Transfer Protocol") both state that:

> NDTP provides two mechanisms for server redirection. The redirection mechanisms allow cluster and hierarchical topologies, and mixtures of such topologies.[42]

The '978 specification uses different but equally clear language:

> An NDTP server hierarchy 100, such as illustrated in FIG. 21, permits identifier/location association data to be owned and physically controlled by many different entities.[43]

And additional examples appear in all three patents.[44]

Yet, in the reexaminations of all three patents-in-suit, in response to the Patent Office's non-final rejections of all 17 asserted claims over the prior art, Kove repeatedly disclaimed networks lacking a "non-hierarchical" structure where every location server can provide requested information in no more than two steps. This includes Kove's July 3, 2023 argument in response to the non-final rejections of asserted '978 claims 17, 23, 24, and 30, which stated:

> Their invention, as embodied in the claims of the '978 patent, enables a client to retrieve data through any server in the network and receive in response the location information associated with a desired entity. The structured relationships of the invention allow clients to access data in distributed environments through a non-hierarchical, limitlessly scalable, server structure that enables retrieval of requested information in not more than two iterations.[45]

Kove said substantially the same when responding to the earlier non-final rejections of the other four asserted '978 claims,[46] and all '170 asserted claims,[47] and all '640 asserted claims.[48]

---

[42] SMF at ¶ 47 (quoting '640 patent, 14:28–31; '170 patent, 14:43–46).

[43] SMF at ¶ 46 (quoting '978 patent, 19:46–48).

[44] *E.g.*, in the '978 patent: "In another alternative embodiment, a hierarchical NDTP server topology, such as the NDTP server tree 52 shown in FIG. 6, may be utilized." SMF at ¶ 46; *see also id.* (additionally citing '978 patent, 7:37–53, 19:38–39; '640 patent, 16:14–38, 14:28–31, 16:14–38, 17:22–24, 17:61–18:16, 18:36–58; '170 patent, 14:43–46, 16:33–56, 17:38–42, 18:9–30, 18:49–19:4).

[45] SMF at ¶ 32.

[46] SMF at ¶¶ 31–38; Dkt. 539-4 at 12.

[47] SMF at ¶¶ 31–38; Dkt. 539-3 at 11 ("Their invention, as embodied in the claims of the '710 patent ….").

[48] SMF at ¶¶ 31–38; Dkt. 539-2 at 10 ("Their invention, as embodied in the claims of the '640 patent ….").

And Kove repeatedly distinguished all asserted claims from "hierarchical" prior art, such as Oracle Names Administrator's Guide (ONAG), based on the above requirements. For example, in the more recent '978 reexamination, Kove stated:

> In contrast to the hierarchical "tree" structure of prior systems like ONAG, the configuration taught by the '978 patent allows for linear scaling of the location servers. Particularly, the patent teaches seamlessly adding location servers based on the growth of a network.[49]

Indeed, Kove specifically argued that the limitations of the asserted claims "cannot be met in hierarchical configurations such as [Oracle's] Names Server."[50] For example, in the earlier '978 patent reexamination, Kove argued that:

> The Examiner points to ONAG Figure C-4 as allegedly disclosing the claimed "cluster topology" recited in claim 10. But ONAG only describes the hierarchical topology of [Oracle's] Names Servers.[51]

Kove then met with the Patent Examiner and presented a slide show that included the following slide summarizing the purported differences between the Kove Patents and the Oracle prior art, and distinguishing Kove's purported invention from a hierarchical architecture:[52]

---

[49] SMF at ¶ 35.

[50] SMF at ¶ 34; Dkt. 539-4 at 36; Dkt. 539-3 at 26.

[51] SMF at ¶ 35; Dkt. 539-4 at 51; *see also id.* at 35 ("ONAG lacks the non-hierarchical cluster structure required to satisfy the requirements of independent claims 10 and 14 and dependent claim 3."); *id.* ("In contrast, independent claims 10 and 14 and dependent claim 3 of the '978 patent require networks with *non-hierarchical* (or 'cluster') configurations ....") (emphasis in original).

[52] SMF at ¶ 36.

13



Kove also made similar arguments in the other reexaminations.[53]

Further, Kove repeatedly emphasized in the reexaminations of all three patents that each and every location server must be capable of providing the desired location information, as set forth in Amazon's proposed constructions. For example, Kove stated:

> The '640 patent **requires** that *each and every* **server in the data location server network have the capability of transmitting information to the client that the client then processes to determine the server that contains its requested information**. This configuration **"collapses" the hierarchical composition** of Oracle Names, making it entirely different in practice and principle from what Oracle Admin discloses. Oracle Admin in no way teaches that Oracle Names network servers have this capability.[54]

---

[53] SMF at ¶¶ 37–38 (citing, *inter alia*, Dkt. 539-2 at 23; Dkt. 539-3 at 26).

[54] SMF at ¶ 35 (quoting Kove response in '640 reexamination at 23–24) (emphasis in original)); *see also*

And, as noted, Kove repeatedly confirmed that each and every location server must be capable of doing so in no more than two steps (or "iterations," in Kove's words):

> The structured relationships of the invention allow clients to access data in distributed environments through a non-hierarchical, limitlessly scalable, server structure *that enables retrieval of requested information in not more than two iterations*.[55]

Consistent with that, Kove further stated, for example, that "the location servers in the network do not have to execute any extraneous steps for determining or identifying a given entity when resolving a location query."[56]

In the '170 reexamination, Kove argued that a non-hierarchical cluster structure is "expressly" claimed, despite the absence of the words "non-hierarchical," "cluster," or any description of how the location servers are arranged:

> **This non-hierarchical cluster composition is expressly claimed in claim 1**, through the requirement that the data location information is portioned and organized across the data location servers based on a hash function and each and every data location server being configured to determine the data location server that contains the location information based on applying the hash function to the identifier string associated to the location information.[57]

Kove made similar assertions in the '640 and '978 reexaminations, based on the different language of the asserted claims of those patents.[58] Yet, "non-hierarchical" doesn't appear in any asserted claim of any patent-in-suit.

And Kove admitted that the specifications of the patents-in-suit describe hierarchical, non-hierarchical, and hybrid embodiments. But, when doing so, Kove limited the asserted claims to

---

*id*. (listing a dozen similar Kove statements across all three reexaminations).

[55] SMF at ¶ 8.

[56] SMF at ¶ 9.

[57] SMF at ¶ 33 (quoting Dkt. 539-3 at 36 (emphasis added); *see also id*. ("This non-hierarchical cluster composition is expressly claimed in claims 6 and 15….") (quoting Dkt. 539-3 at 53).

[58] *Id*. (citing, *inter alia*, Dkt. 539-2 at 39, Dkt. 539-4 at 35, 66).

non-hierarchical:

> Although the '640 specification discloses hierarchical applications for NDTP as possible embodiments, [asserted] claims 17 and 18 require *non-hierarchical* structure, as explained here and throughout this Reply [to the non-final rejection].[59]

All the above-quoted statements, which Kove made to the Patent Office in support of validity, are clear and unmistakable disclaimers that limit the asserted claims beyond what may otherwise be the plain and ordinary meaning.[60] Thus, this Court should construe the asserted claims to require: 1) location servers in non-hierarchical, cluster structures, where each location server (2) contains the relevant location information, or information to locate the relevant location information, and (3) can resolve the request in two or fewer steps.[61] And entering these constructions would help the trier of fact understand requirements of the claims that aren't expressly stated therein and that an artisan of ordinary skill wouldn't have understood to be part of the plain and ordinary meaning. It would also prevent Kove from reducing the bounds of its monopoly at the Patent Office to preserve its claims, and then unfairly expanding those bounds in this Court to recapture what it disclaimed. This is precisely what the prosecution disclaimer doctrine disallows.

### D.     S3 AND DDB DON'T EMPLOY THE ASSERTED CLAIMS' "NON-HIERARCHICAL" CONFIGURATION.

The plaintiff has the burden of proving that every element of an asserted claim is present in an accused product, either literally or under the doctrine of equivalents.[62] All 17 asserted claims,

---

[59] *Id.* (quoting Dkt. 539-2 at 23, n. 2); *see also* Dkt. 484 at 13 (noting '640 and '170 patents "share the same specification").

[60] *See*, *e.g.*, *X One, Inc. v. Uber Techs., Inc.*, 440 F. Supp. 3d 1019, 1045 (N.D. Cal. 2020) ("That X One repeatedly made this argument to the [Patent Office during *inter partes* review] leads the Court to find that these statements, taken together, amount to a 'clear and unmistakable disclaimer' of [patent] scope.").

[61] SMF at ¶ 42 (citing chart of proposed constructions).

[62] *See*, *e.g.*, *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994) (affirming summary judgment of non-infringement); *PSC Computer Prod., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1357 (Fed. Cir. 2004) (same).

when construed in view of Kove's disclaimers, require a location server network/system "arranged in a non-hierarchical, cluster topology."[63] But "a non-hierarchical, cluster topology" isn't present in the accused S3 and DDB products—instead, their structures are hierarchical.[64] Indeed, each product is hierarchical in at least two undisputed ways, each of which independently shows non-infringement.

First, S3 and DDB divide their data storage into geographical hierarchies.[65] More specifically, both services are arranged into ▮ hierarchical regions that reflect the geography for their customers.[66] Within those regions, there is a second layer of geographic hierarchy called availability zones.[67] These geographic divisions and the resulting hierarchy are necessary for products of such scale— which Dr. Goodrich acknowledges are "highly complex," and capable of storing "any amount of data" and serving "any level of request traffic."[68] In other words, applications running in one geographic region benefit from having their data accessible in the same region.[69] If S3's or DDB's storage system were instead flat and each access was equally likely to go to any of the data centers around the world—i.e., as Kove described its "non-hierarchical" asserted claims to the Patent Office—it would likely encounter much higher latencies and lower throughputs.[70] Amazon's noninfringement expert Dr. Ananth Grama confirmed the hierarchical structure of the

---

[63] SMF at ¶ 42 (Dkt. 539 at Appendix A).

[64] SMF at ¶¶ 55–66.

[65] SMF at ¶ 56.

[66] *Id*.

[67] *Id*.

[68] SMF at ¶ 16.

[69] SMF at ¶ 56.

[70] *Id*.

accused products through independent testing.[71] This showed, for example, distinct response times that depend on where data is stored and the regional servers used to access it.[72] Kove's expert, Dr. Goodrich, performed no testing to support his infringement opinions, has never used S3 or DDB, and doesn't contradict Dr. Grama's findings.[73]

Instead, Dr. Goodrich expressly limits his opinions that DDB and S3 qualify as "non-hierarchical" to the alleged location servers "within a region."[74] His opinions thus consider only one layer of S3's and DDB's regional hierarchy, ignoring the other layers, the other regions, and the alleged location servers in those other regions to try to fit the accused products to the claims. To be sure, it's undisputed that users of both S3 and DDB all over the world can request data stored all over the world.[75] Unlike in Dr. Goodrich's analysis, however, user requests aren't limited to "within a region." But as Dr. Goodrich admits, the alleged location servers in S3 and DDB that have the information to respond to those requests *are*.[76] Dividing servers into regions in this way— each region a branch on a broader hierarchical tree—fundamentally differs from what Dr. Goodrich and Kove told the Patent Office about the Kove patents' "flat," "non-hierarchical" topology, where "each and every server in the data location server" is capable of responding to *every* request without extraneous steps.[77] Because claim construction is a matter of law, the Federal Circuit holds that courts "should discount any expert testimony that is clearly at odds with the claim

---

[71] SMF at ¶ 59.

[72] *Id*.

[73] SMF at ¶ 58.

[74] SMF at ¶ 57. As further detailed below, Kove alleges that DDB's Metadata Nodes and S3's Keymap Functional Coordinators (KFCs) are location servers.

[75] SMF at ¶ 56.

[76] SMF at ¶ 57.

[77] SMF at ¶ 33.

construction mandated by the claims themselves, the written description, and the prosecution history."[78] This Court should do so here, where Kove's expert insisted at the Patent Office that the asserted claims have particular requirements about what each and every server can do, but then ignored those requirements when conducting his infringement analysis.[79] S3 and DDB don't meet those requirements, and don't infringe any asserted claims.

And geographic hierarchies aren't the only reason that S3 and DDB lack the "non-hierarchical" structure that Kove's disclaimers require. S3's and DDB's ████████████ ████████████████████████████████████████████.[80] This includes S3's and DDB's components being ████████████████████████████████████████████ ████████████████.[81] This type of hierarchical command structure is critical for maintaining consistency, as Dr. Grama has detailed.[82] For example, a simplified illustration of S3's ██████ ████████████████████████████████████████[83]

---

[78] *Phillips*, 415 F.3d at 1318.

[79] *Rembrandt Pat. Innovations, LLC v. Apple, Inc.*, 716 F. App'x 965, 971 (Fed. Cir. 2017) (affirming summary judgment, noting "[we] agree with the district court's decision to disregard testimony from Rembrandt's expert that contradicts the claims' meaning established by the intrinsic evidence").

[80] SMF at ¶¶ 60–62 (further detailing these components).

[81] *Id*.

[82] *Id*.

[83] *Id*.; *see also* SMF at ¶ 60 (DDB).



During his analysis of the source code (i.e., the written instructions showing how the soft-ware operates), Dr. Grama identified ███████████████ in S3.[84] Indeed, S3's ███████

███████████████[85] As the S3 source code states, a ████████████████



███████████████[86] And retired Amazon CTO Allan Vermeulen confirmed that S3 is

---

[84] SMF at ¶¶ 63–66.

[85] *Id.*

[86] SMF at ¶ 63. As Dr. Grama stated, the "source code includes comments," like this one, "left by the authors to assist those editing the code in the future."

hierarchical when testifying in response to Kove's questions:

> [C]ertainly how S3 works is you have ██████████████ like that…. And
> I can't remember ██████████████████████████. I want
> to say order of ██████████████████████████████
> ████████████████████████████████.[87]

Likewise, for DDB, Dr. Grama identified attributes ████████████████████
████████████████████████.[88] Parent-child structures are also called
root-leaf relationships, i.e., part of a "tree" structure.[89] At deposition, Kove's CEO and named
inventor John Overton agreed that these are features of a "hierarchical" topology,[90] as did Dr.
Goodrich.[91] Thus, there's no dispute of material fact that DDB uses a hierarchical structure ████
████████████. And Dr. Swami Sivasubramanian, the first General Manager of DDB, further
confirmed Dr. Grama's evidence that DDB is hierarchical through his deposition testimony.[92]
DDB's structure contains ████████████████ and doesn't satisfy the requirement for the
system to be "arranged in a non-hierarchical, cluster topology."

Given the above, there's no genuine dispute of material fact that S3 and DDB lack the non-
hierarchical structure that Kove told the Patent Office the asserted claims require. And summary
judgment of non-infringement for all asserted claims is warranted if this Court construes the as-
serted claims as requiring a non-hierarchical server structure that enables every location server to
respond to requests for information in not more than two steps, consistent with Kove's disclaimers.

---

[87] SMF at ¶ 65.

[88] SMF at ¶ 61.

[89] Id.

[90] SMF at ¶ 89.

[91] Id.

[92] SMF at ¶ 60.

## II. SUMMARY JUDGMENT OF NON-INFRINGEMENT OF ALL 17 ASSERTED CLAIMS UNDER THE COURT'S PREVIOUS CONSTRUCTIONS IS WARRANTED.

Here, although Kove's 17 asserted claims differ in certain specifics, they generally relate to retrieving or managing information specifying the "location" of desired data entities on a distributed network.[93] As is relevant here, all 17 asserted claims include a "location server."[94] And all 17 asserted claims include elements requiring "location(s)."[95] Judge Pallmeyer previously construed "location server" to mean "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients."[96] Additionally, as noted in the claim construction order, the parties agreed to construe "location" as: "an encoding that is a member of a set of associations with an identifier in a location server, and that specifies where data pertaining to the entity identified by the identifier is stored."[97] And the parties further agreed that an "identifier" (as it appears in the above construction and separately in the language of nine asserted claims) is "a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."[98]

---

[93] *See generally* SMF at ¶ 2 (quoting, *inter alia*, '640 patent at 1:62–65 ("One commonly asked question in a data repository environment is: Where is data associated with a particular entity in a distributed data collection? The data location is a key question when a distributed data collection has highly dynamic data distribution properties."); SMF at ¶ 6 (quoting representative '978 claim 1).

[94] SMF at ¶ 7.

[95] *Id*.; Dkt. 382 at "Exhibit B" (ECF p. 6 of 7).

[96] SMF at ¶ 7, Dkt. 484 at 35.

[97] SMF at ¶ 7; Dkt. 484 at 11. This construction comes from the specifications. The Court also construed "data pertaining to the entity…" as "data pertaining to a person or thing (real, digital, or abstract) distinct from that data." Dkt. 484 at 35. And the Court construed "location information" as "one or more identifiers and their associated locations" (in '978 claims), or "information pertaining to one or more locations of data and/or the identities of one or more location servers" (in '170/'640 claims) SMF at ¶ 7; Dkt. 484 at 35.

[98] SMF ¶ 10; Dkt. 484 at 11 (noting agreement on interchangeable terms "identifier," "identifier string," and "identification string" recited in the claims); Dkt. 382 at "Exhibit B" (listing asserted claims for these terms, including current asserted '978 claims 10, 14, 17, and 30; '170 claims 1, 6, 15; '640 claims 17, 18).

Thus, under these constructions, all asserted claims require that:

- The "location server" must maintain "identifier/location mappings";

- The "location" must specify "where data pertaining to the entity identified by the identifier is stored"; and

- The "identifier" must be "unique" and identify "an individual" entity.[99]

And there's no genuine dispute of material fact that both DDB and S3 lack one or more of these requirements. Hence, even without Kove's disclaimers in the reexaminations and Amazon's proposed additional claim constructions, summary judgment of non-infringement is warranted.[100]

### A. S3 DOESN'T INFRINGE UNDER THE CURRENT CONSTRUCTIONS.

In S3, the end user (e.g., a person) sends a request for an object (e.g., a video) to ███████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████.[101] It's undisputed that there's no single place where ████████████████████████████████████████ ████████████████████████ that are stored on different components. Indeed, Kove's expert Dr. Goodrich states that "████████████████████████████████████████████ ████████████████████████████," of which any █████████████████████ to reconstruct the object.[102] This means that even if some of the pieces are lost or corrupted, the object ████████████████████████████████████████.

---

[99] It's undisputed that all asserted claims require these elements. *See, e.g.,* SMF at ¶ 35 (Dr. Goodrich's statement that prior art does not teach or suggest: 'identifier,' 'location,' 'location information,' and 'location server,' as required by [asserted '978] claims 3, 6, 10, 14, 17, 23, and 30).

[100] *See, e.g., Wolverine,* 38 F.3d at 1199.

[101] SMF at ¶ 16. These include ██████████████████████████████████████. *See id.* (providing background and an overview of each component); SMF at ¶ 16 (describing use of local cache).

[102] SMF at ¶ 81 (citing Goodrich July 7, 2023 Rep., Ex. D at ¶ 33). ██████████████████ depending on the build of S3. *See id.* [Grama Aug. 18, 2023 Rep. at ¶ 262 ("█████████████████ which are stored in █████████████" and "can be assembled by █████████████████")].

23

Dr. Goodrich attempts to show that ███████ can be the required "location" in a location server's "identifier/location mappings."[103] According to his infringement report, S3 "████████ ███████████████████████████████████████████████████████████████ ████."[104] Dr. Goodrich asserts that "████████████████████████ satisfies the parties' agreed construction of 'location.'"[105] But calling ████████ a "locator" doesn't make it a "location," or "location information." As detailed below, Dr. Goodrich's opinion ignores the source code (i.e., the instructions showing how the S3 software works) and the testimony of Amazon's engineers who designed and maintain S3 showing the information ████████ contains. Thus, it fails to raise a genuine dispute of material fact.[106]

Dr. Goodrich doesn't address the S3 source code that shows ████████████████ ████ As Dr. Grama explained, with reference to that specific source code, ██████████████ ████████████████████████████████████████████████████.[107] This is consistent with the testimony of Seth Markle, the Principal Senior Software Engineer for S3 who provided 30(b)(6) testimony on S3's operation, when Kove repeatedly asked him about ████████████████████████████████████████████████████████████████ ██████████████████████████████[108] Indeed, Dr. Goodrich doesn't

---

[103] SMF at ¶ 76.

[104] *Id.*

[105] SMF ¶ 76 ("████████████████████████████ satisfies the parties agreed construction of 'location…'") (quoting Goodrich Op. Rep, Ex. D at ¶ 87). Dr. Goodrich also states that ████████ █████████████████████████████████ (i.e., a 'location server')." *Id.*

[106] *See, e.g., Invitrogen Corp. v. Clontech Lab'ys, Inc.,* 429 F.3d 1052, 1080 (Fed. Cir. 2005) ("A party does not manufacture more than a merely colorable dispute simply by submitting an expert declaration asserting that something is black when the moving party's expert says it is white; there must be some foundation or basis for the opinion.").

[107] SMF at ¶ 82.

[108] SMF at ¶ 78; *see also id.* ("The location of the object is █████████████"), 176:12 ("███████ is not a location.").

address the undisputed fact that ██████████████████████████████████, even when the location of corresponding data changes.[109] Thus, ██████████████████████, in the same way that any name could be said to. But knowing what the Magna Carta is, and knowing where in England the four existing copies are located, aren't the same thing. And ██████████ doesn't "specif[y] where data pertaining to the entity identified by the identifier is stored," as the construction of location requires for all asserted claims. Nor does it help satisfy the "location server" or "location information" constructions.[110]

Consistent with those previous constructions and the Kove patents' specifications, in the reexamination proceedings Kove specifically distinguished its claimed inventions from such a "static" association between an identifier and alleged location. In doing so, Kove explained the need to support "dynamic" associations between location and identifier, because the data in a distributed storage network would be moving—something that ██████████████████████████████ ██████. As Kove stated:

> The Inventors understood that maintaining a static relationship of data and its location in traditional distributed data collection environments (i.e., tree structures) would become untenable, … particularly where the data in the components of the network could change location, unbeknownst to one another. The Inventors invented a protocol that dynamically creates relationships between data and its locations using an algorithm or function.[111]

████████████████████████████████████████[112] Because an ██████████████████████ is not a "location," the "location" requirements of every asserted claim are not

---

[109] SMF at ¶ 78.

[110] As noted, the "location server," as required in all asserted claims, must maintain identifier/location mappings. The Court adopted two constructions for "location information," depending on the patent. They require "one or more identifiers and their associated locations" ('978 claims), or "information pertaining to one or more locations of data and/or the identities of one or more location servers" ('640 and '170 claims).

[111] SMF at ¶ 79.

[112] SMF at ¶ 78.

satisfied by S3, and S3 doesn't infringe Kove's claims.

### B.  DDB Doesn't Infringe Under the Current Constructions.

DDB uses ███████████ to help complete an end user's request for data.[113] According to Kove's infringement theory, DDB's ███████████ are the "location servers" that maintain "identifier/location mappings," as required for all asserted claims under Judge Pallmeyer's construction.[114] To support that, Dr. Goodrich's report asserts that the ███████████ store a "███████ ███████████████████████████████████████████ that's the "identifier" in the location servers' "identifier/location mappings."[115] This argument fails to create a genuine dispute of material fact, particularly in view of his deposition testimony. This is shown below, though it's necessary to first provide some context.

In DDB, the parties' experts and the relevant documents agree that:



- ██████████████████████████████████████[116]
- ███████████████████████████████████████████████[117]
- ████████████████████████████████████
- ████████████████████████████████████████[118]
- ████████████████████████████████████████████████████

  ████████████████████████████████████████████

---

[113] SMF at ¶¶ 84–85.

[114] *Id.*

[115] SMF at ¶ 85. Dr. Grama also explained the relevant source code and what information would be contained ███████████████. *See id.*

[116] SMF at ¶ 84. As Dr. Goodrich stated: "████████████████████████████ ████████████████████████████" *Id.*

[117] *Id.*

[118] SMF at ¶ 86.

██████████████████████████████[119]

- ██████████████████████████████████████████████

██████████████████████████████[120]

Given the above, Kove's theory fails as a matter of law for two independent reasons. First, it's undisputed that ████████████ doesn't necessarily ████████████████████████ ███████████████. As such, ██████████████ can't satisfy the construction of the required identifier ("a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server"). And Dr. Goodrich didn't explain how ████ ███████████████████████████ ████████████████████████ satisfies the identifier construction's requirement that it *must* identify an individual item.

Second, there's no evidence that █████████████████████████████████ ████████████. So, ██████████████ don't qualify as the required "location servers," as they don't contain the requisite "identifier/location mappings." And, to the extent Dr. Goodrich's opinion can be read as suggesting that they do, it lacks any foundation in the record. Indeed, the DDB source code shows that ████████████████████████, though they store metadata associated with the partition key that the primary key comprises (along with, in the much more common composite type, a sort key).[121] Dr. Goodrich didn't dispute that. Rather, he acknowledged at deposition that his opinions that the ██████████████ are location servers depend on the ████████ ████[122] Further, he admitted that he put ███████████████████████████ *precisely*

---

[119] SMF at ¶ 86.

[120] *Id.*

[121] SMF at ¶ 85. ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████

[122] *Id.*

*because* ███████████████████████████████████████:

Amazon Atty: ████████████████████████████████

Goodrich: That's why I had this additional parenthetical that ███████████████
███████████████████████████████████████[123]

And when Amazon asked Dr. Goodrich if the █████████████████████████████████████

███████████████████████████████████████████████████████████, he

testified that they didn't.[124]

Accordingly, there's no dispute that the ███████████ don't store the required "identi-

fier"—which, as construed, must be "unique" and identify "an individual entity." And there should

be no dispute about the meaning of this already construed term. Kove itself has repeatedly applied

the same understanding of what "identifier" requires, particularly when it comes to issues of va-

lidity. For example, Kove recently argued in Reexamination 90/019,109 for distinguishing certain

prior art (Ault) on the basis that Ault's "file set location server" maintained information identifying

"file sets" that may hold multiple objects, rather than being specifically limited to holding a single

object.[125] Based on those arguments, and after adopting this Court's identifier construction, the

Patent Office withdrew the non-final rejection based on Ault, finding:

> [Kove's] arguments with respect to the [Ault combination] overall persuasive, in
> particular the argument with respect to the combination failing to disclose the
> claimed identifiers uniquely identifying an entity as required when interpreting the
> term under *Phillips* [*v. AWH Corp.*]."[126]

Here, just as with Ault's "file sets," ████████████████████████████. And █████████

---

[123] SMF at ¶ 89.

[124] SMF at ¶ 85 ("Q. ████████████████████████████████████ A. It associates

████]. Q. Okay. So it associates ██████████████████████████? A. That's right.").

[125] SMF at ¶ 9.

[126] SMF at ¶ 10. Although the Patent Office issued a final rejection of three out of four asserted claims at
issue, it withdrew the non-final rejection based on Ault. *Id.*

███ (which Kove only looked to because ████████████, as Dr. Goodrich admitted) doesn't qualify as an identifier because it identifies ███████████████████████████████. This follows not only from the construction of identifier ("a unique encoding that identifies an individual entity") but the arguments consistent with this construction that Kove recently made to the Patent Office to overcome Ault. And because Kove can't show that ██████████ maintain an identifier (or identifier/location mappings), Kove can't satisfy the identifier and location-server requirements of all asserted claims. Thus, there's no genuine dispute of material fact that DDB doesn't infringe those 17 asserted claims.

## III. SUMMARY JUDGMENT ON WILLFULNESS AND ENHANCED DAMAGES IS WARRANTED.

Under 35 U.S.C. § 284, a court may enhance damages in a patent-infringement case by "up to three times the amount found or assessed." In *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, the Supreme Court clarified that § 284 enhanced damages were "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior."[127] And the Court further explained that:

> The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.[128]

Since *Halo*, the Federal Circuit has divided the enhanced-damages determination into two stages.[129] First, as a threshold matter, the factfinder must find that the infringement was willful.[130] This requires the patent owner to show the accused infringer had knowledge of the patent and "a

---

[127] 579 U.S. 93, 103 (2016).

[128] *Id*. at 103–04; *accord id*. at 106 (Enhanced damages "should generally be reserved for egregious cases typified by willful misconduct.").

[129] *Extang Corp. v. Truck Accessories Grp., LLC*, No. 19-cv-923, 2022 WL 607868, at *1 (D. Del. Feb. 18, 2022) (citing *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020)).

[130] *Extang*, 2022 WL 607868, at *1; *accord Bayer*, 989 F.3d at 988; *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021) (willfulness requires "deliberate or intentional infringement.").

specific intent to infringe at the time of the challenged conduct."[131] Second, if the factfinder finds willfulness, the district court determines the appropriateness of enhanced damages, considering whether the accused infringer's conduct was "egregious behavior" or "worthy of punishment."[132] Here, as detailed below, Kove can't show that any alleged infringement was willful.

## A. KOVE CAN'T SHOW PRE-SUIT WILLFULNESS

It's undisputed that Kove didn't send Amazon a notice letter or otherwise inform Amazon of the alleged infringement before filing the complaint on December 12, 2018.[133] And there's no evidence that any Amazon employees relevant to this lawsuit, such as those involved with developing, managing, or selling the accused products, knew of Kove's patents-in-suit before this matter. For instance, Allan Vermeulen, the retired CTO who worked for Amazon from 1999–2021 and was involved in developing S3, testified that he had never heard of Kove, or the original assignee of the patents (Econnectix), or the two named inventors (Overton and Bailey).[134] Unsurprisingly, given the absence of any allegation that Kove provided Amazon pre-suit notice of infringement, or any evidence showing the required knowledge on Amazon's part, Kove didn't ask these questions when deposing every Amazon witness. And like Mr. Vermeulen, Kove's own expert, Dr. Goodrich, testified that he hadn't heard of Kove or any of the previous assignees, and didn't know of the patents-in-suit until Kove retained him in February 2019.[135]

---

[131] *Bayer*, 989 F.3d at 987; *Extang*, 2022 WL 607868, at *1; *Bd. of Regents, the Univ. of Texas Sys. v. Ethicon, Inc.*, No. 1:17-cv-1084, 2020 WL 3582793, at *3 (W.D. Tex. Apr. 17, 2020) ("Willful infringement requires knowledge of the allegedly infringed patent."); *Halo*, at 105 (noting "culpability is generally measured against the knowledge of the actor," and "subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages").

[132] *Eko Brands,* 946 F.3d at 1378 ("The question of enhanced damages is addressed by the court once an affirmative finding of willfulness has been made.").

[133] SMF at ¶ 90.

[134] SMF at ¶ 91.

[135] SMF at ¶ 92.

And rather than showing willfulness, the undisputed facts here show that Kove chose to lie in wait and sue Amazon long after the accused products were on the market and shortly before the patents expired. As Kove's CEO and named inventor Dr. Overton confirmed at deposition, he communicated with Amazon employees, during a six-month period in 2017–18, in an effort to sell Amazon a Kove memory product unrelated to the patents-in-suit.[136] At this point, S3 and DDB had been on the market for over 11 and five years, respectively. And as Dr. Overton testified, Kove had long ago stopped trying to sell any products practicing the patents-in-suit.[137] Notably, during in his sales pitch to Amazon, Dr. Overton referred to the accused DDB service and how Kove's memory product promised to improve its performance by "10x or 50x."[138] But as Dr. Overton confirmed at deposition, he never mentioned the patents-in-suit during those sales communications. As he testified:

> Amazon Atty: [You had] at least three meetings with Amazon personnel during 2017 and 2018, right?
>
> Overton: Yes.
>
> Amazon Atty: And during the course of Kove's communications with Amazon Web Services in 2017 and 2018, Kove never identified the '978, '170, or '640 Patents to Amazon; right?
>
> Overton: That is correct.[139]

And Dr. Overton further confirmed that although he had been planning litigation with infringement counsel since 2014,[140] he never mentioned during those 2017–18 discussions that Kove believed

---

[136] SMF at ¶ 96 ("Q. Now, Kove tried to do business with Amazon Web Services at one point, right? A. Yes. Q. Kove tried to get Amazon to buy Kove's products in 2017 and 2018, right? A. I believe so, yes. Q. You were personally involved in those efforts, correct? A. Yes.").

[137] SMF at ¶ 93 ("Q. And by this point in 2017, Kove had long since stopped trying to sell any products that practiced the '978, '170, and '640 Patents, right? A. Yes.").

[138] SMF at ¶ 95.

[139] SMF at ¶ 96.

[140] *See*, *e.g.*, *id*.

that Amazon was infringing those patents.[141]

Given the above, and the absence of any other pre-suit notice, Kove's pre-suit willfulness claim hinges entirely on its theory that Amazon must've known of Kove's patents-in-suit and S3's and DDB's alleged infringement because Kove's patents were cited during the prosecution of various Amazon patents. But courts have repeatedly found such facts insufficient to support a finding of willfulness. For instance, in *Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*, the court dismissed a willfulness claim premised on the defendant having 75 patents citing to the plaintiff's patents, including the patents-in-suit.[142] Unlike here, the defendant's in-house counsel had prosecuted those 75 patents, and the defendant also had previously engaged in negotiations to purchase the plaintiff's full patent portfolio.[143] But as the court explained:

> [I]t does not follow that [defendant's in-house prosecution counsel] would have specific knowledge of the substance of each and every patent cited during patent prosecution. During patent prosecution, patentees are incentivized to broadly search for and report relevant citations to the patent examiner pursuant to their duty of candor. Given the breadth of the patents cited in the patent prosecution histories of 75 patents, the scant citation alone to the patents-in-suit do not establish specific knowledge of such patents.[144]

Further, the court concluded that even if the prosecution of the defendants' patents could show knowledge of the patents-in-suit, it still couldn't show the required knowledge of infringement.[145] And other courts, including the Federal Circuit, have reached analogous conclusions.[146]

---

[141] *Id.*

[142] 638 F. Supp. 3d 1088, 1097–98 (N.D. Cal. 2022).

[143] *See id.*

[144] *Dali Wireless*, 638 F. Supp. 3d at 1097–98.

[145] *Id.* at 1098; *see also id.* at 1095 ("To prove willful conduct, the plaintiff must show both the accused infringer's knowledge of the patents and knowledge of infringement.").

[146] *BASF*, 28 F.4th at 1247 (That "certain BASF witnesses were aware and kept track of CSIRO patents" was insufficient to send willfulness to jury.); *Callwave*, 2014 WL 5363741, at *2 (finding, pre-*Halo*, citations to patent-in-suit "in multiple Information Disclosure Statements relating to [defendant's] patents … insufficient to support an allegation of willfulness").

Indeed, Kove's willfulness claim falls short of those that courts have repeatedly dismissed in cases where patent owners affirmatively provide pre-suit notice of the relevant patents, but fail to fully detail the alleged infringement. For example, in *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, Circuit Judge Bryson found that a patent owner's pre-suit letter identifying the allegedly infringed patents was insufficient to send willfulness to the jury.[147] In doing so, he noted that the letter didn't set out the strength of the patent owner's infringement case or address validity, and was sent years after the defendant began marketing the accused product.[148] In comparison, Kove provided no pre-suit notice of its patents and the alleged infringement, and waited longer after Amazon began marketing the accused products to file its complaint.

Beyond being legally insufficient to find willfulness, Kove's reliance on the prosecution histories of Amazon patents also omits important context. Amazon is among the world's largest patent holders, and regularly among the top 15 companies assigned the most new patents every year. Amazon witness Scott Hayden testified that Amazon has approximately 16,000 U.S. patents, 4,000 to 5,000 non-U.S. patents, and ███████████ pending U.S. patent applications.[149] Although these patents are in a variety of fields, the large majority were developed by Amazon (rather than acquired), and many relate to cloud computing. For instance, Dr. Sivasubramanian testified that he was the named inventor on more than 150 Amazon patents.[150]

In Kove's response to Amazon Interrogatory No. 9, Kove asserts that Amazon's willfulness

---

[147] No. 2:15-cv-1202, 2017 WL 2190055, at *2 (E.D. Tex. May 18, 2017).

[148] *Id.*; *accord Acceleron, LLC v. Dell Inc.*, No. 1:12-cv-4123, 2022 WL 1087683, at *4–5 (N.D. Ga. Mar. 7, 2022) ("Dell's knowledge of the asserted patent and of Acceleron's other lawsuits, its decision to continue to manufacture and sell its products without changes, and Acceleron's allegations of infringement were not enough for a reasonable jury to find that infringement was either known or so obvious that it should have been known."), *aff'd*, No. 2022-1620, 2023 WL 4503189 (Fed. Cir. July 13, 2023).

[149] SMF at ¶ 97.

[150] *Id.*

is "evidenced by the fact that [Amazon] patents and patent applications ... have cited to the Patents-In-Suit."[151] Kove then lists some 400 patents, followed by brief discussions of two in particular: Amazon's Patent Nos. 8,239,571 and 8,234,403, which both name Dr. Sivasubramanian as an inventor.[152] During the prosecution of the first example, the '571 patent, the Examiner cited Kove's '978 patent in a Non-Final Office Action, and Amazon's outside prosecution counsel responded.[153] The Examiner then allowed the '571 patent.[154] Dr. Sivasubramanian didn't specifically recall these patents or receiving any information as a result of their prosecution.[155]

As Kove's interrogatory response omits, several hundred non-Kove patents and references were also cited during the prosecution of each of Amazon's '571 and '403 patents.[156] And the list in Kove's response appears to include Amazon patents where a Kove patent was merely one cited reference among more than a thousand others, cited somewhere along the line in the patent family prosecution history. For example, during the prosecution of Amazon's U.S. Patent No. 9,590,946, an example chosen at random from the middle of Kove's list,[157] Kove's '978 patent was cited in a 43-page Information Disclosure Statement along with 1,108 other references, mostly U.S. patents. As shown below, the '978 patent is 724th, on page 26.[158]

---

[151] SMF at ¶ 98.

[152] *Id*.

[153] *Id*.

[154] *Id*.

[155] SMF at ¶ 97.

[156] And that only counts only the "Cited References" that the Patent Office included on the covers of the '571 and '403 patents.

[157] Number 100 on Kove's list. Dr. Sivasubramanian is one of four named inventors. SMF at ¶¶ 98–99.

[158] SMF at ¶ 99. The '946 patent appears to be a continuation of a continuation, and part of an international patent family. As a result, the IDS included references from all of the previous examinations and multiple international search reports.

| | | U.S. PATENT DOCUMENTS | | | |
|---|---|---|---|---|---|
| *(Multiple sheets used when necessary)* | | | Examiner | Not assigned | |
| SHEET 26 OF 43 | | | Attorney Docket No. | SEAZN.294C2 | |
| Examiner Initials | Cite No. | Document Number *Number - Kind Code (if known)* Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
| | 701 | 7,103,645 B2 | 09-05-2006 | Leighton et al. | |
| | | ● ● ● | | | |
| | 724 | 7,233,978 B2 | 06-19-2007 | Overton et al. | |
| | 725 | 7,240,100 B1 | 07-03-2007 | Wein et al. | |
| | 726 | 7,251,675 B1 | 07-31-2007 | Kamakura et al. | |
| | 727 | 7,254,626 B1 | 08-07-2007 | Kommula et al. | |
| | 728 | 7,254,636 B1 | 08-07-2007 | O'Toole, Jr. et al. | |

Such evidence is not probative. No reasonable jury could conclude from the Amazon patents that Kove relies on that Amazon had knowledge of Kove's patents-in-suit and the specific intent to infringe, as willfulness requires.[159] And even assuming a jury could find willfulness, the circumstances here wouldn't justify exercising discretion to award enhanced damages, as there's no basis to find Amazon's pre-suit conduct "egregious" or "characteristic of a pirate."[160] Accordingly, this Court should grant Amazon partial summary judgment of no pre-suit willfulness or § 284 enhanced damages.

### B. POST-SUIT: KOVE CAN'T SHOW WILLFULNESS BETWEEN DECEMBER 12, 2018, AND THE EXPIRATION OF ITS PATENTS.

One can't infringe, willfully or otherwise, an expired patent. As the Supreme Court stated in *Kimble v. Marvel Entertainment, LLC*, "when [a] patent expires, the patentee's prerogatives expire too, and the right to make or use the article, free from all restriction, passes to the public."[161] Here, two patents-in-suit expired before Amazon answered the complaint on May 1, 2020, and the

---

[159] *E.g.*, *Bayer*, 989 F.3d at 987.

[160] *Halo*, 579 U.S. at 104.

[161] *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446, 451 (2015).

third expired a few months later.[162] No reasonable jury could find willful infringement during the period between the filing of the complaint on December 12, 2018, and expiration of the patents in 2020. And even assuming *arguendo* that they could, there would be no basis for the Court to find Amazon's conduct during this period sufficiently egregious to warrant enhanced damages.[163]

If the filing of a complaint, without more, were enough to send post-complaint willfulness to the jury, then it would go to the jury in every patent-infringement case. And a defendant would be unable to avoid a willfulness claim unless it immediately stopped selling all accused products upon the service of an infringement complaint, even if it has been selling those products for years (or more than a decade, in S3's case). Fortunately, as many courts have recognized, that is not the law. For instance, as the Southern District of California explained in *Arbmetrics, LLC v. Dexcom Inc.*, when dismissing the post-complaint willfulness claim:

> Defendant's continuing post-suit manufacturing and sales, however, cannot be the sole evidence to support a willful infringement claim. If the Court accepted Plaintiff's contention …, it would also have to accept the "broad proposition that a defendant must cease all allegedly infringing conduct once a complaint is filed in order to avoid a willful infringement claim," which could result in serious consequences. Such a proposition would force defendants that subjectively believe they are not infringing to choose between halting normal business operations as a cautionary measure or face the possibility of a tripled damages award if found guilty of infringement. This goes against the spirit of *Halo*, which aims to punish only the most dastardly conduct in willful infringement claims.[164]

The Central District of California reached a similar result in *GoTV Streaming, LLC v. Netflix, Inc.*, explaining that:

---

[162] According to Kove, the '640 and '170 patents expired on April 8, 2020, and the '978 patent expired on September 25, 2020. *E.g.*, Dkt. 145 at 3.

[163] *See generally Halo*, 579 U.S. at 94 ("Culpability, however, is generally measured against the actor's knowledge at the time of the challenged conduct.").

[164] No. 18-cv-134, 2019 WL 12473781, at *4 (S.D. Cal. Feb. 19, 2019) ("Without some glimmer on the horizon of acts 'characteristic of a pirate,' Plaintiff's willful infringement claim sinks at the pleading stage.") (internal citations omitted), *modified* 2019 WL 12473780 (S.D. Cal. Oct. 7, 2019) (altering dismissal to be "without" prejudice because, unlike here, discovery was incomplete).

> [A]mbushing defendants with willful infringement claims instead of typical cease-and-desist letters would effectively deny defendants the opportunity to meaningfully evaluate and potentially cease the allegedly infringing conduct in order to avoid liability for induced infringement or willful infringement.[165]

Other courts rejecting post-suit willfulness premised on the complaint's filing have observed that:

> It seems beyond the pale to expect every patent defendant to cease all allegedly infringing conduct once a complaint is filed to force them to avoid enhanced damages for willful infringement.[166]

And there are numerous analogous decisions, from district courts across the country, dismissing post-complaint willfulness claims or granting defendants partial summary judgment on that issue or § 284 enhanced damages.[167]

And the justification for summary judgment here is greater than in every case cited above because the window for post-complaint willfulness closed relatively early in the litigation. Indeed,

---

[165] No. 2:22-cv-7556, 2023 WL 2627016, at *3 (C.D. Cal. Feb. 16, 2023).

[166] *NXP USA, Inc. v. Impinj, Inc.*, No. 2:20-cv-1503, 2023 WL 3852914, at *4 (W.D. Wash. June 6, 2023); *Ravgen, Inc. v. Quest Diagnostics Inc.*, No. 2:21-cv-9011, 2022 WL 2047613, at *3 (C.D. Cal. Jan. 18, 2022); *Slot Speaker Techs., Inc. v. Apple, Inc.*, No. 13-cv-1161, 2017 WL 4354999, at *2 (N.D. Cal. Sept. 29, 2017) (same).

[167] *See, e.g.*, *Blackbird Tech LLC v. ELB Elecs., Inc.*, No. 15-cv-56, 2020 WL 5409052, at *8 (D. Del. Sept. 9, 2020) (Pointing to "'[d]efendants' ongoing acts of infringement' … is not, by itself, enough to go to trial on a claim of willful infringement."); *Intellectual Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 612 (D. Del. 2017) ("No reasonable jury could find willful infringement based on" evidence showing that defendant "continued to update, produce, and sell" infringing product post-suit.); *Acceleron*, 2022 WL 1087683, at *4–5 (similar); *M&C Innovations, LLC v. Igloo Prod. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713, at *5–6 (S.D. Tex. July 31, 2018) ("Assuming for the sake of argument that the complaint put Igloo on notice of the existing patents, and Igloo continued its manufacturing its infringing products, this would simply be the kind of 'garden-variety' patent case that *Halo* affirms is ill-suited for a finding of willfulness."); *TecSec, Inc. v. Adobe Inc.*, No. 1:10-cv-115, 2019 WL 1233882, at *2 (E.D. Va. Mar. 14, 2019) (similar); *Xiamen Baby Pretty Prod. Co. v. Talbot's Pharms. Fam. Prod., LLC*, No. 3:21-cv-409, 2022 WL 509336, at *3 (W.D. La. Feb. 18, 2022) (similar); *Wrinkl, Inc. v. Facebook, Inc.*, No. 20-cv-1345, 2021 WL 4477022, at *7–8 (D. Del. Sept. 30, 2021) (concluding that, absent pre-complaint willfulness, post-complaint willfulness claims will ordinarily be dismissed); *Bos. Sci. Corp. v. Nevro Corp.*, 560 F. Supp. 3d 837, 844–45 (D. Del. 2021) (similar); *Ecofactor v. Googl*e, No. 6:20-cv-75, Dkt. 236 at 1092 (W.D. Tex. March 26, 2022) (Putting "forward a good-faith defense" should preclude "willfulness based on the bringing of a complaint," absent pre-suit notice or "evidence from anyone at [defendant] that they believed what they were doing was infringing"); *but see MG Freesites Ltd. v. ScorpCast LLC*, No. 20-cv-1012, 2023 WL 346301, at *10 (D. Del. Jan. 20, 2023) (concluding that pre-suit knowledge isn't required to support a claim for post-complaint willfulness in all cases).

Kove didn't serve the first version of its Final Infringement Contentions until February 13, 2020.[168] But as this Court found when granting Amazon's motion to compel Kove to serve amended contentions, Kove's claim charts failed to provide adequate notice of Kove's infringement theories.[169] Kove didn't serve its First Amended Final Infringement Contentions until June 1, 2020, after two patents-in-suit had expired.[170] That issue still wasn't resolved when the third patent expired.[171] Kove can't prove that Amazon had the subjective intent to infringe, before Kove complied with the local patent rules that this Court designed to give defendants like Amazon notice of infringement theories.[172] Given that and the other circumstances of this case—including Amazon's robust pursuit of non-infringement and other defenses here,[173] and reexamination proceedings that have resulted in the invalidation of some asserted claims and Kove narrowing the scope of the rest—there's no basis upon which a reasonable jury could find that Amazon had a subjective intent to infringe or lacked a good-faith basis to defend this lawsuit at any relevant time.

## CONCLUSION

Kove reduced the bounds of its monopoly to keep some of its claims at the Patent Office, but it has now sought to expand those bounds here to recapture what it disclaimed. Permitting Kove to do so would unjustly take from the public that which Kove didn't invent and isn't entitled

---

[168] SMF at ¶ 4.

[169] Dkt. 97 ("Defendant's motions to compel 90 and 91 are granted as stated in court. Plaintiff is directed to file a revised claim chart.").

[170] SMF at ¶ 4.

[171] *See, e.g.*, Dkt. 284 (Feb. 19, 2021 Minute Entry: "The court agrees with AWS that Kove's infringement contentions should be deemed limited to the explanations offered in Kove's response brief to AWS's second motion to compel amendment of final infringement contentions.").

[172] *See generally* Judge Matthew F. Kennelly & Edward D. Manzo, *Northern District of Illinois Adopts Local Patent Rules*, 9 J. Marshall Rev. Intell. Prop. L. 202 (2010).

[173] Without revisiting the lengthy history of this lawsuit, Amazon also notes that on the same day it filed its answer (May 1, 2020), it also moved to dismiss under Rule 12(c) based on double patenting. Dkt. 131; *see also* Dkt. 304 (denying without prejudice). Amazon will continue to support the same defense at trial.

to own. The prosecution disclaimer doctrine is intended to stop this very tactic. The Court should use it to hold Kove to the bounds of its monopoly, through granting Amazon's proposed claim constructions.

There's no dispute of material fact that the accused products don't infringe the 17 asserted claims under these constructions, as they don't use a non-hierarchical, cluster topology where each location server contains the relevant location information, or information to locate the relevant location information, and can resolve the request in two or fewer steps. There's also no dispute of material fact that the accused products lack any functionality meeting the "location" limitations of the asserted claims, as previously construed by the Court and required by all asserted claims. Summary judgment of non-infringement of all asserted claims is thus appropriate on each of these grounds. And finally, there are no facts to support a finding of willfulness or enhanced damages here, and summary judgment is also warranted on those issues. Amazon thus respectfully asks the Court to grant its motion.

Dated: September 29, 2023

Respectfully Submitted,

*/s/ R. William Sigler*
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (pro hac vice)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (pro hac vice)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW, Suite 400
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2023, I electronically filed the foregoing with the

Clerk of the Court for the United States District Court for the Northern District of Illinois, via the

CM/ECF system, and thereby served a copy on all counsel of record.

*/s/ R. William Sigler*
R. William Sigler