**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KOVE IO, INC., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Judge Matthew F. Kennelly |
| v. | Jury Trial Demanded |
| AMAZON WEB SERVICES, INC., | ████████████████ |
| Defendant. | |

## <u>AMAZON WEB SERVICES, INC.'S STATEMENT OF MATERIAL FACTS</u>

Under Federal Rule of Civil Procedure 56 and Local Rule 56.1(d), Defendant Amazon

Web Services, Inc. ("Amazon") submits this Statement of Material Facts in support of its motion

for summary judgment.

### THE KOVE PATENTS

1.      Plaintiff Kove, Inc. ("Kove") alleges that Amazon's Simple Storage Service ("S3")

and DynamoDB ("DDB") (together, the "Accused Products") infringe Kove's '640, '170, and '978

patents (collectively, the "Kove Patents").[1]

2.      The Kove Patents describe a location service called "network distributed tracking

wire transfer protocol" ("NDTP") for "storing and retrieving data across a distributed data

collection."[2] The Kove Patents each describe how to locate particular units of data within a

distributed database, *i.e.*, specific ways to answer the question "Where is my data?":

> A distributed database is one where data is stored and retrieved among multiple
> machines connected by a network. Typically, each machine in which some portion

---

[1] Ex. 1 ('640 patent), Ex. 2 ('170 patent), Ex. 3 ('978 patent), Ex. 4, Kove's March 2, 2023 Fourth Amended Final Infringement Contentions. Exhibits are attached to the accompanying declaration of R. William Sigler.

[2] Ex. 1 ('640 patent) at abstract, Ex. 2 ('170 patent) at abstract, Ex. 3 ('978 patent) at abstract and 4:20-25.

of the data in a distributed database may reside is called an application server. One commonly asked question in an application server environment is: Where is data associated with a particular entity in a distributed database? The data location is a key question when a distributed database has highly dynamic, and even spontaneous, data distribution properties.[3]

3.      The Kove Patents teach a network of location servers to answer that question. The Kove Patents disclose that when a client seeks a particular data item, the client makes a query, or sends a request, to the location server for that particular item's network location. The Kove Patents' specifications state:

> As shown in FIG. 11, a client 112 consults the server constellation 110…which returns location strings in response to a client 112 request. Once the client 112 has the location string for a particular unit of data, the client 112 contacts and retrieves information directly from the data repository 114.[4]



4.      Kove asserts claims 17, 18, and 24 of the '640 Patent, claims 1, 2, 6, 8, 12, and 15 of the '170 Patent, and claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 Patent against Amazon

---

[3] Ex. 1 at 1:56-65, Ex. 2 at 1:56-65, Ex. 3 at 1:59-67.

[4] Ex. 1 at 1:56-65, Ex. 2 at 17:3-9, Ex. 3 at 1:59-67.

(the "Asserted Claims").[5] The following Kove Infringement Contentions included these assertions:

- Kove's Final Infringement Contentions (February 13, 2020)[6]
- Kove's Amended Final Infringement Contentions (June 1, 2020)[7]
- Kove's Third Amended Final Infringement Contentions (March 7, 2022)[8]
- Kove's Fourth Amended Final Infringement Contentions (March 2, 2023)[9]

5.      The Asserted Claims comprise four groups: the "Knowledge Claims" (claims 17, 18, and 24 of the '640 patent, claims 1, 2, 6, 8, 9, 12, and 15 of the '170 patent, and claims 3, 6, 10, and 14 of the '978 patent), the "Transfer Claims" (claims 17, 23, 24, and 30 of the '978 patent), the "Redirect Claims" (claims 17, 18, and 24 of the '640 patent, claims 3, 10, and 14 of the '978 patent, and claims 6, 8, 12, and 15 of the '170 patent), and the "Hashing Claims" (claim 24 of the '640 patent, claims 6, 9, and 12 of the '978 patent, and claims 2 and 12 of the '170 patent).[10]

6.      Each of the Asserted Claims describes the location server's role in the same way. The '978 Patent includes asserted claims in each group: for example, Redirect and Knowledge Claim 3 and Hashing and Knowledge Claim 6. Both of those claims depend from claim 1. Thus, claim 1 is representative of the Kove Patents' description of the role location servers play in the data retrieval process. It states:

> 1. A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising:
>
> a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity

---

[5] Ex. 4 , Kove's March 2, 2023 Fourth Amended Final Infringement Contentions.

[6] Ex. 5.

[7] Ex. 6.

[8] Ex. 7.

[9] Ex. 4.

[10] Ex. 8, 08/18/2023 Grama Report, ¶¶ 94-104.

> a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and

> programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity.[11]

The United States Patent & Trademark Office ("Patent Office") cancelled claim 1, along with claim 31, of the '978 Patent, finding it lacked novelty and was invalid in *ex parte* reexamination Control No. 90/019,034.[12] Representative language for the Knowledge Claims is found in claim 18 of the '640 Patent, which states in-part:

> wherein the redirect message contains information for use by the client to calculate a location for a different data location server in the plurality of data location servers, wherein the different data location server contains the location string.[13]

Representative language for the Transfer Claims is found in claim 17 of the '978 Patent, which states in-part:

> transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit.[14]

Representative language for the Redirect Claims is found in claim 15 of the '170 Patent, which states in-part:

> sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information.[15]

---

[11] Ex. 3 at 25:24-44.

[12] Ex. 3, Reexamination Certificate, 1:13, Ex. 45, '034 Reexam. 10/27/2022 FOA at 16-20.

[13] Ex. 1, 22:65-23:2.

[14] Ex. 3, 27:40-43.

[15] Ex. 2, 15:44-48.

Representative language for the Hashing Claims is found in claim 1 of the '170 Patent, which states in-part:

> the portion of the data location information included in a corresponding one of the data location servers is *based on a hash function used to organize the data location information* across the plurality of data location servers.[16]

7.  Every Asserted Claim includes a "location server." The Court construed "location server" to mean "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients."[17] Thus, a location server must maintain "identifier/location mappings." The parties agreed on the following constructions relevant to the required "identifier/location mappings."[18]

| Affected Patents & Claims | Claim Term | Court's Construction |
|---|---|---|
| '978 Patent: Claims 1, 3, 6, 10, 14, 17, 23-24, 30, 31<br><br>'170 Patent: Claims 1–2, 6, 8, 12, 15<br><br>'640 Patent: Claims 17–18, 24 | "location" | "an encoding that is a member of a set of associations with an identifier in a location server, and that specifies where data pertaining to the entity identified by the identifier is stored" |
| '978 Patent: Claims 1, 3, 6, 10, 14, 17, 23-24, 30, 31<br><br>'170 Patent: Claims 1–2, 6, 8, 12, 15<br><br>'640 Patent: Claims 17–18, 24 | "identifier/identifier string/identification string" | "a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server" |

8.  In reexamination proceedings on the Kove Patents (which are addressed in more detail below), Kove distinguished the prior art on the basis that it failed to identify a singular entity. For example, Amazon filed a reexamination request on claims 17, 23-24, and 30 of the '978 patent

---

[16] Ex. 2, 21:2-6.

[17] Dkt. 484 at 35.

[18] Dkt. 484 at 2 (Recognizing terms from Dkt. 382 at Ex. B).

on August 31, 2022.[19] On April 3, 2023, the Patent Office non-finally rejected those claims of the '978 patent as obvious over multiple prior art reference combinations, including U.S. Pat. No. 5,617,568 to inventor Michael B. Ault ("Ault").[20] The Patent Office determined that Ault taught the claimed location server system by citing to, for example, the following excerpt. The Patent Office stated:

> The file set location server maintains a database 66 of all file sets. This database is utilized to keep track of physical locations where file sets are stored. If a DFS client 52 requires access to one of the file sets, it send a request to the file set location server/database 64, 66 to inquire about the physical location of the file set, After receiving location information, the client 52 then contacts the actual particular DFS file server 54 wherein the particular file set or file system 56 resides.[21]

9.      Kove responded by arguing that the claimed "identifier" had to identify a singular entity to remove "extraneous steps." Kove stated:

> By requiring that each identifier uniquely identify a single entity, the locations for the data pertaining to the single entity using the identifier can quickly be located. See e.g., id. at 4:19:43; 4:57- 5:22; 8:14-25; 18:38-19:3. This way, the location servers in the network do not have to execute any extraneous steps for determining or identifying a given entity when resolving a location query.[22]

> To the extent "file sets" are alleged to be "identifiers," Ault's disclosures as to "file sets" do not qualify *because file sets do not uniquely identify entities, as "identifiers" are required to do* – at most, file sets are data (e.g., files stored in computer). See id. Furthermore, even when assuming arguendo that Ault's file location servers store identifiers, the identifier in the file location server would identify a file set (i.e., the data) and not an entity. Therefore, Ault does not teach or suggest "identifiers," as required by claim 17.[23]

10.     The Patent Office finally rejected claims 3, 11, and 14 on other grounds, but withdrew this rejection. Specifically, the Patent Office agreed with Kove, confirming that

---

[19] Ex. 9, '109 Reexam. NFOA at 2.

[20] Ex. 9, '109 Reexam. NFOA at 3.

[21] Ex. 9, '109 Reexam. NFOA at 26-27.

[22] Ex. 10, '109 Reexam. Response at 11.

[23] Ex. 10, '109 Reexam. Response at 36 (emphasis added).

identifiers can't be shared by multiple entities in a system. The Patent Office stated:

> The Examiner finds this argument persuasive. Ault is silent with respect to the identifier uniquely identifying an entity. As best understood from the reference, Ault appears to disclose the identifiers identifying the file sets themselves rather than an entity. (See Ault, lines 1-9 of column 6).[24]

> [Kove's] arguments with respect to the [Ault combination] overall persuasive, in particular the argument with respect to the combination failing to disclose the claimed identifiers uniquely identifying an entity as required when interpreting the term under *Phillips* [*v. AWH Corp.*]."[25]

11.     The Patent Office currently has pending proceedings on the validity of all 17 asserted claims in four reexamination proceedings: the '109, '162, '165, and '166 Reexams.[26]

## AMAZON'S TECHNICAL EXPERTS

12.     Amazon's noninfringement expert, Dr. Ananth Grama, is an expert in the field of distributed databases.[27] Dr. Grama holds a Ph.D. in Computer Science from the University of Minnesota, and is now the Samuel D. Conte Professor of Computer Science and Associate Director of the Center for Science Information at Purdue University, one of the leading computer science programs in the world.[28] He has been researching, teaching, and publishing in the field of distributed databases for decades and has been repeatedly recognized for his exemplary work.[29]

13.     Amazon's invalidity expert, Joseph B. Greene, is also an expert in managing

---

[24] Ex. 11, '109 Reexam. FOA at 19.

[25] Ex. 11, '109 Reexam. FOA at 20. Although the Patent Office issued a final rejection of three out of four asserted claims at issue, it withdrew the non-final rejection based on Ault. *Id.*

[26] In April and May 2023, the Patent Office granted further requests for reexamination of '978 asserted claim 6 and all asserted '170 and '640 claims, as detailed in Amazon's Notices of Related Proceedings (Dkt. 618 & 648). *See id.* Amazon's petition to the Patent Office Director to overturn the Examiner's decision on '978 claims 3, 10, and 14 remains pending.

[27] Ex. 8, 08/18/2023 Grama Report, ¶¶ 6-13.

[28] Ex. 8, 08/18/2023 Grama Report, ¶¶ 6-13.

[29] Ex. 8, 08/18/2023 Grama Report, ¶¶ 6-13.

distributed databases and networks.[30] He has dedicated more than three decades to implementing, managing, and analyzing distributed and relational databases. [31] In 1994, he supported one of the ten largest Oracle data warehouses in the United States.[32] Mr. Greene has authored numerous books on distributed databases and architectures—including six on Oracle, a prior art database product that Amazon relies on here and in the reexaminations—explaining how they work and how to optimize their performance for database administrators ("DBAs").[33]  The following table lists the most relevant texts he has written in this technology field.[34]

| Title | Publication Year | Pages |
|---|---|---|
| Oracle DBA Survival Guide | 1995 | 769 |
| Oracle 7.3 Developer's Guide | 1996 | 1,008 |
| Windows NT Server 4.0 Unleashed | 1996 | 1,152 |
| Microsoft BackOffice Unleashed | 1996 | 1,222 |
| Oracle Unleashed | 1996 | 1,404 |
| Oracle Unleashed, 2nd Edition | 1997 | 1,431 |
| Microsoft BackOffice Unleashed, 2nd Ed. | 1997 | 1,503 |
| Oracle Development Unleashed | 1998 | 1,538 |
| Oracle and Java Development | 2001 | 438 |

## THE ACCUSED S3 PRODUCT

14.     Amazon engineers developed S3 from the ground up starting in ███, and Amazon introduced it in March 2006,[35] over 12 years before Kove filed this lawsuit.[36]

---

[30] Ex. 12, 07/03/2023 Greene Report, ¶¶ 5-12.

[31] Ex. 12, 07/03/2023 Greene Report, ¶¶ 5-12.

[32] Ex. 12, 07/03/2023 Greene Report, ¶¶ 5-12.

[33] Ex. 12, 07/03/2023 Greene Report, ¶¶ 5-12.

[34] Ex. 12, 07/03/2023 Greene Report, ¶¶ 5-12.

[35] Ex. 13, 06/04/2021 A. Vermeulen Dep. Tr., 43:12-44:24 ("The [S3] project did not commence until ███████."); 99:12-21 ("So the S3 project was really initiated, and we started design work during a two-day off-site at the Seattle Convention Center in ███████."); Ex. 8, 08/18/2023 Grama Report, ¶ 110.

[36] Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 207:3-10 (Amazon Atty: "In Paragraph 70, in the first sentence, your report says 'Kove filed its Complaint for patent infringement on December 12, 2018,' correct?"

15.     S3 provides a system that can be used to store and retrieve data at any time, from anywhere on the internet. As Amazon has stated:

> Amazon S3 is storage for the Internet. IT's designed to make web-scale computing easier for developers. Amazon S3 provides a simple web services interface that can be used to store and retrieve any amount of data, at any time, from anywhere on the web. It gives developer access to the same highly, scalable, reliable, fast, inexpensive data storage infrastructure that Amazon uses to run its own global network of websites. The service aims to maximize benefits of scale and pass those benefits on to developers.[37]

16.     In S3, data storage and retrieval relies on numerous different components working together, including: the end user device, ███████████████████████████████████████ ███████████████████████████████████.[38] Users access S3 objects with the following steps called a "Get Request," which Dr. Grama also summarized into the diagram below:[39]

A.  The end user sends the Get object request to the ███████████████.[40]
B.  ███████████████████████████████████████████████████████████
    ███████████████████████████████████████████████████████████
    ██████████████████[41]██████████████████████████████████████
    ███████████████████████████████████████[42]

---

Goodrich "Yes, that is correct." Amazon Atty: All right.  And December 12, 2018 is over 12 years after Amazon launched S3, right?" Goodrich "Yes, that is correct.")

[37] Ex. 15, AMZ_KOVE_000061904.

[38] Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 16; Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 212:10-14, 297:9-298-2, 300:15-301:12 (acknowledging accused products are "highly complex," and capable of storing "any amount of data" and serving "any level of request traffic.").

[39] Ex. 8, 08/18/2023 Grama Report, ¶ 119.

[40] Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012900, AMZ_KOVE_000012902; 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 38; Ex. 16, AMZ_KOVE_000012900 (describing GET process); Ex. 8, 08/18/2023 Grama Report, ¶ 120.

[41] Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 18, AMZ_KOVE_000062719 at AMZ_KOVE_000062734; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 27; Ex. 8, 08/18/2023 Grama Report, ¶ 120.

[42] Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 27 ("Each ████████████████████████████…"); Ex. 8, 08/18/2023 Grama Report, ¶ 120.

C. 
D.

E.

F.

G.

H.

I.

---

[43] Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 27; Ex. 8, 08/18/2023 Grama Report, ¶ 120.

[44] Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶¶ 38-39; Ex. , 08/18/2023 Grama Report, ¶ 120; *see also* Ex. 16, AMZ_KOVE_000012900 (describing GET process).

[45] Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 33; Ex. 8, 08/18/2023 Grama Report, ¶ 120.

[46] Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 33; Ex. 16, 08/18/2023 Grama Report, ¶ 120.

[47] Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 33; Ex. 8, 08/18/2023 Grama Report, ¶ 120.

[48] Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 33; Ex. , 08/18/2023 Grama Report, ¶ 120.

[49] Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶¶ 38-39; Ex. , 08/18/2023 Grama Report, ¶ 120.



**THE ACCUSED DDB PRODUCT**

17.     Amazon engineers began developing DDB from scratch in ███, and it became

available to the public in January 2012,[50] over six years before Kove filed this lawsuit.[51]

18.     With DDB, a customer can create database tables to organize and access stored

---

[50] Ex. 19, 05/24/2023 R. Blackman Dep. Tr., 45:6-11 (describing when Amazon first thought about DDB); 51:5-19 (describing the initial DDB team); 68:17-69:6 (describing scaling benefits of DDB); 70:2-5 (describing designing DDB APIs to be predictable); 93:3-14 (describing other design goals of DDB); 103:20-21 ("I think there are different use cases between SimpleDB and DynamoDB.").

[51] Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 213:14-20 (Amazon Atty: "And we talked about previously that Kove filed its complaint in this case on December 12, 2018, right?" Goodrich: "That's right." Amazon Atty: "And that's over six years after Amazon launched DynamoDB, right?" Goodrich "Yes, that's correct.").

items.[52] A "table" is a collection of data called "items" and each item is a collection of "attributes."[53] "Items" are similar to rows or records in other database systems.[54]

19.     In DDB, the user defines a ██████████ to ████████████████████████
██████. The Amazon DDB documentation states:



Dr. Goodrich states:

> Items are distinguished among the other items in the table by ████████████
> ██████████[58]

> As explained above, ████████████████████████████████
> ████████████ (corresponding to an "entity") in the table, so that no two items
> can have ████████.[59]

20.     DDB stores data from tables in ████████ managed by DDB.[60] Amazon DDB

[52] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶¶ 5, 11. *See also*, Ex. 21, 01/29/2020 J. Sorenson Dep. Tr. 53:11–54:9.

[53] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 7; Ex. 22, AMZ_KOVE_000007001 at AMZ_KOVE_000007013–AMZ_KOVE_000007014.

[54] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 7; Ex. 22, AMZ_KOVE_000007001 at AMZ_KOVE_000007014.

[55] Ex. 23, AMZ_KOVE_000009918 at AMZ_KOVE_000009919.

[56] Ex. 24, AMZ_KOVE_000009865 at AMZ_KOVE_000009881.

[57] Ex. 24, AMZ_KOVE_000009865 at AMZ_KOVE_000009872.

[58] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 9.

[59] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 83.

[60] Ex. 25, AMZ_KOVE_000446229 at AMZ_KOVE_000446248.

documentation states:

> DynamoDB stores data ██████. ██████ is an allocation of storage for a
> table, backed by █████████
> ███████ Availability Zones within an AWS Region.
> ████████[61]

Dr. Goodrich states:

> When AWS stores the data in a table, it stores the data ████████ A table can be
> █████████.[62]

## THE '034, '035, AND '036 REEXAMINATIONS

21.     On November 19, 2021, Amazon requested *ex parte* reexamination ("Reexam") of all Asserted Claims as obvious over combinations of Oracle Names Administrator's Guide, Release 2.0 ("ONAG"), Oracle DBA Survivial Guide, 1st Edition. ("OSG"), U.S. Pat. No. 5,777,989 ("McGarvey"), and U.S. Pat. No. 5,301,286 ("Rajani") (collectively the "Oracle prior art").[63] The Patent Office granted the requests and initiated review of all asserted claims.[64]

22.     On May 4, 2022, as part of the '036 Reexam, the Patent Office rejected '640 Patent claims 17, 18, and 24 in view of ONAG, OSG, and McGarvey.[65]

23.     On May 11, 2022, as part of the '035 Reexam, the Patent Office rejected '170 Patent claims 1 and 2 in view of ONAG, OSG, and Rajani, claims 6, 8, and 15 in view of ONAG, OSG, and McGarvey, and claim 9 and 12 in view of ONAG, OSG, McGarvey, and Rajani.[66]

24.     On June 28, 2022, as part of the '034 Reexam, the Patent Office rejected '978 Patent

---

[61] Ex. 25, AMZ_KOVE_000446229 at AMZ_KOVE_000446248.

[62] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 11.

[63] Amazon also requested review of unasserted claim 9 of the '170, from which asserted claim 12 depends.

[64] *E.g.*, Ex. 26, '036 Reexam. Grant Order at 1-19, *E.g.*, Ex. 27 '034 Reexam. Grant Order at 1-15, *E.g.*, Ex. 28, '035 Reexam. Grant Order at 1-12.

[65] Ex. 29, '036 Reexam. NFOA at 4.

[66] Ex. 30, '035 Reexam. NFOA at 8-9.

claims 1 and 31 in view of ONAG and OSG, claims 3, 10, and 14 in view of ONAG, OSG, and McGarvey, and claim 6 in view of ONAG, OSG, and Rajani.[67]

25.     The '640 and '170 patents expired on April 8, 2020, and the '978 patent expired on September 25, 2020.[68] Because the Kove Patents were expired, Kove didn't have the option of amending their claims during the '034, '035, and '036 reexaminations.[69]

26.     In each of the '034, '035, and '036 Reexams, Kove conducted an *ex parte* examiner interview, filed an Office Action Response, and included a supporting declaration by Dr. Goodrich.[70]

## THE ORACLE PRIOR ART

27.     In the '034, '035, and '036 Reexaminations, the Patent Office considered the Asserted Claims against the Oracle prior art for the first time. Specifically, each reexamination included ONAG, a manual published by Oracle, LLC, and OracleSG, a book authored by Mr. Greene to guide database administrators' use of Oracle.[71]

28.     ONAG describes a real product, the Oracle Names Servers, that comprise a part of the larger Oracle7 database system.[72] The Names Servers sole role is assisting clients to locate their data. The Patent Office stated:

> With respect to claim 1, OracleNamesAdminGuide discloses an Oracle 7 distributed database management system (DBMS)for managing data stored in a

---

[67] Ex. 31, '034 Reexam. NFOA, at 2.

[68] Dkt. 145 at 3.

[69] *See, e.g.*, Ex. 29, '036 Reexam. NFOA at 3-4.

[70] Ex. 27, '034 Reexam. Interview Summary, Ex. 32, '034 Reexam. Response, Ex. 33, '034 Reexam. Goodrich Dec., Ex. 34, '035 Reexam. Interview Summary, Ex. 35, '035 Reexam. Response, Ex. 36, '035 Reexam. Goodrich Dec., Ex. 37, '036 Reexam. Interview Summary, Ex. 38, '036 Reexam. Response, Ex. 39, '036 Reexam. Goodrich Dec.

[71] Ex. 29, '036 Reexam. NFOA at 3-4, Ex. 30, '035 Reexam. NFOA at 8-9, Ex. 31, '034 Reexam. NFOA at 2.

[72] *E.g.*, Ex. 39, '165 Reexam. Greene Dec., ¶ 114.

distributed network. The DBMS allows users to request and manage data that is located in the distributed system using Oracle Names Servers.

The Oracle Names Servers store names and addresses for network services such as databases, as well as the names and addresses of other Oracle Names Servers. After services (e.g., databases) have been defined in Oracle Names, users only need to refer to them by name to connect to a database or network service (see page 23).

The Names Server has a single purpose: to resolve or assist in resolving a client-initiated name request. It interprets the request, then looks up the name in its cache, then sends the response back to the client (pages 52-53).[73]

29.     ONAG explains that the examples and figures presented in it are non-limiting:

This manual contains examples and figures that refer to specific machine types, network protocols, and operating systems. These references are examples of possible configurations and are not representative of all configurations.[74]

30.     ONAG includes examples of both hierarchical and non-hierarchical, or "flat," configurations. For example, ONAG Figure 3-8 shows the following:[75]

---

[73] *E.g.*, Ex. 28, '035 Reexam. Grant Order at 12.

[74] Ex. 40, AMZ_KOVE_000528884 at AMZ_KOVE_000528888.

[75] *E.g.*, Ex. 41, '165 Reexam. Greene Dec., ¶¶ 63-66.



Figure 3 – 8 Two Centralized Administration Alternatives

**KOVE'S DISCLAIMING STATEMENTS TO THE PATENT OFFICE**

31.     After the Patent Office ordered reexamination of all Asserted Claims based on the

Oracle Prior Art, Kove argued that the use of hashing and redirect messages meant that the claims

require a non-hierarchical arrangement of location servers. For example, Kove stated:

> Furthermore, claim 10 requires each location server be configured to transmit a
> redirect message comprising information to for finding a location server having
> location information. Therefore, these limitations require a non-hierarchical cluster
> configuration.[76]
>
> As such, claim l requires data location information to be portioned and organized
> across the data location servers in the network *based on a hash function*. A hash
> function necessarily organizes data in a non-hierarchical manner, meaning claim l
> can only be accomplished through the duster configuration taught by the
> specification.[77]

---

[76] Ex. 32, '034 Reexam. Response at 36.

[77] Ex. 35, '035 Reexam. Response at 26.

32.     In each of the '034, '035, '036, and '109 Reexaminations, Kove described the Kove

Patents' invention as follows:

> The structured relationships of the invention allow clients to access data in distributed environments through a non-hierarchical, limitlessly scalable, server structure that enables retrieval of requested information in not more than two iterations.[78]

> Their invention, as embodied in the claims of the '978 patent, enables a client to retrieve data through any server in the network and receive in response the location information associated with a desired entity. The structured relationships of the invention allow clients to access data in distributed environments through a non-hierarchical, limitlessly scalable, server structure that enables retrieval of requested information in not more than two iterations.[79]

33.     In these reexaminations, Kove stated that '640 Patent claims 17, 18, and 24, '170

claims 1, 2, 6, 8, 12, and 15, and '978 claims 3, 10, 14 require non-hierarchical clusters. For

example, in the '036 Reexamination, Kove stated that '640 claims 17 and 18, from which claim

24 depends, expressly require non-hierarchical clusters:

> In contrast, claims 17 and 18 recites a *non-hierarchical* cluster configuration.[80]

> This non-hierarchical duster composition is expressly claimed in claims 17 and 18, through the requirement that "each" (i.e., all) of the data location servers be similarly configured to respond to a client request with the aforementioned information.[81]

> Although the '640 specification discloses hierarchical applications for NDTP as possible embodiments, [asserted] claims 17 and 18 require *non-hierarchical* structure, as explained here and throughout this Reply [to the non-final rejection].[82]

And, in the '035 Reexamination, Kove stated that '170 claims 1, 2, 6, 8, 12, and 15 require non-

---

[78] Ex. 37, '036 Reexam. Response at 10, Ex. 38, '036 Reexam. Goodrich Declaration at 10, Ex. 35, '035 Reexam. Response at 10, Ex. 32, '034 Reexam. Response at 12, Ex. 10, '109 Reexam. Response at 9.

[79] Ex. 10, '109 Reexam. Response at 9.

[80] Ex. 37, '036 Reexam. Response at 23.

[81] Ex. 37, '036 Reexam. Response at 39.

[82] Dkt. 539-2 at 23.

hierarchical clusters:

> Each of the claims at issue require, expressly or impliedly, a non-hierarchical cluster configuration of location servers in a network.[83]

> In contrast, claims 1, 6, and l5 of the '170 patent require networks with non-hierarchical (or "cluster") configurations of location servers that enable each server in the server network to know which location server contains the location(s)of the desired data.[84]

> These features exemplify the non-hierarchical cluster configuration required in claim l.[85]

> Accordingly, the redirect message limitations, as recited by claims 6 and l5 demonstrate that claims 6 and 15 recite a non-hierarchical cluster configuration.[86]

> As stated above, the limitations of claims 6 and 15 require a non-hierarchical cluster configuration that allows location servers to return a redirect message that identifies which data location server is "known to have" (claim 6) or definitively "includes" (claim 15) the location information.[87]

> It is my opinion that a POSITA at the time of this invention would understand claims 1, 6, and 15, through various limitations in each of the claims, to require a non-hierarchical cluster configuration as taught by the '170 patent.[88]

> This non-hierarchical cluster composition is expressly claimed in claim 1, through the requirement that the data location information is portioned and organized across the data location servers based on a hash function and each and every data location server being configured to determine the data location server that contains the location information based on applying the hash function to the identifier string associated to the location information.[89]

And, in the '034 Reexamination, Kove stated that '978 claims 3, 10, 14 require non-hierarchical

clusters:

---

[83] Ex. 35, '035 Reexam. Response at 25.

[84] Ex. 35, '035 Reexam. Response at 25.

[85] Ex. 35, '035 Reexam. Response at 26.

[86] Ex. 35, '035 Reexam. Response at 26.

[87] Ex. 35, '035 Reexam. Response at 51.

[88] Ex. 35, '035 Reexam. Goodrich Declaration at 9.

[89] Dkt. 539-3 at 36 (emphasis added); *see also id.* ("This non-hierarchical cluster composition is expressly claimed in claims 6 and 15….") (quoting Dkt. 539-3 at 53).

In contrast, independent claims 10 and 14 and dependent claim 3 of the '978 patent require networks with non-hierarchical (or "cluster") configurations of location servers that enable each server in the server network to know which location server contains the location(s) of the desired data.[90]

Independent claims 10 and 14 and dependent claim 3 require, expressly or impliedly, a non-hierarchical cluster configuration of locations servers in a network.[91]

34.    In these reexaminations, Kove described the claims as imposing certain requirements of every network server. For example, in the '036 Reexamination, Kove also described rejected '640 claims 17 and 18, from which claim 24 depends, as imposing certain requirements of "every server in the network":

Claims 17 and 18 therefore require **_every_** server in the network be able to return information for calculating the location of the server that contains the requested information. In other words, any first queried server will either have the requested information or will provide the client with the information to find the requested information in the client 's next query.[92]

In the '035 Reexamination, Kove also described the '170 claims as imposing certain requirements of "every server in the network":

In other words, claim 1 requires every location server m the network must be configured to identify the location server in that network that contains the location information for the data entity identified by the identifier.[93]

Further, a POSA at the time of the invention would have no reason to modify or combine Oracle Admin with OracleSG to achieve this limitation both references are silent with respect to configuring every server in the network to determine the data location server that contains the location information.[94]

Another reason is that requiring every location server in the server network be configured to determine which server contains the sought after location information connotes a flat, non-hierarchal structure, where every server is similarly capable of

---

[90] Ex. 32, '034 Reexam. Response at 35.

[91] Ex. 32, '034 Reexam. Response at 35.

[92] Ex. 37, '036 Reexam. Response at 10.

[93] Ex. 35, '035 Reexam. Response at 32.

[94] Ex. 35, '035 Reexam. Response at 33.

identifying the server with the requested information, thus obviating the need for any hierarchy.[95]

In the '034 Reexamination, Kove also described the rejected '978 claims as imposing certain

requirements of "any given server" that are incompatible with hierarchical structures:

> In order to satisfy the requirements of independent claims 10 and 14 and dependent claim 3, Names Service would have to abandon its "tree" composition that is the center of its organizational structure in favor of a non-hierarchical one where any given server is able to return either the requested information or information useable by the client to locate the server with the requested information.[96]
>
> For example, if a queried server receives a request for the data locations associated with a particular identifier but does not have it, that server will return a message to indicating which other server in the network contains the requested information. This configuration "collapses" the hierarchical composition of Oracle Names, making it entirely different in practice and principle from what ONAG discloses. ONAG in no way teaches or suggests something so fundamentally different from the architecture of the Oracle Names system.[97]
>
> Oracle Names depends on a hierarchical structure where a client can only query to the node immediately "above" or "below" it in the "tree." If the queried server does not have the requested information, that server forwards the query to the next higher node and so on until it reaches the root server.[98]
>
> Therefore, these limitations require a non-hierarchical cluster configuration. [Goodrich Decl., ¶¶ 35-43, 52-57]. These limitations cannot be met in hierarchical configurations such as Names Server because each location server in tree-structures do not necessarily store information for finding the location server having the desired location information. [*Id*]. Turning off request forwarding, as taught by ONAG, does not enable servers in the Names network to meet this limitation [*see infra*, pp. 28-29 and 44-45].[99]

35.     In each reexamination, Kove and Dr. Goodrich distinguished the rejected claims

from the Oracle prior art by arguing that Oracle is limited to using hierarchical tree paths. In the

---

[95] Ex. 36, '035 Reexam. Goodrich Declaration at 10.

[96] Ex. 32, '034 Reexam. Response at 40.

[97] Ex. 32, '034 Reexam. Response at 35.

[98] Ex. 32, '034 Reexam. Response at 34.

[99] Ex. 32, '034 Reexam. Response at 36.

'036 Reexamination, Kove filed the following statements:

> In contrast, naming systems like Oracle Names imposes a hierarchical tree structure that limits queries to be received by a client's local or preferred server, and servers are not configured to provide the aforementioned information.[100]

> Unlike DNS or Names Service, Oracle Admin relies on traversing network paths and relationships organized in a hierarchical tree structure.[101]

> Oracle Admin's hierarchical configuration is foundationally different from the non-hierarchical cluster configuration required by claims 17 and 18. An important distinction that, unlike the non-hierarchical cluster configuration required by claims 17 and 18, the Names Servers in Oracle Admin's hierarchical structure do not have information that can be used to calculate the location of location servers containing data location strings.[102]

> As I described above, Oracle Admin is a system similar to DNS, and as described in Oracle Admin, borrows the DNS system to allow clients to search for network addresses of network services. (*See* e.g., Oracle Admin, 56-57 and 190-192). Oracle Admin does not contemplate a non-hierarchical cluster configurations [*sic*], and OracleSG and McGarvey do not either.[103]

> In contrast to the hierarchical "tree" structure of prior systems like ONAG, the configuration taught by the '978 patent allows for linear scaling of the location servers. Particularly, the patent teaches seamlessly adding location servers based on the growth of a network.[104]

> The '640 patent requires that ***each and every*** **server in the data location server network have the capability of transmitting information to the client that the client then processes to determine the server that contains its requested information**. This configuration **"collapses" the hierarchical composition** of Oracle Names, making it entirely different in practice and principle from what Oracle Admin discloses. Oracle Admin in no way teaches that Oracle Names network servers have this capability.[105]

In the '035 Reexamination, Kove and Dr. Goodrich stated:

> In contrast, naming systems like Oracle Names imposes a hierarchical tree structure

---

[100] Ex. 37, '036 Reexam. Response at 39.

[101] Ex. 39, '036 Reexam. Goodrich Dec. at 12.

[102] Ex. 39, '036 Reexam. Goodrich Dec. at 12.

[103] Ex. 39, '036 Reexam. Goodrich Dec. at 13.

[104] Ex. 9, '109 NFOA Response at 16.

[105] Ex. 38, '036 Reexam. Response at 23–24) (emphasis in original).

that limits queries to be received by a client's local or preferred server, and servers are not configured to provide the aforementioned information.[106]

Oracle Admin's Name Servers has no such capability; the hierarchical tree structure of the network limits each server to knowing only about its direct children and therefore has no knowledge of information stored in other Names Servers. (Oracle Admin, p. 191). Accordingly, Oracle Admin's Names Servers are not configured to determine with any specificity or certainty which location server is known to include the sought-after data location information.[107]

Like OracleSG and Rajani, Oracle Admin does not contemplate portioning and organizing data location information across data location servers and enabling each and every Names Server to be configured to determine, which one of the Names Servers stores the requested location information. In fact, Oracle Admin cannot satisfy these features.[108]

As the example in Fig. C-4, and as explained on pages l90-192 of Oracle Admin, even a modestly sized environment with a handful of servers may take numerous iterations to return a query.[109]

ln other words, *whatever location server is queried, if that location server does not have the information, it will either identify the location server that does, identify a list of location servers containing at least the location server that does, and/or send the algorithm or function that will allow the client to make that identification for itself*; rather than traverse a network path across a tree structure like DNS or Oracle Name Service that maintained a static relationship of data and that data's location.[110]

And in the '034 Reexamination, Dr. Goodrich similarly distinguished the claims and the

purportedly hierarchical Names Servers in Oracle. He stated:

It is my opinion that a POSITA at the time of this invention would understand claims 3, 10, and 14, through various limitations in each of the claims, to require a non-hierarchical cluster configuration as taught by the '978 patent.[111]

Furthermore, ONAG describes a hierarchical tree structure and claims 3, 10, and 14 requires a non-hierarchical cluster configuration. Therefore, attempting to

---

[106] Ex. 35, '035 Reexam. Response at 36.

[107] Ex. 35, '035 Reexam. Response at 52.

[108] Ex. 35, '035 Reexam. Response at 35.

[109] Ex. 35, '035 Reexam. Response at 25.

[110] Ex. 35, '035 Reexam. Response at 15.

[111] Ex. 33, '034 Reexam. Goodrich Dec. at 11.

modify ONAG with OracleSG and McGarvey to achieve the requirements of claims 3, 10, and 14 would require abandoning Oracle Admin's hierarchical structure and reconfiguring ONAG such that Names Servers are configured to transmit a redirect message indicating information to find the Names Server that includes the requested location information.[112]

ONAG's principle operation involves traversing a hierarchical tree configuration of Names Severs to retrieve a network address. Attempting to modifying ONAG to satisfy claims 3, 10, and 14 requirements would involve abandoning ONAG's hierarchical structure, requiring substantial reconstruction and redesign of ONAG's elements (e.g., Names Servers).[113]

The Examiner points to ONAG Figure C-4 as allegedly disclosing the claimed "cluster topology" recited in claim 10. But ONAG only describes the hierarchical topology of [Oracle's] Names Servers.[114]

36.     On September 12, 2022, Dr. Goodrich and Kove's attorneys met with the Patent Examiner in the '034 Reexamination for an *ex parte* interview.[115] Kove presented a slide show that included the below slide summarizing the purported differences between the Kove Patents and the Oracle prior art:[116]

---

[112] Ex. 33, '034 Reexam. Goodrich Dec. at 26.

[113] Ex. 33, '034 Reexam. Goodrich Dec. at 27.

[114] Dkt. 539-4 at 51]; *see also id*. at 35 ("ONAG lacks the non-hierarchical cluster structure required to satisfy the requirements of independent claims 10 and 14 and dependent claim 3."); *id*. ("In contrast, independent claims 10 and 14 and dependent claim 3 of the '978 patent require networks with *non-hierarchical* (or 'cluster') configurations ….") (emphasis in original).

[115] Ex. 42, '034 Reexam. Interview Summary.

[116] Ex. 43, '034 Reexam. NFOA Response Appendix L.



37.     And in the '035 Reexamination, Kove also argued that each server must know what

each location server contains:

> However, OracleSG is completely silent with respect to the aspect of the limitation
> that requires, well data location server in a data location network being configured
> to determine the data location server that contains the location information.[117]

> This allows each data location server to (1) itself determine, using the function,
> which other data location server stores the location information for a particular unit
> of data (*id.*, 14;46-15.15); (2) transmit a list of location servers which contains the
> location serverknow11to have the location information (*id.*, 17:65-18:8); and (3)
> transmit the algorithm or function to the client to enable the client lo determine
> which one of the data location servers stores the location information for the
> particular unit of data (*id.*, 14:46-15:15; 18:3-8).[118]

---

[117] Ex. 35, '035 Reexam. Response at 33.

[118] Ex. 35, '035 Reexam. Response at 15.

38.     Kove also stated that using rejected claim 6's hash table to index the ONAG servers would have required "reengineering and reconfiguration":

> Attempting to modify ONAG to enable maintaining location information in an indexed location store indexed by a hash table in the Name Servers requires significant reengineering and reconfiguration of ONAG. Therefore, a POSA would not have had a reasonable expectation of success to configure ONAG to satisfy claim 6's requirement.[119]

## THE PATENT OFFICE'S RELIANCE ON KOVE'S DISCLAIMING STATEMENTS

39.     In both the '034 and '035 Reexaminations, the Patent Office withdrew its rejections based on Kove's argument that Oracle's Names Servers were incapable of knowing the contents of other names servers due to their purported limiting hierarchical organization. The Patent Office stated:

> If Oracle's Names Server had this ability, there would be no need to pass requests up and down a hierarchy of Names Servers; it could determine on its own the Names Server having the desired information and send the request directly to that Names Server.[120]

40.     In the '036 Reexamination, the Patent Office didn't explain why it withdrew the rejections, instead adopting Kove's descriptions as its own. The Patent Office stated:

> Based on applicant's remarks (p29-37, p41-42) presented on 8/04/2022, The cited prior art fail to teach individually or in combination: "…**transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server**…" and "…wherein the redirect message contains information for use by the client to calculate a location of a different data location server…" of claim 17; and

> "if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client…" and "where in the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of the data location server…" of claim 18.[121]

---

[119] Ex. 32, '034 Reexam. Response at 70.

[120] Ex. 44, '035 Reexam. NOIRC at 10, Ex. 45, '034 Reexam. FOA at 25.

[121] Ex.46, '036 Reexam. NOIRC at 4.

41.     In the '034 Reexamination, the Patent Office's reasons for allowing claims 3, 6, 10, and 14 specifically point to the purportedly hierarchical configuration of Names Servers as the reason it does not have the requisite knowledge of other location servers' contents. The Patent Office stated:

> In regards to independent claims 10 and 14 and dependent claim 3, the claims all require the use of a "redirect message comprising information for finding a location server known to have location information relevant to the location query" (as found in claim 3, similar language in claims 10 and 14). Oracle's Names Servers forward name requests up and down a hierarchy of Names Servers until the Names Server containing the desired information is reached, and the desired information is returned in the same way, traversing the network of Names Servers. This fact gives evidence to the fact that any given Names Server has no information regarding which specific Names Server stores a desired information item. Were any given Names Server to have such information, then the Names Server would simply pass the request directly to that Names Server, instead of forwarding the request up and down a hierarchy of Names Servers. Since any given Names Server has no information regarding which specific Names Server stores a requested item, there would be no way for the Names Server to include such information in a redirect message returned to the requesting device.[122]

> In regards to dependent claim 6, the claim requires that "the location information in the location server is maintained in an indexed location store indexed by a hash table." If Oracle's Names Server had this ability, there would be no need to pass requests up and down a hierarchy of Names Servers; it could determine on its own the Names Server having the desired information and send the request directly to that Names Server.[123]

42.     Amazon moved for the following additional claim constructions to address Kove's disclaimers:[124]

---

[122] Ex. 45, '034 Reexam. FOA at 24-25.

[123] Ex. 45, '034 Reexam. FOA at 25.

[124] Dkt. 539 at 9.

## APPENDIX A

| Claims | Terms | Proposed Constructions |
|---|---|---|
| '640: 17, 18, 24<br>'170: 1, 2, 6, 8, 9, 12, 15<br>'978: 1, 3, 6, 10, 14, 17, 23, 24, 30, 31 | "network" / "system" | [network/system] **arranged in a non-hierarchical, cluster topology** |
| '640: 17, 18, 24<br>'170: 1, 2, 6, 8, 9, 12, 15<br>'978: 1, 3, 6, 10, 14, 17, 23, 24, 30, 31 | "location server" | a network-attached component that maintains, **for satisfying every request for the location of data on the network,** a set of **at least one of (1)** identifier/location mappings **or (2) information about the location of such mappings** that are modified or returned in response to **all** location request messages from clients |
| '640: 17, 18<br>'170: 1, 2, 5, 6, 8, 9, 12<br>'978: 1, 3, 6, 10, 17, 23, 24, 30, 31 | "providing" / "determin[e/ing]" / "retrieving" location information or servers | providing, **without performing any request iterations,** … location information / determin[e/ing], **without performing any request iterations,** … location servers / retrieving **in two or fewer request iterations** location information |
| '640: 17, 18<br>'170: 6, 15<br>'978: 3, 10, 14 | "return" / "sending" / "transmit[s/ting]" a redirect message | return / sending / transmit[s/ting] a redirect message **without performing any request iterations** |

On January 13, this Court denied that motion "without prejudice to the presentation of the claim construction arguments during briefing on summary judgment."[125]

## DR. GOODRICH WILL TESTIFY ABOUT THE CLAIMS' NON-HIERARCHICAL ARCHITECTURE AT TRIAL

43.     For his invalidity analysis, Dr. Goodrich interpreted the claims in the same way as he and Kove did before the Patent Office. For example, in his deposition on his invalidity report in this case, Dr. Goodrich testified:

> Amazon Atty: So it's your opinion that each location server must be structured in a nonhierarchical configuration, right?
>
> Goodrich: That it is my opinion that, again, just based on the language of the claim itself, it requires -- in order to have this ability, based on the specification of the '640 patent, requires that the logical

organization among the location servers must be a nonhierarchical clustered topology. [126]

44.    Dr. Goodrich further testified that Amazon's proposed constructions incorporating such a non-hierarchical configuration would be redundant:

>Amazon Atty: In your view, what would be the harm of the Court further construing those claims to include those requirements?
>
>…
>
>Goodrich: I'm not an attorney. But as we've discussed this morning, I've been told by attorneys that it's helpful if claim construction does not confuse a jury, and to be adding on what are, in my opinion, additional limitations that are already there in the claims and are clear, in my opinion, that this is required, I believe it would be redundant, which is potentially confusing to a jury to add on that additional language that's already there. [127]

45.    Dr. Goodrich also testified that the jury at trial would understand the claims' non-hierarchical requirements based on the "sound principles" he explains to them. [128]

>Amazon Atty: Do you believe a juror reading Claim 17 of the '640 patent would understand that it requires a nonhierarchical topology for the data location servers?
>
>…
>
>Goodrich: I mean, we're not in trial right now, but I would anticipate that after I explain these terms -- this is very speculative, of course -- but after I explain these terms to the jury, the way that the Court has already construed them, what is implied by those constructions, I believe that the jury will be able to understand what is required.  That's my hope.  That then they will render their decision based on sound principles that I've explained to them.
>
>Amazon Atty: Do you think a single juror will know what a nonhierarchical topology is?
>
>…
>
>Goodrich: I would answer that similarly, that I will do my best – that's my

---

[126] Ex. 47, 09/11/2023 M. Goodrich Dep. Tr. 470:4-10.

[127] Ex. 47, 09/11/2023 M. Goodrich Dep. Tr. 481:7-22.

[128] Dr. Goodrich excludes claims 6, 17, 23-24, and 30, which he states were not limited either way by Kove during reexamination. *See, e.g.*, Ex. 48, 08/18/2023 Goodrich Report ¶ 64.

intent certainly. I know it's still a long ways in the future. I'll do my best to explain to the jury all the concepts at play in this case, some of them are admittedly complicated. But I believe I will be able to explain that to a jury, even to a single juror on the panel, in a way that then they would understand and be able to render a verdict that is based on sound principles.[129]

## THE KOVE PATENTS DON'T TEACH ANY CONNECTION BETWEEN REDIRECTION, HASHING, AND ARCHITECTURE

46.     The Kove Patents describe the NDTP invention as applying to all topologies. For example, the '978 Patent states:

> Additionally, as illustrated in FIGS 5 and 6, the NDTP server may be a network of NDTP servers configured in any number of ways. For example, FIG. 5 illustrates a flat NDTP server topology using clustering, or a distributed topology using replication, where each of the NDTP servers 12 in the cluster may contain a different portion of a pool of associated identifier and location information. In another alternative embodiment, a hierarchical NDTP server topology, such as the NDTP server tree 52 shown in FIG. 6, may be utilized. In the NDTP server tree 52 topology, each node 54 may be an individual NDTP server 12, a cluster 50 of NDTP servers, an NDTP server tree or any combination of these arrangements.[130]

> An NDTP server hierarchy 100, such as illustrated in FIG. 21, permits identifier/location association data to be owned and physically controlled by many different entities.[131]

47.     The '640 and '170 Patents specifically pronounce that there are two NDTP redirect mechanisms that allow for its use with all topologies. They state: "NDTP provides two mechanisms for server redirection. The redirection mechanisms allow cluster and hierarchical topologies, and mixtures of such topologies…"[132]

48.     To support the connection between redirect messages and non-hierarchical clusters, at deposition Dr. Goodrich pointed to the description of the "client-centric approach" as the claimed redirection mechanism, alleging that the "server centric approach" would be the one

---

[129] Ex. 47, 09/11/2023 M. Goodrich Dep. Tr. 482:2-483:12.

[130] Ex. 3, 7:41-52.

[131] Ex. 3, '978 patent, 19:46–48.

[132] Ex. 1, 14:28-31, Ex. 2, 14:43-45.

that applies to hierarchical topologies. He testified:

> So if we go, for example, in the '978 patent, now to the discussion in Column 18, beginning at Line 60, and going through 25, that then is now talking about the hybrid hierarchical and clustered topologies in Column 19. Right before that it talks about the redirect messages and how there's a client-centric approach and a server-centric approach. These are different embodiments that are disclosed in the patent. And the first one, the client-centric approach, is now the one that is being recited in the claims; namely, that a client issues a request to a data location server. If it does not have the correct information, it sends back an answer for the client for it to then contact another server. And then it says: A successful response from the second server 120b is then sent to the client. Arrow 4. This is with respect to Figure 19 in the '978 patent. And then it goes on to describe server-centric approach that could apply to a hierarchical topology. And then it goes on and explains in more detail the difference between hybrid, hierarchical, and cluster topologies; hence, to a person of ordinary skill in the art who is reading this, would understand that that server-centric approach could be used would involve things that could be called "redirect messages," but now in a server-centric way where it's forwarding those requests on to another server, say, higher or lower in a hierarchy, that then it says: An important aspect of this topology -- I'm now reading in Column 19 at Line 20 -- An important aspect of this topology is that it pushes processing emphasis towards servers 130 A, B rather than towards clients.[133]

49.     The Kove Patents expressly describe both client-centric and server-centric approaches as supporting both hierarchical and non-hierarchical architectures. For example, the '978 Patent states that both the client-centric and server-centric approaches work for building hierarchical and non-hierarchical systems.

> Client-centric and server centric approaches can be used to build NDTP server clusters, trees, trees of clusters, and any other useful configuration.[134]

> Hierarchical and clustered topologies may be created using a server-centric or client-centric approach. One illustration of a cluster topology 50 is shown in FIG. 5. A mixed topology containing hierarchical and clustered elements in shown in FIGS. 6 and 21. The primarily hierarchical topology of the embodiment of FIG. 21 can allow for a single administrative entity 102 to manage the NDTP cluster.[135]

And the '640 and '170 Patents describe the "client-centric" and "server-centric" approaches as

---

[133] Ex. 47, 9/11/2023 Goodrich Dep. Tr. 507:2-508:16.

[134] Ex. 3, 19-34-36.

[135] Ex. 3, 19:39-48

compatible with both hierarchical and non-hierarchical structures. In the '640 and '170 Patents' descriptions of the "Client-Centric Approach," they specifically describe how it applies to hierarchical topologies, emphasizing the "highly configurable" nature of NDTP:

> This design constructs operating patterns for (1) redirection, (2) index operations, and (3) hierarchical or cluster topologies. The important point is that the Network-Distributed Tracking Protocol is designed to support highly configurable methods for processing index related operations.[136]

And in the '640 and '170 Patents descriptions of Fig. 12's client-centric and Fig. 13's server-centric approaches, they explain that each applies to both hierarchical and cluster organizations:

> Behind the scenes, the server constellation 110 could also be using a hierarchical organization or a cluster organization for managing indices. The important point of this topology is pushing processing emphasis toward clients (not shown) rather than toward servers 120a,b.[137]

> 50.    This design constructs operating patterns for (1) index operations and (2) hierarchical or cluster topologies…Fig. 13 illustrates an hierarchical topology for client interaction with NDTP servers 130.[138]

## DR. GOODRICH APPLIES A 'CERTAINTY AND SPECIFICITY' REQUIREMENT FOR THE KNOWLEDGE CLAIMS DURING HIS INVALIDITY ANALYSIS

51.    For his invalidity opinions, Dr. Goodrich opines that the Kove Patents' use of redirect messages and hashing means that each location server must know which server contains the relevant location information with "certainty and specificity." He uses the certain and specific description 129 times throughout his invalidity analysis. For examples, Dr. Goodrich stated:

> Furthermore, claim 1 requires that each location server is configured to determine which location server stores the sought-after location information with certainty and specificity based on the plain language of claim 1.[139]

---

[136] Ex. 1, 17:22-26; Ex. 2, 17:38-39.

[137] Ex. 1, 18:9-13; Ex. 2, 18:23-27.

[138] Ex. 1, 18:36-58; Ex. 2, 18:49-60.

[139] Ex. 48, 08/18/2023 Goodrich Report ¶ 204.

Claims 6, 8, and 15 require a redirect message that contains the location server(s) that store the sought-after location with certainty and specificity because the redirect message includes the location server known to have the location information.[140]

Claims 17 and 18 require that the redirect messages includes information for the client to calculate the location of the location server that stores the sought-after location string with certainty and specificity.[141]

Claims 3, 10, and 14 of the '978 patent require that the redirect message contain information that allows for finding the location server storing the sought-after location with certainty and specificity because claims 3, 10, and 14 require the redirect message to include the location server known to have the location information.[142]

Furthermore, claim 1 requires that each location server is configured to determine which location server stores the sought-after location information with certainty and specificity based on the plain language of claim 1. For example, claim 1 states "at least one of the plurality of data location servers includes location information associated with the identifier string ... each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string." In my opinion, the Court ordered constructions and/or AWS's alternative constructions do not affect this requirement. Therefore, claim 1 requires that each location server is configured to determine which location server stores the sought-after location information with certainty and specificity based on the Court ordered constructions and AWS's alternative constructions.[143]

52.     Dr. Goodrich further opined that non-hierarchical configurations are required to practice this "certainty and specificity" requirement. Dr. Goodrich stated:

I agree with Kove that the plain language of claims 17 and 18 of the '640 patent requires each server in the data location server network to be capable of transmitting information to the client via a redirect message that must contain information that would allow the client to determine the data location server with the location string information. I also agree with Kove that for each data location server to have this capability, they must be structured in a non-hierarchical cluster configuration, because not every server ordered in a hierarchical topology would have this capability. As such, Kove's statements did not change the scope of claims 17 or 18 (or, by extension, claim 24, which depends from claim 18) of the '640 patent. The

---

[140] Ex. 48, 08/18/2023 Goodrich Report ¶ 218.

[141] Ex. 48, 08/18/2023 Goodrich Report ¶ 376.

[142] Ex. 48, 08/18/2023 Goodrich Report ¶ 461.

[143] Ex. 48, 08/18/2023 Goodrich Report ¶ 461.

statements merely explained the claims for what they are.[144]

Kove presented similar explanations for claims 1, 6, and 15 of the '170 patent, all of which have particular claim limitations requiring *each location server in the server network to know which location server among them contains the location of the desired data*.[145]

53.     In his invalidity report, Dr. Goodrich distinguishes Amazon's prior art based on his view of whether they satisfy this "certainty and specificity" requirement. Dr. Goodrich stated:

Minami and RFC1034 and/or BIND are completely devoid of teachings or suggestions to allow for file servers or name servers to send a redirect message that includes the location server known to include the sought-after location with certainty and specificity.[146]

Furthermore, Skagerwall's servers cannot determine which server stores the sought-after location, with certainty and/or specificity.[147]

Furthermore, each file server cannot determine which server is configured to store the record. In Neimat, if the first file server does not include the sought-after record, the first file server forwards the request to the second file server, which may also may not have the sought-after record. The file servers merely forward from one file server to the next in an attempt to find the sought-after record. The file servers do not know and cannot determine which file server is storing the sought after record with any specificity or certainty.[148]

Neimat, RFC1034 or BIND, and/or Karger '618/'420 are completely devoid of teachings or suggestions for organizing location information across location servers using a hash function and allowing file servers to determine which server is storing the sought after information with specificity or certainty by applying a hash function to an identifier.[149]

54.     Dr. Goodrich further asserts that hierarchical configurations, like the DNS prior art references, don't know what each other server contains. Dr. Goodrich opines:

However, as RFC1034 teaches, DNS's names servers cannot determine with

---

[144] Ex. 48, 08/18/2023 Goodrich Report ¶ 56.

[145] Ex. 48, 08/18/2023 Goodrich Report ¶ 57.

[146] Ex. 48, 08/18/2023 Goodrich Report ¶ 347.

[147] Ex. 48, 08/18/2023 Goodrich Report ¶ 123.

[148] Ex. 48, 08/18/2023 Goodrich Report ¶ 292.

[149] Ex. 48, 08/18/2023 Goodrich Report ¶ 306.

certainty or specificity which names server stores the sought-after location information. RFC1034 states "a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." Therefore, the names server may not know which name server stores the sought-after location.[150]

## S3 AND DDB ARE HIERARCHICAL

55. Kove's March 2, 2023 infringement contentions were the first contentions to describe S3 and DDB as meeting any non-hierarchical requirement.[151]

56. Both S3 and DDB are organized with ███████████████ throughout their design. Both S3 and DDB are organized into █ different global regions, and each region is divided into different availability zones.[152] For both S3 and DDB, a user anywhere in the world can store or make a request for data in any other location.[153] For example, Dr. Goodrich testified:

> Amazon Atty: And you can store that data anywhere in the world, right?
>
> Goodrich: Broadly speaking, more or less, yes.
>
> Amazon Atty: For example, you could be in northern Virginia and store data anywhere that S3 – excuse me – that Amazon has S3 servers, right?
>
> Goodrich: I believe that is correct. Yes.
>
> Amazon Atty: So you can store in Ohio or Sydney or Beijing, right?
>
> Goodrich: Yes. I think those are all possible places you can store S3 data.[154]

57. Kove asserts that S3 and DDB infringe the Kove Patents within each region. Dr.

---

[150] Ex. 48, 08/18/2023 Goodrich Report ¶ 219.

[151] Ex. 5.

[152] Ex. 49, KOV_00220187 (AWS Global Infrastructure webpage).

[153] Ex. 49, KOV_00220187 (AWS Global Infrastructure webpage).

[154] Ex. 14., 09/09/2023 M. Goodrich Dep. Tr., 297:22-298:7.

Goodrich opines:

> Within Amazon S3, ██████████████████ — for each group of regions
> that ████████████████████████████████████████████████████████
> ████████████████████ — constitutes "a system having a plurality of location servers
> for store and retrieve location information."[155]

> However, the asserted claims read on DynamoDB when it operates in a given
> region. [156]

58. Dr. Goodrich has never used S3 or DDB and didn't test them as part of his work of

this case. For example, Dr. Goodrich testified:

> Amazon Atty: Have you ever personally used S3?
>
> Goodrich: That I used, no.
>
> Amazon Atty: Okay. So you've never used S3 Intelligent, right?
>
> Goodrich: Correct.
>
> Amazon Atty: You've never used S3 Standard, right?
>
> Goodrich: That's right.
>
> Amazon Atty: And you've never used S3 One Zone, right?
>
> Goodrich: Not directly.
>
> Amazon Atty: And you've never used S3 Glacier, right?
>
> Goodrich: That's right, also not directly myself.
>
> Amazon Atty: What do you mean?
>
> Goodrich: Like, I've directed students to do these things, but I've
> not done so myself directly.
>
> Amazon Atty: So you've never personally used S3 One Zone or S3
> Glacier, right?
>
> Goodrich: That's right.

---

[155] Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 128.

[156] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E ¶ 74.

Amazon Atty: Have you ever personally used DDB?

Goodrich: No.

Amazon Atty: Okay. So before issuing your infringement opinions in this case, you had not ever personally used S3 or DDB, right?

Goodrich: That's right.[157]

59. Dr. Grama tested both S3 and DynamoDB, and included the results in his noninfringement report.[158] Dr. Grama stored and retrieved data all over the world from two locations: Ohio and Sydney, Australia.[159] Dr. Grama measured the response time for these requests to be resolved and determined that the results had consistently distinct results depending on each separate region storing the requested data.[160]



---

[157] Ex. 14, 09/09/2023 M. Goodrich Dep. Tr. 282:14-283:21

[158] Ex. 8, 08/18/2023 Grama Report ¶¶ 168-97.

[159] Ex. 8, 08/18/2023 Grama Report ¶¶ 168-97.

[160] Ex. 8, 08/18/2023 Grama Report ¶¶ 168-97.







60.     DDB's components, ██████████████████████████████████████████████
████████████████████. DDB's first General Manager and current Amazon Vice President
of Database, Analytics, and Machine Learning, Dr. Swami Sivasubramanian testified:



> Kove Atty: How did you set it for reads?
>
> Sivasubramanian: DynamoDB is not ████████████████████
> ████████████████████████████████████████████████████
> ███████████████████. So you have to – so for a get item, a simple one, it
> might be different from, let's say, a scan API or – and the query API,
> ████████████████████████████████████████████████████
> ████████████████████████████████. And then we think about it and
> then see.[161]
>
> Sivasubramanian: Again, as I said, DynamoDB has ███████████████
> ████████████████████████████████████████████████████.[162]
>
> Kove Atty: What is the distinction between a ████████████████████
> ████████████?

---

[161] Ex. 50, 05/10/2023 S. Sivasubramanian Dep. Tr., 136:6-19.

[162] Ex. 50, 05/10/2023 S. Sivasubramanian Dep. Tr., 147:2-5.

…

Sivasubramanian: ███████████████ can mean many different things depending on how the ███████████ and so forth. If it is purely ██████████████████. But DynamoDB is a hierarchical system ██████████████████████████████████. And depending on which query happens, we need to know ████████████████████████████████████ [163]

Dr. Goodrich describes the organization of DDB components as structured using a ████████
█████████:

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ [164]

This location information is maintained ████████████ and is updated as ████████████████ [165]

DynamoDB includes a service ██████████████████████████████ [166]

61.     The hierarchical nature of DDB's ████████████████████████
████████████████████████████████. An annotated excerpt of this source code

---

[163] Ex. 50, 05/10/2023 S. Sivasubramanian Dep. Tr., 161:1-15.

[164] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E ¶ 23.

[165] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E ¶ 33.

[166] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E ¶ 57.

is below.[167]



62.    S3 is also organized into ███████████████. S3 components are

organized into ████████████████████████████████████████████████████

████████████████████████.[168]

---

[167] Ex. 51, AWS_SRC_CODE_000000157; Ex. 8, 08/18/2023 Grama Report ¶¶ 336-37.

[168] Ex. 52, AMZ_KOVE_000062766.



63.    ██████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████[169]██████████████████████████████:

██████████████████████████████████████

████████████████[170]

64.    The S3 source code confirms ███████████████████████

---

[169] *See* Ex. 53, AMZ_KOVE_000086390

[170] Ex. 54, 07/20/21 J. Sorenson Dep. Tr., 54:22-55:2.

███████████████████. An excerpt of the code showing this is below:[171]

███████████████████████████████████████████

65.　　Amazon's engineers developed ████████████████████████. As

Allan Vermeulen, former CTO of Amazon and one of the founding engineers of S3, testified:

> So that is, in fact, how any index system but certainly how S3 works is you have ████████████████ like that. So at each particular level, the analogy of the encyclopedia is -- is kind of accurate, but obviously, that -- I mean, it's an oversimplification like any analogy. The reality is you have to ██████████ . . . And I can't remember ████████████ . I want to say ████████████ .[172]

66.　　The S3 source code for ██████████████████████

█████████████.[173]

██████████████████████████████████████████████

### THE ███ STORE █████████████

67.　　Caching is a technique to improve efficiency by storing a small subset of the full

database in a smaller, faster storage memory location to improve performance in computer

---

[171] Ex. 55, AWS_SRC_CODE_000001405 at lines 56-64; *see also*, Ex. 56, AWS_SRC_CODE_ 000001396; Ex. 8, 08/18/2023 Grama Report ¶¶ 359-361.

[172] Ex. 57, 05/23/2023 A. Vermeulen Dep. Tr., 82:1-83:14, Ex. 58, 04/27/2023 J. Hamilton Dep. Tr., 114:13-19.

[173] Ex. 59, AWS_SRC_CODE_000000798 at AWS_SRC_CODE_000000803; Ex. 8, 08/18/2023 Grama Report ¶¶ 357-58.

systems.[174]

68.     Co-inventor John Overton testified that the technology underlying the Kove Patents "was not about caching."[175] And he testified that he didn't invent caching.

> Amazon Atty: You didn't invent the concept of caching data; did you?
> Overton: That is correct.[176]

69.     Dr. Overton also testified that "one very foundational component of our patents and of the technology is to eliminate caching."[177] And in the '109 Reexamination, Kove stated that NDTP was designed to replace storing caches:

> That is, the Inventors invented a protocol that *replaced storing caches* and state information across the network, with a stateless approach that allows clients to compute the location of data's location information based on a dynamically created relationship between the data and its location. The Inventors sought to find a way to achieve seamless dynamic and spontaneous global search and retrieval of data across a distributed network. The result are the claims embodying the Inventors' network distributed tracking protocol ("NDTP").[178]

THE ███ STORE ████████████

70.     The ████████████████████████. As Dr. Goodrich stated, "[e]ach ████

████████████████████████████████████████████████████████████████

████████████████████████████."[179] Dr. Goodrich also stated that ████████████

████████████████████████████████:

> Using ████████████████, requests from webservers are directed ████████
> ████████████████████████████. Accordingly, ████████
> ████████████████████████████████

---

[174] *See, e.g.,* Ex. 60, D. Lenoski, *et al.,* "The Stanford DASH Multiprocessor," IEEE Computer, pp. 63-79 (March 1992); Ex. 8, 08/18/2023 Grama Report ¶¶ 59-62.

[175] Ex. 61, 05/17/2023 J. Overton Dep. Tr., 732:14-21.

[176] Ex. 61, 05/17/2023 J. Overton Dep. Tr., 699:1-3.

[177] Ex. 61, 05/17/2023 J. Overton Dep. Tr., 733:4-15.

[178] Ex. 10, 07/03/2023 '109 Reexam. Response at 8 (emphasis added).

[179] Ex. 17, 07/06/2023 Goodrich Corrected Report, Exhibit D, ¶ 27.

████████████████████████.''[180]

71.    Not all ████████████████████. As Dr. Goodrich testified:

Amazon Atty: And the ██████████████████████, right?

Goodrich: No, they do not.[181]

72.    And the ██████████ doesn't determine what information ████████████████

███. Dr. Goodrich testified that the ██████████████████████████████:

Amazon Atty: So the ████████████████████████, right?

Goodrich: ████████████████████████████████

████████████.[182]

73.    The ████████████████████████████████. An annotated

excerpt of the S3 source code is below, which shows that ████████████████████████

████████████████.[183]



74.    Uncertainty is inherent to a cache. From April 2016-September 2020, the ████

---

[180] Ex. 17, 07/06/2023 Goodrich Corrected Report, Exhibit D, ¶ 27.

[181] Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 310:9-10.

[182] Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 268:1-5.

[183] Ex. 62, AWS_SRC_CODE_000001084; Ex. 8, 08/18/2023 Grama Report, ¶ 281.

██████████████████████████████████████.[184] Despite his certainty and specificity requirement in his infringement analysis, Dr. Goodrich acknowledged the uncertainty that exists about what items are requested on a database:

> The challenge from a design perspective is that ████████████████████████ ██████████████████████████, and so AWS would not be able to determine—in advance—████████████████████████████████.[185]

75.     Per his testimony, Dr. Goodrich never considered the process for determining ███████████████████████████████████████████████████████████████ ████████████████████████. He testified:

> Amazon Atty: You didn't consider what █████████████████████ ████ used in forming your opinions on infringement, right?

> Goodrich: It wasn't - - it wasn't relevant. It wasn't needed for my analysis.

> …

> Amazon Atty: You didn't consider ████████████████████████ ████ used in forming your opinions on infringement, right?

> Goodrich: That analysis was not necessary for my opinions.

> Amazon Atty: So the answer is no?

> Goodrich: The answer is no, it was not necessary for my opinions, as I've stated now three times.[186]

## ██████ DON'T LOCATE DATA ITEMS

76.     Kove's expert Dr. Goodrich identifies ████████ as the "location" in the required "identifier/location mappings."[187] As Dr. Goodrich testified, both identifiers and location

---

[184] Ex. 63, AMZ_KOVE_000401272.

[185] Ex. 64, 07/06/2023 Goodrich Corrected Report ¶ 136.

[186] Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 311:13-313:16.

[187] Ex. 64, 07/06/2023 Goodrich Corrected Report, ¶ 87 ("█████████████████████████ the parties agreed construction of 'location…'").

information are used in the data retrieval process.

> Amazon Atty: Metadata would include location information, right?
>
> Goodrich: In this case, yes.
>
> Amazon Atty: And location information is used to retrieve the object for the user, right?
>
> Goodrich: That's right.
>
> Amazon Atty: And metadata would also include identifiers, right?
>
> Goodrich: Yes.
>
> Amazon Atty: And identifiers are also used to retrieve the object for the user, right?
>
> Goodrich: That's right.
>
> …
>
> Amazon Atty: And okay -- but the identifier isn't the same thing as the location information, right?
>
> Goodrich: No, not in this case, no, not what I've identified as the identifier in S3 for the sake of the claims.[188]

77. The source code for ███ contents shows that they don't provide any of the

████████████████████████████████████████████████████████████

███.[189] An excerpt of this source code below ████████████████████████

████████████████████.[190]

---

[188] Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 299:12-300:10.

[189] Ex. 8, 08/18/2023 Grama Report, ¶ 264. (citing to Ex. 13, 06/04/2021 A. Vermeulen Dep. Tr., 166:6-10 (████████████████████████████████████████████ ")).

[190] Ex. 65, AWS_SRC_CODE_000001058 at AWS_SRC_CODE_000001059; Ex. 8, 08/18/2023 Grama Report, ¶ 264.



78.	The ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. S3 Senior

Principal Software Engineer Seth Markle testified: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."[191] The ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[192] Mr. Markle

testified:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[193]

79.	In the reexamination proceedings, Kove distinguished the invention's "location" as

dynamic and different from the "static" prior art "locations." Kove explained the need to support

"dynamic" associations between location and identifier because the data moves on distributed

databases. Kove stated:

> The Inventors understood that maintaining a static relationship of data and its
> location in traditional distributed data collection environments (i.e., tree structures)
> would become untenable, given the growing unreliability of locating and retrieving
> dispersed data, particularly where the data in the components of the network could
> change location, unbeknownst to one another. The Inventors invented a protocol
> that dynamically creates relationships between data and its locations using an
> algorithm or function.[194]

80.	S3 requires multiple additional steps to locate and retrieve an object after the

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Specifically, the ▮▮▮▮▮▮ sends the information obtained from

---

[191] Ex. 66, 04/19/2023 S. Markle Dep. Tr., 86:12-17 (stating that "▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮");

[192] Ex. 67, AWS_SRC_CODE_000001109.

[193] Ex. 66, 04/19/2023 S. Markle Dep. Tr., 86:18-20; Ex. 8, 08/18/2023 Grama Report ¶¶ 266.

[194] Ex. 34, '034 Reexam. Response at 9.

████████████████████████████████.[195]

81.  And using the ████████████████████████████████████

████████████.[196] Only then can ██████████████████████████████████.[197]

82.  ████████████████████████████████████. ████████████████████

███████████████████████████████████████████████████████████████

██████. In essence, it knows ████████████████████████████████████.[198]

83.  Dr. Goodrich didn't consider ██████ in his analysis and didn't offer any opinion

that it contains the claimed location information. He testified:

> Amazon Atty: Did you conclude that the ████████████ contains location information?
>
> Goodrich: I believe it does, yes.
>
> Amazon Atty: Did you conclude that the ████████ contains location information?
>
> Goodrich: Yes.
>
> Amazon Atty: Did you conclude that the ████████ contain location information?
>
> Goodrich: Yes.
>
> Amazon Atty: Did you conclude that the ██████████████ contain location information?
>
> Goodrich: Yes.
>
> Amazon Atty: And did you conclude that ██████ contains location information?



---

[195] Ex. 8, 08/18/2023 Grama Report, ¶ 130.

[196] Ex. 8, 08/18/2023 Grama Report, ¶ 130.

[197] Ex. 8, 08/18/2023 Grama Report, ¶ 130; Kove's expert Dr. Goodrich states that "the data for each object

████████████████████████████████████████████████████████████████[197]

[198] Ex. 8, 08/18/2023 Grama Report, ¶ 265; Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012901.

Goodrich: I don't recall having an opinion about ▮▮▮▮. Is there a place in my report you believe I addressed that?

Amazon Atty: No. Did you conclude that the ▮▮▮▮ contain location information?

Goodrich: I don't recall having that opinion. Is there somewhere in my report where you believe I said that?

Amazon Atty: No. Did you conclude that the ▮▮▮▮▮▮ contains location information?

Goodrich: I didn't have to render an opinion about that with respect to my analysis.[199]

### ▮▮▮▮▮▮ DON'T STORE ITEM LOCATIONS

84.     DDB's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As Kove's technical expert, Dr. Michael Goodrich, explains, a '▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮."[200] In his infringement report, Dr. Goodrich states that the ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[201]

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[202]

---

[199] Ex. 14, 09/09/2023 M. Goodrich Dep. Tr. 307:4-308:11.

[200] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 18; Ex. 68, AMZ_KOVE_000065279.

[201] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 32 (citing to all of Appendix B, Dr. Goodrich's 204-page appendix listing alleged source code evidence.). Amazon hasn't attached that appendix. Instead, Amazon has included and referenced specific portions of source code.

[202] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 26; Ex. 21, 01/29/20 J. Sorenson Dep. Tr., 120:8–14; Ex. 69, AMZ_KOVE_000064878 (describing ▮▮▮▮▮▮ ▮▮▮▮); Ex. 70, AMZ_KOVE_000483279 at AMZ_KOVE_000483279 ("The ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.").

For instance, a request is made (e.g., a GetItem), ████████████████████████████████████████████████████████████████████████████████[203]

85.     In DDB, ████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████).[204] The DDB source code identifies ████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████. An annotated excerpt of this source code is

below.[205]

---

[203] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 27; Ex. 71, AMZ_KOVE_000074059 at AMZ_KOVE_000074060 ("███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"); Ex. 72, AMZ_KOVE_000075263 at AMZ_KOVE_000075264 (similar).

[204] Ex. 22, AMZ_KOVE_000007001 at AMZ_KOVE_000007013–AMZ_KOVE_000007014.

[205] Ex. 8, 08/18/2023 Grama Report, ¶ 232, Ex. 51, AWS_SRC_CODE_000000157.

None of those entries: has any information about where any data item is stored or the "primary key." Dr. Goodrich testified:



> Amazon Atty: And the ██████████████████████
> ██████████████████, right?
>
> Goodrich: Yes.[206]
>
> Amazon Atty: Does the ██████████████████████
> ████████?
>
> Goodrich: It associates ████████████████████
> ██████████████████████████.
>
> Amazon Atty: Okay. So it associates ██████████
> ████████, right?
>
> Goodrich: That's right.[207]

86.    DDB provides user flexibility by allowing ██████████████████.[208]

One option for the ████████████████████████████████████████[209]

The other option is to ████████████████████████████[210]

The Amazon DDB documentation explains:

> A simple primary key consists of a single attribute and a composite primary key consists of two attributes: a partition key and a sort key. For example, you can create a simple primary key using "UserID" as an identifier, or create a composite primary key by combining "UserID" as an "Creation_Date" as an item identifier.[211]

> DynamoDB, like MongoDB, is a loosely structured NoSQL data store that allows you to save different sets of attributes on a per-record basis. You only need to

[206] Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 326:5-8.

[207] Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 326:20-327:5.

[208] Ex. 73, AMZ_KOVE_000221659 at AMZ KOVE 000221693; Ex. 23, AMZ_KOVE_000009918 at AMZ_KOVE_000009919.

[209] Ex. 73, AMZ_KOVE_000221659 at AMZ KOVE 000221693; Ex. 23, AMZ_KOVE_000009918 at AMZ_KOVE_000009919.

[210] Ex. 73, AMZ_KOVE_000221659 at AMZ KOVE 000221693; Ex. 23, AMZ_KOVE_000009918 at AMZ_KOVE_000009919.

[211] Ex. 23, AMZ_KOVE_000009918 at AMZ_KOVE_000009919.

predefine the primary key strategy you're going to use:

> • Partition key —The partition key is a single attribute that DynamoDB uses as input to an internal hash function. This could be a player name, game ID, UUID, or similar unique key. Amazon DynamoDB builds an unordered hash index on this key.

> • Partition key and sort key —Referred to as a composite primary key, this type of key is composed of two attributes: the partition key and the sort key. DynamoDB uses the partition key value as input to an internal hash function, and all items with the same partition key are stored together, in sorted order by sort key value. For example, you could store game history as a duplet of [user id, last login]. Amazon DynamoDB builds an unordered hash index on the partition key attribute, and a sorted range index on the sort key attribute. Only the combination of both keys is unique in this scenario.[212]

Dr. Goodrich concludes:

> There are two kinds of primary keys in DynamoDB. The first is called a "partition key" or "hash key," ███████████████████████████████████████████ in which the item will be stored. Items in a table are ███████████████. The second type of primary key is called a "composite primary key," which is composed of a partition key and a "sort key" or "range key." In a table with composite primary key, ███████████████████████████████████████████████████████ ███████████."[213]

87. The role of the ██████████████ doesn't change based on the type of primary key.

The descriptions of the partition key's role for both types of primary key are identical. Under the

'simple key' description, Amazon documentation states:

> DynamoDB uses the partition key's value as input to an internal hash function. The output from the hash function determines the partition (physical storage internal to DynamoDB) in which the item will be stored.[214]

Under the 'composite key' description, Amazon documentation states the exact same description:

> DynamoDB uses the partition key's value as input to an internal hash function. The output from the hash function determines the partition (physical storage internal to

---

[212] Ex. 73, AMZ_KOVE_000221659 at AMZ KOVE 000221693.

[213] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 10.

[214] Ex. 22, AMZ_KOVE_000007001 at AMZ_KOVE_000007016.

DynamoDB) in which the item will be stored.[215]

88. Partitions can store multiple items.

> In a table with composite primary key, "[a]ll items with the same partition key value are stored together, in sorted order by sort key value." When a composite primary key is used, items can have the same partition key value, but they must have different sort key values, which allows for querying of subsets using operators like greater than, less than, equal to, etc.[216]

A slide from Amazon's training and certification program summarizes the roles of the primary key

and the partition key .[217]



The "simple primary key" is only possible when there is only one item per partition key value.[218]

89. Dr. Goodrich equates the "partition key" with the "primary key" when opining that

---

[215] Ex. 22, AMZ_KOVE_000007001 at AMZ_KOVE_000007016.

[216] Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 10 (quoting Ex. 22, AMZ_KOVE_000007001 at AMZ_KOVE_000007016).

[217] Ex. 74, AMZ_KOVE_000101409 at AMZ_KOVE_000101417.

[218] Ex. 22, AMZ_KOVE_000007001 at AMZ_KOVE_000007016 ("In a table that has only a partition key, no two items can have the same partition key value.")

the associations between ████████████████████████████████████████████

████████████████████████████ satisfy the required item associations on the claimed location

servers. In his report, Dr. Goodrich states:

> An item's ████████████████████ is an "identifier" under the parties' agreed construction, i.e., "a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."[219]

> As explained above, ████████████████ store "location information" comprising a ████████████████████████████████. [220]

> The primary key (partition ID) ████████████████, which corresponds to an "entity." As explained above, ████████████████████, i.e., an "entity." The ████████████████████████████████ As explained above, ████████████████████████████████████████████████████████████████████████████████████████ [221]

> Each of the ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ [222]

> ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, as explained above). [223]

Dr. Goodrich testified that ████████████████████████████████ is "why I had this

---

219 Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 83.

220 Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 97.

221 Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 97.

222 Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 105.

223 Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 110.

additional parenthetical" to the key that does.

> Amazon Atty: ████████████████████████?
>
> Goodrich: That's why I had this additional parenthetical that ████████████████.[224]

## AMAZON HAD NO PRE-SUIT KNOWLEDGE OF THE KOVE PATENTS

90.   Kove didn't send Amazon a notice letter or otherwise inform Amazon of the Kove

patents or any alleged infringement before filing the complaint on December 12, 2018. Kove has

produced no such communications, and Dr. Overton testified:

> Amazon Atty: Before Kove filed this complaint on December 12, 2018, did Kove ever send Amazon a letter about the '640, '978, or '170 Patents?
>
> Overton: I don't believe so.
>
> Amazon Atty: And before Kove filed this complaint against Amazon on December 12, 2018, did Kove ever call anyone at Amazon about the '640, '978, or '170 Patents?
>
> Overton: I don't know, but I don't think so.
>
> Amazon Atty: You're the CEO of Kove; right?
>
> Overton: Uh-huh.  I did not.  I don't know if someone else in the company did.
>
> Amazon Atty: So someone else in the company may have done that and you didn't know about it?
>
> Overton: I think that's unlikely.  I can't –you've framed the question in a definitive fashion.  I can't speak for every person and every action that they did.  I can say that I did not for sure.
>
> Amazon Atty: And you're testifying today on behalf of Kove; right?
>
> Overton: Yes.[225]

91.   Amazon engineers and witnesses testified that they had never heard of Kove (or its

predecessors) before the filing of this case. For example, Mr. Vermeulen testified that he had never

---

[224] Ex. 14, 09/09/2023 M. Goodrich Dep. Tr. 334:19-335:2, 276:20-277:2 (acknowledging association between parent and child structures).

[225] Ex. 75, 05/16/2023 J. Overton Dep. Tr., 116:16-117:15.

heard of Kove, the original assignee of the patents (Econnectix), or the two named inventors (Overton and Bailey).

> Kove Atty: Have you ever heard of Kove outside of this litigation?
>
> Vermeulen: Nope. Never heard of -- I have never heard of Kove.
>
> Kove Atty: Do you recall ever reading any of Kove's white papers?
>
> Vermeulen: Nope. I do not recall ever reading a white paper. Like I said, I don't recall a company named Kove until this process.
>
> …
>
> Kove Atty: Have you ever heard of a company named Econnectix?
>
> Vermeulen: No.
>
> Kove Atty: Okay. Have you ever heard of anyone named John Overton?
>
> Vermeulen: No, not until this litigation. I saw that he was the CEO of Kove. That's all I know about him.
>
> Kove Atty: Have you ever heard of anyone named Stephen Bailey?
>
> Vermeulen: No.[226]

92.    Kove's own expert, Dr. Goodrich similarly testified that he had never heard of Kove, the Kove Patents, or any of the patents' previous assignees before he was retained.

> Amazon Atty: Before 2019 you had never heard of Kove's patents, correct?
>
> Goodrich: That is correct.[227]
>
> Amazon Atty: All right. So you were retained by Kove around February 2019 for work on this case; is that correct?
>
> Goodrich: That is my recollection.
>
> Amazon Atty: Okay. And before you were retained by Kove, you hadn't heard of the '640, '170, or '978 patents, right?
>
> Goodrich: I believe that is correct.

---

[226] Ex. 13, 06/04/2021 A. Vermeulen Dep. Tr., 404:7–405:7.

[227] Ex. 47, 09/11/2023 M. Goodrich Dep. Tr., 711:9-11.

Amazon Atty: Okay. And when was the first time you heard of Kove?

Goodrich: I think it was right around that same time.

Amazon Atty: So the first time you heard of Kove, the plaintiff in this case, was around February 2019 when you were retained?

Goodrich: Yes.

Amazon Atty: Are you familiar with a company called OverX?

Goodrich: No, not before this engagement.

Amazon Atty: Okay. Are you familiar with a company called Econnectix?

Goodrich: Not before this engagement.[228]

Amazon Atty: Before you were retained in February 2019 to work on this case, you haven't heard of OverX or Econnectix; is this right?

Goodrich: That is my recollection, yes.[229]

93.     Kove and its predecessor Econnectix stopped trying to sell any products practicing the patents-in suit before September 2006.[230] Dr. Overton testified:

Amazon Atty: So as of September 5, 2006, Econnectix had stopped commercialization efforts for OXLS, Xpress Association Database, XTN, XRN, XSN, and Xpress Database; right?

Overton: It is my belief, yes.

So Econnectix stopped trying to sell any products that embodied the patents-in-suit by September 5, 2006; right?

Overton: We stopped trying to sell these specified products, yes.

…

[228] Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 13:15-14:14.

[229] Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 14:20-15:1.

[230] Ex. 76, Kove First Amended Response to AWS Third Set of Interrogatories (No. 18) at 3.

Amazon Atty: Was Econnectix trying to sell any other products that embody any of the asserted claims of the patents-in-suit?

Overton: Not that I know of.

Amazon Atty: All right. So it's fair to say that Econnectix stopped trying to sell any products that practiced the patents-in-suit before the '640 Patent issued in September 2006; right?

Overton: I think it's fair to say that based on what's written here is accurate and I'm confident that that is accurate.[231]

94.     In 2017 and 2018, Kove representatives, including Dr. Overton, met with Amazon on multiple occasions to try to sell XFM, a Kove product unrelated to the Kove Patents, to Amazon.[232]  As Dr. Overton testified:

Amazon Atty: So that's at least three meetings you had with Amazon personnel during this 2017, 2018 timeframe; right?

Overton:    Yes.  But I don't know that Schick and Majmundar weren't on the same team, for example. It's an issue of specifics.

Amazon Atty: Well, at least three meetings with Amazon personnel during 2017 and 2018, right?

Overton: Yes.[233]

Amazon Atty: So the XFM product does not embody the '978, '170 and '640 Patents; right?

Amazon Atty: I don't know what you're referring to. It is unrelated to the patents-in-suit.

Amazon Atty: This response states that the XFM product does not embody the patents-in-suit, which are the '978, '170, and '640 patents; right?

Overton: That is what it says, yes.

---

[231] Ex. 75, 05/16/2023 J. Overton Dep. Tr., 147:5-148:5.

[232] Ex. 76, Kove First Amended Response to AWS Third Set of Interrogatories (No. 18) at 4.

[233] Ex. 75, 05/16/2023 J. Overton Dep. Tr., 324:17-325:4.

Amazon Atty: Is that accurate?

Overton: Yes.[234]

95.     In the 2017-18 Kove-Amazon communications, Kove promised that the XFM product would drive customers to Amazon and improve DDB performance by a factor of 10x-50x.[235] Dr. Overton testified:

> Amazon Atty: [Referencing a Dr. Overton email to Amazon] It says there: "Kove has demonstrated over and over that external memory accelerates databases. Amazon and Kove could offer additional 10x to 50x performance uptick to," and then you list DynamoDB, Aurora, and RDB; right?
>
> Overton: I see that, yes.
>
> Amazon Atty: DynamoDB is one of the products that Kove claims infringes Kove's patents in this case; right?
>
> Overton: Yes.
>
> Amazon Atty: But here in 2017 before you filed this case, you were proposing how a different Kove product, the SDM product, would work with DynamoDB; right?
>
> Overton: Yes, that's what it says.[236]

96.     In the 2017-18 communications, Kove never mentioned the Kove Patents, or any allegation of infringement, despite having been considering filing patent infringement lawsuits for four years. Dr. Overton testified:

> Amazon Atty: And during the course of Kove's communications with Amazon Web Services in 2017 and 2018, Kove never identified the '978, '170, or '640 Patents to Amazon; right?
>
> Overton: That is correct.
>
> Amazon Atty: And during the course of these communications in 2017 and 2018, Kove never told any Amazon employees that Kove

---

[234] Ex. 75, 05/16/2023 J. Overton Dep. Tr.,141:15-142:2.

[235] Ex. 77, KOV_00164168 at KOV_00164170.

[236] Ex. 75, 05/16/2023 J. Overton Dep. Tr., 297:11-298:9 (discussing Ex. 77, KOV_00164168).

believed Amazon was infringing the '978, '170, or '640 Patents; right?

Overton: I don't know what we told them other than -- that's not included in these documents, but I don't know that we never said anything about the patents to some of these folks. I don't know that.

Amazon Atty: You can't tell me one way or the other whether you told any Amazon employees that Kove believed Amazon was infringing those patents during these discussions?

Overton: I know that I didn't. So, therefore, it's every employee of Kove, and I don't know if someone said that. It is not my knowledge that someone did.[237]

Amazon Atty: Kove tried to get Amazon to buy Kove's products in 2017 and 2018; right?

Overton: I believe so, yes.

Amazon Atty: You were personally involved in those efforts; correct?

Overton: Yes.

Amazon Atty: And as part of those discussions, Kove entered an agreement with Amazon to share information in confidence; right?

Overton: Yes.

Amazon Atty: And Amazon ultimately declined to buy any products from Kove; right?

Overton: Yes.[238]

Amazon Atty: And [privilege log] entries showed that you talked to several law firms about potential patent infringement litigation starting in 2014; right?

Overton: Yes.

…

Amazon Atty: So you began talking to law firms about potential patent infringement litigation before you had the meetings and

---

[237] Ex. 75, 05/16/2023 J. Overton Dep. Tr., 324:17-326:4.

[238] Ex. 75, 05/16/2023 J. Overton Dep. Tr., 116:16-117:15.

communications with Amazon in 2017 and 2018; right?

Overton: Yes.[239]

## AMAZON'S PATENT PORTFOLIO

97.     Amazon is one of the world's largest patent holders. As Amazon Vice President and Chief Intellectual Property Counsel Scott Hayden testified:

> Hayden: Amazon Technologies, Inc., owns approximately 16,000 U.S. patents and 4- to 5,000 non-U.S. patents [and an] additional █████ U.S. pending applications.
>
> Kove Atty: You said ███████ pending applications?
>
> Hayden: Yes.[240]

And Dr. Sivasubramanian testified that he was the named inventor on more than 150 Amazon patents, including U.S. Pat. No. 8,239,571, ██████████.[241]

98.     In Kove's response to Amazon Interrogatory No. 9, Kove states that Amazon's willfulness is "evidenced by the fact that [Amazon] patents and patent applications ... have cited to the Patents-In-Suit."[242] Kove then lists some 400 patents including Amazon's Patent Nos. 8,239,571 and 8,234,403, which both name Dr. Sivasubramanian as an inventor.[243] During the prosecution of the first example, the '571 patent, the Examiner cited Kove's '978 patent in a Non-Final Office Action, and Amazon's outside prosecution counsel responded.[244] The Examiner then allowed the '571 patent.[245]

---

[239] Ex. 75, 05/16/2023 J. Overton Dep. Tr., 327:10-330:3.

[240] Ex. 78, 04/24/2023 S. Hayden Dep. Tr., 362:9-363:1.

[241] Ex. 50, 05/10/2023 S. Sivasubramanian Dep. Tr., 58:6–21.

[242] Ex. 80, Kove First Amended Response to AWS Third Set of Interrogatories (No. 9).

[243] Ex. 80, Kove First Amended Response to AWS Third Set of Interrogatories (No. 9).

[244] Ex. 81 at 5.

[245] Ex. 81 at 5.

99.     During the prosecution of Amazon's U.S. Patent No. 9,590,946, Kove's '978 patent

was cited in a 43-page Information Disclosure Statement along with 1,108 other references, mostly

U.S. patents. As shown below, the '978 Patent is 724th, on page 26.[246]

| | | (Multiple sheets used when necessary) | Examiner | | Not assigned | |
|---|---|---|---|---|---|---|
| | | SHEET 26 OF 43 | Attorney Docket No. | | SEAZN.294C2 | |
| | | | | | | |
| | | **U.S. PATENT DOCUMENTS** | | | | |
| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example:   1,234,567 B1 | Publication Date MM-DD-YYYY | Name | | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
| | 701 | 7,103,645 B2 | 09-05-2006 | Leighton et al. | | |
| | | • • • | | | | |
| | 724 | 7,233,978 B2 | 06-19-2007 | Overton et al. | | |
| | 725 | 7,240,100 B1 | 07-03-2007 | Wein et al. | | |
| | 726 | 7,251,675 B1 | 07-31-2007 | Kamakura et al. | | |
| | 727 | 7,254,626 B1 | 08-07-2007 | Kommula et al. | | |
| | 728 | 7,254,636 B1 | 08-07-2007 | O'Toole, Jr. et al. | | |

---

[246] Ex. 79, '946 Patent IDS.

Dated: September 29, 2023

Respectfully Submitted,

/s/ R. William Sigler

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (pro hac vice)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (pro hac vice)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW, Suite 400
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2023, I electronically filed the foregoing with the

Clerk of the Court for the United States District Court for the Northern District of Illinois, via the

CM/ECF system, and thereby served a copy on all counsel of record.

*/s/ R. William Sigler*
R. William Sigler