# Exhibit 10

| | |
|---|---|
| *In re*: Reexam of U.S. Patent No. 7,233,978 | Confirmation No.: 3927 |
| Control No. 90/019,109 | Art Unit: 3992 |
| Filed: August 31, 2022 | Examiner: Sorrell, Eron J. |
| For: **Method and Apparatus For Managing Location Information In a Network Separate From The Data To Which The Location Information Pertains** | |

## Patent Owner's Reply to Office Action in *Ex Parte* Reexamination

*Mail Stop "Ex Parte* Reexam*"*
Attn: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Commissioner:

      Patent Owner hereby replies to the Office Action dated April 3, 2023, issued in the above-captioned *ex parte* reexamination. The due date for reply is July 3, 2023, based on the Office's granting-in-part of a petition for an extension of time. No additional fees are believed to be necessary, however, to prevent abandonment of this reexamination, please contact the undersigned representative for payment information.

environments maintained a static relationship between data and its location. Accordingly, every time data moved from one location to the next, all of the systems that maintained the static relationship had to be updated. As a result, while conventional distributed data collection environments allowed for dispersed storage, doing so made reliably locating and retrieving the data challenging, particularly where data is added or removed dynamically. '978 patent at 1:38-44.

The Inventors of the '978 patent predicted networking would become ubiquitous and data would become explosive, years before it actually happened. The Inventors understood that maintaining a static relationship between data and its location in traditional distributed data collection environments (*i.e.,* tree structures) would become untenable, given the growing unreliability of locating and retrieving dispersed data, particularly where the data in the components of the network could change location, unbeknownst to one another. The Inventors invented a protocol that dynamically creates relationships between data and its locations using an algorithm or function. That is, the Inventors invented a protocol that replaced storing caches and state information across the network, with a stateless approach that allows clients to compute the location of data's location information based on a dynamically created relationship between the data and its location. The Inventors sought to find a way to achieve seamless dynamic and spontaneous global search and retrieval of data across a distributed network. The result are the claims embodying the Inventors' network distributed tracking protocol ("NDTP").

### *1.* **The problems with the existing systems**

The Inventors studied then-existing systems to determine if there were ways to improve efficiency and scalability in locating and retrieving distributed data. They concluded that conventional systems were fundamentally limited in the types of searches that could be performed and the forms of data returned based on the search. '978 patent at 1:45-55. For example, the '978 patent states, "One example is where a client requests files based on a subject, like a person's name. In the search results, therefore, only text files of peoples' names may be retrieved. Another problem in current retrieval systems is that the client may receive text and image files in the search results, but could not seamlessly access the image files. Yet another problem in current retrieval systems is that video and sound files related to the request may not even be found in the search

is a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to NDTP request messages from clients." *Id*. at 4:25-38. The '978 patent further states, "The communication flow may represent a client 112 requesting an identifier/location association(s) from the NDTP server, which may be a server constellation construed in either of two forms (see FIGS. 19 and 20), and then querying directly based on the identifier/location association(s) received from the NDTP server." *Id.* at 18:50-56.

By requiring that each identifier uniquely identify a single entity, the locations for the data pertaining to the single entity using the identifier can quickly be located. *See e.g., id*. at 4:19:43; 4:57-5:22; 8:14-25; 18:38-19:3. This way, the location servers in the network do not have to execute any extraneous steps for determining or identifying a given entity when resolving a location query. *Id*.

### 2. The '978 patent invention's improvements over the prior art

The invention taught in the '978 patent differed from and improved upon pre-existing systems, including tree-based systems like DNS and other names service systems like Oracle Names Service in certain foundational ways.

**First**, the '978 patent teaches separating the data's location from the data itself, treating them as distinct.

Claim 17 and its dependent claims require identifiers and their associated locations (i.e., location information) be uniquely stored in each location server in a claimed plurality of location servers. As claimed in the claims and as taught by the specification and construed by the district court (*see* Section V.D below and NPLs 42 and 43, as filed in the IDS form 1), location information stored in the location servers specifies the data's location, not the data itself. This contrasts with prior art systems like ONAG where aliases of the type taught in Names Server merely point to the databases where data is believed to be stored, and not to the actual data itself. The crux of the '978 patent, which is present in every claim via its recitations of "identifier," "location information," and "location servers," requires the data and its location to be distinct from one another.

The claimed identifier must also uniquely identify a single entity so that the identifier may be used to query the location server and retrieve the location information of the data pertaining to the respective entity. [NPL 31]

wherein the received location is associated with the received identifier in the location store (*see lines 62 of column 5 to line 9 of column 6,* "The file set location server maintains a database 66 of all file sets. This database is utilized to keep track of the physical locations where file sets are stored. If a DFS client 52 requires access to one of the file sets, it sends a request first to the file set location server/database 64 66 to inquire about the physical location of the file set.").

Office Action at 28. The Examiner cites to Ault at 5:62-6:9, but that does not describe (and nowhere in Ault is there disclosure of) an identifier and how it is stored in the file location server. To the extent "file sets" are alleged to be "identifiers," Ault's disclosures as to "file sets" do not qualify because file sets do not *uniquely* identify entities, as "identifiers" are required to do – at most, file sets are data (e.g., files stored in computer). *See id*. Furthermore, even when assuming arguendo that Ault's file location servers store identifiers, the identifier in the file location server would identify a file set (i.e., the data) and not an entity. Therefore, Ault does not teach or suggest "identifiers," as required by claim 17.

> 3. **Ault in view of Yocum and Boukabza do not teach or suggest "each of the plurality of location servers stores unique set of location information of an aggregate set of location information," as recited by claim element 17.pre.**

The Examiner alleges that "[i]t would have been obvious to one of ordinary skill in the art at the time of the Patent Owner's invention to modify the combination of Ault, Yocum and Boukabza with the above further teachings of Boukabza such that a portion of the identifiers and associated locations are transferred to a second location server when the performance criterion of the first location server reaches a predetermined threshold. Said modification would result in each of the plurality of location servers storing a unique set of location information of an aggregate set of location information. Boukabza suggests such corrective actions (see lines 18-32 of column 15). One of ordinary skill would have been motivated to make such modification in order to prevent possible application suspending errors from occurring as suggested by Boukabza (see lines 14-15 of column 32, ' ... this incident must be prevented.')." Office Action at pp. 32-33. However, the Examiner has not demonstrated why "Said modification would result in each of the plurality of location servers storing a unique set of location information of an aggregate set of location information." *Id*. Indeed, neither Boukabza nor Yocum teach or suggest a system that

and complete reply has been made to the outstanding Office Action and, as such, the present reexamination proceeding is in condition for a Notice of Intent to Issue a Reexamination Certificate. If the Examiner believes, for any reason, that personal communication will expedite this proceeding, the Examiner is invited to telephone the undersigned at the number provided.

Prompt and favorable consideration of this Reply is respectfully requested.

Respectfully submitted,

REICHMAN JORGENSEN LEHMAN & FELDBERG LLC

/Khue V. Hoang/

Khue V. Hoang, Reg. No. 44,767
Signed under 37 C.F.R. § 1.34 Acting in a Representative Capacity for Patent Owner

Date: 7/3/2023

1909 K Street, NW, Suite 800
Washington, DC 20006
(202)