# Exhibit 35

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| *In re*: Reexam of U.S. Patent No. 7,814,170 | Confirmation No.: 7078 |
| Control No. 90/019,035 | Art Unit: 3992 |
| Filed: November 19, 2021 | Examiner: WASSUM, Luke S. |
| For: **Network Distributed Tracking Wire Transfer Protocol** | Atty. Docket: KOVE-170EPR035 |

### Patent Owner's Reply to Office Action in *Ex Parte* Reexamination

*Mail Stop "Ex Parte Reexam"*
Attn: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Commissioner:

Patent Owner hereby replies to the Office Action dated May 11, 2022, issued in the above-captioned *ex parte* reexamination. The due date for reply is August 11, 2022 based on the Office's granting of a petition for an extension of time. No additional fees are believed to be necessary, however, to prevent abandonment of this reexamination, please contact the undersigned representative for payment information.

### *Status of the Claims*

A listing of each claim under reexamination is provided below. Although no claim amendments are proposed in this response, the patent owner nonetheless provides this listing of the original claims from U.S. Patent No. 7,814,170 to Overton et al. ("the '170 patent") that are at issue, for ease of reference and review.

Claims 1, 2, 6, 8, 9,12, and 15 are subject to *ex parte* reexamination:

1. (Patent Claim) A system for managing data stored in a distributed network, the system comprising: a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and a data location server network comprising a plurality of data location servers, wherein data location information for a plurality of data entities is stored in the data location server network, at least one of the plurality of data location servers includes location information associated with the identifier string, each one of the plurality of data location servers comprises a processor and a portion of the data location information, the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.

2. (Patent Claim) The system of claim 1, wherein the location information comprises any portion of a hash table generated with the hash function.

6. (Patent Claim) A system for managing data location information and providing the data location information in response to location queries, the system comprising: a location server configured to receive a location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity; wherein the location server includes a processor, and programming logic stored on the location server, wherein the

2

programming logic is configured to return, in response to a location query related to a desired entity, a location message, the location message in conformance with the transfer protocol and comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity.

8. (Patent Claim) The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information.

9. (Patent Claim) The system of claim 6, wherein the location information in the location server is maintained in an indexed location store.

12. (Patent Claim) The system of claim 9, wherein the indexed location store comprises a string store indexed by a hash table distributed across a plurality of servers.

15. (Patent Claim) A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising:

correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network;

receiving a location query from a client at one of the plurality of location servers, the location query requesting location information identifying a location of a data entity included in the data entities:

determining which of the plurality of location servers includes the location information;

3

sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information; and

sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information.

***Remarks***

Claims 1-2, 6, 8-9, 12 and 15 of the '170 patent are currently subject to *ex parte* reexamination. Claims 1-2, 6, 8-9, 12 and 15 stand rejected in the Office Action dated May 11, 2022 ("Office Action"). Claims 3-5, 7, 10-11, 13-14 and 16-17 are not subject to reexamination.

Patent Owner respectfully traverses all rejections. Based on the following remarks, and the Declaration of M. T. Goodrich submitted herewith, Patent Owner respectfully requests the Examiner reconsider and withdraw the outstanding rejections.

The following Table of Contents is included for ease of reference:

I.  STATUS OF RELATED MATTERS ...................................................................................7

II.  INFORMATION DISCLOSURE STATEMENTS ...............................................................7

III.  STATEMENT OF SUBSTANCE OF EXAMINER INTERVIEW .......................................7

IV.  RESPONSE TO SUBSTANTIVE REJECTIONS IN THE OFFICE ACTION ...................7

    A.  Relevant Prosecution History ......................................................................................8

    B.  Overview of the Technology and continued patentability of the claims ..........................8

        1.  The problems with the existing systems ...................................................................9

        2.  The '170 patent claims overcome the limitations present in the prior art .................12

        3.  Reasons for continued patentability.......................................................................17

    C.  Claim Construction ...................................................................................................17

        1.  Claim Construction Summary Table ......................................................................18

        2.  Independent claims 1, 6, and 15 in view of the claim construction...........................19

    D.  Oracle Names and the '170 Patent Invention Are Fundamentally Different Protocols....23

        1.  Servers in hierarchically structured networks do not "know" what's contained in other servers throughout the network ...................................................................25

        2.  Oracle Admin lacks the non-hierarchical cluster structure required to satisfy the requirements of claims 1, 6, and 15 ......................................................................25

    E.  Oracle Admin, alone or in combination with OracleSG and/or Rajani, do not render claims 1 obvious .......................................................................................................30

        1.  The combination of Oracle Admin-OracleSG-Rajani does not teach or suggest portioning the data location information across data location servers based on applying a hash function to the identifier identifying the data entity, as required by claim 1...................................................................................................................30

2. The combination of Oracle Admin-OracleSG-Rajani does not teach or suggest "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string," as recited by claim 1 ...................................................................32

3. A POSA would not be motivated or find it obvious to modify or combine Oracle Admin with one or more of OracleSG and/or Rajani to satisfy the requirements of claim 1 ...................................................................................................................34

4. The combination of Oracle Admin, OracleSG, and Rajani does not teach or suggest the required relationships among "identifier string," "data entity," and "location information," as required by claim 1 ...............................................................38

F. Claim 2 Is Not Obvious In View of Oracle Admin-OracleSG-Rajani ...........................40

1. A POSA would not be motivated or find it obvious to modify or combine Oracle Admin with one or more of OracleSG and/or Rajani to satisfy claim 2's requirements...................................................................................................................41

G. Oracle Admin, OracleSG, and McGarvey fail to render claims 6 or claim 15 obvious ...42

1. The combination of Oracle Admin-OracleSG-McGarvey fail to teach or suggest a redirect message that identifies which data location server contains the location information............................................................................................................44

2. The combination of Oracle Admin-OracleG-McGarvey fail to teach or suggest transmitting a redirect message that indicates with specificity which data location server contains the location information to the client, as required by claim 15 .........47

3. Oracle Admin, OracleSG, and McGarvey do not teach or suggest associating the location of data pertaining to an entity to an identifier identifying the entity, as required by claim 6 ...............................................................................................48

4. A POSA would not be motivated to modify or combine Oracle Admin with one or more of OracleSG and/or McGarvey.........................................................................51

5. The combination of Oracle Admin, OracleSG, and McGarvey do not teach or suggest an identifier string that identifies a data entity, as required by claim 15 ....................55

H. Claim 8 Is not obvious in view of Oracle Admin-OracleSG-Rajani ...............................55

I. Oracle Admin, OracleSG, McGarvey, and Rajani fail to render claims 9 and 12 obvious...................................................................................................................................57

1. The combination of Oracle Admin with one or more of OracleSG, McGarvey, and Rajani does not render claims 9 or 12 obvious.........................................................58

J. Secondary Considerations of Non-Obviousness.............................................................59

1. Long felt but unsolved needs and industry praise.....................................................60

2. Failure of others and unexpected results....................................................................61

3. Commercial success....................................................................................................64

V. CONCLUSION.........................................................................................................................66

### I.      Status of Related Matters

The '170 patent is the subject of litigation in *Kove IO, Inc., v. Amazon Web Services, Inc.*, Case No. 1:18-cv-08175 (N.D. Ill.).

### II.      Information Disclosure Statements

Patent Owner previously submitted an information disclosure statement (IDS) on July 12, 2022.

### III.      Statement of Substance of Examiner Interview

Patent Owner thanks Examiners Luke Wassum and Peng (Simon) Ke and Supervisory Patent Examiner Fuelling for an Interview held July 21, 2022 with Co-Inventor John Overton and Patent Owner's representatives Khue Hoang (Reg. No. 44,767) and Naveed Hasan (Reg. No. 72,688). The Interview was conducted for this reexamination, as well as the co-pending reexamination of related U.S. Patent No: 7,103,640 (Control No. 90/019,036). The Interview included discussions regarding the background and history of the invention, interpretations of certain claims being reexamined, and the deficiencies of the applied references, both individually and when combined, with respect to particular claim terms.

Examiner Wassum requested Patent Owner provide further clarification about certain aspects of the reexamined claims, including distinguishing the "turn off request forwarding" disclosure in Oracle Admin as it pertains to claim 6, and the term "data entity," as recited in claims 1 and 15 of the '170 patent. In this Response, Patent Owner provides the requested clarifications, as well as detailed support for the patentability of the reexamined claims over the asserted prior art, whether considered individually or in combination.

### IV.      Response to Substantive Rejections in the Office Action

The Office Actions includes three grounds of rejections:

Ground 1: Claims 1 and 2 are rejected under pre-AIA 35 U.S.C. § 103(a) as allegedly being obvious over Oracle Admin in view of OracleSG and in further view of Rajani.

Ground 2: Claims 6, 8, and 15 are rejected under pre-AIA 35 U.S.C. § 103(a) as allegedly being obvious over Oracle Admin in view of OracleSG and in further view of McGarvey.

Ground 3: Claims 9 and 12 are rejected under pre-AIA 35 U.S.C. § 103(a) as allegedly being obvious over Oracle Admin in view of OracleSG and in further view of Rajani and in further view of McGarvey.

Patent Owner respectfully traverses the rejections, each of which are addressed below.

## A.  Relevant Prosecution History

U.S. Patent Application No: 11/354,224 ('224 application) was filed on February 13, 2006, and issued as the '170 patent on October 12, 2010.

## B.  Overview of the Technology and continued patentability of the claims

Towards the latter half of the 1990's, data storage was still relatively manageable. Most data could be stored locally, on local drives, compact discs (CDs) or disk drives. Single servers were often sufficient for data storage needs. Not long thereafter, the amount and size of data began increasing, soon reaching exponential rates. Networking became ubiquitous and storing data in single servers became impractical if not impossible. This paved the way for distributed data collection environments.

Distributed data collection involves storing data stored and retrieved among multiple databases or data repositories connected by a network. Conventional distributed data collection environments maintained a static relationship of data and its location. Accordingly, every time data moved from one location to the next, all of the systems that maintained the static relationship had to be updated. As a result, while conventional distributed data collection environments allowed for dispersed storage, doing so made reliably locating and retrieving the data challenging, particularly where data is added or removed dynamically. ('170 patent, 1:40-43).

As John Overton, co-Inventor and CEO of Kove IO, Inc. (Patent Owner), noted during the Examiner Interview, the Inventors of the '170 patent predicted networking would become ubiquitous and data would become explosive, years before it actually happened. The Inventors understood that maintaining a static relationship of data and its location in traditional distributed

data collection environments (*i.e.,* tree structures) would become untenable, given the growing unreliability of locating and retrieving dispersed data, particularly where the data in the components of the network could change location, unbeknownst to one another. The Inventors invented a protocol that dynamically creates relationships between data and its locations using an algorithm or function. That is, the Inventors invented a protocol that replaced storing caches and state information across the network, with a stateless approach that allows clients to compute the location of data's location information based on a dynamically created relationship between the data and its location. The Inventors sought to find a way to achieve seamless dynamic and spontaneous global search and retrieval of data across a distributed network. The result are the claims embodying the Inventors' network distributed tracking protocol ("NDTP").

### *1.* **The problems with the existing systems**

The Inventors studied then-existing systems to determine if there were ways to improve efficiency and scalability in locating and retrieving distributed data. They concluded that conventional systems were fundamentally limited in the types of searches that could be performed and the forms of data returned based on the search. ('170 patent, 1:43-53). For example, the '170 patent states, "One example is where a client requests files based on a subject, like a person's name. In the search results, therefore, only text files of peoples' names may be retrieved. Another problem in current retrieval systems is that the client may receive text and image files in the search results, but could not seamlessly access the image files. Yet another problem in current retrieval systems is that video and sound files related to the request may not even be found in the search results. For example, a doctor might be able to retrieve medical records on a specific patient, but cannot view an MRI or X-Ray results associated with that record." ('170 patent, 1:52-57).

The Inventors recognized that while Doman Name Service's (DNS) "names and machine" mapping format is analogous to the "entity identifier and data location" mappings in the NDTP protocol ('170 patent, 20:17-29), NDTP has a foundationally different structure that enables it to support "very fast, very diverse, and very large scale mapping manipulations" (*id.*), which names services like DNS cannot do because of their tree-node organizational structure.

Conventional systems consistently used hierarchical-tree structures when attempting to scale their networks. For example, Oracle Admin acknowledged that a network may follow a flat

naming model or a hierarchical naming model but cautioned that "[a] flat naming model should be used when the actual number of services is small (under 100), when the likelihood of future growth of network services is *minimal....*" (Oracle Admin, 40) (emphasis added). More pointedly, Oracle Admin *discouraged* the use of "flat" structures in larger networks, in contrast to hierarchical structures which Oracle Admin noted "allow[s] for future growth or greater naming autonomy." (*Id.*, 41). Similarly, McGarvey and Rajani disclosed only hierarchical structures for more complex systems. (*See e.g.,* McGarvey, 5:5-43; Rajani, Abstract; 2:55-67). This illustrates that POSAs, at the time of invention, would have understood that conventional data systems were dependent on hierarchical structures. Goodrich Decl., ¶¶ 43-46.

An example of this prior art hierarchical structure is Fig. C-4 from Oracle Admin (reproduced below).



Figure C – 4 Network Messages in a Multi-Level Foreign Name Resolution

**Oracle Admin, Figure C-4 (p. 191)**

Oracle Admin describes the activities that must take place in response to a client query for information (in this case, the network address of the "Destination Server"): "1. The client sends request to preferred Names Server in its local region (DR1). 2. The preferred Names Server in DR1 issues request for the Names Servers authoritative for the destination server (in region DR2.1). 3. The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2. 4. The receiving

location information for the data is thereby divided up and each of data location servers 120a and 120b stores a portion of the location information, based on applying the algorithm or function on the identifier – *i.e.*, the location information is distributed among the location servers in the network. (*Id*). For example, if there are 10 units of data, data location server 120a may store location information for units 1-5 and data location server 120b stores location information for units 6-10. (*See e.g.*, *id.*, 3:14-25; 16:59-17:7; 17:26-37; 18:9-22). In another example, if there are two identifiers associated with 10 units of data, where the first five units of data are associated with a first identifier and the second five units of data are associated with the second identifier, data location server 120a may store location information for the first five units of data and data location server 120b may store location information for the second five units of data. (*Id*). The location information in the data location servers 120a-b is mapped to the respective identifier associated with the data. (*Id*).

The '170 patent also teaches that data location servers 120a and 120b (etc.) store the algorithm or function that is used to divide up the location information. (*Id.*, 15:6-11; 18:3-8). This allows each data location server to (1) itself determine, using the function, which other data location server stores the location information for a particular unit of data (*id.*, 14:46-15:15); (2) transmit a list of location servers which contains the location server known to have the location information (*id.*, 17:65-18:8); and (3) transmit the algorithm or function to the client to enable the client to determine which one of the data location servers stores the location information for the particular unit of data (*id.*, 14:46-15:15; 18:3-8). In other words, ***whatever location server is queried, if that location server does not have the information, it will either identify the location server that does, identify a list of location servers containing at least the location server that does, and/or send the algorithm or function that will allow the client to make that identification for itself***, rather than traverse a network path across a tree structure like DNS or Oracle Name Service that maintained a static relationship of data and that data's location. Continuing from the earlier example, if location server 120a receives a query from a client for an identifier associated with data unit 7 and it does not have the requested information itself, it then either determines that the location for unit 7 is in the data location server 120b by applying the algorithm or function on the identifier and transmits that back; transmits a list of location servers which contains the location server known to have the location information to which the client can apply a well-known function to the identifier to identify; or transmits the algorithm or function to the client for the

15

query to the next higher node and so on until it reaches the root server. The root server, if it has the desired information registered, will forward the request down successive nodes until it arrives at the server last known to have the information. As the example in Fig. C-4 shows, and as explained on pages 190-192 of Oracle Admin, even a modestly sized environment with a handful of servers may take numerous iterations to return a query.[1]

### 1. Servers in hierarchically structured networks do not "know" what's contained in other servers throughout the network

The Name Servers in Oracle Admin's hierarchical configuration do not have any knowledge of what is stored in other Names Server in the network, beyond their direct children. (Oracle Admin, p. 191). If a queried server or its direct children do not have the requested information, the server knows only to forward a query to the next Names Server up the tree. *Names Servers are ignorant as to what information other Names Servers beyond their direct children may have and have no way of finding out.* This was the common and accepted configuration at the time of the invention. (Goodrich Decl., ¶¶ 34-41).

In contrast, claims 1, 6, and 15 of the '170 patent require networks with *non-hierarchical* (or "cluster") configurations of location servers that enable each server in the server network to know which location server contains the location(s)of the desired data. For example, if a queried server receives a request for the data locations associated with a particular identifier but does not have it, that server will return a message to indicating which other server in the network contains the requested information. This configuration "collapses" the hierarchical composition of Oracle Names, making it entirely different in practice and principle from what Oracle Admin discloses. Oracle Admin in no way teaches or suggests something so fundamentally different from the architecture of the Oracle Names system. (Goodrich Decl., ¶¶ 28-33).

### 2. Oracle Admin lacks the non-hierarchical cluster structure required to satisfy the requirements of claims 1, 6, and 15

Each of the claims at issue require, expressly or impliedly, a non-hierarchical cluster configuration of locations servers in a network. For example, claim 1 recites "**each one of the**

---

[1] Oracle Admin cautions that a "network can have no more than five well-known Names Servers, that is, Names Servers that use the Dynamic Discovery Option." (Oracle Admin., pp. 28, 32, 60).

**plurality of data location servers** comprises [...] a portion of the data location information [for a plurality of entities]." Claim 1 also requires "**each one of the data location servers is configured to determine** the at least one of the plurality of data location servers [that contains the location information associated with the identifier string] based on the hash function applied to the identifier string." As such, claim 1 requires data location information to be portioned and organized across the data location servers in the network *based on a hash function.* A hash function necessarily organizes data in a non-hierarchical manner, meaning claim 1 can only be accomplished through the cluster configuration taught by the specification. (Goodrich Decl., ¶¶ 28-33). Claim 1 requires that *each* server in the data location server network have the capability of determining the location of the requested information based on applying *the hash function.* These features exemplify the non-hierarchical cluster configuration required in claim 1. (*Id*).

Claim 6's non-hierarchical configuration is embodied the requirement that the location server must be able to return a "redirect message" where "the redirect message compris[es] a list of at least one other location server *known* to have the location information for the desired entity." This limitation cannot be met in hierarchical configurations such as Names Server because location servers in tree-structures *do not necessarily know* which other server has the desired information. (*Id*). Turning off request forwarding, as taught by Oracle Admin, does not enable servers in the Names network to meet this limitation (*see infra,* pp. 28-29 and 44-45).

Claims 15 contains a similar requirement that location servers in the network be capable of returning "redirect messages" identifying other servers in the network with the desired information. This is embodied in the limitation "the redirect message identifying which of the plurality of location servers includes the location information." (*Id*). Therefore, the redirect message, as recited by claims 6 and 15, indicates with specificity and certainty which data location server in the network contains the location information for the desired entity. A hierarchical configuration does not enable nodes to have such knowledge. (*Id*). Accordingly, the redirect message limitations, as recited by claims 6 and 15, demonstrate that claims 6 and 15 recite a non-hierarchical cluster configuration. (*Id*).

Oracle Admin does not teach or suggest the aforementioned limitations. Oracle Admin's Figure C-4 (reproduced below) depicts the process by which a client sends a request for information to the Names Service network:

organize the data location information across the plurality of data location servers" limitation of claim 1. (Office Action, 17-18). Specifically, the Examiner points to Rajani's use of hashing to retrieve a file from backup memory. (*Id.*; *see also* Rajani, 4:1-62 and 8:38-40). However, Rajani does not teach or suggest *portioning* data location information and *organizing the portions across the data location servers*.

Rajani describes using a hash function to retrieve a file from backup memory. (Rajani, 4:1-62 and 8:38-40). But Rajani does not teach or suggest portioning data location information and organizing those portions across all servers in the network. Accordingly, Rajani does not teach, suggest or otherwise render obvious portioning data location information and organizing the portions of the data location information across the data location servers based on a hash function. Further, a POSA at the time of the invention would have no reason to modify or combine Oracle Admin with Rajani to achieve this limitation because both references are silent with respect to applying hashing for the purposes of portioning, organizing, and distributing data location information in the manner claimed. (Goodrich Decl., ¶¶ 42-57).

> **2.      The combination of Oracle Admin-OracleSG-Rajani does not teach or suggest "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string," as recited by claim 1**

Oracle Admin, alone or in combination with any of OracleSG and McGarvey, do not claim 1 obvious for the additional reason that they do not disclose the "***each one of the data location servers is configured to determine the at least one of the plurality of data location servers,***" where **"the at least one of the plurality of data location servers" must "include location information associated with the identifier string"** limitation. In other words, claim 1 requires every location server in the network must be configured to identify the location server in that network that contains the location information for the data entity identified by the identifier.

> > *a)      Oracle Admin does not teach or suggest "**each one of the data location servers is configured to determine the at least one of the plurality of data location servers…**"*

As the Office Action acknowledges, Oracle Admin does not teach or suggest "each one of the data location servers is configured to determine the at least one of the plurality of data location

servers based on the hash function applied to the identifier string," as recited by claim 1. (Office Action, 15).

### b)     OracleSG does not cure the deficiencies of Oracle Admin

The Examiner points to OracleSG brief mention of using hashing when querying to allegedly satisfy this requirement. (Office Action, 15-17). However, OracleSG is completely silent with respect to the aspect of the limitation that requires **_each_** data location server in a data location network being configured to determine the data location server that contains the location information.

OracleSG describes a rule-based optimizer that includes queries that use hashing. (OracleSG, 633). OracleSG's hash-based queries merely retrieves data using hashing. OracleSG is silent with respect to applying hashing to portion and organize data location information. OracleSG's brief mention of hashing is irrelevant to each and every data location server in a data location network being configured to determine the data location server that contains the location information. Accordingly, OracleSG does not teach, suggest or otherwise render obvious that _each_ (i.e., every) data location server in a data location network be configured to determine the data location server that contains the location information based on a hash function being applied to the identifier string associated with the data location information. Further, a POSA at the time of the invention would have no reason to modify or combine Oracle Admin with OracleSG to achieve this limitation because both references are silent with respect to configuring every server in the network to determine the data location server that contains the location information. (Goodrich Decl., ¶¶ 42-57).

### c)     Rajani does not cure the deficiencies of Oracle Admin and/or OracleSG

The Examiner alleges that Rajani teaches "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string," as recited by claim 1. (Office Action, 17-18). Specifically, the Examiner points to Rajani's use of hashing to retrieve a file from backup memory. (_Id._; _see also_ Rajani, 4:1-62 and 8:38-40). However, Rajani does not teach or suggest each and every data location server in a data location network being configured to determine the data location server that contains the location information.

in other servers. (*See e.g.*, '170 patent, 4:29-67; 14:46-15:15; 18:9-22; 20:21-25). As such, a POSA would not appreciate the use of the hash function, as claimed in claim 1, from OracleSG or Rajani. In other words, a POSA would not understand to modify or combine Oracle Admin with OracleSG and Rajani's alleged teachings regarding hashing to satisfy the requirements of claim 1, given the teachings of Oracle Admin, OracleSG, Rajani, and basic general knowledge. Therefore, a POSA would not be motivated to use the OracleSG or Rajani's teachings for portioning and organizing data location information across the Oracle Admin's Names Servers and enabling each and every Names Server to determine the location of the requested location information. (Goodrich Decl., ¶¶ 42-57).

Like OracleSG and Rajani, Oracle Admin does not contemplate portioning and organizing data location information across data location servers and enabling each and every Names Server to be configured to determine which one of the Names Servers stores the requested location information. In fact, Oracle Admin cannot satisfy these features. (Goodrich Decl., ¶¶ 42-57).

Oracle Admin describes a hierarchical configuration and does not contemplate collapsing the hierarchical configuration into a cluster configuration. OracleSG and Rajani also do not contemplate a non-hierarchical cluster configuration. Therefore, a POSA would not find it obvious to collapse Oracle Admin's hierarchical configuration to allow for portioning and organizing data location information across data location servers based on OracleSG's teachings regarding hashing and/or Rajani's hashing table techniques. Furthermore, a POSA would not find it obvious to collapse Oracle Admin's hierarchical configuration to allow for *each and every* server in the data location server network have the capability of determining the location of the requested information based on OracleSG's teachings regarding hashing and/or Rajani's hashing table techniques. (Goodrich Decl., ¶¶ 34-57).

> a) *A POSA would not be motivated to modify Oracle Admin or combine it with OracleSG and/or Rajani, to achieve the limitations of claim 1 because OracleSG and Rajani suffer from the same deficiencies as Oracle Admin*

As described above, OracleSG and Rajani fail to cure the deficiencies of Oracle Admin. Specifically, neither OracleSG nor Rajani teach or suggest portioning and organizing data location information across the data location servers. Moreover, neither OracleSG nor Rajani teach or suggest *each and every* server in the data location server network have the capability of

determining the location of the requested information. Therefore, a POSA would not be motivated or find it obvious to turn to references that include the same flaws as Oracle Admin to achieve the claim 1 limitations because a POSA would understand that modifying Oracle Admin with OracleSG and/or Rajani *would not* satisfy claim 1's requirements. (Goodrich Decl., ¶¶ 42-57).

> b) *A POSA would not be motivated to modify Oracle Admin or combine it with one or more of OracleSG, and/or Rajani because there was no reasonable expectation of success to do so to satisfy Claim 1's requirements*

In order to establish a reasonable expectation of success, there must be "a reasonable expectation of achieving what is claimed in the patent-at-issue." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016); *see also Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1380-1382 (Fed. Cir. 2021). Here, the basis for the Examiner's conclusion as to reasonable expectation of success is unclear and appears to employ impermissible hindsight. In any regard, the Examiner does not consider the incompatibility of the asserted references with the '170 patent.

As described above, the '170 patent is significantly different than conventional naming systems. Specifically, the '170 patent teaches the ability to linearly scale location servers using a cluster formation. This non-hierarchical cluster composition is expressly claimed in claim 1, through the requirement that the data location information is portioned and organized across the data location servers based on a hash function and each and every data location server being configured to determine the data location server that contains the location information based on applying the hash function to the identifier string associated to the location information. In contrast, naming systems like Oracle Names imposes a hierarchical tree structure that limits queries to be received by a client's local or preferred server, and servers are not configured to provide the aforementioned information.

Oracle Admin, OracleSG, and Rajani do not contemplate a non-hierarchical cluster configuration. Any attempt to modify or combine Oracle Admin with OracleSG and/or Rajani would require a wholesale collapsing of the hierarchical tree and a fundamental change as to how the location information is organized across the Names Servers and enabling each and every Names Servers to determine where the sought-after location information is stored. Therefore, a POSA would not have had reasonable expectation of success to modify or combine Oracle Admin

For example, OracleSG describes using private or public synonyms to identify a database, table, or view. (*Id*). Multiple users in the database network may use the same synonym to identify the different databases, tables, or views. (*Id*). That is, a first user may use synonym X to refer to database 1 and a second user in the same database network may also use synonym X to refer to database 2. (*Id*). Therefore, OracleSG does not teach or suggest an identifier that uniquely identifies an entity. (Goodrich Decl. ¶ 49).

Furthermore, OracleSG's disclosure about SQL*Net version on page 87 would not render obvious receiving obvious the ability for adding new identifiers and respective location and connection information. (OracleSG, 87). OracleSG describes various Oracle utilities, such as starting, stopping, configuring database instances. However, these utilities are irrelevant to associating the location of data pertaining to an entity to an identifier identifying the entity.

Based on the reasons above, OracleSG does not teach or suggest receiving a "location addition request, the location addition request formatted in conformance with a transfer protocol, the location addition request comprising an identifier and at least one location to associate with the identifier, wherein the identifier identifies an entity and wherein each of the at least one location specifies a location of data in a network pertaining to the entity," as recited by claim 6.

> c)   *McGarvey does not cure the deficiencies of Oracle Admin and OracleSG*

McGarvey is neither relied upon for nor does it teach or suggest associating the location of data pertaining to an entity to an identifier identifying the entity, as required by claim 6.

> **4.   A POSA would not be motivated to modify or combine Oracle Admin with one or more of OracleSG and/or McGarvey**

> a)   *A POSA would not find it obvious, or be motivated, to modify Oracle Admin or combine it with OracleSG and/or McGarvey, to achieve the limitations of claims 6 and/or 15*

As stated above, the limitations of claims 6 and 15 require a non-hierarchical cluster configuration that allows location servers to return a redirect message that identifies which data location server is "known to have" (claim 6) or definitively "includes" (claim 15) the location information.

Oracle Amin's Name Servers has no such capability; the hierarchical tree structure of the network limits each server to knowing only about its direct children and therefore has no knowledge of information stored in other Names Servers. (Oracle Admin, p. 191). Accordingly, Oracle Admin's Names Servers are not configured to determine with any specificity or certainty which data location server is known to include the sought-after data location information. Therefore, a POSA would not find it obvious to collapse Oracle Admin's hierarchical configuration using OracleSG or McGarvey's teachings to allow for the Names Servers to transmit a redirect message that indicates with specificity the Names Server that contains the data location information. (Goodrich Decl., ¶¶ 34-41; 63-78).

> b) *A POSA would not find it obvious, or be motivated, to modify Oracle Admin or combine it with OracleSG and/or McGarvey, to achieve the limitations of claims 6 and/or 15 because OracleSG and McGarvey suffer from the same flaws as Oracle Admin*

As indicated above, neither OracleSG nor McGarvey teach or suggest transmitting a redirect message that indicates with specificity which data location server contains the location information, as required by claims 6 and 15[4]. Moreover, neither OracleSG nor McGarvey teach or suggest sending a redirect message that indicates with specificity which data location server contains the location information to a client, as required by claim 15.

Furthermore, neither OracleSG nor McGarvey teach or suggest associating the location of data pertaining to an entity to an identifier identifying the entity, as required by claim 6.

Therefore, a POSA would not be motivated or find it obvious to turn to references that include the same flaws as Oracle Admin to achieve the requirements of claims 6 and/or 15 because a POSA would understand that modifying Oracle Admin with OracleSG and/or McGarvey *would not* satisfy claims 6 and 15's requirements. (Goodrich Decl., ¶¶ 34-41; 63-78).

---

[4] The Examiner alleges OracleSG describes "redirects" as useful tool for Oracle systems. (Office Action, 34; *see also* OracleSG, 112). However, OracleSG does not teach or suggest a "redirect message," as required by claims 6 and 15. OracleSG describes *redirecting an output* to a file or printer. (OracleSG, 112). As such, OracleSG's disclosure is irrelevant to a redirect message indicating a location server containing the requested information, as required by claims 6 and 15.

per day with peaks greater than 20 million requests per second, over petabytes of storage."[7] AWS states that DynamoDB "delivers low-latency performance at any scale"[8], has a throughput capacity that is "practically unlimited"[9], and has "99.999% availability"[10].

## V.   *Conclusion*

All of the stated grounds of rejection have been properly traversed, accommodated, or rendered moot. Patent Owner therefore respectfully requests that the Examiner reconsider all presently outstanding rejections and that they be withdrawn. Patent Owner believes that a full and complete reply has been made to the outstanding Office Action and, as such, the present reexamination proceeding is in condition for a Notice of Intent to Issue a Reexamination Certificate. If the Examiner believes, for any reason, that personal communication will expedite this proceeding, the Examiner is invited to telephone the undersigned at the number provided.

Prompt and favorable consideration of this Reply is respectfully requested.

Respectfully submitted,

REICHMAN JORGENSEN LEHMAN & FELDBERG LLC


/Naveed Hasan/
Naveed Hasan, Reg. No. 72,688
Signed under 37 C.F.R. § 1.34 Acting in a Representative
Capacity for Patent Owner


Date:   8/11/2022
1909 K Street, NW, Suite 800
Washington, DC 20006
(202) 894-7305

---

[7] *Id.*
[8]     Exhibit    I    (https://aws.amazon.com/blogs/database/amazon-dynamodb-auto-scaling-performance-and-cost-optimization-at-any-scale/).
[9] Exhibit J (https://aws.amazon.com/dynamodb/faqs/?trk=94bf4df1-96e1-4046-a020-b07a2be0d712&sc_channel=ps&sc_campaign=acquisition&sc_medium=ACQ-P|PS-GO|Brand|Desktop|SU|Database|DynamoDB|US|EN|Text|E&ef_id=Cj0KCQjwuaiXBhCCARIsAKZL13n_9aEOrFdTlWqnipW7mQbvIbqDk_kV84UNDDs5wDKIfmkitlZHRbUaAgoZEALw_wcB:G:s&s_kwcid=AL!4422!3!610000101513!e!!g!!aws%20dynamodb)
[10] Exhibit K (https://aws.amazon.com/dynamodb/).