# Exhibit 45



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,034 | 11/19/2021 | 7233978 | | 3927 |

184647      7590      10/27/2022
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway
Suite 300
Redwood City, CA 94065

| EXAMINER |
|---|
| CAMPBELL, JOSHUA D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/27/2022 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

KOV_00226354



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

FISCH SIGLER LLP
5301 WISCONSIN AVENUE, NW
FOURTH FLOOR
WASHINGTON, DC 20015

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,034*.

PATENT UNDER REEXAMINATION *7233978*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

KOV_00226355

to improve the users' experience and to ease their ability to find their desired data entity is a primary objective of an Oracle database administrator ("DBA").

Indeed, before the '978 Patent, POSITAs were combining these teachings in Oracle7 systems in the 1990s, and OSG includes techniques explaining to DBAs how to improve their systems (page 19 OSG). And OSG directs DBAs to combine OSG's teachings with various reference manuals and resources to take advantage of all of Oracle7's capabilities. For example, to use SQL*Net effectively, OSG provides that a DBA should record error messages and consult "specific product manuals (for example, SQL*Net)" for solutions (pages 44 and 52 of OSG).

For those reasons, a POSITA would have been motivated to associate an identifier with ONAG's data and location information for use in optimizing query efficiency, based on OSG's teachings. As OSG explains, a POSITA was often asked to help improve query efficiency during the relevant timeframe:

> You may be regarded by your project team as the database guru because you have the title of DBA [database administrator]. If this is the case, try to obtain as much knowledge as possible about the DBMS [database management system] and query optimization through training courses and books. It may mean more work for you, but it could save many hours of project team labor if you can quickly provide your compatriots with the answers that they need.
>
> (page 51 of OSG)

### *Response to Arguments*

14)　　This is a response to the Patent Owner's (PO) response filed on September 28, 2022 in reference to the following issues:

　　　a.　　Regarding the rejection of claims 1 and 31 in view of ONAG and OSG (pages 41-49 of PO response):

　　　　　PO argues that the combination of ONAG and OSG do not teach or suggest an "identifier" that uniquely identifies a single entity as required by claims 1 and 31.

**Examiner respectfully disagrees.** ONAG discloses two basic naming models for naming objects in the network, a flat naming model and a hierarchical naming model. ONAG discusses the flat naming model as follows:

> All names are unique within a single domain—the WORLD domain. The WORLD domain is predefined in the Oracle Network Manager for customers choosing a flat naming model.
>
> > Note: A flat naming model should be used when the actual number of services is small (under 100), when the likelihood of future growth of network services is minimal, and the entire SQL*Net network is centrally administered.
>
> Figure 3 – 5 shows a flat naming model. The actual database service names are appended with ".WORLD" as in CONFIG.WORLD, FLIGHTS.WORLD, etc.



> Figure 3 – 5 Flat Naming Model
>
> All names in the WORLD domain must be unique. The Network Manager has a validation feature that ensures that all names you enter are unique.

(page 40 and 41 of ONAG)

As can be seen in the citation above, in the flat naming model all of the names would be contained within one domain and all of the names would be unique, thus in the flat naming model all of the identifiers (names) uniquely identify a single entity (object). ONAG discusses that this model would be used for only a small number of services (less than 100). However, it still clearly teaches the use of identifiers that uniquely identify single entities. ONAG also discusses the hierarchical naming model as follows:

You can divide names into a hierarchical structure to allow for future growth or greater naming autonomy. For example, if a requirement is that administrators in Europe must be able to assign names without consulting US administrators, they can do so from within different domains. This does not mean they must maintain different administrative regions, just different domains. A single administrative region can contain and thus control many domains.

Domains

All network names include one or more *domains*. A *domain* is a group of machines and network services. Domains are usually hierarchically related for organizational and administrative purposes. However, all network names could instead reside in a single domain—the WORLD domain.

The top level domain is the predefined *root domain*. All other domains are hierarchically below the root.

> Note: The WORLD domain always appears in Network Manager. Because it is not used in hierarchical configurations, however, it is not shown in the following figures.

Figure 3 – 6 shows a hierarchical naming model with five domains: the (ROOT) domain, ACME domain, US.ACME, EUROPE.ACME, and ROW.ACME (Rest of World) domains.



Figure 3 – 6 Hierarchical Naming Model

Within each domain all names must be unique, but across domains they can be repeated. Notice that both WEATHER and HISTORY are repeated, but the full global names are unique (that is, HISTORY.ROW.ACME vs. HISTORY.EUROPE.ACME).

Network domains are similar to file directories used by many operating systems (such as UNIX) in that they are hierarchical; however, unlike file systems, network domains may or may not correspond to any physical arrangement of databases and other objects in a network; they are name spaces.

You can extend this hierarchy to any number of levels (for example, you could divide EUROPE further into UK, GREECE, and so forth,) but each additional level increases the knowledge users must retain to request names.

Dividing the set of names into three domains does not necessarily require three administrative regions. Administrative regions simply represent individual Network Manager installations. ACME may well determine that names can be assigned (or decided upon) by the administrator in EUROPE or ROW, but forwarded to the administrator at the ACME world headquarters in Boise, Idaho to be entered into the Network Manager.

> Default Domains
>
> Each client has a default domain in the naming model. The default domain is the domain within which most of the client's name requests are conducted. This is usually the domain the client resides in, but it could be another domain from which the client often requests services. A client can request a network service within its default domain using the service's simple, unqualified name, that is, without specifying a domain name. If a user requests a name without a "." character in it, the
>
> default domain name will be automatically appended to the database service or database link name requested.

(page 41-43 of ONAG)

As can be seen in the citation above, the hierarchical naming model requires that within each domain all names must be unique, but across domains they can be repeated. However, this repeating of names within separate domains still does not support PO's position, because as stated in the citation above the full global names are actually based on the hierarchy to include the other elements of the hierarchical structure to uniquely identify a single entity. The citation above gives the following example, "Notice that both WEATHER and HISTORY are repeated, but the **full global names are unique** (that is, HISTORY.ROW.ACME vs HISTORY.EUROPE.ACME)." (emphasis added). Thus, the hierarchical naming model also clearly discloses identifiers (full global names) that uniquely identify an entity (object). The citation even goes on to explain how the system handles when a client makes a request, in that if the client only specifies a name the default domain of said client is appended to the request to make a full global name.

PO argues that the combination of ONAG and OSG do not teach or suggest "wherein the location of data [...] comprises an application server in communication with the network" as required by claim 31.

**Examiner respectfully disagrees.** PO defines application server as follows, "Typically, each machine in which some portion of the data in a distributed database may reside is called an application server." Thus, it would appear that PO is attempting to argue that the combination of

ONAG and OSG does not teach a machine in which some portion of the data in a distributed database resides on. This is obviously not a reasonable interpretation of the ONAG and OSG references. In any of the discussions in ONAG and OSG, the resulting location/address provided by the system in response to a client request constitute the location/address of "a machine in which some portion of the data in a distributed database resides on" or in PO's own words, an application server. For example, this citation from the rejection:

> Oracle Names version 2.0 is a supporting product for Oracle7 release 7.3 and SQL*Net release 2.3. Oracle Names makes network address and database link information available to all nodes throughout the network. Each database server's network address is stored with a name that is used to identify it. Client applications can then request a database connection with a simple name rather than a lengthy address.

(page 20 of ONAG)

In the citation above, the database that the client is requesting a connection to is by PO's own definition an application server.

PO argues that a POSA would not be motivated to modify ONAG with OSG to satisfy the requirements of claims 1 and 31. More specifically, PO argues that because ONAG and OSG do not teach an identifier that uniquely identifies a single entity that a POSA would understand that the combination would not satisfy claim 1 and 31's requirements.

**Examiner respectfully disagrees.** As discussed above, the allegation that ONAG and OSG do not teach an identifier that uniquely identifies a single entity is not factual. Thus, the arguments based on this premise are moot.

b. Regarding the rejection of claims 10, 14, and 3 in view of ONAG, OSG, and McGarvey (pages 49-68 of PO response):

**Examiner agrees.** The claims have been confirmed as discussed in the "Statement of Reasons for Patentability and/or Confirmation".

> *queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier.*
> 　　　　　　　　　　　　　　　　　　　　　　　　　　　　(as found in claim 10)

> *sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query.*　　　　(as found in claim 14)

> *transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit.*　　　　　　　　　　　　　(as found in claim 17)

　　In a reexamination proceeding involving claims of an expired patent, claim construction pursuant to the principle set forth by the court in Phillips v. AWH Corp., 415 F.3d 1303, 1316, 75 USPQ2d 1321, 1329 (Fed. Cir. 2005) (words of a claim "are generally given their ordinary and customary meaning" as understood by a person of ordinary skill in the art in question at the time of the invention) should be applied since the expired claim are not subject to amendment. See *Ex parte* Papst-Motoren, 1 USPQ2d 1655 (Bd. Pat. App. & Inter. 1986).

　　In regards to independent claims 10 and 14 and dependent claim 3, the claims all require the use of a "redirect message comprising information for finding a location server known to have location information relevant to the location query" (as found in claim 3, similar language in claims 10 and 14). Oracle's Names Servers forward name requests up and down a hierarchy of Names Servers until the Names Server containing the desired information is reached, and the desired information is returned in the same way, traversing the network of Names Servers. This fact gives evidence to the fact that any given

Names Server has no information regarding which specific Names Server stores a desired information item. Were any given Names Server to have such information, then the Names Server would simply pass the request directly to that Names Server, instead of forwarding the request up and down a hierarchy of Names Servers. Since any given Names Server has no information regarding which specific Names Server stores a requested item, there would be no way for the Names Server to include such information in a redirect message returned to the requesting device.

In regards to dependent claim 6, the claim requires that "the location information in the location server is maintained in an indexed location store indexed by a hash table." If Oracle's Names Server had this ability, there would be no need to pass requests up and down a hierarchy of Names Servers; it could determine on its own the Names Server having the desired information and send the request directly to that Names Server. While OSG discloses the use of hashing in resolving queries, it fails to disclose the use of hashing at any given location server (i.e., by any given Names Server) to determine the location server/Names Server that contains the desired location information.

In regards to independent claim 17, the claim requires explicitly "transferring a portion of the identifiers and associated locations to a second data location server" when a performance criterion reaches a limit. Under the Phillips construction, the ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention of the requirement of explicitly "transferring a portion of the identifiers and associated locations to a second data location server" would require that the identifiers and associated locations first be stored on the first data location server and then be transferred from said first location server to said second location server. The mere concept of having more than one location servers that contain potentially different identifiers and associated locations as discussed in the ONAG and OSG references in combination with the discussions of optimization found in ONAG and OSG does not actually teach the act of "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit" as it is claimed. Neither the McGarvey nor the Rajani references cure the deficiencies of the teachings of the ONAG and OSG references. Therefore, none of the references