# Exhibit 47

Page 409

IN THE UNITED STATES DISTRICT COURT FOR

THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DISTRICT DIVISION

_____

KOVE IO, INC.,                    )

       Plaintiff,           )          Civil Action No.

  -against-                       )          1:18-cv-08175

AMAZON WEB SERVICES, INC., )

       Defendant.           )

_____)

VOLUME II

*** HIGHLY CONFIDENTIAL TRANSCRIPT ***

VIDEO-RECORDED DEPOSITION OF

MICHAEL GOODRICH PH.D.

Reichman Jorgensen LLP

400 Madison Avenue

New York, New York

09/11/2023

9:06 a.m. (EDT)

REPORTED BY:  AMANDA GORRONO, CLR

CLR NO. 052005-01

_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

Page 410

1                                        09/11/2023

2                    9:06 a.m. (EDT)

3

4        VIDEO-RECORDED DEPOSITION OF MICHAEL GOODRICH

5     Ph.D., VOLUME II, held at Reichman Jorgensen LLP,

6     400 Madison Avenue, New York, New York, before

7     Amanda Gorrono, Certified Live Note Reporter, and

8     Notary Public of the State of New York.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 411

1    A P P E A R A N C E S:

2

3    ON BEHALF OF PLAINTIFF KOVE IO, INC.:

4       Khue V. Hoang, Esquire

5       Reichman Jorgensen Lehman & Feldberg LLP

6       400 Madison Avenue, Suite 14D

7       New York NY 10017

8       PHONE: (646) 921-0704

9       E-MAIL: Khoang@reichmanjorgensen.com

10

11             -AND-

12

13      Naveed Hasan, Esquire

14      Reichman Jorgensen Lehman & Feldberg

        1909 K Street NW, Suite 800

15      Washington, D.C. 20006

        PHONE: (202) 894-7305

16      E-MAIL: Nhasan@reichmanjorgensen.com

17

18

19

20

21

22

Page 412

1   A P P E A R A N C E S:  (CONT'D)

2

3   ON BEHALF OF DEFENDANT AMAZON WEB SERVICES, INC.

4   AND THE WITNESS:

5     Bill Sigler, Esquire

6     Fisch Sigler LLP

7     5301 Wisconsin Avenue NW

8     Fourth Floor

      Washington, D.C. 20015

9     PHONE:  (202) 362-3620

      E-MAIL: Bill.Sigler@FischLLP.com

10

             - AND -

11

      Andrew Ramos, Esquire

12    Fisch Sigler LLP

      5301 Wisconsin Avenue NW

13    Washington, DC 20015

      PHONE:  +1.202.362.3522

14    E-MAIL: Andrew.Ramos@FischLLP.com

15

16

17

18   ALSO PRESENT:

19   Danny Ortega, Videographer - Digital Evidence

20   Group

21

22

Page 413

1                    I N D E X

2   WITNESS                EXAMINATION BY              PAGE

3   MICHAEL GOODRICH    MR. SIGLER                     417

4   Ph.D.

5                       MS. HOANG                      763

6

7                    E X H I B I T S

8   EXHIBIT      DESCRIPTION                           PAGE

9   Exhibit 18   Michael Goodrich Rebuttal Expert      417

10               Report...............................

11  Exhibit 19   Michael Goodrich Invalidity Report......  418

12  Exhibit 20   "Ten Emerging Technologies That Will   449

13               Change Your World" article.............

14  Exhibit 21   Ex Parte Examination request............  525

15  Exhibit 22   Ex Parte Reexamination Interview       528

16               Summary...............................

17  Exhibit 23   Ex Parte Reexamination Interview       531

18               Summary...............................

19  Exhibit 24   declaration of Michael Goodrich, Ph.D...  540

20  Exhibit 25   declaration of Michael Goodrich.........  557

21  Exhibit 26   Ex Parte Reexamination Interview       559

22               Summary...............................

Page 416

1          THE VIDEOGRAPHER:  We are now on the

2     record.  My name is Danny Ortega and I'm the

3     legal videographer from Digital Evidence

4     Group.

5          Today's date is September 11, 2023,

6     and the time is 9:06 a.m.

7          This video deposition is being held

8     at 400 Madison Avenue New York, New York, in

9     the matter of Kove versus AWS.

10          The deponent today is Michael

11     Goodrich.

12          Counsel, please identify yourself

13     for the record.

14          MR. SIGLER:  Good morning.  Bill

15     Sigler from Fisch Sigler LLP of Washington,

16     D.C., and with me today is my colleague

17     Andrew Ramos.  And we're appearing on behalf

18     of the defendant, Amazon.

19          MS. HOANG:  Khue Hoang, Reichman

20     Jorgensen Lehman & Feldberg.  With me is

21     Naveed Hasan, and we're representing

22     plaintiff, Kove, as well as Dr. Goodrich.

Page 417

1              THE VIDEOGRAPHER:  The court

2         reporter today is Amanda Gorrono, who will

3         now swear in the witness.

4    MICHAEL GOODRICH, called as a witness, having

5    been first duly sworn by a Notary Public of the

6    State of New York, was examined and testified as

7    follows:

8              THE WITNESS:  I do.

9              THE COURT REPORTER:  Thank you.

10   EXAMINATION

11   BY MR. SIGLER:

12        Q.   Good morning, Dr. Goodrich.

13        A.   Good morning.

14        Q.   You have Exhibits 18 and 19 in front

15   of you, sir?

16        A.   I do.

17        Q.   All right.  Let's start with

18   Exhibit 18.  Exhibit 18 is your Rebuttal Expert

19   Report, correct?

20              (Whereupon, Exhibit 18, Michael

21        Goodrich Rebuttal Expert Report, was marked

22        for identification.)

Page 469

1    BY MR. SIGLER:

2          Q.    Okay.  So it's your opinion that

3    Claims 17 and 18 require the servers to have this

4    capability, right?

5          A.    Yes, just from the language of the

6    claim itself.

7          Q.    Okay.

8          A.    I mean, we could read it into the

9    record, but I think it's clear from the -- the

10   elements themselves of the Claims 17 and 18.

11   Hence, in my opinion, already from the plain and

12   ordinary meaning of the terms, this is required.

13         Q.    Okay.  Let's go to the next sentence

14   in Paragraph 56 of your validity report.  And you

15   state there, "I also agree with Kove that for

16   each data location server to have this

17   capability, they must be structured in a

18   non-hierarchical cluster configuration, because

19   not every server ordered in a hierarchical

20   topology would have this capability."

21               Do you see that language, sir?

22         A.    Yes.

Page 470

1          Q.     Okay.  So it's your opinion that

2     each location server must be structured in a

3     nonhierarchical configuration, right?

4          A.     That it is my opinion that, again,

5     just based on the language of the claim itself,

6     it requires -- in order to have this ability,

7     based on the specification of the '640 patent,

8     requires that the logical organization among the

9     location servers must be a nonhierarchical

10    clustered topology.

11         Q.     Okay.  So in your view, the data

12    location servers must be structured in a

13    nonhierarchical topology, right?

14         A.     In this context for Claims 17 and

15    18, the data location server network that is

16    disclosed or claimed in Claims 17 and 18 has this

17    logical organization of nonhierarchical clustered

18    topology.  And to be clear, this does not mean

19    that every server is exactly the same distance

20    from every other server.  Instead it's that they

21    have this capability to do this type of a

22    redirect message, which implies this type of a

Page 471

1    nonhierarchical clustered topology.

2          Q.    Okay.  And in the last clause of

3    that sentence, you say that "not every server

4    ordered in a hierarchical topology would have

5    this capability," right, sir?

6          A.    Yes, I say that.

7          Q.    Okay.  So some servers ordered in a

8    hierarchical topology would be able to transmit

9    information to the client via redirect message,

10   right?

11              MS. HOANG:  Objection; vague.

12      Scope.

13         A.    That's not implied by that sentence.

14   BY MR. SIGLER:

15         Q.    Well, you say "not every server,"

16   right?

17         A.    That's right.

18         Q.    Wouldn't that imply that some

19   servers would be able to have this capability

20   that are ordered in a hierarchical topology?

21              MS. HOANG:  Objection; vague.

22      Foundation.

Page 480

1　　it.  But as we talked about this morning, I

2　　believe that the plain language of Claims 1, 6,

3　　and 15 of the '170 patent requires that the data

4　　location server network is organized in a

5　　nonhierarchical topology.

6　　　　　　　　And if asked to testify to the jury

7　　about those patents, I will stand by that

8　　opinion.  I intend to.

9　　BY MR. SIGLER:

10　　　　　Q.　　Okay.  For Claims 3, 10, and 14 of

11　　the '978 patent, do you intend to tell the jury

12　　at trial that those claims require a

13　　nonhierarchical topology for the data location

14　　servers?

15　　　　　　　　MS. HOANG:  Objection; vague.

16　　　Misstates prior testimony.

17　　　　　A.　　So, again, that's not exactly how I

18　　said it.  But if I'm given an opportunity to

19　　testify at trial about Claims 3, 10, and/or 14 of

20　　the '978 patent, I intend to stand by the

21　　opinions in my report as I've shared them with

22　　you today, including that the plain language of

Page 481

1    the claims, requires that the -- the

2    relationships the topological organizational

3    relationships in the network between the data

4    location servers, is a nonhierarchical clustered

5    topology.

6    BY MR. SIGLER:

7         Q.    In your view, what would be the harm

8    of the Court further construing those claims to

9    include those requirements?

10             MS. HOANG:  Objection; vague.

11        Scope.  Calls for speculation and legal

12        testimony.

13        A.    I'm not an attorney.  But as we've

14    discussed this morning, I've been told by

15    attorneys that it's helpful if claim construction

16    does not confuse a jury, and to be adding on what

17    are, in my opinion, additional limitations that

18    are already there in the claims and are clear, in

19    my opinion, that this is required, I believe it

20    would be redundant, which is potentially

21    confusing to a jury to add on that additional

22    language that's already there.

                                                            Page 482

1    BY MR. SIGLER:

2         Q.    Do you believe a juror reading Claim

3    17 of the '640 patent would understand that it

4    requires a nonhierarchical topology for the data

5    location servers?

6              MS. HOANG:  Objection; vague.  Calls

7         for speculation.

8         A.    I mean, we're not in trial right

9    now, but I would anticipate that after I explain

10   these terms -- this is very speculative, of

11   course -- but after I explain these terms to the

12   jury, the way that the Court has already

13   construed them, what is implied by those

14   constructions, I believe that the jury will be

15   able to understand what is required.  That's my

16   hope.  That then they will render their decision

17   based on sound principles that I've explained to

18   them.

19   BY MR. SIGLER:

20        Q.    Do you think a single juror will

21   know what a nonhierarchical topology is?

22             MS. HOANG:  Objection; vague.  Calls

Page 483

1      for speculation.  Foundation.  Scope.

2          A.   I would answer that similarly, that

3   I will do my best -- that's my intent certainly.

4   I know it's still a long ways in the future.

5   I'll do my best to explain to the jury all the

6   concepts at play in this case, some of them are

7   admittedly complicated.

8               But I believe I will be able to

9   explain that to a jury, even to a single juror on

10  the panel, in a way that then they would

11  understand and be able to render a verdict that

12  is based on sound principles.

13  BY MR. SIGLER:

14          Q.   Okay.  And you've offered opinions

15  in your validity report that certain prior art

16  doesn't meet these claims because it has

17  hierarchical topology, right?

18          A.   Again, a very broad brush terms, in

19  some cases I do distinguish the prior art,

20  because what Mr. Greene identified as location

21  servers in the prior art is not organized in a

22  nonhierarchical way, instead is organized in a

Page 484

1    hierarchical way amongst themselves; hence, would

2    not be invalidating the claims that require a

3    nonhierarchical cluster topology.

4          Q.    Okay.  And do you intend to offer

5    that opinion at trial?

6                MS. HOANG:  Objection; vague.  Calls

7       for speculation.

8          A.    If I'm asked to opine on and respond

9    to Mr. Greene's opinions with respect to any of

10   those claims, I intend to stand by my opinions in

11   my report as I have shared them with you today.

12   BY MR. SIGLER:

13         Q.    Okay.  And one of those opinions is

14   that prior art organized in a nonhierarchical

15   topology doesn't meet certain claims of the

16   asserted patents because they require

17   nonhierarchical location servers, right?

18                MS. HOANG:  Objection; vague.

19      Foundation.

20         A.    No.  That's actually the opposite of

21   what I just said.  Instead what I said is if

22   prior art is disclosing a system where what

1          Q.    The specification network connects

2     the hash function to the architecture, right?

3               MS. HOANG:  Same objection.

4          A.    I disagree.  I think that the way

5     that the hash function embodiments are explained,

6     for example in the '978 patent, in Claim 17 from

7     Lines 15 to 67 and then in the very next page,

8     then talks about the hybrid constellations, the

9     hierarchical cluster topologies indeed is a

10    connection.  It's the very next page.

11    BY MR. SIGLER:

12         Q.    Okay.  Let me ask you this:  Does

13    the specification state that it's not possible to

14    use the claimed redirect messages in a

15    hierarchical network?

16              MS. HOANG:  Objection; vague.

17         A.    Could you repeat the question,

18    please?

19    BY MR. SIGLER:

20         Q.    Does the specification state that

21    it's not possible to use the claimed redirect

22    messages in a hierarchical network?

Page 507

1           MS. HOANG:  Same objection.

2           A.     Yes.  So if we go, for example, in

3    the '978 patent, now to the discussion in Column

4    18, beginning at Line 60, and going through 25,

5    that then is now talking about the hybrid

6    hierarchical and clustered topologies in Column

7    19.  Right before that it talks about the

8    redirect messages and how there's a

9    client-centric approach and a server-centric

10   approach.  These are different embodiments that

11   are disclosed in the patent.  And the first one,

12   the client-centric approach, is now the one that

13   is being recited in the claims; namely, that a

14   client issues a request to a data location

15   server.  If it does not have the correct

16   information, it sends back an answer for the

17   client for it to then contact another server.

18   And then it says:  A successful response from the

19   second server 120b is then sent to the client.

20   Arrow 4.  This is with respect to Figure 19 in

21   the '978 patent.

22                And then it goes on to describe a

Page 508

1    server-centric approach that could apply to a

2    hierarchical topology.

3                    And then it goes on and explains in

4    more detail the difference between hybrid,

5    hierarchical, and cluster topologies; hence, to a

6    person of ordinary skill in the art who is

7    reading this, would understand that that

8    server-centric approach could be used would

9    involve things that could be called "redirect

10   messages," but now in a server-centric way where

11   it's forwarding those requests on to another

12   server, say, higher or lower in a hierarchy, that

13   then it says:  An important aspect of this

14   topology -- I'm now reading in Column 19 at Line

15   20 -- An important aspect of this topology is

16   that it pushes processing emphasis towards

17   servers 130 A, B rather than towards clients.

18          Q.    Okay.  So in your view, certain

19   embodiments disclosed in the specification only

20   apply to --

21                    MR. SIGLER:  Well, strike that.

22   BY MR. SIGLER:

Page 509

1          Q.    So in your view, specific

2    embodiments disclosed in the specification only

3    apply to specific claims, right?

4               MS. HOANG:  Objection; vague.

5        Mischaracterizes testimony.

6          A.    I'm sorry.  I'm not understanding

7    your question.

8    BY MR. SIGLER:

9          Q.    Well, you seem to be telling me that

10   a particular embodiment disclosed in the

11   specification only applies to certain claims in

12   the patent; is that -- is that correct?  Am I

13   understanding you correctly?

14              MS. HOANG:  Objection.  Misstates

15       testimony.

16         A.    No, that doesn't sound accurate.

17   Instead what I'm saying -- it sounded like you

18   were asking me -- maybe I misunderstood your

19   question -- line of questioning from the

20   beginning.

21              But it sounded like you were asking

22   me that, you know, does the claimed invention in

Page 710

1    respect to the patents-in-suit.  Like I said,

2    many of them are from Amazon, hence, we could do

3    this offline as well.  If we go to that page,

4    click on those patents, we'll see the inventors

5    who presumably knew about the patents-in-suit

6    because their patent applications cited to it.

7              Q.    And sitting here today, you can't

8    name any of those inventors?

9              A.    (Laughing.)  Sorry.  I didn't mean

10   to laugh.  No, I cannot recall with crystal

11   clarity all of those websites at Google Patents,

12   but I'd be happy to go there if you would just

13   hand me a computer that is connected to the

14   internet I can tell you that answer.

15             Q.    Would have seemed a lot easier if

16   you knew who at Amazon knew about these patents

17   in 2012 to just put their name in there, wouldn't

18   it?

19             MS. HOANG:  Objection; argumentative

20        and speculative.

21             A.    I felt this was sufficient for my

22   analysis.  Like I said, I cite to what I think is

Page 711

1     important, that I did observe Amazon was citing

2     to these patents numerous times beginning in 2012

3     and that I'm citing to the peer-reviewed papers

4     that talk about the importance of citations as

5     industry praise.

6               Q.    And you're a member of the industry

7     that's relevant here, right?

8               A.    Yes, I agree.

9               Q.    And before 2019 you had never heard

10    of Kove's patents, correct?

11              A.    That is correct.

12              Q.    Okay.  Let's go to Paragraph --

13    actually, before we go to Paragraph 1063, let's

14    go back to the double patenting discussion we

15    had.

16              And I'm going to hand you an

17    electronic copy of Dr. Greene's validity report

18    and it's cued up to Paragraph 288, which is what

19    you were asking to look at when you were

20    answering my questions about double patenting.

21              A.    Could you remind me where we were in

22    my report please?

Page 712

1        Q.    Sure.  We were at Paragraph 181.

2              MS. HOANG:  I'm going to get my

3    copy.

4              MR. SIGLER:  We can take a break.

5              THE VIDEOGRAPHER:  Time right now is

6    5:01 p.m.

7              And we are off the record.

8              (Discussion held off the record.)

9              THE VIDEOGRAPHER:  The time right

10    now is 5:02 p.m.

11             And we're back on the record.

12  BY MR. SIGLER:

13        Q.    All right.  You have Mr. Greene's

14  report on the computer screen?

15        A.    I do.  It's at Paragraph 288, which

16  is the paragraph I cite in my Paragraph 180 that

17  we were discussing earlier.

18        Q.    Okay.  And Mr. Greene, in Paragraph

19  288, doesn't make any reference to the '978

20  patent claims reciting the exact same subject

21  matter as the '640 and '170 patents, right?

22        A.    I'm not following your question.  He

Page 780

1    CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC

2                I, Amanda Gorrono, the officer

     before whom the foregoing deposition was

3    taken, do hereby certify that the foregoing

     transcript is a true and correct record of

4    the testimony given; that said testimony was

     taken by me stenographically and thereafter

5    reduced to typewriting under my direction;

6    and that I am neither counsel for, related

7    to, nor employed by any of the parties to

8    this case and have no interest, financial or

9    otherwise, in its outcome.

10               IN WITNESS WHEREOF, I have hereunto

11   set my hand this 11th day of September, 2023.

12

13

14

15   _____

16   AMANDA GORRONO, CLR

17   CLR NO:  052005 - 01

18   Notary Public in and for

19   The State of New York

20   County of Suffolk

21   My Commission No.  01G06041701

22   Expires:  01/07/2027