# Exhibit 48

| | |
|---|---|
| Kove IO, Inc.,<br><br>        Plaintiff,<br><br>  v.<br><br>Amazon Web Services, Inc.,<br><br>        Defendant. | Civil Action No. 1-18-cv-08175<br><br>Hon. Matthew F. Kennelly<br><br>**JURY TRIAL DEMANDED** |

## REBUTTAL EXPERT REPORT OF MICHAEL GOODRICH
## REGARDING VALIDITY OF U.S. PATENT NOS. 7,103,640; 7,233,978; AND 7,814,170

Executed on this 18th day of August, 2023, at Irvine, California

_____

Dr. Michael Goodrich

why certain prior art did not anticipate or render obvious the challenged claims because the art disclosed something different than what the claims claimed. For many (but not all) of the claims, this difference centered on the fact that the claim language itself made clear that the location servers were structured in a non-hierarchical topology. For example, with respect to claims 17 and 18 of the '640 patent, Kove explained what the claim language itself requires and what it means:

> Claims 17 and 18 require that "***each** of the plurality of **data location servers*** having computer executable code ***[be] configured to***" carry out specific activity. In particular, each location server must be able to "transmit[] a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the ***redirect message contains information for use by the client to calculate a location of a different data location server*** in the plurality of data location servers, ***wherein the different data location server contains the location string***."[11]

55.     Kove went on to explain that

> [b]y its plain language, the claim requires that each (i.e., every) location server must be configured to return information that the client uses to determine a second location server that contains the sought-after location string, if the first queried location server does not contain that location string.[12]

This means that

> ***each and every* server in the data location server network have the capability of transmitting information to the client that the client then processes to determine the server that contains its requested information**. This configuration **"collapses" the hierarchical composition** of Oracle Names, making it entirely different in practice and principle from what Oracle Admin discloses. Oracle Admin in no way teaches that Oracle Names network servers have this capability.[13]

56.     I agree with Kove that the plain language of claims 17 and 18 of the '640 patent

requires each server in the data location server network to be capable of transmitting information

---

reexam response"); 9/28/22 Patent Owner's Reply to Office Action in *Ex Parte* Reexamination, in Reexamination No. 90/019,034 ("9/28/22 '978 patent reexam response").

[11] 8/4/22 '640 patent reexam response at 23-24 (emphasis in original).

[12] *Id.*

[13] *Id.* (emphasis in original).

to the client via a redirect message that must contain information that would allow the client to determine the data location server with the location string information.[14] I also agree with Kove that for each data location server to have this capability, they must be structured in a non-hierarchical cluster configuration, because not every server ordered in a hierarchical topology would have this capability.[15] As such, Kove's statements did not change the scope of claims 17 or 18 (or, by extension, claim 24, which depends from claim 18) of the '640 patent. The statements merely explained the claims for what they are.

57. Kove presented similar explanations for claims 1, 6, and 15 of the '170 patent, all of which have particular claim limitations requiring each location server in the server network to know which location server among them contains the location of the desired data.[16] Accordingly, Kove's statements did not alter the scope or meaning of the claims, but rather merely explained them.

58. Mr. Greene also included quotes from Kove's office action response in the '978 reexamination to support his contention that "all claims" should be construed in his alternative fashion.[17] But Mr. Greene did not address the fact that that '978 patent reexamination did not include claims 17, 23, 24, or 30 – all of which the examiner had found to be patentable.[18] Moreover, Kove never made any statements regarding non-hierarchical topology with respect to claim 6 – a fact Mr. Greene ignores. For claims 3, 10, and 14, Kove provided the same explanations, pointing out that each includes "redirect message" limitations that require locations servers to know or provide information to ascertain where the sought-after data is. Accordingly, as in all the

---

[14] 8/4/22 '640 patent reexam response at 23-24.
[15] *Id.*
[16] 8/11/22 '170 patent reexam response at 25.
[17] Greene Invalidity Report at ¶ 109, FNs 134 and 139.
[18] 6/28/222 '978 patent reexam Non-Final Office Action at 1, 35-36.

if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, *wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string*.

Thus, both claims plainly recite the need for each server in the network to be able to return information for calculating the location of the server that contains the requested information – which is all that Kove's statement says. There is no basis, and Mr. Greene offers none, for construing a claim to repeat what the claims already say. I also note that Mr. Greene again opines that "*all* terms should be construed," without differentiation.[24] I disagree. In addition to there being no need for further construction, as I've explained, Mr. Greene also ignores that Kove's statements pertain to particular claims, not "all terms."

64. Mr. Greene opines that the terms "providing / determine / determining / retrieving location information or servers" and "return / sending / transmits / transmitting a redirect message" should be construed to add the limitation "without performing any request iterations" or "in two or fewer request iterations." In addition to being wholly unnecessary for the reasons I've explained, Mr. Greene provides no explanation for his word choice. The phrase "without performing any request iterations" does not appear in Kove's reexamination statements, nor is it clear what that phrase even means. Moreover, Mr. Greene apparently opines that every asserted claim should be similarly limited, even though Kove's statements pertained only to claims requiring "redirect messages" with specific characteristics. For example, claims 17, 23, 24, and 30 of the '978 patent were never discussed in any reexamination Mr. Greene cites because they were not subject to reexamination in those proceedings.

---

[24] Greene Invalidity Report at ¶ 113.

120.     Furthermore, Skagerwall explains that the access server identifies a target directory server that may store the desired object data.[121] The request for the object data is forwarded to the target directory server.[122] The target directory server determines whether it contains the desired location information.[123] If not, the request is returned to the access server.[124] Therefore, the access server may not be able to determine which directory stores the sought-after location information.[125]

121.     Skagerwall differs from the '170, '640, and '978 patents for multiple reasons.

122.     First, Skagerwall does not teach or suggest an identifier that uniquely identifies a single entity. Rather, Skagerwall describes a tag that can identify a group of objects or a certain type of object.[126]

123.     Second, Skagerwall is completely silent about transmitting a redirect message. Furthermore, Skagerwall's servers cannot determine which server stores the sought-after location, with certainty and/or specificity. In this regard, Skagerwall's servers cannot transmit a redirect message to a client that contains either the location server(s) that store the sought-after location or information for finding/calculating the location server storing the desired location.

124.     Third, Skagerwall does not teach or suggest transferring a portion of location information from a first server to a second server when or if the first server reaches a reaches a predetermined performance limit.

### 12.     Yocum

---

[121] *Id.* at 13:45-65.
[122] *Id.*
[123] *Id.*
[124] *Id.*
[125] *Id.*
[126] *Id.* at 6:45-48, 59-62.

| | | 1, 2, 6, 8, 12, 15 | Obvious in view of: "Minami and DNS and Karger '618/'420" | 2 | Minami + RFC1034 + Karger '618/'420 |
|---|---|---|---|---|---|
| | | | | 6 | Minami + RFC1034 (and BIND) |
| | | | | 8 | Minami + RFC1034 |
| | | | | 12 | Minami + RFC1034 + Karger '618/'420 |
| | | | | 15 | Minami |

203.    I understand that "identifier" is construed as "a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."[224] Furthermore, "location" is construed as "an encoding that is a member of a set of associations with an identifier in a location server, and that specifies where data pertaining to the entity identified by the identifier is stored."[225] "Location server" is construed as "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients."[226] Accordingly, the terms "identifier," location" "entity," "location server," and "data pertaining to the entity" are recited in each of the asserted claims either expressly or through the Court ordered claim construction. Independent claims 6 and 15 also require a "redirect message."

204.    Furthermore, claim 1 requires that each location server is configured to determine which location server stores the sought-after location information with certainty and specificity based on the plain language of claim 1. For example, claim 1 states "*at least one of the plurality of data location servers includes location information* associated with the identifier string … each one of the data location servers is configured to determine *the at least one of the plurality of data location servers* based on the hash function applied to the identifier string."[227]

---

[224] Dkt. 382 Exhibit B at 1.
[225] *Id.*
[226] *Id.*
[227] '170 Patent at Claim 1 (emphasis added).

205. Claims 6 and 15 require that the redirect include the location server(s) that store the sought-after location information with certainty and specificity based on the plain language of claims 6 and 15. For example, claims 6 and 15 require that the redirect message include the location servers *known* to have the sought-after location information.[228]

### a. Claims 6, 8, and 15 patent are not anticipated by RFC1034 and/or BIND

206. I understand that AWS and Mr. Greene allege that claims 6 and 15 and dependent claim 8 are invalid as being anticipated by "DNS," and that he relies on citations to RFC1034 and, for certain elements, BIND.[229] I disagree for the reasons below.

### i. Neither RFC1034 or BIND disclose or teach "identifier"/ "identifier string," "location," and "location information," as required by the claims 6, 8, and 15.

207. Mr. Greene alleges that in DNS, as described in RFC1034 or BIND, a "mailbox" or "host" are entities, and the Internet Protocol (IP) addresses of the "mailbox" or "host" are locations stored in name servers.[230] However, DNS, as described in RFC1034 or BIND, does not allow for an identifier to uniquely identify a single "mailbox" or "host."

208. Domain names do not have a 1-to-1 relationship with hosts or mailboxes, the purported "entities" identified by the identifier, as required by the Court's construction. For example, Mr. Greene relies on the following excerpt below.[231]

---

[228] *See* '170 patent at claims 6 and 15.
[229] Greene Invalidity Report at ¶ 337, Appendix C-1A.
[230] *See, e.g.,* Greene Invalidity Report, Appendix C-1A at 2-3.
[231] RFC1034, 14; *see also* Mr. Greene Invalidity Report, Appendix C-2A. at 6.

# *What's a Mail Exchanger, Again?*

The idea of a mail exchanger is probably new to many of you, so let's go over it in a little more detail. A simple analogy should help here: imagine that a mail exchanger is an airport, and instead of setting up MX records to instruct mailers where to send messages, you're advising your in-laws on which airport to fly into when they come visit you.

Say you live in Los Gatos, California. The closest airport for your in-laws to fly into is San Jose, the second closest is San Francisco, and the third Oakland. (We'll ignore other factors like price of the ticket, Bay Area traffic, etc.) Don't see the parallel? Then picture it like this:

```
los-gatos.ca.us.    IN    MX    1 san-jose.ca.us.
los-gatos.ca.us.    IN    MX    2 san-francisco.ca.us.
los-gatos.ca.us.    IN    MX    3 oakland.ca.us.
```

The MX list is just an ordered list of destinations that tells mailers (your in-laws) where to send messages (fly) if they want to reach a given domain (your house). The preference value tells them how desirable it is to use that destination—you can think of it as a logical "distance" from the eventual destination (in any units you choose), or simply as a "top-ten"-style ranking of the proximity of those mail exchangers to the final destination.

With this list, you're saying, "Try to fly into San Jose, and if you can't get there, try San Francisco and Oakland, in that order." It *also* says that if you reach San Francisco, you should take a commuter flight to San Jose. If you wind up in Oakland, you should try to get a commuter to San Jose, or at least to San Francisco.

217.    For the reasons above, RFC1034 or BIND does not disclose or teach "location" as required by the claims. Furthermore, RFC1034 or BIND does not disclose or teach "location information" because the construction of "location information" recites the term "location."

        **iii.**    **Neither RFC1034 or BIND disclose or teach "wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server <u>known</u> to have the location information for the desired entity," as recited by claim 6 and as required by claim 15 (emphasis added).**

218. Claims 6, 8, and 15 require a redirect message that contains the location server(s) that store the sought-after location with certainty and specificity because the redirect message includes the location server *known* to have the location information.

219. Mr. Greene points to the following portion of RFC1034 to teach this limitation: "Using the query domain name, QTYPE, and QCLASS, the name server looks for matching RRs. In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address. For example, a mailer tying [sic, trying] to send mail to Mockapetris@ISI.EDU might ask the resolver for mail information about ISI.EDU, resulting in a query for QNAME=ISI.EDU, QTYPE=MX, QCLASS=IN. The response's answer section would be."[250] However, as RFC1034 teaches, DNS's names servers cannot determine with certainty or specificity which names server stores the sought-after location information. RFC1034 states "a name server that doesn't have the requested information *may* know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address."[251] Therefore, the names server *may not* know which name server stores the sought-after location. RFC1034 further states[252]:

---

[250] RFC1034 at 17; *see also* Greene Invalidity Report, Appendix C-1A at 14.
[251] RFC1034 at 17 (emphasis added).
[252] *Id.*

```
For example, a mailer tying to send mail to Mockapetris@ISI.EDU might
ask the resolver for mail information about ISI.EDU, resulting in a
query for QNAME=ISI.EDU, QTYPE=MX, QCLASS=IN.  The response's answer
section would be:

    ISI.EDU.        MX      10 VENERA.ISI.EDU.
                    MX      10 VAXA.ISI.EDU.
```

220.     Here, the names server did not know with certainty which names server could resolve the request, so two different answers were returned in the response.[253] RFC1034 further states "The simplest mode for the server is non-recursive, since it can answer queries using only local information: the response contains an error, the answer, or a referral to some other server "closer" to the answer."[254] As such, DNS names servers are not configured to determine which names server stores the sought-after location with certainty or specificity.

221.     Furthermore, RFC1034 states: "In any system that has a distributed database, a particular name server may be presented with a query that can only be answered by some other server.  The two general approaches to dealing with this problem are 'recursive', in which the first server pursues the query for the client at another server, and 'iterative', in which the server refers the client to another server and lets the client pursue the query."[255]

222.     In RFC1034, the "recursive approach" returns an answer or error to the query without redirecting the client.[256]   Therefore, in the "recursive approach" does not allow for determining the location server storing the sought-after location with certainty and specificity.

223.     In the "iterative approach," if a names server does not contain the sought-after location, the names server asks the client to query the next names server without knowledge of whether the next names server stores the sought-after location.  For example, RFC1034 states "The

---

[253] *Id.*
[254] *Id.* at 22.
[255] *Id.* at 4.
[256] *Id.* at 23.

second address, a2, equal to the first hash value, h1 I; decrementing the first server index value, J, to produce a decremented first server index value, J-1; hashing the key value using a hashing function based upon the decremented first server index value to produce a second hash value, h2 I; and changing the second address so as to be equal to the second hash value if the second hash value is greater than the first address, and if the second hash value is less than the first hash value."[340]

291.  However, Neimat's file servers are not configured to determine which server is configured to store the location information because the file servers do not store location information. The file server stores a data record that includes the identifier of the data record and the data record itself.[341] As such, the file servers do not store the identifiers and the *associated locations* (i.e., an encoding that is a member of a set of associations with an identifier in a location server, and that specifies where data pertaining to the entity identified by the identifier is stored).

292.  Furthermore, *each* file server cannot determine which server is configured to store the record. In Neimat, if the first file server does not include the sought-after record, the first file server forwards the request to the second file server, which may also may not have the sought-after record.[342] The file servers merely forward from one file server to the next in an attempt to find the sought-after record.[343] The file servers do not know and cannot determine which file server is storing the sought after record with any specificity or certainty.

### vi.  Neither RFC1034 nor BIND cure Neimat's deficiencies

293.  As stated above, RFC1034 and BIND do not teach or suggest:

---

[340] Neimat at 9:43-55, 10:13-26; *see also id*. at Fig. 2.
[341] Neimat at 8:27-32.
[342] *Id*. at 8:48-11:64
[343] *Id.*

- "identifier," "location," and "location information," as required by claims 1 and 2.[344]

294. Furthermore, RFC1034 and BIND are not relied upon and do not teach or suggest:

- "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers," as recited by claim 1.

- "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string," as recited by claim 1.

### vii. Karger '618/'420 does not cure the deficiencies of Neimat and/or RFC1034 or BIND

295. Mr. Greene relies on Karger '618/'420 to allegedly teach using the hash function to organize location information across location servers.[345] Karger '618/'420 is not relied upon for and does not teach or suggest "identifier," "location," "location information," and "location server," as required by claims 1 and 2.

### viii. Karger '618/'420 does not teach or suggest "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers," as recited by claim 1

296. Mr. Greene points to Karger '618/'420 use of the hash function to search for documents.[346] However, Karger '618/'420 never uses the hash function to organize *location*

---

[344] *See* Section V.A.1.B.i.a.
[345] Greene Invalidity Report, Appendix C-1C at 15-20.
[346] *See e.g.,* Greene Invalidity Report, Appendix C-1C at 17-18; *see also* Karger '420 patent at 3:23-50. 6:29-41, 10:22-34 and '618 patent at 3:18-44, 6:21-33, 10:13-25, 18:14-17, 19:47-50.

Karger '618/'420 to satisfy the requirements of claims 1 and 2 because Neimat, RFC1034 and BIND, and Karger '618/'420 do not contemplate organizing location information across location servers using a hash function. Mr. Greene does not provide any support to show that organizing location information across location servers using the hash function was obvious and well-known in the art. Furthermore, Neimat, RFC1034 and BIND, and/or Karger '618/'420 do not contemplate allowing each of the servers to determine which server stores the sought-after data by applying a hash function to an identifier.

304. For the reasons above, any rationale to modify Neimat, RFC1034 or BIND with Karger '618/'420 to satisfy these claim limitations is based on impermissible hindsight.

305. Third, Mr. Greene alleges that a POSITA would have reasonable expectation of success to modify Neimat with RFC1034 or BIND.[362] However, Mr. Greene ignores that the "reasonable expectation" standard requires that there is a reasonable expectation of success to modify Neimat with RFC1034 or BIND *to satisfy the claim requirements*. In my opinion, a POSITA would not have reasonable expectation of success satisfying the requirements of 1 and 2 by attempting modify and/or combine Neimat and RFC1034 or BIND because doing so would require changing the entire storage architecture of Neimat and RFC1034 or BIND.[363] That is, a POSITA would have to modify Neimat's database structure to require the record key values to uniquely identify the record and/or Neimat's file servers to store location of records in the file servers.[364] Alternatively or in addition to, a POSITA would have to modify RFC1034 or BIND's domain names to uniquely identify a host and/or the location to point to the data pertaining to the

---

[362] Greene Invalidity Report at ¶¶ 356-357.
[363] *See* Sections V.A.1.B.i.a-b, V.A.2.A.i.a-b.
[364] *See* Sections V.A.2.A.i.a.

host, rather than the host itself.[365] Neimat and RFC1034 or BIND are completely devoid of such teachings or suggestions. In this regard, attempting modify and/or combine Neimat and RFC1034 or BIND to satisfy the requirements of claims 1 and 2 would require changing the basic underpinning of Neimat and/or RFC1034 or BIND. Therefore, in my opinion, a POSITA would not have a reasonable expectation of success to modify Neimat with RFC1034 or BIND to satisfy the requirements of claims 1 and 2.

306. Furthermore, a POSITA would not have reasonable expectation of success satisfying the requirements of claims 1 and 2 by attempting modify and/or combine Neimat, RFC1034 or BIND, and/or Karger '618/'420 because doing so would require changing the architecture of Neimat's file servers and/or DNS's names servers. Neimat, RFC1034 or BIND, and/or Karger '618/'420 are completely devoid of teachings or suggestions for organizing location information across location servers using a hash function and allowing file servers to determine which server is storing the sought after information with specificity or certainty by applying a hash function to an identifier. In this regard, attempting modify and/or combine Neimat, RFC1034 or BIND, and/or Karger '618/'420 to satisfy the requirements of claims 1 and 2 would require changing the basic underpinning of Neimat, RFC1034 or BIND, and/or Karger '618/'420.

307. For the reasons above, the combination of Neimat, RFC1034 or BIND, Karger '618/'420 does not render claims 1 and 2 obvious.

**f.** **Claims 6, 8, and 15 of the '170 patent are not obvious in view of Neimat in combination with RFC1034 and/or BIND**

308. I understand that AWS and Mr. Greene alleges that claims 6, 8, and 15 are obvious in view of Neimat, RFC1034 and/or BIND, and Karger '618/'420.[366] But Mr. Greene does not

---

[365] *See* Section V.A.1.B.i.a.
[366] Greene Invalidity Report at ¶ 354, Appendix C-1C.

"location," and/or "location server," as required by the claims.[422] In RFC1034 and/or BIND, a domain name can identify multiple different hosts.[423] Furthermore, an IP address of a host (e.g., the alleged location) is only associated with the host and does not provide the location of the data pertaining to the host.[424]

346.    For the reasons above, any rationale to modify Minami and/or RFC1034 and/or BIND to satisfy these claim limitations is based on impermissible hindsight.

347.    Third, Mr. Greene alleges that a POSITA would have reasonable expectation of success to modify Minami with RFC1034 and/or BIND.[425] However, Mr. Greene ignores that the "reasonable expectation" standard requires that there is a reasonable expectation of success of modifying Minami with RFC1034 and/or BIND *to satisfy the claim requirements*. In my opinion, a POSITA would not have reasonable expectation of success satisfying the requirements of claims 6 and 8 by attempting modify and/or combine Minami and RFC1034 and/or BIND because doing so would require changing the entire storage architecture of each. That is, a POSITA would have to modify Minami's database structure to require the record key values to uniquely identify the record and/or Minami's file servers to store location of records in the file servers.[426] Alternatively or in addition to, a POSITA would have to modify RFC1034, and BIND's domain names to uniquely identify a host and/or the location to point to the data pertaining to the host, rather than the host itself. [427] Furthermore, Minami and RFC1034 and/or BIND are completely devoid of teachings or suggestions to allow for file servers or name servers to send a redirect message that

---

[422] *See* Sections VIII.A.1.h.i-ii.
[423] *See* Section VIII.A.1.h.v.; *see also* RFC1034 at 14-17.
[424] *See e.g., id.*
[425] Greene Invalidity Report at ¶¶ 366-367.
[426] *See* Minami at 8:61-9:67, 12:49-56.
[427] *See* RFC1034 at 14-17.

includes the location server *known* to include the sought-after location with certainty and specificity.[428] In this regard, attempting modify and/or combine Minami and RFC1034 and/or BIND to satisfy the requirements of claims 6 and 8 would require changing their basic underpinnings, which would require undue experimentation.

### vii. Minami and RFC1034 and/or BIND do not render claims 6, 8, and 15 obvious

348. For the reasons above, Minami and RFC1034 and/or BIND do not render claims 6 and 8 obvious and Minami alone does not render claim 15 obvious. Claim 8 depends from claim 6 and is not rendered obvious by Minami and RFC1034 and/or BIND by virtue of its dependency to claim 6 and its own respective features.

### i. Claims 1 and 2 of the '170 patent are not obvious in view of Minami, RFC1034 and/or BIND, and Karger '618/'420

349. Mr. Greene alleges that claims 1 and 2 are obvious in view of Minami, in combination with RFC1034 and/or BIND and Karger '618/'420.[429] In my opinion, the combination of Minami, RFC1034 and/or BIND, and Karger cannot satisfy the requirements of claims 1 or 2.

350. For the reasons stated above, Minami does not teach or suggest "identifier"/ "identifier string," "location," "location information," "location server," and "entity," as required by claims 1 and 2.

### i. Minami does not teach or suggest "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers," as recited by claim 1 of the '170 patent

---

[428] *See* Sections VIII.A.1.h.i-ii.
[429] Greene Invalidity Report ¶¶ 364-370, Appendix C-1D.

373. For the reasons above, Minami, RFC1034 and/or BIND, and Karger '618/'420 does not render claim 12 obvious.

## 2. '640 Patent

374. Kove asserts claims 17, 18, and 24 of the '640 patent. Claims 17 and 18 are independent claims. Claim 24 depends from claim 18. I understand Mr. Greene opines that these claims are anticipated by or rendered obvious in view of certain prior art, as summarized below. For the reasons detailed below and elsewhere in my report, I disagree with Mr. Greene, and have determined that each asserted claim of the '640 patent is valid.

| APPENDIX C OF THE GREENE REPORT | | | | | |
|---|---|---|---|---|---|
| Patent | Ex. | Claims | Stated Summary of Prior Art | Claim | Charted Prior Art Combinations |
| '640 | 2a | 17, 18 | Anticipated by: "BIND 8.1 version of DNS, the operation of which is described in BIND and DNS, RFC 1034, Sherman, and Karger/Sherman" | 17 | RFC1034 (and BIND) |
| | | | | 18 | RFC1034 (and BIND) |
| | | 24 | Obvious in view of: (same) | 24 | RFC1034 (and BIND) + Karger '618/'420 |
| | 2b | 17, 18, 24 | Anticipated by: "Cache Resolver system" | 17 | Sherman (Karger/Sherman) + RFC1034 (and BIND) |
| | | | | 18 | Sherman (Karger/Sherman) + RFC1034 (and BIND) |
| | | | | 24 | Sherman (Karger/Sherman) + RFC1034 |
| | 2c | 17, 18 | Obvious in view of: "Neimat and DNS" | 17 | Neimat + RFC1034 |
| | | | | 18 | Neimat + RFC1034 |
| | | 24 | Obvious in view of: "Neimat and DNS and Karger '618/'420" | 24 | Neimat + RFC1034 + Karger '618/'420 |
| | 2d | 17, 18 | Obvious in view of: "Minami and DNS" | 17 | Minami + RFC1034 |
| | | | | 18 | Minami + RFC1034 |
| | | 24 | Obvious in view of: "Minami and DNS and Karger '618/'420" | 24 | Minami + RFC1034 + Karger '618/'420 |

375. I understand the terms "identifier"/"identifier string" are construed as "a unique encoding that identifies an individual entity, and with which zero or more location strings are

associated in a location server."[463]  Also, "location" is construed as "an encoding that is a member of a set of associations with an identifier in a location server, and that specifies where data pertaining to the entity identified by the identifier is stored."[464]  And the term "location information" is construed as one or more identifiers and their associated locations.[465]  "Location server" is construed as "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients."[466]  Accordingly, the terms "identifier," "location" "entity," "location server," and "data pertaining to the entity" are recited in each of the asserted claims either expressly or through the Court ordered claim construction.  Claims 17 and 18 require "redirect messages."

376.    Claims 17 and 18 require that the redirect messages includes information for the client to calculate the location of the location server that stores the sought-after location string with certainty and specificity. For example, claims 17 and 18 state "the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string.[467] In my opinion, the Court ordered constructions and/or AWS's alternative constructions do not affect this requirement. Therefore, claims 17 and 18 require that the redirect message includes information for the client to calculate the location of the location server that stores the sought-after location string with certainty and specificity based on the on the Court ordered constructions and AWS's alternative constructions.

---

[463] Dkt. 382 Exhibit B at 1.
[464] *Id.*
[465] Dkt. 484 at 35.
[466] *Id.*
[467] *See* '170 patent at claims 6 and 15.

### a. Claims 17 and 18 of the '640 patent are not anticipated by RFC1034 and/or BIND

377.     Mr. Greene alleges that claims 17 and 18 are invalid as being "anticipated by the BIND 8.1 version of DNS, the operation of which is described in BIND and DNS, RFC1034, Sherman, and Karger/Sherman."[468]     But Mr. Greene does not cite to or otherwise rely on either Sherman or Karger/Sherman as disclosing any element of claims 17 and 18, and so I do not address either of those references here, however, I reserve the right to so if Mr. Greene is permitted to supplement his opinions with these references.

378.     Mr. Greene points only to RFC1034 as allegedly disclosing every element of claims 17 and 18.  Mr. Greene includes "*see also*" citations to BIND, but only for certain (not all) elements of the claims.

379.     In my opinion, neither RFC1034 nor BIND, individually or in combination, disclose the requirements of claims 17 and 18 for at least the following reasons.

#### i. Neither RFC1034 or BIND allows for an identifier/identifier string to uniquely identify a single entity, as required by claims 17, 18, and 24

380.     Mr. Greene alleges that in DNS, as described in RFC1034 or BIND, a "mailbox" or "host" are entities, and the Internet Protocol (IP) addresses of the "mailbox" or "host" are locations stored in name servers.[469] However, for the reasons indicated above, neither RFC1034 nor BIND disclose or teach "identifier string," as required by claims 17, 18, 24.[470]

#### ii. Neither RFC1034 or BIND discloses or teaches "location" and "location information" as required by the claims 17, 18, and 24.

---

[468] Appendix C, Exhibit 2a at 1.
[469] *See, e.g.,* Greene Invalidity Report, Appendix C-2A at 3-7, 8-10.
[470] Section VIII.A.1.a.i.

14 states "the redirect message comprising information for finding a location server storing the entity identified in the query."[576]

> ### a. Claims 3, 6, 10, and 14 are not anticipated by are not anticipated by RFC1034 and/or BIND

459.    I understand that AWS and Mr. Greene allege that claims 1, 3, 6, 10, and 14 are invalid as being anticipated by "DNS," and that he relies on citations to RFC1034 and, for certain elements, BIND.[577]  I disagree for the reasons below.

> ### i. Neither RFC1034 or BIND disclose or teach "identifier"/ "identifier string", "location"/ "data location," and "location information," as required by the claims 3, 6, 10, and 14

460.    As indicated above, RFC1034 or BIND do not teach or disclose "identifier," "location," and "location information," as required by claims 3, 6, 10, and 14.[578]

> ### ii. Neither RFC1034 or BIND disclose or teach "the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server <u>known</u> to have location information relevant to the location query," as recited by claim 3 and as required by claims 10 and 14 (emphasis added)

461.    Claims 3, 10, and 14 of the '978 patent require that the redirect message contain information that allows for finding the location server storing the sought-after location with certainty and specificity because claims 3, 10, and 14 require the redirect message to include the location server *known* to have the location information.

---

[576] *Id*. at claim 14.
[577] Greene Invalidity Report at ¶ 337, Appendix C-3A.
[578] Section VIII.A.1.a.i-ii.

462.	Mr. Greene points to the following excerpt of RFC1034 to satisfy the claim requirements: "[i]n addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address."[579]

463.	However, as RFC1034 teaches, DNS's names servers cannot determine with certainty or specificity which names server stores the sought-after location information. RFC1034 states "a name server that doesn't have the requested information _may_ know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address."[580]  Therefore, the names server *may not* know which name server stores the sought-after location.  RFC1034 further states[581]:

```
For example, a mailer tying to send mail to Mockapetris@ISI.EDU might
ask the resolver for mail information about ISI.EDU, resulting in a
query for QNAME=ISI.EDU, QTYPE=MX, QCLASS=IN.  The response's answer
section would be:

    ISI.EDU.        MX      10 VENERA.ISI.EDU.
                    MX      10 VAXA.ISI.EDU.
```

464.	Here, the names server did not know with certainty which names server could resolve the request, so two different answers were returned in the response.[582] RFC1034 further states "The simplest mode for the server is non-recursive, since it can answer queries using only local information: the response contains an error, the answer, or a referral to some other server

[579] RFC1034 at 17; *see also* Greene Invalidity Report, Appendix C-3A at 7-8.
[580] RFC1034 at 17 (emphasis added).
[581] *Id.*
[582] *Id.*