# Exhibit 61

Page 417

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

_____

KOVE IO, INC.,                )
                              )
            Plaintiff,        )
                              )
v.                            ) No. 1:18-cv-08175
                              )
AMAZON WEB SERVICES, INC.,    )
                              )
            Defendant.        )
_____)     VOLUME II

HIGHLY CONFIDENTIAL

Video-recorded deposition of JOHN OVERTON, PH.D., taken at 161 North Clark Street, Chicago, Illinois, before Donna M. Kazaitis, IL-CSR, RPR, CRR, commencing at the hour of 8:06 a.m. on Wednesday, May 17, 2023.

_____

DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

```
 1   APPEARANCES:
 2
 3   ON BEHALF OF THE PLAINTIFF:
 4
 5       REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
 6       BY:   JAIME F. CARDENAS-NAVIA, ESQ.
               400 Madison Avenue
 7             Suite 14D
               New York, New York 10017
 8             212.381.1965
               jcardenas-navia@reichmanjorgensen.com
 9
10
11   ON BEHALF OF THE DEFENDANT:
12
         FISCH SIGLER LLP
13       BY:   R. WILLIAM SIGLER, ESQ.
               ALAN M. FISCH, ESQ.
14             ANDREW RAMOS, ESQ.
               5301 Wisconsin Avenue NW
15             Fourth Floor
               Washington, DC 20015
16             202.363.3500
               bill.sigler@fischllp.com
17             alan.fisch@fischllp.com
               andrew.ramos@fischllp.com
18
19
20   ALSO PRESENT:
21       Joseph Salinas   (Legal Videographer)
22
```

Page 426

1          THE VIDEOGRAPHER: This is Tape Number
2   2 of the videotaped deposition of John Overton
3   taken by the defendant in the matter of Kove
4   v. AWS in the United States District Court for the
5   Northern District of Illinois, Eastern Division,
6   Case Number 1:18-cv-08175.
7          This deposition is being held at
8   161 North Clark, Chicago, Illinois, 60601, on
9   May 17, 2023. The time is now 8:06 a.m.
10         My name is Joseph Salinas. I'm the
11   legal videographer from Digital Evidence Group.
12   The court reporter is Donna Kazaitis in
13   association with Digital Evidence Group.
14         Will counsel please introduce
15   themselves for the record.
16         MR. CARDENAS-NAVIA: Jaime
17   Cardenas-Navia of Reichman Jorgensen Lehman &
18   Feldberg on behalf of the plaintiff Kove and the
19   witness, Dr. Overton.
20         MR. SIGLER: Bill Sigler of Fisch
21   Sigler LLP. I'm joined today by my colleagues
22   Alan Fisch and Andrew Ramos, and we're here

1  representing the defendant, Amazon.

2          THE VIDEOGRAPHER:  Will the court

3  reporter please swear in the witness.

4          JOHN OVERTON, PH.D.,

5  having been previously duly sworn, was examined

6  and testified further as follows:

7                EXAMINATION

8                 (Resumed)

9  BY MR. SIGLER:

10      Q.  Welcome back, Mr. Overton.

11      A.  Good morning.

12      Q.  Did you do anything last evening to

13  prepare for your deposition time today?

14      A.  I did not.

15      Q.  Did you speak with your attorney last

16  night in preparing for the deposition today?

17      A.  I did not.

18      Q.  Let's go back to Exhibit 52 that we

19  were discussing towards the end of the day

20  yesterday.

21      A.  I have it.

22      Q.  If you could go to Page 9, please.

1    '978, '640, and '170 Patents would work with a

2    B-tree storage solution; right?

3          MR. CARDENAS-NAVIA: Objection to

4    form, incomplete hypothetical, and calling for a

5    legal conclusion and expert opinion.

6          THE WITNESS: Could you restate the

7    question?

8          MR. SIGLER: Sure.

9    BY MR. SIGLER:

10      Q. Your NDTP idea is reflected in the

11    '978, '640, and '170 Patents; right?

12      A. Yes.

13      Q. That NDTP idea would work with a

14    B-tree storage solution; right?

15         MR. CARDENAS-NAVIA: Objection to

16    form, vague.

17         THE WITNESS: It could.

18    BY MR. SIGLER:

19      Q. Let's go to Slide 20, please. Slide

20    20 has the title "Example (1): E911 Position

21    Caching." Do you see that, sir?

22      A. Yes.

1          Q.    You didn't invent the concept of
2    caching data; did you?
3          A.    That is correct.
4          Q.    All the way at the bottom of that
5    slide it says:  "Rejected directory services
6    because of poor update performance."  Do you see
7    that?
8          A.    I do.
9          Q.    What's the poor update performance
10   you're referring to there?
11         A.    Directory services are very stateful
12   and additionally achieve performance frequently by
13   replication.  And replication structures require
14   multiple updates across a network, which is
15   inefficient and makes it difficult to provide
16   dynamic performance, responsive dynamic
17   performance.
18         Q.    The rejected directory service note
19   there, would that be a reference to clients
20   requesting data from a server and the server
21   wouldn't have it?
22         A.    No.

1　　　　Q.　All right.  Let's go to Slide 23,
2　please.
3　　　　　　　MR. CARDENAS-NAVIA:  Which slide?
4　　　　　　　MR. SIGLER:  23.
5　BY MR. SIGLER:
6　　　　Q.　There's a Figure 5 there on Slide 23.
7　Do you see that?
8　　　　A.　I do.
9　　　　Q.　And it shows NDTP being used with DNS;
10　right?
11　　　　A.　Yes.
12　　　　Q.　So that shows NDTP being used with a
13　hierarchical system; right?
14　　　　　　　MR. CARDENAS-NAVIA:  Objection to
15　form, vague.
16　　　　　　　THE WITNESS:  I'm not sure if I
17　understand the question.
18　BY MR. SIGLER:
19　　　　Q.　DNS is a hierarchical system; right?
20　　　　A.　It is.
21　　　　Q.　So that figure shows NDTP being used
22　with a hierarchical system; right?

```
 1  BY MR. SIGLER:
 2       Q.   I can't remember if it was yesterday
 3  or today, but I believe you described your
 4  invention as distributed hash tables on
 5  localities?
 6       A.   For location information.
 7       Q.   So would distributed hash tables used
 8  on other parts of a network infringe the claims of
 9  your patents?
10            MR. CARDENAS-NAVIA:  Objection to
11  form, vague, to the extent it calls for a legal
12  conclusion and expert testimony.
13            THE WITNESS:  I couldn't make a legal
14  conclusion.
15  BY MR. SIGLER:
16       Q.   Do you know what double patenting is?
17       A.   Yes, or I know the concept, heard of
18  the concept.  I don't know if I know it
19  specifically in the legal terms when I'm in a room
20  with legal people.
21       Q.   Well, are you aware that you can't
22  claim the same invention multiple times?
```

1            MR. CARDENAS-NAVIA:  Objection to
2   form, vague, calls for speculation, lack of
3   foundation.
4            THE WITNESS:  Could you restate that?
5   BY MR. SIGLER:
6       Q.   Let me ask you this:  Are there any
7   differences in the claims between your three
8   patents?
9            MR. CARDENAS-NAVIA:  Objection to
10  form, vague.
11           THE WITNESS:  That's also a legal
12  conclusion I think.
13  BY MR. SIGLER:
14      Q.   Okay.  I thought you testified a few
15  moments ago that the Karger paper wasn't material
16  to the inventions claimed in your patents.  Is
17  that what you said?
18      A.   When I looked at the abstract or some
19  portion of it as I was reading it, it was talking
20  about caching.  And what we were doing was not
21  about caching.
22      Q.   You were able to determine on your own

1　that that paper wouldn't be material to the
2　examiner's examination of your applications;
3　right?
4　　　　A.　I don't know that I'm expert in any of
5　this.  But when I looked at that, it would never
6　occur to me that that would be germane because
7　that's about caching and one of the critical
8　components, not the only one, but one very
9　foundational component of our patents and of the
10　technology is to eliminate caching.  You can
11　deploy it that way but that's not the part that's
12　the most distinctive.
13　　　　Q.　And that's your view; right?
14　　　　A.　I think it's -- yes, yes, that's my
15　view.
16　　　　Q.　Can you take out the '978 Patent,
17　please.
18　　　　A.　Sure.
19　　　　Q.　And what exhibit number is that?
20　　　　A.　12.
21　　　　Q.　Can you turn to the claims, please?
22　　　　A.　Sure.

1	Q.  Specifically -- sorry, I had the wrong
2	patent.  That was the problem.
3	        Can you take out the '640 Patent.
4	What exhibit number is that, sir, for the record?
5	A.  11.
6	Q.  Let's go to Claim 24 of that patent,
7	please.  Claim 24 says:  "The system of Claim 18
8	wherein the location information comprises a
9	portion of a hash table distributed over the
10	plurality of data location servers."  Do you see
11	that there, sir?
12	A.  I do.
13	Q.  And that Claim 24 in the '640 Patent
14	describes hashing location information; right?
15	        MR. CARDENAS-NAVIA:  Objection to
16	form, mischaracterizes the document.
17	        THE WITNESS:  I'm not a lawyer and
18	these are claims.  I don't think I'm qualified to
19	discuss claims.
20	BY MR. SIGLER:
21	Q.  You're not qualified to discuss the
22	claims of your own patents?

Page 826

1  STATE OF ILLINOIS )

2  COUNTY OF C O O K )

3      I, Donna M. Kazaitis, CRR, RPR, IL-CSR

4  No. 084-003145, do hereby certify:

5      That the foregoing deposition of JOHN

6  OVERTON, PH.D. was taken before me at the time and

7  place therein set forth, at which time the witness

8  was put under oath by me;

9      That the testimony of the witness and all

10 objections made at the time of the examination

11 were recorded stenographically by me, were

12 thereafter transcribed under my direction and

13 supervision and that the foregoing is a true

14 record of same.

15     I further certify that I am neither counsel

16 for nor related to any party to said action, nor

17 in any way interested in the outcome thereof.

18     IN WITNESS WHEREOF, I have subscribed my name

19 this 30th day of May, 2023.

20     _____

21     DONNA M. KAZAITIS, IL-CSR, RPR, CRR

22     IL-CSR License No. 084-003145