# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Hon. Matthew F. Kennelly |
| v. | Jury Trial Demanded |
| Amazon Web Services, Inc., | |
| Defendant. | |

## PLAINTIFF KOVE IO, INC.'S LR 56.1(b)(2) RESPONSE TO DEFENDANT AMAZON WEB SERVICES, INC.'S LR 56.1(a)(2) STATEMENT OF MATERIAL FACTS

Under Federal Rule of Civil Procedure 56 and Local Rule 56.1(b)(2), Plaintiff Kove IO, Inc.'s ("Kove") submits this Response to AWS's Statement of Material Facts (Dkt. 687) regarding AWS's Motion for Summary Judgment.

1.    **STATEMENT:** Plaintiff Kove, Inc. ("Kove") alleges that Amazon's Simple Storage Service ("S3") and DynamoDB ("DDB") (together, the "Accused Products") infringe Kove's '640, '170, and '978 patents (collectively, the "Kove Patents").[1]

**CITATION [1]:** Ex. 1 ('640 patent), Ex. 2 ('170 patent), Ex. 3 ('978 patent), Ex. 4, Kove's March 2, 2023 Fourth Amended Final Infringement Contentions. Exhibits are attached to the accompanying declaration of R. William Sigler.

**RESPONSE: Admitted**.

2.    **STATEMENT:** The Kove Patents describe a location service called "network distributed tracking wire transfer protocol" ("NDTP") for "storing and retrieving data across a distributed data collection."[2] The Kove Patents each describe how to locate particular units of data within a distributed database, *i.e.*, specific ways to answer the question "Where is my data?":

> A distributed database is one where data is stored and retrieved among multiple machines connected by a network. Typically, each machine in which some portion of the data in a distributed database may reside is called an application server. One commonly asked question in an application server environment is: Where is data associated with a particular entity in a distributed database? The data location is a key question when a distributed database has highly dynamic, and even spontaneous, data distribution properties.[3]

**CITATION [2]:** Ex. 1 ('640 patent) at abstract, Ex. 2 ('170 patent) at abstract, Ex. 3 ('978 patent) at abstract and 4:20-25.

**CITATION [3]:** Ex. 1 at 1:56-65, Ex. 2 at 1:56-65, Ex. 3 at 1:59-67.

**RESPONSE: Admitted in part and disputed in part; objection**.  Kove objects to this statement as not material.  Kove objects to this statement, as it is not a statement of fact but rather a characterization of the Kove Patents not appropriate for summary judgment.  The scope and interpretation of patents has been determined by the Court through the claim construction process, as set forth in Dkt. 484.  Kove disputes AWS's characterization of the patents as incorrect, incomplete, not material, and not supported by the cited evidence.  Because AWS purports to

characterize the Kove Patents as a whole, Kove refers the Court to the patents in their entirety as its basis for opposing this statement. *See* Ex. K5 ('978 patent); Ex. K6 ('170 patent); Ex. K4 ('640 patent).

Disputed as to the term "location service." AWS does not define "location service," and the term does not appear in the claims or specifications of the Kove Patents, nor in the Court's claim construction. Disputed as to the term "locate particular units of data within a distributed database" for the same reasons.

Admitted that the statement accurately quotes the '978 patent. Disputed that the quoted language appears in the '640 and '170 patent specifications.

3. **STATEMENT:** The Kove Patents teach a network of location servers to answer that question. The Kove Patents disclose that when a client seeks a particular data item, the client makes a query, or sends a request, to the location server for that particular item's network location. The Kove Patents' specifications state:

> As shown in FIG. 11, a client 112 consults the server constellation 110…which returns location strings in response to a client 112 request. Once the client 112 has the location string for a particular unit of data, the client 112 contacts and retrieves information directly from the data repository 114.[4]



**CITATION [4]:** Ex. 1 at 1:56-65, Ex. 2 at 17:3-9, Ex. 3 at 1:59-67.

**RESPONSE: Admitted in part and disputed in part; objection**.  Kove objects to this statement as not material.  Kove objects to this statement, as it is not a statement of fact but rather a characterization of the Kove Patents not appropriate for summary judgment.  The scope and interpretation of the asserted patents has been determined by the Court through the claim construction process, as set forth in Dkt. 484.  Kove disputes AWS's characterization of the patents as incorrect, incomplete, not material, and not supported by the cited evidence.  Because AWS purports to characterize the Kove Patents as a whole, Kove refers the Court to the patents in their entirety as its basis for opposing this statement.  *See* Ex. K5 ('978 patent); Ex. K6 ('170 patent); Ex. K4 ('640 patent).

Disputed as to the phrase "the location server," which lacks an antecedent basis and so has no apparent meaning, and thus cannot be supported by the cited evidence.

Admitted that the specifications of the '170 and '640 patents contain the quoted language and displayed figure.  Disputed that the '978 patent contains the quoted language and image, as the language does not appear in the patent specification and the figure is not included in the '978 patent.

4.     **STATEMENT:** Kove asserts claims 17, 18, and 24 of the '640 Patent, claims 1, 2, 6, 8, 12, and 15 of the '170 Patent, and claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 Patent against Amazon the "Asserted Claims").[5]  The following Kove Infringement Contentions included these assertions:

- Kove's Final Infringement Contentions (February 13, 2020)[6]

- Kove's Amended Final Infringement Contentions (June 1, 2020)[7]

- Kove's Third Amended Final Infringement Contentions (March 7, 2022)[8]

- Kove's Fourth Amended Final Infringement Contentions (March 2, 2023)[9]

**CITATION [5]:** Ex. 4 , Kove's March 2, 2023 Fourth Amended Final Infringement Contentions.

**CITATION [6]:** Ex. 5.

**CITATION [7]:** Ex. 6.

**CITATION [8]:** Ex. 7.

**CITATION [9]:** Ex. 4.

**RESPONSE: Admitted**.

5. **STATEMENT:** The Asserted Claims comprise four groups: the "Knowledge Claims" (claims 17, 18, and 24 of the '640 patent, claims 1, 2, 6, 8, 9, 12, and 15 of the '170 patent, and claims 3, 6, 10, and 14 of the '978 patent), the "Transfer Claims" (claims 17, 23, 24, and 30 of the '978 patent), the "Redirect Claims" (claims 17, 18, and 24 of the '640 patent, claims 3, 10, and 14 of the '978 patent, and claims 6, 8, 12, and 15 of the '170 patent), and the "Hashing Claims" (claim 24 of the '640 patent, claims 6, 9, and 12 of the '978 patent, and claims 2 and 12 of the '170 patent).[10]

**CITATION [10]:** Ex. 8, 08/18/2023 Grama Report, ¶¶ 94-104.

**RESPONSE: Disputed; objection**. Kove objects to this statement as not material. Kove objects to this statement as not containing a fact, but rather a subjective "grouping" of various patent claims, which is not appropriate for summary judgment. To the extent there is any factual content, the statement is disputed as not supported by the cited evidence.

6. **STATEMENT:** Each of the Asserted Claims describes the location server's role in the same way. The '978 Patent includes asserted claims in each group: for example, Redirect and Knowledge Claim 3 and Hashing and Knowledge Claim 6. Both of those claims depend from claim 1. Thus, claim 1 is representative of the Kove Patents' description of the role location servers play in the data retrieval process. It states:

1. A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising:

> a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity

> a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and

> programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity.[11]

The United States Patent & Trademark Office ("Patent Office") cancelled claim 1, along with claim 31, of the '978 Patent, finding it lacked novelty and was invalid in *ex parte* reexamination Control No. 90/019,034.[12]  Representative language for the Knowledge Claims is found in claim 18 of the '640 Patent, which states in-part:

> wherein the redirect message contains information for use by the client to calculate a location for a different data location server in the plurality of data location servers, wherein the different data location server contains the location string.[13]

Representative language for the Transfer Claims is found in claim 17 of the '978 Patent, which states in-part:

> transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit.[14]

Representative language for the Redirect Claims is found in claim 15 of the '170 Patent, which states in-part:

> sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information.[15]

Representative language for the Hashing Claims is found in claim 1 of the '170 Patent, which states in-part:

> the portion of the data location information included in a corresponding one of the data location servers is *based on a hash function used to organize the data location information* across the plurality of data location servers.[16]

**CITATION [11]:** Ex. 3 at 25:24-44.

**CITATION [12]:** Ex. 3, Reexamination Certificate, 1:13, Ex. 45, '034 Reexam. 10/27/2022 FOA at 16-20.

**CITATION [13]:** Ex. 1, 22:65-23:2.

**CITATION [14]:** Ex. 3, 27:40-43.

**CITATION [15]:** Ex. 2, 15:44-48.

**CITATION [16]:** Ex. 2, 21:2-6.

**<u>RESPONSE</u>: Disputed; objection**.  Kove objects to this statement as non-compliant with Dkt. 676 and L.R. 56.1(d), which limit the number of paragraphs allowed in the moving party's statement of facts and require that each paragraph be "concise."  This paragraph contains statements relating to three unrelated and distinct topics: representative claims regarding "the role location servers play," the Patent Office's reexamination of the '978 patent, and representative language for each of AWS's suggested claim groupings.

*Response to assertions regarding "representative language"*: **Disputed; objection**. Kove objects to this statement as not material.  Kove objects to this statement as improper characterization of the Kove Patents and the Asserted Claims.  The scope and interpretation of the Asserted Claims has been determined by the Court through the claim construction process, as set forth in Dkt. 484.  Kove disputes AWS's characterization of the patents and claims—including the assertions that certain claims or portions of claims are "representative" of other claims or groups

of claims—as incorrect, incomplete, not material, and not supported by the cited evidence or language of the asserted claims. *See* Ex. K5 ('978 patent) at claims 3, 6, 10, 14, 17, 23, 24, 30; Ex. K6 ('170 patent) at claims 1, 2, 6, 8, 12, 15; Ex. K4 ('640 patent) at claims 17, 18, 24.

*Response to assertions regarding the reexamination of the '978 patent:* **Admitted in part and disputed in part; objection**. Kove objects to this statement as not material, as Kove is not asserting claims 1 and 31 of the '978 patent, and because reexamination proceedings are not material to any of AWS's bases for summary judgment.

Admitted that the Patent Office cancelled claims 1 and 31 of the '978 patent through *ex parte* reexamination Control No. 90/019,034 ('034 Reexam). Disputed that the Patent Office found that claims 1 and 31 lacked novelty. Rather, the USPTO found that claims 1 and 31 were rendered obvious in view of prior art not asserted in this litigation. Ex. K128 ('034 Reexam, Final Office Action) at 5-16.

*Response to quotations from the Asserted Patents:* **Admitted in part and disputed in part**. Disputed that the statement accurately quotes claim 18 of the '640 patent. Admitted that the statement accurately quotes a limitation from claim 17 of the '978 patent. Admitted that the statement quoted language from claims 1 and 15 of the '170 patent, but disputed because the quoted limitations contain additional language and because the statement includes a "." character in its quoted language that does not appear in the patent.

7. **STATEMENT:** Every Asserted Claim includes a "location server." The Court construed "location server" to mean "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients."[17] Thus, a location server must maintain "identifier/location mappings." The parties agreed on the following constructions relevant to the required "identifier/location mappings."[18]

| Affected Patents & Claims | Claim Term | Court's Construction |
|---|---|---|
| '978 Patent: Claims 1, 3, 6, 10, 14, 17, 23-24, 30, 31<br><br>'170 Patent: Claims 1–2, 6, 8, 12, 15<br><br>'640 Patent: Claims 17–18, 24 | "location" | "an encoding that is a member of a set of associations with an identifier in a location server, and that specifies where data pertaining to the entity identified by the identifier is stored" |
| '978 Patent: Claims 1, 3, 6, 10, 14, 17, 23-24, 30, 31<br><br>'170 Patent: Claims 1–2, 6, 8, 12, 15<br><br>'640 Patent: Claims 17–18, 24 | "identifier/identifier string/identification string" | "a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server" |

**CITATION [17]:** Dkt. 484 at 35.

**CITATION [18]:** Dkt. 484 at 2 (Recognizing terms from Dkt. 382 at Ex. B).

<u>**RESPONSE:**</u>  **Admitted in part and disputed in part; objection**.  Admitted that each Asserted Claim contains the term "location server."  Admitted that the statement correctly quotes the Court's construction of "location server."  Admitted that the chart correctly shows the Court's construction of the indicated terms.  Kove objects to the remainder of the statement, as it does not contain facts but is instead a characterization of claim terms and the Court's construction of those terms (Dkt. 484) not appropriate for a statement of material facts.  Kove disputes AWS's characterization of the claims—including the characterization of what a location server "must maintain" and including AWS's characterization of certain claim terms as "relevant" to other claim terms or limitations—as not supported by and inconsistent with the Court's claim construction order. Dkt. 484 at 35.

8.  **STATEMENT:** In reexamination proceedings on the Kove Patents (which are addressed in more detail below), Kove distinguished the prior art on the basis that it failed to identify a singular entity. For example, Amazon filed a reexamination request on claims 17, 23-24, and 30 of the '978 patent on August 31, 2022.[19] On April 3, 2023, the Patent Office non-finally rejected those claims of the '978 patent as obvious over multiple prior art reference

combinations, including U.S. Pat. No. 5,617,568 to inventor Michael B. Ault ("Ault").[20] The Patent Office determined that Ault taught the claimed location server system by citing to, for example, the following excerpt. The Patent Office stated:

> The file set location server maintains a database 66 of all file sets. This database is utilized to keep track of physical locations where file sets are stored. If a DFS client 52 requires access to one of the file sets, it sends a request first to the file set location server/database 64, 66 to inquire about the physical location of the file set, After receiving location information, the client 52 then contacts the actual particular DFS file server 54 wherein the particular file set or file system 56 resides.[21]

**CITATION [19]:** Ex. 9, '109 Reexam. NFOA at 2.

**CITATION [20]:** Ex. 9, '109 Reexam. NFOA at 3.

**CITATION [21]:** Ex. 9, '109 Reexam. NFOA at 3.

**RESPONSE: Disputed; objection**. Kove objects to this statement as non-compliant with Dkt. 676 and L.R. 56.1(d), which limit the number of paragraphs allowed in the moving party's statement of facts and require that each paragraph be "concise." This paragraph contains statements relating to two unrelated and distinct topics: Kove's arguments in reexamination proceedings and the outcome of the reexamination proceedings. Kove objects to all portions of the statement as not material.

*Statements Regarding Kove's Arguments in the Reexamination Proceedings:* Kove objects to this statement as not material. Kove objects to AWS's characterization of Kove's reexamination statements as improper characterization rather than a fact appropriate for summary judgment. Kove disputes that "in reexamination proceedings on the Kove Patents ... Kove distinguished the prior art on the basis that failed to identify a singular entity." *See* Ex. K140 ('109 Reexam, Response to NFOA) at 19-37. AWS did not cite any evidence to support that proposition, nor is it supported by any of the evidence cited in the rest of the statement.

*Statements Regarding the Outcome of the Reexamination Proceedings:* Kove objects to

this statement as not material. Kove objects to AWS's characterization of the cited office action as improper characterization rather than a fact appropriate for summary judgment. Kove disputes that the Patent Office "determined that Ault taught the claimed location server system." That assertion is not supported by the cited evidence.

Kove admits that AWS filed a reexamination request on claims 17, 23-24, and 30 of the '978 patent on August 31, 2022. Kove admits that "[o]n April 3, 2023, the Patent Office non-finally rejected those claims of the '978 patent as obvious over multiple prior art reference combinations, including U.S. Pat. No. 5,617,568 to inventor Michael B. Ault." Kove admits that the statement accurately quotes the NFOA on the '978 patent.

9. **STATEMENT:** Kove responded by arguing that the claimed "identifier" had to identify a singular entity to remove "extraneous steps." Kove stated:

> By requiring that each identifier uniquely identify a single entity, the locations for the data pertaining to the single entity using the identifier can quickly be located. See e.g., id. at 4:19:43; 4:57- 5:22; 8:14-25; 18:38-19:3. This way, the location servers in the network do not have to execute any extraneous steps for determining or identifying a given entity when resolving a location query.[22]

> To the extent "file sets" are alleged to be "identifiers," Ault's disclosures as to "file sets" do not qualify *because file sets do not uniquely identify entities, as "identifiers" are required to do* – at most, file sets are data (e.g., files stored in computer). See id. Furthermore, even when assuming arguendo that Ault's file location servers store identifiers, the identifier in the file location server would identify a file set (i.e., the data) and not an entity. Therefore, Ault does not teach or suggest "identifiers," as required by claim 17.[23]

**CITATION [22]:** Ex. 10, '109 Reexam. Response at 11.

**CITATION [23]:** Ex. 10, '109 Reexam. Response at 36 (emphasis added).

**RESPONSE: Admitted in part and disputed in part; objection**. Kove objects to this statement as not material. Kove objects to AWS's characterization of Kove's response in the '109 reexam as improper characterization rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of Kove's response as not inaccurate, incomplete, and not supported by

the cited evidence. Kove did not argue that each identifier *must* "remove 'extraneous steps.'" *See* Ex. K140 ('109 Reexam, Response to NFOA) at 11-15.

10.    **STATEMENT:** The Patent Office finally rejected claims 3, 11, and 14 on other grounds, but withdrew this rejection. Specifically, the Patent Office agreed with Kove, confirming that identifiers can't be shared by multiple entities in a system. The Patent Office stated:

> The Examiner finds this argument persuasive. Ault is silent with respect to the identifier uniquely identifying an entity. As best understood from the reference, Ault appears to disclose the identifiers identifying the file sets themselves rather than an entity. (See Ault, lines 1-9 of column 6).[24]

> [Kove's] arguments with respect to the [Ault combination] overall persuasive, in particular the argument with respect to the combination failing to disclose the claimed identifiers uniquely identifying an entity as required when interpreting the term under *Phillips* [*v. AWH Corp.*]."[25]

**CITATION [24]:** Ex. 11, '109 Reexam. FOA at 19.

**CITATION [25]:** Ex. 11, '109 Reexam. FOA at 20. Although the Patent Office issued a final rejection of three out of four asserted claims at issue, it withdrew the non-final rejection based on Ault. *Id.*

**RESPONSE:  Admitted in part and disputed in part; objection**.  Kove objects to this statement as not material.  Kove disputes that the Patent Office rejected claims 3, 11, and 14 of the '978 Patent in the '109 Reexam; none of claims 3, 11, or 14 of the '978 patent were considered in the '109 Reexam.  Ex. K141 ('109 Reexam, Reexam Order) at 4.  Kove also disputes that claims 3, 11, and 14 of the '978 patent were finally rejected in any *ex parte* reexamination. Rather, the Patent Office confirmed patentability of claims 3, 11, and 14 in the Final Rejection in the '034 Reexam. Ex. K128 ('034 Reexam, Final Office Action) at 2.

Kove objects to AWS's statements regarding the cited office action as improper characterization rather than a fact appropriate for summary judgment.  Kove disputes the characterization that "the Patent Office agreed with Kove, confirming that identifiers can't be

12

shared by multiple entities in a system" as not supported by the cited evidence, with respect to both Kove's position and the Patent Office's stated basis for its decision.

11.     **STATEMENT:** The Patent Office currently has pending proceedings on the validity of all 17 asserted claims in four reexamination proceedings: the '109, '162, '165, and '166 Reexams.[26]

**CITATION [26]:** In April and May 2023, the Patent Office granted further requests for reexamination of '978 asserted claim 6 and all asserted '170 and '640 claims, as detailed in Amazon's Notices of Related Proceedings (Dkt. 618 & 648). *See id.* Amazon's petition to the Patent Office Director to overturn the Examiner's decision on '978 claims 3, 10, and 14 remains pending.

**RESPONSE: Disputed; objection**.  Kove objects to this statement as not material.  Kove disputes that the Patent Office currently has pending proceedings on the validity of all 17 asserted claims as not supported by the cited evidence, and as contrary to other record evidence.  The Patent Office confirmed patentability of claims 3, 10, 14, and 24 of the '978 patent and there are no pending reexaminations of those claims.  *See* Ex. K142 ('162 Reexam, Reexam Order) at 41, 47; Ex. K143 ('109 Reexam, Final Office Action) at 3.  AWS's petition to the Patent Office Director to overturn the Examiner's decision on '978 claims 3, 10, and 14 does not affect the validity or enforceability of those claims.  Additionally, claim 24 is not included in AWS's petition to the Patent Office Director to overturn the Examiner's decision.  Ex. K144 ('162 Reexam, Petition to Director) at i.

12.     **STATEMENT:** Amazon's noninfringement expert, Dr. Ananth Grama, is an expert in the field of distributed databases.[27] Dr. Grama holds a Ph.D. in Computer Science from the University of Minnesota, and is now the Samuel D. Conte Professor of Computer Science and Associate Director of the Center for Science Information at Purdue University, one of the leading

computer science programs in the world.[28] He has been researching, teaching, and publishing in the field of distributed databases for decades and has been repeatedly recognized for his exemplary work.[29]

**CITATION [27]:** Ex. 8, 08/18/2023 Grama Report, ¶¶ 6-13.

**CITATION [28]:** Ex. 8, 08/18/2023 Grama Report, ¶¶ 6-13.

**CITATION [29]:** Ex. 8, 08/18/2023 Grama Report, ¶¶ 6-13.

**RESPONSE:** **Disputed; objection**. Kove objects to this statement as not material. Kove objects to and disputes that Dr. Grama is an expert in the field of distributed databases; whether a witness qualifies as an expert is a legal question, not a factual question appropriate for summary judgment. Admitted that Dr. Grama holds a Ph.D. in Computer Science from the University of Minnesota and is the Samuel D. Conte Professor of Computer Science. Kove disputes that the Center for Science Information at Purdue University is "one of the leading computer science programs in the world"; that fact is not supported by the cited evidence, which says nothing about the status or standing of Purdue's Computer Science program. Kove disputes the characterization that Dr. Grama's work is "exemplary" as not supported by the cited evidence.

13. **STATEMENT:** Amazon's invalidity expert, Joseph B. Greene, is also an expert in managing distributed databases and networks.[30] He has dedicated more than three decades to implementing, managing, and analyzing distributed and relational databases.[31] In 1994, he supported one of the ten largest Oracle data warehouses in the United States.[32] Mr. Greene has authored numerous books on distributed databases and architectures—including six on Oracle, a prior art database product that Amazon relies on here and in the reexaminations—explaining how they work and how to optimize their performance for database administrators ("DBAs").[33] The following table lists the most relevant texts he has written in this technology field.[34]

| Title | Publication Year | Pages |
|---|---|---|
| Oracle DBA Survival Guide | 1995 | 769 |
| Oracle 7.3 Developer's Guide | 1996 | 1,008 |
| Windows NT Server 4.0 Unleashed | 1996 | 1,152 |
| Microsoft BackOffice Unleashed | 1996 | 1,222 |
| Oracle Unleashed | 1996 | 1,404 |
| Oracle Unleashed, 2nd Edition | 1997 | 1,431 |
| Microsoft BackOffice Unleashed, 2nd Ed. | 1997 | 1,503 |
| Oracle Development Unleashed | 1998 | 1,538 |
| Oracle and Java Development | 2001 | 438 |

**CITATION [30]:** Ex. 12, 07/03/2023 Greene Report, ¶¶ 5-12.

**CITATION [31]:** Ex. 12, 07/03/2023 Greene Report, ¶¶ 5-12.

**CITATION [32]:** Ex. 12, 07/03/2023 Greene Report, ¶¶ 5-12.

**CITATION [33]:** Ex. 12, 07/03/2023 Greene Report, ¶¶ 5-12.

**CITATION [34]:** Ex. 12, 07/03/2023 Greene Report, ¶¶ 5-12.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Kove objects to and disputes that Mr. Greene is an expert in managing distributed databases and networks; whether a witness qualifies as an expert is a legal question, not a factual question appropriate for summary judgment. Kove disputes that Oracle is a "prior art database product"; whether a product or reference qualifies as prior art is a legal question. Admitted that the table in the statement lists texts written by Mr. Greene. Kove disputes that the table lists the "most relevant texts." Whether a text is "relevant" or "most relevant" is a subjective opinion, not a fact that can be adjudicated at summary judgment. Moreover, AWS does not state to what the texts are "most relevant."

14. **STATEMENT:** Amazon engineers developed S3 from the ground up starting in ███, and Amazon introduced it in March 2006,[35] over 12 years before Kove filed this lawsuit.[36]

**CITATION [35]:** Ex. 13, 06/04/2021 A. Vermeulen Dep. Tr., 43:12-44:24 ("The [S3] project did not commence until ███████ "); 99:12-21 ("So the S3 project was really initiated, and we

15

started design work during a two-day off-site at the Seattle Convention Center in ▮▮▮▮ ▮▮▮); Ex. 8, 08/18/2023 Grama Report, ¶ 110.

**CITATION [36]:** Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 207:3-10 (Amazon Atty: "In Paragraph 70, in the first sentence, your report says 'Kove filed its Complaint for patent infringement on December 12, 2018,' correct?"

**RESPONSE: Admitted in part and disputed in part; objection**. Kove objects to this statement as not material. Admitted that Amazon engineers started developing S3 starting in ▮▮▮ Disputed that Amazon engineers developed S3 "from the ground up." That statement is not supported by the cited evidence. Further, additional record evidence demonstrates that Amazon▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. K79 (AMZ_KOVE_000444305) at 1-2 ("The discussion initially focused on the choice of ▮▮▮ as the ▮▮▮▮▮▮▮▮▮ S3 and potential issues with that choice."); Ex. K32 (Vermeulen I Tr.) at 100:14-102:19, 116:15-117:24; 124:6-20; 125:7-126:5; Ex. K38 (Vermeulen II Tr.) at 24:17-26:4, 26:14-30:11. Disputed that Amazon introduced S3 in March 2006. S3 was released to the public in March 2006, but ▮▮▮▮▮▮▮▮▮▮ Ex. K32 (Vermeulen Tr.) at 134:4-23; Ex. K61 (AMZ_KOVE_000061904); Ex. K92 (KOV_00179452).

15. **STATEMENT:** S3 provides a system that can be used to store and retrieve data at any time, from anywhere on the internet. As Amazon has stated:

> Amazon S3 is storage for the Internet. It's designed to make web-scale computing easier for developers. Amazon S3 provides a simple web services interface that can be used to store and retrieve any amount of data, at any time, from anywhere on the web. It gives any developer access to the same highly scalable, reliable, fast, inexpensive data storage infrastructure that Amazon uses to run its own global network of web sites. The service aims to maximize benefits of scale and pass those benefits on to developers.[37]

**CITATION [37]:** Ex. 15, AMZ_KOVE_000061904.

**RESPONSE: Admitted in part, disputed in part**. Admitted that the statement accurately quotes

Ex. K61 (AMZ_KOVE_000061904). Disputed as to the phrase "from anywhere on the Internet" as it is not clear what that phrase means.

16. **STATEMENT:** In S3, data storage and retrieval relies on numerous different components working together, including: the end user device, ██████████████████ ██████████████████████████████████████████████████ ████[38] Users access S3 objects with the following steps called a "Get Request," which Dr. Grama also summarized into the diagram below:[39]



A. The end user sends the Get object request to the ████████████[40]

B. ██████████████████████████████████████████
████████[41]████████████████████████████████
████████████[42]

C. ████████████████████████████████[43]

D. ██████████████████████████████████████████
██████[44]

E. ██████████████████████████████████████████
██████[45]

F. ████████████████████████████████████████[46]

G. ██████████████████████████████████████████
████████[47]

H. ████████████████████████████[48]

I. ██████████████████████████████████████████
███[49]

**CITATION [38]:** Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 16; Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 212:10-14, 297:9-298-2, 300:15-301:12 (acknowledging accused products are "highly complex," and capable of storing "any amount of data" and serving "any level of request traffic.").

**CITATION [39]:** Ex. 8, 08/18/2023 Grama Report, ¶ 119.

**CITATION [40]:** Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012900, AMZ_KOVE_000012902; 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 38; Ex. 16, AMZ_KOVE_000012900 (describing GET process); Ex. 8, 08/18/2023 Grama Report, ¶ 120.

**CITATION [41]:** Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 18, AMZ_KOVE_000062719 at AMZ_KOVE_000062734; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 27; Ex. 8, 08/18/2023 Grama Report, ¶ 120.

**CITATION [42]:** Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 27 ███████████████████████████████ ███████████); Ex. 8, 08/18/2023 Grama Report, ¶ 120.

**CITATION [43]:** Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 27; Ex. 8, 08/18/2023 Grama Report, ¶ 120.

**CITATION [44]:** Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶¶ 38-39; Ex. , 08/18/2023 Grama Report, ¶ 120; *see also* Ex. 16, AMZ_KOVE_000012900 (describing GET process).

**CITATION [45]:** Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 33; Ex. 8, 08/18/2023 Grama Report, ¶ 120.

**CITATION [46]:** Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 33; Ex. 16, 08/18/2023 Grama Report, ¶ 120.

**CITATION [47]:** Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 33; Ex. 8, 08/18/2023 Grama Report, ¶ 120.

**CITATION [48]:** Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 33; Ex. , 08/18/2023 Grama Report, ¶ 120.

**CITATION [49]:** Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012902; Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶¶ 38-39; Ex. , 08/18/2023 Grama Report, ¶ 120.



**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as non-compliant with Dkt. 676 and L.R. 56.1(d), which limit the number of paragraphs allowed in the moving party's statement of facts and require that each paragraph be "concise." This paragraph contains 10 distinct statements and a figure, each supported by separate factual citations. Kove addresses each statement and its accompanying citation separately:

    **Preliminary Statement:** Kove objects to this statement as not material. Admitted that

data storage and retrieval relies on "numerous different components working together, including

██████████████████████████████████████████████████████████████████████

██████████████████████████████" Disputed that data storage or retrieval relies on any end

user device—that proposition is not supported by the cited evidence, which shows that the end

user's only involvement in storing or retrieving data is sending an object request to S3; none of

the steps along the request path in S3 is performed by the end user. Ex. K60

(AMZ_KOVE_000012900) at –12900-02.

Step A: Disputed as not supported by the cited evidence and contrary to additional record

evidence. The end user sends a request to Amazon, and the request is █████████████████

███████████████████████████████ Ex. K53 (Goodrich Report, Ex. D) ¶ 38; Ex. K110

(AMZ_KOVE_000075807) at 3:43-4:40; Ex. K60 (AMZ_KOVE_000012900) at –12900-02; Ex.

K108 (AMZ_KOVE_000012917) at 1:30-2:56.

Step B: Admitted that when an object is not stored in the cache, the ██████████████████

████████████████████████████████ Disputed to the extent the statement suggests

that the █████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

███████████ Ex. K70 (AMZ_KOVE_000380291) at –380291 ███████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████. Disputed to the extent the statement suggests that the ███████████

████████████████████████ as that fact is rebutted by the cited evidence. Ex. K60

(AMZ_KOVE_000012900) at –12902; Ex. K53 (Goodrich Report, Ex. D) ¶ 27 ████████████

██████████████████████████████████████████████████████████████ (emphasis

added). Additional record evidence confirms that the █████████████████████████████

Ex. K53 (Goodrich Report, Ex. D) ¶ 84 ███████████████████████████████

██████ (emphasis added)); Ex. K71 (AMZ_KOVE_000400711) at –400716 ███████████

███████████████████████████████████████████████████████ (emphasis

added); Ex. K65 (AMZ_KOVE_000069828) at –69831 ("Internally this ██████████

███████████████████████████████████████████████████████ ").

Otherwise admitted.

      **Step C:** Admitted.

      **Steps D-I:** Admitted.

      **The Figure:** Admitted that the diagram appears in Dr. Grama's report. Disputed with

respect to the bubble stating ████████ for the reasons stated above.

      17.    **STATEMENT:** Amazon engineers began developing DDB from scratch in ██████

and it became available to the public in January 2012,[50] over six years before Kove filed this

lawsuit.[51]

**CITATION [50]:** Ex. 19, 05/24/2023 R. Blackman Dep. Tr., 45:6-11 (describing when Amazon

first thought about DDB); 51:5-19 (describing the initial DDB team); 68:17-69:6 (describing

scaling benefits of DDB); 70:2-5 (describing designing DDB APIs to be predictable); 93:3-14

(describing other design goals of DDB); 103:20-21 ("I think there are different use cases between

SimpleDB and DynamoDB.").

**CITATION [51]:** Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 213:14-20 (Amazon Atty: "And we

talked about previously that Kove filed its complaint in this case on December 12, 2018, right?"

Goodrich: "That's right." Amazon Atty: "And that's over six years after Amazon launched

DynamoDB, right?" Goodrich "Yes, that's correct.").

**RESPONSE: Disputed; objection**. Kove objects to this statement as not material. Disputed that

Amazon engineers developed DDB "from scratch." That statement is not supported by the cited evidence and is refuted by other record evidence showing that DDB was developed as an offshoot from another product, SimpleDB. Ex. K64 (AMZ_KOVE_000065117) at –65118 ██████████████

██████████████████████████████████████████████████████████ );

Ex. K85 (AMZ_KOVE_000502207) at –502207 ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ "); Ex. K84 (AMZ_KOVE_000498624) (email dated 2010 describing effort to "build a new service based on our learning from the ████████ efforts of the last couple of years"); Ex. K34 (Sivasubramanian Day 1 Tr.) at 37:21- 38:6.

Disputed that development for DynamoDB began ████████ That statement is not supported by the cited evidence, and is further refuted by other record evidence. *See* Ex. K84 (AMZ_KOVE_000498624); Ex. K80 (AMZ_KOVE_000445727) at –445729 ████ design document setting out plan to develop a new service); Ex. K88 (AMZ_KOVE_000525421) at – 525424, –525431 (same, and setting out a design roadmap and timeline).

18. **STATEMENT:** With DDB, a customer can create database tables to organize and access stored items.[52] A "table" is a collection of data called "items" and each item is a collection of "attributes."[53] "Items" are similar to rows or records in other database systems.[54]

**CITATION [52]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶¶ 5, 11. *See also*, Ex. 21, 01/29/2020 J. Sorenson Dep. Tr. 53:11–54:9.

**CITATION [53]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 7; Ex. 22, AMZ_KOVE_000007001 at AMZ_KOVE_000007013–AMZ_KOVE_000007014.

**CITATION [54]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 7; Ex. 22,

AMZ_KOVE_000007001 at AMZ_KOVE_000007014.

**RESPONSE: Admitted**.

    19.    **STATEMENT:** In DDB, the user defines a ▮▮▮▮▮ to ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Amazon DDB documentation states:



> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[55]

> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[56]

> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[57]

Dr. Goodrich states:

> Items are distinguished among the other items in the table by ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮[58]

> As explained above, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ (corresponding to an "entity") in the table, so that no two items can have ▮▮▮▮▮▮▮▮▮▮[59]

**CITATION [55]:** Ex. 23, AMZ_KOVE_000009918 at AMZ_KOVE_000009919.

**CITATION [56]:** Ex. 24, AMZ_KOVE_000009865 at AMZ_KOVE_000009881.

**CITATION [57]:** Ex. 24, AMZ_KOVE_000009865 at AMZ_KOVE_000009872.

**CITATION [58]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 9.

**CITATION [59]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 83.

**RESPONSE: Admitted**.

    20.    **STATEMENT:** DDB stores data from tables in ▮▮▮▮▮▮ managed by DDB.[60]

Amazon DDB documentation states:

> DynamoDB stores data ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is an allocation of storage for a table, backed by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Availability Zones within an AWS Region. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[61]

Dr. Goodrich states:

> When AWS stores the data in a table, it stores the data ▮▮▮▮▮▮▮▮▮▮ A table can be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[62]

**CITATION [60]:** Ex. 25, AMZ_KOVE_000446229 at AMZ_KOVE_000446248.

**CITATION [61]:** Ex. 25, AMZ_KOVE_000446229 at AMZ_KOVE_000446248.

**CITATION [62]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 11.

**RESPONSE: Admitted**.

21. **STATEMENT:** On November 19, 2021, Amazon requested *ex parte* reexamination ("Reexam") of all Asserted Claims as obvious over combinations of Oracle Names Administrator's Guide, Release 2.0 ("ONAG"), Oracle DBA 24urvival Guide, 1st Edition. ("OSG"), U.S. Pat. No. 5,777,989 ("McGarvey"), and U.S. Pat. No. 5,301,286 ("Rajani") (collectively the "Oracle prior art").[63] The Patent Office granted the requests and initiated review of all asserted claims.[64]

**CITATION [63]:** Amazon also requested review of unasserted claim 9 of the '170, from which asserted claim 12 depends.

**CITATION [64]:** *E.g.*, Ex. 26, '036 Reexam. Grant Order at 1-19, *E.g.*, Ex. 27 '034 Reexam. Grant Order at 1-15, *E.g.*, Ex. 28, '035 Reexam. Grant Order at 1-12.

**RESPONSE: Objection; admitted**. Kove objects to this statement as not material. Admitted.

22. **STATEMENT:** On May 4, 2022, as part of the '036 Reexam, the Patent Office rejected '640 Patent claims 17, 18, and 24 in view of ONAG, OSG, and McGarvey.[65]

**CITATION [65]:** Ex. 29, '036 Reexam. NFOA at 4.

**RESPONSE: Admitted in part; disputed in part; objection**. Kove objects to the statement as not material. Kove admits the statement with the clarification that the cited rejection was non-final. Kove disputes the statement to the extent it suggests the cited rejection was final. The Patent

Office confirmed the patentability of claims 17, 18, and 24 of the '640 patent based on Kove's Response to the Non-Final Office Action. Ex. K146 ('036 Reexam, Notice of Intent to Issue Reexam Certificate) at 2-5.

23. **STATEMENT:** On May 11, 2022, as part of the '035 Reexam, the Patent Office rejected '170 Patent claims 1 and 2 in view of ONAG, OSG, and Rajani, claims 6, 8, and 15 in view of ONAG, OSG, and McGarvey, and claim 9 and 12 in view of ONAG, OSG, McGarvey, and Rajani.[66]

**CITATION [66]:** Ex. 30, '035 Reexam. NFOA at 8-9.

**RESPONSE: Admitted in part; disputed in part; objection**. Kove objects to the statement as not material. Kove admits the statement with the clarification that the cited rejection was non-final. Kove disputes the statement to the extent it suggests the cited rejection was final. The Patent Office confirmed the patentability of claims 1, 2, 9, and 12 of the '170 patent. Ex. K147 ('035 Reexam, Notice of Intent to Issue Reexam Certificate) at 14-17.

24. **STATEMENT:** On June 28, 2022, as part of the '034 Reexam, the Patent Office rejected '978 Patent claims 1 and 31 in view of ONAG and OSG, claims 3, 10, and 14 in view of ONAG, OSG, and McGarvey, and claim 6 in view of ONAG, OSG, and Rajani.[67]

**CITATION [67]:** Ex. 31, '034 Reexam. NFOA, at 2.

**RESPONSE: Admitted in part; disputed in part; objection**. Kove objects to the statement as not material. Kove admits the statement with the clarification that the cited rejection was non-final. Kove disputes the statement to the extent it suggests the cited rejection was final. The Patent Office confirmed the patentability of claims 3, 10, and 14 of the '170 patent. Ex. K128 ('034 Reexam, Final Office Action) at 2-3. Additionally, the Patent Office confirmed the patentability of claims 17, 23, 24, and 30 in the Non-Final Office Action. Ex. K148 ('034 Reexam, NFOA) at

2, 35-36.

25. **STATEMENT:** The '640 and '170 patents expired on April 8, 2020, and the '978 patent expired on September 25, 2020.[68] Because the Kove Patents were expired, Kove didn't have the option of amending their claims during the '034, '035, and '036 reexaminations.[69]

**CITATION [68]:** Dkt. 145 at 3.

**CITATION [69]:** *See, e.g.*, Ex. 29, '036 Reexam. NFOA at 3-4.

**RESPONSE: Admitted; objection**. Kove objects to this statement as not material. Kove objects to the statement that "Kove didn't have the option of amending [patent] claims" as a legal conclusion not appropriate for a statement of facts.

26. **STATEMENT:** In each of the '034, '035, and '036 Reexams, Kove conducted an *ex parte* examiner interview, filed an Office Action Response, and included a supporting declaration by Dr. Goodrich.[70]

**CITATION [70]:** Ex. 27, '034 Reexam. Interview Summary, Ex. 32, '034 Reexam. Response, Ex. 33, '034 Reexam. Goodrich Dec., Ex. 34, '035 Reexam. Interview Summary, Ex. 35, '035 Reexam. Response, Ex. 36, '035 Reexam. Goodrich Dec., Ex. 37, '036 Reexam. Interview Summary, Ex. 38, '036 Reexam. Response, Ex. 39, '036 Reexam. Goodrich Dec.

**RESPONSE: Admitted in part; disputed in part; objection**. Kove objects to the statement as not material. Admitted with the clarification that all Examiner Interviews in Ex Parte Reexaminations are Ex Parte. Ex. K145 (Manual of Patent Examining Procedure (MPEP) § 2281) ("In the ex parte proceeding, only ex parte interviews between the examiner and patent owner and/or the patent owner's representative are permitted. Requests by third party requesters to participate in interviews or to attend interviews will not be granted."). Kove disputes the statement to the extent it suggests that it is unusual or improper for examiner interviews to be ex parte. *Id.*

27.     **STATEMENT:** In the '034, '035, and '036 Reexaminations, the Patent Office considered the Asserted Claims against the Oracle prior art for the first time. Specifically, each reexamination included ONAG, a manual published by Oracle, LLC, and OracleSG, a book authored by Mr. Greene to guide data base administrators' use of Oracle.[71]

**CITATION [71]:** Ex. 29, '036 Reexam. NFOA at 3-4, Ex. 30, '035 Reexam. NFOA at 8-9, Ex. 31, '034 Reexam. NFOA at 2.

**RESPONSE: Admitted; objection**.  Kove objects to the statement as not material.  Admitted.

28.     **STATEMENT:** ONAG describes a real product, the Oracle Names Servers, that comprise a part of the larger Oracle7 database system.[72] The Names Servers sole role is assisting clients to locate their data. The Patent Office stated:

> With respect to claim 1, OracleNamesAdminGuide discloses an Oracle 7 distributed database management system (DBMS) for managing data stored in a distributed network. The DBMS allows users to request and manage data that is located in the distributed system using Oracle Names Servers.
>
> The Oracle Names Servers store names and addresses for network services such as databases, as well as the names and addresses of other Oracle Names Servers. After services (e.g., databases) have been defined in Oracle Names, users only need to refer to them by name to connect to a database or network service (see page 23).
>
> The Names Server has a single purpose: to resolve or assist in resolving a client- initiated name request. It interprets the request, then looks up the name in its cache, then sends the response back to the client (pages 52-53).[73]

**CITATION [72]:** *E.g.*, Ex. 39, '165 Reexam. Greene Decl., ¶ 114.

**CITATION [73]:** *E.g.*, Ex. 28, '035 Reexam. Grant Order at 12.

**RESPONSE: Admitted in part, disputed in part; objection**.  Kove objects to this statement as non-compliant with Dkt. 676 and L.R. 56.1(d), which limit the number of paragraphs allowed in the moving party's statement of facts and require that each paragraph be "concise."  This paragraph contains statements relating to three unrelated and distinct topics: the contents of ONAG, the operation and "role" of Oracle Names Servers, and statements from the Patent Office.

***Response to statement regarding ONAG:*** Disputed; objection.  Kove objects to this statement as not material.  Disputed that the cited evidence supports that "Oracle Names Servers is a real product part of a larger Oracle 7 database system."

***Response to statement regarding the "role" of Oracle Names Servers:*** Disputed; objection.  Kove objects to this statement as not material.  Disputed that "[t]he Names Servers sole role is assisting clients to locate their data," as AWS does not cite any evidence to support that statement, nor is it supported by any of the evidence cited in connection with the other claims contained in this paragraph.

***Response to statement regarding statement from the Patent Office:*** Admitted; objection.  Kove objects to this statement as not material.  Admitted that the statement accurately quotes the Patent Office in the '165 Reexam and '035 Reexam.

29.    **STATEMENT:** ONAG explains that the examples and figures presented in it are non-limiting:

> This manual contains examples and figures that refer to specific machine types, network protocols, and operating systems. These references are examples of possible configurations and are not representative of all configurations.[74]

**CITATION [74]:** Ex. 40, AMZ_KOVE_000528884 at AMZ_KOVE_000528888.

**RESPONSE: Admitted in part, disputed in part; objection**.  Kove objects to this statement as non-material.  Admitted that the statement accurately quotes ONAG.  Kove objects to AWS's characterization of ONAG as it is not a fact, and because whether a statement or source is "limiting" is a legal question.  Kove disputes AWS's characterization of ONAG as inaccurate and incomplete.

30.    **STATEMENT:** ONAG includes examples of both hierarchical and non-hierarchical, or "flat," configurations. For example, ONAG Figure 3-8 shows the following:[75]



Figure 3 – 8 Two Centralized Administration Alternatives

**CITATION [75]:** *E.g.*, Ex. 41, '165 Reexam. Greene Dec., ¶¶ 63-66.

**<u>RESPONSE</u>:  Admitted in part, disputed in part; objection**.  Kove objects to this statement as not material.  Admitted that the figure is from ONAG.  Disputed that ONAG "includes examples of both hierarchical and non-hierarchical, or 'flat,' configurations," as the statement is not supported by the cited evidence.  The cited evidence shows that ONAG Figures 3-8 reflect two different *naming models*, a flat naming model and a hierarchical naming model.  These are not "configurations," as AWS claims.  Ex. K89 (AMZ_KOVE_000528884) at –528928.  Kove notes there is a significant dispute between the parties as to the meaning of "hierarchical," both in the abstract, and in connection with the Kove Patents.  *See* Ex. K50 (Goodrich 9/9/2023 Tr.) at 362:4-14 ("Dr. Grama, in my opinion, completely misunderstands what 'hierarchical' means."); Ex. K56 (Goodrich Rebuttal Report) ¶ 59 (explaining that, in the context of the Kove Patents, "hierarchical structure  means "if a queried server does not have the requested information, it must forward the request to the next node and so on until it reaches a root server.").

31.    **STATEMENT:** After the Patent Office ordered reexamination of all Asserted Claims based on the Oracle Prior Art, Kove argued that the use of hashing and redirect messages

meant that the claims require a non-hierarchical arrangement of location servers. For example, Kove stated:

> Furthermore, claim 10 requires each location server be configured to transmit a redirect message comprising information to for finding a location server having location information. Therefore, these limitations require a non-hierarchical cluster configuration.[76]

> As such, claim 1 requires data location information to be portioned and organized across the data location servers in the network *based on a hash function*. A hash function necessarily organizes data in a non-hierarchical manner, meaning claim 1 can only be accomplished through the custer configuration taught by the specification.[77]

**CITATION [76]:** Ex. 32, '034 Reexam. Response at 36.

**CITATION [77]:** Ex. 35, '035 Reexam. Response at 26.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Disputed that the Patent Office ordered reexamination of all Asserted Claims "based on the Oracle Prior Art" as contrary to the cited evidence, which shows that the reexamination decision was motivated by other prior art sources as well. Ex. K149 ('034 Reexam, Reexam Order) at 11-16; Ex. K150 ('035 Reexam, Reexam Order) at 10-17; Ex. K151 ('036 Reexam, Reexam Order) at 15-19.

Kove objects to AWS's characterization of Kove's arguments as improper characterization rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of Kove's argument as inaccurate, incomplete, and not supported by and indeed contrary to the cited evidence.

Disputed that the statement accurately quotes statements made in the '034 and '035 reexams.

32. **STATEMENT:** In each of the '034, '035, '036, and '109 Reexaminations, Kove described the Kove Patents' invention as follows:

> The structured relationships of the invention allow clients to access data in distributed

environments through a non-hierarchical, limitlessly scalable, server structure that enables retrieval of requested information in not more than two iterations.[78]

Their invention, as embodied in the claims of the '978 patent, enables a client to retrieve data through any server in the network and receive in response the location information associated with a desired entity. The structured relationships of the invention allow clients to access data in distributed environments through a non-hierarchical, limitlessly scalable, server structure that enables retrieval of requested information in not more than two iterations.[79]

**CITATION [78]:** Ex. 37, '036 Reexam. Response at 10, Ex. 38, '036 Reexam. Goodrich Declaration at 10, Ex. 35, '035 Reexam. Response at 10, Ex. 32, '034 Reexam. Response at 12, Ex. 10, '109 Reexam. Response at 9.

**CITATION [79]:** Ex. 10, '109 Reexam. Response at 9.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Kove objects to AWS's characterization of Kove's arguments as improper characterization rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of Kove's argument as inaccurate, incomplete, and not supported by the cited evidence.

Kove disputes AWS's characterization of Kove's statements as incorrect, incomplete, and not supported by the cited evidence.

Admitted that the statement accurately quotes portions of Kove's Response to Non-Final Office Actions in the '034, '035, and '036 Reexams.

33. **STATEMENT:** In these reexaminations, Kove stated that '640 Patent claims 17, 18, and 24, '170 claims 1, 2, 6, 8, 12, and 15, and '978 claims 3, 10, 14 require non-hierarchical clusters. For example, in the '036 Reexamination, Kove stated that '640 claims 17 and 18, from which claim 24 depends, expressly require non-hierarchical clusters:

In contrast, claims 17 and 18 recites a *non-hierarchical* cluster configuration.[80]

This non-hierarchical duster composition is expressly claimed in claims 17 and 18, through

the requirement that "each" (i.e., all) of the data location servers be similarly configured to respond to a client request with the aforementioned information.[81]

Although the '640 specification discloses hierarchical applications for NDTP as possible embodiments, [asserted] claims 17 and 18 require *non-hierarchical* structure, as explained here and throughout this Reply [to the non-final rejection].[82]

And, in the '035 Reexamination, Kove stated that '170 claims 1, 2, 6, 8, 12, and 15 require non-

hierarchical clusters:

Each of the claims at issue require, expressly or impliedly, a non-hierarchical cluster configuration of locations servers in a network.[83]

In contrast, claims 1, 6, and l5 of the '170 patent require networks with non-hierarchical (or "cluster") configurations of location servers that enable each server in the server network to know which location server contains the location(s) of the desired data.[84]

These features exemplify the non-hierarchical cluster configuration required in claim l.[85]

Accordingly, the redirect message limitations, as recited by claims 6 and l5, demonstrate that claims 6 and 15 recite a non-hierarchical cluster configuration.[86]

As stated above, the limitations of claims 6 and 15 require a non-hierarchical cluster configuration that allows location servers to return a redirect message that identifies which data location server is "known to have" (claim 6) or definitively "includes" (claim 15) the location information.[87]

It is my opinion that a POSITA at the time of this invention would understand claims 1, 6, and 15, through various limitations in each of the claims, to require a non-hierarchical cluster configuration as taught by the '170 patent.[88]

This non-hierarchical cluster composition is expressly claimed in claim 1, through the requirement that the data location information is portioned and organized across the data location servers based on a hash function and each and every data location server being configured to determine the data location server that contains the location information based on applying the hash function to the identifier string associated to the location information.[89]

And, in the '034 Reexamination, Kove stated that '978 claims 3, 10, 14 require non-hierarchical

clusters:

In contrast, independent claims 10 and 14 and dependent claim 3 of the '978 patent require networks with non-hierarchical (or "cluster") configurations of location servers that enable each server in the server network to know which location server contains the location(s) of the desired data.[90]

Independent claims 10 and 14 and dependent claim 3 require, expressly or impliedly, a non-hierarchical cluster configuration of locations servers in a network.[91]

**CITATION [80]:** Ex. 37, '036 Reexam. Response at 23.

**CITATION [81]:** Ex. 37, '036 Reexam. Response at 39.

**CITATION [82]:** Dkt. 539-2 at 23.

**CITATION [83]:** Ex. 35, '035 Reexam. Response at 25.

**CITATION [84]:** Ex. 35, '035 Reexam. Response at 25.

**CITATION [85]:** Ex. 35, '035 Reexam. Response at 26.

**CITATION [86]:** Ex. 35, '035 Reexam. Response at 26.

**CITATION [87]:** Ex. 35, '035 Reexam. Response at 51.

**CITATION [88]:** Ex. 35, '035 Reexam. Goodrich Declaration at 9.

**CITATION [89]:** Dkt. 539-3 at 36 (emphasis added); *see also id*. ("This non-hierarchical cluster composition is expressly claimed in claims 6 and 15….") (quoting Dkt. 539-3 at 53).

**CITATION [90]:** Ex. 32, '034 Reexam. Response at 35.

**CITATION [91]:** Ex. 32, '034 Reexam. Response at 35.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as non-compliant with Dkt. 676 and L.R. 56.1(d), which limit the number of paragraphs allowed in the moving party's statement of facts and require that each paragraph be "concise." This paragraph contains statements relating to three separate office actions across three patents pertaining to 12 distinct patent claims. Kove objects to each part of this statement as not material.

Kove objects to AWS's characterization of the Kove Patents, the Asserted Claims, and Kove's arguments as improper characterization rather than facts appropriate for summary judgment. Kove disputes AWS's characterizations as inaccurate, incomplete, not supported by, and contrary to the cited evidence. The scope and interpretation of the Asserted Claims has been

determined by the Court through the claim construction process, as set forth in Dkt. 484.

Admitted that the statement accurately quotes Kove's response to office actions in the '034, '035, and '036 reexams, except for the quote associated with Footnote 88, which does not appear in the cited exhibit.

34.    **STATEMENT:** In these reexaminations, Kove described the claims as imposing certain requirements of every network server. For example, in the '036 Reexamination, Kove also described rejected '640 claims 17 and 18, from which claim 24 depends, as imposing certain requirements of "every server in the network":

> Claims 17 and 18 therefore require _**every**_ server in the network be able to return information for calculating the location of the server that contains the requested information. In other words, any first queried server will either have the requested information or will provide the client with the information to find the requested information in the client 's next query.[92]

In the '035 Reexamination, Kove also described the '170 claims as imposing certain requirements of "every server in the network":

> In other words, claim l requires every location server m the network must be configured to identify the location server in that network that contains the location information for the data entity identified by the identifier.[93]

> Further, a POSA at the time of the invention would have no reason to modify or combine Oracle Admin with OracleSG to achieve this limitation because both references are silent with respect to configuring every server in the network to determine the data location server that contains the location information.[94]

> Another reason is that requiring every location server in the server network be configured to determine which server contains the sought after location information connotes a flat, non-hierarchal structure, where every server is similarly capable of identifying the server with the requested information, thus obviating the need for any hierarchy.[95]

In the '034 Reexamination, Kove also described the rejected '978 claims as imposing certain requirements of "any given server" that are incompatible with hierarchical structures:

> In order to satisfy the requirements of independent claims 10 and 14 and dependent claim 3, Names Service would have to abandon its "tree" composition that is the center of its organizational structure in favor of a non-hierarchical one where any given server is able

to return either the requested information or information useable by the client to locate the server with the requested information.[96]

For example, if a queried server receives a request for the data locations associated with a particular identifier but does not have it, that server will return a message to indicating which other server in the network contains the requested information. This configuration "collapses" the hierarchical composition of Oracle Names, making it entirely different in practice and principle from what ONAG discloses. ONAG in no way teaches or suggests something so fundamentally different from the architecture of the Oracle Names system.[97]

Oracle Names depends on a hierarchical structure where a client can only query to the node immediately "above" or "below" it in the "tree." If the queried server does not have the requested information, that server forwards the query to the next higher node and so on until it reaches the root server.[98]

Therefore, these limitations require a non-hierarchical cluster configuration. [Goodrich Decl., ¶¶ 35-43, 52-57]. These limitations cannot be met in hierarchical configurations such as Names Server because each location server in tree- structures do not necessarily store information for finding the location server having the desired location information. [*Id*]. Turning off request forwarding, as taught by ONAG, does not enable servers in the Names network to meet this limitation [*see infra*, pp. 28-29 and 44-45].[99]

**CITATION [92]:** Ex. 37, '036 Reexam. Response at 10.

**CITATION [93]:** Ex. 35, '035 Reexam. Response at 32.

**CITATION [94]:** Ex. 35, '035 Reexam. Response at 33.

**CITATION [95]:** Ex. 36, '035 Reexam. Goodrich Declaration at 10.

**CITATION [96]:** Ex. 32, '034 Reexam. Response at 40.

**CITATION [97]:** Ex. 32, '034 Reexam. Response at 35.

**CITATION [98]:** Ex. 32, '034 Reexam. Response at 34.

**CITATION [99]:** Ex. 32, '034 Reexam. Response at 36.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as non-compliant with Dkt. 676 and L.R. 56.1(d), which limit the number of paragraphs allowed in the moving party's statement of facts and require that each paragraph be "concise." This paragraph contains statements relating to three separate office actions across three patents pertaining to 12 distinct patent claims. Kove objects to each part of the statement as not material.

Kove objects to AWS's characterization of the Kove Patents, the Asserted Claims, and Kove's arguments as improper characterization rather than facts appropriate for summary judgment. Kove disputes AWS's characterizations as inaccurate, incomplete, not supported by, and contrary to the cited evidence. The scope and interpretation of the Asserted Claims has been determined by the Court through the claim construction process, as set forth in Dkt. 484.

Kove disputes that the quoted language in the first block quote is supported by the cited evidence (AWS Ex. 37, cited in AWS footnote 92), as the quoted language does not appear in the cited document. Admitted that the statement accurately quotes Kove's response to office actions in the '034 and '035 reexams.

35. **STATEMENT:** In each reexamination, Kove and Dr. Goodrich distinguished the rejected claims from the Oracle prior art by arguing that Oracle is limited to using hierarchical tree paths. In the '036 Reexamination, Kove filed the following statements:

> In contrast, naming systems like Oracle Names imposes a hierarchical tree structure that limits queries to be received by a client's local or preferred server, and servers are not configured to provide the aforementioned information.[100]

> Unlike DNS or Names Service, Oracle Admin relies on traversing network paths and relationships organized in a hierarchical tree structure.[101]

> Oracle Admin's hierarchical configuration is foundationally different from the non-hierarchical cluster configuration required by claims 17 and 18. An important distinction that, unlike the non-hierarchical cluster configuration required by claims 17 and 18, the Names Servers in Oracle Admin's hierarchical structure do not have information that can be used to calculate the location of location servers containing data location strings.[102]

> As I described above, Oracle Admin is a system similar to DNS, and as described in Oracle Admin, borrows the DNS system to allow clients to search for network addresses of network services. (*See* e.g., Oracle Admin, 56-57 and 190-192). Oracle Admin does not contemplate a non-hierarchical cluster configurations [*sic*], and OracleSG and McGarvey do not either.[103]

> In contrast to the hierarchical "tree" structure of prior systems like ONAG, the configuration taught by the '978 patent allows for linear scaling of the location servers. Particularly, the patent teaches seamlessly adding location servers based on the growth of a network.[104]

The '640 patent requires that *each and every* server in the data location server network have the capability of transmitting information to the client that the client then processes to determine the server that contains its requested information. This configuration "collapses" the hierarchical composition of Oracle Names, making it entirely different in practice and principle from what Oracle Admin discloses. Oracle Admin in no way teaches that Oracle Names network servers have this capability.[105]

In the '035 Reexamination, Kove and Dr. Goodrich stated:

> In contrast, naming systems like Oracle Names imposes a hierarchical tree structure that limits queries to be received by a client's local or preferred server, and servers are not configured to provide the aforementioned information.[106]

> Oracle Admin's Name Servers has no such capability; the hierarchical tree structure of the network limits each server to knowing only about its direct children and therefore has no knowledge of information stored in other Names Servers. (Oracle Admin, p. 191). Accordingly, Oracle Admin's Names Servers are not configured to determine with any specificity or certainty which location server is known to include the sought-after data location information.[107]

> Like OracleSG and Rajani, Oracle Admin does not contemplate portioning and organizing data location information across data location servers and enabling each and every Names Server to be configured to determine, which one of the Names Servers stores the requested location information. In fact, Oracle Admin cannot satisfy these features.[108]

> As the example in Fig. C-4, and as explained on pages l90-192 of Oracle Admin, even a modestly sized environment with a handful of servers may take numerous iterations to return a query.[109]

> ln other words, *whatever location server is queried, if that location server does not have the information, it will either identify the location server that does, identify a list of location servers containing at least the location server that does, and/or send the algorithm or function that will allow the client to make that identification for itself*; rather than traverse a network path across a tree structure like DNS or Oracle Name Service that maintained a static relationship of data and that data's location.[110]

And in the '034 Reexamination, Dr. Goodrich similarly distinguished the claims and the

purportedly hierarchical Names Servers in Oracle. He stated:

> It is my opinion that a POSITA at the time of this invention would understand claims 3, 10, and 14, through various limitations in each of the claims, to require a non-hierarchical cluster configuration as taught by the '978 patent.[111]

> Furthermore, ONAG describes a hierarchical tree structure and claims 3, 10, and 14 requires a non-hierarchical cluster configuration. Therefore, attempting to modify ONAG with OracleSG and McGarvey to achieve the requirements of claims 3, 10, and 14 would

require abandoning Oracle Admin's hierarchical structure and reconfiguring ONAG such that Names Servers are configured to transmit a redirect message indicating information to find the Names Server that includes the requested location information.[112]

ONAG's principle operation involves traversing a hierarchical tree configuration of Names Severs to retrieve a network address. Attempting to modifying ONAG to satisfy claims 3, 10, and 14 requirements would involve abandoning ONAG's hierarchical structure, requiring substantial reconstruction and redesign of ONAG's elements (e.g., Names Servers).[113]

The Examiner points to ONAG Figure C-4 as allegedly disclosing the claimed "cluster topology" recited in claim 10. But ONAG only describes the hierarchical topology of [Oracle's] Names Servers.[114]

**CITATION [100]:** Ex. 37, '036 Reexam. Response at 39.

**CITATION [101]:** Ex. 39, '036 Reexam. Goodrich Dec. at 12.

**CITATION [102]:** Ex. 39, '036 Reexam. Goodrich Dec. at 12.

**CITATION [103]:** Ex. 39, '036 Reexam. Goodrich Dec. at 13.

**CITATION [104]:** Ex. 9, '109 NFOA Response at 16.

**CITATION [105]:** Ex. 38, '036 Reexam. Response at 23–24) (emphasis in original).

**CITATION [106]:** Ex. 35, '035 Reexam. Response at 36.

**CITATION [107]:** Ex. 35, '035 Reexam. Response at 52.

**CITATION [108]:** Ex. 35, '035 Reexam. Response at 35.

**CITATION [109]:** Ex. 35, '035 Reexam. Response at 25.

**CITATION [110]:** Ex. 35, '035 Reexam. Response at 15.

**CITATION [111]:** Ex. 33, '034 Reexam. Goodrich Dec. at 11.

**CITATION [112]:** Ex. 33, '034 Reexam. Goodrich Dec. at 26.

**CITATION [113]:** Ex. 33, '034 Reexam. Goodrich Dec. at 27.

**CITATION [114]:** Dkt. 539-4 at 51]; *see also id*. at 35 ("ONAG lacks the non-hierarchical cluster

structure required to satisfy the requirements of independent claims 10 and 14 and dependent claim

3."); *id.* ("In contrast, independent claims 10 and 14 and dependent claim 3 of the '978 patent require networks with *non-hierarchical* (or 'cluster') configurations ....") (emphasis in original).

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as non-compliant with Dkt. 676 and L.R. 56.1(d), which limit the number of paragraphs allowed in the moving party's statement of facts and require that each paragraph be "concise." This paragraph contains statements relating to three separate office actions across three patents pertaining to 12 distinct patent claims. Kove objects to each part of this statement as not material.

Kove objects to AWS's characterization of the Kove Patents, the Asserted Claims, and Kove's arguments as improper characterization rather than facts appropriate for summary judgment. Kove disputes AWS's characterizations as inaccurate, incomplete, not supported by, and contrary to the cited evidence. The scope and interpretation of the Asserted Claims has been determined by the Court through the claim construction process, as set forth in Dkt. 484.

Kove disputes that the quoted language in the first and fifth block quotes are supported by the cited evidence (from AWS footnotes 92 and 104), as the cited evidence does not contain any of the quoted language. Admitted that the other quotes in the statement accurately reflect Kove's response to office actions in the '034, '035, and '036 reexams.

36.     **STATEMENT:** On September 12, 2022, Dr. Goodrich and Kove's attorneys met with the Patent Examiner in the '034 Reexamination for an *ex parte* interview.[115] Kove presented a slide show that included the below slide summarizing the purported differences between the Kove Patents and the Oracle prior art:[116]



**CITATION [115]:** Ex. 42, '034 Reexam. Interview Summary.

**CITATION [116]:** Ex. 43, '034 Reexam. NFOA Response Appendix L.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Admitted that Dr. Goodrich and Kove's attorneys met with the Patent Examiner in the '034 Reexamination and that the above-indicated image was presented to the Patent Examiner.

Kove objects to AWS's characterization of the Examiner Interview and Kove's slides as improper characterization rather than facts appropriate for summary judgment. Kove disputes the characterization of that interview as "*ex parte*" as not material and misleading. Kove's meeting was an Examiner Interview, which are held with patent applicants as a matter of routine; reexaminations are not contested proceedings. Kove disputes AWS's characterizations of Kove's presentation as incomplete and misleading.

37. **STATEMENT:** And in the '035 Reexamination, Kove also argued that each server must know what each location server contains:

However, OracleSG is completely silent with respect to the aspect of the limitation that requires, well data location server in a data location network being configured to determine the data location server that contains the location information.[117]

This allows each data location server to (1) itself determine, using the function, which other data location server stores the location information for a particular unit of data (*id.*, 14;46-15.15); (2) transmit a list of location servers which contains the location serverknow11to have the location information (*id.*, 17:65-18:8); and (3) transmit the algorithm or function to the client to enable the client lo determine which one of the data location servers stores the location information for the particular unit of data (*id.*, 14:46-15:15; 18:3-8).[118]

**CITATION [117]:** Ex. 35, '035 Reexam. Response at 33.

**CITATION [118]:** Ex. 35, '035 Reexam. Response at 15.

**RESPONSE: Disputed; objection**. Kove objects to this statement as not material. Kove objects to this statement as improper characterization of the '035 Reexamination, rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of Kove's statements as inaccurate, incomplete, not supported by, and contrary to the cited evidence.

Disputed that the statement accurately quotes statements made during the '035 reexam.

38.     **STATEMENT:** Kove also stated that using rejected claim 6's hash table to index the ONAG servers would have required "reengineering and reconfiguration":

Attempting to modify ONAG to enable maintaining location information in an indexed location store indexed by a hash table in the Name Servers requires significant reengineering and reconfiguration of ONAG. Therefore, a POSA would not have had a reasonable expectation of success to configure ONAG to satisfy claim 6's requirement.[119]

**CITATION [119]:** Ex. 32, '034 Reexam. Response at 70.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Kove objects to this statement as improper characterization of the '034 Reexamination, rather than a fact appropriate for summary judgment. Kove disputes that claim 6 of the '978 patent was rejected; AWS does not cite any evidence to support that statement, and the record shows that claim 6 survived reexamination. Ex. K128 ('034 Reexam, Final Office Action) at 2, 23-26. Kove disputes AWS's characterization of Kove's response to the '034 reexamination

as inaccurate, incomplete, not supported by, and contrary to the cited evidence. Admitted that the statement accurately quotes the cited material.

39.    **STATEMENT:** In both the '034 and '035 Reexaminations, the Patent Office withdrew its rejections based on Kove's argument that Oracle's Names Servers were incapable of knowing the contents of other names servers due to their purported limiting hierarchical organization. The Patent Office stated:

> If Oracle's Names Server had this ability, there would be no need to pass requests up and down a hierarchy of Names Servers; it could determine on its own the Names Server having the desired information and send the request directly to that Names Server.[120]

**CITATION [120]:** Ex. 44, '035 Reexam. NOIRC at 10, Ex. 45, '034 Reexam. FOA at 25.

**RESPONSE: Admitted in part, disputed in part; objection.** Kove objects to this statement as not material. Kove objects to this statement as improper characterization of the '034 and '035 Reexaminations and Kove's arguments, rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of Kove's reexamination statements, as AWS does not cite any evidence in support of that statement, and because the characterization is incorrect and incomplete. Kove disputes AWS's characterization of the Patent Office's actions and the reasons for those actions as not supported by, and contrary to the cited evidence.

Admitted that the statement accurately quotes the Notice of Intent to Issue a Reexam Certificate in the '035 Reexam and Final Office Action in the '034 Reexam.

40.    **STATEMENT:** In the '036 Reexamination, the Patent Office didn't explain why it withdrew the rejections, instead adopting Kove's descriptions as its own. The Patent Office stated:

> Based on applicant's remarks (p29-37, p41-42) presented on 8/04/2022, The cited prior art fail to teach individually or in combination: "…**transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server**…" and "…wherein the redirect message contains information for use by the client to calculate a location of a different data location server…" of claim 17; and

"if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client…" and "where in the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of the data location server…" of claim 18.[121]

**CITATION [121]:** Ex.46, '036 Reexam. NOIRC at 4.

**RESPONSE:** **Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Kove objects to this statement as improper characterization of the '036 Reexamination, rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of the Patent Office's statement as incorrect, incomplete, not supported by, and contrary to the cited evidence. Indeed, the Patent Office did explain why it withdrew the rejections. Ex K146 ('036 Reexam, Notice of Intent to Issue Reexam Certificate) at 2-5.

Admitted that the statement accurately quotes the Patent Office.

41.    **STATEMENT:** In the '034 Reexamination, the Patent Office's reasons for allowing claims 3, 6, 10, and 14 specifically point to the purportedly hierarchical configuration of Names Servers as the reason it does not have the requisite knowledge of other location servers' contents. The Patent Office stated:

In regards to independent claims 10 and 14 and dependent claim 3, the claims all require the use of a "redirect message comprising information for finding a location server known to have location information relevant to the location query" (as found in claim 3, similar language in claims 10 and 14). Oracle's Names Servers forward name requests up and down a hierarchy of Names Servers until the Names Server containing the desired information is reached, and the desired information is returned in the same way, traversing the network of Names Servers. This fact gives evidence to the fact that any given Names Server has no information regarding which specific Names Server stores a desired information item. Were any given Names Server to have such information, then the Names Server would simply pass the request directly to that Names Server, instead of forwarding the request up and down a hierarchy of Names Servers. Since any given Names Server has no information regarding which specific Names Server stores a requested item, there would be no way for the Names Server to include such information in a redirect message returned to the requesting device.[122]

In regards to dependent claim 6, the claim requires that "the location information in the location server is maintained in an indexed location store indexed by a hash table." If

43

Oracle's Names Server had this ability, there would be no need to pass requests up and down a hierarchy of Names Servers; it could determine on its own the Names Server having the desired information and send the request directly to that Names Server.[123]

**CITATION [122]:** Ex. 45, '034 Reexam. FOA at 24-25.

**CITATION [123]:** Ex. 45, '034 Reexam. FOA at 25.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Kove objects to this statement as improper characterization of the cited office action, rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of the Patent Office's statement as incorrect, incomplete, and not supported by the cited evidence.

Admitted that the statement accurately quotes the Patent Office.

42. **STATEMENT:** Amazon moved for the following additional claim constructions to address Kove's disclaimers:[124]

**APPENDIX A**

| Claims | Terms | Proposed Constructions |
|---|---|---|
| '640: 17, 18, 24 '170: 1, 2, 6, 8, 9, 12, 15 '978: 1, 3, 6, 10, 14, 17, 23, 24, 30, 31 | "network" / "system" | [network/system] **arranged in a non-hierarchical, cluster topology** |
| '640: 17, 18, 24 '170: 1, 2, 6, 8, 9, 12, 15 '978: 1, 3, 6, 10, 14, 17, 23, 24, 30, 31 | "location server" | a network-attached component that maintains, **for satisfying every request for the location of data on the network,** a set of **at least one of (1)** identifier/location mappings **or (2) information about the location of such mappings** that are modified or returned in response to **all** location request messages from clients |
| '640: 17, 18 '170: 1, 2, 5, 6, 8, 9, 12 '978: 1, 3, 6, 10, 17, 23, 24, 30, 31 | "providing" / "determin[e/ing]" / "retrieving" location information or servers | providing, **without performing any request iterations,** … location information / determin[e/ing], **without performing any request iterations,** … location servers / retrieving **in two or fewer request iterations** location information |
| '640: 17, 18 '170: 6, 15 '978: 3, 10, 14 | "return" / "sending" / "transmit[s/ting]" a redirect message | return / sending / transmit[s/ting] a redirect message **without performing any request iterations** |

On January 13, this Court denied that motion "without prejudice to the presentation of the claim construction arguments during briefing on summary judgment."[125]

**CITATION [124]:** Dkt. 539 at 9.

**CITATION [125]:** Dkt. 579/580.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Kove objects to the assertion that Kove made any "disclaimers." Whether a patentee disclaimed claim scope is a legal question not appropriate for a statement of material facts. Disputed that Kove made any "disclaimers"; AWS does not cite any evidence in support of that statement. Admitted that Amazon moved to revise the operative claim construction and that Amazon's request was denied. Disputed that Kove is asserting claims 5 and 9 of the '170 patent, or claims 1 and 31 of the '978 patent.

43. **STATEMENT:** For his invalidity analysis, Dr. Goodrich interpreted the claims in the same way as he and Kove did before the Patent Office. For example, in his deposition on his invalidity report in this case, Dr. Goodrich testified:

> Amazon Atty: So it's your opinion that each location server must be structured in a nonhierarchical configuration, right?
>
> Goodrich: That it is my opinion that, again, just based on the language of the claim itself, it requires – in order to have this ability, based on the specification of the '640 patent, requires that the logical organization among the location servers must be a nonhierarchical clustered topology.[126]

**CITATION [126]:** Ex. 47, 09/11/2023 M. Goodrich Dep. Tr. 470:4-10.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Kove objects to this statement as improper characterization of Dr. Goodrich's "invalidity analysis" and of Kove's and Dr. Goodrich's statements to the Patent Office, rather than a fact appropriate for summary judgment. Kove objects to AWS's characterization of how Kove and Dr. Goodrich "interpreted the claims" as vague, undefined, and unsupported by any evidence (AWS cites none). Kove disputes AWS's characterization of Dr. Goodrich's deposition testimony, interpretations, and "invalidity analysis" as incorrect, incomplete, and misleading.

Admitted that the statement accurately quotes the six cited lines from the September 11,

2023 deposition of Dr. Goodrich.

44. **STATEMENT:** Dr. Goodrich further testified that Amazon's proposed constructions incorporating such a non-hierarchical configuration would be redundant:

> Amazon Atty: In your view, what would be the harm of the Court further construing those claims to include those requirements?
>
> …
>
> Goodrich: I'm not an attorney. But as we've discussed this morning, I've been told by attorneys that it's helpful if claim construction does not confuse a jury, and to be adding on what are, in my opinion, additional limitations that are already there in the claims and are clear, in my opinion, that this is required, I believe it would be redundant, which is potentially confusing to a jury to add on that additional language that's already there. [127]

**CITATION [127]:** Ex. 47, 09/11/2023 M. Goodrich Dep. Tr. 481:7-22.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Kove objects to this statement as improper characterization of Dr. Goodrich's testimony, rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of Dr. Goodrich's testimony as incorrect, incomplete, not supported by, and contrary to the cited evidence.

Admitted that the statement accurately quotes the 16 cited lines from the September 11, 2023 deposition of Dr. Goodrich.

45. **STATEMENT:** Dr. Goodrich also testified that the jury at trial would understand the claims' non-hierarchical requirements based on the "sound principles" he explains to them.[128]

> Amazon Atty: Do you believe a juror reading Claim 17 of the '640 patent would understand that it requires a nonhierarchical topology for the data location servers?
>
> …
>
> Goodrich: I mean, we're not in trial right now, but I would anticipate that after I explain these terms – this is very speculative, of course – but after I explain these terms to the jury, the way that the Court has already construed them, what is implied by those constructions, I believe that the jury will be able to understand what is required. That's my hope. That then they will render their decision based on sound principles that I've explained to them.

Amazon Atty: Do you think a single juror will know what a nonhierarchical topology is?

…

Goodrich: I would answer that similarly, that I will do my best – that's my intent certainly. I know it's still a long ways in the future. I'll do my best to explain to the jury all the concepts at play in this case, some of them are admittedly complicated. But I believe I will be able to explain that to a jury, even to a single juror on the panel, in a way that then they would understand and be able to render a verdict that is based on sound principles.[129]

**CITATION [128]:** Dr. Goodrich excludes claims 6, 17, 23-24, and 30, which he states were not limited either way by Kove during reexamination. *See, e.g.*, Ex. 48, 08/18/2023 Goodrich Report ¶ 64.

**CITATION [129]:** Ex. 47, 09/11/2023 M. Goodrich Dep. Tr. 482:2-483:12.

<u>**RESPONSE**</u>**: Admitted in part, disputed in part; objection**.  Kove objects to this statement as not material.  Kove objects to this statement as improper characterization of Dr. Goodrich's testimony, rather than a fact appropriate for summary judgment.  Kove disputes AWS's characterization of Dr. Goodrich's testimony as incorrect, incomplete, not supported by, and contrary to the cited evidence.  Kove objects to the use of the cited evidence as improperly speculative and for seeking to elicit testimony regarding legal issues.  Kove objects to this statement as improper to the extent it is offered to support what a jury will or will not understand, as that is not a factual question appropriate for summary judgment.

Kove objects to the statement included in Footnote 128 as not material.  Kove objects to the statement included in Footnote 128 as improper characterization of Dr. Goodrich's statements, testimony, and opinion.  Kove objects to Footnote 128 as vague with respect to what is being excluded from what.  Kove disputes the statement's reference to claim 6 as not supported by the cited evidence, which does not mention claim 6.

Admitted that the quoted words appear in the cited deposition transcript.  Disputed that the excerpt is accurate in view of the material that has been removed from the quotation.

46.	**STATEMENT:** The Kove Patents describe the NDTP invention as applying to all topologies. For example, the '978 Patent states:

> Additionally, as illustrated in FIGS 5 and 6, the NDTP server may be a network of NDTP servers configured in any number of ways. For example, FIG. 5 illustrates a flat NDTP server topology using clustering, or a distributed topology using replication, where each of the NDTP servers 12 in the cluster may contain a different portion of a pool of associated identifier and location information. In another alternative embodiment, a hierarchical NDTP server topology, such as the NDTP server tree 52 shown in FIG. 6, may be utilized. In the NDTP server 52 topology, each node 54 may be an individual NDTP server 12, a cluster 50 of NDTP servers, an NDTP server tree or any combination of these arrangements.[130]

> An NDTP server hierarchy 100, such as illustrated in FIG. 21, permits identifier/location association data to be owned and physically controlled by many different entities.[131]

**CITATION [130]:** Ex. 3, 7:41-52.

**CITATION [131]:** Ex. 3, '978 patent, 19:46–48.

**RESPONSE: Admitted in part and disputed in part; objection**. This is not a statement of fact but rather a characterization of the Kove Patents. The scope and interpretation of the Kove Patents has been determined by the Court through the claim construction process, as set forth in Dkt. 484. Kove disputes AWS's characterization of the patents as incorrect, incomplete, not material, and not supported by the cited evidence. Because AWS purports to characterize the Kove Patents as a whole, Kove refers the Court to the patents in their entirety as its basis for opposing this statement. *See* Ex. K5 ('978 Patent); Ex. K6 ('170 patent); Ex. K4 ('640 patent).

Admitted that the quoted language appears in the '987 patent.

47.	**STATEMENT:** The '640 and '170 Patents specifically pronounce that there are two NDTP redirect mechanisms that allow for its use with all topologies. They state: "NDTP provides two mechanisms for server redirection. The redirection mechanisms allow cluster and hierarchical topologies, and mixtures of such topologies…"[132]

**CITATION [132]:** Ex. 1, 14:28-31, Ex. 2, 14:43-45.

**RESPONSE: Admitted in part and disputed in part; objection**. This is not a statement of fact but rather a characterization of the Kove Patents. The scope and interpretation of the asserted patents has been determined by the Court through the claim construction process, as set forth in Dkt. 484. Kove disputes AWS's characterization of the patents as incorrect, incomplete, not material, and not supported by the cited evidence. Because AWS purports to characterize the Kove Patents as a whole, Kove refers the Court to the patents in their entirety as its basis for opposing this statement. *See* Ex. K5 ('978 patent); Ex. K6 ('170 patent); Ex. K4 ('640 patent).

Admitted that the quoted language appears in the '640 and '170 patents.

48. **STATEMENT:** To support the connection between redirect messages and non-hierarchical clusters, at deposition Dr. Goodrich pointed to the description of the "client-centric approach" as the claimed redirection mechanism, alleging that the "server centric approach" would be the one that applies to hierarchical topologies. He testified:

> So if we go, for example, in the '978 patent, now to the discussion in Column 18, beginning at Line 60, and going through 25, that then is now talking about the hybrid hierarchical and clustered topologies in Column 19. Right before that it talks about the redirect messages and how there's a client-centric approach and a server-centric approach. These are different embodiments that are disclosed in the patent. And the first one, the client-centric approach, is now the one that is being recited in the claims; namely, that a client issues a request to a data location server. If it does not have the correct information, it sends back an answer for the client for it to then contact another server. And then it says: A successful response from the second server 120b is then sent to the client. Arrow 4. This is with respect to Figure 19 in the '978 patent. And then it goes on to describe server-centric approach that could apply to a hierarchical topology. And then it goes on and explains in more detail the difference between hybrid, hierarchical, and cluster topologies; hence, to a person of ordinary skill in the art who is reading this, would understand that that server-centric approach could be used would involve things that could be called "redirect messages," but now in a server-centric way where it's forwarding those requests on to another server, say, higher or lower in a hierarchy, that then it says: An important aspect of this topology -- I'm now reading in Column 19 at Line 20 -- An important aspect of this topology is that it pushes processing emphasis towards servers 130 A, B rather than towards clients.[133]

CITATION [133]: Ex. 47, 9/11/2023 Goodrich Dep. Tr. 507:2-508:16.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as

not material. Kove objects to this statement as improperly characterizing the Kove Patents. The scope and interpretation of the asserted patents has been determined by the Court through the claim construction process, as set forth in Dkt. 484. Kove objects to this statement as improper characterization of Dr. Goodrich's testimony, rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of Dr. Goodrich's testimony—including the characterization as to why the testimony was offered—as incorrect, incomplete, not supported by, and contrary to the cited evidence.

Admitted that the statement accurately quotes Dr. Goodrich's deposition testimony.

49.     **STATEMENT:** The Kove Patents expressly describe both client-centric and server-centric approaches as supporting both hierarchical and non-hierarchical architectures. For example, the '978 Patent states that both the client-centric and server-centric approaches work for building hierarchical and non-hierarchical systems.

> Client-centric and server centric approaches can be used to build NDTP server clusters, trees, trees of clusters, and any other useful configuration.[134]

> Hierarchical and clustered topologies may be created using a server-centric or client-centric approach. One illustration of a cluster topology 50 is shown in FIG. 5. A mixed topology containing hierarchical and clustered elements in shown in FIGS. 6 and 21. The primarily hierarchical topology of the embodiment of FIG. 21 can allow for a single administrative entity 102 to manage the NDTP cluster.[135]

And the '640 and '170 Patents describe the "client-centric" and "server-centric" approaches as compatible with both hierarchical and non-hierarchical structures. In the '640 and '170 Patents' descriptions of the "Client-Centric Approach," they specifically describe how it applies to hierarchical topologies, emphasizing the "highly configurable" nature of NDTP:

> This design constructs operating patterns for (1) redirection, (2) index operations, and (3) hierarchical or cluster topologies. The important point is that the Network-Distributed Tracking Protocol is designed to support highly configurable methods for processing index related operations.[136]

And in the '640 and '170 Patents descriptions of Fig. 12's client-centric and Fig. 13's server-centric approaches, they explain that each applies to both hierarchical and cluster organizations:

> Behind the scenes, the server constellation 110 could also be using a hierarchical organization or a cluster organization for managing indices. The important point of this topology is pushing processing emphasis toward clients (not shown) rather than toward servers 120a,b.[137]

**CITATION [134]:** Ex. 3, 19-34-36.

**CITATION [135]:** Ex. 3, 19:39-48

**CITATION [136]:** Ex. 1, 17:22-26; Ex. 2, 17:38-39.

**CITATION [137]:** Ex. 1, 18:9-13; Ex. 2, 18:23-27.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as non-compliant with Dkt. 676 and L.R. 56.1(d), which limit the number of paragraphs allowed in the moving party's statement of facts and require that each paragraph be "concise." This paragraph seeks to construe three separate patents (each of the Kove Patents) with respect to four separate issues ("client-centric", "server-centric", "hierarchical," and "non-hierarchical"), and contains statements relating to three separate office actions across three patents pertaining to 12 distinct claims.

Kove objects to each part of this statement as not material.

Kove objects, as this paragraph is not a statement of fact, but rather a characterization of the Kove Patents. The scope and interpretation of the asserted patents has been determined by the Court through the claim construction process, as set forth in Dkt. 484. Kove disputes AWS's characterization of each of the patents as incorrect, incomplete, not material, and not supported by the cited evidence. Because AWS purports to characterize the Kove Patents as a whole, Kove refers the Court to the patents in their entirety as its basis for opposing this statement.

50.    **STATEMENT:** This design constructs operating patterns for (1) index operations and (2) hierarchical or cluster topologies…Fig. 13 illustrates an hierarchical topology for client interaction with NDTP servers 130.[138]

**CITATION [138]:** Ex. 1, 18:36-58; Ex. 2, 18:49-60.

**RESPONSE**: **Admitted in part and disputed in part; objection**.  Kove objects to this statement as not material.  Kove objects to this statement as incoherent.  This statement appears to be a quote from the '170 patent and '640 patent specifications.  Kove admits that the language from the statement appears in the cited locations of the patent specifications.  Disputed to the extent AWS is attempting to assert a fact other than the accuracy of its quotations.

51.    **STATEMENT:** For his invalidity opinions, Dr. Goodrich opines that the Kove Patents' use of redirect messages and hashing means that each location server must know which server contains the relevant location information with "certainty and specificity." He uses the certain and specific description 129 times throughout his invalidity analysis. For examples, Dr. Goodrich stated:

> Furthermore, claim 1 requires that each location server is configured to determine which location server stores the sought-after location information with certainty and specificity based on the plain language of claim 1.[139]

> Claims 6, 8, and 15 require a redirect message that contains the location server(s) that store the sought-after location with certainty and specificity because the redirect message includes the location server known to have the location information.[140]

> Claims 17 and 18 require that the redirect messages includes information for the client to calculate the location of the location server that stores the sought-after location string with certainty and specificity.[141]

> Claims 3, 10, and 14 of the '978 patent require that the redirect message contain information that allows for finding the location server storing the sought-after location with certainty and specificity because claims 3, 10, and 14 require the redirect message to include the location server known to have the location information.[142]

> Furthermore, claim 1 requires that each location server is configured to determine which location server stores the sought-after location information with certainty and specificity

based on the plain language of claim 1. For example, claim 1 states "at least one of the plurality of data location servers includes location information associated with the identifier string ... each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string." In my opinion, the Court ordered constructions and/or AWS's alternative constructions do not affect this requirement. Therefore, claim 1 requires that each location server is configured to determine which location server stores the sought-after location information with certainty and specificity based on the Court ordered constructions and AWS's alternative constructions.[143]

**CITATION [139]:** Ex. 48, 08/18/2023 Goodrich Report ¶ 204.

**CITATION [140]:** Ex. 48, 08/18/2023 Goodrich Report ¶ 218.

**CITATION [141]:** Ex. 48, 08/18/2023 Goodrich Report ¶ 376.

**CITATION [142]:** Ex. 48, 08/18/2023 Goodrich Report ¶ 461.

**CITATION [143]:** Ex. 48, 08/18/2023 Goodrich Report ¶ 461.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Kove objects to this statement as improper characterization of Dr. Goodrich's opinion, rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of Dr. Goodrich's report as incorrect, incomplete, not supported by and contrary to the cited evidence.

Kove objects to this statement as improperly characterizing the Kove Patents. The scope and interpretation of the asserted patents has been determined by the Court through the claim construction process, as set forth in Dkt. 484.

Kove disputes that the quoted language in the last block quote is supported by the cited evidence (AWS Ex. 48 ¶ 461, cited in AWS footnote 143), as the quoted language does not appear at the cited paragraph. Admitted that the other quotes in the statement are accurate.

52.    **STATEMENT:** Dr. Goodrich further opined that non-hierarchical configurations are required to practice this "certainty and specificity" requirement. Dr. Goodrich stated:

I agree with Kove that the plain language of claims 17 and 18 of the '640 patent requires

each server in the data location server network to be capable of transmitting information to the client via a redirect message that must contain information that would allow the client to determine the data location server with the location string information. I also agree with Kove that for each data location server to have this capability, they must be structured in a non-hierarchical cluster configuration, because not every server ordered in a hierarchical topology would have this capability. As such, Kove's statements did not change the scope of claims 17 or 18 (or, by extension, claim 24, which depends from claim 18) of the '640 patent. The statements merely explained the claims for what they are.[144]

Kove presented similar explanations for claims 1, 6, and 15 of the '170 patent, all of which have particular claim limitations requiring *each location server in the server network to know which location server among them contains the location of the desired data*.[145]

**CITATION [144]:** Ex. 48, 08/18/2023 Goodrich Report ¶ 56.

**CITATION [145]:** Ex. 48, 08/18/2023 Goodrich Report ¶ 57.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Kove objects to this statement as an improper characterization of Dr. Goodrich's report, rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of Dr. Goodrich's report as incorrect, incomplete, not supported by and contrary to the cited evidence.

Kove objects to this statement as improperly characterizing the Kove Patents. The scope and interpretation of the asserted patents has been determined by the Court through the claim construction process, as set forth in Dkt. 484.

Admitted that the statement accurately quotes Dr. Goodrich's expert report.

53.     **STATEMENT:** In his invalidity report, Dr. Goodrich distinguishes Amazon's prior art based on his view of whether they satisfy this "certainty and specificity" requirement. Dr. Goodrich stated:

Minami and RFC1034 and/or BIND are completely devoid of teachings or suggestions to allow for file servers or name servers to send a redirect message that includes the location server known to include the sought-after location with certainty and specificity.[146]

Furthermore, Skagerwall's servers cannot determine which server stores the sought-after location, with certainty and/or specificity.[147]

Furthermore, each file server cannot determine which server is configured to store the record. In Neimat, if the first file server does not include the sought-after record, the first file server forwards the request to the second file server, which may also may not have the sought-after record. The file servers merely forward from one file server to the next in an attempt to find the sought-after record. The file servers do not know and cannot determine which file server is storing the sought after record with any specificity or certainty.[148]

Neimat, RFC1034 or BIND, and/or Karger '618/'420 are completely devoid of teachings or suggestions for organizing location information across location servers using a hash function and allowing file servers to determine which server is storing the sought after information with specificity or certainty by applying a hash function to an identifier.[149]

**CITATION [146]:** Ex. 48, 08/18/2023 Goodrich Report ¶ 347.

**CITATION [147]:** Ex. 48, 08/18/2023 Goodrich Report ¶ 123.

**CITATION [148]:** Ex. 48, 08/18/2023 Goodrich Report ¶ 292.

**CITATION [149]:** Ex. 48, 08/18/2023 Goodrich Report ¶ 306.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Kove objects to this statement as improper characterization of Dr. Goodrich's report, rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of Dr. Goodrich's report as incorrect, incomplete, not supported by and contrary to the cited evidence.

Kove objects to this statement as improperly characterizing the Kove Patents. The scope and interpretation of the asserted patents has been determined by the Court through the claim construction process, as set forth in Dkt. 484.

Admitted that the statement accurately quotes Dr. Goodrich's expert report.

54.    **STATEMENT:** Dr. Goodrich further asserts that hierarchical configurations, like the DNS prior art references, don't know what each other server contains. Dr. Goodrich opines:

However, as RFC1034 teaches, DNS's names servers cannot determine with certainty or specificity which names server stores the sought-after location information. RFC1034 states "a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." Therefore, the names server may not know which name server stores the sought-after location.[150]

**CITATION [150]:** Ex. 48, 08/18/2023 Goodrich Report ¶ 219.

**RESPONSE:  Admitted in part, disputed in part; objection**.  Kove objects to this statement as not material.  Kove objects to this statement as improper characterization of Dr. Goodrich's report, rather than a fact appropriate for summary judgment.  Kove disputes AWS's characterization of Dr. Goodrich's report as incorrect, incomplete, not supported by and contrary to the cited evidence.

Kove objects to this statement as improperly characterizing the Kove Patents.  The scope and interpretation of the asserted patents has been determined by the Court through the claim construction process, as set forth in Dkt. 484.

Admitted that the statement accurately quotes Dr. Goodrich's expert report.

55.    **STATEMENT:** Kove's March 2, 2023 infringement contentions were the first contentions to describe S3 and DDB as meeting any non-hierarchical requirement.[151]

**CITATION [151]:** Ex. 5.

**RESPONSE: Disputed; objection**.  Kove objects to this statement as not material.  Kove objects to this statement as improper characterization of Kove's contentions, rather than a fact appropriate for summary judgment.  Kove disputes AWS's characterization that Kove's March 2, 2023 infringement contentions "describe S3 and DDB as meeting any non-hierarchical requirement," and that they were "the first contentions" as not supported by the cited evidence.

Kove disputes that any of the Kove Patents contain a "non-hierarchical requirement."  The cited evidence does not support that proposition, and, in fact, does not contain the word "hierarchical" in any form.  *See* AWS Ex. 5.

56.    **STATEMENT:** Both S3 and DDB are organized with ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ throughout their design. Both S3 and DDB are organized into ▮ different global regions, and each region is divided into different availability zones.[152] For both S3 and DDB, a

user anywhere in the world can store or make a request for data in any other location.[153] For example, Dr. Goodrich testified:

> Amazon Atty: And you can store that data anywhere in the world, right?
>
> Goodrich: Broadly speaking, more or less, yes.
>
> Amazon Atty: For example, you could be in northern Virginia and store data anywhere that S3 – excuse me – that Amazon has S3 servers, right?
>
> Goodrich: I believe that is correct. Yes.
>
> Amazon Atty: So you can store in Ohio or Sydney or Beijing, right?
>
> Goodrich: Yes. I think those are all possible places you can store S3 data.[154]

**CITATION [152]:** Ex. 49, KOV_00220187 (AWS Global Infrastructure webpage).

**CITATION [153]:** Ex. 49, KOV_00220187 (AWS Global Infrastructure webpage).

**CITATION [154]:** Ex. 14., 09/09/2023 M. Goodrich Dep. Tr. 297:22-298:7.

**RESPONSE: Disputed; objection**. Kove objects to this statement as non-compliant with Dkt. 676 and L.R. 56.1(d), which limit the number of paragraphs allowed in the moving party's statement of facts and require that each paragraph be "concise." This paragraph contains statements relating to two unrelated topics: Whether S3 and DynamoDB are organized into "███████████████," and the geographic reach of S3 and DynamoDB.

*Response to Statement Regarding Hierarchies:* Disputed; objection. Kove objects to this statement as not material. Kove objects to the phrase "███████████████" as vague and undefined. To the extent Kove understands the term, Kove disputes that S3 and DynamoDB "are organized with ███████████████ throughout their design," as unsupported; AWS does not offer any citation in support of this statement. Kove notes there is a significant dispute between the parties as to the meaning of "hierarchical," both in the abstract and in connection with the Kove Patents. *See* Ex. K50 (Goodrich 9/9/2023 Tr.) at 362:4-14 ("Dr. Grama, in my opinion, completely

57

misunderstands what 'hierarchical' means."); Ex. K56 (Goodrich Rebuttal Report) ¶ 59 (explaining that, in the context of the Kove Patents, "hierarchical structure means "if a queried server does not have the requested information, it must forward the request to the next node and so on until it reaches a root server.").

***Response to Statements Regarding Global Organization of the Accused Products:*** Disputed in part; admitted in part; objection. Kove objects to this statement as not material. Disputed that S3 and DDB are organized into █ different global regions, as that statement is unsupported by and contrary to the cited evidence. The cited evidence does not reference either S3 or DynamoDB, but instead refers to "AWS Global Infrastructure." The cited evidence does not support the statement that there are █ regions; it references █. The cited evidence does not support the statement that the use of "different global regions" qualifies as ██████████ ████████ or even as a ██████████████. Further, AWS's subsequent assertion—that users of S3 and DynamoDB can store and access data from anywhere in the world suggests the absence of a hierarchy. Kove notes there is a significant dispute between the parties as to the meaning of "hierarchical," both in the abstract, and in connection with the Kove Patents. *See* Ex. K50 (Goodrich 9/9/2023 Tr.) at 362:4-14 ("Dr. Grama, in my opinion, completely misunderstands what 'hierarchical' means."); Ex. K56 (Goodrich Rebuttal Report) ¶ 59 (explaining that, in the context of the Kove Patents, "hierarchical structure means "if a queried server does not have the requested information, it must forward the request to the next node and so on until it reaches a root server.").

Admitted that the statement accurately quotes Dr. Goodrich's deposition testimony, but disputed insofar as AWS contends that the statement supports AWS's characterization of S3 and DynamoDB, as not supported by the cited evidence.

57.    **STATEMENT:** Kove asserts that S3 and DDB infringe the Kove Patents within each region. Dr. Goodrich opines:

> Within Amazon S3, ███████████████████ — for each group of regions that ███████████████ — constitutes "a system having a plurality of location servers for store and retrieve location information."[155]

However, the asserted claims read on DynamoDB when it operates in a given region.[156]

**CITATION [155]:** Ex. 17, 07/06/2023 Goodrich Corrected Report, Ex. D ¶ 128.

**CITATION [156]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E ¶ 74.

**RESPONSE: Admitted in part; disputed in part; objection.** Kove objects to this statement as not material. Kove objects to the statement as lacking a clear meaning with respect to the phrase "infringe the Kove Patents within each region." Kove objects to this statement as improper characterization of Kove's infringement theories, rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of Kove's infringement theories as incorrect, incomplete, and not supported by the cited evidence. Admitted that Kove asserts that S3 and DDB infringe the Kove Patents, including when they are used in US-based regions.

 Admitted that the statement accurately quotes Dr. Goodrich's report, but disputed insofar as AWS contends that the statement supports AWS's characterization of Dr. Goodrich's or Kove's infringement theories, as not supported by the cited evidence.

58.    **STATEMENT:** Dr. Goodrich has never used S3 or DDB and didn't test them as part of his work of this case. For example, Dr. Goodrich testified:

Amazon Atty: Have you ever personally used S3?

Goodrich: That I used, no.

Amazon Atty: Okay. So you've never used S3 Intelligent, right?

Goodrich: Correct.

Amazon Atty: You've never used S3 Standard, right?

Goodrich: That's right.

Amazon Atty: And you've never used S3 One Zone, right?

Goodrich: Not directly.

Amazon Atty: And you've never used S3 Glacier, right?

Goodrich: That's right, also not directly myself.

Amazon Atty: What do you mean?

Goodrich: Like, I've directed students to do these things, but I've not done so myself directly.

Amazon Atty: So you've never personally used S3 One Zone or S3 Glacier, right?

Goodrich: That's right.

Amazon Atty: Have you ever personally used DDB?

Goodrich: No.

Amazon Atty: Okay. So before issuing your infringement opinions in this case, you had not ever personally used S3 or DDB, right?

Goodrich: That's right.[157]

**CITATION [157]:** Ex. 14, 09/09/2023 M. Goodrich Dep. Tr. 282:14-283:21

**RESPONSE: Admitted; objection**. Kove objects to this statement as not material. Admitted that Dr. Goodrich did not personally use S3 or DDB prior to his work on this case. Admitted that the statement accurately quotes Dr. Goodrich's deposition testimony.

59.     **STATEMENT:** Dr. Grama tested both S3 and DynamoDB, and included the results in his noninfringement report.[158] Dr. Grama stored and retrieved data all over the world from two locations: Ohio and Sydney, Australia.[159] Dr. Grama measured the response time for these requests to be resolved and determined that the results had consistently distinct results depending on each separate region storing the requested data.[160]









**CITATION [158]:** Ex. 8, 08/18/2023 Grama Report ¶¶ 168-97.

**CITATION [159]:** Ex. 8, 08/18/2023 Grama Report ¶¶ 168-97.

**CITATION [160]:** Ex. 8, 08/18/2023 Grama Report ¶¶ 168-97.

**RESPONSE**: **Admitted in part, disputed in part; objection**.  Kove objects to this statement as not material.  Disputed as to "all over the world" as contrary to the cited evidence.  Otherwise admitted.

60.    **STATEMENT:** DDB's components, ████████████████████████████
████████████████████████████████ DDB's first General Manager and current Amazon Vice President of Database, Analytics, and Machine Learning, Dr. Swami Sivasubramanian testified:

> Kove Atty: How did you set it for reads?

> Sivasubramanian: DynamoDB is not ████████████████████████████████
> ████████████████████████████ So you have to – so for a get item, a simple one, it might be different from, let's say, a scan API or – and the query API ████████████
> ████████████████████████████ And then we think about it and then see.[161]

> Sivasubramanian: Again, as I said, DynamoDB has ████████████████████
> █████████████[162]

Kove Atty: What is the distinction between a "███████" and a "██████"?

…

Sivasubramanian: ███████████████ can mean many different things depending on how the ████████ and so forth. If it is purely ████████████. But DynamoDB is a hierarchical system ███████. And depending on which query happens, we need to know ████████ [163]

Dr. Goodrich describes the organization of DDB components as structured using a ████████ ███████



[164]

This location information is maintained in the ███████ and is updated as ███████ [165]

DynamoDB includes a service ███████████████ [166]

**CITATION [161]:** Ex. 50, 05/10/2023 S. Sivasubramanian Dep. Tr., 136:6-19.

**CITATION [162]:** Ex. 50, 05/10/2023 S. Sivasubramanian Dep. Tr., 147:2-5.

**CITATION [163]:** Ex. 50, 05/10/2023 S. Sivasubramanian Dep. Tr., 161:1-15.

**CITATION [164]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E ¶ 23.

**CITATION [165]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E ¶ 33.

**CITATION [166]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E ¶ 57.

**<u>RESPONSE</u>: Disputed; objection**. Kove objects to this statement as not material. Kove objects to the phrase ███████████████

████████ without citation to evidence. Kove objects to the phrase ███████████████ as vague and undefined. To the extent Kove understands the term, Kove disputes the statement as not supported by the cited evidence. Kove notes there is a significant dispute between the parties as to the meaning of ████████ both in the abstract, and in connection with the Kove Patents. *See* Ex. K50 (Goodrich 9/9/2023 Tr.) at 362:4-14 ("Dr. Grama, in my opinion, completely misunderstands what ███████ means."); Ex. K56 (Goodrich Rebuttal Report) ¶ 59 (explaining that, in the context of the Kove Patents, ████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████.

Kove disputes AWS characterization of Dr. Sivasubramanian's role and title as offered without citation, and so not supported.

Kove disputes that Dr. Sivasubramanian's testimony supports the proposition that "DDB's components, ████████████████████████████████████████ ████████ as not supported by the cited evidence. The cited testimony does not reference or mention ██████████ Additionally, the cited testimony refers to ███████████████ ██████████████ and does not reference any components. Dr. Sivasubramanian's reference to ██████████████████████████████████████ since his testimony does not demonstrate that there is ███████████████████████████████

Kove disputes that the statement accurately quotes the cited deposition testimony, as it includes alterations and omits portions of the cited testimony.

Kove objects to this statement as an improper characterization of Dr. Goodrich's report, rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of Dr. Goodrich's report as describing a ████████████████████████████████████████

▓▓▓ as incorrect, incomplete, not supported by and contrary to the cited evidence. Indeed, Dr.

Goodrich expressly disputed AWS's characterization of his report, stating:



Ex. K54 (Goodrich Report, Ex. E) ¶ 116. Kove admits that the quoted language appears in Dr.

Goodrich's report.

61. **STATEMENT:** The hierarchical nature of DDB's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ An annotated excerpt of

this source code is below.[167]



**CITATION [167]:** Ex. 51, AWS_SRC_CODE_000000157; Ex. 8, 08/18/2023 Grama Report ¶¶

336-37.

**RESPONSE: Disputed; objection**. Kove objects to this statement as not material. Kove objects

to the term ▓▓▓▓▓▓▓▓▓ as vague and undefined. To the extent Kove understands the

term, Kove disputes the statement as not supported by the cited evidence; the above source code does not ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████ Kove notes there is a significant dispute between the parties as to the meaning of ████████████ both in the abstract, and in connection with the Kove Patents. *See* Ex. K50 (Goodrich 9/9/2023 Tr.) at 362:4-14 ("Dr. Grama, in my opinion, completely misunderstands what ████████████ means."); Ex. K56 (Goodrich Rebuttal Report) ¶ 59 (explaining that, in the context of the Kove Patents, ████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████.").

Additional record evidence confirms this statement is disputed. *See* Ex. K54 (Goodrich Report, Ex. E) ¶ 116; Ex. K50 (Goodrich 9/9/2023 Tr.) at 276:4-19 ███████████████████████

███████████████████████████████████████████████████████████████).

62. **STATEMENT:** S3 is also organized into ███████████████████████, S3 components are organized into ████████████████████████████████████████

████████████████████████████ [168]





**CITATION [168]:** Ex. 52, AMZ_KOVE_000062766.

**<u>RESPONSE</u>: Disputed; objection**. Kove objects to this statement as not material. Kove objects to the phrase ▓▓▓▓▓▓▓▓▓▓▓▓▓ as improperly assuming that there are ▓▓▓▓ ▓▓▓▓▓▓▓ without citation to evidence. Kove objects to the phrase ▓▓▓▓▓▓▓▓▓▓ as vague and undefined. To the extent Kove understands the term, Kove disputes the statement as not supported by the cited evidence. The cited evidence does not state that S3 components are organized ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ nor does it otherwise support that assertion. Instead, the cited evidence shows how data is distributed across different virtual data structures— the figure does not reference or describe any S3 components. Kove notes there is a significant dispute between the parties as to the meaning of ▓▓▓▓▓ both in the abstract and in connection with the Kove Patents. *See* Ex. K50 (Goodrich 9/9/2023 Tr.) at 362:4-14 ("Dr. Grama, in my opinion, completely misunderstands what ▓▓▓▓▓ means."); Ex. K56 (Goodrich

67

Rebuttal Report) ¶ 59 (explaining that, in the context of the Kove Patents, ███████

███████████████████████████████████████████████████

████████████████████████████████.

    Additional record evidence confirms this statement is disputed.  Ex. K53 (Goodrich Report,

Ex. D) ¶¶ 121 (explaining why S3 components are ████████████, 175 (same: "The network or

system of ████████████████████████████████

████████████████████████████████ in Amazon S3 are arranged in a

███████████████████████████████████████████████

████████████████████████████████████ (as there is no such

thing).").

    63.   **STATEMENT:** ████████████████████████████

████████████████████████████████████████████

███████████████████████████ [169]

██████

███████████████████████████████████████

███████████████████ [170]

**CITATION [169]:** *See* Ex. 53, AMZ_KOVE_000086390

**CITATION [170]:** Ex. 54, 07/20/21 J. Sorenson Dep. Tr., 54:22-55:2.

**RESPONSE: Admitted in part, disputed in part; objection**.  Kove objects to this statement as

not material.  Kove disputes the statement as not supported by the cited evidence, which shows

that AWS uses a ██████████████████████ the evidence does not support that the

████ themselves are stored in a ████████.  Additional record evidence confirms that ████

██████████████████ *See* Ex. K53 (Goodrich Report, Ex. D) ¶¶ 119 ████████████

████████████████████████████████████████████

██████████, 161 ████████████████████████ 173. Admitted that ████████████████

64. **STATEMENT:** The S3 source code confirms ████████████████████

████████████████████ An excerpt of the code showing this is below:[171]

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

**CITATION [171]:** Ex. 55, AWS_SRC_CODE_000001405 at lines 56-64; *see also*, Ex. 56,

AWS_SRC_CODE_ 000001396; Ex. 8, 08/18/2023 Grama Report ¶¶ 359-361.

**RESPONSE: Admitted; objection.** Kove objects to this statement as not material.

65. **STATEMENT:** Amazon's engineers developed S3's ████████████████

████████████████ As Allan Vermeulen, former CTO of Amazon and one of the founding engineers

of S3, testified:

> ████████████████████████████████████ So at each particular level, the analogy of the encyclopedia is
> -- is kind of accurate, but obviously, that -- I mean, it's an oversim- plification like any
> analogy. The reality is you have to apply that ████████████████
> ████████████████████████████████████
> [172]

**CITATION [172]:** Ex. 57, 05/23/2023 A. Vermeulen Dep. Tr., 82:1-83:14, Ex. 58, 04/27/2023

J. Hamilton Dep. Tr., 114:13-19.

**RESPONSE: Admitted in part, disputed in part; objection.** Kove objects to this statement as

not material. Kove objects to the phrase ████████████████████ as vague and undefined.

To the extent Kove understands the term, Kove disputes the statement as not supported by the cited

evidence. The cited evidence from the Vermeulen transcript does not mention or reference the

████████ that is the subject of the statement. The cited evidence from the Hamilton deposition

does not support the statement, as the testimony is uncertain and relates only to whether S3 used a

▮ without reference to how, and without any testimony as to whether the structure is ▮

Q: And does the S3 use ▮ ▮

A: I haven't been around that part of the system for probably ten years. And so I'm not sure. But I am definitely sure that a ▮ ▮ I just don't recall.

Ex. K139 (Hamilton Tr.) at 114:13-22.

Additional record evidence shows that the use of a ▮ does not mean S3 had a ▮ *See* Ex. K53 (Goodrich Report Ex. D) ¶¶ 121 (explaining why S3 components are ▮, 175 (same: ▮

▮

▮ in Amazon S3 are arranged ▮

▮

▮ (as there is no such thing).”); Ex. K50 (Goodrich 9/9/2023 Tr.) at 68:11-21 (whether a ▮ depends on the context of how and where it is used). *See* AWS SMF ¶ 63, and Kove's response to AWS SMF ¶ 63 ▮ Kove notes there is a significant dispute between the parties as to the meaning of ▮ both in the abstract and in connection with the Kove Patents. *See* Ex. K50 (Goodrich 9/9/2023 Tr.) at 362:4-14 (“Dr. Grama, in my opinion, completely misunderstands what ▮ means.”); Ex. K56 (Goodrich Rebuttal Report) ¶ 59 (explaining that, in the context of the Kove Patents, ▮ ▮

66. **STATEMENT:** The S3 source code for ▮ ▮ [173]



**CITATION [173]:** Ex. 59, AWS_SRC_CODE_000000798 at AWS_SRC_CODE_000000803; Ex. 8, 08/18/2023 Grama Report ¶¶ 357-58.

**RESPONSE: Disputed; objection**. Kove objects to this statement as not material. Kove objects to the phrase "also shows ███████████████████████████ as improperly assuming that there exists other evidence supporting the referenced ██████ and relationships, without citation to evidence. Kove objects to the phrase ██████████ ████████ as vague and undefined. Kove notes there is a significant dispute between the parties as to the meaning of ████████ both in the abstract and in connection with the Kove Patents. *See* Ex. K50 (Goodrich 9/9/2023 Tr.) at 362:4-14 ("Dr. Grama, in my opinion, completely misunderstands what ████████ means."); Ex. K56 (Goodrich Rebuttal Report) ¶ 59 (explaining that, in the context of the Kove Patents, ████████████████████████ ████████████████████████ ████████████████████). To the extent Kove understands the term, Kove disputes the statement as not supported by the cited evidence.

The referenced source code comment shows ████████████████████████ but does not show ████████████████████████████████ The cited testimony from the Grama report confirms the same. Ex. K59 (Grama Report) ¶ 357 (explaining that ██████ ████████████████████████████.

Kove also disputes this statement based on other record evidence showing that the use of a ████████████████████████████████████████ ████████ *See* Ex. K50 (Goodrich 9/9/2023 Tr.) at 276:13-19 ████████████████████

71

██████████████████████████████████████████████████████; Ex. K54 (Goodrich Report,

Ex. E) ¶¶ 121, 175.

67.    **STATEMENT:** Caching is a technique to improve efficiency by storing a small

subset of the full database in a smaller, faster storage memory location to improve performance in

computer systems.[174]

**CITATION [174]:** *See*, *e.g.,* Ex. 60, D. Lenoski, *et al.*, "The Stanford DASH Multiprocessor,"

IEEE Computer, pp. 63-79 (March 1992); Ex. 8, 08/18/2023 Grama Report ¶¶ 59-62.

<u>**RESPONSE:**</u> **Disputed; objection**. Kove objects to this statement as not material. Kove disputes

the statement as not supported by the cited material; the Lenoski article describes one use of

caching, but does not define caching. *See* AWS Ex. 60 at 63 (explaining that the purpose of the

article is to describe "a shared-memory multiprocessor called Dash" that is built with "coherent

caches"). The cited description is also inconsistent with the cited paragraphs from Dr. Grama's

report, which provides a broader description of caching. Ex. K59 (Grama Report) ¶¶ 59-60.

Disputed that caching requires the use of a "small subset of [a] full database." Neither item

of cited evidence supports the statement that a cache requires a "full database," nor that a cache

can only store a "small subset" of any such database. The statement is also inconsistent with other

record evidence, showing that caches are used to serve a large subset of database requests,

including for data that is frequently used or "hot." *See* Ex. K70 (AMZ_KOVE_000380291) at –

380291 ████████████████████████████████████ are served from a cache); Ex. K66

(AMZ_KOVE_000221961) at –221984 (caches used to store "frequently used data"); Ex. K67

(AMZ_KOVE_000235427) at –235430 (describing ████████████ for "most frequently-used"

data); Ex. K68 (AMZ_KOVE_000236629) at –236629 (describing ████████ for fast retrieval

of frequently-used data"); Ex. K69 (AMZ_KOVE_000288733) at –288733 (describing ███████

██████████████████████████████); Ex. K78 (AMZ_KOVE_000443745) at –443766 (describing
██████████████████████████").

68.     **STATEMENT:** Co-inventor John Overton testified that the technology underlying the Kove Patents "was not about caching."[175] And he testified that he didn't invent caching.

> Amazon Atty: You didn't invent the concept of caching data; did you?
> Overton: That is correct.[176]

**CITATION [175]:** Ex. 61, 05/17/2023 J. Overton Dep. Tr., 732:14-21.

**CITATION [176]:** Ex. 61, 05/17/2023 J. Overton Dep. Tr., 699:1-3.

**RESPONSE: Admitted in part, disputed in part; objection.**  Kove objects to this statement as not material.  Kove objects to the statement as improper characterization of the Kove Patents.  The scope and interpretation of the asserted claims has been determined by the Court through the claim construction process, as set forth in Dkt. 484.  The Court has not construed the claims to exclude the use of caching, nor has it determined that the claims are "not about caching."

Kove objects to this statement as improper characterization of Dr. Overton's testimony, rather than a fact appropriate for summary judgment.  Kove disputes AWS's characterization of Dr. Overton's testimony as incorrect, incomplete, and not supported by the cited evidence.  AWS's characterization is also refuted by deposition testimony from immediately after the cited portion, in which Dr. Over confirmed that "you can deploy [Kove's invention] that way [i.e. with caching] but that's not the part that's the most distinctive."  Ex. K37 (5/17/23 Overton Tr.) at 732:14-733:12.

Admitted that the statement accurately quotes the transcript from Dr. Overton's deposition.

69.     **STATEMENT:** Dr. Overton also testified that "one very foundational component of our patents and of the technology is to eliminate caching."[177] And in the '109 Reexamination, Kove stated that NDTP was designed to replace storing caches:

> That is, the Inventors invented a protocol that *replaced storing caches* and state information across the network, with a stateless approach that allows clients to compute the location of

data's location information based on a dynamically created relationship between the data and its location. The Inventors sought to find a way to achieve seamless dynamic and spontaneous global search and retrieval of data across a distributed network. The result are the claims embodying the Inventors' network distributed tracking protocol ("NDTP").[178]

**CITATION [177]:** Ex. 61, 05/17/2023 J. Overton Dep. Tr., 733:4-15.

**CITATION [178]:** Ex. 10, 07/03/2023 '109 Reexam. Response at 8 (emphasis added).

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Kove objects to this statement as improperly characterizing Kove's Patents and the purported purpose of Kove's Patents. The scope and interpretation of the asserted claims has been determined by the Court through the claim construction process, as set forth in Dkt. 484. The Court has not determined that any of the asserted claims are incompatible with the use of caching, and Dr. Overton's testimony is to the contrary. Ex. K37 (5/17/23 Overton Tr.) at 732:14-733:12.

Kove objects to this statement as improper characterization of Kove's statements in the '109 Reexamination, rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of Kove's reexamination statement as incorrect, incomplete, and not supported by the cited evidence.

Admitted that the quoted language appears in the transcript from Dr. Overton's deposition and in Kove's statement in the '109 reexam.

70. **STATEMENT:** The ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As Dr. Goodrich stated,

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[179] Dr. Goodrich also stated that

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮:



**CITATION [179]:** Ex. 17, 07/06/2023 Goodrich Corrected Report, Exhibit D, ¶ 27.

**CITATION [180]:** Ex. 17, 07/06/2023 Goodrich Corrected Report, Exhibit D, ¶ 27.

**RESPONSE: Admitted; objection.** Kove objects to this statement as non-compliant with Dkt. 676 and L.R. 56.1(d), which limit the number of paragraphs allowed in the moving party's statement of facts and require that each paragraph be "concise." This paragraph contains statements relating to two unrelated topics: The purpose of the ▮▮▮▮▮ and how requests are ▮▮▮▮▮▮▮▮▮ Admitted.

71.   **STATEMENT:** Not all ▮▮▮▮▮▮▮▮▮▮ As Dr. Goodrich testified:

> Amazon Atty: And the ▮▮▮▮▮▮▮▮▮ right?
>
> Goodrich: No, they do not.[181]

**CITATION [181]:** Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 310:9-10.

**RESPONSE: Admitted; objection.** Kove objects to this statement as not material. Admitted.

72.   **STATEMENT:** And the ▮▮▮▮▮▮ doesn't determine what information ▮▮▮ ▮▮▮▮▮▮▮ Dr. Goodrich testified that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮

> Amazon Atty: So the ▮▮▮▮▮▮▮▮ right?
>
> Goodrich: ▮▮▮▮▮▮▮▮▮▮▮
> ▮▮▮ [182]

**CITATION [182]:** Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 268:1-5.

**RESPONSE: Admitted in part; disputed in part; objection.** Kove objects to this statement as not material. Admitted that AWS uses a ▮▮▮▮▮▮ to determine (i.e., decide) which ▮▮▮▮▮▮, and that Dr. Goodrich testified to the same. Disputed that "the ▮▮▮▮▮ doesn't determine ▮▮▮▮▮▮▮▮▮▮" The ▮▮▮▮▮▮▮ determines ▮▮▮▮▮▮▮▮▮▮ Once the request is sent to the



Ex. K60 (AMZ_KOVE_000012900) at –12902; Ex. K52 (Goodrich Report) ¶ 27; Ex. K59 (Grama Report) ¶ 120 ███████████████████████████████████

███████████████████████████ Ex. K52 (Goodrich Report) ¶¶ 27-28.

73. **STATEMENT:** The ████████████████████████████████████████

An annotated excerpt of the S3 source code is below, which shows ██████████████

[183]

**CITATION [183]:** Ex. 62, AWS_SRC_CODE_000001084; Ex. 8, 08/18/2023 Grama Report, ¶ 281.

**RESPONSE: Disputed; objection**. Kove objects to this statement as not material. Disputed that ██████████████████████████████████████ The cited evidence does not support the proposition. Instead, the cited evidence shows that ████████████████████

████████████████████████████████████████████████████████████

█████████████████████████

Additional record evidence shows that the contents of a ███████████ are determined by a ████████████████████████████████████████ Ex. K53 (Goodrich Report, Ex. D) ¶¶ 27-28 (explaining how the ██████████ is populated, including how its contents are determined); Ex. K71 (AMZ_KOVE_000400711) at –400711 (██████ are organized in a

██████████████████ which enables them to ████████████████████████████████████ ██████████████ ); Ex. K71 (AMZ_KOVE_000400711) at –400715 ████████████ ████████████████████████████████████████████████████████████████████ ██████████████ ; Ex. K65 (AMZ_KOVE_000069828) at –69830-31 (describing ██████████ ████████████████████████████████████████████████████ ); Ex. K76 (AMZ_KOVE_000439434) (similar); Ex. K74 (AMZ_KOVE_000435516) at –435516 (similar); Ex. K75 (AMZ_KOVE_000437135) at –437136 (similar); Ex. K63 (AMZ_KOVE_000062763) (diagram of ██████████████████████████████ ; Ex. K30 (Markle Dep. Tr.) at 167:16–171:22, 208:19–210:2, 271:11-16; Ex. K110 (AMZ_KOVE_000075807) at 19:09–21:02; Ex. K50 (Goodrich 9/9/2023 Tr.) at 311:21-312:2.

74. **STATEMENT:** Uncertainty is inherent to a cache. From April 2016-September 2020, the ████████████████████████████████████████[184] Despite his certainty and specificity requirement in his infringement analysis, Dr. Goodrich acknowledged the uncertainty that exists about what items are requested on a database:

> The challenge from a design perspective is that ██████████████████████████ ██████████████████████████████ and so AWS would not be able to determine—in advance—████████████████████████████████████[185]

**CITATION [184]:** Ex. 63, AMZ_KOVE_000401272.

**CITATION [185]:** Ex. 64, 07/06/2023 Goodrich Corrected Report ¶ 136.

**RESPONSE:** **Admitted in part, disputed in part; objection**. Kove objects to this statement as non-compliant with Dkt. 676 and L.R. 56.1(d) which limit the number of paragraphs allowed in the moving party's statement of facts and require that each paragraph be "concise." This paragraph contains statements relating to three distinct subjects: the purported uncertainty ████████████████ ████ the ██████████████ from April 2016-September 2020, and Dr. Goodrich's statements as

to the design challenges of partition management.

**Statement Regarding "Inherent" Cache Uncertainty:** Disputed; objection. Kove objects to this statement as not material. Kove objects to this statement as vague and ambiguous, as it is not clear what it means for ▓▓▓▓▓▓▓▓▓▓▓▓ Kove disputes the statement, as not supported by evidence, as AWS does not cite any evidence in support of the statement. AWS's citation to ▓▓▓▓▓▓▓▓▓▓▓ do not support the proposition, since ▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓ as explained in the following paragraph.

Further disputed, since evidence shows that caches can provide predictable performance. *See* Ex. K82 (AMZ_KOVE_000463923) (showing a ▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓; Ex. K83 (AMZ_KOVE_000463924) (showing ▓▓▓▓▓▓▓▓▓

▓▓▓▓; Ex. K52 (Goodrich Report) ¶ 112 ▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓").

**Statement Regarding the** ▓▓▓▓▓▓▓▓▓▓ **from April 2016-September 2020:** Admitted in part, disputed in part; objection. Kove objects to this statement as not material. Admitted that from April 2016-September 2020, the ▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓ Disputed that the data reflects normal or general ▓▓▓ performance, as it includes significant outliers. A view of the data over time shows that ▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓ *See* Ex. K72 (AMZ_KOVE_000401272); ▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓

**Statement Regarding Dr. Goodrich's Report:** Admitted in part, disputed in part; objection. Kove objects to this statement as not material. Kove objects to this statement as improper

characterization of Dr. Goodrich's opinion, rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of Dr. Goodrich's report as incorrect, incomplete, not supported by and contrary to the cited evidence. Disputed that Dr. Goodrich has a "certainty and specificity requirement" in his infringement analysis or anywhere else. The statement is not supported by any cited evidence, as AWS does not cite any evidence to support the proposition. Kove disputes the suggestion that the quoted language supports AWS's previous statements regarding ███████████████████████████ Dr. Goodrich did not ████████████████ ████████████████████████ To the contrary, he acknowledged that ████████ ████████████████████████ *See* Ex. K52 (Goodrich Report MAIN BODY) ¶¶ 128-134 ("AWS has data that shows ██████████████████████████ ... The data AWS collected shows that a ████████████████████████████ ██████"); Ex. K86 (AMZ_KOVE_000506367) at 3.

75.     **STATEMENT:** Per his testimony, Dr. Goodrich never considered the process for determining ████████████████████████████████████ ████████████████████████████ He testified:

Amazon Atty: You didn't consider what ████████████████████ used in forming your opinions on infringement, right?

Goodrich: It wasn't - - it wasn't relevant. It wasn't needed for my analysis.

…

Amazon Atty: You didn't consider ████████████████████ used in forming your opinions on infringement, right?

Goodrich: That analysis was not necessary for my opinions.

Amazon Atty: So the answer is no?

Goodrich: The answer is no, it was not necessary for my opinions, as I've stated now three times.[186]

**CITATION [186]:** Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 311:13-313:16.

**RESPONSE: Disputed; objection**. Kove objects to this statement as not material. Kove objects to this statement as improper characterization of Dr. Goodrich's testimony. Kove disputes the characterization as incorrect, incomplete, not supported by and contrary to the cited evidence. In fact, the ellipsis in AWS's quoted language omits language that refutes AWS's characterization of Dr. Goodrich. Dr. Goodrich did not testify that he "never considered the process for determining which ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" To the contrary, Dr. Goodrich confirmed that he *did* consider the process for determining which ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. K50 (Goodrich 9/9/2023 Tr.) at 311:13-312:4. Kove further disputes AWS's characterization of Dr. Goodrich's opinion and testimony based on Dr. Goodrich's report, which confirms that Dr. Goodrich expressly considered the process used to determine which ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓ Ex. K53 (Goodrich Report, Ex. D) ¶¶ 27-29 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

    76. **STATEMENT:** Kove's expert Dr. Goodrich identifies ▓▓▓▓▓▓ as the "location" in the required "identifier/location mappings."[187] As Dr. Goodrich testified, both identifiers and location information are used in the data retrieval process.

    Amazon Atty: Metadata would include location information, right?

    Goodrich: In this case, yes.

    Amazon Atty: And location information is used to retrieve the object for the user, right?

    Goodrich: That's right.

    Amazon Atty: And metadata would also include identifiers, right?

    Goodrich: Yes.

    Amazon Atty: And identifiers are also used to retrieve the object for the user, right?

Goodrich: That's right.

…

Amazon Atty: And okay -- but the identifier isn't the same thing as the location information, right?

Goodrich: No, not in this case, no, not what I've identified as the identifier in S3 for the sake of the claims.[188]

**CITATION [187]:** Ex. 64, 07/06/2023 Goodrich Corrected Report, ¶ 87 (███████ information

comprising a ███████ satisfies the parties agreed construction of 'location…'").

**CITATION [188]:** Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 299:12-300:10.

**RESPONSE: Admitted**.

77.    **STATEMENT:** The source code for ███████ contents shows that they don't provide

████████████████████████████████████████████

████████[189] An excerpt of this source code below ███████████████



[190]

**CITATION [189]:** Ex. 8, 08/18/2023 Grama Report, ¶ 264. (citing to Ex. 13, 06/04/2021 A.

Vermeulen Dep. Tr., 166:6-10 ████████████████████████████

████████████████████████████

**CITATION [190]:** Ex. 65, AWS_SRC_CODE_000001058 at AWS_SRC_CODE_000001059;

Ex. 8, 08/18/2023 Grama Report, ¶ 264.

**RESPONSE: Disputed, objection**.  Kove objects to this statement as not material.  Kove objects

to this statement as contrary to the Court's construction of "location" and "location information,"

which expressly acknowledges that location information *need not* include a specific address.

Dkt. 484 at 15-17 (rejecting construction that would limit "location information" to information

that provides an "exact location of data," such as an IP address or port number). The scope and interpretation of the Kove Patents has been determined by the Court through the claim construction process, as set forth in Dkt. 484.

Kove disputes the statement that "IP address, port number, and instance" are "the minimum items generally associated with locating an object" as not supported by the cited evidence and contrary to the Court's claim construction.

Kove disputes that ████████████████████ Kove identifies the following evidence, which shows that ████████████████ and that AWS ██████ for exactly that purpose. As explained by Dr. Goodrich:



Ex. K53 (Goodrich Report, Ex. D) ¶ 24. This is consistent with other record evidence, which confirms that ████████████████████ Ex. K53 (Goodrich Report, Ex. D) ¶¶ 23-24, 33, 40, 43, 89-93; Ex. K118 (AMZ_KOVE_000443110) at –443129 ("The ████ ████████████ in the S3 system"); Ex. K87 (AMZ_KOVE_000507062) at –507062 ████████████████████████████████████ ██ ██ █ ██ ██ █ █ ██ ███ ██ ██ ██ ██ Ex. K81 (AMZ_KOVE_000463426)████████████████ ████████████████; Ex. K74 (AMZ_KOVE_000435516) at –435516 ("The S3 ████████████████████████████ ████████████████████ Ex. K77 (AMZ_KOVE_000439511) at –439511 ("In S3, the ████████████████



); Ex. K71 (AMZ_KOVE_000400711) at –400711 ("The

); Ex. K110 (AMZ_KOVE_000075807) at 6:57-7:08 (also produced at AMZ_KOVE_000064821); Ex. K108 (AMZ_KOVE_000012917) at 9:00-10:26 (explaining that

).

The fact that further demonstrates that one does not need an "IP address, port number, and instance" to locate an object.

78.  **STATEMENT:** The

S3 Senior Principal Software Engineer Seth Markle testified:

[191] The

[192] Mr. Markle testified:

[193]

**CITATION [191]:** Ex. 66, 04/19/2023 S. Markle Dep. Tr., 86:12-17 (stating that

;

**CITATION [192]:** Ex. 67, AWS_SRC_CODE_000001109.

**CITATION [193]:** Ex. 66, 04/19/2023 S. Markle Dep. Tr., 86:18-20; Ex. 8, 08/18/2023 Grama Report ¶¶ 266.

**RESPONSE**: **Disputed; objection**.  Kove objects to this statement as non-compliant with Dkt. 676 and L.R. 56.1(d) which limit the number of paragraphs allowed in the moving party's

statement of facts and require that each paragraph be "concise." This paragraph contains statements relating to two distinct subjects: whether █████████████████████████

█████████████

  ***Statement Regarding Whether the*** ████████████████: Disputed. Record evidence shows that the ████████████████████████████ As explained by Dr. Goodrich:

> To determine where a customer's object is stored, the S3 ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Ex. K53 (Goodrich Report, Ex. D) ¶ 24. This is consistent with other record evidence, which confirms that the ████████████████████ Ex. K53 (Goodrich Report, Ex. D) ¶¶ 23-24, 33, 40, 43, 89-93; Ex. K118 (AMZ_KOVE_000443110) at –443129 ("The ████████████ ████████████████████; Ex. K87 (AMZ_KOVE_000507062) at –507062 ████████████ ████████████████████████████████████████████████████ ████████████████████████████████ Ex. K81 (AMZ_KOVE_000463426) ████ ████████████████████████████████████████ ); Ex. K74 (AMZ_KOVE_000435516) at –435516 ("The S3 ████████████ ████████████████████████████████████████ ████████████████████; Ex. K77 (AMZ_KOVE_000439511) at –439511 ("In S3, the ████████ component is primarily responsible for ████████████████████ ████████████████████ Hence the data stored in the ████████ is called an ████████ ); Ex. K71 (AMZ_KOVE_000400711) at –400711 ████████████████ ████████████████████████████████████████ Ex. K110 (AMZ_KOVE_000075807) at 6:57-7:08 ████████████████████

(also produced at AMZ_KOVE_000064821, Ex. K161); Ex. K108 (AMZ_KOVE_000012917) at

9:00-10:26 (explaining that ███████████████████████████████████████

███████████████).

 ***Statement Regarding Whether the*** ███████████████ Disputed; Objection.  Kove

objects to this statement as not material.  Kove disputes the statement as not supported by the cited

evidence.  The cited evidence (from the Markel deposition) states that new objects are assigned a

███████████ it does not state that ████████████████████████ Kove further

disputes this statement based on other record evidence showing that ███████████.  Ex.

K152 (AMZ_KOVE_000532731) █████████████████████████████████

███████); Ex. K81 (AMZ_KOVE_000463426) █████████████████████

    79.    **STATEMENT:**  In the reexamination proceedings, Kove distinguished the

invention's "location" as dynamic and different from the "static" prior art "locations."  Kove

explained the need to support "dynamic" associations between location and identifier because the

data moves on distributed databases. Kove stated:

> The Inventors understood that maintaining a static relationship of data and its location in
> traditional distributed data collection environments (i.e., tree structures) would become
> untenable, given the growing unreliability of locating and retrieving dispersed data,
> particularly where the data in the components of the network could change location,
> unbeknownst to one another. The Inventors invented a protocol that dynamically creates
> relationships between data and its locations using an algorithm or function.[194]

**CITATION [194]:** Ex. 34, '034 Reexam. Response at 9.

**RESPONSE**: **Admitted in part; disputed in part; objection**.  Kove objects to the statement as

not material.

    Kove objects to the statement as improperly characterizing Kove's statements in the '034

reexamination.  Kove disputes AWS's characterization of Kove's statements as inaccurate,

incomplete, not supported by, and contrary to the cited evidence.  The quoted language describes

the technical landscape at the time of the priority dates of the '170, '640, and '978 patents and is in no way describing specific claim terms. Additionally, the above statement describes a "dynamic" *relationship* of the data and its locations and does not describe "static" or "dynamic" *locations*. Ex. K157 ('034 Reexam, Response to NFOA) at 9.

80. **STATEMENT:** S3 requires multiple additional steps to locate and retrieve an object after the ███████████████████. Specifically, the ██████ sends the information obtained from ██████████████████[195]

**CITATION [195]:** Ex. 8, 08/18/2023 Grama Report, ¶ 130.

**RESPONSE: Disputed; objection**. Kove objects to this statement as not material. Kove disputes this statement as not supported by the cited evidence, which refers to DynamoDB, and not S3, and so does not provide any support for the statement. Ex. K59 (Grama Report) ¶ 130. The cited evidence states:

> In DynamoDB, the end user sends a request to a Virtual IP setup ("VIP") which then



*Id.* Kove further disputes the statement as contrary to record evidence, which shows that the ████

████████████████████████ Ex. K53 (Goodrich Report, Ex. D) ¶¶ 23-24,

33, 40, 43, 89-93; Ex. K87 (AMZ_KOVE_000507062) at −507062 ██████████████

████████████████████████████████████

████████████████████ ); Ex. K81 (AMZ_KOVE_000463426) ████████████

█████████████████████████████████████████████████████████████; Ex. K74

(AMZ_KOVE_000435516) at –435516 ("The S3 █████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████); Ex. K110 (AMZ_KOVE_000075807) at 6:57-7:08 (████████████

████ ████ ██ █████ (also produced at AMZ_KOVE_000064821); Ex. K108

(AMZ_KOVE_000012917) at 9:00-10:26 (explaining that █████████████████████

███████████████████████████████████.

81. **STATEMENT:** And using the ██████████████████████████████████

████████████████████[196] Only then ██████████████████████████████████

█████████[197]

**CITATION [196]:** Ex. 8, 08/18/2023 Grama Report, ¶ 130.

**CITATION [197]:** Ex. 8, 08/18/2023 Grama Report, ¶ 130; Kove's expert Dr. Goodrich states

that "the data for each object ██████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████

**RESPONSE: Disputed; objection**. Kove objects to this statement as not material. Kove objects

to the statement's citation to Dr. Goodrich's statement, as the citation does not identify the

document in which that language appears, nor does it cite any exhibits from AWS's submission,

as required by Local Rule 56.1(d)(2). Kove objects to AWS's use the use of the word "location,"

which is a claim term that has been construed by the Court. *See* Dkt. 484 at 11.

Kove disputes this statement as not supported by the cited evidence. The cited paragraph

from Grama's Report refers to DynamoDB, and not S3, and so does not provide any support for

the statement. Ex. K59 (Grama Report) ¶ 130.

82.   **STATEMENT:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In essence, it knows ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ [198]

**CITATION [198]:** Ex. 8, 08/18/2023 Grama Report, ¶ 265; Ex. 16, AMZ_KOVE_000012900 at AMZ_KOVE_000012901.

**RESPONSE:** **Admitted in part and disputed in part; objection**. Kove objects to this statement as not material.  Disputed to the extent the statement implies that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ it is not.  *See* Kove response to AWS SMF ¶¶ 77-78 (explaining that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Otherwise admitted.

83.   **STATEMENT:** Dr. Goodrich didn't consider ▮▮▮▮ in his analysis and didn't offer any opinion that it contains the claimed location information. He testified:

> Amazon Atty: Did you conclude that the ▮▮▮▮▮▮▮▮ contains location information?
>
> Goodrich: I believe it does, yes.
>
> Amazon Atty: Did you conclude that the ▮▮▮▮▮ contains location information?
>
> Goodrich: Yes.
>
> Amazon Atty: Did you conclude that the ▮▮▮▮▮▮ contain location information?
>
> Goodrich: Yes.
>
> Amazon Atty: Did you conclude that the ▮▮▮▮▮▮▮▮ contain location information?
>
> Goodrich: Yes.
>
> Amazon Atty: And did you conclude that ▮▮▮▮ contains location information?
>
> Goodrich: I don't recall having an opinion about ▮▮▮▮ Is there a place in my report you believe I addressed that?

Amazon Atty: No. Did you conclude that the ▮▮▮ contain location information?

Goodrich: I don't recall having that opinion. Is there somewhere in my report where you believe I said that?

Amazon Atty: No. Did you conclude that the ▮▮▮ contains location information?

Goodrich: I didn't have to render an opinion about that with respect to my analysis.[199]

**CITATION [199]:** Ex. 14, 09/09/2023 M. Goodrich Dep. Tr. 307:4-308:11.

**<u>RESPONSE</u>: Disputed; objection**. Kove objects to this statement as not material. Disputed on the ground that the cited evidence does not support the proposition that Dr. Goodrich "didn't consider ▮▮▮ in his analysis." Instead, the cited evidence shows that, when not permitted to review his report, Dr. Goodrich could not recall whether he offered a *conclusion* as to whether ▮▮▮ contains "location information." Kove further disputes this statement in view of the contents of Dr. Goodrich's report, which demonstrate that he *did* consider ▮▮▮ in his analysis. Ex. K52 (Goodrich Report) ¶¶ 33, 40, 44, 46 (discussing ▮▮▮. Kove objects to AWS's attempt to limit the scope of Dr. Goodrich's opinions based on deposition questioning where AWS sought to require Dr. Goodrich to answer hyper-specific questions about his 700+ page expert report from memory.

84.     **STATEMENT:** DDB's ▮▮▮▮▮▮▮▮▮▮▮ As Kove's technical expert, Dr. Michael Goodrich, explains, a ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [200] In his infringement report, Dr. Goodrich states that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [201]

███████████████████████████████████████████████████████████████

[202]

For instance, a request is made (e.g., a GetItem), ████████████████████████████
███████████████████████████████████████████████

[203]

**CITATION [200]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 18; Ex. 68, AMZ_KOVE_000065279.

**CITATION [201]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 32 (citing to all of Appendix B, Dr. Goodrich's 204-page appendix listing alleged source code evidence.). Amazon hasn't attached that appendix. Instead, Amazon has included and referenced specific portions of source code.

**CITATION [202]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 26; Ex. 21, 01/29/20 J. Sorenson Dep. Tr., 120:8–14; Ex. 69, AMZ_KOVE_000064878 (describing ███████████;
Ex. 70, AMZ_KOVE_000483279 at AMZ_KOVE_000483279 ("The ████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████).

**CITATION [203]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 27; Ex. 71, AMZ_KOVE_000074059 at AMZ_KOVE_000074060 ████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████); Ex. 72, AMZ_KOVE_000075263 at AMZ_KOVE_000075264 (similar).

**RESPONSE: Admitted in part, disputed in part; objection**.  Admitted, except as to the statement that "in his infringement report, Dr. Goodrich states that the ████████████████████

█████████████████████, not the individual data items in the ██████████." Kove objects to that statement as improperly characterizing Dr. Goodrich's opinion, rather than stating a fact appropriate for summary judgment. Kove disputes that characterization as incomplete, incorrect, not supported by and contrary to the cited portions of Dr. Goodrich's report, or any other portion of Dr. Goodrich's report. Dr. Goodrich does not limit his description of ████████████████

████████████ and does not state or suggest that the ████████████████████████

████████████████ To the contrary, Dr. Goodrich makes clear that ██████████████

████████████████████ Ex. K54 (Goodrich Report, Ex. E) ¶¶ 32 █████████████

████████████████████████████████████████████, 96 ████████

████████████████████████ ████████████████ ███████████

████████████████████████████████ (emphasis added)).

Dr. Goodrich further opines that, because the ████████████████████████

████████████████████████████████████████████████████████

████████████████████ Ex. K52 (Goodrich Report (DDB)) ¶¶ 32-34, 45, 48, 82

████████████████████████████████████████████████████████

████████████████████████

85.   **STATEMENT:** In DDB, the ████████████████████████████

████████████████████████████[204] The DDB source code identifies ████

████████████████████████████████████████████████████████

████████████████████████████████An annotated excerpt of this source code is below.[205]



None of those entries: has any information about ███████████████████████

███ Dr. Goodrich testified:

> Amazon Atty: And the ███████████████████████████
> right?
>
> Goodrich: Yes.[206]
>
> Amazon Atty: Does the ████████████████████████
>
> Goodrich: It associates ██████████████████████████
> ███
>
> Amazon Atty: Okay. ████████████████████████ right?
>
> Goodrich: That's right.[207]

**CITATION [204]:** Ex. 22, AMZ_KOVE_000007001 at AMZ_KOVE_000007013–

AMZ_KOVE_000007014.

**CITATION [205]:** Ex. 8, 08/18/2023 Grama Report, ¶ 232, Ex. 51,

AWS_SRC_CODE_000000157.

**CITATION [206]:** Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 326:5-8.

**CITATION [207]:** Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 326:20-327:5.

**RESPONSE: Admitted in part, disputed in part; objection**.  Kove objects to this statement as non-compliant with Dkt. 676 and L.R. 56.1(d) which limit the number of paragraphs allowed in the moving party's statement of facts and require that each paragraph be "concise."  This paragraph contains statements relating to four distinct subjects.

  ***Statement Regarding What*** ███████████ ***Store:*** Admitted that "in DDB, the ███████
████████████████████████

  ***Statement Regarding the Relationship Between*** ██████████████████████
Disputed that the ████████████████████████████  This statement is not supported by the cited evidence, which does not discuss or reference ████████████
████████████████████  *See* Ex. K106 (AMZ_KOVE_000007001) at –7014.  In fact, the term ██████████ does not appear anywhere in the cited document.  Additional record evidence shows that ████████████████████████████████████████
████████████████████████  *See id.* at –7016.

████████████████████████████████████████

████████████████████████████████████  *See* Ex. K54 (Goodrich Report, Ex. E) ¶¶ 9-16 ████████████████
████████████████ 82 ████████████████████████

████████████████████████████████████████

████████████████████████ Ex. K106 (AMZ_KOVE_000007001) at –7031

████████████████████████████████████████

████████████████████████████████████████

  ***Statement that "the DDB source code identifies what information a*** ████████████
***contains. This includes the*** ████████████████████████████

█████████████████████████ Admitted in part, disputed in part. Disputed that there is such

a thing as a ████████████████ DynamoDB's █████████████████████████████

██████████████████████████ as shown below:



Ex. K153 (AMZ_KOVE_000464065) at –4066; Ex. K54 (Goodrich Report, Ex. E) ¶ 32

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████ Ex. K54

(Goodrich Report, Ex. E) ¶ 82 ("████████████████████████████████

████████████████████████████████ Ex. K154

(AMZ_KOVE_000065279) at –65281 ████████████████ with information in them

████████████████████████████████████████████

Ex. K122 (AMZ_KOVE_000507797) at 16:48-18:09 ("[T]he █████████████████

████████████████████████████████████████████

██████████████████████ Ex. K111 (AMZ_KOVE_000064843) at –64843 ("The system

metadata is organized into several ████████████████ –64845-64855 (providing a detailed

description of the different ████████████████████████████ Further

disputed in that the cited evidence does not support the proposition. The cited source code and

portion suggests that the named categories of information are stored in ████████████ but it is not and does not purport to be ████████████████████████ let alone in ████████████ as a whole.

Statement that "None of those entries: has any information about where any data item is stored or the 'primary key.'": Disputed. This statement is not supported by the cited evidence. Dr. Goodrich was not asked about "those entries" (i.e., the entries called out in the excerpt of source code), and did not testify that ████████████ lack information about primary keys or where items are stored.

Kove further disputes this statement in view of record evidence showing that ████████ ████████████████████████████████ including evidence from AWS's technical expert. Ex. K54 (Goodrich Report, Ex. E) ¶ 82 ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ Ex. K54 (Goodrich Report, Ex. E) ¶¶ 92-93 ████████████

████████████████████████████████████████████

████████████████████████████████████ Ex. K59 (Grama Report)

¶ 130 ████████████████████████████████████████

████████████████████████████ Ex. K59 (Grama Report) ¶ 346

████████████████████████████████████ Ex. K106

(AMZ_KOVE_000007001) at –7031 ████████████████████████

████████████████████████████████████████████

████████████████████████ Ex. K122 (AMZ_KOVE_000507797) at 16:48-

18:09 ("The way that the ▓▓▓▓▓▓▓▓ figures out where [the data] is, is it goes to … a ▓▓▓▓▓▓

▓▓▓▓ … So the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ … [W]hat the ▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. K154

(AMZ_KOVE_000065279) at –65281 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ EX. K155 (AMZ_KOVE_000074060) ▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ It uses

the metadata to determine which ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓

86.     **STATEMENT:** DDB provides user flexibility by allowing ▓▓▓▓▓▓▓

▓▓▓▓▓▓[208] One option for the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓[209] The other option is to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓[210] The Amazon DDB documentation explains:

A ▓▓▓▓▓ primary key consists of a ▓▓▓▓▓▓▓ and a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. For example, you can create a ▓▓▓▓▓
primary key using "▓▓▓▓▓▓▓▓▓▓▓▓▓▓, or create a ▓▓▓▓▓▓▓▓▓▓▓ by
▓▓▓▓[211]

DynamoDB, like MongoDB, is a loosely structured NoSQL data store that allows you to save different sets of attributes on a per-record basis. You only need to predefine the primary key strategy you're going to use:

• ▓▓▓▓▓▓▓▓—The ▓▓▓▓▓▓▓▓▓ is a single attribute that DynamoDB ▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This could be a player name, game ID, UUID, or similar ▓▓▓▓▓▓ Amazon DynamoDB ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

• ▓▓▓▓▓▓▓▓▓▓▓▓—Referred to as a ▓▓▓▓▓▓▓▓▓▓▓▓, this type of
▓▓▓▓▓ is composed of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. DynamoDB
uses the ▓▓▓▓▓▓ value as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓ For
example, you could store game history as a duplet of [user id, last login]. Amazon DynamoDB builds an ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Only the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓[212]

Dr. Goodrich concludes:

> There are two kinds of primary keys in DynamoDB. The first is called a ████████ key" or ████████████████████████████████████████████████████████████ in which the item will be stored. Items in a table are ███████████████████████████. The second type of primary key is called a ██████████████████████" which is composed of a ████████████████████████" In a table with ████████ primary key, ███████████████████[213]

**CITATION [208]:** Ex. 73, AMZ_KOVE_000221659 at AMZ KOVE 000221693; Ex. 23, AMZ_KOVE_000009918 at AMZ_KOVE_000009919.

**CITATION [209]:** Ex. 73, AMZ_KOVE_000221659 at AMZ KOVE 000221693; Ex. 23, AMZ_KOVE_000009918 at AMZ_KOVE_000009919.

**CITATION [210]:** Ex. 73, AMZ_KOVE_000221659 at AMZ KOVE 000221693; Ex. 23, AMZ_KOVE_000009918 at AMZ_KOVE_000009919.

**CITATION [211]:** Ex. 23, AMZ_KOVE_000009918 at AMZ_KOVE_000009919.

**CITATION [212]:** Ex. 73, AMZ_KOVE_000221659 at AMZ KOVE 000221693-94.

**CITATION [213]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 10.

**RESPONSE: Admitted; objection**. Kove objects to this statement as not material. Admitted.

87. **STATEMENT:** The role of the ████████████ doesn't change based on the type of primary ██. The descriptions of the ████████'s role for both types of primary key are identical. Under the "████████" description, Amazon documentation states:

> DynamoDB uses the ████████████████████████████████████████████████████████████[214].

Under the "████████ description, Amazon documentation states the exact same description:

> DynamoDB uses the ████████████████████████████████████████████████████████████[215].

**CITATION [214]:** Ex. 22, AMZ_KOVE_000007001 at AMZ_KOVE_000007016.

**CITATION [215]:** Ex. 22, AMZ_KOVE_000007001 at AMZ_KOVE_000007016.

**RESPONSE: Disputed; objection**. Kove objects to this statement as not material. Kove objects to the statement as vague and ambiguous with respect to the term "role of the ███████████" and so disputes this fact on that ground. Ex. K54 (Goodrich Report, Ex. E) ¶ 82 ("The key that indexes these items is known as a 'primary key,' which is a '██████████' or a ███████████ ██████████,' whose value is ██████████ ████████████████████████████████████████████.

88. **STATEMENT:** ████████ can store multiple items.

In a table with ████████████████, "[a]ll items with the same ████████████ ████████████████████." When a ████████████████ is used, items ████████████████████████████████████████ etc.[216]



A slide from Amazon's training and certification program summarizes the roles of the primary key ████████████████████ and the ████████████████████████.[217]



The ████████ primary key" is only possible when there is ████████████████████████.[218]

**CITATION [216]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 10 (quoting Ex. 22, AMZ_KOVE_000007001 at AMZ_KOVE_000007016).

**CITATION [217]:** Ex. 74, AMZ_KOVE_000101409 at AMZ_KOVE_000101417.

**CITATION [218]:** Ex. 22, AMZ_KOVE_000007001 at AMZ_KOVE_000007016 ( ██████████
████████████████████████████████████████████████████████ )

**RESPONSE: Admitted; objections.**   Kove objects to this statement as non-compliant with Dkt. 676 and L.R. 56.1(d) which limit the number of paragraphs allowed in the moving party's statement of facts and require that each paragraph be "concise."   This paragraph contains statements relating to multiple subjects.  Kove objects to this statement as not material.  Admitted.

89.    **STATEMENT:** Dr. Goodrich equates the ███████████ with the "primary key" when opining that the associations █████████████████████████████████████ ████████████████████████████ satisfy the required item associations on the claimed location servers. In his report, Dr. Goodrich states:

> An item's ████████████████ is an "identifier" under the parties' agreed construction, i.e., "a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."[219]

> As explained above, ████████████████████████████████████████████
> ████████████████████████ [220]

> The primary key ██████████ █ which corresponds to an "entity." As explained above, ██████████ █ ████████████████████████████████ i.e., an "entity." The █████████████████████████████████████████████████████████
> ████████████████████████████████████████████████ [221]

> Each of the ██████████████████████████████████████████████████████
> ████████████████████████████████████████████████████████████
> ████████████████████████████████████████ [222]

[black redaction]

s explained above).[223]

Dr. Goodrich testified that [black redaction] is "why I had this additional parenthetical" to the key that does.

Amazon Atty: [black redaction]

Goodrich: That's why I had this additional parenthetical that [black redaction][224]

**CITATION [219]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 83.

**CITATION [220]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 97.

**CITATION [221]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 97.

**CITATION [222]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 105.

**CITATION [223]:** Ex. 20, 07/06/2023 Goodrich Corrected Report, Ex. E, ¶ 110.

**CITATION [224]:** Ex. 14, 09/09/2023 M. Goodrich Dep. Tr. 334:19-335:2, 276:20-277:2

(acknowledging association between [black redaction].

**RESPONSE: Disputed; objection**. Kove objects to this statement as not material. Kove objects to this statement as improper characterization of Dr. Goodrich's opinion, rather than a fact appropriate for summary judgment. Kove disputes AWS's characterization of Dr. Goodrich's report as incorrect, incomplete, not supported by and contrary to the cited evidence. The cited evidence does not show that Dr. Goodrich [black redaction] as the quoted discussion is [black redaction] and does not reference or describe [black redaction] [black redaction] Other portions of his report confirm that Dr. Goodrich does [black redaction] In fact, Dr. Goodrich explains that, depending on circumstances, [black redaction]

Ex. K54 (Goodrich Report, Ex. E) ¶¶ 9-10; Ex. K50 (Goodrich 9/9/223 Tr.) at 325:13-16 ("There's a lot of different ███, so we have to be very precise about which ones we're referring to here.").

90. **STATEMENT:** Kove didn't send Amazon a notice letter or otherwise inform Amazon of the Kove patents or any alleged infringement before filing the complaint on December 12, 2018. Kove has produced no such communications, and Dr. Overton testified:

> Amazon Atty: Before Kove filed this complaint on December 12, 2018, did Kove ever send Amazon a letter about the '640, '978, or '170 Patents?
>
> Overton: I don't believe so.
>
> Amazon Atty: And before Kove filed this complaint against Amazon on December 12, 2018, did Kove ever call anyone at Amazon about the '640, '978, or '170 Patents?
>
> Overton: I don't know, but I don't think so.
>
> Amazon Atty: You're the CEO of Kove; right?
>
> Overton: Uh-huh. I did not. I don't know if someone else in the company did.
>
> Amazon Atty: So someone else in the company may have done that and you didn't know about it?
>
> Overton: I think that's unlikely. I can't –you've framed the question in a definitive fashion. I can't speak for every person and every action that they did. I can say that I did not for sure.
>
> Amazon Atty: And you're testifying today on behalf of Kove; right?
>
> Overton: Yes.[225]

**CITATION [225]:** Ex. 75, 05/16/2023 J. Overton Dep. Tr., 116:16-117:15.

**RESPONSE: Admitted**.

91.    **STATEMENT:** Amazon engineers and witnesses testified that they had never heard of Kove (or its predecessors) before the filing of this case. For example, Mr. Vermeulen testified that he had never heard of Kove, the original assignee of the patents (Econnectix), or the two named inventors (Overton and Bailey).

> Kove Atty: Have you ever heard of Kove outside of this litigation?
>
> Vermeulen: Nope. Never heard of – I have never heard of Kove.
>
> Kove Atty: Do you recall ever reading any of Kove's white papers?
>
> Vermeulen: Nope. I do not recall ever reading a white paper. Like I said, I don't recall a company named Kove until this process.
>
> …
>
> Kove Atty: Have you ever heard of a company named Econnectix?
>
> Vermeulen: No.
>
> Kove Atty: Okay. Have you ever heard of anyone named John Overton?
>
> Vermeulen: No, not until this litigation. I saw that he was the CEO of Kove. That's all I know about him.
>
> Kove Atty: Have you ever heard of anyone named Stephen Bailey?
>
> Vermeulen: No.[226]

**CITATION [226]:** Ex. 13, 06/04/2021 A. Vermeulen Dep. Tr., 404:7–405:7.

**RESPONSE: Admitted in part; disputed in part**.  Admitted that the statement accurately quotes Allan Vermeulen.  Otherwise disputed, as AWS has not identified any evidence or support for its statement with respect to any other "Amazon engineers and witnesses."

92.    **STATEMENT:** Kove's own expert, Dr. Goodrich similarly testified that he had never heard of Kove, the Kove Patents, or any of the patents' previous assignees before he was retained.

Amazon Atty: Before 2019 you had never heard of Kove's patents, correct?

Goodrich: That is correct.[227]

Amazon Atty: All right. So you were retained by Kove around February 2019 for work on this case; is that correct?

Goodrich: That is my recollection.

Amazon Atty: Okay. And before you were retained by Kove, you hadn't heard of the '640, '170, or '978 patents, right?

Goodrich: I believe that is correct.

Amazon Atty: Okay. And when was the first time you heard of Kove?

Goodrich: I think it was right around that same time.

Amazon Atty: So the first time you heard of Kove, the plaintiff in this case, was around February 2019 when you were retained?

Goodrich: Yes.

Amazon Atty: Are you familiar with a company called OverX?

Goodrich: No, not before this engagement.

Amazon Atty: Okay. Are you familiar with a company called Econnectix?

Goodrich: Not before this engagement.[228]

Amazon Atty: Before you were retained in February 2019 to work on this case, you haven't heard of OverX or Econnectix; is this right?

Goodrich: That is my recollection, yes.[229]

**CITATION [227]:** Ex. 47, 09/11/2023 M. Goodrich Dep. Tr., 711:9-11.

**CITATION [228]:** Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 13:15-14:14.

**CITATION [229]:** Ex. 14, 09/09/2023 M. Goodrich Dep. Tr., 14:20-15:1.

**RESPONSE: Admitted; objection**.  Kove objects to this statement as not material.  Admitted.

93.     **STATEMENT:** Kove and its predecessor Econnectix stopped trying to sell any products practicing the patents-in suit before September 2006.[230] Dr. Overton testified:

Amazon Atty: So as of September 5, 2006, Econnectix had stopped commercialization

efforts for OXLS, Xpress Association Database, XTN, XRN, XSN, and Xpress Database; right?

Overton: It is my belief, yes.

So Econnectix stopped trying to sell any products that embodied the patents-in-suit by September 5, 2006; right?

Overton: We stopped trying to sell these specified products, yes.

…

Amazon Atty: Was Econnectix trying to sell any other products that embody any of the asserted claims of the patents-in-suit?

Overton: Not that I know of.

Amazon Atty: All right.  So it's fair to say that Econnectix stopped trying to sell any products that practiced the patents-in-suit before the '640 Patent issued in September 2006; right?

Overton: I think it's fair to say that based on what's written here is accurate and I'm confident that that is accurate.[231]

**CITATION [230]:** Ex. 76, Kove First Amended Response to AWS Third Set of Interrogatories

(No. 18) at 3.

**CITATION [231]:** Ex. 75, 05/16/2023 J. Overton Dep. Tr., 147:5-148:5.

**RESPONSE: Admitted**.

94.    **STATEMENT:** In 2017 and 2018, Kove representatives, including Dr. Overton,

met with Amazon on multiple occasions to try to sell XFM, a Kove product unrelated to the Kove

Patents, to Amazon.[232]  As Dr. Overton testified:

Amazon Atty: So that's at least three meetings you had with Amazon personnel during this 2017, 2018 timeframe; right?

Overton:   Yes.  But I don't know that Schick and Majmundar weren't on the same team, for example. It's an issue of specifics.

Amazon Atty: Well, at least three meetings with Amazon personnel during 2017 and 2018, right?

Overton: Yes.[233]

Amazon Atty: So the XFM product does not embody the '978, '170 and '640 Patents; right?

Amazon Atty: I don't know what you're referring to. It is unrelated to the patents-in-suit.

Amazon Atty: This response states that the XFM product does not embody the patents-in-suit, which are the '978, '170, and '640 patents; right?

Overton: That is what it says, yes.

Amazon Atty: Is that accurate?

Overton: Yes.[234]

**CITATION [232]:** Ex. 76, Kove First Amended Response to AWS Third Set of Interrogatories

(No. 18) at 4.

**CITATION [233]:** Ex. 75, 05/16/2023 J. Overton Dep. Tr., 324:17-325:4.

**CITATION [234]:** Ex. 75, 05/16/2023 J. Overton Dep. Tr.,141:15-142:2.

**RESPONSE: Admitted; objection.** Kove objects to this statement as not material. Admitted.

95. **STATEMENT:** In the 2017-18 Kove-Amazon communications, Kove promised

that the XFM product would drive customers to Amazon and improve DDB performance by a

factor of 10x-50x.[235] Dr. Overton testified:

Amazon Atty: [Referencing a Dr. Overton email to Amazon] It says there: "Kove has demonstrated over and over that external memory accelerates databases. Amazon and Kove could offer additional 10x to 50x performance uptick to," and then you list DynamoDB, Aurora, and RDB; right?

Overton: I see that, yes.

Amazon Atty: DynamoDB is one of the products that Kove claims infringes Kove's patents in this case; right?

Overton: Yes.

Amazon Atty: But here in 2017 before you filed this case, you were proposing how a different Kove product, the SDM product, would work with DynamoDB; right?

Overton: Yes, that's what it says.[236]

**CITATION [235]:** Ex. 77, KOV_00164168 at KOV_00164170.

**CITATION [236]:** Ex. 75, 05/16/2023 J. Overton Dep. Tr., 297:11-298:9 (discussing Ex. 77, KOV_00164168).

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Kove disputes this statement as not supported by the cited evidence, which does not support the characterization of a "promise." *See* Ex. K156 (KOV_00164169) at –164169 (describing "5 potential ways that Kove External Memory could add to Amazon's mission"). Kove disputes that the deposition testimony supports the proposition, as Dr. Overton simply confirmed that the document had been read correctly. Otherwise admitted.

96.     **STATEMENT:** In the 2017-18 communications, Kove never mentioned the Kove Patents, or any allegation of infringement, despite having been considering filing patent infringement lawsuits for four years. Dr. Overton testified:

> Amazon Atty: And during the course of Kove's communications with Amazon Web Services in 2017 and 2018, Kove never identified the '978, '170, or '640 Patents to Amazon; right?
>
> Overton: That is correct.
>
> Amazon Atty: And during the course of these communications in 2017 and 2018, Kove never told any Amazon employees that Kove believed Amazon was infringing the '978, '170, or '640 Patents; right?
>
> Overton: I don't know what we told them other than – that's not included in these documents, but I don't know that we never said anything about the patents to some of these folks. I don't know that.
>
> Amazon Atty: You can't tell me one way or the other whether you told any Amazon employees that Kove believed Amazon was infringing those patents during these discussions?
>
> Overton: I know that I didn't. So, therefore, it's every employee of Kove, and I don't know if someone said that. It is not my knowledge that someone did.[237]
>
> Amazon Atty: Kove tried to get Amazon to buy Kove's products in 2017 and 2018; right?
>
> Overton: I believe so, yes.
>
> Amazon Atty: You were personally involved in those efforts; correct?

Overton: Yes.

Amazon Atty: And as part of those discussions, Kove entered an agreement with Amazon to share information in confidence; right?

Overton: Yes.

Amazon Atty: And Amazon ultimately declined to buy any products from Kove; right?

Overton: Yes.[238]

Amazon Atty: And [privilege log] entries showed that you talked to several law firms about potential patent infringement litigation starting in 2014; right?

Overton: Yes.

…

Amazon Atty: So you began talking to law firms about potential patent infringement litigation before you had the meetings and communications with Amazon in 2017 and 2018; right?

Overton: Yes.[239]

**CITATION [237]:** Ex. 75, 05/16/2023 J. Overton Dep. Tr., 324:17-326:4.

**CITATION [238]:** Ex. 75, 05/16/2023 J. Overton Dep. Tr., 116:16-117:15.

**CITATION [239]:** Ex. 75, 05/16/2023 J. Overton Dep. Tr., 327:10-330:3.

**<u>RESPONSE</u>: Admitted in part, disputed in part**. Kove disputes the quoted language as not supported by the cited evidence, as the cited deposition testimony does not appear in the cited transcript portions for footnotes 237 and 238. Kove disputes the characterization of the cited deposition testimony as not supported by the evidence. The quoted language does not support the proposition that "Kove never mentioned the Kove Patents, or any allegations of infringement"; Dr. Overton stated that *he* did not mention potential infringement, but that he did not know whether or not another Kove employee mentioned potential infringement.

The quoted language also does not support the statement that Kove "ha[d] been considering filing patent infringement lawsuits for four years," as discussing potential litigation does not

amount to "considering filing" litigation. The quoted language also does not support the use of the word "despite," as the quoted language does not suggest there is or should be a connection between Kove's efforts to market to Amazon and Kove's privileged discussions with its attorneys regarding potential litigation. Admitted that the statement accurately quotes the cited portion of Dr. Overton's deposition transcript with respect to the language cited by footnote 239.

97.     **STATEMENT:** Amazon is one of the world's largest patent holders. As Amazon Vice President and Chief Intellectual Property Counsel Scott Hayden testified:

> Hayden: Amazon Technologies, Inc., owns approximately 16,000 U.S. patents and 4- to 5,000 non-U.S. patents [and an] additional ███████ U.S. pending applications.
>
> Kove Atty: You said ███████ pending applications?
>
> Hayden: Yes.[240]

And Dr. Sivasubramanian testified that he was the named inventor on more than 150 Amazon patents, including U.S. Pat. No. 8,239,571, ███████████ [241]

**CITATION [240]:** Ex. 78, 04/24/2023 S. Hayden Dep. Tr., 362:9-363:1.

**CITATION [241]:** Ex. 50, 05/10/2023 S. Sivasubramanian Dep. Tr., 58:6–21.

<u>**RESPONSE**</u>: **Admitted in part, disputed in part; objection**. Kove objects to this statement as non-compliant with Dkt. 676 and L.R. 56.1(d) which limit the number of paragraphs allowed in the moving party's statement of facts and require that each paragraph be "concise." This paragraph contains statements relating to three distinct subjects: Amazon's relative size, the number of Amazon patent applications, and Dr. Sivasubramanian's inventions.

*Statement Regarding Amazon's size:* Kove objects to this statement as not material. Kove objects to the phrase "one of the world's largest patent holders" as vague and ambiguous. As the phrase has no clear meaning, Kove cannot admit that statement, and so disputes it as unsupported

by the cited evidence.

**Statement Regarding Mr. Hayden's Testimony**: Admitted in part and disputed in part; objection. Kove objects to this statement as not material. Disputed to the extent the quoted language omits portions of the transcript without noting the omission. Otherwise admitted.

**Statement Regarding Dr. Sivasubramanian's Testimony:** Disputed. Kove disputes AWS's characterization of the cited Sivasubramanian testimony as not supported by the cited evidence. In the cited evidence, Dr. Sivasubramanian testified that he did not know how many patents he had. Dr. Sivasubramanian did not provide testimony (and was not asked to provide testimony) on whether he was the named inventor on any of the patents; he did not mention or refer to the '571 patent. Ex. K34 (Sivasubramanian Day 1 Tr.) at 58:13-17.

98.     **STATEMENT:** In Kove's response to Amazon Interrogatory No. 9, Kove states that Amazon's willfulness is "evidenced by the fact that [Amazon] patents and patent applications … have cited to the Patents-In-Suit."[242] Kove then lists some 400 patents including Amazon's Patent Nos. 8,239,571 and 8,234,403, which both name Dr. Sivasubramanian as an inventor.[243] During the prosecution of the first example, the '571 patent, the Examiner cited Kove's '978 patent in a Non-Final Office Action, and Amazon's outside prosecution counsel responded.[244] The Examiner then allowed the '571 patent.[245]

**CITATION [242]:** Ex. 80, Kove First Amended Response to AWS Third Set of Interrogatories (No. 9).

**CITATION [243]:** Ex. 80, Kove First Amended Response to AWS Third Set of Interrogatories (No. 9).

**CITATION [244]:** Ex. 81 at 5.

**CITATION [245]:** Ex. 81 at 5.

**RESPONSE: Admitted in part, disputed in part; objection**.  Kove objects to this statement as not material.  Admitted that AWS accurately quoted portions of Kove's response to AWS Interrogatory No. 9.  Disputed as to the characterization of "Kove then lists some 400 patents"; Kove's interrogatory response identified 407 Amazon patent applications that cited the Kove Patents.  Kove First Amended Response to AWS Third Set of Interrogatories (No. 9) at 30-53.  Admitted that Dr. Sivasubramanian is a named inventor on the '571 and '403 patents.  [U.S. Patent Nos. 8,239,571 and 8,234,403].  Admitted that during the prosecution of the '571 patent, the Examiner rejected AWS's claims as being anticipated by Kove's '978 patent in a Non-final Office Action, and Amazon's outside prosecution counsel responded.

99.    **STATEMENT:** During the prosecution of Amazon's U.S. Patent No. 9,590,946, Kove's '978 patent was cited in a 43-page Information Disclosure Statement along with 1,108 other references, mostly U.S. patents. As shown below, the '978 Patent is 724th, on page 26.[246]

**CITATION [246]:** Ex. 79, '946 Patent IDS.

| (Multiple sheets used when necessary) | | | Examiner | | Not assigned | |
|---|---|---|---|---|---|---|
| SHEET 26 OF 43 | | | Attorney Docket No. | | SEAZN.294C2 | |
| | | | | | | |
| | | | **U.S. PATENT DOCUMENTS** | | | |
| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example:  1,234,567 B1 | Publication Date MM-DD-YYYY | Name | | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
| | 701 | 7,103,645 B2 | 09-05-2006 | Leighton et al. | | |
| | | | ∗ ∗ ∗ | | | |
| | 724 | 7,233,978 B2 | 06-19-2007 | Overton et al. | | |
| | 725 | 7,240,100 B1 | 07-03-2007 | Wein et al. | | |
| | 726 | 7,251,675 B1 | 07-31-2007 | Kamakura et al. | | |
| | 727 | 7,254,626 B1 | 08-07-2007 | Kommula et al. | | |
| | 728 | 7,254,636 B1 | 08-07-2007 | O'Toole, Jr. et al. | | |

**RESPONSE: Admitted in part and disputed in part.**  Disputed to the extent AWS implies that the order in which references appear in the document carries any substantive meaning.  It does not; references were ordered by publication date.  *See* AWS Ex. 79.  Otherwise admitted.

Dated: November 6, 2023

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 560-3501

Christine E. Lehman *(pro hac vice)*
clehman@reichmanjorgensen.com
Adam Adler *(pro hac vice)*
aadler@reichmanjorgensen.com
Philip Eklem *(pro hac vice)*
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Taylor Mauze *(pro hac vice)*
tmauze@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
901 S. Mopac Expressway, Bldg. 1, Suite 300
Austin, TX 78746
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

Respectfully submitted,

*/s/ Courtland L. Reichman*
Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5000

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard *(pro hac vice)*
sballard@reichmanjorgensen.com
Gina H. Cremona *(pro hac vice)*
gcremona@reichmanjorgensen.com
Navid Bayar *(pro hac vice)*
nbayar@reichmanjorgensen.com
Savannah Carnes *(pro hac vice)*
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

***ATTORNEYS FOR PLAINTIFF
KOVE IO, INC.***

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of November, 2023, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Courtland L. Reichman
Courtland L. Reichman