# Exhibit K11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KOVE IO, INC., | |
| *Plaintiff*, | Case No. 1:18-cv-8175 |
| v. | Judge Rebecca R. Pallmeyer |
| AMAZON WEB SERVICES, INC., | Jury Trial Demanded |
| *Defendant*. | |

## AMAZON WEB SERVICES, INC.'S FOURTH AMENDED FINAL UNENFORCEABILITY AND INVALIDITY CONTENTIONS

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (*pro hac vice*)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

# TABLE OF CONTENTS

I. AWS RESERVATIONS OF RIGHTS ................................................................. 3

II. CURRENT IDENTIFICATION OF PRIOR ART FOR PATENTS-IN-SUIT ................... 3

    A. PRIOR ART PATENTS AND PUBLICATIONS ........................................................ 4
    B. PRIOR ART SYSTEMS ........................................................................................ 5

III. SELECTION OF CURRENT GROUNDS OF INVALIDITY ....................................... 7

    '170 PATENT CLAIMS 1, 2, AND 12 ........................................................................ 8
    '170 PATENT CLAIMS 6, 8, AND 15 ........................................................................ 8
    '640 PATENT CLAIMS 17 AND 18 ........................................................................... 9
    '640 PATENT CLAIM 24 ........................................................................................ 10
    '978 PATENT CLAIMS 1, 3, 6, 10, 14, AND 31 ....................................................... 11
    '978 PATENT CLAIMS 17, 23, AND 30 ................................................................... 12
    '978 PATENT CLAIM 24 ........................................................................................ 12

IV. EXEMPLARY OBVIOUSNESS ARGUMENTS AND REASONS TO COMBINE THE IDENTIFIED PRIOR ART ........................................................................... 13

V. INVALIDITY CLAIM CHARTS FOR PATENTS-IN-SUIT ..................................... 31

VI. INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 112 ....................... 32

VII. INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 101 ....................... 36

VIII. UNENFORCEABILITY CONTENTIONS AGAINST PATENTS-IN-SUIT .................. 38

IX. DOCUMENT PRODUCTION ............................................................................ 39

DEFENDANT AMAZON WEB SERVICES, INC.              CIVIL ACTION NO. 1:18-CV-8175
FOURTH AMENDED FINAL UNENFORCEABILITY    2
AND INVALIDITY CONTENTIONS

Pursuant to the Local Patent Rules and the Court's January 3, 2022 Minute Entry (Dkt. No. 489), Defendant Amazon Web Services, Inc. ("AWS") provides the following Fourth Amended Final Unenforceability and Invalidity Contentions to Plaintiff Kove IO, Inc. ("Kove") for the Asserted Claims of the Patents-in-Suit, as defined herein. This disclosure contains the information required by LPR 3.1(b) (including as related to LPR 2.3(b) and (c)). As required by the Local Patent Rules, AWS herein identifies twenty-five prior art references, four prior art grounds per asserted claim, and four non-prior art grounds per asserted claim.

## I.  AWS RESERVATIONS OF RIGHTS

These contentions are limited to the claims identified in Kove's Second Amended Final Infringement Contentions Under Local Patent Rule 3.1 served on July 10, 2020 (the "Asserted Claims") for U.S. Patent Nos. 7,814,170 ("the '170 patent"), 7,103,640 ("the '640 patent"), and 7,233,978 ("the '978 patent") (collectively the "Patents-in-Suit").

These contentions are based on AWS's current knowledge, understanding, and beliefs based on the facts and information available at this time and are subject to supplementation and/or amendment as provided in the Local Rules, the Federal Rules of Civil Procedure, and/or any order of this Court, including the Court's December 17, 2021 Claim Construction Memorandum Opinion and Order (Dkt. No. 484). AWS also reserves the right to supplement and/or amend these contentions based on future discovery, rulings in related proceedings, and any future amendments made by Kove to its infringement and validity contentions. For at least this reason, nothing contained in these contentions should be understood or deemed to be an express or implied admission or contention with respect to the proper construction or scope of any terms in the asserted claims.

## II.  CURRENT IDENTIFICATION OF PRIOR ART FOR PATENTS-IN-SUIT

AWS provides below an identification with particularity of twenty-five items of prior art that anticipate or render obvious each Asserted Claim of the Patents-in-Suit.

AWS also reserves the right to argue that the proper priority date for any claim of the Patents-in-Suit is the patent's filing date and that the claims are not supported by earlier-filed applications.

## A. Prior Art Patents and Publications

Subject to AWS's reservations set forth above, AWS lists below twenty-five (25) items of prior art that AWS currently believes either anticipate or render obvious the Patents-in-Suit in combination with one or more other references and/or the knowledge of one of ordinary skill in the art around the time of invention.[1]

1.  U.S. Patent No. 5,230,047 to Frey ("Frey"), assigned to IBM, issued July 20, 1993;

2.  "Distributed Name Servers: Naming and Caching in Large Distributed Computing Environments" by Terry (1985) ("Terry");

3.  "DNS RFC1034 Domain names – Concepts and Facilities" by Mockapetris(1987) ("RFC1034");

4.  "An Adaptive Data Placement Scheme for Parallel Database Computer Systems"by Hua and Lee (1990) ("Hua DBMS");

5.  "Design and Implementation of DDH: A Distributed Dynamic HashingAlgorithm" by Devine (1993) ("Devine DDH");

6.  "Scale in Distributed Systems" by Neuman (1994) ("Neuman");

7.  "Location-Independent Naming for Virtual Distributed Software Repositories" by Browne et al. (1995) ("Browne");

8.  "A Model for Worldwide Tracking of Distributed Objects" by van Steen, Hauck,and Tanenbaum (1996) ("van Steen");

9.  "The Core Legion Object Model" by Lewis and Grimshaw (1996) ("Lewis");

10. U.S. Patent No. 5,542,087 to Neimat ("Neimat"), assigned to Hewlett-PackardCo., issued July 30, 1996;

11. "Consistent Hashing and Random Trees: Distributed Caching Protocols forRelieving Hot Spots on the World Wide Web" by Karger et al. (1997) ("Karger '97");

12. "Load Management in Distributed Video Servers" by Venkatasubramanian and Ramanathan (1997) ("Venkatasubramanian");

13. "Resource Location in Very Large Networks" by Partha Dasgupta (1994) ("Dasgupta");

14. "Distributed Web Caching System with Consistent Hashing" by Sherman (1999)

---

[1] AWS's identification of four prior art grounds per asserted claim is found in Section III. The remaining references on this list are included, in an abundance of caution, because they provide evidence of the background knowledge and common sense of those of ordinary skill in the art at the alleged time of invention of the Patents-in-Suit.

15.    "Web Caching with Consistent Hashing" by Karger, Sherman, et al. (1999) ("Karger/Sherman");

16.    "Locating Copies of Objects Using the Domain Name System" by Kangasharju etal. (1999) ("Kangasharju");

17.    Dynamic Load Balancing on Web-server Systems by Valeria Cardellini et al.,IEEE Internal Computing, vol. 3, no. 3, pp. 28-39, May-June 1999 ("Cardellini");

18.    "Distributed cooperative Web servers" by Baker and Moon (1999) ("Baker");

19.    Paul Albitz and Cricket Liu, DNS and BIND, O'Reilly & Associates, Inc., 3rd ed. 1998 ("BIND and DNS");

20.    U.S. Patent No. 6,212,521 to Minami ("Minami"), assigned to Fujitsu Ltd., issued April 3, 2001;

21.    U.S. Patent No. 6,430,618 to Karger ("Karger '618"), assigned to Massachusetts Institute of Technology, issued August 6, 2002;

22.    U.S. Patent No. 6,553,420 to Karger ("Karger '420"), assigned to Massachusetts Institute of Technology, issued April 22, 2003[2];

23.    U.S. Patent No. 6,807,632 to Carpentier ("Carpentier"), assigned to EMC Corp, issued October 19, 2004;

24.    Domain Name System (DNS) as described in the next section; and

25.    Cache Resolver system as described in the next section.

## B.    Prior Art Systems

To the extent a prior art reference identified herein describes a system that was publicly available or invented prior to the patents-in-suit, AWS contends the underlying system as a whole constitutes the identified prior art for the purposes of these contentions. For example:

**Domain Name System (DNS):** AWS contends that BIND 8.1, a prior art Domain Name System (DNS) implementation anticipates and/or renders obvious claims of the Asserted Patents, as described herein. Paul Mockapetris created DNS in 1983 and the Internet Engineering Task Force published the original specifications for DNS in November of that year. The following year, four University of California at Berkeley students, Douglas Terry, Mark Painter, David Riggle, and

---

[2] The Karger '618 and '420 patents are in the same patent family and closely related. Therefore, AWS refers to these patents together herein as "Karger '618/420."

DEFENDANT AMAZON WEB SERVICES, INC.         CIVIL ACTION NO. 1:18-CV-8175
FOURTH AMENDED FINAL UNENFORCEABILITY    5
AND INVALIDITY CONTENTIONS

Songnian Zhou, wrote the first Unix name server implementation for the BerkeleyInternet Name Domain (BIND). (*See*, Terry).)

The Computer Systems Research Group at Berkeley released BIND versions up to version 4.8.3. Digital Equipment Corporation released versions 4.9 and 4.9.1 and Vixie Enterprises released version 4.9.2. Since then, the Internet Software Consortium (ISC) has released versions from 4.9.3 onward. In May 1997, ISC released the first version of BIND 8. In September 2000, ISC released the first version of BIND 9. ISC stopped supporting BIND 8 in 2007.

In November 1987, the Internet Engineering Task Force published RFC 1034,which superseded the 1983 DNS specifications.

Thus, DNS was well-known and widely used before the earliest alleged priority date of the Patents-in-Suit. As one example, the inventors of the Patents-in-Suit used DNS, as apparent from the face of the Asserted Patents. (*See, e.g.*, '978 patent, col. 24:1.) Based on the history of DNS, it is likely that the inventors were using a version of BIND 8. BIND 8 was used by Sherman and Karger/Sherman in the Cache Resolver system described below. Accordingly, for the purposes of these contentions, AWS contends that BIND 8.1, a version of DNS and available as of May 1997, is a prior art DNS system that anticipates and/or renders obvious claims of the Asserted Patents, as described herein. BIND 8.1 can be found at [ftp://ftp.isc.org/isc/bind8/src/DEPRECATED/8.1/bind-src.tar.gz](ftp://ftp.isc.org/isc/bind8/src/DEPRECATED/8.1/bind-src.tar.gz) and has already been produced. Additional information describing this DNS system can be found in the produced documents, including BIND and DNS, RFC 1034, Sherman, Karger/Sherman, Baker, Cardellini, and Kangasharju.

Moreover, a person of skill in the art would be knowledgeable regarding the use and operation of DNS. As described in BIND and DNS, "[i]f you're connected to the Internet … DNS is a must." (BIND and DNS, 9.) "Think of DNS as the *lingua franca* of the Internet: nearly all of the Internet's network services use DNS. That includes the World Wide Web, electronic mail, remote terminal

access, and file transfer." (*Id*.) And the BIND software "is the most popular implementation of the DNS specs." (*Id*. at xi.)

    **Cache Resolver System:** AWS contends that the Cache Resolver system as described in Distributed Web Caching System with Consistent Hashing by Alexander Sherman (February 1999) ("Sherman") and Web Caching with Consistent Hashing by Karger, Sherman, et al. (March 4, 1999) ("Karger/Sherman") anticipates and/or renders obvious claims of the Asserted Patents, as described herein. Both Sherman and Karger/Sherman describe aspects of the same Cache Resolver system. Therefore, citations herein regarding Sherman apply equally to Karger/Sherman, and vice versa. AWS contends that all of the features and functionality of DNS are inherent to systems using DNS, such as the use of DNS in the Cache Resolver system. In particular, the Cache Resolver system uses DNS servers running BIND 8 and the program "dnshelper." The authors of these papers used the Cache Resolver system.

    The Cache Resolver system was known at least by February 1999. Alexander Sherman made the Cache Resolver system known to at least Madhu Sudan and Arthur C. Smith when he submitted his thesis to the Department of Electrical Engineering and Computer Science at MIT. Dr. Sudan was Dr. Sherman's Thesis Supervisor and Dr. Smith was the Chairman, Department Committee on Graduate Students at that time. David Karger, Alex Sherman, Andy Berkheimer, Bill Bogstad, Rizwan Dhanidina, Ken Iwamoto, Brian Kim, Luke Matkins, and Yoav Yerushalmi, the authors of Karger/Sherman made the Cache Resolver system known to at least the readers of the May 1999 issue of Computer Networks: The International Journal of Computerand Telecommunications Networking, which included a copy of the Karger/Sherman paper that describes the Cache Resolver system.

### III.    SELECTION OF CURRENT GROUNDS OF INVALIDITY

    Pursuant to LPR 3.1(b), AWS specifically identifies below the four (4) prior art grounds per

DEFENDANT AMAZON WEB SERVICES, INC.               CIVIL ACTION NO. 1:18-CV-8175
FOURTH AMENDED FINAL UNENFORCEABILITY    7
AND INVALIDITY CONTENTIONS

asserted claim and four (4) non-prior art grounds asserted against Kove's patents at this time. The prior art grounds are further supported by the attached claim charts Exhibits 1-3.

## **'170 Patent Claims 1, 2, and 12**

AWS contends that '170 patent claims 1, 2, and 12 are invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for these claims at this time. These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Obviousness based on the combination of Domain Name System (DNS) and Karger '618/420 (*see* Exhibit 1A);
2. Anticipation based on the Cache Resolver system (*see* Exhibit 1B);
3. Obviousness based on the combination of U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 (*see* Exhibit 1C);
4. Obviousness based on the combination of U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 (*see* Exhibit 1D).

AWS asserts the following four non-prior art grounds for these claims at this time. These non-prior art grounds are further supported by Sections IV-VII.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss[3], *see* Dkts. 38, 45 etc. and Section VII below);
2. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);
3. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);
4. Indefiniteness under 35 U.S.C. § 112, ¶ 2 (*see* Section VI).

## **'170 Patent Claims 6, 8, and 15**

AWS contends that '170 patent claims 6, 8, and 15 are invalid for failure to meet the

---

[3] To the extent that the district court has determined that the Asserted Patents are not unpatentable under 35 U.S.C. § 101 (*see* Dkt. 110), AWS maintains its position for the purposes of appeal.

conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for these claims at this time. These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Anticipation based on the Domain Name System (DNS) (*see* Exhibit 1A);
2. Anticipation based on the Cache Resolver system (*see* Exhibit 1B);
3. Obviousness based on the combination of U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 (*see* Exhibit 1C);
4. Obviousness based on the combination of U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 (*see* Exhibit 1D).

AWS asserts the following four non-prior art grounds for these claims at this time. These non-prior art grounds are further supported by Sections IV-VII.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);
2. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* SectionVI);
3. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);
4. Indefiniteness under 35 U.S.C. § 112, ¶ 2 (*see* Section VI).

### '640 Patent Claims 17 and 18

AWS contends that '640 patent claims 17 and 18 are invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for these claims at this time. These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Anticipation based on the Domain Name System (DNS) (*see* Exhibit 2A);

2. Anticipation based on the Cache Resolver system (*see* Exhibit 2B);

3. Obviousness based on the combination of U.S. Patent No. 5,542,087 to Neimat and DNS (*see* Exhibit 2C);

4. Obviousness based on the combination of U.S. Patent No. 6,212,521 to Minami and DNS (*see* Exhibit 2D).

AWS asserts the following four non-prior art grounds for these claims at this time. These non-prior art grounds are further supported by Sections IV-VII.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);

2. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* SectionVI);

3. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);

4. Indefiniteness under 35 U.S.C. § 112, ¶ 2 (*see* Section VI).

## '640 Patent Claim 24

AWS contends that '640 patent claim 24 is invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for this claim at this time. These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Obviousness based on the combination of Domain Name System (DNS) and Karger '618/420 (*see* Exhibit 2A);

2. Anticipation based on the Cache Resolver system (*see* Exhibit 2B);

3. Obviousness based on the combination of U.S. Patent No. 5,542,087 to Neimat, DNS, and Karger '618/420 (*see* Exhibit 2C);

4. Obviousness based on the combination of U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420 (*see* Exhibit 2D).

AWS asserts the following four non-prior art grounds for this claim at this time. These non-prior art grounds are further supported by Sections IV-VII.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);

2. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* SectionVI);

3. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);

4. Indefiniteness under 35 U.S.C. § 112, ¶ 2 (*see* Section VI).

### '978 Patent Claims 1, 3, 6, 10, 14, and 31

AWS contends that '978 patent claims 1, 3, 6, 10, 14, and 31 are invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for these claims at this time. These prior art grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V herein.

1. Anticipation based on the Domain Name System (DNS) (*see* Exhibit 3A);

2. Anticipation based on the Cache Resolver system (*see* Exhibit 3B);

3. Obviousness based on the combination of U.S. Patent No. 5,542,087 to Neimat and DNS (*see* Exhibit 3C);

4. Obviousness based on the combination of U.S. Patent No. 6,212,521 to Minami and DNS (*see* Exhibit 3D).

AWS asserts the following four non-prior art grounds for these claims at this time. These non-prior art grounds are further supported by Sections IV-VII.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);

2. Invalid for Double Patenting (*see* Section VII);

3. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* SectionVI);

4. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI).

## '978 Patent Claims 17, 23, and 30

AWS contends that '978 patent claims 17, 23, and 30 are invalid for failure to meet the

conditions for patentability set forth in Title 35 of the United States Code, including, but not limited

to, 35 U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of

Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for these claims at this time. These prior art

grounds are further supported by the accompanying claim chart exhibits as well as Sections IV-V

herein.

1. Obviousness based on the combination of Domain Name System (DNS) and U.S. Patent No. 5,542,087 to Neimat (*see* Exhibit 3A);

2. Obviousness based on the combination of the Cache Resolver system and Neimat (*see* Exhibit 3B);

3. Obviousness based on the combination of Neimat and DNS (*see* Exhibit 3C);

4. Obviousness based on the combination of U.S. Patent No. 6,212,521 to Minami, DNS, and Neimat (*see* Exhibit 3D);

AWS asserts the four non-prior art grounds below for these claims at this time. These non-

prior art grounds are further supported by Sections IV-VII.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);

2. Invalid for Double Patenting (*see* Section VII);

3. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);

4. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI).

## '978 Patent Claim 24

AWS contends that '978 patent claim 24 is invalid for failure to meet the conditions for

patentability set forth in Title 35 of the United States Code, including, but not limited to, 35

U.S.C. § 101 et seq., 35 U.S.C. §§ 101, 102, 103, and/or 112, the requirements of the Code of

Federal Regulations, as well as general principles of patent law.

AWS asserts the following four prior art grounds for this claim at this time. These prior

art grounds are further supported by the accompanying claim chart exhibits as well as Sections

IV-V herein.

1. Obviousness based on the combination of Domain Name System (DNS), U.S. Patent No. 5,542,087 to Neimat, and Venkatasubramanian (*see* Exhibit 3A);

2. Obviousness based on the combination of the Cache Resolver system, Neimat, and Venkatasubramanian (*see* Exhibit 3B);

3. Obviousness based on the combination of Neimat, DNS, and Venkatasubramanian (*see* Exhibit 3C);

4. Obviousness based on the combination of U.S. Patent No. 6,212,521 to Minami, DNS, Neimat, and Venkatasubramanian (*see* Exhibit 3D).

AWS asserts the four non-prior art grounds below for this claim at this time. These non-

prior art grounds are further supported by Sections IV-VII.

1. Unpatentable under 35 U.S.C. § 101 (as described in AWS motion to dismiss, *see* Dkts. 38, 45 etc. and Section VII below);

2. Invalid for Double Patenting (*see* Section VII);

3. Lack of proper written description support under 35 U.S.C. § 112, ¶ 1 (*see* Section VI);

4. Lack of enablement under 35 U.S.C. § 112, ¶ 1 (*see* Section VI).

## IV. EXEMPLARY OBVIOUSNESS ARGUMENTS AND REASONS TO COMBINE THE IDENTIFIED PRIOR ART

The asserted claims of the Patents-in-Suit relate to combinations of various systems and

methods for storing and retrieving data in a computer network that were known in the art prior to

the Patents-in-Suit. Where the combination of features recited in any particular asserted claim

were not included in a single piece of prior art, as a general matter, it would have been obvious to

modify the prior art to make such a combination. The individual features recited in the asserted

claims were known to be available and suitable for use in computer networking systems.Thus, as discussed in specific instances in the attached charts, the inclusion of such known structures and/or features in the asserted claims was a matter not of innovation in the art, but of simple choices that would have been within the level of ordinary skill to implement and would have led to no more than the predictable results around the time of the Patents-in-Suit.

To show obviousness, AWS intends to rely on the presence of various structures and features, and combinations thereof, of the prior art described herein as a basis for incorporating those structures and features into other prior art described herein. The reasons justifying such modifications and combinations of prior art features is evident from the prior art itself, the knowledge of one of ordinary skill in the art, and the nature of the problems to be solved related to the Patents-in-Suit.

Furthermore, the combinations in the accompanying claim charts would have been readily made by one of ordinary skill in the art at the time of the alleged invention of the Patents-in-Suit, at least in that one of ordinary skill would have been motivated to combine the references disclosed herein in such a way as to render the alleged inventions obvious. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007); *Randall Mfg. v. Rea*, 733 F.3d 1355 (Fed. Cir. 2013). Each of the references disclosed herein was directed at the same or similar field of technology and to the same or similar problem as the Patents-in-Suit. As discussed in more detail below and in the accompanying invalidity claim charts, the teaching, suggestion, or motivation to combine these references may be found, explicitly or implicitly, for one or more of the following reasons:

(1)     the combination results from a simple substitution of one known element for another to obtain predictable results;

(2)     the combination results from the use of known techniques to improve similar methods in the same way;

(3)    the combination results from applying a known technique to a known method ready for improvement to yield predictable results;

(4)    the combination results from choosing a finite number of identified,predictable solutions, with a reasonable expectation of success, andtherefore is obvious to try;

(5)    the combination results from known work in one field of endeavor prompting a variation of it for use in either the same field or a different one based on design incentives or other market forces and the variations would have been predictable to one of ordinary skill in the art; or

(6)    the combination results from using known techniques or solutions to address a problem addressed by the invention or a problem that would be encountered by one of ordinary skill in the art working in that field.

AWS also intends to rely on the background knowledge and common sense of those of ordinary skill in the art at the alleged time of invention of the Patents-in-Suit to show invalidity of the Patents-in-Suit.

The accompanying invalidity claim charts identify specific claim limitations with combinations of references that render the Asserted Claims obvious. For each such combination of references, if any particular claim limitation is alleged not to be disclosed or inherent in those references, then it would have been obvious to one of ordinary skill in the art to combine the charted reference with one or more of the references identified in the charts for the particular claim limitations.

Furthermore, AWS describes here additional evidence of obviousness related to the subject matter as a whole and certain specific feature of the Asserted Claims of the Patents-in-Suit. To the extent that Kove alleges that any of the prior art references charted in AWS's Exhibits 1-3 do not disclose one of the limitations described below, it would have been obvious to one of ordinary skill in the art before the time of invention, for example, to include the following features in a distributed storage system such as claimed by the Asserted Patents. AWS also refers Kove to AWS's Initial Non-Infringement and Invalidity Contentions dated August 6, 2019 for additional information regarding the identified prior art and invalidity contentions, in

particular, the claim charts which further illustrate where specifically in each item of prior art each element of each asserted claim is found. AWS intends to rely on such evidence to support its contention that one of ordinary skill in the art would have had reason to combine the identified prior art as claimed.

**Data Location Server and Location Information:** To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of data location servers, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, '170 patent claims 1, 2, 6, 8, 15; '640 patent claim 17, 18, 24; '978 patent claims 1, 3, 5, 10, 14, 17, 31.) The Patents-in-Suit recognize that "location" is not a requirement for its Network Distributed Tracking Protocol ("NDTP"). "NDTP can be used for any application in which one-to-zero or one-to-many associations amongstrings are to be maintained and accessed on a network. In applications of NDTP other than distributed databases, the term identifier is likely to make sense in most cases, but the term location may not." ('170 patent, 20:30-37; '640 patent, 20:18-25; '978 patent, 25:11-14.) The Microfiche Appendix filed with the '170 and '640 patents provide software code that is not location-specific, demonstrating that any key-value store can be used.

Further, the Court held in its Claim Construction Order (Dkt. No. 484) that "Location Server" should be construed as "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients." And the Court held that "Location Information" should be "one or more identifiers and their associated locations" for the '978 Patent, and "information pertaining to one or more locations of data and/or the identities of one or more location servers" for the '170 and '640 Patents. And these constructions by the Court support the finding that the identified prior art

references disclose the claim limitations. For example, the Court held that a "location server" should not be limited to a NDTP server. And the Court held that for the '170 and '640 Patents, "location information" included "information pertaining to . . . the identities of one or more location servers" in addition to the "location of data stored in a distributed system."[4]

The concept of storing information about the location of data in a distributed network is well known, even fundamental, in the field of computer science, for example. As the Domain Name Server (DNS) protocol recognized long before the alleged invention, there was a known problem in the art that "[t]he applications on the internet were getting more sophisticated and creating a need for general purpose name service," and "[t]he result was several ideas about name spaces and their management." (RFC1034, Section 2.1-2.2.) And the concept of storing information about the location of data, and information pertaining to the location of data is well known, even fundamental, in the field of computer science. For example, as the Domain Name Server (DNS) protocol recognized long before the alleged invention, there was a known problem in the art that "[t]he applications on the internet were getting more sophisticated and creating a need for general purpose name service," and "[t]he result was several ideas about name spaces and their management." (RFC1034, Section 2.1-2.2.). And RFC1034 discloses that not only are identification of data servers returned as responses to queries for data, but also information that "point toward a name server that has the desired information" of information "expected to be useful in interpreting the relevant RRs." (RFC1034, p. 17.) Browne further appreciated that "[f]or a name to be useful, there must be some means of resolving a name to a location from which the resource can be retrieved or accessed" such as in DNS. (Browne, 182.) Kangasharju similarly recognized "[i]t is highly desirable for host in the Internet to be able to determine the

---

[4] Court's December 17, 2021 Claim Construction Memorandum Opinion and Order (Dkt. No. 484), at 18-19.

locations (i.e., the IP addresses) of all object servers that contain copies of a specified URL."
(Kangasharju, 3.)

In addition, the concept of separating information about the location of data from the data itself, for instance, is an obvious method of organizing information that is well known in computer science. Indeed, DNS uses "name servers" that store information about network address locations (the "where," for example, a mailbox address) that is separate from the underlying data (the "what" in the mailbox). (RFC1034, Sections 2.4, 3.1, 3.6, 3.7; Sherman, pgs. 34-39; Karger/Sherman, Section 3.) Sherman and Karger/Sherman stated: "The primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP addresses of the caches." (Sherman, p. 37; Karger/Sherman, p. 10.) Dasgupta described a "completely scalable, non-hierarchical naming that is independent of the entities['] location or affiliations." (Dasgupta, Abstract.)

Neuman described techniques for reducing "the number of requests that must be handled by a name server" and explained that the "[a]dvantages to distribution are that only part of the naming database is stored on each server, thus reducing the number of queries and updates to be processed." (Neuman, 4.2.) The van Steen article outlines "a solution for locating objects using location-independent identifiers." (van Steen, 1-2.) One of skill would have been motivated to use such separation methods, for example, to use less space or memory in the part of the system with the location information in order to gain overall speed, efficiency, or computing ability related to that part of the system. Furthermore, to the extent any prior art discloses the use of one server, it would have been obvious to use more than one server to achieve further benefits. *See* MPEP § 2144.VI.B (Obviousness of Duplication of Parts).

Therefore, it would have been obvious to one of skill to employ data location servers and

utilize location information in a distributed network, particularly in view of the references identified below:

- U.S. Patent No. 6,212,521 to Minami (see, e.g., cols. 7-8);
- DNS (see, e.g., RFC1034, Sections 2.4, 3.1, 3.6, 3.7);
- Cache Resolver system (see, e.g., Sherman, pp. 34-39; Karger/Sherman, Section 3); and/or
- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to combine them with other prior art disclosing distributed networks. For example, RFC1034 states that DNS uses distributed name servers and local caches to increase the amount of memory and improve performance: "The sheer size of the database and frequency of updates suggest that it must be maintained in a distributed manner, with local caching to improve performance." (RFC1034, 2.) RFC1034 discloses that this caching occurs to reduce name server load: "A veryimportant goal of the resolver is to eliminate network delay and name server load from most requests by answering them from its cache of prior results." (*Id.*, 29.) Thus, DNS discloses the use of a distributed network to ensure scalability and performance. The Cache Resolver system specifically refers to DNS and a skilled artisan would therefore use DNS's teachings as motivation to combine the Cache Resolver system with other art.

Neimat similarly discloses scaling a distributed network: "The present invention accommodates any number of clients and servers, and allows the database storage to extend to occupy any number of servers." (Col. 6:37-39; *see also* 1:36-40, 8:12-15.) Likewise, Minami states, "[A] first object of the present invention is to provide a data management system which relieves processing loads imposed on individual data management servers by distributing data registration and retrieval tasks and reducing the amount of data maintained in each server." (Col. 3:38-43.) Thus, a skilled artisan seeking to ensure scalability and improve performance in a

distributed network would be motivated to combine references that disclose location servers, such as DNS, with references disclosing distributed networks, such as Minami or Neimat.

**Hash Function:** To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of a hash function, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, '170 patent claim 1.f, 6.c, 15.a; '640 patent claim 24; '978 patent claim 6.) The specifications of the asserted patents themselves concede that the "preferably applied" hash function was "well-known" in computer science. ('170 patent, col. 15:12-18.) Numerous other publications before the filing of the Patents-in-Suit describe the use of hash functions in distributed systems. As one example, the prior art recognized that it was well understood "for clients to use a standard hash function to determine from which server to request a document." (U.S. Patent No. 6,553,420 to Karger, col. 3:23-50; *see also* U.S. Patent No. 6,430,618 to Karger.) And the Court's adoption of the parties' agreed construction of "hash table" as "a data structure that stores values in a table, where values are stored and retrieved by applying a hash function to an input and using the function result as an index into the table" further supports this finding.

Karger, for example, described a hashing technique known as consistent hashing, which stored and retrieved data by a hashed key across a set of distributed and dynamic server machines. (*See* "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web" by Karger et al. (1997).) This seminal paper showed how hash keys serve to partition the data across the servers and is cited over 2,500 times as indicated by Google Scholar. It also declared: "We believe the ideas have broader applicability. In particular, consistent hashing may be a useful tool for distributing information

from name servers such as DNS and label servers such as PICS in a load-balanced and fault

tolerant fashion." As another example, Dasgupta describes a "name to server mapping [that] is

controlled by a set of well known hash functions." (Dasgupta, 4.4.) Courts have similarly

recognized that hash functions are "generic and basic mathematical or algorithmic functions that

do not make a patent inventive." *Symantec Corp. v. Zscaler, Inc*., No. 17-cv-04426-JST, 2018

WL 1456678, at *7 (N.D. Cal. March 23, 2018).

Therefore, it would have been obvious to one of skill to employ a hash function to

organize data in a distributed system, and further in view of the references identified below:

- U.S. Patent No. 5,542,087 to Neimat (see, e.g., col. 8);
- U.S. Patent No. 6,212,521 to Minami (see, e.g., cols. 10, 14);
- U.S. Patent No. 6,553,420 to Karger (see, e.g., cols. 3-4; see also U.S. Patent No. 6,430,618 to Karger);
- DNS (see, e.g., RFC1034, p. 13);
- Cache Resolver system (see, e.g., Sherman, pp. 34-39; Karger/Sherman, Section 3); and/or
- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to use hash

functions to organize data in other distributed networks, such as those disclosed in DNS, Neimat,

and Minami. For example, the stated purpose of Karger '618/420 is to distribute requests

efficiently "among a plurality of resources." Karger's hashing avoids the known problem in the

art of having to spend costly resources to reshuffle data when there is a change in the number of

servers. As Karger explains, a reason to use "consistent hashing" is because "for most of the set

of requests the allocation is consistent even as resources are added and removed" and "consistent

hashing avoids increasing loads and spread when the number of servers change."  (Col. 6:28-41.)

As explained above, DNS, Neimat, and Minami similarly disclose the enhancement of

performance and scalability in a distributed network. Thus, one of skill would have been

motivated to use the consistent hashing of Karger to avoid reshuffling and overload problems in other distributed networks, such as DNS, Neimat, or Minami. Consistent hashing would also complement the fundamental performance and scalability goals of other distributed networks, such as DNS, Neimat, and Minami. A skilled artisan seeking to ensure scalability and improve performance in a distributed network would be motivated to combine references that disclose hashing, such as Karger '618/420, with references disclosing distributed networks, such as DNS, Minami, or Neimat.

**Redirection:** To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of redirection, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, '170 patent claims 6.c, 15.e; '640 patent claim 17.c, 18.e; '978 patent claims 3, 10.b, 14.c.) The concept of redirection—*i.e.*, searching a first server for information and then searching a second server for information if the first server does not have that information—is obvious and conventional in the field of computer science. For example, DNS provides responses from DNS name servers, including referring the requester to another set of name servers. "The response by the name server either answers the question posed in the query, refers the requester to another set of name servers, or signals someerror condition." (RFC1034, p. 16.) One of skill would have been motivated to employ redirection for example, for the obvious benefit of improving the ability of a system to locate information. It would have also been obvious for a system to employ redirection on the client side or the server side. Cardellini, for example, recognized "[t]he approach of routing the document requests from the client side can be applied to any replicated Web-server architecture even when the nodes are loosely or not coordinated at all." (Cardellini, p. 3.)

Therefore, it would have been obvious to one of skill to employ redirection in a distributed system, and further in view of the references identified below:

- U.S. Patent No. 5,542,087 to Neimat (see, e.g., col. 10);
- U.S. Patent No. 6,212,521 to Minami (see, e.g., col. 9);
- DNS (see, e.g., RFC1034, pp. 15-17);
- Cache Resolver system (see, e.g., Sherman, pp. 34-39; Karger/Sherman, Section 3); and/or
- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to use redirection in other prior art disclosing distributed networks. For example, RFC1034 describes: "In addition to relevant records, the name server may return RRs that point toward a name server that has the desired information or RRs that are expected to be useful in interpreting the relevant RRs. For example, a name server that doesn't have the requested information may know a name server that does; a name server that returns a domain name in a relevant RR may also return the RR that binds that domain name to an address." (RFC1034, 17.) Further, as explained above, RFC1034 discloses the goals of enhancing scalability and performance in a distributed network—a goal also disclosed by other distributed network references, such as Neimat and Minami. Therefore, a skilled artisan would have understood that redirection can be used to enhance scalability and performance in a distributed network, and would have understood that a server in Neimat or Minami could similarly be used advantageously to point toward a server with the desired information if that information is not on that server. A skilled artisan would therefore have been motivated to combine references that disclose redirection, such as DNS, with references disclosing distributed networks, such as Neimat or Minami.

**Load Balancing:** To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of a load balancing, such as based on a

performance criterion, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, '978 patent claims 17.e, 23, 24, 30.) The concept of transferring information from one server to another when the server is full, for example, is obvious and conventional in the field of computer science.

Hua DBMS recognizes, for instance, "since effective data placement is an important lever for load balancing, it is normally the determining factor for the performance of a multi-processor system." (Hua DBMS at 494.) Devine DDH states as background "[i]deally, no server is responsive for more than its proportional share of the total data size. This principle can be enforced by actively checking the local load level against the global load level and then performing adaptive load balancing to ameliorate hot spots." (Devine DDH at 3.) Baker notes that "[i]f there is a way to distribute [a collection of Web documents] in such a way that the load is evenly distributed despite the dynamically changing Web access patterns, then the problem of load balancing, one of the most important issues of creating a distributed Web server, has been solved." (Baker, 1215.) Baker then describes a distributed cooperative Web server system that "effectively eliminates the bottleneck of centralized resources, while balancing the load among distributed web servers." (Baker, Abstract.) As another example, Frey disclosed a scheme for load balancing distributed tree file structures in a parallel computing system. (Frey, 3:53-59, 4:42-6:48, Figures 5-6.) One of skill would have been motivated to employ load balancing, for example, for the obvious benefit of improving system performance, speed, and efficiency.

Therefore, it would have been obvious to one of skill to employ load balancing in a distributed system, and further in view of the references identified below:

- U.S. Patent No. 5,542,087 to Neimat (see, e.g., col. 13);
- "Load Management in Distributed Video Servers" by Venkatasubramanian and

Ramanathan (1997); and/or

- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to use load balancing in other prior art disclosing distributed networks, such as DNS and the Cache Resolver system. DNS discloses the transfer of RRs from one location server to another: "Whole zones can be transferred between name servers by transferring the RRs." (RFC1034, 20.) Further, DNS is "intentionally extensible" (RFC1034, 1), and as explained above, it is expressly concerned about server load and performance. Neimat discloses one way of transferring records from one server to another in order to ensure servers are efficiently loaded: transferring when a predetermined storage criterion is reached. (Col. 13:26-27.) One of ordinary skill would have understood Neimat to be a solution to the problem of server load disclosed in RFC1034 and would combine these two references for at least this reason. As another reason, Neimat proposes a solution to the well-known problem of memory "collisions" (Col. 13:32-37), which is a problem experienced in distributed data storage systems such as the system disclosed in RFC1034.

Venkatasubramanian likewise teaches load management based on the amount of "disk space." (Venkatasubramanian, 529). But Venkatasubramanian also teaches that load management based on storage space (as in Neimat) is only one approach, and that a combination of that approach with others is preferred. Specifically, Venkatasubramanian states that "disk bandwidth, memory buffer space, CPU cycles, and network transfer bandwidth" are different variables that may be "necessary for supporting" a request. (*Id*.) Venkatasubramanian explicitly teaches the combination of these different approaches for system optimization: "Performance evaluations indicate that a load management procedure which uses a judicious combination of the different policies performs best for most server con-figurations." (*Id*., 528.) Thus, Neimat

teaches one method of load balancing (based on disk space), and Venkatasubramanian expressly teaches Neimat's method while presenting methods of load balancing based on other performance criteria, including transaction rate, as alternatives to Neimat's method. One of ordinary skill would have therefore modified Neimat in view of Venkatasubramanian's teaching.

A skilled artisan would therefore have been motivated to combine references disclosing load balancing, such as Neimat and Venkatasubramanian, with other references disclosing distributed networks, such as DNS or the Cache Resolver system.

**Client**: To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of a client, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.*, '170 patent claim 15; '640 patent claim 17, 18, 24; '978 patent claims 14.) For example, the Court held that a "client" should be construed as "a network-attached component (which may be software or hardware) that initiates update or lookup of identifier/location mappings from a location server with location request messages."[5] And in its order, the Court further held that the location mappings from location servers are not limited to NDTP servers.[6] This clarification by the Court supports a finding that the identified prior art references disclose the claim limitations relating to the use of a client.

For example, in addition to disclosing DNS "name servers" that store information about network locations (RFC1034, Sections 2.4, 3.1, 3.6, 3.7; Sherman, pgs. 34-39; Karger/Sherman, Section 3.), RFC1034 further discloses that its system contain "DNS software" that is run when a name server is locating information contained in a RR responsive to a location query. (RFC1034, 15.) Likewise, Karger/Sherman discloses implementation of its system in both

---

[5] Court's December 17, 2021 Claim Construction Memorandum Opinion and Order (Dkt. No. 484), pp. 21-23.
[6] *Id.*, pp. 21-22.

hardware and software: "In order to get around the problem, we decided to use DNS. We could set up our own DNS servers, and modify them to support consistent hashing. This consistent hashing could be "propagated" to browsers during name resolution. More precisely, we wrote an autoconfigure script that performs a standard hash of the input URL to a range of 1000 names that we call virtual caches. We then used DNS to map the 1000 virtual cache names onto actual code IP addresses via consistent hashing." (Karger/Sherman, p. 10; see also Sections 2-3.) Additionally, Neimat reflects that the processor sites necessarily includes executable code to execute, for example, the steps described with respect to Figure 2. (Neimat, 8:48-11:64.)

Therefore, it would have been obvious to one of skill to employ data location servers in a distributed network, particularly in view of the references identified below:

- U.S. Patent No. 6,212,521 to Minami (see, e.g., cols. 7-8);
- DNS (see, e.g., RFC1034, Sections 2.4, 3.1, 3.6, 3.7);
- U.S. Patent No. 5,542,087 to Neimat (see, e.g., cols. 8-11);
- Cache Resolver system (see, e.g., Sherman, pp. 10, 34-39; Karger/Sherman, Sections 2-3); and/or
- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to combine them with other prior art disclosing distributed networks that include client components. For example, DNS discloses a system having a plurality of DNS name servers that manage location information, such as DNS resource records, and provide location information to location queries, called standard queries in DNS. And each DNS name server is attached to a DNS network and maintains a set of domain name/address mappings that are modified or returned in response to standard queries from clients. (*See*, *e.g.*, RFC1034, Sections 2.4). And the Cache Resolver system discloses that "system clients" are responsible for sending requests to caches or directories in a distributed web caching system. (*See., e.g.,* Sherman, p. 15.) And similarly, both

Neimat and Minami disclose systems using a client that interacts with a server site of data retrieval and storage. (*See., e.g.,* Niemat, 5:23-37, 8:16-67; Minami, Abstract.)

A skilled artisan would therefore have been motivated to combine references disclosing distributed data systems that include a client component, such as Neimat and Minami, with other references disclosing distributed networks, such as DNS or the Cache Resolver system.

**<u>Data Pertaining to the Entity</u>**: To the extent that Kove contends that an identified piece of prior art does not disclose a claim limitation related to the use of data pertaining to the entity, the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See, e.g.,* '170 Patent, claim 1; '978 Patent, claims 1, 31.) For example, the Court held that the term "data pertaining to the entity" should be construed as "data pertaining to a person or thing (real, digital, or abstract) distinct from that data."[7] This clarification by the Court that the entity may be "real, digital, or abstract" further supports a finding that the identified prior art references disclose the claim limitations relating data pertaining to the entity.

For example, RFC1034 discloses different types of resources in the resource record, including "abstract resources." (*See., e.g.,* RFC1034, 11-12.) And the Cache Resolver system, Neimat, and Minami discloses that the "thing" that the data pertains to may be real, digital, or abstract as well. (*See*., *e.g.,* Sherman, p. 37; Neimat, 8:16-67; Minami, 3:48-4:9.)

Therefore, it would have been obvious to one of skill to employ data location servers in a distributed network, particularly in view of the references identified below:

- U.S. Patent No. 6,212,521 to Minami (see, e.g., col. 3);
- DNS (see, e.g., RFC1034, Sections 2.3, 2.4, 3.5, 4);
- U.S. Patent No. 5,542,087 to Neimat (see, e.g., cols. 8-11);

---

[7] Court's December 17, 2021 Claim Construction Memorandum Opinion and Order (Dkt. No. 484), pp. 31-35.

- Cache Resolver system (see, e.g., Sherman, pp. 10, 34-39; Karger/Sherman, Sections 2-3); and/or

- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to combine them with other prior art disclosing distributed networks. For example, RFC1034 states that DNS uses distributed name servers and local caches to increase the amount of memory and improve performance: "The sheer size of the database and frequency of updates suggest that it must be maintained in a distributed manner, with local caching to improve performance." (RFC1034, 2.) RFC1034 discloses that this caching occurs to reduce name server load: "A very important goal of the resolver is to eliminate network delay and name server load from most requests by answering them from its cache of prior results." (*Id*., 29.) Thus, DNS discloses the use of a distributed network to ensure scalability and performance. The Cache Resolver system specifically refers to DNS and a skilled artisan would therefore use DNS's teachings as motivation to combine the Cache Resolver system with other art.

Neimat similarly discloses scaling a distributed network: "The present invention accommodates any number of clients and servers, and allows the database storage to extend to occupy any number of servers." (Col. 6:37-39; *see also* 1:36-40, 8:12-15.) Likewise, Minami states, "[A] first object of the present invention is to provide a data management system which relieves processing loads imposed on individual data management servers by distributing data registration and retrieval tasks and reducing the amount of data maintained in each server." (Col. 3:38-43.) Thus, a skilled artisan seeking to ensure scalability and improve performance in a distributed network would be motivated to combine references that disclose location servers, such as DNS, with references disclosing distributed networks, such as Minami or Neimat.

**Based on a Hash System**: To the extent that Kove contends that an identified piece of

prior art does not disclose a claim limitation related to the use of "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string," the subject matter as a whole of each claim, including that limitation, would have been obvious to one of skill in the art before the invention. (*See*, *e.g.,* '170 Patent, claim 1.) For example, the Court held that this term should be construed to include both indirect mapping and direct mapping.[8] This clarification by the Court further supports a finding that the identified prior art references disclose this claim limitation is disclosed by the identified prior art references.

For example, RFC1034 discloses that various mapping conventions may be employed in its distributed data system, that "can be quite simple or fairly complex" where "[m]ultiple mappings or levels of mapping may be required." (*See., e.g.,* RFC1034, 9-10.) RFC1034 further discloses examples of different types of mapping schemes, such as the mapping of addresses to host names and specific mapping schemes, such as for mailboxes. (*Id.*) The Cache Resolver system similarly discloses multiple hashing and mapping methods, such as hashing of URLs and Consistent Hashing. (Sherman, pgs. 15, Section 3; Karger/Sherman, Sections 2-3.) And Neimat and Minami further disclose various methods of hashing and mapping key values to produce addresses. (*See., e.g.,* Neimat, 8:57-67, 9:43-65, 10:13-26; Minami, Abstract, 7:52-57, 10:43-46, 14:6-47, 18:21-19:34, 28:12-32.)

Therefore, it would have been obvious to one of skill to employ a hash function to organize data in a distributed system, and further in view of the references identified below:

---

[8] Court's December 17, 2021 Claim Construction Memorandum Opinion and Order (Dkt. No. 484), pp. 24-30.

- U.S. Patent No. 5,542,087 to Neimat (see, e.g., col. 8);

- U.S. Patent No. 6,212,521 to Minami (see, e.g., cols. 10, 14);

- U.S. Patent No. 6,553,420 to Karger (see, e.g., cols. 3-4; see also U.S. Patent No. 6,430,618 to Karger);

- DNS (see, e.g., RFC1034, p. 13);

- Cache Resolver system (see, e.g., Sherman, pp. 34-39; Karger/Sherman, Section 3); and/or

- the common sense and background knowledge in the art.

These references contain specific teachings that would lead a skilled artisan to use hash functions to organize data in other distributed networks, such as those disclosed in DNS, the Cache Resolver system, Neimat, and Minami for the same reasons discussed above to "Hash Functions."

## V. INVALIDITY CLAIM CHARTS FOR PATENTS-IN-SUIT

Claim charts 1A-1D identify where specifically in each item of identified prior art each element of each asserted claim of the '170 patent is found.

**Exhibit 1A:** DNS, and for claims 1, 2, and 12 also Karger '618/420;

**Exhibit 1B:** Cache Resolver system;

**Exhibit 1C:** Neimat, DNS, and Karger '618/420; and

**Exhibit 1D:** Minami, DNS, and Karger '618/420.

Claim charts 2A-2D identify where specifically in each item of identified prior art each element of each asserted claim of the '640 patent is found.

**Exhibit 2A:** DNS, and for claim 24 also Karger '618/420;

**Exhibit 2B:** Cache Resolver system;

**Exhibit 2C:** Neimat and DNS, and for claim 24 also Karger '618/420; and

**Exhibit 2D:** Minami and DNS, and for claim 24 also Karger '618/420.

Claim charts 3A-3D identify where specifically in each item of identified prior art each

element of each asserted claim of the '978 patent is found.

> **Exhibit 3A:** DNS, and for claims 17, 23, 24, and 30 also Neimat, and for claim 24 also Venkatasubramanian;

> **Exhibit 3B:** Cache Resolver system, and for claims 17, 23, 24, and 30 also Neimat, and for claim 24 also Venkatasubramanian;

> **Exhibit 3C:** Neimat and DNS, and for claim 24 also Venkatasubramanian; and

> **Exhibit 3D:** Minami and DNS, and for claims 17, 23, 24, and 30 also Neimat, and for claim 24 also Venkatasubramanian.

## VI.    INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 112

AWS contends that one or more of the Asserted Claims are invalid as indefinite under 35 U.S.C. § 112, ¶ 2. The Asserted Claims fail to particularly point out and distinctly claim the subject matter that the patentee regards as its alleged invention such that one of ordinary skill in the relevant art would be reasonably apprised of the bounds of the asserted claims when read in light of the specification. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014). For example, the following claim terms of the Patents-in-Suit are indefinite:

- **"*Based on a hash function*"** as used in claims 1 and 2 of the '170 patent and **"*hash table generated with the hash function*"** as used in claim 2 of the '170 patent.

A skilled artisan would not have understood the scope of "based on a hash function" as found in claims 1 and 2 of the '170 patent. Claim 1 recites: "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers." Claim 2 depends from claim 1 and hence incorporates this limitation. The patents do not explain how to use the claimed "hash function," how it works, what it does, or what it means for a "portion" of "data location information" to be "based on" a "hash function used to organize the data location information across the plurality of data location servers." Similarly, a skilled artisan would not have understood the scope of "hash table generated with the hash function" in

claim 2. The patents do not explain how the hash table is "generated with" the hash function or the relationship between this "hash table" and the "location information."

- **"*Performance criterion*"** and **"*predetermined performance limit*"** as used in claims 17, 23, 24, and 30 of the '978 patent.

A skilled artisan would not have understood the bounds of "performance criterion" or "predetermined performance limit." The '978 patent does not explain the range of "performance criteria," how to determine a "limit" for "performance criterion," or what it means for a "performance criterion" to be "predetermined."

- **"*The first data location server*"** as used in claims 17, 23, 24, and 30 of the '978 patent.

This limitation is indefinite because the phrase "the first data location server" lacks antecedent basis in the claim. A skilled artisan could not discern whether "the first data location server" is the same server as "a location server" recited earlier in the claim.

- **"*Programming logic … configured to return, in response to a location query related to a desired entity, a location message … comprising at least one location associated with the desired entity, wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity,*"** as used in claim 6 of the '170 patent.

This limitation is indefinite because a skilled artisan could not discern whether the server returns two messages or one message if the location server lacks location information for the desired entity.

In addition, the Asserted Claims include functional claim limitations governed by pre-AIA 35 U.S.C. § 112(6). Those claim limitations are indefinite because a skilled artisan could not recognize the structure in the specification and associate it with the corresponding function in the claims. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1352 (Fed. Cir. 2015) ("Under 35 U.S.C. § 112, paras. 2 and 6, therefore, if a person of ordinary skill in the art would be unable to

recognize the structure in the specification and associate it with the corresponding function in the claim, a means-plus-function clause is indefinite.")  Those functional claim limitations include:

- **"*Hash function*,"** as used in claims 1 and 2 of the '170 patent.

- **"*Hash table*,"** as used in claims 2 and 12 of the '170 patent, claim 6 of the '978 patent, and claim 24 of the '640 patent.

- **"*Indexing function*"** or **"*indexed*,"** as used in claim 12 of the '170 patent and claim 6 of the '978 patent.

- **"*Calculate a location*,"** as used in claims 17, 18, and 24 of the '640 patent.

- **"*Configured to determine the … data location server[]*"** or **"*determining … the … location server[]*,"** as used in claims 1, 2, and 15 of the '170 patent.

- **"*Transfer protocol configured for manipulating*"** or **"*transfer protocol comprising instructions for manipulating*,"** as used in claims 10 and 31 of the '978 patent.

- **"*Transfer protocol configured to transport*,"** as used in claims 17, 23, 24, and 30 of the '978 patent.

- **"*Computer executable code configured to execute the following steps*,"** as used in claim 17, 18, 24 of the '640 patent.

- **"*Location server configured to receive*,"** or **"*programming logic*"** that is **"*configured to return*,"** as used in claims 6, 8, and 12 of the '170 patent.

- **"*Programming logic … responsive to*"** a **"*location query*,"** as used in claims 1, 3, 6, 10, and 31 of the '978 patent.

In addition, claims 1, 3, 6, 10, and 31 of the '978 patent, claims 1, 2, 6, 8, and 12 of the '170 patent, and claims 17, 18, and 24 of the '640 patent are indefinite because they include both apparatus and method limitations. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F. 3d 1377, 1384 (Fed. Cir. 2005); *Rembrandt Data Techs., LP v. AOL LLC*, 641 F.3d 1331 (Fed. Cir. 2011).  For example:

- Claim 1 of the '978 patent includes both apparatus limitations (*e.g.*, a "location server") and steps requiring the performance of an action (*e.g.*, "programming logic … identifying a desired entity to return a location message").

- Claim 3 of the '978 patent includes both apparatus limitations (*e.g.*, a "location server") and steps requiring the performance of an action (*e.g.*, "programming logic … to return one of a location message or a redirect message").

- Claim 6 of the '978 patent includes both apparatus limitations (*e.g.*, a "location server") and steps requiring the performance of an action (*e.g.*, "is maintained in an

indexed location store indexed by a hash table").

- Claim 10 of the '978 patent includes both apparatus limitations (*e.g.*, "plurality of location servers") and steps requiring the performance of an action (*e.g.*, "programming logic … responsive to a location query … to return one of a location message … and a redirect message").

- Claim 31 of the '978 patent includes both apparatus limitations (*e.g.*, "location server") and steps requiring the performance of an action (*e.g.*, "location server operating in accordance with a transfer protocol" and "programming logic … toreturn a location message").

- Claims 1 and 2 of the '170 patent include both apparatus limitations (*e.g.*, "a data location server network comprising a plurality of data location servers") and steps requiring the performance of an action (*e.g.*, "hash function used to organize the data location information across the plurality of data location servers" and in claim 2, "hash table generated with the hash function").

- Claims 6, 8, and 12 of the '170 patent include both apparatus limitations (*e.g.*, a "location server") and steps requiring the performance of an action (*e.g.*, "programming logic is configured to return … the location message" and "redirect message" and in claim 12, "indexed by a hash table distributed across a plurality of servers").

- Claims 17, 18, and 24 of the '640 patent include both apparatus limitations (*e.g.*, "data location server network") and steps requiring the performance of an action (*e.g.*, "computer executable code configured to execute the following steps" and in claim24, "hash table distributed over the plurality of data location servers").

In addition, the Asserted Claims lack sufficient written description and are not enabled.

All asserted claims with references to "hash" or "hashing" are invalid for lack of written description and lack of enablement under 35 U.S.C. § 112, because the specification does not adequately disclose or enable the hashing limitations recited in the claims. The Patents-in-Suit do not explain how to use the claimed "hash function" or "hash table," how it works, what it does, or how its output is used. For example, claim 6 of the '978 patent recites: "The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table."  However, the specification neither describes nor enables location information within a location server being maintained in an indexed location store indexed by a hash table. Likewise, claims 1, 2, and 12 of the '170 patent and claim 24 of the'640 patent recite "hash function" and/or "hash table" limitations, but the specification neither

describes nor enables those limitations.

In addition, each of the claim limitations characterized above as indefinite "functional claim limitations" is, in the alternative, invalid for lack of written description and lack of enablement. The claim limitations recite generic functions (*e.g.*, "based on a hash function" / "hash table," "indexing function" / "indexed," "calculate," "manipulate," "determine"). Alternatively, they recite "programming logic" or "computer executable code" that accomplishes functions, or servers that are "configured to" accomplish functions. In each case, the specifications do not describe or enable the full scope of those limitations because they do not explain *how* to accomplish those functions. As additional examples, claim 17 of the '978 patent, as well as dependent claims 23, 24, and 30, are invalid for lack of written description and lack of enablement. The specification does not describe or enable the full scope of the claim terms "performance criterion," "predetermined performance limit," and "monitoring the performance criterion and automaticallytransferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit." Additionally, claim 6 of the '170 patent, as well as dependent claims 8 and 12, are not described or enabled because the '170 patent does not disclose how to configure programming logic to return both a location message and a redirect message in response to a location query.

AWS reserves the right to make additional arguments under 35 U.S.C. § 112 as the positions that Kove takes with regard to priority, infringement, claim interpretation of various terms that have been construed by the Court or terms that have not been construed by the Court, and responses to AWS's invalidity arguments, become more clearly articulated or are modified and as Kove attempts to support its positions with specific reference to disclosures in its patents.

## VII. INVALIDITY OF PATENTS-IN-SUIT BASED ON 35 U.S.C. § 101

Each of the Asserted Claims is invalid as unpatentable subject matter under 35 U.S.C. § 101. The claims of the Asserted Patents recite abstract data-manipulation steps, such as "receiving" or "storing" information, on generic computer components, as described in detail in the briefing on the AWS motion to dismiss, which is incorporated herein by reference. (*See* Dkt. 38, 45.) The logic of this § 101 argument applies to all Asserted Claims.

Additionally, AWS contends that claims of the '978 patent are unpatentable under the doctrine of obviousness-type double patenting. For example, the asserted claims of the '978 patent are invalid in view of the '170 patent, because the '978 patent claims are not patentably distinct from the '170 patent. As Kove admits, for example, claims of the '978 patent "recites substantially the same claimed architecture as claim 1 of the '170 patent… ." (Dkt. 44 at 10.) Any claim limitations added to the '978 patent claims are simply obvious variants. Likewise, the asserted claims of the '978 patent are invalid in view of the '640 patent because the '978 patent claims are not patentably distinct from the '640 patent. (*See id.*) Further, Kove alleges that the '978 patent claims are entitled to priority to the same application as the '170 and '640 patents, and, under this view of the claims, everything claimed in the '978 patent is necessarily disclosed in, and not patentably distinct from, each of the prior applications in the '978 patent priority chain. AWS also incorporates by reference its Motion for Judgment on the Pleadings (Dkt. 131-132, 156, 162).

Further, in response to AWS's Motion for Judgment on the Pleadings, Kove has taken the position that claim construction may reveal distinctions between the claims of the '978 patent and the claims of the '640 and '170 patents. To the extent such distinctions exist, AWS reserves the right to argue that the claims of the '978 patent are invalid for obviousness-type double patenting in view of the claims of the '640 and '170 patent, when viewed in light of the prior art

references and combinations disclosed above with respect to the '978 patent.

For example, claims 1, 3, 6, 10, 14, and 31 of the '978 patent are invalid for obviousness-type double patenting in view of the '640 patent and '170 patent, further in view of the prior art references and combinations identified as anticipation and obviousness references for those claims. As a non-limiting example, claims 1, 3, 6, 10, 14, and 31 of the '978 patent are invalid for obviousness-type double patenting in view of the '640 patent and '170 patent, further in view of DNS.

Likewise, claims 17, 23, and 30 of the '978 patent are invalid for obviousness-type double patenting in view of the '640 patent and '170 patent, further in view of the prior art references and combinations identified as anticipation and obviousness references for those claims. As a non-limiting example, claims 17, 23, and 30 of the '978 patent are invalid for obviousness-type double patenting in view of the '640 patent and '170 patent, further in view of Neimat and/or DNS. Likewise, claim 24 of the '978 patent is invalid for obviousness-type double patenting in view of the '640 patent and '170 patent, further in view of the prior art references and combinations identified as anticipation and obviousness references for that claim. As a non-limiting example, claim 24 of the '978 patent is invalid for obviousness-type double patenting in view of the '640 patent and '170 patent, further in view of DNS and/or Neimat and/or Venkatasubramanian.

## VIII.   UNENFORCEABILITY CONTENTIONS AGAINST PATENTS-IN-SUIT

AWS incorporates by reference its Answer, Additional Defenses, and Counterclaims (Dkt. 129), which includes its unenforceability defenses and counterclaims. AWS reserves the right to disclose additional contentions of unenforceability for the Patents-in-Suit if AWS discovers additional facts giving rise to additional unenforceability defenses. AWS's

investigation of Kove's actions concerning the prosecution of the Patents-in-Suit and knowledge of the prior art is ongoing. For example, AWS will seek the Rule 30(b)(6) corporate representative deposition of Kove regarding the prosecution of the asserted patents and knowledge of the prior art.

## IX. DOCUMENT PRODUCTION

Pursuant to LPR 2.1(b)(2), Defendants have previously produced documents bearing Bates numbers AMZ_KOVE_000017145 - AMZ_KOVE_000017175, AMZ_KOVE_000044829 - AMZ_KOVE_000044859, AMZ_KOVE_000044908 - AMZ_KOVE_000044943, AMZ_KOVE_000044970 - AMZ_KOVE_000044982, AMZ_KOVE_000045035 - AMZ_KOVE_000045069, AMZ_KOVE_000061911 - AMZ_KOVE_000062127, AMZ_KOVE_000062299 - AMZ_KOVE_000062367, AMZ_KOVE_000062395 - AMZ_KOVE_000062662, AMZ_KOVE_000070463 - AMZ_KOVE_000070530, AMZ_KOVE_000075810 - AMZ_KOVE_000076531, AMZ_KOVE_000078678 - AMZ_KOVE_000078694, AMZ_KOVE_000080051 - AMZ_KOVE_000081655 related to prior art identified in these contentions.

Dated: March 7, 2022

Respectfully submitted,

/s/ Jeffrey M. Saltman
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (*pro hac vice*)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above document was served on all counsel of record via email on March 7, 2022.


Dated: March 7, 2022

/s/ Jeffrey M. Saltman
Jeffrey M. Saltman