# Exhibit K21

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KOVE IO, INC., | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:18-cv-08175 |
| | ) |
| AMAZON WEB SERVICES, INC., | ) Hon. Matthew F. Kennelly |
| | ) |
|     Defendant. | ) |
| | ) |

## SUPPLEMENTAL AND AMENDED RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-6)

Pursuant to Federal Rule of Civil Procedure 33 and the rules and orders of this Court, Defendant Amazon Web Services, Inc. ("Amazon") hereby responds with the supplemental responses and objections set forth below to Plaintiff Kove IO, Inc.'s ("Kove") First Interrogatories to Amazon (Nos. 1-6). Specifically, Amazon supplements below its responses and objections to Interrogatory Nos. 2, 3, 4, and 6. Amazon's investigation concerning the matters raised by Kove's Interrogatories and Kove's discovery is continuing, and, pursuant to Federal Rule of Civil Procedure 26(e), Amazon expressly reserves the right to amend and/or supplement these responses and its production of documents if it learns of additional responsive information.

## GENERAL OBJECTIONS

Amazon hereby incorporates its General Objections set forth in its Response to Plaintiff's First Set of Interrogatories, its First Amended Response to Plaintiff's First Set of Interrogatories and its Second Supplemental Response to Plaintiff's First Set of Interrogatories.

Amazon further objects to each Interrogatory to the extent Kove seeks Amazon respond to additional discrete subparts that are outside the scope of the Interrogatory, as requested in Kove's March 5, 2021 letter from Adam Adler to Elizabeth Bernard. Amazon is only obligated to respond

in-suit can't be imputed to the corporation to support a finding of willfulness and knowledge of infringement.³ *See also* AMZ_KOVE_000057588 - AMZ_KOV_000061121 and AMZ_KOVE_000062774 - AMZ_KOV000064002, which are patents owned by or assigned to other Amazon corporate entities not involved in this case and that list the patents-in-suit as a reference cited during prosecution, among many other cited references. Amazon also incorporates by reference the Complaint, Amazon's non-infringement, invalidity and unenforceability contentions, and Kove's Responses to Amazon's Interrogatory Nos. 9 and 25.

**INTERROGATORY NO. 2:**

Identify all factual and legal bases for each of Your counterclaims and affirmative defenses in this action. Your answer should include an identification of all documents and communications related to Your answer (by Bates range) and the persons most knowledgeable about Your answer.

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2 (JUNE 11, 2021):**

Amazon objects to this Interrogatory, seeking "all factual and legal bases" for each of Amazon's counterclaims and defenses, as overly broad, unduly burdensome and disproportionate to the needs of this case. Amazon also objects to this Interrogatory to the extent it seeks to improperly shift Kove's burden of proving infringement to Amazon. Amazon further objects to this Interrogatory because Kove's Final Infringement Contentions and Kove's Amended Final Infringement Contentions are deficient and fail to sufficiently put Amazon on notice of its conduct alleged to be infringing. Amazon further objects to this Interrogatory to the extent it seeks information regarding any Amazon service other than "S3" and "DynamoDB." Specifically, Amazon won't respond to this Interrogatory regarding the unaccused Glacier service. Amazon further objects to this Interrogatory as it seeks information that is solely within the possession,

---

³ *See Olaf Soot Design, LLC v. Daktronics, Inc.*, 325 F. Supp. 3d 456, 464 (S.D.N.Y. 2018) (finding reference to the patent-in-suit "buried among 139 patents listed on one such IDS" insufficient to prove knowledge for purposes of willful infringement).

custody and control of Kove, and Kove hasn't completed its discovery in this case, including completing its document production, supplemental interrogatory responses, and providing Rule 30(b)(6) and Rule 30(b)(1) witness(es). Amazon therefore will further supplement this Interrogatory once Kove has completed its discovery in this case. Amazon further objects to this Interrogatory as including at least nine discrete subparts and thus Amazon counts this Interrogatory as at least nine separate Interrogatories.[4]

Subject to the foregoing specific and general objections, Amazon states as follows:

**Defenses**

**Non-Infringement**: Amazon doesn't make, use, sell, offer for sale, or import into the United States, and hasn't made, used, sold, offered for sale or imported into the United States any products or services that infringe any valid claim of the patents-in-suit willfully, directly, indirectly, contributorily, through the doctrine of equivalents, or otherwise, and hasn't induced others to infringe any valid claim of the patents-in-suit. Exemplary factual and legal bases for this affirmative defense may be found in Amazon's Initial Non-Infringement and Invalidity Contentions, and Final Non-Infringement Contentions. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers Kove to those contentions.

**Invalidity**: At least the asserted claims of the patents-in-suit are invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 100 et seq., 101, 102, 103, 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law, including the prohibition against double patenting. Exemplary factual and legal bases for this affirmative defense may be found in

---

[4] *Finjan, Inc. v. Qualys Inc.,* 2020 WL 4923964, at *2-3 (N.D. Cal. Aug. 21, 2020) (finding interrogatory seeking defendant to "[d]escribe in detail the complete legal and factual basis *for each affirmative defense*" is ten interrogatories) (emphasis in original).

5

Amazon's Initial Non-Infringement and Invalidity Contentions, Amazon's Final Unenforceability and Invalidity Contentions, Amazon's Amended Final Unenforceability and Invalidity Contentions, Amazon's Second Amended Final Unenforceability and Invalidity Contentions, and Amazon's Motion for Judgment on the Pleadings. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers Kove to those contentions and papers.

**Failure to State a Claim**: The Complaint fails to state a claim for all the reasons set forth in Amazon's papers filed in support of Amazon's Motion for Judgment on the Pleadings and Amazon's Motion to Dismiss. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers Kove to those papers. Further, Plaintiff has failed to establish that it is the owner of the patents-in-suit with rights to sue for infringement and damages, including past infringement and damages, and thus cannot maintain the instant action. Specifically, Plaintiff hasn't established that the chain of title of the patents-in-suit extends directly from the named inventors to Kove IO, Inc. as explained in more detail below regarding Amazon's standing defense and as shown in Kove's incomplete Responses to Amazon's Interrogatory Nos. 13 and 15-16, as Kove has failed to establish the consideration for the transfer of the patents-in-suit. Pursuant to Fed. R. Civ. P. 33(d), Amazon also refers Kove to the documents identified above and the patents-in-suit and their respective file histories, including the patent assignments and recordation documents.

Amazon identifies Dr. John Overton as a person knowledgeable about this defense. Amazon can't provide a complete response to this Interrogatory until Kove completes its discovery in this case, including completing its document production and supplemental interrogatories, as well as providing its Rule 30(b)(6) and Rule 30(b)(1) testimony.

**Unenforceability**: Plaintiff's attempted enforcement of the patents-in-suit against Amazon is barred by the doctrine of inequitable conduct. The factual and legal bases for this affirmative

6

defense may be found in Amazon's Answer at pp. 38–39. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers Kove to that Answer and to Amazon's Initial Non-Infringement and Invalidity Contentions, Amazon's Final Unenforceability and Invalidity Contentions, Amazon's Amended Final Unenforceability and Invalidity Contentions, and Amazon's Second Amended Final Unenforceability and Invalidity Contentions.

Responding further, Kove has produced a key piece of prior art ("Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web," by David Karger et al. ("Karger '97"), *see* KOV_00039222) that would have invalidated the patents-in-suit had it been before the patent examiner during prosecution.[5] The metadata for the article, produced from inventor John Overton's files, indicates that the file was created January 3, 1999. Thus, Dr. Overton, an inventor, was in possession of this article prior to and during the prosecution of each of the patents-in-suit.

Karger '97 and Dr. Karger's work at MIT are highly material prior art to the patents-in-suit, but neither prosecution counsel nor the inventors disclosed Karger '97 or Dr. Karger's other work (shown in other published articles and patents) to the Patent Office. Karger '97 is material to the patents-in-suit at least because it describes "caching protocols for distributed networks that can be used to decrease or eliminate the occurrence of hot spots" in networks such as the World Wide Web. Karger '97 also disclosed the use of caching protocols "based on a special kind of hashing we call consistent hashing" and that "consistent hash functions may eventually prove to be useful in other applications such as distributed name servers and/or quorum systems." Karger '97 further discussed that "[w]e believe the ideas have broader applicability. In particular, consistent hashing

---

[5] Amazon incorporates its Second Amended Final Invalidity and Unenforceability Contentions demonstrating the materiality of the Karger '97 reference to the prosecution of the patents-in-suit and how Dr. Karger's pre-2000 work at MIT invalidates the patents-in-suit.

may be a useful tool for distributing information from name servers such as DNS and label servers such as PICS in a load-balanced and fault tolerant fashion." Karger '97 thus described a hashing technique known as consistent hashing which stored and retrieved data by a hashed key across a set of distributed and dynamic server machines.[6]

The materiality of the Karger reference to the prosecution of the patents-in-suit is further demonstrated by the inventor's knowledge of Dr. Karger's work at MIT and recognition of its importance to claims related to distributed hash tables. In particular, Dr. Overton wrote a draft letter to Paul Carmichael claiming that the patents-in-suit include "method claims and specific system claims regarding distributed hash tables." *See* KOV_00057828.[7] In this letter, Dr. Overton demonstrated his knowledge of this work being done at MIT (where Dr. Karger is a professor) regarding distributed hash tables and systems, but falsely claimed that the work only post-dated the patents-in-suit. Indeed, as shown above, the metadata on the Karger '97 article from Dr. Overton's files dates back to early 1999, prior to the filing dates of the patents-in-suit. Dr. Karger's pre-2000 work is also cited in other articles regarding distributed hash tables produced from the files of Dr. Overton, with metadata showing Dr. Overton was in possession of these articles at least during the prosecution of the patents. *See* KOV_00055037 (metadata shows date created in Dr. Overton's files was October 5, 2001); *see also* KOV_00060030. It's thus clear that Dr. Overton was aware of Dr. Karger's work at MIT and the Karger '97 reference prior to and during the

---

[6] And Karger '97 is cited in the Dynamo paper (Dkt. No. 1, Ex. 21) that Kove identifies as supporting its infringement allegations. Kove therefore can't deny the materiality of Karger '97. And other work of Dr. Karger was the basis for objections by the Examiner during the prosecution of a later patent application that claimed priority to the patents-in-suit but was abandoned, further showing the materiality of Dr. Karger's work at MIT. *See, e.g.*, KOV_00061409.

[7] The metadata for this letter indicates it was created on October 31, 2005, during the prosecution of the patents-in-suit. Kove's April 10, May 12 and May 27, 2020 privilege logs provide a date of November 4, 2005. Yet neither Karger's work nor the MIT work referenced in this letter regarding distributed hash tables was provided to the Patent Office by Dr. Overton.

8

prosecution of the patents-in-suit and was aware of its materiality to claims regarding distributed hash tables and systems, but never provided the Karger reference or any of the MIT work to the USPTO, in violation of his oath and duty of candor. Dr. Overton and/or the prosecuting attorney thus made a deliberate decision to withhold Karger '97 and the MIT work from the USPTO with knowledge of the materiality and with the specific intent to deceive the USPTO. The patents-in-suit are unenforceable because the inventors and/or the prosecuting attorney failed to disclose Karger '97 and the MIT work and therefore made material misrepresentations about the prior art to the USPTO.

Pursuant to Fed. R. Civ. P. 33(d), Amazon also refers Kove to the documents identified above and the patents-in-suit and their respective file histories. Amazon identifies Brinks Gilson & Lione, Dr. John Overton, and Dr. Stephen Bailey as the persons knowledgeable about this defense. Amazon can't provide a complete response to this Interrogatory until Kove completes its discovery in this case, including completing its document production and supplemental interrogatories, as well as providing its Rule 30(b)(6) and Rule 30(b)(1) testimony.

**Failure to Mark**: Plaintiff and any predecessors in interest to the patents-in-suit failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287, or otherwise to give proper notice that Kove's purported products or services embodied or were covered by the patents-in-suit. Accordingly, Plaintiff cannot recover damages for any period before the date the Complaint in this action was filed, December 12, 2018, which was the earliest potential date Amazon received actual notice that Kove contended Amazon was infringing the patents- in-suit.

Kove has identified several commercial embodiments of the patents-in-suit, including but not limited to the "OverX and Xpress software," "OverX Location Servers (OXLS)," "Xpress

Server," "The Xpress Association Database," "XTN for Telecommunications," "XRN for Registry Services," "XSN for Storage Services" and "Xpress Database." *See* Kove's Responses to Interrogatory No. 3. Kove has admitted that it never marked any of these embodiments. *See id.*; December 11, 2020 Kove's Responses to Amazon's Second Set of RFAs. But Kove made, offered to sell and/or license these embodiments to partners and customers in the United States after issuance of the first patent-in-suit on September 5, 2006 or made and/or sold the software embodiments incorporated in other Kove or partner products and therefore failed to comply with its duty to mark in accordance with 35 U.S.C. § 287.

This is demonstrated by Kove's website, www.econnectix.com, which until at least February 2015 marketed the admitted embodiments of the patents-in-suit as "Data Management Products" and offered to license the embodiments of the patents-in-suit. As the website stated: "We license data management technology to partners and sell integrated data solutions." The econnectix.com domain website further stated "Please contact us for more information" on the "Products" webpage, which clearly identified, as an example, The Xpress Association Database embodiment. The econnectix.com domain also provided a link to at least one Data Sheet for, as an example, The Xpress Association Database, that stated "XPress provides performance, scalability, and replication policies unavailable by other technologies – at substantial cost-savings and reduced TCO." The econnectix.com domain also provided a link to at least one Data Sheet that stated "The XPress product line includes the generic XPress Association Database, XPress XTN for Telecommunications (911, Call Routing, Name Management; IM, VoIP, 3G, LBS, E911), XPress XRN for Registry Services (DNS, Directory Services), and XPress XSN for Storage Networks (CDN, NAS, SAN). The company licenses its technology to infrastructure software and service providers to be integrated into their product and service offerings."

Kove also sold or licensed, and offered for sale or license, other products incorporating at least one of the embodiments (e.g., the Xpress Association Database embodiment) as confirmed by the Econnectix website that stated: "At the base of its products, Econnectix has designed an association database technology called XPress." Though Kove has failed to meet its discovery obligations in this case and preserve and produce this information from its website from 2006-2015, the available copies of this website demonstrate that these embodiments were at least made and offered for license to the public and potential third-party partners.[8] *See, e.g.*, AMZ_KOVE_00090100-361.

Kove also entered into contracts with partners to license and resell the embodiments as data management technology. For example, on November 12, 2009, Econnectix Corporation entered into a "Value Added Reseller Agreement" with Tekserve Corporation, a New York corporation ("the Tekserve Agreement" at KOV_00039512). The Tekserve Agreement identified Tekserve Corporation as a "Reseller" and stated that "the parties desire that Reseller purchase and resell the Products." The Tekserve Agreement states "Econnectix has developed certain high performance data storage and management technologies (defined as 'Products' below)." The "Products" Tekserve Corporation agreed to resell in accordance with the Tekserve Agreement thus included at least the Xpress Association Database, XTN for Telecommunications, XRN for Registry Services and XSN for Storage Services defined as Econnectix "data management technologies" on the website. The Tekserve Agreement further identified the "Products" for Tekserve Corporation to resell as "Xpress hardware and associated software, release specified in purchase

---

[8] Several webpages and documents however aren't recoverable on www.archive.org and thus Kove's failure to preserve the www.econnectix.com website after it had a duty to do so for this litigation has left Amazon without highly relevant information and evidence regarding Kove's making, sale and offer to sale or license embodiments of the patents-in-suit.

order." But the Tekserve Agreement didn't require Tekserve Corporation to mark the "Products" with the patent numbers of the patents-in-suit. And Kove entered the same agreement with Abba Technologies, Inc., a New Mexico corporation (KOV_00039534), SpecVet, Inc., a Wisconsin corporation (KOV_00039589), MTG Security Inc., a Colorado corporation (KOV_00039638), WireSpeed Data, Inc., a Florida corporation (KOV_00039665), and Net Source, Inc., a Colorado corporation (KOV_00040130).

Amazon identifies Dr. John Overton and other Kove employees unknown to Amazon at this time as the persons with knowledge regarding this defense. Amazon can't provide a complete response to this Interrogatory until Kove completes its discovery in this case, including completing its document production and supplemental interrogatories, as well as providing its Rule 30(b)(6) and Rule 30(b)(1) testimony.

**Statute of Limitations**: Plaintiff's claims for damages are barred, in whole or in part, by the six-year limitation of damages in 35 U.S.C. § 286. Because Amazon's S3 and DynamoDB products were originally released before December 12, 2012, Plaintiff's claims for damages before that date are barred.

**Equitable Defenses**: Plaintiff's attempted enforcement of the patents-in-suit against Amazon is barred by the equitable doctrine of unclean hands. Exemplary factual and legal bases for this affirmative defense may be found in Amazon's Answer at pp. 40–42. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers Kove to that Answer.

Specifically, Plaintiff has acted in bad faith with respect to this lawsuit, including during discovery. First, Amazon served its First Set of Requests for Production of documents on June 20, 2019. Among other things, those requests sought documents related to the prosecution of the Asserted Patents and Plaintiff's knowledge of prior art. Plaintiff produced few documents

responsive to those requests. Its document productions consisted largely of publicly available correspondence with the Patent Office and publicly available open-source code. Throughout the fall of 2019, Amazon sent Plaintiff multiple discovery letters detailing the deficiencies in Plaintiff's productions and the parties conferred several times concerning Amazon's requests that Plaintiff produce all responsive documents.

Finally, on February 10—only three days before Amazon's deadline to serve its Final Invalidity Contentions—Plaintiff produced over 20,000 pages of documents to Amazon. Plaintiff made two additional productions totaling over 19,000 pages in the days immediately following that deadline. The February productions contained many documents relating to the prosecution of the patents-in-suit. Those documents are highly relevant to several issues in this case, including, among other things, a defense of inequitable conduct. Although Amazon requested the basis for this delay, Plaintiff didn't offer any explanation for waiting over seven months after Amazon served its document requests to produce those documents. Because of Plaintiff's discovery misconduct—coupled with the patent applicants' inequitable conduct in prosecution of the patents-in-suit, as set forth in Amazon's fourth additional defense on unenforceability—the doctrine of unclean hands bars Plaintiff's claims.

Second, Kove failed to maintain highly relevant documents and information it had an obligation to preserve for this case. Kove confirmed in its April 30, 2021 letter from Michael Marvin to Jeff Saltman that it didn't preserve the Econnectix website, including the Econnectix webpages that marketed and offered for sell and/or license the Kove embodiments after the issuance of the patents-in-suit. Kove's letter also stated that it decommissioned and repurposed a virtual machine related to that website in August 2019, well-after the filing of this lawsuit.

Though Kove claimed in its letter that it produced prior archived versions of the website, Kove confirmed during a meet and confer that it only produced webpages from 2003 or earlier and didn't produce later versions of its website, including after the issuance of the patents-in-suit. Kove thus only maintained and produced webpages prior to the issuance of the patents-in-suit. But as Kove's letter makes clear, the Econnectix website was available until at least March 2015 and Kove knowingly failed to preserve the website, including the webpages and documentation after the issuance of the patents-in-suit that are highly relevant to Amazon's marking defense. During the meet and confer, Kove confirmed that the Econnectix website was deleted, but refused to answer Amazon's questions regarding exactly when that website was fully deleted and what additional information was deleted, including what information was on the virtual machine that was decommissioned and repurposed eight months after the filing of this case, claiming that Amazon "isn't entitled to that discovery."

Both before and after the filing of this case, Kove had a duty to preserve information relevant to this case, including information related to marketing and offers to sell and/or license the embodiments of the patents-in-suit. Indeed, Kove has admitted it anticipated litigation as early as July 12, 2014 (and claimed work product protection in this case as of that date) and had a list of cloud companies identified for infringement litigation by May 2015.[9] Kove thus had an obligation to preserve responsive information, including the Econnectix website, at least by July 12, 2014, but indisputably by August 2019 when it decommissioned and repurposed the virtual machine.[10]

Amazon identifies Dr. John Overton, Kove's counsel and unknown Kove employees or contractors as the persons knowledgeable about this defense. Amazon can't provide a complete

---

[9] *See* Kove's September 16, 2020 Privilege Log.

[10] *See, e.g., Escamilla v. SMS Holdings Corp.,* No. CV 09-2120, 2011 WL 13243580, at *37 (D. Minn. June 28, 2011).

response until Kove completes its discovery in this case, including completing its document production and supplemental interrogatories, as well as providing its Rule 30(b)(6) and Rule 30(b)(1) testimony regarding the destruction of documents and information regarding embodiments since July 2014.

**Double Patenting**: Claims 1, 3, 6, 10, 14, 17, 23, 24, 30 and 31 of the '978 patent are invalid under the doctrine of obviousness-type double patenting. Exemplary factual and legal bases for this affirmative defense may be found in Amazon's papers filed in support of its Motion for Judgment on the Pleadings, in Amazon's Final Invalidity Contentions, in Amazon's Amended Final Unenforceability and Invalidity Contentions, and in Amazon's Second Amended Final Unenforceability and Invalidity Contentions. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers Kove to those papers and contentions.

**Lack of Standing**: Plaintiff has failed to establish that it is the owner of the patents-in-suit with rights to sue for infringement and damages, including past infringement, and thus lacks standing to bring the Complaint. Specifically, Plaintiff hasn't established that the chain of title of the patents-in-suit extends directly from the named inventors to Kove IO, Inc. *See* Kove's Responses to Amazon's Interrogatory Nos. 13, 15-16. For instance, Kove hasn't identified evidence of consideration for the transfer of the patents-in-suit from the OverX Creditor Trust to Dr. Overton and Econnectix. Kove's Responses to Amazon's Interrogatory No. 13, 15 and 16 don't provide the requested detail regarding the consideration or whether Dr. Overton and/or Econnectix met the express promises of the agreement such that the transfer of the patents-in-suit was effective. *See, e.g.,* KOV_00009956 (¶ 1 "Receipt of Purchase Price," ¶ 3 "Earn Out"). Amazon's Interrogatory No. 16 expressly requests the detailed identification of the consideration for each agreement or transfer of the patents-in-suit. Kove's response doesn't provide any evidence to prove

receipt of the consideration, but, despite Amazon's requests, relies solely on Rule 33(d) citations to agreements, which don't provide evidence of receipt of consideration. Therefore, Kove has failed to meet its burden to provide evidence of ownership of the patents-in-suit by Kove IO, Inc. and thus lacks standing to bring this lawsuit.

Pursuant to Fed. R. Civ. P. 33(d), Amazon refers Kove to KOV_00000124, KOV_00000203, KOV_00000219, KOV_00000232, KOV_00000243, KOV_00000256, KOV_00000258, KOV_00000261, KOV_00000279, KOV_00000297, KOV_00000302, KOV_00000547, KOV_00000796, KOV_00002863, KOV_00003762, KOV_00009956, KOV_00009963, KOV_00009978, KOV_00036285, Kove's Responses to Amazon's Interrogatory No. 13, and 15-16, and to the patents-in-suit and their respective file histories including patent recordation and assignment documentation.

Amazon identifies Dr. John Overton, Mr. Michael Pechette, and Dr. Michael Roizen as persons knowledgeable about this defense. Amazon can't provide a complete response to this Interrogatory until Kove completes its discovery in this case, including completing its document production and supplemental interrogatories, as well as providing its Rule 30(b)(6) and Rule 30(b)(1) testimony, and Amazon has finished third-party discovery.

**Counterclaims**

**Non-Infringement**: The factual and legal bases for these counterclaims may be found in Amazon's Initial Non-Infringement and Invalidity Contentions and its forthcoming Final Non-Infringement Contentions. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers you to those contentions.

**Invalidity**: The factual and legal bases for these counterclaims may be found in Amazon's Initial Non-Infringement and Invalidity Contentions, its Final Unenforceability and Invalidity

Contentions, its Amended Final Unenforceability and Invalidity Contentions, its Second Amended Final Unenforceability and Invalidity Contentions, and Amazon's papers filed in support of its Motion for Judgment on the Pleadings. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers you to those papers and contentions.

**Unenforceability**: The factual and legal bases for these counterclaims may be found in Amazon's Initial Non-Infringement and Invalidity Contentions, its Final Unenforceability and Invalidity Contentions, its Amended Final Unenforceability and Invalidity Contentions, its Second Amended Final Unenforceability and Invalidity Contentions, in Amazon's Answer at 44– 46, 48– 50, and 51–53, and supra at 3–5. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers you to that Answer and those contentions. *See also supra*.

**Unpatentability**: The patents-in-suit don't claim patentable subject matter under 35 U.S.C. § 101 and are thus unpatentable. The factual and legal bases for these counterclaims may be found in Amazon's Initial Non-Infringement and Invalidity Contentions, its Final Unenforceability and Invalidity Contentions, its Amended Final Unenforceability and Invalidity Contentions, its Second Amended Final Unenforceability and Invalidity Contentions, and in the papers filed in support of Amazon's Motion to Dismiss. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers you to those papers and contentions.

Amazon's investigation continues, and Amazon reserves the right to supplement this answer in the event it discovers further information relating to its defenses and counterclaims following Kove's discovery in this case, including the Rule 30(b)(6) and Rule 30(b)(1) depositions of Kove, its document production and supplemental interrogatory responses, or determines other equitable or legal defenses to Kove's claims or counterclaims, that it may assert, as provided by the Federal Rules of Civil Procedure and the Northern District of Illinois Local Patent Rules.

AMZ_KOVE_000528618; AMZ_KOVE_000528620; AMZ_KOVE_000528621; AMZ_KOVE_000528619; AMZ_KOVE_000528622; AMZ_KOVE_000528623; AMZ_KOVE_000528624; and AMZ_KOVE_000528625 (all of which are designated as Highly Confidential).

Ariel Szafir, Tiffany Sung, Rob Ray, Michael Gaggioli, and Nathan Hunt are the individuals most knowledgeable about this response.

Dated: April 13, 2023

Respectfully Submitted,

AMAZON WEB SERVICES, INC.

By: */s/ Jeffrey M. Saltman*

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (*pro hac vice*)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Suite 400
Washington, DC 20015
202.362.3500

*Attorneys for Defendant Amazon Web Services, Inc.*

## CERTIFICATE OF SERVICE

I certify that on April 13, 2023, the foregoing **SUPPLEMENTAL AND AMENDED RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES BY AMAZON (NOS. 1-6),** was electronically served on counsel of record via email.

/s/ *Jeffrey M. Saltman*
Jeffrey M. Saltman