# Exhibit K57

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Kove IO, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Amazon Web Services, Inc., <br><br> Defendant. | Civil Action No. 1-18-cv-08175 <br><br> Hon. Matthew F. Kennelly <br><br> **JURY TRIAL DEMANDED** |

**FIRST SUPPLEMENTAL REBUTTAL EXPERT REPORT OF MICHAEL GOODRICH REGARDING VALIDITY OF U.S. PATENT NOS. 7,103,640; 7,233,978; AND 7,814,170**

Executed on this day 7th day of September, 2023, at New York, NY

*/s/ Michael A. Goodrich*

_____
Dr. Michael Goodrich

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1
II. CLAIMS 17, 23, AND 30 ARE NOT OBVIOUS OVER THE CITED PRIOR ART  1
    A. Summary of Final Office Action ........................................................................... 1
    B. Claims 17, 23, 24, and 30 are not obvious in view of the prior art combinations set forth in the Final Office Action ............................................................................. 2
        1. Claim 17 ..................................................................................................... 2
        2. Claim 23 ..................................................................................................... 4
        3. Claim 30 ..................................................................................................... 6
        4. Claim 24 ..................................................................................................... 8
    C. Claims 17, 23, 24, and 30 not obvious in view of the Office's cited prior art under AWS's alternative constructions ............................................................................ 9
III. CLAIMS 17, 23, 24, AND 30 ARE NOT OBVIOUS BASED ON SKAGERWALL, STEEN, YOCUM, AND/OR BOUKOBZA ................................................................ 10
IV. KOVE'S SECONDARY CONSIDERATIONS INDICATE NON-OBVIOUNESS . 11

## I. INTRODUCTION

1. I have been retained by counsel for Plaintiff Kove IO, Inc. ("Kove") to serve as an expert in Kove IO, Inc. v. Amazon Web Services, Inc. (Case No. 1-18-cv-08175). I expect to testify at a trial regarding the matters set forth in this expert report, if asked about those matters by the Court or the parties' attorneys. An updated list of materials considered is submitted herewith as Updated Appendix B.

2. On August 18, 2023, I submitted my initial Rebuttal Expert Report regarding the validity of the asserted claims of the Patents-in-Suit. On August 21, 2023, the United States Patent and Trademark Office ("the Office") issued a Final Office Action in the Reexamination of claims 17-30 of the '978 patent (Reexam Control No: 90/019,109). I have reviewed that Final Office Action and understand that the patentability of claims 18-22 and 24-29 have been confirmed and that claims 17, 23, and 30 stand rejected over certain prior art. As discussed below, I disagree with the Office's rejections of claims 17, 23, and 30.

3. On August 25, 2023, Mr. Greene submitted a Second Supplemental Expert Report regarding claims 17, 23, 24, and 30 based on the August 21, 2023 Final Office Action. I have reviewed Mr. Greene's Second Supplemental Report.

4. Nothing in either the Final Office Action or Mr. Greene's Second Supplemental Report alters my opinions in my initial Rebuttal Expert Report for the reasons detailed below.

## II. CLAIMS 17, 23, AND 30 ARE NOT OBVIOUS OVER THE CITED PRIOR ART

### A. Summary of Final Office Action

5. The Final Office Action rejects claims 17, 23, and 30 as being obvious based on the combination of ONAG and Boukobza and/or ONAG and OracleUnleashed. Contrary to Mr. Greene's assertion, I understand that claims 17, 23, 30 are not canceled at this point.[1]

**B. Claims 17, 23, 24, and 30 are not obvious in view of the prior art combinations set forth in the Final Office Action**

**1. Claim 17**

6. In my opinion, the Office's findings regarding claim 17 are incorrect. The combination of ONAG and Boukobza and/or ONAG and OracleUnleashed do not render claim 17 obvious for at least the reasons stated in my initial Rebuttal Expert Report.

7. For example, with respect to claim 17, the Office contends that "[t]ransferring a portion of names and service addresses would not break ONAG's organization structure because ONAG discloses administrative regions can be further divided into other administrative regions giving the example of dividing EUROPE further into UK, GREECE, and so forth. (ONAG, page 42). ONAG discloses the DBA administrators should anticipate growth of names in the system and subdividing domains into additional domains to handle the growth. (ONAG, page 57). ONAG also discloses adding Names Servers to improve performance. (ONAG, page 61)."[2]

8. The Office misinterprets and misapplies the ONAG reference. The disclosures that the Office relies on refer only to the "flat naming model" taught in ONAG. As that teaching makes clear, flat naming models may only be used in single administrative regions.[3] ONAG further teaches that Names Servers in single administrative regions "contain identical data, and give identical results."[4] This is further supported by ONAG's teaching that changes made to network

---

[1] Greene Second Supplemental Report at ¶ 3.
[2] Final Office Action at 6-7; *see also id*. at 13-14.
[3] ONAG at 40-46.
[4] ONAG at 45.

objects in a particular region causes the network administrator to refresh the cache of the Names Servers, resulting in "[e]ach of the Names Servers [getting] a new copy of the relevant contents of the network definition database, making the data quickly available to all clients."[5] As such, a POSITA would understand that it is illogical to transfer anything, let alone a "portion" of data, from one Names Server to another because they already contain identical data. ONAG therefore does not teach or suggest transferring a portion of information from one Names Server to another names server, as required by claim 17, and in fact teaches away from it.

9. Even a network that includes multiple administrative regions where each administrative region is serviced by one or more Names Servers, the Names Servers within a single administrative region would still store identical information.[6] This is supported by ONAG's recommendation to include "at least two Names Servers" per administrative region. "If one Names Server is unavailable, clients will automatically forward requests to the other."[7] ONAG's recommendation of maintaining at least two Names Servers got automatic forwarding works because of the Names Servers' "identical data." That is, the client would not be able to resolve its query at a second Names Servers if the first Names Server was unavailable unless the first and second Names Servers stored identical information.

10. ONAG's teaching of adding names servers to improve performance does not suggest transferring a *portion* of information from a Names Server to a newly added one in a given region.[8] Rather, ONAG teaches that the newly added Names Server downloads all of the information from the cache of a well-known existing names server in the region.[9] For example,

---

[5] ONAG at 45.
[6] *See e.g., id*. at 42, 45, 60.
[7] *Id*. at 60.
[8] *Id*. at 42, 45, 173.
[9] *Id*. at 173.

3

ONAG teaches: "When a new Names Server enters a region, that new Names Server needs to find an existing well–known Names Server. When the new Names Server finds the existing well–known Names Server, it downloads the current cache information from the existing well–known Names Server and registers itself to all well–known Names Servers in that region, based on the cache information that it was given when it downloaded." [10] ONAG improves performance by adding more names servers to a given region to resolve client queries.[11] Because each Names Server in a region stores identical information, a client is able to query any names server in a region to resolve its query request. By adding additional Names Servers, a given Names Server is responsible for handling fewer queries. [12] As a result, ONAG is built such that Names Servers in a single administrative region (e.g., central administrative region or delegated administrative region) store identical data. Therefore, a POSITA would not be motivated or find it obvious to modify and/or combine ONAG with Boukobza or OracleUnleashed to transfer portions of location information from a first location server to a second location server based on the first location server reaching a predetermined performance limit. ONAG's teachings would discourage such a modification or combination.

### 2. Claim 23

11. In my opinion, the Office's findings regarding claim 23 are also incorrect. Claim 23 depends from claim 17 and is not obvious based on ONAG in view of Boukobza and/or ONAG in view of OracleUnleashed for at least the reasons discussed above.

12. The Office also contends "[i]t would have been obvious to one of ordinary skill in the art at the time of the Patent Owner's invention to modify the teachings of ONAG with the

---

[10] *Id*.
[11] *Id*. at 42, 45, 61.
[12] *Id*. at 61.

above teachings of Boukobza by applying the performance monitoring and tuning taught by Boukobza to the Names servers of ONAG such that the performance criterion comprises an amount of persistent storage space in the first location server…. It would have been obvious to one of ordinary skill in the art at the time of the Patent Owner's invention to modify the teachings of ONAG with the above teachings of OracleUnleashed by applying the performance monitoring and tuning taught by OracleUnleashed to the Names servers of ONAG such that the performance criterion comprises an amount of persistent storage space in the first location server."[13] I disagree for the further reason that the Office ignores that ONAG teaches that Names Servers store information in *non-persistent* memory.

13. ONAG's Names Servers store network addresses and their aliases in cache memory.[14] The cache memory acts as an in-memory database.[15] An in-memory database relies on main memory or Random Access Memory (RAM), which is non-persistent (or volatile) storage. If a Names Server crashes or goes down, all of the data in its cache is lost and must be reloaded.[16]

14. ONAG is designed to store network addresses and aliases in the cache of names server "to guarantee high performance."[17] Attempting to modify ONAG with Boukobza and/or OracleUnleashed to teach that "the performance criterion comprises an amount of available *persistent* storage space" would require modifying ONAG's architecture to allow the names servers to store the network addresses and aliases in persistent storage. ONAG does not teach or suggest that Names Servers are capable/configured to store network addresses and aliases in persistent storage. Furthermore, a POSITA would understand that ONAG's teaching regarding

---

[13] Final Office Action at 31 and 41.
[14] ONAG at 33, 37.
[15] *Id*. at 37.
[16] *Id*. at 34.
[17] *Id*. at 33.

5

system performance discourages storing network addresses and aliases in persistent storage as it would reduce performance, e.g., by requiring reading from a slow disk drive instead of fast RAM memory. Therefore, a POSITA would not modify or combine ONAG with Boukobza and/or OracleUnleashed to teach "the performance criterion comprises an amount of available *persistent* storage space" in a Names Server (i.e., the alleged location server), as required by claim 23, because the Names Servers store data in non-persistent storage.

### 3. Claim 30

15. In my opinion, the Office's findings regarding claim 30 are incorrect. Claim 30 depends from claim 17 and is not obvious based on ONAG in view of Boukobza and/or ONAG in view of OracleUnleashed for at least the reasons discussed above.

16. The Office also contends that ONAG in view of Boukobza satisfy this limitation because Boukobza states that "according to the idea of the invention and contrary to all expectation, the use of autonomous agents makes it possible to ensure the proper running of the monitored applications in all of the nodes by means of an autonomous and efficient process to rapidly feedback the useful information from the nodes to the management node and to automatically initiate actions on certain conditions or possibly to recommend an action …."[18] The Office further contends "One of ordinary skill in the art would have been motivated to make such modification in order reduce reaction time and network traffic by automatically making decisions on corrective actions (see paragraph bridging columns 1 and 2)."[19] I disagree for the further reason that the Office fails to consider that Boukobza never teaches automatically transferring data from a first server to a second server in response to the first server reaching a predefined limit.

---

[18] Boukobza at 2:39-56; *see also* Final Office Action at 32.
[19] Final Office Action at 33.

17. The Office relies on the following disclosure in Boukobza to allegedly teach transferring a portion of data from a first server to a second server when the first server reaches a predefined limit[20]:

> the parameter O[REDACTED]
> measurement c[REDACTED]
> corresponds to [REDACTED]
> extents ("MAX[REDACTED]
> space ("Tables[REDACTED]
> the table space,[REDACTED]
> an action prop[REDACTED]
> that the table s[REDACTED]
> according to th[REDACTED]
> either a file is a[REDACTED]
> space ("Tabl[REDACTED]
> or it requests [REDACTED]
> tables/impor[REDACTED]
> or the administ[REDACTED]
> his reorganiz[REDACTED]

18. However, Boukobza merely states that when a MAX_EXTENTS is encountered, the system *proposes* executing an export/import command.[21] Boukobza is completely silent with respect to *automatically* transferring data from a first server to a second server in response to the first server encountering a MAX_EXTENTS.

19. The Office further argues that ONAG in view of OracleUnleashed teaches claim 30 because OracleUnleashed states "Many of the features in Enterprise Manager can be customized according to each database, helping the DEA to monitor and manage multiple databases with ease. Manual intervention still has its place for many tasks, but the automation of most database systems has drastically increased with client/server technology … Just as important as monitoring and regular maintenance is auditing. Auditing is another way of monitoring the database, in that the

---

[20] Boukobza at 15:18-32.
[21] *Id*.

7

DEA can easily measure events that occur in it. After you have set up processes to audit the database's activity and monitor its elements, you can use job queues to schedule jobs at the database level. In other words, much of the monitoring and auditing process can be automated."[22] However, ONAG is completely silent with respect to *automatically* transferring data from a first server to a second server in response to the first server reaching a predefined limit, as required by claim 30. The Office's reliance on OracleUnleashed at page 448 is unavailing because it does not describe automating a transfer of data from a first server to a second server. Moreover, OracleUnleashed's disclosure does not teach or suggest transferring data from a first server to a second server when the first server reaches a predefined limit.

20. I also understand that Mr. Greene agrees that Oracle products, as described in OracleUnleashed, do not automatically partition based on a server reaching a predetermined performance limit[23]:

> A. … Oracle while it doesn't create partitioning automatically, it will create new partitions based on periodicity. So if you time base partition, that would be automated, but the decision to partition the table on a time base, for example, would be a decision of the application team.
> ***
> A. I'm not aware of any settings that would allow Oracle to automatically decide to partition in the table example a database, and for good reason.

### 4. Claim 24

21. I agree with the Office's conclusion regarding claim 24. As indicated in the Final Office Action, "The prior art of record fails to teach or suggest the performance criterion comprising a transaction rate."[24] Boukabza only describes monitoring the input/output rate per

---

[22] OracleUnleashed at 448; *see also* Final Office Action at 42.
[23] Draft Greene Depo Transcript at 11:22-12-2, 13:21-14:2.
[24] Final Office Action at 45.

second and is completely silent about transferring data from a first server to a second server when an input/output rate reaches a predetermined limit.[25] Similarly, OracleUnleashed does not teach or suggest transferring data from a first server to a second server when a transaction rate reaches a predetermined limit.

22. Therefore, for the reasons stated in the Final Office Action, and in my initial Rebuttal Expert Report, claim 24 is not obvious in view of ONAG in view of Boukobza and/or ONAG in view of OracleUnleashed.

### C. Claims 17, 23, 24, and 30 not obvious in view of the Office's cited prior art under AWS's alternative constructions

23. AWS's alternative construction requires that a "network" or "system," as recited by claim 17 (and as required by claims 23, 24, and 30 by virtue of their dependency to claim 17) be arranged in a non-hierarchical, cluster topology. As noted in my initial Rebuttal Report, I disagree with AWS's alternative construction. But if applied, based on AWS's added requirement, Mr. Greene's reliance on ONAG's disclosures regarding delegated (meaning multiple) administrative region configurations to allegedly teach the limitations of claim 17 fails because ONAG expressly teaches that delegated administrative region configurations require *hierarchically* arranged Names Servers.[26] "To delegate administrative regions, you must have a hierarchical naming model because each administrative region must control one or more different domains." ONAG also teaches that "[a]ll administrative regions other than the root are hierarchically delegated directly or indirectly from it."[27] ONAG further states that Names Servers in delegated administrative regions contact Names Servers in other regions through the root.[28]

---

[25] Boukobza at 34:43-51.
[26] ONAG at 45.
[27] *Id*. at 46.
[28] *Id*. at 50.

Therefore, in ONAG's delegated administrative region configuration the "network" or "system" in a non-hierarchical, cluster topology, as required by AWS's alternative construction.

24. Furthermore, as discussed above and in my initial Rebuttal Report, ONAG teaches that Names Servers in a single administrative region store identical data and provide identical results.[29] ONAG therefore does not teach or suggest transferring *portions* of data from a first server to a second server in a single administrative region, and rather teaches away from such activity because there would be no need for it. Therefore, a POSA would not be motivated or find it obvious to modify and/or combine ONAG with Boukobza or OracleUnleashed to transfer portions of location information from a first location server to a second location server based on the first location server reaching a predetermined performance limit.

25. Based on the reasons above and for the reasons stated in my initial Rebuttal Expert Report, claims 17, 23, 24, and 30 are not obvious in view of ONAG in view of Boukobza and/or ONAG in view of OracleUnleashed based on AWS's alternative constructions.

### III. CLAIMS 17, 23, 24, AND 30 ARE NOT OBVIOUS BASED ON SKAGERWALL, STEEN, YOCUM, AND/OR BOUKOBZA

26. In my opinion, Skagerwall, Steen, Yocum, and/or Boukobza do not render claims 17, 23, 24, and 30 obvious for the reasons stated in my initial Rebuttal Expert Report. The findings of the Office and Mr. Greene's Second Supplemental Report do not alter my opinion.

27. I note that the Office did not reject the claims based on Skagerwall and/or Steen. Furthermore, the Final Office Action indicated that Yocum (in combination with Ault and Boukobza did not render claims 17, 23, 24, and 30 obvious.[30]

---

[29] *Id*. at 45.
[30] Final Office Action at 20.

28. Additionally, Skagerwall, Steen, Yocum, and/or Boukobza are silent regarding transferring data from a first server to a second server *when* a transaction rate reaches a predetermined limit, as required by claim 24. Furthermore, Skagerwall, Steen, Yocum, and/or Boukobza are silent about *automatically* transferring data from a first server to a second server when the first server reaches a predetermined performance limit, as required by claim 30.

## IV. KOVE'S SECONDARY CONSIDERATIONS INDICATE NON-OBVIOUNESS

29. In my opinion, Kove's secondary considerations indicate non-obviousness for the reasons indicated in my initial Rebuttal Expert Report.