# Exhibit K96



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,109 | 08/31/2022 | 7233978 | | 3927 |

| | | | | |
|---|---|---|---|---|
| 184647 | 7590 | 04/03/2023 | | |

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway
Suite 300
Redwood City, CA 94065

| EXAMINER |
|---|
| SORRELL, ERON J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/03/2023 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

FISCH SIGLER LLP
5301 WISCONSIN AVENUE NW, SUITE 400
WASHINGTON, DC 20015

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,109* .

PATENT UNDER REEXAMINATION *7233978* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a. ☑ Responsive to the communication(s) filed on <u>31 August 2022</u>.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b. ☐ This action is made FINAL.

c. ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

    1. ☐ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.

    2. ☐ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____.

Part II    SUMMARY OF ACTION

    1a. ☑ Claims <u>17-31</u> are subject to reexamination.

    1b. ☑ Claims <u>1-16</u> are not subject to reexamination.

    2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

    3. ☑ Claims <u>18-22,25-29 and 31</u> are patentable and/or confirmed.

    4. ☑ Claims <u>17,23-24 and 30</u> are rejected.

    5. ☐ Claims _____ are objected to.

    6. ☐ The drawings, filed on _____ are acceptable.

    7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b) ☐ disapproved.

    8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. 119(a)-(d) or (f).

        a) ☐ All  b) ☐ Some* c) ☐None    of the certified copies have

        1 ☐ been received.

        2 ☐ not been received.

        3 ☐ been filed in Application No. _____.

        4 ☐ been filed in reexamination Control No. _____.

        5 ☐ been received by the International Bureau in PCT application No. _____.

        * See the attached detailed Office action for a list of the certified copies not received.

    9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

    10. ☐ Other: _____

### *Brief Summary of the Proceeding*

A Third Party Requester, Amazon Web Services, requested Ex Parte Reexamination of claims 17, 23, 24, and 30 of U.S. Patent No. 7,233,978 to Overton et al. ("the '978 Patent"). The Request for Ex Parte Reexamination ("the Request") was granted a filing date of August 31, 2022.

The Request was found to raise at least one substantial new question of patentability with respect to at least one of the challenged claims and an Order granting said Request was mailed November 11, 2022. The Order indicated that claims 17-30 would subject to reexamination with claims 18-22 and 25-29 being added by the Examiner sua sponte pursuant to MPEP § 2243 because those all depend from independent claims found to have a substantial new question of patentability.

### *Status of the Claims*

Claims 17-30 are subject to reexamination;

Claims 17, 23, 24, and 30 are rejected;

Claims 18-22 and 25-29 are confirmed over the prior art of record.

### *Listing of Prior Art*

The following patents and/or printed publications are cited in this proceeding:

i.    Oracle Names Administrator's Guide, Release 2.0 (Oracle
      Corp., Redwood City, CA), published 1996 ("ONAG");

ii.   U.S. Patent No. 6,122,664 to Marcel Boukobza, filed on June
      27, 1997, issued September 19, 2000 ("Boukobza");

iii.  Joseph B. Greene, Oracle8 Server Unleashed, 1st ed. (Sams
      Publishing, Indianapolis, Ind.), ISBN: 0672306816,
      published October 1, 1995 ("OracleUnleashed");

iv.   U.S. Patent No. 5,617,568 to Michael B. Ault, filed on
      December 14, 1994, issued April 1, 1997 ("Ault"); and

v.    U.S. Patent No. 6,230,183 to Peter B. Yocum, filed on March
      11, 1998, issued May 8, 2001 ("Yocum").

### *Review of Affirmed SNQs*

SNQ I: ONAG in view of Boukobza was found to raise SNQs over
claims 17, 23, 24, and 30.

SNQ II: ONAG in view of OracleUnleashed was found to raise SNQs
over claims 17, 23, 24, and 30.

SNQ III: Ault in view of Yocum and Boukobza was found to raise

SNQs over claims 17, 23, 24, and 30.


## Claim Construction

The '978 Patent has expired, thus pursuant to MPEP 2258,

the claims will be interpreted under the standard set in

Phillips v AWH Corp.


## Claim Rejections - 35 USC § 103

The following is a quotation of pre-AIA 35 U.S.C. 103(a)

which forms the basis for all obviousness rejections set forth

in this Office action:

> (a) A patent may not be obtained though the invention is not
> identically disclosed or described as set forth in section 102, if
> the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have
> been obvious at the time the invention was made to a person having
> ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the
> invention was made.


### I.   ONAG in view of Boukabza

Claims 17, 23, 24, and 30 are rejected under pre-AIA 35

U.S.C. 103(a) as being unpatentable over ONAG in view of

Boukobza.


Referring to claim 17, ONAG teaches a method in a location

server (ONAG teaches a Names server which is a location server

as it makes network address and database link information
available to all nodes throughout the network. ONAG at page 20,
"*Oracle Names makes network address and database link
information available to all nodes throughout the network. Each
database server's network address is stored with a name that is
used to identify it. Client applications can then request a
database connection with a simple name rather than a lengthy
address.*") in a system having a plurality of location servers
for storing and retrieving location information, wherein each of
the plurality of location servers stores unique set of location
information of an aggregate set of location information (ONAG
discloses embodiments wherein the Names server is one of many
location servers, arranged as a hierarchy and distributed over a
large geographic area, each storing unique information of an
aggregate set of location information. ONAG discloses a process
of resolving a Name across administrative regions wherein a
Names server is asked for the address of a NAMES server
servicing a grandchild region of the root and the root only
knows the addresses of one of its direct children. See ONAG at
pages 190-191 and Figure C-4 reproduced below:

Figure C – 4 shows this process and the sequence of events assuming
that no data has been previously cached.

1. The client sends request to preferred Names Server in its local
region (DR1).

2. The preferred Names Server in DR1 issues request for the Names
Servers authoritative for the destination server (in region DR2.3).



Figure C – 4  Network Messages in a Multi-Level Foreign Name Resolution

3.  The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2.

4.  The receiving server in DR2 forwards the request to a Names Server in region DR2.1.

5.  The name is retrieved from its authoritative Names Server in DR2.1.

6.  The names Server in region DR2 caches the answer and returns it to the root.

7.  The root caches the answer and returns it to the preferred Names Server in region DR1.

8.  The preferred Names Server caches the answer and returns it to the client.

9.  The client establishes a connection to the destination server.

), the method comprising:

providing a transfer protocol configured to transport identifier and location information (see page 43, *"A SQL\*Net community is a group of machines that can communicate using the same protocol. Clients, servers, Interchanges, and Names Server can be members of one or more communities…"*), the location information specifying the location of information related to the identifier (see pages 42-43, *"A client can request a network*

*service within its default domain using the service's simple,*

*unqualified name, that is, without specifying a domain name. If*

*a user requests a name without a '.' character in it, the*

*default domain name will be automatically appended to the*

*database service or database link name requested."* and see also

See page 20, *"Oracle Names makes network address and database*

*link information available to all nodes throughout the network.*

*Each database server's network address is stored with a name*

*that is used to identify it. Client applications can then*

*request a database connection with a simple name rather than a*

*lengthy address."*);

storing location information formatted according to the

transfer protocol at a first location server (see pages 32-33,

*"Each Oracle Names Server contains: the cache – the Names cache*

*is an in-memory database of app data required to resolve names.*

*The cache contains the following types of data: system*

*information—includes the* **service addresses** *of all of the Names*

*Servers. registration information—includes all registered TNS*

*services which includes other Names Servers and information*

*automatically generated by the Names Server when it was*

*installed."* See also page 20, *"Each database* **server's network**

**address** *is stored with a name that is used to identify it."*);

receiving an identifier and a location relevant to the

identifier at the first location server (see page 22, *"Oracle*

*Names eases the burden of administering the details of the*

*network. If the address of a network object changes, the change*

*is made in one place, and all clients get the benefit of the*

*change immediately. Any number of clients have access to a*

*network object's address from a single source."*);

storing the received location in a location store at the

first data location server (see page 22, *"Oracle Names eases the*

*burden of administering the details of the network. If the*

*address of a network object changes, the change is made in one*

*place, and all clients get the benefit of the change*

*immediately. Any number of clients have access to a network*

*object's address from a single source."* See also page 23, *"An*

*Oracle Names Server stores names and addresses for network*

*services such as databases or MultiProtocol Interchanges,*

*database link definitions, and object aliases. The Names Server*

*stores the following types of objects, which are described*

*below: database service names—The service name is the global*

*database name that is mapped to the SOL\*Net connect*

*descriptor."*), the location store comprising a plurality of

identifiers, each identifier associated with at least one

location (see page 23, *"aliases—You can assign service name*

*aliases as alternate names for any defined database service or*

*database link. Service name aliases are resolved as if they were*

*the original object."*), wherein the received location is

associated with the received identifier in the location store

(see page 22, *"Oracle Names eases the burden of administering*

*the details of the network. If the address of a network object*

*changes, the change is made in one place, and all clients get*

*the benefit of the change immediately."*);

ONAG appears to fail to explicitly disclose the method

scales at least one of capacity and transaction rate capability

and fails to teach transferring a portion of the identifiers and

associated locations to a second data location server when a

performance criterion of the first location server reaches a

predetermined performance limit.

Boukabza teaches, in an analogous system, scaling at least

one of capacity and transaction rate capability in a server in a

system comprising one or more servers by adding an additional

server in order to improve performance (see lines 60-67 of

column 33, *"If the average number of queued requests is >10 (the*

*example 10 is slightly greater than the average number of active*

*clients requesting a service from the server) then action to add*

*a server (up to the max)."*).

Boukabza in analogous to the claimed invention because they

are both directed toward performance monitoring and tuning and a

network environment.

It would have been obvious to one of ordinary skill in the art at the time of the Patent Owner's invention to modify the teachings of ONAG with the above teaching so Boukabza. One of ordinary skill in the art would have been motivated to make such modification in order to reduce wait time for client requests as suggested by Boukabza.

Boukabza further teaches transferring a portion of database from a first storage device to a second storage device (see lines 18-32 of column 15, "*[T]he parameter 'ORA-- FRAGMENT—TS', in which the measurement consists of verifying the condition which corresponds to the case in which the largest of the extents ("MAX—EXTENTS') of the tables of the table space ("Tablespace") is smaller than the largest hole of the table space, and* **if this condition is true, of sending an action proposition window in which it is indicated that the table space ('Tablespace') must be reorganized according to the following propositions:** *either a file is automatically created to enlarge the table space ('Tablespace'),* **or it requests when a standard 'export-- operation-- tables/import' command is to be executed,** *or the administrator is requested to program the start of his reorganization utility. the parameter "ORA—SCANLOG', in which the Oracle errors to be processed in the file 'alert.log' are predefined. A predefined action class corresponds to each error."* See also lines 10-16 of column 32, "*comparison of the*

*actual number of 'extents' with the maximum allowed "MAXEXTENTS"*

*(defined at the creation of the object, in the clause*

*'STORAGE?'). In this case, the application using the table will*

*be suspended ('abort'). This incident must be prevented. Action*

*'ORA MAX EXT?' if the object reaches its 'maxextents'. Recording*

*in 'actionlog.'"*).

It would have been obvious to one of ordinary skill in the
art at the time of the Patent Owner's invention such that a
portion of the identifiers and associated locations are
transferred to a second location server when the performance
criterion of the first location server reach a predetermined
threshold. Such a modification would only require
exporting/importing a portion of the identifiers and associated
locations from the first Names server to the added second Names
server. Boukabza suggests such corrective actions. One of
ordinary skill would have been motivated to make such
modification in order to prevent possible application suspending
errors from occurring as suggested by Boukabza (see lines 14-15
of column 32, *"this incident must be prevented."*).

Referring to claim 23, the combination of ONAG and Boukabza
teaches the method of claim 17, as shown above, and Boukabza
further teaches wherein the performance criterion comprises an

amount of available persistent storage space in the first

storage device (see line 66 of column 31 to line 28 of column

32. See also lines 43-51 of column 34, "*Finally, relative to*

*specific module 'system', it must be possible, among other*

*things, to monitor and measure the cpu time, the disk space, the*

*inputs/outputs, the storage, the exchange rate, the number of*

*users, the pagination, the network, etc. Thus it is possible,*

*for example, to measure the cpu utilization per second, with*

*default display, or the input/output rate per second, or to*

*identify the processors which are the largest users of cpu and*

*collect them in order to perform an autonomous analysis*

*('offline', tbc)."*).

It would have been obvious to one of ordinary skill in the

art at the time of the Patent Owner's invention to modify the

teachings of ONAG with the above teachings of Boukabza by

applying the performance monitoring and tuning taught by

Boukabza to the Names servers of ONAG such that the performance

criterion comprises an amount of persistent storage space in the

first location server. One of ordinary skill in the art would

have been motivated to make such modification in order to ensure

proper running of all monitored applications and to

automatically initiate corrective action thus increasing overall

performance by minimizing potential system downtime as suggested

by Boukabza (see paragraph bridging columns 34 and 35).


        Referring to claim 24, the combination of ONAG and

Boukabza teaches the method of claim 17, as shown above, and

Boukabza further teaches the performance criterion comprises a

transaction rate limit (See also lines 43-51 of column 34,

"*Finally, relative to specific module 'system', it must be*

*possible, among other things, to monitor and measure the cpu*

*time, the disk space, the inputs/outputs, the storage, the*

*exchange rate, the number of users, the pagination, the network,*

*etc. Thus it is possible, for example, to measure the* cpu

utilization per second, *with default display, or the*

**input/output rate per second**, *or to identify the processors*

*which are the largest users of cpu and collect them in order to*

*perform an autonomous analysis ('offline', tbc).*").

        It would have been obvious to one of ordinary skill in the

art at the time of the Patent Owner's invention to modify the

teachings of ONAG with the above teachings of Boukabza by

applying the performance monitoring and tuning taught by

Boukabza to the Names servers of ONAG such that the performance

criterion transaction rate limit of the first location server.

One of ordinary skill in the art would have been motivated to

make such modification in order to improve response time to

client requests.



    Referring to claim 30, the combination of ONAG and

Boukabza teaches the method of claim 17, as shown above, and the

combination further discloses transferring a portion of the

identifiers and associated locations to a second location server

when a performance criterion of the first data location server

reaches a predetermined performance limit further comprises

monitoring the performance criterion and automatically

transferring the portion of identifiers and associated locations

when the first location server reaches the predetermined limit

(See lines 39-56 of column 2 *"Thus, according to the idea of the*

*invention and contrary to all expectation, the use of autonomous*

*agents makes it possible to ensure the proper running of the*

*monitored applications in all of the nodes by means of an*

*autonomous and efficient process, to rapidly feed back the*

*useful information from the nodes to the management node, and to*

***automatically initiate actions*** *on certain conditions or possibly*

*to recommend an action…"*).

    It would have been obvious to one of ordinary skill in the

art at the time of the of the Patent Owners invention to modify

the teachings of ONAG with the above teachings of Boukabza such

that the transferring of the portion of identifiers and

associated locations are automatically transferred when the

performance criterion reaches the predetermined limit. One of

ordinary skill in the art would have been motivated to make such

modification in order reduce reaction time and network traffic

by automatically making decisions on corrective actions (see

paragraph bridging colunms 1 and 2).


## II. ONAG in view of OracleUnleashed

Claims 17, 23, 24, and 30 are rejected under pre-AIA 35

U.S.C. 103(a) as being unpatentable over ONAG in view of

OracleUnleashed.


Referring to claim 17, ONAG teaches a method in a location

server (ONAG teaches a Names server which is a location server

as it makes network address and database link information

available to all nodes throughout the network. ONAG at page 20,

*"Oracle Names makes network address and database link

information available to all nodes throughout the network. Each

database server's network address is stored with a name that is

used to identify it. Client applications can then request a

database connection with a simple name rather than a lengthy

address."*) in a system having a plurality of location servers

for storing and retrieving location information, wherein each of

the plurality of location servers stores unique set of location

information of an aggregate set of location information (ONAG

discloses embodiments wherein the Names server is one of many

location servers, arranged as a hierarchy and distributed over a

large geographic area, each storing unique information of an

aggregate set of location information. ONAG discloses a process

of resolving a Name across administrative regions wherein a

Names server is asked for the address of a NAMES server

servicing a grandchild region of the root and the root only

knows the addresses of one of its direct children. See ONAG at

pages 190-191 and Figure C-4 reproduced below:

Figure C – 4 shows this process and the sequence of events assuming
that no data has been previously cached.

1. The client sends request to preferred Names Server in its local
   region (DR1).

2. The preferred Names Server in DR1 issues request for the Names
   Servers authoritative for the destination server (in region DR2.1).



Figure C – 4  Network Messages in a Multi-Level Foreign Name Resolution

3.  The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2.

4.  The receiving server in DR2 forwards the request to a Names Server in region DR2.1.

5.  The name is retrieved from its authoritative Names Server in DR2.1.

6.  The names Server in region DR2 caches the answer and returns it to the root.

7.  The root caches the answer and returns it to the preferred Names Server in region DR1.

8.  The preferred Names Server caches the answer and returns it to the client.

9.  The client establishes a connection to the destination server.

), the method comprising:

providing a transfer protocol configured to transport identifier and location information (see page 43, "*A SQL\*Net community is a group of machines that can communicate using the same protocol. Clients, servers, Interchanges, and Names Server can be members of one or more communities…*"), the location information specifying the location of information related to the identifier (see pages 42-43, "*A client can request a network*

*service within its default domain using the service's simple,*

*unqualified name, that is, without specifying a domain name. If*

*a user requests a name without a '.' character in it, the*

*default domain name will be automatically appended to the*

*database service or database link name requested."* and see also

See page 20, *"Oracle Names makes network address and database*

*link information available to all nodes throughout the network.*

*Each database server's network address is stored with a name*

*that is used to identify it. Client applications can then*

*request a database connection with a simple name rather than a*

*lengthy address."*);

storing location information formatted according to the

transfer protocol at a first location server (see pages 32-33,

*"Each Oracle Names Server contains: the cache – the Names cache*

*is an in-memory database of app data required to resolve names.*

*The cache contains the following types of data: system*

*information—includes the* **service addresses** *of all of the Names*

*Servers. registration information—includes all registered TNS*

*services which includes other Names Servers and information*

*automatically generated by the Names Server when it was*

*installed."* See also page 20, *"Each database* **server's network**

**address** *is stored with a name that is used to identify it."*);

receiving an identifier and a location relevant to the

identifier at the first location server (see page 22, *"Oracle*

*Names eases the burden of administering the details of the*

*network. If the address of a network object changes, the change*

*is made in one place, and all clients get the benefit of the*

*change immediately. Any number of clients have access to a*

*network object's address from a single source."*);

storing the received location in a location store at the

first data location server (see page 22, "*Oracle Names eases the*

*burden of administering the details of the network. If the*

*address of a network object changes, the change is made in one*

*place, and all clients get the benefit of the change*

*immediately. Any number of clients have access to a network*

*object's address from a single source."* See also page 23, "*An*

*Oracle Names Server stores names and addresses for network*

*services such as databases or MultiProtocol Interchanges,*

*database link definitions, and object aliases. The Names Server*

*stores the following types of objects, which are described*

*below: database service names—The service name is the global*

*database name that is mapped to the SOL\*Net connect*

*descriptor.*"), the location store comprising a plurality of

identifiers, each identifier associated with at least one

location (see page 23, "*aliases—You can assign service name*

*aliases as alternate names for any defined database service or*

*database link. Service name aliases are resolved as if they were*

*the original object.*"), wherein the received location is

associated with the received identifier in the location store

(see page 22, *"Oracle Names eases the burden of administering*

*the details of the network. If the address of a network object*

*changes, the change is made in one place, and all clients get*

*the benefit of the change immediately."*);

ONAG appears to fail to explicitly disclose the method

scales at least one of capacity and transaction rate capability

and fails to teach transferring a portion of the identifiers and

associated locations to a second data location server when a

performance criterion of the first location server reaches a

predetermined performance limit.

OracleUnleashed teaches, in an analogous system, scaling at

least one of capacity and transaction rate capability by

transferring a portion of the identifiers and associated

locations to a second storage device when a performance

criterion of the first storage device reaches a predetermined

performance limit (OracleUnleashed at 424-425, *"…Partitioning*

*enhances Oracle's support for very large databases as*

*partitioning breaks tables and indexes into smaller, easier-to-*

*manage pieces, storing these pieces at the tablespace level…*

*…Partitioning greatly enhances database performance. This*

*performance can be monitored and adjusted in a variety of*

*manors… …Oracle8 partitioning has many features that make*

*partitions easy to create, move, split, and so on."* See also

page 840, *"Data management involves backup, recovery, moving*

*data in and out of the database, and data reorganization in*

*order to take care of fragmentation and performance problems. In*

*Oracle7 the unit of data management was the table, while in*

*Oracle8 the unit of data management is a partition. As the table*

*grows in size, the partition does not necessarily grow in size;*

*instead, the number of partitions increases. Parallel data loads*

*can be performed resulting in faster data loads. Partitions also*

*allow a part of the table to be relocated to another drive."* See

also pages 443-444, wherein OracleUnleashed discusses

performance monitoring of specific criteria MAXEXTENTS, *"There*

*are three main reasons to monitor a UNIX and/or a database*

*server. The first is to be proactive rather than reactive with*

*error resolution. Downtime can be minimized if the*

*administrators know, for example, that certain dynamic objects*

*are about to reach their MAXEXTENTS. This can be easily*

*monitored and corrected without the end user even being aware*

*that there was almost an application-stopping problem. A*

*reactive approach to this example would be the end user getting*

*the MAXEXTENTS error, called the help desk or administrator, and*

*waiting."*).

It would have been obvious to one of ordinary skill in the

art at the time of the of the Patent Owners invention to modify

the teachings of ONAG with the above teachings of

OracleUnleashed such that Names servers are monitored for a

performance related criterion reaching a predetermined

performance limit and partitioning the Names server by

transferring a portion of the identifiers and locations to

another Names server. One of ordinary skill in the art would

have been motivated to make such modification in order to

proactively monitor and correct any potential problems instead

of reacting to the error after it as occurred as suggested by

OracleUnleashed (see pages 443-444).


       Referring to claim 23, the combination of ONAG and

OracleUnleashed teaches the method of claim 17, as shown above,

and OracleUnleashed further teaches wherein the performance

criterion comprises an amount of available persistent storage

space in the first storage device (see page 435, OracleUnleashed

at 435, *"Oracle manages its space inside the tablespace in units*

*called extents… Extents are preallocated units of disk space*

*assigned individually to data-oriented objects… Datablocks are*

*inserted until the percent of the block is within PCT-FREE of*

*being full. Inserts will not be allowed again in the data blocks*

*until the percentage of free space reaches PCT USED. Free space*

*in blocks is accomplished through deletes or updates that make*

*fields smaller.")*.


It would have been obvious to one of ordinary skill in the

art at the time of the Patent Owner's invention to modify the

teachings of ONAG with the above teachings of OracleUnleashed by

applying the performance monitoring and tuning taught by

OracleUnleashed to the Names servers of ONAG such that the

performance criterion comprises an amount of persistent storage

space in the first location server. One of ordinary skill in the

art would have been motivated to make such modification in order

to proactively monitor and correct any potential problems

instead of reacting to the error after it as occurred as

suggested by OracleUnleashed (see pages 443-444).



Referring to claim 24, the combination of ONAG and

OracleUnleashed teaches the method of claim 17, as shown above,

and OU further teaches the performance criterion comprises a

transaction rate limit (see OracleUnleashed pages 449-450,

*"Transactional processing is the activity engaged in by end*

*users in the population and manipulation of data in the database*

*for a particular application… …It is the DBA's responsibility to*

*periodically monitor the database during peak transactional*

*activity, searching for bottlenecks and resource contention. One*

*of the primary concerns with transactional activity is the*

*management of the rollback segments. The database should be able*

*to handle all concurrent transactions effectively. If the*

*database is not monitored during transactional activity and*

*adjusted appropriately, company productivity will inevitably*

*suffer."* See also page 221. *"If you run out of transaction space*

*for a table, new transactions have to wait until transaction*

*space is freed up by existing transactions completing."*).

It would have been obvious to one of ordinary skill in the

art at the time of the Patent Owner's invention to modify the

teachings of ONAG with the above teachings of OracleUnleashed by

applying the performance monitoring and tuning taught by

OracleUnleashed to the Names servers of ONAG such that the

performance criterion transaction rate limit of persistent

storage space in the first location server. One of ordinary

skill in the art would have been motivated to make such

modification in order to prevent delays resulting from a lack of

transaction space as suggested by OracleUnleashed (see pages

449-450).

Referring to claim 30, the combination of ONAG and

OracleUnleashed teaches the method of claim 17, as shown above,

and ONAG as modified by OracleUnleashed suggests transferring a

portion of the identifiers and associated locations to a second

location server when a performance criterion of the first data

location server reaches a predetermined performance limit

further comprises monitoring the performance criterion and

automatically transferring the portion of identifiers and

associated locations when the first location server reaches the

predetermined limit (see page 448, *"Many of the features in

Enterprise Manager can be customized according to each database,

helping the DBA to monitor and manage multiple databases with

ease. Manual intervention still has its place for many tasks,

but the automation of most database systems has drastically

increased with client/server technology."* see also page 448,

*"Just as important as monitoring and regular maintenance is

auditing. Auditing is another way of monitoring the database, in

that the DBA can easily measure events that occur in it. After

you have set up processes to audit the database's activity and

monitor its elements, you can use job queues to schedule jobs at

the database level. In other words, much of the monitoring and

auditing process can be automated."*).

It would have been obvious to one of ordinary skill in the

art at the time of the of the Patent Owners invention to modify

the teachings of ONAG with the above teachings of

OracleUnleashed such that the transferring of the portion of

identifiers and associated locations are automatically

transferred when the performance criterion reaches the

predetermined limit. One of ordinary skill in the art would have

been motivated to make such modification in order relieve the

DBA of as many manual tasks as possible freeing up time for

other activities as suggested by OU (See page 448).


## III. Ault in view of Yocum and Boukabza

Claims 17, 23, 24, and 30 are rejected under pre-AIA 35

U.S.C. 103(a) as being unpatentable over Ault in view of Yocum

and further in view of Boukobza.


Referring to claim 17, Ault teaches a method in a location

server in a system for storing and retrieving location

information (see file set location server 64 in figure 7) (see

lines 1-9 of column 6, "*The file set location server maintains a*

*database 66 of all file sets. This database is utilized to keep*

*track of the physical locations where file sets are stored. If a*

*DFS client 52 requires access to one of the file sets, it sends*

*a request first to the file set location server/database 64, 66*

*to inquire about the physical location of the file set, After*

*receiving location information, the client 52 then contacts the*

*actual particular DFS file server 54 wherein the*

*particular file set or file system 56 resides."*), the method
comprising:

providing a transfer protocol configured to transport
identifier and location information, the location information
specifying the location of information related to the identifier
(see lines 1-9 of column 6, *"If a DFS client 52 requires access*
*to one of the file sets, it sends a request first to*
*the file set location server/database 64, 66 to inquire about*
*the physical location of the file set, After receiving location*
*information, the client 52 then contacts the actual particular*
*DFS file server 54 wherein the particular file set or file*
*system 56 resides."* See also lines 10-13 of column 7,
*"Nevertheless, this functionality must be provided for OS/2*
*clients prior to the availability of such support for these*
*attributes through DFS protocols."*);

storing location information (see lines 62 of column 5 to
line 9 of column 6, *"The file set location server maintains a*
*database 66 of all file sets.*);

receiving an identifier and a location relevant to the
identifier at the first location server (see lines 62 of column
5 to line 9 of column 6, *"DFS server systems desiring to export*
*file sets must register their export file sets at a system known*
*as the file set location server 64. The file set location server*
*maintains a database 66 of all file sets. This database is*

*utilized to keep track of the physical locations where file sets are stored."*);

storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store (see lines 62 of column 5 to line 9 of column 6, *"The file set location server maintains a database 66 of all file sets. This database is utilized to keep track of the physical locations where file sets are stored. If a DFS client 52 requires access to one of the file sets, it sends a request first to the file set location server/database 64, 66 to inquire about the physical location of the file set."*).

Ault fails to teach the method comprises scaling at least one of a capacity and a transaction rate in a system comprising a plurality of location servers wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information, however Ault does at least suggest the system may comprise multiple location servers (see 58-62 of column 6, *"Secondly, at least one file set location database machine 72 is required and at least one system control machine 74 per administrative domain."*). Ault also does not appear to specifically disclose storing location

information *formatted* **according to the transfer protocol at the first location server** (emphasis added). Further, Ault and fails to teach transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit.

Yocum teaches, in an analogous method, scaling at least one of capacity and transaction rate in a system comprising multiple servers by adding a server to improve performance when a performance criterion of a first server reaches a predetermined threshold (see lines 13-23 of column 1, "*Since the frequency at which the incoming requests arrive may not be readily controlled, the principal means of controlling system performance (measured by queue delay or the like) in such a queued system is to control the number of servers. Thus, it is known in the art to start an additional server when the length of the queue being served reaches a certain high threshold or to stop a server when the length of the queue being served reaches a certain low threshold.*").

Yocum is analogous to the claimed invention because both are directed toward performance monitoring in a network system.

It would have been obvious to one of ordinary skill in the art at the time of the Patent Owner's invention to modify the method of Ault with the above teachings of Yocum such that the

system adds a server when the performance criterion of a first

server reaches a predetermined threshold to improve performance

and thereby scaling one of capacity of transaction rate

capability. One of ordinary skill would have been motivated to

make such modification in order to reduce wait times for the

clients requesting location services. Additionally, Ault

suggests the system may comprise a plurality of location servers

(see 58-62 of column 6, *"Secondly, at least one file*

*set location database machine 72 is required and at least one*

*system control machine 74 per administrative domain. A backup*

*database machine and tape coordinator 76 are optional."*).

   The combination of Ault and Yocum fails specifically

disclose storing location information formatted according to the

transfer protocol at a first location server. The combination

also fails to disclose transferring a portion of the identifiers

and associated locations to a second data location server when a

performance criterion of the first location server reaches a

predetermined performance limit, and that each of the plurality

of location servers stores unique set of location information of

an aggregate set of location information.

   Boukabza teaches, in an analogous method, storing

information formatted according to the transfer protocol at a

first server (see lines 24-32 of column 1, *"Management*

*information base services, usually referred to by one skilled in*

*the art as MIBs (Management Information Bases), allow management*

*applications to manipulate this management information; these*

*services preferably use the applicable standards such as the OSI*

*CMIS/CMIP (Open Systems Interconnection Common Management*

*Information Services/Common Management Information Protocol) and*

*Internet SNMP (Simple Network Management Protocol) Standards.");*

Boukabza in analogous to the claimed invention because they
are both directed toward performance monitoring and tuning and a
network environment.

It would have been obvious to one of ordinary skill in the
art at the time of the Patent Owner's invention to modify the
combination of Ault and Yocum with the above teachings of
Boukabza such that the location information is stored according
to the transfer protocol in order to be able to properly
manipulate the managed data as suggested by Boukabza (see lines
24-32 of column 1).

Boukabza further teaches transferring a portion
information from a first storage device to a second storage
device when a performance criterion of the first storage device
reached a predetermined threshold (see lines 18-32 of column 15,
"*[T]he parameter 'ORA-- FRAGMENT— TS', in which the measurement*

*consists of verifying the condition which corresponds to the*

*case in which the largest of the extents ("MAX—EXTENTS') of the*

*tables of the table space ('Tablespace') is smaller than the*

*largest hole of the table space, and if this condition is true,*

*of sending an action proposition window in which it is indicated*

*that the table space ('Tablespace') must be reorganized*

*according to the following propositions: either a file is*

*automatically created to enlarge the table space ('Tablespace'),*

*or it requests when a standard 'export-- operation--*

*tables/import' command is to be executed, or the administrator*

*is requested to program the start of his reorganization utility.*

*the parameter "ORA—SCANLOG', in which the Oracle errors to be*

*processed in the file 'alert.log' are predefined. A predefined*

*action class corresponds to each error."* See also lines 10-16 of

column 32, *"comparison of the actual number of 'extents' with*

*the maximum allowed 'MAXEXTENTS' (defined at the creation of the*

*object, in the clause 'STORAGE'). In this case, the application*

*using the table will be suspended ('abort'). This incident must*

*be prevented. Action 'ORA MAX EXT?' if the object reaches its*

*'maxextents'. Recording in 'actionlog.'"*).

It would have been obvious to one of ordinary skill in the

art at the time of the Patent Owner's invention to modify the

combination of Ault, Yocum and Boukabza with the above further

teachings of Boukabza such that a portion of the identifiers and

associated locations are transferred to a second location server

when the performance criterion of the first location server

reaches a predetermined threshold. Said modification would

result in each of the plurality of location servers storing a

unique set of location information of an aggregate set of

location information. Boukabza suggests such corrective actions

(see lines 18-32 of column 15). One of ordinary skill would have

been motivated to make such modification in order to prevent

possible application suspending errors from occurring as

suggested by Boukabza (see lines 14-15 of column 32, *"…this

incident must be prevented."*).


Referring to claim 23, the combination of Ault, Yocum, and

Boukabza teaches the method of claim 17, as shown above, and

Boukabza further teaches the performance criterion comprises an

amount of available persistent storage space in the first

storage device(see line 66 of column 31 to line 28 of column 32.

See also lines 43-51 of column 34, *"Finally, relative to

specific module 'system', it must be possible, among other

things, to monitor and measure the cpu time, the disk space, the

inputs/outputs, the storage, the exchange rate, the number of

users, the pagination, the network, etc. Thus it is possible,

for example, to measure the cpu utilization per second, with

default display, or the input/output rate per second, or to

identify the processors which are the largest users of cpu and*

*collect them in order to perform an autonomous analysis*

*('offline', tbc).")*.

It would have been obvious to one of ordinary skill in the art at the time of the Patent Owner's invention to modify the prior art combination with the above further teachings of Boukabza such the performance monitoring and tuning disclosed by Boukabza is applied to the location servers and the performance criterion comprises an amount of persistent storage space in the first location server. One of ordinary skill in the art would have been motivated to make such modification in order to ensure proper running of all monitored applications and to automatically initiate any corrective action thus increasing overall performance as suggested by Boukabza (see paragraph bridging columns 34 and 35).

Referring to claim 24, the combination of Ault, Yocum, and Boukabza teaches the method of claim 17, as shown above, and Yocum further teaches wherein the performance criterion comprises a transaction rate limit (see lines 13-23 of column 1, *"Systems in which incoming work requests are placed in a queue for assignment to an available server are well known in the art. Since the frequency at which the incoming requests arrive may not be readily controlled, the principal means of controlling*

*system performance (measured by queue delay or the like) in such*

*a queued system is to control the number of servers. Thus, it is*

*known in the art to start an additional server when the length of*

*the queue being served reaches a certain high threshold or to*

*stop a server when the length of the queue being served reaches a*

*certain low threshold.")*.

It would have been obvious to one of ordinary skill in the

art at the time of the Patent Owner's invention to modify the

prior art combination with the above further teachings if Yocom.

One of ordinary skill would have been motivated to make such

modification in order to reduce wait times for the clients

requesting location services as suggested by Yocum (see lines

28-33 of column 2).

Referring to claim 30, the combination and Ault, Yocum,

and Boukabza discloses the method of claim 17, as shown above

and the prior art combination further discloses transferring a

portion of the identifiers and associated locations to a second

location server when a performance criterion of the first data

location server reaches a predetermined performance limit

further comprises monitoring the performance criterion and

automatically transferring the portion of identifiers and

associated locations when the first location server reaches the

predetermined limit (see Boukabza, lines 39-56 of column 2

*"Thus, according to the idea of the invention and contrary to*

*all expectation, the use of autonomous agents makes it possible*

*to ensure the proper running of the monitored applications in*

*all of the nodes by means of an autonomous and efficient*

*process, to rapidly feed back the useful information from the*

*nodes to the management node, and to* **automatically initiate**

**actions** *on certain conditions or possibly to recommend an*

*action…"*).

It would have been obvious to one of ordinary skill in the

art at the time of the of the Patent Owners invention to modify

the prior art combination with the above further teachings of

Boukabza such that the transferring of the portion of

identifiers and associated locations are automatically

transferred when the performance criterion reaches the

predetermined limit. One of ordinary skill in the art would have

been motivated to make such modification in order to ensure

proper running of all monitored applications by automatically

initiating any needed corrective action thus increasing overall

performance by minimizing any potential downtime as suggested by

Boukabza (see paragraph bridging columns 34 and 35).

**STATEMENT OF REASONS FOR PATENTABILITY AND/OR CONFIRMATION**

Claims 18-22 and 25-29 are confirmed over the prior art of record.

The following is an examiner's statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding:

Claim 18

Regarding claim 18, the prior art of record fails to teach or suggest alone or in combination wherein receiving an identifier and location at a first location server further comprises receiving the identifier and the location from an application server, wherein the location comprises the address of the server as required by claim 18. The prior art of record is silent with respect to receiving a location from an application server wherein the location is the address of the application server.

Claims 19-21

Regarding to claim 19, the prior art of record fails to teach or suggest alone or in combination wherein receiving an identifier and location at a first location server further comprises receiving the identifier and the location from a physical object, wherein the identifier identifies a physical object and the location comprises a geographic location of physical object as required by claim 19. The prior art of record is silent with respect to receiving an identifier and location

from a physical object wherein the location comprises a

geographic location of the physical object.

Claims 20 and 21 are confirmed at least based on their

dependence on claim 19.

Claim 22

Regarging claim 22, the prior art of record fails to teach

or suggest alone or in combination, transferring a portion of

the identifier and location associations comprises: identifying

a portion of identifier and location associations on the first

location server to be transferred to the second location server

and identifying a data set state of the identified portion at an

initial time; copying a data set for the identified portion

corresponding to the identified data set state from the first

location server to the second location server and maintaining a

second data set containing changes to the identified portion

since the initial time; and identifying a data set state for the

second data set as in combination with the other recited

limitations required by claim 22. The prior art of record is

silent with respect to the claimed second data set.


Claims 25 and 26

Regarding claims 25 and 26, the prior art of record fails

to teach or suggest alone or in combination the transaction rate

comprises a processor speed limit or network connection

bandwidth limit as required by claims 25 and 26, respectively.
The prior art of record is silent with respect to processor
speed limits or network bandwidth speed limits.

Claims 27-29

Regarding claim 27, the prior art of record fails to teach
or suggest alone or in combination transmitting a location
server map from the first location server, the location server
map comprising information identifying the second location
server and a list of identifiers associated with the second
location server. The prior art of record is silent with respect
to a location server map.

Claims 28 and 29 are confirmed at least based on their
dependence on claim 27.

Any comments considered necessary by PATENT OWNER regarding
the above statement must be submitted promptly to avoid
processing delays.  Such submission by the patent owner should
be labeled: "Comments on Statement of Reasons for Patentability
and/or Confirmation" and will be placed in the reexamination
file.

*Submissions*

In order to ensure full consideration of any amendments,
affidavits or declarations, or other documents as evidence of

patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and 37 CFR 41.33 after appeal, which will be strictly enforced.

## *Amendments in Reexamination Proceedings*

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR 1.20(c). See MPEP 2250(IV) for examples to assist in the preparation of proper proposed amendments in reexamination proceedings.

## *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that ex parte reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in ex parte reexamination proceedings are provided for in 37 CFR 1.550(c).

ALL correspondence relating to this ex parte reexamination
proceeding should be directed as follows:

**Please mail any communications to:**

Attn: Mail Stop *"Ex Parte Reexam"*
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450 Alexandria VA 22313-1450

**Please FAX any communications to:**

(571) 273-9900
Central Reexamination Unit

**Please hand-deliver any communications to:**

Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

**By EFS-Web**

Registered users of EFS-Web may alternatively submit
such correspondence via electronic filing system EFS-Web,
at

https://efs.uspto.gov/efile/myportal/efs-registered

EFS-Web offers the benefit of quick submission to the
particular area of the Office that needs to act on the
correspondence. Also, EFS-Web submissions are "soft
scanned" (i.e., electronically uploaded) directly into the
official file for the reexamination proceeding, which
offers parties the opportunity to review the content of
their submissions after the "soft scanning" process is
complete.

Any inquiry concerning this communication or earlier
communications from the Reexamination Legal Advisor or Examiner,
or as to the status of this proceeding, should be directed to

the Central Reexamination Unit at telephone number (571) 272-7705.


          Signed:


          /ERON J SORRELL/
          Primary Examiner, Art Unit 3992


          Conferees:          /JOSEPH R POKRZYWA/
                              Primary Examiner, Art Unit 3992

/MICHAEL FUELLING/
Supervisory Patent Examiner, Art Unit 3992