# Exhibit K127

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| *In re*: Reexam of U.S. Patent No. 7,233,978 | Confirmation No.: 3927 |
| Control No. 90/019,034 | Art Unit: 3992 |
| Filed: November 19, 2021 | Examiner: CAMPBELL, Joshua D. |
| For: **Method and Apparatus For Managing Location Information In a Network Separate From The Data To Which The Location Information Pertains** | Atty. Docket: |

## Patent Owner's Reply to Office Action in *Ex Parte* Reexamination

*Mail Stop "Ex Parte Reexam"*
Attn: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Commissioner:

  Patent Owner hereby replies to the Office Action dated June 28, 2022, issued in the above-captioned *ex parte* reexamination. The due date for reply is September 28, 2022, based on the Office's granting of a petition for an extension of time. No additional fees are believed to be necessary, however, to prevent abandonment of this reexamination, please contact the undersigned representative for payment information.

## *Status of the Claims*

A listing of each claim under reexamination is provided below. Although no claim amendments are proposed in this response, the patent owner nonetheless provides this listing of original claims from U.S. Patent No. 7,233,978 to Overton et al. ("the '978 patent") for ease of reference and review.

The following claims are subject to *ex parte* reexamination:

1. (Patent Claim)  A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising:

a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity

a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and

programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity.

3. (Patent Claim) The system of claim 1, wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query.

6. (Patent Claim)  The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table.

10. (Patent Claim) A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising:

a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and

programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier.

14. (Patent Claim) A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising:

receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location;

sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query, the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and

sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query.

17. (Patent Claim) A method of scaling at least one of capacity and transaction rate capability in a location server in a system having a plurality of location servers for storing and retrieving location information, wherein each of the plurality of location servers stores

unique set of location information of an aggregate set of location information, the method comprising:

providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information related to the identifier;

storing location information formatted according to the transfer protocol at a first location server;

receiving an identifier and a location relevant to the identifier at the first location server;

storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and

transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit.

23. (Patent Claim)  The method of claim 17, wherein the performance criterion comprises an amount of available persistent storage space in the first location server.

24. (Patent Claim)  The method of claim 17, wherein the performance criterion comprises a transaction rate limit.

30. (Patent Claim)  The method of claim 17, wherein transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit.

31. (Patent Claim)  A system for managing location information and providing location information to location queries, the system comprising:

a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity, the location server containing location information corresponding to at least one entity and formatted

4

according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and

programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message, the location message comprising locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity.

## *Remarks*

Claims 1, 3, 6, 10, 14, 17, 23-24, and 30-31 '978 patent are currently subject to *ex parte* reexamination. Claims 1, 3, 6, 10, 14, and 31 stand rejected in the Office Action dated June 28, 2022 ("Office Action"). Claims 17, 23-24, and 30 have been confirmed patentable. Patent Owner thanks the Office for confirming patentability of these four claims and respectfully traverses the rejections as to the remaining claims. Based on the following remarks, Patent Owner respectfully requests that the Examiner reconsider all outstanding rejections and that they be withdrawn.

### I.      Status of Related Matters

The '978 patent is the subject of litigation in *Kove IO, Inc., v. Amazon Web Services, Inc.,* Case No. 1:18-cv-08175 (N.D. Ill.).

Claims 17-18 and 24 of related U.S. Patent No: 7,103,640 were subject to reexamination in Control No. 90/019,036. All reexamined claims of the '640 patent were recently confirmed to be patentable. [Notice of Intent to Issue a Reexam Certificate issued September 22, 2022].

Claims 1-2, 6, 8-9, 12, and 15 of related U.S. Patent No: 7,814,170 were subject to reexamination in Control No. 90/019,035. All reexamined claims of the '170 patent were recently confirmed to be patentable. [Notice of Intent to Issue a Reexam Certificate issued September 28, 2022].

### II.      Information Disclosure Statements

Patent Owner previously submitted an information disclosure statements (IDSs) on July 12, 2022, July 13, 2022, and September 13, 2022.

### III.      Statement of Substance of Examiner Interview

Patent Owner thanks Examiner Joshua Campbell and Supervisory Examiners Adam Basehoar and Alex Kosowski for the Interview held September 2, 2022, with Co-Inventor John Overton, subject-matter expert Dr. Michael Goodrich, and Patent Owner's representatives Khue Hoang (Reg. No. 44,767), Naveed Hasan (Reg. No. 72,688), and Robert Dellenbach.

The Interview included discussions regarding the background and history of the invention, claim construction of certain claim terms, interpretations of certain claims being reexamined, and the deficiencies of the applied references, both individually and when combined, with respect to particular claim terms.

Examiner Campbell requested Patent Owner provide further clarification about certain aspects of the reexamined claims, including the "identifier" and "redirect message" claim terms. In this Response, Patent Owner provides the requested clarifications, as well as detailed support for the patentability of the reexamined claims over the asserted prior art, whether considered individually or in combination.

The materials presented during the interview by the Patent Owner is submitted herewith as Exhibit L.[1]

## IV. *Response to Substantive Rejections in the Office Action*

The Office Action includes three grounds of rejections:

Ground 1: Claims 1 and 31 are rejected under pre-AIA 35 U.S.C. § 103(a) as allegedly being obvious over ONAG in view of OracleSG.

Ground 2: Claims 3, 10, and 14 are rejected under pre-AIA 35 U.S.C. § 103(a) as allegedly being obvious over ONAG in view of OracleSG and in further view of McGarvey.

Ground 3: Claims 6 is rejected under pre-AIA 35 U.S.C. § 103(a) as allegedly being obvious over ONAG in view of OracleSG and in further view of Rajani.

Patent Owner respectfully traverses the rejections, each of which are addressed below.

### A. **Relevant Prosecution History**

---

[1] The materials presented during the Interview inadvertently included incorrect Figure numbers. The incorrect citations and figures do not affect the topics that were discussed during the interview. Nevertheless, for a complete and correct record, Patent Owner submits herewith as Exhibit L a "redline" version of the materials presented, which shows the corrections to the figure numbers.

The '978 patent was filed as U.S. Patent Application 09/872,736 on June 1, 2001 and issued on June 17, 2007.

### B. Related *Inter Partes* Review (IPR)

Claims 1, 3, 6, 10, 14, 17, 23, 24, 30, and 31 of the '978 patent were challenged by the Requester of the present Reexamination in an IPR (IPR2020-00276) filed on December 12, 2019. The Requester (the Petitioner in the IPR) asserted Internet Engineering Task Force Network Working Group Request for Comments 1034 (RFC1034), which describes Domain Name Service (DNS), in its challenge to the validity of the claims. The Patent Trials and Appeals Board (Board) agreed with Patent Owner that the term "identifier," as recited in the '978 patent, should be construed to mean "a unique encoding that identifies an individual entity, and with which zero or more data location specifiers are associated in a location server." This construction is consistent with the construction entered in the District Court case (*see* Section IV(D)(1) below). The Board determined that because Petitioner failed to explain "how a given domain name identifies only one host computer of RFC1034" or "how the entity/identifier relationship is allegedly disclosed," it denied institution of the IPR on June 16, 2020. [NPL 30 on IDS filed July 13, 2022, pp. 21-22].

### C. Overview of claimed technology and continued patentability of the claims

Towards the latter half of the 1990's, data storage was still relatively manageable. Most data could be stored locally, on local drives, compact discs (CDs) or disk drives. Single servers were often sufficient for data storage needs. Not long thereafter, the amount and size of data began increasing, soon reaching exponential rates. Networking became ubiquitous and storing data in single servers became impractical if not impossible. This paved the way for distributed data collection environments.

Distributed data collection involves storing data stored and retrieved among multiple databases or data repositories connected by a network. Conventional distributed data collection environments maintained a static relationship of data and its location. Accordingly, every time data moved from one location to the next, all of the systems that maintained the static relationship had to be updated. As a result, while conventional distributed data collection environments allowed for dispersed storage, doing so made reliably locating and retrieving the

data challenging, particularly where data is added or removed dynamically. ['978 patent, 1:38-44].

The Inventors of the '978 patent predicted networking would become ubiquitous and data would become explosive, years before it actually happened. The Inventors understood that maintaining a static relationship of data and its location in traditional distributed data collection environments (*i.e.*, tree structures) would become untenable, given the growing unreliability of locating and retrieving dispersed data, particularly where the data in the components of the network could change location, unbeknownst to one another. The Inventors invented a protocol that dynamically creates relationships between data and its locations using an algorithm or function. That is, the Inventors invented a protocol that replaced storing caches and state information across the network, with a stateless approach that allows clients to compute the location of data's location information based on a dynamically created relationship between the data and its location. The Inventors sought to find a way to achieve seamless dynamic and spontaneous global search and retrieval of data across a distributed network. The result are the claims embodying the Inventors' network distributed tracking protocol ("NDTP").

### *1.* **The problems with the existing systems**

The Inventors studied then-existing systems to determine if there were ways to improve efficiency and scalability in locating and retrieving distributed data. They concluded that conventional systems were fundamentally limited in the types of searches that could be performed and the forms of data returned based on the search. ['978 patent, 1:45-55]. For example, the '978 patent states, "One example is where a client requests files based on a subject, like a person's name. In the search results, therefore, only text files of peoples' names may be retrieved. Another problem in current retrieval systems is that the client may receive text and image files in the search results, but could not seamlessly access the image files. Yet another problem in current retrieval systems is that video and sound files related to the request may not even be found in the search results. For example, a doctor might be able to retrieve medical records on a specific patient, but cannot view an MRI or X-Ray results associated with that record." [*Id.*, 1:55-58].

The Inventors recognized that while Doman Name Service's (DNS) "names and machine" mapping format is analogous to the "entity identifier and data location" mappings in the NDTP protocol ['978 patent, 23:60-24:11], NDTP has a foundationally different structure that enables it to support "very fast, very diverse, and very large scale mapping manipulations" [*id.*], which names services like DNS cannot do because of their tree-node organizational structure.

Conventional systems consistently used hierarchical-tree structures when attempting to scale their networks. For example, ONAG acknowledged that a network may follow a flat naming model or a hierarchical naming model but cautioned that "[a] flat naming model should be used when the actual number of services is small (under 100), when the likelihood of future growth of network services is *minimal….*" [ONAG, 40] (emphasis added). More pointedly, ONAG ***discouraged*** the use of "flat" structures in larger networks, in contrast to hierarchical structures which ONAG noted "allow[s] for future growth or greater naming autonomy." [*Id.*, 41]. Similarly, McGarvey and Rajani disclosed only hierarchical structures for more complex systems. [*See e.g.,* McGarvey, 5:5-43; Rajani, Abstract; 2:55-67]. This illustrates that POSAs, at the time of invention, would have understood that conventional data systems were dependent on hierarchical structures. [Goodrich Decl., ¶¶ ].

An example of this prior art hierarchical structure is Fig. C-4 from ONAG (reproduced below).



Figure C - 4 Network Messages in a Multi-Level Foreign Name Resolution

**ONAG, Figure C-4 (p. 191)**

ONAG describes the activities that must take place in response to a client query for information (in this case, the network address of the "Destination Server"): "1. The client sends request to preferred Names Server in its local region (DR1). 2. The preferred Names Server in DR1 issues request for the Names Servers authoritative for the destination server (in region DR2.1). 3. The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2. 4. The receiving server in DR2 forwards the request to a Names Server in region DR2.1. 5. The name is retrieved from its authoritative Names Server in DR2.1. 6. The names Server in region DR2 caches the answer and returns it to the root. 7. The root caches the answer and returns it to the preferred Names Server in region DR1. 8. The preferred Names Server caches the answer and returns it to the client. 9. The client establishes a connection to the destination server." [*Id.,* 190-191].

Retrieving a network address in the tree-node configuration in Figure C-4 require nine (9) traversals up, down, and back through the hierarchal structure. [*Id*]. As such, the organizational structure is limited in efficiency by its underlying network paths and network relationships that require queries to make hierarchical traversals until it finds the server with the sought-after information (assuming the information exists somewhere in the network).

The Inventors understood the challenges that existed in locating and retrieving data in a distributed data collection environment and addressed the challenges with the inventions of the '978 patent. Their invention, as embodied in the claims of the '978 patent, enables a client to retrieve data through *any server* in the network and *receiving in response the location information associated with a desired entity*. Claims 1, 10, 14, and 31 (and their dependent claims) require the servers in the network to provide the relevant location information. In other words, *any queried server will either have the requested information or will identify which other server contains the requested information*. The structured relationships of the invention allow clients to access data in distributed environments through a non-hierarchical, limitlessly scalable, server structure that enables retrieval of requested information in not more than two iterations.

The '978 patent also maintains one to many relationships between identifiers and locations of data distributed across a network. [*See e.g., id.,* 8:14-25]. For example, the '978 patent states "The NDTP server efficiently maintains and dispenses one to many relationships between identifiers and locations. In other words, an identifier may be associated with any number of locations. In embodiments where the location information relates to locations of application servers containing data or routing information for finding data, the NDTP server is updated to indicate an association between the identifier and the application server's location when data for a particular identifier is added to an application server. When a query is performed for an identifier, the NDTP server supplies the set of application servers in which data may be found for that identifier." [*Id*].

This allows for efficient tracking of location of information associated with an individual entity in a distributed data network. Specifically, the '978 patent explains "An 'entity identifier' or an 'identifier' is a unique encoding, which may be a string in one embodiment, with which zero or more data location specifiers are associated in an NDTP server. A 'data location' or 'location' is an encoding, for example a string, that is a member of a set of associations with an identifier in an NDTP server. An 'NDTP client' or a 'client' is a network-attached component that initiates add, delete, lookup and update of identifier/location mappings, or associations, from an NDTP server with NDTP request messages. An 'NDTP server' or a 'server' is a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to NDTP request messages from clients."

[*Id.*, 4:25-38]. The '978 patent further states, "The communication flow may represent a client 112 requesting an identifier/location association(s) from the NDTP server, which may be a server constellation construed in either of two forms (see FIGS. 19 and 20), and then querying directly based on the identifier/location association(s) received from the NDTP server." [*Id.*, 18:50-56].

By requiring that each identifier uniquely identify a single entity, the locations for the data pertaining to the single entity using the identifier can quickly be located. [*See e.g., id.*, 4:19:43; 4:57-5:22; 8:14-25; 18:38-19:3]. This way, the location servers in the network do not have to execute any extraneous steps for determining or identifying a given entity when resolving a location query. [*Id*].

### 2. The '978 patent claims overcome the limitations present in the prior art

The Inventors addressed the limitations of pre-existing systems, including tree-based systems like DNS and other names service systems, including Oracle Names Service, as described in "Oracle Names Administrator's Guide, Release 2.0" ("ONAG") in three foundational ways. [Goodrich Decl., ¶¶ 19-26].

**First**, the '978 patent teach separating the data location information from the data itself. The specification teaches this is a fundamental aspect of the invention:

Col. 1:59-67: "A distributed data collection is a system where *data is stored and retrieved among multiple machines connected by a network.* Typically, each machine in which some portion of the data in a distributed data collection may reside is called a 'data repository machine', or simply a 'data repository'. One commonly asked question in a data repository environment is: *Where is data associated with a particular entity in a distributed data collection? The data location is a key question* when a distributed data collection has highly dynamic data distribution properties."

Col. 8 14-22: "The NDTP server efficiently maintains and dispenses one to many relationships between identifiers and locations. In other words, an identifier may be associated with any number of locations. In embodiments where the location information relates to locations of application servers containing data or routing information for finding data, the

NDTP server is updated to indicate an association between the identifier and the application server's location when data for a particular identifier is added to an application server."

Col. 23:63-24:1: "NDTP is designed for use in the larger context of a distributed database system including, but not limited to, addressing and namespace services. As such, it supports an architecture in which *information about where data associated with particular application entities can be managed and obtained independently of the data itself.*"

Figure 18 of the '978 patent (annotated below) illustrates the separation of the data location information from the data itself:



**'978 patent, Fig. 18 (annotated with colored boxes)**

The NDTP Server Constellation 110 (red box) includes data location servers that store the location of specific units of data stored in application server 114 (green box). ['978 patent, 18:38-56]. The data stored in application server 114 may be moved to any repository. [*Id.,* 8:14-25; 18:38-56]. The location of the data, if it is moved, will be updated in the data location servers in the NDTP Server Constellation 110. [*Id.,* 8:14-25; 18:38-56; 24:6-11]. Locating the data requires querying the NDTP Server Constellation 110. (*Id.,* 18:38-56). Specifically, the '978 patent states, "The communication flow may represent a client 112 requesting an identifier/location association(s) from the NDTP server, which may be a server constellation construed in either of two forms (see FIGS. 19 and 20), and then querying directly based on the identifier/location association(s) received from the NDTP server." [*Id.,* 18:50-56].

Claims 1, 10, 14 and 31 (and their dependent claims) require entities, identified by identifiers and associated with location information, contained in separately claimed location servers. The application servers (e.g., application server 114) stores data pertaining to the entity. Claims 1, 10, 14, and 31 further require that an identifier identify a single entity so that the identifier may be used to query the location server and retrieve the location information of the data pertaining to the respective entity. [Goodrich Decl., ¶¶ 19-26].

**Second**, the '978 patent provide for organizing data location information in location servers such that every location server is configured to either identify another location server that has the requested information or provide information that can be used to determine the location of the data location information (if the first location server does not itself have the requested information – if it does, it simply returns that to the client).

Figure 19 of the '978 patent illustrates the organization of the data location information.



**'978 patent, Fig. 19 (annotated with colored dots and boxes)**

In Figure 19, the NDTP Server Constellation 110 includes NDTP servers 120a and 120b. [*Id.*, 18:61-19:3]. The ellipses are added to illustrate the disclosed teaching that the number of NDTP servers can extend to however many are desired (Server 0 to Server N). [*Id.;* 15:45-53]. NDTP servers 120a and 120b store location information for data stored in application servers. [*See e.g., id.*, 8:14-25; 18:50-19:3]. Each unit of data is associated with an identifier that uniquely identifies an entity. [*See e.g., id.*, 4:19-43; 23:61-24:11]. The location information for the data is organized across NDTP servers 120a and 120b using an algorithm or function, such as a hash function. [*See e.g., id.*, 4:19-43; 7:55-8:25]. Specifically, an algorithm or function is applied to each identifier for each unit of data. [*Id*]. Based on the outcome of the algorithm or function, the location information for each unit of data is stored in a respective location server. [*Id*]. The location information for the data is thereby divided up and each of NDTP servers 120a and 120b stores a portion of the location information, based on applying the algorithm or function on the identifier – *i.e.,* the location information is distributed among the location servers in the network. [*Id*]. For example, if there are 10 units of data, NDTP Server 0 120a may store location information for units 1-5 and NDTP server 1 120b stores location information for units 6-10. [*See e.g., id.*, 4:55-67; 8:14-25; 18:38-19:3]. In another example, if there are two identifiers associated with 10 units of data, where the first five units of data are associated with a first identifier and the second five units of data are associated with the second identifier, data location server 120a may store location information for the first five units of data and data location server 120b may store location information for the second five units of data. [*Id*]. The location information in the data location servers 120a-b is mapped to the respective identifier associated with the data. [*Id*].

The '978 patent also teaches that NDTP servers 120a and 120b (etc.) store the algorithm or function that is used to divide up the location information. [*Id., 17:6-14*]. This allows each data location server to (1) itself determine, using the function, which other data location server stores the location information for a particular unit of data (*id.*); (2) transmit a list of location servers which contains the location server known to have the location information (*id.*); and (3) transmit information (e.g., algorithm or function) to the client to enable the client to determine which one of the data location servers stores the location information for the particular unit of data (*id., 17:53-58*). In other words, ***whatever location server is queried, if that location server does not have the information, it will either identify the location server***

*that does, identify a list of location servers containing at least the location server that does, and/or return a message containing the algorithm or function that will allow the client to make that identification for itself*, rather than traverse a network path across a tree structure like DNS or Oracle Name Service that maintained a static relationship of data and that data's location. Continuing from the earlier example, if NDTP server 120a receives a query from a client for an identifier associated with data unit 7 and it does not have the requested information itself, it then either determines that the location for unit 7 is in the NDTP server 120b by applying the algorithm or function on the identifier and transmits that back; transmits a list of location servers which contains the location server known to have the location information to which the client can apply a well-known function to the identifier to identify; or transmits the algorithm or function to the client for the client to determine that the location information for unit 7 is in NDTP server 120b. [*See, e.g., id.,* 17:6-58].

In contrast to the hierarchical "tree" structure of existing systems, the above-described configuration allows for linear scaling of the location servers. Particularly, the above-described configuration allows for seamlessly adding location servers based on the growth of a network. Each new or existing location server is configured to store a portion of the location information and the algorithm or function used to divide up the location information, irrespective of the amount of data distributed across one or more repositories and the amount of movement of the data across the one or more repositories. This allows for easily locating the location information in networks of any size. [*See e.g., id.,* 8:14-25]. As anticipated by the Inventors, the explosion of the Internet, in which moving data rapidly across any scale of system or complexity became <u>de facto</u>, without requiring tree structures with caches. [Goodrich Decl., ¶¶ 19-26].

**Third**, as the specification citations below show, the '978 patent requires an identifier uniquely identify a single entity such that the locations of the data pertaining to the single entity can be retrieved using the identifier.

Col 4:25-38: "An 'entity identifier' or an 'identifier' is a unique encoding, which may be a string in one embodiment, with which zero or more data location specifiers are associated in an NDTP server. A 'data location' or 'location' is an encoding, for example a string, that is a member of a set of associations with an identifier in an NDTP server. An 'NDTP client' or a

'client' is a network-attached component that initiates add, delete, lookup and update of identifier/location mappings, or associations, from an NDTP server with NDTP request messages. An 'NDTP server' or a 'server' is a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to NDTP request messages from clients."

Col. 4:57-67: "The location may be address information for the application server(s) containing information relevant to the identifier or address information for the application server(s) through which data relevant to the identifier may be accessed. In one embodiment, when a client queries the NDTP server for information pertaining to an entity, the NDTP server preferably returns a list of all locations for the specified entity. The client then can directly access the various locations, relieving the NDTP server of any further involvement in the transaction and allowing the NDTP server to handle more queries."

Col. 8:14-25: "The NDTP server efficiently maintains and dispenses one to many relationships between identifiers and locations. In other words, an identifier may be associated with any number of locations. In embodiments where the location information relates to locations of application servers containing data or routing information for finding data, the NDTP server is updated to indicate an association between the identifier and the application server's location when data for a particular identifier is added to an application server. When a query is performed for an identifier, the NDTP server supplies the set of application servers in which data may be found for that identifier."

The relationships among identifier, entity, location strings, and location server are schematically depicted in the figure below:



**Patent Owner's Figure A**

18

As shown in Patent Owner's Figure A, an entity may, for example, be a movie (e.g., the 1942 classic, Casablanca) and data pertaining to that entity may, for example, be different versions of the movie (e.g., 4K, SD, .MOV). The various versions of the movie may be stored in one or more data repositories. The location server may store locations strings that are locations of the respective versions in the network. In this example, location string 1 is the location of the 4K version of the movie in the network, location string 2 is the location of the SD version, and location string 3 is the location of the .MOV version.

The identifier uniquely identifies the entity and is associated with the three location strings of the data pertaining to the entity. A user may query the location server to retrieve the location strings of the data pertaining to the entity by using the identifier that uniquely identifies the entity.

As will be described in further detail below, existing systems, such as ONAG or OracleSG, did not impose a requirement for an identifier to uniquely identify a single entity. In contrast to the '978 patent, which manages and locates data distributed across a network, systems such as ONAG or OracleSG are primarily attempting to locate a single network object (e.g., a database). In this regard, ONAG and OracleSG allow for creating personalized (e.g., public or private) names or links for the network objects. [*See e.g.,* ONAG, 54, 100, 110, 128-129; OracleSG, 181, 189-190]. The names or identifiers may be repeated for different network objects, and therefore, a single name or link may identify two or more network objects. [*Id*]. ONAG and OracleSG use multiple parameters, including a network object name or link, type of network object, user information, etc. to locate the network object. [*Id*]. This way, an identifier that uniquely identifies a single entity is not necessary in systems such as ONAG and OracleSG. [Goodrich Decl., ¶¶ 19-26].

The features of the '978 patent provide numerous advantages over the existing systems. For example, linear scaling eliminates the need for a "root" node. In particular, the '978 patent allows for *each* location server in a network to either resolve a query for location information or provide the location of the requested information. By doing so, the '978 patent eliminates the reliance of network paths and relationships present in hierarchical structures. Furthermore, the '978 patent requires that an identifier identify a single entity, so that the identifier may be

used to retrieve all of the locations of the data pertaining to the entity. [Goodrich Decl., ¶¶ 19-26].

### 3. Reasons for continued patentability

Currently, claims 1 and 31 are rejected as obvious based on ONAG in view of OracleSG. Claims 3, 10 and 14 are rejected as obvious based on ONAG in view of OracleSG and in further view of McGarvey. Claim 6 is rejected as obvious based on ONAG in view of OracleSG and in further view of Rajani. Patent Owner respectfully traverses each rejection. The Examiner's rejections rely on initially perceived similarities between certain disclosures in the references and the claims, but closer study shows that the cited references and the invention are foundationally different, and that these differences make claims 1, 3, 10, 14, and 31 novel and patentable.

In this Reply, Patent Owner details the lack of disclosure in the references and the lack of motivation to combine ONAG with any other reference (or combinations thereof).) For at least the issues addressed in this Reply, Patent Owner respectfully requests the Examiner reconsider and withdraw the rejections pending against claims 1, 3, 10, 14, and 31 and find them patentable.

### D. Claim Construction

As noted in the Office Action, the claims of the '978 patent must be given their ordinary and customary meaning in light of the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005) (*en banc*). (Office Action, 3-4). **The Broadest Reasonable Interpretation (BRI) standard <u>may not</u> be applied to the claims in the instant reexamination proceeding because the claims are expired**. *In re Rambus*, 694 F.3d 42 (2012). *See also In re CSB-Sys. Int'l, Inc.*, 832 F.3d 1335, 1341 (Fed. Cir. 2016) (confirming that "when an expired patent is subject to reexamination, the traditional *Phillips* construction standard attaches").

In its Request for Reexamination, the requestor proposed constructions for certain claim terms based on positions that had been taken in the parallel litigation (*Kove IO, Inc., v. Amazon Web Services, Inc.*, Case No. 1:18-cv-08175) involving the same patent and the same parties.

Since that time, (1) the parties to the litigation (i.e., requestor and Patent Owner) have agreed on the constructions of certain claim terms (*see* NPL 42 in an Information Disclosure Statement (IDS) filed July 12, 2022), and (2) the Court in the Northern District of Illinois overseeing the litigation has issued a claim construction Order regarding other terms (*id.,* NPL 43). The parties' agreed-to constructions and the Court's ordered constructions are fully supported by disclosures in the specification, as evidenced by the citations and analysis in the Court's Memorandum and Order. (*Id.,* NPL 42 and 43).

### *1.* **Claim Construction Summary Table**

The claims of the '978 patent must be given their ordinary and customary meaning in light of the specification. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005) (*en banc*). (Office Action, 3-4). The Broadest Reasonable Interpretation (BRI) standard <u>may not</u> be applied to the claims in the instant reexamination proceeding because the claims are expired. *In re Rambus,* 694 F.3d 42 (2012). *See also In re CSB-Sys. Int'l, Inc.,* 832 F.3d 1335, 1341 (Fed. Cir. 2016) (confirming that "when an expired patent is subject to reexamination, the traditional *Phillips* construction standard attaches").

In its Request for Reexamination, the requestor proposed constructions for certain claim terms based on positions that had been taken in the parallel litigation (*Kove IO, Inc., v. Amazon Web Services, Inc.,* Case No. 1:18-cv-08175) involving the same patent and the same parties. Since that time, (1) the parties to the litigation (i.e., requestor and Patent Owner) have agreed on the constructions of certain claim terms (*see* NPL 42 in an Information Disclosure Statement (IDS) filed July 12, 2022), and (2) the Court in the Northern District of Illinois overseeing the litigation has issued a claim construction Order regarding other terms (*id.,* NPL 43). The parties' agreed-to constructions and the Court's ordered constructions are fully supported by disclosures in the specification, as evidenced by the citations and analysis in the Court's Memorandum and Order. [*Id.,* NPL 42 and 43].

A summary chart of the construed terms is as follows:

| Claim Term | Construction |
|---|---|
| identifier/identifier string | a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server (NPL 43) |

| location/data location | an encoding that is a member of a set of associations with an identifier in a location server, and that specifies where data pertaining to the entity identified by the identifier is stored (NPL 43) |
|---|---|
| location server/server | a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from [] clients (NPL 42) |
| location information | one or more identifiers and their associated locations (NPL 42) |
| hash table | a data structure that stores values in a table, where values are stored and retrieved by applying a hash function to an input and using the function result as an index into the table (NPL 43) |
| data pertaining to an entity | data pertaining to a person or thing (real, digital, or abstract) distinct from that data (NPL 42) |

Patent Owner respectfully submits that the above-referenced constructions, which were construed in accordance with the *Philips* standard, be adopted in the instant reexamination.

### 2. Independent claims 1, 10, 14, and 31 in view of the claim construction

Claim 1 recites:

[1.pre] A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising:

[1.a] a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier,

[1.b] wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity

[1.c] a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and

[1.d] programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message,

**[1.e]** the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity.

Claim 10 recites:

**[10.pre]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising:

**[10.a]** a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address,

**[10.b]** wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and

**[10.c]** programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message,

**[10.d]** wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and

**[10.e]** a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier.

Claim 14 recites:

**[14.pre]** A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising:

**[14.a]** receiving a location query from a client at one of the plurality of servers, the location query requesting an entity's location;

**[14.b]** sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query,

**[14.c]** the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and

**[14.d]** sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query,

**[14.e]** the redirect message comprising information for finding a location server storing the entity identified in the query.

Claim 31 recites:

**[31.pre]** A system for managing location information and providing location information to location queries, the system comprising:

**[31.a]** a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier,

**[31.b]** wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity,

**[31.c]** the location server containing location information corresponding to at least one entity and formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and

**[31.d]** programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message,

**[31.e]** the location message comprising locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity.

Claims 1, 10, 14, and 31 (and their dependent claims) must be interpreted in light of the appropriate claim constructions and not in a vacuum. In particular, the claim terms should

be construed in accordance with the *Phillips* standard, the claim constructions provided above, and the relationships among the claim terms, as set forth in claims 1, 10, 14, and 31.

### 3. "identifier"

Claims 1, 10, 14, and 31 each recite the term "identifier." As per its claim construction, an "identifier" must *uniquely* identify an individual entity, with zero or more location strings associated with it in a location server. [NLP 43]. "Location strings" are locations of data pertaining to the entity in the network. ['978 Patent, 4:20-38]. Furthermore, an "entity" is construed to be a person or thing (real, digital, or abstract) which must be distinct from the data itself. [NPL 43]. As such, an identifier can only identify a *single* entity, i.e., it must uniquely identify that entity, in the same way that a social security number must identify only a single person. [Goodrich Decl., ¶¶ 27-34].

As described above, the relationships among identifier, entity, location strings, and location server are schematically depicted in the figure below:



**Patent Owner's Figure A**

As shown in Patent Owner's Figure A, an entity may be the movie "Casablanca" and data pertaining to that entity may be 4K, SD, and .MOV versions of the movie, where location string 1 is the location of the 4K version, location string 2 is the location of the SD version, and location string 3 is the location of the .MOV version. In this regard, the '978 patent separates the location of the data from the data itself.

The identifier uniquely identifies the entity and is associated with the three location strings of the data pertaining to the entity. A user may query the location server to retrieve the

location strings of the data pertaining to the entity by using the identifier that uniquely identifies the entity.

This example helps illustrate the disclosures of the '978 patent. For example, the specification teaches, "The NDTP server efficiently maintains and dispenses one to many relationships between identifiers and locations. In other words, an identifier may be associated with any number of locations. In embodiments where the location information relates to locations of application servers containing data or routing information for finding data, the NDTP server is updated to indicate an association between the identifier and the application server's location when data for a particular identifier is added to an application server. When a query is performed for an identifier, the NDTP server supplies the set of application servers in which data may be found for that identifier." ['978 patent, 8:14-25]. Furthermore, the '978 patent indicates that NDTP "supports an architecture in which information about where data associated with particular application entities can be managed and obtained independently of the data itself." [Id., 23:65-24:1].

The '978 patent further explains, "A network distributed tracking protocol (NDTP) is a transfer protocol having the capability to manipulate location information used to efficiently track the location of information associated with an individual entity in the distributed database system. An "entity identifier" or an "identifier" is a unique encoding, which may be a string in one embodiment, with which zero or more data location specifiers are associated in an NDTP server. A "data location" or "location" is an encoding, for example a string, that is a member of a set of associations with an identifier in an NDTP server. An "NDTP client" or a "client" is a network-attached component that initiates add, delete, lookup and update of identifier/location mappings, or associations, from an NDTP server with NDTP request messages. An "NDTP server" or a "server" is a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to NDTP request messages from clients." [Id., 4:20-38].

### a) Claims 1, 10, 14, and 31 require an "identifier"

Each of the independent claims 1, 10, 14, and 31 claims location servers containing location information. Location information, per its construction, is "one or more identifiers and their associated locations." [NPL 42].

Specifically, claim 1 recites "a first location server containing a first set of location information corresponding to at least one entity," and "a second location server comprising a second set of location information."

Claim 10 recites "a plurality of location servers containing location information corresponding to a plurality of entities."

Claim 14 recites "each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location."

Claim 31 recites "the location server containing location information corresponding to at least one entity and formatted according to the transfer protocol."

Furthermore, each of claims 1, 10, 14, and 31 also claims a location query.

Specifically, claims 1 and 31 recite "a location query identifying a desired entity."

Claim 10 recites "a location query for a desired identifier."

Claim 14 recites "an entity identified in the [location] query."

As such, each claim requires a location query identifying an identifier or an identified entity. This is supported by the relevant claim constructions which states that an *identifier* is used to identify an entity: "identifier" is construed as "a unique encoding that *identifies an individual entity…*" [NPL 43] (*emphasis added*).

The '978 patent specification includes the following descriptions of queries to the location server:

"When a query is performed for an identifier, the NDTP server Supplies the set of application servers in which data may be found for that identifier." ['978 patent, 8:23-25].

"In one embodiment, the NDTP server network front end preferably services NDTP query requests in a FIFO style by reading the NDTP GET message, performing the lookup for

the identifier in the NDTP server location store, and writing the NDTP GET RSP message."
[*Id.*, 13:52-56].

"The communication flow may represent a client 112 requesting an identifier/location association(s) from the NDTP server, which may be a server constellation construed in either of two forms (see FIGS. 19 and 20), and then querying directly based on the identifier/location association(s) received from the NDTP server." [*Id.*, 18:50-56].

A POSA would therefore understand claims 1, 10, 14 and 31 to require the claimed location queries to include identifiers identifying entities. [Goodrich Decl., ¶¶ 27-34].

### E.    ONAG and the '978 Patent Invention Are Fundamentally Different

ONAG is a manual that provides information about Oracle Names products. [ONAG, 5]. ONAG involves making network address and database link information in a distributed database network available to all nodes in the network. [*Id*]. However, ONAG and the '978 Patent Invention are fundamentally different for several key reasons.

#### 1.    The "identifiers" allegedly disclosed in ONAG do not *uniquely* identify entities, as required by every challenged claim

ONAG describes using service names (e.g., canonical names or aliases) or database links to retrieve network addresses of network objects and services. [*Id.*, 52-54]. For example, ONAG describes the following process when attempting to retrieve a network address for a database service "1. The client application issues a connection request to SQL*Net of the form: sqlplus scott/tiger@POULTRY where POULTRY is a database service name defined in the Oracle Names Server. SQL*Net determines from the client configuration in the SQLNET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net sends the Names Server a request to resolve the name POULTRY.WORLD. 2. The Names Server receives the request, looks it up in the cache, then sends the response back to the client. 3. The client receives the answer and substitutes the address in place of the initial name POULTRY. 4. The client contacts POULTRY and establishes a standard SQL*Net client–server connection." [*Id.*, 52-53]. In this example, the network addresses service name is "POULTRY."

However, the service names / database links are not unique. For example, ONAG allows users to create public **and** private names or database links to network services or objects. ONAG defines a public database links as "A database link created by a DBA on a local database which is accessible to all users on that database." [*Id.*, 202]. ONAG also defines a private database link as "A DBlink created by one user for his or her exclusive use." [*Id*]. Thus, ***ONAG does not restrict users from assigning identical private and public database links to two different databases.*** The differences between the use of the identifier in '978 patent and the use of the private and public names or links in ONAG are schematically illustrated using the following diagrams:



**Patent Owner's Figure A**



**Patent Owner's Figure B**

As explained above, Patent Owner's Figure A illustrates the relationship between the identifier, entity, location information, and data pertaining to the entity in the '978 patent. The identifier uniquely identifies the entity and is associated with the three location strings of the data pertaining to the entity. A user may query the location server to retrieve the location strings of the data pertaining to the entity by using the identifier that uniquely identifies the entity

In Patent Owner's Figure B, the name or database link is "POULTRY." "POULTRY" can be a public name or database link *and* it can also be a private name or database link. The public name or database link "POULRTY" points to network address 1 for DB1. The private name or database link "POULTRY" points to network address 2 for DB2. As such, in contrast to Patent Owner's Figure A and the '978 Patent where the identifier identifies a *single* entity, the name or database link "POULTRY" points to two different network objects, which the Examiner alleges to correspond to the entity. In other words, nothing restricts users from using POULTRY to identify a private database, even if POULTRY is already used to identify a public database. [Goodrich Decl., ¶¶ 30-34; 44-51].

While there may be instances in ONAG where the public or private names may be different, ONAG is distinct from the '978 patent because ONAG does not restrict its users from creating a name or a link that may point to two different network objects. That is, in contrast to the '978 patent, ONAG's structure allows for users to assign the same name or link to different network objects because ONAG uses multiple parameters such as, network object name, link, type, user information, etc. to locate the network object. [ONAG, 128-129; Goodrich Decl., ¶¶ 30-34; 44-51]. Therefore, ONAG does not teach that the identifier *uniquely* identify a single entity. [*Id*].

**ONAG does _not_ require that private and public uses of POULTRY resolve to the same canonical address.** Rather, ONAG teaches that when a user queries a Names Server using POULTRY, ONAG first determines whether POULTRY is included in the user's private names or database links. If so, ONAG directs the query to network address 2, even if POULTRY is included the public names or database links. As such, POULTRY can simultaneously identify two different databases, and therefore, does not uniquely identify a single database. [Goodrich Decl., ¶¶ 30-34; 44-51].

ONAG provides numerous examples of allowing users to use *non-unique* names or links (i.e., alleged "identifiers") for network services or objects. For example, ONAG describes the process of locating a database link as: "Server TOM receives the SQL statement shown and checks its data dictionary for a private or public database link called JERRY. When it does not find one, SQL*Net determines from the client configuration in the SQLNET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net

then sends the Names Server a request to resolve the database link name JERRY.WORLD."
[ONAG, 54]. ONAG further states, "When a database link is used to select information from
a remote database table (for example, SELECT * FROM EMP@HR.US.ORACLE.COM),
Oracle searches for a connect descriptor in the following locations in the following order: 1.
the user's private database links  2. the database public database links 3. the Oracle Names
Server global database links." [*Id.*, 110]. Therefore, when processing a query, ONAG first
checks for the name or database link in the user's private database links. To this end, a POSA
would not understand this configuration to teach that a name or link be *unique* but rather that
the same name or link may be used to identify different things, i.e., a user's private database as
well a public database.

ONAG's use of non-unique names or database links for network services or objects is
further illustrated in its querying process. ONAG teaches that, "If the QUERY command is
used with just a name as a parameter, the Names Server responds with the number of pieces of
data with that name, and the time required to complete the operation." [*Id.*, 129]. ONAG
provides the following example of a query:

Example:

```
NAMESCTL> QUERY BONES.DEM.MEDICINE A.SMD
Total response time:     0.04 seconds
Response status:         normal, successful completion
Authoritative answer:    yes
Number of answers:       1
Canonical name:          bones.dem.medicine
TTL:                     1 day
Alias translations:
    from:                bones.dem.medicine
    to:                  bones.dem.medicine
Answers:
    data type is "a.smd"
        Syntax is ADDR:...(DESCRIPTION=(ADDRESS=
      (COMMUNITY=tcp)(PROTOCOL=TCP)(Host=cowboy)
      (Port=1522))(CONNECT_DATA=(SID=rodeo)))
```

*Id.*

In this example, the "number of answers" is 1. However, if multiple network objects are found using the same name or database link, the number of answers would be more than 1. As such *multiple* network objects or database links may be retrieved using the same name or database link, making the alleged "identifier" non-unique as to what it's identifying. [Goodrich Decl., ¶¶ 30-34; 44-51].

Furthermore, ONAG requires that the query command include the network object name and network object type. [*Id*, 129]. As such, ONAG attempts to identify network object using the network object name <u>and</u> network object type. This further confirms that a POSA would have understood the network object name to be non-unique; otherwise, the network object type would not be needed to locate the network object. Therefore, ONAG does not disclose that the network objects in the network from having non-unique names. [Goodrich Decl., ¶¶ 30-34; 44-51].

> ### a) Oracle Names's Names Servers and Queries do not include an identifier that uniquely identifies a single entity

As described above, claims 1, 10, 14, and 31 require location servers to contain location information, where location information consists of identifiers and associated locations. [NPL 42]. Each identifier identifies a *single* entity and the location information provides the location of the data pertaining to the entity in the network. The location information may be retrieved by querying the location server using the identifier. As such, a POSA would understand the claims to require a location server to contain an identifier and associated locations, and that a location query including the same identifier is used to retrieve the location information. [Goodrich Decl., ¶¶ 30-34; 44-51].

ONAG does not teach "identifiers" where each identifier identifies a *single* entity (e.g., network service or object, as interpreted by the Examiner). As described above, ONAG allows the same name to be used as both public and private names to identify different network services and objects. [*See e.g.*, ONAG, 54, 110].

ONAG also does not receive or process a query for the location of a network object that includes an identifier that uniquely identifies a single entity. ONAG requires that each query include the network object name and network object type. [ONAG, 129]. ONAG uses both the

network object name and network object type to attempt to identify the network object. Therefore, the network object name alone does not uniquely identify a single entity (e.g., network object). [*Id.*, *see also* Goodrich Decl., ¶¶ 30-34; 44-51].

Furthermore, ONAG queries identify all of the network objects that match a given name. [ONAG, 129]. ONAG may identify multiple network objects using a single identifier, therefore, the identifier does not uniquely identify a single entity (e.g., network object). [Goodrich Decl., ¶¶ 30-34; 44-51].

### 2. Servers in hierarchically structured networks do not "know" what's contained in other servers throughout the network

Oracle Names depends on a *hierarchical* structure. Figure 2-1 depicts a client-server connection in Oracle Names:



Figure 2 – 1 Components of a Network Using Oracle Names with the Dynamic Discovery Option

**ONAG, Figure 2-1 (p. 32)**

Figure 2-1 of ONAG (depicted above) and Fig. 18 (reproduced below) of the '978 patent illustrate the differences between Oracle Names and the '978 patent:

33

# FIG. 18



While these depictions may look similar at a high level, they obscure the critical differences between ONAG and the claimed invention of the '978 patent. These differences become apparent when the "network" is examined to see *how servers and their relationships are structured*:



**Patent Owner's Figure C**

Oracle Names depends on a *hierarchical* structure where a client can only query to the node immediately "above" or "below" it in the "tree." If the queried server does not have the requested information, that server forwards the query to the next higher node and so on until it reaches the root server. The root server, if it has the desired information registered, will

forward the request down successive nodes until it arrives at the server last known to have the information. As the example in Fig. C-4 shows, and as explained on pages 190-192 of ONAG, even a modestly sized environment with a handful of servers may take numerous iterations to return a query.[2] [Goodrich Decl., ¶¶ 52-57].

The Name Servers in ONAG's hierarchical configuration do not have any knowledge of what is stored in other Names Server in the network, beyond their direct children. [ONAG, p. 191]. If a queried server or its direct children do not have the requested information, the server knows only to forward a query to the next Names Server up the tree. **Names Servers are ignorant as to what information other Names Servers beyond their direct children may have and have no way of finding out.** This was the common and accepted configuration at the time of the invention. [Goodrich Decl., ¶¶ 52-57]. .

In contrast, independent claims 10 and 14 and dependent claim 3 of the '978 patent require networks with *non-hierarchical* (or "cluster") configurations of location servers that enable each server in the server network to **know** which location server contains the location(s)of the desired data. For example, if a queried server receives a request for the data locations associated with a particular identifier but does not have it, that server will return a message to indicating which other server in the network contains the requested information. This configuration "collapses" the hierarchical composition of Oracle Names, making it entirely different in practice and principle from what ONAG discloses. ONAG in no way teaches or suggests something so fundamentally different from the architecture of the Oracle Names system. [Goodrich Decl., ¶¶ 35-43, 52-57].

> **3.    ONAG lacks the non-hierarchical cluster structure required to satisfy the requirements of independent claims 10 and 14 and dependent claim 3**

Independent claims 10 and 14 and dependent claim 3 require, expressly or impliedly, a non-hierarchical cluster configuration of locations servers in a network. For example, claim 10 recites "**the plurality of location servers are arranged in a cluster topology** such that each location server contains a unique set of location information of an aggregate set of the

---

[2] ONAG cautions that a "network can have no more than five well-known Names Servers, that is, Names Servers that use the Dynamic Discovery Option." [ONAG., pp. 28, 32, 60].

location information [...] **programming logic stored on each of the plurality of location servers responsive to a location query** for a desired identifier to return one of a location message [...] a redirect message if the queried location server does not contain location information relevant to the desired identifier, **wherein the redirect message comprises information for finding a location server having location information related to the desired identifier**." As such, claim 10 explicitly recites that the location servers are arranged in a cluster topology. Furthermore, claim 10 requires each location server be configured to transmit a redirect message comprising information to for finding a location server having location information. Therefore, these limitations require a non-hierarchical cluster configuration. [Goodrich Decl., ¶¶ 35-43, 52-57]. These limitations cannot be met in hierarchical configurations such as Names Server because *each* location server in tree-structures *do not necessarily store* information for finding the location server having the desired location information. [*Id*]. Turning off request forwarding, as taught by ONAG, does not enable servers in the Names network to meet this limitation [*see infra,* pp. 28-29 and 44-45]. [Goodrich Decl., ¶¶ 35-43, 52-57].

Claim 14's non-hierarchical configuration is embodied in the requirement that the location server must be able to receive a location query from a client and return a "**redirect message to the client** if the queried location server does not contain data location information relevant to the entity identified in the query, **the redirect message comprising information for finding a location server storing the entity identified in the query**." [Goodrich Decl., ¶¶ 35-43, 52-57]. . Similar to claim 10, these limitations cannot be met in hierarchical configurations such as Names Server because location servers in tree-structures *do not necessarily store* information for finding the location server having the desired location information. [*Id*]. Furthermore, these limitations cannot be met in hierarchical configurations such as Names Server because location servers in tree-structures do not receive a location query from a client and return a redirect message to the client. [*Id*]. Turning off request forwarding, as taught by ONAG, does not enable servers in the Names network to meet this limitation [*see infra,* pp. 28-29 and 44-45]. [Goodrich Decl., ¶¶ 35-43, 52-57].

Claims 3 contains a similar requirement that location servers in the network be capable of returning "redirect messages" where the "**redirect message** comprising information for finding a location server **known to have location information relevant to the location**

**query**." Therefore, the redirect message indicates with specificity and certainty which data location server in the network contains the location information for the desired entity. A hierarchical configuration does not enable nodes to have such knowledge. [Goodrich Decl., ¶¶ 35-43, 52-57]. Accordingly, the redirect message limitations, as recited by claim 3, demonstrate that claim 3 recite a non-hierarchical cluster configuration. [*Id*].

ONAG does not teach or suggest the aforementioned limitations. ONAG's Figure C-4 (reproduced below) depicts the process by which a client sends a request for information to the Names Service network:



**ONAG, Figure C-4 (p. 191)**

ONAG describes the process of requesting information in a Names Service network as: "1. The client sends request to preferred Names Server in its local region (DR1). 2. The preferred Names Server in DR1 issues request for the Names Servers authoritative for the destination server (in region DR2.1). 3. The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2. 4. The receiving server in DR2 forwards the request to a Names Server in region DR2.1. 5. The name is retrieved from its authoritative Names Server in DR2.1. 6. The names Server in region DR2 caches the answer and returns it to the root. 7. The root caches the answer and returns it to the preferred Names Server in region DR1. 8. The preferred Names Server caches the answer and returns it to the client. 9. The client establishes a connection to the destination server." [*Id*].

ONAG teaches that if a queried server does not have the requested information, that server forwards the request to the next server up the hierarchy until one is able resolve the request; if none can, the process errors out. [*Id.*, 190-192]. Oracle Names requires traversals up and down the hierarchical tree in order to resolve a request and return a response. [*Id*]. ONAG indicates its compatibility with DNS-based systems by disclosing:

> Many companies already have global naming standards for their PC LANs, large hosts, or mail systems. If such policies exist, you can use them as the basis for the Oracle Names naming model. Using the same structure leverages the investment in the education users already have with global names.
>
> For example, many companies with TCP/IP networks use the Domain Name Service (DNS) model for communication on the worldwide Internet. In this model, all naming models are hierarchical from a set of base domains such as:
>
> > • COM - commercial organizations
> >
> > • EDU - educational institutions
> >
> > • MIL - military
> >
> > • ORG – organizations
>
> Individual companies are then assigned domains within which to build their naming model (for example, ACME.COM). To adapt any example in this book to the DNS Internet model, add a single high-level domain, such as COM (or other stem). For organizations which are on the Internet, and therefore already have one or more DNS domains, the sensible choice is to align their Oracle naming domains with their DNS domains.

*Id.*, 56-57.

Like DNS, Oracle Names is dependent on its network paths. Names Servers do not have any knowledge of which Names Server contains the address to the requested network service (beyond itself and its direct children) nor is anything taught about *any* (much less *every*) Names Server being configured to determine the location of the requested information. ONAG's hierarchical structure does not enable a given Names Server the ability to know or determine what is stored in every Names Server in the network. [Goodrich Decl., ¶¶ 35-43, 52-57]. ONAG's disclosures referring to disabling or turning off "name request forwarding,"

which the Examiner points to as teaching the redirect message, as recited in independent claims 10 and 14 and dependent claim 3, are inapposite. [*Id*].

    ***a)***    *Setting "name request forwarding" to "off" in ONAG does not disclose the "redirect message" limitations of claims 6 and 15*

Disclosures relating to setting "name request forwarding" to "off" in ONAG neither teaches nor suggests that Names Servers are configured provide with *any* information to determine which Name Server contains the requested information. As discussed previously and more fully below (*infra*, pp. 44-45), turning off "forwarding" in Oracle Names does not somehow enable a server to know which other server in the network has the requested information. All that happens when forwarding is turned off is that the queried server, instead of forwarding the query onto the next server, simply tells the querying server what that next server is. Using Fig. C-4 above to illustrate, the client queries DR1:



If DR1 does not have the information, it forwards the query to ROOT. If ROOT does not have the information (and its direct children do not have the information) and its "forwarding" capabilities are "off," it cannot forward the query to DR2, as it otherwise would have done. Instead, ONAG teaches that ROOT returns a message to DR1 identifying DR2, which *can* have the requested information *or not*. In other words, ROOT simply tells DR1 the next server it would otherwise have queried had its forwarding not been turned off. DR2 may or may not have the requested information – ROOT has no way of knowing. Because ROOT does not know one way or another, the Oracle system does not meet the knowledge requirement of the claims.

In order to satisfy the requirements of independent claims 10 and 14 and dependent claim 3, Names Service would have to abandon its "tree" composition that is the center of its organizational structure in favor of a non-hierarchical one where any given server is able to return either the requested information or information useable by the client to locate the server with the requested information. Nothing in ONAG states or suggests that such elimination of hierarchical structures would be desirable. [Goodrich Decl., ¶¶ 35-43, 52-57].

### F. ONAG and OracleSG do not render claims 1 and 31 obvious

#### 1. Claim 1

For ease of reference, claim 1 is reproduced below:

> **[1.pre]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising:

> **[1.a]** a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier,

> **[1.b]** wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity

> **[1.c]** a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and

> **[1.d]** programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message,

> **[1.e]** the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity.

##### a) The combination of ONAG and Oracle SG do not teach or suggest an "identifier" that uniquely identifies a single entity, as required by claim 1

As stated above, claim 1 requires that a location server store location information that comprises an identifier and at least one location string associated with the identifier. Claim 1 further requires that a location query received by a given location server include an identifier. As further stated above, based on the construction of "identifier," an "identifier" identifies a *single* entity. [NPL 43].

### (1) *ONAG*

The Examiner relies on the Oracle Names's service names (e.g., "Poultry") to satisfy the following limitation "the location information comprising an identifier." [Office Action, 5].[3] However, as explained above, a POSA would not understand ONAG to teach this limitation. ONAG allows users to assign identical names or database links to different (non-unique) network objects (e.g., databases). [*See e.g.,* ONAG, 54 and 110]. Therefore, the same name or database link can point to two different network objects. As such, ONAG's service names do not uniquely identify a *single* entity. [Goodrich]

The Examiner relies on ONAG's querying process to satisfy the following limitation: "programming logic stored on each of the location servers responsive to a location query identifying a desired entity ..." [Office Action, 7]. However, ONAG's querying process confirms that ONAG's service names and links may be non-unique, i.e., ONAG requires each query include the network object name and network object type. [ONAG, 129]. In this regard, ONAG uses both the network object name and network object type to attempt to identify the network object. Therefore, the network object name does not uniquely identify a single entity (e.g., network object). [*Id., see also* Goodrich Decl., ¶¶ 30-34; 44-51].

Furthermore, ONAG queries identifies all of the network objects that match a given name, including multiple network objects, using a single identifier, further showing that ONAG does not teach identifier that uniquely identify a single entity. (e.g., network object). [ONAG, 129; *see also* Goodrich Decl., ¶¶ 30-34; 44-51]

---

[3] The Office Action does not clearly state where ONAG discloses an "entity." For the purposes of this response Patent Owner assumes that the Examiner is interpreting the network object as the "entity."

For at least the reasons above, ONAG fails to teach or suggest an identifier that uniquely identifies an entity, as required by claim 1.

### (2) Oracle SG fails for the same reason as ONAG

The Examiner alleges that OracleSG also teaches or suggests an identifier. Specifically, the Examiner alleges that OracleSG's easy name synonyms for specifying a database correspond to the "identifier string." [Office Action, 6]. However, OracleSG's easy-name synonyms do not uniquely identify a single entity, as required by claim 1.

OracleSG describes easy name synonyms to retrieve and connect to a database. [OracleSG, 86-87]. OracleSG further describes assigning synonyms to tables and views. [*Id.*, 189-190; *see also* Goodrich Decl., ¶60].

Even assuming, *arguendo*, a database, table or view may be interpreted as an "entity," OracleSG does not teach or suggest a synonym that uniquely identifies a database, table or view. For example, OracleSG describes using private or public synonyms to identify a database, table, or view. [*Id*]. Multiple users in the database network may use the same synonym to identify the different databases, tables, or views. [*Id*]. That is, a first user may use synonym X to refer to database 1 and a second user in the same database network may also use synonym X to refer to database 2. [*Id*]. Therefore, OracleSG does not teach or suggest an identifier that uniquely identifies an entity. [Goodrich Decl., ¶60].

The Examiner also points to OracleSG's SQL query to retrieve the locations of data files in a network to satisfy the following limitation: "programming logic stored on each of the location servers responsive to a location query identifying a desired entity ..." [Office Action, 9]. However, the SQL query does not include an easy name or synonym, nor does Oracle SG contemplate using an easy name or synonym with this SQL query. [OracleSG, 152]. Furthermore, OracleSG's SQL query is not processed or resolved by a Names Server. [*Id*; *see also* Goodrich Decl., ¶60].

In light of the above, OracleSG fails to cure the deficiencies of ONAG.

### *2.* Claim 31

For ease of reference, claim 31 is reproduced below:

Claim 31 recites:

> **[31.pre]** A system for managing location information and providing location information to location queries, the system comprising:

> **[31.a]** a location server operating in accordance with a transfer protocol, the transfer protocol comprising instructions for manipulating an identifier and at least one location associated with the identifier,

> **[31.b]** wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity,

> **[31.c]** the location server containing location information corresponding to at least one entity and formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network; and

> **[31.d]** programming logic stored on the location server responsive to a location query identifying a desired entity to return a location message,

> **[31.e]** the location message comprising locations associated with the desired entity, wherein the location server returns the location message if the location server contains location information for the desired entity.

### a) The combination of ONAG and Oracle SG does not teach or suggest an identifier that uniquely identifies a single entity, as required by claim 31

As stated above, claim 31 requires that a location server comprise location information corresponding to at least one entity. The location information is construed as one or more identifiers and their associated locations. [NPL 42]. Claim 31 further requires that a location query received by a given location server include an identifier. As further stated above, an "identifier" must identify a *single* entity. [NPL 43].

### (1) *ONAG*

While it is unclear which elements of Oracle Names the Examiner interprets as the "identifier," "entity," and/or "application server," the Examiner points to the "POULTRY" example on pages 52-53 of ONAG to allegedly teach or suggest these limitations. [Office

Action, 12]. The example identifies "POULTRY" as a service name that is used to identify a network address of a database service. [ONAG, 52-53].

However, as explained above, ONAG allows its users to assign identical names or database links to the different network objects (e.g., databases). [*See e.g.,* ONAG, 54 and 110]. Therefore, the same name or database link can point to two different network objects. As such, Oracle Names's service names do not uniquely identify a *single* entity. [Goodrich Decl., ¶¶ 30-34; 44-51]

Moreover, the Examiner relies on the ONAG's querying process to satisfy the following limitation: "programming logic stored on the location server responsive to a location query identifying a desired entity ..." [Office Action, 13]. However, as explained above, ONAG's querying process confirms that an identical service name or link may be used to identify multiple network objects. [Section IV.F.1.a, *supra*; Goodrich Decl., ¶¶ 30-34; 44-51].

For at least the reasons above, ONAG fails to teach or suggest an identifier that uniquely identifies an entity, as required by claim 31.

(2)     Oracle SG fails for the same reason as ONAG

The Examiner alleges that OracleSG also teaches or suggests an "identifier," as claimed in claim 31. Specifically, the Examiner alleges that OracleSG's easy name synonyms for specifying a database correspond to the "identifier string." [Office Action, 12]. However, OracleSG's easy-name synonyms do not uniquely identify a single entity, as required by claim 31.

OracleSG describes easy name synonyms to retrieve and connect to a database. [OracleSG, 86-87]. OracleSG further describes assigning synonyms to tables and views. [*Id.,* 189-190].

As explained above, OracleSG does not teach or suggest a synonym that uniquely identifies a database, table or view. For example, OracleSG describes using private or public synonyms to identify a database, table, or view. [*Id*]. Multiple users in the database network may use the same synonym to identify the different databases, tables, or views. [*Id*]. Therefore,

OracleSG does not teach or suggest an identifier that uniquely identifies an entity. [Goodrich Del., ¶ 60].

The Examiner also points to OracleSG's SQL query to retrieve the locations of data files in a network to satisfy the following limitation: "programming logic stored on each of the location servers responsive to a location query identifying a desired entity …" [Office Action, 14]. However, the SQL query does not include an easy name or synonym, nor does Oracle SG contemplate using an easy name or synonym with this SQL query. [OracleSG 152]. Furthermore, OracleSG's SQL query is not processed or resolved by a Names Server. [*Id*].

In light of the above, OracleSG fails to cure the deficiencies of ONAG.

> ### b) The combination of ONAG and Oracle SG does not teach or suggest "wherein the location of data […] comprises an application server in communication with the network"
>
> #### (1) *ONAG*

Claim 31 requires that the location of data comprise an application server. That is, the location of the data identifies the application server where the data is stored.

The Office is unclear which elements from ONAG are interpreted as the "entity," "data," and "application server." [Office Action, 12-13]. However, based on the Examiner's interpretation of ONAG, the Examiner appears to identify both the entity and application server as the same element in ONAG. [*Id*]. If so, the reasoning in the Office Action improperly collapses distinct claim elements into the same ONAG feature. *See CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) (holding there is a presumption that when different words are used to describe different elements, they have different meanings).

Therefore, ONAG does not teach or suggest "wherein the location of data […] comprises an application server in communication with the network," as recited by claim 31.

> ### c) OracleSG does not cure the deficiencies of ONAG

Again it is unclear which elements from ONAG are interpreted as the "entity," "data," and "application server." [Office Action, 12-13]. However, based on the Examiner's

interpretation of OracleSG, the Examiner appears improperly to collapse distinct claim elements (e.g., entity and application server) into the same OracleSG feature. [*Id*].

Therefore, OracleSG does not teach or suggest "wherein the location of data […] comprises an application server in communication with the network," as recited by claim 31.

### 3. A POSA would not be motivated to modify ONAG with OracleSG to satisfy the requirements of claims 1 and 31

#### *a)* *A POSA would not find it obvious, or be motivated, to modify ONAG or combine it with OracleSG, to achieve the limitations of claims 1 and/or 31*

As described above, ONAG and OracleSG do not impose a restriction of identifiers that uniquely identifying a *single* entity. This is because ONAG and OracleSG's structure allows for assigning public and private names or links to network objects. [*See e.g.*, ONAG, 54, 100, 110, 128-129; OracleSG, 181, 189-190]. The names or links may be repeated for different network objects, and therefore, a single name or link may identify two or more network objects. [*Id*].

A POSA would not be motivated or find it obvious to modify ONAG and/or OracleSG to prevent users from assigning non-unique public or private names or links to network objects because ONAG and/or OracleSG's primary purpose is to locate a single network object. ONAG and/or OracleSG encourages its users to assign names or links to network objects without a restriction of uniquely identifying a single network object, so that the respective users may locate the desired network object using their assigned name or link based on their own personal needs. [*See e.g.*, ONAG, 54, 100, 110, 128-129; OracleSG, 181, 189-190].

For example, as explained by Dr. Goodrich, a corporation implementing ONAG and/or OracleSG may include Human Resources (HR) and Tax departments. The users of the HR department may need to locate or access an employees database including HR information and the users of the Tax department may need to locate or access a different employees database including tax information. In this scenario, the HR department may assign the employees database including HR information the name or link "Employees" and the Tax department may also assign the employees database including tax information the name or link "Employees."

In this example, the name or link "Employees" is tied to two different databases. [Goodrich Del., ¶¶ 58-69].

ONAG and/or OracleSG allow and encourage both departments to use the same name to point to different databases because it allows both departments to access their respective databases using the name or link. ONAG and/or OracleSG allow both departments different databases using the same name or link by using multiple parameters, including a network object name or link, type of network object, user information, etc., when attempting to locate the respective database. [*See e.g.,* ONAG, 54, 100, 110, 128-129; OracleSG, 181, 189-190; Goodrich Del., ¶¶ 58-69].

Therefore, a POSA would not find it obvious to modify ONAG and/or OracleSG to prevent users from assigning non-unique public or private names or links to network objects because it would be counterintuitive to the primary purpose of ONAG and/or OracleSG. [Goodrich Del., ¶¶ 58-69].

> **b)** *A POSA would not find it obvious, or be motivated, to modify ONAG or combine it with OracleSG, to achieve the limitations of claims 1 and 31 because OracleSG suffers from the same flaws as ONAG*

As indicated above, ONAG and OracleSG do not teach or suggest an identifier that uniquely identifies a single entity. [*See* Section IV.F.1.a, *supra*]. Therefore, a POSA would not be motivated or find it obvious to turn to references that include the same flaws as ONAG to achieve the requirements of claims 1 and 31 because a POSA would understand that modifying ONAG with OracleSG *would not* satisfy claim 1 and 31's requirements. [Goodrich Del., ¶¶ 58-69].

> **c)** *A POSA would not be motivated to modify ONAG or combine it with OracleSG because there was no reasonable expectation of success to satisfy Claim 1 or 31's requirements*

In order to establish a reasonable expectation of success, there must be "a reasonable expectation of achieving what is claimed in the patent-at-issue." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016); *see also Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1380-1382 (Fed. Cir. 2021). Here, the basis for the Examiner's conclusion as to reasonable expectation of success is unclear and

appears to employ impermissible hindsight. In any regard, the Examiner does not consider the incompatibility of the asserted references with the '978 patent.

As described above, ONAG and OracleSG allows for assigning public and private names or links to network objects. [*See e.g.,* ONAG, 54, 100, 110, 128-129; OracleSG, 181, 189-190]. The names or links may be repeated for different network objects, and therefore, a single name or link may identify two or more network objects. [*Id*].

ONAG and OracleSG do not contemplate preventing users from assigning non-unique names or links to network objects. Any attempt to modify or combine ONAG and OracleSG to impose such a restriction would require changing the entire premise of private and public names and links for network objects. As such, modifying (or combining) ONAG with OracleSG to achieve claims 1 and 31's requirements would require significant modifications that may result in drastically changing the functionality. Therefore, a POSA would not have had reasonable expectation of success to modify ONAG with OracleSG to meet the claim requirements of claims 1 and/or 31. [Goodrich Del., ¶¶ 58-69].

> ### d) Modifying ONAG or combining it with OracleSG to satisfy claims 1 and/or 31's requirements changes the principle operation underpinning ONAG

If the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims prima facie obvious. In re Ratti, 270 F.2d 810, 813 (CCPA 1959) (holding the "suggested combination of references would require a substantial reconstruction and redesign of the elements shown in [the primary reference] as well as a change in the basic principle under which the [primary reference] construction was designed to operate.").

Part of ONAG's principle operation is the ability to locate a network object. ONAG and OracleSG allows for assigning public and private names or links to network objects. [*See e.g.,* ONAG, 54, 100, 110, 128-129; OracleSG, 181, 189-190]. The names or links may be repeated for different network objects, and therefore, a single name or link may identify two or more network objects. [*Id*]. ONAG encourages its users to assign names or links to network objects without a restriction of uniquely identifying a single network object, so that the

respective users may locate the desired network object using their assigned name or link based on their own personal needs. [*Id*].

Imposing a restriction of using names or links that uniquely identify a single network object would require drastically changing the functionality of public and private names or links. This would be counterintuitive to ONAG's primary purpose of locating a desired network object using the users' assigned name or link based on the users' personal needs and requirements.

Therefore, modifying ONAG or combining it with OracleSG to satisfy claims 1 and/or 31's requirements changes the principle operation underpinning ONAG. [Goodrich Del., ¶¶ 58-69].

### G. ONAG, OracleSG, and McGarvey do not render independent claims 10 and 14, and dependent claim 3 obvious

#### *1.* Claim 10

For ease of reference, claim 10 is reproduced below:

> **[10.pre]** A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising:

> **[10.a]** a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and comprising at least one application server address,

> **[10.b]** wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and

> **[10.c]** programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message,

> **[10.d]** wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and

**[10.e]** a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier.

### *a)* The combination of ONAG, OracleSG, and McGarvey does not teach or suggest an "identifier" that uniquely identifies a single entity, as required by claim 10

Claim 10 requires "location servers containing location information corresponding a plurality of entities." "Location information" is construed as one or more identifiers and their associated locations. [NPL 42]. Claim 10 also requires the location servers be responsive to "a location query for a desired identifier." As stated above, an "identifier" identifies a *single* entity. [NPL 43].

### (1) *ONAG*

While it is unclear which elements of Oracle Names the Examiner interprets as the "identifier" and/or "entity," as recited in claim 10, the Examiner points to the POULTRY example on pages 52-53 of ONAG to allegedly teach or suggest these limitations. [Office Action, 19-20]. ONAG describes POULTRY as a service name that is used to identify a network address of a database service. [ONAG, 52-53].

However, as explained above, ONAG allows its users to assign the *same* name or database link to *different* network objects (e.g., databases), therefore making the name/link *non*-unique. [*See e.g.,* ONAG, 54 and 110]. As such, Oracle Names' service names do not uniquely identify a *single* entity. As explained above, Oracle Names' querying process confirms that an identical service name or link may be used to identify multiple network objects. [Section IV.F.1.a, *supra*; Goodrich Decl., ¶¶ 30-34; 44-51].

In addition, The Examiner does not address limitation "programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier," as recited in claim 10.

For at least the reasons above, ONAG fails to teach or suggest an identifier that uniquely identifies an entity, as required by claim 10.

        (2)     *Oracle SG fails for the same reason as ONAG*

The Examiner alleges OracleSG also teaches or suggests an identifier. Specifically, the Examiner alleges OracleSG's easy name synonyms for specifying a database correspond to the "identifier string." [Office Action, 12]. However, OracleSG's easy-name synonyms do not uniquely identify a single entity, as required by claim 10.

OracleSG describes easy name synonyms to retrieve and connect to a database. [OracleSG, 86-87]. OracleSG further describes assigning synonyms to tables and views. [*Id.*, 189-190].

As explained above, OracleSG does not teach or suggest a synonym that uniquely identifies a database, table or view. For example, OracleSG describes using private or public synonyms to identify a database, table, or view. [*Id*]. Multiple users in the database network may use the same synonym to identify the different databases, tables, or views. [*Id*]. Therefore, OracleSG does not teach or suggest an identifier that uniquely identifies an entity. [Goodrich Decl., ¶¶ 60].

In light of the above, OracleSG fails to cure the deficiencies of ONAG.

        (3)     *McGarvey does not cure the deficiencies of ONAG and OracleSG*

McGarvey is not relied upon for and does not teach or suggest an identifier that uniquely identifies a single entity, as required by claim 10.

      ***b)***     **The combination of ONAG, Oracle SG, and McGarvey does not teach or suggest "a <u>cluster</u> topology such that each location server contains a unique set of location information of an aggregate set of the location information"**

        (1)     *ONAG only describes Names Servers distributed in a <u>hierarchical</u> topology*

The Examiner points to ONAG Figure C-4 as allegedly disclosing the claimed "cluster topology" recited in claim 10. But ONAG only describes the hierarchical topology of Names Servers.

As described above, claim 10 requires that the location servers are distributed in a non-hierarchical (or "cluster") configuration.

In contrast, Oracle Names depends on a *hierarchical* structure where a client can only query the node immediately "above" or "below" it in the "tree." This difference in configurations is illustrated schematically in Patent Owner's Figure C (reproduced below).



**Patent Owner's Figure C**

As shown in Patent Owner's Figure C, the cluster configuration of claim 10 and hierarchical configuration of Oracle Names are fundamentally different. The "cluster" configuration of claim 10 and exemplified in Fig. 19 allows any location server claimed in claim 10 to "respond" to a location query by returning either the queried for location information or a redirect message comprising information for finding the location server that has the location information. Names Servers in Oracle Names are structured hierarchically and are incapable of responding in the required way. [Goodrich Decl., ¶¶ 35-43; 52-57].

ONAG exclusively uses a hierarchical configuration based on its intended function. In ONAG, a client can only query to the node immediately "above" or "below" it in the "tree." [ONAG, 190-192]. If the queried server does not have the requested information, that server forwards the query to the next higher node and so on until it reaches the root server. [*Id*]. The root server, if it has the desired information registered, will forward the request down

successive nodes until it arrives at the server last known to have the information. [*Id*]. ONAG does not contemplate collapsing its hierarchical structure into a linear cluster topology. [Goodrich Decl., ¶¶ 35-43; 52-57].

Therefore, ONAG does not teach or suggest "a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information," as recited by claim 10.

(2)    *OracleSG and McGarvey fail for the same reasons*

The Examiner does not rely on and OracleSG and McGarvey do not contemplate a non-hierarchical cluster topology, as required by claim 10. Therefore, OracleSG and McGarvey do not cure the deficiencies of ONAG.

**c)    The combination of ONAG, Oracle SG, and McGarvey does not teach or suggest "programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return [...] a redirect message, [...] the redirect message comprises information for finding a location server having location information related to the desired identifier"**

Claim 10 requires that each location server in the network be configured to transmit a redirect message. Furthermore, claim 10 requires that the *redirect message* include information for finding the location server having the location information related to the desired identifier. As such, claim 10 requires that the information will allow for finding the location server having the location information with certainty. [Goodrich Decl., ¶¶ 35-43; 52-57].

(1)    *ONAG's "FORWARDING_AVAILABLE is set to OFF"*
       *does not satisfy this limitation*

The Examiner alleges ONAG teaches a redirect message based on its discussion of "FORWARDING_AVAILABLE is set to OFF." [Office Action, 23-26]. However, ONAG's "FORWARDING_AVAILABLE is set to OFF" teaches something altogether different from and not apropos to the redirect message requirement of claim 10.

As an initial matter, *each* Names Server in Oracle Names is not configured to transmit a redirect message. ONAG states that, if FORWARDING_AVAILABLE is set to OFF:

Rather than forward the request and return the answer *the Names Server simply tells the requestor the address of the Names Server that **can** answer the request.* Note that there is no overall reduction in work; the work is simply displaced from the non–forwarding Names Server to the requesting Names Server.

WARNING: If FORWARDING_AVAILABLE is set to off, any clients who rely directly on that Names Server will be unable to resolve foreign names. Clients are not capable of redirecting their requests as Names Servers would. Their requests will fail at that point, even if other Names Servers are listed in the NAMES.PREFERRED_SERVERS configuration parameter.

ONAG, p. 137 (emphasis added).

In this regard, the Names Server that received the query from the client cannot transmit a redirect message to the client because, clients are unable to redirect their requests. [*Id*]. Therefore, ONAG explicitly prevents *each* Names Server from transmitting a redirect message. [Goodrich Decl., ¶¶ 35-43; 52-57].

Furthermore, ONAG's redirect message does not include information for finding a location server having location information related to the desired identifier with any certainty. As explained above, and repeated here for context, Fig. C-4 can be used to illustrate what happens when FORWARDING_AVAILABLE is OFF versus when it is on.



For example, the client queries DR1. If DR1 does not have the information, it forwards the query to ROOT. If ROOT does not have the information and its

FORWARDING_AVAILABLE is set to OFF, it cannot forward the query to DR2, as it otherwise would have done. Instead, ONAG teaches that ROOT shifts the work to DR1 by returning a message to DR1 identifying DR2, which *can* have the requested information *or not*. In other words, ROOT simply tells DR1 the next server it would otherwise have queried had its forwarding not been turned off. A POSA would understand ONAG to teach that DR2 may *or may not* have the requested information because ROOT has no way of knowing whether it does. Because ROOT does not know one way or another, the Oracle system does not meet the knowledge requirement of the claims. [Goodrich Decl., ¶¶ 35-43; 52-57].

ONAG's hierarchical structure does not contemplate having any given server in the Names Server network know which other server contains the queried information. [Goodrich Decl., ¶¶ 35-43; 52-57]. Therefore, ONAG hierarchical structure does not allow a Names Server to return a redirect message that includes information for finding a location server having location information related to the desired identifier with any certainty. [*Id*].

For at least the reasons above, ONAG does not teach or suggest "programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return […] a redirect message, […] the redirect message comprises information for finding a location server having location information related to the desired identifier," as recited by claim 10.

### (2)     *McGarvey does not cure the deficiencies of ONAG*

The Examiner points to McGarvey's TCP/IP resolution as allegedly teaching or suggesting a redirect message to the client that "comprises information for finding a location server having location information related to the desired identifier," as recited by claim 10. [Office Action, 24-25]. However, McGarvey is silent with respect to transmitting information to *find* a location server having location information related to the desired identifier.

McGarvey merely indicates that in the TCP/IP name resolution process, if a names server cannot resolve a host name based on a client query, the names sever returns information about a different server so the client may send the query to the different server. [McGarvey, 1:40-49]. The client cannot use the information about a different server to find the location server having the location information with any degree of certainty.

Furthermore, McGarvey describes establishing communication with a host by forwarding name server queries. [*Id.,* 5:3-35 and Fig.3]. The process shown in FIG. 3 is terminated when the hostname is resolved, or a failure message is sent to the client. [*Id.,* 5:5-43]. This failure message is <u>not</u> the claimed redirect message. The failure message indicates only that the domain name has not been found. [*Id*]. McGarvey never teaches a failure message that includes information to find the location server having the location information with any degree of certainty.

Therefore, McGarvey does not teach or suggest "programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return […] a redirect message, […] the redirect message comprises information for finding a location server having location information related to the desired identifier," as recited by claim 10. [Goodrich Decl., ¶¶ 35-43; 52-57; 85-86].

### (3) *OracleSG does not cure the deficiencies of ONAG and McGarvey*

OracleSG is not relied upon for and does it teach or suggest "programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return […] a redirect message, […] the redirect message comprises information for finding a location server having location information related to the desired identifier," as recited by claim 10.

### 2. Claim 14

For ease of reference, claim 14 is reproduced below:

[**14.pre**] A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising:

[**14.a**] receiving a location query from a client at one of the plurality of location servers, the location query requesting an entity's location;

**[14.b]** sending a location response message to the client if the queried location server contains location information relevant to an entity identified in the query,

**[14.c]** the location response message comprising location information identifying at least one application server containing information relevant to the entity identified in the query; and

**[14.d]** sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query,

**[14.e]** the redirect message comprising information for finding a location server storing the entity identified in the query.

### a) The combination of ONAG, OracleSG, and McGarvey does not teach or suggest an identifier that uniquely identifies a single entity, as required by claim 14

As stated above, claim 14 requires that each location server contain "a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location." Claim 14 further requires that a location query received by a given location server include an identifier. As further stated above, the construction of "identifier" requires it to identify only a *single* entity. [NPL 43].

### (1) *ONAG*

The Examiner's interpretation of "identifier," as recited in claim 14 in ONAG is unclear. Nevertheless, as explained above, ONAG allows its users to assign identical names or database links to the different network objects (e.g., databases). [*See e.g.*, ONAG, 54 and 110]. Therefore, the same name or database link can point to two different network objects. As such, Oracle Names's service names do not uniquely identify a *single* entity because it does not require that private and public uses of a name or link resolve to the same canonical address. As explained above, Oracle Names's querying process confirms that an identical service name or link may be used to identify multiple network objects. [Section IV.F.1.a, *supra*; Goodrich Decl., ¶¶ 35-43; 52-57].

The Examiner does not address the following limitation "an entity identified in the query," as recited in claim 14. Nevertheless, ONAG does not teach or suggest this limitation, for at least the reasons stated above.

For at least the reasons above, ONAG fails to teach or suggest an identifier that uniquely identifies an entity, as required by claim 31.

(2) <em>Oracle SG fails for the same reason as ONAG</em>

The Examiner alleges OracleSG teaches or suggests the claimed "identifier." Specifically, the Examiner states OracleSG's easy name synonyms for specifying a database correspond to the "identifier string." [Office Action, 12]. However, OracleSG's easy-name synonyms do not uniquely identify a single entity, as required by claim 31.

OracleSG describes easy name synonyms to retrieve and connect to a database. [OracleSG, 86-87]. OracleSG further describes assigning synonyms to tables and views. [*Id.*, 189-190].

As explained above, OracleSG does not teach or suggest a synonym that uniquely identifies a database, table or view. For example, OracleSG describes using private or public synonyms to identify a database, table, or view. [*Id*]. Multiple users in the database network may use the same synonym to identify the different databases, tables, or views. [*Id*]. Therefore, OracleSG does not teach or suggest an identifier that uniquely identifies an entity. [Goodrich ¶ 60].

In light of the above, OracleSG fails to cure the deficiencies of ONAG.

(3) <strong>McGarvey does not cure the deficiencies of ONAG and OracleSG</strong>

McGarvey is not relied upon and does not teach or suggest an identifier that uniquely identifies a single entity, as required by claim 14.

<strong><em>b)</em></strong> <strong>The combination of ONAG, OracleSG, and McGarvey does not teach or suggest the claimed redirect message</strong>

(1) <em>ONAG's "FORWARDING_AVAILABLE is set to OFF" does not satisfy this limitation</em>

The Examiner alleges ONAG teaches a redirect message based on its discussion of "FORWARDING_AVAILABLE is set to OFF." [Office Action, 30-33]. However, ONAG's "FORWARDING_AVAILABLE is set to OFF" teaches something altogether different from the redirect message requirement of claim 14.

As explained above, the Names Server that receives a query from a client cannot transmit a redirect message to the client because, clients are unable to redirect their requests. [*Id*]. Therefore, ONAG explicitly prevents the client from receiving a redirect message, as required by claim 14.

Furthermore, ONAG's redirect message does not include information for finding a location server having location information related to the desired identifier with any certainty. As explained above, ONAG's hierarchical structure does not contemplate having any given server in the Names Server network know which other server contains the queried information. [Section IV.G.1.c, *supra*; Goodrich Decl., ¶¶ 35-43; 52-57]. Therefore, ONAG hierarchical structure does not allow a Names Server to return a redirect message that includes information for finding a location server having location information related to the desired identifier with any certainty. [Goodrich Decl., ¶¶ 35-43; 52-57].

For at least the reasons above, ONAG fails to teach or suggest the claimed "redirect message."

(2)     *McGarvey does not cure the deficiencies of ONAG*

The Examiner points to McGarvey's TCP/IP resolution as allegedly teaching or suggesting a redirect message to the client that "comprises information for finding a location server having location information related to the desired identifier," as recited by claim 10. [Office Action, 31-33]. However, McGarvey is silent with respect to transmitting information to *find* a location server having location information related to the desired identifier.

As explained above. McGarvey merely indicates that in the TCP/IP name resolution process, if a names server cannot resolve a host name based on a client query, the names sever returns information about a different server so the client may send the query to the different

server. [McGarvey, 1:40-49]. The client cannot use the information about a different server to find the location server having the location information with any degree of certainty.

As further explained above, McGarvey describes establishing communication with a host by forwarding name server queries. [*Id.,* 5:3-35 and Fig.3]. The process shown in FIG. 3 is terminated when the hostname is resolved, or a failure message is sent to the client. [*Id.,* 5:5-43]. The failure message is not a redirect message. The failure message thus does not include information to find the location server having the location information with any degree of certainty. [Goodrich Decl., ¶¶ 35-43; 52-57; 85-86].

Therefore, McGarvey does not teach or suggest the claimed "redirect message."

> (3)     *OracleSG does not cure the deficiencies of ONAG and McGarvey*

OracleSG is not relied upon for and does it teach or suggest "sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query," as recited by claim 14.

> *3.*     **Claim 3**

Claim 3 depends from claim 1, and therefore is patentable over ONAG and OracleSG for at least the same reasons discussed with respect to claim 1. Claim 3 is further patentable over the cited prior art for the additional reasons below.

> *a)*     **The combination of ONAG, OracleSG, and McGarvey does not teach or suggest the claimed redirect message**

Claim 3 requires each location server in the network be configured to transmit a redirect message. Furthermore, claim 3 requires the redirect message to include information for finding the location server known to have location information relevant to the location query. As such, claim 3 requires that the information will allow for finding the location server having the location information with certainty. [Goodrich Decl., ¶¶ 35-43; 52-57].

> (1)     *ONAG's "FORWARDING_AVAILABLE is set to OFF" does not satisfy this limitation*

The Examiner alleges ONAG teaches a redirect message based on its discussion of "FORWARDING_AVAILABLE is set to OFF." [Office Action, 16-18]. However, ONAG's "FORWARDING_AVAILABLE is set to OFF" teaches something altogether different from and not apropos to the redirect message requirement of claim 3.

As described above, Oracle Names does not allow each Names Server from sending a redirect message. ONAG indicates that the Names Server that received the query from the client cannot transmit a redirect message to the client because, clients are unable to redirect their requests. [ONAG, 137]. Therefore, ONAG explicitly prevents *each* Names Server from transmitting a redirect message. [Section IV.G.1.c, *supra*; Goodrich Decl., ¶¶ 35-43; 52-57].

As further described above, ONAG's redirect message does not include information for finding a location server having location information related to the desired identifier with any certainty. ONAG's hierarchical structure does not contemplate having any given server in the Names Server network know which other server contains the queried information. [*Id.*, 137, 189-192; *Goodrich* Decl., ¶¶]. Therefore, ONAG hierarchical structure does not allow a Names Server to return a redirect message that includes information for finding a location server having location information related to the desired identifier with any certainty. [Section IV.G.1.c, *supra*; Goodrich Decl., ¶¶ 35-43; 52-57].

For at least the reasons above, ONAG fails to teach or suggest the claimed "redirect message."

(2)     *McGarvey does not cure the deficiencies of ONAG*

The Examiner points to McGarvey's TCP/IP resolution as allegedly teaching or suggesting a redirect message to the client that "comprises information for finding a location server having location information related to the desired identifier," as recited by claim 10. [Office Action, 17-18]. However, McGarvey is silent with respect to transmitting information to *find* a location server having location information related to the desired identifier with any certainty.

McGarvey merely indicates that in the TCP/IP name resolution process, if a names server cannot resolve a host name based on a client query, the names sever returns information

about a different server so the client may send the query to the different server. [McGarvey, 1:40-49]. The client cannot use the information about a different server to find the location server having the location information with any degree of certainty. [Section IV.G.1.c, *supra*; Goodrich Decl., ¶¶ 35-43; 52-57; 85-86].

Furthermore, McGarvey describes establishing communication with a host by forwarding name server queries. [*Id.,* 5:3-35 and Fig.3]. The process shown in FIG. 3 is terminated when the hostname is resolved, or a failure message is sent to the client. [*Id.,* 5:5-43]. This failure message is <u>not</u> the claimed redirect message. The failure message indicates only that the domain name has not been found. [*Id*]. The failure message thus does not include information to find the location server having the location information with any degree of certainty. [Section IV.G.1.c, *supra*; Goodrich Decl., ¶¶ 35-43; 52-57; 85-86].

Therefore, McGarvey fails to teach or suggest the claimed "redirect message."

### 4. A POSA would not be motivated to modify ONAG with OracleSG and/or McGarvey to satisfy claim requirements of independent claims 10 and 14 and dependent claim 3

#### a) A POSA would not find it obvious, or be motivated, to modify ONAG or combine it with OracleSG and/or McGarvey, to achieve the limitations of independent claims 10 and 14 and dependent claim 3

##### (1) A POSA would not be motivated or find it obvious to modify the ONAG, OracleSG, and McGarvey combination to prevent users from assigning non-unique public or private names or links to network objects

As described above, ONAG and OracleSG do not impose a restriction of identifiers that uniquely identifying a *single* entity. This is because ONAG and OracleSG's structure allows for assigning public and private names or links to network objects. [*See e.g.,* ONAG, 54, 100, 110, 128-129; OracleSG, 181, 189-190]. The names or links may be repeated for different network objects, and therefore, a single name or link may identify two or more network objects. [*Id*].[4]

---

[4] As stated above, McGarvey is not relied upon to satisfy claim requirement that an identifier must uniquely identify a single entity.

A POSA would not be motivated or find it obvious to modify the ONAG-OracleSG-McGarvey combination to prevent users from assigning non-unique public or private names or links to network objects because ONAG and/or OracleSG's primary purpose is to locate a single network object. ONAG and/or OracleSG encourages its users to assign names or links to network objects without a restriction of uniquely identifying a single network object, so that the respective users may locate the desired network object using their assigned name or link based on their own personal needs. [*See e.g.,* ONAG, 54, 100, 110, 128-129; OracleSG, 181, 189-190].

For example, a corporation implementing ONAG and/or OracleSG may have multiple departments, including Human Resources (HR) and Tax. The users of the HR department may need to readily locate an employees database including HR information and the users of the Tax department may need to readily locate a different employees database including tax information. In this scenario, the HR department may assign the employees database including HR information the name or link "Employees" and the Tax department may also assign the employees database including tax information the name or link "Employees." [Goodrich Decl., ¶¶ 58-70].

ONAG and/or OracleSG allow and encourage both departments to use the same name to point to different databases because it allows both departments to access their respective databases using the name or link. ONAG and/or OracleSG allow both departments to connect to two different databases using the name or link by using multiple parameters, including a network object name or link, type of network object, user information, etc. to locate the respective database. [*See e.g.,* ONAG, 54, 100, 110, 128-129; OracleSG, 181, 189-190].

Therefore, a POSA would not be motivated or find it obvious to modify the ONAG-OracleSG-McGarvey combination to prevent users from assigning non-unique public or private names or links to network objects because it would be counterintuitive to the primary purpose of ONAG and/or OracleSG. [Goodrich Decl., ¶¶ 58-70].

> (2) A POSA would not find it obvious to collapse ONAG's hierarchical configuration using OracleSG or McGarvey's teachings

As stated above, the limitations of independent claims 10 and 14 and dependent claim 3 require a non-hierarchical cluster configuration that allows location servers to return a redirect message that includes information that allows for finding the location server that include the desired location information.

ONAG's Name Servers has no such capability; the hierarchical tree structure of the network limits each server to knowing only about its direct children and therefore has no knowledge of information stored in other Names Servers. [ONAG, p. 191]. Accordingly, ONAG's Names Servers are not configured provide information that allows for determining with any specificity or certainty which data location server is known to include the sought-after data location information. Therefore, a POSA would not find it obvious to collapse ONAG's hierarchical configuration using OracleSG or McGarvey's teachings to allow for the Names Servers to transmit a redirect message that provides information that allows for determining with specificity the Names Server that contains the data location information. [Goodrich Decl., ¶¶ 71-95].

> **b)**    *A POSA would not find it obvious, or be motivated, to modify ONAG or combine it with OracleSG and/or McGarvey, to achieve the limitations of independent claims 10 and 14 and/or dependent claim 3 because OracleSG and McGarvey suffer from the same flaws as ONAG*

As indicated above, ONAG, OracleSG, and/or McGarvey do not teach or suggest an identifier that uniquely identifies a single entity. [*See* Sections IV.D.3; IV.E.1; IV.F.1; IV.G.1, *supra*]. Furthermore, as indicated above, neither ONAG, OracleSG, and/or McGarvey teach or suggest transmitting a redirect message that provides information that allows for determining with specificity the Names Server that contains the desired data location information. [*See* Section IV.E; IV.G.1, *supra*]. Therefore, a POSA would not be motivated or find it obvious to turn to references that include the same flaws as ONAG to achieve the requirements of independent claims 10 and 14 and dependent claim 3 because a POSA would understand that modifying ONAG with OracleSG and/or McGarvey *would not* satisfy independent claims 10 and 14 and/or dependent claim 3's requirements. [Goodrich Decl., ¶¶ 71-95].

> **c)**    *A POSA would not be motivated to modify ONAG or combine it with one or more of OracleSG, and/or McGarvey because there was no reasonable expectation of success to achieve the*

*limitations of independent claims 10 and 14 and/or dependent claim 3*

      (1)     A POSA would not have a reasonable expectation of success to modify ONAG with one or more of OracleSG and/or McGarvey to use an identifier which uniquely identify a single entity

In order to establish a reasonable expectation of success, there must be "a reasonable expectation of achieving what is claimed in the patent-at-issue." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016); *see also Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1380-1382 (Fed. Cir. 2021). Here, the basis for the Examiner's conclusion as to reasonable expectation of success is unclear and appears to employ impermissible hindsight. In any regard, the Examiner does not consider the incompatibility of the asserted references with the '170 patent.

As described above, ONAG and OracleSG allows for assigning public and private names or links to network objects. [*See e.g.*, ONAG, 54, 100, 110, 128-129; OracleSG, 181, 189-190]. The names or links may be repeated for different network objects, and therefore, a single name or link may identify two or more network objects. [*Id*].

ONAG and OracleSG do not contemplate preventing users from assigning non-unique names or links to network objects. Any attempt to modify or combine ONAG and OracleSG to impose such a restriction would require changing the entire premise of private and public names and links for network objects. As such, modifying (or combining) ONAG with OracleSG to achieve independent claims 10 and 14 and dependent claim 3's requirements would require significant modifications that may result in drastically changing the functionality.[5] [Goodrich Decl., ¶¶ 58-70].

      (2)     *A POSA would not have a reasonable expectation of success to modify ONAG with one or more of OracleSG and/or McGarvey to achieve the requirements of claims 10, 14, and 3 because of their different structures as compared to the '978 patent*

---

[5] As stated above, McGarvey is not relied upon and does not teach or suggest identifiers that uniquely identify a single entity.

As an initial matter, ONAG explicitly teaches away from using Dynamic Discovery for complicated networks. [ONAG, 21]. For example, ONAG explicitly states, "If you have a *simple* existing network that is growing, the Dynamic Discovery Option is a good choice." [*Id*]. (emphasis added). ONAG further states that Dynamic Discovery (or "DDO") is "not a good choice" and is "not suitable" for "large, enterprise-scale networks." (*Id*). A POSA would understand ONAG discourages the use of DDO in combination with large-scale networks. Furthermore, ONAG indicates that its Dynamic Discovery Option only works with SQL*Net 2.3. [*Id.; see also,* Goodrich Decl., ¶¶ 71-95]. Therefore, a POSA would not have a reasonable expectation of success to modify or combine ONAG with one or more of the complex networks described in OracleSG and/or McGarvey. [Goodrich Decl., ¶¶ 71-95].

Furthermore, the '978 patent is significantly different than conventional naming systems. Specifically, the '978 patent teaches the ability to linearly scale location servers using a cluster formation. This non-hierarchical cluster composition is expressly claimed in independent claims 10 and 14, and dependent claim 3, through the requirement that the redirect message provides information that allows for determining with specificity the Names Server that contains the desired data location information.[6] In contrast, naming systems like Oracle Names imposes a hierarchical tree structure that limits queries to be received by a client's local or preferred server, and servers are not configured to provide the aforementioned information. [Goodrich Decl., ¶¶ 71-95].

ONAG, OracleSG, and McGarvey do not contemplate a non-hierarchical cluster configuration. Furthermore, ONAG, OracleSG, and McGarvey do not contemplate determining with certainty the location of the requested information. Any attempt to modify or combine ONAG with OracleSG and/or McGarvey would require a wholesale collapsing of the hierarchical tree and a fundamental change as to enabling the Names Servers to determine which Names Server contains the location information. As such, modifying (or combining) ONAG with OracleSG and/or McGarvey to achieve claims 6 and 15's requirements would require significant modifications that may result in constructing a completely different system. Therefore, a POSA would not have had reasonable expectation of success to modify ONAG

---

[6] Claim 10 also explicitly claims that the location servers be in a cluster configuration.

(with or without OracleSG) with McGarvey to meet the claim requirements of independent claims 10 and 14, and/or dependent claim 3. [Goodrich Decl., ¶¶ 71-95].

Moreover, ONAG prevents transmitting redirect messages to clients. ONAG makes clear that, even in the event FORWARDING_AVAILABLE is set to OFF, "the work is simply displaced from the non-forwarding Names Server to the requesting *Names Server*." Oracle Admin goes on to specify:

> WARNING: If FORWARDING_AVAILABLE is set to off, any clients who rely directly on that Names Server will be unable to resolve foreign names. *Clients are not capable of redirecting their requests as Names Servers would*.

ONAG, p. 137.

ONAG prevents clients from redirecting their requests. As such, configuring ONAG to do so, as alleged in the Office Action, would require substantial reconstruction and redesign of ONAG. [Goodrich Decl., ¶¶ 71-95].

> **d)** *Modifying ONAG or combining it with one or more of OracleSG, and/or McGarvey to satisfy independent claims 10 and 14, and/or dependent claim 3's requirements changes the principle operation underpinning ONAG*

If the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims prima facie obvious. In re Ratti, 270 F.2d 810, 813 (CCPA 1959) (holding the "suggested combination of references would require a substantial reconstruction and redesign of the elements shown in [the primary reference] as well as a change in the basic principle under which the [primary reference] construction was designed to operate.").

Part of ONAG's principle operation is the ability to locate a network object. ONAG and OracleSG allows for assigning public and private names or links to network objects. [*See e.g.,* ONAG, 54, 100, 110, 128-129; OracleSG, 181, 189-190]. The names or links may be repeated for different network objects, and therefore, a single name or link may identify two or more network objects. [*Id*]. ONAG encourages its users to assign names or links to network

objects without a restriction of uniquely identifying a single network object, so that the respective users may locate the desired network object using their assigned name or link based on their own personal needs. [*Id*].

Imposing a restriction of using names or links that uniquely identify a single network object would require drastically changing the functionality of public and private names or links. This would be counterintuitive to ONAG's primary purpose of locating a desired network object using their assigned name or link based on the users' personal needs and requirements. [Goodrich, ¶¶ 58-70].

Furthermore, Oracle Names involves making network address and database link information in a distributed database network available to all nodes in the network. [ONAG at 5]. Specifically, ONAG involves a client transmitting a name resolution request to a Names Server. [*See e.g., id.,* 30-32; 52-54; 190-192]. The name resolution request includes a name or link for a network object. [*Id*]. The request is traversed up and down ta hierarchical tree configuration of Names Severs to retrieve a network address. [*See e.g., id.,* 190-192]. The client receives the network address in response to the name resolution request for the network service and connects with the network service using the network address. (*Id*).

ONAG's principle operation involves traversing a hierarchical tree configuration of Names Severs to retrieve a network address. [*Id*]. As described above, attempting to modifying ONAG with one or more of OracleSG and/or McGarvey to satisfy independent claims 10 and 14, and/or dependent claim 3's requirements would involve collapsing ONAG's hierarchical structure. This would require substantial reconstruction and redesign of ONAG's elements (e.g., Names Servers). [Goodrich Decl., ¶¶ 71-95].

Furthermore, as described above, ONAG prevents clients from redirecting their requests. As such, configuring ONAG to do so, as alleged in the Office Action, would require substantial reconstruction and redesign of ONAG. [ONAG, 137; Goodrich Decl., ¶¶ 71-95].

Therefore, attempting to modify ONAG or combine it with one or more of OracleSG, and/or McGarvey to satisfy independent claims 10 and 14, and/or dependent claim 3's requirements changes the principle operation underpinning ONAG.

### H. ONAG, OracleSG, and Rajani do not render claim 6 obvious

### 1. Claim 6

Claim 6 depends from claim 1, and therefore is patentable over ONAG and OracleSG for at least the same reasons discussed with respect to claim 1. As explained below, the addition of Rajani does not cure the deficiencies of ONAG and OracleSG, and their combination does not render Claim 6 obvious. [Goodrich Decl., ¶¶ 96-99].

#### a) The combination of ONAG, OracleSG and Rajani does not teach or suggest location information "maintained in an indexed location store indexed by a hash table," as recited by claim 6

Location information is construed as one or more identifiers and their associated locations. [NPL 42]. As such, claim 6 requires that the identifiers and their associated locations are maintained in an indexed location store indexed by a hash table.

##### (1) *ONAG and OracleSG do not teach or suggest a organizing location information in the location server using a hash table*

ONAG is not relied upon for and does not teach or suggest organizing location information in the location server using a hash table.

The Examiner points to OracleSG's brief mention of "hashing" to satisfy this limitation. However, OracleSG is completely silent regarding organizing identifiers and their associated locations in a location server using a hash table.

Therefore, ONAG and OracleSG do not teach or suggest location information "maintained in an indexed location store indexed by a hash table," as recited by claim 6. [Goodrich Decl., ¶¶ 96-99].

##### (2) *Rajani does not cure the deficiencies of ONAG and OracleSG*

The Examiner relies on Rajani's hash table to satisfy this limitation. However, Rajani does not teach or suggest using a hash table to organize identifiers and their associated locations.

Rajani describes using a hash function to retrieve a file from backup memory. (Rajani, 4:1-62 and 8:38-40). However, Rajani is completely silent regarding identifiers and the associated locations of data across a network. Rajani does not teach or suggest organizing identifiers and the associated locations in location server using a hash table. Therefore, Rajani does not teach or suggest location information "maintained in an indexed location store indexed by a hash table," as recited by claim 6. [Goodrich Decl., ¶¶ 96-99].

### b) A POSA would not be motivated to modify ONAG with OracleSG and/or Rajani to satisfy claim 6's requirements

The asserted references are devoid of any reasoning to motivate maintaining location information in an indexed location store indexed by a hash table. Such reasoning is present on the record only in '978 specification. Therefore, the combination of ONAG, OracleSG, and/or Rajani is an exercise of impermissible hindsight, and not modifications or combinations a POSA would have made at the time of the invention.

Furthermore, a POSA would not have had reasonable expectation of success for satisfying claim 6's requirements by modifying ONAG and OracleSG or ONAG, OracleSG and Rajani. In order to establish a reasonable expectation of success, the Examiner must show "a reasonable expectation of achieving what is claimed in the patent-at-issue." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016); *see also Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1380-1382 (Fed. Cir. 2021). The Examiner has not shown how or why a POSA would have a reasonable expectation of success in combining ONAG with one or more of OracleSG and Rajani to arrive at the limitation in question, at the time of the invention.

Attempting to modify ONAG to enable maintaining location information in an indexed location store indexed by a hash table in the Name Servers requires significant reengineering and reconfiguration of ONAG. Therefore, a POSA would not have had a reasonable expectation of success to configure ONAG to satisfy claim 6's requirement. [Goodrich Decl., ¶¶ 96-99].

### V. *Secondary Considerations of Non-Obviousness*

Significant evidence also supports a finding that the claims at issue are not obvious. As set forth in MPEP § 2141:

> The framework for the objective analysis for determining obviousness under 35 U.S.C. 103 is stated in *Graham v. John Deere Co.,* 383 U.S. 1, 148 USPQ 459 (1966). Obviousness is a question of law based on underlying factual inquiries. The factual inquiries enunciated by the Court are as follows:
>
> > (A) Determining the scope and content of the prior art;
> >
> > (B) Ascertaining the differences between the claimed invention and the prior art; and
> >
> > (C) Resolving the level of ordinary skill in the pertinent art.
>
> Objective evidence relevant to the issue of obviousness must be evaluated by Office personnel. *Id.* at 17-18, 148 USPQ at 467. Such evidence, sometimes referred to as 'secondary considerations,' may include evidence of commercial success, long-felt but unsolved needs, failure of others, and unexpected results.

Here, evidence of secondary considerations of non-obviousness includes the following:

### *1.* Long felt but unsolved needs and industry praise

Many people and institutions have written about the long need for technology that would enable a highly scalable information database, which is enabled by the technology of the asserted claims. For example, in February 2004, years after the invention of the '978 patent, an article reported on work being conducted at MIT that asked the question, "Wouldn't it be better to store data in the nooks and crannies of the Internet, a few keystrokes away from any computer, anywhere?" *10 Emerging Technologies That Will Change Your World,* at www.technologyreview.com (February 2004) (attached as Exhibit B) at 44. The article characterized a long-felt need for "making digital files easier to maintain and access while eliminating the threat of catastrophes that obliterate information, from blackouts to hard-drive failures." *Id.* The article goes on to discuss using "distributed hash tables" to identify the locations of "files scattered around the Internet." *Id.* The benefits of distributed hash tables that are praised in the article, including the potential to "change the basic operation of the Internet," (*id.* at 47), are achieved by the use of a distributed storage architecture that implements a hash function, which is embodied in claim 1 of the '170 patent (and its dependent claims). (Goodrich Decl., ¶¶ 18-23; 28-33).

Additional evidence that speaks to a long felt but unmet need for the inventions of the '978 patent include: U.S. Patent No. 5,542,087 to Neimat at 1:6-4:36 (7/12/2022 IDS, U.S. Pat. cite no. 2); U.S. Patent No. 5,230,047 to Frey at 1:30-2:12 (7/12/2022 IDS, U.S. Pat. cite no. 1); "Distributed Name Servers: Naming and Caching in Large Distributed Computing Environments" by Terry at §§ 1.1-1.3, 2.1, 2.5(7/12/2022 IDS, NPL cite no. 15); DNS RFC1034 Domain names Concepts and Facilities by Mockapetris at §§ 2.1-2.2 (7/12/2022 IDS, NPL cite no. 11); "An Adaptive Data Placement Scheme for Parallel Database Computer Systems" by Hua and Lee at § 1 (7/12/2022 IDS, NPL cite no. 5); "Design and Implementation of DDH: A Distributed Dynamic Hashing Algorithm" by Devine at § 1 (7/12/2022 IDS, NPL cite no. 4); "Scale in Distributed Systems" by Neuman at Abstract, §§ 1, 3.1-3.4 (7/12/2022 IDS, NPL cite no. 12); "Location-Independent Naming for Virtual Distributed Software Repositories" by Browne et al. at § 1 (7/12/2022 IDS, NPL cite no. 2); "A Model for Worldwide Tracking of Distributed Objects" by van Steen, Hauck, and Tanenbaum at § 1, 4 (7/12/2022 IDS, NPL cite no. 14); "The Core Legion Object Model" by Lewis and Grimshaw at § 1, 2, 6 (7/12/2022 IDS, NPL cite no. 9); "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web" by Karger et al. at § 1 (7/12/2022 IDS, NPL cite no. 7); "Load Management in Distributed Video Servers" by Venkatasubramanian and Ramanathan at §§ 1.1 (7/12/2022 IDS, NPL cite no. 16); "Distributed Web Caching System with Consistent Hashing" by Sherman at Abstract, §§ 1.1-1.2 (7/12/2022 IDS, NPL cite no. 13); "Web Caching with Consistent Hashing" by Karger, Sherman, et al. at Abstract, § 1 (7/12/2022 IDS, NPL cite no. 8); "Locating Copies of Objects Using the Domain Name System" by Kangasharju et al. at Abstract, § 1 (7/12/2022 IDS, NPL cite no. 6); "Resource Location in Very Large Networks" by Partha Dasgupta at §§ 3.4, 3.5 (7/12/2022 IDS, NPL cite no. 17); Dynamic Load Balancing on Web-server Systems by Valeria Cardellini et al., IEEE Internal Computing, vol. 3, no. 3, pp. 28-39 at § 1, 2, 4 (7/12/2022 IDS, NPL cite no. 3); "Distributed cooperative Web servers" by Baker and Moon at Abstract, § 1, 2 (7/12/2022 IDS, NPL cite no. 1); Paul Albitz and Cricket Liu, DNS and BIND, O'Reilly & Associates, Inc., 3rd ed. 1998 at Preface, § 1 7/12/2022 IDS, NPL cite no. 18, which was mistakenly identified as "Dasgupta" in the SB-08, but was submitted to the Office with the IDS); U.S. Patent No. 6,212,521 to Minami at 1:37-3:35 (7/12/2022 IDS, U.S. Pat. cite no. 8); U.S. Patent No. 6,430,618 to Karger at 1:31-6:19 (7/12/2022 IDS, U.S. Pat. cite no. 11); U.S.

Patent No. 6,553,420 to Karger at 1:36-6:26 (7/12/2022 IDS, U.S. Pat. cite no. 20); U.S. Patent No. 6,807,632 to Carpentier at 1:22-4:23(7/12/2022 IDS, U.S. Pat. cite no. 19).

### 2.    Failure of others and unexpected results

Individuals and entities have written about the failure of others to develop technology that would enable a highly scalable information database, which was achieved by the technology of the asserted claims.  For example, *Distributed Name Servers: Naming and Caching in Large Distributed Computing Environments* by Douglas Brian Terry ("Terry") (*see* 7/12/2022 IDS, NPL cite no. 15) observes that "[e]xisting distributed name services, which manage names based on their syntactic structure, may lack the flexibility needed by large, diverse, and evolving computing communities."  Terry at p. 1 (Abstract).

Terry provides a summary of several distributed name services that were developed to manage and locate data in distributed database systems but were unable to manage highly scalable systems.  For instance, Terry describes the "NIC Name Server" of ARPANET, which ran into problems as it began to grow.  Terry observed that "[w]ith the growth in size of the ARPANET and its expansion into the DARPA Internet . . . maintaining up-to-date host name to network address mappings became increasingly difficult on individual hosts."  *Id.* at p. 8.  According to Terry, "[t]he development of an experimental NIC Name Server" only "slightly alleviated the situation by allowing the host table information to be retrieved incrementally via network protocols."  *Id.*  As another example, Terry discusses the "DARPA Domain Name System," which suffered "inadequacies of central administration" but eventually gave way to "a decentralized scheme" that would "permit information on network entities to be distributed and replicated" on the DARPA Internet.  *Id.* at 9.  Terry also identifies a number of other systems that attempted to provide solutions for identifying and locating information in distributed databases, such as "BIND Server," "PUP Name Lookup Server," "Grapevine," "Clearinghouse," "CSNET Name Server," "Cambridge Name Server," "COSIE Name Server," and "R* Catalog Manager."  *Id.* at 9-11.  Terry describes how these systems work, *see id.* at 11-17, but notes that these systems "stress[] functionality, while performance considerations have remained of secondary importance."  *Id.* at 17.

Terry observed that while "[s]ignificant work has been done in the area of communication protocols for accessing name services and in the area of database management systems for storing object attributes," "[t]he currently unresolved problems in designing name services concern how to manage large distributed name spaces." *Id.* at 20. According to Terry, existing technologies "fail to adequately address some of the problems ... for very large and diverse computing environments," including problems related to:

- "Name resolution" (e.g., with respect to limitations of "location-dependent names"),
- "Administrative control" (e.g., with respect to inflexible means for "[c]hanging an object's name"),
- "Overhead costs" (e.g., with respect to "[a] lack of scalability" and associated high costs that render large network applications "infeasible"),
- "Adaption" (e.g., with respect to existing technologies' "lack [of] flexibility to scale up to very large environments"), and
- "Performance" (e.g., with respect to "response times for name service lookups or updates").

*Id.* at 20-22. Terry noted "[t]he DARPA Internet's Domain Name System seems to come the closes to handling very large and diverse computing environments," but observed that "a more flexible approach to name management" was still needed. *See id.* at 22.

Additional evidence that speaks to the failures of others to solve the problem solved by the inventions of the '978 patent include: U.S. Patent No. 5,542,087 to Neimat at 1:6-4:36 (7/12/2022 IDS, U.S. Pat. cite no. 2); U.S. Patent No. 5,230,047 to Frey at 1:30-2:12 (7/12/2022 IDS, U.S. Pat. cite no. 1); "Distributed Name Servers: Naming and Caching in Large Distributed Computing Environments" by Terry at §§ 1.1-1.3, 2.1, 2.5(7/12/2022 IDS, NPL cite no. 15); DNS RFC1034 Domain names Concepts and Facilities by Mockapetris at §§ 2.1-2.2 (7/12/2022 IDS, NPL cite no. 11); "An Adaptive Data Placement Scheme for Parallel Database Computer Systems" by Hua and Lee at § 1 (7/12/2022 IDS, NPL cite no. 5); "Design and Implementation of DDH: A Distributed Dynamic Hashing Algorithm" by Devine at § 1 (7/12/2022 IDS, NPL cite no. 4); "Scale in Distributed Systems" by Neuman at Abstract, §§ 1, 3.1-3.4 (7/12/2022 IDS, NPL cite no. 12); "Location-Independent Naming for Virtual Distributed Software Repositories" by Browne et al. at § 1 (7/12/2022 IDS, NPL cite no. 2); "A Model for Worldwide Tracking of Distributed Objects" by van Steen, Hauck, and Tanenbaum at § 1, 4 (7/12/2022 IDS, NPL cite no. 14); "The Core Legion Object Model" by

Lewis and Grimshaw at § 1, 2, 6 (7/12/2022 IDS, NPL cite no. 9); "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web" by Karger et al. at § 1 (7/12/2022 IDS, NPL cite no. 7); "Load Management in Distributed Video Servers" by Venkatasubramanian and Ramanathan at §§ 1.1 (7/12/2022 IDS, NPL cite no. 16); "Distributed Web Caching System with Consistent Hashing" by Sherman at Abstract, §§ 1.1-1.2 (7/12/2022 IDS, NPL cite no. 13); "Web Caching with Consistent Hashing" by Karger, Sherman, et al. at Abstract, § 1 (7/12/2022 IDS, NPL cite no. 8); "Locating Copies of Objects Using the Domain Name System" by Kangasharju et al. at Abstract, § 1 (7/12/2022 IDS, NPL cite no. 6); "Resource Location in Very Large Networks" by Partha Dasgupta at §§ 3.4, 3.5 (7/12/2022 IDS, NPL cite no. 17); Dynamic Load Balancing on Web-server Systems by Valeria Cardellini et al., IEEE Internal Computing, vol. 3, no. 3, pp. 28-39 at § 1, 2, 4 (7/12/2022 IDS, NPL cite no. 3); "Distributed cooperative Web servers" by Baker and Moon at Abstract, § 1, 2 (7/12/2022 IDS, NPL cite no. 1); Paul Albitz and Cricket Liu, DNS and BIND, O'Reilly & Associates, Inc., 3rd ed. 1998 at Preface, § 1 7/12/2022 IDS, NPL cite no. 18, which was mistakenly identified as "Dasgupta" in the SB-08, but was submitted to the Office with the IDS); U.S. Patent No. 6,212,521 to Minami at 1:37-3:35 (7/12/2022 IDS, U.S. Pat. cite no. 8); U.S. Patent No. 6,430,618 to Karger at 1:31-6:19 (7/12/2022 IDS, U.S. Pat. cite no. 11); U.S. Patent No. 6,553,420 to Karger at 1:36-6:26 (7/12/2022 IDS, U.S. Pat. cite no. 20); U.S. Patent No. 6,807,632 to Carpentier at 1:22-4:23(7/12/2022 IDS, U.S. Pat. cite no. 19).

Much has also been written about the unlikelihood of the inventions of the asserted claims. *See, e.g., Resource Location in Very Large Networks* by Partha Dasgupta ("Dasgupta") §§ 3.4, 3.5 (*see* 7/12/2022 IDS, NPL cite no. 17). Dasgupta observed that "[w]hile such networks" as the Internet and telephone systems "are quite common, what is not so common is completely scalable, non-hierarchical naming that is independent of the entities location or affiliations." *Id.* at 156 (Abstract). According to Dasgupta, this problem "has been studied in many contexts," but "most results are not scalable for really large worldwide networks." *Id.* For example, Dasgupta discusses known technologies, such as "The Domaine Name System (DNS)," "Amoeba," "The V System," "Clouds," "Locus," "Clearinghouse," and "Galaxy," but finds them limited in terms of scalability because they rely on hierarchical naming. *Id.* at 157-158. While Dasgupta advocates for a non-hierarchical naming system to achieve "a scalable

name service" and suggests that such solutions "may actually be implementable (or desirable)," Dasgupta observes that "[t]he bad news is that we have been unable to come up with a straightforward algorithmic solution to this problem, that is scalable and fault tolerant and works with feasible complexity." *Id.* at 159. Dasgupta initially posits that "such a algorithmic solution indeed may not exist." *Id.* Dasgupta ultimately concludes that "[t]here is no straightforward solution" and proffers only a "workable" solution with "plenty of room for improvement." *Id.* at 162.

### 3. Commercial success

Entities, including AWS, use the asserted claims in products accused of infringing claims 17, 18, and 24, like Amazon Web Services DynamoDB, and have had substantial commercial success. For example, DynamoDB customers include companies with extremely large-scale data storage and data management needs, including household names like Netflix (video entertainment streaming), Zoom (video conferencing platform), Disney (Disney+ video entertainment streaming), Dropbox (cloud-based data storage), Snap Inc. (Snapchat messaging ap), CapitalOne (mobile banking apps), Amazon (workflow engines for order fulfillment), and many others. Exhibit C (https://aws.amazon.com/dynamodb/customers/). Entities have written that "[m]any of the world's fast-growing enterprises use Amazon's DynamoDB service to manage their big data," including "[e]nterprises such as Airbnb, Toyota, Capital One, and many more." Exhibit D (https://www.contino.io/insights/aws-dynamodb). Reasons for this significant commercial success include "DynamoDB's cost-effective, high performance, throughput, lower latency, and reduced cost of ownership." *Id.* DynamoDB is regarded as "one of the most popular cloud-based NoSQL database services," which "provides reliable, scalable, and highly available databases to users with millisecond range latency at any scale." Exhibit E (https://dynobase.dev/dynamodb-use-cases/). DynamoDB is said to be popular in (and has "revolutionized") a wide range of industry segments (described as "most industries worldwide"), including the "Gaming Industry" (e.g., improving multiplayer gaming), "Transportation Industry" (e.g., improving vehicle tracking), "Entertainment Industry" (e.g., improving customization of user experience), "Social Media Industry" (e.g., improving ability to feed information in real time), and "Retail Industry" (e.g., improving resiliency and persistence of shopping experience). *Id.* AWS boasts that "DynamoDB is popular with developers building serverless applications." Exhibit F (https://aws.amazon.com/getting-

started/hands-on/purpose-built-databases/dynamodb/). DynamoDB is regarded as one of "the most popular options for NoSQL databases," "widely deployed," and "used by more than 100,000 AWS customers." Exhibit G (https://www.missioncloud.com/blog/resource-choosing-the-best-nosql-database-aws-dynamodb-vs-mongodb-performance). DynamoDB is considered one of the "market leaders for NoSQL databases." Exhibit H (https://www.bmc.com/blogs/mongodb-vs-dynamodb/).

The claimed inventions contain substantial overlap with the accused products. The benefits of the products accused of infringing claims 1, 3, 6, 10, 14, 17, 23-24, and 30-31 – *i.e.,* the combination of massive scalability and throughput, high availability, low latency, and high durability, which are directly enabled by Kove's patented technology – are identified by AWS as defining features of DynamoDB. For example, AWS touts DynamoDB as "designed to run high-performance, internet-scale applications that would overburden traditional relational databases."[7] According to AWS, "DynamoDB is a key-value and document database that can support tables of virtually any size with horizontal scaling," which "enables DynamoDB to scale to more than 10 trillion requests per day with peaks greater than 20 million requests per second, over petabytes of storage."[8] AWS states that DynamoDB "delivers low-latency performance at any scale"[9], has a throughput capacity that is "practically unlimited"[10], and has "99.999% availability"[11].

## VI. Conclusion

All of the stated grounds of rejection have been properly traversed, accommodated, or rendered moot. The Patent Owner therefore respectfully requests that the Examiner reconsider all presently outstanding rejections and that they be withdrawn. The Patent Owner believes that

---

[7] Exhibit I (https://aws.amazon.com/dynamodb/features/?pg=dynamodbt&sec=hs).

[8] *Id.*

[9] Exhibit J (https://aws.amazon.com/blogs/database/amazon-dynamodb-auto-scaling-performance-and-cost-optimization-at-any-scale/).

[10] Exhibit K (https://aws.amazon.com/dynamodb/faqs/?trk=94bf4df1-96e1-4046-a020-b07a2be0d712&sc_channel=ps&sc_campaign=acquisition&sc_medium=ACQ-P|PS-GO|Brand|Desktop|SU|Database|DynamoDB|US|EN|Text|IE&ef_id=Cj0KCQjwuaiXBhCCA RIsAKZLt3n_9aEOrFdTlWqnipW7mQbvIbqDk_kV84UNDDs5wDKIfmkitlZHRbUaAgoZ EALw_wcB.G:s&s_kwcid=AL!4422!3!610000101513!e!!g!!aws%20dynamodb)

[11] Exhibit L (https://aws.amazon.com/dynamodb/).

a full and complete reply has been made to the outstanding Office Action and, as such, the present reexamination proceeding is in condition for a Notice of Intent to Issue a Reexamination Certificate. If the Examiner believes, for any reason, that personal communication will expedite this proceeding, the Examiner is invited to telephone the undersigned at the number provided.

Prompt and favorable consideration of this Reply is respectfully requested.

Respectfully submitted,

REICHMAN JORGENSEN LEHMAN & FELDBERG LLC

/Naveed Hasan/
Naveed Hasan, Reg. No. 72,688
Signed under 37 C.F.R. § 1.34 Acting in a Representative Capacity for Patent Owner

Date:   September 28, 2022

1909 K Street, NW, Suite 800
Washington, DC 20006
(202)