# Exhibit K130



# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,035 | 11/19/2021 | 7814170 | | 7078 |

184647          7590          05/11/2022

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway
Suite 300
Redwood City, CA 94065

| EXAMINER |
|---|
| WASSUM, LUKE S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 05/11/2022 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

FISCH SIGLER LLP
5301 WISCONSIN AVENUE NW
FOURTH FLOOR
WASHINGTON, DC 20015

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,035* .

PATENT UNDER REEXAMINATION *7814170* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --**

a. ☑ Responsive to the communication(s) filed on <u>19 November 2021</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b. ☐ This action is made FINAL.

c. ☑ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:
    1. ☐ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.
    2. ☐ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____.

Part II    SUMMARY OF ACTION
    1a. ☑ Claims <u>1-2,6,8-9,12 and 15</u> are subject to reexamination.
    1b. ☑ Claims <u>3-5,7,10-11,13-14 and 16-17</u> are not subject to reexamination.
    2. ☐ Claims _____ have been canceled in the present reexamination proceeding.
    3. ☐ Claims _____ are patentable and/or confirmed.
    4. ☑ Claims <u>1-2,6,8-9,12 and 15</u> are rejected.
    5. ☐ Claims _____ are objected to.
    6. ☐ The drawings, filed on _____ are acceptable.
    7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b) ☐ disapproved.
    8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. 119(a)-(d) or (f).
        a) ☐ All  b) ☐ Some* c) ☐None    of the certified copies have
        1 ☐ been received.
        2 ☐ not been received.
        3 ☐ been filed in Application No. _____.
        4 ☐ been filed in reexamination Control No. _____.
        5 ☐ been received by the International Bureau in PCT application No. _____.
        * See the attached detailed Office action for a list of the certified copies not received.

    9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

    10. ☐ Other: _____.

cc: Requester (if third party requester)

### *Ex Parte* Reexamination

This is a copy of the Office action originally mailed 28 April 2022.  The instant

action includes a statutory period for reply of two (2) months.

5       A request for *Ex Parte* Reexamination of claims 1, 2, 6, 8, 9, 12, and 15 of United

States Patent Number 7,814,170 ("the '170 patent") was filed 19 November 2021 ("the

Request").  The '170 patent issued to **John K. Overton et al.** on 12 October 2010, from

application number 11/354,224 ("the '224 application"), filed 13 February 2006.

        The Office mailed a Decision granting reexamination of claims 1, 2, 6, 8, 9, 12,

10      and 15 on 12 January 2022.

        Claims 1, 2, 6, 8, 9, 12, and 15 are subject to reexamination.


### Related Proceedings

        After examiner's independent review of the '170 patent and its prosecution

15      history, the examiner notes that there is current ongoing litigation (detailed on the

Reexamination sheet, document code RXFILJKT).  The examiner has failed to locate any

previous reexaminations (*ex parte* or *inter partes*), supplemental examinations, or other

post issuance proceedings.

## Priority

The '170 patent is a continuation of U.S. Patent Application 09/661,222, filed 13

September 2000, now U.S. Patent 7,103,640, which is a continuation-in-part of U.S.

Patent Application 09/111,896, filed 8 July 1998, now abandoned.

5        The '170 patent also claims priority under 35 U.S.C. § 119(e) to U.S. Provisional

Application 60/153,709, filed 14 September 1999.

Therefore, the earliest claimed priority date of the '170 application is 8 July 1998,

*to the extent that the claimed subject matter is fully supported.*


10                               **Claim Interpretation**

The Office notes that the '170 patent contains a specific reference to several

earlier filed applications to which priority is claimed under 35 U.S.C. § 120.  The '170

patent is also subject to two terminal disclaimers, limiting the patent term not to extend

beyond the expiration of related patents 7,103,640 ("the '640 patent") and 7,233,978 ("the

15      '978 patent").  Since both the '640 patent and the '978 patent have expired, the '170

patent has likewise expired.

In a reexamination proceeding involving claims of an expired patent, claim

construction pursuant to the principle set forth by the court in *Phillips v. AWH Corp.*, 415

F.3d 1303, 1316, 75 USPQ2d 1321, 1329 (Fed. Cir. 2005) (words of a claim "are generally

given their ordinary and customary meaning" as understood by a person of ordinary

skill in the art in question at the time of the invention) should be applied since the

expired claim are not subject to amendment.　See *Ex parte Papst-Motoren,* 1 USPQ2d 1655

(Bd. Pat. App. & Inter. 1986).

5

　　Upon review of the original specification and prosecution history, the examiner

has found several instances of lexicographic definitions.

　　Specifically, the following terms were defined at col. 4, lines 8-27:

　　<u>Identifier/identifier string</u> – a unique string with which zero or more locations

10　strings are associated in a network distributed tracking protocol (NDTP) server.

　　<u>Data location/location</u> – a string that is a member of a set of strings associated

with an identifier string in an NDTP server.

　　<u>NDTP client/client</u> – a network-attached component that initiates update or

lookup of identifier/location mappings from an NDTP server with NDTP request

15　messages.

Location server[1]/server – a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to NDTP request messages from NDTP clients.

These claim terms will be interpreted consistent with Patent Owner's

5   lexicographical definitions.  Since these terms have been expressly defined in Patent Owner's disclosure, these definitions will take precedence over any other proposed construction.


In addition, Patent Owner offered proposed construction for a number of other

10   claim terms during pending litigation[2].

Specifically, Patent Owner proposed the following claim term construction:

Location information – information pertaining to one or more locations of data and/or identities of one or more location servers.

Hash table – a data structure that stores values in a table, where values are stored

15   and retrieved by applying a hash function to an input and using the function result as an index into the table.

---

[1] The Office notes that the term 'location server', although claimed, does not appear in Patent Owner's specification.  That said, the analogous term 'NDTP server' *is* defined in the specification.  The claimed 'location server' will be interpreted consistent with the 'NDTP server' definition provided in the specification.
[2] *Kove IO, Inc. v. Amazon Web Services, Inc.*, 1:18cv08175 (N.D. Ill.)

A hash function used to organize the data location information across the

plurality of location servers – a hash function that maps identifier strings to one or more

of the data location servers.

Data pertaining to the entity – data pertaining to a person or thing (real, digital,

5   or abstract).


Requester does not object to the proposed construction for the purposes of the

instant reexamination proceeding (see Request, pages 14-15).

These claim terms will be interpreted consistent with the above construction.

10

**The Claimed Invention**

The invention provides a network distributed tracking wire transfer protocol for

storing and retrieving data across a distributed data collection.  The protocol includes a

location string for specifying the network location of data associated with an entity in

15   the distributed data collection, and an identification string for specifying the identity of

an entity in the distributed data collection.  According to the protocol, the length of the

location string and the length of the identification string are variable, and an association

between an identification string and a location string can be spontaneously and

dynamically changed.  The network distributed tracking wire transfer protocol is

application independent, organizationally independent, and geographically

independent. A method for using the protocol in a distributed data collection

environment and a system for implementing the protocol are also provided. See

Abstract.

5

## Prior Art Cited in the Request

The following reference was cited by the third party Requester in the Request for

*Ex Parte* Reexamination:

*Oracle Names Administrator's Guide, Release 2.0* (Oracle Corp., Redwood City,

10    CA) (**"OracleNamesAdminGuide"**)

Joseph B. Greene, *Oracle DBA Survival Guide*, 1st ed. (Sams Publishing,

Indianapolis. Ind.), ISBN: 0672306816 (**"OracleSG"**)

U.S. Patent 5,777,989 to John McGarvey (**"McGarvey"**)

U.S. Patent 5,301,286 to Purshotam Rajani (**"Rajani"**)

15

None of the references relied upon by the Requester were of record or considered

by the Office during the original prosecution of the '224 application.

## Summary of Grounds of Rejection

Ground 1: Claims 1 and 2 are obvious under 35 U.S.C. § 103(a) in view of

OracleNamesAdminGuide, OracleSG, and **Rajani**.

Ground 2: Claims 6, 8, and 15 are obvious under 35 U.S.C. § 103(a) in view of

5    OracleNamesAdminGuide, OracleSG, and **McGarvey**.

Ground 3: Claims 9 and 12 are obvious under 35 U.S.C. § 103(a) in view of

OracleNamesAdminGuide, OracleSG, **McGarvey**, and **Rajani**.

## Relevant Statutes

10    The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis

for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or
> described as set forth in section 102 of this title, if the differences between the subject matter
> sought to be patented and the prior art are such that the subject matter as a whole would have
15 > been obvious at the time the invention was made to a person having ordinary skill in the art
> to which said subject matter pertains. Patentability shall not be negatived by the manner in
> which the invention was made.

20

## Claim Rejections

### Ground 1: OracleNamesAdminGuide, OracleSG, and Rajani

Claims 1 and 2 are obvious under 35 U.S.C. § 103(a) in view of

OracleNamesAdminGuide, OracleSG, and **Rajani**.

<u>Claim 1</u>

Regarding claim 1, ~~OracleNamesAdminGuide~~ teaches **a system for managing**

**data stored in a distributed network** (see disclosure of the use of Oracle Names Server

5  in managing data in a distributed network, page 32 and Fig. 2-1:



Figure 2 – 1  Components of a Network Using Oracle Names
with the Dynamic Discovery Option

the system comprising:

a) **a data repository configured to store a data entity** (see disclosure that a

network using the Oracle Names Service consists of, *inter alia*, one or more databases,

10  page 32 et seq.; see also disclosure of a global database link that connects each database

in a network with all other databases, page 99 et seq.), wherein **an identifier string**

**identifies the data entity** (see disclosure that each database server's network address is

stored with a name that is used to identify it, and that client applications can then

request a database connection with a simple name rather than a lengthy address, page

20 et seq.; see also disclosure that the Oracle Names Server stores names and addresses

for network services such as databases, as well as database service names and aliases,

which can serve as alternate names for any defined database service or database link,

page 23 et seq.);

5          b) **a data location server network comprising a plurality of data location**

**servers** (see disclosure of a plurality of data location servers embodied in Names

Servers, illustrated in Figs. 2-1 and 3-1:



Figure 2 – 1 Components of a Network Using Oracle Names
with the Dynamic Discovery Option



Figure 3 – 1  Components of a Network Using Oracle Names
Without the Dynamic Discovery Option

see also disclosure that the use of at least two Names Servers is recommended,

pages 29, 44, 51, 60, and 67 et seq.), wherein **data location information for a plurality of**

**data entities is stored in the data location server network** (see disclosure that the

5    Names Server stores the names and addresses for network services such as databases,

pages 20 and 23; see also disclosure of the sequence of events whereby a database

request utilizing a database name is translated to a database address by the Names

Server, pages 52-53; see also disclosure of associating aliases with their respective

location information, pages 44, 56-57, 93, and 108 et seq.), **at least one of the plurality of**

10   **data location servers includes location information associated with the identifier**

**string** (see disclosure that each database server's network address is stored with a name

that is used to identify it, and that client applications can then request a database

connection with a simple name rather than a lengthy address, page 20 et seq.; see also

disclosure of the storage of names and addresses for a variety of network services, such

as databases, page 23 et seq.; see also disclosure of the sequence of events whereby a

database request utilizing a database name is translated to a database address by the

Names Server, pages 52-53), **each one of the plurality of data location servers**

**comprises a processor and a portion of the data location information** (see disclosure

5    that each Names Server includes a processor and a cache memory that stores some or all

of the connection descriptors (i.e., location information), as well as a forwarder that

takes queries for names and forwards the query on to the appropriate Names Server,

pages 32-33 et seq.).


10

       To the extent that it could be argued that ~~OracleNamesAdminGuide~~ fails to

teach certain claim limitations, ~~OracleSG~~ teaches **an identifier string that identifies a**

**data entity** (see disclosure of the use of 'easy name' synonyms for specifying a database,

pages 86-87, 181, 189-190, and 352 et seq.), wherein **data location information for a**

15   **plurality of data entities is stored in a data location server network and at least one of**

**the plurality of data location servers includes location information associated with**

**the identifier string** (see disclosure of the use of 'easy name' synonyms for specifying a

database, pages 86-87, 181, 189-190, and 352 et seq., as well as the disclosure of the

ability to execute an SQL query to determine the location of data files in the network,

page 152 et seq.).

 

5

       **OracleNamesAdminGuide** and **OracleSG** are in the same field of art and

discuss managing distributed database systems using Oracle7 technology, and its

associated tools and utilities.[3]  They contain overlapping disclosures focused on the

similar purposes of improving query efficiency and resolution of user access.

       A POSITA would have found it obvious for **OracleNamesAdminGuide** to

associate location information (i.e., connection descriptor) with an identifier string (i.e.,

10     network-service-name-alias), and to store such information in a data location server

network.  As **OracleSG** explains, **OracleNamesAdminGuide's** SQL*Net uses

executable code to make it easier for users to connect to various databases and find their

data; however, "the burden of providing the translation between the easy names and

the exact server and instance address falls on the DBA."[4]  Making use of identifier

15     strings to improve the users' experience and to ease their ability to find their desired

data entity is a primary objective of an Oracle database administrator ("DBA").

---

[3] See, e.g., **OracleNamesAdminGuide**, pages 5, 22, and 52-54 et seq., and **OracleSG**, pages 20, 27, and 695 et seq.
[4] See **OracleSG**, page 87.

Indeed, before the '170 patent, POSITAs were combining these teachings in

Oracle7 systems in the 1990s, and **OracleSG** includes techniques explaining to DBAs

how to improve their systems.[5]  **OracleSG** directs DBAs to combine **OracleSG's**

teachings with various reference manuals and resources to take advantage of all of

5       Oracle7's capabilities.  For example, to use SQL*Net effectively, **OracleSG** provides that

a DBA should record error messages and consult "specific product manuals (for

example, SQL*Net)" for solutions.[6]  Maintaining a working knowledge of the state of

the art would be imperative for managing a distributed system, especially an Oracle7

system, because a POSITA would have been expected to combine the system with

10      related technologies to improve efficiency and optimization.

Based on the commonplace need for efficiency in running queries, a POSITA

would have been motivated to associate the identifier string with data entities and

location information because this allows **OracleNamesAdminGuide's** Names Server to

use executable code to quickly return the location information associated with the

15      identifier string to the requesting client with minimized cost.[7]

---

[5] See *id*. at page 20.
[6] See *id*. at page 605.
[7] See *id*. at pages 51-52.

OracleNamesAdminGuide does not explicitly teach a system for managing data stored in a distributed network, wherein the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location

5    servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.

However, OracleSG additionally discloses a system wherein **the portion of the**

10   **data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string** (see disclosure that Oracle

15   7 utilizes the use of a rule-based optimizer in executing SQL queries in the Oracle 7 database manager. Specifically, it is disclosed that hashing is utilized by the rule-based optimizer in order to execute queries in the most effective manner, page 633 et seq.).

A POSITA would have found it obvious for **OracleNamesAdminGuide's** system

to have the capability of using a hash function to organize location information, based

on **OracleSG's** teachings.  Before the '170 patent, it was well known and ubiquitous for

a computer network system to use a hash table to locate information stored in the

5    system.  For example, **OracleSG** teaches using a hash function to improve the efficiency

of a query in an Oracle7 system.[8]

Like **OracleSG**, the '170 patent establishes that it was generally known in the art

to use hashing operations in a computer networking environment.  Specifically, the '170

patent acknowledges that it was generally known in the art that hashing algorithms

10   existed to locate information in a table (e.g., the hashpjw algorithm).[9]

Furthermore, when making forwarding decisions to other Names Servers, a

POSITA would have found it obvious to configure an initial Names Server to determine

another Names Server based on **OracleSG's** hashing function applied to the network-

service-name-alias (i.e., identifier string).  To do so, a POSITA would have been

15   motivated to have the initial Names Server locate the other Names Server containing

the location information for the desired entity by applying a hashing function to the

---

[8] See **OracleSG**, page 633 et seq.
[9] See '170 patent, col. 15, lines 12-49 et seq.

entity's network-service-name-alias (i.e., identifier string). Having this configuration

would have furthered **OracleNamesAdminGuide's** goal to optimize search

performance in its location request queries.[10]


5

Furthermore, **Rajani** also discloses a system wherein **the portion of the data**

**location information included in a corresponding one of the data location servers is**

**based on a hash function used to organize the data location information across the**

**plurality of data location servers, and each one of the data location servers is**

10 **configured to determine the at least one of the plurality of data location servers based**

**on the hash function applied to the identifier string** (see disclosure of hashing the

locations of data entities [e.g., files] to make them more easily accessible. For instance,

claim 1 discloses a method of locating a file in memory whereby said file is identified by

a name comprising a component in a sequence of N components identifying a path

15 name associated with said file, including storing each component in an available

location of a first table of locations such that the address of said available location

defines a unique identity value of the component stored thereat, and deriving for each

component an associated hashing number and storing in a second table of locations at a

---

[10] See **OracleNamesAdminGuide**, page 60.

location identified by said hashing number the address of the available location, col. 8,

lines 38-60).

Also disclosed is a process of locating or creating a record associated with a file

that is either being stored or unloaded from one memory through the use of a hash

5      table and a string space table. Upon receipt of the file, or path name (e.g., /etc/services),

the computer maps the path name into a unique identity that can be used to locate the

file after it has been stored. Specifically, the computer generates each identity by

passing each component of the pathname through a conventional hashing algorithm to

obtain a memory offset. The computer then retrieves from the hash table the contents of

10     the location defined by the offset, which is used as an index into the string space table

where the desired component can be retrieved (col. 4, lines 1-63 et seq.).

**Rajani** is in the same field as **OracleNamesAdminGuide** and **OracleSG**.

**OracleNamesAdminGuide** and **Rajani** share the common goal of parsing data sets

15     quickly. **Rajani** teaches how to "quickly ascertain" the location of a file in a table of file

names (i.e., a names server) in a hierarchically configured storage system.[11] Specifically,

**Rajani** describes using a hash function to convert each file's hierarchical pathname into

---

[11] See **Rajani**, col. 1, lines 32-34 et seq.

a unique identifier, which is used to identify the file's location in the network.[12] **Rajani** also emphasizes that indexing location entries distributed over a hierarchical network would be especially useful as systems grow larger and more complicated, which results in location queries becoming more labor intensive on the system.[13]

5    Because **OracleNamesAdminGuide** and **Rajani** share the common goal of parsing data sets quickly, a POSITA would have been motivated to use **Rajani's** hashing table techniques in **OracleNamesAdminGuide's** Names Servers to quickly and efficiently determine the location of a requested data entity. It was understood in the art that DBAs would actively search for resources to solve problems that may arise in

10   the specific database environment in which they are working. As **OracleSG** states: "[T]ry to obtain as much knowledge as possible about the DBMS and query optimization through training courses and books. It may mean more work for you, but it could save many hours of project team labor if you can quickly provide your compatriots with the answers that they need".[14] **OracleNamesAdminGuide** describes

15   one specific database environment—hierarchical configurations—that provides certain RDBMS-related advantages. But such hierarchical configurations can complicate the naming practices and location information needed to identify each data entity. For

---

[12] See *id.* claim 1 at col, 8, lines 53-60.
[13] See *id.* col. 1, lines 37-45.
[14] See **OracleSG**, page 51.

example, in non-hierarchical configurations, Oracle7's "flat-naming" convention allows the omission of domains.[15] Conversely, **OracleNamesAdminGuide's** hierarchical configurations include multiple domains requiring that a data entity's location information identify the specific domain of the data entity.[16]

5      Based on the desire to maximize efficiency in running queries, a POSITA would have been motivated to combine **OracleNamesAdminGuide's** and **OracleSG's** techniques of locating data entities with **Rajani's** use of hashing location tables to quickly return location information associated with the requested data entity.

Thus, to the extent that the combination of **OracleNamesAdminGuide** and

10    **OracleSG** doesn't render obvious the use of hash functions in organizing data location information, a POSITA would have been motivated and found it obvious to have **OracleNamesAdminGuide's** location information include a portion of a hash table distributed over multiple Names Servers based on **Rajani's** teachings. This would have furthered **OracleNamesAdminGuide's** goal of having its Names Servers identify the

15    requested data entity's location "lightning fast".[17] The benefits of this modification to the Names Servers would become more pronounced as the complexity of the system

---

[15] See *id.* page 41.
[16] See **OracleNamesAdminGuide**, pages 41-42.
[17] See **OracleNamesAdminGuide**, page 60 et seq.

grows, especially in hierarchical configurations that result in each data entity's location

information including the data entity's specific domain.[18]

Even further, and well before the '170 patent, it was well known and ubiquitous

for a computer network system to use a hash table to locate information stored in the

5    system.[19]  Like **Rajani**, the '170 patent and its prosecution history establish that it was

generally known in the art to use hashing operations in a computer networking

environment.  For example, the '170 patent specifically acknowledges that it was

generally known in the art that hashing algorithms existed to locate information in a

table (e.g., the hashpjw algorithm).[20]

10    Accordingly, based on **Rajani's** teachings, a POSITA would have found it

obvious for **OracleNamesAdminGuide's** location information to include a portion of a

hash table distributed over multiple Names Servers.  A POSITA would have been

motivated to do so because, as **Rajani** teaches, this would allow

**OracleNamesAdminGuide's** Names Servers to use a hash table for reducing access

15    time for the location information relative to other data structures and reduce memory

allocation.[21]

---

[18] See *id*. pages 41-42 et seq.
[19] See **Rajani**, col. 4, lines 40-56 and col. 8, lines 26-36 et seq.
[20] See '170 patent, col. 15, lines 12-49 et seq.
[21] See **Rajani**, col. 1, lines 34-56 and col. 8, lines 15-19 et seq.

Claim 2

Regarding claim 2, ~~Rajani~~ additionally teaches a system for managing data

stored in a distributed network wherein **the location information comprises any**

5      **portion of a hash table generated with the hash function** (see disclosure of hashing to

generate a hash table to make data stores more easily accessible, col. 4, lines 28-62, and

col. 8, lines 37-60 et seq.; see also disclosure that the general process of hashing

identifiers to decrease processing burdens is common in the art and that depending on

the specific needs of a system, it would be simple for one skilled in the art to use hash

10     functions to create a hash table in a configuration suited for the specific configuration,

col. 8, lines 26-36 et seq.).


Based on **Rajani's** and OracleSG's teachings and the general knowledge available

in the art, a POSITA would have found it obvious for **OracleNamesAdminGuide's**

15     location information include a portion of a hash table generated with the hash function

of claim 1. For the reasons set forth with respect to the rejection of claim 1 on

motivation to combine, a POSITA would have been motivated to do so because having

this configuration would further **OracleNamesAdminGuide's** goal to optimize search

performance in its location request queries. See **OracleNamesAdminGuide**, page 60.

**Ground 2:** OracleNamesAdminGuide, OracleSG, and **McGarvey**

Claims 6, 8, and 15 are obvious under 35 U.S.C. § 103(a) in view of

OracleNamesAdminGuide, OracleSG, and **McGarvey**.

Claim 6

Regarding claim 6, OracleNamesAdminGuide teaches **a system for managing**

**data location information and providing the data location information in response to**

**location queries** (see disclosure of the use of Oracle Names Server in managing data in

a distributed network, page 32 and Fig. 2-1:



Figure 2 – 1 Components of a Network Using Oracle Names
with the Dynamic Discovery Option

;

see also disclosure that the Names Server stores the names and addresses for network

services such as databases, pages 20 and 23; see also disclosure of the sequence of events

whereby a database request utilizing a database name is translated to a database

address by the Names Server, pages 52-53; see also disclosure of associating aliases with

5    their respective location information, pages 44, 56-57, 93, and 108 et seq.), the system

comprising:

a) **a location server configured to receive a location addition request, the location**

**addition request formatted in conformance with a transfer protocol, the location**

**addition request comprising an identifier and at least one location to associate with**

10   **the identifier** (see disclosure of the ability to request to add, change, or delete network

objects and their associated names from the Names Server, page 104; see also disclosure

that a SQL*Net community is a group of machines that can communicate using the

same transport protocol, page 44 et seq.; see also disclosure of the use of the REGISTER

command, which provides a manual mechanism for registering a service, its type (e.g.,

15   database), and its address, page 131), wherein **the identifier identifies an entity and**

**wherein each of the at least one location specifies a location of data in a network**

**pertaining to the entity** (see disclosure that each database server's network address is

stored with a name that is used to identify it, and that client applications can then

request a database connection with a simple name rather than a lengthy address, page

20; see also disclosure that Oracle Names eases the burden of network administration

by allowing the users and application developers to be exposed only to the name of the

network object, without requiring knowledge of the connection path; when making a

connection to a network object, the client specifies the name of the destination and

5       Oracle Names provides the address, page 22);

b) wherein **the location server includes a processor** (see disclosure that each

Names Server includes a processor and a cache memory that stores some or all of the

connection descriptors (i.e., location information), as well as a forwarder that takes

queries for names and forwards the query on to the appropriate Names Server, pages

10      32-33 et seq.); and

c) **programming logic stored on the location server configured to return, in**
**response to a location query related to a desired entity, a location message in**
**conformance with the transfer protocol and comprising at least one location**
**associated with the desired entity** (see disclosure that the SQL*Net utility uses a

15      transfer protocol to process and send messages regarding identifiers and location

information, in conformance with the needed transfer protocol for the Names Server,

Multiprotocol Interchange, and client, pages 36, 44, 63, 131, and 203 et seq.; see also

disclosure that a client can request a network service within its default domain using

the service's simple, unqualified name, pages 43-44; see also disclosure that a SQL*Net

community is a group of machines that can communicate using the same transport

protocol, page 44 et seq.), wherein the programming logic is further configured to

**return the location message if the location server contains location information for**

**the desired entity** (see disclosure of the sequence of events whereby a database request

5    utilizing a database name is translated to a database address by the Names Server,

pages 52-53; see also disclosure of how names are resolved for a distributed database

connection, as well as the sequence of events for doing so, pages 53-54 and Fig. 3-12:



Figure 3 – 12 Distributed Database Connection

The sequence of events is as follows:

1.  Server TOM receives the SQL statement shown and checks its data
    dictionary for a private or public database link called JERRY. When
    it does not find one, SQL*Net determines from the client
    configuration in the SQLNET.ORA file that the client's default
    domain is WORLD and the preferred Names Server is the one
    shown. SQL*Net then sends the Names Server a request to resolve
    the database link name JERRY.WORLD.

2.  The Names Server receives the request, looks it up in the cache, then
    sends the response back to the server TOM.

3.  Server TOM receives the answer and substitutes the response in
    place of the initial name.

4.  Server TOM contacts server JERRY and establishes a standard
    SQL*Net distributed database connection.

),

wherein the programming logic is further configured to **return a redirect message if the**

**location server lacks the location information for the desired entity, the redirect**

**message comprising a list of at least one other location server known to have the**

**location information for the desired entity** (see disclosure of the sequence of events by

5      which client requests are forwarded amongst Names Servers to retrieve the answer and

return it to the client [i.e., foreign name resolution], pages 190-191 and Fig. C-4:



Figure C – 4  Network Messages in a Multi–Level Foreign Name Resolution      ;

see also disclosure that the system can be configured, for performance reasons, to turn

off request forwarding amongst Names Servers, whereupon rather than forwarding the

10     request and returning the answer, the Names Server simply tells the requestor the

address of the Names Server that can answer the request [i.e., the claimed redirect

message], pages 119-120 and 137).

To the extent that it could be argued that ~~OracleNamesAdminGuide~~ fails to teach

certain claim limitations, ~~OracleSG teaches~~ **a location server configured to receive a**

**location addition request, the location addition request formatted in conformance**

**with a transfer protocol, the location addition request comprising an identifier and at**

**least one location to associate with the identifier** (see disclosure of the use of 'easy

name' synonyms for specifying a database, pages 86-87, 181, 189-190, and 352 et seq., as

well as the disclosure of the ability to execute an SQL query to determine the location of

data files in the network, page 152 et seq.; see also disclosure that the Oracle Network

Manager allows you to generate the network configuration files for SQL*Net version 2,

page 87, a disclosure that would render obvious the ability to add new identifiers and

respective location and connection information in the form of host names, ports,

database instances, and appropriate transport protocol information), and wherein the

programming logic is further configured to **return the location message if the location**

**server contains location information for the desired entity** (see disclosure of the ability

to execute an SQL query to determine the location of data files in the network, page 152

et seq.).

**OracleNamesAdminGuide** and **OracleSG** are in the same field of art and

discuss managing distributed database systems using Oracle7 technology, and its

associated tools and utilities.[22] They contain overlapping disclosures focused on the

similar purposes of improving query efficiency and resolution of user access.

5        A POSITA would have found it obvious for **OracleNamesAdminGuide** to

associate location information (i.e., connection descriptor) with an identifier string (i.e.,

network-service-name-alias), and to store such information in a data location server

network.  As **OracleSG** explains, **OracleNamesAdminGuide's** SQL*Net uses

executable code to make it easier for users to connect to various databases and find their

10     data; however, "the burden of providing the translation between the easy names and

the exact server and instance address falls on the DBA."[23]  Making use of identifier

strings to improve the users' experience and to ease their ability to find their desired

data entity is a primary objective of an Oracle database administrator ("DBA").

Indeed, before the '170 patent, POSITAs were combining these teachings in

15     Oracle7 systems in the 1990s, and **OracleSG** includes techniques explaining to DBAs

how to improve their systems.[24]  **OracleSG** directs DBAs to combine **OracleSG's**

---

[22] See, e.g., **OracleNamesAdminGuide**, pages 5, 22, and 52-54 et seq., and **OracleSG**, pages 20, 27, and 695 et seq.
[23] See **OracleSG**, page 87.
[24] See *id*. at page 20.

teachings with various reference manuals and resources to take advantage of all of

Oracle7's capabilities.  For example, to use SQL*Net effectively, **OracleSG** provides that

a DBA should record error messages and consult "specific product manuals (for

example, SQL*Net)" for solutions.[25]  Maintaining a working knowledge of the state of

5      the art would be imperative for managing a distributed system, especially an Oracle7

system, because a POSITA would have been expected to combine the system with

related technologies to improve efficiency and optimization.

        Based on the commonplace need for efficiency in running queries, a POSITA

would have been motivated to associate the identifier string with data entities and

10     location information because this allows **OracleNamesAdminGuide's** Names Server to

use executable code to quickly return the location information associated with the

identifier string to the requesting client with minimized cost.[26]

        A POSITA would have been further motivated to configure

**OracleNamesAdminGuide's** programming logic to return a location message if the

15     location server contains location information of the desired entity, since this would have

resulted in the effective use of SQL*Net functionality, and improve query efficiency and

optimization of Oracle7 systems to ease user's ability to find their desired data entity.[27]

---

[25] See *id.* at page 605.
[26] See *id.* at pages 51-52.
[27] See *id.* at pages 44, 52, 87, and 605 et seq.

Furthermore, **McGarvey** discloses **returning a redirect message if the location
server lacks the location information for the desired entity, the redirect message
comprising a list of at least one other location server known to have the location**

5    **information for the desired entity** (see disclosure of a system using TCP/IP address
resolution to access data on its network, col. 2, lines 61-67 and Fig. 1 et seq.; see also
disclosure that it was known in the art that a particular name server may contain
information on only a subset of the domain namespace, but the name server typically
belongs to a hierarchy of name servers, and if it does, either it communicates with other

10   members of the hierarchy to attempt to resolve hostnames, or it returns information
referring the client to another server in the hierarchy so that the client can redirect the
query [i.e., the claimed redirect message], col. 1, lines 43-48 et seq.).


McGarvey is in the same field as **OracleNamesAdminGuide** and **OracleSG**.  For

15   example, **OracleNamesAdminGuide** describes a distributed database system, focusing
on Names Servers that respond to a client's data requests using unique customer

identifiers associated with the data's network address.[28]  Similarly, **McGarvey** describes

a distributed network configuration that uses well-known name resolution techniques.[29]


5    Before the '170 patent, it was well known and ubiquitous for computer network

systems to use redirect messaging when a names server lacks the requested location

information.  For example, **McGarvey** teaches a "particular name server may contain

information on only a subset of the domain namespace, but the name server typically

belongs to a hierarchy of name servers, and if it does, ... it returns information referring

the client to another server in the hierarchy, so that the client can redirect the query."[30]

10    A POSITA would have found it obvious for **OracleNamesAdminGuide's** first

Names Server—if it lacks the requested location information—to send a redirect

message to the client that identifies another Names Server having the location

information.  A POSITA would have been motivated to do so because this would

further the use of **OracleNamesAdminGuide's** SQL*Net and Names Servers to respond

15    to certain data entity requests and lessen the workload of the root Names Server

because it no longer needs to perform forwarding functions to other servers containing

---

[28] **OracleNamesAdminGuide** at pages 5, 22-24, and 52-54.
[29] **McGarvey** at Abstract, col. 1, lines 40-49, and col. 2, lines 61-67 et seq.
[30] See *Id.*, col. 1, lines 13-48 et seq.

the requested information.[31]  Further, if a Names Server can't resolve a client's

information query, a POSITA would have been motivated to have the server transmit a

redirect message so the client can contact another Names Server housing the location

information.  This is because using such redirect messages was an established

5   method in hierarchical naming services to address unresolved location requests.[32]

Moreover, a POSITA would have been motivated to do so because providing a

redirect message identifying another Names Server would improve the ability of

**OracleNamesAdminGuide's** system to locate the client's requested information.  By

taking these steps, a POSITA would have designed **OracleNamesAdminGuide's**

10   system to detect and resolve problems without placing the burden on the user.  This is

the DBA's inherent role, and the clear benefits for the user would have motivated a

POSITA to combine **OracleNamesAdminGuide** and **McGarvey** in this way.

Further, it was known in the art that a hierarchical structure in a larger database

system would reduce processing demands on each Names Server by dividing the

15   directory into separate portions.  This would have resulted in the Names Server

redirecting a request to the respective Names Server containing the pertinent location

information.  Both **McGarvey** and **OracleNamesAdminGuide** discuss name resolution

---

[31] See **OracleNamesAdminGuide**, pages 33, 61, and 137 et seq.
[32] See **McGarvey**, col. 2, lines 61-67 and col. 5, lines 3-32 et seq.

approaches in networks that may rely on TCP/IP and domain name models.[33]  A key

role in database management is to "to detect problems before they impact users."[34]  Far

from a new development in the art, redirect messages were commonly used for

resolution by those skilled in the art, and **OracleSG** even referred to redirects as a

5  useful tool for Oracle systems.[35]

Claim 8

Regarding claim 8, ~~OracleNamesAdminGuide~~ additionally teaches a system

10  wherein **each of the plurality of servers in the network stores only a portion of the

data location information** (see disclosure that each Names Server includes a processor

and a cache memory that stores some or all of the connection descriptors (i.e., location

information), as well as a forwarder that takes queries for names and forwards the

query on to the appropriate Names Server, pages 32-33 et seq.; see also disclosure of the

15  sequence of events by which client requests are forwarded amongst Names Servers to

---

[33] See **McGarvey**, Abstract and col. 2, lines 61-67 et seq.; see also **OracleNamesAdminGuide**, pages 56-57 et seq.
[34] See **OracleSG**, page 44 et seq.
[35] See *id.*, page 112.

retrieve the answer and return it to the client [i.e., foreign name resolution], pages 190-

191 and Fig. C-4:



Figure C – 4  Network Messages in a Multi-Level Foreign Name Resolution                    ;

see also disclosure that the system can be configured, for performance reasons, to turn

off request forwarding amongst Names Servers, whereupon rather than forwarding the

request and returning the answer, the Names Server simply tells the requestor the

address of the Names Server that can answer the request [i.e., a redirect message], pages

119-120 and 137).

Claim 15

Regarding claim 15, OracleNamesAdminGuide teaches **a method of handling**

**location queries in a network, the network comprising a plurality of location servers**

**including data location information** (see disclosure of a plurality of data location

servers embodied in Names Servers, illustrated in Figs. 2-1 and 3-1:



Figure 2 – 1  Components of a Network Using Oracle Names
with the Dynamic Discovery Option



Figure 3 – 1  Components of a Network Using Oracle Names
Without the Dynamic Discovery Option

5          see also disclosure that the use of at least two Names Servers are recommended,

pages 29, 44, 51, 60, and 67 et seq.), the method comprising:

          a) **correlating each one of a plurality of identifiers with at least one of a**

**plurality of locations in the network, each one of the plurality of identifiers**

**identifying a respective one of a plurality of data entities, wherein the data entities**

**are stored in corresponding locations in the network** (see disclosure that each database

server's network address is stored with a name [i.e., identifier] that is used to identify it,

and that client applications can then request a database connection with a simple name

5    rather than a lengthy address, page 20 et seq.; see also disclosure that the Oracle Names

Server stores names and addresses for network services such as databases, as well as

database service names and aliases, which can serve as alternate names for any defined

database service or database link, page 23 et seq.; see also disclosure of associating

aliases with their respective location information, pages 44, 56-57, 93, and 108 et seq.);

10         b) **receiving a location query from a client at one of the plurality of location**

**servers, the location query requesting location information identifying a location of a**

**data entity included in the data entities** (see disclosure of the sequence of events

whereby a database request utilizing a database name is translated to a database

address by the Names Server, pages 52-53; see also disclosure of how names are

15   resolved for a distributed database connection, as well as the sequence of events for

doing so, pages 53-54 and Fig. 3-12:



Figure 3 – 12  Distributed Database Connection

The sequence of events is as follows:

1. Server TOM receives the SQL statement shown and checks its data dictionary for a private or public database link called JERRY. When it does not find one, SQL*Net determines from the client configuration in the SQLNET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net then sends the Names Server a request to resolve the database link name JERRY.WORLD.

2. The Names Server receives the request, looks it up in the cache, then sends the response back to the server TOM.

3. Server TOM receives the answer and substitutes the response in place of the initial name.

4. Server TOM contacts server JERRY and establishes a standard SQL*Net distributed database connection.

);

c) **determining which of the plurality of location servers includes the location information** (see disclosure of the sequence of events whereby a database request utilizing a database name is translated to a database address by the Names Server, pages 52-53; see also disclosure of how names are resolved for a distributed database connection, as well as the sequence of events for doing so, pages 53-54 and Fig. 3-12:



Figure 3 - 12  Distributed Database Connection

The sequence of events is as follows:

1. Server TOM receives the SQL statement shown and checks its data dictionary for a private or public database link called JERRY. When it does not find one, SQL*Net determines from the client configuration in the SQL.NET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net then sends the Names Server a request to resolve the database link name JERRY.WORLD.

2. The Names Server receives the request, looks it up in the cache, then sends the response back to the server TOM.

3. Server TOM receives the answer and substitutes the response in place of the initial name.

4. Server TOM contacts server JERRY and establishes a standard SQL*Net distributed database connection.

);

     **d) sending a location response message to the client in response to determining the one of the plurality of location servers includes the location information, the location response message comprising the location information** (see disclosure of the sequence of events whereby a database request utilizing a database name is translated to a database address by the Names Server, pages 52-53; see also disclosure of how names are resolved for a distributed database connection, as well as the sequence of events for doing so, pages 53-54 and Fig. 3-12:



Figure 3 – 12  Distributed Database Connection

The sequence of events is as follows:

1. Server TOM receives the SQL statement shown and checks its data dictionary for a private or public database link called JERRY. When it does not find one, SQL*Net determines from the client configuration in the SQLNET.ORA file that the client's default domain is WORLD and the preferred Names Server is the one shown. SQL*Net then sends the Names Server a request to resolve the database link name JERRY.WORLD.

2. The Names Server receives the request, looks it up in the cache, then sends the response back to the server TOM.

3. Server TOM receives the answer and substitutes the response in place of the initial name.

4. Server TOM contacts server JERRY and establishes a standard SQL*Net distributed database connection.

); and

e) **sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information** (see disclosure of the sequence of events by which client requests are forwarded amongst Names Servers to retrieve the answer and return it to the client [i.e., foreign name resolution], pages 190-191 and Fig. C-4:



Figure C – 4  Network Messages in a Multi–Level Foreign Name Resolution    ;

see also disclosure that the system can be configured, for performance reasons, to

turn off request forwarding amongst Names Servers, whereupon rather than

forwarding the request and returning the answer, the Names Server simply tells the

5    requestor the address of the Names Server that can answer the request [i.e., the claimed

redirect message], pages 119-120 and 137).


To the extent that it could be argued that OracleNamesAdminGuide fails to teach

certain claim limitations, OracleSG teaches **sending a location response message to the**

10    **client in response to determining the one of the plurality of location servers includes**

**the location information, the location response message comprising the location**

**information** (see disclosure of the ability to execute an SQL query to determine the

location of data files in the network, page 152 et seq.).

**OracleNamesAdminGuide** and **OracleSG** are in the same field of art and
discuss managing distributed database systems using Oracle7 technology, and its
associated tools and utilities.[36] They contain overlapping disclosures focused on the
5   similar purposes of improving query efficiency and resolution of user access.

A POSITA would have found it obvious for **OracleNamesAdminGuide** to
associate location information (i.e., connection descriptor) with an identifier string (i.e.,
network-service-name-alias), and to store such information in a data location server
network.  As **OracleSG** explains, **OracleNamesAdminGuide's** SQL*Net uses
10  executable code to make it easier for users to connect to various databases and find their
data; however, "the burden of providing the translation between the easy names and
the exact server and instance address falls on the DBA."[37] Making use of identifier
strings to improve the users' experience and to ease their ability to find their desired
data entity is a primary objective of an Oracle database administrator ("DBA").

15  Indeed, before the '170 patent, POSITAs were combining these teachings in
Oracle7 systems in the 1990s, and **OracleSG** includes techniques explaining to DBAs

---

[36] See, e.g., **OracleNamesAdminGuide**, pages 5, 22, and 52-54 et seq., and **OracleSG**, pages 20, 27, and
695 et seq.
[37] See **OracleSG**, page 87.

how to improve their systems.[38] **OracleSG** directs DBAs to combine **OracleSG's** teachings with various reference manuals and resources to take advantage of all of Oracle7's capabilities.  For example, to use SQL*Net effectively, **OracleSG** provides that a DBA should record error messages and consult "specific product manuals (for

5   example, SQL*Net)" for solutions.[39]  Maintaining a working knowledge of the state of the art would be imperative for managing a distributed system, especially an Oracle7 system, because a POSITA would have been expected to combine the system with related technologies to improve efficiency and optimization.

Based on the commonplace need for efficiency in running queries, a POSITA

10   would have been motivated to associate the identifier string with data entities and location information because this allows **OracleNamesAdminGuide's** Names Server to use executable code to quickly return the location information associated with the identifier string to the requesting client with minimized cost.[40]

A POSITA would have been further motivated to configure

15   **OracleNamesAdminGuide's** programming logic to return a location message if the location server contains location information of the desired entity, since this would have

---

[38] See *id.* at page 20.
[39] See *id.* at page 605.
[40] See *id.* at pages 51-52.

resulted in the effective use of SQL*Net functionality, and improve query efficiency and

optimization of Oracle7 systems to ease user's ability to find their desired data entity.[41]

Furthermore, **McGarvey** discloses **sending a redirect message to the client in**

5      **response to determining the one of the plurality of location servers fails to include**

**the location information, the redirect message identifying which of the plurality of**

**location servers includes the location information** (see disclosure of a system using

TCP/IP address resolution to access data on its network, col. 2, lines 61-67 and Fig. 1 et

seq.; see also disclosure that it was known in the art that a particular name server may

10     contain information on only a subset of the domain namespace, but the name server

typically belongs to a hierarchy of name servers, and if it does, either it communicates

with other members of the hierarchy to attempt to resolve hostnames, or it returns

information referring the client to another server in the hierarchy so that the client can

redirect the query [i.e., the claimed redirect message], col. 1, lines 43-48 et seq.).

15

**McGarvey** is in the same field as **OracleNamesAdminGuide** and **OracleSG**.  For

example, **OracleNamesAdminGuide** describes a distributed database system, focusing

on Names Servers that respond to a client's data requests using unique customer

---

[41] See *id.* at pages 44, 52, 87, and 605 et seq.

identifiers associated with the data's network address.[42]  Similarly, **McGarvey** describes

a distributed network configuration that uses well-known name resolution techniques.[43]


Before the '170 patent, it was well known and ubiquitous for computer network

5      systems to use redirect messaging when a names server lacks the requested location

information.  For example, **McGarvey** teaches a "particular name server may contain

information on only a subset of the domain namespace, but the name server typically

belongs to a hierarchy of name servers, and if it does, ... it returns information referring

the client to another server in the hierarchy, so that the client can redirect the query."[44]

10     A POSITA would have found it obvious for **OracleNamesAdminGuide's** first

Names Server—if it lacks the requested location information—to send a redirect

message to the client that identifies another Names Server having the location

information.  A POSITA would have been motivated to do so because this would

further the use of **OracleNamesAdminGuide's** SQL*Net and Names Servers to respond

15     to certain data entity requests and lessen the workload of the root Names Server

because it no longer needs to perform forwarding functions to other servers containing

---

[42] **OracleNamesAdminGuide** at pages 5, 22-24, and 52-54.
[43] **McGarvey** at Abstract, col. 1, lines 40-49, and col. 2, lines 61-67 et seq.
[44] See *Id.*, col. 1, lines 13-48 et seq.

the requested information.[45]  Further, if a Names Server can't resolve a client's

information query, a POSITA would have been motivated to have the server transmit a

redirect message so the client can contact another Names Server housing the location

information.  This is because using such redirect messages was an established

5    method in hierarchical naming services to address unresolved location requests.[46]

Moreover, a POSITA would have been motivated to do so because providing a

redirect message identifying another Names Server would improve the ability of

**OracleNamesAdminGuide's** system to locate the client's requested information.  By

taking these steps, a POSITA would have designed **OracleNamesAdminGuide's**

10   system to detect and resolve problems without placing the burden on the user.  This is

the DBA's inherent role, and the clear benefits for the user would have motivated a

POSITA to combine **OracleNamesAdminGuide** and **McGarvey** in this way.

Further, it was known in the art that a hierarchical structure in a larger database

system would reduce processing demands on each Names Server by dividing the

15   directory into separate portions.  This would have resulted in the Names Server

redirecting a request to the respective Names Server containing the pertinent location

information.  Both **McGarvey** and **OracleNamesAdminGuide** discuss name resolution

---

[45] See **OracleNamesAdminGuide**, pages 33, 61, and 137 et seq.
[46] See **McGarvey**, col. 2, lines 61-67 and col. 5, lines 3-32 et seq.

approaches in networks that may rely on TCP/IP and domain name models.[47]  A key

role in database management is to "to detect problems before they impact users."[48]  Far

from a new development in the art, redirect messages were commonly used for

resolution by those skilled in the art, and **OracleSG** even referred to redirects as a

5    useful tool for Oracle systems.[49]


### **Ground 3:** OracleNamesAdminGuide, OracleSG, McGarvey and **Rajani**

Claims 9 and 12 are obvious under 35 U.S.C. § 103(a) in view of

OracleNamesAdminGuide, OracleSG, and McGarvey as applied to claims 6, 8, and 15

10   above, and further in view of **Rajani**.


### Claims 9 and 12

Regarding claims 9 and 12, OracleNamesAdminGuide, OracleSG, and

McGarvey teach a system for managing data location information substantially as

15   claimed.

---

[47] See **McGarvey**, Abstract and col. 2, lines 61-67 et seq.; see also **OracleNamesAdminGuide**, pages 56-57 et seq.
[48] See **OracleSG**, page 44 et seq.
[49] See *id.*, page 112.

OracleSG also discloses a system wherein **the location information in the location server is maintained in an indexed location store comprising a string store indexed by a hash table distributed across a plurality of servers** (see disclosure that that Oracle 7 utilizes the use of a rule-based optimizer in executing SQL queries in the

5    Oracle 7 database manager. Specifically, it is disclosed that hashing is utilized by the rule-based optimizer in order to execute queries in the most effective manner, page 633 et seq.).

A POSITA would have found it obvious for **OracleNamesAdminGuide's** system

10   to have the capability of using a hash function to organize location information, based on **OracleSG's** teachings. Before the '170 patent, it was well known and ubiquitous for a computer network system to use a hash table to locate information stored in the system. For example, **OracleSG** teaches using a hash function to improve the efficiency of a query in an Oracle7 system.[50]

15   Like **OracleSG**, the '170 patent establishes that it was generally known in the art to use hashing operations in a computer networking environment. Specifically, the '170

---

[50] See **OracleSG**, page 633 et seq.

patent acknowledges that it was generally known in the art that hashing algorithms

existed to locate information in a table (e.g., the hashpjw algorithm).[51]

Furthermore, when making forwarding decisions to other Names Servers, a

POSITA would have found it obvious to configure an initial Names Server to determine

5    another Names Server based on **OracleSG's** hashing function applied to the network-

service-name-alias (i.e., identifier string).  To do so, a POSITA would have been

motivated to have the initial Names Server locate the other Names Server containing

the location information for the desired entity by applying a hashing function to the

entity's network-service-name-alias (i.e., identifier string).  Having this configuration

10   would have furthered **OracleNamesAdminGuide's** goal to optimize search

performance in its location request queries.[52]

Furthermore, **Rajani** also discloses a system wherein the location information in

15   the location server is maintained in an indexed location store comprising a string

store indexed by a hash table distributed across a plurality of servers (see disclosure

of hashing the locations of data entities [e.g., files] to make them more easily accessible.

---

[51] See '170 patent, col. 15, lines 12-49 et seq.
[52] See **OracleNamesAdminGuide**, page 60.

For instance, claim 1 discloses a method of locating a file in memory whereby said file is
identified by a name comprising a component in a sequence of N components
identifying a path name associated with said file, including storing each component in
an available location of a first table of locations such that the address of said available
5    location defines a unique identity value of the component stored thereat, and deriving
for each component an associated hashing number and storing in a second table of
locations at a location identified by said hashing number the address of the available
location, col. 8, lines 38-60).

Also disclosed is a process of locating or creating a record associated with a file
10   that is either being stored or unloaded from one memory through the use of a hash
table and a string space table.  Upon receipt of the file, or path name (e.g., /etc/services),
the computer maps the path name into a unique identity that can be used to locate the
file after it has been stored.  Specifically, the computer generates each identity by
passing each component of the pathname through a conventional hashing algorithm to
15   obtain a memory offset.  The computer then retrieves from the hash table the contents of
the location defined by the offset, which is used as an index into the string space table
where the desired component can be retrieved (col. 4, lines 1-63 et seq.).

**Rajani** is in the same field as **OracleNamesAdminGuide**, **OracleSG**, and

**McGarvey**.  **OracleNamesAdminGuide** and **Rajani** share the common goal of parsing

data sets quickly.  **Rajani** teaches how to "quickly ascertain" the location of a file in a

table of file names (i.e., a names server) in a hierarchically configured storage system.[53]

5       Specifically, **Rajani** describes using a hash function to convert each file's hierarchical

pathname into a unique identifier, which is used to identify the file's location in the

network.[54]  **Rajani** also emphasizes that indexing location entries distributed over a

hierarchical network would be especially useful as systems grow larger and more

complicated, which results in location queries becoming more labor intensive on the

10     system.[55]

        Because **OracleNamesAdminGuide** and **Rajani** share the common goal of

parsing data sets quickly, a POSITA would have been motivated to use **Rajani's**

hashing table techniques in **OracleNamesAdminGuide's** Names Servers to quickly and

efficiently determine the location of a requested data entity.  It was understood in the

15     art that DBAs would actively search for resources to solve problems that may arise in

the specific database environment in which they are working.  As **OracleSG** states:

"[T]ry to obtain as much knowledge as possible about the DBMS and query

---

[53] See **Rajani**, col. 1, lines 32-34 et seq.
[54] See *id.* claim 1 at col, 8, lines 53-60.
[55] See *id.* col. 1, lines 37-45.

optimization through training courses and books.  It may mean more work for you, but

it could save many hours of project team labor if you can quickly provide your

compatriots with the answers that they need".[56]  **OracleNamesAdminGuide** describes

one specific database environment—hierarchical configurations—that provides certain

5      RDBMS-related advantages.  But such hierarchical configurations can complicate the

naming practices and location information needed to identify each data entity.  For

example, in non-hierarchical configurations, Oracle7's "flat-naming" convention allows

the omission of domains.[57]  Conversely, **OracleNamesAdminGuide's** hierarchical

configurations include multiple domains requiring that a data entity's location

10     information identify the specific domain of the data entity.[58]

Based on the desire to maximize efficiency in running queries, a POSITA would

have been motivated to combine **OracleNamesAdminGuide's**, **OracleSG's**, and

**McGarvey's** techniques of locating data entities with **Rajani's** use of hashing location

tables to quickly return location information associated with the requested data entity.

15     Thus, to the extent that the combination of **OracleNamesAdminGuide**,

**OracleSG**, and **McGarvey** doesn't render obvious the use of hash functions in

organizing data location information, a POSITA would have been motivated and found

---

[56] See **OracleSG**, page 51.
[57] See *id.* page 41.
[58] See **OracleNamesAdminGuide**, pages 41-42.

it obvious to have **OracleNamesAdminGuide's** location information include a portion

of a hash table distributed over multiple Names Servers based on **Rajani's** teachings.

This would have furthered **OracleNamesAdminGuide's** goal of having its Names

Servers identify the requested data entity's location "lightning fast".[59]  The benefits of

5     this modification to the Names Servers would become more pronounced as the

complexity of the system grows, especially in hierarchical configurations that result in

each data entity's location information including the data entity's specific domain.[60]

Even further, and well before the '170 patent, it was well known and ubiquitous

for a computer network system to use a hash table to locate information stored in the

10    system.[61]  Like **Rajani**, the '170 patent and its prosecution history establish that it was

generally known in the art to use hashing operations in a computer networking

environment.  For example, the '170 patent specifically acknowledges that it was

generally known in the art that hashing algorithms existed to locate information in a

table (e.g., the hashpjw algorithm).[62]

---

[59] See **OracleNamesAdminGuide**, page 60 et seq.
[60] See *id.* pages 41-42 et seq.
[61] See **Rajani**, col. 4, lines 40-56 and col. 8, lines 26-36 et seq.
[62] See '170 patent, col. 15, lines 12-49 et seq.

*Ex Parte Reexamination – E/P Non-Final Rejection*

Accordingly, based on **Rajani's** teachings, a POSITA would have found it

obvious for **OracleNamesAdminGuide's** location information to include a portion of a

hash table distributed over multiple Names Servers. A POSITA would have been

motivated to do so because, as **Rajani** teaches, this would allow

5      **OracleNamesAdminGuide's** Names Servers to use a hash table for reducing access

time for the location information relative to other data structures and reduce memory

allocation.[63]

---

[63] See **Rajani**, col. 1, lines 34-56 and col. 8, lines 15-19 et seq.

## Conclusion

**Extensions of time under 37 CFR 1.136(a) do not apply in reexamination proceedings.** The provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Further, in 35 U.S.C. 305 and in 37 CFR 1.550(a),

5    it is required that reexamination proceedings "will be conducted with special dispatch within the Office."

**Extensions of time in reexamination proceedings are provided for in 37 CFR 1.550(c).** A request for extension of time must specify the requested period of extension and it must be accompanied by the petition fee set forth in 37 CFR 1.17(g). Any request

10   for an extension in a third party requested ex parte reexamination must be filed on or before the day on which action by the patent owner is due, and the mere filing of a request will not effect any extension of time. A request for an extension of time in a third party requested ex parte reexamination will be granted only for sufficient cause, and for a reasonable time specified.  Any request for extension in a patent owner

15   requested ex parte reexamination (including reexamination ordered under 35 U.S.C. 257) for up to two months from the time period set in the Office action must be filed no later than two months from the expiration of the time period set in the Office action.  A request for an extension in a patent owner requested ex parte reexamination for more than two months from the time period set in the Office action must be filed on or before

the day on which action by the patent owner is due, and the mere filing of a request for

an extension for more than two months will not effect the extension. The time for

taking action in a patent owner requested ex parte reexamination will not be extended

for more than two months from the time period set in the Office action in the absence of

5    sufficient cause or for more than a reasonable time.


      The Patent Owner is reminded of the continuing responsibility under 37 CFR

1.565(a), to apprise the Office of any litigation activity, or other prior or concurrent

proceeding, involving U.S. Patent No. 7,814,170 throughout the course of this

10   reexamination proceeding. The third party requester is also reminded of the ability to

similarly apprise the Office of any such activity or proceeding throughout the course of

this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.


      The Patent Owner is reminded that any proposed amendment to the

15   specification and/or claims in the reexamination proceeding must comply with the

provisions of 37 C.F.R. § 1.530(d)-(j), must be formally presented pursuant to 37 C.F.R. §

1.52(a) and (b), and must include any fees required by 37 C.F.R. § 1.20(c). See MPEP §

2250(IV) for examples to assist in the preparation of proper amendments in

reexamination proceedings.

In order to ensure full consideration of any amendments, affidavits or

declarations, or other documents as evidence of patentability, such documents must be

submitted in response to this Office action.  Submissions after the next Office action,

5    which is intended to be a final action, will be governed by the requirements of 37

CFR 1.116, after final rejection and 37 CFR 41.33 after appeal, which will be strictly

enforced.


Any document filed by the Patent Owner must be served on the third party

10    requester (or requesters in a merged proceeding) in the reexamination proceeding in the

manner provided by 37 C.F.R. § 1.248.  See 37 C.F.R. § 1.550(f) and MPEP § 2266.03.

**All** correspondence relating to this *ex parte* reexamination proceeding should be

directed:

By EFS-Web:          Registered Users may submit correspondence via EFS-Web, at
                     https://efs.uspto.gov/efile/myportal/efs-registered.

5

By Mail to:          Mail Stop *Ex Parte* Reexam
                     Central Reexamination Unit
                     Commissioner for Patents
                     United States Patent & Trademark Office
10                   P.O. Box 1450
                     Alexandria, VA 22313-1450


By FAX to:           (571) 273-9900
                     Central Reexamination Unit
15

By hand:             Customer Service Window
                     Randolph Building
                     401 Dulany Street
                     Alexandria, VA 22314


20

EFS-Web offers the benefit of quick submission to the particular area of the

Office that needs to act on the correspondence.  Also, EFS-Web submissions are "soft-

scanned" (i.e., electronically uploaded) directly into the official file for the

reexamination proceeding, which offers parties the opportunity to review the content of

25  their submission after the "soft scanning" process is complete.

Any inquiry concerning this communication should be directed to the Central

Reexamination Unit at telephone number 571-272-7705.


/LUKE S WASSUM/
Primary Examiner, Art Unit 3992


Conferees:

/ANGELA M LIE/
Primary Examiner, Art Unit 3992



Michael Fuelling /MF/
Supervisory Patent Examiner
Art Unit 3992


5    lsw
    6 May 2022