# Exhibit K143



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,109 | 08/31/2022 | 7233978 | | 3927 |

184647          7590          08/21/2023

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway
Suite 300
Redwood City, CA 94065

| EXAMINER |
|---|
| SORRELL, ERON J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/21/2023 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

FISCH SIGLER LLP
5301 WISCONSIN AVENUE NW, SUITE 400
WASHINGTON, DC 20015

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,109* .

PATENT UNDER REEXAMINATION *7233978* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

### *Brief Summary of the Proceeding*

A Third-Party Requester, Amazon Web Services, requested *Ex Parte* Reexamination of claims 17, 23, 24, and 30 of U.S. Patent No. 7,233,978 to Overton et al. ("the '978 Patent"). The Request for Ex Parte Reexamination ("the Request") was granted a filing date of August 31, 2022.

The Request was found to raise at least one substantial new question of patentability with respect to at least one of the challenged claims and an Order granting said Request was mailed November 11, 2022. The Order indicated that claims 17-30 would be subject to reexamination with claims 18-22 and 25-29 being added by the Examiner *sua sponte* pursuant to MPEP § 2243 because those all depend from independent claims found to have a substantial new question of patentability.

On April 3, 2023, a Non-final Office action was mailed in which claims 17, 23, 24, and 30 were rejected as being obvious over ONAG in view of Boukobza; ONAG in view of OracleUnleashed; and Ault in view of Yocum and Boukobza.

On June 13, 2023 an interview was conducted between the Patent Owner and the Examiners of Record. For a complete summary of the interview, see Examiner Interview Summary mailed June 20, 2023.

The Patent Owner's filed their response to the Non-final Office action on July 3, 2023 after being granted a 1-month extension of time.

### Status of the Claims

Claims 17-30 are subject to reexamination;

Claims 17, 23, and 30 are rejected;

Claims 18-22, 24 and 25-29 are confirmed over the prior art of record.

### Listing of Prior Art

The following patents and/or printed publications are cited in this proceeding:

i.   Oracle Names Administrator's Guide, Release 2.0 (Oracle Corp., Redwood City, CA), published 1996 ("ONAG");

ii.  U.S. Patent No. 6,122,664 to Marcel Boukobza, filed on June 27, 1997, issued September 19, 2000 ("Boukobza");

iii. Joseph B. Greene, Oracle8 Server Unleashed, 1st ed. (Sams Publishing, Indianapolis, Ind.), ISBN: 0672306816, published October 1, 1995 ("OracleUnleashed");

iv.  U.S. Patent No. 5,617,568 to Michael B. Ault, filed on December 14, 1994, issued April 1, 1997 ("Ault"); and

v.   U.S. Patent No. 6,230,183 to Peter B. Yocum, filed on March 11, 1998, issued May 8, 2001 ("Yocum").

*Claim Construction*

The '978 Patent has expired, thus pursuant to MPEP 2258, the claims will be interpreted under the standard set in Phillips v AWH Corp.

*Response to Arguments*

The Patent Owner's arguments have been fully considered and are addressed below in the order presented in the Patent Owner's Remarks ("Remarks").

**SNQ 1: ONAG in view of Boukobza**

**1a) Combinability of ONAG and Boukobza**

The Patent Owner argues that ONAG and Boukobza are not relevant to or combinable with one another. The Patent Owner argues that ONAGs architecture would not support the modification as set forth in the rejection and there would be no reasonable expectation of success. (Remarks, pages 21-22).

**The Examiner disagrees.** ONAG and Boukobza are properly combinable as ONAG discloses the Names Server is an Oracle database product. (ONAG, page 20). Boukobza discloses a method and system for monitoring and management of a plurality of different objects and specifically identifies oracle databases, the same types of databases disclosed in ONAG.

The Patent Owner argues that the Names Server could not transfer a portion of the database names and service addresses to another Names Server because the Names Server stores the database names and service addresses in a cache and Boukobza only discloses the table import/export is configured for relational databases. (Remarks, page 22).

**The Examiner disagrees.** The "cache" references in ONAG appears to be an abstraction and not a description of any structural limitations on the database. ONAG discloses the database runs on a standard multitasking computer that can participate on in a TCP/IP network. (ONAG, page 24). ONAG makes use of Oracle databases and Boukobza teaches monitoring and managing objecting including Oracle database.

The Patent Owner argues that a Names Server would not encounter a performance limit such as MAX_EXTENTS as the limits of a given table stores the database names and service addresses will be defined at the network definition database and the Names Server does not add anything to a particular copy the database (Remarks, page 22).

**The Examiner disagrees.** The Patent Owners own arguments
points to the fact that the database in the Names Server can be
added to and therefore the size of the database grows. As the
database grows, it eventually will reach the MAX_EXTENTS limit.
Additionally, ONAG discloses clients/services registering with a
Names Server, and thereby adding to the database, and that Names
Server replicating the information to other Names Servers on the
network. (ONAG, page 20).

The Patent Owner argues that transferring a portion of
database names and services addresses across Names Servers would
name ONAG inoperable because transferring names and service
addresses across administrative regions would break ONAGs
organization structure or increase the amount of time to resolve
requests. (Remarks, page 22).

**The Examiner disagrees.** Transferring or portion of names
and service addresses would not break ONAGs organization
structure because ONAG discloses administrative regions can be
further divided into other administrative regions giving the
example of dividing EUROPE further into UK, GREECE, and so
forth. (ONAG, page 42). ONAG discloses the DBA administrators
should anticipate growth of names in the system and subdividing
domains into additional domains to handle the growth. (ONAG,

page 57). ONAG also discloses adding Names Servers to improve

performance. (ONAG, page 61).


The Patent Owner further argues that ONAG would not

transfer database names and service addresses across names

servers in the same administrative regions because Names Servers

in the same regions have the same data. (See Remarks, page 23).


**The Examiner disagrees.** As shown above, ONAG discloses

administrative regions can be further subdivided into additional

administrative regions and that DBAs should anticipate growth in

the system.


For the reasons above, the Examiner disagrees with the

Patent Owner's argument that ONAG is incompatible with Boukobza

and there would be no expectation of success in there

combination.


**1b) Boukobza's disclosure of the transferring step**

The Patent Owner argues that even if ONAG and Boukobza are

combinable, the combination fails to disclose the transferring

step because Boukobza is silent with respect to transferring a

portion of the identifiers and associated locations, or location

information, between first and second servers. (Remarks, pages

23-24). The Patent Owner argues that Boukobza only discloses

importing/exporting tables within a tablespace and that Boukobza

is silent with respect to separating storage of data from its

location information. (Remarks, pages 23-24).


**The Examiner disagrees.** Initially, the Examiner notes that

the Patent Owner appears to be arguing the teachings of Boukobza

individually when the rejection is based on a combination of

ONAG and Boukobza. Boukobza is relied on for disclosing

monitoring oracle databases and determining when the data in the

database is exceeding the available space and reorganizing the

database by exporting/importing tables. ONAG discloses Names

Servers, which run an Oracle database, which separate storage of

data from its location as recited in the claims of the '978

Patent. ONAG discloses adding data to the Names Server, as well

as adding additional names servers and reorganizing

administrative regions by creating additional administrative

regions that subdivisions. When viewed together, a person of

ordinary skill in the art, would recognize that as the database

in the names server in ONAG is continually being added to,

eventually it would exceed the maximum size that can to be

managed by a single name server as it would eventually run out

of space. ONAG suggests creating additional domains via

subdivisions to account for growth in the Names server.

Incorporating the teachings of Boukobza, a portion of the database would be moved to a new Names server, when it is determined that the database is growing such that it exceeds the maximum size that can be supported by a single names server.

## 2) The claimed "identifiers"

The Patent Owner argues that the prior art combination fails to teach the claimed identifiers because identifiers disclosed in ONAG do not uniquely identify entities as required by the proper claim construction under *Phillips*. (Remarks, page 25).

**The Examiner disagrees.** ONAG discloses two basic models for naming objects, flat and hierarchical. (ONAG, page 40). ONAG discloses that in the flat naming model, all names are unique within a single domain, the WORLD domain. (ONAG, page 40). Regarding the hierarchical naming model, ONAG discloses that within domains names must be unique, but names may be repeated across domains. This is shown in figure 3-6. (ONAG, page 42). However, while WEATHER and HISTORY are repeated, the full global names are indeed unique. See HISTORY.ROW.ACME and HISTORY.EUROPE.ACME. With that, ONAG teaches identifiers that uniquely identify entities as required by the claims.

**3) Dependent claims 23, 24, and 30**

The Patent Owner argues that the prior art combination fails to teach or suggest transferring a portion of data from the first server to a second server based on an input/output rate. (Remarks, page 28).

**The Examiner finds this argument persuasive.** ONAG in view of Boukobza as applied discloses transferring a portion of the database stored in a first Names Server to a second Names Server upon a determination that the table is exceeding a maximum size, however the combination is silent with respect to transferring a portion of data from a first server to a second server based on a transaction rate limit as required by claim 24.

The Patent Owner does not specifically address claims 23 and 30 and those claims do not recite the limitation argued in claim 24. The Examiner presumes the Patent Owner is relying on the arguments with respect to claim 17 to also apply to claims 23 and 30 which are not persuasive for the reasons discussed above.

**SNQ 2: ONAG in view of Oracle Unleashed**

**1a) Combinability of ONAG and Oracle Unleashed**

The Patent Owner argues that ONAG and OracleUnleashed are
not relevant to or combinable with one another. The Patent Owner
argues that ONAGs architecture would not support the
modification as detailed in the rejection and there would be no
reasonable expectation of success. (Remarks, pages 29-31).

**The Examiner disagrees.** ONAG and OracleUnleashed are
compatible as ONAG discloses the Names Server is an Oracle
version 7 database product. (ONAG, page 20). OracleUnleashed is
a manual detailing Oracle version 8 which is an upgraded version
of the database program and describes new features of the
database product. A person having ordinary skill in the art
would have found it obvious to modify the teachings of ONAG with
the teachings of OracleUnleashed in order to take advantage of
the new and upgraded features provided by updating the database
to the latest version.

The Patent Owner argues that the Names Server could not
transfer a portion of the database names and service addresses
to another Names Server because the Names Server stores the
database names and service addresses in a cache and
OracleUnleashed only discloses the table import/export is
configured for relational databases. (Remarks, page 29).

**The Examiner disagrees.** The "cache" references in ONAG
appears to be an abstraction and not a description of any
structural limitations on the database. ONAG discloses the
database runs on a standard multitasking computer that can
participate on in a TCP/IP network. (ONAG, page 24). ONAG makes
use of oracle databases and OracleUnleashed discloses new and
improved features provided by the most current version of the
database software available at the time.

The Patent Owner argues that a Names Server would not
encounter a performance limit such as MAX_EXTENTS as the limits
of a given table stores the database names and service addresses
will be defined at the network definition database and the Names
Server does not add anything to a particular copy the database
(Remarks, page 30).

**The Examiner disagrees.** The Patent Owners own arguments
points to the fact that the database in the Names Server can be
added to and therefore the size of the database grows. As the
database grows, it eventually will reach the MAX_EXTENTS limit.
Additionally, ONAG discloses clients registering with a Names
Server, and thereby adding to the database, and that Names
Server replicating the information to other Names Servers on the
network. (ONAG, page 20).

The Patent Owner argues that transferring a portion of
database names and services addresses across Names Servers would
name ONAG inoperable because transferring names and service
addresses across administrative regions would break ONAGs
organization structure or increase the amount of time to resolve
requests. (Remarks, page 30).

**The Examiner disagrees.** Transferring or portion of names
and service addresses would not break ONAGs organization
structure because ONAG discloses administrative regions can be
further divided into other administrative regions giving the
example of dividing EUROPE further into UK, GREECE, and so
forth. (ONAG, Page 42). ONAG discloses the DBA administrators
should anticipate growth of names in the system and subdividing
domains into additional domains to handle the growth. (ONAG,
page 57). ONAG discloses adding Names Servers to improve
performance. (ONAG, page 61).

The Patent Owner further argues that ONAG would not
transfer database names and service addresses across names
servers in the same administrative regions because Names Servers
in the same regions have the same data. (Remarks, page 30-31).

**The Examiner disagrees.** As shown above, ONAG discloses administrative regions can be further subdivided into additional administrative regions and that DBAs should anticipate growth in the system.

For the reasons above, the Examiner disagrees with the Patent Owner's argument that ONAG is incompatible with OracleUnleashed and there would be no expectation of success in their combination.

### 1b) Boukobza's disclosure of the transferring step

Continuing, the Patent Owner argues that even if ONAG and OracleUnleashed are combinable, the combination fails to disclose the transferring step because OracleUnleashed fails to teach transferring a portion of the identifiers and associated locations, or location information, between first and second servers when a performance criterion reaches a predetermined level. See Remarks, pages 31-32. The Patent Owner argues that OracleUnleashed does not specify that partitions are moved when (or if) a MAXEXTENTS error is encountered. (See Remarks, page 31).

**The Examiner disagrees.** OracleUnleashed discloses database reorganization in order to "take care of performance problems".

See OracleUnleashed, page 840). OracleUnleashed also discloses

minimizing downtime by being proactive with respect to handling

a MAXEXTENTS error. See OracleUnleashed, page 443). The claimed

"predetermined performance limit" corresponds to the tablespace

reaching a limit such that is about to reach cause an impending

disaster. See page 443. The claim requires the transfer to

happen when the performance level is met, not after. That

performance level corresponds to the point at which the table is

about to reach its MAXEXTENTS. In OracleUnleashed there are

times when the performance level is not a concern, then a point

when the table is about to reach its MAXEXTENTS. This point is

when the transfer takes place and corresponds to the claimed

performance limit.


**The Examiner disagrees.** Initially, the Examiner notes that

the Patent Owner appears to be arguing the teachings of

OracleUnleashed individually when the rejection is based on a

combination of ONAG and OracleUnleashed. OracleUnleashed is

relied on for disclosing monitoring oracle databases and

determining when the data in the database is exceeding the

available space and reorganizing the database by

exporting/importing tables. ONAG discloses Names Servers, which

implement an Oracle database, which separate storage of data

from its location as recited in the claims of the '978 Patent.

ONAG discloses adding data to the Names Server, as well as
adding additional Names Servers and reorganizing administrative
regions by creating additional administrative regions that
subdivisions. When viewed together, a person of ordinary skill
in the art, would recognize that as the database in the names
server in ONAG is continually being added to, eventually it
would exceed the maximum size that can to be managed by a single
name server as it would eventually run out of space. ONAG
suggests creating additional domains via subdivisions to account
for growth in the Names server. Incorporating the teachings of
OracleUnleashed, a portion of the database would be moved to a
new Names server, when it is determined that the database is
growing such that it exceeds the maximum size that can be
supported by a single names server.


## 2) The claimed "identifiers"

The Patent Owner argues that the prior art combination
fails to teach the claimed identifiers because identifiers
disclosed in ONAG do not uniquely identify entities as required
by the proper claim construction under Phillips. (Remarks, page
32).


**The Examiner disagrees.** ONAG discloses two basic models for
naming objects, flat and hierarchical. (ONAG, page 40). ONAG

discloses that in the flat naming model, all names are unique

within a single domain the WORLD domain. (ONAG, page 40).

Regarding the hierarchical naming model, ONAG discloses that

within domains names must be unique, but names may be repeated

across domains. This is shown in figure 3-6 reproduced below.

However, while WEATHER and HISTORY are repeated, the full global

names are indeed unique. See HISTORY.ROW.ACME and

HISTORY.EUROPE.ACME. With that, ONAG teaches identifiers that

uniquely identify entities as required by the claims.


**3) Dependent claims 23, 24, and 30**

The Patent Owner argues that the prior art combination

fails to teach or suggest transferring a portion of data from

the first server to a second server based on an input/output

rate. (Remarks, page 28).


**The Examiner finds this argument persuasive.** ONAG in view

of OracleUnleashed as applied discloses transferring a portion

of the database stored in a first names server to a second names

server upon a determination that the table is exceeding a

maximum size, however the combination is silent with respect to

transferring a portion of data from a first server to a second

server based on a transaction rate limit as required by claim

24.

The Patent Owner does not specifically address claims 23 and 30 and those claims do not recite the limitation argued in claim 24. The Examiner presumes the Patent Owner is relying on the arguments with respect to claim 17 to also apply to claims 23 and 30 which are not persuasive for the reasons discussed above.

**SNQ 3: Ault in view of Yocum in view of Boukobza**

**1a) Ault's architecture**

The Patent Owner argues that the prior art combination of Ault, Yocum, and Boukobza fails to render any of claims 17, 23, 24, or 30 obvious. The Patent Owner argues that Ault only describes a single file location server and thus Ault's architecture would not support transferring a portion of location information from a first server to a second server. (See Remarks, page 34).

**The Examiner disagrees.** Ault teaches "at least one filer server" per administrative region. (See Ault, lines 58-60 of column 6). Ault also suggests the file system may have multiple administrative regions, for example "us" and "france" administrative regions shown in figure 4.

**1b) Boukobza's disclosure of the transferring step**

The Patent Owner also argues that the combination of Ault, Yocum, and Boukobza teaches fails to teach the transferring step and references the earlier presented arguments concerning the Boukobza reference. See Remarks, page 35). The Examiner disagrees with these arguments for the same reasons presented earlier with respect to Boukobza.

**2) The claimed "identifiers"**

The Patent Owner argues that the combination of Ault, Yocum, and Boukobza fails to teach the claimed identifiers because Ault does not teach identifiers that uniquely identify an entity as required by the term when given its appropriate interpretation under Phillips. The Patent Owner argues that Ault's identifier identifies at most a file set and not an entity. (See Remarks, pages 35-36).

**The Examiner finds this argument persuasive.** Ault is silent with respect to the identifier uniquely identifying an entity. As best understood from the reference, Ault appears to disclose the identifiers identifying the file sets themselves rather than an entity. (See Ault, lines 1-9 of column 6).

**3) Aggregate set of location information.**

The Patent Owner argues that the Examiner has not demonstrated why the modification would result in each of the plurality of location servers storing a unique set of location information of an aggregate set.

**The Examiner disagrees.** Boukobza suggests reorganizing the database using import/export operations. Yocum suggests adding servers to achieve performance goals. When viewed together a person of ordinary skill in the art would recognize a that adding a file location server and reorganizing the database such that a portion is exported to the added server would result in the plurality of location servers storing a unique set of location information of the aggregate set.

The Patent Owner's arguments with respect to the combination of Ault, Yocum, and Boukobza to be overall persuasive, in particular the argument with respect to the combination failing to disclose the claimed identifiers uniquely identifying an entity as required when interpreting the term under Phillips. The rejections of claims 17, 23, 24, and 30 under 103(a) as being obvious over Ault, Yocum, and Boukobza are withdrawn.

**Secondary considerations**

## 1) Long-felt need and industry praise

The Patent Owner's evidence is insufficient to demonstrate long-felt need and failure of others. Per MPEP 716.04(II), Long-felt need is measured from the date a problem is identified and efforts made to solve it. The Patent Owner has not provided any evidence as to the date the problem was identified or any evidence of evidence of efforts to solve that problem. The only date mentioned is February 2004 which is after the issuance of the '978 Patent and speaks toward the significance of a hash table which is not a limitation in any of the claims in this proceeding. Additionally, it is unclear what the references listed at page 38 are intended to show. Lastly, even if there was a long-felt need, the Patent Owner has not shown that is was not due to other factors such as lack or interest or appreciation of the inventions potential or marketability rather than lack of technical know-how.

## 2) Failure of others unexpected results

The Patent Owner's evidence is insufficient to demonstrate failure of others or unexpected results. As mentioned above, the Patent Owner has not established a date to which the problem solved by the '978 Patent was identified. The evidence to show failure of others does not identify the problem or explain how

the references failed to solve that problem. The provided
references may very well address a different problem. The Patent
Owners evidence purporting to show unexpected results is also
insufficient because the evidence is not commensurate in scope
with the claims which the evidence is offered to support as the
evidence does not even mention any claim language just the
invention generally.

### 3) Commercial Success

The Patent Owners evidence is insufficient to demonstrate
commercial success. The evidence is not commensurate in scope
with the claims. The evidence does not reference any claimed
features and does not provide any evidence with respect to sales
figures or market share. The evidence points to the success of
others in the market but does not indicate how the commercial
success was derived from the claimed invention.

With that, the Patent Owners arguments and evidence toward
"secondary considerations" are insufficient and not persuasive.

### *Claim Rejections - 35 USC § 103*

The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

**Claims 17, 23, and 30 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over ONAG in view of Boukobza.**

Referring to claim 17, ONAG teaches a method in a location server (ONAG teaches a Names server which is a location server as it makes network address and database link information available to all nodes throughout the network. ONAG at page 20, *"Oracle Names makes network address and database link information available to all nodes throughout the network. Each database server's network address is stored with a name that is used to identify it. Client applications can then request a database connection with a simple name rather than a lengthy address."*) in a system having a plurality of location servers

for storing and retrieving location information, wherein each of

the plurality of location servers stores unique set of location

information of an aggregate set of location information (ONAG

discloses embodiments wherein the Names server is one of many

location servers, arranged as a hierarchy and distributed over a

large geographic area, each storing unique information of an

aggregate set of location information. ONAG discloses a process

of resolving a Name across administrative regions wherein a

Names server is asked for the address of a NAMES server

servicing a grandchild region of the root and the root only

knows the addresses of one of its direct children. See ONAG at

pages 190-191 and Figure C-4 reproduced below:

Figure C – 4 shows this process and the sequence of events assuming
that no data has been previously cached.

1. The client sends request to preferred Names Server in its local
   region (DR1).

2. The preferred Names Server in DR1 issues request for the Names
   Servers authoritative for the destination server (in region DR2.1).



Figure C — 4  Network Messages in a Multi-Level Foreign Name Resolution

3. The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2.

4. The receiving server in DR2 forwards the request to a Names Server in region DR2.1.

5. The name is retrieved from its authoritative Names Server in DR2.1.

6. The names Server in region DR2 caches the answer and returns it to the root.

7. The root caches the answer and returns it to the preferred Names Server in region DR1.

8. The preferred Names Server caches the answer and returns it to the client.

9. The client establishes a connection to the destination server.

), the method comprising:

providing a transfer protocol configured to transport identifier and location information (see page 43, "*A SQL\*Net community is a group of machines that can communicate using the same protocol. Clients, servers, Interchanges, and Names Server can be members of one or more communities…*"), the location information specifying the location of information related to the identifier (see pages 42-43, "*A client can request a network*

*service within its default domain using the service's simple,*

*unqualified name, that is, without specifying a domain name. If*

*a user requests a name without a '.' character in it, the*

*default domain name will be automatically appended to the*

*database service or database link name requested."* and see also

See page 20, *"Oracle Names makes network address and database*

*link information available to all nodes throughout the network.*

*Each database server's network address is stored with a name*

*that is used to identify it. Client applications can then*

*request a database connection with a simple name rather than a*

*lengthy address."*);

storing location information formatted according to the

transfer protocol at a first location server (see pages 32-33,

*"Each Oracle Names Server contains: the cache – the Names cache*

*is an in-memory database of app data required to resolve names.*

*The cache contains the following types of data: system*

*information—includes the* **service addresses** *of all of the Names*

*Servers. registration information—includes all registered TNS*

*services which includes other Names Servers and information*

*automatically generated by the Names Server when it was*

*installed."* See also page 20, *"Each database* **server's network**

**address** *is stored with a name that is used to identify it."*);

receiving an identifier and a location relevant to the

identifier at the first location server (see page 22, *"Oracle*

*Names eases the burden of administering the details of the*

*network. If the address of a network object changes, the change*

*is made in one place, and all clients get the benefit of the*

*change immediately. Any number of clients have access to a*

*network object's address from a single source."*);

storing the received location in a location store at the

first data location server (see page 22, *"Oracle Names eases the*

*burden of administering the details of the network. If the*

*address of a network object changes, the change is made in one*

*place, and all clients get the benefit of the change*

*immediately. Any number of clients have access to a network*

*object's address from a single source."* See also page 23, *"An*

*Oracle Names Server stores names and addresses for network*

*services such as databases or MultiProtocol Interchanges,*

*database link definitions, and object aliases. The Names Server*

*stores the following types of objects, which are described*

*below: database service names—The service name is the global*

*database name that is mapped to the SOL\*Net connect*

*descriptor."*), the location store comprising a plurality of

identifiers, each identifier associated with at least one

location (see page 23, *"aliases—You can assign service name*

*aliases as alternate names for any defined database service or*

*database link. Service name aliases are resolved as if they were*

*the original object."*), wherein the received location is

associated with the received identifier in the location store

(see page 22, *"Oracle Names eases the burden of administering*

*the details of the network. If the address of a network object*

*changes, the change is made in one place, and all clients get*

*the benefit of the change immediately."*);

    ONAG appears to fail to explicitly disclose the method

scales at least one of capacity and transaction rate capability

and fails to teach transferring a portion of the identifiers and

associated locations to a second data location server when a

performance criterion of the first location server reaches a

predetermined performance limit.

    Boukobza teaches, in an analogous system, scaling at least

one of capacity and transaction rate capability in a server in a

system comprising one or more servers by adding an additional

server in order to improve performance (see lines 60-67 of

column 33, *"If the average number of queued requests is >10 (the*

*example 10 is slightly greater than the average number of active*

*clients requesting a service from the server) then action to add*

*a server (up to the max)."*).

    Boukobza in analogous to the claimed invention because they

are both directed toward performance monitoring and tuning and a

network environment.

It would have been obvious to one of ordinary skill in the art at the time of the Patent Owner's invention to modify the teachings of ONAG with the above teaching so Boukobza. One of ordinary skill in the art would have been motivated to make such modification in order to reduce wait time for client requests as suggested by Boukobza.

Boukobza further teaches transferring a portion of database from a first storage device to a second storage device (see lines 18-32 of column 15, "*[T]he parameter 'ORA-- FRAGMENT—TS', in which the measurement consists of verifying the condition which corresponds to the case in which the largest of the extents ("MAX—EXTENTS') of the tables of the table space ("Tablespace") is smaller than the largest hole of the table space, and* **if this condition is true, of sending an action proposition window in which it is indicated that the table space ('Tablespace') must be reorganized according to the following propositions:** *either a file is automatically created to enlarge the table space ('Tablespace'),* **or it requests when a standard 'export-- operation-- tables/import' command is to be executed,** *or the administrator is requested to program the start of his reorganization utility. the parameter "ORA—SCANLOG', in which the Oracle errors to be processed in the file 'alert.log' are predefined. A predefined action class corresponds to each error."* See also lines 10-16 of column 32, "*comparison of the*

*actual number of 'extents' with the maximum allowed "MAXEXTENTS"*

*(defined at the creation of the object, in the clause*

*'STORAGE?'). In this case, the application using the table will*

*be suspended ('abort'). This incident must be prevented. Action*

*'ORA MAX EXT?' if the object reaches its 'maxextents'. Recording*

*in 'actionlog.'").*

It would have been obvious to one of ordinary skill in the
art at the time of the Patent Owner's invention such that a
portion of the identifiers and associated locations are
transferred to a second location server when the performance
criterion of the first location server reach a predetermined
threshold. Such a modification would only require
exporting/importing a portion of the identifiers and associated
locations from the first Names server to the added second Names
server. Boukobza suggests such corrective actions. One of
ordinary skill would have been motivated to make such
modification in order to prevent possible application suspending
errors from occurring as suggested by Boukobza (see lines 14-15
of column 32, *"this incident must be prevented."*).

Referring to claim 23, the combination of ONAG and Boukobza
teaches the method of claim 17, as shown above, and Boukobza
further teaches wherein the performance criterion comprises an

amount of available persistent storage space in the first

storage device (see line 66 of column 31 to line 28 of column

32. See also lines 43-51 of column 34, "*Finally, relative to*

*specific module 'system', it must be possible, among other*

*things, to monitor and measure the cpu time, the disk space, the*

*inputs/outputs, the storage, the exchange rate, the number of*

*users, the pagination, the network, etc. Thus it is possible,*

*for example, to measure the cpu utilization per second, with*

*default display, or the input/output rate per second, or to*

*identify the processors which are the largest users of cpu and*

*collect them in order to perform an autonomous analysis*

*('offline', tbc).*").

It would have been obvious to one of ordinary skill in the

art at the time of the Patent Owner's invention to modify the

teachings of ONAG with the above teachings of Boukobza by

applying the performance monitoring and tuning taught by

Boukobza to the Names servers of ONAG such that the performance

criterion comprises an amount of persistent storage space in the

first location server. One of ordinary skill in the art would

have been motivated to make such modification in order to ensure

proper running of all monitored applications and to

automatically initiate corrective action thus increasing overall

performance by minimizing potential system downtime as suggested

by Boukobza (see paragraph bridging columns 34 and 35).



     Referring to claim 30, the combination of ONAG and

Boukobza teaches the method of claim 17, as shown above, and the

combination further discloses transferring a portion of the

identifiers and associated locations to a second location server

when a performance criterion of the first data location server

reaches a predetermined performance limit further comprises

monitoring the performance criterion and automatically

transferring the portion of identifiers and associated locations

when the first location server reaches the predetermined limit

(See lines 39-56 of column 2 "*Thus, according to the idea of the*

*invention and contrary to all expectation, the use of autonomous*

*agents makes it possible to ensure the proper running of the*

*monitored applications in all of the nodes by means of an*

*autonomous and efficient process, to rapidly feed back the*

*useful information from the nodes to the management node, and to*

***automatically initiate actions*** *on certain conditions or possibly*

*to recommend an action…*").

     It would have been obvious to one of ordinary skill in the

art at the time of the of the Patent Owners invention to modify

the teachings of ONAG with the above teachings of Boukobza such

that the transferring of the portion of identifiers and

associated locations are automatically transferred when the

performance criterion reaches the predetermined limit. One of

ordinary skill in the art would have been motivated to make such

modification in order reduce reaction time and network traffic

by automatically making decisions on corrective actions (see

paragraph bridging columns 1 and 2).


Claims 17, 23, and 30 are rejected under pre-AIA 35 U.S.C.

103(a) as being unpatentable over ONAG in view of

OracleUnleashed.


Referring to claim 17, ONAG teaches a method in a location

server (ONAG teaches a Names server which is a location server

as it makes network address and database link information

available to all nodes throughout the network. ONAG at page 20,

"*Oracle Names makes network address and database link*

*information available to all nodes throughout the network. Each*

*database server's network address is stored with a name that is*

*used to identify it. Client applications can then request a*

*database connection with a simple name rather than a lengthy*

*address.*") in a system having a plurality of location servers

for storing and retrieving location information, wherein each of

the plurality of location servers stores unique set of location

information of an aggregate set of location information (ONAG

discloses embodiments wherein the Names server is one of many

location servers, arranged as a hierarchy and distributed over a

large geographic area, each storing unique information of an

aggregate set of location information. ONAG discloses a process

of resolving a Name across administrative regions wherein a

Names server is asked for the address of a NAMES server

servicing a grandchild region of the root and the root only

knows the addresses of one of its direct children. See ONAG at

pages 190-191 and Figure C-4 reproduced below:

Figure C – 4 shows this process and the sequence of events assuming
that no data has been previously cached.

1. The client sends request to preferred Names Server in its local
   region (DR1).

2. The preferred Names Server in DR1 issues request for the Names
   Servers authoritative for the destination server (in region DR2.1).



Figure C — 4  Network Messages in a Multi-Level Foreign Name Resolution

3.  The root Names Server does not have the answer (because root only knows about its direct child regions), but forwards the request to a Names Server in region DR2.

4.  The receiving server in DR2 forwards the request to a Names Server in region DR2.1.

5.  The name is retrieved from its authoritative Names Server in DR2.1.

6.  The names Server in region DR2 caches the answer and returns it to the root.

7.  The root caches the answer and returns it to the preferred Names Server in region DR1.

8.  The preferred Names Server caches the answer and returns it to the client.

9.  The client establishes a connection to the destination server.

), the method comprising:

providing a transfer protocol configured to transport identifier and location information (see page 43, "*A SQL*Net community is a group of machines that can communicate using the same protocol. Clients, servers, Interchanges, and Names Server can be members of one or more communities…*"), the location information specifying the location of information related to the identifier (see pages 42-43, "*A client can request a network*

*service within its default domain using the service's simple,*

*unqualified name, that is, without specifying a domain name. If*

*a user requests a name without a '.' character in it, the*

*default domain name will be automatically appended to the*

*database service or database link name requested."* and see also

See page 20, *"Oracle Names makes network address and database*

*link information available to all nodes throughout the network.*

*Each database server's network address is stored with a name*

*that is used to identify it. Client applications can then*

*request a database connection with a simple name rather than a*

*lengthy address."*);

storing location information formatted according to the

transfer protocol at a first location server (see pages 32-33,

*"Each Oracle Names Server contains: the cache – the Names cache*

*is an in-memory database of app data required to resolve names.*

*The cache contains the following types of data: system*

*information—includes the* **service addresses** *of all of the Names*

*Servers. registration information—includes all registered TNS*

*services which includes other Names Servers and information*

*automatically generated by the Names Server when it was*

*installed."* See also page 20, *"Each database* **server's network**

**address** *is stored with a name that is used to identify it."*);

receiving an identifier and a location relevant to the

identifier at the first location server (see page 22, *"Oracle*

*Names eases the burden of administering the details of the*

*network. If the address of a network object changes, the change*

*is made in one place, and all clients get the benefit of the*

*change immediately. Any number of clients have access to a*

*network object's address from a single source."*);

storing the received location in a location store at the

first data location server (see page 22, "*Oracle Names eases the*

*burden of administering the details of the network. If the*

*address of a network object changes, the change is made in one*

*place, and all clients get the benefit of the change*

*immediately. Any number of clients have access to a network*

*object's address from a single source."* See also page 23, "*An*

*Oracle Names Server stores names and addresses for network*

*services such as databases or MultiProtocol Interchanges,*

*database link definitions, and object aliases. The Names Server*

*stores the following types of objects, which are described*

*below: database service names—The service name is the global*

*database name that is mapped to the SOL\*Net connect*

*descriptor.*"), the location store comprising a plurality of

identifiers, each identifier associated with at least one

location (see page 23, "*aliases—You can assign service name*

*aliases as alternate names for any defined database service or*

*database link. Service name aliases are resolved as if they were*

*the original object."*), wherein the received location is

associated with the received identifier in the location store

(see page 22, *"Oracle Names eases the burden of administering*

*the details of the network. If the address of a network object*

*changes, the change is made in one place, and all clients get*

*the benefit of the change immediately."*);

ONAG appears to fail to explicitly disclose the method

scales at least one of capacity and transaction rate capability

and fails to teach transferring a portion of the identifiers and

associated locations to a second data location server when a

performance criterion of the first location server reaches a

predetermined performance limit.

OracleUnleashed teaches, in an analogous system, scaling at

least one of capacity and transaction rate capability by

transferring a portion of the identifiers and associated

locations to a second storage device when a performance

criterion of the first storage device reaches a predetermined

performance limit (OracleUnleashed at 424-425, *"…Partitioning*

*enhances Oracle's support for very large databases as*

*partitioning breaks tables and indexes into smaller, easier-to-*

*manage pieces, storing these pieces at the tablespace level…*

*…Partitioning greatly enhances database performance. This*

*performance can be monitored and adjusted in a variety of*

*manors… …Oracle8 partitioning has many features that make*

*partitions easy to create, move, split, and so on."* See also

page 840, *"Data management involves backup, recovery, moving*

*data in and out of the database, and data reorganization in*

*order to take care of fragmentation and performance problems. In*

*Oracle7 the unit of data management was the table, while in*

*Oracle8 the unit of data management is a partition. As the table*

*grows in size, the partition does not necessarily grow in size;*

*instead, the number of partitions increases. Parallel data loads*

*can be performed resulting in faster data loads. Partitions also*

*allow a part of the table to be relocated to another drive."* See

also pages 443-444, wherein OracleUnleashed discusses

performance monitoring of specific criteria MAXEXTENTS, *"There*

*are three main reasons to monitor a UNIX and/or a database*

*server. The first is to be proactive rather than reactive with*

*error resolution. Downtime can be minimized if the*

*administrators know, for example, that certain dynamic objects*

*are about to reach their MAXEXTENTS. This can be easily*

*monitored and corrected without the end user even being aware*

*that there was almost an application-stopping problem. A*

*reactive approach to this example would be the end user getting*

*the MAXEXTENTS error, called the help desk or administrator, and*

*waiting."*).

It would have been obvious to one of ordinary skill in the

art at the time of the of the Patent Owners invention to modify

the teachings of ONAG with the above teachings of

OracleUnleashed such that Names servers are monitored for a

performance related criterion reaching a predetermined

performance limit and partitioning the Names server by

transferring a portion of the identifiers and locations to

another Names server. One of ordinary skill in the art would

have been motivated to make such modification in order to

proactively monitor and correct any potential problems instead

of reacting to the error after it as occurred as suggested by

OracleUnleashed (see pages 443-444).


Referring to claim 23, the combination of ONAG and

OracleUnleashed teaches the method of claim 17, as shown above,

and OracleUnleashed further teaches wherein the performance

criterion comprises an amount of available persistent storage

space in the first storage device (see page 435, OracleUnleashed

at 435, *"Oracle manages its space inside the tablespace in units*

*called extents… Extents are preallocated units of disk space*

*assigned individually to data-oriented objects… Datablocks are*

*inserted until the percent of the block is within PCT-FREE of*

*being full. Inserts will not be allowed again in the data blocks*

*until the percentage of free space reaches PCT USED. Free space*

*in blocks is accomplished through deletes or updates that make*

*fields smaller.")*.


It would have been obvious to one of ordinary skill in the

art at the time of the Patent Owner's invention to modify the

teachings of ONAG with the above teachings of OracleUnleashed by

applying the performance monitoring and tuning taught by

OracleUnleashed to the Names servers of ONAG such that the

performance criterion comprises an amount of persistent storage

space in the first location server. One of ordinary skill in the

art would have been motivated to make such modification in order

to proactively monitor and correct any potential problems

instead of reacting to the error after it as occurred as

suggested by OracleUnleashed (see pages 443-444).


Referring to claim 30, the combination of ONAG and

OracleUnleashed teaches the method of claim 17, as shown above,

and ONAG as modified by OracleUnleashed suggests transferring a

portion of the identifiers and associated locations to a second

location server when a performance criterion of the first data

location server reaches a predetermined performance limit

further comprises monitoring the performance criterion and

automatically transferring the portion of identifiers and

associated locations when the first location server reaches the

predetermined limit (see page 448, *"Many of the features in Enterprise Manager can be customized according to each database, helping the DBA to monitor and manage multiple databases with ease. Manual intervention still has its place for many tasks, but the automation of most database systems has drastically increased with client/server technology."* see also page 448, *"Just as important as monitoring and regular maintenance is auditing. Auditing is another way of monitoring the database, in that the DBA can easily measure events that occur in it. After you have set up processes to audit the database's activity and monitor its elements, you can use job queues to schedule jobs at the database level. In other words, much of the monitoring and auditing process can be automated."*).

It would have been obvious to one of ordinary skill in the art at the time of the of the Patent Owners invention to modify the teachings of ONAG with the above teachings of OracleUnleashed such that the transferring of the portion of identifiers and associated locations are automatically transferred when the performance criterion reaches the predetermined limit. One of ordinary skill in the art would have been motivated to make such modification in order relieve the DBA of as many manual tasks as possible freeing up time for other activities as suggested by OracleUnleashed (See page 448).

**STATEMENT OF REASONS FOR PATENTABILITY AND/OR CONFIRMATION**

Claims 18-22 and 24-29 are confirmed over the prior art of record.

The following is an examiner's statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding:

Claim 18

Regarding claim 18, the prior art of record fails to teach or suggest alone or in combination wherein receiving an identifier and location at a first location server further comprises receiving the identifier and the location from an application server, wherein the location comprises the address of the server as required by claim 18. The prior art of record is silent with respect to receiving a location from an application server wherein the location is the address of the application server.

Claims 19-21

Regarding to claim 19, the prior art of record fails to teach or suggest alone or in combination wherein receiving an identifier and location at a first location server further comprises receiving the identifier and the location from a physical object, wherein the identifier identifies a physical object and the location comprises a geographic location of physical object as required by claim 19. The prior art of record

is silent with respect to receiving an identifier and location

from a physical object wherein the location comprises a

geographic location of the physical object.

Claims 20 and 21 are confirmed at least based on their

dependence on claim 19.


Claim 22

Regarging claim 22, the prior art of record fails to teach

or suggest alone or in combination, transferring a portion of

the identifier and location associations comprises: identifying

a portion of identifier and location associations on the first

location server to be transferred to the second location server

and identifying a data set state of the identified portion at an

initial time; copying a data set for the identified portion

corresponding to the identified data set state from the first

location server to the second location server and maintaining a

second data set containing changes to the identified portion

since the initial time; and identifying a data set state for the

second data set as in combination with the other recited

limitations required by claim 22. The prior art of record is

silent with respect to the claimed second data set.


Claim 24

Regarding claim 24, the Patent Owner's arguments with respect to claim 24 are persuasive and the prior rejections are withdrawn. The prior art of record fails to teach or suggest the performance criterion comprising a transaction rate. The prior art combinations of ONAG in view of Boukobza and ONAG and OracleUnleashed only disclose the performance criterion related to storage capacity.

### Claims 25 and 26

Regarding claims 25 and 26, the prior art of record fails to teach or suggest alone or in combination the transaction rate comprises a processor speed limit or network connection bandwidth limit as required by claims 25 and 26, respectively. The prior art of record is silent with respect to processor speed limits or network bandwidth speed limits.

### Claims 27-29

Regarding claim 27, the prior art of record fails to teach or suggest alone or in combination transmitting a location server map from the first location server, the location server map comprising information identifying the second location server and a list of identifiers associated with the second location server. The prior art of record is silent with respect to a location server map.

Claims 28 and 29 are confirmed at least based on their dependence on claim 27.

Any comments considered necessary by PATENT OWNER regarding the above statement must be submitted promptly to avoid processing delays. Such submission by the patent owner should be labeled: "Comments on Statement of Reasons for Patentability and/or Confirmation" and will be placed in the reexamination file.

### *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that ex parte reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in ex parte reexamination proceedings are provided for in 37 CFR 1.550(c).

### *Conclusion*

**THIS ACTION IS MADE FINAL.**

A shortened statutory period for response to this action is set to expire 2 from the mailing date of this action.

**Extensions of time under 37 CFR 1.136(a) do not apply in
reexamination proceedings.** The provisions of 37 CFR 1.136 apply
only to "an applicant" and not to parties in a reexamination
proceeding. Further, in 35 U.S.C. 305 and in 37 CFR 1.550(a), it
is required that reexamination proceedings "will be conducted
with special dispatch within the Office."

**Extensions of time in reexamination proceedings are
provided for in 37 CFR 1.550(c).** A request for extension of time
must specify the requested period of extension and it must be
accompanied by the petition fee set forth in 37 CFR 1.17(g). Any
request for an extension in a third party requested ex parte
reexamination must be filed on or before the day on which action
by the patent owner is due, and the mere filing of a request
will not effect any extension of time. A request for an
extension of time in a third party requested ex parte
reexamination will be granted only for sufficient cause, and for
a reasonable time specified.  Any request for extension in a
patent owner requested ex parte reexamination (including
reexamination ordered under 35 U.S.C. 257) for up to two months
from the time period set in the Office action must be filed no
later than two months from the expiration of the time period set
in the Office action.  A request for an extension in a patent
owner requested ex parte reexamination for more than two months
from the time period set in the Office action must be filed on

or before the day on which action by the patent owner is due,

and the mere filing of a request for an extension for more than

two months will not effect the extension.  The time for taking

action in a patent owner requested ex parte reexamination will

not be extended for more than two months from the time period

set in the Office action in the absence of sufficient cause or

for more than a reasonable time.

The filing of a timely first response to this final

rejection will be construed as including a request to extend the

shortened statutory period for an additional two months. In no

event, however, will the statutory period for response expire

later than SIX MONTHS from the mailing date of the final action.

See MPEP § 2265.


ALL correspondence relating to this ex parte reexamination
proceeding should be directed as follows:

**Please mail any communications to:**

Attn: Mail Stop *"Ex Parte Reexam"*
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450 Alexandria VA 22313-1450

**Please FAX any communications to:**

(571) 273-9900
Central Reexamination Unit

**Please hand-deliver any communications to:**

Customer Service Window

Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

**By EFS-Web**

Registered users of EFS-Web may alternatively submit such correspondence via electronic filing system EFS-Web, at

https://efs.uspto.gov/efile/myportal/efs-registered

EFS-Web offers the benefit of quick submission to the particular area of the Office that needs to act on the correspondence. Also, EFS-Web submissions are "soft scanned" (i.e., electronically uploaded) directly into the official file for the reexamination proceeding, which offers parties the opportunity to review the content of their submissions after the "soft scanning" process is complete.

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.


Signed:


/ERON J SORRELL/
Primary Examiner, Art Unit 3992


Conferees:        /JOSEPH R POKRZYWA/
                  Primary Examiner, Art Unit 3992
/MICHAEL FUELLING/
Supervisory Patent Examiner, Art Unit 3992