# Exhibit K144

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

*In re Reexamination of*

<u>U.S. Pat. No.</u>:    7,233,978

<u>Control No.</u>:    90/019,162

<u>Filing Date</u>:    Feb. 17, 2023

<u>Art Unit</u>:    3992

<u>Pat. Title</u>:    Method and Apparatus for Managing Location Information in a Network Separate from the Data to which the Location Information Pertains

Mail Stop "Petitions"
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**REQUESTER'S PETITION TO THE DIRECTOR
UNDER 37 C.F.R. §§ 1.515(c) AND 1.181**

Third-party requester Amazon Web Services, Inc. ("Amazon") respectfully submits this petition to the Director under 37 C.F.R. §§ 1.515(c) and 1.181 seeking review of the portions of the Examiner's May 16, 2023 Decision refusing ex parte reexamination of three of four claims challenged in Amazon's February 17, 2023 request—specifically, claims 3, 10, and 14 of U.S. Patent No. 7,233,978 ("'978 patent"). The May 16, 2023 Decision granted ex parte reexamination of the fourth challenged claim (claim 6).

# CONTENTS

INTRODUCTION ..................................................................................................1

AUTHORIZATION FOR PETITION..................................................................2

POINTS TO BE REVIEWED ..............................................................................3

ACTION REQUESTED ........................................................................................3

BACKGROUND FACTS.......................................................................................4

    A.    Reexamination Proceedings Based on November 2021 Requests....................5

    B.    The Limitations That Resulted in Allowance ....................................................7

    C.    Reexamination Proceedings Based on February 2023 Requests .......................9

    D.    The Office's Denial of Patent Owner's § 1.181 Petitions ..............................11

ARGUMENT .......................................................................................................12

I.    STANDARD OF REVIEW ............................................................................12

II.    THE EXAMINER'S REFUSAL TO ORDER REEXAMINATION OF CLAIMS 3, 10, AND 14
WAS ARBITRARY AND CAPRICIOUS. ...........................................................12

    A.    Claims 3, 10, and 14 Were Previously Allowed Based on the Same Missing
Element as the Claims Challenged in the '165 and '166 Reexaminations. .....12

    B.    The Office Already Found SNQs Affecting Claims with the Same Limitations
in the Other Reexaminations, Based on the Same Prior Art and Arguments. .14

    C.    The Examiner's Opposite Conclusions on Claims 3, 10, and 14 Here Can't Be
Reconciled with the Decisions in the '165 and '166 Reexaminations.............17

III.    REEXAMINATION OF CLAIMS 3, 10, AND 14 IS WARRANTED BECAUSE THE NEWLY
CITED ART TEACHES THE LIMITATIONS PREVIOUSLY FOUND TO BE MISSING...........21

    A.    Skagerwall Renders Obvious the Missing Limitations Addressed by SNQs 1
and 3..................................................................................................................22

    B.    Steen Renders Obvious the Missing Limitation Addressed by SNQs 2 and
3.........................................................................................................................23

IV.    REEXAMINATION IS WARRANTED BECAUSE THE EXAMINER LEGALLY ERRED WHEN
APPLYING § 103..........................................................................................24

CONCLUSION....................................................................................................27

## INTRODUCTION

Amazon filed requests for ex parte reexamination on three related patents in February. All three requests relied on the same prior art and arguments to show that the common limitations of these patents that previously led to allowance are obvious. The first two Examiners to assess Amazon's cited art and grounds both agreed that Amazon had shown a substantial new question of patentability for all challenged claims in the co-pending 90/019,165 and -166 Reexaminations.

But after those decisions issued in March and April, the Examiner here, in Reexamination No. 90/019,162, found the opposite in his May 16, 2023 Decision. The Examiner did so despite the lack of substantive difference in the claim limitations at issue across the three reexaminations. For example, the challenged claims here in the '162 Reexamination recite:

> the redirect message comprising information for finding a location server known to have location information relevant to the location query.[1]

And in the '165 Reexamination, the challenged claims recite:

> the redirect message comprising a list of at least one other location server known to have the location information for the desired entity.[2]

The '165 decision found that Amazon's art and grounds established a substantial new question of patentability as to this limitation.[3] In the '166 Reexamination, too, the decision ordered reexamination of all claims with substantially similar limitations.[4] But the Examiner here found that the

---

[1] '978 patent (Ex. 1 to Feb. 17, 2023 request here), claim 3. The other '978 patent challenged claims at issue (10 and 14) include substantially similar language.

[2] '170 patent (Ex. 1 to Feb. 17, 2023 request in Reexamination No. 09/019,165), claim 6; *see also id.*, claims 8, 9, and 12 (challenged '170 patent claims depending from claim 6).

[3] Reexamination No. 90/019,165, Mar. 29, 2023 Decision at 12, 15-16.

[4] Reexamination No. 90/019,166, Apr. 4, 2023 Decision at 15-17.

same art and grounds didn't teach such limitations.[5] In so doing, the Examiner offered no explanation for deviating from the prior two decisions.

The decision here was thus arbitrary and capricious, and should be overturned on that basis. Further, the Examiner's findings must be reviewed without deference under MPEP § 2248, and here the newly cited art in Amazon's request teaches or renders obvious all limitations of challenged claims 3, 10, and 14, including those that the Office relied on when allowing these claims. And the portions of the decision refusing reexamination misapply 35 U.S.C. § 103 and controlling Supreme Court precedent, and are therefore contrary to law. For all these reasons and as further detailed below, the Director should grant this petition under 37 C.F.R. § 1.515(c), and reverse the portions of the Examiner's May 16, 2023 Decision refusing to grant ex parte reexamination of '978 patent claims 3, 10, and 14.[6]

## AUTHORIZATION FOR PETITION

Review of the May 16, 2023 Decision is appropriate under 37 C.F.R. §§ 1.515(c) and 1.181. As provided in 37 C.F.R. § 1.515(c), "[t]he requester may seek review by a petition to the Director under § 1.181 within one month of the mailing date of the examiner's determination refusing ex parte reexamination." Here, the Examiner ordered ex parte reexamination of challenged claim 6, but refused to do so for the other three claims challenged in the request (claims 3, 10, and 14). The Manual of Patent Examining Procedure confirms that, in these circumstances, 37 C.F.R. § 1.515(c) permits the requester to file a petition challenging the portions of the decision refusing reexamination. As stated in MPEP § 2248:

---

[5] May 16, 2023 Decision at 19-21, 29-32, 37-40 (analysis of proposed SNQs 1, 2, and 3).

[6] The May 16, 2023 Decision granted ex parte reexamination of the fourth claim challenged in the request ('978 patent claim 6).

Even if an order grants reexamination, a petition under 37 CFR 1.515(c) may be filed to challenge any refusal to reexamine a requested claim or a claim based on a requested basis, if applicable, as described below.

If an order granting reexamination includes a determination that the third party requester has not raised a substantial new question of patentability (SNQ) for one claim, but has raised a SNQ for at least one other claim, then third party requester may (within one month of the mailing date of the order) file a petition under 37 CFR 1.515(c) for reconsideration of the determination as to the claim for which no SNQ has been found to be raised.

Similarly, a petition under 37 CFR 1.181 may be filed (within one month of the mailing date of the order) requesting review of a determination granting a request for reexamination, if the determination grants the request as to a specific claim for some reasons (SNQs) advanced in the request but does not grant the request as to the claim for other reasons (SNQs) advanced in the request.[7]

## POINTS TO BE REVIEWED

Two Examiners in co-pending reexaminations of related patents found substantial new questions of patentability based on the same grounds and evidence presented in this proceeding. Those Examiners specifically found that the same prior art appears to teach claim limitations nearly identical to the limitations at issue in this reexamination for '978 patent claims 3, 10, and 14. Did the Examiner here err in finding the opposite, and deciding that there was no substantial new question of patentability for '978 patent claims 3, 10, and 14?

## ACTION REQUESTED

Amazon respectfully requests that the Director order ex parte reexamination of claims 3, 10, and 14 of the '978 patent—in addition to claim 6, which is already being reexamined in this proceeding—based on all three SNQs identified in Amazon's February 17, 2023 request.

---

[7] MPEP § 2248 (further providing that "37 CFR 1.515(c) applies only to challenging a basis for refusing reexamination; it does not apply to challenging a basis for granting of reexamination").

## BACKGROUND FACTS

In December 2018, Patent Owner commenced a lawsuit against Amazon in the Northern District of Illinois, alleging infringement of three patents, including the '978 patent at issue here.[8] Patent Owner also asserted related U.S. Patents Nos. 7,814,170 ("'170 patent") and 7,103,640 ("'640 patent") in that action, each of which is the subject of a co-pending ex parte reexamination (Nos. 90/019,165 and 90/019,166, respectively).[9]

All three patents are generally directed to locating data in distributed networks and purport to disclose novel techniques that involve storing location information for data in addition to the data itself. For instance, the '978 patent describes storing network addresses of data entities in a network of location servers, then having clients query one of the location serves to retrieve the network address of the desired data entity.[10]

Techniques for locating data in a distributed storage system that separate the "where" (i.e., the location of the data entity) from the "what" (i.e., the data entity itself) already existed at the time of the '978 patent's purported invention. One notable example is the then-commercially available Oracle7 distributed data storage system, as described in prior art publications such as the Oracle Names Administrator's Guide, Release 2.0 ("OracleNamesAdminGuide" or "ONAG").[11] Like the '978 patent, the prior-art Oracle system uses specialized servers to act as

---

[8] *Kove IO, Inc. v. Amazon Web Services, Inc.*, N.D. Ill. No. 1:18-cv-08175.

[9] The '170 patent is a continuation and the '978 patent is a continuation-in-part of the '640 patent.

[10] '978 patent (Ex. 1) at abstract, 2:19-37. Amazon's requests refer to this as "OracleNamesAdminGuide," but the relevant Office decisions have also used "ONAG."

[11] *See, e.g.*, Reexamination No. 90/019,034, Oct. 27, 2022 Final Office Action at 11, 16 (noting "before the '978 Patent, POSITAs were combining these teachings in Oracle7 systems in the 1990s," in connection with final rejections of independent claims 1 and 31).

intermediaries between clients requesting data entities and the corresponding data storage servers.[12] But the '978 patent applicant didn't bring this Oracle prior art to the Office's attention, and it wasn't considered during the original examination. Rather, Amazon brought the Oracle system and other never-before-considered prior art to the Office's attention when it first requested ex parte reexamination of all three patents in November 2021.

### A.     Reexamination Proceedings Based on November 2021 Requests

On November 19, 2021, Amazon filed three requests for ex parte reexamination, corresponding to the three patents that Patent Owner had asserted against Amazon. Each request relied on the same prior art, namely:

- OracleNamesAdminGuide;

- Oracle DBA Survival Guide, 1st ed. ("OSG");

- U.S. Patent No. 5,777,989 ("McGarvey"); and

- U.S. Patent No. 5,301,286 ("Rajani").[13]

The ONAG and OSG primary references both describe versions of Oracle software that was commercially available and popular at the time of purported invention, but not cited or brought to the Office's attention during the original examinations. Based on Amazon's cited prior art, arguments, and expert evidence, the Office granted all three November 2021 requests and ordered reexamination of all challenged claims, as summarized below.[14]

---

[12] *See, e.g.*, '978 patent at abstract, 2:19-37.

[13] *E.g.*, Reexamination No. 90/019,034, Nov. 19, 2021 Request. Every ground in the three requests relied on the two primary references, OracleNamesAdminGuide and OSG, with certain grounds also relying on one or both of the secondary references, McGarvey and Rajani.

[14] *E.g.*, Reexamination No. 90/019,034, Dec. 23, 2021 Decision.

| Control No. | Patent | Challenged Claims |
|---|---|---|
| 90/019,034 | '978 patent | 1, 3, 6, 10, 14, 17, 23, 24, 30, and 31 |
| 90/019,035 | '170 patent | 1, 2, 6, 8, 9, 12, and 15 |
| 90/019,036 | '640 patent | 17, 18, and 24 |

In the proceedings for the related '640 and '170 patents, the Office initially rejected all challenged claims.[15] And in the '978 patent proceeding, the Office initially rejected six of the ten challenged claims.[16] The six rejected challenged claims included the four claims at issue here (3, 6, 10, and 14), plus independent claims 1 and 31.[17] Patent Owner then filed replies to those Office actions in each proceeding, with arguments attempting to distinguish the rejected claims from the cited prior art.

For instance, Patent Owner argued in all three proceedings that the rejected claims are limited to a system of location servers organized in a non-hierarchical cluster structure, wherein each location server must be able to respond to any location request with either the location of the data or the location of a server known to contain the requested location data, and wherein

---

[15] Reexamination No. 90/019,035, May 11, 2022 Office Action; Reexamination No. 90/019,036, May 4, 2022 Office Action.

[16] The Office ordered reexamination of all ten challenged claims, but confirmed four claims—claims 17, 23, 24, and 30—in the first, June 28, 2022 action based on claim limitations separate from those addressed in instant petition. Those four earlier-confirmed claims are currently facing rejection in co-pending Reexamination No. 90/019,109. In 2019, Amazon also filed an IPR petition challenging the '978 patent, which was not instituted. This complete history is detailed in the request, the briefing for Patent Owner's § 1.181 petition, and the May 16, 2023 Decision.

[17] Reexamination No. 90/019,034, June 28, 2022 Non-Final Office Action; *see also* May 16, 2023 Decision at 12 ("[C]laims 1 and 31 were rejected under… § 103(a) as being unpatentable over ONAG; claims 3, 10, and 14, were rejected under… § 103(a) as being unpatentable over ONAG in view of OSG, and further in view of McGarvey; and claim 6 was rejected under… § 103(a) as being unpatentable over ONAG in view of OSG, and further in view of Rajani.").

each request must be resolved in two or fewer steps.[18] According to Patent Owner, Oracle's location servers have no knowledge of any other location server's contents, so unresolved location request messages in the prior-art Oracle system can only traverse up and down a hierarchy of location servers.[19] Patent Owner argued that this doesn't meet the "redirect message" or "hash" limitations recited in the challenged claims.[20]

Based on Patent Owner's arguments, the Office confirmed claims 3, 6, 10, and 14 of the '978 patent, and the previously rejected challenged claims of the '640 and '170 patents, over the prior art that Amazon cited in its November 2021 requests.[21] Independent claims 1 and 31 of the '978 patent remain rejected, per the Final Office Action in Reexamination No. 90/019,034.

### B. The Limitations That Resulted in Allowance

Claim 1 of the '978 patent recites:

1. A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising:

a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity

a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and

programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location

---

[18] *E.g.*, Reexamination No. 90/019,034, Sept. 28, 2022 Reply to Office Action at 12, 35; Reexamination No. 90/019,035, Aug. 11, 2022 Reply to Office Action at 11, 25-26, 29, 34, 39, 53, 55.

[19] *E.g.*, Reexamination No. 90/019,034, Sept. 28, 2022 Reply to Office Action at 9.

[20] *E.g.*, *id.* at 35-36 (arguing that '978 patent claims 3, 10, and 14 "require networks with non-hierarchical … configurations of location servers that enable each server in the server network to know which location server contains the location(s) of the desired data.").

[21] *See*, *e.g.*, Reexamination No. 90/019,035, Sept. 27, 2022 Notice of Intent to Issue Ex Parte Reexamination Certificate.

message comprising at least one location of data pertaining to the desired entity,
if the location server receiving the location query contains location information
for the desired entity.

As noted, the Office found that the cited art in Reexamination No. 90/019,034 rendered

obvious all the limitations of '978 patent claim 1. Claim 3, which is currently at issue here, de-

pends from rejected claim 1, and further describes that if the location server receiving a query

doesn't have the desired information, it responds by identifying the server that does. Specifically:

the queried location server returns a redirect message … comprising information
for finding a location server known to have location information relevant to the
location query.[22]

The Office was persuaded by Patent Owner's arguments that any given location server in the Or-

acle prior art wouldn't know the information that this redirect message must include, not that the

idea of redirection was novel. According to the Final Office Action:

Oracle's Names Servers forward name requests up and down a hierarchy of Names
Servers until the Names Server containing the desired information is reached, and
the desired information is returned in the same way, traversing the network of
Names Servers. This fact gives evidence to the fact that any given Names Server
has no information regarding which specific Names Server stores a desired item.
… Since any given Names Server has no information regarding which specific
Names server stores a requested item, there would be no way for the Names Server
to include such information in [the claimed] redirect message.[23]

All the challenged claims in Reexamination Nos. 90/019,034, -035, and -036 that sur-

vived non-final rejections did so based on substantially the same "redirect message" limitations

or analogous hash-function limitations.[24] At bottom, these limitations require any queried loca-

tion server to know either (1) the location of the desired data, or (2) which other server has that

information. These limitations (collectively, the knowledge limitations) are copied below:

---

[22] '978 patent, claim 3.

[23] Reexamination No. 90/019,034, Oct. 27, 2022 Final Action at 24-25.

[24] *E.g.*, *id.* at 25 (concluding that prior art doesn't render obvious claim 6's use of hashing for

| '978 Patent | '170 Patent | '640 Patent |
|---|---|---|
| Claims 3, 10, and 14: "the redirect message [comprising / comprises] information for finding a location server [known to have location information relevant to the location query / having location information related to the desired identifier / storing the entity identified in the query]" | Claims 6 (and dependent claims 8, 9, and 12) and 15: "the redirect message [comprising a list of at least one other location server known to have the location information for the desired entity / identifying which of the plurality of location servers includes the location information]" | Claims 17 and 18 (and dependent claim 24): "the redirect message contains [redirect] information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string" |
| Claim 6: "the location information in the location server is maintained in an indexed location store indexed by a hash table" | Claim 1 (and dependent claim 2): "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string" | |

### C.    Reexamination Proceedings Based on February 2023 Requests

On February 17, 2023, Amazon filed a second set of requests for reexamination of the above-mentioned claims of each patent, resulting in the present matter (No. 90/019,162) and two co-pending proceedings (Nos. 90/019,165 and 90/019,166).

| Control No. | Patent | Challenged Claims[25] |
|---|---|---|
| 90/019,162 | '978 patent | 3, 6, 10, 14 |
| 90/019,165 | '170 patent | 1, 2, 6, 8, 9, 12, and 15 |
| 90/019,166 | '640 patent | 17, 18, and 24 |

same reason as claimed redirect message in claims 3, 10, and 14—i.e., that not any given location server could use hashing to determine which other server has the desired information).

[25] As noted, reexamination was ordered of all challenged claims listed here and above, with the exception of the present matter, where the Examiner ordered reexamination of claim 6 only.

Each of the February 17, 2023 requests presented three SNQs, based on the same, never-before-considered combinations. Specifically:

- SNQ 1: U.S. Pat. No. 6,473,781 ("Skagerwall") alone or in view of U.S. Pat. No. 6,185,601 ("Wolff");

- SNQ 2: OracleNamesAdminGuide in view of Maarten van Steen's IEEE article "Locating Objects in Wide-Area Systems" ("Steen") and/or OracleUnleashed; and

- SNQ 3: Steen in view of Skagerwall and/or Wolff.

SNQs 1 and 3 each rely entirely on prior art that the Office hasn't previously considered. And SNQ 2 relies on one new reference (Steen), plus another (OracleUnleashed) that hasn't been considered for the challenged claims.[26] The requests also include new citations and arguments from the previously submitted OracleNamesAdminGuide reference addressing Patent Owner's arguments about the requirements of the limitations at issue.

As explained in the requests, the newly cited prior art in each SNQ teaches or discloses the limitations found to be missing in the previous reexaminations, i.e., that any claimed location server either (1) knows the location of the desired data, or (2) knows (or is able to determine via hash table/index, but not by querying other servers or traversing a hierarchy) the contents of the other location servers. For example, Skagerwall teaches a flat system of directory servers, where storing the location of each entry for its retrieval is assigned to its respective "primary" directory server. Skagerwall then discloses methods for any queried directory server to determine which other directory server is the primary one for each respective entry.[27]

---

[26] OracleUnleashed (Ex. 6) is cited in the separate reexamination (No. 90,019,109) of four '978 patent claims challenged in Reexamination No. 90/109,034, but confirmed several months before the claims being challenged here.

[27] Skagerwall, 10:21-26; 12:9-53.

On March 29, 2023, the Examiner in Reexamination No. 90/019,165 found that each SNQ that Amazon had identified warranted reexamination of all seven '170 patent challenged claims in light of the newly cited Skagerwall, Wolff, OracleUnleashed, and Steen references.[28] And on April 4, 2023, the Examiner in Reexamination No. 90/019,166 found likewise for all three '640 patent challenged claims.[29]

Both decisions were brought to the Examiner's attention here, in connection with Patent Owner's denied § 1.181 petition seeking summary termination of this proceeding. As Amazon explained in its Office-permitted response, the challenged claims of the related patents include and were previously confirmed based on the same limitations as the '978 patent claims challenged here—i.e., dependent claims 3 and 6 (both of which depend on rejected claim 1) and independent claims 10 and 14. Yet, as further detailed in the relevant sections of the Argument, below, the Examiner's May 16, 2023 Decision reached a different conclusion on three of those claims (3, 10, and 14), based on the same evidence and arguments.

### D. The Office's Denial of Patent Owner's § 1.181 Petitions

Although this is Amazon's first petition under § 1.181 in connection with the above-mentioned reexaminations, Patent Owner has previously filed multiple such petitions, seeking summary termination of these matters.[30] Twice now the Office has denied Patent Owner's § 1.181 petitions to terminate reexaminations involving the '978 patent.[31] Similar petitions that Patent Owner filed in Reexamination Nos. 90/019,165 and 90/019,166 remain pending.

---

[28] Reexamination No. 90/019,165, March 29, 2023 Decision.

[29] Reexamination No. 90/019,166, April 4, 2023 Decision.

[30] *E.g.*, Reexamination No. 90/019,109, Oct. 6, 2022 Petition to Terminate at 2 (arguing for termination on basis that request "us[ed] the Office's prior decisions as a road-map").

[31] May 16, 2023 Decision at 45-50; Reexamination No. 90/019,109, Nov. 22, 2022 Decision at

## ARGUMENT

### I.   STANDARD OF REVIEW

MPEP § 2248 provides that the Director's review of an examiner's determination that a substantial new question of patentability has not been raised "will be *de novo*."

### II.   THE EXAMINER'S REFUSAL TO ORDER REEXAMINATION OF CLAIMS 3, 10, AND 14 WAS ARBITRARY AND CAPRICIOUS.

Under the Administrative Procedure Act, an agency action should be set aside if it's "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[32] And as Federal Circuit case law confirms, the portions of the Examiner's May 16, 2023 Decision refusing ex parte reexamination of claims 3, 10, and 14 qualify as arbitrary and capricious. For instance, in *In re Vivint, Inc.*, the Federal Circuit found it improper to apply § 325(d) twice to the same subject matter but with different results.[33] As the Federal Circuit stated, the Office "acted arbitrarily and capriciously by applying the same law to the same facts and reaching a different conclusion."[34] The same is true here.

#### A.   Claims 3, 10, and 14 Were Previously Allowed Based on the Same Missing Element as the Claims Challenged in the '165 and '166 Reexaminations.

In the previous reexamination of claims 3, 10, and 14 (No. 90/019,034), the Examiner provided the following explanation of why these claims were confirmed over the prior art cited in Amazon's November 2021 request:

> In regards to independent claims 10 and 14 and dependent claim 3, the claims all require the use of a "redirect message comprising information for finding a location server known to have location information relevant to the location query" (as found in claim 3, similar language in claims 10 and 14).… Since any given [ONAG]

---

27-37.

[32] 5 U.S.C. § 706(2)(A).

[33] 14 F.4th 1342 (Fed. Cir. 2021).

[34] *Id.* at 1354

Names Server has no information regarding which specific Names Server stores a requested item, there would be no way for the Names Server to include such information in a redirect message returned to the requesting device.[35]

The challenged claims of the '640 and '170 patents were likewise confirmed over the same prior art, based on the same or substantially the same reasoning and elements as the '978 patent claims at issue. For instance, in Reexamination No. 90/019,035, for claims 6, 8, 9, and 12 of the '170 patent, the Examiner's findings were virtually identical:

> [T]he prior art of record fails to disclose the claimed ["]redirect message comprising a list of at least one other location server known to have the location information for the desired entity.["] … Since any given [ONAG] Names Server has no information regarding which specific Names Server stores a requested item, there would be no way for the Names Server to include such information in a redirect message returned to the requesting device.[36]

The Examiners also made similar findings, based on similar elements, for the other claims of the related patents previously challenged in Reexamination Nos. 90/019,035 and 90/019,036.[37]

Thus, all the '978 patent claims here, and all the '640 and '170 patent claims in the ongoing reexaminations (Nos. 90/019,165 and 90/019,166), were allowed on the basis that the prior art didn't disclose any claimed location server either knowing the relevant information, or knowing the particular server with that information, without traversing a hierarchy of servers. In other

---

[35] Reexamination No. 90/019,034, Oct. 27, 2022 Final Office Action at 24-26; *see also id.* (providing similar explanation for claim 6, which recites using a hash table to determine information analogous to the content of the claimed redirect message in claims 3, 10, and 14).

[36] Reexamination No. 90/019,035, Sept. 27, 2022 Notice of Intent to Issue Reexamination Certificate at 11-12 (underlining omitted).

[37] *See id.* at 13 (withdrawing rejection of claim 15 for "reasons discussed above"); *id.* at 9-11 (similarly finding that prior art doesn't disclose requirement of claims 1 and 2 that "each one of the data location servers is configured to determine the at least one of the plurality of data location servers"); Reexamination No. 90/019,036, Oct. 6, 2022 Notice of Intent to Issue Reexamination Certificate at 4 ("The cited prior art fail to teach individually or in combination: '…transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server…' and 'wherein the redirect message contains information for use by the client to calculate a location of a different data location server.'").

words,'978 patent claims 3, 10, and 14 and challenged claims of the other patents with similar

"redirect" limitations were allowed on the basis that servers in the prior art systems wouldn't

know the information that would be put in the claimed redirect message, i.e., they lacked

knowledge of the other location servers' contents.

### B. The Office Already Found SNQs Affecting Claims with the Same Limitations in the Other Reexaminations, Based on the Same Prior Art and Arguments.

Given the Office's explanations for previously confirming the challenged claims based

on the knowledge limitations, each of Amazon's February 17, 2023 requests presented the same

arguments, based on similar expert evidence and the same prior art. And in the ongoing '640 and

'170 patent reexaminations (Nos. 90/019,165 and 90/019,166), the Examiners agreed that Ama-

zon had identified three substantial new questions of patentability for all challenged claims.

Specifically, in Reexamination No. 90/019,165, the request challenged claims 1, 2, 6, 8,

9, 12, and 15 of the '170 patent. For SNQ 1, the Examiner determined that Skagerwall and Wolff

raise a substantial new question of patentability about the same knowledge limitations of the

'170 claims that had previously led the Office to confirm those claims over the previously cited

prior art.[38] For instance, as the March 29, 2023 Decision ordering reexamination stated:

> The Request shows that Skagerwall and Wolff provide teachings relevant to the determination of patentability regarding the following limitations [in claim 6 of the '170 patent]:
>
> > ... *the redirect message comprising a list of at least one other location server known to have the location information for the desired entity.*
>
> Skagerwall describes the ability of a primary directory server to identify the location a desired object using a lookup request (column 12, line 63-column 13, line 6; column 10, lines 21-26; and column 11, lines 37-45 of Skagerwall).

---

[38] Ex. 40 (Reexamination No. 90/019,165, Mar. 29, 2023 Decision) at 13-14.

Wolff describes alternate path determination and redirection command across a network (Abstract and column 5, lines 24-38 of Wolff).[39]

Given Skagerwall's and Wolff's disclosures, the Examiner agreed that there is a substantial new question of patentability affecting claim 6 and the other challenged '170 patent claims.[40]

Similarly, for SNQ 2, the Examiner in Reexamination No. 90/019,165 found that Oracle-NamesAdminGuide, OracleUnleashed, and Steen raise substantial new questions of patentability affecting claims previously allowed based on similar knowledge limitations.[41] As the Examiner explained:

> The Request shows that ONAG, Oracle Unleashed, and Steen provide teaching relevant to the determination of patentability regarding the following limitations, for claim 1 and claim 6:
>
> > *each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.*
>
> ONAG describes a portable software that runs on a variety of computer platforms (pages 62-63 of ONAG). An example found on page 129 of ONAG shows a query and the systems response, reproduced below…As can be seen in the example above, the request from the client for location information results in a response ("Answers") which provides the location information for the desired entity (see also page 109 of ONAG).
>
> Steen describes that each subnode should be aware of how the directory node with which it communicates is partitioned, allowing the avoidance of querying the management service each time a subnode needs to communicate with its parent or children (page 108 of Steen).
>
> Oracle Unleashed describes the benefits of using hash functions instead of an index (pages 394 and 638 of Oracle Unleashed).[42]

---

[39] *Id.*

[40] *Id.* at 14.

[41] *Id.* at 15-16.

[42] *Id.* at 15.

For SNQ 3, as well, that Examiner agreed that Steen, Skagerwall, and Wolff raise substantial new questions of patentability affecting claims with the knowledge limitations.[43] For example, continuing with claims 1 and 6 of the '170 patent, the Examiner explained that:

> The Request shows that Steen, Skagerwall, and Wolff provide teaching relevant to the determination of patentability regarding the following limitations, for claim 1 and claim 6:

>> *each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.*

>> *programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity.*

> Steen describes that each subnode should be aware of how the directory node with which it communicates is partitioned, allowing the avoidance of querying the management service each time a subnode needs to communicate with its parent or children (page 108 of Steen).

> Skagerwall describes the ability of a primary directory server to identify the location a desired object using a lookup request (column 12, line 63-column 13, line 6; column 10, lines 21-26; and column 11, lines 37-45 of Skagerwall).

> Wolff describes alternate path determination and redirection command across a network (Abstract and column 5, lines 24-38 of Wolff).[44]

And in Reexamination No. 90/019,166, another Examiner (and another set of conferees) likewise agreed on each of the three SNQs presented in Amazon's request.[45] The February 17, 2023 request here, and the requests in Reexaminations Nos. 90/019,165 and -166, all rely on the same combinations and references, and similar arguments and expert evidence. Thus, as Amazon

---

[43] *Id*. at 17-19.

[44] *Id*. at 17-18.

[45] Ex. 41 (Reexamination No. 90/109,166, April 04, 2023 Decision) at 17-19.

explained in response to Patent Owner's petition to terminate, finding differently for the claims

challenged here would result in an arbitrary, capricious, and inconsistent outcome.[46]

### C. The Examiner's Opposite Conclusions on Claims 3, 10, and 14 Here Can't Be Reconciled with the Decisions in the '165 and '166 Reexaminations.

As the Federal Circuit explained in *Fred Beverages, Inc. v. Fred's Cap. Mgmt. Co.*,

agency action that "departs from established precedent without a reasoned explanation [is] arbi-

trary and capricious."[47] In that case, the court held that the Trademark Trial and Appeal Board

acted arbitrarily by denying leave to amend when "[t]here [wa]s no basis on which to distinguish

the circumstances of the present case from those in which" leave was granted.[48] Here, the Exam-

iner refused reexamination of claims 3, 10, and 14 because the cited prior art for each SNQ pur-

portedly didn't address the claimed "redirect" limitation—i.e., the knowledge limitation in those

claims. That finding is arbitrary and capricious because it contradicts not only the findings in the

co-pending '165 and '166 reexaminations, but also the previous findings in the '034 and '035

proceedings, and the Examiner's own findings with respect to claim 6.

Indeed, much like the Examiners in the co-pending proceedings, the Examiner here

agreed that Skagerwall disclosed the relevant "hash" limitation of claim 6 when ordering reex-

amination of that claim, as shown in the comparison of the decisions below.[49] This disclosure of

the required "hashing" results in the ability to identify—i.e., know—where content is stored on

other servers.

---

[46] Reexamination No. 90/019,062, May 8, 2023 Opposition to Petition at 22-26.

[47] 605 F.3d 963, 967 (Fed. Cir. 2010).

[48] *Id.*

[49] May 16, 2023 Decision at 17; Reexamination No. 90/019,165, March 29, 2023 Decision at 12; Reexamination No. 90/019,166, April 4, 2023 Decision at 15.

| This Proceeding ('978 Patent) | No. 90/019,165 ('170 Patent) | No. 90/019,166 ('640 Patent) |
|---|---|---|
| "In the first step, [Skagerwall describes] the directory server storing object data related to an object tag is identified, via a lookup in a hash table using a hash function, and the object data is retrieved." | "Skagerwall describes the ability of a primary directory server to identify the location a desired object using a lookup request." | "Skagerwall and Wolff … together disclose a similar system to [claimed] returning a redirect message if a location server lacks location information for the desired identification information comprising information for use to determine a location of a different data location server." |

And the Examiner further agreed that Steen disclosed the knowledge limitation, which had previously led to the allowance of '978 patent claim 6 and the similar challenged claims of both related patents:[50]

| This Proceeding ('978 Patent) | No. 90/019,165 ('170 Patent) | No. 90/019,166 ('640 Patent) |
|---|---|---|
| "In this configuration, the system can use the first n bits of an objects handle to identify a subnode (i.e. maintaining location information in an indexed store indexed by a hash table). Thus Steen expressly discloses the limitations in claim 6 found patentable in the concurrent [sic] EP proceeding 90/019,034." | "Steen describes the each subnode should be aware of how the directory node with which it communicates is partitioned, allowing the avoidance of querying the management service each time a subnode needs to communicate with its parent or children (page 108 of Steen)." | "[T]he OracleNamesAdminGuide, OracleUnleashed, and Steen references together disclose a similar system to [claimed] returning a redirect message if a location server lacks location information for the desired identification information comprising information for use to determine a location of a different data location server." |

Yet, despite the prior art's disclosure of the missing knowledge limitation, the Examiner refused reexamination of claims 3, 10, and 14, without explaining his reasons for disagreeing with the determinations in the co-pending '165 and '166 reexaminations.

---

[50] May 16, 2023 Decision at 17; Reexamination No. 90/019,165, March 29, 2023 Decision at 13; Reexamination No. 90/019,166, April 4, 2023 Decision at 15.

And these determinations in the other proceedings tracked the art's well-established teachings. It's long been a basic tool in networking for a server to provide whatever relevant information it can in response to a request. When a location server has the requested location information, it provides it. When a location server doesn't have the requested location information, but knows what location server does, then it provides that information. This basic failure-prevention mechanism isn't inventive. And redirection based on the same premise was a common performance tool for networking long before the '978, '640, and '170 patents. As Amazon's expert, Mr. Greene, explained when analyzing Skagerwall and Wolff:

> Without incorporating Wolff's redirection command message, the request for location information would fail if the directory server didn't contain the requested data, thus frustrating Skagerwall's goal of "facilitating the retrieval of information." Allowing failures to occur would be inefficient for the system and cause less reliable data retrieval.[51]

The limitations that led to the allowance of claims 3, 10, and 14 in the previous reexamination of the '978 patent and similar challenged claims in the previous reexaminations of the related patents all require this basic networking tool.[52] And, as detailed in Amazon's request for ex parte reexamination, this basic tool is expressly disclosed by OracleNamesAdminGuide, Oracle-Unleashed, and Wolff, and rendered obvious by Skagerwall and Steen.[53]

Indeed, Office Actions in the previous reexaminations acknowledged Oracle's use of the well-established redirection tool. For instance, in Reexamination No. 90/019,036:

---

[51] Declaration of Joseph B. Greene in Reexamination (Ex. 19) at ¶ 190.

[52] *Compare* '978 patent claims 3, 10, and 14 *with*, *e.g.*, '640 patent claim 18 and '170 patent claims 6 and 15 (for which reexamination has been ordered).

[53] *E.g.*, Request at 34, 59-60, 69-71, 90-92, 95-96, 98, 131, 138, 140-47, 168-72, 199-200.

Far from a new development in the art, redirect messages were commonly used for resolution by those skilled in the art, and OracleSG even referred to redirects as a useful tool for Oracle systems.[54]

Similarly, in Reexamination No. 90/019,035:

[Oracle] can be configured for performance reasons, to turn off request forwarding amongst Names Servers, whereupon rather than forwarding the request and returning the answer, the Names Server simply tells the requestor the address of the Names Server that can answer the request [i.e., the claimed redirect message].[55]

Yet, the Examiner here missed this, and erroneously concluded: "ONAG is silent with respect to the claimed 'redirection message.'"[56]

Even ignoring ONAG's express disclosure of a Names Server redirecting a client to another Names server containing the requested information, OracleUnleashed, just like OracleSG, discloses the basic networking tool of redirection. Mr. Greene highlighted this in his declaration:

Finally, OracleUnleashed provides various examples of how redirect messages can help resolve requests in different scenarios. For example, OracleUnleashed describes redirects for URL requests, for maintaining password privacy, and in the OWA utility package.[57]

Thus, as the Examiner in the previous '036 reexamination stated, "redirect messages were commonly used for resolution by those skilled in the art."[58]

Moreover, the request relied on Wolff as an exemplary reference explaining the basic idea of network redirection, i.e., pointing a client away from a server that can't satisfy its request to another server that can satisfy its request. Wolff expressly discloses this limitation:

Client load rebalancing refers to the ability of a client, enabled with processes in accordance with the current invention, to re-map a path through a plurality of nodes

---

[54] Reexamination No. 90/019,036, May 4, 2022 Non-Final Office Action at 7.

[55] Reexamination No. 90/019,035, May 11, 2022 Non-Final Office Action at 27.

[56] May 16, 2023 Decision at 30.

[57] Ex. 19 at ¶ 137.

[58] Reexamination No. 90/019,036, May 4, 2022 Non-Final Office Action at 7.

to a resource. The re-mapping may take place in response to a redirection command emanating from an overloaded node, e.g. server.[59]

But, as with ONAG, the two Examiners in the co-pending proceedings recognized Wolff's disclosure of this basic network principle. But the Examiner here didn't, as shown below:[60]

| No. 90/019,165 (’170 Patent) | No. 90/019,166 (’640 Patent) | This Proceeding (’978 Patent) |
|---|---|---|
| "Wolff describes alternate path determination and redirection command across a network," and combined with Skagerwall raises SNQs affecting all challenged claims. | "Wolff teaches load rebalancing on a distributed network whereby a network server may provide a redirect message to a client [identifying] another server which may satisfy the request." | "In a particular embodiment, Wolff [only] teaches a client may detect an overloaded condition in a server and access a resource through an alternate path." |

Given all the above, the Examiner's refusal to grant ex parte reexamination of claims 3, 10, and 14 should be set aside as arbitrary and capricious, or set aside in connection with the required *de novo* review, as further addressed below.

## III. REEXAMINATION OF CLAIMS 3, 10, AND 14 IS WARRANTED BECAUSE THE NEWLY CITED ART TEACHES THE LIMITATIONS PREVIOUSLY FOUND TO BE MISSING.

As MPEP § 2242 explains: "A prior art patent or printed publication raises a substantial question of patentability where there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable." Here, consistent with what the Examiners in the co-pending proceedings found for all three SNQs in Amazon's February 2023 requests, the newly cited art teaches that hashing the location server contents allows network components to identify which location server contains

---

[59] Wolff (Ex. 3) at 5:25-38.

[60] May 16, 2023 Decision at 19; Reexamination No. 90/019,165, March 29, 2023 Decision at 12 (citing Wolff at abstract, 5:24-38); Reexamination No. 90/019,166, April 4, 2023 Decision at 34 (citing Wolff at 5:25-38).

which location information. A reasonable examiner would consider such teachings important, given that they render obvious the limitations found to be missing from claims 3, 10, and 14 in the previous reexamination. Accordingly, on *de novo* review, regardless of whether the Examiner's May 16, 2023 Decision was arbitrary and capricious, the Director should find SNQs affecting claims 3, 10, and 14, and order reexamination of those claims.[61] That's the case for all the same reasons addressed above, in addition to those below and in the request.

### A. Skagerwall Renders Obvious the Missing Limitations Addressed by SNQs 1 and 3.

As further detailed in Amazon's February 17, 2023 request and the accompanying expert evidence, Skagerwall teaches a network of location servers containing designated location information determined by a hash function and table, and various ways of using the knowledge from hashing to efficiently maintain the system.[62] Thus, as discussed in the previous section, the Examiners in the co-pending proceedings agreed that the knowledge limitations were met for purposes of ordering reexamination, as did the Examiner here, when ordering reexamination of claim 6. Even if Skagerwall alone didn't render obvious the well-understood use of a redirect message to the client to prevent failure, Wolff expressly discloses it. The Examiners in the co-pending proceedings agreed on SNQ 1 and 3 for every challenged claim, because using the disclosed knowledge in a redirect message was obvious. The Director should similarly find that Skagerwall alone or in view of Wolff discloses the limitations previously found to be missing from claims 3, 10, and 14, and order reexamination of those claims based on SNQs 1 and 3.

---

[61] *See generally* MPEP § 2248.

[62] Request at 30-33 (describing Skagerwall), *see also id*. at 72-96 (SNQ 1), 173-205 (SNQ 3).

### B. Steen Renders Obvious the Missing Limitation Addressed by SNQs 2 and 3.

Steen teaches a partitioned directory node, where the subnode contents are organized through hashing to provide any given subnode knowledge of the contents of other subnodes.[63] This satisfies the knowledge limitations that the Office previously found to be missing from all challenged claims. Again, as discussed above, the Examiners in the '165 and '166 Reexaminations agreed that Steen's teachings raise SNQs affecting claims with those same limitations, and the Examiner here agreed when ordering reexamination of claim 6. Further, Steen teaches that the knowledge should be stored on each node to avoid extra requests on the network, rendering obvious the use of the redirect message to tell the client where to go to avoid any subsequently misdirected client requests. And even if Steen didn't render obvious the redirect message on its own, both Wolff (SNQ 3) and OracleNamesAdminGuide (SNQ 2) disclose the claimed redirection, as explained above.[64]

Thus, just as the Examiners in the co-pending proceedings agreed that Amazon's requests raised SNQs 2 and 3 for every challenged claim of the '170 and '640 patents, the result should've been no different for the three claims at issue here. The newly cited prior art references (including Steen) teach a system that knows which server contains the desired information for any request, and thus the content of the claimed redirect message in claims 3, 10, and 14.

---

[63] Request at 34-39 (describing Steen (Ex. 4)), *see also id.* at 108-59 (SNQ 1), 173-205 (SNQ 3).

[64] *See also*, *e.g.*, Ex. 5 at 145 (OracleNamesAdminGuide disclosing that failed location requests are "redirected to a Names Server in the region which is authoritative to the requested name").

## IV. REEXAMINATION IS WARRANTED BECAUSE THE EXAMINER LEGALLY ERRED WHEN APPLYING § 103.

The Examiner's refusal to grant reexamination of claims 3, 10, and 14 should also be set aside because it resulted from misapplications of the law.[65] As the Supreme Court explained in *KSR Int'l Co. v. Teleflex Inc.*, the analysis of obviousness under § 103 "need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ."[66] Here, in addition, the cited prior art references explain that their described examples are not representative of all configurations that their teachings may apply to. For instance, as stated in OracleNamesAdminGuide:

> This manual contains examples and figures that refer to specific machine types, network protocols, and operating systems. These references are examples of possible configurations and are not representative of all configurations.[67]

Yet, the Examiner limited his analysis to specific, individual embodiments of the prior art in his May 16, 2023 Decision on claims 3, 10, and 14, misapplying § 103 and the Supreme Court's governing precedent.

For example, the Examiner determined that Wolff is "not seen as disclosing the claimed 'redirect message.'"[68] But the Examiner's analysis shows that he ignored Wolff's teachings towards preventing failure using redirect messages, and only compared Wolff's client to the '978 patent's claimed location server:

> In a particular embodiment, Wolff teaches a client may detect an overloaded condition in a server and access a resource through an alternate path, through an alternate server to the resource. … A client recognizing a condition of a first server and

---

[65] *See generally* 5 U.S.C. § 706(2)(A).

[66] 550 U.S. 398, 418 (2007).

[67] OracleNamesAdminGuide (Ex. 5) at 5.

[68] May 16, 2023 Decision at 20.

selecting an alternate path to a resource is not a teaching of a location server sending a redirect message comprising information for a finding a location server known to have location information relevant to a location query.[69]

Contrary to the Examiner's analysis—and as the other Examiners in the co-pending proceedings recognized—Wolff specifically discloses that "[t]he re-mapping may take place in response to a redirection command emanating from an overloaded node, e.g. server."[70]

As a further example, the Examiner stated that OracleNamesAdminGuide was "silent" on redirection, despite the reference's express disclosure that a location server lacking location information "simply tells the requestor the address of the location server that can answer the request."[71] According to the Examiner, that expressly disclosed feature "would not serve any purpose" because a singular, non-limiting embodiment only described two servers containing "identical data and giv[ing] identical results."[72] The Examiner thus ignored every possible purpose for OracleNamesAdminGuide's disclosed redirection feature, including for that very embodiment. As explained in the request, that feature would "serve a purpose" any time data was lost on one of the two names servers, in addition to the many routine configurations that would've been obvious to one skilled in the art.[73]

Contrary to the Supreme Court's *KSR* precedent, the Examiner then compounded that error by ignoring the inferences and creative steps that an ordinarily skilled artisan would take, as

---

[69] *Id.* at 19-21.

[70] Wolff at 5:25-38.

[71] May 16, 2023 Decision at 30; OracleNamesAdminGuide at 137.

[72] May 16, 2023 Decision at 30.

[73] Request at 114 (highlighting OracleNamesAdminGuide's explanation that the two "identical" names servers provided fault tolerance); Ex. 5 at 60.

detailed by Amazon's expert, Mr. Greene. For example, the Examiner failed to consider the routine, common scenario where the Names Server in OracleNamesAdminGuide's Figure 3-8 was subjected to high volume demands that a single server couldn't meet. Mr. Greene explained that in such a scenario, an ordinarily skilled artisan would've been motivated to apply the partitioning taught in the OracleUnleashed prior-art reference, which Mr. Greene authored, to produce multiple Name Servers to handle the increased demand.[74] And Mr. Greene further explained that there would've been a similar motivation to apply Steen's partitioning to OracleNamesAdminGuide's Name Servers as well.[75]

If the Examiner had considered OracleNamesAdminGuide's expressly disclosed redirection feature on a Names Server, after partitioning according to OracleUnleashed or Steen in response to workload demands, he would've understood that the redirect message would "serve a purpose," because the partitioned Names Servers would each contain a different subset of the original Names Server's contents. Instead, the Examiner limited his analysis to the singular Figure specifically disclosed by OracleNamesAdminGuide. Thus, contrary to the Supreme Court's precedent, he unduly focused on "precise teachings directed to the specific subject matter of the

---

[74] Ex. 19 at ¶ 256 (Oracle database administrators "would regularly monitor their systems for unexpected data load. As a result, even unexpected demands on a server would have been identified, for precisely the purpose of making changes like this improve performance by changing load on each server.").

[75] *Id.* (Steen explains that "a single server providing location information can be overwhelmed with too much data or too many requests: 'higher-level directory nodes not only have to handle a relatively large number of requests, they also have enormous storage demands.' To avoid this potential strain on a system, Steen teaches partitioning a directory server with location information into a flat, non-hierarchical group of 'subnode' location servers: 'Our solution is to partition a directory node into one or more directory subnodes such that each subnode is responsible for a subset of the records originally stored at the directory node.'") (citing Steen at 107-08).

challenged claim," and failed to "take account of the inferences and creative steps that a person of ordinary skill in the art would employ" as detailed by Mr. Greene.[76]

And by ignoring the role of a POSITA in the obviousness analysis and focusing only on specific embodiments of the cited prior art, the Examiner afforded the claims a presumption of validity. That was error. As the Federal Circuit explained in *In re Swanson*:

> In PTO examinations and reexaminations, the standard of proof—a preponderance of evidence—is substantially lower than in a civil case; there is no presumption of validity, and the "examiner is not attacking the validity of the patent but is conducting a subjective examination of the claims in light of prior art."[77]

Here, the Examiner should have examined claims 3, 10, and 14 in light of the prior art, rather than providing them an unwarranted presumption of validity.

## CONCLUSION

The Examiner's May 16, 2023 Decision refusing reexamination of '978 patent claims 3, 10, and 14 was contrary to the Examiners' decisions in the two co-pending reexaminations. Those decisions granting reexamination were based on the same art and grounds for similar claims, all of which were previously confirmed based on the same limitations. And the Examiner's May 16, 2023 Decision here provided no reason for deviating from the findings in those prior decisions. As such, the Director should order ex parte reexamination of claims 3, 10, and 14 of the '978 patent, in addition to claim 6, based on all three SNQs identified in Amazon's February 17, 2023 request.

---

[76] 550 U.S. at 418.

[77] 540 F.3d 1368, 1377 (Fed. Cir. 2008) (internal citations omitted).

Dated: June 5, 2023        Respectfully submitted,

By: <u>/ Andrew L. Ramos /</u>
Kyle K. Tsui
Registration No. 62,602
Andrew L. Ramos
Registration No. 76,865

FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Suite 400
Washington, DC 20015
Phone: 202.362.3522
Email: PostGrant@fischllp.com