# Exhibit K149



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,034 | 11/19/2021 | 7233978 | | 3927 |

| | | |
|---|---|---|
| 184647 7590 01/12/2022 | | |

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway
Suite 300
Redwood City, CA 94065

| EXAMINER |
|---|
| CAMPBELL, JOSHUA D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 01/12/2022 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

FISCH SIGLER LLP
5301 WISCONSIN AVENUE, NW
FOURTH FLOOR
WASHINGTON, DC 20015

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,034* .

PATENT UNDER REEXAMINATION *7233978* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| | Control No. | Patent Under Reexamination |
|---|---|---|
| ***Order Granting Request For Ex Parte Reexamination*** | 90/019,034 | 7233978 |
| | **Examiner** | **Art Unit** | **AIA (FITF) Status** |
| | JOSHUA D CAMPBELL | 3992 | No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>11/19/2021</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐  PTO-892,  b)☑  PTO/SB/08,  c)☐  Other: _____

1. ☑  The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

/JOSHUA D CAMPBELL/
Primary Examiner, Art Unit 3992

cc:Requester ( if third party requester )

**This Order granting** *ex parte* **reexamination of US 7,233,978 ('978 patent) is being re-mailed, since the Order mailed December 23, 2021 was mailed to the incorrect address for Patent Owner. The period to file a patent owner statement pursuant to 35 USC 304 and 37 CFR 1.530 is restarted and is two (2) months from the re-mailing of this Order.**

## Decision on Request

1)      A substantial new question (SNQ) of patentability affecting claims 1, 3, 6, 10, 14, 17, 23, 24, 30, and 31 of United States Patent Number 7,233,978 (hereinafter "Overton") is raised by the request for *ex parte* reexamination filed 19 November 2021.

### *Information Disclosure Statement*

2)      Where the IDS citations are submitted but not described, the examiner is only responsible for cursorily reviewing the references. The initials of the examiner on the PTO-1449 indicate only that degree of review unless the reference is either applied against the claims, or discussed by the examiner as pertinent art of interest, in a subsequent office action.

See Guidelines for Reexamination of Cases in View of In re Portola Packaging, Inc., 110 F.3d 786, 42 USPQ2d 1295 (Fed. Cir. 1997), 64 FR at 15347, 1223 Off. Gaz. Pat. Office at 125 (response to comment 6).

Consideration by the examiner of the information submitted in an IDS means that the examiner will consider the documents in the same manner as other documents in Office search files are considered by the examiner while conducting a search of the prior art in a proper field of search. The initials of the

examiner placed adjacent to the citations on the PTO-1449 or PTO/SB/08A and 08B or its equivalent

mean that the information has been considered by the examiner to the extent noted above.

Regarding IDS submissions MPEP 2256 recites the following: "Where patents, publications, and

other such items of information are submitted by a party (patent owner) in compliance with the

requirements of the rules, the requisite degree of consideration to be given to such information will be

normally limited by the degree to which the party filing the information citation has explained the content

and relevance of the information."

### Affidavits, Declarations, or Other Written Evidence

3)     The Examiner recognizes that a declaration by Joseph B. Greene (Exhibit 6) has been referenced

in support of Third Party Requester. The declaration has been considered and made of record. The

Examiner further notes that affidavits or declarations or other written evidence which explain the contents

or pertinent dates of prior art patents or printed publications in more detail may be considered in

reexamination (see: MPEP 2258(I)(E)), but any rejection must be based upon the prior art patents or

printed publications as explained by the affidavits or declarations or other written evidence. The rejection

in such circumstances cannot be based on the affidavits or declarations or other written evidence as such,

but must be based on the prior art patents or printed publications. In the instant case, the submitted Greene

Declaration at least further explains the contents of the prior art patents and printed publications in more

detail.

### Prior art cited in the Request

4)     The present request indicates that the Requester considers that a substantial new question of

patentability is raised as to claims 1, 3, 6, 10, 14, 17, 23, 24, 30, and 31 of the Overton patent by the

following prior art references:

      a.     **ONAG** – "Oracle Names Administrator's Guide, Release 2.0"

      b.     **OSG** – "Oracle DBA Survival Guide, 1st ed."

      c.     **McGarvey** – U.S. Patent No. 5,777,989

      d.     **Rajani** – U.S. Patent No. 5,301,286

## Prosecution History

5)      The Overton patent application was assigned serial number 09/872,736, filed June 1, 2001. During the original prosecution, the Overton application initially included claims 1-45. The Overton application was a continuation-in-part of application 09/661,222, filed on September 13, 2000 (U.S. Patent 7,103,640), a continuation-in-part of application 09/503,441, filed on February 14, 2000 (abandoned), a continuation-in-part of application 09/367,461, filed on August 13, 1999 (abandoned), a continuation-in-part of application 09/111,896, filed on July 8, 1998 (abandoned). The Overton application also relied on Provisional Applications 60/277,408, filed on March 19, 2001 and 60/209,070, filed on June 2, 2000. On December 6, 2004, the examiner mailed a requirement for restriction/election that restricted the claims in to two groups. In the response filed January 6, 2005, the patent owner elected with traverse group II (claims 24-45) for examination. The claims as they were originally filed were rejected over Lumelsky et al. in view of Bowman-Amuah. In response to this rejection applicant amended the claims as follows in the response filed November 1, 2006, using original claims 1, 17, and 24 (renumbered as claims 1, 10, and 17 when allowed) as example:

1.    (Currently Amended) A system having a plurality of location servers for managing location information and providing location information to location queries, the system comprising:

~~a transfer protocol comprising an identifier and at least one location associated with the identifier, wherein the identifier uniquely specifies an entity and wherein each location specifies a location of data in a network pertaining to the entity;~~

a first location server containing a first set of location information corresponding to at least one entity, the location information comprising an identifier and at least one location string associated with the identifier, wherein the identifier identifies an entity and the location string specifies a location of data pertaining to the entity ~~formatted according to the transfer protocol, and wherein the location of data for the location comprises an application server in communication with the network~~;

a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and

programming logic stored on each of the location servers ~~the location server~~ responsive to a location query identifying a desired entity to return a location message, the location message comprising ~~all~~ at least one location of data pertaining to locations associated with the desired entity, ~~wherein the location server returns the location message~~ if the location server receiving the location query contains location information for the desired entity.


17.    (Currently Amended)  A system having a plurality of location servers for managing location information and providing ~~data~~ location information to location queries, the system comprising:

~~a transfer protocol comprising an identifier and at least one location association, wherein the identifier uniquely specifies an entity and wherein each location specifies a location pertaining to the entity;~~

a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a ~~the~~ transfer protocol configured for manipulating location information, and comprising at least one application server address, wherein the plurality of location servers are arranged in a ~~server~~ cluster topology such that each location server contains a unique set of location information ~~portion~~ of an aggregate set of the location information; and

programming logic stored on each of the <u>plurality of</u> location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises <u>information for finding a location server having</u> a list of all of the plurality of location servers containing location information related to the desired identifier.

24.    (Currently Amended)  A method of scaling at least one of <u>capacity and transaction rate capability in a</u> location server <s>capacity and transaction rate capability</s> in a system <u>having a plurality of location servers</u> for storing and retrieving location information, <u>wherein each of the plurality of location servers stores unique set of location information of an aggregate set of location information,</u> the method comprising;

providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information <u>related</u> <s>relevant</s> to the identifier;

<s>providing a first location server</s> storing location information formatted according to the transfer protocol <u>at a first location server;</u>

receiving an identifier and a location relevant to the identifier at the first location server;

storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store; and

transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit.

The patent owner also provided arguments in reference to the amendments made, again using claim 24 as example, patent owner argued the following:

Lumelsky's "transient replica" refers to a multimedia object, not location information. Therefore, Lumelsky teaches transferring data objects to additional servers but does not teach transferring portions of location information to additional servers separate from data objects. Lumelsky fails to teach or suggest the separate management of location information pertaining to the data, therefore Lumelsky does not teach transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit as claimed in claim 24.

Thus, Lumelsky does not teach either (a) a method of scaling at least one of
location server capacity and transaction rate capability in a system for storing and
retrieving location information, or (b) transferring a portion of the identifiers and
associated locations to a second data location server when a performance criterion of
the first location server reaches a predetermined performance limit. Also, Applicants
have amended claim 24 to note that different sets of location information are maintained
on each of the location servers to further emphasize the difference between Lumelsky
and the invention of claim 24.

For at least these reasons, Applicants submit that independent Claim 24 is
patentable over Lumelsky. Claims 25-37 are dependent claims, therefore their
allowability directly follows from the allowability of independent claim 24.

The claims withdrawn via the restriction requirement were reintroduced and entered into examination by
the examiner based on the amendments and arguments made. The previous rejections of the claims under
Lumelsky et al. and/or of Bowman-Amuah were withdrawn in response to the amendments and
arguments made. The application was passed to allowance in the Notice of Allowance mailed February
13, 2007. The examiner made the following statement of reasons for allowance in the notice of
allowance:

In interpreting the claims, in light of the specification and the applicant's arguments, the
Examiner finds the claimed invention to be patentably distinct from the prior art of record.
Lumelsky et al, US Pat. No. 6,466,980 B1, teaches the invention substantially as claimed.
Lumelsky teaches a system and method for capacity shaping in an internet environment to enable
network management functions such as load balancing. Lumelsky also teaches a replica directory
(66) for storing location information of a data object to retrieve all replicas of the data object
using the user provided unique object identifier (See Lumelsky, col 9, lines 22 – col. 10, line 3).

However, the prior art of record fails to teach or suggest individually or in combination a
system in which a location query requests from multiple servers location information, separate
from the data objects to which the location information pertains, to be returned to the requestor.
The Examiner finds the applicant's arguments in page 10, lines 9-27 of the amendment filed
November 1, 2006 to be persuasive. The applicant argued in substance that Lumelsky does not
teach a system and method for management of location information separate from the data to
which the location information pertains, but instead relates to manipulation of the actual data
(multimedia objects in Lumelsky) rather than just the location information for that data.

Following the issuance of the Overton patent, IPR2020-00276 was requested to challenge claims 1, 3, 6, 10, 14, 17, 23, 24, 30, and 31 in view of "Network Working Group RFC 1034", Neimat (U.S. Patent 5,542,087), and "Load Management in Distributed Video Servers". On June 16, 2020, the PTAB issued a decision Denying Institution of *Inter Partes* Review because the petition failed to demonstrate a reasonable likelihood that petitioner would prevail in establishing the unpatentability of the claims in question.

Thus, as it currently stands based on the prosecution history of the Overton application, it appears that the claims of the Overton patent were allowed at least in part based on the limitations regarding location query requests and how the servers respond to said requests with location information separate from the actual data to which the location information points. For example, said allowable subject matter is encompassed by limitations such as "programming logic stored on each of the location servers responsive to a location query identifying a desired entity to return a location message, the location message comprising at least one location of data pertaining to the desired entity, if the location server receiving the location query contains location information for the desired entity" found in claim 1, "programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message, wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier" found in patent claim 10 (originally claim 17), and "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit" found in patent claim 17 (original claim 24).

**Priority and Patent Term**

6)      As mentioned above, the Overton patent was a continuation-in-part of application 09/661,222,

filed on September 13, 2000 (U.S. Patent 7,103,640), a continuation-in-part of application 09/503,441,

filed on February 14, 2000 (abandoned), a continuation-in-part of application 09/367,461, filed on August

13, 1999 (abandoned), a continuation-in-part of application 09/111,896, filed on July 8, 1998

(abandoned).  The Overton application also relied on Provisional Applications 60/277,408, filed on March

19, 2001 and 60/209,070, filed on June 2, 2000.

> MPEP 2701(I) states the following:
>
> *A patent granted on a continuation, divisional, or continuation-in-part application that was filed*
> *on or after June 8, 1995, will have a term which ends twenty years from the filing date of earliest*
> *application for which a benefit is claimed under 35 U.S.C. 120, 121, 365(c), or 386(c)  regardless*
> *of whether the application for which a benefit is claimed under 35 U.S.C. 120, 121, or 365(c)*
> *was filed prior to June 8, 1995.*

Based on the citation above, the Overton patent is expired.  The term of twenty years from the filing date

of the earliest filed application (09/111,896, filed on July 8, 1998) for which a benefit is claimed plus the

term adjustment of 810 days under 35 U.S.C. 154(b) has passed.  The patent expired on September 25,

2000.

7)      37 C.F.R. 1.530(j) states, "No enlargement of claim scope. No amendment may enlarge the scope

of the claims of the patent or introduce new matter. ***No amendment may be proposed for entry in an***

***expired patent. Moreover, no amendment, other than the cancellation of claims, will be incorporated***

***into the patent by a certificate issued after the expiration of the patent.***" (emphasis added).  Thus,

because the patent is expired no amendments of the claims will be allowed aside from the cancellation of

claims.

        Additionally, in making the determination of whether to order reexamination, the Office will

determine the proper meaning of the patent claims by giving the claims their broadest reasonable

interpretation consistent with the specification (see In re Yamamoto, 740 F.2d 1569 (Fed. Cir. 1984)),

except in the case of an expired patent (in a reexamination involving claims of an expired patent, claim

construction is pursuant to the principle set forth by the court in Phillips v. AWH Corp., 415 F.3d 1303,

1316, 75 USPQ2d 1321, 1329 (Fed. Cir. 2005) (words of a claim "are generally given their ordinary and

customary meaning" as understood by a person of ordinary skill in the art in question at the time of the

invention, see Ex parte Papst-Motoren, 1 USPQ2d 1655 (Bd. Pat. App. & Inter. 1986)).

### Substantial New Question of Patentability

8)      The italicized sections of claim 1 and claim 10 are utilized by the examiner to show how specific

teachings of the proposed references create a substantial new question of patentability.

1. A system having a plurality of location servers for managing location information and

providing location information to location queries, the system comprising:

a first location server containing a first set of location information corresponding to at

least one entity, the location information comprising an identifier and at least one

location string associated with the identifier, wherein the identifier identifies an entity

and the location string specifies a location of data pertaining to the entity

a second location server comprising a second set of location information, wherein at least

a portion of the second set of location information differs from the first set of location

information; and

*programming logic stored on each of the location servers responsive to a location query*

*identifying a desired entity to return a location message, the location message*

*comprising at least one location of data pertaining to the desired entity, if the*

*location server receiving the location query contains location information for the*

*desired entity.*

10. A system having a plurality of location servers for managing location information and

providing location information to location queries, the system comprising:

a plurality of location servers containing location information corresponding to a plurality

of entities, the location information formatted according to a transfer protocol

configured for manipulating location information, and comprising at least one

application server address, wherein the plurality of location servers are arranged in a

cluster topology such that each location server contains a unique set of location

information of an aggregate set of the location information; and

*programming logic stored on each of the plurality of location servers responsive to a*

*location query for a desired identifier to return one of a location message, wherein a*

*queried location server returns a location message if the queried location server*

*contains location information for the desired identifier, and a redirect message if the*

*queried location server does not contain location information relevant to the desired*

*identifier, wherein the redirect message comprises information for finding a location*

*server having location information related to the desired identifier.*

### ONAG in view of OSG

9)      The Request shows that ONAG and OSG provide teachings relevant to the determination of

patentability regarding the following limitations, for claim 1:

*programming logic stored on each of the location servers responsive to a location query*

*identifying a desired entity to return a location message, the location message comprising at*

*least one location of data pertaining to the desired entity, if the location server receiving the*

*location query contains location information for the desired entity.*

ONAG describes a portable software that runs on a variety of computer platforms

(pages 62-63 of ONAG).  An example found on page 129 of ONAG shows a query and the

systems response, reproduced below:

```
NAMESCTL> QUERY BONES.DEM.MEDICINE A.SMD
Total response time:      0.04 seconds
Response status:          normal, successful completion
Authoritative answer:     yes
Number of answers:        1
Canonical name:           bones.dem.medicine
TTL:                      1 day
Alias translations:
    from:                 bones.dem.medicine
    to:                   bones.dem.medicine
Answers:
    data type is "a.smd"
        Syntax is ADDR:...(DESCRIPTION=(ADDRESS=
    {COMMUNITY=tcp}{PROTOCOL=TCP}{Host=cowboy}
    {Port=1522}}{CONNECT_DATA={SID=rodeo}}}
```

As can be seen in the example above, the request from the client for location information results in a response ("Answers") which provides the location information for the desired entity (see also page 109 of ONAG).

OSG describes an SQL query to be used explicitly to "determine the location of your data files" (page 152 of OSG).

```
This information should start you on the way to understanding Oracle data files.
Later chapters discuss the objects that you place within a data file and maintenance
of the tablespaces and data file. For now, ensure that you understand what these
data files are and their relationship with tablespaces. The following is the SQL
query that enables you to determine the location of your data files:

SQL> select * from sys.dba_data_files;

FILE_NAME
-----------------------------------------------------------------
   FILE_ID TABLESPACE_NAME         BYTES   BLOCKS STATUS
-----------------------------------------------------------------
C:\ORAWIN\DBS\wdbs01.ora
         3 ROLLBACK_DATA          3146723   1536 AVAILABLE

C:\ORAWIN\DBS\wdbtmp.ora
         4 TEMPORARY_DATA         2097152   1024 AVAILABLE

C:\ORAWIN\DBS\wdbuser.ora
         2 USER_DATA              8146788   3536 AVAILABLE

d:\ORAWIN\DBS\wdbsys.ora
         1 SYSTEM                10485760   5120 AVAILABLE

SQL>
```

The ONAG and OSG references were not previously discussed by the examiner nor applied to claims 1, 17, 23, 24, 30, and/or 31 in the prior examination of the patent as discussed above.

Additionally, claims 1, 17, 23, 24, 30, and/or 31 were not subject to any Final Written Decision in view of

ONAG or OSG in the IPR proceeding discussed above.

It is agreed that ONAG in view of the OSG raises a substantial new question of patentability with

respect to at least independent claim 1 of the Overton patent. There is a substantial likelihood that an

examiner would consider these new, non-cumulative technological teachings important in deciding

whether or not these claims are patentable.

Accordingly, ONAG in view of the OSG raises a substantial new question of patentability with

respect to at least independent claim 1 of the Overton patent, a question which has not been decided in a

previous examination of the Overton patent nor was there a final holding of invalidity by the Federal

Courts regarding the Overton patent.


**ONAG in view of OSG and McGarvey**

10)     The Request shows that ONAG, OSG, and McGarvey provide teachings relevant to the

determination of patentability regarding the following limitations, for claim 10:

> *programming logic stored on each of the plurality of location servers responsive to a location*
>
> *query for a desired identifier to return one of a location message, wherein a queried location*
>
> *server returns a location message if the queried location server contains location information*
>
> *for the desired identifier, and a redirect message if the queried location server does not*
>
> *contain location information relevant to the desired identifier, wherein the redirect message*
>
> *comprises information for finding a location server having location information related to the*
>
> *desired identifier.*

ONAG describes a portable software that runs on a variety of computer platforms

(pages 62-63 of ONAG). An example found on page 129 of ONAG shows a query and the

systems response, reproduced below:

```
NAMESCTL> QUERY BONES.DEM.MEDICINE A.SMD
Total response time:        0.04 seconds
Response status:            normal, successful completion
Authoritative answer:       yes
Number of answers:          1
Canonical name:             bones.dem.medicine
TTL:                        1 day
Alias translations:
    from:                   bones.dem.medicine
    to:                     bones.dem.medicine
Answers:
    data type is "a.smd"
        Syntax is ADDR:...(DESCRIPTION=(ADDRESS=
    (COMMUNITY=tcp)(PROTOCOL=TCP)(Host=cowboy)
    (Port=1522))(CONNECT_DATA=(SID=rodeo)))
```

As can be seen in the example above, the request from the client for location information results in a response ("Answers") which provides the location information for the desired entity (see also page 109 of ONAG).

ONAG also discusses request forwarding or alternatively disabling request forwarding and instead responding to said request with the address of another Names Server that can answer the request (page 137 of ONAG).

OSG describes an SQL query to be used explicitly to "determine the location of your data files" (page 152 of OSG).

```
This information should start you on the way to understanding Oracle data files.
Later chapters discuss the objects that you place within a data file and maintenance
of the tablespaces and data file. For now, ensure that you understand what these
data files are and their relationship with tablespaces. The following is the SQL
query that enables you to determine the location of your data files:

SQL> select * from sys.dba_data_files;

FILE_NAME
---------------------------------------------------------------------------
  FILE_ID TABLESPACE_NAME          BYTES   BLOCKS STATUS
--------- ---------------- ------------- -------- ---------
C:\ORAWIN\DBS\ROBTBS1.ORA
        3 ROLLBACK_DATA         3145728     1536 AVAILABLE

C:\ORAWIN\DBS\WDUTMP1.ORA
        4 TEMPORARY_DATA        2867156     2024 AVAILABLE

C:\ORAWIN\DBS\USRUSER.ORA
        5 USER_DATA             3145728     1536 AVAILABLE

C:\ORAWIN\DBS\WDSYS.ORA
        1 SYSTEM               10485760     5120 AVAILABLE

SQL>
```

Additionally, McGarvey describes the functionality and hierarchy of name servers.

McGarvey states, "In the TCP/IP name resolution process, a name resolution query is sent to

the name server by the host, and if the query is successful, the name server returns a reply

containing the host address. A particular name server may contain information on only a

subset of the domain namespace, but the name server typically belongs to a hierarchy of

name servers, and if it does, either it communicates with other members of the hierarchy to

attempt to resolve host names, **or it returns information referring the client to another**

**server in the hierarchy, so that the client can redirect the query.**" (column 1, lines 39-49

of McGarvey, emphasis added, see also column 5, lines 3-32).


The ONAG, OSG, McGarvey references were not previously discussed by the examiner nor

applied to claims 3, 10, and/or 14 in the prior examination of the patent as discussed above.  Additionally,

claims 3, 10, and/or 14 were not subject to any Final Written Decision in view of ONAG, OSG, or

McGarvey in the IPR proceeding discussed above.

It is agreed that ONAG in view of the OSG and McGarvey raises a substantial new question of

patentability with respect to at least independent claim 10 of the Overton patent.  There is a substantial

likelihood that an examiner would consider these new, non-cumulative technological teachings important

in deciding whether or not these claims are patentable.

Accordingly, ONAG in view of the OSG and McGarvey raises a substantial new question of

patentability with respect to at least independent claim 10 of the Overton patent, a question which has not

been decided in a previous examination of the Overton patent nor was there a final holding of invalidity

by the Federal Courts regarding the Overton patent.


**ONAG in view of OSG and Rajani**

11)    The Rajani reference has been cited in combination with the ONAG and OSG references in the

Request as part of the proposed rejections.  The Rajani reference was not previously discussed by the

examiner nor applied to claims 1 and 6 in the prior examination or *Inter Partes* Review of the patent as

discussed above. The Rajani reference, in combination with the ONAG and OSG references raises an

SNQ at least based on the discussion of the ONAG and OSG references above. The Request shows that

ONAG and OSG provide teachings that are relevant to the limitations noted above which may have been

material in determining the patentability of the Overton patent claims at the time of allowance.

It is agreed that the consideration of Rajani in combination with ONAG and OSG raises an SNQ

with respect to at least independent claim 1 and thus dependent claim 6 of the Overton patent as pointed

out above. There is a substantial likelihood that a reasonable examiner would consider these teachings

important in deciding whether or not these claims are patentable.

Accordingly, the combination of the Rajani reference with the ONAG and OSG references raises

a substantial new question of patentability with respect to at least independent claim 1 of the Overton

patent, which question has not been decided in a previous examination of the Overton patent nor was

there a final holding of invalidity by the Federal Courts regarding the Overton patent.

### Scope of Reexamination

12)     Claim 1, 3, 6, 10, 14, 17, 23, 24, 30, and 31 will be reexamined as requested.

### *Conclusion*

13)     Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the

provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding.

Additionally, 35 U.S.C. 305 requires that reexamination proceedings "will be conducted with special

dispatch" (37 CFR 1.550(a)). Extension of time in *ex parte* reexamination proceedings are provided for

in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise

the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No.

7,233,978 throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282 and 2286.

All correspondence relating to this ex parte reexamination proceeding should be directed as

follows:

By U.S. Postal Service Mail to:

      Mail Stop Ex Parte Reexam
      ATTN: Central Reexamination Unit
      Commissioner for Patents
      P.O. Box 1450
      Alexandria, VA 22313-1450

By FAX to:

      (571) 273-9900
      Central Reexamination Unit

By hand to:

      Customer Service Window
      Randolph Building
      401 Dulany St.
      Alexandria, VA 22314

By EFS-Web:

      Registered users of EFS-Web may alternatively submit such correspondence via the electronic
      filing system EFS-Web, at

          https://efs.uspto.gov/efile/myportal/efs-registered

EFS-Web offers the benefit of quick submission to the particular area of the Office that needs to
act on the correspondence. Also, EFS-Web submissions are "soft scanned" (i.e., electronically uploaded)
directly into the official file for the reexamination proceeding, which offers parties the opportunity to
review the content of their submissions after the "soft scanning" process is complete.

　　　　Any inquiry concerning this communication or earlier communications from the Reexamination

Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central

Reexamination Unit at telephone number (571) 272-7705.


/JOSHUA D CAMPBELL/
Primary Examiner, Art Unit 3992


Conferees:

/ADAM L BASEHOAR/
Primary Examiner, Art Unit 3992

/ALEXANDER J KOSOWSKI/
Supervisory Patent Examiner, Art Unit 3992