# Exhibit K151



# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,036 | 11/19/2021 | 7103640 | 10406/43 | 7777 |

184647          7590          12/23/2021
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway
Suite 300
Redwood City, CA 94065

| EXAMINER |
|---|
| KE, PENG |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/23/2021 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Fisch Sigler LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,036* .

PATENT UNDER REEXAMINATION *7103640* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| | Control No. | Patent Under Reexamination |
|---|---|---|
| ***Order Granting Request For Ex Parte Reexamination*** | 90/019,036 | 7103640 |
| | **Examiner** | **Art Unit** | **AIA (FITF) Status** |
| | PENG KE | 3992 | No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>11/19/2021</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐  PTO-892,      b)☑  PTO/SB/08,      c)☐  Other: _____

1. ☑   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| /PENG KE/ Primary Examiner, Art Unit 3992 | | |
|---|---|---|

cc:Requester ( if third party requester )

### *Detail Action*

1.    On 11/19/2021, Third Party Requester ("Requester") filed a request ("Request") for

90/019,036 *ex parte* reexamination of claims 17, 18 and 24 of US Patent 7,103,640 issued to

("the '640 patent") which was filed on 10/13/2000 as application 09/661,222 (" '222

application"),  a continuation-in-part of application 09/503,441, filed on February 14, 2000

(abandoned), a continuation-in-part of application 09/367,461, filed on August 13, 1999

(abandoned), a continuation-in-part of application 09/111,896, filed on July 8, 1998

(abandoned).  The '640 patent also relied on Provisional Applications 60/277,408, filed on

March 19, 2001 and 60/209,070, filed on June 2, 2000. which claimed priority to U.S.

Provisional App. No. 60/153,709, Filed September

2.    The Request is **Granted**.


### *Proceedings*

3.    Kove IO, Inc. v. Amazon Web Services, Inc., 1:18-cv-08175 (N.D.Ill.).

4.    90/014,552, a request for ex-parte reexamination of claims 17, 18, and 24 of the '640

      Patent was denied.


### ***Information Disclosure Statement***

5.    Where the IDS citations are submitted but not described, the examiner is only responsible

for cursorily reviewing the references. The initials of the examiner on the PTO-1449 indicate

only that degree of review unless the reference is either applied against the claims, or discussed

by the examiner as pertinent art of interest, in a subsequent office action.

See Guidelines for Reexamination of Cases in View of In re Portola Packaging, Inc., 110

F.3d 786, 42 USPQ2d 1295 (Fed. Cir. 1997), 64 FR at 15347, 1223 Off. Gaz. Pat. Office at 125

(response to comment 6).

Consideration by the examiner of the information submitted in an IDS means that the

examiner will consider the documents in the same manner as other documents in Office search

files are considered by the examiner while conducting a search of the prior art in a proper field of

search. The initials of the examiner placed adjacent to the citations on the PTO-1449 or

PTO/SB/08A and 08B or its equivalent mean that the information has been considered by the

examiner to the extent noted above.

Regarding IDS submissions MPEP 2256 recites the following: "Where patents,

publications, and other such items of information are submitted by a party (patent owner) in

compliance with the requirements of the rules, the requisite degree of consideration to be given

to such information will be normally limited by the degree to which the party filing the

information citation has explained the content and relevance of the information."

### Affidavits, Declarations, or Other Written Evidence

6.      The Examiner recognizes that a declaration by Joseph B. Greene (Exhibit 6) has been

referenced in support of Third Party Requester. The declaration has been considered and made of

record. The Examiner further notes that affidavits or declarations or other written evidence which

explain the contents or pertinent dates of prior art patents or printed publications in more detail

may be considered in reexamination (see: MPEP 2258(I)(E)), but any rejection must be based

upon the prior art patents or printed publications as explained by the affidavits or declarations or

other written evidence. The rejection in such circumstances cannot be based on the affidavits or

declarations or other written evidence as such, but must be based on the prior art patents or

printed publications. In the instant case, the submitted Greene Declaration at least further

explains the contents of the prior art patents and printed publications in more detail.


## *REFERENCES*

7.      Prior Art References cited:

i.  Oracle Names Administrator's Guide, Release 2.0 (Oracle Corp., Redwood City, CA), published

1996 ("ONAG") is new art that provides new, non-cumulative technological teaching that were

not previously considered and discussed on the record during the prosecution of '640 Patent.

ii.  Joseph B. Greene, Oracle DBA Survival Guide, 1 st ed. (Sams Publishing, Indianapolis, Ind.),

ISBN: 0672306816, published October 1, 1995 ("OSG") is new art that provides new, non-

cumulative technological teaching that were not previously considered and discussed on the

record during the prosecution of '640 Patent.

iii.  U.S. Patent No. 5,777,989 to JohnCGarvey, Filed December 19, 1995, issued July 7, 1998

("McGarvey") is new art that provides new, non-cumulative technological teaching that were not

previously considered and discussed on the record during the prosecution of '640 Patent.

v.  U.S. Patent No. 5,301,286 to Purshotam Rajani, filed January 2, 1991, issued April 5, 1994

("Rajani") is new art that provides new, non-cumulative technological teaching that were not

previously considered and discussed on the record during the prosecution of '640 Patent..

8.      It is noted that the prior art applied may only consist of prior art patents or printed

publications; and any document that falls outside of these two categories will not be considered

as prior art reference. See MPEP 2217.

## *PROSECUTION HISTORY*

9.      In the Patent '640, which is filed as 09/661,222 ("222 application") issued on September

5, 2006, claims 1-25 were issued, and claims 1, 10, 17, and 18 being the independent claims.

In the notice of allowance issued on November 14, 2005, claims 24-58, with

independent 24, 33, 40, and 41 were allowed and renumbered to claim 1-25 with independent

claims 1, 10, 17, and 18.  No specific reason was given for the allowance, and the accompanied

Examiner's Amendment was to address an inadvertent claim numbering error.

The previous office action was a non-final rejection mailed on February 9, 2005 ("the

2/9/05 Office action"), in which claims 1-9 and 12-23 (all of the pending claims at the time)

were rejected as being anticipated by: 1) a prior art publication to Beitz titled "Service Location

in an Open Distributed Environment" ("Beitz"); 2) U.S. Patent No. U.S. Pat. No. 5,950,173 to

Perkowski ("Perkowski'"); 3) U.S. Patent No. 5,978,773 to Hudetz et al. ("Hudetz"); and 4)

U.S. Pat. No. 5,913,210 to Call.

A comparison between the allowed claim set and the claim set that was rejected in

2/9/05 Office action is made below to shed light on why the claims were allowed in the original

prosecution.

Issued claims 17, 18, and 24 of the '640 Patent are system claims with claims 17 and 18,

being independent claims and claim 24 depending on claim 18. In the claim set that was rejected

in the 2/9/05 Office action, only claims 5-9, 19, and 20 were directed toward a system, with

claim 5 being independent and claims 6-9, 19, and 20 depending therefrom. Claim 5, that was

rejected in the 2/9/05 Office action, and allowed claims 17 and 18 are reproduced below for

discussion purposes:

| Rejected claim 5 in 2/9/05 Office action | Issued claim 17 of the '640 Patent |
|---|---|
| 5. **A system** having a network distributed tracking wire transfer protocol for storing and identifying data with a distributed data collection, **comprising**:<br><br>**A data repository,** the data repository for storing data in a distributed data collection;<br><br>**a client entity,** the client entity for manipulating data in the distributed data collection; and<br><br>& First server entity, the first server entity operative to locate data in the distributed data collection;<br><br>wherein the first server entity is responsive to a client request from the first client entity **to provide a redirection message to the first client entity if the first server entity cannot provide at least one location string to the client entity corresponding to an identifier string in the client request.** | 17. **A system** for retrieving data location information for data stored in a distributed network, the system **comprising**:<br><br>**a plurality of data repositories** configured to store data, wherein the data is associated with a respective identifier string in each data repository;<br><br>**a data location server** network having a plurality of data location servers, each of the plurality of data location servers containing location strings associated with respective identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps:<br><br>in response to receiving a data location request from **a client** to retrieve a location string associated with an identification string provided in the data location request,<br><br>**transmitting a redirect message to the client if the identification string is not associated with a location string at the** |

| | data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. |
|---|---|
| Rejected claim 5 in 2/9/05 Office action | Allowed claim 18 |
| 5. **A system** having a network distributed tracking wire transfer protocol for storing and identifying data with a distributed data collection, **comprising**:<br>**A data repository,** the data repository for storing data in a distributed data collection;<br>**a client entity,** the client entity for manipulating data in the distributed data collection; and<br>& First server entity, the first server entity operative to locate data in the distributed data collection;<br>wherein the first server entity is responsive to a client request from the first client entity **to provide a redirection message to the first** | 18. **A system** for retrieving data location information for data stored in a distributed network, the system **comprising**:<br>**a data repository** configured to store data, wherein the data is associated with an identifier string;<br>\|**a client** responsive to a data query to query a **data location server** for location information associated with the identifier string;<br>a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the |

| | |
|---|---|
| **client entity if the first server entity cannot provide at least one location string to the client entity corresponding to an identifier string in the client request.** | plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client:<br><br>if the data location server contains the location string associated with the identification string provided in the data location request, the data location server transmits location information for use by the client to calculate a location of the data associated with the identification string;<br><br>**if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different** |

|  | **data location server contains the location string.** |
|---|---|
|  |  |

As can be seen above, claim 5 that was rejected in the 2/9/05 Office action and allowed claims 17 and 18 all generally recite a system comprising a data repository, a client, and a server entity (or network of servers), wherein the server attempts to locate data requested by the client in the data repository and provide that location information back to the client. Both sets of claims also recite the use of identification strings that identify data and location strings that identify data locations, and the server sending a redirect message to the client if the server cannot locate the requested location string. The distinguishing feature between the rejected claims and the allowed claims appears to be the contents of the redirect message. In rejected claim 5, the contents of the redirect message are not claimed, whereas in the allowed claims, the redirect message is said to, "contain redirect information for use by the client to calculate a location of a different data location server in the plurality of location servers, wherein the different data location server contains the location string." Reviewing all of the claims rejected in the 2/9/05 Office action, the Examiner finds that in addition to claim 5, independent claims 1 and 12, and dependent claims 7-8, 17-25 ail include Limitations regarding the redirect message, however none of them require the redirect message to comprise information for use by the client to calculate the location of a different location server, wherein the different location server contains the Location string.

This limitation was also the focus of the Applicant's remarks filed in response to the 2/9/05 Office action. The Applicant argued,

"Referring to claim 24, when a user enters a request at a client for data at a first client, the data query includes an identifier string (e.g. a File name or URT) and expects to receive information (a location string) on where the data corresponding to that Filename resides...

..During this navigation process, if a data location server does not possess the sought after location string, it transmits a location request traveled to the first client. The redirect message back along the communication path the data location request traveled to the first client. *The redirect message that is sent back to the first server contains information with which the first client is configured to determine a location of a second data location server that does contain the sought after location string. In other words, the redirect message allows the first server to calculate a new data location server address so that the first server "redirects" its query to the right data location server...*

… *Similarly, the method of claim 32 also includes the feature of redirection*, however claim 33 addresses a more simplified scenario such as shown in FIG, 12, where there are not necessarily any intervening devices between the client and the data location servers.

*New independent claims 41 and 42 relate to system configurations adapted to incorporating software instructions implementing the redirection process,"*

See page 11 of the remarks filed 8/9/2005.

"In a hypothetical system that needs to track 100s of billions of objects across 100s of millions of clients and repositories in which any object can "spontaneously and dynamically change location from any client to any other client in real-time, there are significant challenges. *The claimed redirection feature 1s intended to help address and solve problems like these, using*

*a theoretically on-point-failure-retry redirection method that configurable distributes*

*computation among client and servers*."

See page 12 of the remarks filed 8/9/05.

Regarding the applied prior art the applicant argued,

"*In a hypothetical system that needs to track 100s of billions of objects across 100s of*

*millions of clients and repositories in which any object can "spontaneously and dynamically"*

*change location From any client to any other client in real-time, there are significant*

*challenges. The claimed redirection feature is intended to help address and solve problems like*

*these, using a theoretically one-point-failure-retry redirection method that configurable*

*distributes computation among clients and Servers.*

None of the previously cited references teach or suggest the features of claims 24-43,

Beitgz et al. discloses a system that needs some type of improved data management

system, for example see p. 32 of Beitz, but fails to address how that data management system

would be implemented. Accordingly, Beitz does not Leach or suggest a redirection mechanism

as recited in the pending claims.

*Cali discloses mapping UPC codes to IP addresses in a Standard relational database*

*using mirrored servers each having a complete copy of a look-up table. (See Col. 3, line 61 -*

*Col, 4, line 9), Call does not disclose or suggest the claimed redirection mechanism.*

Perkowski discloses linking consumers to product information using a relational

database. Perkowski teaches the use of traditional relational databases using centralized or

mirrored deployments. (see col. 7, lines 38-42; col. 11, lines 34-61; col. 12, lines 30-35; and col.

18, lines 13-35). *Perkowski fails to teach or suggest a redirect message containing information*

*for a client or server to determine the location of another data location server, a client or server*

*computing redirection information or of the location of servers changing dynamically,*

Similarly, Hudetz et al. discloses mapping UPC numbers to IP addresses that can

provide the consumer more information on the product. The disclosure mentions in passing a

database that stores the UPC-to-IP data table and does not disclose or suggest a dynamic data

management system with a redirection Function. (See FIG. 4; Col. 7, fines 1-9)."

See pages 12-13 of the remarks filed 8/9/05.

In light of the foregoing, if a new reference or combination of references teaches or fairly

suggests a redirect message containing redirect information, for use by the client that requested a

data location string from a data location server, to calculate a location of a different data

location server of a plurality of data location servers, wherein the different data location server

contains the location string, then that reference or combination of reference would raise an SNQ.


## Substantial New Question of Patentability

10.    The following italicized sections of claim 17, which reprehensive of claim 18, are utilized

by the examiner to show how specific teachings of the proposed references create a substantial

new question of patentability.

Claim 17: A system for retrieving data location information for data stored in a

distributed network, the system comprising:

a plurality of data repositories configured to store data, wherein the data is associated with a respective identifier string in each data repository;

a data location sewer network having a plurality of data location servers, each of the plurality of data location servers containing location strings associated with respective identifier strings and each of the plurality of data location servers having computer executable code configured to execute the following steps:

in response to receiving a data location request from a client to retrieve a location string associated with an identification string provided in the data location request, ***transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the redirect message contains information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string***.

## *Priority and Patent Term*

11.     As mentioned above, the '640 patent was filed as application 09/661,222, filed on September 13, 2000 (U.S. Patent 7,103,640), a continuation-in-part of application 09/503,441, filed on February 14, 2000 (abandoned), a continuation-in-part of application 09/367,461, filed on August 13, 1999 (abandoned), a continuation-in-part of application 09/111,896, filed on July 8, 1998 (abandoned).  The Overton application also relied on Provisional Applications 60/277,408, filed on March 19, 2001 and 60/209,070, filed on June 2, 2000.

MPEP 2701(I) states the following:

*A patent granted on a continuation, divisional, or continuation-in-part application that was filed on or after June 8, 1995, will have a term which ends twenty years from the*

*filing date of earliest application for which a benefit is claimed under 35 U.S.C. 120, 121,*

*365(c), or 386(c)  regardless of whether the application for which a benefit is claimed*

*under 35 U.S.C. 120, 121, or 365(c)  was filed prior to June 8, 1995.*

Based on the citation above, the Overton patent is expired.  The term of twenty years from the

filing date of the earliest filed application (09/111,896, filed on July 8, 1998) for which a benefit

is claimed plus the term adjustment of 810 days under 35 U.S.C. 154(b) has passed.  The patent

expired on September 25, 2000.

12.     37 C.F.R. 1.530(j) states, "No enlargement of claim scope. No amendment may enlarge

the scope of the claims of the patent or introduce new matter. ***No amendment may be proposed***

***for entry in an expired patent. Moreover, no amendment, other than the cancellation of***

***claims, will be incorporated into the patent by a certificate issued after the expiration of the***

***patent.***" (emphasis added).  Thus, because the patent is expired no amendments of the claims

will be allowed aside from the cancellation of claims.

Additionally, in making the determination of whether to order reexamination, the Office

will determine the proper meaning of the patent claims by giving the claims their broadest

reasonable interpretation consistent with the specification (see In re Yamamoto, 740 F.2d 1569

(Fed. Cir. 1984)), except in the case of an expired patent (in a reexamination involving claims of

an expired patent, claim construction is pursuant to the principle set forth by the court in Phillips

v. AWH Corp., 415 F.3d 1303, 1316, 75 USPQ2d 1321, 1329 (Fed. Cir. 2005) (words of a claim

"are generally given their ordinary and customary meaning" as understood by a person of

ordinary skill in the art in question at the time of the invention, see Ex parte Papst-Motoren, 1

USPQ2d 1655 (Bd. Pat. App. & Inter. 1986)).

## Issue I

### ONAG in view of OSG & McGarvey

13.     The Request shows that the combination of ONAG, OSG and McGarvey teaches

following limitations of claim 17 in '640 patent:

>  *transmitting a redirect message to the client if the identification string is not*
>
>  *associated with a location string at the data location server, wherein the redirect message*
>
>  *contains information for use by the client to calculate a location of a different data location*
>
>  *server in the plurality of data location servers, wherein the different data location server*
>
>  *contains the location string*.

>  Further, in the hierarchical configuration shown below in Figure C-4,
>  when responding to the query, OracleNamesAdminGuide explains that, if
>  the queried Names Server lacks the requested information, the server
>  sends a message to the requesting client containing the address of the
>  Names Server that can service the request. OracleNamesAdminGuide

teaches that this occurs when the server's name-request forwarding function is disabled, which is advantageous to lessen the workload of the server of the root region because it no longer needs to perform forwarding functions to other servers containing the requested information. *E.g.*, OracleNamesAdminGuide 137. As Mr. Greene explains, a POSITA would have understood that this message to the client is a redirect message used by the client to calculate the location of a location server different than the server at issue in claim element 18 g.[19]

*See* OracleNamesAdminGuide at 191:



Figure C - 4 Network Messages in a Multi-Level Foreign Name Resolution

*See* OracleNamesAdminGuide at 119-120: "Summary of NAMESCTL Commands ... SET FORWARDING_AVAILABLE [will t]urn on or off

name request forwarding for a Names Server."

OracleNamesAdminGuide at 137: "SET FORWARDING_AVAILABLE

| | |
|---|---|
| Purpose: | ***Turns on or off name request forwarding for a Names Server....*** |
| Syntax: | From the operating system: |
| | `NAMESCTL SET FORWARDING_AVAILABLE OFF` |
| | From NAMESCTL program: |
| | `SET FORWARDING_AVAILABLE OFF...` |
| Usage Notes: | This setting is intended only for Names Servers that have no local clients and are exclusively handling requests from foreign Names Servers. This usually would only |

apply to Names Servers in the root region when the root is configured without clients or services. *If such a server is a performance bottleneck in cross–region request processing then disabling forwarding in that Names Server will cut its workload in half. Rather than forward the request and return the answer the Names Server simply tells the requestor the address of the Names Server that can answer the request.* Note that there is no overall reduction in work; the work is simply displaced from the non–forwarding Names Server to the requesting Names Server.

WARNING: If FORWARDING_AVAILABLE is set to off, any clients who rely directly on that Names Server will be unable to resolve foreign names. Clients are not capable of redirecting their requests as Names Servers would. Their requests will fail at that point, even if other Names Servers are listed in the NAMES PRE-FERRED_SERVERS configuration parameter.

Example: `NAMESCTL> SET FORWARDING_AVAILABLE OFF`
`Request processing is now disabled."`

*See* OracleNamesAdminGuide at 33: "The Oracle Names Server is a network service comprised of multiple components. Each Oracle Names Server without using DDO contains:

• the cache—the Names cache is an in-memory database of all data required to resolve names. The cache contains the following types of data which is refreshed at different intervals.

– system and topology data—includes the network data and *addresses of Names Servers in other administrative regions.* (Network data includes all communities and MultiProtocol Interchanges in the entire network, and Names Server addresses in the root administrative region.) .

– non–authoritative data – data defined outside the local administrative region, for example, *foreign database and Names Server addresses.* Non–authoritative data only exists in multi–region configurations . . ."

*See* OracleNamesAdminGuide at 67: "The Names Servers on the network using DDO must know about each other."

Based on the above teachings, OracleNamesAdminGuide discloses or renders obvious that, if the Names Server doesn't contain the location information associated with the network-service-name-alias (i.e., identifier string) provided in the data location request, the Names Server transmits a redirect message to the client containing redirect information for use by the client to calculate a location of the Names Server having the location information.[192]

### Moreover, McGarvey Renders Obvious Claim Element 18.h.

McGarvey illustrates that it was well known in network configuration technologies that a names server receiving a location query, and if the server can't resolve that query, the server will send a redirect message pointing to another names server that can resolve the query. For instance, McGarvey teaches a system using TCP/IP address resolution to access data on its network. See McGarvey at 2:61-67, Fig. 1. McGarvey explains that it was known a "particular name server may contain information on only a subset of the domain namespace, but the name server typically belongs to a hierarchy of name servers, and if it does, either it communicates with other members of the hierarchy to attempt to resolve host names, *or it returns information referring the client to another server in the hierarchy, so that the client can redirect the query*." McGarvey at 1:43-48.

*See also* McGarvey at 5:3-32: "…*[A]n application program on host 101 attempts to establish communication with host 102, and first issues a name server query* …. The process then waits for a response to be received from any of the name servers queried or for their timeout interval to elapse … Suppose … that a response is received before the timeout interval elapses … If the server replies that the host is unknown, then the process waits for replies from name servers on other domains, where the host may reside in step 340. *If the query fails for the name servers on all of the domains, because each name server reports that the host is unknown or times out, a check is made for a local host names file in step 345. If the file is present, it is searched for the address of the remote host in step 350*."

Similarly, OracleNamesAdminGuide contemplates using a DNS model to organize its data throughout its distribute database based on TCP/IP-type location information: "…[M]any companies with TCP/IP networks use the Domain Name Service (DNS) model for communication on the worldwide Internet. In this model, all naming models are hierarchical from a set of base domains …. To adapt any example in this book to the DNS Internet model, add a single high-level domain …. For organizations which are on the Internet, and therefore already have one or more DNS domains, the sensible choice is to align their Oracle naming domains with their DNS domains." OracleNamesAdminGuide at 56-57.

It is agreed that ONAG, OSG and McGarvey raise an SNQ as to at least claim 17 and 18

of '640 patent as pointed out above. There is a substantial likelihood that a reasonable examiner

would consider the teachings of ONAG, OSG and McGarvey important in deciding whether or

not claims 17 and 18 are patentable.


## Issue II

## **ONAG in view of OSG, McGarvey, & Rajani**


*14.*    Requester asserts a substantial new question of patentability to the claim 24 as being

obvious over the combined teaching of ONAG in view of OSG, McGarvey, & Rajani. A substantial

new question of patentability with respect to independent claims 17 and 18 have been established.

(see Issue I above).    According, it is agreed that the combinations proposed above raise a

substantial new question of patentability with respect to claim 24 because claims 24 are depended

on claim 18.


### *Scope of Reexamination*

*15.*    Claims 17, 18 and 24 will be reexamined as requested in the Request and are hereby

Ordered.


### *Conclusion*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings

because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

reexamination proceeding. Additionally, 35 U.S.C. 305 requires that reexamination proceedings

"will be conducted with special dispatch" (37 CFR 1.550(a)). Extension of time in ex parte

reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 6,922,728 throughout the course of this reexamination proceeding.  See MPEP §§

2207, 2282 and 2286.

All correspondence relating to this ex parte reexamination proceeding should be directed as

follows:

By U.S. Postal Service Mail to:

Mail Stop Ex Parte Reexam
ATTN: Central Reexamination Unit Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450


By FAX to:
(571) 273-9900
Central Reexamination Unit



By hand to:
Customer Service Window
Randolph Building
401 Dulany St.
Alexandria, VA 22314

By EFS-Web:

Registered users of EFS-Web may alternatively submit such correspondence via the electronic
filing system EFS-Web, at

https://efs.uspto.gov/efile/myportal/efs-registered

EFS-Web offers the benefit of quick submission to the particular area of the Office that needs to act on the correspondence. Also, EFS-Web submissions are "soft scanned" (i.e., electronically uploaded) directly into the official file for the reexamination proceeding, which offers parties the opportunity to review the content of their submissions after the "soft scanning" process is complete.

Any inquiry concerning this communication or earlier communications from the Reexamination

Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the

Central Reexamination Unit at telephone number (571) 272-7705.

/PENG KE/
 Primary Examiner, Art Unit 3992

Conferees:

/RSD/

/ALEXANDER J KOSOWSKI/
Supervisory Patent Examiner, Art Unit 3992