**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Hon. Matthew F. Kennelly |
| v. | Jury Trial Demanded |
| Amazon Web Services, Inc., | |
| Defendant. | |

**PLAINTIFF KOVE IO, INC.'S LR 56.1(b)(3) STATEMENT OF ADDITIONAL
MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56 and Local Rule 56.1(b)(3), Plaintiff Kove IO, Inc. ("Kove") submits the following Additional Statement of Material Facts in support of Kove's Opposition to Defendant's Motion for Summary Judgment.

**Claim Construction**

1. All challenged claims of the '640 and '170 patents were subjected to substantive reexamination, and the Patent Office issued Office Actions in each reexam, identifying the prior art and reasons why the Office believed the art rendered the claims unpatentable. Ex. 130 (90019035_2022-05-11_NFOA); Ex. K133 (90019036_2022-05-04_NFOA).

2. Kove responded to the Office Actions, detailing why the claims are distinguishable from the prior art, Ex. K131 (90019035_2022-08-11_Response); Ex. K134 (90019036_2022-08-04_Response), and the PTO agreed and upheld the patentability of all claims.

3.      For the '978 patent, claims 17, 23, 24, and 30 were determined patentable by the Patent Office prior to any response from Kove, and while claims 1, 3, 6, 10, 14, and 31 were substantively rejected, Kove submitted a response only as to them, in response to which the Patent Office upheld the patentability of claims 3, 6, 10, and 14, and issued a final rejection as to claims 1 and 31.    Ex. K126 (90019034_2022-06-28_NFOA); Ex. K127 (90019034_2022-09-28_Response); Ex. K128 (90019034_2022-10-27_Final OA).

4.      Kove argued that ONAG teaches a system that "depends on a hierarchical structure where a client can only query the node immediately 'above' or 'below' it in the 'tree,'" and contrasted ONAG's "hierarchical tree" with the requirements of claims 17 and 18, which contain limitations allowing:

> [a] client [to] send a query to any server in the network—not just its local region, as taught by Oracle Admin (see Oracle Admin, p. 190).  If the queried server does not have the requested information, that server (as are all servers in the data location server network) is configured to return a message to the client containing information that the client can then use to calculate the location of the server that does have the requested information.

and identified the specific limitations in claims 17 and 18 that distinguish them from ONAG's hierarchy:

> Claims 17 and 18 require that "***each of the plurality of data location servers*** having computer executable code ***[be] configured to***" carry out specific activity.  In particular, each location server must be able to "transmit[] a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the ***redirect message contains information for use by the client to calculate a location of a different data location server*** in the plurality of data location servers, ***wherein the different data location server contains the location string***."

Ex. K134 at 23-24 (90019036_2022-08-04_Response) (emphasis in original).

5.      Using terminology that contrasted what the claim limitations require with ONAG's hierarchical structure, Kove explained that the claims' "**non-hierarchical cluster composition is expressly claimed** in claims 17 and 18 through the requirement that 'each' (i.e., all) of the data

location servers be similarly configured to respond to a client request with the aforementioned information." Ex. K134 at 39 (90019036_2022-08-04_Response ) (emphasis added).

6.    Kove's response also included a declaration from its expert, Dr. Goodrich, stating:

> Claims 17 and 18 both require 'each' data location server in the claimed data location network have computer executable code 'configured to execute' certain steps, including transmitting a redirect message to the client containing information for use by the client to calculate the location of the location server that contains the location string. **It is my opinion that a POSA at the time of this invention would understand this limitation to require a nonhierarchical cluster configuration as taught by the '640 patent**.

Ex. K138 ¶ 30 (90019036_Goodrich_Decl) (emphasis added).

7.    The Patent Office confirmed the patentability of all reexamined claims, and stated that the "reasons for patentability and/or confirmation" of the claims are that "[t]he cited prior art fail to teach individually or in combination" the limitations of the claims requiring a "redirect message.":

> Claims 17, 18, and 24 are confirmed.
>
> The following is an examiner's statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding:
>
> Based on applicant's remarks (p29-37, p41-42) presented on 8/04/2022, The cited prior art fails to teach individually or in combination: "…transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server…" and "…wherein the redirect message contains information for use by the client to calculate a location of a different data location server …" of Claim 17; and
>
> "if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client …" and "where in the redirect message contains redirect information for user by the client to calculate a location of a different data location server in the plurality of the data location server …" of claim 18.
>
> Claim 24 which is dependent on claim 18, it is confirmed for the same reasons as those stated for claim 18.

Ex. K135 at 3-4 (90019036_2022-10-06_NIRC).

8.      In responding to the Office's rejections of the '170 claims, much like it did for the

'640 patent, Kove identified specific limitations from each independent claim that differentiates

them from ONAG, pointing out that the limitations cannot be met by ONAG's hierarchical tree

topology:

- "**[C]laim 1** requires data location information to be portioned and organized across the data location servers in the network based on a hash function.  **A hash function necessarily organizes data in a non-hierarchical manner**, meaning claim 1 can only be accomplished through the cluster configuration taught by the specification."  Ex. K131 at 26 (90019035_2022-08-11_Response) (emphasis added).

- "**Claim 6's non-hierarchical configuration is embodied [by]** [sic] the requirement that the location server must be able to return a 'redirect message' where 'the redirect message compris[es] a list of at least one other location server known to have the location information for the desired entity.'  This limitation cannot be met in hierarchical configurations such as Names Server because location servers in tree-structures do not necessarily know which other server has the desired information." Ex. K131 at 26 (90019035_2022-08-11_Response) (emphasis added).

- "**Claim 15 contains a similar requirement** that location servers in the network be capable of returning 'redirect messages' identifying other servers in the network with the desired information.  This is embodied in the limitation 'the redirect message identifying which of the plurality of location servers includes the location information.' . . . [T]he redirect message limitations, as recited by claims 6 and 15, demonstrate that claims 6 and 15 **recite a non-hierarchical cluster configuration**." Ex. K131 at 26 (90019035_2022-08-11_Response) (emphasis added).

9.      Kove also submitted a declaration from Dr. Goodrich that stated, "It is my opinion

that a **POSITA** at the time of this invention **would understand claims 1, 6, and 15**, through

various limitations in each of the claims, **to require a non-hierarchical cluster** configuration as

taught by the '170 patent." Ex. K137 ¶ 28 (90019035_Goodrich_Decl) (emphasis added); *see also*

¶¶ 29-33.

10.     The Patent Office confirmed the patentability of all reexamined claims, and

identified the limitations requiring "redirect message" and the "each one of the data location

servers is configured to determine the at least one of the plurality of data location servers based on

the hash function applied to the identifier string" as not being disclosed in the prior art.:

> The following is an examiner's statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding.

> Independent claim 1 is directed to a system for managing data stored in a distributed network, the system comprising (*inter alia*) a data location server network comprising a plurality of data location servers, wherein data location information for a plurality of data entities is stored in the data location server network, at least one of the plurality of data location servers includes location information associated with an identifier string identifying the data entity, each one of the plurality of data location servers comprises a portion of the data location information based on a hash function used to organize the data location information across the plurality of data location server, and *each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string*.

> The prior art of record fails to teach this feature.

> Claim 2 incorporates these features from independent claim 1, and is confirmed on the same basis.

> Independent claim 6 is directed to a system for managing data location information and providing the data location information in response to location queries, the system comprising (*inter alia*) programming logic configured to return a redirect message if the location server lacks the location information for the desired entity, *the redirect message comprising a list of at least one other location server known to have the location information for the desired entity*.

> The prior art of record fails to teach this feature.

> Claims 8, 9, and 12 incorporate these features from independent claim 6, and are confirmed on the same basis.

> Independent claim 15 is directed to a method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising (*inter alia*) receiving a location query from a client at one of the plurality of location servers, the location query requesting location 15 information identifying a location of a data entity included in the data entities, and sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, *the redirect message identifying which of the plurality of location servers includes the location information*.

5

The prior art of record fails to teach this feature.

Ex. K132 at 15-17 (90019035_2022-09-27_NIRC).

11.     In responding to the PTO's non-final rejection of the '978 claims, Kove pointed to

the limitations in the claims responsible for the structural configurations of each claim's location

servers:

- "Independent claims 10 and 14 and dependent claim 3 require, **expressly or impliedly, a non-hierarchical cluster configuration of locations servers in a network**.  For example, claim 10 recites "the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information […] programming logic stored on each of the plurality of location servers responsive to a location query for a desired identifier to return one of a location message […] a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier."  As such, claim 10 explicitly recites that the location servers are arranged in a cluster topology.  Furthermore, claim 10 requires each location server be configured to transmit a redirect message comprising information to for finding a location server having location information.  Therefore, **these limitations require a non-hierarchical cluster configuration**."  Ex. K127 at 35-36 (90019034_2022-09-28_Response) (emphasis added).

- **"Claim 14's non-hierarchical configuration** is embodied in the requirement that the location server must be able to receive a location query from a client and return a "redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query."  Ex. K127 at 36 (90019034_2022-09-28_Response) (emphasis added).

- "**Claim 3 contains a similar requirement** that location servers in the network be capable of returning "redirect messages" where the "redirect message comprising information for finding a location server known to have location information relevant to the location query."  Therefore, the redirect message indicates with specificity and certainty which data location server in the network contains the location information for the desired entity.  **A hierarchical configuration does not enable nodes to have such knowledge**."  Ex. K127 at 36-37 (90019034_2022-09-28_Response) (emphasis added).

12.     Dr. Goodrich also submitted a declaration where he stated, "It is my opinion that a

POSITA at the time of this invention would understand claims 3, 10, and 14, through various

limitations in each of the claims, to require a non-hierarchical cluster configuration as taught by

the '978 patent," thus confirming that the plain language of the claim requires a non-hierarchical topology. Ex. K136 ¶ 35 (90019034_Goodrich_Decl); *see also* ¶¶ 36-43.

13. The Patent Office confirmed the patentability of all challenged claims except claims 1 and 31, which were finally rejected, and the Office's stated "reasons for patentability and/or confirmation" identified the limitations that distinguished the claims over the prior art as the bases for patentability.:

> Claims 3, 6, 10, 14, 17, 23, 24, and 30 are confirmed over the prior art that was explained in the request and determined to raise a substantial new question of patentability in the order granting reexamination because the art of record does not teach:
>
> *wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query.*
>
> (as found in claim 3)
>
> *wherein the location information in the location server is maintained in an indexed location store indexed by a hash table.* ( as found in claim 6)
>
> *wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier.*
>
> (as found in claim 10)
>
> *sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query.*
>
> (as found in claim 14)

> *transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit.*
>
> (as found in claim 17)

Ex. 129 at 5-7 (90019034_2023-06-28_NIRC).

14.     Kove never argued that claims 1 and 31 of the '978 patent, which do not have limitations that require non-hierarchical topologies, were distinguishable from ONAG based on a non-hierarchical requirement. *See* Ex. K127 (90019034_2022-09-28_Response).

15.     Dr. Goodrich confirmed Kove's descriptions, telling the Patent Office that a person of ordinary skill in the art at the time of the invention would have understood the various limitations to require a non-hierarchical configuration. Ex. K136 at ¶ 35 (90019034_Goodrich_Decl); *see also* ¶¶ 36-43.

16.     In its response to the PTO's initial finding of claims 17, 23, 24, and 30 of the '978 patent patentable, Kove "thank[ed] the Office for confirming patentability of these four claims" and went on to address "the rejections *as to the remaining claims*." Ex. K127 at 6 (90019034_2022-09-28_Response) (emphasis added).

17.     During reexamination of the '978 patent, Kove's statements regarding "non-hierarchical" called out the claims by number when responding to rejections of claims 3, 10, and 14, but made no statements about "non-hierarchical" in relation to claim 6:

- "Independent claims 10 and 14 and dependent claim 3 require, expressly or impliedly, a non-hierarchical cluster configuration of locations servers in a network." Ex. K127 at 35-36 (90019034_2022-09-28_Response).

- "Claim 14's non-hierarchical configuration is embodied in the requirement that the location server must be able to receive a location query from a client and return a "redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query." Ex. K127 at 36 (90019034_2022-09-28_Response).

- "Claims 3 contains a similar requirement that location servers in the network be capable of returning "redirect messages" where the "redirect message comprising information for finding a location server known to have location information relevant to the location query." Ex. K127 at 36-37 (90019034_2022-09-28_Response).

18. The term "system" appears only in the preambles of certain claims,[1] and the parties agree that those preambles are not limiting. *See* Dkt. 382, Ex. B at 1.

19. In the reexam, Kove explained that the claim's "non-hierarchical cluster composition is expressly claimed . . . through the requirement that 'each' (i.e., all) of the data location servers be similarly configured to respond to a client request with the aforementioned information." Ex. K134 at 30 (90019036_2022-08-04_Response).

**Section I (non-infringement under "new" claim construction)**

20. All asserted claims of the Kove patents involve a "network" or a "system" and require that the networks or systems have at least two "location servers," *see* Ex. K5 claims 1, 3, 6, 10, 14, 17, 23, 24, 30 (USP7233978); Ex. K6 claims 1, 2, 6, 8, 12, 15 (USP7814170); Ex. K4 claims 17, 18, 24 (USP7103640), and a subset of the asserted claims additionally require a "data repository." *See* Ex. K6 claim 1 (USP7814170); Ex. K4 claims 17 and 18 (USP7103640).

21. While the asserted claims require that the location servers (and data repositories where applicable) store certain information (such as locations) and set forth various relationships between information (such as identifiers, locations, and data), they do not require any additional structures. *See* Ex. K5 claims 1, 3, 6, 10, 14, 17, 23, 24, 30 (USP7233978); Ex. K6 claims 1, 2, 6, 8, 12, 15 (USP7814170); Ex. K4 claims 17, 18, 24 (USP7103640).

22. Consistent with the requirements of the claims, Dr. Goodrich has analyzed infringement in S3 and DDB for "each set of two or more" of the alleged location servers within

---

[1] Claims 1-13, 17, and 31 of the '978 patent; claims 1-14 of the '170 patent; and claims 17-25 of the '640 patent.

"regions that share a namespace for buckets." Ex. K53 ¶¶ 79, 97, 102, 106, 111, 121, 128, 132, 175, 198, 207, 208 (2023-07-06 EX. D to Corrected Opening Expert Report of Goodrich); Ex. K54 ¶¶ 81, 96, 101, 109, 116, 128, 131, 146, 204, 212, 218, 222, 228, 232, 236, 241, 305, 327 (2023-07-06 EX. E to Opening Expert Report of Goodrich).

23.     With respect to the claims that require a data repository, Dr. Goodrich analyzed infringement for the "one or more servers" that store the data corresponding to the alleged location servers. Ex. K53 ¶ 198 (2023-07-06 EX. D to Opening Expert Report of Goodrich); Ex. K54 ¶ 204 (2023-07-06 EX. E to Opening Expert Report of Goodrich).

24.     The testing of AWS's expert, Dr. Gramma, that supposedly demonstrates geographic hierarchy in S3 and DDB was based on tests conducted globally. Ex. K59 ¶ 175 (2023-08-18 Grama Expert Report) ("By storing data around the globe and running a series of requests for that data from different locations, I was able to identify patterns in retrieving data stored on the Accused Products. "), ¶ 177 ("In the first set of data requests for both S3 and DDB, I stored data items all over the globe."), ¶ 178 ("On the second set of requests, I used the same data layout around the globe…."), ¶ 180 ("On the fourth set of requests, I repeated the same test but moved the client from Ohio to Sydney."), ¶ 181 ("On the fifth set of requests, I again placed 170 data items in a single location, but this time I moved it to Sydney. I then requested the data from the same Ohio client."), ¶ 175 ("By storing data around the globe and running a series of requests for that data from different locations, I was able to identify patterns in retrieving data stored on the Accused Products.").

25.     Dr. Goodrich extensively analyzes how S3 and DDB infringe under all of AWS's proposed constructions, and AWS's vague and conclusory assertion otherwise is insufficient to establish that there are no disputed issues of material fact. Ex. K53 ¶¶ 118-123, 171-177, 226

(2023-07-06 EX. D to Opening Expert Report of Goodrich); Ex. K54 ¶¶ 113-118, 141, 159, 187, 234, 261, 300, 324, 349 (2023-07-06 EX. E to Opening Expert Report of Goodrich).

26.     As for ▮▮▮, Kove does not allege that they are location servers in claims with non-hierarchical structures, *see* Ex. K53 ¶¶ 77, 111, 207, (2023-07-06 EX. D to Opening Expert Report of Goodrich), and Kove only maps ▮▮▮ to the "location server" for claims 17, 23, 24, and 30 of the '978 patent, which Kove contends encompass both hierarchical and non-hierarchical structures. Ex. K53 ¶¶ 127, 131,  (2023-07-06 EX. D to Opening Expert Report of Goodrich).

27.     Grama's infringement rebuttal report provides, for the first time, that the accused products do not infringe because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. K59 ¶¶ 336-337 (2023-08-18 Grama Expert Report), and his only support for his ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Ex. K59 ¶ 336, n397 (2023-08-18 Grama Expert Report) ((citing AWS_SRC_CODE_000000157)), which was not included in AWS's non-infringement contentions, , which do not disclose this theory, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and do not cite the source code AWS now relies on. *Compare* Ex. K158 (2023-03-21 AWS 2nd Amended Final Non-Infringement Contentions (DDB excerpt)) with Ex. K59 ¶ 336-337 (2023-08-18 Grama Expert Report (advancing new theory)).

28.     Goodrich explains in his report that the person of ordinary skill in the art would understand the alleged location servers in S3 and DDB — ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, respectively — to be non-hierarchical:





Ex. K53 ¶ 121 (2023-07-06 EX. D to Opening Expert Report of Goodrich); *see also id.* at ¶¶ 118-123.



Ex. K54 ¶ 116 (2023-07-06 EX. E to Opening Expert Report of Goodrich); *see also id.* at ¶¶ 113-118; *id.* at ¶¶ 82, 109, 121, 131, 146, 165, 191, 195, 199 (identifying       as location servers in each asserted claim), and Dr. Grama does not dispute his reasoning. *See* Ex. K59 ¶¶ 329-339, 349-364 (2023-08-18 Grama Expert Report).

**Section II (non-infringement under previous claim construction)**

(*Amazon S3*)

29.     Kove identifies ███████ information comprising a ███████ as satisfying the "where data…is stored" element, Ex. K53, ¶¶ 87, 90-91 (2023-07-06 Ex. D to Opening Expert Report of Goodrich); *see also id.* ¶¶ 23-24, and Dr. Goodrich (Kove's technical expert) explains that ███████ in S3 consist of a ███████ which in turn contains a ███████ and a ███████ Ex. K53, ¶ 87 (2023-07-06 Ex. D to Opening Expert Report of Goodrich), the combination of which specifies where the data in S3 — "objects" — are stored:



Ex. K53, ¶ 90 (2023-07-06 Ex. D to Opening Expert Report of Goodrich).

30.     Dr. Goodrich explains in his expert report that ███████



███████ meaning that ███████ ███████ Ex. K53, ¶ 24 (2023-07-06 Ex. D to Opening Expert Report of Goodrich) (emphasis added) (citing Ex. K118 at AMZ_KOVE_000443129 (AMZ_KOVE_000443110); Ex. K108 at 9:46–10:26, 11:06-11:17 (AMZ_KOVE_000012917)); *see also* Ex. K87 at AMZ_KOVE_000507062 (AMZ_KOVE_000507062) ███████ ███████; Ex. K74 at AMZ_KOVE_000435516 (AMZ_KOVE_000435516) ███████ ███████

███ ; Ex. K77 at AMZ_KOVE_000439511 (AMZ_KOVE_000439511) █████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ ;

Ex. K71 at AMZ_KOVE_000400711 (AMZ_KOVE_000400711) ████████████

███████████████████████████████████████████████████████████

███ ; Ex. K161 at (6:57–7:08) (AMZ_KOVE_000064821, also produced at

AMZ_KOVE_000075807, Ex. K110) ████████████████████████ ; *see* Ex. K53

¶¶ 22 (citing and incorporating source code analysis in Appendix A thereto), 23-33, 87-94 (2023-

07-06 Ex. D to Opening Expert Report of Goodrich); *see also id.* ¶¶ 8-48 (summarizing S3

structure, operations, and request paths).

31.     Dr. Goodrich's opinions are based on AWS documents, videos, source code, and

deposition testimony that all show that ██████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████ Ex. K53, ¶ 24 (2023-07-06 Ex. D to Opening Expert Report of Goodrich)

(emphasis added) (citing Ex. K87 at AMZ_KOVE_000507062 (AMZ_KOVE_000507062)

███████████████████████████████████████████████ ; Ex. K74 at

AMZ_KOVE_000435516 (AMZ_KOVE_000435516) ████████████████████

███████████████████████████████████████████████████ ); Ex. K77 at

AMZ_KOVE_000439511 (AMZ_KOVE_000439511) ████████████████████

███████████████████████████████████████████████████████████

█████████████████████; Ex. K118 at AMZ_KOVE_000443126–AMZ_KOVE_000443127 (AMZ_KOVE_000443110) ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████); *see* Ex. K53 ¶¶ 22 (citing and incorporating source code analysis in Appendix A thereto), 23-33, 87-94 (2023-07-06 Ex. D to Opening Expert Report of Goodrich); *see also id.* ¶¶ 8-48 (summarizing S3 structure, operations, and request paths).

32.     In many instances of the evidence that Dr. Goodrich cites in his expert report, AWS documents and engineers are literally describing the ███████████████████████████ ███████████████ Ex. 87 at AMZ_KOVE_000507062 (AMZ_KOVE_000507062) ("███████ █████████████████████████████████████"); Ex. 74 at AMZ_KOVE_000435516 (AMZ_KOVE_000435516) ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████; Ex. K77 at AMZ_KOVE_000439511 (AMZ_KOVE_000439511) ████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████;

Ex. K71 at AMZ_KOVE_000400711 (AMZ_KOVE_000400711) ████████████████████████

████████████████████████████████████████████████████████████████████████████

█████; Ex. K161 at (6:57–7:08) (AMZ_KOVE_000064821, also produced at AMZ_KOVE_000075807, Ex. K110) ████████████████████████████████; Ex. K118 at AMZ_KOVE_000443129 (AMZ_KOVE_000443110) ████████████████████████████████████

███████████████████████████████████████████.

33.     ███████████████████████████████████████████████████████ Ex. K53, ¶¶ 18, 32 (2023-07-06 Ex. D to Opening Expert Report of Goodrich) (citing Ex. K109 at 9:10–

9:55 (AMZ_KOVE_000013051); Ex. K110 at 24:43–26:36 (AMZ_KOVE_000075807); Ex. K60 at AMZ_KOVE_000012901 (AMZ_KOVE_000012900); Ex. K73 at AMZ_KOVE_000434260 (AMZ_KOVE_000434258); Ex. K112 at AMZ_KOVE_000066225 (AMZ_KOVE_000066223); Ex. K115 at AMZ_KOVE_000086393 (AMZ_KOVE_000086390)), and the ██████ is passed through a service called ██████ which resolves the ██████ information to ██████████ ████████████████████ Ex. K53, ¶¶ 33, 40, 44, 46 (2023-07-06 Ex. D to Opening Expert Report of Goodrich) (citing Ex. K110 at 24:44–31:18, 26:56–28:25 (AMZ_KOVE_000075807); Ex. K108 at 10:27–13:12, 11:49–26:13, 54:11–55:24 (AMZ_KOVE_000012917); Ex. K109 at 34:55–37:46, 40:55–42:09 (AMZ_KOVE_000013051); Ex. K60 (AMZ_KOVE_000012900) (describing GET and PUT processes); Ex. K30 at 229:2–237:22 (2020-01-30 Markle Dep. Tr.)).

34.     Dr. Goodrich's determination that the information in ██████ "specifies where data . . . is stored" is supported by an abundance of analysis and evidence, including AWS's source code, deposition testimony, highly confidential internal technical specifications, and lectures by AWS engineers explaining to other AWS engineers how S3 works. Ex. K53, ¶¶ 87, 90 (2023-07-06 EX. D to Opening Expert Report of Goodrich) (citing Ex. K124 (AMZ_KOVE_000437244) (describing ██████ encoding)); Ex. K118 at AMZ_KOVE_000443129 (AMZ_KOVE_000443110); Ex. K87 at AMZ_KOVE_000507062 (AMZ_KOVE_000507062) ("objects in S3 have ██████ that tell S3 where the object is stored"); Ex. K74 at AMZ_KOVE_000435516 (AMZ_KOVE_000435516) ("The S3 ██████ maintains a map of a user key to ██████ locations at which the associated ██████ is stored. This value associated with every key is called the ██████ Ex. K77 at AMZ_KOVE_000439511 (AMZ_KOVE_000439511) ("In S3, the ██████ component is primarily responsible for

maintaining a mapping between a key for a ▮▮ and the locations at which the ▮▮ is stored. Hence the data stored in the ▮▮▮ is called an ▮▮▮"); Ex. K71 at AMZ_KOVE_000400711 (AMZ_KOVE_000400711) ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); Ex. K161 at (6:57-7:08) (AMZ_KOVE_000064821, also produced at AMZ_KOVE_000075807, Ex. K110) ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. K108 AMZ_KOVE_000012917 (lecture given by Sorenson regarding S3); *see also id.* ¶¶ 23-24 (citing, *e.g.*, Ex. K123 at AMZ_KOVE_000532507 (AMZ_KOVE_000532506) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮); Ex. K60 at AMZ_KOVE_000012901 (AMZ_KOVE_000012900) ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. K110 at 31:29–31:55 (AMZ_KOVE_000075807); Ex. K81 at AMZ_KOVE_000463426 (AMZ_KOVE_000463426); Ex. K77 at AMZ_KOVE_000439511 (AMZ_KOVE_000439511) ("[T]he data stored in the ▮▮▮ is called an ▮▮▮ Ex. K30 at 231:13-232:9 (2020-01-30 Markle Dep. Tr.) (a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex. K160 at 136:12-21, 139:18-23 (2021-07-20 Sorenson Dep. Tr.) ▮▮▮▮▮▮▮ in be ▮▮▮ is "[t]he identifier for a ▮▮ inside a particular volume").

35.     During his deposition, Dr. Grama testified that he understood "location" to mean "a piece of information *that lets you access data to support the operations that you want to perform* on that data." Ex. K58 at 217:4-9 (2023-09-05 Grama Dep. Tr.) (emphasis added).

36.     Dr. Grama testified that he was interpreting the word "location" from the perspective of the POSITA, as opposed to rendering a legal judgment in the form of a new claim construction. Ex. K58 at 217:10-218:1 (2023-09-05 Grama Dep. Tr.) ("[T]his entire conversation

was prefixed as a POSITA[.] . . . I don't want to render a legal judgment.").

37.     Dr. Grama opines that the "IP address of ███████" — i.e., a type of information that is used to directly communicate with the data storage servers and retrieve the object data — is the only location in S3 and that ██████████████████████████████████████████ ██████████████████████   Ex. K59, ¶¶ 263-267 (2023-08-18 Grama Expert Report).

38.     At deposition, Dr. Grama agreed that disk defragmentation is a process where data is moved to a different part of the hard drive to improve hard drive efficiency.  Ex. K58 at 239:20-241:4 (2023-09-05 Grama Dep. Tr.).

39.     Dr. Grama initially agreed that a filepath *was* a location, but then reversed course and testified that a filepath *was not* a location.  Ex. K58 at 209:1-210:14 (2023-09-05 Grama Dep. Tr.) ("I would say the location of my file is C:/Documents/AIG/Deposition/A.  That is the location."), 237:18-242:17 ("Earlier you agreed that a file path to a file, you believed that was a location; correct?  A. Yes, that is a location." . . . "Is the text of the file path itself a location?  A. Ah, if you're just saying is C:. as it's written out or as I speak to you, is not a location.").

40.     The Kove patents disclose a preferred embodiment with multiple "locations" — a static, indirect location (i.e., a URL) that maps to a dynamic, direct location (i.e., an IP address).  Ex. K53, ¶ 91 (2023-07-06 EX. D to Opening Expert Report of Goodrich) (citing Ex. K5 at 8:10-13, 22:53-23:6 (USP 7,233,978) and Ex. K6 at 4:53-57 (USP 7,814,170)).

### (*DynamoDB*)

41.     Kove asserts that "primary keys" in DynamoDB are identifiers.  Ex. K54, ¶ 82 (2023-07-06 EX. E to Opening Expert Report of Goodrich) ("███████████ maintain mappings of ████████████████████ for items and/or attributes to their associated primary keys ("identifiers")."); ¶ 83 ("An item's primary key (partition ID) is an "identifier" under the parties'

agreed construction, *i.e.*, "a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server.").

42. Primary keys serve as identifiers in one of two forms: (A) when the primary key is a ███████████████████████████████████████); or (B) if there ███ ██████, when the primary key is ████████████████████████). Ex. K54, ¶ 9 (2023-07-06 EX. E to Opening Expert Report of Goodrich) ("Items are distinguished among the other items in the table by a unique identifier called a "primary key." (citing Ex. K106 at AMZ_KOVE_000007013–AMZ_KOVE_000007014 (AMZ_KOVE_000007001); Ex. K122 at 1:00–3:34 (AMZ_KOVE_000507797)); ¶ 10 ("There are two kinds of primary keys in DynamoDB. The first is called a █████████████████ which is used as an ██████████ ███████████████████████████████████████ internal to DynamoDB) ████████████████████. Items in a table are ████████████████. The second type of primary key is called a █████████████ which is composed of a ████████ ███████████████████████ In a table with █████████████, "[a]ll items with the same ████████████████████████████████████." When a ████████ ██████████ is used, items can have the ████████████████████████████████ ██████████, which allows for ██████████████████████████████████ ██████." (citing Ex. K106 at AMZ_KOVE_000007016 (AMZ_KOVE_000007001) (describing "primary key," █████████████████████████████); Ex. K122 at 3:34–5:01 (AMZ_KOVE_000507797); Ex. K107 at 9:54–12:00 (AMZ_KOVE_000012726))).

43. Kove has adduced evidence that both types of primary key (████████████████) satisfy the identifier limitation. Ex. K54, ¶¶ 9-10 (2023-07-06 EX. E to Opening Expert Report of Goodrich) (*see also* ¶ 47, *supra*), ¶ 82 ("The key that indexes these items is known as a "primary

key," which is a "█████████████████████████████████████," whose

███████████████████████████████████████████████████████

in DynamoDB) ████████████████████."), ¶ 83 ("An item's primary key (████████) is

an "identifier" under the parties' agreed construction, *i.e.*, "a unique encoding that identifies an

individual entity, and with which zero or more location strings are associated in a location

server."); Ex. K50 at 337:10-338:22 (2023-09-09 Goodrich Dep. Tr.) ("But when I refer to

'primary key' in my report, I'm referring to either the ████████████████████████████

████████████████████████████. Because in those instances, each of those ████████

████████████"); Ex. K58 at 167:22-170:21 (2023-09-05 Grama Dep. Tr.).

44.    Claim 1 of Kove's US Patent No. 7,814,170 ("the '170 patent") provides:

1.    A system for managing data stored in a distributed network, the system comprising:

a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and

a data location server network comprising a plurality of data location servers, wherein data location information for a plurality of data entities is stored in the data location server network, at least one of the plurality of data location servers includes location information associated with the identifier string, each one of the plurality of data location servers comprises a processor and a portion of the data location information, the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.

Ex. K6 (claim 1), and claims 6 and 15 of the '170 patent and claims 17 and 18 of Kove's US Patent

No. 7,103,640 ("the '640 patent) are similar to claim 1 of the '170 patent. *See* Ex. K6 (claims 6

and 15); Ex. K4 (claims 17 and 18).

45.    The specifications of the asserted patents describe mappings to merely be

associations. Ex. K6 at 20:8-29 (USP7814170) (referring to "identifier/location associations" interchangeably with "identifier/location mapping"); Ex. K4 at 19:61-20:17 (USP7103640) (same); Ex. K5 at 4:30-34 (USP7233978) (referring to "identifier/location mappings, or associations").

46. Kove's expert, Dr. Goodrich, catalogs the evidence showing that DDB meets the location server limitation because it shows that at least one location server includes location information associated with the identifier string. Ex. K54, ¶ 82 (2023-07-06 EX. E to Opening Expert Report of Goodrich):



Ex. K54, ¶ 82 (2023-07-06 EX. E to Opening Expert Report of Goodrich) (citing Ex. K39 at 137:21–138:12 (2020-01-29 Sorenson Dep. Tr.) (describing communications between ▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉, 194:19–195:8 (same); Ex. K106 at AMZ_KOVE_000007031 (AMZ_KOVE_000007001) ("To write an item to the table, DynamoDB uses the value of the

██████████████████████████████████████████████████

████████████████ in which the item will be stored."); Ex. K106 at AMZ_KOVE_000007031

(AMZ_KOVE_000007001) ("To read an item from the table, you must specify the ██████████

██████████. DynamoDB uses this █████████████████████████████████████████

███████████████████")); *see also id.* ¶¶ 213, 315; ¶ 10 (citing Ex. K106 at

AMZ_KOVE_000007016 (AMZ_KOVE_000007001) (describing "primary key," "██████████

███████████████"); Ex. K122 at 3:34–5:01 (AMZ_KOVE_000507797); Ex.

K107 at 9:54–12:00 (AMZ_KOVE_000012726)); ¶ 14 (citing Ex. K39 at 53:14–54:9 (2020-01-

29 Sorenson Dep. Tr.); Ex. K116 at 56:20–58:45 (AMZ_KOVE_000390547)); ¶ 15 (citing

AMZ_KOVE_000487470 (12:35–13:05); ¶ 16 (citing Ex. K106 at AMZ_KOVE_000007031

(AMZ_KOVE_000007001); Ex. K117 AMZ_KOVE_000397627); ¶ 32 ("Each ██████████████

stores location information corresponding to the partitions assigned to that ████████████. ██

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████ (citing Dr. Goodrich's source code analysis (Appendix B) and Ex. K111 at

AMZ_KOVE_000064844 (AMZ_KOVE_000064843) ("The ██████████ describes relationship

between ██████████████████. . . . To make user data read/write fast, we ████████████████

████████████")); *see* ¶¶ 53-61, *infra.*

47.      As Dr. Goodrich explained, the ██████████████ in DDB ██████████████

██████████████████████████████████████████████████

██████████████████████████████. Ex. K54, ¶ 82 (2023-07-06

Ex. E to Opening Expert Report of Goodrich); *see also* Ex. K58 at 167:22-170:21 (2023-09-05

Grama Dep. Tr.) ████████████████████████████████████████



48.    Data in DDB are referred to as "items," and each item is ███████████████

primary key that "█████████████████████████████████████████████,"

███████████████████████████. *See* Ex. K54, ¶¶ 7-10, 82 (2023-07-06 EX. E to

Opening Expert Report of Goodrich).

49.    In retrieving and returning data items requested by customers, ███████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████  *See* Ex. K54, ¶¶ 20, 24, 27, 28, 43-45, 48, 82 (2023-07-06 EX. E to

Opening Expert Report of Goodrich) (citing Ex. K120 at 2:13–6:38, 20:33–23:58, 35:20–38:22

(AMZ_KOVE_000487445); Ex. K107 at 3:10–3:28, 8:36–9:07 (AMZ_KOVE_000012726); Ex.

K116 at 3:20–4:43, 8:28–9:23, 33:19–41:03, 58:45–1:16:15 (AMZ_KOVE_000390547); Ex.

K119 (AMZ_KOVE_000483279); Ex. K122 at 7:40–11:46, 16:48–18:09, 29:36–32:20

(AMZ_KOVE_000507797); Ex. K113 at AMZ_KOVE_000074060 (AMZ_KOVE_000074059);

AMZ_KOVE_000400160 (indicating that ████████████ maintain ████████████████████

████████████████████████████████████); Ex. K116 at 10:12–10:23

(AMZ_KOVE_000390547) (indicating that only ██████████████████████████████);

Ex. K114 at AMZ_KOVE_000074220 (AMZ_KOVE_000074219); Ex. K116 at 10:23–12:15

(AMZ_KOVE_000390547); Ex. K39 at 73:17–74:8, 137:17–138:12 (2020-01-29 Sorenson Dep.

Tr.); Ex. K120 AMZ_KOVE_000487445 (drawing depicting "1. On ███████████████████

████████    from   ████████    ████████    Ex.    K111    at    AMZ_KOVE_000064852

(AMZ_KOVE_000064843) ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████; Ex. K125 at

AMZ_KOVE_000086166 (AMZ_KOVE_000086165) ███████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████; Ex. K116 at 9:38–10:03

(AMZ_KOVE_000390547) (If the ███████ is stale, it could go to the ██████████

would say "I don't know what you're talking about—████████████████████

████████. In that case, the ████ automatically goes to the ██████████ and ██████████

██████████████████████████), 10:23–12:15 (describing need for ██████████

████████); Ex. K122 at 11:46–16:48 (AMZ_KOVE_000507797); Ex. K39 at 56:13–61:6

(2020-01-29 Sorenson Dep. Tr.); Ex. K107 at 3:10–4:22 (AMZ_KOVE_000012726); Ex. K122 at

3:34–6:03 (AMZ_KOVE_000507797); Ex. K39 at 55:13–63:18 (2020-01-29 Sorenson Dep. Tr.);

Ex. K107 at 4:22–4:40 (AMZ_KOVE_000012726); Ex. K122 at 14:04–19:51

(AMZ_KOVE_000507797); Ex. K116 at 3:20–4:43 (AMZ_KOVE_000390547); Ex. K39 at

61:7–68:12 (2020-01-29 Sorenson Dep. Tr.); Ex. K39 at 137:21–138:12 (2020-01-29 Sorenson

Dep. Tr.) (describing communications between ██████████████████████), 194:19–

195:8 (same); Ex. K106 at AMZ_KOVE_000007031 (AMZ_KOVE_000007001) ("To write an

item to the table, DynamoDB uses the value of the ██████████████████████████

████████████████████████████████████████████████████████████

███████.") ("To read an item from the table, you must specify the ██████████████████████.
DynamoDB uses this value as █████████████████████████████████████████████

███████████"); Ex. K39 at 100:16–101:15 (2020-01-29 Sorenson Dep. Tr.); Ex. K111 at AMZ

KOVE 000064843-44 (AMZ_KOVE_000064843) (same as AMZ_KOVE_000073688 at

AMZ_KOVE_000073692).

50. The ████████ for the requested item is █████████████████, and this

██████████ is then used by the ███████████████ to lookup ***the locations for the item

corresponding to the primary key***. Ex. K54, ¶ 82 (2023-07-06 EX. E to Opening Expert Report

of Goodrich); *see also* Ex. K58 at 167:22-170:21 (2023-09-05 Grama Dep. Tr.) ("So the primary

key is a key that identifies a row in the table in DynamoDB. ████████████████████████

████████████████████████████████████████████████. And the idea

here is that the primary key goes through a ███████████████████████████████.").

51. ████████████████████████████████████████████

████████████████████████████████████████████████████ maintain the

"identifier/location mappings" that the Court's construction requires, are the location servers, and

maintain information associated with the identifier strings. Ex. K54, ¶ 82 (2023-07-06 EX. E to

Opening Expert Report of Goodrich) (citing Ex. K39 at 137:21–138:12 (2020-01-29 Sorenson

Dep. Tr.) (describing communications between ██████████████████████, 194:19–

195:8 (same); Ex. K106 at AMZ_KOVE_000007031 (AMZ_KOVE_000007001) ("To write an

item to the table, DynamoDB uses the ███████████████████████████████

████████████████████████████████████████████████████████████

██████████."); Ex. K106 at AMZ_KOVE_000007031 (AMZ_KOVE_000007001) ("To read an item

from the table, you must specify the ███████████████████████. DynamoDB uses this ████

█████████████████████████████████████████████████████████████████ .”));

52.    Items in DDB that have the ████████ are stored in the ████████, which means that they are ████████████████ . Ex. K54, ¶ 10 (2023-07-06 EX. E to Opening Expert Report of Goodrich)  ("In a table with ████████████, '[a]ll items with the ████████████████████████████████████████ .'" (quoting Ex. K106 at AMZ_KOVE_000007016 (AMZ_KOVE_000007001)).

53.    In DDB, the ████████████████████████ and ████████████ ████████████████ . Ex. K54, ¶¶ 10, 12-14, 83, 84 (2023-07-06 EX. E to Opening Expert Report of Goodrich); Ex. K59 ¶ 225 (2023-08-18 Grama Expert Report) ("the partition IDs are associated with ████████████████ ").

54.    The parties agree that for primary keys that ████████████, the primary key ████████████ and that these primary keys (which are ████████ in these instances) ████████████████████████ Ex. K54, ¶¶ 9-10, 12-14, 83, 84 (2023-07-06 EX. E to Opening Expert Report of Goodrich); Ex. K58 at 167:22-170:21 (2023-09-05 Grama Dep. Tr.) ("So the primary key is a ████████████ the table in DynamoDB. It may be a key that is supplied, or it may be a ████████████ . And a ████████████████████ . And the idea here is that the primary key goes through a ████████████████████"); Ex. K59 ¶ 225 (2023-08-18 Grama Expert Report) ("the partition IDs are associated with ████████████ on the ████ "); Ex. K58 at 167:22-170:21 (2023-09-05 Grama Dep. Tr.).

55.    Dr. Goodrich explains why the person of ordinary skill in the art would view ████████████ as storing these primary keys (which are the identifiers). Ex. K54, ¶¶ 82-83 (2023-07-06 EX. E to Opening Expert Report of Goodrich) ("The person of ordinary skill in the art would

understand that a ▮▮▮▮▮ primary key is ▮▮▮▮▮▮▮ the primary key. The ▮▮▮▮▮ primary key determines ▮▮▮▮▮ in which an item's data is stored.")).

**Willfulness**

56.     On August 24, 2011, the Patent Office issued a Non-Final Office Action rejecting each of the 37 pending claims in Amazon patent application No. 13/042,301 ("the '301 application") as anticipated by Kove's '978 patent. Ex. K90 (ATI_KOVE_0000255 at ATI_KOVE_0000347-348). In explaining why Amazon's claims were anticipated, the Patent Office cited and quoted the following language from the '978 patent in connection with each of the claims set out in the '301 application:

- "NDTP and its associated servers maintain a mapping between identifiers and locations ... NDTP may be viewed in this respect as fully generalized name service suitable for any kind of service and not restricted to a specialized service" *Id.* at ATI_KOVE_0000348-49 (quoting '978 patent at 23:60-24:10) (ellipses preserved).

- "receiving a location query from a client requesting the location of data relevant to an entity identified in the query" *Id.* at ATI_KOVE_0000349 (quoting '978 patent at 2:42-44)

- "each operation within NDTP consists of a request message from an NDTP client to an NDTP server" *Id.* (quoting '978 patent at 7:55-61).

- "Sends a redirect message ... comprising a list of location servers containing information relevant to the entity identified in the query" *Id.* (quoting '978 patent at 2:47-52).

*Id.* at ATI_KOVE_0000348-357 (repeating the above-quoted language to support rejection of each independent claim, and incorporating the above-quoted language through reference to support rejection of each dependent claim). Amazon engineer Swami Sivasubramanian was the first-named inventor on the '301 patent application, and signed the application to confirm that all

statements contained in the application were true and accurate. *Id.* at ATI_KOVE_0000255 (listing Sivasubramanian as an applicant), ATI_KOVE_0000319.

57. On February 24, 2012, Amazon responded to the Patent Office's initial rejection of the '301 patent application by cancelling 21 of the rejected claims. *Id.* at ATI_KOVE_0000417, 424. Amazon attempted to distinguish the remaining claims from the '978 patent. *Id.* at ATI_KOVE_0000417-424. In presenting its argument, Amazon stated: "Applicants have evaluated the portions of Overton cited in the Office Action, and indeed the entirety of Overton . . . ." *Id.* at ATI_KOVE_0000417. Amazon further stated:

> The system and method of Overton utilizes a network distributed tracking protocol (NDTP), which is a transfer protocol, that has "the capability to manipulate location information used to efficiently track the location of information associated with an individual entity in the distributed database system." *Id.* at Col. 4, lines 20-25. A NDTP server is a server configured to determine where data associated with a particular entity is located, and thus "maintains a set of identifier/location mappings that are modified or returned in response to NDTP request messages from clients." *Id.* at Col. 4, lines 34-38 and Col. 5, lines 37-40. The locations "may be address information for the application server(s) containing information relevant to the identifier or address information for the application server(s) through which data relevant to the identifier may be accessed." *Id.* at Col. 4, lines 55-61. Overton discloses that each individual identifier and location may generally be "definable using any format, size, encoding, etc. *Id.* at Col. 24, line 65 - Col. 25, line 3.

*Id.* at ATI_KOVE_0000417-18 (internal citations and quotation marks in original). Amazon's response included that language three times—once for each of the three independent claims it continued to pursue. *Id.* at ATI_KOVE_0000417-423 (using the above language in connection with independent claims 34, 40, and 57).

58. Over the years and throughout the infringement period, Amazon has cited Kove's '978 patent to the Patent Office in connection with at least 202 patent applications, and has cited Kove's '170 patent at least 205 times. Kove Resp. to AWS SMF ¶ 98; Ex. K23 at 29-53 (listing Amazon patents that cite the '978 patent and '170 patent, respectively). In total, Amazon has cited

the Kove patents at least 407 times. Ex. K23 at 29-53. The '978 patent on its face claims priority to the application that issued as the '640 patent. Ex. K5 ('978 patent) at 1. The application that issued as the '170 patent also includes on its face a claim of priority to the application that issued as Kove's '640 patent. Ex. K6 ('170 patent) at 1. On March 22, 2012, the Patent Office cited Kove's '170 patent application (Application No. US-2007/0011267) in a Notice of References attached to a Notice of Allowance for an Amazon patent. Ex. K159 at 1, 9.

59.     Amazon applies for ███████████████████████████████████

████████     Ex. K35 at 81:2-82:22, 303:18-304:13 (2023-05-11 Sivasubramanian Dep. Tr.); Ex. K165 at 277:3-278:9 (2023-05-05 Rath Dep. Tr.).

60.     In ████████, Amazon decided to build DynamoDB. Ex. K88 (AMZ_KOVE_000525421) at 1-2; Ex. K80 (AMZ_KOVE_000445727) at 1-3 (announcing decision to build "a new service"), and was preparing for a "beta" launch of DynamoDB as early as ████████ Ex. K163 (AMZ_KOVE_000449719) (referencing "private beta"). ███████████

██████████████████████████████████████████████████████████ Ex. K84 (AMZ_KOVE_000498624). In that role, Dr. Sivasubramanian "managed the development" of DynamoDB, led the DynamoDB engineering team, and was responsible for ████████████████████████████████████████ Ex. K34 at 47:19-50:16 (2023-05-10 Sivasubramanian Dep. Tr.); Ex. K164 at 3 (AMZ_KOVE_000522158) (Dr. Sivasubramanian explaining that ████████████████████████████████████

██████████████████████████████████████████████████████████ ████.

61.     Amazon considers itself "one of the world's largest patent holders." AWS SMF ¶ 97. Amazon employs sophisticated counsel to prosecute patents, analyze asserted patents, and

defend against infringement allegations.  Ex. K33 at 439:19-440:3 (4-24-23 Hayden Dep. Tr.)

████████████████████████████████████████████████████████████

████████████, 321:4-6 (Amazon has ██████ ███████ ██████); Ex. K90

(ATI_KOVE_0000255) at 338 (showing AWS retained Knobbe, Martens, Olson & Bear, LLP to

represent it in the patent office; Dkts. 21-23 (AWS represented by Jenner & Block LLP); Dkts.

243-44 (AWS represented by Fisch Sigler LLP).  When describing Amazon's approach to

intellectual property investigation, Scott Hayden, Amazon's Vice President of Intellectual

Property and corporate designee on Amazon's intellectual property policies testified as follows:

> Kove Atty:  What's Amazon's process for determining whether it infringes on an
> asserted patent?

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████

. . .

> Kove Atty [reading Hayden's prior trial testimony in *Vocalife, LLC, vs.
> Amazon.com, Inc.*, an unrelated patent case into the record]:
> And could you explain a little more specifically how Amazon would
> determine what the value of a particular patent is to what Amazon wants to
> do?

> Hayden [reading his prior testimony into the record]:
> If the -- their patent is valid, enforceable, and -- we would look at the claims
> that determine the actual coverage and the relevance of the patent to what
> we are doing. If it is something that is a small piece that doesn't make any
> difference, we could use that or an alternative, then, obviously, it's going to
> be worth a lot less.  If it is on something that is the -- essential piece of that,
> then it could be worth more. But all those things still get to the point of
> being reasonable from the standpoint.

> There are people in the past -- We've had people in the past that have
> demanded, you know, one – one company came in and said, you know,
> when I first started, that they wanted 5 percent of our gross revenues.
> Unfortunately we didn't make 5 percent at the time.

> So that was one where we would say, well, our best answer is that there is

> just so -- just turn the feature off and we won't do it. And so that's always an alternative that say if we can't come to reasonable terms, then we'll stop doing things.

Ex. K33 at 396:6-400:4 (4/24/23 Hayden Dep. Tr.) (cleaned up to omit objections and reporter interruptions). Amazon investigations are ███████████████████████████████████ ; Amazon has ██████████████████████████████████████████████████ █████████████████████████████████████████ *Id.* at 400:22-401:1, 402:18-403:6. Hayden testified:

Kove Atty: ████████████████████████████████████
███████████████████████

Hayden: ███

...
Kove Atty: ███████████████████████████████

████████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████

*Id.* at 400:22-401:1, 402:18-403:6 (cleaned up to omit objections). Hayden further testified that it is ███████████████████████████████████████████████████████ ██████ *Id.* at 412:17-413:1. Hayden identified S3's and DynamoDB's scalability features as the ████████████████████████████████████████████████████████ .

Ex. K33 at 413:3-414:13 (2023-04-24 Hayden Dep. Tr.); Ex. K52 (Opening Expert Report of Michael Goodrich, dated July 6, 2023) ¶¶ 196, 199-200, 253-258 (S3 and DynamoDB not technically acceptable without scalability feature).

62. ████████████████████████████████████████
████████████████████████████████████ Ex. K33 at 417:23-

418:13 (2023-04-24 Hayden Dep. Tr.); Ex. 38 at 118:16-120:3, 120:22-121:8 (2023-05-23 Vermeulen Dep. Tr.); Ex. K34 at 72:4-20, 74:13-75:8 (2023-05-10 Sivasubramanian Dep. Tr.). Amazon engineers █████████████████████████████████████████████████████████ ████████████████████████████████ Ex. K38 at 118:16-120:3, 120:22-121:8 (2023-05-23 Vermeulen Dep. Tr.); Ex. K34 at 72:4-20, 74:13-75:8, 77:6-13 (Sivasubramanian Tr.); Ex. K165 at 275:23-276:14 (2023-05-05 Rath Dep. Tr.); Ex. K166 at 290:11-291:4 (2023-02-21 Henry Dep. Tr.). On this issue, Amazon engineer Allan Vermeulen testified as follows:

Kove Atty: ████████████████████████████████████████████████████████████
████████████████████████████████████████████████

Vermeulen: ████████████████████████████████████████████████████████████
███████████████████████████████████████████

Kove Atty: ██████████

...

Vermeulen: ████████████████████████████████████████████████████████████
███████████

...

Kove Atty: ████████████████████████████████████████████████████████████
██████████████

Vermeulen: ███████████████████████████

Kove Atty: ████████████████████████████████████

Vermeulen: ██████████████████████████████████████████████████████
███████████████████

Ex. K38 at 118:16-121:8 (2023-05-23 Vermeulen Dep. Tr.).

63.     Amazon engineer Swami Sivasubramanian has more than 250 patents, Ex. K34 at 79:22-80:11 (2023-05-10 Sivasubramanian Dep. Tr.), ████████████████████████████████

██████, Ex. K34 at 66:18-71:1 (2023-05-10 Sivasubramanian Dep. Tr.) █████████████

███████████████████████████"). ██████████████████████████████████

████████████████████████████ When asked "Do you understand that it's wrong to

infringe a patent," Dr. Sivasubramanian was ███████████████████



*Id.* Alyssa Henry, the former General Manager of S3, Ex. K166 at 18:18-19:3 (2023-02-21 Henry

Dep. Tr.), ████████████████████████████████████████ She

stated:

> Q: Would you agree that it would not be okay for a big company to use a small
> company's patents without permission?
>
> A: I don't know.
>
> Q: You don't know if it would be okay for a company to infringe a patent?
>
> A: I'm not a lawyer.
>
> Q: Do you think you need to be a lawyer to know whether infringement is okay?
>
> A: I don't know.
>
> Q: Why not?
>
> A: I'm not a lawyer.
>
> ...
>
> Q: Do you think it's wrong to steal intellectual property?
>
> A: I don't know.

Ex. K166 at 289:21-290:12, 292:9-11 (2023-02-21 Henry Dep. Tr.); *see also* 294:4-18, 295:23-25

(expressing indifference to patent infringement and intellectual property violations).

64.     Amazon has a ███████████████████████████████

████████████████████████████████████████████████████████

████████████████     Ex. K35 at 298:7-302:9 (2023-05-11 Sivasubramanian Dep. Tr.) ("Q:

███████████████████████████████████████████; Ex. K165 at 277:3-278:9 (2023-

05-05 Rath Dep. Tr.); Ex. K33 at 343:2-344:18 (2023-04-24 Hayden Dep. Tr.) ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████     Hayden further testified that

AWS ██████████████████████████████████████████     Ex.

K33 at 344:4-344:18 (2023-04-24 Hayden Dep. Tr.) ████████████████████████

███████████████████████████████████████████████

65.     AWS's expert opines that a single programmer could have designed around Kove's

patents in 25 days, presumably at any time.  Ex. K58 at 277:11-14 (9/5/23 Grama Tr.).  ████████

████████████████████████████████     Ex. K33 at 394:7-21 (4/24/23 Hayden Tr.); Ex.

K165 at 261:9-18, 266:1-25 (2023-05-05 Rath Dep. Tr.).

Dated: November 6, 2023

Respectfully submitted,

*/s/ Courtland L. Reichman*

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 560-3501

Christine E. Lehman *(pro hac vice)*
clehman@reichmanjorgensen.com
Adam Adler *(pro hac vice)*
aadler@reichmanjorgensen.com
Philip Eklem *(pro hac vice)*
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Taylor Mauze *(pro hac vice)*
tmauze@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
901 S. Mopac Expressway, Bldg. 1, Suite 300
Austin, TX 78746
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5000

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard *(pro hac vice)*
sballard@reichmanjorgensen.com
Gina H. Cremona *(pro hac vice)*
gcremona@reichmanjorgensen.com
Navid Bayar *(pro hac vice)*
nbayar@reichmanjorgensen.com
Savannah Carnes *(pro hac vice)*
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

***ATTORNEYS FOR PLAINTIFF
KOVE IO, INC.***

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of November, 2023, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Courtland L. Reichman*
Courtland L. Reichman