**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Hon. Matthew F. Kennelly |
| v. | Jury Trial Demanded |
| Amazon Web Services, Inc., | |
| Defendant. | |

**PLAINTIFF KOVE IO, INC.'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF
PLAINTIFF'S CROSS MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE**

Under Federal Rule of Civil Procedure 56 and Local Rule 56.1(a)(2), Plaintiff Kove IO, Inc. ("Kove") submits the following Statement of Material Facts in support of Kove's Cross Motions for Summary Judgment and To Exclude.

**Patent Eligibility Under § 101**

1.      AWS intends to maintain its § 101 defense (among others), stating that it believed the occurrence of events following the Court's Order "may impact that defense, including at least for the reasons detailed in Mr. Greene's expert report," citing ¶¶ 261-278 of Mr. Greene's July 3, 2023 Expert Report.  Ex. K162 (Gina Cremona to Bill Sigler dated September 13, 2023); Ex.K29 (Bill Sigler to Gina Cremona dated September 22, 2023).

2.      Mr. Greene alleges that claim 17 of the '978 patent "describes generalized location services . . . and transport protocols . . . .."  and based on this he opines that the "asserted claims consist of generalized steps performed on generic and conventional computers."  Ex. K42 at ¶ 263

(Expert Report of Joseph B. Greene, dated July 3, 2023).

3.      When discussing the term "identifiers" in claim 17 of the '978 patent, Mr. Greene opines that using "'identifiers' to store and locate resources can be implemented in other mediums" such as "a library's card catalogue with identifiers for authors and shelving location."  Ex. K42 at ¶ 267 (Expert Report of Joseph B. Greene, dated July 3, 2023).

4.      Mr. Greene analogizes receiving and storing location information based on "'predetermined' 'criterion'" to moving files in a filing cabinet.  Ex. K42 at ¶ 266 (Expert Report of Joseph B. Greene, dated July 3, 2023).

5.      Mr. Greene provides the following example when describing the "redirect message" in the '640 patent: ". . . looking again at a library catalogue, if a given item's location isn't written on a particular card, there would likely be information guiding the reader to another card to inspect."  Ex. K42 ¶ 272 (Expert Report of Joseph B. Greene, dated July 3, 2023).

6.      Mr. Greene cites deposition testimony from John Overton to argue that the claim limitations are "routine, well-understood, and conventional limitations," and cites statements made in Patent Office proceedings to argue that "any claimed server architecture by Kove can't be the inventive concept necessary to overcome the second step of a 35 U.S.C. § 101 analysis."  Ex. K42 ¶¶ 276-277 (Expert Report of Joseph B. Greene, dated July 3, 2023).

7.      In his patent eligibility analysis, Mr. Greene only discusses in detail claim 17 of the '978 patent, claim 1 of the '170 patent, and claim 18 of the '640 patent.  Ex. K42 ¶¶ 263, 268, 271 (Expert Report of Joseph B. Greene, dated July 3, 2023).

8.      Claim 17 of the '640 patent, claims 10 and 14 of the '978 patent, and claims 6 and 15 of the '170 patent include a "redirect message" from one data server that permits the client to determine the location of a different data location server, when a location server fails to include

the location information for the requested data. Ex. K4 ('640 patent, 22:30-40); Ex. K5 ('978 patent, 26:36-46, 27:4-8); Ex. K6 ('170 patent, 21:51-56, 22:44-48).

## AWS's Affirmative Defenses

9.      AWS's answer identifies waiver and equitable estoppel as affirmative defenses. Dkt. 129 at 40-42. In support, AWS relies on the facts that Kove's patents issued as early as 2006 (Ex. K36 at 113:2-22 (5/16/2023 Overton Tr.)); that Dr. Overton (an inventor and Kove's CEO) became generally aware of the accused products around the time they publicly launched in 2006 and 2012 (Ex. K23 at 28 (Kove's Seventh O&R to AWS's First Set of Rogs)); and that this lawsuit was filed in 2018 (Dkt. 1).

10.      AWS's corporate designee could not identify any additional facts supporting its defense. Ex. K33 at 308:18-22, 309:20-310:12, 311:1-12 (4/24/2023 Hayden Tr.) (identifying only the "period of time from when Kove obtained the patents until they . . . actually filed the litigation" and nothing else). AWS did not identify waiver or equitable estoppel in its interrogatory response on affirmative defenses. Ex. K21 at 4-17 (4/13/23 AWS's Third Supplemental O&R) (no waiver or equitable estoppel).

11.      AWS also contends that the patents' inventors intentionally withheld an invalidating piece of prior art from the patent examiner during prosecution. Ex. K21 at 6-9 (4/13/23 AWS's Third Supplemental O&R) (describing inequitable conduct defense and identifying the "Karger '97" article, written by David Karger and other MIT researchers in 1997); Ex. K62 (AMZ_KOVE_000062042) ("Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web"). AWS's corporate designee could not identify any facts supporting its defense. Ex. K33 at 311:20-24 (4/24/2023 Hayden Tr.) ("Q. And does AWS have any facts to share that would support or provide a basis for its unclean

3

hands defense?" "A. I don't know.").

12.     AWS never asked the inventors (Drs. Overton and Bailey) if they intended to deceive the Patent Office, and AWS never deposed the law firm that prosecuted the patents.  Ex. K24 at 3 (11/9/2021 L. Phillips Ltr to M. Marvin) (AWS served a Rule 45 deposition notice, but no deposition was scheduled).

13.     Dr. Bailey testified that he understood he had an obligation to disclose material prior art to the Patent Office during prosecution, and that he did indeed disclose such prior art.  Ex. K31 at 158:4-13 (10/9/2020 Bailey Tr.).

14.     Dr. Overton similarly testified that he understood his duty to disclose, and when asked if he disclosed Karger '97 to the Patent Office, replied "I don't know why I would have. This is very different."  Ex. K37 at 717:15-20, 722:1-21 (5/17/2023 Overton Tr.).

**Double Patenting**

15.     AWS alleges that claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 patent are invalid for obviousness-type double-patenting.   Ex. K42 ¶ 279 (2023-07-03 Greene Expert Invalidity Report).

16.     AWS intends to pursue its double patenting defense at trial.  Ex. K28 (Gina Cremona to Bill Sigler dated September 13, 2023); Ex. K29 (Bill Sigler to Gina Cremona dated September 22, 2023).

17.     Mr. Greene's discussion of double patenting includes claim construction and general statements about inventive concept and disclosures in patent applications, Ex. K42 ¶¶ 284-285, 288-289 (2023-07-03 Greene Expert Invalidity Report).

18.     Mr. Greene states the following opinion:

Further, there are no material differences between remaining portions of the Asserted Claims of the '978 Patent and the claims in the '640 and '170 Patents. Attached as

Appendix E, I provide a comparison table between the '978 Patent claims and the disclosures and claims of the '640 and '170 Patents. As shown in Appendix E tables, each and every claim limitation in the asserted '978 Patent claims is explicitly disclosed by the '640 Patent and '170 Patent.

Ex. K42 ¶¶ 287-288 (2023-07-03 Greene Expert Invalidity Report).

19.     The charts in Appendix E include a column of claim limitations of the '978 Patent and a corresponding column with portions of claims and parts of the specification to the '640 and '170 Patents with a color-coding scheme. Ex. K9 at 1-12 (Greene, Appendix E-1); Ex. K10 (Greene, Appendix E).

20.     Claim 17 includes a transfer mechanism between a "first location server" and a "second location server," where a portion of the identifiers and associated locations is transferred to the second data location server when a performance criterion of the first location server reaches a predetermined performance limit. Ex. K9 at 10-11 (Greene, Appendix E-1); Ex. K10 at 10-11 (Greene, Appendix E); Ex. K5 ('978 patent, 1:37-43, 2:1-10).

21.     The Appendix E-1 and Appendix E charts identify portions of the '170 and '640 patent specifications for certain limitations, for example for claim limitation 17.e of the '978 patent, portions of the '640 and '170 patent specifications that discusses the Transmission Control Protocol ("TCP") are cited. Ex. K9 at 10-11 (Greene, Appendix E-1); Ex. K10 at 10-11 (Greene, Appendix E).

22.     Mr. Greene states the following opinion:

And as I explained above, the three patents cover the same inventive concept: a distributed data storage system that can be used on a large scale cloud computing. And as seen in Kove's responses in the *ex parte* reexaminations, Kove employs nearly the same language when describing the overview of the technology and patents at issue. As such, it is my opinion that the Asserted Claims of the '978 Patent are invalid based on obviousness double-type patenting in light of the disclosures and claims of the '640 Patent and '170 Patent. Further, Kove also contends that certain of the Asserted Claims of the '978 Patent are wholly disclosed by the '640 Patent application. Kove has taken the position that at least claims 3, 6, 10, and 14 of the '978 Patent were "constructively reduced . . . to practice at least as early as September 13, 2000, based on the filing of U.S. App. No. 09/661,222,

which became the '640 patent" and that "the '222 application provide written description and enablement support for [the asserted '978 Patent] claim element[s] pursuant to 35 U.S.C. § 112, as they convey with reasonable clarity to those skilled in the art that the inventors were in possession of the invention and contain sufficient information to enable one skilled in the art to make and use the invention without undue experimentation." As such, at least claims 3, 6, 10, and 14 are invalid based on obviousness double-patenting based on the '640 patent application.

Ex. K42 at ¶¶ 288-289 (2023-07-03 Greene Expert Invalidity Report).

23. The Court construed "location information" in the '978 patent as "one or more identifiers and their associated locations" and in the '640 and '170 patents as "information pertaining to one or more locations of data and/or the identifies of one or more location servers." Dkt. 484 at 12-19.

### **Invalidity for Non-qualifying Prior Art**

24. Kove's Asserted Claims are entitled to the following undisputed priority dates.

| Asserted Patent | Asserted Claims | Priority Date |
|---|---|---|
| 7,103,640 | 17, 18, 24 | October 28, 1999 |
| 7,233,978 | 3, 6, 10, 14 | October 28, 1999 |
| 7,233,978 | 17, 23, 24, 30 | June 2, 2000 |
| 7,814,170 | 1, 2, 6, 8, 12, 15 | October 28, 1999 |

Ex. K52 at ¶ 24 (2023-07-06 Corrected Opening Expert Report of Goodrich); Ex. K55 (Ex. F to Opening Expert Report of Goodrich) (Goodrich's opinions demonstrating that each asserted claim is entitled to its respective priority date); Ex. K42 at ¶¶ 61-62 (2023-07-03 Greene Expert Invalidity Report) (not disputing Kove's October 28, 1999 and June 2, 2000 priority dates); Ex. K40 (Greene deposition document) (notes that Joseph Green brought to his deposition, which summarize his opinions about priority dates); Ex. K41 at 67:14-70:17 (2023-08-29 Greene Dep. Tr.) (Green testifying about the notes he brought to his deposition).

25. AWS's Fourth Amended Final Unenforceability and Invalidity Contentions ("AWS 4th AFUIC") applied the Court's claim constructions, while AWS's Fifth Amended Final Unenforceability and Invalidity Contentions ("AWS 5th AFUIC") applied its new proposed claim

constructions and are operative only if the Court adopts AWS's new claim constructions; otherwise, AWS relies on its 4th AFUIC. Dkt. 512 (granting motion for leave to amend), 617 (granting motion for leave to amend), 579 (denying motion for additional claim construction briefing without prejudice to presenting arguments in summary judgment motion); Ex. K25 (2023-03-13 email from K. Fung to J. Cardenas-Navia).

26.     Collectively, AWS's AFUICs assert 14 invalidity "references" (some of which actually consist of multiple references) as prior art, including, as relevant here: (1) DNS (BIND 8.1) system; (2) Cache Resolver system; (3) Boukobza; (4) Karger '618; (5) Karger '420; and (6) Steen. Ex. K11 at 8-12 (2022-03-07 AWS 4th AFUIC); Ex. K18 at 9-13 (2023-03-02 AWS 5th AFUIC).

27.     On July 3, 2023, AWS served the expert report of Joseph Greene on invalidity, Ex. K42 (2023-07-03 Greene Expert Invalidity Report), which includes Appendices C and D that detail the alleged grounds of invalidity for each claim over asserted references and copies (verbatim) AWS's 4th AFUIC and 5th AFUIC, respectively, without providing any invalidity opinions beyond what are in AWS's AFUICs, making them and Greene's report the full universe of prior art-based invalidity positions AWS may make at trial. *E.g.*, *compare* Ex. K43 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K12 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); *compare* Ex. K44 (2023-07-03 Ex. 1b to Appx. C of Greene Expert Invalidity Report) *with* Ex. K13 (2022-03-07 Exhibit 1b to AWS 4th AFUIC); *compare* Ex. K45 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K14 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); *compare* Ex. K46 (2023-07-03 Ex. 2b to Appx. C of Greene Expert Invalidity Report) *with* Ex. K15 (2022-03-07 Exhibit 2b to AWS 4th AFUIC); *compare* Ex. K47 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K16 (2022-03-07 Exhibit 3a to AWS 4th

AFUIC); *compare* Ex. K48 (2023-07-03 Ex. 3b to Appx. C of Greene Expert Invalidity Report) *with* Ex. K17 (2022-03-07 Exhibit 3b to AWS 4th AFUIC); *compare* Ex. K49 (2023-07-03 Ex. 3d to Appx. D of Greene Expert Invalidity Report) *with* Ex. K19 (2023-03-02 Exhibit 3D to AWS 5th AFUIC).

28.     AWS's invalidity evidence comes through its expert, Joseph Greene, who opines that the asserted claims are invalid over certain references, including the "DNS System (BIND 8.1)," the "Cache Resolver system," Boukobza, Karger '618, Karger '420, and Steen.  *See, e.g.*, Ex. K42 ¶¶ 176, 204 , 220, 223, 229 (2023-07-03 Greene Expert Invalidity Report; Ex. K43 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report); Ex. K44 (2023-07-03 Ex. 1b to Appx. C of Greene Expert Invalidity Report); Ex. K45 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report); Ex. K46 (2023-07-03 Ex. 2b to Appx. C of Greene Expert Invalidity Report); Ex. K47 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report); Ex. K48 (2023-07-03 Ex. 3b to Appx. C of Greene Expert Invalidity Report); Ex. K49 (2023-07-03 Ex. 3d to Appx. D of Greene Expert Invalidity Report).

29.     DNS stands for "Domain Name System" and is, at a general level, a distributed naming framework for internet resources.  Ex. K56 ¶ 72 (2023-08-18 Rebuttal Expert Report of Michael Goodrich) (citing Ex. K102 (RFC 1034) at 6-7) ("At a general level, DNS is a distributed naming system for internet resources in which domain name data is stored on a plurality of 'name' servers.").  Ex. K42 ¶ 30 (2023-07-03 Greene Expert Invalidity Report) ("The Domain Name System ("DNS") is a naming system for computers, services, and other Internet resources and IP networks.").

30.     DNS has been implemented in varied ways through different software implementations, such as the Berkeley Internet Name Domain (BIND) implementation.  Ex. K56

¶ 77 (2023-08-18 Rebuttal Expert Report of Michael Goodrich) (citing Ex. K98 at xi (DNS and BIND) (BIND – which stands for Berkeley Internet Name Domain Software – is one implementation of the DNS specifications.).

31.     The BIND software has many versions, including BIND 4, BIND 8, BIND 9, BIND 10, and subversions thereof (e.g., BIND 4.8.3, 4.9.1, 4.9.2, 8.1.2, etc.).  Ex. K11 at 6 (2022-03-07 AWS 4th AFUIC) ("The Computer Systems Research Group at Berkeley released BIND versions up to version 4.8.3. Digital Equipment Corporation released versions 4.9 and 4.9.1 and Vixie Enterprises released version 4.9.2. Since then, the Internet Software Consortium (ISC) has released versions from 4.9.3 onward.  In May 1997, ISC released the first version of BIND 8."); Ex. K18 at 7 (2023-03-02 AWS 5th AFUIC) (similar); Ex. K98 at xi (DNS and BIND) ("This book deals with the new 8.1.2 version of BIND as well as the older 4.9 versions. … We will also occasionally mention other versions of BIND, especially 4.8.3, because many venders continue to ship code based on this older software as part of their UNIX products."); Ex. K105 ¶¶ 5, 8 (Vixie Declaration) (describing FTP location of BIND software versions); Ex. K97 ¶¶ 8, 11 (Carolina Declaration) (similar); Ex. K100 (ISC FTP Index (Main)) (FTP index shows that the FTP includes versions of BIND 4, 8, 9, and 10).

32.     AWS alleges that one particular implementation – namely, BIND 8.1 – is a prior art system that anticipates and (in combination with other references) renders obvious the Asserted Claims.  Ex. K11 at 5 (2022-03-07 AWS 4th AFUIC) ("AWS contends that BIND 8.1, a prior art Domain Name System (DNS) implementation anticipates and/or renders obvious claims of the Asserted Patents, as described herein."); Ex. K12 at 1 (2022-03-07 Exhibit 1a to AWS 4th AFUIC) (identifying "the BIND 8.1 version of DNS"); Ex. K42 ¶ 220 (2023-07-03 Greene Expert Invalidity Report) (identifying "[t]he DNS system (BIND version 8.1)" as an asserted reference);

9

Ex. K43 at 1 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report) (identifying "the BIND 8.1 version of DNS").

33.     BIND 8.1 is software embodied in source code.     Ex. K105 ¶¶ 5, 8 (Vixie Declaration) (describing BIND source code FTP); Ex. K97 ¶¶ 8, 11 (Carolina Declaration) (same). Ex. K11 at 6 (2022-03-07 AWS 4th AFUIC) ("BIND 8.1, a version of DNS and available as of May 1997, is a prior art DNS system that anticipates and/or renders obvious claims of the Asserted Patents,     as     described     herein.     BIND     8.1     can     be     found     at ftp://ftp.isc.org/isc/bind8/src/DEPRECATED/8.1/bindsrc.tar.gz and has already been produced.").

34.     According to declarations provided by AWS of individuals who maintained the BIND 8.1 source code (and other versions of BIND) on the internet, BIND 8.1 was first publicly available in May 1997.  Ex. K105 ¶ 8 (Vixie Declaration) (stating that "the finalized and stable source code of BIND 8.1 was created on May 6, 1997"); Ex. K97 ¶ 11 (Carolina Declaration) (similar).  Ex. K99 (ISC FTP Index (BIND 8.1)) (indicating the "Last modified" date of BIND 8.1 source code at https://ftp.isc.org/isc/bind8/src/DEPRECATED/8.1/ is May 6, 1997).

35.     AWS's contentions identified the website from which the May 1997 BIND 8.1 source code could be downloaded, but AWS never relied on the BIND 8.1 source code in its invalidity contentions.  Ex. K11 at 6 (2022-03-07 AWS 4th AFUIC); *see*, *e.g.*, Ex. K12 (2022-03-07 Exhibit 1a to AWS 4th AFUIC) (not citing source code); Ex. K14 (2022-03-07 Exhibit 2a to AWS 4th AFUIC) (not citing source code); Ex. K16 (2022-03-07 Exhibit 3a to AWS 4th AFUIC) (not citing source code).

36.     Rather than rely on BIND 8.1 source code, AWS relied exclusively on four documents, which it characterized as having "additional information describing this DNS system": a book called "DNS and BIND," a document called "RFC 1034," and two papers, one authored by

"Sherman" and another by "Karger and Sherman." *See*, *e.g.*, Ex. K12 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); Ex. K14 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); Ex. K16 (2022-03-07 Exhibit 3a to AWS 4th AFUIC).

37.    AWS's invalidity contentions allege invalidity based on "the BIND 8.1 version of DNS, the operation of which is described in BIND and DNS, RFC 1034, Sherman, and Karger/Sherman." Ex. K12 at 1 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); Ex. K14 at 1 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); Ex. K16 at 1 (2022-03-07 Exhibit 3a to AWS 4th AFUIC).

38.    AWS's expert, Greene, opines that the May 1997 BIND 8.1 software version of DNS anticipates or helps render obvious certain asserted claims. Ex. K42 ¶ 220 (2023-07-03 Greene Expert Invalidity Report).

39.    Greene's substantive invalidity opinions did not rely on the BIND 8.1 software itself and instead relied exclusively on a the "DNS & BIND" book, RFC 1034, Sherman, and Karger/Sherman. *See*, *e.g.*, Ex. K43 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report) (not citing source code); Ex. K45 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report) (not citing source code); Ex. K47 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report) (not citing to source code).

40.    Greene copied (verbatim) claim chart analyses from AWS's final contentions into his expert report, which cite only to RFC 1034, DNS and BIND, and the Sherman and Karger/Sherman papers. *E.g.*, *compare* Ex. K43 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K12 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); *compare* Ex. K44 (2023-07-03 Ex. 1b to Appx. C of Greene Expert Invalidity Report) *with* Ex. K13 (2022-03-07 Exhibit 1b to AWS 4th AFUIC); *compare* Ex. K45 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K14 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); *compare* Ex.

K46 (2023-07-03 Ex. 2b to Appx. C of Greene Expert Invalidity Report) *with* Ex. K15 (2022-03-07 Exhibit 2b to AWS 4th AFUIC); *compare* Ex. K47 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K16 (2022-03-07 Exhibit 3a to AWS 4th AFUIC); *compare* Ex. K48 (2023-07-03 Ex. 3b to Appx. C of Greene Expert Invalidity Report) *with* Ex. K17 (2022-03-07 Exhibit 3b to AWS 4th AFUIC).

41.     Greene's expert report includes the same contention (without any elaboration) from AWS's invalidity contentions that "the operation of [the BIND 8.1 version of DNS] is described in" RFC 1034, DNS and BIND, and the Sherman and Karger/Sherman papers.  *E.g.*, *compare* Ex. K43 at 1 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K12 at 1 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); *compare* Ex. K45 at 1 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K14 at 1 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); *compare* Ex. K47 at 1 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K16 at 1 (2022-03-07 Exhibit 3a to AWS 4th AFUIC).

42.     Greene alleges (as AWS did in its contentions) that "DNS qualifies as prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it was publicly available in May 1997, more than a year before Kove's October 28, 1999 claimed priority date…."  Ex. K43 at 1 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report); Ex. K12 at 1 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report); Ex. K47 at 1 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report); Ex. K12 at 1 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); Ex. K14 at 1 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); Ex. K16 at 1 (2022-03-07 Exhibit 3a to AWS 4th AFUIC).

43.     AWS contends (and Greene repeats) that RFC 1034, DNS and BIND, Sherman, and Karger/Sherman "describe" the "operation of" BIND 8.1, but neither provides any analysis of

the differences (or similarities) between the actual BIND 8.1 system and the documents themselves. *E.g.*, *compare* Ex. K43 at 1 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K12 at 1 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); *compare* Ex. K45 at 1 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K14 at 1 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); *compare* Ex. K47 at 1 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K16 at 1 (2022-03-07 Exhibit 3a to AWS 4th AFUIC).

44.     The "DNS and BIND" book, was written by Paul Albitz and Cricket Liu, neither of whom are the authors of BIND 8.1 or have been shown to be involved with its development. Ex. K98 (DNS and BIND) at AMZ_KOVE_000081149 (front cover), AMZ_KOVE_000081655 (back cover).

45.     The version of the DNS and BIND book that AWS relies on bears a publication date of September 1998, which post-dates the May 1997 BIND 8.1 version by over a year.  Ex. K98 (DNS and BIND) at AMZ_KOVE_000081152.

46.     DNS and BIND states, "This book deals with the *new 8.1.2 version of BIND* as well as the older 4.9 versions," and includes no mention of BIND 8.1 or an explanation of the differences (or similarities) between the 8.1 and 8.1.2 versions of BIND.  Ex. K98 (DNS and BIND) at AMZ_KOVE_000081159 (emphasis added).

47.     RFC 1034 is a partial list of "requests for comments" memoranda assembled by the Internet Engineering Task Force (IETF).  Ex. K42 ¶ 220 (2023-07-03 Greene Expert Invalidity Report) ("RFC1034 is a request for comments introducing domain style names and the domain name system and was published November 1987."); Ex. K56 ¶ 66 (2023-08-18 Rebuttal Expert Report of Michael Goodrich) ("The RFC1034 reference Mr. Greene relies on is a 'Network

Working Group Request for Comments: 1034,' entitled 'DOMAIN NAMES – CONCEPTS AND FACILITIES,' dated November 1987.").

48.      RFC 1034 bears a date of November 1987 – nearly a decade before BIND 8.1 existed.  Ex. K102 at 1 (RFC 1034).

49.      AWS and Greene do not contend that the IEFT authored or was involved in the development of BIND 8.1 or provide an explanation of how RFC 1034—a document from 10 years earlier—purportedly "describes" BIND 8.1's operation.  *See* Ex. K42 ¶ 220 (2023-07-03 Greene Expert Invalidity Report); Ex. K44 at 1 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report); Ex. K45 at 1 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report); Ex. K47 at 1 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report); Ex. K12 at 1 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); Ex. K14 at 1 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); Ex. K16 at 1 (2022-03-07 Exhibit 3a to AWS 4th AFUIC).

50.      The Sherman paper bears a date of February 1999 and indicates it was authored by Alexander Sherman, and the Karger/Sherman paper bears a date of March 1999 and indicates it was authored by David Karger, Alex Sherman, and others.  Ex. K103 at 1 (Sherman); Ex. K101 at 1 (Karger-Sherman).

51.      None of the authors of Sherman or Karger/Sherman are purported to have been involved in the development of BIND 8.1   *See* Ex. K42 ¶ 220 (2023-07-03 Greene Expert Invalidity Report); Ex. K43 at 1 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report); Ex. K45 at 1 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report); Ex. K47 at 1 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report); Ex. K12 at 1 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); Ex. K14 at 1 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); Ex. K16 at 1 (2022-03-07 Exhibit 3a to AWS 4th AFUIC).

52.     Sherman says, "We use a number of DNS servers each running a copy of unmodified *BIND 8.0* distribution…. In addition to BIND, each DNS machine runs *one of our programs, called 'dnshelper,'*" and Karger/Sherman contains similar language. Ex. K103 at 37 (Sherman); Ex. K101 at 10 (Karger-Sherman).

53.     In citing to Sherman and Karger-Sherman, AWS and Greene never identify what is allegedly descriptive of the BIND 8.1 embodiment, what refers to BIND 8.0, or what is rooted in "dnshelper," which the author's claim to have created and which no one contends was part of BIND 8.1. *See* Ex. K103 at 37 (Sherman); Ex. K101 at 10 (Karger-Sherman); *see*, *e.g.*, Ex. K12 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); Ex. K14 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); Ex. K16 (2022-03-07 Exhibit 3a to AWS 4th AFUIC); Ex. K43 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report); Ex. K45 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report); Ex. K47 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report).

54.     "Cache Resolver" is described as a distributed web caching system developed at MIT. Ex. K103 at 15 (Sherman) ("Cache Resolver, the distributed web caching system that we developed, eliminates the necessity for any inter-cache communication on a cache miss by letting clients decide for themselves which cache has the required data."); Ex. K56 ¶ 82 (2023-08-18 Rebuttal Expert Report of Michael Goodrich) ("With respect to the alleged Cache Resolver System, Sherman and Karger/Sherman describe cache resolver as a web-caching system that allows for resolving URL strings.").

55.     AWS and Greene identify no actual implementation of this system, but assert that the "system" is described in the Sherman and Karger/Sherman papers. Ex. K13 at 19 (2022-03-07 Exhibit 1b to AWS 4th AFUIC); Ex. K15 at 12 (2022-03-07 Exhibit 2b to AWS 4th AFUIC);

15

Ex. K17 at 17 (2022-03-07 Exhibit 3b to AWS 4th AFUIC); Ex. K42 ¶ 229 (2023-07-03 Greene Expert Invalidity Report); Ex. K44 at 1 (2023-07-03 Ex. 1b to Appx. C of Greene Expert Invalidity Report); Ex. K46 at 1 (2023-07-03 Ex. 2b to Appx. C of Greene Expert Invalidity Report); Ex. K48 at 1 (2023-07-03 Ex. 3b to Appx. C of Greene Expert Invalidity Report).

56.     AWS and Greene also contend that "the complete features and functionality of DNS is inherent to any system using DNS, such as described in Sherman or Karger/Sherman," but do not identify which version or implementation of DNS.  Ex. K13 at 19 (2022-03-07 Exhibit 1b to AWS 4th AFUIC); Ex. K15 at 12 (2022-03-07 Exhibit 2b to AWS 4th AFUIC); Ex. K17 at 17 (2022-03-07 Exhibit 3b to AWS 4th AFUIC); Ex. K42 ¶ 229 (2023-07-03 Greene Expert Invalidity Report); Ex. K44 at 1 (2023-07-03 Ex. 1b to Appx. C of Greene Expert Invalidity Report); Ex. K46 at 1 (2023-07-03 Ex. 2b to Appx. C of Greene Expert Invalidity Report); Ex. K48 at 1 (2023-07-03 Ex. 3b to Appx. C of Greene Expert Invalidity Report).

57.     Greene uses alleged inherency as a basis to combine RFC 1034 and DNS and BIND (along with Sherman and Karger/Sherman) to find the asserted claims invalid.  *See* Ex. K44 (2023-07-03 Ex. 1b to Appx. C of Greene Expert Invalidity Report); Ex. K46 (2023-07-03 Ex. 2b to Appx. C of Greene Expert Invalidity Report); Ex. K48 (2023-07-03 Ex. 3b to Appx. C of Greene Expert Invalidity Report).

58.     RFC 1034 and DNS and BIND are distinct from the Cache Resolver papers (Sherman and Karger/Sherman) and their authorships are different from the Cache Resolver papers and from each other.  *See* Ex. K103 at 1 (Sherman); Ex. 101 at 1 (Karger-Sherman); Ex. K102 at 1 (RFC 1034); Ex. K98 (DNS and BIND) at AMZ_KOVE_000081152.

59.     AWS and Greene argue that the "cache resolver system" anticipates Kove's claims under § 102(a), (b), and/or (f), and cite in support not only to Sherman and Karger/Sherman, but

also RFC 1034 and DNS and BIND. *See* Ex. K13 (2022-03-07 Exhibit 1b to AWS 4th AFUIC); Ex. K15 (2022-03-07 Exhibit 2b to AWS 4th AFUIC); Ex. K17 (2022-03-07 Exhibit 3b to AWS 4th AFUIC); Ex. K42 ¶ 229 (2023-07-03 Greene Expert Invalidity Report); Ex. K44 (2023-07-03 Ex. 1b to Appx. C of Greene Expert Invalidity Report); Ex. K46 (2023-07-03 Ex. 2b to Appx. C of Greene Expert Invalidity Report); Ex. K48 (2023-07-03 Ex. 3b to Appx. C of Greene Expert Invalidity Report).

60.     Greene opines, without explanation or citing evidence in support, that "[a]ll of the features and functionality of DNS are inherent to . . . the use of DNS in the Cache Resolver system." Ex. K42 ¶ 230 (2023-07-03 Greene Expert Invalidity Report). Greene opines:

> All of the features and functionality of DNS are inherent to systems using DNS, such as the use of DNS in the Cache Resolver system. In particular, the Cache Resolver system uses DNS servers running BIND 8 and the program "dnshelper." The authors of these papers used the Cache Resolver system. The Cache Resolver system describes how consistent hashing is used to help reduce the amount of inter-cache communication.

Ex. K42 ¶ 230 (2023-07-03 Greene Expert Invalidity Report).

61.     Sherman and Karger/Sherman refer to a DNS system as "our" DNS system, connoting a *custom* implementation not necessarily inclusive of either RFC 1034 or the implementations discussed in DNS and BIND. Ex. K103 at 37 (Sherman) ("The primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP address of the caches."); *see also* Ex. K56 ¶¶ 80-81 (2023-08-18 Rebuttal Expert Report of Michael Goodrich).

62.     The bespoke nature of Cache Resolver's DNS implementation is corroborated by statements characterizing their DNS machine as implementing "BIND 8.0 … [and] *run[ning] one of our programs, called 'dnshelper.'*" Ex. K103 at 37 (Sherman).

63. The documents AWS and Greene cite are not contemporaneous with BIND 8.1 or address BIND 8.1 because: RFC 1034 preceded any version of BIND 8 by a decade, *compare* Ex. K102 at 1 (RFC 1034) ("November 1987") *with* Ex. K105 (Vixie Declaration) ¶¶ 6 ("'BIND 8.1' was the first finalized public release in the BIND 8 product family."), 8 ("source code of BIND 8.1 was created on May 6, 1997"); Cache Resolver uses a customized DNS machine running software that could not have been available at the time RFC 1034 was written, *compare* Ex. K102 at 1 (RFC 1034) ("November 1987") *with* Ex. K103 at 1 (Sherman) ("February 1999"); and the DNS and BIND book discusses only BIND 8.1.2 and BIND 4.9 implementations, Ex. K98 at xi (DNS and BIND) ("This book deals with the new 8.1.2 version of BIND as well as the older 4.9 versions. … We will also occasionally mention other versions of BIND, especially 4.8.3, because many venders continue to ship code based on this older software as part of their UNIX products.").

64. Boukobza is a U.S. Patent with an issuance date of September 19, 2000 that post-dates the asserted claims' undisputed priority dates of October 28, 1999 or June 2, 2000. Ex. K1 (Boukobza).

65. Greene's only opinion as to how Boukobza allegedly qualifies as prior art is that Boukobza is prior art under §§ 102(a) and (b) "[b]ecause Boukobza's filing date precedes the [priority date] of the Asserted Patents by over 1 year"; he offers no opinions supporting AWS's contention that Boukobza is prior art under § 102(f). Ex. K42 ¶ 204 (2023-07-03 Greene Expert Invalidity Report); Ex. K49 at 1 (2023-07-03 Ex. 3d to Appx. D of Greene Expert Invalidity Report).

66. Karger '618 and '420 are U.S. patents with issuance dates of August 6, 2002, and April 22, 2003, respectively, that post-date the asserted claims' undisputed priority dates of October 28, 1999 or June 2, 2000. Ex. K2 (Karger '618); Ex. K3 (Karger '420).

67. Greene's only opinions that Karger '618 and 420 qualify as prior art are that Karger '618 and 420 are prior art under "§ 102(a), (b), and/or (f), e.g., because it has a priority date of March 15, 1998"; he offers no substantive opinion under § 102(f)  Ex. K42  ¶ 223 (2023-07-03 Greene Expert Invalidity Report); Ex. K43 at 1 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report); Ex. K45 at 1 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report).

68. Greene opines that Steen is a "printed publication" under § 102(a) or (b) based on only three things: a January 1998 date on Steen, a table of contents from an IEEE Communications Magazine that purportedly shows the publication was published in 1998, and his opinion that "[t]hose in the art were reading and even citing to Steen throughout 1998" based on purported citations to Steen in other papers.  Ex. K42 ¶ 176 (2023-07-03 Greene Expert Invalidity Report); Ex. K104 (Steen).

Dated: November 6, 2023

Respectfully submitted,

*/s/ Courtland L. Reichman*_____

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 560-3501

Christine E. Lehman *(pro hac vice)*
clehman@reichmanjorgensen.com
Adam Adler *(pro hac vice)*
aadler@reichmanjorgensen.com
Philip Eklem *(pro hac vice)*
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Taylor Mauze *(pro hac vice)*
tmauze@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
901 S. Mopac Expressway, Bldg. 1, Suite 300
Austin, TX 78746
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5000

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard *(pro hac vice)*
sballard@reichmanjorgensen.com
Gina H. Cremona *(pro hac vice)*
gcremona@reichmanjorgensen.com
Navid Bayar *(pro hac vice)*
nbayar@reichmanjorgensen.com
Savannah Carnes *(pro hac vice)*
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

***ATTORNEYS FOR PLAINTIFF
KOVE IO, INC.***

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of November, 2023, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Courtland L. Reichman*
Courtland L. Reichman