**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| KOVE IO, INC., | |
| *Plaintiff,* | Case No. 1:18-cv-8175 |
| v. | ▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| AMAZON WEB SERVICES, INC., | |
| *Defendant.* | |

## AMAZON'S REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO KOVE'S MOTION FOR SUMMARY JUDGMENT

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman *(pro hac vice)*
*jeffrey.saltman@fischllp.com*
Lisa N. Phillips *(pro hac vice)*
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW, Suite 400
Washington, D.C. 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

## TABLE OF CONTENTS

ARGUMENT IN FURTHER SUPPORT OF AMAZON'S MOTION ......................................... 1

I.    Kove's Disclaimers Continue to Warrant Summary Judgment of Non-Infringement of All 17 Asserted Claims. ........................................................................................... 3

    A.    Kove Confirms That Construing the Asserted Claims as Amazon Requested Would Be Substantively Correct and Helpful to the Jury.................. 3

    B.    Construing the Asserted Claims as Amazon Requested Is Necessary to Hold Kove to Its Disclaimers............................................................................... 5

    C.    Kove's Argument That Disclaimers Could Only Apply to 12 of 17 Asserted Claims Contradicts the Undisputed Facts Kove Admitted. ................. 8

    D.    Kove's Arguments Based on a Chart of Proposed Constructions That Amazon Served a Year Ago Lack Merit. ........................................................... 13

    E.    Kove Fails to Raise a Dispute of Material Fact on Whether S3 and DDB Employ the Required "Non-Hierarchical" Configuration. ................................ 17

II.    Summary Judgment of Non-Infringement Remains Warranted Under the Current Constructions. ............................................................................................................. 22

    A.    S3 Doesn't Infringe Under the Current Constructions. ..................................... 22

    B.    DDB Doesn't Infringe Under the Current Constructions. ................................. 26

III.    Kove's Response Confirms That Summary Judgment on Both Willfulness and Enhanced Damages Is Warranted. ............................................................................. 29

    A.    Pre-Suit Willfulness ......................................................................................... 29

        1.    Kove's Response Ignores the Case Law Amazon Cited, Further Confirming There's No Genuine Dispute of Material Fact Here. ........... 30

        2.    Kove Cites No Evidence Raising a Genuine Dispute of Material Fact on Knowledge of the Patents. ........................................................... 32

        3.    Kove's "Head in the Sand" Theory Fails to Raise a Dispute of Material Fact on Knowledge of Infringement. ......................................... 34

        4.    Kove's Cited Cases Are Inapposite............................................................ 36

    B.    Post-Complaint Willfulness ............................................................................. 37

        1.    Kove Doesn't Acknowledge, Much Less Respond to, Any of Amazon's Arguments on Post-Complaint Willfulness. ............................ 37

        2.    Kove's Cited Cases Are Inapposite............................................................ 39

C.  Kove Waived Any Opposition to Amazon's Request for Summary Judgment on § 284 Enhanced Damages. ........................................................... 41

OPPOSITION TO KOVE'S CROSS MOTION FOR SUMMARY JUDGMENT ..................... 43

I.  Developments in the Record Justify Further Consideration of the Asserted Claims' Eligibility. ...................................................................................................... 43

II.  Issues of Material Fact Preclude Summary Judgment on Equitable Estoppel, Waiver, and Inequitable Conduct. ................................................................. 46

A.  Equitable Estoppel and Waiver ....................................................... 47

B.  Inequitable Conduct ........................................................................ 48

III.  Mr. Greene's Double Patenting Opinions Are Admissible and Summary Judgment on Double Patenting Is Inappropriate. ........................................ 50

IV.  Each Reference Mr. Greene Relies on Is Prior Art and Summary Judgment of Validity Is Inappropriate. ............................................................................ 54

CONCLUSION.................................................................................................... 60

# TABLE OF AUTHORITIES

## Cases

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ............................................... 47

*Abbvie Inc. v. Kennedy Inst. of Rheumatology Tr.*,
  764 F.3d 1366 (Fed. Cir. 2014) ............................................... 52

*Acceleron, LLC v. Dell Inc.*,
  No. 1:12-cv-4123, 2022 WL 1087683 (N.D. Ga. Mar. 7, 2022)............................ 31

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
  607 F.3d 817 (Fed. Cir. 2010) ............................................... 48

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ............................................... 43

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................... 48

*ArcelorMittal France v. AK Steel Corp.*,
  700 F.3d 1314 (Fed. Cir. 2012) ............................................... 8

*Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*,
  No. 2:22-cv-126, 2022 WL 17978913 (E.D. Tex. Oct. 5, 2022)........................ 39, 40

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs.*,
  LLC, 915 F.3d 743 (Fed. Cir. 2019)............................................... 44

*Aylus Networks, Inc. v. Apple Inc.*,
  856 F.3d 1353 (Fed. Cir. 2017) ............................................... 2

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012) ............................................... 45

*Bank of Com. v. Hoffman*,
  829 F.3d 542 (7th Cir. 2016) ............................................... 32

*Bartholemew v. Bail Bonds Unlimited, Inc.*,
  No. 05-cv-4165, 2008 WL 4286363 (E.D. La. Sept. 17, 2008) ............................ 36

*BASF v. CSIRO*,
  28 F.4th 1247 (Fed. Cir. 2022) ............................................... 31

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................... 36

*Bio-Rad Lab'ys, Inc. v. ITC*,
  998 F.3d 1320 (Fed. Cir. 2021) ............................................... 39, 40

*Callpod, Inc. v. GN Netcom, Inc.*,
  703 F. Supp. 2d 815 (N.D. Ill. 2010)............................................... 2

*Callwave Commc'ns LLC v. AT & T Mobility LLC*,
  No. 12-cv-1701, 2014 WL 5363741 (D. Del. Jan. 28, 2014)............................... 31

iv

*Chamberlain Grp., Inc. v. Lear Corp.*,
　756 F. Supp. 2d 938 (N.D. Ill. 2010) .................................................................. 46

*CIVIX v. Nat'l Ass'n of Realtors*,
　No. 05-cv-6869, 2007 WL 7759150 (N.D. Ill. Sept. 17, 2007) ............................. 12

*Conoco, Inc. v. Energy & Env't Int'l, L.C.*,
　460 F.3d 1349 (Fed. Cir. 2006) ......................................................................... 14

*Cont'l Can Co. USA v. Monsanto Co.*,
　948 F.2d 1264 (Fed. Cir. 1991) ......................................................................... 55

*CRFD Research, Inc. v. Matal*,
　876 F.3d 1330 (Fed. Cir. 2017) ......................................................................... 56

*Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*,
　638 F. Supp. 3d 1088 (N.D. Cal. 2022) .................................................... 31, 38, 40

*Digital Control, Inc. v. Charles Mach. Works*,
　437 F.3d 1309 (Fed. Cir. 2006) ......................................................................... 50

*Dowden v. Polymer Raymond, Inc.*,
　966 F.2d 1206 (7th Cir. 1992) ........................................................................... 46

*DS Smith Plastics Ltd. v. Plascon Packaging, Inc.*,
　No. 15-cv-5760, 2016 WL 69632 (N.D. Ill. Jan. 6, 2016) ..................................... 48

*EagleView Techs., Inc. v. Xactware Sols., Inc.*,
　485 F. Supp. 3d 505 (D.N.J. 2020) .................................................................... 59

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
　946 F.3d 1367 (Fed. Cir. 2020) ......................................................................... 41

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
　No. 2:15-cv-1202, 2017 WL 2190055 (E.D. Tex. May 18, 2017) ..................... 30, 31

*Every Penny Counts, Inc. v. American Express Co.*,
　563 F.3d 1378 (Fed. Cir. 2009) ....................................................................... 6, 8

*EveryScape, Inc. v. Adobe Sys. Inc.*,
　No. 10-cv-11597, 2014 WL 3009940 (D. Mass. July 3, 2014) .............................. 54

*Ferring B.V. v. Allergan, Inc.*,
　980 F.2d 841 (Fed. Cir. 2020) ........................................................................... 47

*Gen. Foods Corp. v. Studiengesellschaft Kohle mbH*,
　972 F.2d 1272 (Fed. Cir. 1992) ......................................................................... 53

*Geneva Pharms., Inc. v. GlaxoSmithKline PLC*,
　349 F.3d 1373 (Fed. Cir. 2003) ......................................................................... 53

*GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*,
　7 F.4th 1320 (Fed. Cir. 2021) ........................................................................... 48

*GoTV Streaming, LLC v. Netflix, Inc.*,
　No. 2:22-cv-7556, 2023 WL 2627016 (C.D. Cal. Feb. 16, 2023) .......................... 38

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
  579 U.S. 93 (2016) ........................................................................... 3, 38, 41, 42

*Hazeltine Research, Inc. v. Brenner*,
  382 U.S. 252 (1965) ................................................................................... 58

*Honeywell Int'l, Inc. v. ITT Indus.*,
  452 F.3d 1312 (Fed. Cir. 2006) ................................................................. 13

*In re Lister*,
  583 F.3d 1307 (Fed. Cir. 2009) ................................................................. 54

*In re Napier*,
  55 F.3d 610 (Fed. Cir. 1995) ..................................................................... 54

*In re Papst*,
  778 F.3d 1255 (Fed. Cir. 2015) ................................................................... 5

*Innogenetics, N.V. v. Abbott Labs.*,
  512 F.3d 1363 (Fed. Cir. 2008) ................................................................. 52

*Intellect Wireless, Inc. v. HTC Corp.*,
  No. 09-cv-2945, 2012 WL 728242 (N.D. Ill. Mar. 2, 2012) ...................... 48

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
  751 F.3d 1327 (Fed. Cir. 2014) ................................................................. 52

*Invitrogen Corp. v. Clontech Lab'ys, Inc.*,
  429 F.3d 1052 (Fed. Cir. 2005) ................................................................. 24

*Jack Guttman, Inc. v. Kopykake Enters., Inc.*,
  302 F.3d 1352 (Fed. Cir. 2002) ................................................................. 14

*Kyocera Wireless Corp. v. ITC*,
  545 F.3d 1340 (Fed. Cir. 2008) ................................................................. 56

*Level Sleep LLC v. Sleep No. Corp.*,
  No. 2020-1718, 2021 WL 2934816 (Fed. Cir. July 13, 2021) .................. 15

*LSI Corp. v. Regents of Univ. of Minnesota*,
  43 F.4th 1349 (Fed. Cir. 2022) ................................................................. 58

*M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*,
  439 F.3d 1335 (Fed. Cir. 2006) ................................................................. 50

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) ..................................................................................... 1

*Medtronic, Inc. v. AGA Med. Corp.*,
  618 F. Supp. 2d 1191 (N.D. Cal. 2009) ................................................... 60

*Meyer Intell. Props. Ltd. v. Bodum, Inc.*,
  690 F.3d 1354 (Fed. Cir. 2012) ........................................................... 52, 53

*MONEC Holding AG v. Motorola Mobility, Inc.*,
  897 F. Supp. 2d 225 (D. Del. 2012) ......................................................... 37

*Monsanto Technology LLC v. E.I. DuPont de Nemours & Co.*,
   878 F.3d 1336 (Fed. Cir. 2018) ................................................................ 55

*Novartis Corp. v. Ben Venue Labs., Inc.*,
   271 F.3d 1043 (Fed. Cir. 2001) ................................................................ 46

*O'Reilly v. Morse*,
   56 U.S. 62 (1853) .................................................................................... 50

*O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
   521 F.3d 1351 (Fed. Cir. 2008) .................................................................. 1

*Paragon Podiatry Lab. Inc. v. KLM Labs., Inc.*,
   984 F.2d 1182 (Fed. Cir. 1993) ................................................................ 50

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
   No. 2:15-cv-1366, 2021 WL 2696561 (E.D. Tex. Jan. 29, 2021) ............ 44

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
   518 F.3d 1353 (Fed. Cir. 2008) ......................................................... 50, 51

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*,
   429 F.3d 1364 (Fed. Cir. 2005) ................................................................ 44

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .................................................................. 8

*Procter & Gamble Co. v. Kraft Foods Glob., Inc.*,
   549 F.3d 842 (Fed. Cir. 2008) .................................................................... 5

*Proctor & Gamble Co. v. Teva Pharms. USA*,
   566 F.3d 989 (Fed. Cir. 2009) ................................................................. 52

*PSC Computer Prod., Inc. v. Foxconn Int'l, Inc.*,
   355 F.3d 1353 (Fed. Cir. 2004) ............................................................... 17

*Robertson Transformer Co. v. Gen. Elec. Co.*,
   191 F. Supp. 3d 826 (N.D. Ill. 2016) ...................................................... 47

*SB IP Holdings, LLC v. Vivint, Inc.*,
   No. 4:20-cv-886, 2023 WL 5615780 (E.D. Tex. Aug. 30, 2023) ............ 50

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
   No. 13-cv-1161, 2017 WL 4354999 (N.D. Cal. Sept. 29, 2017) ............. 39

*Soverain IP, LLC v. Microsoft Corp.*,
   No. 2:17-cv-204, 2018 WL 1465792 (E.D. Tex. Mar. 26, 2018) ............ 37

*Springs Window Fashions LP v. Novo Indus., L.P.*,
   323 F.3d 989 (Fed. Cir. 2003) ................................................................. 12

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   14 F.4th 1323 (Fed. Cir. 2021) ................................................................ 41

*Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*,
   611 F.3d 1381 (Fed. Cir. 2010) ............................................................... 53

*Symantec Corp. v. Computer Associates Int'l, Inc.*,
   522 F.3d 1279 (Fed. Cir. 2008) ................................................................ 2

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002) .............................................................. 55

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) .............................................................. 49

*United States v. Brown*,
   32 F.3d 236 (7th Cir. 1994) .................................................................... 46

*USI Ins. Servs. LLC v. Bentz*,
   No. 1:18-cv-255, 2023 WL 5670683 (D.N.D. Apr. 21, 2023) ................. 36

*Va. Innovation Scis., Inc. v. Samsung Electronics Co.*,
   983 F. Supp. 2d 700 (E.D. Va. 2013) ..................................................... 36

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007) ................................................................ 8

*Walsh v. Chez*,
   583 F.3d 990 (7th Cir. 2009) .................................................................. 53

*Wolverine World Wide, Inc. v. Nike, Inc.*,
   38 F.3d 1192 (Fed. Cir. 1994) ................................................................ 17

## ARGUMENT IN FURTHER SUPPORT OF AMAZON'S MOTION

With the briefing on Amazon's motion closed, it's undisputed that the asserted patents require: (1) location servers in non-hierarchical, cluster structures, where each location server (2) contains the relevant location information, or information to locate the relevant location information, and (3) can resolve the request in two or fewer steps. Though the parties agree that these three requirements apply, they disagree about their source and whether they should be memorialized through additional claim constructions.

In Amazon's view, these requirements result from Kove's disclaimers to the Patent Office during recent reexaminations that allowed a portion of Kove's patented monopoly to survive. Indeed, it's undisputed that the asserted patents' specifications expressly describe hierarchical structure embodiments, and Kove didn't disclose the claims' non-hierarchical and related requirements before Amazon challenged the claims through the reexaminations. In Kove's view, the asserted claims have always included these requirements, and it disclaimed nothing at the PTO.

Regardless of the source, though, a requirement is a requirement. And defining these requirements through claim construction is appropriate—and indeed necessary—here. The Court's role in resolving claim interpretation issues is well-established.[1] Among other things, this prevents sideshows before the jury of witnesses and parties offering their own opinions on that issue of law.[2] That's particularly relevant here, as Kove's technical expert has opined in the reexaminations and in his validity report here that the asserted claims require non-hierarchical structure, and testified that he'll rely on that opinion at trial, including to distinguish Amazon's prior art. As this Court has explained, "[w]hen experts opine as to claim construction issues, the risk of jury

---

[1] *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384–91 (1996).

[2] *See O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (vacating because arguments regarding meaning of limitation "were improperly submitted to the jury").

confusion is high, and allowance of such testimony is improper."[3] Further, claim construction law precludes Kove and its witnesses from taking one position on invalidity (at the Patent Office or here), and then the opposite position on infringement.[4] Thus, construing the asserted claims as Kove described their requirements to the Patent Office is necessary to prevent jury confusion and ensure that Kove and its expert apply the same opinions to validity and infringement. As Amazon has detailed, it's also dispositive, because the undisputed evidence shows that the accused Amazon products don't use a non-hierarchical structure, and thus don't infringe all 17 asserted claims.

Should the Court nonetheless eschew additional claim construction, other facts remain undisputed after Kove's response that show that the accused products don't meet the "location" requirements of every asserted claim. Hence, summary judgment of non-infringement for independent reasons under the Court's current constructions remains appropriate, as well.

The same goes for willfulness and § 284 enhanced damages. Kove's response admits that "Kove did not notify AWS of its patents, nor did the parties engage in any communication regarding the patented technology at any point before Kove filed its complaint."[5] And Kove provides no evidence that anyone at Amazon knew of the asserted patents before this case, despite deposing 25 current and former Amazon employees. Kove also doesn't address or distinguish Amazon's case law showing that certain Amazon patents' citation of Kove's patents among hundreds of cited references is insufficient as a matter of law to show willfulness. Kove further didn't respond to the portion of Amazon's motion on § 284 enhanced damages, thus waiving any opposition on that

---

[3] *Callpod, Inc. v. GN Netcom, Inc.*, 703 F. Supp. 2d 815, 821 (N.D. Ill. 2010).

[4] *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017) ("[T]he doctrine of prosecution disclaimer ensures that claims are not construed one way in order to obtain their allowance and in a different way against accused infringers.") (quotation omitted); *Symantec Corp. v. Computer Associates Int'l, Inc.*, 522 F.3d 1279, 1298 (Fed. Cir. 2008) (similar).

[5] Dkt. 699 at 63.

issue. As such, no reasonable jury could conclude that Amazon's conduct was willful. And even if it could, there would be no basis for this Court to find the "egregious" behavior "characteristic of a pirate" that the Supreme Court's *Halo* test for enhanced damages requires.[6] Such damages are designed to punish the most villainous willful infringement conduct. It would go against the purpose of *Halo* to allow companies like Amazon to invest in new products, only for Kove to remain silent for over a decade and then try to unjustly profit via willfulness sanctions. For these and all the reasons detailed below and in Amazon's motion, Amazon's motion should be granted.

## I. KOVE'S DISCLAIMERS CONTINUE TO WARRANT SUMMARY JUDGMENT OF NON-INFRINGEMENT OF ALL 17 ASSERTED CLAIMS.

### A. KOVE CONFIRMS THAT CONSTRUING THE ASSERTED CLAIMS AS AMAZON REQUESTED WOULD BE SUBSTANTIVELY CORRECT AND HELPFUL TO THE JURY.

All 17 asserted claims describe systems or networks of location servers.[7] Here, as Amazon requested, this Court should construe these claims "to require: (1) location servers in non-hierarchical, cluster structures, where each location server (2) contains the relevant location information, or information to locate the relevant location information, and (3) can resolve the request in two or fewer steps."[8] Kove's response confirms that doing so would not only correctly reflect the scope of the asserted claims, but would also be helpful to the jury when applying the large number of confusingly worded patent claims at issue in this case.

---

[6] *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93, 103-04 (2016).

[7] *E.g.*, Dkt. 686 at 22; Dkt. 700 at ¶ 7. Specifically, the asserted claims include: '640 claims 17, 18, and 24 ("network having a plurality of data location servers"); '978 claims 3, 6, and 10 (system "having a plurality of location servers"); '978 claim 14 (method in "network comprising a plurality of location servers"); '978 claims 17, 23, 24, and 30 (method in "system having a plurality of location servers"); '170 claims 1 and 2 (system comprising "plurality of data location servers"); '170 claim 6, 8, and 12 (system comprising "a location server … configured to return a redirect message" identifying "at least one other location server"); '170 claim 15 (method in "network comprising a plurality of location servers").

[8] Dkt. 686 at 16; *accord id.* at 8, 11; Dkt. 687 (SMF) at ¶ 42; Dkt. 539 at 9.

3

Indeed, much like Dr. Goodrich did in his expert reports,[9] Kove's response in large part agrees that the above-listed requirements are substantively correct. And apart from the arguments seeking to carve out five of the asserted claims from any disclaimers (addressed above), Kove only seems to dispute construing the asserted claims as Amazon has requested on the basis that it would be unnecessary. For example, in Kove's words:

> Kove expressly stated and made clear in the reexaminations that the claim language at issue required non-hierarchical structures, so hierarchical prior art did not read on the claim limitations—just as square prior art does not read on cylindrical claim language.[10]

Kove then addresses each of the patents in turn to argue that finding disclaimer is unnecessary, at least for 12 of the 17 asserted claims,[11] because Kove doesn't dispute that they have the requirements that Amazon identified. For example, Kove agreed that the asserted '640 claims require a "non-hierarchical" configuration, where each and every location server can handle every request, confirming what Kove stated during the relevant reexamination:

> Using terminology that contrasted what the claim limitations require with ONAG's hierarchical structure, Kove explained that the claims' "**non-hierarchical cluster composition is expressly claimed** in claims 17 and 18 through the requirement that 'each' (i.e., all) of the data location servers be similarly configured to respond to a client request with the aforementioned information."[12]

And Kove similarly confirmed that all six asserted '170 claims, along with three asserted '978 claims, also include the same requirements.[13]

Assuming *arguendo* that Kove is correct that further construction is unnecessary, this would mean that Amazon's non-infringement arguments based on the above-listed requirements

---

[9] *See* Dkt. 686 at 8; Dkt. 687 (SMF) at ¶ 52 (quoting Goodrich 8-18-23 Rep. at ¶ 56).

[10] Dkt. 699 at 25; *see also*, *e.g.*, *id*. at 34 ("That which is not claimed cannot be disclaimed.").

[11] I.e., all except for five '978 claims Kove attempts to carve out from any disclaimers, as addressed below.

[12] Dkt. 699 at 28 (emphasis in original). Claim 24, the other asserted '640 claim, depends from claim 18.

[13] *Id*. at 29–32. Kove's references in this section to the "'172 patent" appear to be typos.

4

are consistent with the current claim constructions. Thus, this Court should still consider those arguments. And if the time comes, Amazon should be permitted to present them to the jury.

Moreover, regardless of the parties' arguments on the necessity of construing the asserted claims as Amazon requested, this Court has the power to do so. As the Federal Circuit has explained, "a district court may (and sometimes must) revisit, alter, or supplement its claim constructions ... to the extent necessary to ensure that final constructions serve their purpose of genuinely clarifying the scope of claims for the finder of fact."[14] Here, the constructions that Judge Pallmeyer and the parties adopted earlier are based on express definitions in the specifications that, by themselves, won't be sufficient to help a jury understand the scope of the 17 asserted claims. And Kove argues that it was helpful to paraphrase the claim language in reexamination proceedings that each involved a smaller number of claims and fact finders with technical expertise. For instance:

> The record is clear that Kove described its claims using convenient terminology so as to avoid endless, unhelpful, verbatim repetition of the claim's words; what those words describe is a non-hierarchical topology.[15]

Overall, Kove's arguments confirm that construing the claims as Amazon requested would be accurate and helpful. Given that, there's no reason that this Court can't or shouldn't do so, regardless of Kove's arguments on necessity.

### B. CONSTRUING THE ASSERTED CLAIMS AS AMAZON REQUESTED IS NECESSARY TO HOLD KOVE TO ITS DISCLAIMERS.

Kove's response also confirms that construing the claims as Amazon requested is necessary to resolve a dispute between the parties and hold Kove to its disclaimers. As the Federal Circuit has explained, "the court's obligation is to ensure that questions of the scope of the patent claims

---

[14] *In re Papst*, 778 F.3d 1255, 1261 (Fed. Cir. 2015); *see also Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 848 (Fed. Cir. 2008) ("The district court should monitor the proceedings before the PTO to ascertain whether its construction of any of the claims has been impacted by further action.").

[15] Dkt. 699 at 34.

are not left to the jury. In order to fulfill this obligation, the court must see to it that disputes concerning the scope of the patent claims are fully resolved."[16] Despite Kove's statements agreeing that the asserted claims are, for example, limited to non-hierarchical structures, Kove's position on what the asserted claims cover has continued to shift depending on whether the issue before a tribunal is infringement or validity. For example, Kove's response argues that S3 or DDB may infringe as long as a portion of their structure is non-hierarchical.[17] But as Kove's expert Dr. Goodrich opined in his rebuttal report on validity, the non-hierarchical structure of the asserted claims "requires **each server** in the data location server network to be capable of transmitting" a message that "must" provide the requested location information.[18] A partly hierarchical topology can't suffice, "because not every server ordered in a hierarchical topology would have this capability."[19] And Kove repeatedly made similar assertions in the relevant reexaminations.[20]

In addition, Kove ignores that Dr. Goodrich's rebuttal report repeatedly attempted to distinguish the prior art consistent with Kove's reexamination statements describing the "non-hierarchical" structure and the other requirements of the asserted claims that Amazon included in its requested claim constructions. For example, Dr. Goodrich states that:

> ['170] claim 1 requires that each location server is configured to determine which location server stores the sought-after location information with *certainty and specificity* based on the plain language of claim 1.[21]

Dr. Goodrich then provides the same opinion when distinguishing most asserted claims over one

---

[16] *Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009).

[17] Dkt. 699 at 42 ("[W]hat AWS is really arguing is that all topologies present in S3 and DDB must be non-hierarchical …. That argument is contrary to well-settled patent law that says if a claim reads on just a part of an accused device (i.e., if there is evidence of some non-hierarchical topologies), the device infringes.").

[18] Dkt. 687 (SMF) at ¶ 52 (quoting Dr. Goodrich) (emphasis added); *accord* Dkt. 700 at ¶ 52.

[19] *E.g.*, Dkt. 687 (SMF) at ¶ 52.

[20] *Id*. at ¶¶ 31; *accord* Dkt. 700 at ¶¶ 31–38.

[21] *Id*. at ¶ 51.

or more prior art references.[22] As noted in Amazon's motion, Dr. Goodrich's rebuttal report uses the phrase "certainty and specificity" 129 times when arguing, in support of validity, that prior art fails to satisfy the language of the asserted claims unless every location server can provide the sought-after information.[23] Yet, for Amazon's S3 and DDB products, Dr. Goodrich bases his opinions on what information the alleged location servers *might* be able to provide, not on information that they can provide with "certainty and specificity."[24] Though Amazon detailed this in its motion, Kove ignored those arguments. Instead, Kove has continued to apply different understandings of the claim language, depending on the issue, as noted above.

Additionally, when the inventors originally prosecuted the patents-in-suit, beginning with the '640 patent, they expressly included descriptions of "hierarchical" embodiments in the specification.[25] The same or similar descriptions appear in the identical '170 specification and the similar '978 specification. Now, more than 20 years later, Kove has finally advised the public, via its statements in the reexaminations, that the claims of these patents (at least, the '640 and '170 patents) never covered these hierarchical embodiments. Kove attempts to brush this off, arguing that the specification is "immaterial."[26] According to Kove: "As Judge Rich famously said, 'the name of the game is the claim.'"[27] But Kove doesn't quote the claim language that purportedly would've informed a POSITA that these claims don't cover the hierarchical embodiments described in the specifications. As noted, Kove described this claim language as "unhelpful." when arguing to the

---

[22] *Id*. at ¶¶ 51–54 (citing Dr. Goodrich's rebuttal report).

[23] *Id*. at ¶ 51.

[24] *Id*. at ¶ 73.

[25] Dkt. 686 at 11–12 (quoting examples from the specifications).

[26] Dkt. 699 at 37.

[27] *Id*.

Patent Office about claim scope in the reexaminations.[28] And there are other quotes from former Federal Circuit Judge Rich that are instructive here. For instance, as the en banc Federal Circuit stated in *Phillips v. AWH Corp.*:

> Shortly after the creation of this court, Judge Rich wrote that "[t]he descriptive part of the specification aids in ascertaining the scope and meaning of the claims inasmuch as the words of the claims must be based on the description. ***The specification is, thus, the primary basis for construing the claims***."[29]

Under *Phillips*, the hierarchical embodiments in Kove's specifications likely would've doomed any requests for contrary constructions at the time of Judge Pallmeyer's *Markman* decision, seven months before Kove first raised the "non-hierarchical" configuration of its inventions as a basis to overcome prior art in the reexaminations. As the Federal Circuit has repeatedly stated, courts "normally do not interpret claim terms in a way that excludes disclosed examples in the specification."[30] Accordingly, further construction is necessary to resolve these disputes and hold Kove to its statements limiting the scope of the asserted claims.[31]

### C. KOVE'S ARGUMENT THAT DISCLAIMERS COULD ONLY APPLY TO 12 OF 17 ASSERTED CLAIMS CONTRADICTS THE UNDISPUTED FACTS KOVE ADMITTED.

Kove's statements limiting the scope of the claims in the second '978 reexaminations (No. 90/019,109) disposed of the arguments that Kove made a year ago, in response to Amazon's motion for additional claim construction briefing, that any disclaimers should be limited to asserted claims that were the subject of non-final rejections.[32] As detailed below, and in Amazon's motion, there are two reexaminations of the '978 patent that are relevant here. But Kove repeats the

---

[28] *Id*. at 34.

[29] 415 F.3d 1303, 1315 (Fed. Cir. 2005) (emphasis added).

[30] *ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314, 1321 (Fed. Cir. 2012) (quoting *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007)).

[31] *See generally Every Penny*, 563 F.3d at 1383.

[32] *See generally* Dkt. 553.

arguments it made before, ignoring indisputable facts that further contradict its arguments.

In the first '978 reexamination (No. 90/019,034), the Patent Office granted reexamination of all ten '978 claims that Kove had asserted at the time.[33] In June 2022, the Patent Office issued an office action confirming four of those claims, with non-final rejections of the other six. Ultimately, this first '978 reexamination resulted in the cancellation of independent claims 1 and 31, which Kove then dropped as asserted claims in this matter.

The second reexamination involving the '978 patent (No. 90/019,109) followed up on the four '978 claims that escaped non-final rejections earlier. As detailed in Amazon's motion:

> On April 3, 2023, the Patent Office issued non-final rejections of these four claims. Kove then responded, repeating the same "non-hierarchical" arguments that Kove made in the other reexaminations, when seeking to overcome the earlier rejections of the other asserted claims. As a result, Kove has now made substantially the same statements limiting the scope of all 17 asserted claims, following non-final rejections of all 17 asserted claims in reexaminations.[34]

For clarity, these two reexaminations are summarized below:

| Reexam. No. | '978 Claims Requested/Granted For: | Non-Final Rejections |
| --- | --- | --- |
| 90/019,034 | 1, 3, 6, 10, 14, 17, 23, 24, 30, 31 | 1, 3, 6, 10, 14, 31 |
| 90/019,109 | 17, 23, 24, 30 | 17, 23, 24, 30 |

Kove's statements in Reexamination No. 90/019,109 feature prominently in Amazon's present motion, because they resolve arguments that Kove made the last time the parties briefed further claim construction. Thus, Amazon's motion explained that "Kove repeatedly disclaimed networks lacking a 'non-hierarchical' structure…."[35] And the first example Amazon quoted was

---

[33] *E.g.*, Dkt. 686 at 4–6; Dkt. 687 at ¶ 21.

[34] *Id.* at 5–6 (citing Dkt. 687 (SMF) at ¶¶ 8, 32); *see also* Dkt. 662-1 (non-excerpted copy of Kove June 2023 response in Reexam. No. 90/019,109, attached to July 5, 2023 Notice of Related Proceedings).

[35] Dkt. 686 at 12.

"Kove's July 3, 2023 argument in response to the non-final rejections of asserted '978 claims 17, 23, 24, and 30."[36] Specifically, Kove argued:

> Their invention, as embodied in the claims of the '978 patent, enables a client to retrieve data through any server in the network and receive in response the location information associated with a desired entity. The structured relationships of the invention allow clients to access data in distributed environments through a non-hierarchical, limitlessly scalable, server structure that enables retrieval of requested information in not more than two iterations.[37]

And Kove previously said the same thing about the "invention, as embodied in the claims" of its patents, when responding to the earlier non-final rejections of the other asserted '978 claims, all '170 asserted claims, and all '640 asserted claims.[38]

Notably, Kove admitted most relevant facts regarding the two '978 reexamination proceedings when responding to Amazon's Statement of Material Facts. For instance, in response to Amazon's paragraph 8, Kove stated:

> Kove admits that AWS filed a reexamination request on claims 17, 23-24, and 30 of the '978 patent on August 31, 2022. Kove admits that "[o]n April 3, 2023, the Patent Office non-finally rejected those claims of the '978 patent as obvious over multiple prior art reference combinations, including U.S. Pat. No. 5,617,568 to inventor Michael B. Ault."[39]

One exception, however, is Kove's response to paragraph 32, where Amazon quoted from Kove's July 3, 2023 response to the non-final rejections of claims 17, 23, 24, and 30. Without explaining its basis for doing so, Kove doesn't admit or deny whether it made those statements in the second '978 reexamination (No. 90/019,109).[40] Given the absence of any explanation from Kove, this

---

[36] *Id*.

[37] *Id*. (quoting Dkt. 687 at ¶ 32); Dkt. 700-140 (Kove's July 3, 2023 response) at 9; Dkt. 662-1 (same).

[38] Dkt. 686 at 12 (citing and quoting Dkt. 539-4 at 12, Dkt. 539-3 at 11, Dkt. 539-2 at 10).

[39] Dkt. 700 at 11 (¶ 8).

[40] *Id*. at 30–31 (¶ 32). Although Kove doesn't give any reason for this conduct, Amazon notes that the excerpted copy of Kove's July 3, 2023 response filed as Amazon's Ex. 10 mistakenly omitted cited page 9. But Kove's exhibits include a complete copy of that July 3, 2023 response. Dkt. 700-140 at 9. And Amazon

Court should deem it admitted that Kove made those statements in that reexamination.

Further, Kove's brief never mentions the second '978 patent reexamination and offers no explanation for this omission. As a result, Kove's arguments include misleading and false assertions contradicting facts that Kove has either admitted or had no good faith basis to dispute. For example, Kove argues that it "did not make any statements (let alone disclaimers) about claims 17, 23, 24 or 30 of the '978 patent," despite filing a 44-page July 3, 2023 response to the non-final rejections of those specific claims in Reexamination No. 90/019,109.[41] Similar assertions about those claims never being reexamined are peppered throughout Kove's submissions.[42] All those assertions are erroneous, as Kove's admitted facts and Ex. K140 (Dkt. 700-140) confirm. And all of them ignore what Amazon argued. As noted, the first example of Kove's disclaimers in the Argument section of Amazon's motion is from Kove's July 3, 2023 response in the second '978 reexamination, *after* non-final rejections of '978 claims 17, 23, 24, and 30.[43]

Apart from the claims at issue in Reexamination No. 90/019,109, there's one more asserted claim that Kove argues that it didn't make any statements about: '978 claim 6. But Kove's only reason for singling out this claim for special treatment is that it's a very short dependent claim. Specifically, claim 6 depends from now-cancelled independent claim 1 and recites, in its entirety:

> The system of claim 1, wherein the location information in the location server is maintained in an indexed location store indexed by a hash table.[44]

---

previously filed a complete copy with the July 5, 2023 Notice of Related Proceedings. Dkt. 662-1.

[41] Dkt. 699 at 34; *compare* Dkt. 700-140 (Kove's July 3, 2023 response).

[42] *See, e.g.*, *id*. at 26 ("For the '978 patent, not all challenged claims were substantively reexamined."); *id*. at 35 ("Having been silent as to these claims, Kove cannot be said to have clearly and unmistakably disclaimed anything about them."); *id*. at 42 ("[C]laim 17 of the '978 patent … was never discussed during reexam and therefore cannot be subject to any allegation of disclaimer.").

[43] 686 at 12; *see also* Dkt. 686 at 4–6 (similar); Dkt. 700-140 (Kove's July 3, 2023 response) at 9.

[44] Dkt. 687-3 ('978 patent at 26:1–3).

During the first '978 patent reexamination, claim 6 was rejected, along with five other '978 claims, in a June 28, 2022 Non-Final Office Action. Unsurprisingly, Kove's response to that rejection of claim 6 incorporated-by-reference all Kove's arguments on claim 1. In Kove's words: "Claim 6 depends from claim 1, and therefore is patentable over ONAG and OracleSG for at least the same reasons."[45] Those reasons include disclaimers similar to those Kove made when addressing the other asserted claims.[46] Kove's opposition to the present motion omits this context.[47]

In addition, prosecution disclaimer doesn't require the Patent Office to have adopted any of Kove's statements or reasoning.[48] As the Federal Circuit has explained:

> The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent. A patentee may not state during prosecution that the claims do not cover a particular device and then change position and later sue a party who makes that same device for infringement.[49]

And here, there's no dispute that these statements during the reexaminations—including the second '978 reexamination—have now become part of the prosecution history.[50]

What's more, after the non-final rejection of claim 6, Kove repeatedly made statements about the scope of the '978 patent or "invention" as a whole. For instance:

> The structured relationships of the invention allow clients to access data in distributed environments through a non-hierarchical, limitlessly scalable, server structure that enables retrieval of requested information in not more than two iterations.[51]

---

[45] Dkt. 687-32 at 69. As noted, claims 1 and 31 were cancelled as a result of this reexamination.

[46] *Id*. at 15.

[47] *See* Dkt. 699 at 35–36; *see also id*. at 37 (citing two cases, *Vanguard* and *Mass. Inst. of Tech.*, rejecting disclaimer "based on statements made 'in the context of different claims that did not include the terms' at issue," neither of which applies to claim 6 here because it includes all limitations of independent claim 1).

[48] *E.g.*, *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 994–95 (Fed. Cir. 2003).

[49] *Id*. at 95.

[50] *CIVIX v. Nat'l Ass'n of Realtors*, No. 05-cv-6869, 2007 WL 7759150, *3 (N.D. Ill. Sept. 17, 2007).

[51] Dkt. 687 (SMF) at ¶ 32; Dkt. 539-4 at 12.

Kove also made the above-quoted statement about the "invention" not only after non-final rejection of claim 6, but also after the non-final rejections of all (yes, all) other asserted claims. Such statements about the invention as a whole limit the invention as a whole, and thus all claims. As the Federal Circuit explained in *Honeywell International, Inc. v. ITT Industries*:

> On at least four occasions, the written description refers to the fuel filter as "this invention" or "the present invention" … The public is entitled to take the patentee at his word and the word was that the invention is a fuel filter.[52]

Here, too, the public—including Amazon—is entitled to take Kove at its word when it described all three asserted patents the same way during the relevant reexaminations. Accordingly, for all the above reasons, Kove's arguments for carving out five asserted claims lack merit.

### D. KOVE'S ARGUMENTS BASED ON A CHART OF PROPOSED CONSTRUCTIONS THAT AMAZON SERVED A YEAR AGO LACK MERIT.

After the Court lifted the stay, Amazon asked Kove to agree to reopen claim construction to address Kove's statements during the reexaminations.[53] To that end, on November 15, 2022, Amazon emailed Kove a chart of proposed constructions that incorporated Kove's disclaimers into the 19 then-asserted claims.[54] Amazon also proposed dates for Kove to respond, for the parties to confer and select final terms for construction, and for staggered briefing consistent with the usual claim construction procedure under the Local Patent Rules.[55] Kove's refusal to participate in that process led to Amazon's motion for additional claim construction briefing.[56] In other words, Kove had the opportunity to provide feedback on Amazon's chart and submit counter proposals, but

---

[52] 452 F.3d 1312, 1318 (Fed. Cir. 2006).

[53] *See* Dkt. 539 at 4–5.

[54] *Id*. at 5; *see also id*. at Appendix A (copy of chart); Dkt. 539-7 (Amazon Nov. 15, 2022 email with chart).

[55] Dkt. 535 (status report) at 2–3.

[56] *See* Dkt. 539 at 4–5; *see also* id. at 13, n.68 ("Per the schedule that AWS suggested and the LPR, AWS is willing to further confer with Kove regarding these proposed constructions.").

chose to forego that opportunity.

Despite that, Kove now raises multiple arguments critiquing specific words in the proposed constructions that Amazon emailed Kove a year ago, regardless of whether those words appear in Amazon's motion and the fact that Amazon's didn't ask this Court to adopt those constructions. In doing so, Kove ignores what Amazon requested—i.e., that this Court "construe the asserted claims to require: (1) location servers in non-hierarchical, cluster structures, where each location server (2) contains the relevant location information, or information to locate the relevant location information, and (3) can resolve the request in two or fewer steps."[57] Again, every asserted claim describes a system or network of location servers. And these are the claim construction issues relevant to Amazon's motion for summary judgment.

To be clear, the claim constructions requested in Amazon's motion are consistent with Amazon's previous motion for additional briefing, Amazon's expert reports, and the unrevised chart that Amazon emailed to Kove on November 15, 2022. But it's not necessary for this Court to adopt the exact wording in that chart, and Amazon didn't ask this Court to do so. The parties never exchanged terms under L.P.R. 4.1. There's no L.P.R. 4(f) Joint Claim Construction Statement. And given that Kove refused when Amazon offered to follow those procedures, Kove's year-late arguments critiquing the November 15, 2022 chart are disingenuous and of no moment.

Moreover, the Federal Circuit has long held that courts "may engage in claim construction during various phases of litigation, not just in a *Markman* order."[58] When courts and litigants do so at the summary judgment stage, without a second round of claim-construction briefing or a

---

[57] Dkt. 686 at 16; *accord id.* at 8, 11.

[58] *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006); *accord Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.").

second *Markman* briefing, they tend to focus on the dispositive legal issues, rather than a term-by-term analysis of each asserted claim. For instance, in *Level Sleep LLC v. Sleep No. Corp.*, the Eastern District of Texas granted summary judgment of non-infringement based on a construction that it adopted "sua sponte" in its summary judgment order.[59] The patent owner had asserted a total of 10 claims, the maximum permitted.[60] But the court didn't find it necessary to identify or specifically address those claims when revisiting claim construction. As the court explained, they all "contain low pressure limitations."[61] The court then adopted the construction that "mattresses exerting pressures of 40 mmHg or above cannot satisfy the low pressure limitations," and granted summary judgment of non-infringement on that basis.[62] And the Federal Circuit affirmed.[63]

Here, too, it's appropriate for both Amazon and this Court to focus on the dispositive claim construction issues common to all asserted claims.[64] Nevertheless, Kove's arguments for each term in the unrevised November 15, 2022 chart of proposed constructions is addressed below.

***"network" / "system"***: In reference to this term in Amazon's 2022 chart, Kove argues that its statements in the reexaminations referring to "non-hierarchical cluster composition" were directed to limitations describing the "requirement that 'each' (i.e., all) of the data location servers be similarly configured to respond to a client request …," and not just anything at all in the "network"/"system."[65] This is a non-issue. Amazon agrees that the "non-hierarchical cluster

---

[59] *Level Sleep LLC v. Sleep No. Corp.*, No. 2020-1718, 2021 WL 2934816, at *3 (Fed. Cir. July 13, 2021).

[60] Fed. Cir. Case: 20-1718 Document: 19 at 16

[61] E.D. Tex. No. 2:18-cv-119, Dkt. 178 at 3.

[62] *Id*. at 7.

[63] *Level Sleep*, 2021 WL 2934816, at *3.

[64] If this case proceeds to trial, the parties can confer on how to incorporate any claim construction rulings in this Court's summary judgment order into the jury instructions.

[65] Dkt. 699 at 38–40 (using '640 claim 17 as an example).

composition" describes the configuration of the location servers in the "network"/"system." And this is already reflected in Amazon's request that this Court construe the asserted claims to require "location servers in non-hierarchical, cluster structures."[66]

*"location server"*: Kove's arguments on "location server" similarly lack merit. Contrary to Kove's uncited assertion, Amazon's motion didn't "ask[] the Court to adopt" the location server construction in the November 15, 2022 chart.[67] Rather, Amazon requested that this Court construe the asserted claims to include the requirement that each location server "contains the relevant location information, or information to locate the relevant location information." That doesn't include the "satisfy …" language in the chart that Kove now objects to, more than a year later, when it's not relevant to the motion before this Court. And Kove doesn't otherwise appear to dispute that what Amazon requested accurately reflects the claim scope.[68]

*"providing"/"determining"/"retrieving" and "return"/"sending"/"transmitting"*: Kove objects to the inclusion of the word "iterations" in the November 15, 2022 chart, arguing that Amazon cited "only a single instance where Kove used the term 'iterations.'"[69] Once again, this is a semantic issue that the parties could've addressed a year ago, without court invention, if Kove hadn't refused to discuss any further claim constructions. And like the other issues Kove now raises, it's moot because Amazon already dropped the offending word from the request for further construction in its motion for summary judgment.

Moreover, the use of "iterations" in the November 15, 2022 chart came from Kove's own repeated descriptions of the claimed inventions in the reexaminations. For instance, in four

---

[66] Dkt. 686 at 16.

[67] Dkt. 699 at 40; *compare* Dkt. 686.

[68] *See* Dkt. 699 at 40 (arguing "information about the location of such mappings" is unnecessary).

[69] Dkt. 699 at 41–42.

different reexaminations, Kove described those inventions as enabling "retrieval of requested information in not more than two iterations."[70] There are additional examples in those proceedings.[71] And Kove's expert similarly uses "iterations" in his reports here.[72] As Amazon understands Kove's and its expert's use of this word, an "iteration" is one request and response between a client and location server. Despite Kove's repeated use of this term, Kove now claims it doesn't know what "iterations" means.[73] As such, not only do Kove's arguments on this term fail to contradict anything in Amazon's motion, they're also yet another example of Kove saying one thing on validity, and another thing on infringement.

Accordingly, as Amazon requested, this Court should construe all asserted claims to require: (1) location servers in non-hierarchical, cluster structures, where each location server (2) contains the relevant location information, or information to locate the relevant location information, and (3) can resolve the request in two or fewer steps.[74]

### E. KOVE FAILS TO RAISE A DISPUTE OF MATERIAL FACT ON WHETHER S3 AND DDB EMPLOY THE REQUIRED "NON-HIERARCHICAL" CONFIGURATION.

Kove has the burden of proving that every element of an asserted claim is present in the accused products.[75] Here, all 17 asserted claims, when construed in view of Kove's disclaimers,

---

[70] Dkt. 539-4 at 12; Dkt. 539-3 at 11; Dkt. 539-2 at 10; Dkt. 700-140 at 9.

[71] *See, e.g.*, Dkt. 539-4 at 35 (arguing to distinguish prior art on basis that it "may take numerous iterations to return a query," citing Dr. Goodrich); Dkt. 539-2 at 23 & Dkt. 539-3 at 25 (same); Dkt. 539-2 at 28 (Oracle's "hierarchical configuration restricts the ability of a client to find the authoritative server in the network without undergoing the traversals (iterations) required in navigating a tree structure.").

[72] *See, e.g.*, Dkt. 700-54 (Goodrich Op. Rep., Ex. E) at 57 ("When ██████████████████████ ████████████████████"); Dkt. 700-53 (Goodrich Op. Rep., Ex. D) at 72; Dkt. 700-55 (Goodrich Op. Rep., Ex. F) (referring to "iterations" 26 times in different contexts).

[73] Dkt. 699 at 41 ("What is a 'request iteration'? … AWS offers no definition.").

[74] Dkt. 686 at 16; *see also id.* at 8, 11 (same); Dkt. 539 at 9 (same).

[75] *See, e.g.*, *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994) (affirming summary judgment of non-infringement); *PSC Computer Prod., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1357 (Fed. Cir. 2004) (same).

require location servers in a "non-hierarchical" configuration, where every single location server either has the location information to respond to a request, or knows which of the other location servers has it. But that non-hierarchical configuration of location servers isn't present in the accused S3 and DDB products. As detailed in Amazon's motion, the features of S3 and DDB that Kove attempts to map to the asserted claims are hierarchical in at least two undisputed ways, each of which independently shows non-infringement.[76] First, S3 and DDB both divide their data storage systems into geographical hierarchies, including at least ██████████████, plus another layer dividing those regions into availability zones.[77] Second, S3's and DDB's systems both ██ ████████████████████████████████████████████████████████████████.[78] And Kove's expert evidence had failed to dispute the material facts on both counts.[79]

In response, Kove argues that Amazon relied on "irrelevant hierarchical features," while "ignoring the actually accused non-hierarchical features," to show that the accused products can't satisfy the asserted claims' requirements.[80] Kove further argues that Amazon "never [said] the *accused* portions are hierarchical."[81] Kove is incorrect. As detailed in Amazon's motion, S3 and DDB, including the accused components that Kove relies on, cannot satisfy the asserted claims' "non-hierarchical" and other requirements.[82]

Indeed, S3's and DDB's data storage systems bear little resemblance to the "flat" and "non-

---

[76] Dkt. 686 at 16–21; Dkt. 687 (SMF) at ¶¶ 55–66.

[77] Dkt. 686 at 17–19.

[78] *Id*. at 19–21.

[79] *See id*. at 16–21 (citing relevant portions of Dr. Goodrich's reports).

[80] Dkt. 699 at 25; *accord, e.g., id*. ("Tellingly, it never says the *accused* portions are hierarchical.")

[81] *Id*. (emphasis in original).

[82] Dkt. 686 at 16–21; Dkt. 687 (SMF) at ¶¶ 55–66.

hierarchical" configuration of location servers that Kove described in the reexaminations.[83] Kove's location servers can do it all—each and every location server can respond to each and every client request.[84] And it never takes more than two steps, because any location server that doesn't have necessary location information knows where to get it.[85] This configuration of location servers also is "limitlessly scalable," as Kove told the Patent Office.[86] But as the undisputed facts show, Amazon overcame the practical challenges involved with the scale of S3's and DDB's systems using technology different from what Kove claimed. And for the reasons detailed in Amazon's motion, there is no configuration of location servers in S3 and DDB like what Kove described.

After all, Kove alleged that certain components in S3 and DDB are the location servers that receive and respond to client requests.[87] It's undisputed that the components in S3 and DDB that ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████.[89] That's directly relevant and contrary to Kove's theory, not "irrelevant," as Kove argues. And Kove's arguments elsewhere in its brief further confirm that. For instance, when describing its statements in the reexaminations, Kove argues that:

> Kove contrasted ONAG's "hierarchical tree" with the requirements of [the asserted '640 claims], which contain limitations allowing: [a] client [to] send a query to any server in the network—not just its local region, as taught by Oracle Admin …. If the queried server does not have the requested information, that server

---

[83] *E.g.*, Dkt. 687-36 at 10.

[84] *E.g.*, Dkt. 687 at ¶¶ 34–35.

[85] *E.g.*, *id.*

[86] *E.g.*, Dkt. 687 (SMF) at ¶ 8.

[87] For S3, Kove alleges that S3's ████████████████████████████████████████████████████ ████████████████████ (depending on the claim and what Kove decided was the "client"). For DDB, Kove alleges that the ████████████████ are the location servers. Dkt. 699 at 45.

[88] *See* Dkt. 687 (SMF) at ¶¶ 56–59; Dkt. 700 at ¶ ¶¶ 56–59 (objecting on materiality and other bases).

[89] *See id.*

(as are all servers in the data location server network) is configured to return a message to the client containing information that the client can then use to calculate the location of the server that does have the requested information.[90]

Here, S3 and DDB are ████████████████.[91] And it's similarly relevant that the components in S3 and DDB ████████████████████████████████ ████████████████████. As the undisputed facts show, the components that receive and respond to requests, like the components that keep track of where data objects are stored, ████████████████. No component in S3 and DDB, whether accused or not, ████████████████████████ ██████████████████████████████████ ████████████████.

With respect to S3, specifically, Kove argues that the ████████████████ are irrelevant. But S3 ████████████████.[92] ████████████████████████████████.[93] Again, that's directly relevant and contrary to Kove's theory. And Kove fails to address the undisputed evidence confirming that S3 is ████████████████.[94]

And the timeliness argument on DDB that Kove raises lacks merit. As Amazon's motion explained, the record confirms that DDB ████████████████████████ ████████████████. In support, Amazon cited evidence that included



---

[90] Dkt. 699 at 27–28.

[91] *E.g.*, Dkt. 686 at 16–21 (citing, *inter alia*, Dkt. 687 (SMF) at ¶¶ 16, 33, 55–66, 89).

[92] *E.g.*, *id.* at 20 (citing Dkt. 687 (SMF) at ¶ 63).

[93] *E.g.*, *id.* at 21 (quoting Dkt. 687 (SMF) at ¶ 65 (retired CTO Allan Vermeulen testifying: "[C]ertainly how S3 works ████████████████████████████████████████████ ████████████████████████████████████████████████████.")).

[94] *E.g.*, *id.* at 17–21 (discussing, *inter alia*, source code and Dr. Gramma's analysis and testing).

deposition testimony from both sides' experts and Dr. Swami Sivasubramanian, the first General Manager of DDB.[95] Amazon also cited Dr. Grama's explanation of DDB source code showing ███████████████████████████████████████████████ [96] Again, Kove alleges that DDB's ███████████ are "location servers." It's undisputed that ███████████████ ███████████████.[97]

Kove argues that Dr. Grama's rebuttal report improperly "unveiled the brand-new theory" that Amazon doesn't infringe because "a single piece" of DDB source code showed ███████████ ██████.[98] But Kove has had notice of Amazon's theory that ███████████████████ ███████████████████████ since Amazon first requested further claim con-structions, after this Court lifted the stay. And Amazon incorporated this theory into its non-in-fringement contentions at the first opportunity, over nine months ago.[99] Thus, Amazon's March 2, 2023 non-infringement contentions detailed DDB's ███████████████████████████ and explained that Kove failed to show how DDB or any of its components would satisfy the non-hierarchical requirement. As stated in those contentions: "Kove cannot show how DDB satisfies this element, because it doesn't. DDB is organized ███████████████████[100]

Moreover, Kove has known of the "single piece" of source code that it complains of for more than three years, given that Amazon has identified AWS_SRC_CODE_000000157 in its source code disclosures since February 2020.[101] Kove cited this same source code in the

---

[95] *Id*. at 21 (citing Dkt. 687 (SMF) at ¶¶ 60–61, 89).

[96] *Id*. (citing Dkt. 687 (SMF) at ¶ 61).

[97] *E.g.*, Dkt. 700 at ¶ 84.

[98] Dkt. 699 at 46.

[99] *See* Dkt. 596 at 8.

[100] Ex. 95. Exhibits are attached to Amazon's accompanying statement of additional facts or responses.

[101] Ex. 96; *see also* Dkt. 687-51 (AWS_SRC_CODE_000000157).

infringement contentions that Amazon's March 2, 2023 non-infringement contentions were responding to.[102] And Kove's expert Dr. Goodrich likewise cited it in the opening report that Dr. Gramma's rebuttal report was responding to.[103] Explaining why the evidence that Kove and Dr. Goodrich cited doesn't show a "non-hierarchical" configuration isn't a new theory. And Dr. Goodrich's failure to explain how this source code supports his opinions doesn't make it one.

Accordingly, for all the reasons above and in Amazon's motion, this Court should grant summary judgment of non-infringement for all 17 asserted claims.

## II. SUMMARY JUDGMENT OF NON-INFRINGEMENT REMAINS WARRANTED UNDER THE CURRENT CONSTRUCTIONS.

Kove also fails to raise a dispute of material fact on whether S3 or DBB infringe any of the 17 asserted claims under the constructions this Court adopted in December 2021 (i.e., the operative or current constructions, as referred to in Kove's response and Amazon's motion, respectively).[104]

### A. S3 DOESN'T INFRINGE UNDER THE CURRENT CONSTRUCTIONS.

As noted, all 17 asserted claims include elements that require "location server(s)" and "location(s)."[105] And Judge Pallmeyer adopted, or the parties stipulated to, the following relevant constructions (all of which are definitions set forth in Kove's patents):

- Location server: "component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients."

- Location: "an encoding that is a member of a set of associations with an identifier in a location server, and that specifies where data pertaining to the entity identified by the identifier is stored."

- Identifier: "a unique encoding that identifies an individual entity, and with which zero

---

[102] Ex. 97 (2/10/23 Kove Inf. Cont., Ex. G, Cit. 1 at 1, Cit. 2 at 7, Cit. 5 at 13, Cit. 8 at 22).

[103] Ex. 98 (Goodrich 7/6/23 Rep., Ex. B)  at ¶¶ 8, 51, 75, 155.

[104] *See* Dkt. 699 at 6–24.

[105] *E.g.*, Dkt. 686 at 22; Dkt. 687 (SMF) at ¶ 7; *see also* note 7 *supra* (quoting all 17 asserted claims).

or more location strings are associated in a location server."[106]

For S3, it's undisputed that ████████████████████████████

████████████████████████████. [107] In attempting to map the require-

ments of the asserted claims to S3's architecture, Kove alleged that the location requirement "is

met by ████████████████████████"[108] But as Amazon explained, Dr. Goodrich's

opinion failed to support that theory, because it ignored the source code and the relevant testimony

showing the information that the ██████ contains.[109]

Specifically, ████████████████████████████████

████████████████████.[110] The ██████████████.[111] In other words, ████████

████████████████████████████████████

████████████████████████████████████

████████████████████████.[112] Consequently, ████████ doesn't "specif[y] where

data pertaining to the entity identified by [an associated] identifier is stored," as the asserted

claims' "location" requires. It's essentially a label. If it can be a "location," so can a file name, or

the claimed identifier, which would make the asserted claims' "location(s)" and location server

"identifier/location mappings" under the current constructions meaningless.[113]

---

[106] Dkt. 484 at 11, 35.

[107] *E.g.*, Dkt. 687/Dkt. 700 at ¶ 81 (Dr. Goodrich: ████████████████████████████
████████████████████████████

[108] Dkt. 699 at 6; Dkt. 686 at 23 (quoting Dr. Goodrich).

[109] Dkt. 686 at 24–25.

[110] *E.g.*, Dkt. 687 (SMF) at ¶ 82.

[111] *E.g.*, Dkt. 687 (SMF) at ¶ 78.

[112] *See id.*; *see also* Dkt. 700 at ¶ 78 (disputing whether ████████████████████
████████████████.

[113] *See also* Dkt. 484 at 35 (construing "location information" as "one or more identifiers and their associ-
ated locations" in '978 claims, and "information pertaining to one or more locations of data and/or the

Kove's attempt to show otherwise fails to raise a dispute of material fact for the jury.[114]

For instance, Kove continues to ignore the testimony it elicited from the Amazon engineers who

designed and maintain S3. In addition to the testimony that Amazon already highlighted, and con-

trary to Kove's arguments, Seth Markle testified that the ███████████████████████

> Kove Atty: Does ███████████████████ used to identify the location
> of an object?
> Markle: The █████████████████████.[115]

Notably, Kove repeatedly asked variations of this question, without eliciting any testimony sup-

porting its infringement theory. When this led Mr. Markle to ask Kove's questioning attorney to

explain what he meant by "location," Kove's attorney contradicted what Kove is now arguing:

> Kove Atty: Okay. So █████████████████████████████
> █████████████████████████.[116]

And Mr. Markle's testimony is consistent with Amazon's expert reports and the other record evi-

dence, including the relevant source code and testimony from other engineers.[117] For example, Mr.

Sorenson further explained that the ████████████████████.[118]

Despite this record evidence, Kove's response continues to blur the distinction between the

"location" and "identifier." Specifically, Kove argues that ████████████████ contain a 'lo-

cation' because they specify which ████████████████████████████ and they

---

identities of one or more location servers" in '170/'640 claims.

[114] *See generally Invitrogen Corp. v. Clontech Lab'ys, Inc.*, 429 F.3d 1052, 1080 (Fed. Cir. 2005).

[115] Ex. 99 (Markle Tr. at 176:3–8) (objection omitted). Kove's Ex. K30 omits this testimony.

[116] *Id.* (Markle Tr. at 175:15–25).

[117] *See* Dkt. 686 at 23–25.

[118] Dkt. 700-160 (Sorenson Tr. at 136:18–21) ("████████████████████████████████████████
██████████████"); *see also* Ex. 100 (Sorenson Tr. at 137:11–22 (████████████████████████
████████████████████), 137:23–25 (similar, for █████████), 139:21–
23 (similar, for █████)).

uniquely identify the ███████████████████████.”[119] But uniquely identifying an object defines the claimed identifier ("a unique encoding that identifies an individual entity"), not the location. And the evidence that Kove relies on further confirms that ████████████████ ███████████████████. For example, Kove quotes an Amazon document stating that the ███████████████████████████████████████████.[120] And another document Kove quotes, stating that ████████████████████████ ████████████████████████████████████████████”[121] Absent more context, it makes sense in ordinary English to say that an identifier (e.g., the name of a restaurant), can be "used to locate" something (e.g., by googling the name). But Kove has the burden of show-ing that S3 satisfies every element of the asserted claims, including location servers that map "identifiers" to "locations" specifying "where" data is stored. Kove can't do so.

And Kove's suggestion that ██████████████████████████████████ ██████████ lacks support. As Dr. Goodrich acknowledged and the record evidence shows, S3's ████████████████████████████████████████████████ ███████████████████████.[122] Although the ██████████████████████ █████████████████████████████████████████████████. For exam-ple, the record shows that ████████████████████████████████████████ ████████████████████.[123] And the location described in Kove's patents is where

---

[119] Dkt. 699 at 7; *see also*, *e.g.*, *id.* (quoting Dr. Goodrich's statement that ████████████████ ███).

[120] *Id.* (emphasis added).

[121] *Id.*

[122] Dkt. 687-16 at 2 ("█████████████████████████████████████████████ ████████████████████████████████████████████████.").

[123] *E.g.*, Dkt. 687-66 (Markle Tr. at 86:12–17 (describing ██████████████████); *id.* (showing

25

the data is stored, not an identifier that wouldn't include information showing where the data was or where it moved to.[124]

> Kove's own courtroom analogy illustrates the point. According to Kove:

> [An] analogy to the ██████████ location would be specifying the 'location' of a courtroom with the combination of 'Northern District of Illinois' and 'Judge Kennelly…. That there are other ways to specify the same location, such as '219 South Dearborn St.,' does not mean that the initial answer is incorrect or not a location.[125]

By Kove's logic, any information that can lead to other information satisfies both the "identifier" and "location," in the identifier/location mappings that the location server maintains in all asserted claims; any name is also a location. But that contradicts the current construction of "location," under which a location specifies "where" data is. If this Court moves its chambers to another building, "Judge Kennelly's courtroom" doesn't specify "where" that would be, without reference to other information that does. And the interpretation of "location" that Kove now argues and its expert applied in his reports is not only antithetical to the current constructions, but also every use of "location" in the claims and the specifications of Kove's patents.[126]

Thus, Kove can't show that S3 satisfies the location server or location requirements of the asserted claims, and summary judgment remains warranted.

### B. DDB Doesn't Infringe Under the Current Constructions.

Kove and its expert contend that DDB's ██████████ are the "location servers" that maintain "identifier/location mappings," as required for all asserted claims.[127] And Dr. Goodrich's

---

██████████████████████████████████); Ex. 102 (Hamilton Tr. at 110:10–21).

[124] *See, e.g.*, Dkt. 687-1 ('640 patent at abstract, 1:61–65 ("where" data is located is "key question"), 4:62–67 (describing dynamic association of identifiers with locations—not locations with other information)).

[125] Dkt. 699 at 8.

[126] *See, e.g.*, n.124, *supra*; Dkt. 484 at 11, 35; Dkt. 687-1 ('640 patent at 20:10–12).

[127] Dkt. 699 at 45; *accord* Dkt. 686 at 26 (citing Dkt. 687 (SMF) at ¶¶ 84–86).

report further contended that the ▮▮▮▮▮▮ store a ▮▮▮▮▮▮▮▮▮ that's the "identifier" in those "identifier/location mappings."[128] As Amazon explained, though, the main problem with that theory is that the "primary key"—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ that Kove relied on—isn't used by or sent to the ▮▮▮▮▮▮.[129] So, it can't be the "identifier." At deposition, Kove's expert admitted that the "primary key" ▮▮▮▮▮▮ ▮▮▮▮▮▮, and that he added ▮▮▮▮▮▮ to try to make it fit the claims:



> Amazon Atty: The primary key ▮▮▮▮▮▮▮▮▮▮, right?
> Goodrich: That's why I had this additional parenthetical that the primary key is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[130]

Kove's response only further confirms that the alleged "identifier" isn't used by or sent to the alleged location servers, and thus can't be the "identifier" in the location server's identifier/location mappings that the asserted claims require. Most notably, Kove clarifies that it's relying on the "primary key" for the alleged "identifier." And Kove emphasizes this point: Kove's infringement theory is based on DDB's "**primary** keys" satisfying the "identifier" limitation.[131]

In doing so, Kove disavows its expert's testimony and greatly simplifies the issues for summary judgment. Indeed, a signification portion of Amazon's motion is devoted to untangling Dr. Goodrich's reference to a ▮▮▮▮▮▮▮▮▮ Based on his deposition testimony, Amazon understood the parenthetical to be a reference to the ▮▮▮▮▮▮ which is a component of the "primary key."[132] Accordingly, Amazon's motion explains the relation between that

---

[128] Dkt. 686 at 26 (quoting Dkt. 687 (SMF) at ¶ 85); *accord* Dkt. 700 at ¶ 85.

[129] *E.g.*, Dkt. 686 at 26–29.

[130] Dkt. 686 at 28 (quoting Dkt. 687 (SMF) at ¶ 89); *accord* Dkt. 700 at ¶ 89.

[131] Dkt. 699 at 15 (emphasis in original); *see also id.* at 45 (Kove confirming that it's alleging ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮.

[132] *See* Dkt. 686 at 26–29; *see also, e.g.*, Dkt. 687/700 at ¶¶ 85 (quoting Dr. Goodrich testimony appearing to acknowledge that his opinions that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), 86 (explaining that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

component and the ███████████ and why it, too, can't satisfy the "identifier" requirement. But it turns out that this in-depth explanation was unnecessary.

Because Kove is relying on the "primary key," the analysis is straightforward. As Amazon argued, Dr. Goodrich admits, and Kove's response fails to dispute, the "primary key" ███████ ███████████████████████████████████████████████.[133] Under the current construction, all asserted claims require that the location server "maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients." If the alleged location server never uses or receives the alleged identifier, that requirement isn't met. And Kove fails to identify any material facts that might show otherwise.

To be sure, apart from emphasizing that Kove is relying on the "primary key," Kove's response is devoted to arguing against strawmen. For example, Kove oversimplifies Amazon's motion, claiming "AWS argues that the ███████████ in DDB do not satisfy the 'location server' claim limitation because they do not ███████████[134] Kove then argues that the current construction of location server doesn't expressly require storing identifiers, without any explanation of how location servers would maintain "identifier/location mappings" that didn't include the claimed identifier. In any event, that ignores what Amazon argued and what Dr. Goodrich testified. Amazon didn't merely argue that ███████████████████████████. Instead, as shown by the source code, the Amazon explained that ███████████████████████ ███████████████████.[135] Thus, Amazon's motion explains that ███████████████████ ███████████.[136] And as Dr. Goodrich admitted, the primary key ███████████████████

---

[133] *See* Dkt. 686 at 28; Dkt. 699 at 15.

[134] Dkt. 699 at 15.

[135] Dkt. 686 at 27–29.

[136] *E.g.*, *id.* at 28 ███████████████████████ (emphasis in original).

█████████"[137] If the primary key ███████████

█████████████████. And Kove doesn't attempt to explain how the alleged location

servers could possibly do so, given the undisputed facts. Accordingly, summary judgment of non-

infringement of all asserted claims remains warranted for DDB under the current constructions.

## III. KOVE'S RESPONSE CONFIRMS THAT SUMMARY JUDGMENT ON BOTH WILLFULNESS AND ENHANCED DAMAGES IS WARRANTED.

### A. PRE-SUIT WILLFULNESS

Willfulness requires a defendant to not only have knowledge of an asserted patent, but also

knowledge of its infringement of that patent. Thus, the Federal Circuit stated in *Bayer Healthcare*

*LLC v. Baxalta Inc.* that: "To establish willfulness, the patentee must show the accused infringer

had a specific intent to infringe at the time of the challenged conduct."[138]

Here, Kove's response admits that "Kove did not notify AWS of its patents, nor did the

parties engage in any communication regarding the patented technology at any point before Kove

filed its complaint" on December 12, 2018.[139] After deposing 25 total current and former Amazon

employees, Kove still has no evidence that anyone at Amazon knew of the asserted patents before

this case. And as the undisputed facts confirm, there's no reason that they should have. After all,

S3 has been on the market since 2006, and DDB since early 2012.[140] Kove's patents-in-suit have

never been licensed to anyone. Until doing so here, Kove also had never asserted them against

anyone. And there's no evidence that these patents had any other marketplace significance, as

Kove had stopping trying to sell any products practicing them no later than 2006.[141]

---

[137] *E.g.*, *id.*; Dkt. 687 (SMF) at ¶ 89.

[138] 989 F.3d 964, 987 (Fed. Cir. 2021) (citing *Halo*, *supra*).

[139] Dkt. 699 at 63; *accord* Dkt. 700 at ¶ 90.

[140] Dkt. 687/700 at ¶¶ 14, 17.

[141] *E.g.*, Dkt. 700 at ¶ 93; *see also id.* at ¶ 92 (admitting Dr. Goodrich testified that he had never heard of

What's more, the undisputed facts indicate that Kove deliberately avoided telling Amazon about the asserted patents when it was attempting to sell other technology to Amazon in 2017–18. Notably, these Kove efforts to sell to Amazon included at least three face-to-face meetings between Dr. Overton and Amazon.[142] And Kove's sales pitch specifically referred to the DDB product that Kove would later accuse in this lawsuit.[143] Yet, although Kove had been discussing potential infringement litigation with counsel since 2014, Kove never mentioned the asserted patents to Amazon at any time before filing the complaint.[144]

Thus, as Amazon's motion explained, Kove chose to ambush Amazon with the allegations here, rather than give Amazon pre-suit notice. That gambit shouldn't be rewarded with enhanced damages intended to punish the worst cases of willful infringement.[145] Kove's brief doesn't respond to this, and instead ignores the 2017–18 communications.

### 1. Kove's Response Ignores the Case Law Amazon Cited, Further Confirming There's No Genuine Dispute of Material Fact Here.

Kove's response confirms that pre-suit willfulness hinges on Kove's theory that Amazon knew about the asserted patents, and the alleged infringement thereof, because Kove's patents were cited during the prosecution of certain Amazon patents. But Kove ignores that what it's relying on here falls short of what courts, including the Federal Circuit, have repeatedly found insufficient to support willfulness. To give examples, Amazon's motion cited the following cases:[146]

- *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202, 2017 WL 2190055, at *2 (E.D. Tex. May 18, 2017) (Bryson, J.) (granting defendant JMOL on

---

patents-in-suit or Kove); Dkt. 686 at 30–31 (discussing this and other relevant testimony).

[142] *E.g.*, Dkt. 686 at 31; Dkt. 700 at ¶ 94.

[143] *E.g.*, Dkt. 700 at ¶ 95.

[144] Dkt. 699 at 63; Dkt. 700 at ¶ 96 (admitting Dr. Overton had been "discussing potential litigation" since 2014, but objecting that "discussing potential litigation does not amount to 'considering filing' litigation").

[145] *See generally Halo*, 579 U.S. at 103–04.

[146] Dkt. 686 at 32–33.

willfulness, where plaintiff sent defendant pre-suit letter identifying patents at issue, be-
cause that letter didn't adequately address infringement or validity and plaintiff had waited
years after defendant began marketing accused product to file suit).

- *Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*, 638 F. Supp. 3d 1088, 1097–98
(N.D. Cal. 2022) (dismissing willfulness, where defendant's in-house counsel had prose-
cuted 75 patents citing to plaintiff's patents and defendant had also engaged in pre-suit
negotiations to purchase plaintiff's entire patent portfolio, including patents at issue).

- *BASF v. CSIRO*, 28 F.4th 1247 (Fed. Cir. 2022) (affirming decision granting defendant
JMOL on willfulness, where trial evidence showed that certain of defendant's employees
"were aware and kept track of" plaintiff's patents-in-suit).

- *Callwave Commc'ns LLC v. AT & T Mobility LLC*, No. 12-cv-1701, 2014 WL 5363741, at
*2 (D. Del. Jan. 28, 2014) (finding defendant's citations to patent-in-suit "in multiple In-
formation Disclosure Statements … insufficient to support an allegation of willfulness").

- *Acceleron, LLC v. Dell Inc.*, No. 1:12-cv-4123, 2022 WL 1087683, at *4–5 (N.D. Ga. Mar.
7, 2022) (finding defendant's "knowledge of the asserted patent and of [plaintiff's] other
lawsuits" and "continu[ing] to manufacture and sell its products without changes … were
not enough for a reasonable jury to find that infringement was either known or so obvious
that it should have been known."), *aff'd* 2023 WL 4503189 (Fed. Cir. July 13, 2023).

Although Amazon's motion discussed some of these cases at length, Kove's response

doesn't make any attempt to distinguish them or address Amazon's related arguments.[147] Indeed,

Kove cites just one of the five examples above—namely, Circuit Judge Bryson's *Erfindergemein-*

*schaft* decision. But Kove only cites it for a general proposition, appearing not to realize that Judge

Bryson ultimately found the evidence insufficient to send willfulness to the jury, or that Amazon

applied this case when arguing for a similar result here.[148] Again, compared to *Erfindergemein-*

*schaft*, Kove provided less pre-suit notice (i.e., none, rather than a partial notice letter identifying

the patents at issue), and Kove waited longer after the release of the accused Amazon products to

file the complaint.[149] Accordingly, just as in *Erfindergemeinschaft*, not to mention *Dali Wireless*,

---

[147] *Compare* Dkt. 699 at 54 (Kove responding to pre-suit portion of motion in one sentence incorrectly
asserting that Amazon "largely relies" on "outdated" case law from before *Halo*) *with* Dkt. 686 at 30–33
(relying entirely on cases from after 2016 *Halo* decision, except for one (out of nine total cited) that Amazon
specifically flagged as "pre-*Halo*") *and*, *e.g.*, Dkt. 686 at 32 (full-page discussion of *Dali Wireless*).

[148] Dkt. 699 at 48 ("Determining willfulness is a highly fact-based endeavor.").

[149] Dkt. 686 at 33 (discussing *Erfindergemeinschaft*, *supra*).

*BASF*, *Callwave*, and *Acceleron*, no reasonable jury could find that Amazon knew of the asserted patents and the alleged infringement at any time before Kove filed suit.

### 2. Kove Cites No Evidence Raising a Genuine Dispute of Material Fact on Knowledge of the Patents.

Under the well-established summary judgment standard, Kove had the burden to "come forward with specific facts showing that there is a genuine issue for trial."[150] Kove failed to do so on the required knowledge of the patents. At best, the evidence Kove relies on shows that Amazon's outside patent prosecution counsel addressed one asserted patent—specifically, the '978 patent—when responding to an August 24, 2011 non-final rejection of an Amazon patent application. Notably, that's more than a year before the time period for which Kove can seek relief for alleged pre-suit infringement.[151] Kove hasn't identified any other such discussions of the asserted patents, in any other file histories for Amazon patents. And Kove's only remaining evidence consists of a list of Amazon patents, where Kove patents were cited in information disclosure statements along with hundreds (and, frequently, more than 1,000) other references that may have been carried over from related or foreign patent applications.

Amazon's motion already addressed the Patent Office filings that Kove's brief relies on, because Kove cited them when responding to an Amazon interrogatory on willfulness. Kove's brief doesn't acknowledge this, or respond to anything that Amazon's motion said about this evidence. Instead, Kove repeats the substance of its interrogatory response, including highlighting the same two examples of Amazon patents that Amazon addressed in its motion—namely, Amazon's 8,239,571 and 8,234,403 patents, which both name Dr. Sivasubramanian as an inventor.[152]

---

[150] *E.g.*, *Bank of Com. v. Hoffman*, 829 F.3d 542, 546 (7th Cir. 2016) (internal quotation omitted).

[151] *See* Dkt. 699 at 48; Dkt. 1 (Dec. 12, 2018 complaint); 35 U.S.C. § 286 ("[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint.").

[152] Dkt. 699 at 48–49; Dkt. 686 at 34. Kove confusingly refers to the examples by application, not matching

Kove's reliance on this material in its brief again omits important context. As Amazon explained, it's among the world's largest patent holders, ███████████████████████, plus again as many non-U.S. patents or pending U.S. patent applications. The large majority were developed by Amazon (rather than acquired), and many relate to cloud computing.[153] Again, the file history for Amazon's '571 patent is the only instance Kove has identified where there was any discussion of one of Kove's asserted patents. And hundreds of non-Kove patents and references were also cited during the prosecutions of the Amazon patents that Kove relies on.[154]

If anything, the thousands of cloud-computing patents Amazon developed in house, including Dr. Sivasubramanian's more than 150 patents, and the relative absence of any substantive discussion or rejections based on Kove's patents further confirms that those patents lack any particular significance in this technological space. Indeed, Kove argues that the "examiner specifically called out" the '978 patent's "mapping between identifiers and locations" and "redirect messages."[155] But such features aren't novel or unique to the '978 patent, so other references would've done just as well. For instance, '978 claims 1 and 31 describe location servers and thus "mapping between identifiers and locations," and the Patent Office found those claims invalid as obvious over the cited prior art in Reexamination No. 90/019,034.

Further, taking Kove's showing at face value means that Kove's patents were brought to the Patent Office's attention during the prosecution of 400 Amazon patent applications, but weren't further discussed during 399 of those prosecutions, with the sole outlier occurring in 2011,

---

them to the patents discussed in Amazon's motion and Kove's interrogatory response. For clarity, Kove's references to the '301 and '484 applications correspond with Amazon's '571 and '403 patents, respectively.

[153] Dkt. 686 at 33 (citing Dkt. 687 (SMF) at ¶ 97).

[154] *E.g.*, *id*. at 34.

[155] Dkt. 699 at 49.

more than seven years before Kove filed its complaint and first provided notice of the alleged infringement. Such facts don't show that Amazon should've known of the alleged infringement, as Kove argues. Rather, they further confirm that no reasonable jury could find pre-suit willfulness.

### 3. Kove's "Head in the Sand" Theory Fails to Raise a Dispute of Material Fact on Knowledge of Infringement.

Because there's no evidence that anyone at Amazon had ever heard of Kove or its patents before this case, there's also no evidence that Amazon knew it was infringing Kove's patents. So, in a bid to show the requisite knowledge of infringement, Kove instead argues that Amazon had a "policy of willful blindness" to others' intellectual property, generally. Because that theory is unsupported, factually and legally, it fails to raise a dispute of material fact.

Most notably, Kove's argument ignores that Amazon has qualified legal employees who are responsible for legal matters, including investigating potential infringement.[156] That's exactly who should be investigating such matters, and Kove doesn't suggest otherwise. And Kove cites no evidence suggesting Amazon employees who work on legal matters put their "heads in the sand." On the contrary, Mr. Hayden, the only witness from Amazon's legal department whom Kove cites (though Kove ignores his relevant testimony), testified that Amazon ███████████████████ ██████████████████████████████████████████████████████████████.[157]

Further, Mr. Hayden testified that Amazon's legal department ████████████████ ██████████████████████████. And when Kove asked Mr. Hayden to provide an

---

[156] *See*, *e.g.*, Ex. 102 (Hamilton Tr. at 43:20–44:11); Dkt. 700-34 (Sivasubramanian Tr. at 74:21–75:7).

[157] Ex. 82 (Hayden Tr. at 416:25–417:5: ████████████████████████████████████ ██████████████████████████████████████); *see also*, *e.g.*, Dkt. 700-34 (Sivasubramanian Tr. at 77:17–22: "I don't know if there is a policy, per se. It's just that patent documents ███████ ████████████████████████████████ So I don't think ██████████████████ ██████████████████████; Ex. 102 (Hamilton Tr. at 58:7–59:21).

example, he explained that Amazon had previously ███████████████████████████

██████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████.[158] No similar facts

are present here. Nor Kove does explain why Amazon should've similarly investigate the long

unused, unlicensed, and unasserted Kove patents at issue.

Moreover, Amazon Web Services offers over 200 products. As Stanford Professor Mark

Lemley estimated, only two percent of issued patents are ever litigated.[159] Amazon alone has

████████████████████, and one randomly selected Amazon patent on Kove's list cited over 1,000

references in addition to Kove's '978 patent.[160] Given these facts, devoting significant resources

to every similar item of prior art, for every product, would be impracticable if not impossible.

In an attempt to manufacture a fact issue, Kove focuses on whether Amazon "engineers,"

specifically, "search for patents related to their work."[161] But as Amazon's engineers uniformly

testified, they focus on customer needs and ███████████████████████████████████

██████████████.[162] Kove doesn't explain how or cite any supporting law suggesting that such testi-

mony shows willfulness. Thus, none of the testimony that Kove cites supports willfulness, and

summary judgment is warranted.

---

[158] *See* Dkt. 701 at ¶ 61 (Kove quoting pages omitted from Ex. K33); Ex. 82 (Hayden Tr. at 402:18–403:6).

[159] Mark A. Lemley, *Rational Ignorance at the Patent Office*, 95 Nw. U. L. Rev. 1495, 1501 (2001).

[160] *E.g.*, Dkt. 686 at 33–35.

[161] Dkt. 699 at 52.

[162] *See, e.g.*, Dkt. 700-34 (Sivasubramanian Tr. at 74:21–75:7: "I feel like I answered this before. When we build it, we actually look for customer requirements and feedback, and then we go and look at what are the best ways to solving it. And so go write the design docs and so forth. ██████████████████████████████ ████████████████████████); Ex. 102 (Hamilton Tr. at 158:25–159:4).

### 4. Kove's Cited Cases Are Inapposite.

Kove contends that the evidence here "aligns with numerous cases recognizing that plaintiffs can prove knowledge based on Patent Office rejections involving the asserted patents."[163] For support, however, Kove only cites three cases that are all inapposite.

To begin with, each of Kove's cited cases involved a Rule 12(b)(6) motion. The issue thus was whether the complaint included sufficient factual matter, accepted as true, to state a claim for willful infringement that's "plausible on its face."[164] Because a greater showing is required to successfully oppose a motion for summary judgment, a court's finding that factual matter supports the plausibility of a willfulness claim doesn't necessarily mean that willfulness should go to the jury.[165] After all, the denial of a Rule 12 motion opens the doors of discovery, permitting a plaintiff to collect evidence that could prove to a reasonable jury the claim that the defendant had the specific intent to infringe. Here, despite voluminous discovery, Kove has uncovered no such evidence, forcing it to instead rely on the Patent Office filings that Kove has had since before the complaint. None of the Rule 12 cases that Kove cites holds that this is sufficient to send willfulness to the jury. If anything, they further confirm that it's not.

For instance, Kove first cites the Eastern District of Virginia's denial of a motion to dismiss willfulness in *Virginia Innovation Sciences, Inc. v. Samsung Electronics Co.*[166] But Kove omits

---

[163] Dkt. 699 at 52.

[164] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief.").

[165] *See*, *e.g.*, *Bartholemew v. Bail Bonds Unlimited, Inc.*, No. 05-cv-4165, 2008 WL 4286363, at *4 (E.D. La. Sept. 17, 2008) ("[W]hile the Plaintiff's complaint sufficiently clears the plausibility hurdle of *Twombly*, summary judgment has a higher standard of proof."); *USI Ins. Servs. LLC v. Bentz*, No. 1:18-cv-255, 2023 WL 5670683, at *12 (D.N.D. Apr. 21, 2023) (A Rule 12(b)(6) motion "may easily fail under the generous standard given to the non-moving party…. In contrast, a motion for summary judgment under Rule 56(a) provokes a more stringent rule and usually occurs after the parties have conducted discovery.").

[166] Dkt. 699 at 52 (citing 983 F. Supp. 2d 700, 712 (E.D. Va. 2013)).

that, regardless of this plausibility determination, the court ultimately granted the moving defendant summary judgment on willfulness later in the case.[167]

Next, Kove cites *Soverain IP, LLC v. Microsoft Corp.*, an Eastern District of Texas case that suggests that the Patent Office filings that Kove relies on wouldn't be enough to oppose a Rule 12 motion, much less summary judgment, absent additional facts supporting the defendant's knowledge of the infringement not present here. As the court explained in *Soverain IP*, the complaint also alleged, among other things, "favorable media coverage" and "licensing by AT&T's competitors."[168] And only when all the allegations of knowledge were "[c]onsidered together" did the court find them sufficient "to reasonably infer AT&T knew of the asserted patents."[169]

And in the final case that Kove cites, *MONEC Holding*, the District of Delaware actually granted, rather than denied, the defendant's motion to dismiss on willfulness.[170] The decision only refers to Patent Office filings in one sentence of dicta that Kove quotes in its brief, while omitting that the quoted sentence was expressly describing the Rule 12 pleading standard.[171]

Thus, none of Kove's cited cases involves summary judgment or suggests that Kove has raised a genuine issue of material fact as to whether Amazon knew of any infringement.

### B.   POST-COMPLAINT WILLFULNESS

#### 1.   Kove Doesn't Acknowledge, Much Less Respond to, Any of Amazon's Arguments on Post-Complaint Willfulness.

Kove argues that "[n]either law nor logic supports AWS's assertion that it did not know

---

[167] 983 F. Supp. 2d 713, 723 (E.D. Va. 2014). The Federal Circuit later vacated final judgment on unrelated grounds. 614 F. App'x 503 (Fed. Cir. 2015). The case then settled. E.D. Va. No. 2:12-cv-548, Dkt. 618.

[168] No. 2:17-cv-204, 2018 WL 1465792, at *2 (E.D. Tex. Mar. 26, 2018).

[169] *Id.* (citing decisions where "none of the allegations standing alone" satisfied Rule 12 standard). The case resolved before summary judgment, so willfulness wasn't further addressed.

[170] *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225 (D. Del. 2012).

[171] *Compare* Dkt. 699 at 52 *with MONEC*, 897 F. Supp. 2d at 229–30.

about the patents until it filed its answer."[172] But Amazon made no such assertion.[173] And Kove's strawman argument is a poor substitute for raising a genuine dispute of material fact.

As noted, willfulness requires that the defendant have knowledge not only of an asserted patent, but also the infringement of that patent.[174] Here, Kove doesn't dispute that the challenged conduct—i.e., the alleged willful infringement of Kove's patents—necessarily ended when those patents expired.[175] At the latest, the '640 and '170 patents expired on April 8, 2020, and the '978 patent expired on September 25, 2020.[176] And for the reasons detailed in Amazon's motion, no reasonable jury could find willful infringement during the relatively short period of time between the December 12, 2018 filing of the complaint and those cutoffs.

When it comes to post-complaint willfulness, courts have recognized that making the required showing is particularly problematic, and may be impossible, when a patentee fails to provide pre-suit notice of the alleged infringement.[177] After all, basic notions of fairness and justice require that an accused party have the opportunity to obtain the advice of counsel, investigate the allegations, and assert its legal rights and defenses in good faith.[178] And in cases where willfulness relies on the complaint, courts have repeatedly observed that it's "beyond the pale to expect every patent defendant to cease all allegedly infringing conduct once a complaint is filed to force them

---

[172] Dkt. 699 at 55.

[173] *Compare* Dkt. 686 at 35–38 (stating "two patents-in-suit expired before Amazon answered the complaint on May 1, 2020," in context of arguing, with plentiful support, that it's "beyond the pale to expect every patent defendant to cease all allegedly infringing conduct once a complaint is filed").

[174] *E.g.*, *Dali Wireless*, 638 F. Supp. 3d at 1095 (citing, *inter alia*, *Halo*, 579 U.S. at 103–04).

[175] *See* Dkt. 686 at 35–36; Dkt. 699 at 55 (not disputing cutoff); *see also Halo*, 579 U.S. at 94 ("Culpability, however, is generally measured against the actor's knowledge at the time of the challenged conduct.").

[176] Dkt. 686 at 36 (citing Dkt. 145 at 3).

[177] *Id.* at 36–37 (collecting cases).

[178] *See id.* (quoting, for example, *GoTV Streaming, LLC v. Netflix*, No. 2:22-cv-7556, 2023 WL 2627016, at *3 (C.D. Cal. Feb. 16, 2023)).

to avoid enhanced damages for willful infringement."[179] In total, Amazon cited 15 cases conclud-

ing that, in the absence of pre-suit notice, the knowledge a defendant receives from a complaint is

insufficient to send willfulness to the jury.[180] Kove doesn't discuss or distinguish any of them.

To be sure, some cases that Amazon cited note a split among district courts over whether

an absence of pre-suit notice is always fatal to post-complaint willfulness, or only sometimes. But

it's unnecessary for this Court to weigh in on one side or the other. As Amazon explained, the

justification for summary judgment here is greater than in every case Amazon cited because the

window for potentially culpable conduct here is so narrow (i.e., between December 2018 and the

expirations of the patents in May or September 2020).[181] And none of the plaintiffs in those cases

waited in ambush for as long as Kove did (12 years after the release of S3 and six years after DDB).

Simply put, the knowledge a defendant receives from a complaint, by itself, isn't enough

for willfulness. If it were, willfulness always would go to the jury. But it doesn't, as the case law

that Amazon cited demonstrates. And given Kove's conduct, if granting summary judgment on

willfulness is justified in any case, it is here, too.

## 2.      Kove's Cited Cases Are Inapposite

Kove cites two cases, *Bio-Rad Labs. v. ITC* and *Arigna v. Nissan*, for the proposition that

"[a] reasonable jury could find that AWS knew of the patents no later than December 12, 2018,

when Kove filed its complaint."[182] In doing so, Kove fails to respond to anything in Amazon's

motion. Amazon hasn't disputed that service of the complaint would provide knowledge of the

---

[179] *Id*. at 37 (quoting three decisions, including *NXP USA, Inc. v. Impinj, Inc.*, No. 2:20-cv-1503, 2023 WL 3852914, at *4 (W.D. Wash. June 6, 2023)).

[180] *Id*. at 36–37.

[181] *See id*. at 35, 37–38 (noting Amazon didn't file its answer until after two patents expired and Kove didn't serve L.P.R.-compliant final infringement contentions until after all three did).

[182] Dkt. 699 at 55 (citing *Bio-Rad Lab'ys, Inc. v. ITC*, 998 F.3d 1320 (Fed. Cir. 2021); *Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*, No. 2:22-cv-126, 2022 WL 17978913 (E.D. Tex. Oct. 5, 2022)).

patents. Again, however, any finding of willfulness *also* requires that Kove show knowledge of infringement.[183] And Kove fails to cite any case law suggesting that a reasonable jury could find willfulness—rather than only knowledge of the patents—based solely on the complaint.

Regardless of why Kove cited them, *Bio-Rad* and *Arigna* also are inapposite for many reasons. For instance, unlike here, both involved patents that haven't expired. According to Google patents, the patent in *Arigna* (U.S. Patent No. 7,397,318) will expire in 2027, and the three patents in *Bio-Rad Labs.* (U.S. Patent Nos. 9,500,664; 9,636,682; and 9,649,635) will expire in 2031–32. As a result, the post-complaint conduct that may potentially be relevant to willful infringement in those cases would be ongoing. Here, by contrast, any alleged willful infringment necessarily stopped in May or September 2020, relatively early in this case. As noted, Kove hadn't even served final infringement contentions complying with the Local Patent Rules at that time.[184]

Additionally, in *Bio-Rad*, there was pre-suit notice. Indeed, the patent owner (Bio-Rad) and the accused infringer (10X Genomics) had a "long history together."[185] This included the inventors of the asserted patents leaving the patent owner, forming the accused infringer as a competing company, and later being accused of infringing the very same patents that they had previously developed and assigned to their former employer.[186] Nothing in *Bio-Rad* is controlling or persuasive here, where those unusual facts aren't present and Kove admits there was no pre-suit notice. And Kove's citation to *Arigna*, a report and recommendation that the court never adopted, is similarly unhelpful.[187]

---

[183] *E.g.*, *Dali Wireless*, 638 F. Supp. 3d at 1095.

[184] Dkt. 686 at 38.

[185] 998 F.3d at 1325.

[186] *Id.*

[187] 2022 WL 17978913, at *2 (noting "circumstantial evidence specific to this case" absent from decisions affirming contrary results); *see also* E.D. Tex. No. 2:22-cv-126, Dkt. 338 (staying case after R&R issued).

### C. KOVE WAIVED ANY OPPOSITION TO AMAZON'S REQUEST FOR SUMMARY JUDGMENT ON § 284 ENHANCED DAMAGES.

In *Halo*, the Supreme Court explained that Congress intended enhanced damages under 35 U.S.C. § 284 to be "a 'punitive' or 'vindictive' sanction for egregious infringement behavior."[188] A willfulness finding is required, but not sufficient, for a court to impose this severe sanction. As the Federal Circuit has held: "Although willfulness is a component of enhancement, 'an award of enhanced damages does not necessarily flow from a willfulness finding.'"[189]

Here, Amazon's motion explained that, after the Supreme Court's 2016 *Halo* decision, the Federal Circuit divided the enhanced-damages determination into two stages.[190] As a threshold matter, the factfinder must find that the alleged infringement was willful.[191] If it was, the court determines whether the accused infringer's conduct was sufficiently "egregious" or "worthy of punishment" to warrant enhanced damages under § 284.[192] The Federal Circuit's more recent post-*Halo* decisions emphasize the importance of this division of labor. For instance, Kove quotes that court's 2021 statement in *SRI International* that willfulness "requires a jury to find no more than deliberate or intentional infringement."[193] But as the Federal Circuit explained, this was intended to clarify that a jury's willfulness finding is one component of the overarching issue of whether an infringer's conduct is so "egregious" as to warrant § 284 enhanced damages under *Halo*.[194]

---

[188] 579 U.S. at 103.

[189] *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021).

[190] Dkt. 686 at 29 (citing, *inter alia, Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020)).

[191] *Id*. at 30.

[192] *Id*. (quoting *Eko Brands*, 946 F.3d at 1378; *see also Halo*, 579 U.S. at 103–04 ("The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.").

[193] Dkt. 699 at 48 (quoting 14 F.4th at 1330).

[194] 14 F.4th at 1329–30 (explaining this was necessary to clarify some decisions issued in the wake of *Halo*).

Here, Amazon's motion argued that summary judgment is warranted on either willfulness or the overarching issue of enhanced damages under § 284. For instance, in the pre-suit section of the motion, Amazon argued that:

> [E]ven assuming a jury could find willfulness, the circumstances here wouldn't justify exercising discretion to award enhanced damages, as there's no basis to find Amazon's pre-suit conduct "egregious" or "characteristic of a pirate." Accordingly, this Court should grant Amazon partial summary judgment of no pre-suit willfulness or § 284 enhanced damages. [195]

Similarly, in the post-suit section, Amazon argued that:

> No reasonable jury could find willful infringement during the period between the filing of the complaint on December 12, 2018, and expiration of the patents in 2020. And even assuming *arguendo* that they could, there would be no basis for the Court to find Amazon's conduct during this period sufficiently egregious to warrant enhanced damages.[196]

And the above passages both appear in Section III of the Argument, entitled: "Summary Judgment on Willfulness and Enhanced Damages Is Warranted."[197]

For the reasons explained above, there's no reason to send willfulness to the jury. But even if a reasonable jury could find willfulness here, there would still be no basis for this Court to find that Amazon's conduct warrants § 284 enhanced damages. Whether this Court grants summary judgment on willfulness, § 284, or both, the end result is the same. And given the limited universe of relevant conduct, which necessarily ended with the expirations of Kove's patents in 2020, the issues of willfulness and § 284 enhanced damages are both equally ripe for adjudication.

Kove's brief doesn't mention § 284, respond to Amazon's arguments for summary judgment on enhanced damages, or attempt to identify any "egregious" conduct that would warrant

---

[195] Dkt. 686 at 35 (quoting *Halo*, 579 U.S. at 104.

[196] *Id*. at 36 (citing *Halo*, 579 U.S. at 94).

[197] *Id*. at 29; *see also id*. at 3 (Introduction: "Summary judgment on Kove's willfulness and enhanced damages allegations is also appropriate."), 39 (Conclusion: "[T]here are no facts to support a finding of willfulness or enhanced damages here, and summary judgment is also warranted on those issues.").

such damages under *Halo*. Accordingly, Kove has waived its opposition to Amazon request for summary judgment on § 284 enhanced damages. And Amazon is entitled to summary judgment on that issue, independent of any decision or verdict on willfulness.

## OPPOSITION TO KOVE'S CROSS MOTION FOR SUMMARY JUDGMENT

At every turn, Kove's cross-motion ignores both governing law and the case record. Indeed, Kove's ineligibility arguments eschew relevant Federal Circuit guidance about the importance of claim construction in § 101 determinations, and overstate the Court's limited prior decision at the pleading stage. Likewise, Kove's arguments on Amazon's equitable defenses ignore that the discovery record shows there are at least material factual disputes on intent. And Kove's arguments on double-patenting and prior art invalidity defenses fair no better, with Kove taking a single paragraph of Amazon's expert's report out of context and mischaracterizing the applicable legal standards. Because the record is replete with evidence sufficient to support Amazon's challenged defenses, the Court should deny Kove's cross-motion for summary judgment.

## I.     DEVELOPMENTS IN THE RECORD JUSTIFY FURTHER CONSIDERATION OF THE ASSERTED CLAIMS' ELIGIBILITY.

Under the Supreme Court's *Alice* test, a patent's claims are ineligible under 35 U.S.C. § 101 if they're directed to an abstract idea without being transformed by an "inventive concept."[198] This Court applied the *Alice* test to three of Kove's asserted claims almost four years ago, when it denied Amazon's motion to dismiss on the grounds that the challenged claims weren't directed to an abstract idea. Kove argues that this decision, made before discovery, claim construction, or multiple reexaminations concerning each asserted claim, precludes the Court from later considering eligibility. But that's incorrect. As the Federal Circuit explained in *Pfizer, Inc. v. Teva Pharms.,*

---

[198] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 221 (2014).

*USA, Inc.*, "a conclusion of law…is subject to change upon the development of the record."[199] Because patent eligibility "is a question of law based on underlying facts,"[200] this Court should consider all relevant developments before making any final eligibility decision.

Courts regularly revisit eligibility decisions made at the 12(b)(6) stage to account for new evidence in the record. For example, in *Personalized Media Communications, LLC v. Apple, Inc.*, the Eastern District of Texas reached the "purely legal conclusion" at the motion to dismiss stage that the asserted patent "does not claim an abstract idea."[201] Like Kove, the plaintiff argued that the initial § 101 opinion barred the defendant from "re-litigating" the issue because "there [we]re no changes in law, claim constructions, or facts that justify revisiting this determination."[202] But the court disagreed, finding that intervening developments in the factual record, including claim construction, discovery, and expert reports, were likely to inform its eligibility analysis.[203]

Intervening developments in the factual record of this case should inform the Court's eligibility analysis, as well. Key developments include Dr. Overton's admissions at deposition that many limitations of the patents-in-suit weren't inventive,[204] Kove's assertion of fourteen additional claims,[205] Kove's statements limiting claim scope to survive reexamination, and the parties' expert reports. In addition, Judge Pallmeyer construed the asserted claims after ruling on the § 101 motion. And Amazon's request in its motion for summary judgment for further claim constructions

---

[199] 429 F.3d 1364, 1377 (Fed. Cir. 2005).

[200] *Athena Diagnostics, Inc. v. Mayo Collaborative Servs.*, LLC, 915 F.3d 743, 749 (Fed. Cir. 2019).

[201] No. 2:15-cv-1366, 2021 WL 2696561, at *2 (E.D. Tex. Jan. 29, 2021), *adopted*, 2021 WL 2697610 (E.D. Tex. Mar. 13, 2021).

[202] 2021 WL 2696561, at *2.

[203] *Id.* at *3.

[204] *E.g.*, Dkt. 700-42 at ¶ 276.

[205] *E.g.*, Dkt. 700 at ¶ 4.

based on Kove's limiting statements to the Patent Office is also now pending.

Federal Circuit law teaches that such construction is a critical element for a full and proper § 101 analysis. Indeed, the Federal Circuit advises that it is "ordinarily…desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."[206] Here, the Court recognized this principle in a prior order, stating that Amazon's defenses—including ineligibility—"may turn on the interpretations of the disputed claim terms."[207] And the construed terms are also a meaningful part of the fourteen asserted claims that the Court has yet to consider. For instance, Kove used three of them—"client," "location," and "location server"—to summarize six of the additional independent claims in its motion.[208]

Mr. Greene, Amazon's invalidity expert, took these "intervening developments into account" when rendering his opinions that the claims of the asserted patents are invalid under § 101.[209] For example, Mr. Greene opined that Kove's patent claims are directed to an abstract idea because "a POSITA would understand that these 'location servers' and 'location stores' could be implemented on any conventional, standard, and well-known computer or server." This opinion, he explained, was reached "in light of…the Court's claim construction order" and "supported by the Court's claim construction of 'location server.'"[210] And Mr. Greene likewise considered Dr. Overton's admission "that many of the [asserted patents'] routine, well-understood, and conventional limitations were not inventive" when reaching his opinion that the asserted claims are

---

[206] *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).

[207] Dkt. 484 at 2 (discussing Amazon's defenses more than 20 months after denying motion to dismiss).

[208] *See* Dkt. 382 & 484 (claim construction); Dkt. 699 at 61.

[209] *See*, *e.g.* Dkt. 700-42 at ¶ 261.

[210] *Id*. at ¶ 265.

directed to a patent-ineligible concept and don't contain an inventive concept.[211]

Mr. Greene's opinions further show that genuine issues of material fact preclude summary judgment. As the Seventh Circuit explained in *United States v. Brown*, expert testimony exists "to assist the trier of fact to…make a factual determination in cases in which intelligent evaluation of facts is often difficult or impossible without the application of some specialized knowledge."[212] For this reason, this court previously recognized in *Chamberlain Grp., Inc. v. Lear Corp.* that granting summary judgment in the face of an expert's "reasoned explanations" would require the court to "weigh conflicting evidence."[213] Because "[s]ummary judgment is not an appropriate occasion for weighing the evidence," such reasoned opinions necessarily preclude it.[214]

Mr. Greene's expert opinion, claim construction, and other developments in the record preclude summary judgment on Amazon's § 101 defense, and Kove's motion for summary judgment on it should be denied.

## II. ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON EQUITABLE ESTOPPEL, WAIVER, AND INEQUITABLE CONDUCT.

Kove seeks summary judgment on Amazon's equitable estoppel, waiver, and inequitable conduct defenses because it argues that the record can't support an inference of intent. But that's incorrect, as genuine disputes of material fact remain on that element. For example, the parties dispute whether Kove intentionally failed to mention the asserted patents to Amazon when discussing AWS services (including DynamoDB) in 2017-2018 and whether the inventors

---

[211] *Id*. at ¶¶ 276, 278.

[212] 32 F.3d 236, 239 (7th Cir. 1994); *see also Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) (observing that sufficiency of factual basis underlying expert report is governed by regional circuit, because it "is not a matter peculiar to patent law").

[213] *Chamberlain Grp., Inc. v. Lear Corp.*, 756 F. Supp. 2d 938, 954 (N.D. Ill. 2010).

[214] *Id.* at 954–55 (quoting *Dowden v. Polymer Raymond, Inc.*, 966 F.2d 1206, 1207 (7th Cir. 1992)).

intentionally withheld a material reference from the PTO during prosecution. The record contains sufficient evidence for a reasonable factfinder to determine that these actions were intentional, and that Amazon met its burden for each defense. As such, the Court should deny summary judgment.

### A. EQUITABLE ESTOPPEL AND WAIVER

It's undisputed that Kove didn't notify Amazon of the asserted patents before filing this lawsuit. But this doesn't preclude Amazon's equitable defenses, as Kove argues. Kove hinges its argument on the record purportedly not supporting the "'most common situation' giving rise to equitable estoppel" (i.e., where a patentee fails to follow up on threatened enforcement action).[215] But that's not the test. Rather, Amazon need only show that Kove's misleading conduct materially prejudiced Amazon (equitable estoppel) and that Kove intentionally relinquished its right to enforce the asserted patents against Amazon (waiver).[216] Amazon can show both, based on the facts established in discovery here.

For instance, it supports both defenses that Kove failed to address the asserted patents or its infringement contentions during the communications between Kove and Amazon in 2017 and 2018, as detailed above regarding willfulness.[217] Had anyone at Amazon been aware of Kove's patents, as Kove has alleged, Kove's silence would've led them to reasonably believe that Kove didn't plan on asserting infringement claims against Amazon cloud storage systems, particularly DynamoDB.[218] Had Kove mentioned the asserted patents, Amazon could have investigated the

---

[215] Dkt. 699 at 62 (quoting *Ferring B.V. v. Allergan, Inc.*, 980 F.2d 841, 853 (Fed. Cir. 2020)).

[216] *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1022 (Fed. Cir. 1992) (en banc) (regarding equitable estoppel, explaining that "'[c]onduct' may include…inaction"); *Robertson Transformer Co. v. Gen. Elec. Co.,* 191 F. Supp. 3d 826, 832 (N.D. Ill. 2016) (discussing waiver).

[217] *E.g.*, Amazon's Statement of Additional Material Facts (ASAMF) at ¶ 9.

[218] *Id.* at ¶ 12.

issue and potentially taken steps to avoid liability.[219] The record also demonstrates that Kove's failure to inform Amazon of the asserted patents was intentional, as Kove had been considering filing a patent infringement lawsuit against Amazon for at least four years before these communications, and had been aware of the accused products since their releases in 2006 and 2012.[220]

Applying these facts to Amazon's equitable estoppel and waiver defenses would require the Court to draw numerous inferences regarding credibility and intent, neither of which is appropriate at summary judgment. As the Supreme Court has explained, "the drawing of legitimate inferences" is a "jury function[], not [that] of a judge…ruling on a motion for summary judgment."[221] And, as the Federal Circuit explained in *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, "intent is itself a question of fact."[222] Because genuine disputes of material fact remain, the Court should deny Kove's motion for summary judgment regarding Amazon's equitable defenses.

## B.   INEQUITABLE CONDUCT

Patent applicants have a duty to prosecute patent applications in good faith, which includes disclosing all known material information.[223] When a patent "applicant knew of [a] reference, knew that it was material, and made a deliberate decision to withhold it," courts find they engaged in inequitable conduct.[224] Kove argues that, as a matter of law, the asserted patents' inventors' failure to disclose a 1997 article by David Karger ("Karger") can't constitute inequitable conduct because they claim they didn't intend to deceive the PTO. But Amazon isn't required to show

---

[219] *Id*.

[220] *Id*. at ¶¶ 8–10.

[221] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[222] 7 F.4th 1320, 1333 (Fed. Cir. 2021), *cert. denied sub nom.* 143 S. Ct. 2483 (2023).

[223] *See DS Smith Plastics Ltd. v. Plascon Packaging, Inc*., No. 15-cv-5760, 2016 WL 69632, at *3 (N.D. Ill. Jan. 6, 2016) (quoting *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 829 (Fed. Cir. 2010)) (citing 37 C.F.R. § 1.56(a)).

[224] *Intellect Wireless, Inc. v. HTC Corp.*, No. 09-cv-2945, 2012 WL 728242, at *1 (N.D. Ill. Mar. 2, 2012).

direct evidence—e.g., an admission—of intent to establish its defense. As the full Federal Circuit explained in *Therasense, Inc. v. Becton, Dickinson & Co.*, intent can be inferred "from indirect and circumstantial evidence," since "direct evidence of deceptive intent is rare."[225]

The record contains evidence allowing a reasonable factfinder to infer intent. For example, it shows that Dr. Overton had a copy of Karger in his files since at least January 1999, over seven years before the PTO issued the first asserted patent. Dr. Overton confirmed this at deposition, testifying that he was aware of Karger and the custodian of the produced January 1999 copy of it.[226] A 2005 letter that Dr. Overton drafted to a Kove's predecessor company investor likewise shows that Dr. Overton was aware that Karger's work was relevant to the asserted patents.[227] In that letter, Dr. Overton sought to reassure the investor that the asserted patents' "method claims and specific system claims regarding distributed hash tables" pre-dated Karger's research:

> Combined, the NDTP (2000) case predates al the MIT and Stanford research (do a google search on 'Distributed Hash Table', and you see hundreds of thousands of hits with earliest dates in 2001).[228]

Given the discrepancy between Dr. Overton's records and external representations, a reasonable factfinder could find that Dr. Overton was aware of—and actively working to conceal—the relevance of Karger's 1997 article. Expert testimony further supports the inference that Overton knew Karger was material and intentional chose to withhold it from the PTO. For example, Mr. Greene's invalidity report states:

> "The inventors of the Asserted Patents were familiar with Karger and Sherman's consistent hashing work….In my view, this article and Karger's work at MIT are material to the subject matter of the applications that became the Asserted

---

[225] 649 F.3d 1276, 1290 (Fed. Cir. 2011).

[226] ASAMF at ¶ 13.

[227] *Id*. at ¶ 14.

[228] *Id*.

Patents….[A] POSITA at this time would have considered this article highly relevant to the purported invention described in the Asserted Patents."[229]

And, when asked about Karger, Kove's own expert, Dr. Goodrich, testified that "this is a well-known paper" and that "I'm not disputing this as prior art."[230]

All of this evidence contradicts Dr. Overton's self-serving testimony that "it would never occur to [him] that [Karger] would be germane."[231] And this case shows why the Federal Circuit "'urges caution' in making an inequitable conduct determination at the summary judgment stage."[232] The underlying issues are too "inherently fact-intensive" to decide as a matter of law, as the Federal Circuit and other district courts have recognized.[233] Because a reasonable factfinder could find that the inventors intentionally withheld Karger, the Court should deny Kove's motion for summary judgment of no inequitable conduct.

## III.    MR. GREENE'S DOUBLE PATENTING OPINIONS ARE ADMISSIBLE AND SUMMARY JUDGMENT ON DOUBLE PATENTING IS INAPPROPRIATE.

Double patenting prevents a patent owner from unfairly extending the length of its monopoly by obtaining a second patent covering claims indistinct from the original patent.[234] When analyzing a claim of obviousness-type double patenting, courts must first construe the claims of the two patents at-issue and determine the differences between them.[235] Then, the court must

---

[229] *Id.* at ¶ 16.

[230] *Id.* at ¶ 17.

[231] *Id.* at ¶ 15.

[232] *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1340 (Fed. Cir. 2006) (quoting *Paragon Podiatry Lab. Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993)).

[233] *SB IP Holdings, LLC v. Vivint, Inc.*, No. 4:20-cv-886, 2023 WL 5615780, at *3 (E.D. Tex. Aug. 30, 2023) (quoting *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1317 (Fed. Cir. 2006)).

[234] *O'Reilly v. Morse*, 56 U.S. 62, 114 (1853) (Patent owner may not "take out a subsequent patent for a portion of his first invention, and thereby extend his monopoly beyond the period limited by law.")

[235] *E.g.*, *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 518 F.3d 1353, 1363 (Fed. Cir. 2008).

determine "whether those claims render the claims patentably distinct."[236]

In its motion, Kove relies on just over a paragraph of Mr. Greene's 210-page expert report to argue that he provided only legal conclusions to support his opinion that Kove engaged in double patenting. But Kove divorces that paragraph from its context and fails to consider the entirety of Mr. Greene's report. And when properly considered in context, Mr. Greene's showing that the asserted '978 claims are double patented at least raises an issue of material fact on that issue.

More specifically, as Kove reproduced them, paragraph 287 and the first sentence of paragraph 288 in Mr. Greene's expert report state:

> Further, there are no material differences between remaining portions of the Asserted Claims of the '978 Patent and the claims in the '640 and '170 Patents. Attached as Appendix E, I provide a comparison table between the '978 Patent claims and the disclosures and claims of the '640 and '170 Patents. As shown in the Appendix E tables, each and every claim limitation in the asserted '978 Patent claims is explicitly disclosed by the '640 Patent and '170 Patent.[237]

But just after the end of Kove's block quote, Mr. Greene goes on to say:

> And as I explained above, the three patents cover the same inventive concept: a distributed data storage system that can be used on a large scale cloud computing. And as seen in Kove's responses in the *ex parte* reexaminations, Kove employs nearly the same language when describing the overview of the technology and patents at issue. As such, it is my opinion that the Asserted Claims of the '978 Patent are invalid based on obviousness double-type patenting in light of the disclosures and claims of the '640 Patent and '170 Patent.[238]

Kove's cross-motion omits Mr. Greene's reference to an earlier portion of the report where he details the facts underlying his conclusions—namely that Kove repeatedly uses the same language to describe the alleged inventive concept behind each of the purported inventions.[239] And as this

---

[236] *E.g.*, *id.*

[237] Dkt. 699 at 67.

[238] Dkt. 700-42 at ¶¶ 287–88; *see also* ASAMF at ¶ 18.

[239] Dkt. 700-42 at ¶¶ 287–88.

excised portion of Mr. Greene's report shows, he didn't simply list prior art or thoughtlessly conclude the claims are invalid, as Kove claims.

In his Appendix E, Mr. Greene mapped the '978 patent's claims to the '640 and '170 patents to show the similarity.[240] Kove criticizes those charts because they provide "no further analysis or explanation" other than mapping the language.[241] But this again mischaracterizes Mr. Greene's report. His opinion is that there are no material differences between the '978 claims and the '640 and '170 claims.[242] Thus, as each claim limitation is "explicitly disclosed," there was no further analysis to provide, other than to show examples of the explicit disclosure.

And in the double patenting context, Mr. Greene need not discuss motivation to combine, as Kove asserts. Although the law of obviousness-type double patenting is generally the same as the law of § 103 obviousness,[243] the Federal Circuit stated in *Proctor & Gamble Co. v. Teva Pharmaceuticals USA* that "[obviousness-type] double patenting does not require inquiry into a motivation to modify the prior art."[244] Each case Kove cites excludes testimony related to § 103 obviousness, not double patenting.[245] Moreover, Mr. Greene's opinion independently relies on the fact that Kove has conceded that certain of the '978 Patent's claims were constructively reduced to practice on September 13, 2000, by the filing of the application that later became the '640 Patent.[246]

---

[240] ASAMF at ¶ 20; Dkt 700-9; Dkt. 700-10.

[241] Dkt. 699 at 68.

[242] ASAMF at ¶ 19; Dkt. 700-42 at ¶¶ 287–88.

[243] *Abbvie Inc. v. Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1378 (Fed. Cir. 2014).

[244] 566 F.3d 989, 999 (Fed. Cir. 2009).

[245] *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008) (excluding expert testimony directed to § 103 obviousness, not obviousness-type double patenting); *Meyer Intell. Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1375 (Fed. Cir. 2012) (same); *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1351 (Fed. Cir. 2014) (similar).

[246] Dkt. 700-42 at ¶¶ 287–88.

That concession alone should render claims 3, 6, 10, and 14 invalid for double patenting.

As Kove points out, Rule 26 is designed to avoid unfair surprise at trial by requiring an expert report "to convey the substance of the expert's opinion… so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary."[247] Mr. Greene's report does that, by providing his opinion that there are no material differences between the '978 claims and the '640 and '170 claims. And he supports that with Appendix E's claim maps, which show his logic by matching language across the patents. This provides appropriate foundation for Kove to cross-examine Mr. Greene and attempt to rebut his opinions. But Kove declined the opportunity to explore Mr. Greene's opinions on double patenting during his deposition when it failed to ask a single question about Appendix E or his conclusion that the claims were double patented.

Furthermore, Kove's assertion that an expert can't use the specification as part of a double patenting analysis is incorrect. While a patent's disclosure can't be treated "as though it was prior art" in a double patenting analysis,[248] there's no rule preventing consideration of the specification in the analysis. To the contrary, the Federal Circuit has stated that "the specification's disclosure may be used to determine whether a claim 'merely define[s] an obvious variation of what is earlier disclosed and claimed,' 'to learn the meaning of [claim] terms," and to 'interpret [ ] the coverage of [a] claim.'"[249] Mr. Greene's use of the specification in his chart does exactly that. By mapping the language on to the '978 Patent's claims, he shows that Kove is trying to extend its monopoly over subject matter that was previously disclosed. There's no basis for the Court to reject that analysis, or Mr. Greene's discussion of the patent re-examinations, when they're being used

---

[247] *Meyer*, 690 F.3d at 1374–75 (*citing Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009)).

[248] *E.g.*, *Gen. Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1281 (Fed. Cir. 1992).

[249] *Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1387 (Fed. Cir. 2010); *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373 (Fed. Cir. 2003)) (alterations in original).

appropriately to show that Kove has repeatedly used the same language to describe its purported inventions. Thus, Mr. Greene's testimony as to double patenting is sufficiently supported, and the Court should deny Kove's motion for summary judgment on Amazon's double patenting defense.

## IV. EACH REFERENCE MR. GREENE RELIES ON IS PRIOR ART AND SUMMARY JUDGMENT OF VALIDITY IS INAPPROPRIATE.

Kove also argues that it's entitled to summary judgment on certain of Amazon's invalidity defenses because Mr. Greene improperly relies on certain prior art references. But record evidence supports that each of the six references that Kove challenges qualifies as prior art. And whether a reference qualifies as prior art is ultimately a question of law based on underlying facts.[250] Thus, an expert can't make the ultimate determination on whether a reference qualifies and under what subsection, even if they may opine as to which they think is applicable. The role of experts like Mr. Greene—and, indeed, any witness—is to introduce evidence into the record. And the evidence underlying Mr. Greene's opinions shows that each reference qualifies as prior art. This Court should thus deny Kove's motion on the challenged anticipation and obviousness defenses.

**BIND/DNS:** Kove's arguments as to BIND/DNS encourage the Court to displace the fact-finding process, and at most, raise disputes of fact about the DNS reference.[251] Indeed, what a qualified prior art reference discloses and whether that disclosure ultimately anticipates are questions of fact.[252] And Kove presents no facts contradicting Mr. Greene's testimony.

Mr. Greene opines that the DNS system, of which BIND 8.1 is one implementation, is prior art under § 102(a), (b), and/or (f) because it was publicly available more than a year before the

---

[250] *In re Lister*, 583 F.3d 1307, 1311 (Fed. Cir. 2009).

[251] *See EveryScape, Inc. v. Adobe Sys. Inc.*, No. 10-cv-11597, 2014 WL 3009940, at *3 (D. Mass. July 3, 2014) (concluding questions of material fact as to whether different version of software showed that a different deployment of the software anticipated patent-in-suit).

[252] *In re Napier*, 55 F.3d 610, 613 (Fed. Cir. 1995) (Prior art's "inherent teaching" is a question of fact.).

earliest of Kove's priority dates.[253] He further opines that four references—DNS and BIND, RFC 1034, Sherman, and Karger/Sherman—describe the prior art DNS system, and he uses them to show what a person skilled in the art would have understood DNS to be.[254] That Kove disagrees with Mr. Greene's conclusions that these documents all describe the same DNS system is properly addressed on cross-examination, and doesn't mean his opinions should be excluded. At bottom, it's undisputed that Mr. Greene's opinion is that the DNS system is prior art, not that any of the individual papers themselves are.[255] And the Federal Circuit has "permitted the use of additional references to confirm the contents of the allegedly anticipating reference."[256] Here, Kove fails to heed the Federal Circuit's warning in *Monsanto Technology LLC v. E.I. DuPont de Nemours & Co.*, by "confus[ing] prior art with extrinsic evidence used to support what is 'necessarily present' in a prior art's teaching."[257] The court in that case found it appropriate for the PTO to consider expert declarations to determine the scope of a prior art reference in support of an inherency argument.[258] And, just as those declarations could be considered, so too can the references Mr. Greene uses. Thus, the underlying DNS system may still anticipate Kove's patents. Indeed, Mr. Greene uses the four references to illuminate what a person skilled in the art would have understood DNS to be,[259] and not to fill in gaps in the primary references, as Kove asserts.[260]

---

[253] Dkt. 702 at ¶ 42; Dkt. 700-42 at ¶ 220.

[254] Dkt. 700-42 at ¶ 220.

[255] *See* Dkt. 699 at 73 ("He also never alleges that the documents themselves are prior art."); *id.* ("The DNS system *as described* in DNS and BIND, RFC 1034, Sherman, and Karger/Sherman") (emphasis added).

[256] *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1335 (Fed. Cir. 2002).

[257] 878 F.3d 1336, 1345 (Fed. Cir. 2018).

[258] *Id.*

[259] *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed. Cir. 1991) (Inherent anticipation "accommodates situations where the common knowledge of technologists is not recorded in the reference; that is, where technological facts are known to those in the field …, albeit not known to judges.").

[260] *See* Dkt. 699 at 76.

Kove's citation to *Kyocera Wireless Corp. v. International Trade Commission* is distinguishable. There, the documents that were excluded discussed discrete parts of a standard with "hundreds of individual specifications" drafted by separate subgroups.[261] Here, the four references all describe the DNS system as a whole and don't suffer from the same compartmentalization problem that the *Kyocera* court focused on. The court there, in contrast, was faced with evidence that the relevant standard was so voluminous and disparate that no one person had read it in its entirety.[262] Because Mr. Greene uses the extrinsic evidence to illuminate what a person skilled in the art would've understood about DNS, a reasonable factfinder could find that the DNS system anticipates the asserted patents and the Court should deny summary judgment.

**Cache Resolver**: Mr. Greene states in his report that the Cache Resolver system is prior art under § 102 (a), (b), and (g) because the system was publicly known by February 1999 at the latest.[263] He also opines that the system was described in two published academic papers—Sherman and Karger/Sherman.[264] Kove's motion asserts that Mr. Greene improperly relies on DNS's inherency in Cache Resolver, arguing that because Mr. Greene doesn't itemize how every feature of DNS is present in Cache Revolver, his testimony is insufficient. But that isn't the test. A reference needn't expressly spell out every limitation, as "[a]nticipation is established when one skilled in the art would reasonably understand or infer from the prior art reference's teaching that every claim [limitation] was disclosed in that single reference."[265]

---

[261] 545 F.3d 1340, 1351 (Fed. Cir. 2008).

[262] *Id.* ("Qualcomm's witness—admittedly one of the most knowledgeable people in the world about the operation of GSM—testified that she had not read the entire standard and did not know of any person who had read the entire standard.").

[263] Dkt. 700-42 at ¶ 229.

[264] *Id.*

[265] *CRFD Research, Inc. v. Matal*, 876 F.3d 1330, 1338 (Fed. Cir. 2017) (internal quotation omitted).

And here, Cache Resolver describes a web caching system wherein DNS is used to respond to user requests for data.[266] Notably, neither Sherman nor Karger/Sherman contain a definition of DNS or any introduction to that system when describing the Cache Resolver system.[267] They simply assume that anyone reading the papers would be familiar with DNS. This is reasonable, since DNS had been used for more than a decade before Kove's patents were filed.[268] Kove fails to identify what limitation is supposedly missing from Cache Resolver, and doesn't explain how or why that purportedly missing limitation defeats Amazon's anticipation and obviousness defenses. One skilled in the art, like Mr. Greene, would understand that all of DNS is inherently disclosed in Cache Resolver because DNS is a bedrock piece of that reference.[269] Kove's objection is akin to acknowledging that the courthouse is standing but refusing to recognize that there's rebar behind the walls holding it up. Here, Kove doesn't object to the existence of Cache Resolver, but questions the fundamental piece that allows the system to function—DNS. Because Cache Resolver inherently discloses the DNS system, Mr. Greene's opinion is admissible, and the reference qualifies as prior art. Further, and just as with the references to DNS discussed above, because DNS is inherently disclosed in Cache Resolver, it's a single reference and may anticipate claims.

**Boukobza, Karger '618, and Karger '420**: These patents also qualify as prior art. According to Kove, these references don't qualify under specific subsections Mr. Greene identified in his report ("at least" § 102(a) and (b) for Boukobza and "§ 102(a), (b), and/or (f)" for Karger patents).[270] But Kove's argument misapprehends the purpose of expert testimony. Witnesses,

---

[266] Dkt. 702 at ¶ 54.

[267] ASAMF at ¶ 24.

[268] *Id*. at ¶ 22; *see also* Dkt. 702-42 at ¶ 220.

[269] *See CRFD*, 876 F.3d at 1339 (finding inherent disclosure of limitation necessary for device to function).

[270] Dkt. 700-42 at ¶¶ 204, 223.

including experts, establish facts. Whether a reference qualifies as prior art is ultimately a question of law that this Court must decide based on the facts in evidence.[271] And any expert conclusions on which subsections apply thus aren't binding on this Court.

Here, the face of the patents and the substance of Mr. Greene's testimony show that each qualifies under § 102(e). That statute states that "a patent granted on an application for patent by another filed in the United States before the invention" is prior art.[272] The critical date under § 102(e) is not the patent's issuance date, but the application's filing date.[273] It's undisputed that Kove's patents have one of two priority dates—October 28, 1999, or June 2, 2000.[274] Boukobza's application was filed on June 27, 1999,[275] Karger '618 on March 13, 1998,[276] and Karger '420 on June 2, 1998.[277] All those dates are more than a year before the earlier of Kove's priority dates. And none of those references share any named inventors with Kove's patents (*i.e.*, they were filed "by another").[278] Moreover, the Patent Office has repeatedly found Boukobza to be prior art to the '978 patent in reexamination proceedings.[279]

Kove doesn't dispute that, if the references qualify as prior art, they disclose the technology at issue. It instead argues that testimony invoking them shouldn't be considered. Mr. Greene's report contains sufficient facts to qualify each under § 102(e), so his testimony shouldn't be

---

[271] *In re Lister*, 583 F.3d at 1311.

[272] 35 U.S.C. § 102(e).

[273] *Hazeltine Research, Inc. v. Brenner*, 382 U.S. 252, 255–56 (1965).

[274] *E.g.*, Dkt. 699 at 71.

[275] ASAMF at ¶ 26.

[276] *Id*. at ¶ 28.

[277] *Id*. at ¶ 29.

[278] *See LSI Corp. v. Regents of Univ. of Minnesota*, 43 F.4th 1349, 1355–56 (Fed. Cir. 2022).

[279] ASAMF at ¶ 27.

excluded, and Boukobza, Karger '618, and Karger '420 should be considered as prior art.

**Steen**: Though the Patent Office has applied Steen as prior art in reexaminations of all three of Kove's patents,[280] Kove argues that Steen doesn't qualify as prior art on the basis that there's no evidence it was publicly accessible in January 1998. As Mr. Greene's report states, however, Steen is a printed publication that qualifies as prior art under § 102 (a) and (b), since it was publicly available by at least January 1998.[281] And Amazon has provided at least three pieces of evidence that support his opinion by showing that Steen was published in a leading magazine in January 1998 and contemporaneously accessed by persons skilled in the art.

As Mr. Greene references, the face of the document shows that it was published in January 1998.[282] Steen also appears in in an archived table of contents from the January 1998 IEEE Communications Magazine, and citations by at least four other papers in 1998 substantiate the table of contents.[283] Thus, the citations aren't the evidence of publication themselves in this case, they are evidence that the table of contents showing a January 1998 publication date is correct. While Kove maintains that citations aren't evidence of accessibility, its only supporting case deals with an unpublished student paper cited only by that student's lab supervisor with no other evidence of public availability.[284] There, the facts didn't support publication because the lab supervisor would necessarily have private access to a student's papers.[285] Here, though, the citations are by disparate authors and corroborate both the paper's stated publication date and the IEEE magazine table of

---

[280] ASAMF at ¶ 33.

[281] *Id*. at ¶ 30; Dkt. 700-42 at ¶ 176.

[282] *Id*.

[283] ASAMF at ¶ 31; Dkt 700-42 at ¶ 176 n.233.

[284] *See EagleView Techs., Inc. v. Xactware Sols., Inc*., 485 F. Supp. 3d 505, 520 (D.N.J. 2020).

[285] *Id*.

contents. And Kove's expert, Dr. Goodrich, agrees that IEEE is a well-known organization in the art.[286] Thus, the combination of those three elements is sufficient evidence to conclude that Steen was published in January 1998 and is prior art.[287]

As each of the six references Kove challenges qualify as prior art, there's no reason to exclude Mr. Greene's expert report. And because his report is admissible, there's sufficient evidence to create a genuine dispute of material fact as to whether Kove's patents are invalid. Thus, the Court should deny Kove's motion for summary judgment and let these questions go to the jury.

## CONCLUSION

There's no dispute of material fact that the accused products don't infringe the 17 asserted claims under Amazon's proposed constructions, as they don't use a non-hierarchical structure. There's also no dispute of material fact that the accused products lack any functionality meeting the "location" limitations, as previously construed by the Court and required by all asserted claims. Summary judgment of non-infringement of all asserted claims is thus appropriate on each ground. And as there are no facts to support a finding of willfulness or enhanced damages here, summary judgment is also warranted on those issues. There are, however, at least genuine issues of material fact for the Amazon defenses that Kove challenges. Indeed, the case record includes evidence supporting each defense, and thus Kove's cross-motion should be denied.

---

[286] ASAMF at ¶ 32.

[287] *Medtronic, Inc. v. AGA Med. Corp.*, 618 F. Supp. 2d 1191, 1193 (N.D. Cal. 2009) (finding evidence that at least two POSITAs "were able to locate the document" created triable issue of fact as to publication).

Dated: December 4, 2023

Respectfully Submitted,

*/s/ R. William Sigler*
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (pro hac vice)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (pro hac vice)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW, Suite 400
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, and also served a copy on all counsel of record via email.

/s/ R. William Sigler
R. William Sigler