**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KOVE IO, INC., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Judge Matthew F. Kennelly |
| v. | Jury Trial Demanded |
| AMAZON WEB SERVICES, INC., | ███████████████ |
| Defendant. | |

## AMAZON WEB SERVICES, INC.'S RESPONSE TO KOVE'S STATEMENT OF ADDITIONAL MATERIAL FACTS (DKT. 701)

Under Federal Rule of Civil Procedure 56 and Local Rule 56.1(c)(2), Defendant Amazon Web Services, Inc. ("Amazon") submits this Response to Kove's Statement of Additional Material Facts (Dkt. 701).

### Claim Construction

1.     All challenged claims of the '640 and '170 patents were subjected to substantive reexamination, and the Patent Office issued Office Actions in each reexam, identifying the prior art and reasons why the Office believed the art rendered the claims unpatentable. Ex. 130 (90019035_2022-05-11_NFOA); Ex. K133 (90019036_2022-05-04_NFOA).

**RESPONSE: Disputed.** There were three reexamination requests filed against the '640 patent, including the '552 reexamination request by third party, Aneeta Mishra, and Amazon's '036 and '166 reexamination requests. Dkt. 687-26 (2021-12-23 '036 Reexam. Order) at 4; Dkt. 687-28 (2022-01-12 '035 Reexam. Order) at 5. The Patent Office granted both of Amazon's requests and has issued an Office Action in the '036 reexamination, while the '166 reexamination is still pending. Dkt. 687-29 (2022-05-04 '036 Reexam. NFOA) at 4.  The Patent Office has also granted

two requests for reexamination of the '170 patent (Amazon's '035 and '165 reexamination requests), and has issued an Office Action in the '035 reexamination, while the '165 reexamination is still pending. Dkt. 687-30 (2022-05-11 '035 NFOA) at 8–9.

2.      Kove responded to the Office Actions, detailing why the claims are distinguishable from the prior art, Ex. K131 (90019035_2022-08-11_Response); Ex. K134 (90019036_2022-08-04_Response), and the PTO agreed and upheld the patentability of all claims.

**RESPONSE**: **Admitted in part and disputed in part.** Amazon admits that Kove responded to Office Actions in the '552, '035, and '036 reexaminations. Amazon disputes that the Patent Office has upheld the patentability of all claims because not all claims were subject to review in those reexaminations. Dkt. 687-26 (2021-12-23 '036 Reexam. Order) at 4; Dkt. 687-28 (2022-01-12 '035 Reexam. Order) at 5. Amazon admits that the Patent Office allowed the claims subject to review in the '035 and '036 reexaminations as valid over the specific prior art combinations considered in each reexamination. Amazon further disputes that the Patent Office upheld the asserted claims, because certain of the asserted claims of the '640 and '170 patents remain subject to reexamination (in the '165 and '166 reexaminations) over new and non-cumulative prior art grounds not previously considered by the Patent Office. Dkt. 618; Dkt. 648.

3.      For the '978 patent, claims 17, 23, 24, and 30 were determined patentable by the Patent Office prior to any response from Kove, and while claims 1, 3, 6, 10, 14, and 31 were substantively rejected, Kove submitted a response only as to them, in response to which the Patent Office upheld the patentability of claims 3, 6, 10, and 14, and issued a final rejection as to claims 1 and 31. Ex. K126 (90019034_2022-06-28_NFOA); Ex. K127 (90019034_2022-0928_Response); Ex. K128 (90019034_2022-10-27_Final OA).

**RESPONSE: Admitted-in-part and disputed-in-part.** Amazon admits that claims 3, 6, 10, 14, 17, 23, 24, and 30 were found patentable over the specific prior art combinations considered by the Patent Office in the '034 reexamination, but denies that the Patent Office has found them patentable over any other grounds. Further, the Patent Office is reviewing the patentability of claims 3, 6, 10, and 14 in the currently pending '162 reexamination. Dkt. 618; Dkt. 648.

4. Kove argued that ONAG teaches a system that "depends on a hierarchical structure where a client can only query the node immediately 'above' or 'below' it in the 'tree,'" and contrasted ONAG's "hierarchical tree" with the requirements of claims 17 and 18, which contain limitations allowing:

> [a] client [to] send a query to any server in the network—not just its local region, as taught by Oracle Admin (see Oracle Admin, p. 190). If the queried server does not have the requested information, that server (as are all servers in the data location server network) is configured to return a message to the client containing information that the client can then use to calculate the location of the server that does have the requested information.

and identified the specific limitations in claims 17 and 18 that distinguish them from ONAG's hierarchy:

> Claims 17 and 18 require that "***each of the plurality of data location servers*** having computer executable code ***[be] configured to***" carry out specific activity. In particular, each location server must be able to "transmit[] a redirect message to the client if the identification string is not associated with a location string at the data location server, wherein the ***redirect message contains information for use by the client to calculate a location of a different data location server*** in the plurality of data location servers, ***wherein the different data location server contains the location string***."

Ex. K134 at 23-24 (90019036_2022-08-04_Response) (emphasis in original).

**RESPONSE: Admitted-in-part and disputed-in-part.** Amazon admits this fact to the extent that this is what Kove argued. Amazon disputes the accuracy of Kove's characterization of ONAG as

limited to hierarchical implementations, rather than including hierarchical, non-hierarchical, and mixed topology implementations. *E.g.*, Ex. 84 (Expert Report of Joseph Greene) at ¶¶ 125–131.

5.      Using terminology that contrasted what the claim limitations require with ONAG's hierarchical structure, Kove explained that the claims' "**non-hierarchical cluster composition is expressly claimed** in claims 17 and 18 through the requirement that 'each' (i.e., all) of the data location servers be similarly configured to respond to a client request with the aforementioned information." Ex. K134 at 39 (90019036_2022-08-04_Response) (emphasis added).

**RESPONSE: Admitted-in-part and disputed-in-part.** Amazon admits that Kove made these statements. Amazon disputes their accuracy, as claims 17 and 18 don't "expressly" claim any architecture and don't recite the term "non-hierarchical." 687-1 ('640 patent at claims 17–18).

6.      Kove's response also included a declaration from its expert, Dr. Goodrich, stating:

> Claims 17 and 18 both require 'each' data location server in the claimed data location network have computer executable code 'configured to execute' certain steps, including transmitting a redirect message to the client containing information for use by the client to calculate the location of the location server that contains the location string. **It is my opinion that a POSA at the time of this invention would understand this limitation to require a nonhierarchical cluster configuration as taught by the '640 patent**.

Ex. K138 ¶ 30 (90019036_Goodrich_Decl) (emphasis added).

**RESPONSE: Admitted-in-part and disputed-in-part.** Amazon admits that the quote accurately reflects the content of the cited portion of Dr. Goodrich's expert report. Amazon disputes the accuracy of that testimony and his conclusions.

7.      The Patent Office confirmed the patentability of all reexamined claims, and stated that the "reasons for patentability and/or confirmation" of the claims are that "[t]he cited prior art fail to teach individually or in combination" the limitations of the claims requiring a "redirect message.":

Claims 17, 18, and 24 are confirmed.

The following is an examiner's statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding:

Based on applicant's remarks (p29-37, p41-42) presented on 8/04/2022, The cited prior art fails to teach individually or in combination: "…transmitting a redirect message to the client if the identification string is not associated with a location string at the data location server…" and "… wherein the redirect message contains information for use by the client to calculate a location of a different data location server …" of Claim 17; and

"if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client …" and "where in the redirect message contains redirect information for user by the client to calculate a location of a different data location server in the plurality of the data location server …" of claim 18.

Claim 24 which is dependent on claim 18, it is confirmed for the same reasons as those stated for claim 18.

Ex. K135 at 3-4 (90019036_2022-10-06_NIRC).

**<u>RESPONSE</u>: Admitted-in-part and disputed-in-part.** Amazon admits that the Patent Office determined that all asserted claims subject to reexamination in the '035 and '036 reexaminations and claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 patent in the '034 reexamination were patentable over the specific prior art combinations considered in each of those proceedings. Amazon disputes that the Patent Office "confirmed the patentability of all reexamined claims" because the Patent Office cancelled claims 1 and 31 of the '978 patent in the '034 reexamination and is still reviewing the patentability of claims 3, 6, 10, and 14 of the '978 patent and all asserted claims of the '640 and '170 patents in the '162, '165, and '166 reexaminations, respectively. Dkt. 687-3 ('978 patent at Reexamination Certificate); Dkt. 687-45 ('034 FOA (KOV_00226354)) at 16–20; Dkt. 618; Dkt. 648.

8.      In responding to the Office's rejections of the '170 claims, much like it did for the '640 patent, Kove identified specific limitations from each independent claim that differentiates them from ONAG, pointing out that the limitations cannot be met by ONAG's hierarchical tree topology:

- "**[C]laim 1** requires data location information to be portioned and organized across the data location servers in the network based on a hash function. **A hash function necessarily organizes data in a non-hierarchical manner**, meaning claim 1 can only be accomplished through the cluster configuration taught by the specification." Ex. K131 at 26 (90019035_2022-08-11_Response) (emphasis added).

- "**Claim 6's non-hierarchical configuration is embodied [by]** [sic] the requirement that the location server must be able to return a 'redirect message' where 'the redirect message compris[es] a list of at least one other location server known to have the location information for the desired entity.' This limitation cannot be met in hierarchical configurations such as Names Server because location servers in tree-structures do not necessarily know which other server has the desired information." Ex. K131 at 26 (90019035_2022-08-11_Response) (emphasis added).

- "**Claim 15 contains a similar requirement** that location servers in the network be capable of returning 'redirect messages' identifying other servers in the network with the desired information. This is embodied in the limitation 'the redirect message identifying which of the plurality of location servers includes the location information.' . . . [T]he redirect message limitations, as recited by claims 6 and 15, demonstrate that claims 6 and 15 **recite a non-hierarchical cluster configuration**." Ex. K131 at 26 (90019035_2022-0811_Response) (emphasis added).

**RESPONSE: Admitted-in-part and disputed-in-part.** Amazon admits that Kove made these statements. Amazon disputes the accuracy of Kove's descriptions of what its claims expressly include.

9.      Kove also submitted a declaration from Dr. Goodrich that stated, "It is my opinion that a **POSITA** at the time of this invention **would understand claims 1, 6, and 15**, through various limitations in each of the claims, **to require a non-hierarchical cluster** configuration as taught by the '170 patent." Ex. K137 ¶ 28 (90019035_Goodrich_Decl) (emphasis added); *see also* ¶¶ 29-33.

**RESPONSE: Admitted-in-part and disputed-in-part.** Amazon admits that the quote accurately reflects the content of the cited portion of Dr. Goodrich's expert report. Amazon disputes the accuracy of that testimony and his conclusions.

10. The Patent Office confirmed the patentability of all reexamined claims, and identified the limitations requiring "redirect message" and the "each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string" as not being disclosed in the prior art.:

> The following is an examiner's statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding.
>
> Independent claim 1 is directed to a system for managing data stored in a distributed network, the system comprising (*inter alia*) a data location server network comprising a plurality of data location servers, wherein data location information for a plurality of data entities is stored in the data location server network, at least one of the plurality of data location servers includes location information associated with an identifier string identifying the data entity, each one of the plurality of data location servers comprises a portion of the data location information based on a hash function used to organize the data location information across the plurality of data location server, and *each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string*.
>
> The prior art of record fails to teach this feature.
>
> Claim 2 incorporates these features from independent claim 1, and is confirmed on the same basis.
>
> Independent claim 6 is directed to a system for managing data location information and providing the data location information in response to location queries, the system comprising (*inter alia*) programming logic configured to return a redirect message if the location server lacks the location information for the desired entity, *the redirect message comprising a list of at least one other location server known to have the location information for the desired entity*.
>
> The prior art of record fails to teach this feature.

Claims 8, 9, and 12 incorporate these features from independent claim 6, and are confirmed on the same basis.

Independent claim 15 is directed to a method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising (*inter alia*) receiving a location query from a client at one of the plurality of location servers, the location query requesting location 15 information identifying a location of a data entity included in the data entities, and sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, *the redirect message identifying which of the plurality of location servers includes the location information*.

The prior art of record fails to teach this feature.

Ex. K132 at 15-17 (90019035_2022-09-27_NIRC).

**RESPONSE: Admitted-in-part and disputed-in-part.** Amazon admits that the Patent Office determined that all asserted claims subject to reexamination in the '035 and '036 reexaminations and claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 patent r in the '034 reexamination were patentable over the specific prior art combinations in those proceedings. Amazon disputes that the Patent Office "confirmed the patentability of all reexamined claims" the Patent Office cancelled claims 1 and 31 of the '978 patent in the '034 reexamination and is still reviewing the patentability of claims 3, 6, 10, and 14 of the '978 patent and all asserted claims of the '640 and '170 patents in the '162, '165, and '166 reexaminations, respectively. Dkt. 687-3 ('978 patent at Reexamination Certificate); Dkt. 687-45 ('034 FOA (KOV_00226354)) at 16–20; Dkt. 618; Dkt. 648.

11.     In responding to the PTO's non-final rejection of the '978 claims, Kove pointed to the limitations in the claims responsible for the structural configurations of each claim's location servers:

- "Independent claims 10 and 14 and dependent claim 3 require, **expressly or impliedly, a non-hierarchical cluster configuration of locations servers in a network**. For example, claim 10 recites "the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information […] programming logic stored on each of

the plurality of location servers responsive to a location query for a desired identifier to return one of a location message […] a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier." As such, claim 10 explicitly recites that the location servers are arranged in a cluster topology. Furthermore, claim 10 requires each location server be configured to transmit a redirect message comprising information to for finding a location server having location information. Therefore, **these limitations require a non-hierarchical cluster configuration**." Ex. K127 at 35-36 (90019034_2022-09-28_Response) (emphasis added).

- **"Claim 14's non-hierarchical configuration** is embodied in the requirement that the location server must be able to receive a location query from a client and return a "redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query." Ex. K127 at 36 (90019034_2022-09-28_Response) (emphasis added).

- "**Claim 3 contains a similar requirement** that location servers in the network be capable of returning "redirect messages" where the "redirect message comprising information for finding a location server known to have location information relevant to the location query." Therefore, the redirect message indicates with specificity and certainty which data location server in the network contains the location information for the desired entity. **A hierarchical configuration does not enable nodes to have such knowledge**." Ex. K127 at 36-37 (90019034_2022-09-28_Response) (emphasis added).

**RESPONSE**: **Admitted-in-part and disputed-in-part.** Amazon admits that Kove made these assertions. Amazon disputes that the cited claim language itself informed one of ordinary skill in the art that the claims were limited to non-hierarchical topologies, particularly given the disclosure in the specifications, as detailed in Amazon's motion for summary judgment (Dkt. 686).

12.     Dr. Goodrich also submitted a declaration where he stated, "It is my opinion that a POSITA at the time of this invention would understand claims 3, 10, and 14, through various limitations in each of the claims, to require a non-hierarchical cluster configuration as taught by the '978 patent," thus confirming that the plain language of the claim requires a non-hierarchical topology. Ex. K136 ¶ 35 (90019034_Goodrich_Decl); *see also* ¶¶ 36-43.

**RESPONSE: Admitted in part and disputed in part.** Amazon admits that this statement accurately reproduces Dr. Goodrich's testimony. Amazon disputes the factual conclusions and substance of Dr. Goodrich's testimony and Kove's additional characterization of this testimony.

13. The Patent Office confirmed the patentability of all challenged claims except claims 1 and 31, which were finally rejected, and the Office's stated "reasons for patentability and/or confirmation" identified the limitations that distinguished the claims over the prior art as the bases for patentability.:

> Claims 3, 6, 10, 14, 17, 23, 24, and 30 are confirmed over the prior art that was explained in the request and determined to raise a substantial new question of patentability in the order granting reexamination because the art of record does not teach:

> *wherein the programming logic further comprises logic responsive to the location query to return one of a location message or a redirect message, wherein the location server receiving the query returns the location message if the queried location server contains location information for the desired entity, and wherein the queried location server returns a redirect message if the queried location server lacks location information for the desired entity, the redirect message comprising information for finding a location server known to have location information relevant to the location query.*

> (as found in claim 3)

> *wherein the location information in the location server is maintained in an indexed location store indexed by a hash table.* ( as found in claim 6)

> *wherein a queried location server returns a location message if the queried location server contains location information for the desired identifier, and a redirect message if the queried location server does not contain location information relevant to the desired identifier, wherein the redirect message comprises information for finding a location server having location information related to the desired identifier.*

> (as found in claim 10)

> *sending a redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query.*

> (as found in claim 14)

> transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit.

> (as found in claim 17)

Ex. 129 at 5-7 (90019034_2023-06-28_NIRC).

**RESPONSE: Admitted-in-part and disputed-in-part.** Amazon admits that the Patent Office cancelled claims 1 and 31 of the '978 patent in the '034 reexamination. Amazon also admits this accurately reproduces excerpts of the Patent Office's findings. Amazon also admits that the Patent Office determined that all asserted claims subject to reexamination in the '035 and '036 reexaminations and claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 patent in the '034 reexamination were patentable over the specific prior art combinations considered in each of those proceedings. Amazon disputes that the Patent Office "confirmed the patentability of all reexamined claims" because the Patent Office is still reviewing the patentability of claims 3, 6, 10, and 14 of the '978 patent and all asserted claims of the '640 and '170 patents in the '162, '165, and '166 reexaminations, respectively. *E.g.*, Dkt. 618; Dkt. 648.

14. Kove never argued that claims 1 and 31 of the '978 patent, which do not have limitations that require non-hierarchical topologies, were distinguishable from ONAG based on a non-hierarchical requirement. *See* Ex. K127 (90019034_2022-09-28_Response).

**RESPONSE: Disputed.** Amazon disputes this because Kove and Dr. Goodrich have repeatedly described the invention of the '978 patent, *i.e.*, all of the claims including claims 1 and 31, as having a "non-hierarchical, limitlessly scalable, server structure that enables retrieval of requested information in not more than two iterations." *E.g.* Dkt. 687-32 ('034 Reexam. Response) at 12; Dkt. 700-140 ('109 Reexam. Response) at 9; *see also* Dkt. 687-37 ('036 Reexam. Response) at 10; Dkt. 687-38 ('036 Reexam. Goodrich Declaration at 10); Dkt. 687-35 ('035 Reexam. Response) at 10.

15. Dr. Goodrich confirmed Kove's descriptions, telling the Patent Office that a person of ordinary skill in the art at the time of the invention would have understood the various limitations to require a non-hierarchical configuration. Ex. K136 at ¶ 35 (90019034_Goodrich_Decl); *see also* ¶¶ 36-43.

**RESPONSE**: **Admitted in part and disputed in part.** Amazon admits that Dr. Goodrich's opinion was that a POSITA would have understood the limitations in this way. Amazon disputes that this testimony alone confirms Kove's descriptions and disputes the accuracy of the testimony's substance and conclusion.

16. In its response to the PTO's initial finding of claims 17, 23, 24, and 30 of the '978 patent patentable, Kove "thank[ed] the Office for confirming patentability of these four claims" and went on to address "the rejections *as to the remaining claims*." Ex. K127 at 6 (90019034_2022-09-28_Response) (emphasis added).

**RESPONSE**: **Admitted-in-part and disputed-in-part.** Amazon admits that Kove's '034 Reexam NFOA Response didn't focus on the validity of claims 17, 23, 24, and 30. Amazon disputes that Kove didn't argue that claims 17, 23, 24, and 30 were limited to the same topology as the remaining claims because Kove described the '978 patent's invention, without any limitation to any claim whatsoever, in the following way: "The structured relationships of the invention allow clients to access data in distributed environments through an non-hierarchical, limitlessly scalable, server structure that enables retrieval of requested information in not more than two iterations." Dkt. 687-32 ('034 Reexam. Response at 12). Further, Kove included the same identical description of the '978 patent invention as having a "non-hierarchical, limitlessly scalable, server structure that enables retrieval of requested information in not more than two iterations" in the '109 reexamination where only the validity of claims 17, 23, 24, and 30 was considered. Dkt. 700-140 ('109 Reexam. Response) at 9.

17. During reexamination of the '978 patent, Kove's statements regarding "nonhierarchical" called out the claims by number when responding to rejections of claims 3, 10, and 14, but made no statements about "non-hierarchical" in relation to claim 6:

- "Independent claims 10 and 14 and dependent claim 3 require, expressly or impliedly, a non-hierarchical cluster configuration of locations servers in a network." Ex. K127 at 35-36 (90019034_2022-09-28_Response).

- "Claim 14's non-hierarchical configuration is embodied in the requirement that the location server must be able to receive a location query from a client and return a "redirect message to the client if the queried location server does not contain data location information relevant to the entity identified in the query, the redirect message comprising information for finding a location server storing the entity identified in the query." Ex. K127 at 36 (90019034_2022-09-28_Response).

- "Claims 3 contains a similar requirement that location servers in the network be capable of returning "redirect messages" where the "redirect message comprising information for finding a location server known to have location information relevant to the location query." Ex. K127 at 36-37 (90019034_2022-09-28_Response).

**RESPONSE: Disputed.** While the statements made by Kove and reproduced above called out specific claims, Kove and Dr. Goodrich made multiple statements describing the entirety of the asserted patents without limitation to any specific claim(s). *E.g.*, Dkt. 687-37 ('036 Reexam. Response) at 10; Dkt. 687-38 ('036 Reexam. Goodrich Declaration) at 10; Dkt. 687-35 ('035 Reexam. Response) at 10; Dkt. 687-32 ('034 Reexam. Response) at 12,; Dkt. 687-10 ('109 Reexam. Response) at 9.

18. The term "system" appears only in the preambles of certain claims and the parties agree that those preambles are not limiting. *See* Dkt. 382, Ex. B at 1.

**RESPONSE: Admitted-in-part and disputed-in-part.** Amazon admits that it didn't request that the preambles be construed as limiting in the claim construction briefing before Judge Pallmeyer. Amazon disputes that the preambles wouldn't be limiting if the Court construes the asserted claims as Amazon has requested in its motion for summary judgment.

19.     In the reexam, Kove explained that the claim's "non-hierarchical cluster composition is expressly claimed . . . through the requirement that 'each' (i.e., all) of the data location servers be similarly configured to respond to a client request with the aforementioned information." Ex. K134 at 30 (90019036_2022-08-04_Response).

**RESPONSE**: **Admitted-in-part and disputed-in-part.** Amazon admits that Kove accurately reproduces the statements it made. Amazon disputes their accuracy, however, as the claims don't "expressly" claim any specific architecture and don't recite the term "non-hierarchical."

### Section I (non-infringement under "new" claim construction)

20.     All asserted claims of the Kove patents involve a "network" or a "system" and require that the networks or systems have at least two "location servers," *see* Ex. K5 claims 1, 3, 6, 10, 14, 17, 23, 24, 30 (USP7233978); Ex. K6 claims 1, 2, 6, 8, 12, 15 (USP7814170); Ex. K4 claims 17, 18, 24 (USP7103640), and a subset of the asserted claims additionally require a "data repository." *See* Ex. K6 claim 1 (USP7814170); Ex. K4 claims 17 and 18 (USP7103640).

**RESPONSE**: **Admitted.**

21.     While the asserted claims require that the location servers (and data repositories where applicable) store certain information (such as locations) and set forth various relationships between information (such as identifiers, locations, and data), they do not require any additional structures. *See* Ex. K5 claims 1, 3, 6, 10, 14, 17, 23, 24, 30 (USP7233978); Ex. K6 claims 1, 2, 6, 8, 12, 15 (USP7814170); Ex. K4 claims 17, 18, 24 (USP7103640).

**RESPONSE**: **Admitted in part and disputed in part.** Amazon admits that this statement sets forth some of the claim requirements. Amazon disputes this statement as it omits certain requirements, and mischaracterizes the remaining requirements, of the claims.

22.     Consistent with the requirements of the claims, Dr. Goodrich has analyzed infringement in S3 and DDB for "each set of two or more" of the alleged location servers within

"regions that share a namespace for buckets." Ex. K53 ¶¶ 79, 97, 102, 106, 111, 121, 128, 132, 175, 198, 207, 208 (2023-07-06 EX. D to Corrected Opening Expert Report of Goodrich); Ex. K54 ¶¶ 81, 96, 101, 109, 116, 128, 131, 146, 204, 212, 218, 222, 228, 232, 236, 241, 305, 327 (202307-06 EX. E to Opening Expert Report of Goodrich).

**RESPONSE: Admitted-in-part and disputed-in-part; objection.** Amazon objects to this statement as vague because Kove does not specifically identify which of the asserted claims it's referencing. Thus, Amazon lacks information to substantively admit or dispute this statement. Admitted that the statement accurately describes what Dr. Goodrich asserted he analyzed. Amazon disputes the remainder of the statement.

23. With respect to the claims that require a data repository, Dr. Goodrich analyzed infringement for the "one or more servers" that store the data corresponding to the alleged location servers. Ex. K53 ¶ 198 (2023-07-06 EX. D to Opening Expert Report of Goodrich); Ex. K54 ¶ 204 (2023-07-06 EX. E to Opening Expert Report of Goodrich).

**RESPONSE: Disputed; objection.** Amazon objects to this statement as vague because Kove does not specifically identify which of the asserted claims it's referencing. Thus, Amazon lacks information to substantively admit or dispute this statement.

24. The testing of AWS's expert, Dr. Gramma, that supposedly demonstrates ██████████████████████████████████████████████ Ex. K59 ¶ 175 (202308-18 Grama Expert Report) ("████████████████████████████████████████ ██████████████████████████, I was able to identify patterns in retrieving data stored on the Accused Products. "), ¶ 177 ("In the first set of data requests for both S3 and DDB, ██████████████████████████████████."), ¶ 178 ("On the second set of requests, ███████████ ███████████████████…."), ¶ 180 ("On the fourth set of requests, I repeated the same test but ██████████████████████████████."), ¶ 181 ("On the fifth set of requests, I again placed ██

15

█████████████████████████████████████████████████████████████████

████████████████ .”), ¶ 175 (“███████████████████████████████████

████████████████████████ , I was able to identify patterns in retrieving data stored on the

Accused Products.”).

**RESPONSE: Admitted in part and disputed in part.** Amazon admits that its expert's testimony

included some tests ████████████ Disputed as to its expert "only" testing ████████

████████████████ . 687-8 (2023-08-18 A. Grama Report) at ¶¶168-97. Amazon

disputes the statement's additional characterization of its expert's testing. Additionally, Amazon's

expert's name is Dr. Ananth Grama. Dkt. 687-8 at 1.

25.   Dr. Goodrich extensively analyzes how S3 and DDB infringe under all of AWS's

proposed constructions, and AWS's vague and conclusory assertion otherwise is insufficient to

establish that there are no disputed issues of material fact. Ex. K53 ¶¶ 118-123, 171-177, 226

(2023-07-06 EX. D to Opening Expert Report of Goodrich); Ex. K54 ¶¶ 113-118, 141, 159, 187,

234, 261, 300, 324, 349 (2023-07-06 EX. E to Opening Expert Report of Goodrich).

**RESPONSE: Admitted-in-part and disputed-in-part; objection.** Amazon admits that Dr.

Goodrich performed an infringement analysis. Amazon disputes the remaining portion of this

statement and objects to it because it's a legal conclusion and inappropriate for a statement of facts.

26.   As for ███ , Kove does not allege that they are location servers in claims with

nonhierarchical structures, *see* Ex. K53 ¶¶ 77, 111, 207, (2023-07-06 EX. D to Opening Expert

Report of Goodrich), and Kove only maps ███ to the "location server" for claims 17, 23, 24, and

30 of the '978 patent, which Kove contends encompass both hierarchical and non-hierarchical

structures. Ex. K53 ¶¶ 127, 131, (2023-07-06 EX. D to Opening Expert Report of Goodrich).

**RESPONSE: Admitted-in-part and disputed-in-part.** Amazon admits that Dr. Goodrich's

analysis identifies ███ as the claimed location servers for some of the asserted claims but not

others, but denies that Kove made those assertions clear in any version of its infringement contentions. Amazon further disputes that the claims encompass both hierarchical and non-hierarchical structures because Kove disclaimed hierarchical structures during each of the reexaminations.

27.     Grama's infringement rebuttal report provides, for the first time, that the accused products do not infringe because ████████████████████████████████████████ Ex. K59 ¶¶ 336-337 (2023-08-18 Grama Expert Report), and his only support for his ████████████████████████████████████, Ex. K59 ¶ 336, n397 (2023-08-18 Grama Expert Report) ((citing AWS_SRC_CODE_000000157)), which was not included in AWS's noninfringement contentions, , which do not disclose this theory, ████████████ ████████████████████████ and do not cite the source code AWS now relies on. *Compare* Ex. K158 (2023-03-21 AWS 2nd Amended Final Non-Infringement Contentions (DDB excerpt)) with Ex. K59 ¶ 336-337 (2023-08-18 Grama Expert Report (advancing new theory)).

**RESPONSE: Admitted-in-part and denied-in-part.** Amazon admits that Dr. Grama's infringement report details ████████████████████████ in the accused product. Amazon disputes the characterization as a "single piece of source code" and that it was not included in its noninfringement contentions, because the ████████████████████████ are specific examples of the hierarchical relationships disclosed in the contentions. Amazon further disputes that the source code wasn't cited prior to Dr. Grama's report because it was cited repeatedly, including by Kove in its infringement contentions and in Dr. Goodrich's analysis. *See* Ex. 95 (Amazon's Second Amended Final Non-Infringement Contentions) at 3; Ex. 96 (Ex. B to Kove's Final Infringement Contentions); Ex. 97 (Ex. G to Kove's Third Amended Infringement Contentions); Ex. 98 (Goodrich 7/6/23 Corrected Report Ex. B); Ex. 83 (Appendix A to Amazon's First Amended Final Non-infringement Contentions, dated February 21,

2023) at 14; Ex. 101 (Appendix A to Amazon's Final Non-infringement Contentions, dated August 13, 2020) at 14.

28.    Goodrich explains in his report that the person of ordinary skill in the art would understand the alleged location servers in S3 and DDB — ███████████████████ , respectively — to be non-hierarchical:



Ex. K53 ¶ 121 (2023-07-06 EX. D to Opening Expert Report of Goodrich); *see also id*. at ¶¶ 118-123.





Ex. K54 ¶ 116 (2023-07-06 EX. E to Opening Expert Report of Goodrich); *see also id*. at ¶¶ 113118; *id*. at ¶¶ 82, 109, 121, 131, 146, 165, 191, 195, 199 (identifying ███████████ as location servers in each asserted claim), and Dr. Grama does not dispute his reasoning. *See* Ex. K59 ¶¶ 329339, 349-364 (2023-08-18 Grama Expert Report).

**RESPONSE: Admitted-in-part and disputed-in-part.** Amazon admits that these are accurate reproductions from Dr. Goodrich's report. Amazon disputes the content and conclusions therein and Kove's characterizations of Dr. Goodrich's and Dr. Grama's opinions.

## Section II (non-infringement under previous claim construction)

### (*Amazon S3*)

29.     Kove identifies ██████ information comprising a ████████ as satisfying the "where data…is stored" element, Ex. K53, ¶¶ 87, 90-91 (2023-07-06 Ex. D to Opening Expert Report of Goodrich); *see also id*. ¶¶ 23-24, and Dr. Goodrich (Kove's technical expert) explains that ████████ in S3 consist of a ██████████ which in turn contains a ████████ and a ████████ Ex. K53, ¶ 87 (2023-07-06 Ex. D to Opening Expert Report of Goodrich), the combination of which specifies where the data in S3 — "objects" — are stored:



Ex. K53, ¶ 90 (2023-07-06 Ex. D to Opening Expert Report of Goodrich).

RESPONSE: **Admitted-in-part and disputed-in-part.** Admitted to the extent that ███████ comprise a ███████ which contains a ███████████████. Disputed that the combination of which specifies where the data in S3 is stored because that combination is used to request the ███████████████████████████████. *E.g.*, Ex. 99 (Markle Dep. Tr.) at 176:3–8; Ex. 100 (Sorenson Dep. Tr.) at 137:11–22 (describing ███████████████ ███████████████"), 137:23–25 (similar, for ██████), 139:21–23 (similar, for ████); Ex. 102 (Hamilton Dep. Tr.) at 110:10–21; Dkt. 687-16 (S3 Architecture Diagram).

30. Dr. Goodrich explains in his expert report that "'████████████ ██████████████████████████████████████████████ ████████████████████'" meaning that "'████████████ ████████████████'" Ex. K53, ¶ 24 (2023-07-06 Ex. D to Opening Expert Report of Goodrich) (emphasis added) (citing Ex. K118 at AMZ_KOVE_000443129 (AMZ_KOVE_000443110); Ex. K108 at 9:46–10:26, 11:06-11:17 (AMZ_KOVE_000012917)); *see also* Ex. K87 at AMZ_KOVE_000507062 (AMZ_KOVE_000507062) ("█ ████████████████████████████████████"); Ex. K74 at AMZ_KOVE_000435516 (AMZ_KOVE_000435516) ("████████████████████ ████████████████████████████████████████ ████"); Ex. K77 at AMZ_KOVE_000439511 (AMZ_KOVE_000439511) ("█ ████████████████████████████████████████ ██████████████████████████████████████████████"); Ex. K71 at AMZ_KOVE_000400711 (AMZ_KOVE_000400711) ("'████████████

█████████████████████████████████████████████████████████████████

█████ ”); Ex. K161 at (6:57–7:08) (AMZ_KOVE_000064821, also produced at AMZ_KOVE_000075807, Ex. K110) (███████████████████████████); *see* Ex. K53 ¶¶ 22 (citing and incorporating source code analysis in Appendix A thereto), 23-33, 87-94 (202307-06 Ex. D to Opening Expert Report of Goodrich); *see also id.* ¶¶ 8-48 (summarizing S3 structure, operations, and request paths).

**RESPONSE:** **Admitted-in-part and disputed-in-part.** Admitted to the extent that the quotations are accurate. Disputed as to Kove's characterizations of the quoted materials.

31.     Dr. Goodrich's opinions are based on AWS documents, videos, source code, and deposition testimony that all show that "██████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████ " Ex. K53, ¶ 24 (2023-07-06 Ex. D to Opening Expert Report of Goodrich) (emphasis added) (citing Ex. K87 at AMZ_KOVE_000507062 (AMZ_KOVE_000507062) ("█████████████████████████████████████████████"); Ex. K74 at AMZ_KOVE_000435516 (AMZ_KOVE_000435516) ("██████████████████████████████ ████████████████████████████████████████████"); Ex. K77 at AMZ_KOVE_000439511 (AMZ_KOVE_000439511) ("████████████████████████████████ ██████████████████████████████████████████ ████████████████████████"); Ex. K118 at AMZ_KOVE_000443126–AMZ_KOVE_000443127 (AMZ_KOVE_000443110) ("[███████████████████████████████████████████ ██████████████████████████████████████████████████████████████████



")); *see* Ex. K53 ¶¶ 22 (citing and incorporating source code analysis in Appendix A thereto), 23-33, 87-94 (2023-07-06 Ex. D to Opening Expert Report of Goodrich); *see also id.* ¶¶ 8-48 (summarizing S3 structure, operations, and request paths).

**RESPONSE: Admitted-in-part and disputed-in-part.** Admitted to the extent that the quotations are accurate. Disputed as to Kove's characterizations of the quoted materials.

32.     In many instances of the evidence that Dr. Goodrich cites in his expert report, AWS documents and engineers are literally describing the ██████████████████████████ ████████████ Ex. 87 at AMZ_KOVE_000507062 (AMZ_KOVE_000507062) ("████ ███████████████████████████████████"); Ex. 74 at AMZ_KOVE_000435516 (AMZ_KOVE_000435516) ("███████████████████████████████████ ███████████████████████████████████████████████ ████"); Ex. K77 at AMZ_KOVE_000439511 (AMZ_KOVE_000439511) ("████████ ███████████████████████████████████████████ █████████████████████████████████████████████████"); Ex. K71 at AMZ_KOVE_000400711 (AMZ_KOVE_000400711) ("█████████ █████████████████████████████████████████ ████"); Ex. K161 at (6:57–7:08) (AMZ_KOVE_000064821, also produced at AMZ_KOVE_000075807, Ex. K110) (███████████████████████████); Ex. K118 at AMZ_KOVE_000443129 (AMZ_KOVE_000443110) (████████████████████████ ████████████████████████).

**RESPONSE: Admitted-in-part and disputed-in-part.** Admitted to the extent that the quotations are accurately presented. Disputed as to Kove's characterizations of the quoted materials and misrepresentations as to what the "location information" in the claims requires.

33.     ████████████████████████████████████████████ Ex. K53,

¶¶ 18, 32 (2023-07-06 Ex. D to Opening Expert Report of Goodrich) (citing Ex. K109 at 9:10–9:55 (AMZ_KOVE_000013051); Ex. K110 at 24:43–26:36 (AMZ_KOVE_000075807); Ex. K60 at AMZ_KOVE_000012901 (AMZ_KOVE_000012900); Ex. K73 at AMZ_KOVE_000434260 (AMZ_KOVE_000434258); Ex. K112 at AMZ_KOVE_000066225 (AMZ_KOVE_000066223); Ex. K115 at AMZ_KOVE_000086393 (AMZ_KOVE_000086390)), and the ███ is passed through a service called ███, which resolves the ███ information to ███ ███ Ex. K53, ¶¶ 33, 40, 44, 46 (2023-07-06 Ex. D to Opening Expert Report of Goodrich) (citing Ex. K110 at 24:44–31:18, 26:56–28:25 (AMZ_KOVE_000075807); Ex. K108 at 10:27–13:12, 11:49–26:13, 54:11–55:24 (AMZ_KOVE_000012917); Ex. K109 at 34:55–37:46, 40:55–42:09 (AMZ_KOVE_000013051); Ex. K60 (AMZ_KOVE_000012900) (describing GET and PUT processes); Ex. K30 at 229:2–237:22 (2020-01-30 Markle Dep. Tr.)).

**RESPONSE: Disputed.** ███████████████████████████████████
███████████████████████████ *See* Dkt. 687-16 at 2; 687-66 at 86:12-17 (2020-01-30 Markle Dep. Tr.); Ex. 102 at 110:10-21 (Hamilton Dep. Tr.).

34.     Dr. Goodrich's determination that the information in ███ "specifies where data . . . is stored" is supported by an abundance of analysis and evidence, including AWS's source code, deposition testimony, highly confidential internal technical specifications, and lectures by AWS engineers explaining to other AWS engineers how S3 works. Ex. K53, ¶¶ 87, 90 (2023-0706 EX. D to Opening Expert Report of Goodrich) (citing Ex. K124 (AMZ_KOVE_000437244) (describing ███ encoding)); Ex. K118 at AMZ_KOVE_000443129 (AMZ_KOVE_000443110); Ex. K87 at AMZ_KOVE_000507062 (AMZ_KOVE_000507062) ("objects in S3 have ███ that tell S3 where the object is stored"); Ex. K74 at AMZ_KOVE_000435516 (AMZ_KOVE_000435516) ("The S3 ███ maintains a map of a

user key to ███████ locations at which the associated ███ is stored. This value associated with every key is called the ████."); Ex. K77 at AMZ_KOVE_000439511 (AMZ_KOVE_000439511) ("In S3, the █████ component is primarily responsible for maintaining a mapping between a key for a ███ and the locations at which the ███ is stored. Hence the data stored in the █████ is called an █████."); Ex. K71 at AMZ_KOVE_000400711 (AMZ_KOVE_000400711) ("████████████████████████████████████████ ████████████████████████████████████████"); Ex. K161 at (6:57-7:08) (AMZ_KOVE_000064821, also produced at AMZ_KOVE_000075807, Ex. K110) (████ █████████████████████████); Ex. K108 AMZ_KOVE_000012917 (lecture given by Sorenson regarding S3); *see also id.* ¶¶ 23-24 (citing, *e.g.*, Ex. K123 at AMZ_KOVE_000532507 (AMZ_KOVE_000532506) ("████████████████████████████████████████ ████████"); Ex. K60 at AMZ_KOVE_000012901 (AMZ_KOVE_000012900) (the █████ ████████████████████████████); Ex. K110 at 31:29–31:55 (AMZ_KOVE_000075807); Ex. K81 at AMZ_KOVE_000463426 (AMZ_KOVE_000463426); Ex. K77 at AMZ_KOVE_000439511 (AMZ_KOVE_000439511) ("[T]he data stored in the █████ is called an █████."); Ex. K30 at 231:13-232:9 (2020-01-30 Markle Dep. Tr.) (████ ████████████████████████████████████████ █████████████"); Ex. K160 at 136:12-21, 139:18-23 (2021-07-20 Sorenson Dep. Tr.) (███████████ in be ██████ is "[t]he identifier for a ████ inside a particular volume").

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to this statement to the extent it is a characterization of Dr. Goodrich's report and not a fact. Admitted to the extent that the quotations are accurate. Disputed as to Kove's characterizations of the quoted materials and misrepresentations as to what the "location information" in the claims requires.

35.    During his deposition, Dr. Grama testified that he understood "location" to mean "a piece of information *that lets you access data to support the operations that you want to perform* on that data."  Ex. K58 at 217:4-9 (2023-09-05 Grama Dep. Tr.) (emphasis added).

**RESPONSE: Disputed.** Dr. Grama's testimony as to his understanding of what a location would mean to him was limited to a specific set of questions within the deposition. Dr. Grama specifically stated on numerous occasions that when interpreting the claims and analyzing infringement, he applied the Court's constructions of the terms.

36.    Dr. Grama testified that he was interpreting the word "location" from the perspective of the POSITA, as opposed to rendering a legal judgment in the form of a new claim construction.  Ex. K58 at 217:10-218:1 (2023-09-05 Grama Dep. Tr.) ("[T]his entire conversation was prefixed as a POSITA[.] . . . I don't want to render a legal judgment.").

**RESPONSE: Disputed.** Dr. Grama's testimony as to his understanding of what a location would mean to him was limited to a specific set of questions within the deposition. Dr. Grama specifically stated on numerous occasions that when interpreting the claims and analyzing infringement, he applied the Court's constructions of the terms.

37.    Dr. Grama opines that the "IP address of ███" — i.e., a type of information that is used to directly communicate with the data storage servers and retrieve the object data — is the only location in S3 and that ████████████████████████████████████



██████████████████████" Ex. K59, ¶¶ 263-267 (2023-08-18 Grama Expert Report).

**RESPONSE: Admitted-in-part and disputed-in-part.** Admitted that Dr. Grama testified that an IP address for the ████s would constitute some of the required "location information" and that Dr. Grama noted the ██████████████████. Disputed as to Kove's characterizations that Dr. Grama testified that anything in S3 satisfies the "location information" claim element and that the only reason Dr. Grama concluded a ████ isn't a location was because of its ████████

38.  At deposition, Dr. Grama agreed that disk defragmentation is a process where data is moved to a different part of the hard drive to improve hard drive efficiency.  Ex. K58 at 239:20241:4 (2023-09-05 Grama Dep. Tr.).

**RESPONSE: Disputed; objection.** Amazon objects to this statement to the extent it is a characterization of Dr. Grama's testimony and not a fact. Amazon disputes that Dr. Grama provided testimony regarding improved hard drive efficiency.

39.  Dr. Grama initially agreed that a filepath *was* a location, but then reversed course and testified that a filepath *was not* a location.  Ex. K58 at 209:1-210:14 (2023-09-05 Grama Dep. Tr.) ("I would say the location of my file is C:/Documents/AIG/Deposition/A.  That is the location."), 237:18-242:17 ("Earlier you agreed that a file path to a file, you believed that was a location; correct?  A. Yes, that is a location." . . . "Is the text of the file path itself a location?  A. Ah, if you're just saying is C:. as it's written out or as I speak to you, is not a location.").

**RESPONSE: Disputed; objection.** Amazon objects to this statement to the extent it is a characterization of Dr. Grama's testimony and not a fact. Amazon disputes that Dr. Grama "reversed course" in his testimony. Dr. Grama's testimony was consistent: a file path is a location, but the text of that path is not.

40.  The Kove patents disclose a preferred embodiment with multiple "locations" — a static, indirect location (i.e., a URL) that maps to a dynamic, direct location (i.e., an IP address).  Ex. K53, ¶ 91 (2023-07-06 EX. D to Opening Expert Report of Goodrich) (citing Ex. K5 at 8:10-13, 22:53-23:6 (USP 7,233,978) and Ex. K6 at 4:53-57 (USP 7,814,170)).

**RESPONSE: Disputed.** Only one of the Kove patents, the '978, includes the URL and IP addresses as an embodiment of a location or location information, terms which have different constructions for the '978 Patent and the '640 and '170 Patents.

(*DynamoDB*)

41. Kove asserts that "primary keys" in DynamoDB are identifiers.  Ex. K54, ¶ 82 (2023-07-06 EX. E to Opening Expert Report of Goodrich) ("███████████ maintain mappings of ████████████████████ for items and/or attributes to their associated primary keys ("identifiers").");  ¶ 83 ("An item's primary key (partition ID) is an "identifier" under the parties' agreed construction, *i.e.*, "a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server.").

**<u>RESPONSE</u>: Admitted.**

42. Primary keys serve as identifiers in one of two forms: (A) when the primary key is a ████████████████████████████████████████; or (B) if there is █ ███████ when the primary key is ████████████████████████). Ex. K54, ¶ 9 (2023-07-06 EX. E to Opening Expert Report of Goodrich) ("Items are distinguished among the other items in the table ████████████████████ (citing Ex. K106 at AMZ_KOVE_000007013–AMZ_KOVE_000007014 (AMZ_KOVE_000007001); Ex. K122 at 1:00–3:34 (AMZ_KOVE_000507797));  ¶ 10 ("There are two kinds of primary keys in DynamoDB. The first is called a ████████████████ which is used as an ████████ ████████████████████████████████████████████████████████ ████████████████████████ Items in a table are ████████████████ The second type of primary key is called a '████████████████,' which is composed of a ████████ ████████████████████████ In a table with ████████████████, "[a]ll items with the same ████████████████████████████████████████" When a ████████ ██████ is used, items can have the same ████████████████████████████████████████ ██ values, which allows for ████████████████████████████████████ ████." (citing Ex. K106 at AMZ_KOVE_000007016 (AMZ_KOVE_000007001) (describing

27

"primary key," ███████████████████████████); Ex. K122 at 3:34–5:01 (AMZ_KOVE_000507797); Ex. K107 at 9:54–12:00 (AMZ_KOVE_000012726))).

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to this statement to the extent it is a characterization of the asserted patents and/or Dr. Goodrich's report and not a fact. Disputed that primary keys are "identifiers" satisfying the claims' requirements for the term. Admitted that DDB provides for ████████████ of primary keys.

43.    Kove has adduced evidence that both types of primary key ███████████████ satisfy the identifier limitation. Ex. K54, ¶¶ 9-10 (2023-07-06 EX. E to Opening Expert Report of Goodrich) (*see also* ¶ 47, *supra*), ¶ 82 ("The key that indexes these items is known as a "primary key," which is a █████████████████████████████████████████" whose ██████ is input into a hash function to determine "the partition" (the allocation of physical storage space in DynamoDB) in which an item's data is stored."), ¶ 83 ("An item's primary key ████████████ is an "identifier" under the parties' agreed construction, *i.e.*, "a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."); Ex. K50 at 337:10-338:22 (2023-09-09 Goodrich Dep. Tr.) ("But when I refer to 'primary key' in my report, I'm referring to either the ████████████████████████████████████ ███████████████████. Because in those instances, each of those ██████████████ █████"); Ex. K58 at 167:22-170:21 (2023-09-05 Grama Dep. Tr.).

**RESPONSE: Disputed; objection.** Amazon objects to this statement to the extent it is a legal conclusion and characterization of Dr. Goodrich's report and not a fact. Disputed that Kove has provided any evidence that primary keys satisfy the requirements for the claimed "identifier."

44.    Claim 1 of Kove's US Patent No. 7,814,170 ("the '170 patent") provides:

1. A system for managing data stored in a distributed network, the system comprising:

a data repository configured to store a data entity, wherein an identifier string identifies the data entity; and

a data location server network comprising a plurality of data location servers, wherein data location information for a plurality of data entities is stored in the data location server network, at least one of the plurality of data location servers includes location information associated with the identifier string, each one of the plurality of data location servers comprises a processor and a portion of the data location information, the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data location servers based on the hash function applied to the identifier string.

Ex. K6 (claim 1), and claims 6 and 15 of the '170 patent and claims 17 and 18 of Kove's US Patent No. 7,103,640 ("the '640 patent) are similar to claim 1 of the '170 patent. *See* Ex. K6 (claims 6 and 15); Ex. K4 (claims 17 and 18).

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to this statement to the extent it is a characterization of the asserted claims and not a fact. Amazon admits that the statement accurately quotes claim 1 of the '170 patent. Disputed to the extent that Kove argues the claims do not have substantive differences.

45. The specifications of the asserted patents describe mappings to merely be associations. Ex. K6 at 20:8-29 (USP7814170) (referring to "identifier/location associations" interchangeably with "identifier/location mapping"); Ex. K4 at 19:61-20:17 (USP7103640) (same); Ex. K5 at 4:30-34 (USP7233978) (referring to "identifier/location mappings, or associations").

**RESPONSE: Disputed; objection.** Amazon objects to this statement to the extent it is a characterization of the asserted patents and not a fact. Disputed to the extent that Kove is presenting additional and alternative meanings for claim language that has been construed by the Court.

46.     Kove's expert, Dr. Goodrich, catalogs the evidence showing that DDB meets the location server limitation because it shows that at least one location server includes location information associated with the identifier string.  Ex. K54, ¶ 82 (2023-07-06 EX. E to Opening Expert Report of Goodrich):



Ex. K54, ¶ 82 (2023-07-06 EX. E to Opening Expert Report of Goodrich) (citing Ex. K39 at 137:21–138:12 (2020-01-29 Sorenson Dep. Tr.) (describing communications between ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), 194:19–195:8 (same); Ex. K106 at AMZ_KOVE_000007031 (AMZ_KOVE_000007001) ("To write an item to the table, DynamoDB uses the value of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); Ex. K106 at AMZ_KOVE_000007031 (AMZ_KOVE_000007001) ("To read an item from the table, you must specify the ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮. DynamoDB ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



")); *see also id*. ¶¶ 213, 315; ¶ 10 (citing Ex. K106 at AMZ_KOVE_000007016 (AMZ_KOVE_000007001) (describing "primary key," ███████████); Ex. K122 at 3:34–5:01 (AMZ_KOVE_000507797); Ex. K107 at 9:54–12:00 (AMZ_KOVE_000012726)); ¶ 14 (citing Ex. K39 at 53:14–54:9 (2020-0129 Sorenson Dep. Tr.); Ex. K116 at 56:20–58:45 (AMZ_KOVE_000390547)); ¶ 15 (citing AMZ_KOVE_000487470 (12:35–13:05); ¶ 16 (citing Ex. K106 at AMZ_KOVE_000007031 (AMZ_KOVE_000007001); Ex. K117 AMZ_KOVE_000397627); ¶ 32 ("Each ████████ stores location information corresponding to the partitions assigned to that ████████. ██ ████████████████████████ ████████████████████████ ████████" (citing Dr. Goodrich's source code analysis (Appendix B) and Ex. K111 at AMZ_KOVE_000064844 (AMZ_KOVE_000064843) ("The ██████ describes relationship between ████████████ . . . . To make user data read/write fast, we cache ██████████ ))); *see* ¶¶ 53-61, *infra*.

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to this statement to the extent it is a characterization of Dr. Goodrich's report and not a fact. Amazon disputes that DynamoDB meets the location server limitation, or that Dr. Goodrich has "catalog[ed]" evidence to that effect. Amazon admits that the statement accurately quotes ¶ 82 of Dr. Goodrich's report.

47.    As Dr. Goodrich explained, the ████████ in DDB ████████ ████████████████████████ ████████████. Ex. K54, ¶ 82 (2023-07-06 Ex. E to Opening Expert Report of Goodrich); *see also* Ex. K58 at 167:22-170:21 (2023-09-05

Grama Dep. Tr.) ("████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████ ██.").

**RESPONSE: Disputed; objection.** Amazon objects to this statement to the extent it is a
characterization of Dr. Goodrich's report and not a fact. Amazon disputes that the ████████
███████████████████████████████████████. Dr. Goodrich presented no evidence of the
████████████████████████████ and the source code confirms that no ████████
████████████████████████.

48. Data in DDB are referred to as "items," and each item ████████████████████
primary key ████████████████████████████████████████████████████
████████████████████████████████ *See* Ex. K54, ¶¶ 7-10, 82 (2023-07-06 EX. E to
Opening Expert Report of Goodrich).

**RESPONSE: Admitted.**

49. In retrieving and returning data items requested by customers, ████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████ *See* Ex. K54, ¶¶ 20, 24, 27, 28, 43-45, 48, 82 (2023-07-06 EX. E to
Opening Expert Report of Goodrich) (citing Ex. K120 at 2:13–6:38, 20:33–23:58, 35:20–38:22
(AMZ_KOVE_000487445); Ex. K107 at 3:10–3:28, 8:36–9:07 (AMZ_KOVE_000012726); Ex.
K116 at 3:20–4:43, 8:28–9:23, 33:19–41:03, 58:45–1:16:15 (AMZ_KOVE_000390547); Ex.
K119 (AMZ_KOVE_000483279); Ex. K122 at 7:40–11:46, 16:48–18:09, 29:36–32:20
(AMZ_KOVE_000507797); Ex. K113 at AMZ_KOVE_000074060 (AMZ_KOVE_000074059);
AMZ_KOVE_000400160 (indicating that ████████████████ maintain ████████

██████████████████████████████████████████████); Ex. K116 at 10:12–10:23 (AMZ_KOVE_000390547) (indicating that only "████████████████████████████████"); Ex. K114 at AMZ_KOVE_000074220 (AMZ_KOVE_000074219); Ex. K116 at 10:23–12:15 (AMZ_KOVE_000390547); Ex. K39 at 73:17–74:8, 137:17–138:12 (2020-01-29 Sorenson Dep. Tr.); Ex. K120 AMZ_KOVE_000487445 (drawing depicting "1. On ████████████ ████████ from ██████████████; Ex. K111 at AMZ_KOVE_000064852 (AMZ_KOVE_000064843) ("█████████████████████████████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ████████████████████████████████████████"); Ex. K125 at AMZ_KOVE_000086166 (AMZ_KOVE_000086165) ("██████████████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ███████████████████████████████████████"); Ex. K116 at 9:38–10:03 (AMZ_KOVE_000390547) (If the █████████ is stale, it could go to the old node and the old node would say "I don't know what you're talking about—████████████████████████ ██████████. In that case, the ███ automatically goes to the ██████████ and ████████████ ██████████████████████████), 10:23–12:15 (describing need for updated metadata after split for heat); Ex. K122 at 11:46–16:48 (AMZ_KOVE_000507797); Ex. K39 at 56:13–61:6 (2020-01-29 Sorenson Dep. Tr.); Ex. K107 at 3:10–4:22 (AMZ_KOVE_000012726); Ex. K122 at 3:34–6:03 (AMZ_KOVE_000507797); Ex. K39 at 55:13–63:18 (2020-01-29 Sorenson Dep. Tr.); Ex. K107 at 4:22–4:40 (AMZ_KOVE_000012726); Ex. K122 at 14:04–19:51 (AMZ_KOVE_000507797); Ex. K116 at 3:20–4:43 (AMZ_KOVE_000390547); Ex. K39 at

61:7–68:12 (2020-01-29 Sorenson Dep. Tr.); Ex. K39 at 137:21–138:12 (2020-01-29 Sorenson Dep. Tr.) (describing communications between ████████████████████████), 194:19–195:8 (same); Ex. K106 at AMZ_KOVE_000007031 (AMZ_KOVE_000007001) ("To write an item to the table, DynamoDB uses the value of the ████████████████████ ████████████████████████████████████████████████████████████████ ██████████.") ("To read an item from the table, you must specify the ████████████████ DynamoDB uses this value ████████████████████████████████████████ ██████████"); Ex. K39 at 100:16–101:15 (2020-01-29 Sorenson Dep. Tr.); Ex. K111 at AMZ KOVE 000064843-44 (AMZ_KOVE_000064843) (same as AMZ_KOVE_000073688 at AMZ_KOVE_000073692).

**RESPONSE: Admitted-in-part and disputed-in-part.** Admitted that Kove describes some parts of the data retrieval process but disputed in that Kove omits many parts of the complex system at-issue, and mischaracterizes the primary key as being part of the ████████████████████ █████████████████████████████████████████████████

50. The ██████████ for the requested item is ████████████████████, and this ██████████ is then used by the ████████████████ to lookup ***the locations for the item corresponding to the primary key***. Ex. K54, ¶ 82 (2023-07-06 EX. E to Opening Expert Report of Goodrich); *see also* Ex. K58 at 167:22-170:21 (2023-09-05 Grama Dep. Tr.) ("So the primary key is a key that identifies a row in the table in DynamoDB ████████████████████ █████████████████████████████████████████████████████████. And the idea here is that the primary key goes through █████████████████████████████████████.").

**RESPONSE: Admitted-in-part and disputed-in-part.** Admitted that the ████████████████ for the requested item to obtain a ██████████. Disputed that the ██████████ is used to lookup locations for the item corresponding to the ████████████████████████████████████

█████████████████████████████████. Further disputed because a separate lookup process is required to then find the item that corresponds to the ██████████████████████████████████.

51. █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ maintain the "identifier/location mappings" that the Court's construction requires, are the location servers, and maintain information associated with the identifier strings. Ex. K54, ¶ 82 (2023-07-06 EX. E to Opening Expert Report of Goodrich) (citing Ex. K39 at 137:21–138:12 (2020-01-29 Sorenson Dep. Tr.) (describing communications between █████████████████████████████), 194:19–195:8 (same); Ex. K106 at AMZ_KOVE_000007031 (AMZ_KOVE_000007001) ("To write an item to the table, DynamoDB uses the ████████████████████████████████████████████████████████████████████████████████████████████████████████████ ████████"); Ex. K106 at AMZ_KOVE_000007031 (AMZ_KOVE_000007001) ("To read an item from the table, you must specify the █████████████████████. DynamoDB uses this ████ as █████████████████████████████████████████████████████"));

**RESPONSE: Disputed; objection.** Amazon objects to this statement to the extent it is a characterization of Dr. Goodrich's report and not a fact. Amazon disputes that DynamoDB's ███████████████ maintain the "identifier/location mappings" that the Court's construction requires. Amazon further disputes that the ██████████████ "return the locations for the specific ████████ that was provided in a customer's request" because ████████████ have no knowledge of what ████████ are associated with ██████████████. The ████████████ are only capable of identifying the location of a ████████ from the ████████████ and cannot provide "locations for the specific ████████████" as Kove asserts.

52. Items in DDB that have the same ████████████ are stored in the ████████████, which means that they are ████████████████████████. Ex. K54, ¶ 10 (2023-07-06 EX. E to

Opening Expert Report of Goodrich) ("In a table with ███████████, '[a]ll items with the same ████████████████████████████████████████.'" (quoting Ex. K106 at AMZ_KOVE_000007016 (AMZ_KOVE_000007001)).

**RESPONSE: Disputed.** ███████ are all stored on ████████████████ and can vary in size. Items sharing a ███████ only means that they share a ██████, not that they are stored in the ████████████████████████████████

     53.     In DDB, the ██████████████████████████████████, and ████████████ ██████████████████████████████████. Ex. K54, ¶¶ 10, 12-14, 83, 84 (2023-07-06 EX. E to Opening Expert Report of Goodrich); Ex. K59 ¶ 225 (2023-08-18 Grama Expert Report) ("the partition IDs are associated with █████████████████████").

**RESPONSE: Admitted.**

     54.     The parties agree that for primary keys that ██████████████████████ the primary key ██████████████████████ and that these primary keys (which are ████████████ ████████████████████████████████████████████████████████████████████. Ex. K54, ¶¶ 9-10, 12-14, 83, 84 (2023-07-06 EX. E to Opening Expert Report of Goodrich); Ex. K58 at 167:22-170:21 (2023-09-05 Grama Dep. Tr.) ("So the primary key is a █████████████ ████████ the table in DynamoDB. It may be a key that is supplied, or it may be a ███████████. And a ████████████████████████████████████ And the idea here is that the primary key ████████████████████████████████████████."); Ex. K59 ¶ 225 (2023-0818 Grama Expert Report) ("the partition IDs are associated with ████████████████ on the ███████"); Ex. K58 at 167:22-170:21 (2023-09-05 Grama Dep. Tr.).

**RESPONSE: Admitted.**

     55.     Dr. Goodrich explains why the person of ordinary skill in the art would view ████████████ as storing these primary keys (which are the identifiers). Ex. K54, ¶¶ 82-83

(202307-06 EX. E to Opening Expert Report of Goodrich) ("The person of ordinary skill in the art would understand that a ███████ primary key is ████████████ the primary key. The ███ ████████████ key determines '████████' in which an item's data is stored.")).

**RESPONSE: Admitted-in-part and disputed-in-part; objection.** Amazon objects to this statement to the extent it is a characterization of Dr. Goodrich's report and not a fact. Admitted that the cited portion of Dr. Goodrich's report is accurately quoted. Disputed as to the substance and conclusion of Dr. Goodrich's testimony.

### Willfulness

56. On August 24, 2011, the Patent Office issued a Non-Final Office Action rejecting each of the 37 pending claims in Amazon patent application No. 13/042,301 ("the '301 application") as anticipated by Kove's '978 patent. Ex. K90 (ATI_KOVE_0000255 at ATI_KOVE_0000347-348). In explaining why Amazon's claims were anticipated, the Patent Office cited and quoted the following language from the '978 patent in connection with each of the claims set out in the '301 application:

- "NDTP and its associated servers maintain a mapping between identifiers and locations ... NDTP may be viewed in this respect as fully generalized name service suitable for any kind of service and not restricted to a specialized service" *Id.* at ATI_KOVE_0000348-49 (quoting '978 patent at 23:60-24:10) (ellipses preserved).

- "receiving a location query from a client requesting the location of data relevant to an entity identified in the query" *Id.* at ATI_KOVE_0000349 (quoting '978 patent at 2:42-44)

- "each operation within NDTP consists of a request message from an NDTP client to an NDTP server" *Id.* (quoting '978 patent at 7:55-61).

- "Sends a redirect message ... comprising a list of location servers containing information relevant to the entity identified in the query" *Id.* (quoting '978 patent at 2:47-52).

*Id.* at ATI_KOVE_0000348-357 (repeating the above-quoted language to support rejection of each independent claim, and incorporating the above-quoted language through reference to support rejection of each dependent claim). Amazon engineer Swami Sivasubramanian was the first named inventor on the '301 patent application, and signed the application to confirm that all statements contained in the application were true and accurate. *Id.* at ATI_KOVE_0000255 (listing Sivasubramanian as an applicant), ATI_KOVE_0000319.

**RESPONSE: Admitted.**

57. On February 24, 2012, Amazon responded to the Patent Office's initial rejection of the '301 patent application by cancelling 21 of the rejected claims. *Id.* at ATI_KOVE_0000417, 424. Amazon attempted to distinguish the remaining claims from the '978 patent. *Id.* at ATI_KOVE_0000417-424. In presenting its argument, Amazon stated: "Applicants have evaluated the portions of Overton cited in the Office Action, and indeed the entirety of Overton . . . ." *Id.* at ATI_KOVE_0000417. Amazon further stated:

> The system and method of Overton utilizes a network distributed tracking protocol (NDTP), which is a transfer protocol, that has "the capability to manipulate location information used to efficiently track the location of information associated with an individual entity in the distributed database system." *Id.* at Col. 4, lines 20-25. A NDTP server is a server configured to determine where data associated with a particular entity is located, and thus "maintains a set of identifier/location mappings that are modified or returned in response to NDTP request messages from clients." *Id.* at Col. 4, lines 34-38 and Col. 5, lines 37-40. The locations "may be address information for the application server(s) containing information relevant to the identifier or address information for the application server(s) through which data relevant to the identifier may be accessed." *Id.* at Col. 4, lines 55-61. Overton discloses that each individual identifier and location may generally be "definable using any format, size, encoding, etc. *Id.* at Col. 24, line 65 - Col. 25, line 3.

*Id.* at ATI_KOVE_0000417-18 (internal citations and quotation marks in original). Amazon's response included that language three times—once for each of the three independent claims it

continued to pursue. *Id.* at ATI_KOVE_0000417-423 (using the above language in connection with independent claims 34, 40, and 57).

**RESPONSE: Admitted.**

58. Over the years and throughout the infringement period, Amazon has cited Kove's '978 patent to the Patent Office in connection with at least 202 patent applications, and has cited Kove's '170 patent at least 205 times. Kove Resp. to AWS SMF ¶ 98; Ex. K23 at 29-53 (listing Amazon patents that cite the '978 patent and '170 patent, respectively). In total, Amazon has cited the Kove patents at least 407 times. Ex. K23 at 29-53. The '978 patent on its face claims priority to the application that issued as the '640 patent. Ex. K5 ('978 patent) at 1. The application that issued as the '170 patent also includes on its face a claim of priority to the application that issued as Kove's '640 patent. Ex. K6 ('170 patent) at 1. On March 22, 2012, the Patent Office cited Kove's '170 patent application (Application No. US-2007/0011267) in a Notice of References attached to a Notice of Allowance for an Amazon patent. Ex. K159 at 1, 9.

**RESPONSE: Admitted.**

59. Amazon applies for ███████████████████████████████████████ ████████. Ex. K35 at 81:2-82:22, 303:18-304:13 (2023-05-11 Sivasubramanian Dep. Tr.); Ex. K165 at 277:3-278:9 (2023-05-05 Rath Dep. Tr.).

**RESPONSE: Admitted in parted and disputed in part; objection.** Amazon objects to this statement to the extent it is a characterization of Messrs. Sivasubramanian's and Rath's testimony and not a fact. Admitted to the extent that Amazon applies for patents. Disputed as to ████████ ████████████████████████████████████████████████████████████████████ ████.

60. In ████████, Amazon decided to build DynamoDB. Ex. K88 (AMZ_KOVE_000525421) at 1-2; Ex. K80 (AMZ_KOVE_000445727) at 1-3 (announcing

decision to build "a new service"), and was preparing for a "beta" launch of DynamoDB as early as ████████, Ex. K163 (AMZ_KOVE_000449719) (referencing "private beta"). ████████

████████████████████████████████████████████████████████ Ex. K84 (AMZ_KOVE_000498624). In that role, Dr. Sivasubramanian "managed the development" of DynamoDB, led the DynamoDB engineering team, and was responsible for ████████████

████████████████████████████████ Ex. K34 at 47:19-50:16 (2023-05-10 Sivasubramanian Dep. Tr.); Ex. K164 at 3 (AMZ_KOVE_000522158) (Dr. Sivasubramanian explaining that ████████████████████████████████████████████████

████████████████████████████████████████████████████).

**RESPONSE: Admitted.**

61. Amazon considers itself "one of the world's largest patent holders." AWS SMF ¶ 97. Amazon employs sophisticated counsel to prosecute patents, analyze asserted patents, and defend against infringement allegations. Ex. K33 at 439:19-440:3 (4-24-23 Hayden Dep. Tr.)



████████, 321:4-6 (Amazon has ████████████); Ex. K90 (ATI_KOVE_0000255) at 338 (showing AWS retained Knobbe, Martens, Olson & Bear, LLP to represent it in the patent office; Dkts. 21-23 (AWS represented by Jenner & Block LLP); Dkts. 243-44 (AWS represented by Fisch Sigler LLP). When describing Amazon's approach to intellectual property investigation, Scott Hayden, Amazon's Vice President of Intellectual Property and corporate designee on Amazon's intellectual property policies testified as follows:

> Kove Atty: What's Amazon's process for determining whether it infringes on an asserted patent?



…

Kove Atty [reading Hayden's prior trial testimony in *Vocalife, LLC, vs. Amazon.com, Inc.*, an unrelated patent case into the record]:
And could you explain a little more specifically how Amazon would determine what the value of a particular patent is to what Amazon wants to do?

Hayden [reading his prior testimony into the record]:
If the -- their patent is valid, enforceable, and -- we would look at the claims that determine the actual coverage and the relevance of the patent to what we are doing. If it is something that is a small piece that doesn't make any difference, we could use that or an alternative, then, obviously, it's going to be worth a lot less. If it is on something that is the -- essential piece of that, then it could be worth more. But all those things still get to the point of being reasonable from the standpoint.

There are people in the past -- We've had people in the past that have demanded, you know, one – one company came in and said, you know, when I first started, that they wanted 5 percent of our gross revenues. Unfortunately we didn't make 5 percent at the time.

So that was one where we would say, well, our best answer is that there is just so -- just turn the feature off and we won't do it. And so that's always an alternative that say if we can't come to reasonable terms, then we'll stop doing things.

Ex. K33 at 396:6-400:4 (4/24/23 Hayden Dep. Tr.) (cleaned up to omit objections and reporter interruptions). Amazon investigations are ███████████████████████████ ███████ ; Amazon has ████████████████████████████████████ ███████████████████████████████████████ *Id.* at 400:22-401:1, 402:18-403:6. Hayden testified:

Kove Atty: ████████████████████████████████████████ ██████████████████

Hayden: ██████

...

Kove Atty: ████████████████████████████████████

Hayden: ████████████████████████████████████████
████████████████████████████████

*Id.* at 400:22-401:1, 402:18-403:6 (cleaned up to omit objections). Hayden further testified that it

is ████████████████████████████████████████████████████████

████ *Id.* at 412:17-413:1. Hayden identified S3's and DynamoDB's scalability features as the

████████████████████████████████████████████████████████

Ex. K33 at 413:3-414:13 (2023-04-24 Hayden Dep. Tr.); Ex. K52 (Opening Expert Report of

Michael Goodrich, dated July 6, 2023) ¶¶ 196, 199-200, 253-258 (S3 and DynamoDB not

technically acceptable without scalability feature).

**RESPONSE: Admitted-in-part and disputed-in-part; objection.** Amazon objects to this

statement to the extent it contains a characterization of Mr. Hayden's testimony and not a fact.

Admitted that the testimony appears to be accurately quoted from the deposition transcripts,

though the quoted pages aren't all included in Kove's Ex. K33. Disputed as to Kove's

characterizations of the testimony, the facts, and the conclusions it draws from them. Amazon has

████████████████████████████████████████████████████████

████████. *E.g.*, Ex. 102 (Hamilton Dep. Tr.) at 43:20–44:11; Dkt. 700-34 (Sivasubramanian

Dep. Tr.) at 74:21–75:7. As Mr. Hayden testified, Amazon ████████████████████████

████████████████████████████████████████████████████. Ex. 82

(Hayden Dep. Tr.) at 416:25–417:5 ("████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████"); s*ee also* Dkt.

700-34 (Sivasubramanian Dep. Tr. at 77:17–2; Ex. 102 (Hamilton Dep. Tr.) at 58:7–59:21).

Amazon's legal department ████████████████████████████████████████ as
the testimony that Kove quoted in paragraph 61 but didn't include in Ex. K33 demonstrates. Ex.
82 (Hayden Tr. at 402:18–403:6). Amazon's engineers focus on customer needs and ████████
████████████████████████████████████████. *E.g.*, Dkt. 700-34 (Sivasubramanian Dep.
Tr.) at 74:21–75:7 "When we build it, we actually look for customer requirements and feedback,
and then we go and look at what are the best ways to solving it. And so go write the design docs
and so forth. ████████████████████████████████████████████████████
████████████████████████████████████████████████████"); Ex.
102 (Hamilton Dep. Tr.) at 158:25–159:4 (similar).

      62. ████████████████████████████████████████████
████████████████████████████████████████. Ex. K33 at 417:23418:13
(2023-04-24 Hayden Dep. Tr.); Ex. 38 at 118:16-120:3, 120:22-121:8 (2023-05-23 Vermeulen
Dep. Tr.); Ex. K34 at 72:4-20, 74:13-75:8 (2023-05-10 Sivasubramanian Dep. Tr.). Amazon
engineers ████████████████████████████████████████████████████
████████████████████ Ex. K38 at 118:16-120:3, 120:22-121:8 (2023-0523
Vermeulen Dep. Tr.); Ex. K34 at 72:4-20, 74:13-75:8, 77:6-13 (Sivasubramanian Tr.); Ex. K165 at
275:23-276:14 (2023-05-05 Rath Dep. Tr.); Ex. K166 at 290:11-291:4 (2023-02-21 Henry Dep.
Tr.). On this issue, Amazon engineer Allan Vermeulen testified as follows:

    Kove Atty: ████████████████████████████████████
████████████████████████████

    Vermeulen: ████████████████████████████████
████████████████████████████

    Kove Atty: ██████████

...

Vermeulen: ███████████████████████████████████
██

...

Kove Atty: ███████████████████████████████████
██████████?

Vermeulen: ███████████████████

Kove Atty: ████████████████████████████

Vermeulen: ███████████████████████████████
████████████████████

Ex. K38 at 118:16-121:8 (2023-05-23 Vermeulen Dep. Tr.).

**RESPONSE**: **Admitted-in-part and disputed-in-part.** Admitted that the testimony appears to be accurately quoted. Disputed as to Kove's characterizations of that testimony. Disputed as to Kove's characterizations of the testimony, the facts, and the conclusions it draws from them. Amazon has ████████████████████████████████████████ ████████████████████████ *E.g.*, Ex. 102 (Hamilton Dep. Tr.) at 43:20–44:11; Dkt. 700-34 (Sivasubramanian Dep. Tr.) at 74:21–75:7. As Mr. Hayden testified, Amazon ██████ ███████████████████████████████████████████████████████ ████████. Ex. 82 (Hayden Dep. Tr.) at 416:25–417:5 ("████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████"); *see also* Dkt. 700-34 (Sivasubramanian Dep. Tr. at 77:17–2; Ex. 102 (Hamilton Dep. Tr.) at 58:7–59:21). Amazon's legal department ███████████████████████████████████ so. Ex. 82 (Hayden Tr. at 402:18–403:6). Amazon's engineers focus on customer needs and

████████████████████████████████████████████████████████████. *E.g.*, Dkt. 700-34 (Sivasubramanian Dep. Tr.) at 74:21–75:7 "████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████."); Ex. 102 (Hamilton Dep. Tr.) at 158:25–159:4 (similar).

63. Amazon engineer Swami Sivasubramanian has more than 250 patents, Ex. K34 at 79:22-80:11 (2023-05-10 Sivasubramanian Dep. Tr.), ████████████████████████████

████████, Ex. K34 at 66:18-71:1 (2023-05-10 Sivasubramanian Dep. Tr.) ("█████████████████

██████████████████████"). ████████████████████████████████

████████████████████████████████ When asked "Do you understand that it's wrong to

infringe a patent," Dr. Sivasubramanian was ████████████████████████



*Id.* Alyssa Henry, the former General Manager of S3, Ex. K166 at 18:18-19:3 (2023-02-21 Henry Dep. Tr.), also does not know whether stealing or infringing intellectual property is wrong. She stated:

> Q: Would you agree that it would not be okay for a big company to use a small company's patents without permission?
>
> A: I don't know.
>
> Q: You don't know if it would be okay for a company to infringe a patent?
>
> A: I'm not a lawyer.

Q: Do you think you need to be a lawyer to know whether infringement is okay?

A: I don't know.

Q: Why not?

A: I'm not a lawyer.

...

Q: Do you think it's wrong to steal intellectual property?

A: I don't know.

Ex. K166 at 289:21-290:12, 292:9-11 (2023-02-21 Henry Dep. Tr.); *see also* 294:4-18, 295:23-25 (expressing indifference to patent infringement and intellectual property violations).

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to this statement to the extent it characterizes Dr. Sivasubramanian's and Ms. Henry's testimony and is not a fact. Admitted that the testimony appears to be accurately quoted. Disputed that either witness's knowledge of how to analyze the legal conclusion of infringement or legal or moral judgments are material facts. Further disputed for the same reasons as set forth above in response to paragraphs 60 and 61.



64. Amazon has a ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████. Ex. K35 at 298:7-302:9 (2023-05-11 Sivasubramanian Dep. Tr.) ("Q: ███████████████████████████████████████████████ "); Ex. K165 at 277:3-278:9 (202305-05 Rath Dep. Tr.); Ex. K33 at 343:2-344:18 (2023-04-24 Hayden Dep. Tr.) (████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████ ").  Hayden further testified that

AWS ███████████████████████████████████████████████████ Ex.
K33 at 344:4-344:18 (2023-04-24 Hayden Dep. Tr.) ("█████████████████████
███████████████████████████████████████████████████ .").

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to this
statement to the extent it contains characterizations of Amazon's policy and Mr. Hayden's
testimony and is not a fact. Admitted that the testimony is accurately quoted. Amazon disputes
Kove's characterization of the testimony, Amazon's policies, and Kove's conclusions. Amazon
also disputes that the purpose of the policy ████████████████████████████████████
████████████████████████████████████ Further disputed
for the same reasons as set forth above in response to paragraphs 60 and 61.

      65.    AWS's expert opines that a single programmer could have designed around Kove's
patents in 25 days, presumably at any time. Ex. K58 at 277:11-14 (9/5/23 Grama Tr.). ████████
████████████████████████ Ex. K33 at 394:7-21 (4/24/23 Hayden Tr.); Ex.
K165 at 261:9-18, 266:1-25 (2023-05-05 Rath Dep. Tr.).

**RESPONSE: Admitted.**

Dated: December 4, 2023

Respectfully Submitted,

*/s/ R. William Sigler*
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (pro hac vice)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (pro hac vice)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Suite 400
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, and also served a copy on all counsel of record via email.

*/s/ R. William Sigler*
R. William Sigler
