**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KOVE IO, INC., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Judge Matthew F. Kennelly |
| v. | Jury Trial Demanded |
| AMAZON WEB SERVICES, INC., | ███████████████ |
| Defendant. | |

## AMAZON WEB SERVICES, INC.'S RESPONSE TO KOVE'S STATEMENT OF MATERIAL FACTS

Under Federal Rule of Civil Procedure 56 and Local Rule 56.1(b)(2), Defendant Amazon Web Services, Inc. ("Amazon") submits this Response to Kove's Statement of Material Facts in support of its cross motion for summary judgment (Dkt. 702).

## Patent Eligibility Under § 101

1.       AWS intends to maintain its § 101 defense (among others), stating that it believed the occurrence of events following the Court's Order "may impact that defense, including at least for the reasons detailed in Mr. Greene's expert report," citing ¶¶ 261-278 of Mr. Greene's July 3, 2023 Expert Report. Ex. K162 (Gina Cremona to Bill Sigler dated September 13, 2023); Ex. K29 (Bill Sigler to Gina Cremona dated September 22, 2023).

**RESPONSE: Admitted.**

2.       Mr. Greene alleges that claim 17 of the '978 patent "describes generalized location services . . . and transport protocols . . . .." and based on this he opines that the "asserted claims consist of generalized steps performed on generic and conventional computers." Ex. K42 at ¶ 263 (Expert Report of Joseph B. Greene, dated July 3, 2023).

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to this statement to the extent it is a characterization of Mr. Greene's report and not a fact. Amazon admits that the statement accurately quotes Mr. Greene's July 3, 2023 report. Amazon disputes the statement to the extent it implies that Mr. Greene's opinion that the "asserted claims consist of generalized steps performed on generic and conventional computers" is "based on" claim 17 of the '978 patent. Mr. Greene's report discusses claim 17 as an example of—not the basis for—his opinion.[1]

3.      When discussing the term "identifiers" in claim 17 of the '978 patent, Mr. Greene opines that using "'identifiers' to store and locate resources can be implemented in other mediums" such as "a library's card catalogue with identifiers for authors and shelving location." Ex. K42 at ¶ 267 (Expert Report of Joseph B. Greene, dated July 3, 2023).

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon disputes that this statement accurately quotes Mr. Greene's report. In the quoted text, Mr. Greene discusses the term "identifier," not "identifiers."[2] Amazon admits that the remainder of the citation is accurately quoted. Further, Mr. Greene's descriptions in that quoted passage apply to the plain and ordinary meaning of the term identifier as it would be used in the field, not the term as construed in this case. As such, Amazon objects to this statement as misleading and misrepresentative of Mr. Greene's testimony.

4.      Mr. Greene analogizes receiving and storing location information based on "'predetermined' 'criterion'" to moving files in a filing cabinet. Ex. K42 at ¶ 266 (Expert Report of Joseph B. Greene, dated July 3, 2023).

---

[1] Dkt. 700-42 at ¶ 263 (Expert Report of Joseph B. Greene, dated July 3, 2023).

[2] Dkt. 700-42 at ¶ 267 (Expert Report of Joseph B. Greene, dated July 3, 2023).

**RESPONSE**: **Admitted.**

5.     Mr. Greene provides the following example when describing the "redirect message" in the '640 patent: ". . . looking again at a library catalogue, if a given item's location isn't written on a particular card, there would likely be information guiding the reader to another card to inspect." Ex. K42 ¶ 272 (Expert Report of Joseph B. Greene, dated July 3, 2023).

**RESPONSE**: **Admitted.**

6.     Mr. Greene cites deposition testimony from John Overton to argue that the claim limitations are "routine, well-understood, and conventional limitations," and cites statements made in Patent Office proceedings to argue that "any claimed server architecture by Kove can't be the inventive concept necessary to overcome the second step of a 35 U.S.C. § 101 analysis." Ex. K42 ¶¶ 276-277 (Expert Report of Joseph B. Greene, dated July 3, 2023).

**RESPONSE**: **Admitted in part and disputed in part; objection.** Amazon objects to this statement to the extent it is a characterization of Mr. Greene's report and not a fact. Amazon admits that the statement accurately quotes Mr. Greene's July 3, 2023 report. Amazon disputes that Mr. Greene cites John Overton's deposition transcript "to argue" anything. Instead, Mr. Greene cited the transcript to show that "inventor John Overton has admitted that many of the routine, well-understood, and conventional limitations were not inventive."[3]

7.     In his patent eligibility analysis, Mr. Greene only discusses in detail claim 17 of the '978 patent, claim 1 of the '170 patent, and claim 18 of the '640 patent. Ex. K42 ¶¶ 263, 268, 271 (Expert Report of Joseph B. Greene, dated July 3, 2023).

**RESPONSE**: **Admitted in part and disputed in part; objection.** Amazon objects to this statement to the extent it is a characterization of Mr. Greene's report and not a fact. Amazon

---

[3] Dkt. 700-42 at ¶ 276 (Expert Report of Joseph B. Greene, dated July 3, 2023).

admits that Mr. Greene quoted and discussed claim 17 of the '978 patent, claim 1 of the '170 patent, and claim 18 of the '640 patent as part of his patent eligibility analysis. Amazon disputes that Mr. Greene only discussed those three claims. Section VII of his report also discusses the specifications of the '978, '170, and '640 patents and claims 23 and 24 of the '978 patent. Further, claims 1 of the '170, 17 of the '978, and 18 of the '640 are all independent claims with asserted dependent claims. As a result, discussion of independent claim elements in each also specifically addresses required elements of each of their asserted dependent claims. Accordingly, Mr. Greene specifically discussed required elements of claims 17, 23, 24, and 30 of the '978 Patent, claims 1, 3, 6, and 12 of the '170 Patent, and claims 18 and 24 of the '640 Patent. Finally, the discussed claims share elements and similarities across all three patents and all asserted claims.

8.     Claim 17 of the '640 patent, claims 10 and 14 of the '978 patent, and claims 6 and 15 of the '170 patent include a "redirect message" from one data server that permits the client to determine the location of a different data location server, when a location server fails to include the location information for the requested data. Ex. K4 ('640 patent, 22:30-40); Ex. K5 ('978 patent, 26:36-46, 27:4-8); Ex. K6 ('170 patent, 21:51-56, 22:44-48).

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to this statement to the extent it is a characterization of the asserted patents and not a fact. Amazon admits that claim 17 of the '640 patent, claims 10 and 14 of the '978 patent, and claims 6 and 15 of the '170 patent include the stated requirements. Amazon disputes the statement to the extent it implies that the claims contain no additional requirements.

<u>**AWS's Affirmative Defenses**</u>

9.     AWS's answer identifies waiver and equitable estoppel as affirmative defenses.

4

Dkt. 129 at 40-42. In support, AWS relies on the facts that Kove's patents issued as early as 2006 (Ex. K36 at 113:2-22 (5/16/2023 Overton Tr.)); that Dr. Overton (an inventor and Kove's CEO) became generally aware of the accused products around the time they publicly launched in 2006 and 2012 (Ex. K23 at 28 (Kove's Seventh O&R to AWS's First Set of Rogs)); and that this lawsuit was filed in 2018 (Dkt. 1).

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to this statement to the extent it is a characterization of Amazon's legal argument and not a fact. And Amazon objects to the extent Kove lacks evidentiary support for its assertion that Amazon relies on particular facts. Amazon admits "that Kove's patents issued as early as 2006…; that Dr. Overton … became generally aware of the accused products around the time they publicly launched in 2006 and 2012 …; and that this lawsuit was filed in 2018." Amazon disputes that these facts alone form the basis of its waiver and equitable estoppel defenses.

10. AWS's corporate designee could not identify any additional facts supporting its defense. Ex. K33 at 308:18-22, 309:20-310:12, 311:1-12 (4/24/2023 Hayden Tr.) (identifying only the "period of time from when Kove obtained the patents until they . . . actually filed the litigation" and nothing else). AWS did not identify waiver or equitable estoppel in its interrogatory response on affirmative defenses. Ex. K21 at 4-17 (4/13/23 AWS's Third Supplemental O&R) (no waiver or equitable estoppel).

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to this statement to the extent it contains a characterization of Amazon designee Scott Hayden's testimony and not a fact. Amazon admits that Mr. Hayden didn't identify additional facts in his testimony, but Amazon disputes that Mr. Hayden was incapable of doing so. Amazon disputes that Mr. Hayden was the corporate designee to testify regarding the factual basis of its waiver

defense. Before Mr. Hayden's deposition, Amazon informed Kove that "Mr. Hayden will offer testimony relating to the facts supporting Amazon's defenses of equitable estoppel and acquiescence in response to Kove's Topic No. 31. Amazon's position is that its other defenses (aside from non-infringement and invalidity) are either purely legal or their supporting facts are within Kove's possession, custody, or control."[4]

11.    AWS also contends that the patents' inventors intentionally withheld an invalidating piece of prior art from the patent examiner during prosecution. Ex. K21 at 6-9 (4/13/23 AWS's Third Supplemental O&R) (describing inequitable conduct defense and identifying the "Karger '97" article, written by David Karger and other MIT researchers in 1997); Ex. K62 (AMZ_KOVE_000062042) ("Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web"). AWS's corporate designee could not identify any facts supporting its defense. Ex. K33 at 311:20-24 (4/24/2023 Hayden Tr.) ("Q. And does AWS have any facts to share that would support or provide a basis for its unclean hands defense?" "A. I don't know.").

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to this statement to the extent it contains a characterization of Amazon designee Scott Hayden's testimony and not a fact. Amazon objects to Kove's characterization of Mr. Hayden's testimony as lacking evidentiary support, as the supporting testimony Kove cites covers a different defense. Amazon admits that Mr. Hayden didn't identify additional facts regarding Amazon's inequitable conduct defense but disputes that Mr. Hayden was incapable of doing so. Amazon also disputes that it designated Mr. Hayden to testify regarding the factual basis of its inequitable conduct defense. Before Mr. Hayden's deposition, Amazon informed Kove that "Mr. Hayden will offer

---

[4] Ex. 94 (4/14/2023 email from L. Phillips to G. Cremona).

testimony relating to the facts supporting Amazon's defenses of equitable estoppel and acquiescence in response to Kove's Topic No. 31. Amazon's position is that its other defenses (aside from non-infringement and invalidity) are either purely legal or their supporting facts are within Kove's possession, custody, or control."[5] Otherwise, admitted.

12.     AWS never asked the inventors (Drs. Overton and Bailey) if they intended to deceive the Patent Office, and AWS never deposed the law firm that prosecuted the patents. Ex. K24 at 3 (11/9/2021 L. Phillips Ltr to M. Marvin) (AWS served a Rule 45 deposition notice, but no deposition was scheduled).

**RESPONSE: Admitted.**

13.     Dr. Bailey testified that he understood he had an obligation to disclose material prior art to the Patent Office during prosecution, and that he did indeed disclose such prior art. Ex. K31 at 158:4-13 (10/9/2020 Bailey Tr.).

**RESPONSE: Admitted.**

14.     Dr. Overton similarly testified that he understood his duty to disclose, and when asked if he disclosed Karger '97 to the Patent Office, replied "I don't know why I would have. This is very different." Ex. K37 at 717:15-20, 722:1-21 (5/17/2023 Overton Tr.).

**RESPONSE: Admitted.**

### Double Patenting

15.     AWS alleges that claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 patent are invalid for obviousness-type double-patenting. Ex. K42 ¶ 279 (2023-07-03 Greene Expert Invalidity Report).

**RESPONSE: Admitted.**

---

[5] Ex. 94 (4/14/2023 email from L. Phillips to G. Cremona).

16.     AWS intends to pursue its double patenting defense at trial. Ex. K28 (Gina Cremona to Bill Sigler dated September 13, 2023); Ex. K29 (Bill Sigler to Gina Cremona dated September 22, 2023).

**RESPONSE: Admitted.**

17.     Mr. Greene's discussion of double patenting includes claim construction and general statements about inventive concept and disclosures in patent applications, Ex. K42 ¶¶ 284- 285, 288-289 (2023-07-03 Greene Expert Invalidity Report).

**RESPONSE: Admitted in part and disputed in part.** Admitted that Mr. Greene's report contains discussion of these topics. Disputed insofar as Kove suggests that Mr. Greene's opinion contains additional construction beyond the Court's or any improper analysis of the subject matter.[6]

18.     Mr. Greene states the following opinion:

> Further, there are no material differences between remaining portions of the Asserted Claims of the '978 Patent and the claims in the '640 and '170 Patents. Attached as Appendix E, I provide a comparison table between the '978 Patent claims and the disclosures and claims of the '640 and '170 Patents. As shown in Appendix E tables, each and every claim limitation in the asserted '978 Patent claims is explicitly disclosed by the '640 Patent and '170 Patent.

Ex. K42 ¶¶ 287-288 (2023-07-03 Greene Expert Invalidity Report).

**RESPONSE: Admitted.**

19.     The charts in Appendix E include a column of claim limitations of the '978 Patent and a corresponding column with portions of claims and parts of the specification to the '640 and '170 Patents with a color-coding scheme. Ex. K9 at 1-12 (Greene, Appendix E-1); Ex. K10 (Greene, Appendix E).

---

[6] *See* Dkt. 700-42 at ¶ 285 ("As explained in the Court's claim construction order…").

**RESPONSE**: **Admitted.**

20.    Claim 17 includes a transfer mechanism between a "first location server" and a "second location server," where a portion of the identifiers and associated locations is transferred to the second data location server when a performance criterion of the first location server reaches a predetermined performance limit. Ex. K9 at 10-11 (Greene, Appendix E-1); Ex. K10 at 10-11 (Greene, Appendix E); Ex. K5 ('978 patent, 1:37-43, 2:1-10).

**RESPONSE**: **Admitted.**

21.    The Appendix E-1 and Appendix E charts identify portions of the '170 and '640 patent specifications for certain limitations, for example for claim limitation 17.e of the '978 patent, portions of the '640 and '170 patent specifications that discusses the Transmission Control Protocol ("TCP") are cited. Ex. K9 at 10-11 (Greene, Appendix E-1); Ex. K10 at 10-11 (Greene, Appendix E).

**RESPONSE**: **Admitted.**

22.    Mr. Greene states the following opinion:

And as I explained above, the three patents cover the same inventive concept: a distributed data storage system that can be used on a large scale cloud computing. And as seen in Kove's responses in the *ex parte* reexaminations, Kove employs nearly the same language when describing the overview of the technology and patents at issue. As such, it is my opinion that the Asserted Claims of the '978 Patent are invalid based on obviousness double-type patenting in light of the disclosures and claims of the '640 Patent and '170 Patent. Further, Kove also contends that certain of the Asserted Claims of the '978 Patent are wholly disclosed by the '640 Patent application. Kove has taken the position that at least claims 3, 6, 10, and 14 of the '978 Patent were "constructively reduced . . . to practice at least as early as September 13, 2000, based on the filing of U.S. App. No. 09/661,222, which became the '640 patent" and that "the '222 application provide written description and enablement support for [the asserted '978 Patent] claim element[s] pursuant to 35 U.S.C. § 112, as they convey with reasonable clarity to those skilled in the art that the inventors were in possession of the invention and contain sufficient information to enable one skilled in the art to make and use the invention without undue experimentation." As such, at least claims 3, 6, 10, and 14 are invalid based on obviousness double-patenting based on the '640 patent application.

Ex. K42 at ¶¶ 288-289 (2023-07-03 Greene Expert Invalidity Report).

**RESPONSE**: Admitted.

23.     The Court construed "location information" in the '978 patent as "one or more identifiers and their associated locations" and in the '640 and '170 patents as "information pertaining to one or more locations of data and/or the identifies of one or more location servers." Dkt. 484 at 12-19.

**RESPONSE**: Admitted.

<strong>Invalidity for Non-qualifying Prior Art</strong>

24.     Kove's Asserted Claims are entitled to the following undisputed priority dates.

| Asserted Patent | Asserted Claims | Priority Date |
|---|---|---|
| 7,103,640 | 17, 18, 24 | October 28, 1999 |
| 7,233,978 | 3, 6, 10, 14 | October 28, 1999 |
| 7,233,978 | 17, 23, 24, 30 | June 2, 2000 |
| 7,814,170 | 1, 2, 6, 8, 12, 15 | October 28, 1999 |

Ex. K52 at ¶ 24 (2023-07-06 Corrected Opening Expert Report of Goodrich); Ex. K55 (Ex. F to Opening Expert Report of Goodrich) (Goodrich's opinions demonstrating that each asserted claim is entitled to its respective priority date); Ex. K42 at ¶¶ 61-62 (2023-07-03 Greene Expert Invalidity Report) (not disputing Kove's October 28, 1999 and June 2, 2000 priority dates); Ex. K40 (Greene deposition document) (notes that Joseph Green brought to his deposition, which summarize his opinions about priority dates); Ex. K41 at 67:14-70:17 (2023-08-29 Greene Dep. Tr.) (Green testifying about the notes he brought to his deposition).

**RESPONSE**: Admitted.

25.     AWS's Fourth Amended Final Unenforceability and Invalidity Contentions ("AWS 4th AFUIC") applied the Court's claim constructions, while AWS's Fifth Amended Final Unenforceability and Invalidity Contentions ("AWS 5th AFUIC") applied its new

proposed claim constructions and are operative only if the Court adopts AWS's new claim constructions; otherwise, AWS relies on its 4th AFUIC. Dkt. 512 (granting motion for leave to amend), 617 (granting motion for leave to amend), 579 (denying motion for additional claim construction briefing without prejudice to presenting arguments in summary judgment motion); Ex. K25 (2023- 03-13 email from K. Fung to J. Cardenas-Navia).

**RESPONSE**: **Admitted in part and disputed in part.** Admitted that this statement accurately reflects Amazon's contentions. Amazon disputes this statement because the Court is the arbiter of which contentions are applicable.

26.     Collectively, AWS's AFUICs assert 14 invalidity "references" (some of which actually consist of multiple references) as prior art, including, as relevant here: (1) DNS (BIND 8.1) system; (2) Cache Resolver system; (3) Boukobza; (4) Karger '618; (5) Karger '420; and (6) Steen. Ex. K11 at 8-12 (2022-03-07 AWS 4th AFUIC); Ex. K18 at 9-13 (2023-03-02 AWS 5th AFUIC).

**RESPONSE**: **Admitted in part and disputed in part.** Admitted that Amazon asserts 14 invalidity references. Amazon disputes the characterization that some of those references "actually consist of multiple references." Kove does not identify which of the references purportedly consist of multiple references, so Amazon is unable to substantively dispute the characterization.

27.     On July 3, 2023, AWS served the expert report of Joseph Greene on invalidity, Ex. K42 (2023-07-03 Greene Expert Invalidity Report), which includes Appendices C and D that detail the alleged grounds of invalidity for each claim over asserted references and copies (verbatim) AWS's 4th AFUIC and 5th AFUIC, respectively, without providing any invalidity opinions beyond what are in AWS's AFUICs, making them and Greene's report the full universe

of prior art-based invalidity positions AWS may make at trial. *E.g., compare* Ex. K43 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K12 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); *compare* Ex. K44 (2023-07-03 Ex. 1b to Appx. C of Greene Expert Invalidity Report) *with* Ex. K13 (2022-03-07 Exhibit 1b to AWS 4th AFUIC); *compare* Ex. K45 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K14 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); *compare* Ex. K46 (2023-07-03 Ex. 2b to Appx. C of Greene Expert Invalidity Report) *with* Ex. K15 (2022-03-07 Exhibit 2b to AWS 4th AFUIC); *compare* Ex. K47 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K16 (2022-03-07 Exhibit 3a to AWS 4th AFUIC); *compare* Ex. K48 (2023-07-03 Ex. 3b to Appx. C of Greene Expert Invalidity Report) *with* Ex. K17 (2022-03-07 Exhibit 3b to AWS 4th AFUIC); *compare* Ex. K49 (2023-07-03 Ex. 3d to Appx. D of Greene Expert Invalidity Report) *with* Ex. K19 (2023-03-02 Exhibit 3D to AWS 5th AFUIC).

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to the conclusion limiting its prior art arguments as that is a statement of law rather than a fact, and it is more appropriately raised in a motion *in limine*. Amazon admits that Mr. Greene's opinion reproduces certain of Amazon's invalidity contentions, and that the report, contentions, and documents they cite comprise the evidence Amazon intends to offer in support of its anticipation and obviousness arguments. Amazon disputes this statement insofar as it implies that Amazon may not use the facts on which Mr. Greene relies to present arguments on questions of law.

28.    AWS's invalidity evidence comes through its expert, Joseph Greene, who opines that the asserted claims are invalid over certain references, including the "DNS System (BIND 8.1)," the "Cache Resolver system," Boukobza, Karger '618, Karger '420, and Steen. *See, e.g.,* Ex. K42 ¶¶ 176, 204 , 220, 223, 229 (2023-07-03 Greene Expert Invalidity Report; Ex. K43

(2023- 07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report); Ex. K44 (2023-07-03 Ex. 1b to Appx. C of Greene Expert Invalidity Report); Ex. K45 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report); Ex. K46 (2023-07-03 Ex. 2b to Appx. C of Greene Expert Invalidity Report); Ex. K47 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report); Ex. K48 (2023-07-03 Ex. 3b to Appx. C of Greene Expert Invalidity Report); Ex. K49 (2023-07-03 Ex. 3d to Appx. D of Greene Expert Invalidity Report).

**RESPONSE**: **Admitted in part and disputed in part.** Admitted that Mr. Greene's report contains invalidity evidence. Amazon disputes Kove's suggestion that invalidity evidence comes only through Mr. Greene, as evidence of invalidity comes from multiple sources, including his report, Amazon's contentions, and the documents they cite like the patent office's reexamination papers.[7]

29. DNS stands for "Domain Name System" and is, at a general level, a distributed naming framework for internet resources. Ex. K56 ¶ 72 (2023-08-18 Rebuttal Expert Report of Michael Goodrich) (citing Ex. K102 (RFC 1034) at 6-7) ("At a general level, DNS is a distributed naming system for internet resources in which domain name data is stored on a plurality of 'name' servers."). Ex. K42 ¶ 30 (2023-07-03 Greene Expert Invalidity Report) ("The Domain Name System ("DNS") is a naming system for computers, services, and other Internet resources and IP networks.").

**RESPONSE**: **Admitted.**

30. DNS has been implemented in varied ways through different software implementations, such as the Berkeley Internet Name Domain (BIND) implementation. Ex. K56

---

[7] *E.g.*, Dkt. 700-96 (reexamination proceedings concluding that Boukobza, amongst other references, presented substantial new questions of patentability of certain claims in the '978 patent).

¶ 77 (2023-08-18 Rebuttal Expert Report of Michael Goodrich) (citing Ex. K98 at xi (DNS and BIND) (BIND – which stands for Berkeley Internet Name Domain Software – is one implementation of the DNS specifications.).

**RESPONSE: Admitted.**

31.     The BIND software has many versions, including BIND 4, BIND 8, BIND 9, BIND 10, and subversions thereof (e.g., BIND 4.8.3, 4.9.1, 4.9.2, 8.1.2, etc.). Ex. K11 at 6 (2022-03-07 AWS 4th AFUIC) ("The Computer Systems Research Group at Berkeley released BIND versions up to version 4.8.3. Digital Equipment Corporation released versions 4.9 and 4.9.1 and Vixie Enterprises released version 4.9.2. Since then, the Internet Software Consortium (ISC) has released versions from 4.9.3 onward. In May 1997, ISC released the first version of BIND 8."); Ex. K18 at 7 (2023-03-02 AWS 5th AFUIC) (similar); Ex. K98 at xi (DNS and BIND) ("This book deals with the new 8.1.2 version of BIND as well as the older 4.9 versions. ... We will also occasionally mention other versions of BIND, especially 4.8.3, because many venders continue to ship code based on this older software as part of their UNIX products."); Ex. K105 ¶¶ 5, 8 (Vixie Declaration) (describing FTP location of BIND software versions); Ex. K97 ¶¶ 8, 11 (Carolina Declaration) (similar); Ex. K100 (ISC FTP Index (Main)) (FTP index shows that the FTP includes versions of BIND 4, 8, 9, and 10).

**RESPONSE: Admitted.**

32.     AWS alleges that one particular implementation – namely, BIND 8.1 – is a prior art system that anticipates and (in combination with other references) renders obvious the Asserted Claims. Ex. K11 at 5 (2022-03-07 AWS 4th AFUIC) ("AWS contends that BIND 8.1, a prior art Domain Name System (DNS) implementation anticipates and/or renders obvious claims of the Asserted Patents, as described herein."); Ex. K12 at 1 (2022-03-07 Exhibit 1a to AWS 4th

AFUIC) (identifying "the BIND 8.1 version of DNS"); Ex. K42 ¶ 220 (2023-07-03 Greene

Expert Invalidity Report) (identifying "[t]he DNS system (BIND version 8.1)" as an asserted

reference; Ex. K43 at 1 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report)

(identifying "the BIND 8.1 version of DNS").

**RESPONSE**: **Admitted.**

33.     BIND 8.1 is software embodied in source code. Ex. K105 ¶¶ 5, 8 (Vixie

Declaration) (describing BIND source code FTP); Ex. K97 ¶¶ 8, 11 (Carolina Declaration)

(same). Ex. K11 at 6 (2022-03-07 AWS 4th AFUIC) ("BIND 8.1, a version of DNS and

available as of May 1997, is a prior art DNS system that anticipates and/or renders obvious

claims of the Asserted Patents, as described herein. BIND 8.1 can be found at

ftp://ftp.isc.org/isc/bind8/src/DEPRECATED/8.1/bindsrc.tar.gz and has already been

produced.").

**RESPONSE**: **Admitted.**

34.     According to declarations provided by AWS of individuals who maintained the

BIND 8.1 source code (and other versions of BIND) on the internet, BIND 8.1 was first publicly

available in May 1997. Ex. K105 ¶ 8 (Vixie Declaration) (stating that "the finalized and stable

source code of BIND 8.1 was created on May 6, 1997"); Ex. K97 ¶ 11 (Carolina Declaration)

(similar). Ex. K99 (ISC FTP Index (BIND 8.1)) (indicating the "Last modified" date of BIND

8.1 source code at https://ftp.isc.org/isc/bind8/src/DEPRECATED/8.1/ is May 6, 1997).

**RESPONSE**: **Admitted.**

35.     AWS's contentions identified the website from which the May 1997 BIND 8.1

source code could be downloaded, but AWS never relied on the BIND 8.1 source code in its

invalidity contentions. Ex. K11 at 6 (2022-03-07 AWS 4th AFUIC); *see, e.g.*, Ex. K12 (2022-03-

07 Exhibit 1a to AWS 4th AFUIC) (not citing source code); Ex. K14 (2022-03-07 Exhibit 2a to

AWS 4th AFUIC) (not citing source code); Ex. K16 (2022-03-07 Exhibit 3a to AWS 4th

AFUIC) (not citing source code).

**RESPONSE: Admitted-in-part and denied-in-part.** The invalidity contentions refer to the

operation and function of BIND 8.1, which is dictated by the source code, but described clearly

in the cited documents. Moreover, the source code is further relied on for evidence of the

functioning system being used at the time to establish it as a prior art system.

36.     Rather than rely on BIND 8.1 source code, AWS relied exclusively on four

documents, which it characterized as having "additional information describing this DNS

system": a book called "DNS and BIND," a document called "RFC 1034," and two papers, one

authored by "Sherman" and another by "Karger and Sherman." See, e.g., Ex. K12 (2022-03-07

Exhibit 1a to AWS 4th AFUIC); Ex. K14 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); Ex. K16

(2022-03-07 Exhibit 3a to AWS 4th AFUIC).

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to this

statement in that it includes a characterization and implies a false dichotomy in its use of "rather

than." Amazon otherwise admits that its contentions rely on the four listed documents and do not

substantively rely on the BIND 8.1 source code since the operations of DNS systems like BIND

are described in the documents, and the BIND source code is used to establish the existence of a

DNS system as prior art.

37.     AWS's invalidity contentions allege invalidity based on "the BIND 8.1 version of

DNS, the operation of which is described in BIND and DNS, RFC 1034, Sherman, and

Karger/Sherman." Ex. K12 at 1 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); Ex. K14 at 1

(2022- 03-07 Exhibit 2a to AWS 4th AFUIC); Ex. K16 at 1 (2022-03-07 Exhibit 3a to AWS 4th

AFUIC).

**RESPONSE: Admitted.**

38.     AWS's expert, Greene, opines that the May 1997 BIND 8.1 software version of DNS anticipates or helps render obvious certain asserted claims. Ex. K42 ¶ 220 (2023-07-03 Greene Expert Invalidity Report).

**RESPONSE: Disputed.** Amazon disputes this statement in that Mr. Greene opines that the DNS system, of which BIND is an implementation, anticipates or renders obvious certain of the asserted claims.[8]

39.     Greene's substantive invalidity opinions did not rely on the BIND 8.1 software itself and instead relied exclusively on a the "DNS & BIND" book, RFC 1034, Sherman, and Karger/Sherman. *See, e.g.*, Ex. K43 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report) (not citing source code); Ex. K45 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report) (not citing source code); Ex. K47 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report) (not citing to source code).

**RESPONSE: Admitted in part and disputed in part.** Admitted that Mr. Greene's opinions rely on DNS & BIND, RFC 1034, Sherman, and Karger/Sherman as prior art to certain claims. Amazon disputes use of the word "exclusively" because Mr. Greene's report relies on 14 different references and combinations thereof to opine that Kove's asserted patents are anticipated or obvious in light of prior art.[9]

---

[8] *See* Dkt. 700-42 at ¶ 220 ("The DNS system (BIND version 8.1) was known at least by May 1997. I understand the DNS system is prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it was publicly available in May 1997, which is more than a year before Kove's October 28, 1999 claimed priority dates.").

[9] *E.g.*, Dkt. 700-49 at 1 (citing "Skagerwall alone or with Steen, Yocum, and/or Boukobza" as references); Dkt. 702 at ¶ 26 (Kove stating that Amazon asserts 14 invalidity references).

40.     Greene copied (verbatim) claim chart analyses from AWS's final contentions into his expert report, which cite only to RFC 1034, DNS and BIND, and the Sherman and Karger/Sherman papers. *E.g., compare* Ex. K43 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K12 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); *compare* Ex. K44 (2023-07-03 Ex. 1b to Appx. C of Greene Expert Invalidity Report) *with* Ex. K13 (2022-03-07 Exhibit 1b to AWS 4th AFUIC); *compare* Ex. K45 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K14 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); *compare* Ex. K46 (2023-07-03 Ex. 2b to Appx. C of Greene Expert Invalidity Report) *with* Ex. K15 (2022-03- 07 Exhibit 2b to AWS 4th AFUIC); *compare* Ex. K47 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K16 (2022-03-07 Exhibit 3a to AWS 4th AFUIC); *compare* Ex. K48 (2023-07-03 Ex. 3b to Appx. C of Greene Expert Invalidity Report) *with* Ex. K17 (2022-03- 07 Exhibit 3b to AWS 4th AFUIC).

**RESPONSE: Admitted in part and disputed in part.** Admitted that the claim charts listed in this statement cite only to those documents. Disputed in that other of Mr. Greene's claim charts contain citations to additional references.[10]

41.     Greene's expert report includes the same contention (without any elaboration) from AWS's invalidity contentions that "the operation of [the BIND 8.1 version of DNS] is described in" RFC 1034, DNS and BIND, and the Sherman and Karger/Sherman papers. *E.g.*, *compare* Ex. K43 at 1 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K12 at 1 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); *compare* Ex. K45 at 1 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K14 at 1 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); *compare* Ex. K47 at 1 (2023-07-03 Ex. 3a to Appx. C of Greene Expert

---

[10] *See* Dkt. 700-49 at 1.

Invalidity Report) *with* Ex. K16 at 1 (2022-03-07 Exhibit 3a to AWS 4th AFUIC).

**RESPONSE: Admitted in part and disputed in part.** Disputed with respect to any insinuation or characterization of Mr. Greene's testimony. Admitted to the extent that Amazon's contentions are aligned with Mr. Greene's testimony.

42.     Greene alleges (as AWS did in its contentions) that "DNS qualifies as prior art under pre-AIA 35 U.S.C. § 102(a), (b), and/or (f), e.g., because it was publicly available in May 1997, more than a year before Kove's October 28, 1999 claimed priority date…." Ex. K43 at 1 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report); Ex. K12 at 1 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report); Ex. K47 at 1 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report); Ex. K12 at 1 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); Ex. K14 at 1 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); Ex. K16 at 1 (2022-03-07 Exhibit 3a to AWS 4th AFUIC).

**RESPONSE: Admitted.**

43.     AWS contends (and Greene repeats) that RFC 1034, DNS and BIND, Sherman, and Karger/Sherman "describe" the "operation of" BIND 8.1, but neither provides any analysis of the differences (or similarities) between the actual BIND 8.1 system and the documents themselves. *E.g.*, *compare* Ex. K43 at 1 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K12 at 1 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); *compare* Ex. K45 at 1 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K14 at 1 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); *compare* Ex. K47 at 1 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report) *with* Ex. K16 at 1 (2022-03-07 Exhibit 3a to AWS 4th AFUIC).

**RESPONSE: Admitted in part and disputed in part.** Amazon admits that it contends RFC

1034, DNS and BIND, Sherman, and Karger/Sherman describe the operation of BIND 8.1. Amazon disputes Kove's statement insofar as it suggests that the documents are not related to BIND 8.1 as each describes a DNS system and BIND 8.1 is an implementation of a DNS system.[11]

44.     The "DNS and BIND" book, was written by Paul Albitz and Cricket Liu, neither of whom are the authors of BIND 8.1 or have been shown to be involved with its development. Ex. K98 (DNS and BIND) at AMZ_KOVE_000081149 (front cover), AMZ_KOVE_000081655 (back cover).

**RESPONSE**: **Admitted; objection.** Amazon objects to the relevance of whether DNS and BIND's authors were involved in the developmemt of BIND 8.1.

45.     The version of the DNS and BIND book that AWS relies on bears a publication date of September 1998, which post-dates the May 1997 BIND 8.1 version by over a year. Ex. K98 (DNS and BIND) at AMZ_KOVE_000081152.

**RESPONSE**: **Admitted; objection.** Amazon objects to the relevance of this statement as September 1998 predates the earlier of the priority dates of the asserted patents.

46.     DNS and BIND states, "This book deals with the *new 8.1.2 version of BIND* as well as the older 4.9 versions," and includes no mention of BIND 8.1 or an explanation of the differences (or similarities) between the 8.1 and 8.1.2 versions of BIND. Ex. K98 (DNS and BIND) at AMZ_KOVE_000081159 (emphasis added).

**RESPONSE**: **Admitted in part and disputed in part.** Admitted that DNS and BIND does not explicitly mention BIND 8.1. Amazon disputes that DNS and BIND does not describe BIND's operation because the book describes DNS systems. As a result, the basic operation of DNS is

---

[11] *See, e.g.*, Dkt. 700-42 at ¶ 221, 230; Dkt 700-102 at 2–3, 6–7.

described in the book and any changes and updates between the software versions are described in other references.

47. RFC 1034 is a partial list of "requests for comments" memoranda assembled by the Internet Engineering Task Force (IETF). Ex. K42 ¶ 220 (2023-07-03 Greene Expert Invalidity Report) ("RFC1034 is a request for comments introducing domain style names and the domain name system and was published November 1987."); Ex. K56 ¶ 66 (2023-08-18 Rebuttal Expert Report of Michael Goodrich) ("The RFC1034 reference Mr. Greene relies on is a 'Network Working Group Request for Comments: 1034,' entitled 'DOMAIN NAMES – CONCEPTS AND FACILITIES,' dated November 1987.").

**RESPONSE**: **Admitted.**

48. RFC 1034 bears a date of November 1987 – nearly a decade before BIND 8.1 existed. Ex. K102 at 1 (RFC 1034).

**RESPONSE**: **Admitted; objection.** Amazon objects to the relevance of this statement as November 1987 predates the earlier of the priority dates of the asserted patents.

49. AWS and Greene do not contend that the IEFT authored or was involved in the development of BIND 8.1 or provide an explanation of how RFC 1034—a document from 10 years earlier—purportedly "describes" BIND 8.1's operation. *See* Ex. K42 ¶ 220 (2023-07-03 Greene Expert Invalidity Report); Ex. K44 at 1 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report); Ex. K45 at 1 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report); Ex. K47 at 1 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report); Ex. K12 at 1 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); Ex. K14 at 1 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); Ex. K16 at 1 (2022-03-07 Exhibit 3a to AWS 4th AFUIC).

**RESPONSE**: **Admitted in part and disputed in part.** Admitted that Amazon does not contend

IEFT was involved in the development of BIND 8.1. Amazon disputes that RFC 1034 does not describe BIND's operation because RFC1034 is a standard used in the field that BIND 8.1 exists in. As a result, the basic operation of DNS is described in the RFCs and any changes and updates to that standard are described in other references.

50.     The Sherman paper bears a date of February 1999 and indicates it was authored by Alexander Sherman, and the Karger/Sherman paper bears a date of March 1999 and indicates it was authored by David Karger, Alex Sherman, and others. Ex. K103 at 1 (Sherman); Ex. K101 at 1 (Karger-Sherman).

**RESPONSE: Admitted.**

51.     None of the authors of Sherman or Karger/Sherman are purported to have been involved in the development of BIND 8.1 *See* Ex. K42 ¶ 220 (2023-07-03 Greene Expert Invalidity Report); Ex. K43 at 1 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report); Ex. K45 at 1 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report); Ex. K47 at 1 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report); Ex. K12 at 1 (2022- 03-07 Exhibit 1a to AWS 4th AFUIC); Ex. K14 at 1 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); Ex. K16 at 1 (2022-03-07 Exhibit 3a to AWS 4th AFUIC).

**RESPONSE: Admitted; objection.** Amazon objects to the relevance of who developed BIND 8.1.

52.     Sherman says, "We use a number of DNS servers each running a copy of unmodified *BIND 8.0* distribution…. In addition to BIND, each DNS machine runs *one of our programs, called 'dnshelper,'*" and Karger/Sherman contains similar language. Ex. K103 at 37 (Sherman); Ex. K101 at 10 (Karger-Sherman).

**RESPONSE: Admitted.**

53.     In citing to Sherman and Karger-Sherman, AWS and Greene never identify what is allegedly descriptive of the BIND 8.1 embodiment, what refers to BIND 8.0, or what is rooted in "dnshelper," which the author's claim to have created and which no one contends was part of BIND 8.1. *See* Ex. K103 at 37 (Sherman); Ex. K101 at 10 (Karger-Sherman); *see*, *e.g.*, Ex. K12 (2022-03-07 Exhibit 1a to AWS 4th AFUIC); Ex. K14 (2022-03-07 Exhibit 2a to AWS 4th AFUIC); Ex. K16 (2022-03-07 Exhibit 3a to AWS 4th AFUIC); Ex. K43 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report); Ex. K45 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report); Ex. K47 (2023-07-03 Ex. 3a to Appx. C of Greene Expert Invalidity Report).

**RESPONSE: Admitted.**

54.     "Cache Resolver" is described as a distributed web caching system developed at MIT. Ex. K103 at 15 (Sherman) ("Cache Resolver, the distributed web caching system that we developed, eliminates the necessity for any inter-cache communication on a cache miss by letting clients decide for themselves which cache has the required data."); Ex. K56 ¶ 82 (2023-08-18 Rebuttal Expert Report of Michael Goodrich) ("With respect to the alleged Cache Resolver System, Sherman and Karger/Sherman describe cache resolver as a web-caching system that allows for resolving URL strings.").

**RESPONSE: Admitted.**

55.     AWS and Greene identify no actual implementation of this system, but assert that the "system" is described in the Sherman and Karger/Sherman papers. Ex. K13 at 19 (2022-03-07 Exhibit 1b to AWS 4th AFUIC); Ex. K15 at 12 (2022-03-07 Exhibit 2b to AWS 4th AFUIC); Ex. K17 at 17 (2022-03-07 Exhibit 3b to AWS 4th AFUIC); Ex. K42 ¶ 229 (2023-07-03 Greene Expert Invalidity Report); Ex. K44 at 1 (2023-07-03 Ex. 1b to Appx. C of Greene Expert

Invalidity Report); Ex. K46 at 1 (2023-07-03 Ex. 2b to Appx. C of Greene Expert Invalidity Report); Ex. K48 at 1 (2023-07-03 Ex. 3b to Appx. C of Greene Expert Invalidity Report).

**RESPONSE: Admitted.**

56.    AWS and Greene also contend that "the complete features and functionality of DNS is inherent to any system using DNS, such as described in Sherman or Karger/Sherman," but do not identify which version or implementation of DNS. Ex. K13 at 19 (2022-03-07 Exhibit 1b to AWS 4th AFUIC); Ex. K15 at 12 (2022-03-07 Exhibit 2b to AWS 4th AFUIC); Ex. K17 at 17 (2022-03-07 Exhibit 3b to AWS 4th AFUIC); Ex. K42 ¶ 229 (2023-07-03 Greene Expert Invalidity Report); Ex. K44 at 1 (2023-07-03 Ex. 1b to Appx. C of Greene Expert Invalidity Report); Ex. K46 at 1 (2023-07-03 Ex. 2b to Appx. C of Greene Expert Invalidity Report); Ex. K48 at 1 (2023- 07-03 Ex. 3b to Appx. C of Greene Expert Invalidity Report).

**RESPONSE: Admitted.**

57.    Greene uses alleged inherency as a basis to combine RFC 1034 and DNS and BIND (along with Sherman and Karger/Sherman) to find the asserted claims invalid. *See* Ex. K44 (2023- 07-03 Ex. 1b to Appx. C of Greene Expert Invalidity Report); Ex. K46 (2023-07-03 Ex. 2b to Appx. C of Greene Expert Invalidity Report); Ex. K48 (2023-07-03 Ex. 3b to Appx. C of Greene Expert Invalidity Report).

**RESPONSE: Admitted in part and disputed in part.** Amazon admits that Mr. Greene uses inherency as the basis for his opinions relating to RFC 1034, DNS and BIND, and BIND. Amazon disputes the statement's characterization of this as "alleged" inherency and as combining the references. Mr. Greene uses RFC 1034 and DNS and BIND to show what a person skilled in the art would have understood a DNS system like BIND to include.

58.    RFC 1034 and DNS and BIND are distinct from the Cache Resolver papers

(Sherman and Karger/Sherman) and their authorships are different from the Cache Resolver papers and from each other. *See* Ex. K103 at 1 (Sherman); Ex. 101 at 1 (Karger-Sherman); Ex. K102 at 1 (RFC 1034); Ex. K98 (DNS and BIND) at AMZ_KOVE_000081152.

**RESPONSE: Admitted; objection.** Amazon objects to the relevance of the authorship of each of these documents.

59. AWS and Greene argue that the "cache resolver system" anticipates Kove's claims under § 102(a), (b), and/or (f), and cite in support not only to Sherman and Karger/Sherman, but also RFC 1034 and DNS and BIND. *See* Ex. K13 (2022-03-07 Exhibit 1b to AWS 4th AFUIC); Ex. K15 (2022-03-07 Exhibit 2b to AWS 4th AFUIC); Ex. K17 (2022-03-07 Exhibit 3b to AWS 4th AFUIC); Ex. K42 ¶ 229 (2023-07-03 Greene Expert Invalidity Report); Ex. K44 (2023-07-03 Ex. 1b to Appx. C of Greene Expert Invalidity Report); Ex. K46 (2023-07-03 Ex. 2b to Appx. C of Greene Expert Invalidity Report); Ex. K48 (2023-07-03 Ex. 3b to Appx. C of Greene Expert Invalidity Report).

**RESPONSE: Admitted in part and disputed in part.** Admitted that this statement accurately describes Amazon's contentions. Amazon disputes this statement insofar as it purports to limit Amazon's contentions, and it reserves the right to make any arugment supported by the facts in evidence.

60. Greene opines, without explanation or citing evidence in support, that "[a]ll of the features and functionality of DNS are inherent to . . . the use of DNS in the Cache Resolver system." Ex. K42 ¶ 230 (2023-07-03 Greene Expert Invalidity Report). Greene opines:

> All of the features and functionality of DNS are inherent to systems using DNS, such as the use of DNS in the Cache Resolver system. In particular, the Cache Resolver system uses DNS servers running BIND 8 and the program "dnshelper." The authors of these papers used the Cache Resolver system. The Cache Resolver system describes how consistent hashing is used to help reduce the amount of inter-cache communication.

Ex. K42 ¶ 230 (2023-07-03 Greene Expert Invalidity Report).

**RESPONSE: Admitted in part and disputed in part.** Admitted that this statement accurately reproduces Mr. Greene's opinion. Amazon disputes the characterization that Mr. Greene does not explain or support his opinion because his opinion contains a footnote citing to twenty pages of Sherman that describe how DNS features are implemented in Cache Resolver.[12]

61.     Sherman and Karger/Sherman refer to a DNS system as "our" DNS system, connoting a *custom* implementation not necessarily inclusive of either RFC 1034 or the implementations discussed in DNS and BIND. Ex. K103 at 37 (Sherman) ("The primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP address of the caches."); *see also* Ex. K56 ¶¶ 80-81 (2023-08-18 Rebuttal Expert Report of Michael Goodrich).

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to this statement in that it is a characterization of evidence and not a fact. Admitted that Sherman and Karger/Sherman both refer to "our" DNS system. Amazon disputes the characterization of the term "our," as it is used in context to identify the Cache Resolver system components, not to connote modification.  Kove fails to support its characterization with specific evidence.

62.     The bespoke nature of Cache Resolver's DNS implementation is corroborated by statements characterizing their DNS machine as implementing "BIND 8.0 … [and] *run[ning] one of our programs, called 'dnshelper.*'" Ex. K103 at 37 (Sherman).

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to this statement in that it is a characterization of the evidence and inappropriate for a statement of

---

[12] *See* Dkt. 700-42 at ¶ 270 (*citing* Sherman at 13, 22–40).

material facts. Amazon admits that the quoted language appears in Sherman. Amazon disputes as unsupported by cited evidence that this quote necessarily means the system is "bespoke."

63.     The documents AWS and Greene cite are not contemporaneous with BIND 8.1 or address BIND 8.1 because: RFC 1034 preceded any version of BIND 8 by a decade, *compare* Ex. K102 at 1 (RFC 1034) ("November 1987") *with* Ex. K105 (Vixie Declaration) ¶¶ 6 ("'BIND 8.1' was the first finalized public release in the BIND 8 product family."), 8 ("source code of BIND 8.1 was created on May 6, 1997"); Cache Resolver uses a customized DNS machine running software that could not have been available at the time RFC 1034 was written, *compare* Ex. K102 at 1 (RFC 1034) ("November 1987") *with* Ex. K103 at 1 (Sherman) ("February 1999"); and the DNS and BIND book discusses only BIND 8.1.2 and BIND 4.9 implementations, Ex. K98 at xi (DNS and BIND) ("This book deals with the new 8.1.2 version of BIND as well as the older 4.9 versions. ... We will also occasionally mention other versions of BIND, especially 4.8.3, because many venders continue to ship code based on this older software as part of their UNIX products.").

**RESPONSE: Admitted in part and disputed in part; objection.** Amazon objects to the relevance of whether the unspecified "software" in Cache Resolver that Kove refers to was available when RFC 1034 was written. Amazon admits that RFC 1034 was released before BIND 8, and that DNS and BIND contains the quoted material. Amazon lacks sufficient information to admit or deny Kove's contention regarding Cache Resolver as Kove fails to identify the purported software that could not have been available. Amazon denies Kove's characterization of these documents as "not contemporaneous" as each document describes the elements of DNS systems like BIND that the art built on to produce that system.

64. Boukobza is a U.S. Patent with an issuance date of September 19, 2000 that post-dates the asserted claims' undisputed priority dates of October 28, 1999 or June 2, 2000. Ex. K1 (Boukobza).

**RESPONSE: Admitted in part and disputed in part.** Amazon admits that the issuance date of the patent post-dates the priority dates. Amazon disputes this statement insofar as it implies that all elements of Boukobza post-date the priority dates as the patent's application was filed in June 1997.[13]

65. Greene's only opinion as to how Boukobza allegedly qualifies as prior art is that Boukobza is prior art under §§ 102(a) and (b) "[b]ecause Boukobza's filing date precedes the [priority date] of the Asserted Patents by over 1 year"; he offers no opinions supporting AWS's contention that Boukobza is prior art under § 102(f). Ex. K42 ¶ 204 (2023-07-03 Greene Expert Invalidity Report); Ex. K49 at 1 (2023-07-03 Ex. 3d to Appx. D of Greene Expert Invalidity Report).

**RESPONSE: Admitted in part and disputed in part.** Admitted that Mr. Greene specifically lists only §§ 102(a), (b), and (f) in his report and offers affirmative opinions only as to those subsections. Amazon disputes this statement insofar as it omits that Mr. Greene provides sufficient facts to qualify Boukobza as prior art under § 102(e) by noting the filing date of the patent application.[14]

66. Karger '618 and '420 are U.S. patents with issuance dates of August 6, 2002, and April 22, 2003, respectively, that post-date the asserted claims' undisputed priority dates of October 28, 1999 or June 2, 2000. Ex. K2 (Karger '618); Ex. K3 (Karger '420).

---

[13] *See* Dkt. 700-1.

[14] *See* Dkt. 700-42 at ¶ 204.

**<u>RESPONSE</u>: Admitted in part and disputed in part.** Amazon admits that the issuance date of the patents post-dates the priority dates. Amazon disputes this statement insofar as it implies that all elements of the Karger patents post-date the priority dates as the Karger patents' applications were filed in March 1998 and June 1998, respectively.[15]

67.    Greene's only opinions that Karger '618 and 420 qualify as prior art are that Karger '618 and 420 are prior art under "§ 102(a), (b), and/or (f), e.g., because it has a priority date of March 15, 1998"; he offers no substantive opinion under § 102(f) Ex. K42 ¶ 223 (2023-07-03 Greene Expert Invalidity Report); Ex. K43 at 1 (2023-07-03 Ex. 1a to Appx. C of Greene Expert Invalidity Report); Ex. K45 at 1 (2023-07-03 Ex. 2a to Appx. C of Greene Expert Invalidity Report).

**<u>RESPONSE</u>: Admitted in part and disputed in part.** Admitted that Mr. Greene specifically lists only §§ 102(a), (b), and (f) in his report and offers opinions only as to those subsections. Amazon disputes this statement insofar as it omits that Mr. Greene provides sufficient facts to qualify Karger '618 and '420 as prior art under § 102(e) by noting the filing dates of the patent applications.[16]

68.    Greene opines that Steen is a "printed publication" under § 102(a) or (b) based on only three things: a January 1998 date on Steen, a table of contents from an IEEE Communications Magazine that purportedly shows the publication was published in 1998, and his opinion that "[t]hose in the art were reading and even citing to Steen throughout 1998" based on purported citations to Steen in other papers. Ex. K42 ¶ 176 (2023-07-03 Greene Expert Invalidity Report); Ex. K104 (Steen).

---

[15] *See* Dkt. 700-2; Dkt. 700-3.

[16] *See* Dkt. 700-42 at ¶ 223.

**RESPONSE: Disputed.** Mr. Greene also relies on four contemporaneous citations by other papers to corroborate the printed publication date and table of contents, as Kove mentions; thus he relies on more than "only three things."[17] Further, Amazon disputes Kove's insinuation that any quantitative amount of evidence is sufficient or insufficient to prove a reference's status as a printed publication.

Dated: December 4, 2023     Respectfully Submitted,

            */s/ R. William Sigler*
            Alan M. Fisch
            *alan.fisch@fischllp.com*
            R. William Sigler
            *bill.sigler@fischllp.com*
            Jeffrey M. Saltman (pro hac vice)
            *jeffrey.saltman@fischllp.com*
            Lisa Phillips (pro hac vice)
            *lisa.phillips@fischllp.com*
            FISCH SIGLER LLP
            5301 Wisconsin Avenue NW, Suite 400
            Washington, DC 20015
            202.362.3500

            *Attorneys for Amazon Web Services, Inc.*

---

[17] *See* Dkt. 700-42 at ¶ 176 n.233.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2023, I electronically filed the foregoing with the

Clerk of the Court for the United States District Court for the Northern District of Illinois, via

the CM/ECF system, and also served a copy on all counsel of record via email.

*/s/ R. William Sigler*
R. William Sigler
