# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KOVE IO, INC., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Judge Matthew F. Kennelly |
| v. | Jury Trial Demanded |
| AMAZON WEB SERVICES, INC., | |
| Defendant. | |

## AMAZON WEB SERVICES, INC.'S ADDITIONAL STATEMENT OF MATERIAL FACTS

Under Federal Rule of Civil Procedure 56 and Local Rule 56.1(b)(3), Defendant Amazon Web Services, Inc. ("Amazon") submits this Additional Statement of Material Facts in support of its Opposition to Plaintiff's Cross Motion for Summary Judgment.

### Patent Eligibility Under § 101

1. When the Court denied Amazon's April 5, 2019 motion to dismiss, it noted that Kove's complaint "specifically identif[ied] only one [claim] from each patent," and therefore "addresse[d] only the three identified claims": claim 18 of the '640 patent, claim 1 of the '170 patent, and claim 17 of the '978 patent.[1] Since then, Kove has asserted fourteen additional claims: 17 and 24 of the '640 Patent, claims 2, 6, 8, 12, and 15 of the '170 Patent, and claims 3, 6, 10, 14, 23, 24, and 30 of the '978 Patent.[2]

2. In August and September of 2022, Kove made limiting statements about the scope of the asserted claims in the '034, '035, and '036 Reexaminations that narrowed the scope of the

---

[1] Dkt. 110 at 1, 3–5.

[2] *E.g.*, Dkt. 687-4 at 2; Dkt. 687 at ¶ 4.

claims to survive the reexaminations of the Asserted Patents.[3]

3. During his May 2023 deposition, inventor John Overton admitted that many of the Asserted Patents' routine, well-understood, and conventional limitations were not inventive.[4] For example, Dr. Overton testified:

> Amazon Atty: Do you believe you invented the distributed database?
>
> Overton: I do not.
>
> Amazon Atty: And name servers existed before your patents; right?
>
> Overton: Yes.
>
> Amazon Atty: And we already talked about DNS existed before your patents; right?
>
> Overton: Yes.
>
> Amazon Atty: So you didn't invent name servers; correct?
>
> Overton: That's correct.
>
> Amazon Atty: You didn't invent DNS; right?
>
> Overton: Yes, that is correct.
>
> Amazon Atty: Okay. You didn't invent the idea of separating data from its location; did you?
>
> …
>
> Overton: I don't think so.[5]

4. Amazon's invalidity expert Mr. Greene took the aforementioned events, as well as the Court's claim constructions, into account when rendering his opinion that the Asserted Patents are ineligible under 35 U.S.C. § 101. Mr. Greene's July 2023 report states:

> I understand that early on in this case, before discovery, Kove's limiting statements in reexamination, testimony by the inventors, and

---

[3] Ex. 84 (7/3/2023 J. Greene Expert Report) at ¶ 105 (citing Dkt. 687-35 (8/11/2022 Reply to Office Action in Reexam. No. 90/019,035) at 25); Dkt. 687-37 (8/4/2022 Reply to Office Action in Reexam. No. 90/019,036) at 23; Dkt. 687-32 (8/28/2022 Reply to Office Action in Reexam. No. 90/019,034) at 36.

[4] Dkt. 700-42 (7/3/2023 J. Greene Expert Report) at ¶ 276 (citing Ex. 85 (5/17/23 J. Overton Dep. Tr.) at 670:20-671:5, 671:17–22, 684:11–13, 686:1–12, 687:8–11, 696:6–11, 724:8–10, 724:17–22, 725:17–22, 726:1–17, 728:12–14).

[5] Ex. 85 (5/17/2023 J. Overton Dep. Tr.) at 671:3–21.

the Court's claim constructions, the Court ruled on this issue, denying Amazon's motion to dismiss and finding that the claims were not ineligible under 35 U.S.C. § 101. However, after being informed of the relevant standards for making this determination and taking the intervening developments into account, it is my opinion that the asserted patents are invalid under 35 U.S.C. § 101.[6]

5. Mr. Greene analyzed the asserted patents under the Supreme Court's *Alice* test.[7] In his step one analysis, Mr. Greene relied on the Court's December 2021 Claim Construction Order.[8] His report states, for example:

> It is my opinion that the asserted claims consist of generalized steps performed on generic and conventional computers. For example, claim 17 of the '978 patent describes generalized location services…and transport protocols….[9] And this is further supported by the Court's claim construction of "location server." The Court construed this term as "**network-attached component** that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients.' And in its ruling, the Court further cautioned construing the term to a specific kind of server. As such, in light of the patent's specification and the Court's claim construction order, a POSITA would understand that these "location servers" and "location stores" could be implemented on any conventional, standard, and well-known computer or server.[10]

6. In his step two analysis, Mr. Greene relied on evidence including Dr. Overton's deposition testimony. His report states, for example:

> And in the case of all three Asserted Patents, it is my opinion that there is no inventive concept beyond the abstract idea of storing and retrieving resources through a method of correlated identifiers….[11] In all three instances, the patent simply states that the resource to location correlation is done by some undefined "protocol," "hash," or "code." And as explained above, a POSITA would understand

---

[6] Dkt. 700-42 at ¶ 261.

[7] *Id*. at ¶ 262.

[8] Dkt. 484.

[9] Dkt. 700-42 at ¶ 263.

[10] *Id*. at ¶ 265 (emphasis in original).

[11] *Id*. at ¶ 273.

that this resource to location correlation would be implemented by a well-known method, such as a hashing function….[12] Further, as outlined above in Section II.C, inventor John Overton has admitted that many of the routine, well-understood, and conventional limitations were not inventive: [including] transport protocols…[and] hash functions[.][13]

**Amazon's Equitable Estoppel and Waiver Defenses**

7. Kove CEO John Overton became generally aware of Amazon S3 on or around March 14, 2006 and Amazon DynamoDB on or around January 18, 2012.[14]

8. Kove considered filing a patent infringement lawsuit against Amazon as early as November 2014.[15] Dr. Overton testified:

> Amazon Atty: When did Kove first consider filing a patent infringement lawsuit against Amazon?
>
> Overton: I don't know the specific date, but I think we considered some of that as early as maybe 2015, maybe. Again, I'm going by recollection. That can be fraught with error, but I think that's about the timeframe.[16]

Dr. Overton further testified:

> Amazon Atty: So at this time in November 2014 you and Mr. Bailey had a meeting with attorneys Rob Dellenbach and Edward King about infringement litigation; correct?
>
> …
>
> Overton: Yes.[17]

And Dr. Bailey testified:

> Amazon Atty: You testified earlier, Mr. Bailey, that the work you have done for John Overton or his companies since late 20- -- 2014 has included looking at technologies that potentially relate to the --

---

[12] *Id.* at ¶ 275.

[13] *Id.* at ¶ 276.

[14] Dkt. 701-23 at 28 (Kove's Seventh Objections and Responses to Amazon's First Set of Interrogatories).

[15] *See* Dkt. 687 at ¶ 96.

[16] Ex. 86 (5/16/2023 J. Overton Dep. Tr.) at 228:2–9.

[17] *Id.* at 240:21–241:5.

> to certain patents, is that right?
>
> Bailey: Yes.[18]

Dr. Baily further testified:

> Amazon Atty: Are you familiar with a product known as Amazon S3?
>
> Bailey: Yes.
>
> Amazon Atty: Was that one of the products or services that you looked at?
>
> Bailey: Yes.
>
> Amazon Atty: And are you familiar with an Amazon product or service known as DynamoDB?
>
> Bailey: Yes.
>
> Amazon Atty: Is that one of the products or services that you looked at?
>
> Bailey: Yes.
>
> …
>
> Amazon Atty: When did you do that work?
>
> Bailey: I don't recall exactly, but I think it was in the 2014 – late 2014 time frame.
>
> Amazon Atty: At that point in time, were you in communications with any counsel relating to this – the work that you've described? Just yes or no.
>
> Bailey: Yes.
>
> Amazon Atty: Who was that counsel?
>
> Bailey: Well, there was Robert and – there was this guy Edward. I don't remember his last name.
>
> …
>
> Amazon Atty: Were you in com- — were you in communication with Mr. Dellenbach going back to 2014? …
>
> Bailey: Yes.[19]

9. In 2017 and 2018, Kove representatives, including Dr. Overton, met with Amazon

---

[18] Ex. 87 (10/9/2020 S. Bailey Dep. Tr.) at 46:13–18.

[19] *Id*. at 47:11–48:19.

on multiple occasions to try to sell XFM, a Kove product unrelated to the Kove Patents, to Amazon.[20] Kove promised that the XFM product would drive customers to Amazon and improve DynamoDB performance.[21]

10. In its 2017-18 communications with Amazon, Kove never mentioned the Kove Patents, or any allegations of infringement, despite having been considering filing patent infringement lawsuits for four years. Dr. Overton testified:

> Amazon Atty: And during the course of Kove's communications with Amazon Web Services in 2017 and 2018, Kove never identified the '978, '170, or '640 Patents to Amazon; right?
>
> Overton: That is correct.[22]

Dr. Overton further testified:

> Amazon Atty: So you began talking to law firms about potential patent infringement litigation before you had the meetings and communications with Amazon in 2017 and 2018; right?
>
> Overton: Yes.[23]

11. Kove filed this lawsuit against Amazon on December 12, 2018, more than twelve years after becoming aware of S3 and more than six years after becoming aware of DynamoDB.[24]

Dr. Overton testified:

> Amazon Atty: March 14, 2006, is over a dozen years before you filed this lawsuit; right?
>
> Overton: Uh-huh, yes.
>
> Amazon Atty: So you waited a dozen years after you may have become aware of S3 to file this lawsuit; right?

---

[20] Dkt. 687-76 at 4 (Kove's First Amended Response to AWS Interrogatory No. 18); Dkt. 687-75 (5/16/2023 J. Overton Dep. Tr.) at 324:17–20; *see also* Dkt. 687 at ¶ 94.

[21] Dkt. 687-77 at KOV_00164170; *see also* Dkt. 687 at ¶ 95.

[22] Dkt. 687-75 (5/16/2023 J. Overton Dep. Tr.) at 325:5–9.

[23] *Id*. at 329:21–330:2.

[24] Dkt. 1.

> Overton: Yes.[25]

Dr. Overton further testified:

> Amazon Atty: January 18, 2012 is more than six years before you filed this lawsuit against Amazon; right?
>
> Overton: Yes.
>
> Amazon Atty: So you waited over six years after Amazon launched DynamoDB to sue Amazon; right?
>
> Overton: Yes.[26]

12. As Amazon's corporate witness Tim Rath testified, Amazon could have implemented a variety of non-infringing alternatives.[27] In discussing these non-infringing alternative, Amazon's non-infringement expert Dr. Grama stated:

> I have determined that all of them would have been both easy to implement with only coding changes and no additional hardware…. Based on my analysis of these alternatives, Amazon could have implemented the alternatives for S3 in no more than 20 days of a senior programmer's time. And Amazon could have implemented the alternatives for DDB in no more than 34 days of a senior programmer's time."[28]

### Amazon's Inequitable Conduct Defense

13. Kove produced a copy of a 1997 article by David Karger et al. entitled "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web" ("Karger") that was in Dr. Overton's possession since at least January 3, 1999.[29] Dr. Overton testified:

> Amazon Atty: There's a page of metadata attached to the front of Exhibit 87. Do you see that, sir?

---

[25] Ex. 86 (5/16/2023 J. Overton Dep. Tr.) at 207:16–22.

[26] *Id.* at 210:21–211:5.

[27] Ex. 88 (5/5/2023 T. Rath Dep. Tr.) at 241:11-14.

[28] Ex. 89 (8/18/2023 A. Grama Expert Report) at ¶ 523.

[29] Ex. 90 at 1 (KOV_00039222-31).

> Overton: I do.
>
> Amazon Atty: And then if you turn to the next page, do you see that this is a paper called "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hotspots on the Worldwide Web"?
>
> Overton: Yes.
>
> Amazon Atty: Are you familiar with this paper?
>
> Overton: Vaguely.
>
> Amazon Atty: Turning back to the front page of this document. Do you see there that there's a custodian ID about four lines down?
>
> Overton: Yes.
>
> Amazon Atty: And this indicates that you were the custodian of this document. Do you understand that?
>
> Overton: Okay, sure.
>
> Amazon Atty: There's a created date time about three quarters of the way down the page. Do you see that?
>
> Overton: I do.
>
> Amazon Atty: And the created date time is January 3, 1999, at 2:52 p.m.; right?
>
> Overton: I see that.[30]

14. Dr. Overton demonstrated further knowledge of Karger's work at MIT in a draft letter to investor Paul Carmichael dated October 31, 2005. The letter states:

> Combined, the NDTP (2000) case predates all the MIT and Stanford research (do a Google search on 'Distributed Hash Table', and you'll see hundreds of thousands of hits with earliest dates in 2001).[31]

15. Dr. Overton claimed that he wouldn't have found Karger relevant when prosecuting the Asserted Patents. He testified:

> Amazon Atty: You were able to determine on your own that that paper wouldn't be material to the examiner's examination of your application; right?

---

[30] Ex. 85 (5/17/2023 J. Overton Dep. Tr.) at 709:12–710:15.

[31] Ex. 91 at 2 (KOV_00057828).

8

> Overton: I don't know that I'm expert in any of this. But when I looked at that, it would never occur to me that that would be germane because that's about caching and one of the critical components, not the only one, but one very foundational component of our patents and of the technology is to eliminate caching. You can deploy it that way but that's not the part that's the most distinctive.
>
> Amazon Atty: And that's your view; right?
>
> Overton: I think it's – yes, yes, that's my view.[32]

16. Amazon's expert Mr. Greene opined that Karger was a material reference and that Drs. Overton and Bailey would have understood its materiality. Mr. Greene's invalidity report states:

> The inventors of the Asserted patents were familiar with Karger and Sherman's consistent hashing work. Dr. Overton wrote a draft letter to Paul Carmichael claiming that the patents-in-suit include "method claims and specific system claims regarding distributed hash tables." In this letter, Dr. Overton demonstrated his knowledge of this work being done at MIT (where Dr. Karger is a professor) regarding distributed hash tables and systems, but claimed that the work only post-dated the patents-in-suit. Even further, Dr. Overton was at least aware of Karger's consistent hashing system since at least January 3, 1999. Specifically, co-inventor Overton had a copy of Karger's article…in his files at least since that date. In my view this article and Karger's work at MIT are material to the subject matter of the applications that became the Asserted Patents….[33] [A] POSITA at this time would have considered this article highly relevant to the purported invention described in the Asserted Patents.[34]

17. Kove's infringement expert opined that Karger was a well-known article and didn't dispute its status as prior art. Dr. Goodrich testified:

> Amazon Atty: All right. So would you at least agree that this Karger paper was well-known in the world of distributed algorithms, right?
>
> …
>
> Goodrich: Yeah. I don't know if it would be rising to the level of something that just would be known to a person of ordinary skill in

---

[32] Dkt. 687-61 (5/17/2023 J. Overton Dep. Tr.) at 732:22–733:15.

[33] Dkt. 700-42 at ¶ 231.

[34] Ex. 84 (7/3/2023 J. Greene Expert Report) at ¶ 232.

the art generally. But I'm not disputing this as prior art, if that's your question.[35]

### Double Patenting

18. In reexamination proceedings, Kove has repeatedly used materially the same language to describe the technology of the '978, '640, and '170 patents, with pages of Kove's responses containing nearly identical "Overview[s] of the Technology."[36]

19. In his invalidity expert report, Mr. Greene opines that "there are no material differences between the construction of claim terms in the '978 Patent and the '640 and '170 Patents" because the only term that differs between the '978 patent and the '640 and '170 patents is "location information." And the construction of "location information" in the '970 patent "is an explicitly disclosed subset of the 'location information' claimed in the '640 and '170 patents."[37]

20. Mr. Greene goes on to opine that "each and every claim limitation in the asserted '978 Patent claims is explicitly disclosed by the '640 Patent and '170 Patent," which he explains by providing color-coded charts that shows the explicit disclosure of the '978 patent's claims in the '640 and '170 patents, respectively.[38]

### Invalidity Based on Prior Art

21. DNS and BIND notes that "whenever a feature is available only in the 4.8.3, 4.9, or 8.1.2 version [of BIND], [the authors] try to point out which version does what."[39]

22. DNS systems had been in use for more than a decade prior to BIND 8.1 becoming

---

[35] Ex. 92 (9/9/2023 M. Goodrich Dep. Tr.) at 265:17–266:4.

[36] *E.g.*, Dkt. 700-134 (Reply to Office Action in '036 Reexam.) at 7–9; Dkt. 700-157 (Reply to Office Action in '034 Reexam.) at 8–11; Dkt. Dkt. 700-131 (Reply to Office Action in '035 Reexam.) at 8–11; Dkt. 700-140 (Reply to Office Action in '109 Reexam.) at 9–10; s*ee also* Dkt. 700-42 at ¶ 288.

[37] Dkt. 700-42 at ¶¶ 284–86.

[38] *Id*. at ¶¶ 287–88; Dkt. 700-9; Dkt. 700-10.

[39] Dkt. 700-98 at xi.

10

available and were well known by those skilled in the art, as RFC 1034 described a DNS system in November 1987.[40]

23. RFC 1034 recognizes that "the components of the official protocol [of DNS] are expected to stay essentially unchanged and operate as a production service," regardless of any experimentation on the system.[41]

24. Sherman and Karger/Sherman do not contain an introduction to DNS or otherwise define DNS before describing it as part of the Cache Resolver System.[42]

25. Each of the references describing DNS predates the earlier of Kove's two asserted priority dates.[43]

26. Boukobza's patent application was filed on June 27, 1997—more than a year before the earlier of Kove's asserted priority dates in October 1999—which Mr. Greene notes in his report, and it shares no named inventors with any of the '978, '640, or '170 patents.[44]

27. The Patent Office has repeatedly found Boukobza to be prior art to the '978 patent in reexamination proceedings.[45]

28. Karger '618's patent application was filed on March 13, 1998—more than a year before the earlier of Kove's asserted priority dates in October 1999—which Mr. Greene notes in his report, and it shares no named inventors with any of the '978, '640, and '170 patents.[46]

---

[40] *See* Dkt. 700-102.

[41] *Id.* at 1.

[42] *See generally* Dkt. 700-101; Dkt. 700-103.

[43] *See* Dkt. 700-98; Dkt. 700-101; Dkt. 700-102; Dkt. 700-103.

[44] *Compare* Dkt. 700-1 (Boukobza) *with* Dkt.700-4 ('640 patent) *and* Dkt.700-5 ('978 patent) *and* Dkt.700-6 ('170 patent); *see also* Dkt. 700-42 at ¶ 204.

[45] *E.g.*, Dkt. 700-96 at 2–3; Dkt. 687-9 at 2–3.

[46] *Compare* Dkt. 700-2 (Karger '618) *with* Dkt. 700-4 ('640 patent) *and* Dkt. 700-5 ('978 patent) *and* Dkt. 700-6 ('170 patent); *see also* Dkt. 700-42 at ¶ 223.

29. Karger '420's patent application was filed on June 2, 1998—more than a year before the earlier of Kove's asserted priority dates in October 1999—which Mr. Greene notes in his report, and it shares no named inventors with any of the '978, '640, and '170 patents.[47]

30. Mr. Greene has concluded that Steen is prior art under § 102(a) and (b) because it is a printed publication published by someone other than the patent's inventors that was available to the public by at least January 1998. He opines that

> Steen is a printed publication written by Maarten van Steen. It was published in the January 1998 edition of IEEE Communications Magazine with the title "Locating Objects in Wide-Area Systems." IEEE Communications Magazine was well known to those of ordinary skill in the art at the time of its publishing in January of 1998. It's [sic] inclusion in the January 1998 issue of IEEE Communications Magazine is confirmed by ACM Digital library, which lists it in the table of contents for the issue. Those in the art were reading and even citing to Steen throughout 1998, confirming its public availability. Thus, Steen was a publicly available printed publication no later than January 31, 1998. As a result, Steen is a printed publication that is prior art under 35 U.S.C. § 102(b) because it published more than one year prior to the earliest possible priority date of the Asserted Patents (September 14, 1999) and under § 102(a) because an author other than the named inventors published it before that date.[48]

31. In that opinion, Mr. Greene cites to four different papers published in 1998 that contemporaneously cite to Steen, confirming that those skilled in the art were able to access it.[49]

---

[47] *Compare* Dkt. 700-3 *with* Dkt. 700-4 ('640 patent) *and* Dkt. 700-5 ('978 patent) *and* Dkt. 700-6 ('170 patent); *see also* Dkt. 700-42 at ¶ 223.

[48] Dkt. 700-42 at ¶ 176 (citations omitted); Dkt. 700-104; Ex. 93 (7/3/2023 J. Greene Expert Report, Ex. 32).

[49] Dkt. 700-42 at ¶ 176 n.233 (citing the following reexamination request exhibits: "An Efficient Mobility Management Strategy for Personal Communication Systems," Bejerano, Y. et al., Dept. of Electrical Engineering, Technion – Israel Institute of Technology, October 25, 1998; "Lightweight Crash Recovery in a Wide-area Location Service," Ballintijn, C. et. al, VU Technical Report, No. IR-451, October 1998; "An Efficient Hierarchical Scheme for Locating Highly Mobile Users," Pitoura, E. et al., Dept. of Computer Science, Univ. of Ioannina, (1998); "Active Naming: Programmable Location and Transport of Wire-Area Resources," Vahdat, A. et al. (1998)).

32. Kove's expert, Dr. Goodrich, agrees that IEEE, the organization that publishes the magazine in which Steen appeared, has been a well-known organization in the art for more than thirty years.[50]

33. The Patent Office has also concluded in reexamination proceedings that Steen is prior art to each of the '978, '640, and '170 patents.[51]

Dated: December 4, 2023

Respectfully Submitted,

/s/ R. William Sigler
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (pro hac vice)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (pro hac vice)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW, Suite 400
Washington, DC 20015
202.362.3500

*Attorneys for Amazon Web Services, Inc.*

---

[50] Dkt. 700-51 at 664:22–665:1.

[51] Dkt. 612-1 (3/29/23 '165 Reexam. Order) at 3; Dkt. 618-1 (4/4/23 '166 Reexam. Order) at 14; Dkt. 648-1 (5/16/23 '162 Reexam. Order) at 3.

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 8, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, and also served a copy on all counsel of record via email.

                                          */s/ R. William Sigler*
                                          R. William Sigler