**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | |
| | Hon. Matthew F. Kennelly |
| v. | |
| Amazon Web Services, Inc., | Jury Trial Demanded |
| Defendant. | |

**PLAINTIFF KOVE IO, INC.'S REPLY IN SUPPORT OF**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE**

## <u>TABLE OF CONTENTS</u>

**Page**

Introduction ................................................................................................................ 1

Argument ................................................................................................................... 1

I.     Kove Is Entitled to Summary Judgment on Patent Eligibility. ..................................... 1

II.     AWS Fails to Identify Facts Satisfying the Legal Standards for Equitable Estoppel, Waiver, and Inequitable Conduct. ................................................................................ 4

      A.     Equitable Estoppel: Mere Silence Is Insufficient ............................................. 4

      B.     Implied Waiver: Kove Undisputedly Had No Duty to Disclose ....................... 5

      C.     Inequitable Conduct: AWS Cannot Meet the Exacting Standard for Intent. .... 6

III.     Kove Is Entitled to Summary Judgment on Obviousness-Type Double Patenting. ..... 7

IV.     Because AWS Fails to Qualify Multiple References as Prior Art, Kove Is Entitled to Summary Judgment, and Mr. Greene's Associated Opinions Are Inadmissible. .... 11

      A.     Mr. Greene's *Ipse Dixit* About BIND 8.1 and Cache Resolver Is Inadmissible. 11

           1.     BIND 8.1: AWS cannot now change its asserted reference to DNS generally ............................................................ 11

           2.     Cache Resolver: Attorney argument cannot save Mr. Greene's opinions. ......................................................... 13

      B.     Boukobza, Karger '618, and Karger '420 Are Not Prior Art Under Any Properly Disclosed Theory. ............................................................ 15

      C.     AWS Lacks Sufficient Evidence That Steen Was Publicly Accessible. ........ 16

V.     Kove's Cross-Motion to Exclude Should Be Granted. ............................................. 16

      A.     Dr. Grama Cannot Contradict the Court's Construction of "Location." ........ 16

           1.     AWS forfeited any response to Kove's argument. ............................. 17

           2.     AWS's new theory is not disclosed in Dr. Grama's report ................ 17

      B.     Dr. Grama's DynamoDB Opinions Apply the Wrong Construction. ............. 19

      C.     AWS's New "██████████" Theory Should Be Excluded. ...................... 20

Conclusion ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) (en banc)..............................................................5

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)..............................................................................3

*Bancorp Servs., LLC v. Sun Life Assurance Co. of Can. (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012)..............................................................................3

*Baxter Int'l, Inc. v. CareFusion Corp.*,
  2022 WL 981115 (N.D. Ill. Mar. 31, 2022)............................................................7

*Bd. of Trs. of Bay Med. Ctr. v. Humana Mil. Healthcare Servs., Inc.*,
  447 F.3d 1370 (Fed. Cir. 2006)..............................................................................2

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)..............................................................................4

*Bonte v. U.S. Bank, N.A.*,
  624 F.3d 461 (7th Cir. 2010) ................................................................................17

*Bruckelmyer v. Ground Heaters, Inc.*,
  445 F.3d 1374 (Fed. Cir. 2006)............................................................................16

*Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*,
  689 F.3d 1368 (Fed. Cir. 2012)........................................................................9, 10

*Ennin v. CNH Indus. Am., LLC*,
  878 F.3d 590 (7th Cir. 2017) ................................................................................17

*Ericsson Inc. v. TCL Commc'n Tech. Holdings*,
  955 F.3d 1317 (Fed. Cir. 2020)..............................................................................4

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)..............................................................................................11

*In re Hall*,
  781 F.2d 897 (Fed. Cir. 1986)..............................................................................16

*High Point SARL v. Sprint Nextel Corp.*,
  817 F.3d 1325 (Fed. Cir. 2016)..............................................................................4

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   645 F.3d 1336 (Fed. Cir. 2011)..................................................................5

*Innogenetics, N.V. v. Abbott Labs.*,
   512 F.3d 1363 (Fed. Cir. 2008)..................................................................8

*Invitrogen Corp. v. Clontech Labs., Inc.*,
   429 F.3d 1052 (Fed. Cir. 2005)................................................................14

*In re Kahn*,
   441 F.3d 977 (Fed. Cir. 2006)...................................................................9

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
   545 F.3d 1340 (Fed. Cir. 2008)................................................................13

*M.G. Skinner & Assocs. Ins. Agency v. Norman–Spencer Agency, Inc.*,
   845 F.3d 313 (7th Cir. 2017) ...................................................................10

*Mitze v. Colvin*,
   782 F.3d 879 (7th Cir. 2015) ...................................................................14

*Nichols v. Mich. City Plant Planning Dep't*,
   755 F.3d 594 (7th Cir. 2014) .....................................................................2

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*,
   2018 WL 6725873 (N.D. Ill. Dec. 21, 2018) (Kennelly, J.) ...................15

*Personalized Media Communications, LLC v. Apple, Inc.*,
   2021 WL 2696561 (E.D. Tex. Jan. 29, 2021), *adopted*, 2021 WL 2697610
   (E.D. Tex. Mar. 13, 2021)...........................................................................2

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*,
   429 F.3d 1364 (Fed. Cir. 2005)..................................................................1

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc).................................................9

*Samsung Elecs. Co. v. Infobridge Pte. Ltd.*,
   929 F.3d 1363 (Fed. Cir. 2019)................................................................16

*Santamarina v. Sears, Roebuck & Co.*,
   466 F.3d 570 (7th Cir. 2006) .....................................................................1

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
   580 U.S. 328 (2017)...................................................................................5

*In re Schreiber*,
   128 F.3d 1473 (Fed. Cir. 1997)................................................................14

*Sloan Valve Co. v. Zurn Indus., Inc.*,
    2013 WL 622951 (N.D. Ill. Feb. 20, 2013) (St. Eve, J.)...........................................12, 15, 16

*Sloan Valve Co. v. Zurn Indus. Inc.*,
    2013 WL 4506127 (N.D. Ill. Aug. 23, 2013) (St. Eve, J.).......................................................18

*SRI Int'l, Inc. v. Internet Sec. Sys.*,
    511 F.3d 1186 (Fed. Cir. 2008).....................................................................................16

*Storer v. Clark*,
    860 F.3d 1340 (Fed. Cir. 2017).....................................................................................10

*Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*,
    611 F.3d 1381 (Fed. Cir. 2010).......................................................................................9

*Symbol Techs., Inc. v. Opticon, Inc.*,
    935 F.2d 1569 (Fed. Cir. 1991)...................................................................................7, 11

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
    247 F.3d 1316 (Fed. Cir. 2001)...................................................................................12, 14

*Thales Visionix Inc. v. United States*,
    850 F.3d 1343 (Fed. Cir. 2017).......................................................................................3

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011)....................................................................................6, 7

*Treehouse Avatar LLC v. Valve Corp.*,
    54 F.4th 709 (Fed. Cir. 2022)........................................................................................17

*W.L. Gore & Assocs. v. Garlock, Inc.*,
    721 F.2d 1540 (Fed. Cir. 1983)......................................................................................14

*Weaver v. Champion Petfoods USA Inc.*,
    3 F.4th 927 (7th Cir. 2021) ............................................................................................3

**Statutes**

35 U.S.C. § 101 ..........................................................................................................1, 2, 3

35 U.S.C. § 102(a) ...........................................................................................................15

35 U.S.C. § 102(b) ...........................................................................................................15

35 U.S.C. § 102(e) .......................................................................................................15, 16

35 U.S.C. § 102(f) ...........................................................................................................15

**Regulations**

37 C.F.R. § 41.201 ...................................................................................................................10

**Rules**

Fed. R. Civ. P. 26 ..................................................................................................................15

Fed. R. Civ. P. 26(a)(2)(B) .................................................................................................8, 10

Fed. R. Civ. P. 37(c)(1) .........................................................................................................18

Fed. R. Evid. 702 ......................................................................................................7, 12, 13, 14

N.D. Ill. LPR pmbl. ...............................................................................................................15

N.D. Ill. LPR 3.2 ....................................................................................................................20

N.D. Ill. LPR 3.4 ...............................................................................................................12, 15

## INTRODUCTION

From summary judgment to *Daubert* to disclosure issues, AWS's response has a common thread: AWS repeatedly ignores Kove's arguments and declines to defend its previous positions in favor attacking strawmen and injecting a host of new theories into this case long after the deadline to disclose them. The merits are no better for AWS. In the end, the challenged defenses are indefensible; the expert opinions, inadmissible; and the new theories, inexcusable.

To be clear, AWS did not confine its new arguments to its response to Kove's motions; the parts of its brief replying in support of AWS's motions are similarly rife with new, and thus forfeited, arguments. But because Kove understands that the authorized scope of this brief is limited to replying in support of Kove's motions, not a sur-reply, it does not address AWS's reply arguments here but would welcome an opportunity to brief those arguments if helpful to the Court.

## ARGUMENT

### I. Kove Is Entitled to Summary Judgment on Patent Eligibility.

This Court already considered and rejected AWS's § 101 defense as a matter of law. Dkt. 110; *see* Dkt. 699 at 57-58. Under controlling precedent, that ruling is law of the case and should not be reconsidered absent a "compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (7th Cir. 2006).

AWS does not dispute any of that. Dkt. 714 at 43-46. Instead, it suggests that the Federal Circuit has held that decisions like this one are "subject to change upon the development of the record." *Id.* at 43-44 (quoting *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005)).[1] That is both incorrect and irrelevant. Whether to reconsider is a matter of Seventh

---

[1] *Pfizer* merely holds that it was "prudent to address" an issue that need not otherwise be decided on interlocutory appeal because it was "subject to change" as the record developed. *See* 429 F.3d at 1377.

Circuit law. *Bd. of Trs. of Bay Med. Ctr. v. Humana Mil. Healthcare Servs., Inc.*, 447 F.3d 1370, 1374 (Fed. Cir. 2006). Besides, as Kove said from the outset, there is no categorical ban on reconsideration; there is just no reason to reverse course here. Dkt. 699 at 58-60.

Similarly, AWS's account of the magistrate judge's decision in *Personalized Media Communications, LLC v. Apple, Inc.*, 2021 WL 2696561 (E.D. Tex. Jan. 29, 2021), *adopted*, 2021 WL 2697610 (E.D. Tex. Mar. 13, 2021), is incomplete. There, the court concluded that, under "non-binding Second Circuit guidance," there is no categorical bar to revisiting step one. *Id.* at *2-3 & n.2. But the court stood by its step one eligibility determination because the defendant "fail[ed] to present any evidence that causes [the] Court to question [its previous] finding." *Id.* at *3. So too here. AWS offers no reason to reach a different result, much less one that passes muster under the governing Seventh Circuit standard. *See* Dkt. 699 at 57-60.

All AWS offers in support of reconsideration is a handful of "intervening developments in the factual record." Dkt. 714 at 44. But it never explains how reconsideration would change the result; it provides no argument that the claims are ineligible beyond those the Court already rejected. *See id.* at 43-46. It has thus forfeited any such argument. *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014). Regardless, AWS is wrong on the merits.

**New Claims.** To be sure, there are more claims at issue now than there were at the time the Court rejected AWS's § 101 argument. But as Kove explained, the new claims are eligible for the same reasons as the ones the Court already addressed. Dkt. 699 at 61. AWS does not dispute that point. *See* Dkt. 714 at 43-46. For good reason: Nine of the new claims involve the same "redirect" functionality the Court already addressed. *See* Dkt. 110 at 12-13; '978 patent claims 3, 10, 14; '170 patent claims 6, 8, 9, 12, 15; '640 patent claim 17. The only other independent claim ('978 patent claim 6) is eligible for the same reasons the Court gave for claim 1 of the '170 patent;

it is "directed to a specific network architecture that employs multiple location servers that organize location information based on a [hash function]." Dkt. 110 at 12-13. And the five claims that depend from those the Court already ruled on are necessarily also eligible. *See Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1346 n.1 (Fed. Cir. 2017).

**Claim Construction.** Next, AWS suggests that claim construction "is a critical element for a full and proper § 101 analysis," such that intervening claim construction decisions mean that the Court should revisit § 101. Dkt. 714 at 45. Not so. AWS's own case refutes its point. *Compare Bancorp Servs., LLC v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101."), *with* Dkt. 714 at 45 & n.206 (citing *Bancorp* for the proposition that claim construction is "often necessary" to decide § 101 issues). *See also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (claim construction, if any, needed for the § 101 analysis "may well be less than a full, formal claim construction" even when disputed). Regardless, AWS never says how any intervening (or even desired) construction would have changed anything. Dkt. 714 at 45. Now was the time to do so. *Weaver v. Champion Petfoods USA Inc*., 3 F.4th 927, 938 (7th Cir. 2021) ("put up or shut up moment" (attribution omitted)).

None of the Court's constructions, *see* Dkt. 484 at 35, affect its legal ruling that the claims are not directed to an abstract idea. As the Court explained, the claims are "directed to a specific network architecture that employs multiple location servers that organize location information based on a distributed hash table," and that "architecture functions differently than—and improves upon—conventional systems." Dkt. 110 at 12-13; Dkt. 699 at 58. Even AWS's proposed new constructions would not change the step one analysis—and AWS does not argue otherwise.

**Dr. Overton's Testimony.** Dr. Overton's alleged testimony that certain limitations were

not inventive, *see* Dkt. 714 at 44 & n.204 (citing Dkt. 700-42 ¶ 276), is beside the point. At most, his discussion of what was "well-understood, routine, and conventional" could be relevant to step two. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367-68 (Fed. Cir. 2018). But step two comes into play only where the claims fail step one. Dkt. 699 at 56-57 (collecting cases). Because the Court already held that the claims are eligible at step one, any testimony about step two is irrelevant.

**Mr. Greene's Opinions.** AWS's expert's opinions are equally irrelevant. AWS identifies only Mr. Greene's assertion that certain limitations "could be implemented on any conventional, standard, and well-known computer or server." Dkt. 714 at 45 & n.210 (quoting Dkt. 700-42 ¶ 265). That is a step two issue and thus provides no reason to revisit step one. *Berkheimer*, 881 F.3d at 1367. And to the extent Mr. Greene means to weigh in on step one, he says nothing new; the Court already rejected the same arguments. Dkt. 699 at 60. AWS's cited cases are irrelevant. *See* Dkt. 714 at 46. Because step one is purely legal, there is no fact dispute for Mr. Greene to weigh in on. *Ericsson Inc. v. TCL Commc'n Tech. Holdings*, 955 F.3d 1317, 1321 (Fed. Cir. 2020).

## II.    AWS Fails to Identify Facts Satisfying the Legal Standards for Equitable Estoppel, Waiver, and Inequitable Conduct.

### A.    Equitable Estoppel: Mere Silence Is Insufficient.

AWS's equitable estoppel argument—which is based solely on the theory that Kove did not mention its patents to AWS before filing a lawsuit—is irreconcilable with controlling precedent. It is black-letter law that mere silence is not enough; the party asserting estoppel must prove that "some other factor" transformed the silence into "misleading conduct." *High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1330 (Fed. Cir. 2016); Dkt. 699 at 62.

AWS does not seriously dispute the point. Aside from attempting to pass off Kove's example of facts that could satisfy the test as Kove's statement of the test, AWS ignores Kove's binding precedent. *Compare* Dkt. 714 at 47, *with* Dkt. 699 at 62. The one Federal Circuit case

4

AWS cites on this issue confirms that "inaction must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992) (en banc), *abrogated in other part by SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328 (2017).  It also holds that "silence alone will not create an estoppel" without something more, such as "a clear duty to speak." *Id.* at 1043.  Indeed, the very sentence AWS selectively quoted makes the same point right where AWS left off.  *Compare id.* at 1028 ("'Conduct' may include specific statements, action, inaction, or silence where there was an obligation to speak."), *with* Dkt. 714 at 47 n.216 (representing this language as "explaining that '"conduct" may include . . . inaction'" (ellipsis by AWS)).  Because AWS identifies no "other facts" beyond silence, its defense fails.  *Aukerman*, 960 F.2d at 1042.

### B.   Implied Waiver: Kove Undisputedly Had No Duty to Disclose.

AWS's waiver defense fails because AWS has no evidence that Kove had a duty to disclose its patents to AWS.  Dkt. 699 at 62-64; *see Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011) (requiring clear and convincing evidence that the patentee breached a duty to disclose to the defendant).  AWS neither responded to Kove's argument that a duty is required nor identified any alleged duty.  *See* Dkt. 714 at 47-48 (arguing only that Kove chose not to sue or "inform Amazon of the asserted patents" earlier).

AWS's contention that Kove could have sued earlier but chose to wait boils down to a laches argument based on what AWS suggests was an unreasonable delay.  But the Supreme Court has held that laches is no defense to patent damages because the statute of limitations "represents a judgment by Congress that a patentee may recover damages for any infringement committed within six years of the filing of the claim." *SCA Hygiene*, 580 U.S. at 336.

### C. Inequitable Conduct: AWS Cannot Meet the Exacting Standard for Intent.

AWS must establish by clear and convincing evidence that Kove's inventors knew of the reference, knew the reference was material, and made a knowing and deliberate decision to deceive the PTO. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). To prevail, that intent "must be the single most reasonable inference able to be drawn from the evidence." *Id.* at 1290 (attribution omitted). That means AWS must present evidence "sufficient to *require* a finding of deceitful intent." *Id.* (emphasis in original). "[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.* at 1290-91.

No reasonable jury could find that AWS has met that high burden. AWS's evidence that Dr. Overton was aware of the Karger paper and that it was in his files says nothing about whether he knowingly and specifically intended to deceive the Patent Office by not submitting it. AWS implicitly concedes that this is not "sufficient to *require* a finding of deceitful intent," *Therasense*, 649 F.3d at 1290, arguing instead that a jury *could* (but need not) so find. Dkt. 714 at 50 ("could find"). That is not enough; when "multiple reasonable inferences" are available, an inequitable conduct defense fails as a matter of law. *Therasense*, 649 F.3d at 1290-91. As AWS appears to concede, that is the case here. Indeed, this is the policy animating the rule. If all it took were that a patentee's files have something not presented to the Patent Office, any case could be transformed into inequitable conduct—precisely what the strict standard is meant to avoid. *Id.* at 1289-90.

AWS's other evidence—that Dr. Overton wrote in 2005 that his invention "predates all the MIT and Stanford research"; that AWS's expert believes Karger is material; and that Kove's expert acknowledges that Karger is a well-known paper and is prior art—likewise relate only to the non-intent elements (knowledge and materiality). AWS identifies no evidence, whether direct or circumstantial, that the inventors deliberately decided to deceive. The uncontradicted evidence is that they believed they complied with their disclosure duties. Dkt. 716 ¶¶ 13-14.

6

That falls far short. *See Therasense*, 649 F.3d at 1290. Even if a jury were to disregard or disbelieve Dr. Overton's testimony, it "would not be required to also conclude there was intent to deceive," as binding Federal Circuit precedent requires. *Baxter Int'l, Inc. v. CareFusion Corp.*, 2022 WL 981115, at *7 (N.D. Ill. Mar. 31, 2022) (granting summary judgment where the defendants had no evidence of intent and argued only that the inventors could be disbelieved).

## III. Kove Is Entitled to Summary Judgment on Obviousness-Type Double Patenting.

To prove obviousness-type double patenting, AWS must show by clear and convincing evidence that the asserted claims of the '978 patent are obvious in view of the claims of the '640 and '170 patents. *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1580 (Fed. Cir. 1991). As AWS acknowledges, the analysis requires (i) construing the earlier patent's claims and the later patent's claims and identifying the differences and (ii) determining whether those differences make the claims patentably distinct. Dkt. 714 at 50-51. AWS relies on its expert, Mr. Greene, for step two, but his opinions are inadmissible both because they are conclusory and because they are not the product of reliable principles and methods. Dkt. 699 at 65-70. As the recent updates to Rule 702 reinforce, courts serve an important gatekeeping role to ensure as a prerequisite to admissibility that expert opinions reflect a reliable application of a reliable methodology, not just the expert's say-so. Fed. R. Evid. 702 advisory committee's note to 2023 amendments.

AWS's defense of Mr. Greene's opinions is unavailing. First, AWS complains that Kove relies on "just over a paragraph of Mr. Greene's 210-page expert report" to show that his opinions are conclusory and thus inadequately disclosed. Dkt. 714 at 51. But all it says Kove missed are three sentences: two asserting the facts that "the three patents cover the same inventive concept" and that "Kove employs nearly the same language when describing the overview of the technology and patents," followed immediately by the conclusion that, "[a]s such, it is my opinion that the Asserted Claims of the '978 Patent are invalid based on obviousness double-type [*sic*] patenting

7

in light of the disclosures and claims of the" '640 and '170 patents. *Id.* (quoting Dkt. 700-42 ¶ 288). Mr. Greene nowhere explains why he thinks that "covering the same inventive concept" or using "nearly the same language" to describe the technology (not the claims) establishes that the '978 patent claims are not patentably distinct from those of the '640 and '170 patents. Nor does AWS cite any support for this approach to double patenting. Two factual assertions plus an unexplained, unrelated conclusion do not add up to a disclosure that satisfies Rule 26(a)(2)(B).

AWS falls back to the position that "there was no further analysis to provide" because Mr. Greene believes that "there are no material differences" between the earlier and later patents' claims and that "each claim limitation is 'explicitly disclosed,'" that is why "there was no further analysis to provide." Dkt. 714 at 52. That view of Mr. Greene's disclosure obligations is not the law. *E.g.*, *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008) (cannot "merely list[] a number of prior art references and then conclude[] with the stock phrase 'to one skilled in the art it would have been obvious to perform the [claimed invention]'"); Dkt. 699 at 67.

Regardless, Mr. Greene's own charts refute his conclusion that the limitations are all "explicitly disclosed" by the earlier claims. For example, Mr. Greene compares the '978 patent's element 17.e with parts of the '170 patent's claims and specification:

| ['978 Patent] Claims | '170 Patent Claims and Specification |
|---|---|
| [17.e] transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. | 8. The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information.<br><br>13. The system of claim 9, wherein the location query identifying the desired entity comprises a unique identifier for the desired entity, and wherein the programming logic stored on the location server further comprises programming logic configured to apply an index function to the unique identifier to retrieve at least a portion of the locations associated with the unique identifier in the indexed location store.<br><br>"As those skilled in the art will appreciate, the |

| | Transmission Control Protocol (TCP) is a connection-oriented protocol that is part of a universally implemented subset of the Internet Protocol (IP) suite. ==TCP provides reliable, bi-directional stream data transfer. TCP also implements adaptive congestion avoidance to ensure data transfer across a heterogeneous network with various link speeds and traffic levels.==" (Col. 11:55-61) |

Dkt. 700-10 at 10-11 (highlighting in original). Mr. Greene does not and cannot explain how the claim language he highlighted discloses the "transferring a portion" requirement, "explicitly" or not. Nor does he say what his specification excerpt has to do with the claim language. As described in the excerpt, TCP is a connection-oriented protocol that relates generally to certain internet and network communications. Mr. Greene does not connect it to the "transferring a portion" requirement or anything else in element 17.e. Nor does Mr. Greene's chart for the '640 patent fill the gap for element 17.e; there, he points only to the same unexplained excerpt from the specification. Dkt. 700-9 at 11. He thus fails to provide what the law requires: "some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *In re Kahn,* 441 F.3d 977, 988 (Fed. Cir. 2006). A highlighter is no substitute for reasoning.

What is more, Mr. Greene's failure to connect the specification excerpts to the claims (or to anything else) is contrary to precedent. The party asserting double patenting must show that the challenged claim is obvious in light of the earlier claims, not the specification's disclosures. *Eli Lilly & Co. v. Teva Parenteral Meds., Inc*., 689 F.3d 1368, 1380 (Fed. Cir. 2012); Dkt. 699 at 69.

To be sure, specifications can be used to understand the claims involved in a double patenting analysis. *See Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1387-88 (Fed. Cir. 2010) (cited at Dkt. 714 at 53 & n.249). After all, "claim terms must be construed in light of the entirety of the patent, including its specification." *Id.* at 1388 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)). That is not a license to compare the later claim against the earlier specification itself, divorced from the earlier claim. But all Mr. Greene's charts

9

appear to do with the earlier specification is compare it to the later claim, as shown by his direct comparison between the '640 patent's specification and the '978 patent's element 17.e, with no '640 patent claim language in sight.  Dkt. 700-9 at 11.  Because Mr. Greene never explains his charts or provides any other analysis, AWS has no support for its (uncited) assertion that Mr. Green uses the specification for "exactly" the limited purpose the cases allow, Dkt. 714 at 53.

Next, AWS argues that because "Kove has conceded that certain of the '978 Patent's claims were constructively reduced to practice on September 13, 2000, by the filing of the application that later became the '640 Patent," claims 3, 6, 10, and 14 are necessarily invalid for double patenting.  Dkt. 714 at 52-53; *see* Dkt. 700-42 ¶ 289.  AWS's and Mr. Greene's failure to explain or cite any authority for that assertion is reason enough to reject it.  *E.g.*, *M.G. Skinner & Assocs. Ins. Agency v. Norman–Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").  In any event, the argument impermissibly treats the earlier patent's specification "as prior art against" the later patent.  *See Eli Lilly*, 689 F.3d at 1379.  Constructive reduction to practice is a function of the application's disclosures, not just its claims.  *See, e.g.*, *Storer v. Clark*, 860 F.3d 1340, 1344 (Fed. Cir. 2017) (invention must be "described and enabled" (quoting 37 C.F.R. § 41.201)).  Obviousness-type double patenting works the other way around—it turns on "what [was] previously *claimed*, not what [was] previously *disclosed*."  *Eli Lilly*, 689 F.3d at 1379.

Finally, AWS blames Kove for Mr. Greene's inadequate disclosures, reasoning that Kove did not use its limited deposition time to invite the explanations missing from Mr. Grenee's report. Dkt. 714 at 53.  That is not how expert disclosures work.  If AWS wants Mr. Greene to testify, then it is on AWS to ensure that his report satisfies Rule 26(a)(2)(B)'s disclosure obligations.  And double patenting is AWS's affirmative defense, on which it bears the clear and convincing evidence

10

burden. *Symbol Techs.*, 935 F.2d at 1580. It is not Kove's responsibility to ensure that AWS's expert provided adequate disclosures and offered admissible opinions to support AWS's defense.

## IV. Because AWS Fails to Qualify Multiple References as Prior Art, Kove Is Entitled to Summary Judgment, and Mr. Greene's Associated Opinions Are Inadmissible.

### A. Mr. Greene's *Ipse Dixit* About BIND 8.1 and Cache Resolver Is Inadmissible.

Mr. Greene's invalidity opinions regarding DNS (BIND 8.1) and Cache Resolver take legally insufficient facts and add nothing more than his say-so. They should be excluded. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (opinions "connected to existing data only by the *ipse dixit* of the expert" are inadmissible).

#### 1. BIND 8.1: AWS cannot now change its asserted reference to DNS generally.

As Kove's brief explained, rather than discussing the source code comprising the asserted BIND 8.1 reference, Mr. Greene's opinions about BIND 8.1 are based on four documents with no apparent connection—other than his *ipse dixit*—to that specific implementation of DNS. Dkt. 699 at 72-76. AWS does not seriously dispute Mr. Greene's failure to connect his four documents to BIND 8.1. Instead, AWS turns to sleight of hand, defending what it says is Mr. Greene's opinion that "the DNS system, of which BIND 8.1 is one implementation, is prior art." Dkt. 714 at 54.

But that is not true. Mr. Greene identifies only the BIND 8.1 implementation itself as the prior art reference, not DNS generally. Dkt. 716 ¶ 32. And that is the reference AWS asserted in its final invalidity contentions: "AWS contends that BIND 8.1, a prior art Domain Name System (DNS) implementation[,] anticipates and/or renders obvious claims of the Asserted Patents . . . ." *Id.* Indeed, everything AWS cites identifies BIND 8.1—and only BIND 8.1—as the asserted reference. Dkt. 714 at 55-56 nn.253-54, 263 (citing Dkt. 702 ¶ 42 (in turn citing assertions about BIND 8.1); and Dkt. 700-42 ¶ 220 (addressing "The DNS system (BIND version 8.1)")).

The distinction matters. Switching from "the BIND 8.1 version of DNS," Dkt. 716 ¶ 32,

to "the DNS system, of which BIND 8.1 is one implementation," Dkt. 714 at 54, is like asserting *Harry Potter and the Sorcerer's Stone* as a prior art reference, only to later switch to "the fantasy genre, of which *Harry Potter* is one example"—it vastly expands the universe of what is at issue. There is no dispute that DNS has various different software implementations; that BIND is just one of them; and that BIND itself has many versions. Dkt. 716 ¶¶ 30-31. The local rules prohibit AWS's eleventh-hour attempt to assert DNS generally instead of the BIND 8.1 implementation. LPR 3.4; *Sloan Valve Co. v. Zurn Indus., Inc.*, 2013 WL 622951, at *2 (N.D. Ill. Feb. 20, 2013) (St. Eve, J.) ("good cause" and "diligence in amending the contentions" are required).

Everything AWS says in response to Kove's motion depends on its unauthorized swap to the amorphous, never-defined general "DNS system" as the prior art reference. AWS says that Mr. Greene should be allowed to rely on the RFC 1034, DNS & BIND, Sherman, and Karger/Sherman documents because they "describe the prior art DNS system" and "use[] them to show what a person skilled in the art would have understood DNS to be." Dkt. 714 at 55; *see also id.* at 56 ("the four references all describe the DNS system as a whole"). Nowhere does AWS argue that any of the four documents describes the BIND 8.1 implementation, let alone that the documents describe features "necessarily present" in BIND 8.1—something Mr. Greene must establish to rely on them. *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1328 (Fed. Cir. 2001) ("[R]ecourse to extrinsic evidence is proper to determine whether a feature, while not explicitly discussed, is necessarily present in a reference. The evidence must make clear that the missing feature is necessarily present, and that it would be so recognized by persons of ordinary skill in the relevant art." (citation omitted)); Dkt. 714 at 54-56.

AWS thus has not established that Mr. Greene's opinion "more likely than not . . . reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

12

The documents indicate that they do not describe BIND 8.1. Dkt. 699 at 74-75. Mr. Greene's unexplained insistence otherwise, *see id.* at 73-75, does not satisfy Rule 702. He does not identify or explain any principles or methods he applied in concluding that RFC 1034, DNS & BIND, Sherman, and Karger/Sherman each describe BIND 8.1—he just says so. Dkt. 716 ¶¶ 41, 43.

Moreover, BIND 8.1, as Mr. Greene and AWS use it, is four separate documents, not one, and thus is not a single reference that can be used to show anticipation. Dkt. 699 at 75-76; *see Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1351 (Fed. Cir. 2008) (collection of documents that were "part of [a] greater" standard was not a single reference). AWS's attempt to distinguish *Kyocera* makes no sense. For starters, it relies on AWS's untimely swap to "the DNS system as a whole." Dkt. 714 at 56. And even if that were the reference, *Kyocera* would still be precisely on point. Just as "eleven separate GSM specifications" that were "part of the greater GSM standard" could not "together constitute a single reference," *Kyocera*, 545 F.3d at 1351, so too the four documents here cannot be fused into a single reference just because they all talk about DNS. That the standard at issue in *Kyocera* was "voluminous and disparate," Dkt. 714 at 56, is no distinction at all. The standard there was at least an identifiable "collection of technical specifications . . . devised" by a single organization, albeit (like the four documents here) by different authors at different times. *Kyocera*, 545 F.3d at 1350-51. Whatever AWS means by "the DNS system as a whole," by contrast, is not a discrete, identifiable universe of documents. Indeed, AWS's argument appears to boil down to the view that anything anyone has ever written about DNS is part of the "DNS system." That is not how prior art works, and it unfairly prejudices Kove.

### 2. Cache Resolver: Attorney argument cannot save Mr. Greene's opinions.

Mr. Greene provides no support for his theory that "the complete features and functionality of DNS" (as described in RFC 1034 and DNS & BIND) are inherent to the Cache Resolver system. Dkt. 702 ¶ 56; Dkt. 699 at 77. AWS does not argue otherwise. *See* Dkt. 714 at 56-57. Instead,

AWS's attorneys try to fill the gap with their own hypotheses about why "[o]ne skilled in the art, like Mr. Greene, would understand that all of DNS" (whatever that means) "is inherently disclosed in Cache Resolver." *Id.* at 57. Arguments in briefs "are not evidence." *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015). Nor are they a substitute for an expert's actual opinions. *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony."). AWS identifies no factual support for the proposition that what Mr. Greene relies on from RFC 1034 and DNS & BIND is "necessarily present in" Cache Resolver, as is required for its inherency argument. *See Telemac Cellular*, 247 F.3d at 1328; Dkt. 699 at 76-77.

That leaves AWS's fallback argument that Mr. Greene's opinions are admissible because Kove has not proved that Cache Resolver does not anticipate. *See* Dkt. 714 at 57 (arguing that "Kove fails to identify what limitation is supposedly missing from Cache Resolver"). That is not Kove's burden and misses the point. The problem is that there is no coherent "Cache Resolver" reference that constitutes a single piece of prior art in the first place, and Mr. Greene's insistence to the contrary is inadmissible under Rule 702. Dkt. 699 at 77-78. How a prior art reference bears on the invalidity analyses is distinct from what the reference contains in the first place—and here, whether the other documents Mr. Greene relies on are "inherent to" the asserted reference. *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997) ("Anticipation is an issue of fact, and the question whether a claim limitation is inherent in a prior art reference is a factual issue on which evidence may be introduced." (citations omitted)); *W.L. Gore & Assocs. v. Garlock, Inc.*, 721 F.2d 1540, 1555 (Fed. Cir. 1983) ("Inherency and obviousness are distinct concepts."). Mr. Greene's unsupported assertion that RFC and DNS & BIND are inherent in Cache Resolver flunks Rule 702's test for admissibility, leaving AWS without any evidence as to what the asserted Cache

14

Resolver system even is, let alone how it provides clear and convincing evidence of invalidity.

### B. Boukobza, Karger '618, and Karger '420 Are Not Prior Art Under Any Properly Disclosed Theory.

AWS's final invalidity contentions, its Rule 26 disclosures, and Mr. Greene's report assert that the Boukobza, Karger '618, and Karger '420 references are prior art under 35 U.S.C. § 102(a), (b), or (f). Dkt. 716 ¶ 27 (citing Exs. K12, K19, K43, K49); *id.* ¶¶ 64-67.[2] But those patents do not qualify under § 102(a), (b), or (f) because they issued after Kove's priority dates. Dkt. 699 at 78-79. AWS does not dispute that point. Dkt. 714 at 57-59. Instead, it departs from all its prior disclosures and, for the first time, says that under § 102(e), the correct dates are the references' filing dates, making them prior art. Dkt. 714 at 58-59. Kove does not dispute that the relevant date for § 102(e) prior art is the filing date. The problem is that what AWS now seeks is an amendment to its invalidity contentions without even attempting to make the required showing.

The Local Patent Rules require "meaningful disclosure" for good reason: It promotes "greater predictability and planning for the Court and the litigants." LPR pmbl. Accepting AWS's § 102(e) argument now would effectively allow it to avoid summary judgment by replacing contentions it does not and cannot defend with new ones it could have included from the outset. But the rules do not allow parties to change their final contentions on the fly; rather, amendments are allowed "only by order of the Court upon a showing of good cause and absence of unfair prejudice to opposing parties, made promptly upon discovery of the basis for the amendment." LPR 3.4; *Sloan Valve*, 2013 WL 622951, at *2 (both "good cause" and "diligence in amending the contentions" are required); *see also Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, 2018 WL 6725873, at *2 (N.D. Ill. Dec. 21, 2018) (Kennelly, J.) ("[T]he Local Patent Rules do not permit a

---

[2] Because the Boukobza reference is asserted only in AWS's contentions under its proposed new constructions, there is no need to address it if the Court sticks with the current constructions. Dkt. 716 ¶ 25.

party to amend its final infringement contentions so long as the other party is not unfairly prejudiced; good cause and timeliness are also required.").  Because AWS has neither requested leave to amend nor attempted to make the required showing, the Court should not permit it to add its § 102(e) theory at this late juncture.  *Sloan Valve*, 2013 WL 622951, at *5 (declining to "reward [a party's] delay" when it had not "offered any justification for its actions").

### C. AWS Lacks Sufficient Evidence That Steen Was Publicly Accessible.

AWS has not offered evidence from which a reasonable jury could find by clear and convincing evidence that Steen was publicly accessible as required to qualify as a printed publication.  Dkt. 699 at 79-80; *see In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986) ("touchstone" for "printed publication" determination is public accessibility).  To establish public accessibility, AWS must prove that, as of the priority date, the reference "ha[d] been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art[,] exercising reasonable diligence, c[ould] locate it." *Bruckelmyer v. Ground Heaters, Inc.*, 445 F.3d 1374, 1378 (Fed. Cir. 2006).  Its "three pieces of evidence," Dkt. 714 at 59, fall short.  At best, AWS shows that Steen was in the January 1998 issue of IEEE Communications Magazine. *See id.*  But AWS offers no evidence of that issue's accessibility to the relevant audience. *See Bruckelmyer* 445 F.3d at 1378.  Courts look to indicators such as whether the reference was "meaningfully indexed or cataloged," *Samsung Elecs. Co. v. Infobridge Pte. Ltd.*, 929 F.3d 1363, 1369 (Fed. Cir. 2019), or locatable using "tools for customary and meaningful research," *SRI Int'l, Inc. v. Internet Sec. Sys.*, 511 F.3d 1186, 1196 (Fed. Cir. 2008).  AWS offered no such evidence.

### V. Kove's Cross-Motion to Exclude Should Be Granted.

### A. Dr. Grama Cannot Contradict the Court's Construction of "Location."

Kove moved to exclude certain of Dr. Grama's opinions regarding the S3 product because they do not apply the Court's construction of "location" and instead rely on a different, forfeited

construction.  Dkt. 699 at 10-14.  AWS's response ignores Kove's arguments.  Dkt. 714 at 22-26.
AWS does not dispute that experts cannot testify based on a construction other than the Court's.
Nor does it address Kove's argument that Dr. Grama applied a forfeited construction instead of the
Court's.  Instead, it offers a new theory—resting only on attorney argument—to resuscitate
Dr. Grama's opinions.  AWS's failure to engage with Kove's arguments is reason enough to
exclude the testimony.  And AWS's new theory should be ignored; it is nowhere in Dr. Grama's
report, and attorney argument cannot cure AWS's failure to disclose admissible expert opinions.

### 1. AWS forfeited any response to Kove's argument.

Dr. Grama's opinions as to whether a "███████" is a "location" (as construed) contradict
the Court's construction and thus are inadmissible.  Dkt. 699 at 10-14.  Although Dr. Grama
purported to apply the Court's construction, the construction he actually applied was far narrower.
*Id.* at 11-12.  And that construction is one AWS forfeited by initially proposing it, only to later
agree to the broader (and correct) construction the Court adopted.  *Id.* at 12.

AWS does not engage with (or even acknowledge) those arguments.  It does not even
acknowledge Kove's motion to exclude.  It says nothing about Dr. Grama applying its forfeited
narrow construction.  Kove's motion should be granted for that reason alone.  *Bonte v. U.S. Bank,*
*N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.");
*see also Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595-96 (7th Cir. 2017) (affirming exclusion
of evidence because the party failed to respond to arguments for excluding it).  Dr. Grama's
opinions applying the wrong construction (paragraphs 263-67 of his report), should be excluded.
*Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022) (collecting cases).

### 2. AWS's new theory is not disclosed in Dr. Grama's report.

Rather than responding to Kove's arguments, AWS appears to defend the opinions by
pivoting to a new argument regarding the term "identifier."  *See* Dkt. 714 at 22-26.  AWS seems

to say that because "identifier" and "location" are different claim terms, anything that is an "identifier" must not be a "location." *See id.* at 23-26. Otherwise, AWS says, "the asserted claims' 'location(s)' and location server 'identifier/location mappings' under the current constructions" would be "meaningless." *Id.* at 23. AWS cites no case law to support its reasoning. But more to the point, Kove does not contend (and has never contended) that something is both an "identifier" and a "location."[3] AWS's point, then, appears to be that because a ███████ is "essentially a label," it cannot be a "location"; otherwise, "so can a file name, or the claimed identifier." *Id.*

AWS's new noninfringement theory fares no better than the original. For starters, it is not in Dr. Grama's report. Dr. Grama opined only that a ██████ is not the claimed "location," not that it is the claimed "identifier." Dkt. 700 ¶ 78 (citing Ex. 8 ¶ 266); Dkt. 715 ¶ 37 (citing Ex. K59 ¶¶ 263-67). AWS does not identify anything in Dr. Grama's report making this "identifier" argument. It relies instead on fact testimony from Mr. Sorenson, an AWS engineer, who said that the ██████ has "█████████" some of which "█████████████████████████ █████████." Dkt. 714 at 24 n.118 (attribution omitted). Mr. Sorenson, a lay witness, was not opining (and would not be qualified to opine) that a ████████████████ is the "identifier" claimed in Kove's patent; he just used the word "identifies" as a matter of ordinary language. *See* Dkt. 715-19 at 137:11-25. Perhaps Dr. Grama agrees, and perhaps he could have offered such an opinion. But he did not, and so AWS's lawyers cannot now invent that opinion for him. Fed. R. Civ. P. 37(c)(1); *Sloan Valve Co. v. Zurn Indus. Inc.*, 2013 WL 4506127, at *4-5 (N.D. Ill. Aug. 23, 2013) (St. Eve, J.) (striking undisclosed expert opinions).

But even on its merits, AWS's argument does not save Dr. Grama's opinions. Like the

---

[3] For S3, Kove maps "keys" to the "identifier" claim term and "████████████" to the "location" claim term. Dkt. 687 at 24 n.105; Dkt. 700 ¶ 76; Dkt. 701 ¶¶ 29-34. For DynamoDB, Kove maps "primary keys" to "identifier" and "█████████" to "location." Dkt. 701 ¶ 47; *see also id.* ¶¶ 41-53.

original argument, it contradicts the Court's constructions and excludes preferred embodiments. *See* Dkt. 699 at 11-12. "Location" and "identifier" are construed claim terms with particular meanings. An "identifier" is "a unique encoding that identifies an entity with which zero or more location strings are associated." Dkt. 382, Ex. B at 1. And a "location" is "an encoding that is a member of a set of associations with an identifier in a location server, and that specifies where data pertaining to the entity identified by the identifier is stored." *Id.* Those definitions are irreconcilable with AWS's assertion that any generic label or name can "satisf[y] both the 'identifier' and 'location'" terms, Dkt. 714 at 26. AWS's argument also incorrectly assumes that Kove is saying that *any* label or name can be a "location," or an "identifier." Dkt. 714 at 26.

**B.      Dr. Grama's DynamoDB Opinions Apply the Wrong Construction.**

Kove moved to exclude Dr. Grama's (and AWS's) noninfringement theory for DynamoDB as contrary to the Court's claim construction. Dkt. 699 at 14-24. Under the Court's construction, location servers must "maintain[] a set of identifier/location mappings." *Id.* at 17-18. Dr. Grama's theory, however, adds an additional requirement—that location servers must *store* identifiers. *Id.*

AWS's opposition ignores the substance of Kove's arguments. AWS does not defend its newly added limitation or dispute Kove's description of Dr. Grama's arguments. Instead, AWS abandons its "location servers must store identifiers" position and shifts to a different but equally unsupported limitation—that location servers must "use," "receive," or "interact" with identifiers. *Compare* Dkt. 686 at 28 (location servers "don't store the required 'identifier'"), *with* Dkt. 714 at 28 ("location server never uses or receives the alleged identifier").

Both theories should be excluded for the same reasons. The Court's construction requires location servers to maintain identifier/location mappings. It does not require location servers to use, receive, interact with, or store identifiers. AWS neither provides any argument to the contrary nor offers any justification for its arbitrary selection of verbs. The Court should thus preclude

Dr. Grama from offering opinions based on incorrect claim constructions, including those in paragraphs 224-228 of his report. AWS's new "use" or "receive" limitation is also inadmissible for the independent reason that it is not in Dr. Grama's report. *See* Dkt. 700-59 ¶¶ 225, 231 (arguing that the DynamoDB location servers ("MNs") store only "associations," not identifiers).

### C.    AWS's New "███████████" Theory Should Be Excluded.

AWS's parent-child/master-slave noninfringement theory for DynamoDB was not timely disclosed and so should be excluded. Dkt. 699 at 46-47. Rather than disclosing this theory in its final noninfringement contentions as required, AWS first introduced it in Dr. Grama's rebuttal expert report. *Id.*; *see* LPR 3.2. AWS's failure to disclose this theory prejudiced Kove by denying Kove the opportunity to address the theory in its infringement contentions or in Dr. Goodrich's expert reports. Dkt. 699 at 47.

AWS did not grapple with this issue in its response. It does not cite anything showing timely disclosure or even claim to have disclosed the theory. *See* Dkt. 714 at 20-22. AWS focuses instead on whether it disclosed its position that DynamoDB *generally* contains hierarchies. *Id.* at 21 (claiming that AWS disclosed the theory that "the alleged location servers in DDB lack the required non-hierarchical configuration"). That has nothing to do with whether AWS disclosed the specific parent-child/master-slave theory Kove moved to exclude. It did not.

Nor does AWS dispute that the late disclosure prejudiced Kove. *See* Dkt. 714 at 20-22. That AWS now seeks summary judgment while blaming Kove for not preemptively rebutting the undisclosed argument, *see* Dkt. 686 at 19-21; Dkt. 714 at 21-22, underscores the prejudice. Dr. Grama should be precluded from testifying about the parent-child/master-slave theory, and the corresponding portions of his report (paragraphs 336-337) should be stricken. Dkt. 699 at 46-47.

### <u>CONCLUSION</u>

The Court should grant Kove's cross-motions for summary judgment and to exclude.

Dated: December 22, 2023

Respectfully submitted,

*/s/ Courtland L. Reichman*

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 560-3501

Christine E. Lehman *(pro hac vice)*
clehman@reichmanjorgensen.com
Adam Adler *(pro hac vice)*
aadler@reichmanjorgensen.com
Philip Eklem *(pro hac vice)*
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Taylor Mauze *(pro hac vice)*
tmauze@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
901 S. Mopac Expressway, Bldg. 1, Suite 300
Austin, TX 78746
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5000

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard *(pro hac vice)*
sballard@reichmanjorgensen.com
Gina H. Cremona *(pro hac vice)*
gcremona@reichmanjorgensen.com
Navid Bayar *(pro hac vice)*
nbayar@reichmanjorgensen.com
Savannah Carnes *(pro hac vice)*
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

***ATTORNEYS FOR PLAINTIFF
KOVE IO, INC.***