**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Hon. Matthew F. Kennelly |
| v. | Jury Trial Demanded |
| Amazon Web Services, Inc., | |
| Defendant. | |

**<u>KOVE IO, INC.'S LR 56.1(c)(2) RESPONSE TO AMAZON WEB SERVICES, INC.'S LR
56.1(b)(3) ADDITIONAL STATEMENT OF MATERIAL FACTS (DKT. 717)</u>**

Under Federal Rule of Civil Procedure 56 and Local Rule 56.1(c)(2), Plaintiff Kove IO,
Inc.'s ("Kove") submits this Response to Amazon Web Services, Inc.'s ("AWS") Additional
Statement of Material Facts (Dkt. 717) regarding AWS's Opposition to Plaintiff's Cross Motion
for Summary Judgment.

1.      **STATEMENT:** When the Court denied Amazon's April 5, 2019 motion to dismiss, it noted that Kove's complaint "specifically identif[ied] only one [claim] from each patent," and therefore "addresse[d] only the three identified claims": claim 18 of the '640 patent, claim 1 of the '170 patent, and claim 17 of the '978 patent.[1] Since then, Kove has asserted fourteen additional claims: 17 and 24 of the '640 Patent, claims 2, 6, 8, 12, and 15 of the '170 Patent, and claims 3, 6, 10, 14, 23, 24, and 30 of the '978 Patent.[2]

**CITATION [1]:** Dkt. 110 at 1, 3–5.

**CITATION [2]:** *E.g.*, Dkt. 687-4 at 2; Dkt. 687 at ¶ 4.

**RESPONSE: Admitted; objection**.  Kove objects to this statement as not material.

2.      **STATEMENT:** In August and September of 2022, Kove made limiting statements about the scope of the asserted claims in the '034, '035, and '036 Reexaminations that narrowed the scope of the claims to survive the reexaminations of the Asserted Patents.[3]

**CITATION [3]:** Ex. 84 (7/3/2023 J. Greene Expert Report) at ¶ 105 (citing Dkt. 687-35 (8/11/2022 Reply to Office Action in Reexam. No. 90/019,035) at 25); Dkt. 687-37 (8/4/2022 Reply to Office Action in Reexam. No. 90/019,036) at 23; Dkt. 687-32 (8/28/2022 Reply to Office Action in Reexam. No. 90/019,034) at 36.

**RESPONSE: Disputed; objection.** Kove objects to this statement as non-compliant with L.R. 56.1(d)(4) ("LR 56.1(a)(2) statements of material facts and LR 56.1(b)(3) statements of additional facts should not contain legal argument").  Kove objects to this statement as not material.  Kove objects to this statement as improper characterization of Kove's statements made in the reexamination proceedings, the Kove Patents, and the Asserted Claims.  Kove disputes AWS's characterization of Kove's statements made in the reexamination proceedings, the Kove Patents, and the Asserted Claims as incorrect, incomplete, not supported by, and contrary to the cited

evidence. The scope and interpretation of the Asserted Claims has been determined by the Court through the claim construction process, as set forth in Dkt. 484.

3.    **STATEMENT:**  During his May 2023 deposition, inventor John Overton admitted that many of the Asserted Patents' routine, well-understood, and conventional limitations were not inventive.[4] For example, Dr. Overton testified:

Amazon Atty: Do you believe you invented the distributed data-base?

Overton: I do not.

Amazon Atty: And name servers existed before your patents; right?

Overton: Yes.

Amazon Atty: And we already talked about DNS existed before your patents; right?

Overton: Yes.

Amazon Atty: So you didn't invent name servers; correct?

Overton: That's correct.

Amazon Atty: You didn't invent DNS; right?

Overton: Yes, that is correct.

Amazon Atty: Okay. You didn't invent the idea of separating data from its location; did you?

…

Overton: I don't think so.[5]

**CITATION [4]:** Dkt. 700-42 (7/3/2023 J. Greene Expert Report) at ¶ 276 (citing Ex. 85 (5/17/23 J. Overton Dep. Tr.) at 670:20-671:5, 671:17–22, 684:11–13, 686:1–12, 687:8–11, 696:6–11, 724:8–10, 724:17–22, 725:17–22, 726:1–17, 728:12–14).

**CITATION [5]:** Ex. 85 (5/17/2023 J. Overton Dep. Tr.) at 671:3–21.

**RESPONSE**: **Admitted in part and disputed in part; objection**.  Kove objects to this statement as not material.  Kove objects to this statement, as it is not a statement of fact but rather an improper

characterization of Dr. Overton's testimony. Kove disputes AWS's characterization of Dr. Overton's testimony as incorrect, incomplete, not supported by, and contrary to the cited evidence.

Admitted that the statement accurately quotes the cited lines from the May 17, 2023 deposition of Dr. Overton.

4. **STATEMENT:** Amazon's invalidity expert Mr. Greene took the aforementioned events, as well as the Court's claim constructions, into account when rendering his opinion that the Asserted Patents are ineligible under 35 U.S.C. § 101. Mr. Greene's July 2023 report states:

> I understand that early on in this case, before discovery, Kove's limiting statements in reexamination, testimony by the inventors, and the Court's claim constructions, the Court ruled on this issue, denying Amazon's motion to dismiss and finding that the claims were not ineligible under 35 U.S.C. § 101. However, after being informed of the relevant standards for making this determination and taking the intervening developments into account, it is my opinion that the asserted patents are invalid under 35 U.S.C. § 101.[6]

**CITATION [6]:** Dkt. 700-42 at ¶ 261.

**RESPONSE: Admitted in part and disputed in part; objection**. Kove objects to this statement as not material. Kove objects to this statement, as it is not a statement of fact but rather an improper characterization of Mr. Greene's July 3, 2023 report. Kove disputes AWS's characterization of Mr. Greene's July 3, 2023 report testimony as incorrect, incomplete, not supported by, and contrary to the cited evidence.

Admitted that the statement accurately quotes the cited paragraph from Mr. Greene's July 3, 2023 report.

5. **STATEMENT:** Mr. Greene analyzed the asserted patents under the Supreme Court's *Alice* test.[7] In his step one analysis, Mr. Greene relied on the Court's December 2021 Claim Construction Order.[8] His report states, for example:

> It is my opinion that the asserted claims consist of generalized steps performed on generic and conventional computers. For example, claim 17 of the '978 patent describes generalized location services…and transport protocols….[9] And this is further supported by the Court's claim construction of "location server." The Court construed this term as

"**network-attached component** that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients.' And in its ruling, the Court further cautioned construing the term to a specific kind of server. As such, in light of the patent's specification and the Court's claim construction order, a POSITA would understand that these "location servers" and "location stores" could be implemented on any conventional, standard, and well-known computer or server.[10]

**CITATION [7]:** *Id*. at ¶ 262.

**CITATION [8]:** Dkt. 484.

**CITATION [9]:** Dkt. 700-42 at ¶ 263.

**CITATION [10]:** *Id*. at ¶ 265 (emphasis in original).

**RESPONSE: Admitted in part and disputed in part; objection**. Kove objects to this statement as not material. Kove objects to this statement, as it is not a statement of fact but rather an improper characterization of Mr. Greene's July 3, 2023 report. Kove disputes AWS's characterization of Mr. Greene's July 3, 2023 report as incorrect, incomplete, not supported by, and contrary to the cited evidence.

Admitted that the statement accurately quotes the cited paragraph from Mr. Greene's July 3, 2023 report.

6. **STATEMENT:** In his step two analysis, Mr. Greene relied on evidence including Dr. Overton's deposition testimony. His report states, for example:

And in the case of all three Asserted Patents, it is my opinion that there is no inventive concept beyond the abstract idea of storing and retrieving resources through a method of correlated identifiers….[11] In all three instances, the patent simply states that the resource to location correlation is done by some undefined "protocol," "hash," or "code." And as explained above, a POSITA would understand that this resource to location correlation would be implemented by a well-known method, such as a hashing function….[12] Further, as outlined above in Section II.C, inventor John Overton has admitted that many of the routine, well-understood, and conventional limitations were not inventive: [including] transport protocols…[and] hash functions[.][13]

**CITATION [11]:** *Id*. at ¶ 273.

**CITATION [12]:** *Id*. at ¶ 275.

**CITATION [13]:** *Id.* at ¶ 276.

**RESPONSE: Admitted; objection.** Kove objects to this statement as not material.

Admitted that the statement accurately quotes the cited paragraph from Mr. Greene's July 3, 2023 report.

### Amazon's Equitable Estoppel and Waiver Defenses

7. **STATEMENT:** Kove CEO John Overton became generally aware of Amazon S3 on or around March 14, 2006 and Amazon DynamoDB on or around January 18, 2012.[14]

**CITATION [14]:** Dkt. 701-23 at 28 (Kove's Seventh Objections and Responses to Amazon's First Set of Interrogatories).

**RESPONSE: Disputed; objection.** Kove objects to this statement as not material. Kove disputes the statement as not supported by and contrary to the cited evidence. Kove's interrogatory response states that John Overton "***may*** have become generally aware of Amazon S3 at least on or around March 14, 2006," and "may have become generally aware of Amazon DynamoDB at least on or around January 18, 2012." Ex. K23 at 28 (emphasis added). Kove further disputes this statement as contrary to other record evidence. Specifically, at his deposition, Dr. Overton testified that he could not remember the specifics as to when he became aware of S3 and DynamoDB. *See* Ex. K167 (Overton 5/16/2023 Tr.) at 205:3-205:17 (S3), 210:8-20 (DynamoDB).

8. **STATEMENT:** Kove considered filing a patent infringement lawsuit against Amazon as early as November 2014.[15] Dr. Overton testified:

> Amazon Atty: When did Kove first consider filing a patent infringement lawsuit against Amazon?
>
> Overton: I don't know the specific date, but I think we considered some of that as early as maybe 2015, maybe. Again, I'm going by recollection. That can be fraught with error, but I think that's about the timeframe.[16]

Dr. Overton further testified:

> Amazon Atty: So at this time in November 2014, you and Mr. Bailey had a meeting with attorneys Rob Dellenbach and Edward King about infringement litigation; correct?
>
> …
>
> Overton: Yes.[17]

And Dr. Bailey testified:

> Amazon Atty: You testified earlier, Mr. Bailey, that the work you have done for John Overton or his companies since late 20- -- 2014 has included looking at technologies that potentially relate to the – to certain patents, is that right?
>
> Bailey: Yes.[18]

Dr. Baily further testified:

> Amazon Atty: Are you familiar with a product known as Amazon S3?
>
> Bailey: Yes.
>
> Amazon Atty: Was that one of the products or services that you looked at?
>
> Bailey: Yes.
>
> Amazon Atty: And are you familiar with an Amazon product or service known as DynamoDB?
>
> Bailey: Yes.
>
> Amazon Atty: Is that one of the products or services that you looked at?
>
> Bailey: Yes.
>
> …
>
> Amazon Atty: When did you do that work?
>
> Bailey: I don't recall exactly, but I think it was in the 2014 – late 2014-time frame.
>
> Amazon Atty: At that point in time, were you in communication with any counsel relating to this – the work that you've described? Just yes or no.
>
> Bailey: Yes.
>
> Amazon Atty: Who was that counsel?
>
> Bailey: Well, there was Robert and – there was this guy Edward. I don't remember his last name.

…

Amazon Atty: Were you in com- — were you in communication with Mr. Dellenbach going back to 2014? …

Bailey: Yes.[19]

**CITATION [15]:** *See* Dkt. 687 at ¶ 96.

**CITATION [16]:** Ex. 86 (5/16/2023 J. Overton Dep. Tr.) at 228:2–9.

**CITATION [17]:** *Id.* at 240:21–241:5.

**CITATION [18]:** Ex. 87 (10/9/2020 S. Bailey Dep. Tr.) at 46:13–18.

**CITATION [19]:** *Id*. at 47:11–48:19.

**RESPONSE: Admitted in part; disputed in part; objection.** Kove objects to this statement as not material. Kove disputes this statement as not supported by and contrary to the cited evidence. The cited evidence states that Dr. Overton did not recall when he first considered filing an infringement suit against Amazon. The remaining citations show that Dr. Overton and Mr. Bailey met with counsel, but do not demonstrate that Kove considered *filing* an infringement suit, nor that Kove considered such a suit against Amazon in particular. Admitted that the statement correctly quotes the cited materials.

9.     **STATEMENT:** In 2017 and 2018, Kove representatives, including Dr. Overton, met with Amazon on multiple occasions to try to sell XFM, a Kove product unrelated to the Kove Patents, to Amazon.[20] Kove promised that the XFM product would drive customers to Amazon and improve DynamoDB performance.[21]

**CITATION [20]:** Dkt. 687-76 at 4 (Kove's First Amended Response to AWS Interrogatory No. 18); Dkt. 687-75 (5/16/2023 J. Overton Dep. Tr.) at 324:17–20; *see also* Dkt. 687 at ¶ 94.

**CITATION [21]:** Dkt. 687-77 at KOV_00164170; *see also* Dkt. 687 at ¶ 95.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as

not material. Kove disputes this statement as not supported by the cited evidence, which does not support the characterization of a "promise." *See* Ex. K156 (KOV_00164168) at –164169 (describing "5 potential ways that Kove External Memory could add to Amazon's mission"). Kove disputes that the deposition testimony supports the proposition, as Dr. Overton simply confirmed that the document had been read correctly. Otherwise admitted.

10. **STATEMENT:** In its 2017-18 communications with Amazon, Kove never mentioned the Kove Patents, or any allegations of infringement, despite having been considering filing patent infringement lawsuits for four years. Dr. Overton testified:

> Amazon Atty: And during the course of Kove's communications with Amazon Web Services in 2017 and 2018, Kove never identified the '978, '170, or '640 Patents to Amazon; right?
>
> Overton: That is correct.[22]

Dr. Overton further testified:

> Amazon Atty: So you began talking to law firms about potential patent infringement litigation before you had the meetings and communications with Amazon in 2017 and 2018; right?
>
> Overton: Yes.[23]

**CITATION [22]:** Dkt. 687-75 (5/16/2023 J. Overton Dep. Tr.) at 325:5–9.

**CITATION [23]:** *Id*. at 329:21–330:2.

**RESPONSE: Admitted in part, disputed in part, objection**. Kove objects to this statement as not material. Kove disputes the characterization of the cited deposition testimony as not supported by the evidence. Specifically, the quoted language does not support the proposition that "Kove never mentioned the Kove Patents, or any allegations of infringement." Dr. Overton stated that *he* did not mention potential infringement, but he also stated that he did not know whether another Kove employee mentioned potential infringement. *See* Dkt. 687, Ex. 75 (Overton 5/16/2023 Tr.) at 325:10-326:4. Further, the quoted language does not support the statement that Kove "ha[d]

been considering filing patent infringement lawsuits for four years," as discussing potential litigation does not amount to "considering filing" litigation, nor does the record support that it had been "four years" before 2017.  The quoted language also does not support the use of the word "despite," as the quoted language does not suggest there is or should be a connection between Kove's efforts to market to AWS and Kove's privileged discussions with its attorneys regarding potential litigation.  Admitted that the statement accurately quotes the cited portion of Dr. Overton's deposition transcript.

11.    **STATEMENT:**  Kove filed this lawsuit against Amazon on December 12, 2018, more than twelve years after becoming aware of S3 and more than six years after becoming aware of DynamoDB.[24] Dr. Overton testified:

> Amazon Atty: March 14, 2006, is over a dozen years before you filed this lawsuit; right?
>
> Overton: Uh-huh, yes.
>
> Amazon Atty: So you waited a dozen years after you may have become aware of S3 to file this lawsuit; right?
>
> Overton: Yes.[25]

Dr. Overton further testified:

> Amazon Atty: January 18, 2012 is more than six years before you filed this lawsuit against Amazon; right?
>
> Overton: Yes.
>
> Amazon Atty: So you waited over six years after Amazon launched DynamoDB to sue Amazon; right?
>
> Overton: Yes.[26]

**CITATION [24]:** Dkt. 1.

**CITATION [25]:** Ex. 86 (5/16/2023 J. Overton Dep. Tr.) at 207:16–22.

**CITATION [26]:** *Id.* at 210:21–211:5.

**RESPONSE: Admitted; objection.**  Kove objects to this statement as not material.  Admitted

that the statement accurately quotes the cited portion of Dr. Overton's deposition transcript.

12. **STATEMENT:** As Amazon's corporate witness Tim Rath testified, Amazon could have implemented a variety of non-infringing alternatives.[27] In discussing these non-infringing alternative, Amazon's non-infringement expert Dr. Grama stated:

> I have determined that all of them would have been both easy to implement with only coding changes and no additional hardware…. Based on my analysis of these alternatives, Amazon could have implemented the alternatives for S3 in no more than 20 days of a senior programmer's time. And Amazon could have implemented the alternatives for DDB in no more than 34 days of a senior programmer's time."[28]

**CITATION [27]:** Ex. 88 (5/5/2023 T. Rath Dep. Tr.) at 241:11-14.

**CITATION [28]:** Ex. 89 (8/18/2023 A. Grama Expert Report) at ¶ 523.

**RESPONSE: Disputed; objection.** Kove objects to this statement as not material to AWS's equitable estoppel and waiver defenses. Kove disputes this statement as not supported by the cited evidence. The cited testimony from Tim Rath simply states: "In those, they were all – they were all, you know, given the premise of infringement, could we have done something different. However, the premise of infringement that I became aware of –". Dkt. 715-7, Ex. 88 (5/5/23 Rath Tr.) at 241:11-14. The cited language from Dr. Grama is not admissible and may not be considered, as it is unfounded and unsupported *ipse dixit*, and so does not satisfy the admissibility requirements of Rule 702. Moreover, Dr. Grama is not qualified to testify as to how long it would take AWS to implement any changes, as he lacks sufficient industry experience. This statement is further rebutted by other record evidence, including the report of Dr. Goodrich, who testifies that AWS's purported noninfringing alternatives are neither noninfringing nor technically acceptable. *See* K52 (Goodrich Report) ¶¶ 296-345.

## Amazon's Inequitable Conduct Defense

13. **STATEMENT:** Kove produced a copy of a 1997 article by David Karger et al. entitled "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot

Spots on the World Wide Web" ("Karger") that was in Dr. Overton's possession since at least January 3, 1999.[29] Dr. Overton testified:

> Amazon Atty: There's a page of metadata attached to the front of Exhibit 87. Do you see that, sir?
>
> Overton: I do.
>
> Amazon Atty: And then if you turn to the next page, do you see that this is a paper called "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hotspots on the World-wide Web"?
>
> Overton: Yes.
>
> Amazon Atty: Are you familiar with this paper?
>
> Overton: Vaguely.
>
> Amazon Atty: Turning back to the front page of this document. Do you see there that there's a custodian ID about four lines down?
>
> Overton: Yes.
>
> Amazon Atty: And this indicates that you were the custodian of this document. Do you understand that?
>
> Overton: Okay, sure.
>
> Amazon Atty: There's a created date time about three quarters of the way down the page. Do you see that?
>
> Overton: I do.
>
> Amazon Atty: And the created date time is January 3, 1999, at 2:52 p.m.; right?
>
> Overton: I see that.[30]

**CITATION [29]:** Ex. 90 at 1 (KOV_00039222-31).

**CITATION [30]:** Ex. 85 (5/17/2023 J. Overton Dep. Tr.) at 709:12–710:15.

**<u>RESPONSE</u>: Admitted in part, disputed in part.** Kove disputes the statement that Karger was "in Dr. Overton's possession since at least January 3, 1999" as unsupported by the cited evidence. The cited evidence and testimony speak to the date the document was created; it does not speak to

when the document came into Dr. Overton's possession. Admitted that this statement accurately quotes the cited portion of Dr. Overton's deposition transcript.

14.     **STATEMENT:** Dr. Overton demonstrated further knowledge of Karger's work at MIT in a draft letter to investor Paul Carmichael dated October 31, 2005. The letter states:

> Combined, the NDTP (2000) case predates all the MIT and Stanford research (do a Google search on 'Distributed Hash Table', and you'll see hundreds of thousands of hits with earliest dates in 2001).[31]

**CITATION [31]:** Ex. 91 at 2 (KOV_00057828).

**RESPONSE: Admitted in part, disputed in part.** Kove disputes the statement that "Dr. Overton demonstrated further knowledge of Karger's work at MIT" as unsupported by the cited evidence, as there is no indication that Dr. Overton's letter pertains to Karger, as opposed to any one of the many researchers at MIT and Stanford. Indeed, Dr. Overton's letter references the breadth of research in the field by referencing "hundreds of thousands of hits" on Google. Other than two typographical errors, Kove admits that this statement accurately quotes the cited portion of Dr. Overton's 10/31/2005 draft letter to investor Paul Carmichael.

15.     **STATEMENT:** Dr. Overton claimed that he wouldn't have found Karger relevant when prosecuting the Asserted Patents. He testified:

> Amazon Atty: You were able to determine on your own that that paper wouldn't be material to the examiner's examination of your application; right?

> Overton: I don't know that I'm expert in any of this. But when I looked at that, it would never occur to me that that would be germane because that's about caching and one of the critical components, not the only one, but one very foundational component of our patents and of the technology is to eliminate caching. You can deploy it that way but that's not the part that's the most distinctive.

> Amazon Atty: And that's your view; right?

> Overton: I think it's – yes, yes, that's my view.[32]

**CITATION [32]:** Dkt. 687-61 (5/17/2023 J. Overton Dep. Tr.) at 732:22–733:15.

**RESPONSE: Admitted in part, disputed in part**. Kove admits that Dr. Overton believed Karger immaterial. Other than the typographical error in the first quoted sentence, Kove admits that this statement accurately quotes the cited portion of Dr. Overton's deposition transcript.

16.    **STATEMENT:** Amazon's expert Mr. Greene opined that Karger was a material reference and that Drs. Overton and Bailey would have understood its materiality. Mr. Greene's invalidity report states:

> The inventors of the Asserted patents were familiar with Karger and Sherman's consistent hashing work. Dr. Overton wrote a draft letter to Paul Carmichael claiming that the patents-in-suit include "method claims and specific system claims regarding distributed hash tables." In this letter, Dr. Overton demonstrated his knowledge of this work being done at MIT (where Dr. Karger is a professor) regarding distributed hash tables and systems, but claimed that the work only post-dated the patents-in-suit. Even further, Dr. Overton was at least aware of Karger's consistent hashing system since at least January 3, 1999. Specifically, co-inventor Overton had a copy of Karger's article…in his files at least since that date. In my view this article and Karger's work at MIT are material to the subject matter of the applications that became the Asserted Patents….[33] [A] POSITA at this time would have considered this article highly relevant to the purported invention described in the Asserted Patents.[34]

**CITATION [33]:** Dkt. 700-42 at ¶ 231.

**CITATION [34]:** Ex. 84 (7/3/2023 J. Greene Expert Report) at ¶ 232.

**RESPONSE: Admitted in part, disputed in part; objection.** Kove objects to this statement as not material to AWS's inequitable conduct defense. To prevail, AWS must prove by clear and convincing evidence that the Kove inventors knew of Karger, knew it was material, and made a deliberate decision to not disclose it to the PTO. What AWS's expert subjectively believes has no bearing on what the Kove inventors subjectively believed at the relevant time. Further, the cited language from Mr. Greene is not admissible and may not be considered, as it is unfounded and unsupported *ipse dixit*, and so does not satisfy the admissibility requirements of Rule 702. Other than the typographical error in the first quoted sentence, Kove admits that this statement accurately quotes the cited paragraph of Mr. Greene's report.

17.    **STATEMENT:** Kove's infringement expert opined that Karger was a well-known article and didn't dispute its status as prior art. Dr. Goodrich testified:

> Amazon Atty: All right. So would you at least agree that this Karger paper was well-known in the world of distributed algorithms, right?
>
> …
>
> Goodrich: Yeah. I don't know if it would be rising to the level of something that just would be known to a person of ordinary skill in the art generally. But I'm not disputing this as prior art, if that's your question.[35]

**CITATION [35]:** Ex. 92 (9/9/2023 M. Goodrich Dep. Tr.) at 265:17–266:4.

**RESPONSE: Admitted in part, disputed in part; objection**.  Kove objects to this statement as not material to AWS's inequitable conduct defense.  Kove disputes that this statement accurately quotes the cited portion of Dr. Goodrich's report.  The cited exhibit quotes Dr. Goodrich as testifying "Yeah**,** I don't know if it would be rising to the level of something that just would be known . . ."  Replacing the comma with a period changes the meaning of the sentence. With a comma, Dr. Goodrich's "Yeah**,**" is a conversational filler, whereas a "Yeah**.**" is an unconditional assent to AWS's question.  As such, Kove disputes that the quoted passage supports the statement that "Kove's infringement expert opined that Karger was a well-known article."  Kove admits that Dr. Goodrich testified that he did not dispute Karger's status as prior art.

### Double Patenting

18.    **STATEMENT:** In reexamination proceedings, Kove has repeatedly used materially the same language to describe the technology of the '978, '640, and '170 patents, with pages of Kove's responses containing nearly identical "Overview[s] of the Technology."[36]

**CITATION [36]:** *E.g.*, Dkt. 700-134 (Reply to Office Action in '036 Reexam.) at 7–9; Dkt. 700-157 (Reply to Office Action in '034 Reexam.) at 8–11; Dkt. 700-131 (Reply to Office

Action in '035 Reexam.) at 8–11; Dkt. 700-140 (Reply to Office Action in '109 Reexam.) at 9–10; s*ee also* Dkt. 700-42 at ¶ 288.

**RESPONSE: Disputed; objection**.  Kove objects to this statement as not material.  Kove objects to this statement as improper characterization of Kove's statements made in the reexamination proceedings, the Kove Patents, and the Asserted Claims.  Kove disputes AWS's characterization of Kove's statements made in the reexamination proceedings, the Kove Patents, and the Asserted Claims as incorrect, incomplete, not supported by, and contrary to the cited evidence.

19.     **STATEMENT:** In his invalidity expert report, Mr. Greene opines that "there are no material differences between the construction of claim terms in the '978 Patent and the '640 and '170 Patents" because the only term that differs between the '978 patent and the '640 and '170 patents is "location information." And the construction of "location information" in the '970 patent "is an explicitly disclosed subset of the 'location information' claimed in the '640 and '170 patents."[37]

**CITATION [37]:** Dkt. 700-42 at ¶¶ 284–86.

**RESPONSE: Admitted in part, disputed in part; objection**.  Kove objects to this statement as not material.  Kove objects to this statement as improper characterization of Mr. Greene's statements in Mr. Greene's July 3, 2023 Expert Invalidity Report.  Kove disputes AWS's characterization of Mr. Greene's statements in Mr. Greene's July 3, 2023 Expert Invalidity Report as incorrect, incomplete, not supported by, and contrary to the cited evidence.

Other than a typographical error to the patent number in the last sentence (changing '978 to '970), Kove admits that the statement accurately quotes the cited paragraphs from Mr. Greene's July 3, 2023 Expert Invalidity Report.

20.     **STATEMENT:** Mr. Greene goes on to opine that "each and every claim limitation in the asserted '978 Patent claims is explicitly disclosed by the '640 Patent and '170 Patent," which he explains by providing color-coded charts that shows the explicit disclosure of the '978 patent's claims in the '640 and '170 patents, respectively.[38]

**CITATION [38]:** *Id*. at ¶¶ 287–88; Dkt. 700-9; Dkt. 700-10.

**RESPONSE: Admitted in part, disputed in part; objection**. Kove objects to this statement as not material. Kove objects to this statement as improper characterization of Mr. Greene's statements in Mr. Greene's July 3, 2023 Expert Invalidity Report. Kove disputes AWS's characterization of Mr. Greene's statements in Mr. Greene's July 3, 2023 Expert Invalidity Report as incorrect, incomplete, not supported by, and contrary to the cited evidence.

Admitted that the statement accurately quotes the cited paragraphs from Mr. Greene's July 3, 2023 Expert Invalidity Report.

### Invalidity Based on Prior Art

21.     **STATEMENT:** DNS and BIND notes that "whenever a feature is available only in the 4.8.3, 4.9, or 8.1.2 version [of BIND], [the authors] try to point out which version does what."[39]

**CITATION [39]:** Dkt. 700-98 at xi.

**RESPONSE: Admitted in part, disputed in part; objection.** Kove objects to this statement as not material. Kove disputes that the statement accurately reflects the contents of *DNS and BIND* (Dkt. 700-98) at xi. The quoted statement is incomplete. The complete sentence in *DNS and BIND* states: "Whenever a feature is available only in the 4.8.3, 4.9, or 8.1.2 version, or there is a difference in the behavior of the versions, we try to point out which version does what." *DNS and BIND* (Dkt. 700-98) at xi.

22.     **STATEMENT:** DNS systems had been in use for more than a decade prior to BIND 8.1 becoming available and were well known by those skilled in the art, as RFC 1034 described a DNS system in November 1987.[40]

**CITATION [40]:** See Dkt. 700-102.

**RESPONSE: Admitted in part, disputed in part; objection.** Kove objects to this statement as not material. Kove objects to this statement because "DNS systems" is undefined, does not refer to any actual systems, and does not refer to any systems asserted as prior art in this case. Kove disputes this statement insofar as it fails to identify the "DNS systems" it refers to (beyond the "DNS system" purportedly described in RFC 1034) and does not substantiate how those "DNS systems" allegedly were "well known by those skilled in the art." Kove disputes this statement insofar as AWS fails to identify the "DNS system" purportedly described in RFC 1034. Kove admits that RFC 1034 says "November 1987" in the header area.

23.     **STATEMENT:** RFC 1034 recognizes that "the components of the official protocol [of DNS] are expected to stay essentially unchanged and operate as a production service," regardless of any experimentation on the system.[41]

**CITATION [41]:** *Id.* at 1.

**RESPONSE: Disputed; objection.** Kove objects to this statement as not material. Kove objects to this statement, as it is not a statement of fact but rather a characterization of the contents of RFC 1034 not appropriate for summary judgment. Because AWS purports to characterize the contents of RFC 1034, Kove refers the Court to RFC 1034 as its basis for opposing this statement. Dkt. 700-102 at 1.

Disputed as to the phrase "regardless of any experimentation on the system." Page 1 of RFC 1034 does not suggest that the components and operation of "the official protocol" are

unaffected by experimentation. To the contrary, it suggests that experimentation could affect the components and operation of "the official protocol." Dkt. 700-102 at 1 ("Thus while the components of the official protocol are expected to stay essentially unchanged and operate as a production service, experimental behavior should always be expected in extensions beyond the official protocol. Experimental or obsolete features are clearly marked in these RFCs, and such information should be used with caution.").

24.     **STATEMENT:** Sherman and Karger/Sherman do not contain an introduction to DNS or otherwise define DNS before describing it as part of the Cache Resolver System.[42]

**CITATION [42]:** *See generally* Dkt. 700-101; Dkt. 700-103.

**RESPONSE: Disputed; objection.** Kove objects to this statement as not material with respect to the phrase "Sherman and Karger/Sherman do not contain an introduction to DNS." Kove disputes this statement because Karger/Sherman defines "DNS" to mean "Domain Name System" and refers specifically to "DNS servers . . . running a copy of unmodified BIND 8.0 distribution, an implementation of DNS protocol." Dkt. 700-101 at 4, 9, 10. Kove further disputes this statement because Sherman explains that "[t]he primary function of our DNS system is to resolve the virtual names generated by the users' Java Script function to the actual physical IP addresses of the caches," and that "[w]e use a number of DNS servers each running a copy of unmodified BIND 8.0 distribution (BIND is an implementation of DNS protocol)." Dkt. 700-103 at 37.

25.     **STATEMENT:** Each of the references describing DNS predates the earlier of Kove's two asserted priority dates.[43]

**CITATION [43]:** *See* Dkt. 700-98; Dkt. 700-101; Dkt. 700-102; Dkt. 700-103.

**RESPONSE: Disputed; objection.** Kove objects to the term "DNS," as undefined and lacking any discernible meaning. Kove objects to this statement because AWS does not specify the way

in which each reference allegedly "predates" Kove's priority dates. Kove disputes the statement as not supported by the cited evidence; AWS has not demonstrated that the cited evidence "predates" Kove's priority dates under any applicable legal standard.

26. **STATEMENT:** Boukobza's patent application was filed on June 27, 1997—more than a year be-fore the earlier of Kove's asserted priority dates in October 1999—which Mr. Greene notes in his report, and it shares no named inventors with any of the '978, '640, or '170 patents.[44]

**CITATION [44]:** *Compare* Dkt. 700-1 (Boukobza) *with* Dkt.700-4 ('640 patent) *and* Dkt.700-5 ('978 patent) *and* Dkt.700-6 ('170 patent); *see also* Dkt. 700-42 at ¶ 204.

**RESPONSE: Admitted; objection.** Kove objects to this statement as not material because it does not support the status of Boukobza as prior art under any of AWS's disclosed theories. AWS's invalidity contentions and Rule 26 disclosures allege only that Boukobza is prior art under 35 U.S.C. §§ 102(a), (b) and/or (f), Dkt. 700-19 at 237; Dkt. 700-49 at 1.

27. **STATEMENT:** The Patent Office has repeatedly found Boukobza to be prior art to the '978 patent in reexamination proceedings.[45]

**CITATION [45]:** *E.g.*, Dkt. 700-96 at 2–3; Dkt. 687-9 at 2–3.

**RESPONSE: Disputed; objection.** Kove objects to this statement as not material. Kove disputes that the Patent Office made findings regarding Boukobza with respect to any particular statutory prior art provision.

28. **STATEMENT:** Karger '618's patent application was filed on March 13, 1998— more than a year before the earlier of Kove's asserted priority dates in October 1999—which Mr. Greene notes in his report, and it shares no named inventors with any of the '978, '640, and '170

patents.[46]

**CITATION [46]:** *Compare* Dkt. 700-2 (Karger '618) *with* Dkt. 700-4 ('640 patent) *and* Dkt. 700-5 ('978 patent) *and* Dkt. 700-6 ('170 patent); *see also* Dkt. 700-42 at ¶ 223.

**RESPONSE: Admitted; objection.** Kove objects to this statement as not material because it does not support the status of Karger '618 as prior art under any of AWS's disclosed theories. AWS's invalidity contentions and Rule 26 disclosures allege only that Karger '618 is prior art under 35 U.S.C. §§ 102(a), (b) and/or (f), Dkt. 700-12 at 1; Dkt. 700-43 at 1.

29. **STATEMENT:** Karger '420's patent application was filed on June 2, 1998—more than a year be-fore the earlier of Kove's asserted priority dates in October 1999—which Mr. Greene notes in his report, and it shares no named inventors with any of the '978, '640, and '170 patents.[47]

**CITATION [47]:** *Compare* Dkt. 700-3 *with* Dkt. 700-4 ('640 patent) *and* Dkt. 700-5 ('978 patent) *and* Dkt. 700-6 ('170 patent); *see also* Dkt. 700-42 at ¶ 223.

**RESPONSE: Admitted; objection.** Kove objects to this statement as not material because it does not support the status of Karger '420 as prior art under any of AWS's disclosed theories. AWS's invalidity contentions and Rule 26 disclosures allege only that Karger '420 is prior art under 35 U.S.C. §§ 102(a), (b) and/or (f), Dkt. 700-12 at 1; Dkt. 700-43 at 1.

30. **STATEMENT:** Mr. Greene has concluded that Steen is prior art under § 102(a) and (b) because it is a printed publication published by someone other than the patent's inventors that was available to the public by at least January 1998. He opines that

> Steen is a printed publication written by Maarten van Steen. It was published in the January 1998 edition of IEEE Communications Magazine with the title "Locating Objects in Wide-Area Systems." IEEE Communications Magazine was well known to those of ordinary skill in the art at the time of its publishing in January of 1998. It's [sic] inclusion in the January 1998 issue of IEEE Communications Magazine is confirmed by ACM Digital library, which lists it in the table of contents for the issue. Those in the art were reading

and even citing to Steen throughout 1998, confirming its public availability. Thus, Steen was a publicly available printed publication no later than January 31, 1998. As a result, Steen is a printed publication that is prior art under 35 U.S.C. § 102(b) because it published more than one year prior to the earliest possible priority date of the Asserted Patents (September 14, 1999) and under § 102(a) because an author other than the named inventors published it before that date.[48]

**CITATION [48]:** Dkt. 700-42 at ¶ 176 (citations omitted); Dkt. 700-104; Ex. 93 (7/3/2023 J. Greene Expert Report, Ex. 32).

**RESPONSE: Admitted in part, disputed in part.** Kove admits that Mr. Greene opines that Steen is prior art under § 102(a) and (b) as set forth in ¶ 176 of his expert report. Kove disputes that Mr. Greene's opinion and the sources he cites establish that Steen is a printed publication that was publicly accessible for the reasons set forth in Kove's Opposition to AWS's Motion for Summary Judgment and Cross Motions for Summary Judgment and to Exclude (Dkt. 699 at 79-80) and in Kove's reply.

31.     **STATEMENT:** In that opinion, Mr. Greene cites to four different papers published in 1998 that contemporaneously cite to Steen, confirming that those skilled in the art were able to access it.[49]

**CITATION [49]:** Dkt. 700-42 at ¶ 176 n.233 (citing the following reexamination request exhibits: "An Efficient Mobility Management Strategy for Personal Communication Systems," Bejerano, Y. et al., Dept. of Electrical Engineering, Technion – Israel Institute of Technology, October 25, 1998; "Lightweight Crash Recovery in a Wide-area Location Service," Ballintijn, C. et. al, VU Technical Report, No. IR-451, October 1998; "An Efficient Hierarchical Scheme for Locating Highly Mobile Users," Pitoura, E. et al., Dept. of Computer Science, Univ. of Ioannina, (1998); "Active Naming: Programmable Location and Transport of Wire-Area Resources," Vahdat, A. et al. (1998)).

**RESPONSE: Admitted in part, disputed in part; objection.** Kove admits that Mr. Greene cites four different papers that purport to reference Steen. To the extent this statement characterizes those four papers as "published in 1998," Kove disputes that AWS or Greene has cited evidence sufficient to establish that fact by clear and convincing evidence and therefore disputes it and objects to it as a characterization of those papers or a legal conclusion not appropriate for a statement of facts. To the extent this statement characterizes the four papers as "confirming that those skilled in the art were able to access [Steen]," Kove disputes that AWS or Greene has defined "those skilled in the art" or has cited evidence sufficient to establish by clear and convincing evidence that the papers' authors are or may represent "those skilled in the art" and therefore disputes it. To the extent this statement characterizes the four papers as "confirming that those skilled in the art were able to access [Steen]," Kove objects to this statement as a characterization of accessibility or a legal conclusion not appropriate for a statement of facts.

32. **STATEMENT:** Kove's expert, Dr. Goodrich, agrees that IEEE, the organization that publishes the magazine in which Steen appeared, has been a well-known organization in the art for more than thirty years.[50]

**CITATION [50]:** Dkt. 700-51 at 664:22–665:1.

**RESPONSE: Admitted in part, disputed in part; objection.** Kove objects to this statement as not material. Admitted that Dr. Goodrich agreed that "IEEE is a well-known organization for over 30 years." Dkt. 700-51 at 664:22–665:2. Kove disputes that Dr. Goodrich agreed to anything related to the alleged publication of Steen, "the art," or whether IEEE was a well-known organization to those "in the art." *See id.*

33.    **STATEMENT:** The Patent Office has also concluded in reexamination proceedings that Steen is prior art to each of the '978, '640, and '170 patents.[51]

**CITATION [51]:** Dkt. 612-1 (3/29/23 '165 Reexam. Order) at 3; Dkt. 618-1 (4/4/23 '166 Reexam. Order) at 14; Dkt. 648-1 (5/16/23 '162 Reexam. Order) at 3.

<u>**RESPONSE**</u>**: Disputed; objection.** Kove objects to this statement as not material. Kove disputes this statement as not supported by the cited evidence. The cited materials do not show that the Patent Office has evaluated, analyzed, or reached any reasoned conclusions as to the prior art status of Steen with respect to any of the Kove Patents.

Dated: December 22, 2023

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 560-3501

Christine E. Lehman *(pro hac vice)*
clehman@reichmanjorgensen.com
Adam Adler *(pro hac vice)*
aadler@reichmanjorgensen.com
Philip Eklem *(pro hac vice)*
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Taylor Mauze (*pro hac vice*)
tmauze@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
901 S. Mopac Expressway, Bldg. 1, Suite 300
Austin, TX 78746
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

Respectfully submitted,

*/s/ Courtland L. Reichman*

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5000

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard *(pro hac vice)*
sballard@reichmanjorgensen.com
Gina H. Cremona *(pro hac vice)*
gcremona@reichmanjorgensen.com
Navid Bayar *(pro hac vice)*
nbayar@reichmanjorgensen.com
Savannah Carnes *(pro hac vice)*
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

***ATTORNEYS FOR PLAINTIFF
KOVE IO, INC.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of December, 2023, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Courtland L. Reichman*
Courtland L. Reichman