**HIGHLY CONFIDENTIAL**


**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | |
| v. | Hon. Matthew F. Kennelly |
| Amazon Web Services, Inc., | Jury Trial Demanded |
| Defendant. | |


**KOVE IO, INC.'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE
AND MOTION TO EXCLUDE CERTAIN EXPERT OPINIONS**

**HIGHLY CONFIDENTIAL**

## TABLE OF CONTENTS

Page

I. Motion for Sanctions For Spoliation of Evidence ............................................................. 1

    A. Background ................................................................................................................. 2

        1. AWS Has Long Known That Performance Metrics Are Relevant. ..................... 2

        2. AWS Did Not Take Reasonable Steps To Retain Key Metrics. ......................... 3

        3. AWS Hindered Kove's Ability to Discover the Spoliation. ............................... 4

        4. AWS's Expert Attacks Kove For The Absence of The Data It Spoliated. .......... 5

    B. Argument .................................................................................................................... 5

        1. AWS Spoliated Relevant Metrics After It Knew They May Be Discoverable. ..... 6

        2. AWS's Spoliation Prejudices Kove. .................................................................. 9

        3. Kove Requests Relief Tailored To Mitigate Its Prejudice. ............................... 10

II. Motion To Exclude Certain Expert Opinions ................................................................. 11

    A. Inadmissible Damages Opinions .............................................................................. 12

        1. The Court Should Exclude Bennis's and Grama's Opinions Relating to Non-Comparable Third-Party Transactions. ............................................................. 12

        2. Bennis's Opinions On AWS's Past Licenses Should Be Excluded. .................... 13

        3. Grama's Opinions on Technical Comparability Should Be Excluded. ............... 15

        4. Bennis's Opinions On Econnectix Transactions Should Be Excluded. .............. 16

        5. Undisclosed Non-Infringing Alternatives Should Be Excluded. ....................... 17

    B. Inadmissible Non-Infringement Opinions ................................................................ 18

        1. AWS's Untimely Non-Infringement Arguments Should Be Excluded. .............. 18

        2. The Federal Circuit Bars Grama's "Practicing The Prior Art" Defense. ............ 21

        3. Grama's Immaterial "Hierarchy" Opinions Should Be Excluded. ..................... 22

i

       4.     Grama Should Not Be Permitted To Provide New Claim Constructions............. 23

   C.  Inadmissible Invalidity Opinions ...................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*,
 889 F.3d 735 (Fed. Cir. 2018) ................................................................21

*Adasa Inc. v. Avery Dennison Corp.*,
 55 F.4th 900 (Fed. Cir. 2022) ........................................................15, 16

*Allen v. Bake-Line Prods.*,
 2001 WL 883693 (N.D. Ill. Aug. 6, 2001) ............................................18

*AVM Techs., LLC v. Intel Corp.*,
 927 F. Supp. 2d 139 (D. Del. 2013) ......................................................13

*Ayers v. Heritage-Crystal Clean, LLC*,
 2022 WL 2355909 (N.D. Ill. June 1, 2022) ..........................................11

*Baxalta Inc. v. Bayer Healthcare LLC*,
 513 F. Supp. 3d 426 (D. Del. 2021) ......................................................21

*Baxter Healthcare Corp. v. Spectramed, Inc.*,
 49 F.3d 1575 (Fed. Cir. 1995) ..............................................................21

*Baxter Int'l, Inc. v. CareFusion Corp.*,
 2020 WL 10486005 (N.D. Ill. Aug. 12, 2020) ......................................19

*Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*,
 2021 WL 6034269 (E.D. Va. Dec. 10, 2021), *objections overruled in relevant part*, 2022 WL 21502725 (E.D. Va. July 15, 2022) ........................14, 15

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
 967 F.3d 1353 (Fed. Cir. 2020) ............................................................12

*Biscotti Inc. v. Microsoft Corp.*,
 2017 WL 2607882 (E.D. Tex. May 25, 2017) ........................................14

*Blackhawk Molding Co. v. Portola Packaging, Inc.*,
 422 F. Supp. 2d 948 (N.D. Ill. 2006) ....................................................22

*Cordis Corp. v. Bos. Sci. Corp.*,
 561 F.3d 1319 (Fed. Cir. 2009) ............................................................24

*Covarrubias v. Wendy's Rest.*,
　2021 WL 4258701 (N.D. Ill. June 21, 2021) ........................................................................11

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*,
　424 F.3d 1168 (Fed. Cir. 2005)............................................................................................23

*Daubert v. Merrell Dow Pharms., Inc.*,
　509 U.S. 579 (1993)..............................................................................................21, 22, 23

*DR Distrib., LLC v. 21 Century Smoking, Inc.*,
　513 F. Supp. 3d 839 (N.D. Ill. 2021) ....................................................................6, 8, 9, 11

*Estrada v. Pao Pao, Inc.*,
　2021 WL 8202677 (N.D. Ill. Oct. 25, 2021)........................................................................11

*Franklin v. Howard Brown Health Ctr.*,
　2018 WL 4784668 (N.D. Ill. Oct. 4, 2018)..........................................................................11

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
　318 F. Supp. 1116 (S.D.N.Y. 1970) .......................................................................................6

*Hollis v. CEVA Logistics U.S., Inc.*,
　603 F. Supp. 3d 611 (N.D. Ill. 2022) ...........................................................................*passim*

*Intelligent Verification Sys., LLC v. Microsoft Corp.*,
　2015 WL 1518099 (E.D. Va. Mar. 31, 2015) ................................................................12, 14

*Jones v. Bremen High Sch. Dist. 228*,
　2010 WL 2106640 (N.D. Ill. May 25, 2010) .........................................................................6

*Konica Minolta Bus. Sols., USA Inc. v. Lowery Corp.*,
　2016 WL 4537847 (E.D. Mich. Aug. 31, 2016) .....................................................................7

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
　694 F.3d 51 (Fed. Cir. 2012)....................................................................................13, 14, 16

*Liquid Dynamics Corp. v. Vaughan Co.*,
　449 F.3d 1209 (Fed. Cir. 2006).............................................................................................24

*Lucent Techs., Inc. v. Gateway, Inc.*,
　580 F.3d 1301 (Fed. Cir. 2009).......................................................................................12, 15

*M2M Sols. LLC v. Enfora, Inc.*,
　167 F. Supp. 3d 665 (D. Del. 2016)......................................................................................15

iv

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008)......................................................................................23

*Oliver v. Amazon*.com,
  2023 WL 3322382 (E.D. Wis. May 8, 2023)..................................................................7, 8

*Pable v. Chicago Transit Authority*,
  2023 WL 2333414 (N.D. Ill. Mar. 2, 2023).......................................................................11

*Pactiv Corp. v. Multisorb Techs., Inc.*,
  2013 WL 2384249 (N.D. Ill. May 29, 2013)......................................................................19

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
  849 F.3d 1360 (Fed. Cir. 2017)........................................................................13, 15, 17

*Promega Corp. v. Applied Biosystems, LLC*,
  2013 WL 9988881 (N.D. Ill. May 28, 2013)......................................................................23

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010)...........................................................................................12

*Riles v. Shell Expl. & Prod. Co.*,
  298 F.3d 1302 (Fed. Cir. 2002).........................................................................................13

*Salgado by Salgado v. Gen. Motors Corp.*,
  150 F.3d 735 (7th Cir. 1998) .............................................................................................12

*Sprint Commc'ns Co. v. Comcast IP Holdings, LLC*,
  2015 WL 456154 (D. Del. Jan. 30, 2015)......................................................................14, 15

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
  279 F.3d 1357 (Fed. Cir. 2002).........................................................................................21

*Torgersen v. Siemens Bldg. Tech., Inc.*,
  2021 WL 2072151 (N.D. Ill. May 24, 2021).....................................................................11

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
  609 F.3d 1308 (Fed. Cir. 2010).........................................................................................12

*Zimmer Surgical, Inc. v. Stryker Corp.*,
  365 F. Supp. 3d 466 (D. Del. 2019)..................................................................................15

**State Cases**

*In re Google Play Store Antitrust Litig.*,
  No. 3:21-md-2981-JD, Dkt. 469 (N.D. Cal. March 28, 2023)...........................................8, 9

**Rules**

Fed. R. Civ. P. 2.3 ..................................................................................................................19

Fed. R. Civ. P. 26(a) ................................................................................................11, 12, 18

Fed. R. Civ. P. 26(a)(2)(B) ....................................................................................................11

Fed. R. Civ. P. 26(e)(2) ..........................................................................................................18

Fed. R. Civ. P. 37 ......................................................................................................8, 10, 18

Fed. R. Civ. P. 37(c) ...............................................................................................................11

Fed. R. Civ. P. 37(c)(1) ....................................................................................................11, 18

Fed. R. Civ. P. 37(e) .................................................................................................................6

Fed. R. Civ. P. 37(e)(1) .............................................................................................6, 9, 10, 11

Fed. R. Civ. P. 403 ..................................................................................................................24

Federal Rule of Evidence 702 .................................................................................................11

Plaintiff Kove IO, Inc. ("Kove") respectfully submits this Motion for Sanctions for Spoliation of Evidence and to Exclude Certain Expert Opinions advanced by Defendant Amazon Web Services, Inc. ("AWS").

AWS's expert reports are replete with inadmissible opinions. The extraordinary scope and scale of them create a dynamic that the more inadmissible evidence included in the reports, the more likely at least some of it will make it to the jury because the sheer volume makes addressing each piece of evidence burdensome, even if plainly out of bounds. The issues range widely, from AWS destroying critical evidence then attacking Kove for its absence, to failing to disclose non-infringing alternatives in discovery then attacking Kove's experts for not addressing them, offering new claim construction opinions, advancing arguments already rejected by the Court's summary judgment order, injecting new theories absent from AWS's non-infringement contentions, failing to provide the technical and comparability analyses required to admit prior license agreements, advancing a "practicing the prior art defense" long forbidden by the Federal Circuit, and more.

Kove conferred with AWS prior to filing this motion in hopes of streamlining the issues so as to not burden the Court—but to little avail. Accordingly, Kove is forced to address a substantial volume of inadmissible evidence in this motion for the simple reason that AWS's expert reports are chock full of evidence that cannot be presented to the jury.

## I.  MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

AWS irreversibly destroyed years' worth of key performance data showing the extent of AWS's infringement and the technical benefits of Kove's patents. AWS had a duty to preserve that information. Its failure to take reasonable steps to preserve resulted in years-long gaps in the data. AWS now seeks to benefit from its spoliation by attacking Kove's experts for not having this very information and for having to extrapolate to fill in the gaps.

1

Kove seeks relief narrowly tailored to AWS's spoliation, and respectfully requests the Court: (1) instruct the jury on AWS's failure to preserve this information despite a duty to do so; (2) strike the portions of AWS's expert report challenging Kove's extrapolations (necessitated by the destruction of evidence), as well as any such testimony or arguments; and (3) award Kove's fees and costs for bringing this motion.[1]

### A.    Background

#### 1.    AWS Has Long Known That Performance Metrics Are Relevant.

The accused products' performance was always central to this case. Kove's complaint alleges AWS used Kove's technology to enhance S3 and DynamoDB's performance and scalability. Dkt. 1 ¶¶ 1-2, 16-19, 64. From the start, AWS knew which components and features were relevant.[2] Over years, Kove sought discovery on related metrics and spent considerable effort discussing identification and production with AWS.[3] For example, on June 10, 2019, Kove sought "metrics" for S3 and DynamoDB, and their "benefits, development, testing, [and] assessment." Ex. A (Kove's 1st RFPs) at RFP 13 and 108. On March 13, 2020, Kove asked AWS for "metrics, including key performance indicators, you used to measure the performance of each of the Relevant Features and each Accused Product." Ex. B (Kove's 4th ROGs) at ROG 14. Kove sought "metrics data and analyses regarding speed, scalability, and availability," the "most significant" metrics relating to the accused functions, and those "used most often" when developing and

---

[1] The Court stayed Kove's standalone spoliation motion until after summary judgment, Dkt. 681, then instructed the parties to combine it with the *Daubert*-related motions, Dkt. 740.

[2] *See* Dkt. 1 ¶ 39 (describing S3's "index subsystem"), ¶¶ 61-62 (describing DynamoDB's index); Ex. F at 39 (AWS's non-infringement contentions identifying and discussing ███████████ ████████████████████████) (August 16, 2019); Ex. G at 5 (Kove's infringement contentions identifying ██████████████████████) (February 13, 2020).

[3] Exs. C at 3, H at 2, I at 3-4, J, K, L (correspondences); *see* Ex. NNN ¶ 15 (6/13/23 Walsh Decl.).

designing the accused components. Ex. C (letter) at 3; Ex. D (letter) at 7. Kove identified specific performance metrics in its July 28, 2020 30(b)(6) topics (Ex. E at 10), and then sought specific metrics concerning durability, availability, scalability, latency, and throughput (Ex. N at ROG 22; Ex. O at RFP 131).

Kove moved to compel many of the spoliated metrics on September 9, 2021. Dkt. 409 at 10-11. On December 30, 2022, the Court ordered AWS to produce "[a]n identification [of] what AWS considers the most useful metrics or metrics reports to measure speed, availability, durability, and scalability of the Accused Products." Dkt. 562 ¶ 3. AWS continued to spoliate the very data they identified as most useful and that they were required to produce.

### 2. AWS Did Not Take Reasonable Steps To Retain Key Metrics.

AWS tracks performance metrics for its products for a limited time, after which they are automatically deleted. Unless automatic deletion is disabled, no metric is maintained beyond ▇▇ ▇▇ (the "Auto-Delete Policy").[4] AWS did not suspend its Auto-Delete Policy or otherwise preserve its metrics beyond the ▇▇▇▇ limit.[5] AWS's spoliation permanently destroyed years of data. Had AWS preserved the metrics when Kove filed its complaint, Kove would have had data from ▇▇ (▇▇▇▇ before the 2018 Complaint was filed).[6] Instead, many of the metrics date back to ▇▇▇▇▇▇ . *See* Ex. U (detailing spoliation); Goodrich Decl. ¶ 16 (Kove's

---

[4] Ex. P (4/21/2023 Donal Walsh Dep. Tr. ("4/21/2023 Walsh Tr.")) at 131:1-133:10; Ex. Q (6/14/2023 Donal Walsh Dep. Tr. ("6/14/2023 Walsh Tr.")) at 324:20-325:15.

[5] Ex. P (4/21/2023 Walsh Tr.) at 131:11-133:5 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ; Ex. R (Shiv Pal Singh Dep. Tr. ("Singh Tr.")) at 144:15-19, 197:5-198:3 (same, but for S3); Ex. S (AWS counsel acknowledging AWS did not take steps to retain specific metrics); Ex. T (summarizing meet and confer where AWS counsel acknowledged AWS did not modify Auto-Delete Policy).

[6] Kove seeks damages for December 2012 to September 2020.

technical expert).

### 3.  AWS Hindered Kove's Ability to Discover the Spoliation.

AWS withheld information regarding its Auto-Delete Policy while assuring Kove that it was preserving relevant data.  Kove gained limited awareness of the Auto-Delete Policy in August 2021 during a 30(b)(6) deposition.  The witness did not know whether the deleted metrics were backed up and was instructed not to answer questions relating to litigation hold notices.  Ex. V at 49:16-20, 217:6-221:12.  The deposition was limited to just DynamoDB (one of the accused products), and so did not bear on S3 (the other accused product).  Kove asked the Court to authorize alternate forms of discovery to potentially capture some of the deleted data and referenced spoliation concerns in a January 2022 filing.  Dkt. 437 at 12-13; Dkt. 502 at 9-10.  AWS still failed even then to take steps to preserve the metrics at issue.[7]

When the Court stayed the case in March 2022, Kove sent AWS a letter detailing Kove's spoliation concerns and reminding AWS of its "continued obligation to preserve documents relevant to this litigation," including "metrics relating to the accused products that would otherwise be deleted after ███████."  Ex. W at 1-2.  AWS assured Kove that it "[had] met its obligations under the applicable rules to preserve information relevant to the litigation, and will continue to do so."  Ex. X at 1.  Unbeknownst to Kove, AWS still had not modified its Auto-Delete Policy or otherwise taken steps to retain the relevant metrics.  After the stay was lifted, in December 2022, the Court ordered AWS to search for and produce several categories of metrics.  Dkt. 562 at 2-3.  AWS failed to notify the Court that it had deleted (and continued deleting) data subject to the

---

[7] *See* Dkt. 449; Dkt. 507; Ex. P (4/21/2023 Walsh Tr.) at 132:21-133:10.

order.[8]  *See* Ex. U (Metrics Appendix) at Rows 1-4, 6-9 (metrics covered by the Court's order).

Kove first learned the extent of AWS's spoliation in June 2023.  Testimony confirmed that AWS's Auto-Delete Policy also applied to S3, and that the deleted data had not been backed up and could not be discovered through other sources, *e.g.*, through testimony or duplicate files.  *E.g.*, Ex. R at 112:11-114:8 (S3); Ex. Y at 2 (AWS's "search for additional metrics information" was complete in June 2023).  Only after the fact discovery deadline did Kove learn AWS had not even *considered* what it would take to preserve relevant metrics or the associated costs.[9]  Ex. Q at 436:21-438:5.

When confronted, AWS denied that it was ever obligated to preserve metrics—including data the Court ordered AWS to produce—and took the position that a spoliation motion was not ripe until expert reports were exchanged, the idea being to see whether Kove was prejudiced by AWS's expert reports.  Ex. Z; Ex. AA; *see* Ex. BB.  Kove accepted AWS's invitation to wait.

### 4. AWS's Expert Attacks Kove For The Absence of The Data It Spoliated.

Kove's prejudice was confirmed when AWS served rebuttal reports on August 18, 2023.  AWS's technical expert criticized Kove's expert for having insufficient data during the spoliated period.  Ex. CC ¶¶ 437-445 ("Goodrich provides no support for his conclusion regarding the average BM lookup time for the time period from July 2012 through April 2016.").  AWS's expert also asserted, without support, "that Amazon did not delete metrics."  *Id.* at ¶ 469.  Kove moved for relief three weeks later.  Dkt. 679.

### B. Argument

---

[8] This is similar to what happened with another key document – the Six Pager.  Only after extensive briefing and a Court order to produce it, AWS stated that it could not be found.  Dkt. 643.

[9] AWS did not make the witness available until roughly six weeks after discovery.  *See* Ex. DD.

A party may be sanctioned if "electronically stored information ["ESI"] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). A court may order corrective measures under subdivision (e)(1) "upon finding prejudice . . . from loss of the information," and "may order measures no greater than necessary to cure the prejudice." Bad faith is not necessary under Rule 37(e)(1). *See DR Distrib., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 957-58 (N.D. Ill. 2021).

The scale of AWS's spoliation is extraordinary. To aid the Court, Kove identifies the small subset of metrics whose deletion has most clearly prejudiced Kove in Exhibit U.

### 1. AWS Spoliated Relevant Metrics After It Knew They May Be Discoverable.

AWS "has a duty to preserve evidence that it has control over and which it reasonably knows or can foresee would be material (and thus relevant) to a potential legal action." *Jones v. Bremen High Sch. Dist. 228*, 2010 WL 2106640, at \*5 (N.D. Ill. May 25, 2010). Documents "must be preserved for discovery, if there is a possibility that the information therein is relevant." *Id.*

This data unambiguously meets this standard. AWS was on notice that performance metrics were relevant, since Kove's complaint alleges AWS infringed Kove's "high-performance" distributed storage technology and, separately, because of Kove's increasingly specific requests for those metrics. AWS knew that such evidence is crucial for patent damages. *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (factor 11 is "[t]he extent to which the infringer has made use of the invention; and any evidence probable of the value of that use"). This is particularly the case because AWS knows its own metrics and has engineers who can identify relevant metrics. *See Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 620 (N.D. Ill. 2022) (relevance is "not a high standard" and "the party with access to the proofs

generally bears the burden").

Exhibit U summarizes key evidence, including why AWS knew or should have known to preserve each metric. For most metrics, the explanation is the same: they were either specifically requested by Kove, or AWS considered them most useful or significant by AWS to evaluate product performance, or both. ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████.[10] Yet AWS did not preserve this data, allowing them to be auto deleted , leaving Kove with only data back ███████████████████████.

AWS contends it was not obligated "to retain *all* available metrics . . . when Kove filed suit in December 2018." Ex. EE (emphasis added). But Kove is not arguing that *all* metrics need to be retained, only the *relevant* ones. This is similar to an argument Amazon made in another case, *Oliver v. Amazon*.com, 2023 WL 3322382 (E.D. Wis. May 8, 2023). There, Amazon did not preserve warehouse security footage for the specific days an injured employee worked, and Amazon argued it could not possibly be expected to retain *all* footage for its *entire* warehouse. *Id.* at *4. The court rejected that argument as an exaggeration and held that Amazon breached its preservation duty by failing to preserve potentially relevant evidence from a large pool of irrelevant ESI. *Id.*; *see also Konica Minolta Bus. Sols., USA Inc. v. Lowery Corp.*, 2016 WL 4537847, at *4 (E.D. Mich. Aug. 31, 2016) ("Whether the Defendants believed that they were asked to preserve too much and accordingly decided that they did not need to preserve ESI is a different, but still unpersuasive argument."). ESI is spoliated when it cannot be restored or replaced. *Hollis*,

---

[10] Ex. V (8/25/2021 Walsh Tr.) at 86:3-16; Ex. Q (6/14/2023 Walsh Tr.) at 387:1-390:14; *see* Ex. U (Metrics Appendix) at Row 9.

603 F. Supp. 3d at 622. This element was definitively established in June 2023, when an AWS deponent confirmed the deleted data cannot be recovered and was not backed up, and AWS confirmed that it was unable to locate or recover the spoliated data. *See, e.g.*, Ex. Q at 439:15-19; Ex. Y at 2 (AWS's "search for additional metrics . . . is complete").

Despite notice of the performance metrics' relevance and significance, AWS did not deactivate or suspend its Auto-Delete Policy or take any other reasonable preservation steps. *See, e.g.*, *DR Distrib.*, 513 F. Supp. 3d at 979 (defendant acted unreasonably by failing to stop autodeletion, or to informally copy and save the ESI); *Hollis*, 603 F. Supp. 3d at 621 & n.13 (defendant acted unreasonably by failing to stop autodeletion, even after notice of relevance); *Oliver*, 2023 WL 3322382 at *4 (Amazon acted unreasonably by failing to stop autodeletion).

Corporate autodeletion policies do not override discovery preservation duties. *See id.* The Northern District of California recently sanctioned Google for failing to turn off its autodeletion, despite, as here, assuring compliance with its preservation obligations after plaintiff questioned whether the information was being preserved. *In re Google Play Store Antitrust Litig.*, No. 3:21-md-2981-JD, Dkt. 469 (N.D. Cal. March 28, 2023). The court criticized Google for "ha[ving] every opportunity to . . . air concerns about potential burden, costs, and related factors" yet "cho[osing] to stay silent until compelled to speak by the filing of the Rule 37 motion," which required "a substantial amount of resources to get to the truth of the matter." *Id.* at 16-17. This "troubling" conduct "fell strikingly short." *Id.* at 16. Google's conduct was "worrisome, especially in light of its unlimited access to accomplished legal counsel, and its long experience with the duty of evidence preservation." *Id.* at 17. Google "had the capacity of preserving all Chat communications systemwide once litigation had commenced but elected not [to] do so, without any assessment of financial costs." *Id.*

8

The burden of preserving the metrics at issue is minimal.  Only a tiny fraction of AWS's metrics are potentially relevant.  AWS identified roughly two dozen metrics as most useful to product performance, and testimony confirmed that just a few dozen metrics are tracked for key infringing components.[11]  For perspective, *all* metrics AWS produced amount to fewer than ███ ████████ of storage.  This is less storage than needed to store a photo taken on an iPhone 14 Pro.[12]  AWS's own pricing shows it costs less than a penny per month to store the spoliated metrics.[13]  But AWS never investigated the cost of reasonable retention.  Ex. Q at 436:21-438:8 (AWS "ha[s]n't provided a cost estimate . . . to preserve only a limited subset of metrics that might be relevant to this case" and "didn't know whether [database] would be able to retain only a small subset" because it never checked).  If AWS believed preservation was too much, it should have notified the Court and counsel years ago.  *In re Google Play Store Antitrust Litig.*, No. 3:21-md-2981-JD, Dkt. 469 ("At the very least, Google should have advised plaintiffs about its preservation approach early in the litigation, and engaged in a discussion with them."); *DR Distribs.*, 513 F. Supp. 3d at 906 ("[C]ounsel must immediately inform the court and opposing counsel when they learn that ESI has been destroyed.").

### 2. AWS's Spoliation Prejudices Kove.

Curative measures under Rule 37(e)(1) are appropriate because AWS's spoliation prejudiced Kove.  Parties are prejudiced when their access to relevant information impairs their ability to prepare for trial.  *DR Distribs.*, 513 F. Supp. 3d at 973.  Intent does not matter under this subdivision.  *See Hollis*, 603 F. Supp. 3d at 622 ("only prejudice needs to exist").

---

[11] Exs. FF (1/10/2023 Singh Decl.); M (1/10/2023 Walsh Decl.); R (Singh Tr.) at 108:17-109:16.

[12] https://www.wired.com/story/how-to-keep-photos-videos-taking-up-space/.

[13] https://aws.amazon.com/s3/pricing (AWS charges 2.3 cents/month to store a gigabyte of data).

AWS's spoliation deprived Kove of years' of data relating to the amount, extent, and significance of AWS's infringement. Had this data been preserved, Kove's expert would have considered it. Goodrich Decl. ¶ 17; Ex. U (Appendix). Its absence required Kove's expert to extrapolate the produced data back in time and to assume that there were no significant changes to the data. *Id.* ¶¶ 18-19.

This harm is compounded by AWS's expert attacking Kove's expert for not having the missing data, criticizing him for providing "no support for his conclusion[s]" on spoliated speed metrics, and challenging the reliability of his projections, while expressly denying spoliation. Ex. CC ¶¶ 445 (criticizing use of projected value of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮); 441 n.556 (claiming Kove should have used a projected value of ▮▮▮▮▮▮▮▮▮▮▮); 445 n.564 (challenging projections because values in the spoliation period would have been "variable"); ¶ 469 ("Amazon did not delete metrics"); ¶ 445 n.563 (suggesting Kove did not need to project data).

### 3. Kove Requests Relief Tailored To Mitigate Its Prejudice.

AWS cannot destroy evidence it had a duty to preserve and then benefit from its absence. Kove respectfully asks the Court to: (1) instruct the jury on AWS's failure to preserve this information despite a duty to do so; (2) strike the portions in AWS's rebuttal report challenging Kove's projections, and preclude AWS from arguing the same to the jury; and (3) award Kove's costs and fees. This relief is narrowly tailored to address AWS's troubling breach of discovery obligations, and to preclude AWS from exploiting the evidentiary gap it created.

This relief is well-supported. *See, e.g.*, Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment (Rule 37(e)(1) curative measures may include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, [] giving the jury instructions to assist

in its evaluation of such evidence or argument," or "exclud[ing] a specific item of evidence to offset prejudice"); *Hollis*, 603 F. Supp. 3d at 625 (ordering instruction and calling it "[a] common curative measure"); *DR Distribs.*, 513 F. Supp. at 982 (ordering instruction and preventing spoliator from disputing contents of spoliated ESI); *Torgersen v. Siemens Bldg. Tech., Inc.*, 2021 WL 2072151, at *5 (N.D. Ill. May 24, 2021) (ordering instruction and preventing spoliator from offering innocent explanation for spoliation); *Estrada v. Pao Pao, Inc.*, 2021 WL 8202677, at *4 (N.D. Ill. Oct. 25, 2021) ("[T]he court may order curative measures under Rule 37(e)(1) such as barring evidence or instructing the jury that it can consider the circumstances surrounding the loss of ESI."); *Franklin v. Howard Brown Health Ctr.*, 2018 WL 4784668, at *6 (N.D. Ill. Oct. 4, 2018) (recommending jury hear evidence and argument on spoliation); *Ayers v. Heritage-Crystal Clean, LLC*, 2022 WL 2355909, at *4 (N.D. Ill. June 1, 2022) ("[A] jury instruction informing the jury of Ayer's behavior is warranted."); *Covarrubias v. Wendy's Rest.*, 2021 WL 4258701, at *4 (N.D. Ill. June 21, 2021); *Pable v. Chicago Transit Authority*, 2023 WL 2333414, at *37 (N.D. Ill. Mar. 2, 2023) (awarding attorney's fees to cure "financial prejudice" from bringing spoliation motion).

## II. MOTION TO EXCLUDE CERTAIN EXPERT OPINIONS

Under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, expert reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). And Federal Rule of Evidence 702 requires that expert opinion testimony be "based on sufficient facts or data" and "the product of reliable principles and methods," "reliably applied." Inadequately disclosed opinions are automatically excluded. Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *see* Fed. R. Civ. P. 37(c)

advisory committee's note to 1993 amendment (sanction is "automatic" and "self-executing"); *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) **("**[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.").

### A. Inadmissible Damages Opinions

#### 1. The Court Should Exclude Bennis's and Grama's Opinions Relating to Non-Comparable Third-Party Transactions.

AWS relies on previous patent licenses to support its damages theory. Previous patent licenses are only admissible if they are economically and technically comparable to the hypothetical negotiation between Kove and AWS. AWS's experts fail to show economic or technically comparability, and the resulting opinions are therefore inadmissible.

The party proffering a prior patent license for purposes of damages bears the burden of establishing it is sufficiently comparable to the hypothetical license. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009). To satisfy this burden, AWS must show that the license "involves comparable technology, is economically comparable, and arises under comparable circumstances as the hypothetical negotiation." *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372–73 (Fed. Cir. 2020); *see also Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.,* 609 F.3d 1308, 1320 (Fed. Cir. 2010) ("[C]omparisons of past patent licenses to the infringement must account for 'the technological and economic differences' between them.").

Because licenses are complex and have a high capacity to confuse the jury, the Federal Circuit "has long required district courts . . . to exercise vigilance when considering past licenses to technologies other than the patent in suit." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). Non-comparable licenses must be excluded. *Intelligent Verification Sys., LLC*

*v. Microsoft Corp.*, 2015 WL 1518099, at *2 (E.D. Va. Mar. 31, 2015) ("[T]he district court must exercise its gatekeeping function to bar non-comparable licenses when the license does not meet the baseline of comparability test.").

There are additional showings necessary for licenses that arose in connection with litigation. Such licenses may only be considered "under certain limited circumstances" because "license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012). Experts must consider the facts underlying the litigation, including factors like "the cost of the predicted judgment, its profitability, and costs of further litigation." *See Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1369 (Fed. Cir. 2017) (citations omitted). "Without analysis of the litigation," an expert's conclusion "cannot be based on 'sound economic and factual predicates,'" and so cannot be admitted. *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 143 (D. Del. 2013) (citing *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002)).

## 2. Bennis's Opinions On AWS's Past Licenses Should Be Excluded.

AWS's damages expert, Bennis, relies on ten third-party transactions to support her damages estimate. *See* Ex. NN at 129. Bennis does not address—or even acknowledge—the concept of economic comparability. *See id.* at 110, 114, 116, 119, 121, 124, 127, 129. At her deposition, Bennis confirmed that she did not consider the economic comparability of transactions when forming her opinions, and, in fact, expressly disclaimed an opinion on comparability. *See* Ex. OO at 148:15-17 ("I just don't want to suggest it's a comparable/identical license.") (discussing ███████████).[14] Indeed, her analysis ended at (alleged) <u>technical</u> comparability,

---

[14] The testimony cited above is consistent with testimony provided throughout the deposition. *See, e.g.*, Ex. OO at 90:21-91:13, 144:14-146:17, 149:17-150:18, 203:4-20, 209:17-211:18, 244:18-

ignoring the required <u>economic</u> comparability. *See* Ex. OO at 104:14-20 ("[I]f I understand the patents to be technically comparable, then the rates paid or exchanged . . . are relevant.").[15]

Courts frequently exclude expert testimony for exactly this reason. *E.g. Sprint Commc'ns Co. v. Comcast IP Holdings, LLC*, 2015 WL 456154, *3 (D. Del. Jan. 30, 2015) (excluding testimony where expert failed to account for differences in prior licenses because simply acknowledging economic differences is not sufficient); *Intelligent Verification*, 2015 WL 1518099, at *3-5 (excluding testimony about license that failed to meet baseline comparability test); *Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, 2021 WL 6034269, at *9-10 (E.D. Va. Dec. 10, 2021), *objections overruled in relevant part*, 2022 WL 21502725 (E.D. Va. July 15, 2022) (excluding testimony for failure to analyze differences in economic circumstances between licenses); *Biscotti Inc. v. Microsoft Corp.*, 2017 WL 2607882, at *4 (E.D. Tex. May 25, 2017) (excluding testimony in light of "substantial economic differences"). All third-party licenses should be excluded for Bennis's failure to consider economic comparability, especially in view Bennis's testimony that there are "potentially vast" and "meaningful" differences between the licenses and the hypothetical negotiation. Ex. OO at 154:1-155:2, 243:19-244:4.

In addition, Bennis failed to account for the fact that the prior licenses were entered in the context of litigation (in contrast to the hypothetical negotiation). *See, e.g.*, Ex. NN at 78-79, 82-83, 86; Ex. PP ¶¶ 444-541. The black-letter law set forth above is that an expert seeking to use licenses arising from litigation must consider and account for the facts surrounding the litigation. Because each of these transactions arose in connection with litigation, Bennis was required to

---

245:6, 246:15-247:1.

[15] Bennis repeated this belief throughout the deposition. *Id.* at 96:12-21, 234:3-11; *see also id.* at 101:9-11; 102:12-17; 150:13-14; 182:1-16, 186:4-12.

consider and account for litigation-based factors. *See Prism Techs.*, 849 F.3d at 1369. Bennis did not. At her deposition, Bennis confirmed that she did not consider—and was not even *aware* of— the relevant litigation factors. Ex. OO (Bennis Tr.) at 164:10-13; 165:21-167:14; 220:16-221:4; 221:5-20, 242:17-243:3; 219:1-16; 178:13-21; 194:4-17; 196:12-197:4, 215:19-216:4.

Failure to account for litigation factors requires exclusion. *See, e.g.*, *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 496 (D. Del. 2019) (excluding testimony that failed to analyze litigation stage of settlement agreement or other economic circumstances); *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 677-78 (D. Del. 2016) (excluding testimony that "virtually ignores the fact that . . . licenses resulted from litigation settlements, providing a drastically different backdrop than the hypothetical negotiation involving two willing licensors."); *Sprint Commc'ns*, 2015 WL 456154, at *2 (excluding opinions where expert "provide[d] no information regarding the nature of the litigation or the context of the settlements"); *Biedermann*, 2021 WL 6034269, at *6, *9 (excluding opinions because "aside from noting that the licenses were . . . entered into as part of settlements . . . [the report] nowhere discusses the underlying litigation").

### 3. Grama's Opinions on Technical Comparability Should Be Excluded.

Licenses also must be technically comparable to the hypothetical negotiation. *Lucent Techs.*, 580 F.3d at 1329. Experts must compare the respective technologies and explain, with specificity, how the technologies relate to one another. *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022) (attribution omitted). "[C]onclusory observations are insufficient." *Id.* Thus, the fact that two technologies relate to the same general field (e.g., load balancing, distributed systems, RFID technology) is not enough. *Id.* ("'RFID technology' is too broad and vague a category . . . to serve as a meaningful comparison point"). Likewise, an expert cannot establish comparability by asserting that the proffered license covers "foundational technolog[y]."

15

*Id.* Instead, experts must expressly account for the differences between the technologies. *LaserDynamics*, 694 F.3d at 79 ("[A]lleging a loose or vague comparability between different technologies . . . does not suffice.").

The analysis by AWS's technical expert, Grama, of AWS's proffered licenses does not comply with these standards. Instead of evaluating comparability, Grama considers whether the patents are "directed generally to similar technology." Ex. CC ¶¶ 486, 489, 500, 507, 510, 517. Such generalized analysis is legally insufficient. *See LaserDynamics*, 694 F.3d at 79.

Grama's analysis follows the same template for each patent: (1) he sets forth the title of the patent; (2) he identifies the general field to which the patent relates (e.g., "load balancing," "network systems,"); and (3) he concludes, in conclusory fashion, that the proffered patent is "similar to the Asserted Patents." Grama's analysis of the "████████████████████" license is representative. The entirety of his comparability analysis with respect to the two patents he considered is:

> These patents disclose techniques that improve mapping and searching on a distributed network. In my opinion, these patents teach foundational technology for distributed network systems, architectures, and management, which is comparable to the technology disclosed in the Asserted Patents.

*Id.* ¶ 502. This mode of reasoning is virtually identical for each of the patents in Grama's report. *See id.* ¶¶ 483-520. After providing his opinion on comparability, Grama asserts—in the same conclusory fashion—that the comparator patents are "more foundational" than the Asserted Patents. *Id.* at, *e.g.*, ¶¶ 484, 486, 490, 492, 499, 504, 508, 509, 511 ("[T]he technology licensed in this agreement is more foundational than the Asserted Patents."). These opinions fail to meet the Federal Circuit's strict standards for admissibility, and therefore must be excluded.

### 4. Bennis's Opinions On Econnectix Transactions Should Be Excluded.

16

Bennis's damages opinions rely on previous transactions by Kove (then called "Econnectix"), which covered, among other things, the patent applications that would eventually become the Asserted Patents. Ex. NN (Bennis Report) at 103-108. Again, Bennis failed to offer an opinion on the economic comparability of these transactions and did not consider facts that would bear on economic comparability. *Id*. At her deposition, Bennis admitted as much:

> Q: And so is it your opinion that this transaction out of a liquidation process is technically and economically comparable to a license that would result from the hypothetical negotiation?
>
> A: No, I don't think I've said that anywhere.

Ex. OO (Bennis Tr.) at 262:21-263:8.

Because Bennis did not offer opinions sufficient to meet the essential comparability requirement, they should be excluded.

**5. Undisclosed Non-Infringing Alternatives Should Be Excluded.**

Non-infringing alternatives are a key part of Kove's damages case. Kove's damages analysis hinges on showing the incremental benefit of Kove's invention to AWS when compared to potential non-infringing alternatives. *See Prism Techs.*, 849 F.3d at 1376 (explaining the importance of non-infringing alternatives in patent damages). Given the critical importance of non-infringing alternatives, and the need for fact discovery on them, Kove served interrogatories seeking the disclosure of what AWS considers to be non-infringing alternatives to the inventions. Ex. RR (First Set of ROGs) at ROG 3. Kove sought this information so it could take fact discovery on whether AWS's alleged non-infringing alternatives were commercially and technically viable—after all, Kove is entitled to probe whether something is really an alternative.

AWS responded to these interrogatories, disclosing what it considered to be the non-infringing alternatives. Ex. SS (AWS's Supp. Response to First ROGs) at ROG 3. Kove relied

on these responses for depositions about purported non-infringing alternatives, and Kove's experts addressed the alternatives AWS disclosed. *See, e.g,* Ex. TT (Corrected Expert Report of Mike Goodrich) ¶¶ 296-345; Ex. PP (Bergman Report) ¶¶ 268-279, 575.[16]

Then, in its expert reports, AWS came forward with a new slate of non-infringing alternatives that had not been identified in discovery. *See, e.g.*, Ex. CC ¶¶ 419, 424, 458-465, 470-471, 477, 535; Ex. NN at 29-30, 54, 87. Worse, they sharply criticized Kove's experts as "misguided" and "incorrect" for not considering the undisclosed alternatives. Ex. CC ¶ 458; Ex. NN at 29, 54.

According to Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FRCP, Rule 37(c)(1); *see also Allen,* 2001 U.S. Dist LEXIS 11354 *2. This failure to disclose non-infringing alternatives before Kove's opening expert reports was neither justified nor harmless. Kove has been severely prejudiced because it could not take fact discovery on whether these non-infringing alternatives were commercially and technically viable. AWS's bait and switch deprived Kove of critical testimony, and thus its new non-infringing alternatives should be excluded.

### B. Inadmissible Non-Infringement Opinions

#### 1. AWS's Untimely Non-Infringement Arguments Should Be Excluded.

The Court's Local Patent Rules exist to prevent trial by ambush. The Court prevented one such ambush when it excluded AWS's parent-child/master-slave noninfringement argument with

---

[16] AWS was under a continuing duty to supplement its interrogatory responses. *See, e.g.*, FRCP Rule 26(e)(2); *Allen v. Bake-Line Prods., Inc,* 2001 WL 883693, at *1-2 (N.D. Ill. Aug. 6, 2001).

respect to the DDB accused product in its summary judgment order. Dkt. 739, at 29. Other arguments not disclosed in AWS's final noninfringement contentions and appearing for the first time in Grama's rebuttal report should also be struck. *Pactiv Corp. v. Multisorb Techs., Inc.*, 2013 WL 2384249, at *3 (N.D. Ill. May 29, 2013) ("To allow an expert to go beyond [the final contentions] would render them useless and ignore the specificity requirements of the Local Patent Rule 2.3."); *Baxter Int'l, Inc. v. CareFusion Corp.*, 2020 WL 10486005, at *1-2 (N.D. Ill. Aug. 12, 2020) ("Expert reports are . . . bound by the propositions advanced in the Final Contentions.").

**"Parent-child hierarchy" theory (S3 accused product).** As the Court already found, Grama's rebuttal report unveiled the new theory that the DDB accused product does not infringe because its ██████████ allegedly have a ██████████ structure. Dkt. 739, at 29. Grama makes a nearly identical argument for the ██████████ in the S3 accused product, opining that the ██████ that store location information in ██████████ "are partitioned into ██████████ arrangements," which "are also called ██████ relationships[.]" Ex. CC (Grama Report) ¶¶ 357-358. ██████████████████ are not in AWS's final noninfringement contentions, and so the theory should be excluded. Ex. UU (AWS's FNC); Ex. VV (Ex. A to AWS's FNC); Ex. YY (Ex. D to AWS's FNC).

**"Naming convention hierarchy" theory (S3 and DDB).** Grama opines that both accused products are hierarchical because of "naming conventions" for stored data items. Ex. CC (Grama Report) ¶¶ 194-197. In his view, if multiple data items stored in different regions can have the same name, then the system must be hierarchical. *Id.* But "naming convention" does not appear in AWS's final noninfringement theories, nor is this theory otherwise disclosed. Ex. UU (AWS's FNC); Exs. VV-ZZ (AWS's FNC Exhibits A-E). It should be excluded.

**"██████ is too full" theory (S3).** Claim 17 of the '978 patent requires "*transferring*

a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches *a predetermined performance limit*." Ex. AAA ('978 patent) claim 17 (emphasis added). Grama opines that this limitation cannot be met by the ████████ in S3 because ████████████████ ; and because "a cache is nearly *always* at its storage capacity limit . . .[,] [r]ather than 'transferring' anything, the ████████ ████████████████████████████████████████████████████████████████ ." Ex. CC (Grama Report) ¶¶ 309-310. This theory should be excluded because it was not disclosed in AWS's noninfringement contentions. *See* Ex. UU (AWS's FNC); Ex. YY (AWS's FNC Ex. D) at 95-107.

**"████████████" is not an "identifier" theory (DDB)**. A ████████ in DDB consists of either ████████████████████████████ . ████ ████████████████████████████████████████ Goodrich's infringement analysis explains that a ████████ meets the requirements of the claim term "identifier," in part because it uniquely identifies a data entity.

In rebutting Goodrich's mapping of ████████ to "identifier," Grama opines that █ ████████████████████████████████████████ Rather, a ████████████████ as used in DDB tables identifies ████████████ and how the data is ordered within the ████████, not the individual entity." Ex. CC (Grama Report) ¶ 227. AWS did not disclose this theory in its noninfringement contentions. In fact, AWS's contentions *contradict* Grama's opinion (and align with Goodrich) on this point, stating that a ████████████████████████████████████████████ *E.g.*, Ex. UU (AWS's FNC); Ex. ZZ (AWS's FNC Ex. E) at 18. AWS should not be permitted to present Grama's new ████████ noninfringement theory, especially when it took the opposite position

in discovery.

### 2. The Federal Circuit Bars Grama's "Practicing The Prior Art" Defense.

To determine infringement, the jury must compare the language of the claim to the accused device. *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1582 (Fed. Cir. 1995). Federal Circuit case law is "unequivocally clear . . . that there is no 'practicing the prior art' defense to literal infringement." *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002). This defense occurs when a defendant claims they are practicing prior art, therefore they must not infringe. "The problem with such a defense is that it can potentially allow a defendant to skirt evidentiary hurdles and conflate the infringement and invalidity inquiries. In essence, an accused infringer forsakes any comparison between the asserted claims and the accused product, relying instead upon purported similarities between the accused product and the prior art." *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018); *Baxalta Inc. v. Bayer Healthcare LLC*, 513 F. Supp. 3d 426, 448 (D. Del. 2021) (excluding "practicing the prior art" expert opinions under *Daubert*).

Grama opines that the Accused Products cannot infringe because the products practice the prior art. With respect to S3, Grama alleges that the ▮▮▮ are "an implementation of concepts in a paper entitled '. . .'" Ex. CC (Grama Report) ¶ 283. Grama further points to the testimony of Kove's CEO, Dr. John Overton, that the prior art was different than the '640 patent. *Id.* ¶ 284. Boiled down, Grama's opinion is that S3 does not infringe because it practices what was disclosed in a prior art paper, but because Kove's CEO believes the paper is different than the Kove patents, S3 must not infringe. This is precisely the forbidden practicing the prior art defense, and therefore must be excluded.

Similarly, Grama claims that aspects of DDB are the same as in the ▮▮▮ prior art

reference, and because ██ does not invalidate Kove's patent claims, DDB must not infringe.  Ex.
BBB (Grama Supp. Rpt.) ¶¶ 9-12.  Because these theories rely on the forbidden practicing the prior
art defense, they also must be excluded.  *Blackhawk Molding Co. v. Portola Packaging, Inc.*, 422
F. Supp. 2d 948, 955 (N.D. Ill. 2006) (rejecting practicing the prior art defense).

### 3.  Grama's Immaterial "Hierarchy" Opinions Should Be Excluded.

Grama opines that the accused products do not infringe because (1) components within the
products have "logical hierarchies" and (2) the products themselves are organized into "geographic
hierarchies."  These opinions should be excluded under *Daubert* because, under the Court's
constructions, these hierarchies are irrelevant to infringement.

In its summary judgment order, the Court determined that the claimed *location servers*, as
opposed to other aspects of a data storage system, "must be arranged in 'non-hierarchical
structures.'"  Dkt. 739, at 15; *see also id.* at 16-23.  Applying this claim construction, the Court
analyzed several of AWS's noninfringement arguments and found them to be "immaterial" to
infringement.  *Id.* at 25-28.  The Court addressed AWS's argument that "S3 and DDB contain
'many different components that are themselves organized into additional logical hierarchies'" and
found that it was irrelevant to infringement because "[i]t is clear that the non-hierarchical
configuration recited in the claims is directed to the configuration of the location servers[.]"  *Id.* at
25-26 (quoting Def.'s Reply at 18).  The Court also addressed AWS's argument that "'S3 and
DDB both divide their data storage systems into geographical hierarchies, including at least one
layer of 17 regions, plus another layer dividing those regions into availability zones.'"  *Id.* at 26
(quoting Def.'s Reply at 18).  The Court similarly found this noninfringement argument to be
irrelevant, reasoning that "as long as the location servers within an availability zone or region are
arranged in a non-hierarchical configuration, the accused products may infringe upon Kove's

patents even if those zones and/or regions are arranged hierarchically in relation to other components of S3 or DDB." *Id.* at 28.

Grama's noninfringement opinions that are based on identifying hierarchies that the Court already found to be irrelevant should be excluded. First, Grama opines that there are hierarchies in components of DDB and S3 that are unrelated to the structure of the alleged location servers. Ex. CC (Grama Report) ¶¶ 334-335, 338-339, 355-364, 194-197. Second, Grama analyzes the geographic hierarchy of DDB and S3. *Id.*, ¶¶ 331-333, 352-354. These portions of Grama's analysis should be excluded under *Daubert* because they are irrelevant to Kove's infringement theories under the applicable claim constructions. *See Promega Corp. v. Applied Biosystems, LLC*, 2013 WL 9988881, at *3 (N.D. Ill. May 28, 2013) (excluding expert testimony that was irrelevant to infringement in view of the court's explanation of the claim requirements). Permitting irrelevant theories will only serve to confuse and mislead the jury. *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (citations omitted).

### 4. Grama Should Not Be Permitted To Provide New Claim Constructions.

Multiple sections of Grama's report set forth claim construction opinions that differ from the Court's claim construction order(s). It is well established that experts may not argue claim construction to the jury. *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172-73 (Fed. Cir. 2005) ("[T]he parties also presented expert witnesses who testified before the jury regarding claim construction, and counsel argued conflicting claim constructions to the jury. This was improper, and the district court should have refused to allow such testimony[.]"). This is because disputes over the scope of claims are questions of law, and so must be resolved by the Court. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).

23

Grama provides his personal perspective on the back and forth between Kove and the Patent Office during reexaminations, and the scope of the disclaimer that he believes resulted from those communications. Ex. CC (Grama Report) ¶¶ 136, 145-146, 211-219, 326. Those portions should be excluded so as to prevent him from arguing claim construction to the jury. *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) (holding that the district court properly prevented an expert from using the prosecution history to argue claim scope to the jury).

To make matters worse, Grama's analysis of the alleged disclaimers differs from the Court's constructions. Grama's report argues for the full scope of disclaimer that AWS asked the Court to adopt during summary judgment briefing, but the Court only adopted aspects of AWS's proposal. *E.g.*, Ex. CC (Grama Report) ¶ 212. Expert testimony about incorrect claim constructions is not relevant, extraordinarily prejudicial under Rule 403, and should be excluded. *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 (Fed. Cir. 2006).

### C. Inadmissible Invalidity Opinions

The Court held on summary judgment that a patent's specification cannot be used as prior art in an obviousness-type double patenting (OTDP) analysis. Dkt. 739 at 42-43. With the improper evidence excluded, certain of Greene's opinions are left without any supporting evidence, making them deficient and unreliable. Specifically, without the struck evidence, Green does not have evidence to show double patenting of the following claims: claims 10, 17, 23, 24, and 30 of the '978 patent as obvious in view of the '640 patent, and claim 10 as obvious in view of the '170 patent. The point is readily apparent in Green's color coded OTDP charts.

For example, for claim 10 of the '978 patent, Greene used cites only specification evidence highlighted in blue on the right) to meet the following claim limitation.



Ex. LL at 4-5 (color in original). Without it, his OTDP argument as to claim 10 fails. Similarly, with respect to claim 17 of the '978 patent, Greene also improperly relies on specification evidence to support his opinion of OTDP invalidity in view of the '640 patent. *Id.* at 9 (yellow highlighting). This same deficiency also exists for elements [17.b] and [17.e] (*Id.* at 9-11)—once the specification citations are removed, he has no evidentiary basis to support his invalidity opinion. Greene's opinions regarding dependent claims 23, 24, and 30, and claim 10 of the '978 patent also are deficient for the same reason. *See id.* at 11-12; Ex. MM at 5-6. Greene therefore cannot meet his burden of proving by clear and convincing evidence that the claims of these claims are invalid under the OTDP doctrine.

Dated: February 16, 2024

Respectfully submitted,

*/s/ Courtland L. Reichman*

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 560-3501

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5000

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com
Philip Eklem (*pro hac vice*)
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard (*pro hac vice*)
sballard@reichmanjorgensen.com
Gina H. Cremona (*pro hac vice*)
gcremona@reichmanjorgensen.com
Savannah Carnes (*pro hac vice*)
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

Amy Ruhland (*pro hac vice*)
aruhland@reichmanjorgensen.com
Taylor Mauze (*pro hac vice*)
tmauze@reichmanjorgensen.com
Navid Bayar (*pro hac vice*)
nbayar@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
901 S. Mopac Expressway, Building 1, Suite 300
Austin, TX 78746
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

***ATTORNEYS FOR PLAINTIFF
KOVE IO, INC.***

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of February, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Courtland L. Reichman*
Courtland L. Reichman
