# Exhibit DD



Adam Adler
1909 K Street, NW Suite 800
Washington, DC 20006
(650) 623-1480
aadler@reichmanjorgensen.com

May 4, 2023

**By Email**

Jeffrey Saltman
Fisch Sigler LLP
5301 Wisconsin Ave NW 4th Fl.
Washington, DC 20015
Jeffrey.Saltman@fischllp.com

    RE:    *Kove IO, Inc. v. Amazon Web Services, Inc.*, Case No. 18-cv-8175 (N.D. Ill.)

Dear Counsel,

I write concerning several outstanding issues relating to the recent deposition of Donal Walsh.

AWS designated Walsh to provide corporate testimony on DynamoDB and SimpleDB-related metrics and data in connection with Kove Topics 15-17, 37-38, 42, 54, 70, and 87, including, in particular, metrics and interrogatory responses AWS produced since August 2021 and Walsh's declaration, served on January 10, 2023.

**Walsh Was Unable to Provide Basic Information Regarding DynamoDB- and SimpleDB-Related Metrics**

This is the second time Walsh was deposed on many of these topics. Walsh was initially deposed in August 2021. As explained in prior correspondence, Walsh was not prepared for that deposition. *See* 10-4-21 Letter from Kove to AWS.

To avoid the problems from Walsh's first deposition, Kove made a concerted effort to put AWS on notice of the information it sought to elicit. Specifically, "Kove engaged in numerous multi-hour meet and confers with AWS regarding these issues and documented those conferrals across several letters. E.g., 4/4/23 Letter from Kove to AWS; 4/11/23 Letter from Kove to AWS; 3/26/23 Letter from Kove to AWS." After AWS identified its topic groupings, Kove met and conferred again via teleconference and letter correspondence to ensure AWS understood which topics and issues Walsh should be prepared to testify on. *See* 3/26/23 Letter from Kove to AWS; 4/4/23 Letter from Kove to AWS.

As further guidance, Kove sent AWS a letter in advance of the deposition that identified the kinds of issues it intended to cover in connection with the topics for which Walsh was designated. *See* 4-13-23 Letter from Kove to AWS (listing issues Kove intended to cover in the deposition of Shiv Pal Singh, which related to the same topics, but for S3).

Despite this advanced notice, Walsh was still unprepared. The lack of preparation impacted several areas of inquiry over the course of the deposition. Indeed, Walsh himself realized he was unprepared and agreed to take steps to obtain the information he was missing. *E.g.*, Rough Walsh Tr. at 65:16-17, 97:21-98:1.


Kove identifies the following specific items of information Walsh was unable to provide. Walsh confirmed that it would not be difficult to obtain the missing information and metrics:

- Walsh was unable to interpret or describe the data in Exhibits 27A, 27C, 27D, 28A, 28B, 28C, and 28D.[1]  Walsh acknowledged that the descriptions of this data in his declaration and in AWS's interrogatory responses were incorrect.  *Id.* at 43:6-46:9 ("I've got them mixed up ... I am going to need 5 minutes to review the data if that's okay ... there is a correction to be made to the doc."), 55:8-13 ("[I]t looks like the format for at least one of the other regions is incorrect.  We'll have to correct those.").  Walsh further testified that, to ensure his declaration and interrogatory response was correct, he "would have to go back and do a more detailed analysis and comparison" of the various documents.  *Id.* at 64:17-66:7.

- Walsh was unable to interpret or describe the data in Exhibit 23.  *Id.* at 76:13-22 ("[G]iven the question mark over the previous data ... I would like some time to – to review it.").

- Walsh was unable to interpret or describe the data shown in AMZ_KOVE_000390567 (Ex. 3), other than to say that the description of the document contained in AWS's interrogatory response was incorrect.  *Id.* at 167:19-170:5 (Walsh explaining that the data in Exhibit 3 "doesn't look like the right data" and that trying to interpret the document is like "a needle in the haystack").  Walsh later confirmed that AWS had produced the wrong data and that AWS would be able to produce the correct latency data.  *Id.* at 171:21-173:18.

- Walsh was unable to provide meaningful information regarding the SimpleDB metrics AWS produced, and could not even confirm that the metrics were accurate.  *Id.* at 219:9-18, 234:2-5 ("Would you be able to vouch under oath that this data was correctly exported and is what it purports to be? A: No.").  Kove understands that AWS has already identified a replacement designee (Tim Rath) on these issues.  Kove expects that Rath will be prepared to provide complete testimony on these issues.

***To satisfy its discovery obligations, AWS must (1) amend its response to Kove interrogatories 14 and 22 and the Walsh Declaration so that they accurately reflect the metrics AWS has produced; (2) produce all metrics that AWS purported to produce, but either did not produce or produced incorrectly; (3) provide a verified statement that provides each item of information described above, as well as a detailed description of any new or re-pulled metrics; and (4) make the signatory available for a supplemental deposition regarding the verified statement.***

**Walsh Identified Several Categories of Metrics AWS Should Have Produced Long Ago**

In its December 30 order, the Court ordered AWS to identify and produce "what AWS considers the most useful metrics or metrics reports to measure speed, availability, durability, and

---

[1] AMZ_KOVE_000463930, AMZ_KOVE_000463932-37.

scalability of the Accused Products." Dkt. 562. Prior to the order, AWS claimed that "there are over 10,000 potential 'metrics' that are measured within S3 and DynamoDB," and that it was unable to identify any particular metrics that would be relevant to this litigation.

Walsh's limited testimony shows that AWS's statements were inaccurate and confirms that there are, indeed, a small handful of readily identifiable metrics that the DynamoDB team uses to evaluate the performance of DynamoDB and the ███████████. Walsh's testimony further confirms that AWS has *not* produced "what AWS considers the most useful metrics" and that the metrics AWS *has* produced do not reflect the data AWS actually uses, since AWS has not provided data at key percentiles.

*First*, Walsh confirmed that the DynamoDB team frequently reviews metrics showing the ████████████████████████████████████. *Id.* at 73:15-74:22, 101:4-11, 212:8-17 ██████. Walsh testified that the metadata team evaluates ████████████ ████████████████████. *Id.* at 214:2-12. **This testimony demonstrates that AWS has not complied with the Court's order to produce "what AWS considers the most useful metrics." AWS must immediately produce ████████████████████████ ████████████████████████████████████████████████████.**

*Second*, Walsh explained that the DynamoDB team generally does not rely on averages when evaluating metrics, but instead evaluates metrics at different percentile levels ("P" or "tp" levels), including at ████████████ levels. *See id.* at 102:21-103:7 (agreeing that the DynamoDB team "look[s] at all the metrics that [they] look at, at different percentiles"), 190:3-194:10, 200:18-201:6 (Discussing latency: "[W]e would look at different percentiles, we would look at ██. We would look at ██, we might look at ██."), 213:2-12 (DynamoDB evaluates metadata partition utilization at ██ and ██). Despite this fact, AWS's metrics productions are mostly limited to "average" data. In other words, the data AWS has produced does not accurately reflect the metrics AWS actually uses to evaluate performance. **Walsh's testimony demonstrates that percentile data is readily available. AWS must immediately supplement its metrics productions by providing data at the ████████████ levels for each DynamoDB-related metric AWS has produced that has percentile values to report, for as far back as that data is available. Where appropriate (e.g., for utilization metrics), AWS should also produce data at the ██ level.**

*Third*, Walsh confirmed that the DynamoDB team reviews ████████████████████ separately, rather than together. *Id.* at 189:13-190:2. Yet, the ████████████████ ████████████████████. **AWS must immediately produce ████████████████ (separately) for as far back as the data is available, for at least the ████████████ levels.**

*Fourth*, Walsh confirmed that the data shown in AMZ_KOVE_000520272 (Ex. 29) should be available at a more granular level. As produced, the data shows the ████████████ ████████████████████████. Walsh confirmed that ████████████████████ ████████████████████████████████████████████████████. *Id.* at 95:20-96:7, 97:18-98:1. **AWS must immediately produce data showing the ████████ ████████████████████████████████████████████████████████████████ ████████████████████████.**

*Fifth*, Walsh confirmed that the data in Column B of AMZ_KOVE_000390577 (Ex. 1) is incorrect, as it corresponds to the "EU-WEST-1" region rather than the "US-WEST-1" region. *Id.* at 140:8-19. Walsh further confirmed that AWS did not take steps to preserve the correct data for the US-WEST-1 region, such that the data is lost forever and cannot be recovered. *Id.* ***AWS must immediately produce the data from AMZ_KOVE_000390577 for the US-WEST-1 region for as far back as the data is available.***

*Finally*, during the deposition, Walsh referenced a note sheet that provided additional information regarding the metrics AWS produced. *Id.* at 44:2-7 ("I have notes locally on this, if I'm able to pull them up. Q: Sure. ... Make sure that you save those notes so that you can send them to me. A: Okay."). Kove asked Walsh to preserve his note sheet so it could be produced. *Id.* Kove also followed up with AWS counsel after the deposition and asked AWS to produce the notes. *See* 4-24-23 e-mail from Kove to AWS. AWS has not yet produced these notes. ***AWS must immediately produce the notes Walsh referenced during the deposition.***

### AWS Failed to Produce Two Documents Prior to the Deposition, Despite the Court-Ordered Production Deadline of January 10, 2023

Just hours before the Walsh deposition was scheduled to begin, Kove discovered that two DynamoDB-related metrics cited in AWS's recently-served interrogatory responses had not been produced. Kove brought this problem to AWS's attention prior to the deposition, noted the production problem on the record, and left the deposition open (with several hours of time left on the record) so that it could ask Walsh about the documents after they were produced. *See* Rough Walsh Tr. at 7:18-8:20. ***AWS must make Walsh or another prepared corporate designee available to testify regarding the substance of the two late-produced documents (AMZ_KOVE_000532308 and AMZ_KOVE_000532309).***

### Walsh's Testimony Confirms AWS Has Spoliated Evidence

With few exceptions, AWS has only produced metrics dating back to ▬▬▬. Kove has suspected AWS failed to take steps to adequately preserve metrics and other data relevant to this case. *See* 3-18-22 Letter from Kove to AWS; Dkt. 437 at 12-13 & nn.38-39. When Kove raised its concerns with AWS, AWS assured Kove it had satisfied all preservation obligations. 4-1-22 letter from AWS to Kove. Kove attempted to obtain information regarding AWS's preservation efforts in its first deposition of Walsh, but AWS objected on grounds of privilege and instructed Walsh not to answer. *See* 8-25-21 Walsh Tr. at 217:16-221:12. Walsh's recent testimony, however, confirms that key data has, indeed, been spoliated.

Walsh testified that AWS stores all DynamoDB-related metrics in a database ▬▬▬ for, at most, ▬▬▬, at which point they are automatically deleted. Walsh Rough Tr. at 123:19-124:6, 184:2-6. As part of its litigation and evidence preservation obligations, AWS was required to take steps to prevent relevant data from being deleted. Walsh's testimony, however, confirms AWS did not take *any* steps to prevent relevant metrics from being deleted. *Id.* at 123:19-125:18. Had AWS taken steps to preserve metrics, Kove would have metrics dating back to ▬▬. Because AWS did not take steps to preserve these metrics, Kove is missing *years'* worth of data prior to ▬▬▬. *See, e.g., id.* at 123:9-18. To make matters worse, AWS will need to re-pull many of those metrics to include data at the ▬▬▬ level and to correct various errors

in its initial data pull (e.g., wrong regions and incorrect datasets). This means Kove will only have complete data dating to ▮▮▮▮▮▮, at best.

While this problem impacts most of the DynamoDB metrics AWS has produced, there is one issue which is especially troubling.

In its December 30, 2022 discovery order, the Court ordered AWS to produce information sufficient to show the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from 2006-2020. Walsh confirmed that AWS only stores this data ▮▮▮▮▮▮▮▮ at which point it is automatically deleted. Rough Walsh Tr. at 47:9-15. Walsh further confirmed that AWS could have taken steps to preserve ▮▮▮▮▮▮▮▮▮▮ information over time, but failed to do so. *Id.* at 49:10-16. Thus, this ▮▮▮▮▮▮▮▮▮▮ information has been irretrievably (and needlessly) lost.

While AWS has provided *some* ▮▮▮▮▮▮▮▮▮▮ information, Walsh testified that the data AWS collected was incorrect, incomplete, or both; that the data would need to be repulled; and that the underlying source of that data no longer exists, such that the only information AWS would be able to provide would be from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See supra* at 2 (first two bullet points).

Kove previously brought this concern to AWS's attention, and AWS agreed to "attest" that the ▮▮▮▮▮▮▮▮▮▮ information it provided would be representative across time. *See* 12-6-22 Letter from AWS to Kove ("If AWS does not have this information for the entire requested timeframe, it will attest that the ▮▮▮▮▮▮▮ shown in the March 23, 2021 data is representative of the ▮▮▮▮▮▮▮ for all relevant time periods."). AWS never provided such an attestation, and Walsh appeared to refute it. *See id.* at 78-86.

Kove intends to file a motion for Rule 37 sanctions based on AWS's spoliation of metrics data. Before taking this step, however, Kove wants to provide AWS with an opportunity to propose a solution. **Please be prepared to discuss this issue and a potential solution during our upcoming meet and confer.**

***

Discovery closes tomorrow and AWS continues to resist basic and court-ordered discovery. With discovery all but closed and the court's admonishment that no further extensions will be granted, it is imperative that AWS respond promptly to the serious concerns identified in this letter.

**To that end, AWS must provide a verified statement, as described above, by Monday, May 8, must make the signatory available for deposition by no later than May 12, and must provide all missing information—including interrogatory supplements and metrics—by no later than May 10. Please be prepared to discuss the above issues during our upcoming meet and confer, currently scheduled for Monday, May 8, 2023.**

Best Regards,

*Adam Adler*

Adam Adler