# Exhibit SS

| | | |
|---|---|---|
| KOVE IO, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-08175 |
| | ) | |
| AMAZON WEB SERVICES, INC., | ) | Hon. Matthew F. Kennelly |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SUPPLEMENTAL AND AMENDED RESPONSES TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES (NOS. 1-6)

Pursuant to Federal Rule of Civil Procedure 33 and the rules and orders of this Court, Defendant Amazon Web Services, Inc. ("Amazon") hereby responds with the supplemental responses and objections set forth below to Plaintiff Kove IO, Inc.'s ("Kove") First Interrogatories to Amazon (Nos. 1-6). Specifically, Amazon supplements below its responses and objections to Interrogatory Nos. 2, 3, 4, and 6. Amazon's investigation concerning the matters raised by Kove's Interrogatories and Kove's discovery is continuing, and, pursuant to Federal Rule of Civil Procedure 26(e), Amazon expressly reserves the right to amend and/or supplement these responses and its production of documents if it learns of additional responsive information.

## GENERAL OBJECTIONS

Amazon hereby incorporates its General Objections set forth in its Response to Plaintiff's First Set of Interrogatories, its First Amended Response to Plaintiff's First Set of Interrogatories and its Second Supplemental Response to Plaintiff's First Set of Interrogatories.

Amazon further objects to each Interrogatory to the extent Kove seeks Amazon respond to additional discrete subparts that are outside the scope of the Interrogatory, as requested in Kove's March 5, 2021 letter from Adam Adler to Elizabeth Bernard. Amazon is only obligated to respond

to each Interrogatory as propounded and won't respond to any additional discrete subparts Kove

purports to add through correspondence.[1]

**SUPPLEMENTAL OBJECTIONS AND RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

Identify and explain all factual and legal bases supporting Your contention that Your infringement of the Patents-in-Suit is not knowing, willful, and deliberate, including the circumstances surrounding Your first awareness of the Patents-in-Suit (as well as its applications and any publications thereof), including: (a) the date of first awareness, (b) the persons involved, (c) the content of any related communications or documents, and (d) all actions taken by You as a result of becoming aware, including any investigation by You or any opinion sought by You relating to infringement or invalidity. Your answer should include an identification of all documents and communications related to Your answer (by Bates range) and the persons most knowledgeable about Your answer.

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1 (JUNE 11, 2021):**

Amazon objects to this Interrogatory as overly broad and unduly burdensome to the extent

that it seeks information that is not relevant to any claim or defense in the litigation. Kove's

Complaint doesn't assert that Amazon's alleged infringement was willful, as it doesn't allege any

facts in support of such a theory. Amazon also objects to this Interrogatory to the extent it seeks to

improperly shift Kove's burden of proving willfulness to Amazon. Amazon further objects to this

Interrogatory to the extent it calls for legal conclusions. Amazon further objects to this

Interrogatory as seeking information protected by the attorney-client privilege and/or work product

doctrine to the extent it seeks outside counsel's investigations and analysis regarding invalidity

and non-infringement in this litigation. Amazon further objects to this Interrogatory as unduly

burdensome and not relevant to any claim or defense and disproportionate to the needs of this case

---

[1] *See, e.g., Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*, 2020 WL 1701861, at *8 (N.D. Ill. Apr. 8, 2020).

to the extent it calls for evidence of awareness of patent applications, publications, and/or foreign patents.

Subject to the foregoing specific and general objections, Amazon states that it had no awareness of the patents-in-suit and no knowledge of any potential or purported infringement of the patents-in-suit until it was served with Kove's Complaint (D.I. 1) on December 14, 2018. Following service, Amazon engaged outside counsel to investigate the allegations in the Complaint and to represent Amazon in this matter. Amazon's outside counsel thereafter prepared non-infringement, invalidity and unenforceability contentions that have been provided to Kove, demonstrating that the accused Simple Storage Service and DynamoDB don't infringe the patents-in-suit and the patents-in-suit are invalid and/or unenforceable.

Furthermore, citation of a patent-in-suit during prosecution of other patents isn't sufficient to establish a corporation's awareness of the patents-in-suit nor the knowledge of alleged infringement required to prove willful patent infringement.[2] Patent prosecution counsel for Amazon Technologies, Inc. doesn't have any connection to Amazon's decisions regarding the accused services. And each of the Amazon Technologies, Inc. patents that list a patent-in-suit as a reference on its face cites to hundreds of patents and publications, of which the patents-in-suit are only at most three. *See, e.g.,* U.S. Patent Nos. 8,447,831, 8,533,293, 8,606,996, 9,083,743, 9,774,619, 9,819,567, 10,110,694, 10,348,639, 10,503,613, 10,831,549. Thus, the patents-in-suit were cited among hundreds of other references during prosecution and awareness of any patent-

---

[2] *See, e.g., DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 471 (D. Del. 2016); *see also Core Optical Techs., LLC v. Nokia Corp.*, 2020 WL 6126285, at *7 (C.D. Cal. Oct. 8, 2020); *Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, 2019 WL 8107921, at *2 (E.D. Va. Feb. 26, 2019); *Radware, Ltd., et al. v. F5 Networks, Inc.*, Case No. 5:13-cv-02024-RMW (N.D. Cal. Aug. 22, 2016); *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, 2012 WL 6968938, at *1 (D. Del. July 18, 2012); *Cordance Corp. v. Amazon.com Inc.*, 639 F. Supp. 2d 406, 412-16 (D. Del. 2009).

in-suit can't be imputed to the corporation to support a finding of willfulness and knowledge of infringement.[3] *See also* AMZ_KOVE_000057588 - AMZ_KOV_000061121 and AMZ_KOVE_000062774 - AMZ_KOV000064002, which are patents owned by or assigned to other Amazon corporate entities not involved in this case and that list the patents-in-suit as a reference cited during prosecution, among many other cited references. Amazon also incorporates by reference the Complaint, Amazon's non-infringement, invalidity and unenforceability contentions, and Kove's Responses to Amazon's Interrogatory Nos. 9 and 25.

**INTERROGATORY NO. 2:**

Identify all factual and legal bases for each of Your counterclaims and affirmative defenses in this action. Your answer should include an identification of all documents and communications related to Your answer (by Bates range) and the persons most knowledgeable about Your answer.

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2 (JUNE 11, 2021):**

Amazon objects to this Interrogatory, seeking "all factual and legal bases" for each of Amazon's counterclaims and defenses, as overly broad, unduly burdensome and disproportionate to the needs of this case. Amazon also objects to this Interrogatory to the extent it seeks to improperly shift Kove's burden of proving infringement to Amazon. Amazon further objects to this Interrogatory because Kove's Final Infringement Contentions and Kove's Amended Final Infringement Contentions are deficient and fail to sufficiently put Amazon on notice of its conduct alleged to be infringing. Amazon further objects to this Interrogatory to the extent it seeks information regarding any Amazon service other than "S3" and "DynamoDB." Specifically, Amazon won't respond to this Interrogatory regarding the unaccused Glacier service. Amazon further objects to this Interrogatory as it seeks information that is solely within the possession,

---

[3] *See Olaf Soot Design, LLC v. Daktronics, Inc.*, 325 F. Supp. 3d 456, 464 (S.D.N.Y. 2018) (finding reference to the patent-in-suit "buried among 139 patents listed on one such IDS" insufficient to prove knowledge for purposes of willful infringement).

custody and control of Kove, and Kove hasn't completed its discovery in this case, including completing its document production, supplemental interrogatory responses, and providing Rule 30(b)(6) and Rule 30(b)(1) witness(es). Amazon therefore will further supplement this Interrogatory once Kove has completed its discovery in this case. Amazon further objects to this Interrogatory as including at least nine discrete subparts and thus Amazon counts this Interrogatory as at least nine separate Interrogatories.[4]

Subject to the foregoing specific and general objections, Amazon states as follows:

**Defenses**

**Non-Infringement**: Amazon doesn't make, use, sell, offer for sale, or import into the United States, and hasn't made, used, sold, offered for sale or imported into the United States any products or services that infringe any valid claim of the patents-in-suit willfully, directly, indirectly, contributorily, through the doctrine of equivalents, or otherwise, and hasn't induced others to infringe any valid claim of the patents-in-suit. Exemplary factual and legal bases for this affirmative defense may be found in Amazon's Initial Non-Infringement and Invalidity Contentions, and Final Non-Infringement Contentions. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers Kove to those contentions.

**Invalidity**: At least the asserted claims of the patents-in-suit are invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 100 et seq., 101, 102, 103, 112, the requirements of the Code of Federal Regulations, as well as general principles of patent law, including the prohibition against double patenting. Exemplary factual and legal bases for this affirmative defense may be found in

---

[4] *Finjan, Inc. v. Qualys Inc.,* 2020 WL 4923964, at *2-3 (N.D. Cal. Aug. 21, 2020) (finding interrogatory seeking defendant to "[d]escribe in detail the complete legal and factual basis *for each affirmative defense*" is ten interrogatories) (emphasis in original).

Amazon's Initial Non-Infringement and Invalidity Contentions, Amazon's Final Unenforceability and Invalidity Contentions, Amazon's Amended Final Unenforceability and Invalidity Contentions, Amazon's Second Amended Final Unenforceability and Invalidity Contentions, and Amazon's Motion for Judgment on the Pleadings. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers Kove to those contentions and papers.

**Failure to State a Claim**: The Complaint fails to state a claim for all the reasons set forth in Amazon's papers filed in support of Amazon's Motion for Judgment on the Pleadings and Amazon's Motion to Dismiss. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers Kove to those papers. Further, Plaintiff has failed to establish that it is the owner of the patents-in-suit with rights to sue for infringement and damages, including past infringement and damages, and thus cannot maintain the instant action. Specifically, Plaintiff hasn't established that the chain of title of the patents-in-suit extends directly from the named inventors to Kove IO, Inc. as explained in more detail below regarding Amazon's standing defense and as shown in Kove's incomplete Responses to Amazon's Interrogatory Nos. 13 and 15-16, as Kove has failed to establish the consideration for the transfer of the patents-in-suit. Pursuant to Fed. R. Civ. P. 33(d), Amazon also refers Kove to the documents identified above and the patents-in-suit and their respective file histories, including the patent assignments and recordation documents.

Amazon identifies Dr. John Overton as a person knowledgeable about this defense. Amazon can't provide a complete response to this Interrogatory until Kove completes its discovery in this case, including completing its document production and supplemental interrogatories, as well as providing its Rule 30(b)(6) and Rule 30(b)(1) testimony.

**Unenforceability**: Plaintiff's attempted enforcement of the patents-in-suit against Amazon is barred by the doctrine of inequitable conduct. The factual and legal bases for this affirmative

defense may be found in Amazon's Answer at pp. 38–39. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers Kove to that Answer and to Amazon's Initial Non-Infringement and Invalidity Contentions, Amazon's Final Unenforceability and Invalidity Contentions, Amazon's Amended Final Unenforceability and Invalidity Contentions, and Amazon's Second Amended Final Unenforceability and Invalidity Contentions.

Responding further, Kove has produced a key piece of prior art ("Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web," by David Karger et al. ("Karger '97"), *see* KOV_00039222) that would have invalidated the patents-in-suit had it been before the patent examiner during prosecution.[5] The metadata for the article, produced from inventor John Overton's files, indicates that the file was created January 3, 1999. Thus, Dr. Overton, an inventor, was in possession of this article prior to and during the prosecution of each of the patents-in-suit.

Karger '97 and Dr. Karger's work at MIT are highly material prior art to the patents-in-suit, but neither prosecution counsel nor the inventors disclosed Karger '97 or Dr. Karger's other work (shown in other published articles and patents) to the Patent Office. Karger '97 is material to the patents-in-suit at least because it describes "caching protocols for distributed networks that can be used to decrease or eliminate the occurrence of hot spots" in networks such as the World Wide Web. Karger '97 also disclosed the use of caching protocols "based on a special kind of hashing we call consistent hashing" and that "consistent hash functions may eventually prove to be useful in other applications such as distributed name servers and/or quorum systems." Karger '97 further discussed that "[w]e believe the ideas have broader applicability. In particular, consistent hashing

---

[5] Amazon incorporates its Second Amended Final Invalidity and Unenforceability Contentions demonstrating the materiality of the Karger '97 reference to the prosecution of the patents-in-suit and how Dr. Karger's pre-2000 work at MIT invalidates the patents-in-suit.

may be a useful tool for distributing information from name servers such as DNS and label servers such as PICS in a load-balanced and fault tolerant fashion." Karger '97 thus described a hashing technique known as consistent hashing which stored and retrieved data by a hashed key across a set of distributed and dynamic server machines.[6]

The materiality of the Karger reference to the prosecution of the patents-in-suit is further demonstrated by the inventor's knowledge of Dr. Karger's work at MIT and recognition of its importance to claims related to distributed hash tables. In particular, Dr. Overton wrote a draft letter to Paul Carmichael claiming that the patents-in-suit include "method claims and specific system claims regarding distributed hash tables." *See* KOV_00057828.[7] In this letter, Dr. Overton demonstrated his knowledge of this work being done at MIT (where Dr. Karger is a professor) regarding distributed hash tables and systems, but falsely claimed that the work only post-dated the patents-in-suit. Indeed, as shown above, the metadata on the Karger '97 article from Dr. Overton's files dates back to early 1999, prior to the filing dates of the patents-in-suit. Dr. Karger's pre-2000 work is also cited in other articles regarding distributed hash tables produced from the files of Dr. Overton, with metadata showing Dr. Overton was in possession of these articles at least during the prosecution of the patents. *See* KOV_00055037 (metadata shows date created in Dr. Overton's files was October 5, 2001); *see also* KOV_00060030. It's thus clear that Dr. Overton was aware of Dr. Karger's work at MIT and the Karger '97 reference prior to and during the

---

[6] And Karger '97 is cited in the Dynamo paper (Dkt. No. 1, Ex. 21) that Kove identifies as supporting its infringement allegations. Kove therefore can't deny the materiality of Karger '97. And other work of Dr. Karger was the basis for objections by the Examiner during the prosecution of a later patent application that claimed priority to the patents-in-suit but was abandoned, further showing the materiality of Dr. Karger's work at MIT. *See, e.g.*, KOV_00061409.

[7] The metadata for this letter indicates it was created on October 31, 2005, during the prosecution of the patents-in-suit. Kove's April 10, May 12 and May 27, 2020 privilege logs provide a date of November 4, 2005. Yet neither Karger's work nor the MIT work referenced in this letter regarding distributed hash tables was provided to the Patent Office by Dr. Overton.

prosecution of the patents-in-suit and was aware of its materiality to claims regarding distributed hash tables and systems, but never provided the Karger reference or any of the MIT work to the USPTO, in violation of his oath and duty of candor. Dr. Overton and/or the prosecuting attorney thus made a deliberate decision to withhold Karger '97 and the MIT work from the USPTO with knowledge of the materiality and with the specific intent to deceive the USPTO. The patents-in-suit are unenforceable because the inventors and/or the prosecuting attorney failed to disclose Karger '97 and the MIT work and therefore made material misrepresentations about the prior art to the USPTO.

Pursuant to Fed. R. Civ. P. 33(d), Amazon also refers Kove to the documents identified above and the patents-in-suit and their respective file histories. Amazon identifies Brinks Gilson & Lione, Dr. John Overton, and Dr. Stephen Bailey as the persons knowledgeable about this defense. Amazon can't provide a complete response to this Interrogatory until Kove completes its discovery in this case, including completing its document production and supplemental interrogatories, as well as providing its Rule 30(b)(6) and Rule 30(b)(1) testimony.

**Failure to Mark**: Plaintiff and any predecessors in interest to the patents-in-suit failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287, or otherwise to give proper notice that Kove's purported products or services embodied or were covered by the patents-in-suit. Accordingly, Plaintiff cannot recover damages for any period before the date the Complaint in this action was filed, December 12, 2018, which was the earliest potential date Amazon received actual notice that Kove contended Amazon was infringing the patents- in-suit.

Kove has identified several commercial embodiments of the patents-in-suit, including but not limited to the "OverX and Xpress software," "OverX Location Servers (OXLS)," "Xpress

Server," "The Xpress Association Database," "XTN for Telecommunications," "XRN for Registry Services," "XSN for Storage Services" and "Xpress Database." *See* Kove's Responses to Interrogatory No. 3. Kove has admitted that it never marked any of these embodiments. *See id.*; December 11, 2020 Kove's Responses to Amazon's Second Set of RFAs. But Kove made, offered to sell and/or license these embodiments to partners and customers in the United States after issuance of the first patent-in-suit on September 5, 2006 or made and/or sold the software embodiments incorporated in other Kove or partner products and therefore failed to comply with its duty to mark in accordance with 35 U.S.C. § 287.

This is demonstrated by Kove's website, www.econnectix.com, which until at least February 2015 marketed the admitted embodiments of the patents-in-suit as "Data Management Products" and offered to license the embodiments of the patents-in-suit. As the website stated: "We license data management technology to partners and sell integrated data solutions." The econnectix.com domain website further stated "Please contact us for more information" on the "Products" webpage, which clearly identified, as an example, The Xpress Association Database embodiment. The econnectix.com domain also provided a link to at least one Data Sheet for, as an example, The Xpress Association Database, that stated "XPress provides performance, scalability, and replication policies unavailable by other technologies – at substantial cost-savings and reduced TCO." The econnectix.com domain also provided a link to at least one Data Sheet that stated "The XPress product line includes the generic XPress Association Database, XPress XTN for Telecommunications (911, Call Routing, Name Management; IM, VoIP, 3G, LBS, E911), XPress XRN for Registry Services (DNS, Directory Services), and XPress XSN for Storage Networks (CDN, NAS, SAN). The company licenses its technology to infrastructure software and service providers to be integrated into their product and service offerings."

Kove also sold or licensed, and offered for sale or license, other products incorporating at least one of the embodiments (e.g., the Xpress Association Database embodiment) as confirmed by the Econnectix website that stated: "At the base of its products, Econnectix has designed an association database technology called XPress." Though Kove has failed to meet its discovery obligations in this case and preserve and produce this information from its website from 2006-2015, the available copies of this website demonstrate that these embodiments were at least made and offered for license to the public and potential third-party partners.[8] *See, e.g.,* AMZ_KOVE_00090100-361.

Kove also entered into contracts with partners to license and resell the embodiments as data management technology. For example, on November 12, 2009, Econnectix Corporation entered into a "Value Added Reseller Agreement" with Tekserve Corporation, a New York corporation ("the Tekserve Agreement" at KOV_00039512). The Tekserve Agreement identified Tekserve Corporation as a "Reseller" and stated that "the parties desire that Reseller purchase and resell the Products." The Tekserve Agreement states "Econnectix has developed certain high performance data storage and management technologies (defined as 'Products' below)." The "Products" Tekserve Corporation agreed to resell in accordance with the Tekserve Agreement thus included at least the Xpress Association Database, XTN for Telecommunications, XRN for Registry Services and XSN for Storage Services defined as Econnectix "data management technologies" on the website. The Tekserve Agreement further identified the "Products" for Tekserve Corporation to resell as "Xpress hardware and associated software, release specified in purchase

---

[8] Several webpages and documents however aren't recoverable on www.archive.org and thus Kove's failure to preserve the www.econnectix.com website after it had a duty to do so for this litigation has left Amazon without highly relevant information and evidence regarding Kove's making, sale and offer to sale or license embodiments of the patents-in-suit.

order." But the Tekserve Agreement didn't require Tekserve Corporation to mark the "Products" with the patent numbers of the patents-in-suit. And Kove entered the same agreement with Abba Technologies, Inc., a New Mexico corporation (KOV_00039534), SpecVet, Inc., a Wisconsin corporation (KOV_00039589), MTG Security Inc., a Colorado corporation (KOV_00039638), WireSpeed Data, Inc., a Florida corporation (KOV_00039665), and Net Source, Inc., a Colorado corporation (KOV_00040130).

Amazon identifies Dr. John Overton and other Kove employees unknown to Amazon at this time as the persons with knowledge regarding this defense. Amazon can't provide a complete response to this Interrogatory until Kove completes its discovery in this case, including completing its document production and supplemental interrogatories, as well as providing its Rule 30(b)(6) and Rule 30(b)(1) testimony.

**Statute of Limitations**: Plaintiff's claims for damages are barred, in whole or in part, by the six-year limitation of damages in 35 U.S.C. § 286. Because Amazon's S3 and DynamoDB products were originally released before December 12, 2012, Plaintiff's claims for damages before that date are barred.

**Equitable Defenses**: Plaintiff's attempted enforcement of the patents-in-suit against Amazon is barred by the equitable doctrine of unclean hands. Exemplary factual and legal bases for this affirmative defense may be found in Amazon's Answer at pp. 40–42. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers Kove to that Answer.

Specifically, Plaintiff has acted in bad faith with respect to this lawsuit, including during discovery. First, Amazon served its First Set of Requests for Production of documents on June 20, 2019. Among other things, those requests sought documents related to the prosecution of the Asserted Patents and Plaintiff's knowledge of prior art. Plaintiff produced few documents

responsive to those requests. Its document productions consisted largely of publicly available correspondence with the Patent Office and publicly available open-source code. Throughout the fall of 2019, Amazon sent Plaintiff multiple discovery letters detailing the deficiencies in Plaintiff's productions and the parties conferred several times concerning Amazon's requests that Plaintiff produce all responsive documents.

Finally, on February 10—only three days before Amazon's deadline to serve its Final Invalidity Contentions—Plaintiff produced over 20,000 pages of documents to Amazon. Plaintiff made two additional productions totaling over 19,000 pages in the days immediately following that deadline. The February productions contained many documents relating to the prosecution of the patents-in-suit. Those documents are highly relevant to several issues in this case, including, among other things, a defense of inequitable conduct. Although Amazon requested the basis for this delay, Plaintiff didn't offer any explanation for waiting over seven months after Amazon served its document requests to produce those documents. Because of Plaintiff's discovery misconduct—coupled with the patent applicants' inequitable conduct in prosecution of the patents-in-suit, as set forth in Amazon's fourth additional defense on unenforceability—the doctrine of unclean hands bars Plaintiff's claims.

Second, Kove failed to maintain highly relevant documents and information it had an obligation to preserve for this case. Kove confirmed in its April 30, 2021 letter from Michael Marvin to Jeff Saltman that it didn't preserve the Econnectix website, including the Econnectix webpages that marketed and offered for sell and/or license the Kove embodiments after the issuance of the patents-in-suit. Kove's letter also stated that it decommissioned and repurposed a virtual machine related to that website in August 2019, well-after the filing of this lawsuit.

Though Kove claimed in its letter that it produced prior archived versions of the website, Kove confirmed during a meet and confer that it only produced webpages from 2003 or earlier and didn't produce later versions of its website, including after the issuance of the patents-in-suit. Kove thus only maintained and produced webpages prior to the issuance of the patents-in-suit. But as Kove's letter makes clear, the Econnectix website was available until at least March 2015 and Kove knowingly failed to preserve the website, including the webpages and documentation after the issuance of the patents-in-suit that are highly relevant to Amazon's marking defense. During the meet and confer, Kove confirmed that the Econnectix website was deleted, but refused to answer Amazon's questions regarding exactly when that website was fully deleted and what additional information was deleted, including what information was on the virtual machine that was decommissioned and repurposed eight months after the filing of this case, claiming that Amazon "isn't entitled to that discovery."

Both before and after the filing of this case, Kove had a duty to preserve information relevant to this case, including information related to marketing and offers to sell and/or license the embodiments of the patents-in-suit. Indeed, Kove has admitted it anticipated litigation as early as July 12, 2014 (and claimed work product protection in this case as of that date) and had a list of cloud companies identified for infringement litigation by May 2015.[9] Kove thus had an obligation to preserve responsive information, including the Econnectix website, at least by July 12, 2014, but indisputably by August 2019 when it decommissioned and repurposed the virtual machine.[10]

Amazon identifies Dr. John Overton, Kove's counsel and unknown Kove employees or contractors as the persons knowledgeable about this defense. Amazon can't provide a complete

---

[9] *See* Kove's September 16, 2020 Privilege Log.

[10] *See, e.g., Escamilla v. SMS Holdings Corp.,* No. CV 09-2120, 2011 WL 13243580, at *37 (D. Minn. June 28, 2011).

response until Kove completes its discovery in this case, including completing its document production and supplemental interrogatories, as well as providing its Rule 30(b)(6) and Rule 30(b)(1) testimony regarding the destruction of documents and information regarding embodiments since July 2014.

**Double Patenting**: Claims 1, 3, 6, 10, 14, 17, 23, 24, 30 and 31 of the '978 patent are invalid under the doctrine of obviousness-type double patenting. Exemplary factual and legal bases for this affirmative defense may be found in Amazon's papers filed in support of its Motion for Judgment on the Pleadings, in Amazon's Final Invalidity Contentions, in Amazon's Amended Final Unenforceability and Invalidity Contentions, and in Amazon's Second Amended Final Unenforceability and Invalidity Contentions. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers Kove to those papers and contentions.

**Lack of Standing**: Plaintiff has failed to establish that it is the owner of the patents-in-suit with rights to sue for infringement and damages, including past infringement, and thus lacks standing to bring the Complaint. Specifically, Plaintiff hasn't established that the chain of title of the patents-in-suit extends directly from the named inventors to Kove IO, Inc. *See* Kove's Responses to Amazon's Interrogatory Nos. 13, 15-16. For instance, Kove hasn't identified evidence of consideration for the transfer of the patents-in-suit from the OverX Creditor Trust to Dr. Overton and Econnectix. Kove's Responses to Amazon's Interrogatory No. 13, 15 and 16 don't provide the requested detail regarding the consideration or whether Dr. Overton and/or Econnectix met the express promises of the agreement such that the transfer of the patents-in-suit was effective. *See, e.g.,* KOV_00009956 (¶ 1 "Receipt of Purchase Price," ¶ 3 "Earn Out"). Amazon's Interrogatory No. 16 expressly requests the detailed identification of the consideration for each agreement or transfer of the patents-in-suit. Kove's response doesn't provide any evidence to prove

receipt of the consideration, but, despite Amazon's requests, relies solely on Rule 33(d) citations to agreements, which don't provide evidence of receipt of consideration. Therefore, Kove has failed to meet its burden to provide evidence of ownership of the patents-in-suit by Kove IO, Inc. and thus lacks standing to bring this lawsuit.

Pursuant to Fed. R. Civ. P. 33(d), Amazon refers Kove to KOV_00000124, KOV_00000203, KOV_00000219, KOV_00000232, KOV_00000243, KOV_00000256, KOV_00000258, KOV_00000261, KOV_00000279, KOV_00000297, KOV_00000302, KOV_00000547, KOV_00000796, KOV_00002863, KOV_00003762, KOV_00009956, KOV_00009963, KOV_00009978, KOV_00036285, Kove's Responses to Amazon's Interrogatory No. 13, and 15-16, and to the patents-in-suit and their respective file histories including patent recordation and assignment documentation.

Amazon identifies Dr. John Overton, Mr. Michael Pechette, and Dr. Michael Roizen as persons knowledgeable about this defense. Amazon can't provide a complete response to this Interrogatory until Kove completes its discovery in this case, including completing its document production and supplemental interrogatories, as well as providing its Rule 30(b)(6) and Rule 30(b)(1) testimony, and Amazon has finished third-party discovery.

### Counterclaims

**Non-Infringement**: The factual and legal bases for these counterclaims may be found in Amazon's Initial Non-Infringement and Invalidity Contentions and its forthcoming Final Non-Infringement Contentions. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers you to those contentions.

**Invalidity**: The factual and legal bases for these counterclaims may be found in Amazon's Initial Non-Infringement and Invalidity Contentions, its Final Unenforceability and Invalidity

Contentions, its Amended Final Unenforceability and Invalidity Contentions, its Second Amended Final Unenforceability and Invalidity Contentions, and Amazon's papers filed in support of its Motion for Judgment on the Pleadings. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers you to those papers and contentions.

**Unenforceability**: The factual and legal bases for these counterclaims may be found in Amazon's Initial Non-Infringement and Invalidity Contentions, its Final Unenforceability and Invalidity Contentions, its Amended Final Unenforceability and Invalidity Contentions, its Second Amended Final Unenforceability and Invalidity Contentions, in Amazon's Answer at 44– 46, 48– 50, and 51–53, and supra at 3–5. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers you to that Answer and those contentions. *See also supra*.

**Unpatentability**: The patents-in-suit don't claim patentable subject matter under 35 U.S.C. § 101 and are thus unpatentable. The factual and legal bases for these counterclaims may be found in Amazon's Initial Non-Infringement and Invalidity Contentions, its Final Unenforceability and Invalidity Contentions, its Amended Final Unenforceability and Invalidity Contentions, its Second Amended Final Unenforceability and Invalidity Contentions, and in the papers filed in support of Amazon's Motion to Dismiss. Pursuant to Fed. R. Civ. P. 33(d), Amazon refers you to those papers and contentions.

Amazon's investigation continues, and Amazon reserves the right to supplement this answer in the event it discovers further information relating to its defenses and counterclaims following Kove's discovery in this case, including the Rule 30(b)(6) and Rule 30(b)(1) depositions of Kove, its document production and supplemental interrogatory responses, or determines other equitable or legal defenses to Kove's claims or counterclaims, that it may assert, as provided by the Federal Rules of Civil Procedure and the Northern District of Illinois Local Patent Rules.

**FOURTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2 (APRIL 13, 2023):**

Subject to and without waiving the foregoing general and specific objections, Amazon supplements its response as follows:

Amazon incorporates into its response, the following documents pursuant to Rule 33(d): Amazon's Fourth Amended Final Unenforceability and Invalidity Contentions, Amazon's Fifth Amended Final Unenforceability and Invalidity Contentions, Amazon's First Amended Final Non-Infringement Contentions, and Amazon's Second Amended Final Non-Infringement Contentions.

**INTERROGATORY NO. 3:**

Identify any acceptable, available, non-infringing alternatives or substitutes, to any of the inventions claimed in any of the asserted claims of the Patents-in-Suit that You are aware of or that You intend to rely upon for any purpose. Your explanation should include, without limitation, a description of each such alternative on a claim-by-claim and element-by-element basis for each of the Patents-in-Suit; when each such alternative became available or will become available to You; why You believe each such alternative is an acceptable, available, non-infringing alternative (including the specific claims and limitations of the Patents-in-Suit that the alternative would avoid infringing); the costs that are required or that would be required for You to develop or acquire each such alternative; the time that is required or would be required by You to develop each such alternative; the manpower that is required or would be required by You to develop each such alternative; the advantages and disadvantages of the alternative to You as compared to Your current approach; and any impact (however measured by You) that each such alternative would have, if implemented by You, on the performance, function or acceptability of each Accused Product. Your answer should include an identification of all documents and communications related to Your answer (by Bates range) and the persons most knowledgeable about Your answer.

**FOURTH SUPPLEMENTAL AND AMENDED RESPONSE TO INTERROGATORY NO. 3 (APRIL 13, 2023):**

Amazon objects to this Interrogatory to the extent it seeks to impose on Amazon the burden of proof or the burden of coming forward with evidence of non-infringing alternatives; as the plaintiff in this matter, Kove has the burden of proving the nonexistence of non-infringing alternatives. Amazon has no burden at all on this issue. Amazon's Interrogatory No. 7 asked Kove to provide a computation of damages, including a computation of [Kove's] alleged damages for a reasonable royalty under the *Georgia Pacific* factors. . .," which requires analysis of non-infringing

alternatives. Yet, Kove has failed to substantively address this issue in its responses to Amazon's interrogatories, and thus, has failed to meet its burden. Amazon further objects to this Interrogatory as premature because it is dependent at least in part on the Court's claim constructions and will likely need supplementation following that order. Amazon also objects to this request as premature and vague because Kove hasn't identified with sufficient particularity, on an element-by-element basis, how each asserted claim of the patents-in-suit is purportedly infringed by any Amazon product. These deficiencies in Kove's infringement contentions impair Amazon's ability to ascertain what constitutes a non-infringing alternative under Kove's theories. Amazon further objects to this Interrogatory to the extent it seeks information regarding any Amazon service other than "S3" and "DynamoDB." Specifically, Amazon won't respond to this Interrogatory regarding the unaccused Glacier service. Amazon further objects to this Interrogatory to the extent it calls for expert opinion and legal conclusions. Amazon further objects to this Interrogatory as including discrete subparts, as it seeks a response regarding two separate and different accused services and three patents-in-suit, and thus Amazon counts this Interrogatory as at least two separate Interrogatories.[11] Amazon further objects to this Interrogatory as seeking information that isn't relevant to an analysis regarding non-infringing alternatives, including "[a]ny advantages or disadvantages of each NIA, as compared to Amazon's current approach, including the respect to performance, function or acceptability."[12]

---

[11] *See Synopsys, Inc. v. ATopTech, Inc*, 319 F.R.D. 293, 295 (N.D. Cal. 2016) ("Where a case involves multiple accused products, courts generally have concluded that a single interrogatory seeking information about all accused products contains at least as many discrete subparts as there are accused products at issue, and potentially more depending on what information is sought about each accused product.")

[12] *See* March 5, 2021 A. Adler letter to E. Bernard; *see also* March 22, 2021 E. Bernard letter to A. Adler, incorporated herein (citing case law confirming it isn't appropriate to compare a non-infringing alternative to "Amazon's current approach").

Without waiving these objections and subject thereto, for its supplemental answer to this interrogatory, Amazon states as follows:

'170 Patent and S3: Numerous non-infringing alternatives were available as of the time of alleged first infringement of S3 with respect to the '170 patent, October 12, 2010. As one example, the S3 system is a non-infringing alternative as it doesn't meet each element of the asserted claims of the '170 patent, as explained in Amazon's noninfringement contentions. And even based on Kove's erroneous infringement analysis, Amazon could have made changes to the S3 source code that would have provided non-infringing alternatives to the asserted claims of the '170 patent. For example, claim 1 requires that a "portion of the data location information included in a . . . data location server[] is based on a hash function used to organize the data location information across the plurality of data location servers." Kove contends that the ███████████████ used in S3 satisfies this limitation. As Amazon explained in its noninfringement contentions, S3 doesn't satisfy this limitation. Moreover, even under Kove's erroneous and overly broad reading of the claim, S3 could have used another search structure wholly unrelated to ███████████. For example, the system could store ████████████ relationships in a distributed data structure that doesn't use █████ in any sense of the term, such as by ████████████. Alternatively, the system could allocate ████████████ without using █████ at all, such as by grouping ██████ by ██████████████ ████████████ ██████████████████████████ Moreover, to ensure the load is balanced across the system, Amazon could have used other measures, including for example, ████████████████████ ██████████████████████. All of these code changes to S3 would have been inexpensive to implement at the time of first infringement.

'978 Patent and S3: Numerous non-infringing alternatives were available as of the time of alleged first infringement of S3 with respect to the '978 patent, June 19, 2007. Kove contendsthat S3 infringes claims 1, 6, 17, 23, 24, 30 and 31 of the '978 patent. As one example, the S3 system is a non-infringing alternative as it doesn't meet each element of the asserted claims of the '978 patent, as explained in Amazon's noninfringement contentions.

And even based on Kove's erroneous infringement analysis, Amazon could have made changes to the S3 source code that would have been non-infringing alternatives to the asserted claims of the '978 patent. For example, claim 1 requires that the location information comprise an identifier and a location string associated with the identifier. Claim 1 requires that a location message be returned in response to a location query. Under one potential alternative, the ██████ ████████████ could return a message that provides no information that concerns the location of data, but instead directs the system to a different system component.

Claim 17 requires "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." S3 does not satisfy this element, but the system could have easily been modified in a number of ways so that it would be outside the bounds of this limitation even under Kove's erroneous and overbroad reading of the claim and incorrect technical understanding of how ████████████ work. For example, the system could have redistributed the features Kove considers to be "identifiers" and/or "locations" on a regular time basis or based on ███████████████████████████, as opposed to being based on the ██████████████████████████████████. Even if S3 ████████████████████████, as Kove apparently contends, the system could have been designed to simply copy – but not transfer – data from the ██████████ to the ████████████, while leaving information on the ███

21

███ accessible. All of these modifications are relatively simple and inexpensive to perform and could have been made at the time of the alleged first infringement.

Claim 31 of the '978 patent requires instructions for manipulating an identifier and at least one location associated with the identifier. S3 doesn't satisfy this claim. Claim 31 requires that the location server return a "location message if the location server contains location information for the desired entity." Even under Kove's erroneous and overbroad reading of the patent, one potential alternative would have been that the ████████████ could return a message that provides no information that concerns the location of data, but instead directs the system to a different system component.

The additional information this interrogatory requests regarding "costs," "time," "manpower," "advantages," and "impact" for these non-infringing alternatives is premature at this point in fact discovery and is more properly a subject of expert opinions. Amazon will provide this information during the expert discovery phase of the case, and will supplement its answer to this interrogatory at that more appropriate time.

'640 Patent and DynamoDB: Numerous non-infringing alternatives were available as of the time of the alleged first infringement of DynamoDB with respect to the '640 patent. Kove contends that DynamoDB infringes claims 17, 18 and 24 of the '640 patent. As one example, the DynamoDB system is a non-infringing alternative as it doesn't meet each element of the asserted claims of the '640 patent, as explained in Amazon's noninfringement contentions. And even based on Kove's erroneous infringement analysis, Amazon could have made changes to the DynamoDB source code that would have been non-infringing alternatives to the asserted claims of the '640 patent.

Claim 17 of the '640 patent requires that each data location server retrieves "location strings" associated with an "identification string." With a simple code modification available at the time of first alleged infringement, the ██████████ could contact the relevant ██████████ to obtain the data directly or to perform an update and return it ██████████████████ ██████████████████████ .

Claim 18 requires that the "location information" be used by a client to "calculate" a "location," which DynamoDB doesn't perform. But even under Kove's erroneous and overbroad reading of the claim, the source code could have been modified so that the ██████████ could return the locations of ██████████ directly, such that that no calculation would be performed.

Claim 18 of the '640 patent further requires the location server to transmit a redirect message to the client containing redirect information for use by the client to calculate a location, which DynamoDB doesn't perform. But even under Kove's erroneous and overbroad reading of the claim, Amazon could have modified the DynamoDB source code so that the ██████████ could return the locations of ██████████ directly, such that that no calculation would be performed. Further, the source code could have been modified so that the ██████████████████ ███ would simply contact the ██████████████████ in line if the ██████████████ ███ doesn't have the information. Alternatively, the source code could have been modified such that the client would query the ██████████████████ if the ██████████████████ doesn't have the relevant information. As another example, each ██████████████ could contain all of the relevant information such that there would be no "redirect" message sent to the client.

'170 Patent and DynamoDB: Numerous non-infringing alternatives were available as of the time of the alleged first infringement of DynamoDB with respect to the '170 patent. Kove

contends that DynamoDB infringes claims 1, 2, 6, 8, 9, 12 and 15 of the '170 patent. As one example, the DynamoDB system is a non-infringing alternative as it doesn't meet each element of the asserted claims of the '170 patent, as explained in Amazon's noninfringement contentions. And even based on Kove's erroneous infringement analysis, Amazon could have made changes to the DynamoDB source code that would have been non-infringing alternatives to the asserted claims of the '170 patent.

Claim 1 of the '170 patent requires that a "portion of the data location information included in a . . . data location server[] is based on a hash function used to organize the data location information across the plurality of data location servers." Although DynamoDB does not satisfy this limitation, the system could ███████████████████████████ – the feature Kove erroneously contends satisfies this limitation – and instead ███████████████ by using a statistical method such as a predictive algorithm based on a combination of customer information and prior customer system use. This method would determine which ███ are likely to be heavily accessed, and then split and organize the ███ into ██████. In addition, the DynamoDB system could have allocated the alleged "location information" to the ██████████ by a method that does not concern ████████ in any way, such as by grouping information for ██████████ ████████. Still further, Amazon could have used other measures to ensure the load is balanced across the system, for example, by analyzing █████████████████████████████ ████████.

Claim 6 requires, for example, programming logic configured to return in response to a location query related to a desired entity, a location message comprising a location associated with the desired entity. As an example, with a simple code modification, the ████████████ would return a message that provides no information that even arguably concerns the location of

data. For example, it could provide the location of some other system component (a new part of the system) that can return the location. Further, the source code could have been modified so that the ██████ would simply contact the ██████ in line if the ██████ doesn't have the information such that a location message is never returned. Alternatively, the source code could have been modified such that the client would query the ██████████ if the ██ ██████████ does not have the relevant information. As another example, each ██ ██████ could contain all of the relevant information such that there would be no location message sent.

Claim 15 requires, for example, "sending a redirect message to the client in response to determining the one of the plurality of location servers fails to include the location information, the redirect message identifying which of the plurality of location servers includes the location information." DynamoDB doesn't perform this, but even under Kove's erroneous interpretation of this term, there were several available non-infringing alternatives at the time of the alleged first infringement. For example, the source code could have been modified so that the ██████ ██████ would simply contact the ██████████ in line if the ██████ doesn't have the information such that a "redirect" message is never sent. Alternatively, the source code could have been modified such that the client would query the ██ ██████████ if the ██████████ does not have the relevant information. As another example, each ██████████ could contain all of the relevant information such that there would be no "redirect" message sent to the client. As still another alternative, it would have been a simple modification for the ██████ to contact ██████ associated with the identifier directly to obtain the data or to perform an update and return it ██████████ ██████████.

The additional information this interrogatory requests regarding "costs," "time," "manpower," "advantages," and "impact" for these non-infringing alternatives is premature at this point in fact discovery and is more properly a subject of expert opinions. Amazon will provide this information during the expert discovery phase of the case, and will supplement its answer to this interrogatory at that more appropriate time.

'978 Patent and DynamoDB: Numerous non-infringing alternatives were available as of the time of the alleged first infringement of DynamoDB with respect to the '978 patent. Kove contends that DynamoDB infringes claims 1, 3, 6, 10, 14, 17, 23, 24, 30 and 31 of the '978 patent. As one example, the DynamoDB system is a non-infringing alternative as it doesn't meet each element of the asserted claims of the '978 patent, as explained in Amazon's noninfringement contentions. And even based on Kove's erroneous infringement analysis, Amazon could have made changes to the DynamoDB source code that would have been non-infringing alternatives to the asserted claims of the '978 patent.

For example, claim 1 requires two separate location servers with different location information from that on a first location server; DynamoDB could have been reconfigured such that all ███████████████████████████████████ store the same set of information. As another alternative, it would have been a simple modification for the ███████████ to contact ████████ associated with the identifier directly to obtain the data or to perform an update and return it ███████████████████████████████

Claim 10 requires logic responsive to the location query to return one of a location message or a redirect message depending on whether the queried ███████████ contains location information for the desired entity or not. As an alternative, it would have been a simple modification for the ███████████ to contact ████████ associated with the identifier directly

26

to obtain the data or to perform an update and return it ██████████████████████ ████████████████████. As another example, the source code could have been modified so that the ████████████████ would simply contact the ████████████████████ in line if the ████████████████ doesn't have the information such that a location or redirect message is never sent. Alternatively, the source code could have been modified such that the client would query the ████████████████████ if the ████████████████ does not have the relevant information.

Claim 14 of the '978 patent requires a "redirect" message as other asserted claims and the alternatives available for those claims at the time of first alleged infringement would apply to this claim as well. As an example, the source code could have been modified so that the ████████ ████████████ would simply contact the ██████████████████████ in line if the ████████ ████████████ doesn't have the information such that a location or redirect message is never sent. Alternatively, the source code could have been modified such that the client would query the ████ ████████████████ if the ██████████████████ doesn't have the relevant information. As another example, each ████████████████████ could contain all of the relevant information such that there would be no "redirect" message sent to the client. As still another alternative, it would be a simple modification for the ████████████ to contact ██████████████ associated with the identifier directly to obtain the data or to perform an update and return it ████████████████████ ████████████████████.

Claim 17 of the '978 patent requires that the alleged location information comprise at least one application server address. Relatively simple source code changes would ensure that the ████████████████ do not return anything with an "application server address," instead, for example, returning a piece of information that is used elsewhere to look up an "application server address."

Claim 17 also requires "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit." DynamoDB could have been modified in a number of ways so that it wouldn't infringe even under Kove's erroneous and overbroad reading. For example, the system could view ███████████ aggregated either for all ██████████ on the system or for a smaller group of ██████████ – and not based on the ████████████████████ ████ – and then transfer the alleged "identifiers" and "associated locations" based on the group performance. Alternatively, even if ██████████ and ██████████ transferred data to other servers, as Kove apparently contends, another available alternative would have been for the system to monitor the available storage space and a transaction rate threshold for each ██████████ or ██████████, and upon hitting that limit, direct requests elsewhere, but not actually move data from one server to a second server. Similarly, the system could have been designed to simply copy – but not transfer – data from the ██████████ to the ██████████, while leaving information on the ██████████ accessible.

Claim 31 of the '978 patent requires instructions for manipulating an identifier and at least one location associated with the identifier. As an alternative, with a simple code modification, the ██████████████████ would return a message that provides no information that even arguably concerns the location of data. For example, it could provide the location of some other system component (a new part of the system) that can return the location. As still another alternative, it would have been a simple modification for the ██████████ to contact ██████████ associated with the identifier directly to obtain the data or to perform an update and return it ██████████ ████████████████████████████████████.

The additional information this interrogatory requests regarding "costs," "time," "manpower," "advantages," and "impact" for these non-infringing alternatives is premature at this point in fact discovery and is more properly a subject of expert opinions. Amazon will provide this information during the expert discovery phase of the case, and will supplement its answer to this interrogatory at that more appropriate time.

\* \* \*

Based on the foregoing explanations, changes to the source code that were available at the time of the first alleged infringement for both S3 and DynamoDB would have brought those systems outside of any alleged infringement, even based on Kove's erroneous and overly broad reading of the asserted claims. Amazon's experts will provide additional substantive detail on these alternatives, and likely others, that were available at the time of first infringement, including systems Kove hasn't accused of infringement.

Further, based on Kove's statements and arguments to the Patent Office during the reexamination of the patents-in-suit, non-infringing alternatives were available at the time of the first alleged infringement for both S3 and DynamoDB that would have brought those systems outside of any alleged infringement. Specifically, at the Patent Office, Kove asserted that the patents-in-suit require (1) location servers in non-hierarchical, cluster structures, (2) which each contain the relevant location information or information about where to locate the relevant location information, (3) and can resolve the request in two or fewer steps. Both S3 and DynamoDB don't meet those limitations as explained in Amazon's Second Amended Noninfringement Contentions. To the extent it is found that S3 and/or DynamoDB meet those limitations, Amazon could have modified the two accused services so that they don't meet those limitations. For example, Amazon could have adjusted the ███████████████████ in S3 or DynamoDB so that they have a hierarchical or mixed topology. Similarly, Amazon could have modified S3 or DynamoDB so that

each ▓▓▓▓▓▓▓▓▓▓▓▓ didn't either contain the location information or information about where the relevant location information is located. Such a system wouldn't be designed to resolve the location request in two or fewer steps as the system would query each ▓▓▓▓▓▓▓▓▓▓▓ until it was able to identify the pertinent information.

Amazon's investigation is ongoing. Amazon reserves the right to supplement its Response to this Interrogatory as fact discovery proceeds, or during or after claim construction, expert discovery, and as its investigation continues.

**INTERROGATORY NO. 4**:

For each Accused Product, identify the version(s) of the source code You produced, and identify any and all differences that You contend are Material Differences between each produced version(s) and all other versions of the Accused Product (commencing from six years before the Complaint was filed), and explain why You contend any such differences are Material Differences, including by identifying the Asserted Claim limitation that is implicated and by explaining why You contend that the Asserted Claim limitation is not met. For each Accused Product, Your answer should include an identification of all documents and communications related to Your answer, and the persons most knowledgeable about Your answer.

**SECOND SUPPLEMENTAL AND AMENDED RESPONSE TO INTERROGATORY NO. 4 (APRIL 13, 2023)**:

AWS incorporates by reference its objections to this interrogatory served on November 20, 2019. AWS supplements its response as follows.

**Versions of the source code**

AWS has made available over ▓▓▓▓▓▓▓▓▓▓▓▓, comprising over ▓▓▓▓▓▓▓▓▓ of electronic information. Each source code package that AWS has made available includes a folder named ".git" that includes version information for that source code package. ▓



DynamoDB and S3 regularly change. It would be irrelevant, excessively burdensome and disproportionate to the needs of this case to separately identify every version of every source code

package, and catalogue all changes to DynamoDB and S3 since 2012. Subject to that objection, below are examples of significant changes to DynamoDB and S3 since 2012.







[REDACTED]

Based on the specific allegations in Kove's Second Amended Final Infringement Contentions, AWS does not take the position that the introduction of these software packages resulted in any Material Changes, or that there were any other Material Changes during the damages period. If Kove modifies or supplements its infringement theories, AWS reserves the right to modify or supplement this response if there was a Material Change to functionality that Kove accuses.

AWS further states, pursuant to Fed R. Civ. P. 33(d), that information requested by this Interrogatory may be determined from documents produced by AWS and that the burden of deriving the requested information will be substantially the same for Kove as it is for AWS. In particular, AWS directs Kove to its productions of source code for S3 and DynamoDB, which were made on the following dates: October 17, 2019; October 30, 2019; November 6, 2019; November 13, 2019; November 21, 2019; December 3, 2019; January 3, 2020; January 7, 2020; and January 9, 2020; February 26, 2020; and August 10, 2020. The source code produced by AWS shows the relevant functioning of S3 and DynamoDB, including the types of information that are stored on the various components that comprise each service.

AWS identifies ███████████ as a person with knowledge related to S3 and ███████████ as a person with knowledge related to DynamoDB.

## INTERROGATORY NO. 5:

Identify each Accused Product, and for each such Accused Product, indicate: the date that Accused Product was first offered for sale in the United States, and if no longer offered for sale in the United States, the last date on which that Accused Product was offered for sale in the United States; and each designation ever known or used by You in connection with that Accused Product (*e.g.*, by model number, sub-model number, part number, trade name, catalog number, SKU, code name, internal project name, etc.). Your answer should include an identification of all documents and communications related to Your answer (by Bates range) and the persons most knowledgeable about Your answer.

## THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 (JUNE 11, 2021):

Amazon objects to this Interrogatory to the extent it seeks information regarding any Amazon service other than "S3" and "DynamoDB." Specifically, Amazon won't respond to this Interrogatory regarding the unaccused Glacier service. Amazon further objects to the extent this Interrogatory requires the identification of a person who is "most knowledgeable," as there are many Amazon employees who work with the two accused services. Amazon further objects to this Interrogatory as including discrete subparts, as it seeks a response regarding two separate and different accused services and thus Amazon counts this Interrogatory as at least two separate Interrogatories.[13] Amazon further objects to this Interrogatory to the extent Kove seeks information that isn't requested in the Interrogatory as propounded and Amazon is only obligated to respond to the Interrogatory as propounded. [14]

Subject to the foregoing general and specific objections, Amazon states that DynamoDB was first publicly announced and offered for sale in the United States on January 18, 2012 (*see* AMZ_KOVE_000061900 – AMZ_KOVE_000061903), and Simple Storage Service ("S3") was

---

[13] *See Synopsys, Inc. v. ATopTech, Inc*, 319 F.R.D. 293, 295 (N.D. Cal. 2016).

[14] *See* March 5, 2021 A. Adler letter to E. Bernard.

first publicly announced and offered for sale in the United States on March 14, 2006 (*see* AMZ_KOVE_000061904 – AMZ_KOVE_000061910). DynamoDB was internally known by the project name ████████ and S3 or Simple Storage Service was also referenced in internal documents as ████████████

Amazon identifies ████████████████████████ as persons who are knowledgeable about the date that S3 and DynamoDB were first offered for sale in the United States.

To the extent this interrogatory seeks information regarding Amazon's internal maintenance of the source code packages that comprise S3 and DynamoDB and related dates, Amazon refers Kove to its objections and response to Interrogatory No. 4.

### INTERROGATORY NO. 6:

Separately for each Accused Product, describe in detail on a month-by-month basis (commencing from six years prior to the filing of this lawsuit) and by customer: all revenues, income, sales, and profits generated or realized for licensing, sales, and/or distribution, including but not limited to: the number of products or services used in the United States by You or on Your behalf, the number of products or services sold, leased, licensed, or distributed in the United States by You or on Your behalf, as well as all revenues, costs, profits (gross and net), margins (gross and net), and any other financial benefit You have realized associated with the categories above; the location of the sales according to any and all definitions that You track in Your normal course of business (e.g., the country where the product or service is at the time of sale, the country where the customer or user is signed up, the country where the server is, the country where the company recognizes the revenue), and a description of how You differentiate between U.S. sales and non-U.S. sales for internal or financial reporting purposes. Your answer should include an identification of all documents and communications related to Your answer (by Bates range) and the persons most knowledgeable about Your answer.

### SUPPLEMENTAL AND AMENDED RESPONSE TO INTERROGATORY NO. 6 (APRIL 13, 2023):

Amazon objects to this Interrogatory as overly broad and unduly burdensome to the extent that it seeks information that is neither relevant to any claim or defense in the litigation nor proportional to the needs of the case. Specifically, Amazon objects to this Interrogatory to the extent that it seeks information on a customer-by-customer basis as irrelevant, unduly burdensome

and not proportional to the needs to the case. Amazon also objects to this Interrogatory to the extent that it seeks information that either isn't within Amazon's possession, custody, or control or maintained in the ordinary course of business. Amazon further objects to this Interrogatory to the extent it prematurely seeks expert opinions and discovery. Amazon further objects to the extent Kove seeks Amazon supplement this Interrogatory to provide information regarding how costs relating to the accused services are allocated, because that information is outside the scope of this Interrogatory as propounded. Amazon further objects to this Interrogatory as vague and ambiguous to the extent it seeks "any other financial benefit." Amazon further objects to this Interrogatory to the extent it seeks non-U.S. financial information as irrelevant, unduly burdensome and not proportional to the needs of the case as Kove hasn't provided any basis for seeking damages for use of the services outside the United States and such a request isn't within the scope of the Interrogatory as propounded. Amazon further objects to this Interrogatory as including discrete subparts, as it seeks a response regarding two separate and different accused services and thus Amazon counts this Interrogatory as at least two separate Interrogatories.[15]

Subject to the foregoing general and specific objections and Amazon's prior response to this interrogatory, which is hereby incorporated by reference in its entirety, Amazon states as follows:



[black redaction bars]

In addition, the information requested by this Interrogatory may be determined from documents produced by Amazon and the burden of deriving the requested information will be substantially the same for Kove as it is for Amazon. In particular, pursuant to Fed. R. Civ. P. 33(d), Amazon directs Kove to: AMZ_KOVE_000012898; AMZ_KOVE_000061695 – AMZ_KOVE_000061703; AMZ_KOVE_000065617-18; AMZ_KOVE_000087408; AMZ_KOVE_000087329 ; AMZ_KOVE_000463912; AMZ_KOVE_00463913; AMZ_KOVE_00463914; AMZ_KOVE_00463915; AMZ_KOVE_00463916; AMZ_KOVE_00463917; AMZ_KOVE_00463918; AMZ_KOVE_00463919; AMZ_KOVE_00463920; AMZ_KOVE_00463921; AMZ_KOVE_00463922; AMZ_KOVE_000487423; AMZ_KOVE_000487437; AMZ_KOVE_000487931; AMZ_KOVE_000488310; AMZ_KOVE_000528221; AMZ_KOVE_000528389; AMZ_KOVE_000528397; AMZ_KOVE_000528414; AMZ_KOVE_000520260; AMZ_KOVE_000528555; AMZ_KOVE_000528556; AMZ_KOVE_000528554;

AMZ_KOVE_000528618; AMZ_KOVE_000528620; AMZ_KOVE_000528621;

AMZ_KOVE_000528619; AMZ_KOVE_000528622; AMZ_KOVE_000528623;

AMZ_KOVE_000528624; and AMZ_KOVE_000528625 (all of which are designated as Highly

Confidential).

Ariel Szafir, Tiffany Sung, Rob Ray, Michael Gaggioli, and Nathan Hunt are the individuals most knowledgeable about this response.

Dated: April 13, 2023                                      Respectfully Submitted,

                                                           AMAZON WEB SERVICES, INC.

                                                           By:   */s/ Jeffrey M. Saltman*

                                                           Alan M. Fisch
                                                           *alan.fisch@fischllp.com*
                                                           R. William Sigler
                                                           *bill.sigler@fischllp.com*
                                                           Jeffrey M. Saltman (*pro hac vice*)
                                                           *jeffrey.saltman@fischllp.com*
                                                           Lisa Phillips (*pro hac vice*)
                                                           *lisa.phillips@fischllp.com*
                                                           FISCH SIGLER LLP
                                                           5301 Wisconsin Avenue NW
                                                           Suite 400
                                                           Washington, DC 20015
                                                           202.362.3500

                                                           *Attorneys for Defendant Amazon Web
                                                           Services, Inc.*

**<ins>CERTIFICATE OF SERVICE</ins>**

I certify that on April 13, 2023, the foregoing **SUPPLEMENTAL AND AMENDED RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES BY AMAZON (NOS. 1-6),** was electronically served on counsel of record via email.


/s/ *Jeffrey M. Saltman*
Jeffrey M. Saltman