# Exhibit HHHH

# (UNDER SEAL)

—1—

08:42

```
                   IN THE UNITED STATES DISTRICT COURT
                   FOR THE WESTERN DISTRICT OF TEXAS
                              WACO DIVISION

ALMONDNET, INC.                *
                               *       January 4, 2024
                               *
VS.                            *CIVIL ACTION NO. W-21-CV-898
                               *
AMAZON.COM, INC., ET AL        *

              BEFORE THE HONORABLE ALAN D ALBRIGHT
                   PRETRIAL CONFERENCE (via Zoom)

APPEARANCES:

For the Plaintiff:   Reza Mirzaie, Esq.
                     Adam S. Hoffman, Esq.
                     Marc A. Fenster, Esq.
                     Amy Hayden, Esq.
                     James Milkey, Esq.
                     Jason M. Wietholter, Esq.
                     Daniel B Kolko, Esq.
                     Brian D. Ledahl, Esq.
                     Russ August & Kabat
                     12424 Wilshire Blvd., 12th Floor
                     Los Angeles, CA 90025

                     Andrea L. Fair, Esq.
                     Ward, Smith & Hill, PLLC
                     PO Box 1231
                     Longview, TX 75606

For Defendant Amazon:

                     J. David Hadden, Esq.
                     Ravi Ranganath, Esq.
                     Saina S. Shamilov, Esq.
                     Johnson Kuncheria, Esq.
                     Fenwick & West LLP
                     801 California Street
                     Mountain Valley, CA 94041

                     Jessica Weili Lin, Esq.
                     Eric Arthur Menist, Esq.
                     Fenwick & West LLP
                     902 Broadway #14
                     New York, NY 10010
```

37

| | | |
|---|---|---|
| 09:59 | 1 | With regard to the '139 patent, I believe |
| 09:59 | 2 | that Step 1, it is directed to an abstract idea, and we |
| 09:59 | 3 | will submit the issue to the jury with regard to Step |
| 09:59 | 4 | 2.  Which means when you all are preparing the jury |
| 09:59 | 5 | charge and the jury verdict with respect to the '139 |
| 09:59 | 6 | patent, if that is asserted during trial, we'll need to |
| 09:59 | 7 | have both instructions on the law in the charge and |
| 09:59 | 8 | questions in the verdict form. |
| 09:59 | 9 | Next up -- |
| 09:59 | 10 | (Clarification by Reporter.) |
| 10:00 | 11 | THE COURT:  Okay.  The next issue to take |
| 10:00 | 12 | up is the issue of Amazon's motion to exclude |
| 10:00 | 13 | Mr. Bergman, B-e-r-g-m-a-n. |
| 10:00 | 14 | MR. DACUS:  Good morning, Your Honor. |
| 10:00 | 15 | This is Deron Dacus.  I'll attempt to handle this |
| 10:00 | 16 | argument. |
| 10:00 | 17 | I'll start by saying, I know Your Honor's |
| 10:00 | 18 | probably been in my position on the opposite side of |
| 10:00 | 19 | the -- |
| 10:00 | 20 | THE COURT:  Mr. Dacus, I can see you |
| 10:00 | 21 | talking, but I can't hear.  Whoops. |
| 10:01 | 22 | MR. DACUS:  Can you hear me okay now, |
| 10:01 | 23 | Judge? |
| 10:01 | 24 | (Off-the-record discussion.) |
| 10:01 | 25 | THE COURT:  Okay.  I got it, Mr. Dacus. |

38

10:01  1  Sorry about that.
10:01  2            MR. DACUS:  Thank you, Your Honor.
10:01  3            Can you hear me okay now?
10:01  4            THE COURT:  I'm good.  We're having
10:01  5  technical issues here.  The Internet's not working very
10:01  6  well in this courthouse.  So...
10:01  7            MR. DACUS:  I understand.  If at any
10:01  8  point you cease to hear me, just wave your arms and
10:01  9  I'll stop.
10:01  10           THE COURT:  I'll do it.
10:01  11           MR. DACUS:  Thank you.
10:01  12           Your Honor, I know you've found yourself
10:01  13 in the position I find myself right now on the opposite
10:01  14 side of the bench, and that is to say to the judge --
10:01  15 and to figure out a way to say persuasively to the
10:01  16 judge, please take a look at this, Judge, because we
10:01  17 think this is absolutely contrary to the law as to
10:01  18 what's been done here.
10:01  19           As we go through this, I think you'll
10:02  20 find, Your Honor, that the facts are really not in
10:02  21 dispute.  The facts are undisputed, and we really just
10:02  22 have two ships passing in the night as to what the law
10:02  23 is with respect to damages.
10:02  24           There's two bases to exclude Mr. Bergman,
10:02  25 the plaintiff's damages expert's opinion.  The first is

39

10:02 1 a failure to apportion, and it's really a complete
10:02 2 failure to apportion or to even attempt to apportion.
10:02 3 And the second part is a -- what I'll call a legally
10:02 4 improper split.
10:02 5 And I'll focus -- I'll spend most of my
10:02 6 time on this failure to apportion because I think
10:02 7 it's -- it deserves more attention and, frankly, it's
10:02 8 more egregious.
10:02 9 As Your Honor knows and you just heard,
10:02 10 the accused product here, if you take what the
10:02 11 plaintiff says, is essentially using first-party Amazon
10:02 12 data gathered by Amazon for advertisements on a
10:02 13 third-party -- that means a non-Amazon -- website. And
10:02 14 the two accused products are these -- this Amazon DSP
10:03 15 and Amazon-sponsored display.
10:03 16 And I think a little bit of history of
10:03 17 how this works is probably appropriate. What goes on
10:03 18 in determining how to display these advertisements on a
10:03 19 third-party website is what's called "real-time
10:03 20 bidding." And for a simpleton like me, it's actually
10:03 21 phenomenal.
10:03 22 These auctions that occur actually happen
10:03 23 in milliseconds. But the two important parts for
10:03 24 damages are this: The first-party data that's being
10:03 25 used by these claims, that's Amazon's data. It's

45

| | | |
|---|---|---|
| 10:10 | 1 | Amazon contributes. Real-time bidding, first-party |
| 10:10 | 2 | data, all of that is still included in the revenues |
| 10:10 | 3 | with absolutely no apportionment whatsoever. |
| 10:10 | 4 | So it's not -- it's not even a situation |
| 10:10 | 5 | where the expert says, yeah. I apportioned. And then |
| 10:10 | 6 | we say, well, it's not -- it's not enough. He didn't |
| 10:10 | 7 | apportion at all. He didn't even attempt to by his own |
| 10:10 | 8 | admission. |
| 10:10 | 9 | I will say this: They did say in the -- |
| 10:10 | 10 | in their briefing, the plaintiff said in their briefing |
| 10:10 | 11 | that he did a profit split. Well, yes. He did a |
| 10:10 | 12 | profit split, but as the Court well knows, that profit |
| 10:11 | 13 | split comes after apportionment. In other words, you |
| 10:11 | 14 | determine the incremental benefit first, and only after |
| 10:11 | 15 | you determine the incremental benefit from the |
| 10:11 | 16 | claims-in-suit, then do you do the profit split. |
| 10:11 | 17 | The profit split is not apportionment |
| 10:11 | 18 | even though their briefing claims that it is. |
| 10:11 | 19 | So because there's a complete failure of |
| 10:11 | 20 | apportionment, Your Honor, the Court should strike |
| 10:11 | 21 | these -- all of these opinions and conclusions. |
| 10:11 | 22 | Now, I do want to address this legally |
| 10:11 | 23 | improper split, and I can do so very quickly. |
| 10:11 | 24 | What Mr. Bergman does, the plaintiff's |
| 10:11 | 25 | expert does is he said there should be a split of |

```
10:11  1   between ▮ and ▮ percent.  And he has two bases for
10:11  2   saying that should be the split.
10:11  3           The first is, he says, I've looked at
10:11  4   hundreds of license agreements over the course of my
10:11  5   career, and I think ▮ to ▮ is reasonable.
10:11  6           Now, there's a problem with that.  They
10:11  7   didn't produce any of these hundreds of agreements that
10:11  8   he allegedly looked at.  Not any of them.  So we have
10:12  9   no way to effectively cross-examine him on that issue.
10:12 10   It's just a conclusory statement with no support to it
10:12 11   upon which we couldn't even begin to rationally
10:12 12   cross-examine him on.
10:12 13           The second thing he relies on are these
10:12 14   agreements from a nonparty.  The name of the company is
10:12 15   called ▮▮▮▮▮▮.  And he says this ▮▮▮▮▮▮
10:12 16   company -- which I think has some corporate
10:12 17   relationship to the plaintiff but is distinct -- they
10:12 18   had these agreements where the profit split was between
10:12 19   ▮ and ▮ percent.
10:12 20           The problem with that is those agreements
10:12 21   did not relate to the patents-in-suit.  Let me say that
10:12 22   again.  Those agreements did not relate to the
10:12 23   patents-in-suit.  And there is no evidence at all that
10:12 24   the technology covered by those agreements was
10:12 25   comparable to the patents-in-suit.
```

```
10:12  1              There's no technical opinion, there's no
10:13  2   opinion even from Mr. Bergman, that those things are
10:13  3   technically comparable.  So he's relying on agreements
10:13  4   with this ███████ that include technology that are
10:13  5   not the patents-in-suit and then concluding that that's
10:13  6   an appropriate split.
10:13  7              We believe that's legally improper.  And
10:13  8   for that reason also, Your Honor, we believe that the
10:13  9   opinions and conclusions from Mr. Bergman should be
10:13  10  stricken.
10:13  11             If the Court has any questions, I'm happy
10:13  12  to answer, Your Honor.
10:13  13             THE COURT:  A response?
10:13  14             MR. HOFFMAN:  Good morning, Your Honor.
10:13  15  Adam Hoffman for AlmondNet.  And let me put up some
10:13  16  slides.
10:13  17             Can you see the slides, Your Honor?
10:14  18             THE COURT:  I can.
10:14  19             MR. HOFFMAN:  Okay.  Your Honor, so
10:14  20  first, just to address counsel's initial point about
10:14  21  this idea that Mr. Bergman's approach should have been
10:14  22  to identify each individual piece of technology in the
10:14  23  infringing instrumentality and value that separately
10:14  24  and subtract that from -- from the overall base.  That
10:14  25  is a possible approach, but the Federal Circuit has
```

57

10:27 1 licenses and his general background of his expertise
10:27 2 and his understanding of how profit splits work in
10:27 3 licenses as if that was the only basis for his opinion.
10:27 4     This is one sentence out of hundreds of
10:27 5 sentences, but they pretend that that's the basis of
10:27 6 his opinion, which of course it's not.
10:27 7     In fact, he's very clear that when
10:27 8 looking to the profit splits, he looks at several
10:27 9 features specific to the case.  And I don't think
10:27 10 there's really any dispute about what the case law says
10:27 11 about the profit-split approach.
10:27 12     It's that having reached the benefit over
10:27 13 the next-best alternative, the expert must then look to
10:28 14 case-specific evidence of how the parties would address
10:28 15 that split.
10:28 16     And the cases are clear that what they
10:28 17 don't permit is something like the Nash bargaining
10:28 18 solution or the rule of thumb or some kind of vague,
10:28 19 not case-specific approach to doing the split, because
10:28 20 it's a hard thing to do.
10:28 21     Often you reach a split and experts have
10:28 22 often been stymied by that, and something like the Nash
10:28 23 bargaining solution was an easy way to say, okay.
10:28 24 We've reached this marginal benefit.  How do we split
10:28 25 it up?

10:28 1                    The Court just said, no.  You need to
10:28 2     look at case-specific evidence, which, for example, in
10:28 3     Paragraph 434, Mr. Bergman does.  He looks at
10:28 4     AlmondNet's licensing practices, the benefits that
10:28 5     Amazon gets, including, under Factor 6, the additional
10:28 6     derivative benefits it gets, the lack of acceptable
10:29 7     alternatives, and real-world evidence of how a
10:29 8     subsidiary of AlmondNet approached this very issue of
10:29 9     how to split the profits.
10:29 10                   And importantly, this is different from
10:29 11    the Factor 1 analysis where -- to which the Federal
10:29 12    Circuit has applied more stringent comparability
10:29 13    analyses.  The evidence on which Mr. Bergman relies is
10:29 14    not a patent license, and he's not claiming it's a
10:29 15    patent license.  He's not claiming it's a comparable
10:29 16    patent license.  He's claiming that it's evidence of
10:29 17    practice of how this subsidiary addressed the very
10:29 18    problem in front of the parties.
10:29 19                   And that is, in fact, completely
10:29 20    consistent with the case law looking at Droplets again,
10:29 21    for example.
10:29 22                   In Droplets, Mr. Bergman looked to
10:30 23    Yahoo's specific practice of how it -- looked to their
10:30 24    specific practice of how they split marginal profit and
10:30 25    used that as the evidence of -- for the split.

```
10:30   1               Now, there is a difference there in that,
10:30   2   there, the evidence was how Yahoo actually split
10:30   3   revenues while, here, we have contracts about how they
10:30   4   split revenues.
10:30   5               So it's true that they are different
10:30   6   forms of evidence, but their evidence goes to the same
10:30   7   question:  How would the parties split these revenues?
10:30   8               And that's exactly the approach used
10:30   9   there.  And the Court pointed out that because the
10:30  10   facts are grounded squarely -- grounded squarely in the
10:30  11   facts of the case, Dr. Bergman's profit split analysis
10:30  12   fits the case sufficiently to be able to be helpful to
10:30  13   the jury.
10:31  14               Similarly, in DSM, there the expert
10:31  15   looked at a number of pieces of evidence, including
10:31  16   evidence of practice of how profits were split, to
10:31  17   arrive at the -- to arrive at his analysis.  And that's
10:31  18   what happened here.
10:31  19               Now, their argument is that, well, the
10:31  20   problem is you used these agreements and these
10:31  21   agreements just have nothing to do with the case.  They
10:31  22   have nothing to do with anything, and so you use --
10:31  23               THE COURT:  I don't need argument.  I
10:31  24   understood this point.
10:31  25               MR. HOFFMAN:  Okay.  All right.
```

10:33  1   That is -- you didn't hear anything from
10:33  2   the other side to dispute that, and that is absolutely
10:33  3   contrary to what the law requires.
10:33  4   And to put up a slide or to say, well, we
10:33  5   compared the next-best alternative, which by their --
10:33  6   their slides prove, all they did is remove the feature
10:33  7   and compare it to the revenues that they get now.
10:33  8   They've taken the entirety of the revenues that include
10:33  9   components that are not contributed by the patented
10:33  10  claims and made no apportionment for those.  It's hard
10:33  11  to see how that's going to withstand scrutiny.
10:33  12  That's all I have, Your Honor.  I'm happy
10:33  13  to answer any questions that you might have.
10:33  14  THE COURT:  We'll be back in just a
10:33  15  second.
10:33  16  (Pause in proceedings.)
10:34  17  THE COURT:  Okay.  We can go back on the
10:34  18  record.
10:34  19  The Court is going to deny the motion
10:34  20  with respect to Mr. Bergman.
10:34  21  Next up is the motion to exclude
10:34  22  opinions -- I'm not sure how to pronounce this --
10:34  23  Dr. Houh, H-o-u-h, and strike portions of his
10:35  24  noninfringement report.
10:35  25  MR. MIRZAIE:  Thank you, Your Honor.

121

1 UNITED STATES DISTRICT COURT )
2 WESTERN DISTRICT OF TEXAS     )
3
4
5          I, Kristie M. Davis, Official Court
6 Reporter for the United States District Court, Western
7 District of Texas, do certify that the foregoing is a
8 correct transcript from the record of proceedings in
9 the above-entitled matter.
10         I certify that the transcript fees and
11 format comply with those prescribed by the Court and
12 Judicial Conference of the United States.
13         Certified to by me this 5th day of
14 January 2024.
15
                              /s/ Kristie M. Davis
16                            KRISTIE M. DAVIS
                              Official Court Reporter
17                            800 Franklin Avenue
                              Waco, Texas 76701
18                            (254) 666-0904
                              kmdaviscsr@yahoo.com
19
20
21
22
23
24
25

12:07