# Exhibit 5



Michael Marvin
Direct Dial: (646) 970-2652
mmarvin@reichmanjorgensen.com

750 Third Avenue
Suite 2402
New York, NY 10017

October 15, 2020

**By E-Mail**

Tim Barron
Jenner & Block LLP
353 North Clark St.
Chicago, IL 60654
tbarron@jenner.com

RE: *Kove IO, Inc. v. Amazon Web Services, Inc.*, Case No. 18-cv-8175 (N.D. Ill.)

Counsel,

I write following the parties' meet and confer on October 8 to memorialize the discussions between the parties and the status of outstanding discovery issues. Below, by category of discovery issue, is a summary of the issues.

**Interrogatory No. 4**

The parties discussed AWS's forthcoming supplementation of its response to Kove's Interrogatory No. 4. You stated that for Amazon S3, AWS's response will provide statements of representativeness over the relevant time period and not identify any Material Differences (as that term is used in the Interrogatory) that would support a non-infringement argument, though AWS may identify an additional, non-material change in the code (*i.e.*, related to ▇▇▇▇). For DynamoDB, you stated that AWS had identified two differences related to ▇▇▇▇ and to ▇▇▇▇ that it contends are material. You indicated that AWS would move to amend its non-infringement contentions for the ▇▇▇▇ issue, but probably not for the ▇▇▇▇ issue, and would provide Kove with a draft of the motion in advance of filing to determine whether or not we oppose the motion. When this draft motion is provided, we will review expeditiously to determine whether or not we oppose. As we stated in the previous meet and confer on October 1, any response to Interrogatory No. 4 that implicates a non-infringement argument that is not disclosed in AWS's non-infringement contentions is improper and Kove will move to strike it if AWS does not obtain leave of the Court to do so pursuant to the Local Patent Rules.

You also confirmed that AWS would serve its supplemented response this week.

**Interrogatory No. 3**

The parties also discussed AWS's forthcoming supplementation of its response to Interrogatory No. 3. You stated that you were aiming to serve by Monday, October 12, although you could not

give a concrete date. It is now well past Monday. Please provide the supplementation immediately, as AWS's prolonged delay in supplementing its interrogatory responses and repeated failure to meet its own deadlines is highly prejudicial to Kove.

**Interrogatory No. 7**

The parties also discussed AWS's forthcoming supplementation of its response to Interrogatory No. 7. You stated that you were aiming to serve by this week, although you could not give a date certain. Again, please provide this supplementation immediately.

**AWS Source Code**

The parties also discussed source code for Amazon S3 for the pre-2008 time period. You stated that AWS has done some diligence to determine whether such source code is available, but so far have not been able to locate it. Please provide us further updates on your search as it continues.

**Interrogatory No. 18 and ESI Discovery**

The parties also discussed AWS's response to Interrogatory No. 18, which asked for an identification of persons most knowledgeable on a variety of topics for each of the following time periods ("Relevant Time Period" in the interrogatory):

- For Amazon S3: 2006-2012; 2012-2016; and 2016-2020.
- For DynamoDB: 2012-2016; and 2016-2020.

As we explained on the call, AWS's answer is deficient because the individuals identified as most knowledgeable for topics one through four of Interrogatory No. 18 have only been employed at Amazon for a few years, *i.e.*, AWS has not provided a response for each Relevant Time Period. We further explained that identification of persons most knowledgeable on these topics during these time periods is relevant to our case because they encompass when the accused products, Amazon S3 and DynamoDB, were conceived, developed, and launched. As the parties discussed, Kove additionally requires this information to determine the proper AWS custodians for ESI discovery, as the custodians that AWS has identified are not satisfactory. Please confirm by October 19 that AWS will provide the requested persons and custodians, and that it will do so by no later than October 23.

The parties further discussed the two persons that Kove proposed to replace Seth Markle and James Sorenson as custodians: Werner Vogels and Allen Vermeulen. As we explained during the call, Kove proposes these custodians based on the breadth of experience, knowledge, and history with the products that Mr. Vogels and Mr. Vermeulen have over the relevant time period, dating back to and involving the conception, design, development, and launching of the accused products. Mr. Vogels is one of the authors of the Amazon white paper, "Dynamo: Amazon's Highly Available Key-value Store," and played a key architectural role in the initial design of DynamoDB. As we explained in our October 12 letter, Mr. Vermeulen is the lead inventor of U.S. Patent No. 7, 716, 180, which is directed to many of the features embodied in the S3 Keymap, and has publicly discussed his role as a key technical architect of S3 during its conception and initial development. You agreed to consider our proposal for treating Mr. Vogels and Mr. Vermeulen as custodians; please let us know by October 19 whether you will accept our

proposal. If you do not accept our proposal, explain why not, and identify persons who have equal or greater knowledge of the accused products during their design and development and would be custodians of the same categories of documents.

We also invited a discussion of Kove's revised proposed search terms that we circulated on October 7, which we revised to address the new identification of Mr. Vogels and Mr. Vermeulen as custodians, as well as capture the entire relevant time period. You stated during the call that you had not yet had a chance to review the terms. If you have any issues with the revised terms please let us know; we are available to discuss.

**AWS's Small Document Production**

The parties also discussed AWS's surprisingly low production volume, which, as we explained on the call, does not make sense in this case, given the foundational patented technology at issue, and the fact that the accused products generate ▮▮▮▮ of dollars in revenue. As you know, we have asked for an explanation of the low production volume over email repeatedly, first on September 17 and then on October 1, but have not received a satisfactory response. Moreover, as we explained during the call, AWS's low production volume is particularly confusing because, for many Requests for Production, AWS does not specifically identify categories of documents that it will not search for, as required by the Federal Rules. *See, e.g.,* RFPs Nos. 85-86, 97, and 105. Given the responses and objections you served in response to these and other Requests for Production, we would expect a voluminous production – yet we have to date received only around ▮▮▮▮ documents. In my October 1, 2020 e-mail, in order to facilitate productive discussions, we explained and described the scope of what we are focused on under the above exemplary requests.

That said, in response to our request for an explanation as to AWS's low production volume, you stated that you have passed Kove's discovery Requests to your client, who has in turn conducted searches for responsive documents. You also stated that it was difficult for you to produce fulsomely in response to certain Requests because they were too broad, and that it would be helpful for Kove to provide more targeted searches. However, as we explained during the call, under the discovery rules, for those Requests that AWS agreed to produce in written response to, and which AWS did not identify specific categories of documents it would not search for, it is obligated to conduct a reasonable search for responsive documents based on the Requests as worded.

You disagreed with our characterization of AWS's production to date. But, you agreed to confer with your client about the collection scope more generally and about the collection of the documents in response to Requests 85-86, 97, 105 specifically, in accord with the parameters in my October 1 e-mail. You promised a response by today, October 15.

**Specific Discovery Deficiencies**

The parties also discussed missing telemetry and usage data, surveys, testing and metrics tied to speed, scalability, and availability of Amazon S3 and DynamoDB, the absence of which in AWS's production the parties have been discussing for months. You stated that your client had conducted a search and you had produced responsive documents identified through that search.

However, as we also discussed, this dialogue regarding the scope of the production of these sorts of metrics, usage data, surveys, testing and related matters began with AWS stating that there are over ▇▇▇ potential metrics that are measured within S3 and DynamoDB that relate to the components and functionality that Kove has defined as the "Relevant Features". *See* AWS's Responses and Objections to Interrogatory No. 4. Per the discussions over many months, the notion was that we would provide guidance as to the types of metrics that Kove is looking for and AWS would provide information about the types of metrics that exist within those categories. Instead, after months, you have indicated you have given us all there is in the over ▇▇▇ documents, and yet you have not been able to point to a single metric produced. As we explained, we are confused as to how the topics we have described have not resulted in further metrics and may need a 30(b)(6) deposition on that topic. But putting this deposition issue aside, what we had initially discussed was a back and forth dialogue in which we provide focus as to the types of metrics we would like, and your team provides information about the types of metrics AWS has in its possession. In our call we suggested that it would be helpful to have further discussions regarding the metrics that AWS has, so that through a mutual dialogue the scope of discovery of those metrics can be defined. You indicated that you were open to initiating this dialogue. Please provide your availability next week to meet and confer on this issue.

The parties also discussed discrete categories of information that are missing from AWS's production to date, which are critical for Kove's case in chief. You agreed to investigate whether the following information and documents are available, and if so produce them:

- Documents showing S3 pricing after December 2016.
- Documents showing DynamoDB pricing for the period from launch to March 2020.
- Documents showing the pricing tiers for DynamoDB from launch to today.
- Documents showing the terms and differences between tiers of Amazon S3 and DynamoDB since 2006 and 2012, respectively, to today. As I explained on the call, what we are looking for are documents that show the different tiers of service that are offered through S3 and DynamoDB, and all the features and benefits that come with each. You stated during the call that you understood our request.
- Documents showing monthly revenue for Amazon S3 and DynamoDB from before 2014.
    - As I mentioned during the call, for DynamoDB you have produced one document that shows revenue from before 2014, but it only contains one high-level revenue number for each time period. *See* AMZ_KOVE_000087408. I asked that you supplement your production to include the financial information for DynamoDB that you have produced for the post-2014 period. *See, e.g.*, AMZ_KOVE_000087395. You agreed to consider my request once you evaluated the specific documents noted in this paragraph. Please confirm that you will look for such information and, if available, produce it.
    - As I also mentioned during the call, for Amazon S3 you have not produced any document showing revenue from before January 2012. You were unsure of whether this characterization of AWS's production was accurate, but agreed to investigate.

The parties also discussed missing documents describing the benefits accruing to AWS from Amazon S3 and DynamoDB.  As I explained in my email of October 1, documents relating to the benefits from the invention are intended to encompass documents that analyze, identify, quantity, or describe the benefits that AWS is able to provide to its customers and the other matters described in my October 1 e-mail.   Please confirm that AWS is producing the documents within the scope described in our October 1 e-mail on this issue.

The parties also discussed missing organizational charts and corporate directories identifying employees knowledgeable about:  (1) marketing, advertising, and customer support related to speed, scalability, and availability for Amazon S3 and DynamoDB; (2) telemetry, usage data, and metrics regarding speed, scalability, and availability, including any customer testing (such as A/B testing), of Amazon S3 and DynamoDB; and (3) surveys, studies, or analyses or purchase journey mapping relating to pricing, sales, and customer procurement and retention for Amazon S3 and DynamoDB.  As we discussed, any organizational charts or corporate directories that include individuals knowledgeable about topics one through three above, regardless of whether the directory or chart is for a department that concerns other issues, are responsive.  You agreed to go back to your client and ask for such documents.

The parties also discussed Kove's Requests for Production Nos. 120-124, which generally seek, *inter alia*, documents describing the benefits of Amazon S3's and DynamoDB's scalability and data durability.  As we stated on the call, as to Requests Nos. 120-123, we asked that you confirm that AWS's responses and search includes, and does not exclude, documents describing, analyzing or evaluating the matters that are the subject of the Requests.  We understood you to say that is within the scope of your response and search that is still ongoing.  The parties also specifically discussed Request No. 124, which you asked to meet and confer about in AWS's responses and objections.  You stated that based on the additional information from my email of October 1, you had a better sense of what we were seeking, and stated that you would "probably" be able to produce documents.  Please confirm that you will produce documents responsive to this Request.

The parties also discussed AWS's failure to produce documents that show development, marketing, operating, maintenance, selling, and licensing costs for Amazon S3 and DynamoDB.  As we explained during the call, the documents that AWS has produced to date appear to have been created for litigation, and do not provide the level of detail into the costs associated with Amazon S3 and DynamoDB, such as variable or incremental costs, that Kove's expert requires.  You agreed to request those documents for your client; we also made clear that output from whatever accounting system AWS uses to track its product-level financials is acceptable.  You agreed to let us know by this week whether you will be making additional productions to include this information.

You also stated that AWS is planning to produce additional documents related to AWS's unit-level financials.  You agreed to provide an update this week on when you will be producing such documents, and we agreed that if forthcoming productions satisfy what Kove seeks in its pending Motion to Compel, we will withdraw the motion.

**Case Schedule**

The parties also discussed the case schedule, in particular, that Kove is still owed substantial discovery from AWS and that the newly appointed Magistrate Judge is working through Kove's motions to compel discovery. Kove proposed that the parties agree in principle to an extension of the case schedule and work out the specific amount of the extension sufficient to resolve the discovery disputes and complete discovery. Please let us know if AWS agrees to an extension of the schedule, and if so, then Kove will provide a specific proposal.

**Depositions**

We also discussed scheduling the deposition of John Overton. He can be available for deposition in his capacity as a 30(b)(1) and Kove's sole 30(b)(6) witness (subject to objections) on November 19 and 20. Please let us know if AWS agrees to these dates.

**Discovery Propounded on Kove**

We also discussed discovery propounded on Kove. Kove agreed to review its responses to Interrogatories Nos. 8, 9, and 12 and, if appropriate, supplement the response. Kove agreed to endeavor to supplement its responses for Interrogatories Nos. 8 and 9 by October 16 and for Interrogatory No. 12 by October 23. You also asked when Kove would respond to the issues raised in your letter of September 3 regarding Interrogatory No. 14 and Request for Production No. 45. We stated that we would respond in the next few days, and did so on Monday, October 12. Now that you understand our positions, please let us know if you would like to discuss the issues raised in those letters.

Finally, the parties discussed discovery of Kove's ESI. You asked for additional information regarding Andy Polling and Keith Connolly, who Kove previously proposed as ESI custodians. We are collecting the information you requested regarding these custodians, and will respond in due course under separate cover.

Regards,

*/s/ Michael Marvin*

Michael Marvin

CC (by email):  Renato Mariotti (rmariotti@thompsoncoburn.com);
　　　　　　　Michael Parks (mparks@thompsoncoburn.com)