# Exhibit 9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Kove IO, Inc.,

               Plaintiff,

v.

Amazon Web Services, Inc.,

               Defendant.

Civil Action No. 1-18-cv-08175

Hon. Matthew F. Kennelly

**JURY TRIAL DEMANDED**

## KOVE'S FOURTH AMENDED RESPONSE TO
## AWS'S FIRST SET OF INTERROGATORIES (NO. 7)

Plaintiff Kove IO, Inc. ("Plaintiff" or "Kove"), by and through their undersigned counsel, Federal Rules of Civil Procedure 26 and 33, the Northern District of Illinois Local Rules ("Local Rules"), and by any applicable procedures, laws, or Court orders, hereby serves the following fourth amended responses to AWS's First Set of Interrogatories ("Interrogatories") (No. 7) of Amazon Web Services, Inc. ("Defendant" or "AWS").

## PRELIMINARY STATEMENT

1.     Kove incorporates by reference each general objection in its First Amended Responses to AWS's First Set of Interrogatories (Nos. 2-5) into each specific response. The specific response may repeat a general objection for emphasis or any other reason and/or may also include one or more specific objection(s). The failure to include any general objection in any specific response shall not be interpreted as a waiver of any general objection to that response.

2.     Kove's responses to AWS's Interrogatories are made to the best of Kove's present knowledge, information, and belief. Kove reserves the right to supplement or amend these responses should future investigation indicate that such supplementation or amendment is

necessary.  Kove reserves the right to make any use of or introduce at any hearing or at trial information or documents responsive to AWS's interrogatories that are discovered subsequent to Kove's service of these responses, including, but not limited to, any information or documents obtained in discovery herein.

## FOURTH AMENDED RESPONSE TO INTERROGATORY NO. 7

**INTERROGATORY NO. 7:**

Provide a computation of all categories of damages claimed by Kove, including a computation of your alleged damages for a reasonable royalty under the Georgia Pacific factors, see 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970), for lost profits under the Panduit factors, see 575 F.2d 1152, 1156 (6th Cir. 1978), for enhanced damages or willful patent infringement, for attorneys' fees, and for any other damages or relief requested or claimed in this case, and identify all documents or other evidentiary material upon which such computation is based.

*__Objections__*

In addition to its general objections, Kove objects to this Interrogatory as premature.  The computation of damages will be the subject of expert testimony, and expert discovery has not begun.  Further, key depositions relevant to such computations have not yet been taken.  Thus, Kove does not have any damage computations to disclose.  Further, to the extent that AWS seeks information at a level of detail beyond what is provided herein, Kove further objects to the interrogatory as disproportionate, overbroad, unduly burdensome, and premature. Kove further objects to this interrogatory as premature, overbroad, disproportionate, and unduly burdensome with respect to the request that Kove identify "all documents or other evidentiary material." Kove's experts will identify materials considered in connection with their reports, as required by Rule 26.  Any documents referenced in this response are exemplary only and should not be read to limit the documents on which Kove or its expert may rely in the future.  Further, to the extent that this interrogatory seeks the production of document reflecting privileged attorney-client

communications or work product, Kove objects on those grounds.

While Kove is unable to provide "a computation" of its damages at this point, it nevertheless provides a high-level description of damages methodologies it may assert or rely upon. The methodologies on which Kove ultimately will rely will depend on the information obtained through the rest of discovery and on the analysis and opinions of Kove's damages and other experts. Kove further objects to AWS's request for a calculation of enhanced damages or attorneys' fees as premature, disproportionate, unduly burdensome, and prejudicial.

Subject to and without waiving these objections, Kove responds as follows:

### _Key Depositions Relating to Damages Have Yet to Be Taken_

While Kove has sought to work with AWS to schedule depositions, AWS did not provide deposition dates for most of its witnesses until March 30, 2023 with the bulk of the witnesses only being available the last two weeks before the May 5, 2023 fact discovery cut-off. As a result, Kove has yet to obtain 30(b)(6) deposition testimony on key damages related topics, including, for example, topics relating to AWS's finances, internal accounting methods, the value of key features, and competitors to the Accused Products. Kove expects these depositions will impact its damages analysis and computation of damages.

### _The Impact of AWS's Deficient Productions On This Response_

Notwithstanding that this case has been pending for over four years, important documents relating to damages were produced in the past few months and substantive depositions relating to such documents have yet to be taken.

AWS has not produced certain important documents relevant to damages. As a result of these production gaps, Kove will need to either obtain the missing information from the upcoming depositions or make reasonable assumptions based on the information provided in AWS's productions and deposition testimony. The production gaps include:

- pre-2014 documents and information, including documents and information dating back to or near the time of the hypothetical negotiation;

- pricing information of Accused Products over the relevant time period, including prices

actually charged to and paid by AWS's most significant customers (both internal and external);

- AWS-level financial information relevant to intercompany transactions with Amazon.com, Inc.;

- documents and information showing how, and the extent to which, costs, revenues, profit, and loss associated with the accused products is recognized, and, in particular, whether and how ███████████████████████████████████████ ████████████████████████ (*see* 1/20/23 letter from Kove to AWS regarding the deposition of Nathan Hunt and related production deficiencies);

- documents describing hardware on which the accused products run and related costs;

- documents and information showing how ███████████████████████████ ████████████████████████ (*see* 1/20/23 letter from Kove to AWS regarding the deposition of Nathan Hunt and associated productions);

- documents and information relating to AWS's ███████████████████ "Service Level Agreements" (SLAs) (*see* 3/10/23 letter from Kove to AWS regarding SLAs);

- documents reflecting AWS's general policies and procedures—during the time when a product or feature of a product is being designed and developed—for determining whether the product or feature may infringe a patent;

- documents regarding the design, development, operation, costs, and technical and financial performance of predecessor products to the accused products (e.g., SimpleDB, ███████ ), including documents about AWS's reasons for developing the predecessor products, and AWS's reasons for moving from the predecessor products to the accused products;

- documents regarding the design, development, operation, costs, and technical and financial performance of Alternatives[1] to the Accused Products, including, for example,

---

[1] "Alternative" means any system, product, or solution that is potentially an alternative to or in competition with the Accused Products, including but not limited to fully managed products, solutions maintained by individual customers, custom or individually created solutions, designs

SimpleDB, "DIY" storage/database solutions that are or can be developed and maintained by individual customers, and the solutions identified by AWS as non-infringing alternatives in response to Interrogatory No. 3;

- documents surrounding the creation of AWS, including documents relating to the motivation for creating AWS and the role of the accused products in the creation of AWS, including the Jassy "six-pager" and relevant memos from Andy Jassy to Amazon's board of director; and

- documents sufficient to show the "hurdle rate" or minimum "Return on Investment (ROI)" AWS or Amazon.com had at or near the time of the hypothetical negotiation.

The lack of fulsome documentation with respect to the above matters further elevates the importance of the yet-to-be-taken depositions to Kove's damage analysis and calculations. Plaintiff reserves the right to supplement, amend, or modify the information contained herein, and to use and introduce such information and any subsequently-identified documents or testimony at trial. In particular, Plaintiff reserves its right to amend and supplement its damages theories based on expert opinions disclosed in accord with the expert discovery schedule, as further discovery is taken, produced, and uncovered, and as documents and information are produced by Defendant regarding its products, services, activities, and financials.

Kove's response to this interrogatory is based on its knowledge, understanding, and belief as to the facts and information available to it as of the date of this response. Kove has not yet completed its investigation, collection of information, discovery, or analysis related to damages, and Kove has not yet completed its review of AWS productions to date. Additionally, damages will be based on expert analysis and opinion following a full review of all relevant information including key depositions to be taken in the last few weeks of fact discovery. Plaintiff will also rely on an expert's analysis of, among other things, the technical benefits provided by the asserted

---

that were considered and rejected by AWS during the design and development of the Accused Products (e.g., ████████████████████████), and each design or solution identified by AWS as a non-infringing alternative in response to Interrogatory No. 3.

patents, the evaluation of Alternatives, an analysis of the alternatives that AWS asserts to be non-infringing alternatives, the lack of acceptable non-infringing alternatives, the calculation of a reasonable royalty or other damages, and the comparability of any license agreements.

### *Reasonable Royalty*

Based on Plaintiff's current knowledge, understanding, and belief as to the facts and information available to it as of the date of this response, Plaintiff intends to seek a reasonable royalty for the asserted infringement. Plaintiff will seek a reasonable royalty starting from six years prior to the complaint.

In *Georgia-Pacific v. U.S. Plywood Corp.*, 318 F. Supp. 116 (S.D.N.Y. 1970, *modified*, 446 F.2d 294 (2d Cir. 1971), *cert. denied,* 404 U.S. 870 (1971), the court held that a reasonable royalty should take into consideration various factors relevant to a hypothetical negotiation between a willing licensor and willing licensee if both had been reasonable in trying to reach an agreement. The date of the hypothetical negotiation is just prior to first infringement, which could be as early as June 19, 2007. In this hypothetical negotiation, it is assumed that the parties have access to all relevant information and that the parties agree that the patents are valid, enforceable, and would be infringed without a license. And, while the negotiation is deemed to have taken place just before infringement, under the so-called "Book of Wisdom" concept, events subsequent to the hypothetical negotiation date can be considered.

Plaintiff intends to rely on expert analysis—including technical, damages and potentially industry experts—to support its calculation of a reasonable royalty. Plaintiff anticipates that its determination of a royalty rate will include one or more of the following methodologies. Plaintiff anticipates a running royalty rate would have been the likely result of the hypothetical negotiation and the most appropriate form of royalty for this case.

### A. Income Approach

An income approach seeks to isolate and estimate the incremental benefit AWS obtained from its use of the patented technology and then to estimate how or whether AWS and Kove

would have agreed to a royalty based on the incremental benefit. Under this approach, revenues and costs are apportioned in order to derive the incremental benefit associated with the patented technology. Once revenues, costs, and/or profits are apportioned, it may then be split between Kove and AWS ("the profit split or bargain split") to determine the royalty AWS would have paid to Kove at the hypothetical negotiation.

Kove anticipates the income approach will account for the value AWS obtained both from internal and external use of the accused products. In its discovery responses, AWS has suggested that it does not receive revenue from use of the accused products by internal AWS customers or from use of the accused products by Amazon.com, Inc. For purposes of the income approach, based on the information available to it, Kove anticipates that it will estimate the value AWS obtains from internal use by, for example, estimating the prices that it believes AWS would have charged and the revenues and profits it would have received for internal use of the accused products if it had charged prices comparable to those for outside customers for that use. Kove may use the price AWS's largest customers pay for the Accused Products and/or AWS's own ████████████████████████ to assist in this process. *E.g.*, AMZ_KOVE_000467857; AMZ_KOVE_000467854.

**Isolating the Revenue Attributable to the Accused Products**

To isolate the revenues attributable to the accused products, Kove anticipates that it will, by way of example, rely on:

(a) documents, metrics, or telemetry data reflecting the extent and/or frequency to which the accused products are used, including documents reflecting ████████████ ████████████████████████████████████████████ ████████████████████████████████████), customer use

of the accused products (i.e., documents that show how and how much AWS customers use the accused products), and use of the accused products by AWS's partners or affiliates (including, for example, documents that show how and how much Amazon.com, Inc., uses the accused products);

(b) financial documents reflecting the revenues, costs, and profits AWS received in connection with external use of the accused products, including revenue sheets, P&Ls, private pricing plans, and operational and business plans;

(c) documents reflecting the revenues, costs and profits AWS would have received in connection with █████████████████████████████████████████████ █████████████████████████████████; and

(d) documents showing the volume of sales, revenues, costs, and profits attributable to services that are █████████████████████████████████████████████ ██████████████████████ (e.g., Cloudwatch, Lambda), including documents sufficient to show the portion of those sales, revenues, costs, or profits attributable to the accused products.

**Estimating Incremental Value Attributable to Kove's Invention**

To determine the incremental value attributable to the patented technology, and to apportion the revenue and profits to the incremental benefit, Kove will rely on expert testimony, deposition testimony, AWS development documents and analyses, and AWS product documentation to:

(a) show that the asserted claims enable the accused products' speed, availability, durability, and scalability. Kove will refer to the speed, availability, durability, and scalability of the accused products, collectively, as the SADS benefits.

(b) show that the asserted claims enable particular client-facing features and

functionality, including[2]:

- Automatic ███████ (i.e., ████████ that is transparent or invisible to users)

- Cross-Region Replication

- The ability to track and change storage classes/tiers of service on a by-object basis, as well as the ability to seamlessly or automatically move objects between different storage classes or tiers of service (e.g., S3's "Lifecycle Policies", "Intelligent Tiering")

- DynamoDB's on-demand offering

- The ability of S3 to perform on-demand

- Auto-scaling for DynamoDB

- Strong ████████ Consistency

(c) consider how customers perceive and value the accused products, the SADS benefits, and the enabled features, including through A/B studies, internal metrics, use statistics and data (including internal and external use), consumer use studies, customer surveys, case studies, and customer testimonials;

(d) consider how AWS perceives and values the accused products, the SADS benefits, and the enabled features, including through internal analyses and reports, design and development documents, public-facing presentations and documentation, operating plans, public and private pricing plans, product- and feature- pricing, pricing strategy documents, "Service Level Agreements" (SLAs), and other AWS documents that quantify the importance of the SADS benefits or enabled features, as demonstrated by, e.g., the per unit pricing for the SADS

---

[2] These features are collectively referred to as "the enabled features." This list of enabled features is not final, is not exhaustive, and may be supplemented or amended as discovery continues.

benefits, increased pricing, increased sales, decreased costs, or increased customer satisfaction;

(e) estimate the incremental revenues, costs, and profits attributable to the SADS benefits and enabled features, including through AWS financial documents showing revenues, profits, and costs that were allocated to the accused products or the enabled features, or that should have been allocated to the accused products or enabled features. This may include analyses to quantify the value of the SADS benefits or enabled features by comparing differences in AWS pricing against different levels of performance for one more of the SADS benefits or enabled features.

For example, if the accused products perform at level $L_1$ when operating with the accused functionalities and at level $L_2$ when operating without the accused functionalities, and if AWS charges customers $P_1$ for a unit of $L_1$-level performance, and $P_2$ for a unit of $L_2$-level performance, AWS's internal pricing would suggest that the revenue attributable to the accused functionalities is $P_1$-$P_2$ per each unit of improved performance. This may include analyses of estimated or actual pricing with and without the particular SADS feature or features to Alternatives in order to isolate the revenue attributable to invention for the particular SADS benefit or feature;

(f) analyze the features, functionalities, economic performance, revenues, profits, pricing and/or demand for Alternatives, including for non-accused products or potential products that are alleged by AWS to constitute potential non-infringing alternatives or that otherwise assist in isolating the benefits of the invention;

(g) estimate the revenues, profits, and sales AWS would lose if it had to reduce the quality of one or more of SADS benefits or if it could not offer the enabled features;

(h) analyze the extent to which AWS would lose customers (including ████████████

█████████████████████ and external customers) absent the use of the patented

invention, and the impact that such loss would have on AWS's profits;

(i) explain the lack of commercially acceptable non-infringing alternatives and evaluate

the products that AWS asserts to constitute potential non-infringing alternatives; and

(j) consider the impact that the absence of the patented technology would have on AWS's

overall business and profits.

Kove's patented technology is ground-breaking and foundational; Kove is not aware of

any non-infringing alternatives that can approach the performance of the patented technology at

the scale in which AWS operates and uses the accused products.  For this reason, Kove is not

aware of any commercially acceptable non-infringing alternatives.  This is a subject of current

analysis and evaluation and will be the subject of expert opinions and testimony.

Kove anticipates that it will apportion and isolate the income and profits attributable to

the invention by comparing the income or profits AWS received in connection with its

infringement against the estimated income associated with Alternatives or that AWS would have

obtained if it had used an Alternative instead.

**Estimating the Bargain Split**

Determining the bargain or profit split (how the parties would share the profit associated

with the patented invention) will be informed by the analysis of the various *Georgia-Pacific*

factors, including, but not limited to, Kove's policy of maintaining its patent monopoly, the

competitive nature of the parties, the use of the patented technology in promoting the sale of

other products, and the evaluation of any downstream or derivative benefits provided by the

patented technology that are not captured in the quantification of the incremental benefits.

Furthermore, the bargain/profit split analysis may consider, among other things, AWS's and its

relevant affiliates' licensing policies and practices, investment policies and practices, including any applicable hurdle rates, minimum return on investments, expected return on investment, the investment returns that Amazon received from its investment in AWS, S3, Dynamo DB or other products or services, and the returns that AWS demands or receives from its investments in the accused products.

### *Estimated Reasonable Royalty Computation*

Plaintiff is unable to quantify the reasonable royalty under this approach at this time, as this will be the subject of expert opinion and because it is an issue for expert analysis and such calculations will therefore be disclosed in accord with expert disclosure deadlines. Further, key depositions relating to such calculations and the analysis upon which the calculations depend have yet to be taken, as described above.

As context, the following is one example of some of the steps that might be included in the calculation of a reasonable royalty under this approach:

- The calculation may include isolating the combination of the incremental internal putative revenue and external revenue attributed to the accused products or accused features. (These revenues might include derivative or convoyed sales derived from infringement.)

- Then, to the extent not already encompassed in the determination of the royalty base, the expert may adjust the royalty rate or royalty base to apportion to the benefits of the invention and to account for incremental costs.

- Through these and any other relevant steps to the reasonable royalty analysis, the expert could isolate a relevant reasonable royalty base and royalty rate and multiply the two.

- The final step, called the so-called bargain or profit split, involves a determination of how the parties at the hypothetical negotiation would be expected to divide between them the incremental profits calculated in the prior steps (i.e., determining what percentage of profits from the prior steps would be provided to Kove). This percentage of profits that would be provided to Kove could then be used to adjust the royalty rate calculated in the prior steps, in order to derive a reasonable running royalty for AWS's infringement (i.e., calculated by multiplying the relevant royalty rate times the relevant royalty base).

(The foregoing steps are exemplary and are not intended to provide the exclusive basis on which Kove's expert might calculate a reasonable royalty under the income approach.)

### *Exemplary Relevant Evidence*

Evidence potentially relevant to apportionment includes:

1. Discovery that shows the revenues, costs, and profits AWS receives from external customers in connection with the accused products, including documents showing:

   - the extent to which the accused products are used internally and externally

   - the amount of revenue AWS receives from the accused products

   - the amount of profit AWS recognizes from the accused products

   - the prices AWS charges for use of the accused products (including for each pricing category)

   - the costs associated with use of the accused products

   - AWS-level costs that can or should be allocated to the accused products

   - the nature and extent of any convoyed sales resulting from the sale of the accused products

   - whether and the extent to which the accused products underpin, facilitate, or otherwise support other AWS products and services, or AWS's infrastructure as a whole

Kove identifies the following exemplary documents relating to this issue:

- AWS's responses to Kove interrogatories 6 (seeking monthly revenues, income, sales, and profits associated with the accused products),13 (seeking, e.g., cost and profit projections associated with the accused products), and 22 (seeking information on each pricing category associated with the accused products).

- Documents produced in response to Kove's motion to compel additional financial information, *see* Dkt. 405 at 16 (items 1, 3, 5, and 6), including, e.g., AMZ_KOVE_000487436, AMZ_KOVE_000487437, AMZ_KOVE_000487931, AMZ_KOVE_000487932, AMZ_KOVE_000498016, AMZ_KOVE_000528556, AMZ_KOVE_000528221, AMZ_KOVE_000528555, AMZ_KOVE_000528106.

- AWS-level financial documents, including documents produced in response to Kove's motion to compel AWS-level financial information, *see* Dkts. 212, 359.  This includes, for example, documents prepared as part of AWS's annual planning process (e.g., █████ documents, ████████ documents, ████████ documents), AMZ_KOVE_000487930, AMZ_KOVE_000470420 (showing both AWS-level and product-level financial statements), AMZ_KOVE_000527847, AMZ_KOVE_000488157.

- Weekly Business Reports for S3 and DynamoDB (e.g., AMZ_KOVE_000430624, AMZ_KOVE_000460410, AMZ_KOVE_000395442, AMZ_KOVE_000391674).

- Product-level financial documents, including P&Ls and product-level █████ documents. *E.g.*, AMZ_KOVE_000065595-AMZ_KOVE_000065617, AMZ_KOVE_000065719, AMZ_KOVE_000446326, AMZ_KOVE_000480964, AMZ_KOVE_000480976, AMZ_KOVE_000385849, AMZ_KOVE_000106321, AMZ_KOVE_000399757, AMZ_KOVE_000465381 and AMZ_KOVE_000225391 (showing S3 pricing history), AMZ_KOVE_000473282, AMZ_KOVE_000528423, AMZ_KOVE_000528135.

- Documents describing the significance of the accused products to AWS and the AWS ecosystem or that demonstrate the existence or extent of convoyed sales. *E.g.*, AMZ_KOVE_000225191 (suggesting that ███████████████████), AMZ_KOVE_000482838 (explaining that ██████████████████████, AMZ_KOVE_000241335 (showing ████████████████████), AMZ_KOVE_000460868, AMZ_KOVE_000465025 (suggesting that the majority of revenue derived from S3 ████████████), AMZ_KOVE_000101541, AMZ_KOVE_000106571, AMZ_KOVE_000000108 (promoting the use of non-accused products to accompany the use of the accused products), AMZ_KOVE_000001002 (promoting the use of █████ as an add-on to the accused products); AMZ_KOVE_000240836, AMZ_KOVE_000396476, AMZ_KOVE_000106321, AMZ_KOVE_000457250, AMZ_KOVE_000465025.

- Documents showing that the accused products are necessary or "foundational" for other AWS services. *E.g.*, AMZ_KOVE_000487423, AMZ_KOVE_000000108, AMZ_KOVE_000106321, AMZ_KOVE_000241335, AMZ_KOVE_000431676

(Glacier stores ███████████████████████████████),
AMZ_KOVE_000528622, AMZ_KOVE_000520260.

- Cost analyses associated with the accused products, including, *e.g.*, the documents
  identified below in connection with the cost-savings approach.

2. Discovery that shows the revenues and profits AWS received or would have received
   from ███████████████████████████████████████████████████ if it
   charged for internal use at rates comparable to those charged to external customers,
   including documents showing:

    - the extent to which the accused products are used ███████████████████████
      ██████████████████████, and other Amazon entities, both in general, and
      relative to external use of the accused products (e.g., AMZ_KOVE_000065716)

    - the prices AWS charges for use of the accused products (including for each
      pricing category)

    - how AWS sets prices for large or significant customers

    - how AWS accounts for internal use of the accused products

    - the pricing rates AWS associates with internal use of the accused products, as
      well as the process, methodology, and rationale used to set those rates

    - the costs associated with the use of the accused products, and any differences in
      costs incurred by internal use versus external use

    - AWS-level costs that are, can be, or should be allocated to the accused products

    - how AWS allocates the costs associated with internal use of the accused products

Kove identifies the following exemplary documents relating to this issue:

- AWS's responses to Kove interrogatories 6 (seeking monthly revenues, income, sales,
  and profits associated with the accused products), 9 (seeking information on how
  DynamoDB and S3 are used by other Amazon or AWS products or services, including S3
  and DynamoDB), 13 (seeking, e.g., cost and profit projections associated with the
  accused products), and 22 (seeking information on each pricing category associated with
  the accused products).

- Documents produced in response to Kove's motion to compel additional financial
  information, *see* Dkt. 405 at 16 (items 1-6), including the documents identified above
  with respect to this category, as well as documents describing AWS's internal pricing
  ██████████ and accounting methods, *e.g.*, AMZ_KOVE_000487436,
  AMZ_KOVE_000487437, AMZ_KOVE_000487423, AMZ_KOVE_000087357,
  AMZ_KOVE_000106253, AMZ_KOVE_000276922, AMZ_KOVE_000467854,

AMZ_KOVE_000467857, AMZN_000000002, AMZ_KOVE_000487422, AMZ_KOVE_487433, AMZ_KOVE_487434, AMZ_KOVE_487435.

- Documents that show or reflect AWS's ██████████████████████████ ████████████████████. *E.g.*, AMZ_KOVE_000528617-AMZ_KOVE_000528625 (nine documents), AMZ_KOVE_000528555.

- Usage reports or metrics describing the nature and extent of internal use of the accused products. *E.g.*, AMZ_KOVE_000448199, AMZ_KOVE_000448200, AMZ_KOVE_000448444, AMZ_KOVE_000065716, AMZ_KOVE_000081659, AMZ_KOVE_000087330, AMZ_KOVE_000106321.

- The following categories of documents identified above:

  o AWS-level financial documents, including documents produced in response to Kove's already-granted motion to compel AWS-level financial information and OP1s, *see* Dkts. 212, 359.

  o Weekly business reports for S3 and DynamoDB.

  o Product-level financial documents, including P&Ls.

  o Documents describing the significance of the accused products to AWS and the AWS ecosystem.

  o Cost analyses associated with the accused products.

3. Discovery that shows the value AWS derives from the infringing features of the accused products, including documents showing:

  - whether and how the infringing features contribute to the SADS benefits, as measured through internal analyses, engineering reports, A/B tests, customer surveys, metrics, and other data

  - how customers value the SADS benefits, including surveys, A/B tests, market studies, and other reports

  - how and whether the infringing features enable the enabled features

  - AWS pricing for each price category, including documents showing the pricing for the enabled features and the prices AWS has charged for different levels of speed, availability, durability, and scalability.

  - AWS pricing strategy, including how AWS makes it pricing decisions, how AWS decides which tiers of service to offer, and how AWS quantifies the value of the accused products, the SADS benefits, and the benefits of the enabled features

- AWS's analyses, estimates, market research, and surveys regarding how much customers value the enabled features and the amount that customers would be willing to pay for the enabled features or for different levels of performance with respect to the SADS benefits

- the revenue and profits AWS receives from the enabled features and for various levels of performance with respect to the SADS benefits

- the relative advantages and disadvantages of the accused products, as compared to Alternatives

- the revenue AWS would lose to competitors if the accused products could not operate at high speeds and with high availability, availability, and durability

- the importance of the SADS benefits to AWS's internal and external customers, including its largest customers, and the impact that the loss of the patented technology would have on such customers

Kove identifies the following exemplary documents relating to this issue:

- AWS's responses to Kove interrogatories 6 (seeking monthly revenues, income, sales, and profits associated with the accused products), 9 (seeking information on how DynamoDB and S3 are used by other Amazon or AWS products or services, including S3 and DynamoDB), 10 (seeking information on the most common use cases for the accused products), 12 (seeking information why AWS implemented the infringing features of the accused products), 13 (seeking cost and profit projections associated with the accused products and infringing components of the accused products, as well as projections regarding how the accused products and infringing features were to be used), 14 (seeking a description of the metrics AWS uses to evaluate performance of the accused products and the infringing features of the accused products)15 (seeking information on the testing AWS performed in connection with the accused products and infringing features of the accused products), 16 (seeking information on the direct or indirect benefits associated with the accused products' ability to scale, and 22 (seeking information on each pricing category associated with the accused products and SLAs).

- Documents that analyze, test, evaluate, or consider the value or significance of particular infringing components.

  - ██████████: AMZ_KOVE_000091123, AMZ_KOVE_000226323, AMZ_KOVE_000239910, AMZ_KOVE_000435960, AMZ_KOVE_000437351, AMZ_KOVE_000440227, AMZ_KOVE_000479640, AMZ_KOVE_000479642, AMZ_KOVE_000442191, AMZ_KOVE_000380260, AMZ_KOVE_000528423, AMZ_KOVE_000498068, AMZ_KOVE_000530224, AMZ_KOVE_000530225, AMZ_KOVE_000380260, AMZ_KOVE_000434524.

  - ██████████: AMZ_KOVE_000435960, AMZ_KOVE_000442191, AMZ_KOVE_000075807, AMZ_KOVE_000012917, AMZ_KOVE_000226625,

AMZ_KOVE_000380260, AMZ_KOVE_00075807, AMZ_KOVE_000528564, AMZ_KOVE_000512621.

- ○ ███████████ : AMZ_KOVE_000433353, AMZ_KOVE_000433406, AMZ_KOVE_000483047, AMZ_KOVE_000106599, AMZ_KOVE_000433743, AMZ_KOVE_000236500.

- ○ ███████████ : AMZ_KOVE_000433280, AMZ_KOVE_000433353

- Documents showing the significance and value of the SADS benefits to the accused products, including internal analyses, market studies, surveys, reports, and documents that set, consider, or discuss SLAs and their significance. *E.g.*, AMZ_KOVE_000075809, AMZ_KOVE_000468176, AMZ_KOVE_000061904, AMZ_KOVE_000101541, AMZ_KOVE_000202107, AMZ_KOVE_000217306, AMZ_KOVE_000390978, AMZ_KOVE_000399083, AMZ_KOVE_000399807, AMZ_KOVE_000445568, AMZ_KOVE_000417563, AMZ_KOVE_000528589, AMZ_KOVE_000401073, AMZ_KOVE_000428010.

- Documents considering the value, benefits, and pricing associated with each of the enabled features. *E.g.*, AMZ_KOVE_000485865, AMZ_KOVE_000181188, AMZ_KOVE_000005673, AMZ_KOVE_000380183, AMZ_KOVE_000380245, AMZ_KOVE_000417139, AMZ_KOVE_000180884, AMZ_KOVE_000433637, AMZ_KOVE_000482671, AMZ_KOVE_000485865, AMZ_KOVE_000101882, AMZ_KOVE_000181283, AMZ_KOVE_000106321, AMZ_KOVE_000472964, AMZ_KOVE_000201710, AMZ_KOVE_000468275, AMZ_KOVE_000466650, AMZ_KOVE_000177608.

- Competitive analyses and market research showing how the accused products, infringing features, and enabled functions compare to Alternatives, including "DIY" solutions, including the documents identified in "Consideration of Alternatives" below, as well as, *e.g.*, AMZ_KOVE_000455301, AMZ_KOVE_000192752, AMZ_KOVE_000202107, AMZ_KOVE_000412351, AMZ_KOVE_000444737, AMZ_KOVE_000465059, AMZ_KOVE_000468446, AMZ_KOVE_000482783, AMZ_KOVE_000482840, AMZ_KOVE_000430241, AMZ_KOVE_000468275, AMZ_KOVE_000193099, AMZ_KOVE_000430241; AMZ_KOVE_000478483, AMZ_KOVE_000236665, AMZ_KOVE_000405107, AMZ_KOVE_000201710, AMZ_KOVE_000490353.

- AWS Pricing strategy documents. *E.g.*, AMZ_KOVE_000455301, AMZ_KOVE_000430131, AMZ_KOVE_000430390, AMZ_KOVE_000453987, AMZ_KOVE_000177608, AMZ_KOVE_000385849.

- Each of the documents identified in the previous sections of this response.

4. Discovery that shows AWS's approach to license negotiations and bargain/profit sharing, including documents showing:

- the hurdle rate or Return on Investment threshold AWS or other Amazon entities

applied at the time of hypothetical negotiation

- the standard hurdle rate or Return on Investment threshold used in the industry at the time of the hypothetical negotiation

- the anticipated return on investment for other projects or deals that were finalized by AWS or other Amazon entities at or near the time of the hypothetical negotiation

## B. Cost-Savings Approach

A cost-savings approach estimates the value of the asserted patents by estimating the savings an infringer enjoyed by using the patented technology. Put differently, the cost-savings approach estimates the costs an infringer would have incurred in order to obtain the same or similar functionality or performance without infringing the asserted patents. Kove's patented technology is ground-breaking and foundational; Kove is not aware of any non-infringing alternatives that can approach the performance of the patented technology at the scale in which AWS operates and uses the accused products.

For this reason, Kove is not aware of any commercially acceptable non-infringing alternatives. This is a subject of current analysis and evaluation and will be the subject of expert opinions and testimony.

Notwithstanding the apparent absence of commercially acceptable non-infringing alternatives, Kove may estimate the costs AWS would have incurred to obtain similar functionality or performance without infringing the asserted patents, or estimate the costs AWS would have incurred to obtain inferior performance without infringing the asserted patents, including through an analysis of hardware, energy, server, and other infrastructure costs.

Certain relevant Alternatives are also potentially relevant to the cost-savings approach and would involve a comparison between the costs AWS incurred in connection with its infringement and the estimated costs associated with Alternatives or that AWS would have

incurred if it had used an Alternative instead.  These Alternatives are described in more detail below.

Exemplary evidence potentially relevant to the cost-savings approach includes:

- Documents showing the fixed and variable costs associated with the operation of the accused products, including costs associated with, e.g., hardware, energy, facilities, engineers, maintenance, network operations.

- AWS-level costs that are or could be allocated to the accused products.

- Documents showing the cost associated with particular features or functionality (e.g., the marginal cost for █████████████████████████████████).

- Documents showing the scale at which the accused products operate, including documents showing the volume and frequency of operations for each pricing category, and the quantity of relevant hardware components AWS uses to meet that volume.

- Documents showing the current performance levels of the accused products, with respect to speed, availability, durability, and scalability.

- Documents showing the utilization of or burden placed on the relevant components of the accused products (e.g., █████████████████████████████ █████████).

- Documents that identify the hardware AWS uses for each of the relevant components of the accused products, the per-unit costs of each component hardware, and the operational capacity of each component.

- Documents identifying the amount that AWS's various services would spend to build substitute non-infringing technology.

Kove identifies the following exemplary documents relating to this issue:

- AWS's responses to Kove interrogatories 6 (seeking costs associated with the accused products), 7 (seeking information on the components that serve as location servers in the accused products), 9 (seeking information on how AWS uses the accused products), 13 (seeking cost and profit projections associated with the accused products and infringing components of the accused products, as well as projections regarding how the accused products and infringing features were to be used and the performance of the accused products), 14 (seeking a description of the metrics AWS uses to evaluate performance of the accused products and the infringing features of the accused products)15 (seeking information on the testing AWS used to evaluate the performance of the accused products and infringing features of the accused products), 16 (seeking information on the benefits associated with the accused products' ability to scale—including financial or cost-related benefits), and 22

(seeking information on each pricing category associated with the accused products).

- Documents produced in response to Kove's motion to compel additional financial information, *see* Dkt. 405 at 16 (items 1-6). *See, e.g.*, the documents cited above in connection with this category.

- Documents showing cost, count, capacity, and utilization information for the hardware that power the Accused Products, and that recognize the significance of utilization. *E.g.*, AMZ_KOVE_000528394, AMZ_KOVE_000528850, AMZ_KOVE_000528295, AMZ_KOVE_000521124, AMZ_KOVE_000483279, AMZ_KOVE_000472800, AMZ_KOVE_000454430, AMZ_KOVE_00012917, AMZ_KOVE_000483279.

- AWS-level financial documents, including documents produced (or that will be produced) in response to Kove's already-granted motion to compel AWS-level financial information, *see* Dkts. 212, 359. *See, e.g.*, the documents cited above in connection with this category.

- Weekly business reports for S3 and DynamoDB. *See, e.g.*, the documents cited above.

- Product-level financial documents, including P&Ls. *See, e.g.*, the documents cited above.

- Cost analyses associated with the accused products and with specific infringing components or infringing features of the accused products. *E.g.*, AMZ_KOVE_000091121 (cost-savings associated with ▮▮▮▮▮▮▮), AMZ_KOVE_000445350-445356 (▮▮▮▮▮▮▮ for DynamoDB), AMZ_KOVE_000446554 (DynamoDB cost analysis), AMZ_KOVE_000449391 (same), AMZ_KOVE_000449396 (same), AMZ_KOVE_000455301 (analysis of costs associated with S3 and the hardware costs of potential substitute components), AMZ_KOVE_000480964 (modeling cost for discrete operations in S3), AMZ_KOVE_000472800 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮), AMZ_KOVE_000380260 ▮▮▮▮▮▮▮), AMZ_KOVE_000466195 (same), AMZ_KOVE_000399800 (S3 ▮▮▮ cost analysis), AMZ_KOVE_000445170 (DynamoDB cost analysis), AMZ_KOVE_000464946 (showing the costs ▮▮▮▮▮▮▮▮▮▮▮), AMZ_KOVE_000106321, AMZ_KOVE_000457250 (Cross-region replication), AMZ_KOVE_000528552, AMZ_KOVE_000528551, AMZ_KOVE_000528536, AMZ_KOVE_000528422, AMZ_KOVE_000520261-AMZ_KOVE_000520268 (8 documents), AMZ_KOVE_000445351, AMZ_KOVE_000528389.

- Cost analyses attempting to model the costs of operating the accused products at AWS scale, as compared to customer-level scale. *E.g.*, AMZ_KOVE_000430241; AMZ_KOVE_000455301; AMZ_KOVE_000478483; AMZ_KOVE_000236665, AMZ_KOVE_000405107.

Plaintiff is unable to quantify the reasonable royalty under this approach at this time, as this will be the subject of expert opinion disclosed in accord with expert disclosure deadlines. Further, depositions key to this calculation and analysis have yet to be taken and are not scheduled until the last few weeks of fact discovery.

A calculation of damages under the cost-saving approach may include:

- Isolating incremental cost savings attributed to the accused products or accused features (these cost savings might include cost savings associated with derivative or convoyed sales derived from infringement).

- Then, to the extent not already encompassed in the determination of the royalty base, the expert may adjust the royalty rate or royalty base to apportion to the benefits of the invention and to account for additional apportionment factors.

- Through these and any other relevant steps to the reasonable royalty analysis, the expert could isolate a relevant reasonable royalty base and royalty rate and multiply the two.

-  The final step, called the so-called bargain or profit split, involves a determination of how the parties at the hypothetical negotiation would be expected to divide between them the incremental profits calculated in the prior steps (i.e., determining what percentage of profits from the prior steps would be provided to Kove).  This percentage of profits that would be provided to Kove could then be used to adjust the royalty rate calculated in the prior steps, in order to derive a reasonable running royalty for AWS's infringement (i.e., calculated by multiplying the relevant royalty rate times the relevant royalty base).

**C.  The Consideration of Alternatives**

A consideration of alternatives to the patented technology is relevant to both the income approach and the cost-savings approach. Kove's patented technology is ground-breaking and foundational; Kove is not aware of any non-infringing alternatives that can approach the performance of the patented technology at the scale in which AWS operates and uses the accused products or that approach the cost savings attributed to the patented technology. For these and other reasons, Kove is not aware of any commercially acceptable non-infringing alternatives.

Under the income approach, the value AWS derived from the patented invention may be determined by analyzing the difference between (a) the income AWS obtained in connection with the use of the patented invention and (b) the estimated income associated with Alternatives or that AWS would have obtained using Alternatives. Under the cost-savings approach, the value AWS derived from the patented invention may be determined by taking the difference between (a) the costs associated with Alternatives or the costs AWS would have incurred when using Alternatives to obtain performance levels at or similar to the performance it experienced using the patented invention and (b) the costs AWS incurred when using the patented invention.

An analysis of alternatives may also support a hybrid approach—if an alternative cannot obtain levels of performance commensurate to the accused products but only some lower level P, regardless of how much additional money is spent, the value derived from the patented invention may be determined by taking (a) the profits AWS obtained in connection with the (infringing) accused products + (b) the additional costs AWS would have incurred when using the alternative to obtain performance at some level P – (c) the estimated revenues AWS would have obtained using an alternative that performed at level P.

As explained above, Kove is not aware of any commercially acceptable non-infringing alternatives. Nevertheless, Kove may still consider the following as Alternatives that can

potentially be used to estimate the value of Kove's invention to AWS, the accused products, and
the enabled features.  At this stage, Kove identifies the following as potential Alternatives:

- ███████████ or other predecessor products to the accused products
- S3 without the ███████
- A version of the ███████ implemented with ███████ rather than with ███████
  ███████
- Versions of S3 or DynamoDB without ███████████ in which users have to
  ███████████
- Versions of S3 or DynamoDB in which users must provision their usage requirements or
  volume in advance
- Versions of S3 or DynamoDB that can scale only to a finite, pre-determined level
- Versions of S3 or DynamoDB that use a ███████████, rather than a
  ███████████
- Smaller-scale "DIY" solutions.  For S3, this could be built according to the specifications
  or assumptions forth in AMZ_KOVE_000455301.

The above Alternatives could not function at a level of scale, cost, or performance
commensurate with that of the Accused Products and none of these Alternatives appear to be
commercially acceptable alternatives to the patented invention.  Nevertheless, these Alternatives
may provide useful data points to allow Kove's experts to estimate the benefits of Kove's
invention or the value of the enabled features.

 At this point, Kove cannot quantify the impact of any of these potential Alternatives on
the reasonable royalty analysis both because this is a topic for expert discovery and because key
depositions on issues relating to this topic have yet to be taken and will not be taken until the
very end of fact discovery.

In addition to the above Alternatives, Kove recognizes that AWS may identify
alternatives that it views to be non-infringing alternatives.  *See* 6/11/21 Supplemental Response

to Kove Interrogatory No. 3. Kove does not agree that the alternatives referenced in AWS's interrogatory responses are non-infringing, nor does Kove agree that those alternatives would function, let alone that they would perform at anywhere near the level of performance as the Accused Products, nor does Kove agree that any of the alternatives would be commercially acceptable. To the contrary, many of AWS's purported non-infringing alternatives are facially infringing and/or obviously non-functional. Nevertheless, in estimating the value of Kove's invention and in performing the reasonable royalty analysis, Kove may evaluate the impact to AWS and its customers of some of AWS's purported non-infringing alternatives to show that even AWS could not identify a viable alternative and to show that the Accused Products have significant cost, performance, and commercial advantages relative to what AWS contends are the next-best solutions.

Kove identifies the following exemplary documents relating to this issue:

- Each of the categories of documents identified above in connection with the cost-savings and income approaches.

- AWS's responses to Kove interrogatories 3 (seeking identification of non-infringing alternatives AWS intends to assert), 6 (seeking costs associated with the accused products), 7 (seeking information on the components that serve as location servers in the accused products), 9 (seeking information on how AWS uses the accused products), 13 (seeking cost and profit projections associated with the accused products and infringing components of the accused products, as well as projections regarding how the accused products and infringing features were to be used and the performance of the accused products), 14 (seeking a description of the metrics AWS uses to evaluate performance of the accused products and the infringing features of the accused products)15 (seeking information on the testing AWS used to evaluate the performance of the accused products and infringing features of the accused products), 16 (seeking information on the benefits associated with the accused products' ability to scale—including financial or cost-related benefits), and 22 (seeking information on each pricing category associated with the accused products).

- Documents that consider the performance and cost of predecessor products ██████ ███████████ or that discuss the shortcomings of predecessor products. *E.g.*, AMZ_KOVE_000482837, AMZ_KOVE_000494957, AMZ_KOVE_000525421, AMZ_KOVE_000491407, AMZ_KOVE_000491423.

- Metrics relating to the Accused Products and enabled features that AWS produced in response to the Court's December 30, 2022 order and Kove Interrogatories 14 and 22. *E.g.*, AMZ_KOVE_000528557-AMZ_KOVE_000528567 (11 documents), AMZ_KOVE_000528239, AMZ_KOVE_000528295, AMZ_KOVE_000527779-AMZ_KOVE_000527794 (16 documents).

- Documents that evaluate the performance, desirability, or cost of alternatives, including the documents identified above in connection with "competitive analyses and market research showing how the accused products, infringing features, and enabled functions compare to Alternatives, including 'DIY' solutions."

- Documents that reflect AWS's consideration (and rejection) of alternate designs for the Accused Products. *E.g.*, AMZ_KOVE_000380260, AMZ_KOVE_000437351, AMZ_KOVE_000226633.

## D. Market Approach

The market approach utilizes comparable transactions to derive a reasonable royalty. AWS has not produced any technically or commercially comparable licenses, and Kove is not aware of any.[3] In fact, due to the foundational nature of the patented technology, the unique and novel patents, and the scope and breadth of the benefits, it is unlikely that any such comparable licenses will be identified. For at least these reasons, Kove does not anticipate utilizing this approach. Kove has not yet obtained corporate deposition testimony on this issue, nor has AWS identified any licenses it believes would be considered at the hypothetical negotiation. Kove may revise its position on this issue in response to deposition testimony or additional disclosures from AWS.

## Georgia Pacific Factors

The following *Georgia-Pacific* factors are expected to have particular weight to the damage analysis:

- *Factor 3:* The license at issue would be a non-exclusive and limited to the United

---

[3] The related-party transactions between Kove and Arctide are not market transactions and are not comparable or useful for a market approach.

States.

- *Factor 4:* Kove has never licensed the patented technology to unrelated third parties, demonstrating a lack of willingness to voluntarily license the foundational technology at issue.

- *Factor 5*: Several years prior to the hypothetical negotiation, Kove sought to commercialize its invention. Then, beginning sometime around 2017, Kove went to market with in-memory computing products that competed with AWS products, and which continue to compete with AWS products.

- *Factor 6:* Numerous AWS services have a functional relationship with S3 and DynamoDB whereby these non-accused product services require the use of the accused products to operate. Likewise, several non-accused AWS services function as add-on products that enhance the performance or user experience associated with the accused products (e.g., by adding additional security features, analytical options, or access to metrics or telemetry associated with a customer's use of the accused products). Revenue and profit attributable to these services would represent convoyed sales thereby resulting in an increase in the royalty base and/or royalty rate.

- *Factor 7*: The duration of the patent over the period of infringement. With patent expiration dates of 2020, AWS will have had access to Kove's patented technology for over a decade, thereby allowing the company to substantially grow its AWS services.

- *Factor 8:* The patented technology is foundational and groundbreaking with enormous advantages that have played a substantial role in driving AWS's market share, profitability, success, and customer satisfaction. The infringing S3 and

Dynamo DB are profitable, extremely popular, and successful as a result of the advantages provided by the infringing technology.

- *Factor 9:* The utility and advantages of the foundational and groundbreaking patented technology provide substantial advantages over the prior art.

- *Factor 10:* The patented technology is used extensively by AWS for its other product offerings, as well as by AWS's affiliates, customers, and other services. The patented technology is essential to AWS's ability to scale and to provide the SADS benefits for its internal use, Amazon's use, and its customers' use.

- *Factor 11:* The extent of AWS's use is pervasive as the technology is embedded into the architecture of the Accused Products, used in product offerings to AWS's customers, and used extensively by Amazon and by AWS for their other product offerings.

- *Factor 12:* As explained above, there do not appear to be comparable industry licenses from which to determine the "profit or selling price customarily allowed for the use of the invention." Kove expects that AWS pricing or profits and/or industry pricing and profits relating to the SADS benefits and enabled features will impact the reasonable royalty analysis.

- *Factor 13:* The profits credited to the invention, including to the SADS benefits and enabled features, result in substantial upside to AWS both through third-party sales, affiliate usage, and profits through convoyed sales from AWS's substantial use of S3 and DynamoDB.

- *Factor 14:* The ultimate opinion testimony of Kove's experts will be a key factor.

- *Factor 15:* The hypothetical negotiation construct is important to the overall analysis

under any of the potential methodologies.

Because the market approach is not anticipated to be utilized based on the discovery currently available to Kove, *Georgia Pacific* Factors 1 and 2 are not expected to have particular relevance to the reasonable royalty analysis.

## *Willfulness*

Kove intends to prove that AWS's infringement was willful and intends to seek enhanced damages.   The factual basis for Kove's claim of willfulness is set forth in its response to AWS Interrogatory 9.

## *Attorneys' Fees*

Kove intends to seek attorneys' fees in connection with this litigation, as allowed by statute.  Since the litigation is ongoing, any calculation of attorneys' fees would be premature and otherwise objectionable at this stage.

Dated: April 4, 2023

Respectfully submitted,

*/s/ Adam Adler*

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 560-3501

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com
Philip Eklem (*pro hac vice*)
peklem@reichmanjorgensen.com

Renato Mariotti (State Bar No. 6323198)
renato.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5000

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard (*pro hac vice*)
sballard@reichmanjorgensen.com
Savannah Carnes *(pro hac vice)*
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300

REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Taylor Mauze (*pro hac vice*)
tmauze@reichmanjorgensen.com
Navid Bayar (*pro hac vice*)
nbayar@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

***ATTORNEYS FOR PLAINTIFF
KOVE IO, INC.***

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2023, Kove's Fourth Amended Response to AWS's First Set of Interrogatories (No. 7) was served on counsel of record via email.

_/s/  Adam Adler_
Adam Adler