**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | |
| | Hon. Matthew F. Kennelly |
| v. | |
| Amazon Web Services, Inc., | Jury Trial Demanded |
| Defendant. | |

<u>ATTACHMENT 7A</u>
<u>KOVE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

Pursuant to Federal Rule of Civil Procedure 52(a) and Paragraph 7 of Judge Kennelly's requirements for the Final Pretrial Order, Plaintiff Kove IO, Inc. ("Kove") submits the following proposed findings of fact and conclusions of law relating to Defendant Amazon Web Services, Inc.'s ("Amazon") equitable defenses and counterclaims of inequitable conduct and obviousness-type double patenting ("OTDP").[1]  The Court should find that Amazon has failed to establish that Kove's Asserted Patents are unenforceable due to inequitable conduct.  The Court should also find that Amazon has failed to show that the asserted claims of the '978 Patent are invalid due to OTDP.

## I.      INEQUITABLE CONDUCT

Amazon asserts in a defense and counterclaim that Kove engaged in inequitable conduct by failing to disclose one piece of prior art during prosecution of the Asserted Patents.  Because the record lacks clear and convincing evidence that Kove's inventors or prosecuting attorneys

---

[1] Kove's position is that both the inequitable conduct and OTDP claims should be heard by the Court at a separate bench trial or otherwise outside the presence of the jury. Kove's motion to bifurcate is pending.  *See* Dkt. 750.  To the extent either or both of these issues are presented to the jury for fact-finding, these proposed findings of fact and conclusions of law are not intended to limit the scope of Kove's evidence or arguments relating to these claims.

withheld material, non-cumulative information with the specific intent to deceive the PTO, the Court should reject Amazon's inequitable conduct claims.

### A. Proposed Findings of Fact[2]

#### 1. The Asserted Patents.

1. Kove asserts three patents against Amazon in this case: U.S. Patent Nos. 7,103,640 ("'640 Patent"), 7,233,978 ("'978 Patent"), and 7,814,170 ("'170 Patent") (collectively, the "Asserted Patents").

2. On September 5, 2006, the U.S. Patent and Trademark Office ("PTO") issued the '640 patent, entitled "Network Distributed Tracking Wire Transfer Protocol," with Drs. John Overton and Stephen Bailey as inventors. The application for the '640 patent was filed on September 13, 2000. The earliest application related to the '640 patent was filed on July 8, 1998.

3. On June 19, 2007, the PTO issued the '978 patent, entitled "Method and Apparatus for Managing Location Information in a Network Separate From the Data to Which the Location Information Pertains," with Drs. Overton and Bailey as inventors. The application for the '978 patent was filed on June 1, 2001. The earliest application related to the '978 patent was filed on July 8, 1998.

4. On October 12, 2010, the PTO issued the '170 patent, entitled "Network Distributed Tracking Wire Transfer Protocol," with Drs. Overton and Bailey as inventors. The application for the '170 patent was filed on February 13, 2006. The earliest application related to the '170 patent was filed on July 8, 1998.

#### 2. The Alleged Inequitable Conduct Reference.

---

[2] To the extent that any of Kove's proposed findings of facts are determined to be conclusions of law, they are adopted as, and shall be construed and deemed to be, conclusions of law.

5. Amazon relies on a single reference as the basis for its inequitable conduct defense. That reference is a paper by David Karger and others titled "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web," published in May 1997 ("the 1997 Karger Article").

6. According to Amazon, the 1997 Karger Article describes a hashing technique known as consistent hashing which stored and retrieved data by a hashed key across a set of distributed and dynamic server machines.

7. Amazon does not assert the 1997 Karger Article as invalidating prior art against any of the Asserted Patents in this litigation. That is, Amazon does not rely on the 1997 Karger Article as the basis of any of its invalidity arguments under 35 U.S.C. §§ 102 or 103.

### 3. Prosecution of the Asserted Patents.

8. Amazon contends that Dr. Overton had possession of the 1997 Karger Article prior to the issuance of the Asserted Patents based on document metadata showing that paper was present in Dr. Overton's files.

9. The 1997 Karger Article was not disclosed to the PTO during the original prosecutions of any of the Asserted Patents.

10. Dr. Overton did not believe the 1997 Karger Article was relevant to the patentability of the Asserted Patents. He will testify that the reference was different from the concepts in the Asserted Patents and that its disclosures are cumulative of other prior art references before the PTO.

### 4. Reexaminations of the Asserted Patents.

11. Amazon filed multiple requests for *ex parte* reexaminations of each of the Asserted Patents during this Litigation and one request for *inter partes* review, as set forth in the table below:

| Reexam Control No./IPR No. | Patent | Challenged Claims | Status/Result |
|---|---|---|---|
| 90/019,034 | '978 patent | 1, 3, 6, 10, 14, 17, 23, 24, 30, 31 | All claims, except 1, 31, determined patentable. |
| 90/019,035 | '170 patent | 1-2, 6, 8-9, 12, 15 | All claims determined patentable. |
| 90/019,036 | '640 patent | 17-18, 24 | All claims determined patentable. |
| 90/019,109 | '978 patent | 17, 23, 24, 30 | All claims determined patentable. |
| 90/019,162 | '978 patent | 3, 6, 10, 14 | Claims 3, 10, and 14 determined patentable. Claim 6 is pending. |
| 90/019,166 | '640 patent | 17-18, 24 | Pending. |
| 90/019,165 | '170 patent | 1-2, 6, 8-9, 12, 15 | Pending. |
| IPR2020-00276 | '978 patent | 1, 3, 6, 10, 14, 17, 23, 24, 30, 31 | Denied institution. |

12.     Amazon never identified or otherwise relied on the 1997 Karger Article as a prior art reference in any of the reexaminations it filed where it alleged that the Asserted Patents are anticipated or obvious.

13.     Kove submitted the 1997 Karger Article as prior art in Information Disclosure Statements during reexamination of each of the Asserted Patents.

14.     No patent examiner relied on or cited the 1997 Karger Article as relevant prior art during any of the reexaminations of the Asserted Patents.

## B.     Proposed Conclusions of Law[3]

15.     "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc).  "[T]he remedy for inequitable conduct is the 'atomic bomb' of patent law":  it "cannot be cured by reissue or reexamination," "can spread from a single patent to render

---

[3] To the extent that any of Kove's proposed conclusions of law are determined to be findings of fact, they are adopted as, and shall be construed and deemed to be, findings of fact.

unenforceable other related patents," "may endanger a substantial portion of a company's patent portfolio," and can even "spawn antitrust and unfair competition claims." *Id.* at 1286-87 (citations omitted). For this reason, the Federal Circuit has made clear that the standards for courts finding inequitable conduct are high and that it is an extraordinary remedy. *See id.*

16. "To prove inequitable conduct, the accused infringer must provide evidence that the applicant (1) misrepresented or omitted material information, and (2) did so with specific intent to deceive the PTO." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1334 (Fed. Cir. 2011). "Intent and materiality are separate requirements," and the court cannot use a "sliding scale" "where a weak showing of intent may be found sufficient based on a strong showing of materiality, or vice versa." *Id.*

### 1. The Inventors Lacked Specific Intent to Deceive the PTO.

17. "To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1290. "In other words, the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id.* "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence," and "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances." *Id.* (citations omitted) (emphasis in original). "Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.* at 1290-91.

18. Here, Amazon fails to meet its burden of providing clear and convincing evidence that Dr. Overton (or anyone else) withheld the 1997 Karger Article with the specific intent of deceiving the PTO. Amazon presents no direct evidence of intent to deceive. Amazon never deposed the law firm that prosecuted the patents. Amazon never asked either of the inventors, Dr.

Overton or Dr. Bailey, whether they intended to deceive the PTO. To the contrary, both inventors testified that they understood their duties to disclose material information and believe they complied. Dr. Overton also explained and will testify that the 1997 Karger Article was, in his view, very different from the Asserted Patents. Thus, the evidence is clear that Dr. Overton believed the 1997 Karger Article related to a different concept and was different from the Asserted Patents, which is far from sufficient to meet the exacting standard of specific intent. Beyond that, Dr. Overton explained that he did not disclose the article because he did not believe it was material to patentability and will explain that he did not intend to deceive the PTO.

19. Amazon does not identify any other evidence supporting a finding that Dr. Overton or Dr. Bailey—or anyone acting on their behalf—deliberately withheld the 1997 Karger article from the PTO with the specific intent of deceiving it. *See ProStrakan, Inc. v. Actavis Labs. UT, Inc.*, 2018 WL 11363829, at *55 (E.D. Tex. Sept. 28, 2018) (rejecting inequitable conduct defense where the defendant did not ask the inventors or prosecuting attorney whether they intended to deceive the Patent Office), *aff'd*, 787 F. App'x 757 (Fed. Cir. 2019).

20. Because Amazon has no direct evidence of intent to deceive to support its claim and its circumstantial evidence is insufficient, the Court cannot find that "the single most reasonable inference able to be drawn from the evidence" is specific intent to deceive. *Therasense*, 649 F.3d at 1276. Amazon's inequitable conduct defense therefore fails.

### 2. The Karger Article is Not Material, Non-Cumulative Prior Art.

21. If the Court finds that Amazon has failed to meet its burden of proving specific intent to deceive, it need not reach the question of whether the 1997 Karger Article is material.

22. "[T]he materiality required to establish inequitable conduct is but-for materiality. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art. Hence, in assessing

the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference. In making this patentability determination, the court should apply the preponderance of the evidence standard and give claims their broadest reasonable construction." *Therasense*, 649 F.3d at 1291-92.

23.     "[A] withheld otherwise material reference is not material if it is merely cumulative to, or less relevant than, information already considered by the examiner." *Larson Mfg. Co. of South Dakota, Inc. v. Aluminart Products Ltd.*, 559 F.3d 1317, 1327 (Fed. Cir. 2009).

24.     Proving materiality requires the defendant to "identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record.  Such allegations are necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329-30 (Fed. Cir. 2009) (citing *Larson Mfg. Co. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1333 (Fed. Cir. 2009)).

25.     Here, Amazon fails to meet its burden of showing the 1997 Karger Article meets the materiality requirement of inequitable conduct.  Amazon does not use the 1997 Karger Article as allegedly invalidating prior art to the Asserted Patents under 35 U.S.C. §§ 102 or 103, either in this litigation or in any of the reexaminations it filed against any of the Asserted Patents. Moreover, despite the fact that Kove disclosed the 1997 Karger Article to the PTO during each of the reexamination proceedings Amazon filed against each of the Asserted Patents, no patent examiner ever relied on that article to issue any rejections of any asserted claims.  While this evidence alone may not, standing alone, be sufficient to defeat a finding of inequitable conduct, it is persuasive in showing that Amazon does not and has never contended that the 1997 Karger

Article is sufficiently material on its own to prove the Asserted Patents are invalid, whether alone or in combination with any other prior art. Similarly, it is persuasive that the PTO itself did not consider this article to be material or non-cumulative during any of the reexaminations.

26. Moreover, Amazon bears the burden of showing that the PTO would not have allowed a claim if the prior art had been disclosed during prosecution. Amazon's only evidence of materiality comes from its expert, Greene. Greene's testimony, however, fails to establish materiality. Greene's testimony at most establishes that the 1997 Karger Article describes a hashing technique in the same general field as the Asserted Patents. But he fails to analyze or explain why a patent examiner would not have allowed any particular claim of any Asserted Patent if they had been aware of the 1997 Karger Article. Greene does not identify any particular claim elements or limitations that the 1997 Karger Article supplies that are otherwise missing from the prior art or how that article would affect prosecution. Such conclusory testimony is insufficient to establish the but-for materiality required to prove inequitable conduct. *See Exergen*, 575 F.3d at 1319-20. This alone is sufficient to defeat Amazon's inequitable conduct defense.

27. Greene also fails to provide any evidence regarding cumulativeness, such as whether and how the 1997 Karger Article differs from the other prior art of record during prosecution of the Asserted Patents. This is particularly noteworthy here, where the PTO actually considered the 1997 Karger Article during multiple reexaminations of every asserted claim across every patent at issue and did not use it to reject any of the asserted claims. This too independently defeats the inequitable conduct defense.

28. Thus, to the extent it reaches the issue, the Court should find that Amazon fails to present sufficient evidence to meet its burden of showing the 1997 Karger Article is material.

## II. OBVIOUSNESS-TYPE DOUBLE PATENTING

Amazon asserts a defense of invalidity of the asserted claims of the '978 patent under the doctrine of obviousness-type double patenting ("OTDP"). Amazon contends that each asserted claim of the '978 patent is obvious in view of one or more claims of the '640 patent and, separately, the '170 patent. Because the record lacks clear and convincing evidence that any asserted claim of the '978 patent is rendered obvious in view of any claims of either the '640 patent or the '170 patent, the Court should reject Amazon's OTDP defense.

**A. Proposed Findings of Fact**

**1. Amazon's OTDP Analysis Consists Only of Side-by-Side Claim Charts With Color Coding.**

1. Amazon's OTDP positions rest entirely on the charts included in Appendices E-1 and E-2 of its expert Greene's report. Appendix E-1 comprises a chart listing the asserted claims of the '978 patent in one column, and evidence from the '640 patent that purportedly renders those '978 patent claims obvious in an adjacent column. The limitations (or portions thereof) of the '978 patent claims are highlighted in various colors, while the evidence that ostensibly discloses each such limitation or portion is identified in the adjacent column, using the same colors.

2. Appendix E-2 comprises a chart of the asserted '978 patent in one column, with evidence from the '170 patent in the other column.

3. Greene's report does not provide any additional analysis or explanation for any of the claim mappings or why he believes the cited evidence renders the claims of the '978 patent obvious.

4. In many instances, the limitations of the '978 patent claims have significant linguistical differences from claims of the '640 or '170 patent that purportedly discloses them. For example, claim 1 of the '978 patent (from which asserted claims 3 and 6 depend) requires "a second location server comprising a second set of location information, wherein *at least a portion of the second*

*set of location information differs from the first set of location information*" (green highlighting).

Greene maps this requirement to distinctly different claim limitations in the '640 patent and the '170 patent, but provides no explanation as to why the citations supposedly teach the limitation:

| U.S. Patent No. '978 Patent Claims | '640 Patent Claims and Specification |
|---|---|
| [1.b] a second location server comprising a second set of location information, wherein at least a portion of the second set of location information differs from the first set of location information; and | [18] . . . a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client . . . if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to |
| | calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. |

| U.S. Patent No. '978 Patent Claims | '170 Patent Claims and Specification |
|---|---|
| [1.b] a second location server comprising a second set of location information, wherein at | [6] . . . wherein the programming logic is further configured to return the location message if the location server contains location information for the desired entity, |
| least a portion of the second set of location information differs from the first set of location information; and | and wherein the programming logic is further configured to return a redirect message if the location server lacks the location information for the desired entity, the redirect message comprising a list of at least one other location server known to have the location information for the desired entity. |

5. As another example, claim 14 of the '978 patent requires "*each location server containing a unique set of location information of an aggregate set of location information*" (green highlighting). Greene maps this requirement to distinctly different claim limitations in the '640 patent and the '170 patent, again with no explanation as to why he matched them up:

| U.S. Patent No. '978 Patent Claims | '640 Patent Claims and Specification |
|---|---|

| [14.preamble] A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of identifiers with at least one location, the method comprising: | [18] A system for retrieving data location information for data stored in a distributed network, the system comprising: . . . a client responsive to a data query to query a data location server for location information associated with the identifier string; a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string, wherein each of the plurality of data location servers comprises computer executable code configured to execute the following steps in response to receiving a data location request from the client: . . . if the data location server does not contain the location string associated with the identification string, the location server transmits a redirect message to the client, wherein the redirect message contains redirect information for use by the client to calculate a location of a different data location server in the plurality of data location servers, wherein the different data location server contains the location string. |
| --- | --- |

| U.S. Patent No. '978 Patent Claims | '170 Patent Claims and Specification |
| --- | --- |
| [14.preamble] A method of handling location queries in a network, the network comprising a plurality of location servers, each location server containing a unique set of location information of an aggregate set of location information correlating each of a plurality of | [1] . . . a data location server network comprising a plurality of data location servers, wherein data location information for a plurality of data entities is stored in the data location server network, at least one of the plurality of data location servers includes location information associated with the identifier string, each one of the plurality of data location servers comprises a processor and a portion of the data location information |
| identifiers with at least one location, the method comprising: | [15] A method of handling location queries in a network, the network comprising a plurality of location servers including data location information, the method comprising: correlating each one of a plurality of identifiers with at least one of a plurality of locations in the network, each one of the plurality of identifiers identifying a respective one of a plurality of data entities, wherein the data entities are stored in corresponding locations in the network; |

## 2. Amazon's Unexplained Combining of Claims.

6. For certain claims of the '978 patent, Amazon cites to numerous different claims of the '640 and '170 patent to support its OTDP argument. For example, for claim 17 of the '978 patent, Greene relies on portions of claims 1, 6, 8, 13, and 15 of the '170 patent (as well as impermissible specification citations). Dkt. 748, Ex. MM (Appx. E-2, pp. 7-11). Greene similarly relies on portions of all five claims of the '170 patent to support his contentions regarding claims 23, 24, and 30 of the '978 patent. Greene provides no reasoning as to why select aspects of three independent claims and two dependent claims should be combined together to form claim 17 or any of its dependent claims.

## 3. Amazon's Improper Reliance on Specification Evidence.

7. The Court held on summary judgment that reliance on specification evidence in support of OTDP is improper and struck the portions of Amazon's expert's (Greene) report containing them. Dkt. 739 at 42-43.

8. Amazon relied heavily on specification evidence in arguing OTDP. With respect to its contention that the '640 patent renders the asserted claims of the '978 patent obvious under OTDP, Amazon, through its expert Greene, relied on specification evidence for numerous claim limitations.

9. Claim 10 of the '978 patent requires "the location information formatted according to a transfer protocol configured for manipulating location information." Greene relies only on the patent specification of the '640 patent as disclosing this limitation. Dkt. 748, Ex. LL (Appx. E-1, pp. 4-5) (color in original).

| U.S. Patent No. '978 Patent Claims | '640 Patent Claims and Specification |
|---|---|
| [10.a.1] a plurality of location servers containing location information corresponding to a plurality of entities, the location information formatted according to a transfer protocol configured for manipulating location information, and | [18] . . . a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string . . . <br><br> I.   TITLE: NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL <br><br> 1.   Abstract: A network distributed tracking wire transfer protocol for storing and retrieving data across a distributed data collection. The protocol includes a location string for specifying the network location of data associated with an entity in the distributed data collection, and an identification string for specifying the identity of an entity in the distributed data collection. According to the protocol, the length of the location string and the length of the identification string are variable, and an association between an identification string and a location string can be spontaneously and dynamically changed. The network distributed tracking wire transfer protocol is application independent, organizationally independent, and geographically independent. A method for using the protocol in a distributed data |
| | collection environment and a system for implementing the protocol are also provided. |

10. Claim 17 of the '978 Patent requires "providing a transfer protocol configured to transport identifier and location information." Greene relies only on the patent specification of the '640 patent as disclosing this limitation. Dkt. 748, Ex. LL p. 9 (color in original).

| U.S. Patent No. '978 Patent Claims | '640 Patent Claims and Specification |
|---|---|
| [17.a] providing a transfer protocol configured to transport identifier and location information, the location information specifying the location of information related to the identifier; | [18] . . . a data location server network comprising a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string . . .<br><br>II.    TITLE: NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL<br><br>Abstract: A network distributed tracking wire transfer protocol for storing and retrieving data across a distributed data collection. The protocol includes a location string for specifying the network location of data associated with an entity in the distributed data collection, and an identification string for specifying the identity of an entity in the distributed data collection. According to the protocol, the length of the location string and the length of the identification string are variable, and an association between an identification string and a location string can be spontaneously and dynamically changed. The network distributed tracking wire transfer protocol is application independent, organizationally independent, and geographically independent. A method for using the protocol in a distributed data collection environment and a system for implementing the protocol are also provided. |

11. Claim 17 of the '978 Patent requires storing location information that is "formatted according to the transfer protocol at a first location server." Greene relies only on the patent specification of the '640 patent as disclosing this limitation. Dkt. 748, Ex. LL pp. 9-10.

| U.S. Patent No. '978 Patent Claims | '640 Patent Claims and Specification |
|---|---|
| [17.b] storing location information formatted according to the transfer protocol at a first location server; | III.    [18] . . . A DATA REPOSITORY CONFIGURED TO STORE DATA, WHEREIN THE DATA IS ASSOCIATED WITH AN IDENTIFIER STRING . . .<br><br>IV.    . . . A DATA LOCATION SERVER NETWORK COMPRISING A PLURALITY OF DATA LOCATION SERVERS, AT LEAST ONE OF THE PLURALITY OF DATA LOCATION SERVERS CONTAINING LOCATION INFORMATION ASSOCIATED WITH THE IDENTIFIER STRING, WHEREIN EACH OF THE PLURALITY OF DATA LOCATION SERVERS COMPRISES COMPUTER EXECUTABLE CODE CONFIGURED TO EXECUTE THE |

| | FOLLOWING STEPS IN RESPONSE TO RECEIVING A DATA LOCATION REQUEST FROM THE CLIENT: |
|---|---|
| | V.    TITLE: NETWORK DISTRIBUTED TRACKING WIRE TRANSFER PROTOCOL |
| | Abstract: A network distributed tracking wire transfer protocol for storing and retrieving data across a distributed data collection. The protocol includes a location string for specifying the network location of data associated with an entity in the distributed data collection, and an identification string for specifying the identity of an entity in the distributed data collection. According to the protocol, the length of the location string and the length of the identification string are variable, and an association between an identification string and a location string can be spontaneously and dynamically changed. The network distributed tracking wire transfer protocol is application independent, organizationally independent, and geographically independent. A method for using the protocol in a distributed data collection environment and a system for implementing the protocol are also provided. |

12. Claim 17 of the '978 Patent requires "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit."   Greene relies only on the patent specification of the '640 patent as disclosing this limitation.  Dkt. 748, Ex. LL, p. 1.

| U.S. Patent No. '978 Patent Claims | '640 Patent Claims and Specification |
|---|---|
| [17.e] transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit. | "As those skilled in the art will appreciate, the Transmission Control Protocol (TCP) is a connection-oriented protocol that is part of a universally implemented subset of the Internet Protocol (IP) suite. TCP provides reliable, bi-directional stream data transfer. TCP also implements adaptive congestion avoidance to ensure data transfer across a heterogeneous network with various link speeds and traffic levels." (Col. 11:33-40) |

13. Claim 23 of the '978 Patent requires that "the performance criterion [of claim 17] comprises an amount of available persistent storage space in the first location server."   Greene relies only on the patent specification of the '640 patent as disclosing this limitation.  Dkt. 748, Ex. LL, p. 11.

| U.S. Patent No. '978 Patent Claims | '640 Patent Claims and Specification |
|---|---|
| [23] The method of claim 17, wherein the performance criterion comprises an amount of available persistent storage space in the first location server. | "As those skilled in the art will appreciate, the Transmission Control Protocol (TCP) is a connection-oriented protocol that is part of a universally implemented subset of the Internet Protocol (IP) suite. TCP provides reliable, bi-directional stream data transfer. TCP also implements adaptive congestion avoidance to ensure data transfer across a heterogeneous network with various link speeds and traffic levels." (Col. 11:33-40) |

14. Claim 24 of the '978 Patent requires that "the performance criterion [of claim 17] comprises a transaction rate limit." Greene relies only on the patent specification of the '640 patent as disclosing this limitation. Dkt. 748, Ex. LL, p. 11.

| U.S. Patent No. '978 Patent Claims | '640 Patent Claims and Specification |
|---|---|
| [24] The method of claim 17, wherein the performance criterion comprises a transaction rate limit. | "As those skilled in the art will appreciate, the Transmission Control Protocol (TCP) is a connection-oriented protocol that is part of a universally implemented subset of the Internet Protocol (IP) suite. TCP provides reliable, bi-directional stream data transfer. TCP also implements adaptive congestion avoidance to ensure data transfer across a heterogeneous network with various link speeds and traffic levels." (Col. 11:33-40) |

15. Claim 30 of the '978 Patent requires that "transferring a portion of the identifiers and associated locations to a second location server when a performance criterion of the first data location server reaches a predetermined performance limit [of claim 17] further comprises monitoring the performance criterion and automatically transferring the portion of identifiers and associated locations when the first location server reaches the predetermined limit." Greene relies only on the patent specification of the '640 patent as disclosing this limitation. Dkt. 748, Ex. MM, pp. 11-12.

| U.S. Patent No. '978 Patent Claims | '640 Patent Claims and Specification |
|---|---|
| [30] The method of claim 17, wherein transferring a portion of the identifiers and associated locations to a second location server | "As those skilled in the art will appreciate, the Transmission Control Protocol (TCP) is a connection-oriented protocol that is part of a universally implemented subset of the Internet Protocol (IP) suite. TCP provides reliable, bi-directional |

16. With respect to its contention that the '170 patent renders the asserted claims of the '978 patent obvious under OTDP, Amazon relied on specification evidence for claim 10, which requires that "the plurality of location servers are arranged in a cluster topology." Greene relies only on the patent specification of the '170 patent as disclosing this limitation. Dkt. 748, Ex. MM, pp. 5-6.

| U.S. Patent No. '978 Patent Claims | '170 Patent Claims and Specification |
|---|---|
| [10.a.3] wherein the plurality of location servers are arranged in a cluster topology such that each location server contains a unique set of location information of an aggregate set of the location information; and | [1] each one of the plurality of data location servers comprises a processor and a portion of the data location information, the portion of the data location information included in a corresponding one of the data location servers is based on a hash function used to organize the data location information across the plurality of data location servers, |
| | [8] The system of claim 6, wherein each of a plurality of location servers in the network stores only a portion of the data location information. |
| | "NDTP provides two mechanisms for server redirection. The redirection mechanisms allow cluster and hierarchical topologies, and mixtures of such topologies (described in detail below)." (Col. 14:43-46) |
| | "FIG. 12 illustrates a cluster topology for client interaction with NDTP servers 120. A single client queries a first server 120a (Server0), learns of a new index location (Server1), and then contacts that server 120b (Server1) for the operations it wishes to execute on the index that the client identifies. The basic idea is that a client asks a server 120a to process an index operation. If the contacted server 120a does not have all the information, as for example in a redirect, then it passes the request to another server 120b. If the second server 120b is appropriate it responds appropriately, or it passes the request on to another server (not shown), and so on. FIG. 12 could also illustrate a hierarchical topology if a client (not shown) contacted another client in a handoff as shown in FIG. 10, where a client 106 asks up' to another client 106, and so on." (Col. 18:9-22) |
| | 

Fig. 12 |

## B. Proposed Conclusions of Law

17. "The ban on double patenting . . . is designed to prevent an inventor from securing a second, later expiring patent for the same invention." *Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Trust*, 764 F.3d 1366, 1373 (Fed. Cir. 2014). Accordingly, if the claims of a later-expiring patent are obvious in light of the claims of an earlier-expiring patent, the later-expiring patent is invalid for "obviousness-type" double patenting. *Id.* at 1378-79. Patentable differences do not exist when later claims represent "minor linguistic difference[s]," are "obvious

variations," "slightly broader" or "merely a subset" of earlier claims. *Georgia Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1327–28 (Fed. Cir. 1999).

18. "Double patenting is an affirmative defense" that Amazon must prove "by clear and convincing evidence, a heavy and unshifting burden." *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1580 (Fed. Cir. 1991); *accord Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1375 (Fed. Cir. 2017). "Obviousness-type double patenting is an issue of law premised on underlying factual inquiries." *Novartis AG v. Ezra Ventures LLC*, 909 F.3d 1367, 1372 (Fed. Cir. 2018) (citing *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1290 (Fed. Cir. 2012)).

19. The obviousness-type double-patenting inquiry is governed by a two-step test: construe the claims of the patents, and determine any difference(s) between them; and compare the claims of the two patents to "determine[] whether those differences [between the claims] render the claims patentably distinct." *Abbvie*, 764 F.3d at 1371, 1374 (quoting *Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1385 (Fed. Cir. 2010)). The second step of the obviousness-type double patenting analysis is "analogous to an obviousness analysis under 35 U.S.C. § 103," *Amgen Inc. v. F. Hoffman-La Roche Ltd*, 580 F.3d 1340, 1361 (Fed. Cir. 2009), which requires performing "an element-by-element comparison of each claim to each prior reference," *Oxford Gene Technology Ltd. v. Mergen Ltd*, 345 F.Supp.2d 431, 436 (D. Del. 2004) (internal citations omitted).

20. To determine whether or not the claims are patentably distinct in step two, courts look to whether a person of ordinary skill in the art would be readily able to envision the differences. *Abbvie*, 764 F.3d at 1379. "Because nonstatutory double patenting compares earlier and later claims, an earlier patent's disclosure is not available to show nonstatutory double patenting." *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1385 (Fed. Cir. 2003). In an

obviousness-type double patenting analysis, the earlier patent's specification is "considered only to the extent necessary to construe its claims" and "ordinarily does not qualify as prior art against the patentee." *Eli Lilly & Co.*, 689 F.3d at 1378-79; *see also In re Basell Poliolegine Italia S.P.A.*, 547 F.3d 1371, 1378 (Fed. Cir. 2008) (specification only used "to learn the meaning of terms in interpreting the coverage of a claim.").

21. Furthermore, because double patenting focuses on the inventions claimed, and claims must be construed as a whole, a disputed claim must be compared in its entirety to a prior art claim in its entirety. *See Magna Elecs., Inc. v. Trw Auto. Holdings Corp.*, No. 1:12-CV-654, 2016 WL 4239187, at *4-5 (W.D. Mich. Jan. 8, 2016) (discussing *General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272 (Fed. Cir. 1992) and cautioning against "mashing together claim limitations from [different claims] to meet the doctrine's strict requirements"). In other words, to prove obviousness under OTDP, it is necessary to show that a single earlier claim, in its entirety, renders a later claim, in its entirety, invalid. *Id.* at *5. The Federal Circuit has instructed that "it is important to bear in mind that comparison can be made only with what invention is *claimed* in the earlier patent, paying careful attention to the rules of claim interpretation to determine what invention a claim *defines* and not looking to the claim for anything that happens to be mentioned in it as though it were a prior art reference." *General Foods*, 972 F.2d at 1280 (emphasis in original). As such, the Court must determine what a claim defines instead of what it discloses. *Id.*; *see also Magna Elecs.,* 2016 WL 4239187 at *8 (holding that the OTDP claim failed because it was based on impermissibly mashing together claims).

### 1. Amazon's Conclusory Determinations Are Insufficient to Carry Its Clear and Convincing Burden.

22. Amazon bears the burden of proving by clear and convincing evidence that the claims of the '978 patent are obvious in view of the claims of the '640 patent and '170 patent. Yet Greene

repeatedly maps limitations of the '978 patent claims that are linguistically distinct from the earlier claims without explanation, making no attempt to square the plain differences in language beyond coding them with the same colored highlight.

23. As one example, Greene maps "a portion of the second set of location information differs from the first set of location information" in claim 1 of the '978 element to a portion of claim 18 of the '640 patent which has totally different language dealing with redirect messages. Greene's rationale for equating the two is unknown. The same is true for his assertion that this limitation is disclosed by a certain portion of claim 18 of the '170 patent, which, beyond the phrase "location information," has no other overlapping language with the claim 1 language.

24. As another example, Greene maps a portion of claim 14 of the '978 patent, which requires "a unique set of location information of an aggregate set of location information," with phrases in the claims of the '640 patent and '170 patent that are entirely different but provides no explanation why – neither the cited portions of claim 15 of the '170 patent or claim 18 of the ''640 patent mention "a unique set of location information of an aggregate set of location information," and instead deal with the relationship between identifiers and entities (claim 15) and redirect messages (claim 18).

25. To perform step two of an OTDP analysis, the court must look to whether *a person of ordinary skill in the* art, in this case, Greene, would find the differences between claims to be patentable distinct. *Abbvie*, 764 F.3d at 1379 (emphasis added). But here, and throughout his analysis, Greene offers no analysis or explanation as to the differences between the claims and no reasoning as to why he believes them to be patentable indistinct. Greene's *ipse dixit* is insufficient, and Amazon cannot carry its burden of proving OTDP by clear and convincing evidence.

## 2. Amazon Violates the "Whole Claim" Rule, Which Requires it to Compare Each Contested Claim, in its Entirety, to a Single Prior Art Claim, in its Entirety.

26. In arguing that claims 6, 10, 17, 23, 24, and 30 of the '978 patent are invalid, Amazon picks and chooses portions of unrelated claims of the '170 patent and "mashes them together" in an effort to recreate the contested claims. This violates the "whole claim" rule set forth in *General Foods*, where the Federal Circuit held that a proper analysis requires comparing claims as a whole. *General Foods*, 972 F.2d at 1280 (cautioning "it is important to bear in mind that comparison can be made only with what invention is *claimed* in the earlier patent, paying careful attention to the rules of claim interpretation to determine what invention a claim *defines* and not looking to the claim for anything that happens to be mentioned in it as though it were a prior art reference"); *see also Magna Elecs.*, 2016 WL 4239187 at *5-6 (denying OTDP where defendant "mash[ed] together claim limitations from an independent claim and three dependent claims"). For example, in arguing invalidity of claims 17, 23, 24, and 30 of the '978 patent, Greene stitches together various portions of three independent claims (claims 1, 6, and 15) and two dependent claims (claims 8 and 13) from the '170 patent. He did something similar for claim 10 of the '978 patent by combining disclosures from independent claims 1 and 6, as well as dependent claim 8. This mix-and-match approach is disallowed. *General Foods*, 972 F.2d at 1280-81.

27. Because Amazon's analysis of the alleged OTDP of these claims of the '978 patent relies on combinations of distinct elements from the '170 patent and fails to consider the claims as a whole, it fails to meet its burden of proving by clear and convincing evidence that claims 17, 23, 24, and 30 of the '978 patent are invalid for OTDP.

## 3. Amazon Relies on Specification Evidence That This Court Has Struck as Improper.

28. This Court's summary judgment order held that the specification of the '640 patent and '170 patent cannot be used as prior art in an OTDP analysis. Dkt. 739 at 42-43. Amazon's OTDP assertion relies on specification disclosures in support of the defense, and it offers no other supporting evidence that claims 10, 17, 23, 24, and 30 of the '978 patent are obvious in view of the '640 patent, and that claim 10 of the '978 patent is rendered obvious by the '170 patent. Without *any* supporting evidence, this Court must find that Amazon has not met its burden of clear and convincing evidence of OTDP. Because Amazon relies on specification evidence in support of its OTDP defense for claims 10, 17, 23, 24, and 30 of the '978 patent, the Court cannot find these claims invalid for OTDP.