IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOVE IO, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON WEB SERVICES, INC., <br><br> Defendant. | Civil Action No. 1:18-cv-08175 <br><br> Judge Matthew F. Kennelly <br><br> Jury Trial Demanded |

## FINAL PRETRIAL ORDER
## (ATTACHMENT 7B)

## AMAZON WEB SERVICES, INC.'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

Under Federal Rule of Civil Procedure 52(a), Defendant Amazon Web Services, Inc. ("AWS") submits these proposed findings of fact and conclusions of law in support of its inequitable conduct and obviousness-type double-patenting ("OTDP") defenses.

### I. INEQUITABLE CONDUCT

**A. Proposed Findings of Fact**

1. To the extent that the following findings of facts are determined to be conclusions of law, they are adopted as, and shall be construed and deemed to be, conclusions of law.

2. Plaintiff Kove, Inc. ("Kove") alleges that Amazon's Simple Storage Service ("S3") and DynamoDB ("DDB") (together, the "Accused Products") infringe Kove's '640, '170, and '978 patents (collectively, the "Kove Patents").[1]

3. John Overton and Stephen Bailey are the named inventors of the Kove Patents.[2]

---

[1] Dkt. 687, Ex. 1-4.

[2] *Id.*, Ex. 1-3 (Kove Patents).

4. The Kove Patents are entitled to the following undisputed priority dates.[3]

| Asserted Patent | Asserted Claims | Priority Date |
|---|---|---|
| 7,103,640 | 17, 18, 24 | October 28, 1999 |
| 7,233,978 | 3, 6, 10, 14 | October 28, 1999 |
| 7,233,978 | 17, 23, 24, 30 | June 2, 2000 |
| 7,814,170 | 1, 2, 6, 8, 12, 15 | October 28, 1999 |

5. Kove produced a copy of a 1997 article by David Karger et al. entitled "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web" ("the Karger Paper"). The metadata associated with that produced copy states identifies Dr. Overton as the custodian, and states that it was created on January 3, 1999—i.e., well after the Karger Paper was published in 1997.[4]

6. Dr. Overton confirmed at deposition that the Karger Paper was produced from his files, and bears a creation date of January 3, 1999. He testified:

> AWS Atty: Do you understand that this document was produced to us from your files?
>
> Overton: I do.
>
> AWS Atty: And that it was in your files at least since January 3, 1999?
>
> …
>
> Overton: Well, I see that there's the date on the metadata that says created date time of '99.
>
> AWS Atty: So this document has a creation date of January 3, 1999; right?
>
> Overton: As expressed on that page, yes.
>
> AWS Atty: You filed the application that became the '640 Patent on September 13, 2000; right?
>
> Overton: Yes.
>
> AWS Atty: And that's more than a year after January 3, 1999; right?

---

[3] *See* Dkt. 716, at 10 (internal citations omitted).

[4] Dkt. 715-9, Ex. 90 at 1.

Overton: Yes.[5]

7. The Karger Paper and Dr. Overton's possession of the Karger Paper both predate the earliest priority date for the Kove Patents: October 28, 1999.[6]

8. The Karger Paper details the work of Massachusetts Institute of Technology ("MIT") professor David Karger and five other authors—Eric Lehman, Tom Leighton, Matthew Levine, Daniel Lewin, and Rina Panigrahy—from the MIT Laboratory of Computer Science and Department of Mathematics.[7]

9. Dr. Overton demonstrated further knowledge of the Karger Paper and this work by MIT personnel in a draft letter to Paul Carmichael, who served as Kove's predecessor company OverX's patent attorney, dated October 31, 2005. The letter discusses his "NDTP" invention, which is embodied in the Kove Patents, and states:

> Combined, the NDTP (2000) case predates all the MIT and Stanford research (do a Google search on 'Distributed Hash Table', and you'll see hundreds of thousands of hits with earliest dates in 2001).[8]

10. Despite these facts, Dr. Overton didn't provide the Karger Paper to the Patent Office during the original application process for the Kove Patents.[9]

11. Dr. Overton claimed that he wouldn't have found the Karger Paper relevant when prosecuting the Kove Patents. He testified:

> Amazon Atty: You were able to determine on your own that that paper wouldn't be material to the examiner's examination of your application; right?
>
> Overton: I don't know that I'm expert in any of this. But when I

---

[5] Dkt. 715-4, Ex. 85 (5/17/2023 J. Overton Dep. Tr.) at 716:17-21, 717:2-14.

[6] *Id.*

[7] *Id.* at 2.

[8] Dkt. 715-10, Ex. 91 at 2.

[9] See Dkt. 1-1 at Exs. 4-6 (the patents-in-suit) at References Cited sections.

3

looked at that, it would never occur to me that that would be germane because that's about caching and one of the critical components, not the only one, but one very foundational component of our patents and of the technology is to eliminate caching. You can deploy it that way but that's not the part that's the most distinctive.

Amazon Atty: And that's your view; right?

Overton: I think it's – yes, yes, that's my view.[10]

12. AWS's invalidity expert Joseph Greene opined that the Karger Paper was a material reference, and that Drs. Overton and Bailey would have understood its materiality. Mr. Greene's invalidity report states:

> The inventors of the Asserted patents were familiar with Karger and Sherman's consistent hashing work. Dr. Overton wrote a draft letter to Paul Carmichael claiming that the patents-in-suit include "method claims and specific system claims regarding distributed hash tables." In this letter, Dr. Overton demonstrated his knowledge of this work being done at MIT (where Dr. Karger is a professor) regarding distributed hash tables and systems, but claimed that the work only post-dated the patents-in-suit. Even further, Dr. Overton was at least aware of Karger's consistent hashing system since at least January 3, 1999. Specifically, co-inventor Overton had a copy of Karger's article…in his files at least since that date. In my view this article and Karger's work at MIT are material to the subject matter of the applications that became the Asserted Patents….[11] [A] POSITA at this time would have considered this article highly relevant to the purported invention described in the Asserted Patents.[12]

13. Kove's infringement expert Dr. Michael Goodrich didn't dispute that the Karger Paper is prior art to the Kove Patents. Dr. Goodrich testified:

> Amazon Atty: So would you at least agree that this Karger paper was well-known in the world of distributed algorithms, right?
>
> …
>
> Goodrich: Yeah. I don't know if it would be rising to the level of something that just would be known to a person of ordinary skill in the art generally. But I'm not disputing this as prior art, if that's your

---

[10] Dkt. 687-61 (5/17/2023 J. Overton Dep. Tr.) at 732:22–733:15.

[11] Dkt. 700-42 at ¶ 231.

[12] Dkt. 715-3, Ex. 84 (7/3/2023 J. Greene Expert Report) at ¶ 232.

4

question.[13]

    **B.**    **Proposed Conclusions of Law**

    1.    To the extent the following conclusions of law are determined to be findings of fact, they are adopted as, and shall be construed and deemed to be, findings of fact.

    2.    "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent."[14]

    3.    A patent applicant engages in inequitable conduct when they "knew of [a] reference, knew that it was material, and made a deliberate decision to withhold it."[15]

    4.    Prior art is material to patentability if it is "but-for material."[16] "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed the claim had it been aware of the undisclosed prior art."[17]

    5.    The Karger Paper is prior art to the Kove Patents, a conclusion which Kove's expert, Dr. Goodrich, did not dispute.[18]

    6.    The Karger Paper is a material reference, as Mr. Greene explained.[19]

    7.    Intent can be inferred "from indirect and circumstantial evidence," since "direct evidence of deceptive intent is rare."[20]

    8.    Dr. Overton, as a named inventor, was a POSITA who would have understood the

---

[13] Dkt. 717, Ex. 92 (9/9/2023 M. Goodrich Dep. Tr.) at 265:17–266:4.

[14] *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011).

[15] *Intellect Wireless, Inc. v. HTC Corp.*, No. 09-cv-2945, 2012 WL 728242, at *1 (N.D. Ill. Mar. 2, 2012).

[16] *Therasense*, 649 F.3d at 1291.

[17] *Id.*

[18] *See supra*, Inequitable Conduct ("IC") Findings of Fact, at ¶¶ 9-10.

[19] *See supra, id.*, at ¶ 9.

[20] *Therasense*, 649 F.3d at 1290.

Karger Paper's relevance to the PTO, as Mr. Greene explained.

9. Dr. Overton intentionally concealed the Karger Paper from the Patent Office during prosecution of the Kove Patents.[21]

10. Because Dr. Overton was aware of the Karger Paper while prosecuting the Kove Patents, Karger is but-for material and/or Dr. Overton was aware of its materiality, and Dr. Overton intentionally withheld it during prosecution of the applications which later became the Kove Patents, Dr. Overton engaged in inequitable conduct.

11. Dr. Overton's inequitable conduct during prosecution bars enforcement of the Kove Patents.[22] Therefore, this case is dismissed.

## II. OBVIOUSNESS-TYPE DOUBLE PATENTING

### A. Proposed Findings of Fact

1. To the extent that the following findings of facts are determined to be conclusions of law, they are adopted as, and shall be construed and deemed to be, conclusions of law.

2. In reexamination proceedings, Kove has repeatedly used materially the same language to describe the technology of the '978, '640, and '170 patents, with pages of Kove's responses containing nearly identical "Overview[s] of the Technology."[23]

3. There are no material differences between the construction of claim terms in the '978 patent and the '640 and '170 patents.

4. The only term that differs between the '978 patent and the '640 and '170 patents is "location information." And the construction of "location information" in the '978 patent "is an

---

[21] *See supra*, IC Findings of Fact, at ¶¶ 6-8.

[22] *See Therasense*, 649 F.3d at 1285.

[23] *E.g.*, Dkt. 700-134 (Reply to Office Action in '036 Reexam.) at 7-9; Dkt 700-157 (Reply to Office Action in '034 Reexam.) at 8-11; Dkt. 700-131 (Reply to Office Action in '035 Reexam.) at 8-11; Dkt. 700-140 (Reply to Office Action in '109 Reexam.) at 9-10; *see also* Dkt. 700-42 at ¶ 288.

explicitly disclosed subset of the 'location information' claimed in the '640 and '170 patents.[24]

5. Each claim limitation in the asserted '978 patent claims is explicitly disclosed by the '640 and '170 patents.[25]

**B.     Proposed Conclusions of Law**

1. To the extent the following conclusions of law are determined to be findings of fact, they are adopted as, and shall be construed and deemed to be, findings of fact.

2. "Obviousness-type double patenting is a judicially created doctrine meant to prevent the extension of the term of a patent…by prohibiting the issuance of the claims in a second patent not patentably distinct from the claims of the first patent.'"[26]

3. "Obviousness-type double patenting is an issue of law premised on underlying factual inquiries."[27]

4. "Under obviousness-type double patenting, a patent is invalid when it is merely an obvious variation of an invention disclosed and claimed in an earlier patent by the same inventor."[28]

5. "To determine whether there is obviousness-type double patenting, a court performs a 2-step test."[29]

6. "First, the court determines 'the differences in the claims of the earlier and later

---

[24] Dkt 700-42 at ¶¶ 284-86.

[25] *Id.* at ¶¶ 287-88; Dkt 700-9; Dkt. 700-10.

[26] Dkt. 739 at 38 (quoting *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 689 F.3d 1368, 1376 (Fed. Cir. 2012) (internal citations omitted)).

[27] *Novartis AG v. Ezra Ventures LLC*, 909 F.3d 1367, 1372 (Fed. Cir. 2018) (citing *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1290 (Fed. Cir. 2012)).

[28] *Id.* at 38 (quoting *Georgia-Pac. Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1326 (Fed. Cir. 1999)) (internal quotation marks omitted).

[29] *Id.* at 38.

patents.'"[30]

7. "Second, the court 'determine[s] if the alleged infringer has proven by clear and convincing evidence that the claims are not patentably distinct.'"[31]

8. "A later patent claim is not patentably distinct from an earlier claim if the later claim is obvious over, or anticipated by, the earlier claim."[32]

9. The only term that differs between the '978 patent and the '640 and '170 patents is "location information," which is an "explicitly disclosed subset of the 'location information' claimed in the '640 and '170 patents."[33]

10. The evidence demonstrates that the '978 patent's claims are not patentably distinct from the '640 and '170 patents' claims.[34]

11. The asserted claims of '978 patent are invalid because they are merely obvious variations of the invention disclosed by the '640 and '170 patents' claims.

12. Therefore, Kove's claims regarding infringement of the '978 patent are dismissed.

**SO ORDERED.**

---

[30] *Id.* (quoting *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1375 (Fed. Cir. 2017)).

[31] *Id.*

[32] *Id.* (internal quotation marks omitted).

[33] *See supra*, Obviousness-Type Double Patenting ("OTDP") Findings of Fact, at ¶ 5.

[34] *See id.* at ¶¶ 4-8.