**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Hon. Matthew F. Kennelly |
| v. | Jury Trial Demanded |
| Amazon Web Services, Inc., |  |
| Defendant. |  |

**FINAL PRETRIAL ORDER**
**(ATTACHMENT 9B – DISPUTED PROPOSED JURY INSTRUCTIONS)**

**PROPOSED JURY INSTRUCTIONS.** *For a jury trial, proposed jury instructions are to be included both in the written pretrial order but need not be separately submitted on a flash drive or otherwise. The Seventh Circuit Model Jury Instructions, both criminal and civil, are to be used to the extent they apply. If Illinois law provides the applicable standards for a particular claim, the Illinois Pattern Instructions should be used for the substantive elements of the particular cause of action.*

A. *Agreed instructions. The parties are directed to confer and agree upon jury instructions to the extent possible, prior to the submission of the jury instructions to the Court. Agreed proposed instructions should be marked as such and shall be numbered consecutively.*

B. *Disputed instructions. Unagreed proposed instructions shall be numbered, shall identify the proponent of the instruction, and shall include supporting authority. Objections to any proposed instructions must be set forth in writing and shall include supporting authority.*

The parties provide the following unagreed proposed jury instructions, including supporting authority:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Hon. Matthew F. Kennelly |
| v. | Jury Trial Demanded |
| Amazon Web Services, Inc., | |
| Defendant. | |

## DISPUTED [PROPOSED] PRELIMINARY JURY INSTRUCTIONS

# TABLE OF CONTENTS

3.     THE PARTIES AND THE NATURE OF THE CASE ......................................... 1

4.1    THE PATENT CLAIMS ...................................................................................... 3

7.     PERSON OF ORDINARY SKILL ...................................................................... 4

8.1    DIRECT INFRINGEMENT ................................................................................ 5

8.2    WILLFUL INFRINGEMENT ............................................................................. 6

9.1    INVALIDITY – ANTICIPATION ...................................................................... 7

9.3    INVALIDITY – OBVIOUSNESS-TYPE DOUBLE PATENTING ..................... 8

10.    UNENFORCEABILITY – INEQUITABLE CONDUCT ..................................... 9

11.    DAMAGES ........................................................................................................ 11

## 3. THE PARTIES AND THE NATURE OF THE CASE[1]

This is a patent case. It involves U.S. Patent Nos. 7,103,640; 7,814,170; and 7,233,978. Patents are often referred to by their last three digits. I will call the patents in this case the '640, '170, and '978 Patents. I may also refer to them together as the Kove Patents.

These patents relate to storing electronic information across multiple computer servers. **[Kove's Position:** The Kove Patents teach how very large computer databases can locate information extremely quickly. During the trial, the parties will offer testimony to familiarize you with this distributed storage technology.**]** **[AWS's Position:** The Kove Patents teach a way that computer databases can locate information. During the trial, the parties will offer testimony to familiarize you with this technology.**]**

**[Kove's Position:** The Plaintiff in this case is Kove IO, Inc.**]** **[AWS's Position:** The Plaintiff in this case is Kove IO, Inc., which I will refer to as Kove. Kove was previously named Econnectix. You may also hear the attorneys and witnesses refer to Econnectix during the trial.**]** The Defendant in this case is Amazon Web Services, Inc, and is also known as AWS. You may also hear the attorneys and witnesses refer to AWS as Amazon. Kove contends that AWS infringed the '640, '170, and '978 Patents by making, using, selling, and/or offering for sale its Simple Storage Service (known as "S3") and DynamoDB products. Kove contends that it is entitled to recover monetary damages caused by that infringement. Kove also contends that AWS's infringement was willful.

---

[1] Source: *10X* Preliminary Instructions, at 7; Pattern Jury Instructions of the Seventh Circuit (Patents) (hereinafter, "Model Preliminary Patent Instructions") (11.1.1 The Parties and the Nature of the Case).

**[Kove's Position[2]:** AWS denies that it infringed Kove's patents and contends that Kove's patents are invalid.]  **[AWS's Position[3]:** AWS denies that it infringed Kove's patents (willfully or otherwise) and contends that Kove's patents are invalid and unenforceable.]

I will explain these contentions to you later. First, I will give you some background about the U.S. patent system, the parts of a patent, and how a person gets a patent.

---

[2] AWS's addition of "and unenforceable" is improper and erroneous; there is no authority in the model instructions or otherwise to include reference to inequitable conduct.

[3] If Kove's motion to bifurcate (Dkt. 750) is denied, the jury will be hearing evidence on inequitable conduct and should be provided with instructions on the defense.

## 4.1    THE PATENT CLAIMS[4]

The claims of a patent define the invention covered by the patent.  In other words, the claims describe what the patent does and does not cover, somewhat like the way a property deed describes the boundaries of a parcel of land.

When a product is accused of infringing a patent, the patent claims must be compared to the accused product to determine whether infringement has been proven.  The claims are also at issue when the validity of a patent is challenged.  In reaching your determinations with respect to infringement and invalidity, you must consider each claim of the patent separately.

In this case, we are concerned with claims 17, 18, and 24 of the '640 Patent; claims 1, 2, 6, 8, 12, and 15 of the '170 Patent; and claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 Patent.

Kove contends that AWS infringed these claims.  **[Kove's Position[5]:** AWS denies this and contends that these claims are invalid.**]**  **[AWS's Position[6]:** AWS denies this and contends that these claims are invalid and that the patents are unenforceable.**]**

The language of patent claims may not be clear to you, or the meaning of the claims may be disputed by the parties.  I have defined certain words and phrases in some of the claims.  You will be provided with these definitions during the course of the trial. You must use the meanings I give you **[Kove's Position:** when you decide**]** **[AWS's Position:** as you assess**]** whether the patent is infringed and whether it is invalid, you must apply the meaning of the patent claims as I provide that meaning to you in the Final Instructions I will be giving at the end of the case.

---

[4] Source: *10X* Preliminary Instructions, at 9-10; Model Preliminary Patent Instructions (11.1.5 – The Patent Claims), (11.1.7—Infringement: The Meaning of Patent Claims).

[5] AWS's addition of "and unenforceable" is improper and erroneous; there is no authority in the model instructions or otherwise to include reference to inequitable conduct.

[6] If Kove's motion to bifurcate (Dkt. 750) is denied, the jury will be hearing evidence on inequitable conduct and should be provided with instructions on the defense.

## 7. PERSON OF ORDINARY SKILL[7]

In these instructions, I will use the concept of a "person of ordinary skill in the field of the invention." In this case, the field of the invention is: distributed database storage technology.

**[Kove's Position:** The person of ordinary skill in the art of distributed database storage technology in the 1999/2000 timeframe would have had a Bachelor's degree in Computer Science (or equivalent), and one to two years of industry experience in software engineering, networking, or data storage and retrieval. An advanced degree in Computer Science, or equivalent, could be substituted for one to two years of industry experience in software engineering, networking, or data storage and retrieval.**]**

**[AWS's Position:** The person of ordinary skill in the art of distributed database storage technology in the 1999/2000 timeframe would have had a Bachelor's degree in Computer Science (or a similar field), and at least two years of industry experience working with database management software systems. Alternatively, a person of ordinary skill in the art would have had a Master's degree or similar post-graduate studies in computer science or a related field, including database management software systems with fewer years of experience.**]**

**I will give you further instructions about this at the end of the case.**

---

[7] Source: *10X* Preliminary Instructions, at 12; Model Preliminary Patent Instructions (11.1.8 – Person of Ordinary Skill).

## 8.1    DIRECT INFRINGEMENT[8]

Kove contends that AWS infringed various claims of the Kove Patents by making, using, selling, and/or offering for sale the accused S3 and DynamoDB products.

This is called "direct infringement."  To establish direct infringement, Kove must prove that every requirement in the particular claim of Kove's Patent that you are considering is found **[Kove's Position:** in AWS's product.**]  [AWS's Position:** in each accused AWS product.**]**

A requirement of a claim is found in AWS's product if the requirement is in AWS's product exactly as it is in the claim, or if the requirement is in AWS's product in a manner that is equivalent to what is in the claim.  A part of AWS's product is equivalent to a claim requirement if it performs substantially the same function, in substantially the same way, to reach substantially the same result.  In my instructions at the end of the trial, I will explain in more detail how you make this determination.

**[Kove's Position:**  *No further instruction.***]**

**[AWS's Position:** Specifically, Kove contends that AWS's S3 product infringes claims 1 and 2 of the '170 patent and claims 6, 17, 23, 24, and 30 of the '978 patent.

Kove contends that AWS's DynamoDB product infringes claims 1, 2, 6, 8, 12, and 15 of the '170 patent, claims 17, 18, and 24 of the '640 patent, and claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 patent.**]**

---

[8] Source: *10X* Preliminary Instructions, at 14; Model Preliminary Patent Instructions (11.1.10 – Direct Infringement).

**8.2    WILLFUL INFRINGEMENT**

[**Kove's Position**[9]:  Kove contends that AWS infringed Kove's patents willfully. Infringement is willful if Kove proves by a preponderance of the evidence that AWS deliberately or intentionally infringed the patent.  In making this determination, you should consider all of the evidence.]

[**AWS's Position**[10]:  Kove contends that AWS infringed Kove's patents willfully. Infringement is willful if Kove proves by a preponderance of the evidence that AWS knew that it was infringing the patent or acted in reckless disregard of Kove's rights. In making this determination, you should consider all of the evidence, including any evidence regarding whether AWS acted maliciously, deliberately, or in bad faith.]

At the conclusion of the case, I will explain in more detail how you are to decide the issue of willful infringement.

---

[9] Source: *10X* Preliminary Instructions, at 17; Model Patent Instructions (11.1.13 – Willful Infringement), *modified in view of Eko Brands, LLC v. Adrian Rivera Maynez Enters.*, 946 F.3d 1367, 1378-79 (Fed. Cir. 2020) (holding that "'willfulness' requires a jury to find no more than deliberate or intentional infringement," and "[q]uestions of whether an accused patent infringer's conduct was 'egregious behavior' or 'worthy of punishment' are therefore not appropriate for jury consideration"). ).

[10] Source: *10X* Preliminary Instructions, at 17; Model Preliminary Patent Instructions (11.1.13 – Willful Infringement), offered for public comment through July 22, 2020, dated 2020, and published in 2021.

## 9.1    INVALIDITY – ANTICIPATION[11]

[**Kove's Position:** *There is no anticipation defense remaining in this case, so an instruction is not appropriate.*]

[**AWS's Position[12]:** AWS contends that the invention covered by each asserted claim of the Kove Patents is not new because it was "anticipated" by the prior art. "Prior art," in general, includes anything that was publicly known prior to Kove's invention. I will provide you with a more specific definition following the conclusion of the evidence.

To prove that a claim is anticipated by the prior art, AWS must prove by clear and convincing evidence that each and every requirement of the claim is present in a single item of prior art, and that a person with an ordinary level of skill in the field of the invention who looked at the prior art would have been able to make and use the invention disclosed in the claim.]

---

[11] Source: Model Preliminary Patent Instructions (11.1.15 Invalidity – Anticipation).

[12] AWS's position is that AWS's invalidity contentions set forth anticipation grounds against several of the asserted claims. And the Court's summary judgment order (Dkt. 739) didn't affect those grounds.

**9.3     INVALIDITY – OBVIOUSNESS-TYPE DOUBLE PATENTING**

[**Kove's Position:**  *Kove objects to this instruction as improper and erroneous, as obviousness-type double patenting is purely a question for a bench trial, not the jury, as articulated in Kove's Motion to Bifurcate at Dkt. 750.[13]*]

[**AWS's Position**[14]**:**  AWS contends that claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 Patent are invalid under a doctrine known as "obviousness-type double patenting." This doctrine prevents one person from obtaining more than one valid patent for either (a) the same invention or (b) an obvious modification of the same invention. The doctrine exists to prevent an inventor from extending the life of protection of his or her invention by securing a second, later expiring patent for the same invention. To succeed on this defense, AWS must show by clear and convincing evidence that the claim defines an invention that is an obvious variation of, or anticipated by, an invention claimed in another patent or patents owned by Kove.

I will provide you with a more specific definition following the conclusion of the evidence.]

---

[13] Kove emphasizes that it is the Court's role, not the role of the jury, to construe claims and determine the differences. *Eli Lilly & Co. v. Barr Lab'ys, Inc.,* 251 F.3d 955, 968 (Fed. Cir. 2001) ("Generally, an obviousness-type double patenting analysis entails two steps. First, as a matter of law, a court construes the claim in the earlier patent and the claim in the later patent and determines the differences. *Georgia–Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1326, 52 USPQ2d 1590, 1593 (Fed.Cir.1999). Second, the court determines whether the differences in subject matter between the two claims render the claims patentably distinct. Id. at 1327, 52 USPQ2d at 1595.")

[14] Source: *Lone Star Tech. Innovations, LLC v. ASUSTEK Computer Inc.*, No. 6:19-CV-00059-RWS, Dkt. 227 (Final Jury Instructions) (E.D. Tex. May 21, 2021). AWS's position on whether the issue of obviousness-type double patenting should be bifurcated will be set forth in its opposition to Kove's motion to bifurcate (Dkt. 750), to be filed on February 27.

## 10.    UNENFORCEABILITY – INEQUITABLE CONDUCT

[**Kove's Position:**  *This instruction is improper.  Inequitable conduct is a question for the Court, as addressed in Kove's Motion to Bifurcate (Dkt. 750).*]

[**AWS's Position**[15]**:**  AWS contends the Kove patents are unenforceable because of inequitable conduct by Kove before the Patent Office, also known as the PTO. Specifically, AWS contends that Kove engaged in inequitable conduct by withholding information about the paper "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web," by David Karger et al. from the PTO during Kove's prosecution of the Kove Patents. Kove denies the allegations.

When inequitable conduct occurs during the examination of an application, a patent that issues from the application may be unenforceable as a matter of fairness. This means that despite the existence and validity of the patent, the patent holder might not be able to prevent others from using the invention covered by the patent and might not be able to collect damages from those who use the invention covered by the patent.

To establish inequitable conduct, AWS must prove both of the following by clear and convincing evidence:

- AWS must show that Kove deliberately withheld material information from the PTO or deliberately misrepresented a material fact during the examination of the patent; and

- AWS must show that Kove did so with the specific intent to deceive the Patent Examiner into issuing the patent.

---

[15] Source: *J&M Indus., Inc. v. Raven Indus., Inc.*, Case No. 2:16-cv-2723, Dkt. 357 at 34 (Final Jury Instructions) (D. Kan. Apr. 26, 2021). AWS's position on whether the issue of inequitable conduct should be bifurcated will be set forth in its opposition to Kove's motion to bifurcate (Dkt. 750), to be filed on February 27.

I will explain in more detail at the end of the case how you decide these issues.]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | Hon. Matthew F. Kennelly |
| v. | Jury Trial Demanded |
| Amazon Web Services, Inc., | |
| Defendant. | |

**FINAL PRETRIAL ORDER**
**(ATTACHMENT 9B – DISPUTED PROPOSED JURY INSTRUCTIONS)**

**PROPOSED JURY INSTRUCTIONS.** *For a jury trial, proposed jury instructions are to be included both in the written pretrial order but need not be separately submitted on a flash drive or otherwise. The Seventh Circuit Model Jury Instructions, both criminal and civil, are to be used to the extent they apply. If Illinois law provides the applicable standards for a particular claim, the Illinois Pattern Instructions should be used for the substantive elements of the particular cause of action.*

A. *Agreed instructions. The parties are directed to confer and agree upon jury instructions to the extent possible, prior to the submission of the jury instructions to the Court. Agreed proposed instructions should be marked as such and shall be numbered consecutively.*

B. *Disputed instructions. Unagreed proposed instructions shall be numbered, shall identify the proponent of the instruction, and shall include supporting authority. Objections to any proposed instructions must be set forth in writing and shall include supporting authority.*

The parties provide the following unagreed proposed jury instructions, including supporting authority:

## 11.    DAMAGES[16]

Kove contends that it **[Kove's Position:** has been damaged**] [AWS's Position:** has suffered damages**]** as a result of AWS's infringement in the form of a reasonable royalty on AWS's sales of **[Kove's Position:** the infringing product**] [AWS's Position:** S3 and DynamoDB between December 12, 2012 and September 25, 2020**].**  I will explain to you at the end of the case how a reasonable royalty is determined.

Kove must prove its damages by a preponderance of the evidence.

---

[16] Source: *10X* Preliminary Instructions, at 21; Model Preliminary Patent Instructions (11.1.18 – Damages).

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Kove IO, Inc.,

        Plaintiff,

    v.

Amazon Web Services, Inc.,

        Defendant.

Civil Action No. 1:18-cv-08175

Hon. Matthew F. Kennelly

Jury Trial Demanded

## **DISPUTED [PROPOSED] FINAL JURY INSTRUCTIONS**

# TABLE OF CONTENTS

3.2.   THE PATENT CLAIMS ................................................................................................... 1

3.4    "COMPRISING" ........................................................................................................... 2

3.6    INTERPRETATION OF THE PATENT CLAIMS .......................................................... 3

4.1    "PERSON OF ORDINARY SKILL" ............................................................................. 6

5.     DIRECT INFRINGEMENT .......................................................................................... 7

5.3    DETERMINING INFRINGEMENT ............................................................................. 9

6.     WILLFUL INFRINGEMENT ..................................................................................... 11

7.     INVALIDITY – GENERAL ......................................................................................... 13

7.2    INVALIDITY – WRITTEN DESCRIPTION ............................................................... 14

7.4    DEFINITION OF "PRIOR ART" ............................................................................... 16

7.5    ANTICIPATION ........................................................................................................ 18

7.8    OBVIOUSNESS – ADDITIONAL FACTORS INDICATING NONOBVIOUSNESS . 19

7.7    OBVIOUSNESS – COMBINING OF PRIOR ART REFERENCES ............................ 20

7.9    OBVIOUSNESS-TYPE DOUBLE PATENTING ........................................................ 22

7.10   INEQUITABLE CONDUCT ...................................................................................... 24

8.     DAMAGES – GENERAL ........................................................................................... 27

8.1    DATE OF COMMENCEMENT OF DAMAGES ........................................................ 28

8.2    REASONABLE ROYALTY ........................................................................................ 28

### 3.2.    THE PATENT CLAIMS[1]

The claims of a patent are the numbered paragraphs at the end of the patent. The claims describe what the patent owner may prevent others from doing.

Claims are usually divided into parts or steps, called "limitations" or "requirements." For example, a claim that covers the invention of a table may describe the tabletop, four legs and glue that holds the legs and the tabletop together. The tabletop, legs and glue are each a separate limitation or requirement of the claim.

In this case, we are concerned with claims 17, 18, and 24 of the '640 Patent; claims 1, 2, 6, 8, 12, and 15 of the '170 Patent; and claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 Patent. Kove contends that AWS infringed these claims. AWS denies this and contends that these claims are invalid **[Kove's Position[2]:** . *No further language.* **]** **[AWS's Position[3]:** and unenforceable.]

To decide whether AWS infringed the patent, you must compare the claims to the accused product. Similarly, in deciding a challenge to the validity of a patent, you must compare the claims to the asserted prior art. In reaching your determination with respect to infringement and invalidity, you must consider each claim of the patent separately.

---

[1] Source: *10X* Final Instructions, at 10; Model Patent Instructions (11.2.4 – The Patent Claims).

[2] Kove's Position is that no additional language is necessary. AWS's addition of "and unenforceable" is improper and erroneous; there is no authority in the model instructions or otherwise to include reference to inequitable conduct.

[3] AWS's Position is that, if Kove's motion to bifurcate (Dkt. 750) is denied, the jury will be hearing evidence on inequitable conduct and should be provided with instructions on the defense.

### 3.4 "COMPRISING"

When a patent claim uses the term "comprising," it means that the invention includes the listed requirements, but is not limited to those requirements.

[**Kove's Position**[4]: If you find, for example, that the accused products include all of the elements of a particular claim, the fact that the accused products might include additional elements would not avoid infringement of the claim.]

[**AWS's Position**[5]: *No further instruction required, follows Model Patent Instructions.*]

---

[4] Source: *10X* Final Instructions, at 12; Model Patent Instructions (11.2.8 – "Comprising" / "Consisting Of" / "Consisting Essentially Of"); *Ateliers De La Haute-Garonne v. Broetje Automation, USA Inc.*, 1:09-cv-00598-LPS, Dkt. 415 at 25 (3.6 Open Ended or "Comprising" Claims). *See also Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1353 (Fed. Cir. 2005) (Basic patent law holds that a party may not avoid infringement of a patent claim using an open transitional phrase, such as comprising, by adding additional elements); *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 811 (Fed. Cir. 1999) ("The signal 'comprising' implements the general rule that absent some special circumstance or estoppel which excludes the additional factor, infringement is not avoided by the presence of elements or steps in addition to those specifically recited in the claim"); *Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1311 (Fed. Cir. 2001) (Infringement arises when all of the steps of a claimed method are performed, whether or not the infringer also performs additional steps.).

[5] Source: Model Patent Instructions (11.2.8 – "Comprising" / "Consisting Of" / "Consisting Essentially Of").

### 3.6    INTERPRETATION OF THE PATENT CLAIMS[6]

I have provided you with a copy of the Kove Patents. I have defined certain words and phrases in some of the claims. You must use these definitions in making your decision. The words and phrases I have defined are as follows:

| Asserted Claim | Claim Term | Court's Construction |
|---|---|---|
| '978 Patent: Claims 3, 6, 10, 14, 17 | "location information" | "one or more identifiers and their associated locations" |
| '170 Patent: Claims 1, 2, 6, 8, 15<br>'640 Patent: Claims 17, 18 | "location information" | "information pertaining to one or more locations of data and/or the identities of one or more location servers" |
| '978 Patent: Claims 3, 6, 10, 14, 17, 23, 30<br>'170 Patent: Claims 1, 6, 8, 12, 15<br>'640 Patent: Claims 17, 18, 24 | "location server" | "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients" |
| '978 Patent: Claims 3, 6, 10, 14, 17, 23, 24, 30<br>'170 Patent: Claims 1, 2, 6, 8, 12, 15 | "plurality of locations servers" | **[Kove's Position[7]:** "location servers in non-hierarchical structures"**]** |

---

[6] Source: *10X* Final Instructions, at 14; Model Patent Instructions (11.2.9 – Interpretation of the Patent Claims).

[7] AWS asks the Court to further construe the term "non-hierarchical." But the Court expressly declined to do so in its summary judgment order. Dkt. 739, at 19 ("The Court finds that no further construction of the term 'non-hierarchical' is necessary."), 23 ("In conclusion, AWS's claim construction proposal is granted to the extent that 'plurality of location servers' will be construed to include only those arranged in 'non-hierarchical configurations.'"). Kove will abide by the Court's construction, and intends to file a motion in limine to ensure that AWS does as well. AWS' construction would change the requirements of the claim, and it is inappropriate to demand a new claim construction in jury instructions without briefing and opportunity to be heard.

| Asserted Claim | Claim Term | Court's Construction |
|---|---|---|
| '640 Patent: Claims 17, 18, 24 | | **[AWS's Position[8]:** "location servers in non-hierarchical structures, where each location server must be enabled to return the requested location information or know which location server contains the location information of the desired data"**]** |
| '978 Patent: Claim 14<br>'170 Patent: Claim 15<br>'640 Patent: Claims 17, 18, 24 | "client" | "a network-attached component (which may be software or hardware) that initiates update or lookup of identifier/location mappings from a location server with location request messages" |
| '170 Patent: Claim 1 | "based on a hash function used to organize the data location information across the plurality of data location servers . . . based on the hash function applied to the identifier string" | "the portion of the data location information included in a corresponding one of the data location servers is based on a hash function that maps identifier strings to one or more of the data location servers, and each one of the data location servers is configured to determine the at least one of the plurality of data |

---

[8] At summary judgment, the Court held that "Kove has conceded that the mandate that 'each server in the server network' must be enabled to 'return the requested information' or 'know which location server contains the location(s) of the desired data' is disclosed by the 'non-hierarchical configuration' that the claims require." Dkt. 739, at 21. The Court's full finding on "non-hierarchical" must be provided to the jury, particularly as Kove is seeking to ignore this part of the Court's ruling.

| Asserted Claim | Claim Term | Court's Construction |
|---|---|---|
| | | location servers based on the hash function applied to the identifier string" |
| '978 Patent: Claim 6<br>'170 Patent: Claims 2, 12<br>'640 Patent: Claim 24 | "hash table" | "a data structure that stores values in a table, where values are stored and retrieved by applying a hash function to an input and using the function result as an index into the table." |
| '170 Patent: Claim 6 | "data pertaining to the entity" | "data pertaining to a person or thing (real, digital, or abstract) distinct from that data" |

## 4.1    "PERSON OF ORDINARY SKILL"[9]

Some issues in patent cases are determined by considering a "person of ordinary skill in the field of the invention," a term that I will use later in these instructions.  In this case, the field of the invention is: distributed database technology.

[**Kove's Position:**  The person of ordinary skill in the art of distributed database storage technology in the 1999/2000 timeframe would have had a Bachelor's degree in Computer Science (or equivalent), and one to two years of industry experience in software engineering, networking, or data storage and retrieval. An advanced degree in Computer Science, or equivalent, could be substituted for one to two years of industry experience in software engineering, networking, or data storage and retrieval.]

[**AWS's Position:** The person of ordinary skill in the art of distributed database storage technology in the 1999/2000 timeframe would have had a Bachelor's degree in Computer Science (or a similar field), and at least two years of industry experience working with database management software systems. Alternatively, a person of ordinary skill in the art would have had a Master's degree or similar post-graduate studies in computer science or a related field, including database management software systems with fewer years of experience.]

---

[9] Source: *10X* Final Instructions, at 27; Model Patent Instructions (11.2.2 – Person of Ordinary Skill).

## 5. DIRECT INFRINGEMENT[10]

**[Kove's Position[11]:** Kove contends that AWS infringed claims 17, 18, and 24 of the '640 Patent; claims 1, 2, 6, 8, 12, and 15 of the '170 Patent; and claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 Patent.**] [AWS's Position[12]:** Kove contends that AWS's S3 infringes claims 1 and 2 of the '170 patent and claims 6, 17, 23, 24, and 30 of the '978 patent and that AWS's DynamoDB infringes claims 1, 2, 6, 8, 12, and 15 of the '170 patent, claims 17, 18, and 24 of the '640 patent, and claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 patent.**]** To succeed on these contentions, Kove must prove **[Kove's Position[13]:** *[blank]* **] [AWS's Position:** , separately for each product,**]** both of the following propositions by a preponderance of the evidence:

1.      Every requirement in the claim that you are considering is found in **[Kove's Position[14]:** AWS's product.**] [AWS's Position:** the product you are considering.**]**

2.      AWS made, used, sold, or offered for sale that product in or into the United States.

---

[10] Source: *10X* Final Instructions, at 17; Model Patent Instructions (11.1.10 – Direct Infringement), (11.2.11.1 – Infringement – Definition).

[11] Kove's language follows the Model Patent Instructions. AWS's proposed additional language is unnecessary and confusing; the verdict form will specify the claims for direct infringement for each product.

[12] AWS's position relating to each of its alternative proposals is that Kove's language doesn't specify which asserted claims are directed to which accused product and will confuse the jury as a result. The specificity AWS proposes follows the rule that each accused product is to be analyzed separately against the specific claims it's asserted to have infringed.

[13] Kove's language follows the Model Patent Instructions; AWS's language does not.

[14] Model Patent Instruction 11.1.10 refers to "Defendant's product" throughout, not "the product."

A requirement of a claim is found in **[Kove's Position:** AWS's product**] [AWS's Position:** the product**]** if the requirement is in the product exactly as it is in the claim or if the requirement is in the product in a manner that is equivalent to what is in the claim.

If all of the requirements of the claim are in **[Kove's Position:** AWS's product**] [AWS's Position:** the product**]** exactly as they are in the claim, that is called "literal infringement."

If all of the requirements of the claim are in **[Kove's Position:** AWS's product**] [AWS's Position:** the product**]**, but one or more of them is equivalent to what is in the claim, that is called "infringement by equivalence." I will define the term "equivalent" in a moment.

### 5.3    DETERMINING INFRINGEMENT[15]

[**Kove's Position:** As I stated in a previous instruction, infringement occurs if each requirement of a claim is found in AWS's product.  To determine whether AWS infringed Kove's Patents, you must compare AWS's products against each one of these claims.[16]

You have heard evidence about both Kove's products and AWS's accused products. However, in deciding the issue of infringement you may not compare AWS's accused products to Kove's products. Rather, you must compare the AWS's accused products to the claims of the Kove Patents when making your decision regarding infringement.[17]]

[**AWS's Position:** As I stated in a previous instruction, infringement must be analyzed by comparing each claim to the specific product that claim is asserted against. For example, to determine whether S3 directly infringes claim 1 of the '170 patent, you must compare each requirement of that claim to S3.]

You must decide whether there is infringement separately for each patent claim [**Kove's Position**[18]: *[blank]* ] [**AWS's Position:** and separately for each of S3 and DynamoDB].  There is one exception to this rule. If you decide that an independent claim is not infringed, then there cannot be literal infringement [**Kove's Position**[19]: *[blank]* ]  [**AWS's Position:** or infringement by equivalents] of any dependent claim that refers directly or indirectly to that independent claim.

---

[15]  Source: *10X* Final Instructions, at 20; Model Patent Instructions (11.2.11.4 – Determining Infringement).

[16] Source: Model Patent Instructions (11.2.11.1 Infringement – Definition).

[17] Source: Federal Circuit Bar Association (3.2 – Direct Infringement).

[18] The additional language suggested by AWS is not part of the model instructions.

[19] The additional language suggested by AWS is not part of the model instructions.

**[Kove's Position:** Whether or not AWS knew its product infringed or even knew of the Kove Patents does not matter in determining direct infringement.[20]**]** **[AWS's Position[21]:** *[No further instruction required, follows Model Patent Instructions.*]]

---

[20] Source: Federal Circuit Bar Association (3.2 – Direct Infringement).

[21] Model Patent Instructions (11.2.11.1 Infringement – Definition); (11.2.11.4 Determining Infringement).

## 6.     WILLFUL INFRINGEMENT

**[Kove's Position[22]]  [AWS's Position[23]]**

In this case, Kove contends that AWS willfully infringed the Kove Patents.

**[Kove's Position:** If you have decided that AWS has infringed, you must go on and address the additional issue of whether or not this infringement was willful.  Willfulness requires you to determine whether Kove proved that it is more likely than not that AWS knew of Kove's patent and that the infringement by AWS was intentional.  Infringement is willful if AWS knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.  You may find willful infringement if you find that AWS was aware of a high probability of infringement and took deliberate steps to shield itself from facts as to that infringement. **]**

**[AWS's Position:** You are to consider the issue of willful infringement only if you have found that AWS infringed Kove's Patents. Not all infringement is willful.

---

[22] The Federal Circuit Bar Association Model Patent Jury Instructions (3.10 – Willful Infringement), *modified in view of Arctic Cat Inc. v. Bombardier Recreational Prod. Inc*., 876 F.3d 1350, 1371 (Fed. Cir. 2017) (upholding jury instruction that defendant was willful if it "knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent").  AWS's proposal includes language not in the model instructions and not accurate under Federal Circuit authority.

This also includes the standard for willful blindness as articulated in *Glob.-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 769, 131 S. Ct. 2060, 2070–71, 179 L. Ed. 2d 1167 (2011) ("While the Courts of Appeals articulate the doctrine of willful blindness in slightly different ways, all appear to agree on two basic requirements: (1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact. We think these requirements give willful blindness an appropriately limited scope . . . .").

[23] Source: Model Patent Instructions (11.2.14 – Willful Infringement), The Federal Circuit Bar Association Model Patent Jury Instructions (3.10 – Willful Infringement). Those instructions were each issued after the cases Kove cites.

Infringement is willful if Kove proved by a preponderance of the evidence that AWS knew that it was infringing the Kove Patents or acted in reckless disregard of Kove's rights. In making this determination, you should consider all of the evidence, including any evidence regarding whether AWS acted maliciously, deliberately, or in bad faith.**]**

You may not determine that the infringement was willful just because AWS was aware of the patent. Instead, you must also find that AWS deliberately infringed the patent.

To determine whether AWS acted willfully, you must consider **[Kove's Position:** all facts surrounding the infringement and assess AWS knowledge at the time of the challenged conduct.**]**

**[AWS's Position:** what AWS knew at the time that it performed the acts that are accused of infringement.**]**

> **[Kove's Position:** Facts that may be considered include, but are not limited to:

- Whether AWS acted consistently with the standards of behavior for its industry;

- Whether AWS copied a product of Kove that it knew is covered by the patent;

- Whether AWS reasonably believed it did not infringe or that the patent was invalid;

- Whether AWS made a good-faith effort to avoid infringing the patent, for example, whether AWS attempted to design around the patent; and

- Whether AWS tried to cover up its infringement.**]**

> **[AWS's Position:** *No further instruction required, follows Model Patent Instructions.***]**

## 7.    INVALIDITY – GENERAL[24]

AWS has challenged the validity of claims 17, 18, and 24 of the '640 Patent; claims 1, 2, 6, 8, 12, and 15 of the '170 Patent; and claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 Patent based on anticipation, obviousness, lack of enablement, **[Kove's Position**: and/or**]** lack of written description **[AWS's Position: ,** and double patenting] grounds.**]**

Each claim in Kove's Patents is presumed to be valid.  For that reason, AWS has the burden of proving invalidity by clear and convincing evidence, which I defined earlier.

You must evaluate and determine separately the validity of each claim of the patents.

---

[24] Source: *10X* Final Instructions, at 26; Model Patent Instructions (11.3.1 – Validity – General).

## 7.2    INVALIDITY – WRITTEN DESCRIPTION

The law requires that the specification section of the patent contains an adequate written description of the inventions set forth in the patent claims.

AWS contends that claims 17, 18, and 24 of the '640 Patent; claims 1, 2, 6, 8, 12, and 15 of the '170 Patent; and claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 Patent are invalid because their specifications do not contain an adequate written description.

[**Kove's Position**[25]:  To succeed on this contention as to the particular patent claim you are considering, AWS must prove, by clear and convincing evidence, that a person having ordinary skill in the field of the invention who read the patent specification as of the effective filing date, would not have recognized that the inventor invented the full scope of the invention as defined by the patent claim.

To satisfy the written description requirement, it is unnecessary to spell out every detail of the invention, use the exact words found in the claim, or provide specific examples. But a mere wish or plan for obtaining the claimed invention is not an adequate written description.

In deciding whether AWS has established that the specification did not provide an adequate written description, you may consider factors such as:

1. the nature and scope of the patent claims;

2. the complexity, predictability, and maturity of the technology at issue;

---

[25] Source: *10X* Final Instructions, at 28; *10X* Final Instructions, at 28; Model Patent Instructions (11.1.17 – Invalidity – Written Description / Claiming Requirements).  Kove's proposal uses the same instruction as *10X*, which was modified in view of *Biogen*, issued after the 7th Circuit Model Patent Instructions were drafted.  *See Biogen Int'l GMBH v. Mylan Pharms. Inc.,* 18 F.4th 1333, 1341–42 (Fed. Cir. 2021) ("This court's precedents dictate that the § 112 written-description "requirement is satisfied only if the inventor 'convey[s] with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention,' and demonstrate[s] that by disclosure in the specification of the patent.")

3. the existing knowledge in the relevant field; and

4. the scope and content of the prior art.**]**

**[AWS's Position**[26]**:** To succeed on this contention, AWS must prove that a person having ordinary skill in the field of the invention would not recognize that the specification describes all the requirements of the claim. The specification does not have to use the exact words found in the claim.

If AWS proves this as to a particular claim by clear and convincing evidence, then you should find that claim invalid.**]**

---

[26] Source: *10X* Final Instructions, at 28; Model Patent Instructions (11.3.2.1 – Specification Requirements – Written Description).

### 7.4 DEFINITION OF "PRIOR ART"[27]

In addressing some of AWS's invalidity defenses, you will have to consider what is disclosed in the "prior art." Prior art is the legal term used to describe what others had done in the field before the invention was made. Prior art is the general body of knowledge in the public domain, such as articles, products, or other patents, before the invention was made. The prior art need not have been available to every member of the public, but it must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

The parties agree that the following references are prior art:

- U.S. Patent 6,212,521 ("Minami")

- U.S. Patent 5,542,087 ("Neimat")

- U.S. Patent No. 6,430,618 ("Karger")

- OracleNamesAdminGuide ("ONAG")

- OracleUnleashed

- "Locating Objects in Wide Area Systems" by M. van Steen et al. ("Steen")

- U.S. Patent No. 6,185,601 ("Wolff")

- U.S. Patent 6,473,781 ("Skagerwall")

- U.S. Patent 6,230,183 ("Yocum")

- U.S. Patent 6,122,664 ("Boukobza")

- "Load Management in Distributed Video Servers" by Venkatasubramanian and Ramanathan ("Venkatasubramanian")

---

[27] Source: Model Patent Instructions (11.3.3(A) – Section 102 and 103 Defenses – Definition of "Prior Art" [Pre-AIA]), (11.3.4(A) – Section 102 Defenses – Prior Art – Definitions [Pre-AIA]).

**[Kove's Position[28]**:  Before you may consider any disputed reference to be prior art, AWS must prove by clear and convincing evidence that the reference was:

- known or used by someone else in the United States before the date of invention, unless the knowledge or use was private or secret;

- in public use, or on sale, or offered for sale, in the United States more than one year before the patent application was filed; or

- described in a publication before the date of the invention or more than one year before the patent application was filed.**]**

**[AWS's Position:**  *As the Court's summary judgment opinion decided whether the only references AWS is aware of that were disputed qualify as prior art, presenting this type of additional instruction is unnecessary and will be confusing for the jury.***]**

I will now provide you with two additional definitions for this instruction.

***"Date of invention."***  The parties agree that the earliest "date of invention" relevant to the prior art analysis for the claims in this case is October 28, 1999.

***"Publication."***  To qualify as a "publication," the reference must be distributed to, or reasonably accessible by, persons interested in the field of the invention, and it must be complete enough to enable a person with ordinary skill in the field to use the invention without undue experimentation.

---

[28] AWS bears the burden of providing evidentiary support for any prior art references.

## 7.5    ANTICIPATION[29]

[**Kove's Position**[30]: *There is no anticipation defense remaining in this case, so an instruction is not appropriate.*]

[**AWS's Position:**[31] A patent claim is invalid if the invention it describes is not new. If there is "prior art" that already shows the same invention covered by a patent claim, then the claim is invalid because it is "anticipated" by the prior art.

AWS contends that claims 17, 18, and 24 of the '640 Patent; claims 1, 2, 6, 8, 12, and 15 of the '170 Patent; and claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 Patent are invalid because they are anticipated by prior art.

To succeed on this contention as to the particular claim you are considering, AWS must prove two things by clear and convincing evidence:

1. All of the requirements of the claim you are considering are expressly stated or inherent in a single item of prior art, and they must be arranged or combined in the same way as recited in the claim.

2. A person of ordinary skill in the field of the invention, looking at the single prior art item, would be able to make and use the invention disclosed in the claim.

---

[29] Source: Model Patent Instructions (11.3.5 – Section 102 Defenses – Elements [Pre-AIA and Post-AIA]).

[30] LPR 3.1(b) limits AWS to "four (4) prior art grounds per claim," including prior art combinations.  AWS invalidity positions violate LRP 3.1(b) and it is not clear that AWS preserved anticipation by any single reference.

[31] AWS's invalidity contentions set forth anticipation grounds against certain of the asserted claims. And those positions weren't affected by the Court's Order on summary judgment. Dkt. 739. Further, AWS hasn't violated LPR 3.1(b). And Kove didn't oppose AWS's motion for leave to amend its contentions based on LPR 3.1(b). *See* Dkt. 615; Dkt. 617 (granting leave).

If you find that AWS proves each of these by clear and convincing evidence as to a particular patent claim, then you must find for AWS on that patent claim.

### 7.8 OBVIOUSNESS – ADDITIONAL FACTORS INDICATING NONOBVIOUSNESS[32]

As I stated in the previous instruction, in deciding obviousness you should consider whether any of the following are true, which if so may indicate the invention was not obvious.

1. Has the invention achieved commercial success? If so, is that success based on the invention itself, rather than on advertising, promotion, sales tactics, or features of the product other than those found in the claimed invention?

2. Has the invention satisfied a long-felt need for a solution to the problem facing the inventors at the time the invention was made?

3. Did others try, but fail, to solve the problem solved by the claimed invention?

4. Did others copy the invention?

5. **[Kove's Position[33]:** Did the invention achieve unexpected superior results over the prior art?**] [AWS's Position[34]:** Question unnecessary.**]**

6. Did others in the field praise the invention or express surprise at the making of the invention?

7. **[Kove's Position:** Did the inventor, in making the invention, proceed contrary to accepted wisdom, or the guidance from the prior art?**] [AWS's Position:** Question unnecessary**]**

---

[32] Source: Model Patent Instructions (11.3.9 – Obviousness – Additional Factors Indicating Nonobviousness).

[33] Evidence relevant to secondary considerations may be introduced at trial, e.g., on cross-examination.

[34] The Model Patent Instructions note "[t]he court should state only those questions that are appropriate – i.e., for which evidence was introduced at trial." Kove didn't identify these secondary considerations in response to AWS's discovery requests and so these questions shouldn't be presented.

Not all of these factors may be present. No single factor is more or less important than the others.

### 7.7 OBVIOUSNESS – COMBINING OF PRIOR ART REFERENCES

The fact that each of the elements of the claim may be found in prior art is not enough, by itself, to prove obviousness. **[Kove's Position[35]:** Most, if not all, inventions rely on building blocks of prior art.] **[AWS's Position[36]:** [*No further instruction required, follows Model Patent Instructions.*]

In determining whether AWS has proved obviousness **[Kove's Position:** by clear and convincing evidence] **[AWS's Position:** *No insertion is required, follows Model Patent Instructions and the burden on invalidity is contained within other instructions.*], you may combine multiple items of prior art only if a person who has ordinary skill in the field would have been

---

[35] Source: Model Patent Instructions (11.3.10 – Obviousness – Combining of Prior Art References; The Federal Circuit Bar Association ("FCBA") Model Patent Jury Instructions (4.3c - Obviousness). The FCBA Model Instructions incorporate the Federal Circuit's interpretation of *KSR v Teleflex* (550 US 398 (2007) and were issued more recently than the 7th Circuit Model Patent Instructions. *See InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1351 (Fed. Cir. 2014) ("A reason for combining disparate prior art references is a critical component of an obviousness analysis; 'this analysis should be made explicit.' *KSR*, 550 U.S. at 418, 127 S.Ct. 1727 (arguments need to provide an 'articulated reasoning with some rational underpinning' to make the asserted combinations) (quoting *In re Kahn*, 441 F.3d at 988.). *See KSR*, 550 U.S. at 418–19, 127 S.Ct. 1727). ('[I]t can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does . . . because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.") *See also BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation*, 28 F.4th 1247, 1271 (Fed. Cir. 2022) ("The law has long recognized separate patentability and inventorship for advances that, as is routine, draw on lessons learned from earlier work of others. *Cf. KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418–19, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007) ('[I]nventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.'). Such advances are not properly deemed inherent in or elements of the earlier work.").

[36] Source: Model Patent Instructions (11.3.10 – Obviousness – Combining of Prior Art References). The Seventh Circuit Model Patent Jury Instructions post-date the authority Kove provides. Specifically, they were offered for public comment through July 22, 2020 and published in 2021.

motivated to combine them **[Kove's Position:** in the same way as in Kove's patent[37] **] [AWS's Position:** *No insertion is required, follows Model Patent Instructions and the burden on invalidity is contained within other instructions.***]** when trying to solve the problem that is addressed by the claimed invention and would have had a reasonable expectation of success in doing so. In deciding this, you may consider, among other things, any of the following factors:

1. What the prior art suggests about combining;

2. The knowledge possessed by persons who have ordinary skill in the field of the invention; and

3. The effects of market pressures and design needs that existed at the time, and the number of identified and predictable solutions for those demands.

---

[37] 2020 FCBA Model Jury Instruction 4.3c: "In considering whether a claimed invention is obvious, you should consider whether, at the time of [the claimed invention] [the patent's filing date], there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does;" 2024 AIPLA Instruction 7.2: "Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the teachings in the way the claimed invention does."

## 7.9     OBVIOUSNESS-TYPE DOUBLE PATENTING

**[Kove's Position:**  *Kove objects to this instruction as improper and erroneous, as obviousness-type double patenting is purely a question for a bench trial, not the jury, as articulated in Kove's Motion to Bifurcate at Dkt. 750.*[38]**]**

**[AWS's Position**[39]**:**  AWS contends that claims 3, 6, 10, 14, 17, 23, 24, and 30 of the '978 Patent are invalid under a doctrine known as "obviousness-type double patenting." This doctrine prevents one person from obtaining more than one valid patent for either (a) the same invention or (b) an obvious modification of the same invention. The doctrine exists to prevent an inventor from extending the life of protection of his or her invention by securing a second, later expiring patent for the same invention. To succeed on this defense, AWS must show by clear and convincing evidence that the claim defines an invention that is an obvious variation of, or anticipated by, an invention claimed in another patent or patents owned by Kove.

There are two steps involved in assessing whether this doctrine applies. First, you should compare the claims of the earlier patent or patents with the claim of the later patent (taking into account the claim construction definitions I have provided to you) and determine whether there are any differences between them. In making this comparison, you may compare one or more

---

[38] Kove emphasizes that it is the Court's role, not the role of the jury, to construe claims and determine the differences. *Eli Lilly & Co. v. Barr Lab'ys, Inc.,* 251 F.3d 955, 968 (Fed. Cir. 2001) ("Generally, an obviousness-type double patenting analysis entails two steps. First, as a matter of law, a court construes the claim in the earlier patent and the claim in the later patent and determines the differences. *Georgia–Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1326, 52 USPQ2d 1590, 1593 (Fed.Cir.1999). Second, the court determines whether the differences in subject matter between the two claims render the claims patentably distinct. Id. at 1327, 52 USPQ2d at 1595.")

[39] Source: *Lone Star Tech. Innovations, LLC v. ASUSTEK Computer Inc.*, No. 6:19-CV-00059-RWS, Dkt. 227 (Final Jury Instructions) (E.D. Tex. May 21, 2021). AWS's position on whether the issue of obviousness-type double patenting should be bifurcated will be set forth in its opposition to Kove's motion (Dkt. 750), to be filed on February 27.

claims of earlier Kove patents with the later claims asserted in this case by Kove that AWS contends are invalid. Kove patents that were issued earlier than the asserted patent in this case, or later-issued, but earlier-expiring Kove patents can qualify as a double patenting reference. If you find, by clear and convincing evidence, that there are no differences between the claims of the earlier patent or patents and the asserted claim of the later patent, then the asserted claim is invalid under the doctrine of double patenting.

Second, if you find that differences exist between the claims of the earlier patent or patents and the asserted claim of the later patent, you must then determine whether any such differences render the claimed inventions patentably distinct. To answer this second question, you should consider whether the claim or claims of the reference patent renders the claim asserted in this case obvious.

Under the doctrine of double patenting, the claims in the earlier (filed or expiring) patent or patents serve as the "prior art." This analysis differs from general obviousness because you need not consider any "secondary considerations" of non-obviousness. Any differences between the reference claims and the asserted claim at issue should not be considered in isolation for purposes of determining whether the claimed inventions are patentably distinct; rather the claims must be considered and compared to one another as a whole. If you find, by clear and convincing evidence, that any differences between the claims of the earlier patent or patents and the asserted claim of the later patent would have been obvious or not patentably distinct to a person of ordinary skill in the art, then the asserted claim is invalid under the doctrine of double patenting.

## 7.10    INEQUITABLE CONDUCT[40]

**[Kove's Position:**  *Kove objects to this instruction as improper and erroneous, as inequitable conduct is a question for a bench trial, not the jury, as articulated in Kove's Motion to Bifurcate at Dkt. 750.  AWS's proposed instruction also misstates the law regarding specific intent to deceive and is inconsistent with* <u>Therasense, Inc. v. Becton, Dickinson & Co., *649 F.3d 1276, 1290 (Fed. Cir. 2011)*</u>*.  Further, the jury instruction cited by AWS as purported authority for this improper instruction did not itself cite any authority.[41]*]

**[AWS's Position:** AWS contends Kove's patents are unenforceable because of inequitable conduct by one or more of the inventors before the Patent Office. Specifically, AWS contends that Kove engaged in inequitable conduct by withholding information about the paper "Consistent Hashing and Random Trees: Distributed Caching Protocols for Relieving Hot Spots on the World Wide Web," by David Karger et al. from the Patent Office during Kove's prosecution of the patents. Kove denies the allegations.

Every applicant for a patent has a duty of candor and good faith in its dealings with the Patent Office. When an applicant deliberately fails to supply material information to the Patent Office or deliberately makes a material misrepresentation to the Patent Office, and does so with the intent to deceive the Patent Office into allowing patent claims, the applicant commits what is

---

[40] Source: *J&M Indus., Inc. v. Raven Indus., Inc.*, Case No. 2:16-cv-2723, Dkt. 357 at 34 (Final Jury Instructions) (D. Kan. Apr. 26, 2021). AWS's position on whether the issue of inequitable conduct should be bifurcated will be set forth in its opposition to Kove's motion (Dkt. 750), to be filed on February 27. And Kove's position that the suggested jury instruction doesn't follow *Therasense, Inc. v. Becton, Dickinson & Co.,* 649 F.3d 1276, 1287 (Fed. Cir. 2011) is incorrect as the instruction, consistent with the *Therasense* decision, states: "AWS must show that Kove did so with the specific intent to deceive the Patent Examiner into issuing the patent."

[41] *Therasense, Inc. v. Becton, Dickinson & Co.,* 649 F.3d 1276, 1287 (Fed. Cir. 2011) ("To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO.")

known as "inequitable conduct." When inequitable conduct occurs during the examination of an application, a patent that issues from the application may be unenforceable as a matter of fairness. This means that despite the existence and validity of the patent, the patent holder might not be able to prevent others from using the invention covered by the patent and might not be able to collect damages from those who use the invention covered by the patent.

To establish inequitable conduct, AWS must prove both of the following essential elements by clear and convincing evidence:

**First**, AWS must show that Kove deliberately withheld material information from the Patent Office or deliberately misrepresented a material fact during the examination of the patent; and

**Second**, AWS must show that Kove did so with the specific intent to deceive the Patent Examiner into issuing the patent.

I will now explain to you what "material" and "intent to deceive" mean.

Material. Information that was withheld from the Patent Office is material if the Patent Office would not have allowed the claim had it been aware of the withheld information. A misrepresentation is material when it convinces the Patent Office to allow a claim that it would not have allowed if the statement had not been made.

Intent to deceive. If you determine that material information was not disclosed to the Patent Office or that Kove made a material misrepresentation to the Patent Office, you must next determine whether it did so as a result of a specific intent by Kove to deceive the Patent Office. AWS must establish that the failure to disclose material information or that the making of a material misrepresentation was done with an intent to deceive the Patent Examiner. Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive.

Intent also may be shown through indirect evidence or, in other words, it may be inferred from conduct. However, an intent to deceive may be inferred only where it is the single most reasonable inference that can be drawn from the evidence. If the failure to disclose material information or the misrepresentation occurred through negligence, oversight, carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct.**]**

## 8.    DAMAGES – GENERAL[42]

If you find that AWS infringed any valid claim of the Kove Patents, you must then determine the amount of damages to award to Kove.  If you do not find that AWS infringed any valid claim of the Kove Patents, you should not consider the question of damages.

I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.

If you find that AWS infringed any valid claim of the patents, you are to award Kove damages adequate to compensate Kove for that infringement **[Kove's Position[43]:** , which must be no less than a reasonable royalty for the use that AWS made of the invention.**]  [AWS's Position:** *No insertion is required, follows Model Patent Instructions.***]** The damages you award are intended to compensate Kove, not to punish AWS.  Kove must prove damages by a preponderance of the evidence.

---

[42] Source: *10X* Final Instructions, at 29; Model Patent Instructions (11.4.1 – Damages – General).

[43] 35 U.S.C. § 284 provides: Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, **but in no event less than a reasonable royalty** for the use made of the invention by the infringer, together with interest and costs as fixed by the court (emphasis added).  *See also* FCBA Model Instruction 6.1 ("Note, however, that [patent holder] is entitled to recover no less than a reasonable royalty for each infringing [sale]") and AIPLA 10.2 ("A reasonable royalty is the minimum amount of damages that a patent owner can receive for an infringement.").

## 8.1 DATE OF COMMENCEMENT OF DAMAGES[44]

In determining the amount of damages, you must determine when the damages began. In this case, damages, if any, began on December 12, 2018 for the '640, '170, and '978 Patents.

**[Kove's Position[45]:** *No further language is appropriate.*] **[AWS's Position[46]:** And damages end on the date the last of the Kove Patents expired, September 25, 2020.]

## 8.2 REASONABLE ROYALTY

**[Kove's Position[47]]  [AWS's Position[48]]**

Kove seeks to recover a reasonable royalty.

A royalty is a payment made to the owner of a patent by another person or entity so that it can make, use, sell, offer for sale, or import the patented invention. A "reasonable royalty" is the amount Kove and AWS would have agreed upon as a royalty **[Kove's Position**: due to Kove] **[AWS's Position:** *No insertion is required, follows Model Patent Instructions*] at the time AWS's infringement began.

In determining a reasonable royalty, you should assume that Kove would have been willing to allow AWS to make, use, sell, offer for sale, or import the patented invention and that AWS would have been willing to pay Kove to do so. You should take into account what Kove's and

---

[44] Source: *10X* Final Instructions, at 30.

[45] Kove's proposed language is from *10X* and is taken verbatim from the FCBA instructions. This instruction should not include language concerning the end date of damages.

[46] AWS's language adds the last date for damages so that the jury has a complete understanding of the damages period.

[47] Source: *10X* Final Instructions, at 34-35; Model Patent Instructions (11.4.5 – Reasonable Royalty); FCBA instruction (5.8 Reasonable Royalty - Relevant Factors and Comment 2 thereto); *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.1970); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25, 1333-34 (Fed. Cir. 2009) as well as additional sources cited within particular portions of this instruction.

[48] Source: 10X Final Instructions, at 34-35; Model Patent Instructions (11.4.5 – Reasonable Royalty).

AWS's expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations. In taking into account such expectations, you should assume that both Kove and AWS would have believed that Kove's patent was valid and infringed. **[Kove's Position:** You can also assume that both Kove and AWS would have understood the nature and extent of AWS's use of the patents after the date of first infringement, as well as the benefits AWS obtained from that use.[49] ] **[AWS's Position:** *No insertion is required, follows Model Patent Instructions*]. You should also assume that AWS would have been willing to pay, and Kove would have been willing to accept, the reasonable royalty they negotiated.

This is not an exact science. The evidence may support more than one reliable method for estimating a reasonable royalty. Your role is to determine what reasonable royalty Kove and AWS would have agreed upon if they had negotiated in this manner, not just what either Kove or AWS would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence:

1. Royalties that others paid to Kove for the patented invention, proving or tending to prove an established royalty;

2. Royalties that AWS paid to others for comparable patents;

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4. Whether Kove had a policy of licensing or not licensing the patents;

---

[49] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333-34 (Fed. Cir. 2009) (citing and quoting *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698, 53 S.Ct. 736, 77 L.Ed. 1449 (1933)).

5. Whether Kove and AWS are competitors;

6. Whether use of the patented invention helps to make sales of other products or services;

7. The duration of the patent and the term of the license;

8. Whether the patented invention is commercially successful, as well as its profitability and popularity;

9. The advantages of using the patented invention over products not covered by the patent;

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by Kove; and the benefits to those that have used the invention;

11. The extent of AWS's use of the patented invention and the value of that use to AWS;

12. The portion of the profit or selling price that are customary in AWS's or comparable businesses for use of similar or analogous patented inventions;

13. The portion of the profit on sales that is due to the patented invention, as opposed to other factors, such as unpatented elements or processes, features, or improvements developed by AWS;

14. Expert opinions regarding what would be a reasonable royalty.

No one of these factors is dispositive, and you can and should consider the evidence that has been presented to you on any of these factors. You may also consider any other factors that in your mind would have increased or decreased the royalty AWS would have been willing to pay and Kove would have been willing to accept.

Kove is required to prove the amount of a reasonable royalty to a reasonable probability and may not recover amounts that are speculative. **[Kove's Position[50]:** However, mathematical certainty is not required, and if the reason Kove has difficulty proving the amount of a reasonable royalty is that AWS did not maintain adequate records, then you should resolve any doubts as to the amount of a reasonable royalty in Kove's favor.] **[AWS's Position[51]:** However, mathematical certainty is not required.**]**

---

[50] Kove's proposed language is taken verbatim from the 7th Circuit Model Patent Instructions, and the authority for such language is included in those instructions: *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014), *overruled by Williamson v. Citrix Online, LLC,* 792 F.3d 1339 (Fed. Cir. 2015). Kove explains in its Motion for Sanctions the details around the relevance of this instruction. In addition to this instruction, the Motion for Sanctions requests an instruction relating to the destruction of evidence.

[51] AWS has included the language in the Model Patent Instruction. The remainder of the language Kove has included is bracketed in the model and doesn't apply here since Kove was provided with ample financial information to assess its proposed damages. To the extent Kove's motion for sanctions is denied, it provides additional support for not including this optional language.