**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KOVE IO, INC.,

     *Plaintiff,*

    v.

AMAZON WEB SERVICES, INC.,

     *Defendant.*

Case No. 1:18-cv-8175

**FILED UNDER SEAL**

### AWS'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE OPINIONS OF DR. GOODRICH AND MR. BERGMAN

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman *(pro hac vice)*
*jeffrey.saltman@fischllp.com*
Lisa N. Phillips *(pro hac vice)*
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW Suite 400
Washington, D.C. 20015
202.362.3500

Ken K. Fung (*pro hac vice*)
*ken.fung@fischllp.com*
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
650.362.8200

*Attorneys for Amazon Web Services, Inc.*

## TABLE OF CONTENTS

I.    Dr. Goodrich's Opinions Continue to Warrant Exclusion. ............................................ 1

    A.    Kove's Undisclosed ███████ Theory. ......................................................... 1

    B.    Kove's Undisclosed "Transferring" and "Hash Table" DOE Theories, and Prosecution-History-Barred DOE Theory. ..................................................... 3

    C.    Dr. Goodrich's Opinions Contradicting Claim Construction. ............................. 5

II.    This Court Should Either Deny Kove's Motion on ███ or Permit AWS to Address it in Forthcoming Briefing. .............................................................................. 6

III.    Mr. Bergman's Opinions Also Warrant Exclusion. ....................................................... 7

    A.    Mr. Bergman Incorrectly Apportions Non-infringing Components. ................... 7

    B.    Mr. Bergman's Bargaining Split Opinion Isn't Tied to the Facts. ..................... 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Baxter Int'l v. CareFusion Corp.*,
    No. 15-cv-9986, 2022 WL 952276 (N.D. Ill. Mar. 30, 2022) ................................................... 8

*Baxter Int'l, Inc. v. CareFusion Corp.*,
    No. 15-cv-9986, 2020 WL 10486005 (N.D. Ill. Aug. 12, 2020) ............................................. 2

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
    807 F.3d 1283 (Fed. Cir. 2015) ............................................................................................... 7

*Daedalus Blue, LLC v. Microstrategy Inc.*,
    2023 WL 5598456 (E.D. Va. Aug. 29, 2023) ........................................................................ 12

*Droplets, Inc. v. Nordstrom*,
    No. 12-cv-3733, 2022 WL 2670163 (N.D. Cal. Jan. 12, 2022) ............................................. 12

*Droplets, Inc. v. Yahoo! Inc.*,
    No. 12-cv-3733, 2021 WL 9038355 (N.D. Cal. Aug. 9, 2021) .............................................. 11

*EMC Corp. v. Pure Storage, Inc.*,
    154 F. Supp. 3d 81 (D. Del. 2016) ......................................................................................... 6

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) ............................................................................................... 8

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009) ............................................................................................... 6

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
    879 F.3d 1332 (Fed. Cir. 2018) ............................................................................................. 10

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002) ................................................................................................................. 4

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018) ............................................................................................... 8

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
    370 F.3d 1131 (Fed. Cir. 2004) ............................................................................................... 5

*Longhorn HD LLC v. Netscout Sys., Inc.*,
    No. 2:20-cv-349, 2022 WL 903934 (E.D. Tex. Mar. 27, 2022) ............................................ 12

*Omega Pats., LLC v. CalAmp Corp.*,
    13 F.4th 1361 (Fed. Cir. 2021) .............................................................................................. 10

*Open Text S.A. v. Box, Inc.*,
    No. 13-cv-4910, 2015 WL 349197 (N.D. Cal. Jan. 23, 2015) .................................................. 10

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
    35 F.4th 1367 (Fed. Cir. 2022) ............................................................................................... 12

*VirnetX, Inc. v. Cisco Sys. Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) ................................................................................................. 9

## I. DR. GOODRICH'S OPINIONS CONTINUE TO WARRANT EXCLUSION.

### A. KOVE'S UNDISCLOSED ███████ THEORY.

All asserted claims require "location server structures that have a 'non-hierarchical' configuration."[1] And Dr. Goodrich repeatedly opines in his report that the required configuration is defined by ███████ For instance, Dr. Goodrich opined that, if this Court construed the claims to require a non-hierarchical configuration, S3 would still satisfy this requirement because "███████

███████[2] Similarly, Dr. Goodrich opined that ███████

███████[3]

Kove's response confirms that it never disclosed this ███████ theory for how the accused products allegedly meet the requirements for a non-hierarchical configuration of location servers. Kove fails to cite or quote anything in its contentions disclosing this theory, because it's not there. Indeed, Kove's sole argument is that its contentions disclosed a "███ theory, which points to evidence regarding the ███████"[4] In making that argument, Kove asserts that "[t]he claim limitation at issue here is the word 'identifier,'" without citing any support.[5] And that's incorrect—AWS's motion on the ███████ theory never even mentioned the identifier requirement, since the relevant paragraphs of Dr. Goodrich's report don't either. Rather, AWS

---

[1] Dkt. 745 (AWS motion) at 1 (quoting Dkt. 739 at 19); *see also*, *e.g.*, Dkt. 739 at 19 (construing "'plurality of location servers' to require 'location servers in non-hierarchical structures'").

[2] Dkt. 700-53 (Ex. D to Goodrich Rep.) at ¶ 121 (addressing '978 claim 6); *see id.* at ¶ 79 (similar).

[3] Dkt. 700-54 (Ex. E to Goodrich Rep.) at ¶ 80 (addressing '978 claim 3). Both '978 claims 3 and 6 depend from '978 claim 1, and describe "[a] system having a plurality of location servers …." *E.g.*, *id.*; *see also* Dkt. 745 at 2, n.8–9 (citing paragraphs of Goodrich report addressing each asserted claim for S3 and DDB).

[4] Dkt. 762 at 1 (Subheading A).

[5] *Id.*

moved to exclude Dr. Goodrich's various opinions that any group of two or more alleged location servers ███████████ satisfy the requirements for location servers "arranged in a non-hierarchical, cluster topology."[6] So, the paragraphs of Dr. Goodrich's report that AWS's motion discussed address either AWS's proposed "non-hierarchical" construction or the relevant corresponding claim language (e.g., "system having a plurality of location servers").[7] Those paragraphs don't concern the "identifier," and Kove's failure to substantively respond confirms that it never disclosed its theory that ███████████ satisfies the non-hierarchical location servers requirement.[8] Kove's response doesn't address any of the 31 paragraphs of Dr. Goodrich's report discussed in AWS's motion, or address his opinions on the ███████ theory therein.

Indeed, Kove's attempt to explain how the ███████ theory relates to the alleged identifiers comes too late, as AWS can't investigate or rebut Kove's theory through discovery. Kove never provided such an explanation in its infringement contentions. And although Kove relies on Dr. Goodrich's report as providing notice, that's not the applicable test. This Court has explained that "[e]xpert infringement reports may not introduce new theories not previously set forth in infringement contentions."[9] Kove likewise relies on the wrong standard in arguing that its contentions identified "the ███████ … by pointing to AWS's own documents and testimony."[10] That contravenes this Court's ruling that this alone isn't sufficient disclosure. At summary

---

[6] *E.g.*, Dkt. 745 at 2 (quoting Dkt. 700-53 at ¶ 79).

[7] *E.g.*, Dkt. 700-53 at ¶ 121 & Dkt. 700-54 at ¶ 116 (addressing "non-hierarchical" construction); Dkt. 700-53 at ¶ 79 & Dkt. 700-54 at ¶ 80 (addressing '978 claim 1 preamble for asserted '978 claims 3 and 6, respectively); Dkt. 745 at 2–3 (quoting/citing those paragraphs, plus other relevant paragraphs in report).

[8] *Compare* Dkt. 745 at 2–3 *with* Dkt. 762 at 1–2 (citing dozens of paragraphs in Goodrich Rep. Ex. D and Ex. E, none of which overlap with paragraphs AWS discussed in motion).

[9] Dkt. 745 at 1 (quoting *Baxter Int'l, Inc. v. CareFusion Corp.*, No. 15-cv-9986, 2020 WL 10486005, at *1 (N.D. Ill. Aug. 12, 2020) and collecting other relevant cases).

[10] Dkt. 762 at 3. Kove similarly argues that AWS didn't show prejudice for this reason or because it's "AWS's own product." *Id.* Accepting such arguments would gut the local patent rules' requirements.

judgment, this Court found that "having access to the DDB source code is insufficient to put Kove on notice of how AWS planned to use that source code to establish noninfringement."[11] Here, too, the documents that Kove relies on fail to provide notice of Kove's ███████ theory, and Kove shouldn't now be permitted to advance it through its expert.

### B. KOVE'S UNDISCLOSED "TRANSFERRING" AND "HASH TABLE" DOE THEORIES, AND PROSECUTION-HISTORY-BARRED DOE THEORY.

Kove's response fails to show that Kove disclosed the required "explanation of each function, way, and result that is equivalent and why any differences are not substantial" in its contentions for the "transferring" and "hash table" DOE theories in Dr. Goodrich's report.[12]

Specifically, '978 claim 17 requires "transferring a portion of the identifiers and associated locations to a second data location server,"[13] and was allowed over the reexamination prior art based on this limitation.[14] Dr. Goodrich opined that S3 satisfies this limitation under the DOE with a process that includes ███████████ of an ███████ to another ███.[15] But Kove's infringement contentions failed to disclose any theory relying on ███████████ to satisfy '978 claim 17's "transferring" limitation.[16] Kove argues that its "infringement contentions disclosed the allegedly missing step," but then only cites portions of its contentions that describe S3's alleged use of a ███████████ without providing notice of any theory based on ███████████[17] Although Kove's response implies that use of ███████████ is the

---

[11] Dkt. 739 at 29.

[12] LPR 3.1(a)(2); *see also* Dkt. 745 at 1 (citing additional authorities).

[13] Dkt. 687-3 ('978 patent) at 27:40–41.

[14] Ex. 13 at 6 (distinguishing data in new different location from transferred data and withdrawing rejections based on Oracle prior art "[s]ince [it] fails to teach the 'transferring step'").

[15] Dkt. 745 at 5 (citing and quoting Dkt. 700-53 at ¶¶ 169–70).

[16] *Id*. (citing Dkt. 745-4 (Ex. 4) at 35).

[17] Dkt. 762 at 5.

same thing as ██████████████ it doesn't clearly state that or explain why, much less point to any such timely disclosure of it. And Kove fails to provide any other disclosure that might justify Dr. Goodrich's opinion on Kove's undisclosed DOE theory for the claimed "transferring."[18]

Similarly, for the "hash table," Kove's contentions disclosed DOE theories accusing specific associations of components in DDB or S3 as being equivalent to the "hash table" limitations.[19] But those associations didn't include any "index" component in DDB or S3. To the extent Dr. Goodrich opined that an association of components that includes an undefined "index" component is equivalent to the claimed "hash table," that's a new theory.[20]

And further, Kove's arguments on Dr. Goodrich's prosecution-history-barred opinion that DDB satisfies '978 claim 6's "indexed by a hash table" limitation run contrary to the governing precedent and the DOE's purpose. As noted, Kove argued that Lumelsky didn't "teach an indexing function" that maps "each" identifier to "one" index designation.[21] But the Supreme Court has explained that the DOE exists to allow a patentee to capture "insubstantial alterations that were not captured in drafting the original patent claim."[22] And "a prior application describing the precise element at issue undercuts that," since the patentee "cannot [have] lacked the words to describe the subject matter in question."[23] Here, Kove argues that its "remark regarding Lumelsky is

---

[18] Kove argues that AWS didn't show prejudice, since Dr. Grama addressed "ownership." That's unsurprising, as his report was served after Dr. Goodrich's. And whether or not AWS addresses it, Kove's expert can't raise a new theory. *E.g.*, Dkt. 739 at 29; *see also* Dkt. 745 at 5 (previously addressing prejudice).

[19] For '978 claim 6: "Specifically, with respect to 'hash table,' the mapping in the ███ of the ███████████ and their associated ██████████ performs substantially the same function…." Dkt. 745-5 (Ex. 5) at 25; *see also* Dkt. 745-2 at 28, 41; Dkt. 745-3 at 36 (similar, for other claims at issue).

[20] Kove argues that "indexing" is "simply how hash tables work." Even if that were true, it doesn't permit Dr. Goodrich to opine that DDB/S3 components including an "index" are a substantial equivalent.

[21] Dkt. 745 at 12. Kove correctly interpreted this argument as being directed to '978 claim 6.

[22] *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002).

[23] *Id*. at 34.

irrelevant ... because it was about a totally different claim."[24] But consistent with the DOE's purpose, the Federal Circuit has rejected such arguments as insufficient to defeat prosecution history estoppel.[25] Thus, this Court should reject Kove's arguments and exclude Dr. Goodrich's opinion that DDB satisfies '978 claim 6's "indexed by a hash table" limitation.

### C. DR. GOODRICH'S OPINIONS CONTRADICTING CLAIM CONSTRUCTION.

Kove's argument that Dr. Goodrich's opinions are "fully" consistent with this Court's claim construction rulings is also incorrect. As this Court found, Kove "clearly and unambiguously disavowed hierarchical location server configurations" for all asserted claims.[26] In doing so, this Court explained a key difference between a non-hierarchical configuration of location servers (what the claims require) and a hierarchical configuration (what Kove disavowed). "Non-hierarchical" mandates that "each server in the server network" be enabled to "return the requested information" or "know which location server contains the location(s) of the desired data," while servers in hierarchical configuration "do not necessarily store information for finding the location server having the desired location information" to respond to any request.[27]

Yet, Dr. Goodrich's report repeatedly opines that groups of components in S3 or DDB satisfy the asserted claims' requirement for a non-hierarchical configuration of location servers, without regard to whether these groups of alleged location servers have the knowledge and capabilities necessary to comport with what the Court (and Kove) defined as a non-hierarchical

---

[24] Dkt. 762 at 11.

[25] *E.g.*, *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1151 (Fed. Cir. 2004) (an applicant's statements surrendering scope being claimed as an equivalent are "properly ... applied to all claims, whether or not the claims had themselves been amended"); *accord Festo*, 535 U.S. at 733–34.

[26] Dkt. 739 at 19; *accord id*. at 18 (rejecting Kove arguments specific to '978 claims).

[27] *Id*. at 21–22 (quoting Dkt. 687 at ¶¶ 33–34 (collecting Kove statements)); *see also id*. at 15, 19 (similar).

configuration.[28] Kove hasn't retracted these opinions, and its response suggests that Dr. Goodrich will offer them at trial. That would deprive this Court's recent claim construction ruling requiring a non-hierarchical network/structure of location servers of any effect. And it would contravene the Federal Circuit's admonition that "[n]o party may contradict the court's construction to a jury."[29]

Thus, contrary to what Kove asserts, AWS isn't "effectively ask[ing] the Court to revisit" summary judgment.[30] Under Federal Circuit precedent, as well as *Daubert* and Rule 702, this Court should exclude Dr. Goodrich's opinions that are contrary to this Court's ruling on what constitutes the required "non-hierarchical" configuration of location servers.[31] As noted, these include Dr. Goodrich's opinions that ███████████████ in S3 "constitutes 'a plurality of location servers,'" as well as his similar opinions regarding DDB's ████████████.[32]

## II.   THIS COURT SHOULD EITHER DENY KOVE'S MOTION ON ███ OR PERMIT AWS TO ADDRESS IT IN FORTHCOMING BRIEFING.

Kove's response included a section entitled: "███ remain in the case as to the 978 patent."[33] This section doesn't respond to AWS's motion. Rather, it appears to be a Kove motion seeking leave to present evidence that S3's ████████████ qualify as location servers for the purposes of certain '978 claims.[34] To the extent the Court considers it, Kove's request should be denied. As Kove acknowledges, it stated when opposing summary judgment that "[a]s for ███,

---

[28] *See* Dkt. 745 at 7–9.

[29] *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).

[30] Dkt. 762 at 7.

[31] *E.g.*, *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016) ("[E]xpert testimony inconsistent with the Court's claim construction … should be excluded under the *Daubert* standard.").

[32] Dkt. 745 at 8–9 (quoting Dkt. 700-53 at ¶ 79 and citing other relevant exemplary paragraphs).

[33] Dkt. 762 at 9.

[34] *See id.* (not addressing any request to exclude Dr. Goodrich opinions, and only referencing AWS's quotation of this Court's summary judgment order on p.23, in connection with Mr. Bergman's analysis).

Kove does not allege that they are location servers in claims that require non-hierarchical struc-tures."[35] According to Kove, its "point was that ▮▮▮▮ were not location servers in the claims that it understood (and argued) required non-hierarchical structures —namely, claims other than ['978] claims 17, 23, 24, and 30."[36] But this Court found that all asserted claims (including those four) require non-hierarchical structure. As this Court stated: "[d]uring the reexamination proceedings, Kove clearly and unambiguously limited the asserted claims to location server structures that have a 'non-hierarchical' configuration."[37] Kove offers no reason why this Court should now allow Kove to present a new theory that ▮▮▮ are location servers in those '978 claims. Accordingly, this Court should deny Kove's motion on ▮▮▮ or, in the alternative, direct the parties to address the issue in their forthcoming motions in limine. Given Kove's raising of this issue in its response and the space limitations here, AWS wouldn't otherwise have a fair opportunity to address this issue.

## III.    MR. BERGMAN'S OPINIONS ALSO WARRANT EXCLUSION.

### A.    MR. BERGMAN INCORRECTLY APPORTIONS NON-INFRINGING COMPONENTS.

A patent isn't a lottery ticket. The law limits a patentee's damages to what they contributed to advancing the useful arts. AWS moved to exclude Mr. Bergman's opinion because it seeks to take more than what Kove contributed—i.e., he didn't apportion. Kove's response foregoes de-fending his apportionment approach, and instead defends Mr. Bergman's reliance on Kove's tech-nical expert, Dr. Goodrich.[38] AWS agrees that Mr. Bergman can rely on Dr. Goodrich's opinions on what constitutes a non-infringing alternative.[39] But Mr. Bergman's incorporation of Dr.

---

[35] Dkt. 762 at 9.

[36] *Id.* Consistent with Kove's statements, this Court noted in its decision that "Kove admits that ▮▮▮ do not employ a 'non-hierarchical' configuration." Dkt. 739 at 25, n.4.

[37] Dkt. 739 at 19; *accord id.* at 15 (similar), 18 (addressing those '978 claims).

[38] *E.g.*, Dkt. 762 at 14.

[39] *See generally Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1303 (Fed. Cir. 2015).

Goodrich's opinions doesn't shield Mr. Bergman's use of those opinions from scrutiny.

Indeed, Kove doesn't explain how the hashing claims themselves provide ▮▮▮▮▮ in incremental benefits to S3. The law requires that damages "must reflect the value attributable to the infringing features of the product, and no more," especially in complex, multi-component systems like S3 and DDB.[40] But Mr. Bergman fails to exclude features unrelated to the claims. Instead, he calculates damages by removing all value associated with a component that allegedly practices the hashing claims.[41] And Kove acknowledges that the ▮▮▮▮▮▮▮▮▮ ▮▮▮▮.[42] For example, the ▮▮▮▮▮ primarily maps requests to ▮▮▮▮ a feature unrelated to the accused hashing.[43] That such mapping exists in other parts of S3, as Kove argues, is inapposite. Mr. Bergman's calculations don't show what portion of the ▮▮▮▮▮ total value arises from this and other unaccused functionalities and instead includes those unaccused functionalities in his calculation of the hashing claims' incremental value. As noted, Mr. Bergman testified that he didn't know that the ▮▮▮▮▮ had such non-infringing features.[44] Thus, he couldn't have properly apportioned every non-infringing feature. As this Court held in *Baxter International v. CareFusion Corp.*, identifying the value of the smallest infringing component isn't enough; the expert must apportion to the product's individual features.[45] Here, Mr. Bergman didn't specifically delineate hashing's value compared to other features that Kove admits the ▮▮▮▮▮ has.[46]

---

[40] *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

[41] AWS didn't address Dr. Goodrich's "skip graph" alternative for hashing because Mr. Bergman's analysis "does not model the financial impact associated with skip graphs." Dkt. 762-12 at ¶ 278, n.722.

[42] *See* Dkt. 762 at 16–18.

[43] Dkt. 700-59 at ¶ 427 ("[T]he primary benefit of the ▮▮▮▮▮ is unrelated to any accused hashing.").

[44] Dkt. 745-12 at 190:18–20, 191:2–192:5.

[45] No. 15-cv-9986, 2022 WL 952276, at *4 (N.D. Ill. Mar. 30, 2022) (citing *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310–11 (Fed. Cir. 2018)).

[46] *See* Dkt. 762 at 16–18.

Similarly, Mr. Bergman also fails to properly apportion the value of S3 features attributable to the scaling claims. Mr. Bergman testified that S3's ▮▮▮ can't scale without the patents.[47] But that's incorrect, as AWS's motion showed.[48] ▮▮▮▮▮▮▮▮ involves more than the claims' single feature—transferring location data in response to a predetermined performance limit. S3's ability to scale primarily comes through ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[49] Kove might dispute the precise allocation of value between those features and the benefits allegedly provided by the transfer claims. But it's undisputed that those features contribute to scaling. Thus, equating the entire value of S3's ability to scale to the ▮▮▮▮▮▮▮▮▮▮▮ fails to apportion the infringing from the non-infringing, since ▮▮▮ ▮▮▮▮▮▮▮▮▮ are unrelated to the patent and impact scalability. Mr. Bergman's calculations don't address that, and instead attribute all cost savings or profit associated with scalability to the transferring claims' functionality. In other words, he assumed that Kove's patents cover "scaling" broadly and not transferring location data in a specific situation. That approach isn't reliable since it doesn't apportion "the patented features and the vast number of non-patented features contained in the accused products,"[50] and this Court shouldn't admit that opinion.

Kove's response also doesn't show that Mr. Bergman has properly apportioned the claims' value for DDB. And it doesn't address that Mr. Bergman used the same damages analysis for both the hashing and scalability claims.[51] Specifically, Kove doesn't respond to the fact that ▮▮▮ of

---

[47] *See* Dkt. 745-12 at 208:16–209:5 ("[T]he ▮▮▮▮▮▮▮ cannot scale.").

[48] *See* Dkt. 745 at 22–23 (citing, *inter alia*, Dkt. 700-59 at ¶ 466, n.609 (quoting S3 documentation: "[t]ypically we replicate ▮▮▮▮▮▮" and that's written onto '▮▮▮ simultaneously")).

[49] *See id.*

[50] *VirnetX, Inc. v. Cisco Sys. Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014).

[51] Dkt. 762-12 at ¶ 386.

requests in DDB don't involve ███████ since they're served before ever hitting the ██.[52]

DDB's ███ are the technology accused of using the scaling claims' functionality. If ███ of requests never reach the ███ that means that at most ██ of requests could implicate the scaling claims. Yet Mr. Bergman doesn't address that calculation, and Kove attempts to explain it away as a difference in degree, rather than what it is—a failure to apportion.[53] But whether Kove agrees with the valuation is irrelevant to whether Mr. Bergman apportioned the value of the features, which the law requires him to do. Instead, he opined that the scaling claims are responsible for all damages in DDB despite implicating a maximum of ██ of the requests in the system, and, in doing so, he fails to heed the Federal Circuit's instruction to "adequately and reliably apportion[] between the improved and conventional features of the accused [product]."[54] And because Mr. Bergman hasn't properly apportioned, the Court shouldn't allow his opinions to be presented to the jury.

## B.  MR. BERGMAN'S BARGAINING SPLIT OPINION ISN'T TIED TO THE FACTS.

The law also limits damages by requiring experts to specify the evidence driving their conclusion. Indeed, the law precludes an expert from using a "black box" approach, since the "jury cannot see how the pieces fit together or how the data drives the conclusion."[55] Kove argues that Mr. Bergman's opinion "is based on a hypothetical negotiation, so by necessity it must be estimated."[56] But while the Federal Circuit allows for approximation in the conclusion, it requires precision in the methodology.[57] And Mr. Bergman's black box method doesn't meet that standard.

---

[52] Dkt. 700-59 at ¶ 480.

[53] *See* Dkt. 762 at 21 ("AWS claims that Kove's invention is responsible for 'no more than ██ of the claimed technical benefits.").

[54] *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1377 (Fed. Cir. 2021).

[55] *Open Text S.A. v. Box, Inc.*, No. 13-cv-4910, 2015 WL 349197, at *6 (N.D. Cal. Jan. 23, 2015) (excluding expert opinion relying on qualitative factors and experience for final bargaining split).

[56] Dkt. 762 at 22.

[57] *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1351 (Fed. Cir. 2018)

Throughout his report, Mr. Bergman concludes that the parties would consider certain un-quantifiable factors as part of their bargaining split determination.[58] But beyond identifying that the parties would consider those factors, he doesn't explain how, or provide any methodology underlying his ultimate opinion. Instead, he summarily concludes, based on his own evaluation of various qualitative factors, that AWS would agree to give up ███████████████ of its profits attributable to the technology—a difference of over ████████ under his theory.[59] But he doesn't explain why ███ is the appropriate floor for his bargaining range. Further, he doesn't explain why any rational business would give up ██████ of profit in an arms-length negotiation. And contrary to what Kove argues, none of the testimony Mr. Bergman cited shows that Amazon would've done so here. For example, in paragraph 613, Mr. Bergman purports to paraphrase tes-timony from AWS's Christoph Bartenstein. But nothing in that testimony or the other testimony Mr. Bergman cited shows that AWS or Kove would agree to a ██████████ split, and it's unclear how he used testimony like that to reach his conclusions.[60]

Moreover, Kove doesn't distinguish Mr. Bergman's opinion here from his excluded opin-ion in *Droplets v. Nordstrom*. Instead, it states that the court permitted his testimony in the con-solidated *Droplets v. Yahoo* case. But his opinion was materially different in those two cases. In *Yahoo*, the court denied a motion to exclude his proffered 30/70 profit split opinion because he tied it to the fact that the asserted patents were responsible for 5% to 33% of Yahoo's revenues.[61]

---

(It's "not enough" to "simply assert that a particular royalty rate is reasonable in light of the evidence without tying the proposed rate to that evidence.").

[58] *See, e.g.*, Dkt. 762-12 at ¶ 300 ("[I]t is my opinion that the parties to the hypothetical negotiation would consider this impact [an increase in latency] as part of the determination of the appropriate bargaining split, as described in Georgia-Pacific Factor 15."); *id.* at ¶¶ 303, 339 420, 424, 427 (similar for other factors).

[59] *See id.* at ¶ 617.

[60] *Compare, e.g.*, *id*. at ¶ 613 *with* Dkt. 762-18 at 235:11–236:5.

[61] *Droplets, Inc. v. Yahoo! Inc.*, No. 12-cv-3733, 2021 WL 9038355, at *7 (N.D. Cal. Aug. 9, 2021).

In *Nordstrom*, there was no support for his opinion that Droplets would be entitled to at least 50%
of the profit. While he briefly discussed convoyed sales, his report didn't show "how the convoyed
sales factored into the value of the accused features."[62] As the court put it: "Bergman does not
explain why the factors he identifies 'necessarily lead[ ] to the conclusion that the parties would
have agreed to a ▇▇▇ split, and why a ▇▇▇▇▇▇▇▇ or any other split would not have been
appropriate.'"[63] That's precisely what Mr. Bergman did here, and his opinion should be excluded
as it was in *Nordstrom*.

And Kove's other examples of courts permitting Mr. Bergman's testimony are also distin-
guishable. In *Pavo Solutions v. Kingston Technology*, Mr. Bergman based his 18.75% profit split
on a license the parties agreed was comparable.[64] Mr. Bergman doesn't rely on any such agreement
here.[65] Similarly, the court in *Longhorn HD v. Netscout Systems* allowed Mr. Bergman to testify
because he tied his profit-split opinions to "historical trends in each party's licensing factors (in-
cluding historical profit-split percentages)."[66] So, none of Kove's cited cases teach that this Court
should admit an expert opinion that presents a bargaining split in a vacuum.[67] These cases all teach
the opposite—Mr. Bergman's opinions were admissible because he specifically and quantifiably
tied them to past licenses. Here, this Court should exclude his opinion, as the *Nordstrom* court did.

---

[62] *Droplets, Inc. v. Nordstrom*, No. 12-cv-3733, 2022 WL 2670163, at *3 (N.D. Cal. Jan. 12, 2022).

[63] *Id*.

[64] 35 F.4th 1367, 1379 (Fed. Cir. 2022).

[65] Indeed, Kove has moved to exclude references to comparable licenses. *See* Dkt. 748 Section II.A.

[66] *Longhorn HD LLC v. Netscout Sys., Inc.*, No. 2:20-cv-349, 2022 WL 903934, at *3 (E.D. Tex. Mar. 27,
2022); *cf.* Dkt. 762-22 (*Almondnet v. Amazon* transcript) at 58, 60, 61 (denying motion to exclude Mr.
Bergman's testimony where he derived his bargaining split from relevant prior agreements).

[67] The *Daedalus* opinion Kove cites was vacated the day after it was issued. No. 2:20-cv-551, Dkt. 310
(E.D. Va. July 25, 2023). And while that court later adopted the recommendation to deny the *Daubert*
motion, it didn't review the profit split de novo, since defendant didn't object to it. *Daedalus Blue, LLC v.
Microstrategy Inc.*, 2023 WL 5598456, at *3 (E.D. Va. Aug. 29, 2023).

Dated: March 1, 2024

Respectfully Submitted,

*/s/ R. William Sigler*

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (*pro hac vice*)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW Suite 400
Washington, DC 20015
202.362.3500

Ken K. Fung (*pro hac vice*)
*ken.fung@fischllp.com*
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
650.362.8200

*Attorneys for Amazon Web Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 1, 2024, I electronically filed the foregoing under seal with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, and also served a copy on all counsel of record via email.

*/s/ R. William Sigler*
R. William Sigler
