IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kove IO, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Amazon Web Services, Inc., <br><br> Defendant. | Civil Action No. 1:18-cv-08175 <br><br> Hon. Matthew F. Kennelly <br><br> Jury Trial Demanded |

**KOVE IO, INC.'S REPLY IN SUPPORT OF ITS
MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE AND
<u>MOTION TO EXCLUDE CERTAIN EXPERT OPINIONS</u>**

# TABLE OF CONTENTS

**Page**

I. SANCTIONS ARE NECESSARY TO CURE KOVE'S PREJUDICE ............................1

II. INADMISSIBLE DAMAGES OPINIONS ..................................................................4

III. INADMISSIBLE NON-INFRINGEMENT OPINIONS..................................................7

    A. AWS's Untimely Non-Infringement Arguments Should Be Excluded. ...............7

    B. The Federal Circuit Bars Grama's "Practicing The Prior Art" Defense...............9

    C. Grama's Immaterial "Hierarchy" Opinions Should Be Excluded. .....................10

    D. Grama Should Not Be Permitted To Provide New Claim Constructions...........11

IV. INADMISSIBLE INVALIDITY OPINIONS ................................................................12

**TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*,
  764 F.3d 1366 (Fed. Cir. 2014)..................................................................................................12

*Adasa Inc. v. Avery Dennison Corp.*,
  55 F.4th 900 (Fed. Cir. 2022) .................................................................................................5, 6

*BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*,
  2018 WL 1616725 (N.D. Ill. Apr. 4, 2018) ................................................................................3

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
  967 F.3d 1353 (Fed. Cir. 2020)...................................................................................................4

*CareDx, Inc. v. Natera, Inc.*
  2021 WL 1840646 (D. Del. May 7, 2021)................................................................................12

*CytoLogix Corp. v. Ventana Medical Sys., Inc.*,
  424 F.3d 1168 (Fed. Cir. 2005).................................................................................................11

*Ecolab, Inc. v. Paraclipse, Inc.*,
  285 F.3d 1362 (Fed. Cir. 2002)...................................................................................................9

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010)...................................................................................................5

*Intelligent Verification Sys., LLC v. Microsoft Corp.*,
  2015 WL 1518099 (E.D. Va. Mar. 31, 2015).............................................................................5

*Jones v. Bremen High Sch. Dist. 228*,
  2010 WL 2106640 (N.D. Ill. May 25, 2010) .............................................................................1

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012).......................................................................................................5

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
  387 F. Supp. 2d 794 (N.D. Ill. 2005) .........................................................................................6

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008).................................................................................................11

*Oliver v. Amazon.com*,
  2023 WL 3322382 (E.D. Wis. May 8, 2023).............................................................................2

*Snider v. Danfoss*,
    2017 WL 2973464 (N.D. Ill. July 12, 2017)..........................................................................2

*Sprint Commc'ns Co. v. Comcast IP Holdings, LLC*,
    2015 WL 456154 (D. Del. Jan. 30, 2015)............................................................................4

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
    279 F.3d 1357 (Fed. Cir. 2002)..........................................................................................10

**State Cases**

*In re Google Play Store Antitrust Litig.*,
    3:21-md-2981-JD, Dkt. 469 (N.D. Cal. March 28, 2023) .....................................................3

**Rules**

Fed. R. Civ. P 37(e)(1)......................................................................................................................3

Kove respectfully submits this reply brief in support of its Motion (Dkt. 748).

I.     **SANCTIONS ARE NECESSARY TO CURE KOVE'S PREJUDICE**

AWS fundamentally misapprehends its preservation obligations. Its duty to preserve started when it received Kove's complaint; not when Kove identified spreadsheets, nor when the Court ordered their production. In arguing otherwise, AWS ignores critical facts set forth in Kove's motion, thus conceding them. These facts include:

- AWS knew the accused products' performance was relevant from Kove's complaint.
- AWS has always known which metrics it considers most useful to evaluating performance.
- AWS never turned off ███████████ for any metrics and consequently ███████████ of performance metrics.
- AWS did not inform the Court of its autodeletion policy, and continued to delete metrics even after the Court ordered their production.
- AWS never investigated the cost or process for retaining just *relevant* metrics. The cost for retaining *every* metric produced in this case would be less than a penny per month.
- AWS continued searching for metrics until June 2023, when it confirmed its search was complete and an AWS deponent confirmed the data was not backed up.
- In July 2023, AWS told Kove that a spoliation motion was not ripe until AWS served its expert reports in August 2023.
- Because of AWS's spoliation, Kove's expert had to project years' worth of data. If AWS had preserved these metrics, these projections would not have been necessary.
- AWS's expert criticizes Kove's expert for projecting data.
- Kove moved for relief three weeks later. Dkt. 679.

These uncontested facts are dispositive. Instead of addressing them, AWS changes the subject.

AWS claims it did not know what metrics to preserve. This attempt to foist the burden on the other party and claim ignorance has been repeatedly rejected by the courts. *E.g.*, *Jones v. Bremen High Sch. Dist. 228*, 2010 WL 2106640, at *5 (N.D. Ill. May 25, 2010) ("potentially relevant" ESI "must be preserved"). AWS must preserve potentially relevant information. Regardless, even after AWS was notified by Kove and the Court, it continued to delete. Motion

1

("Mot.") at 2-3 (describing notice), Ex. U (citing evidence of notice). Rather than explain, AWS points to the large volume of irrelevant metrics it tracks to suggest compliance would have been too difficult. This was the same argument Amazon.com lost in *Oliver v. Amazon.com*, 2023 WL 3322382 (E.D. Wis. May 8, 2023). AWS simply ignores the case.

Shifting focus, AWS suggests that because it produced some discovery, the spoliated metrics do not matter. But evidence is not interchangeable. The at-issue metrics are not peripheral: it is data AWS considered "most useful" in evaluating the accused products' performance. Mot., Ex. U at Rows 1-4, 6-9 (explaining significance). AWS produced ▮▮▮▮▮▮ of metrics, hence their outsized importance.[1] Ignoring that the destroyed data would cost a penny per month to store, AWS cites an exorbitant cost to retain "the *operational* data for *all* the available metrics." But that data is not even at issue. Mot., Ex. Q at 437:22-438:5 ("Q: You haven't provided a cost estimate . . . to preserve only a limited subset of metrics that might be relevant[?] A: No."). AWS even asserts it complied with the Court's Order because it "produced all *available* metrics." This is circular – the destroyed data was not, of course, "available" because it was destroyed.

AWS then blames Kove, claiming Kove waited too long to seek relief. Yet, AWS does not acknowledge that it only completed its search for metrics in June 2023, and thus only then foreclosed the chance that the metrics were backed up. Mot., Ex. Y at 2. AWS also ignores that, in July 2023, it took the position that Kove's motion was not *ripe* until AWS served its expert reports in August 2023. *Compare id.*, Ex. Z *with* Dkt. 679 (filed September 8, 2023).

AWS's "no harm, no foul" argument ignores that its expert criticizes Kove for lacking performance data and criticizes Kove's projections of that data. That is harm, along with the fact

---

[1] This is ▮▮ the data in the case AWS cites, *Snider v. Danfoss*, 2017 WL 2973464 (N.D. Ill. July 12, 2017).

that the jury could see large damages supported only by extrapolations, weakening the analysis.[2]

The curative measures requested are necessary to cure Kove's prejudice. AWS claims that "extreme culpable conduct" is required. Resp. at 10. AWS *is* culpable. But even so, culpability is irrelevant to determining curative measures under Rule 37(e)(1). The only consideration is prejudice. *E.g.*, Fed. R. Civ. P. 37(e)(1) ("upon finding prejudice"); *id.* advisory committee's notes to 2015 amendment ("employ measures 'no greater than necessary to cure the prejudice.'").[3] The Model Patent Instructions make clear that the jury may consider a defendant's failure to maintain adequate records.[4] AWS's state of mind also is relevant to willful infringement, and consciousness of guilt can be inferred by the destruction of evidence.[5]

AWS conduct is troubling, and a remedy is necessary to cure prejudice and preserve the integrity of the judicial process. The destroyed information is indisputably important, underpinning the ▮▮▮▮▮ in profits AWS made off Kove's invention – indeed, if unimportant, why fight so hard to attack Kove at trial about the missing evidence? AWS would have this Court rule that it, and future litigants, may secretly maintain deletion policies for crucial information with no consequences. It acts like compliance would have been unduly difficult, but in reality, all it had to do was responsibly investigate its auto-delete policies, and, at minimum, notify Kove and the Court so that appropriate preservation could take place.[6] Instead, it chose to hide it until caught.

---

[2] AWS characterizes prejudice as occurring only when a party is "substantially denie[d]" the ability to support or defend a claim. Resp. at 2. Neither of its cited cases support this.

[3] AWS suggests the Court considers "the level of culpability" and cites an overruled report and recommendation, which predates the 2015 Amendment to Rule 37(e)(1). Resp. at 9.

[4] "[I]f the reason Plaintiff has difficulty proving the amount of a reasonable royalty is that Defendant did not maintain adequate records, then you should resolve any doubts as to the amount of a reasonable royalty in Plaintiff's favor." Seventh Circuit Model Patent Instructions (11.4.5 Reasonable Royalty).

[5] *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 2018 WL 1616725, at *1 (N.D. Ill. Apr. 4, 2018) (act of spoliation suggests "spoliator believes its case is weak or unfounded").

[6] *In re Google Play Store Antitrust Litig.*, 3:21-md-2981-JD, Dkt. 469 (N.D. Cal. March

One of the two parties will be prejudiced here. The status quo is Kove alone is prejudiced – AWS can maintain its attack on the missing data and the jury is free to conclude Kove's damages are weakly supported. AWS complains it would be prejudiced by Kove's requested trial relief – namely, precluding AWS from attacking Kove for the missing information and informing the jury why it is missing. What Kove requests is a fair fight. And if one party or the other is to be prejudiced, it should be the party who defaulted on its obligations.

## II. INADMISSIBLE DAMAGES OPINIONS

**Non-Comparable Licenses.** The Federal Circuit's black letter rule is that a license is not admissible unless it is both economically and technically comparable. Because Bennis ignores economic comparability, her testimony on the licenses must be excluded. Contrary to AWS's argument, the problem with Bennis's method is not that she is missing a "magic" *word* – it is that she did not perform the required *analysis*. To be sure, Bennis did *identify* differences between her agreements and the hypothetical license. Indeed, Bennis even agreed that the economic differences were "potentially vast" and "meaningful." Ex. OO at 154:1-155:2, 243:19-244:4. But that dooms her analysis, because she ultimately ignored those differences and considered the agreements based solely on their (purported) technical comparability. The Federal Circuit has expressly rejected this approach. *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372 (Fed. Cir. 2020). Moreover, experts must *account* for any economic differences, which Bennis also fails to do.[7] Ex. KKKK Bennis Tr. at 115:8-14 ("Q: How did you account for [the difference between agreements] . . . in your arrival at a damages estimate? A: It's a fact, just like many others. Q: Can you provide any more specificity? A: No, I don't think so.").

---

28, 2023) ("At the very least, Google should have advised plaintiffs about its preservation approach early in the litigation, and engaged in a discussion with them. It chose to stay silent[.]").
   [7] *Sprint Commc'ns Co. v. Comcast IP Holdings, LLC*, 2015 WL 456154, at *2 (D. Del. Jan. 30, 2015) (merely cataloguing differences is insufficient).

4

AWS makes hay out of the fact that at her deposition Bennis, at one point, testified that *one* of the ■ agreements in her report ■■■■ was economically comparable. Resp. at 11-12. But Bennis offered the opposite opinion both before and after the portion AWS cited and it was not disclosed in her report.[8] In any event, Bennis's fleeting reference to one license does not eliminate her failure on the other ■ licenses.

As to litigation factors, AWS fails to contest that Bennis did not take them into account. Black letter law is that she must, and Kove pointed out that she did not. AWS ignores this issue.

Finally, the flaws in Bennis's methodology are not merely matters for cross-examination. *See* Resp. at 12. The Federal Circuit has recognized that non-comparable licenses are uniquely prejudicial, requiring trial courts to exclude non-comparable licenses.[9]

**Econnectix Opinions.** AWS argues that a comparability analysis is not required under factor 1 of the *Georgia Pacific* analysis. Resp. at 15. To the contrary, Federal Circuit law requires a comparability analysis and adjustments based thereon for *Georgia Pacific* factors 1 and 2:

> We have recently reiterated that use of past patent licenses *under factors 1 and 2* must account for differences in the technologies and economic circumstances of the contracting parties.

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211–12 (Fed. Cir. 2010) (emphasis added; citations omitted). Bennis did not perform the requisite analysis.

**Grama's Technical Comparability Opinions.** Conclusory opinions on technical comparability are not admissible. *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed.

---

[8] *See* Ex. KKKK Bennis Tr. at 89:1-91:13 (refusing to offer an opinion on economic comparability), 146:18-147:16 (stating she did not understand the concept of comparability between agreements), 203:4-20 (refusing to provide an opinion on economic comparability); Mot., Ex. NN (Bennis Rpt.), at 75-78 (offering no opinion on economic comparability).

[9] *See LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 78 (Fed. Cir. 2012) (district court abused discretion in admitting litigation-based settlement); *Intelligent Verification Sys., LLC v. Microsoft Corp.*, 2015 WL 1518099, at *2 (E.D. Va. Mar. 31, 2015) ("[T]he district court must exercise its gatekeeping function to bar non-comparable licenses when the license does not meet the baseline of comparability test[.]").

5

Cir. 2022). AWS defends Grama's opinions on the grounds that he relied on Scott Hayden as to the nature of the licensed patents and their similarity to the Kove patents. Resp. at 13. The problem is that Hayden is an Amazon in-house lawyer, not an engineer. Ex. LLLL (Hayden Ex. 1). He does not have a degree in computer science; is not a POSITA; did not read or understand the Kove patents; and did not meaningfully "study" the licensed patents. *Id.*[10] Grama was responsible for offering his own opinion on the scope of the licensed patents—he cannot defer to a non-expert. *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005).[11]

AWS's only other response is to assert that Grama's approach – identifying a broad topic area (i.e., load balancing) and concluding comparability – was "endorsed" by the Federal Circuit. Resp. at 14. The opposite is true. *Adasa Inc.*, 55 F.4th at 915. The question is whether licensed technology is *comparable*—not whether it relates to the same general field. *See id.*[12] Like house price comparables, there must be information that the house is similar in relevant respects, not just that it is in the same state. Finally, AWS does not offer any response regarding Grama's conclusory opinions on the purportedly "foundational" nature of the licensed patents. Mot. at 16.

**Non-Disclosed Non-Infringing Alternatives.** AWS agrees it should not be allowed to introduce testimony or argument on non-infringing alternatives it did not disclose. *See* Resp. at 16-17. The Court should so order.

---

[10] *See also* Mot., Ex. CC ¶ 23 (defining POSITA); Ex. MMMM (Hayden Tr.) at 59:1-5, 60:17-61:1, 61:12-17, 86:18-87:1, 195:7-22, 293:21-294:7.

[11] In fact, Grama's reliance on Hayden is worse, since Hayden testified that his understanding as to the scope and relevance of the licensed patents actually came from AWS's outside litigation counsel. Ex. MMMM (Hayden Tr.) at 119:4-25; 135:17-20.

[12] With respect to one of the agreements – ▮▮▮▮▮▮▮▮ – AWS points out that Grama provided greater specificity. Resp. at 13. But even that analysis – which addresses just one of the estimated ▮▮▮ patents in that agreement (the "Yocum" patent) – is insufficient. *See* Ex. CC (Grama Rpt.), ¶¶ 495-96; *Adasa*, 55 F.4th at 915 ("[M]erely observing that *some* patents in a portfolio cover RFID technology, or were cited during the '967 patent's prosecution, says nothing about the comparability of the thousands of remaining patents in the portfolio.")

All that remains is whether the non-infringing alternatives set forth in paragraph 535 of the Grama Report were adequately disclosed. AWS claims these alternatives are simply examples of the (timely disclosed) alternatives set forth in the previous paragraph (¶ 534). Not so. Paragraph 535 offers two alternatives: a "two-tiered" system and a system where "a number or [sic] servers are queried together." Mot., Ex. CC ¶ 535. Neither of these alternatives was included in Grama paragraph 534 or in AWS's NIA disclosures. *Id.* ¶ 534; Ex. SS at ROG 3. They should be excluded.

## III. INADMISSIBLE NON-INFRINGEMENT OPINIONS

### A. AWS's Untimely Non-Infringement Arguments Should Be Excluded.

**"Parent-child hierarchy" theory (S3).** AWS fails to show where its noninfringement contentions disclose Grama's theory that the ▮ in S3 do not infringe because the ▮ within them ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. CC (Grama Rpt.), ¶ 357. AWS points only to is its generic assertion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *E.g.*, Ex. VV (AWS's FNC, Ex. A), at 4. The Court already found this high-level disclosure insufficient when it excluded Grama's nearly identical "parent-child" theory for DDB. Dkt 739 at 29.

AWS also argues that "parent-child" and "tree" metaphors are "just common ways of describing the relationship between hierarchical layers," and so Grama's parent-child theory should be "no surprise" to Kove. Resp. at 18-19. But AWS was required to disclose its *theories*, not just identify the claim elements it contends are not met. Saying that S3 has "hierarchies" – parent-child or otherwise – is the same as asserting that the "non-hierarchical" claim limitation is not met. Worse, the pages of its noninfringement contentions that AWS identifies do not disclose Grama's theory that *parent-child relationships among the* ▮▮▮▮▮▮▮ are a noninfringing hierarchy. In fact, they suggest that AWS's *only* hierarchy-related noninfringement argument for S3 was based on ▮▮▮▮▮▮▮, which is a distinct theory. *E.g.*, Ex. VV (AWS's FNC, Ex. A), at 3-4; Ex. CC (Grama Rpt.), ¶¶ 359-361 (▮▮▮▮▮▮ theory).

7

**"Naming convention hierarchy" theory (S3 and DDB).** AWS concedes that Grama's naming convention hierarchy theory was not disclosed in its noninfringement contentions, but claims it was responsive to a new theory by Kove's infringement expert, Dr. Goodrich. *See* Resp. at 21. First, ▇▇▇ is merely <u>evidence</u>, not a <u>theory</u>. Dkt. 762 at 1-2. Second, ▇▇▇ was disclosed in Kove's infringement contentions. *Id.* at 2-3. Third, Grama's naming convention hierarchy opinions are not even responsive to Goodrich's ▇▇▇ opinions – they address different claim terms. Goodrich uses ▇▇▇ to show that the ▇▇▇ requirement of the "identifier" claim term is satisfied. Dkt. 762 at 1-2; *E.g.*, Mot., Ex. YYY (Goodrich Rpt., Ex. D), ¶¶ 10, 12, 78-79; Mot., Ex. QQQ (Goodrich Rpt., Ex. E), ¶¶ 9, 83. By contrast, Grama's naming convention hierarchy relates to the "non-hierarchical" requirement for location servers.

**"▇▇▇ is too full" theory (S3).** Again, AWS fails to show where this theory was in Grama's report. AWS points to portions of its contentions that rebut Kove's doctrine of equivalents analysis, but Grama's new opinions are about *literal* infringement, not *equivalents* infringement. *Id.* Besides, the equivalents theory in AWS's contentions is different than Grama's new ▇▇▇ theory. AWS's contentions dispute that a "transfer" occurs in S3 in substantially the same way as the claims when the ▇▇▇ and thereby causes the location data to be ▇▇▇. Ex. YY (AWS's FNC, Ex. D), at 104-105. Conversely, Grama opines that the distinct "predetermined performance limit" claim limitation is not met because the ▇▇▇ are nearly full. Ex. CC (Grama Rpt.), ¶¶ 309-310. Grama only mentions the "transfer" requirement when discussing an ▇▇▇ which is a different concept than the ▇▇▇ that was addressed in AWS's contentions. *Id.* Further, AWS's contentions do not have the words "capacity," "full," "performance limit," or "eviction policy." Grama's opinions are thus new and should be excluded.

8

"████████" **is not an "identifier" theory (DDB).** AWS does not contend that Grama's new theory was disclosed in its noninfringement contentions or dispute that its contentions took the opposite position as Grama. Resp. at 20-21.[13] Instead, it makes irrelevant arguments. AWS asserts that: (1) the ████████ is not an identifier because it is not associated with locations in a server; (2) a ████████ is not an identifier because it does not ████████████████; and (3) Grama should be able to explain that neither a ████████ nor a ████████ is an identifier because AWS's contentions disclosed (1) and (2) and Goodrich conflates the two concepts. Resp. at 20-21. The Court need not consider any of these arguments because none relate to Kove's motion, which asks to exclude Grama's opinion that a ████████ is not the identifier because ██████████████████████████.

### B. The Federal Circuit Bars Grama's "Practicing The Prior Art" Defense.

AWS confirms that it intends to have Grama testify that S3 does not infringe because it uses the ████████████████ from a prior art paper:

- "[Grama is] showing that S3 uses a non-infringing, public domain method."
- "Grama explains why this ████████████████ from [the prior art paper] is evidence that 'the ████ fail to satisfy the location server limitations of the claims.'"
- "Grama further explains that the [prior art paper] is 'very different than that of the claimed location servers described in the Asserted Patents.'"

Resp. at 22-23. That is the "practicing the prior art" defense that the Federal Circuit forbids.

AWS argues that the prior art paper it is using is not asserted as invalidating prior art. Resp. at 22. That misses the point. AWS cannot defend against infringement by arguing its product is similar to the prior art, because "[t]his is essentially a creative way to assert practicing the prior art as defense to literal infringement." *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1377 (Fed. Cir. 2002) (quotation omitted).

---

[13] For the record, Goodrich has been clear about the distinction between ████████ and ████████. *See, e.g.*, Dkt. 699 at 20.

AWS also incorrectly asserts that Goodrich relies on the prior art paper to show infringement. Resp. at 21-22. Goodrich's report merely quotes ▬▬▬▬▬▬▬▬ that references the prior art paper. *Compare* Ex. NNNN (Goodrich Rpt., App'x A), *with* Ex. CC (Grama Rpt.), ¶ 283. It makes no sense for Goodrich to rely on that paper to show infringement.

AWS also confirms that Grama intends to compare Goodrich's analysis of file sets in Ault to his own analysis of ▬▬▬▬ in DDB. Resp. at 23; Ex. CC (Grama Supp. Rpt.), ¶ 9-12. But the only proper comparison is between DDB and the asserted claims. *See Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1366 (Fed. Cir. 2002).

      **C.**     **Grama's Immaterial "Hierarchy" Opinions Should Be Excluded.**

AWS confirms that it intends to argue at trial that its products do not infringe because they contain various "hierarchies" that the Court found "immaterial" to infringement. Dkt. 739 at 25-27. AWS points to components in S3 and DDB that are not the alleged location servers and asserts that they are relevant to whether location servers are "non-hierarchical." Resp. at 23-24. But the Court already determined that "the hierarchical structure of components other than the alleged location servers is [] immaterial." Dkt. 739 at 26-27. And, while AWS claims that components identified in Kove's infringement contentions are relevant to this issue (Resp. at 23-24), AWS takes the opposite position in its noninfringement contentions. *See* Mot., Ex. VV (AWS FNC, Ex. A), at 2 ("Many of these components and data structures are wholly irrelevant to Kove's infringement contentions[.]"); Mot., Ex. WW (AWS FNC, Ex. B), at 2 (same).

AWS suggests that Kove intends to allege infringement across multiple regions. Not so. As the Court stated, "[t]he pertinent question is whether S3 or DDB contain location server structures or configurations where the servers are arranged in a non-hierarchical topology." Dkt. 739 at 26-28. Kove alleges infringement for sets of location servers within regions (and/or availability zones within regions), which is what it will seek to prove at trial. *Id.*

10

### D. Grama Should Not Be Permitted To Provide New Claim Constructions

Federal Circuit law prohibits experts from testifying about claim construction because it usurps the Court's role as the sole arbiter of claim scope. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008). AWS confirms that Grama intends to improperly testify about claim construction at trial. Resp. at 25 ("Grama offered opinions on Kove's disclaimers at the Patent Office, and what the proper construction of the claims should be based on those disclaimers."). Yet AWS insists that the Court should disregard Federal Circuit law and permit Grama to present his claim constructions to the jury because he will not address the "two or fewer steps" requirement that the Court rejected in its claim construction ruling. Resp. at 25. Regardless of what he wants to address, experts cannot testify in favor of claim constructions to a jury. Permitting Grama to recount the prosecution history and provide his view on the proper claim scope necessarily invites reversible legal error. *CytoLogix Corp. v. Ventana Medical Sys., Inc.*, 424 F.3d 1168, 1172-73 (Fed. Cir. 2005) ("The risk of confusing the jury is high when experts opine on claim construction before the jury even when, as here, the district court makes it clear to the jury that the district court's claim constructions control.").

Moreover, Grama's opinions are chock full of claim constructions that the Court did not adopt. Grama incorrectly opines that: (1) the location servers must have a "cluster" structure (¶¶ 136, 212, 214, 326); (2) "each location server must be able to respond to any location request with either the location of the data or the location of a server known to contain the requested location data without an intervening traversal" (¶¶ 136 (emphasis added), 212, 217-18, 326); and (3) Kove disclaimed "mixed topologies" (¶¶ 145-46, 215-16). *See* Dkt. 739 at 15 n.3 (Court declining to adopt "cluster" as part of construction), 11 (AWS did not seek to include "any location request" or similar language as part of its construction), 21 (Court rejecting argument that location servers must "contain" location-related information), 27 (Court rejecting argument that hierarchical

11

location servers anywhere means no infringement everywhere). Grama also mischaracterizes the reexaminations by underlining and bolding out-of-context statements by Kove that are not relevant to claim construction. Ex. CC (Grama Rpt.) ¶¶ 136, 145-46, 211-19, 326.

## IV. INADMISSIBLE INVALIDITY OPINIONS

When the Court ruled that AWS cannot rely on specification evidence in proving obviousness-type double patenting, it left AWS with no evidence as to certain elements of certain claims. AWS nevertheless contends, "that doesn't mean Amazon can't argue at trial that the claims are invalid for double patenting." Resp. at 25. AWS provides no justification for arguing that it or its expert should be allowed to argue invalidity under the OTDP doctrine of certain claims, despite not having the requisite evidence to do so. Allowing Greene to so testify would mislead and confuse the jury and unfairly prejudice Kove by essentially placing the "imprimatur of expertise" on his deficient analysis and unreliable conclusion. *See, e.g.*, *CareDx, Inc. v. Natera, Inc*. 2021 WL 1840646, at *4 (D. Del. May 7, 2021) (excluding expert testimony where allowing it would "place the imprimatur of an expert . . . on [an] undocumented and dubious damages calculation"). AWS should not be allowed to argue double patenting with respect to these claims without Greene. No other expert opines on this issue. Fact witnesses cannot opine on whether a claim term is obvious in view of another claim because doing so requires applying the Court's constructions to the claims and determining whether differences between them render the claims patentably distinct. *Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1373 (Fed. Cir. 2014). Such an exercise is outside the purview of a lay witness. Attorney argument also cannot save the day, as such arguments are not evidence and cannot be relied on by AWS to carry its burden of proving OTDP by clear and convincing evidence.

| | |
|---|---|
| Dated: March 1, 2024 | Respectfully submitted,<br><br>*/s/ Courtland L. Reichman* |
| Khue V. Hoang *(pro hac vice)*<br>khoang@reichmanjorgensen.com<br>Jaime F. Cardenas-Navia *(pro hac vice)*<br>jcardenas-navia@reichmanjorgensen.com<br>REICHMAN JORGENSEN LEHMAN & FELDBERG LLP<br>400 Madison Avenue, Suite 14D<br>New York, NY 10017<br>Telephone: (212) 381-1965<br>Facsimile: (650) 560-3501<br><br>Christine E. Lehman (*pro hac vice*)<br>clehman@reichmanjorgensen.com<br>Adam Adler (*pro hac vice*)<br>aadler@reichmanjorgensen.com<br>Philip Eklem (*pro hac vice*)<br>peklem@reichmanjorgensen.com<br>REICHMAN JORGENSEN LEHMAN & FELDBERG LLP<br>1909 K Street, NW, Suite 800<br>Washington, DC 20006<br>Telephone: (202) 894-7310<br>Facsimile: (650) 560-3501<br><br>Amy L. Ruhland (*pro hac vice*)<br>aruhland@reichmanjorgensen.com<br>Taylor Mauze (*pro hac vice*)<br>tmauze@reichmanjorgensen.com<br>Navid Bayar (*pro hac vice*)<br>nbayar@reichmanjorgensen.com<br>REICHMAN JORGENSEN LEHMAN & FELDBERG LLP<br>901 S. Mopac Expressway, Building 1, Suite 300<br>Austin, TX 78746<br>Telephone: (650) 623-1401<br>Facsimile: (650) 560-3501 | Renato Mariotti (State Bar No. 6323198)<br>renatto.mariotti@bclplaw.com<br>Holly H. Campbell (State Bar No. 6320395)<br>holly.campbell@bclplaw.com<br>BRYAN CAVE LEIGHTON PAISNER LLP<br>161 North Clark Street, Suite 4300<br>Chicago, IL 60601<br>Telephone: (312) 602-5000<br><br>Courtland L. Reichman *(pro hac vice)*<br>creichman@reichmanjorgensen.com<br>Shawna L. Ballard (*pro hac vice*)<br>sballard@reichmanjorgensen.com<br>Jennifer P. Estremera (*pro hac vice*)<br>jestremera@reichmanjorgensen.com<br>Gina Cremona (*pro hac vice*)<br>gcremona@reichmanjorgensen.com<br>Savannah Carnes *(pro hac vice)*<br>scarnes@reichmanjorgensen.com<br>REICHMAN JORGENSEN LEHMAN & FELDBERG LLP<br>100 Marine Parkway, Suite 300<br>Redwood Shores, CA 94065<br>Telephone: (650) 623-1401<br>Facsimile: (650) 560-3501<br><br>***ATTORNEYS FOR PLAINTIFF KOVE IO, INC.*** |

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 1st day of March, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                                        */s/ Courtland L. Reichman*
                                                        Courtland L. Reichman