IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOVE IO, INC., *Plaintiff*, v. AMAZON WEB SERVICES, INC., *Defendant*. | Case No. 1:18-cv-8175 |

# AWS'S MOTION TO COMPEL DEPOSITIONS AND OTHER DISCOVERY BASED ON KOVE'S PRODUCTION OF NEW INFORMATION

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman *(pro hac vice)*
*jeffrey.saltman@fischllp.com*
Lisa N. Phillips *(pro hac vice)*
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW Suite 400
Washington, D.C. 20015
202.362.3500

Ken K. Fung (*pro hac vice*)
*ken.fung@fischllp.com*
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
650.362.8200

*Attorneys for Amazon Web Services, Inc.*

**INTRODUCTION**

Kove produced agreements 21 days ago bearing on the asserted patents' ownership, the people and entities that have a share in that ownership and the potential proceeds from this case, and the valuation of the asserted patents, among other relevant details. These agreements included two that should have been produced during discovery—as they were executed in 2015 and March 2023, before the May 2023 fact discovery cutoff—and a third signed in December 2023. Due to Kove's late production, AWS was unable to ask Kove's witnesses about these agreements during discovery. So, at AWS's request, Kove produced its CEO and co-inventor Dr. John Overton for a two-hour deposition to answer questions about these agreements. But Dr. Overton was unable to answer many relevant questions, including who owned what shares in the patents and the various LLCs and trusts involved in that ownership, how the patents and shares had been valued in the agreements, and how much various people and entities would take from any case proceeds. For many of these unanswered questions, Dr. Overton referred AWS to his co-inventor Dr. Stephen Bailey[1] and Dr. Overton's "damn lawyers," including Kove's General Counsel and the architect of these agreements, Robert Dellenbach.[2] Dr. Overton's deposition also revealed that

After Dr. Overton's deposition, AWS asked Kove for deposition time with Dr. Bailey and Mr. Dellenbach limited to these newly-produced agreements, and to produce Kove's agreements

---

[1] *See, e.g.*, Ex. 1, 2/27/24 Overton Rough Tr. at 1048:22-1050:1 (answering "you'd have to talk to him" when asked why Dr. Bailey signed the agreements).

[2] *See, e.g., id.* at 1052:15-17 ("Q: Who would be able to give me that information?" A: My guess is it would be Rob Dellenbach."); 1090:17-18 ("This is related to all my damn lawyers. Okay?"). For clarity, Dr. Overton wasn't specifically referring to Mr. Dellenbach in making this comment.

[3] *Id.* at 1111:5-1112:5 (testifying that                                                       ).

1

with              . Kove declined, stating that the case was "on the eve of trial" and arguing that the additional discovery sought was "not relevant to any issue for trial or disproportionate to the needs of the case."[4] Kove's prior actions wholly undercut its current position. Indeed, Kove has included 73 exhibits relating to the ownership of the asserted patents on its 1,591 exhibit trial exhibit list.[5] This includes the December 2023 agreement itself and agreements that the newly-produced agreements amend.[6] And during discovery, Kove answered two interrogatories specifically seeking information on ownership of the asserted patents, and produced Dr. Overton as a corporate witness on eight Rule 30(b)(6) topics for which these agreements would be relevant.

That Kove produced these agreements after fact discovery shouldn't deprive AWS of its right to obtain relevant information about them for its defense. To be sure, Dr. Bailey is on Kove's witness list to call live at trial, and AWS should be afforded the opportunity to know what he'll say about these agreements before trial. So too should AWS be permitted to know what certain critical parts of these agreements mean, before Kove presents them at trial as exhibits, likely through the testimony of Dr. Overton, who disclaimed knowledge of them at deposition. This will prevent trial by surprise, as AWS would otherwise be hearing Kove's explanation of the details of these agreements at the same time the jury hears it.

Moreover, throughout this case, Kove has portrayed itself as the proverbial David battling the Goliath of AWS. In the complaint, for example, Kove repeatedly stated that it was a "small" company up against a "behemoth" in AWS.[7] And to address that portrayal, the jury should know the details on Kove's                                    , which calls itself "

---

[4] Ex. 2, Feb. 28, 2024 Email from Kove to AWS.

[5] *See* Dkt. 765-8 at Exs. 92-97, 214-15, 289, 948-1006, 1011-16.

[6] *See id.* at 214 & 289.

[7] *E.g.*, Dkt. 1 at 2.

To be sure, Kove intends to present the December 2023 agreement as evidence at trial, but is blocking AWS and the jury from knowing the details on         , what Kove exactly provided in exchange for it, and other terms relevant to damages, witness bias, and other issues.

Thus, AWS seeks an order compelling Kove to produce: (1) Dr. Bailey and Mr. Dellenbach for two hours each of video deposition testimony on the newly-produced agreements, and (2) Kove's agreements with          relating to the asserted patents and/or this case. And with trial 31 days away, AWS also respectfully asks the Court for expedited briefing and consideration of this motion.

**I.    KOVE'S LATE PRODUCTION.**

Fact discovery closed on May 5, 2023. Nine months later, on February 5, 2024, Kove *sua sponte* produced the "Joint Amendment to Asset Purchase Agreement and Arctide, LLC Limited Liability Company Agreement."[9] That agreement, dated December 27, 2023, referred to two other agreements: the "Arctide, LLC Limited Liability Company Agreement," dated June 24, 2015 and the "2023 Amendment to Limited Liability Company Agreement of Arctide, LLC," dated March 29, 2023.[10] AWS notified Kove on February 6, 2024 that it appeared Kove hadn't previously produced these 2015 and 2023 agreements, and that Kove hadn't identified them in its response to AWS's interrogatory No. 22, despite disclosing other agreements involving Arctide that related to the asserted patents.[11] AWS asked for production of the 2015 and 2023 agreements, and Kove

---

[8] *See*

[9] Ex. 3, Feb. 5-15, 2024 Email chain between Kove and AWS.

[10] Ex. 4, Dec. 2023 Agreement.

[11] Ex. 3, Feb. 5-15, 2024 Email chain between Kove and AWS.

3

produced them on February 8, 2024.[12]

All three of these newly-produced agreements contain information relevant to the issues in this case. Among other things, the 2015 agreement identified who had an ownership interest in Arctide, the LLC that Kove sold the patents to at that time and that still maintains a large stake in the outcome of this litigation.[13] It also appears to set forth how much of Arctide that individuals and entities—Dr. Overton, Dr. Bailey, Josiah Lee Auspitz, and Bay Valley Ventures—owned, and the dollar value of those shares.[14] The March 2023 agreement introduced a new Arctide shareholder that Dr. Overton controls,          , and again appeared to show how much of Arctide each shareholder owned and the dollar value of those shares.[15] And the December 2023 agreement disclosed for the first time that

.[16] It also amended certain terms of Kove's 2015 agreement to sell the patents to Arctide.[17]

AWS then sought deposition testimony from Kove on these newly-produced agreements. AWS explained to Kove that the agreements were "relevant to numerous case issues," and their production would require AWS to not only take testimony on newly-disclosed entities having a financial stake in the patents and litigation, but also to revisit topics from Dr. Overton's prior 30(b)(6) depositions concerning Arctide and ownership of the patents.[18] Kove agreed to produce Dr. Overton to testify about the newly-produced agreements. Kove stated that he would "answer

---

[12] *Id*.

[13] Ex. 5, 2015 Agreement.

[14] *Id.*

[15] Ex. 6, March 2023 Amendment.

[16] Ex. 4, Dec. 2023 Agreement.

[17] See i*d.*

[18] Ex. 3, Feb. 5-15, 2024 Email chain between Kove and AWS.

4

any questions related to The Arctide, LLC Limited Liability Company Agreement (KOV_00280475), The 2023 Amendment to Limited Liability Company Agreement of Arctide, LLC dated March 29, 2023 (KOV_00280473), and Joint Amendment to Asset Purchase Agreement and Arctide, LLC Limited Liability Company Agreement between, among others Arctide, LLC and Kove (KOV_00280440)."[19] And Kove recognized that the deposition testimony would have to revisit topics covered in the prior 30(b)(6) depositions for both Kove and Arctide, at which Dr. Overton served as corporate designee.[20]

Kove produced Dr. Overton for two hours of video testimony on February 27, 2024. But Dr. Overton wasn't able to answer many relevant and important questions about the newly-produced agreements. This included questions about who drafted the agreements,[21] how the parties defined proceeds,[22] why Dr. Bailey signed the agreements, and whether Dr. Bailey received compensation for executing the 2023 agreement.[23] For answers to these questions and others, such as how to interpret the agreements' schedules of shares,[24] valuations of assets,[25] and percentages of ownership,[26] Dr. Overton referred AWS to Mr. Dellenbach.[27] And despite being Kove's and

---

[19] *Id.*

[20] *Id.*

[21] *See* Ex. 1 at 1034:11-19 ("Q: Who drafted this limited liability agreement? A: I don't recall…"); 1128:18-1129:1 ("Q: And who drafted this document? A: I don't recall…").

[22] *Id.* at 1127:5-1128:17 ("Q: Why is ⬛⬛⬛ identified here? A: "I don't recall…").

[23] *See, e.g., id.* at 1125:22-1126:7.

[24] *See, e.g., id.* at 1044:12-20 ("Q: Is it correct that each initial member paid for their shares? A: I don't recall the structure of that.").

[25] *See, e.g., id.* at 1059:14-21 ("Q: Do you know if that was the total value of common units in Arctide as of the date of this agreement in 2015? A: I have no idea how that works.").

[26] *See, e.g., id.* at 1051:12-1052:3 ("Q: And is that a percentage of ownership? A: I'm not sure how this actually breaks down…").

[27] *Id.* at 1052:8-17 ("Q: And is this the amount of ownership in Arctide that you had at this time – A: I don't recall.… Q: Who would be able to give me that information? A: My guess is it would be Rob Dellenbach.").

5

Arctide's designee to answer "any" of AWS's questions on these agreements, Dr. Overton admitted that he hadn't spoken with Mr. Dellenbach or anyone else to prepare for the deposition.[28]

At the end of Dr. Overton's deposition, AWS asked for further deposition testimony from Dr. Bailey and Mr. Dellenbach, and for Kove to produce its ⬛⬛⬛. AWS reiterated these requests in an email the following day, with citations to Dr. Overton's deposition transcript in support.[29] Kove declined, replying that it had already accommodated AWS with an "out-of-time deposition on the eve of trial," and that the additional information sought "is either not relevant to any issue for trial or disproportionate to the needs of the case."[30] Kove concluded with: "If AWS wants to file a motion, we will respond."[31]

## II. KOVE SHOULD PRODUCE DR. BAILEY AND MR. DELLENBACH FOR BRIEF DEPOSITIONS ON THE NEWLY-PRODUCED AGREEMENTS.

Dr. Bailey is on Kove's trial witness list and signed the 2015 and December 2023 agreements as an Arctide shareholder. AWS didn't have these agreements before deposing Dr. Bailey in October 2020. Because of that, AWS was unable to obtain accurate testimony from Dr. Bailey on his financial interest in this litigation and his ownership stakes in the various Dr. Overton-controlled entities that have owned the asserted patents. For instance, Dr. Bailey testified:

> AWS Atty: Do you have any financial interest in the litigation that Kove IO has brought against Amazon Web Services?
> Dr. Bailey: Yes.
> AWS Atty: What is your financial interest in this litigation?
> Dr. Bailey: I don't recall the details.
> AWS Atty: Is there a written agreement that lays out your financial participation in this litigation?

---

[28] *See, e.g., id.* at 1019:14-17 ("Q: Aside from the attorneys, did you speak with anyone else to prepare for the deposition today? A: No.").

[29] Ex. 2, Feb. 28, 2024 Email from Kove to AWS.

[30] *Id.*

[31] *Id.*

> Dr. Bailey: I don't know.[32]
>
> …
>
> AWS Atty: What is -- what are the terms of that agreement?
> Dr. Bailey: I don't know.
> AWS Atty: You have no idea?
> Dr. Bailey: Correct. I don't recall.
> AWS Atty: Then why do you think -- why do you think you have an interest in this case, sir?
> Dr. Bailey: Because John told me.
> AWS Atty: What did Mr. Overton tell you?
> Dr. Bailey: I don't recall the exact details, but he told me that if there were proceeds, I would benefit from it.
> AWS Atty: And so your understanding, as you sit here testifying today, is that if Kove IO succeeds in recovering anything against Amazon Web Services in this case, you will -- you will receive some share of that?
> Dr. Bailey: Yes.
> AWS Atty: And you've never documented that in writing?
> Dr. Bailey: I haven't, no --
> AWS Atty: To the best of your recollection --
> Dr. Bailey: -- that I recall.[33]
>
> …
>
> AWS Atty: Did you own any interest in either OverX, Econnectix, LLC, Econnectix, Inc., Kove Corporation, or Kove IO, or Arctide?
> Dr. Bailey: I don't -- I don't know.[34]

AWS designated all of this testimony for trial, but it's now tainted by Kove's late production. Absent further deposition time with Dr. Bailey to obtain accurate answers to these and other questions based on the newly-produced agreements, Kove will be free to have Dr. Bailey testify at trial about them with AWS having no knowledge of what he'll say. This would leave AWS unable to effectively cross-examine him. And it would also contravene the purposes of Rules 26

---

[32] Ex. 7, Bailey Dep. Tr. at 67:12-24.

[33] *Id.* at 68:9-69:7.

[34] *Id.* at 176:22-177:1.

and 30, and the overall point of conducting discovery.

Mr. Dellenbach also signed these agreements, and appears to be an Arctide shareholder, though Dr. Overton couldn't definitively define his role and stake. As detailed above, Dr. Overton repeatedly deferred to Mr. Dellenbach as knowledgeable on the questions AWS posed about critical details regarding the newly-produced agreements. For the same reasons as with Dr. Bailey, AWS should be permitted to ask these questions of Mr. Dellenbach before Kove presents the agreements to the jury and has Dr. Overton or other witnesses testify about them. Indeed, these questions seek information on many relevant issues, including valuations of the patents, Arctide, and other entities, who owns the patents and how their shares were determined, who would receive what amounts from any recovery by Kove, and potential witness bias and credibility. A deposition of Mr. Dellenbach will prevent trial by surprise on these issues.

And though Kove now contends that this further deposition testimony seeks irrelevant information or is disproportionate to the needs of the case, its prior actions undermine that position. As noted, Kove's trial exhibit list includes 73 exhibits concerning the ownership of the asserted patents, including the December 2023 agreement and agreements that it amends. And during discovery, Kove answered two interrogatories on ownership of the asserted patents, and in so doing cited and discussed its agreements with Arctide. Indeed, AWS's interrogatory 13 asked Kove to "identify all persons with an ownership interest related to the Asserted Patents or this lawsuit, including a detailed description of the nature, extent, and dates of the ownership interest." Kove answered under Rule 33(d), but didn't identify the newly-produced agreements, and stated "John Overton is knowledgeable about Kove's answer."[35] And Kove similarly answered interrogatory

---

[35] Ex. 8, Kove's Responses and Objections to AWS's Second Set of Interrogatories (Nos. 10-14), at 7-9.

22, which sought "agreements related to the Asserted Patents."[36]

Additionally, Kove produced Dr. Overton as a corporate designee for Kove and Arctide on topics for which the newly-produced agreements would be relevant, including: "Ownership of the patents-in-suit," "Kove's financial condition," Kove's "investors, investments, working capital,"[37] the "identity of each third party, if any, that made investment in Kove and/or provided funds to John Overton that involved the proceeds or potential proceeds, in whole or in part, in this litigation,"[38] "Arctide's ownership in the Asserted Patents," the ownership amount held by "each owner of Arctide," Arctide's stake in the outcome of this case, and agreements relating to the Asserted Patents to which Arctide is a party.[39]

In sum, the information AWS seeks in these additional depositions is relevant to discoverable issues, and specifically issues that will be addressed at trial. And the Court should thus grant AWS's request for short depositions of Dr. Bailey and Mr. Dellenbach.

### III. KOVE SHOULD PRODUCE ADDITIONAL INFORMATION REFERENCED IN ITS NEWLY-PRODUCED AGREEMENTS.

The newly-produced December 2023 agreement and Dr. Overton's testimony revealed that Kove received

Kove has included that agreement on its trial exhibit list, but the agreement doesn't disclose the identity of                                                        . In presenting it to the jury, Kove may, among other things, use that December 2023 agreement to bolster the bona fides of its case and business. Allowing Kove to do so would be prejudicial if AWS and the jury are precluded

---

[36] Ex. 9, Kove's Responses and Objections to AWS's Sixth Set of Interrogatories (Nos. 22-25), at 6-12.

[37] Dkt. 659-6, AWS's Rule 30(b)(6) Notice, dated October 6, 2020, at topics 6, 8, and 18.

[38] Ex. 10, AWS's Rule 30(b)(6) Notice of Deposition to Kove, dated August 20, 2021, at topics 5.

[39] Ex. 11, Subpoena to Testify at a Deposition in a Civil Action directed to Arctide, LLC, dated July 28, 2021, at topics 1-4.

from access to the specifics of Kove's agreements                              .

Moreover, the full story on                    involvement is critical for AWS's defense, given Kove's arguments throughout this five-plus-year litigation. From start to present, Kove has relied on a David versus Goliath theme. The complaint states: "Kove is a small, innovative product company competing in a field of behemoths, like AWS. It cannot outspend these dominant global players."[40] And it goes on to describe this case as "about ensuring a level playing field so smaller competitors like Kove can compete fairly on the basis of their hard work and protected."[41] This Kove theme continued through discovery, with Kove arguing in motions practice that it's "a small operating company" and "AWS remains a multi-billion dollar company, one of the largest ever to exist in the world."[42] Kove also repeatedly asked AWS witnesses at deposition about their "big company" infringing "a small company's patents."[43]

Despite all this, Kove argues that the                    agreements aren't relevant. But, as noted, Kove answered interrogatories on ownership interest in the case and the various Dr. Overton-controlled entities with stakes, and produced a witness to testify on these and other related topics. And indeed, when Kove sought and received a protective order on litigation funding efforts and agreements earlier in the case, it carved out agreements like those with             as relevant and discoverable. Specifically, in seeking a protective order, Kove stated: "Kove is not seeking a protective order with respect to Kove's efforts to seek investments for its operating business, including non-privileged versions of its Investment Memorandum."[44] At deposition, Dr. Overton

---

[40] Dkt. 1 at 2.

[41] *Id.* at 2-3.

[42] Dkt. 466 at 3.

[43] *See, e.g.*, Ex. 12, A. Jassy Dep. Tr. at 49:9-11; Ex. 13, A. Henry Dep. Tr. at 289:21-25.

[44] *See* Dkt. 400 at 9.

described the

Other courts have ordered the production of similar agreements based on analogous fact sets. For instance, in *Impact Engine, Inc. v. Google LLC*, the court ordered production of "litigation funding and related documents" because they were relevant to "(1) establish the value of the patents at issue; (2) obtain statements made by Impact Engine regarding the patents at issue; and (3) refute potential trial themes."[46] And, in *Cont'l Cirs. LLC v. Intel Corp.*, the court concluded:

> The Court has little difficulty concluding that the requested documents and information are relevant. They concern Plaintiff's financial resources and could be used to refute any David vs. Goliath narrative at trial. Plaintiff claims that any such narrative is speculative, but Defendants are entitled to conduct discovery that may refute potential trial themes, and Defendants note that at least some evidence suggests that such a narrative will be asserted in this case.[47]

The same result should follow here. The ⬛ agreements are relevant to Kove's financial resources, to the value of the patents, to Kove's statements about the patents and case, and to refute Kove's expected trial themes. Kove should therefore be ordered to produce them.

## CONCLUSION

Kove's post-discovery production of relevant agreements prevented AWS from acquiring necessary deposition testimony on them. And Kove's refusal to produce documents showing the full picture of its ⬛ is prejudicing AWS's ability to defend itself at trial. Thus, the Court should order Kove to produce: (1) Dr. Bailey and Mr. Dellenbach for two hours each of video deposition testimony on the newly-produced agreements, and (2) Kove's agreements with ⬛ relating to the asserted patents and/or this case. And with trial starting April 1,

---

[45] Ex. 1 at 1111:9-11 (" ⬛ .").

[46] 3:19-cv-01301, Dkt. 101 at *4 (S.D. Cal. Aug. 12, 2020).

[47] 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020).

AWS respectfully requests that the Court expedite briefing and consideration of this motion.

Dated: March 1, 2024　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ R. William Sigler*
　　　　　　　　　　　　　　　　　　　　　　Alan M. Fisch
　　　　　　　　　　　　　　　　　　　　　　*alan.fisch@fischllp.com*
　　　　　　　　　　　　　　　　　　　　　　R. William Sigler
　　　　　　　　　　　　　　　　　　　　　　*bill.sigler@fischllp.com*
　　　　　　　　　　　　　　　　　　　　　　Jeffrey M. Saltman (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　*jeffrey.saltman@fischllp.com*
　　　　　　　　　　　　　　　　　　　　　　Lisa Phillips (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　*lisa.phillips@fischllp.com*
　　　　　　　　　　　　　　　　　　　　　　FISCH SIGLER LLP
　　　　　　　　　　　　　　　　　　　　　　5301 Wisconsin Avenue NW Suite 400
　　　　　　　　　　　　　　　　　　　　　　Washington, DC 20015
　　　　　　　　　　　　　　　　　　　　　　202.362.3500

　　　　　　　　　　　　　　　　　　　　　　Ken K. Fung (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　*ken.fung@fischllp.com*
　　　　　　　　　　　　　　　　　　　　　　FISCH SIGLER LLP
　　　　　　　　　　　　　　　　　　　　　　400 Concar Drive
　　　　　　　　　　　　　　　　　　　　　　San Mateo, CA 94402
　　　　　　　　　　　　　　　　　　　　　　650.362.8200

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Amazon Web Services, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 1, 2024, I electronically filed the foregoing under seal with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, and also served a copy on all counsel of record via email.

                                                  */s/ R. William Sigler*
                                                  R. William Sigler