# Exhibit 9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kove IO, Inc.,<br><br>    Plaintiff,<br><br>v.<br><br>Amazon Web Services, Inc.,<br><br>    Defendant. | Civil Action No. 1:18-cv-08175 |

**KOVE'S RESPONSES AND OBJECTIONS TO
AWS'S SIXTH SET OF INTERROGATORIES (NO. 22-25)**

  Plaintiff Kove IO, Inc. ("Plaintiff" or "Kove"), by and through their undersigned counsel, Federal Rules of Civil Procedure 26 and 33, the Northern District of Illinois Local Rules ("Local Rules"), and any applicable procedures, laws, or Court orders, hereby serves the following responses and objections to the Sixth Set of Interrogatories ( "Interrogatories") (Nos. 22-25) of Amazon Web Services, Inc. ("Defendant" or "AWS").

**PRELIMINARY STATEMENT**

  1. Kove incorporates by reference each general objection set forth below into each specific response. The specific response may repeat a general objection for emphasis or any other reason and/or may also include one or more specific objections(s). The failure to include any general objection in any specific response shall not be interpreted as a waiver of any general objection to that response.

  2. Kove's responses to AWS's Interrogatories are made to the best of Kove's present knowledge, information, and belief. Kove reserves the right to supplement or amend these responses should future investigation indicate that such supplementation or amendment is

1

Location Server (OXLS), the Xpress Association Database, XTN for Telecommunications, XRN for Registry Services, XSN for Storage Services, The Xpress Disk, XFM for FileMaker, XMC for Metadata, XPD for Storage Area Networks, The Xpress Database, XTN for Telecommunications, XRN for Registry Services, and XSN for Storage Services.

19. Kove objects to AWS's definition of "Kove Embodiment" on the grounds that they render the relevant topics vague, ambiguous, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case. Kove will interpret this term to refer to any Kove product, service, device, process, method, act, or other instrumentality that Kove contends practices any of the claimed inventions of the Asserted Patents.

20. Kove objects to AWS's definition of "Related Patent" on the grounds that they render the relevant topics vague, ambiguous, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case. Kove will interpret this term to refer to U.S. Patent Nos. 7,815,170, 7,233,978, and 7,103,640 and any provisional, non-provisional, continuation, continuation-in-part, or divisional applications that led to U.S. Patent Nos. 7,815,170, 7,233,978, and 7,103,640.

21. Kove objects to AWS's instruction that Kove identify any document, thing, or information not disclosed by reason of a claim of privilege by providing in writing certain information as improper under Federal Rule of Civil Procedure 26. If any document, thing, or information is withheld on the basis of privilege, Kove will disclose the information required by the applicable Federal and local Rules.

**RESPONSES TO INTERROGATORIES (NOS. 22-25)**

**INTERROGATORY NO. 22:**

Identify and describe in detail any and all offers, discussions, valuations, communications,

6

demands, negotiations, and agreements related to the Asserted Patents or Related Patents, whether oral or written, including, without limitation, all offers to license, sell or transfer; attempts to negotiate a license, sale, transfer, or to enforce; sale, transfer or license negotiations; notice letters, demand letters, cease and desist letters; lawsuits, settlement negotiations, settlement agreements, covenants not to sue; and any offered, negotiated or agreed bids, selling price, licensing fee, royalty rate and base, and the calculations thereof, including all revenue projections and valuations related to the Asserted Patents and Related Patents; and all related Documents.

**RESPONSE TO INTERROGATORY NO. 22:**

In addition to its general objections, Kove objects to this Interrogatory as duplicative of AWS's Interrogatory No. 13, and incorporates by reference Kove's objections and responses to Interrogatory No. 13. Kove also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exception. Kove further objects to this Interrogatory on the grounds that it is vague, unclear, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case, including, without limitation, with respect to its use of the terms "describe in detail," "any and all offers, discussions, valuations, communications, demands, negotiations, and agreements related to the Asserted Patents or Related Patents, whether oral or written," "all offers to license, sell or transfer," "attempts to negotiate a license, sale, transfer, or to enforce," "sale, transfer or license negotiations," "notice letters, demand letters, cease and desist letters," "lawsuits, settlement negotiations, settlement agreements, covenants not to sue," "any offered, negotiated or agreed bids, selling price, licensing fee, royalty rate and base, and the calculations thereof, including all revenue projections and valuations," and "Related Patents."

Kove also objects to this Interrogatory as being compound and containing multiple

7

subparts. At least seven discrete subparts are expressly identified as being part of this Interrogatory. Further, the request to, *inter alia*, "[i]dentify and describe, in detail, any and all . . . communications . . . related to the Asserted Patents or Related Patents" could include practically anything related to the Asserted Patent and Related Patents, and so improperly includes many more discrete subparts.

Kove also objects to this Interrogatory to the extent it purports to require Kove to marshal its evidence in advance of deadlines prescribed by the Federal Rules, Local Rules, and any applicable procedures, laws, or Court orders.

Kove also objects to this Interrogatory as premature to the extent it seeks Kove's expert opinions and/or disputed legal or factual contentions before the appropriate deadlines prescribed by the Federal Rules, Local Rules, and any applicable procedures, laws, or Court orders.

Kove objects to this Interrogatory to the extent that it seeks information or documents that are not relevant to any parties' claims or defenses in this litigation, and as being unduly broad, unduly burdensome, and disproportionate.

Subject to the foregoing general and specific objections, Kove responds as follows:

The inventors of the patents-in-suit, John Overton and Stephen Bailey, transferred all rights in the applications that became U.S. Patent Nos. 7,103,640 and 7,233,978 on January 12, 2001, and July 19, 2001, respectively, to their employer at the time, OverX, Inc. ("OverX"). *See, e.g.*, KOV_00000048-52, KOV_00000137-150.

In 2002, OverX chose to terminate its operations and seek a sale of all the company's assets, including the applications that became the patents-in-suit (U.S. Patent Applications Nos. 09/661,222 and 09/872,736). *See, e.g.*, KOV_00142364-66; KOV_00139468-471. On October 8, 2002, at the direction of OverX's Board of Directions, OverX executed a Trust Agreement and

8

Assignment for the Benefit of Creditors, pursuant to which all Trust Assets, including U.S. Patent Applications Nos. 09/661,222 and 09/872,736, were transferred to the OverX Creditor Trust. *See, e.g.*, KOV_00142364-66; KOV_00139468-471; *see also* KOV_ 00000002-8. Founders Capital Corporation ("Founders") was appointed as Trustee/Assignee to carry out the purpose and duties of the OverX Creditor Trust. *See*, *e.g.*, KOV_00142364-66; KOV_00139468-471.

Pursuant to the Trust Agreement and Assignment for the Benefit of Creditors, on November 12, 2002, Founders initiated a Request for Proposals process, which solicited bids to buy all or part of the assets of OverX. *See, e.g.*, KOV_00139468-471. The Request for Proposal further provided that each Proposal should include three separate bids: (1) for OverX's patent applications; (2) for the source code for the Xpress software; and (3) for OverX's patent applications and the Xpress source code. *Id.*

Econnectix LLC ("Econnectix") submitted a Proposal on November 25, 2002, which included, *inter alia*, a bid to pay $100,000, plus 1.5% of Econnectix's gross profits, not to exceed $50,000 per annum, in exchange for OverX's patent applications and the Xpress source code. *See, e.g.*, KOV_00216757; FOUNDERS_00000758. In connection with Econnectix's bid, John Overton, Michael Roizen, and Paul Carmichael further agreed to forgive claims against OverX, subject to the success of Econnectix's bid. *See* KOV_00216757; FOUNDERS_00000758. Founders, as Trustee-Assignor, accepted Econnectix's bid, and on December 31, 2002, transferred all right, title, and interest in, to, or arising from the Trust Assets defined in the Asset Purchase and Assignment Agreement, including the assets set forth in Schedule A, which included the U.S. Patent Applications Nos. 09/661,222 and 09/872,736, to Econnectix. *See, e.g.*, KOV_00009956-62.

On March 13, 2003, Econnectix then transferred all assets, including all patent

9

applications, to Econnectix Corporation, pursuant to the Asset Transfer Agreement between Econnectix, LLC, and Econnectix Corporation. *See* KOV_00000155-163. On February 13, 2006, U.S. Patent Application No. 11/354,224 was filed, with John Overton and Stephen Bailey listed as inventors, and that same day John Overton and Stephen Bailey assigned the application to Econnectix Corporation. *See* KOV_00000034-37.

On January 1, 2011, Econnectix Corporation then changed its name to Kove Corporation pursuant to an amendment to Econnectix Corporation's Certificate of Incorporate of the Corporation. *See* KOV_00000009-12. Then, on December 10, 2014, Kove Corporation changed its name from Kove Corporation to Kove IO, Inc., pursuant to an amendment to Kove Corporation's Certificate of Incorporate of the Corporation. *See* KOV_00000022-25.

Kove IO, Inc. and Arctide, LLC, entered into an Asset Purchase and License Agreement on June 27, 2015, relating to U.S. Patent Nos. 7,103,640; 7,814,170; 7,814,169; and 7,233,978, among other things. KOV_00009963-9977. The Agreement included, *inter alia*, the grant of an irrevocable (except as otherwise set forth in the Agreement), worldwide, non-exclusive, fully paid-up right to each of a patent license, a source code license, and an executable code license from Arctide, LCC, to Kove IO, Inc., and a payment of         by Kove IO, Inc. to Arctide, LLC, plus other defined sums. *Id.* On June 5, 2018, Arctide, LLC, sold the same assets, including the above patents, back to Kove IO, Inc., in an Asset Purchase Agreement that included, *inter alia*, cancellation of all licenses granted in the June 27, 2015 Agreement and payment by Kove IO, Inc., to Arctide, LLC, of all Proceeds, as defined in the Agreement,         . KOV_00009978-9989.

In April 2003, Econnectix Corp. engaged in discussions with        regarding investing in the intellectual property of Econnectix Corp., including the Asserted

10

Patents. *See, e.g.*, KOV_00216746-50, KOV_00216751-54, KOV_00216743. Econnectix Corp. and ▓ discussed both licensing and transferring the intellectual property assets of Econnectix Corp. to ▓ but a term sheet was never drafted, the assets were never valued, and no transaction for the sale, licensing, or transfer of the Asserted Patents was ever negotiated or closed between ▓ and Econnectix Corp.

In March 2003, ▓ exchanged a draft term sheet with Econnectix that would have provided ▓ with a perpetual, worldwide license for internal use and distribution of Econnectix's Xpress XTN database. *See* KOV_00048305-10. The agreement would have entitled Econnectix to ▓, where each license is per CPU; and the agreement would further provide the option for ▓ to receive further licenses at a cost of ▓. *See id.* The agreement also would have provided that Econnectix grant ▓ a warrant to purchase ▓ shares of Common Stock in Econnectix. *See id.* The agreement would have further provided that ▓ pay Econnectix nonrecurring engineering fees of ▓ for customization of the Xpress XTN Product. *See id.* The parties exchanged revised term sheets over the next few months, but ultimately were unable to come to agreement. *See* KOV_00139640. No transaction for the licensing of the Asserted Patents was ever closed between ▓ and Econnectix.

In April 2014, Kove Corp., through John Overton, had a call with ▓ regarding the potential licensing of Kove Corp.'s patents, but did not enter into negotiations regarding the sale, license, or transfer of any patents at that time. *See* KOV_00216766-67. The parties met again in October 2015, but also did not enter into negotiations regarding the sale, license, or transfer of any patents. No transaction for the sale, license, or transfer of the Asserted Patents was ever closed between ▓ and Kove Corp. *See id.*

On July 6, 2020, Kove IO, Inc. was contacted by regarding potentially investing in the Asserted Patents. *See* KOV_00184432-33. later became aware that the Asserted Patents were begin asserted in active litigation, and on July 14, 2020, notified Kove IO, Inc., that it could not proceed with any discussions regarding investing in the Asserted Patents. *See* KOV_00216739-41.

Kove incorporates by reference its operative response to AWS's Interrogatory Nos. 8 and 13.

In addition, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Kove identifies the documents beginning with the following Bates stamps, from which information regarding revenue projections and valuations related to the Asserted Patents may be determined:

KOV_00000009-12; KOV_00000022-25; KOV_00000034-37; KOV_00000048-52; KOV_00000137-150; KOV_00000155-163; KOV_00009956-62; KOV_00009963-9977; KOV_00009978-9989; KOV_00048305-10; KOV_00139468-471; KOV_00139640; KOV_00142364-66; FOUNDERS_00000758; KOV_00216757; KOV_00216746-50; KOV_00216751-54; KOV_00216743; KOV_00216766-67; KOV_00184432-33; KOV_00216739-41. Kove reserves the right to amend or supplement this Interrogatory response as discovery continues and as Kove furthers its investigation; Kove further reserves the right to rely on facts, documents, testimony, or other evidence that may develop or come to its attention through the ordinary course of this case.

**INTERROGATORY NO. 23:**

For each of the Asserted Claims for which Kove alleges that AWS has indirectly infringed, describe the factual and legal basis for any such contention, including, without limitation, the complete factual and legal bases for the allegations in ¶¶49-55, 68-70, and 83-85 of the Complaint;

Dated: July 15, 2021

Khue V. Hoang (*pro hac vice*)
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (*pro hac vice*)
jcardenas-navia@reichmanjorgensen.com
Michael Marvin (*pro hac vice*)
mmarvin@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
750 Third Avenue, Suite 2400
New York, NY 10017
Telephone: (212) 381-1965
Telecopier: (650) 623-1449

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com
Phil Eklem (*pro hac vice*)
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1710 Rhode Island Ave, NW, 12th Floor
Washington, DC 20036
Telephone: (202) 894-7310
Fax: (650) 623-1449

Respectfully submitted,

*/s/ Jaime F. Cardenas-Navia*
Jaime F. Cardenas-Navia

Renato Mariotti (State Bar No. 6323198)
rmariotti@thompsoncoburn.com
Holly H. Campbell (State Bar No. 6320395)
hcampbell@thompsoncoburn.com
THOMPSON COBURN LLP
55 E. Monroe St., 37th Floor
Chicago, IL 60603
Telephone: (312) 346-7500
Telecopier: (312) 580-2201

Courtland L. Reichman (*pro hac vice*)
creichman@reichmanjorgensen.com
Shawna Ballard (Identification No. 155188)
sballard@reichmanjorgsensen.com
Kate Falkenstien (*pro hac vice*)
kfalkenstien@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Telecopier: (650) 623-1449

**ATTORNEYS FOR PLAINTIFF
KOVE IO, INC.**

## VERIFICATION

I verify that I have reviewed the above responses, which are true to the best of my knowledge, information, and belief. I verify that Kove IO, Inc. ("Kove") collected factual information in the above responses from documents in the possession, custody, and control of Kove, or from persons with personal knowledge of the subject matter of the responses, and with the assistance of counsel representing Kove. I am informed and believe that the matters stated therein are true and correct, and on that basis verify the response on behalf of Kove. To the extent Kove based the above responses on information collected from others, I verify not on personal knowledge, but on information and belief. I am authorized to make this verification for and on behalf of Kove. I declare under penalty of perjury that the foregoing is true and correct.

By: John Overton
Date: July 15, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2021, Kove's Responses and Objections to AWS's Sixth Set of Interrogatories (Nos. 22-25) was served on counsel of record via email.

/s/ *Jaime F. Cardenas-Navia*
Jaime F. Cardenas-Navia
