IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | |
| | Hon. Matthew F. Kennelly |
| v. | |
| Amazon Web Services, Inc., | Jury Trial Demanded |
| Defendant. | |

**KOVE IO, INC.'S RESPONSE TO AWS'S
MOTION TO COMPEL DEPOSITIONS AND OTHER DISCOVERY BASED ON
<u>KOVE'S PRODUCTION OF NEW INFORMATION</u>**

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 2 |
| III. | ARGUMENT | 6 |
| | A. More Depositions Are A Waste Of Time. | 6 |
| | B. The GLS Documents Are Irrelevant and Work Product. | 9 |
| | C. AWS's Motion Demonstrates Why A Thorough Exhibit List Is Necessary. | 13 |
| IV. | CONCLUSION | 15 |

Kove IO, Inc. ("Kove") respectfully submits this Response to Amazon Web Services, Inc.'s ("AWS's") Motion to Compel Depositions and Other Discovery Based On Kove's Production of New Information (Dkt. 782).

I.   **INTRODUCTION**

AWS's brief paints a picture that does not stand up to scrutiny. First, the crux of its argument for more depositions is that Kove did not produce a 2015 LLC agreement during discovery, and therefore AWS should be permitted to take another deposition of an inventor and to depose Kove's lawyer about the document. AWS has the facts wrong. That agreement was produced in discovery three years ago. The time has long passed to file such discovery motions, and if AWS wanted to ask the witnesses about the documents, it should have done so during discovery. Second, AWS demands Kove produce litigation funding documents, but fails to even discuss, let alone account for, the Court's prior protective order as to litigation funding documents, and its determination that such documents are both irrelevant and work product.

AWS uses smoke and mirrors to create an impression of wrongdoing when, in fact, there is none. For example, it casts aspersions on Dr. Overton's not knowing answers to questions, but its own footnote reveals he was asked why someone else signed an agreement—Dr. Overton can hardly be faulted for not knowing what was in someone else's mind, and regardless, why the other person signed an LLC agreement has no bearing on the case. Kove fully met its discovery obligations.

Moreover, the extra discovery AWS demands is tangential, at best, to the merits. It concerns the details of the inventors' financial stake in the case (when it is undisputed that they both have a significant stake) and how a litigation funder evaluated Kove's likelihood of success in this case and the damages it expected Kove to win. While there is no basis to be seeking those

documents at all, they certainly do not justify an emergency motion for an eleventh-hour fishing expedition. Enough is enough—discovery is long over, and it is time to put distractions aside and prepare for trial.

## II. BACKGROUND

AWS muddles the facts, which are much more straightforward and non-controversial than it suggests. There are several distinct agreements—the ones that are arguably relevant were timely produced, and the rest are irrelevant or unnecessary.

Kove owns the patents-in-suit.[1] It purchased them from a sister company called Arctide, LLC ("Arctide"). That agreement is entitled Asset Purchase Agreement and is between Kove IO, Inc. and Arctide, LLC, dated June 5, 2018 ("Kove Purchase Agreement"). *See* Ex. A. The Kove Purchase Agreement was timely produced early during discovery and identified in response to four of AWS's interrogatories.[2]

Arctide's governing document is the 2015 Arctide, LLC Limited Liability Company Agreement ("Arctide LLC Agreement"). Ex. C. The crux of AWS's motion is its assertion that the Arctide LLC Agreement was not produced during discovery. It is wrong. The Arctide LLC Agreement was timely produced on January 22, 2021 and was cited by Kove in response to three separate interrogatories.[3] The Arctide LLC Agreement was amended in March 2023.[4]

---

[1] The patents-in-suit are United States Patent Nos. 7,103,640 (the '640 Patent); 7,233,978 (the '978 Patent); and 7,814,170 (the '170 Patent).

[2] Ex B (11/23/2019 Production Email); Estremera Decl. ¶ 3; Ex. E (2/25/2022 Amended Resp. Rog 13) at 5 (same); Ex. F (5/5/2023 Amended Resp. Rogs 15 and 16) at 4, 5 and 7 (discussing and citing KOV-0009978-89); Ex. G (7/15/2021 Resp. Rog 22) at 12 (citing KOV-0009978-89).

[3] Ex. D (1/22/2021 Production Email); Estremera Decl. ¶ 5; Ex. E (2/25/2022 Amended Resp. Rog 13) at 5 (citing KOV_00061348. i.e. the Arctide LLC Agreement); Ex. F (5/5/2023 Amended Resp. Rogs 15 and 16) at 5 and 7 (each page citing KOV_00061348 i.e. the Arctide LLC Agreement).

[4] Mot. Ex. 6 (the "2023 Amended Arctide LLC Agreement"). The amendment was merely

Again, Kove produced the Kove Purchase Agreement and Arctide LLC Agreement during fact discovery. AWS had these documents when it deposed Dr. John Overton, Kove's CEO, over the course of almost three days in 2023.

Notably, AWS mentions in passing the Court's previous ruling on litigation funding but fails to discuss or address the impact of that decision. Earlier in the case, AWS demanded that Kove produce documents related to litigation financing when Kove had sought to obtain operations funding secured by this lawsuit. The Court granted Kove's Motion for a protective order on those documents, making clear that the documents AWS wanted were not relevant and constituted undiscoverable work product. Dkt. 497 at 21-23 (January 26, 2022 Court Order). In ruling on AWS's argument that the litigation funding documents were relevant to refuting a "David vs. Goliath" theme, the Court ruled as follows: "Candidly, this court questions whether a party's interest in refuting a 'theme'—as opposed to supporting a claim or defense—provides a proper basis for discovery under the Federal Rules of Civil Procedure." *Id.* at 22. Further, in rejecting AWS's argument that the funding documents were relevant to the valuation of the patents, the Court stated: "The court does not find the analogy between patent licensing and litigation funding to be as strong as AWS assumes it is," further explaining:

> At best, a funding agreement embodies the patentholder's and funder's subjective calculations about the value they might prove the patent to possess in the context of litigation. Fundamentally, a litigation funding transaction does not exist in the market for patents or patented technologies; it exists in the market for litigation funding.

*Id.* at 21. The Court also concluded that the documents were work product. *Id.* at 22-23

---

converting Overton's ownership interests in Arctide (a company that does not own the patents) to ownership by an LLC controlled by Overton, a fact that has no bearing on the case. This Amendment was produced on February 8, 2024, in response to AWS's inquiries about the Arctide LLC Agreements. Mot. Ex. 3 at 5. AWS's motion does not identify any extra discovery it is seeking as to this document, which makes sense because it is irrelevant.

3

("Documents that are created for purposes of obtaining litigation funding are self-evidently created 'because of the prospect of litigation.'"). And it rejected AWS's argument that there was a substantial need sufficient to override work product protections for the same reasons it concluded the documents were irrelevant. *Id* at 23-24.[5]

On December 27, 2023, Kove closed a litigation financing transaction. In connection with that transaction, Kove and Arctide entered into a Joint Amendment that amended both the Asset Purchase Agreement and the Arctide LLC Agreement ("Amended Kove Purchase Agreement"). *See* Mot. Ex. 4. Kove received approximately ▓▓▓▓▓ for its operations secured by, *inter alia*, litigation proceeds. *See* Ex. H (2/27/2024 Overton Dep. Tr.) at 1112:14-1114:5. Kove produced this document on February 5, 2024 and in doing so, promptly notified AWS that the amendment was entered into in conjunction with transactions that were secured by litigation proceeds. Mot. Ex. 3 at 7. Kove also stated that it was not producing the underlying documents relating to litigation financing based on applicable law and the Court's prior order. *Id.*

In response, AWS noted that the Amended Kove Purchase Agreement references the Arctide LLC Agreement, and amendment thereto. *Id.* at 6 (2/6/24 Email).[6] AWS therefore asked Kove to produce the Arctide LLC Agreement. *Id.* On February 8, Kove emailed AWS that agreement, along with other documents. *Id*. at 5 (2/8/24 Email). Again, the Arctide LLC Agreement already had been produced during discovery but was re-produced as a courtesy.

AWS then demanded Dr. Overton be made available for an in-person, three-hour deposition on the Amended Kove Purchase Agreement and the Arctide LLC Agreement, as

---

[5] The Court also relied on the fact that the litigation financing at issue then had not been consummated.

[6] The Amended Kove Purchase Agreement states that the date of the Arctide LLC Agreement was March 15, 2015, and that is referenced in AWS's February 6, 2024 email. That date is a typo. The Arctide LLC Agreement was dated June 24, 2015. Ex. C.

4

amended, along with a host of other topics. *Id*. at 4-5 (2/9/24 Email). To be clear, AWS did not request a new Rule 30(b)(6) deposition of Kove or Arctide; it only asked that Dr. Overton testify about these documents. *Id.* Kove responded that it did not believe a deposition was warranted because the LLC agreements do not provide anything new and were barely, if at all, relevant. *Id.* at 4 (2/12/24 Email). Nonetheless, Kove noted that it was not worth burdening the Court with this dispute, and so offered to make Dr. Overton available for a 1-hour deposition over Zoom to answer questions as to the Arctide LLC Agreement (as amended) and the Amended Kove Purchase Agreement. *Id.* The parties ultimately agreed that this would be the scope of the deposition, and that it would be for two hours by Zoom. *Id*. at 3-4.

That deposition took place on February 27, 2024. *See* Ex. H (2/27/2024 Overton Dep. Tr.). Dr. Overton answered questions about the documents in question, to the extent he had personal knowledge about them. He testified, *inter alia*, that he did not know why Dr. Bailey signed various agreements (although Dr. Overton did testify that he and Dr. Bailey discussed the reason for the agreements and that Dr. Bailey "wanted to" enter into the transaction based on those discussions), and that Mr. Dellenbach might have additional details on the percentages of the company owned by various people. *Id.* at 1051:3-1052:1; 1053:5-1056:19. Notably, over the course of his two-hour deposition, Dr. Overton answered numerous questions about the agreements at issue and also gave his understanding of how the agreements were supposed to work (and why).[7] He also testified that Kove received approximately ▮▮▮▮▮▮ in funding for its operations from a ▮▮▮▮▮▮▮▮▮▮▮▮ secured by proceeds received from this case. *Id.* at 1112:14-1114:5. The questions that Dr. Overton could not answer have little or no bearing on the issues to be tried in this case, including questions related to the meaning of certain dollar amounts appearing

---

[7] *See, e.g., id.* at 1036:11-22; 1043:12-1044:15; 1045:1-1046:11; 1047:4-1048:19; 1059:12-1060:18; 1088:19-1091:16; 1097:15-1098:22; 1103:7-22; 1106:4-1112:5.

5

in Schedule A to the agreements and questions about why various individuals signed the agreements.

Next, AWS demanded that Kove make available for depositions both Dr. Bailey (for a second time) and Mr. Dellenbach (despite previously dropping its request to depose him). Mot. Ex. 2 (2/28/24 Email). AWS also demanded that Kove produce documents related to the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* Kove responded as follows:

> We have been more than reasonable in providing AWS with the requested information, even acquiescing in an out-of-time deposition on the eve of trial. The additional information you are seeking is either not relevant to any issue for trial or disproportionate to the needs of the case.
>
> If AWS wants to file a motion, we will respond.

*Id*. The present Motion followed.

### III. ARGUMENT

AWS's Motion requests two things: (1) that Dr. Bailey and Mr. Dellenbach sit for out of time depositions; and (2) that Kove produce documents related to the ▮▮▮▮▮▮▮▮▮.

#### A. More Depositions Are A Waste Of Time.

A request for an out-of-time deposition is governed by Rule 16, which requires AWS to show "good cause" to amend the scheduling order. *See Teague v. Healthcare Dev. Partners, LLC*, 2019 WL 13085010, at *1-*2 (N.D. Ill. Apr. 5, 2019) (discussing Fed. R. Civ. P. 16(b)(4)). In addition, "[w]hen 'the deponent has already been deposed in the case,' a party 'must obtain leave of court' to depose the person again unless the opponent agrees to the new deposition", which may be granted only "to the extent consistent with Rule 26(b)(2)." *Estrada v. Aerovias de Mexico, S.A. de C.V.*, 2023 WL 7016618, at *2 (N.D. Ill. Oct. 25, 2023) (quotation omitted).

This case—which has been pending since 2018—is set for a two-week jury trial beginning in less than a month on April 1, 2024. Time is short, and the parties are deep in preparation. There

6

is no reason to occupy precious time with sideshow depositions on topics that are at best tangentially relevant to the actual issues in the case. The documents relating to the formation of Arctide, a non-party, as a limited liability company have nothing to do with the merits—namely, whether AWS infringed Kove's patents, whether that infringement was willful, whether the patents are valid, and the damages for infringement. AWS already has the information that Drs. Overton and Bailey (and others) would receive money if Kove is successful in this case—not something that is disputed or controversial.

That Dr. Overton was unable to answer every detailed question AWS could muster about irrelevant subjects is neither surprising nor a basis for even more discovery. For example, in the opening page of AWS's brief, it breathlessly claims that Dr. Overton referenced Dr. Bailey for questions he could not answer. Mot. at 1. What question does AWS cite? A question about why Dr. Bailey signed an agreement (and that Dr. Overton attempted to answer). *Id.* n.1.

As to Dr. Bailey, the thrust of AWS's complaint is that the Arctide LLC Agreement from June 2015 had not been produced in discovery, so it did not have a chance to depose Dr. Bailey as to that document. Again, its facts are wrong—the Arctide LLC Agreement from 2015 was produced during discovery on January 22, 2021. If AWS wanted to ask Dr. Bailey about that agreement, it should have asked during discovery.[8] AWS seems concerned that Kove would have Dr. Bailey testify as to the December 2023 Amended Kove Purchase Agreement at trial—that does not justify a fishing expedition of a new deposition, but regardless, Kove will not have him testify to that document (unless of course, AWS opens the door).

AWS contends that it needs Mr. Dellenbach's deposition because he "appears to be" an

---

[8] The 2015 LLC Agreement was produced after Dr. Bailey's deposition, but well within the discovery period. AWS did not ask to depose Dr. Bailey about it during discovery, and instead waited until three years later to make its present request.

7

Arctide shareholder. Mot. at 8. AWS had the Arctide LLC Agreement during discovery when it decided not to depose Mr. Dellenbach. AWS also asserts that Dr. Overton deferred to Mr. Dellenbach on critical details in his recent deposition. Mot. at 8. It cites nothing when it makes that claim (at 8), but says it was "detailed above." Earlier in the brief (at 5), AWS identifies four questions on which Dr. Overton supposedly deferred to Mr. Dellenbach:

> 1. "Is it correct that each initial member [of Arctide] paid for their shares?" *Id.* at n.24.
>
> 2. "Do you know if that was the total value of common units in Arctide as of the date of this Agreement in 2015?" *Id.* at n.25. [9]
>
> 3. "And is that a percentage of ownership?" *Id.* at n.26.
>
> 4. "And is this the amount of ownership in Arctide that you had at this time?" *Id.* at n.27.

Notably and as explained above, Dr. Overton did testify extensively about the ownership of Arctide and, while he expressed concern that he might not have the details correct (because his attorney, Mr. Dellenbach, drafted the agreement), Dr. Overton also went on to testify to his understanding of how the ownership structure and percentages of ownership in Arctide were supposed to work. *See supra* at 5; *see also* Ex. H at 1053:5-1060:18. Moreover, all of these questions relate to the Arctide LLC Agreement from 2015, which had been produced in discovery, and which AWS had when it previously chose not to depose Mr. Dellenbach. It also had that agreement when it deposed Dr. Overton in his 30(b)(6) capacity in May and July of 2023. In all events, it is hard to image topics more tangential to the matters at issue for trial. This information is not relevant to any claim or defense. At most it relates to whether the Kove fact witnesses have

---

[9] Dr. Overton did not defer to Mr. Dellenbach on this particular question; he merely testified that he did not know what the total dollar value in Schedule A to the Arctide LLC Agreement from 2015 meant. Ex. H at 1061:14-21.

8

an ownership stake in the company, which AWS already knows about.[10]

AWS also argues that it needs these two additional depositions because they relate to "ownership." But AWS never explains how the 2023 Amended Kove Purchase Agreement changes anything as to ownership, or even could. It also fails to mention that it conceded that it is not pursuing the defense of standing, which is the requirement of patent ownership (or owning sufficient rights in the patents to satisfy the statutory prerequisites). Ex. I (9/22/2023 AWS Letter).[11]

In sum, AWS has failed to show any legitimate need for additional depositions of Dr. Bailey and Mr. Dellenbach, beyond an eleventh-hour fishing expedition and disruption of the trial preparation process. Its request for these depositions should be denied.

### B. The ▓▓▓▓ Are Irrelevant and Work Product.

AWS seeks an order compelling Kove to produce "agreements with ▓▓▓▓ relating to the asserted patents and/or this case." Mot at 11. The only such agreements are for litigation financing—i.e., funding secured by this case. As Dr. Overton already testified, Kove received approximately ▓▓▓▓ in operations capital (largely for marketing of unrelated products) secured by litigation proceeds, if any are received. Ex. H at 1112:14-1114:5.[12]

As a threshold matter, AWS fails to grapple with the fact that this Court already issued a protective order on the discovery of litigation funding documents, Dkt. 497 at 18-24, as discussed *supra*. At issue at the time were documents relating to Kove's efforts to obtain litigation financing

---

[10] Mr. Dellenbach is not a fact witness in the upcoming trial.
[11] AWS's letter is qualified "based on the facts known to date," but there are no facts related to patent ownership that have changed.
[12] In its email of February 5, 2024, Kove disclosed to AWS that Kove had recently received "litigation financing, i.e., financing secured by litigation proceeds." Mot. Ex. 3. It forthrightly told AWS that it was not producing the underlying documents related to litigation financing. *Id.* AWS did not even ask for a deposition on those documents, and waited the better part of a month to seek an order compelling their production.

for its operations. Those potential deals never occurred. *Id.* at 19. The Court expressed deep skepticism that such documents are relevant, and readily concluded that they are work product. AWS fails to meaningfully address that Order or provide reasons why it should not govern this dispute. The agreements previously at issue were not entered—but that is a distinction without a difference. That a litigation financing deal was closed makes the documents no more relevant and they remain work product. And AWS fails to even argue that production of the ▮▮▮▮ is "substantially justified" (as would be required) nor explain how compelling their production could meet this standard in light of the Court's prior order concluding that there is no such justification. Dkt. 497 at 22-24.[13]

Courts across the country agree with this Court that litigation funding documents are irrelevant. *See, e.g.*, *Art Akiane LLC. v. Art & Soulworks LLC*, 2020 WL 5593242, *6 (N.D. Ill. Sept. 18, 2020) (rejecting request for litigation funding documents, finding them "irrelevant – and potentially harmful to the party obtaining litigation funding – without legitimately advancing the purposes of litigation or of defense one whit.") (internal quotations omitted); *Fulton v. Foley*, 2019 WL 6609298, *2 (N.D. Ill. Dec. 5, 2019) (denying discovery relating to "communications and information" about to funding as irrelevant and noting "[a]s a general matter, courts across the country that have addressed the issue have held that litigation funding information is generally irrelevant to proving the claims and defenses in a case.") (collecting cases); *Miller UK Ltd. v.*

---

[13] AWS notes that, in connection with the prior protective order, Kove stated that it was not seeking a protective order with respect to "Kove's efforts to seek investments for its operating business, including non-privileged versions of its Investment Memorandum." Mot. at 10 (quotation and citation omitted). Kove did, in fact, produce the Investment Memorandum, and did not withhold information related to potential investments in Kove. But this is different—the ▮▮▮▮ is not an investment in Kove, it is litigation financing secured by this case. Contrary to AWS's assertion, these documents are not the type of agreements that were "carved out" when Kove previous sought a protective order, Mot. at 10—they are exactly the agreements that the Court granted a protective order on.

10

*Caterpillar, Inc.*, 17 F. Supp. 3d 711, 742 (N.D. Ill. 2014) (request for details of agreement with funders or how much funders receive if plaintiff wins the case denied as irrelevant); *Benitez v. Lopez*, 2019 WL 1578167, at *1 (E.D.N.Y. Mar. 14, 2019); *Space Data Corp. v. Google LLC*, 2018 WL 3054797, at *1 (N.D. Cal. June 11, 2018).

AWS discusses two reasons it contends the ▮▮▮▮ are relevant. First, it argues that the ▮▮▮▮ is relevant to the "bona fides of [Kove's] case and business." Mot at 9. It is unclear what this means, but Kove has no intention of mentioning the ▮▮▮▮ unless AWS opens the door, so that is a non-issue. Kove never stated or even suggested that it was planning to proffer testimony about agreements and the ▮▮▮▮—indeed, Kove was absolutely clear that the agreement and relationship are irrelevant.[14]

Second, AWS contends that the ▮▮▮▮ are necessary to rebut a theme that Kove is a small company and AWS is a large company. For starters, as this Court already stated: "this court questions whether a party's interest in refuting a 'theme'—as opposed to supporting a claim or defense—provides a proper basis for discovery under the Federal Rules of Civil Procedure." Dkt. 497 at 22. Regardless, AWS already has the necessary facts—Kove received almost ▮▮▮▮ in operation funding. It is absurd to suggest that documentation of ▮▮▮▮ in funding can somehow create parity with AWS's $80 billion in annual revenue. It is obvious without referencing any numbers that Kove is a small company and AWS is one of the biggest companies in the world.

In a single sentence without explanation, AWS also claims the ▮▮▮▮ are relevant to the value of the patents, as well as to Kove's statements about the patents and the case. Mot at 11. These arguments should be ignored as being undeveloped. *See Shipley v. Chicago Bd. of*

---

[14] If what AWS means by this opaque sentence is that it somehow intends to attack Kove for having received financing, that is even more inappropriate and irrelevant.

11

*Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived."). Regardless, this Court already pointed out that evidence relating to valuation of a case is not relevant and is work product. Dkt. 497 at 21-24. And AWS did not even request documents specifically relating to the patents and case valuation; all that it requested was the ███████, which AWS already knows reflect the extension by ████████████ in operational financing secured by the litigation proceeds, if any. Dr. Overton even testified about how ██ will be paid in the event that the litigation is successful. None of that is relevant, and there is nothing more to know.

Importantly, heading down the road AWS requests would open a Pandora's box, creating an inappropriate and unseemly sideshow at trial. No doubt ██ placed great value on this case, since it serves as ███████████ collateral. And it is safe to assume that that valuation is based on a detailed review of the litigation record, including this Court's rulings. If AWS opened that door, all of these matters would be fair game for trial and would need in fairness to be presented to the jury. And for what purpose—to prove how a third-party valued the claims in this case? That is completely irrelevant to any claims or defenses, as this Court already determined.

Further, even if the ███████ were somehow relevant (they are not), both this Court and other courts across the country have concluded that litigation funding documents are undiscoverable work product. *See Viamedia, Inc. v. Comcast Corp.*, 2017 WL 2834535, *1 (N.D. Ill. June 30, 2017); *United States v. Homeward Residential, Inc.*, 2016 WL 1031154, at *6 (E.D. Tex. Mar. 15, 2016); *Mondis Tech., Ltd. v. LG Elecs., Inc.*, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011); *Doe v. Soc'y of Missionaries of Sacred Heart*, 2014 WL 1715376, at *3 (N.D. Ill. May 1, 2014). AWS fails to cite a case—or even make an argument—for the proposition that litigation funding documents are not work product.

12

The two out-of-district cases AWS cites are both outliers, and do not support overcoming the Court's previous ruling that litigation funding materials are not discoverable.[15] It is true that the court in *Continental Circuits LLC v. Intel Corp.,* 435 F. Supp. 3d 1014, 1019 (D. Ariz. Jan 27, 2020) found litigation funding agreements may meet the low bar of relevance for certain issues (contrary to how this Court already ruled). However, AWS tellingly omits that the court ***did not order their production*** because it found the litigation funding documents were protected work product. *Id.* at 1021-23 (analyzing work product doctrine and finding it applied to litigation funding documents). That AWS's best case was already considered and rejected by the Court and did not even come out the way it asks the Court to rule here is telling.

AWS's only other case is *Impact Engine, Inc. v. Google LLC*, 2020 U.S. Dist. LEXIS 145636, *4 (S.D. Cal. Aug. 12, 2020), where the court found litigation funding documents were discoverable early in the case, in part because the plaintiff conceded that it had a document that included a "discussion of the case, including assessments of . . . Impact Engine's positions on liability, validity, and damages." The court did not rule on whether or not those documents were work product or admissible at trial, and did not provide any meaningful reasoning on why it found them relevant. Tellingly, despite AWS's previous citation of this case three times in opposing Kove's motion for a protective order (Dkt. 425 at 1, 8, 10), the Court did not find it persuasive then, and should not reconsider that ruling now. Dkt. 497 at 21 (Court stating: "AWS has pointed to a handful of cases that have found certain litigation funding information to be relevant in patent infringement cases, but most of these cases are either thinly reasoned or factually inapposite.").

    C.    **AWS's Motion Demonstrates Why A Thorough Exhibit List Is Necessary.**

---

[15] Indeed, AWS already cited these cases the last time it sought litigation funding discovery and the Court rejected it. *See* Dkt. 425 (AWS Opp. to Kove Motion for Protective Order) at 1, 8, 10 (citing both *Impact Engine* and *Continental Circuits*).

13

AWS for some reason feels that it is important to mention the 1,591 exhibits on Kove's exhibit list. Mot at 2. That has nothing to do with its Motion, and presumably is just an effort to throw stones, given the Court's request that the parties streamline their exhibit lists to the extent possible. Because AWS raised it, Kove responds briefly. AWS's motion underscores why a thorough exhibit list is necessary.

In the proposed Pretrial Order, Kove explained in great detail why it has listed this number of exhibits. Dkt. 765 at 10-13. It worked diligently to cull this list from the approximately 38,000 documents AWS produced in this case. It explained that most either come from expert reports or are there (as required) to form the basis for Rule 1006 exhibits. *Id.* at 10-11. The vast majority of the documents could be necessary to meet Kove's burden of proof (depending on what AWS contests at trial), and Kove cannot meaningfully cut additional exhibits without jeopardizing its ability to meet that burden. *Id.* at 11-12.

It is true, of course, that Kove cannot enter so many documents into evidence. But that is only part of the picture. First, to create Rule 1006 summary exhibits, the underlying documents are required to be on the exhibit list. *Id.* at 11.

Second, the presence of these documents on the exhibit list will actually serve to streamline the trial. If a document is missing, AWS is all the more likely to target the missing information as unproven, even if an expert testifies to it orally (e.g., "they ask you to take their word for it, but you haven't seen a document saying that…"). The presence of the underlying documents on the exhibit list cuts off this type of unfounded attack—there is no purpose in contesting a fact that can be easily proven with an available document. It is the presence of the documents on the exhibit list that keep AWS from making spurious arguments or insisting that Kove document obvious

points.[16] AWS persists in contesting essentially all facts, even if there is no basis to do so, requiring Kove to have documents available to meet its burden. A version of this problem is occurring right now in AWS's Motion. It previously represented that it will not contest ownership of the patents (standing). But now its motion indicates that it might contest it. If Kove had cut the documents on its list relating to ownership, it would be vulnerable to such attacks, even though there is no basis in fact for them.

Finally, the parties have worked out an agreed procedure to handle exhibits to minimize the burden on the Court. *Id.* at 6-10. They will identify to each other exhibits to be used with a particular witness on direct well ahead of time, and then work through any objections. If they are unable to resolve those objections, they will present them to the Court well in advance of the witness testifying. *Id.* This should reduce the number of objections to a bare minimum.

Kove cannot further reduce its exhibit list meaningfully without affecting its substantial rights. The list will, however, streamline the trial and impose no additional burden on the Court.

## IV. CONCLUSION

Accordingly, Kove respectfully requests that the Court deny AWS's Motion.

---

[16] Indeed, Kove asked AWS whether it would refrain from making such arguments if Kove trimmed its exhibit list. AWS refused. In other words, it demands that Kove cut documents from the list, but reserves the right to argue to the jury and Court that Kove has failed to meet its burden based on those missing documents.

Dated: March 4, 2024

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 560-3501

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com
Philip Eklem (*pro hac vice*)
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Amy L. Ruhland (*pro hac vice*)
aruhland@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
901 S. Mopac Expressway, Building 1, Suite 300
Austin, TX 78746
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

Respectfully submitted,

*/s/ Courtland L. Reichman*

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5037

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard (*pro hac vice*)
sballard@reichmanjorgensen.com
Jennifer P. Estremera (pro hac vice)
jestremera@reichmanjorgensen.com Gina H. Cremona (pro hac vice)
gcremona@reichmanjorgensen.com
Navid Bayar (pro hac vice)
nbayar@reichmanjorgensen.com
Savannah Carnes *(pro hac vice*)
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

***ATTORNEYS FOR PLAINTIFF KOVE IO, INC.***

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 4th day of March, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                */s/ Courtland L. Reichman*
                Courtland L. Reichman