**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KOVE IO, INC., | |
| *Plaintiff,* | Case No. 1:18-cv-8175 |
| v. | █████████████ |
| AMAZON WEB SERVICES, INC., | |
| *Defendant.* | |

## AMAZON'S MOTIONS IN LIMINE

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman *(pro hac vice)*
*jeffrey.saltman@fischllp.com*
Lisa N. Phillips *(pro hac vice)*
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW Suite 400
Washington, D.C. 20015
202.362.3500

Ken K. Fung *(pro hac vice)*
*ken.fung@fischllp.com*
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
650.362.8500

*Attorneys for Amazon Web Services, Inc.*

# TABLE OF CONTENTS

MOTION IN LIMINE NO. 1....................................................................................................... 1
*Use of Pejorative Language, Such as "Stealing," "Copying," "Pirating,"*
*"Trespassing," or "Misappropriating" in Relation to Infringement*

MOTION IN LIMINE NO. 2....................................................................................................... 2
*Disparaging a Party as a "Bully," Harassing," "Greedy," "Corrupt," or*
*"Dishonest"*

MOTION IN LIMINE NO. 3....................................................................................................... 3
*Presence of Witnesses and Disparaging Deposition Testimony as Lesser than*
*Live Testimony*

MOTION IN LIMINE NO. 4....................................................................................................... 4
*References to Discovery Disputes, Motions, and Rulings, or the Sufficiency of a*
*Party's Production of Documents or Other Information*

MOTION IN LIMINE NO. 5....................................................................................................... 6
*References to Post-Grant Proceedings in the Patent Office*

MOTION IN LIMINE NO. 6..................................................................................................... 11
*References to Amazon's or AWS's Size or Wealth or Comparing the Size and*
*Wealth of the Parties, e.g. David and Goliath Themed References*

MOTION IN LIMINE NO. 7..................................................................................................... 14
*Overall Revenue and Profits for the Accused Products*

MOTION IN LIMINE NO. 8..................................................................................................... 15
*Any Reference to Amazon's Statements About the Litigation in SEC Filings*

MOTION IN LIMINE NO. 9..................................................................................................... 16
*References to Witnesses' Compensation and Stock Options*

MOTION IN LIMINE NO. 10................................................................................................... 19
*References to Other Litigation Involving Either Party*

# TABLE OF AUTHORITIES

**Cases**

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
  No. 14-cv-6544, 2019 WL 2330855 (E.D.N.Y. May 31, 2019) ........................................ 12, 13

*Biomerieux, S.A. v. Hologic, Inc.*,
  No. 18-cv-21, 2020 WL 583917 (D. Del. Feb. 6, 2020) ........................................................ 16

*Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*,
  No. 15-cv-152, 2018 WL 6629705 (D. Del. Oct. 12, 2018) .................................................... 10

*Browne v. Waldo*,
  No. 2:20-cv-196, 2024 WL 446451 (N.D. Ind. Feb. 6, 2024) ................................................ 19

*Contentguard Holdings, Inc. v. Amazon.com, Inc.*,
  No. 2:13-cv-1112, 2015 WL 12915561 (E.D. Tex. Aug. 3, 2015) ............................................. 5

*Deflecto, LLC v. Dundas *Jafine Inc.*,
  No. 13-cv-116, 2015 WL 9413148 (W.D. Mo. Dec. 22, 2015) .................................................. 1

*Empress Casino Joliet Corp. v. Johnston*,
  No. 09-cv-3585, 2014 WL 6735529 (N.D. Ill. Nov. 28, 2014) ............................................... 16

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  No. 13-cv-3999, 2015 WL 4129193 (N.D. Cal. July 8, 2015) ................................................ 17

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
  No. 2:16-cv-134, 2017 WL 2844646 (E.D. Tex. May 19, 2017). ........................................... 17

*Hillman Grp., Inc. v. KeyMe, LLC*,
  No. 2:19-cv-209, 2021 WL 1248180 (E.D. Tex. Mar. 30, 2021) .................................... passim

*Intell. Ventures II LLC v. FedEx Corp.*,
  No. 2:16-cv-980, 2018 WL 10638138 (E.D. Tex. April 26, 2018) .................................... 1, 13

*Isbell v. John Crane, Inc.*,
  74 F. Supp. 3d 893 (N.D. Ill. 2014) ................................................................................ 12

*Kinsey v. Cendant Corp.*,
  588 F. Supp. 2d 516 (S.D.N.Y. 2008) ................................................................................ 18

*Koufakis v. Carvel*,
  425 F.2d 892 (2d Cir.1970) ................................................................................................ 18

*L–3 Commc'ns Corp. v. OSI Sys., Inc.*,
  No. 02-cv-9144, 2006 WL 988143 (S.D.N.Y. Apr. 13, 2006) ............................................... 18

*Luv n' care v. Laurain*,
    No. 3:16-cv-777, 2021 WL 7907283 (W.D. La. Mar. 29, 2021) ............................................ 13

*MFormation Techs. v. RIM Ltd.*,
    No. 08-cv-4990, Dkt. 903 (N.D. Cal. June 7, 2012) ................................................................ 4, 5

*Microsoft Corp. v. AT & T Corp.*,
    550 U.S. 437 (2007) .................................................................................................................. 15

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
    No. 14-cv-1296, 2017 WL 4570787 (E.D. Wis. Oct. 12, 2017) ............................................ 8, 9

*Netairus Techs., LLC v. Apple Inc.*,
    No. 10-cv-3257, Dkt. 523 (C.D. Cal. Oct. 21, 2013) ................................................................. 5

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*,
    No. 15-cv-1067, 2019 WL 5206273 (N.D. Ill. Mar. 13, 2019) .................................................. 9

*Personalized Media Commc'ns, LLC v. Zynga, Inc.*,
    No. 2:12-cv-68, 2013 WL 10253110 (E.D. Tex. Oct. 30, 2013) ................................................ 9

*Personalized User Model, L.L.P. v. Google Inc.*,
    No. 09-cv-525, 2014 WL 807736 (D. Del. Feb. 27, 2014) ......................................................... 9

*Silicon Knights, Inc. v. Epic Games, Inc.*,
    No. 5:07-cv-275, 2011 WL 5439156 (E.D.N.C. Nov. 8, 2011) .................................................. 5

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) .............................................................................................................. 12, 14

*Thompson v. City of Chicago*,
    722 F.3d 963 (7th Cir. 2013) ................................................................................................... 15

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ................................................................................................ 15

*United States v. Bases*,
    No. 18-cr-48, 2021 WL 6621284 (N.D. Ill. July 15, 2021) ........................................................ 3

*United States v. Socony-Vacuum Oil Co.*,
    310 U.S. 150 (1940) .................................................................................................................. 18

*United States v. Tsarnaev*,
    595 U.S. 302 (2022) .................................................................................................................. 15

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    No. 12-cv-329, 2014 WL 8096334 (C.D. Cal. Apr. 21, 2014) ................................................... 1

*Vocalife LLC v. Amazon.com, Inc. and Amazon.com LLC*,
   No. 2021-1937, 2022 WL 2986786 (Fed. Cir. July 28, 2022)................................. 20

*Vocalife LLC v. Amazon.com, Inc.*,
   2:19-cv-123, Dkt. 381 (E.D. Tex. Aug. 9, 2023) ..................................................... 20

*VSI Holdings, Inc. v. SPX Corp.*,
   No. 03-cv-70225, 2005 WL 5980804 (E.D. Mich. Apr. 12, 2005) ......................... 18

*Wisconsin Alumni Rsch. Found. v. Apple, Inc.*,
   135 F. Supp. 3d 865 (W.D. Wis. 2015) .................................................................... 5

**Rules**

Fed. R. Evid. 401 ..................................................................................................... 5

Fed. R. Evid. 402 ............................................................................................... passim

Fed. R. Evid. 403 ............................................................................................... passim

<u>**MOTION IN LIMINE NO. 1**</u>
Use of Pejorative Language, Such as "Stealing," "Copying," "Pirating," "Trespassing,"
or "Misappropriating" in Relation to Infringement
*Fed. R. Evid. 402, 403*

The Court should exclude any testimony, evidence, or arguments containing pejorative and emotionally charged terms for alleged patent infringement, including "stealing," "copying," "pirating," "trespassing," or "misappropriating." These terms refer to criminal or other civil offenses, which have their own elements and law—e.g., 18 U.S.C. Ch. 31 (theft), 10 U.S.C. § 921 Art. 121 (larceny and wrongful appropriation), and 25 C.F.R. § 11.411 (criminal trespass). They're irrelevant to patent infringement and the elements for proving it. Permitting their use would thus be wrong under the law, and also prejudicial and confusing for the jurors.

As a result, courts routinely preclude such language in patent infringement cases. For example, the Central District of California has held that "[t]here is no probative value in the use of a term with negative connotations" and "the use of … pejorative terms" is "unduly prejudicial under FRE 403."[1] Hence, that court granted a motion in limine to "[e]xclude references to 'knockoffs,' 'predatory,' and the use of similarly-pejorative and emotionally-charged terms."[2] And other courts have likewise precluded parties from "characteriz[ing each] other in pejorative terms, such as 'thief,' 'pirate,' 'stealing,' 'ripped off,' or 'trespassing.'"[3] Indeed, Judge Gilstrap in the Eastern District of Texas has a standing order precluding patent litigants "from introducing

---

[1] *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. 12-cv-329, 2014 WL 8096334, at *8 (C.D. Cal. Apr. 21, 2014).

[2] *Id.* at *7.

[3] *Hillman Grp., Inc. v. KeyMe, LLC*, No. 2:19-cv-209, 2021 WL 1248180, at *7 (E.D. Tex. Mar. 30, 2021); *see also Intell. Ventures II LLC v. FedEx Corp.*, No. 2:16-cv-980, 2018 WL 10638138, at *6 (E.D. Tex. April 26, 2018) (excluding "any derogatory or pejorative terms," including "stealing," "copying," "pirating," "or any other charged words suggesting an improper taking from [plaintiff]"); *Deflecto, LLC v. Dundas *Jafine Inc.*, No. 13-cv-116, 2015 WL 9413148, at *1 (W.D. Mo. Dec. 22, 2015) (precluding "all lawyers and witnesses … from using inflammatory, pejorative, or loaded words such as 'copycat,' 'knockoff,' 'ripped off,' and 'stole'").

evidence, testimony, or argument that characterizes any other person or entity's actions as 'stealing,' 'copying,' 'misappropriating,' 'pirating,' 'trespassing,' or any similar terms."[4] And in the Western District of Texas, Judge Albright has a similar standing order for patent infringement trials there.[5]

This in limine order is necessary here because the record indicates that Kove is likely to use such pejorative and emotionally charged language. Kove repeatedly asked AWS witnesses at deposition whether theft and/or patent infringement were morally wrong. For example, these questions included whether it's "wrong to steal," whether legality is "the only reason why it's wrong to use someone's invention without permission," and "[d]o you think it's wrong to steal intellectual property?"[6] Thus, this Court should preclude Kove from using such pejorative language at trial as irrelevant under Rule 402 and prejudicial under Rule 403.

## MOTION IN LIMINE NO. 2
### Disparaging a Party as a "Bully," Harassing," "Greedy," "Corrupt," or "Dishonest"
#### *Fed. R. Evid. 402, 403*

The Court should exclude any testimony, evidence, or arguments disparaging a party as a "bully," "harassing," "greedy," "corrupt," or "dishonest." Such name-calling language lacks probative value and is likely to prejudice the jury. In conferring before this motion, Kove agreed to not call AWS "evil" or a "monopolist," but wouldn't agree to refrain from calling AWS these other terms. This indicates that Kove is likely to use such language to disparage AWS at trial.

Courts regularly prohibit witnesses and attorneys from using such name-calling. For

---

[4] Ex. 1 at 2 (Court MIL No. 9), available at <https://www.txed.uscourts.gov/sites/default/files/judgeFiles/12.14.22%20Standing%20Order%20on%20Motions%20in%20Limine.pdf>.

[5] Ex. 2 at 22 (Court MIL No. 9), available at <https://www.txwd.uscourts.gov/wp-content/uploads/2023/01/Standing-Order-Governing-Proceedings-Patent-Cases-01232024.pdf>.

[6] Ex. 3 at 47:11–22, 48:18–18; Ex. 4 at 292:9–10.

example, in *Hillman Group v. KeyMe, LLC*, the Eastern District of Texas ordered that "[n]o party shall be characterized as a 'bully,' 'intimidating,' 'brow-beating,' or anything of a similar nature."[7] And in *United States v. Bases*, this Court precluded an expert from "characteriz[ing] algorithmic traders as 'preying' upon manual traders or us[ing] similarly pejorative language."[8] And here, Kove has used such language to describe AWS and its employees. For example, Kove's CEO, Dr. John Overton, testified that "some of the individuals" who work for AWS are "harassing."[9] Harassment and other accusations of improper business practices aren't relevant to patent infringement, and instead relate to other criminal or civil offenses—e.g., 25 C.F.R. § 11.443 (harassment) and 18 U.S.C. §§ 1961–68 (RICO). Those offenses and their legal standards aren't at issue in this case, and it would be prejudicial to require AWS to devote its case time to discussions of them. Thus, this Court should preclude Kove from using pejorative language, including words like "bully," "harassing," "greedy," "corrupt," or "dishonest," to disparage AWS at trial.

## MOTION IN LIMINE NO. 3

Presence of Witnesses and Disparaging Deposition Testimony as Lesser than Live Testimony
*Fed. R. Evid. 402, 403*

The parties agreed in their proposed jury instructions that deposition testimony should be given the same consideration as live trial testimony.[10] And AWS produced all employee witnesses (and multiple former employee witnesses) that Kove asked to depose for deposition testimony

---

[7] 2021 WL 1248180, at *6.

[8] No. 18-cr-48, 2021 WL 6621284, at *1 (N.D. Ill. July 15, 2021).

[9] Ex. 5 at 344:15–345:2.

[10] Dkt. 765-13 (Final Proposed Jury Instructions) at 40 ("During the trial, certain testimony will be presented to you by the reading of deposition testimony and/or deposition video. You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court."). This mirrors Federal Civil Jury Instruction of the Seventh Circuit 1.05.

during discovery. But Kove wouldn't agree to mutually refrain from criticizing the opposing party for not presenting witnesses for live testimony at trial.[11] Such "empty chair" arguments lack probative value and are prejudicial, and have been excluded on that basis by other courts.[12] Exclusion of them would be particularly appropriate here, since there's a time limit for each side, and it wouldn't be possible for AWS to present all 22 current and former employees that Kove deposed for live testimony. Thus, under Rules 402 and 403, the Court should preclude Kove from referencing the physical presence or absence of corporate employees or witnesses at trial.

## MOTION IN LIMINE NO. 4
References to Discovery Disputes, Motions, and Rulings, or the Sufficiency of
a Party's Production of Documents or Other Information
*Fed. R. Evid. 402, 403*

Throughout this case, Kove has argued that AWS's production of documents and other discovery has been insufficient.[13] In the parties' discussions before this motion, Kove indicated that it intends to repeat those arguments to the jury.[14] This Court should prohibit Kove from doing so under Rule 402 and 403.

Any remaining disputes concerning the sufficiency of AWS's production of documents and other discovery have no bearing on the issues in this case, such as infringement, any related damages, and validity. As the Northern District of California stated in *MFormation v. RIM*: "Evidence of the parties' discovery disputes are not relevant to the questions of patent validity and

---

[11] *See* Ex. 6.

[12] *See, e.g.*, *Hillman*, 2021 WL 1248180, at *6 ("Neither party will be permitted to make empty chair arguments. This includes both persons who do not appear at trial or who … testify by deposition.").

[13] *See, e.g.*, Dkt. 437 at 1 (arguing AWS "categorically refused" to produce relevant discovery); *id.* (arguing AWS "obfuscated and dragged its feet"); Dkt. 601 at 3 (arguing AWS "obfuscated and resisted" discovery); *id.* at 5 (arguing AWS delayed and "stonewall[ed]" discovery); Dkt. 762-12 (Bergman Rep.) at ¶ 166 ("Because AWS did not provide ███████████ for the Accused Regions ███ █ …"); *see also id.* at ¶¶ 169, 220, 223 (similar).

[14] *See* Ex. 6. Although Kove agreed not to reference motions or rulings, Kove wouldn't agree not to reference the sufficiency of AWS's production generally.

infringement, and thus should not be presented to the jury."[15] Thus, courts routinely grant motions in limine to exclude references to discovery disputes, including complaints about the sufficiency of one party's production.[16] Here, too, evidence or argument concerning any documents or discovery AWS allegedly failed to produce is irrelevant and should be excluded.[17]

Moreover, rehashing discovery disputes at trial would be confusing to the jury and unduly prejudicial.[18] In this case, as the Court is aware, there have been many discovery disputes between the parties. Referencing those disputes, this Court's rulings, or the sufficiency of either side's production may give the jury the mistaken impression that one side has attempted to gain an unfair advantage. Such references would also lead to inefficiencies, as additional trial testimony and evidence would be required to explain the parties' discovery procedures and conduct. And those concerns are particularly strong here, given the long history of this case, the number of discovery disputes, and the sheer volume of discovery that AWS produced.[19] Indeed, it would be unfair and prejudicial to permit Kove to insinuate that AWS's production was inadequate, in circumstances

---

[15] No. 08-cv-4990, Dkt. 903, at *4 (N.D. Cal. June 7, 2012).

[16] *See, e.g., id.; Contentguard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-cv-1112, 2015 WL 12915561, at *3 (E.D. Tex. Aug. 3, 2015) ("The parties shall not introduce any argument, evidence, testimony, insinuation, reference, or assertion concerning the sufficiency of a parties' production of documents or information, or any other discovery disputes."); *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-cv-275, 2011 WL 5439156, at *5–6 (E.D.N.C. Nov. 8, 2011) (ordering that "[b]oth parties are precluded from referencing any order setting forth the court's discovery rulings or the sufficiency of a discovery response," where plaintiff had previously on "rulings," but had otherwise opposed motion); *Wisconsin Alumni Rsch. Found. v. Apple, Inc.*, 135 F. Supp. 3d 865, 881 (W.D. Wis. 2015) (excluding "any reference to discovery disputes or the sufficiency of either party's discovery responses"); *Netairus Techs., LLC v. Apple Inc.*, No. 10-cv-3257, Dkt. 523 (C.D. Cal. Oct. 21, 2013) (similar).

[17] Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

[18] *Cf.* Dkt. 784-13 (agreed preliminary jury instructions 2.4 and 2.5, informing jury not to treat rulings on objections as evidence or infer from those rulings how to decide case).

[19] Indeed, AWS has produced ▇▇▇▇▇▇▇▇▇▇ AWS witnesses for deposition and hundreds of thousands of documents. That includes ▇▇▇▇▇ that AWS produced in response to ever-changing Kove requests, as detailed in AWS's opposition to Kove's spoliation motion. *See* Dkt. 760 at 5; *see also* Dkt. 760-6 (AWS's 19-page response to Interrogatory 14, detailing production of metrics documents).

where it would be impossible for AWS to effectively rebut that by detailing what it produced in response to Kove's numerous demands, when, and why. And attempting to detail AWS's discovery efforts would not only distract from the substantive issues in this case, it would likely make AWS appear overly defensive or give the jury the incorrect impression that AWS's production of hundreds of thousands of documents in response to hundreds of Kove requests means that Kove's allegations must have merit.

Accordingly, this Court should exclude any testimony, evidence, or argument referring to discovery disputes, this Court's rulings on them, or the sufficiency of either side's production of documents or other discovery under Rules 402 and 403.

## MOTION IN LIMINE NO. 5
References to Post-Grant Proceedings in the Patent Office
*Fed. R. Evid. 402, 403*

The Court should also exclude testimony, evidence, or arguments referring to any *ex parte* reexamination (EPR) or *inter partes* review (IPR) of a patent-in-suit or the outcome of those proceedings. As explained below, references to those proceedings would have little, if any, probative value, but would carry a high risk of jury confusion and undue prejudice.

### BACKGROUND

As the Court knows from prior briefing, AWS challenged the asserted claims' validity in the Patent Office, including via three EPR requests that AWS filed in November 2021.[20] Those EPR requests eventually resulted in the Patent Office's invalidation of two independent claims of the '978 patent (1 and 31) that Kove had been but is no longer asserting in this matter.[21] As this Court found, Kove also made express disclaimers limiting all remaining asserted claims to location

---

[20] *E.g.*, Dkt. 686 at 4–6; Dkt. 539 at 2–4; Dkt. 503 at 2.

[21] *E.g.*, Dkt. 539 at 3–4 (citing Dkt. 532-2).

servers in a non-hierarchical configuration, to secure the allowance of those claims over the cited prior art that the Patent Office didn't consider during the original prosecutions.[22]

Amazon thereafter filed follow-up requests, which the Patent Office also granted, resulting in three EPR proceedings that remain ongoing. Specifically:

**Reexamination No. 90/019,165**: On March 29, 2023, the Patent Office granted AWS's request for EPR of claims 1, 2, 6, 8, 9, 12, and 15 of the '170 patent (i.e., the six asserted '170 claims, plus unasserted claim 9).[23] The Patent Office hasn't issued any final rulings, and this EPR challenging the validity asserted '170 claims remains ongoing.

**Reexamination No. 90/019,166**: On April 4, 2023, the Patent Office also granted AWS's request for EPR of claims 17, 18, 24 of the '640 patent (i.e., the three asserted '640 claims).[24] The Patent Office hasn't issued any final rulings, and this EPR challenging all asserted '640 claims remains ongoing.

**Reexamination No. 90/019,162**: On May 16, 2023, the Patent Office issued a decision that granted AWS's request for EPR of claim 6 of the '978 patent, but not claims 3, 10, and 14 of the that patent.[25] On June 5, 2023, AWS filed a petition seeking director review of the portion of the decision refusing to grant EPR of claims 3, 10, and 14. The PTO Director hasn't ruled on that petition, and this EPR challenging asserted '978 claim 6 remains ongoing.

In sum, 10 of 17 asserted claims are currently under reexamination, including all '170 and '640 claims. And three more asserted claims will be, if the PTO Director grants AWS's petition in

---

[22] Dkt. 739 at 19; *see also id*. at 18 (rejecting Kove attempts to carve out certain '978 claims).

[23] Dkt. 612-1 (3/29/23 decision, attached to Notice of Related Proceedings).

[24] Dkt. 618-1 (4/4/23 decision, attached to Notice of Related Proceedings).

[25] Dkt. 648-1 (5/16/23 decision, attached Notice of Related Proceedings).

the '162 Reexamination No. 90/019,162.[26]

ARGUMENT

Kove has repeatedly argued that the Patent Office "confirmed the patentability" of the asserted claims.[27] But 10 (and possibly 13) asserted claims remain under reexamination in three ongoing EPRs, as detailed above. And even in the concluded EPRs, Patent Office only confirmed Kove's current roster of asserted claims over the prior-art grounds that AWS cited in the requests that led to those proceedings.[28] All ongoing EPRs rely on prior art grounds with additional references and combinations, as was required due to Kove's disclaimers altering the scope of the asserted claims in the earlier EPRs, among other reasons.[29] Thus, the Patent Office has never "confirmed the patentability" of the asserted claims over those references and combinations. Nor has the Patent Office or any other tribunal rejected the validity defenses, based on additional prior art, that AWS will raise at trial.[30] Despite that, Kove hasn't agreed not to reference the EPRs or the results of the EPRs at trial.[31]

Testimony or argument referring to post-grant proceedings, including the EPRs and the results of the proceedings, would be highly prejudicial and confusing to the jury. As the Eastern District of Wisconsin explained in *Milwaukee Electric Tool Corp. v. Snap-On Inc.*, "admitting evidence of … IPRs is likely to mislead the jury into believing that because the patents-in-suit

---

[26] *See also* Dkt. 686 at 6, n.22 (noting status of ongoing EPR proceedings).

[27] Dkt. 699 at 29, 30; *see also*, *e.g.*, *id.* at 32 (similar), 35 (stating that Kove "thank[ed] the Office for confirming patentability of [four '978] claims"); Dkt. 700-57 at 1 (Dr. Goodrich stating that "the patentability of claims 18-22 and 24-29 have been confirmed").

[28] As noted, the PTO invalidated '978 independent claims 1 and 31, which Kove previously asserted here.

[29] *See* Dkt. 612-1, 618-2, 648-1 (decisions granting 2023 EPR requests).

[30] *See generally* Dkt. 687 at ¶¶ 21–26.

[31] *See* Ex. 6.

8

have survived many attacks, they must be valid against the present attacks."[32] Here, given Kove's previous arguments, permitting Kove to reference post-grant proceedings is similarly likely to mislead the jury into believing that Kove's patents must be valid.

Indeed, courts routinely exclude references to post-grant proceedings in the Patent Office, particularly where, as here, the proceedings are ongoing or "covered different prior art than will be used at trial."[33] For example, in *Personalized User Model, L.L.P. v. Google Inc.*, the District of Delaware granted Google's motion to bar "any mention of, argument, or evidence regarding … reexamination proceedings."[34] The court explained that this was due to the "non-finality of the reexamination proceedings" and "the probative value of the reexamination evidence [being] substantially outweighed by the risk of unfair prejudice and the risk of confusing the jury."[35] But the court permitted the parties to "use as evidence statements made or evidence proffered during the reexaminations so long as this is done without referencing either the reexamination or the rejections."[36] And this Court granted a similar motion in limine in *Oil-Dri Corp. of America v. Nestle Purina Petcare Co.*, explaining that "evidence concerning findings or rulings made by the Patent Trial and Appeal Board during *inter partes* review proceedings … has only limited probative value," which "would be far outweighed by the significant waste of time that would be caused by the need to explain the somewhat complicated procedural history."[37]

---

[32] No. 14-cv-1296, 2017 WL 4570787, at *6 (E.D. Wis. Oct. 12, 2017).

[33] *Id*. at *6 (further stating: "Whether that prior art was sufficient to invalidate the patents, as a general proposition, is irrelevant to the specific prior art at issue here."); *see also, e.g.*, *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, No. 2:12-cv-68, 2013 WL 10253110, at *1 (E.D. Tex. Oct. 30, 2013) (excluding references to IPRs because "the danger of undue prejudice is extremely high and that danger cannot be mitigated simply by the use of a limiting instruction").

[34] No. 09-cv-525, 2014 WL 807736, at *3 (D. Del. Feb. 27, 2014).

[35] *Id*.

[36] *Id*.

[37] No. 15-cv-1067, 2019 WL 5206273, at *1 (N.D. Ill. Mar. 13, 2019).

And Kove has admitted that referencing post-grant proceedings at trial would likely cause confusion in recent briefing. Specifically, in its bifurcation reply brief, Kove argued that "having to present the PTO material to the jury would only derail the proceedings into administrative agency matters the jury should not be considering in the first place."[38] And regarding the Karger Paper and AWS's inequitable conduct defense, Kove argued that if it's required to explain the EPRs to the jury, it would lead to a "messy sideshow about administrative decisions and documents."[39] Although AWS disagreed on bifurcation, AWS agrees that unnecessary and messy sideshows about the EPRs should be avoided at trial.

And to the extent Kove has refused to agree to avoid references to EPRs out of concern that AWS may open the door to EPR proceedings, AWS has no intention of doing so. For instance, this Court has already ruled on the claim construction issues that AWS raised, including finding that Kove disclaimed hierarchical structures, and AWS doesn't intend to reargue any claim construction issues to the jury. By contrast, Kove has indicated that it intends to introduce testimony from its expert, Dr. Goodrich, that contradicts sworn statements he made in several declarations submitted in support of Kove's EPR filings.[40] If Kove solicits contradictory testimony from Dr. Goodrich, AWS should be allowed to impeach him using those sworn declarations.[41]

Such use of EPR statements for impeachment also wouldn't require the use of confusing Patent Office terminology or going into specifics concerning the history or outcomes of post-grant proceedings. For example, in *Hillman Grp., Inc. v. KeyMe, LLC*, the Eastern District of Texas

---

[38] Dkt. 777 at 2.

[39] *Id*. at 4–5.

[40] *See, e.g.*, Dkt. 760 at 18 (quoting two Dr. Goodrich EPR declarations (Dkt. 760-10 & Dkt. 760-13)).

[41] *See, e.g.*, *Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, No. 15-cv-152, 2018 WL 6629705, at *1 (D. Del. Oct. 12, 2018) (finding expert's testimony in IPR inadmissible as part of case-in-chief, but that this "does not prevent [expert's] IPR testimony from being used for impeachment purposes if [he] testifies at trial").

excluded references to confusing terms such as "IPR" and "PTAB," as well as specifics concerning the IPR proceedings, but allowed the parties to "generically" reference "statements to or decisions from the 'Patent Office.'"[42] Here, either party should be permitted to make similarly generic references (e.g., to statements "in a declaration you submitted to the Patent Office"), if the other opts to solicit impeachable testimony. After all, AWS's expert Mr. Greene also submitted declarations to the Patent Office, attached to AWS's EPR requests.

Accordingly, this Court should exclude references to EPR or IPR proceedings concerning the asserted patents or the outcomes of those proceedings under Rules 402 and 403. Doing so would avoid a "messy sideshow," as Kove stated, and would be fair to both parties.

## MOTION IN LIMINE NO. 6
References to Amazon's or AWS's Size or Wealth or Comparing the Size and
Wealth of the Parties, e.g. David and Goliath Themed References
*Fed. R. Evid. 402, 403*

The Court should exclude any testimony, evidence, or arguments from Kove referring to or offering evidence of the size and wealth of the parties or otherwise characterizing this dispute as a battle between David and Goliath. Such remarks regarding relative size and wealth lack probative value and are likely to prejudice the jury.

According to Kove, "[t]his case is about ensuring a level playing field so small competitors like Kove can compete fairly" with larger entities.[43] Since the inception of this case, Kove has characterized itself as "a small, innovative product company competing in a field of behemoths, like AWS."[44] Kove continued its "David and Goliath" theme during discovery, when it asked witnesses whether it would be "fair" for "big companies" like Amazon and AWS to infringe

---

[42] 2021 WL 1248180, at *3.

[43] Dkt. 1 at 2–3.

[44] *Id.* at 2.

"small" companies' patents.[45] Likewise, Kove's damages expert, Mr. Bergman, included otherwise-irrelevant details in his damages report, such as Amazon's "net sales for all its segments" and the number of products available on Amazon's retail site.[46] Indeed, as recently as this week, Kove stated: "It is absurd to suggest that … ▮▮▮▮▮ in funding can somehow create parity with AWS's ▮▮▮▮▮ in revenue."[47]

But Amazon's and AWS's size and wealth have no bearing on the parties' infringement and validity theories, and the *relative* size and wealth of the parties is also irrelevant to the parties' damages calculations.[48] As Kove's own damages expert, Mr. Bergman, explained, the parties' relative wealth is "irrelevant" because it "doesn't get to the value of the patent[s]."[49] And Amazon's size and wealth is especially irrelevant, as Amazon isn't a party to this action.[50]

"David and Goliath" arguments are also likely to prejudice the jury. The Supreme Court explained that "the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses."[51] By presenting a "David

---

[45] *See*, *e.g.*, Ex. 3 at 49:9–11 ("Do you think it's important for big companies like Amazon and AWS to take steps to avoid infringing patents?"); Ex. 4 at 289:21–23 ("Would you agree that it would not be okay for a big company to use a small company's patents without permission?").

[46] Dkt. 762-12 at ¶ 99.

[47] Dkt. 793 at 11 ("It is obvious … that Kove is a small company and AWS is one of the biggest companies in the world."). Kove filed the response at Dkt. 793 after the parties' March 1 meet and confer, during which the parties discussed this motion.

[48] *See Am. Tech. Ceramics Corp. v. Presidio Components, Inc*., No. 14-cv-6544, 2019 WL 2330855, at *5–6 (E.D.N.Y. May 31, 2019) (A "comparison of the relative … wealth of the parties would not be relevant to a determination of a reasonable royalty.").

[49] Ex. 10 at 133:18–19; *see also id.* at 135:4–7 (Kove "would have [known] that Amazon is a monster company that generates billions of dollars in revenue. It's irrelevant.").

[50] The comparison of the wealth and size of the parties is distinct from Kove's economic position at the time of the hypothetical negotiation. Kove's economic position doesn't relate to the relative size of the parties, but rather Kove's willingness to negotiate a license at that time.

[51] *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003); *see also Isbell v. John Crane, Inc.*, 74 F. Supp. 3d 893, 898 (N.D. Ill. 2014) ("[A]ny attempts to invoke juror sympathy by referring to

and Goliath" theme at trial, Kove could evoke juror sympathy and shift focus to Amazon's (and, as a result, AWS's) ability to pay. Such a "big company can afford it" theme would be particularly prejudicial on damages.

For these reasons, courts regularly preclude litigants from presenting "David and Goliath" themes.[52] The Eastern District of New York, for example, granted a motion in limine to preclude "characterizing th[e] dispute as a battle between David and Goliath."[53] The Western District of Louisiana granted a motion in limine excluding "evidence comparing the size of [plaintiff]'s business to [defendant]'s business" because it "would create an unfair characterization of [plaintiff] as a 'Goliath' against [defendant] as 'David.'"[54] And the Eastern District of Texas granted a similar motion, holding that "[n]either party shall characterize this litigation as a 'David and Goliath' scenario…. Likewise, no party shall be characterized as an 'underdog' or 'little guy' or anything of a similar nature."[55]

Excluding these types of references would also be especially appropriate here, since Kove is being funded by a third-party litigation funder, but successfully resisted the production of the agreements detailing that funding.[56] Without access to those details, AWS is limited in defending against David and Goliath and similar comparisons. In other words, AWS doesn't know and can't show the jury what specific financial resources are available to Kove. And the absence of details on Kove's funding further confirms that admitting evidence relating to AWS's overall wealth

---

the relative wealth or poverty of parties are 'improper' where the action does not otherwise implicate such factors.").

[52] *See, e.g.*, *Intell. Ventures*, 2018 WL 10638138, at *4 ("Plaintiff is not permitted to denigrate Defendants by painting a David and Goliath scenario.").

[53] *Am. Tech.*, 2019 WL 2330855, at *5.

[54] *Luv n' care v. Laurain*, No. 3:16-cv-777, 2021 WL 7907283, at *7 (W.D. La. Mar. 29, 2021).

[55] *Hillman*, 2021 WL 1248180, at *6.

[56] *See* Dkt. 797.

would be improper here.[57]

Thus, the Court should preclude Kove from referring to or offering evidence of the size and wealth of the parties or otherwise characterizing this dispute as a battle between Kove's David to AWS's Goliath.

## MOTION IN LIMINE NO. 7
Overall Revenue and Profits for the Accused Products
*Fed. R. Evid. 402, 403*

The Court should exclude any testimony, evidence, or arguments regarding overall revenue and profit for the accused products, S3 and DDB. As explained above, such evidence "creates the potential that juries will use their verdicts to express biases against big businesses."[58]

AWS doesn't dispute that certain financial information is relevant to the parties' reasonable royalty calculations. But "the profits that an *infringer* made *by use of the invention*" are relevant "for calculating a reasonable royalty," as Kove explained in a recent filing.[59] As such, only the profits that AWS derived by use of the allegedly infringing components of S3 and DDB are relevant.[60] AWS's overall revenue for S3 and DDB are irrelevant, too, for many of the same reasons. For example, Kove's exhibit list contains global P&L statements for both S3 and DDB.[61] These financials cover governmental and global sales, as well as unaccused components. By presenting this evidence to the jury, Kove would, at best, force AWS to waste trial time explaining

---

[57] And even if Kove had disclosed the evidence necessary to make financial comparisons, this would require AWS to devote some of its limited trial time to explain its litigation budgeting process, corporate accounting, and the like, since AWS's overall wealth isn't available just for this case.

[58] MIL 6, *supra* (quoting *State Farm*, 538 U.S. at 417).

[59] Dkt. 762 (Kove's Response to AWS's Motion to Strike) at 12 (citations omitted) (emphasis added).

[60] Dkt. 745-4 (Ex. D) at 1; Dkt. 745-5 (Ex. E) at 1.

[61] Dkt. 765-8 at 6 (PTX-0144, for S3), 7 (PTX-0164, for DDB).

the domestic nature of patents, something the parties otherwise agree on.[62] But even if Kove were to narrow these financials to the four relevant U.S. regions, they would still be overexpansive, as Kove hasn't accused the entirety of S3 and DDB of infringement. Indeed, Kove recently reiterated its position that only DDB's handling of metadata and "one aspect of S3's index" infringe.[63]

By precluding Kove from presenting evidence of the accused products' overall financial data, the Court would ensure that jurors are only presented with relevant financial information. In doing so, the Court would streamline trial, prevent juror confusion, and avoid "skew[ing] the damages horizon for the jury" by showing them large revenue figures.[64] This order wouldn't prejudice Kove, which would still be able to present Mr. Bergman's relevant calculations: the incremental benefits attributable to the accused functionalities in U.S. non-governmental regions.[65] Thus, the Court should preclude Kove from referring to or offering evidence regarding irrelevant and prejudicial financial data.

**MOTION IN LIMINE NO. 8**
Any Reference to Amazon's Statements About the Litigation in SEC Filings
*Fed. R. Evid. 402, 403*

The Court should exclude any testimony, evidence, or arguments proffering Amazon's

---

[62] *See Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 441 (2007) ("It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country."); Dkt. 762-12 at ¶ 125 ("Kove has accused AWS's S3 and DynamoDB," with alleged "infringement … limited to the remaining four [US-based] non-governmental regions").

[63] Dkt. 762 at 19 (arguing "non-infringing alternative changes only one aspect of S3's index," citing Ex. 762-2 at ¶¶ 103, 198, 230–31, and n.139); *see also id.* at 21 (similar for DDB, citing Dkt. 762-2 at ¶ 272).

[64] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) ("The disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue."); *see also United States v. Tsarnaev*, 595 U.S. 302, 312 (2022) ("A trial court protects the defendant's Sixth Amendment right by ensuring that jurors have 'no bias or prejudice that would prevent them from returning a verdict according to the law and evidence.'"); *Thompson v. City of Chicago*, 722 F.3d 963, 971 (7th Cir. 2013) ("Concerns about trial efficiency may fit under various Rule 403 headings: confusion of the issues, undue delay, waste of time, and needless presentation of cumulative evidence.").

[65] *See, e.g.*, Dkt. 762-12 at ¶ 603.

statements about this case in SEC filings. This order is necessary because Kove included five

Amazon 10-K filings on its exhibit list and previously used one to ask AWS VP Swami

Sivasubramanian if he was "███████████████████████████████████████████

███████████████████████████."[66] Kove also asked many AWS current and former

employees about their stock options and the value of Amazon's share price.[67]

The SEC requires publicly-traded companies, like Amazon, to disclose material pending

legal proceedings. These statements are for prospective and current investors in publicly-traded

companies, and not evidence of any liability. The SEC requires these threats to be listed, and it

will only enhance the prejudice of these statements to require AWS to put on evidence about, *inter*

*alia*, The Securities Act of 1934 and the 90 years of amendments and caselaw addressing it. Thus,

the Court should preclude Kove from referencing Amazon's statements about this case in its SEC

filings, as that will prevent a diversion into prejudicial and irrelevant issues.[68]

## MOTION IN LIMINE NO. 9
References to Witnesses' Compensation and Stock Options
*Fed. R. Evid. 402, 403*

During their depositions, Kove repeatedly asked AWS witnesses about their compensation

as current or former AWS employees, including stock options, and how much Amazon stock they

---

[66] Dkt. 765-8 at 4 (PTX-0100), 11 (PTX-0291-4); Ex. 7 at 241:14–16.

[67] *See, e.g.*, Ex. 7 at 241:14–20.

[68] *See, e.g., Biomerieux, S.A. v. Hologic, Inc.*, No. 18-cv-21, 2020 WL 583917, at *2 (D. Del. Feb. 6, 2020) (excluding SEC filings offered to show "public perception," and requiring redaction of prejudicial information in any such documents offered for "a proper purpose (such as … revenues associated with the accused products)"); *see also Empress Casino Joliet Corp. v. Johnston*, No. 09-cv-3585, 2014 WL 6735529, at *10 (N.D. Ill. Nov. 28, 2014) (excluding other evidence that "would be far outweighed by the significant waste of time and diversion of the jury's attention").

currently own.[69] Kove also has indicated that it will seek to introduce such testimony at trial.[70]

Specific references to the compensation or wealth of current and former AWS employees would be highly prejudicial to AWS and irrelevant to the issues in this case. And district courts have repeatedly excluded analogous evidence or argument. For instance, in *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, a patent infringement case, the Eastern District of Texas granted a motion in limine to exclude testimony "regarding the compensation of Broadcom's employees, including officers and directors."[71] The plaintiff's damages expert had tied this testimony to the hypothetical negotiation and the *Georgia-Pacific* factors, but the court nevertheless found that the potential prejudice warranted exclusion under Rule 403. As the court explained:

> Although IP Bridge argues that the patented technology would have made Broadcom more competitive and resulted in better executive compensation, the relevance of this testimony is nominal. Any probative value that her testimony may offer is severely outweighed by the danger of unfair prejudice to Broadcom.[72]

Here, based on Kove's questions during the witnesses' depositions and the parties' recent discussions, Kove may argue that witnesses' ownership of Amazon stock is admissible to show bias.[73] But the jury will know which witnesses are, or previously were, employees of AWS.[74] It's

---

[69] These include at least the following witnesses: Christoph Bartenstein; Alyssa Henry; Scott Hayden; James Hamilton; Tim Rath; Rande Blackman; Swami Sivasubramanian; Allan Vermeulen. *See, e.g.*, Ex. 7 at 237:1–240:22 (example testimony from May 11 deposition of Dr. Sivasubramanian).

[70] *See, e.g.*, Ex. 6.

[71] No. 2:16-cv-134, 2017 WL 2844646, at *3 (E.D. Tex. May 19, 2017).

[72] *Id.*; *see also, e.g.*, *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-3999, 2015 WL 4129193, at *3–4 (N.D. Cal. July 8, 2015) "[T]he consultants' relationship with Plaintiff appears to be continuous, ongoing, and not limited to litigation purposes. As such, [they] are more akin to employees than retained experts. Absent contextual information concerning the financial interests of other similarly-situated fact witnesses, [the evidence at issue] would be more unfairly prejudicial than probative.").

[73] *See, e.g.*, Ex. 7 at 241:14–20 (Kove asking Dr. Sivasubramanian "You're aware that Amazon has ██████████████████████████████████████████████; correct?").

[74] The eight witnesses listed above are expected to testify, in person or via deposition, about their duties at AWS, including, e.g., developing or managing the accused products.

unnecessary for bias purposes to go beyond the fact that these employees worked for AWS and were compensated for their work, including with stock.[75] And further specifics on how many shares they own or the value of those shares would be highly prejudicial and unfair to AWS. As the Supreme Court has held, "appeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them."[76] Courts thus routinely exclude references to witnesses' wealth that could inflame class prejudice and would have little relevance to the claims in a case.[77] Doing so is warranted here. Indeed, Kove has repeatedly insisted that discovery from high-ranking executives was necessary to provide the information that Kove was seeking. And it would be particularly unjust if Kove were now permitted to refer to stock that these witnesses received to appeal to class prejudice.

Moreover, a sideshow concerning witnesses' ownership of stock would be confusing to the jury and of limited, if any, probative value. Just because a witness owns stock in AWS's parent corporation, Amazon.com, doesn't suggest that this case is likely to have a significant impact on that witness financially.[78] Indeed, there are 135,000 AWS employees and 1.2 million Amazon.com employees. And stock prices can vary before vesting periods for stock options for these employees—for example, in the past 30 days, the daily volume on Amazon stock has averaged

---

[75] None of the witnesses who are current or former AWS employees have a direct financial interest in this case or are receiving any compensation for the outcome or for testifying (i.e., anything beyond the ordinary compensation that current employees would receive regardless, due to their employment).

[76] *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940).

[77] *See, e.g.*, *Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518–19 (S.D.N.Y. 2008) ("The parties are not permitted to argue to the fact finder's potential economic sympathies or prejudices."); *L–3 Commc'ns Corp. v. OSI Sys., Inc.*, No. 02-cv-9144, 2006 WL 988143, at *6 (S.D.N.Y. Apr. 13, 2006) (similar); *VSI Holdings, Inc. v. SPX Corp.*, No. 03-cv-70225, 2005 WL 5980804, at *7 (E.D. Mich. Apr. 12, 2005) (similar); *see also Koufakis v. Carvel*, 425 F.2d 892, 902 (2d Cir.1970) (granting new trial where remarks could "be taken as suggesting that the defendant should [pay] damages because he is rich").

[78] AWS itself is not publicly traded.

49.4 million shares.[79] This means that any loss relating to this case would at best be a "paper loss." And requiring AWS to explain these points to the jury would be highly prejudicial, for the reasons discussed above and in connection with MIL No. 6. To be sure, showing the jury the investments of each AWS witness and how a verdict might impact Amazon share prices, and thus their respective portfolios, would be both highly invasive and confusing.

**MOTION IN LIMINE NO. 10**
References to Other Litigation Involving Either Party
*Fed. R. Evid. 402, 403*

References to other litigations involving one of the parties are regularly excluded in patent litigation, as they have no bearing on the substantive issues before the jury. To be sure, Judges Gilstrap and Albright each have a standing in limine order that states: "The parties shall be precluded from introducing evidence, testimony, or argument regarding either party's other litigations or arbitrations, including parallel proceedings in any other court, tribunal, or forum, including ADR proceedings."[80] In pre-motion discussions, AWS offered a mutual agreement to not raise other litigations, but Kove insisted that it should be permitted to raise other AWS litigations to show willfulness, but that AWS shouldn't be able to raise Kove's other litigations at all.[81] Kove, however, has never explained how other AWS litigations are relevant to willfulness. And allowing Kove to reference other AWS litigations to support its willfulness case would prejudice AWS, and lead to juror confusion and a side litigation on the facts and rulings in such other cases.

---

[79] *See* https://ycharts.com/companies/AMZN/average_volume_30.

[80] Ex. 1 at 3 (Court MIL No. 13); Ex. 2 at 23 (same); *accord, e.g., Browne v. Waldo*, No. 2:20-cv-196, 2024 WL 446451, at *1 (N.D. Ind. Feb. 6, 2024) ("The course of legal proceedings in a different matter is irrelevant to the issues proceeding to trial. Further, it risks confusing the jury.").

[81] Ex. 6. Kove also raised other litigation in connection with comparable licenses. AWS agrees that some reference to the presence of underlying litigations relating to AWS's licenses will be necessary at trial.

It would be prejudicial because Kove never disclosed a reliance on other litigations in support of its willfulness case in discovery. Kove's response to AWS's Interrogatory No. 9, which asked Kove to "detail the factual and legal bases for your allegation that [AWS's] actions constitute willful patent infringement," doesn't reference any other AWS cases at all.[82] Thus, AWS wasn't on notice of this Kove theory, and didn't have the opportunity to develop the discovery record to defend against it. This is particularly prejudicial here, because although AWS is often sued for patent infringement, it hasn't been found to infringe by any tribunal in the past decade. It would also be prejudicial and lead to a confusing sideshow for the jurors because AWS would be forced to provide witness testimony and evidence about the allegations, facts, and results of potentially dozens of other cases—and some that didn't even involve AWS. Indeed, Kove questioned AWS witness Scott Hayden at deposition about the case *Vocalife LLC v. Amazon.com, Inc. and Amazon.com LLC*. AWS wasn't a party in that case, which involved Amazon.com's Echo devices.[83] And the Federal Circuit vacated the jury's infringement verdict in that case, and reversed the district court's judgment.[84] Thus, to address Kove's questioning about that case at trial, AWS would need to consume its limited trial time with introducing evidence showing that it involved different parties, different products, and different patents, and that it was overturned on appeal.

Thus, this Court should preclude either party from referencing other litigations involving the other party.

---

[82] Ex. 8 at 28–55 (Kove Response to Interrogatory No. 9).

[83] Ex. 9 at 396:15–400:4.

[84] No. 2021-1937, 2022 WL 2986786, at *1 (Fed. Cir. July 28, 2022) (vacating jury verdict); *Vocalife LLC v. Amazon.com, Inc.*, 2:19-cv-123 (E.D. Tex.), Dkt. 381 (order vacating final judgment).

Dated: March 7, 2024

Respectfully Submitted,

/s/ R. William Sigler
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (*pro hac vice*)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW Suite 400
Washington, DC 20015
202.362.3500

Ken K. Fung (*pro hac vice*)
*ken.fung@fischllp.com*
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
650.362.8200

*Attorneys for Amazon Web Services, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2024, I electronically filed the foregoing under seal with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, and also served a copy on all counsel of record via email.

/s/ R. William Sigler
R. William Sigler