# Exhibit 10

███████████████

Page 1

IN THE UNITED STATES DISTRICT COURT FOR

THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DISTRICT DIVISION

_____

KOVE IO, INC.,                )

      Plaintiff,         )

                          )    Civil Action No.

  -against-                  )    1:18-cv-08175

AMAZON WEB SERVICES, INC.,    )

      Defendant.         )

_____)

*** HIGHLY CONFIDENTIAL TRANSCRIPT ***

VIDEO-RECORDED REMOTE DEPOSITION OF

JAMES W. BERGMAN

Zoom Recorded Videoconference

09/19/2023

10:59 a.m. (EDT)

REPORTED BY: AMANDA GORRONO, CLR

CLR NO. 052005-01

_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

1　　survival around the time of the hypothetical

2　　negotiation?

3　　　　　A.　　I don't know as I sit here.

4　　　　　Q.　　And you don't discuss in your report

5　　that Econnectix had been losing money for several

6　　years leading up to the hypothetical negotiation,

7　　right?

8　　　　　A.　　I don't because I don't think it's

9　　relevant.

10　　　　Q.　　And the parties at the hypothetical

11　　negotiation would have known about Econnectix'

12　　financial situation at that hypothetical

13　　negotiation, right?

14　　　　A.　　They would have -- I mean, I guess

15　　they would have technically known about it, but

16　　it's not a factor that would have influenced the

17　　hypothetical negotiation.

18　　　　Q.　　And my question -- sorry.  You go.

19　　I didn't mean to cut you off.

20　　　　A.　　No.  I mean it's a tough question to

21　　answer because, while the parties have full

22　　knowledge, there are also very clearly defined

1   factors that one takes into account in

2   determining the amount paid under the

3   hypothetical negotiation.  I don't know of a

4   Georgia-Pacific factor, for example, where you

5   take into account the financial condition of the

6   parties.

7            And, you know, this is -- this --

8   and the reason why is because, just like at the

9   hypothetical negotiation, Kove could sit there

10  and say, Oh, Amazon, you're a massive company.

11  You have tons of profit.  You should be able to

12  be -- you should be able to pay us whatever we

13  want because it's no skin off you're teeth.

14           Amazon, then, can't turn around and

15  say, Well, you're this tiny company and you're

16  financially strapped so you'll take whatever

17  scraps we can give you.

18           I don't think it's relevant.  It

19  doesn't get to the value of the patent, which is

20  the reason why I don't consider it and I don't

21  put in the report.

22       Q.   And I think my question was just a

1  little narrower.
2           It was: The parties at the
3  hypothetical negotiation would have known about
4  Econnectix' financial situation at the time of
5  the hypothetical negotiation, right?
6           MR. ADLER: Objection. You just
7     asked this question.
8      A.   I don't know how to give you a
9  different answer.
10 BY MR. SALTMAN:
11     Q.   I think the answer is they would
12 have known about it, but you don't think it's
13 relevant, right?
14          MR. ADLER: Objection;
15    mischaracterizes testimony.
16     A.   I think it's a complicated answer
17 because whether they know about it or not, it
18 doesn't matter because it's not a factor that's
19 part of the negotiation.
20 BY MR. SALTMAN:
21     Q.   Your opinion is that even that
22 Econnectix' financial situation isn't relevant to

1    the hypothetical negotiation but the parties

2    would have known about it; is that fair?

3        A.   Yeah.  Just like they would have

4    known Amazon's financial condition.  They would

5    have now that Amazon is a monster company that

6    generates billions of dollars in revenue.  It's

7    irrelevant.

8        Q.   And we talked about in 2007

9    Econnectix began selling nonembodying products,

10   correct?

11       A.   My understanding that's when it made

12   its first sale, yeah.

13       Q.   And those are -- you talk about

14   those in Paragraphs 94 and 95 of your report,

15   right?

16       A.   Yes.

17       Q.   And in Paragraph 94, you say the

18   "XPD is the data storage device that uses

19   DRAM-based storage to provide improved

20   performance compared to traditional storage

21   systems."

22                 Do you see that?

1      A.    Yes.

2      Q.    And was -- do you know whether

3  Econnectix was successful in selling the XPD

4  products?

5            MR. ADLER:  Objection; vague as to

6     "successful."

7      A.    I don't know.

8            MR. SALTMAN:  And, Counsel, if you

9     could keep the speaking objections -- you can

10     object to vague, but not to specific terms.

11  BY MR. SALTMAN:

12      Q.    All right.  And then the -- in

13  Paragraph 96 you talk about the SDM product.

14           Do you see that?

15      A.    I do.

16      Q.    And is that referred to as "software

17  defined memory"?  Is that what SDM stands for?

18      A.    That's my understanding.

19      Q.    Okay.  And do you know whether Kove

20  has been successful in selling the SDM products?

21      A.    I don't know as I sit here.

22      Q.    And in your report, you don't

Page 391

1    CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC

2           I, Amanda Gorrono, the officer

3    before whom the foregoing deposition was

4    taken, do hereby certify that the foregoing transcript is a true and correct record of

5    the testimony given; that said testimony was taken by me stenographically and thereafter

6    reduced to typewriting under my direction;

7    and that I am neither counsel for, related to, nor employed by any of the parties to

8    this case and have no interest, financial or

9    otherwise, in its outcome.

10           IN WITNESS WHEREOF, I have hereunto

11    set my hand this 19th day of September, 2023.

12

13

14

15    *[signature]*

16    AMANDA GORRONO, CLR

17    CLR NO: 052005 - 01

18    Notary Public in and for

19    The State of New York

20    County of Suffolk

21    My Commission No. 01G06041701

22    Expires: 01/07/2027