**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | |
| | Hon. Matthew F. Kennelly |
| v. | |
| Amazon Web Services, Inc., | Jury Trial Demanded |
| Defendant. | |

## KOVE IO, INC.'S OMNIBUS MOTIONS IN *LIMINE*

# TABLE OF CONTENTS

**Page**

I.      KOVE'S MIL NO. 1: Exclude Arguments Or Evidence About Litigation Financing. ........1

II.     KOVE'S MIL NO. 2: Exclude Evidence Or Argument Regarding Kove's Timing In Bringing This Case, Per The Court's Summary Judgment Order. ......................................3

III.    KOVE'S MIL NO. 3: Exclude Evidence Or Argument About AWS's/ATI's Patents, As Related To Noninfringement Or Invalidity. ..........................................................................4

IV.     KOVE'S MIL NO. 4: No Practicing The Prior Art Defense. ...............................................6

V.      KOVE'S MIL NO. 5: AWS May Not Present Prior Art Grounds Other Than The Precise Combinations Presented In Its Invalidity Contentions. ......................................................8

VI.     KOVE'S MIL NO. 6: No Indefiniteness As An Invalidity Defense. ...................................9

VII.    KOVE'S MIL NO. 7: No Arguments Or Testimony Contrary To The Court's Claim Constructions. ..................................................................................................................11

VIII.   KOVE'S MIL NO. 8: Precluding Evidence Or Argument Regarding Kove's Case Against Google. .............................................................................................................................19

**TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*,
   889 F.3d 735 (Fed. Cir. 2018)...................................................................................7

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*,
   265 F.3d 1294 (Fed. Cir. 2001)................................................................................4

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   805 F.3d 1368 (Fed. Cir. 2015)..............................................................................15

*Atmel Corp. v. Info. Storage Devices, Inc.*,
   198 F.3d 1374 (Fed. Cir. 1999)................................................................................9

*AVM Techs., LLC v. Intel Corp.*,
   2017 WL 1787562 (D. Del. May 1, 2017)...............................................................2

*Bio-Tech. Gen. Corp. v. Genetech, Inc.*,
   80 F.3d 1553 (Fed. Cir. 1996)..................................................................................4

*Blanchard v. Putnam*,
   75 U.S. 420 (1869)...................................................................................................5

*Cascades Comput. Innovation, LLC v. Samsung Elec. Co.*,
   1:11-cv-4574-MFK, Dkt. 320 (N.D. Ill. July 12, 2015) ..........................................1

*Cordance Corp. v. Amazon.com, Inc.*,
   658 F.3d 1330 (Fed. Cir. 2011)................................................................................6

*CUPP Computing AS v. Trend Micro Inc.*,
   53 F.4th 1376 (Fed. Cir. 2022) ..............................................................................17

*Ecolab Inc. v. Paraclipse, Inc.*,
   285 F.3d 1362 (Fed. Cir. 2002)................................................................................7

*Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*,
   946 F.3d 1367 (Fed. Cir. 2020)................................................................................3

*ePlus, Inc. v. Lawson Software, Inc.*,
   700 F.3d 509 (Fed. Cir. 2012)................................................................................10

*Fulton v. Foley*,
   2019 WL 6609298 (N.D. Ill. Dec. 5, 2019)............................................................1

*Gen-Probe Inc. v. Becton Dickinson & Co.*,

899 F. Supp. 2d 971 (S.D. Cal. 2012)........................................................................6

*Glaros v. HL.H. Robertson Co.*,
797 F.2d 1564 (Fed. Cir. 1986)................................................................................5

*KAIST IP US LLC v. Samsung Elecs. Co.*,
2:16-cv-01314, Dkt. 387 (E.D. Tex. Apr. 21, 2018)................................................5

*In re Maxim Integrated Prods., Inc. MDL 2354*,
2014 WL 3696137 (W.D. Pa. July 23, 2014) ........................................................10

*In re Omeprazole Patent Litig.*,
536 F.3d 1361 (Fed. Cir. 2008)................................................................................6

*Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*,
161 F.3d 696 (Fed. Cir. 1998)..................................................................................9

*Prolitec Inc. v. ScentAir Techs., LLC*,
1:20-cv-984, Dkt. 308 (D. Del. Jan. 30, 2024) .......................................................5

*Salazar v. AT&T Mobility LLC*,
64 F.4th 1311 (Fed. Cir. 2023) ..............................................................................17

*Sonos, Inc. v. D&M Holdings Inc.*,
2017 WL 5633204 (D. Del. Nov. 21, 2017) ............................................................5

*SSL Servs., LLC v. Citrix Sys., Inc.*,
2012 WL 12906091 (E.D. Tex. May 24, 2012)........................................................2

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
279 F.3d 1357 (Fed. Cir. 2002)................................................................................7

*Treehouse Avatar LLC v. Valve Corp.*,
54 F.4th 709 (Fed. Cir. 2022) ..........................................................................15, 17

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab.
Litig.*,
405 F. Supp. 3d 612 (D.N.J. 2019) ..........................................................................2

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)................................................................................16

*Vocalife LLC, v. Amazon.com, Inc.*,
2:19-cv-123-JRG, Dkt. 310 (E.D. Tex. Sept. 30, 2020) .........................................8

*Zimmer v. Stryker*,
2019 WL 9244877 (D. Del. Mar. 15, 2019) ............................................................5

**Rules**

Fed. R. Evid. 401 ................................................................................................2

Fed. R. Evid. 402 ................................................................................................2

Fed. R. Evid. 403 .............................................................................................2, 5

LPR 2.3(a) ........................................................................................................15

Rule 3.1(b) .......................................................................................................8, 9

# I. KOVE'S MIL NO. 1: Exclude Arguments Or Evidence About Litigation Financing.

Kove moves to exclude arguments and evidence about litigation financing. Kove had thought the Court made clear that such information was not relevant. Kove conferred with AWS, and AWS does not agree that litigation financing evidence should be excluded.

Litigation funding is not relevant to any issues in this case, as this Court has now twice determined. *See, e.g.*, Dkt. 497 at 21 ("At best, a funding agreement embodies the patentholder's and funder's subjective calculations about the value they might prove the patent to possess in the context of litigation. Fundamentally, a litigation funding transaction does not exist in the market for patents or patented technologies; it exists in the market for litigation funding."); *id.* at 22 ("Candidly, this court questions whether a party's interest in refuting a 'theme' — as opposed to supporting a claim or defense—provides a proper basis for discovery under the Federal Rules of Civil Procedure."); Ex. K1 (3/5/2024 Hearing Tr.) at 18:13-18; 22:2-6; 28:9-11.[1]

This Court is not alone — courts across the country have concluded that litigation financing is irrelevant. *See, e.g.*, *Fulton v. Foley,* 2019 WL 6609298, at *2 (N.D. Ill. Dec. 5, 2019) ("litigation funding information is generally irrelevant to proving the claims and defenses in a case"); *id.* (denying discovery relating to "communications and information" about to funding as irrelevant and noting "[a]s a general matter, courts across the country that have addressed the issue have held that litigation funding information is generally irrelevant to proving the claims and defenses in a case.") (collecting cases); *Cascades Comput. Innovation, LLC v. Samsung Elec. Co.*, 1:11-cv-4574-MFK, Dkt. 320 at 7 (N.D. Ill. July 12, 2015) ("The nature and particulars of the contingent fee arrangement between Cascades and its counsel is irrelevant and inadmissible; even

---

[1] The Court also concluded that litigation financing documents are litigation work product. *See* Dkt. 497 at 22-23 ("Documents that are created for purposes of obtaining litigation funding are self-evidently created 'because of the prospect of litigation.'").

if relevant, its probative value is minuscule at best and is far outweighed by the danger of unfair prejudice that would result from its admission."); *SSL Servs., LLC v. Citrix Sys., Inc.*, 2012 WL 12906091, at *1 (E.D. Tex. May 24, 2012) ("The parties are precluded from making any reference to investors in the litigation, litigation financing or attorney's fee arrangements."); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) (barring discovery because "litigation funding is irrelevant to the claims and defenses in the case") (collecting cases).

This case is no different than the others — litigation financing has nothing to do with infringement, validity, willfulness, or damages. Fed. R. Evid. 401 (evidence without "any tendency to make a [material] fact more or less probable than it would be without the evidence" is irrelevant); Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). A narrative that seeks to somehow taint Kove for obtaining litigation financing would be unfairly prejudicial by encouraging the jury to reach a verdict based on something other than relevant facts and law. Fed. R. Evid. 403 (relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury," among other issues). *See, e.g.*, *AVM Techs., LLC v. Intel Corp.*, 2017 WL 1787562, at *3 (D. Del. May 1, 2017) (excluding expert testimony "as to Plaintiff's litigation funding agreements" because they "have no relevance" and in any event were inadmissible under Rule 403).

Kove does not know whether AWS persists in making this argument for preservation purposes or if it has new arguments about the relevance of litigation financing. It previously argued that it was relevant to the theme of "David vs. Goliath," to the valuation of the patents, to the "bona-fides of [Kove's] case and business," and to Kove's statements about the patents and the case. Dkt. 782 at 9-11. In denying AWS's motion to compel litigation financing agreements,

the Court implicitly rejected these arguments as to relevance.  *See* Dkt. 797; Ex. K1 (3/5/2024 Hearing Tr.) at 27:14-28:13.  Kove is not aware of whether AWS has new arguments on these subjects.  If it does, Kove respectfully requests the opportunity to respond to them.

Accordingly, Kove respectfully requests that the Court preclude AWS from referencing litigation financing in the upcoming trial.

## II.     KOVE'S MIL NO. 2: Exclude Evidence Or Argument Regarding Kove's Timing In Bringing This Case, Per The Court's Summary Judgment Order.

This Court granted Kove's summary judgment motion on AWS's equitable estoppel and waiver defenses.  Dkt. 739 at 59-64.  Those defenses were premised on the theory that Kove somehow delayed filing this lawsuit and either waived its right to enforce the patents (waiver), or lulled AWS into a false security that it would not be sued (equitable estoppel).  The Court rejected these defenses as a matter of law.  *Id.* at 64.  The Court held that AWS's defenses suffered from several fatal legal flaws, including no evidence that Kove had a duty to disclose the asserted patents, that AWS relied on Kove's purported silence, or that AWS suffered material prejudice. *Id.* at 61-63.  "Consequently, no reasonable juror could find that any actions taken regarding the accused products were taken due to [AWS's] belief that the asserted patents would not be enforced." *Id.* at 63.  With these defenses out of the case, no legitimate reason remains to introduce evidence or argument regarding Kove's purported delay.  The timing of this lawsuit is not relevant for infringement or invalidity, or any other merits issue in this case.

AWS refused to agree to refrain from making such arguments, claiming generally that evidence of Kove's delay is relevant to willfulness.  This does not hold up to scrutiny.  To establish willfulness, Kove must show that AWS deliberately or intentionally infringed its patents.  *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020). As the Court held on summary judgment, there is no connection between the date this lawsuit was

initiated and AWS's state of mind at the time of infringement. Dkt. 739 at 63 ("Consequently, no reasonable juror could find that any actions taken regarding the accused products were taken due to [AWS's] belief that the asserted patents would not be enforced."). It is unclear why AWS believes this could otherwise be relevant to willfulness.

Accordingly, Kove respectfully requests that AWS be precluded from introducing evidence and argument as to the timing of Kove filing this lawsuit, including making arguments as to alleged delay.

### III. KOVE'S MIL NO. 3: Exclude Evidence Or Argument About AWS's/ATI's Patents, As Related To Noninfringement Or Invalidity.

The fact that AWS or affiliates (like Amazon Technologies, Inc. ("ATI")) own patents is irrelevant to the questions of infringement and invalidity. Patent ownership is not a defense to infringement. *Bio-Tech. Gen. Corp. v. Genetech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) ("The existence of one's own patent does not constitute a defense to infringement of someone else's patent."); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1309 (Fed. Cir. 2001) ("The fact that [defendant's] patent might read on the [accused device] is totally irrelevant to the question of whether [defendant] willfully infringed another patent."). And AWS is not asserting any of its patents as prior art, so they are not relevant to invalidity.

This issue comes up in patent trials when defendants try to argue that because they had prior patents, it somehow means they do not infringe plaintiff's patents. For example, a defendant might argue, "How can we infringe if we had patents before the plaintiff?" Whether such a statement is made to argue non-infringement or invalidity, it is legally incorrect and therefore inadmissible as irrelevant and unfairly prejudicial.

It appears AWS seeks to make just such an argument. Kove requested that AWS agree to a motion in *limine* that its (or its affiliates') prior patents will not be used to argue non-infringement

or invalidity. AWS refused.

Courts have recognized that not only would using prior patents be irrelevant to non-infringement and invalidity, but such arguments would also be unfairly prejudicial. Judge Bryson of the Federal Circuit recognized the "substantial risk of unfair prejudice" when he granted a request to exclude mentions of a defendant's patent. *Prolitec Inc. v. ScentAir Techs., LLC*, 1:20-cv-984, Dkt. 308 at 17-18 (D. Del. Jan. 30, 2024) (J. Bryson, sitting by designation). He explained that "Courts have long recognized that the introduction of evidence of an accused infringer's own patent carries with it substantial risks, a consideration that has frequently led courts to exclude such evidence." *Id.* at 17. "[S]uch evidence may 'mislead the jury by withdrawing their attention from the real subject-matter in controversy'" and is "'likely to create side issues' requiring the 'introduction of counter-evidence.'" *Id.* at 18 (quoting *Blanchard v. Putnam*, 75 U.S. 420, 425 (1869); *Glaros v. HL.H. Robertson Co.*, 797 F.2d 1564, 1573 (Fed. Cir. 1986)).

The jury's task is challenging enough without irrelevant diversions. *See Zimmer v. Stryker*, 2019 WL 9244877, at *1 (D. Del. Mar. 15, 2019) (allowing introduction of defendant's patent "would invoke many of the Rule 403 concerns, including having a mini-trial on the meaning and validity of the [defendant's] patent"); *Sonos, Inc. v. D&M Holdings Inc.*, 2017 WL 5633204, at *1 (D. Del. Nov. 21, 2017) (J. Bryson, sitting by designation) (allowing introduction of defendant's patents "could mislead the jury into believing that [defendant's] patents give it the right to practice technology that is covered by those patents even though it is also covered by [plaintiff's] patents."); *KAIST IP US LLC v. Samsung Elecs. Co.*, 2:16-cv-01314, Dkt. 387 at 41:25-42:4 (E.D. Tex. Apr. 21, 2018) ("The suggestion that Samsung wouldn't have patents unless they were covering these features is just too easy to manipulate, and it goes against my understanding of the law on this and the way juries understand this."). Kove respectfully asks that such evidence and argument be

excluded.

## IV.  KOVE'S MIL NO. 4: No Practicing The Prior Art Defense.

Kove moves to preclude any argument or evidence that (1) AWS's accused products practice the prior art; or (2) "practicing the prior art" shows (or is relevant to) infringement or invalidity.  The Federal Circuit forbids the "practicing the prior art" defense.

AWS has made clear it intends to make this barred argument.  AWS's expert made such an argument in his expert report, which is subject to Kove's pending *Daubert* motion.  In addition, AWS then argued that it should be permitted to try inequitable conduct to the jury because it plans to argue to the jury that its products are based on a piece of prior art (███████████), and therefore it does not infringe Kove's patents.  Dkt. 767 at 1, 4.  In moving to bifurcate inequitable conduct, Kove pointed out that such an argument is not permitted, and therefore there is no overlap in the evidence that could justify AWS's request.  The Court granted the motion to bifurcate.  Dkt. 797.  In advance of motions in *limine*, Kove asked AWS whether it would agree to refrain from making the "practicing the prior art" argument.  It would not.

"A 'practicing the prior art' defense typically refers to the situation where an accused infringer compares the accused infringing behavior to the prior art in an attempt to prove that its conduct is either noninfringing or the patent is invalid as anticipated because the accused conduct is simply 'practicing the prior art.'"  *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1337 (Fed. Cir. 2011).  It is "well established" that an alleged defense relying on the accused instrumentality practicing the prior art "is not a defense to infringement."  *In re Omeprazole Patent Litig.,* 536 F.3d 1361, 1377 (Fed. Cir. 2008).  An accused infringer cannot defend against infringement by arguing its product uses or is similar to the prior art, because "[t]his is essentially a creative way to assert practicing the prior art as defense to literal infringement."  *Gen-Probe Inc. v. Becton Dickinson & Co.*, 899 F. Supp. 2d 971, 989 (S.D. Cal. 2012) (rejecting defense that

defendant's product uses approach "practiced in the prior art and distinguishable from the [patents]."). "But 'practicing the prior art' is not a defense to literal infringement." *Ecolab Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1377 (Fed. Cir. 2002). "[L]iteral infringement is determined by construing the claims and comparing them to the accused device, not by comparing the accused device to the prior art." *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1366 (Fed. Cir. 2002).

> The problem with such a defense is that it can potentially allow a defendant to skirt evidentiary hurdles and conflate the infringement and invalidity inquiries. In essence, an accused infringer forsakes any comparison between the asserted claims and the accused product, relying instead upon purported similarities between the accused product and the prior art.").

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018). Moreover, something can both practice the prior art and infringe. Prior art (if disclosed as required) is relevant to invalidity, but just because something practices prior art has nothing to do with whether it meets the limitations of the patent.

In opposing bifurcation, AWS indicated that it intends to argue its accused products use ██████████████████████████ (a prior art reference that is not part of AWS's invalidity defense) and that because Dr. Overton believes ████ is different than his invention, AWS can not infringe. Dkt. 767 at 1, 4 (Bifurcation Resp.). Moreover, AWS intends to have its fact witnesses (Vermeulen and Markle) testify that ████████████████████████ *Id.* at 4.

This is precisely the forbidden defense: AWS compares the accused device to the prior art to argue non-infringement. Infringement is not measured by reference to the prior art. It is determined by comparing the accused device solely to the *claims*. *See Tate*, 279 F.3d at 1366-67 (practicing the prior art defense consists of comparing accused product to prior art, rather than the

claims); s*ee also Vocalife LLC, v. Amazon.com, Inc.*, 2:19-cv-123-JRG, Dkt. 310 at 9-10 (E.D. Tex. Sept. 30, 2020) (precluding Amazon from "comparing any accused product to any purported prior art device, a prior art patent, or any other prior art").

Accordingly, Kove respectfully requests that the Court preclude argument and evidence regarding a practicing the prior art defense.

## V.  KOVE'S MIL NO. 5: AWS May Not Present Prior Art Grounds Other Than The Combinations Presented In Its Invalidity Contentions.

Local Patent Rule 3.1(b) limits AWS to "four (4) prior art grounds per claim", where "each combination of references shall constitute separate grounds."  AWS initially identified its four prior art grounds in its Fifth and Final Amended Invalidity Contentions, citing to accompanying claim charts.  Ex. K2 (AWS's Fifth Invalidity Contentions) at 9-13.  The claim charts included numerous permutations of the identified grounds, thereby exceeding the limit set forth in LPR 3.1(b).   For example, AWS identified "Obviousness based on the combination of OracleNamesAdminGuide, OracleUnleashed, Steen, and Wolff (*see* Exhibit 2A)" as one prior art ground (*id.* at 10), but the accompanying chart (Exhibit 2A) alleged obviousness "by OracleNamesAdminGuide *alone or in combination* with OracleUnleashed, Steen, *and/or* Wolff" [Ex. K3 (Greene App. D, Ex. 2a) at 1], thus taking it from a single ground to multiple grounds for this one claim, and potentially hundreds of combinations across all of the claims.

Kove asked AWS to identify with specificity its four prior art grounds for each claim, and AWS responded with a list, identifying specific combinations for each claim.  Ex. K4 (L. Phillips 3/6/2024 e-mail).  AWS's list, however, diverges from what is actually in its claim charts.  For example, for claim 15 of the '170 patent, AWS now identifies "Obviousness based on the combination of U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420" as one of its prior art grounds.  *Id.*  But a review of the corresponding claim chart for claim 15 shows that

citations are provided only for the Minami reference – not DNS and not Karger '618/420.[2]  Ex. K5 at 28-29.

Similarly, for claim 6 the '170 patent, AWS cites only to Minami and RFC1034 – it provides no citations to DNS or Karger '618/420.[3]  *Id.* at 26-27.  Another example is claim 8, where AWS again points to evidence from "limitation 1.d and claim 3."  *Id.* at 28.  Claim 3 does not exist (because it is not asserted) and limitation 1.d does not cite DNS or Karger '618/420.

Accordingly, AWS should be precluded from reliance on the grounds set forth above as being in violation of LPR 3.1(b).  Further, Kove requests that the Court order that AWS is limited to prior art grounds properly identified under LPR 3.1(b).  It is unknown what other combinations AWS may seek to present at trial, and therefore the application of this rule should wait until then, but the underlying rule should be clear that AWS may not present additional prior art grounds in violation of LPR 3.1(b).

## VI.    KOVE'S MIL NO. 6: No Indefiniteness As An Invalidity Defense.

AWS recently confirmed[4] that, despite not raising the issue to the Court[5] or addressing the issue in expert reports, it nevertheless intends to try its indefiniteness defense under Section 112 (35. U.S.C. §112).[6]  As an initial matter, indefiniteness is not for the jury. "Indefiniteness, therefore,

---

[2] For evidence supporting its contention that claim 15 is invalid, AWS points to the "evidence regarding the preamble of claim 1 and claim limitation 1.g," as well as the "evidence regarding claim 3."  Ex. K5 (Greene App. D, Ex. 1d) at 28-29.  Claim 3 of the '170 patent is not asserted therefore there is no evidence corresponding to it.  Claim limitation 1.g cites only Minami and does not cite DNS or Karger '618/420.  And the preamble of claim 1 generally recites DNS and Karger '618/420 but without any citations.

[3] The Court held on summary judgment that "DNS" is the BIND 8.1 prior art system, but that AWS's evidence is deficient as to what references constitute that system.  Dkt. 739 at 52-53.

[4] *See* Ex. K4 (L. Phillips 3/6/2024 e-mail).

[5] AWS initially took the position that one claim term was indefinite (Dkt. 219 at 16-18) but subsequently withdrew that argument prior to the *Markman* hearing.  The Court did not discuss AWS's original indefiniteness position in its claim construction order (Dkt. 484).

[6] AWS only alleges indefiniteness against the asserted claims of the '640 and '170 patents.  AWS confirmed that it will not allege indefiniteness against the asserted claims of the '978 patent.

like claim construction, is a question of law." *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999); *see also Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims."). There is no jury instruction for indefiniteness in the parties' Proposed Pretrial Order, and the Seventh Circuit Model Jury Instructions do not include one, given that "indefiniteness is, as a general matter, a question of law to be determined by the court."[7]

Many courts address indefiniteness during claim construction because it is, "in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). But AWS chose not to raise indefiniteness to the Court during claim construction, nor did it do so during summary judgment, or even in the Proposed Pretrial Order. AWS has failed to articulate any reason why indefiniteness should be included in the upcoming trial, whether in front of the jury or in a bench trial.

Moreover, to prove indefiniteness, AWS "must demonstrate by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based upon the claim language, the specification, the prosecution history, and the knowledge in the relevant art in order to meet the 'exacting standard' to prove indefiniteness." *In re Maxim Integrated Prods., Inc. MDL 2354*, 2014 WL 3696137, *3 (W.D. Pa. July 23, 2014) (internal citations omitted). "The ultimate issue is whether someone working in the relevant technical field could understand the bounds of a claim." *Id*. AWS has no evidence relating to indefiniteness from a person of ordinary skill in the art. Neither of AWS's technical experts have offered any opinions with respect to the issue.

---

[7] Specification Requirements — Indefiniteness [Pre-AIA And Post-AIA] (11.3.2.4 Seventh Circuit Model Jury Instructions (Patents)) at 58.

Having never asked the Court to determine the merits of indefiniteness defense and having no admissible evidence regarding it, AWS should not be allowed to present this defense at trial.

## VII.   KOVE'S MIL NO. 7: No Arguments Or Testimony Contrary To The Court's Claim Constructions.

In a number of instances, AWS plans to argue or elicit testimony contrary to the Court's claim constructions. The Court's constructions govern, and "[n]o party may contradict the court's construction to a jury." *Exergen Corp., v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1321 (Fed. Cir. 2009); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc*., 763 F. Supp. 2d 671, 695 (D. Del. 2010) ("Parties, their experts, and their attorneys are not permitted at trial to reargue claim construction or to take positions that are inconsistent with the Court's construction."). Courts routinely grant motions in *limine* to preclude parties from violating this straightforward rule. *See, e.g.*, *10X Genomics, Inc. v. Nanostring Techs., Inc.*, 1:21-cv-653-MFK, Dkt. 282 at 10 (D. Del. Nov. 8, 2023) (precluding defendant from reinterpreting Court's construction because "these points are not open to reexamination by the jury or, for that matter, by witnesses" and are "binding"); *Express Mobile, Inc. v. GoDaddy.com, LLC*, 1:19-cv-01937-MFK Dkt. 305 at 55:14-17 (D. Del. Feb. 9, 2023) ("[W]itnesses can't opine about the proper construction of the claim. They have to adopt the construction of the claim that's been ordered or found, and they have to go with that[.]"); *NeuroGrafix v. Brainlab, Inc.*, 1:12-cv-6075-MFK, Dkt. 494 at 4 (N.D. Ill. Feb. 25, 2021) (testimony about another judge's non-binding claim construction that differs from the Court's construction poses "significant risk" of jury confusion).

AWS seeks to present a claim construction contrary to the Court's construction or the plain language of the patent for a number of terms, as discussed below. Each should be excluded.

**"Non-Hierarchical":** In its summary judgment order, the Court construed the claim term "plurality of location servers" as follows:

This Court therefore construes the claim term "plurality of location servers" to require "location servers in non-hierarchical structures."

Dkt. 739 at 19; *see also* Dkt. 739 at 23 ("In conclusion, AWS's claim construction proposal is granted to the extent that 'plurality of location servers' will be construed to include only those arranged in 'non-hierarchical configurations.'"). In turn, the Court ruled that Kove acted as its own lexicographer in defining the term "non-hierarchical" and therefore the Court adopted Kove's definition. *Id.* at 19. ("Here, Kove 'acted as [its] own lexicographer' in defining this claim term, and the Court therefore adopts Kove's definition." (attribution omitted)). The Court explained how Kove defined "non-hierarchical" in the context of the patents as follows:

> [A]ny given server is able to return either the requested information or information useable by the client to locate the server with the requested information.

*Id.* at 18 (alteration in original, attribution omitted). And it found that "no further construction of the term 'non-hierarchical' is necessary." *Id.* at 19.

The Court went on to reject AWS's arguments for further construction of a non-hierarchical location server structure, including its argument that the claims require that "each location server contains the relevant location information, or information to locate the relevant information." *Id.* at 20-21. The Court held that "[t]here is no reason to believe that a location server must 'contain' the relevant information in order to be enabled or configured to provide it." *Id.* at 21. "The Court therefore overrules AWS's argument that Kove disavowed location servers that do not 'contain' the relevant location information or information to locate the relevant location information." *Id.*

In preparing jury instruction, AWS demanded a new construction of "non-hierarchical" location servers that seeks to include the language already rejected by the Court and to introduce new limitations into the claims. Dkt. 765-14, Attachment 9B (Disputed Proposed Jury

Instructions) at 3-4.  AWS requested the Court adopt a new construction of "plurality of location servers" as follows:

> location servers in non-hierarchical structures, where each location server must be enabled to return the requested location information or *know* which location server *contains* the location information of the desired data.

*Id.* at 4 (emphasis added).[8]

The Court already held that no further construction is necessary, so that should end the matter.  Further, the Court considered and rejected AWS's argument that non-hierarchical location servers must "contain" the requested locations.  Dkt. 739 at 21 ("The Court therefore overrules AWS's argument that Kove disavowed location servers that do not 'contain' the relevant location information or information to locate the relevant location information.").  The Court reviewed the reexamination record and concluded that Kove repeatedly described the non-hierarchical location servers in terms of what they are "capable of" or "configured to" do.  *Id.*  The Court concluded that non-hierarchical location servers need not "contain" or "store" the relevant information to be "capable of" or "configured to" provide the requisite functionality, and so limiting the claims in that way was "not appropriate."  *Id.*

In addition, AWS attempts to add another requirement – namely, that location servers must "know" which location server has the requested locations.  In other words, it seems to contend that the claims require location servers to "know" with 100% certainty which servers "contain" the requested location information.  There is nothing in the patents or the reexamination records that mandates such "knowledge," and it adds a requirement that differs from the Court's construction. The Court already determined that non-hierarchical means that the server be "able to return either the requested information or information useable by the client to locate the server with the

---

[8] Kove noted its objection to AWS changing the Court's claim construction, and noted that it was filing a motion in *limine* on this subject.  *Id.* at 3 n.7.

requested information." Dkt. 739 at 18. The Court expressly rejected AWS's proposed requirement that the requested location information be provided in "no more than two steps." Dkt. 739 at 22-23. The requested location information would only be provided in two steps or less if each location server "knows" with certainty which other location server "contains" it. The Court found that AWS's construction improperly turned a *capability* of location servers into an immutable *requirement*. *Id.* ("Kove's assertion that its claimed invention 'enables' or 'allows' a particular process does not mandate a finding that the claims of that invention *require* that process to occur."). AWS's construction is an attempt to reach the same result the Court already rejected.

In the proposed jury instructions, AWS argues that the Court's construction included a concession from Kove that each server must be enabled to return the requested information or know which location server contains the data. Dkt. 765-14, Attachment 9B (Disputed Proposed Jury Instructions) at 5 n.8 (citing Dkt. 739 at 21).[9] AWS takes the Court's language out of context. The language it cites is from the paragraph of the summary judgment order that states that even if there was a disavowal on this point (and the Court said there was not), "inclusion of AWS's requested language would be redundant." Dkt. 739 at 21. The language AWS cites is from the explanation of why its requested language was redundant, which is followed by the Court expressly declining AWS's proposed construction. *Id.* at 22 ("The Court therefore declines to construe location servers in a non-hierarchical configuration as requiring each location server to contain location information in the manner AWS suggests.").

In short, the Court already has construed "non-hierarchical" to mean each server "is able to return either the requested information or information useable by the client to locate the server

---

[9] Other than what already was rejected at summary judgment, this is all Kove knows about AWS's current position. If AWS now comes forward with a new argument, Kove requests the opportunity to address it.

with the requested information." *Id.* at 18-19. And it held no further construction is necessary, rejecting the same type of requirements AWS now seeks to add. Kove intends to prove AWS's products infringe because each accused location server either is able to return the requested location information or is able to use information to locate the server with the requested location information. The additional requirements of "containing" and "knowing" are not part of the Court's construction and add requirements to the patent inconsistent with the Court's ruling.

**"Identifier-Location":** AWS seeks to argue that only a single "location" can be associated with each "identifier." Ex. K6 (Grama Rpt.) ¶ 262; Ex. K7 (Grama Dep Tr.) at 201-205. But, the Court has already construed "identifier," "identifier string," and "identification string" to mean "unique encoding that identifies an individual entity, and with which *zero or more* location strings are associated in a location server." Dkt. 484 at 11 (emphasis added). This construction makes clear that you can have multiple locations for each identifier. AWS's contrary construction and opinions should be excluded.

**"Hash table":** The parties agreed to a construction of "hash table" that the Court adopted. Dkt. 484 at 30-31. Grama asserts that for there to be a "hash table," there must also be "randomization," and that because Goodrich never showed that the hash tables in the accused products "randomize," the claim limitation is not met. *See* Ex. K6 (Grama Rpt.) ¶¶ 236, 237, 240. But randomization is not part of the claim construction. Dkt. 484 at 30-31. Making matters worse, AWS did not disclose this "randomization" noninfringement theory in its non-infringement contentions and so Kove never had an opportunity to address it. Ex. K2 (AWS's Fifth Invalidity Contentions) at 25-32 (concerning "hash functions"); LPR 2.3(a). AWS's undisclosed noninfringement argument that rests on an incorrect claim construction should be excluded.

**"Location server":** AWS also seeks to add a requirement to "location servers." For

example, Grama interprets this claim term to prohibit location servers from storing the "data" being requested (*i.e.*, location servers can only store location-related information). Ex. K6 (Grama Rpt.) ¶¶ 268-72. This additional requirement is inconsistent with the Court's claim construction order, which construed "location server" as "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to [location] request messages from clients." Dkt. 484 at 19-21. Moreover, during the claim construction process, AWS proposed this same construction but then abandoned it. *See* Dkt. 484 at 19 n.6. Accordingly, this claim construction argument has been forfeited by AWS. *E.g.*, *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 714-15 (Fed. Cir. 2022); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1376 (Fed. Cir. 2015).

**"Location":** Dr. Grama's application of the term "location" is materially different from the Court's operative construction. The Court's construction of "location" for these purposes boils down to "specif[ying] where [the] data . . . is stored." Dkt. 484 at 11. But Dr. Grama adds the requirement that something cannot be a location if the data moves but the location stays the same, and that a location must be "all that you need to find exactly the data that you're looking for." Ex. K6 (Grama Rpt.) ¶¶ 264, 265, 267; Ex. K7 (Grama Tr.) at 214-22, 236-37. Neither of those requirements are in the Court's construction.

Indeed, Dr Grama's additional location requirements exclude preferred embodiments from the Kove patents' specifications. That runs afoul of bedrock claim construction principles. *See, e.g.*, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (construction that excludes preferred embodiments is "rarely, if ever, correct"). Kove's patents provide multiple examples of "locations," including an "HTTP Universal Resource Locator (URL)." Ex. K9 ('170 patent) at 4:53-57. AWS acknowledges that a URL is within the scope of "location" and

understood as a "location"; in fact, a URL is colloquially called a "web *address*." Dkt. 219 at 7-8. But Dr. Grama's interpretation excludes these URL-based embodiments.

Retrieving data specified by a URL requires sending a request to a network of servers that translate the URL into an IP address. Dkt. 247, Ex. 1 ¶¶ 15-16. This is akin to knowing you are going to a specific place (like Judge Kennelly's courtroom), but then having to look up the courtroom number. As in the courtroom example, because URLs are mapped to IP addresses, the IP addresses that correspond to a URL can change over time while the URL remains the same. It is useful to disconnect the URL (which is easy to remember and represents the location of the webpage data) from the specific servers that store the webpage data. So when you type in the same URL, for example "https://www.amazon.com," you will, over time, retrieve the webpage data from different servers located at different IP addresses. Dr. Grama's construction excludes URLs because the servers that provide a webpage's data may change while the URL stays the same, and because you need to look up the IP address as part of the process of accessing the data.

Dr. Grama's attempt to apply a different, narrower construction of "location" is improper. There is nothing in the Court's construction to support Dr. Grama's additional requirements.[10]

**"Unique Set":** Certain claims require that each location server maintain a "unique set of an aggregate set of location information." *E.g.*, Ex. K8 ('978 patent, claims 10, 14, 17). AWS seeks to argue that this claim term requires that there can be no overlap *whatsoever* in between

---

[10] Dr. Grama's narrowed construction turns out to be an attempt to resurrect a position AWS previously abandoned. During claim construction in 2020, AWS tried to limit "location" in essentially the same way Dr. Grama does now. Dkt. 219 at 2-8. It ultimately forfeited that position when it agreed to a broader construction. Dkt. 382, Ex. B at 1. Kove pointed out that AWS's proposed construction would read out preferred embodiments. Dkt. 247 at 9-10. AWS then abandoned its construction and agreed to one substantially the same as what Kove proposed. Dkt. 382, Ex. B at 1. The Court adopted this agreed-to construction. Dkt. 484 at 11. The critical point here is the total absence of AWS's "directly contact" requirement. AWS forfeited that requirement when it gave up its position and agreed to Kove's. *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022); *see* Dkt. 699 at 10-14.

sets to meet the purported "uniqueness" requirement. Ex. K6 (Grama Rpt.) ¶¶ 253, 303-05; Ex. K7 (Grama Dep. Tr.) at 184:6-188:20. Put simply, each set must be unique, but an individual component among many within a set can also be used in another set. Thus, for example, if the first location server stored locations A, B, and C (i.e., the unique set was locations A, B, and C), and a second location server stored locations C, D, and E, the location <u>sets</u> would be unique, even if they included some of the same <u>locations</u>. AWS is conflating <u>location sets</u> with <u>locations</u>. The claim simply requires unique location <u>sets</u>.

AWS's interpretation is contrary to the plain language of the claim, which requires uniqueness for the "set" of location information, not uniqueness for every item of location information within a set. Its interpretation also excludes preferred embodiments, as the patents disclose "replication," which involves storing multiple copies of the same location information across multiple location servers. Ex. K8 (978 patent, 7:43-47, Fig. 5) ("FIG. 5 illustrates a flat NDTP server topology using clustering, or a distributed topology using *replication*, where each of the NDTP servers 12 in the cluster may contain a different portion.") (emphasis added); *see CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376, 1381 (Fed. Cir. 2022) ("[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct." (attribution omitted)). The Court should exclude AWS's added "uniqueness" requirement.

**"Set":** Similarly, AWS seeks to argue that the claim construction requirement that location servers maintain "a set" of location information is a requirement that they store the "complete set" of location information. Ex. K6 (Grama Rpt.) ¶¶ 277, 280-82, 288, 366; Ex. K7 (Grama Dep. Tr.) at 245-48, 251-56; Dkt. 484 at 35. Neither the Court's construction nor the claims contain this requirement, as they merely require "*a* set," (which can be any size) stored on "a plurality" of location servers, in the context of an open-ended "system." *E.g.*, Dkt. 484 at 11 (sets can contain

"zero or more" locations); Ex. K8 ('170 patent, claims 1, 5, 15); *Salazar v. AT&T Mobility LLC*, 64 F.4th 1311, 1315 (Fed. Cir. 2023) ("[T]he indefinite article 'a' means 'one or more' in open-ended claims[.]").   Nor does the specification limit the invention to storing complete sets of location information.   To the contrary, the specification describes embodiments where different sets of location servers can store different sets of location information. *E.g.*, Ex. K8 ('978 patent) at Figs. 6, 21, 7:47-53, 19:38-49.   The Court should exclude AWS's improper "completeness" requirement.

## VIII. KOVE'S MIL NO. 8: Precluding Evidence Or Argument Regarding Kove's Case Against Google.

Kove moves to preclude AWS from referencing Kove's pending patent case against Google at trial.   That Kove has a case against Google has no relevance to the present case, especially since completely different products are being accused.   AWS has never articulated a reason for not agreeing to Kove's motion other than the fact that Kove did not reciprocate and agree to AWS's broader proposal of excluding references to any litigation involving either party. But AWS's proposal has separate problems (to be addressed if AWS seeks to exclude those references to other cases), which will rise or fall on their own merits, and has nothing to do with the Google case.   Raising Kove's litigation against Google also would unduly prejudice Kove by misleading the jury that Kove's protection of its intellectual property rights against another party has anything to do with this case or that it somehow is litigious.[11]   Accordingly, Kove respectfully asks that AWS be precluded from presenting evidence or argument as to Kove's litigation against Google.

_____

[11] To be clear, Kove does not plan to present any unrelated AWS cases to argue AWS is litigious, though if AWS is permitted to attack Kove's unrelated litigation, it would be fair game for Kove to note the many cases in which AWS is accused of unlawfully using others' patented technology, or in which AWS seeks to protect its own intellectual property.

Dated: March 7, 2024

Respectfully submitted,

/s/ Courtland L. Reichman

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 560-3501

Christine E. Lehman *(pro hac vice)*
clehman@reichmanjorgensen.com
Adam Adler *(pro hac vice)*
aadler@reichmanjorgensen.com
Philip Eklem *(pro hac vice)*
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Amy L. Ruhland *(pro hac vice)*
aruhland@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
901 S. Mopac Expressway, Bldg. 1, Suite 300
Austin, TX 78746
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5037

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard *(pro hac vice)*
sballard@reichmanjorgensen.com
Jennifer P. Estremera (pro hac vice)
jestremera@reichmanjorgensen.com Gina H.
Cremona (pro hac vice)
gcremona@reichmanjorgensen.com
Navid Bayar (pro hac vice)
nbayar@reichmanjorgensen.com
Savannah Carnes *(pro hac vice)*
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

***ATTORNEYS FOR PLAINTIFF
KOVE IO, INC.***

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of March, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Courtland L. Reichman*
Courtland L. Reichman