**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KOVE IO, INC., | |
| *Plaintiff,* | Case No. 1:18-cv-8175 |
| v. | ██████████████ |
| AMAZON WEB SERVICES, INC., | |
| *Defendant.* | |

**AWS'S RESPONSE TO KOVE'S
OMNIBUS MOTIONS IN *LIMINE***

Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman *(pro hac vice)*
*jeffrey.saltman@fischllp.com*
Lisa N. Phillips *(pro hac vice)*
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW Suite 400
Washington, D.C. 20015
202.362.3500

Ken K. Fung *(pro hac vice)*
*ken.fung@fischllp.com*
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
650.362.8500

*Attorneys for Amazon Web Services, Inc.*

## <u>TABLE OF CONTENTS</u>

RESPONSE TO KOVE MIL NO. 1 ................................................................................................ 1

*Argument or Evidence About Litigation Financing*

RESPONSE TO KOVE MIL NO. 2 ................................................................................................ 2

*Evidence or Argument Regarding Kove's Timing in Bringing This Case*

RESPONSE TO KOVE MIL NO. 3 ................................................................................................ 4

*Evidence or Argument About AWS's/ATI's Patents, as Related to
Noninfringement or Invalidity*

RESPONSE TO KOVE MIL NO. 4 ................................................................................................ 5

*Practicing the Prior Art Defense*

RESPONSE TO KOVE MIL NO. 5 ................................................................................................ 7

*Prior Art Grounds Other Than the Precise Combinations in AWS's Invalidity
Contentions*

RESPONSE TO KOVE MIL NO. 6 ................................................................................................ 9

*Indefiniteness as an Invalidity Defense*

RESPONSE TO KOVE MIL NO. 7 .............................................................................................. 10

*Arguments or Testimony Contrary to the Court's Claim Constructions*

RESPONSE TO KOVE MIL NO. 8 .............................................................................................. 20

*Precluding Evidence or Argument Regarding Kove's Case Against Google*

# TABLE OF AUTHORITIES

## Cases

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*,
    889 F.3d 735 (Fed. Cir. 2018)........................................................................................ 7

*Abbott Point of Care, Inc. v. Epocal, Inc.*,
    868 F.Supp.2d 1310 (N.D. Ala. 2012)........................................................................... 4

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
    No. 16-cv-453, 2018 WL 798731 (D. Del. Feb. 9, 2018).............................................. 1

*Acceleron, LLC v. Dell Inc.*,
    No. 1:12-cv-4123, 2022 WL 1087683 (N.D. Ga. Mar. 7, 2022) ................................... 3

*Aylus Networks, Inc. v. Apple Inc.*,
    856 F.3d 1353 (Fed. Cir. 2017)................................................................................... 10

*Canon, Inc. v. Color Imaging, Inc.*,
    227 F. Supp. 3d 1303 (N.D. Ga. 2016)......................................................................... 4

*Colibri Heart Valve LLC v. Medtronic CoreValve LLC*,
    No. 8:20-cv-847, 2021 WL 10425630 (C.D. Cal. Mar. 26, 2021) ................................ 1

*Continental Circuits LLC v. Intel Corp.*,
    435 F. Supp. 3d 1014 (D. Ariz. 2020) .......................................................................... 1

*Cordance Corp. v. Amazon.com, Inc.*,
    658 F.3d 1330 (Fed. Cir. 2011)..................................................................................... 6

*Corning v. Burden*,
    56 U.S. 252 (1853)......................................................................................................... 4

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)..................................................................................................... 16

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
    No. 2:15-cv-1202, 2017 WL 2190055 (E.D. Tex. May 18, 2017) ................................ 3

*G+ Commc'ns, LLC v. Samsung Elecs. Co.*,
    No. 2:22-CV-00078-JRG, 2024 WL 83505 (E.D. Tex. Jan. 8, 2024) ........................... 2

*Gustafson, Inc. v. Intersystems Indus. Prod., Inc.*,
    897 F.2d 508 (Fed. Cir. 1990)....................................................................................... 2

*King Instruments Corp. v. Otari Corp.*,
    767 F. 2d 853 (Fed. Cir. 1985)...................................................................................... 4

*Old Chief v. U.S.*,
  519 U.S. 172 (1996)........................................................................................................... 2

*Shiley, Inc. v. Bentley Labs., Inc.*,
  794 F.2d 1561 (Fed. Cir. 1986)....................................................................................... 2

*Sioux Steel Co. v. Prairie Land Mill Wright Servs.*,
  No. 16-CV-2212, 2022 WL 17082541 (N.D. Ill. Nov. 18, 2022) ............................. 4

*Sonos, Inc. v. D&M Holdings, Inc.*,
  No. CV 14-1330-WCB, 2017 WL 5633204 (D. Del. Nov. 21, 2017)....................... 5

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
  279 F.3d 1357 (Fed. Cir. 2002)....................................................................................... 6

*Wimo Labs v. Polyconcept*,
  358 F. Supp.3d 761 (N.D. Ill. Mar. 6, 2019) .............................................................. 7

**Rules**

  LPR 3.1(b).......................................................................................................................... 7

iv

## RESPONSE TO KOVE MIL NO. 1
### *Argument or Evidence About Litigation Financing*

Argument and evidence about who has a stake in the outcome of this case is admissible, as the Court noted at the March 5 hearing.[1] And Kove itself has included an agreement on its exhibit list showing that a funder has a stake in the outcome here.[2] Further, the presence and investment of this funder will be relevant to rebutting Kove's expected David and Goliath theme, as detailed in AWS's motions in limine. AWS doesn't anticipate ownership and funding featuring prominently at trial, but AWS should be permitted to address those issues, given the facts of this particular case. Indeed, courts have concluded that litigation funding can be relevant in infringement cases, including, for example, to "refute any David vs. Goliath narrative at trial."[3]

That Kove has cited cases finding litigation funding agreements undiscoverable shows that the relevance of litigation funding hinges on the specific case facts.[4] And Kove's reliance on an earlier ruling in this case is misplaced. At that stage, Judge Pallmeyer found that documents related to a then-potential funding agreement were minimally relevant, and that they were work product that AWS hadn't shown a "substantial need" for.[5] Judge Pallmeyer distinguished AWS's cited cases by concluding that they "ruled only on the relevance of *final* litigation funding agreements, which Kove has never entered."[6] Now that Kove has entered a funding agreement, disclosed its

---

[1] Dkt. 808-2 at 15:8–11.

[2] *E.g.*, Dkt. 765-8 at 11.

[3] *See Continental Circuits LLC v. Intel Corp.* 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020); *see also Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 16-cv-453, 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018) (litigation funding "may be relevant to central issues like validity and infringement, valuation, damages, royalty rates, pre-suit investigative diligence, and whether [Plaintiff] is an operating company.").

[4] *Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. 8:20-cv-847, 2021 WL 10425630, at *4 (C.D. Cal. Mar. 26, 2021) (Relevance of litigation funding documents must be decided on a case-by-case basis.).

[5] Dkt. 497 at 22–23.

[6] *Id.* at 22 (emphasis in original).

1

existence and some details about it, and included an agreement referencing it on its exhibit list, work product protection doesn't apply to that evidence. As such, the topic of litigation funding is relevant and the associated evidence admissible, and Kove's first motion should be denied.

## RESPONSE TO KOVE MIL NO. 2
*Evidence or Argument Regarding Kove's Timing in Bringing This Case*

Kove's second motion is contrary to Supreme Court and Federal Circuit precedent holding that the timing of a party's actions is relevant for multiple reasons, including as evidence refuting willfulness. Indeed, the Federal Circuit explained in *Gustafson, Inc. v. Intersystems Industrial Products, Inc.*, that "[w]hether an act is 'willful' is by definition a question of the actor's intent, the answer to which must be inferred from all the circumstances."[7] Further, the Supreme Court instructs that courts must address relevance and Rule 403 objections "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case."[8] And Kove's filing of the complaint on December 12, 2018, is an important part of the narrative here.

For instance, Kove alleges that AWS "willfully blinded itself to the risk of infringement" and "enact[ed] policies to simply ignore the warning signs" of that risk.[9] AWS will be prejudiced if it's limited to contradicting that theory with the testimony of witnesses who deny knowledge of Kove's patents, unless AWS also has a full and fair opportunity to explain why there's no reason its witnesses *should have* known. Part of that explanation is that S3 has been on the market since 2006, and DDB since early 2012—almost 13 years and 7 years, respectively, before Kove first provided AWS notice of infringement through filing the complaint. Other parts include Kove's

---

[7] 897 F.2d 508, 510–11 (Fed. Cir. 1990); *accord G+ Commc'ns, LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00078-JRG, 2024 WL 83505, at *4 (E.D. Tex. Jan. 8, 2024) ("Willful infringement is an inquiry that considers the 'totality of the circumstances.'"); *Shiley, Inc. v. Bentley Labs., Inc.*, 794 F.2d 1561, 1568 (Fed. Cir. 1986) ("[O]ur prior and subsequent case law…looks to the 'totality of the circumstances.'").

[8] *Old Chief v. U.S.*, 519 U.S. 172, 183 (1996).

[9] Dkt. 699 at 52.

failure to license the asserted patents to anyone, failure to sue anyone else before AWS, and sales meetings with AWS where Kove didn't mention the patents. These events and Kove's timing in filing suit are all part of the "evidentiary richness and narrative integrity" that is expected at trial. And they all are necessary to rebut Kove's theory that AWS should've known about the patents.

Further, courts have considered similar facts when evaluating whether willfulness should go to the jury at all. For example, in *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, Federal Circuit Judge Bryson found that a patent owner's pre-suit letter identifying the allegedly infringed patents was insufficient to send willfulness to the jury.[10] In doing so, he noted that the letter didn't set out the strength of the patent owner's infringement case or address validity, and was sent three years after the defendant began marketing the accused product.[11]

Beyond the issue of willfulness, here the timeline is also particularly relevant to the jury's evaluation of witness testimony. As many witnesses—including Dr. Overton—acknowledged during their depositions, the events underlying the parties' claims and defenses occurred "a long time ago."[12] If witnesses are challenged for not remembering certain information, the timing of Kove's filing suit is a relevant point. And basic principles of fairness require that AWS be able to explain to the jury when the products were developed and released, in relation to when the complaint was

---

[10] No. 2:15-cv-1202, 2017 WL 2190055, at *2 (E.D. Tex. May 18, 2017).

[11] *Id.*; *accord GoTV Streaming, LLC v. Netflix, Inc.*, No. 2:22-cv-7556, 2023 WL 2627016, at *3 (C.D. Cal. Feb. 16, 2023) ("[A]mbushing defendants with willful infringement claims instead of typical cease-and-desist letters … effectively den[ies] defendants the opportunity to meaningfully evaluate and potentially cease the allegedly infringing conduct."); *Acceleron, LLC v. Dell Inc.*, No. 1:12-cv-4123, 2022 WL 1087683, at *4–5 (N.D. Ga. Mar. 7, 2022) ("Dell's … decision to continue to manufacture and sell its products without changes, and Acceleron's allegations of infringement were not enough for a reasonable jury to find that infringement was either known or so obvious that it should have been known."), *aff'd*, No. 2022-1620, 2023 WL 4503189 (Fed. Cir. July 13, 2023)

[12] *See e.g.*, Dkt. 659-3 (5/17/23 J. Overton Dep. Tr.) at 447:9-10 ("I don't know. I mean this is a long, long, long time ago."); Ex. 1 (5/24/23 R. Blackman Dep. Tr.) at 23:11–13 ("It was a long time ago….Those are the only two that come to mind."); Ex. 2 (5/10/23 S. Sivasubramanian Dep. Tr.) at 34:8-11 (Kove counsel acknowledging that they were asking about events that occurred "a long time ago").

filed. Thus, for all these reasons, the Court should deny Kove's second motion.

### RESPONSE TO KOVE MIL NO. 3

*Evidence or Argument About AWS's/ATI's Patents, as Related to Noninfringement or Invalidity*

Kove also seeks to prevent AWS from referencing the fact that it and other Amazon entities have patents, on the basis that such patents are irrelevant to noninfringement and invalidity. But these patents are relevant to rebutting Kove's willfulness allegations. Indeed, in *Corning v. Burden*, the Supreme Court held that a defendant's own patent on an accused product was relevant since it showed "that the defendant has acted in good faith, and is not a wanton infringer of the plaintiff's rights."[13] And in *King Instrument Corp. v. Otari Corp.* the Federal Circuit likewise found that the district court properly admitted one of the defendant's patents that cited and was issued over the patents-in-suit since it showed that the defendant had a good faith belief that its activities weren't infringing.[14] Courts in this district and others regularly reach the same conclusion.[15]

Further, Kove omits that it has included 205 AWS and Amazon patents on its own exhibit list.[16] Kove intends to introduce those patents—which cite the Kove patents as references considered during prosecution—as evidence on willfulness. But Kove shouldn't be permitted to introduce these patents and then prevent AWS from responding. If Kove were so permitted, it would be able to make arguments and ask the jury to draw inferences about how such patents support

---

[13] 56 U.S. 252, 271 (1853).

[14] *King Instruments Corp. v. Otari Corp.*, 767 F. 2d 853, 867 (Fed. Cir. 1985)

[15] *See Sioux Steel Co. v. Prairie Land Mill Wright Servs.*, No. 16-CV-2212, 2022 WL 17082541, at *3 (N.D. Ill. Nov. 18, 2022) (defendant's prior patents "highly relevant" to willfulness); *Canon, Inc. v. Color Imaging, Inc.*, 227 F. Supp. 3d 1303, 1306 (N.D. Ga. 2016) ("Courts have considered several factors in determining whether infringement was willful, including whether the alleged infringer reasonably believed its activities were patentably distinct"); *Abbott Point of Care, Inc. v. Epocal, Inc.*, 868 F.Supp.2d 1310, 1329 (N.D. Ala. 2012) (similar).

[16] *See* Dkt. 765-8 at 49–53.

Kove's substantive arguments, while precluding AWS from introducing any arguments or evidence about what AWS's submission of the Kove patents to the Patent Office and the Patent Office's actions show. And Kove's cited cases teach only that it may be confusing to a jury for a defendant to introduce its patents to show that it couldn't have infringed the patents-in-suit. Kove omits portions of those cases showing how courts treat this issue when the plaintiff introduces such evidence, as Kove intends to do here. For example, Kove quotes *Sonos, Inc. v. D&M Holdings, Inc.* for the proposition that "allowing introduction of defendant's patents 'could mislead the jury into believing that [defendant's] patents give it the right to practice technology that is covered by those patents even though it is also covered by [plaintiff's] patents.'"[17] This quoted language doesn't apply here, since Kove intends to introduce AWS's patents. Just before that quote, *Sonos* states that the defendant could reference its own patents if the plaintiff "first opens the door to any such evidence, such as by stating that D&M lacks its own technology and therefore must rely on stealing technology."[18] And none of Kove's cases hold that defendants are categorically barred from relying on their own patents.

Hence, AWS's and other Amazon entities' patents are at least relevant to AWS's good faith belief that it wasn't infringing Kove's patents, as evidenced by the fact that those patents cite the patents-in-suit. And it would be unfairly prejudicial to allow Kove to introduce Amazon patents without allowing AWS a response. So, Kove's third motion should be denied.

## RESPONSE TO KOVE MIL NO. 4
### *Practicing the Prior Art Defense*

Kove again seeks to exclude what it refers to as AWS's "practicing the prior art" defense. It also raised this issue in its *Daubert* motion, seeking to strike certain testimony from Dr. Grama

---

[17] Dkt. 808 at 5 (citing, No. CV 14-1330-WCB, 2017 WL 5633204, at *1 (D. Del. Nov. 21, 2017)).

[18] *Sonos, Inc.*, 2017 WL 5633204, at *1.

on the same premise.[19] But as AWS showed in its response to that motion, Dr. Grama's opinions don't rely on this defense, and AWS doesn't intend to make it.[20] Kove's infringement contentions and its expert's report both specifically cite the AWS source code module that references the ███████ by name as evidence of infringement.[21] Specifically, Dr. Goodrich relies on the source code's use of "███████████████████████████████████████████████████████████████████████████████████████████"[22] And AWS's expert explains how this method differs from the asserted claims.[23]

Federal Circuit law does prohibit a defendant from relying on a comparison of its own product to prior art to prove that the product doesn't infringe the patents-in-suit.[24] This so-called "practicing the prior art" defense is problematic because it allows a defendant to bootstrap an invalidity argument to its noninfringement positions, and invalidity must be proven by clear and convincing evidence, while infringement is evaluated under a preponderance of the evidence.[25] Followed to its end, that defense short circuits the invalidity burden by allowing a defendant to argue that if the accused product and the prior art are the same, the patent owner's infringement contentions must read on both (thus implying the patent is invalid), or neither (requiring a verdict of non-infringement)—a "heads I win, tails you lose" dichotomy.

---

[19] Dkt. 748 at 21.

[20] Dkt. 760 at 21–22.

[21] E.g., Dkt. 745-5 (Kove contentions, Ex. E) at 8.

[22] Dkt. 760-15 at ¶ 77.

[23] Dkt. 748-32 (Ex. CC) at ¶ 283; *see id.* at ¶¶ 271–85; *id.* at ¶ 283 (████████████████████████ ████████████████).

[24] *See Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1337 (Fed. Cir. 2011) (explaining defense).

[25] *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1367 (Fed. Cir. 2002)

That isn't what AWS intends to show here. AWS doesn't argue that simply because S3 practices prior art that could have invalidated the patents, it can't infringe. Nor does AWS intend to present the ███████ as an invalidating reference alone. AWS's argument explains that S3 practices its own implementation of the █████████████████, and that method is different from the one described in the patents. Indeed, Dr. Overton himself testified that the ████████████ was "very different" from his own patents.[26] Thus, AWS is not "forsak[ing] any comparison between the asserted claims and the accused product," as the Federal Circuit forbids.[27] Rather, AWS is showing that S3's specific features differ from the asserted claims, using evidence that Kove itself included in its infringement contentions and expert report. Thus, the Court should deny Kove's fourth motion.

## RESPONSE TO KOVE MIL NO. 5
*Prior Art Grounds Other Than the Precise Combinations in AWS's Invalidity Contentions*

LPR 3.1(b) limits defendants to four prior art grounds, and four non-prior art grounds, per asserted claim.[28] Both AWS's invalidity contentions and the courtesy list it sent Kove on March 6 meet this requirement. And this Court has been clear that LPR 3.1(b) "does not purport to dictate or limit the proof that may be offered in support of a specific example of a claim based on a per-missible ground."[29] Kove's motion, however, mischaracterizes the parties' dispute over AWS's compliance with LPR 3.1(b) using specific examples of a claim. And by doing so, Kove seeks to dictate and limit the proof the AWS may offer in support of its disclosed, permissible grounds.

---

[26] *See* Dkt. 795-1 at 716:6–15. (███████████████ and the ██████████ is "a very, very different concept" than patents-in-suit.)

[27] *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018).

[28] LPR 3.1(b).

[29] *Wimo Labs v. Polyconcept*, 358 F. Supp.3d 761, 766-67 (N.D. Ill. Mar. 6, 2019) (Cole M.J.).

AWS sought leave to amend its invalidity contentions on March 23, 2023.[30] Kove opposed AWS's request to amend because it argued that the amendments were unnecessary in light of AWS's proposed claim constructions.[31] The Court granted AWS's motion. And for nearly 12 months after receiving AWS's amended contentions, Kove raised no objection that they didn't comply with LPR 3.1(b). Kove first raised the issue on February 26, 2024, during jury instruction drafting.[32] Following discussions between the parties, Kove emailed AWS requesting clarification on three of AWS's disclosed prior art grounds.[33] In an attempt to "refine or moot the need for" this motion, AWS answered, providing a complete list of asserted grounds for each asserted claim and limiting its contentions to four prior art grounds and three non-prior art grounds, and eliminating any redundant references from those prior art combinations.[34]

Kove's main criticism is that the list AWS provided in its March 6 email "diverges from what is actually in its claim charts."[35] But this is incorrect. For example, for claim 15 of the '170 patent, Kove cites to individual examples within Exhibit 1D. But the first sentence of Exhibit 1D reads that "Amazon asserts that claims 1, 2, 6, 8, 12, and 15 of U.S. Patent No. 7,814,170 ("the '170 patent") are obvious in view of the combination of U.S. Patent No. 6,212,521 to Minami ("Minami"), DNS, and Karger '618/420." And each page of the table, including every page Kove cites to, includes the header "U.S. Patent No. 6,212,521 to Minami, DNS, and Karger '618/420." Further, Kove cites to Exhibit 2A's reference to obviousness based on "OracleNamesAdminGuide

---

[30] Dkt. 596.

[31] Dkt. 615.

[32] Ex. 3 at 1.

[33] Dkt. 808-5 (Ex. K4) at 8-10 (questions in red).

[34] *Id.* at 1-6, 8-10. In its email, Kove acknowledged that AWS had disclosed these grounds in its invalidity contentions. *Id.* at 8 ("screen clips taken from AWS's Fifth Amended contentions"); s*ee also id.* at 1-6.

[35] Dkt. 808 at 8.

alone or in combination with OracleUnleashed, Steen, and/or Wolff."[36] AWS's listing of four prior art grounds in the parties' discussion noted that at trial AWS would present the combination of "OracleNamesAdminGuide with OracleUnleashed, and Steen," which Kove doesn't dispute was in AWS's contentions.[37]

And in an attempt to resolve this dispute and also show that it's intended trial grounds were disclosed in its Final Invalidity Contentions as required by LPR 3.1(b), AWS attaches the list of four prior art grounds and three non-prior art grounds per claim that it intends to be available for trial as Exhibit 4.[38] Thus, the Court should deny Kove's fifth motion and allow AWS to present evidence and testimony regarding the prior art grounds identified in its final invalidity contentions and again in Exhibit 4.

## **RESPONSE TO KOVE MIL NO. 6**
*Indefiniteness as an Invalidity Defense*

This wasn't a motion that Kove proposed or that the parties discussed at the meet and confer before this briefing. So, contrary to what Kove states, AWS didn't "confirm[] that" it "intends to try its indefiniteness defense" to the jury.[39] Rather, this Kove motion seems to be premised

---

[36] Dkt. 808 at 8.

[37] *Id.* at 8-9.

[38] Ex. 4. In its initial email list, AWS made a typographical error eliminating Yocom from certain of its combinations. Yocom was included in AWS's contentions and in other combinations in its email list, and Exhibit 4 includes it.

[39] Dkt. 808 at 9. For completeness, on February 29, before the meet and confer, Kove sent the following as proposed MIL No. 1 (now No. 5): "Invalidity grounds limited only to those disclosed in [AWS's] Fifth Amended Contentions, no variations, or permutations and no more than 4 grounds per claim per LPR 3.1(b), including for purposes of 'background.'" Ex. 5 at 10. When the parties conferred, AWS confirmed that it intended to rely on its invalidity contentions and proposed a "mutual narrowing agreement of 12 asserted claims and 3 prior art grounds per claim" to simplify trial. *Id.* Kove did not ask any follow-up questions about AWS's indefiniteness ground. *See, e.g.*, Dkt. 808-5 (Ex. K4) at 8 (S. Carnes 3-4-24 email, asking "Does AWS agree that its invalidity grounds are set forth in [the below] screen clips taken from AWS's Fifth Amended contentions"?). The first time Kove addressed indefiniteness was one day before filing this motion, when Kove asked AWS to "confirm that you withdraw [the indefiniteness] non-prior art ground." Ex. 6 at 2. AWS declined.

only on AWS's inclusion of indefiniteness in its invalidity contentions. Because Kove filed this MIL in violation of this Court's standing order requiring the parties to meet and confer on potential motions *in limine*, this Court should deny it on that basis.[40] To the extent this Court considers this motion, AWS doesn't intend to argue indefiniteness to the jury. But AWS reserves the right to argue indefiniteness to the court, consistent with its invalidity contentions, and based on any Kove evidence at trial that further supports that argument. This reservation is particularly warranted given Kove's 11th-hour claim construction requests, discussed below.[41]

**RESPONSE TO KOVE MIL NO. 7**

*Arguments or Testimony Contrary to the Court's Claim Constructions*

Kove's seventh motion is a collection of six belated requests to: (1) exclude expert testimony that Kove should've addressed in its *Daubert* motions; or (2) adopt new claim constructions that Kove should've raised long ago, either during the original claim construction process or when AWS requested (and Kove opposed) additional claim construction briefing in Fall 2022.[42] Each subpart in this motion is therefore improper and untimely, and should be denied on that basis. Further, each subpart lacks merit, and should be denied for the additional reasons detailed below.

**"Non-hierarchical":** Kove seeks to undo this Court's recent finding of prosecution disclaimer, or rob it of any effect, by preventing the Court from defining "non-hierarchical" in a meaningful way to the jury. In doing so, Kove continues to improperly interpret its asserted claims "one way" for validity "and in a different way against accused infringers," the very thing this Court's finding of prosecution disclaimer should prevent.[43]

---

[40] Ex. 7 at 4.

[41] AWS's invalidity expert, Dr. Grama, didn't opine on indefiniteness in his report. AWS doesn't intend to improperly solicit any testimony beyond his report.

[42] *See generally* Dkt. 539 (AWS motion for additional claim construction briefing, which Kove opposed).

[43] *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017).

In its recent summary judgment decision, this Court found that "[d]uring the reexamination proceedings, Kove clearly and unambiguously limited the asserted claims to location server structures that have a 'non-hierarchical' configuration."[44] As Kove acknowledges, this Court found it unnecessary to further construe "non-hierarchical," because the definition of that term was undisputed in the context of Kove's patents.[45] Despite that, Kove initially objected to including any definition of "non-hierarchical" in the final jury instructions.[46] And although Kove's present motion seems to relent on whether some definition, at least, should be included, it continues to object to the appropriate wording that AWS proposed.

Specifically, in the parties' Disputed [Proposed] Final Jury Instructions, AWS proposed defining "non-hierarchical" to mean that each location server "must be enabled to return the requested location information or know which location server contains the location information of the desired data."[47] Kove objected to including that definition of "non-hierarchical" in the final jury instructions, without proposing an alternative.[48] In this motion, though, Kove acknowledges that this "Court ruled that Kove acted as its own lexicographer in defining the term 'non-hierarchical' and … adopted Kove's definition."[49] Further, Kove states "the Court already has construed 'non-hierarchical,' and it means that: "each server is able to return either the requested information

---

[44] Dkt. 739 at 19; *accord id.* at 15 ("In sum, Kove's reexamination statements clearly and unambiguously disavowed hierarchical location server configurations. AWS's proposed construction, providing that location servers must be arranged in 'non-hierarchical structures,' is therefore appropriate."); *id.* at 19 ("This Court therefore construes the claim term 'plurality of location servers' to require 'location servers in non-hierarchical structures.'"); *see also id.* at 18 (rejecting Kove arguments attempting to carve out '978 claims 6, 17, 23, 24, and 30 from "the 'non-hierarchical configuration' disclaimer").

[45] *Id.* at 18–19.

[46] Dkt. 765-14 at ECF pp. 20–21 (Disputed [Proposed] Final Jury Instructions at 3–4) objecting to AWS's included definition of "non-hierarchical," without proposing any alternative definition).

[47] *Id.*

[48] *Id.*

[49] Dkt. 808 at 12 (citing Dkt. 739 at 19).

11

or information useable by the client to locate the server with the requested information."[50] Based on the above, this Court should, at a minimum, provide the jury with the above definition of "non-hierarchical" that Kove again agreed to in its motion *in limine*.

The wording that AWS timely included in the proposed final jury instructions, however, better reflects what this Court found and what the inventors invented (and disclaimed). In the section of this Court's decision that Kove quotes for the above definition, this Court went on to explain how non-hierarchical configurations differ from hierarchical configurations. As this Court stated, the location servers in "hierarchical structured networks do not 'know' what's contained in other servers throughout the network" and "do not necessarily store information for finding the location server having the desired location information."[51] The language AWS proposed ("…or know which location server contains the location information…") thus incorporates that explanation in this Court's decision.

And the other sections of this Court's decision are consistent with the use of "know" and "contain" in AWS's proposed definition—as are the asserted claims themselves, the patent specifications, this Court's claim construction order, and numerous Kove statements during the reexaminations and throughout this case. For instance, this Court declined to find the second disclaimer that AWS argued—i.e., limiting the asserted claims to structures where "each location server contains the relevant location information, or information to locate the relevant location information." This Court explained that that second disclaimer would be "redundant," given that:

> Kove has conceded that the mandate that "each server in the server network" must be enabled to "return the requested information" or "know which location server

---

[50] Dkt. 808 at 14–15 (quoting Dkt. 739 at 18-19, internal quotation marks omitted); *accord id.* at 12 ("The Court explained how Kove defined 'non-hierarchical' in the context of the patents as follows: [A]ny given server is able to return either the requested information or information useable by the client to locate the server with the requested information.").

[51] Dkt. 739 at 18–19 (quoting Dkt. 700-131 at 25 and Dkt. 687-32 at 36).

contains the location(s) of the desired data" is disclosed by the "non-hierarchical configuration" that the claims require. [Dkt. 687] ¶ 33; *see also id.* ¶ 34 ("These limitations cannot be met in hierarchical configurations … because each location server in tree-structures do not necessarily store information for finding the location server having the desired location information.").[52]

AWS's proposed definition incorporates that description of what Kove conceded with respect to the "non-hierarchical" requirement. And contrary to what Kove suggests, this Court declining to find the second disclaimer doesn't absolve any asserted claims from satisfying the requirement for a "non-hierarchical" configuration of location servers.

Further, to the extent Kove's objection is based on the word "contain," Kove ignores that the asserted claims expressly describe the queried location server or another known location server as "containing" the desired location information. For instance, '640 claim 18 describes a "a plurality of data location servers, at least one of the plurality of data location servers containing location information associated with the identifier string."[53] That claim further describes that if the queried location server "does not contain the location string associated with the identifier string," it redirects the client to "a different data location server" that "contains the location string."[54] The other two asserted '640 claims have identical requirements.[55] The six asserted '170 claims also use "contains" or substantially similar language (stored/includes/ known to have).[56] As do the eight

---

[52] Dkt. 739 at 21–22.

[53] Dkt. 687-1 ('640 patent) at claim 18.

[54] *Id.*

[55] *Id.* at claims 17 (similar independent claim), 24 (depends from claim 18).

[56] Dkt. 687-2 ('170 patent) at claim 1 (describing "data location server network comprising a plurality of data location servers, wherein data location information … is stored in the data location server network," and "each one of the data location servers is configured to determine" at least one location server that "includes [the desired] location information"), claim 6 (describing location server that "contains" desired location information or can identify location server "known to have" it), claim 15 (describing "plurality of location servers including data location information," and steps for identifying "which … includes the [desired] information"). The remaining asserted '170 claims (2, 8, 12) depend from either claim 1 or 6.

asserted '978 claims (containing/contains/having/storing/stores).[57]

Consistent with that claim language and Kove's arguments, this Court's original claim construction order repeatedly describes the claimed location servers as "containing" the desired location information.[58] For example, this Court adopted Kove's "location information" constructions (which differ slightly by patent), after finding that "location information" in the '170 claims refers to "the exact location of data" or "the server that contains the exact location of data."[59]

And Kove repeatedly referred to what the claimed location servers "contain" or "know," when attempting to establish validity in the reexaminations and in previous briefing and expert reports here. For example, Kove stated in the reexaminations that '170 claim 1 requires "each and every data location server" to be "configured to determine the data location server that contains the location information."[60] Five similar examples are cited below.[61] And in his rebuttal report on validity, Dr. Goodrich attempted to distinguish AWS's cited prior art on the basis that it doesn't

---

[57] Dkt. 687-3 ('978 patent) at claim 1 (from which '978 asserted claims 3 and 6 depend, describing "a first location server containing a first set of location information"); claim 10 (describing "plurality of location servers containing location information," wherein queried location server either "contains" desired location information or redirects client to "a location server having location information related to the desired identifier"), claim 14 ("a plurality of location servers, each location server containing a unique set of location information …."); claim 17 (similar, but describing "storing" location information). The remaining '978 asserted claims (23, 24, 30) depend from claim 17.

[58] See, e.g., 484 at 3 ("More specifically, an entity's 'identifier' is mapped to 'locations' of repositories containing data pertaining to that entity."); id. at 5 ("The redirect message informs the client that the first location server did not contain the relevant location information, and it specifies a second location server that does contain such relevant location information."); id. at 34 ("[T]he subscriber would eventually be directed to a repository (or repositories) containing data associated with the identifier.").

[59] Dkt. 484 at 17; see also id. at 14 (noting Kove's arguments describing "second type" of location information as "where to look … when the first location server does not contain that data").

[60] Dkt. 539-3 at 36.

[61] Id. at 53 (similar, describing other asserted '170 claims); Dkt. 539-4 at 35 (describing '978 claims as requiring non-hierarchical configurations that "enable each server in the server network to **know** which location server contains the location(s) of the desired data"), 66 (similar); Dkt. 539-2 at 23 ("The '640 patent requires that *each and every* server in the data location server network have the capability of transmitting information to the client that the client then processes to determine the server that contains its requested information."), 39 (similar); see also Dkt. 539 (additional examples).

satisfy requirements that can "determine which location server stores the sought-after location information with *certainty and specificity*."[62] As noted, Dr. Goodrich used this phrase, "certainty and specificity," no less than 129 times when opining that prior art fails to satisfy requirements of the asserted claims.[63] Yet, he didn't use it once when opining that the accused products, S3 and DDB, satisfy the same requirements of the same claims.[64]

This Court should define "non-hierarchical" for the jury as AWS proposed in the instructions, consistent with what this Court found and what Kove repeatedly said the claims require—i.e., each location server "must be enabled to return the requested location information or know which location server contains the location information of the desired data." Absent that, this Court should use Kove's proposed wording for how the Court "construed 'non-hierarchical.'"[65]

**"Identifier-Location":** Citing Grama ¶ 262, Kove asserts that AWS is "seek[ing] to argue that only a single 'location' can be associated with each 'identifier.'"[66] That paragraph, however, doesn't support Kove's assertion. Rather, it provides background on how S3 works. As Dr. Grama explained, objects in S3 are split into ███, which are stored in separate ███.[67] Dr. Goodrich provided similar opinions.[68] Dr. Grama further states that, as a result, "there is no single location to associate with the ███."[69] That sentence is consistent with the Court's construction, and

---

[62] Dkt. 687 at ¶ 51.

[63] Dkt. 686 at 10.

[64] *See id.*

[65] Dkt. 808 at 14–15 ("[T]he Court already has construed 'non-hierarchical' to mean each server 'is able to return either the requested information or information useable by the client to locate the server with the requested information.'"); *accord id.* at 12 (similar, but with "any given" rather than "each").

[66] Dkt. 808 at 15 (citing Dkt. 808-7 (Ex. K6) at ¶ 262 and related testimony about this paragraph).

[67] Dkt. 808-7 (Ex. K6) at ¶ 262.

[68] Dkt 762-13 at ¶¶ 33, 40, 87.

[69] Dkt. 808-7 (Ex. K6) at ¶ 262.

cross examination provides appropriate relief to the extent Kove believes there's confusion.[70]

**"Hash table"**: As Kove acknowledges, the Court construed "hash table" as a data structure "where values are stored and retrieved by applying a *hash function* …."[71] A POSITA would've understood that applying a hash function requires randomization. As Dr. Grama explained:

> Hash functions are designed to randomize the results from the object identifier so that the data is randomly distributed across the database. This randomization is a critical piece of making sure that "hot" data objects or services will not be grouped together on a single server. By randomizing the locations for the hot object or the hot service, hashing results in load balancing protection.[72]

And in his book "Data Structures & Algorithms," Dr. Goodrich similarly teaches the role of randomization to scale and shift in a hashValue method: "The hashValue method relies on an original key's hash code, as returned by its hashCode( ) method, followed by MAD compression based on a prime number and the scale and shift parameters that are randomly chosen in the constructor."[73] There is thus no debate about how hashing works.

And this is consistent with the Court's construction. Additionally, the Court didn't reject, and AWS didn't abandon, any proposed constructions that addressed this well-understood purpose of a hash function.[74] As such, testimony referring to that purpose isn't contrary to any construction, and the case law Kove cites provides no basis to exclude it.

---

[70] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" to attack the testimony of an expert whose opinions are methodologically sound.)

[71] Dkt. 484 at 30–31.

[72] Dkt. 748-32 at ¶ 57 (citing Dewitt, which describes routine data-distribution methods as of June 1992); *see also id.* at ¶¶ 54–58 (further describing known methods of data organization at the relevant time).

[73] Data Structures & Algorithms by Michael T. Goodrich, et al, Wiley 6th Ed., page 422 (2014) (available at https://bedford-computing.co.uk/learning/wp-content/uploads/2016/08/Data-Structures-and-Algorithms-in-Java-6th-Edition.pdf).

[74] *See* Dkt. 484 at 30–31 (noting parties' proposed constructions, and adopting agreed construction that combines both proposals).

**"Location server"**: Kove claims that AWS is "seek[ing] to add a requirement" prohibiting the claimed "location servers from storing the 'data' being requested."[75] But the paragraphs of Dr. Grama's report that Kove cites (¶¶ 268–72) don't suggest that. For instance, ¶¶ 271–72 begin a new section of Dr. Grama's report that's unrelated to Kove's arguments, and seem to have been cited in error.[76] And Kove mischaracterizes ¶¶ 268–70, where Dr. Grama explained that an ████ can't be the location of a data entity and the data entity itself.[77] After all, separating data from its location is the premise of the alleged invention.[78] This portion of the motion thus should be denied.

**"Location"**: Kove acknowledges that a "location," per the agreed construction, "specifies where [the] data … is stored."[79] It's not merely an identifier, because all asserted claims require both locations and identifiers, in addition to location servers that maintain "identifier/location mappings."[80] Yet, Kove continues to attempt to blur the distinction between the "location" and "identifier," as it did before in connection with summary judgment.[81]

Indeed, there's no dispute that the claimed location and the claimed identifier are both used to find data.[82] One way of conceptualizing how they differ, consistent with the agreed construction,

---

[75] Dkt. 808 at 15–16 (citing Dkt. 808-7 (Ex. K6) at ¶¶ 268–72).

[76] Dkt. 808-7 (Ex. K6) at ¶¶ 271–72.

[77] *See id.* at ¶¶ 268–70.

[78] *See id.* at ¶ 269; *see also, e.g.*, Dkt. 687-1 at 1:62–65 (describing premise of alleged invention); Dkt. 484 at 3 (stating "'identifier/location mappings' are stored in 'location servers' separately from the data itself").

[79] Dkt. 808 at 16 (citing Dkt. 484 at 11).

[80] Dkt. 484 at 11.

[81] *See, e.g.*, Dkt. 699 at 7 (Kove arguing that "████ and ████ contain a 'location' because they … ████████ the sought-after ████," when ████████ is what defines the claimed identifier, not the claimed location). AWS responded to these Kove arguments. *See, e.g.*, Dkt. 714 at 24–25. The Court's decision didn't reach non-infringement under prior constructions and, as a result, didn't rule on these arguments. Dkt. 739 at 24.

[82] The Court's claim construction order gave the following example:

> [S]uppose a doctor wants to request all medical records pertaining to a particular patient. That patient is an "entity" who is identified by an "identifier," such as a Social Security

is to consider when data in a distributed database is moved. In that instance, "where" the data "is stored" changes. But as Dr. Grama explained, citing the relevant source code, what Kove alleges to be a location (e.g., ▮▮▮▮ in S3) wouldn't change.[83] In other words, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Thus, it's at most an identifier, not a location, since a location is what "specifies where [the] data … is stored." And Dr. Grama's opinions are fully consistent with the agreed construction.

If any party here is seeking to contradict the "location" construction, it's Kove. For instance, Dr. Goodrich opines that a ▮▮▮▮ is a "locator," when none of the asserted claims use the ambiguous term "locator."[84] Such opinions pose a substantial risk of confusing the jury, since "locator" could mean either the claimed location or the claimed identifier.[85] Based on Kove's arguments here, it will continue to blur the distinction between locations and identifiers at trial, and this Court should exclude Dr. Goodrich's "locator" opinions under Rule 403.

And to the extent Kove argues that AWS is seeking to add a requirement that something can't be a location unless it's "all that you need to find exactly the data that you're looking for," Kove takes Dr. Grama's testimony out of context.[86] Dr. Grama explained that this answer, like his other answers to this line of hypothetical questions, reflected how a POSITA would understand

---

number. The patient's records are "data," and the whereabouts of that data are "locations." A patient's data are associated with the patient's identifier, and the identifier is mapped to data locations. These identifier/location mappings are stored on one or more "location servers." A doctor can use a "client" to access patient data by querying one or more location servers with a patient's identifier.

Dkt. 484 at 3.

[83] Dkt. 748–32 at ¶¶ 265–66.

[84] Dkt. 762-13 at ¶ 87.

[85] *See* note 82, *supra* (quoting Dkt. 484 at 3).

[86] Dkt. 808 at 16 (quoting Dkt. 808-8 (Ex. K7) at 216:20–22, though the citations in Kove's brief don't make the source of this quotation clear).

"location" in an ordinary context. As he stated, 11 lines after the answer that Kove quotes: "And once again, this entire conversation was prefixed as a POSITA, not in the claim term language of 'location.'"[87] Thus, nothing that Kove cites shows that Dr. Grama contradicted the "location" construction or suggests that AWS intends to elicit testimony that contradicts that construction. And this portion of Kove's motion should also be denied.

**"Unique Set"/"Set":** Although Kove ostensibly seeks a ruling excluding argument or testimony "contrary to the Court's claim constructions," the last two subparts of this motion address the terms "unique set" and "set," which this Court never construed in this case. The parties also didn't previously propose any constructions for these terms.[88] At bottom, Kove's arguments thus amount to new and unprompted requests to reopen claim construction, with trial just days away, despite Kove repeatedly resisting AWS's earlier requests for additional claim construction. On that basis alone, this Court should deny these portions of this motion.

Kove's arguments also lack merit. Kove fails to establish that it's entitled to any construction of "unique set" or "set" that incorporates its present arguments, much less any construction that might justify a threshold ruling precluding any evidence that AWS intends to offer at trial. For instance, with respect to the "unique set" limitation in certain asserted claims, Kove suggests that the "stored locations" in the unique set of locations may overlap other sets, as long as one stored location within the set is unique. But the intrinsic evidence Kove cites merely describes replication of stored locations.[89] And AWS isn't relying on replicated or copied locations to show that the

---

[87] Dkt. 808-8 at 217:11–13.

[88] On the contrary, Kove agreed to the "location" construction, which uses "set," without attempting to further define that word. And the phrase "unique set" isn't in any adopted or agreed constructions.

[89] Dkt. 808 at 18 (citing '978 patent, 7:43–47).

accused products fail to satisfy the "unique set" limitations.[90]

As for "set," Kove complains that AWS is "seek[ing] to argue that … location servers maintain … the 'complete set' of location information."[91] But the paragraphs in Dr. Grama's report that Kove cites don't state that, and generally relate to the asserted claims' requirement for non-hierarchical structures of location servers.[92] So, once again, it's Kove, not AWS, that's seeking to contradict the Court's constructions here.[93] Accordingly, this Court should deny both the "unique set" and "set" subparts of Kove's seventh motion, as well.

### RESPONSE TO KOVE MIL NO. 8
*Precluding Evidence or Argument Regarding Kove's Case Against Google*

Kove's final motion seeks to preclude references to its pending case against Google, arguing that whether Google infringes Kove's patents is irrelevant to whether AWS also infringes them. Assuming that's true, it's unclear what relevance any co-pending litigation against AWS or Amazon has to this matter, either. AWS doesn't intend to introduce the Google litigation unless Kove first opens the door to it by, for instance, asserting that the cloud computing industry has widely infringed Kove's patents. But it would be prejudicial to allow Kove to refer to co-pending litigation, while preventing AWS from doing the same. Thus, this court should either exclude all references to other suits involving the parties, or none of them.

---

[90] Dkt. 808-7 (Ex. K6) at ¶¶ 253, 303–05; Dkt. 808-8 (Ex. K7) at 184:6–188:20.

[91] Dkt. 808 at 18.

[92] *See*, *e.g.*, Dkt. 808-7 (Ex. K6) at ¶ 288.

[93] Again, there's no construction of "set" here. But even if "set" were a construed term, a reference to a "complete set" would be consistent with that. Merriam-Webster's first definition for "complete" is: "having all necessary parts." Logically, an alleged "set" must have "all necessary parts" to satisfy that claim element.

Dated: March 14, 2024

Respectfully Submitted,

/s/ R. William Sigler
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (pro hac vice)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (pro hac vice)
*lisa.phillips@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW Suite 400
Washington, DC 20015
202.362.3500

Ken K. Fung (*pro hac vice*)
*ken.fung@fischllp.com*
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
650.362.8200

*Attorneys for Amazon Web Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 14, 2024, I electronically filed the foregoing under seal with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, and also served a copy on all counsel of record via email.

*/s/ R. William Sigler*
R. William Sigler