# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Kove IO, Inc., | Civil Action No. 1:18-cv-08175 |
| Plaintiff, | |
| v. | Hon. Matthew F. Kennelly |
| Amazon Web Services, Inc., | Jury Trial Demanded |
| Defendant. | |

## KOVE IO, INC.'S RESPONSE TO AMAZON'S MOTIONS IN LIMINE

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

   I.     AWS'S MIL No. 1: Certain Words to Describe Infringement. .......................................2

   II.    AWS'S MIL No. 2: Certain Words Describing AWS's Conduct. ..................................5

   III.   AWS'S MIL No. 3: Comments on the Absence of Witnesses. .......................................6

   IV.   AWS'S MIL No. 4: Evidence About AWS's Spoliation...................................................7

   V.    AWS's MIL No. 5: Relevant Prosecution History. ........................................................8

   VI.   AWS's MIL No. 6: Parties' Size and Wealth. ...............................................................12

   VII.  AWS's MIL No. 7: Overall Revenue and Profits for the Accused Products.................14

   VIII. AWS's MIL No. 8: Amazon's Statements About the Litigation in SEC Filings. ..........17

   IX.   AWS's MIL No. 9: Witnesses' Financial Bias. ..............................................................17

   X.    AWS's MIL No. 10: References To Other Litigation. ...................................................18

CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
    2019 WL 2330855 (E.D.N.Y. 2019)........................................................................14

*Antrim Pharms. LLC v. Bio-Pharm, Inc.*,
    2018 WL 3344370 (N.D. Ill. July 8, 2018) (Kennelly, J.)......................................2, 13, 17, 20

*Biomerieux, S.A. v. Hologic, Inc.*,
    2020 WL 583917 (D. Del. Feb. 6, 2020) (Stark, J.) ..............................................17

*Broadcom Corp. v. Emulex Corp.*,
    732 F.3d 1325 (Fed. Cir. 2013)............................................................................2

*Cadence Pharms. Inc. v. Exela PharmSci Inc.*,
    780 F.3d 1364 (Fed. Cir. 2015)..........................................................................11

*Chaffee v. Boston Belting Co.*,
    63 U.S. (22 How.) 217 (1859) .............................................................................3

*Chicago Coll. of Osteopathic Med. v. George A. Fuller Co.*,
    719 F.2d 1335 (7th Cir. 1983) .............................................................................6

*Contentguard Holdings v. Apple, Inc.*,
    No. 2:13-cv-1112, Dkt. 759 (E.D. Tex. Aug. 3, 2015) ..........................................8

*Deflecto, LLC v. Dundas Jafine Inc.*,
    2015 WL 9413148 (W.D. Mo. Dec. 22, 2015) .....................................................4

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    No. 5:13-cv-03999-BLF, Dkt. 304 (N.D. Cal. June 18, 2015) .............................18

*Freshhub, Inc. v. Amazon.com, Inc.*,
    No. 6:21-cv-511, Dkt. 247 (W.D. Tex. June 22, 2022) ..........................................4

*Freshub, Inc. v Amazon.com*,
    No. 6:21-cv-511, Dkt. 222 (W.D. Tex. June 13, 2021) ..........................................4

*Glaxo Grp. Ltd. v. Apotex, Inc.*,
    376 F.3d 1339 (Fed. Cir. 2004)..........................................................................11

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
    2017 WL 2844646 (E.D. Tex. May 19, 2017) ....................................................18

*Griffith v. Goodyear Dunlop Tires N. Am., Ltd.*,
2018 WL 4658721 (W.D.N.Y. Sep. 28, 2018) ...................................................13

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016).............................................................................................5

*Heath v. A.B. Dick Co.*,
253 F.2d 30 (7th Cir. 1958) .............................................................................2, 6

*Hillman Grp. v. KeyMe, LLC*,
2021 WL 1248180 (E.D. Tex. Mar. 30, 2021) ................................................4, 14

*Impax Labs., Inc. v. Aventis Pharms., Inc.*,
545 F.3d 1312 (Fed. Cir. 2008)...........................................................................11

*Intell. Ventures II LLC v. FedEx Corp.*,
2018 WL 10638138 (E.D. Tex. Apr. 26, 2018) ..................................................14

*Jonasson v. Lutheran Child & Fam. Servs.*,
115 F.3d 436 (7th Cir. 1997) .........................................................................2, 5, 6

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
988 F.2d 1117 (Fed. Cir. 1993)..............................................................................4

*Leonard v. Stemtech Health Scis., Inc.*,
981 F. Supp. 2d 273 (D. Del. 2013)........................................................................1

*Luv n' care v. Laurain*,
2021 WL 7907283 (W.D. La. Mar. 29, 2021) .....................................................14

*Madrigal v. Allstate Ins. Co.*,
2015 WL 12746232 (C.D. Cal. Oct. 29, 2015)......................................................2

*Microsoft Corp. v. i4i Ltd. P'ship*,
564 U.S. 91 (2011)........................................................................................9, 10

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
2017 WL 4570787 (E.D. Wis. Oct. 12, 2017) .....................................................11

*Neurografix v. Brainlab, Inc.*,
No. 1:12-cv-6075, Dkt. 333 (N.D. Ill. Jul. 6, 2020) (Kennelly, J.)......................18

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*,
2019 WL 5206273 (N.D. Ill. Mar. 13, 2019) (Kennelly, J.)................................11

*Parish v. City of Elkhart*,
702 F.3d 997 (7th Cir. 2012) ........................................................................1, 10

*Personalized Media Commc'ns, LLC v. Zynga, Inc.*,
   2013 WL 10253110 (E.D. Tex. Oct. 30, 2013) ...............................................................11

*Personalized User Model, LLP v. Google Inc.*,
   No. 1:09-cv-525, Dkt. 602 (D. Del. Feb. 27, 2014) .......................................................11

*PowerOasis, Inc. v. T–Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008) .....................................................................................11

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
   849 F.3d 1360 (Fed. Cir. 2017) .....................................................................................19

*Prolitec Inc. v. Scentair Techs. LLC*,
   No. 18-cv-826-WCB, Dkt. 301 (D. Del. Jan. 26, 2024) .................................................3

*Return Mail, Inc. v. U.S. Postal Serv.*,
   139 S. Ct. 1853 (2019) ....................................................................................................9

*Saint Lawrence Commc'ns LLC v. ZTE Corp.*,
   2017 WL 11517123 (E.D. Tex. Mar. 2, 2017) ................................................................3

*Sanofi–Synthelabo v. Apotex, Inc.*,
   470 F.3d 1368 (Fed. Cir. 2006) .....................................................................................11

*Sapperstein v. Hager*,
   188 F.3d 852 (7th Cir. 1999) .........................................................................................18

*Sciele Pharma Inc. v. Lupin Ltd.*,
   684 F.3d 1253 (Fed. Cir. 2012) .....................................................................................10

*Shire LLC v. Amneal Pharms., LLC*,
   802 F.3d 1301 (Fed. Cir. 2015) .....................................................................................10

*Sprint/United Mgmt. Co. v. Mendelsohn*,
   552 U.S. 379 (2008) .........................................................................................................1

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   14 F.4th 1323 (Fed. Cir. 2021) ........................................................................................5

*Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp.*,
   317 F.R.D. 620 (N.D. Ill. 2016) ....................................................................................17

*Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*,
   No. 1:10-cv-715, Dkt. 2037 (N.D. Ill. Aug. 5, 2021) ...................................................18

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
   2017 WL 11489792 (C.D. Cal. Nov. 15, 2017) .............................................................14

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)................................................................16

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
No. 2:21-cv-246, Dkt. 346 (E.D. Tex. Sept. 1, 2022)..............................4

*United States v. Buckner*,
91 F.3d 34 (7th Cir. 1996) ................................................................1, 13

*United States v. Kozinski*,
16 F.3d 795 (7th Cir. 1994) ........................................................................5

*United States v. Norwood*,
982 F.3d 1032 (7th Cir. 2020) ..................................................................1

*United States v. Wolfenbarger*,
2021 WL 3212833 (N.D. Cal. July 29, 2021).......................................2, 13

*Va. Innovation Scis. v. Amazon.com, Inc.*,
No. 4:18-cv-474, Dkt. 845 (E.D. Tex. Sept. 2, 2020)..............................4

*Walden v. Georgia–Pacific Corp.*,
126 F.3d 506 (3d Cir. 1997)........................................................................1

*Wis. Alumni Rsch. Found. v. Apple, Inc*,
No. 3:14-cv-62, Dkt. 462 (W.D. Wis. Sept. 28, 2015) ............................8

**Federal Statutes**

35 U.S.C. § 282..............................................................................................8

35 U.S.C. § 284............................................................................................12

35 U.S.C. § 305..............................................................................................9

35 U.S.C. § 307..............................................................................................9

35 U.S.C. § 315(e)(2)....................................................................................11

**Rules**

Fed. R. Civ. Proc. 1006................................................................................17

Fed. R. Evid. 403 ...........................................................................................1

Fed. R. Evid. 801(d)(2)..................................................................................7

**Regulations**

37 C.F.R. § 1.555(b) ..................................................................................................................9

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ......................................................................................3

Merriam-Webster, https://www.merriam-webster.com/dictionary/trespass (last
    visited March 14, 2024) ..........................................................................................................3

Patent Process: An Overview for Jurors, Fed. Jud. Ctr. (Nov. 22, 2013),
    https://www.youtube.com/watch?v=ax7QHQTbKQE ............................................................2

**INTRODUCTION**

AWS's motions in limine seek to exclude highly probative evidence, obtain advisory rulings on undisputed issues, and secure categorical bans on words and often-vague topics AWS does not like—often without the necessary context.  All ten should be denied.

Every one of AWS's motions relies on Federal Rule of Evidence 403.  But its requests are repeatedly at odds both with that rule's substance and with its necessarily context-sensitive nature.  Rule 403 permits exclusion only when evidence's "probative value is substantially outweighed by a" specified "danger," usually of "unfair prejudice."  Fed. R. Evid. 403.  The key word is "unfair."  "The most relevant evidence is, by its nature, prejudicial, but it is only *unfair* prejudice that requires exclusion."  *Parish v. City of Elkhart*, 702 F.3d 997, 1001 (7th Cir. 2012).  And context is key: "Both probative value and prejudice must be determined in context, and as the probative value increases, so does [courts'] tolerance of the risk of prejudice."  *Id.*

Requests to exclude "broad classes of evidence" outside the context of the actual evidence and arguments at trial are not appropriate for motions in limine; they "should generally be deferred until trial," when rulings can be made "in proper context."  *See, e.g.*, *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276-78 (D. Del. 2013).  All the more so for relevance and Rule 403 issues, which are "necessarily context-sensitive."  *United States v. Norwood*, 982 F.3d 1032, 1052 (7th Cir. 2020) (attribution omitted); *see also, e.g.*, *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008) ("Relevance and prejudice under Rules 401 and 403 are determined in the context of the facts and arguments in a particular case, and thus are generally not amenable to broad *per se* rules.").  As a result, those issues are generally "best reserved for a specific trial situation."  *Walden v. Georgia–Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997).

Given those principles, the "wholesale exclusion" of evidence under Rule 403 "before hearing it and considering it in context[]" is rarely, if ever, appropriate.  *See, e.g.*, *United States v.*

*Buckner*, 91 F.3d 34, 37 (7th Cir. 1996) ("abuse of discretion" to do so).  Pretrial categorical bans are viable only when the banned evidence is necessarily inadmissible, regardless of context.  *See, e.g.*, *United States v. Wolfenbarger*, 2021 WL 3212833, at *1 (N.D. Cal. July 29, 2021) ("[T]o exclude evidence on a motion in limine the evidence must be impermissible on all potential grounds."); *Madrigal v. Allstate Ins. Co.*, 2015 WL 12746232, at *1 (C.D. Cal. Oct. 29, 2015) (when there is "any question" as to admissibility, "the court should reserve ruling . . . until [it] actually arise[s], in the context of the trial" (attribution omitted)).  Otherwise, specific objections should be addressed at trial in the context of the parties' evidence and arguments.  *See, e.g.*, *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997) (For some evidence, "it is necessary to defer ruling [on admissibility] until during trial, when the trial judge can better estimate its impact on the jury."); *Antrim Pharms. LLC v. Bio-Pharm, Inc.*, 2018 WL 3344370, at *4 (N.D. Ill. July 8, 2018) (Kennelly, J.) (denying motion in limine for similar reason).

## I.      AWS'S MIL No. 1: Certain Words to Describe Infringement.

Kove should be permitted to use language consistent with the jury instructions, including trespassing and copying.  The jury will watch the Federal Judicial Center's patent tutorial video as part of its preliminary instruction (by agreement of the parties, Dkt. 765-13 at 11).  That video analogizes patents to "a deed to a piece of property," which "grants the owner the right to keep people off the property."  The Patent Process: An Overview for Jurors, Fed. Jud. Ctr. (Nov. 22, 2013), https://www.youtube.com/watch?v=ax7QHQTbKQE.  The video invokes the comparison to trespass because it is an easily understood explanation of patent rights.  Trespass has long been an acknowledged synonym for patent infringement.  *E.g.*, *Heath v. A.B. Dick Co.*, 253 F.2d 30, 34 (7th Cir. 1958) ("Infringement of a patent is a tort or wrong; it is a trespass on the property rights of the patentee, or at least it is analogous to a trespass."); *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1338 (Fed. Cir. 2013) ("The courts have a long history of remedying trespass on

property rights—including patent rights—by removing the trespasser.").  Indeed, patents were historically enforced by bringing "an action of trespass on the case."  *E.g.*, *Chaffee v. Boston Belting Co.*, 63 U.S. (22 How.) 217, 219 (1859).  Kove should be permitted to use language consistent with the patent video and the Federal Circuit, such as comparing patent rights to land rights.  *E.g.*, *Saint Lawrence Commc'ns LLC v. ZTE Corp.*, 2017 WL 11517123, at *2 (E.D. Tex. Mar. 2, 2017) (permitting "comments consistent with the patent video").

The parties need to be able to explain complicated concepts to the jury, using the tools of the English language to do so.  The concept of trespassing is understandable and on point for the violation of a property right.  The patent video compares patents to other property like real estate, and just as unlawful entry on real property is trespassing, so too is unlawful use of a patent trespassing on that property.  In law and in life, trespass's ordinary meaning is "an unlawful act committed on the person, property, or rights of another."  *Trespass*, Merriam-Webster, https://www.merriam-webster.com/dictionary/trespass (last visited March 14, 2024) (noun def. 1a); *accord Trespass*, Black's Law Dictionary (11th ed. 2019) (def. 1) (similar).  There is nothing unfairly prejudicial about accurately using this word in the English language.

Judge Bryson of the Federal Circuit, when sitting by designation, recently instructed a jury that a patent claim is akin to a property deed, "*i.e.*, similar to a landowner who can prevent others from trespassing on the bounded property."  *Prolitec Inc. v. Scentair Techs. LLC*, No. 18-cv-826-WCB, Dkt. 301 at 30 (D. Del. Jan. 26, 2024).  That language comes directly from the Federal Circuit Bar Association Model Patent Jury Instructions and has been adopted around the country, including by Judge Albright and judges in the Eastern District of Texas.  Ex. K11 at 76 (Glossary).[1]

---

[1] A recent search for this language on Docket Navigator turned up 51 results, from the Districts of Delaware, Minnesota, Nebraska, Oregon, New Jersey, the Southern District of Florida, the Western District of Arkansas, the Northern District of Florida, the Western District of Washington, the Central District of

And both Judges Gilstrap and Albright have permitted the use of words like "copying," "stealing," and "trespass." *United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 2:21-cv-246, Dkt. 346 at 17 (E.D. Tex. Sept. 1, 2022) (permitting "copied" and "stole"); *id.*, Dkt. 335 at 121:8-18 ("This is going to go where the evidence takes us, and I don't see a basis to supplant the jury's ability to judge the evidence and the credibility of the witnesses, and I'm going to deny the motion."); *Freshub, Inc. v Amazon.com*, No. 6:21-cv-511, Dkt. 222 at 2 (W.D. Tex. June 13, 2021) (permitting "trespass"); *id.*, Dkt. 216 at 53:5-12 (using "an analogy in real estate where this is like trespass" is a "a pretty standard argument in my experience").

In addition, the jury is required to consider "copying" as part of the objective indicia of nonobviousness. Ex. K10 (Seventh Circuit Model Patent Jury Instructions) at 74 (11.3.9 Obviousness—Additional Factors Indicating Nonobviousness [Pre-AIA and Post-AIA]) ("You should consider whether any of the following are true . . . . 4. Did others copy the invention?"). Copying is also highly relevant for willfulness. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1127 (Fed. Cir. 1993) ("[C]opying was strong evidence of willful infringement"); Ex. K10 at 46 (11.2.14 Willful Infringement).[2] Even in AWS's own cited cases, patent owners are permitted to reference copying because "copying is a legal concept." *Hillman Grp. v. KeyMe, LLC*, 2021 WL 1248180, at *7 (E.D. Tex. Mar. 30, 2021); *see Deflecto, LLC v. Dundas Jafine Inc.*, 2015 WL 9413148, at *1 (W.D. Mo. Dec. 22, 2015) (similar).

It is fair game to use language to factually describe the evidence as it unfolds at trial. *See USAA*, No. 2:21-cv-245, Dkt. 335 at 121:8-18 ("This is going to go where the evidence takes

---

California, the Northern District of California, and the Northern District of Texas. Ex. K12.

    Judge Albright alone used "trespass" six times, and judges in the Eastern District of Texas used "trespass" eight times. *E.g.*, *Freshhub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511, Dkt. 247 at 41 (W.D. Tex. June 22, 2022); *Va. Innovation Scis. v. Amazon.com, Inc.*, No. 4:18-cv-474, Dkt. 845 at 31 (E.D. Tex. Sept. 2, 2020). *Contra* Dkt. 806 ("Mot.") 1-2 (suggesting that these courts ban the word).

    [2] The parties dispute the exact willfulness instruction but agree it requires deliberate infringement.

us . . . ."). Kove will not use language to inflame the jury ("pirating") or inappropriate legal definitions ("misappropriating"), nor will it suggest that AWS committed an offense other than willful infringement (*e.g.*, a criminal offense). But to the extent the evidence supports a finding that AWS trespassed or copied, Kove should be able to call a spade a spade.

Any particularized objections can be taken up at trial, in the context of the admitted evidence. *See Jonasson*, 115 F.3d at 440; *supra* p. 1-2.

## II. AWS'S MIL No. 2: Certain Words Describing AWS's Conduct.

Continuing through the dictionary, AWS asks this Court to broadly preclude Kove from factually describing AWS's conduct, all before a single piece of evidence is admitted. Kove should be permitted to describe conduct, including using words like "dishonest" and "bully," to the extent such language is supported at trial by the admitted evidence. At this point, AWS's request boils down to categorically banning words it dislikes, without regard to whether those words will be supported by the evidence. That is inappropriate for limine ruling. *See Jonasson*, 115 F.3d at 440 (in limine rulings are best used for evidence "clearly" inadmissible "for any purpose").

Moreover, a witness's honesty and demeanor are always at issue insofar as the jury is assessing credibility. Impeachment by contradiction requires "presenting evidence that part or all of a witness' testimony is incorrect." *United States v. Kozinski*, 16 F.3d 795, 805 (7th Cir. 1994); *see* Ex. K13 at 18 (Preliminary—Credibility of Witnesses) (Seventh Circuit model instructions telling the jury to determine if a witness "is truthful and accurate, in part, in whole, or not at all").

AWS also seeks to censor factual testimony. If a witness testifies that AWS acted in a manner consistent with a bully or harasser, Kove should be permitted to question the witness on that conduct and make corresponding arguments to the jury. Such evidence is probative of AWS's state of mind, and thus of willfulness. *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1328-31 (Fed. Cir. 2021) ("motivation for harm"); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93,

105 (2016) ("knowledge of the actor at the time of the challenged conduct"). If AWS disagrees

with a witness, AWS should examine the witness and make its own arguments. There is no cause

for a categorical ban on certain descriptive words, before any evidence is considered; any specific

concerns are best addressed in the "more concrete setting" of trial. *See Jonasson*, 115 F.3d at 440.[3]

## III. AWS'S MIL No. 3: Comments on the Absence of Witnesses.

The Federal Circuit and the Seventh Circuit have expressly rejected AWS's argument:

"When a party knows of witnesses on a material issue and they are within his control to produce,

if the party chooses to not call the witnesses, the fact finder may draw the inference that the

testimony would have been unfavorable." *A.B. Dick Co.*, 798 F.2d at 1400 n.9 (citing *Chicago

Coll. of Osteopathic Med. v. George A. Fuller Co.*, 719 F.2d 1335, 1353 (7th Cir. 1983)).

AWS's witnesses are current or former employees "peculiarly within [its] power to

produce." *Chi. Coll.*, 719 F.3d at 1353 (attribution omitted); *see A.B. Dick*, 798 F.2d at 1400 n.9

("witnesses are not considered 'equally available' to both parties" where "the likelihood of bias

. . . is great," *e.g.*, "employees"). None reside within the Court's subpoena power. Dkt. 765-4.

The model jury instruction regarding video depositions is beside the point. *Contra* Mot. 3.

It provides that juries should give sworn testimony the same consideration whether that testimony

was live or recorded. Ex. K13 at 9 (1.05 Deposition Testimony). That has nothing to do with the

consideration of *missing* testimony. *See id.* The Seventh Circuit's model instructions expressly

permit adverse inferences from missing witnesses.[4] Kove will not suggest that sworn testimony

presented in different formats should be given different weight. But if AWS chooses to leave the

---

[3] Kove has no intention to "name-call" or use the words "greedy," "corrupt," or "harassing," untethered to the evidence. But if the evidence reveals that AWS engaged in such behavior, Kove will point it out as relevant to its willfulness case or to the witness's credibility.

[4] Ex. K13 (1.19 - Adverse Inference from Missing Witness) ("[*Witness*] was mentioned at trial but did not testify. You may, but are not required to, assume that [*Witness's*] testimony would have been unfavorable to [*Plaintiff*] [*Defendant*].").

key players at home, Kove is entitled to comment on the absence of those witnesses and the jury is entitled to draw corresponding inferences.

## IV. AWS'S MIL No. 4: Evidence About AWS's Spoliation.

AWS moves on undisputed issues: Kove already agreed not to reference discovery disputes, motions, and rulings. Mot. Ex. 6. The only dispute is whether Kove may present evidence and argument about the absence of key documentary support. This can come up, for example, if a witness claims that documents exist, yet no such documents were produced despite an obligation to do so. Or it might come up where AWS spoliated relevant documents.

First, it is perfectly appropriate to ask witnesses about missing documents, including by impeaching them with discovery requests. For example, trials can involve a witness claiming that a fact is true and saying there are documents that prove it. The opponent has the right to confront and cross-examine the witness on such testimony by asking why, if those documents exist, they were not produced, despite document requests or on point interrogatories. Indeed, interrogatory responses are admissible. Fed. R. Evid. 801(d)(2) (statement of party opponent). Such cross-examination is routine and is necessary for the integrity of the adversarial process.

Second, this case also involves spoliation. As described in Kove's spoliation motion, Kove needs to inform the jury about AWS's spoliation to cure Kove's prejudice. Dkt. 748 at 9-11. AWS destroyed years' worth of performance metrics that Kove's technical expert would have considered in forming his opinions. Dkt. 748-1 ¶ 17 (Kove's technical expert's declaration). That data was highly relevant to Kove's damages analysis. Dkt. 748 at 6-7, 9-10. Because AWS failed to produce this data, Kove's expert was forced to project the available data going back in time. Dkt. 748-1 ¶¶ 18-19. Kove must explain to the jury why those projections were necessary to assuage any concerns about the lack of actual data. Dkt. 748 at 10-11. This problem was exacerbated by the fact that AWS's expert criticizes Kove for lacking data to support its damages

opinion—in other words, AWS destroyed the data and then attacked Kove because it is missing. Dkt. 748-32 ¶ 445 (AWS criticizing Kove's expert for providing "no support for his conclusion[s]").  Kove must be permitted to respond to these criticisms.

The Seventh Circuit's model instructions recognize that jurors may consider such evidence: "[I]f the reason Plaintiff has difficulty proving the amount of a reasonable royalty is that Defendant did not maintain adequate records, then you should resolve any doubts as to the amount of a reasonable royalty in Plaintiff's favor."  Ex. K10 at 90-91 (11.4.5 Reasonable Royalty).  Spoliation is also relevant to willfulness; destroying evidence suggests consciousness of guilt.  Dkt. 786 at 3.

In this context, AWS's request is anything but "routine[]." *Contra* Mot. 5.  None of AWS's cited orders concern spoliation or have any bearing on the particular facts of this case.  In fact, two of the cases simply granted agreed-upon motions without the need to consider the merits. *Contentguard Holdings v. Apple, Inc.*, No. 2:13-cv-1112, Dkt. 759 at 4 (E.D. Tex. Aug. 3, 2015) (No. 24 on list of agreed-upon motions); *Wis. Alumni Rsch. Found. v. Apple, Inc*, No. 3:14-cv-62, Dkt. 462 at 69:17-70:9 (W.D. Wis. Sept. 28, 2015) (court confirming motion is agreed-upon, unless "Apple opens the door," and then considering what constitutes door-opening).

## V.     AWS's MIL No. 5: Relevant Prosecution History.

AWS seeks to exclude evidence the Supreme Court and Federal Circuit have made clear is highly relevant to the jury's determination of validity.  As part of the examination process of the asserted patents, the U.S. Patent and Trademark Office ("PTO") determined that Kove's patents were valid after considering much of the same prior art AWS now says invalidates the patents. The fact that the PTO considered that prior art is admissible under binding precedent.

Patents are presumed valid.  35 U.S.C. § 282.  AWS has repeatedly challenged Kove's patents in administrative proceedings at the PTO, including an *inter partes* reexamination ("IPR") and seven separate *ex parte* reexaminations ("reexams").  For each reexam, AWS submitted

various prior art combinations to the PTO, arguing that Kove's claims were unpatentable, and launching the agency's reexamination of Kove's claims. *See generally Return Mail, Inc. v. U.S. Postal Serv.*, 139 S. Ct. 1853, 1858-60 (2019) (describing reexam process). During a reexam, the PTO reviews claims "according to the procedures established for initial examination," and thus without a presumption of validity. 35 U.S.C. § 305. The reexam becomes part of patent's prosecution history and, once complete, the PTO issues reexamination certificates as proof of patentability. *Id.* § 307. In short, the reexam process is just as much a part of the examination process as is the original examination before the patent issues.

AWS's PTO challenges were unsuccessful in relevant part. AWS submitted numerous prior art references, including OracleNamesAdminGuide, OracleUnleashed, Steen, Skagerwall, and Wolff (*see* Ex. K14), all of which are among the prior art references AWS intends to argue at trial to invalidate Kove's claims. The PTO reexamined Kove's claims based on these references and others, and confirmed their patentability. That is, the PTO found it more likely than not that Kove's claims were patentable in light of that prior art. 37 C.F.R. § 1.555(b) (preponderance standard). AWS intends to argue to the jury that Kove's patents are invalid in view of these same references, including some of the same combinations the PTO already considered. Ex. K15.

The Supreme Court has called introducing evidence of the PTO's prior consideration a "commonsense principle." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 110 (2011). The Court recognized a long history in which "new evidence supporting an invalidity defense may carry more weight in an infringement action than evidence previously considered by the PTO." *Id.* (cleaned up). The fact that the PTO considered a reference during prosecution is so influential that "the jury may be instructed to evaluate whether the evidence before it is materially new." *Id.* at 111.

AWS argues that because the PTO "never 'confirmed the patentability' of the asserted

claims over [the same] references and combinations,"[5] it would be "highly prejudicial and confusing" if Kove were permitted to inform the jury about what references were considered by the PTO in confirming the validity of the asserted claims. Mot. 8. AWS's concern goes to the weight of the evidence, not its admissibility. AWS may overcome the presumption of validity only upon a showing by clear and convincing evidence that the claims are invalid. That individual references or combinations were not considered by the PTO does not change the presumption or AWS's evidentiary burden, *i4i*, 564 U.S. 91 at 110, but it does go to weight. *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012) ("'[I]f the PTO did not have all material facts before it, its considered judgment may lose significant force' and the burden to persuade the finder of fact by clear and convincing evidence may, therefore, 'be easier to sustain.' **Instead, the fact that references were previously before the PTO goes to the weight the court or jury might assign to the proffered evidence**." (emphasis added)) (quoting *i4i*, 564 U.S. at 2251)).

AWS's objection boils down to seeking to exclude evidence that is bad for its case, but "[t]he most relevant evidence is, by its nature, prejudicial"; it hurts the other side's case. *Parish*, 702 F.3d at 1001. "[I]t is only *unfair* prejudice"—the concern that the jury will "decide the case on an improper or irrational basis"—that can justify exclusion. *Id.* There is nothing unfair about this evidence; its power lies in the significance the law gives it. Kove's patents are presumed valid, and AWS "ha[s] the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *See Shire*

---

[5] AWS's characterization is incorrect—the PTO considered some of the same reference combinations. In particular, in reexam '162, the PTO found claims 3, 10, and 14 of the '978 patent to be patentable over the same combination of references AWS plans to raise at trial: OracleNamesAdminGuide, OracleUnleashed, and Steen; and also Skagerwall and Wolff. Ex. K14; Ex. K15 (3/6/2024 Phillips email).

*LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015) (discussing prior art considered during prosecution); *PowerOasis, Inc. v. T–Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008) (similar).

The Federal Circuit has repeatedly held that a defendant "bears a difficult burden" when the PTO allows claims after considering "essentially the same reasons as defendants now raise." *Cadence Pharms. Inc. v. Exela PharmSci Inc*., 780 F.3d 1364, 1375 (Fed. Cir. 2015); *see, e.g.*, *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008) ("When the examiner considered the asserted prior art and basis for the validity challenge during patent prosecution, that burden becomes particularly heavy."); *Sanofi–Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1375 (Fed. Cir. 2006) ("[T]he '596 patent was before the Examiner during prosecution, which makes Apotex's burden of proving invalidity at trial 'especially difficult.'"); *Glaxo Grp. Ltd. v. Apotex, Inc*., 376 F.3d 1339, 1348 (Fed. Cir. 2004) ("especially difficult").

AWS cites cases concerning IPRs—a separate adversarial process before administrative patent judges—not completed reexams.[6] IPRs are not at issue here. Kove intends to introduce evidence of the completed reexams, not the IPR or reexams still pending before the PTO (unless AWS opens the door). So cases about IPRs and IPR estoppel[7] —including AWS's lead case, *Milwaukee Electric*—are irrelevant here. 2017 WL 4570787, at *7 (cited at Mot. 8-9). Not that it helps AWS much anyway; as the *Milwaukee Electric* court noted, "to the extent an examiner on reexamination looked at the same prior art being raised here, it is relevant that the examiner did

---

[6] *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 2017 WL 4570787, at *7 (E.D. Wis. Oct. 12, 2017) (analyzing instituted IPRs); *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, 2013 WL 10253110, at *1 (E.D. Tex. Oct. 30, 2013) (discussing a "pending" IPR); *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co*., 2019 WL 5206273, at *1 (N.D. Ill. Mar. 13, 2019) (Kennelly, J.) (an IPR that was instituted-in-part); *see also Personalized User Model, LLP v. Google Inc.*, No. 1:09-cv-525, Dkt. 602 at 4 (D. Del. Feb. 27, 2014) ("ongoing reexamination").

[7] IPR estoppel bars an IPR petitioner from raising in a later district court action "any ground that the petitioner raised or reasonably could have raised during the inter partes review." 35 U.S.C. § 315(e)(2).

not invalidate the patent on that ground." *Id.*

## VI.    AWS's MIL No. 6: Parties' Size and Wealth.

AWS's motion sweeps too broadly.  It seeks to exclude matters Kove already agreed not to reference, relevant evidence that is appropriate for the jury to consider, Kove's ability to respond to AWS's own experts, and matters too vague and out of context for a categorical pretrial ruling.

First, Kove already agreed in the meet and confer process to not reference Amazon's, AWS's, or Jeff Bezos's overall wealth, revenue, or profits.  So that is not an issue, as AWS knows.

Second, taken at face value, AWS's motion would preclude all references to either party's "size." Mot. 11.  But AWS's size is at the heart of this case.  Kove's inventions were intended to facilitate hyper-scalable cloud infrastructure and became a critical technology for AWS precisely because of its extraordinary size.  Dkt. 1, ¶¶ 1-2, 27-33.  The inventions allow AWS to offer a service at a scale never before seen in computing.  AWS's sweeping request to bar any mention of "size," no matter the context, would exclude directly probative and critical evidence.

Further, damages are measured by "a reasonable royalty for the use made of the invention *by the infringer*"—that is, they compensate for *the defendant's* use of the infringing technology. 35 U.S.C. § 284 (emphasis added).  AWS's size is directly relevant to the extent of its use of the infringing technology.  Kove's patent is what allows AWS to achieve this size, and the record is replete with testimony about how these technologies are critical to achieve AWS's (and for that matter, Amazon's) scope and scale.  *See, e.g.*, Ex. K16 ¶¶ 77, 84-85, 187, 189, 196, 233, 267. Measuring AWS's use of the patented technology is the centerpiece of Kove's damages case, Ex. K17 ¶¶ 264-427, 603, 618, as well as its industry expert's testimony on the importance of Kove's invention, Ex. K18 ¶¶ 28-63.  AWS's cherrypicked quotations from Mr. Bergman cannot overcome that reality.  *Contra* Mot. 12.

AWS's own damages expert agrees that size is relevant.  For example, she discusses how

AWS is "the world's most comprehensive and broadly adopted cloud," with "[m]illions of customers," and how AWS touts itself as the "leading cloud" with the "[l]argest community of customers and partners." Ex. K19 at 6. And her analysis is replete with comparisons to Kove's size and wealth. *See id.* at 70 (comparing the parties' relative bargaining power by reference to their size and financial health); *id.* at 131 (itemizing revenues of the patents' earlier owner as a measure of what kind of deal it would have struck with AWS in the hypothetical negotiation); *id.* at 88-89 (providing revenue and profit for S3 and DDB). AWS has made clear it intends to point out Kove's small size, limited resources, and relatively few employees.[8]

Absent a showing that evidence of Amazon's and AWS's overall size is inadmissible in all contexts, it is premature to completely preclude that evidence. *Supra* pp. 1-2; *see, e.g.*, *Buckner*, 91 F.3d at 37; *Wolfenbarger*, 2021 WL 3212833, at *1; *Antrim*, 2018 WL 3344370, at *4. If AWS has a specific objection, it should be addressed at trial in the context of the parties' actual evidence and arguments. *See, e.g.*, *Griffith v. Goodyear Dunlop Tires N. Am., Ltd.*, 2018 WL 4658721, at *9 (W.D.N.Y. Sep. 28, 2018) (denying motion to preclude reference to "corporate ownership, size, financial status, or nationality" because "without knowing the specific evidence, testimony, or argument at issue, [this Court] cannot enter a pretrial ruling.").

Third, AWS seeks a pretrial ruling to police trial themes, without specifying any particular evidence or arguments beyond "David and Goliath"-style themes—which it inexplicably conflates with arguing that a "big company can afford it," Mot. 13. *See also* Mot. 11 (appearing to lump in the accurate and fair statement in Kove's complaint that "[t]his case is about ensuring a level

---

[8] Separately, AWS has indicated that it intends to present to the jury the ▮▮▮▮▮ Kove obtained in funding, apparently to prove that Kove is financially well off and able to compete with AWS, which is addressed in Kove's motion in limine. Dkt. 808 at 1-2. AWS nonetheless suggests that because Kove compared its funding to AWS's ▮▮▮▮▮ in revenue in a brief for the Court in an unrelated context, Kove will make the same argument to the jury. Mot. 12. But as AWS knows, Kove already agreed not to reference AWS's overall revenues.

playing field so small competitors like Kove can compete fairly") (quoting Dkt. 1 at 2-3)). That request is hopelessly vague. It makes no sense to police vague speculation about the other side's themes without the context of actual arguments and divorced from the evidence. *Supra* pp. 1-2; *see also Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 2017 WL 11489792, at *7 (C.D. Cal. Nov. 15, 2017) (denying motion in limine to exclude "so-called 'David and Goliath' evidence" because the request was "overbroad," and the movant had "not shown the evidence to be inadmissible on all potential grounds" (cleaned up)). In context, depending on how the evidence comes in, some themes may be appropriate, and others may not. The Court should reject AWS's request to prejudge what the evidence will show and make categorical rulings in a vacuum.

The cases that AWS relies on are not contrary to Kove's position. *Intellectual Ventures* and *Hillman* granted motions precluding using "David v. Goliath" as a derogatory or pejorative term,[9] which is not applicable here—Kove will agree to not say "David v. Goliath" unless AWS opens the door. The remaining cases AWS cites include exceptions to referencing the size and wealth of the parties when relevant to support issues in the case, such as damages, and in the context of fairly presenting the facts in evidence, which is exactly what Kove intends to do.[10]

## VII.   AWS's MIL No. 7: Overall Revenue and Profits for the Accused Products.

AWS's motion is again a step too far and would exclude critical evidence relevant to

---

[9] *See Intell. Ventures II LLC v. FedEx Corp.*, 2018 WL 10638138, at *4, *6 (E.D. Tex. Apr. 26, 2018); *Hillman Grp., Inc. v. KeyMe, LLC*, 2021 WL 1248180, at *6 (E.D. Tex. Mar. 30, 2021).

[10] *See, e.g. Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 2019 WL 2330855, at *6 (E.D.N.Y. 2019) ("Financial and production capacity evidence necessary to support a determination of damages will be admitted. For instance, the parties' relative market positions may be relevant to a reasonable royalty determination, to the extent such has been properly disclosed in an expert report."); *Luv n' care v. Laurain*, 2021 WL 7907283, at *7 (W.D. La. Mar. 29, 2021) ("To the extent that evidence is relevant to an element of an asserted claim or defense, LNC's motion in limine is denied. For example, EZPZ is not precluded from presenting evidence of LNC's size before and after any alleged damages that LNC contends are related to a social media campaign or other alleged unfair trade practices."); *Hillman*, 2021 WL 1248180, at *6 ("The Court clarified, however, that this MIL does not preclude either party from fairly presenting the facts in evidence, so long as such facts are not characterized in a denigrating way.").

Kove's damages case. As mentioned, Kove already agreed not to reference Amazon's and AWS's overall profits and revenue. But preventing Kove from presenting revenue and profits for the accused products would unfairly restrain Kove's ability to present important aspects of its damages case. AWS would limit Kove to discussing profits AWS derived from the "infringing components of S3 and DDB." Mot. 14. That is unworkable. Those components are inextricably linked to the overall success of the accused products, making those products' overall revenue and profits relevant. Anyhow, AWS (unsurprisingly) does not track revenues and profits by infringing components. So, for Kove to put sufficient evidence before the jury to prove its case, it must start with the revenue and profits from the accused products and apportion down to those products' accused functionality. And importantly, the testimony will show that the accused functionality is central to the accused products; those products would not function in a technically and commercially acceptable manner without the patented technology.

The record is replete with evidence and expert testimony that there would be no S3 or DDB without the patented inventions. For instance, Kove's industry expert, Mr. Fanous, discusses how S3 and DDB would not be able to compete with other services without the benefits provided by the Kove patents, and that, absent those benefits, customers would abandon the accused products. *See, e.g.*, Ex. K18 ¶¶ 27-94.

Similarly, Kove's damages expert, Mr. Bergman, explains how the technical benefits of the inventions translate to dollars and cents, both as a quantified incremental benefit of the patented inventions and as downstream benefits that are not quantified but would factor into the profit split in the hypothetical negotiation. Ex. K17 ¶¶ 264-427, 555-76, 603-05, 610, 617-19. For example, he concludes that, without Kove's patents, DDB would be "unacceptable to consumers," *id*. ¶ 391, and any customers who are stuck with it would demand a ███ price cut, amounting to ██████

15

in lost revenue and ███████ in lost profits, *id.* ¶¶ 416-18.  The jury cannot understand where these numbers came from unless Kove is allowed to present evidence on DDB's revenues and profits.  *See also id.* ¶¶ 353-56 (similar analysis for S3).

Even AWS's own damages expert, Ms. Bennis, relies on the profit of S3 and DDB.  *See* Ex. K19 at 88-89.  In her reasonableness test of Mr. Bergman's damages opinions, Ms. Bennis states that ██████ represents "██ of S3 revenue and ███ of S3 operating profit over the damages period," and ████████ "represents ██ of DynamoDB revenue and ███ of DynamoDB operating profit over the damages period."  *Id.*  Under AWS's argument, it can make these assertions, but then Kove would not be allowed to challenge them.

In short, whether it is quantified as part of the reasonable royalty or simply considered by the parties in the hypothetical negotiation, the entire product revenue is inescapably relevant under the circumstances of this case.

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011), is not to the contrary. There, the court warned of the dangers in presenting the entire market value of the accused product when the patented component does not create the basis for customer demand.  *Id.* at 1320.  But as explained, the evidence in this case will show that the infringing components are key to the success of and demand for the accused products and so would provide an accurate picture of damages, rather than "skew[ing] the damages horizon for the jury," *id.*

Finally, AWS's concerns about foreign and government sales, Mot. 14-15, are misplaced. Kove does not intend to raise either during trial.  AWS's cost and profit data was not limited to the United States, so Mr. Bergman had to consider and use global cost, profit, and revenue data to determine his royalty base.  Kove does not intend to introduce the underlying data, but of course should be able to do so if AWS challenges this step of the analysis.

## VIII.   AWS's MIL No. 8: Amazon's Statements About the Litigation in SEC Filings.

AWS speculates that Kove included Amazon's 10-K filings on its exhibit list with the intention of telling the jury what those filings say about this litigation.  Mot. 15-16.  Not so.  Kove does not intend to use those exhibits to volunteer anything about their references to this case.  Instead, Kove expects to use them to provide financial information relating to damages (most likely undergirding a Rule 1006 exhibit, and redacting or excerpting as needed).  *See, e.g.*, *Biomerieux, S.A. v. Hologic, Inc.*, 2020 WL 583917, at *2 (D. Del. Feb. 6, 2020) (Stark, J.) (permitting use of SEC filings to describe "revenues associated with the accused products").

To be clear, while Kove will not volunteer the information at issue in AWS's motion, it would—and would have every right to—use that information if AWS opens the door or if needed to impeach a witness.  For example, if AWS witnesses were to try to soften the blow of evidence that their stock ownership gives them a financial interest in the outcome of this case by testifying that this case would have no material effect on AWS, the 10-Ks' admissions that this case is material to Amazon would be proper impeachment evidence.

Similarly, AWS has insisted on introducing information about litigation funding.  That topic is inappropriate and should be excluded.  Dkt. 808 at 1-3 (Kove's MIL No. 1).  But if not, AWS's litigation funding arguments may well open the door to its statements about the litigation.

There is no live dispute.  The possibility that this information could become relevant, and that Kove could seek to introduce it, is "better addressed at trial," when "the Court will have the necessary context."  *Antrim*, 2018 WL 3344370, at *4.

## IX.   AWS's MIL No. 9: Witnesses' Financial Bias.

AWS's request to preclude relevant, quintessential impeachment evidence should be denied.  A witness's "employment" and "compensation" are "always relevant to bias and credibility."  *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp.*, 317

F.R.D. 620, 625-26 (N.D. Ill. 2016) (collecting cases); *see also Sapperstein v. Hager*, 188 F.3d 852, 857 (7th Cir. 1999) ("An employee of the defendants is not a disinterested witness."). This evidence is necessary for the jury to fulfill its duty in considering whether witnesses have "any interest, bias, or prejudice." Ex. K13 at 18 (1.13 Testimony of Witnesses).

Evidence about witnesses' financial incentives, like compensation, is routinely admitted. *E.g.*, *Neurografix v. Brainlab, Inc.*, No. 1:12-cv-6075, Dkt. 333 at 14 (N.D. Ill. Jul. 6, 2020) (Kennelly, J.) (witness's "financial interest in the outcome of the case given his status as a party is a perfectly legitimate topic for examination"); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 1:10-cv-715, Dkt. 2037 (N.D. Ill. Aug. 5, 2021) (witness's finances admissible to "show[] bias in the form of his financial interest"). AWS's cited cases are unhelpful; they either concern *nontestifying* witnesses' compensation or rested in some part on state privacy rights.[11]

AWS seems to suggest that Kove will seek to introduce evidence of witnesses' wealth. Mot. 17-18. Kove will not do so (absent AWS opening the door) and has never suggested it would. But evidence as to a witness's financial interest in a party or the compensation it receives from that party is—just like other evidence going to potential bias—always fair game.

## X. AWS's MIL No. 10: References To Other Litigation.

AWS's request for a blanket ban on references to other litigation is too broad and is divorced from the specific issues in this case. *See supra* pp. 1-2 (collecting cases). Kove is not going to offer irrelevant evidence and arguments about other litigation. But AWS's assertion that all evidence about other litigation is categorically irrelevant to any issue in this case is flatly wrong.

For starters, AWS's (or its affiliates') prior litigation is directly relevant to AWS's

---

[11] *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, 2017 WL 2844646, at *3 (E.D. Tex. May 19, 2017) (nontestifying executives' compensation); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 5:13-cv-03999-BLF, Dkt. 304 at 2-3 (N.D. Cal. June 18, 2015) (applying a California state constitutional right to privacy).

comparable license argument. AWS contends that damages should be measured by reference to what it says are comparable licenses it has entered with others. It is black-letter law that to show that a license that arose from litigation is comparable, the party offering it must address litigation factors—the particulars of the prior case that might have affected its value. *See, e.g.*, *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1369 (Fed. Cir. 2017).[12] After all, settlements tend to "reflect[] a discount for the probability of losing" and for the patent owner's "desire to avoid further expenditure of (presumptively unrecoverable) litigation costs." *Id.*; *see also id.* at 1369-70 ("various factors may work in the opposite direction" in particular cases). AWS's motion would exclude these legally required considerations. Indeed, AWS concedes in a footnote that "some reference" (whatever that means) to other litigation "will be necessary at trial" for this reason, Mot. 19 n.81, but then goes on to ask for an order "preclud[ing] either party from referencing other litigations involving the other party," Mot. 20. If AWS means that it should get to use its own litigation to make its comparable license case while barring Kove from responding, that is a nonstarter. If AWS offers purportedly comparable licenses, Kove must be allowed to respond with relevant evidence, including litigation factors. *See Prism*, 849 F.3d at 1369-71.

Moreover, other litigation may become relevant to willfulness. AWS's policies and practices around compliance with patent laws—such as any requirement of litigation before it licenses patents—are relevant to its state of mind. Kove elicited deposition testimony about AWS's policies relating to patent infringement (including from Swami Sivasubramanian and Scott Hayden). *Contra* Mot. 20. These are matters that should be taken up at trial in the context of specific "objections to specific lines of questioning or argument," not as a categorical matter based

---

[12] Kove moved to exclude AWS's experts' reliance on these litigation licenses for this very reason—binding Federal Circuit precedent requires accounting for litigation factors as a predicate to admissibility, and AWS's experts failed to do so. Dkt. 748 at 12-15.

on abstractions and hypotheticals. *See Antrim*, 2018 WL 3344370, at *4; *supra* pp. 1-2.

Finally, AWS's motion is inconsistent with its position on Kove's motion in limine regarding its case against Google. Dkt. 808 at 19. Rather than providing any reason to think that case is relevant, AWS's opposition seems to be based solely on its gripe that Kove did not agree to AWS's proposed blanket ban. *Id.*; *see also* Mot. 20 (AWS asking for relief that would exclude Kove's Google litigation). That complaint is misplaced; the motions are not on equal footing. Kove's case against Google has no plausible relevance to this case, whereas AWS's prior cases may well be relevant for the reasons discussed above—including to AWS's own damages theory.

## CONCLUSION

Accordingly, Kove respectfully requests that the Court deny AWS's motions in limine.

Dated: March 14, 2024

Respectfully submitted,

*/s/ Courtland L. Reichman*

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965

Christine E. Lehman *(pro hac vice)*
clehman@reichmanjorgensen.com
Adam Adler *(pro hac vice)*
aadler@reichmanjorgensen.com
Philip Eklem *(pro hac vice)*
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310

Amy L. Ruhland *(pro hac vice)*
aruhland@reichmanjorgensen.com
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
901 S. Mopac Expressway, Bldg. 1, Suite 300
Austin, TX 78746
Telephone: (650) 623-1401

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5037

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard *(pro hac vice)*
sballard@reichmanjorgensen.com
Jennifer P. Estremera *(pro hac vice)*
jestremera@reichmanjorgensen.com
Gina H. Cremona *(pro hac vice)*
gcremona@reichmanjorgensen.com
Navid Bayar *(pro hac vice)*
nbayar@reichmanjorgensen.com
Savannah Carnes *(pro hac vice)*
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

***ATTORNEYS FOR PLAINTIFF
KOVE IO, INC.***