# Exhibit K11

**THE FEDERAL CIRCUIT BAR ASSOCIATION**


**MODEL PATENT JURY INSTRUCTIONS**

Last Edited: May 2020

© Federal Circuit Bar Association 2020

**Acknowledgement**


The Association thanks the Patent Litigation Committee and in particular the Jury Instruction Subcommittee for their efforts in creating these Model Patent Jury Instructions.

# TABLE OF CONTENTS

A.1    Preliminary Instructions ........................................................................ 2

WHAT A PATENT IS AND HOW ONE IS OBTAINED ................................. 2

A.2    Preliminary Instructions ........................................................................ 4

SUMMARY OF CONTENTIONS ................................................................ 4

A.3    Preliminary Instructions ........................................................................ 5

PATENT AT ISSUE .................................................................................... 5

A.4    Preliminary Instructions ........................................................................ 6

OVERVIEW OF APPLICABLE LAW .......................................................... 6

A.5    Preliminary Instructions ........................................................................ 8

OUTLINE OF TRIAL .................................................................................. 8

B.1    Summary of Contentions ...................................................................... 11

SUMMARY OF CONTENTIONS .............................................................. 11

B.2    Claim Construction ............................................................................. 12

      2.1    PATENT CLAIMS ......................................................................... 12

B.2    Claim Construction ............................................................................. 14

      2.1a   INDEPENDENT AND DEPENDENT CLAIMS ............................. 14

B.2    Claim Construction ............................................................................. 15

      2.3a   SECTION 112, PARAGRAPH 6/f .................................................. 15

B.3    Infringement ....................................................................................... 17

      3.1    INFRINGEMENT GENERALLY ................................................... 17

B.3    Infringement ....................................................................................... 18

      3.1a   DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT" ...... 18

B.3    Infringement ....................................................................................... 19

      3.1b   DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT" OF
           SECTION ...................................................................................... 19

112, PARAGRAPH 6/f CLAIM REQUIREMENTS ...................................................... 19

B.3    Infringement............................................................................................. 21

      3.1c    DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS ................................................................................. 21

B.3    Infringement............................................................................................. 23

      3.1d    [DELETED] LIMITATIONS ON DIRECT INFRINGEMENT  UNDER THE DOCTRINE OF EQUIVALENTS ................................................ 23

B.3    Infringement............................................................................................. 24

      3.2     INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT ............................... 24

B.3    Infringement............................................................................................. 26

      3.3     INDIRECT INFRINGEMENT—CONTRIBUTORY INFRINGEMENT........... 26

B.3    Infringement............................................................................................. 27

      3.4     INFRINGEMENT THROUGH THE SUPPLY OF  COMPONENTS FROM UNITED STATES FOR COMBINATION ABROAD............................ 27

B.3    Infringement............................................................................................. 29

      3.5     INFRINGEMENT BY SALE, OFFER FOR SALE, USE, OR IMPORTATION  OF A PRODUCT MADE OUTSIDE THE UNITED STATES BY PATENTED PROCESS.................................................. 29

B.3    Infringement............................................................................................. 30

      3.6     DIRECT INFRINGEMENT: ONE OR MORE SYSTEM COMPONENTS LOCATED OUTSIDE THE UNITED STATES ................................... 30

B.3    Infringement............................................................................................. 31

      3.7     DIRECT INFRINGEMENT: ACTS OF MULTIPLE PARTIES MUST BE COMBINED TO MEET ALL METHOD CLAIM LIMITATIONS ................... 31

B.3    Infringement............................................................................................. 33

      3.8     [DELETED] INDIRECT INFRINGEMENT:  ACCUSED INFRINGER PRACTICES SOME CLAIMED STEPS  AND ANOTHER PRACTICES THE REMAINING STEPS ........................................................ 33

B.3    Infringement............................................................................................. 34

      3.9     [DELETED] INDIRECT INFRINGEMENT:  ACCUSED INFRINGER ALLEGEDLY INDUCES OTHERS TO  COLLECTIVELY PRACTICE

ALL CLAIMED STEPS ............................................................................... 34

B.3    Infringement ................................................................................................. 35

        3.10    WILLFUL INFRINGEMENT ............................................................. 35

B.4    Validity ........................................................................................................ 37

        4.1     INVALIDITY—BURDEN OF PROOF ............................................... 37

B.4.2    Validity—Adequacy of Patent Specification .................................................... 38

        4.2a    WRITTEN DESCRIPTION REQUIREMENT .................................... 38

B.4.2    Validity—Adequacy of Patent Specification .................................................... 40

        4.2b    ENABLEMENT ................................................................................. 40

B.4.2    Validity—Adequacy of Patent Specification .................................................... 42

        4.2c    [DELETED] BEST MODE ................................................................. 42

B.4.3    Validity—The Claims .................................................................................... 43

        4.3a-1 PRIOR ART (If Not in Dispute) .................................................... 43

B.4.3    Validity—The Claims .................................................................................... 44

        4.3a-2  PRIOR ART (For Patents Having an Effective Filing Date Before March 16, 2013) ................................................................................... 44

B.4.3    Validity—The Claims .................................................................................... 47

        4.3a-3  PRIOR ART (For Patents Having an Effective Filing Date on or After March 16, 2013) ................................................................................... 47

B.4.3    Validity—The Claims .................................................................................... 48

        4.3b-1 ANTICIPATION ........................................................................... 48

B.4.3    Validity—The Claims .................................................................................... 50

        4.3c    OBVIOUSNESS ................................................................................. 50

B.4.3    Validity—The Claims .................................................................................... 52

        4.3c(i) LEVEL OF ORDINARY SKILL ................................................... 52

        4.3c(ii) SCOPE AND CONTENT OF THE PRIOR ART ............................ 52

B.4.3    Validity—The Claims .................................................................................... 54

  4.3d  INVENTORSHIP ........................................................................... 54

B.5  Patent Damages......................................................................................... 55

  5.1  DAMAGES—INTRODUCTION........................................................ 55

B.5  Patent Damages......................................................................................... 57

  5.2  LOST PROFITS—"BUT FOR" TEST................................................ 57

  LOST PROFITS—DEMAND ....................................................................... 58

  LOST PROFITS—NONINFRINGING SUBSTITUTES—ACCEPTABILITY ............. 58

  LOST PROFITS—NONINFRINGING SUBSTITUTES—AVAILABILITY ............... 58

  LOST PROFITS—CAPACITY ...................................................................... 59

  LOST PROFITS—AMOUNT OF PROFIT ..................................................... 59

  LOST PROFITS—MARKET SHARE ........................................................... 59

B.5  Patent Damages......................................................................................... 61

  5.3  LOST PROFITS—COLLATERAL SALES ...................................... 61

B.5  Patent Damages......................................................................................... 62

  5.4  LOST PROFITS—PRICE EROSION ................................................ 62

B.5  Patent Damages......................................................................................... 63

  5.5  REASONABLE ROYALTY—ENTITLEMENT ............................... 63

B.5  Patent Damages......................................................................................... 64

  5.6  REASONABLE ROYALTY—DEFINITION .................................... 64

B.5  Patent Damages......................................................................................... 65

  5.7  DAMAGES - LUMP SUM VS. RUNNING ROYALTY .................. 65

B.5  Patent Damages......................................................................................... 66

  5.8  REASONABLE ROYALTY—RELEVANT FACTORS ................... 66

B.5  Patent Damages......................................................................................... 69

  5.9  DAMAGES – COMPARABLE AGREEMENTS............................... 69

B.5  Patent Damages......................................................................................... 70

     5.10    DATE OF COMMENCEMENT OF DAMAGES—PRODUCTS ....................... 70

B.4    Patent Damages ................................................................................................. 72

     5.11 DAMAGES – REASONABLE ROYALTY – FAIR, REASONABLE, AND
        NON-DISCRIMINATORY TERMS ................................................................. 72

B.5    Patent Damages ................................................................................................. 74

     5.12 DAMAGES - APPORTIONMENT ......................................................................... 74

C.    Appendix ................................................................................................................. 76

GLOSSARY .................................................................................................................... 76

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Geneva Pharms., Inc.*,
  182 F.3d 1315 (Fed. Cir. 1999) ............................................................ 46

*AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*,
  759 F.3d 1285 (Fed. Cir. 2014) ............................................................ 39

*Ajinomoto Co. v. Archer-Daniels-Midland Co.*,
  228 F.3d 1338 (Fed. Cir. 2000) ...................................................... 29, 41

*AK Steel Corp. v. Sollac*,
  344 F.3d 1234 (Fed. Cir. 2003) ............................................................ 41

*Al-Site Corp. v. VSI Int'l Inc.*,
  174 F.3d 1308 (Fed. Cir. 1999) ................................................. 15, 20, 22

*Allergan, Inc. v. Apotex Inc.*,
  754 F.3d 952 (Fed. Cir. 2014) ............................................................. 46

*Alloc, Inc. v. ITC*,
  342 F.3d 1361 (Fed. Cir. 2003) ............................................................ 26

*Allvoice Computing PLC v. Nuance Commc'ns, Inc.*,
  504 F.3d 1236 (Fed. Cir. 2007) ...................................................... 15, 20

*In re Alton*,
  76 F.3d 1168 (Fed. Cir. 1996) ........................................................ 38, 39

*Am. Med. Sys. v. Med. Eng'g Corp.*,
  6 F.3d 1523 (Fed. Cir. 1993) .......................................................... 70, 71

*Am. Seating Co. v. USSC Group*,
  514 F.3d 1262 (Fed. Cir. 2008) ............................................................ 58

*Am. Stock Exch., LLC v. Mopex, Inc.*,
  250 F. Supp. 2d 323 (S.D.N.Y. 2003) ................................................... 46

*Amgen Inc. v. Sanofi*,
  872 F.3d 1367 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 787 (2019) ..................... 39

*Apotex U.S.A., Inc. v. Merck & Co.*,
  254 F.3d 1031 (Fed. Cir. 2001) ............................................................ 46

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
  448 F.3d 1324 (Fed. Cir. 2006) ...................................................... 15, 20

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017) ........................................... 31, 36, 50, 53

*Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*,
   598 F.3d 1336 (Fed. Cir. 2010) (en banc) .................................................. 39

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
   377 U.S. 476 (1964) .......................................................................... 26, 57

*Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*,
   501 F.3d 1274 (Fed. Cir. 2007) ............................................................ 41

*Aventis Pharma Deutschland GmbH v. Lupin, Ltd.*,
   499 F.3d 1293 (Fed. Cir. 2007) ............................................................ 53

*In re Bartfeld*,
   925 F.2d 1450 (Fed. Cir. 1991) ............................................................ 46

*Bayer AG v. Housey Pharms., Inc.*,
   340 F.3d 1367 (Fed. Cir. 2003) ............................................................ 29

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*,
   1 F.3d 1214 (Fed. Cir. 1993) ............................................... 57, 58, 60, 62

*Buildex, Inc. v. Kason Indus., Inc.*,
   849 F.2d 1461 (Fed. Cir. 1988) ............................................................ 37

*Burroughs Wellcome Co. v. Barr Labs., Inc.*,
   40 F.3d 1223 (Fed. Cir. 1994) ........................................................ 46, 54

*Calico Brand, Inc. v. Ameritek Imps., Inc.*,
   527 F. App'x. 987 (Fed. Cir. 2013) ...................................................... 56

*Cardiac Pacemakers, Inc. v. St. Jude Med.*,
   576 F.3d 1348 (Fed. Cir. 2009) ............................................................ 28

*Carella v. Starlight Archery*,
   804 F.2d 135 (Fed. Cir. 1986) .............................................................. 57

*Cephalon, Inc. v. Watson Pharm., Inc.*,
   707 F.3d 1330 (Fed. Cir. 2013) ............................................................ 41

*Chiron Corp. v. Genentech, Inc.*,
   363 F.3d 1247 (Fed. Cir. 2004) ............................................................ 39

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
   145 F.3d 1303 (Fed. Cir. 1998) ...................................................... 16, 20

*Circuit Check, Inc. v. QXQ Inc.*,
   795 F.3d 1331 (Fed. Cir. 2015) ............................................................ 53

*Clock Spring, L.P. v. Wrapmaster, Inc.*,
   560 F.3d 1317 (Fed. Cir. 2009) ............................................................ 45

*Commil USA, LLC v. Cisco Sys.*,
   575 U.S. 632 (2015) ............................................................................ 25

*Commil USA, LLC v. Cisco Sys.*,
    720 F.3d 1361 (Fed. Cir. 2013) ........................................................................ 25

*Cordis Corp. v. Medtronic Ave., Inc.*,
    511 F.3d 1157 (Fed. Cir. 2008) ........................................................................ 53

*Cross Med. Prods. v. Medtronic Sofamor Danek*,
    424 F.3d 1293 (Fed. Cir. 2005) .................................................................. 18, 20

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*,
    246 F.3d 1336 (Fed. Cir. 2001) .................................................................. *passim*

*CSIRO v. Cisco Sys., Inc.*,
    809 F.3d 1295 (Fed. Cir. 2015) .................................................................. 73, 74

*Cybor Corp. v. FAS Techs.*
    138 F.3d 1448, 1456 (Fed. Cir. 1998) ............................................................. 12

*In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*,
    676 F.3d 1063 (Fed. Cir. 2012) ........................................................................ 52

*D.L. Auld Co. v. Chroma Graphics Corp.*,
    714 F.2d 1144 (Fed. Cir. 1983) ........................................................................ 46

*Daiichi Sankyo Co. v. Apotex, Inc.*,
    501 F.3d 1254 (Fed. Cir. 2007) ........................................................................ 53

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
    567 F.3d 1314 (Fed. Cir. 2009) ........................................................................ 58

*Devices for Med., Inc. v. Boehl*,
    822 F.2d 1062 (Fed. Cir. 1987) .................................................................. 69, 70

*Dolly, Inc. v. Spalding & Evenflo Cos.*,
    16 F.3d 394 (Fed. Cir. 1994) ............................................................................ 22

*Dow Chem. Co. v. Mee Indus., Inc.*,
    341 F.3d 1370 (Fed. Cir. 2003) ........................................................................ 56

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) ........................................................................ 25

*E.I. du Pont De Nemours & Co. v. Unifrax I LLC*,
    921 F.3d 1060 (Fed. Cir. 2019) ........................................................................ 46

*Ecolochem, Inc. v. S. Cal. Edison Co.*,
    227 F.3d 1361 (Fed. Cir. 2000) ........................................................................ 46

*Eko Brands, LLC v. Adrian Rivera Mayanez Enters., Inc.*,
    No. 2018-2215, slip op. (Fed. Cir. 2020) .................................................... 31, 36

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004) ........................................................................ 54

*Energy Transp. Group, Inc. v. William Demant Holding A/S/,*
  697 F.3d 1342 (Fed. Cir. 2012) ............................................................ 67

*Enzo Biochem, Inc. v. Gen-Probe Inc.,*
  323 F.3d 956 (Fed. Cir. 2002) ............................................................. 39

*Ericsson, Inc. v. D-Link Sys.,*
  773 F.3d 1201 (Fed. Cir. 2014) .................................................... *passim*

*Ericsson, Inc. v. Harris Corp.,*
  352 F.3d 1369 (Fed. Cir. 2003) ....................................................... 57, 62

*Esai Co. v. Dr. Reddy's Labs. Ltd.,*
  533 F.3d 1353 (Fed. Cir. 2008) ............................................................ 52

*Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC,*
  350 F.3d 1327 (Fed. Cir. 2003) ............................................................ 25

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
  535 U.S. 722 (2002) .............................................................................. 22

*Finisar Corp. v. DirectTV Grp., Inc.,*
  523 F.3d 1323 (Fed. Cir. 2008) ....................................................... 45, 49

*Finnigan Corp. v. ITC,*
  180 F.3d 1354 (Fed. Cir. 1999) ............................................................ 46

*Flex-Rest, LLC v. Steelcase, Inc.,*
  455 F.3d 1351 (Fed. Cir. 2006) ............................................................ 45

*Fonar Corp. v. Gen. Elec. Co.,*
  107 F.3d 1543 (Fed. Cir. 1997) ............................................................ 59

*Fromson v. W. Litho Plate & Supply Co.,*
  853 F.2d 1568 (Fed. Cir. 1998) ............................................................ 63

*Gambro Lundia AB v. Baxter Healthcare Corp.,*
  110 F.3d 1573 (Fed. Cir. 1997) ............................................................ 46

*Gargoyles, Inc. v. United States,*
  113 F.3d 1572 (Fed. Cir. 1997) ............................................................ 57

*Garretson v. Clark,*
  111 U.S. 120 (1884) .............................................................................. 75

*Gentry Gallery, Inc. v. Berkline Corp.,*
  134 F.3d 1473 (Fed. Cir. 1998) ............................................................ 39

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
  318 F. Supp. 1116 (S.D.N.Y. 1970) ............................................... *passim*

*In re Giacomini,*
  612 F.3d 1380 (Fed. Cir. 2010) ............................................................ 45

*Global-Tech Appliances, Inc. v. SEB S. A.*,
 563 U.S. 754 (2012) ................................................................... 25, 28, 36

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
 355 F.3d 1327 (Fed. Cir. 2004) ................................................................. 64, 68

*Graham v. John Deere Co.*,
 383 U.S. 1 (1966) ................................................................................... 52

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
 185 F.3d 1341 (Fed. Cir. 1999) ................................................................. 56, 58

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
 339 U.S. 605 (1950) ................................................................................ 22

*Gyromat Corp. v. Champion Spark Plug Co.*,
 735 F.2d 549 (Fed. Cir. 1984) ................................................................. 57, 59

*In re Hall*,
 781 F.2d 897 (Fed. Cir. 1986) ...................................................................... 46

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
 136 S. Ct. 1923, __ U.S. __(2016) ...................................................... 4, 9, 11, 36

*Helifix Ltd. v. Blok-Lok, Ltd.*,
 208 F.3d 1339 (Fed. Cir. 2000) ..................................................................... 46

*Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*,
 139 S. Ct. 628 (2019) ........................................................................... 45, 47

*Hess v. Advanced Cardiovascular Sys. Inc.*,
 106 F.3d 976 (Fed. Cir. 1997) ...................................................................... 54

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
 909 F.2d 1464 (Fed. Cir. 1990) ..................................................................... 26

*Hughes Aircraft Co. v. United States*,
 140 F.3d 1470 (Fed. Cir. 1998) ..................................................................... 22

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
 802 F.2d 1367 (Fed. Cir. 1986) ................................................................. 37, 53

*In re Icon Health & Fitness, Inc.*,
 496 F.3d 1374 (Fed. Cir. 2007) ..................................................................... 53

*Idenix Pharms. LLC v. Gilead Scis. Inc.*,
 941 F.3d 1149 (Fed. Cir. 2019) ..................................................................... 40

*Insituform Techs., Inc. v. CAT Contracting, Inc.*,
 385 F.3d 1360 (Fed. Cir. 2004) ..................................................................... 25

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
 331 F.3d 860 (Fed. Cir. 2003) ...................................................................... 56

*Interactive Pictures Corp. v. Infinite Pictures Inc.*,
    274 F.3d 1371 (Fed. Cir. 2001) ........................................................ 22, 64

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
    424 F.3d 1374 (Fed. Cir. 2005) ............................................................ 45

*J.A. LaPorte, Inc. v. Norfolk Dredging Co.*,
    787 F.2d 1577 (Fed. Cir. 1986) ............................................................ 46

*Johnson & Johnston Assocs. v. R.E. Serv. Co.*,
    285 F.3d 1046 (Fed. Cir. 2002) ............................................................ 22

*Kalman v. Berlyn Corp.*,
    914 F.2d 1473 (Fed. Cir. 1990) ............................................................ 62

*Kim v. ConAgra Foods, Inc.*,
    465 F.3d 1312 (Fed. Cir. 2006) ............................................................ 18

*In re Klopfenstein*,
    380 F.3d 1345 (Fed. Cir. 2004) ............................................................ 45

*KSR International Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) ...................................................................... 52, 53

*Lam, Inc. v. Johns-Manville Corp.*,
    718 F.2d 1056 (Fed. Cir. 1983) ............................................................ 56

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
    78 F.3d 540 (Fed. Cir. 1996) ............................................................... 46

*Lampi Corp. v. Am. Power Prods., Inc.*,
    228 F.3d 1365 (Fed. Cir. 2000) ............................................................ 39

*LaserDynamics, Inc. v. Quanta Comput., Inc. et al*,
    694 F.3d 51 (Fed. Cir. 2012) ............................................................... 75

*Life Techs. Corp. v. Promega Corp.*,
    137 S. Ct. 734 (2017) ...................................................................... 28

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) (en banc) .............................................. 31

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
    134 S. Ct. 2111 (2014) .................................................................. 33, 34

*Liquid Dynamics Corp. v. Vaughan Co.*,
    449 F.3d 1209 (Fed. Cir. 2006) ............................................................ 28

*Lizard Tech., Inc. v. Earth Res. Mapping Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005) ............................................................ 39

*Lucent Technologies, Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) .................................................... *passim*

*MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*,
  687 F.3d 1377 (Fed. Cir. 2012) ............................................................... 41

*Mahurkar v. C.R. Bard, Inc.*,
  79 F.3d 1572 (Fed. Cir. 1996) ................................................ 46, 63, 64, 68

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) ................................................................................. 13

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) ................................................................... 13

*Maxwell v. J. Baker, Inc.*,
  86 F.3d 1098 (Fed. Cir. 1996) ........................................................... *passim*

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
  851 F.3d 1275 (Fed. Cir.) ......................................................................... 74

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
  244 F.3d 1365 (Fed. Cir. 2001) ............................................................... 26

*MGM Studios Inc. v. Grokster*,
  419 F.3d 1005 (Fed. Cir. 2005) ............................................................... 25

*Micro Chem., Inc. v. Great Plains Chem. Co.*,
  103 F.3d 1538 (Fed. Cir. 1997) ............................................................... 20

*Micro Chem., Inc. v. Lextron, Inc.*,
  318 F.3d 1119 (Fed. Cir. 2003) .................................................... 57, 59, 60

*Microsoft Corp. v. AT&T Corp.*,
  550 U.S. 437 (2007) ................................................................................. 28

*Microsoft Corp. v. i4i Limited Partnership*,
  564 U.S. 91 (2011) ............................................................................ 37, 53

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
  429 F.3d 1344 ........................................................................................... 18

*Minco, Inc. v. Combustion Eng'g, Inc.*,
  95 F.3d 1109 (Fed. Cir. 1996) ........................................................... 62, 63

*Moleculon Research Corp. v. CBS, Inc.*,
  793 F.2d 1261 (Fed. Cir. 1986) ............................................................... 18

*Momenta Pharm., Inc. v. Teva Pharm. USA Inc.*,
  809 F.3d 610 (Fed. Cir. 2015) ................................................................. 29

*Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*,
  878 F.3d 1336 (Fed. Cir. 2018) ............................................................... 49

*Morton Int'l, Inc. v. Cardinal Chem. Co.*,
  5 F.3d 1464 (Fed. Cir. 1993) ................................................................... 17

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
133 F.3d 1473 (Fed. Cir. 1998) ............................................................. 22

*Muniauction Inc. v. Thomson Corp.*,
532 F.3d 1318 (Fed. Cir. 2008) ............................................................. 25

*Mycogen Plant Sci., Inc. v. Monsanto Co.*,
243 F.3d 1316 (Fed. Cir. 2001) ............................................................. 46

*Mylan Institutional LLC v. Aurobindo Pharma Ltd.*,
857 F.3d 858 (Fed. Cir. 2017) ............................................................... 22

*Net MoneyIN, Inc. v. Verisign, Inc.*,
545 F.3d 1359 (Fed. Cir. 2008) ............................................................. 49

*Netword, LLC v. Centraal Corp.*,
242 F.3d 1347 (Fed. Cir. 2001) ............................................................. 18

*Nike Inc. v. Wal-Mart Stores*,
138 F.3d 1437 (Fed. Cir. 1998) ............................................................. 70

*Novozymes A/S v. DuPont Nutrition Biosciences APS*,
723 F.3d 1336 (Fed. Cir. 2013) ............................................................. 39

*NTP, Inc. v. Research in Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005) ....................................................... 28, 30

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) ............................................................. 13

*Odetics, Inc. v. Storage Tech. Corp.*,
185 F.3d 1259 (Fed. Cir. 1999) ....................................................... 16, 20

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ............................................................. 20

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
575 F.2d 1152 (6th Cir. 1978) ..................................................... 57, 58, 61

*Pannu v. Iolab Corp.*,
155 F.3d 1344 (Fed. Cir. 1998) ....................................................... 46, 54

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*,
745 F.2d 11 (Fed. Cir. 1984) ................................................................. 59

*Pellegrini v. Analog Devices, Inc.*,
375 F.3d 1113 (Fed. Cir. 2004) ............................................................. 28

*Perfect Surgical Techniques, Inc. v. Olympus Am., Inc.*,
841 F.3d 1004 (Fed. Cir. 2016) ............................................................. 46

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
587 F.3d 1324 (Fed. Cir. 2009) ............................................................. 53

*Pfaff v. Wells Elecs. Inc.*,
    525 U.S. 55 (1998) ............................................................................................ 46

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ..................................................... 13

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
    182 F.3d 1298 (Fed. Cir. 1999) ...................................................................... 13

*Plantronics, Inc. v. Aliph, Inc.*,
    724 F.3d 1343 (Fed. Cir. 2013) ...................................................................... 53

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016) ...................................................................... 25

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    904 F.3d 965 (Fed. Cir. 2018) ........................................................................ 74

*PowerOasis, Inc. v. T-MOBILE USA, INC.*,
    522 F. 3d 1299 (Fed. Cir. 2008) ..................................................................... 39

*Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*,
    803 F.2d 1170 (Fed. Cir. 1986) ...................................................................... 26

*Princeton Biochems., Inc. v. Beckman Coulter, Inc.*,
    411 F.3d 1332 (Fed. Cir. 2005) ...................................................................... 53

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
    849 F.3d 1360 (Fed. Cir. 2017) ...................................................................... 69

*Promega Corp. v. Life Techs. Corp.*,
    773 F.3d 1338 (Fed. Cir. 2014) ...................................................................... 40

*Purdue Pharma L.P. v. Faulding, Inc.*,
    230 F.3d 1320 (Fed. Cir. 2000) ...................................................................... 39

*Ralston Purina Co. v. Far-Mar-Co, Inc.*,
    772 F.2d 1570 (Fed. Cir. 1985) ...................................................................... 46

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997) ...................................................................... 39

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) ..................................................... 56, 64, 65, 68

*Richardson v. Suzuki Motor Co.*,
    868 F.2d 1226 (Fed. Cir. 1989) ............................................................ 4, 9, 11

*Ricoh Co. v. Quanta Computer Inc.*,
    550 F.3d 1325 (Fed. Cir. 2008), *cert denied*, 129 S. Ct. 2864 (2009) ....... 26

*Ring & Pinion Serv. Inc. v. ARB Corp.*,
    743 F.3d 831 (Fed. Cir. 2014) ........................................................................ 22

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995) (en banc) ............................................. *passim*

*Schering Corp. v. Geneva Pharms., Inc.*,
  339 F.3d 1373 (Fed. Cir. 2003) ............................................................. 45

*Schumer v. Lab. Computer Sys., Inc.*,
  308 F.3d 1304 (Fed. Cir. 2002) ............................................................. 37

*Seal-Flex, Inc. v. Athletic Track & Court Constr.*,
  172 F.3d 836 (Fed. Cir. 1999) ............................................................... 17

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
  758 F.2d 613 (Fed. Cir. 1985) ............................................................... 54

*Singh v. Brake*,
  222 F.3d 1362 (Fed. Cir. 2000) ............................................................. 46

*Sitrick v. Dreamworks, LLC*,
  516 F.3d 993 (Fed. Cir. 2008) ............................................................... 41

*SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*,
  926 F.2d 1161 (Fed. Cir. 1991) ............................................................. 58

*Solvay S.A. v. Honeywell Int'l Inc.*,
  622 F.3d 1367 (Fed. Cir. 2010) ............................................................. 45

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
  511 F.3d 1186 (Fed. Cir. 2008) ............................................................. 45

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
  953 F.2d 1360 (Fed. Cir. 1991) ......................................................... 56, 58

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
  883 F.2d 1573 (Fed. Cir. 1989) ......................................................... 60, 61

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
  665 F.3d 1269 (Fed. Cir. 2012) ............................................................. 39

*Syngenta Crop Prot., LLC v. Willowood, LLC*,
  944 F.3d 1344 (Fed. Cir. 2019) ............................................................. 29

*Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*,
  492 F.3d 1350 (Fed. Cir. 2007) ............................................................. 52

*Teva Pharm. Indus. v. AstraZeneca Pharms.*,
  661 F.3d 1378 (Fed. Cir. 2011) ............................................................. 45

*Toro Co. v. Deere & Co.*,
  355 F.3d 1313 (Fed. Cir. 2004) ............................................................. 45

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
  750 F.2d 1552 (Fed. Cir. 1984) ............................................................. 64

*Tronzo v. Biomet, Inc.*,
   156 F.3d 1154 (Fed. Cir. 1998) ................................................................. 39

*UCB, Inc. v. Watson Labs. Inc.*,
   927 F.3d 1272 (Fed. Cir. 2019) ................................................................. 22

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ........................................................... 64, 67

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
   425 F.3d 1366 (Fed. Cir. 2005) ................................................................. 28

*Union Pac. Res. Co. v. Chesapeake Energy Corp.*,
   236 F.3d 684 (Fed. Cir. 2001) ................................................................... 41

*Univ. of Rochester v. G.D. Searle & Co.*,
   358 F.3d 916 (Fed. Cir. 2004) ................................................................... 39

*Valmont Indus., Inc. v. Reinke Mfg. Co.*,
   983 F.2d 1039 (Fed. Cir. 1993) ................................................................. 20

*Virnetx, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014) ........................................................... 56, 65

*Vulcan Eng'g Co. v. FATA Aluminum, Inc.*,
   278 F.3d 1366 (Fed. Cir. 2002) ................................................................. 62

*In re Wands*,
   858 F.2d 731 (Fed. Cir. 1988) ................................................................... 41

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997) .................................................................................... 22

*Warner-Lambert Co. v. Apotex Corp.*,
   316 F.3d 1348 (Fed. Cir. 2003) ................................................................. 25

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*,
   418 F.3d 1326 (Fed. Cir. 2005) ................................................................. 17

*Waymark Corp. v. Porta Sys., Corp.*,
   245 F.3d 1364 (Fed. Cir. 2001) ................................................................. 28

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) ................................................................. 36

*WMS Gaming Inc. v. Int'l Game Tech.*,
   184 F.3d 1339 (Fed. Cir. 1999) ....................................................... 16, 20, 36

*In re Wyer*,
   655 F.2d 221 (C.C.P.A. 1981) ................................................................... 46

*Wyeth & Cordis Corp. v. Abbott Labs.*,
   720 F.3d 1380 (Fed. Cir. 2013) ................................................................. 40

## Statutes

35 U.S.C. § 101 ............................................................................................................... 35, 37

35 U.S.C. § 102 ...................................................................................................................... *passim*

35 U.S.C. § 103 ........................................................................................... 35, 37, 45, 50, 52

35 U.S.C. § 112 ...................................................................................................................... *passim*

35 U.S.C. § 256 ............................................................................................................... 52, 54

35 U.S.C. § 271(a) ................................................................................... 30, 31, 33, 34

35 U.S.C. § 271(b) ........................................................................................... 25, 33, 34

35 U.S.C. § 271(c) ............................................................................................................... 26

35 U.S.C. § 271(f) ......................................................................................................... 27, 28

35 U.S.C. § 271(g) ............................................................................................................... 29

35 U.S.C. § 282 ............................................................................................................... 37

35 U.S.C. § 284 ...................................................................................................................... *passim*

35 U.S.C. § 287 ......................................................................................................... 70, 71

35 U.S.C. § 298 ......................................................................................................... 25, 36

## Other Authorities

2018 AIPLA Model Patent Jury Instructions, at 11.1 (https://www.aipla.org/home/news-publications/model-patent-jury-instructions) .......................................................................... 36

N.D. Cal., Model Patent Jury Instructions, at 3.8 (https://www.cand.uscourts.gov/juryinstructions) ....................................................... 36

Seventh Circuit, 2008 Patent Jury Instructions, at 11.2.14 (www.ca7.uscourts.gov/Pattern-Jury-Instr.) ......................................................................................................................... 36

# Preliminary Instructions

**A.1    Preliminary Instructions**

## WHAT A PATENT IS AND HOW ONE IS OBTAINED

This case involves a dispute relating to a United States patent. Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right [for up to 20 years from the date the patent application was filed] [for 17 years from the date the patent issued] to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents. The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." If a patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews information that is publicly available or that is submitted by the applicant. This information is called "prior art." The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed. A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed." This writing from the Examiner is called an "Office Action." If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or to submit new claims. This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue. Sometimes, patents

are issued after appeals within the PTO or to a court. The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked. Examiners have a lot of work to do and no process is perfect. Also, unlike a court proceeding, patent prosecution takes place without input from those who are later alleged to infringe the patent. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not [alleged infringer] has proven that the patent is invalid.

## A.2    Preliminary Instructions

## SUMMARY OF CONTENTIONS

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are [patent holder] and [alleged infringer]. The case involves United States Patent No(s). [ ], obtained by [inventor], and transferred by [inventor] to [patent holder]. For your convenience, the parties and I will often refer to U.S. Patent No. [full patent number] by the last three numbers of the patent number, namely, as the "[last three numbers of the patent] patent."

[Patent holder] filed suit in this court seeking money damages from [alleged infringer] for allegedly infringing the [ ] patent by [making], [importing], [using], [selling], [offering for sale], [supplying or causing to be supplied in or from the United States all or a substantial portion of the components of a patented invention] [in/into/within] the United States [products] [methods] [products which are made by a process patented in the United States] that [patent holder] argues are covered by claims [ ] of the [ ] patent. [[Patent holder] also argues that [alleged infringer] has [actively induced infringement of these claims of the [ ] patent by others] [and/or] [contributed to the infringement of claims [ ] of the [ ] patent by others].]

The [products] [methods] that are alleged to infringe are [list of accused products or methods].

[Alleged infringer] denies that it has infringed claims [ ] of the [ ] patent. [Alleged infringer] also argues that claims [ ] are invalid. I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements. [Add other defenses, if applicable.]

Your job will be to decide whether or not claims [ ] of the [ ] patent have been infringed and whether or not those claims are invalid. If you decide that any claim of the [ ] patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to [patent holder] to compensate it for the infringement. [You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.]


<u>Committee Comments</u>

On June 13, 2016, the Supreme Court issued its decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, __ U.S. __(2016). Some commentators have questioned whether the Supreme Court's *Halo* decision is consistent with the Federal Circuit's prior decisions holding that willfulness is a jury question (*see, e.g., Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1250 (Fed. Cir. 1989)). The Committee takes no position on whether willfulness should be submitted to the jury or whether it is more properly decided by the court.

## A.3    Preliminary Instructions

## PATENT AT ISSUE

[The Court should show the jury the patent at issue and point out the parts, which include the specification, drawings, and claims, including the claims at issue. The Court may wish to include a joint, nonargumentative statement of the patented subject matter at this point in the instructions.

The Court may wish to hand out its claim constructions (if the claims have been construed at this point) and the glossary at this time. If the claim constructions are handed out, the following instruction should be read:]

I have already determined the meaning of the claims of the [ ] patent. You have been given a document reflecting those meanings. For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning of that term in the field of the patent. You are to apply my definitions of the terms I have construed throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

## A.4    Preliminary Instructions

## OVERVIEW OF APPLICABLE LAW

[The Court may wish to give preliminary instructions that are applicable to the specific issues in the case. This may help focus the jury on the facts that are relevant to the issues it will have to decide. Even if preliminary instructions are given, the Court would, nonetheless, give complete instructions at the close of evidence.]

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether [alleged infringer] has infringed the claims of the [ ] patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. There are a few different ways that a patent may be infringed. I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case. In general, however, to prove infringement, [patent holder] must prove by a preponderance of the evidence that [alleged infringer] made, used, sold, or offered for sale in the United States, or imported into the United States, a product or by using a method meeting all the requirements of a claim of the [ ] patent. [Alleged infringer] may also indirectly infringe the [ ] patent by contributing to infringement by another entity, or by inducing another person or entity to infringe. I will provide you with more detailed instructions on the requirements for each of these types of infringement at the conclusion of the case.

Another issue you will be asked to decide is whether the [ ] patent is invalid. A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious. For a claim to be invalid because it is not new, [alleged infringer] must show, by clear and convincing evidence, that all of the elements of a claim are present in a single previous device or method, or sufficiently described in a single previous printed publication or patent. We call these "prior art." If a claim is not new, it is said to be anticipated.

Another way that a claim may be invalid is that it may have been obvious. Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions in deciding whether the invention(s) claimed in the [ ] patent are obvious. I will provide you detailed instructions on these questions at the conclusion of the case.

[Where a written description or enablement defense is presented: A patent may also be invalid if its description in the specification does not meet certain requirements. To be valid, a patent must meet the "written description" requirement.  In order to meet this written description requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as broadly as claimed in the claims of the issued patent. The disclosure of a patent must also meet the "enablement" requirement. To meet this requirement, the description in the patent has to be sufficiently full and

clear to have allowed persons of ordinary skill in the field of technology of the patent to make and use the invention without undue experimentation, at the time the patent application was originally filed.]

If you decide that any claim of the [ ] patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to [patent holder] to compensate it for the infringement. A damages award should put [patent holder] in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what [patent holder] would have received had it been paid a reasonable royalty. I will instruct you later on the meaning of a reasonable royalty. The damages you award are meant to compensate [patent holder] and not to punish [alleged infringer]. You may not include in your award any additional amount as a fine or penalty in order to punish [alleged infringer]. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

## A.5 Preliminary Instructions

### OUTLINE OF TRIAL

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

After the opening statements, [patent holder] will present its evidence in support of its contention that [some of the] [the] claims of the [ ] patent have been [and continue to be] infringed by [alleged infringer] [and that the infringement has been [and continues to be] willful]. To prove infringement of any claim, [patent holder] must persuade you that it is more likely than not that [alleged infringer] has infringed that claim. [To persuade you that any infringement was willful, [patent holder] must also prove that it is more likely than not that the infringement was willful]

[Alleged infringer] will then present its evidence that the claims of the [ ] patent are invalid. To prove invalidity of any claim, [alleged infringer] must persuade you by clear and convincing evidence that the claim is invalid. In addition to presenting its evidence of invalidity, [alleged infringer] will put on evidence responding to [patent holder]'s evidence of infringement [and willfulness].

[Patent holder] may then put on additional evidence responding to [alleged infringer]'s evidence that the claims of the [ ] patent are invalid, and to offer any additional evidence of infringement [and willfulness]. This is referred to as "rebuttal" evidence. [Patent holder]'s "rebuttal" evidence may respond to any evidence offered by [alleged infringer].

Finally, [alleged infringer] may have the option to put on its "rebuttal" evidence to support its contentions as to the validity [and/or enforceability] of [some of the] [the] claims of the [ ] patent by responding to any evidence offered by [patent holder] on that issue.

[During the presentation of the evidence, the attorneys will be allowed brief opportunities to

explain what they believe the evidence has shown or what they believe upcoming evidence will show. The attorneys' comments are not evidence and the attorneys are being allowed to comment solely for the purpose of helping you to understand the evidence.]

After the evidence has been presented, [the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case] [I will give you final instructions on the law that applies to the case and the attorneys will make closing arguments]. These closing arguments by the attorneys are not evidence. After the closing arguments and instructions, you will then decide the case.

Committee Comments

On June 13, 2016, the Supreme Court issued its decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, __ U.S. __(2016), in which it held that willful infringement is governed by the preponderance of the evidence standard of proof.

Some commentators have questioned whether the Supreme Court's *Halo* decision is consistent with the Federal Circuit's prior decisions holding that willfulness is a jury question (*see, e.g., Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1250 (Fed. Cir. 1989)). The Committee takes no position on whether willfulness should be submitted to the jury or whether it is more properly decided by the court.

**Instructions at the Close of Evidence**

**B.1     Summary of Contentions**

## SUMMARY OF CONTENTIONS

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, [patent holder] seeks money damages from [alleged infringer] for allegedly infringing the [ ] patent by [making], [importing], [using], [selling], and [offering for sale] [products] [methods] that [patent holder] argues are covered by claims [ ] of the [ ] patent. These are the asserted claims of the [ ] patent. [Patent holder] also argues that [alleged infringer] has [actively induced infringement of these claims of the [ ] patent by others] [contributed to the infringement of these claims of the [ ] patent by others]. The [products] [methods] that are alleged to infringe are [list of accused products or methods].

[Alleged infringer] denies that it has infringed the asserted claims of the [ ] patent [and argues that, in addition, claims [ ] are invalid.] [Add other defenses if applicable.]

Your job is to decide whether [alleged infringer] has infringed the asserted claims of the [ ] patent and whether any of the asserted claims of the [ ] patent are invalid. If you decide that any claim of the [ ] patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to [patent holder] to compensate it for the infringement. [You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.]


Committee Comments

On June 13, 2016, the Supreme Court issued its decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, __ U.S. __ (2016). Some commentators have questioned whether the Supreme Court's *Halo* decision is consistent with the Federal Circuit's prior decisions holding that willfulness is a jury question (*see, e.g., Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1250 (Fed. Cir. 1989)). The Committee takes no position on whether willfulness should be submitted to the jury or whether it is more properly decided by the court.

**B.2      Claim Construction**

## 2.1      PATENT CLAIMS

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim- by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.


You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and [I will provide] [I have provided] to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

[Optional For Comprising: The beginning portion, also known as the preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.]

[Optional For Consisting: The beginning portion, also known as the preamble, of a claim often uses the word "consisting of." The word "consisting of," when used in the preamble, means "including the following and excluding others." When "consisting of" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim and that the accused product includes additional elements, then claim is not infringed.]

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide

the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

Authorities

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) (claim construction of a patent, including claim terms, is exclusively within the province of the court); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360-63 (Fed. Cir. 2008) (remanding to the district court to determine the construction of "only if" when the "ordinary" meaning did not resolve the parties' dispute); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) ("ordinary and customary meaning" is based on the understanding of a person of ordinary skill in the art in question at the time of the invention); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (claim construction is a question of law reviewed de novo); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (same); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (in jury cases, court has obligation to construe claim terms).

**B.2      Claim Construction**

### 2.1a      INDEPENDENT AND DEPENDENT CLAIMS

[This instruction should only be given where dependent claims are at issue.]

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claim(s) [ ] of the [ ] patent are each independent claims.

The remainder of the claims in the [ ] patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product [or process] that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

[Note: It may be helpful to submit to the jury a chart setting forth all dependencies for each dependent claim.]

## B.2    Claim Construction

## 2.3a    SECTION 112, PARAGRAPH 6/f

[This instruction should only be given where the asserted claims include means-plus-function or step-plus-function requirements.]

Where claims include means-plus-function requirements:

Claim [ ] uses the phrase "means for [function]." This "means for" phrase has a special meaning in patent law. It is called a "means-plus-function" requirement. It does not cover all of the structures that could perform the function set forth in the claim, namely, "[function]." Instead, it covers a structure or a set of structures that performs that function and that is either identical or "equivalent" to [at least one of] the [set(s) of] structure(s) described in the [ ] patent for performing that function. The issue of whether two structures are identical or equivalent is for you to decide. I will explain to you later how to determine whether two structures or two sets of structures are "equivalent" to one another. For purposes of this case, I have identified the [set(s) of] structure(s) described in the [ ] patent that perform(s) the function of "[function]." [Claims [ ] also include similar means-plus-function requirements.] When I read you my definitions for certain claim terms a few moments ago, I identified the structures described in the [ ] patent for performing the relevant functions. You should apply my definition of the function and the structures described in the [ ] patent for performing it as you would apply my definition of any other claim term.

Where claims include step-plus-function requirements:

Claim [ ] uses the phrase "step for [function]." It does not cover all of the acts that could perform the function set forth in the claim. Instead, it covers acts that perform that function and are either identical or "equivalent" to [at least one of] the [set(s) of] act(s) described in the [ ] patent for performing that function. The issue of whether two acts [or two sets of acts] are identical or equivalent is for you to decide. I will explain to you later how to determine whether two acts or two sets of acts are "equivalent" to one another. For purposes of this case, I have identified the [set(s) of] act(s) described in the [ ] patent that perform(s) the function of "[function]." [Claims [ ] also include similar step-plus-function requirements.] When I read you my definitions for certain claim terms a few moments ago, I identified the acts described in the [ ] patent for performing the relevant functions. You should apply my definition of the function and the acts described in the [ ] patent for performing it as you would apply my definition of any other claim term.

<u>Authorities</u>

35 U.S.C. § 112(f); Pre-AIA 35 U.S.C. § 112, ¶ 6; *Allvoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240-41 (Fed. Cir. 2007); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332-34 (Fed. Cir. 2006) (explaining that an object meeting a means-plus-function limitation with two functions must perform both claimed functions and be an equivalent structure. Equivalence of structure can be shown here if the objects perform both identical functions in substantially the same way to achieve substantially the same result.); *Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308, 1318-21 (Fed. Cir. 1999) (distinguishing between means- or step-plus-

function to equivalents available at time of issuance and application of doctrine of equivalents to after- arising inventions); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1351 (Fed. Cir. 1999) ("The proper test for determining whether the structure in an accused device is equivalent to the structure recited in a section 112, ¶ 6, claim is whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial."); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-67 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-08 (Fed. Cir. 1998).

## B.3    Infringement

## 3.1    INFRINGEMENT GENERALLY

I will now instruct you how to decide whether or not [patent holder] has proven that [alleged infringer] has infringed the [ ] patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, there are five possible ways that a claim may be infringed. The five types of infringement are called: (1) direct infringement; (2) active inducement; (3) contributory infringement; (4) infringement through the supply of components from the United States to another country; and (5) infringement through importation of a product made abroad by a patented process. Active inducement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement.
In this case, [patent holder] has alleged that [alleged infringer] directly infringes the [ ] patent. [[In addition,] [patent holder] has alleged that [alleged direct infringer] directly infringes the [ ] patent, and [alleged infringer] is liable for [actively inducing or contributing to] that direct infringement by [alleged direct infringer].  [Patent holder] has also alleged that [alleged infringer] is liable for [infringement through the supply of components from the United States for combination outside of the United States] [and/or] [infringement through importation into the United States of a product made by the patented process].]

In order to prove infringement, [patent holder] must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.

Authorities

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005) (infringement must be proven by a preponderance of the evidence); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999) (a patentee must "prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim"); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993) (upholding lower court's finding of noninfringement based on plaintiff's failure to prove that the accused product met all of the claimed requirements).

### B.3　Infringement

### 3.1a　DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." In order to prove direct infringement by literal infringement, [patent holder] must prove by a preponderance of the evidence, i.e., that it is more likely than not, that [alleged infringer] made, used, sold, offered for sale within, or imported into the United States a [product or process] that meets all of the requirements of a claim and did so without the permission of [patent holder] during the time the [ ] patent was in force. You must compare the [product or process] with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the [product or process] meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

<u>Authorities</u>

*Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1316, n.1 (Fed. Cir. 2006) (dependent claims not infringed when independent claim not infringed); *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005) (no literal infringement where accused product did not contain every element of the claim); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1309-11 (Fed. Cir. 2005) (no direct infringement where accused product did not include each claim limitation); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353-54 (Fed. Cir. 2001) (no literal infringement where all of the elements of the claim not present in the accused system); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986) (affirming finding of direct infringement based on circumstantial evidence).

**B.3    Infringement**

**3.1b    DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT" OF SECTION 112, PARAGRAPH 6/f CLAIM REQUIREMENTS**

[This instruction should only be given where the asserted claims include means-plus-function or step-plus-function requirements.]

Where claims include means/step-plus-function requirements:

As I have previously explained, claims [ ] include requirements that are in [means/step-plus-function] form.

A product or a process meets a means/step-plus-function requirement of a claim if: (1) it includes [a structure or a set of structures/an action or a set of actions] that perform(s) the identical function recited in the claim, and (2) that [structure or set of structures/action or set of actions] is either identical or "equivalent" to [one or more of] the described [set(s) of] [structure(s)/ action(s)] in the [ ] patent that I defined earlier as performing the function of [functional limitation]. If the [product] does not perform the specific function recited in the claim, the "means-plus-function" requirement is not met, and the [product] does not literally infringe the claim. Alternatively, even if the [product] has [a structure or a set of structures] that performs the function recited in the claim but the [structure or set of structures] is neither identical nor "equivalent" to [one or more of] the [set(s) of] [structure(s)/action(s)] that I defined to you as being described in the [ ] patent and performing this function, the [product] does not literally infringe the asserted claim.

[A structure or a set of structures/An action or a set of actions] may be found to be "equivalent" to [one of] [the/a] [set(s) of] [structure(s)/action(s)] I have defined as being described in the [ ] patent if a person having ordinary skill in the field of technology of the [ ] patent either would have considered the differences between them to be insubstantial at the time the [ ] patent issued or if that person would have found the [structure(s)/actions(s)] performed the function in substantially the same way to accomplish substantially the same result. In deciding whether the differences would be "insubstantial," you may consider whether a person having an ordinary level of skill in the field of technology of the patent would have known of the interchangeability of the two structures or sets of structures at the time the patent issued. The fact that [a structure or a set of structures/an act or a set of acts] is known to be "equivalent" today is not enough. The [structure or set of structures/act or set of acts] must also have been available at the time the [ ] patent issued.

[In this case, the parties have agreed that the relevant field of technology is [field of technology] and that a person having an ordinary level of skill would [qualifications].] [In this case, you will have to decide [issues regarding field of technology and level of ordinary skill in the art]. I will instruct you later how to decide this.]

In order to prove direct infringement by literal infringement of a means-plus/step-plus-function limitation, [patent holder] must prove the above requirements are met by a preponderance of the evidence.

<u>Authorities</u>

35 U.S.C. § 112(f); Pre-AIA 35 U.S.C. § 112, ¶ 6; *Allvoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240- 41 (Fed. Cir. 2007); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1315-17 (Fed. Cir. 2005); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333-3(Fed. Cir. 2006); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1328 (Fed. Cir. 2003) (holding that the structure in an accused device meets a § 112, ¶ 6, limitation if the structure performs the identical function recited in the claim and is identical or equivalent to the structure in the specification corresponding to that limitation); *Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999) (holding that an equivalent structure or act under § 112 cannot embrace technology developed after the patent issued because the literal meaning of a claim is fixed upon issuance); *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1350 (Fed. Cir. 1999); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-11 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains Chem. Co.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993).

**B.3     Infringement**

**3.1c     DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

[This instruction should only be given where the patentee asserts infringement under the doctrine of equivalents.]

If a [person] [company] makes, uses, sells, offers to sell within, or imports into the United States a [product] [process] that does not literally meet all of the elements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that [product or process] satisfies that claim elements "under the doctrine of equivalents."

Under the doctrine of equivalents, a [product or process] infringes a claim if the accused [product or process] [contains elements or performs steps] that literally meet or are equivalent to each and every element of the claim. You may find that an element or step is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the [structure or action]: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the element of the claim. In order to prove infringement by "equivalents," [patent holder] must prove the equivalency of the [structure or action] to the claim element by a preponderance of the evidence. Thus, each element of a claim must be met by the [accused product or process] either literally or under the doctrine of equivalents for you to find infringement.

Known interchangeability of the claim element and the proposed equivalent is a factor that can support a finding of infringement under the doctrine of equivalents. In order for the [structure or action] to be considered interchangeable, the [claim element] must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient.

If claims with means-plus-function clauses are at issue:

When the claim element that is not literally met by the [product or process] is a ["means-plus-function" or "step-plus-function"] element, and if you determined that there is no "literal infringement" because there is no [structure or set of structures/action or set of actions] in the [product or process] that performs the identical function of the means-plus-function element, you may decide that the [structure or action] nonetheless corresponds to the element of the claim under the doctrine of equivalents if it performs an "equivalent" function and has an "equivalent" [structure or action].

On the other hand, if you find that the accused [product or process] does not have identical or equivalent [structure or set of structures/action or set of actions] to [any of] the [set(s) of] [structure(s) or action(s)] that I defined as performing that function in the [ ] patent, then you may only find infringement under the doctrine of equivalents if the [structure or set of structures/action or set of actions] did not exist at the time the patent issued.

Authorities

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950) (explaining what constitutes an "equivalent"); *UCB, Inc. v. Watson Labs. Inc.*, 927 F.3d 1272, 1286 (Fed. Cir. 2019) (discussing known interchangeability in affirming infringement finding); *Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 866-70 (Fed. Cir. 2017) (discussing insubstantial differences and function-way-result tests); *Ring & Pinion Serv. Inc. v. ARB Corp.*, 743 F.3d 831, 831 (Fed. Cir. 2014) (explaining "an after-arising technology, a technology that did not exist at the time of patenting, can be found to be an equivalent under the doctrine of equivalents even though it cannot be an equivalent under the literal infringement analysis of § 112(f)"); *id.* at 834 ("known interchangeability weighs in favor of finding infringement under the doctrine of equivalents"); *Interactive Pictures Corp. v. Infinite Pictures Inc.*, 274 F.3d 1371, 1381-82 (Fed. Cir. 2001); *Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (no infringement under the doctrine of equivalents); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999) (distinguishing between the doctrine of equivalents and the statutory term "equivalents"); *Hughes Aircraft Co. v. United States*, 140 F.3d 1470, 1475 (Fed. Cir. 1998); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

**B.3     Infringement**

### 3.1d     [DELETED] LIMITATIONS ON DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

This instruction has been removed, as the applicability of these limitations is ultimately decided by the Court.

**B.3     Infringement**

### 3.2     INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT

[Patent holder] alleges that [alleged infringer] is liable for infringement by actively inducing [someone else] [some other company] to directly infringe the [ ] patent literally or under the doctrine of equivalents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

[Alleged infringer] is liable for active inducement of a claim only if [patent holder] proves by a preponderance of the evidence:

(1)     that the acts are actually carried out by [insert name or other description of alleged direct infringer] directly infringe that claim;

(2)      that [alleged infringer] took action during the time the [ ] patent was in force that was intended to cause and led to the infringing acts by [insert name or other description of alleged direct infringer]; and

(3)     that [alleged infringer] was aware of the [ ] patent and knew that the acts, if taken, would constitute infringement of that patent.

[addition to the end of (3) above when willful blindness concerning the [ ] patent's existence is at issue:]

or that [alleged infringer] believed there was a high probability that the acts by [insert name or other description of alleged direct infringer] would infringe a patent [by patent holder] and [alleged infringer] took deliberate steps to avoid learning of that infringement.

[alternative addition to the end of (3) above when knowledge of the patent is undisputed but willful blindness concerning infringement of that patent is at issue:]

or that [alleged infringer] believed there was a high probability that the acts by [insert name or other description of alleged direct infringer] infringed the [ ] patent and took deliberate steps to avoid learning of that infringement.

If you find that [alleged infringer] was aware of the patent, but believed that the acts it encouraged did not infringe that patent, [alleged infringer] cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that [insert name or other description of alleged direct infringer] itself directly infringes the claim. Nor is it sufficient that [alleged infringer] was aware of the act(s) by [insert name or other description of alleged direct infringer] that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that [accused infringer] specifically intended [insert name or other description of alleged direct infringer] to infringe the [ ] patent or that [accused infringer] believed there was a high probability that [insert name or other description of alleged direct infringer] would infringe the [ ] patent, but deliberately avoided learning the

infringing nature of [insert name or other description of alleged direct infringer]'s acts. The mere fact, if true, that [alleged infringer] knew or should have known that there was a substantial risk that [insert name or description of alleged direct infringer]'s acts would infringe the [] patent would not be sufficient to support a finding of active inducement of infringement.


Authorities

35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632 (2015); *Global-Tech Appliances, Inc. v. SEB S. A.*, 563 U.S. 754, 765-70 (2012); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016); *Muniauction Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329-30 (Fed. Cir. 2008); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.") (citation and internal quotation marks omitted); *MGM Studios Inc. v. Grokster*, 419 F.3d 1005 (Fed. Cir. 2005); *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1377-78 (Fed. Cir. 2004) (inducer must have actual or constructive knowledge of the patent); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003) (no inducement where evidence did not show defendant knew or should have known that his actions were encouraging infringement); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363-66 (Fed. Cir. 2003) (no infringement where lack of intent to induce).

35 U.S.C. § 298 ("The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent.").

Committee Comments

The underlined language in the instruction incorporates the "willful blindness" standard addressed by the Supreme Court in *Global-Tech Appliances, Inc. v. SEB S. A.*, 563 U.S. 754, 769-70 (2012). The Committee is of the opinion that in cases where willful blindness is not an issue, the underlined language should be omitted to reduce the possibility of juror confusion.

An earlier version of this instruction included a belief in invalidity as a ground for finding no induced infringement. That instruction was based on *Commil USA, LLC v. Cisco Sys.*, 720 F.3d 1361 (Fed. Cir. 2013), in which a divided panel of the Federal Circuit held that an accused infringer's "evidence of a good-faith belief of invalidity may negate the requisite intent for induced infringement."

In June of 2015, however, the Supreme Court reversed, holding that "a belief as to invalidity cannot negate the scienter required for induced infringement." *Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632 (2015).

**B.3     Infringement**

### 3.3     INDIRECT INFRINGEMENT—CONTRIBUTORY INFRINGEMENT

[Patent holder] argues that [alleged infringer] is liable for contributory infringement by contributing to the direct infringement of the [ ] patent by [insert name or other description of direct infringer]. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

[Alleged infringer] is liable for contributory infringement of a claim if [patent holder] proves by a preponderance of the evidence:

(1)     [alleged infringer] sells, offers to sell, or imports within the United States a component of a product, material, or apparatus for use in a process, during the time the [ ] patent is in force;

(2)     the component, material, or apparatus is not a staple article or commodity of commerce suitable for substantial noninfringing use;

(3)     the component, material, or apparatus constitutes a material part of the invention;

(4)     [alleged infringer] is aware of the [ ] patent and knows that the component, material, or apparatus is especially made or adapted for use as an infringement of the claim; and

(5)     [insert name or other description of alleged direct infringer] uses the component, material, or apparatus to directly infringe a claim.


Authorities

35 U.S.C. § 271(c) ("not a staple article"); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964) (knowledge of plaintiff's patent and that the part supplied is significant); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1327 (Fed. Cir. 2008), *cert denied*, 129 S. Ct. 2864 (2009); *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1374 (Fed. Cir. 2003) (affirming determination of no contributory infringement); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001) (reversing district court's finding of no contributory infringement and inducement); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) (differentiating contributory infringement from inducement); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986) (direct infringement findings supported contributory infringement findings).

**B.3    Infringement**

### 3.4    INFRINGEMENT THROUGH THE SUPPLY OF COMPONENTS FROM UNITED STATES FOR COMBINATION ABROAD

[This instruction should be given if patentee asserts infringement under 35 U.S.C. § 271(f)(1) or § 271(f)(2).]

[If § 271(f)(1)—active inducement—is at issue:

[Alleged infringer] is liable for § 271(f)(1) infringement of a claim (active inducement of foreign combination of components supplied from the United States) if [patent holder] proves by a preponderance of the evidence that:

(1)    [alleged infringer] supplies [or causes to be supplied] components from the United States to a place outside the United States, which make up all or a substantial portion of the invention of a claim of the [ ] patent;

(2)    [alleged infringer] takes action intentionally to cause [insert name or other description of alleged direct infringer] to assemble the components outside of the United States;

(3)    [alleged infringer] knows of the [ ] patent, and knows that the encouraged acts constitute infringement of that patent; and

(4)    the encouraged acts would constitute direct infringement of the claim if they had been carried out in the United States.

If you find that [alleged infringer] was aware of the patent, but believed that the acts it encouraged would not constitute infringement of the patent if carried out in the United States, [alleged infringer] cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that [insert name or other description of alleged direct infringer] itself allegedly directly infringes the claim. Nor is it sufficient that [alleged infringer] was aware of the act(s) that allegedly constitute the direct infringement. Rather, you must find that [alleged infringer] specifically intended for [insert name or other description of alleged direct infringer] to infringe the [ ] patent, in order to find inducement of infringement. If you do not find that [alleged infringer] specifically intended to infringe, then you must find that [alleged infringer] has not actively induced the alleged infringement under § 271(f)(1).]

[If § 271(f)(2)—contributory foreign infringement—is at issue:

[Alleged infringer] is [also] liable for § 271(f)(2) infringement of a claim if [patent holder] proves by a preponderance of the evidence that:

(1)    [alleged infringer] supplies a component, or causes a component to be supplied, from the United States to a place outside of the United States;

(2)     the component is especially made or adapted for use in the claimed invention and is not a staple article or commodity of commerce suitable for substantial noninfringing use;

(3)     [alleged infringer] is aware of the [ ] patent and knows that the component is especially adapted for use in the claimed invention and has no substantial noninfringing use; and

(4)     intends for the component to be used in a product that would directly infringe the claim if it had been used in the United States.

Authorities

35 U.S.C. § 271(f); *Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734, 737 (2017) ("We hold that a single component does not constitute a substantial portion of the components that can give rise to liability under § 271(f)(1)."); *Cardiac Pacemakers, Inc. v. St. Jude Med.*, 576 F.3d 1348, 1365 (Fed. Cir. 2009) (§ 271(f) does not cover method claims); *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1222-23 (Fed. Cir. 2006); *Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113, 1117-18 (Fed. Cir. 2004); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1366 (Fed. Cir. 2005); *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys., Corp.*, 245 F.3d 1364, 1368 (Fed. Cir. 2001) ("[T]he statutory language in this section [271(f)(2)] does not require an actual combination of the components, but only a showing that the infringer shipped them with the intent that they be combined.").

Committee Comments

For simplicity's sake, this instruction does not incorporate the "willful blindness" standard for induced infringement addressed by the Supreme Court in *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769-70 (2012). If the patentee is proceeding on a theory of willful blindness, however, that standard should be addressed in this instruction. *See* Instruction 3.2.

**B.3     Infringement**

**3.5     INFRINGEMENT BY SALE, OFFER FOR SALE, USE, OR IMPORTATION OF A PRODUCT MADE OUTSIDE THE UNITED STATES BY PATENTED PROCESS**

[Alleged infringer] is liable for direct infringement of a claim if [patent holder] proves by a preponderance of the evidence that [alleged infringer], without [patent holder]'s authorization, imports, offers to sell, sells, or uses within the United States a product which was made outside of the United States during the time the [ ] patent is in force by a process that, if performed in the United States, would infringe the claim literally or under the doctrine of equivalents. However, if the product has been materially changed by an additional process or the product has become a trivial and nonessential component of another product, you must find [alleged infringer] did not infringe the [ ] patent.

<u>Authorities</u>

35 U.S.C. § 271(g); *Syngenta Crop Prot., LLC v. Willowood, LLC*, 944 F.3d 1344, 1363 (Fed. Cir. 2019) (holding "§ 271(g) does not require a single entity to perform all of the steps of a patented process"); *Momenta Pharm., Inc. v. Teva Pharm. USA Inc.*, 809 F.3d 610 (Fed. Cir. 2015) (explaining what "made by" a patented process means); *Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367 (Fed. Cir. 2003) (finding infringement under this section); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1347 (Fed. Cir. 2000) (same).

**B.3    Infringement**

### 3.6    DIRECT INFRINGEMENT: ONE OR MORE SYSTEM COMPONENTS LOCATED OUTSIDE THE UNITED STATES

[This instruction should only be given where one or more components of an accused system are located outside of the United States.]

Direct infringement requires that the accused system include every element recited in the claim.

[Patent holder] claims that infringement occurred within the United States even though some (but not all) of the elements of the claim were located outside of the United States. For infringement to occur within the United States, [patent holder] must prove by a preponderance of the evidence that the control of the system was exercised and the benefit of the system was enjoyed in the United States.

Authorities

35 U.S.C. § 271(a); *NTP, Inc. v. Research in Motion Ltd.*, 418 F.3d 1282, 1313-21 (Fed. Cir. 2005); *id.* at 1317 ("The use of a claimed system under section 271(a) is the place at which the system as a whole is put into service, i.e., the place where control of the system is exercised and beneficial use of the system obtained.").

**B.3    Infringement**

### 3.7    DIRECT INFRINGEMENT: ACTS OF MULTIPLE PARTIES MUST BE COMBINED TO MEET ALL METHOD CLAIM LIMITATIONS

[This instruction should only be given where the patentee alleges direct infringement by the combined acts of multiple persons or companies.]

Direct infringement occurs where all steps of a claimed method are performed by or are attributable to a single party. Where more than one party is involved in practicing the steps, you must determine whether the acts of one are attributable to the other such that a single party is responsible for the infringement. There are two situations where there may be direct infringement if no single party performs all of the steps of a claimed process but more than one party performs every step of the process: (1) the parties have formed a joint enterprise or (2) one party directs or controls the other party's performance of the claim steps.

[Patent holder] alleges that [alleged infringer A] and [alleged infringer B, etc.] collectively infringe claim(s) [ ] of the [ ] patent.

For infringement to be proved, [patent holder] must prove by a preponderance of the evidence (1) that all the steps of the claimed process were performed in the United States and (2) that the acts of [alleged infringer B] are attributable to [alleged infringer A], either because [alleged infringer A] and [alleged infringer B] have formed a joint enterprise or because [alleged infringer A] directs or controls the acts of [alleged infringer B].

To prove that [alleged infringer A] and [alleged infringer B] have formed a joint enterprise, [Patent holder] must prove four elements:

(1) there was an agreement, either express or implied, between [alleged infringer A] and [alleged infringer B];

(2) they shared a common purpose;

(3) each had a financial interest in that purpose; and

(4) each had an equal right of control in the enterprise.

To prove that [alleged infringer A] directed or controlled the acts of [alleged infringer B], [Patent holder] must prove either that (1) [alleged infringer B] is the agent of [alleged infringer A] or is contractually obligated to [alleged infringer A] to carry out the claimed steps, or (2) [alleged infringer B] performed the claim step(s) in order to receive a benefit from [alleged infringer A] and that [alleged infringer A] established how or when the claim step(s) were performed.

<u>Authorities</u>

35 U.S.C. § 271(a); *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 797 F.3d 1020, 1022-24 (Fed. Cir. 2015) (en banc).

**B.3      Infringement**

### 3.8      [DELETED] INDIRECT INFRINGEMENT:
### ACCUSED INFRINGER PRACTICES SOME CLAIMED STEPS
### AND ANOTHER PRACTICES THE REMAINING STEPS

This instruction has been removed. *See Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 134 S. Ct. 2111, 2117 (2014) (stating there can be no induced-infringement liability where no single entity is liable for direct infringement of the patent under §271(a) because "where there has been no direct infringement, there can be no inducement of infringement under §271(b)").

**B.3    Infringement**

### 3.9    [DELETED] INDIRECT INFRINGEMENT:
### ACCUSED INFRINGER ALLEGEDLY INDUCES OTHERS TO
### COLLECTIVELY PRACTICE ALL CLAIMED STEPS

This instruction has been removed. *See Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 134 S. Ct. 2111, 2117 (2014) (stating there can be no induced-infringement liability where no single entity is liable f or direct infringement of the patent under §271(a) because "where there has been no direct infringement, there can be no inducement of infringement under §271(b)").

## B.3    Infringement

## 3.10    WILLFUL INFRINGEMENT

[This instruction should be given only if willfulness is in issue.]

In this case, [patent holder] argues that [alleged infringer] willfully infringed the [patent holder]'s patent.  If you have decided that [alleged infringer] has infringed, you must go on and address the additional issue of whether or not this infringement was willful.  Willfulness requires you to determine whether [patent holder] proved that it is more likely than not that [alleged infringer] knew of [patent holder]'s patent and that the infringement by [alleged infringer] was intentional. You may not determine that the infringement was willful just because [alleged infringer] was aware of the [ ] patent and infringed it. Instead, you must also find that [alleged infringer] deliberately infringed the [ ] patent.

To determine whether [alleged infringer] acted willfully, consider all facts and assess [alleged infringer's] knowledge at the time of the challenged conduct.  Facts that may be considered include, but are not limited, to:

(1) Whether or not [alleged infringer] acted consistently with the standards of behavior for its industry;

(2) Whether or not [alleged infringer] intentionally copied a product of [patent holder] that is covered by the [ ] patent;

(3) Whether or not [alleged infringer] reasonably believed it did not infringe or that the patent was invalid;

(4) Whether or not [alleged infringer] made a good-faith effort to avoid infringing the [ ] patent, for example, whether [alleged infringer] attempted to design around the [ ] patent; and

(5) Whether or not [alleged infringer] tried to cover up its infringement.

[Give this additional instruction only if the alleged infringer relies on a legal opinion as a defense to an allegation of willful infringement]

[Alleged infringer] argues it did not act willfully because it relied on a legal opinion that advised [alleged infringer] either (1) that the [product] [method] did not infringe the [ ] patent or (2) that the [ ] patent was invalid. You must evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable.

[If jury is made aware that there was not a legal opinion that alleged infringer is relying on]

You may not assume that merely because [alleged infringer] did not obtain a legal opinion about whether [it] infringed the [ ] patent, that the opinion would have been unfavorable. The absence of a legal opinion may not be used by you to find that [alleged infringer] acted willfully.  Rather, the issue is whether, considering all the facts, [patent holder] has established that [alleged

infringer]'s conduct was willful.

<u>Authorities</u>

35 U.S.C. § 284; *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016) (preponderance of the evidence standard for finding willfulness); *Eko Brands, LLC v. Adrian Rivera Mayanez Enters., Inc.*, No. 2018-2215, slip op. at 16 (Fed. Cir. January 13, 2020) ("Under *Halo*, the concept of willfulness requires a jury to find no more than deliberate or intentional infringement."); *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) ("*Halo* emphasized that subjective willfulness alone—i.e., proof that the defendant acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer,'—can support an award of enhanced damages." (quoting *Halo*, 136 S. Ct. at 1930)); *WBIP, LLC v. Kohler Co.,* 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages."); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999) (knowledge of the patent necessary to show willfulness and explaining, in the context of willful infringement, that "the patent law encourages competitors to design or invent around existing patents"); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (willful blindness is "just as culpable as … actual knowledge").

35 U.S.C. § 298 ("The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent.").

<u>Committee Comments</u>

Some model jury instructions provide an instruction on legal opinions of counsel both where the accused infringer does and does not raise a legal opinion as a defense to willful infringement, *see, e.g.*, 2018 AIPLA Model Patent Jury Instructions, at 11.1 (https://www.aipla.org/home/news-publications/model-patent-jury-instructions). Others only provide an instruction where the accused infringer relies on a legal opinion, *see, e.g.*, N.D. Cal., Model Patent Jury Instructions, at 3.8 (https://www.cand.uscourts.gov/juryinstructions).

Some model jury instructions provide a list of non-exhaustive factors for consideration, *see, e.g.*, N.D. Cal., Model Patent Jury Instructions, at 3.8 (https://www.cand.uscourts.gov/juryinstructions). Others decline to provide a list of factors, on the theory that the factors are better left to attorney argument or may mislead a jury to believe other factors should not be considered. *See, e.g.,* Seventh Circuit, 2008 Patent Jury Instructions, at 11.2.14 (www.ca7.uscourts.gov/Pattern-Jury-Instr.) It is the Committee's view that to the extent the court decides to provide a list of factors for the jury's consideration (an issue on which the Committee takes no position), only the factors for which there is evidentiary support should be included. *Cf. Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1231 (Fed. Cir. 2014) (stating that "the district court erred by instructing the jury on multiple *Georgia-Pacific* factors that are not relevant, or are misleading, on the record before it").

## B.4    Validity

### 4.1    INVALIDITY—BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether or not [alleged infringer] has proven that claims [ ] of the [ ] patent are invalid. To prove that any claim of a patent is invalid, [alleged infringer] must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

<u>Authorities</u>

35 U.S.C. § 282 (patents presumed valid); *Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. 91 (2011).  Invalidity may be asserted for failure to comply with any requirement of 35 U.S.C. § 101, 102, 103, 112, or 251, as a defense to alleged infringement. *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002) (to overcome presumption of validity, challenging party must present clear and convincing evidence of invalidity); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988) (clear and convincing evidence is that "which produces in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions are highly probable") (alteration in original) (citation and internal quotation marks omitted); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986) ("Notwithstanding that the introduction of prior art not before the examiner may facilitate the challenger's meeting the burden of proof on invalidity, the presumption remains intact and on the challenger throughout the litigation, and the clear and convincing standard does not change.").

## B.4.2  Validity—Adequacy of Patent Specification

## 4.2a    WRITTEN DESCRIPTION REQUIREMENT

The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventor was in possession of the full scope of claimed invention as of the patent's effective filing date.  [Alleged infringer] contends that claim(s) [ ] of [patent holder]'s [ ] patent [is/are] invalid because the specification of the [ ] patent does not contain an adequate written description of the invention.  To succeed, [alleged infringer] must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the effective filing date of [insert date] would not have recognized that it describes the full scope of the invention as it is finally claimed in claim(s) [ ] of the [ ] patent.  If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date.  The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently.  A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses.  It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claim.  The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification.  Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s).  However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description.  Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

[If case involves genus claims:
In this case, claim(s) [ ] of [patent holder]'s [ ] patent is/are directed to a class of [ ], which can be referred to as a "genus."  One way to consider whether the combination of words, structures, figures, diagrams, formulas, etc. contained in the patent specification sufficiently describes the genus is to assess whether the specification includes a representative number of species falling within the scope of the claimed invention sufficient to encompass the breadth of the genus.  The specification generally need not describe every species in a genus in order to satisfy the written description requirement.  However, when there is substantial variation within the claimed genus, the specification must describe a sufficient variety of species to reflect the variation within the genus.

Another way to consider whether the written description is sufficient is to assess whether the patent specification identifies structural features common to the members of the claimed genus so that a person of ordinary skill in the art can "visualize or recognize" the members of the claimed invention.  The written description requirement is satisfied in the above circumstance when there

is an established correlation between structure and function described in the specification or known in the art at the time of filing.]


Authorities

35 U.S.C. § 112(a); Pre-AIA 35 U.S.C. § 112, ¶ 1; *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1373-79 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 787 (2019); *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285 (Fed. Cir. 2014); *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1349-51 (Fed. Cir. 2013); *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1287 (Fed. Cir. 2012); *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) (en banc) ("While the description requirement does not demand any particular form of disclosure, or that the specification recite the claimed invention *in haec verba,* a description that merely renders the invention obvious does not satisfy the requirement." (internal citations omitted)); *PowerOasis, Inc. v. T-MOBILE USA, INC*., 522 F. 3d 1299, 1306 (Fed. Cir. 2008); *Lizard Tech., Inc. v. Earth Res. Mapping Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 929 (Fed. Cir. 2004); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253-55 (Fed. Cir. 2004); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956 (Fed. Cir. 2002); *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) ("In order for a disclosure to be inherent, however, the missing descriptive matter must necessarily be present in the parent application's specification such that one skilled in the art would recognize such a disclosure."); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997); *In re Alton*, 76 F.3d 1168, 1172 (Fed. Cir. 1996).

### B.4.2   Validity—Adequacy of Patent Specification

## 4.2b   ENABLEMENT

The patent law contains certain requirements for the part of the patent called the specification. One of those requirements is called the enablement requirement. [Alleged infringer] contends that claim(s) [ ] of [patent holder]'s [ ] patent [is/are] invalid because the specification does not "enable" the full scope of the claimed invention. To succeed, [alleged infringer] must show by clear and convincing evidence that the [ ] patent specification does not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention as of the effective filing date, here [insert date], without undue experimentation. If a patent claim is not enabled, it is invalid.

The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive." Some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1) the time and cost of any necessary experimentation;

(2) how routine any necessary experimentation is in the field of [identify field];

(3) whether the patent discloses specific working examples of the claimed invention;

(4) the amount of guidance presented in the patent;

(5) the nature and predictability of the field of [identify field];

(6) the level of ordinary skill in the field of [identify field]; and

(7) the nature and scope of the claimed invention.

No one or more of these factors is alone dispositive. Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the effective filing date, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

<u>Authorities</u>

35 U.S.C. § 112(a); Pre-AIA 35 U.S.C. § 112, ¶ 1; *Idenix Pharms. LLC v. Gilead Scis. Inc.*, 941 F.3d 1149 (Fed. Cir. 2019); *Promega Corp. v. Life Techs. Corp.*, 773 F.3d 1338 (Fed. Cir. 2014), *rev'd and remanded on other grounds*, 137 S. Ct. 734 (2017); *Wyeth & Cordis Corp. v. Abbott Labs.*, 720 F.3d 1380 (Fed. Cir. 2013) ("The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be 'unduly extensive.'" (quoting *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253 (Fed. Cir. 2004) and *PPG Indus.,*

*Inc. v. Guardian Indus., Corp.*, 75 F.3d 1558, 1564 (Fed. Cir. 1996)); *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1338 (Fed. Cir. 2013); *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377 (Fed. Cir. 2012); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008) ("'The scope of the claims must be less than or equal to the scope of the enablement' to 'ensure[ ] that the public knowledge is enriched by the patent specification to a degree at least commensurate with the scope of the claims.'") (quoting *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-96 (Fed. Cir. 1999)); *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1285 (Fed. Cir. 2007) (full scope of claimed invention must be enabled); *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003) (enabling the full scope of each claim is "part of the quid pro quo of the patent bargain" and suggesting express teaching against later-claimed embodiment may also be relevant); *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988) (factors for determining undue experimentation).

### B.4.2   Validity—Adequacy of Patent Specification

## 4.2c    [DELETED] BEST MODE

This instruction has been removed because under section 15 of the America Invents Act, enacted on September 16, 2011, failure to disclose the best mode is no longer a basis for invalidity or unenforceability.

### B.4.3   Validity—The Claims

### 4.3a-1 PRIOR ART
### (If Not in Dispute)

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art.  Prior art is considered in determining whether claim(s) [ ] of  the [ ] patent are anticipated or obvious.  Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

[Alleged infringer] contends that the following is prior art to the [ ] patent: [list prior art if not in dispute].

### B.4.3 Validity—The Claims

## 4.3a-2 PRIOR ART
### (For Patents Having an Effective Filing Date Before March 16, 2013)

[Alleged infringer] contends that the following is prior art to the [ ] patent: [describe art]

You must determine whether [disputed alleged prior art] is prior art that can be considered in determining whether claim(s) [ ] of the [ ] patent are anticipated or obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

[Choose those that apply based on alleged infringer's contentions] [Where appropriate, add limitation that subject matter developed by another which qualifies as prior art only under one or more of subsections (e), (f), and (g) of 35 U.S.C. § 102 where the subject matter and the claimed invention were, at the time the claimed invention was made, owned by the same person, or subject to an obligation of assignment to the same person.]

[Alleged infringer] contends that [describe alleged prior art] is prior art because it was known to or used by others in the United States or patented or described in a printed publication anywhere in the world before [insert date of invention]. An invention is known when the information about it was reasonably accessible to the public on that date. [A description is a "printed publication" only if it was publicly accessible.]

[Alleged infringer] contends that [describe alleged prior art] is prior art because it was already patented or described in a printed publication, anywhere in the world by [patent holder] or anyone else, more than a year before [insert date], which is the effective filing date of the application for the [ ] patent.

[Alleged infringer] contends that [describe alleged prior art] is prior art because it was publicly used, sold, or offered for sale in the United States more than one year before [insert date], which is the effective filing date of the application for the [ ] patent. An invention was publicly used when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., it was reduced to practice or it had been described such that a person having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed.

[Alleged infringer] contends that [describe alleged prior art] is prior art because the [named inventor] derived it from another who conceived of it and communicated it to [named inventor]. Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence

beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

[Alleged infringer] contends that [describe alleged prior art] is prior art because it was made by another person in the United States before the invention was made by [named inventor] and the other person did not abandon, suppress, or conceal the invention. [For someone else to have made the claimed invention before the [named inventor], the other person must have either (1) reduced the invention to practice before [the named inventor's invention date] or (2) conceived of the claimed invention before [named inventor] and exercised diligence in reducing it to practice starting just before the named inventor's conception date.]

[If invention date is disputed: In this case, you must determine the date of invention [or conception] [and/or] [reduction to practice] for the [claimed invention or alleged prior art].

The date of invention is either when the invention was reduced to practice or when conceived, provided the inventor(s) were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day. Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial. A claimed invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application that fully describes the invention.]

[Alleged infringer] must prove by clear and convincing evidence that [alleged prior art] is prior art.]

Authorities

Pre-AIA 35 U.S.C. § 102(a)-(g); Pre-AIA 35 U.S.C. § 103(c); *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 139 S. Ct. 628 (2019); *Teva Pharm. Indus. v. AstraZeneca Pharms.*, 661 F.3d 1378 (Fed. Cir. 2011); *Solvay S.A. v. Honeywell Int'l Inc.*, 622 F.3d 1367, 1376 (Fed. Cir. 2010); *In re Giacomini*, 612 F.3d 1380, 1383-84 (Fed. Cir. 2010); *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317 (Fed. Cir. 2009); *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008); *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186 (Fed. Cir. 2008); *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1358-60 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *In re Klopfenstein*, 380 F.3d 1345, 1348-51 (Fed. Cir. 2004); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1320-21 (Fed. Cir. 2004); *Schering*

*Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-80 (Fed. Cir. 2003); *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330-31 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452-53 (Fed. Cir. 1991); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *Am. Stock Exch., LLC v. Mopex, Inc.*, 250 F. Supp. 2d 323, 328-32 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); *Pfaff v. Wells Elecs. Inc.*, 525 U.S. 55 (1998); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1365 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147-50 (Fed. Cir. 1983)

Regarding invention date disputes: *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-79 (Fed. Cir. 1996); *E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060 (Fed. Cir. 2019); *Perfect Surgical Techniques, Inc. v. Olympus Am., Inc.*, 841 F.3d 1004 (Fed. Cir. 2016); *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 967 (Fed. Cir. 2014) ("While defendants bear the burden of persuasion to show that the Brandt references are prior art to the '404 patent by clear and convincing evidence, the patentee nevertheless must meet its burden of production to demonstrate an earlier conception date."); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994).

**B.4.3  Validity—The Claims**

<h2 style="text-align:center">4.3a-3  PRIOR ART</h2>
<h3 style="text-align:center">(For Patents Having an Effective Filing Date on or After March 16, 2013)</h3>

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art.  You must determine whether [alleged prior art] is prior art that can be considered in determining whether claim(s) [ ] of the [ ] patent are anticipated or obvious.  There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

[Choose those that apply based on alleged infringer's contentions]:

[Alleged infringer] contends that [describe alleged prior art] is prior art because it was publicly known or was used, on sale, or otherwise made available to the public before the filing date of the patent.  An invention is known when the information about it was reasonably accessible to the public on that date.  An invention was publicly used when it was either accessible to the public or commercially exploited.   An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., it was reduced to practice or it had been described such that a person having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed.

[Alleged infringer] contends that [describe alleged prior art] is prior art because it was published or otherwise made available to the public before the filing date of the patent.

[Alleged infringer] contends that [describe alleged prior art] is prior art because it is a [patent] [published patent application] that names another invention that was filed before the filing date of the patent.

You may not find that [describe alleged prior art] is prior art if:

It is an item or publication that (a) is the inventor's own work or (b) describes the inventor's own work or (c) was directly or indirectly obtained from the inventor, unless it was made public more than one year before the filing date of the patent's application, or

It is a patent or patent application that (a) discloses the inventor's own work or (b) was directly or indirectly obtained from the inventor or (c) was owned by the same person or subject to an obligation of assignment to the same person.

[Alleged infringer] must prove by clear and convincing evidence that [alleged prior art] is prior art.]

<u>Authorities</u>

35 U.S.C. § 102(a)(1)-(2); 35 U.S.C. § 102(b)(1)-(2); *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 139 S. Ct. 628 (2019).

### B.4.3 Validity—The Claims

# 4.3b-1 ANTICIPATION

In order for someone to be entitled to a patent, the invention must actually be "new." [Alleged infringer] contends that claim(s) [ ] of the [ ] patent is/are invalid because the claimed invention(s) is/are anticipated or because [patent holder] lost the right to obtain a patent. [Alleged infringer] must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claim(s) is/are invalid.

Specifically, [alleged infringer] contends that the following piece[s] of prior art anticipates claim(s) [ ] of the [ ] patent: [describe art.]

Anticipation must be determined on a claim-by-claim basis. [Alleged infringer] must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

Where [alleged infringer] is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

[For patents having an effective filing date before March 16, 2013 – include those that apply.]

[Alleged infringer] contends that claims [ ] of the [ ] patent is/are not new and is/are invalid as anticipated because [the inventor] has lost her or his rights if she or he had already obtained a patent for the invention in a foreign country before the filing date of the application in the United States or the patent application was filed in a foreign country more than a year before the filing date of the application for the patent in the United States.

[Alleged infringer] contends that claims [ ] of the [ ] patent is/are not new and is/are invalid as anticipated because it was described in a published patent application filed by another in the United States [or under the PCT system and designated the United States, and was published in English] before [insert date of invention].

[Alleged infringer] contends that claims [ ] of the [ ] patent is/are not new and is/are invalid as anticipated because the claimed invention was described in a patent granted on an application for patent by another filed in the United States [or under the PCT system and designated the United States, and was published in English] and the application was filed before [insert date of reduction

to practice or the filing date of the application for the [ ] patent].

[Alleged infringer] contends that [patent holder] has lost his or her rights because he or she abandoned the invention. To abandon the invention, an inventor must intend to dedicate his or her invention to the public. Such dedication may be either express or implied, by actions or inactions of the inventor. Delay alone in filing a patent application on the invention is not enough to find the required intent.

Authorities

Pre-AIA 35 U.S.C. § 102(a)-(g); *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1343 (Fed. Cir. 2018); *Finisar Corp. v. DirectTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008); *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369-70 (Fed. Cir. 2008).

## B.4.3 Validity—The Claims

## 4.3c   OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent [at the time the invention was made] [before the filing date of the patent].[1]

[Alleged infringer] may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the [invention was made] [patent was filed] in the field of [insert the field of the invention].

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field [of the invention] that someone would have had at the time the [invention was made] [patent was filed], the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly.  Do not use hindsight; consider only what was known at the time of the invention [or the patent's filing date].

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of [the claimed invention] [the patent's filing date], there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:[2]

a.  Whether the claimed invention was commercially successful as a result of the merits of the

---

[1] The "at the time invention was made" standard is used for patents that were filed before March 16, 2013. For patents filed on or after March 16, 2013, the appropriate standard is "before the effective filing date of the claimed invention."

[2] It is the Committee's view that only the objective indicia for which there is evidentiary support should be included.

claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b. Whether the claimed invention satisfied a long-felt need;

c. Whether others had tried and failed to make the claimed invention;

d. Whether others invented the claimed invention at roughly the same time;

e. Whether others copied the claimed invention;

f. Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

g. Whether the claimed invention achieved unexpected results;

h. Whether others in the field praised the claimed invention;

i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

j. Whether others sought or obtained rights to the patent from the patent holder; and

k. Whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

### B.4.3 Validity—The Claims

## 4.3c(i) LEVEL OF ORDINARY SKILL

In deciding what the level of ordinary skill in the field of [invention] is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

## 4.3c(ii) SCOPE AND CONTENT OF THE PRIOR ART

[Option 1: parties stipulate to prior art.]

In considering whether the claimed invention was obvious at the time it was made, you should consider the scope and content of the following prior art: [Insert art as stipulated].

[Option 2: parties dispute the prior art.]

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Where [alleged infringer] is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

Authorities

35 U.S.C. § 103. The four-factor test, including articulation of the objective factors, is found in *Graham v. John Deere Co*., 383 U.S. 1, 17-18 (1966). The test was reaffirmed in *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 407 (2007) ("While the sequence of these questions might be reordered in any particular case, the factors continue to define the inquiry that controls.").

In cases where the invalidity defense is based on a combination of prior art, the proper inquiry is a flexible analysis considering whether, among other factors, the prior art teaches, suggests, or motivates the claimed invention. *KSR*, 550 U.S. at 419-20; *In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*, 676 F.3d 1063, 1075-79 (Fed. Cir. 2012); *Esai Co. v. Dr. Reddy's Labs. Ltd.*, 533 F.3d 1353, 1356-57 (Fed. Cir. 2008); *Takeda Chem. Indus., Ltd. v.*

*Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1356-57 (Fed. Cir. 2007); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1380-81 (Fed. Cir. 1986).

*See also Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. 91; *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350 (Fed. Cir. 2017); *Circuit Check, Inc. v. QXQ Inc.*, 795 F.3d 1331, 1482 (Fed. Cir. 2015); *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343 (Fed. Cir. 2013); *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324 (Fed. Cir. 2009); *Cordis Corp. v. Medtronic Ave., Inc.*, 511 F.3d 1157, 1172 (Fed. Cir. 2008); *Aventis Pharma Deutschland GmbH v. Lupin, Ltd.*, 499 F.3d 1293, 1303 (Fed. Cir. 2007) (obviousness should be evaluated on claim-by-claim basis); *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007); *In re Icon Health & Fitness, Inc.*, 496 F.3d 1374, 1379-80 (Fed. Cir. 2007); *Princeton Biochems., Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1339 (Fed. Cir. 2005).

For patents having filing dates before March 16, 2013, obviousness should be assessed at the time of the invention. For patents having filing dates on or after March 16, 2013, obviousness should be assessed at the time just before the patent's effective filing date. In either case, fact- finders should be made aware "of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning." *KSR*, 550 U.S. at 421.

**B.4.3 Validity—The Claims**

## 4.3d    INVENTORSHIP

[This instruction should only be given in the event the alleged infringer has contended that the patent suffers from improper inventorship.]

In this case, [alleged infringer] contends that the [ ] patent is invalid because of improper inventorship. A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent. This is known as the "inventorship" requirement.

To be an inventor, one must make a significant contribution to the conception of at least one of the claims of the patent [even if that claim has not been alleged to be infringed]. Whether the contribution is significant in quality is measured against the scope of the full invention.

If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor. Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor. What is required is some significant contribution to the idea claimed.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

Authorities

35 U.S.C. §§ 102, 256; *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998) ("If a patentee demonstrates that inventorship can be corrected as provided for in section 256, a district court must order correction of the patent, thus saving it from being rendered invalid.") and *id.* at 1351 (setting forth framework for determining joint inventorship); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358-59 (Fed. Cir. 2004); *Hess v. Advanced Cardiovascular Sys. Inc.*, 106 F.3d 976, 980-81 (Fed. Cir. 1997) (applying "clear and convincing evidence" standard to inventorship claims and finding plaintiff who offered suggestions to named inventors was not an inventor); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985).

## B.5    Patent Damages

## 5.1      DAMAGES—INTRODUCTION

If you find that [alleged infringer] infringed any valid claim of the [ ] patent, you must then consider what amount of damages to award to [patent holder]. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that [alleged infringer] has not infringed any valid claim of the patent, then [patent holder] is not entitled to any damages.

The damages you award must be adequate to compensate [patent holder] for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put [patent holder] in approximately the same financial position that it would have been in had the infringement not occurred.

[Patent holder] has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that [patent holder] establishes that it more likely than not has suffered. While [patent holder] is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that [patent holder] may be entitled to recover. In this case, [patent holder] seeks [insert as appropriate, e.g., lost profits, price erosion, lost convoyed sales, or a reasonable royalty]. Lost profits consist of any actual reduction in business profits [patent holder] suffered as a result of [alleged infringer]'s infringement. A reasonable royalty is defined as the money amount [patent holder] and [alleged infringer] would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. But, regardless of the type of damages you may choose to award, you must be careful to ensure that award is no more and no less than the value of the patented invention.

[*Add if patent holder is under a FRAND obligation*: A reasonable royalty must reflect that [patent holder] committed to license the [asserted patent] on fair, reasonable and non-Discriminatory ("FRAND") terms.  Because of this FRAND commitment, I will refer at times in my instructions to "standard-essential" patents. By referring to standard-essential patents, the Court is not instructing you that the asserted patents are actually essential to any standard. Again, it is up to you, the jury, to decide whether or not [the patent holder] has proven that the patents are standard-essential and infringed.

[The patent holder] submitted a written commitment to [insert standard body] covering [the asserted patents], agreeing to grant an irrevocable license to [the asserted patents] on fair, reasonable, and non-discriminatory—or FRAND—terms and conditions.  Therefore, a reasonable royalty in this case cannot exceed the amount permitted under [the patent holder's] FRAND obligations.]

I will give more detailed instructions regarding damages shortly. Note, however, that [patent holder] is entitled to recover no less than a reasonable royalty for each infringing [sale; fill in other

infringing act].

<u>Committee Comments and Authorities</u>

*See* 35 U.S.C. § 284; *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("What is taken from the owner of a utility patent (for purposes of assessing damages under § 284) is only the patented technology, and so the value to be measured is only the value of the infringing features of an accused product."); *Virnetx, Inc. v. Cisco Sys., Inc.,* 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("No matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features."); *Calico Brand, Inc. v. Ameritek Imps., Inc.*, 527 F. App'x. 987, 996 (Fed. Cir. 2013) ("lost profits must be tied to the intrinsic value of the patented feature"); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("the trial court must carefully tie proof of damages to the claimed invention's footprint in the market place"); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

A patent holder is not entitled to damages that are remote or speculative. *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) (vacating and remanding jury award as excessive); *Lam*, 718 F.2d at 1067 (holding that lost profits, as well as the harm to the goodwill of the entire market stemming from the infringer's inferior product, were not remote or speculative, and thus recoverable). The Federal Circuit has opined, in *dicta*, that "remote consequences, such as a heart attack of the inventor or loss in value of shares of common stock of a patentee corporation caused indirectly by infringement are not compensable." *Rite-Hite*, 56 F.3d at 1546. While a patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360 (Fed. Cir. 1991).

When the amount of damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the alleged infringer. *Lam*, 718 F.2d at 1064. Any such adverse consequences must rest on the alleged infringer when the inability to ascertain lost profits is due to the infringer's own failure to keep accurate records. *Id.*

## B.5 Patent Damages

## 5.2 LOST PROFITS—"BUT FOR" TEST

[This instruction should only be given in the event the patent holder is seeking lost profits damages, in whole or in part.]

To recover lost profits (as opposed to reasonable royalties), [patent holder] must show a causal relationship between the infringement and [patent holder]'s loss of profit. In other words, [patent holder] must show that, but for the infringement, there is a reasonable probability that [patent holder] would have earned higher profits. To show this, [patent holder] must prove that, if there had been no infringement, [it would have made some portion of the sales that [alleged infringer] made of the infringing product,] [it would have sold more products that are functionally related to those products,] [it would have sold its products at higher prices,] [or it would have had lower costs].

[Patent holder] is entitled to lost profits if it establishes each of the following:

(1)     That there was demand for the patented [product] [method] [product produced by the method].

(2)     That there were no available, acceptable, noninfringing substitute products, or, if there were, [patent holder's] market share of the number of the sales made by [alleged infringer] that [patent holder] would have made, despite the availability of other acceptable noninfringing substitutes.

(3)     That [patent holder] had the manufacturing and marketing capacity to make any infringing sales actually made by [alleged infringer] and for which [patent holder] seeks an award of lost profits—in other words, that [patent holder] was capable of satisfying the demand.

(4)     The amount of profit that [patent holder] would have made if [alleged infringer] had not infringed.

Committee Comments and Authorities

35 U.S.C. § 284; *Aro Mfg. Co. v. Convertible Top Co.*, 377 U.S. 476, 502-07 (1964); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *Carella v. Starlight Archery*, 804 F.2d 135, 141 (Fed. Cir. 1986); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

The four-factor "but for" test was first articulated in *Panduit*, 575 F.2d at 1156, and has since been adopted by the Federal Circuit. *See, e.g.*, *Rite-Hite*, 56 F.3d at 1545. It is not, however, the only

available method for proving lost profits. *Id.*; *see also BIC*, 1 F.3d at 1218-19. Once a patent holder has shown the four elements of the *Panduit* test, the burden then shifts to alleged infringer to show that patent holder's "but for" causation analysis is unreasonable under the specific circumstances. *Rite-Hite*, 56 F.3d at 1545.

## LOST PROFITS—DEMAND

Demand for the patented product can be proven by significant sales of a patent holder's patented product or significant sales of an infringing product containing the patented features.

Authorities

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009).

## LOST PROFITS—NONINFRINGING SUBSTITUTES—ACCEPTABILITY

To be an "acceptable, [noninfringing] substitute," a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product. If purchasers of an alleged infringer's product were motivated to buy that product because of features available only from that product and a patent holder's patented product, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with a patent holder's and an alleged infringer's products. On the other hand, if the realities of the marketplace are that competitors other than the patentee would likely have captured the sales made by the infringer, despite a difference in the products, then the patentee is not entitled to lost profits on those sales.

Authorities

*Am. Seating Co. v. USSC Group*, 514 F.3d 1262, 1270 (Fed. Cir. 2008) ("[B]uyers must view the substitute as equivalent to the patented device."); *Standard Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991).

## LOST PROFITS—NONINFRINGING SUBSTITUTES—AVAILABILITY

An alternative product may be considered "available" as a potential substitute even if the product was not actually on sale during the infringement period. Factors suggesting the alternative was available include whether the material, experience, and know-how to make or use the alleged substitute were readily available at the time of infringement. Factors suggesting the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether an alleged infringer had to design or invent around the patented technology to develop an alleged substitute.

Authorities

*Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) (holding

that an unused, but available, noninfringing process was an acceptable substitute); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003) ("The record shows that Lextron did not have the necessary equipment, know-how, and experience to make the [alternative] machine at the time of infringement.").

## LOST PROFITS—CAPACITY

A patent holder is only entitled to lost profits for sales it could have actually made. In other words, [patent holder] must show that it had the manufacturing and marketing capability to make the sales it said it lost. This means [patent holder] must prove it is more probable than not that it could have made and sold, or could have had someone else make or sell for it, the additional products it says it could have sold but for the infringement.

Authorities

*Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997) (finding that the patent holder, a young company, would have expanded to meet the increased demand created by the success of the patented product); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 554 (Fed. Cir. 1984).

## LOST PROFITS—AMOUNT OF PROFIT

A patent holder may calculate its lost profits on lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs. Certain fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from a patent holder's lost revenue.

Authorities

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11 (Fed. Cir. 1984).

## LOST PROFITS—MARKET SHARE

If a patent holder establishes it would have made some, but not all, of an alleged infringer's sales but for the infringement, the amount of sales that the patent holder lost may be shown by proving the patent holder's share of the relevant market, excluding infringing products. A patent holder may be awarded a share of profits equal to its market share even if there were noninfringing substitutes available. In determining a patent holder's market share, the market must be established first, which requires determining which products are in that market. Products are considered in the same market if they are considered "sufficiently similar" to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than, or possess characteristics significantly different from, the other.

Authorities

*State Indus., Inc. v. Mor-Flo Indus., Inc*., 883 F.2d 1573, 1557 (Fed. Cir. 1989); *BIC Leisure Prods.*, *Inc. v. Windsurfing Int'l*, *Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *Micro Chem.*, *Inc. v. Lextron*, *Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l*, *Inc.*, 246 F.3d 1336, 1354-55 (Fed. Cir. 2001).

**B.5     Patent Damages**

## 5.3     LOST PROFITS—COLLATERAL SALES

[This instruction should only be given in the event that patent holder is seeking lost profits from collateral sales.]

In this case, [patent holder] is seeking lost profits from sales of [ ], which [patent holder] contends it would have sold along with the product it sells that competes with the infringing products [ ]. These products sold along with the competitive product are called collateral products.

To recover lost profits on sales of such collateral products, [patent holder] must establish two things. First, [patent holder] must establish it is more likely than not that [patent holder] would have sold the collateral products but for the infringement. Second, a collateral product and the competitive product together must be analogous to components of a single assembly or parts of a complete machine, or, in other words, they must constitute a single functional unit.

Recovery for lost profits on sales of collateral products must not include items that essentially have no functional relationship to the competitive product and that have been sold with the competitive product only as a matter of convenience or business advantage.

<u>Committee Comments and Authorities</u>

The relationship required to recover lost profits on collateral sales is outlined in *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) (en banc) (denying recovery for lost profits on collateral sales where nonpatented product lacked a functional relationship to the patented product); *see also State Indus.*, *Inc. v. Mar-Flo Indus.*, *Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Panduit Corp. v. Stahlin Bros. Fibre Works*, *Inc.*, 575 F.2d 1152, 1157-58 (6th Cir. 1978).

### B.5    Patent Damages

## 5.4    LOST PROFITS—PRICE EROSION

[This instruction should only be given in the event that patent holder contends it should be compensated for price erosion.]

[Patent holder] can recover additional damages if it can establish that it is more likely than not that, if there had been no infringement, [patent holder] would have been able to charge higher prices for some of its products. If this fact is established, you may award as additional damages the difference between:

   (A) the amount of profits [patent holder] would have made by selling its product at the

   higher price, and

   (B) the amount of profits [patent holder] actually made by selling its product at the lower

   price [patent holder] actually charged for its product.

This type of damage is referred to as price-erosion damage.

If you find that [patent holder] suffered price erosion, you may also use the higher price in determining [patent holder]'s lost profits from sales that were lost because of the infringement. In calculating [patent holder]'s total losses from price erosion, you must take into account any drop in sales that would have resulted from charging a higher price.

You may also award as damages the amount of any increase in [patent holder]'s costs, such as additional marketing costs, caused by competition from the infringing product.

<u>Authorities</u>

*Compare Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357-58 (Fed. Cir. 2001) (upholding denial of price-erosion damages where patentee failed to show how higher prices would have affected demand for the patented product), *with Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed. Cir. 2003) (upholding award of price-erosion damages where patentee offered sufficient proof of an inelastic market that would support price increases without a drop in sales of the patented product); *see also Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1377 (Fed. Cir. 2002); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220 (Fed. Cir. 1993); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1485 (Fed. Cir. 1990).

## B.5    Patent Damages

## 5.5    REASONABLE ROYALTY—ENTITLEMENT

If you find that a patent claim is infringed and not invalid, [patent holder] is entitled to at least a reasonable royalty to compensate it for that infringement.

[Give this instruction only if the patent holder is seeking both lost profits and a reasonable royalty] If you find that [patent holder] [has not proved its claim for lost profits]/[or has proved its claim for lost profits for only a portion of the infringing sales], then you must award [patent holder] a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

<u>Authorities</u>

35 U.S.C. § 284; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) (vacating and remanding jury award as excessive); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).

## B.5 Patent Damages

## 5.6 REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

Authorities

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) (25% "rule of thumb" inadmissible); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam) (licenses must be related to patent at issue to be relevant to a reasonable royalty); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) *cert. denied*, 130 S. Ct. 3324 (2010) (vacating and rewarding jury award as excessive); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984).

## B.5    Patent Damages

### 5.7    DAMAGES - LUMP SUM VS. RUNNING ROYALTY

[Include only if both lump sum and running royalty damages theories are to be presented to the jury]. A reasonable royalty can be paid either in the form of a one-time lump sum payment or as a "running royalty." Either method is designed to compensate the patent holder based on the infringer's use of the patented technology. It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.

[Include only if a lump sum damages theory is to be presented to the jury]. Reasonable royalty awards can take the form of a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future. When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

[Include only if a running royalty damages theory is to be presented to the jury]. Reasonable royalty awards may [also] take the form of a running royalty based on the revenue from or the volume of sales of licensed products. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate, or by multiplying the number of infringing products or product units sold by a royalty amount per unit.

<u>Authorities</u>

35 U.S.C. §284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court…The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.")

Northern District of California Model Jury Instructions, section 5.7, 2018. *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 869 (Fed. Cir. 2010) ("The trial court must carefully tie proof of damages to the claimed invention's footprint in the market place."); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009); *VirnetX, Inc. v. Cisco Systems, Inc.,* 767 F.3d 1308, 1326, 1327 (Fed. Cir. 2014) ("No matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features…");

## B.5    Patent Damages

## 5.8    REASONABLE ROYALTY—RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)    The value that the claimed invention contributes to the accused product.

(2)    The value that factors other than the claimed invention contribute to the accused product.

(3)    Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

[Add if a Standard Essential Patent or a patent otherwise subject to a RAND obligation is involved: You have heard evidence that the asserted patent is a standard essential patent, that is, the [industry standard] cannot be practiced without infringing the patent. If you agree that the patent is essential to the [standard], you must ensure that your damages award reflects only the value of the patented invention and not the additional value that resulted from the patent's inclusion in the [standard]. In other words, you may not consider the success of the standard itself in determining a reasonable royalty for the patent(s)-in-suit.]

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

Committee Comments and Authorities

The so-called "*Georgia-Pacific*" factors, which can be considered in appropriate cases to inform the hypothetical negotiations, include the following:

(1)    The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty

(2)    The rates paid by the licensee for the use of other patents comparable to the patent-in- suit.

(3)    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)    The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)      The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)      The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)      The duration of the patent and the term of the license.

(8)      The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)      The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)      The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)      The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)      The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)      The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)      The opinion and testimony of qualified experts.

(15)      The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

The Federal Circuit has made it clear that the *Georgia Pacific* factors are not mandatory. *See, e.g., Energy Transp. Group, Inc. v. William Demant Holding A/S/*, 697 F.3d 1342, 1357 (Fed. Cir. 2012) ("[T]his court does not endorse *Georgia-Pacific* as setting forth a test for royalty calculations, but only as a list of admissible factors informing a reliable economic analysis."). But if they are used, the jury should be instructed only on the factors that are relevant to the evidence before the jury. *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1231 (Fed. Cir. 2014) (stating that "the district court erred by instructing the jury on multiple *Georgia-Pacific* factors that are not relevant, or are misleading, on the record before it"); *Uniloc USA, Inc. v. Microsoft Corp.*, 632

F.3d 1292 (Fed. Cir. 2011) (25% "rule of thumb" inadmissible); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam) (licenses must be related to patent at issue to be relevant to a reasonable royalty); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009), cert. denied, 130 S. Ct. 3324 (2010) (vacating and rewarding jury award as excessive); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

If a Standard Essential Patent is involved, the jury must be instructed to separate out the value of the patented invention from any value that arises from the fact that the patent is essential to a standard:

Because SEP holders should only be compensated for the added benefit of their inventions, the jury must be told to differentiate the added benefit from any value the innovation gains because it has become standard essential. Although the jury, as the fact finder, should determine the appropriate value for that added benefit and may do so with some level of imprecision, we conclude that they must be told to consider the difference between the added value of the technological invention and the added value of that invention's standardization.

*Ericsson, Inc. v. D-Link Sys.*, 773 F.3d at 1233.

**B.5    Patent Damages**

## 5.9    DAMAGES – COMPARABLE AGREEMENTS

[Instructions about comparable licenses should only be given if the jury is presented with evidence of comparable licenses]

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope.  If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

[Include only if litigation-related agreement are presented to the jury]  The hypothetical license is deemed to be a voluntary agreement.  When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

<u>Authorities</u>

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360 (Fed. Cir. 2017).

## B.5    Patent Damages

## 5.10    DATE OF COMMENCEMENT OF DAMAGES—PRODUCTS

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that [alleged infringer] has both infringed and been notified of the alleged infringement of the [ ] patent [choose those that apply]:

Alternative A:
[Patent holder] and [alleged infringer] agree that date was [insert date].

Alternative B:
If you find that a product has been sold or licensed, by [patent polder] or a third party, that includes the claimed invention, you must determine whether that product has been "marked" with the patent number. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention. The marking requirement may also be satisfied by including with the product an internet address to a posting that associates the patented articles with the number of the applicable patents. [Patent holder] has the burden of establishing that it substantially complied with the marking requirement. This means [patent holder] must show that substantially all of the products made, offered for sale, or sold under the [ ] patent have been marked [and that reasonable efforts were made to ensure that licensees who made, offered for sale, or sold products under the [ ] patent marked the products].

[If [patent holder] [its licensees,] [or any prior owner of the patent] has not marked practicing products with the patent number, or if any licensees were not required to mark practicing products, you must determine the date that [alleged infringer] received actual notice of the [ ] patent and of the specific product alleged to infringe.] [Actual notice means that [patent holder] communicated to [alleged infringer] a specific charge of infringement of the [ ] patent by a specific accused product or device. The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed.] [However, [patent holder] claims to have provided actual notice prior to filing of the complaint, on [date], when it [sent a letter to [alleged infringer]]. [Patent holder] has the burden of establishing that it is more probable than not [alleged infringer] received notice of infringement on [date].]

[If you find that *[choice A]* a product has not been sold under the [] patent*[or choice B]* that products sold under the [] patent have been properly marked with the patent number, then the marking and notice requirements do not affect the damages period. If you find that the [ ] patent was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began. If you find that the [ ] patent was granted after the infringing activity began, damages should be calculated as of [date patent issued].]

## Committee Comments and Authorities

35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066

(Fed. Cir. 1987).  Notice through marking is constructive notice. *See Maxwell*, 86 F.3d at 1111-12 (holding that when 95% of patented product offered for sale was marked by licensee retailer with "patent pending," even after the patent had been granted and remaining 5% of product remained unmarked, constructive notice had been made under 35 U.S.C. § 287(a) where patentee demonstrated efforts to correct licensee's mistakes).

In determining when damages begin with regard to method claims, there is no notice requirement. 35 U.S.C. § 287(c)(2)(F); *see Am. Med. Sys.*, 6 F.3d at 1538 ("The law is clear that the notice provisions of section 287 do not apply where the patent is directed to a process or method."). Accordingly, the calculation of damages for infringement of method claims should begin as of the date the patent issued or the date the infringement began, whichever was first. *Crystal Semiconductor*, 246 F.3d at 1353.

## B.4 Patent Damages

### 5.11 DAMAGES – REASONABLE ROYALTY – FAIR, REASONABLE, AND NON-DISCRIMINATORY TERMS

You have heard evidence that the [asserted] patent is a standard essential patent, that is, [insert standard] cannot be practiced without infringing the patent. If you find that the [asserted] patent is essential to the [insert standard], you must ensure that your damages reflect that [the Plaintiff] has declared the [asserted] patent to be essential to [insert standard] and agreed to license the [asserted patent] on fair, reasonable, and non-discriminatory—or "FRAND"—terms.

To prove that the [asserted] patent is essential to practicing the [insert standard], [insert party name] must establish that one must practice the asserted claims to comply with a required portion of the [insert standard]. If, however, there are other ways to implement the standard without infringing the [asserted] patent, the [asserted] patent is only required for an optional portion of the standard, or the patent claims do not cover the [insert standard], then the patent is not essential. The fact [the Plaintiff] has declared the [asserted] patent to be essential to [insert standard] does not prove the [asserted] patent is essential.

If you find that the [asserted] patent is essential to the [insert standard] then, you must consider the following two factors in setting a royalty:

> (1) Any royalty for the patented technology must be apportioned from the value of the standard as a whole; and

> (2) The royalty must be based on the value of the invention, not any value added by the standardization of that invention.

Generally, the non-discrimination requirement of FRAND means that similarly situated firms should receive similar terms and conditions (or have access to the same range of terms and conditions).[3]

[Include only if there is relevant evidence of patent hold-up and or royalty stacking] You may also consider any evidence of patent hold-up and royalty stacking. "Patent hold-up" refers to when the holder of a standard essential patent demands excessive royalties after companies are locked into using a standard. "Royalty stacking" can arise when a standard implicates multiple patents, perhaps hundreds or thousands, which would cause a company that is forced to pay royalties for all such standard patents to pay royalties that "stack" on top of each other and may become excessive.

In considering the evidence of a reasonable royalty, you are not required to accept one specific figure or another for the reasonable royalty. You are entitled to determine what you consider to be a reasonable royalty based upon your consideration of all of the evidence presented by the parties whether that evidence is of a specific figure or a range of figures.

---

[3] *See* Richard Gilbert, *Deal or No Deal? Licensing Negotiations in Standard-Setting Organizations*, 77 Antitrust L.J. 855, 858-59 (2011).

Authorities

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1232-33 (Fed. Cir. 2014) (explaining that "SEP holders should only be compensated for the added benefit of their invention); *id*. at 1209 ("Patent hold-up exists when the holder of a SEP demands excessive royalties after companies are locked into using a standard. Royalty stacking can arise when a standard implicates numerous patents, perhaps hundreds, if not thousands. If companies are forced to pay royalties to all SEP holders, the royalties will "stack" on top of each other and may become excessive in the aggregate. To help alleviate these potential concerns, [Standards development organizations] often seek assurances from patent owners before publishing the standard"); *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301-1306 (Fed. Cir. 2015).

**B.5     Patent Damages**
## 5.12 DAMAGES - APPORTIONMENT

[This instruction is designed to be used in cases where reasonable royalty damages are sought].[45]

[Use this instruction if neither party contends that the entire market value rule is satisfied]  The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or [the patent holder's] size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.  When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

[Use the following three paragraphs only if a party contends that the entire market value rule is satisfied]  According to the "entire market value rule," a royalty based on the total value of a multi-component product is only proper where the entire value of the product comes from the patented feature. [Patent holder] is not permitted to recover damages based on the entire market value of the accused products unless [patent holder] proves that the claimed patented features are the sole driving factor for customers' demand.[6] It is not enough for [patent holder] to show that the patented feature is viewed as valuable, important, or even essential to the use of the accused product. It is also not enough for [patent holder] to show that the accused product is commercially unviable without the patented feature. Unless you find that the claimed invention is the sole driving factor for customers' demand for the accused product, [patent holder] may not use the value of the entire product to calculate a reasonable royalty.

If the claimed patented features are not the sole driving factor for customer demand for the accused infringing product, then you must perform what is called apportionment.  When damages must be apportioned, the amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors

---

[4] Although apportionment generally is required for reasonable royalty and lost profit damages, the appropriateness of giving an apportionment instruction when lost profit damages are sought, and the content of any such instruction, will be highly fact dependent. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1287-88 (Fed. Cir.), *petition for rehearing and rehearing en banc denied*, 870 F.3d 1298 (Fed. Cir. 2017).  Accordingly, no model instruction is provided for apportionment of lost profit damages.

[5] This instruction does not address whether considerations related to the smallest saleable patent practicing unit are necessary, or whether a proffered royalty rate derived from comparable agreements represents a "built-in" apportionment despite its application to a royalty base this is not based on the smallest saleable patent practicing unit or separately apportioned. *See Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys.*, 809 F.3d 1295, 1302-04 (Fed. Cir. 2015).  It may be necessary to provide an instruction tailored to the specific facts of a case if these issues are in dispute.

[6] *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965 (Fed. Cir. 2018).

such as marketing or advertising, or [the patent holder's] size or market position. Put differently, when apportionment is required, a royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more.

On the other hand, if demand for the entire accused product depends only on the claimed feature(s), then apportionment is not necessary even though the accused product includes non-patented features.

Authorities

AIPLA Model Jury Instructions (2017) at Instruction 11.2.5.4
Westlaw Patent Jury Instruction Handbook, November 2018.
*Garretson v. Clark,* 111 U.S. 120, 121 (1884) ("'The patentee,' he says, 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.'"). *Ericsson, Inc. v. D-Link Sys., Inc.,* 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product."). *LaserDynamics, Inc. v. Quanta Comput., Inc. et al,* 694 F.3d 51, 67 (Fed. Cir. 2012). ("The entire market value rule is a narrow exception to this general rule. If it can be shown that the patented feature drives the demand for an entire multi-component product, a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product'.").

**C.    Appendix**

# GLOSSARY

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given. The definitions in the instructions must be followed and must control your deliberations.

[Add any technical terms from the art involved that may be used during trial and have agreed upon definitions. Delete any of the following terms which may not be applicable in a particular case.]

**Abstract**: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment**: A patent applicant's change to one or more claims or to the specification either in response to an office action taken by an Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation**: A situation in which a claimed invention is described in a single piece of prior art and, therefore, is not considered new and is not entitled to be patented.

**Assignment**: A transfer of patent rights to another called an "assignee" who, upon transfer, becomes the owner of the rights assigned.

**Claim**: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception**: The complete mental part of the inventive act when the inventor forms a definite and permanent idea of an invention someone else could make without undue experimentation. Conception must be capable of proof, as by drawings, disclosure to another, etc.

**Drawings**: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements**: The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment**: A product or method that contains the claimed invention.

**Enablement**: A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention without undue experimentation. The specification of the patent must contain such an enabling description.

**Examination**: Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date**: Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement**: Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory. Direct infringement is making, using, or selling the patented invention without permission. Inducing infringement is intentionally causing, urging or encouraging another to directly infringe a patent. Contributory infringement is offering to sell or selling an item that is a significant part of the invention, so that the buyer directly infringes the patent. To be a contributory infringer, one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common object suitable for noninfringing uses.

**Limitation**: A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness**: One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field at the time of [the earlier of the filing date of the patent application (post-AIA)] [the invention (pre-AIA.]

**Office Action**: A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Patent**: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed (or, in some cases, 17 years from the date the patent issued). When the patent expires, the right to make, use, or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO)**: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art**: Evidence that the claimed invention was already known or would have been obvious. This evidence includes items that were publicly known or that have been used or offered for sale, or references such as publications or patents.

**Prosecution History**: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On**: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Reduction to Practice**: The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose or when a patent application describing the invention is filed.

**Requirement**: A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Royalty**: A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification:** The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.