# Exhibit K13

# FEDERAL CIVIL
# JURY INSTRUCTIONS
# OF THE
# SEVENTH CIRCUIT

_____

**Prepared By**
**The Committee on Pattern Civil Jury Instructions**
**of the Seventh Circuit**

(2017 rev.)

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1. GENERAL INSTRUCTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*General Cautionary Instructions*
1.01  General: Functions of the Court and Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
1.02  No Inference From Judge's Questions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
1.03  All Litigants Equal Before the Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*What Is and What Is Not Evidence*
1.04  Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
1.05  Deposition Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
1.06  What is Not Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
1.07  Note-Taking . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Weighing and Considering the Evidence*
1.08  Consideration of All Evidence Regardless of Who Produced . . . . . . . . . . . . . . 13
1.09  Limited Purpose of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
1.10  Evidence Limited to Certain Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
1.11  Weighing the Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
1.12  Definition of "Direct" and "Circumstantial" Evidence . . . . . . . . . . . . . . . . . . . 17

*Witness Testimony*
1.13  Testimony of Witness: Deciding What to Believe . . . . . . . . . . . . . . . . . . . . . . . 18
1.14  Prior Inconsistent Statements [or Acts] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
1.15  Impeachment of Witness-Convictions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
1.16  Lawyer Interviewing Witness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
1.17  Number of Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
1.18  Absence of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
1.19  Adverse Inference from Missing Witness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
1.20  Spoliation/Destruction of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Particular Types of Evidence*
1.21  Expert Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
1.22  Translated Language . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
1.23  Summaries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
1.24  Demonstrative Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Separate Consideration of Multiple Parties*
1.25  Multiple Claims; Multiple Plaintiffs/Defendants . . . . . . . . . . . . . . . . . . . . . . . . 32
1.26  Dismissed/Withdrawn Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

(2017 rev.)

*Burden of Proof*
1.27 Burden of Proof. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
1.28 Clear and Convincing Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
1.29 Burden for Affirmative Defense/Burden-Shifting Theory . . . . . . . . . . . . . . . 37

*Definition of Elements*
1.30 Proximate Cause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
1.31 No Need to Consider Damages Instruction. . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Conduct of Deliberations*
1.32 Selection of Presiding Juror; General Verdict . . . . . . . . . . . . . . . . . . . . . . . 40
1.33 Communication with Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
1.34 Disagreement Among Jurors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

**2. IN-TRIAL INSTRUCTIONS; LIMITING INSTRUCTIONS . . . . . . . . . . . . . . . . . . . . . . . 43**
2.01 Cautionary Instruction Before Recess. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
2.02 In-trial Instruction on News Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
2.03 Evidence Admitted Only Against One Party . . . . . . . . . . . . . . . . . . . . . . . . 46
2.04 Stipulated Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
2.05 Stipulations of Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
2.06 Judicial Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
2.07 Transcript of Tape Recording . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
2.08 Deposition as Substantive Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
2.09 Use of Interrogatories . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
2.10 Cross-Examination of Character Witness. . . . . . . . . . . . . . . . . . . . . . . . . . . 53
2.11. Impeachment by Conviction of Crime . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
2.12. Summaries of Records as Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
2.13. Withdrawal of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
2.14. Judge's Comments to Lawyer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

**3. EMPLOYMENT DISCRIMINATION: TITLE VII, ADEA . . . . . . . . . . . . . . . . . . . . . . . 58**
3.01 General Employment Discrimination Instructions . . . . . . . . . . . . . . . . . . . . 59
3.02 Retaliation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
3.03 Pattern or Practice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65
3.04 Harassment by Co-employee or Third Party. . . . . . . . . . . . . . . . . . . . . . . . . 66
3.05A. Supervisor Harassment with Tangible Employment Action. . . . . . . . . . . . . . 69
3.05B Supervisor Harassment with No Tangible Employment Action . . . . . . . . . . . 72
3.06 Willfulness: Where Age Discrimination is Alleged . . . . . . . . . . . . . . . . . . . . 75
3.07 Cautionary Instruction on Reasonableness of Defendant's Action. . . . . . . . . . 76
3.08 Disparate Impact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77
3.09 Damages: General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78
3.10 Compensatory Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79
3.11 Back Pay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81
3.12 Mitigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
3.13 Punitive Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

**4. EMPLOYMENT DISCRIMINATION: AMERICANS WITH DISABILITIES ACT** . . . . . . . . . . . . . . **86**
4.01 Nature of ADA Claim and Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87
4.02 Elements of An ADA Claim – Disparate Treatment
(Non-Accommodation) Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88
4.03. Elements of Plaintiff's Claim – Reasonable Accommodation Cases . . . . . . . . . . 89
4.04. Definition of "Disability" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94
4.05. Definition of "Qualified" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98
4.06. Reasonable Accommodation: General Instruction . . . . . . . . . . . . . . . . . . . . . . . 100
4.07. Reasonable Accommodation: Supplemental Instructions for
Specific Accommodation Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102
4.08. Interactive Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104
4.09 Undue Hardship Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106
4.10 Direct Threat Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108
4.11 Damage: Back Pay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
4.12 Damages: Mitigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 110
4.13 Compensatory Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 111
4.14 Punitive Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112
4.15. Special Verdict Form . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113

**5. EQUAL PAY ACT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **116**
5.01 Essential Elements of a Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117
5.02 Substantially Equal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118
5.03 Equal Skill . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119
5.04 Equal Effort . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120
5.05 Equal Responsibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 121
5.06 Job Titles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 122
5.07 Rates of Pay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123
5.08 Comparable Time Periods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 124
5.09 Intent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125
5.10 Affirmative Defenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 126
5.11 Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 127
5.12 Willfulness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128

**6. PUBLIC EMPLOYEES AND PRISONER RETALIATION** . . . . . . . . . . . . . . . . . . . . . . . . . . **128**
6.01 Public Employee's First Amendment Free Speech Retaliation Claim . . . . . . . . 131
6.02 Public Employe's First Amendment Political Affiliation Claim . . . . . . . . . . . . . .
6.03 Prisoner/Detainee First Amendment Retaliation Claim . . . . . . . . . . . . . . . . . . 133

**7. CONSTITUTIONAL TORTS: 42 U.S.C. §1983** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **136**
7.01 General: Police Department/Municipality Not a Party . . . . . . . . . . . . . . . . . 137
7.02 General: Requirement of Personal Involvement . . . . . . . . . . . . . . . . . . . . . . . . 138
7.03 General: Under "Color of Law" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 139
7.04 Limiting Instruction Concerning Evidence of Statutes,
Administrative Rules, Regulations, and Policies . . . . . . . . . . . . . . . . . . . . . . . . 142
7.05 Fourth Amendment: Fraudulently Obtained Warrant . . . . . . . . . . . . . . . . . . . . 143

7.06    Fourth Amendment: *Terry* (Investigative) Stop . . . . . . . . . . . . . . . . . . . . . . . . 145

7.07    Fourth Amendment: False Arrest - Elements . . . . . . . . . . . . . . . . . . . . . . . . . . 148

7.08    Fourth Amendment - False Arrest - Definition of "Probable Cause" . . . . . . . . 149

7.09    Fourth Amendment and Fourteenth Amendment: Against Arrestee or Detainee - Elements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 151

7.10    Fourth Amendment: Excessive Force Against Arrestee - Definition of "Unreasonable" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 153

7.11    Fourth Amendment: Medical Care for Arrestee . . . . . . . . . . . . . . . . . . . . . . . . 155

7.12    Fourth Amendment: Excessive Detention (Less than 48 Hours) . . . . . . . . . . . 158

7.13    Fourth Amendment: Excessive Detention (After 48 Hours) . . . . . . . . . . . . . . 160

7.14    Fair Trial: Concealment of Exculpatory Evidence / Fabrication of Evidence . . 162

7.15    Eighth and Fourteenth Amendments: Jail/prison Conditions of Confinement – Elements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 165

7.16    Eighth and Fourteenth Amendments: Failure to Protect – Elements . . . . . . . . 169

7.17    Eighth and Fourteenth Amendments: Failure to Provide Medical Attention – Elements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 171

7.18    Eighth Amendment: Excessive Force Against Convicted Prisoner – Elements . 174

7.19    Eighth and Fourteenth Amendments: Failure to Protect from Self Harm . . . . . 177

7.20    Equal Protection: Class of One . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 180

7.21    Due Process: State-created Danger . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 181

7.22    Claim for Failure of "Bystander" Officer To Intervene – Elements . . . . . . . . 185

7.23    Liability of Supervisor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 187

7.24    Liability of Municipality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 189

7.25    Liability of Municipality for Failure to Train, Supervise or Discipline . . . . . . . 191

7.26    Damages: Compensatory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 193

7.27    Compensatory Damages in Prisoner Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . 196

7.28    Damages: Punitive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 199

**8. Prisoner's Right of Access to Court** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **202**

8.01    Description of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 203

8.02    Denial of Prisoner's Access to Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 204

8.03    Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 206

**9. FEDERAL EMPLOYEE LIABILITY ACT AND SIMILAR STATUTES** . . . . . . . . . . . . . . . . . . . . . **207**

9.01    Plaintiff's FELA Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 208

9.02    Definition of Causation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 212

9.03    Elements - Defendant's FELA Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 213

9.04    Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 215

9.05    Mitigation of Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 218

9.06    Damages (Death Case) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 219

9.07    Locomotive/Boiler Inspection Act; Federal Safety Appliance Act . . . . . . . . . . 221

9.08    Sample Special Verdict Form . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 223

**10. FAMILY MEDICAL LEAVE ACT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **224**

10.1    Nature of FMLA Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 225
10.2    Elements of FMLA Interference Claim . . . . . . . . . . . . . . . . . . . . . . . . 227
10.3    Supplemental Instructions for Specific Issues . . . . . . . . . . . . . . . . . . 231
10.4    Elements of FMLA Retaliation Claim . . . . . . . . . . . . . . . . . . . . . . . . . 233
10.5    Definition of "Equivalent Position" . . . . . . . . . . . . . . . . . . . . . . . . . . . 234
10.6    Definition of "Serious Health Condition". . . . . . . . . . . . . . . . . . . . . . 235
10.7    Definition of "Serious Illness or Injury" in Armed Forces Cases. . . . . . . . . . . 237
10.8    Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 238
10.9    Damages: Lost Wages or Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . 240
10.10  Damages: Mitigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 241
10.11  Damages: Where No Lost Wages or Benefits. . . . . . . . . . . . . . . . . . . . 242

**11. Patents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **243**

11.1. *Preliminary Instructions to Be Given at Outset of Trial*
    11.1.1    The Parties and the Nature of the Case. . . . . . . . . . . . . . . . . . . . . . . 244
    11.1.2    The Patent System. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 246
    11.1.3    How a Patent Is Obtained . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 248
    11.1.4    The Parts of a Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 249
    11.1.5    The Patent Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 251
    11.1.6    Issues to Be Decided . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 252
    11.1.7    Infringement; Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 253
    11.1.8    Direct Infringement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 254
    11.1.9    Indirect Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 255
    11.1.10  Willful Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 256
    11.1.11  Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 257
    11.1.12  Invalidity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 258
    11.1.13  Invalidity — Anticipation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 259
    11.1.14  Invalidity — Obviousness. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 260
    11.1.15  Invalidity — Written Description / Claiming Requirements . . . . . . . . 261
    11.1.16  Person of Ordinary Skill . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 262
*Final Instructions*
11.2. *Infringement*
    11.2.1    The Patent System. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 263
    11.2.2    Person of Ordinary Skill . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 264
    11.2.3    The Parts of a Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 265
    11.2.4    The Patent Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 266
    11.2.5    Infringement: Interpretation of the Patent Claims . . . . . . . . . . . . . . . 267
    11.2.6    Independent and Dependent Claims . . . . . . . . . . . . . . . . . . . . . . . . . . 268
    11.2.7    Means-Plus-Function Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 269
    11.2.8    "Comprising" / "Consisting Of" / "Consisting Essentially Of" . . . . . . 270
    11.2.9    Interpretation of the Patent Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 271
    11.2.10  Direct Infringement — Elements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 272

(2017 rev.)

| | | |
|---|---|---|
| 11.2.11.1 | Infringement — Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 273 |
| 11.2.11.2 | Infringement — Doctrine of Equivalents . . . . . . . . . . . . . . . . . . . . . . | 275 |
| 11.2.11.3 | Infringement — Means-Plus-Function Claim Language . . . . . . . . . . . | 277 |
| 11.2.11.4 | Determining Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 279 |
| 11.2.12 | Indirect Infringement — Inducement . . . . . . . . . . . . . . . . . . . . . . . . . | 280 |
| 11.2.13 | Indirect Infringement — Contributory Infringement . . . . . . . . . . . . . | 281 |
| 11.2.14 | Willful Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 283 |

**11.3.** *Invalidity*

| | | |
|---|---|---|
| 11.3.1 | Validity — General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 286 |
| 11.3.2 | Invalidity — Specification Requirements . . . . . . . . . . . . . . . . . . . . . . | 287 |
| 11.3.2.1 | Specification Requirements — Written Description . . . . . . . . . . . . . . | 288 |
| 11.3.2.2 | Specification Requirements — Enablement . . . . . . . . . . . . . . . . . . . . | 289 |
| 11.3.2.3 | Specification Requirements — Best Mode . . . . . . . . . . . . . . . . . . . . . | 291 |
| 11.3.2.4 | Specification Requirements — Indefiniteness . . . . . . . . . . . . . . . . . . | 292 |
| 11.3.3 | Section 102 and 103 Defenses — Definition of "Prior Art" . . . . . . . . | 293 |
| 11.3.4 | Section 102 Defenses — Prior Art - Definitions . . . . . . . . . . . . . . . . | 295 |
| 11.3.5 | Section 102 Defenses — Elements . . . . . . . . . . . . . . . . . . . . . . . . . . . | 297 |
| 11.3.6 | Obviousness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 299 |
| 11.3.6.1 | Obviousness — Additional Factors Indicating Non-Obviousness . . . . . | 302 |
| 11.3.6.2 | Obviousness – Combining of Prior Art References . . . . . . . . . . . . . . . | 304 |
| 11.3.7 | Inequitable Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 305 |

**11.4.** *Damages*

| | | |
|---|---|---|
| 11.4.1 | Damages — General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 306 |
| 11.4.2 | Two Types of Damages — Lost Profits & Reasonable Royalty . . . . . . . | 307 |
| 11.4.3 | Lost Profits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 308 |
| 11.4.3.1 | Lost Profits — *Panduit* Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 310 |
| 11.4.3.2 | Lost Profits — Two Supplier Market . . . . . . . . . . . . . . . . . . . . . . . . . | 312 |
| 11.4.3.3 | Lost Profits — Market Share Method . . . . . . . . . . . . . . . . . . . . . . . . . | 313 |
| 11.4.3.4 | Lost Profits — Collateral Sales . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 314 |
| 11.4.3.5 | Lost Profits — Price Erosion / Cost Increases . . . . . . . . . . . . . . . . . . | 315 |
| 11.4.3.6 | Lost Profits — Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 316 |
| 11.4.4 | Reasonable Royalty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 318 |
| 11.4.5 | Single / Multiple Recoveries for Infringing Act . . . . . . . . . . . . . . . . . | 321 |
| 11.4.6 | Requirement of Notice (Claims Involving Products) . . . . . . . . . . . . . . | 322 |
| 11.4.7 | Totaling the Damage Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 324 |

**12. Copyright** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **325**

| | | |
|---|---|---|
| 12.1.1 | Copyright — Allegation Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 326 |
| 12.2.1 | Copyright Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 327 |
| 12.3.1 | Validity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 329 |
| 12.4.1 | Ownership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 331 |
| 12.4.2 | Ownership — Works Made for Hire . . . . . . . . . . . . . . . . . . . . . . . . . . | 333 |
| 12.4.3 | Ownership — Compilation or Collective Work . . . . . . . . . . . . . . . . . . | 334 |
| 12.4.4 | Ownership — Derivative Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 335 |
| 12.5.1 | Copying . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 336 |

12.5.2       Copying — Definition of "Protected Expression" . . . . . . . . . . . . . . . . 338
12.6.1       Derivative Liability — Vicarious Infringement . . . . . . . . . . . . . . . . . . . . . 340
12.6.2       Derivative Liability — Contributory Infringement. . . . . . . . . . . . . . . . . 342
12.7.1       Defenses — Fair Use  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 345
12.7.2       Defenses — Abandonment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 348
12.7.3       Defenses — Unclean Hands / Estoppel  . . . . . . . . . . . . . . . . . . . . . . . . . 349
12.8.1       Damages — General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 350
12.8.2       Damages — Actual Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 351
12.8.3       Damages — Defendant's Profits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 352
12.8.4       Damages — Statutory Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 353

13.  **TRADEMARK**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **356**
13.1.1       Trademark/Trade Dress Infringement -- Nature of Claim  . . . . . . . . . . 357
13.1.2       Trademark/Trade Dress infringement — Elements  . . . . . . . . . . . . . . . . 359
13.1.2.1     Ownership and Priority – Unregistered and Contestable Marks. . . . . . . 364
13.1.2.2     Validity - Trademark /Trade Dress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 366
13.1.2.2.1   Validity - Trademark – Inherent Distinctiveness -- Fanciful,
             Arbitrary, and Suggestive Marks  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 367
13.1.2.2.2   Validity - Trade Dress - Inherent Distinctiveness. . . . . . . . . . . . . . . . . 370
13.1.2.2.3   Validity – Descriptive Trademark/Trade Dress – Acquired
             Distinctiveness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 372
13.1.2.2.4   Validity – Trademark/Trade Dress – Acquired Distinctiveness . . . . . . 374
13.1.2.2.5   Validity – Generic Trademark/Trade Dress  . . . . . . . . . . . . . . . . . . . . . . 377
13.1.2.2.6   Validity – Trade Dress – Non-Functionality Requirement . . . . . . . . . . 380
13.1.2.3     Infringement – Elements – Likelihood Of Confusion – Factors. . . . . . . 383
13.2.1       Contributory Infringement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 386
13.3.1       False Advertising Under Lanham Act – Elements of Claim. . . . . . . . . . 388
13.4.1       Trademark Dilution – Elements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 390
13.5.1       Affirmative defenses – Nominative Fair Use . . . . . . . . . . . . . . . . . . . . . 391
13.5.2       Affirmative Defenses – Classic Fair Use  . . . . . . . . . . . . . . . . . . . . . . . . 393
13.5.3       Affirmative Defenses – Laches/Acquiescence . . . . . . . . . . . . . . . . . . . . 395
13.5.4       Affirmative Defenses – Abandonment . . . . . . . . . . . . . . . . . . . . . . . . . . . 396
13.5.5       Affirmative Defenses – Continuous Prior Use – Registered Marks . . . . 397
13.5.6       Affirmative Defenses – Registered Trade Dress – Functionality   . . . . . 399
13.5.7       Affirmative Defenses – Genericness – Incontestable
             Trademark / Trade Dress. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 400
13.5.8       Affirmative Defenses – Fraud in Procurement . . . . . . . . . . . . . . . . . . . . 401
13.6.1       Remedies – Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 402
13.6.2       Remedies – Actual or Statutory Notice – Registered Marks  . . . . . . . . 403
13.6.3       Actual Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 404
13.6.4       Defendant's Profits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 407
13.6.5       Intentional Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 409

**APPENDIX: SAMPLE PRELIMINARY INSTRUCTIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **410**

# INTRODUCTION

The Committee on Federal Civil Jury Instructions for the Seventh Circuit drafted these proposed pattern jury instructions. The Circuit Council has approved the publication of these instructions, but has not approved their content.

These are pattern instructions, no more, no less. No trial judge is required to use them, and the Committee, while hopeful that they will provide an effective template in most trials, strongly recommends that each judge review the instructions to be sure each fits the case on trial. The Committee hopes this work will ease the burden on trial counsel in proposing jury instructions and the burden on trial judges in preparing them. Briefer instruction conferences allow more efficient use of jurors' time.

The Committee set about its task with two primary goals: 1) to state accurately the law as understood in this circuit; 2) to help judges communicate more effectively with juries through the use of simple language in short declarative sentences in the active voice. We tried to keep the instructions as brief as possible and avoid instructions on permissive inferences. The Committee strongly endorses the practice of providing the jurors with written copies of the instructions as given, without notations identifying the source of any instruction.

The Committee's intent was to address the areas of federal law most frequently covered in jury trials in this circuit — broadly speaking, employment discrimination and constitutional torts. The Committee thought it inappropriate to venture instructions on substantive state law, and urges the user faced with a diversity case to consult the pattern instructions of the state whose law produces the rule of decision. Even in diversity cases, though, the Committee recommends use of the general and in-trial instructions in Chapters 1 and 2 of these pattern instructions. The Committee chose not to attempt to include instructions for the less common federal question cases (e.g., FELA, intellectual property, antitrust) lest completion of the first edition be delayed. The Committee anticipates including FELA instructions in subsequent revisions.

The instructions were drafted with the expectation that certain modifications will be made routinely. The instructions use the capitalized terms "Plaintiff" and "Defendant" to refer to the parties; the Committee recommends that the parties' names be substituted in each case. The same is true when other descriptive terms are used (i.e., Witness, Employer, Supervisor, etc.). The Committee generally has used masculine pronouns rather than the clumsier his/her, he/she, or him/her in these instructions to make it easier to scan the text; the user should exercise special care to make each instruction gender-appropriate for a particular case. Phrases and sentences that appear in brackets are alternatives or additions to instructions, to be used when relevant to the particular case on trial. The introductory

(2017 rev.)

instructions in Chapter 1 provide some definitions for terms used in the substantive instructions.

The committee consisted of Chief District Judge Robert L. Miller, Jr. (N.D. Ind.) (Chair), Circuit Judge Terence T. Evans, District Judge Jeanne E. Scott (C.D. Ill.), District Judge Matthew F. Kennelly (N.D. Ill.), District Judge Philip G. Reinhard (N.D. Ill.), District Judge Virginia Kendall (N.D. Ill.), Joel Bertocchi (Mayer, Brown, Rowe & Maw, Chicago), Lory Barsdate Easton (Sidley Austin Brown & Wood, Chicago), Max W. Hittle (Krieg Devault Alexander & Capehart, Indianapolis), now-Magistrate Judge Iain Johnston (then of Holland & Knight, Chicago), Dennis R. McBride (U.S. Equal Employment Opportunity Commission, Milwaukee), Howard A. Pollack (Godfrey & Kahn, Milwaukee), Richard H. Schnadig and Michael Cleveland (Vedder Price Kaufman & Kammholz, Chicago), Thomas Walsh (US Attorney's Office, Chicago), and Don Zoufal (City of Chicago). The reporter was Andrew R. Klein, now Dean at Indiana University McKinney School of Law. As the Committee turned to revising the original set of instructions, several others were appointed to the Committee: Circuit Judge David F. Hamilton, District Judges Virginia M. Kendall and Tanya Walton Pratt, and practitioners Anthony Baisch, John R. Maley, Karen P. Layng, and Christina M. Egan; Jeffery O. Cooper of the McKinney School of Law succeeded Dean Klein as reporter.

Several subcommittees provided enormous assistance to the Committee through work in discrete areas. Without the work of those attorneys, the Committee's work would have taken far longer. The Committee and all users of these pattern instructions owe a large debt of gratitude to the members of those subcommittees who did not also serve on the Committee: Magistrate Judge Mary Rowland, Magistrate Judge Sidney Schenkier, Ms. Meredith Addy, Mr. James P. Baker, Ms. Sharon Baldwin, Ms. Carol Anne Been, Mr. Edward Brennan, Ms. Jonelle Burnham, Mr. James P. Chapman, Ms. Kathleen Delaney, Ms. Sally Elson, Ms. Liza Franklin, Mr. William Frazier, Mr. James Hall, Mr. Patrick Harrington, Ms. Laurie Haynie, Mr. William Hooks, Mr. Michael Kanovitz, Ms. Mary Lee Leahy, Mr. David Locke, Mr. Patrick J. Londrigan, Ms. Karen McNaught, Mr. Edward Manzo, Mr. David Melton, Ms. Patricia Mendoza, Mr. Paul W. Mollica, Mr. Jeff Monks, Mr. John Ouska, Mr. Mark Partridge, Ms. Ann Peacock, Mr. Thomas Peters, Mr. L. Steven Platt, Mr. Joseph Polick, Mr. Ronald Stearney. Ms. Monica Thompson, Mr. Joel Tragesser, Mr. Donald Rupert, Mr. Wayne Uhl, Mr. Paul Vickrey, and Mr. James White.

The Committee also thanks the law firms that hosted the Committee's working sessions — Mayer, Brown, Rowe & Maw; Sidley Austin Brown & Wood; Vedder Price Kaufman & Kammholz; Holland & Knight; Hinshaw & Culbertson; Brinks, Hofer, Gilson & Lione; and Husch, Blackwell, Sanders, Welsh & Katz. Their hospitality allowed the Committee to use its meeting time as efficiently as possible.

The Committee also wishes to thank the judges, attorneys, and organizations that offered comments on the draft the Committee caused to be posted on the Internet. Those people and organizations include attorneys Terrill Albright (Indianapolis, IN), Jeanne Bailor, George Bellas (Chicago, IL), Dmitry Feofanov (Dixon, IL), Ryan Fountain (Mishawaka, IN), Mara Georges (City of Chicago Corporation Counsel), William Goren (Naperville, IL), Brian Hagerty (St. Paul, MN), Deborah Hamilton (Chicago, IL), John Hamilton (South Bend, IN), Bruce Hugon (Indianapolis, IN), Thomas Hurka (Chicago, IL), David R. Pekarek Krohn (Northwestern University School of Law), John Maley (Indianapolis, IN), Allan Sternstein (Chicago, IL), Gordon Waldron (Chicago, IL), Jeffrey Wrage (Valparaiso, IN); Chief Circuit Judge Frank Easterbrook , District Judges Milton Shadur, John Grady, and Barbara Crabb, Magistrate Judges Nan Nolan and Andrew Rodovich; the Chicago Lawyers' Committee for Civil Rights Under the Law, the Illinois State Bar Association, NELA-Illinois (National Employment Lawyers Association), Northwest Suburban NOW (National Organization for Women), the Seventh Circuit Bar Association, the pro se law clerks of the United States District Court for the Northern District of Indiana, Seyfarth Shaw LLP, and Ms. Lesa Bauman. Every comment triggered discussion and re-evaluation; many comments produced change. We deeply appreciate the time and thought those people and organizations contributed to the Committee's work.

Finally, the Committee offers its thanks to Chief Judge Joel M. Flaum, who initiated this project and gave the Committee members the privilege of making this contribution to the handling of civil trials in this circuit, and to Chief Judge Diane P. Wood for extending the Committee's work. The Committee will continue its work, regularly modifying the instructions and comments as made necessary by evolving case law, and expanding the topics covered by this work. We are grateful to Chief Judges Flaum and Wood for this continuing honor of serving.

# 1. GENERAL INSTRUCTIONS

(2017 rev.)

# 1.01  FUNCTIONS OF THE COURT AND THE JURY

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. [Do not allow [sympathy/prejudice /fear/public opinion] to influence you.] [You should not be influenced by any person's race, color, religion, national ancestry, or sex.]

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

## Committee Comments

The bracketed material in the fourth paragraph should not be given unless a party has a legitimate concern about the possibility of influence by one or more of these factors. The Committee does not recommend that these issues be addressed routinely in every case. The list of improper factors in the last sentence of the fourth paragraph is not intended to be exclusive, and may be modified to reflect the circumstances of a particular case.

(2017 rev.)

# 1.02 NO INFERENCE FROM JUDGE'S QUESTIONS

During this trial, I have asked a witness a question myself. Do not assume that because I asked questions I hold any opinion on the matters I asked about, or on what the outcome of the case should be.

## Committee Comments

A trial judge, of course, may interrogate witnesses. FED. R. EVID. 614(b); *see Ross v. Black & Decker, Inc.,* 977 F.2d 1178, 1187 (7th Cir. 1992) ("A trial judge may not advocate on behalf of a plaintiff or a defendant, nor may he betray even a hint of favoritism toward either side. This scrupulous impartiality is not inconsistent with asking a question of a witness in an effort to make the testimony crystal clear for the jury. The trial judge need not sit on the bench like a mummy when his intervention would serve to clarify an issue for the jurors. The brief, impartial questioning of the witness by the judge, as the record reflects, to make the witness' testimony clearer was entirely proper . . .."); *Beetler v. Sales Affiliates, Inc.,* 431 F.2d 651, 654 (7th Cir. 1970)(trial judge, in aid of truth and in furtherance of justice, may question a witness in an impartial manner) (*citing United States v. Miller,* 395 F.2d 116 (7th Cir. 1968)).

An instruction reminding the jury that the judge has not intended to give any opinion or suggestion as to what the verdict should be may be helpful. *See United States v. Siegel,* 587 F.2d 721, 726 (5th Cir. 1979) (no interference with right of fair trial where questions asked by judge, for clarification, were coupled with cautionary instructions to jury); *United States v. Davis,* 89 F.3d 836 (6th Cir. 1996) (per curiam, unpublished) (no plain error where judge's statements were factually correct and jury was instructed not to consider the judge's comments, questions and rulings as evidence); EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS 3.02 (2001); *but see United States v. Tilghman,* 134 F.3d 414, 421 (D.C. Cir. 1998) ("Although jury instructions can cure certain irregularities . . . [where] the trial judge asked questions, objected to by counsel, that could have influenced the jury's assessment of the defendant's veracity, such interference with jury factfinding cannot be cured by standard jury instructions."); *United States v. Hoker*, 483 F.2d 359, 368 (5th Cir. 1973) ("No amount of boiler plate instructions to the jury – not to draw any inference as to the judge's feelings" can be expected to remedy extensive and prosecutorial questioning by judge.).

(2017 rev.)

## 1.03 ALL LITIGANTS EQUAL BEFORE THE LAW

In this case [one/some] [of] the [defendants/plaintiffs/parties] [is a/are] corporation[s]. All parties are equal before the law. A corporation is entitled to the same fair consideration that you would give any individual person.

### Committee Comments

A court may choose to modify the first and third sentences of this instruction for other types of litigants.

# 1.04 EVIDENCE

The evidence consists of the testimony of the witnesses [,] [and] the exhibits admitted in evidence [, and stipulation[s]]

[A stipulation is an agreement between both sides that [certain facts are true] [that a person would have given certain testimony].]

[I have taken judicial notice of certain facts. You must accept those facts as proved.]

## Committee Comments

Rule 201 of the Federal Rules of Evidence governs judicial notice of adjudicative facts. Judicial notice may be taken at any stage of the proceedings, but generally only after the parties have been afforded an opportunity to be heard on the matter. Rule 201(g) requires the court in civil cases to "instruct the jury to accept as conclusive any fact judicially noticed." It may be advisable to explain the reasoning behind the taking of judicial notice in a particular instance (such as "matters of common knowledge") if it is thought necessary to reinforce the command of the instruction. *See Shapleigh v. Mier,* 299 U.S. 468, 475 (1937) ("To say that a court will take judicial notice of a fact, whether it be an event or a custom or a law of some other government, is merely another way of saying that the usual forms of evidence will be dispensed with if knowledge of the fact can otherwise be acquired …. But the truth, of course, is that judicial notice and judicial knowledge are far from being one."). If the jury has not been informed of the facts judicially noticed, those facts should be described when this instruction is given.

(2017 rev.)

# 1.05 DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by [the reading of a deposition/depositions] [and video]. You should give this testimony the same consideration you would give it had the witness[es] appeared and testified here in court.

## Committee Comments

*See generally Sandridge v. Salen Offshore Drilling Co.*, 764 F.2d 252, 259 (5th Cir. 1985) (noting that "[a] trial court may not properly instruct a jury that a written deposition is entitled to less weight than live testimony" and, by analogy, improper to instruct a jury that a written deposition is entitled to less weight than a videotaped deposition); *In re Air Crash Disaster*, 635 F.2d 67, 73 (2d Cir. 1980) (by implication, approving instruction that deposition testimony "is entitled to the same consideration and is to be judged as to credibility and weighted and otherwise considered by you in the same way as if the witness has been actually present in court"); *Wright Root Beer Co. v. Dr. Pepper Co.*, 414 F.2d 887, 889-891 (5th Cir. 1969) (prejudicial and erroneous to instruct jury that "discovery" depositions are entitled to less weight than testimony of live witness). The Committee recommends that Instruction 2.08 also be given at the time the deposition testimony is presented to the jury.

(2017 rev.)

# 1.06  WHAT IS NOT EVIDENCE

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. [This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence and your verdict must not be influenced in any way by such publicity.]

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

### Committee Comments

An instruction that arguments, statements and remarks of counsel are not evidence is helpful in curing potentially improper remarks. *See Mayall v. Peabody Coal Company*, 7 F.3d 570, 573 (7th Cir. 1993); *Valbut v. Pass*, 866 F.2d 237, 241-242 (7th Cir. 1989).

With regard to publicity, this instruction tracks SEVENTH CIRCUIT FEDERAL CRIMINAL JURY INSTRUCTIONS § 1.06 (1999), which is in accord with that approved in *United States v. Coduto*, 284 F.2d 464, 468 (7th Cir. 1961). While the criminal precedents relating to publicity have their origins in the Sixth Amendment, *see Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991); *U.S. v. Thomas*, 463 F.2d 1061, 1063-1064 (7th Cir. 1972), parallel protection under the Seventh Amendment may be available to civil litigants. *See Gutierrez-Rodrigues v. Cartagena et al.,* 882 F.2d 553, 570 (1st Cir. 1989) (implying that trial publicity can lead to a mistrial if it interferes with "the Seventh Amendment right to a civil trial by an impartial jury."); *see generally Haley v. Blue Ridge Transfer Co.,* 802 F.2d 1532, 1535 n.4 (4th Cir. 1986), citing *McCoy v. Goldston* 652 F.2d 654, 656 (6th Cir. 1981) ("The right to an impartial jury in civil cases is inherent in the Seventh Amendment's preservation of a 'right to trial by jury' and the Fifth Amendment's guarantee that 'no person shall be denied of life, liberty or property without due process of law.'"); *but cf. Chicago Council of Lawyers v. Bauer et al.,* 522 F.2d 242, 258 (7th Cir. 1975) (in context of restrictions on attorney

comments outside the courtroom in a civil trial, Sixth Amendment "impartial jury" guarantee requires greater insularity against unfairness than Seventh Amendment "trial by jury" guarantee.).

# 1.07 NOTE-TAKING

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

## Committee Comments

To the extent note-taking is permitted, a cautionary instruction on these issues at the commencement of trial would be advisable. *See United States v. Rhodes*, 631 F.2d 43, 46 (5th Cir. 1980). *See also* NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS 4.2 (2001); FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL) 2.21 (2004). *Cf. Winters v. United States,* 582 F.2d 1152, 1154 (7th Cir. 1978) (foreman reading another juror's notes to jury did not constitute impermissible extraneous influence on jury).

## 1.08 CONSIDERATION OF ALL EVIDENCE
## REGARDLESS OF WHO PRODUCED

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

(2017 rev.)

# 1.09 LIMITED PURPOSE OF EVIDENCE

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider this evidence only for the limited purpose for which it was admitted.

## Committee Comments

The court should instruct the jury on any limited purpose of evidence at the time the evidence is presented. That instruction may be in the following form: "The [following] [preceding] evidence concerning [*describe evidence*] is to be considered by you [*describe purpose*] only and for no other purpose."

*See Berry v. Deloney,* 28 F.3d 604, 608 (7th Cir. 1994) (in §1983 suit against truant officer with whom student plaintiff had sexual relationship, limiting instruction on evidence, offered solely for purpose of determining damages, of plaintiff's other sexual activity "dispelled any potential prejudice against the plaintiff"); *see also Miller v. Chicago & N.W. Transport. Co.,* 925 F. Supp. 583, 588 (N.D. Ill. 1996) (in FELA case, adopting limiting instruction regarding evidence of regulatory standards suggesting noise level guidelines where standards were not binding on the defendant).

If practicable, the court may wish to remind the jury of the specific evidence so admitted and the specific purpose for which it was admitted.

(2017 rev.)

# 1.10 EVIDENCE LIMITED TO CERTAIN PARTIES

Each party is entitled to have the case decided solely on the evidence that applies to that party. You must consider the evidence concerning [*describe evidence if practicable*] only in the case against [P*arty*]. You must not consider it against any other party.

## Committee Comments

*See* FED. R. EVID. 105; NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS 3.11 (2001); EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS 2.08A (2001); *United States v. Cochran*, 955 F.2d 1116, 1120-1121 (7th Cir. 1992) (district court's limiting instructions sufficient to "counter any potential 'spillover effect' of the evidence" against co-defendants).

# 1.11 WEIGHING THE EVIDENCE

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

## Committee Comments

While the term "inference" is not used in common parlance, it was retained here, and defined, as a shorthand in order to avoid the need to repeat the same point elsewhere in the instructions. This instruction may not be needed in certain technical types of cases or cases that rely heavily on expert testimony.

(2017 rev.)

# 1.12 DEFINITION OF "DIRECT"
# AND "CIRCUMSTANTIAL" EVIDENCE

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, <u>direct evidence</u> that it is raining is testimony from a the witness who says, "I was outside a minute ago and I saw it raining." <u>Circumstantial evidence</u> that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

**Committee Comments**

The phrase "circumstantial evidence" is addressed here because of its use in common parlance and the likelihood that jurors may have heard the term outside the courtroom.

# 1.13 TESTIMONY OF WITNESSES
## (DECIDING WHAT TO BELIEVE)

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, [including any party to the case,] you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- [the witness's age];

- and the reasonableness of the witness's testimony in light of all the evidence in the case.

## Committee Comments

The portion of the instruction relating to age should be given only when a very elderly or a very young witness has testified.

# 1.14 PRIOR INCONSISTENT STATEMENTS [OR ACTS]

You may consider statements given by [*Party*] [*Witness under oath*] before trial as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement [not under oath] [or acted in a manner] that is inconsistent with his testimony here in court, you may consider the earlier statement [or conduct] only in deciding whether his testimony here in court was true and what weight to give to his testimony here in court.

[In considering a prior inconsistent statement[s] [or conduct], you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.]

## Committee Comments

a. **Statements Under Oath and Admissions by Party-Opponents:** Where prior inconsistent statements have been admitted only for impeachment, FED. R. EVID. 105 gives a party the right to a limiting instruction explaining that use of the prior inconsistent statement is limited to credibility. *See United States v. Hall*, 109 F.3d 1227, 1237 (7th Cir. 1997) (instruction on impeachment need be given only if impeachment was reasonably raised by the evidence). A court should not give such a limiting instruction, however, if the prior inconsistent statement was "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition," FED. R. EVID. 801(d)(1)(A), or if the prior statement is considered an admission by a party-opponent under FED. R. EVID. 801(d)(2). These statements are not hearsay and may be used to prove the truth of the matters asserted. This instruction should be adapted to fit the situation in which the prior inconsistent statements have been admitted.

b. **Prior Inconsistent Conduct:** Bracketed material in the second paragraph regarding inconsistent conduct is used by state courts in Indiana and Illinois and is consistent with Seventh Circuit standards. *See* ILLINOIS PATTERN INSTRUCTIONS (CIVIL) § 1.01(4) (2000); INDIANA PATTERN JURY INSTRUCTIONS—CIVIL 2D 3.05 (2003); *see also Molnar v. Booth*, 229 F.3d 593, 604 (7th Cir. 2000) (evidence of prior inconsistent conduct of defendant in sexual harassment case admissible for impeachment of defendant's testimony that he had never asked out a person under his supervision).

c. **Weighing the Effect of a Discrepancy:** The third paragraph of this instruction regarding how the jury should weigh the effect of a discrepancy is based on the general principle that jurors are free to credit or discredit evidence in light of what they observe at trial and their own experience. *See U.S. v. Boykins*, 9 F.3d 1278, 1286 n.1 (7th Cir. 1993) (approving an instruction which included the following language: "In weighing the effect of discrepancy [in evidence], always consider whether it pertains to a matter of importance or an unimportant detail, and whether the

discrepancy results from innocent error or intentional falsehood."); *United States v. Baron*, 602 F.2d 1248, 1254 (7th Cir. 1979) (finding no prejudicial error where court did not instruct that jury may reject all testimony of a witness shown to testify falsely regarding any material matter where court "told the jurors that they could find from inconsistencies in [the] testimony and failures of recollection as well from other facts that [the] testimony was totally unworthy of belief, but that they were not required to find that he was lying solely on the basis of differences in recollections over details"); *see also United States v. Monzon*, 869 F.2d 338, 346 (7th Cir. 1989) (disapproving of *falsus in uno, falsus in omnibus* instruction and upholding 7th Cir. Crim. Instruction; defendant has right only to instruction that jury should consider inconsistencies in witness testimony in determining witness credibility).

# 1.15 IMPEACHMENT OF WITNESS — CONVICTIONS

You have heard evidence that [*Name*] has been convicted of a crime. You may consider this evidence only in deciding whether [*Name's*] testimony is truthful in whole, in part, or not at all. You may not consider this evidence for any other purpose.

### Committee Comments

The admissibility of prior convictions to impeach a witness's credibility is governed by FED. R. EVID. 609. *See* Committee Comment accompanying SEVENTH CIRCUIT FEDERAL CRIMINAL JURY INSTRUCTIONS § 3.05 (1999) ("Impeachment - Defendant - Convictions"); see also *Young v. James Green Management, Inc.*, 327 F.3d 616, 625-626 (7th Cir. 2003) (suit for wrongful termination based on race); *Wilson v. Williams*, 182 F.3d 562 (7th Cir. 1999) (en banc) (§1983 claim against prison guard) ; *Campbell v. Green*, 831 F.2d 700 (7th Cir. 1987) (§1983 claim against prison guards) for use of prior convictions in civil cases.

This instruction differs from the cautionary Instruction 2.11, which avoids reference to truthfulness while the witness is on the stand.

(2017 rev.)

# 1.16 LAWYER INTERVIEWING WITNESS

It is proper for a lawyer to meet with any witness in preparation for trial.

## Committee Comments

This instruction should be given where evidence regarding an attorney's meeting with a witness has been the subject of trial testimony.

(2017 rev.)

## 1.17 NUMBER OF WITNESSES

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

# 1.18 ABSENCE OF EVIDENCE

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

## Committee Comments

This language is generally consistent with second sentence of the SEVENTH CIRCUIT FEDERAL CRIMINAL JURY INSTRUCTIONS § 3.24 (1999).

# 1.19 ADVERSE INFERENCE FROM MISSING WITNESS

[*Witness*] was mentioned at trial but did not testify. You may, but are not required to, assume that [*Witness's*] testimony would have been unfavorable to [Plaintiff] [Defendant].

## Committee Comments

This instruction should be given only if there is evidence from which the jury could find (1) that the missing witness was physically available only to the party against whom the inference would be drawn, or (2) that the missing witness has a relationship with that party that practically renders the testimony unavailable to that party's adversary. *Oxman v. WLS-TV*, 12 F.3d 652, 661 (7th Cir. 1993); *Chicago Coll. of Osteopathic Med. v. George A. Fuller Co.*, 719 F.2d 1335, 1353 (7th Cir. 1983); *see also Fey v. Walston & Co.*, 493 F.2d 1036, 1053 (7th Cir. 1974) (where missing witness was beyond subpoena power of defendants and there was evidence both that missing witness was available to adverse party and that missing witness's testimony could have thrown significant light on crucial question in case, it was error to instruct that jury may infer missing witness's testimony would be merely "of no aid" rather than "adverse" to non-producing party's case). Note that the Seventh Circuit appears to require more than mere "reasonable availability" of the witness to the party against whom the adverse inference is permitted. *Compare* 3 KEVIN F. O'MALLEY, JAY E. GRENIG & HON. WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 104.25 (5th ed. 2000) (adverse inference may be applied to missing witness "who has knowledge about the facts in issue, and who is reasonably available to the party, and who is not equally available to the other party"), *with Oxman v. WLS-TV*, 12 F.3d at 661 (complaining party must establish that missing witness "was peculiarly in the power of the other party to produce").

The court has broad discretion in determining whether to give a missing witness instruction and in supervising closing arguments to ensure that counsel does not make reference to matters not in evidence. *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 716-717 (7th Cir. 2004); *cf.* SEVENTH CIRCUIT FEDERAL CRIMINAL JURY INSTRUCTIONS § 3.24 (1999) Committee Comment (explaining that trial court must make advance ruling before missing witness instruction may be given or inference argued to jury, and noting particular issues with inference in criminal context). The court may decline a missing witness instruction, and may refuse argument on the adverse inference, if the party against whom the inference would be drawn offers a sufficient explanation for the decision not to call the witness and/or if the testimony would be unnecessarily duplicative. *Hoffman v. Caterpillar*, 368 F.3d at 716-717. Some authorities (citing decisions from other circuits) suggest that these questions may be submitted to the jury. *See* LEONARD B. SAND, JOHN S. SIFFERT, WALTER P. LOUGHLIN, STEVEN A. REISS, NANCY BATTERMAN, MODERN FEDERAL JURY INSTRUCTIONS, Form Instruction 75-3 (2004) ("In deciding whether to draw this inference, you should consider whether the witness' testimony would merely have repeated other testimony and evidence already before you. You may also consider whether the defendant had a reason for not calling this witness which was explained to your satisfaction.").

A curative instruction may be appropriate where the issue arises during closing argument or at some other time in trial and the necessary prerequisites for an adverse inference have not been established. *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL) § 2.9 (2004) ("(Name of Witness) ____ was available to both sides. Thus [the plaintiff] [the defendant] cannot complain that (Witness) was not called to testify, because (Party) could have called (Witness)."). *See also* Instruction 1.18 on absence of witness and/or evidence (not all available evidence must be presented).

As to missing or destroyed evidence, see Instruction 1.20.

## 1.20 SPOLIATION/DESTRUCTION OF EVIDENCE

[*Party*] contends that [*Other Party*] at one time possessed [*describe evidence allegedly destroyed*]. However, [*Other Party*] contends that [*evidence never existed, evidence was not in its possession, evidence was not destroyed, loss of evidence was accidental, etc.*].

You may assume that such evidence would have been unfavorable to [*Other Party*] only if you find by a preponderance of the evidence that:

(1) [*Other Party*] intentionally [destroyed the evidence] [caused the evidence to be destroyed]; and

(2) [*Other Party*] [destroyed the evidence] [caused the evidence to be destroyed] in bad faith.

### Committee Comments

*See Miksis v. Howard*, 106 F.3d 754, 762-763 (7th Cir. 1997) (party seeking adverse inference must prove that other party intentionally destroyed evidence in bad faith). The Seventh Circuit "requires a showing of an intentional act by the party in possession of the allegedly lost or destroyed evidence" to support a missing or destroyed evidence instruction. *Spesco, Inc. v. General Elec. Co.,* 719 F.2d 233, 239 (7th Cir. 1983); *see also Adkins v. Mid-America Growers, Inc.*, 141 F.R.D. 466, 473 (N.D. Ill. 1992) ("In cases where evidence has been intentionally destroyed, it may be presumed that the materials were relevant."). If the facts are not in dispute, the court ordinarily will decide the sanction for an intentional and bad faith spoliation, which might include an instruction with an inference such as that set forth in this instruction.

# 1.21 EXPERT WITNESSES

You have heard [a witness] [witnesses] give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

## Committee Comments

*See* FED. R. EVID. 602, 701-705. *See generally United States v. Mansoori*, 304 F.3d 635, 654 (7th Cir. 2002), *cert. denied* 538 U.S. 967, 123 S. Ct. 1761, 155 L.Ed.2d 522 (2003) (approving instruction to jury that "the fact an expert has given an opinion does not mean that it is binding upon you" and finding no prejudice where witness testified as both expert and fact witness); *United States v. Serafino*, 281 F.3d 327, 330-331 (1st Cir. 2002) (court mitigated "whatever special aura the jury might otherwise have attached to the term 'expert'" by instructing that expert testimony should be considered just like other testimony); *United States v. Brown*, 7 F.3d 648, 655 (7th Cir. 1993) (recognizing that in close case danger of unfair prejudice may be heightened by "aura of special reliability" of expert testimony, but concluding that instruction to jury that expert opinion was not binding and that jury should consider expert opinion in light of all evidence mitigated any danger of unfair prejudice); *Coal Resources, Inc. v. Gulf & Western Indus., Inc.*, 865 F.2d 761, 775 (6th Cir. 1989) (no error in failing to give jury instruction regarding speculative testimony by expert witness where jury was instructed that it must decide how much weight and credibility to give to expert opinion).

# 1.22 TRANSLATED LANGUAGE

You should consider only the evidence provided through the official interpreter. Although some of you may know [*language(s) used*], it is important that all jurors consider the same evidence. Therefore, you must base your decision on the evidence presented in the English translation.

## Committee Comments

*See* Ninth Circuit Manual of Model Civil Jury Instructions §§ 2.9, 3.4 (2001).

# 1.23 SUMMARIES

*Stipulated*

The parties agree that [*describe summary in evidence*] accurately summarizes the contents of documents, records, or books. You should consider these summaries just like all of the other evidence in the case.

*Not Stipulated*

Certain [*describe summary in evidence*] is/are in evidence. [The original materials used to prepare those summaries also are in evidence.] It is up to you to decide if the summaries are accurate.

## Committee Comments

*See* FED. R. EVID. 1006. *See also United States v. Stoecker*, 215 F.3d 788, 792 (7th Cir. 2000) (court properly instructed jury to analyze underlying evidence on which charts were based); *United States v. Swanquist*, 161 F.3d 1064, 1073 (7th Cir. 1998) (court instructed jury that summary charts were not evidence and were admitted simply to aid jurors in evaluating evidence and that it was for jurors to decide whether evidence supported the summaries); *AMPAT/Midwest Inc. v. Illinois Tool Works, Inc.*, 896 F.2d 1035, 1045 (7th Cir. 1990) (where underlying data is admissible, summaries are admissible); *United States v. Bishop*, 264 F.3d 535, 548 (5th Cir. 2001) (holding the following instruction sufficient: "You are to give no greater consideration to these schedules and summaries than you would give to the evidence upon which they are based. It is for you to decide the accuracy of the summary charts."); *United States v. Diez*, 515 F.2d 892, 905 (5th Cir. 1975) ("The court should instruct the jury that summaries do not, of themselves, constitute evidence in the case but only purport to summarize the documented and detailed evidence already submitted.").

"Charts" or "schedules" may be substituted for "summaries" in this instruction. The bracketed language should be used only if there are both stipulated and disputed summaries in the case.

# 1.24 DEMONSTRATIVE EXHIBITS

Certain [*describe demonstrative exhibit, e.g., models, diagrams, devices, sketches*] have been shown to you. Those [*short description*] are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts.

## Committee Comments

*See* FED. R. EVID. 1006; FED. R. EVID. 611(a)(1); FED. R. EVID. 403; *United States v. Salerno,* 108 F.3d 730, 744 (7th Cir. 1997) ("Demonstrative aids are regularly used to clarify or illustrate testimony.").

While there is no requirement that demonstrative evidence be completely accurate, the jury must be alerted to perceived inaccuracies in the demonstrative evidence. *See Roland v. Langlois,* 945 F.2d 956, 963 (7th Cir. 1991) (benefits outweighed danger of unfair prejudice when plaintiffs introduced inaccurate life-sized model of amusement park ride in personal injury suit against carnival operator and jury was alerted to perceived inaccuracies). *See also* FED. R. EVID. 403. Limiting instructions are strongly suggested, and in some cases it may be better practice to exclude demonstrative evidence from the jury room in order to reduce the potential for unfair prejudice. *United States v. Salerno*, 108 F.3d at 745 (holding that prosecution's scale model of crime scene was properly allowed to go back to jury room). The court may advise the jury that demonstrative evidence will not be sent back to the jury room.

(2017 rev.)

# 1.25 MULTIPLE CLAIMS;
## MULTIPLE PLAINTIFFS/DEFENDANTS

You must give separate consideration to each claim and each party in this case. [Although there are [*number*] defendants, it does not follow that if one is liable, any of the others is also liable.] [Although there are [*number*] plaintiffs, it does not follow that if one is successful, the others are, too.][1]

*[If evidence was admitted only as to fewer than all defendants or all claims:]* In considering a claim against a defendant, you must not consider evidence admitted only against other defendants [or only as to other claims].

### Committee Comments

The bracketed language in the third sentence should not be used in cases in which no plaintiff can recover unless all plaintiffs recover. In addition, the bracketed language in the second sentence of the first paragraph should not be used or should be modified when principles of vicarious liability make it inappropriate. *See Watts v. Laurent*, 774 F.2d 168, 175 (7th Cir. 1985) (in context of Civil Rights Act suit in which each actor will be held jointly and severally liable for a single indivisible injury, instruction to "decide each defendant's case separately as if it were a separate lawsuit" in conjunction with separate verdict forms for each defendant led to ambiguous verdict on damages award). Where evidence has been admitted as to one party only, see Instruction No. 1.10.

---

[1] The Committee suggests identifying each party by name in this paragraph when feasible.

(2017 rev.)

## 1.26 DISMISSED/WITHDRAWN DEFENDANT

[*Former Party*] is no longer a defendant in this case. You should not consider any claims against [*Former Party*]. Do not speculate on the reasons. You should decide this case as to the remaining parties.

# 1.27 BURDEN OF PROOF

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

## Committee Comments

*See In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring) ("preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence"); *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 722 (7th Cir. 2001) (finding explanation of burden of proof sufficient where judge gave "more probably true than not true" definition of preponderance but failed to state that he was defining "preponderance of the evidence," even where subsequent instruction referred to "preponderance"); *Odekirk v. Sears Roebuck & Co.*, 274 F.2d 441, 445-446 (7th Cir. 1960) (as a general rule, it is better to avoid such words as "satisfy," "convince," "convincing," and "clear preponderance" in instruction on general civil burden of proof; nonetheless accepting instruction that "preponderance of the evidence" means "evidence which possesses greater weight or convincing power").

(2017 rev.)

# 1.28 CLEAR AND CONVINCING EVIDENCE

When I say that a particular party must prove something by "clear and convincing evidence," this is what I mean: When you have considered all of the evidence, you [are convinced that it is highly probable that it is true] [have no reasonable doubt that it is true].

[This is a higher burden of proof than "more probably true than not true." Clear and convincing evidence must persuade you that it is "highly probably true."]

## Committee Comments

The meaning of the "clear and convincing" standard of proof depends on the substantive law being applied. In some contexts, the Seventh Circuit has held that "clear and convincing evidence" requires proof which leaves "no reasonable doubt" in the mind of the trier of fact as to the truth of the proposition. It appears that those cases turn on state law standards and that, in other contexts, the quantum of proof for "clear and convincing evidence" does not quite approach the degree of proof necessary to convict a person of a criminal offense. *Compare Parker v. Sullivan*, 891 F.2d 185, 188 (7th Cir. 1989) (per curiam) (in context of Illinois law of intestate succession, "clear and convincing" evidence is "the quantum of proof which leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question") *and Davis v. Combes*, 294 F.3d 931, 936-937 (7th Cir. 2002) (in context of Illinois constructive trust law, "clear and convincing" requires "no reasonable doubt in the mind of the trier of fact as to the truth of the proposition," citing *Parker*) *with Binion v. Chater*, 108 F.3d 780, 783 (7th Cir. 1997) (citing Illinois paternity law and noting spectrum of degrees of proof, with "clear and convincing" still lesser than "beyond a reasonable doubt" and requiring that proposition be "highly probably true" as opposed to "almost certainly true"); *McNair v. Coffey*, 234 F.3d 352, 355 (7th Cir. 2000), *vacated on other grounds by* 533 U.S. 925 (2001) *remanded to McNair v. Coffey*, 279 F.3d 463 (7th Cir. 2002) (in dicta, distinguishing preponderance "where the plaintiff can win a close case" from clear and convincing "where all close cases go to the defendant") *and United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001) (differentiating between standards of proof in contempt proceedings and concluding that "unlike criminal contempt, in civil contempt the proof need only be clear and convincing."); *see also Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (clear and convincing evidence standard requires that factfinder have "an abiding conviction that the truth of [the party's] factual contentions are 'highly probable'"); *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261, 282 (1990) (describing "clear and convincing" as intermediate standard of proof).

Where possible, the "clear and convincing" evidence standard should be explained in conjunction with the instructions regarding the specific element requiring proof by clear and convincing evidence. Where the claim requiring clear and convincing evidence is the sole issue to be decided by the jury, the instruction should be given in the form of Instruction 1.11 with the appropriate standard of proof inserted. The second paragraph of the instruction should be used where multiple claims require instruction on both a "preponderance of the evidence" standard and a "clear and convincing" standard.

## 1.29 BURDEN FOR AFFIRMATIVE DEFENSE/ BURDEN-SHIFTING THEORY

### Committee Comments

The Committee included no general instruction regarding the burden of proof for affirmative defenses under the view that a court should explain such burdens in the elements instruction for each claim. *See Stone v. City of Chicago*, 738 F.2d 896, 901 (7th Cir. 1984) (no error where early instruction on burden of proof signaled to jury that on particular defenses, explained in later instructions, burden of proof shifted to defendants).

# 1.30 PROXIMATE CAUSE

## Committee Comments

The Committee included no general instruction regarding "proximate cause" or "legal cause" because these terms are not uniformly defined. Therefore, a court must use only the correct definition for the issues before it. *See Cooper v. Carl A. Nelson & Co.,* 211 F.3d 1008, 1015 (7th Cir. 2000) (en banc) ("Although the existence of a duty must be determined as a matter of law, the question of whether there was a breach of that duty and an injury proximately caused by that breach are questions of fact for the jury. . . . An error in jury instructions therefore can be reversible error if it misinforms the jury about the applicable law.") There is no consistent causation standard for either federal or state claims. The state law standards on causation vary widely and are subject to change. *See, e.g.,* NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 3.8 (2001); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) (noting that some states make foreseeability, a concept that overlaps the concept of proximate cause, an explicit ingredient of negligence); 57A Am. Jur. 2d *Negligence* § 424 ("It has been said of the law of "proximate cause" that there is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion…"); *see also In re: Bridgestone/Firestone Inc. Tires Products Liability Litig.,* 288 F.3d 1012, 1016-1018 (7th Cir. 2002) (although "no injury, no tort" is an ingredient of every state's law, differences in state laws preclude a nationwide class). Accordingly, these Instructions do not include a "model" instruction on proximate cause.

(2017 rev.)

# 1.31 NO NEED TO CONSIDER DAMAGES INSTRUCTION

If you decide for the defendant[s] on the question of liability, then you should not consider the question of damages.

## 1.32 SELECTION OF PRESIDING JUROR;
## GENERAL VERDICT

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you.

[Forms of verdict read.]

(Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in, date, and sign the appropriate form.)

OR

(Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.)

(2017 rev.)

## 1.33 COMMUNICATION WITH COURT

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

[If you do communicate with me, you should not indicate in your note what your numerical division is, if any.]

(2017 rev.)

# 1.34 DISAGREEMENT AMONG JURORS

The verdict[s] must represent the considered judgment of each juror. Your verdict[s], whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

### Committee Comments

This instruction is taken from the form that the court set out in *United States v. Silvern*, 484 F.2d 879, 883 (7th Cir. 1973) (en banc). The court in that criminal case instructed that this instruction should be used in civil cases as well and directed that no other form of supplemental instruction be used in dealing with deadlock issues. *Id*. at 882. Since that time, its use has been discussed in a civil case in only one published opinion of the Seventh Circuit: *General Leaseways, Inc. v. National Truck Leasing Assoc.*, 830 F.2d 716, 730 (7th Cir. 1987).

# 2. IN-TRIAL INSTRUCTIONS; CAUTIONARY INSTRUCTIONS

**Committee Note**

While these instructions are written for use during trial, they may be repeated as part of the final instructions when necessary and appropriate.

## 2.01.  CAUTIONARY INSTRUCTION BEFORE RECESS

We are about to take our first break during the trial, and I want to remind you of the instruction I gave you earlier. Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone approaches you and tries to talk to you about the case, do not tell your fellow jurors but advise me about it immediately. Do not read or listen to any news reports of the trial. Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

I may not repeat these things to you before every break that we take, but keep them in mind throughout the trial.

### Committee Comments

This is FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL) § 2.1 (1999), with the second paragraph omitted.

The Committee recommends that this instruction not be given if the first recess comes immediately after the preliminary instructions, when it would be repetitive — but the judge might wish to summarize the content (*e.g.*, "Remember — don't talk about the case, and keep an open mind.").

(2017 rev.)

## 2.02.  IN-TRIAL INSTRUCTION ON NEWS COVERAGE

I understand that reports about this trial [or about this incident] are appearing in the newspapers and [or] on radio and television [and the internet]. The reporters may not have heard all the testimony as you have, may be getting information from people whom you will not see here under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong.

You must not read anything or listen to anything or watch anything with regard to this trial. It would be a violation of your oath as jurors to decide this case on anything other than the evidence presented at trial and your common sense. You must decide the case solely and exclusively on the evidence that will be received here in court.

### Committee Comments

This is 3 KEVIN F. O'MALLEY, JAY E. GRENIG & HON. WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 102.12 (5th ed. 2000), with some style revision and greater emphasis. When necessary, a similar instruction should be given as to demonstrations, public gatherings, or public interest in the case.

## 2.03.  EVIDENCE ADMITTED ONLY AGAINST ONE PARTY

Some of the evidence in this case is limited to one of the parties, and cannot be considered against the others. Each party is entitled to have the case decided solely on the evidence which applies to that party.

The evidence you [are about to hear] [just heard] can be considered only in the case against [*name party*].

### Committee Comments

This is drawn from EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 2.08 (2001). If evidence is admitted as to only party, the court may wish to give Instruction No. 1.10 as part of the final instructions.

## 2.04.  STIPULATED TESTIMONY

The parties have stipulated or agreed what *[name's]* testimony would be if *[name]* were called as a witness. You should consider that testimony in the same way as if *[name]* had given the testimony here in court.

### Committee Comments

This is 3 KEVIN F. O'MALLEY, JAY E. GRENIG & HON. WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 102.10 (5th ed. 2000).

If this instruction is repeated as a final instruction, it should be given in the witness testimony portion of the general instructions.

# 2.05.  STIPULATIONS OF FACT

The parties have stipulated, or agreed, that [*stipulated fact*]. You must now treat this fact as having been proved for the purpose of this case.

## Committee Comments

This is drawn from 3 KEVIN F. O'MALLEY, JAY E. GRENIG & HON. WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 102.11 (5th ed. 2000). There is a disagreement between other sets of pattern instructions as to whether the jury is told it *must* treat the fact as proven (Fifth Circuit and O'Malley, Grenig & Lee ) or *should* treat the fact as proven (Eighth and Ninth Circuits). The Committee suggests using the word "must" so the court can exclude evidence that goes only to a fact that the jury must take as proven because of a stipulation.

If this instruction is repeated as a final instruction, it should be given in the "particular types of evidence" portion of the general instructions.

# 2.06. JUDICIAL NOTICE

I have decided to accept as proved the fact that [*e.g., the city of Milwaukee is north of the city of Chicago*]. You must now treat this fact as having been proved for the purpose of this case.

## Committee Comments

This is NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 2.5 (2001), modified as to style.

If this instruction is repeated as a final instruction, it should be given in the "particular types of evidence" portion of the general instructions.

# 2.07.  TRANSCRIPT OF RECORDING

You are about to hear a recording that has been received in evidence. This recording is proper evidence and you may consider it, just as any other evidence.

You will be given a transcript to use as a guide to help you follow as you listen to the recording. The transcript is not evidence of what was actually said or who said it. It is up to you to decide whether the transcript correctly reflects what was said and who said it. If you notice any difference between what you heard on the recording and what you read in the transcript, you must rely on what you heard, not what you read. And if after careful listening, you cannot hear or understand certain parts of the recording, you must ignore the transcript as far as those parts are concerned.

[You may consider the actions of a person, facial expressions and lip movements that you can observe on videos to help you to determine what was actually said and who said it.]

## Committee Comments

This is a modification of SEVENTH CIRCUIT FEDERAL CRIMINAL JURY INSTRUCTIONS § 3.17 (1999).

Some judges may prefer not to allow the jury to take all of the transcripts along with the exhibits admitted in evidence. No particular practice is prescribed in this regard.

If this instruction is repeated as a final instruction, it should be given in the "particular types of evidence" portion of the general instructions.

## 2.08. DEPOSITION AS SUBSTANTIVE EVIDENCE

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

The deposition of [*Witness*], which was taken on [*date*], is about to be presented to you. Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

### Committee Comments

This is NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 2.6 (2001), deleting the opening sentence, which began, "When a person is unavailable to testify at trial, the deposition of that person may be used at the trial."

### 2.09.  USE OF INTERROGATORIES (TO BE USED ONLY WHEN INTERROGATORIES ARE READ WITHOUT ADMISSION INTO EVIDENCE)

Evidence will now be presented to you in the form of written answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before this trial in response to written questions.

You must give the answers the same consideration as if the answers were made from the witness stand.

**Committee Comments**

This is 3 KEVIN F. O'MALLEY, JAY E. GRENIG & HON. WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 102.24 (5th ed. 2000).

## 2.10.  CROSS-EXAMINATION OF CHARACTER WITNESS

The questions and answers you have just heard were permitted only to help you decide what this witness really knew about the reputation of *[Name]* for truthfulness. You may not use the questions and answers you have just heard for any other purpose.

### Committee Comments

This is drawn from 3 KEVIN F. O'MALLEY, JAY E. GRENIG & HON. WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 102.43 (5th ed. 2000). *See* FED. R. EVID. 404(a)(3).

The Committee recommends that this instruction be given only upon a party's request. *See* FED.R.EVID. 105.

## 2.11.  IMPEACHMENT BY CONVICTION OF CRIME

You have heard evidence that witness [*Name*] has been convicted of [a crime] [crimes]. You may use that evidence only to help you decide whether to believe the witness and how much weight to give [his] [her] testimony.

### Committee Comments

This is EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 2.09 (2001), chosen in preference as a limiting instruction over Instruction 1.15, which speaks in terms of whether the witness's testimony is truthful. The Committee disfavors allusion to the truthfulness of a particular witness while that witness is still on (or has just left) the witness stand. This instruction should be given only if a party requests it, *see* FED.R.EVID. 105, unless the FED.R.EVID. 403 balancing test would tip the other way without the instruction.

## 2.12.  SUMMARIES OF RECORDS AS EVIDENCE

*Stipulated*

The parties agree that [*Describe summary in evidence*] accurately summarize the contents of documents, records, or books. You should consider these summaries just like all of the other evidence in the case.

*Not Stipulated*

Certain [*describe summary in evidence*] is/are in evidence. [The original materials used to prepare those summaries also are in evidence.] It is up to you to decide if the summaries are accurate.

**Committee Comments**

This is Instruction 1.23.

(2017 rev.)

## 2.13.  WITHDRAWAL OF CLAIMS

[*Former Party*] is no longer a defendant in this case. You should not consider any claims against [*Former Party*]. Do not speculate on the reasons. Your focus must be on the remaining parties.

### Committee Comments

This is Instruction 1.26, modified as to style to reflect that the jury likely will hear more evidence after this limiting instruction is given.

## 2.14.  JUDGE'S COMMENTS TO LAWYER

I have a duty to caution or warn an attorney who does something that I believe is not in keeping with the rules of evidence or procedure. You are not to draw any inference against the side whom I may caution or warn during the trial.

### Committee Comments

This is 3 KEVIN F. O'MALLEY, JAY E. GRENIG & HON. WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 102.70 (5th ed. 2000), with modification as to style.

**3.  EMPLOYMENT DISCRIMINATION: TITLE VII, § 1981, ADEA**

# 3.01  GENERAL EMPLOYMENT DISCRIMINATION INSTRUCTIONS

Plaintiff claims that he was [*adverse employment action*] by Defendant because of [*protected class*]. To succeed on this claim, Plaintiff must prove by a preponderance of the evidence that he was [*adverse employment action*] by Defendant because of his [*protected class*]. To determine that Plaintiff was [*adverse employment action*] because of his [*protected class*], you must decide that Defendant would not have [*adverse employment action*] Plaintiff had he been [*outside protected class*] but everything else had been the same.

If you find that Plaintiff has proved this by a preponderance of the evidence, then you must find for Plaintiff. However, if you find that Plaintiff did not prove this by a preponderance of the evidence, then you must find for Defendant.

### Committee Comments

a.      **Scope:** This instruction is to be used in Title VII, § 1981, and ADEA cases.

b.      **Authority:** *See Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir.1994); *see also Achor v. Riverside Golf Club*, 117 F.3d 339, 340 (7th Cir. 1997); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1350 (7th Cir.1995); *Hahm v. Wisconsin Bell, Inc.*, 983 F. Supp. 807, 809 (E.D. Wis. 1997).

The Committee recognizes that other circuits' instructions employ the "motivating factor" language of *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94 (2003) in all Title VII cases. *See* EIGHTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 5.01 (2001) (essential element in all disparate treatment cases is proof that protected trait was "a motivating factor in defendant's decision"); NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 12.1 & Comment (1991 Act clarified that defendant is liable if plaintiff shows discrimination was "a motivating factor" regardless of whether the case is one of "pretext" or "mixed motives"); ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES) § 1.2.1 (2000) (plaintiff's burden under Title VII is to prove protected trait "was a substantial or motivating factor"); AMERICAN BAR ASSOCIATION, MODEL JURY INSTRUCTIONS, EMPLOYMENT LITIGATION § 1.02[1] (1994) (using "a motivating factor" standard in circumstantial/indirect evidence cases); 3C KEVIN F. O'MALLEY, JAY E. GRENIG, HON. WILLIAM C. LEE, FEDERAL JURY PRACTICE & INSTRUCTIONS § 171.20 (5th ed. 2001) (essential element of disparate treatment claim is that plaintiff proved protected trait was "a motivating factor," not "the sole motivation or even the primary motivation for the defendant's decision"). Two circuits have found that the "motivating factor" requirement applies only in mixed motive cases. *Watson v. Southeastern Penn. Transp. Auth.*, 207 F.3d 207, 214-220 (3rd Cir. 2000); *Fields v. New York State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 121-124 (2d Cir. 1997).

The Committee drafted these instructions with the understanding that the "motivating factor" language is appropriate in mixed motive cases (see comment c below). However, the Committee assumed the continuing viability of the *Gehring* approach in non-mixed motive cases in the Seventh Circuit. *Cf. Boyd v. Illinois State Police*, 384 F.3d 888, 894-895 (7th Cir. 2004). If a court deems it

appropriate to instruct on "motivating factor" as an element of a party's burden of proof in a particular case, the committee recommends the following language:

> Plaintiff must prove by a preponderance of the evidence that his [*protected class*] . . . contributed to Defendant's decision.

c.    **Mixed Motive:** The Committee expects that the pattern instruction, which has the advantage of streamlining the jury's task into a single and easily understood sentence, will be appropriate in most cases. In some cases, however, the pattern instruction would amount to a confusing oversimplification of the issues the jury must decide. For example, Title VII recognizes that employers can have mixed motives for employment decisions. *See* 42 U.S.C. § 2000e-5(g)(2)(B); *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *see also Akrabawi v. Carnes Co.*, 152 F.3d 688, 694 (7th Cir. 1998) ("The thrust of § 2000e-5(g)(2)(B) is that employers may make decisions out of mixed motives. The statute addresses the complex nature of employment decisions by recognizing that a discriminatory employer might make exactly the same employment decisions absent improper bias because of legitimate considerations.") In such cases, the statute provides for certain types of relief if discrimination constituted a motivating factor in the employment decision. *Id.* For this reason, other circuits have suggested a separate "mixed motive" instruction in some employment discrimination cases. *See, e.g.,* EIGHTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS §§ 5.11, 5.21, 5.31 (2001). These instructions permit defendants to limit liability if they can prove that they would have made the adverse employment decision regardless of the plaintiff's protected class.

In such a case, the pattern instruction (drawn from *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir. 1994), which did not address a mixed motive issue), would call upon the jury to decide whether the plaintiff had disproved the mixed motive, after which the jury would decide whether the defendant had proven it. Under such circumstances, the Committee recommends the following language instead of the pattern instruction:

> Plaintiff must prove by a preponderance of the evidence that his [*protected class*] was a motivating factor in Defendant's decision to [*adverse employment action*] him. A motivating factor is something that contributed to Defendant's decision.

> If you find that Plaintiff has proved that his [*protected class*] contributed to Defendant's decision to [*adverse employment action*] him, you must then decide whether Defendant proved by a preponderance of the evidence that it would have [*adverse employment action*] him even if Plaintiff was not [*protected class*]. If so, you must enter a verdict for the Plaintiff but you may not award him damages.

The Committee recommends use of a verdict form that makes clear, if no damages are awarded, whether the jury decided the plaintiff had not proven her claim or decided that the defendant had met its burden on the mixed motive issue. Without clear guidance in the circuit case law, the Committee cannot offer assistance in determining when a "mixed motive" instruction is appropriate.

d.    **Constructive Discharge:** If the adverse employment action alleged by plaintiff is constructive discharge, the Committee suggests altering the instruction as follows:

Plaintiff claims that he quit his job because Defendant made his working conditions intolerable. This is called a 'constructive discharge'. To succeed on this claim, Plaintiff must prove two things by a preponderance of the evidence.

1.    Defendant made Plaintiff's working conditions so intolerable that a reasonable person in Plaintiff's position would have had to quit; and

2.    Defendant would not have made Plaintiff's working conditions so intolerable had Plaintiff not been [*protected class*] but everything else had been the same.

*See Pennsylvania State Police v. Suders*, ___ U.S. ___, 124 S.Ct. 2342 (2004); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 616-617 (1993); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134-135, (1988); *McPherson v. City of Waukegan*, 379 F.3d 430, 440 (7th Cir. 2004).

The nature of the claimed constructive discharge may require some modification of the pattern instruction. *See, e.g., EEOC v. University of Chicago Hospitals*, 276 F.3d 326, 331 (7th Cir. 2002) ("[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge").

e.    **Materially Adverse Employment Action:** In rare cases, a fact issue might arise about whether the plaintiff actually suffered a "materially adverse employment action." In such cases, a court should modify the instructions to provide the jury with guidance as to what this term means. The Committee suggests the following language:

Plaintiff must prove that his [*alleged consequence of Defendant's conduct*] was a "materially adverse employment action." Not everything that makes an employee unhappy is a materially adverse employment action. It must be something more than a minor or trivial inconvenience. For example, a materially adverse employment action exists when someone's pay or benefits are decreased; when his job is changed in a way that significantly reduces his career prospects; or when job conditions are changed in a way that significantly changes his work environment in an unfavorable way.

*See Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742 (7th Cir. 2002); *see also Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993); *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

# 3.02 RETALIATION

Plaintiff claims that he was [*adverse action*] by Defendant because of [*protected activity*]. To succeed on this claim, Plaintiff must prove by a preponderance of the evidence that Defendant [*adverse action*] him because of his [*protected activity*]. To determine that Plaintiff was [*adverse action*] because of his [*protected activity*], you must decide that Defendant would not have [*taken adverse action against*] Plaintiff if he had [*not engaged in protected activity*] but everything else had been the same.

If you find that Plaintiff has proved this by a preponderance of the evidence, then you must find for Plaintiff. However, if you find that Plaintiff did not prove this by a preponderance of the evidence, then you must find for Defendant.

## Committee Comments

a.      **Scope**: This instruction is to be used in Title VII, § 1981, and ADEA cases after the general instruction.

b.      **Authority**: *Schobert v. Illinois Dept. of Transportation*, 304 F.3d 725 (7th Cir. 2002) ("Yet IDOT has not offered a reason why McDonnell Douglas burden-shifting should apply in cases of retaliation during trial proceedings . . . but not in straightforward discrimination trials."); *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640 (7th Cir. 2002).

c.      **Good Faith Belief:** In many cases, the question of what constitutes a protected activity will not be contested. Where it is, however, the instruction should be revised as follows:

Plaintiff claims that he was [*adverse employment action*] by Defendant because of [*protected activity*]. To succeed in this claim, Plaintiff must prove two things by a preponderance of the evidence:

1.      His [*protected activity*] was based on a reasonable, good faith belief that [*describe Plaintiff's belief regarding his protected activity, e.g., that he was fired because of his race*]. This does not, however, require Plaintiff to show that what he believed was correct.

2.      Defendant would not have [*adverse employment action*] Plaintiff if he had [*not engaged in protected activity*] but everything else had been the same.

*See Fine v. Ryan Int'l Airlines,* 305 F.3d 746, 752 (7th Cir. 2002). *See also Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 891 (7th Cir. 2004) (underlying claim "must not be utterly baseless").

d.      **Adverse Action:** What constitutes an "adverse employment action" in the context of a retaliation claim is not entirely clear. *See Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742,



746 (7th Cir. 2002). The Committee does not use "adverse action" in this instruction as a term of art, but merely as a placeholder for the specific act alleged.

# 3.03  PATTERN OR PRACTICE

Plaintiff claims that Defendant had a pattern or practice of discriminating against [*protected class*]. To succeed on this claim, Plaintiff must prove by a preponderance of the evidence that [*protected class*] discrimination was Defendant's regular practice, rather than something unusual. If you find that Plaintiff has not proved this, you must find for Defendant.

If you find that Plaintiff has proved that Defendant had a pattern or practice of discriminating, then you must answer another question: Did Defendant prove by a preponderance of the evidence that it would have [*adverse employment action*] Plaintiff even if it had not made a regular practice of [*protected class*] discrimination? If you find that Defendant has proved this by a preponderance of the evidence, your verdict should be for Defendant. If you find that Defendant has not proved this, your verdict should be for Plaintiff.

## Committee Comments

a.      **Authority:** *Adams v. Ameritech Services, Inc.*, 231 F.3d 414, 422 (7th Cir. 2000) (quoting *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977)); *King v. General Elec. Co.*, 960 F.2d 617 (7th Cir. 1992).

b.      **Class Actions:** In a class action claim, a court should provide only the first paragraph, as the second paragraph will be provided during the damages phase of the trial. If this is an individual pattern or practice claim, then the court should provide both paragraphs to the jury.

# 3.04  HARASSMENT BY CO-EMPLOYEE OR THIRD PARTY

In this case, Plaintiff claims that he was [*e.g., racially/sexually*] harassed at work. To succeed on this claim, Plaintiff must prove seven things by a preponderance of the evidence:

1.      Plaintiff was subjected to [*alleged conduct*];

2.      The conduct was unwelcome;

3.      The conduct occurred because Plaintiff was [*e.g., race/sex*];

4.      The conduct was sufficiently severe or pervasive that a reasonable person in plaintiff's position would find plaintiff's work environment to be hostile or abusive;

5.      At the time the conduct occurred, Plaintiff believed that the conduct made his work environment hostile or abusive;

6.      Defendant knew or should have known about the conduct; and

7.      Defendant did not take reasonable steps to [correct the situation] / [prevent harassment from recurring].

If you find that Plaintiff has proved by a preponderance of the evidence each of the things required of him, then you must find for Plaintiff. However, if Plaintiff did not prove by a preponderance of the evidence each of the things required of him, then you must find for Defendant.

## Committee Comments

a.      **Authority:** *See Kriescher v. Fox Hills Golf Resort and Conf. Ctr. FHR, Inc.*, 384 F.3d 912, 915 (7th Cir. 2004); *Rizzo v. Sheahan*, 266 F.3d 705, 711-712 (7th Cir. 2001); *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806-807 (7th Cir. 2000); *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976 (7th Cir. 2000); *Parkins v. Civil Contractors, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998); *Tutman v. CBS, Inc.*, 209 F.3d 1044, 1048 (7th Cir.2000); *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 811 (7th Cir. 2001) ("An employer's response to alleged instances of employee harassment must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made.").

b.      **No Dispute as to Alleged Conduct:** If no dispute exists that the defendant's alleged conduct took place, a court should simplify the instruction by changing the beginning of the instruction as follows:

In this case, Plaintiff claims that she was [*e.g., racially/sexually*] harassed at work [*describe conduct*]. To succeed in her claim, Plaintiff must prove six things by a preponderance of the evidence:

      1.      The conduct was unwelcome;

      2.      Plaintiff was subjected to this conduct because she was [*e.g., race/sex*];

The remainder of the instruction should remain the same.

      c.    **Hostile or Abusive Work Environment:** In some cases, a court may want to give the jury more guidance on what constitutes a hostile or abusive work environment. If so, the Committee suggests the following language:

> To decide whether a reasonable person would find Plaintiff's work environment hostile or abusive, you must look at all the circumstances. These circumstances may include the frequency of the conduct; its severity; its duration; whether it was physically threatening or humiliating, and whether it unreasonably interfered with the plaintiff's work performance. No single factor is required in order to find a work environment hostile or abusive.

See *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-788 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); Eighth Circuit Model Civil Jury Instructions § 5.42 Committee Comments (2001). *See also Mason v. Southern Illinois University at Carbondale,* 233 F.3d 1036, 1044-1045 (7th Cir. 2000) ("If a plaintiff claims that he is suffering a hostile work environment based on the conduct of coworkers *and* supervisors, then under the Supreme Court's totality of circumstances approach . . . all instances of harassment by all parties are relevant to proving that his environment is sufficiently severe or pervasive . . . Courts should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive.").

      d.    **Ameliorating Instruction:** As an optional addition to the instruction, the Committee suggests that a court consider including the following language:

> Conduct that amounts only to ordinary socializing in the workplace, such as occasional horseplay, sexual flirtation, sporadic or occasional use of abusive language, gender related jokes, and occasional teasing, does not constitute an abusive or hostile environment. You should consider all the circumstances and the social context in which the conduct occurred. Only conduct amounting to a material change in the terms and conditions of employment amounts to an abusive or hostile environment.

(2017 rev.)

# 3.05A. SUPERVISOR HARASSMENT WITH TANGIBLE EMPLOYMENT ACTION

Plaintiff claims that he was [*e.g., racially/sexually*] harassed by [*Alleged Supervisor*]. To succeed on this claim, Plaintiff must prove seven things by a preponderance of the evidence.

1.     [*Name*] was Plaintiff's supervisor. A supervisor is someone who can affect the conditions of Plaintiff's employment. By this I mean someone who has the power to [hire, fire, demote, promote, transfer or discipline Plaintiff] [significantly change Plaintiff's benefits].

2.     Plaintiff was subjected to [*alleged conduct*];

3.     The conduct was unwelcome;

4.     The conduct occurred because Plaintiff was [*e.g., race/sex*];

5.     The conduct was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive;

6.     At the time the conduct occurred, Plaintiff believed that the conduct made his work environment hostile or abusive; and

7.     [*Name's*] conduct caused Plaintiff [*adverse employment action*].

If you find that Plaintiff has proved by a preponderance of the evidence each of the things required of him, then you must find for Plaintiff. However, if Plaintiff did not prove by a preponderance of the evidence each of the things required of him, then you must find for Defendant.

## Committee Comments

a.     **Scope:** This instruction should be used where the parties do not dispute that the plaintiff experienced a tangible employment action, such as a demotion, a discharge, or an undesirable reassignment. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 753-754 (1998). In such situations, affirmative defenses are unavailable to the defendant. *Id. See also Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998). For cases where no tangible employment action took place, see Instruction 3.05B, below. For guidance on modifying the instruction in cases where the parties dispute whether the supervisor's conduct led to a tangible employment action, see Committee comment d to Instruction 3.05B, below.

b.      **Supervisor Definition:** *See NLRB v. Kentucky River Cmty. Care*, 532 U.S. 706, 713 (2001); *Faragher v. City of Boca Raton*, 524 U.S. 775, 798 (1998); *NLRB v. Yeshiva Univ.*, 444 U.S. 672, 682-691 (1980); *American Diversified Foods, Inc. v. NLRB*, 640 F.2d 893, 894 (7th Cir. 1981).

c.      **Employer's Vicarious Liability for Supervisor Conduct:** *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998); *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806 (7th Cir. 2000); *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

d.      **Hostile or Abusive Work Environment:** In some cases, a court may want to give the jury more guidance on what constitutes a hostile or abusive work environment. If so, the Committee suggests the following language:

> To decide whether a reasonable person would find Plaintiff's work environment hostile or abusive, you must look at all the circumstances. These circumstances may include the frequency of the conduct; its severity; its duration; whether it was physically threatening or humiliating, and whether it unreasonably interfered with the plaintiff's work performance. No single factor is required in order to find a work environment hostile or abusive.

See *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-788 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); EIGHTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 5.42 Committee Comments (2001).

e.      **Constructive Discharge:** If the adverse employment action alleged by plaintiff is constructive discharge, the Committee suggests altering the instruction as follows:

> 7. Plaintiff quit his job because [*Name*]'s conduct made Plaintiff's working conditions so intolerable that a reasonable person in Plaintiff's position would have had to quit.

See *Pennsylvania State Police v. Suders*, ___ U.S. ___, 124 S.Ct. 2342 (2004); *Jordan v. City of Gary*, 396 F.3d 825, 836 (7th Cir. 2005).

f.      **Facts Not in Dispute:** A court should modify the instruction to account for situations where facts are not in dispute. For example, if the parties do not dispute that the alleged harasser is the plaintiff's supervisor, a court does not need to give the first element of the instruction. Similarly, if the parties do not dispute that the defendant's alleged conduct took place, a court should describe the conduct at the beginning of the instruction and then modify the instruction by replacing the elements 2-4 with the following two elements:

> 2.      The conduct was unwelcome;

> 3.      Plaintiff was subjected to this conduct because he was [*e.g., race/sex*];

The remainder of the instruction should remain the same.

## 3.05B SUPERVISOR HARASSMENT WITH NO TANGIBLE EMPLOYMENT ACTION

Plaintiff claims that he was [*e.g., racially/sexually*] harassed by [*Alleged Supervisor*]. To succeed on this claim, Plaintiff must prove six things by a preponderance of the evidence.

1.      [*Name*] was Plaintiff's supervisor. A supervisor is someone who can affect the conditions of Plaintiff's employment. By this I mean someone who has the power to hire, fire, demote, promote, transfer or discipline Plaintiff [significantly change Plaintiff's benefits].

2.      Plaintiff was subjected to [*alleged conduct*];

3.      The conduct was unwelcome;

4.      The conduct occurred because Plaintiff was [*e.g., race/sex*];

5.      The conduct was sufficiently severe or pervasive that a reasonable person in plaintiff's position would find plaintiff's work environment to be hostile or abusive.

6.      At the time the conduct occurred, Plaintiff believed that the conduct made his work environment hostile or abusive.

If you find that Plaintiff did not prove by a preponderance of the evidence each of the things required of him, then you must find for Defendant. If, on the other hand, Plaintiff has proved each of these things, you must go on to consider whether Defendant has proved two things by a preponderance of the evidence:

1.      Defendant exercised reasonable care to prevent and correct any harassing conduct in the workplace.

2.      Plaintiff unreasonably failed to take advantage of opportunities provided by Defendant to prevent or correct harassment, or otherwise avoid harm.

If you find that Defendant has proved these two things by a preponderance of the evidence, your verdict should be for Defendant. If you find that Defendant has not proved both of these things, your verdict should be for Plaintiff.


**Committee Comments**

a.    **Scope:** This instruction should be used when a supervisor's alleged harassment has *not* led to a tangible employment action. In such cases, the affirmative defense set out in the instruction becomes available to the defendant. *See Loughman v. Malnati Organization Inc.*, 395 F.3d 404, 407 (7th Cir. 2005); *Hill v. American General Finance, Inc.*, 218 F.3d 639, 643 (7th Cir. 2000) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998)). In cases where the defendant does not raise the affirmative defense, the beginning of the instruction should be modified as follows:

> Plaintiff claims that he was [*e.g., racially/sexually*] harassed by [*Name of Alleged Supervisor*]. To succeed on his claim against Defendant, Plaintiff must prove six things by a preponderance of the evidence.

The remainder of the instruction should remain the same, with the instruction concluding after the jury receives the sixth element of the claim.

b.    **Supervisor Definition:** *See NLRB v. Kentucky River Cmty. Care*, 532 U.S. 706, 713 (2001); *Faragher v. City of Boca Raton*, 524 U.S. 775, 798 (1998); *NLRB v. Yeshiva Univ.*, 444 U.S. 672, 682-691 (1980); *American Diversified Foods, Inc. v. NLRB*, 640 F.2d 893, 894 (7th Cir. 1981).

c.    **Employer's Vicarious Liability for Supervisor Conduct:** *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998); *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806 (7th Cir. 2000); *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

d.    **Hostile or Abusive Work Environment**: In some cases, a court may want to give the jury more guidance on what constitutes a hostile or abusive work environment. If so, the Committee suggests the following language:

> To decide whether a reasonable person would find Plaintiff's work environment hostile or abusive, you must look at all the circumstances. These circumstances may include the frequency of the conduct; its severity; its duration; whether it was physically threatening or humiliating, and whether it unreasonably interfered with the plaintiff's work performance. No single factor is required in order to find a work environment hostile or abusive.

See *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-788 (1998); *Harris v. Forklift System, Inc.*, 510 U.S. 17, 23 (1993); *Dandy v. United Parcel Svc., Inc.*, 388 F.3d 263, 270 (7th Cir. 2004); Eighth Circuit Model Civil Jury Instructions § 5.42 Committee Comments (2001).

e.    **Tangible Employment Action Disputed:** In some cases, the parties might dispute whether the supervisor's alleged harassment led to a tangible employment action. In such situations, a court should modify the instruction by including the following language after listing the elements:

> If Plaintiff did not prove each of these things by a preponderance of the evidence, you must find for Defendant. If you find that Plaintiff has proved all of

these things by a preponderance of the evidence, you must consider whether Plaintiff can prove one additional fact: That [*Name*]'s conduct caused Plaintiff [*adverse employment action*].

If so, your verdict must be for Plaintiff. If not, you must go on to consider whether Defendant has proved two things to you by a preponderance of the evidence.

The remainder of the instruction should remain the same.

f. **Facts Not in Dispute:** A court should modify the instruction to account for situations where facts are not in dispute. For example, if the parties do not dispute that the alleged harasser is the plaintiff's supervisor, a court does not need to give the first element of the instruction. Similarly, if the parties do not dispute that the defendant's alleged conduct took place, a court should describe the conduct at the beginning of the instruction and then modify the instruction by replacing the elements 2-4 with the following two elements:

2. the conduct was unwelcome;

3. Plaintiff was subjected to this conduct because he was [*e.g., race/sex*];

The remainder of the instruction should remain the same.

g. **Plaintiff Complaint and Defendant Response:** At the time of the Committee's work, the Seventh Circuit had not addressed the issue of whether a defendant can exculpate itself by taking immediate remedial measures after a plaintiff has complained about harassment. Other circuits are split. *Compare Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 265 (5th Cir. 1999) (defense available because "plaintiff has received the benefit Title VII was meant to confer") *with Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1025-1026 (10th Cir. 2001) (employer's "prompt corrective action" is not alone sufficient to avoid employer liability for supervisor harassment under Title VII).

## 3.06  WILLFULNESS: WHERE AGE DISCRIMINATION IS ALLEGED

If you find for Plaintiff, you must then decide whether Defendant willfully violated the Age Discrimination in Employment Act. To show this, Plaintiff must prove by a preponderance of the evidence that Defendant knew that it was violating the Age Discrimination in Employment Act, or was indifferent to whether its actions violated the Age Discrimination in Employment Act, and not simply that Defendant was aware that it was engaging in age discrimination.

### Committee Comments

*See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 616-617 (1993); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134-135 (1988); *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 582 (7th Cir. 2003); *Mathis v. Phillips Chevrolet, Inc.,* 269 F.3d 771, 777 (7th Cir. 2001) ("A defendant's negligent mistake concerning the lawfulness of her conduct does not suffice to make that conduct 'willful,' but a reckless mistake, in the criminal law sense of indifference to whether the conduct violates the law, does.").

(2017 rev.)

## 3.07  CAUTIONARY INSTRUCTION ON
## REASONABLENESS OF DEFENDANT'S ACTION

In deciding Plaintiff's claim, you should not concern yourselves with whether Defendant's actions were wise, reasonable, or fair. Rather, your concern is only whether Plaintiff has proved that Defendant [*adverse employment action*] him [because of race/sex] [in retaliation for complaining about discrimination].

### Committee Comments

The Committee suggests that a court give this cautionary instruction at its discretion in Title VII, § 1981, and ADEA cases.

(2017 rev.)

# 3.08  DISPARATE IMPACT

## Committee Comments

The Committee did not include a disparate impact instruction because there are no jury trials under Title VII for disparate impact, 42 U.S.C. § 1981a(a)(1) & (c), and when the Committee submitted its work for promulgation, there was no viable ADEA disparate impact theory in this circuit. In <u>Smith v. City of Jackson, Miss.</u>, 125 S. Ct. 1536 (2005), the Court held that the ADEA authorizes recovery in disparate impact cases. At the time the Circuit Council authorized publication of these instructions, too little case law existed for the Committee to draft a pattern instruction on this topic with any confidence.

# 3.09  DAMAGES: GENERAL

If you find that Plaintiff has proved [any of] his claim[s] against [any of] Defendant[s], then you must determine what amount of damages, if any, Plaintiff is entitled to recover. Plaintiff must prove his damages by a preponderance of the evidence.

If you find that Plaintiff has failed to prove [any of] his claim[s], then you will not consider the question of damages.

## Committee Comments

These pattern damage instructions are applicable, with certain limitations, to single plaintiff discrimination and retaliation claims under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e et seq., the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq., the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., and the Civil Rights Act of 1866, 42 U.S.C. §1981. Damages instructions relating to claims under the Equal Pay Act, 29 U.S.C. §206(d), are contained in the pattern instructions under that Act. *See* Instruction No. 5.11. An instruction relating to the recovery of liquidated damages under the Age Discrimination in Employment Act is contained in the pattern employment discrimination instructions. *See* Instruction No. 3.06.

(2017 rev.)

# 3.10  COMPENSATORY DAMAGES

You may award compensatory damages only for injuries that Plaintiff has proved by a preponderance of the evidence were caused by Defendant's wrongful conduct.

Your award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure.

In calculating damages, you should not consider the issue of lost wages and benefits. The court will calculate and determine any damages for past or future lost wages and benefits. You should consider the following types of compensatory damages, and no others:

[1.    The physical [and mental/emotional] pain and suffering [and disability/loss of a normal life] that Plaintiff has experienced [and is reasonably certain to experience in the future]. No evidence of the dollar value of physical [or mental/emotional] pain and suffering [or disability/loss of a normal life] has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of pain and suffering. You are to determine an amount that will fairly compensate Plaintiff for the injury he has sustained.]

[2.    The reasonable value of medical care that Plaintiff reasonably needed and actually received [as well as the present value of the care that he is reasonably certain to need and receive in the future.]]

[3.    *Describe any expenses, other than lost pay, that Plaintiff reasonably incurred or will incur in the future as a direct result of the Defendant's discrimination/retaliation.*]

[4.    *Describe any loss (other than lost pay) caused by Defendant in Plaintiff's future earning capacity.*]

## Committee Comments

a.    **ADEA:** Compensatory damages are not available under the ADEA, except for a retaliation claim. *Pfeifer v. Essex Wire Corp.*, 682 F.2d 684, 68-688 (7th Cir. 1982); *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 283-284 (7th Cir. 1993).

b.    **ADA Retaliation Claims:** Compensatory damages are not available on ADA retaliation claims. *Kramer v. Banc of Am. Sec.,* 355 F.3d 961, 965 (7th Cir. 2004).

c.    **Back Pay and Front Pay:** Under Title VII and the ADA, back pay and front pay are equitable remedies to be decided by the court. However, the court may empanel the jury as an

advisory jury on the issue; or the parties may, with the court's consent, agree that the jury will decide the issue. *Pals v. Schepel Buick & GMC Truck, Inc.,* 220 F.3d 495, 499-501 (7th Cir. 2000). Front pay is typically awarded in cases where the equitable remedy of reinstatement is unavailable. *Hildebrandt v. Illinois Dep't of Natural Resources*, 347 F.3d 1014, 1031 (7th Cir. 2003); *Williams v. Pharmacia Inc.*, 137 F.3d 944, 951-952 (7th Cir. 1998).

      d.    **Lost Future Earnings:** Compensatory damages may include "lost future earnings," *i.e.,* the diminution in expected earnings in all future jobs due to reputational or other injuries, over and above any front pay award. Where there is such evidence, the language should be drafted for use in the bracketed fourth paragraph. Care must be taken to distinguish front pay and lost future earnings, which serve different functions. *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 953-954 (7th Cir. 1998):

> [T]he calculation of front pay differs significantly from the calculation of lost future earnings. Whereas front pay compensates the plaintiff for the lost earnings from her old job for as long as she may have been expected to hold it, a lost future earnings award compensates the plaintiff for the diminution in expected earnings in all of her future jobs for as long as the reputational or other injury may be expected to affect her prospects. * * * [W]e caution lower courts to take care to separate the equitable remedy of front pay from the compensatory remedy of lost future earnings. * * * Properly understood, the two types of damages compensate for different injuries and require the court to make different kinds of calculations and factual findings. District courts should be vigilant to ensure that their damage inquiries are appropriately cabined to protect against confusion and potential overcompensation of plaintiffs.

A special interrogatory may be necessary for the court to prevent a double recovery.

## 3.11 BACK PAY

If you find that Plaintiff has proven his claim of [discrimination/retaliation] by a preponderance of the evidence, you may award him as damages any lost wages and benefits he would have received from the Defendant if he had not been [*adverse employment action*] [minus the earnings and benefits that plaintiff received from other employment during that time [that he would not otherwise have received]]. [It is Plaintiff's burden to prove that he lost wages and benefits and their amount. If he fails to do so for any periods of time for which he seeks damages, then you may not award damages for that time period.]

### Committee Comments

a. **Usage:** Ordinarily, this instruction will not be given, because back pay is an equitable remedy to be decided by the court. *See, e.g., David v. Caterpillar, Inc.*, 324 F.3d 851, 866 (7th Cir. 2003). However, the court may empanel the jury as an advisory jury on the issue; or the parties may, with the court's consent, agree that the jury will decide the issue. *Pals v. Schepel Buick & GMC Truck, Inc.,* 220 F.3d 495, 499-501 (7th Cir. 2000).

b. **Limiting Subsequent Events:** Where the plaintiff's back pay damages are limited by subsequent events, the court should instruct the jury that it may not award back pay damages beyond that event. For example, such a limiting instruction may be appropriate where a plaintiff alleging unlawful discharge subsequently obtains a higher paying job or is offered reinstatement by the employer, *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232-234 (1982); where a plaintiff challenging a denial of a promotion subsequently voluntarily resigns in circumstances not amounting to a constructive discharge, *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 660 n.8 (7th Cir. 2001); where a plaintiff has voluntarily removed himself from the labor market, *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1428 (7th Cir. 1986); where a plaintiff becomes medically unable to work, *Flowers v. Komatsu Mining Sys., Inc.*, 165 F.3d 554, 557-558 (7th Cir. 1999); where periodic plant shutdowns limit the amount of time the plaintiff could have worked had he not been terminated, *Gaddy v. Abex Corp.*, 884 F.2d 312, 320 (7th Cir. 1989); or where plaintiff inexcusably delayed in prosecuting his case, *Kamberos v. GTE Automatic Elec. Inc.*, 603 F.2d 598, 603 (7th Cir. 1979).

c. **Burden of Proof:** The plaintiff bears the burden of presenting evidence that he had lost wages and benefits and their amount. *Horn v. Duke Homes, Div. of Windsor Mobile Homes*, 755 F.2d 599, 606-608 (7th Cir. 1985). In many cases, whether the plaintiff has presented evidence to satisfy this burden will not be in dispute. In the event it is, the instruction regarding Plaintiff's burden should be given.

d. **Mitigation:** If failure to mitigate is an issue, a separate instruction is provided. *See* Instruction 3.12.

e. **Multiple Claims:** Where a plaintiff has multiple claims that might result in separate damage determinations, for example a claim of unlawful failure to promote paired with a claim of

unlawful termination, the court should instruct separately on the back pay damages determination as to each claim.

# 3.12 MITIGATION

Defendant argues that Plaintiff's claim for lost wages and benefits should be reduced by [*describe the reduction*].

If you find that

      1. Plaintiff did not take reasonable actions to reduce his damages, and

      2. that Plaintiff reasonably might have found comparable employment if he had taken such action,

you should reduce any amount you might award Plaintiff for [lost wages] [benefits] [other damages] by the amount Plaintiff reasonably would have earned during the period for which you are awarding [lost wages] [benefits] [other damages].

Defendant must prove both that the reduction should be made and its amount.

## Committee Comments

a.    **General:** This instruction reflects the "obvious policy imported from the general theory of damages, that a victim has a duty 'to use such means as are reasonable under the circumstances to avoid or minimize the damages' that result from violations of [Title VII] . . . ." *Gawley v. Indiana University*, 276 F.3d 301, 312 (7th Cir. 2001) (internal citations omitted). The defendant bears the burden of showing that the plaintiff did or could have mitigated his damages and the amount. *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1048-1049 (7th Cir. 1999); *Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc.*, 755 F.2d 599, 606-608 (7th Cir. 1985).

b.    **Interim Wages and Benefits:** Interim wages and benefits earned by the plaintiff or earnable with reasonable diligence will reduce the amount of lost wages and benefits awardable. 42 U.S.C. §2000e-5(g)(1); *Orzel v. City of Wauwatosa*, 697 F.2d 743, 756 (7th Cir. 1983) (ADEA). Additionally, the court may determine that lost wages and benefits should be reduced by other amounts as well. *Wilson v. Chrysler Corp.*, 172 F.3d 500, 511 (7th Cir. 1999) (disability benefits provided by the employer); *Flowers v. Komatsu Mining Sys., Inc.*, 165 F.3d 554, 558 (7th Cir. 1999) (Social Security disability benefits); *Chesser v. State of Illinois*, 895 F.2d 330, 337-338 (7th Cir. 1990) (wages from moonlighting jobs plaintiff could not have held had he continued to be employed); *Syvock v. Milwaukee Boiler Mfg. Co.,*, 665 F.2d 149, 161-162 (7th Cir. 1981) (unemployment benefits). In such situations, the court should instruct appropriately.

c.    **Usage:** This instruction is not intended to be sufficient if the plaintiff claims non-employment-related compensatory damages.

      (2017 rev.)

# 3.13 PUNITIVE DAMAGES

If you find for Plaintiff, you may, but are not required to, assess punitive damages against Defendant. The purposes of punitive damages are to punish a defendant for his conduct and to serve as an example or warning to Defendant and others not to engage in similar conduct in the future.

Plaintiff must prove by a preponderance of the evidence that punitive damages should be assessed against Defendant. You may assess punitive damages only if you find that [his conduct] [the conduct of Defendant's [managerial employees, officers],] was in reckless disregard of Plaintiff's rights. An action is in reckless disregard of Plaintiff's rights if taken with knowledge that it may violate the law.

[Plaintiff must prove by a preponderance of the evidence that Defendant's [managerial employees, officers] acted within the scope of their employment and in reckless disregard of Plaintiff's right not to be [discriminated and/or retaliated] against. [In determining whether [*Name*] was a managerial employee of Defendant, you should consider the kind of authority Defendant gave him, the amount of discretion he had in carrying out his job duties and the manner in which he carried them out.] You should not, however, award Plaintiff punitive damages if Defendant proves that it made a good faith effort to implement an anti-discrimination policy.]

If you find that punitive damages are appropriate, then you must use sound reason in setting the amount of those damages. Punitive damages, if any, should be in an amount sufficient to fulfill the purposes that I have described to you, but should not reflect bias, prejudice, or sympathy toward either/any party. In determining the amount of any punitive damages, you should consider the following factors:

-    the reprehensibility of Defendant's conduct;

-    the impact of Defendant's conduct on Plaintiff;

-    the relationship between Plaintiff and Defendant;

-    the likelihood that Defendant would repeat the conduct if an award of punitive damages is not made;

[-    Defendant's financial condition;]

-    the relationship of any award of punitive damages to the amount of actual harm the Plaintiff suffered.

**Committee Comments**

a.     **Authority:** Title 42 U.S.C. §1981a(b)(1) states that punitive damages may be awarded where the Defendant "engaged in a discriminatory practice… with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999), interprets "malice" or "reckless disregard" to refer to the employer's knowledge that it may be violating federal law. For cases applying this standard, *see, e.g.*, *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 661-662 (7th Cir. 2001); *Cooke v. Stefani Mgmt. Services, Inc.*, 250 F.3d 564, 568-570 (7th Cir. 2001); *Gile v. United Airlines, Inc.*, 213 F.3d 365, 375-376 (7th Cir. 2000). The same standard applicable to punitive damages claims under 42 U.S.C. §1981a(b)(1) applies under 42 U.S.C. §1981. *Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 440-441 (4th Cir. 2000). Because including the term malice is potentially confusing in light of his interpretation, it is not used in the instruction.

b.     **Governmental Entities:** Punitive damages are not available against a government, government agency, or political subdivision. 42 U.S.C. § 1981a(b)(1).

c.     **ADEA:** Punitive damages are not available under the ADEA, except for a retaliation claim. *Pfeifer v. Essex Wire Corp.*, 682 F.2d 684, 687-688 (7th Cir. 1982); *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 283-284 (7th Cir. 1993).

d.     **ADA Retaliation Claims:** Punitive damages are not available on ADA retaliation claims. *Kramer v. Banc of America Sec., LLC,* 355 F.3d 961, 965 (7th Cir. 2004).

e.     **Managerial Capacity:** Where there is an issue as to whether an employee was acting in a managerial capacity justifying the imposition of punitive damages, the relevant bracketed portion of the instruction should be included. *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 663 (7th Cir. 2001).

f.     **Defendant's Financial Condition as Punitive Damages Consideration.** This element should not be included if there was no evidence of the defendant's financial condition. The Committee takes no position on whether emerging law makes this element inappropriate. *See State Farm Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 427-428 (2003) ("The remaining premises for the Utah Supreme court's decision bear no relation to the award's reasonableness or proportionality to the harm. . . The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award."); *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 573-583 (1996) (Court did not include the defendant's wealth as a relevant factor when considering punitive damages); *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 508-509 (7th Cir. 1992) (noting that a corporate defendant's net worth is irrelevant to the assessment of punitive damages against it); *Pivot Point Int'l, Inc. v. Charlene Products, Inc.*, 932 F. Supp. 220, 223 (N.D. Ill. 1996)(evidence concerning financial information "has . . . [the] potential to distract the jury from the essential issues of the case.").

# 4.  EMPLOYMENT DISCRIMINATION: AMERICANS WITH DISABILITIES ACT

(2017 rev.)

## 4.01  NATURE OF ADA CLAIM AND DEFENSE

Plaintiff has brought this lawsuit under a federal law called the Americans with Disabilities Act, which is often referred to by its initials, "ADA." Under the ADA, it is illegal for an employer to discriminate against a person with a disability if that person is qualified to do the essential functions of his job and the employer is aware of his limitations.

In this case, Plaintiff claims that Defendant discriminated against him by [not accommodating his disability] / [not hiring/not promoting/ firing him because he had a disability]. Defendant denies that it discriminated against Plaintiff and says that [*describe Defendant's theory of defense, if applicable*].

As you listen to these instructions, please keep in mind that many of the terms I will use have a special meaning under the law. So please remember to consider the specific definitions I give you, rather than using your own opinion as to what these terms mean.

### Committee Comments

This instruction is based upon ELEVENTH CIRCUIT PATTERN JURY INSTRUCTION—CIVIL §§ 1.5.1 ("Disparate Treatment Claim") and 1.5.2 ("Reasonable Accommodation Claim") (2000). The instruction also conforms with *Weigel v. Target Stores*, 122 F.3d 461, 463-465 (7th Cir. 1997).

## 4.02 ELEMENTS OF AN ADA CLAIM – DISPARATE TREATMENT (NON-ACCOMMODATION) CASES

To succeed in this case, Plaintiff must prove four things by a preponderance of the evidence:

1.      [Plaintiff had/ Defendant regarded Plaintiff as having/ Plaintiff had a record of] a disability. I will define "disability" and several other important terms for you in a few minutes;

2.      Plaintiff was "qualified" to perform the job;

3.      Defendant [*describe adverse employment action*] Plaintiff;

4.      Defendant would not have [*taken action*] if Plaintiff had not had a disability, but everything else had been the same.

[If you find that Plaintiff has proved each of these things by a preponderance of the evidence, you should turn to the issue of Plaintiff's damages. If you find that Plaintiff has failed to prove any of these things by a preponderance of the evidence, your verdict should be for Defendant.][1]

### Committee Comments

a.      **General Authority:** Parts of this instruction are drawn from 42 U.S.C. § 12111(8) (definition of "qualified individual"). The instruction conforms with Seventh Circuit authority. *See Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572-576 (7th Cir. 2001); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922-923 (7th Cir. 2001); *Foster v. Arthur Andersen LLP*, 168 F.3d 1029, 1032-1033 (7th Cir. 1999); *Duda v. Board of Educ. of Franklin Park*, 133 F.3d 1054, 1058-1059 (7th Cir.

---

[1] If the defendant has raised an affirmative defense, a court may replace this paragraph with the following language:

If you find that Plaintiff has failed to prove any of these things by a preponderance of the evidence, your verdict should be for Defendant. If you find that Plaintiff has proved each of these things by a preponderance of the evidence, you must then consider Defendant's argument that [*describe affirmative defense*]. If Defendant has proved this by a preponderance of the evidence, your verdict should be for Defendant. If Defendant has not proved this by a preponderance of the evidence, you should turn to the issue of Plaintiff's damages.

A court may also wish to address these issues through the use of a special verdict form.

1998). *See also* EIGHTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS—CIVIL § 5.51A ("ADA – Disparate Treatment – Essential Elements (Actual Disability)") and § 5.51B ("ADA – Disparate Treatment – Essential Elements (Perceived Disability)") (2001); NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS —CIVIL § 15.2 ("Elements of ADA Employment Action") (2001); ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS—CIVIL § 1.5.1 ("Disparate Treatment Claim") (2000).

      b.    **Disparate Treatment:** This instruction for disparate treatment cases is separate from a similar instruction for reasonable accommodation cases because in *Bultemeyer v. Fort Wayne Cmty. Schools*, 100 F.3d 1281, 1283-1284 (7th Cir. 1996), the Seventh Circuit explained that disparate treatment and reasonable accommodation claims must be "analyzed differently":

> Bultemeyer is not complaining that FWCS treated him differently and less favorably than other, non-disabled employees. He is not comparing his treatment to that of any other FWCS employee. His complaint relates solely to FWCS' failure to reasonably accommodate his disability. Because this is not a disparate treatment case, the *McDonnell-Douglas* burden-shifting method of proof is unnecessary and inappropriate here.

*Accord, Foster v. Arthur Andersen LLP*, 168 F.3d 1029, 1032 (7th Cir. 1999) (*citing Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1021-1022 (7th Cir. 1997)); *Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir. 1997) (*citing Bultemeyer v. Fort Wayne Schs.*, 100 F.3d at 1284). *See Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 574 (7th Cir. 2001) ("It would be redundant to require a plaintiff to utilize the [*McDonnell-Douglas*] burden shifting method to raise a presumption of discrimination if he or she possesses direct evidence of discrimination").

      c.    **Causation:** The causation requirement in the fourth element is based on *Foster v. Arthur Andersen LLP*, 168 F.3d 1029, 1032-1033 (7th Cir. 1999), and *Weigel v. Target Stores*, 122 F.3d 461, 465 (7th Cir. 1997), both citing 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual with a disability *because of* the disability. . . .") (italics added).

      d.    **Mixed Motive:** As in other types of employment discrimination cases, the Committee recognizes that an employer's decision might be based on mixed motives. If a court believes that it is appropriate to instruct the jury on mixed motive, the Committee recommends replacing the fourth element with the following language:

> Plaintiff must prove by a preponderance of the evidence that his disability was a motivating factor in Defendant's decision to [*adverse action*] him. A motivating factor is something that contributed to Defendant's decision.

> If you find that Plaintiff has proved that his disability contributed to Defendant's decision to [*adverse action*] him, you must then decide whether Defendant proved by a preponderance of the evidence that it would have [*adverse action*] him even if

Plaintiff did not have a disability. If so, Plaintiff is not entitled to an award of damages.

*See* Instruction No. 3.01, comment c, for further discussion on mixed motive in employment discrimination cases.

e. **Constructive Discharge:** If the plaintiff alleges that the defendant constructively discharged him because of his disability, the court should replace the third and fourth elements of the instruction with the following language:

3. He was forced to quit his job because Defendant purposely made his working conditions so intolerable that a reasonable person in his position would have had to quit.

4. Defendant would not have forced him to quit if he had not had a disability, but everything else was the same.

*See EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 440-441 (7th Cir. 2000), and *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996); *see also* Instruction 3.01, comment d.

## 4.03.  ELEMENTS OF PLAINTIFF'S CLAIM –
## REASONABLE ACCOMMODATION CASES

In this case, Plaintiff claims that Defendant unlawfully refused to give him a "reasonable accommodation." To succeed, Plaintiff must prove five things by a preponderance of the evidence:

1.      Plaintiff had a disability. I will define "disability" and several other important terms for you in a few minutes;

2.      Plaintiff was qualified to perform the job;

3.      Plaintiff requested an accommodation;

4.      Defendant was aware of Plaintiff's disability at the time of Plaintiff's request;

5.      Defendant failed to provide Plaintiff with a reasonable accommodation.

[If you find that Plaintiff has proved each of these things by a preponderance of the evidence, you should turn to the issue of Plaintiff's damages. If you find that Plaintiff has failed to prove any of these things by a preponderance of the evidence, your verdict should be for Defendant.][2]

### Committee Comments

a.      **General Authority:** This instruction is drawn from 42 U.S.C. §§ 12111(9) and 12112(a), and from NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 15.2 (2001) ("Elements of ADA Employment Action"); ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES) § 1.5.2 (2000) ("Reasonable Accommodation Claim"); and EIGHTH CIRCUIT MANUAL

---

[2] If the defendant has raised an affirmative defense, a court may replace this paragraph with the following language:

If you find that Plaintiff has failed to prove any of these things by a preponderance of the evidence, your verdict should be for Defendant. If you find that Plaintiff has proved each of these things by a preponderance of the evidence, you must then consider Defendant's argument that [*describe affirmative defense*]. If Defendant has proved this by a preponderance of the evidence, your verdict should be for Defendant. If Defendant has not proved this by a preponderance of the evidence, you should turn to the issue of Plaintiff's damages.

A court also may wish to address these issues through the use of a special verdict form.

of Model Civil Jury Instructions § 5.51C (2001) ("ADA - Reasonable Accommodation Cases").

Whether a person "regarded as" having a disability is entitled to an accommodation is an open question in this circuit. *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 335 (7th Cir. 2004) ("Because the record would not permit a reasonable trier of fact to conclude that the school district regarded Cigan as "disabled," we need not decide whether the ADA requires an employer to accommodate the demands of a person who is regarded as disabled but lacks an actual disability."). *Compare Williams v. Philadelphia Housing Auth.*, 380 F.3d 751 (3rd Cir. 2004) (requiring accommodation), *with Weber v. Strippit, Inc.*, 186 F.3d 907 (8th Cir. 1999) (holding "redarded as" disabled plaintiffs not entitled to reasonable accommodation).

b. **Employer's Awareness of Disability.** If the applicant or employee does not ask for an accommodation, the employer does not have to provide one unless it knows of the disability. *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 934 (7th Cir. 1995). If a disability and the need to accommodate it are obvious, however, the law does not always require an applicant or employee to expressly ask for a reasonable accommodation. *See Hedberg v. Indiana Bell Tel.*, 47 F.3d at 934 ("[I]t may be that some symptoms are so obviously manifestations of an underlying disability that it would be reasonable to infer that an employer actually knew of the disability. . . . [D]eliberate ignorance [should not] insulate an employer from liability."); *see also Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000) ("[T]here will be exceptions to the general rule that an employee must request an accommodation.") (*citing Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996), and 29 C.F.R. § 1630.2(o)(3)).

Similarly, if the disability makes it difficult for the applicant or employee to communicate his needs, an employer must make a reasonable effort to understand those needs, even if they are not clearly communicated. For example, an employer cannot always expect a mentally-disabled employee to know that he should ask for an accommodation. Instead, the employer should start communicating with an employee if it knows that he might be mentally disabled. *See Bultemeyer v. Fort Wayne Schs.*, 100 F.3d at 1285-1286; *Jovanovic v. In-Sink-Erator Div.*, 201 F.3d at 899; *Hedberg v. Indiana Bell. Tel.*, 47 F.3d at 934 & n.7; 29 C.F.R. § 1630.2(o)(3). *See also Taylor v. Phoenixville Sch. Dist.*,184 F.3d 296, 315 (3rd Cir. 1999) ("Another reason for placing some burden on the employer is that, as the Seventh Circuit recognized in *Bultemeyer*, an employee with a mental illness may have difficulty effectively relaying medical information about his or her condition, particularly when the symptoms are flaring and reasonable accommodations are needed.").

Once the employer is aware of the possible need for an accommodation, it must discuss that possibility with the applicant or employee as part of an interactive process. *Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000); *Rehling v. City of Chicago*, 207 F.3d 1009, 1015 (7th Cir. 2000); *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). *See also* Instruction 4.08, comment b. An applicant or employee, however, need not discuss a disability with an employer until he needs a reasonable accommodation.

In all of the circumstances described in this comment, a court may need to tailor the language of the elements instruction to take account of a case's particular facts.

(2017 rev.)

# 4.04. DEFINITION OF "DISABILITY"

Under the ADA, the term "disability" means a [physical/mental] impairment[3] that "substantially limits" [*describe major life activity or activities involved in the case*].[4] I will now define some of these terms in more detail. Again, I remind you to consider the specific definitions I give you, and not to use your own opinion as to what these terms mean.

## (a) Substantially Limiting[5]

Under the ADA, an impairment "substantially limits" a person's ability to [*describe relevant activity*] if it prevents or severely restricts him from [*relevant activity*], compared to the average person in the general population.

To decide if Plaintiff's [alleged] impairment substantially limits Plaintiff's ability to [*relevant activity*], you should consider the nature and severity of the impairment, how long it is expected to last, and its expected long-term impact.

Only impairments with a permanent or long-term impact are disabilities under the ADA. Temporary injuries and short-term impairments are not disabilities. [Even so, some disabilities are permanent, but only appear from time to time. For example, if a person has

---

[3] If the case involves a factual dispute about whether a physical or mental impairment exists, the Committee suggests that a court include the following language after the instruction's first paragraph: "The term 'physical impairment' means any condition that prevents the body from functioning normally. The term 'mental impairment' means any condition that prevents the mind from functioning normally." If more detail is necessary to capture the particular dispute, the Committee suggests that the court borrow language from the actual regulation on this point. *See* Committee comment b (discussing 29 C.F.R. § 1630.2(h)).

[4] If the question of whether the activity at issue is a "major life activity" is contested, the Committee suggests replacing this sentence with the language in Committee comment c.

[5] If the plaintiff alleges work as the relevant major life activity, replace this paragraph of the instruction with the following:

### (a) Substantially Limiting: Work as Major Life Activity

Let me start by telling you what I mean by "substantially limiting." An impairment substantially limits a person's ability to work if it significantly restricts him from performing a class of jobs, or a broad range of jobs in various classes, compared to someone with similar knowledge, skills, and training. Being unable to do a particular job, however, is not by itself a substantial limitation on the ability to work.

(2017 rev.)

a mental or physical disease that usually is not a problem, but flares up from time to time, that can be a disability if it substantially limits a major life activity.]

## (b) Definition of "Regarded As"[6]

Under the ADA, a person is "regarded as" having a disability if:

    1.    The employer believes that the person has a physical or mental impairment that substantially limits his ability to [*describe relevant activity*]; or

    2.    The employer believes that an actual impairment substantially limits his ability to [*relevant activity*] when it does not, because of the attitude that others have about the impairment; or

    3.    The person does not have any impairment, but the employer treats him as having an impairment that substantially limits his ability to [*relevant activity*].

## (c) Definition of "Record Of"[7]

Under the ADA, a person has "a record of a disability" if he has a record of a physical or mental impairment that substantially limits a person's ability to perform one or more major life activities. This includes someone who has had a substantially limiting impairment but is now recovered. It also includes someone whose substantially limiting impairment is currently in remission or is controlled by medication.

### Committee Comments

    a.    **Format:** The basic format for this instruction is taken from the ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES) § 1.5.1 (2000) ("Disparate Treatment Claim"), but with modifications based on the Supreme Court's decision in *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), and on the Seventh Circuit cases cited below.

    b.    **Physical or Mental Impairments:** Regulations to the ADA define "physical impairment" as including any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, neuromuscular, special sense organs, cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine. The term "mental impairment" includes any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific

---

[6] Use this instruction only if "regarded as" is an issue.

[7] Use this instruction only if "record of" is an issue.

    (2017 rev.)

learning disabilities. *See* 29 C.F.R. § 1630.2(h); *see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 479-480 (1999); *DePaoli v. Abbott Labs.*, 140 F.3d 668, 671 (7th Cir. 1998). The Committee suggests that courts can borrow language from these definitions when it would be helpful to a jury in resolving a dispute regarding whether a physical or mental impairment exists.

      c.    **Major Life Activities:** In rare cases, the question of whether a "major life activity" is implicated may arise. In such cases, the Committee suggests that a court include the following language in the first paragraph of the instruction:

> Under the ADA, the term "disability" includes a [physical/mental] impairment[8] that "substantially limits" a "major life activity." Major life activities are activities that are of central importance to everyday life. They are activities that an average person can do without much difficulty. Examples include: caring for yourself, doing manual tasks (such as household chores), bathing, brushing teeth, walking, talking, seeing, hearing, breathing, learning, and working.

This definition of "major life activity" conforms to *Toyota Motor v. Williams*, 534 U.S. at 195; *Sutton v. United Air Lines*, 527 U.S. at 479-480, *citing* 29 C.F.R. §§ 1630.2(h)-(j); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 923-924 (7th Cir. 2001); and *Sinkler v. Midwest Property Mgmt. Ltd. Partnership*, 209 F.3d 678, 683-684 (7th Cir. 2000). *See also Furnish v. SVI Sys., Inc.*, 270 F.3d 445 (7th Cir. 2001) (liver function is not a major life activity).

      d.    **Substantially Limiting:** The "substantial limitation" definition conforms to 42 U.S.C. § 12101(2) (definition of "disability"); *Toyota Motor v. Williams*, 534 U.S. at 195-197; *Sutton v. United Air Lines*, 527 U.S. at 488-492; *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516 (1999); *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555 (1999); *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 438-439 (7th Cir. 2000); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 599-600 (7th Cir. 1998) (*citing Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir.1995)); *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 675-676 (7th Cir. 1998); *DePaoli v. Abbott Labs.*, 140 F.3d at 671-672.

      e.    **Devices or Medication:** If a plaintiff uses a device or medication that arguably prevents him from being substantially limited in a major life activity, a court might add the following language to the end of the section on the definition of "substantially limiting":

---

    [8] If the case involves a factual dispute about whether a physical or mental impairment exists, the Committee suggests that a court include the following language after the instruction's first paragraph: "The term 'physical impairment' means any condition that prevents the body from functioning normally. The term 'mental impairment' means any condition that prevents the mind from functioning normally." If more detail is necessary to capture the particular dispute, the Committee suggests that the court borrow language from the actual regulation on this point. *See* Committee comment b (discussing 29 C.F.R. § 1630.2(h)).

You also should consider any devices or medication used by Plaintiff for his impairment. Under the ADA, a person is not disabled if he uses a device or medication that prevents him from being substantially limited in a major life activity. For example, a person with high blood pressure is not disabled if, when he is medicated, his high blood pressure does not substantially limit him in a major life activity. However, a person who uses a device or takes medication is disabled if he is still substantially limited in a major life activity despite using a device or taking medication, or if the device or medication itself substantially limits him in that activity.

  f.  **Work as a Major Life Activity:** The footnote on working as a major life activity conforms to *Toyota Motor v. Williams*, 534 U.S. at 197-201; *Sutton v. United Air Lines*, 527 U.S. at 491-494; *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 725-726 (7th Cir. 1998); and *DePaoli v. Abbott Labs.*, 140 F.3d at 671.

  g.  **Regarded As:** This instruction is taken from Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 1.5.1 (2000) ("Disparate Treatment Claim") and Ninth Circuit Manual of Model Civil Jury Instructions § 15.2 (2001) ("Corrected or Mitigated Disability"), and conforms with 42 U.S.C. § 12102(2)(c)); *Sutton v. United Air Lines*, 527 U.S. at 489, *citing* 29 C.F.R. §§ 1630.2(l); *Murphy v. United Parcel Serv.*, 527 U.S. at 521-525; *Albertson's v. Kirkingburg*, 527 U.S. at 563; *Bragdon v. Abbott*, 524 U.S. 624, 637-638 (1998); *Kupstas v. City of Greenwood*, 398 F.3d 609, 613 (7th Cir. 2005) ("even if the city had viewed this as an impairment that prevented Kupstas from performing his duties, we have held that more serious restrictions do not substantially limit one's general ability to work."); *Mattice v. Memorial Hosp. of South Bend, Inc.*, 249 F.3d 682, 684-685 (7th Cir. 2001) (allegation that hospital perceived anesthesiologist as having suffered impairment in major life activity of cognitive thinking stated ADA claim); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir. 2001); *Bay v. Cassens Transport Co.*, 212 F.3d 969, 973 (7th Cir. 2000); *Sinkler v. Midwest Property Mgmt. Ltd. Partnership*, 209 F.3d at 686; *Dalton v. Subaru-Isuzu Automotive,* 141 F.3d at 675; *DePaoli v. Abbott Labs.*, 140 F.3d at 671; *see also* 29 C.F.R. § 1630.2(l). The purpose of the "regarded as" definition of a disability is to "cover individuals 'rejected from a job because of myths, fears and stereotypes' associated with disabilities." *Amadio v. Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir. 2001) (*citing Sutton v. United Air Lines, Inc.*, 527 U.S. at 489-490 (*quoting* 29 C.F.R. pt. 1630, app. § 1630.2(1)).

  h.  **Record Of:** This instruction conforms to 42 U.S.C. § 12101(2)(B); 29 C.F.R. § 1630.2(k); and *Mattice v. Memorial Hosp.*, 249 F.3d at 686 (anesthesiologist's alleged record of impairment in the major life activities of sleeping, eating, thinking, and caring for himself stated ADA claim); *Duda v. Board of Educ. of Franklin Park*, 133 F.3d 1054, 1058 n.6 (7th Cir. 1998) (*quoting* 29 C.F.R. § 1630.2(I)); *EEOC Compliance Manual* § 902.7(b)). *See School Bd. of Nassau County v. Arline*, 480 U.S. 273, 281 (1987) (plaintiff's hospitalization for acute form of tuberculosis established record of substantially limiting impairment for Rehabilitation Act purposes).

## 4.05. DEFINITION OF "QUALIFIED"

Under the ADA, Plaintiff was "qualified" if he had the skill, experience, education, and other requirements for the job and could do the job's essential functions, either with or without [*describe requested accommodation*]. You should only consider Plaintiff's abilities at the time when [*describe challenged employment decision*].

Not all job functions are "essential." Essential functions are a job's fundamental duties. In deciding whether a function is essential, you may consider the reasons the job exists, the number of employees Defendant has to do that kind of work, the degree of specialization the job requires, Defendant's judgment about what is required, the consequences of not requiring an employee to satisfy that function, and the work experience of others who held position.

[In addition to specific job requirements, an employer may have general requirements for all employees. For example, the employer may expect employees to refrain from abusive or threatening conduct toward others, or may require a regular level of attendance.]

### Committee Comments

a.     **General Authority:** *See* 42 U.S.C. §§ 12111(8) (definition of "qualified individual with a disability") and 12111 (employment-related definitions); 29 C.F.R. pt. 1630, App. § 1630.2(m) (qualified individual). *See also* NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS §§ 15.6, 15.7 (2001) ("Qualified Individual" and "Ability to Perform Essential Functions – Factors"); ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES) §§ 1.5.1, 1.5.2 (2000) ("Disparate Treatment Claim" and "Reasonable Accommodation Claim").

b.     **Skill, Experience, Education:** *See Ozlowski v. Henderson*, 237 F.3d 837, 841 (7th Cir. 2001); *citing* 29 C.F.R. pt. 1630, app.; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 973-974 (7th Cir. 2000); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 599 (7th Cir. 1998); *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 675 (7th Cir. 1998) (*citing Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996), and 29 C.F.R. pt. 1630 App. § 1630.2(m)); *Duda v. Board of Educ. of Franklin Park*, 133 F.3d 1054, 1058-1059 (7th Cir. 1998); and *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1284-1285 (7th Cir. 1996).

c.     **Time of Relevant Employment Decision:** *See Bay v. Cassens Transport Co.*, 212 F.3d 969, 974 (7th Cir. 2000) ("Whether or not an individual meets the definition of a qualified individual with a disability is to be determined as of the time the employment decision was made.") (*citing Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996).

d.     **Determining Essential Job Functions:** *See Winfrey v. City of Chicago*, 259 F.3d 610, 615-617 (7th Cir. 2001); *Ozlowski v. Henderson*, 237 F.3d 837, 841 (7th Cir. 2001); *Hansen v. Henderson*, 233 F.3d 521, 523-524 (7th Cir. 2000); *Malabarba v. Chicago Tribune Co.*, 149 F.3d

690, 700 (7th Cir. 1998); *Duda v. Board of Educ. of Franklin Park*, 133 F.3d 1054, 1058-1059 (7th Cir. 1998); *Miller v. Illinois Dep't of Corrections*, 107 F.3d 483, 485 (7th Cir. 1997); *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912 (7th Cir. 1996). Under 29 C.F.R. § 1630.2(n), evidence of whether a particular function is essential can include – but is not limited to – the employer's own judgment about which functions are essential; a job description written before the employer advertised or interviewed applicants for the job; how much time was spent on the job performing the function; the consequences of not requiring the person in the job to perform the function; the terms of a union contract, if there was one; the work experience of employees who held the job in the past; and the current work experience of persons holding similar jobs. *See Winfrey v. City of Chicago*, 259 F.3d at 615-617 (showing that not all employees perform at a particular time all the essential job functions does not make those functions non-essential); *Malabarba v. Chicago Tribune Co.*, 149 F.3d at 700 (same); *Miller*, 107 F.3d at 485 ("if an employer has a legitimate reason for specifying multiple duties for a particular job classification, duties the occupant of the position is expected to rotate through, a disabled employee will not be qualified for the position unless he can perform enough of these duties to enable a judgment that he can perform its essential duties").

      e.     **General Job Requirements:** The optional language in brackets about general job requirements conforms with *Waggoner v. Olin Corp.*, 169 F.3d 481, 484-485 (7th Cir. 1999), and *Nowak v. St. Rita High School*, 142 F.2d 999, 1003 (7th Cir. 1998).

## 4.06. REASONABLE ACCOMMODATION: GENERAL INSTRUCTION

Under the ADA, to "accommodate" a disability is to make some change that will let a person with a disability [perform/apply for/be eligible for] the job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits that it will produce.

A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules, but does not include elimination or change of essential job functions, assignment of essential job functions to other employees, or lower productivity standards.

### Committee Comments

a.    **General Authority:** *See Gile v. United Airlines, Inc.*, 213 F.3d 365, 373-374 (7th Cir. 2000); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 601-602 (7th Cir. 1998); *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 697, 699 (7th Cir. 1998); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1072-1073 (7th Cir. 1998); *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 677-680 (7th Cir. 1998); *DePaoli v. Abbott Labs.*, 140 F.3d 668, 674-675 (7th Cir. 1998); *Duda v. Board of Ed. of Franklin Park Public School Dist.*, 133 F.3d 1054, 1058 (7th Cir. 1998); *Miller v. Illinois Dep't of Corrections*, 107 F.3d 483, 486 (7th Cir. 1997); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 525-526 (7th Cir. 1996); *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1283-1286 (7th Cir. 1996); *Eckles v. Consolidated Rail Corp.*, 94 F.3d 1041, 1045-1051 (7th Cir. 1996), *cert. den.* 117 S. Ct. 1318 (1997); *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996); *Schmidt v. Methodist Hosp. of Indiana, Inc.*, 89 F.3d 342, 344 (7th Cir. 1996); *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996); *Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538, 543, 545 (7th Cir. 1995). *See also* ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES) § 1.5.2 (2000) ("Reasonable Accommodation Claim"); 5 LEONARD B. SAND, JOHN S. SIFFERT, WALTER P. LOUGHLIN, STEVEN A. REISS, NANCY BATTERMAN, MODERN FEDERAL JURY INSTRUCTIONS, Form Instruction 88A-16 (2001).

b.    **Cost of Accommodation and Relationship to Undue Hardship Defense**: An accommodation's costs are relevant to reasonableness. The relation of these costs to a defendant's particular financial circumstances, however, is more appropriate to the jury's consideration of whether the accommodation is an "undue hardship". *See* Instruction 4.08, *infra*. Because undue hardship is an affirmative defense on which the defendant bears the burden of proof, the Committee did not include reference to the defendant's individual economic condition in this instruction. The Committee based its view on the Seventh Circuit's decision in *Vande Zande v. Wisconsin Dep't Of Admin.,* 44 F.3d 538 at 543:

> [I]t seems that costs enter at two points in the analysis of claims to an accommodation to a disability. The employee must show that the accommodation is reasonable in the sense both of efficacious and of proportional to costs. Even if the prima facie case is made, the employer has an opportunity to prove that upon more

careful consideration the costs are excessive in relation either to the benefits of the accommodation or to the employer's financial survival or health. . . . One interpretation of 'undue hardship' is that it permits an employer to escape liability if he can carry the burden of proving that a disability accommodation reasonable for a normal employer would break him.

The Committee, however, could not reach agreement on how to incorporate the above language into a definition of when an accommodation is "reasonable." A majority of the Committee preferred the language set forth in the instruction's first paragraph: "An accommodation is 'reasonable' if it is effective and its costs are not clearly disproportionate to the benefits that it will produce." Other Committee members preferred the following alternative language: "An accommodation is 'reasonable' if it is feasible and would be effective." *See US Airways, Inc. v. Barnett*, 535 U.S. 391, 401-402 (2002).

    c.    **Impact of Accommodation on Other Employees:** In cases where the court believes that the impact of a proposed accommodation on a defendant's other employees is relevant to the prima facie case (as opposed to the undue hardship defense), the Committee recommends adding the following language to the instruction: "In making this determination, you may consider, among other things, the impact of the accommodation on Defendant's other employees."

# 4.07. REASONABLE ACCOMMODATION: SUPPLEMENTAL INSTRUCTIONS FOR SPECIFIC ACCOMMODATION ISSUES

## (a) Choice between Alternate Accommodations

[Plaintiff may not insist on a particular accommodation if another reasonable accommodation was offered.]

## (b) Effect of Continuing Duty; Past Attempts to Accommodate

[Defendant's duty to provide a reasonable accommodation is a continuing one. You must evaluate the reasonableness of an accommodation as of the time [it was requested] [the need became apparent to Defendant].]

## (c) Reassignment As A Reasonable Accommodation

[If no reasonable accommodation was available in Plaintiff's present job, the ADA requires Defendant to try to assign him to a vacant position for which he is qualified. If the reassignment was practical and did not require Defendant to turn away a more qualified applicant, Defendant must have made the reassignment. Defendant was not required to create a new job or give a promotion to Plaintiff.]

## (d) Reassignment Where There Is a Union Contract or Seniority System

[An accommodation is not reasonable if it conflicts with an established seniority system, unless Plaintiff proves by a preponderance of the evidence that "special circumstances" make an exception reasonable. For example, an exception might be reasonable if exceptions were often made to the seniority policy. Another example might be where the seniority system already contains its own exceptions so that, under the circumstances, one more exception is not significant.]

## (e) Reallocating Job Duties

[A reasonable accommodation may include transferring non-essential job duties to another employee. However, Defendant does not have to transfer essential job duties.]

## Committee Comments

a.    **Choice Between Alternate Accommodations:** These instructions conform with *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 577 (7th Cir. 2001); *Emerson v. Northern States Power*

*Co.*, 256 F.3d 506, 515 (7th Cir. 2001) (*citing Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996)); *Miller v. Illinois Dep't of Corrections*, 107 F.3d 483, 486 (7th Cir. 1997); and *Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538, 542, 546 (7th Cir. 1995).

      b.    **Effect of Continuing Duty: Past Attempts to Accommodate:** This instruction conforms with *Winfrey v. City of Chicago*, 259 F.3d 610, 616 (7th Cir. 2001) (*citing Amadio v. Ford Motor Co.*, 238 F.3d 919, 929 (7th Cir. 2001)); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 600-602 (7th Cir. 1998); *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1284-1286 (7th Cir. 1996); *Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d at 545.

      c.    **Reassignment as a Reasonable Accommodation:** This instruction conforms with 42 U.S.C. §§ 12111(9)(B), 12112(b)(5)(A); *US Airways, Inc. v. Barnett*, 535 U.S. 391, 403-404 (2002); *Winfrey v. City of Chicago*, 259 F.3d at 618; *EEOC v. Humiston-Keeling, Inc.*, 227 F.3d 1024, 1026-1027 (7th Cir. 2000) (*citing* 42 U.S.C.A. § 12111(9)(B)); *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 697-700 (7th Cir. 1998); *Baert v. Euclid Beverage Co.*, 149 F.3d 626, 633 (7th Cir. 1998) (*citing Gile v. United Airlines*, 95 F.3d at 499; 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. pt. 1630, App.

      d.    **Reassignment Where There Is a Union Contract or Seniority System:** This instruction conforms with *US Airways v. Barnett*, 535 U.S. at 405 (*citing Borkowski v. Valley Central School Dist.*, 63 F.3d 131, 137 (2nd Cir. 1995) ("an accommodation that imposed burdens that would be unreasonable for most members of an industry might nevertheless be required of an individual defendant in light of that employer's particular circumstances")); *Eckles v. Consolidated Rail Corp.*, 94 F.3d 1041 (7th Cir. 1996). *See Ozlowski v. Henderson*, 237 F.3d 837, 841 n.2 (7th Cir. 2001) (employer not required to bump current employee to provide reasonable accommodation) (*citing Gile v. United Airlines*, 95 F.3d at 499); *Baert v. Euclid Beverage*, 149 F.3d at 633.

      e.    **Reallocating Job Duties:** This instruction conforms with *US Airways v. Barnett*, 535 U.S. at 403, and *Ozlowski v. Henderson*, 237 F.3d at 841. In *Ozlowski*, the Seventh Circuit held that "[w]hile it is true that an employer may redistribute marginal functions of a job to other employees, an employer is not required to reallocate essential functions 'that the individual who holds the job would have to perform, with or without reasonable accommodation, in order to be considered qualified for the position.'" 237 F.3d at 841 (*citing* 29 C.F.R. pt. 1630, App.).

# 4.08. INTERACTIVE PROCESS

Once an employer is aware of an [employee's/applicant's] disability and an accommodation has been requested, the employer must discuss with the [employee/applicant] [or, if necessary, with his doctor] whether there is a reasonable accommodation that will permit him to [perform/apply for] the job. Both the employer and the [employee/applicant] must cooperate in this interactive process in good faith.

Neither party can win this case simply because the other did not cooperate in this process, but you may consider whether a party cooperated in this process when deciding whether [a reasonable accommodation existed] [to award punitive damages].

## Committee Comments

a. **Usage:** Courts should use this instruction only in cases where the "interactive process" is at issue. The instruction conforms with *Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000); *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000) (*quoting Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998), and *citing Miller v. Illinois Dept. of Corrections*, 107 F.3d 483, 486-487 (7th Cir. 1997); *Rehling v. City of Chicago*, 207 F.3d 1009, 1015 (7th Cir. 2000); *Haschmann v. Time Warner Entertainment, L.P.*, 151 F.3d 591, 601 (7th Cir. 1998) (*quoting Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 563 (7th Cir. 1996)); *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285-1286 (7th Cir. 1996); *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996); 29 C.F.R. § 1630.2(o)(3); 29 C.F.R. pt. 1630.2, App. § 1630.9. By itself, the interactive process requirement is not an element of an ADA claim, and "a plaintiff cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process." *Rehling v. City of Chicago*, 207 F.3d at 1016. "[T]he interactive process is a means and not an end in itself." *Rehling v. City of Chicago*, 207 F.3d at 1016 (quoting *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1023 (7th Cir. 1997)). Nonetheless, the Seventh Circuit has made it clear that "[t]he appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." *Bultemeyer v. Fort Wayne Schs.*, 100 F.3d at 1285-1286 (*citing* 29 C.F.R. pt.1630, app.; *Beck v. University of Wis. Bd. of Regents*, 75 F.3d at 1135). *Accord, Gile v. United Airlines*, 213 F.3d at 373 (once employer is aware of individual's disability, employer must seek out the individual and engage in an interactive process to determine a reasonable accommodation).

b. **Employer's Awareness of Disability:** In the unusual case where an employer contends that it was not aware of a disability, and the plaintiff alleges that the employer knew or should have known, the court should consider adding the following language to the instruction:

If the employer has reason to know that the [applicant/employee] has a disability and the [applicant] [employee] is having problems [at work/applying for the job] because

of the disability, it must engage in discussions with him and, if necessary, with his doctor, to decide if he is actually disabled.

For further elaboration on the importance of a defendant's awareness a plaintiff's disability, see Instruction 4.03, comment b.

# 4.09 UNDUE HARDSHIP DEFENSE

Under the ADA, Defendant does not need to accommodate Plaintiff if it would cause an "undue hardship" to its business. An "undue hardship" is something too costly or something that is so disruptive that it would fundamentally change the nature of Defendant's business or how Defendant runs its business.

Defendant must prove to you by a preponderance of the evidence that Plaintiff's proposed accommodation would be an "undue hardship." In deciding this issue, you should consider the following factors:

1.     The nature and cost of the accommodation;

2.     Defendant's overall financial resources. This might include the size of its business, the number of people it employs, and the types of facilities it runs;

3.     The financial resources of the facility where the accommodation would be made. This might include the number of people who work there and the impact that the accommodation would have on its operations and costs; and

4.     The way that Defendant conducts its operations. This might include its workforce structure; the location of its facility where the accommodation would be made compared to Defendant's other facilities; and the relationship between these facilities.

## Committee Comments

a.     **General Authority:** This instruction is derived from EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 5.53A (2001) ("'Undue Hardship' – Statutory Defense") and NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 15.9 (2001) ("Undue Hardship"), which, in turn, conform to 42 U.S.C. §§ 12111(9) and (10), 29 C.F.R. § 1630.2(p), and 29 C.F.R. pt. 1630, App. § 1630.2(p); *US Airways, Inc. v. Barnett*, 535 U.S. 391, 403-404 (2002). The instruction also conforms to 42 U.S.C. § 12112(b)(5)(A); *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 577 (7th Cir. 2001); *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 699 (7th Cir. 1998); *Baert v. Euclid Beverage Co.*, 149 F.3d 626, 633 (7th Cir. 1998); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996); *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1016-1017 (7th Cir. 1996); *Vande Zande v. Wisconsin Dept. of Admin.*, 44 F.3d 538, 542-543 (7th Cir. 1995); 29 C.F.R. § 1630.9(a).

b.     **Relationship to Determination of Accommodation's Reasonableness:** See Instruction 4.06, comment b, concerning the relationship between the undue hardship defense and a determination of whether an accommodation is reasonable.

# 4.10  DIRECT THREAT DEFENSE

In this case, Defendant says that it [did not accommodate/did not hire/fired] Plaintiff because [accommodating/hiring/retaining] him would have created a significant risk of substantial harm to [Plaintiff and/or others in the workplace]. [Defendant must have based this decision on a reasonable medical judgment that relied on [the most current medical knowledge] [the best available objective evidence] about whether Plaintiff could safely perform the essential functions of the job at the time.] If Defendant proves this to you by a preponderance of the evidence, you must find for Defendant.

In deciding if this is true, you should consider the following factors: (1) how long the risk will last; (2) the nature and severity of the potential harm; (3) how likely it is that the harm will occur; and (4) whether the potential harm is likely to occur in the near future.

[Defendant must prove that there was no reasonable accommodation that it could make which would eliminate the risk or reduce it so that it was no longer a significant risk of substantial harm.]

## Committee Comments

The format of the instruction is taken from EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 5.53B (2001) ("'Direct Threat' – Statutory Defense") and NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 15.12 (2001) ("Defenses – Direct Threat"). The instruction conforms with 42 U.S.C. § 12111(3) (definition of direct threat), 42 U.S.C. § 12113(b) (a qualification standard can include a condition that a person not pose a direct threat), and *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73 (2002) ("direct threat" includes a threat to the employee himself); *School Bd. of Nassau County v. Arline*, 480 U.S. 273 (1987) (criteria for direct threat under analogous Rehabilitation Act of 1973); *Emerson v. Northern States Power Co.*, 256 F.3d 506, 513-514 (7th Cir. 2001); *Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 671-672 (7th Cir. 2000); and *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1283-1284 (7th Cir. 1995).

As to the burden of proof, see *Branham v. Snow*, 392 F.3d 896, 905-907 (7th Cir. 2004).

# 4.11  DAMAGES: BACK PAY

See Instruction No. 3.11.

## 4.12  DAMAGES: MITIGATION

See Instruction No. 3.12.

# 4.13  COMPENSATORY DAMAGES

See Instruction No. 3.10.

## 4.14 PUNITIVE DAMAGES

See Instruction No. 3.13.

## 4.15.  SPECIAL VERDICT FORM

1) Did Plaintiff have a disability?

   Answer Yes or No: _____

*(If you answered "Yes," answer Question 2; otherwise, sign, and return this verdict form)*

2) Was Plaintiff qualified to perform [his job] [the job he sought]?

   Answer Yes or No: _____

*(If you answered "Yes," then answer Question 3; otherwise, sign and return this verdict form.)*

3) Did Plaintiff request an accommodation?

   Answer Yes or No: _____

*(If you answered "Yes," then answer Question 4; otherwise, sign and return this verdict form.)*

4) Was Defendant aware of Plaintiff's disability at the time of Plaintiff's request?

   Answer Yes or No: _____

*(If you answered "Yes," then answer Question 5; otherwise, sign and return this verdict form.)*

5) Did Defendant fail to provide Plaintiff with a reasonable accommodation?

   Answer Yes or No: _____

*(If you answered "Yes," then answer Question 6; otherwise, sign and return this verdict form.)*

6) Would giving Plaintiff a reasonable accommodation have been an undue hardship on Defendant's business?

   Answer Yes or No: _____

*(If you answered "Yes," sign and return this verdict form; otherwise, answer Question 7.)*

7) Has Plaintiff suffered a net loss of wages and benefits as a result of [*describe adverse action*]?

   Answer Yes or No: _____

*(If you answered "Yes," then answer Question 8; otherwise sign, and return this verdict form.)*

8) What was the amount of net wages and benefits that Plaintiff lost up to the time of trial?

   Answer:      $ _____

*(Answer Question 9.)*

(2017 rev.)

9) Has Plaintiff suffered emotional pain and mental anguish as a result of [*describe adverse action*]?

     Answer Yes or No:

*(If you answered "Yes," then answer Question 10; if you answered "No," to this question, then answer Question 11.)*

10) What amount will fairly compensate Plaintiff for his emotional pain and mental anguish as a result of [*describe adverse action*]?

     Answer:      $

*(Answer Question 11.)*

11) Did [*Name*] act with reckless disregard of Plaintiff's rights under ADA?

     Answer Yes or No:

*(If you answered "Yes," then answer Question 10; otherwise, sign and return this verdict form.)*

12) Did Defendant itself act in good faith to attempt to comply with ADA by implementing policies and procedures to prohibit discrimination in violation of ADA?

     Answer Yes or No:

*(If you answered "Yes," sign and return this verdict form; otherwise, answer Question 13.)*

13) What amount of punitive damages, if any, should be assessed against Defendant?

     Answer:      $

Dated this _____ day of _____, 20__.

                        _____
                        Presiding Juror

### Committee Comments

    a.    **General Authority:** This special verdict form is designed to track the elements of a reasonable accommodations claim, to which an undue hardship affirmative defense has been asserted. *See* Instructions 4.03 and 4.08, above. The court should modify this form to track the issues in each particular case.

    b.    **Disparate Treatment Cases:** In a disparate treatment case involving a perceived disability or a record of disability, Question 1 must be modified to reflect Instruction 2. In a

disparate treatment case not involving a mixed motive, Questions 3-5 should be replaced with the following two questions:

    3. Did Defendant [*describe adverse employment action*] Plaintiff?

    4. Would Defendant would have [*describe adverse employment action taken*] if Plaintiff had not had a disability, but everything else remained the same.

    c.    **Mixed Motive Cases:** For mixed motive cases, see Instruction 4.02, comment d.

    d.    **Request for Accommodation.** Where appropriate, Question 3 may be modified to read, "Was Defendant aware that Plaintiff required an accommodation?" *See* Instruction 4.08, comment b.

    e.    **Punitive Damages.** This form assumes punitive damages are available in ADA cases in the absence of compensatory damages, an issue the Seventh Circuit has not directly addressed. *See generally Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998) ("No reason comes to mind for reading a compensatory-punitive link into § 1981a or Title VII but not § 1983."); *Paciorek v. Michigan Consolidated Gas Co.*, 179 F.R.D. 216, 220-222 (E.D. Mich. 1998) (concluding "the plain language of § 1981a(b)(1) of the 1991 Civil Rights Act" controls an ADA plaintiff's access to punitive damages).

    If the parties dispute whether the person was a managerial employee within the meaning of Instruction 3.13, the following question should be inserted between interrogatories 10 and 11: "Was [*Name*] a managerial employee of Defendant?"

**5. EQUAL PAY ACT**

# 5.01  ESSENTIAL ELEMENTS OF A CLAIM

Plaintiff claims that Defendant violated a law called the "Equal Pay Act." This law is designed to prevent wage discrimination by employers based on sex. To succeed on this claim, Plaintiff must prove three things by a preponderance of the evidence:

1.      Plaintiff did work that was "substantially equal" to male employees at [*Defendant's workplace*];

2.      Plaintiff and a male employee did their jobs under similar working conditions;

3.      Defendant paid Plaintiff less money than a male employee doing substantially equal work.

### Committee Comments

*See* 29 U.S.C. § 206(d); *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1973); *Fallon v. State of Illinois,* 882 F.2d 1206, 1208 (7th Cir. 1989); *EEOC v. Madison Cmty. Unit Sch. Dist. No. 12*, 818 F.2d 577, 580-583 (7th Cir.1987).

## 5.02  SUBSTANTIALLY EQUAL

In deciding whether jobs are "substantially equal," you should compare the skill, effort, and responsibility needed to do the work. The jobs do not need to be identical in these areas, so you should ignore minor differences between them.

### Committee Comments

*See* 29 C.F.R. § 1620.14(a); *Cullen v. Indiana Univ. Bd. of* Tr., 338 F.3d 693, 698-700 (7th Cir. 2003); *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 685-686 (7th Cir. 1998); *see also EEOC v. Sears, Roebuck & Co.,* 839 F.2d 302, 306 (7th Cir. 1988); *Hunt v. Nebraska Public Power Dist.*, 282 F.3d 1021 (8th Cir. 2002); *Brennan v. South Davis Cmty. Hosp.,* 538 F.2d 859 (10th Cir. 1976); *Klimiuk v. ESI Lederle, Inc.*, 2000 WL 1599251, 84 Fair Empl.Prac.Cas. (BNA) 971 (E.D.Pa., Oct 25, 2000); *Brennan v. Prince William Hosp. Corp.*, 503 F.2d 282 (4th Cir. 1974).

(2017 rev.)

## 5.03  EQUAL SKILL

In deciding whether jobs require "equal skill," you should consider whether people need essentially the same [experience/training/education/ability to do the work]. Jobs may require "equal skill" even if one job does not require workers to use these skills as often as another job.

### Committee Comments

*See* 29 C.F.R. § 1620.15(a); *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 685-686 (7th Cir.1998).

## 5.04  EQUAL EFFORT

In deciding whether jobs require "equal effort," you should consider the physical or mental energy that a person must use at work. "Equal effort" does not require people to use effort in exactly the same way. If there is no substantial difference in the amount or degree of effort needed to do the jobs, they require "equal effort."

### Committee Comments

*See* 29 C.F.R. § 1620.16; *Jenkins v. U.S.*, 46 Fed. Cl. 561 (Fed. Cl. 2000); *Cullen v. Indiana Univ. Bd. of Tr.*, 338 F.3d 693, 699 (7th Cir. 2003); *Boriss v. Addison Farmers Ins. Co.*, No. 91-C-3144, 1993 WL 284331 (N.D. Ill., Jul 26, 1993).

## 5.05  EQUAL RESPONSIBILITY

In deciding whether jobs involve "equal responsibility," you should consider how accountable someone is in doing his or her job, including how much authority an employee has and the importance of his or her job.

### Committee Comments

*See* 29 C.F.R. § 1620.17; *Jenkins v. U.S.*, 46 Fed.Cl. 561 (Fed. Cl. 2000); *Krenik v. County of Le Sueur*, 47 F.3d 953 (8th Cir. 1995); *Dean v. United Food Stores, Inc.*, 767 F. Supp. 236 (D.N.M..1991).

## 5.06  JOB TITLES

In deciding whether two jobs are "substantially equal," you should consider the actual job requirements. Job classifications, descriptions, and titles are not controlling.

### Committee Comments

*See 29* C.F.R. § 1620.13(e); *EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 345-348 (7th Cir. 1988); *Epstein v. Secretary, United States Dep't of the Treasury*, 739 F.2d 274, 277 (7th Cir. 1984).

## 5.07  RATES OF PAY

In deciding whether Plaintiff was paid less than her male co-worker[s] for equal work, you can consider evidence about how much Plaintiff's co-workers earned, even if the co-workers worked in different departments.

### Committee Comments

*See* 29 C.F.R. § 1620.19; *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586 (11th Cir. 1994); *see also Power v. Barry County*, 539 F. Supp. 721, 722 (W.D. Mich.1982) (defining comparable worth theory).

## 5.08  COMPARABLE TIME PERIODS

Plaintiff must prove that at least one male employee received more pay than Plaintiff for substantially equal work. In comparing Plaintiff's work and pay with other employees, you can look at the work and pay of employees who did substantially equal work before or after the Plaintiff.

### Committee Comments

*See* 29 C.F.R.§ 1620.13(b)(4); *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251 (7th Cir. 1985); *Taylor v. Philips Indus., Inc.*, 593 F.2d 783 (7th Cir.1979).

## 5.09  INTENT

Plaintiff does not have to prove that Defendant meant to discriminate against Plaintiff because she was female.

### Committee Comments

A plaintiff need not prove an intent to discriminate in an Equal Pay Act case. *See Varner v. Illinois State Univ.*, 226 F.3d 927, 932 (7th Cir. 2000) ("Under the Equal Pay Act, an employer is potentially subject to liability without a showing of discriminatory intent."); *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251, 1260 n. 5 (1985) ("the Equal Pay Act creates a type of strict liability in that no intent to discriminate need be shown"). The Committee, therefore, views this instruction as helping to avoid confusion, particularly in cases that contain both an Equal Pay Act claim and a Title VII claim, where a plaintiff normally must prove intent. *See Fallon v. State of Illinois*, 882 F.2d 1206, 1213 (7th Cir. 1989).

# 5.10 AFFIRMATIVE DEFENSES

Even if Defendant paid Plaintiff less than male employees for substantially equal work, you should find in favor of Defendant if it proves by a preponderance of the evidence that the difference was because of:

1.      A seniority system, or a merit-based system, that is not based on an employee's sex; or

2.      A system based on the quality or quantity of each employee's production; or

3.      [*describe any factor other than sex on which Defendant claims its pay differential was based*].

## Committee Comments

*See* 29 U.S.C. § 206(d)(1); 29 C.F.R. § 1620.20. The Committee does not anticipate that a court would charge the jury on each of the three factors. Instead, the court should instruct the jury on only those factors that are relevant to the case. *See Fallon v. State of Illinois*, 882 F.2d 1206, 1211 (7th Cir. 1989).

# 5.11  DAMAGES

If you find in favor of Plaintiff, then you should award Plaintiff damages consisting of the difference between Plaintiff's pay and the pay of the male employee(s) who did substantially equal work during comparable time periods.

If you award damages, they are limited to the following time period:  [*Relevant dates*]

## Committee Comments

*See* 29 U.S.C. § 206(d)(3).

## 5.12  WILLFULNESS

If you find for Plaintiff, you must then decide whether Defendant willfully violated the Equal Pay Act. To show this, Plaintiff must prove by a preponderance of the evidence that Defendant knew that it was violating the Equal Pay Act, or was indifferent to whether its actions violated the Equal Pay Act, and not simply that Defendant was aware that it was discriminating in pay.

### Committee Comments

*See* EIGHTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS—CIVIL § 5.14 (2000); *Mathis v. Phillips Chevrolet, Inc.,* 269 F.3d 771, 777 (7th Cir. 2001) ("A defendant's negligent mistake concerning the lawfulness of her conduct does not suffice to make that conduct 'willful', but a reckless mistake, in the criminal law sense of indifference to whether the conduct violates the law, does.").

(2017 rev.)

**6. PUBLIC EMPLOYEE AND PRISONER RETALIATION**

(2017 rev.)

## 6.01  PUBLIC EMPLOYEE'S FIRST AMENDMENT
## FREE SPEECH RETALIATION CLAIM

In this case, Plaintiff claims that Defendant violated his constitutional right to free speech by [*describe alleged retaliatory conduct*] because Plaintiff [*describe protected speech or conduct*].

To succeed on this claim, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.      Plaintiff [*describe protected speech or conduct*].

2.      Defendant intentionally [*describe alleged retaliatory conduct*].

3.      [Plaintiff's [*describe protected speech or conduct*]] [Defendant's belief that Plaintiff [*describe protected speech or conduct*]] was a reason that Defendant [*describe alleged retaliatory conduct, e.g., terminated plaintiff's employment*].  It need not be the only reason.

4.      [*Defendant's alleged retaliatory conduct*] would be likely to deter an ordinary employee in plaintiff's circumstances from engaging in similar [speech] [conduct].

5.      [Defendant acted under color of law.]

If you find that Plaintiff did not prove each of these things by a preponderance of the evidence, then you must decide for Defendant.

If you find that Plaintiff did prove each of these things by a preponderance of the evidence, then you must consider whether Defendant has proved by a preponderance of the evidence that there were other reasons that would have led Defendant to [*alleged retaliatory conduct*] even if Plaintiff had not [*describe protected speech or conduct*]. If you find that Defendant proved this by a preponderance of the evidence, then you must decide for Defendant. If you find that Defendant did not prove this by a preponderance of the evidence, then you must decide for Plaintiff, and consider the issue of damages.

### Committee Comment

**a.      Whether plaintiff spoke as a private citizen**. A government employee who makes a statement pursuant to his official duties is not protected by the First Amendment. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Chaklos v. Stevens*, 560 F.3d 705, 711 -712 (7th Cir. 2009). *See also Lane v. Franks*, 134 S. Ct. 2369 (2014) (testimony at trial regarding employment-related

issues is protected by First Amendment). This is a question of law for the court to resolve. *See Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010). In cases in which there is a factual dispute that bears on the Court's determination, a special interrogatory may be submitted to the jury on this point.

      **b.**      **Whether plaintiff spoke on matter of public concern**. A plaintiff who satisfies the *Garcetti* standard must also satisfy the *Connick-Pickering* balancing test to determine whether he engaged in protected conduct. *See Spiegla v. Hull*, 481 F.3d 961, 965-66 (7th Cir. 2007). This involves balancing the employee's interest in commenting on the matter against employer's interest "in promoting effective and efficient public service." *Id*. This is a question of law determined by the court. *Carreon v. Illinois Dept. of Human Servs.*, 395 F.3d 786, 791 (7th Cir. 2005). In a case in which a disputed factual issue bears on the Court's determination of whether the plaintiff spoke on a matter of public concern, a special interrogatory may be submitted to the jury on this point.

      **c.**      **Causation**: In the wake of *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), where the Court determined that a mixed motive instruction was never appropriate in a case under the Age Discrimination in Employment Act (ADEA), the Seventh Circuit issued contradictory opinions in the First Amendment context. *Compare Fairley v. Andrews*, 578 F.3d 518, 525–26 (7th Cir. 2009) (applying "but for" standard), *with Greene v. Doruff*, 660 F.3d 975, 978 (7th Cir. 2011) (applying "motivating factor" standard). In *Kidwell v. Eisenhauer*, 679 F.3d 957 (7th Cir. 2012), discussing *Fairley* and *Greene*, the court indicated that "[i]n the end"—that is, at trial—"the plaintiff must demonstrate that, but for his protected speech, the employer would not have taken the adverse action." The court said that the "motivating factor" formulation applies at summary judgment when the plaintiff is attempting to establish a prima facie case of discrimination. *Id.* at 965. However, in *Smith v. Wilson*, 705 F.3d 674, 681 (7th Cir. 2013), the court concluded that *Greene* "held that *Gross* was 'inapplicable' to suits 'to enforce First Amendment rights.'. . . [because] 'the Supreme Court has never abandoned the *Mt. Healthy* [mixed motive] rule' for First Amendment cases." The Committee has follows this guidance in *Smith* but notes that the matter may still be subject to dispute. In drafting the instruction, to simplify, the Committee chose not to use the words "substantial or motivating," instead asking the jury to consider whether the Plaintiff's protected conduct "was a reason, alone or with other reasons" for the defendant's conduct.

      **d.**      **Ordinary employee standard**: The Seventh Circuit has said that the plaintiff must show that defendant's conduct would deter an ordinary person from exercising his First Amendment rights. *See Santana v. Cook Cty. Bd. of Review*, 679 F.3d 614, 622-23 (7th Cir. 2012). Other cases use the term "person of ordinary firmness," but the Committee opted for the simpler "ordinary employee" standard because the "ordinary firmness" formulation is opaque. *See, e.g., Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011); Bridges v. Gilbert, 557 F.3d 541, 552 (7th Cir. 2009); *Hutchins v. Clarke*, 661 F.3d 947, 958 (7th Cir. 2011) (Williams, J., concurring). "Adverse employment action" as that term is used in the employment discrimination context is not required, and the retaliatory conduct "need not be great in order to be actionable." *Mosley v. Bd. of Educ. of City of Chicago*, 434 U.S. 527, 534 (7th Cir. 2006); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). The Committee also concluded, though not without debate, that the standard appropriately takes into account the circumstances of the particular plaintiff's employment, and thus expressed the standard as that of an "ordinary employee in plaintiff's circumstances." The Committee notes that no Seventh

Circuit case expressly adopts a context-specific formulation, but several cases take into account the particular circumstances of the plaintiff's employment in assessing what would deter an ordinary employee from exercising his First Amendment rights. *See, e.g., Swetlik v. Crawford*, 738 F.3d 818, 825 n.2 (7th Cir. 2013) (the "materially adverse" standard in First Amendment retaliation cases is "often fact specific"); *Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000) (taking into account. in assessing the materiality of the denial of a raise, the plaintiff's salary and the fact that she was part of a tenure system).

The Committee also notes that there may be room for dispute over whether whether the "deter an ordinary person" requirement is an element in a case involving employment termination, on the theory that retaliatory termination would deter any person from engaging in protected activity. However, *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006), uses the "deterrence" requirement in a termination case, though the court noted the point was undisputed in that case.

 **e.** **Color of law**: The fifth element should be eliminated if "color of law" is not in dispute. If the element is contested, Instruction No. 7.03 should be given.

## 6.02  PUBLIC EMPLOYEE'S FIRST AMENDMENT
## POLITICAL AFFILIATION CLAIM

In this case, Plaintiff claims that Defendant violated his constitutional right to free association by [*describe alleged retaliatory conduct*] because of his [*describe political affiliation*].

To succeed on this claim, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.      Plaintiff [*describe political affiliation*].

2.      Defendant intentionally [*describe alleged retaliatory conduct*].

3.      [Plaintiff's political affiliation was a reason] [Defendant's belief that Plaintiff [*describe protected speech or conduct*] was a reason] that Defendant [*describe alleged retaliatory conduct, e.g., terminated plaintiff's employment*]. It need not have been the only reason].

4.      [*Defendant's alleged retaliatory conduct*] would be likely to deter an ordinary employee in plaintiff's circumstances from [*describe political affiliation*].

5.       [Defendant acted under color of law.]

If you find that Plaintiff did not prove each of these things by a preponderance of the evidence, then you must decide for Defendant.

If you find that Plaintiff did prove each of these things by a preponderance of the evidence, then you must consider whether Defendant has proved by a preponderance of the evidence that there were other reasons that would have led Defendant to [*alleged retaliatory conduct*] even if Plaintiff had not [*describe protected speech or conduct*]. If you find that Defendant proved this by a preponderance of the evidence, then you must decide for Defendant. If you find that Defendant did not prove this by a preponderance of the evidence, then you must decide for Plaintiff, and consider the issue of damages.

### Committee Comment

**a.      Authority**: "It is well established that hiring, firing, or transferring government employees based on political motivation violates the First Amendment, with certain exceptions for policymaking positions and for employees having a confidential relationship with a superior." *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004) (citations omitted). *Gregorich v. Lund*, 54 F.3d 410, 414 (7th Cir. 1995), holds that such claims are analyzed "under the approach announced by the Supreme

Court in *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) and reiterated in *Connick v. Myers*, 461 U.S. 138 (1983). . . . To be protected, a public employee's expressive activity must 'be on a matter of public concern' and his interest in the expression must outweigh the State's interest in promoting the efficiency of its public services."

     **b.**     **Causation:** *See* Instruction 6.01, comment c.

     **c.**     **Ordinary employee standard:** *See* Instruction 6.01, comment d.

     **d.**     **Policy-maker/confidential employee exception:** A government employee may be fired for political reasons only when "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518 (1980). *See also Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 355 (7th Cir. 2005); Allen v. Martin, 460 F.3d 939, 944 (7th Cir. 2006); *Riley v. Blagojevich*, 425 F.3d 357, 359 (7th Cir. 2005). "[D]efendants bear the burden of establishing [that] political affiliation is an appropriate qualification for the job." *Milazzo v. O'Connell*, 108 F.3d 129, 132 (7th Cir. 1997); *see also Matlock v. Barnes*, 932 F.2d 658, 663 (7th Cir. 1991). There may be some cases in which the determination of whether an employee was a policy-maker or confidential employee depends on disputed facts. *See, e.g., Soderbeck v. Burnett Cnty.*, 752 F.2d 285, 288-89 (7th Cir. 1985); *Nekolny v. Painter*, 653 F.2d 1164, 1169-70 (7th Cir. 1981). If so, it may be necessary to submit to the jury the question of whether the employee had responsibilities that involved policymaking or the exercise of political judgment. In these situations, an appropriate instruction should be prepared.

     **e.**     **Color of law:** This element should be eliminated if "color of law" is not in dispute. If the element is contested, Instruction No. 7.03 should be given.

         (2017 rev.)

## 6.03 PRISONER/DETAINEE FIRST AMENDMENT
## RETALIATION CLAIM

An inmate's right to [*describe with specificity the type of speech or conduct at issue*] is protected by the Constitution.

In this case, Plaintiff claims that Defendant [*describe alleged retaliation*] in retaliation for [*describe plaintiff's alleged speech or conduct*].

To succeed on this claim, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.      Plaintiff [*describe protected speech or conduct*].

2.      Defendant intentionally [*describe alleged retaliatory conduct*].

3.       [Plaintiff's [*protected speech or conduct*]] [Defendant's belief that Plaintiff [*describe protected speech or conduct*]] was a reason that Defendant [*describe alleged discriminatory conduct, e.g., disciplined plaintiff*].  It need not have been the only reason.].

4.      Defendant's [*alleged retaliatory conduct*] would be likely to deter an average person in Plaintiff's circumstances from engaging in similar [*protected speech or conduct*].

[5.      Defendant acted under color of law.]

If you find that Plaintiff did not prove each of these things by a preponderance of the evidence, then you must decide for Defendant.

If you find that Plaintiff did prove each of these things by a preponderance of the evidence, then you must consider whether Defendant has proved by a preponderance of the evidence that there were other reasons that would have led Defendant to [*alleged retaliatory conduct*] even if Plaintiff had not [*describe protected speech or conduct*]. If you find that Defendant proved this by a preponderance of the evidence, then you must decide for Defendant. If you find that Defendant did not prove this by a preponderance of the evidence, then you must decide for Plaintiff, and consider the issue of damages.

### Committee Comment

The Committee drafted this instruction to be consistent with Instructions 6.01 and 6.02 regarding public employees' First Amendment retaliation claims.

**a.     Scope of instruction:**  This instruction applies to any claim in which a prisoner is alleging that a prison official retaliated against him for exercising a constitutional right. Most cases involve alleged retaliation for complaining about prison conditions, either through a lawsuit or grievance, in violation of the right of access to the courts or the right to free speech under the First Amendment. *E.g.*, *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011) (retaliation for "complaining about mistreatment"); *Dobbey v. Illinois Dept. of Corrs.*, 574 F.3d 443, 447 (7th Cir. 2009) (retaliation for filing grievance); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) (retaliation for making verbal complaint); *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (retaliation for filing lawsuit). The basic elements of a retaliation claim are the same irrespective of the particular underlying constitutional right.

**b.     Protected conduct:**  The court should not ask the jury to decide whether the conduct is constitutionally protected; that is a question of law for the court that should be determined before trial, generally under the standard set forth in *Turner v. Safley*, 482 U.S. 78 (1987). *See, e.g.*, *Watkins v. Kasper*, 599 F.3d 791, 796-97 (7th Cir. 2010).

**c.     Deter an average prisoner**:  The case law requires a plaintiff to show that defendant's conduct would "deter a person of ordinary firmness" from exercising his First Amendment rights. *See, e.g., Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).  The Committee has substituted the term "average" because it is easier to understand and conveys the same idea, and has also particularized the frame of reference to that of an "average person in Plaintiff's circumstances." Though there is no precedential Seventh Circuit case directly on point, one unpublished case, acknowledges that the standard focuses on an average person in the plaintiff's circumstances, often referred to as "a prisoner of ordinary firmness."  *See May v. Trancoso*, 412 F. App'x 899, 904 (7th Cir. 2011) (considering whether an adverse action would "reasonably be expected to deter an inmate from protesting in the future.") (emphasis added). In addition, in *Swetlik v. Crawford*, 738 F.3d 818, 825 n.2 (7th Cir. 2013), a case involving a non-prisoner plaintiff, the court stated that the "materially adverse" element in First Amendment retaliation cases is "often fact specific."

The cases in other circuits and in district courts within the Seventh Circuit also near-uniformly follow the approach the Committee has taken. *See, e.g., Santiago v. Blair*, 707 F.3d 984, 992-93 (8th Cir. 2013); *Starr v. Dube*, 334 F. App'x 341, 343, 2009 WL 1782620 (1st Cir. 2009); *Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008); *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000).  *See also Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (using "inmates of ordinary firmness" interchangeably with "person of ordinary firmness"); *Heard v. Hardy*, No. 11 C 6683, 2013 WL 3812102, at *3 (N.D. Ill. July 22, 2013)  (whether adverse act would "deter a prisoner of ordinary firmness from future First Amendment activity") (emphasis added); *Johnson v. Kingston*, 292 F. Supp. 2d 1146, 1152 (W.D. Wis. 2003) (whether "retaliatory act is . . . one that could be said to have had the effect of deterring an inmate 'of ordinary firmness' from engaging in similar activity") (emphasis added).

The Committee opted to use the term "average person in Plaintiff's circumstances" rather than "average prisoner" because the latter formulation might be confusing to lay jurors, who typically will lack the experience necessary to consider how an "ordinary prisoner" would act. This

is consistent with the formulations used by the Second and Fourth Circuits. *See Blankenship v. Manchin*, 471 F.3d 523, 530 (4th Cir. 2006); *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir.2006). *Cf. Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010) ("This inquiry is intensely context-driven: Although the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting—whether activity is 'protected' or an action is 'adverse' will depend on context.").

 **d.** **Causation:** The Committee has adopted the "mixed motive" standard of causation used in the instruction for non-prisoners. *See* Instruction 6.01, comment c.

 **e.** **Color of law:** The fifth element should be eliminated if the "color of law" issue is not in dispute. If the element is contested, Instruction No. 7.03 should be given.

**7.  CONSTITUTIONAL TORTS: 42 U.S.C. §1983**

# 7.01  GENERAL: POLICE DEPARTMENT/MUNICIPALITY NOT A PARTY

Defendant(s) [is/are] being sued as [an] individual[s]. Neither the [*Identify state or county police department or correctional agency*] nor [*Identify state, county, or city*] is a party to this lawsuit.

### Committee Comment

*Monell v. City of New York Dep't of Soc. Serve.*, 436 U.S. 658, 691, 694 (1970); *Duckworth v. Franzen*, 780 F.2d 645, 650-51 (7th Cir. 1985). This instruction should not be given if the governmental entity is named as a defendant.

# 7.02  GENERAL: REQUIREMENT OF PERSONAL INVOLVEMENT

Plaintiff must prove by a preponderance of the evidence that [*name of individual defendant*] was personally involved in the conduct that Plaintiff complains about. You may not hold [*Individual defendant*] liable for what others did or did not do.

**Committee Comment**

*Walker v. Rowe*, 791 F.2d 507, 508 (7th Cir. 1986); *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985).  In some cases, giving this instruction may risk misleading the jury. There are situations in which it does not apply or may be inaccurate, for example, cases involving claims of failure to intervene, supervisory liability, conspiracy, or cases in which there are state law claims on which there is respondeat superior liability.

If the court gives this instruction and the jury will be considering a "failure to intervene" claim, the court may wish to preface the instruction for that claim "However," and give the failure to intervene instruction immediately after this one, or take other steps to avoid jury confusion. *See* Instruction 7.22.

If the case involves a supplemental state law claim involving respondeat superior liability, this instruction should be modified to limit it to the federal claim.

# 7.03  GENERAL: "UNDER COLOR OF LAW"

One of the things Plaintiff must prove is that Defendant acted "under color of law."

## (a) Public employee defendant

A person who is employed by the government acts "under color of law" if [he] [she] uses or misuses authority that [he][she] has because of [his] [her] official position. A person may act under color of law even if [he] [she] is violating a [state] [local] law or policy.

[You may find that Defendant acted under color of law even if [he] [she] was acting outside [his] [her] authority if [he] [she] represented [himself][herself] as having that authority or if [he][she] otherwise used [his][her] position to accomplish the act.]

## (b) Non-public employee defendant

To establish that Defendant acted "under color of law," Plaintiff must prove by a preponderance of the evidence, first, that Defendant and [*a government employee; or identify government employee(s)*] reached an understanding to [*describe alleged conduct*] and second, that Defendant knowingly participated in joint activity with [*government employee*].

## Committee Comment

a.    **Scope of instruction:**  The inquiry for determining whether a person acted "under color of law" under § 1983 is generally the same as determining whether a person is a "state actor" under the Constitution. *United States v. Price*, 383 U.S. 787, 794 n.7 (1966) ("In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment.").

The instruction includes language that may be used whether the defendant is a government employee or a private party. If the "color of law" requirement is undisputed, this instruction should be eliminated.

This instruction does not address the issue of scope of employment, which is a matter of state law and will need to be addressed separately if it is disputed.

**b.** **Public officials:** An action by a public official is taken "under color of state law" if it involves a "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 515-516 (7th Cir. 2007). It does not matter whether the conduct also violates state law. *Monroe v. Pape*, 365 U.S. 167, 183 (1961). The question is whether the defendant's conduct involves a misuse of power "possessed by virtue of state law." *Honaker v. Smith*, 256 F.3d 477, 485 (7th Cir. 2001); *see also, Wilson v. Price*, 624 F.3d 389, 392-94 (7th Cir. 2010); *Lopez v. Vanderwater*, 620 F.2d 1229, 1236 (7th Cir. 1980). A showing that a police officer is on duty is neither necessary nor sufficient, but it is a relevant factor. *Compare Estate of Sims*, 506 F.3d at 516 (sheriff who engaged in campaign of harassment not acting under color of law), *with Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995) (off-duty officer working as private security acted under color of law because he was wearing police uniform when he arrested patron). The inquiry "turn[s] largely on the nature of the specific acts the police officer performed" and may also involve whether the officer expressly or implicitly invoked his government authority when committing the alleged violation. *See Pickrel*, 45 F.3d at 1118-19.

**c.** **Private parties conspiring with public officials:** Instruction 7.03(b) is intended for cases in which the plaintiff contends that a private party acted under color of law by conspiring or acting jointly with a governmental actor. A private party acts under color of law if he conspires with a public official. *See, e.g., Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012) ("[T]o establish § 1983 liability through a conspiracy theory, "a plaintiff must demonstrate that: (1) a state official and a private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents."); *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (same).

**d.** **Other ways private parties may act under color of law:** A conspiracy is not the only way to prove that a private party acted under color of law, but other ways are not as easily defined. The general question is whether the defendant's conduct may be "fairly attributable to the state." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 199 (1988); *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). This "is a matter of normative judgment, and the criteria lack rigid simplicity." *Brentwood Acad. v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295-96 (2001). Because there is no single test, the Committee has not drafted a general-purpose instruction covering this point. *See generally Blum v. Yaretsky*, 457 U.S. 991 (1982) (considering government's control or encouragement of defendant's conduct); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 177 (1972) (same); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970) (state's compulsion of action by private party); *West v. Atkins*, 487 U.S. 42, 54 (1988) (defendant acting pursuant to contract with state to provide a function ordinarily provided by state); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 831-32 (7th Cir. 2009) ("ongoing relationship" with authorities to provide care to prisoners); *Evans v.*

*Newton*, 382 U.S. 296, 299, 301 (1966) (entwinement with governmental policies); *Brentwood Acad.*, 531 U.S. at 298 (same).

## 7.04  LIMITING INSTRUCTION CONCERNING EVIDENCE OF STATUTES, ADMINISTRATIVE RULES, REGULATIONS, AND POLICIES

You have heard evidence about whether Defendant's conduct [complied with/violated] [a state statute/administrative rule/locally imposed procedure or regulation].

You may consider this evidence in your deliberations [as to [*identify claim*]]. But remember that the issue is whether Defendant [*describe constitutional violation claimed, e.g., "falsely arrested Plaintiff," "used excessive force on Plaintiff"*], not whether a [statute/rule/procedure/ regulation] might have been [complied with / violated].

### Committee Comment

*Compare Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) ("[A]lthough violation of the prison's rule against public searches was not, by itself, a violation of the constitution, it was relevant evidence on which the jury could have relied to conclude that the searches were done with an intent to harass.") (citation omitted) *with Thompson v. City of Chicago*, 472 F.3d 444, 453-55 (7th Cir. 2006) (finding no abuse of discretion in exclusion of police department general order in determining reasonableness of police conduct for Fourth Amendment purposes).

Admissibility and consideration of internal rules and regulations on state law claims is a separate issue not addressed by this instruction. If the court determines that evidence of the sort covered by this instruction is admissible as to some claims but not others (such as a supplemental state law claim), an appropriate limiting instruction should be given and this instruction should be modified accordingly.

In addition, this instruction may be inappropriate or may require modification in a case in which a policy itself can give rise to liability, for example a municipal or supervisory liability case.

## 7.05  FOURTH AMENDMENT:
## FRAUDULENTLY OBTAINED WARRANT

Plaintiff claims that on [*date*], Defendant [*names*] fraudulently obtained a warrant to search [*location*]. To succeed on this claim, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.      The application for the search warrant [contained [a] materially false statement[s] of fact] [or] [omitted [a] material fact[s]]. A statement or omission of fact is material if, without the false statement or the omission, the application would have been insufficient to establish probable cause.

2.      [For a false statement of fact, Plaintiff must prove that] Defendant knowingly made the false statement[s]. A person knowingly makes a false statement if he is aware the statement is false or if he has serious doubts about the truth of the statement, but makes it anyway.

[For an omission of fact, Plaintiff must prove that] Defendant deliberately omitted [a] material fact[s] to mislead the judge issuing the warrant [or omitted [a] material fact[s] despite strongly suspecting that the judge would not issue the warrant if Defendant disclosed the omitted fact[s]]

If you find that Plaintiff proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

### Committee Comment

**a.**      **Authority.** *Franks v. Delaware*, 438 U.S. 154 (1978); *Michigan v. Summers*, 452 U.S. 692 (1981); *United States v. Williams*, 718 F.3d 644, 650 (7th Cir. 2013); *Harden v. Peck*, 686 F. Supp. 1254 (N.D. Ill. 1988).

**b.** **Probable cause.** For the definition of probable cause, *see* Instruction 7.08. The definition should be incorporated into this instruction or should accompany this instruction.

**c.** **False statements / omissions.** For a claim involving only alleged false statements or only alleged omissions, the court should use only the bracketed material in element 1 that applies to the particular type of claim and should not use the bracketed material in element 2. For a claim involving both alleged false statements and omissions, the bracketed material in element 2 should be used.

(2017 rev.)

## 7.06  FOURTH AMENDMENT:
## *TERRY* (INVESTIGATORY) STOP

Plaintiff claims that Defendant seized [him] [her] without reasonable suspicion. To succeed on this claim, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.      Defendant seized Plaintiff. A person is seized if his movement is restrained by the use of physical force or by a show of authority that the person obeys. [A show of authority occurs when a reasonable person would understand that he is not free to end the encounter.]

2.      Defendant did not have a reasonable suspicion that Plaintiff [had committed; was committing; was about to commit] a crime. Reasonable suspicion must be based on specific facts known to the officer, together with the reasonable inferences from those facts. A hunch does not constitute reasonable suspicion.

[You may have heard the phrase, "probable cause." Probable cause is not required for the type of seizure you are considering. You should consider only whether there was reasonable suspicion for the seizure as I have defined it in this instruction.]

3.      Defendant acted under color of law.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

### Committee Comment

**a. Authority:** *Terry v. Ohio*, 392 U.S. 1, 19, n. 16 (1968); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). *See also Florida v. Bostick*, 501 U.S. 429, 434 (1991); *California v. Hodari D.*, 499 U.S. 621, 628 (1991); *United States v. Snow*, 656 F.3d 498, 500 (7th Cir. 2011).

**b.      Undisputed elements:** The first and third elements should be eliminated if they are undisputed. If both of these elements are undisputed, only one element will remain, and the instruction's second sentence should read: "To succeed on this claim, Plaintiff must prove by a preponderance of the evidence that Defendant did not have reasonable suspicion to seize him/her." If the "color of law" element is contested, Instruction No. 7.03 should be given.

**c.      False arrest instruction:**  In most situations, the court will decide whether the seizure was sufficiently short or unintrusive to constitute a *Terry* stop. If the court finds the seizure went beyond a *Terry* stop, the court should give Instruction 7.07, for false arrest.

If there is a factual dispute as to whether an investigatory stop or an arrest took place, the court may need to give both sets of instructions and advise the jury to apply one or the other based on its resolution of the disputed facts. The Committee recommends an instruction using the following language:

> Plaintiff claims that Defendant's conduct violated his right to be free from unreasonable seizure. You must first determine whether Defendant made an investigatory stop of Plaintiff[,] or placed Plaintiff under arrest[, or neither].

> There is no set rule about the [length of time that a person may be detained] [the procedures that may be used] before the seizure is considered to be an arrest. Rather, you should consider [the length of the detention] [the procedures used to detain Plaintiff, taken in context] [any searches made] [the questions asked of Plaintiff] [the location of the detention] [whether Plaintiff was moved from the initial location of the detention to another location] [the officer's intent] [whether the defendant was diligent in pursuing the investigation or whether his conduct caused delay that unnecessarily lengthened the seizure] [the impression conveyed to Plaintiff].

> If you determine the Plaintiff was subjected to an investigatory stop, Plaintiff must show the Defendant seized him without reasonable suspicion.

> If you determine the Plaintiff was arrested, Plaintiff must show that Defendant did not have probable cause to arrest him.

*See Dunaway v. New York*, 442 U.S. 200, 212 (1979) (the pertinent facts used to determine it an arrest as opposed to an investigatory stop were "that (1) the defendant was taken from a private dwelling; (2) he was transported unwillingly to the police station; and (3) he there was subjected to custodial interrogation resulting in a confession."); *Florida v. Royer*, 460 U.S. 491, 500 (1983) (detention constituted an arrest where government agents stopped the defendant in an airport, seized his luggage, and took him to a small room used for questioning; plurality wrote that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."); *United States v. Place*, 462 U.S. 696, 709 (1983) ("[t]he length of the detention of respondent's luggage [90 minutes] alone precludes the conclusion that the seizure was reasonable in the absence of probable cause"; "[I]n assessing the effect of the length of the detention, we take into account whether the police diligently pursue their investigation."); *United States v. Obasa*, 15 F.3d 603, 608 (6th Cir. 1994) (*Miranda* warnings do not automatically convert *Terry* stop to an arrest but constitute evidence the nature of the detention has become more serious).

Two Seventh Circuit cases state that the officer's intent is a factor. *See United States v. Ellis*, 70 F. App'x. 884, 886 (7th Cir. 2003) ("There is no bright line between an arrest and an investigatory stop, but among the relevant factors are the 'officer's intent, impression conveyed, length of stop, questions asked, [and] search made.'"); *United States v. Serna-Barreto*, 842 F.2d 965, 967 (7th Cir. 1988) (noting that length of time is the most important consideration in determining whether restraint is an investigatory stop or a full-fledged arrest). The Committee has included this as a factor in the revised instruction. Because, however, Fourth Amendment issues are typically determined by an objective standard as opposed to a subjective one, there is reason to question whether it is appropriate to introduce a subjective factor into the analysis. Particular attention should be paid to this point in cases where a party wants to include this factor in the instructions to the jury.

In some cases, there may be a dispute over whether the encounter between the plaintiff and law enforcement amounted to a seizure at all, or a *Terry* stop, or an arrest. The instruction as drafted does not cover this type of case.

**d.    Probable cause not required.** The purpose of this language in the instruction is to make it clear for the jury that reasonable suspicion is a different standard from probable cause, a concept that jurors may have heard of outside of court. If probable cause is to be defined, use Instruction 7.08.

## 7.07  FOURTH AMENDMENT:
## FALSE ARREST – ELEMENTS

Plaintiff claims that Defendant falsely arrested him. To succeed on this claim, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.      Defendant arrested Plaintiff.

2.      Defendant did not have probable cause to arrest Plaintiff.

3.      Defendant acted under color of law.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

### Committee Comment

**a.      Undisputed elements:** The first and third elements should be eliminated if they are undisputed. If both of these elements are undisputed, only one element will remain, and the instruction's second sentence should read: "To succeed on this claim, Plaintiff must prove by a preponderance of the evidence that Defendant did not have probable cause to arrest him."

**b.      Disputed arrest:** If the parties dispute whether the defendant was arrested, it may be necessary for the court to define "arrest."

## 7.08  FOURTH AMENDMENT:
## FALSE ARREST - DEFINITION OF "PROBABLE CAUSE"

Probable cause exists for an arrest exists if, at the moment the arrest was made, a reasonable person in Defendant's position would have believed that Plaintiff [had committed] [was committing] a crime. In making this decision, you should consider what Defendant knew and the reasonably trustworthy information Defendant had received.

Probable cause requires more than just a suspicion. But it does not need to be based on evidence that would be sufficient to support a conviction, or even a showing that Defendant's belief was probably right. [The fact that Plaintiff was later acquitted of [*insert crime at issue*] does not by itself mean that there was no probable cause at the time of his arrest.]

[It is not necessary that Defendant had probable cause to arrest Plaintiff for [*insert crime at issue*], so long as Defendant had probable cause to arrest him for some criminal offense.] [It is not necessary that Defendant had probable cause to arrest Plaintiff for all of the crimes he was charged with, so long as Defendant had probable cause to arrest him for one of those crimes.]

### Committee Comment

**a.      Authority:** For general authority, *see Bringer v. United States*, 338 U.S. 160, 175-76 (1949); *Anderer v. Jones*, 385 F.3d 1043, 1049 (7th Cir. 2004); *Kelley v. Myler*, 149 F.3d 641,646 (7th Cir. 1998); *Hughes v. Meyer*, 880 F.2d 967, 969-70 (7th Cir. 1989).  *See also Smith v. Lamz*, 321 F.3d 680, 684 (7th Cir. 2003) ("The determination of probable cause is normally a mixed question of law and fact . . . but when 'what happened' questions are not at issue, the ultimate resolution of whether probable cause existed is a question of law . . . .").

**b.      Subsequent acquittal:** The bracketed language in the instruction's second paragraph should only be used in appropriate situations. For authority, *see Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979); *Humphrey v. Staszak*, 148 F.3d 719, 728 (7th Cir. 1998).

**c.      Probable cause for other crimes:** The bracketed language in the instruction's third paragraph should only be used in appropriate situations. *See Devenpeck v. Alford*, 125 S. Ct. 588 (2004); *Calusinski v. Kruger*, 24 F.3d 931, 935 (7th Cir. 1994) (probable cause for one of multiple charges); *Biddle v. Martin*, 992 F.2d 673, 676 (7th Cir. 1993) (probable cause for closely related charge).

**d.      Reasonable person:** The prior version of this instruction used the phrase "prudent person." Today's prevailing standard is "objectively reasonable police officer." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *Ornelas v. United States*, 517 U.S. 690, 696 (1996). The Committee

modified the instruction to make clear that the jury may consider a defendant's position as an officer when determining what the defendant "knew and what reasonably trustworthy information [he] had received" at the time of an arrest.

    **e.**    **Instruction regarding elements of underlying crime:** As a general rule, when giving a false arrest instruction, the court should also instruct the jury regarding the definition or elements of the crime(s) for which the defendant claims to have had probable cause.

## 7.09 FOURTH AMENDMENT AND FOURTEENTH AMENDMENT : EXCESSIVE FORCE AGAINST ARRESTEE OR DETAINEE- ELEMENTS

Plaintiff claims that Defendant used excessive force against him. To succeed on this claim, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.      Defendant used unreasonable force against Plaintiff.

[2.      Defendant acted under color of law.]

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If on the other hand, you find that Plaintiff did not prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

### Committee Comment

**a.      Unreasonable force:** For authority regarding the "unreasonable force" element of the claim, *see Kingsley v. Hendrickson*, --- U.S. ---, 135 S. Ct. 2466 (2015); *Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985); *Deering v. Reich*, 183 F.3d 645 (7th Cir. 1999). This instruction applies to excessive force claims under the Fourteenth Amendment and the Fourth Amendment, which typically means a pretrial detainee, an arrestee or other person encountered by the police who has not yet appeared in court. Instruction 7.18 applies to an excessive force claim involving a convicted prisoner.

If the defendant contends that the application of force was accidental, the court may wish to break the first element into two:

1.      Defendant intentionally used force against Plaintiff;

2.      The force Defendant used was unreasonable;

This instruction needs to be modified in a case in which the force was not directed against the plaintiff.

In *Kingsley*, 135 U.S. at 2474, the Supreme Court stated that "we have limited liability for excessive force to situations in which the use of force was the result of an intentional and knowing act (though we leave open the possibility of including a 'reckless' act as well)." Because neither the Supreme Court nor the Seventh Circuit has applied a recklessness standard to date, the Committee

151      (2017 rev.)

has chosen to keep the word "intentionally" in the instruction, but courts should monitor the case law for potential changes.

      **b.**      **Harm to plaintiff not required:** *McAllister v. Price*, 615 F.3d 877, 882 (7th Cir. 2010) ("Injury is not an element of an excessive-force claim; rather, it is evidence of the degree of force imposed and the reasonableness of that force.")

      **c.**      **Color of law:**  This element should be eliminated if "color of law" is not in dispute. If the element is contested, Instruction No. 7.03 should be given.

## 7.10  FOURTH AMENDMENT: EXCESSIVE FORCE AGAINST ARRESTEE- DEFINITION OF "UNREASONABLE"

In performing his job, an officer can use force that is reasonably necessary under the circumstances.

In deciding whether Defendant used unreasonable force, you should consider all of the circumstances. [Circumstances you may consider include the need for the use of force, the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any efforts made by the defendant to temper or limit the amount of force, the severity of the crime at issue, the threat reasonably perceived by the officer(s), and whether the plaintiff was actively resisting arrest or was attempting to evade arrest by fleeing, but you are not limited to these circumstances.]

[An officer may use deadly force when a reasonable officer, under the same circumstances, would believe that the suspect's actions placed him or others in the immediate vicinity in imminent danger of death or serious bodily harm. [It is not necessary that this danger actually existed.] [An officer is not required to use all practical alternatives to avoid a situation where deadly force is justified.]]

You must decide whether Defendant's use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances that Defendant faced. You must make this decision based on what the officer knew at the time of the use of force, not based on matters learned after the use of force. In deciding whether Defendant's use of force was unreasonable, you must not consider whether Defendant's intentions were good or bad.

### Committee Comment

**a.    Authority:** *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985); *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519–20 (7th Cir. 2012) ("An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest. . . . Th[e] constitutional inquiry is objective and does not take into account the motives or intent of the individual officers."); *Florek v. Vill. of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011) ("[T]he reasonableness of a seizure depends on the totality of the circumstances."); *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005) ("reasonableness" of a particular use of force is judged from the perspective of a reasonable officer on the scene in light of the facts and circumstances). This Fourth Amendment instruction does not apply to Due Process or Eighth Amendment cases.

**b.    Factors:** Some judges prefer to include the factors from *Graham v. Connor*, 490 U.S. at 396 (severity of crime, reasonable perception of threat, active resistance or attempt to evade

arrest); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010) (relationship between need for force and amount used, severity of crime, active resistance, perception of threat), and *McAllister v. Price*, 615 F.3d 877, 883–84 (7th Cir. 2010) (extent of injury as showing degree of force used, perception of threat, severity of crime),  while others see a list as limiting. Accordingly, the Committee has bracketed the commonly used list of factors.

    **c.**    **Deadly force:** The bracketed paragraph applies only in cases involving an officer's use of deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985); *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988). With regard to the final (bracketed) sentence of this paragraph, *see Deering v. Reich*, 183 F.3d 645, 652-653 (7th Cir. 1999); *Plakas v. Drinski*, 19 F.3d 1143, 1148 (7th Cir. 1994). The fact that a particularized instruction is proposed for deadly force cases does not preclude the consideration or giving of a particularized instruction in other types of cases, for example, those involving a fleeting felon or an officer's claim of self-defense.

    **d.**    **Claim of justified resistance by plaintiff:**  In a case in which the plaintiff contends that he was entitled to resist the application of force, this instruction may require modification.

# 7.11 FOURTH AMENDMENT: MEDICAL CARE FOR ARRESTEE

Plaintiff claims that he [was denied] [received inadequate] medical care while in custody. To succeed on this claim, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.      Plaintiff was under arrest.

2.      Plaintiff needed medical care.

3.      Defendant [denied; failed to take action to provide] medical care to Plaintiff.

4.      Defendant's [action; failure to take action] was unreasonable. You must make this decision based on the perspective of a reasonable officer facing the same circumstances that Defendant faced, not on Defendant's intentions or subjective beliefs. You should consider all of the circumstances. In considering all the circumstances, you may consider whether Defendant was aware of Plaintiff's medical need, the seriousness of Plaintiff's medical need, the nature of any necessary medical treatment, and any administrative and investigatory needs of the police shown by the evidence.

5.       Plaintiff was harmed as a result.

6.      Defendant acted under color of law.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

## Committee Comment

**a.      Authority:** The Fourth Amendment objective reasonableness standard governs medical care incident to an arrest. *Florek v. Vill. of Mundelein*, 649 F.3d 594, 598 (7th Cir. 2011). The Fourteenth Amendment deliberate-indifference standard (Instruction 7.17) applies to medical care for pretrial detainees. *Minix v. Canarecci*, 597 F.3d 824, 830-31 (7th Cir. 2010). In *Ortiz v. City of Chicago*, 656 F.3d 523 (7th Cir. 2011), the Seventh Circuit quoted *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006), for the proposition that "Our cases thus establish that the protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction." *Ortiz*,

656 F.3d at 530. Elsewhere, however, the court has stated that it has "not yet had occasion to define precisely the contours of [the] temporal limitations" concerning where the Fourth Amendment stops and due process starts. *Forrest v. Prine*, 620 F.3d 739, 743 (7th Cir. 2010) (Fourteenth Amendment standard applied to arrestee during booking at county jail). Resolution of this legal question will dictate whether to give this Instruction or Instruction 7.17.

    **b. Arrests vs. *Terry* stops.** The Committee has included an element that the plaintiff was under arrest because the Seventh Circuit has stated in a number of cases that the duty to provide medical care is triggered upon arrest. *E.g.*, *Sallenger v. City of Springfield*, 630 F.3d 499, 503 -504 (7th Cir. 2010) ("The Fourth Amendment's objective reasonableness standard applies; the Estate's claim pertains to the medical needs of a person under arrest who has not yet had a judicial determination of probable cause."); *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir.2006) ("Our cases thus establish that the protections of the Fourth Amendment apply at arrest and through the Gerstein probable cause hearing."); *Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir.1992) ("[T]he Fourth Amendment governs the period of confinement between arrest without a warrant and the [probable cause determination]."). However, the court has not decided whether the same duty applies in the context of other seizures, such as *Terry* stops. *But see Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 595 (7th Cir. 1997) (court "assum[ed] that the police officers had a duty to provide medical attention (and not to cut off medical aid) when they seized Mr. Phillips"). Accordingly, trial courts will have to make their own determination regarding whether the first element may be modified to encompass seizures that do not qualify as an arrest. *See, e.g., Sallenger v. City of Springfield*, 630 F.3d 499, 503 -504 (7th Cir. 2010) ("The Fourth Amendment's objective reasonableness standard applies; the Estate's claim pertains to the medical needs of a person under arrest who has not yet had a judicial determination of probable cause.")

    **c.    Defendant's intent.** The Committee did not include a requirement that the defendant act intentionally or knowingly in failing to provide medical care. Fourth Amendment questions are typically governed by an objective standard as opposed to a subjective one. Concern regarding the absence of an intent element was expressed by some Committee members on the ground that intent is required for any sort of claim of a constitutional violation. The view of the majority of the Committee was that any intent element is satisfied if the plaintiff shows that the defendant intended to seize him. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control. . . .[T]he detention or taking itself must be willful."). The instruction addresses the intent issue by requiring the plaintiff to show that he was under arrest. However, in Fourth Amendment cases, the plaintiff is not required to prove that the defendant intended to harm him. *See, e.g., Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 596 (7th Cir. 1997) ("[W]e have remarked before that the Fourth Amendment and the Due Process Clause impose similar duties in that both prohibit excessive force, though the duties apply at different times in the adversarial process and though the respective standards of liability may vary, primarily because the Due Process Clause contains a mental component.").

    **d.    Reasonableness of defendant's conduct:** The four factors proposed are from *Williams v. Rodriguez*, 509 F.3d 392 (7th Cir. 2007), and more recently *Ortiz v. City of Chicago*, 656 F.3d 523 (7th Cir. 2011). The second factor, seriousness of the medical need, operates on a "sliding scale" with the third factor, scope of requested treatment. "The severity of the medical condition

under this standard need not, on its own, rise to the level of objective seriousness required under the Eighth and Fourteenth Amendments. Instead, the Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with the third factor—the scope of the requested treatment." *Williams*, 509 F.3d at 403.

      **e.**    **Color of law:** The sixth element should be eliminated if "color of law" is not in dispute. If the element is contested, Instruction No. 7.03 should be given.

## 7.12  FOURTH AMENDMENT:
## EXCESSIVE DETENTION (LESS THAN 48 HOURS)

Plaintiff claims that Defendant [detained Plaintiff; caused Plaintiff to be detained] for an unreasonable length of time following Plaintiff's arrest. To succeed on this claim, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.      Plaintiff was arrested without an arrest warrant.

2.      Defendant delayed or caused to be delayed [the release of Plaintiff] [the judicial hearing to determine whether there was probable cause to arrest Plaintiff].

3.      The delay was unreasonable. In deciding this, you should consider both the length of the delay and the reason(s) why [the release] [the judicial hearing] was delayed.

[A delay for the purpose of conducting further investigation of the crime(s) for which Plaintiff was arrested is reasonable so long as probable cause existed to arrest Plaintiff.]

[A delay [to investigate crimes other than the one(s) for which Plaintiff was arrested] [motivated by ill will against the arrested person] [for delay's sake]] is not a reasonable delay.]

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

### Committee Comment

**a.      Authority:**  *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991); *Ray v. City of Chicago*, 629 F.3d 660, 663–64 (7th Cir. 2011) ("[D]etention times ranging from three to fourteen and one-half hours were not constitutionally unreasonable absent any evidence that the delay in releasing the arrested individuals was motivated by an improper purpose."); *Portis v. Chicago*, 613 F.3d 702, 705 (7th Cir. 2010); *Gramenos v. Jewel Cos.*, 797 F.2d 432 (7th Cir. 1986).

**b.      Delay longer than 48 hours:**  In cases where the Plaintiff's probable cause hearing was delayed beyond 48 hours and the Plaintiff contends that the pre-48 hours period was unreasonable, then this instruction should be used in conjunction with Instruction 7.13 (concerning

delays past 48 hours), and the court should explain that this instruction governs only the period of time prior to the 48-hour mark.

      **c.**    **Delays to conduct further investigation.** *McLaughlin* says that an example of unreasonable delay is a delay "for the purpose of gathering additional evidence to justify the arrest . . . ." *McLaughlin*, 500 U.S. at 56. But where police have already developed probable cause for an arrest, it is not unreasonable to delay the probable cause hearing in order to conduct additional investigation to bolster the charges against the arrestee, such as by placing the arrestee in a line-up. *United States v. Daniels*, 64 F.3d 311, 314 (7th Cir. 1995) (not unreasonable to delay hearing to allow witnesses to the crime to view a line-up). In some cases it may be disputed whether probable cause existed and thus whether delay was to gather evidence to establish probable cause or to further investigate a matter on which there was already probable cause. In such a case, the instruction may need refinement to require the jury to decide whether there was probable cause in the first instance.

      Delay to investigate a different set of crimes than the one for which the plaintiff was arrested is unreasonable. *Willis v. City of Chicago*, 999 F.2d 284 (7th Cir. 1993) (where prosecutor had approved charges for sexual assault, it was unreasonable to delay the probable cause hearing to place plaintiff in line-ups for other sexual assaults). Merely conducting an investigation of other crimes during a period of delay is not sufficient to render the delay unreasonable; there must be evidence from which a jury could find that the officer's purpose in delaying the hearing was to conduct that separate investigation. *See United States v. Sholola*, 124 F.3d 803, 820 (7th Cir. 1997) (differentiating *Willis* because there was no evidence that the officer knew that a probable cause hearing was available sooner while he investigated the other set of crimes).

# 7.13 FOURTH AMENDMENT:
# EXCESSIVE DETENTION (AFTER 48 HOURS)

Plaintiff claims that Defendant [detained Plaintiff; caused Plaintiff to be detained] for more than 48 hours without any judicial hearing to determine whether there was probable cause to arrest Plaintiff. To succeed on this claim, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.      Plaintiff was arrested without an arrest warrant.

2.      More than 48 hours passed before Plaintiff [was released] [a judicial hearing was held to determine whether there was probable cause to arrest Plaintiff].

3.      Defendant caused this delay.

If you find that Plaintiff has not proved each of these things by a preponderance of the evidence then you must find for the Defendant.

If you find that Plaintiff has proved each of these things, then you must go on to consider whether Defendant has proved by a preponderance of the evidence that Plaintiff's [release] [judicial hearing to determine probable cause] was delayed for longer than 48 hours as a result of [*describe the emergency or extraordinary circumstance*].

If you find that Defendant has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Plaintiff.  If you find that Defendant has proved this by a preponderance of the evidence, then you must decide for the Defendant.

## Committee Comment

a.      **Authority**: *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991); *Lopez v. City of Chicago*, 464 F.3d 711, 722 (7th Cir. 2006).

b.      **Emergency defense:** The court should decide as a legal matter whether the defendant's justification suffices as a "bona fide emergency or extraordinary circumstance" under *McLaughlin* and should instruct the jury on the justification only if it suffices as a legal matter. For example, weekends and holidays do not constitute extraordinary circumstances as a matter of law. *Id.*; *see also Lopez*, 464 F.3d at 722 (suspect's lying to police about his identity was not an extraordinary circumstance). If the defendant does not establish a basis in the evidence for the jury to find a bona fide emergency or extraordinary circumstance, the defendant's burden portion of the instruction should not be given.

c.    **Delay shorter than 48 hours:**    In a case where a plaintiff challenges the reasonableness of both the pre-48 hour and post-48 hour portions of a detention, the court should give both this instruction and Instruction 7.12 and apprise the jury that each standard governs for the respective period of time. The court should consider giving the following prefatory instruction:

In this case, Plaintiff claims that Defendant unreasonably delayed his detention for [*state the number of hours*] following arrest. The law treats delays during the first 48 hours of detention differently than delays beyond 48 hours. I will now instruct you on the requirements for each of these time periods.

## 7.14 FAIR TRIAL: CONCEALMENT OF EXCULPATORY EVIDENCE / FABRICATION OF EVIDENCE

Plaintiff claims that Defendant violated his right to a fair trial by [failing to disclose exculpatory and/or impeachment evidence [*optional - identify the allegedly undisclosed evidence*] that was material to Plaintiff's defense in the criminal case] [and/or] [by fabricating evidence that was used against Plaintiff in the criminal case]. To succeed on this claim, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.     Defendant [knowingly concealed [from the prosecutor] exculpatory and/or impeachment evidence, and the evidence was not otherwise available to Plaintiff, through the exercise of reasonable diligence, to make use of at his criminal trial] [and/or] [knowingly fabricated evidence that was introduced against Plaintiff [at his criminal trial] [in his criminal case].

2.     The evidence was material.

3.     Plaintiff was damaged as a result.

"Exculpatory evidence" is evidence that tends to show that the accused is not guilty of the crime.

"Impeachment evidence" is evidence that would have made the [judge] [jury] at the criminal trial less likely to believe a witness who testified against the accused at the criminal trial.

[Exculpatory; impeachment; fabricated] evidence is "material" if there is a reasonable likelihood that the result in the criminal proceeding would have been different if the evidence had been disclosed.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

**Committee Comment**

**a.		Authority.** *Kyles v. Whitley*, 514 U.S. 419 (1995); *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Brady v. Maryland*, 373 U.S. 83 (1963); *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001); *United States v. Agurs*, 427 U.S. 97, 103 (1976); *Braun v. Powell*, 227 F.3d 908, 920 & n.11 (7th Cir. 2000).

**b.		Identification of allegedly undisclosed evidence.** The preamble to this instruction contains a bracketed phrase that may be used, in an appropriate case, to list the allegedly undisclosed evidence. This is marked as optional because such itemization in an instruction is not required. *See Jimenez v. City of Chicago*, 732 F.3d 710, 717 (7th Cir. 2013).

**c.		Concealment of exculpatory / impeachment evidence.** A police officer, the most typical type of defendant in a due process/fair trial case, is not responsible for turning over evidence directly to the defense in a criminal case. Rather, the officer's constitutional obligation is to provide the exculpatory information to the prosecutor, who is responsible for turning it over to the defense. Accordingly, a police officer may be held liable for a due process violation for concealing material exculpatory or impeachment evidence from the prosecutor, thereby preventing the defense from learning of the evidence. *See, e.g., Newsome*, 256 F.3d at 752; *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008). For this reason, in most cases, the bracketed language "from the prosecutor" in element one of this instruction should be used. There may be situations, however, in which the police officer is claimed to have acted in concert with a prosecutor to conceal exculpatory or impeachment evidence. Even though the prosecutor is typically immune from liability in this situation, a non-immune actor who conspires with an immune actor is not shielded by the latter actor's immunity. *See, e.g., Dennis v. Sparks*, 449 U.S. 24 (1980) (conspiracy with judge). In those situations, it may be inappropriate to use the bracketed "from the prosecutor" language, and the instruction may need to be modified in other ways.

**d.		Fabrication of evidence.** *Whitlock v. Brueggemann*, 682 F.3d 567, 582-85 (7th Cir. 2012), recognized the viability of a claim based on fabrication of material evidence. *See also Petty v. City of Chicago*, 745 F.3d 416, 422-23 (7th Cir. 2014) (distinguishing between a claim of *coerced* false evidence, which is not actionable, and a claim of *fabricated* false evidence, which is actionable).

The claim requires proof that the fabrication caused plaintiff to suffer a deprivation of liberty. *Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir.2012); *Saunders–El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015), reh'g denied (Feb. 26, 2015). The Seventh Circuit has not completely fleshed out the contours of what deprivations of liberty will suffice. *Whitlock*, 682 F. 3d at 580 ("We have consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way"). It is clear that incarceration following a conviction constitutes a deprivation of liberty. It is likewise clear that merely appearing for court proceedings, including a trial, does not suffice. *Cairel v. Alderden*, No. 14-1711, 2016 WL 2641836, at *5 (7th Cir. May 5, 2016) (no deprivation of liberty where plaintiff were quickly released after arrest and never tried); *Saunders–El*, 778 F.3d at 561; *Alexander*, 692 F.3d at 557 n. 2 (no evidence fabrication-based due process claim where plaintiff was released on bond and

acquitted at trial). The Seventh Circuit has suggested that pretrial incarceration would constitute a deprivation of liberty. *Fields v. Wharrie*, 740 F.3d 1107, 1112 (7th Cir. 2014).

The law in this area is still in flux, however, and courts are advised to check for developments post-dating these instructions.

**e.        Materiality standard.** When the prosecution makes knowing use of perjured testimony, the Supreme Court has phrased the materiality standard somewhat differently than it has in the *Brady* suppression line of cases. For fabrication, the Court requires a showing that there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs*, 427 U.S. at 103 (citing *Napue v. Illinois*, 360 U.S. 264, 271 (1959). While the standard under the *Brady* line is "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Arguably the fabrication standard of materiality is lower than for suppression of evidence. Complicating the picture, the Supreme Court recently used the fabrication formulation of materiality in a suppression case. *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016) ("Evidence qualifies as material when there is 'any reasonable likelihood' it could have 'affected the judgment of the jury.'") *citing Giglio v. United States*, 405 U.S. 150, 154 (1972) (*quoting Napue v. Illinois*, 360 U.S. 264, 271 (1959)). The Committee has chosen to use the *Bagley* materiality formulation because *Bagley* expressly considers the materiality standard for suppression of evidence while *Wearry* does not, and the difference between the formulations for suppression and fabrication is arguably a matter of nuance anyway. Nevertheless, because the law in this area is still in development, the court should examine this point further before instructing the jury.

**f.        Plaintiff acquitted in the criminal trial.** The Seventh Circuit has not definitively decided whether a person who was acquitted in the criminal case can maintain a *Brady*-related due process claim. *Alexander v. McKinney*, 692 F.3d 553, 556 (7th Cir. 2012) (explaining the state of the law in this circuit); *Mosley v. City of Chicago*, 614 F.3d 391, 397-99 (7th Cir. 2010) (assessing whether prosecutor's decision to go to trial would have been altered by the withheld evidence); *Parish v. City of Chicago*, 594 F.3d 551, 554 (7th Cir. 2009); *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 644 (7th Cir. 2008) (same); *Carvajal*, 542 F.3d at 566–67 (recognizing need for prejudice from the non-disclosure generally).

**g.        Denial of fair trial because of suggestive identification procedure:** *Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006), indicates that a claim that a suggestive identification procedure tainted the plaintiff's criminal trial is cognizable under § 1983. *Id.* at 555 (citing *Hensley v. Carey*, 818 F.2d 646, 649 (7th Cir. 1987)). *See also Phillips v. Allen*, 668 F.3d 912, 917 (7th Cir. 2012). Because the law in this Circuit is undeveloped on this point, the Committee has not prepared an instruction specific to this issue.

### 7.15 EIGHTH AND FOURTEENTH AMENDMENTS: JAIL/PRISON CONDITIONS OF CONFINEMENT – ELEMENTS

To succeed on his claim challenging the conditions of his confinement, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.  [*Describe allegedly unsafe condition*] subjected Plaintiff to a strong likelihood of serious harm. [A mere possibility of harm is not a strong likelihood.]

In assessing the seriousness of harm, you should consider the severity of the condition[s] and the length of time Plaintiff was exposed to [it] [them].

2.  Defendant was aware of this strong likelihood that Plaintiff would be seriously harmed [or strongly suspected facts showing a strong likelihood that Plaintiff would be seriously harmed but refused to confirm whether these facts were true].

[You may infer this from the fact that the risk was obvious.]

3.  Defendant consciously failed to take reasonable measures to prevent [additional] harm from occurring.
[In deciding this, you may consider how serious the potential harm to Plaintiff was, how difficult it would have been for Defendant to take [additional] corrective action, and whether Defendant had legitimate reasons related to safety or security for failing to take [additional] action.]

4.  Plaintiff [would not have been harmed] [would have suffered less harm] if Defendant had taken reasonable measures.

[5.  Defendant acted under color of law.]

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

#### Committee Comment

**a.  Scope of instruction:**  This instruction applies to claims brought by a convicted prisoner under the Eighth Amendment or by a pretrial detainee or civilly committed person under

the Fourteenth Amendment. *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012) ("[C]ourts still look to Eighth Amendment case law in addressing the claims of pretrial detainees, given that the … Supreme Court has not yet determined just how much additional protection the Fourteenth Amendment gives to pretrial detainees.") (internal citations omitted); *Rosario v. Brawn*, 670 F.3d 816, 820 (7th Cir. 2012). *See also, e.g., Thomas v. Cook Cnty. Sheriff'sDep't*, 588 F.3d 445, 452 n.1 (7th Cir. 2009); *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). *But cf. Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003) (pretrial detainee is entitled "to *at least* the same protection against deliberate indifference to his basic needs as is available to convicted prisoners under the Eighth Amendment") (emphasis added).

This instruction does not apply to arrestees who have not received a judicial probable cause determination. *Williams*, 509 F.3d at 403 ("Claims regarding conditions of confinement for pretrial detainees . . . who have not yet had a judicial determination of probable cause (a *Gerstein* hearing), are instead governed by the Fourth Amendment and its objectively unreasonable standard."). In those cases, the court should apply Instruction 7.11.

**b.     Claims involving multiple adverse conditions:**  Conditions that have a "mutually enforcing effect" on "a single, identifiable human need"—such as food or warmth—may be considered in combination. Conditions that do not have such an effect may have to be considered separately. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006).

Separate instructions are available for claims involving prisoner assaults (Instruction 7.16), medical care (Instruction 7.17) and self-harm (Instruction 7.19).

**c.     Substantial risk of serious harm:**  This instruction applies to the most common type of condition of confinement claim, involving a substantial risk of serious harm. However, neither the Supreme Court nor the Seventh Circuit has held that this standard applies in every case involving conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) ("No static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual."). In some cases, the Supreme Court and the Seventh Circuit have described the objective component as a deprivation of "the minimal civilized measure of life's necessities" or, more simply "the serious deprivation of basic human needs," without necessarily equating that with a "substantial risk of serious harm." *E.g.*, *Rhodes*, 452 U.S. at 347; *Rice*, 675 F.3d at 664; *Vinning-El*, 482 F.3d at 924; *Gillis*, 468 F.3d at 494. *See also Delaney*, 256 F.3d at 685 ("[T]here may be some interplay between the severity of the deprivation alleged and the required showing of injury.").

Regardless which language is used, the law is clear that "restrictive" and "uncomfortable" conditions are not sufficient to prove an Eighth Amendment violation, *Rhodes*, 452 U.S. at 347; *Thomas v. Ramos*, 130 F.3d 754, 763 (7th Cir. 1997), and that the fact finder must consider both the duration and severity of the conditions. *Thomas v. State of Illinois*, 697 F.3d 612, 614 (7th Cir. 2012); *Delaney*, 256 F.3d at 684; *Tesch v. Cnty. of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998); *Dixon*, 114 F.3d at 643.

**d.     Strong likelihood:**  *See, e.g., Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 990 (7th Cir. 1998).  The Committee has used the term "strong likelihood" as opposed to "substantial risk" because it is more likely to be understood by a lay jury.

**e.** **Deliberate Indifference**: Elements two and three encompass the concept of what the case law refers to as "deliberate indifference." The Committee has not included that term in the instructions because most jurors will not be familiar with it, and the term can be described using ordinary language.

**f.** **Actual knowledge required:** It is not enough for the plaintiff to prove that the defendant could have known or should have known about the risk. *Farmer v. Brennan*, 511 U.S. 825, 837 & 843 n.8 (1994). However, circumstantial evidence can establish knowledge, including evidence showing that the risk was obvious. *Id.* at 842. In addition, the defendant may "not escape liability if the evidence show[s] that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 843 n.8; *see also McGill v. Duckworth*, 944 F.2d 344, 351 (7th Cir. 1991) ("Being an ostrich involves a level of knowledge sufficient for conviction of crimes requiring specific intent. Because it is sufficient for criminal liability it is sufficient for liability under the eighth amendment's subjective standard."). *See also, e.g., Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

**g.** **Consciously failed to take reasonable measures:** The previous version of this instruction identified this element as "Defendant consciously disregarded this risk *by* failing to take reasonable measures." SEVENTH CIRCUIT FEDERAL CIVIL JURY INSTRUCTIONS § 7.10 (2005) (emphasis added). The Committee has reworded the element to make it clear that "failing to take reasonable measures" is not a definition of "conscious disregard." Rather, the plaintiff must show both that the defendant acted culpably *and* that the defendant knew his action or inaction was culpable. *Farmer*, 511 U.S. at 842 (plaintiff must show "that the official acted or failed to act despite his knowledge of a substantial risk of serious harm"); *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (plaintiff must show *"a conscious, culpable refusal to prevent the harm"*); *Rosario v. Brawn*, 670 F.3d 816, 821-22 (7th Cir. 2012) ("the standard …requires a showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.").

**h.** **Relevance of prisoner's conduct or other security concerns:** Even if defendant knows that the prisoner is being subjected to a risk of harm, the defendant's refusal to act may be reasonable if the prisoner's own conduct is contributing to that risk or if there are competing security concerns. *See, e.g.*, *Gruenberg v. Gempeler*, 697 F.3d 573, 579-80 (7th Cir. 2012); *Freeman v. Berge*, 441 F.3d 543, 547 (7th Cir. 2006); *Scarver v. Litscher*, 434 F.3d 972, 976-77 (7th Cir. 2006); *Pearson v. Ramos*, 237 F.3d 881 (7th Cir. 2001). However, there may be limitations to this rule if the risk of harm is serious enough or if the plaintiff's conduct was the result of a mental health condition. *See Rice*, 675 F.3d at 665; *Freeman*, 441 F.3d at 547.

**i.** **Harm:** The general rule is that the plaintiff must prove that he was harmed by the defendant's conduct in order to prove liability. *Roe v. Elyea*, 631 F.3d 843, 863-64 (7th Cir. 2011). However, there is a difference between proving harm and proving damages; the latter is not required to establish liability. *Cotts v. Osafo*, 692 F.3d 564, 569 (7th Cir. 2012). Exactly what constitutes "harm" is not always clear. *See, e.g., Turner v. Pollard*, 564 F. App'x 234, 239 (7th Cir. 2014) (indicating that nominal and punitive damages may be available "due to hazard, or probabilistic

harm even in the absence of physical or psychological harm" or where the plaintiff is "expose[d]. . . to a substantial risk of a serious physical injury"). In a case where there is a dispute over whether there is a sufficient degree of harm to establish a claim, careful attention should be paid to the wording of element 4 of this instruction.

     **j.**     **Color of law:** The fifth element should be eliminated if the "color of law" issue is not in dispute. If the element is contested, Instruction No. 7.03 should be given.

## 7.16 EIGHTH AND FOURTEENTH AMENDMENTS:
## FAILURE TO PROTECT – ELEMENTS

To succeed on his claim regarding failure to protect him from harm by [an]other [prisoner] [detainee], Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1. There was a strong likelihood that Plaintiff would be seriously harmed as the result of an assault. [A mere possibility of harm is not a strong likelihood.]

2. Defendant was aware of this strong likelihood that [Plaintiff would be seriously harmed as the result of an assault] [another prisoner/detainee would seriously harm a prisoner/ detainee in Plaintiff's situation] [or strongly suspected facts showing a strong likelihood that Plaintiff would be seriously harmed but refused to confirm whether these facts were true].
[You may infer this from the fact that the risk was obvious.]

3. Defendant consciously failed to take reasonable measures to prevent the assault. [In deciding this, you may consider how serious the potential harm to Plaintiff was, how difficult it would have been for Defendant to take corrective action, and whether Defendant had legitimate reasons related to safety or security for failing to take [additional] corrective action.]

4. [Plaintiff] [would not have been harmed] [would have suffered less harm] if Defendant had taken reasonable measures.

[5. Defendant acted under color of law.]

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

### Committee Comment

a. **Scope of instruction:** This instruction may be used for claims brought under the Eighth Amendment by convicted prisoners or claims brought under the due process clause of the Fourteenth Amendment by pretrial detainees or civilly committed patients. *See* Instruction 7.15, comment a.

(2017 rev.)

b. **Substantial risk:** *See* Instruction 7.15, comment c.

c. **Deliberate indifference:** Elements two and three encompass the concept of what the case law refers to as "deliberate indifference." The Committee has not included that term in the instructions because most jurors will not be familiar with it, and it can be described using ordinary language.

d. **Actual knowledge required:** For cases discussing the actual knowledge requirement as a general matter, *see* Instruction 7.15, comment f. In the context of a failure to protect claim, the plaintiff must show that the defendant had knowledge of a specific threat. *See, e.g.*, *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008); *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008); *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008); *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002). However, "deliberate indifference can be predicated upon knowledge of a victim's particular vulnerability even if the identity of the ultimate assailant is not known in advance of attack), or, in the alternative, an assailant's predatory nature even if the identity of the ultimate victim is not known in advance of attack." *Brown v. Budz*, 398 F.3d 904, 915-16 (7th Cir. 2005).

The Committee has included alternative language for the second element for cases in which the plaintiff is claiming that the defendant knew that prisoners in plaintiff's situation were at risk, (e.g., defendant knew that a particular prisoner had a history of assaulting his cell mates , but the defendant did not know that the plaintiff was the cell mate). In those cases, the court may wish to describe the situation as part of the second element. (For example, "Defendant was aware of a substantial risk that [other prisoner's name] would seriously harm his cell mate.")

e. **Consciously failed to take reasonable measures:** For an explanation of this element as a general matter, *see* Instruction 7.15, comment g.

f. **Color of law:** The fifth element should be eliminated if the "color of law" issue is not in dispute. If the element is contested, Instruction No. 7.03 should be given.

g. **Harm:** *See* Instruction 7.15, comment i.

h. **Plaintiff as the Aggressor:** In *Santiago v. Walls*, 599 F.3d 749, 759 (7th Cir. 2010), the court held that a prisoner may maintain a claim for failure to protect even if he started the fight, at least in cases in which the Defendant was trying to provoke a fight or knew that other officers were doing so.

### 7.17 EIGHTH AND FOURTEENTH AMENDMENTS: FAILURE TO PROVIDE MEDICAL ATTENTION – ELEMENTS

To succeed on his claim of failure to provide medical [care; attention], Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.     Plaintiff had a serious medical need. A serious medical need is a condition that a doctor says requires treatment or something so obvious that even someone who is not a doctor would recognize that it requires treatment.

2.     Defendant was aware that Plaintiff had a serious medical need [or strongly suspected facts showing a strong likelihood that Plaintiff had a seriously medical need but refused to confirm whether these facts were true].

[You may infer this from the fact that the need was obvious.]

3.     Defendant consciously failed to take reasonable measures to provide treatment for the serious medical need.

[Plaintiff does not have to show that Defendant ignored him or provided no care. If Defendant provided some care, Plaintiff must show that Defendant knew[his] [her] actions likely would be ineffective or that Defendant's actions were clearly inappropriate.]

[In deciding whether Defendant failed to take reasonable measures, you may consider the seriousness of Plaintiff's medical need, how difficult it would have been for Defendant to provide treatment, and whether Defendant had legitimate reasons related to safety or security for failing to provide treatment.]

[*Optional instruction in case involving a defendant who is a medical professional*: You may infer that Defendant consciously failed to take reasonable measures if Defendant's [action] [failure to act] was such a substantial departure from accepted professional judgment, practice or standards that it showed a complete abandonment of medical judgment.]

[*Optional instruction in case involving a defendant who claims to have relied on the judgment of a medical professional*. If Defendant relied on the opinion of a medical professional, Defendant did not consciously fail to take reasonable measures unless it was obvious that following the medical professional's opinion would cause harm to Plaintiff.]

4.     As a result of Defendant's [actions; inaction], Plaintiff was [harmed; subjected to a significant risk of harm]. [Plaintiff may prove that Defendant harmed him with evidence

[that his condition worsened as a result of Defendant's conduct] [or] [that he suffered prolonged, unnecessary pain].]

[5.    Defendant acted under color of law.]

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

**Committee Comment**

**a.    Authority and scope of instruction**: *Estelle v. Gamble*, 429 U.S. 97 (1976); *Greeno v. Daley*, 414 F.3d 645, 653-54 (7th Cir. 2005). Though *Estelle* is an Eighth Amendment case involving a convicted prisoner, the same standard applies in Fourteenth Amendment cases involving pretrial detainees and civilly committed patients. *See* Instruction 7.15, comment a. *Pittman ex rel. Hamilton v. Cnty. of Madison¸* 746 F.3d 766, 775 (7th Cir. 2014) ("[T]he Fourteenth Amendment prohibits 'deliberate indifference to the serious medical needs of pretrial detainees.' . . . This provision applies essentially the same deliberate indifference analysis to detainees as the Eighth Amendment does to inmates."). This instruction also applies to claims involving inadequate dental care. *Board v. Farnham*, 394 F.3d 469, 477-78 (7th Cir. 2005) (noting that the court has found it "convenient and entirely appropriate" to apply the same standard to claims arising under the Eighth and Fourteenth Amendments).

**b.    Serious medical need**: A serious medical need  is a condition that a doctor says requires treatment, or something so obvious that even someone who is not a doctor would recognize it as requiring treatment. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A condition may be serious if it significantly alters the daily activities of the prisoner, *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997), or causes significant pain, *Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir. 1996). Minor injuries are not sufficient. *Cooper*, 97 F.3d at 916. But the condition does not have to be life threatening or even produce "objective" symptoms. *Johnson*, 444 F.3d at 585; *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010); *Greeno*, 414 F.3d at 655; *Cooper*, 97 F.3d at 917. However, the plaintiff's casual response to the condition may be relevant to determine there is no serious medical need. *Pinkston v. Madry*, 440 F.3d 879, 892 (7th Cir. 2006).

**c.    Deliberate indifference**: Elements two and three encompass the concept of what the case law refers to as "deliberate indifference." The Committee has not included that term in the instructions because most jurors will not be familiar with it and it can be described using ordinary language.

**d.    Actual knowledge required:**  The defendant must actually know of the serious medical need. *Thomas v. Cook Cnty. Sheriff'sDep't*, 588 F.3d 445 (7th Cir. 2009) (jury could infer

awareness from combination of symptoms Plaintiff exhibited and his complaints); *Gayton v. McCoy*, 593 F.3d 610, 623-24 (7th Cir. 2010) (same). *See also* Instruction 7.15, comment f. The plaintiff does not have to prove that the defendant knew exactly what the plaintiff's condition was or its cause. *Ortiz v. City of Chicago*, 656 F.3d 523, 533 (7th Cir. 2011).

   **e.    Consciously failed to take reasonable measures:** For an explanation of this element as a general matter, *see* Instruction 7.15, comment g. The jury may find that the plaintiff proved this element even if the defendant provided some care. *Hayes*, 546 F.3d at 524. There is no bright-line test for determining whether a defendant violated this standard. Factors to be considered include the seriousness of the medical condition; the likelihood and imminence of further harm; and the ease and efficacy of providing treatment. *See Roe v. Elyea*, 631 F.3d 843, 859 (7th Cir. 2011); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Cost is a factor in determining what constitutes adequate care, "but medical personnel cannot simply resort to an easier course of treatment that they know is ineffective.'" *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

   **f.    Medical vs. non-medical staff:** The deliberate indifference standard is different for non-medical staff. *See King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). For a medical professional, treatment may be blatantly inappropriate and thus amount to deliberate indifference when the medical professional knows that it is likely to aggravate the prisoner's condition, *Greeno*, 414 F.3d at 654, or if it is clear that the treatment is not working, *Gonzalez*, 663 F.3d at 314-15.

   A "mere difference of opinion" between two medical professionals is generally not enough. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). However, the Seventh Circuit has been more reluctant to defer to a medical professional's judgment if he or she is disregarding instructions from a specialist or has changed his or her own opinion. *E.g.*, *Ortiz v. Webster*, 655 F.3d 731, 735-36 (7th Cir. 2011); *Gil v. Reed*, 535 F.3d 551, 557 (7th Cir. 2008).

   If the defendant is not a medical professional, as a general rule he is entitled to defer to those who are. *Berry*, 604 F.3d at 440-41; *Lee*, 533 F.3d at 511. The exception is if it is obvious that the prisoner is not receiving adequate care. *King*, 608 F.3d at 1018; *Hayes v. Snyder*, 546 F.3d 516, 526-28 (7th Cir. 2008); *see also Berry*, 604 F.3d at 443.

   **g.    Harm:**  The plaintiff may satisfy this element with evidence that defendant "exacerbated his injuries" or that he suffered "prolonged, unnecessary pain." *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039-40 (7th Cir. 2012). *See also Gayton*, 593 F.3d at 624-25. Both this instruction and the prior version of the same instruction simply use the term "harm." The state of the law on the degree of harm or pain that the plaintiff must have experienced to prevail is, however, not entirely clear. *See, e.g., Turner v. Pollard*, 564 F. App'x 234, 239 (7th Cir. 2014) (indicating that nominal and punitive damages may be available "due to hazard, or probabilistic harm even in the absence of physical or psychological harm" or where the plaintiff is "expose[d]. . . to a substantial risk of a serious physical injury"). In a case where there is a dispute over whether there is a sufficient degree of harm to establish a claim, careful attention should be paid to the wording of element 4 of this instruction.

   **h.    Color of Law**: The fifth element should be eliminated if the "color of law" issue is not in dispute. If the element is contested, Instruction No. 7.03 should be given.

# 7.18  EIGHTH AMENDMENT:
## EXCESSIVE FORCE AGAINST CONVICTED PRISONER – ELEMENTS

To succeed on his claim of excessive use of force, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.      Defendant intentionally used force on Plaintiff.

2.      Defendant did so for the purpose of harming Plaintiff, and not in a good faith effort to maintain or restore security or order.

3.      Defendant's conduct harmed Plaintiff. Plaintiff does not need to prove that he suffered a serious injury. If Defendant's use of force caused pain to Plaintiff, that is sufficient harm, even if Plaintiff did not require medical attention or did not have long lasting injuries.

[4.      Defendant acted under color of law.]

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

In deciding whether Plaintiff has proved that Defendant used force for the purpose of harming Plaintiff, you should consider all of the circumstances. When considering all the circumstances, among the factors you may consider are the need to use force, the relationship between the need to use force and the amount of force used, the extent of Plaintiff's injury, whether Defendant reasonably believed there was a threat to the safety of staff or prisoners, [and] any efforts made by Defendant to limit the amount of force used[, and whether Defendant was acting pursuant to a policy or practice of the prison that in the reasonable judgment of prison officials was needed to preserve security or order].

[An officer is entitled to use some force if a prisoner disobeys a valid command. You may still consider, however, whether the amount of force used was excessive.]

**Committee Comment**

**a.      Scope and authority:** *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986); *Williams v. Boles*, 841 F.2d 181 (7th Cir. 1988). This instruction applies only to cases involving claims brought under the Eighth Amendment by convicted prisoners. Excessive force claims brought by an arrestee or pretrial detainee are governed by the Fourth and Fourteenth Amendments, respectively, and are contained in Instruction 7.09. The Committee did not modify this instruction after *Kingsley v. Hendrickson*, --- U.S. ---, 135 U.S. 2466, 2476 (U.S. June 22, 2015), in the absence of further guidance from the Supreme Court or the Seventh Circuit.

**b.      Amount of force:** Some cases have suggested that a *de minimis* use of force does not violate the Eighth Amendment. *Hudson*, 503 U.S. at 9-10; *Hendrickson v. Cooper*, 589 F.3d 887, 890-91 (7th Cir. 2009). However, in *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012), the court stated that "it is . . . time that the formula '*de minimis* uses of physical force' was retired," because there are some cases in which force might be excessive even when it is slight, such as if an officer fondled a prisoner's genitals or burned him with a lit cigarette. Accordingly, the Committee has not included a reference to quantum of force as an element, though it has listed this as a factor that may be considered in relation to the need for force.

**c.      Intentional use of force for the purpose of harm:** "Unreasonable" force is not enough in the Eighth Amendment context. *Whitley*, 475 U.S. at 322. Courts often use the phrase "malicious[ ] and sadistic[ ]" when describing the intent requirement, *id.* at 320-21, but the Committee has omitted the phrase because it appears to be redundant of the phrase "for the purpose of harming."

**d.      Failure to comply with order:** A correctional officer may use force when a prisoner disobeys an order, but the degree of force used may still amount to a constitutional violation. *See Lewis v. Downey*, 581 F.3d 467, 476-77 (7th Cir. 2009).

**e.      Color of law:** The fourth element should be eliminated if the "under color of law" issue is undisputed. If the element is contested, Instruction No. 7.03 should be given. If the element is contested, Instruction No. 7.03 should be given.

**f.      Deference to prison official policies:** The Supreme Court has stated that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 322-34 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). In a case in which the defendant claims to have acted pursuant to a policy or practice of the prison, the last (bracketed) factor in the list of factors included at the end of the instruction may be appropriate. The Committee notes that a significant minority of its members were of the view that this admonition from *Bell* and *Whitley* should not be included in the instruction on the ground that it is a policy consideration that informs why the Eighth Amendment standard is as it is, not a matter on which to instruct the jury.

**g.     Serious injury not required:** A prisoner may prevail on an excessive force claim even if his injuries are not serious and only "*de minimis*." *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1179-80 (2010); *Guitron*, 675 F.3d at 1046. Pain is a sufficient harm. *Lewis*, 581 F.3d at 475; *Hendrickson*, 589 F.3d at 891. However, the jury may consider the extent of the injury as a factor in determining whether the defendant used excessive force. *Wilkins*, 130 S. Ct. at 1178-79; *Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994).

**h.     Factors:** Some judges prefer to include the factors from *Graham v. Connor*, 490 U.S. at 396 (fifth, sixth, and seventh factors), and *Wilson v. Williams*, 83 F.3d 870 (7th Cir. 1996) (first, second, third, fourth, and sixth factors), while others see a list as limiting. Accordingly, the Committee has bracketed the commonly used list of factors.

176

## 7.19  EIGHTH AND FOURTEENTH AMENDMENTS:
## FAILURE TO PROTECT FROM SELF HARM

The Constitution requires [prison] [jail] officials to protect [prisoners] [detainees] from harming themselves under certain circumstances. To succeed on this claim, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.      There was a strong likelihood that [Plaintiff] [Decedent] would seriously harm [himself] [herself]  [in the near future]. [A mere possibility of serious harm is not a strong likelihood.]

2.       Defendant was aware of this strong likelihood that [Plaintiff] [Decedent] would seriously harm [himself] [herself] in the near future [or strongly suspected facts showing a strong likelihood that Plaintiff would be seriously harmed but refused to confirm whether these facts were true]. [You may infer this from the fact that the risk was obvious.]

3.      Defendant consciously failed to take reasonable measures to prevent [Plaintiff] [Decedent] from [committing suicide] [seriously harming [himself] [herself].
[In deciding this, you may consider how serious the potential harm to Plaintiff was, how difficult it would have been for Defendant to take [additional] corrective action, and whether Defendant had legitimate reasons related to safety or security for failing to take [additional] action.]

4.      [Plaintiff] [Decedent] [would have survived] [would have suffered less harm] if Defendant had not disregarded the risk.

5.      [Defendant acted under color of law.]

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

**Committee Comment**

(2017 rev.)

**a.** **Authority and scope of instruction:** *Rice ex rel. Rice v. Corr. Med.Servs.*, 675 F.3d 650 (7th Cir. 2012); *Frake v. City of Chicago*, 210 F.3d 779 (7th Cir. 2000); *Tesch v. Cnty. of Green Lake*, 157 F.3d 465, 475 (7th Cir. 1998); *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254 (7th Cir. 1996); *Hall v. Ryan*, 957 F.2d 402 (7th Cir. 1992). As with claims regarding medical care and assaults by other prisoners, the standard for detainees under the Fourteenth Amendment provides "at least" as much protection as the Eighth Amendment), *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003), but the court generally applies a "deliberate indifference" standard in both types of cases. *Rosario v. Brawn*, 670 F.3d 816, 820-21 (7th Cir. 2012); *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010).

**b.** **Deliberate indifference:** Elements two and three encompass the concept of what the case law refers to as "deliberate indifference." The Committee has not included that term in the instructions because most jurors will not be familiar with it and it can be described using ordinary language.

**c.** **Actual knowledge required:** For cases discussing the actual knowledge standard generally, s*ee* Instruction 7.15, comment f. In some cases, the Seventh Circuit has likened a risk of suicide to "a serious medical need." *E.g.*, *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir.1998).

Factors relevant in determining whether actual knowledge has been established include whether the prisoner: (1) said he was having suicidal thoughts or expressed a need for mental health treatment, *Minix*, 597 F.3d at 833; *Collins*, 462 F.3d 757; *Sanville v. McCaughtry*, 266 F.3d 724, 736 (7th Cir. 2001); (2) had a known history of suicide attempts or mental illness, *Bradich ex rel. Estate of Bradich v. City of Chicago*, 413 F.3d 688, 690 (7th Cir. 2005); *Hall*, 957 F.2d at 405; and (3) had been on suicide watch recently, *Cavalieri*, 321 F.3d at 621. *But see Collignon*, 163 F.3d at 990 (placement on suicide watch not sufficient); *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) ("strange behavior" not enough by itself); *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997) (same); *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 262 (7th Cir. 1996) (labeling detainee "potential" suicide risk not enough).

**d.** **Temporal element:** In some cases, the Seventh Circuit has stated that the defendant must be aware of a substantial risk that the prisoner "may *imminently* seek to take his own life," but it has not provided further clarification regarding the meaning of "imminent." *Collins*, 462 F.3d at 761 (emphasis added). However, other cases suggest that a duty may exist in other circumstances, but that an official's duties might vary depending on the obviousness of the risk. *See Collignon*, 163 F.3d at 990 (defendant had a "constitutional obligation to provide some level of care and treatment" because she knew of detainee's serious mental illness and previous suicide attempt, but satisfied duty by psychotropic medication plan; additional measures might have been required if the defendant knew that the detainee was on "the verge of committing suicide."). In *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012), the court considered but did not resolve whether "state officials violate the Constitution when they fail to prevent the suicides of inmates who are not actively or 'imminently' suicidal." Because the Seventh Circuit has not resolved this issue, the Committee has used the term "imminently" in brackets in element 2. The court will have to determine whether to include this temporal element.

**e.** **Conscious disregard by failing to take reasonable measures:** For an explanation of this element as a general matter, *see* Instruction 7.15, comment g. If officials are aware of a substantial risk, they may consciously disregard the risk if they take no responsive action. *See, e.g.*, *Hall*, 957 F.2d at 403. *See also, e.g., Cavalieri*, 321 F.3d at 621; *Sanville*, 266 F.3d at 739.

**f.** **Cases involving medical professionals:** If the defendant is a psychiatrist or other mental health professional, the court may wish to include language from Instruction 7.15 regarding the use of medical judgment. *See Fromm*, 94 F.3d at 261-62.

**g.** **Color of law:** The fifth element should be eliminated if "color of law" is not in dispute. If the element is contested, Instruction No. 7.03 should be given.

# 7.20  EQUAL PROTECTION:  CLASS OF ONE

**Committee Comment**

The Committee did not draft an instruction for this claim because the elements of the claim remain unsettled in light of *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 687 (7th Cir. 2012) (en banc). *See also Thayer v. Chiczewski*, 697 F.3d 514, 531 (7th Cir. 2012) ("[T]he class-of-one standard in this circuit is in flux. . . . Our recent attempt to clarify the standard in *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc) resulted in a tie vote with no controlling opinion.").

# 7.21  DUE PROCESS: STATE-CREATED DANGER

Plaintiff claims that Defendant violated [his] [her] rights by [*describe Defendant's alleged conduct*].

To succeed on this claim, Plaintiff must prove the following (*number of elements*) things by a preponderance of the evidence:

1.     Defendant's act[s] [created a strong likelihood of serious harm to Plaintiff] [increased Plaintiff's risk of serious harm].

2.     [Defendant was aware of the risk and consciously failed to take reasonable measures to prevent harm to Plaintiff.] [You may infer that Defendant was aware of the risk from the fact that the risk was obvious.] [You may find that Defendant was aware of the risk if you find that Defendant strongly suspected facts showing that a risk existed but refused to confirm that these facts were true.]
     *or*
     [Defendant acted maliciously or with intent to inflict injury.]

3.     It was foreseeable by Defendant that the act[s] would lead to injury to Plaintiff or to a group of persons that included Plaintiff.

4.     Defendant's act[s] caused Plaintiff's injury.

5.     [Defendant acted under color of law.]

If you find Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff did not prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

**Committee Comment**

(2017 rev.)

**a.** **Authority**: *See, e.g., Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011); *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827-28 (7th Cir. 2009); *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 595, 599-600 (7th Cir. 2008); *King v. E. St. Louis School Dist. 189*, 496 F.3d 812, 817-18 (7th Cir. 2007). *See also Paine v. Cason*, 678 F.3d 500, 510-11 (7th Cir. 2012). The precise contours of a state-created danger claim are not completely clear. The cited cases establish the elements as set forth in the pattern instruction, but one recent case suggests an arguably simplified standard: "Shouldn't it be enough to say that it violates the due process clause for a government employee acting within the scope of his employment to commit a reckless act that by gratuitously endangering a person results in an injury to that person?" *Slade v. Bd. of Sch. Dirs. of City of Milwaukee*, 702 F.3d 1027, 1029-33 (7th Cir. 2012).

**b.** **"Affirmative act"**: Several Seventh Circuit cases discuss the need for an "affirmative act." *See, e.g., Sandage*, 548 F.3d at 599-600. The meaning of "affirmative," however, is less than clear, and the court has recently questioned the helpfulness of that term. *Slade*, 702 F.3d at 1030. In an effort to make the instruction understandable, the Committee has used the term "act" rather than "affirmative act" in the first element. Determining what constitutes an affirmative act is not necessarily easy. *See Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982) ("We do not pretend that the line between action and inaction, between inflicting and failing to prevent the infliction of harm, is clearer than it is."). But an affirmative act suggests "a willful deviation from the *status quo*." *Windle v. City of Marion*, 321 F.3d 658, 662 n. 2 (7th Cir. 2003). On at least two occasions, the Seventh Circuit found that a defendant's promise to keep plaintiff safe was an affirmative act. *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1998); *Wallace v. Adkins*, 115 F.3d 427 (7th Cir. 1997). However, after *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005), the Seventh Circuit questioned whether a broken promise of protection is still sufficient for liability. *Sandage v. Board of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 595, 600 (7th Cir. 2008).

**c.** **Creating danger and increasing risk of danger**: A claim exists not only for creating a danger to the plaintiff, but also for increasing the risk of danger to the plaintiff. *Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 708 n.7 (7th Cir. 2002). There is no Seventh Circuit case defining the extent the danger must be increased to be actionable. *See Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 992 (7th Cir. 1998) (discussing "incremental risk"). In *Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1177 (7th Cir. 1997), the Seventh Circuit stated in *dicta* that to recover under the state created danger theory, the state must "greatly" increase the danger. *See also Ross v. United States*, 910 F.2d 1422, 1431 (7th Cir. 1990) (suggesting that when state "greatly increased the risk" claim may be stated). But more recent cases say simply that the state "must create or increase a danger faced by an individual." *Sandage*, 548 F.3d at 599; *Buchanan-Moore*, 570 F.3d at 827. The instruction does not attempt to define the extent danger must be increased to be actionable.

**d.	Restricting other avenues of aid**: Earlier Seventh Circuit decisions appeared to require an additional element for a state created danger claim, namely, that the defendant not only placed the plaintiff in danger or increased the risk of danger, but also cut off all other avenues of aid without providing a reasonable alternative. *See Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1177 (7th Cir. 1997); *Ross v. United States*, 910 F.2d 1422, 1431 (7th Cir. 1990); *Archie v. Racine*, 847 F.2d 1211, 1223 (7th Cir. 1988). But more recently the Seventh Circuit has rejected this as an additional requirement, *see Monfils v. Taylor*, 165 F.3d 511, 517 (7th Cir. 1998), and it is not included in the formulations of the elements of the claim that are found in the cases cited in Comment a.

**e.	Causation**: The cases enumerating the general elements of this claim identify causation in terms of "proximate cause." *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007). In the context of state created danger, causation is based on a danger to the particular plaintiff or a small subset of individuals that included the plaintiff, not the general public. *Buchanan-Moore*, 570 F.3d at 828 ; *Waubanascum v. Shawano Cnty.*, 416 F.3d 658, 669 (7th Cir. 2005); *Reed v. Gardner*, 986 F.2d 1122, 1127 (7th Cir. 1993) (plaintiff on specific road during narrow time frame sufficiently foreseeable victim).

**f.	Intent requirement:** A state-created-danger claim is a "substantive" due process claim, and as a result the cases say the plaintiff must establish that the defendant's action "shocks the conscience." *See, e.g., Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 653 (7th Cir. 2011); *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827-28 (7th Cir. 2009). This phrase, however, is not particularly useful as an element in a jury instruction. *See, e.g., Slade*, 702 F.3d at 1033 ("It's not a very illuminating expression . . . ."). The Seventh Circuit has equated this with a requirement of recklessness or deliberate indifference. *See Sandage*, 548 F.3d at 599. The court has suggested that it is an open question whether the proper definition of reckless is the criminal or civil standard, though it is unclear that the difference is significant; *Slade* says that "all that remains in doubt is the choice between the civil and criminal standards of recklessness—between the known versus the merely obvious risk—but that difference as we have said had little practical significance . . . ." *Slade*, 702 F.3d at 1033. The Committee has adapted here the definition of "deliberate indifference" from other instructions, such as Instruction 7.15.

In *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812 (7th Cir. 2007), the Seventh Circuit stated that

> when the circumstances permit public officials the opportunity for reasoned deliberation in their decisions, we shall find the official's conduct conscience shocking when it evinces a deliberate indifference to the rights of the individual. On the other hand, where circumstances call for hurried judgments in order to protect

the public safety or maintain the public order, and thereby render reasoned deliberation impractical, conduct must reach a higher standard of culpability approaching malicious or intentional infliction of injury before we shall deem official conduct conscience shocking.

*Id.* at 819. Other cases do not make reference to this distinction, and it is unclear what level of "deliberation" is required under the *King* formulation. In a case in which a "hurried judgment" is involved, the second alternative under element 3 should be used. There may be cases in which the amount of time that the defendant had to reflect on the act is a disputed question for the jury. In these situations, the jury should be given an intent instruction that poses this threshold issue and gives both intent alternatives, with the correct choice depending on the jury's resolution of the threshold issue. The Committee anticipates that these cases will be rare and thus is not offering a draft instruction on this point.

    **g.**    **Color of law**: The fifth element should be eliminated if the "color of law" issue is not in dispute. If the element is contested, Instruction No. 7.03 should be given.

(2017 rev.)

## 7.22  CLAIM FOR FAILURE OF "BYSTANDER" OFFICER
## TO INTERVENE – ELEMENTS

To succeed on his failure to intervene claim against Defendant, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.      [*Name of Officer alleged to have committed primary violation*] [*describe constitutional violation claimed, e.g., "falsely arrested Plaintiff," "used excessive force on Plaintiff"*].

2.      Defendant knew that [*Officer*] was/was about to [*describe constitutional violation claimed, e.g., "falsely arrest Plaintiff" "use excessive force on Plaintiff"*].

3.      Defendant had a realistic opportunity to do something to prevent harm from occurring.

4.      Defendant failed to take reasonable steps to prevent harm from occurring.

5.      Defendant's failure to act caused Plaintiff to suffer harm.

[6.      Defendant acted under color of law].

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

### Committee Comment

**a**.      **Authority and usage:** *See Lanigan v. Vill. of East Hazel Crest*, 110 F.3d 467, 477-78 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). This instruction applies in the case of a "bystander officer."

**b**.      **Color of law:** The sixth element should be eliminated if the "color of law" issue is not in dispute. If the element is contested, Instruction No. 7.03 should be given.

**c.** **Principal actor out of case:** If the officer who engaged in the alleged constitutional violation has settled, or is otherwise not involved in the case, the court will need to adjust the instructions to ensure that the jury has a sufficient understanding of the underlying constitutional issue.

(2017 rev.)

# 7.23  LIABILITY OF SUPERVISOR

To succeed on his claim against [*Supervisor*], Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.      [ *Name of Officer alleged to have committed primary violation*] [*describe constitutional violation or conduct claimed, e.g., "falsely arrested Plaintiff," "used excessive force on Plaintiff"*];

2.      [ *Supervisor*] knew that [*Officer*] was about to [*describe constitutional violation claimed*];
*or*
[*Supervisor*] knew that [*Officer/Officers he supervised*] had a practice of [*describe constitutional violation claimed*] in similar situations;

3.      [ *Supervisor*] [approved/assisted/condoned/purposely ignored] [*Officer's*] [*describe constitutional violation claimed*];

4.      As a result, Plaintiff was injured.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

## Committee Comment

**a.       Authority**: *See Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1182 (7th Cir. 1994); *Rascon v. Hardiman*, 803 F.2d 269, 273-274 (7th Cir. 1986).

**b.       Principal actor out of case**: If the officer who engaged in the alleged constitutional violation has settled, or is otherwise not involved in the case, a court will need to adjust the instruction to ensure that the jury has a sufficient understanding of the underlying constitutional issue.



    **c.**    **Cat's paw:**  There may be cases in which a supervisor knowingly directs a subordinate to engage in conduct that violates the plaintiff's constitutional rights, but the subordinate lacks the requisite mental state and therefore does not himself or herself commit a constitutional violation. In such a case, this instruction will require modification.

# 7.24  LIABILITY OF MUNICIPALITY

If you find that Plaintiff has proved a constitutional violation by a preponderance of the evidence, you must consider whether [*Municipality*] is [also] liable to Plaintiff. [*Municipality*] is not responsible simply because it employed [*Officer(s) or employee(s)*].

To succeed on this claim, Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.  [*Describe underlying constitutional violation, e.g., Plaintiff was unreasonably detained, as defined in the instructions for Plaintiff's first claim*]

2.  At the time, [*Municipality*] had a policy of [*describe underlying policy claimed to have caused constitutional violation*]. The term policy means (*Choose applicable definition*):

- [A rule or regulation passed by [*Municipality*]'s [*identify Municipality's legislative body, e.g., Smallville City Council*].]

- [A decision or policy statement made by [*Name*], who is a policy-making official of [*Municipality*]. [This includes [*Name*]'s approval of a decision or policy made by someone else, even if that person is not a policy-making official.]

- [A custom of [*describe acts or omissions alleged to constitute constitutional violation*] that is persistent and widespread, so that it is [*Municipality*]'s standard operating procedure. A persistent and widespread pattern may be a custom even if [*Municipality*] has not formally approved it, so long as Plaintiff proves that a policy-making official knew of the pattern and allowed it to continue. [This includes a situation where a policy-making official must have known about a subordinate's actions/failures to act by virtue of the policy-making official's position.]

3.  The policy as described in paragraph 2 caused [described constitutional violation, e.g., Plaintiff's unreasonable detention.]

## Committee Comment

**a.**      **Authority**: *See City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Monell v. City of New York Dep't of Soc. Servs.*, 436 U.S. 658, 690-691 (1978); *Estate of Moreland v. Dieter*, 395 F.3d 747, 759-760 (7th Cir. 2005); *Monfils v. Taylor*, 165 F.3d 511, 517-518 (7th Cir. 1998); *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 511 (7th Cir. 1993).

**b.**      **Usage**: In a case involving a single constitutional claim, the Committee suggests that courts use this instruction in conjunction with the relevant elements instruction. In a case involving multiple constitutional claims, the Committee suggests that courts use this instruction separately after the jury has been instructed on the elements of each individual claim.

**c.**      **Policymaker:** Determination of whether a particular official is a policymaker for purposes of *Monell* liability is an issue for the court, not the jury. *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675-76 (7th Cir. 2009). The trial judge will have made that determination and will incorporate it into the instruction if appropriate. In some circumstances, there may be evidence that the final policymaker delegated policymaking authority to another person or entity. In such cases, the court should consider whether there is a factual question for the jury on the delegation issue and craft an appropriate instruction.

## 7.25  LIABILITY OF MUNICIPALITY
## FOR FAILURE TO TRAIN, SUPERVISE OR DISCIPLINE

To succeed on his claim against [*Municipality*] for a policy of failure to [train/supervise/discipline] its [officers/employees], Plaintiff must prove each of the following (*number of elements*) things by a preponderance of the evidence:

1.     [*Municipality's* training program was not adequate to train its [officers/employees] to properly handle recurring situations] [or] [*Municipality* failed to adequately [supervise/discipline] its [officers/employees]];

2.     [*Official/Policymaker/Policymaking Body*] knew that it was highly predictable that [*describe alleged constitutional violation(s)*] would occur without [more/different training] [adequate supervision/discipline] of its [officers/employees], [because there was a pattern of similar constitutional violations] [or] [it was highly predictable even without a pattern of similar constitutional violations]; and

3.     [*Municipality's*] failure to provide adequate [training/supervision] caused [describe alleged violation(s) of Plaintiff's constitutional rights].

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

### Committee Comment

**a.     Authority:** *See Connick v. Thompson*, 131 S. Ct. 1350, 1365 (2011) (while "highly predictable" is a viable basis to establish deliberate indifference, it was not highly predictable in this case that failure to better train prosecutors on *Brady* obligations would have had resulted in the production of the exculpatory evidence and prevented plaintiff's wrongful conviction); *City of Canton v. Harris*, 489 U.S. 378, 388-391 (1989) (presenting the municipal liability that would flow from the hypothetical scenario of arming police with no training in the constitutional use of deadly force; the "highly predictable" consequence of a constitutional violation in this context could result in municipal liability without a pattern of prior constitutional violations); *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997).

**b.** **Deliberate indifference:** *See Board of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. 397, 407-408 (1997); *City of Canton v. Harris*, 489 U.S. at 388-391; *Robles*, 113 F.3d at 735. In *Connick*, the court held that "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S. Ct. at 1360 (quoting *Bryan Cnty. v. Brown*, 520 U.S. at 409). There may also be a "narrow range of cases" where the probability of constitutional violations is so "patently obvious" that liability may be found without a pre-existing pattern, such as providing guns to officers without training them on the limits of excessive force.

**c.** **Whose knowledge required:** Determination of whose knowledge is required in order to render a municipality liable is a question of law to be determined by the court. *See Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675-76 (7th Cir. 2009).

**d.** **Failure to screen or fire a particular employee.** This instruction does not apply to the situation where the municipality is charged with failing to screen out an applicant, or fire an employee, who later violated the plaintiff's rights. In *Bryan Cnty. v. Brown*, 520 U.S. at 411, the Court held that "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'"

**e.** **Policymaker.** Determination of whether a particular official is a policymaker for purposes of *Monell* liability is an issue for the court, not the jury. *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675-76 (7th Cir. 2009). The trial judge will have made that determination and will incorporate it into the instruction. If there are factual questions that need to be resolved (e.g, whether policymaker delegated policymaking authority to another person), the court should craft an appropriate instruction.

**f.** **Multiple-theory *Monell* claim.** Where the plaintiff relies on multiple theories of *Monell* liability—for example, *both* failure to train *and* failure to discipline—in order to facilitate post-trial and appellate review, the court should strongly consider presenting the jury with special interrogatories regarding the bases on which it is imposing liability, or should consider giving a separate elements instruction for each theory, in essence treating each as a separate claim.

# 7.26  DAMAGES: COMPENSATORY

If you find in favor of Plaintiff [on one or more of Plaintiff's claims], then you must determine the amount of money that will fairly compensate Plaintiff for any injury that you find he sustained [and is reasonably certain to sustain in the future] as a direct result of [*insert appropriate language, such as "the failure to provide plaintiff with medical care," etc.*]

Plaintiff must prove his damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure.

You should consider the following types of compensatory damages, and no others:

**a.**    [The physical [and mental and emotional] pain and suffering [and [disability] [or] [loss of a normal life]] that Plaintiff has experienced [and is reasonably certain to experience in the future]. No evidence of the dollar value of physical [or mental and emotional] pain and suffering [or [disability] [or] [loss of a normal life]] has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of these factors. You are to determine an amount that will fairly compensate the Plaintiff for the injury he has sustained.]  [Plaintiff's estate may seek damages for loss of life.]

**b.**    [The decedent's loss of the capacity to carry on and enjoy her life's activities in a way she would have done had she lived.]

**c.**    [The reasonable value of property damaged or destroyed.]

**d.**    [The reasonable value of medical care and supplies that Plaintiff reasonably needed and actually received [as well as the present value of the care and supplies that he is reasonably certain to need and receive in the future.]]

**e.**    [The [wages, salary, profits, earning capacity] that Plaintiff has lost [and the present value of the [wages, salary, profits, earning capacity] that Plaintiff is reasonably certain to lose in the future] because of his [inability/diminished ability] to work.]]

[When I say "present value," I mean the sum of money needed now which, together with what that sum may reasonably be expected to earn in the future, will equal the amounts of those monetary losses at the times in the future when they will be sustained.]

[If you return a verdict for Plaintiff, but Plaintiff has failed to prove compensatory damages, then you must award nominal damages of $1.00.]

## Committee Comment

**a.    Types of damages available:** Damages that may be recovered under 42 U.S.C. § 1983 are: actual or compensatory, nominal and punitive. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986). Actual or compensatory damages are to "compensate person for injuries that are caused by the deprivation of constitutional rights." *Id.* at 307. Actual damages include compensation for out-of-pocket loss, other monetary losses and for impairment of reputation, personal humiliation, mental anguish and suffering. *Id.* This instruction lists the more common elements of damages in cases under 42 U.S.C. § 1983, but it is not intended to be exhaustive, so the court may need to supplement the instruction in particular cases. The court should include in the instruction given to the jury only those types of damages that are requested in the particular case.

**b**.    **Wrongful death actions and "loss of life" damages:**  In a wrongful death case, the award of damages will depend on whether the action is brought on behalf of the decedent's estate or on behalf of the decedent's survivor(s). In an action brought on behalf of the decedent's estate, the estate may recover damages for conscious pain and suffering experienced by the decedent prior to death, *see Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1187-89 (7th Cir. 1983), as well as for loss of life. *See, e.g., Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1105-06 (7th Cir. 1990). In an action brought on behalf of the decedent's survivors, the survivors may recover only for pecuniary injuries (including, but not limited to, monetary losses and loss of consortium or society) they suffered as a result of the death, not for emotional pain and suffering. *In re Air Crash Disaster,* 771 F.2d 338, 339 (7th Cir. 1985) (under Illinois wrongful death statute, plaintiff can recover damages only for pecuniary injury). "Loss of life" damages are not recoverable by the decedent's survivors. *See Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005).

The Seventh Circuit has not provided a standard for awarding damages for loss of life. In *Sherrod v. Berry*, 827 F.2d 195, 205-07 (7th Cir. 1987), *rev'd on other grounds on reh'g en banc*, 856 F.2d 802 (7th Cir. 1988), a case involving a fatal shooting by a police officer, the court ruled that damages for loss of decedent's life could include the hedonic or pleasurable value of his life and found that economist's expert testimony on this issue, although somewhat uncertain, was not speculative. However, post-*Daubert* decisions have often excluded expert testimony on the value of life. *See Richman v. Burgeson*, No. 98 C 7350, 2008 WL 2567132, at *3-4 (N.D. Ill. June 24,

2008) (collecting cases). The measure of loss of life damages is difficult to define. Some state courts use an approach similar to personal injury cases where damages are sought for loss of enjoyment of life's activities as a result of a permanent disability. These jurisdictions compensate the decedent for her lost "capacity to carry on and enjoy life's activities in a way she would have done had she lived." *Katsetos v. Nolan*, 368 A.2d 172, 183 (Conn. 1976). Thus, New Hampshire defines "loss of life" as "the inability to carry on and enjoy life over the probable life expectancy." *See Marcotte v. Timberlane/Hampstead Sch. Dist.*, 143 N.H. 331, 733 A.2d 394 (1999); *see also*, N.H. Civil Jury Instructions §§ 16.1-16.6. *But see, Durham v. Marberry*, 356 Ark. 481, 492-93, 156 S.W. 242, 248-49 (2004) (using a subjective approach and ruling that loss of life damages should "compensate a decedent for the loss of the value that the decedent would have placed on his or her own life.").

    **c.**    **Speculation is not permissible basis to award damages:** *See Henderson v. Sheahan*, 196 F.3d 839, 849 (7th Cir. 1999) ("Damages may not be awarded on the basis of mere conjecture or speculation; a plaintiff must prove that there is a reasonable certainty that the anticipated harm or condition will actually result in order to recover monetary compensation.").

    **d.**    **Difficulty in arriving at amount does not preclude damage award.** *See Horina v. City of Granite City*, 538 F.3d 624, 638 (7th Cir. 2008).

    **e.**    **Present value.** Regarding the definition and determination of "present value," *see In re: Air Crash Disaster Near Chicago, Illinois, on May 25, 1979*, 644 F.2d 633, 642 (7th Cir. 1981), relying on Illinois law. *Americontainer Ltd. P'ship v. Rankin*, Nos. 95-2269 & 95-2375, 1996 WL 164291, at *2 (7th Cir. 1996). *Cf. Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 537 (1983) ("The discount rate [in determining the net present value of damages consisting of a lost future stream of income] should be based on the rate of interest that would be earned on the best and safest investments.").

    **f.**    **Nominal damages.** In *Carey v. Piphus*, 435 U.S. 247, 266 (1978), the Court held that nominal damages are available for the denial of a constitutional right even absent actual injury. But the instruction is not appropriate unless it is a "true no-injury case." *See Clarett v. Roberts*, 657 F.3d 664, 673 (7th Cir. 2011) ("Everyone agreed that [plaintiff] sustained injuries during the course of her confrontation with [defendant]. In this situation, a nominal-damages instruction—perhaps appropriate in a true no-injury case—would have been inappropriate here."); *Stachniak v. Hayes*, 989 F.2d 914, 923 (7th Cir. 1993) (rejecting defendants' contention that the trial judge should have given a nominal damages instruction to the jury because such an "instruction is appropriate only when the deprivation of constitutional rights did not cause actual, provable injury, which was not so in this case.").

## 7.27  COMPENSATORY DAMAGES IN PRISONER CASES

If you find in favor of Plaintiff, then you must determine the amount of money that will fairly compensate Plaintiff for any injury that you find he sustained [and is reasonably certain to sustain in the future] as a direct result of [*insert appropriate language, such as "the failure to provide plaintiff with medical care," etc.*]

Plaintiff must prove his damages by a preponderance of the evidence. Your award must be based on evidence and not speculation. [This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure.]

[In this case the parties dispute whether Plaintiff [suffered a physical injury] [was subjected to a sexual act]. If you find that Plaintiff has proven by a preponderance of the evidence that [he] [she] [suffered a physical injury] [was subjected to a sexual act], you may award damages for any mental or emotional injury Plaintiff suffered as well. If you find that Plaintiff [did not suffer a physical injury] (was not subjected to a sexual act], you may not award damages for mental or emotional injury, [but you may award damages for any other type of injury listed below.] [Whether or not Plaintiff proves a [physical injury] [sexual act], you may award nominal damages and punitive damages, so long as you find that Plaintiff has met the standard for obtaining those damages.]]

You should consider the following types of compensatory damages, and no others:

**a.**  [The physical [and mental and emotional] pain and suffering [and disability/loss of a normal life] that Plaintiff has experienced [and is reasonably certain to experience in the future]. No evidence of the dollar value of physical [or mental and emotional] pain and suffering [or disability/loss of a normal life] has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of pain and suffering. You are to determine an amount that will fairly compensate the Plaintiff for the injury he has sustained.] [Plaintiff's estate may seek damages for loss of life.]

**b.**  [The decedent's loss of the capacity to carry on and enjoy her life's activities in a way she would have done had she lived.]

**c.**  [The reasonable value of property damaged or destroyed.]

(2017 rev.)

**d.**     [The reasonable value of medical care and supplies that Plaintiff reasonably needed and actually received [as well as the present value of the care and supplies that he is reasonably certain to need and receive in the future.]]

**e.**     The [wages, salary, profits, earning capacity] that Plaintiff has lost [and the present value of the [wages, salary, profits, earning capacity] that Plaintiff is reasonably certain to lose in the future] because of his [inability/diminished ability] to work.]]

[When I say "present value," I mean the sum of money needed now which, together with what that sum may reasonably be expected to earn in the future, will equal the amounts of those monetary losses at the times in the future when they will be sustained.]

### Committee Comment

**a.     Authority and scope of instruction:** This instruction is based on Instruction 7.26; the only difference relates to damages for mental or emotional injury.  Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or in the commission of a sexual act (as defined in section 2246 of Title 18)."

In cases in which it is undisputed that the prisoner suffered a physical injury or sexual act, the instruction should be identical to Instruction 7.22. In cases in which it is undisputed that the prisoner did not suffer a physical injury or sexual act, the court should omit all the bracketed references to mental or emotional injury, but no additional instruction is necessary. In cases in which there is a factual dispute whether the plaintiff suffered a physical injury or sexual act, the court should include the bracketed third paragraph above.

**b.     Definition of prisoner:**  Section 1997e(e) defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." The limitation applies only to plaintiffs who were prisoners at the time they filed the lawsuit, even if the lawsuit relates to prison conditions.  *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998).

**c.     What qualifies as a "physical injury":** The Seventh Circuit has not addressed in depth the question of what qualifies as a "physical injury" under the statute.  In *Pearson v. Welborn*, 471 F.3d 732, 744 (7th Cir. 2006), the court stated that the plaintiff failed to show that lost weight and depression could qualify, at least under the facts of the case.  In *Robinson v. Page*, 170 F.3d 747. 749 (7th Cir. 1999), the court left open whether the injury must "be a palpable, current injury (such as lead poisoning) or a present condition not injurious in itself but likely to ripen eventually into a

palpable physical injury." If there is a legal dispute whether an injury is "physical" within the meaning of § 1997e(e), the court should resolve that dispute before trial.

d. **What qualifies as a "sexual act":** Section 1997e(e) uses the definition from 18 U.S.C. § 2246(2), which lists four acts that qualify:

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

If there is factual dispute between the parties regarding whether the defendant committed a sexual act, the court may wish to include the definition from § 2246(2) in the instruction.

e. **Loss of life:** See comment b to Instruction 7.26.

f. **Other damages still available:** Even if the plaintiff does not prove a physical injury, he may still recover nominal damages, punitive damages or any kind of compensatory damages other than those for mental or emotional injury. *Calhoun v. DeTella*, 319 F.3d 936, 940-41 (7th Cir. 2003). *See also Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011).

g. **Limitation applies to all federal claims:** The limitation applies not only to § 1983 cases, but to any case brought by a prisoner under a federal statute. *Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008) (Religious Land Use and Institutionalized Persons Act); *Cassidy v. IndianaDep't of Corr.*, 199 F.3d 374, 376-77 (7th Cir. 2000) (Americans with Disabilities Act).

# 7.28  DAMAGES: PUNITIVE

If you find for Plaintiff, you may, but are not required to, assess punitive damages against Defendant. The purposes of punitive damages are to punish a defendant for his or her conduct and to serve as an example or warning to Defendant and others not to engage in similar conduct in the future.

Plaintiff must prove by a preponderance of the evidence that punitive damages should be assessed against Defendant. You may assess punitive damages only if you find that his conduct was malicious or in reckless disregard of Plaintiff's rights. Conduct is malicious if it is accompanied by ill will or spite, or is done for the purpose of injuring Plaintiff. Conduct is in reckless disregard of Plaintiff's rights if, under the circumstances, Defendant simply did not care about Plaintiff's [safety] [or] [rights].

If you find that punitive damages are appropriate, then you must use sound reason in setting the amount of those damages. Punitive damages, if any, should be in an amount sufficient to fulfill the purposes that I have described to you, but should not reflect bias, prejudice, or sympathy toward any party. In determining the amount of any punitive damages, you should consider the following factors:

- the reprehensibility of Defendant's conduct;

- the impact of Defendant's conduct on Plaintiff;

- the relationship between Plaintiff and Defendant;

- the likelihood that Defendant would repeat the conduct if an award of punitive damages is not made;

- [Defendant's financial condition;]

- the relationship of any award of punitive damages to the amount of actual harm the Plaintiff suffered.

## Committee Comment

**a.    Authority:**  Punitive damages are recoverable under § 1983 if Plaintiff makes a showing of "evil motive or intent, or ... reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 35, 56 (1983). *See also Woodward v. Corr. Med. Servs. of Illinois, Inc.,* 368 F.3d 917, 930 (7th Cir. 2004)("Punitive damages are recoverable in §

1983 actions where the defendant had a reckless or callous disregard to the federally protected rights of others."). *Calhoun v. DeTella,* 319 F.3d 936, 942 (7th Cir. 2003) (same); *Kemezy v. Peters,* 79 F.3d 33, 34 (7th Cir.1996)(punitive damages are "to punish the defendant for reprehensible conduct and to deter him and others from engaging in similar conduct.").

**b.** **Burden of proof:** The Seventh Circuit has not yet articulated the required burden of proof for punitive damages in § 1983 cases. *See Coulter v. Vitale,* 882 F.2d 1286, 1289 (7th Cir.1989) (declining to decide the issue because the objection had not been properly preserved). Furthermore, § 1983 does not prescribe a particular burden of proof for punitive damages. However, in two cases the appellate court has affirmed without comment a district court's decision to apply a preponderance of the evidence standard. *See Spanish Action Comm. of Chicago v. City of Chicago,* 766 F.2d 315, 318 n.2 (7th Cir. 1985), the court noted without deciding the propriety of the instruction that read: "The jury instruction on punitive [damages] read: To recover punitive damages against an individual defendant, plaintiff must prove by a preponderance of the evidence ... that the actions of that defendant were done knowingly and maliciously to deprive plaintiff of its constitutional rights."); *McKinley v. Trattles,* 732 F.2d 1320, 1326 (7th Cir.1984)(without analysis finding jury instruction on punitive damages in a § 1983 case that included a "preponderance of the evidence" standard was "accurate and complete."). Other circuits have applied the preponderance standard to awarding punitive damages in Title VII actions. *See White v. Burlington Northern & Santa Fe R. Co.,* 364 F.3d 789, 805–808 (6th Cir.2004); *Karnes v. SCI Colorado Funeral Servs., Inc.,* 162 F.3d 1077, 1080–82 (10th Cir. 1998); *Notter v. N. Hand Prot.,* 89 F.3d 829, 1996 WL 342008, at *10-11 (4th Cir. 1996) (unpublished). In light of the unsettled state of the law, the district court in *Fogarty v. Greenwood,* 724 F. Supp. 545, 546 (N.D. Ill. 1989), set forth a procedure requiring the jury to indicate on a special verdict form whether punitive damages were proven by a preponderance or by clear and convincing evidence.

**c.** **Defendant's financial condition:** The language should only be given if evidence was admitted on that topic.

# 8.  PRISONER'S RIGHT OF ACCESS TO COURTS

(2005 rev.)

# 8.01 DESCRIPTION OF CLAIM

In this case, Plaintiff claims that Defendant intentionally denied him meaningful access to the courts. Plaintiff says that Defendant did this by [*describe conduct.*]

Let me explain the concept of "access to courts" in a bit more detail. The Constitution gives us the right to go to court when we have disputes with others. People who are in prison also have a right of "access to courts." By this I mean that a prisoner is entitled to get meaningful help in [preparing and/or filing] his lawsuit. [This might include talking to people with legal training, such as lawyers, law students, or paralegals. Or it might simply mean access to a law library or legal reference materials.]

A prison official can consider security risks in deciding what kind of access to give the prisoner. [For example, a prison official does not need to give a prisoner personal access to a library if that would be dangerous. Instead, the official can find other ways of giving the prisoner materials that he needs to file his lawsuit and make legal arguments.] Inconvenient or highly restrictive regulations may be appropriate if they do not completely deny meaningful access to courts.

In the end, there is no one way for a prison official to provide access to courts. Instead, you must consider the prison official's program as a whole to see if it provides meaningful access.

### Committee Comments

a.     **Authority:** *See Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817 (1977); *Lehn v. Holmes*, 364 F.3d 862 (7th Cir. 2004); *Brooks v. Buscher*, 62 F.3d 176 (7th Cir. 1995); *Vasquez v. Hernandez*, 60 F.3d 325 (7th Cir. 1995); *Hossman v. Spradlin*, 812 F.2d 1019 (7th Cir. 1987); *Corgain v. Miller*, 708 F.2d 1241 (7th Cir. 1983).

b.     **Type of Underlying Suit:** Prisons must provide meaningful help for a prisoner's appeal of his conviction, habeas corpus action, or civil rights action challenging his condition of confinements. For all other types of civil lawsuits, the prison officials may not create barriers that impede the prisoner's right of access to the courts, *Snyder v. Nolen*, 380 F.3d 279 (7th Cir. 2004), and the instruction should be modified accordingly.

# 8.02  DENIAL OF PRISONER'S ACCESS TO COURT

To succeed in his claim of denial of access to court, Plaintiff must prove each of the following things by a preponderance of the evidence.

1.     Defendant intentionally did at least one of the following things: [*Describe conduct*];

[2.     Defendant acted "under color of law." By this I mean that a person performs, or claims to perform, official duties under any state, county, or municipal law, ordinance, or regulation;]

3.     Defendant's conduct hindered his efforts to pursue a legal claim;

[4.     The case which Plaintiff wanted to bring to court was not frivolous. A claim is frivolous if it is so trivial that there is no chance it would succeed in court or be settled out of court after it was filed;]

5.     Plaintiff was harmed by Defendant's conduct.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you should find for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you should find for Defendant, and you will not consider the question of damages.

## Committee Comments

a.     **Authority:** *See Snyder v. Nolen*, 380 F.3d 279 (7th Cir. 2004); *Lehn v. Holmes*, 364 F.3d 862 (7th Cir. 2004); *Brooks v. Buscher*, 62 F.3d 176 (7th Cir. 1995); *Jenkins v. Lane*, 977 F.2d 266 (7th Cir. 1992); *Kincaid v. Vail*, 969 F.2d 594 (7th Cir. 1992).

b.     **Under Color of Law:** The second element should be eliminated if the "under color of law" issue is not in dispute.

c.        **Frivolous Underlying Claim:** Similarly, judges should include the parenthetical material concerning whether Plaintiff's claim was frivolous only if this presents a factual issue in the case. *See Lewis v. Casey*, 518 U.S. 343, 353 & n.3 (1996) ("Depriving someone of a frivolous claim . . . deprives him of nothing at all . . . ."); *Thomson v. Washington*, 362 F.3d 969, 970 (7th Cir. 2004) ("If your legal papers are confiscated in a doomed proceeding, there is no harm and no basis for a constitutional suit . . . even though there is always a chance that the court would have ruled erroneously in your favor."). *Cf. Walters v. Edgar*, 163 F.3d 430, 433 (7th Cir. 1988) ("probabilistic" harm, which is nontrivial, will support standing for prospective injunctive relief).

d.        **Harm:** *See Lehn v. Holmes*, 364 F.3d 862 (7th Cir. 2004).

## 8.03  DAMAGES

Use Instructions 7.22, 7.23 and 7.24, as appropriate, listing those elements of damages relevant to the case, as well as:

- the reasonable value of any judgment or settlement Plaintiff would have received if Defendant had not hindered his efforts to pursue his legal claim.

# 9. FEDERAL EMPLOYEE LIABILITY ACT AND SIMILAR STATUTES

# 9.01 - Plaintiff's FELA Case

Plaintiff brings this action under the Federal Employers Liability Act or FELA. FELA requires Defendant to exercise reasonable care to provide a reasonably safe workplace.

To succeed in his FELA claim, Plaintiff must prove two things by a preponderance of the evidence:

1.      Defendant was negligent;

2.      Defendant's negligence caused or contributed to Plaintiff's injuries.

Negligence is the failure to use the care that a reasonably prudent person would use in the same circumstances. The law does not say how a reasonably prudent person should act. That is for you to decide.

## Committee Comments

**a.    Generally.**  FELA operates to provide a broad federal tort remedy for railroad workers injured on the job. *Williams v. National R.R. Passenger Corp.*, 161 F.3d 1059, 1061-62 (7thCir.1998). Courts have interpreted the Act's language liberally in light of its humanitarian purposes. *Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424 (1997). FELA abolished a number of traditional defenses to liability, including the fellow-servant rule, contributory negligence, and assumption of risk. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994).

**b.    Negligence Standard.**  FELA is founded on common law negligence principles. *See Robinson v. Burlington Northern R.R. Co.*, 131 F.3d 648, 652 (7th Cir. 1997) ("[FELA] is founded on common-law concepts of negligence and injury, subject to such qualifications as Congress has imported into those terms") (quoting *Urie v. Thompson*, 337 U.S. 163, 181 (1949)). FELA does not define negligence; what constitutes negligence for the statute's purposes is a federal question, taking account of the differing conceptions of negligence applicable under state and local laws for other purposes. *Gillman v. Burlington Northern R.R. Co.*, 878 F.2d 1020, 1021 (7th Cir. 1989) (quoting *Urie v. Thompson*, 337 U.S. 163, 181 (1949)); *see Harbin v. Burlington Northern R.R. Co.*, 921 F.2d 129, 132 (7th Cir. 1990) ("The jury is the tribunal to which is delegated the duty to apply the elusive concepts of reasonable care and cause and effect to the manifold facts and circumstances of each individual case").

c.    **Industry Customs and Safety Rules.** If either side presents evidence of industry customs and/or specific safety rules as evidence of the presence or absence of negligence, the subcommittee recommends that the following language be added to the instruction: "In deciding whether Defendant was negligent, you may consider industry custom or safety rules, but what is reasonable is up to you." *See Green v. Denver & Rio Grande Western R.R. Co.*, 59 F.3d 1029, 1034 (10th Cir. 1995) (jury should consider only "specific, objective safety rules").

d.    **Res ipsa loquitur** The doctrine of res ipsa loquitur applies in FELA cases and, in appropriate circumstances, permits an inference of negligence on the part of the railroad for railroad-related injuries. For circumstances which warrant an instruction on the doctrine of res ipsa loquitur, see *Robinson v. Burlington Northern R.R. Co.*, 131 F.3d 648, 652-655 (7th Cir. 1997) (citing *Jesionowski v. Boston & Maine R.R.*, 329 U.S. 452, 456- 458 (1947)).

e.    **Negligence Per Se:** When a plaintiff alleges that an employer's violation of a statute or regulation caused or contributed to his injuries, the court should modify the last sentence of this instruction to indicate that a violation automatically constitutes negligence. *Schmitz v. Canadian Pacific Railway Co.*, 454 F.3d 678, 683 (2006) (In FELA actions, "the violation of a statute or regulation ... automatically constitutes a breach of the employer's duty and negligence *per se* and will result in liability if the violation contributed in fact to the plaintiff's injury.") (quoting *Walden v. Ill. Cent. Gulf R.R.*, 975 F.2d 361, 364 (1992)). Unlike typical tort cases, this is true even where the statute or regulation was not designed to protect against the particular type of harm that the plaintiff suffered. *Schmitz*, 454 F.3d at 682-83 (citing *Kernan v. American Dredging Co.*, 355 U.S. 426 (1958)).

f.    **Safety Appliance or Locomotive Inspection Act Claim.** Instruction No. 9.01 is drafted for a case in which the plaintiff sues only under the FELA. If the plaintiff's suit is under both the FELA and the Safety Appliance Act or the Locomotive Inspection Act, Instruction 9.07 should be included in the instructions, and the first sentence of Instruction 9.01 should be modified accordingly. If the only claim is that the defendant violated the Safety Appliance Act or the Locomotive Inspection Act or other federal safety statute or regulation, only Instruction 9.07 should be given.

g.    **Employee.** This instruction presupposes that the parties have stipulated that the defendant is a common carrier covered by FELA and that the plaintiff was injured in the scope and course of employment with the defendant. If this is in dispute, the instruction should be modified by adding a new first element:

> 1. That Defendant employed Plaintiff, and that Plaintiff was working for Defendant when he got hurt;

and by adding at the end of the instruction:

> [For purposes of this case, Plaintiff was "working for" Defendant if he was doing something that Defendant assigned or authorized. [This includes crossing Defendant's property on the way to or from work.]] *Wilson v. Chicago, Milwaukee, St. Paul, and Pacific R.R. Co.*, 841 F.2d 1347, 1352 (7th Cir. 1988).

    **h.    Curative Instructions.** In most cases, supplemental instructions will be unnecessary; Instruction 9.01 provides a statement of the law comprehensive and comprehensible enough to permit counsel to argue most cases to an informed jury. Still, there may be cases in which argument, evidence, or a particular issue will provide reason to instruct on a certain aspect of FELA. For such instances, the Committee suggests the following additions:

    *(1) Non-Delegability.* If the risk arises that the jury may believe that a third party's control over equipment or part of the workplace ameliorates the defendant's duty of reasonable care, the court may wish to add at the end of the first paragraph:

> This responsibility may not be delegated to a third party. [Thus, Defendant must provide a reasonably safe workplace even when Plaintiff's duties require him to enter property or use equipment that someone else owns and controls.]

*See Shenker v. Baltimore & O. R.R. Co.*, 374 U.S. 1, 7-8 (1963); *Regan v. Parker-Washington Co.*, 205 F. 692, 705 (7th Cir. 1913) (under the common law doctrine of master/servant, a master's duty to provide reasonably suitable place and machinery cannot be delegated); *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 448 (6th Cir. 2001).

    *(2) Duty to Inspect.* If a risk is shown to exist that the jury may believe that the employer's duty of reasonable care excludes inspection or reasonable steps to make the workplace safe, the court may wish to add at the end of the first paragraph:

> This responsibility includes inspecting the premises where Defendant's employees will be working and their equipment, and taking reasonable precautions to protect employees from possible danger. [It does not matter who owns the workplace.]

*See Shenker v. Baltimore & O. R.R. Co.* 374 U.S. 1. 8 (1963); *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330 (4th Cir. 1998); *Lockard v. Missouri Pacific R.R. Co.*, 894 F.2d 299, 303 (8th Cir. 1990); *Fulton v. St. Louis-San Francisco Ry. Co.*, 675 F.2d 1130, 1133 (10th Cir. 1982).

*(3) Continuing Duty.*  If a risk is shown to exist that the jury may believe that the plaintiff's time at the workplace affects the employer's duty of reasonable care, the court may wish to add at the end of the first paragraph:

> It does not matter whether Plaintiff's work at the place is brief or infrequent.

*See Bailey v. Central Vermont Ry.*, 319 U.S. 350, 353 (U.S. 1943); *Brown v. Cedar Rapids and Iowa City Ry. Co.*, 650 F.2d 159, 161 (8th Cir. 1981).

*(4)  Assignment of Employees.* If a risk is shown to exist that the jury may believe that the employer's duty of reasonable care does not extend to the assignment of jobs or tasks, the court may wish to add at the end of the first paragraph:

> This responsibility to exercise reasonable care includes assignments of employees to particular tasks.

*See Sea-Land Service, Inc. v. Sellan*, 231 F.3d 848, 851 (11th Cir. 2000); *Fletcher v. Union Pac. R.R. Co.*, 621 F.2d 902, 909 (8th Cir. 1980).

*(5) Procedures and Methods.* If a risk is shown to exist that the jury may believe that the employer's duty of reasonable care does not extend to the selection of methods or procedures or assignment of sufficient workers, the court may wish to add at the end of the first paragraph:

> This responsibility includes decisions about the number of people assigned to a task and to methods or procedures Defendant might require employees to use.

*See Lindauer v. New York Cent. R.R. Co.*, 408 F.2d 638, 640 (2nd Cir. 1969); *Stasior v. National R.R. Passenger Corp.*, 19 F. Supp.2d 835, 844 (N.D. Ill.1998); *Dukes v. Illinois Central R.R. Co.*, 934 F. Supp. 939, 945 (N.D. Ill.1996).

# 9.02 - Definition of Causation

Defendant "caused or contributed to" Plaintiff's injury if Defendant's negligence played a part – no matter how small – in bringing about the injury. [There can be more than one cause contributing to an injury.] The mere fact that an injury occurred does not necessarily mean that the injury was caused by negligence.

## Committee Comments

**a. Authority.** A relaxed standard of causation applies under FELA. The common law standard of proximate cause does not apply under FELA. *Crane v. Cedar Rapids & Iowa R.R. Co.*, 395 U.S. 164, 166 (1969); *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506 (1957).

**b. Multiple Causes.** The bracketed sentence is in accord with *Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 165-166 (2003). The bracketed sentence should be used only in cases in which more than one cause is alleged.

# 9.03  Elements - Defendant's FELA Case

If you find that Defendant's negligence played a part in bringing about Plaintiff's injuries, you must consider Defendant's argument that Plaintiff should share responsibility for his own injuries.  Defendant must prove two things by a preponderance of the evidence:

First:          That Plaintiff was negligent; and

Second:      That Plaintiff's negligence caused or contributed to his own injuries.

If Defendant proves these things, you must then decide what percentage of the injuries was due to Plaintiff's own negligence.

## Committee Comments

**a.      Generally.**  A plaintiff's negligence is not a defense to liability, but can be available to reduce damages.  45 U.S.C. § 53; *Caillouette v. Baltimore & Ohio Chicago Terminal R.R. Co.*, 705 F.2d 243, 246 (7th Cir. 1983). An employer is entitled to an instruction on the plaintiff's negligence if the employer produces evidence of the  employee's lack of due care. *Gish v. CSX Transp., Inc.*, 890 F.2d 989, 992 (7th Cir. 1989); *see also Wise v. Union Pacific R.R. Co.*, 815 F.2d 55, 57 (8th Cir. 1987) (defendant railroad entitled to instruction by showing that the plaintiff, who was injured when he tripped over a disconnected switch, did not look where he was stepping, wasn't wearing proper footwear, and should have seen the switch as others could).

**b.      Usage.**  This instruction should be used only in cases where a defendant asserts that a plaintiff's negligence has caused or contributed to the plaintiff's own injuries.

**c.      Assumption of Risk.**  Although there is some overlap between assumption of risk and contributory negligence, the two are not interchangeable. *Gish v. CSX Transp., Inc.*, 890 F.2d at 991-992.  An assumption of risk is an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties; contributory negligence is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist.  *Id*.  The committee recommends against the giving of an assumption of risk instruction unless it is necessary to correct a misimpression.  *See, e.g., Fashauer v. New Jersey Transit Rail Operations, Inc.*,  57 F.3d 1269, 1280 (3rd Cir. 1995); *Heater v. Chesapeake & Ohio Ry. Co.*, 49 F.2d 1243, 1249 (7th Cir. 1974).  If the court chooses to instruct on this topic in a case in which the issue has been injected, the Committee recommends the addition of the following sentence:

> It is not a defense that an employee may have assumed the risk of his employment.

*See* 45 U.S.C. § 54; *see also Fashauer,* 57 F.3d at 1274-1275 (3rd Cir. 1995); *Green v. Union Pacific R.R. Co.*, 647 N.E.2d 1092, 1099 (Ill. App. Ct. 1995) (instruction proper where assumption of risk is either expressly or implicitly before the jury).

     **d.**    **Causation**.  A single standard of causation should be applied to the plaintiff's negligence claim and the railroad's claim of contributory negligence.  *Norfolk Southern Ry. Co. v. Sorrell,* 127 S.Ct. 799, 808 (2007).

     **e.**    **Sole Cause**. Although it is not error to instruct that the plaintiff may not recover if his negligence was the sole cause of his injury, *Taylor v. Illinois Cent. R.R. Co.*, 8 F.3d 584, 586 (7th Cir.1993) ("If you find that the plaintiff was negligent and that such negligence was the sole cause of any injuries the plaintiff may have sustained, then you are to return a verdict for the defendant."), the Committee believes such an instruction is unnecessary. Instruction 9.01 conditions the plaintiff's recovery on a showing that the defendant's negligence caused or contributed to the plaintiff's injuries, so the Committee recommends against what amounts to a second instruction on this element of the plaintiff's case.

     **f.**    **Apportionment of Negligence.** This instruction is in accord with *Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 144 n.6 (2003).  The FELA does not authorize apportionment of damages between railroad and non-railroad causes. *Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. at 160 ("Nothing in the statutory text instructs that the amount of damages payable by a liable employer bears reduction when the negligence of a third party also contributed in part to the injury-in-suit.").

     **g.**    **Apportionment of Negligence: Wisconsin Approach.** Wisconsin state courts do not inform jurors of the effect of apportionment of fault. *See Foley v. City of West Allis*, 335 N.W.2d 824, 831-833 (Wis. 1983).

## 9.04 - Damages

[If you find in favor of Plaintiff, then] [Regardless of how you have answered the questions concerning negligence and causation] you must determine the amount of money that will fairly compensate Plaintiff for any injury that you find he sustained [and is reasonably certain to sustain in the future].

Plaintiff must prove his damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure.

You should consider the following types of compensatory damages, and no others:

[1.  The reasonable value of medical care and supplies that Plaintiff reasonably needed and actually received [as well as the present value of the care and supplies that he is reasonably certain to need and receive in the future.]]

[2.  The [wages, salary, fringe benefits, profits, earning capacity] that Plaintiff has lost [and the present value of the [wages, salary, fringe benefits, profits, earning capacity] that Plaintiff is reasonably certain to lose in the future] because of his [inability/diminished ability] to work.]

[3.  The reasonable value of household services Plaintiff has been unable to perform for himself to date [and the present value of household services Plaintiff is reasonably certain to be unable to perform for himself in the future).]]

[When I say "present value," I mean the sum of money needed now which, together with what that sum may reasonably be expected to earn in the future, will equal the amounts of those monetary losses at the times in the future when they will be sustained.]

[4.  The physical [and mental/emotional] pain and suffering [and disability/loss of a normal life] [including any aggravation of a pre-existing condition] that Plaintiff has experienced [and is reasonably certain to experience in the future]. No evidence of the dollar value of physical [or mental/emotional] pain and suffering [or disability/loss of a normal life] has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of pain and suffering. You are to determine an amount that will fairly compensate the Plaintiff for the injury he has sustained.]

[If you find for the plaintiff, any damages you award will not be subject to income taxes, so you should consider after-tax income in fixing the amount of damages.]

[Do not make any reduction in the amount of damages that you award based on any percentage of negligence that you have determined. I will reduce the damages that you

award by the percentage of negligence that you assign to Plaintiff.] [Reduce the total amount of Plaintiff's damages by the percentage of negligence attributed to Plaintiff.]

## Committee Comments

**a.** **Usage.** This instruction, a modification of Seventh Circuit Pattern Civil Instruction 7.23, should be used in cases in which the employee's injuries were not fatal. Instruction 9.06, *infra*, should be used when the employee's injuries were fatal. Regarding the first two bracketed sentences, it is within the trial judge's discretion to request a determination of damages regardless of the jury's finding on liability. *Schmitz v. Canadian Pacific Railway Co.*, 454 F.3d 678, 685 (7th Cir. 2006). If the jury is not instructed to apportion the negligence, the final paragraph should not be given.

**b.** **Inability/Diminished Ability to Work.** Damages for impaired future earning capacity are awarded in tort suits when a plaintiff's physical injuries diminish his earning power. *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1370 (7th Cir. 1992). To recover for lost earning capacity, a plaintiff must produce "competent evidence suggesting that his injuries have narrowed the range of economic opportunities available to him . ... [A] plaintiff must show that his injury has caused a diminution in his ability to earn a living." *McKnight v. General Motors*, 973 F.2d at 1370 (quoting *Gorniak v. National R.R. Passenger Corp.*, 889 F.2d 481, 484 (3rd Cir. 1989) (FELA suit by railroad employee).

**c.** **Pre-existing Condition.** As a general principle of tort law, a tortfeasor takes his victim as he finds him; aggravation of a preexisting condition is a separate element of damages. *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1228 (7th Cir. 1995); *Lancaster v. Norfolk & Western Ry. Co.*, 773 F.2d 807, 822 (7th Cir. 1985); *Alexander v. Scheid*, 726 N.E.2d 272, 284 (Ind. 2000); *Voykin v. Estate of DeBoer*, 733 N.E.2d 1275, 1279 (Ill. 2000); *Anderson v. Milwaukee Ins.*, 468 N.W.2d 766, 769 (Wis. Ct. App. 1991). While FELA is founded on common-law concepts of negligence and injury, the court of appeals has not addressed the propriety of a pre-existing condition instruction in a FELA case. If the court chooses to instruct on this topic in a case in which the issue has been injected, the following instruction is found in 3A KEVIN F. O'MALLEY, JAY E. GRENIG, & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS: CIVIL § 155.65 (5th ed. 2001):

> If you find for plaintiff, you should compensate plaintiff for any aggravation of an existing disease or physical defect resulting from such injury.
>
> If you find that there was an aggravation you should determine, if you can, what portion of plaintiff's condition resulted from the aggravation and make allowance in your verdict only for the aggravation. However, if you cannot make

that determination or if it cannot be said that the condition would have existed apart from the injury, you should consider and make allowance in your verdict for the entire condition.

**d.	Present Value.**  In FELA cases "an utter failure to instruct the jury that present value is the proper measure of a damage award is error." *St. Louis Southwestern Ry. Co. v. Dickerson*, 470 U.S. 409, 411-412 (1985).  For a definition of "present value" see ILLINOIS PATTERN INSTRUCTIONS (CIVIL) § 31.12 (2000).

**e.	Emotional Injury.**  An employer has a duty under FELA to avoid subjecting its workers to negligently inflicted emotional injury. This does not include a duty to avoid creating a stressful work environment; only a worker in the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 550-557 (1994).

**f.	Tax Consequences.**  If such an instruction is requested, a jury must be instructed that the verdict will not be subject to income taxes. *Norfolk & Western Ry. Co. v. Liepelt*, 444 U.S. 490, 497-498 (1980).

**g.	Other Means of Recovery:**  The court should not instruct the jury that a plaintiff lacks means of recovery, such as workers' compensation, other than FELA.  *See Schmitz v. Canadian Pacific Railway Co.*, 454 F.3d 678, 685 (7th Cir. 2006) (affirming district court's refusal to instruct jury that plaintiff was ineligible for workers' compensation because such an instruction "could have prejudiced [the defendant] if the jury was moved to find for [the plaintiff] out of concern that his injury might otherwise go uncompensated").

**h.	Wisconsin Approach.**  Judges sitting in Wisconsin may choose not to give the final paragraph. The general rule in Wisconsin is that a jury is not to be informed of the effect of its verdict, in particular how verdict will effect apportionment of damages. *Delvaux v. Vanden Langenberg*, 130 Wis. 2d 464, 387 N.W.2d 751 (1996) "The jury is a finder of fact; its charge does not include its applying the relevant law to the facts of the case, which is the function of the court." *Id*. at 481. Wisconsin courts believe that a jury should not be concerned with what the final result of the lawsuit may be. *Olson v. Williams*, 270 Wis. 57, 71, 70 N.W.2d 10 (1955).

## 9.05 - Mitigation of Damages

See Seventh Circuit Pattern Civil Jury Instruction 3.12.

**Comment**

    **a.**    **Generally.** An injured FELA plaintiff has a duty to mitigate his or her damages. *Russell v. National R.R. Passenger Corp.*,189 F.3d 590, 596 (7th Cir. 1999). "The burden nevertheless falls on the wrongdoer to show that the damages were lessened or might have been lessened by the plaintiff." *DeBiasio v. Illinois Cent. R.R.*, 52 F.3d 678, 688 (7th Cir.1995) (quoting *Jones v. Consolidated Rail Corp.*, 800 F.2d 590, 593 (6th Cir.1986)). The pattern instruction is predicated upon the existence of evidence that the plaintiff failed to mitigate certain damages the plaintiff seeks. *See Russell v. National R.R. Passenger Corp.*,189 F.3d at 596 ("the factual predicate existed because Russell requested damages for future earnings, and testified that she had intended to continue working for a number of years, and would have done so but for her injuries"). The instruction should be modified to specify the type of damages to which it applies.

## 9.06 - Damages (Death Case)

[If you find in favor of Plaintiff, then] [Regardless of how you have answered the questions concerning negligence and causation] you must determine the amount of money that will fairly compensate Plaintiff on behalf of Decedent's family.

Plaintiff must prove his damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure.

You should consider the following types of compensatory damages, and no others:

1.　　The loss of support and other financial benefits [he] [they] would have received from Decedent;

2.　　Loss of services that Decedent would have provided to [him] [them];

3.　　In the case of Decedent's minor children, Plaintiff may recover for the loss of Decedent's care, attention, instruction, training, advice and guidance;

4.　　Any pain and suffering experienced by Decedent before he died; and

5.　　The reasonable expense of medical care and supplies reasonably needed by and actually provided to Decedent.

[Do not make any reduction in the amount of damages that you award based any percentage of negligence that you have determined. I will reduce the damages that you award by the percentage of negligence that you assign to Decedent.] [Reduce the total amount of Plaintiff's damages by the percentage of negligence attributed to Decedent].

### Committee Comments

**a.**　　**Usage.** This Instruction should be used in cases in which the employee's injuries were fatal.  Instruction 9.05, *supra*, should be used in cases which the employee's injuries were not fatal.

**b.    Generally.**    A wrongful death action under FELA is brought by a personal representative for the benefit of specific beneficiaries.  45 U.S.C. § 51.  Damages are those that "flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received if the deceased had not died from his injuries." *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 701 F.2d 1189, 1193 n4. (7th Cir. 1983) (quoting  *Michigan Cent. R.R. v. Vreeland*, 227 U.S. 59, 70 (1913)).  Future pecuniary benefits in a wrongful death action should be awarded at present value. *Chesapeake & O. Ry. Co. v. Kelly*, 241 U.S. 485, 489-490 (1916).

**c.    Pecuniary Loss.**    Recovery in a wrongful death action under FELA is limited to pecuniary losses.  *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990).  The items listed in paragraph 3 have been deemed pecuniary losses in the case of a child beneficiary, *Norfolk & W. R. Co. v. Holbrook*, 235 U.S. 625, 629 (1915); the recovery may differ, though, in the case of a spouse, parent, or an adult child.  If a claim is brought on behalf of an adult child, dependency upon the decedent must be shown and the instructions may need to be modified accordingly. *See, e.g., Thompson v. Camp*, 163 F.2d 396, 403 (6th Cir.1947). Funeral expenses should not be included in damages awarded in a wrongful death action under FELA. *See, e.g., Dubose v. Kansas City Southern Ry. Co.*, 729 F.2d 1026, 1033 (5th Cir. 1984).

**d.    Wisconsin Approach.** Judges sitting in Wisconsin may choose not to give the final paragraph. The general rule in Wisconsin is that a jury is not to be informed of the effect of its verdict, in particular how verdict will effect apportionment of damages. *Delvaux v. Vanden Langenberg*, 130 Wis. 2d 464,387 N.W.2d 751 (1996) "The jury is a finder of fact; its charge does not include its applying the relevant law to the facts of the case, which is the function of the court." *Id*. at 481. Wisconsin courts believe that a jury should not be concerned with what the final result of the lawsuit may be. *Olson v. Williams*, 270 Wis. 57, 71, 70 N.W.2d 10 (1955).

### 9.07 - Locomotive/Boiler Inspection Act; Federal Safety Appliance Act

Plaintiff [also] claims that Defendant violated the _____ Act, which requires a railroad to obey certain regulations about railroad operations. Those regulations require a railroad to [*describe regulated conduct*].

[Some of the standards under the _____ Act are different than the standards I described under FELA. In your deliberations, you must address Plaintiff's FELA claim separately from its _____ Act claim.]

To succeed in his _____ Act claim, Plaintiff must prove two things by a preponderance of the evidence:

1. Defendant violated [this] [one of these] regulation[s];

2. Defendant's violation caused or contributed to Plaintiff's injuries.

If you find Plaintiff has proved these things by a preponderance of the evidence, then Plaintiff is entitled to recover damages from Defendant [without showing that the Defendant was negligent.] [Any negligence on Plaintiff's part is not a matter for your consideration under the _____ Act.]

### Committee Comments

**a.     Generally.** No separate right to sue exists under the Safety Appliance Act, 49 U.S.C §§ 20301-20304, 21302, 21304 (1994), or the Locomotive Inspection Act, 49 U.S.C. §§ 20102, 20701 (1994), *Coffey v. Northeast Illinois Regional Commuter R.R. Corp.*, 479 F.3d 472 (7th Cir. 2007). Nonetheless, for the sake of jury comprehension, this instruction approaches the topic as though the claims are brought under separate statutes since the elements differ. *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298-300 (7th Cir. 1996) (unlike a claim of negligence under FELA, railroads whose employees are injured as a result of violations of the Safety Appliance Act or the Locomotive Inspection Act will incur strict liability). The Safety Appliance Act and the Locomotive Inspection Act impose upon rail carriers an absolute duty to maintain the parts and appurtenances of their locomotives in safe and proper condition. *Id.*

**b.     Usage.** Instruction 9.02 (FELA — Definition of Causation) should be given in conjunction with this instruction. This instruction may be modified for use in cases in which the

plaintiff alleges strict liability for violation of a safety provision of the Code of Federal Regulations or other applicable safety statute.  The bracketed material is included for use when a FELA claim also is being submitted. The bracketed material and its references to negligence should not be given the jury is only considering claims that do not require proof of negligence.

## 9.08 - Sample Special Verdict Form

1.     Do you find that Defendant was negligent and that Defendant's negligence caused or contributed to Plaintiff's injuries?

         ANSWER _____ (Yes or No)

**If you answer "no" to Question 1, do not answer any more questions.**

2.     (Without taking into consideration any possible negligence by Plaintiff) what sum of money do you find to be the total amount of Plaintiff's damages?

         $_____

3.     Do you find that Plaintiff was negligent and that Plaintiff's negligence caused or contributed to his own injuries?

         ANSWER _____ (Yes or No)

**Answer Question 4 only if you answered "Yes" to Question 3.**

4.     What percentage of Plaintiff's damages do you find to have been caused by the negligence of the respective parties?

         (Answer in terms of percentages totaling 100%):

            Plaintiff      _____%

            Defendant    _____%

[5.    The total amount of the damages $_____(from #2) X the percentage of Defendant's fault _____% (from #4(b)) = Net Verdict _____]

Date:_____

                               _____

                               Presiding Juror

(2008 ver.)

# 10. FAMILY MEDICAL LEAVE ACT

## 10.1    Nature of FMLA Claim

Plaintiff claims that Defendant violated the "Family and Medical Leave Act," which is often referred to by its initials, "FMLA."  This law entitles an eligible employee to take up to 12 [26] weeks of unpaid leave during any 12-month period

[because of the birth of a [son] [daughter]]

*or*

[because of the placement of a [son] [daughter] for adoption or foster care]

*or*

[to care for a [spouse] [son] [daughter]  [parent] with a serious health condition]

*or*

[because of the employee's serious health condition that makes him unable to perform the functions of his position]

*or*

[because of [describe qualifying exigency] arising [from the call] [the notice of a call] to active duty in the [Armed Forces] [National Guard] [Reserves] of the employee's [spouse] [son] [daughter] [parent]

*or*

[to care for a member of the Armed Forces who is the employee's [spouse] [son or daughter] [parent] [nearest blood relative] and who is undergoing [medical treatment] [recuperation] [therapy] [in outpatient status] [on temporary disability retired status] for a serious illness or injury].

The FMLA gives the employee the right following FMLA leave [either] to return to the position he held when the leave began [or to an equivalent position].

**Committee Comments**

**a.     General authority:**  29 U.S.C. §§ 2612(a)(1)(A)-(D), 2614.  The FMLA leave period is 12 weeks for leaves due to the birth of a child, the adoption or placement of a child for foster care, the serious health condition of certain family members, the employee's own serious health condition or because of a qualifying exigency arising from the call or notice of a call to active duty of spouse, son or daughter or parent in a war, national emergency or a military operation designated by the Secretary of Defense.  29 U.S.C. § 2612(a)(1)(A)-(E).  FMLA leave is 26 weeks for leave to care for a service member undergoing treatment, recuperation or therapy, on outpatient status or on the temporary disability retired list due to a serious illness or injury.  29 U.S.C. § 2612(a)(3).

**b.     Qualifying exigency:**  Regulations issued under the FMLA define "qualifying exigency."  29 C.F.R. § 825.126(a).  The qualifying exigency involved should be described here.

**c.     Outpatient status:**  For purposes of leave to care for a service member, the FMLA defines "outpatient status" as the status of being assigned to a military medical treatment facility as an outpatient or to a unit established to provide command and control to service members receiving medical care as outpatients.  29 U.S.C. § 2612(16).

**d.     Intermittent leave or leave on a reduced leave basis:**  Except for leaves due to the birth of a child or placement of a child for adoption or foster care, the FMLA allows leave to be taken on an intermittent or reduced leave basis.  29 U.S.C. § 2612(b).  In cases involving alleged denial of an intermittent or reduced leave, the following should be substituted for the last two sentences of this instruction:

> An employee may take FMLA leave on [an intermittent basis] [a reduced leave schedule].  [An employer may temporarily assign an employee taking leave on [an intermittent basis] [a reduced leave schedule] to an alternative position for which he is qualified if the position has equivalent pay and benefits and better accommodates recurring absences.]

**e.     Special rules for local educational institutions:**  The FMLA contains special rules for employees of local educational agencies relating to intermittent leaves, duration of leaves near the conclusion of any academic term, restoration to an equivalent position, and damages.  29 U.S.C. § 2618.  These instructions do not encompass those special rules.

## 10.2    Elements of FMLA Interference Claim

To succeed on this claim, Plaintiff must prove all of the following by a preponderance of the evidence:

First:  [Plaintiff] [Plaintiff's defined family member] had [specify condition].

Second: the condition was a serious health condition.  I will define "serious health condition" for you in a moment.

Third:  Defendant had appropriate notice of Plaintiff's need for leave. I will define "appropriate notice" for you in a moment.

Fourth:  Defendant interfered with his right to take FMLA leave by [not giving him leave] [terminating him] [not allowing him to return to his job or an equivalent position] [discouraging him from taking leave] [not giving him written notice detailing his rights and obligations under the FMLA] [describe other alleged interference].

### Committee Comments

**a.    General authority:** This instruction is for cases in which the plaintiff's right to FMLA leave is alleged to have been denied or otherwise interfered with. 29 U.S.C. § 2615(a)(1). The Plaintiff bears the burden of showing entitlement to FMLA leave.  *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997).  In contrast to a claim that the Plaintiff was retaliated against for taking FMLA leave, a plaintiff claiming denial or interference with his right to take FMLA leave need not show discriminatory intent.  *King v. Preferred Tech'l Group*, 166 F.3rd 887, 891 (7th Cir. 1999); *Goelzer v. Sheboygan County*, 604 F.3d 987, 995 (7th Cir. 2010). See Instruction No. 4 below.

**b.    Scope:** The instruction above deals with leave due to the employee's own serious health condition or that of a covered family member, by far the most common cases.  In cases involving leaves for the other four reasons provided for in the FMLA, the instruction needs to be modified as set out in the comments below. The definition of "serious health condition" is in Instruction No. 6, which should be given in conjunction with this instruction.  The definition of "notice" is in Instruction No. 8, which should be given in conjunction with this instruction.

**c.    Return to job or equivalent position:**  In cases where the Plaintiff is or entitled to be on FMLA leave and is terminated for misconduct, poor performance or as a result of a reduction in force, the employer may present evidence that it would have discharged (or laid off) the Plaintiff even if the leave had not been taken.  29 U.S.C. § 2614(a)(3); 29 C.F.R. § 825.216(a)(1).  The

Plaintiff must then prove that he would have remained in his position had he not taken leave; *Kohls v. Beverly Enter. Wis., Inc.*, 259 F.3d 799, 804 (7th Cir. 2001); *Mitchell v. Dutchmen Mfg., Inc.*, 389 F.3d 746, 748 (7th Cir. 2004); *Rice v. Sunrise Express*, 209 F.3d 1008, 1017-18 (7th Cir.), *cert. denied*, 531 U.S. 1012 (2000).

**d.      Birth of son or daughter:**  In cases involving leave due to the birth of a son or daughter, the instruction should be:

First:  that Plaintiff's [son] [daughter] had been born within the prior 12 months;

Second:  that Defendant had appropriate notice of Plaintiff's need for leave;

Third:  that Defendant interfered with his right to take FMLA leave by [not giving him leave] [terminating him] [not allowing him to return to his job or an equivalent position] [discouraging him from taking leave] [not giving him written notice detailing his rights and obligations under the FMLA].

29 U.S.C. § 2612(a)(1)(A).

**e.      Placement of son or daughter:**  In cases involving leave due to the adoption or placement for foster care of a son or daughter, the instruction should be:

First:  that [Plaintiff had adopted a [son] [daughter]] [a [son] [daughter] had been placed with him for foster care] within the past 12 months;

Second:  Defendant had appropriate notice of Plaintiff's need for leave;

Third:  that Defendant interfered with his right to take FMLA leave by [not giving him leave] [terminating him] [not allowing him to return to his job or an equivalent position] [discouraging him from taking leave] [not giving him written notice detailing his rights and obligations under the FMLA].

29 U.S.C. § 2612(a)(1)(B).

**f.      Due to active duty:**  In cases involving leave due to the active duty or call to active duty of a covered family member, the instruction should be:

First:  that Plaintiff's [spouse] [son] [daughter] [parent] was [on active duty] [called to active duty].

Second:  that there was [a qualifying exigency] arising out of the [active duty] [call to active duty].

(2015 rev.)

Third:  Defendant had appropriate notice of Plaintiff's need for leave.

Fourth:  that Defendant interfered with his right to take FMLA leave by [not giving him leave] [terminating him] [not allowing him to return to his job or an equivalent position] [discouraging him from taking leave] [not giving him written notice detailing his rights and obligations under the FMLA].

**g.    Serious illness or injury of service member:**  In cases involving leave to care for a service member with a serious illness or injury, the instruction should be:

First:  that Plaintiff is the [spouse] [son] [daughter] [parent] [nearest blood relative] of a service member.

Second:   that Plaintiff's [spouse] [son] [daughter] [parent] [nearest blood relative] [undergoing [medical treatment] [recuperation] [therapy]] [in outpatient status] [on the temporary disability retired list] for a serious illness or injury.  I will define "serious illness or injury" for you in a moment.

Third:  that Defendant had appropriate notice of Plaintiff's need for leave.

Fourth:  that Defendant interfered with his right to take FMLA leave by [not giving him leave] [terminating him] [not allowing him to return to his job or an equivalent position] [discouraging him from taking leave] [not giving him written notice detailing his rights and obligations under the FMLA].

**h.    Intermittent leave or leave on a reduced leave basis:**  Except for leaves due to the birth of a child or placement of a child for adoption or foster care, the FMLA allows leave to be taken on an intermittent or reduced leave basis.  29 U.S.C. § 2612(b).  In cases involving alleged denial of an intermittent or reduced leave, for the employee's own serious health condition, the final three elements should be:

Third:  that Plaintiff sought leave on [an intermittent basis] [a reduced leave schedule] due to his serious health condition.

Fourth:   if requested by Defendant, that Plaintiff provided Defendant with a written certification by his health care provider that he was unable to do his job, [of the dates on which medical treatment is expected to be given and how long the treatment will last] [of the medical necessity for the [intermittent] [reduced schedule] leave] and the expected duration of the leave.

Fifth:  that Defendant interfered with his right to take FMLA leave by [not giving him leave] [terminating him] [not allowing him to return to his job or an equivalent position]

[discouraging him from taking leave] [not giving him written notice detailing his rights and obligations under the FMLA].

29 U.S.C. § 2613(b)(4)(B), (5), (7).  This instruction should be modified as appropriate in cases involving alleged denial of an intermittent or reduced leave for other reasons.  If there is a dispute of fact about whether the Defendant requested the written certification by Plaintiff's health care provider, the jury should be instructed that it is the Defendant's burden to show that the certification was requested.

(2015 rev.)

## 10.3    Supplemental Instructions for Specific Issues

**a.    Substitution of paid leave:**  Paid [vacation] [personal] [family] [medical] [sick] leave may be substituted for all or part of the 12 [26] weeks of unpaid leave provided for by the FMLA.

**b.    Definition of "son" or "daughter":**  This case involves Plaintiff's [biological child] [adopted child] [a foster child] [stepchild] [legal ward], who is considered his [son][daughter] for purposes of this law.

**c.    *In loco parentis*:**    Although [name] is not Plaintiff's biological [parent][son][daughter], he is considered a ["parent"]["son"]["daughter"] under the law because he occupied the same role in Plaintiff's life that a biological [parent][son][daughter] would be expected to occupy.

**d.    Return to former position:**  An employee need not be returned to that position if [his job would have been eliminated if he had not taken leave] [he was a key employee].]

### Committee Comments

**a.    Substitution of paid leave:**  The FMLA allows certain paid leaves to be substituted for all or a part of the 12 or 26-week FMLA-required unpaid leave.  29 U.S.C. § 2612(d); *Repa v. Roadway Express, Inc.*, 477 F.3d 938, 941 (7th Cir. 2007).  Where appropriate, the jury should be instructed as to the types of paid leaves that may be substituted for the FMLA leave involved.

**b.    Definition of "son" or "daughter":**  The FMLA defines "son or daughter" to include a biological child, an adopted child, a foster child, a stepchild, a legal ward or the child of a person standing *in loco parentis*.  29 U.S.C. § 2611(12);  29 C.F.R. § 825.113(c).  The FMLA limits "son or daughter" to persons under the age of 18 or those 18 or older who are incapable of self-care because of a physical or mental disability.  29 U.S.C. § 2611(12).  Where a case presents an issue as to whether a son or daughter is incapable of self-care, the following additional element should be inserted after the second element and the remaining renumbered: "Second: that his [son] [daughter] was incapable caring for [himself] [herself] because of a [mental] [physical] disability." 29 U.S.C. § 2612(a)(1)(C); 29 C.F.R. § 824.13(c); 29 C.F.R. § 825.114(a)(2), et seq.

**c.    Definition of "parent":**  The FMLA defines "parent", "son", and "daughter" to include *in loco parentis* relationships.  29 U.S.C. § 2611(7), (12).

**d.    Reinstatement – key employees:**  Reinstatement may be denied to a key employee, that is, a salaried employee who is among the highest paid ten percent of employees within 75 miles of the facility where the employee was employed if certain additional requirements are met.  29 U.S.C. § 2614(b); 29 C.F.R. §§ 216(b), 217, 219.

## 10.4    Elements of FMLA Retaliation Claim

To succeed on this claim, Plaintiff must prove, by a preponderance of the evidence, that his [protected activity] was a motivating factor in Defendant's decision to [adverse action] him. The term "motivating factor" means a reason why Defendant took the action that it did. It does not have to be the only reason.

If you find that Plaintiff's [protected activity] motivated Defendant to [adverse action] him, you must find for Plaintiff - unless you decide that Defendant has proved by a preponderance of the evidence that it would have [adverse action] him even if Plaintiff had not [protected activity].

If you find that Defendant has proved that, then you must find for Defendant.  If you find that Defendant has not proved that, then you must find for Plaintiff.

### Committee Comments

**a.    General authority:**  The FMLA prohibits discharging or discriminating against an employee for exercising his rights under the FMLA.  29 U.S.C. §§ 2615(a)(2), (b).

**b.    Scope:**   Unlike an FMLA interference claim, a claim of retaliation requires a showing of discriminatory intent.  *Goelzer v. Sheboygan County*, 604 F.3d 987, 995 (7th Cir. 2010) ("The difference between a retaliation and interference theory is that the first 'requires proof of discriminatory or retaliatory intent while [an interference theory] requires only proof that the employer denied the employee his or her entitlement under the Act.' "), quoting, *Kauffman v. Federal Express Corp.*, 426 F.3d 880, 884-85 (7th Cir. 2005).  The methods of proving a retaliation claim are the same as under Title VII and other similarly-interpreted statutes.  *Smith v. Hope School*, 560 F.3d 694, 702 (7th Cir. 2009); *Burnett v. LFW, Inc.*, 472 F.3d 471, 481-82 (7th Cir. 2006).

**c.    Mixed motive:**  In certain cases, a party may elect to pursue a mixed motive theory. In such a case, this instruction should be modified accordingly.  *Goelzer v. Sheboygan County*, 604 F.3d 987, 995 (7th Cir. 2010); *Lewis v. School Dist. No. 70,* 523 F.3d 730, 741-42 (7th Cir. 2008).

**10.5    Definition of "Equivalent Position"**

An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perks and status.  It must involve the same or substantially the same duties, which must entail substantially equivalent skill, effort, responsibility, and authority.

**Committee Comments**

General Authority:  29 C.F.R. § 825.215(a); *Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. 2008).

## 10.6    Definition of "Serious Health Condition"

The phrase "serious health condition" means an [illness] [injury] [impairment] [physical condition] [mental condition] that involves [inpatient care in a [hospital] [hospice] [residential medical care facility]] [continuing treatment by a health care provider].

[To establish continuing treatment by a health care provider, plaintiff must prove that [he][his][spouse][son][daughter][parent]:

[was unable to [work], [attend school], [or perform other regular daily activities] due to that condition, and [was treated two or more times by a health care provider [absent extenuating circumstances]] [was treated on at least one occasion by a health care provider resulting in a regimen of continuing treatment under the supervision of the health care provider]

*or*

[was unable to [work], [attend school], [or perform other regular daily activities] due to pregnancy or for prenatal care]

*or*

[was unable to [work], [attend school], [or perform other regular daily activities] due to a chronic serious health condition.  A chronic serious health condition is one that requires periodic visits for treatment by a health care provider, continues over an extended period of time or causes episodic incapacity.]

*or*

[was unable to [work], [attend school], [or perform other regular daily activities] on a permanent or long-term basis due to a condition for which treatment may not be effective]

*or*

[was absent to receive multiple treatments by a health care provider either for surgery after an accident or injury or for a condition that would likely prevent him from [working], [attending school], [or performing other regular daily activities] for more than three consecutive days without medical care.]]

(2015 rev.)

**Committee Comments**

     **a.**     **General authority:** 29 U.S.C. § 2611(11); 29 C.F.R. §825.115(a); *Burnett v. LFW Inc.*, 472 F.3d 471, 478 (7th Cir. 2006).

     **b.**     **Healthcare provider**: Healthcare provider is defined in the statute, 29 U.S.C. §2611(6), and regulations, 29 C.F.R. §825.800.

     **c.**     **Treatment:** Absences due to substance abuse are treated differently from absences due to other conditions. Absences due to treatment for substance abuse qualify for FMLA leave, but absences that result from use of the substance do not qualify. *Darst v. Interstate Brands Corp.*, 512 F.3d 903 (7th Cir. 2008).

## 10.7    Definition of "Serious Illness or Injury" in Armed Forces Cases

As used in these instructions, the phrase "serious illness or injury" means an injury or illness incurred by a service member [in the line of duty on active duty] [that existed before the service member's active duty and was aggravated by service in the line of duty on active duty] that may render him medically unfit to perform the duties of his [office] [grade] [rank] [rating].

### Committee Comments

**General authority:**  29 U.S.C. § 2611(18); 29 C.F.R. § 825.127(a)(1).

## 10.8    Notice

Plaintiff must give Defendant at least 30 days notice before FMLA leave was to begin. If that was not possible, Plaintiff must have given notice as soon as both possible and practical, taking into account all of the facts and circumstances. Plaintiff must have given at least verbal notice sufficient to make Defendant aware that he needed FMLA leave. Plaintiff did not need to mention the FMLA or use any specific words if he gave Defendant enough information that Defendant knew, or should have known, that Plaintiff needed FMLA leave.

or

Plaintiff did not need to give advance notice to Defendant if [Plaintiff could not have foreseen his need for leave] [Plaintiff was incapable of giving notice]. As soon as both possible and practical, taking into account all of the facts and circumstances, Plaintiff should have given notice. Plaintiff [someone acting on Plaintiff's behalf] must have given at least verbal notice sufficient to make Defendant aware that he needed FMLA leave. Plaintiff did not need to mention the FMLA or use any specific words if he gave Defendant enough information that Defendant knew, or should have known, that he needed FMLA leave.

or

Plaintiff did not need to request FMLA leave if the Defendant knew or should have known from the circumstances that Plaintiff needed FMLA leave or was so incapacitated that he could not provide notice of his need for leave.

### Committee Comments

**a.    General authority:** Except for leaves due to a qualifying exigency relating to a call to active duty, where the need for leave is forseeable the FMLA requires the employee to provide at least 30 days advance notice of the need for leave or, if less, as much advance notice as is practicable. 29 U.S.C. § 2612(e)(1). If the leave is not forseeable, the employee must provide as much advance notice as practicable in the particular case. 29 C.F.R. § 303(a). For leave due to a qualifying exigency relating to a call to active duty, notice must be given as soon as is practicable regardless of how far in advance such leave is forseeable. 29 U.S.C. § 2612(e)(3); 29 C.F.R. § 302(a).

**b.**    **Sufficient information or notice:**  An employee meets his notice obligation if he provides sufficiently clear information for the employer to know that he probably is entitled to FMLA leave.  *Stevenson v. Hyre Electric Co.*, 505 F.3d 720 (7th Cir. 2007).  An employee may be excused from asking for leave when circumstances (e.g., observable changes in the employee's behavior) provide the employer with sufficient notice of the need for FMLA leave or when the employee is so incapacitated that he cannot provide notice.  *Burnett v. LFW Inc.*, 472 F.3d 471, 478-79 (7th Cir. 2006) (citing *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381-82 (7th Cir. 2003)) (erratic behavior triggers notice); *Stevenson*, 505 F.3d 720 (same).  An employee's telling his employer that he is "sick," even if suffering from a serious health condition, generally is insufficient notice.  *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001).  Information that is inadequate to alert the employer of the need for leave may be enough to obligate the employer to inquire further as to the need for leave.  *Righi v. SMC Corp.*, 632 F.3d 404, 409-10 (7th Cir. 2011).

**c.**    **Employer notice requirements:**  Absent unusual circumstances, where an employer has customary notice procedures regarding requests for leave, the employer may require the employee to comply with its procedures.  29 C.F.R. § 825.302(d), § 825.303(c); *Gilliam v. United Parcel Service, Inc.*, 233 F.3d 969, 971 (7th Cir. 2000).

## 10.9    Damages: Lost Wages or Benefits

If you find that Plaintiff has proved his claim by a preponderance of the evidence, you should award him as damages any lost wages and benefits he would have received from Defendant if he had [been granted a FMLA leave] [been reinstated following his FMLA leave] [[not been] [adverse employment action]].  [You should then reduce this amount by any wages and benefits that Plaintiff received from other employment during that time [that he would not otherwise have earned]].  It is Plaintiff's burden to prove that he lost wages and benefits and the amount of his loss.

### Committee Comments

**a.**    **General authority:**  29 U.S.C. § 2617(a)(1).  If Plaintiff did not lose wages or benefits, then Plaintiff may recover his actual monetary losses as a result of any leave denial.  29 U.S.C. § 2617(a)(1)(A); *Harrell v. U.S. Postal Service*, 445 F.3d 913, 928-29 (7th Cir. 2006).  See Instruction No. 11 below.

**b.**    **Jury must determine damages:** The Committee contemplates that Pattern Instruction No. 3.09 ("Damages: General") be given before this instruction.

**c.**    **Reduction of lost wages and benefits:**  In certain cases, it may be appropriate to add the following sentence:  "In calculating [lost wages][benefits] you should not deduct [Social Security benefits][unemployment compensation][pension benefits]." *EEOC v. O'Grady*, 857 F.3d 383 (7th Cir. 1988); *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417 (7th Cir. 1986).

**10.10  Damages: Mitigation**

Defendant argues that Plaintiff's claim for [lost wages][benefits] should be reduced by [describe the reduction].  Defendant must prove by a preponderance of the evidence that (1) Plaintiff did not take reasonable actions to reduce his damages, and (2) Plaintiff reasonably might have found comparable employment if he had taken such action.  If you find that Defendant has proven both those things, you should reduce any amount you might award Plaintiff for [lost wages] [benefits] by the amount he reasonably would have earned during the period for which you are awarding [lost wages] [benefits].

### Committee Comments

**General authority:**  29 U.S.C. § 2617(a)(1).

## 10.11  Damages: Where No Lost Wages or Benefits

If you find that Plaintiff has proved his claim by a preponderance of the evidence, you should award him any actual monetary losses he sustained as a result.  It is Plaintiff's burden to prove that he had monetary losses and the amount of those losses.

### Committee Comments

**General authority:**  29 U.S.C. § 2617(a)(1).  This instruction should be given only if Plaintiff did not lose wages or benefits, but had other monetary losses such as the cost of providing care.  29 U.S.C. § 2617(a)(1)(A)(i)(II); *Harrell v. United States Postal Service*, 445 F.3d 913, 929 (7th Cir. 2006); *Cianci v. Pettibone Corp.*, 152 F.3d 723, 728 (7th Cir. 1998).

# 11. PATENTS

### *Preliminary Instructions to Be Given at Outset of Trial*

## 11.1.1 THE PARTIES AND THE NATURE OF THE CASE

This is a patent case. It involves U.S. Patent No[s]. _____, _____, and _____. Patents are often referred to by their last three digits. I will call the patent[s] in this case the ____, ____, and ____ patent[s].

The ___ patent relates to [*briefly describe technology or subject matter involved; repeat as necessary for each patent*]. During the trial, the parties will offer testimony to familiarize you with this [technology; subject matter].

Plaintiff contends that Defendant [infringed; is infringing] the ___ patent by its [making / using / selling / offering for sale / importing] _____. Plaintiff contends that it is entitled to recover damages caused by that infringement. [Plaintiff also contends that Defendant's infringement was willful.]

Defendant [denies that it [infringed; is infringing] the ___ patent] [and] [contends that the ___ patent is invalid].

I will explain these contentions to you later. First, I will give you some background about the U.S. patent system, the parts of a patent, and how a person gets a patent.

### Committee Comment

1. The purpose of the proposed preliminary instructions is to give the jury an overview of the applicable law, rather than a detailed description of the law that the jury ultimately will apply during its deliberations. The trial judge may, if she wishes, use as preliminary instructions the more complete set of applicable instructions contained in Sections 2 through 4.

2. The bracketed section in the second paragraph is intended to include a short descriptive overview of the nature of the patented technology, without getting into the details of that technology.

3. The third paragraph should be tailored to the types of infringement being alleged in the case, e.g., making, using, selling, etc., and can include reference to contributory or inducement infringement if those issues are present.

(2008 rev.)

**11.1.2      THE PATENT SYSTEM**

Patents are issued by the United States Patent and Trademark Office, which is part of our government.

A patent is granted to the inventor for a set period of time, which, in this case, is [20 years from the time the application for the patent was filed] / [17 years from the date the patent issued].

During the term of the patent, if another person makes, uses, offers to sell, or sells in the United States or imports something that is covered by the patent without the patent owner's consent, that person is said to infringe the patent. The patent owner enforces a patent against persons believed to be infringers in a lawsuit in federal court, such as in this case.

The invention covered by a patent is described in the part of the patent that is called the "patent claim" or "patent claims." The patent claims are found in separately-numbered paragraphs at the end of the patent. When I use the word "claim" or "claims," I am referring to those numbered paragraphs.

[To be entitled to patent protection, an invention must be new, useful and non-obvious. A patent is not valid if it covers [a product; a process] that was already known or that was obvious at the time the invention was made. That which was already known at the time of the invention is called "prior art." I will give you more instructions about what constitutes prior art at the end of the case.]

**Committee Comment**

1. The Federal Judicial Center has published, in video format, a video entitled "An Introduction to the Patent System" (Fed. Jud. Center 2002), which the Court may wish to consider displaying to the jury at the outset of the case.

2. The Committee believes that a short introduction to the general nature of the patent system is appropriate because that system is not typically known to most jurors. This description is based primarily on the patent statute.

3. The reference to the length of the patent term found in the second paragraph should be modified depending on the term of the patent(s) at issue.

4. Where bracketed references to "product; process" are found, the court should use the appropriate term depending on the type(s) of patent claim(s) at issue.

# 11.1.3     HOW A PATENT IS OBTAINED

When an applicant for a patent files a patent application with the Patent and Trademark Office, the application is assigned to a Patent Examiner. The Patent Examiner reviews the application to determine whether or not the invention described in the patent application and set out in the claims meets the requirements of the patent laws for patentable inventions.

The Patent Examiner advises the applicant of his findings in a paper called an "office action." The Examiner may "reject" the claims, that is, refuse to issue a patent containing those claims, if he or she believes the claims do not meet the requirements for patentable inventions. The applicant may respond to the rejection with arguments to support the claims, by making changes or amendments to the claims, or by submitting new claims. If the Examiner ultimately determines that the legal requirements for a patent have all been satisfied, he "allows" the claims, and the Patent and Trademark Office issues a patent.

This process, from the filing of the patent application to the issuance of the patent, is called "patent prosecution." The record of papers relating to the patent prosecution is called the prosecution history or file history. The prosecution history becomes available to the public when the patent is issued or the application is published by the PTO (normally 18 months after filing).

## Committee Comment

This instruction is intended for cases in which the jury will be hearing evidence regarding the prosecution history of the patent and may be eliminated in cases in which there is no such issue.

Read in conjunction with Instructions 1.2 through 1.4, this instruction completes the description of the patent system. Use of these instructions, alone or together with the Federal Judicial Center video referenced in the Committee Comment to Instruction 1.2, could obviate the need for the parties to present "patent experts" to explain the patent system, the importance of claims, the parts of a patent, and the prosecution of patents. These instructions are not, however, intended to preclude, in an appropriate case, expert testimony focused on specific matters concerning, for example, the prosecution history of the patent at issue

## 11.1.4 THE PARTS OF A PATENT

A patent includes two basic parts: a written description of the invention, and the patent claims. The written description, which may include drawings, is often called the "specification" of the patent.

You have been provided with a copy of the ___ patent. Please look at the patent as I identify its different sections. [Other patents are also involved in this case. I am using this particular patent as an example to describe the various parts of a patent.]

The first page of the ___ patent provides identifying information, including the date the patent issued and patent number along the top, as well as the inventor's name, the filing date, [the assignee, which is the company or individual that currently owns the patent], and a list of the prior art publications considered in the Patent Office during the time the patent was being sought.

The specification of the patent begins with a brief statement about the subject matter of the invention, which is called an abstract. This is found on the first page.

[Next, are the drawings, which appear as Figures __ to __ on the next __ pages. The drawings depict various aspects or features of the invention. They are described in words later in the patent specification.]

The written description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered. The written description of the ___ patent begins at column 1, line 1, and continues to column ___, line ___. [It includes a background section, a summary of the invention, and a detailed description of the invention, including some specific examples.]

The written description is followed by one or more numbered paragraphs, which are called the claims. The claims may be divided into a number of [parts or steps], which are called "claim limitations" or "claim requirements." In the patent, the claims begin at column __, line __ and continue to the end of the patent, at column __, line ___.

**Committee Comment**

The purpose of this instruction is to give the jurors a brief introduction to the anatomy of a patent document, which will assist them in understanding terminology likely to be used by counsel and witnesses during the course of the trial. This can be best accomplished if the jurors are provided with a copy of the patent or, if multiple patents are involved, one of the patents that is at issue. If multiple patents are involved, the bracketed sentence at the end of the second paragraph should be used.

## 11.1.5 THE PATENT CLAIMS

The claims of a patent define the invention covered by the patent. [In other words, the claims describe what the patent does and does not cover, somewhat like the way a property deed describes the boundaries of a parcel of land.]

When a [product; process] is accused of infringing a patent, the patent claims must be compared to the accused [product; process] to determine whether infringement has been proven. [The claims are also at issue when the validity of a patent is challenged.] [In reaching your determinations with respect to infringement [and invalidity], you must consider each claim of the patent separately.]

In this case, we are concerned with claims _____ of the _____ patent. Plaintiff contends that Defendant infringed [this; these] claims. . Defendant denies this [and contends that claims ____ are invalid].

The language of patent claims may not be clear to you, or the meaning or the claims may be disputed by the parties. I will tell you what certain words in the patent claims mean. You must use the meanings I give you when you decide whether the patent is infringed [and whether it is invalid].

### Committee Comment

Because the patent claims are the central focus in any patent litigation, it is important for the jury to learn early on that the patent claims are important. This instruction is intended to alert the jury to the purpose of the patent claims and to identify those that are alleged to be infringed.

If the court has construed the claims or limitations in them prior to trial, consideration should be given to utilizing the bracketed sentences in the middle of the final paragraph. That paragraph may be further expanded to provide the court's construction at this point, although to do so would require the court to provide the complete claim language, followed by the construction, to place that construction in context. The Committee believes that the better course is to permit the court's construction to be used by counsel during opening statements, rather than providing the construction in preliminary instruction.

(2008 rev.)

**11.1.6        ISSUES TO BE DECIDED**

I will now give you some information about the law and the issues that will be presented to you at this trial. At the close of the trial, I will give you specific instructions about the law you are to follow as you deliberate to reach your verdict. You must follow the law as I describe it to you.

### 11.1.7 INFRINGEMENT; BURDEN OF PROOF

Plaintiff contends that Defendant [infringes; has infringed; has induced someone else to infringe; has contributed to infringement of] the ___ patent[s]. Defendant denies [this; these] contention[s]. Plaintiff is required to prove infringement by a preponderance of the evidence. This means that Plaintiff must persuade you that its contentions are more probably true than not true. I will describe Plaintiff's contentions regarding the issue of infringement.

## 11.1.8     DIRECT INFRINGEMENT

Plaintiff contends that Defendant infringes claims ____ of the patent by its [use, sale, or offer for sale of product/use of process]. [This is called "direct infringement."]

To establish direct infringement, Plaintiff must prove that every requirement in [the particular claim of Plaintiff's patent that you are considering; Plaintiff's patent] is found in Defendant's [product; process]. A requirement of a claim is found in Defendant's [product; process] if the requirement is in the [product; process] exactly as it is in the claim [or] [if the requirement is in the [product; process] in a manner that is equivalent to what is in the claim. A [part of Defendant's product; step in Defendant's process] is equivalent to a claim requirement if it performs substantially the same function, in substantially the same way, to reach substantially the same result. In my instructions at the end of the case, I will explain in more detail how you make this determination.]

  [*Describe specific product/process accused of infringement and which claims are alleged to be infringed*.]

### Committee Comment

This instruction, and those that follow, are adapted from the "final" instructions on infringement and validity that appear later in these Instructions. They are, for the most part, truncated versions of those instructions intended to provide an introduction to the issues to be presented during the trial.

## 11.1.9 INDIRECT INFRINGEMENT

Plaintiff contends that Defendant induced [someone; *name of alleged direct infringer*] to infringe [claims __, __, __ of] Plaintiff's patent. Plaintiff contends that Defendant induced [someone; *name of alleged direct infringer*] to infringe [claims __, __, __ of] Plaintiff's patent. To succeed on this contention, Plaintiff must prove that Defendant knew of Plaintiff's patent, [acted; encouraged; instructed] [*insert name or other description of direct infringer*] to [[use / make] a product; perform a process] in a manner that infringed Plaintiff's patent, and knew or should have known that its acts would cause [*insert name or other description of direct infringer*] to infringe Plaintiff's patent.

Plaintiff [also] contends that Defendant contributed to the infringement of [claims ____ of] Plaintiff's patent. To succeed on this contention, Plaintiff must prove that Defendant knew of Plaintiff's patent, [sold; supplied] a component that forms a significant part of the patented invention and that is not a commonly available item with other uses. Plaintiff must also prove that another person infringed Plaintiff's patent by using this component and that Defendant knew the component was especially made for a use that would infringe Plaintiff's patent.

### Committee Comment

The first paragraph of this instruction describes the issues on a claim of inducement to infringe. The second paragraph describes the issues on a claim of contributory infringement.

## 11.1.10  WILLFUL INFRINGEMENT

Plaintiff contends that Defendant infringed Plaintiff's patent willfully. To prove willful infringement, Plaintiff must prove by clear and convincing evidence that Defendant knew it was highly likely that its actions constituted infringement of a valid patent, and defendant either knew of this high likelihood, or it was so apparent that Defendant should have known.  "Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true. This is more demanding than the "preponderance of the evidence" requirement that applies to infringement generally.

At the conclusion of the case, I will explain in more detail how you are to decide the issue of willful infringement.

### Committee Comment

Because the burden of proof for willful infringement differs from that for infringement generally, a separate instruction directed to the higher "clear and convincing evidence" standard should be included in the preliminary instructions.

(2008 rev.)

## 11.1.11 DAMAGES

Plaintiff contends that it has suffered damages as a result of Defendant's infringement in the form of [lost profits that Plaintiff would have made if Defendant had not infringed] [and/or] [a reasonable royalty on each of Defendant's sales of an infringing [product; process]]. I will explain to you at the end of the case [how lost profits are calculated [and/or] how a reasonable royalty is determined].

Plaintiff must prove its damages by a preponderance of the evidence.

### Committee Comment

The court should tailor this preliminary instruction to the theory or theories of damages being advanced. Often a patent holder will seek lost profits damages on some infringing sales and a reasonable royalty on the remainder, thus making the damages proofs, and the related instructions, inherently complex.

This preliminary damages instruction does not address damages flowing from collateral or "convoyed" sales. The committee did not believe it necessary to include a preliminary instruction addressing this type of contention because it would unduly increase the complexity of the preliminary instructions. The matter of such sales can be addressed by counsel in opening statements.

## 11.1.12    INVALIDITY

Defendant contends that claims _____ of the ___ patent(s) are invalid. Only a valid patent may be infringed. Plaintiff denies that these claims are invalid.

The law presumes each claim of the ___ patent(s) to be valid.  For this reason, Defendant has the burden of proving invalidity by clear and convincing evidence. "Clear and convincing" evidence [has the same definition that I just provided to you.] [means evidence that convinces you that it is highly probable that the particular proposition is true. This is a higher burden of proof than "preponderance of the evidence."]

 If you find that any one of the requirements for a valid patent is not met for a patent claim, then that claim is invalid. You must consider the issue of validity separately for each claim that is at issue.

I will now explain to you briefly the legal requirements for each of the grounds on which Defendant relies to contend that the patent claims are invalid. I will provide more details for each ground in my final instructions.

### Committee Comment

The bracketing in the second paragraph takes account of the fact that the Court may have already defined "clear and convincing" evidence in a case involving a claim of willful infringement; there is no need to provide the definition twice.

## 11.1.13 INVALIDITY — ANTICIPATION

Defendant contends that the invention covered by claims ___ of the ___ patent is not new because it was "anticipated" by the prior art. "Prior art," in general, includes anything that was publicly known prior to Plaintiff's invention. I will provide you with a more specific definition following the conclusion of the evidence.

To prove that a claim is anticipated by the prior art, Defendant must prove by clear and convincing evidence that each and every requirement of the claim is present in a single item of prior art and that a person with an ordinary level of skill in the field of the invention who looked at the prior art would have been able to make and use the invention disclosed in the claim.

### Committee Comment

As reflected in the final instructions on anticipation, there are a number of grounds upon which a patent claim can be held invalid for anticipation. If the case involves a small number of particularized invalidity issues, the court may wish to consider giving, in lieu of this instruction, an instruction tailored to that particular issue or issues. The final instructions covering the particular issue or issues may be adapted for this purpose.

## 11.1.14     INVALIDITY — OBVIOUSNESS

Defendant contends that claims ___ of the ___ patent are invalid for obviousness. A patent claim is invalid for obviousness if a person with an ordinary level of skill in the field of the invention who knew about all the prior art existing at the time of the invention would have come up with the invention at that time. ["Prior art" in general, includes anything that was publicly known prior to Plaintiff's invention. I will provide you with a more specific definition following the conclusion of the evidence.] [Unlike anticipation, obviousness may be shown by considering more than one item of prior art.]

### Committee Comment

The bracketing of the definition of "prior art" takes account of the fact that the Court may have just defined this term in describing the defense of anticipation.

## 11.1.15 INVALIDITY — WRITTEN DESCRIPTION/CLAIMING REQUIREMENTS

Defendant contends that claims __ of the ___ patent are invalid because the patent does not contain [a written description of the invention/an enabling description of the invention/a description of the best mode of the invention]. To succeed on this contention, Defendant must prove that:

[- The specification section of the patent does not contain an adequate written description of each and every requirement of the particular patent claim that is at issue.]

[- The specification section of the patent does not contain enough information to enable a person of ordinary skill in the field of the invention to make and use the invention without undue experimentation.]

[- The written description of the patent does not describe the "best mode," or best way, to [make; use; carry out] the [product; process] covered by the patent that was known to the inventor at the time he applied for the patent.]

I will explain in more detail at the end of the case how you decide [this; these] issue[s].

### Committee Comment

The Court should use only the instructions for the particular "claim requirement" defenses involved in the particular case.

## 11.1.16    PERSON OF ORDINARY SKILL

In these instructions, I have used the concept of a "person of ordinary skill in the field of the invention." In this case, the field of the invention is [insert]. It will be up to you to decide the level of ordinary skill in that field. I will give you further instructions about this at the end of the case.

## 11.2.1 THE PATENT SYSTEM

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about those aspects of patent law that specifically relate to this case.

## 11.2.2 PERSON OF ORDINARY SKILL

Some issues in patent cases are determined by reference to a "person of ordinary skill in the field of the invention," a term that I will use later in these instructions. In this case, the field of the invention is [insert].

It is up to you to decide the level of ordinary skill. In making this decision, you should consider all the evidence, including:

- the levels of education and experience of persons working in the field;

- the types of problems encountered in the field; and

- the sophistication of the technology in the field.

### Committee Comment

The level of ordinary skill in the art/field is a prism or lens through which a judge or jury views the prior art and the claimed invention. *See Graham v. John Deere Co*., 383 U.S. 1, 27-28 (1966); *Dystar Textilfarben GmbH v. C.H. Patrick Co.,* 464 F.3d 1356, 1360-3 (Fed. Cir. 2006); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323-25 (Fed. Cir. 1999); *Ruiz v. A.B. Chance Co*., 234 F.3d 654, 666-67 (Fed. Cir. 2000). The list of factors is adapted from N.D. Cal. Patent Jury Instr. 4.3.b.iii.

The level of ordinary skill in the pertinent art is one of the three basic factual inquiries in applying the nonobviousness condition of patentability. It is also the standard for determining the enabling quality of the disclosure in a patent specification or a publication. Generally, the skill is that of a person who would be expected to solve the type of problem in question rather than that of a person who ordinarily uses the product or process. The Committee chose to use the phrase "ordinary skill in the field" rather than the patent law term "ordinary skill in the art," believing that this would be more understandable to lay jurors.

The Committee placed this definition early in the instructions because, in some cases, it may be used several times, for example, in describing the doctrine of equivalents, the written description requirement, etc. In a case in which the term is used only at a later point in the instructions, the trial judge may wish to consider moving the definition so that it is closer to the particular place(s) where the term is used.

## 11.2.3 THE PARTS OF A PATENT

A patent includes two basic parts: a written description of the invention, and the patent claims. The written description, which may include drawings, is often called the "specification" of the patent.

You have been provided with a copy of the ___ patent. Please look at the patent as I identify its different sections. [Other patents are also involved in this case. I am using this particular patent as an example to describe the various parts of a patent.]

The first page of the ___ patent provides identifying information, including the date the patent issued and patent number along the top; the name(s) of the inventor(s), the filing date; [the assignee, which is the company or individual that owned the patent on the date it was issued]; and a list of documents considered in the Patent Office during the time the patent was being sought.

The specification of the patent begins with a brief statement about the subject matter of the invention, which is called an abstract. This is found on the first page.

[Next, are the drawings, which appear as Figures __ to __ on the next __ pages. The drawings depict various aspects or features of the invention. They are described in words later in the patent specification.]

The written description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered. The written description of the ___ patent begins at column 1, line 1, and continues to column ___, line ___. [It includes a background section, a summary of the invention, and a detailed description of the invention, including some specific examples.]

The written description is followed by one or more numbered paragraphs, which are called the claims.

### Committee Comment

*See* Preliminary Instruction 1.4.

## 11.2.4 THE PATENT CLAIMS

The claims of a patent are the numbered sentences at the end of the patent. The claims describe what the patent owner may prevent others from doing.

Claims are usually divided into [parts; steps], called "limitations" or "requirements." For example, a claim that covers the invention of a table may describe the tabletop, four legs and glue that holds the legs and the tabletop together. The tabletop, legs and glue are each a separate limitation or requirement of the claim.

We are concerned with claims _____ of the _____ patent. Plaintiff contends that Defendant infringed _____ claims. Defendant denies this [and contends that claims ____ are invalid].

To decide whether Defendant infringed the patent, you must compare the claims to [*the accused product; process*]. [Similarly, in deciding a challenge to the validity of a patent, you must compare the claims to the asserted prior art.] [In reaching your determinations with respect to infringement [and invalidity], you must consider each claim of the patent separately.]

### Committee Comment

*See* Preliminary Instruction 1.5.

**11.2.5**       **INFRINGEMENT: INTERPRETATION OF THE PATENT CLAIMS**

The owner of a patent has the right to prevent others from [making; using; offering for sale; selling; importing] the invention covered by the patent. A [product; process] infringes a patent if that [product; process] is covered by at least one claim of the patent.

I will tell you the meaning of any disputed terminology in the patent claims. You must use the meanings I give you when you decide whether the patent is infringed [and whether it is invalid].

**Committee Comment**

A patent confers the right to exclude others from making, using, selling, or offering for sale the invention within the United States or importing the invention into the United States. 35 U.S.C. §§ 154(a)(1) and 271(a); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1311-13 (Fed. Cir. 2005) (en banc). The second step is comparing the properly construed claims to the device accused of infringing. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

A simple patent case includes two parts: construing the patent claims and determining whether infringement of the construed claims occurred. The first is a question of law, to be determined by the court. The second is a question of fact, to be submitted to a jury. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 384 (1996).

**11.2.6     INDEPENDENT AND DEPENDENT CLAIMS**

Patent claims may exist in two forms, called independent claims and dependent claims. An independent claim stands on its own and does not refer to any other claim of the patent. A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the requirements of the other claim[s] to which it refers, as well as the requirements in the dependent claim itself.

Earlier I described a hypothetical patent claim for a table that described the tabletop, four legs, and glue to hold the legs and tabletop together. That is an example of an independent claim. In that same hypothetical patent, a dependent claim might be one that stated, "the same table in the initial claim, where the tabletop is square."

### Committee Comments

1.  A patent claim may be in independent or dependent form. 35 U.S.C. § 112 ¶¶ 3-4 (1984).

2.  A dependent claim is narrower in scope than the claim from which it depends. *Glaxo Group Ltd. v. Ranbaxy Pharms., Inc.,* 262 F. 3d 1333, 1336 (Fed. Cir. 2001). A dependent claim incorporates by reference a previous claim and adds a limitation to the invention claimed. *Curtiss-Wright Flow Control Corp. v. Velan, Inc.,* 438 F.3d 1374, 1380 (Fed. Cir. 2006); *Bloom Eng'g Co. v. North Am. Mfg. Co.,* 129 F.3d 1247, 1250 (Fed. Cir. 1997).

## 11.2.7 MEANS-PLUS-FUNCTION CLAIMS

Some parts of a patent claim describe a "means" of doing something, rather than the physical "structure" that performs the function. These are called "means-plus-function" claims.

For example, let's say that a patent describes a table with legs glued to the tabletop. As I said before, one way to make a patent claim for the table is to describe the tabletop, four legs, and glue between the legs and the tabletop. Another way to make the claim is to describe the tabletop and the legs, but use the phrase a "means for securing the legs to the tabletop" rather than describing the glue. This would be a "means-plus-function" requirement. In other words, it describes a "means" for performing the "function" of securing the legs to the tabletop, rather than expressly describing the glue.

A means-plus-function requirement also covers structures that are equivalent to those described in the patent, such as using an equivalent to glue to secure the legs to the tabletop.

Claims ___ of the ___ patent include means-plus-function requirements. In instructing you about the meaning of a means-plus-function claim requirement, I will tell you, first, the function that each of the means-plus-function claim requirements performs; and second, the structure disclosed in the patent specification that corresponds to each means-plus-function requirement.

### Committee Comments

1. A claim element may be expressed as a means for performing a function. 35 U.S.C. §112, ¶ 6. As long as the patent discloses a specific corresponding structure(s), the patentee may define a structure for performing a certain function generically by way of a means expression. *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1360 (Fed. Cir. 2000).

2. The question of whether there is infringement of a claim with a 112, ¶ 6 limitation is a question of fact. *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1328-29 (Fed. Cir. 2003) ("infringement of a 112, ¶ 6 limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification").

## 11.2.8 "COMPRISING" / "CONSISTING OF" / "CONSISTING ESSENTIALLY OF"

[When a patent claim uses the term "comprising," it means that the invention includes the listed requirements, but is not limited to those requirements.]

[When a patent claim uses the term "consisting of," it means that the invention includes the listed requirements, and only those requirements.]

[When patent claim uses the words "consisting essentially of," it means that a [product; process] containing [structures; steps] beyond those described in the claim is covered only if those additional [structures; steps] do not have a significant effect on the basic and novel characteristics of the invention.]

### Committee Comments

1. This instruction may be incorporated into the claim-definitional portion of the infringement instruction, where appropriate.

2. "Comprising." *Vehicular Techs. Corp.* v. *Titan Wheel Int'l, Inc.,* 212 F.3d 1377, 1382-83 (Fed. Cir. 2000); *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1235 (Fed. Cir. 2005); *Mars, Inc. v. H.J. Heinz Co., L.P.*, 377 F.3d 1369, 1376 (Fed. Cir. 2004).

3. "Consisting of." *Vehicular Techs. Corp.* v. *Titan Wheel Int'l,* 212 F.3d 1377, 1382-83 (Fed. Cir. 2000); *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1331 (Fed. Cir. 2004); *Conoco, Inc. v. Energy & Envt'l. Int'l, L.C. ,* 460 F.3d 1349, 1359 (Fed. Cir. 2006).

4. "Consisting essentially of." *PPG Indus. v. Guardian Indus. Corp.,* 156 F.3d 1351, 1354-55 (Fed. Cir. 1998); *W.E. Hall Co. v. Atlanta Corrugating, LLC,* 370 F.3d 1343, 1353 (Fed. Cir. 2004).

**11.2.9      INTERPRETATION OF THE PATENT CLAIMS**

I [have provided you; will provide you] with a copy of Plaintiff's patent. I have previously defined certain [words; phrases] in [some of] the claims. You must use these definitions in making your decision. The [words; phrases] I have defined are as follows:

(list claim terms and definition from claim construction by the Court or stipulations by the parties)

## 11.2.10    DIRECT INFRINGEMENT — ELEMENTS

Plaintiff contends that Defendant has infringed [claims __, __, and __ of] Plaintiff's patent. To succeed on this contention, Plaintiff must prove the following by a preponderance of the evidence:

1.  Every requirement in [the particular claim of Plaintiff's patent that you are considering; Plaintiff's patent] is found in Defendant's [product; process]; and

2.  Defendant [made, used, sold, offered for sale, or imported] that [product; process] [in; into] the United States.

### Committee Comments

1.  *Usage.* A finding of infringement requires a showing that the accused infringer committed a prohibited act of the type described in element 2. No instruction need be given on these prohibited acts if there is no dispute that such an act has occurred directly or indirectly. 35 U.S.C. § 271.

2.  *Authority.* First element: *Riles v. Shell Exploration & Prod. Co.,* 298 F.3d 1302, 1308 (Fed. Cir. 2002); *Pfizer, Inc. v. Teva Pharms. USA, Inc.,* 429 F.3d 1364, 1376 (Fed. Cir. 2005); *PSC Computer Prods., Inc. v. Foxconn Int'l,* 355 F.3d 1353, 1357 (Fed. Cir. 2004); *Cross Med. Prods. v. Medtronic,* 424 F.3d 1293, 1310 (Fed. Cir. 2005). Second element: 35 U.S.C. § 271(a).

# 11.2.11.1     INFRINGEMENT — DEFINITION

As I stated in the previous instruction, infringement occurs if each requirement of a claim is found in Defendant's [product; process]. As I have explained, Plaintiff contends that Defendant infringed [claims __, __, and __] of Plaintiff's patent. To determine whether Defendant infringed Plaintiff's patent, you must compare Defendant's [product; process] against each one of these claims.

To determine whether a dependent claim has been infringed, you must compare Defendant's [product; process] to both the dependent claim and the claim[s] it/they refer[s] to. For example, if claim 2 is dependent from claim 1, it may say, "2. The [product; process] according to claim 1, wherein . . . ." In this situation, dependent claim 2 cannot be infringed unless claim 1 is also infringed. For this reason, in the example you would have to compare Defendant's [product; process] to all the requirements of both claims 1 and 2.

A requirement of a claim is found in Defendant's [product; process] if the requirement is in the [product; process] exactly as it is in the claim [or] [if the requirement is in the [product; process] in a manner that is equivalent to what is in the claim.

[If all of the requirements of the claim are in Defendant's [product; process] exactly as they are in the claim, that is called "literal infringement."]

[If all of the requirements of the claim are in Defendant's [product; process], but one or more of them is equivalent to what is in the claim, that is called "infringement by equivalence."]

[The following claim requirements must be met literally; infringement by equivalence does not apply to these requirements: (*list claim terms that must be met literally, and definition from claim construction by the Court or stipulations by the parties*)]

### Committee Comments

1.  This instruction sets forth the basic test for direct infringement. It is adaptable to cases involving claims of literal infringement, infringement by way of the doctrine of equivalents, or both.

2.   The Committee used the term "infringement by equivalence" rather than the term "doctrine of equivalents" believing that the former would be easier for lay jurors to understand.

3.   The final bracketed paragraph of the instruction applies in cases in which the court has determined that the doctrine of equivalents does not apply to a particular claim element due to prosecution history estoppel. This is an issue to be decided by the court and should be done before giving the jury its instructions. *See generally Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co., v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997). In *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367 (Fed. Cir. 2003) (*en banc*), the Federal Circuit held that the court, not the jury, will decide whether a presumed estoppel is rebutted ("We agree . . . that rebuttal of the presumption of surrender is a question of law to be determined by the court, not a jury.").

## 11.2.11.2    INFRINGEMENT — DOCTRINE OF EQUIVALENTS

A [part of Defendant's product; step in Defendant's process] is equivalent to a claim requirement if a person of ordinary skill in the field of the invention would regard any differences between them as insubstantial.

[[A [part; step] is also equivalent to a claim requirement if it performs substantially the same function, in substantially the same way, to reach substantially the same result.] ] [One factor you may consider in making that determination is whether a person of ordinary skill in the field of the invention would have regarded Defendant's [part; step] to be interchangeable with the claim requirement.]]

In determining infringement by equivalence, you must still use the meanings for the claim requirements that I have provided.

### Committee Comments

1.  *Insubstantial differences: Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39-40 (1997); *Honeywell Int'l. Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004) (*en banc*); *Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc.,* 363 F.3d 1306, 1312 (Fed. Cir. 2004); *Chiuminatta Concrete Concepts v. Cardinal Inds.,* 145 F.3d 1303 (Fed.Cir. 1988).

2.  *Function / way / result test: Machine Co. v. Murphy,* 97 U.S. 120, 124 (1878); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39-40 (1997); *Pennwalt Corp. v. Durand-Wayland, Inc.,* 833 F.2d 931, 934 (Fed. Cir. 1987) (*en banc*); *SRI Int'l v. Matsushita Electric Corp., of America*, 775 F.2d 1107, 1123 (Fed. Cir. 1985) (*en banc*).

3.  *Interchangeability*: *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 609 (1950); *Interactive Pictures Corp. v. Infinite Pictures, Inc*., 274 F.3d 1371, 1383 (Fed. Cir. 2001); *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1380 (Fed. Cir. 2000); *All-Site Corp. v. VSI Int.,* 174 F.3d 1308, 1316 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Inds*., 145 F.3d 1303, 1309 (Fed. Cir. 1998); *Overhead Door Corp. v. Chamberlain Group*, 52 U.S.P.Q. 1321, 1327 (Fed. Cir. 1999).

4.  The Committee chose to use the phrase "a person of ordinary skill in the field" rather than the patent law term "a person of ordinary skill in the art," believing the former term would be more understandable to lay jurors.

5. *Prior art limitation on infringement by equivalents:* In a case that involves a prior art limitation on infringement by equivalents, the court may consider adding a paragraph based on the following language:

> You may not find that Defendant's [product; process] is equivalent to a claim requirement if the result would be that the equivalents become so broad that the claim would cover a [product; process] that was disclosed in the prior art.

*See Ultra-Tex Surfaces, Inc. v. Hill Bros. Chemical Co*, 204 F.3d 1360, 1364-65 (Fed. Cir. 2000) ("Under a hypothetical claim analysis, a patentee proposes a hypothetical claim that is sufficiently broad in scope to *literally* encompass the accused product or process. *** if that claim would not have been allowed, the prior art bars application of the doctrine and infringement by equivalence may not be found."); *Marquip, Inc. v. Fosber America, Inc.*, 198 F.3d 1363, 1367 (Fed Cir. 1999) (this court has consistently limited the doctrine of equivalents to prevent its application to ensnare prior art"); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996) (doctrine of equivalents "cannot be used to protect subject matter in, or obvious in light of, the prior art."); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 683 (Fed. Cir. 1990) ("there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art."); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935 n.1 (Fed. Cir. 1987) (*en banc*) ("The doctrine of equivalents is limited in that the doctrine will not extend Y to cover an accused device in the prior art ..."); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 870 (Fed. Cir. 1985) ("First, the doctrine will not extend to an infringing device within the public domain, i.e., found in the prior art at the time the patent issued"); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 900 (Fed. Cir. 1984) (no infringement despite equivalence if "the equivalent device is within the public domain, i.e., found in the prior art.")

6. *Limitation on infringement by equivalence.* The doctrine of equivalents cannot be used to extend patent coverage to structures or processes that are described in the patent specification but not mentioned in the patent claims, or to erase or ignore meaningful structural and functional limitations of a patent claim. *See Johnson & Johnston Associates v. R. E. Service Co.,* 285 F.3d 1046, 1054 (Fed. Cir. 2002) (*en banc*). In an appropriate case, it may be necessary to revise the pattern instruction to cover this point.

## 11.2.11.3    INFRINGEMENT — MEANS-PLUS-FUNCTION CLAIM LANGUAGE

Claim[s] _____ in Plaintiff's patent contain[s] [a] requirement[s] that [is; are] written in a particular form, called "means plus function" form.  Specifically, claim ___ contains the following "mans plus function" language: [*fill in*]

You must use the definition[s] I have previously given you regarding [this part; these parts] of the claim.

Plaintiff must prove that the entire claim is infringed. The "means plus function" language is only part of the entire claim. The paragraphs numbered 1 and 2 below concern only the "means plus function" part[s] of the claim. You must use the other rules that I have already given you for the other parts of the claim.

As with the other claim requirements, Plaintiff must prove that the "means plus function" claim requirement[s] [is; are] met literally, or by equivalence. The rules for determining whether [this; these] claim requirement[s] [is; are] met by equivalence are the same as the ones I have already given you.

In determining whether "means plus function" claim requirement[s] [is; are] met literally, different rules apply than the ones I gave you earlier. Specifically, to prove that the "means plus function" claim requirement[s] [is; are] met literally, Plaintiff must prove the following [as to each "means plus function" claim requirement]:

1.  Defendant's product includes structure that performs the identical function in this claim requirement, as I defined the function for you [on page ___ of these instructions] [earlier, namely (recite the function)]; and

2.  That structure is the same as, or equivalent to, the structure in this claim requirement, as I identified it for you [on page __ of these instructions] [earlier, namely (recite the corresponding structure)].

For purposes of this instruction, two structures are "equivalent" if they are substantially the same. [One way structures may be substantially the same is if they achieve substantially the same result in substantially the same way. [Another way is if the differences between them are not substantially different.]] You should make this

determination from the point of view of a person with ordinary skill in the field of the invention.

## Committee Comments

1. Need for identical function plus same or equivalent structure for literal infringement: *Ishida Co., v. Taylor*, 221 F.3d 1310, 1316 (Fed. Cir. 2000) (identical function); *Chiuminatta Concrete Concepts v. Cardinal Inds., Inc.*, 145 F.3d 1303, 1308 (Fed. Cir. 1988), *citing Pennwalt Corp. v. Durand-Wayland, Inc.,* 833 F.2d 931, 934 (Fed. Cir. 1987) (*en banc*); *Caterpillar v. Deere & Co.,* 224 F.3d 1374, 1379 (Fed. Cir. 2000); *Chiuminatta Concrete Concepts v. Cardinal Inds., Inc.,* 145 F.3d 1303, 1309 (Fed. Cir. 1988); *Odetics,Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1267 (Fed. Cir. 1999).

2. If a structure that predates the invention itself is not equivalent under § 112, ¶ 6, it cannot be equivalent under the doctrine of equivalents. *See Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 n.2 (Fed. Cir. 1999), citing *Chiuminatta Concrete Concepts, Inc. v. Cardinal Inds., Inc.*, 145 F.3d 1303 (Fed. Cir. 1998).

3. A literal equivalent under § 112, ¶ 6 must have been available at time of patent issuance, and use of after-arising technology infringes, if at all, under the doctrine of equivalents. *Al-Site*, 174 F.3d at 1320-21, citing *Warner-Jenkinson Co. v. Hilton-Davis Chemical Co.,* 520 U.S. 17, 29, (1997); cf. *Ishida Co, Ltd. v. Taylor*, 221 F.3d 1310, 1317 (Fed. Cir. 2000).

## 11.2.11.4    DETERMINING INFRINGEMENT

You must decide whether there is infringement separately for each claim. [There is one exception to this rule. If you decide that an independent claim is *not* infringed, then there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.]

### Committee Comments

1.   *Comparing product / process with each claim. See Johnson & Johnston Assocs., Inc. v. R.E. Svc. Co.,* 285 F.3d 1046, 1052 (Fed. Cir. 2002) (*en banc*); *Caterpillar Inc v. Deere & Co.*, 224 F.3d 1374, 1379 (Fed. Cir. 2000) (compare properly construed claim with accused device or method); *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1373 (Fed. Cir. 2006) (same); *Lava Trading v. Sonic Trading Management, LLC.*, 445 F.3d 1348, 1352 (Fed. Cir. 2006) (same).

2.   *Exception to separate consideration for each claim:* 35 U.S.C. § 112, ¶ 4 (a dependent claim includes all of the limitations of the claim to which it refers); *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1316, n.1 (Fed. Cir. 2006) (dependent claims not infringed when independent claim not infringed); *Oak Technology, Inc. v. ITC,* 248 F.3d 1316, 1323, n.4 (Fed. Cir. 2001) (same).

## 11.2.12    INDIRECT INFRINGEMENT — INDUCEMENT

Plaintiff contends that Defendant induced [someone; *name of alleged direct infringer*] to infringe [claims __, __, __ of] Plaintiff's patent. To succeed on this contention, Plaintiff must prove the following by a preponderance of the evidence:

1. Defendant knew of Plaintiff's patent.

2. Defendant [acted; encouraged; instructed] [*insert name or other description of direct infringer*] to [[use / make] a product; perform a process] in a manner that directly infringed Plaintiff's patent, as defined in other instructions that I have given you.

3. Defendant knew or should have known that its acts would cause [*insert name or other description of direct infringer*] to infringe Plaintiff's patent.

### Committee Comments

1. *Knowledge of plaintiff's patent: Manville Sales Corp. v. Paramount Systems, Inc.,* 917 F.2d 544, 553 (Fed. Cir. 1990). This instruction may require modification if the plaintiff claims that the defendant has constructive, as opposed to actual, knowledge of the patent. *See, e.g., Insituform Techs., Inc. v. CAT Contr. Inc.,* 161 F.3d 688, 695 (Fed. Cir. 1998) ("[T]he inducer must have actual or constructive knowledge of the patent."); *see DSU Medical Corp. v. JMS Co.,* 471 F.3d 1293, 1311 (Dec. 13, 2006) (Michel, C.J., concurring) (citing *Insituform* for "constructive knowledge" proposition).

2. *Encouragement / instruction: Manville Sales Corp. v. Paramount Systems, Inc.,* 917 F.2d 544, 553 (Fed. Cir. 1990).

3. *Intent to cause infringement:* In *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1378 n.4 (Fed. Cir. 2005), the Federal Circuit acknowledged a "lack of clarity" regarding whether a party claiming inducement to infringe must show intention to cause infringement or rather can prove its case by showing intent to induce the acts constituting infringement. The court resolved the issue *en banc* in *DSU Medical Corp v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006), holding that "the infringer must have an affirmative intent to cause direct infringement ... inducement requires 'that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement. The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew

or should have known his actions would induce actual infringements. '" *Id.* at 1306 (quoting *MEMC Elec.*, 420 F.3d at 1378).

4. *Direct infringement by someone is required: Water Tech. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 n.7 (Fed. Cir. 1988).

# 11.2.13      INDIRECT INFRINGEMENT — CONTRIBUTORY INFRINGEMENT

Plaintiff contends that Defendant contributed to the infringement of [claims __, __, __ of] Plaintiff's patent. To succeed on this contention, Plaintiff must prove the following by a preponderance of the evidence:

1.  Defendant knew of Plaintiff's patent.

2.  Defendant [sold; supplied] a component that forms a significant part of the invention described in a claim in Plaintiff's patent.

3.  [Another person; *insert name*] infringed Plaintiff's patent by using this component.

4.  Defendant knew the component was especially made or adapted for a use that would infringe Plaintiff's patent.

5.  The component was not a commonly available item or a product with substantial non-infringing uses.

## Committee Comments

1.  *Knowledge of plaintiff's patent: Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).

2.  *Supplied an important or material part*: 35 U.S.C. § 271 I; *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 483 (1964). The term "significant" is used in place of the statutory term "material," as "significant" effectively is the definition of materiality. By using the definition, one avoids the need to use the term "material" and then define it.

3.  *Direct infringement by another*: *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341-42 (1961); *Nordberg Mfg. v. Jackson Vibrators, Inc.*, 153 U.S.P.Q. 777, 783 (N.D. Ill. 1967) (would infringe).

4.  *Knowledge that some other person would use this component to infringe: Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 483 (1964).

5.  *Not a commonly available item:* 35 U.S.C. § 271(c) ("not a staple article"); *Dawson*

*Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 200 (1980) ("In essence, this provision places materials like the dry ice of the Carbice case outside of the scope of the contributing infringement doctrine."). *Or a product with substantial noninfringing uses:* 35 U.S.C. § 271(c); *Alloc, Inc. v. Int'l Trade Comm'n* 342 F.3d 1361, 1374 (Fed. Cir. 2003) (affirming determination of no contributory infringement: "The record showed that the accused flooring products could be installed by methods not claimed in the '267 and '907 patents. . . . For instance, the installation instructions for Unilin's floor product are a noninfringing 'snap-snap' method. . . . Akzenta's published PCT application also discloses noninfringing methods of installing its floor products."). The Committee chose to use the words "not a commonly available item" in lieu of the statutory language for ease of jury understanding.

# 11.2.14    WILLFUL INFRINGEMENT

Plaintiff contends that Defendant infringed Plaintiff's patent willfully. You are required to decide this issue because it may be relevant to other issues that I may have to consider.

You are to consider the issue of willful infringement only if you have found that Defendant infringed Plaintiff's patent. Not all infringement is willful.

The standard of proof for willful infringement is higher than the standard for infringement generally. Specifically, Plaintiff must prove willful infringement by clear and convincing evidence. "Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true. [You also may have heard of a burden of proof used in criminal cases called "beyond a reasonable doubt," which is a higher burden of proof than "clear and convincing" evidence. You should not apply the criminal standard in this case.]

To succeed on its contention that Defendant infringed the patent willfully, Plaintiff must prove two things by clear and convincing evidence:

1.    There was a high likelihood that Defendant's actions constituted infringement of a valid patent. In making this determination, you may not consider Defendant's actual state of mind. [You may consider the normal standards of fair commerce.]

2.  Defendant knew of the high likelihood that it was infringing a valid patent, or this likelihood was so apparent that Defendant should have known of it.

## Committee Comment

*See In re Seagate Technology, LLC.,* 497 F.3d 1360, 1370-72 (Fed. Cir.2007) (*en banc*) (standard for willfulness; reaffirming requirement of clear and convincing evidence). *See also, Read Corp. v. Portec, Inc.,* 970 F.2d 816, 829 (Fed. Cir. 1992) (clear and convincing evidence required); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990) (same). The Committee notes that because *Seagate* is new, its requirements have not yet been applied extensively, and that the Federal Circuit expressly left for further determination how the new standard for willfulness should be applied in practice.

The Committee has defined willful infringement solely in terms of what is commonly called recklessness, as discussed in *Seagate*. In some cases, there may be a legitimate argument that the defendant acted with actual knowledge, rather than in a reckless fashion. The Committee believes that the instruction is broad enough to encompass such cases but leaves it to the trial judge to determine whether, in a particular case, an "actual knowledge" instruction should be given in addition to the definition of recklessness.

Some other pattern jury instructions provide lists of non-exclusive factors for the jury to consider in determining willfulness. *See, e.g.,* Fed. Cir. Bar Ass'n Instruction 3.8. The Committee declined to include such a list, for several reasons: the factors are better left to attorney argument, leaving it to the jury to weigh them against the standard for willfulness; providing a non-exclusive list might mislead a jury to believe that other factors should not be considered; and the law of willful infringement post-*Seagate* remains somewhat in a state of flux. The Committee will revisit the point in future versions of these instructions.

## 11.3.1 VALIDITY — GENERAL

Defendant has challenged the validity of the ___ patent(s) claim(s) on [state the grounds].

Each of the claims of the ___ patent(s) is presumed to be valid. For that reason, Defendant has the burden of proving invalidity by clear and convincing evidence. "Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true. [You also may have heard of a burden of proof used in criminal cases called "beyond a reasonable doubt," which is a higher burden of proof than "clear and convincing" evidence. You must not apply the criminal standard in this case.]

You must evaluate and determine separately the validity of each claim of the patent(s).

### Committee Comment

1. The invalidity of the patent or any asserted claim, for failure to comply with any requirement of 35 U.S.C. §§ 101, 102, 103, 112, or 251, is a defense to alleged infringement. *See* 35 U.S.C. §§ 101, 102, 103, 112, 251, & 282; *Graham v. John Deere,* 383 U.S. 1 (1965) (patentability, and thus validity, is dependent upon three explicit conditions: novelty, utility, and nonobviousness).

2. Patents are entitled to a presumption of validity. 35 U.S.C. § 282; *Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988); *DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 427 (Fed. Cir. 1986); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983). The presumption of validity is a procedural device. It "imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption." FED. R. EVID. 301; *DMI*, 802 F.2d at 427. As the Federal Circuit has recognized, "the presumption is one of law, not fact, and does not constitute 'evidence' to be weighed against a challenger's evidence." *Avia Group*, 853 F.2d at 1562.

## 11.3.2 INVALIDITY — SPECIFICATION REQUIREMENTS

The patent law contains certain requirements for a patent specification. Defendant contends that claim(s) ___ of the ___ patent [is/are] invalid because the specification fails to satisfy the law's [written description,] [enablement,] [and/or] [best mode] requirements.

If you find that Defendant has proved by clear and convincing evidence that any one of these requirements is not met for an asserted claim, then that claim is invalid. I will now explain to you in detail the specification requirement[s] that Defendant says makes the patent claims invalid.

### Committee Comment

"The specification of a patent must contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out the invention." 35 U.S.C. § 112, ¶ 1.

(2008 rev.)

## 11.3.2.1      SPECIFICATION REQUIREMENTS — WRITTEN DESCRIPTION

The law requires that the "specification" section of the patent contain an adequate written description of the invention(s) in the patent claim(s).

Defendant contends that claim(s) ___ of Plaintiff's patent [is/are] invalid because it does not contain an adequate written description. To succeed on this contention, Defendant must prove by clear and convincing evidence that a person of ordinary skill in the field of the invention would not recognize that the specification describes all the requirements of the claim. The specification does not have to use the exact words found in the claim.

If Defendant proves this as to a particular claim, then you should find that claim invalid.

### Committee Comment

1. A patent's specification must include an adequate written description; however, it need not include the exact words of the claims. *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Union Oil Co. of Cal. v. Atl. Richfield Co.,* 208 F.3d 989, 996-1001 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). *See also Turbocare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001); *Reiffin v. Microsoft Corp.,* 214 F.3d 1342, 1345-46 (Fed. Cir. 2000) (the description must clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed).

2. Lack of adequate written description must be proven by clear and convincing evidence. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247 (Fed. Cir. 2004).

3. If priority is at issue, the term "patent" may need to be changed to "patent application as originally filed." *Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 314 F.3d 1313, 1330 (Fed. Cir. 2003) (one of the roles of the written description requirement is to ensure that patent claims are not amended to claim subject matter different from what was described in the patent application on the date of its filing).

(2008 rev.)

## 11.3.2.2    SPECIFICATION REQUIREMENTS — ENABLEMENT

The law requires that the "specification" section of the patent contain enough information to enable a person of ordinary skill in the field of the invention to make and use the invention, without an unreasonable amount of experimentation. A patent does not have to state information that persons of ordinary skill in the field would be likely to know or could obtain without undue effort.

Defendant contends that claim(s) ___ of Plaintiff's patent [is/are] invalid because it fails to meet this requirement. To succeed on this contention, [Defendant] must prove by clear and convincing evidence that the specification does not enable a person of ordinary skill in the field of the invention to make and use a [product; process] covered by claim ___, without an unreasonable amount of experimentation. Whether the amount of experimentation is unreasonable depends on the complexity of the field of the invention and the level of expertise and knowledge of persons of ordinary skill in that field.

If Defendant proves this as to a particular claim by clear and convincing evidence, you should find that claim invalid.

### Committee Comment

1.  To be enabling, the specification must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation. *See* 35 U.S.C. § 112; *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (2001); *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1384 (Fed. Cir. 1986) (a patent need not teach what is well known in the art).

2.  A court may consider a number of factors when determining if an unreasonable amount of experimentation is required to practice the claimed invention. *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1369-78 (Fed. Cir. 1999); *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-98 (Fed. Cir. 1999). Lack of enablement must be proven by clear and convincing evidence. *Ralston Purina Co. v. Far-Mar Co.*, 772 F.2d 1570, 1573-74 (Fed. Cir. 1985); *White Consolidated Indus., Inc. v. Vega Servo Control, Inc.*, 713 F.2d 788, 791 (Fed. Cir. 1983).

3.  The following factors have been set forth as relevant to the issue of reasonable experimentation: how much experimentation is necessary; how much direction or guidance the

patent provides; whether the patent contains working examples; the simplicity or complexity of the invention; what is disclosed by the prior art; the level of skill possessed by those in the field; the predictability of the art; and the breadth of the claims. *Enzo,* 188 F.3d at 1371; *see also, In re Wands,* 858 F.2d 731, 737 (Fed. Cir. 1988) (setting out factors to consider in determining if the patent's teachings require an unreasonable amount of experimentation). The Committee does not recommend including these factors in the instruction, though a judge may consider doing so in a particular case.

## 11.3.2.3    SPECIFICATION REQUIREMENTS — BEST MODE

The law requires that if an inventor believed, at the time he applied for the patent, that there was a "best mode," or best way, to [make; use; carry out] the [product; process] covered by the patent, he had to disclose it in the patent. The inventor also may disclose other modes, and he need not state which of the modes he discloses in the patent is the best.

Defendant contends that claim(s) ___ of Plaintiff's patent [is/are] invalid for failure to satisfy the "best mode" requirement.  If you find by clear and convincing evidence that Defendant has proved this [as to a particular claim], you should find that claim invalid.

### Committee Comment

A holding of invalidity for failure to disclose the best mode requires clear and convincing evidence that the inventor both knew of and concealed a better mode of carrying out the claimed invention than that set forth in the specification, although he need not state which of the modes is the best. *See* 35 U.S.C. § 112, ¶ 1; *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1330 (Fed. Cir. 2002); *Mentor H/S Inc., v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001); *Amgen, Inc. v. Chugai Pharm. Co.,* 927 F.2d 1200, 1209-10 (Fed. Cir. 1991).

## 11.3.2.4    SPECIFICATION REQUIREMENTS — INDEFINITENESS

### Committee Comment

The Committee did not include a jury instruction regarding indefiniteness because the Federal Circuit recently made it clear that invalidity due to indefiniteness is a question of law to be determined by the court. *See Aero Prods. Int'l Inc. v. Intex Recreation Corp.,* 466 F.3d 1000, 1015-16 (Fed. Cir. 2006).

### 11.3.3  SECTION 102 AND 103 DEFENSES — DEFINITION OF "PRIOR ART"

In addressing some of Defendant's invalidity defenses, you will have to consider what is disclosed in the "prior art."

[The parties agree that the following [items; processes; references] are prior art: [*list uncontested prior art*].

[The parties dispute that other [items; processes; references] are prior art.]

Before you may consider any disputed [item; process; reference] to be prior art [for purposes of Defendant's defense of anticipation], Defendant must prove by clear and convincing evidence that the [item; process; reference] was [any one of the following]:

A disputed [item; process; reference] is not prior art unless Defendant proves by clear and convincing evidence that the [item; process; reference] was [any one of the following]: [*use only those that apply in the particular case*]

- [known] [or] [used] by someone else in the United States before the date of invention, unless the [knowledge] [or] [use] was private or secret.

- [in public use] [or] [on sale] in the United States more than one year before the patent application was filed;

- patented by someone else [before the date of the invention] [or] [more than one year before the patent application was filed];

- described in a publication [before the date of the invention] [or] [more than one year before the patent application was filed];

- described in a published patent application filed in [the United States; a foreign country] before the date of invention.

### Committee Comment

1. *General authority. See* 35 U.S.C §§ 102(a)-(g); *Woodlawn Trust* v. *Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998); *Lockwood* v. *Am. Airlines, Inc.*, 107 F.3d 1565, 1570

(Fed. Cir. 1997); *Lamb-Weston, Inc.* v. *McCain Foods, Ltd.*, 78 F.3d 540, 544 (Fed. Cir. 1996). This instruction is intended to cover the most common types of "prior art" described in section 102; it is not intended to be an exhaustive list. *See, e.g.,* 35 U.S.C. § 102(g) (prior invention). In some cases, different "prior art" may be relied upon for section 102 and section 103 defenses. If that occurs, the instruction will need to be modified accordingly.

2.   *Private / secret knowledge or use.* The Committee has not provided a definition of "private" or "secret" as used in the first bullet point, leaving that to be determined, if necessary, in the context of the particular case being tried. Private or secret knowledge or use by others, generally speaking, is not prior art. *Woodland Trust v. Flowertree Nursery, Inc.,* 148 F.3d 1368, 1371 (Fed. Cir. 1998) ("when an asserted prior use is not that of the applicant, § 102(b) is not a bar when the prior use or knowledge is not available to the public."); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1550 (Fed. Cir. 1983) ("There is no reason or statutory basis, however, on which Budd's and Cropper's secret commercialization of a process, if established, could be held a bar to the grant of a patent to Gore on that process."). *But cf. SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306 (Fed. Cir. 2004); *Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1334 (Fed. Cir. 2005).

# 11.3.4 SECTION 102 DEFENSES — PRIOR ART — DEFINITIONS

## a) "date of invention"

The term "date of invention," as used in the previous instruction, means [*insert agreed upon date, if applicable*] [the date the patent application was filed [, insert effective filing date], unless Plaintiff proves by a preponderance of the evidence that the invention was conceived and actually reduced to practice at an earlier date. An invention is "conceived" when the inventor has formed the idea of how to make and use every aspect of the claimed invention. An invention is "actually reduced to practice" when it is made or when the inventor determines that it will work for its intended purpose.]

[To establish an earlier date, Plaintiff must prove by a preponderance of the evidence that [the invention was actually reduced to practice at an earlier date, in which case that date is the invention date] [, or] [the inventor conceived the invention before the date of the prior art and used reasonable diligence before the date of the prior art to reduce the invention to practice, in which case the date of the invention is the date when the invention was conceived.] Reasonable diligence means the inventor worked continuously to reduce the invention to practice, allowing for everyday interruptions].

## b) "on sale"

An [item; process] is "on sale," as that term is used in these instructions, if it was the subject of a commercial offer for sale in the United States more than one year before the patent application date[, and if, at that time, there was reason to believe that the [item; process] would work for its intended purpose]. A single offer to sell, primarily for profit rather than for experimental purposes, is sufficient, even if no actual sale was made.

## c) "publication"

To qualify as a "publication," as that term is used in these instructions, the [article; patent; other reference] must be disseminated or reasonably accessible to persons interested in the field of the invention.

## Committee Comment

1. *Conception and reduction to practice.* Conception occurs when the inventor has formed the idea as to how to make and use every aspect of the claimed invention. *Singh v. Blake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000) ("A conception must encompass all limitations of the claimed invention."); *Cooper v. Goldfarb*, 154 F.3d 1321, 1326-31 (Fed. Cir. 1998). Reduction to practice occurs when the invention is made and shown to work for its intended purpose. *Cooper*, 154 F.3d at 1326-31; *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 593 (Fed. Cir. 1997). ("[A] reduction to practice does not occur until the inventor . . . knows that the invention will work for its intended purpose."). Reasonable diligence means that the inventor worked continuously on reducing the invention to practice. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577-79 (Fed. Cir. 1996). Reasonable diligence allows for interruptions necessitated by the inventor or others working with him. *In re Jolley*, 308 F.3d 1317, 1327 (Fed. Cir. 2002); *Griffith v. Kanamaru*, 816 F.2d 624, 626 (Fed. Cir. 1987).

2. *"On sale." See Pfaff v. Wells Elecs., Inc.,* 525 U.S. 55 (1998). A single offer to sell, primarily for profit rather than for experimental purposes, is sufficient, even if no sale is made. *Scaltech v. Retec/Tetra, LLC,* 269 F.3d 1321, 1328 (Fed. Cir. 2001); *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1046-47 (Fed. Cir. 2001). If someone other than the inventor secretly uses a process to make a product, the sale of the product does not constitute a sale of the process. *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147 (Fed. Cir. 1983).

3. *"Publication." See In re Cronyn*, 890 F.2d 1158, 1159-61 (Fed. Cir. 1989) ("reasonably accessible to the public"); *Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1568-69 (Fed. Cir. 1988).

4. Some claims may have different inventive dates due to, e.g., different effective filing dates where some subject matter was added in a continuation-in-part patent application, or where there are different dates of conception or reduction to practice for separate claims.

## 11.3.5 SECTION 102 DEFENSES — ELEMENTS

A patent claim is invalid if the invention it describes is not new. If there is "prior art" that already shows the same invention covered by a patent claim, then the claim is invalid because it is "anticipated" by the prior art.

Defendant contends that [Plaintiff's patent; claim[s] __, __, __ of Plaintiff's patent] [is; are] invalid because [it is; they are] anticipated by prior art.

To succeed on this contention, Defendant must prove two things by clear and convincing evidence:

1. All of the requirements of the [claim(s) you are considering] are expressly stated or inherent in a single item of prior art.

2. A person of ordinary skill in the field of the invention, looking at the single prior art item, would be able to make and use the invention disclosed in the claim [without an unreasonable amount of experimentation. Whether the amount of experimentation is unreasonable depends on the complexity of the field of the invention and the level of expertise and knowledge of persons of ordinary skill in that field.] If you find that Defendant has proved each of these by clear and convincing evidence as to a particular patent claim, then you must find for Defendant on that patent claim.

### Committee Comment

1. To be patented an invention must be new. 35 U.S.C. §§ 101, 102(a) & (e). If it is not new or known to others, it is said to be "anticipated." *Hoover Group, Inc. v. Custom Metalcraft, Inc.,* 66 F.3d 299, 302 (Fed. Cir. 1995) ("lack of novelty (often called 'anticipation') requires that the same invention, including each element and limitation of the claims, was known or used by others before it was invented by the patentee"). The law of anticipation requires that every limitation in a claim be found in a single prior art reference, either explicitly or inherently. *See MEHL/Biophile Int'l Corp. v. Milgraum,* 192 F.3d 1362, 1365 (Fed. Cir. 1999); *see also SmithKline Beecham Corp. v. Apotex Corp.,* 403 F.3d 1331, 1345 (Fed. Cir. 2005); *Richardson v. Suzuki Motor Co.,* 868 F.2d 1226, 1236 (Fed. Cir. 1989) ("anticipation" requires that the identical invention be described in a single prior art reference).

2.  Enablement / undue experimentation requirement. *See In re Omeprazole Patent Litig.*, 483 F.3d 1364, 1379 (Fed. Cir. 2007); *Novo Nordisk Pharms., Inc. v. Bio-Technology Gen. Corp.*, 424 F.3d 1347 (Fed. Cir. 2005), citing *SmithKline Beecham*, 403 F.3d at 1337.

3.  Anticipation must be proven by clear and convincing evidence. *See, e.g., Union Oil Co. of Cal. v. Atlantic Richfield Co.*, 208 F.3d 989, 995 (Fed. Cir. 2000).

# 11.3.6      OBVIOUSNESS

Defendant contends that [Plaintiff's patent; claim[s] __, __, __ of Plaintiff's patent] [is; are] invalid because [it is; they are] obvious.

To succeed on this contention, Defendant must prove by clear and convincing evidence [as to the particular claim you are considering] that a person of ordinary skill in the field of the invention, who knew about all the prior art existing at the time the invention was made, would have come up with the invention at that time. [Unlike anticipation, obviousness may be shown by considering two or more items of prior art in combination.]

In deciding obviousness, you should put yourself in the position of a person with ordinary skill in the field at the time of the claimed invention. You must not use hindsight; in other words, you may not consider what is known now or what was learned from Plaintiff's patent. In addition, you may not use Plaintiff's patent as a roadmap for selecting and combining items of prior art.

[In deciding obviousness, you may also consider whether a person of ordinary skill in the field would have been discouraged from following the path the inventor took, keeping in mind that Plaintiff is not required to show such discouraging factors. As I have stated, Defendant has the burden of proving obviousness by clear and convincing evidence.]

In making your decision regarding obviousness, you should consider the following:

   1)  The scope and content of the prior art. You may consider prior art that was reasonably relevant to the problem the inventor faced, including prior art in the field of the invention and prior art from other fields that a person of ordinary skill would consider when attempting to solve the problem.

   2)  Any differences between the prior art and the invention in the patent claim.

   3)  The level of ordinary skill in the field of the invention at the time of the invention.

   [4)   Any of the indications of non-obviousness described in the next instruction that are shown by the evidence.]

**Committee Comment**

1. General authority. 35 U.S.C. § 103(a); *KSR Intern. Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1740-42 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 27-28 (1966). At least one set of post-*KSR* pattern instructions adopts the view that obviousness – either the ultimate issue or the underlying facts or both – is a matter for determination by the court, not the jury. *See* N.D. Cal. Pattern Patent Instructions 4.3a, 4.3b (2007). This is premised upon the Supreme Court's statement in *KSR* that "[t]he ultimate judgment of obviousness is a legal determination," *KSR Intern.*, 127 S. Ct. at 1745, and a post-*KSR* decision in which the Federal Circuit stated that it reviews "a jury's conclusions on obviousness, a question of law, without deference, and the underlying findings of fact, whether explicit or implicit within the verdict, for substantial evidence." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed. Cir. 2007). The Committee is not prepared to conclude that the Supreme Court intended, by its statement in *KSR* regarding the standard of review, to overturn the long-established practice of having juries determine obviousness – particularly because the question of who decides that point was not presented in *KSR*. In addition, the quoted language from *Dippin' Dots* appears to concern the standard of review, not the question of who decides obviousness (and it is also noteworthy that in *Dippin' Dots* itself, obviousness was decided by a jury and the Federal Circuit did not suggest this was inappropriate). *See also Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337 (Fed. Cir. 2008) (review of jury verdict; "due deference" is accorded to jury's factual determinations underlying obviousness determination, even if they are not explicit, but application of law to facts is reviewed *de novo*). The proposition that a jury's decision on a particular issue is reviewed *de novo* does not, in the Committee's view, mean that it is inappropriate for a jury to decide the point in the first place. Future developments in the law may, of course, require an alteration of these instructions' allocation of the obviousness determination to the jury.

2. The invention must have been obvious to a person of ordinary skill in the inventor's field at the time the invention was made. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-68 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998-1000 (Fed. Cir. 1999).

3. Obviousness may be shown by considering more than one item of prior art. *Brown & Williamson Tobacco Corp. v. Phillip Morris, Inc.,* 229 F.3d 1120, 1124-31 (Fed. Cir. 2000); *In re Rouffet,* 149 F.3d 1350, 1355-57 (Fed. Cir. 1998).

4. One may not consider what is known today, or what was learned from the teachings of the patent. *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000).

5.  "Teaching away." *United States v. Adams,* 383 U.S. 39, 40 (1966) (cited in *KSR*, 127 S.Ct. at 1740).

6.  The fourth factor – concerning "secondary considerations" regarding obviousness – is bracketed because there may be cases in which no evidence regarding such considerations is offered.

**11.3.6.1    OBVIOUSNESS — ADDITIONAL FACTORS INDICATING NON-OBVIOUSNESS**

As I stated in the previous instruction, in deciding obviousness you should consider any of the following factors that, if present in the case, may indicate the invention was not obvious.

- the invention achieved commercial success, so long as the commercial success resulted from the claimed invention, rather than from something else, such as innovative marketing;

- the invention satisfied a long-felt need;

- others failed in attempting to make the invention;

- others copied the invention;

- the invention achieved unexpected results;

- [Defendant; others in the field] praised the invention;

- others sought or obtained rights to the patent from the patent holder;

- [experts; persons of ordinary skill in the field of the invention] expressed surprise at the making of the invention; or

- the inventor proceeded contrary to accepted wisdom.

Not all of these factors may be present. No single factor is more or less important than the others.

**Committee Comment**

1. General authority: *See Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *KSR Intern. Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1739 (2007) (citing *Graham* for "secondary considerations" that may show nonobviousness.). *Ruiz* v. *A.B. Chance Co.*, 234 F.3d 654, 667-68 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp.* v. *Philip Morris Inc.*, 229 F.3d 1120, 1129-31 (Fed. Cir.

2000); *SIBIA Neurosciences, Inc.* v. *Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co.* v. *Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

2.  This instruction is to be used only if evidence of "secondary considerations" has been introduced and should include only those factors that are supported by evidence introduced in the case.

3.  The objective evidence, such as the commercial success, the licenses, and industry recognition of the import of the patent, must always be considered when deciding the issue of obviousness. *Richardson-Vicks Inc. v. Upjohn Co.,* 122 F.3d 1476, 1483 (Fed. Cir. 1997) ("[A]ll evidence touching the obvious-nonobvious issue must be considered before a conclusion is reached on the issue."); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538 (Fed. Cir. 1983). This is so because evidence of such secondary considerations "may often be the most probative and cogent evidence in the record," *Stratoflex,* 713 F.2d at 1538, and is "invariably relevant to a determination under Section 103." *Gambro Lundia AB v. Baxter Healthcare Corp.,* 110 F.3d 1573, 1579 (Fed. Cir. 1997).

4.  Commercial success must be related to a patented feature, and not the result of something else, such as innovative marketing. *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1129-31 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714, 719 (Fed. Cir. 1991).

5.  The presence of any of these indications may suggest that the invention was not obvious. *Ruiz v. A.B. Chance Co.,* 234 F.3d 654, 662-63, 667-68 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1129-31 (Fed. Cir. 2000).

**11.3.6.2     OBVIOUSNESS — COMBINING OF PRIOR ART REFERENCES**

[Because most inventions are built on prior knowledge,] The fact that each of the elements of the claim may be found in prior art is not enough, by itself, to prove obviousness. In determining whether Defendant has proved obviousness, you may combine multiple items of prior art only if there was an apparent reason for a person of ordinary skill in the field to combine them in the same way as in Plaintiff's claimed invention.  In deciding this, you may consider, among other things, any of the following factors:

- what the prior art suggests about combining;

- the knowledge possessed by persons who have ordinary skill in the field of the invention; and

- the effects of market pressures and design needs that existed at the time, and the number of identified and predictable solutions for those demands.

**Committee Comment**

1.  General authority. *See KSR Intern. Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1740-42 (2007).

**11.3.7      INEQUITABLE CONDUCT**

**Committee Comment**

The Committee did not include a jury instruction regarding inequitable conduct because it is an issue for the court, not the jury. *See, e.g., Agfa Corp. v. Creo Prods., Inc.,* 451 F.3d 1366, 1371-72 (Fed. Cir. 2006).

*Damages*

## 11.4.1    DAMAGES — GENERAL

If you find that Defendant infringed any valid claim of the ['____ Patent], you must then consider what amount of damages to award to Plaintiff. Plaintiff must prove damages by a preponderance of the evidence.

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find infringement, you are to award Plaintiff damages adequate to compensate Plaintiff for that infringement. The damages you award are intended to compensate the patent holder, not to punish the infringer.

### Committee Comments

1.  As a general matter, damages must be awarded if there has been a determination of both infringement and validity. 35 U.S.C. §284 (2006); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); *Del Mar Amonics, Inc. v. Quinton Instr. Co.*, 835 F.2d 1320, 1326-28 (Fed. Cir. 1987); *Lam Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

2.  The damage award must be intended to compensate the patent holder, not to punish the infringer. *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003).

**11.4.2      TWO TYPES OF DAMAGES — LOST PROFITS & REASONABLE ROYALTY**

There are two types of damages that Plaintiff may be entitled to recover: lost profits, or a reasonable royalty.

Lost profits consist of any actual reduction in business profits Plaintiff suffered as a result of the Defendant's infringement. A reasonable royalty is defined as the amount the patent owner and someone wanting to use the patented invention would agree upon as a fee for use of the invention. I will describe shortly what Plaintiff must prove to recover either type of damages.

Plaintiff is entitled to recover no less than a reasonable royalty for each infringing [sale; *fill in other infringing act*], even if Plaintiff cannot prove that it suffered lost profits in connection with that [sale; *fill in other infringing* act].

**Committee Comments**

35 U.S.C. § 284 (2006); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545-46 (Fed. Cir. 1995) (*en banc*).

### 11.4.3      LOST PROFITS

To recover lost profits, Plaintiff must prove three things:

1. A reasonable probability that, if Defendant had not infringed, Plaintiff would have made additional sales of the patented [product; process] that Defendant made.

2. The amount of profit Plaintiff would have made on those sales. Plaintiff does not need to prove this amount with precision [, and if there are uncertainties regarding the specific amount of lost profits, you may resolve those uncertainties against Defendant].

[3. Defendant reasonably should have foreseen that Plaintiff would have lost profits.]

There are alternative ways for Plaintiff to establish an entitlement to recover lost profits. I will discuss these in the following instructions.

### Committee Comments

1. *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc). To establish a right to lost profits, the plaintiff must "show a reasonable probability that, 'but for' the infringement it would have made the sales that were made by the infringer." *Rite-Hite*, 56 F.3d at 1545. A patentee is entitled to no less than a reasonable royalty on any infringing sales for which it cannot prove lost profits. In such cases, the court is obliged to award such reasonable royalties "as the award evidence will support." *Dow Chem. Co. v. Mee Indus., Inc.,* 341 F.3d 1370, 1382 (Fed. Cir. 2003).

2. Once a patentee shows causation, "the trial court may resolve doubts underlying the precise measurement of damages against the infringer." *Minco, Inc. v. Combustion Eng'g, Inc.,* 95 F.3d 1109, 1118 (Fed. Cir. 1996).

3. As to the foreseeability element, see *Rite-Hite Corp.*, 56 F.3d at 1545-46. This element is bracketed because typically it will become an issue only if the defendant offers evidence of lack of foreseeability.

4.  "A patentee may resort to any method showing, with reasonable probability, entitlement to lost profits 'but for' the infringement." *Micro Chemical, Inc. v. Lextron, Inc.,* 318 F.3d 1119, 1122 (Fed. Cir. 2003).

## 11.4.3.1    LOST PROFITS — *PANDUIT* TEST

[One way that] Plaintiff may establish that it is reasonably probable that it would have made additional sales of the patented [or competing][product; process] [is] by proving three things:

> 1. There was a demand for the patented [or competing] product;

> 2. There was no acceptable, non-infringing substitute for the patented product; and

> 3. Plaintiff was capable of satisfying the demand.

An "acceptable, non-infringing substitute" is a product that has the advantages of the patented invention that were important to the purchasers of Defendant's product. If purchasers of the Defendant's product were motivated to purchase that product because of features that were available only from that product and the Plaintiff's patented product, then other products are not acceptable substitutes, even if they otherwise competed with Plaintiff's and Defendant's products.

### Committee Comments

1. One way in which a plaintiff can establish a right to lost profits is to satisfy the so-called *Panduit* test, which is generally said to require proof of (a) demand, (b) an absence of acceptable non-infringing substitutes, (c) plaintiff's possession of sufficient manufacturing and marketing capacity to satisfy the demand, and (d) the amount of profit the plaintiff would have made. *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*). The committee has dropped the fourth element from this instruction because that is a requirement for any lost profit award and is covered more generally in instruction no. 4.5, *infra*.

2. The bracketed references to "competing" products are included to cover situations in which it is appropriate for the plaintiff to recover lost profits on non-patented products that complete with those sold by the infringer. *See, e.g., Rite-Hite*, 56 F.3d at 1546; *King Instruments Corp. v. Perego*, 65 F.3d 941, 947 (Fed. Cir. 1995).

3. The *Panduit* test is one way of proving causation for lost sales, but it is not the exclusive means of proving causation for lost sales. *Rite-Hite*, 56 F.3d at 1548; *BIC Leisure Products, Inc.*

*v. Windsurfing Int'l*, 1 F.3d 1214, 1218 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989).

4.   Proof of "demand" for the product is generally satisfied by showing that there were significant sales of either the plaintiff's patented product or by significant sales of the defendant's infringing product. *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (1984). Since one or both of these facts is generally a basic component of most patent cases, the existence of "demand" is rarely a contested issue at trial.

5.   What constitutes an "acceptable, non-infringing substitute" is frequently a hotly contested issue. *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996) ; *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) (*en banc*); *Standard Haven Prods. Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453 (Fed. Cir. 1991); *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Labs., Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1576-77 (Fed. Cir. 1989). Whether a product needs to have actually been available on the market during the period of infringement is unclear. *Compare*, *Grain Processing*, 185 F.3d at 1341 (need not necessarily have been available) *with Zygo*, 79 F.3d at 1571 (must have been available).

6.   A plaintiff must be able to prove that it had the manufacturing and marketing capacity to make any lost sales. *Foran Corp. v. General Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551 (Fed. Cir. 1994).

7.   The burden of proof shifts to the defendant to disprove lost sales once the patent owner introduces sufficient evidence to satisfy the *Panduit* test. *Rite-Hite*, 56 F.3d at 1545.

### 11.4.3.2 LOST PROFITS — TWO SUPPLIER MARKET

[An alternative way that] Plaintiff may establish that it is reasonably probable that it would have made additional sales of the patented [product; process] [is] by proving two things:

> 1. Plaintiff and Defendant are the only suppliers for the product in the market; and
>
> 2. Plaintiff was capable of making all of the sales made by Defendant.

If Plaintiff proves these things, it is entitled to recover its lost profits on all of the sales made by Defendant.

#### Committee Comments

Where there are only two suppliers in the market for a product, it may be inferred that plaintiff would have made defendant's infringing sales, unless the defendant can demonstrate otherwise. *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1141 (Fed. Cir. 1991); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

# 11.4.3.3    LOST PROFITS — MARKET SHARE METHOD

[An alternative way that] Plaintiff may establish that it is reasonably probable that it would have made additional sales of the patented [product; process] [is] by proving two things:

> 1. Plaintiff would have made some portion of Defendant's infringing sales if Defendant's infringing product had not been available; and

> 2. Plaintiff was capable of making those additional sales.

If Plaintiff proves these things, it is entitled to recover its lost profits on the percentage of Defendant's sales that reflects what Plaintiff proves was its share of the market. [You may reach this conclusion even if acceptable, non-infringing substitute products were available from others.]

## Committee Comments

Under the "market share" test a patent owner may recover lost profits even though acceptable non-infringing substitutes are available from others. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989). In such cases, the plaintiff is entitled to recover lost profits on a percentage of defendant's sales equal to the defendant's (plus the plaintiff's) market share, and a reasonable royalty on the balance of the defendant's infringing sales. *State Indus.*, 883 F.2d at 1577-78; *Crystal Semiconductor Corp. v. Tritech Microelectronics, Int'l.*, 246 F.3d 1336, 1354-56 (Fed. Cir. 2001).

## 11.4.3.4      LOST PROFITS — COLLATERAL SALES

Plaintiff contends that the patented product is normally sold along with other collateral products, such as [*identify the collateral products*]. To recover lost profits for such collateral sales, Plaintiff must prove two things:

1.  It is reasonably probable that plaintiff would have sold the collateral products if the defendant had not infringed; and

2.  The collateral products function together with the patented product as a functional unit. Plaintiff may not recover lost profits on other products or services that might be sold along with the patented product for convenience or business advantage, but that are not functionally part of the patented product.

### Committee Comments

1.  Permitting a patentee to recover lost profits on items not part of the patented product requires a careful balancing of the desire to fully compensate the patent holder for all actual damages on the "entire market value" of a product against the antitrust risk of permitting the patent holder to interfere with the sale of non-patented items. This legal test is intended to achieve such a balance. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) (*en banc*).

2.  The instruction uses the phrase "collateral products" rather than the phrase "convoyed sales," in an effort to avoid some of the imprecision that exists in the case law as to exact scope of the phrase "convoyed products." "Convoyed products" is broad enough to include products or services typically sold with the patented product, whether or not any functional relationship exists between the patented product and the convoyed product. The existence of such convoyed sales may be taken into account in setting a reasonable royalty rate, whether or not any functional relationship exists between the two. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (factor no. 6). However, lost profits may only be recovered on the subset of convoyed products for which a functional relationship exists, which this instruction denominates "collateral products." *Rite-Hite*, 56 F.3d at 1549-1550. *See further, Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1371-1373 (Fed. Cir. 2004) (permitting recovery of lost sales of syrup collateral to sale of a patented juice dispenser).

### 11.4.3.5    LOST PROFITS — PRICE EROSION / COST INCREASES

Plaintiff [also] contends that it lost profits [because it had to charge lower prices for its products because of Defendant's infringement] [[and;or] [because it incurred increased costs because of Defendant's infringement] [*insert alternative theory of price erosion, e.g., foregone price increases*]. To be recoverable, any such lost profits must have been reasonably foreseeable to Defendant.

If Plaintiff proves this, it is entitled to recover the profits it lost as a result of its [lowered prices; increased costs; *alternative theory, e.g., foregone price increases*], in addition to any profits it lost due to sales it did not make because of Defendant's infringement.

**Committee Comments**

1.   This instruction should be utilized only in those cases where plaintiff's lost profits damage claim includes claims based upon price erosion and/or cost increases. If only one of those types of claims is being asserted, the instruction should be appropriately simplified by deleting references to the other type of claim.

2.   To prove price erosion for the sales it made (or would have made) during the infringement period, a patent owner must show that it would have been able to charge higher prices, but for the defendant's infringing acts. *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357-60 (Fed. Cir. 2001); *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324-25 (Fed. Cir. 2000); *Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996).

(2008 rev.)

# 11.4.3.6      LOST PROFITS — AMOUNT

If you conclude that Plaintiff has proved that it lost profits because of Defendant's infringement, the lost profits that you award should be the amount that Plaintiff would have made on any sales that Plaintiff lost because of the infringement, minus the additional costs that Plaintiff would have incurred in making those sales [, plus the amount by which Plaintiff's profits on its own sales were decreased as a result of reduced prices or increased costs caused by Defendant's infringement].

Plaintiff is required to prove the amount of its lost profits to a reasonable probability and may not recover amounts that are speculative. However, mathematical certainty is not required[, and if the reason Plaintiff has difficulty proving the amount of its lost profits is that Defendant did not maintain adequate records, then you should resolve any doubts as to the amount of lost profits in Plaintiff's favor.]

## Committee Comments

1.  The bracketed language in the first paragraph of this instruction should only be included in cases where the plaintiff's lost profit claim includes a claim based on price erosion and/or increased costs.

2.  The proper measure of recovery is any net profits lost by plaintiff as a result of defendant's infringing acts. Plaintiff's fixed costs are generally ignored in determining those incremental profits. *Paper Converting Mach. Co. v. Magna-Graphics Co.*, 745 F.2d 11, 22 (Fed. Cir. 1984).

3.  Plaintiff must prove the amount of its lost profits by a reasonable probability. *Grain Processing Corp. v. Am-Maize Products Co.*, 185 F.3d 1341, 1349-50 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc). Mathematical certainty is not required. *Del Mar Amonics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983). However, the amount of lost profits cannot be based on mere speculation. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030-31 (Fed. Cir. 1996).

4.  Doubts resulting from defendant's failure to retain appropriate records are to be resolved in the plaintiff's favor. *Lam*, 718 F.2d at 1066; *Ryco Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988).

(2008 rev.)

## 11.4.4    REASONABLE ROYALTY

Plaintiff seeks to recover a reasonable royalty.

[Plaintiff is entitled to recover a reasonable royalty for any of Defendant's infringing sales for which Plaintiff did not prove lost profits.]

A royalty is a payment made to the owner of a patent by someone else so that he can [make; use; sell; import] the patented invention. A "reasonable royalty" is the amount Plaintiff and Defendant would have agreed upon as a royalty at the time Defendant's infringement began.

In determining a reasonable royalty, you should assume that Plaintiff would have been willing to allow Defendant to [make; use; sell; import] the patented invention and that Defendant would have been willing to pay Plaintiff to do so. You should take into account what Plaintiff's and Defendants' expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations. You should assume that both Plaintiff and Defendant would have believed that Plaintiff's patent was valid and infringed. You should also assume that Defendant would have been willing to pay, and Plaintiff would have been willing to accept, the reasonable royalty they negotiated. Your role is to determine what Plaintiff and Defendant would have agreed upon if they had negotiated in this manner, not just what either Plaintiff or Defendant would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence:

- Royalties that others paid to Plaintiff for the patented invention;

- Royalties that Defendant paid to others for comparable patents;

- Whether Plaintiff had a policy of licensing or not licensing the patents;

- Whether Plaintiff and Defendant are competitors;

- Whether use of the patented invention helps to make sales of other products or services;

- Whether the product made using the patent is commercially successful, as well as its profitability;

- The advantages of using the patented invention over products not covered by the patent;

- The extent of Defendant's use of the patented invention and the value of that use to Defendant;

- Any royalty amounts that are customary for similar or comparable patented inventions;

- The portion of the profit on sales that is due to the patented invention, as opposed to other factors, such as unpatented elements or processes, features, or improvements developed by Defendant;

- Expert opinions regarding what would be a reasonable royalty.

**Committee Comment**

1. This instruction is adapted from Northern District of California Model Patent Instructions 5.6 and 5.7. *See also* 35 U.S.C. 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*).

2. The factors to be considered originated in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). If the *Georgia-Pacific* factors are provided to the jury, it is the Committee's view that all factors should be set out and not simply those for which the parties presented affirmative evidence. Typically, patent damages experts will review each of the *Georgia-Pacific* factors and testify as to whether each factor supports a higher royalty rate, a lower rate or is neutral. The Court should be sensitive not to highlight one or more of the factors in the instructions, to avoid any implication that the Court has endorsed certain of the evidence.

3.  There may be circumstances in which a test other than, or in addition to, the *Georgia-Pacific* test is appropriate. *See TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986). In a case in which damages are sought based on an alternative theory, modification of this instruction may be appropriate so that the trial court does not unduly credit a particular methodology.

## 11.4.5    SINGLE / MULTIPLE RECOVERIES FOR INFRINGING ACT

### Committee Comment

The court and the parties must ensure that the jury does not duplicate lost-sales damages if several patents are infringed by the same accused product or process. 35 U.S.C. §287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l., Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1008-09 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987). On the other hand, if multiple products or processes are accused of infringing multiple patents, the patent holder may be entitled to recovery for multiple infringements.

In addition, when damages are based on lost reasonable royalties, infringement of multiple payments, even by a single infringing act, may warrant or require additive royalties for each patent that was infringed. *See Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1561 n.8 (Fed. Cir. 1983); *see also, Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007).

Because of the variety of situations that may arise, the Committee elected not to propose a pattern instruction on this topic, leaving the matter to be addressed in light of the particular scenario in a given case.

## 11.4.6  REQUIREMENT OF NOTICE (CLAIMS INVOLVING PRODUCTS)

Plaintiff can recover damages only for infringement that occurred after Plaintiff gave notice of its patent rights. Plaintiff must prove by a preponderance of the evidence that it gave notice.

There are two ways a patent holder can give notice of its patent rights.

The first way is to give notice to the public in general, by placing the word "patent" or the abbreviation "PAT." with the number of the patent on substantially all the products it sold that included the patented invention. [Anyone that Plaintiff licensed to use the patented invention must also mark in the same manner substantially all of its products that include the patented invention.] This type of notice is effective from the date Plaintiff [and its licensees] began to mark in this manner substantially all of [its; their] products that included the patented invention.

The second way to give notice of patent rights is by directly informing Defendant that it is infringing a particular patent and identifying the infringing product. This type of notice is effective from the time it is given.

If Plaintiff did not give notice in either of these ways before filing this lawsuit, then Plaintiff can recover damages only for infringement that occurred after it filed the lawsuit, on [*date.*]

### Committee Comment

1. 35 U.S.C. §287(a), the patent marking statute, states:
   "Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe

thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice."

2. This instruction (based on a Model ABA Instruction) should be used where patents containing product claims (as opposed to method or process claims) are being asserted and the patent owner or its licensees are producing a tangible product that can be marked. *Am. Med. Systems, Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538-39 (Fed. Cir. 1993). When a patent contains both product and process claims, and there is a tangible item that can be marked, a patent owner must comply with §287(a) if both the product and process claims are asserted. *Id*. at 1538*; see also Devices for Med. Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987). It is unclear, however, whether a patentee can avoid the requirements of §287(a) by only asserting the process claims. *Compare Boehl*, 822 F.2d at 1066, with *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1083 (Fed. Cir. 1983) and *Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*, 906 F. Supp. 813, 817 (E.D.N.Y. 1995).

3. Actual notice requires "the affirmative communication of a specific charge of infringement by a specific accused product or device." *Omstead Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994); *Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001). However, the charge of infringement may be "qualified". *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1346 (Fed. Cir. 2001).

4. If there are licensees of the patent, the requirement of notice applies to the patent holder and all licensees. In such a case, the bracketed language in the third paragraph should be used.

5. Damages may begin to run from the date of publication of the patent application. *See* 35 U.S.C. § 154(d). In such cases, this instruction will require substantial modification.

**11.4.7        TOTALING THE DAMAGE AWARD**

Any amounts that you award for lost profits and for reasonable royalties should be set out separately on the verdict form that I will give you.

**Committee Comments**

1.   Requiring the jury to separately identify the amounts awarded for lost profits and reasonable royalties make review of the damage award in connection with JMOL's and appeals easier.

2.   This instruction should be coordinated with any additional instructions provided by the court regarding the method to be following in filling out the particular verdict form that the court decides to use.

**12.  COPYRIGHT**

(2008 rev.)

## 12.1.1 COPYRIGHT — ALLEGATION DEFINED

Plaintiff claims that Defendant has infringed Plaintiff's copyright in [*describe the work*] by [*describe the alleged infringement*].

**Committee Comment**

*See* 17 U.S.C. § 106.

## 12.2.1 COPYRIGHT INFRINGEMENT

To succeed on his claim, Plaintiff must prove the following things:

1.      [*Describe the work*] is the subject of a valid copyright;

2.      Plaintiff owns the copyright; and

3.      Defendant copied protected expression in Plaintiff's copyrighted work.

I will explain what these terms mean.

If you find that Plaintiff has proved each of these things, then you must find for Plaintiff. However, if you find that Plaintiff did not prove each of these things, then you must find for Defendant.

### Committee Comments

**1.      Authority.** *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 548 (1985); *Incredible Techs., Inc. v. Virtual Techs., Inc.,* 400 F.3d 1007, 1011 (7th Cir. 2005). Any elements that are undisputed may be eliminated.

**2.      Caveat regarding element 1.** It is not entirely clear in the Seventh Circuit whether the issue of validity is to be determined by a jury. For further discussion, *see* Instruction 3.1.

**3.      Affirmative defenses.** If Defendant has raised an affirmative defense, a court may substitute the following for the final paragraph of the instruction:
>       If you find that Plaintiff did not prove each of these things by a preponderance of the evidence, then you must find for Defendant.
>       If, on the other hand, you find that Plaintiff has proved each of these things by a preponderance of the evidence, you must then consider Defendant's claim that [*describe affirmative defense(s)*]. If you find that Defendant has proved this by a preponderance of the evidence, then you must find for Defendant.

(Based on 7th Circuit Pattern Instruction No. 4.02, n.1.)

**4.** **Copied.** If the infringement consists of something other than copying (*i.e.*, publicly performing, publicly displaying, distributing copies of, preparing derivative works based upon), the instruction should be modified accordingly.

## 12.3.1 VALIDITY

To be eligible for copyright protection, a work must be original and in a form that can be seen, heard, reproduced, or communicated [either directly or with the aid of a machine or device].

A work is original if it was created independently, as opposed to being copied from another work. It must contain at least some minimal degree of creativity. The work need not be completely new. [A work can be original even if it incorporates elements that are not original to the author. However, only the original elements added by the author are protected by copyright.]

### Committee Comments

1.    **Caveat - issue of fact vs. issue of law.** In *Gaiman v. McFarlane*, 360 F. 3d 644, 648 (7th Cir. 2004), the Seventh Circuit discussed whether "copyrightability" is an issue for the court or for the jury. It noted a circuit split on the issue, identifying cases holding that copyrightability is a mixed question of law and fact, and is thus for the jury, when it depends on originality, but that other cases, including its earlier decision in *Pub'ns Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 478 (7th Cir. 1996), hold that the question is always an issue of law. The court stated that "[w]hether a particular work is copyrightable is fact-specific, which argues against treating the question as one of law, but tugging the other way is the concern that property rights not be placed at the mercy of the jury." *Gaiman,* 360 F.3d at 648-49. The court concluded that though this was a "nice issue," the case did not provide an appropriate occasion for reexamination of *Publ'ns Int'l. Id.* at 649. In *Publ'ns Int'l,* the court addressed whether copyright law afforded protection to constituent recipes in a cookbook protected by a compilation copyright. The court said that this concerned "an interpretation of statutory law" and dealt with the matter accordingly. *Publ'ns Int'l,* 88 F.3d at 478. It is unclear to the Committee whether the court in *Publ'ns Int'l* intended to make a definitive determination that copyrightability – or, as stated in the present instruction, copyright validity – is *always* a question of law. Because the matter is less than one hundred percent certain, the Committee has provided an instruction on copyright validity, with the *caveat* that this may not, in fact, be a matter to be determined by a jury.

2.    **Requirements for valid copyright (paragraph 1 of instruction).** *See, e.g., JCW Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910, 914 (7th Cir. 2007).

3.    **Originality (paragraph 2 of instruction).** *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991) ("Original, as the term is used in copyright, means only that the work

was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."); *Assessment Techs. of WI, LLC v. Wiredata, Inc.,* 350 F.3d 640, 640 (7th Cir. 2003) (A work "requires only enough originality to enable [it] to be distinguished from similar works that are in the public domain."); *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 929 (7th Cir. 2003) (When a work is based on earlier work in the public domain, "the only originality required for the new work to be copyrightable ... is enough expressive variation from public-domain or other existing works to enable the new work to be readily distinguished from its predecessors.").

## 12.4.1 OWNERSHIP

Plaintiff owns a copyright in [*describe the work at issue*], if he

- [created the work]

- [received the copyright from someone else who owned it]

- [created a joint work. A joint work is a work that two or more persons prepared with the intention that their contributions be merged into inseparable elements of a single work. To own a copyright in a joint work, a person must contribute original expression that, by itself, would be eligible for copyright protection as I have previously defined that term. [Contributions in the nature of research, comments or edits are not sufficient.] [Contributing direction or ideas is not enough.]]

### Committee Comments

**1.** *See generally* 17 U.S.C. § 201(a) ("Copyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are co-owners of copyright in the work."); *id.* § 201(d) (acquisition of copyright via transfer). The Committee has avoided use of the term "author" to avoid jury confusion in cases in which the work at issue is something other than a textual work, and to avoid the need for further definition of that term. The terms "create" and "creator" are all-encompassing.

**2.** This instruction should not be used if the case involves only a work made for hire, a compilation or collective work, or a derivative work. In such a case, use the applicable instruction from Instructions 4.2 – 4.4.

**3.** **Creation of work.** *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) ("[T]he author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection.").

**4.** **Joint work.** *See* 17 U.S.C. § 101 (general definition); *Gaiman v. McFarlane,* 360 F.3d 644, 658-59 (7th Cir. 2004); *Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1067, 1068 (7th Cir. 1994) ("To qualify as an author, one must supply more than mere direction or ideas."). In *Gaiman,* the court noted that the general rule is that "each contributor to a joint work must make a contribution that if it stood alone would be copyrightable," but indicated that an exception to this

rule exists when the overall work is copyrightable but the contributions of each creator "*couldn't stand alone because of the nature of the particular creative process that had produced it.*" *Gaiman,* 360 F.3d at 659. To illustrate, the court quoted the following example from Nimmer: "if authors *A* and *B* work in collaboration, but *A*'s contribution is limited to plot ideas that standing alone would not be copyrightable, and *B* weaves the ideas into a completed literary expression, it would seem that *A* and *B* are joint authors of the resulting work." *Id.* (quoting 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 6.07 at 6-23 (2003)). The instruction will require modification in a case in which ownership of this type of work is at issue.

## 12.4.2  OWNERSHIP — WORKS MADE FOR HIRE

Plaintiff owns a copyright in [*describe the work at issue*] if the work was

-   [prepared by Plaintiff's employee within the scope of his employment.]

-   [specially [ordered; commissioned] as [a contribution to a collective work; a part of a motion picture or other audiovisual work; a translation; a supplementary work; a compilation; an instructional text; a test; answer material for a test; an atlas], and there was a prior agreement, signed by [*names of necessary signators*] that the work would be a work made for hire.]

    -   [A supplementary work is a work prepared for publication as an accompaniment to someone else's work to [introduce; conclude; illustrate; explain; revise; comment upon; assist in the use of] that work [for example, a foreword; afterword; pictorial illustration; map; chart; table; editorial note; musical arrangement; answer material for a test; bibliography; appendix; index].]

    -   [An instructional text is a literary, pictorial, or graphic work prepared for publication for use in systematic instructional activities.]

### Committee Comments

**1.**   **Ownership of work made for hire.** *See* 17 U.S.C. § 201(b) ("In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.").

**2.**   **Definition of work made for hire.** *See* 17 U.S.C. § 101; *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737-40 (1989); *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F. 3d 586, 591 (7th Cir. 2003); *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir. 1992) (requirement of prior agreement).

## 12.4.3 OWNERSHIP — COMPILATION OR COLLECTIVE WORK

Plaintiff owns a copyright in [*describe compilation/collective work*] if he selected and arranged the separate [works; materials; data] in an original way. [Plaintiff does not need to own a copyright in the separate [works; materials; data] themselves.] [By assembling the separate [works; materials], a person does not acquire a copyright in any of the separate [works; materials].] [A person who owns a copyright in one of the separate [works; materials; data] does not acquire a copyright in the collective work.]

### Committee Comment

*See* 17 U.S.C. §§ 101, 201(c); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 359 (1991); *Gaiman v. McFarlane,* 360 F.3d 644, 653-54 (7th Cir. 2004).

## 12.4.4 OWNERSHIP — DERIVATIVE WORK

Plaintiff owns a copyright in [*describe derivative work at issue*] if he [recast; transformed; adapted] it from an earlier work. Plaintiff owns a copyright only in the original expression that he adds to the earlier work. He does not own a copyright in the expression taken from the earlier work.

[The earlier work may include work that is protected by copyright and used with the copyright owner's permission. [The earlier work [also] may include work that is in the public domain.]]

### Committee Comments

1.      **Definition of derivative work.** *See* 17 U.S.C. § 101.

2.      **Ownership of derivative work.** *See* 17 U.S.C. § 103(b) ("The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material."); *Stewart v. Abend*, 495 U.S. 207, 223 (1990) (aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the pre-existing work remains "on grant from the owner of the pre-existing work"); *Pickett v. Prince,* 207 F.3d 402, 405, 406 (7th Cir. 2000) (elements added by derivative author must be original).

3.      **Derivative work must be distinct from earlier work.** *Gaiman v. McFarlane*, 360 F.3d 644, 661 (7th Cir. 2004) (to be copyrightable, derivative work must be significantly different from copyrighted original).

4.      **Derivative work based on copyrighted material or material in public domain.** *See Pickett v. Prince,* 207 F.3d 402, 406-07 (7th Cir. 2000) (derivative author must have permission from owner of copyrighted work); *Gracen v. Bradford Exchange,* 698 F.2d 300, 302 (7th Cir. 1983) (derivative work may be based on material in public domain); 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 3.04[A] (2005) (discussing subject matter in the public domain).

## 12.5.1 COPYING

As I stated, Plaintiff must prove that Defendant copied protected expression in his work.

[You may infer that Defendant copied Plaintiff's work if Defendant had a reasonable opportunity to [view; read; hear] it before creating his own work and the two works are so similar that a reasonable person would conclude Defendant took protected expression from Plaintiff's work.]

[You may infer that Defendant copied Plaintiff's work if the similarities between the two works can be explained only by copying, rather than by [coincidence; independent creation; the existence of a common source for both works.]]

[In determining whether Plaintiff has proved copying, you may consider evidence that Defendant's work was created independently of Plaintiff's copyrighted work [or that Defendant had authority from Plaintiff to copy Plaintiff's work.]]

### Committee Comments

1.    **Usage.** This instruction should be used only when the plaintiff seeks to prove copying inferentially. If the plaintiff offers only direct evidence of copying, then this instruction is unnecessary.

2.    **Inference of copying from access plus substantial similarity.** *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005).

3.    **Striking similarity may permit inference of copying without proof of access.** *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1170 (7th Cir. 1997); *Bucklew v. Hawkins, Ash, Baptie & Co., LLP,* 329 F.3d 923, 926 (7th Cir. 2003); *Selle v. Gibb,* 741 F.2d 896, 901 (7th Cir. 1984).

4.    **Evidence of independent creation can rebut inference of copying.** *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 915 (7th Cir. 2007); *Susan Wakeen Doll Co. v. Ashton Drake Galleries*, 272 F.3d 441, 450 (7th Cir. 2001). The burden of proving copying remains at all times on the party alleging infringement. Some cases suggest that evidence of access plus substantial similarity gives rise to a "presumption" of copying, but the Committee has concluded that the Seventh Circuit actually is speaking about a permissible inference from circumstantial

evidence, not the type of presumption that shifts the burden of proof to the party claimed to have infringed. In other words, a jury presented with evidence of access plus substantial similarity may, but need not, infer copying. Consistent with this analysis, the instruction does not impose upon the defendant the burden of "proving" independent creation or "rebutting" a "presumption" of copying. Rather, the Committee's understanding of the law is that if evidence of independent creation is offered by the defendant, the jury is to consider that evidence, together with all other evidence relevant to the issue of copying, in determining whether the plaintiff has proved copying. The bracketed sentence regarding consideration of evidence of independent creation should be used only if the defendant has offered evidence of independent creation or of authorization to copy.

## 12.5.2 COPYING — DEFINITION OF "PROTECTED EXPRESSION"

"Protected expression" means expression in Plaintiff's work that was created independently, involving some creativity.

Copyright law protects only original expression in the work. This includes the way that [facts; ideas; procedures; processes; systems; methods of operation; concepts; principles; discoveries; devices] are expressed in the work. It does not include the [facts; ideas; procedures; processes; systems; methods of operation; concepts; principles; discoveries; devices] themselves. [For example, the idea or concept of a secret agent who saves the world from impending disaster is not protected by copyright; but a particular expression of that idea – such as a James Bond movie – may be protected by copyright.]

[Protected expression does not include settings, poses, or characters that are indispensable or at least standard in the treatment of a particular subject. [In this case, protected expression [may] include[s] [*fill in*]. Protected expression does not include [*fill in*].]

[The design of a useful item is considered protected expression only if it includes [pictorial; graphic; sculptural] features that can be identified separately from the item itself. The feature must be capable of existing independently of the item's useful aspects. [For example, a statue of a dancing figure may be protected expression even if it is used as the base of a lamp. The lamp itself is a useful item and is not protected.] ]

### Committee Comments

**1.      What copyright protects.** *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345, 348-49, 354-55 (1991); *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 372 F.3d 913, 929 (7th Cir. 2004); *JCW Investments, Inc. v. Novelty, Inc.,* 42 F.3d 910, 917 (7th Cir. 2007) (copyright does not protect facts or ideas, but only original expression); *Mid America Title Co. v. Kirk,* 59 F.3d 719, 720 (7th Cir. 1995) (amount of time and effort spent creating work is irrelevant to copyrightability). The bracketed language in the first paragraph is included to account both for cases in which the expression was created by the plaintiff and those in which the plaintiff has the rights to the material via assignment or otherwise. The example at the end of the second paragraph is provided for illustrative purposes and may be substituted with a different example depending on the type of work at issue in the case.

**2.     Scènes à faire doctrine (standardized elements).** *See Incredible Techs., Inc. v. Virtual Techs., Inc.,* 400 F.3d 1007, 1011-12 (7th Cir. 2005); *Atari, Inc. v. N. Amer. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982).

**3.     Unprotected elements:** In some cases, the court will determine before or during trial that some aspects or elements of the plaintiff's work do not constitute protected expression. Protected expression does not include, for example, titles, names, short phrases, slogans, listings of ingredients, labels, formulas, or familiar symbols or designs. Such elements can be inserted into the place provided in the instruction.

**4.     Unprotected material.** *See* "Material not subject to copyright," 37 C.F.R. § 202.1 (2007). The Copyright Office Circular lists those works which, standing alone, would not be entitled to registration. Some works, such as words, phrases and slogans that generally are not copyrightable standing alone, may be protectable when included in a larger work. If the defendant is asserting that he only copied words, slogans or short phrases, the issue may not be whether the work is protectable, but whether the copying was *de minimis* and not infringing. *See* 2 M. Nimmer and D. Nimmer, *Nimmer on Copyright* § 8.01[G]. ("The legal maxim of *de minimis non curat lex* applies to copyright actions no less than to other branches of the law. Accordingly . . ., for similarity to be substantial, and hence actionable, it must apply to more than simply a *de minimis* fragment."). In such cases, the court should consider whether Instruction 7.1 ("Defenses - Fair Use") adequately addresses the issue or whether an instruction that *de minimis* copying is not an infringement is appropriate.

**5.     Useful articles / functional elements.** *See Incredible Techs., Inc. v. Virtual Techs., Inc.,* 400 F.3d 1007, 1012 (7th Cir. 2005); *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 372 F.3d 913 (7th Cir. 2004); *American Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977 (7th Cir. 1997). Under the Copyright Act, "useful articles" are excluded from copyright protection. *See Incredible Techs.,* 400 F.3d at 1012. A useful article is one that has "an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. The design of a useful article is copyrightable only to the extent that it "incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Id.* "Functional elements" or features of an item are excluded from copyright protection. *See Incredible Techs.,* 400 F.3d at 1012.

# 12.6.1 DERIVATIVE LIABILITY — VICARIOUS INFRINGEMENT

Plaintiff claims that Defendant is liable for [*Direct infringer's name*]'s infringement of Plaintiff's copyright. To succeed on this claim, Plaintiff must prove the following things:

1.    [*Direct infringer's name*] infringed Plaintiff's copyright, as defined in instructions I have already given you;

2.    Defendant profited from the infringement by [*Direct infringer's name*]; and

3.    Defendant had the right and ability to stop or limit the infringement by [*Direct infringer's name*] but failed to do so.

If you find that Plaintiff has proved each of these things, then you must find for Plaintiff. However, if you find that Plaintiff did not prove each of these things, then you must find for Defendant.

## Committee Comments

**1.**    **Authority.** *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930-31 (2005) (A party infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it). *MGM Studios* also states that vicarious infringement cannot be inferred merely from the design or distribution of a product. *Id.* at 934. A defendant can be held liable for both vicarious and contributory infringement. *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 437-38 (1984).

**2.**    **Cross reference.** The first element of this instruction contains a cross-reference to earlier instructions regarding direct infringement. This assumes that the direct infringer is on trial along with the alleged vicarious infringer. If the alleged direct infringer is not on trial, the instructions regarding direct infringement still must be given but may require modification for purposes of clarity.

**3.**    **Affirmative defenses.** If the defendant has raised an affirmative defense, a court may substitute the following for the final paragraph of the instruction:

> If you find that Plaintiff did not prove each of these things, then you must find for Defendant.
> If, on the other hand, you find that Plaintiff has proved each of these things,

you must then consider Defendant's claim that [*describe affirmative defense(s)*]. If you find that Defendant has proved this by a preponderance of the evidence, then you must find for Defendant.

(Based on 7th Circuit Pattern Instruction No. 4.02, n.1.)

## 12.6.2  DERIVATIVE LIABILITY — CONTRIBUTORY INFRINGEMENT

Plaintiff claims that Defendant [induced [*direct infringer's name*] to infringe Plaintiff's copyright] [contributed to [*direct infringer's name*]'s infringement of Plaintiff's copyright]. To succeed on this claim, Plaintiff must prove each of the following things:

1.      [*Direct infringer's name*] infringed Plaintiff's copyright, as defined in the instructions I have already given you;

2.      Defendant [[induced; caused; encouraged] [*direct infringer's name*] to infringe Plaintiff's copyright] [contributed in a significant way to [*direct infringer's name*]'s infringement of Plaintiff's copyright]; and

3.      Defendant [knew of the infringing activity] [strongly suspected or should have known of the infringing activity but took steps to avoid knowing about the infringing activity].

If you find that Plaintiff has proved each of these things, then you must find for Plaintiff. However, if you find that Plaintiff did not prove each of these things, then you must find for Defendant.

### Committee Comments

**1.      Inducement.** *See MGM Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936 (2005) ("The rule on inducement of infringement as developed in the early cases is no different today. Evidence of 'active steps . . . taken to encourage direct infringement' . . . such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe . . . ." ); *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) ("[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer.") (cited with approval in *MGM Studios,* 545 U.S. at 929).

**2.      Deliberate avoidance of knowledge.** *In Re Aimster Copyright Litigation*, 334 F.3d 643, 650, 655 (7th Cir. 2003) ("Willful blindness is knowledge, in copyright law (where indeed it may be enough that the defendant *should* have known of the direct infringement) . . . as it is in the law generally. . . . One who, knowing or strongly suspecting that he is involved in shady dealings, takes steps to make sure that he does not acquire full or exact knowledge of the nature and extent

of those dealings is held to have a criminal intent, . . . because a deliberate effort to avoid guilty knowledge is all that the law requires to establish a guilty state of mind." . . . [Defendant's] ostrich-like refusal to discover the extent to which its system was being used to infringe copyright is merely another piece of evidence that it was a contributory infringer.").

3.     **Factors to Consider.** The case law discusses various factors that may be considered in deciding whether a defendant engaged in contributory infringement, including whether the defendant sold or distributed a product or service that has been used to infringe copyrights, or whether the defendant promoted or gave instructions for use of a product or service to infringe copyrights. *See MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936, 940 n.13 (2005). The Committee elected not to include these in the instruction, deciding that they are better left for argument by counsel.

4.     **Substantial Noninfringing Uses.** If the case involves the issue as to whether the defendant's product or service is capable of substantial noninfringing uses, the jury may need additional instructions based on *Grokster*, for example:

> [If [Defendant's; *direct infringer's*] [product; service] has substantial non-infringing uses, you may not hold Defendant liable unless Defendant promoted [the; *direct infringer's*] use of its [product; service] in a way that infringed Plaintiff's copyrights.]

*MGM Studios, Inc. v. Grokster, Ltd.,* 545 U.S. at 937 ("mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability. Nor would ordinary acts incident to product distribution . . . . The inducement rule, instead, premises liability on purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise.").

5.     **Cross reference.** The first element of this instruction contains a cross-reference to earlier instructions regarding direct infringement. This assumes that the direct infringer is on trial along with the alleged contributory infringer. If the alleged direct infringer is not on trial, the instructions regarding direct infringement still must be given but may require modification for purposes of clarity.

6.     **Affirmative defenses.** If the defendant has raised an affirmative defense, a court may substitute the following for the final paragraph of the instruction:

> If you find that Plaintiff did not prove each of these things, then you must find for Defendant.

If, on the other hand, you find that Plaintiff has proved each of these things, you must then consider Defendant's claim that [*describe affirmative defense(s)*]. If you find that Defendant has proved this by a preponderance of the evidence, then you must find for Defendant.

(Based on 7th Circuit Pattern Instruction No. 4.02, n.1.)

## 12.7.1 DEFENSES — FAIR USE

Defendant contends that [even if he copied protected expression in Plaintiff's work,] his copying is allowed under what the law calls "fair use." To succeed on this defense, Defendant must prove that he made fair use of Plaintiff's work for the purpose[s] of [criticism; parody; comment; news reporting; teaching; scholarship; research; *insert additional types of fair uses at issue*].

In deciding this, you should consider the following:

- the purpose and character of Defendant's use, including whether Defendant's use [is of a commercial nature] [is for non-profit educational purposes] [transforms Plaintiff's work into something of a different character];

- the degree of creativity involved in Plaintiff's work;

- whether Plaintiff's work was published or unpublished;

- the amount of Plaintiff's work that Defendant copied, and the significance of the portion copied in relation to Plaintiff's work as a whole; [and]

- how Defendant's use affected the [value of; potential market for] Plaintiff's work; [and]

[- *insert any other factors that bear on the issue of fair use*.]

It is up to you to decide how much weight to give each factor.

### Committee Comments

1.      **Requirements for fair use.** The listed factors are derived from 17 U.S.C. § 107. The Supreme Court has stated that determination of whether a particular use qualifies as fair use is not subject to a bright-line test but rather requires "a sensitive balancing of interests," *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 583-84 (1994) (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 455 n.40 (1984)), and must be "tailored to the individual case." *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 551-52 (1985). *See also, Chicago Bd.*

*of Educ. v. Substance, Inc.*, 354 F. 3d 624, 629 (7th Cir. 2003) ("the four factors that Congress listed when it wrote a fair use defense (a judicial creation) into the Copyright Act in 1976 are not exhaustive and do not constitute an algorithm that enables decisions to be ground out mechanically."). The statutory factors are illustrative, not comprehensive. *See Campbell,* 510 U.S. at 577-78; *Ty, Inc. v. Publ'ns Int'l, Inc.,* 292 F.3d 512, 522 (7th Cir. 2002).

**2.    Particular factors.** *See Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 578-79, 584 (1994) (significance of educational / not-for-profit use; transformative nature of use weighs heavily in favor of finding of fair use; adverse effect on value of plaintiff's work is significant factor in fair use analysis); *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 553-43 (1985) (fact that plaintiff's work is highly creative weighs against finding of fair use; fact that plaintiff's work is unpublished weighs against finding of fair use); *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003) ("the fair use copier must copy no more than is reasonably necessary . . . to enable him to pursue an aim that the law recognizes as proper"). Because the four factors listed in 17 U.S.C. § 107 are not exhaustive (*Chicago Bd. of Educ.*, 354 F.3d at 629), additional relevant factors may be inserted in the place provided in the instruction. For example, in cases involving unpublished works, the jury may consider whether the work is unpublished for purposes of determining fair use. *See, e.g., Harper & Row Publishers*, 471 U.S. at 554 (fact that plaintiff's work is unpublished weighs against finding of fair use).

The factors listed in this instruction are based on the four factors contained in 17 U.S.C. § 107. The Committee decided to express the second statutory fair use factor ("the nature of the copyrighted work") in terms of "the degree of creativity involved in Plaintiff's work" because most cases involve this type of inquiry under the second fair use factor. *See Campbell*, 510 U.S. at 586 and examples cited therein. The Committee did not list "whether the work was unpublished" as an element to be considered in every case because courts do not traditionally consider the published or unpublished nature of a work as a fair use factor in cases where the work is published. Because this factor generally comes into play when a work is unpublished, the instruction may be modified accordingly in such cases.

The Committee decided that the instruction should not describe how each of the listed factors "cuts" on the ground that the matter is better left to attorney argument. The Committee also decided against a proposal to place an alternative instruction in this Comment that included a description of how each factor cuts. If a court chooses to give such an instruction, the Committee believes it is important for the court to specifically address each factor individually.

**3.    Allocation of burden of proof.** *See Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003).

## 12.7.2  DEFENSES — ABANDONMENT

Defendant contends that Plaintiff abandoned its copyright in [*identify work*]. To succeed on this defense, Defendant must prove that Plaintiff [made a statement; performed an action] that demonstrated its intention to give up its copyright interest in the work.

### Committee Comment

*See Seshadri v. Kasraian*, 130 F.3d 798, 805 (7th Cir. 1997).

### 12.7.3 DEFENSES — UNCLEAN HANDS / ESTOPPEL

The Committee has not included an instruction defining the defenses of unclean hands and estoppel because they are issues for the court, not the jury. *Cf. Hot Wax, Inc. v. S/S Car Care,* No. 97 C 6879, 1999 WL 966094, at *5 (N.D. Ill. Oct. 14, 1999) (laches is ordinarily an issue for the court).

## 12.8.1 DAMAGES — GENERAL

If you find that Plaintiff has proved that Defendant has infringed Plaintiff's copyright, then you must determine the amount of damages, if any, Plaintiff is entitled to recover. If you find that Plaintiff has failed to prove the claim, then you will not consider the question of damages.

Plaintiff must prove damages by a preponderance of evidence.

*Alternative 1: if plaintiff seeks to recover only actual damages plus profits:*

Plaintiff may recover for any actual losses he suffered because of the infringement, plus any profits that Defendant made from the infringement. I will define these terms in the following instructions.

*Alternative 2: if plaintiff seeks to recover only statutory damages:*

[I will define in the next instruction how you are to determine the amount of damages, if any, to award to Plaintiff.]

*Alternative 3: if plaintiff seeks to have the jury make findings on both actual damages/profits and statutory damages:*

Plaintiff may recover for any actual losses he suffered because of the infringement, plus any profits that Defendant made from the infringement. Alternatively, Plaintiff may recover an amount called "statutory damages." I will define these terms in the following instructions.

### Committee Comment

A prevailing plaintiff is entitled to recover his actual damages plus the defendant's profits, or "statutory" damages. *See* 17 U.S.C. § 504(a & b) (actual damages and profits); *id.* § 504(c) (statutory damages). Though plaintiffs typically elect between these two forms of recovery before the jury is instructed, the statute permits a plaintiff to elect statutory damages "at any time before final judgment is rendered." *Id.* § 504(c). To cover all the possible permutations, the instruction provides three alternatives.

## 12.8.2 DAMAGES — ACTUAL DAMAGES

Examples of actual losses from copyright infringement include:

-        A decrease in the market value of the copyrighted work caused by the infringement.

-        Profits that Plaintiff proves he would have made without the infringement. Profits are the revenue Plaintiff would have made on sales he would have made without the infringement, less any additional expenses he would have incurred in making the sales.

-        What a willing buyer reasonably would have paid Plaintiff to obtain a license to [copy; display; use; sell; etc.] Plaintiff's copyrighted work.

-        [*Other examples*]

### Committee Comment

*See, e.g., In Design v. K-Mart Apparel Corp.,* 13 F.3d 559, 563 (2d Cir. 1994) (decrease in market value); *Davis v. The Gap, Inc.,* 246 F.3d 152, 161, 167 (2d Cir. 2001) (cost of hypothetical license; lost profits); *Sid & Marty Krofft Television Products, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1174 (9th Cir. 1977) (cost of hypothetical license); *McRoberts Software, Inc. v. Media 100, Inc.,* 329 F.3d 557, 569 (7th Cir. 2003) (same). To recover lost profits, the copyright owner must prove the quantity of sales he would have made absent the infringement, as well as the profits he would have earned on those sales, which consists of the revenue the copyright owner would have made, less any the additional expenses he would have incurred in making the sales. *Taylor v. Meirick,* 712 F.2d 1112, 1120-1121 (7th Cir. 1983).

# 12.8.3 DAMAGES — DEFENDANT'S PROFITS

[In addition to recovering for his actual losses,] Plaintiff is entitled to recover the profits that Defendant made because of the infringement. [Defendant's profits are recoverable, however, only to the extent that you have not taken them into account in determining Plaintiff's actual losses.]

Defendant's profits are revenues that Defendant made because of the infringement, minus Defendant's expenses in [producing; distributing; marketing; selling] the [*insert description of infringing material, e.g. product, advertisement, book, song, etc.*]. Plaintiff need only prove Defendant's revenues. Defendant must prove his own expenses [and any portion of his profits that resulted from factors other than infringement of Plaintiff's copyright].

## Committee Comments

1. **General authority.** *See* 17 U.S.C. §504(b). The rationale for allowing the copyright owner to recover the infringer's profits in addition to the owner's actual losses is that it prevents the infringer from keeping "windfall" profits that he made from his decision to infringe the copyright rather than to negotiate with the copyright owner for a license. *See Taylor v. Meirick,* 712 F.2d 1112, 1120 (7th Cir. 1983); *Bucklew v. Hawkins, Ash, Baptie & Co.,* 329 F.3d 923, 931 (7th Cir. 2003).

2. **Standard.** *See, e.g., Hamil America Inc. v. GFI,* 193 F.3d 92, 108 n. 7 (2d Cir. 1999); *Robert R. Jones Assocs., Inc. v. Nino Homes,* 858 F.2d 274, 281 (6th Cir. 1988).

3. **Actual Losses and Profits.** The bracketed language in the instruction's first paragraph should be used only in cases where the plaintiff seeks to recover both actual losses and the defendant's profits.

## 12.8.4 DAMAGES — STATUTORY DAMAGES

You may award as [statutory] damages an amount that you find to be fair under the circumstances. The amount must be between $750 and $30,000 for each copyrighted work that you found to be infringed.

In determining the appropriate amount to award, you may consider the following factors:

[- the expenses that Defendant saved and the profits that he earned because of the infringement;

- the revenues that Plaintiff lost because of the infringement;

- the difficulty of proving Plaintiff's actual damages;

- the circumstances of the infringement;

- whether Defendant intentionally infringed Plaintiff's copyright; and

- deterrence of future infringement.]

[If Plaintiff proves that Defendant willfully infringed Plaintiff's copyright, then you may, but are not required to, increase the statutory damage award to a sum as high as $150,000 per copyrighted work. Infringement is considered willful if Plaintiff proves that Defendant knew that his actions constituted infringement of Plaintiff's copyright [or acted with reckless disregard of Plaintiff's copyright].]

[If Defendant proves that he innocently infringed Plaintiff's copyright, then you may, but are not required to, reduce the statutory damage award to a sum as low as $200 per copyrighted work. Infringement is considered innocent if Defendant proves that he did not know, and had no reason to know, that his acts constituted infringement.]

[You may not find that Defendant was an innocent infringer if a notice of copyright appeared in the correct form and position on the published [copy; copies] of Plaintiff's work to which Defendant had access. A notice is in correct form if it includes [the symbol © (the

letter C in a circle); the word "Copyright"; the abbreviation "Copr."], [the name of the copyright owner; an abbreviation by which the copyright owner's name can be recognized; a generally known designation of the copyright's owner]; and the year of first publication of the work.] A notice is in the correct position if it appears in a manner and location that gives reasonable notice of the claim of copyright.]

## Committee Comments

1.      **Authority.** Under 17 U.S.C. § 504(c), a plaintiff may obtain statutory damages in lieu of actual damages and profits. Even though the statute suggests that statutory damages are awarded by the court, the Seventh Amendment requires that the determination be made by the jury. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353 (1998). The word "statutory" in the first paragraph is bracketed; it need not be used if the damages instructions include only statutory damages, and not actual damages and profits.

2.      **Factors to be considered.** *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233 (1952) (deterrence of future infringement); *Chi-Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1229 (7th Cir. 1991) (difficulty or impossibility of proving actual damages; circumstances of infringement; efficacy of the damages as a deterrent to future infringement); *N.A.S. Import Corp. v. Chenson Enters., Inc.,* 968 F.2d 250, 252 (2d Cir. 1992) (expenses saved and profits gained by infringer; revenue lost by copyright holder; state of mind of infringer; citing 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 14.04[B], at 14-41 (1991)).

3.      **Increase for willful infringement; decrease for innocent infringement.** *See Video Views, Inc. v. Studio 21, Ltd.,* 925 F.2d 1010, 1020 (7th Cir. 1991) (infringement is willful if infringer knew its conduct was an infringement or acted in reckless disregard of copyright owner's right); 17 U.S.C. § 504(c)(2) (if infringer proves it was unaware and had no reason to believe its acts constituted copyright infringement, award may be reduced to $200). These paragraphs are bracketed because some cases may not involve claims of either willful or innocent infringement.

4.      **Unavailability of innocent infringement defense in certain cases.** The final bracketed paragraph of the instruction describes a category of cases in which the defense of innocent infringement is unavailable. *See* 17 U.S.C. § 401.

     a.      **"Proper form."** Under section 401, for the notice to be in proper form, three requirements typically must be met – the proper symbol or word, the year of first publication, and identification of the copyright owner. The year of first publication may be omitted "where a pictorial, graphic, or sculptural work, with accompanying text matter, if any, is reproduced in or on greeting cards, postcards, stationery, jewelry, dolls, toys, or any

useful articles," *see id.* § 401(b)(2), and for that reason this particular element is bracketed. The symbol/word and identification requirements each may be met by one of several alternatives. Because only one such alternative is likely to apply in a particular case, the alternative methods of satisfying the exception are bracketed.

**b.    Compilations / derivative works.** Under section 401(b)(2), in a case involving a compilation or derivative work incorporating previously published material, the year date of first publication of the compilation or derivative work is sufficient. In such a case, the instruction should be modified accordingly.

**c.    Unavailability of exception.** Section 401's limitation on the availability of the defense of innocent infringement does not apply in a case in which:

> an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use . . . , if the infringer was: (I) an employee or agent of a nonprofit educational institution, library, or archives acting within the scope of his or her employment who, or such institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or (ii) a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in subsection (g) of section 118) infringed by performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work.

*See* 17 U.S.C. §§ 401(d) & 504(c)(2). In a case in which this exception-to-the-exception applies, the instruction should be modified accordingly.

**5.    Availability of statutory damages for pre-registration infringement.** Under 17 U.S.C. § 412, statutory damages are unavailable for copyright infringement that commenced prior to registration of an unpublished work or for infringement that commenced before registration of a published work unless the work was registered within three months of its publication. In a case in which the issue of when infringement commenced presents a jury question, the instruction should be modified accordingly.

**13. TRADEMARK**

### 13.1.1 Trademark/Trade Dress Infringement -- Nature of Claim

Plaintiff claims that Defendant has infringed Plaintiff's [trademark; trade dress].

[A trademark is a word, symbol, or combination of words or symbols used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product.]

[A trade dress is a type of trademark used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product. The term "trade dress" refers to the total image of a product, product packaging, product label, product design, or a combination of these things. It includes features such as size, shape, color or color combinations, texture, graphics, or particular sales techniques.]

The purpose of trademark law is to prevent confusion among consumers about the source of products and to permit [trademark; trade dress] owners to show ownership of their products and control their product's reputation.

[Plaintiff claims that Defendant infringed Plaintiff's [trademark [*describe Plaintiff's symbol or term*]] for [*describe Plaintiff's product*] by [*describe nature of allegedly infringing activity*]. Defendant denies [*describe Defendant's theory of defense, i.e., denies that Plaintiff has a valid trademark or that Defendant's use of its trademark causes a likelihood of confusion*] [and says that [*describe Defendant's other defense(s), if any*]].]

OR

[Plaintiff claims that Defendant infringed Plaintiff's trade dress by [*describe nature of allegedly infringing activity and Plaintiff's product design, packaging, label*]. Defendant denies [*describe Defendant's theory of defense, i.e., denies that Plaintiff has a valid trade dress or that Defendant's use of its trade dress causes a likelihood of confusion*] [and says that [*describe Defendant's other defense(s), if any*]].]

**Comments**

1.	**Usage.** These instructions are drafted for a traditional trademark or trade dress infringement case. If the case involves a service mark, collective mark, certification mark, or trade name, the instructions may be modified to reflect the more specific terms at issue, such as "service mark" or "trade name" instead of "trademark." The term "services" may be substituted for the term "product" if the case involves a service mark.

2.	**Definition of Trademark.** *See* 15 U.S.C. § 1127; *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001).

*3.*	**Definition of Trade Dress.** *See Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 935 (7th Cir. 1989); *Computer Care v. Service Systems Enterprises, Inc.*, 982 F.2d 1063, 1067-67 (7th Cir. 1992). The description of the trade dress in the last sentence should be tailored to the specific case.

4.	**Purpose of Trademark Law.** *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992); *G. Heileman Brewing Co., Inc. v. Miller Brewing Company*, 873 F.2d 985, 997 (7th Cir. 1989).

(2008 rev.)

## 13.1.2 Trademark/Trade Dress infringement – Elements

Plaintiff claims that Defendant infringed Plaintiff's [trademark; trade dress]. To succeed on this claim, Plaintiff must prove the following things by a preponderance of the evidence:

1.      [Plaintiff owns [*Plaintiff's symbol, term, or product design; packaging; label*] as a [trademark; trade dress];

2.      [*Plaintiff's symbol, term, or product design; packaging; label*] is a valid [trademark; trade dress];

3.      [Defendant used [*symbol, term, product design, packaging or label used by Defendant*] in interstate commerce.

[The [*symbol, term, product design, packaging or label used by Defendant*] is used in interstate commerce if [Defendant's [product; services; commercial activities] are [transferred; advertised; sold] across state lines.]

[The [*symbol, term, product design, packaging or label used by Defendant*] is used in interstate commerce if Plaintiff's [product; services; commercial activities] are [transferred; advertised; sold] across state lines and Defendant's activities have a substantial effect on Plaintiff's business.]

4.      Defendant used [*symbol, term, product design, packaging or label used by Defendant*] in a manner that is likely to cause [confusion; mistake; deception] as to the [source; origin; sponsorship; approval] of Defendant's product.

[5.      [*Plaintiff's claimed trade dress*] is not functional.]

I will explain what I mean by these terms.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must find for Plaintiff. However, if Plaintiff did not prove each of these things by a preponderance of the evidence, then you must find for Defendant.

# Comments

**1.    Authority.** *See* 15 U.S.C. § 1125(a); *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001); *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1151 (7th Cir. 1994).

**2.    Forward Confusion/Reverse Confusion.** This instruction is drafted for a traditional trademark/trade dress infringement claim based on forward confusion. If the case involves a claim for reverse confusion, the fourth element should say:

> Defendant used [*symbol, term, product design, packaging or label used by Defendant*] in a manner that is likely to cause [confusion; mistake; deception] as to the [source; origin; sponsorship; approval] of Plaintiff's product.

*Sands, Taylor & Wood Co. v. The Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992) ("Usually, the confusion alleged is forward confusion, which occurs 'when customers mistakenly think that the junior user's goods or services are from the same source as or are connected with the senior user's goods or services.' . . . Reverse confusion occurs when a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user. In such a case . . . the senior user is injured because the public comes to assume that the senior user's products are really the junior user's or that the former has become somehow connected to the latter.") (citations omitted)).

**3.    Elements Not in Dispute.** If a particular element or elements is undisputed or resolved as a matter of law, it may be eliminated.

**4.    Incontestable Registered Trademarks and Trade Dress.** If the case involves a registered trademark or trade dress that has become "incontestable" under 15 U.S.C. § 1115(b) because it has been in use for five consecutive years after registration and other statutory requirements have been met, *see* 15 U.S.C. §§ 1058 & 1065, then validity may be challenged only on the grounds enumerated in § 1115(b). *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 196 (1985); *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 377 (7th Cir. 1976). In such a case, the court may omit the presumed element from this instruction (*see* comment 3 above), or the court may give, for example, an instruction that the plaintiff owns a valid trademark. In that event, element 2 of this

instruction would be modified as follows:

> 2. [*Plaintiff's symbol, term, or product design; packaging; label*]
> is a valid [trademark; trade dress]. I instruct you that [*Plaintiff's symbol, term,*
> *or product design; packaging; label*] is a valid [trademark; trade dress].

A similar modification may be made to element 1, regarding ownership.

If the defendant asserts one of the defenses enumerated in § 1115(b), then the "affirmative defense" alternative discussed in comment 8 to this instruction should be used, along with the instruction for the particular defense at issue.

**5. Contestable Registered Trademarks and Trade Dress.** If the case involves a registered trademark or trade dress that is still "contestable" under 15 U.S.C. § 1065, additional considerations apply. Under Seventh Circuit precedent, the presumption of validity that accompanies a contestable registered trademark merely serves to shift to the defendant the burden of producing evidence of invalidity; the presumption evaporates once the defendant presents evidence sufficient to put validity at issue, a decision to be made by the court. *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 937 n.2, 938 (7th Cir. 1986); *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F.3d 169, 172 (7th Cir. 1996). *See Igloo Prods. Corp. v. Brantex, Inc.*, 202 F.3d 814, 819 (5th Cir. 2000).

The instruction, as drafted, assumes that the court has ruled that the defendant has met its burden of production, thus requiring the plaintiff to prove validity. If, on the other hand, the defendant does not meet its burden of production, the presumptions of validity and ownership under Section 1115(a) stand unrebutted. In that case, the court may omit the presumed element from this instruction (*see* comment 3 above), or the court may give, for example, an instruction that Plaintiff owns a valid trademark. In that event, element 2 of this instruction would be modified as follows:

> 2. [*Plaintiff's symbol, term, or product design; packaging; label*] is a
> valid [trademark; trade dress]. I instruct you that [*Plaintiff's symbol, term, or product*
> *design; packaging; label*] is a valid [trademark; trade dress].

A similar modification may be made to element 1 if ownership can be presumed because the defendant has not met the burden of production.

**6.      Non-Functionality – Unregistered Trade Dress.** Element 5 should be used for claims involving an unregistered trade dress. *See* 15 U.S.C. § 1125(a)(3). If the case involves a registered trade dress, then functionality is an affirmative defense, and Instruction 5.6 should be used.

**7.      Interstate Commerce.** Use in interstate commerce is an element for a claim of trademark infringement under the Lanham Act.6 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:5. *See* 15 U.S.C. § 1127 (defining commerce as "all commerce which may lawfully be regulated by Congress."); *Jewel Cos. v. Jewel Merchandising Co.*, 201 U.S.P.Q. 24 (N.D. Ill. 1978) ("[U]nder the Lanham Act a plaintiff need not allege that a defendant's products are distributed in interstate commerce. It is sufficient that the plaintiff is engaged in interstate commerce and that defendant's actions have had a substantial effect on his business."); *Susan's, Inc. v. Thomas*, 26 U.S.P.Q.2d 1804 (D. Kan. 1993) (use in commerce element satisfied by interstate sale or physical transportation of goods, as well as advertising and solicitation of sales across state lines). The Committee has proposed two relatively common alternative formulations; the instruction may need to be adapted to the particular case being tried. *See Berghoff Restaurant Co. v. Lewis W. Berghoff, Inc.,* 357 F.Supp. 127, 130 (N.D. Ill. 1973) (plaintiff "used its mark in interstate commerce by catering to a substantial number of interstate travelers, advertising in media which reach non-Illinois residents, and serving food from extra-state sources"); *Larry Harmon Pictures Corp. v. Williams Restaurant Corp.,* 929 F.2d 662, 665 (Fed. Cir. 1991) (appellee's restaurant was involved in interstate commerce, and service mark for restaurant met commerce requirement for registration under Lanham Act §3).

Recent cases have addressed whether a trademark is used in commerce in connection with products or services when it is sold as a "keyword" by search-engine companies such as Google or other Internet marketing companies to trigger sponsored search-engine results or other Internet advertising by an advertiser that is not the trademark owner. *See Int'l Profit Associates, Inc. v. Paisola*, 461 F.Supp.2d 672, 677 & n.3 (N.D. Ill. 2006) (noting the absence of Seventh Circuit law on point; holding Google's AdWord program, which sells trademarks as keywords to trigger advertising in response to search queries, meets use requirement; TRO entered), *citing Buying for the Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 323 (D.N.J. 2006) (noting conflicting decisions in other jurisdictions; finding that trademark owner "satisfied the 'use' requirement of the Lanham Act in that defendants' use was 'in commerce' and was 'in connection with any goods or services'").

**8. Affirmative Defenses.** If the defendant has raised an affirmative defense, a court may substitute the following for the final paragraph of the instruction:

If you find that Plaintiff did not prove each of these things by a preponderance of the evidence, then you must find for Defendant.

If, on the other hand, you find that Plaintiff has proved each of these things by a preponderance of the evidence, you must then consider Defendant's claim that [*describe affirmative defense(s)*]. If you find that Defendant has proved this by a preponderance of the evidence, then you must find for Defendant.

(Based on 7th Circuit Pattern Instruction No. 4.02, n.1.)

### 13.1.2.1    Ownership and Priority – Unregistered and Contestable Marks

One of the things Plaintiff must prove is that Plaintiff owns [*Plaintiff's symbol or term or claimed trade dress*] as a [trademark; trade dress].

Plaintiff owns [*Plaintiff's symbol or term or claimed trade dress*] as a [trademark; trade dress] if Plaintiff used the [symbol, term or trade dress] in a manner that allowed consumers to identify the [symbol, term or trade dress] with Plaintiff or its product before Defendant began to use [*Defendant's symbol, term or trade dress*] on its [*Defendant's product or services*].

[Among the factors you may consider are the volume of sales of Plaintiff's product, the nature of Plaintiff's sales and purchasers, and the amount of Plaintiff's advertising, promotion, and publicity relating to the product.]

### Comments

**1.    Usage.** This instruction should be used for cases involving claims for infringement of an unregistered trademark or trade dress and claims for infringement of a contestable registered trademark or trade dress where ownership is an issue for trial. See comment 5 to Instruction 1.2. If the issue of priority in the particular case depends not on first usage, but rather on, for example, an application to register based on intent-to-use, the concept of natural expansion, or preparation to do business, then this instruction will not apply, and an alternative instruction must be drafted.

**2.    Authority.** *See Zazu Designs v. L'Oreal S.A.*, 979 F.2d 499, 503 (7th Cir. 1992) ("Only active use allows consumers to associate a mark with particular goods and notifies other firms that the mark is so associated."); *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 433-34 (7th Cir. 1999) (party seeking to establish appropriation of a trademark must show first, adoption, and second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark.).

**3.    Factors to Consider.** *See Zazu Designs v. L'Oreal S.A.*, 979 F.2d 499, 505 (7th Cir. 1992); *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999). The Committee has included a list of factors as an optional addition to this

instruction; the judge may include the list as part of the instruction, or may decide to leave it to the parties to argue the factors.

**4.      Use by Licensee or Related Company.** If the plaintiff is claiming ownership or priority based on use by a predecessor, licensee, or related company, and the plaintiff has registered or applied to register the trademark or trade dress, an alternative instruction must be drafted. 15 U.S.C. § 1055 (legitimate use of mark by related company inures to benefit of registrant); 15 U.S.C. § 1127 (definition of "related company"). *See, e.g., Ty, Inc. v. Publications International, Ltd.*, 2005 U.S. Dist. Lexis 23420, 2005 WL 464688 (N.D. Ill. Feb. 25, 2005) (licensor's acquisition of rights by use of mark by controlled licensee).

### 13.1.2.2    Validity - Trademark /Trade Dress

A valid [trademark; trade dress] is a [symbol; term; product design, packaging, label] that is "distinctive," which means that the [symbol; term; product design, packaging, label] is capable of distinguishing Plaintiff's product from the products of others. [A trademark is valid if it is inherently distinctive or if it has acquired distinctiveness.] [A trade dress is valid if it is inherently distinctive or if it has acquired distinctiveness, and it is nonfunctional.]  I will explain these terms to you.

### Comments

**1.    Usage.** This instruction should be used when an unregistered trademark or trade dress is asserted in the case or when a party has presented sufficient evidence to challenge the validity of a contestable registered trademark or trade dress. See comment 5 to Instruction 1.2. If the case involves a trade dress that is based on the product's design, the penultimate sentence should read, "A trade dress is valid if it has acquired distinctiveness and it is nonfunctional." *See Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205 (2000) (product design trade dress can never be inherently distinctive and always requires proof of secondary meaning.)

**2.    Authority.** *See Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763, 768, 769 (1992); *Computer Care v. Service Systems Enterprises, Inc.*, 982 F.2d 1063, 1069 (7th Cir. 1992). *See also* 15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this Act for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.").

**3.    "Secondary Meaning."** The Committee has used the term "acquired distinctiveness" instead of "secondary meaning" to avoid the need to define secondary meaning. *See Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 211 (2000) ("'Secondary meaning' has since come to refer to the acquired, source-identifying meaning of a non-word mark . . . . It is often a misnomer in that context, since non-word marks ordinarily have no 'primary' meaning. Clarity might well be served by using the term 'acquired meaning' in both the word-mark and the non-word mark contexts . . . ."). *see also Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769 (1992) ("An identifying mark is distinctive and capable of being protected if it . . . *has acquired distinctiveness* through

secondary meaning.") (emphasis added); *Bliss Salon Day Spa v. Bliss World LLC*, 268 F. 3d 494, 497 (7th Cir. 2001).

### 13.1.2.2.1 Validity - Trademark – Inherent Distinctiveness -- Fanciful, Arbitrary, and Suggestive Marks

An inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product. A trademark is inherently distinctive if it is a ["fanciful"; "arbitrary"; [or] "suggestive"] [symbol; term].

[• A "fanciful" [symbol; term] is a newly created word or parts of common words that are used in a fictitious, unfamiliar, or fanciful way. For example, "Exxon" for gasoline is a fanciful mark.]

[• An "arbitrary" [symbol; term] is a common [symbol; term] used in an unfamiliar way. For example, "Apple" for computers is an arbitrary mark.]

[• A "suggestive" [symbol; term] implies some characteristic or quality of the product. If the consumer must use imagination, reflection, or additional reasoning to understand the meaning of the mark as used with the product, then the mark is suggestive. For example, "Coppertone" for suntan lotion is a suggestive mark because it is suggestive of suntanned skin.]

### Comments

**1. Usage.** This instruction should be used when an unregistered trademark is asserted in the case, or when a party has presented sufficient evidence to challenge the validity of a contestable registered trademark. See comment 5 to Instruction 1.2. If the case involves an unregistered trade dress or a contestable registered trade dress that has been challenged, the instruction entitled "Validity – Trade Dress – Inherent Distinctiveness" should be used instead.

**2. Inherent Distinctiveness.** *See Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 212 (2000) ("a product's color is unlike a 'fanciful,' 'arbitrary,' or 'suggestive' mark, since it does not 'almost *automatically* tell a customer that [it] refers to a brand.'") (emphasis in original; *quoting Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159. 163 (1995)); *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496 (7th Cir. 2001) ("Suggestive ('Tide' laundry detergent), arbitrary ('Apple' computers), and fanciful ('Exxon' gasoline) marks collectively are distinctive in the sense that secondary meaning

is likely to develop, as a result of which any duplicate use of the name is likely to breed confusion about the product's source. Generic marks, on the other hand, designate the products themselves rather than any particular maker, and descriptive marks might (but usually won't) acquire distinctiveness."); *Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 216-217 (7th Cir. 1978).

**3. Fanciful Term.** Older Seventh Circuit cases use the phrase "coined term," *see, e.g., Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 611 (7th Cir. 1965); *Polaroid Corporation v. Polaroid, Inc.*, 319 F. 2d 830, 837 (7th Cir. 1963), but the term "fanciful" is more consistent with the court's current usage. *See Wal-Mart Stores v. Samara Brothers, Inc.*, 529 U.S. 205 (2000); *Qualitex Company v. Jacobson Products Co.*, 514 U.S. 159 (1995); *Sullivan v. CBS Corp.*, 385 F. 3d 772 (7th Cir. 2004); *Ty Inc. v. Perryman*, 306 F. 3d 509 (7th Cir. 2002); *Bliss Salon Day Spa v. Bliss World LLC*, 268 F. 3d 494 (7th Cir. 2001). The example is taken from *Bliss Salon Day Spa,* 268 F.3d at 496.

**4. Arbitrary Term.** The example is taken from *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496 (7th Cir. 2001).

**5. Suggestive Term.** *See McCarthy on Trademarks and Unfair Competition* §§ 11:67, 11:71. The example is taken from *G. Heileman Brewing Co., Inc. v. Miller Brewing Co.*, 873 F.2d 985, 992 (7th Cir. 1989).

### 13.1.2.2.2    Validity - Trade Dress - Inherent Distinctiveness

An inherently distinctive trade dress is one that consumers would almost automatically recognize as identifying a particular brand or source of the product. [For example, the packaging for m&m's-brand, chocolate-covered peanut candies, with its yellow background, brown lettering, and illustration of the multicolored candies, is an inherently distinctive trade dress.]

To determine whether [*Plaintiff's trade dress*] is inherently distinctive, you should consider it as a whole. Some of the factors you may consider are:

[•    Whether the [product label; product packaging] is a common basic shape or design (which suggests that the trade dress is not inherently distinctive), or instead is an uncommon shape or design (which suggests that the trade dress is inherently distinctive)];

[•    Whether the [product label; product packaging] is [unique; unusual] in a particular field (which suggests that the trade dress is inherently distinctive), or instead is common in that field (which suggests that the trade dress is not inherently distinctive)];

[•    Whether the [product label; product packaging] is a unique feature for that type of product (which suggests that the trade dress is inherently distinctive), or instead is merely a refinement of a commonly decorative feature for that type of product (which suggests that the trade dress is not inherently distinctive)].

If you find that Plaintiff proved that [*Plaintiff's claimed trade dress*] is inherently distinctive, then you should consider whether Plaintiff's claimed trade dress is functional. I will tell you what I mean by functional.

If, on the other hand, you find that Plaintiff did not prove that [*Plaintiff's claimed trade dress*] is inherently distinctive, then you must decide (1) whether the claimed trade dress is "descriptive" and has "acquired distinctiveness," and if so, (2) whether Plaintiff's claimed trade dress is "functional." I will tell you what I mean by "descriptive," "acquired distinctiveness," and "functional."

# Comments

**1.    Usage.** This instruction should be used when an unregistered trade dress is asserted in the case or when a party has presented sufficient evidence to challenge the validity of a contestable registered trade dress on the basis of distinctiveness, and the claimed trade dress is for a product label or product packaging. If the case involves a trade dress claim based on the design of the product itself, this instruction should not be used; instead, instructions 1.2.2.3 and 1.2.2.4 should be used. *See Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205 (2000) (product design trade dress can never be inherently distinctive and always requires proof of secondary meaning).

**2.    Definition.** *See Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 212 (2000); *Two Pesos, Inc. v. Taco Cabana*, Inc., 505 U.S. 763, 768 (1992). The example was taken from *Masterfoods USA v. Arcor USA, Inc.*, 230 F. Supp. 2d 302, 307 (W.D.N.Y. 2002).

**3.    Trade Dress Must Be Considered as a Whole.** *See Computer Care v. Service Systems Enterprises, Inc.*, 982 F.2d 1063, 1069 (7th Cir. 1992) ("Where the plaintiff's overall trade dress is distinctive, the fact that it uses descriptive (or generic) elements does not render it nonprotectable.").

**4.    Factors to Consider.** *See Turtle Wax, Inc. v. First Brands Corp.*, 781 F. Supp. 1314, 1318 (N.D. Ill. 1991) (Rovner, J.) (citing *Seabrook Foods, Inc. v. Bar-Well Foods, Ltd.*, 568 F.2d 1342, 1344 (C.C.P.A. 1977)); *Computer Care v. Service Systems Enterprises, Inc.*, 982 F.2d 1063, 1069 (7th Cir. 1992) (fact that plaintiff's trade dress was "unique in the car services industry" was evidence that the trade dress was inherently distinctive); *McCarthy on Trademarks and Unfair Competition* § 8:13 ("In the author's view, the *Seabrook* test is the preferable method of determining what is and what is not inherently distinctive packaging trade dress.").

### 13.1.2.2.3    Validity – Descriptive Trademark/Trade Dress – Acquired Distinctiveness

Another type of valid [trademark; trade dress] is a "descriptive" [symbol; term; product package, label, design] that has "acquired distinctiveness."

A "descriptive" [symbol; term; product package, label, design] directly identifies or describes some characteristic or quality of the product in a straightforward way that requires no imagination or reasoning to understand the meaning of the [trademark; trade dress]. [For example, "All Bran" for cereal is a descriptive trademark because it describes a characteristic of the cereal.] [A descriptive trademark can [also] identify [the geographic location where a product is made (for example, "Omaha" for steaks)] [or] [the name of the person who makes or sells the product (for example, "Mrs. Fields" for cookies).] [For example, a yellow container in the shape of a lemon is a descriptive trade dress when used as a container for lemon juice.]

A descriptive [trademark; trade dress] can be valid only if it has "acquired distinctiveness."

### Comments

1.    **Usage.** This instruction should be used when an unregistered trademark or trade dress is asserted in the case or when a party has presented sufficient evidence to challenge the validity of a contestable registered trademark or trade dress. See comment 5 to Instruction 1.2. Only an unregistered or contestable registered mark can be challenged as descriptive. *See Park 'n Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 196 (1985). In addition, as noted in instruction 1.2.2.2, comment 1, a product design trade dress always requires proof of acquired distinctiveness. *See Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205 (2000) (product design trade dress can never be inherently distinctive and always requires proof of secondary meaning).

2.    **Descriptive Mark.** *See Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 216-217 (7th Cir. 1978) ("A merely descriptive term specifically describes a characteristic or ingredient of an article. It can become a valid trademark by acquiring a secondary meaning, *i.e.,* by becoming 'distinctive, as applied to the applicant's goods.'") The "All Bran" example is taken from *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 989 (7th Cir. 2004).

**3.     Geographic and Personal Name Marks.** *See* 15 U.S.C. § 1052(e) (no trademark shall be refused registration on the principal register on account of its nature unless it "consists of a mark which . . . (2) when used on or in connection with the goods of the applicant is primarily geographically descriptive of them . . . [or] (4) is primarily merely a surname . . .") and 15 U.S.C. § 1052(f) ("Except as expressly excluded in [certain unrelated subsections] . . . of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce.").

If the case involves a personal name, the instruction may need to be modified in accord with *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986 (7th Cir. 2004), depending upon the name and product at issue. *Id.* at 991 ("Treating the personal-name rule as a prohibition against ever using a personal name as a trademark (in the absence of secondary meaning) would lead to absurd results . . . .").

### 13.1.2.2.4    Validity – Trademark/Trade Dress – Acquired Distinctiveness

To show that [*Plaintiff's symbol, term, or claimed trade dress*] has "acquired distinctiveness," Plaintiff must prove:

1.    A substantial portion of the consuming public identifies [*Plaintiff's symbol, term, or claimed trade dress*] with a particular source, whether or not consumers know who or what that source is. The consuming public consists of people who may buy or use, or consider buying or using, the product or similar products; and

2.    [*Plaintiff's symbol, term, or claimed trade dress*] acquired distinctiveness before Defendant first began to use [*Defendant's symbol, term, or claimed trade dress*].

To decide whether [*Plaintiff's symbol, term, or claimed trade dress*] has "acquired distinctiveness," you may consider the following:

[•    the amount and manner of advertising, promotion, and other publicity of Plaintiff's product using [*Plaintiff's symbol, term, or claimed trade dress*]];

[•    the sales volume of Plaintiff's product using [*Plaintiff's symbol, term, or claimed trade dress*]];

[•    the length and manner of use of [*Plaintiff's symbol, term, or claimed trade dress*]];

[•    consumer testimony];

[•    consumer surveys].

### Comments

**1.    Usage.** This instruction should be used if the case involves an unregistered trademark or trade dress or if the defendant has presented sufficient evidence to challenge a contestable registered trademark or trade dress on the basis of descriptiveness or secondary meaning. In an appropriate case, additional factors may be included.

**2.     Authority.** *See Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 211 (2000) (secondary meaning occurs when, "in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself."); *G. Heileman Brewing Co., Inc. v. Miller Brewing Company*, 873 F.2d 985, 999 n.12 (7th Cir. 1989) (listing factors); *Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 220 (7th Cir. 1978) (same); *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 728 (7th Cir. 1998) (same).

**3.     Substantial Portion of the Consuming Public.** *See Simon Prop. Group, L.P. v. mySimon, Inc.*, 2001 U.S. Dist. LEXIS 852, 2001 WL 66408 (S.D. Ind. Jan. 24, 2001) ("The court instructed the jury that it should find in favor of SPG on the 'secondary meaning' element if, as of October 1998, 'a substantial number of average consumers in the relevant market actually associated the word 'Simon' with a single source for mall development, mall management, and/or retail shopping services."), *appeal dismissed*, 282 F.3d 986 (7th Cir. 2002); *Spraying Systems Co. v. Delavan, Inc.*, 762 F. Supp. 772, 779 (N.D. Ill. 1991) ("in order to prove secondary meaning, a 'substantial' portion of buyers must associate the product with one source."); *Roulo v. Russ Berrie & Co.*, 1986 U.S. Dist. LEXIS 26859, 1986 WL 4718 (N.D. Ill. April 14, 1986) ("Secondary meaning is established when a plaintiff, by use of its trade name, symbol, or mark, achieves in that symbol, mark, or name, a special significance to the public such that a substantial number of present or prospective customers understand that term as referring to the person who holds the mark."), *aff'd,* 886 F.2d 931 (7th Cir. 1989). There is no standard definition for what "substantial" means in the context of evaluating secondary meaning, so this term is not specifically defined. "It is not necessary that each and every member of the buyer class associate the mark with a single source. Nor is it necessary that a majority of that group do so. * * * [W]hile it is clear that there is no necessity that a *majority* of concerned customers associate the mark with a single source, how much less than a majority which will suffice is not clearly defined in the cases." *McCarthy on Trademarks and Unfair Competition* § 15:45 (2006). *See also Zippo Mfg. Co. v. Rogers Imports, Inc.*, 216 F.Supp. 670 (S.D.N.Y. 1963) (25 percent was insufficient to prove secondary meaning); *Roselux Chemical Co. v. Parsons Ammonia Co.*, 299 F.2d 855 (C.C.P.A. 1962) (10 percent insufficient proof of secondary meaning); *McNeil-PPC v. Granutec, Inc.*, 919 F.Supp. 198 (E.D.N.C. 1995) (41 percent association with a single brand was sufficient proof of secondary meaning); *Monsieur Henri Wines, Ltd. v. Duran*, 204 U.S.P.Q. 601 (T.T.A.B. 1979) (37 percent probative to corroborate finding of strong trademark in design). "Generally, figures over 50 percent are regarded as clearly sufficient." *McCarthy* § 32:190 (and cases cited therein).

## 13.1.2.2.5      Validity – Generic Trademark/Trade Dress

To establish that its [trademark; trade dress] is valid, Plaintiff must [also] prove that the [trademark; trade dress] is not "generic."

A "generic" [symbol; term; trade dress] is a common or general [symbol for; name of; trade dress for] a product whose primary significance to the consuming public is to identify a [group; class] of similar products, regardless of who [makes; sells] them. The consuming public consists of people who may buy or use, or consider buying or using, the product or similar products. [For example, "cola" is a generic term for a type of soft drink, so it cannot function as a trademark for this type of soft drink.] [For example, bear-shaped gummy candies are common in the candy industry and are generic shapes for this type of candy.]

## Comments

1.      **Usage.** Any trademark, unregistered or registered, may be challenged as generic. *See* 15 U.S.C. § 1064(3) ("A petition to cancel a registration of a mark . . . may . . . be filed . . . at any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered . . . ."). This instruction should be used when an unregistered or registered, but contestable, trademark or trade dress is challenged as generic and the trial judge has determined that the defendant has met its burden of production referenced in comment 2 to this instruction.

2.      **Burden of Proof.** When a mark claimed as a trademark is not federally registered, "the burden is on the claimant to establish that it is not an unprotectable generic mark.*" Mil-Mar Shoe Company, Inc. v. Shonac Corporation,* 75 F. 3d 1153, 1156 (7th Cir. 1996). In cases involving a contestable registered mark , there is a presumption of non-genericness. *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 937 (7th Cir. 1986). This presumption, however, evaporates when the opposing party introduces evidence of genericness, leaving the trademark holder with the ultimate burden of persuasion on the issue of validity. *Id.* at 936-37. The trial judge, not the jury, will determine whether the opposing party has met its burden of production.

This instruction assumes that when an incontestable registered mark is challenged as generic, the defendant has the burden of persuasion, not merely the burden of production.

*See Reno Air-Racing Association, Inc. v. Jerry McCord,* 452 F.3d 1126 (9th Cir. 2006) ("[R]egistered marks are endowed with a strong presumption of validity, and a defendant has the burden of showing genericness by a preponderance of the evidence."). This is consistent with Congress' statutory scheme, which clearly distinguishes between contestable and incontestable marks in this regard. *Compare* 15 U.S.C. § 1115(a) (registered but contestable mark is "prima facie evidence of . . . validity") *with id.* § 1115(b) (incontestable mark is "conclusive evidence of 'validity,'" subject to certain exceptions). In the Seventh Circuit, however, the law on this point is not entirely clear. In *TE-TA-MA Truth Foundation-Family of URI, Inc. v. World Church of the Creator,* 297 F.3d 662 (7th Cir. 2002), the court suggested that incontestable marks give the trademark holder only a "bursting bubble" presumption of validity, equivalent to the presumption that applies to registered marks that have not achieved incontestable status. *See id.* at 665. The court's decision is less than clear, however, on whether it intended to decide the issue definitively. An incontestable mark may be challenged as generic, but in such a case the defendant bears the burden of proof.

To avoid confusion, the Committee has proposed a separate "genericness" instruction for cases involving incontestable marks. See Instruction 5.7. The instruction is identical to this one except for the allocation of the burden of proof.

**3. Definition of Generic Trademark.** *See* 15 U.S.C. § 1064(3); *Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 530-31 (7th Cir. 2003) ("[t]he legal test of genericness is 'primary significance.'"); *Thomas & Betts Co. v. Panduit Corp.*, 138 F.3d 277, 301 (7th Cir. 1998) ("The term 'relevant public,' as used in the statutory test, refers to the relevant public which purchases (or may purchase) the goods in the marketplace.") *See also* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:6 (4th ed. 2001); *Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 216-217 (7th Cir. 1978). The "cola" example is taken from *McCarthy* § 12:18, cases cited in n.26 (2005).

**4. Generic Trade Dress.** *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (trade dress case in which court recognized that generic marks are not protectable); *McCarthy* §8:6.1 ("The courts have held that a package or product shape can lack protection as being 'generic' if the trade dress is defined as a mere product theme or style of doing business or is such a hackneyed or common design that it cannot identify any particular source."); *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 638 (6th Cir. 2002) ("generic product configurations are not protectable as trade dress under § 43(a)); *Planet Hollywood, Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 888 (N.D. Ill. 1999), *citing Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769

(1992) ("Generic trade dress, like a generic trademark, is not protectable."). The bear-shaped gummy candy example is taken from *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 364 (S.D.N.Y. 2003) ("The fish-shaped animal design of the Swedish Fish is a classic example of a design that is not used to identify source, but rather to render the product itself more appealing, especially to children. * * * Notably, animal-shaped gummy candy is common in the candy industry. Indeed, representatives of [plaintiff's licensee] acknowledged that other animal-shaped gummy candy, including gummy bears, gummy worms and gummy dinosaurs, are generic candy products that have been marketed by several companies for several years.").

### 13.1.2.2.6    Validity – Trade Dress – Non-Functionality Requirement

As I stated earlier, Plaintiff must prove that [*Plaintiff's claimed trade dress*] is not "functional."

A trade dress is "functional" if it is essential to the operation of the product as a whole. To determine this, you are to consider the following:

[•    Are there other designs that could perform the function equally well? (If so, this is evidence that the design is not functional.)]

[•    Is there a patent that discloses the practical advantages of the design? (If so, this is strong evidence that the design is functional.)]

[•    Does the design provide a practical advantage? (If so, this is evidence that the design is functional.)]

[•    Has Plaintiff advertised or promoted the practical advantages of the design? (If so, this is evidence that the design is functional.)]

[•    Does the design result from a comparatively simple, cheap, or superior method of manufacturing the product? (If so, this is evidence that the design is functional.)]

To determine whether a product's trade dress is functional, you should consider everything that makes up the trade dress.

### Comments

**1.    Usage.** As stated in Instruction 1.2, Comment 6, this instruction should be used for cases involving a claim for infringement of an unregistered trade dress

**2.    Authority.** *See TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32, 34 (2001); *Eco Mfg., LLC v. Honeywell Int'l,* 357 F.3d 649 (7th Cir. 2003).

**3.    Factors to Consider.** *See TrafFix*, 532 U.S. at 29-30 ("A utility patent is

strong evidence that the features therein claimed are functional."); *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1341 (C.C.P.A. 1982) (existence of utility patent; existence of advertising promoting utilitarian advantages of design; whether design resulted from comparatively simple or cheap manufacturing method); *Disc Golf Assoc., Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998) ("To determine whether a product feature is functional, we consider several factors: (1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design; and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture."); *Valu Engineering, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1276 (Fed. Cir. 2002) (concluding that *TrafFix* did not alter the *Morton-Norwich* test); *Clicks Billiards v. Sixshooters, Inc.*, 251 F.3d 252 (9th Cir. 2002)(following *TrafFix,* but applying a *Morton-Norwich* analysis). In appropriate cases, other factors may be included.

   **4.     Evidence of Alternative Designs.** Post-*TrafFix* cases recognize that alternative designs continue to be relevant. *See AM General Corp. v. Daimlerchrysler Corp.*, 311 F.3d 796, 805 (7th Cir. 2002); *Valu Engineering, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1276 (Fed. Cir. 2002); *Talking Rain Beverage Co. Inc. v. South Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003); *Logan Graphic Products, Inc. v. Textus USA, Inc.*, 67 U.S.P.Q.2d 1470, 1473 (N.D. Ill. 2003). *See also* 1  J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*  § 7:75.

   **5.     Aesthetic Functionality.** In cases involving trade dress that is claimed to be aesthetically functional (for example, trade dress consisting of the color of the product, where there is no indication that the trade dress feature has any bearing on the use or purpose of the product or its cost or quality) then the jury may also consider "whether the exclusive use of the feature would put competitors at a significant disadvantage not related to reputation." Once it is determined that the trade dress is functional because it is essential to the use or purpose of the article or it affects the article's cost or quality, competitive necessity should not be considered. *TrafFix*, 532 U.S. at 32-33 ("Expanding upon the meaning of [the definition of functionality], we have observed that a functional feature is one 'the exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.' * * * It is proper to inquire into a 'significant non-reputation-related disadvantage' in cases of aesthetic functionality . . . . Where the design is functional under the *Inwood* formulation [*Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 850 n.10 (1982)] there is no need to proceed further to consider if there is a competitive necessity for

the feature.") (quoting *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 165 (1995)).

### 13.1.2.3    Infringement – Elements – Likelihood Of Confusion – Factors

As I have told you, one of the things that Plaintiff must prove is that Defendant used [*Defendant's symbol, term, or trade dress*] in a manner that is likely to cause [confusion; mistake; deception] as to the [source; origin; sponsorship; approval] of Defendant's product.

Plaintiff must prove a likelihood of confusion among a significant number of people who buy or use, or consider buying or using, the product or similar products.

In deciding this, you should consider the following:

•    Whether the overall impression created by Defendant's [trademark; trade dress] is similar to that created by Plaintiff's [trademark; trade dress] in [appearance; sound; meaning];

•    Whether Defendant and Plaintiff use their [trademarks; trade dress] on the same or related products;

•    Whether Plaintiff's and Defendant's products are likely to be sold in the same or similar stores or outlets, or advertised in similar media;

•    The degree of care that purchasers or potential purchasers are likely to exercise in buying or considering whether to buy the product. This may depend on the level of sophistication of potential buyers of the product [and; or] the cost of the product;

•    The degree to which purchasers or potential purchasers recognize Plaintiff's trademark as an indication of the origin of Plaintiff's product. You may consider my previous instructions concerning distinctiveness to help you assess this factor;

•    Whether Defendant's use of the [trademark; trade dress] has led to instances of actual confusion among purchasers or potential purchasers about the [source; origin; sponsorship; approval] of Defendant's product. However, actual confusion is not required for finding a likelihood of confusion;

- Whether Defendant intended to pass off his product as that of Plaintiff, or intended to confuse consumers.

The weight to be given to each of these factors is up to you to determine. No particular factor or number of factors is required to prove likelihood of confusion.

## Comments

**1.    Usage.** This instruction should be used in cases involving forward confusion. If the case involves reverse confusion, the opening paragraph should contain the following language instead:

> As I have told you, one of the things that Plaintiff must prove is that Defendant used [*Defendant's symbol, term, or trade dress*] in a manner that is likely to cause [confusion; mistake; deception] as to the [source; origin; sponsorship; approval] of Plaintiff's product. Plaintiff must prove a likelihood of confusion among a significant number of people who buy or use, or consider buying or using, the product or similar products.

In cases of reverse confusion, element 5 should contain the following language:

> 5.    The degree to which the consuming public recognizes [*Defendant's symbol or term*] as an indication of origin of Defendant's goods. You may consider my previous instructions concerning distinctiveness to help you assess this factor.

In addition, in a reverse confusion case, element 7 (defendant's intent) should be omitted. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 959 (7th Cir. 1992)*, remanded and affirmed*, 34 F.3d 1340 (7th Cir. 1994) ("the 'intent' factor of the likelihood of confusion analysis is essentially irrelevant in a reverse confusion case.").

**2.    Substantial/Significant Confusion.** *See Peaceable Planet, Inc. v. Ty Inc.*, 362 F.3d 986, 992 (7th Cir. 2004); *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F.3d 169, 173 (7th Cir. 1996); *Libman Co. v. Vining Industries, Inc.*, 69 F.3d 1360, 1364 (7th Cir. 1995).

**3.     Factors to Consider.** *See Ty Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001).

**4.     Similarity of the Marks.** *See Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997) ("Courts must . . . make their comparison [between the parties' marks] 'in light of what happens in the marketplace,' not merely by looking at the two marks side-by-side.") (*quoting James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976)).

**5.     Similarity of the Products.** *See Jones Group*, 237 F.3d at 899.

**6.     Area and Manner of Use.** *See Jones Group,* 237 F.3d at 900.

**7.     Purchaser or Potential Purchaser.** The committee has used the phrase "purchaser or potential purchaser" instead of the term "relevant public" because, in the context of determining likelihood of confusion, the "relevant public" traditionally includes these types of consumers. *See Electronic Design & Sales, Inc. v. Electronic Data Systems Corp.*, 954 F.2d 713, 716 (Fed. Cir. 1992) (likelihood of confusion inquiry "generally will turn on whether actual or potential 'purchasers' are confused."). *Cf. Thomas & Betts Co. v. Panduit Corp.*, 138 F.3d 277, 301 (7th Cir. 1998) (in connection with 15 U.S.C. § 1064(3), "the term 'relevant public,' as used in the statutory test, refers to the relevant public which purchases (or may purchase) the goods in the marketplace."). However, the courts also recognize that there can be actionable likelihood of confusion among non-purchasers as well. *See Meridian Mutual Ins. Co. v. Meridian Insurance Group, Inc.*, 128 F.3d 1111, 1118 (7th Cir. 1997); *Electronic Design & Sales*, 954 F.2d at 716.

**8.     Defendant's Intent.** *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 961 (7th Cir. 1992); *Meridian*, 128 F.3d at 1120.

### 13.2.1 Contributory Infringement

Plaintiff claims that Defendant is [also] liable for contributory [trademark; trade dress] infringement based on the actions of [*fill in name of direct infringer*]. To succeed on this claim, Plaintiff must prove two things by a preponderance of the evidence:

1.      [*Name of direct infringer*] infringed Plaintiff's [trademark; trade dress], as I [defined; will define] that term in [my earlier; the following] instructions; and

2.      [Defendant intentionally [induced; encouraged; suggested] [that] [*name of direct infringer*] [to] infringe Plaintiff's [trademark; trade dress]].

[or]

[Defendant continued to supply a product to [*name of direct infringer*] when Defendant knew or had reason to know that [*name of direct infringer*] was infringing Plaintiff's [trademark; trade dress] in its [sale; distribution] of that product.]

[or]

[[*Name of direct infringer*] infringed Plaintiff's [trademark; trade dress] on Defendant's premises, and Defendant knew or had reason to know that [*name of direct infringer*] was infringing Plaintiff's [trademark; trade dress]. [You may find that Defendant knew or had reason to know that [*name of direct infringer*] was infringing Plaintiff's [trademark; trade dress] if Defendant suspected wrongdoing and deliberately failed to investigate].]

If you find that Plaintiff has proved both of these things, then you must find for Plaintiff. If, on the other hand, you find that Plaintiff did not prove both of these things, then you must find for Defendant.

### Comments

**1.      Usage.** In any case involving allegations of contributory infringement, the instructions relating to direct infringement should be given as well, so that the jury can determine whether direct infringement has occurred as required by this instruction. The

instructions on direct infringement may need to be modified, depending on whether the person accused of direct infringement is a party to the case.

    **2.**    **Authority.** *See Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982) ("[i]f a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit."). The Supreme Court endorsed the Second Circuit's definition of inducement as "suggest[ing], even by implication," that third parties infringe the trademark. *Id.* at 851-53.

    **3.**    **Liability for Infringement on Defendant's Premises.** *See Hard Rock Café Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992) ("the Restatement of Torts tells us that CSI [flea-market landlord] is responsible for the torts of those it permits on its premises 'knowing or having reason to know that the other is acting or will act tortiously . . . . In the absence of any suggestion that a trademark violation should not be treated as a common law tort, we believe that the *Inwood Labs.* test for contributory liability applies. CSI may be liable for trademark violations by Parvez [flea-market seller and direct infringer] if it knew or had reason to know of them."). The Seventh Circuit also held that "willful blindness is equivalent to actual knowledge for purposes of the Lanham Act," and that "[t]o be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate." *Id.*

### 13.3.1 False Advertising Under Lanham Act – Elements of Claim

Plaintiff claims that Defendant engaged in false advertising. To succeed on this claim, Plaintiff must prove five things by a preponderance of the evidence:

1.     [Defendant made a false [or misleading] statement of fact in a commercial advertisement about the [nature; quality; characteristic; geographic origin] of [its own [product; service; commercial activities]] [or] [Plaintiff's [product; service; commercial activities].] [A statement is misleading if it conveys a false impression and actually misleads a consumer.] [A statement can be misleading even if it is literally true or ambiguous.]

2.     The statement actually deceived or had the tendency to deceive a substantial segment of Defendant's audience.

3.     The deception was likely to influence the purchasing decisions of consumers.

4.     [Defendant caused the false statement to enter interstate commerce.] [A false statement enters interstate commerce if [Defendant's [product; services; commercial activities] are [transferred; advertised; sold] across state lines] [or] [if Plaintiff's [product; services; commercial activities] are [transferred; advertised; sold] across state lines and Defendant's activities have a substantial effect on Plaintiff's business].

5.     Plaintiff has been or is likely to be injured as a result of the false statement. Injury includes [direct diversion of sales from itself to Defendant; a loss of goodwill associated with its products.]

If you find that Plaintiff has proved each of these things, then you must find for Plaintiff. If, on the other hand, you find that Plaintiff has failed to prove any one of these things, then you must find for Defendant.

### Comments

**1.     Authority.** *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999). *See also* 15 U.S.C. § 1125(a)(1)(B).

**2.      Inherent Quality or Characteristic.** *See Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 278 (2d Cir. 1981).

**3.      Literally True or Ambiguous Statement.** If the case involves a statement that is alleged to be literally true or ambiguous yet conveys a false impression, the bracketed language at the end of paragraph No. 1 should be given. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir. 1992) ("Section 43(a)(2) of the [Lanham] Act . . . applies with equal force to (1) statements which are literally false and (2) statements which, while literally true or ambiguous, convey a false impression or are misleading in context, as demonstrated by actual consumer confusion.").

**4.      Interstate Commerce.** *See* 15 U.S.C. § 1127 (defining commerce as "all commerce which may lawfully be regulated by Congress."); *Jewel Cos. v. Jewel Merchandising Co.*, 201 U.S.P.Q. 24 (N.D. Ill. 1978); *Susan's, Inc. v. Thomas*, 26 U.S.P.Q.2d 1804 (D. Kan. 1993). The Committee has proposed two relatively common alternative formulations; the instruction may need to be adapted to the particular case being tried. *See Berghoff Restaurant Co. v. Lewis W. Berghoff, Inc.,* 357 F.Supp. 127, 130 (N.D. Ill. 1973) (plaintiff restaurant met interstate commerce standards in the Lanham Act 15 U.S.C. §1127 because it "used its mark in interstate commerce by catering to a substantial number of interstate travelers, advertising in media which reach non-Illinois residents, and serving food from extra-state sources"); *Larry Harmon Pictures Corp. v. Williams Restaurant Corp.,* 929 F.2d 662, 665 (Fed. Cir. 1991) (appellee's restaurant was involved in interstate commerce, and service mark for restaurant met commerce requirement for registration under Lanham Act §3). The fourth paragraph may require modification if an unlisted type of interstate or foreign commerce is involved.

**5.      Undisputed Elements.** This instruction should be modified to account for situations where facts are not in dispute or the element has been resolved as a matter of law. For example, if the parties do not dispute that the defendant caused the allegedly false statement to enter interstate commerce, the fourth element of the instruction does not need to be given.

**13.4.1 Trademark Dilution – Elements**

**Comment**

The Committee has not proposed an instruction on trademark dilution under 15 U.S.C. 1125(a) because in October 2006, Congress made changes to the statute that significantly alter its meaning. The changed provisions have not yet been the subject of significant appellate interpretation.

## 13.5.1 Affirmative defenses – Nominative Fair Use

Defendant claims that its use of Plaintiff's trademark is permitted because Defendant made fair use of the trademark.

To succeed on this defense, Defendant must prove the following three things by a preponderance of the evidence:

1.      Defendant used the trademark to refer to a product of Plaintiff that cannot be easily identified without using the trademark;

2.      Defendant used [only as much of the trademark; the trademark only as much] as was reasonably necessary to identify the product; and

3.      Defendant did not do anything in connection with using the trademark to suggest that Plaintiff sponsored or endorsed Defendant or its product.

[A product cannot be easily identified without using the trademark if there are no equally informative words to identify the product, or there is no other effective way to compare, criticize, refer to or identify it without using the trademark.]

[A reasonably necessary use of a trademark occurs [when no more of the trademark's appearance is used; when the trademark is used no more prominently] than is needed to identify the product and enable consumers to understand the reference.]

[Defendant's use of the Plaintiff's trademark to compete with Plaintiff, or to make a profit, does not by itself prevent Defendant from proving fair use.]

### Comments

**1.      Authority.** This instruction is adapted in part from the Ninth Circuit's Model Civil Jury Instruction 18.21. Nominative fair use refers to the defendant's use of the plaintiff's mark to identify the plaintiff's goods or services. Although the Seventh Circuit has not considered the standards for the nominative fair use defense, the district courts in the Seventh Circuit have applied the Ninth Circuit's rule for nominative fair use. *See, e.g.*, *Ty, Inc. v. Pubs. Int'l, Ltd.*, 2005 WL 464688, at *5-8 (N.D. Ill. 2005) (citing *New Kids on*

*the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)); *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, 2001 WL 747422, at *5-6 (N.D. Ill. 2001) (same).

    **2.**    **Competitive Use.** The final bracketed paragraph may be used in cases where the fair use defense is challenged because the defendant is using the plaintiff's mark in competition with the plaintiff or to make a profit. *See New Kids on the Block v. News Am. Pub., Inc.,* 971 F.2d 302, 309 (9th Cir. 1992) ("Where, as here, the use does not imply sponsorship or endorsement, the fact that it is carried on for profit and in competition with the trademark holder's business is beside the point.").

## 13.5.2 Affirmative Defenses – Classic Fair Use

Defendant claims that its use of Plaintiff's trademark is permitted because Defendant made fair use of the trademark.

To succeed on this defense, Defendant must prove the following three things by a preponderance of the evidence:

1.     Defendant used [*describe Defendant's usage*] in a way other than to indicate the source of Defendant's product.

2.     [*Describe Defendant's usage*] accurately describes Defendant's product.

3.     Defendant only used [*describe Defendant's usage*] to describe its product.

## Comments

**1.     Authority.** Classic fair use refers to the defendant's use of the plaintiff's mark in connection with the defendant's goods or services. Classic fair use is described in the Lanham Act as a defense to a trademark infringement action. 15 U.S.C. § 1115(b)(4). *See Packman v. Chi. Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001); *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 951 (7th Cir. 1992); *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Celozzi-Ettelson Chevrolet, Inc.*, 855 F.2d 480, 483-84 (7th Cir. 1988); *see also Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 173 (7th Cir. 1996) ("Others can use the same mark to identify their product, provided there is no likelihood of confusion, which would impair the trademark's function as an identifier." (citations omitted)). For example, use of the words "door systems" to describe an overhead garage door with a remote control is a descriptive use of the trademark "Door Systems." *Id.* The Committee contemplates that the court will use such descriptions throughout this instruction. The first element, therefore, might read: "Defendant used the phrase 'door systems' in a way other than to indicate the source of Defendant's product."

**2.     Burden of Proof.** A defendant who asserts the fair use defense does not bear the burden of negating a likelihood of confusion; instead, the plaintiff continues to bear the burden of proving a likelihood of confusion as part of its prima facie case of infringement. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004).

**3.** **Parody.** This instruction does not include any reference to parody as a fair use because, under Seventh Circuit jurisprudence, parody is not an affirmative defense to an action for trademark infringement. *See Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1228 (7th Cir. 1993) ("If the defendant employs a successful parody, the customer would not be confused, but amused. . . . [P]arody is not an affirmative defense but an additional factor in the [likelihood of confusion] analysis.").

**13.5.3 Affirmative Defenses – Laches/Acquiescence**

### Comment

The Lanham Act recognizes laches, acquiescence, and other equitable defenses to trademark infringement actions. 15 U.S.C. § 1115(b)(9). No instructions are provided on the defenses of laches or acquiescence because they are issues for the court, not the jury.

## 13.5.4 Affirmative Defenses – Abandonment

Defendant claims that Plaintiff has abandoned its [trademark; trade dress].

To succeed on this defense, Defendant must prove by [clear and convincing evidence] [a preponderance of the evidence] that Plaintiff stopped using its [trademark; trade dress] and intended not to resume use.

## Comments

**1.    General Authority.** Abandonment is a defense to an action for trademark infringement. 15 U.S.C. § 1115(b)(2). A mark is presumed abandoned after three consecutive years of nonuse. *Id.* § 1127. This instruction is adapted in part from Kevin F. O'Malley, *et al.*, *Federal Jury Practice and Instructions* § 159.75 (5th ed. 2001).

**2.    Elements.** *See Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 938 (7th Cir. 1989); *see also Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 639 (7th Cir. 2003); *Rust Environment & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1214 (7th Cir. 1997); *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 954-956 (7th Cir. 1992). The Committee notes that Seventh Circuit case law is not clear about the standard of proof for the abandonment affirmative defense, although the cases suggest that a high standard is appropriate. *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 884 (7th Cir. 1997) (describing burden of proof as "stringent"); *Alpha Tau Omega Fraternity, Inc. v. Pure Country, Inc.*, 2004 WL 3391781, *10 (S.D. Ind. 2004) (referring to a "heavy burden of proof" for abandonment). Although the Seventh Circuit has not expressly recognized the "clear and convincing" standard, numerous other courts have done so. *See* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 17:12 (4th ed. 2006 update).

**3.    Presumption of Abandonment.** If a defendant shows non-use of a registered mark for three or more years and the plaintiff has no evidence to explain non-use, then the defendant is entitled to a finding of abandonment, and the matter should not be determined by the jury. If, however, the plaintiff does offer evidence explaining non-use, then the burden of persuasion remains with the defendant to prove abandonment. *See Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 938 (7th Cir. 1989). In other words, the presumption of abandonment contained in section 1127 imposes on the trademark holder a burden of production, not a burden of persuasion.

### 13.5.5 Affirmative Defenses – Continuous Prior Use – Registered Marks

Defendant contends that it has the right to use the [trademark; trade dress] within the [*specific geographic region*].

To succeed on this defense, Defendant has the burden of proving three things by a preponderance of the evidence:

1.     Defendant used the trademark before Plaintiff [applied for registration of the] [registered the] [obtained publication of its application to register the] [trademark; trade dress].

2.     Defendant [*defendant's assignor*] [*defendant's licensor or licensee*] continuously used the [trademark; trade dress], up until trial, in [*specific geographic region*].

3.     Defendant [*defendant's assignor*] [*defendant's licensor or licensee*] began using the trademark without knowledge of Plaintiff's prior use.

[If you find that Defendant has proved all three of these things, then you should find for Defendant on Plaintiff's claim for infringement of its [registered; unregistered] [trademark; trade dress].

### Comments

**1.     Authority.** *See* 15 U.S.C. § 1115(a) (contestable marks are subject to "any legal or equitable defense or defect, including those set forth in subsection (b) of this section . . .") and § 1115(b)(5) (incontestable trademarks subject to the defense "[t]hat the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title, (B) the registration of the mark under this chapter if the application for registration is filed before the effective date of the Trademark Law Revision Act of 1988, or (C) publication of the registered mark under subsection (c) of section 1062 of this title: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved . . . ."). This instruction is adapted from Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 159.79 (5th ed. 2001).

**2.      Unregistered Marks and the Continuous Prior Use Defense.** If the case involves only a claim for infringement of an unregistered trademark, then the continuous prior use defense does not apply. *See McCarthy on Trademarks and Unfair Competition,* §26:52 at p. 26-91 (4th ed. 2006). However, "where § 43(a) is used as the basis for an alternative count along with a count for infringement of a registered trademark, a good faith remote use defense good against the registration should be good against the § 43(a) count as well." *Id*.; *see also, Concord Labs., Inc. v. Concord Medical Center,* 552 F. Supp 549, 552 (N.D. Ill. 1982). In such a case, the instruction in the final bracketed paragraph should be used.

**3.      "Continuous Use."** The junior user asserting a continuous prior use defense must show that it "has made continuous use of the mark prior to the issuance of the senior user's registration and must further prove continued use up until trial." *McCarthy on Trademarks* § 26:44 (4th ed. 2006), *citing Thrifty Rent-A-Car System, Inc. v. Thrift Cars, Inc.,* 831 F.2d 1177, 1183 (1st Cir. 1987) ("The pivotal issue is, however, whether Thrift Cars continued enough of a market presence in East Taunton after May 1970 . . . . [T]he junior user must . . . prove continued use up until trial."); *Quiksilver, Inc. v. Kymsta Corp.,* 466 F.3d 749, 762 (9th Cir. 2006). *See Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, 2004 WL 2967446, *14 (N.D. Ill. Nov. 15, 2004) (party failed to prove prior continuous use in a specific geographic area because it "no longer uses those marks in conjunction with marketing its services in any way other than on the limited purpose web site").

## 13.5.6 Affirmative Defenses – Registered Trade Dress – Functionality

Defendant claims that Plaintiff's trade dress is "functional." To succeed on this defense, Defendant must prove that [*Plaintiff's claimed trade dress*] is essential to the operation of the product as a whole. To determine this, you should consider the following:

[•    Are there other designs that could perform the function equally well? (If so, this is evidence that the design is not functional.)]

[•    Is there a patent that discloses the practical advantages of the design? (If so, this is strong evidence that the design is functional.)]

[•    Does the design provide a practical advantage? (If so, this is evidence that the design is functional.)]

[•    Has Plaintiff advertised or promoted the practical advantages of the design? (If so, this is evidence that the design is functional.)]

[•    Does the design result from a comparatively simple, cheap, or superior method of manufacturing the product? (If so, this is evidence that the design is functional.)]

To determine whether a product's trade dress is functional, you should consider everything that makes up the trade dress.

### Comment

**Usage.** This instruction should be used if the plaintiff has a registered trade dress and the defendant contends that the trade dress is functional. In such a case, functionality is an affirmative defense, and the defendant bears the burden of proof. 15 U.S.C. § 1115(b)(8); *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 297 (7th Cir. 1998); *Pubs. Intern., Ltd. v. Landoll, Inc.*, 164 F.3d 337, 339-40 (7th Cir. 1998).

### 13.5.7 Affirmative Defenses – Genericness – Incontestable Trademark / Trade Dress

Defendant contends that Plaintiff's [trademark; trade dress] is "generic." To succeed on this defense, Defendant must prove that the [trademark; trade dress] is "generic."

A "generic" [symbol; term; trade dress] is a common or general [symbol for; name of; trade dress for] a product whose primary significance to the consuming public is to identify a [group; class] of similar products, regardless of who [makes; sells] them. The consuming public consists of people who may buy or use, or consider buying or using, the product or similar products. [For example, "cola" is a generic term for a type of soft drink, so it cannot function by itself as a trademark for this type of soft drink.] [For example, bear-shaped gummy candies are common in the candy industry and are generic shapes for this type of candy.]

### Comment

**Usage.** As noted in instruction 1.2.2.5, comment 2, the Committee is of the view that when an incontestable mark may be challenged as generic, the defendant bears the burden of proving genericness. This instruction is essentially identical to instruction 1.2.2.5, except for the allocation of the burden of proof. For this reason, the remaining commentary to instruction 1.2.2.5 is omitted here.

(2008 rev.)

## 13.5.8 Affirmative Defenses – Fraud in Procurement

Defendant claims that Plaintiff obtained its [trademark; trade dress] [registration; incontestable status] through fraud on the Patent and Trademark Office.

To succeed on this defense, Defendant must prove by clear and convincing evidence that Plaintiff made [material misrepresentations] [and; or] [failed to disclose material information] to the Patent and Trademark Office, with the intent to deceive the Patent and Trademark Office. [Information that was misrepresented is "material" if it influenced the Patent and Trademark Office's decision to register the [trademark; trade dress]]. [Information is "material" if it would have caused the Patent and Trademark Office not to register the [trademark; trade dress] had it been disclosed.]

"Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true. [This is a higher burden than "preponderance of the evidence."]"

### Comments

1.      **Authority.** *See* 15 U.S.C. § 1115(b)(1).

2.      **Clear and Convincing Evidence.** *See Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 670 (7th Cir. 1982) ("Fraud must be shown by clear and convincing evidence in order to provide a basis for either cancellation or damages.")

3.      **Intent.** *See Money Store* , 689 F.2d at 670.

4.      **Materiality.** "Material facts are those 'which, if disclosed, would result in refusal by the Office to register the mark.'" *ISP.Net, LLC v. Qwest, Communs. Int'l, Inc.*, 2003 U.S. Dist. LEXIS 9076, *10, 2003 WL 21254430, * 3 (S.D. Ind. May 27, 2003) (*quoting Buti v. Impressa Perosa, S.R.L.*, 935 F. Supp. 458, 474 (S.D.N.Y. 1996)); *see* 3 Anne Gilson Lalonde, Gilson on Trademarks § 11.08[3][a][ii][C] ("In brief, a misstatement is material if it affected the PTO's decision to grant the application.").

**13.6.1 Remedies – Types**

If you decide for Plaintiff on the question of liability, then you should consider the amount of money to award to Plaintiff [if any]. This should include damages that Plaintiff sustained because of Defendant's [infringement; false advertising], and profits that Defendant made because of its [infringement; false advertising].

If you decide for Defendant on the question of liability, then you should not consider this issue.

**Comment**

**Authority.** *See* 15 U.S.C. § 1117(a).

## 13.6.2 Remedies – Actual or Statutory Notice – Registered Marks

To recover damages or profits, Plaintiff must prove by a preponderance of the evidence that Defendant knew that Plaintiff's mark was registered, or if:

[Plaintiff displayed with the [trademark; trade dress] the words, "Registered in the U.S. Patent and Trademark Office"]; [or]

[Plaintiff displayed with the [trademark; trade dress] the words "Reg. U.S. Pat. & Tm. Off."]; [or]

[Plaintiff displayed with the [trademark; trade dress] the letter R enclosed in a circle ®.]

## Comment

**Usage.** This instruction should be given only in cases involving registered marks. *See* 15 U.S.C. § 1111 ("a registrant of a mark registered in the Patent and Trademark Office, may give notice that his mark is registered by displaying with the mark the words 'Registered in U.S. Patent and Trademark Office" or "Reg. U.S. Pat. & Tm. Off." or the letter R enclosed within a circle, thus ® and in any suit for infringement under this chapter by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered under the provisions of this chapter unless the defendant had actual notice of the registration."). There is an apparent quirk in the statutory scheme for recovering actual damages: for registered marks, the trademark owner must comply with 15 U.S.C. § 1111 and provide actual or statutory notice in order to recover damages, whereas there is no such limitation on unregistered marks. *See* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:144; *Polo Fashions, Inc. v. J&W Enterprises,* 786 F.2d 1156 (4th Cir. 1986); *Bambu Sales, Inc. v. Sultana Crackers, Inc.,* 683 F. Supp. 899 (E.D.N.Y. 1988). Failure to meet the statutory notice requirement for registered marks does not bar all damages, but only those arising prior to the giving of notice.

### 13.6.3 Actual Damages

To recover damages, Plaintiff must prove two things by a preponderance of the evidence:

1.      Defendant's [infringement; false advertising] caused actual confusion among consumers; and

2.      As a result, Plaintiff sustained injury.

If you find that Plaintiff has proved these things, then you must consider what amount of money to award to Plaintiff as damages [if any].

Damages consist of the amount of money required to compensate Plaintiff for the injury caused by Defendant's [infringement; false advertising]. Plaintiff must prove its damages by a preponderance of the evidence.

You may consider the following types of damages:

[•      Plaintiff's lost profits on lost sales, which consists of the revenue Plaintiff would have earned but for Defendant's infringement, less the expenses Plaintiff would have sustained in earning those revenues.]

[•      Loss of royalties. A royalty is a payment for the right to use a trademark. In determining lost royalties, you should determine the royalty that Plaintiff and Defendant would have agreed upon if they had negotiated the terms of a royalty before Defendant's infringement.]

[•      Loss of goodwill. Goodwill is consumer recognition or drawing power of a [trademark; trade dress].] [In determining loss of goodwill, you should compare the value of Plaintiff's goodwill before the [infringement; false advertising] with the value of Plaintiff's goodwill after the [infringement; false advertising].]

[•      Cost of corrective advertising. This is [the amount spent by Plaintiff to counteract the effects of Defendant's infringement] [and] [the amount

necessary to dispel any public confusion that lingers after Defendant's infringement has stopped.]

## Comments

**1.  Usage.** This instruction is drafted for use in infringement and false advertising cases, not dilution cases. As noted earlier, the Committee has not proposed an instruction for dilution under 15 U.S.C. § 1125(a) due to significant recent amendments to the statute. The Committee likewise has not proposed an instruction defining the damages recoverable in dilution cases.

**2.  General Authority.** *See* 15 U.S.C. § 1117(a); *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204-1205 (7th Cir. 1990) ("A plaintiff wishing to recover damages for a violation of the Lanham Act must prove the defendant's Lanham Act violation, that the violation caused actual confusion among consumers of the plaintiff's product, and, as a result, that the plaintiff suffered actual injury, *i.e.*, a loss of sales, profits, or present value (goodwill)."); *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994) (the standard method for calculating plaintiff's recovery under Section 1117(a) "both allows the plaintiff to recover any damages it suffered on account of the infringement and also requires the defendant to disgorge any profits it gained from the infringement.").

**3.  Plaintiff's Lost Profits.** *See BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1092 (7th Cir. 1994); *Borg-Warner Corp. v. York-Shipley, Inc.*, 293 F.2d 88 (7th Cir. 1961).

**4.  Lost Royalties.** *See Sands, Taylor & Wood v. Quaker Oats Co.*, 978 F.2d 947, 963 (7th Cir. 1992); *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1351 (7th Cir. 1994).

**5.  Loss of Goodwill.** *See Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994); 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 2:15; *Meridian Mut. Ins. Co. v. Meridian Is. Group*, 128 F.3d 1111, 1117 (7th Cir. 1997) (defining goodwill); *Sands, Taylor & Wood v. Quaker Oats Co.*, 1990 U.S. Dist. LEXIS 17342 at *29, 1990 WL 251914, *9 (N.D. Ill. December 20, 1990) (same). The committee was unable to locate any Seventh Circuit authority describing how lost goodwill

is calculated, so it looked to cases from other circuits that have addressed this issue in other settings. *See Stewart & Stevenson Services, Inc. v. Pickard*, 749 F.2d 635, 649 (11th Cir. 1984) ("It is axiomatic that the measure of damage to business property, such as goodwill, is based on measurement of the difference in value of the property before and after the injury."); *South Port Marine, LLC v. Gulf Oil Limited Partnership*, 234 F.3d 58, 67 (1st Cir. 2000) ("South Port's goodwill loss is based upon a projected loss of value of the business after the spill. . . . This loss could be calculated by discounting the estimated loss of future revenues to present value or, alternatively, by assessing the decrease in value of the business to potential buyers after the spill repairs."). Because there may be more than one way to calculate the amount of lost goodwill, this portion of the instruction may need to be modified depending on the facts of a particular case.

**6. Cost of Corrective Advertising.** *See Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992); *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633 (7th Cir. 2003); *Otis Clapp & Son, Inc. v. Filmore Vitamin Company*, 754 F.2d 738, 745 (7th Cir. 1985). The *Zazu* case indicates that corrective advertising damages cannot exceed the value of the mark. *Zazu,* 979 F.2d at 506. The Committee has not included this concept in the instruction but notes that in an appropriate case, it might be necessary to amend the instruction in this regard.

**7. Other Factors.** The list of actual damages in this instruction is not meant to be exhaustive, and this instruction may need to be modified to reflect other types of damages claimed in a particular case or to ensure that no type of damages is duplicated.

### 13.6.4 Defendant's Profits

In addition to Plaintiff's damages, Plaintiff may recover the profits Defendant gained from the [trademark infringement; trade dress infringement; false advertising] You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money Defendant received due to its [use of the [trademark; trade dress]] [false advertising].

Plaintiff is required only to prove Defendant's gross revenue. Defendant is required to prove any expenses that it argues should be deducted in determining its profits.

Plaintiff is entitled to recover Defendant's total profits from its [use of the [trademark; trade dress]] [false advertising], unless Defendant proves that a portion of the profit is due to factors other than [use of the [trademark; trade dress]] [false advertising].

### Comments

**1.** **Authority.** *See* 15 U.S.C. § 1117(a); *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1156-57 (7th Cir. 1994); *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1092 (7th Cir. 1994) (false advertising plaintiff may recover defendant's profits under 15 U.S.C. § 1117).

**2.** **Apportionment of Profits.** *See Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942) ("The burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark. There may be a windfall to the trade-mark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer.").

**3.** **No Double Recovery.** *See McCarthy on Trademarks and Unfair Competition* § 30:73 ("damages and profits cannot be awarded simultaneously if it would result in over-compensation."); *Polo Fashions, Inc. v. Extra Special Products, Inc.*, 208 U.S.P.Q. 421

(S.D.N.Y. 1980) (damages and profits may not be awarded together if based on the same sales).

### 13.6.5 Intentional Infringement

If you find that Defendant [infringed Plaintiff's [trademark; trade dress]] [engaged in false advertising], you must also determine whether Plaintiff has proven that, at the time Defendant [used the trademark; trade dress] [engaged in the false advertising] Defendant acted willfully. Defendant acted willfully if it knew that [it was infringing Plaintiff's [trademark; trade dress] [its advertising was [false] [or misleading]] or if it acted with indifference to [Plaintiff's trademark rights] [whether its advertising was false / misleading].

### Comments

**1.      Authority.** The Lanham Act permits trebling of an award of damages in a case in which the defendant acted willfully. *See* 15 U.S.C. § 1117(a). Willful infringement occurs if the defendant knew it was infringing the plaintiff's mark or acted in reckless disregard of the plaintiff's rights. *See Zazu Designs, Ltd. v. L'Oreal, S.A.*, 979 F.2d 499, 507 (7th Cir. 1992). Though the Seventh Circuit has not directly addressed whether willfulness permitting trebling of a damage award is an issue for the jury in a Lanham Act case, it has held that the issue is a jury question in the analogous area of copyright law. *See Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1016 (7th Cir. 1991) ("We concluded that, when money damages of any kind are sought, the issues of infringement and willfulness are for the jury to resolve."); *see also Admiral Corp. v. Admiral Employment Bureau, Inc.*, 151 F. Supp. 629, 631 (N.D. Ill. 1957) (Lanham Act case; "[a]lthough the question of whether or not treble damages are to be awarded is left to the discretion of the court, there exists the right to have a jury pass on the question of willfulness of the violation before such an award is made.").

**2.      Willful Infringement as a Basis for Award of Attorney's Fees.** The Lanham Act also permits an award of attorney's fees to a prevailing party in an "exceptional case," which may exist, among other situations, when the defendant engaged in willful infringement. *See, e.g., Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1158 (7th Cir. 1994). The committee takes no position on whether willfulness is an issue for the jury on the question of whether attorney's fees should be awarded.

# SAMPLE PRELIMINARY INSTRUCTIONS

**NOTE:**     The Committee chose not to produce pattern preliminary instructions in light of the concern that such a set might increase disputes over the way in which preliminary instructions should be worded. Still, the Committee thought it might be helpful to include a sample set of preliminary instructions for judges who have no established set of their own, or for counsel who might seek a preliminary instruction on a topic not customarily covered. In that spirit, the following sample set is included, with the understanding that the sample instructions did not receive the same scrutiny from the Committee as the pattern instructions have received.

# SAMPLE PRELIMINARY INSTRUCTIONS

*Introductory paragraphs*[1]

Ladies and gentlemen: You are now the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions. At the end of the trial, I will give you more detailed instructions. Those instructions will control your deliberations.

One of my duties is to decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.

*Order of Trial*[2]

The trial will proceed in the following manner:

First, Plaintiff[s]'s attorney may make an opening statement. Next, Defendant[s]'s attorney may make an opening statement. An opening statement is not evidence but is simply a summary of what the attorney expects the evidence to be.

After the opening statements, Plaintiff will call witnesses and present evidence. Then, Defendant will have an opportunity to call witnesses and present evidence. After the parties' main cases are completed, Plaintiff may be permitted to present rebuttal evidence [and Defendant may be permitted to present sur-rebuttal evidence].

---

[1] The first and third paragraphs are NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.1 (2001). The second paragraph is a stylistic revision of the preliminary instruction in FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL) (2004).

[2] The first and second paragraphs come EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.06 (2001). The third paragraph is taken from the preliminary instruction in FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL) (2004). The fourth and fifth paragraphs come from NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.2 (2001)

After the evidence has been presented, [I will instruct you on the law that applies to the case and the attorneys will make closing arguments] [the attorneys will make closing arguments and I will instruct you on the law that applies to the case].

After that, you will go to the jury room to deliberate on your verdict.

*Claims and Defenses*[3]

The positions of the parties can be summarized as follows:

Plaintiff _____ claims that *[describe]*.

Defendant _____ denies those claims *[and also contends that [describe].*

[To prove his claim, Plaintiff will have to prove, by a preponderance of the evidence [*here insert elements of claim*]. [To prove his defense(s), Defendant will have to prove, by a preponderance of the evidence [here insert elements of affirmative defense(s)]. What I have just given you is only a preliminary outline. At the end of the trial I will give you a final instruction on these matters. If there is any difference between what I just told you, and what I tell you in the instructions I give you at the end of the trial, the instructions given at the end of the trial govern.]

[*Burden of Proof – Preponderance*[4]
When I say a particular party must prove something by "a preponderance of the evidence," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.]

---

[3] The first three paragraphs are 3 KEVIN F. O'MALLEY, JAY E. GRENIG & HON. WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 101.03 (5th ed. 2000). The bracketed last paragraph incorporates FIRST CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL CASES) § 1.04 (1998), which is virtually identical to EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.02 (2003).

[4] Instruction 1.27.

When I say that a particular party must prove something by "clear and convincing evidence," this is what I mean: When you have considered all of the evidence, you [are convinced that it is highly probable that it is true] [have no reasonable doubt that it is true].

[This is a higher burden of proof than "more probably true than not true." Clear and convincing evidence must persuade you that it is "highly probably true."]]

## *Province of Judge and Jury*[6]

Do not allow sympathy, prejudice, fear, or public opinion to influence you. You should not be influenced by any person's race, color, religion, national ancestry, or sex.

## *Evidence in the Case*[7]

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and any facts that I may instruct you to find or the parties may agree or stipulate to.

A stipulation is an agreement between both sides that certain facts are true.

## *Credibility of Witnesses*[8]

You will have to decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also have to decide what weight, if any, you give to the testimony of each witness.

---

[5] Instruction 1.28. The definition of "clear and convincing evidence" varies among, and even within, jurisdictions. If state law provides the rule of decision and imposes a burden of proof by clear and convincing evidence, the state's definition should be used.

[6] Taken from Instruction 1.01.

[7] Instruction 1.04, with revisions.

[8] First paragraph of Instruction 1.13.

(2009 rev.)

*[Direct and Circumstantial Evidence (If Appropriate to Case)*[9]

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, <u>direct evidence</u> that it is raining is testimony from a the witness who says, "I was outside a minute ago and I saw it raining." <u>Circumstantial evidence</u> that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. When the time comes to deliberate on your verdict, you should consider all the evidence in the case, including the circumstantial evidence.]

*Inferences*[10]

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

*What is Not Evidence; Evidence for Limited Purpose*[11]

The following things are not evidence, and you must not consider them as evidence in deciding the facts of this case: the attorneys' statements, arguments, questions, and objections of the attorneys; any testimony that I instruct you to disregard; and anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

---

[9] Instruction 1.12, with minor style change in the last sentence to make the instruction look forward toward the trial. The Committee does not expect this instruction will be needed in every case.

[10] Instruction 1.11.

[11] The first paragraph is NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.4 (2001), The second paragraph is EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.02 (2001).

(2009 rev.)

[Furthermore, a particular item of evidence is sometimes received for a limited purpose only. That is, it can be used by you only for one particular purpose, and not for any other purpose. I will tell you when that occurs, and instruct you on the purposes for which the item can and cannot be used.] [You should also pay particularly close attention to such an instruction, because it may not be available to you in writing later in the jury room.]

### Official Translations[12]

*[Language other than English]* may be used during this trial. You should consider only the evidence provided through the official interpreter. Although some of you may know [*language(s) used*], it is important that all jurors consider the same evidence. Therefore, you must base your decision on the evidence presented in the English translation.

### Rulings on Objections[13]

From time to time during the trial I may be called upon to make rulings of law on objections or motions made by the lawyers. You should not infer or conclude from any ruling or other comment I may make that I have any opinions about how you should decide this case. And if I should sustain an objection to a question that goes unanswered by a witness, you should not guess or speculate what the answer might have been, and you should not draw any inferences or conclusions from the question itself.

### Bench Conferences[14]

At times during the trial it may be necessary for me to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We meet because often during a trial something comes up that doesn't involve the jury.

---

[12] The first sentence is 3 KEVIN F. O'MALLEY, JAY E. GRENIG & HON. WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 102.25 (5th ed. 2000); the remainder of the instruction is Instruction 1.22.

[13] Preliminary instruction in ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2000), modified as to style.

[14] First paragraph is FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS § 2.7 (CIVIL) (2004). The first clause of the second paragraph is from EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.03 (2001), and last clause of second paragraph is from the preliminary instruction in ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2000).

We will, of course, do what we can to keep the number and length of these conferences to a minimum, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

[*Note-Taking – Allowed*[15]

 Any notes you take during this trial are only aids to your memory. The notes are not evidence. If you do not take notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

 When you leave the courthouse during the trial, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. When you leave at night, your notes will be secured and not read by anyone. At the end of the trial, your notes will be destroyed, and no one will be allowed to read the notes before they are destroyed.]

[*Note-Taking – Disallowed*[16]

 Jurors often wonder if they are allowed to take notes during the trial.

 The desire to take notes is perfectly natural, especially for those of you who are accustomed to making notes because of your schooling or the nature of your work or the like. It is requested, however, that jurors <u>not</u> take notes during the trial. One of the reasons for having a number of persons on the jury is to gain the advantage of your several, individual memories concerning the testimony presented before you; and, while some of you might feel comfortable taking notes, other members of the jury may <u>not</u> have skill or experience in notetaking and may not wish to do so.]

*No Transcript Available to Jury*[17]

 Pay close attention to the testimony as it is given. At the end of the trial you must

---

[15] The first paragraph is based on Instruction 1.07. The first sentence of the second paragraph is taken from NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.11 (2001). The second sentence of the second paragraph is taken from EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.04 (2001).

 The Committee takes no position on whether jurors should be allowed to take notes.

[16] Preliminary instruction from ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES) § (2000), slightly revised.

[17] EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.04 (2001).

make your decision based on what you recall of the evidence. You will not have a written transcript to consult.

[*Questions by Jurors Forbidden*[18]

   I do not permit jurors to ask questions of witnesses or of the lawyers. Please do not interrupt the lawyers during their examination of witnesses.

   If you are unable to hear a witness or a lawyer, please raise your hand immediately and I will see that this is corrected.]

[*Questions by Jurors – Permitted*[19]

   You may submit questions to witnesses to clarify their testimony during trial under certain conditions.

   If you feel the answer to your question would be helpful in understanding this case, you should raise your hand after the lawyers have completed their examinations but before the witness is excused. I will have you write your question and hand it to the clerk. I will then privately confer with the lawyers about the question and make a ruling on whether the law allows the question to be asked of that witness. If the question is of the type that is allowed, I will address the question to the witness. Please do not directly speak to me, the lawyers, or the witnesses, but carefully follow this procedure if you wish to have a specific question addressed to a witness.]

---

[18] 3 KEVIN F. O'MALLEY, JAY E. GRENIG & HON. WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 101.16 (5th ed. 2000).

If the judge might allow a juror to ask a question under unforeseen circumstances, the topic should not be addressed in the preliminary instructions; this instruction would foreclose the possibility.

[19] INDIANA PATTERN JURY INSTRUCTIONS—CIVIL 2D 1.12 (2003), modified as to style.

The practice of allowing jurors' questions "is acceptable in some cases, but [we] do not condone it," and the court condemned procedures "where jurors are permitted to blurt out their questions," but ultimately decided the practice is within the trial court's discretion. *United States v. Feinberg*, 89 F.3d 333, 336-337 (7th Cir. 1996):

The Committee takes no position on whether trial judges should allow jurors to ask questions, or on how trial judges should go about allowing juror questions, if they decide to allow them (other than offering this up as a suggestion). Judges who intend to allow jurors to ask questions might defer giving this instruction or any like it until a juror actually raises the issue.

*Judge's Questions*[20]

During the trial, I may sometimes ask a witness questions. Do not assume that because I ask questions I hold any opinion on the matters I ask about, or on how the case should be decided.

*Jury Conduct*[21]

All jurors must follow certain rules of conduct, and you must follow them, too.

First, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. You must not let others to discuss the case with you. If anyone tries to talk to you about the case please let me know about it immediately;

Second, you must not read any news stories or articles or listen to any radio or television reports about the case or about anyone who has anything to do with it;

Third, you must not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me, you must give a signed note to the [bailiff] [clerk] [law clerk] [matron] to give to me; and

Fifth, you must not make up your mind about what the verdict should be until after you have gone to the jury room to decide that case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

---

[20] The first sentence is from 3 KEVIN F. O'MALLEY, JAY E. GRENIG & HON. WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 101.30 (5th ed. 2000). The rest is from Instruction 1.02, revised as to style in the last phrase.
The Committee takes no position on whether or when judges should question witnesses in the jury's presence.

[21] NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.9 (2001), revised as to style by inserting "you must" to be consistent with idea that these are rules they *must* follow.

(2009 rev.)