# Exhibit K19

███████████████████

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
Case No. 1:18-cv-08175

_____


KOVE IO, INC.,

Plaintiff,

v.

AMAZON WEB SERVICES, INC.,

Defendant.


_____


REBUTTAL EXPERT REPORT AND DISCLOSURE OF
MELISSA A. BENNIS


Submitted August 18, 2023


HIGHLY CONFIDENTIAL

creating solutions that overcome technological limitations in modern server architecture."[5] Kove currently has 10 full-time employees.[6] I discuss Kove's predecessor companies below.

2. **AWS**

Founded in 2006, AWS is a Delaware corporation with a principal place of business in North Seattle, Washington.[7] AWS is a wholly-owned subsidiary of Amazon.com, Inc. ("Amazon").[8] AWS earns revenue "from global sales of compute, storage, database, and other services for start-ups, enterprises, government agencies, and academic institutions."[9] According to AWS, it "is the world's most comprehensive and broadly adopted cloud, offering over 200 fully featured services from data centers globally. Millions of customers – including the fastest-growing startups, largest enterprises, and leading government agencies – are using AWS to lower costs, become more agile, and innovate faster."[10]

AWS advertises that it is "[t]he leading cloud," because it has the "[m]ost functionality," the "[l]argest community of customers and partners," and is the "[m]ost secure," with the "[f]astest pace of innovation," the "[m]ost proven operational expertise," and "the most extensive global cloud infrastructure."[11] For 12 consecutive years through 2022, Gartner named AWS a "Leader" in the Magic Quadrant for Cloud Infrastructure and Platform Services.[12]

I note that Kove attempted to sell its Software Defined Memory products to AWS 11 years after it stopped trying to sell any embodying products.[13] Dr. Overton and other representatives of Kove met and

---

[5] Complaint, dated December 12, 2018, p. 2.

[6] Deposition of John Overton, Ph.D., dated May 16, 2023, p. 53.

[7] Defendant and Counterclaimant Amazon Web Services, Inc.'s Answer, Additional Defenses, and Counterclaims, dated May 1, 2020, p. 43; Deposition of Scott Hayden, dated April 24, 2023, p. 354.

[8] Amazon.com, Inc. Form 10-K for the fiscal year ended December 31, 2022, Exhibit 21.1.

[9] Amazon.com, Inc. Form 10-K for the fiscal year ended December 31, 2022, p. 66.

[10] https://aws.amazon.com/what-is-aws/?nc2=h_ql_le_int.

[11] https://aws.amazon.com/what-is-aws/?nc2=h_ql_le_int.

[12] https://aws.amazon.com/resources/analyst-reports/22-global-gartner-mq-cips/?trk=2ccd4211-9b88-4637-934e-e730ec39a732&sc_channel=el.

[13] Deposition of John Overton, Ph.D., dated May 16, 2023, pp. 147, 283-284 and 322-323; Deposition of Steven Schick, dated August 11, 2021, p. 56.

███████████████████████████████"366 She continued that it was "█████████████████

████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████"367 Mr. Jassy testified that "████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████"368

Mr. Bergman's opinion that AWS would be willing to give up ███████ of the incremental benefits he calculates to be associated with the patents-in-suit also does not account for the option to implement non-infringing alternatives that would provide the same alleged benefits and cost much less.

Further, Mr. Bergman focuses his discussion of a bargaining split on AWS's position at the hypothetical negotiation, but he fails to consider Kove's/Econnectix's position. As discussed in further detail below, around the time of the hypothetical negotiation, Econnectix was not financially successful, generated very little revenue, and consistently operated at a loss.[369] Dr. Overton testified that in 2006, Econnectix was "struggling," and its struggles continued "for a long, long time."[370] Also, Dr. Overton testified that no one has ever paid for a license to the patents-in-suit or for the right to practice the technology in the patents-in-suit.[371] Econnectix's poor financial health around the time of the hypothetical negotiation, and its lack of success in licensing the patents-in-suit and in selling products that embodied the patents-in-suit, suggests less bargaining power for Econnectix at the time of the hypothetical negotiation, rather than the ███████ split Mr. Bergman suggests for Econnectix.

---

[366] Deposition of Alyssa Henry, dated February 21, 2023, p. 239.

[367] Deposition of Alyssa Henry, dated February 21, 2023, pp. 239-240.

[368] Deposition of Andrew Jassy, dated May 1, 2023, pp. 35-36.

[369] Appendix A.

[370] Deposition of John Overton, Ph.D., dated May 17, 2023, pp. 464-466.

[371] Deposition of John Overton, Ph.D., dated May 16, 2023, pp. 120-121. Per Kove's Responses and Objections to AWS's Sixth Set of Interrogatories (No. 22-25), Interrogatory No. 22, Econnectix Corp engaged in discussions with ███████ regarding Econnectix's intellectual property, yet the assets were never valued and there were no negotiations for the sale, licensing, or transfer of these assets. I also understand that Econnectix held discussions with ███████████████████ for a license for the internal use and distribution of the XTN database software, but the parties never came to an agreement.

As discussed in more detail below, Mr. Greene has detailed that many of the relevant technologies to the patents-in-suit were "part of the state of the art and would have been known by a person of skill in the art by at least September 1999."[480] And, as Mr. Greene catalogued in his report, Dr. Overton admitted that he did not invent many of the relevant technologies and concepts related to the patents-in-suit.[481]

### G. Reasonableness Test of Mr. Bergman's Damages Opinions

Mr. Bergman opines "that the incremental benefit attributable to [] S3 associated with the scaling and hashing claims is at least ▇▇▇,"[482] which represents ▇ of S3 revenue and ▇ of S3 operating profit over the damages period.[483] Even at Mr. Bergman's ▇ bargaining split, his damages opinion still represents ▇ of S3 revenue and ▇ of S3 operating profit, as depicted in the graph below:[484]



---

[480] Expert Report of Joseph B. Greene Regarding Invalidity of U.S. Patent Nos. 7,103,640, 7,233,978, and 7,814,170, p. 22.

[481] Expert Report of Joseph B. Greene Regarding Invalidity of U.S. Patent Nos. 7,103,640, 7,233,978, and 7,814,170, dated July 3, 2023, pp. 22-25 and 122-123; Deposition of John Overton, Ph.D., dated May 17, 2023, pp. 684-730.

[482] Expert Report of Jim W. Bergman, dated July 3, 2023, pp. 12 and 147.

[483] ▇▇▇; ▇▇▇. Mr. Bergman states that S3's operating profit was ▇▇▇ during the damages period, but his exhibits show this figure is for contribution profit. S3 operating profit was ▇▇▇ across the damages period (see Expert Report of Jim W. Bergman, dated July 3, 2023, pp. 12 and 214 and Exhibit 8.1).

[484] ▇▇▇; ▇▇▇ (see Expert Report of Jim W. Bergman, dated July 3, 2023, p. 12 and Exhibit 8.1).

Mr. Bergman's implied opinion that AWS would pay a royalty equal to ▮ of S3 revenue and ▮ of S3 operating profit for a license to the patents-in-suit is unreasonable given the lack of importance of the patents-in-suit to S3, the various demand drivers for AWS's services, including the power of the Amazon brand, the availability of less expensive non-infringing alternatives, and the many other non-accused technologies of S3, among other things.

Mr. Bergman opines that DynamoDB has earned ▮ million in "Incremental Profit from [the] Patents-In-Suit,"[485] which represents ▮ of DynamoDB revenue and ▮ of DynamoDB operating profit over the damages period.[486] Even at Mr. Bergman's ▮ bargaining split, his damages opinion still represents ▮ of DynamoDB revenue and ▮ of DynamoDB operating profit, as depicted in the graph below:[487]



---

[485] Expert Report of Jim W. Bergman, dated July 3, 2023, p. 12 and Exhibit 5.

[486] ▮ ; ▮ . Mr. Bergman states that DynamoDB's operating profit was ▮ during the damages period, but his exhibits show this figure is for contribution profit. DynamoDB operating profit was ▮ across the damages period (see Expert Report of Jim W. Bergman, dated July 3, 2023, pp. 12 and 214 and Exhibit 14.1).

[487] ▮ ; ▮ (see Expert Report of Jim W. Bergman, dated July 3, 2023, p. 12 and Exhibit 14.1).

Econnectix's/Kove's financial situation around the time of the hypothetical negotiation would have also been a consideration regarding Kove's willingness to license the patents. The chart below shows certain Econnectix financials from 2005 through 2009:[742]



In 2005 and 2006, Econnectix did not earn any revenue, and experienced net losses of ▮▮▮▮ and ▮▮▮▮, respectively.[743] In 2007, the year of the hypothetical negotiation, Econnectix made sales totaling ▮▮▮▮ and experienced a net loss of ▮▮▮▮.[744] Econnectix's financial statements show that, around the time of the hypothetical negotiation, it was not financially successful, generated very little revenue, and consistently operated at a loss. Indeed, Dr. Overton testified that in 2006, Econnectix was "struggling," and its struggles continued "for a long, long time."[745] For much of Kove's/Econnectix's existence, "there's always been tension about whether [it would] have enough money to really thrive and extend."[746] In a 2009 email to Dr. Overton, Andrew Poling, Development Manager at Econnectix, stated in a quarterly self-evaluation that "the focus this quarter will be [] economic survival" in addition to efforts to differentiate Econnectix's products.[747] Econnectix's financial situation around the time of the hypothetical negotiation indicates a greater willingness for it to license its patents to AWS and generate revenue. Likewise, having

---

[742] Appendix A.

[743] Appendix A.

[744] Appendix A.

[745] Deposition of John Overton, Ph.D., dated May 17, 2023, pp. 464-466.

[746] Deposition of John Overton, Ph.D., dated May 17, 2023, p. 465.

[747] Deposition of Andrew Poling, dated April 21, 2023, pp. 191-192; Poling Exhibit 15: Email re: Q4 2009 Self Eval, dated December 25, 2009 (KOV_00036481).

By:

*Melissa A. Bennis*

Melissa A. Bennis

August 18, 2023