IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kove IO, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Amazon Web Services, Inc., <br><br> Defendant. | Civil Action No. 1:18-cv-08175 <br><br> Hon. Matthew F. Kennelly <br><br> Jury Trial Demanded |

**KOVE IO, INC.'S MOTION TO EXCLUDE**

Kove moves to exclude evidence and argument related to AWS's new non-infringement theories raised at trial. The Court directed Kove to file a motion to exclude if it thought relief was warranted. Because trial is underway and the prejudice mounts each day AWS's new theories remain before the jury, Kove requests expedited consideration of this motion.

During the first two days of trial, AWS made clear to the jury that it should find non-infringement based on new, never-disclosed theories: that AWS's products' security make them "different" from Kove's patents; and that those products' multi-key systems are "different" from Kove's "one-key system." These theories were not disclosed in AWS's non-infringement contentions or expert report, and both are meritless. The issue came to a head when Kove sought to have its expert, Professor Goodrich, debunk AWS's new theories. AWS objected on the grounds that Prof. Goodrich's report did not include this debunking. Rather than permit Prof. Goodrich to proceed with explaining the problems with AWS's theories, the Court indicated the better course would be for Kove to file a motion to exclude.

It should seem odd that AWS's central non-infringement theories were not addressed by Prof. Goodrich. The reason is simple: AWS did not disclose these infringement theories, and so there was no reason for Prof. Goodrich to address them in his report. It should also seem odd that there was no mention of it at summary judgment if the evidence is so one sided. And suspicious that it never came up at claim construction if these are patent requirements – or, for that matter, any other phase of this case after six years of hard-fought litigation.

The prejudice to Kove is considerable. This issue threatens to taint the entire trial. It is fundamentally unfair to permit AWS to ambush Kove with new theories without discovery, claim construction, trial preparation, or its own witnesses and arguments. Indeed, had these theories

1

been disclosed, Kove would have moved to exclude them because they contradict basic patent law principles.

Accordingly, Kove respectfully requests that the Court exclude AWS's new theories. Further, the Court should instruct the jury that such evidence is irrelevant to non-infringement.

I.  **AWS SHOULD BE PRECLUDED FROM PRESENTING NEW NON-INFRINGEMENT THEORIES.**

Under both Rule 37 and the local patent rules, non-infringement theories not disclosed in non-infringement contentions should be excluded. Exclusion under Rule 37 is self-executing: "If a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also* Fed. R. Civ. P. 37(c) advisory committee's note to 1993 amendment (sanction is "automatic" and "self-executing"); *Salgado ex rel. Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) ("[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless."). Expert reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Inadequately disclosed opinions are automatically excluded. Fed. R. Civ. P. 37(c)(1); *Salgado*, 150 F.3d at 742.

"The purpose of . . . the local patent rules in general, is to require parties to crystallize their theories of the case early in the litigation so as to prevent the shifting sands approach to claim construction." *Medline Indus. v. C.R. Bard, Inc.*, 2024 WL 1376464, at *5 (N.D. Ill. Mar. 31, 2024) (citations omitted). "To allow an expert to go beyond [the final contentions] would render them useless and ignore the specificity requirements of the Local Patent Rule 2.3." *Pactiv Corp. v. Multisorb Techs., Inc.*, 2013 WL 2384249, at *3 (N.D. Ill. May 29, 2013). In fact:

2

> Other courts in this district have strictly enforced the local patent rules and prohibited parties from relying on non-infringement theories not disclosed in final non-infringement contentions. *See* Order at 8, *Medline I*, No. 14-cv-3618, ECF No. 694; *see also Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10-cv-00204, 2013 WL 6132598, at *11-12 (N.D. Ill. Nov. 20, 2013) (prohibiting defendant from raising non-infringement theory not disclosed in final non-infringement contentions at summary judgment).

*Medline Indus.*, at *8 (N.D. Ill. Mar. 31, 2024). "District courts are given 'broad deference' to enforce local patent rules." *Id.* (quoting *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005)).

Here, AWS's new non-infringement theories were in neither its non-infringement contentions nor its non-infringement expert's report.

### A. AWS's New Non-Infringement Theories.

In its opening statement, AWS has made clear that it is pursuing two new non-infringement theories. Specifically, AWS argued that the accused products do not infringe because: (1) AWS's products contain security features while Kove's patents have no or poor security; and (2) in order to provide that security, AWS's products use two keys or three keys, whereas Kove's patents require an unsecure "one-key system."

During opening, AWS mentioned "security" 43 times. *See* Ex. A (Day 1 Trial Tr.) at 226:9-13. For example, it stated:

> Security, security, security ladies and gentlemen. That's what defines the decision choices that we're going to hear about that separates the patents from S3 and the patents from DDB. Same and different. Same and different, ladies and gentlemen.

The thrust of its argument was that AWS's products were "different" from Kove's patents because AWS's products have security. AWS rooted its security claim in the existence of multiple keys used to provide security, arguing that the patent requires exactly one key, but the AWS products have "two keys" or "three keys." *Id.* at 216:8-9 ("So now we know it's a one-key system straight

3

from the patent, no security."); *id.* at 217:21-218:7 ("S3 is a two-key system.").[1] Indeed, AWS's counsel asserted that Kove's patents are limited to a "one-key system" that is detrimental to "security":

> So we know a little bit more now about the patents from the patents themselves. They're a one-key system. So that sounds like it's got good security. What we're about to find out in a second, ladies and gentlemen, is that they've done something to the one key that eliminates its security. And the patent tells us that as well.

Ex. A at 215:1-6. AWS then contrasted S3 as a "two-key system," saying that "S3 is also a two-key system, ladies and gentlemen. S3 is a two-key system . . . . [I]t's a two-key system with security in a lot of different ways." *Id.* at 218:8-14. AWS summed up by saying, "[N]ow we've seen how S3 works. And we know the test is still same and different," *id.* at 220:22-23, with the clear implication that "different," *i.e.*, non-infringement, should be assessed in terms of one vs. two keys and security vs. no security. AWS promised the jury that Dr. Vermeulen, "the father of S3," "will walk us through the architecture he created, the two-key system, why security is vital, and how security is achieved." *Id.* at 218:21, 219:4-6.[2]

AWS took a similar approach for DynamoDB, characterizing it as a "three-key system, ladies and gentlemen. This is a three-key system. One, two, three, three-key system. . . . So what do we know? Three-key system. Three-key system." Ex. A at 222:13-20. AWS dovetailed the multiple keys concept into security, telling the jury that DynamoDB is "secure because of the multiple keys. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.* at 222:23-25. Then, as it did with S3, AWS made plain that it would make a non-infringement argument based on this "one, two, three" keys security argument, telling the jury:

---

[1] It directed the jury to citations "[i]nside the '640 patent" (*i.e.*, not the claims) and characterized the "entity key" as "provid[ing] a layer of security." Ex. A at 213:13-20.

[2] Conspicuously absent was any promise that AWS's non-infringement expert, Dr. Grama, would testify on these theories – which makes sense because they are not disclosed in his report.

> And now so we're back to the same question, the ultimate question here at trial: Same or different. This question is never going to change in this case, ladies and gentlemen. It's always going to be same or different. And now what do we see? We see differences already emerging.
>
> And what are these differences really going to be founded on? . . . One company's idea was to grow as quickly as possible and make security a second thought or maybe no thought at all. The other company's approach was that security would be number one and growth would follow that.

*Id.* at 223:3-16.

AWS also extensively crossed Dr. Overton on how Kove's patents do not include security, while AWS's products contain security. *See, e.g.*, Ex. B (Day 2 Trial Tr.) at 308:6-7 ("So you don't understand that every AWS product has to have industry-leading security, sir?"); *id.* at 308:9-10 ("Have you ever looked at anything AWS might say about security on its website, for example?"); *id.* at 308:12-13 ("And do you understand that AWS handles security for its customers so they can focus on their own business?"); *id.* at 317:21-22, 318:2-3, 318:7-9, 318:21-23, 319:16-17, 319:25-320:1, 320:4-5, 320:7-8. It did the same with Dr. Bailey. *See, e.g.*, *id.* at 410:12-13 ("You don't know whether your patents provide any security for the data, right?"); *see also id.* at 417:3, 417:5-6, 420:17-18.

When AWS attempted to corner Dr. Overton with overt questions about infringement, the Court sustained the objection. *See* Ex. B at 349:6-9. And the Court made clear that if AWS had attempted to ask the fact witnesses infringement-related questions (as posed by a juror), it would have sustained the objection. *Id.* at 391:8-392:7.

In advancing these theories, AWS encouraged the jury to decide the case based on an incorrect legal standard. AWS told the jury that "patent infringement cases . . . are really cases about something known as same and different . . . same and different," Ex. A at 209:21-23, and that "if [AWS is] doing something different, even one thing different than the patent, there's no

5

infringement," *id.* at 210:6-8. AWS encouraged the jury to ask "whether the products and the patents are the same or if they're different." *Id.* at 210:11-12. These statements bear only passing resemblance to the law, which does not require that a product be the same as the patent – it may be different in many ways and still infringe if the claim limitations are met.

### B. AWS's New Theories Were Not Disclosed In Its Noninfringement Contentions Or Expert Report.

These two new non-infringement arguments were not disclosed in either AWS's non-infringement contentions or Dr. Grama's rebuttal expert report on non-infringement.

The non-infringement contentions do not disclose the theory that the presence of security renders AWS's products non-infringing. Exs. C1-6 (AWS's Second Amended Noninfringement Contentions). Indeed, the word "security" does not even appear in its non-infringement contentions, let alone to describe multiple keys used for security. *Id.* Nor do the non-infringement contentions disclose a theory that AWS's products do not infringe because the patents require one key, whereas the accused products contain multiple keys. *Id.*

The non-infringement portion of AWS's expert report by Dr. Grama fails to disclose a theory that AWS's products are non-infringing because they include security, such as security provided by keys. Ex. D (Grama Report). Further, Dr. Grama's report did not disclose a theory that the patents require only one key, such that AWS's products do not infringe because they have multiple keys. *Id.*[3]

### C. Exclusion And A Jury Instruction Is The Appropriate Remedy.

The failure to disclose these theories warrants their exclusion. Kove has been self-evidently prejudiced. The whole point of non-infringement contentions and expert disclosures is

---

[3] At sidebar, AWS indicated that these theories were disclosed in its expert report. Ex. B at 548:15-19.

to provide notice of the basis for non-infringement at trial. Kove has had no opportunity to take discovery on these theories, present its own witnesses, gather documents, prepare for trial, test the theories under *Daubert*, or the many other things that undergird a fair trial. That is why Rule 37's exclusion is self-executing. The failure to disclose requires exclusion unless AWS proves that it was substantially harmless or justified, neither of which is the case here. Fed. R. Civ. P. 37(c)(1); *Salgado*, 150 F.3d at 742 ("sanctioned party" bears the burden).

The harm was made worse by AWS objecting and seeking to preclude Prof. Goodrich (Kove's infringement expert) from responding to these newly disclosed theories. The jury is being led to believe that Kove has no answer to these theories, when in fact the theories are meritless.

This problem is further amplified by the fact that the gambit only works if it evades scrutiny and Kove is precluded from responding. Had AWS disclosed these theories before trial, Kove would have sought to exclude them because they lack even plausible merit. First, there is no requirement in the claims that only one key be used; AWS's contrary argument imports a limitation not present in any asserted claim. Indeed, while it paraded a snippet of the patent specification mentioning a key before the jury (out of view of the Court or counsel) to support the assertion that the patent requires exactly one key, the rest of the discussion in the specification explains that multiple keys may be used (the point Prof. Goodrich was going to make when shut down by AWS's objection).

Second, it misstates the law to contend that because AWS also has security features, it does not infringe. It is hornbook law that a product infringes regardless of how many extra features it has, so long as it meets the requirements of the patent. *E.g.*, *SunTiger, Inc. v. Sci. Rsch. Funding Grp.*, 189 F.3d 1327, 1336 (Fed. Cir. 1999) ("If a claim reads merely on a part of an accused device, that is enough for infringement."); *see* Dkt. 739 at 27-28. Moreover, basic patent law

dictates that infringement is based on comparing the accused product to the claims, not the patent's specification. *See Atl. Thermoplastics Co. v. Faytex Corp.*, 970 F.2d 834, 846 (Fed. Cir. 1992) ("This court has repeatedly emphasized that infringement analysis compares the accused product with the patent claims, not an embodiment of the claims.").

In a sidebar, AWS suggested that it is merely providing background on how its product works. Ex. B at 548: 10-12. But the argument it made during opening and pursued on cross-examination of Drs. Overton and Bailey speaks louder. And in any event, if AWS, despite all it has said so far at trial, is not using its security theory for the impermissible purpose of non-infringement, then the "background" is irrelevant.

Accordingly, Kove respectfully requests that non-infringement arguments based on AWS's new theories be excluded from trial. Further, the jury should be instructed that it may not find non-infringement on the basis of security or the "one-key" requirement. Kove has been severely prejudiced by the jury being led to believe that AWS does not infringe because of requirements that are not in the claims (only one key) and because AWS's product does additional things (security) beyond the claim limitations.

## II. IN THE ALTERNATIVE, PROF. GOODRICH SHOULD BE PERMITTED TO ADDRESS AWS'S NEW INFRINGEMENT THEORIES.

In the alternative, at a minimum, Kove should be permitted to ask its expert, Prof. Goodrich, about AWS's new theories. It makes no sense and is unduly prejudicial to permit AWS to roll out new non-infringement theories at trial while precluding Kove's expert from addressing them on the ground that they are not addressed in his report.

## III. AWS's FACT WITNESSES ARE NOT PERMITTED TO TESTIFY AS TO NON-INFRINGEMENT.

Finally, Kove brings to the Court's attention a problem that it sees coming. It appears that AWS intends to use its current and former employees to make its non-infringement case, perhaps

8

in lieu of its designated non-infringement expert (Dr. Grama). It is curious that AWS never mentioned its technical expert in its opening, instead calling out the "fathers" of AWS's products, and AWS's damages expert. Ex. A at 218:22-23, 228:1 (Vermeulen); *id.* at 225:13-15, 228:1-2 (Rath). AWS also went out of its way to tell jurors that they should only listen to these witnesses, not other witnesses, and maybe not even AWS documents or videos. *See id.* at 228:14-18.

It is black-letter law that only qualified experts may opine about non-infringement or its underlying technical issues. *HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 689 (Fed. Cir. 2020) ("The prohibition of unqualified witness testimony extends to the ultimate conclusions of infringement and validity as well as to the underlying technical questions."). Allowing AWS to have lay witnesses testify as to non-infringement would be reversible error. *Id.* ("[I]t is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art.").

AWS's fact witnesses should not be permitted to discuss any of AWS's non-infringement theories, much less its new non-infringement theories. Testimony about features that have nothing to do with infringement (*e.g.*, security) would be both irrelevant and highly misleading, in violation of Rule 403. While fact witnesses are permitted to talk about facts within their percipient knowledge, they should not be permitted to refer to Prof. Goodrich's testimony or to the patents or claim constructions as to non-infringement.[4] *Cf. Express Mobile, Inc. v. Godaddy.com, LLC*, 2023 WL 4351334, at *8 (D. Del. July 5, 2023) (Kennelly, J.), *appeal filed*, No. 23-2265 (Fed. Cir. Aug. 10, 2023). As another court stated:

---

[4] In theory, AWS witnesses could talk about non-infringement in articulating its pre-suit good faith belief as to non-infringement, but there is no evidence that a witness actually had such a belief. Indeed, the evidence points to the opposite (no effort to determine whether AWS infringed despite knowing about the patents).

9

> Despite its repeated protestations that Sakai's testimony was simply for the purpose of explaining how the accused devices work, Canon used Sakai's testimony as the bedrock for its closing argument to the jury that the accused devices do not meet the "digital image magnification" limitation of the claims. The Federal Circuit has held that "[u]nsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony." *Invitrogen Corp. v. Clontech Labs., Inc*., 429 F.3d 1052, 1068 (Fed. Cir. 2005). The court finds that Canon's counsel improperly played the role of expert witness by inferring from factual testimony that the accused devices do not meet the claim limitations.

*Intellectual Ventures*, 104 F. Supp. 3d at 659.

Kove raises this issue now because it believes it will come up with AWS's fact witnesses and plans to object. Kove asks that AWS be instructed that its fact witnesses are not to testify as to its new non-infringement theories, or to refer to Prof. Goodrich, the patents, claim constructions, or non-infringement.[5]

## IV. CONCLUSION

For these reasons, Kove respectfully requests the Court grant its Motion to Exclude.

---

[5] This was why Kove sought to invoke Rule 615 to preclude Dr. Vermeulen, a non-employee fact witness, from sitting through Prof. Goodrich's expert testimony.

Dated: April 3, 2024

Khue V. Hoang *(pro hac vice)*
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia *(pro hac vice)*
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com
Philip Eklem (*pro hac vice*)
peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310

Amy Ruhland (*pro hac vice*)
aruhland@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
901 S. Mopac Expressway, Bldg. 1, Suite 300
Austin, TX 78746
Telephone: (650) 623-1401

Respectfully submitted,

*/s/ Courtland L. Reichman*

Renato Mariotti (State Bar No. 6323198)
renatto.mariotti@bclplaw.com
Holly H. Campbell (State Bar No. 6320395)
holly.campbell@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Telephone: (312) 602-5000

Courtland L. Reichman *(pro hac vice)*
creichman@reichmanjorgensen.com
Shawna L. Ballard (*pro hac vice*)
sballard@reichmanjorgensen.com
Jennifer P. Estremera *(pro hac vice)*
jestremera@reichmanjorgensen.com
Gina H. Cremona (*pro hac vice*)
gcremona@reichmanjorgensen.com
Navid Bayar (*pro hac vice*)
nbayar@reichmanjorgensen.com
Savannah Carnes *(pro hac vice*)
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

**ATTORNEYS FOR PLAINTIFF
KOVE IO, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of April, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Courtland L. Reichman*
Courtland L. Reichman