IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOVE IO, INC., *Plaintiff*, v. AMAZON WEB SERVICES, INC., *Defendant*. | Case No. 1:18-cv-8175 <br><br> **FILED UNDER SEAL** |

**AWS'S RESPONSE TO KOVE'S MOTION TO EXCLUDE**

Alan M. Fisch
alan.fisch@fischllp.com
R. William Sigler
bill.sigler@fischllp.com
Jeffrey M. Saltman (*pro hac vice*)
jeffrey.saltman@fischllp.com
Lisa Phillips (*pro hac vice*)
lisa.phillips@fischllp.com
Andrew L. Ramos (*pro hac vice*)
andrew.ramos@fischllp.com
Brandon P. Evans (*pro hac vice*)
brandon.evans@fischllp.com
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Suite 400
Washington, DC 20015
202.362.3500

Ken K. Fung (*pro hac vice*)
ken.fung@fischllp.com
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
650.362.8200

*Attorneys for Amazon Web Services, Inc.*

**INTRODUCTION**

In opening statements, AWS explained that "companies…tailor their distributed databases to reach very specific needs."[1] While Drs. Overton and Bailey designed their system to prioritize speed, AWS built S3 and DynamoDB to prioritize security.[2] As a result, the parties made different design choices that are detailed in AWS's non-infringement contentions and Dr. Grama's report.[3] And it's these resulting differences in design, not security itself, that AWS relies on for its non-infringement theories.

In other words, AWS's design priorities, including its focus on security, are the "why" to its non-infringement theories' "what." As the District of Delaware explained in *Greatbatch v. AVX Corp.*, it would be highly prejudicial for a party to be able to explain how its products were designed without being able to explain why.[4] Moreover, as detailed below, the importance of security to AWS has been repeatedly disclosed and made clear to Kove throughout the case. AWS hasn't introduced any new non-infringement theories. And AWS's fact and expert witnesses won't provide any improper opinion testimony on infringement. Accordingly, this Court should deny Kove's motion to exclude.

**I.  AWS WITNESSES TESTIFIED AT DEPOSITION THAT SECURITY WAS THE NUMBER ONE CONCERN GUIDING AWS'S DEVELOPMENT OF THE ACCUSED PRODUCTS.**

AWS's focus on security can't have come as a surprise. Kove repeatedly asked AWS witnesses about security during their depositions, and they made it very clear that security is the

---

[1] Dkt. 858-2 at 207:11-13.

[2] *See id.* at 208:12-15.

[3] *See generally* Dkt. 858-4 – 858-10.

[4] No. 13-cv-723-LPS, 2017 WL 3085055, at *3 (D. Del. July 20, 2017) (denying MIL to preclude Defendant from discussing how design reasons supported non-infringement positions).

number one priority for AWS when developing its products. For example, James Hamilton, AWS Senior Vice President and Distinguished Engineer, testified that security is "the first concern of every one of our engineering teams," and that "security would be the top of th[e] list [of tenets guiding] anything [CEO] Andy Jassy led."[5] Indeed, he repeatedly described security as the "number one" most important thing to the AWS engineers who develop its products:

> Andy Jassy "wants every one of us to look to security as the number one most important, can't get wrong feature."[6]

> "Customers can definitely rely on security as being…our number one engineering focus."[7]

Likewise, Tim Rath, Senior Principal Technologist, testified: "from an AWS perspective, regardless of product, security comes in at number one."[8] Seth Markle, Senior Principal Engineer, similarly testified that "[s]ecurity is the number one most important … characteristic of S3."[9] Werner Vogels, Amazon CTO, testified that security "was a requirement on day one."[10] And when Kove asked Andy Jassy what in "early days of AWS … did you view as the largest threat to the business with respect to S3," security was the first priority that he listed.[11] Indeed, Kove designated that portion of Mr. Jassy's testimony for playing at trial tomorrow. And these aren't the only examples.[12] In addition to these deposition transcripts, Kove had access to 10,803 AWS produced

---

[5] Ex. 1 at 85:8–10, 24–25.

[6] *Id*. at 123:16–19.

[7] *Id*. at 124:9–11; *see also id*. at 83:23–25 ("And from the very beginning onward, I couldn't imagine one of those documents not featuring security as the number one most important thing.")

[8] Ex. 2 at 225:11–13.

[9] Ex. 3 at 263:13–18.

[10] Ex. 4 at 125:15.

[11] Ex. 5 at 36:10–18.

[12] *See also*, *e.g.*, Ex. 6 at 27:11–14 (Software development manager Rande Blackman, testifying that "Security is No. 1."); Ex. 7 at 249:15-18 (Dr. Sivasubramanian, testifying that AWS "works hard to improve the … security, durability, availability, and performance" of its services "in that order").

documents referencing security.[13] Thus, Kove's suggestion that AWS's focus on security wasn't disclosed and should be excluded under Rule 37 is meritless.

**II.  KOVE ADDRESSED SECURITY IN ITS EXPERT REPORTS.**

Given the above, Kove's experts had the opportunity to, and did, address AWS's focus on security in their reports. For instance, Mr. Bergman explained in his report that:

> [AWS's] ▇▇▇▇▇▇▇ is built to satisfy the security requirement for the military, global banks, and other high-sensitivity organizations, which is backed by a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[14]

Mr. Fanous, who currently works for a software security company,[15] recognized that "[p]roducts like S3 and DynamoDB build their reputation on the security and reliability of their services."[16] And Dr. Goodrich claimed to have reviewed all the deposition transcripts cited above, so he knew that security was important to AWS,[17] though he chose only to address it in a very limited fashion. Specifically, he noted that S3 is designed to be "secure" at the beginning of the S3 section of his report.[18] And in the DDB section of his report, Dr. Goodrich limited his security analysis to one paragraph stating that ▇▇▇▇▇▇ wouldn't change his opinions.[19] Nonetheless, the fact remains that Kove had the opportunity to address the value AWS places on security. That Kove is discontented with AWS's trial themes and chose not to further address security, through its expert reports

---

[13] Accompanying Declaration of B. Sigler at ¶ 2.

[14] Dkt. 762-12 at ¶ 117.

[15] Dkt. 762-14 at ¶ 17.

[16] *Id*. at ¶ 56.

[17] Ex. 10 at 1–2.

[18] Dkt. 700-53 (Ex. D to his report) at ¶ 3.

[19] Dkt. 700-54 at ¶ 73 ("AWS contends that DynamoDB ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. However, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ to DynamoDB data does not impact whether or how AWS infringes the Asserted Claims," so "my conclusions regarding DynamoDB would be the same.") (citing AWS interrogatory response noting this security feature).

3

or fact witnesses, is no basis to exclude AWS testimony on this design priority at trial.

### III. AWS FACT WITNESSES SHOULD BE ALLOWED TO TESTIFY AS TO THEIR PERSONAL KNOWLEDGE OF THE ACCUSED PRODUCT'S DESIGN.

It's well-established that "lay witnesses may testify based on particularized knowledge gained from their own personal experience."[20] And no one has more particularized knowledge of a product than the engineers who developed it and work on it. Just as Drs. Overton and Bailey were permitted to testify regarding the development of their invention, so too should the accused product's engineers. It's important for the jury to understand how the technology accused in this case works. AWS's fact witnesses will explain that, and that the design priorities that led to particular design choices are part of the story.

#### A. AWS HASN'T INTRODUCED NEW NON-INFRINGEMENT THEORIES.

AWS's design priorities are the "why" to its non-infringement theories' "what." As AWS explained during its opening statement, AWS's focus on security affects all its design choices, including how ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[21] For example, security is one of the reasons AWS designed S3 with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. It's undisputed that Kove only accuses the ▇▇ and ▇▇ of being the required location servers and that ▇▇▇▇▇▇▇▇ the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The ▇▇▇▇▇'s primary role is to provide the ▇▇▇▇▇▇ ▇▇▇, but it doesn't ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇'s job. The primary reason for this design choice was security, as Dr. Vermeulen and Mr. Markle will testify. But the reason the ▇▇▇▇▇ doesn't meet the claims' requirements is because it can't identify

---

[20] *United States v. Hill*, 643 F.3d 807, 841 (11th Cir. 2011); *accord The Braun Corp. v. Maxon Lift Corp.*, 282 F. Supp. 2d 931, 933 (N.D. Ind. 2003) (citing *U.S. v. Sweeney*, 688 F.2d 1131, 1145 (7th Cir.1982)) ("[T]he Seventh Circuit allows lay opinion testimony based on a witness's specialized knowledge obtained in his or her vocation or avocation."); *aff'd* 97 F. App'x 335 (Fed. Cir. 2004).

[21] *See e.g.*, Dkt. 858-2 at 219:1-6.

objects' location, as Dr. Grama will testify.

Security is also one of the reasons AWS designed DynamoDB to require ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to access data. Kove only accuses ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. But ▮▮▮▮▮▮▮▮ don't contain ▮▮▮▮▮▮▮. Mr. Rath will testify as to the security reasons for this ▮▮▮▮▮▮▮▮. But only Dr. Grama will testify as to AWS's non-infringement theory that the ▮▮▮▮▮▮▮ don't meet the claims' requirements for location servers.

### B. SECURITY IS RELEVANT

As AWS counsel explained in a trial sidebar, security is "not a new theory….We're talking about how our system works."[22] And how these systems work is unquestionably relevant to the issues in this case—as Kove acknowledged when it admitted evidence purporting to show how the AWS systems work and elicited testimony from Dr. Goodrich about that evidence.[23] Under Rule 401, evidence is relevant if it has a tendency to make a fact of consequence more or less probable.[24] And relevant evidence should be excluded only when its probative value is substantially outweighed by any undue prejudice.[25] To decide whether the accused components of S3 and DynamoDB meet the asserted claims' requirements, the jury must understand how these products work. And the products' development is a part of that story. As noted, other district courts have found that it would be highly prejudicial to limit a party to explaining how its products were designed

---

[22] Dkt. 858-3 at 548:10-12.

[23] *E.g.*, Dkt. 858-3 at 544:17–23 (Kove offering into evidence PTX-669 as evidence of how Amazon explains "how S3 works."); 546:14–20 (Kove counsel eliciting testimony by asking "Dr. Goodrich, could you explain how you would retrieve data from S3?").

[24] Fed. R. Evid. 401.

[25] Fed. R. Evid. 403.

without being able to explain why.[26] Choices made in a product's design make sense only when considered alongside the problems the product was trying to solve. Indeed, Kove itself acknowledges that. PTX-531 is the notice of deposition for Seth Markle, one of AWS's 30(b)(6) witnesses for S3, which identified its intention to depose Mr. Markle regarding "[t]he history of the development of the Accused Products, including [AWS's] decisions to develop the Accused Products and [AWS's] decisions to implement the Relevant Features."[27]

Kove isn't unduly prejudiced by AWS's witnesses testifying that security concerns guided the choices they made in designing S3 and DynamoDB. Kove had the opportunity to ask AWS's witnesses about that during discovery, and Kove can cross-examine each of them at trial and present any evidence it has to the contrary. But AWS would be prejudiced if it can't explain the "why" undergirding its design choices. Thus, this Court shouldn't preclude AWS witnesses from testifying that security guided the design choices they implemented in S3 and DDB.

And to the extent Kove seeks to exclude testimony about keys, that, too, is baseless.  without mentioning multiple keys. AWS fact witnesses repeatedly discussed these keys during discovery. For instance, Tim Rath testified at deposition that DDB can be characterized as a ."[28] And he explained how DDB uses multiple keys.[29] These keys reflect the importance of security to

---

[26] *Greatbatch Ltd. v. AVX Corp.,* No. CV 13-723-LPS, 2017 WL 3085055, at *3 (D. Del. July 20, 2017) (denying motion *in limine* to preclude Defendant from discussing how its design reasons supported its non-infringement positions).

[27] *See* Ex. 8.

[28] Ex. 2 at 167:20–25.

[29] *Id*. at 168:4–25 ("

AWS and show how that influenced the designs of the accused services. But as further detailed below, AWS fact witnesses aren't going to opine on infringement, and AWS's experts aren't going to testify beyond the scope of their reports. As a result, AWS witnesses aren't going to testify that S3 or DDB doesn't infringe because it's a two-key or three-key system.

### IV. KOVE WAIVED ITS OBJECTION.

As Kove acknowledges in its motion, AWS counsel has already addressed the importance of security in designing its products, both in its opening statement and in cross-examinations of Kove's witnesses. Yet, Kove didn't object until part of the way through the fourth witness. It's well established that failing to object at trial and request a ruling waives a party's right to challenge admissibility.[30] At this point, excluding AWS's own witnesses from testifying about the importance of security to AWS would be immensely prejudicial. And this Court should deny Kove's motion for this reason as well.

### V. AWS'S WITNESSES WON'T PROVIDE IMPROPER OPINIONS.

Experts may testify only within the scope of their reports.[31] Kove's motion assumes, based on AWS's opening statement and cross-examinations of Drs. Overton and Bailey—which didn't raise new issues—that Dr. Grama will violate this imperative.[32] AWS assures the Court, however,

---

[redacted].

[30] *See United States v. Three Winchester 30-30 Caliber Lever Action Carbines*, 504 F.2d 1288, 1291 (7th Cir. 1974) ("The failure to object to the introduction of evidence at trial waives most objections.").

[31] *See* Dkt. 858 at 6; Dkt. 858-3 at 547:16-549:18 (excluding testimony regarding outside the scope of Dr. Goodrich's report).

[32] AWS's opening statement and cross-examination are consistent with AWS's position that security motivated its design decisions. *See* Dkt. 858 at 3-5.

that Dr. Grama won't testify outside the bounds of his report. And if Kove has objections to the scope of Dr. Grama's testimony once he's on the stand, it may object then.

To be clear, however, Dr. Grama did note the importance of security to AWS in his report—as did Ms. Bennis when relying on Dr. Grama's opinion. For instance, Dr. Grama specifically noted Mr. Markle's deposition testimony that security is the most important characteristic of S3.[33] He noted that AWS advertises itself as "[t]he leading cloud," because it is the "[m]ost secure," among other reasons.[34] And when addressing the previous AWS license to ▮▮▮▮, Dr. Grama noted that the license included patents and applications that "cover security aspects of [distributed] databases, something that the Asserted Patents don't address."[35] In her report, Ms. Bennis then repeatedly referenced the importance of security when analyzing ▮▮▮▮▮▮▮▮.[36]

Fact witnesses may testify only to information within their personal knowledge.[37] As such, AWS engineers may discuss S3 and DynamoDB's keys and security features which, as discussed above, aren't non-infringement theories. Kove's motion assumes, however, that AWS will use its fact witnesses to make non-infringement arguments in Dr. Grama's stead.[38] Indeed, AWS's witnesses are incapable of making such arguments, as none have read the asserted patents. This isn't

---

[33] Dkt. 858-10 at ¶ 118.

[34] *Id.* at ¶ 107

[35] *Id.* at ¶ 516

[36] Dkt. 748-43 at 80 ("I further understand from Dr. Grama that these identified patents and the ▮▮▮▮ Applications also cover security aspects, which as discussed below, is the most important characteristic of web service products such as S3 and DynamoDB."); *id.* at 113 (similar); *id.* at 152 ("Numerous AWS employees have testified that security is the most important characteristic of web service products such as S3 and DynamoDB."); *see also* Ex. 9 at 252:18–19 (testifying in response to Kove question about licenses that "security is – as I understand it, very, very important to Amazon").

[37] *Hill*, 643 F.3d at 841 ("lay witnesses may testify based on particularized knowledge gained from their own personal experience"). *See also Braun Corp.* 282 F. Supp. 2d at 933 (citing *Sweeney*, 688 F.2d at 1145) ("[T]he Seventh Circuit allows lay opinion testimony based on a witness's specialized knowledge obtained in his or her vocation or avocation.").

[38] Dkt. 858 at 8-9.

new information. In fact, Kove relied on the fact that AWS engineers don't read patents at summary judgment.[39] Furthermore, contrary to what Kove suggests, none of AWS's fact witnesses have read Dr. Goodrich's report or the Court's claim construction rulings.[40] To allay Kove's concerns, AWS can confirm that its fact witnesses won't discuss AWS's non-infringement theories, which would necessarily involve comparing the asserted claims with the accused technology.

## CONCLUSION

Accordingly, Kove's motion to exclude lacks merit and should be denied.

---

[39] Dkt. 699 at 52-53.

[40] Dkt. 858 at 9 ("[F]act witnesses…should not be permitted to refer to Prof. Goodrich's testimony or to the patents or claim constructions as to non-infringement."). Although Dr. Vermeulen, AWS's corporate designee has heard Dr. Goodrich's trial testimony, AWS agrees that Dr. Vermeulen can't—and won't—discuss Dr. Goodrich's opinions regarding the asserted patents or Kove's infringement positions.

Dated: April 4, 2024  Respectfully Submitted,

*/s/ R. William Sigler*
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Lisa Phillips (*pro hac vice*)
*lisa.phillips@fischllp.com*
Andrew L. Ramos (*pro hac vice*)
*andrew.ramos@fischllp.com*
Brandon P. Evans (*pro hac vice*)
*brandon.evans@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Suite 400
Washington, DC 20015
202.362.3500

Ken K. Fung (*pro hac vice*)
*ken.fung@fischllp.com*
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
650.362.8200

*Attorneys for Amazon Web Services, Inc.*

**CERTIFICATE OF SERVICE**

  I hereby certify that on April 4, 2024, I electronically filed the foregoing under seal with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, and also served a copy on all counsel of record via email.

                */s/ R. William Sigler*
                R. William Sigler