IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOVE IO, INC., *Plaintiff*, v. AMAZON WEB SERVICES, INC., *Defendant*. | Case No. 1:18-cv-8175 ███████ |

**AWS'S MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(a)**

Alan M. Fisch
alan.fisch@fischllp.com
R. William Sigler
bill.sigler@fischllp.com
Jeffrey M. Saltman (*pro hac vice*)
jeffrey.saltman@fischllp.com
Lisa Phillips (*pro hac vice*)
lisa.phillips@fischllp.com
Andrew L. Ramos (*pro hac vice*)
andrew.ramos@fischllp.com
Brandon P. Evans (*pro hac vice*)
brandon.evans@fischllp.com
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Suite 400
Washington, DC 20015
202.362.3500

Ken K. Fung (*pro hac vice*)
ken.fung@fischllp.com
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
650.362.8200

*Attorneys for Amazon Web Services, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

LEGAL STANDARD ................................................................................................................ 1

ASSERTED CLAIMS ................................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

    I.   The Court Should Grant JMOL on Willfulness and § 284. .................................. 2

        A.  No Reasonable Jury Could Find Willfulness. ............................................... 2

        B.  Regardless of Any Jury Finding, § 284 Enhanced Damages Would Be Inappropriate. 5

        C.  No Reasonable Jury Could Rely on Dr. Overton's Vague Statement on Redirect Contradicting All His Previous Testimony and Statements. ......................................... 6

    II.  Kove Failed to Prove Infringement. ...................................................................... 7

        A.  Kove Failed to Show That the Accused Products Satisfy the Requirements for "Location Server," "Location," and "Identifier." .......................................................... 7

        B.  Kove Failed to Prove Infringement for All the Reasons Dr. Grama Identified. ............. 9

        C.  Kove Failed to Show That the Accused Products Satisfy Other Requirements of the Six Asserted claims. ................................................................................................... 10

        D.  No Non-Hierarchical Structure ................................................................... 12

        E.  No Reasonable Jury Could Rely on Dr. Goodrich's Testimony ................. 13

   III.  Kove Failed to Prove Damages. .......................................................................... 13

CONCLUSION ........................................................................................................................ 14

## INTRODUCTION

With Kove's case in chief concluded, and before the Court instructs the jury, AWS respectfully requests judgment as a matter of law under Rule 50(a). First, AWS is entitled to JMOL on willfulness, because Kove failed to produce evidence showing that any infringement was willful. In addition, Kove failed to prove infringement, because no reasonable jury could find that S3 and DDB satisfy multiple elements of each asserted claim. And, further, Kove failed to prove any non-speculative damages. For all these reasons, set forth in more detail below, JMOL is appropriate.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 50(a)(1), judgment as a matter of law is appropriate when "a party has been fully heard on an issue" and "a reasonable jury would not have a legally sufficient evidentiary basis to find for that party on that issue." As the Seventh Circuit explained in *Hall v. Forest River, Inc.*:

> [T]he question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the plaintiff. A mere scintilla' of evidence, however, will not suffice.[1]

## ASSERTED CLAIMS

At the beginning of trial, Kove narrowed its asserted claims to the following:

|         | '170 Patent | '640 Patent | '978 Patent       |
|---------|-------------|-------------|-------------------|
| For DDB | Claims 1, 2 | Claim 18    | Claims 10, 17, 30 |
| For S3  | Claims 1, 2 | --          | Claims 17, 30     |

---

[1] 536 F.3d 615, 619 (7th Cir. 2008) (internal quotation marks and citation omitted).

1

**ARGUMENT**

I. **THE COURT SHOULD GRANT JMOL ON WILLFULNESS AND § 284.**

   A. **NO REASONABLE JURY COULD FIND WILLFULNESS.**

Willfulness requires a defendant to not only have knowledge of an asserted patent, but also knowledge of the alleged infringement.[2] As the Federal Circuit stated in *Bayer Healthcare LLC v. Baxalta Inc.*: "Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness. Rather, willfulness requires deliberate or intentional infringement."[3] Here, in the portion of the summary judgment order addressing pre-suit willfulness, this Court found that "[t]he factual dispute over whether AWS engineers had knowledge of the asserted patents prior to this instant case reflects that a genuine issue of material fact remains regarding whether AWS willfully infringed Kove's patents."[4] Now, after trial, there's no evidence that any AWS engineers had any knowledge of Kove or its patents until this lawsuit.

Indeed, there's no evidence that any AWS or Amazon employees knew about the patents-in-suit—much less knew or should've known about any infringement of those patents—at any time before Kove provided AWS notice via the December 12, 2018 complaint. All that Kove's evidence shows is that in 2011 (i.e., five years after Kove stopped attempting to sell products embodying the patents), outside patent prosecution counsel for Amazon Technologies, Inc., overcame a rejection based on the '978 patent during the prosecution of one Amazon patent (U.S. Patent No. 8,239,571). As Mr. Hayden testified, Amazon's '571 patent wasn't related to either

---

[2] *E.g.*, *Midwest Energy Emissions Corp. v. Vistra Energy Corp.*, No. 19-cv-1334-RGA-CJB, 2020 WL 3316056, at *4 (D. Del. June 18, 2020), *adopted*, 2020 WL 8265330 (2020).

[3] 989 F.3d 964, 988 (Fed. Cir. 2021); *see also id.* at 987 ("To establish willfulness, the patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct.").

[4] Dkt. 739 at 32.

2

accused product.[5] And the abstract confirms that.[6] So, even if this rejection of some of the application's original claims had been passed on to Amazon's legal team (and, as Mr. Hayden testified, it wasn't), it wouldn't have given them any reason to believe that either accused product infringed any of the patents-in-suit.

Courts have repeatedly found such evidence insufficient for a jury to find willfulness. For instance, in *BASF v. CSIRO*, the Federal Circuit affirmed granting the defendant JMOL on willfulness, where the trial evidence showed that the defendant's employees "were aware and kept track of" plaintiff's patents-in-suit.[7] And in *Intellectual Ventures I LLC v. Symantec Corp.*, then-District Judge Stark found that "[n]o reasonable jury could find willful infringement" based on citations to the patents-in-suit in the defendant's patent prosecution filings.[8] Other courts have reached similar decisions, including where in-house counsel cited the patents-in-suit.[9]

Moreover, here there's no evidence that Kove's patents were discussed in *any* other office actions, or during the prosecutions of any of the 202 other patents on the list of 203 Amazon patents that Kove cited.[10] In every one of those prosecutions, the examiners determined without fanfare that the technology that Amazon was working on was different from Kove's patents.[11] And there

---

[5] Tr at 956:13–957:7.

[6] DTX 48 at abstract (stating that the patent relates to "A DNS server at a content delivery network service." Neither S3 nor DDB is a content delivery network.

[7] 28 F.4th 1247 (Fed. Cir. 2022).

[8] 234 F. Supp. 3d 601, 611–12 (D. Del. 2017) (collecting cases ruling that citation to patents-in-suit is insufficient to find willfulness), *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018).

[9] *See*, *e.g.*, *id.*; *Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*, 638 F. Supp. 3d 1088, 1097–98 (N.D. Cal. 2022) (dismissing willfulness where in-house counsel prosecuted 75 patents citing to plaintiff's patents and also engaged in pre-suit negotiations to purchase plaintiff's full patent portfolio).

[10] *See generally* Tr. at 939.

[11] As noted during the summary judgment briefing, outside prosecution counsel also wouldn't have specifically reviewed the '978 patent in connection with most or all of other 202 prosecutions. For example, as noted during the summary judgment briefing, the '978 patent was just one of 1,108 references cited in a

was no communication from Kove regarding the patents-in-suit between the release of the accused products in 2006 and 2012 and the filing of the complaint in December 2018.

And in the relevant time period after that (i.e., between the complaint and the September 2020 expiration of all patents-in-suit),[12] by virtue of this lawsuit, AWS necessarily would've been acting with advice from litigation counsel (as would any similarly situated defendant). For this reason, some district courts automatically dismiss willfulness in the absence of pre-suit notice.[13] Other courts, including this one, have held that the complaint alone is enough for post-suit willfulness to survive a Rule 12 motion to dismiss. But these cases don't suggest that the complaint alone is *always* sufficient to send willfulness to the jury.[14] And it shouldn't be here. Aside from the complaint, Kove presented no evidence showing that AWS had the specific intent to infringe post-suit. And it's particularly unreasonable to expect AWS to immediately stop selling accused products upon receipt of an infringement allegation, when those products have been on the market for as long as S3 (nearly 13 years) and DDB (nearly seven years) at the time of the complaint.[15]

---

43-page Information Disclosure Statement during the prosecution of U.S. Patent No. 9,590,946 (i.e., number 100 on Kove's list). In other words, it was a one-line citation in row 724, towards the bottom of page 26 of that document. Dkt. 686 at 35.

[12] As Kove's expert Mr. Bergman acknowledged, "[t]he last patent expired in September 2020." Tr. at 1113:11–12. As such, there can be no infringement (including willful infringement) after that date. *E.g.*, Tr. at 1011:1–4 (describing damages period); *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446, 451 (2015) (Upon expiration, invention may be used, etc., "free from all restriction.").

[13] *See, e.g.*, *Wrinkl, Inc. v. Facebook, Inc.*, No. 20-cv-1345, 2021 WL 4477022, *7 (D. Del. Sept. 30, 2021).

[14] For example, this Court's decision in *MG Freesites Ltd. v. ScorpCast LLC*, which is cited in the summary judgment order, in turn cited *DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. 18-cv-098, 2019 WL 3069773 (D. Del. July 12, 2019). There, in the Rule 12 context, the court found allegations of based on the filing of the complaint "to be borderline in terms of sufficiency," but "just barely enough to render plausible the inference that Defendants specifically intend to induce infringement." 2019 WL 3069773. *MG Freesites* also cites *IOENGINE, LLC v. PayPal Holdings, Inc.*, where Circuit Judge Bryson similarly denied a Rule 12 motion, but stated that if "discovery fails to produce facts that would support a finding of willfulness, the defendant can seek to have the willfulness allegations dismissed on summary judgment." No. 18-cv-452, 2019 WL 330515, at *8 (D. Del. Jan. 25, 2019).

[15] *See Arbmetrics, LLC v. Dexcom Inc.*, No. 18-cv-134, 2019 WL 12473781, *4 (S.D. Cal. Feb. 19, 2019).

Further, at the time the patents expired, discovery in this case was far from complete, and AWS's defenses of non-infringement and invalidity were, at the very least, reasonable. As noted in previous briefing, the Patent Office later found substantial new questions of patentability for all 19 original asserted claims. The Patent Office then issued non-final rejections for every one of those claims, and finally invalidated two of the asserted '978 independent claims.[16] And, as this Court found, the Patent Office only allowed the remaining claims after Kove expressly disclaimed "non-hierarchical" structures.[17] For all these reasons, JMOL on willfulness is appropriate.

**B. REGARDLESS OF ANY JURY FINDING, § 284 ENHANCED DAMAGES WOULD BE INAPPROPRIATE.**

As this Court noted, the issue of enhancement under § 284 "is for the court and not the jury."[18] In other words, a jury finding willfulness is a prerequisite to enhancing damages, but isn't sufficient. Under *Halo*, this Court must also find that the evidence showed that AWS's conduct was not only willful, but also "egregious" or "malicious" behavior "characteristic of a pirate."[19]

As Circuit Judge Bryson stated in *UroPep v. Eli Lilly*, "the party seeking enhanced damages under section 284 has the burden of showing its entitlement to an enhanced award by a preponderance of the evidence."[20] In that case, the court ruled on § 284 enhancement when granting

---

[16] *E.g.*, Dkt. 686 at 4–6.

[17] Dkt. 739 at 19.

[18] Dkt. 739 at 30 (quoting Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc., 946 F.3d 1367, 1378 (Fed. Cir. 2020).

[19] Halo Elecs., Inc. v. Pulse Elecs., Inc., 136 S. Ct. 1923, 1932, 1934 (2016) (Enhanced damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious behavior. The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.").

[20] *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 2190055, at *1 (E.D. Tex. May 18, 2017) (citing *Halo*, 136 S. Ct. at 1934; *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1339–40 (Fed. Cir. 2016)).

a Rule 50(a) motion on willfulness.[21] As the court explained, regardless of any jury finding, "the evidence was not sufficient to support a finding that UroPep had met its burden of showing that Lilly's conduct was 'egregious' or 'malicious' behavior that is 'characteristic of a pirate.'"[22] For instance, the only evidence of pre-suit notice was "a barebones assertion of infringement" in 2014 that didn't "set out the strength of UroPep's infringement case" or address validity, and UroPep presented no "evidence of any follow-up communications" before the 2017 complaint.[23]

Here, Kove's failure to meet its burden is more clear cut, given that: (1) Kove didn't provide any pre-suit notice; (2) S3 had been on the market for nearly 13 years and DDB nearly seven years, when Kove finally filed the complaint; and (3) the potentially relevant AWS conduct is limited in time, due to the September 2020 expiration of the patents.[24] As noted above, AWS was still investigating this matter and pursuing reasonable defenses, with the advice of litigation counsel, in September 2020. And nothing AWS did before then rises to the level of egregiousness that could warrant § 284 enhancement. Accordingly, as in *UroPep*, JMOL is warranted not only on willfulness (i.e., the jury issue), but also § 284 enhancement (i.e., the court issue).

### C. NO REASONABLE JURY COULD RELY ON DR. OVERTON'S VAGUE STATEMENT ON REDIRECT CONTRADICTING ALL HIS PREVIOUS TESTIMONY AND STATEMENTS.

For the first time ever in this case, after a break between his cross and redirect, Dr. Overton testified on redirect that he told an Amazon employee about a potential infringement action.[25]

---

[21] 2017 WL 2190055, at *1 ("In addition, the Court stated on the record that even if the jury returned a verdict of willful infringement, the Court would not have enhanced the damages award, based on the evidence presented at trial.").

[22] *Id*. at *2.

[23] *Id*.

[24] *Cf. id*. at *2 (further noting "the strongest point in UroPep's favor … is that Lilly did not offer any explanation for its failure to respond to UroPep's … notification letter," which is inapplicable here).

[25] Tr. at 387:5–8 ("Q. When Mr. Majmundar reached out to you [in 2017], did you say something to Mr. Majmundar about the potential for an infringement action against Amazon? A. I did in the very first time I

Notably, there's no mention of this *anywhere* in Dr. Overton's previous direct testimony, cross-examination, three days of deposition, or the Kove interrogatory responses on willfulness that Dr. Overton verified.[26] Indeed, this contradicts Dr. Overton's previous sworn statements at deposition and at this trial.[27] Further, it doesn't make any sense that the 2017–2018 discussions would've continued as they did if this really occurred.[28] For those reasons alone, no reasonable person could credit this newly-minted and unsupported Dr. Overton statement.

In any event, even if Dr. Overton's statement could be taken at face value, it wouldn't support willfulness, because Dr. Overton repeatedly confirmed that he never mentioned the patents-in-suit to Amazon. For instance, on cross he testified as follows:

> Q. During the course of Kove's communications with AWS in 2017 and 2018, Kove never identified the '978, '170, or '640 patents, right?
> A. Yes, that is correct.[29]

And his one-sentence answer to Kove counsel's question about "infringement action" doesn't mention the patents-in-suit. Accordingly, Dr. Overton's dubious redirect testimony is no basis to deny JMOL on willfulness.

## II. KOVE FAILED TO PROVE INFRINGEMENT.

### A. KOVE FAILED TO SHOW THAT THE ACCUSED PRODUCTS SATISFY THE REQUIREMENTS FOR "LOCATION SERVER," "LOCATION," AND "IDENTIFIER."

All asserted claims require the following construed terms:

- Location server: "component that maintains a set of identifier/location mappings that

---

talked with him.").

[26] *See*, *e.g.*, Dkt. 687 at ¶ 98 (citing verified response to interrogatory).

[27] *See*, *e.g.*, Tr. at 376:10–14 ("Q. But you didn't tell AWS that Kove had any belief that DDB was infringing your patents? A. These discussions had nothing to do with our patents. They were about a different product line. It wouldn't make sense to.").

[28] Unsurprisingly, there's no record of any such threat in document discovery, such as Dr. Overton's produced emails, and Mr. Hayden's testimony confirms that nothing was reported to Amazon legal department.

[29] Tr. at 377:13–16.

are modified or returned in response to location request messages from clients."

- Location: "an encoding that is a member of a set of associations with an identifier in a location server, and that specifies where data pertaining to the entity identified by the identifier is stored."
- Identifier: "a unique encoding that identifies an individual entity, and with which zero or more location strings are associated in a location server."[30]

Kove failed to present evidence at trial that would allow a reasonable jury to find that the accused products satisfy these requirements. For example, Dr. Goodrich agreed at trial that S3 doesn't infringe if the ▮ and ▮ aren't location servers.[31] But given the undisputed record evidence, ▮ and ▮ can't be location servers for several reasons. These reasons include Dr. Goodrich's conclusory explanation that S3's ▮ comprising a ▮ satisfies the location requirement.[32] AWS's witnesses with personal knowledge repeatedly testified that the ▮ is just a label.[33] Further, AWS's expert confirmed that it doesn't "specif[y] where data … is stored."[34] And Dr. Goodrich failed to show otherwise. As a result, S3 doesn't satisfy the "location" requirements. And it doesn't satisfy the "location server" requirements either, since the claimed location servers must maintain identifier/location mappings.

For another example, Dr. Goodrich continued to assert at trial that a ▮ in DDB satisfies the identifier requirement.[35] But as Amazon previously explained, what Dr. Goodrich relied on for "location servers," i.e., the ▮, don't use or interact with a ▮ [36]

---

[30] Dkt. 484 at 11, 35.

[31] Tr. at 803:12–16.

[32] *E.g.*, Tr. at 606:22–607:3.

[33] *See, e.g.*, Tr. at 1285:19–1286:6.

[34] *See, e.g.*, Tr. at 1487:14–1489:3.

[35] *See, e.g.*, Tr. at 636:23–639:8. As Dr. Goodrich acknowledged, DDB's ▮ isn't a unique identifier, so Kove's case stands or falls on this ▮ theory. *See, e.g.*, *id.* at 636:15–638:9.

[36] Dkt. 686 at 27–29; *see, e.g.*, *id.* at 28 ("▮ aren't used by or sent to the ▮").

8

And AWS's witnesses explained at trial that DDB doesn't actually use a ▮▮▮▮▮ at all.[37] Dr. Goodrich's testimony and referenced exhibits never show that the ▮▮▮▮▮ use the ▮▮▮▮▮ much less maintain mappings of ▮▮▮▮▮ to locations.[38] As such, there is no unique identifier that is mapped to a location in the ▮▮▮▮▮ as the claims require.[39]

Accordingly, for at least these reasons,[40] no reasonable jury could find that DDB satisfies at least the "identifier" and "location server" requirements of the asserted claims.

### B. KOVE FAILED TO PROVE INFRINGEMENT FOR ALL THE REASONS DR. GRAMA IDENTIFIED.

Amazon's expert, Dr. Ananth Grama testified that there were at least four limitations in each claim that DDB and S3 don't meet. He specifically noted that nothing in the accused components of DDB meets the Court's constructions of identifier, location, location server, or plurality of location servers.[41] Thus, DDB doesn't infringe any of the asserted claims. He went on to describe how DDB doesn't use redirect messages as required by claim 18 of the '640 patent or claim 10 of the '978 patent.[42] And he showed that DDB also doesn't transfer data according to a

---

[37] Tr. at 1420:1–4; *see also id*. at 1420:5–1421:15 (explaining that AWS uses this term on simplified documents for customers, because it's familiar and doesn't reveal how the system actually works).

[38] As previously noted, Dr. Goodrich testified at deposition that the ▮▮▮▮▮ "doesn't go to the ▮▮▮▮▮." *E.g.*, Dkt. 687 at ¶ 89.

[39] Further, an Amazon witness further testified that partitions can contain hundreds of thousands of items. Tr. 1400:1-8. And, according to the claim construction for "location," claims all require a "location" that "specifies where data pertaining to the entity identified by the identifier is stored."

[40] These reasons also are further elaborated on in the portion of AWS's summary judgment that this Court didn't previously reach. Dkt. 739 at 24 ("AWS provides non-infringement arguments under both Judge Pallmeyer's original claim construction and AWS's own new proposed construction. … Because the Court partially adopted AWS's claim construction proposal, … [it will] only address AWS's argument regarding whether these alleged location servers employ a 'non-hierarchical' configuration." In view of the Court's decision, AWS incorporates that portion of its briefing (Dkt. 686 at 22–29; Dkt. 714 at 22–29).

[41] Tr. at 1477:15–20; 1479:1–6; 1480:10–14.

[42] Tr. at 1477:10–12; 1479:7–11.

9

█████████████████████████, and thus can't infringe claims 17 and 30 of the '978 patent.[43] And he also explained that DDB doesn't apply ██████████████████████ ███████—and thus doesn't meet the "based on a hash function" requirement of claims 1 and 2 of the '170 patent.[44]

Similarly, for S3, Dr. Grama testified that the accused components don't meet the Court's construction of location, location server, plurality of location servers, and thus don't infringe any claim of any patent.[45] And, as he showed, the ███████—the accused location servers—don't ██████████████████, so they can't meet the claims' requirement that each identifier must be associated with at least one location.[46] Beyond that, he also explained that S3 doesn't infringe claims 1 and 2 of the '170 patent since ████ don't distribute ████—the accused identifier— according to a hash function.[47] Nor does S3 transfer ████, as required by claims 17 and 30 of the '978 patent.[48]

### C. KOVE FAILED TO SHOW THAT THE ACCUSED PRODUCTS SATISFY OTHER REQUIREMENTS OF THE SIX ASSERTED CLAIMS.

Kove also failed to show how the accused products satisfy other requirements of the narrowed list of six asserted claims.[49] For example, JMOL is warranted based on the "client" limitations of all claims. This includes the requirement in '640 claim 18 that the location servers "transmit[] a redirect message to the client" that contains information "to calculate a location of a

---

[43] Tr. at 1482:7–10; 1510:13–16.

[44] Tr. at 1512:1–18; 1515:3–5.

[45] Tr. at 1508:18–23; 1509:19–21; 1513:20–1514:2; 1515:2–5.

[46] Tr. at 1505:9–10, 1508:19–20.

[47] *E.g.*, Tr. at 1513:16–19.

[48] *E.g.*, Tr. at 1508:13–15.

[49] Due to Kove's continued assertion of 17 total claims until shortly before trial, a claim-by-claim analysis wasn't possible at the summary judgment phase of the litigation.

different data location server" that has the desired information.[50] And this includes the other asserted claims by virtue of this Court's "plurality of location servers" construction. Specifically, this Court found the required "non-hierarchical" structure means that "any given server" in the claimed plurality "is able to return either the requested information or information useable by the client to locate the server with the requested information."[51] But Kove failed to present any evidence showing any transmission from the alleged location servers to the alleged client, much less how the alleged location servers return "information useable by the client to locate the server with the requested information."[52] JMOL is appropriate on that basis, too.

Additional examples include Kove's failure to show that the ▇▇▇ meet the requirement of the '170 claims that "at least one of the plurality of data location servers includes location information associated with the identifier string," and the requirement of '978 claims 17 and 30 for "storing the received location in a location store at the first data location server, the location store comprising a plurality of identifiers, each identifier associated with at least one location, wherein the received location is associated with the received identifier in the location store." For instance, Goodrich admitted that "▇▇▇ don't store location information for every request."[53] Accordingly,

---

[50] *See also* Dkt. 484 at 35 (construing "client" in '640 claim 18 as "a network-attached component (which may be software or hardware) that initiates update or lookup of identifier/location mappings from a location server with location request messages").

[51] *E.g.*, Dkt. 739 at 18 (quoting Dkt. 687-32 at 40). AWS notes that the Court adopted this definition of "non-hierarchical" based on a Kove sentence that expressly distinguished Kove's non-hierarchical structure from Oracle's "tree" structure. Dkt. 687-32 at 40. Although AWS understands that the Court has already ruled on this issue, it was incorrect to exclude AWS evidence referring to a "tree" structure, on the basis that it's inconsistent with a definition expressly comparing "non-hierarchical" structure to a "tree."

[52] *See also* Dkt. 484 at 35 (construing "location server" as "a network-attached component that maintains a set of identifier/location mappings that are modified or returned in response to location request messages from clients").

[53] Tr. at 840:12–14.

no reasonable jury could find that AWS infringes these claims.[54]

### D.   NO NON-HIERARCHICAL STRUCTURE

All asserted claims describe systems or networks that require a "plurality of location servers,"[55] which this Court construed as "location servers in a non-hierarchical configuration."[56] As AWS has explained S3 and DDB are both configured ▮▮▮▮▮.[57] And the undisputed testimony of those with personal knowledge of the systems confirmed that.

No reasonable jury could conclude otherwise, given that Kove's expert testimony failed to show how either accused product satisfies the non-hierarchical requirements of the asserted claims. For instance, Dr. Goodrich confirmed that his opinions rely on the alleged location servers in a particular grouping or region for the required "plurality of location servers."[58] To begin with, this directly contradicts what Kove argued at summary judgment.[59] And, more importantly, Dr. Goodrich admitted at trial that the location servers in what he defined as the "plurality of location servers" in a non-hierarchical configuration wouldn't have all the information necessary to satisfy

---

[54] Other examples include Kove's failure to show that DDB meets the requirement of '640 claim 18 that the redirect message "contains information" "to calculate a location of a different data location server" that has the desired information" and '978 claim 10's requirement that "the redirect message comprises information for finding a location server having location information related to the desired identifier." In addition, Kove failed to show that S3 and DDB meet the asserted '978 claims' requirement that each location server contains a "unique set of location information of an aggregate set of the location information." And Kove failed to show that S3 and DDB meet '978 claim 17 and 30's requirement that each location server contains a "transferring a portion of the identifiers and associated locations to a second data location server when a performance criterion of the first location server reaches a predetermined performance limit."

[55] '170 claims 1 and 2 (system comprising "plurality of data location servers"); '640 claim 18 ("network having a plurality of data location servers"); '978 claim 10 (system "having a plurality of location servers"); '978 claims 17 and 30 ("system having a plurality of location servers").

[56] Dkt. 739 at 19.

[57] *E.g.*, Dkt. 686 at 16–21; Dkt. 714 at 17–22.

[58] *E.g.*, Tr. at 647:1-10.

[59] Dkt. 699 at 27–28 (Kove arguing that it "contrasted [Oracle]'s 'hierarchical tree' with the [asserted claims], which contain limitations allowing: [a] client [to] send a query to any server in the network—not just its local region, as taught by Oracle").

12

this Court's claim constructions.[60] Accordingly, JMOL of non-infringement is warranted.

### E. NO REASONABLE JURY COULD RELY ON DR. GOODRICH'S TESTIMONY

In *Wechsler v. Macke Int'l Trade Inc.*, the Federal Circuit held that a defendant was entitled to JMOL where the patent owner's "expert presented little more than conclusory evidence."[61] Here, Dr. Goodrich confirmed at trial that he didn't review source code.[62] Yet, the opinions he presented to the jury consisted, to a significant extent, of conclusory statements that the source code or various publicly available documents about the benefits of the accused products confirm his infringement opinions.[63] JMOL of non-infringement thus is warranted for this reason as well.

## III. KOVE FAILED TO PROVE DAMAGES.

It's well established that the patent owner has "the burden of proving the amount of reasonable royalty damages it is entitled to recover."[64] To do so, the patent owner may not rely on speculation. As the Federal Circuit explained in *Promega Corp. v. Life Techs. Corp.*:

> In patent cases, … [d]amages 'must not be left to conjecture by the jury. They must be proved, and not guessed at.'[65]

Here, Kove's expert Mr. Bergman testified that he employed the "income approach" to determine that the patents' value to Amazon is $1.034B. He further testified that, in the hypothetical negotiation, the parties would've agreed that Kove would receive at least 50%, and up to 100%, of the incremental profits attributable to the use of the patents-in-suit.[66] But apart from

---

[60] *See, e.g.*, Tr. at 841:2–4; 812:18–20.

[61] 486 F.3d 1286, 1294 (Fed. Cir. 2007)

[62] *See, e.g.*, Tr. at 763–764.

[63] *See, e.g.*, Tr. at 852:13–20 (confirming he didn't show any source code for ▮▮▮▮▮).

[64] *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1376 (Fed. Cir. 2002).

[65] 875 F.3d 651, 660 (Fed. Cir. 2017) (quoting *Philp v. Nock*, 84 U.S. 460, 462 (1873)).

[66] Tr. at 1047:14–16.

listing considerations from the case law, Mr. Bergman didn't explain to the jury the basis for his opinion that the bargaining split would be 50% or 100%.

Additionally, a patentee can seek "only those damages that are attributable to the infringing features of the product."[67] And where multi-component products are involved, as is the case here, damages awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no more."[68] At trial, Mr. Bergman failed to explain how he apportioned damages to the allegedly infringing features. For example, he didn't explain why he attributed the entire value of S3's ▮▮▮▮▮ to the '170 patent claims, ignoring the other functionalities of the ▮▮▮▮▮.[69] And he incorrectly assumed that S3's ability to scale derives solely from allegedly infringing features, so his non-infringing alternative for other claims omitted S3's entire index system. For these and other reasons, including a variety of unexplained errors in Mr. Bergman's direct testimony, Kove failed to prove damages.

## CONCLUSION

Accordingly, AWS respectfully request that the Court grant JMOL of non-infringement under Rule 50(a). Alternatively, this Court should at least grant JMOL to AWS on the issues of willfulness and § 284 enhanced damages.

---

[67] *VirnetX, Inc. v. Cisco Sys., Inc*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).
[68] *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).
[69] Tr. at 1048–49.

14

Dated: April 9, 2024                                   Respectfully Submitted,

                                                       /s/ R. William Sigler
                                                       Alan M. Fisch
                                                       *alan.fisch@fischllp.com*
                                                       R. William Sigler
                                                       *bill.sigler@fischllp.com*
                                                       Jeffrey M. Saltman (*pro hac vice*)
                                                       *jeffrey.saltman@fischllp.com*
                                                       Lisa Phillips (*pro hac vice*)
                                                       *lisa.phillips@fischllp.com*
                                                       Andrew L. Ramos (*pro hac vice*)
                                                       *andrew.ramos@fischllp.com*
                                                       Brandon P. Evans (*pro hac vice*)
                                                       *brandon.evans@fischllp.com*
                                                       FISCH SIGLER LLP
                                                       5301 Wisconsin Avenue NW
                                                       Suite 400
                                                       Washington, DC 20015
                                                       202.362.3500

                                                       Ken K. Fung (*pro hac vice*)
                                                       *ken.fung@fischllp.com*
                                                       FISCH SIGLER LLP
                                                       400 Concar Drive
                                                       San Mateo, CA 94402
                                                       650.362.8200

                                                       *Attorneys for Amazon Web Services, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2024, I electronically filed the foregoing under seal with the Clerk of the Court for the United States District Court for the Northern District of Illinois, via the CM/ECF system, and also served a copy on all counsel of record via email.

*/s/ R. William Sigler*
R. William Sigler